UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                                 Chapter 11 Case

VITAL PHARMACEUTICALS, INC., *et al.*,[1]          Case No.: 22-_____

    Debtors.                                                        (Joint Administration Pending)
_____/

**DEBTORS' EMERGENCY MOTION FOR (A) THE AUTHORITY TO PAY
PREPETITION OBLIGATIONS OWING TO FOREIGN VENDORS,
SERVICE PROVIDERS AND GOVERNMENTS AND (B) TO HONOR AND
CONTINUE PAYING FOREIGN VENDORS IN THE ORDINARY
COURSE OF BUSINESS
(Emergency Hearing Requested)**

**Statement of Exigent Circumstances**

The Debtors respectfully request the Court to conduct an expedited hearing on this Motion, as it is essential for the Debtors to pay certain foreign vendors, service providers and governments for the continued operation of the Debtors' businesses. The vendors, service providers, and governments that the Debtors seek to pay through this Motion are critical to the Debtors' daily operations and, thus, critical to the successful reorganization of the Debtors' operations. Without payments to certain foreign vendors, service providers, and governments, the Debtors' businesses will likely suffer significant, if not irreparable, harm. The Debtors respectfully request that the Court waive the provisions of Local Rule 9075-1 (B), which requires an affirmative statement that a bona fide effort was made in order to resolve the issues raised in this Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev LLC and Vital Pharmaceuticals International Sales, Inc. (collectively, the "Debtors"), pursuant to

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

11671860-6

11 U.S.C. § 105(a), Bankruptcy Rule 6003(b) and Local Rule 9013-1(K), file this *Debtors' Emergency Motion for Authority to Pay Prepetition Obligations Owing to Foreign Vendors, Service Providers, and Governments* (the "Motion") seeking the entry of an Order (a) authorizing the Debtors to pay the prepetition claims of certain foreign vendors and service providers that are critical to the operation of the Debtors' businesses and (b) to honor and continue paying foreign vendors, service providers and governments in the ordinary course of business, and (c) granting certain related relief. In support of this Motion, the Debtors rely upon the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and incorporated herein and respectfully represent the following:

## Background

1. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the First Day Declaration.

## Relief Requested and Basis Therefor

4. The Debtors are one of the leading manufacturers, distributors and sellers of energy drinks and dietary supplement products in the United States. Their products are available in all 50 states with a distribution network throughout the United States, Canada, Latin America, Europe, and Australian markets. The Debtors are in the process of expanding their market territory in certain international markets. To support this endeavor, the Debtors created four (4)

foreign entities: i) Bang Energy B.V.; ii) Bang Energy Canada, ULC; iii) Bang Energy Chile SPA; and iv) Bang Energy Pty LTD (Australia) (each a "Foreign Entity," and collectively, the "Foreign Entities") to serve as an extension of the Debtors' in their specific foreign markets. Each Foreign Entity is owned 100% by Vital Pharmaceuticals, Inc. The Foreign Entities and the Debtors operate as an integrated business and share the same cash management, operational systems and management. The Foreign Entities are served and staffed by employees of the Debtors. Since their creation, the Debtors have funded all operations of the Foreign Entities, which include payments for freight forwarders, copackers, third party logistics and quality control agents, taxes and other marketing expenses to fulfill orders of the Debtors' products internationally. In return, each of the Foreign Entities transfers the revenues received from its operations to the Debtors on a regular basis.

5. These Foreign Entities and their vendors are necessary to preserve the Debtors' critical relationships in these foreign markets and to expand the Debtors' market share. Without expanding their market and reaching additional international consumers, the profitability of the Debtors' products and their entire enterprise would be reduced. It is essential, therefore, that the Debtors maintain the Foreign Entities operations throughout the Debtors' reorganization, including its early stages. Supporting the Foreign Entities' operations accomplishes this goal by ensuring the Foreign Vendors are paid and continue to work with the Foreign Entities to expand the Debtors' brand and ultimately generate recurring business and increasing the Debtors' net revenue.

6. By this Motion, the Debtors seek authority, but not direction, to pay in their discretion and in the ordinary course of business, as and when due, prepetition claims (the "Foreign Claims") owing to the foreign vendors (the "Foreign Vendors") by the Foreign Entities, identified in **Exhibit "A"** attached hereto. The Foreign Vendors include certain foreign service

3

11671860-6

providers including, but not limited to, freight forwarders, copackers, third party logistics and quality control agents, all of which the Debtors reasonably believe are not subject to the jurisdiction of the Bankruptcy Court. The Debtors, and the Foreign Entities have a long-standing relationship with these Foreign Vendors, and in some circumstances are the only option to provide the goods and services offered in that market.  The Debtors have reviewed the actual obligations incurred year to date for or related to Foreign Claims and estimate that the amount owed to Foreign Vendors on the Petition Date is approximately $3,000,000.00[2].  Beyond identifying the Foreign Vendors and amounts due each Foreign Vendor, **Exhibit "A"** also includes a description of the goods or services provided to the Debtors and Foreign Entities by each of the Foreign Vendors.

7. Additionally, the Debtors request authority, but not the obligation, to continue funding the expansion of their sales network into international markets by continuing to pay the Foreign Vendors and other foreign vendors, including other copackers, shippers, distributors and taxing authorities of the Foreign Entities on an ongoing post-petition basis in the ordinary course. The Debtors operate in a highly competitive market for energy drinks and dietary supplements, including products purchased for resale, where alternate suppliers of similar products are available to the same demographic that consumes the Debtors' products. This highly competitive market makes retaining the Debtors' growth and expansion in international markets extremely important. Further, the growth and success of the Foreign Entities has a direct impact on the enterprise value of the Debtors. During this time the Foreign Entities will continue to transfer their revenues back to the Debtors.

---

[2] This total includes an additional cushion of $600,000 that is not identified on Exhibit "A" for invoices that may not have been entered into accounts payable and for amounts that may be disputed by the Foreign Vendors.

8. To facilitate the payment of Foreign Vendors and, thus, avoid actions against the Debtors and their assets or the interruption of the Debtors' operations overseas and the resulting loss of revenues, the Debtors respectfully request that the banks that provide banking services to the Debtors be authorized and required, unless otherwise directed, to: (a) honor any checks drawn against their accounts, but not cleared prior to the Petition Date, and (b) complete any fund transfer requests made but not completed prior to the Petition Date relating to the payment of Foreign Vendors. In addition, the Debtors respectfully request authorization to issue post-petition checks and to make post-petition fund transfer requests to replace any prepetition checks and prepetition transfers to Foreign Vendors that may be dishonored by the banks.

9. The Debtors believe that the Foreign Vendors, if not paid timely, can and may take precipitous action against the Debtors and the Debtors' assets based on the belief that such Foreign Vendors will likely dispute that they are subject to the jurisdiction of this Court and, thus not subject to the automatic stay provisions of 11 U.S.C. § 362(a). *See Sheehan v. Breccia Unlimited Co., et al. (In re Sheehan)*, Nos. 21-2946 & 21-2954, 2022 WL 4090556 (7th Cir. Sept. 7, 2022) (affirming dismissal of adversary proceeding by chapter 11 debtor to enforce automatic stay against creditors based in Ireland seeking to exercise their rights in collateral on a defaulted loan given lack of *in personam* jurisdiction over those creditors rendering the automatic stay provisions in Section 362(a) inapplicable, despite applying to estate property outside the United States). The Foreign Vendors could, among other things, sue in a foreign court and obtain a judgment against the Debtors to collect on prepetition claims. The Foreign Vendors could immediately seek to attach or potentially seize the Debtors' or the Foreign Entities foreign assets even prior to obtaining a judgment. *See id.* Foreign suppliers could refuse to do business with the Debtors or the Foreign entities, thereby inhibiting the Debtors' operations. Foreign governmental authorities could also revoke the Debtors' right to conduct

business or otherwise cloud the title to goods and/or attach and seize goods the Debtors depend upon to operate.  As to the Foreign Vendors that have no contacts in the United States and are otherwise outside U.S. jurisdiction, the Debtors have no protection.  *See id.*

10. In conjunction with distribution and delivery of goods, the Debtors arrange for international transport through various shipping agents and custom brokers, and utilizes the services of foreign shippers, packers and warehousemen.  A separate motion, the *Debtors' Emergency Motion for Order Authorizing the Payment of Certain Pre-Petition Claims of, and Honoring Certain Contracts with Shippers and Warehousemen*, filed concurrently herewith, seeks the authority, but not the obligation, for the Debtors to pay the prepetition claims of the Debtors' domestic and international freight companies and common carriers.  The value of the foreign vendors' services is in large part dependent upon the Debtors' timely receipt of the goods.  In many instances, the goods in transit are sold goods that the Debtors need in order to fulfill their ordinary course contractual obligations.  If interruptions in the supply of foreign goods cause significant delay, the goodwill value of the enterprise may depreciate significantly and cause further harm to the Debtors' going concern value.

11. It is in the best interest of the Debtors' estates and creditors to satisfy the Foreign Claims and permit the Debtors to continue funding the Foreign Entities' operations as set forth herein.  Satisfaction of the Foreign Claims is absolutely critical to maintain the confidence of the freight forwarders, copackers, and customers in the Debtors' international operations.  Further, it is essential to the Debtors' reorganization efforts to maintain good relationships with the Foreign Vendors.  The risks associated with non-payment of Foreign Entities justifies the payment of the Foreign Claims and future claims in the ordinary course of business.

**Applicable Authority**

12. This Court may authorize the Debtors to pay prepetition amounts owed to Foreign Entities under § 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

13. This section provides bankruptcy courts with broad authority and discretion to enforce the provisions of the Bankruptcy Code either under specific statutory or equitable common law principles.

14. The purpose of section 105(a) is to "assure Bankruptcy Court's power to take whatever action is appropriate or necessary to aid in the exercise of its jurisdiction." *Collier on Bankruptcy*, ¶ 105.01, at 105-3 (15th ed. 1996). Thus, section 105(a) essentially codifies the bankruptcy court's inherent equitable powers. *See Mgmt. Tech. Corp. v. Pardo*, 56 B.R. 377, 339 (Bankr. D. N.J. 1985) (court's equitable power derived from section 105).

15. Numerous courts have used their section 105(a) equitable powers to authorize payment of a debtor's prepetition obligations where, as here, such payment is necessary to effectuate the "paramount purpose" of Chapter 11 reorganization, which is to prevent the debtor from going into liquidation and to preserve the debtor's potential for rehabilitation. *See, e.g., In re Lehigh & N.E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981); *In re Comdisco, Inc.*, Case No. 01-24795 (RB) (Bankr. N.D. Ill. July 17, 2001); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176-77 (Bankr. S.D.N.Y. 1989) (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984)).

16. By showing that a payment of a prepetition claim is "critical to the debtor's reorganization," the debtor may invoke the Doctrine of Necessity "to realize the goal of chapter 11—a successful reorganization." *In re Just For Feet*, 242 B.R. 821, 825-26 (D. Del. 1999).

17. When a foreign creditor, beyond the reach of the automatic stay, demands payment of a prepetition claim, courts invoke the Doctrine of Necessity in order to protect and preserve the estate. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (listing payment of foreign creditors as an example of when a court would be justified in allowing payment of a prepetition claim). In *CoServ*, the court commented that "it is only logical that the bankruptcy court be able to use Section 105(a) of the Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate." *Id*.

18. Pursuant to the Doctrine of Necessity, bankruptcy courts routinely grant authorization for Chapter 11 debtors to pay claims owing to foreign entities against which the automatic stay cannot be readily enforced in the United States and as to which it would be unduly time consuming and expensive to seek to enforce an order of the bankruptcy court in the creditor's home country. *See, e.g., In re Visteon Corp., et al.*, Chapter 11 Case No. 09-11786 (Bankr. D. Del. June 19, 2009); *In re Galvex Capital, LLC, et al.*, Chapter 11 Case No. 06-10082 (Bankr. S.D.N.Y. Jan. 27, 2006); *In re EOTT Energy Partners LP*, Chapter 11 Case No. 02-21730 (Bankr. S.D. Tex. Oct. 9, 2002); *In re WorldCom*, Chapter 11 Case No. 02-13533 (Bankr. S.D.N.Y. Aug. 13, 2002); *see also In re Gemini Cargo Logistics, Inc., et al.*, Chapter 11 Case No. 08-18173 (Bankr. S.D. Fla. June 20, 2008); *In re Gemini Cargo Logistics, Inc., et al.*, Chapter 11 Case No. 06-10870 (Bankr. S.D. Fla. April 10, 2006); *In re Northwest Airlines Corp., et al.*, Chapter 11 Case No. 05-17930 (Bankr. S.D.N.Y. Sept. 15, 2005); *In re Atlas Air Worldwide Holdings, Inc.*, Chapter 11 Case No. 04-10792 (Bankr. S.D. Fla. Feb. 10, 2004); *In re Fine Air Servs. Corp.*, Chapter 11 Case No. 18671-75 (Bankr. S.D. Fla. Nov. 8, 2000); *In re US

*Airways Group, Inc.*, Chapter 11 Case No. 02-83984 (Bankr. E.D. Va. Aug. 12, 2002); *In re Trans World Airlines, Inc.*, Case No. 01-00056 (Bankr. D. Del. Jan. 12, 2001).

19. The Debtors believe that prompt payment to the Foreign Vendors and the continued funding of the Debtors' expansion into foreign markets is crucial to the orderly and efficient operation of their businesses and the enhancement of their prospects for successful reorganization. Unless the Debtors are authorized to pay the Foreign Vendors and fund the continued operations of the Foreign Entities in the ordinary course of business, the Debtors' businesses will likely suffer immediate and irreparable harm and, therefore, payment is contemplated by Bankruptcy Rule 6003.

20. None of the Foreign Vendors have made a concession or other agreement in consideration of the proposed payments, including the extension of post-petition trade credit; however, giving the Debtors the authority to make these payments will provide a very strong incentive for the Foreign Vendors to continue providing goods and services to the Debtors from and after the Petition Date.

**WHEREFORE**, the Debtors respectfully request the Court enter an Order in the form attached hereto as **Exhibit "B"** providing (i) authority, but not direction, to pay or honor prepetition obligations to Foreign Vendors in an amount not to exceed $3,000,000.00; (ii) authority to continue funding the Foreign Entities in their ordinary course of business; (iii) authority for and a direction to the Debtors' banks to (a) honor any checks drawn against their accounts and payable to Foreign Entities, but not cleared prior to the Petition Date related to the payment of Foreign Entities, and (b) complete any fund transfer requests made to Foreign Entities but not completed prior to the Petition Date; (iv) authority to issue post-petition checks and to make post-petition fund transfer requests to replace any prepetition checks and prepetition transfers to Foreign Entities that may be dishonored by the Debtors' banks; and (v) such other

relief as the Court deems just and proper.

Dated: October 10, 2022
       Miami, Florida

Respectfully submitted,

/s/ Jordi Guso

| | |
|---|---|
| George A. Davis (*pro hac vice* pending) | Jordi Guso |
| Tianjiao ("TJ") Li (*pro hac vice* pending) | Florida Bar No. 863580 |
| Brian S. Rosen (*pro hac vice* pending) | Michael J. Niles |
| Jonathan J. Weichselbaum (*pro hac vice* pending) | Florida Bar No. 107203 |
| **LATHAM & WATKINS LLP** | **BERGER SINGERMAN LLP** |
| 1271 Avenue of the Americas | 1450 Brickell Avenue, Suite 1900 |
| New York, NY 10020 | Miami, FL 33131 |
| Telephone: (212) 906-1200 | Telephone: (305) 755-9500 |
| Email: george.davis@lw.com | Email: jguso@bergersingerman.com |
|        tj.li@lw.com |        mniles@bergersingerman.com |
|        brian.rosen@lw.com | |
|        jon.weichselbaum@lw.com | |

– and –

Andrew D. Sorkin (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: andrew.sorkin@lw.com

– and –

Jeramy D. Webb (*pro hac vice* pending)
Whit Morley (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: jeramy.webb@lw.com
       whit.morley@lw.com

*Proposed Co-Counsel for the Debtors*

11671860-6

**EXHIBIT "A"**
**(List of Foreign Claims)**

| Name and Address of Foreign Vendor | Description of Services Provided | Estimated Prepetition Amount Owing to Foreign Vendor |
|---|---|---|
| Fona International Inc.<br>2447 Anson Drive, Unit # 2<br>Mississauga ON L5S 1G1 Canada | Flavoring supplier – also services the US via US locations | $ 91,778.00 |
| Kerry Ingredients & Flavours<br>Via Capitani di Mozzo<br>12/16, 24030 Mozzo  BG, Italy | Flavoring supplier – also services the US via US locations | $ 4,500.00 |
| DIS BV.<br>Gasthousgraff 9, 6136<br>NL KS Sittard Netherlands | Beverage distributor used in Europe | $ 105,719.00 |
| De WERKPlaats Sittard B.V..<br>Rijksweg Zuid 27, 6131 AL Sittard, Netherlands | Office rental space supporting the European team | $ 1,630.00 |
| Ewals Cargo Care B.V.<br>Ariensstraat 61-63<br>5931 HM<br>The Netherlands | Large freight company Debtors work with in Europe | $ 22,298.00 |
| Gehlen Schols Transport & Logistics B.V<br>P.O. Box 29<br>6460 AA Kerkrade, The Netherlands | Freight provider in the Netherlands – significant volume for Debtors | $ 159,970.00 |
| Prinova Solutions Europe Limited<br>Priory Park, Mills Road / Aylesford ME20 7PP<br>United Kingdom | Supplier of amino acids and caffeine to international locations | $ 104,828.00 |
| Dongguan POP Display & Packing Co.<br>#15 Ronghua Road<br>Dongguan, China | Supplier of merchandising displays and packaging (POS displays) | $ 32,340.00 |
| Refresco Iberia<br>Carretera, KM 206.9 N-332<br>46780<br>Olivia, Spain | Supplier of production services – co-packer in Spain for the region | $ 93,966.00 |

| Name and Address of Foreign Vendor | Description of Services Provided | Estimated Prepetition Amount Owing to Foreign Vendor |
|---|---|---|
| Refresco Canada Inc.<br>6525 Viscount Road<br>Mississauga ON L4V 1H6<br>Canada | Supplier of production services – co-packer in Canada for the entire country | $ 9,756.00 |
| Refresco Benelux B.V.<br>Orange Nasaulan 44<br>6026 PX Maarheeze<br>The Netherlands | Supplier of production services – co-packer in the Netherlands for the region | $ 181,994.00 |
| Harboe Group<br>Darguner Brauerei Gmbh 17159<br>Dargun Germany | Co-packer for the European region | $ 1,757.00 |
| Dieck & Co. Erfrischunsgetranke OHG<br>Porchestr 4,<br>Huckelhoven 41836 GERMANY | Former co-packer for the European region – no longer doing business with them | $ 36,913.00 |
| KRYNICA VITAMIN SPÓŁKA AKCYJNA<br>Matyldy St 35<br>Warsaw, 03-606 Poland | Co-packer for the European region | $ 308,722.00 |
| Dohler Dahlenburg G.m.b.H<br>Gartenstrasse 13 21368<br>Dahlenburg, Germany | International division of Doehler - supplier of proprietary blend used in Bang ingredients | $ 6,216.00 |
| Oettinger Brauerei G.m.b.H<br>Friedrich-Seele-Straße 13 38122<br>Braunschweig, Germany | Distributor in Germany that works directly with Andrew Blakely (Sales) | $ 5,614.00 |
| Alliance IntraPak Inc.<br>2200 Transcanadienne Pointe-Claire,<br>Qubec H9R 1B1, Canada | Packaging solutions provider located in Canada for Canadian business | $ 17,089.00 |
| Takasago Europe G.m.b.H<br>Industriestrasse 40, 53909<br>Zulpich, Germany | Flavoring supplier | $ 4,852.00 |

2

11671860-6

| Name and Address of Foreign Vendor | Description of Services Provided | Estimated Prepetition Amount Owing to Foreign Vendor |
|---|---|---|
| ADM Wild Europe G.m.b.H & Co. KG<br>Am Schlangengraben 3-5 13597 Berlin Germany | Flavoring supplier – also services the US via US locations. | $ 135,132.00 |
| EFL Global Logistics Canada LTD<br>40 King St W<br>Suite 5800<br>Toronto, ON M5H4A9 | Third-Party Shipper and Logistics Company | $ 23,094.00 |
| CHEP Canada Inc.<br>7400 E Danbro Cres<br>Mississuaga, ON L5N 8C6, Canada | Pallet company supplying CHEP pallets | $ 494.00 |
| Konings Drinks BV<br>Teteringsedsk 227<br>ME Breda, Netherlands | Supplier of production services – co-packer for the European region | $ 716,046.00 |
| Kian Joo Canpack Sdn Bhd<br>107 Jalan Permata<br>1 71800 Kawasan Industri Arab Malaysia | International supplier of cans | $ 223,428.00 |
| Fona International Canada ULC<br>2447 Anson Dr<br>Mississauga, ON L5S 1G1 Canada | Flavoring supplier – also services the US via US locations. | $ 1,446.00 |
| Mitchel Lincoln Packaging Ltd<br>3737 Thimens Blvd<br>Montreal, QC H4R 1V1 Canada | Canadian manufacturer of shippers – merchandising / POS | $ 32,299.00 |
| Simon Pure Marketing Inc.<br>89 Mortimer Ave<br>Toronto, ON M4K 2A2 Canada | Canadian sampling company that assists the region with marketing | $ 25,392.00 |
| **TOTAL** | | $ 2,347,273.00 |

3

11671860-6

4

**EXHIBIT "B"**

**(Proposed Order)**

11671860-6

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Case |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-_____ |
| Debtors. _____/ | (Joint Administration Pending) |

**ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR (A) THE AUTHORITY TO PAY PREPETITION OBLIGATIONS OWING TO FOREIGN VENDORS, SERVICE PROVIDERS AND GOVERNMENTS AND (B) TO HONOR AND CONTINUE PAYING FOREIGN VENDORS IN THE ORDINARY <u>COURSE OF BUSINESS</u>**

**THIS MATTER** having come before the Court for a hearing on October __, 2022 at ___ a.m./p.m. in Fort Lauderdale, Florida upon the *Debtors' Emergency Motion For (A) The Authority To Pay Prepetition Obligations Owing To Foreign Vendors, Service Providers And Governments*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

11672210-2

*And (B) To Honor And Continue Paying Foreign Vendors In The Ordinary Course Of Business* (the "Motion") [ECF No. __],[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors").  The Court finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditor; (v) proper and adequate notice of the Motion and the hearing thereon has been given under the circumstances and no other or further notice is necessary; and (vi) upon the record herein after due deliberation thereon good and sufficient cause exists for the granting of the relief as set forth herein.  Accordingly, it is

    **ORDERED** as follows:

    1.    The Motion is **GRANTED**.

    2.    The Debtors are hereby authorized, but not required, to pay or honor prepetition obligations to Foreign Entities identified in **Exhibit "A"** to the Motion, including, among other groups (a) foreign vendors, (b) certain foreign professionals including, but not limited to, customs agents and brokers, freight forwarders, and quality control agents, and (c) foreign taxing authorities, all of which the Debtors reasonably believe will not concede to be subject to the jurisdiction of the Bankruptcy Court, a total of not more than $3,000,000.00.

    3.    The Debtors are authorized, but not directed, to continue funding the Foreign Entities and otherwise deal with those Foreign Entities in the ordinary course of business and in accordance with normal pre-petition procedures and agreements.

---

[2] Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

4. The Debtors are hereby authorized to issue postpetition checks and to make postpetition fund transfer requests to replace any prepetition checks and prepetition transfers to Foreign Entities that may be dishonored by the banks.

5. Foreign banks with which the Debtors conduct business are expressly authorized to conduct their business with Debtors in the ordinary course, unaffected by the Debtors' bankruptcy.

6. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, the assumption of any contract or agreement under 11 U.S.C. § 365.

7. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

8. Notwithstanding anything to the contrary contained herein, the terms and conditions of this Order, and authority granted to the Debtors herein, shall be subject in all respects to any requirements imposed upon the Debtors under any approved debtor-in-possession financing facility or order with respect thereto regarding the use of cash collateral, including, without limitation, any approved budget.

# # #

Submitted by:
Jordi Guso, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email: jguso@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

3

11672210-2