UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                         Chapter 11 Case

VITAL PHARMACEUTICALS, INC., *et al.*,[1]         Case No.: 22-_____

    Debtors.                                                 (Joint Administration Pending)
_____/

**DEBTORS' EMERGENCY MOTION FOR AN ORDER AUTHORIZING PAYMENT
OF PREPETITION CLAIMS OF CRITICAL VENDORS**
**(Emergency Hearing Requested)**

**Statement of Exigent Circumstances**

    The Debtors respectfully request the Court to conduct an expedited hearing on this Motion, as it is essential for the Debtors to pay certain critical vendors in order to maintain business operations in the ordinary course. The vendors that the Debtors seek to pay through this Motion are critical to the Debtors' daily operations and, thus, critical to the successful reorganization of the Debtors. Without payments to certain critical vendors, the Debtors' businesses will likely suffer significant, if not irreparable, harm. The Debtors respectfully request that the Court waive the provisions of Local Rule 9075-1 (B), which requires an affirmative statement that a bona fide effort was made in order to resolve the issues raised in this Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev LLC and Vital Pharmaceuticals International Sales, Inc. (collectively, the "Debtors"), by and through their proposed undersigned counsel, pursuant to 11 U.S.C. §§ 105(a) and 363, file this motion (the "Motion") seeking the entry of an Order authorizing the Debtors to pay the

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

11582758-8

prepetition claims of certain vendors that are critical to the continued operation of the Debtors' businesses. In support of this Motion, the Debtors rely upon the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and incorporated herein and respectfully represent the following:

## Background

1. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. The Debtors are operating their business and managing their affairs as debtors-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

3. For a detailed description of the Debtors and their operation, the Debtors respectfully refer the Court and parties in interest to the First Day Declaration.

## Relief Requested and Basis Therefor

**A.    Prepetition Critical Vendor Claims**

4. The Debtors seek authority to pay the prepetition claims of certain vendors, totaling $14,892,981.78 in the aggregate, that are critical to the Debtors' businesses. Attached hereto as **Exhibit "A"** is a list of those vendors (collectively, the "Critical Vendors")[2] that the Debtors deem to be critical to their business operations. The Critical Vendors are essential to the Debtors' business operations as they provide goods and services to the Debtors that are necessary to the ongoing business operations. Certain of the Critical Vendors are vendors that are the sole source provider of products used in the Debtors' business operations. Due to market constraints,

---

[2] The names of the Critical Vendors have been redacted in order to prevent discord among the Debtors' vendors and other creditors that could result if the identity of the Critical Vendors was disclosed.

2

11582758-8

relationship issues and other challenges, these Critical Vendors are the Debtors' only supplier options. In addition, certain of the Critical Vendors provide specific ingredients required for the Debtors' products. The Debtors and their research and development team have spent years developing specifications that have been adopted, tested, and perfected over time with these Critical Vendors. Further, the ingredients that these Critical Vendors supply provide the Debtors with their competitive advantage. Shifting to other vendors would be very challenging and time consuming as it would require the Debtors' research and development team to start over with new vendors which would take 60 to 90 days and cause significant disruption in production, not to mention a substantial increase in costs. Further, certain of the Critical Vendors are utilized by the Debtors for all of their east coast domestic production. Due to the production facility in Phoenix being offline as a result of a fire, the Debtors rely upon these Critical Vendors to assist in maintaining competitive pricing and continued production. Shifting to other vendors could take 60 days causing a disruption in the Debtors' operations while jeopardizing quality of the Debtors' products.

5. Lastly, certain of the Critical Vendors are vital to the Debtors' promotional, endorsement, advertising, and marketing efforts. These Critical Vendors provide specialized and unique services for, or on behalf of, the Debtors. These services include creation and posting of bespoke content on social media platforms, and participation in photoshoots, video-shoots, demos, fitness shows, professional events, industry expos, and trade shows (collectively, "Special Events"). As consideration for such services, these Critical Vendors receive monetary payments depending on the social media platform(s) at issue, number of followers that each such critical vendor possesses, and frequency of that vendor's posting; hourly payments for Special Events; in-kind payments consisting of the Debtors' products; and/or commission payments for

3

sales of the Debtors' products generated online. Importantly, these Critical Vendors cannot be replaced without material, irreparable prejudice to the Debtors. These Critical Vendors, particularly those who focus on the Debtors' promotional, endorsement, advertising, and marketing efforts on social media, provide value—including reputational and goodwill value that are difficult to measure monetarily—based on their own individualities, own talents, own follower communities, and own audience demographics. These Critical Vendors cannot be readily replaced with a new set of random vendors with separate and distinct individualities, talents, follower communities, and audience demographics. The Debtors have spent years, significant costs, and significant effort and other internal resources developing its network of these Critical Vendors. This network of Critical Vendors is industry-leading, and has helped create a brand image for the Debtors that is known globally. These Critical Vendors also provide the Debtors with their competitive advantage in the areas of promotion, endorsement, advertising, and marketing in industries where these areas are vital to differentiation and competition among brands and products that compete with the Debtors' own brands and products.

6. If payment of the claims of the Critical Vendors, the amounts of which are set forth on Exhibit "A" (collectively, the "Critical Vendor Claims"), are not paid, the Critical Vendors will very likely terminate the services they provide to the Debtors and operations of the Debtors' business will be jeopardized to the detriment of all creditors. Most if not all of the Debtors' business operations are dependent upon the Critical Vendors. Accordingly interrupting the business relationship between the Debtors, on the one hand, and the Critical Vendors, on the other hand, if not fatal to the Debtors' efforts to reorganization, will severely impair that effort to the detriment of the Debtors' estates and the creditors thereof. The Debtors believe that payment

of the Critical Vendor Claims is fair and reasonable for the services provided, and essential to a successful reorganization.

7. Notwithstanding anything to the contrary herein, any payment to be made hereunder shall be subject to the requirements imposed on the Debtors under any approved debtor-in-possession financing facility, any budget prepared in connection therewith, and any order regarding the use of cash collateral.

**B.      Memorandum of Law**

   **(i)   Courts Widely Recognize a Debtor's Authority to Make Postpetition Payments of Critical Prepetition Claims Under the "Necessity of Payment" Doctrine.**

8. The relief requested in this Motion is authorized pursuant to sections 363 and 364 of the Bankruptcy Code. *See, e.g., In re UAL Corporation, et al.*, Case No. 02-48191 (ERW) (Bankr. N.D. Ill. Dec. 11, 2002) (an essential trade motion generated by section 363 is "completely consistent with the Bankruptcy Code" and such payments have further support where the Debtor seeks "the extension of credit under section 364 on different than usual terms, terms that might include payment of a prepetition obligation."); *In re Armstrong World Indus., Inc.*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (authorizing, pursuant to section 363, a contractor to pay prepetition claims of some suppliers who were potential lien claimants, because the payments were necessary for the general contractors release funds owed to the debtors, benefiting the estate).

9. Satisfaction of a prepetition debt in order to keep "critical" supplies flowing is a use of property other than in the ordinary course of administering an estate in bankruptcy under section 363(b)(1) of the Bankruptcy Code. *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 19 (Bankr. M.D. Fla. 2005) (citing *In re Kmart Corp.,* 359 F.3d 866, 872 (7th Cir. 2004)). Code

Section 105(a) allows a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Code. 11 U.S.C. § 105(a). However, the power conferred by section 105(a) is one to implement rather than override the other provisions of the Bankruptcy Code. *Tropical Sportswear*, 320 B.R. at 19; *see also Kmart Corp.*, 359 F.3d at 871 (citing *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206 (1988); *In re Fesco Plastics Corp.,* 996 F.2d 152, 154 (7th Cir.1993)).

10. It is well established that a bankruptcy court has the equitable power to authorize the payment of prepetition claims where such payments are necessary to preserve the going-concern value of a debtor's business, thereby facilitating reorganization. *See, e.g., Miltenberger v. Logansport, Crawfordsville and Southwestern Ry. Co.*, 106 U.S. 286, 311 (1882); *In re Lehigh & New England Ry. Co..*, 657 F.2d 570, 581 (3d Cir. 1981); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 (3d Cir. 1972); *In re Just For Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999). ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of prepetition claims when such payment is necessary for the survival during Chapter 11.").[3]

11. There is ample precedent for the post-petition satisfaction of the specific types of prepetition claims described in the Motion. For example, bankruptcy courts have granted debtors relief substantially similar to that sought by the instant Motion. *See, e.g., In re Eagle -Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payments of prepetition claims where "the payment is necessary to avert a serious threat to the Chapter 11 process"). In

---

[3] The "doctrine of necessity" is sometimes referred to as the "necessity of payment" doctrine or "necessity of payment" rule, and falls within a bankruptcy court's equitable powers under Section 105(a) of the Bankruptcy Code. *See Just For Feet*, 242 B.R. at 824 ("Certain prepetition claims by employees and trade creditors . . . may need to be paid to facilitate a successful reorganization.") (citing 11 U.S.C. § 105(a)).

6

addition, several courts in this district have granted relief similar to that sought herein. *See, e.g., In re Liberty Power Holdings, LLC,* Case No. 21-13797-SMG (Bankr. S.D. Fla. April 30, 2021); *In re It's Sugar FL I LLC, et al.,* Case No. 20-20259-RAM (Bankr. S.D. Fla. Mar. 16, 2021); *In re TM Healthcare Holdings, LLC, et al.,* Case No. 20-20024-EPK (Bankr. S.D. Fla. Jan. 6, 2021); *In re Toojay's Management LLC, et al.,* Case No. 20-14792-EPK (Bankr. S.D. Fla. June 30, 2020); *In re Miami Air International, Inc.*, Case No. 20-13924-AJC (Bankr. S.D. Fla. April 7, 2020); *In re Structured Cabling Solutions, Inc.,* Case No. 20-12551-RAM (Bankr. S.D. Fla. Mar. 13, 2020); *In re Gulfstream International Group, Inc., et al.,* Case No. 10-44131-JKO (Bankr. S.D. Fla. Dec. 3, 2010); *In re Mercedes Homes, Inc., et al.,* Case No. 09-1191-PGH (Bankr. S.D. Fla. Jan. 29, 2009).

12.    The District Court for the District of Delaware has applied the necessity of payment doctrine to authorize a retail debtor to pay prepetition claims of trade vendors in order to obtain approximately $50 million of new inventory for the holiday shopping season. *See Just For Feet*, 242 B.R. at 826.  Similarly, in *Eagle-Picher,* the Bankruptcy Court for the Southern District of Ohio affirmed the vitality of the necessity of payment doctrine.  The court permitted the debtors to make immediate post-petition payments to vendors who supplied tools essential to the debtors' manufacturing operations.  The court found that payment of prepetition claims held by this critical constituency was justified because the failure to pay such claims would disrupt the debtors' businesses and business relationships and, accordingly, would "lead to the loss of competitive position by [the] debtors." *Eagle-Picher*, 124 B.R. at 1023.  Likewise, in the LTV Corporation's former reorganization beginning in the late 1980's, the bankruptcy court authorized the payment of certain prepetition wages, salaries and employee benefits and reimbursement of expenses, as well as certain workers' compensation obligations, aggregating in

excess of $250 million. *See In re Chateaugay Corp.*, 80 B.R. 279, 281 (S.D.N.Y. 1987). On appeal, one creditor challenged the order on the ground that the debtor should have been required to pay <u>all</u> similarly situated prepetition claimants. The district court, however, affirmed the bankruptcy court's order authorizing the debtor to make selective prepetition payments, finding that such payments did not violate the claim priority provisions of Section 507 of the Bankruptcy Code:

> A rigid application of the priorities of § 507 would be inconsistent with the fundamental purpose of reorganization and of the Act's grant of equity powers to bankruptcy courts, which is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.
>
> \* \* \*
>
> In this case a restrictive interpretation of § 507 or of the powers accorded the bankruptcy court judge would similarly defeat the very end of Chapter 11 petitions.

*Id.* at 287. The district court thus affirmed the bankruptcy court's holding that a court may authorize the selective payment of certain prepetition claims where it would help to preserve and maximize the value of the debtor's estate. *Id; see also Ionosphere Clubs*, 98 B.R. at 175-76.

13. In another chapter 11 case, the bankruptcy court applied the same rationale in authorizing the debtor to pay certain prepetition employee claims for wages, health and life insurance and workers' compensation premiums. *See In re Gulf Air, Inc.*, 112 B.R. 152 (Bankr. W.D. La. 1989). The *Gulf Air* court found that such payments were in the best interests of creditors, the debtor and the debtor's employees and were essential to a successful reorganization. *Id.* at 153-43; *see also In re UNR Indus., Inc.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) ("The Necessity Doctrine may . . . be used. . . to justify post-petition payment of a wide variety of other types of prepetition claims, as long as the payment of those claims will help to stabilize [the] debtor's business relationships without significantly hurting any party." . . . . [The

8

key is] whether payment of the claim will be in the best interests of the estate and/or the other creditors.") (citation omitted), *rev'd and remanded on other grounds*, 173 B.R. 149 (N.D. Ill. 1994).

14. Lastly, on facts strikingly similar to those before this Court, the Bankruptcy Court for the Southern District of Florida approved payment of part of a prepetition claim held by a vendor who provided computer and software-related services that were deemed critical to the debtor's business and reorganization efforts. *In re Proven Methods Seminars, LLC d/b/a National Grants Conferences,* Case No. 08-28469-BKC-EPK (Bankr. S.D. Fla. Mar. 9, 2009) (Docket No. 136). In return for payment, the vendor, like the Critical Vendors here, agreed to continue providing services to the Debtor.

### C. Satisfying the Prepetition Claims Described in the Motion is Justified Because the Satisfaction of These Claims is Essential to Ongoing Business Operations and to the Success of the Debtor's Reorganization Efforts

15. Under the "necessity of payment" doctrine articulated in the above-cases, the selective payment of a prepetition claim is manifestly warranted. The seamless transition into chapter 11 is critical to the continued operations of the Debtors' businesses. It is critical to the Debtors' reorganization efforts that the Debtor pay the Critical Vendor Claims in the amounts set forth on **Exhibit "A."**

### Conclusion

16. To avoid significant -- and perhaps irreparable – impairment of their business operations, the Debtors respectfully submit that it is appropriate for the Court to grant the relief requested. If the Motion is denied, the Debtors' businesses will suffer immediate and substantial interruptions before the Debtors have the opportunity to attempt to reorganize. In the very early stage of the Debtors' effort to reorganize their financial affairs, it is especially

important to maintain a "business as usual" atmosphere to ensure smooth and uninterrupted business operations. It is the Debtors' business judgment, therefore, that authority to pay immediately the Critical Vendor Claims described in the Motion is essential to the success of the chapter 11 cases and the Debtors' reorganization efforts. Accordingly, for all of the reasons set forth herein, the relief requested in the Motion should be granted.

17. The relief requested in this Motion contemplates payments to be made to only Critical Vendors who agree to provide goods or services on customary trade terms. Any Critical Vendor paid pursuant to this Motion must agree to continue supplying the Debtors with goods and services on the same trade terms as governed the relationship prepetition.

**WHEREFORE**, the Debtors respectfully requests that the Court enter an order in the form attached hereto as **Exhibit "B**," (i) granting the relief requested in this Motion; (ii) authorizing the Debtors to pay the Critical Vendor Claims as set forth on **Exhibit "A,"** and (iii) granting such other relief as the Court deems just and proper.

| | |
|---|---|
| Dated: October 10, 2022<br>Miami, Florida | Respectfully submitted,<br><br>/s/ *Jordi Guso* |
| George A. Davis (*pro hac vice* pending)<br>Tianjiao ("TJ") Li (*pro hac vice* pending)<br>Brian S. Rosen (*pro hac vice* pending)<br>Jonathan J. Weichselbaum (*pro hac vice* pending)<br>**LATHAM & WATKINS LLP**<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Email: george.davis@lw.com<br>       tj.li@lw.com<br>       brian.rosen@lw.com<br>       jon.weichselbaum@lw.com | Jordi Guso<br>Florida Bar No. 863580<br>Michael J. Niles<br>Florida Bar No. 107203<br>**BERGER SINGERMAN LLP**<br>1450 Brickell Avenue, Suite 1900<br>Miami, FL 33131<br>Telephone: (305) 755-9500<br>Email: jguso@bergersingerman.com<br>       mniles@bergersingerman.com |

– and –

11582758-8

Andrew D. Sorkin (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: andrew.sorkin@lw.com

– and –

Jeramy D. Webb (*pro hac vice* pending)
Whit Morley (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: jeramy.webb@lw.com
whit.morley@lw.com

*Proposed Co-Counsel for the Debtors*

**EXHIBIT "A"**
**(List of Critical Vendor Claims)**

| Name and Address of Critical Vendor | Description of Services Provided | Estimated Prepetition Amount Owing to Critical Vendor |
|---|---|---|
| ■■■ | Vendor is a North American supplier of cans and can ends. Due to market constraints, relationship issues and other challenges this Vendor is the Debtors only supply option for cans. | $5,280,746.00 |
| ■■■ | Vendor is a supplier of required packaging materials for the custom manufacturing facility built in Phoenix, AZ that are equipped to only work with this Vendor's products. | $2,399,443.00 |
| ■■■ | Vendor is the sole supplier of certain ingredients for the Debtors products. Shifting to another vendor would be very challenging as it would require the Debtors' research and development team to start over with a new vendor which could take 60-90 days and cause a disruption in production. | $1,377,375.55 |
| ■■■ | Vendor is a co-packer utilized by the Debtors for all of its east coast domestic production as well as all Canadian production. Due to the production facility in Phoenix, AZ being offline, Vendor assists in maintaining competitive pricing and continued production. It would take more than 60-days for the Debtors to switch to another co-packer causing a disruption in the operations of the business while jeopardizing quality. | $440,797.73 |
| ■■■ | Vendor is a supplier of certain ingredients for the Debtors products. Shifting to another vendor would be very challenging as it would require the Debtors' research and development team to start over with a new vendor which could take 60-90 days and cause a disruption in | $951,223.56 |

| Name and Address of Critical Vendor | Description of Services Provided | Estimated Prepetition Amount Owing to Critical Vendor |
|---|---|---|
| | production. | |
| ███ | Vendor is an exclusive supplier of certain ingredients for the Debtors products. Shifting to another vendor would be very challenging as it would require the Debtors' research and development team to start over with a new vendor which could take 60-90 days and cause a disruption in production. | $793,146.72 |
| ███ | Vendor is a co-packer utilized by the Debtors for all of its west coast domestic production as well as all Canadian production.  Due to the production facility in Phoenix, AZ being offline, Vendor assists in maintaining competitive pricing and continued production.  It would take more than 60-days for the Debtors to switch to another co-packer causing a disruption in the operations of the business while jeopardizing quality. | $1,035,169.04 |
| ███ | Vendor is the supplier of parts for the custom equipment installed in the Phoenix production plants. Due to the custom nature of the equipment engineered and installed within the manufacturing process and the Vendor has no other option to replace the custom parts. | $403,747.57 |
| ███ | Vendor is an exclusive supplier of certain ingredients for the Debtors products. Shifting to another vendor would be very challenging as it would require the Debtors' research and development team to start over with a new vendor which could take 60-90 days and cause a disruption in production. | $170,446.60 |
| ███ | Vendor is an exclusive supplier of certain ingredients for the Debtors products. Shifting to another vendor | $73,227.22 |

13

| Name and Address of Critical Vendor | Description of Services Provided | Estimated Prepetition Amount Owing to Critical Vendor |
|---|---|---|
| | would be very challenging as it would require the Debtors' research and development team to start over with a new vendor which could take 60-90 days and cause a disruption in production. | |
| [REDACTED] | Vendor is a supplier of packaging material in an area that has geographic constraints around sourcing other re-packers for the area covered by this Vendor. | $220,096.42 |
| [REDACTED] | Vendor is the required supplier of packaging and pallet services for the majority of the Debtor's vendors and packagers. | $391,926.42 |
| [REDACTED] | Vendor is an exclusive supplier of certain ingredients for the Debtors products. Shifting to another vendor would be very challenging as it would require the Debtors' research and development team to start over with a new vendor which could take 60-90 days and cause a disruption in production. | $40,419.93 |
| [REDACTED] | Vendor is a supplier of packaging material to satisfy the Debtors' re-sleeving requirements in the Southwest Region of the United States. Securing a new vendor would increase costs to the Debtor and could take 60-90 days to procure. | $25,473.36 |
| [REDACTED] | Vendor has a long relationship with the Debtor and is an exclusive supplier of certain ingredients for the Debtors products. Shifting to another vendor would be very challenging as it would require the Debtors' research and development team to start over with a new vendor which could take 60-90 days and cause a disruption in production. | $610,256.40 |

11582758-8

| Name and Address of Critical Vendor | Description of Services Provided | Estimated Prepetition Amount Owing to Critical Vendor |
|---|---|---|
| ▉ | Vendor has a long relationship with the Debtor and is an exclusive supplier of certain ingredients for the Debtors products. Shifting to another vendor would be very challenging as it would require the Debtors' research and development team to start over with a new vendor which could take 60-90 days and cause a disruption in production. | $46,562.98 |
| ▉ | Vendor is a sole source vendor that provides all of the Debtor's 2.5 oz and 8 oz bottles. Due to market constraints, relationship issues and other challenges this Vendor is the Debtors only supply option. The transition time required to change this Vendor is estimated to be 4-6 months and the process would be detrimental to operations. | $282,923.28 |
| ▉ | These Vendors focus on the Debtors' promotional, endorsement, advertising, and marketing efforts on social media. They provide value—including reputational and goodwill value that are difficult to measure monetarily—based on their own individualities, own talents, own follower communities, and own audience demographics. These Critical Vendors cannot be readily replaced with a new set of random vendors with separate and distinct individualities, talents, follower communities, and audience demographics. | $350,000.00 |
| **TOTAL** | | **$14,892,981.78** |

11582758-8

# EXHIBIT "B"

**(Proposed Order)**

11582758-8

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Case |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-_____ |
| Debtors. _____/ | (Joint Administration Pending) |

**ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR AN
ORDER AUTHORIZING PAYMENT OF PREPETITION
<u>CLAIMS OF CRITICAL VENDORS</u>**

**THIS MATTER** having come before the Court for a hearing on October ___, 2022 at _____ a.m./p.m. in Fort Lauderdale, Florida upon the *Debtors' Emergency Motion for an Order Authorizing Payment of Prepetition Claims of Critical Vendors* (the "<u>Motion</u>") [ECF No. ____] filed by the above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>").

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

11582914-1

The Court finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)A), and that this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; (v) proper and adequate notice of the Motion and the hearing thereon has been given under the circumstances and no other or further notice is necessary; and (vi) upon the record herein after due deliberation thereon good and sufficient cause exists for the granting of the relief as set forth herein. Accordingly, it is

**ORDERED** as follows:

1. The Motion is **GRANTED**.

2. The Debtors are authorized, but not required, to pay or honor prepetition obligations (the "Prepetition Claim Payment") to Critical Vendors.[2]  The Debtors have authority to pay a total of not more than $14,892,981.78 in satisfaction of Critical Vendor Claims.

3. Any Critical Vendor who receives a Prepetition Claim Payment must extend all Customary Trade Terms to the Debtors.  Any Critical Vendor who receives a Prepetition Claim Payment and does not extend all Customary Trade Terms to the Debtors must return the Prepetition Claim Payment to the Debtors.

4. The Debtors are hereby authorized to issue post-petition checks and to make post-petition fund transfer requests to replace any pre-petition checks and prepetition transfers to Critical Vendors that may be dishonored by any bank.

---

[2] All capitalized terms not defined herein shall have the meaning given to them in the Motion.

5.  Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, the Debtors' assumption of any contract or agreement under 11 U.S.C. § 365.

6.  Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity.

7.  This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

# # #

Submitted by:
Jordi Guso, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*