UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                Chapter 11 Case

VITAL PHARMACEUTICALS, INC., *et al.*,[1]       Case No.: 22-_____

    Debtors.                                         (Joint Administration Pending)
_____/

**DEBTORS' EMERGENCY MOTION PURSUANT TO SECTIONS 105(a),
363, 1107 AND 1108 OF THE BANKRUPTCY CODE FOR AN ORDER
(A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO
(I) MAINTAIN AND ADMINISTER CUSTOMER PROGRAMS, AND
(II) TO HONOR OR PAY CERTAIN PREPETITION OBLIGATIONS
TO THEIR CUSTOMERS IN THE ORDINARY COURSE OF BUSINESS;
AND (B) GRANTING CERTAIN RELATED RELIEF**
(**Emergency Hearing Requested**)

**Statement of Exigent Circumstances**

The Debtors respectfully request the Court conduct an emergency hearing on this Motion. In the operation of their businesses, the Debtors maintain several customer programs. By this Motion, the Debtors seek authority to continue to maintain and administer customer programs and to honor or pay certain prepetition obligations to their customers in the ordinary course of business. The Debtors reasonably believe that a hearing to consider the relief requested must be held on an emergency basis as soon as the Court's calendar will permit. The Debtors respectfully request that the Court waive the provisions of Local Rule 9075-1(B) which require an affirmative statement that a bona fide effort was made in order to resolve the issues raised in this motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev LLC and Vital Pharmaceuticals International Sales, Inc. (collectively, the "Debtors"), by and

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

11648224-3

through their proposed undersigned counsel, file this motion (the "Motion") for entry of an order: (a) authorizing, but not directing, the Debtors (i) to maintain and administer their customer programs and (ii) to honor or pay certain prepetition obligations to their customers, as detailed herein, in the ordinary course of business, and (b) granting certain related relief. In support of this Motion, the Debtors rely upon the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), which was filed with the Court concurrently herewith, and respectfully represent as follows:

## Jurisdiction

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are sections 105(a), 363(b) and 507(a)(7) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 6003 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 9013-1(F).

## Background

4. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.

5. The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the First Day Declaration.

**Relief Requested**

7. By this Motion, brought pursuant to sections 105(a), 363, and 507(a)(7) of the Bankruptcy Code, the Debtors seek entry of an order (a) authorizing the Debtors to honor or pay certain prepetition obligations to their customers in the ordinary course of business, (b) authorizing the Debtors to continue, renew, replace, implement new, and terminate any existing customer practices as they deem appropriate, in the ordinary course of business without further application to the Court, and (c) granting certain related relief.

**The Customer Programs**

8. The Debtors are one of the leading manufactures, distributors and sellers of energy drinks and dietary supplement products in the United States. The Debtors manufacture, market, and distribute a wide variety of energy drinks and dietary supplement products (the "Customer Products") to retailers across the United States (the "Customers") for consumption by active-lifestyle and fitness driven consumers (the "Consumers").

9. Prior to filing these chapter 11 cases, and in the ordinary course of their business, the Debtors incurred various obligations related to their wide variety of Customer Products sold under various contracts and arrangements to their Customers in order to sustain efficient day-to-day operations. These obligations include those arising in connection with certain Trade Promotions, Slotting Allowances, and Other Customer Programs (collectively, the "Customer Obligations"). The Debtors seek authority to satisfy, in their sole discretion, those Customer Obligations that they deem valuable and cost-effective to their businesses. Such relief is necessary to preserve the Debtors' critical business relationships and Customer satisfaction for the benefit of their estates. For this and the other reasons set forth herein, it is essential and in the best interests of the Debtors, their estates, and their creditors that the Debtors be permitted to

honor their prepetition and post-petition Customer Obligations and to continue or implement new Customer practices in the ordinary course of the Debtors' businesses as the Debtors deem necessary.

10. With respect to their Customer Products, the Debtors operate in a highly competitive market for energy drinks and dietary supplements, including products purchased for resale, where alternate suppliers of similar products are available to the same demographic that consumes the Debtors' Customer Products. This competition makes retaining the Debtors' relationship with their Customers extremely important. Without expanding their Customer Products' brand and reaching direct Consumers, the profitability of the Debtors' Customer Products and its entire enterprise would be reduced. It is essential, therefore, that the Debtors maintain their current Customers through this challenging period. Fulfilling the Customer Obligations accomplishes this goal by ensuring Customer satisfaction and generating reoccurring business and increasing net revenue.

11. In particular, the Debtors' goodwill and ongoing business relationships may erode if their Customers perceive that the Debtors are unable or unwilling to fulfill their prepetition commitments they have made through the Customer Obligations. In general, the Debtors estimate outstanding Customer Obligations of approximately $12,100,000.00 as of the Petition Date. The Debtors submit that the benefits to the Debtors, their estates and creditors, and all other parties in interest of satisfying the Customer Obligations on a timely basis far exceed the cost of such payments.

12. The Debtors' Customer Programs include the following:

**Trade Promotions:** The Debtors provide programs where Customers are offered incentives to increase purchase volumes and for specific in-store execution (collectively, the

"Trade Promotions"). Customers participating in these Trade Promotions offer Consumers reduced prices, specifically advertise the Debtors' Customer Products in marketing campaigns, erect specific displays, or otherwise feature the Debtors' products to Consumers. In return, the Debtors provide the Customers with price reductions or cash rebates for the Customer Products sold.

**Slotting Allowances:** Where permitted, the Debtors incur costs associated with purchasing shelf space in retail locations ("Slotting Allowances"). In many instances, due to the competition in the energy drink and dietary supplement industry, payment of the Slotting Allowance is required in order to have an established presence in the Customers' retail establishments.

**Other Customer Programs:** In addition to the foregoing, from time to time, the Debtors may participate in various marketing or other Customer Programs, which can include weekly ad circulars, product samples, cooler placements, free-fills or event sponsorship (either promotional or charitable) for Consumers or Customers.

## Basis for Relief Requested

13.   If the Debtors are unable to continue their Customer practices and honor the prepetition Customer Obligations, the Debtors risk alienating their Customers to select competing producers of other energy drinks and dietary supplement products. The Debtors operate in a highly competitive sector. A significant portion of the value of the Debtors' businesses is, and will be, dependent upon the loyalty and confidence of their Customers. If the Debtors fail to honor the Customer Obligations due in the ordinary course, they will almost certainly suffer an irreparable loss of Customer support and confidence, thereby undermining their efforts to maximize value for

their estates. The relief requested in this Motion will help minimize any disruption in the Debtors' business operations and preserve the value of the Debtors' estates.

14. Section 105(a) of the Bankruptcy Code, which codifies the equitable powers of bankruptcy courts, authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The payment and continuance of the Customer Obligations described herein should be authorized pursuant to §105(a) and the "necessity of payment" rule (now also referred to as the "doctrine of necessity").

15. The "doctrine of necessity" or the "necessity of payment" rule originated in railway cases and was first articulated in *Miltenberger v. Logansport, R. Co.*, 106 U.S. 286 (1882). The doctrine was expanded to non-railroad debtors in a decision by Judge Learned Hand in *Dudley v. Mealey*, 147F.2d 268, 271 (2d Cir. 1945), *cert. denied*, 325 U.S. 873 (1945) (holding, in a hotel reorganization case, that the court was not "helpless" to apply the rule to supply creditors of non-railroad debtors where the alternative was the cessation of operations).

16. Today, the rationale for the "necessity of payment" rule - the maintenance of a debtor in bankruptcy cases - is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). *See also Monte Vista Lodge v. Guardian Life Ins. Co. of America*, 384 F.2d 126 (9th Cir. 1967) (Congress has adopted the policy of promoting debtor rehabilitation through corporate reorganizations); *In re Timberhouse Post and Beam, Ltd.*, 196 B.R. 547, 550 (Bankr. D. Mont. 1996) (stating the "policy behind the Code recognizes that the debtor needs a certain degree of freedom on its road to reorganization so that it might avoid precisely those pitfalls which brought it into bankruptcy initially.") (citing *In re Johns-Manville Corp.*, 60 B.R. 612, 617 (Bankr. S.D.N.Y. 1986)); *Pension Benefit Guar. Corp.*

*v. Sharon Steel Corp., (In re Sharon Steel Corp.)*, 159 B.R. 730, 736-37 (Bankr. W.D. Pa. 1993); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("payment by a debtor-in-possession of prepetition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed, however, where bankruptcy courts permit the payment of certain prepetition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment"); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (court approved payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *In re Adams Apple, Inc.*, 829 F.2d 1484, 1490 (9th Cir. 1987) (court recognized allowance of "unequal treatment of prepetition debts when necessary for rehabilitation . . ."); *In re Chateauguay Corp.*, 80 B.R. 279, 287 (Bankr. S.D.N.Y. 1987) (court authorized payment of prepetition worker's compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately."); *In re Just For Feet, Inc.*, 242 B.R. 821 (Bankr. D. Del. 1999) (court found that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"). *See also* 2 Collier on Bankruptcy ¶ 105.04[5][a] (15th ed. rev. 2004).

17. The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108, and 363(b)(1) of the Bankruptcy Code, which authorize a debtor-in-possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business. Indeed, a debtor-in-possession operating a business under section 1108 of the

Bankruptcy Code has a duty to protect and preserve the going concern value of an operating business, and prepetition claims may be paid if necessary to perform the debtor's duty. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim."). A bankruptcy court's exercise of its authority under section 105(a) of the Bankruptcy Code is also appropriate to carry out two central policies underlying chapter 11: (a) to permit the successful rehabilitation of the debtor; and (b) to preserve going concern value and maximize property available to satisfy all creditors.

18. In furtherance of these policies, courts in this District and elsewhere have regularly authorized debtors to honor and pay obligations to customers arising prior to and after the filing of their chapter 11 cases in the ordinary course of business. *See, e.g., It's Sugar FL I LLC, et al.*, Case No. 20-20259-RAM (Bankr. S.D. Fla. Sept. 29, 2020); *In re Toojay's Management LLC, et al.,* Case No. 20-14792-EPK (Bankr. S.D. Fla. May 22, 2020); *In re Adinath Corp., et al.*, Case No. 15-16885-LMI (Bankr. S.D. Fla. April 21, 2015); *In re Fla. Gaming Ctrs., Inc.*, Case No. 13-29597-RAM (Bankr. S.D. Fla. Aug. 26, 2013); *In re DM Indus., Ltd.*, Case No. 09-15533-LMI (Bankr. S.D. Fla. May 6, 2009); *In re E-Brands Restaurants, LLC, et al.,* Case No. 10-18282-KRM (Bankr. M.D. Fla. Aug. 20, 2010); *see also In re Delta Air Lines, Inc.,* Case No. 05-17923-PCB (Bankr. S.D.N.Y. Sept. 16, 2005); *In re Northwest Airlines Corp.,* Case No. 05-17930-ALG (Bankr. S.D.N.Y. Sept. 15, 2005); *In re Tower Auto., Inc.,* Case No. 05-10578-ALG (Bankr. S.D.N.Y. Feb. 3, 2005); *In re Footstar, Inc.,* Case No. 04-22350-ASH (Bankr. S.D.N.Y. Mar. 30, 2004); *accord In re Kaiser Aluminum Corp.,* Case No. 02-10429-PJW (Bankr. D. Del. Feb. 13, 2002); *In re Burlington Indus., Inc.,* Case No. 01-11282-PJW (Bankr. D. Del. Nov. 15, 2001).

19.     The success and viability of the Debtors' businesses is dependent upon the loyalty and confidence of their Customers.  The continued support of this constituency is absolutely essential to the survival of the Debtors' businesses, the preservation of the value of their estates, and the Debtors' ability to reorganize successfully.  Any delay in honoring or paying various Customer Obligations will severely and irreparably impair the Debtors' Customer relations at a time when the loyalty and support of its Customers (and Consumers) is extremely critical.  By contrast, honoring these prepetition obligations will require limited expenditure of estate funds and will assist the Debtors in preserving their key customer relationships to the benefit of all stakeholders. Accordingly, to preserve the value of their estates, the Debtors must be permitted, in the Debtors' sole discretion, to continue honoring and/or paying all Customer Obligations without interruption or modification.  In addition, to provide necessary assurances to the Debtors' customers on a going-forward basis, the Debtors request authority, in their sole discretion, to continue honoring or paying all obligations to customers that arise from and after the Petition Date in the ordinary course of the Debtors' businesses.

20.     In light of the foregoing, the Debtors respectfully submit that the honoring and the payment of all Customer Obligations as requested herein is essential for the Debtors' successful reorganization, represent an exercise of the Debtors' sound business judgment, and are in the best interests of the Debtors' estates and creditors.

21.     The Debtors further request that all applicable banks and other financial institutions be authorized and directed, when requested by the Debtors in the Debtors' sole discretion, to receive, process, honor, and pay any and all checks drawn on the Debtors' accounts to pay the Customer Obligations, whether such checks were presented prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.

The Debtors represent that each of these checks can be readily identified as relating directly to the authorized payment of the Customer Obligations. Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.

22. Nothing contained herein is intended or shall be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or obligation to pay any claim or return any prepayment; (d) an implication or admission that any particular claim would constitute a Customer Obligation; or (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code.

### Request for Waiver of Stay

23. In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth above, the immediate payment and honoring of the Customer Obligations is essential to avoid serious disruption to the Debtors' reorganization efforts. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the ten-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order in the form attached hereto as **Exhibit "A"** granting the relief requested herein, and for such other and

further relief to the Debtors as the Court may deem proper.

Dated: October 10, 2022
Miami, Florida

Respectfully submitted,

*/s/ Jordi Guso*

George A. Davis (*pro hac vice* pending)
Tianjiao ("TJ") Li (*pro hac vice* pending)
Brian S. Rosen (*pro hac vice* pending)
Jonathan J. Weichselbaum (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: george.davis@lw.com
tj.li@lw.com
brian.rosen@lw.com
jon.weichselbaum@lw.com

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Email: jguso@bergersingerman.com
mniles@bergersingerman.com

– and –

Andrew D. Sorkin (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: andrew.sorkin@lw.com

– and –

Jeramy D. Webb (*pro hac vice* pending)
Whit Morley (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: jeramy.webb@lw.com
whit.morley@lw.com

*Proposed Co-Counsel for the Debtors*

# **EXHIBIT "A"**

**(Proposed Order)**

11648224-3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                                    Chapter 11 Case

VITAL PHARMACEUTICALS, INC., *et al.*,[1]           Case No.: 22-_____

    Debtors.                                                       (Joint Administration Pending)
_____/

**ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR AN ORDER
(A) AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO (I) MAINTAIN AND
ADMINISTER CUSTOMER PROGRAMS, AND (II) TO HONOR OR PAY CERTAIN
PREPETITION OBLIGATIONS TO THEIR CUSTOMERS IN THE ORDINARY
COURSE OF BUSINESS; AND (B) GRANTING CERTAIN RELATED RELIEF**

       **THIS MATTER** came before the Court on October ___, 2022 at _____

a.m./p.m., in Fort Lauderdale, Florida, upon the *Debtors' Emergency Motion Pursuant to*

*Sections 105(A), 363, 1107 and 1108 of the Bankruptcy Code for an Order (A) Authorizing,*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

11648250-1

*But Not Directing, the Debtors to (I) Maintain and Administer Customer Programs, and (II) To Honor or Pay Certain Prepetition Obligations to Their Customers in the Ordinary Course of Business; and (B) Granting Certain Related Relief* [ECF No. _____] (the "Motion")[2] filed by the above-captioned debtors and debtors-in-possession (the "Debtors").  The Motion seeks entry of an order (a) authorizing, but not directing, the Debtors to honor or pay certain prepetition obligations to their customers, as detailed herein, in the ordinary course of business, and (b) granting certain related relief.  The Court finds that: (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and that this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; (v) notice of the Motion and the hearing were appropriate under the circumstances and no other notice need be provided; and (vi) upon review of the record before the Court, including the legal and factual bases set forth in the Motion and the First Day Declaration and the statements made by counsel at the hearing, good and sufficient cause exists to grant the relief requested.  Accordingly, it is

    **ORDERED** as follows:

    1.    The Motion is **GRANTED**.

    2.    The Debtors are authorized to continue, in their sole discretion, the Customer Programs in the ordinary course of business.

    3.    The Debtors are authorized to honor and pay, in their sole discretion, all Customer Obligations in the ordinary course of business.

---

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed in the Motion.

4. The Debtors are authorized to continue, renew, modify, terminate, or replace, in their discretion, their Customer Programs without further order of the Court.

5. Nothing in the Motion or this Order, nor the Debtors' payment or other treatment of Customer Obligations pursuant to this Order, shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or obligation to pay any claim or return any prepayment (including any Prepayment); (d) an implication or admission that any particular claim constitutes a Customer Obligation; or (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code.

6. Pursuant to Bankruptcy Rule 6004(g), this Order shall be immediately effective and enforceable upon entry.

#   #   #

Submitted by:
Jordi Guso, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

11648250-1                                      3