UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                              Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,              Case No. 22-17842 (PDR)
                                                    (Joint Administration Pending)

        Debtors.[1]

_____/

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS (A) AUTHORIZING THE DEBTORS TO
CONTINUE TO (I) MAINTAIN THEIR CASH MANAGEMENT SYSTEM,
(II) HONOR CERTAIN PREPETITION AND POSTPETITION OBLIGATIONS
RELATED THERETO, (III) USE EXISTING BUSINESS FORMS, AND (IV) PERFORM
INTERCOMPANY TRANSACTIONS, AND (B) GRANTING RELATED RELIEF**

**(Emergency Hearing Requested)**

**Statement of Exigent Circumstances**

The Debtors respectfully request the Court to conduct an emergency hearing on this Motion within two business days of the Petition Date (as defined herein), consistent with Local Rule 9013-1(F). The Debtors maintain a number of bank accounts that they use in their business operations. These accounts are part of the Debtors' cash management system, which facilitates the Debtors' business operations, including intercompany transfers of cash. To avoid substantial disruption to the Debtors' business operations and the irreparable harm attendant thereto, the Debtors are seeking immediate relief to continue to use their Cash Management System (as defined herein), honor certain prepetition and postpetition obligations related thereto (including payment of bank fees), use existing Business Forms (as defined herein), and perform certain Intercompany Transactions (as defined herein), as well as other related relief, each as set forth herein. The Debtors respectfully request that the Court waive the provisions of Local Rule 9075-1(B), which requires an affirmative statement that a bona fide effort was made to resolve the issues raised in this Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("Vital Pharmaceuticals") (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC ("Quash Seltzer") (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

In support of this motion (this "Motion"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") rely on the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* (the First Day Declaration")[2] filed concurrently herewith and respectfully state as follows:

## RELIEF REQUESTED

1.      By this Motion, the Debtors seek entry of interim and final orders (respectively, the "Interim Order" and "Final Order"), each substantially in the form of the proposed Interim Order attached hereto as **Exhibit A**: (a) authorizing the Debtors to continue to (i) maintain their cash management system, (ii) honor certain prepetition and postpetition obligations related thereto, (iii) use existing business forms, and (iv) perform certain intercompany transactions, and (b) granting related relief.

2.      The relief requested herein will help facilitate the Debtors' smooth transition into chapter 11 and avoid possible disruptions to their business operations due to inability to access their cash.

## JURISDICTION

3.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).

4.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief sought in this Motion are sections 105(a), 345(b), 363(c), 364(b), and 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and

---

[2]  Capitalized terms used but not defined herein have the meanings given to them in the First Day Declaration.

rules 9013-1(F) and (J) of the Local Bankruptcy Rules for the Southern District of Florida (the "<u>Local Rules</u>").

## <u>BACKGROUND</u>

6.      On the date hereof (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

7.      The Debtors are operating their businesses and managing their affairs as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.

8.      For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the First Day Declaration.

## <u>THE DEBTORS' CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS</u>

### A.      **Overview**

9.      In the ordinary course of business, the Debtors maintain an integrated, centralized cash management system (the "<u>Cash Management System</u>").  The Cash Management System is comparable to other centralized cash management systems used to manage the cash of operating units in a cost-effective, efficient manner.  The Debtors use the Cash Management System in the ordinary course of their businesses to collect, transfer, and disburse funds generated from their operations and to facilitate cash monitoring, forecasting, and reporting.  The Debtors' treasurer maintains daily oversight over the Cash Management System and utilizes cash management controls for entering, processing, and releasing funds, including in connection with Intercompany Transactions (as defined below), and the Debtors' accounting department regularly reconciles the Debtors' books and records to ensure that all transfers are accounted for properly.

**B.** **Descriptions of the Cash Management System and Bank Accounts**

**1.** **The Debtors' Bank Accounts**

10.     The Cash Management System is summarized on <u>Exhibit 1</u> to the Interim Order and is composed of ten Debtor-owned and controlled bank accounts (each, a "<u>Bank Account</u>" and, collectively, the "<u>Bank Accounts</u>") with the following banking institutions (collectively, the "<u>Cash Management Banks</u>"):

      (a)     Two Bank Accounts maintained at Truist Bank;

      (b)     One Bank Account maintained at Citizens Bank, N.A. ("<u>Citizens Bank</u>");

      (c)     Three Bank Accounts maintained at PNC Bank, N.A. ("<u>PNC Bank</u>");

      (d)     One Bank Account maintained at Bank of America, N.A. ("<u>Bank of America</u>");

      (e)     One Bank Account maintained at HSBC Bank USA, National Association ("<u>HSBC Bank</u>");

      (f)     One Bank Account maintained at PayPal ("<u>PayPal</u>"); and

      (g)     One Bank Account maintained at The Huntington National Bank ("<u>Huntington National Bank</u>").[3]

11.     Four of the seven Cash Management Banks are designated as authorized depositories by the Office of the United Trustee for the Southern District of Florida, Miami Office (the "<u>U.S. Trustee</u>"), under the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Chapter 11 Trustees* (the "<u>U.S. Trustee Guidelines</u>").

12.     As of the Petition Date, the Debtors have approximately $10,213,512.83 in cash on hand in the Bank Accounts.[4]  The Bank Accounts are further described in the following table:

---

[3]  All but one of the Debtor Bank Accounts forming part of the Cash Management System described in this Motion are held by Vital Pharmaceuticals.  The Bank Account maintained at Huntington National Bank is held by Quash Seltzer.

[4]  For the avoidance of doubt, this figure excludes cash in the cash collateral account.

| Bank Account | Account Description |
|---|---|
| Bank: Truist Bank<br>Holder: Vital Pharmaceuticals<br>Last 4 Digits of Account No.: 7174 | "Truist Concentration Account":  The primary operating account that serves as the centralized operating account for the Cash Management System and provides the majority of operating disbursements, including for payroll, raw materials purchases, freight, capital expenditures, co-packers, and other similar disbursements.  In addition, funds in this account are manually transferred to the PNC Bank Concentration Account on an as-needed basis.<br><br>As of the Petition Date, the Truist Concentration Account held a net balance of approximately $7,220,052.17. |
| Bank: Truist Bank<br>Holder: Vital Pharmaceuticals<br>Last 4 Digits of Account No.: 9089 | "Truist Lockbox Account":  A zero-balance lockbox account into which a majority of operating collections for Vital Pharmaceuticals are deposited.  Funds in this account are automatically swept into the Truist Concentration Account on a nightly basis. |
| Bank: Citizens Bank<br>Holder: Vital Pharmaceuticals<br>Last 4 Digits of Account No.: 6045 | "Citizens Bank DSD Remote Deposit Account":  A depository account into which direct store delivery sales made to customers purchased via credit cards and purchase cards are deposited.  Funds in this account are manually transferred to the Truist Concentration Account on an as-needed basis.<br><br>As of the Petition Date, the Citizens Bank DSD Remote Deposit Account held a net balance of approximately $65,208.80. |
| Bank: PNC Bank<br>Holder: Vital Pharmaceuticals<br>Last 4 Digits of Account No.: 9672 | "PNC Bank Concentration Account":  An operating account that provides disbursements for marketing expenses, vehicle lease payments, medical insurance benefits, small vendor manual payments, payments on credit cards, and real property lease payments.  In addition, all corporate checks are drawn from this account.<br><br>As of the Petition Date, the PNC Bank Concentration Account held a net balance of approximately $487,620.47. |
| Bank: PNC Bank<br>Holder: Vital Pharmaceuticals<br>Last 4 Digits of Account No.: 9699 | "PNC Bank Credit Card Collections Account":  A zero-balance depository account into which credit card collections are deposited. Funds in this account are automatically swept into the PNC Bank Concentration Account on a nightly basis. |
| Bank: PNC Bank<br>Holder: Vital Pharmaceuticals<br>Last 4 Digits of Account No.: 6151 | "PNC Bank Money Market Fund Account":  A money market account that serves as a non-active placeholder account.<br><br>As of the Petition Date, the PNC Bank Money Market Fund Account held a net balance of approximately $868.19. |

| Bank Account | Account Description |
|---|---|
| Bank: Bank of America<br>Holder: Vital Pharmaceuticals<br>Last 4 Digits of Account No.: 7879 | "Bank of America DSD Cash Collections Account": A depository account that serves as the main collections account for direct store delivery payments received via check. Funds in this account are manually transferred to the PNC Bank Concentration Account on an as-needed basis.<br><br>As of the Petition Date, the Bank of America DSD Cash Collections Account held a net balance of approximately $1,393,674.20. |
| Bank: HSBC Bank<br>Holder: Vital Pharmaceuticals<br>Last 4 Digits of Account No.: 6219 | "HSBC Operating Account": A non-active operating account.<br><br>As of the Petition Date, the HSBC Operating Account held a net balance of approximately $5,332.27. |
| Bank: PayPal<br>Holder: Vital Pharmaceuticals<br>Last 4 Digits of Account No.: GG5J | "PayPal Web Sales Depository Account" or "PayPal Account": A depository account into which web sale payments are deposited. Funds in this account are manually transferred into the PNC Bank Concentration Account on an as-needed basis.<br><br>As of the Petition Date, the PayPal Web Sales Depository Account held a net balance of approximately $75,357.98. |
| Bank: Huntington National Bank<br>Holder: Quash Seltzer<br>Last 4 Digits of Account No.: 1079 | "Huntington National Bank Collections Account": A depository and operating account into which Quash Seltzer's cash collections are deposited and from which its operating disbursements are disbursed. The funds in this account are manually swept into the Truist Concentration Account as needed.<br><br>As of the Petition Date, the Huntington National Bank Collections Account held a net balance of approximately $965,089.12. |

### 2.  Bank Fees

13.    The Debtors incur periodic service charges and other fees in connection with the maintenance of the Cash Management System, which fees and services are generally paid each month (the "Bank Fees").  The Debtors have historically incurred Bank Fees of approximately $27,000–$32,000 per month, which are debited from the respective Bank Account for which the Bank Fee was incurred.  As of the Petition Date, the Debtors estimate that approximately $30,000 in Bank Fees have accrued and remain unpaid, all of which will become due and payable within the first ten days of these chapter 11 cases.  The Debtors seek permission to pay these Bank Fees and continue paying the Bank Fees in the ordinary course in accordance with past practices on a postpetition basis.

14.     In addition, the Debtors have certain obligations under the documents governing the Bank Accounts (collectively, the "Bank Account Agreements"), including to reimburse any Cash Management Bank for any checks deposited with such Cash Management Bank that have been dishonored or returned for insufficient funds, and any reimbursement or other obligations, such as overdrafts arising under the Bank Account Agreements (collectively, the "Bank Account Claims").  The Debtors believe that as of the Petition Date they have no outstanding Bank Account Claims.  Nonetheless, the Debtors seek authority for the Cash Management Banks to charge the Debtors and deduct from the appropriate Bank Accounts any Bank Account Claims that are incurred in the ordinary course of business, whether such items are dated prior to, on, or subsequent to the Petition Date.

**C.     Compliance of the Bank Accounts with the U.S. Trustee Guidelines and Section 345(b) of the Bankruptcy Code**

**1.     Compliance with the U.S. Trustee Guidelines as to Authorized Depositories**

15.     The U.S. Trustee Guidelines generally require chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee's office.  Four of the Cash Management Banks—Truist Bank, Citizens Bank, PNC Bank, and Bank of America—are authorized depositories under the U.S. Trustee Guidelines.

16.     Although the other three Cash Management Banks—HSBC Bank, Huntington National Bank, and PayPal—are not authorized depositories, each is a highly rated, global financial institution that is recognized as well capitalized and financially stable.  Therefore, notwithstanding that these institutions do not have an "authorized depository" designation, the Debtors believe that estate funds at those institutions will be protected during the chapter 11 cases to the same extent as funds at the authorized depositories.

2.      **Compliance with Section 345 of the Bankruptcy Code**

17.      As part of the Cash Management System, the Debtors maintain all but one of their cash in Bank Accounts insured by the Federal Deposit Insurance Corporation (the "FDIC"). Accordingly, the Debtors submit that those nine Bank Accounts comply with section 345(a) of the Bankruptcy Code and that the Cash Management Banks are not required to post a bond or a security deposit under section 345(b) of the Bankruptcy Code.  With respect to the PayPal Account, which is not FDIC-insured, and to the extent that any bank account may be classified as an investment account, or to the extent that any of the Debtors' routine deposits into such Bank Account may be regarded as investment activity, the Debtors hereby seek authorization to continue to deposit funds into such Bank Accounts in accordance with existing practices, notwithstanding the requirements of section 345(b) of the Bankruptcy Code, for the reasons discussed in section III below.

3.      **Compliance with U.S. Trustee Guidelines as to Business Forms**

18.      In the ordinary course of business, the Debtors use certain business forms, including correspondence, checks, letterhead, purchase orders, and invoices (collectively, the "Business Forms"), without reference to their status as debtors in possession.  The Debtors also maintain books and records to document, among other things, their profits and expenses.  To avoid significant disruption to their business operations, minimize unnecessary additional expenses to their estates, and avoid confusion on the part of employees, customers, vendors, and suppliers during the pendency of these chapter 11 cases, the Debtors request that the Court authorize their continued use of their Business Forms, without reference to the Debtors' status as debtors in possession as required by the U.S. Trustee Guidelines, rather than requiring the Debtors to incur the unnecessary expense and delay of ordering entirely new forms or altering current printing arrangements.

**D.      Intercompany Transactions**

19.      The Debtors have historically engaged, in the ordinary course of business, in routine business relationships with each other and with their non-Debtor affiliates (such ordinary course transactions, collectively, the "Intercompany Transactions"), resulting in intercompany receivables and payables (collectively, the "Intercompany Claims").[5]   The Debtors typically engage in Intercompany Transactions to, among other things, support the operations of their core beverage business on a daily basis.

20.      In connection with the daily operation of the Cash Management System, as funds are disbursed throughout the Cash Management System and as business is transacted between a Debtor and another Debtor or between a Debtor and its non-Debtor affiliate, there may be intercompany balances owing by a Debtor to another Debtor or its non-Debtor affiliate.   The Debtors and their non-Debtor affiliates have historically recorded all Intercompany Transactions and related intercompany balances on their books and records, and the Debtors and their non-Debtor affiliates intend to account for all postpetition Intercompany Transactions in accordance with past practice.[6]

21.      The Debtors and their non-Debtor affiliates record Intercompany Claims as journal entry receivables and payables in the Debtors' and non-Debtor affiliates' accounting system.   In the ordinary course of business, certain transactions related to the Debtors' revenue streams and

---

[5]  The Intercompany Transactions discussed herein, and with respect to which the Debtors seek relief pursuant to this Motion, encompass ordinary course transactions between Debtor entities. The Intercompany Transactions do not encompass any loans made between Debtors to address liquidity concerns, and by this Motion the Debtors are not seeking any relief in connection with such loans.

[6]  This Motion provides an overview of the Debtors typical Intercompany Transactions. The relief requested herein is applicable with respect to all ordinary course Intercompany Transactions and is not limited to those Intercompany Transactions described in this Motion. To the extent that there are any outstanding prepetition obligations related to ordinary course Intercompany Transactions not described herein, the Debtors, out of an abundance of caution, seek authority to honor such obligations.

the flow of funds among the Debtors and their non-Debtor affiliates are settled in cash. The Debtors and their non-Debtor affiliates closely track all fund transfers in their accounting system and, therefore, can ascertain, trace, and account for all Intercompany Transactions.

22.     The Debtors' Intercompany Transactions with non-Debtor affiliates largely fall into two categories. **First**, the Debtors currently fund from the Truist Concentration Account the operations of certain foreign non-Debtor affiliates, including affiliates operating in Australia, the Netherlands and Canada (the "Foreign Non-Debtor Affiliates").[7] Financially supporting the growth and development of the Foreign Non-Debtor Affiliates at this juncture is critical to the Debtors' strategy to grow sales in the Foreign Non-Debtor Affiliates' local markets and, in turn, maximizing the enterprise value of the **Debtors'** business as a whole. The average monthly obligations paid to Foreign Non-Debtor Affiliates total roughly $744,189, while the average monthly receipts from the Foreign Non-Debtor Affiliates total roughly $493,865, for a net average outflow of about $250,503 per month.

23.     **Second**, the Debtors lease real property, including warehouses, from certain non-Debtor affiliates (the "Landlord Non-Debtor Affiliates").[8] The Debtors pay expenses (including tax, upkeep, and maintenance) for which they are obligated under such leases (the "Landlord Obligations") directly to third parties from the PNC Bank Concentration Account and the Truist Concentration Account. The real property leased from the Landlord Non-Debtor Affiliates is used in the ordinary course of the Debtors' businesses. The Debtors pay approximately $220,000 per month on account of Landlord Obligations.

---

[7] The "Foreign Non-Debtor Affiliates" are (a) Bang Energy Canada, ULC, (b) Bang Energy Mexico S. DE R.L. de C.V., (c) Bang Energy B.V., (d) Bang Energy (Australia) Pty Ltd., (e) Bang Energy VPX Sports Ecuador S.A.S., (f) Energy Peru, LLC, (g) Bang Energy Peru S.A.C., (h) Bang Energy Costa Rica LTDA, (i) Bang Energy Brazil LTDA, (j) Bang Energy Chile SPA, and (k) Bang Energy Columbia SA.

[8] The "Landlord Non-Debtor Affiliates" are (a) JHO GA-1 Investment, LLC, (b) JHO NV-1 Investment, LLC, (c) Sheridan Real Estate Investment A, LLC, and (d) Sheridan Real Estate Investment C, LLC.

24.     The Intercompany Transactions are an essential component of the Debtors' operations.  Any interruption of the Intercompany Transactions would severely disrupt these operations and result in harm to the Debtors' estates and their stakeholders.  The Intercompany Transactions are comparable to those of other companies with similarly complex corporate structures and operate in a fashion typical of such other companies.  Accordingly, the Debtors seek authority to continue the Intercompany Transactions in the ordinary course of business on a postpetition basis, in a manner substantially consistent with past practice.

## BASIS FOR RELIEF REQUESTED

**I.      The Court Should Authorize the Debtors to Continue to Use the Cash Management System and Pay the Bank Fees**

25.     Under 28 U.S.C. § 586(a)(3) and the U.S. Trustee Guidelines, debtors in possession are required to, among other things: (a) immediately close all prepetition bank accounts and open new bank accounts, including an operating account, a tax account, and a payroll account; (b) deposit all receipts and make disbursements only from the approved debtor-in-possession account(s); and (c) use new business forms indicating the debtor-in-possession status of chapter 11 debtor.

26.     The continuation of the Cash Management System is nevertheless permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).  Bankruptcy courts routinely treat requests for authority to continue utilizing existing cash management systems as a relatively "simple matter."  *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).  In addition, the Eleventh Circuit has recognized that authorizing debtors to use their prepetition "routine cash management system" is "entirely consistent" with the applicable provisions of the Bankruptcy Code.  *In re Charter Co.*, 778 F.2d

617, 621 (11th Cir. 1985) (affirming bankruptcy court's order authorizing maintenance of Debtors' prepetition cash management system).  In granting such relief, courts recognize that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in relevant part*, 997 F.2d 1039, 1061 (3d Cir. 1993).  The requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."  *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (stating that a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

27.      Here, requiring the Debtors to adopt a new, segmented cash management system during these chapter 11 cases would be expensive, burdensome, and unnecessarily disruptive to the Debtors' operations.  The Cash Management System provides the Debtors with the ability to efficiently track and report the location and amount of funds, which, in turn, allows the Debtors to track and control such funds, ensure cash availability, and reduce administrative costs through a method of coordinating the collection and movement of funds.  Any disruption of the Cash Management System (or requiring the Debtors to adopt a new, segmented cash management system) will have a negative effect on the Debtors' restructuring efforts and needlessly reduce the value of the Debtors' business enterprise.  By contrast, maintaining the current Cash Management System will facilitate the Debtors' transition into chapter 11 by, among other things, minimizing delays in paying postpetition debts and eliminating administrative inefficiencies.  Finally, maintaining the current Cash Management System will allow the Debtors and their management to focus on their daily responsibilities.

28.     Moreover, the Debtors respectfully submit that parties in interest will not be harmed by their maintenance of the Cash Management System, including maintenance of the Bank Accounts and the Intercompany Transactions, because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred before the Petition Date.  Specifically, with the assistance of their advisors, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts without the prior approval of the Debtors' respective accounting departments.  Additionally, the Debtors will continue to work closely with the Cash Management Banks to ensure that appropriate procedures are in place to prevent checks that were issued prepetition from being honored without the Court's approval.   In light of such protective measures, the Debtors submit that maintaining the Cash Management System is in the best interests of their estates and creditors.

## II.     Authorizing the Cash Management Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course of Business Is Warranted

29.     As discussed above, implementing the U.S. Trustee Guidelines would needlessly interrupt the Debtors' operations and impair the Debtors' efforts to preserve the value of their estates and reorganize in an efficient manner.  Thus, the Debtors respectfully request that the Court authorize the Cash Management Banks to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business.  In this regard, the Cash Management Banks should be authorized to receive, process, honor, and pay any and all checks, wire transfer, credit card, ACH payments, and other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto.  Notwithstanding the foregoing, any check, draft, or other notification that the Debtors advise the Cash Management Banks to have been drawn, issued, or otherwise presented before the Petition

Date may be honored by the Cash Management Banks only to the extent authorized by order of the Court.

30.    The Debtors further request that the Court authorize the Cash Management Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date.  The Debtors also request that, to the extent a bank honors a prepetition check or other item drawn on any account either (a) at the direction of the Debtors, (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored or (c) as a result of a good faith error made despite implementation of reasonable item-handling procedures, such bank will not be deemed to be liable to the Debtors, their estates, or any party on account of such prepetition check or other item honored postpetition.  The Debtors respectfully submit that such relief is reasonable and appropriate because the Cash Management Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

31.    Moreover, the Debtors request that the Court authorize the Cash Management Banks to continue to charge the Debtors the Bank Fees (and debit the respective Bank Account for which the Bank Fee was incurred) and Bank Account Claims, as applicable, and charge-back returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course of business.  The Debtors further request that the Court order that liens on any of the Bank Accounts granted to creditors will not have priority over the Bank Fees of the respective bank at which the Bank Account is located.

32.     The Debtors further request that they be authorized to implement such reasonable changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, closing any Bank Account and opening any additional bank accounts following the Petition Date (such opened accounts, the "New Accounts").  Any New Accounts that the Debtors open will be at one of the Debtors' current Banks or at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee, or at such bank that is willing to immediately execute such an agreement.

33.     The Debtors request that the relief sought by this Motion extend to any New Accounts and that any order approving this Motion provide that the New Accounts are deemed to be Bank Accounts that are similarly subject to the rights, obligations, and relief granted in such order.  The Debtors will provide the U.S. Trustee, among other parties in interest, with timely notice of the closing of any Bank Accounts and the opening of any New Accounts.  In furtherance of the foregoing, the Debtors also request that the relevant banks be authorized to honor the Debtors' requests to open or close (as the case may be) such Bank Account(s) or New Account(s).

## III.    The Court Should Waive Section 345(b) Bond Requirements

34.     Section 345(a) of the Bankruptcy Code authorizes a debtor-in-possession to make deposits of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit."  11 U.S.C. § 345(a).  If a deposit is not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the debtor must require that the entity with which the deposit is made obtain a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety.  *See* 11 U.S.C. § 345(b).

35.     This Court has discretion to waive the requirements of section 345(b) of the Bankruptcy Code "for cause." 11 U.S.C. § 345(b). In *In re Service Merchandise Co., Inc.*, the court indicated that the existence of "cause" should be determined based upon the totality of the circumstances taking account of factors such as: (i) the sophistication of the debtor's business; (ii) the size of the debtor's business; (iii) the amount of investments involved; (iv) the ratings of the financial institutions at which the debtor's funds are held; (v) the complexity of the case; (vi) the safeguards in place within the debtor's own business to ensure the safety of funds; (vii) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (viii) the benefit to the debtor; (ix) the harm, if any, to the estate; and (x) the reasonableness of the debtor's request for relief from the section 345(b) requirements in light of the overall circumstances of the case. *See In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

36.     As stated above, the Debtors submit that all but one of the Cash Management Banks are not required to post a bond or a security deposit under section 345(b) of the Bankruptcy Code on account of the nine Bank Accounts maintained at those banks, because all such accounts are FDIC-insured.  However, to the extent that a bond or security deposit is required for those nine Bank Accounts, the Debtors submit that cause exists to waive the requirements of section 345(b) of the Bankruptcy Code because the Debtors are sophisticated entities with a complex Cash Management System that relies on the Bank Accounts on a daily basis.  In light of the regular deposits to, and disbursements from, the various Bank Accounts, it would be especially disruptive, unnecessary, and wasteful to require the posting of a bond to the extent that the balance of the Bank Accounts exceed the applicable FDIC insurance limits at a given time.  And, the Debtors' material bank accounts are held at large, stable financial institutions (i.e., Truist Bank and

Huntington National Bank) and the Debtors therefore believe that the funds in those accounts are safe.

37.     In addition, the Debtors request that this Court exercise its discretion to waive the requirements of section 345(b) of the Bankruptcy Code with respect to the PayPal Account and submit that there is cause to do so.   The risk of harm to the Debtors' estates by waiving section 345(b) with respect to the PayPal Account is extremely limited because PayPal, a licensed provider of money transfers that is required by state regulations to maintain sufficient reserves, is a highly rated, global financial institution that is widely recognized as well-capitalized and financially stable.   Moreover, the PayPal Account collects less than 1% of the Debtors' total revenue from web sales, and the Debtors regularly sweep the funds into the PNC Bank Concentration Account—which is FDIC-insured—thus leaving relatively little cash in the account at any given time.   For example, as of the Petition Date, the PayPal Account had an estimated cash balance of $75,357.98.   Nonetheless, the PayPal Account is critical to the Debtors' sophisticated and complex Cash Management System.   Thus waiving the security requirement would avoid the potential for needless and wasteful disruption to the Debtors' business, while creating little risk of harm to the Debtors' estates.

38.     In light of the above, the Debtors respectfully request that this Court exercise its discretion to waive the requirements of section 345(b) of the Bankruptcy Code to the extent that such requirements are inconsistent with the Debtors' deposit practices.   The Debtors submit that the circumstances of these chapter 11 cases warrant such relief.

## IV.    The Court Should Authorize the Debtors to Continue Using Their Existing Business Forms and Books and Records

39.     To avoid disruption of the Cash Management System and unnecessary expense to their estates, the Debtors request that they be authorized to continue to use the Business Forms

substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession.  The Debtors submit that parties in interest will not be prejudiced by this relief.  Parties doing business with the Debtors undoubtedly will be aware of their status as debtors in possession and, thus, immediately changing business forms is unnecessary and would be unduly burdensome.

40.     In addition, the Debtors seek a waiver of the requirement that they open a new set of books and records as of the Petition Date.  The Debtors submit that opening a new set of books and records would create unnecessary administrative burdens and hardship and would create unnecessary administrative burdens and hardship and would cause unnecessary expense, use of resources, and delay.  With the use of computer technology, it is now easy to differentiate between prepetition and postpetition transactions.  Accordingly, the Debtors respectfully request that they be authorized to continue to maintain their existing business records.

41.     Extensive authority supports the relief sought by this Motion.  In other chapter 11 cases, courts have recognized that strict enforcement of the requirements under section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines often does not serve the purposes of a large, complex chapter 11 case.  Accordingly, courts in this district and elsewhere routinely grant relief from these requirements and replace them with alternative procedures.  *See, e.g., In re Florida Gaming Centers, Inc.*, Case No. 13-29597-RAM (Bankr. S.D. Fla. Oct. 7, 2013); *In re TLO, LLC*, Case No. 13-28053-PGH (Bankr. S.D. Fla. June 13, 2013); *In re Ruden McClosky P.A.*, Case No. 11-40603-RBR (Bankr. S.D. Fla. Dec. 5, 2011); *In re Maguire Group Holdings, Inc. et al.*, Case No. 11-39347-RAM (Bankr. S. D. Fla. Oct. 26, 2011); *In re HearUSA, Inc.*, Case No. 11-23341-EPK (Bankr. S.D. Fla. May 16, 2011); *In re Gulfstream International Group, Inc., et al.*, Case No. 10-44131-JKO (Bankr. S.D. Fla. Nov. 8, 2010); *In re Gemini Cargo Logistics, Inc., et al.*, Case

No. 08-18173-AJC (Bankr. S.D. Fla. June 20, 2008); *In re Levitt and Sons, LLC*, Case No. 07-19845-RBR (Bankr. S.D. Fla. Nov. 14, 2007); *In re Gemini Cargo Logistics, Inc., et al.*, Case No. 06-10870-AJC (Bankr S.D. Fla. March 17, 2006); *In re Atlas Worldwide Aviation Logistics, Inc. et al.*; Case No. 04-10792-RAM (Bankr. S.D. Fla. Feb. 5, 2004).

**V.     The Court Should Authorize the Debtors to Continue Conducting Intercompany Transactions in the Ordinary Course and Grant Administrative Priority Status to Postpetition Intercompany Claims Among the Debtors**

42.     The Debtors' funds move through the Cash Management System as described above. At any given time, there may be Intercompany Claims owing by and between two Debtors or between a Debtor and its non-Debtor affiliate, as Intercompany Transactions are made between and among the Debtors and their non-Debtor affiliates in the ordinary course as part of the Cash Management System.[9] The Debtors and their non-Debtor affiliates track all fund transfers in their accounting system and can ascertain, trace, and account for all Intercompany Transactions previously described. The Debtors and their non-Debtor affiliates, moreover, will continue to maintain records of such Intercompany Transactions. If the Intercompany Transactions were to be discontinued, the Cash Management System and related administrative controls would be disrupted to the Debtors' and their estates' detriment. The Debtors respectfully submit that the relief requested herein fairly balances the Debtors' needs to facilitate the ordinary course operation of their businesses, minimize disruption, and preserve value, on the one hand, with the interests of their stakeholders in transparency, on the other hand. The requested relief will also ensure that the

---

[9] Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among enterprises like that of the Debtors, the Debtors submit the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require this Court's approval. Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis. Moreover, the continued performance of the ordinary course Intercompany Transactions is integral to ensure the Debtors' ability to operate their businesses as debtors in possession.

Debtors' estates will not be unduly burdened by the cost of transfers among the Debtors and their non-Debtor affiliates.

43.     Because the Intercompany Transactions represent extensions of intercompany credit made in the ordinary course of business that are an essential component of the Cash Management System, the Debtors respectfully request the authority to continue conducting the Intercompany Transactions in the ordinary course of business without need for further Court order and request that pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all postpetition payments between or among a Debtor and another Debtor on account of an Intercompany Transaction be accorded administrative expense status immediately junior to the Carve-Out, Adequate Protection Liens, and Adequate Protection Superpriority Claims (each as defined in the DIP financing orders).[10]  This relief will ensure that each entity receiving payments from a Debtor will continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby reducing the risk that these transactions would jeopardize the recoveries available to each Debtor's respective creditors.

44.     The continuation of Intercompany Transactions between the Debtors and non-Debtor affiliates, including the continued funding of the Foreign Non-Debtor Affiliates and payment of the Landlord Obligations, should also be authorized.  As described above, such transactions (i) involve only modest cash outlays by the Debtors and (ii) are integral to the Debtors' ordinary course operations and, particularly in the case of the funding of Foreign Non-Debtor Affiliates, the Debtors' strategy for growth in new markets.  The Debtors, therefore, submit that no creditor or party in interest will be harmed by the continuation of such transactions and, to the

---

[10] Notwithstanding the administrative expense status required for the Intercompany Transactions, all Debtors reserve the rights to dispute any Intercompany Transaction (or payment made on account of an Intercompany Transaction) on any ground, including the methodology for calculation of such transaction or payment, and to claw back or avoid such transactions and/or payments.

contrary, will benefit from the preservation and maximization of enterprise value resulting therefrom.

## REQUEST FOR WAIVER OF STAY

45.     To implement the foregoing immediately, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).  As explained above and in the First Day Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors.  Accordingly, ample cause exists to justify the finding that the notice requirements under Bankruptcy Rule 6004(a) have been satisfied and to grant a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and stay apply.

## RESERVATION OF RIGHTS

46.     Nothing contained herein is intended or shall be construed as: (a) an admission as to the amount of, basis for, or validity of any claim against any of the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) an impairment or waiver of any Debtor's or any other party in interest's right to dispute any claim against, or interest in, any Debtor, its property, or its estate on any grounds; (c) a promise or requirement to pay any claim; (d) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (e) an implication or admission that any particular claim is of a type specified or defined in the Motion, or any order granting the relief requested by the Motion; (f) an implication, admission, or finding as to the validity, enforceability, or perfection of any interest or encumbrance on the property of any Debtor or its estate; (g) an impairment or waiver of any claims or causes of action which may exist against any entity; or (h) a waiver of any Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

**NOTICE**

47.     The Debtors have provided notice of this Motion to (a) the Office of the United States Trustee for the Southern District of Florida; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition and proposed postpetition revolving credit facilities and its counsel; (d) the United States Attorney's Office for the Southern District of Florida; (e) the Internal Revenue Service; (f) the United States Securities and Exchange Commission; (g) the state attorneys general for states in which the Debtors conduct business; (h) the Cash Management Banks; and (i) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, under the circumstances, no other or further notice is required.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Debtors respectfully request that the Court enter the Interim Order and the Final Order, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated:    October 10, 2022
          Miami, Florida

Respectfully submitted,

_/s/ Jordi Guso_

George A. Davis (*pro hac vice* pending)
Tianjiao ("TJ") Li (*pro hac vice* pending)
Brian S. Rosen (*pro hac vice* pending)
Jonathan J. Weichselbaum (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
            tj.li@lw.com
            brian.rosen@lw.com
            jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Jeramy D. Webb (*pro hac vice* pending)
Whit Morley (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  jeramy.webb@lw.com
            whit.morley@lw.com

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
            mniles@bergersingerman.com

*Proposed Co-Counsel for the Debtors*

**<u>EXHIBIT "A"</u>**

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                          Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,          Case No. 22-17842 (PDR)
                                                (Joint Administration Pending)

        Debtors.[1]

_____/

**INTERIM ORDER (A) AUTHORIZING THE DEBTORS TO CONTINUE
TO (I) MAINTAIN THEIR CASH MANAGEMENT SYSTEM,
(II) HONOR CERTAIN PREPETITION AND POSTPETITION OBLIGATIONS
RELATED THERETO, (III) USE EXISTING BUSINESS FORMS, AND (IV) PERFORM
INTERCOMPANY TRANSACTIONS, AND (B) GRANTING RELATED RELIEF**

        **THIS MATTER** was before this Court on October 12, 2022, at _____ [a.m./p.m.] in Fort

Lauderdale, Florida, upon the *Debtors' Emergency Motion for Entry of Interim and Final Orders*

*(A) Authorizing the Debtors to Continue to (I) Maintain Their Cash Management System,*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

*(II) Honor Certain Prepetition and Postpetition Obligations Related Thereto, (III) Use Existing*

*Business Forms, and (IV) Perform Intercompany Transactions, and (B) Granting Related Relief*

[ECF No. ____] (the "<u>Motion</u>")[2] filed by the above-captioned debtors and debtors-in-possession

(the "<u>Debtors</u>").  The Motion seeks entry of interim and final orders (a) authorizing the Debtors to

continue to (i) maintain their cash management system, (ii) honor certain prepetition and

postpetition obligations related thereto, (iii) use existing business forms, and (iv) perform certain

intercompany transactions, and (b) granting related relief.  The Court finds that (i) it has

jurisdiction over the matters raised in the Motion under 28 U.S.C. §§ 157 and 1334; (ii) this is a

core proceeding under 28 U.S.C § 157(b)(2)(A), and that this Court may enter a final order

consistent with Article III of the Constitution; (iii) venue is proper before this Court under 28

U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors, and other parties in interest; (v) notice of the Motion and the

hearing were appropriate under the circumstances and no other notice need be provided; and

(vi) upon review of the record before the Court, including the legal and factual bases set forth in

the Motion and the First Day Declaration and the statements made by counsel at the hearing, good

and sufficient cause exists to grant the relief requested in the Motion.  Accordingly, it is

      **ORDERED** as follows:

    1.    The Motion is **GRANTED**, on an interim basis.

    2.    The Debtors are authorized to continue to (a) maintain their Cash Management

System substantially as identified on **<u>Exhibit 1</u>** attached hereto and as described in the Motion, in

each case consistent with prepetition practice, (b) honor certain prepetition and postpetition

obligations related thereto, (c) use existing Business Forms and books and records, and

---

[2]  Capitalized terms used but not defined herein have the meanings given to them in the Motion.

(d) continue Intercompany Transactions consistent with historical practice and honor prepetition and postpetition obligations related thereto.

3.      The Debtors are authorized to (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those Bank Accounts identified on **Exhibit 2** attached hereto, (b) use, in their present form, all correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors in possession, (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession, (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits, and (e) pay the Bank Fees, including any prepetition amounts, and any ordinary course Bank Fees incurred in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts (collectively, the "Bank Account Agreements"), including, without limitation, to reimburse any Cash Management Bank for any checks deposited with such Cash Management Bank that have been dishonored or returned for insufficient funds, and any reimbursement or other obligations, such as overdrafts arising under the Bank Account Agreements (collectively, the "Bank Account Claims"). Except to the extent otherwise directed by the terms of this Order, all of the provisions of the Bank Account Agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.  The Cash Management Banks are hereby authorized, without further order of this Court, to charge to the Debtors and deduct from the appropriate Bank Accounts the Bank Account Claims that are incurred in connection therewith in the ordinary course of business, whether such items are dated prior to, on, or subsequent to the Petition Date.

4.      The Cash Management Banks are authorized to (a) continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without

interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, and credit card payments issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be and (b) without further order of this Court, charge and deduct all applicable fees (including, without limitation, the Bank Fees) from the applicable Bank Accounts consistent with historical practice, whether such fees were incurred prior to, on, or subsequent to the Petition Date.

5.      Subject to applicable bankruptcy or other law, those certain existing deposit agreements or other treasury management agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements shall remain in full force and effect.

6.      The Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures related thereto in the ordinary course of business, including, without limitation, the closing of Bank Accounts or the opening of New Accounts; *provided that* the Debtors will give timely notice to the U.S. Trustee, counsel to the administrative agent under the Debtors' proposed postpetition credit facility), and counsel to any statutory committee appointed in these chapter 11 cases of the closing of Bank Accounts, the opening of New Accounts or any other material changes to the Cash Management System.

7.      The relief granted in this Order is extended to any New Account opened by the Debtors in the ordinary course of business after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a

Cash Management Bank.  The Debtors are authorized to open New Accounts so long as any such new account is with one of the Debtors' existing Cash Management Banks or with a bank that is (a) insured with the FDIC or the Federal Savings and Loan Insurance Corporation, (b) designated as an authorized depository by the U.S. Trustee pursuant to the U.S. Trustee's Guidelines, and (c) with a bank that agrees to be bound by the terms of this Order.  As required herein, to the extent the Debtors open a New Account, they shall provide timely notice to the U.S. Trustee, counsel to the administrative agent under the Debtors' proposed postpetition credit facility, and counsel to any statutory committee appointed in these chapter 11 cases.

8.      All Cash Management Banks maintaining any of the Bank Accounts that are provided with notice of this Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

9.      Subject to the terms set forth herein, any bank, including the Cash Management Banks, may accept, honor and rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored or dishonored, consistent with any order of this Court and governing law, whether such checks, drafts, or wires and other withdrawals are dated prior to, on, or subsequent to the Petition Date, and shall have no duty to independently inquire as to whether such payments are authorized by an order of this Court; and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored or (c) as a result of a good faith error made despite implementation of reasonable item-handling procedures shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party

on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order.

10.     Any banks, including the Cash Management Banks, are: (a) further authorized to (i) honor the Debtors' directions with respect to the opening and closing of any Bank Account and (ii) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; and (b) have no duty to independently inquire as to whether such payments are authorized by an order of this Court; *provided* that the Cash Management Banks shall not have any liability to any party for relying on the Debtors' directions or instructions regarding any of the foregoing.

11.     The Debtors are authorized to deposit funds in accordance with their established deposit practices in effect as of the Petition Date and, to the extent that such deposit practice is inconsistent with the requirements of section 345(b) of the Bankruptcy Code or the U.S. Trustee Guidelines, such requirements are waived, on an interim basis, without prejudice to the Debtors' right to seek a further waiver.

12.     The Debtors are authorized to continue to enter into and engage in the Intercompany Transactions in the ordinary course of business on a postpetition basis and settle any prepetition Intercompany Claims discovered during a postpetition intercompany true-up that are related to costs not previously posted to the balances for each entity, including funding the operations of the Foreign Non-Debtor Affiliates and paying the Landlord Obligations; *provided* that the Debtors shall not be authorized to undertake any Intercompany Transactions that are not on terms materially consistent with the Debtors' operation of their business in the ordinary course during the prepetition period; *provided*, *further*, that there shall be no intercompany loans from the Debtors to any non-Debtor affiliates, or any payments to any non-Debtor affiliates, absent further order of the Court (other than (i) the continued funding of the Foreign Non-Debtor Affiliates as

described in the Motion and (ii) the continued payment of Landlord Obligations); *provided*, *further*, that any Intercompany Transactions shall be in accordance with the terms and conditions of the DIP facilities, including the DIP budget, the approved use of cash collateral, and the requirements of the DIP financing orders. All postpetition payments from a Debtor to another Debtor under any postpetition Intercompany Transaction are hereby accorded administrative expense status immediately junior to the Carve-Out, Adequate Protection Liens, and Adequate Protection Superpriority Claims (each as defined in the DIP financing orders). In connection with the Intercompany Transactions, the Debtors shall continue to maintain current records with respect to all transfers of cash so that all transactions, including the Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts. The Debtors shall make such records available upon request by the U.S. Trustee, the administrative agent under the Debtors' proposed postpetition credit facility, and any official statutory committee appointed in these chapter 11 cases.

13.    Nothing contained in the Motion or this Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any interest or encumbrance on the property of any Debtor or its estate that existed as of the Petition Date.

14.    Notwithstanding anything to the contrary in this Order, any payment made, or authorization contained, hereunder, shall be subject to the requirements imposed on the Debtors under the DIP financing orders. In the event of any inconsistency between the terms of this Order and the DIP financing orders, the terms of the DIP financing orders shall control.

15.    Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief (including an administrative claim status granted on account of Intercompany

Transactions), nothing in this Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against any of the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) an impairment or waiver of any Debtor's or any other party in interest's right to dispute any claim against, or interest in, any Debtor, its property, or its estate on any grounds; (c) a promise or requirement to pay any claim; (d) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (e) an implication or admission that any particular claim is of a type specified or defined in the Motion, or any order granting the relief requested by the Motion; (f) an implication, admission, or finding as to (i) the validity, enforceability, or perfection of any interest or encumbrance on the property of any Debtor or its estate or (ii) a waiver or limitation on any party's ability to challenge, recharacterize as equity, void, claw back, or seek other relief with respect to prepetition Intercompany Transactions or any particular payments authorized hereunder; (g) an impairment or waiver of any claims or causes of action which may exist against any entity; or (h) a waiver of any Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

16.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or funds transfer requests that are dishonored as a consequence of these chapter 11 cases, with respect to prepetition amounts owed where such payments are authorized by an order of this Court.

17.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on

the Debtors' designation of any particular check or electronic payment request as approved by this Order.

18.     The relief requested in the Motion satisfies the requirements of Bankruptcy Rule 6003(b) or are otherwise deemed waived.

19.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Bankruptcy Local Rules are satisfied by such notice.

20.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.  As soon as practicable after the entry of this Order, the Debtors shall serve this Order on the Cash Management Banks.

21.     The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order in accordance with the Motion.

22.     The Court shall conduct a final hearing on the Motion on _____, 2022, at __:__ _.m., United States Courthouse, 299 East Broward Blvd., Room 112, Ft. Lauderdale, FL 33301. Within forty-eight (48) hours of the entry of this Interim Order, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Interim Order, the proposed Final Order and the Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for the Creditors' Committee (if appointed); and (d) the Internal Revenue Service. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than _____,  2022 at 4:00 p.m. (prevailing Eastern Time), which objections shall be served so as to be received on or

before such date by: (i) the Debtors, c/o Vital Pharmaceuticals, Inc., 1600 N. Winter Park Drive, Weston FL 33326, Attn: Jack Owoc; (ii) proposed counsel to the Debtors: (A) Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004, Attn: Andrew Sorkin (andrew.sorkin@lw.com) and Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: Jeramy Webb (jeramy.webb@lw.com) and Whit Morley (whit.morley@lw.com), and (B) Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: Jordi Guso (jguso@bergersingerman.com) and Michael Niles (mniles@bergersingerman.com); (iii) counsel to the DIP Agent and the Prepetition Agent, (A) Moore & Van Allen PLLC, 100 N. Tryon St., Suite 4700, Charlotte, NC 28202, Attn: Luis M. Lluberas, Esq. (luislluberas@mvalaw.com) and Steve Gruendel (stevegruendel@mvalaw.com) and (B) Shutts & Bowen LLP, 200 South Biscayne Blvd., Ste 4100, Miami, FL 33131, Attn: Aliette D. Rodz (ARodz@shutts.com) and Martha M. Ferral (MFerral@shutts.com); and (iv) the Office of the United States Trustee, 51 S.W. First Avenue, Room 1204, Miami, FL 33130.

23.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # #

Submitted by:
Jordi Guso, Esq.,
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email: jguso@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

## **Exhibit 1**

**Cash Management System**

## Cash Management System



## **Exhibit 2**

**Bank Accounts**

**Debtor Bank Accounts**

| No. | Entity | Bank Name | Account Type | Last 4 Digits of Account No. |
|-----|--------|-----------|--------------|------------------------------|
| 1 | Vital Pharmaceuticals, Inc. | Truist Bank | Concentration Account | 7174 |
| 2 | Vital Pharmaceuticals, Inc. | Truist Bank | Lockbox Account | 9089 |
| 3 | Vital Pharmaceuticals, Inc. | Citizens Bank, N.A. | Depository Account | 6045 |
| 4 | Vital Pharmaceuticals, Inc. | PNC Bank, N.A. | Concentration Account | 9672 |
| 5 | Vital Pharmaceuticals, Inc. | PNC Bank, N.A. | Depository Account | 9699 |
| 6 | Vital Pharmaceuticals, Inc. | PNC Bank, N.A. | Money Market Fund Account | 6151 |
| 7 | Vital Pharmaceuticals, Inc. | Bank of America, N.A. | Depository Account | 7879 |
| 9 | Vital Pharmaceuticals, Inc. | HSBC Bank USA, National Association | Operating Account | 6219 |
| 8 | Vital Pharmaceuticals, Inc. | PayPal | Depository Account | GG5J |
| 10 | Quash Seltzer, LLC | Huntington National Bank | Operating Account | 1079 |