UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Case |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-_____ |
| Debtors. | (Joint Administration Pending) |
| _____/ | |

**DEBTORS' EMERGENCY APPLICATION FOR ENTRY OF ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN STRETTO, INC., AS NOTICE, CLAIMS AND SOLICITATION AGENT, EFFECTIVE AS OF THE PETITION DATE**
(Emergency Hearing Requested)

**Statement of Exigent Circumstances**

The Debtors respectfully requests an emergency hearing to consider this application to address issues of noticing and claims administration immediately and to avoid potential difficulties arising out of the need to provide notice to the Debtors' thousands of creditors. However, the proposed claims, notice and solicitation agent has the ability to meet the substantial notices required from the start of the Debtors' Chapter 11 cases. The Debtors respectfully request that the Court waive the provisions of Local Rule 9075-1(B), which requires an affirmative statement that a bona fide effort was made in order to resolve the issues raised in this Application, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property

Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

LLC and Vital Pharmaceuticals International Sales, Inc. (collectively, the "Debtors"), by and through their proposed undersigned counsel, file this application (the "Application"), for entry of an order, substantially in the form attached hereto as **Exhibit "A"**, authorizing the Debtors' employment and retention of Stretto, Inc. ("Stretto") as notice, claims and solicitation agent in connection with the Debtors' chapter 11 cases.   In support of this Application, the Debtors submit the *Declaration of Sheryl Betance in Support of Debtors' Emergency Application for Entry of Order Authorizing Debtors to Employ and Retain Stretto, Inc., as Notice, Claims and Solicitation Agent, Effective as of the Petition Date* (the "Betance Declaration"), which is attached hereto as **Exhibit "B"** and the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration").   In further support of this Application, the Debtors respectfully state as follows:

### Jurisdiction and Venue

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory predicates for the relief requested herein is 28 U.S.C. § 156(c), as supplemented by Bankruptcy Rule 2002(f) and Local Rule 2002-1.

### Background

4.     On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

5.     The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.     For a detailed description of the Debtors and their operations, the Debtors

2

respectfully refer the Court and parties in interest to the First Day Declaration.

### Relief Requested

7.      By this Application, the Debtors seeks to retain and employ Stretto subject to that certain Services Agreement dated as of September 23, 2022, by and between Stretto and the Debtors (such agreement together with all amendments, modifications, renewals thereof and all documents ancillary thereto or otherwise entered into in connection therewith, are collectively referred to herein as the ("Engagement Agreement"), a copy of which is attached hereto as **Exhibit "C"** and incorporated by reference herein.

8.      In deciding on the retention of a claims and noticing agent, the Debtors, through their proposed undersigned counsel, obtained and reviewed proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process.  The Debtors, based upon all engagement proposals obtained and reviewed, concluded that Stretto's rates are competitive and reasonable given Stretto's quality of services and expertise.

### Stretto's Qualifications

9.      The Debtors have approximately 10,500 potential creditors and interested parties in their chapter 11 cases.  Although the office of the Clerk of the United States Bankruptcy Court for the Southern District of Florida (the "Clerk's Office") ordinarily would serve notices on the Debtors' creditors and other parties in interest and administer claims against the Debtors, the Clerk's Office may not have the resources to undertake such tasks, especially in light of the magnitude of the Debtors' creditor body and the tight timelines that frequently arise in chapter 11 cases.

10.     To relieve the Clerk's Office of these burdens, the Debtors seek to engage Stretto to act as the Debtors' notice, claims and solicitation agent.  This retention is the most effective and

efficient manner of noticing the thousands of creditors and parties in interest of the filing of these chapter 11 cases and other developments in these chapter 11 cases.  In that capacity, Stretto will transmit, receive, docket and maintain proofs of claim filed in connection with these chapter 11 cases.  Further, Stretto will work with the Clerk's Office to ensure that such methodology conforms with all of the Court's procedures, the Local Rules and the provisions of any orders entered by this Court.

11.    Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Stretto's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.   Stretto's professionals have acted as the noticing, claims administrative and solicitation agent in many large bankruptcy cases: *In re Liberty Power Holdings, LLC*, Case No. 21-13797-SMG (Bankr. S.D. Fla. May 25, 2021); *In re American Resource Management Group, LLC, et al.*, Case No. 19-14605-JKO (Bankr. S.D. Fla. June 10, 2019); *In re Stein Mart Inc.,* Case No. 20-02387 (JAF) (Bankr. M.D. Fla. Aug. 14, 2020); *In re A.B.C. Carpet Co., Inc.*, No. 2 1 -11591 (DSJ) (Bankr. S.D.N.Y. Sept. 10, 2021); *In re Kumtor Gold Co. CJSC*, No. 21-11051 (LGB) (Bankr. S.D.N.Y. June 8, 2021); *In re VTES, Inc.*, No. 20-12941 (JLG) (Bankr. S.D.N.Y. Jan. 15, 2021); *In re Furla (U.S.A.), Inc.,* No. 20-12604 (SCC) (Bankr. S.D.N.Y. Nov. 12, 2020); *In re Century 21 Department Stores LLC,* No. 20-12097 (SCC) (Bankr. S.D.N.Y. Sept. 14, 2020); *In re NTS W. USA Corp.,* No. 20-35769 (CGM) (Bankr. S.D.N.Y. July 29, 2020); *In re Dean & Deluca N.Y., Inc.,* No. 20-10916 (MEW) (Bankr. S.D.N.Y. Apr. 7, 2020); *In re Seabras 1 USA, LLC*, No. 19- 14006 (SMB) (Bankr. S.D.N.Y. Dec. 27, 2019); *In re Agera Energy LLC*, No. 19-23802 (RDD) (Bankr. S.D.N.Y. Oct. 9, 2019); and *In re Barneys*

*New York, Inc.*, No. 19-36300 (CGM) (Bankr. S.D.N.Y. Aug. 7, 2019)[2].

<u>**Services to be Provided**</u>

12.    Pursuant to the Engagement Agreement, the Debtors seek to retain Stretto to provide certain noticing, claims processing and balloting administration services, including, without limitation,

a.    Preparing and serving required notices in the chapter 11 cases, including:

i.    notice of the commencement of the chapter 11 cases and the initial meeting of creditors under Bankruptcy Code § 341(a);

ii.    a notice of the claims bar date;

iii.    notices of objections to claims and objections to transfers of claims;

iv.    notices of hearings on motions filed by the Office of the United States Trustee (the "<u>U.S. Trustee</u>");

v.    notices of transfers of claims;

vi.    notices of any hearings on a disclosure statement and confirmation of the Debtors' plan of reorganization;

vii.    notice of the effective date of any plan; and

viii.    such other miscellaneous notices as the Debtors or Court may deem necessary or appropriate for an orderly administration of the chapter 11 cases.

b.    Maintaining a: (i) list of all potential creditors, equity holders, and other parties in interest and (ii) "core" service list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010 and updating said lists and making said lists available upon request by a party-in-interest or the Clerk.

---

[2] Because of the voluminous nature of the orders cited herein, they are not attached to the Application. Copies of these orders, however, are available on request of the Debtors' proposed counsel.

c.   Assisting with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs and gathering data in conjunction therewith.

d.   Furnishing a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and, if asked, notifying such potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors.

e.   Maintaining a post office box or address for the purpose of receiving claims and returned mail, and processing all mail received.

f.   Within five (5) business days after the entry of a particular notice or order, preparing for filing with the Clerk's Office a certificate or affidavit of service that includes (i) a copy of the notice or order served, (ii) an alphabetical list of persons on whom notice was served, along with their addresses and (iii) the date and manner of service.

g.   Receiving, examining, and maintaining copies of all proofs of claim and proofs of interest filed in the chapter 11 cases.

h.   Maintaining official claims registers in the chapter 11 cases by docketing all proofs of claim and proofs of interest in a claims database that includes the following information for each such claim or interest asserted:

   i.   the name and address of the claimant or interest holder and any agent thereof, if the proof of claim or proof of interest was filed by an agent;

   ii.   the date the proof of claim or proof of interest was received by Stretto and/or the Court;

   iii.   the claim number assigned to the proof of claim or proof of interest; and

   iv.   the asserted amount and classification of the claim.

i.   Implementing necessary security measures to ensure the completeness and integrity of the claims registers.

j.   Recording all transfers of claims pursuant to Bankruptcy Rule 3001(e).

k.   Revising the creditor matrix after the objection period expires.

6

11657421-2

l.      Monitoring the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and making necessary notations on or changes to the Claims Registers and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists.

m.      Identifying and correcting any incomplete or incorrect addresses in any mailing or service lists.

n.      Recording any order entered by the Court which may affect a claim by making a notation on the claims registers.

o.      Monitoring the Court's docket for any claims related pleading filed and making necessary notations on the claims register.

p.      Filing a quarterly updated claims register with the Court in alphabetical and numerical order.  If there was no claims activity, a certification of no claim activity may be filed.

q.      Maintaining an up-to-date mailing list of all creditors and all entities who have filed proofs of claim or proofs of interest and/or request for notices in the case and providing such list to the Court or any interested party upon request (within 48 hours).

r.      Providing access to the public for examination of claims and the claims register at no charge.

s.      Establish and maintain a case website with case information, including key dates, service lists and free access to the case docket.

t.      Forwarding all claims, an updated claims register and an updated mailing list to the Court within 10 days of entry of an order converting a case or within 30 days of entry of a final decree.  The claims register and mailing list will be provided in both paper and on disc and in alphabetical and numerical order.  The mailing list disc will be in .txt format.

u.      Complying with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

v.      Providing temporary employees to process claims as necessary.

w.      Promptly complying with such further conditions and requirements as the Clerk's Office or the Court may at any time prescribe.

x.      Providing such other claims processing, noticing, and administrative services as may be requested from time to time by the Debtors.

11657421-2

y.    Assisting with, among other things, solicitation, balloting, tabulation and calculation of votes, as well as preparing any appropriate reports required in furtherance of confirmation of any chapter 11 plan.

z.    Generating an official ballot certification and testifying, if necessary, in support of the ballot tabulation results for any chapter 11 plan(s) in the chapter 11 cases.

aa.    Providing such other claims, noticing, processing, solicitation, balloting, and other administrative services described in the Engagement Agreement, that may be requested from time to time by the Debtors, the Court, or the Clerk.

13.    In addition to the foregoing, Stretto will assist with, among other things: (a) maintaining and updating the master mailing list of creditors; (b) tracking and administration of claims; and (c) performing other administrative tasks pertaining to the administration of the chapter 11 cases, as may be requested by the Debtors or the Clerk's Office.  Stretto will follow the notice and claim procedures that conform to the guidelines promulgated by the Clerk of the Court and the Judicial Conference of the United States and as may be entered by the Court's order.

## **Professional Compensation**

14.    The fees to be charged by Stretto in connection with these chapter 11 cases are set forth in the Engagement Agreement.  Prior to the Petition Date, the Debtors provided Stretto with a retainer in the amount of $100,000.00.   The Debtors propose that the cost of Stretto's services be paid from the Debtors' estates as provided by 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A). The Debtors respectfully submit that Stretto's rates for its services in connection with the notice, claims processing and solicitation services are competitive and comparable to the rates charged by its competitors for similar services.

15.    Furthermore, the Debtors respectfully submit that the fees and expenses incurred by Stretto are administrative in nature and, therefore, should not be subject to the standard fee application procedures for professionals.   Specifically, the Debtors request authorization to

11657421-2

compensate Stretto in accordance with the terms and conditions set forth in the Engagement Agreement, upon Stretto's submission to the Debtors of invoices summarizing in reasonable detail the services rendered and expenses incurred in connection with services provided by Stretto to the Debtors.

## Stretto's Disinterestedness

16.     Although the Debtors do not propose to retain Stretto under § 327 of the Bankruptcy Code, to the best of Stretto's knowledge, and except as set forth in the Betance Declaration, Stretto neither holds nor represents an interest materially adverse to the Debtors' estates nor has a connection to the Debtors, their creditors or related parties with respect to any matter for which Stretto will be employed.  Stretto may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Stretto serves or has served in a neutral capacity as claims and noticing agent for another chapter 11 debtor.

17.     To the best of the Debtors' knowledge and except as disclosed in the Betance Declaration, Stretto neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed and that it is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 as referred to in section 327(a) of the Bankruptcy Code.

18.     Stretto represents, among other things, that:

    a.     it will not consider itself employed by the United States government in connection with the Debtors' cases and shall not seek any compensation from the United States government in its capacity as notice, claims and solicitation agent;

    b.     by accepting employment in these bankruptcy cases, Stretto waives any right to receive compensation from the United States government in its capacity as notice, claims and solicitation agent;

c.      in its capacity as notice, claims and solicitation agent, Stretto will not be an agent of the United States and will not act on behalf of the United States; and

d.      Stretto will not employ any past or present employees of the Debtors in connection with its work as notice, claims and solicitation agent.

19.      Should Stretto discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Stretto will use reasonable efforts to file promptly a supplemental affidavit.

### Basis for Relief

20.      Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk's Office for administration of bankruptcy cases.  It states:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

21.      Accordingly, § 156(c) of title 28 of the United States Code empowers the Court to utilize outside agents and facilities for notice and claims purposes, provided the debtor's estate pays the cost of such services.  Therefore, for all of the foregoing reasons, the Debtors believe that the retention of Stretto as the notice and claims agent in these chapter 11 cases is in the best interests of the Debtors, their estates and their creditors.  Furthermore, the Debtors respectfully submit that the fees and expenses that would be incurred by Stretto under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application

procedures of professionals.

22.    Courts in this and other jurisdictions have approved similar relief in other chapter 11 cases.  *See, e.g.*, *In re Liberty Power Holdings, LLC*, Case No. 21-13797-SMG (Bankr. S.D. Fla. May 25, 2021); *In re American Purchasing Services, LLC, et al.,* Case No. 20-23495-SMG (Bankr. S.D. Fla. 2021); *In re Tamarac 10200, LLC, et al.,* Case No. 20-23346-PDR (Bankr. S.D. Fla. 2020); *In re Stein Mart Inc.,* Case No. 20-02387 (JAF) (Bankr. M.D. Fla. Aug. 14, 2020); *In re Magnum Construction Management, LLC,* Case No. 19-12821-AJC (Bankr. S.D. Fla. 2019); *In re Adinath Corp., et al.,* Case No. 15-16885-LMI (Bankr. S.D. Fla. 2015); *In re Voyager Digital Holdings, Inc., et al.,* Case No. 22-10943 (Bankr. S.D.N.Y. 2022); *In re EYP Group Holdings, Inc., et al.,* Case No. 22-10367 (MFW) (Bankr. D. Del. 2022); *In re Radioshack Corporation, et al.*, Case No. 15-10197 (Bankr. D. Del. 2015); *In re dELiA\*s, Inc., et al.*, Case No. 14-23678 (Bankr. S.D.N.Y. 2014); *In re Maguire Group Holdings, Inc.*, Case No. 11-39347-RAM (Bankr. S.D. Fla. 2011); *In re Ruden McClosky, P.A.,* Case No. 11-40603-RBR (Bankr. S.D. Fla. 2011); *In re Gulfstream International Group, Inc., et al.,* Case No. 10-44131-JKO (Bankr. S.D. Fla. 2011); *In re HearUSA, Inc.,* Case No. 11-23341-EPK (Bankr. S.D. Fla. 2011); *In re Fontainebleau Las Vegas Holdings, LLC, et al.*, Case No. 09-21481-AJC (Bankr. S.D. Fla. 2009); *In re Mercedes Homes, Inc., et al.*, Case No. 09-11191-PGH (Bankr. S.D. Fla. 2009); *In re TOUSA, Inc.,* Case No. 08-10928-JKO (Bankr. S.D. Fla. 2008); *In re Levitt and Sons, LLC*, No. 07-19845-RBR (Bankr. S.D. Fla. Nov. 14, 2007).

23.    No prior application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, for the reasons set forth herein and in the First Day Declaration and in the Betance Declaration, the Debtors respectfully request that the Court enter an order,

substantially in the form attached hereto as **Exhibit "A"**, (a) authorizing the Debtors to employ and retain Stretto as their notice, claims and solicitation agent effective as of the Petition Date, (b) approving the terms of the Engagement Agreement and (c) granting such other and further relief as is appropriate.

Dated:  October 10, 2022                 Respectfully submitted,

                                         VITAL PHARMACEUTICALS, INC., *et al.*, Debtors
                                         1600 N. Park Drive
                                         Weston, FL 33326


                                         By: */s/ John C. DiDonato*_____
                                                 John C. DiDonato
                                                 Chief Transformation Officer

12

Dated:    October 10, 2022                         Respectfully submitted,
          Miami, Florida

                                                  /s/ Jordi Guso
George A. Davis (*pro hac vice* pending)           Jordi Guso
Tianjiao ("TJ") Li (*pro hac vice* pending)        Florida Bar No. 863580
Brian S. Rosen (*pro hac vice* pending)            Michael J. Niles
Jonathan J. Weichselbaum (*pro hac vice* pending)  Florida Bar No. 107203
**LATHAM & WATKINS LLP**                            **BERGER SINGERMAN LLP**
1271 Avenue of the Americas                        1450 Brickell Avenue, Suite 1900
New York, NY 10020                                 Miami, FL 33131
Telephone:  (212) 906-1200                         Telephone:  (305) 755-9500
Email:  george.davis@lw.com                        Email:  jguso@bergersingerman.com
        tj.li@lw.com                               Email:  mniles@bergersingerman.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Jeramy D. Webb (*pro hac vice* pending)
Whit Morley (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  jeramy.webb@lw.com
        whit.morley@lw.com

*Proposed Co-Counsel for the Debtors*

13

**EXHIBIT A**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                    Chapter 11 Case

VITAL PHARMACEUTICALS, INC., *et al.*,[1]        Case No.: 22-_____

       Debtors.                                          (Joint Administration Pending)
_____/

**ORDER GRANTING DEBTORS' EMERGENCY APPLICATION FOR ENTRY OF
ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN STRETTO, INC.,
AS NOTICE, CLAIMS AND SOLICITATION AGENT, EFFECTIVE
<u>AS OF THE PETITION DATE</u>**

      **THIS MATTER** came before the Court on October ___, 2022 at _____

a.m./p.m., in Fort Lauderdale, Florida, upon the application [ECF No. ____] (the "<u>Application</u>")

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

of the above-captioned debtors and debtors in possession (each a "<u>Debtor</u>" and, collectively, the "<u>Debtors</u>") for entry of an order authorizing the employment of Stretto, Inc. ("<u>Stretto</u>") as the notice, claims and solicitation agent for the Debtors, as more fully set forth in the Application; pursuant to 28 U.S.C. § 156(c); upon consideration of the Betance Declaration[2] and the First Day Declaration; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and all other parties in interest; and due and sufficient notice of the Application having been given; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that venue being proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that based on the representations made in the Betance Declaration that Stretto does not hold or represent an interest adverse to the Debtors' estates; and the Court having found that due and proper notice of the Application has been provided and no other or further notice need be provided; and the Court having determined that the legal and factual bases set forth in the Application and at the hearing establish just cause for the relief granted herein; and upon all of the proceedings heard before the Court; and after due deliberation and sufficient cause appearing therefor it is

**ORDERED THAT:**

1.      The Application is **APPROVED.**

2.      The Debtors are authorized to employ and retain Stretto as their notice, claims and solicitation agent in accordance with the terms and conditions set forth in the Application and the

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Application.

Engagement Agreement, effective as of the commencement of the Debtors' chapter 11 cases.

3.      The terms of the Engagement Agreement are approved as provided herein subject to the terms of this Order.

4.      Pursuant to 28 U.S.C. § 156(c), Rule 2002 of the Federal Rules of Bankruptcy Procedure and Local Rule 2002-1(B), Stretto is authorized to provide noticing, claims processing and balloting services as set forth in the Application and the Engagement Agreement, including, among others, as requested:

    a.    Preparing and serving required notices in the chapter 11 cases, including:

        i.    notice of the commencement of the chapter 11 cases and the initial meeting of creditors under Bankruptcy Code § 341(a);

        ii.    a notice of the claims bar date;

        iii.    notices of objections to claims and objections to transfers of claims;

        iv.    notices of hearings on motions filed by the Office of the United States Trustee (the "U.S. Trustee");

        v.    notices of transfers of claims;

        vi.    notices of any hearings on a disclosure statement and confirmation of the Debtors' plan of reorganization;

        vii.    notice of the effective date of any plan; and

        viii.    such other miscellaneous notices as the Debtors or Court may deem necessary or appropriate for an orderly administration of the chapter 11 cases.

    b.    Maintaining a: (i) list of all potential creditors, equity holders, and other parties in interest and (ii) "core" service list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010 and updating said lists and making said lists available upon request by a party-in-interest or the Clerk.

    c.    Assisting with the preparation of the Debtors' schedules of assets and liabilities and statements of financial affairs and gathering data in

3

conjunction therewith.

d.     Furnishing a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and, if asked, notifying such potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors.

e.     Maintaining a post office box or address for the purpose of receiving claims and returned mail, and processing all mail received.

f.     Within five (5) business days after the entry of a particular notice or order, preparing for filing with the Clerk's Office a certificate or affidavit of service that includes (i) a copy of the notice or order served, (ii) an alphabetical list of persons on whom notice was served, along with their addresses and (iii) the date and manner of service.

g.     Receiving, examining, and maintaining copies of all proofs of claim and proofs of interest filed in the chapter 11 cases.

h.     Maintaining official claims registers in the chapter 11 cases by docketing all proofs of claim and proofs of interest in a claims database that includes the following information for each such claim or interest asserted:

       i.     the name and address of the claimant or interest holder and any agent thereof, if the proof of claim or proof of interest was filed by an agent;

       ii.     the date the proof of claim or proof of interest was received by Stretto and/or the Court;

       iii.     the claim number assigned to the proof of claim or proof of interest; and

       iv.     the asserted amount and classification of the claim.

i.     Implementing necessary security measures to ensure the completeness and integrity of the claims registers.

j.     Recording all transfers of claims pursuant to Bankruptcy Rule 3001(e).

k.     Revising the creditor matrix after the objection period expires.

l.     Monitoring the Court's docket for all notices of appearance, address

changes, and claims-related pleadings and orders filed and making necessary notations on or changes to the Claims Registers and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists.

m.    Identifying and correcting any incomplete or incorrect addresses in any mailing or service lists.

n.    Recording any order entered by the Court which may affect a claim by making a notation on the claims registers.

o.    Monitoring the Court's docket for any claims related pleading filed and making necessary notations on the claims register.

p.    Filing a quarterly updated claims register with the Court in alphabetical and numerical order. If there was no claims activity, a certification of no claim activity may be filed.

q.    Maintaining an up-to-date mailing list of all creditors and all entities who have filed proofs of claim or proofs of interest and/or request for notices in the case and providing such list to the Court or any interested party upon request (within 48 hours).

r.    Providing access to the public for examination of claims and the claims register at no charge.

s.    Establish and maintain a case website with case information, including key dates, service lists and free access to the case docket.

t.    Forwarding all claims, an updated claims register and an updated mailing list to the Court within 10 days of entry of an order converting a case or within 30 days of entry of a final decree. The claims register and mailing list will be provided in both paper and on disc and in alphabetical and numerical order. The mailing list disc will be in .txt format.

u.    Complying with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders and other requirements.

v.    Providing temporary employees to process claims as necessary.

w.    Promptly complying with such further conditions and requirements as the Clerk's Office or the Court may at any time prescribe.

x.    Providing such other claims processing, noticing, and administrative services as may be requested from time to time by the Debtors.

y.    Assisting with, among other things, solicitation, balloting, tabulation and

calculation of votes, as well as preparing any appropriate reports required in furtherance of confirmation of any chapter 11 plan.

z.      Generating an official ballot certification and testifying, if necessary, in support of the ballot tabulation results for any chapter 11 plan(s) in the chapter 11 cases.

aa.     Providing such other claims, noticing, processing, solicitation, balloting, and other administrative services described in the Engagement Agreement, that may be requested from time to time by the Debtors, the Court, or the Clerk.

5.      In addition to the services set forth in the Application and the Engagement Agreement, Stretto is authorized to provide other noticing, claims processing, solicitation and administrative services the Debtors may request from time to time, including, but not limited to: (a) maintaining and updating the master mailing list of creditors; (b) tracking and administration of claims; and (c) performing other administrative tasks pertaining to the administration of the chapter 11 cases, as may be requested by the Debtors or the Clerk of this Court (the "Clerk's Office").

6.      Stretto is appointed as agent for the Clerk's Office and, as such, is designated as the authorized repository for all proofs of claims filed in these chapter 11 cases and is authorized and directed to maintain official claims registers for the Debtors and to provide the Clerk's Office with a certified duplicate thereof as the Clerk's Office may direct. To the extent any government or non-government claimant files a proof of claim with the Court via CM/ECF or manually with the Clerk of the Court, as opposed to with Stretto, such filings will be deemed timely if filed by the applicable bar date set by the Court.

7.      Without further order of the Court, the Debtors are authorized to compensate Stretto in accordance with the terms and conditions of the Engagement Agreement, upon Stretto's submission to the Debtors of invoices summarizing in reasonable detail the services and expenses for which compensation is sought; provided, however, that Stretto shall provide copies

of such invoices to the Office of the United States Trustee and any official committee of creditors appointed in these chapter 11 cases.

8.      Stretto shall, on a monthly basis, submit detailed invoices to the Debtors for the services rendered, with a copy to the Office of the United States Trustee and, to the extent applicable, to counsel for any official committee(s) appointed during the course of these chapter 11 cases.

9.      Stretto shall not cease providing claims processing services during these chapter 11 cases for any reason without prior order of this Court authorizing Stretto to do so; provided, however, that Stretto may seek such an order on expedited notice by filing a request with the Court with notice of such request to be served on the Debtors, the Office of the United States Trustee and any official committee of creditors appointed in these cases by facsimile or overnight delivery; provided further, that except as expressly provided herein, the Debtors and Stretto may otherwise terminate or suspend other services as provided under the Engagement Agreement.

10.     The Court and Stretto will implement an Internet link on the Court's website that can direct parties in interest to the website maintained by Stretto for these chapter 11 cases.

11.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Stretto incurred pursuant to the Engagement Agreement shall be an administrative expense of the Debtors' estates.

12.     Nothing herein obligates a successor chapter 7 trustee or chapter 11 trustee to employ Stretto.

13.     The Debtors and Stretto are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

8838939-1

14.     Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

#   #   #

Submitted by:
Jordi Guso, Esq.,
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

8838939-1

**EXHIBIT B**

**Betance Declaration**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                    Chapter 11 Case

VITAL PHARMACEUTICALS, INC., *et al.*,         Case No.: 22-_____

    Debtors.                                          (Joint Administration Pending)

_____/

**DECLARATION OF SHERYL BETANCE IN SUPPORT OF DEBTORS'
EMERGENCY APPLICATION FOR ENTRY OF ORDER AUTHORIZING
DEBTORS TO EMPLOY AND RETAIN STRETTO, INC., AS NOTICE, CLAIMS
AND SOLICITATION AGENT, EFFECTIVE AS OF THE PETITION DATE**

I, Sheryl Betance, under penalty of perjury, declare as follows:

1.       I am a Senior Managing Director of Corporate Restructuring at Stretto, Inc. ("Stretto"), a chapter 11 administrative services firm with offices at 410 Exchange, Ste. 100, Irvine, CA 92602.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.       This declaration (the "Declaration") is made in support of the *Debtors Emergency Application for Entry of Order Authorizing Debtors to Employ and Retain Stretto, Inc., as Notice, Claims and Solicitation Agent, Effective as of the Petition Date* (the "Application").

**Qualifications**

3.       Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Stretto's professionals have acted as official claims and noticing agent in many large bankruptcy cases. Stretto has developed efficient and cost-effective

methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest.  Stretto's cases include: *In re Liberty Power Holdings, LLC*, Case No. 21-13797-SMG (Bankr. S.D. Fla. May 25, 2021); *In re Allena Pharmaceuticals, Inc.*, Case No. 22-10842 (KBO) (Bankr. D. Del. Sept. 7, 2022); *In re Clarus Therapeutics Holdings, Inc.,* Case No. 22-10845 (MFW) (Bankr. D. Del. Sept. 7, 2022); *In re NewAge, Inc.,* Case No. 22-10819 (LSS) (Bankr. D. Del. Sept. 1, 2022); *In re OSG Grp. Holdings, Inc.,* Case No. 22-10718 (JTD) (Bankr. D. Del. Aug. 9, 2022); *In re Celsius Network LLC*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y. July 19, 2022); *In re Voyager Digital Holdings, Inc*., Case No. 22-10943 (MEW) (Bankr. S.D.N.Y. July 13, 2022); *In re A.B.C. Carpet Co., Inc.*, No. 2 1 -11591 (DSJ) (Bankr. S.D.N.Y. Sept. 10, 2021); *In re Kumtor Gold Co. CJSC*, No. 21-11051 (LGB) (Bankr. S.D.N.Y. June 8, 2021); *In re VTES, Inc.*, No. 20-12941 (JLG) (Bankr. S.D.N.Y. Jan. 15, 2021); and *In re Furla (U.S.A.), Inc.,* No. 20-12604 (SCC) (Bankr. S.D.N.Y. Nov. 12, 2020).[1]

### Services to be Rendered

4.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Stretto will perform, at the request of the Office of the Clerk of the Court (the "Clerk's Office"), the services specified in the Application and the Engagement Agreement, and, at the Debtors' request, any related administrative, technical, and support services as specified in the Application and the Engagement Agreement.  In performing such services, Stretto will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as **Exhibit C** to the Application.

5.      Stretto represents, among other things, the following:

---

[1] Because of the voluminous nature of the orders cited herein, they are not attached to the Application or this Declaration.  Copies of these orders, however, are available on request of the Debtors' proposed counsel.

a.   Stretto is not a creditor of the Debtors;

b.   Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

c.   By accepting employment in these chapter 11 cases, Stretto waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

d.   In its capacity as the Claims and Noticing Agent in these chapter 11 cases, Stretto will not be an agent of the United States and will not act on behalf of the United States;

e.   Stretto will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

f.   Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

g.   In its capacity as Claims and Noticing Agent in these chapter 11 cases, Stretto will not intentionally misrepresent any fact to any person;

h.   Stretto shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers;

i.   Stretto will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j.   None of the services provided by Stretto as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's Office.

6.   Although the Debtors do not propose to retain Stretto under section 327 of the Bankruptcy Code pursuant to the Application, I caused to be submitted for review by our conflicts system the names of potential parties-in-interest (the "Potential Parties in Interest") in these chapter 11 cases. A list of Potential Parties in Interest was provided by the Debtors and included, among other parties, the Debtors, non-Debtor affiliates, the directors, officers and equity

holders of the Debtors, the Debtors' secured creditors and lenders, the Debtors' largest unsecured creditors on a consolidated basis, the U.S. Trustee and persons employed in the office of the U.S. Trustee, and other parties.  The Potential Parties in Interest list was compared to an internal database that includes, among others, Stretto's parent entities, affiliates, and subsidiaries.  Stretto's internal database also includes Stone Point Capital LLC ("Stone Point"), its funds, and each such fund's respective portfolio companies as set forth in the list most recently provided to Stretto by Stone Point's internal compliance department (the "Stone Point Searched Parties").  The results of the conflict check were compiled and reviewed by Stretto professionals under my supervision. At this time, and as set forth in further detail herein, Stretto is not aware of any connection that would present a disqualifying conflict of interest. Should Stretto discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Stretto will use reasonable efforts to file promptly a supplemental declaration.

7.     To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Stretto, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties.

8.     Stretto has and will continue to represent clients in matters unrelated to these chapter 11 cases. In addition, in matters unrelated to these chapter 11 cases, Stretto and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in these chapter 11 cases. Stretto may also provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, which services do not directly relate to, or have any direct connection with, these chapter 11 cases or the Debtors. Based upon a review of the Potential Parties in Interest:

- The list of Potential Parties in Interest identifies Citizens Bank, one of Stretto's bank vendors, as having a banking relationship with the Debtors. However, to the best of my knowledge, such relationship is materially unrelated to these Chapter 11 Cases.

- FTI Consulting ("FTI") has been identified as a Potential Party in Interest. Robert Medlin, an employee of FTI, is a current client of Stretto's chapter 7 software business in his individual capacity, but such relationship is unrelated to the Debtors and their estates, assets, or businesses.

- Nelson Mullins Riley & Scarborough LLP ("Nelson Mullins") has been identified as a Potential Party in Interest. Nelson Mullins is a current client of Stretto's chapter 7 software business, but such relationship is unrelated to the Debtors and their estates, assets, or businesses.

- Additionally, the list of Potential Parties in Interest includes entities, as set forth on Exhibit 1 attached hereto, which are current, former or potential defendants to avoidance actions brought under the Bankruptcy Code by clients of Stretto Recovery Services. However, to the best of my knowledge, such relationships are materially unrelated to these chapter 11 cases.

9.     To the best of my knowledge, none of Stretto's employees are related to bankruptcy judges in the Southern District of Florida, the U.S. Trustee for Region 21, or any attorney known by Stretto to be employed in the Office of the U.S. Trustee serving the Southern District of Florida.

10.     Certain of Stretto's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases. Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors

while employed by their previous firms. Moreover, these professionals were not employed by their previous firms when these chapter 11 cases were filed. To the best of my knowledge, none of Stretto's professionals were partners of, or formerly employed within the last three years by firms that are Potential Parties in Interest or that have filed a notice of appearance in these chapter 11 cases.

11.    Stretto and its personnel in their individual capacities regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors. Such firms engaged by Stretto or its personnel may appear in chapter 11 cases representing the Debtors or parties in interest.

12.    In April 2017, Stretto was acquired by the Trident VI Funds managed by private equity firm Stone Point.   Stone Point is a financial services-focused private equity firm based  in Greenwich, Connecticut.  The firm has raised and managed eight private equity funds – the Trident Funds–with aggregate committed capital of approximately $25 billion. Stone Point targets investments in the global financial services industry and related sectors

13.    The following disclosure is made out of an abundance of caution in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.

14.    Stretto has searched the names of the Debtors and the names of the Potential Parties in Interest against the Stone Point Searched Parties. Based solely on the foregoing search, Stretto has determined that neither the Trident VI Funds, Stone Point nor the Stone Point Searched Parties have been identified on the parties in interest list in these chapter 11 cases as of the date hereof and to the best of its knowledge, that there are no material connections that require disclosure. To the extent Stretto learns of any material connections between Stone Point's funds or investments included in the above-described conflicts search and the Debtors, Stretto will promptly file a

supplemental disclosure. Stretto may have had, may currently have, or may in the future have business relationships unrelated to the Debtors with one or more Stone Point entities including, among others, portfolio companies of Stone Point.

15.     From time to time, Stretto partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates, often without Stretto's or its personnel's knowledge. Each Stretto partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. Each Investment Fund is generally operated as a blind pool, meaning that when the Stretto partners or employees make an investment in the particular Investment Fund, he, she, or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

16.     From time to time, Stretto partners or employees may personally directly acquire a debt or equity security of a company that may be one of the Debtors or their affiliates. Stretto has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work. In this regard, subject to the foregoing, all Stretto partners and employees are barred from trading in securities with respect to matters in which Stretto is retained. Subject to the foregoing, upon information and belief, and upon reasonable inquiry through email survey of Stretto's employees, Stretto does not believe that any of its partners or employees own any debt or equity securities of a company that is a Debtor or of any of its affiliates.

17.     To the best of my knowledge, Stretto (a) does not hold or represent an interest adverse to the Debtors' estates; (b) is a "disinterested person" that (i) is not a creditor, an equity security holder, or an insider, (ii) is not and was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors, and (iii) does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason; and (c) has disclosed all of Stretto's connections with the Debtors, its creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 10, 2022

_/s/ Sheryl Betance_
Sheryl Betance
Senior Managing Director
Stretto, Inc.
410 Exchange, Ste. 100
Irvine, California 92602

## Exhibit 1

Alabama Department of Revenue
American Express
Arizona Department of Revenue
AT&T
California Department of Tax
Colorado Department of Revenue
Comcast
Comptroller of Maryland
CS Packaging Inc.
CT Corporation
Delaware Secretary of State
Duke Realty LP
FedEx
First Insurance Funding Corp.
Florida Department of Revenue
Frontier Communications
Georgia Department of Revenue
Illinois Department of Revenue
Kentucky Department of Revenue
Massachusetts Department of Revenue
Minnesota Revenue
Nevada Department of Taxation
NJ Division Of Taxation
North Carolina Department of Revenue
Republic Services, Inc. / BFI Waste Services, Inc.
Rothschild & Co US Inc
Spectrum Energy, Inc.
South Carolina Department of Revenue
Southern California Edison
State of Connecticut
Tennessee Department of Revenue
Texas Comptroller of Public Accounts
Utah State Tax Commission
Verizon
Virginia Department of Taxation
Wisconsin Department of Revenue

**EXHIBIT C**

**Engagement Agreement**



# Services Agreement

This Services Agreement (this "**Agreement**") is entered into as of September 23, 2022 between Stretto, Inc. ("**Stretto**") and Vital Pharmaceutical, Inc. (together with its affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Stretto agrees to use its best efforts to provide the Company with the following consulting services: (i) legal noticing, maintenance of claims registers, creditor mailing matrices, an electronic platform for filing proofs of claim, plan solicitation, balloting, tabulation of votes, disbursements, and administrative support in preparation of schedules of assets and liabilities and statements of financial affairs ("**Claims Administration, Noticing, and Solicitation Services**"); (ii) if requested by the Company in writing, crisis communications, claims analysis and reconciliation, preference analysis and recovery, contract review and analysis, case research, public securities, depository management, treasury services, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement); and, (iii) any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations, or court rules or orders (all such services collectively, the "**Services**").

   (b) The Company acknowledges and agrees that Stretto will often take direction from the Company's representatives, employees, agents, and/or professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder. The parties agree that Stretto may rely upon, and the Company agrees to be bound by, any requests, advice, or information provided by the Company Parties to the same extent as if such requests, advice, or information were provided by the Company.

   (c) The Company agrees and understands that Stretto shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Stretto will provide the Services on an as-needed basis and upon request or agreement of the Company. Stretto's charges for Services through the effective date of a chapter 11 plan shall be at the rates attached hereto (the "**Preferred Rate Structure**"). The Company agrees that the Preferred Rate Structure shall not be applicable to Services provided to the entity or entities responsible for implementing a confirmed and effective chapter 11 plan and that such Services will be provided at Stretto's then prevailing rates. The Company agrees to pay for reasonable out of pocket expenses incurred by Stretto in connection with providing Services hereunder; provided that Stretto will obtain the Company's express written preapproval for any such expenses greater than $5,000.

   (b) Stretto will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to

---

[1]    The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case. Each affiliated entity shall be jointly and severally liable for the Company's fees and expenses.


exceed $5,000 (e.g., publication notice), Stretto will obtain the Company's express written preapproval for any such expenses and may require advance or direct payment from the Company before the performance of Services hereunder. If any undisputed amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(c) In the case of a dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Stretto within 10 business days of receipt of the invoice.

(d) The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of, or resulting from any error or omission made by the Company or the Company Parties.

(f) Upon execution of this Agreement, the Company shall pay Stretto an advance of $100,000. Stretto may use such advance against unpaid fees and expenses hereunder. Stretto may use the advance against all prepetition fees and expenses. Company shall upon Stretto's request, which request may take the form of an invoice, replenish the advance to the original advance amount. Stretto may also, at its option hold such advance to apply against unpaid fees and expenses hereunder.

(g) Payments to Stretto under the terms of this Agreement for services rendered, may be remitted by Company using either (or both) of the following methods:

> **Wire Transmission**
> Bank Name – Pacific Western Bank
> Bank Address – 110 West A Street, Suite 100, San Diego, CA 92101
> ABA – 122238200
> Account Number – ████1781
> Account Name – Bankruptcy Management Solutions, Inc.
>
> **Check**
> Stretto
> Attn: Accounts Receivable
> 410 Exchange, Suite 100
> Irvine, CA 92602

**3. Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), the Company promptly shall file any necessary application with the Bankruptcy Court to retain Stretto to provide the Services. The form and substance of such applications and any order approving them shall be reasonably acceptable to Stretto.

(b) If the Company seeks authorization in a chapter 11 case to obtain postpetition financing, including debtor-in-possession loans or use of cash collateral, the Company shall include Stretto's fees and expenses incurred hereunder in any professional compensation carve-out.

(c) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Stretto will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder until this Agreement is terminated.

**4. Confidentiality**

(a) The Company and Stretto agree to keep confidential all non-public records, systems, procedures, software, and other information received from the other party in connection


with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the receiving party's possession or known to it, independently developed by the receiving party, lawfully obtained by the receiving party from a third party, or required to be disclosed by law, then the receiving party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, (i) such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time, if possible, to seek any remedy available under applicable law to prevent disclosure of the information; and (ii) such party will limit such disclosure to the extent the such party's counsel in good faith determines such disclosure can be limited.

## 5. Property Rights

Stretto reserves to itself and its agents all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation, and any other information or property (collectively, "**Property**") furnished by Stretto for itself or for use by the Company hereunder. The foregoing definition of Property shall include any and all data, from any source, downloaded, stored, and maintained by Stretto's technology infrastructure. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Stretto hereunder.

## 6. Bank Accounts

At the written request of the Company or the Company Parties, Stretto shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Stretto's agreement with financial institutions, Stretto may receive compensation from such institutions for the services Stretto provides pursuant to such agreement.

## 7. Term and Termination

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) gross negligence or willful misconduct of Stretto that causes harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Stretto invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Stretto where Stretto reasonably believes it likely will not be paid.

(b) If this Agreement is terminated after Stretto is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Stretto of its duties under such retention, which order shall be in form and substance reasonably acceptable to Stretto.

(c) If this Agreement is terminated by the Company without Cause, the Company shall remain liable for all undisputed amounts then accrued and/or due and owing to Stretto hereunder through the date of termination.

(d) If this Agreement is terminated by the Company without Cause, Stretto shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to



maintain an orderly transfer of record keeping functions, and Stretto shall provide the necessary staff, services, and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Preferred Rate Structure.

**8.   No Representations or Warranties**

Stretto makes no representations or warranties, express or implied, regarding the services and products sold or licensed to the Company hereunder or otherwise with respect to this Agreement, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

**9.   Indemnification**

(a)   To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (collectively, the "**Stretto Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities, and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of, or related to Stretto's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Stretto Indemnified Party.  Likewise, to the fullest extent permitted by applicable law, Stretto shall indemnify and hold harmless the Company and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (collectively, the "**Company Indemnified Parties**") from and against any and all Losses resulting from, arising out of, or related to the Company's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Company Indemnified Party.

(b)   Stretto and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation, or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c)   The Company's indemnification of Stretto hereunder shall exclude Losses resulting from Stretto's fraud, gross negligence or willful misconduct.

(d)   The parties' indemnification obligations hereunder shall survive the termination of this Agreement.

**10.  Limitations of Liability**

Except as expressly provided herein, Stretto's liability to the Company for any Losses, unless due to Stretto's fraud, gross negligence or willful misconduct, shall be limited to the total amount paid by the Company to Stretto for the portion of the particular work that gave rise to the alleged Loss.  In no event shall either party hereto be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

**11.  Company Data**

(a)   The Company is responsible for, and Stretto does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Stretto and for the output of such information, including, without limitation, with respect to preparation



of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**"). Stretto bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b)  The Company agrees, represents, and warrants to Stretto that before delivery of any information to Stretto: (i) the Company has full authority to deliver such information to Stretto; and (ii) Stretto is authorized to use such information to perform Services hereunder and as otherwise set forth in this Agreement.

(c)  Any data, storage media, programs or other materials furnished to Stretto by the Company may be retained by Stretto until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Stretto under this Agreement as a result of data, storage media or other materials maintained, stored, or disposed of by Stretto. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Stretto's Services for a period of 90 days or more, Stretto may dispose of any such materials in a manner to be determined in Stretto's sole reasonable discretion, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data, or information provided by the Company to Stretto.

(d)  Stretto and the Company agree that this Agreement is subject to the terms set forth in the GDPR Addendum attached hereto as Exhibit A, which are incorporated herein by reference.

(e)  Notwithstanding the foregoing, if Stretto is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media, or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

**12.  California Consumer Privacy Act.**

(a)  Definitions.  In this Section,
   (i)  "**CCPA**" means the California Consumer Privacy Act of 2018, including amendments and final regulations;
   (ii)  "**Personal Information**" has the same meaning given to such term under section 1798.140 of the CCPA and is limited to any Company data provided to Stretto by the Company in order for Stretto to provide Services under this Agreement; and
   (iii)  "**Commercial Purposes**," "**Sell**," "**Business**," and "**Service Provider**" have the same meanings assigned to them in section 1798.140 of the CCPA.

(b)  Relationship Between the Parties. To the extent the Company is considered a Business under California law, and subject to the terms of this Section 12, Stretto will act solely as Company's Service Provider with respect to Personal Information.

(c)  Restrictions. Stretto certifies it will not: (i) Sell Personal Information or (ii) collect, retain, use, or disclose Personal Information for any purpose other than for the specific purpose of performing the Services specified in this Agreement, including collecting, retaining, using, or disclosing Personal Information for any Commercial Purpose other than providing the Services specified in this Agreement unless otherwise permitted under the CCPA.

**13.  Non-Solicitation**

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ, or otherwise retain as employees, consultants, or otherwise, any employees of Stretto during the term of this Agreement and for a period of 12 months after termination thereof unless Stretto provides prior written consent to such solicitation or retention.



**14. Force Majeure**

Whenever performance by either party hereto of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond its reasonable control, then such performance shall be excused during the period of the force majeure event and must be performed as soon as practically reasonable thereafter.

**15. Choice of Law**

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of Florida without regards to its choice or conflict of law principles.

**16. Reserved.**

**17. Integration: Severability; Modifications: Assignment**

    (a) Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

    (b) If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

    (c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Stretto.

    (d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other.

**18. Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

**19. Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Stretto:              Stretto
                             410 Exchange, Ste. 100
                             Irvine, CA 92602
                             Attn: Sheryl Betance
                             Tel: 714.716.1872

Email: sheryl.betance@stretto.com

If to the Company:    Vital Pharmaceuticals, Inc.
Office of the General Counsel
1600 N. Park Drive
Weston, FL 33326
Email: Legal@bangenergy.com

With a copy to:    Jordi Guso, Esquire
Berger Singerman LLP
1450 Brickell Avenue
Suite 1900
Miami, FL 33131
Email: jguso@bergersingerman.com

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement effective as of the date first above written.

Stretto

By: Sheryl Betance

Title: Senior Managing Director

Vital Pharmaceutical, Inc.

John Owoc (Sep 26, 2022 12:14 EDT)

By:  Jack Owoc, CEO

7

11657010-2



**Exhibit A**


# GDPR Addendum

This GDPR Addendum is a part of the Services Agreement (the "**Agreement**") by and between Stretto (the "**Processor**")[2] and the Company (together, the "**Parties**").

## RECITALS

**WHEREAS**,

(A) The Processor and the Company have agreed to the following terms regarding the Processing of Company Personal Data.

(B) The Company acts as a Controller of the Company Personal Data.

(C) The Company wishes to subcontract certain Services, pursuant to the Agreement, which imply and require the processing of personal data, to the Processor.

(D) The Company instructs the Processor to process Company Personal Data.

(E) The Parties seek to implement a data processing agreement that complies with the requirements of the current legal framework in relation to data processing and with the Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation or "**GDPR**").

**NOW THEREFORE**, the Company and the Processor agree as follows:

1. **Definitions.**  The parties agree that the following terms, when used in this GDPR Addendum, shall have the following meanings.

    (a) "**Addendum**" shall mean this GDPR Addendum;

    (b) "**Company Personal Data**" means any Personal Data Processed by the Processor or a Subprocessor on behalf of the Company pursuant to or in connection with the Agreement, and may include, for example, Personal Data of Company's employees, clients, customers, creditors, equity interest holders, or counter-parties;

    (c) "**Data Protection Laws**" means EU Directive 95/46/EC, as transposed into domestic legislation of each Member State and as amended, replaced or superseded from time to time, including by the GDPR and laws implementing or supplementing the GDPR;

    (d) "**Services**" means the services the Processor provides to the Company pursuant to the Agreement;

    (e) "**Subprocessor**" means any person appointed by or on behalf the Processor to process Personal Data on behalf of the Company in connection with the Agreement;

---

[2] Capitalized terms utilized but not defined in the GDPR Addendum have the meanings ascribed to them in the Agreement.

(f)     "**Technical and organizational security measures**" means those measures aimed at protecting Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing;

(g)     The terms "**Commission**", "**Controller**", "**Data Subject**", "**Member State**", "**Personal Data**", "**Personal Data Breach**", "**Processor**", "**Processing**", "**Special Categories of Personal Data**", and "**Supervisory Authority**" shall have the same meaning as in the GDPR, and their derivative terms shall be construed accordingly.

2.     **Obligations of the Company.**  The Company agrees and warrants:

(a)     to comply with the Data Protection Laws;

(b)     that it will take reasonable steps to instruct the Processor to process the Company Personal Data transferred only on the Company's behalf and in accordance with the applicable Data Protection Laws, the Agreement, and this Addendum;

(c)     that it will take reasonable steps to ensure compliance with the technical and organizational security measures; and

(d)     that it will take reasonable steps to ensure that the Company Personal Data transferred to Processor does not include or involve any special categories of data, as defined by Article 9 of the GDPR.

3.     **Obligations of the Processor.**  The Processor agrees and warrants:

(a)     to comply with the Data Protection Laws;

(b)     to process the Company Personal Data only on behalf of the Company and in compliance with its instructions and this Addendum; if it cannot provide such compliance for whatever reasons, it agrees to inform promptly the Company of its inability to comply, in which case the Company is entitled to suspend the processing of data and/or terminate the Agreement;

(c)     that it has no reason to believe that the legislation applicable to it prevents it from fulfilling the instructions received from the Company and its obligations under the Agreement and that in the event of a change in this legislation which is likely to have a substantial adverse effect on the warranties and obligations provided by the Clauses, it will promptly notify the change to the Company as soon as it is aware, in which case the Company is entitled to suspend the transfer of data and/or terminate the Agreement;

(d)     that it has implemented reasonable and appropriate technical and organizational security measures before processing the Company Personal Data;

(e)     that it will promptly notify the Company about:

    i.     any legally binding request for disclosure of the Company Personal Data by a law enforcement authority unless otherwise prohibited, such as a prohibition

11657010-2

2



under criminal law to preserve the confidentiality of a law enforcement investigation;

ii.    any accidental or unauthorized access; and

iii.    any request received directly from any data subject without responding to that request, unless it has been otherwise authorized to do so by the Company or as required by any applicable law;

(f)    to deal promptly and properly with all inquiries from the Company relating to its Processing of the Company Personal Data and to abide by the advice of the supervisory authority with regard to the processing of the Company Personal Data;

(g)    to take reasonable steps to ensure the reliability of any employee, agent, or contractor of any Subprocessor who may have access to the Company Personal Data, ensuring in each case that access is strictly limited to those individuals who need to know or access the relevant Company Personal Data, as strictly necessary to perform the Services under the Agreement, and to comply with Data Protection Laws in the context of that individual's duties to the Subprocessor, ensuring that all such individuals are subject to confidentiality undertakings or professional or statutory obligations of confidentiality; and

(h)    that it shall not use (or disclose any Company Personal Data to) any Subprocessor unless required or authorized by the Company with prior written consent.

**4.    Obligations after Termination of Personal Data Processing Services.**

(a)    The Parties agree that within 10 business days of the termination of the Agreement or provision of Services, the Processor and any Subprocessor shall, at the choice of the Company, return all Company Personal Data and the copies thereof to the Company or shall destroy all the Company Personal Data and certify to the Company that it has done so, unless legislation imposed upon the Processor prevents it from returning or destroying all or part of the Company Personal Data.  In that case, the Processor warrants that it will guarantee the confidentiality of the Company Personal Data and will not further process the Company Personal Data.

(b)    The Processor and any Subprocessor warrant that upon request of the Company and/or of the supervisory authority, it will submit its data-processing facilities for an audit of the technical and organizational security measures.

**5.    Notices.**  All notices and communications given under this Addendum must be delivered as provided for by the Agreement.