UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,

Debtors.[1]

_____/

Chapter 11 Cases

Case No. 22-17842 (PDR)
(Joint Administration Pending)

## DEBTORS' EMERGENCY APPLICATION FOR APPROVAL, ON AN INTERIM AND FINAL BASIS, OF THE EMPLOYMENT OF LATHAM & WATKINS LLP AS CO-COUNSEL FOR DEBTORS-IN-POSSESSION, EFFECTIVE AS OF THE PETITION DATE

**(Emergency Hearing Requested)**

**Statement of Exigent Circumstances**

The Debtors respectfully request the Court to consider interim approval of this Application on an emergency basis. Without counsel, the Debtors would be unable to seek the Court orders they require to operate their businesses. The Debtors believe that withholding approval of an application for interim retention of counsel for non-natural persons such as corporations and limited liability companies that cannot represent themselves in federal court would cause immediate and irreparable harm to the estates. The Debtors respectfully request that the Court waive the provisions of Local Rule 9075-1(B), which requires an affirmative statement that a bona fide effort was made in order to resolve the issues raised in this Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

---

[1]  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("Vital Pharmaceuticals") (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC ("Quash Seltzer") (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their proposed undersigned counsel, pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a), 2016, and 6003, and Local Rules 2014-1(A) and 2016-1(A) (each as defined below), hereby file this *Debtors' Emergency Application for Approval, on an Interim and Final Basis, of the Employment of Latham & Watkins LLP as Counsel for Debtors-in-Possession, Effective as of the Petition Date* (this "Application"), seeking approval on an interim and final basis of the employment of the law firm of Latham & Watkins LLP ("L&W"), to represent the Debtors as bankruptcy co-counsel in these Chapter 11 Cases (as defined below), in accordance with the terms and conditions of that certain engagement letter dated August 8, 2022 (the "Engagement Letter").   In support of this Application, the Debtors rely upon the (a) *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and incorporated herein and (b) *Declaration of Andrew Sorkin, on Behalf of Latham & Watkins LLP as Proposed Co-Counsel for Debtors-In-Possession, Effective as of the Petition Date* attached hereto as **Exhibit A** (the "Sorkin Declaration"), and respectfully represent the following:

## Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are section 327(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a), 2016, and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1(A) and 2016-1(A) of the Local Bankruptcy Rules for the Southern District of Florida (the "Local Rules").

**Background**

4.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

5.      The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the First Day Declaration.

**Relief Requested**

7.      The Debtors seek entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit C**, authorizing the employment and retention of L&W as bankruptcy co-counsel for the Debtors, effective as of the Petition Date, in accordance with the terms and conditions of the Engagement Letter.  In accordance with Local Rule 2014-1, the L&W Engagement Letter is attached as **Exhibit B**.

**L&W's Qualifications**

8.      The Debtors seek to retain L&W because of L&W's recognized expertise and extensive experience and knowledge practicing before bankruptcy courts in large and complex chapter 11 cases and because of L&W's knowledge of the Debtors' business and financial affairs.

9.      L&W and its partners have represented numerous debtors in their bankruptcy matters, including Accuride Corporation, Allen Systems Group, Inc., Alta Mesa Resources, Inc., AT&T Latin America, Bally Total Fitness Holding Corp., B456 Systems, Inc. (f/k/a A123 Systems, Inc.), Boston Generating, LLC, Centrus Energy Corp. (f/k/a USEC INC.), Chaparral Energy, Inc., Consolidated Freightways, Cricket Communications, Inc., Dayton Superior Corporation, DVI, Inc., DNIB Unwind, Inc. (f/k/a BIND Therapeutics, Inc.), Eddie Bauer Holdings, Inc., Emerge Energy Services LP, Enduro Resource Partners LLC, Freedom

Communications Holdings, Inc., Global Eagle Entertainment Inc., GNC Holdings, Inc., Graceway Pharmaceuticals, LLC, Green Field Energy Services, Inc., Hexion Holdings LLC, Hi-Crush Inc., Illinois Power Generating Company, Imerys Talc America, Inc., Libbey Glass Inc., Lonestar Resources US Inc., Lucky Brand Dungarees, LLC, Mallinckrodt plc, MD Helicopters, Inc., Monitronics International, Inc., NEC Holdings Corp., Nine Point Energy Holdings, Inc., OnCure Holdings, Inc., Pacific Drilling S.A., Paddock Enterprises, LLC, Panda Temple Power, LLC, Rentech WP U.S. Inc., RHI Entertainment, Inc., Sable Permian Resources, LLC, Sienna Biopharmaceuticals, Inc., Spansion Inc., Spectrum Brands Inc., Stone Energy Corporation, Sundance Energy Inc., Superior Energy Services, Inc., Traffic Control and Safety Corporation, Tuscany International Holdings (U.S.A.) Ltd., and Weatherford International plc.

10.    Moreover, since June 2022, the Debtors and L&W have worked together closely in an effort to address the Debtors' capital structure and financial circumstances, including by providing advice in connection with financing efforts and corporate matters, assisting with the evaluation of and stakeholder negotiations related to Debtors' restructuring options, and by assisting the Debtors in preparing for the Chapter 11 Cases.  As a result, L&W possesses an in-depth knowledge of the Debtors' business affairs and capital structure and has gained insight into many of the legal issues that might arise in the context of the Chapter 11 Cases.  Accordingly, the Debtors believe that L&W is both well-qualified and uniquely able to represent them in the Chapter 11 Cases and that such representation is critical to the Debtors' efforts to maximize value for their estates.

## Services to be Provided

11.    The Debtors desire to employ L&W under a general retainer because of, among other reasons, the nature of the legal services that will be required in connection with the Chapter 11 Cases.  To engage alternative counsel at this stage of the Debtors' cases would be tremendously

disruptive and would derail the possibility of the Debtors' emergence on the quick timetable necessary for the Debtors to achieve their chapter 11 objectives.

12.    Consistent with the Engagement Letter, the Debtors expect L&W to provide the following legal services:

(a)    advise the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

(b)    advise and consult on the conduct of the Chapter 11 Cases, including all of the legal and administrative requirements of operating in chapter 11;

(c)    advise the Debtors in connection with their efforts to protect, preserve, and maximize the value of the Debtors' estates;

(d)    analyze proofs of claim filed against the Debtors and object to such claims as necessary;

(e)    represent the Debtors in connection with cash collateral and postpetition financing matters;

(f)    attend meetings and negotiate with representatives of creditors and other parties in interest;

(g)    analyze executory contracts and unexpired leases and potential assumptions, assignments, or rejections of such contracts and leases;

(h)    prepare pleadings in connection with the Chapter 11 Cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

(i)    advise the Debtors in connection with any potential exit financing or other transaction to facilitate the Debtors' emergence from bankruptcy;

(j)      take necessary action on behalf of the Debtors to obtain approval of a disclosure statement and confirmation of a chapter 11 plan;

(k)      appear before this Court or any appellate courts to protect the interests of the Debtors' estates before those courts;

(l)      advise on corporate, litigation, regulatory, finance, tax, employee benefits, and other legal matters; and

(m)     perform all other necessary legal services for the Debtors in connection with the Chapter 11 Cases.

13.    Concurrently with the filing of this Application, the Debtors filed an application to retain Berger Singerman LLP ("BSLLP") as their bankruptcy co-counsel and conflicts counsel. Because L&W and BSLLP will have well-defined and distinct roles, each counsel will not duplicate the services the other provides to the Debtors.  L&W will coordinate with BSLLP and any other counsel the Debtors retain in the Chapter 11 Cases to ensure that the legal services each firm provides to the Debtors are not duplicative.

## Professional Compensation

14.    L&W operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.  L&W's hourly rates are designed to compensate L&W fairly for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.

15.    L&W's current hourly rates are set forth in the Sorkin Declaration, along with the names and rates of the attorneys with primary responsibility for providing services to the Debtors. Hourly rates vary with the experience and seniority of the individuals assigned and are subject to

periodic adjustments to reflect economic and other conditions.[2]  None of the professionals included in this engagement will vary his or her rate based on the geographic location of the Chapter 11 Cases.

16.    L&W's hourly rates and the financial terms of the engagement proposed herein are consistent with the rates and terms of L&W's prepetition engagement.  The Debtors have reviewed and approved L&W's standard rate structure and determined that it is appropriate and comparable to (a) the rates that L&W charges for non-bankruptcy representations and (b) the rates of other comparably skilled professionals.

17.    Consistent with the Engagement Letter and L&W's policy with respect to its other clients, L&W will continue to charge the Debtors for all services provided and for other charges and disbursements incurred in the rendition of services.  It is L&W's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also L&W's policy to charge its clients only the amount actually incurred by L&W in connection with such items.

18.    During the course of the Chapter 11 Cases, L&W will apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in the Chapter 11 Cases in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any orders entered in the Chapter 11 Cases governing

---

[2]  L&W increases the hourly billing rate of attorneys and paraprofessionals in the form of (a) step increases historically awarded in the ordinary course of business on the basis of advancing seniority and promotion and (b) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases, effective as of November 1, 2013, issued by the Executive Office of the United States Trustee). As set forth in the Order, L&W will provide ten business-days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and will file any such notice with the Court.

professional compensation and reimbursement for services rendered and charges and disbursements incurred. Such applications will constitute a request for interim payment against L&W's reasonable fees and expenses to be determined at the conclusion of the Chapter 11 Cases.

**Compensation Received by L&W from the Debtors**

19.     As of the Petition Date, the Debtors did not owe L&W any amounts for legal services rendered before the Petition Date, and L&W is not a creditor of the Debtors.

20.     As set forth in the Sorkin Declaration, during the 90-day period prior to the Petition Date, L&W received payments and advances in the aggregate amount of $2,617,777.45 for services performed and expenses incurred, and to be performed and incurred, including in preparation for the commencement of the Chapter 11 Cases. As of the Petition Date, L&W has a remaining credit balance on its advance in favor of the Debtors in the amount of approximately $1,121,950 (the "Fee Advance"). L&W intends to apply the Fee Advance to any outstanding amounts relating to the period prior to the Petition Date that were not processed through L&W's system as of the Petition Date.

21.     L&W requests that the Fee Advance be treated as an evergreen retainer and be held by L&W as security throughout the Chapter 11 Cases until L&W's fees and expenses are awarded and payable to L&W on a final basis. The Debtors submit that an evergreen retainer is appropriate for several reasons. First, these types of retainer agreements reflect normal business terms in the marketplace. Second, both L&W and the Debtors are sophisticated business entities that have negotiated the retainer at arm's length. Third, the retention of L&W is in the best interests of the Debtors' estates, as the applicable retention agreement and retainer allow the Debtors to maintain their prepetition relationship established with L&W.

**L&W's Disinterestedness**

22.     To the best of the Debtors' knowledge, and except as otherwise disclosed in the Sorkin Declaration, the partners, counsel, and associates of L&W (a) do not have any connection with any of the Debtors, their affiliates, their creditors, any other party in interest, the United States Trustee for the Southern District of Florida or any person employed in the office of the same, or any judge in the United States Bankruptcy Court for the Southern District of Florida or any person employed in the offices of the same; (b) are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code; and (c) do not hold or represent any interest adverse to the Debtors' estates.  The Debtors will seek to retain additional conflicts counsel as necessary if neither L&W nor BSLLP is eligible to represent the Debtors' interests in a particular matter.[3]

23.     As disclosed in the Sorkin Declaration, L&W has in the past represented, currently represents, and likely in the future will represent, certain parties in interest in the Chapter 11 Cases. Except as set forth in the Sorkin Declaration, all such representations are or were in connection with matters wholly unrelated to the Debtors and the Chapter 11 Cases.  Pursuant to section 327(c) of the Bankruptcy Code, L&W is not disqualified from acting as the Debtors' co-counsel merely because it has represented or currently represents certain parties in interest in matters unrelated to the Chapter 11 Cases.

---

[3] In the event the Debtors seek to employ and retain separate conflicts counsel in connection with the Chapter 11 Cases to handle matters that the Debtors may encounter that cannot be handled appropriately by L&W or BSLLP because of a conflict of interest, then the Debtors intend that the services of such conflicts counsel shall complement, and not duplicate, the services to be rendered by L&W and BSLLP.  Moreover, the responsibilities of such conflicts counsel shall be confined to discrete legal matters that are distinct from the matters handled by L&W or BSLLP. Conflicts counsel shall act on its own and will not act under the direct supervision of L&W.  Indeed, the Debtors are extremely mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is no such duplication.

24.     The Debtors understand that L&W will continue to conduct periodic conflicts analyses to determine whether any conflicts or other disqualifying circumstances exist or arise.  If any relevant facts or relationships are discovered, L&W will promptly file a supplemental declaration as required by Bankruptcy Rule 2014(a).

**<u>Authority for Relief</u>**

25.     The Debtors seek retention of L&W as their bankruptcy co-counsel pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

26.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

27.     The Debtors submit that for all the reasons stated above and in the Sorkin Declaration and the First Day Declaration, the retention and employment of L&W is necessary and in the best interest of the Debtors, their estates, and their creditors and should be approved.

28.     The Sorkin Declaration, containing a verified statement as required under Rule 2014 of the Federal Rules of Bankruptcy Procedure, is attached and demonstrates that under these circumstances, L&W is disinterested as required by section 327(a) of the Bankruptcy Code.

29.     The Debtors seek entry of the Order, on an interim basis, approving the employment of L&W, and scheduling a final hearing to consider this Application.  Entry of the Order will help avoid delay in obtaining approval until a final hearing is scheduled, which would cause immediate and irreparable harm to the Debtors, who would be without counsel for first day hearings.  *See In re First NLC Financial Services, LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008) (overruling objection of U.S. Trustee to retention of Berger Singerman as proposed counsel for chapter 11 debtor, finding that granting interim relief was proper under Bankruptcy Rule 6003 and agreeing with the CRO's testimony "that without counsel for [the first] 20 days [after the petition date], these cases would be immediately and irreparably harmed[.]").

30.     Accordingly, the Debtors seek to retain L&W on an interim basis pursuant to Bankruptcy Rule 6003, as such retention of co-counsel for chapter 11 debtors has been consistently approved in bankruptcy courts across the country including in Florida and this district.  *See, e.g., In re Liberty Power Holdings, LLC,* Case No. 21-13797-SMG (Bankr. S.D. Fla. April 28, 2021); *In re American Purchasing Services, LLC d/b/a American Medical Depot, et al.,* Case No. 20-23495-SMG (Bankr. S.D. Fla. Dec. 16, 2020); *In Re Tamarac 10200, LLC, et al.,* Case No. 20-23346-PDR (Bankr. S.D. Fla. Dec. 11, 2020); *In re First NLC Financial Services, LLC, supra. accord In re Arrow Air, Inc., et al.*, Nos. 10-28831-AJC, 10-28834-AJC, 2010 WL 6982673 (Bankr. S.D. Fla. July 12, 2010); *In re First Foliage, L.C.*, No. 10-27532-BKC-LMI, 2010 WL 8033344 (Bankr. S.D. Fla. June 23, 2010); *In re Vero Fashion Outlets, LLC*, No. 09-31344-EPK, 2009 WL 7199998 (Bankr. S.D. Fla. October 12, 2009).

**WHEREFORE**, the Debtors respectfully request entry of the Order in the form attached hereto as **<u>Exhibit C</u>**: (i) approving, on an interim basis, the Debtors' employment of L&W, as bankruptcy co-counsel to the Debtors in these Chapter 11 Cases, effective as of the Petition Date; (ii) scheduling a final hearing on this Application; and (iii) for such other and further relief as the Court deems just and proper.

Dated:  October 10, 2022              Respectfully submitted,

VITAL PHARMACEUTICALS, INC., *et al.*, Debtors
1600 N. Park Drive
Weston, FL 33326


By: */s/ John C. DiDonato*
    John C. DiDonato

Dated: October 10, 2022
        Miami, Florida

Respectfully submitted,

_/s/ Jordi Guso_

George A. Davis (*pro hac vice* pending)
Tianjiao ("TJ") Li (*pro hac vice* pending)
Brian S. Rosen (*pro hac vice* pending)
Jonathan J. Weichselbaum (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
            tj.li@lw.com
            brian.rosen@lw.com
            jon.weichselbaum@lw.com

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
            mniles@bergersingerman.com

– and –

Andrew D. Sorkin (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Jeramy D. Webb (*pro hac vice* pending)
Whit Morley (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  jeramy.webb@lw.com
            whit.morley@lw.com

*Proposed Co-Counsel for the Debtors*

# **EXHIBIT A**

**(Sorkin Declaration)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                          Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al*.,          Case No. 22-17842 (PDR)
                                                (Joint Administration Pending)
        Debtors.[1]

_____/

**DECLARATION OF ANDREW SORKIN, ON BEHALF OF
LATHAM & WATKINS LLP AS PROPOSED CO-COUNSEL FOR
DEBTORS-IN-POSSESSION, EFFECTIVE AS OF THE PETITION DATE**

I, Andrew Sorkin, declare as follows:

1.      I am a partner in the law firm of Latham & Watkins LLP ("L&W"), an international
law firm with offices across the United States, Europe, and Asia.  I am admitted in, practicing in,
and a member in good standing of the bars of the District of Columbia and the State of New York,
and there are no disciplinary proceedings pending against me.  I am over the age of eighteen, am
authorized to submit this Declaration, and am competent to testify on the matters contained herein.

2.      I submit this Declaration to provide disclosure in connection with the *Debtors'
Emergency Application for Approval, on an Interim and Final Basis, of the Employment of Latham
& Watkins LLP as Co-Counsel for Debtors-in-Possession, Effective as of the Petition Date*
(the "Application"),[2] by which the above-captioned debtors and debtors-in-possession (together,

---

[1]  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal
tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("Vital Pharmaceuticals") (8430); (ii) Bang Energy
Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC
(9394); (v) Quash Seltzer, LLC ("Quash Seltzer") (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital
Pharmaceuticals International Sales, Inc. (8019).

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

the "Debtors") seek authority to employ and retain L&W as bankruptcy co-counsel effective as of the Petition Date.

3.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by other L&W professionals or paraprofessionals, or learned from my review of relevant documents.    To the extent any information disclosed herein requires amendment or modification as additional information becomes available to L&W, a supplemental declaration will be submitted to this Court reflecting such amended or modified information.

## L&W'S QUALIFICATIONS

4.      The Debtors seek to retain L&W because of L&W's recognized expertise and extensive experience and knowledge practicing before bankruptcy courts in large and complex chapter 11 cases and because of L&W's knowledge of the Debtors' business and financial affairs.

5.      L&W and its partners have represented numerous debtors in their bankruptcy matters, including Accuride Corporation, Allen Systems Group, Inc., Alta Mesa Resources, Inc., AT&T Latin America, Bally Total Fitness Holding Corp., B456 Systems, Inc. (f/k/a A123 Systems, Inc.), Boston Generating, LLC, Centrus Energy Corp. (f/k/a USEC INC.), Chaparral Energy, Inc., Consolidated Freightways, Cricket Communications, Inc., Dayton Superior Corporation, DVI, Inc., DNIB Unwind, Inc. (f/k/a BIND Therapeutics, Inc.), Eddie Bauer Holdings, Inc., Emerge Energy Services LP, Enduro Resource Partners LLC, Freedom Communications Holdings, Inc., Global Eagle Entertainment Inc., GNC Holdings, Inc., Graceway Pharmaceuticals, LLC, Green Field Energy Services, Inc., Hexion Holdings LLC, Hi-Crush Inc., Illinois Power Generating Company, Imerys Talc America, Inc., Libbey Glass Inc., Lonestar Resources US Inc., Lucky Brand Dungarees, LLC, Mallinckrodt plc, MD Helicopters, Inc.,

Monitronics International, Inc., NEC Holdings Corp., Nine Point Energy Holdings, Inc., OnCure Holdings, Inc., Pacific Drilling S.A., Paddock Enterprises, LLC, Panda Temple Power, LLC, Rentech WP U.S. Inc., RHI Entertainment, Inc., Sable Permian Resources, LLC, Sienna Biopharmaceuticals, Inc., Spansion Inc., Spectrum Brands Inc., Stone Energy Corporation, Sundance Energy Inc., Superior Energy Services, Inc., Traffic Control and Safety Corporation, Tuscany International Holdings (U.S.A.) Ltd., and Weatherford International plc.

6.       I am one of the principal L&W attorneys working on this engagement.  I have extensive experience in corporate restructurings and related matters, including debtor representations in the chapter 11 cases of, among others, Alta Mesa Resources, Inc., K-V Pharmaceutical Company, Mallinckrodt plc, Nine Point Energy Holdings, Inc., RathGibson, Inc., Weatherford International plc, WP Steel Venture, LLC, Value City Holdings, Inc., and Verso Corporation.  I have represented debtors, asset purchasers, bank groups, secured lenders, unsecured creditors, and other parties in both in-court and out-of-court restructurings.  Other professionals and paraprofessionals in L&W's insolvency practice and in other practice areas, many of whom also have extensive experience in corporate restructurings generally and debtor representations in chapter 11 cases specifically, will participate in the representation of the Debtors in the Chapter 11 Cases.

7.       Moreover, since June 2022, the Debtors and L&W have worked together closely in an effort to respond to the Debtors' financial circumstances, including by engaging in negotiations with the Debtors' major stakeholders, advising with respect to the Debtors' strategic alternatives and by assisting the Debtors in all aspects of preparing the Chapter 11 Cases.  As a result, L&W possesses an in-depth knowledge of the Debtors' business affairs and capital structure and has gained insight into many of the legal issues that could arise in the context of the Chapter 11 Cases.

8. Accordingly, I believe that L&W is both well-qualified and uniquely able to represent the Debtors in the Chapter 11 Cases and that such representation will contribute greatly to the efficient administration of the estates, thereby minimizing expense to the estates and facilitating the progress and success of the Chapter 11 Cases.

## SERVICES TO BE PROVIDED

9. Pursuant to that certain engagement letter dated August 8, 2022 (the "Engagement Letter"), a copy of which is attached as **Exhibit B** to the Application, the Debtors retained L&W to provide, without limitation, the following legal services:

a. advise the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b. advise and consult on the conduct of the Chapter 11 Cases, including all of the legal and administrative requirements of operating in chapter 11;

c. advise the Debtors in connection with their efforts to protect, preserve, and maximize the value of the Debtors' estates;

d. analyze proofs of claim filed against the Debtors and object to such claims as necessary;

e. represent the Debtors in connection with cash collateral and postpetition financing matters;

f. attend meetings and negotiate with representatives of creditors and other parties in interest;

g. analyze executory contracts and unexpired leases and potential assumptions, assignments, or rejections of such contracts and leases;

h. prepare pleadings in connection with the Chapter 11 Cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

i. advise the Debtors in connection with any potential exit financing or other transaction to facilitate the Debtors' emergence from bankruptcy;

j. take necessary action on behalf of the Debtors to obtain approval of a disclosure statement and confirmation of a chapter 11 plan;

4

k.      appear before this Court or any appellate courts to protect the interests of the Debtors' estates before those courts;

l.      advise on corporate, litigation, regulatory, finance, tax, employee benefits, and other legal matters; and

m.     perform all other necessary legal services for the Debtors in connection with the Chapter 11 Cases.

10.     I understand that, concurrently with the filing of the Application, the Debtors filed an application to retain Jordi Guso and the law firm of Berger Singerman LLP ("BSLLP") as their bankruptcy co-counsel and conflicts counsel. Because L&W and BSLLP have had, and will continue to have, distinct and well-defined roles, each counsel will not duplicate the services the other provides to the Debtors. L&W will coordinate with BSLLP and any other counsel the Debtors retain in the Chapter 11 Cases to ensure that the legal services each firm provides to the Debtors are not duplicative.

## PROFESSIONAL COMPENSATION

11.     L&W intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, the Local Rules, and any procedures and orders of this Court.

12.     L&W operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors. L&W's current hourly rates for matters related to the Chapter 11 Cases range as follows:

| Billing Category | Rates |
| --- | --- |
| Partners | $1,265 to $2,075 |
| Counsel | $1,210 to $1,720 |
| Associates | $655 to $1,300 |
| Professional Staff | $190 to $965 |
| Paralegals | $270 to $600 |

5

13.    L&W's hourly rates are designed to compensate L&W fairly for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned and are subject to periodic adjustments to reflect economic and other conditions (which adjustments will be reflected in the first L&W fee application following such adjustments).[3] The current hourly rates for the attorneys with primary responsibility for providing services to the Debtors are as follows:

| Attorney | Hourly Rate |
| --- | --- |
| Andrew Sorkin | $1,540 |
| Amy Quartarolo | $1,265 |
| Elizabeth Morris | $1,165 |
| Jeramy Webb | $1,165 |
| Brian Rosen | $990 |
| T.J. Li | $990 |
| Jon Weichselbaum | $990 |
| Whit Morley | $895 |

14.    Consistent with the Engagement Letter and L&W's policy with respect to its other clients, L&W will continue to charge the Debtors for all services provided and for other charges and disbursements incurred in the rendition of services. It is L&W's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also L&W's policy to charge its clients only the amount actually incurred by L&W in connection with such items. These charges and disbursements include (without limitation) costs for photocopying, electronic data management services, including scanning and document imaging, travel, travel-related expenses, business meals, computerized research, messengers,

---

[3] L&W's billing rates are usually revised annually, on or around January 1 of each year, as is customary with L&W's policies. Accordingly, L&W's billing rates will increase on January 1, 2023. As set forth in the Order, L&W will provide ten business-days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and will file any such notice with this Court.

couriers, postage, witness fees, and other fees related to trials and hearings. L&W professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices, and L&W will continue to charge for overtime secretarial charges that arise out of business necessity. L&W will charge the Debtors $0.15 per page for standard duplication in accordance with the Local Rules.

15.     No promises have been received by L&W, or any partner, counsel, or associate thereof, as to payment or compensation in connection with the Chapter 11 Cases other than in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. Except for sharing arrangements among L&W, its affiliated law practice entities, and their respective members, in accordance with sections 329 and 504 of the Bankruptcy Code and Bankruptcy Rule 2016(b), L&W has not entered into any agreements, express or implied, with any other party in interest, including the Debtors, any creditor, or any attorney for such party in interest in the Chapter 11 Cases for (a) the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered in connection therewith, (b) payment of such compensation from the assets of the estates in excess of the compensation allowed by this Court pursuant to the applicable provisions of the Bankruptcy Code, or (c) payment of compensation in connection with the Chapter 11 Cases other than in accordance with the applicable provisions of the Bankruptcy Code.

## U.S. TRUSTEE GUIDELINES

16.     L&W will make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the U.S. Trustee Guidelines, both in connection with this Application and with any fee applications filed by L&W in the Chapter 11 Cases.

17.     The following is provided in response to the request for additional information set forth in Paragraph D.1 of the U.S. Trustee Guidelines:

a.    **Question**:  Did L&W agree to any variations from, or alternatives to, L&W's standard billing arrangements for this engagement?

**Answer**:  No.  The rate structure provided by L&W is appropriate and comparable to (a) the rates that L&W charges for non-bankruptcy representations and (b) the rates of other comparably skilled professionals.

b.    **Question**:  Do any of the L&W professionals in this engagement vary their rate based on the geographic location of the Debtors' chapter 11 cases?

**Answer**:  No.

c.    **Question**:  If L&W has represented the Debtors in the 12 months prepetition, disclose L&W's billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If L&W's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

d.    **Answer**:  L&W's current hourly rates for services rendered on behalf of the Debtors are set forth above.  These rates have been used since August 9 of this year.  Prior to August 9, L&W used the following hourly rates for services rendered on behalf of the Debtors: $1,310 to $2,150 for partners; $1,255 to $1,830 for counsel; $730 to $1,400 for associates; $230 to $1,290 for professional staff; and $185 to $735 for paralegals.  All material financial terms have remained unchanged since the prepetition period.

e.    **Question**:  Have the Debtors approved L&W's budget and staffing plan and, if so, for what budget period?

**Answer**:  Yes.  L&W has provided the Debtors with a prospective budget and staffing plan setting forth the types of timekeepers, numbers thereof, and applicable hourly rates it expects during the Chapter 11 Cases, which have been approved by the Debtors.  The budget and staffing plan cover the period from the Petition Date to December 31, 2022.

8

### COMPENSATION RECEIVED BY L&W FROM THE DEBTORS

18.     As of the Petition Date, the Debtors did not owe L&W any amounts for legal services rendered before the Petition Date, and L&W is not a creditor of the Debtors.

19.     As set forth in the chart below, during the 90-day period prior to the Petition Date, L&W received payments and advances in the aggregate amount of $2,617,777.45 for services performed and expenses incurred, and to be performed and incurred, including in preparation for the commencement of the Chapter 11 Cases.  All payments were in the form of retainers for the advance payment of subsequent invoices (the "Fee Advance") and are set forth in the chart below. As of the Petition Date, the balance of the Fee Advance was approximately $1,121,950.  L&W intends to apply the Fee Advance to any outstanding amounts relating to the period prior to the Petition Date that were not processed through L&W's system as of the Petition Date and will seek the approval of this Court prior to applying any portion of the remaining Fee Advance to postpetition fees and expenses.

| Transaction | Invoice Date | Payment Date | Amount Invoiced | Date Range of Services | Amount Paid | Fee Advance Balance |
|---|---|---|---|---|---|---|
| Advance Payment | | 8/9/2022 | | | $400,000.00 | $400,000.00 |
| Invoice | 8/16/2022 | | $53,786.95 | 08/08/22-8/14/22 | Fee Advance applied | $346,213.05 |
| Invoice | 8/16/2022 | | $138,990.50 | 08/08/22-08/15/22 | Fee Advance applied | $207,222.55 |
| Advance Payment | | 8/26/2022 | | | $192,777.45 | $400,000.00 |
| Invoice | 8/29/2022 | | $233,530.77 | 08/10/22-08/19/22 | Fee Advance applied | $166,469.23 |
| Invoice | 8/29/2022 | | $61,411.50 | 08/10/22-08/21/222 | Fee Advance applied | $105,057.73 |
| Advance Payment | | 9/15/2022 | | | $2,025,000.00 | $2,130,057.73 |
| Invoice | 9/19/2022 | | $11,749.50 | 08/08/22-09/09/22 | Fee Advance applied | $2,118,308.23 |
| Invoice | 9/19/2022 | | $67,296.91 | 09/05/22-09/11/22 | Fee Advance applied | $2,051,011.32 |
| Invoice | 9/26/2022 | | $14,976.35 | 9/12/22-9/17/22 | Fee Advance applied | $2,036,034.97 |
| Invoice | 9/26/2022 | | $83,921.50 | 9/12/22-9/18/22 | Fee Advance applied | $1,952,113.47 |

| Invoice | 9/29/2022 | | $56,396.59 | 8/9/22-9/2/22 | Fee Advance applied | $1,895,716.88 |
| Invoice | 9/29/2022 | | $102,533.20 | 8/22/22-9/4/22 | Fee Advance applied | $1,793,183.68 |
| Invoice | 9/29/2022 | | $6,218.50 | 9/19/22-9/23/22 | Fee Advance applied | $1,786,965.18 |
| Invoice | 9/29/2022 | | $320,596.81 | 9/19/22-9/28/22 | Fee Advance applied | $1,466,368.37 |
| Invoice | 10/7/2022 | | $344,417.50 | 9/12/22 - 10/6/22 | Fee Advance applied | $1,121,950.87 |

20.     L&W requests that the Fee Advance be treated as an evergreen retainer and be held by L&W as security throughout the Chapter 11 Cases until L&W's fees and expenses are awarded and payable to L&W on a final basis.

## DISINTERESTEDNESS

21.     In preparing this Declaration, I used a set of procedures developed by L&W to ensure compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules regarding the retention of professionals by a debtor under the Bankruptcy Code (the "Firm Disclosure Procedures").  Pursuant to the Firm Disclosure Procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this Declaration and to ascertain L&W's connection to such parties:

     a.     The following comprehensive list (the "Retention Checklist") of the types of entities that may have contacts with the Debtors was developed through discussions with the L&W attorneys who have provided services to the Debtors and in consultation with the advisors to and senior management of the Debtors:

        (i)     Debtors and Affiliated Entities
        (ii)    Debtors' Restructuring Professionals
        (iii)   Ordinary Professionals
        (iv)   Lease Counterparties
        (v)    Landlord/Lessors
        (vi)   Counsel/Professionals to Material Counterparties
        (vii)  Current and Former Officers and Directors of Debtors and Affiliates
        (viii) Significant Equityholders
        (ix)   Secured Lenders
        (x)    Banking Relationships

        (xi)     Parties to Pending Litigation
        (xii)    Insurance and Insurance Providers
        (xiii)   Potential Major Unsecured Creditors (including Counterparties to Major Contracts)
        (xiv)   Vendors
        (xv)    Lien Search Parties
        (xvi)   Other Unsecured Creditors
        (xvii)  Taxing and Other Significant Governmental Authorities
        (xviii) Utility Providers
        (xix)   United States Bankruptcy Judges in the Southern District of Florida
        (xx)    Staff for Southern District of Florida Bankruptcy Judges
        (xxi)   United States Trustee for the Southern District of Florida (and Key Staff Members)

b.     L&W obtained information responsive to the Retention Checklist through several inquiries of the Debtors' senior management and advisors and review of documents provided by the Debtors to L&W. L&W then used that information, together with other information identified by L&W, to compile a list of the names of entities that may be parties in interest in the Chapter 11 Cases (the "Potential Parties in Interest"), as set forth on Appendix 1 hereto.[4] The information listed on Appendix 1 may have changed without my knowledge and may change during the pendency of the Chapter 11 Cases. L&W will update this Declaration, as described below, when L&W becomes aware of new material information.

c.     L&W maintains a master client database as part of its conflict clearance and billing records. The master client database includes the names of the entities for which any attorney time charges have been billed since the database was first created (the "Client Database"). The Client Database includes the names of all current and former clients, the names of the parties who are or were related or adverse to such current and former clients, and the names of the L&W personnel who are or were responsible for current or former matters for such clients. The Client Database also includes the name of former clients of L&W attorneys while such attorneys were at a prior firm. L&W policy is that no new matter may be accepted or opened within L&W without completing and submitting to those charged with maintaining the conflict clearance system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the name of the matter, adverse parties, and, in some cases, parties related to the client or to an adverse party. Accordingly, the database is updated for every new matter undertaken by L&W. The accuracy of the system is a

---

[4] The entities included on the list of Potential Parties in Interest (and the categories contained therein) were provided by the Debtors to L&W for purposes of a conflict check only and should not be relied upon by any party as a list of creditors or for any other purpose.

function of the completeness and accuracy of the information submitted by the attorney opening a new matter.

d.      L&W compared the names of each of the Potential Parties in Interest to client matters in the Client Database for which professional time was recorded during the three years prior to the Petition Date.  Any matches to names in the Client Database generated by the comparison were compiled, together with the names of the respective L&W personnel responsible for the identified client matters (the "Client Match List").  The Client Match List is attached as Appendix 2 to this Declaration. [5]

e.      Using information in the Client Database concerning entities on the Client Match List and making general and, if applicable, specific inquiries of L&W personnel, L&W verified that it does not represent and has not represented any entity on the Client Match List in connection with the Chapter 11 Cases.

f.      In addition, a general inquiry was sent by email to all L&W attorneys to determine whether any such individuals or any members of their households (i) own or owned any debt or equity securities of the Debtors; (ii) hold or held any claim against or interest adverse to the Debtors; (iii) represent or represented a client in a matter adverse to the Debtors; (iv) are or were officers, directors, or employees of the Debtors; (v) are related to or have any connections to Bankruptcy Judges in the Southern District of Florida; or (vi) are related to or have any connections to anyone working in the Office of the United States Trustee for the Southern District of Florida (the "U.S. Trustee").

22.     L&W compiled responses to the foregoing inquiries for the purpose of preparing this Declaration.  Responses to the inquiry described in subparagraph (f) above indicate that, as of the Petition Date and except as described below, no L&W attorneys or members of their household: (i) own or owned any debt or equity securities of the Debtors;[6] (ii) hold or held any claim against or interest adverse to the Debtors; (iii) represent or represented a client in a matter adverse to the

---

[5]  As referenced in Appendix 2, the term "Current Client" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years and L&W has at least one open matter.  The term "Former Client" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years but all matters for such client have since been closed.  The term "Prior Client" refers to an entity listed as a client of an L&W attorney while such attorney was at a prior firm.  L&W does not disclose connections if time was recorded more than three years before the Petition Date.

[6]  Certain L&W attorneys or members of the households of L&W attorneys may unknowingly hold interests in the Debtors in blind, discretionary accounts or mutual funds.

Debtors; (iv) are or were officers, directors, or employees of the Debtors; (v) are related to or have any connections to Bankruptcy Judges in the Southern District of Florida; or (vi) are related to or have any connections to anyone working in the Office of the U.S. Trustee.

23.     None of the entities listed on Appendix 2 represented more than 1% of L&W's total client billings for the twelve-month period ending August 31, 2022 (on a consolidated basis).[7]

24.     L&W will not represent the Debtors in an adversary proceeding commenced against any client of L&W unless L&W has an applicable waiver on file or first receives a waiver from such entity allowing L&W to commence such an action.  To the extent that a waiver does not exist or is not obtained from such entity and it is necessary for the Debtors to commence an adversary proceeding against that entity, the Debtors will employ BSLLP or retain separate conflicts counsel to represent them in that particular matter.  In addition, L&W will not represent any client on any matter adverse to the Debtors or their estates while retained as the Debtors' counsel in the Chapter 11 Cases.

25.     L&W will periodically review its files during the pendency of the Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any relevant facts or relationships are discovered or arise, L&W will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration as required by Bankruptcy Rule 2014(a).  In that regard, L&W intends to disclose clients in the capacity that they first appear in a conflicts search.  For example, if a client has already been disclosed in this Declaration in one capacity (*e.g.*, a bank), and the client appears in a subsequent conflicts search in a different capacity (*e.g.*, a lender), then L&W does not intend to disclose the same client again in supplemental

---

[7]  According to L&W's records as of September 29, 2022.

declarations, unless the circumstances are such in the latter capacity that additional disclosure is required.

26.     Except as set forth herein, and based upon the information available to me as of the date hereof, neither I, nor L&W, nor any partner or associate thereof, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates.  Based on the foregoing and to the best of my knowledge, I believe that: (a) L&W is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code; and (b) L&W has no connection to the Debtors, their creditors, or their related parties except as may be disclosed in this Declaration (as supplemented from time-to-time). The proposed engagement of L&W is not prohibited by or improper under Bankruptcy Rule 5002(a).

## SPECIFIC DISCLOSURES

27.     As specifically set forth below and in Appendix 2, L&W represents or has represented certain of the Debtors' creditors and professionals, and other Potential Parties in Interest in matters unrelated to the Debtors and the Chapter 11 Cases.  With the exception of certain former representations described in paragraphs 35, 37, and 38 below, none of the representations described herein is adverse to the interests of the Debtors or their estates.  Moreover, pursuant to section 327(c) of the Bankruptcy Code, L&W is not disqualified from acting as the Debtors' co-counsel merely because it represents or has represented the Debtors' creditors, professionals, or other Potential Parties in Interest in matters unrelated to the Debtors or the Chapter 11 Cases.  I do not believe that L&W's current and prior representations described herein preclude L&W from being a disinterested party under the Bankruptcy Code.

## Relationships with Significant Lenders

28.     L&W currently represents or formerly represented certain of the Debtors' significant secured or unsecured lenders or their affiliates.  Specifically, L&W currently represents or in the past has represented Truist Bank, CoBank, ACB, HSBC Bank USA, N.A., United Community Bank D/B/A Seaside Bank and Trust, Huntington National Bank, and/or certain of their affiliates (collectively, the "Lenders") in a number of different matters unrelated to the Debtors or the Chapter 11 Cases.  The Lenders comprise one or more of the following: (a) a prepetition or postpetition lender to the Debtors; (b) an entity with whom the Debtors have a banking relationship; or (c) an agent under the Debtors' prepetition or postpetition credit facilities. L&W has not represented and will not represent the Lenders in connection with any matter in the Chapter 11 Cases.

29.     I do not believe that L&W's past or current representation of the Lenders in matters unrelated to the Debtors or the Chapter 11 Cases precludes L&W from being a disinterested party under the Bankruptcy Code.  In the event that the Debtors and any of the Lenders become directly adverse to one another in an adversary proceeding in the Chapter 11 Cases, the Debtors will employ conflicts counsel to handle the matter as necessary.

## Relationships with Significant Creditors

30.     L&W currently represents or formerly represented certain of the Debtors' significant prepetition creditors or their affiliates.  Specifically, L&W currently represents or in the past has represented Graphic Packaging International, LLC, XPO Global Forwarding, Inc., and American Express Company in a number of different matters unrelated to the Debtors or the Chapter 11 Cases.  I do not believe that L&W's past or current representations described in this paragraph preclude L&W from being a disinterested party under the Bankruptcy Code.  In the event that the Debtors and any such creditor become directly adverse to one another in an adversary

proceeding in the Chapter 11 Cases, the Debtors will employ conflicts counsel to handle the matter as necessary.

## Other Connections to Potential Parties in Interest

31.     Certain insurance companies pay the legal bills of L&W clients.  Some of these insurance companies may be involved in the Chapter 11 Cases.  None of these insurance companies, however, is an L&W client as a result of the fact that it pays legal fees on behalf of a client of L&W.

32.     Certain of the parties in interest in the Chapter 11 Cases may be, or previously may have been, members of ad hoc or official creditors' committees represented by L&W in matters unrelated to the Chapter 11 Cases.  In such instances, L&W represented only the committee or group, and did not represent the creditors in their individual capacities, and no attorney client relationship exists or existed between L&W and such parties in interest unless specifically noted. L&W does not and will not represent any of these parties in connection with the Chapter 11 Cases.

33.     L&W may have represented, and may currently represent, entities that hold or may in the future hold certain of the Debtors' debt in beneficial accounts on behalf of unidentified parties.  Because distressed debt is actively traded in commercial markets, L&W may be unaware of the actual holder of such debt at any given moment.  L&W also represents numerous entities in unrelated matters that may buy and/or sell distressed debt, claims, or equity interests of chapter 11 debtors.  Moreover, from time to time, L&W is engaged by various entities that buy and/or sell distressed debt to analyze the capital structure of a distressed company based on a review of publicly available information.  L&W does not undertake such reviews after it has been engaged to represent any such company, including the Debtors, and does not view any public debt review as an adverse representation to the Debtors.  Similarly, as a large, international firm, L&W may represent creditors and/or investors of or parties interested in investing in one or more parties in

16

interest in these cases.  L&W does not believe these relationships represent interests adverse to the estate.

34.     Certain of the Debtors and their non-debtor affiliates or other entities associated with the Debtors may be creditors of entities that L&W currently represents or has represented in bankruptcy proceedings or post-effective date claims processes.  Similarly, certain parties in interest in the Chapter 11 Cases may be current or former L&W restructuring clients.  L&W will not represent the Debtors, the Debtors' non-debtor affiliates, or other entities associated with the Debtors in any matter related to other L&W clients' bankruptcy proceedings.  Nor will L&W represent any of its other restructuring clients against the Debtors in any of its other clients' restructuring matters.  L&W's other chapter 11 representations are unrelated to the Chapter 11 Cases and the Debtors.  I do not believe these representations preclude L&W from meeting the disinterestedness standard under the Bankruptcy Code.

### Relationships with Parties to Pending Litigations

35.     L&W represents Meta Platforms, Inc. ("Meta") in connection with the lawsuit captioned *Sony Music Entertainment, et al. v. Vital Pharmaceuticals, Inc.*, Case No. 1:21-cv-22825 (S.D. Fla.).  Meta is not a party to the litigation.  However, earlier this year, the Debtors served Meta with a third-party subpoena, and L&W represented Meta in responding to that subpoena.  I do not believe that this representation precludes L&W from meeting the disinterestedness standard under the Bankruptcy Code.

36.     L&W currently represents Sony Music Entertainment and certain of its affiliates (collectively, "Sony") in a variety of matters.  Sony is party to certain ongoing litigation with the Debtors, including the matter noted above in paragraph 35.  L&W does not represent and will not represent Sony or the Debtors in connection with such litigation.  L&W's representations of Sony or any of its subsidiaries or affiliates are unrelated to the Debtors or the Chapter 11 Cases.  I do

not believe that these representations preclude L&W from meeting the disinterestedness standard under the Bankruptcy Code.

37.     In addition, certain attorneys at L&W represented certain parties to pending litigations prior to joining L&W.  In particular, an L&W partner, Steve Feldman, represented Monster Energy Company ("Monster") in certain litigations involving the Debtors, including the lawsuit captioned *Monster Energy Co. v. Vital Pharmaceuticals Inc. et al.*, Case No. 5:18-cv-01882 (C.D. Cal.).  Mr. Feldman has not represented Monster since joining L&W on January 1, 2021, and Monster is not a past or present client of L&W.  Further, Mr. Feldman is not one of the L&W attorneys providing services to the Debtors in connection with these Chapter 11 Cases, and L&W has established an ethical wall prohibiting communications concerning the Debtors or the Chapter 11 Cases between the attorneys providing services to the Debtors and Mr. Feldman.  L&W and its attorneys do not and will not represent Monster or any of its subsidiaries or affiliates in connection with such litigations.

38.     In addition, one or more L&W attorneys represented Keurig Dr Pepper Inc. and certain of its affiliates (collectively, "Dr Pepper") prior to joining L&W.  Dr Pepper is party to certain ongoing litigation with the Debtors.  Such attorneys have not represented Dr Pepper since joining L&W, and Dr Pepper is not a past or present client of L&W.  In addition, L&W will not represent Dr Pepper or the Debtors in connection with such litigation.  Further, such attorneys are not involved in providing services to the Debtors in connection with these Chapter 11 Cases.  Lastly, one or more L&W attorneys represented PepsiCo Inc. and certain of its affiliates (collectively, "Pepsi") prior to joining L&W.  Pepsi is party to certain ongoing litigation with the Debtors.  Such attorneys have not represented Pepsi since joining L&W, and Pespi is not a past or present client of L&W.  In addition, L&W will not represent Pepsi or the Debtors in connection

with such litigation.  Further, such attorneys are not involved in providing services to the Debtors in connection with these Chapter 11 Cases.  I do not believe that the representations described in this paragraph preclude L&W from meeting the disinterestedness standard under the Bankruptcy Code.

### Relationships with Other Professionals

39.    From time to time, L&W has referred work to other professionals to be retained in the Chapter 11 Cases, and certain such professionals have referred work to L&W.  Also, as part of its practice, L&W appears in cases, proceedings, and transactions involving many different attorneys, accountants, financial consultants, and investment bankers, some of whom now or may in the future represent claimants and other parties in interest in these cases.  L&W has not represented, and will not represent, any such parties in relation to the Debtors or their Chapter 11 Cases.  L&W does not have any relationship with any such attorneys, accountants, financial consultants, or investment bankers that would be adverse to the Debtors or their estates.

40.    L&W currently represents or formerly represented certain of the Debtors' other professionals in a number of different matters unrelated to the Debtors and the Chapter 11 Cases. I do not believe that L&W's past or current representation of these other professionals in matters unrelated to the Debtors or the Chapter 11 Cases precludes L&W from being a disinterested party under the Bankruptcy Code.  In the event that the Debtors and any of the applicable professionals become directly adverse to one another in an adversary proceeding in the Chapter 11 Cases, the Debtors will employ conflicts counsel to handle the matter as necessary.

### L&W Attorney Connection to the Debtors

41.    The sister of L&W associate Hunter Newell is a social media influencer who promotes the Debtors' products and holds a negligible claim against the Debtors.  Mr. Newell does not hold a claim against the Debtors.  However, out of an abundance of caution, L&W has

established an ethical wall prohibiting communications concerning the Debtors or the Chapter 11 Cases between the attorneys providing services to the Debtors and Mr. Newell. I do not believe that the connection described in this paragraph precludes L&W from meeting the disinterestedness standard under the Bankruptcy Code.

### L&W Attorney Investments

42.     From time to time, L&W partners, of counsel, associates, and employees, or members of the households of the foregoing, personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, fund of funds, and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire an interest in debt or equity securities of many companies, one of which may be one of the Debtors, their creditors, or other parties in interest in the Chapter 11 Cases, often without L&W's knowledge. Each such person generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. The Investment Funds are generally operated as a blind pool, meaning that when such persons make an investment in an Investment Fund, he, she, or they do not know what securities the blind pool Investment Fund will purchase or sell and have no control over such purchases or sales.

43.     From time to time one or more L&W partners voluntarily choose to form an entity (a "Passive-Intermediary Entity") to invest in one or more Investment Funds or, in certain instances, directly in private companies. Such Passive-Intermediary Entity is comprised only of persons who were L&W partners or retired partners at the time of the Passive-Intermediary Entity's formation (although some may later become former L&W partners), and participation in such a Passive-Intermediary Entity is wholly voluntary and only a portion of L&W's partners choose to participate. L&W itself does not invest in the Passive-Intermediary Entity. The Passive-

Intermediary Entity generally owns substantially less than one percent of any underlying Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. Each Investment Fund in which a Passive-Intermediary Entity invests is operated as a blind pool, so that the Passive-Intermediary Entity does not know what securities the blind pool Investment Funds will purchase or sell, and has no control over such purchases or sales. The Passive-Intermediary Entities commonly receive periodic statements and communications from the underlying Investment Funds. The L&W partners participating in the Passive Intermediary may or may not know the identity of the Investment Fund's underlying investments or the identity of the securities purchased, sold, or held by the Investment Fund.

44.     Certain of the Passive-Intermediary Entities may make a direct investment into a private company. It is my understanding that no Passive-Intermediary Entity has made any direct investment into the Debtors or otherwise purchased any debt or equity security of the Debtors. In addition, as discussed above, the Firm Disclosure Procedures involve sending a general inquiry to all L&W attorneys to determine whether any such individuals or any members of their households own or owned any debt or equity securities of the Debtors or hold or held any claim against or interest adverse to the Debtors, among other things. Thus far, no response to this general inquiry has disclosed the ownership of any debt or equity securities of the Debtors or the holding of any claim against or interest adverse to the Debtors.

45.     From time to time, L&W partners, of counsel, associates, and employees personally directly acquire a debt or equity security of a company, which may be (or become) one of the Debtors, their creditors, or other parties in interest in the Chapter 11 Cases. L&W has a long-standing policy prohibiting attorneys and employees from using material non-public information

that may come to their attention in the course of their work, so that all L&W attorneys and employees are barred from trading in securities with respect to which they possess material non-public information.

## OTHER INVESTIGATION AND DISCLOSURE MATTERS

46.     L&W's investigation and research of the Potential Parties in Interest has thus far failed to eliminate the possibility that Potential Parties in Interest other than those listed on Appendix 2 hereto may be current or former clients of L&W because: (a) the names of the Potential Parties in Interest are similar to, but not identical to, current or former L&W clients; or (b) the names of the Potential Parties in Interest are common names that appeared on our conflict search results, but do not appear to be the same individuals or entities that are parties in interest herein.

47.     Although L&W has undertaken, and continues to undertake, extensive efforts to identify connections with the Debtors and other Potential Parties in Interest, it is possible that connections with some Potential Parties in Interest have not yet been identified.  Should L&W, through its continuing efforts, learn of any new connections of the nature discussed herein, L&W will so advise this Court in a timely manner as soon as reasonably practicable.

48.     L&W will not, while employed by the Debtors during the pendency of the Chapter 11 Cases, represent an interest adverse to the Debtors or their estates.

49.     Insofar as I have been able to ascertain, I know of no conflict of interest that would preclude L&W's representation of the Debtors in the Chapter 11 Cases.

50.     The foregoing constitutes the statement of L&W pursuant to sections 327(a), 329, and 504 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016(b).

*[Signature page follows]*

Pursuant to 28 U.S.C. § 1746, to the best of my knowledge, information and belief, and after reasonable inquiry, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 10, 2022
Washington, D.C.

/s/ Andrew D. Sorkin
Andrew D. Sorkin

## <u>Appendix 1</u>

**Potential Parties in Interest List**

**Potential Parties in Interest List**[1]

1. **Debtors and Affiliated Entities**

| | |
|---|---|
| Vital Pharmaceuticals, Inc. | Entourage IP Holdings, LLC |
| Vital Pharmaceuticals International Sales, Inc. | Bang Energy Canada, ULC |
| Bang Energy Canada, Inc. | Bang Jets, LLC |
| JHO Intellectual Property Holdings, LLC | Bang Energy Mexico S. DE R.L. de C.V. |
| JHO GA-1 Investment, LLC | Bang Energy B.V. |
| JHO NV-1 Investment, LLC | Bang Energy (Australia) Pty Ltd. |
| JHO Real Estate Investment, LLC | Bang Energy VPX Sports Ecuador S.A.S. |
| Sheridan Real Estate Investment A, LLC | Bang Energy Costa Rica LTDA |
| Sheridan Real Estate Investment B, LLC | Bang Energy Peru S.A.C. |
| Sheridan Real Estate Investment C, LLC | Bang Energy Brazil LTDA (Brazil) |
| Quash Seltzer, LLC | Bang Energy Chile SPA |
| Rainbow Unicorn Bev LLC | Bang Energy Colombia SAS |

2. **Debtors' Restructuring Professionals**

| | |
|---|---|
| Latham & Watkins LLP | Huron Consulting Group |
| Berger Singerman LLP | Rothschild & Co US Inc. |

3. **Ordinary Professionals**

| | |
|---|---|
| Quarles & Brady LLP | Nelson Mullins Riley & Scarborough LLP |
| Pettit Kohn Ingrassia Lutz & Dolin PC | J. Robbin Law, PLLC |
| Kuckelman Torline Kirkland | Krishel Law Firm |
| Wilson Elser Moskowitz Edelman | Murchison & Cumming, LLP |
| Jackson Lewis P.C. | Cole, Scott & Kissane, P.A. |
| Moore Rabinowitz Law | |

4. **Lease Counterparties**

| | |
|---|---|
| General Motors Financial Company, Inc. | Ally Financial |
| Crown Lift Trucks | Crown Equipment Corporation |
| Crown Credit Company | Penske Truck Leasing Co., L.P. |
| Ryder System, Inc. | Chrysler Capital |

---

[1] The parties included on this list (and the categories contained herein) are for purposes of a conflicts check only and should not be relied upon by any party as a list of creditors or for any other purpose. As listing a party once allows our conflicts specialists to run a check on such party, we have attempted to remove duplicate entries where possible. Accordingly, a party that would otherwise fall under multiple categories is likely to be listed under only one category

5. **Landlords/Lessors**

| | |
|---|---|
| 12M Commercial Properties, LLC | Phx Warehouse |
| 1600FL, LLC | Prologis Targeted US |
| C1 DAL III-V, LLC - Colony Capital | Ranger H-TX LP |
| Centerpoint (Dogwood) | Rbrothers LLC/ NV, LLC |
| CK Afton Ridge II, LLC | Rexford Inudstrial Realty, LP |
| Dalfen Industrial | The Rose Properties |
| Dogwood Holdings, LLP | TGA Cactus DC II LLC Teachers Ins & Annuity Assoc of America |
| Driscoll, LLP | Personal Mini Storage |
| Duke Realty | Neighborhood Storage Center Co |
| Eastgroup Properties LP - Jacksonville | Midgard Self Storage |
| Eastgroup Properties, LP | Compass Self Storage |
| Everman Trade Center (Cabot Industrial) | Spring Lake Storage |
| Evox Holdings LLC (Sheridan B) | Menifee storage |
| Icon Industrial Owner Pool - Bree Jupiter Western | West Side Storage |
| Kearny Mesa West, LLC | Powdersville Self Storage |
| KP Properties of Ohio | Tucson RV Storage |
| PPF Lincoln Medley, LLC | Welbic WF Management LLC |
| Medley Logistics | Gimmel Tammuz Realty |

6. **Counsel/Professionals to Material Counterparties**

| | |
|---|---|
| Moore & Van Allen PLLC | FTI Consulting |
| Shutts & Bowen LLP | |

7. **Current and Former Officers and Directors of Debtors and Affiliates**

| | |
|---|---|
| Greg Robbins | Gregg Metzger |
| Frank Massabki | Gene Bukovi |
| Rich Caruso | Eugene Bukovi |
| Kathleen Cole | Guillermo Escalante |
| Eric Hillman | |

8. **Significant Equityholders**

| | |
|---|---|
| John H. Owoc | |

9. **Secured Lenders**

| | |
|---|---|
| Truist Bank | Synovus Bank |
| CoBank, ACB | Federal Agricultural Mortgage Corporation |

| Agcountry Farm Credit Services, FLCA | Huntington National Bank |
| --- | --- |
| Farm Credit Bank of Texas | Greenstone Farm Credit Services, FLCA |
| Citizens Bank, N.A. | Comerica Bank |
| Compeer Financial, PCA | HSBC Bank USA, N.A. |
| United Community Bank d/b/a Seaside Bank and Trust | |

## 10. **Banking Relationships**

| Bank of America, N.A. | PayPal |
| --- | --- |

## 11. **Parties to Pending Litigation**

| Alejandro Machado | Reign Inferno |
| --- | --- |
| Balboa Capital Corporation | Monster Energy Company |
| Ball Corporation | Nexus Steel, LLC |
| Bang Diamonds LLC | Orange Bang, Inc. |
| Belvac Production Machinery, Inc. | PepsiCo, Inc. |
| Berlin Manufacturing | Premier Distributing Company |
| Berlin Packaging, LLC | Premier Nutrition Products, LLC |
| Brandyn Alejos | Premium Beverage Company |
| Breen Acres Aquatics, Inc. | ProSupps |
| Dairy Farmers of America, Inc. | Pro Supps USA LLC d/b/a Professional Supplements A/K/A Pro Supplements |
| Daniel Yepes | Quang Nguyen |
| Derik Fay | Rodney Cyril Sacks |
| Elegance Brands, Inc. | Bryan Shane Dees |
| Europa Sports Partners | Sony Music Entertainment |
| Gulfstream Aerospace Corporation | Stephen Cohen |
| Joao P Leopardo | Suddath Global Logistics, LLC |
| Keurig Dr Pepper Inc. | The American Bottling Company Inc. |
| Markerly, Inc. | The House of LaRose, Inc. |
| Massimo Zanetti Beverage USA, Inc. | TikTok, Inc. |
| Webb & Gerritsen, Inc. | Triller, Inc. |
| Yaritza Lozano | Shannon Troglia |
| Warner Music Group | UMG Recordings, Inc. |
| Adam Perry | Vani Deva Hari a/k/a "Food Babe" |
| Amanda Wightman | Aaronda Walton |
| Amber N. Killmon | Amanda Light |
| Amy Maros | Arianna Jonae Henderson |
| Andrew LaRocca | Arnold Classic Australia PTY, LTD |
| Branch Banking and Trust Company | Averell Luedecker |
| Carnegie Technologies, LLC | Brett Martin |

3

| | |
|---|---|
| Christin Kubsch | Brightfractal, Inc. |
| Csc Corporate Domains, Inc. | Dang Foods LLC |
| Christopher Alfieri | Edmund Elien |
| Crystal Bowley-Reagan | Energy Beverages, LLC |
| Darrell James Bennet II | Fabco Metal Products LLC |
| David Serrano Ramirez | GNC Holdings Inc. |
| Integrated Masonry | Gorilla Marketing, LLC |
| ISEC Inc. | Haci Mechanical Contractors Inc. |
| James Rodriguez | Heavy Equipment Movers & Installation LLC |
| Jasmine Sade Williams | Hardrock Concrete Placement Co Inc. |
| Jeannine Smith | Landmark Custom Homes of Broward |
| Jennifer Quillen | Landmark Custom Ranches Inc. |
| Kelly Ocampo | Lasiah R. Villalpando |
| Konya Seker Sanayi Ve Ticaret Anonim Sirketi | Laura Dawson |
| Kristin Wong | Leading Edge Expositions, LLC d/b/a LEEXPOS |
| Krystle Michele Glenn | Marc J. Kesten |
| Monster Beverage Corporation | PhD Marketing, INC. |
| Noel Christmas Lights Professional, Inc. d/b/a Noelle Lights | Prime Time Group Corp |
| NoSo Holdings LLC | Professional Supplements LLC d/b/a Wisconsin Professional Supplements LLC and A/K/A Official Professional Supplements |
| Reign Beverage Company LLC | Records Label, LLC |
| Scarlett Bridget Hernandez-Zavala | Tadasha Lenorah Hodges |
| Scarlett Hernandez | Terra Weston Residential, LLC |
| Smart Technologies Solutions, LLC | Trench Shore Rentals |
| Summer Shores | Tunes LLC |
| Victor Lanza | Wallice Plumbing, Inc. |

## 12. Insurance and Insurance Providers

| | |
|---|---|
| Federal Insurance Company | AXIS Surplus Insurance Company |
| Great Northern Insurance Company | Arch Specialty Insurance Company |
| Navigators Specialty Insurance Company | StarStone National Insurance Company |
| American International Group, Inc. | Aspen Specialty Insurance Company |
| Colony Insurance Company | Landmark American Insurance Company |
| Travelers Property Casualty Company of America | Lexington Insurance Company |
| Lloyd's of London | Hallmark Insurance Company |

4

13. **Potential Major Unsecured Creditors (Including Counterparties to Major Contracts)**

| | |
|---|---|
| Varni Brothers Corporation | Ardagh Metal Beverage USA, Inc. |
| Total Quality Logistics, LLC TQL | Ball Metal Beverage Container Corp |
| XPO Global Forwarding, Inc. | Graphic Packaging International |
| Shanghai Freeman Americas, LLC | Priority-1, Inc. |
| American Express | QuikTrip Corporation |
| Gordon & Rees | England Logistics, Inc |
| CW Carriers Dedicated Inc. | Glen Raven Logistics Inc. |
| Inovar Packaging Florida, LLC | Doehler USA, Inc. |
| Fona International Inc. | MHW, Ltd/ Doehler NA |
| FedEx | Wild Flavors, Inc. |

14. **Vendors[2]**

| | |
|---|---|
| Refresco Canada Inc. | MetLife Insurance |
| Prinova Solutions Europe Limited | Mutual of Omaha |
| Prinova US LLC | ADP, Inc. (Automatic Data Processing, Inc.) |
| CKS Packaging, Inc. | Transamerica Employee Benefits |
| Konings Drinks BV | Principal Life Insurance 401K |
| Trinity Logistics Inc. | Brown & Brown of Florida Inc., |
| United Health Care | WageWorks |
| Concentra - Occupational Health Centers of the Southwest, P. | Nationwide DVM Insurance Agency |
| CHUBB & SON | First Insurance Funding |
| Optum Financial, Inc. | The Mercova Group LLC |
| STB Agency Services Operating | Trans-Market, LLC |
| Krones, Inc. | Berner Food & Beverage, LLC |
| Chicago Title Company, LLC | Milk Specialties Global |
| Refresco Beverage US Inc. COTT | CHEP USA |
| Team Eagle Logistics | KRYNICA VITAMIN SPÓŁKA AKCYJNA |
| J.B. Hunt Transport, Inc. | Updike Distribution |
| The Haskell Company | Imbera S.A. de C.V. |
| Sidel Blowing & Services | Network LeasePlan U.S.A., Inc. |
| Arizona Production & Packaging LLC | Portland Bottling Company |
| United States Treasury | American International Foods |
| BagPak Poland LLC | Presence From Innovation |
| Glen Raven Logistics Inc. | CI421 474 W Buckeye LLC CAM INVESTMENTS 421 LLC |

---

[2] The vendors included herein includes vendors representing the top 80% of the Debtors' spend over the past 24 months.

| | |
|---|---|
| Expolanka USA LLC | CSPC Innovations USA Inc. |
| Alto Freight | Costco Wholesale Corp |
| R&K Logistics, Inc. | Takasago International Corporation |
| Kalis Kleiman & Wolfe | Wuzhi County Zhihui Sci & Tech Co, LTD |
| Solar Green Biotechnologies, Inc. Wuxi Cima Science Co. | Cabot Industrial Value Fund VI Operating CIVF VI-TX1M01-M04, |
| ACE Tools CO LIMITED | Khalsa Transportation Inc. |
| Genesis Global Workforce Solutions | ABF Freight |

## 15. Lien Search Parties

| | |
|---|---|
| Ignite International, Ltd. | Great America Financial Services Corp. |
| Ignite Beverages, Inc. | Hitachi Capital America Corp. |
| James Gracely | Cheryl Ohel |
| DeLage Landen Financial Services, Inc. | Donna Williams |
| TFG Leasing Fund III, LLC | Briggs Equipment, Inc. |
| Canon Financial Services, Inc. | City Beverage-Illinois, LLC d/b/a Lake Shore Beverage, LLC |
| PNC Bank, National Association | Spirit & Sanzone Distributors Co., Inc. |
| PNC Equipment Finance, LLC | UMC Recordings, Inc. |
| Webbank | Capitol Records, LLC |
| CT Corporation System | Universal Music Corp. |
| Toyota Industries Commercial Finance, Inc. | Universal Music Z Tunes LLC |
| Americredit Financial Services, Inc. d/b/a GM Financial | Universal Musica, Inc. |
| U.S. Bank Equipment Finance | Polygram Publishing, Inc. |
| BFG Corporation | Songs of Universal, Inc. |
| Centurylink Communications, LLC | Universal Music-MGB NA, LLC |
| Sony Music Entertainment US Latin LLC | Dang Foods Company |
| Zomba Recording LLC | Arista Records LLC |
| Arista Music | LaFace Records LLC |
| Record Label, LLC | Cryo-Lease, LLC |
| Volcano Entertainment III LLC | |

## 16. Other Unsecured Creditors

| | |
|---|---|
| 7-Eleven, Inc. | SEKO WORLDWIDE LLC |
| Circle K Stores, Inc. | Dieck & Co. Erfrischungsgetranke OHG |
| Independent Buyers Co-op | C.H. Robinson International |
| QuikTrip Corporation | Gehlen Schols Transport & Logistics B.V |
| Speedway LLC | ADM Wild Europe GmbH & Co. KG |
| Target Corporation | DIS BV |
| Affordable Buying Group | Refresco Iberia |
| Family Dollar, Inc. | Prinova Solutions Europe Limited |

| NY Barbell | Ewals Cargo Care B.V. |
| Kroger | Oettinger Brauerei GmbH |
| CHEVRON EXTRA MILE | Kerry Ingredients & Flavours Italia Spa |
| Stellar Group, Inc. | WERK Plaats Sittard b.v. |
| Doehler Dry Ingredients Solutions | EFL GLOBAL LOGISTICS CANADA LTD |
| Crown Cork & Seal USA, Inc. | POP Display Product (HK) Limited Dongguan Pop Display & Pack |
| Direct Connect Logistix, Inc. | Refresco Canada Inc. |
| Green Wave Ingredients (GWI) | Simon Pure Marketing Inc. |
| Total Quality Logistics, LLC TQL | Alliance IntraPak Inc. |
| Nelson Mullins Riley & Scarborough LLP | CHEP Canada Inc. |
| QuikTrip Corporation | Expert Aviation Inc. |
| Inventus, LLC Legility | Alto Systems (Stoked) |
| States Logistics Services, Inc. | C.H. Robinson International |
| Parallel Products | All Brands Distribution, LLC |
| KJM Aluminum Can SDN BHD | Timothy Brown |
| Recycle America LLC | Peter Fischer |
| Total Quality Logistics, LLC TQL | Brendan Abbot |
| Keller Warehousing & Co-Packing LLC | Jacob Scheibe |
| Navajo Express, Inc. | Southeast Cold Fill, LLC |
| Fusion Logistics Services, LLC | Daisy Duke Promotions, LLC |
| England Logistics, Inc. | Carolina Canners |
| Krier Foods, Inc. | Modern Jet Solution |

**17. Taxing and Other Significant Governmental Authorities**

| IRS Department of Treasury | State of Florida |
| Alabama Department of Revenue | Georgia Dept of Revenue Processing Center |
| Arizona Department of Economic Security | Illinois Department of Revenue |
| Arizona Department of Revenue | Kentucky Department of Revenue |
| Colorado Department of Revenue | Massachusetts Department of Revenue |
| Commonwealth of Massachusetts William Francis Galvin | Minnesota Revenue |
| Comptroller of Maryland Revenue Administration Division | Nevada Dept. of Taxation |
| Franchise Tax Board California | New Hampshire Employment Security ATTN: Cashier |
| Georgia Department Of Revenue | New Jersey Division of Taxation Revenue Processing Center |
| New Jersey DOR | State of Connecticut Dept of Revenue Svc |
| North Carolina Dept of Revenue NCDOR | State of Delaware |
| Ohio Treasurer of State | State of Massachusetts |

| Oregon Department of Revenue | State of New Hampshire |
|---|---|
| Oregon Dept of Revenue POBox14780 | State of New Jersey |
| South Carolina Department of Revenue | State of NJ Division of Taxation Corporation Business Tax |
| State of Connecticut | Tennessee Department of Revenue |
| Texas Comptroller of Public Accounts | Virginia Department of Taxation |
| Utah State Tax Commission | Wisconsin Department of Revenue |

## 18. **Utility Providers**

| | |
|---|---|
| All Pro Pest | Garratt - Callahan |
| Amerigas | Green Mountain Energy |
| AT&T | Greystone Power-GA location |
| Athens Services | GTT |
| Atmos Energy | JEA |
| Austell Natural Gas-GA location | Kone Elevator |
| Balgas | LADWP-ELCTRICITY |
| Blue Stream | Landcare |
| City of Fort Myers | Lee County Electric Company |
| City of Pembroke Pines | NV Energy |
| City of Phoenix | Ontario Municipal |
| City of Sunrise | Ontario-Water |
| Clark County Water | Orange County |
| Comcast | Orlando Utilities Commission |
| ConnectWise | Prime Power |
| Cox | ReadyRefresh |
| Critical System | Reliant |
| Daiken | Republic Services |
| De Lage Landen Financial Services | Rocky Mountain |
| Dominion Energy | San Diego Gas & Electric |
| Douglas County Water& Sewer-GA Location | SecurAmerica |
| Duke Energy | Southern California Edison |
| Fire Alarm | Southwest Gas Corporation |
| Frontier | TECO |
| Sparklets | Town of Medley |
| Spectrum | TXU |
| Spectrum Business | Verizon |
| SRP | Viasat |
| Suburban Propane | Weston |
| Waste Management | Xcel Energy |
| Waste Pro | Waste Recycle |

19. **United States Bankruptcy Judges in the Southern District of Florida**

| | |
|---|---|
| The Honorable A. Jay Cristol | The Honorable Peter D. Russin |
| The Honorable Robert A. Mark | The Honorable Erik P. Kimball |
| The Honorable Scott M. Grossman | The Honorable Laurel M. Isicoff, Chief Judge |
| The Honorable Mindy A. Mora | |

20. **Staff for Southern District of Florida Bankruptcy Judges**

| | |
|---|---|
| Emily Maza | Marcy Gatell |
| Kayla Heckman | Corinne Aftimos |
| Noemi Sanabria | Jackie Antillon |
| Jennifer Rolph | Tara Trevorrow |
| Cheryl Kaplan | Meera Khan |
| Susan Gutierrez | Maria Romaguera-Serfaty |
| Dawn Leonard | Edy Gomez |
| Grace V. Figueroa | Casey Wiener |
| Melva Weldon | |

21. **United States Trustee for the Southern District of Florida (and Key Staff Members)**

| | |
|---|---|
| Guy A. Van Baalen | Sofia Kesep |
| Heather Barfus | Keith H. Kronin |
| Adisley M. Cortez-Rodriguez | Lupe M. Martinez |
| Diane M. DeZinno | Diana M. Nuñez |
| Heidi A. Feinman | Hugo L. Paiz |
| Lynn M. Fernandez | Ariel Rodriguez |
| Myriam A. Fernandez | Steven D. Schneiderman |
| Charles A. Fordham | Katherine E. Simons |
| Dan Lee Gold | Yevgeny Sulsky |
| Benedicto J. Gonzalez-Leon | |

**<u>Appendix 2</u>**

**Client Match List**

**Client Match List**

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| Huron Consulting Group | Debtors' Restructuring Professionals | Current Client, Prior Client |
| Rothschild & Co US Inc. | Debtors' Restructuring Professionals | Current Client, Former Client, Prior Client |
| Wilson Elser Moskowitz Edelman | Ordinary Professionals | Prior Client |
| General Motors Financial Company, Inc. | Lease Counterparties | Current Client, Prior Client |
| Crown Lift Trucks | Lease Counterparties | Prior Client |
| Ryder System, Inc. | Lease Counterparties | Prior Client |
| Ally Financial | Lease Counterparties | Former Client, Prior Client |
| Crown Equipment Corporation | Lease Counterparties | Prior Client |
| Penske Truck Leasing Co., L.P. | Lease Counterparties | Current Client, Prior Client |
| Chrysler Capital | Lease Counterparties | Current Client, Prior Client |
| Ally Financial | Lease Counterparties | Former Client, Prior Client |
| Penske Truck Leasing Co., L.P. | Lease Counterparties | Current Client, Prior Client |
| FTI Consulting | Counsel/Professionals to Material Counterparties | Current Client, Prior Client |
| Truist Bank | Secured Lenders | Current Client, Prior Client |
| CoBank, ACB | Secured Lenders | Current Client, Prior Client |
| Citizens Bank, N.A. | Secured Lenders | Current Client, Prior Client |
| United Community Bank d/b/a Seaside Bank and Trust | Secured Lenders | Current Client |
| Synovus Bank | Secured Lenders | Prior Client |
| Huntington National Bank | Secured Lenders | Current Client, Prior Client |
| HSBC Bank USA, N.A. | Secured Lenders | Current Client, Former Client, Prior Client |
| Ardagh | Parties to Pending Litigation | Prior Client |
| Branch Banking and Trust Company | Parties to Pending Litigation | Current Client, Prior Client |
| Berlin Packaging | Parties to Pending Litigation | Prior Client |

---

[1]  The term "Current Client" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years and L&W has at least one open matter.  The term "Former Client" refers to an entity listed as a client in L&W's Client Database for whom time has been recorded in the past three years but all matters for such client have since been closed.  The term "Prior Client" refers to an entity listed as a client of an L&W attorney while such attorney was at a prior firm.  L&W does not disclose connections if time was recorded more than three years before the Petition Date.

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| City Beverage-Illinois, LLC | Parties to Pending Litigation | Former Client |
| Csc Corporate Domains, Inc. | Parties to Pending Litigation | Former Client, Prior Client |
| Dairy Farmers of America Inc. | Parties to Pending Litigation | Current Client, Prior Client |
| GNC Holdings, Inc. | Parties to Pending Litigation | Former Client |
| Gulfstream & Expert Aviation | Parties to Pending Litigation | Prior Client |
| Keurig Dr Pepper Inc. | Parties to Pending Litigation | Prior Client |
| Lloyds London | Parties to Pending Litigation | Prior Client |
| Monster Beverage Corporation | Parties to Pending Litigation | Prior Client |
| Monster Energy Company | Parties to Pending Litigation | Prior Client |
| PepsiCo, Inc. | Parties to Pending Litigation | Prior Client |
| Premier Nutrition Products, LLC | Parties to Pending Litigation | Prior Client |
| Sony Music Entertainment | Parties to Pending Litigation | Current Client, Former Client, Prior Client |
| Spirit & Sanzone | Parties to Pending Litigation | Past Other Party |
| TikTok | Parties to Pending Litigation | Current Client, Former Client, Prior Client |
| Triller | Parties to Pending Litigation | Current Client |
| Warner Music Group | Parties to Pending Litigation | Current Client, Former Client, Prior Client |
| XPO Global Forwarding, Inc. | Potential Major Unsecured Creditors (Including all Counterparties to Major Contracts) | Current Client, Prior Client |
| American Express | Potential Major Unsecured Creditors (Including all Counterparties to Major Contracts) | Former Client, Prior Client |
| FedEx | Potential Major Unsecured Creditors (Including all Counterparties to Major Contracts) | Prior Client |
| Ardagh Metal Beverage USA, Inc. | Potential Major Unsecured Creditors (Including all Counterparties to Major Contracts) | Prior Client |
| Graphic Packaging International | Potential Major Unsecured Creditors (Including all Counterparties to Major Contracts) | Current Client, Prior Client |
| Crown Cork & Seal USA, Inc. | Potential Major Unsecured Creditors (Including all | Prior Client |

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| | Counterparties to Major Contracts) | |
| Ardagh Metal Packaging USA Corp. | Lien Search Parties | Prior Client |
| City Beverage-Illinois, LLC d/b/a Lake Shore Beverage, LLC | Lien Search Parties | Former Client |
| DeLage Landen Financial Services, Inc. | Lien Search Parties | Prior Client |
| PNC Bank, National Association | Lien Search Parties | Current Client, Former Client, Prior Client |
| PNC Equipment Finance, LLC | Lien Search Parties | Past Other Party, Adversary at Prior Firm |
| Webbank | Lien Search Parties | Current Client, Prior Client |
| CT Corporation System | Lien Search Parties | Prior Client |
| Toyota Industries Commercial Finance, Inc. | Lien Search Parties | Current Client, Former Client, Prior Client |
| Americredit Financial Services, Inc. d/b/a GM Financial | Lien Search Parties | Current Client, Prior Client |
| U.S. Bank Equipment Finance | Lien Search Parties | Current Client, Former Client, Prior Client |
| Centurylink Communications, LLC | Lien Search Parties | Current Client, Prior Client |
| Universal Music Z Tunes LLC | Lien Search Parties | Current Client, Prior Client |
| Universal Music-MGB NA, LLC | Lien Search Parties | Prior Client |
| Universal Musica, Inc. | Lien Search Parties | Current Client, Prior Client |
| Dang Foods Company | Lien Search Parties | Prior Client |
| IRS Department of Treasury | Taxing and Other Significant Governmental Authorities | Prior Client |
| State of Florida | Taxing and Other Significant Governmental Authorities | Former Client |
| Commonwealth of Massachusetts William Francis Galvin | Taxing and Other Significant Governmental Authorities | Current Client |
| State of Connecticut | Taxing and Other Significant Governmental Authorities | Prior Client |
| Amerigas | Utility Providers | Current Client, Former Client |
| AT&T | Utility Providers | Prior Client |
| Comcast | Utility Providers | Current Client, Former Client, Prior Client |

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| Cox | Utility Providers | Current Client, Former Client, Prior Client |
| Daiken | Utility Providers | Prior Client |
| Dominion Energy | Utility Providers | Current Client, Former Client, Prior Client |
| Duke Energy | Utility Providers | Current Client, Former Client, Prior Client |
| Frontier | Utility Providers | Current Client, Former Client, Prior Client |
| Spectrum | Utility Providers | Former Client, Prior Client |
| Suburban Propane | Utility Providers | Current Client |
| Waste Management | Utility Providers | Prior Client |
| Green Mountain Energy | Utility Providers | Former Client |
| GTT | Utility Providers | Prior Client |
| Kone Elevator | Utility Providers | Prior Client |
| LADWP-ELCTRICITY | Utility Providers | Current Client |
| NV Energy | Utility Providers | Current Client |
| Orange County | Utility Providers | Former Client, Prior Client |
| Reliant | Utility Providers | Current Client, Former Client, Prior Client |
| Republic Services | Utility Providers | Prior Client |
| San Diego Gas & Electric | Utility Providers | Current Client, Former Client |
| SecurAmerica | Utility Providers | Prior Client |
| Southern California Edison | Utility Providers | Current Client, Former Client, Prior Client |
| Southwest Gas | Utility Providers | Prior Client |
| Southwest Gas Corporation | Utility Providers | Prior Client |
| TXU | Utility Providers | Current Client |
| Verizon | Utility Providers | Current Client, Former Client, Prior Client |
| Viasat | Utility Providers | Current Client, Prior Client |
| Weston | Utility Providers | Current Client |
| Xcel Energy | Utility Providers | Former Client, Prior Client |
| C1 DAL III-V, LLC - Colony Capital | Landlords/Lessors | Current Client, Former Client, Prior Client |
| Centerpoint (Dogwood) | Landlords/Lessors | Current Client |
| Kearny Mesa West, LLC | Landlords/Lessors | Current Client, Prior Client |
| Prologis Targeted US | Landlords/Lessors | Prior Client |
| Rexford Industrial Realty, LP | Landlords/Lessors | Current Client |

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| TGA Cactus DC II LLC Teachers Ins & Annuity Assoc. of America | Landlords/Lessors | Current Client, Former Client, Prior Client |
| Federal Insurance Company | Insurance and Insurance Providers | Prior Client |
| Navigators Specialty Insurance Company | Insurance and Insurance Providers | Prior Client |
| American International Group, Inc. | Insurance and Insurance Providers | Current Client, Former Client, Prior Client |
| Travelers Property Casualty Company of America | Insurance and Insurance Providers | Prior Client |
| AXIS Surplus Insurance Company | Insurance and Insurance Providers | Prior Client |
| Arch Specialty Insurance Company | Insurance and Insurance Providers | Former Client, Prior Client |
| Aspen Specialty Insurance Company | Insurance and Insurance Providers | Current Client, Prior Client |
| Landmark American Insurance Company | Insurance and Insurance Providers | Current Client, Prior Client |
| Lexington Insurance Company | Insurance and Insurance Providers | Current Client, Prior Client |
| ADP, Inc. (Automatic Data Processing, Inc.) | Vendors | Prior Client |
| Cabot Industrial Value Fund VI Operating CIVF VI-TX1M01-M04 | Vendors | Prior Client |
| CHEP USA | Vendors | Prior Client |
| Chicago Title Company, LLC | Vendors | Former Client |
| CHUBB & SON | Vendors | Prior Client |
| Costco Wholesale Corp | Cendors | Current Client, Prior Client |
| CSPC Innovations USA Inc. | Vendors | Prior Client |
| J.B. Hunt Transport, Inc. | Vendors | Current Client, Prior Client |
| MetLife Insurance | Vendors | Current Client, Former Client, Prior Client |
| Nationwide DVM Insurance Agency | Vendors | Current Client, Former Client, Prior Client |
| Network LeasePlan U.S.A., Inc. | Vendors | Prior Client |
| Optum Financial, Inc. | Vendors | Current Client, Former Client, Prior Client |
| Principal Life Insurance 401K | Vendors | Current Client, Former Client, Prior Client |

| Matched Entity | Relationship to Debtors | Relationship to L&W[1] |
|---|---|---|
| Refresco Canada Inc. | Vendors | Current Client |
| Transamerica Employee Benefits | Vendors | Current Client, Prior Client |
| United States Treasury | Vendors | Prior Client |
| United Health Care | Vendors | Current Client, Prior Client |
| 7-Eleven, Inc. | Other Unsecured Creditors | Former Client |
| Circle K Stores, Inc. | Other Unsecured Creditors | Prior Client |
| Family Dollar, Inc. | Other Unsecured Creditors | Prior Client |
| Kroger | Other Unsecured Creditors | Prior Client |
| CHEVRON EXTRA MILE | Other Unsecured Creditors | Current Client, Former Client, Prior Client |
| XPO Global Forwarding, Inc. | Other Unsecured Creditors | Current Client, Prior Client |
| ADM Wild Europe GmbH & Co. KG | Other Unsecured Creditors | Prior Client |
| CHEP Canada Inc. | Other Unsecured Creditors | Prior Client |
| Gulfstream Aerospace Corporation | Other Unsecured Creditors | Prior Client |
| Timothy Brown | Other Unsecured Creditors | Prior Client |
| The House of LaRose, Inc. | Other Unsecured Creditors | Past Other Party |
| Bank of America | Banking Relationships | Current Client, Former Client, Prior Client |
| PayPal | Banking Relationships | Current Client, Former Client, Prior Client |

**EXHIBIT B**

**(Engagement Letter)**

**Abid R. Qureshi**
Direct Dial: +1.202.637.2240
abid.qureshi@lw.com

555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Tel: +1.202.637.2200 Fax: +1.202.637.2201
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Austin | Moscow |
| Beijing | Munich |
| Boston | New York |
| Brussels | Orange County |
| Century City | Paris |
| Chicago | Riyadh |
| Dubai | San Diego |
| Düsseldorf | San Francisco |
| Frankfurt | Seoul |
| Hamburg | Shanghai |
| Hong Kong | Silicon Valley |
| Houston | Singapore |
| London | Tel Aviv |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

August 8, 2022

Jack Owoc
CEO
VITAL PHARMACEUTICALS, INC.
1600 N. Park Drive
Weston, FL 33326

Re:    Engagement Letter

Dear Mr. Owoc:

Reference is made to that certain Engagement Letter, dated as of June 8, 2022, by and between VPX Pharmaceuticals, Inc. and Latham & Watkins LLP (the Original Engagement Letter). This letter amends and restates the Original Engagement Letter and, as of the date hereof, supersedes the Original Engagement Letter in its entirety for all purposes.

We are pleased to welcome Vital Pharmaceuticals, Inc. (VPX) as a client of Latham & Watkins LLP. This letter will confirm our discussions regarding your engagement of our firm.

1.    **LEGAL SERVICES.**

You have asked us to represent you in connection with (i) a potential transaction to raise funds for VPX in the coming months and to coordinate such transaction with VPX's existing lender group and outside investment advisor(s) and (ii) evaluation and pursuit of potential strategic alternatives, including general transactional, finance, and restructuring matters.

If additional services are requested by you and agreed to by us, this letter will apply to such services, unless superseded by another written agreement. In each case, before we can agree to provide additional services, we will need to perform a conflicts check and otherwise confirm our ability to provide these services. Our representation is limited to the specific services that you request and that we have agreed to undertake.

2.    **IDENTITY OF THE CLIENT.**

Our client in this matter will be solely VPX and any of its direct or indirect subsidiary or affiliate entities identified to us in conjunction with these matters that we are requested to represent and agree to represent (collectively, the Client). We do not represent and will not be deemed to have an attorney-client relationship with any of Client's current or future parents, subsidiaries, shareholders, members, partners, employees, directors, venturers or other affiliates or constituents solely on account of our representation of Client in this matter or in any matters we agree in the future to accept. We are distinguishing between the entities and persons who are and are not our clients so that it is clearly understood to whom our various duties as attorneys are owed. We shall have those duties to Client as defined herein, but not to other entities or persons even if they are affiliated entities or constituents of Client. If we subsequently agree to represent

VPX Pharmaceuticals, Inc.
August 8, 2022
Page 2

## LATHAM&WATKINS LLP

any affiliated entities or constituents of Client, we will need to perform a conflicts check and either execute separate engagement letters with them or confirm the details of the representation in writing. If, however, we take on work for such affiliated entities or constituents without such a separate engagement letter or confirmation, the terms in this engagement letter (including, but not limited to terms governing conflicts of interest and arbitration of disputes) will apply to that representation.

Because of the extraterritorial reach of Anti-Money Laundering laws in certain jurisdictions where Latham practices, it may become necessary for us to collect documentation verifying the identity of Client if any timekeepers outside of the U.S. work on this matter or any additional matter we agree to undertake. We will seek to collect any required documentation from publicly-available sources; however, we may need to request documentation directly from you if the documentation is not publicly available.

We provide information to clients and others about our experience in particular areas. In this context it is helpful to be able to identify particular clients and matters. Of course, we would not publicize your matters in a manner that could harm your interests. Moreover, even where a matter is publicly known, we would not publicize it if you would prefer that we not do so. If we think that you might prefer that we not use any particular matter of yours in this way, we will discuss it with you before proceeding. Absent such circumstances, however, you consent now to our using in our marketing materials your name and logo in describing publicly known and non-sensitive matters we have handled for you upon your express written preapproval of such materials.

### 3.    ROLES OF ATTORNEY AND CLIENT.

Our responsibilities under this agreement are to provide legal counsel and assistance to you in accordance with this letter, and to provide statements to you that clearly state the basis for our fees and charges. We will not disclose any confidential information of yours to any other client, even where that information might have some bearing on their interests. Likewise, we will not disclose the confidences of any other client to you, even where that information might have some bearing on your interests, and you agree that we are under no obligation to do so. You also agree to keep us informed of developments related to this representation and to pay our statements in a timely manner. To allow us to conduct a conflicts check, you represent that you have identified to us all persons and entities reasonably known to you that are or may become involved in this matter, including all such persons or entities that are affiliated with you. You also agree to notify us if you become aware of any other such persons or entities that are or may become involved in this matter.

During the course of this engagement, we may express opinions or beliefs to you about the effectiveness of various courses of action or about the results that might be anticipated. Such statements are expressions of opinion only, and should not be construed as promises or guarantees.

Please also be aware that Latham & Watkins LLP has internal ethics and professional responsibility counsel, who advise Latham attorneys regarding their ethical, professional and legal duties. From time to time, the attorneys working on your matter may consult these lawyers. You acknowledge that any such consultation is protected by Latham's own attorney-client privilege, and not subject to discovery. You also agree that such communications are property of the firm and are not part of the Client File as defined in Section 4 of this letter.

### 4.    CLIENT FILES AND RETENTION.

In the course of your representation, we shall maintain a file in which we may place correspondence, agreements, governmental filings, prospectuses, disclosures, pleadings, deposition

**LATHAM&WATKINS**LLP

transcripts, exhibits, physical evidence, expert reports, and other items reasonably necessary to your representation (Client File). The Client File shall be and remain your property. Upon completion of a specific project, your original Client File for that project shall be available to be taken by you. We will be entitled to make copies if we choose. You also agree at the conclusion of the project (whether or not you take possession of the Client File) to take possession of any and all original contracts, wills, stock certificates, and other such important documents that may be in the Client File and we shall have no further responsibility with regard to such documents. If you do not take possession of the Client File at the conclusion of the project, we will store such file for you for a period of seven years. If you do not take possession of the Client File during such seven-year storage period, you agree that we may dispose of it. In addition, in the event we are holding files of yours for a matter other than one in which we have represented or are representing you, you agree that we may dispose of such files seven years after we receive them, if you have not claimed them from us prior to that. You agree that our internal communications, preliminary drafts, notes, and mental impressions shall be and remain our property and shall not be considered part of your Client File. You agree that we may enact and implement reasonable retention policies for such materials and that we also have discretion to delete such materials.

5.    **CONFLICTS OF INTEREST**.

While we are representing you in this matter, we will have no other role in this matter for another party without your express written consent. As with any other client and any other matter, you will have our complete loyalty with respect to this matter.

We note that Latham & Watkins LLP is an international law firm with numerous attorneys and offices in many countries and that we practice in many diverse areas of law. It is possible that during the time we are representing you, some of our current or future clients may ask us to represent them in matters in which you are involved as another party. Furthermore, some of our clients may now or in the future operate in the same lines of business as you do. Both our own prudent business conduct, and the interests of our other clients, call for us to seek to retain the ability to accept matters for all of our clients. We thus ask you in connection with this engagement to consent in advance to our acceptance of matters (including litigation matters) adverse to Client (whether such matters are currently pending or arise in the future), provided the matters are not substantially related to any matters we are handling or have handled for you and provided that we agree to comply with all applicable rules of professional conduct and other law governing conflicts of interest. By entering into this agreement, you consent in advance to such adverse representations. Thus, for example, you agree that we would be able to take on a new lawsuit or a transactional matter adverse to Client for a current or future client at the same time that we are representing Client as set forth in the preceding sentence. This consent also includes being adverse to you in any bankruptcy, regulatory, administrative, legislative or rulemaking proceeding, subject, again, to the provisos above.

In addition, by entering into this agreement you agree that if we represent you in a matter adverse to another person or entity, including but not limited to adversaries in the matter that is the subject of this engagement letter, we may in the future represent such other person or entity on matters not substantially related to our work for you, and we may continue any such representations in which we are currently engaged subject to the provisos in the paragraph above.

You should feel completely free to consult other counsel concerning these matters and we encourage you to do so. By signing this letter, you acknowledge that you have had an opportunity to consult with other counsel.

VPX Pharmaceuticals, Inc.
August 8, 2022
Page 4

LATHAM&WATKINS LLP

6.    <u>**RATES, FEES AND CHARGES.**</u>

Client shall deliver or wire to Latham an evergreen advance payment retainer in the amount of $400,000, on or before August 9, 2022.  This evergreen advance payment retainer, and all replenishments thereof, will be held by Latham as an advance toward our fees and charges in connection with this letter, but will not be put into a trust, escrow or segregated account.  Latham intends to invoice Client on a weekly basis in the near term, but reserves the right to invoice Client more or less frequently over the course of this engagement.  To the extent that the amount of any of Latham's invoice statements is less than the agreed upon evergreen advance payment retainer, Client will pay Latham, promptly upon receipt of Latham's invoice statement, a further payment to bring the evergreen advance payment retainer to the agreed upon amount (i.e., $400,000).  To the extent that the amount of Latham's invoice statement is more than the agreed upon evergreen advance payment retainer, Client will pay to Latham, promptly upon its receipt of Latham's invoice statement, the excess amount plus an evergreen advance payment retainer of $400,000.  Any funds that you may deposit with us an advance toward our fees and charges will be treated as property of the firm.  Any unused portion of such advance after our services are concluded will be returned to you.

Our fees are based primarily on the amount of time spent by our lawyers, paralegals and other professionals on your behalf.  Each lawyer, paralegal and other professional assigned to this matter will have individual hourly billing rates, and the applicable rate multiplied by the number of hours spent, measured in tenths of an hour, will be the initial basis for determining our fee.

In general, our attorneys' billing rates applicable to this engagement will range from $655 per hour to $1,895 per hour, depending upon the seniority and expertise of the attorney involved.  For paralegal and other professional time, our rates will range from $140 to $1,340 per hour.

In addition to fees, you agree to pay for disbursements and other charges.  For disbursements and other charges that exceed $1000/month, we will seek your express written preapproval.  For disbursements and other charges below $1000/month, no express written preapproval of Client is required.

In the event we are compelled to testify or respond to a subpoena or other legal process in relation to a matter we have handled for you, you agree that we are entitled to be reimbursed for our time in doing so at our then-current rate, and for our expenses reasonably incurred, even if our attorney-client relationship with you is terminated at that time.

Our billing rates and charges are usually revised annually, but we reserve the right to revise them at other times.  Following any such revision, our new rates and charges will be applied to your account upon your express written preapproval of such revisions.

From time to time, you may request estimates of the fees and charges that we anticipate incurring on your behalf.  These estimates are subject to unforeseen circumstances and are by their nature inexact.  While we may provide estimates for your general planning purposes, such estimates are subordinate to our regular billing procedures, absent an express written agreement to the contrary.

7.    <u>**DATA PROTECTION & COMMERCIAL COMMUNICATIONS BY EMAIL.**</u>

In order to provide legal services and maintain our business relationship, the firm may use personal information about you and other individuals at your organization. Details of how we use this information are set out in our Client and Third Party Privacy Notice which can be found on our website at www.lw.com/privacy.

VPX Pharmaceuticals, Inc.
August 8, 2022
Page 5

LATHAM&WATKINS LLP

To the extent that you share with us information about California residents that comprises "personal information" for purposes of the California Consumer Privacy Act and implementing regulations (CCPA) in connection with our provision of services covered by this letter, and neither §§ 1798.140(t)(2)(A), (B), (D) nor §§ 1798.145(c)-(e) of the CCPA apply, we shall be a service provider and only collect, retain, use and disclose such information for the purpose of providing the services covered by this letter, or as otherwise permitted by the CCPA. To the extent this paragraph applies, you will provide notice to such California individuals that you may disclose such information to service providers such as Latham & Watkins LLP.

We have made a commitment through our Binding Corporate Rules to apply a consistent standard across the firm when collecting, using and managing personal information. If you have any questions about how we use your personal information or wish to exercise your rights, please contact the Global Data Protection Officer at DataPrivacy@lw.com.

We constantly attempt to improve our service, and monitor developments in the law and practice. Periodically we may send information about this, including brochures and press releases and invitations to seminars or talks, if we believe that they may be of interest to you. You agree that we may send information of this kind by email to you and others at your organization with whom we have contact. You can opt out at any time.

8.    **ARBITRATION OF DISPUTES.**

Any controversy or claim, whether in tort, contract or otherwise, arising out of or relating to the relationship between Client, its affiliates or successors (the Client Arbitration Parties) and Latham & Watkins LLP, its affiliated partnerships, attorneys or staff or any of their successors (the Latham Arbitration Parties) or the services provided or the fees charged by the Latham Arbitration Parties pursuant to this engagement letter or otherwise to the Client Arbitration Parties shall be finally resolved by arbitration in accordance with the International Institute for Conflict Prevention and Resolution Rules for Non-Administered Arbitration (CPR Rules). By agreeing to arbitrate, the parties are agreeing to waive their right to a jury trial. This arbitration clause and any arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. The seat of the arbitration shall be mutually agreed upon by the parties or, absent such agreement, in Broward County, Florida, where Client is headquartered, applying the laws of the State of New York, including New York's Rules on Professional Conduct. Any issue concerning the location of the arbitration, the extent to which any dispute is subject to arbitration, or the applicability, interpretation, or enforceability of this agreement shall be resolved by all of the arbitrators. All aspects of the arbitration shall be treated as confidential, and neither the parties nor the arbitrators may disclose the existence, content or results of the arbitration, except as necessary to comply with insurance, legal or regulatory requirements. Any party that discloses any information about the arbitration under the preceding sentence, or makes any filing in any court related to a dispute covered by this clause, shall take all lawful steps to ensure confidential treatment, including without limitation filing under seal.

Prior to signing this agreement, you may choose to contact the Attorney-Client Arbitration Board (ACAB), 1250 H Street, N.W., Sixth Floor, Washington, D.C. 20005. The ACAB staff can provide counseling with regard to this agreement, provide you with a copy of its rules, and address any questions you may have.

VPX Pharmaceuticals, Inc.
August 8, 2022
Page 6

**LATHAM&WATKINS**LLP

### 9.    LIMITED LIABILITY PARTNERSHIP.

Latham & Watkins LLP is a limited liability partnership (LLP).  Similar to the corporate form of business organization, the LLP form generally limits the liability of the individual partners of the firm to the capital they have invested in the firm for claims arising from services performed by the firm.  Our form of organization as an LLP will not diminish the ability to recover damages from the firm or from any individuals who directly caused the loss.

Because of legal requirements in those countries, work done out of our firm's offices in England, France, Hong Kong, Japan, Singapore, and Italy will be carried out through affiliated partnerships registered locally, and work done in Saudi Arabia will be carried out through a cooperating law practice registered locally, but the distinction will be largely transparent to you as a client.

### 10.    ENTIRE AGREEMENT AND MISCELLANEOUS.

You and we understand that this letter constitutes the entire agreement pertaining to the engagement of Latham & Watkins LLP, and that it shall not be modified by any policies, procedures, guidelines or correspondence from you or your representative unless agreed to in writing by Latham & Watkins LLP; provided, however, the content of that certain cover email (bearing this agreement) from Latham & Watkins, LLP (Andrew Sorkin, Esq.) to Client (Gregg Metzger, Esq) received on August 7, 2022 at 11:03pm Eastern is incorporated herein by reference and made part of the terms of this agreement.

All parties signing this letter represent and warrant that they are fully authorized to enter into this agreement, and in the case of signatories agreeing on behalf of organizations, to bind the organization or organizations to the terms in this letter.

The words "execution," "execute", "signed," "signature," and words of like import in or related to this Engagement Letter and/or any document to be signed in connection with this Engagement Letter and the transactions contemplated hereby shall be deemed to include electronic signatures, the electronic matching of assignment terms and contract formations on electronic platforms approved by Latham & Watkins LLP, or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in any applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

Our relationship with you will be deemed concluded when we have completed our agreed-upon services, except that for the avoidance of doubt, your obligations for fees and charges shall survive.  In addition, and without limiting the preceding sentence, in the event we have performed no work on your behalf for six consecutive months, you agree that our attorney-client relationship with you will have been terminated.

VPX Pharmaceuticals, Inc.
August 8, 2022
Page 7

**LATHAM&WATKINS**LLP

### 11.    APPROVAL AND RETURN OF LETTER.

If this letter meets with your approval, please sign and return the enclosed copy.

We look forward to working with you.

Very truly yours,

*Abid R. Qureshi*

Abid R. Qureshi
of LATHAM & WATKINS LLP

VPX Pharmaceuticals, Inc.
August 8, 2022
Page 8

**LATHAM&WATKINS**LLP

## Approval of Engagement

Client agrees to the terms of the enclosed letter, effective as of the date on which Latham & Watkins LLP first provided services to Client.

By signing this letter, Client acknowledges that Client has been afforded the full opportunity to review it and to seek the advice of independent counsel, and either has in fact consulted with such independent counsel or has chosen not to do so.

BY SIGNING THIS LETTER, CLIENT AGREES TO HAVE ANY ISSUE ARISING OUT OF OR RELATING TO THE SERVICES OF THE LATHAM ARBITRATION PARTIES (INCLUDING ANY CLAIM FOR PROFESSIONAL LIABILITY) DECIDED IN ARBITRATION AND CLIENT GIVES UP ITS RIGHT TO A JURY OR COURT TRIAL AND ACKNOWLEDGES THE ARBITRATION PROVISION IN SECTION 8 ABOVE.

Date:  August 8, 2022

Vital Pharmaceuticals, Inc.,

a Florida corporation

By: _____

Jack Owoc

CEO

**<u>EXHIBIT C</u>**

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                              Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,              Case No. 22-17842 (PDR)
                                                    (Joint Administration Pending)

         Debtors.[1]

_____/

### INTERIM ORDER APPROVING THE EMPLOYMENT
### OF LATHAM & WATKINS LLP, AS CO-COUNSEL FOR
### <u>DEBTORS-IN-POSSESSION, EFFECTIVE AS OF THE PETITION DATE</u>

**THIS MATTER** having come before the Court for a hearing on October __, 2022 at ___

a.m./p.m. in Fort Lauderdale, Florida upon the *Debtors' Emergency Application for Approval, on*

*an Interim and Final Basis, of the Employment of Latham & Watkins LLP as Counsel for*

---

[1]  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are as: (i) Vital Pharmaceuticals, Inc. ("<u>Vital Pharmaceuticals</u>") (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC ("<u>Quash Seltzer</u>") (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

*Debtors-in-Possession, Effective as of the Petition Date* [ECF No. ___] (the "Application"),[2] the *Declaration of John C. DiDonato in Support of First Day Pleadings* [ECF No. ___] (the "First Day Declaration"), and the *Declaration of Andrew Sorkin, on Behalf of Latham & Watkins LLP, as Proposed Co-Counsel for Debtors-in-Possession, Effective as of the Petition Date* (the "Sorkin Declaration") attached to the Application as Exhibit A.  The Application requests entry of interim and final orders approving the Debtors' employment of Latham & Watkins LLP ("L&W") to represent them as bankruptcy co-counsel in these Chapter 11 Cases.  The Court has jurisdiction over the matters raised in the Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The relief requested in the Application is in the best interests of the Debtors, their estates, and creditors.  The Sorkin Declaration makes relevant disclosures as required by Bankruptcy Rules 2014 and 2016.  The Sorkin Declaration contains a verified statement as required by Bankruptcy Rule 2014 demonstrating that L&W is disinterested as required by section 327(a) of the Bankruptcy Code.  Pursuant to section 327(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1(A), the Court is authorized to grant the relief requested in the Application.  Upon the record herein, and after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.  Accordingly, it is hereby

**ORDERED** that:

1.     The Application is **GRANTED** on an interim basis.

2.     The employment by the Debtors, as debtors-in-possession, of L&W as co-counsel in these Chapter 11 Cases, effective as of the Petition Date, is **APPROVED** pursuant to section

---

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed in the Application.

327(a) of the Bankruptcy Code on an interim basis, pending a final hearing as set forth below.

3.      L&W shall apply for compensation and reimbursement of costs, pursuant to sections 330 and 331 of the Bankruptcy Code, at its ordinary rates, as they may be adjusted from time to time, for services rendered and costs incurred on behalf of the Debtors.  L&W will apply for compensation and reimbursement of costs.

4.      The Court shall conduct a final hearing on the Application on _____, 2022 at _____ a.m./p.m. (**Eastern Time**) (the "Final Hearing").

5.      Entry of this Order is without prejudice to the rights of any party-in-interest to interpose an objection to the Application, and any such objection will be considered on a *de novo* standard at the Final Hearing.

6.      In the event the Application is not granted on a final basis, L&W shall be authorized to submit a fee application with this Court for compensation for fees and expenses incurred in the period between the Petition Date and the Final Hearing.

7.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

# # #

Submitted by:
Jordi Guso, Esq.,
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*