

**ORDERED in the Southern District of Florida on October 14, 2022.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No. 22-17842-PDR |
| Debtors. | (Jointly Administered) |

_____/

**INTERIM ORDER (I) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

THIS MATTER came before the Court for a hearing on October 13, 2022 at 2:30 p.m. in Fort Lauderdale, Florida upon the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [ECF No. 24] (the "DIP Motion") filed by Vital Pharmaceuticals, Inc. (the "Borrower"), and each of the other above-captioned debtors and debtors in possession (collectively, the "Guarantors" and together with the Borrower, the "Debtors"), in the above-captioned chapter 11 cases (the "Cases"), seeking entry of an interim order (this "Interim Order") pursuant to sections 105, 361, 362, 363(c), 363(e), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506, 507, and 552 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-1, 4001-1, 4001-2, 4001-3, and 9013-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules"), *inter alia:*

> (i)  authorizing the Debtors to obtain senior secured postpetition financing on a super-priority basis pursuant to the terms and conditions of that certain Superpriority Secured Debtor-in-Possession Credit Agreement (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "DIP Credit Agreement" and the facility thereunder, the "DIP Facility"), by and among the Borrowers, the Guarantors, Truist Bank, as administrative agent (in such capacity, the "DIP Agent") for and on behalf of the lenders party thereto (collectively, the "DIP Lenders"), and the DIP Lenders substantially in the form of Exhibit B, attached to the DIP Motion;[2]

---

[2] Capitalized terms used herein but not otherwise defined shall have the respective meanings given to such terms in the DIP Credit Agreement or the DIP Motion, as applicable.

(ii)     authorizing the Debtors to obtain from the DIP Lenders, during the interim period pending the entry of the Final Order (as defined herein), up to $34,000,000 in accordance with the DIP Credit Agreement and this Interim Order;

(iii)    authorizing the Debtors to obtain from the DIP Lenders upon entry of the Final Order total advances in an amount not to exceed a maximum outstanding principal amount of $454,770,201.56 in accordance with the DIP Credit Agreement, the DIP Documents (as defined herein), and the Final Order;

(iv)    authorizing the Debtors, upon entry of the Final Order, to convert to DIP Obligations (as defined herein) under the DIP Credit Agreement a portion of the outstanding principal amount representing an increase in net borrowings under the Prepetition Credit Agreement (as defined herein) from and after June 3, 2022, accrued interest and outstanding fees thereunder, and the cash receipts of the Debtors through the entry of the Final Order which receipts constitute cash collateral of the Prepetition Lenders (the foregoing proposed conversion defined as the "Roll Up");

(v)     authorizing the Debtors to execute and deliver the DIP Credit Agreement, the other "Loan Documents" as described in the DIP Credit Agreement and any other agreements and documents related thereto (collectively with the DIP Credit Agreement, the "DIP Documents"), and to perform such other acts as may be necessary or desirable in connection with the DIP Documents and the transactions contemplated thereby;

(vi)    subject to the Carve-Out (as defined herein), granting to the DIP Agent and the DIP Lenders, on account of the DIP Facility and all obligations owing thereunder and under the DIP Documents, including the Roll Up (collectively, and including all "Obligations" as described in the DIP Credit Agreement, the "DIP Obligations"), allowed super-priority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code having priority over any and all expenses and claims specified in any other section of the Bankruptcy Code, including, without limitation, sections 503(b), 507(a)(2), 507(b), and 507(d) of the Bankruptcy Code, in each of the Cases and any Successor Cases (as defined herein);

(vii)   subject to the Carve-Out and the Prepetition Prior Liens (as defined herein), granting to the DIP Agent, for the benefit of itself and the DIP Lenders, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral" as defined in section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein;

(viii)  authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become due, including, without limitation, upfront fees, structuring fees, unused commitment fees, administrative agent's fees, the reasonable fees and disbursements of the DIP

Agent's attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(ix)    (a) authorizing the use of Cash Collateral of the Prepetition Secured Parties (each as defined herein) pursuant to section 363 of the Bankruptcy Code and subject to the Approved Budget (as defined herein), the initial form of which is attached hereto as <u>Exhibit A</u>, (b) from and after entry of a Final Order, authorizing the Debtors to collect and segregate the Cash Collateral of the Prepetition Secured Parties and to apply such Cash Collateral to the Prepetition Secured Parties on the terms set forth herein, and (c) subject to the Carve-Out, providing adequate protection to the Prepetition Secured Parties for any Diminution in Value (as defined herein) of their respective interests in the Prepetition Collateral (as defined herein), including the Cash Collateral, as a result of the relief granted herein;

(x)    subject to the Carve-Out, providing adequate protection to the Arizona Mechanics' Lienholders (as defined herein) for any Diminution in Value of their respective interests in the Arizona Real Property (as defined herein), as a result of the relief granted herein;

(xi)    waiving, subject to entry of a Final Order approving such waiver, certain rights of the Debtors to surcharge collateral pursuant to section 506(c) of the Bankruptcy Code;

(xii)    waiving, subject to entry of a Final Order approving such waiver, the application of the "equities of the case" exception under section 552(b) of the Bankruptcy Code as to the Prepetition Secured Parties with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral;

(xiii)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order; and

(xiv)    scheduling a final hearing (the "<u>Final Hearing</u>") for this Court to consider entry of a final order (the "<u>Final Order</u>"), which shall be in form and substance satisfactory to the DIP Agent, authorizing and approving on a final basis the relief requested in the DIP Motion.

The Court having considered the DIP Motion and the exhibits attached thereto, the

*Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings*

[ECF No. 26], the *Declaration of Homer Parkhill in Support of DIP Financing* [ECF No. 25], the

DIP Documents, and the evidence submitted at the interim hearing held on October 13, 2022 (the

"<u>Interim Hearing</u>"); and notice of the Interim Hearing having been given in accordance with

Bankruptcy Rules 2002, 4001(b), (c) and (d), and Local Rules 4001-2, 4001-3 and 9013-1(F); and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors and their estates as contemplated by Bankruptcy Rules 4001 and 6003 and to all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit Agreement is a sound and prudent exercise of the Debtors' business judgment; and it further appearing that the Debtors are unable to obtain credit on terms more favorable than those of the DIP Facility; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE PLEADINGS AND THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    <u>Petition Date</u>. On October 10, 2022 (the "<u>Petition Date</u>"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Florida (the "<u>Court</u>").

B.    <u>Debtors in Possession</u>. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

C.      <u>Jurisdiction and Venue</u>. This Court has core jurisdiction over the Cases, the DIP Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Court may enter a final order consistent with Article III of the United States Constitution. The predicates for the relief sought herein are sections 105, 361, 362, 363(c), 363(e), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, 9013, and 9014, and Local Rules 2002-1, 4001-1, 4001-2, 4001-3, and 9013-1.

D.      <u>Committee Formation</u>. As of the date hereof, the United States Trustee for the Southern District of Florida (the "<u>U.S. Trustee</u>") has not appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (a "<u>Creditors' Committee</u>").

E.      <u>Debtors' Stipulations</u>. In requesting the DIP Facility and in exchange for and as a material inducement to the DIP Lenders to provide the DIP Facility, and to the Prepetition Secured Parties in exchange for the Diminution in Value, and after consultation with their attorneys and financial advisors, and without prejudice to the rights of parties-in-interest as set forth in paragraph 40 herein, the Debtors admit, stipulate, acknowledge, and agree as follows (paragraphs E(i) through E(vii) below are referred to herein, collectively, as the "<u>Debtors' Stipulations</u>"):

(i)      *Prepetition Facility.* Pursuant to that certain Amended and Restated Revolving Credit and Term Loan Agreement dated as of August 14, 2020, (as amended, restated, supplemented, or otherwise modified from time to time, the "<u>Prepetition Credit Agreement</u>") among (a) the Borrower (the "<u>Prepetition Borrower</u>"), (b) the guarantors party thereto from time to time (such guarantors as of the date hereof, the "<u>Prepetition Guarantors</u>" and collectively with the Prepetition Borrower, the "<u>Prepetition Credit Parties</u>"), (c) Truist Bank, as administrative agent (in such capacity, the "<u>Prepetition Agent</u>"), swingline lender (in such capacity, the "<u>Prepetition Swingline Lender</u>") and letter of credit issuer (in such capacity, the "<u>Prepetition L/C Issuer</u>"), and (d) the lenders party thereto from time to time (such

lenders as of the date hereof, the "Prepetition Lenders" and collectively with the Prepetition Agent, the Prepetition Swingline Lender and the Prepetition L/C Issuer, the "Prepetition Secured Parties"), the Prepetition Lenders and the Prepetition Swingline Lender extended loans and other financial accommodations to, and the Prepetition L/C Issuer issued letters of credit for the account of, the Prepetition Borrower (the "Prepetition Facility"). The Prepetition Credit Agreement, the other Loan Documents (as defined in the Prepetition Credit Agreement) and any other agreements and documents executed or delivered in connection therewith or pursuant thereto, each as may be amended, restated, supplemented, or otherwise modified from time to time, are collectively referred to herein as the "Prepetition Credit Documents".

(ii) *Prepetition Obligations.* The Prepetition Facility provided the Prepetition Borrower with, among other things (a) $260,000,000 in aggregate principal amount of revolving commitments, including a $25,000,000 sublimit for the issuance of letters of credit, and (b) $231,400,000 in aggregate principal amount in a term loan facility. As of the Petition Date, the Prepetition Lenders are owed on account of the Prepetition Facility (i) $240,000,000.00 in revolving loan principal obligations, (ii) $104,190,218.45 in term loan principal obligations, (iii) $6,349,912.27 in respect of unpaid interest accrued through October 9, 2022, (iv) $4,188,187.51 in respect of unpaid forbearance fees accrued through October 9, 2022, and (v) $41,883.33 in respect of unpaid commitment fees accrued through October 9, 2022 (collectively, with any other reimbursement obligations (contingent or otherwise) in respect of letters of credit, any other fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management and derivative obligations, indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Credit Parties' obligations pursuant to the Prepetition Credit Documents, including all "Obligations" as defined in the Prepetition Credit Agreement, the "Prepetition Obligations").

(iii) *Prepetition Liens and Prepetition Collateral.* As more fully set forth in the Prepetition Credit Documents, prior to the Petition Date, the Prepetition Credit Parties granted to the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, a first-priority security interest in and continuing lien (the "Prepetition Liens") on substantially all of the Prepetition Credit Parties' assets and properties (which, for the avoidance of doubt, includes Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Collateral"). Each of the Prepetition Guarantors jointly and severally, absolutely, unconditionally and irrevocably guaranteed the Prepetition Obligations.

(iv) *Validity, Perfection and Priority of Prepetition Liens and Prepetition Obligations.* The Debtors acknowledge and agree that as of the Petition Date: (a) the Prepetition Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable,

and properly perfected and were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Liens are senior in priority over any and all other liens on the Prepetition Collateral, subject only to liens that are valid, properly perfected (before the Petition Date or in accordance with section 546 of the Bankruptcy Code), non-avoidable, and senior in priority as a matter of law to the Prepetition Liens (including without limitation the liens and rights of setoff of banks and other financial institutions (the "<u>Cash Management Banks</u>") providing treasury services comprising the Debtors' cash management system) (collectively the "<u>Prepetition Prior Liens</u>");[4] (c) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Credit Parties enforceable in accordance with the terms of the applicable Prepetition Credit Documents; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations (or any payment made in respect of any thereof) is subject to any challenge or defense, including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or other applicable law; (e) any payments made on account of the Prepetition Obligations before the Petition Date were (1) payments out of the Prepetition Collateral and/or (2) made in the ordinary course of business and in exchange for reasonably equivalent value and did not diminish any property otherwise available for distribution to unsecured creditors; and (f) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code or actions for recovery or disgorgement, against any of the Prepetition Secured Parties, or any of their respective affiliates, or any of the respective agents, attorneys, advisors, professionals, officers, directors and employees of the foregoing, arising out of, based upon or related to their respective obligations under the Prepetition Credit Documents. For the avoidance of doubt, the Debtors acknowledge and agree that as of the Petition Date, the Prepetition Secured Parties have perfected, first-priority (subject only to Prepetition Prior Liens) liens on substantially all of the assets of the Prepetition Credit Parties.

(v)   *Release of Claims.* Subject only to the reservation of rights set forth in paragraph 40 below, each Debtor shall be deemed to have forever waived, discharged, and released each of the Prepetition Secured Parties, each of their affiliates, assigns or successors and each of the respective directors, members, managers, equity holders, officers, employees, agents, trustees, representatives, attorneys, financial advisors, accountants, collateral auditors, appraisers, consultants and each insurance, environmental, legal, financial and other advisor and other consultants and agents

---

[4] Nothing herein shall constitute a finding or ruling by this Court that any asserted Prepetition Prior Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the Prepetition Secured Parties, or the Creditors' Committee (if appointed), to challenge the validity, priority, enforceability, seniority, non-avoidability, perfection or extent of any alleged Prepetition Prior Lien.

of or to the foregoing (collectively, the "Prepetition Secured Party Releasees") from any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action (including causes of action in the nature of "lender liability"), defenses, setoff, recoupment, other offset rights and other rights of disgorgement or recovery against any and all of the Prepetition Secured Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the Prepetition Liens, the Prepetition Obligations, the Prepetition Credit Documents, or the debtor-creditor relationship between any of the Prepetition Secured Parties, on the one hand, and any of the Prepetition Credit Parties, on the other hand, including, without limitation, (a) any recharacterization, subordination, avoidance, disallowance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law, municipal law, or foreign law and (b) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition Obligations or any payments or other transfers made on account of the Prepetition Obligations, or the validity, enforceability, priority, or non-avoidability of the Prepetition Liens securing the Prepetition Obligations, including any right or basis to seek any disgorgement or recovery of payments of cash or any other distributions or transfers previously received by any of the Prepetition Secured Party Releasees.

(vi)     *Cash Collateral.* Subject to certain exclusions set forth in the Prepetition Credit Documents, including certain segregated Cash Collateral that is defined as "Excluded Property" under the Prepetition Credit Documents (if any), all of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties.

(vii)    *No Control*. None of the DIP Agent, DIP Lenders or the Prepetition Secured Parties is a control person or insider (as defined in section 101(31) of the Bankruptcy Code) of any Debtor.

F.     Findings Regarding Corporate Authority. Each Debtor has all requisite corporate power and authority to execute and deliver the DIP Documents to which it is a party and to perform its obligations thereunder.

G.     Adequate Notice of Interim Hearing. On the Petition Date, the Debtors filed the DIP Motion with this Court pursuant to Bankruptcy Rules 2002, 4001, 9013, and 9014, and represent that they provided notice of the DIP Motion and the Interim Hearing to the following parties and/or their respective counsel as follows: (i) the U.S. Trustee, (ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis (excluding insiders), (iii) counsel to the Prepetition Agent, (iv) counsel to the DIP Agent, and (v) any other party entitled to notice pursuant

to Local Rule 9013-1(F). Under the circumstances, the notice given by the Debtors of the DIP Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rules 4001(b) and (c).

        H.    <u>Findings Regarding Postpetition Financing</u>.

        (i)    *Request for Postpetition Financing*. The Debtors seek authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Documents, and (b) use Cash Collateral on the terms described herein to administer the Cases and fund their operations. Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

        (ii)    *Priming of the Prepetition Liens.* The priming of the Prepetition Liens of the Prepetition Secured Parties on the Prepetition Collateral under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Credit Agreement and as further described herein, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses to the benefit of their estates and creditors. The Prepetition Secured Parties are entitled to receive adequate protection as set forth in this Interim Order pursuant to sections 361, 363, and 364 of the Bankruptcy Code, solely to the extent that (a) the imposition of the stay under section 362 of the Bankruptcy Code, (b) the use, sale or lease of the Prepetition Collateral (including Cash Collateral) under section 363 of the Bankruptcy Code or (c) any grant of a lien under section 364 of the Bankruptcy Code (including, without limitation, the granting of the DIP Liens (as defined herein), subject to the Carve-Out) results in a decrease in the value of the Prepetition Secured Parties' interest in the Prepetition Collateral (including the Cash Collateral) (diminution in the value of any collateral of any party, including, without limitation, the Prepetition Collateral, resulting from any of the foregoing causes, "<u>Diminution in Value</u>").

(iii)      *Need for Postpetition Financing and Use of Cash Collateral.* The Debtors have an immediate and critical need to use Cash Collateral on an interim basis and to obtain credit on an interim basis pursuant to the DIP Facility in order to, among other things, administer and preserve the value of their estates. The ability of the Debtors to finance their operations, maintain business relationships with their vendors, suppliers and customers, pay their employees and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and parties-in-interest. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)      *No Credit Available on More Favorable Terms.* The DIP Facility is the best source of debtor-in-possession financing available to the Debtors. The Debtors are unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility and are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors have also been unable to obtain credit that is: (a) unsecured having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders: (1) perfected security interests in and liens on (each as provided herein) all of the

Debtors' existing and after-acquired assets with the priorities set forth in paragraph 6 hereof; (2) super-priority claims and liens; and (3) the other protections set forth in this Interim Order.

(v)     *Use of Proceeds of the DIP Facility*. The Debtors shall use the proceeds of the DIP Facility and any Cash Collateral, in accordance with the Approved Budget, solely as follows: (a) on the Effective Date (as defined in the DIP Credit Agreement), to pay costs and expenses associated with the closing of the transactions under the DIP Credit Agreement, including those required to be paid pursuant to the DIP Credit Agreement; and (b) on or after the Effective Date, to fund the Cases in accordance with the Approved Budget or as otherwise set forth in this Interim Order and for the financing of Debtors' ordinary working capital and other general corporate needs, including certain fees and expenses of professionals retained by the Debtors and for certain other prepetition and pre-filing expenses that are approved by this Court and permitted by the Approved Budget (subject to Permitted Variances) and including, after the entry of the Final Order, for the Roll Up to the extent provided for therein and the payment of the Prepetition Obligations as described therein. The Debtors shall not be permitted to use the proceeds of the DIP Facility or any Cash Collateral in contravention of the provisions of the DIP Documents, this Interim Order or the Bankruptcy Code, including any restrictions or limitations on the use of proceeds contained therein.

I.     <u>Adequate Protection</u>. The Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, is entitled to receive adequate protection to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral, as provided herein.

J.     <u>Sections 506(c) and 552(b)</u>. In light of (i) the DIP Agent's and the DIP Lenders' agreement to subordinate their liens and super-priority claims to the Carve-Out and (ii) the Prepetition Secured Parties' agreement to subordinate their liens and super-priority claims to the

Carve-Out, DIP Liens and DIP Superpriority Claim and to permit the use of Prepetition Collateral (including Cash Collateral): (a) subject to entry of a Final Order providing for such waiver, the Prepetition Secured Parties are each entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code; and (b) subject to entry of a Final Order providing for such waiver, the DIP Agent, DIP Lenders, and Prepetition Secured Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

      K.      <u>Good Faith of the DIP Agent and the DIP Lenders.</u>

      (i)      *Willingness to Provide Financing.* The DIP Lenders have indicated a willingness to provide financing to the Debtors subject to *inter alia*: (a) entry of this Interim Order and the Final Order; (b) approval by the Court of the terms and conditions of the DIP Facility and the DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d) findings by this Court that such financing is essential to the Debtors' estates, that the DIP Agent and the DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and the DIP Agent's and the DIP Lenders' claims, super-priority claims, security interests and liens and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided in section 364(e) of the Bankruptcy Code.

      (ii)      *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid, and to be paid, thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors,

DIP Agent, DIP Lenders, and Prepetition Secured Parties, with the assistance and counsel of their respective advisors. Use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Agent, DIP Lenders and Prepetition Secured Parties (as applicable) within the meaning of section 364(e) of the Bankruptcy Code.

L.    <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED** that:

1.    <u>Interim Financing Approved</u>. The DIP Motion is granted on an interim basis as set forth herein, the Interim Financing (as defined herein) is authorized and approved, and the use of Cash Collateral on an interim basis is authorized, in each case subject to the terms and conditions set forth in the DIP Documents and this Interim Order. All objections to this Interim Order to the extent not withdrawn, waived, settled or resolved are hereby denied and overruled.

**<u>DIP Facility Authorization</u>**

2.    <u>Authorization of the DIP Financing</u>. The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Documents, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order, the DIP Documents and the Approved Budget, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by this Interim Order and the DIP Documents. The Debtors are hereby authorized to pay, in accordance with this Interim Order, the principal, interest, fees, expenses and other amounts described in the DIP

Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval, including, without limitation, upfront fees, structuring fees, unused commitment fees, administrative agent's fees, the reasonable and documented fees and disbursements of the DIP Agent's attorneys, advisors, accountants, and other consultants, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in the DIP Documents. Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

3.    <u>Authorization to Borrow and to Use Cash Collateral</u>. In order to prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Interim Order through and including the earlier to occur of (i) entry of the Final Order or (ii) the Termination Declaration (as defined herein), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Documents and this Interim Order, and subject to the Approved Budget, the Debtors are hereby authorized to request and obtain extensions of credit (in the form of loans under the DIP Facility) up to an aggregate outstanding principal amount of $34,000,000 at any one time outstanding (the "<u>Interim Financing</u>").

4.    <u>DIP Obligations</u>. The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee appointed in the Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>"). Upon entry of this Interim Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or

absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agent or any of the DIP Lenders under the DIP Documents or this Interim Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts under the DIP Documents.

5.      DIP Liens. To secure the DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted, against each of the Debtors on a joint and several basis, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens (collectively, the "DIP Liens") on all real and personal property, whether now existing or hereafter arising, tangible or intangible, of each of the Debtors (the "DIP Collateral"), including without limitation: (a) all monies, cash (including without limitation, promotional cash), cash equivalents, deposit accounts, lockbox accounts, securities accounts, commodities accounts, or other accounts owned by any Debtor, other receivables, accounts, chattel paper (whether tangible or electronic), contract rights, inventory (wherever located and including without limitation inventory in transit), instruments (including promissory notes), documents (as defined in the Uniform Commercial Code and including, if applicable, electronic documents), securities (whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock of each of its subsidiaries), goods, furniture, fixtures, equipment and any accessions thereto, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, intellectual property, general intangibles, payment intangibles, rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights (whether or not evidenced by a writing), commercial tort claims, claims and

causes of action and all substitutions, other real and personal property, leases and leaseholds, in each case not constituting Excluded Property (as defined in the DIP Credit Agreement); and (b) upon entry of a Final Order, any amounts that are recovered or otherwise received by the Debtors in respect of avoidance actions pursuant to sections 549 and 550 of the Bankruptcy Code and any proceeds thereof; <u>provided</u>, that the DIP Liens shall not attach to or encumber claims and causes of action available to the Debtors or their estates through the exercise of the powers granted by sections 544, 545, 547, 548, 550 (other than with respect to any applicability to section 549) and 553 of the Bankruptcy Code ("<u>Prepetition Avoidance Actions</u>") or proceeds thereof.

6.    <u>DIP Lien Priority</u>. The DIP Liens securing the DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien, claim or interest to or on any of the DIP Collateral, except that the DIP Liens shall be junior only to: (a) the Prepetition Prior Liens; (b) any permitted senior liens, if any, under the DIP Documents; and (c) the Carve-Out. Other than as set forth herein, the DIP Liens shall not be made subject to, or *pari passu* with, any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases and/or upon the dismissal of any of the Cases or Successor Cases. Subject to entry of the Final Order, the DIP Liens securing the DIP Obligations are expressly senior to the rights of any seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code. The DIP Liens shall not be subject to section 510, 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

7.    <u>DIP Superpriority Claim</u>. Upon entry of this Interim Order, the DIP Agent and the DIP Lenders are hereby granted, against each of the Debtors on a joint and several basis, pursuant

to section 364(c)(1) and 364(d) of the Bankruptcy Code, an allowed, senior secured, super-priority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "DIP Superpriority Claim") for all DIP Obligations that shall: (a) be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, subject to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of Prepetition Avoidance Actions; (b) subject only to the Carve-Out, have priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, costs, claims and expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c) (subject to entry of a Final Order), 546(d), 726, 1113, and 1114, or any other provision of the Bankruptcy Code or otherwise, as provided under section 364(c)(l) of the Bankruptcy Code; and (c) at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative in the Cases or any Successor Case.

8.        No Obligation to Extend Credit. The DIP Agent and DIP Lenders shall have no obligation to make any loan or advance under the DIP Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Documents and this Interim Order have been satisfied in full or waived in accordance with the DIP Documents.

9.        Use of DIP Facility Proceeds. From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Interim Order, as permitted by the DIP Documents and in compliance with the Approved Budget (subject to Permitted Variances), and under no circumstances will the Debtors transfer any such

advances to any non-Debtor affiliates other than to fund the operations of the Foreign Non-Debtor Affiliates[5] and to pay obligations owing to the Landlord Non-Debtor Affiliates,[6] in each case, as permitted by the DIP Documents and in compliance with the Approved Budget (subject to Permitted Variances).

**Authorization to Use Cash Collateral**

10.     <u>Authorization to Use Cash Collateral</u>. The Debtors are authorized to use Cash Collateral subject to the terms and conditions of this Interim Order, the DIP Facility and the DIP Documents and in accordance with the Approved Budget (subject to Permitted Variances) and under no circumstances will the Debtors transfer any such Cash Collateral to any non-Debtor affiliates other than to fund the operations of the Foreign Non-Debtor Affiliates and to pay obligations owing to the Landlord Non-Debtor Affiliates, in each case, as permitted by the DIP Documents and in compliance with the Approved Budget (subject to Permitted Variances). Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Facility and the DIP Documents, and in accordance with the Approved Budget.

11.     <u>Prepetition Adequate Protection Liens</u>. Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of: (a) the interests of the Prepetition Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Agent, for the benefit of itself

---

[5]  The "<u>Foreign Non-Debtor Affiliates</u>" are (a) Bang Energy Canada, ULC, (b) Bang Energy Mexico S. DE R.L. de C.V., (c) Bang Energy B.V., (d) Bang Energy (Australia) Pty Ltd., (e) Bang Energy VPX Sports Ecuador S.A.S., (f) Energy Peru, LLC, (g) Bang Energy Peru S.A.C., (h) Bang Energy Costa Rica LTDA, (i) Bang Energy Brazil LTDA, (j) Bang Energy Chile SPA, and (k) Bang Energy Columbia SA.

[6]  The "<u>Landlord Non-Debtor Affiliates</u>" are (a) JHO GA-1 Investment, LLC, (b) JHO NV-1 Investment, LLC, (c) Sheridan Real Estate Investment A, LLC, and (d) Sheridan Real Estate Investment C, LLC.

and the other Prepetition Secured Parties, continuing valid, binding, enforceable and perfected postpetition security interests in and liens on all of the Debtors' assets, including, without limitation, the DIP Collateral, but excluding all proceeds or property recovered in connection with the Prepetition Avoidance Actions (such liens, the "<u>Prepetition Secured Parties Adequate Protection Liens</u>"); and (b) the interests of the holders of mechanics' liens and/or materialmen's liens arising under applicable Arizona law (such holders, the "<u>Arizona Mechanics' Lienholders</u>") against any Diminution in Value of the Arizona Mechanics' Lienholders' interest, if any, in the real property of Debtor JHO Real Estate Investment, LLC located at 1635 S. 43rd Avenue, Phoenix, AZ 85009 (the "<u>Arizona Real Property</u>"), the Debtors hereby grant to the Arizona Mechanics' Lienholders continuing valid, binding, enforceable and perfected postpetition security interests in and liens on the DIP Collateral (such liens, the "<u>Arizona Mechanics' Lienholders Adequate Protection Liens</u>" and together with the Prepetition Secured Parties Adequate Protection Liens, the "<u>Adequate Protection Liens</u>").[7]

      12.    <u>Priority of Adequate Protection Liens</u>.

      (i)    The Adequate Protection Liens shall be junior only to: (a) Prepetition Prior Liens; (b) the Carve-Out; (c) the DIP Liens; and (d) the Prepetition Liens. The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Debtors' assets. As between the Prepetition Secured Parties Adequate Protection Liens and the Arizona Mechanics' Lienholders Adequate Protection Liens, the Prepetition Secured Parties Adequate Protection Liens shall be senior.

---

[7] Nothing herein shall constitute a finding or ruling by this Court that any lien asserted by any Arizona Mechanics' Lienholder is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the Prepetition Secured Parties, or the Creditors' Committee (if appointed), to challenge the validity, priority, enforceability, seniority, non-avoidability, perfection or extent of any such alleged lien.

(ii)    Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted or otherwise created in or during the Cases or any Successor Cases and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases. The Adequate Protection Liens shall not be subject to (a) section 510(c) of the Bankruptcy Code with respect to the Prepetition Obligations, or (b) sections 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

13.    <u>Adequate Protection Superpriority Claims</u>.    As further adequate protection of the interests of: (a) the Prepetition Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Agent, on behalf of itself and the other Prepetition Secured Parties, is hereby granted, as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed super-priority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "<u>Prepetition Secured Parties Adequate Protection Superpriority Claim</u>"); and (b) the Arizona Mechanics' Lienholders against any decrease in the value of the Arizona Mechanics' Lienholders' interest, if any, in the Arizona Real Property, the Arizona Mechanics' Lienholders are hereby granted, as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed super-priority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "<u>Arizona Mechanics' Lienholders Superpriority Claim</u>" and together with the Prepetition Secured Parties Adequate Protection Superpriority Claim, the "<u>Adequate Protection Superpriority Claims</u>").

14.    <u>Priority of the Adequate Protection Superpriority Claims</u>. Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c) (subject to entry of a Final Order), 546(d), 726, 1113 and 1114 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that (i) the Adequate Protection Superpriority Claims shall be junior to the Carve-Out and the DIP Superpriority Claim and (ii) as between the Prepetition Secured Parties Adequate Protection Superpriority Claim and the Arizona Mechanics' Lienholders Superpriority Claim, the Prepetition Secured Parties Adequate Protection Superpriority Claim shall be senior; <u>provided</u>, <u>further</u>, <u>however</u>, that all Adequate Protection Liens granted by paragraph 11 are subject to being set aside and all Adequate Protection Superpriority Claims granted by paragraph 13 are subject to being disallowed, in each case if and to the extent that the corresponding Prepetition Lien or underlying claim is successfully challenged (in a manner that undermines the granting of adequate protection to the recipient thereof) pursuant to paragraph 40 of this Interim Order (in the case of the Prepetition Secured Parties) or otherwise (in the case of the Arizona Mechanics' Lienholders).

15.    <u>Adequate Protection Payments and Other Consideration</u>.  In consideration for the consent of the Prepetition Secured Parties to the relief granted herein, and as additional adequate protection provided to the Prepetition Secured Parties in connection with the relief granted herein, including the priming of their liens contemplated hereby, the Debtors shall, subject to paragraph 33 hereof:

(i)  make monthly payments to the Prepetition Agent (for the ratable benefit of the Prepetition Lenders) on the last business day of each month in an amount equal to the

interest accrued on or after the Petition Date under the Prepetition Credit Agreement for such month at the Default Rate (as defined therein) as the applicable reference rate and giving effect, for avoidance of doubt, to any future increases in the applicable rate of interest after the Petition Date to the extent provided for under the Prepetition Credit Agreement; [8]

(ii) reimburse (without duplication of and only to the extent not reimbursed pursuant to paragraph 31 hereof) the Prepetition Agent for all reasonable and documented out-of-pocket expenses of the Prepetition Agent incurred in connection with the Prepetition Credit Agreement (including without limitation, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses payable under the Prepetition Credit Agreement, and including for avoidance of doubt any such expenses incurred in connection with the Prepetition Agent successfully defending itself in connection with any Challenge);

(iii) upon entry of the Final Order and as described therein, be deemed to have converted a portion of the obligations outstanding under the Prepetition Credit Agreement to obligations under the DIP Credit Agreement; and

(iv) upon entry of the Final Order and as described therein, segregate all collections received by the Debtors, deliver such collections to the DIP Agent, which would deliver such collections on a weekly basis to the Prepetition Agent to be applied to reduce, on a dollar-for-dollar basis, the Prepetition Obligations (first to principal and thereafter to interest and fees).

16.     <u>Section 507(b) Reservation</u>. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases.

**<u>Provisions Common to DIP Financing and Use of Cash Collateral</u>**

17.     <u>Amendments, Consents, Waivers, and Modifications</u>. The Debtors, with the express written consent of the requisite DIP Lenders required under the DIP Credit Agreement for

---

[8] As of October 1, 2022, the applicable rate under the Prepetition Credit Agreement (*i.e.*, the all-in rate under the Prepetition Credit Agreement, which is the Default Rate) is for Base Rate Loans (as defined in the Prepetition Credit Agreement) the sum of (i) Base Rate (as defined in the Prepetition Credit Agreement), subject to a 0.75% per annum floor, <u>plus</u> (ii) 5.50% per annum, <u>plus</u> (iii) 2.00% per annum (in accordance with section 2.13(d) of the Prepetition Credit Agreement).

any such action contemplated thereby (the "Requisite DIP Lenders") and in accordance with the terms and conditions of the DIP Documents, may enter into any amendments, consents, waivers or modifications to the DIP Documents without the need for further notice and hearing or any order of this Court, so long as such amendments, consents, waivers or modifications are non-material; provided, that copies of any such amendments, waivers or modifications shall be promptly filed with the Court. A copy of any such amendment, consent, waiver or modification shall be promptly provided by the Debtors to the DIP Agent, the Prepetition Agent, the U.S. Trustee and counsel for the Creditors' Committee (if appointed). Any material changes to the DIP Documents must be filed with the Court and will require (i) the consents of the Requisite DIP Lenders, the requisite Prepetition Lenders required for any applicable action under the Prepetition Credit Agreement (the "Requisite Prepetition Lenders") and any other express written consents required by the DIP Documents (provided that, for the avoidance of doubt, increases in the amount of the loans under the DIP Facility shall further require the consent of all DIP Lenders whose commitments are being increased), and (ii) Court approval after notice and a hearing (which hearing may be held no sooner than two (2) business days after the filing of the proposed amendments with the Court and service of such amendments on (i) the U.S. Trustee, (ii)  the Creditors' Committee, if appointed, and (iii) all parties who have requested notice pursuant to Bankruptcy Rule 2002).

18.    Approved Budget.

(i)    The use of borrowings and other extensions of credit by the Debtors under the DIP Credit Agreement and the other DIP Documents shall be limited in accordance with the Approved Budget (subject to Permitted Variances). The Debtors have delivered to the DIP Lenders and the Prepetition Lenders a detailed thirteen (13) week budget that sets forth projected

cash receipts and cash disbursements (by line item) on a weekly basis for the time period from and including the Petition Date through January 6, 2023 that has been approved by the Requisite DIP Lenders and the Requisite Prepetition Lenders, and a copy of which is attached hereto as Exhibit A (as updated, amended, supplemented or otherwise modified in accordance herewith, the "Approved Budget"). The Approved Budget shall also set forth, for each week, the amount of loans under the DIP Facility anticipated to be advanced or otherwise used for such week after giving effect to any budgeted inflows. Funds borrowed under the DIP Credit Agreement and Cash Collateral used under this Interim Order or the Final Order shall be used by the Debtors in accordance with the DIP Documents, including the Approved Budget (subject to Permitted Variances), this Interim Order and the Final Order. The consent of the Requisite DIP Lenders and the Requisite Prepetition Lenders to the Approved Budget shall not be construed as a commitment of the DIP Lenders to provide loans under the DIP Facility or of the DIP Lenders or the Prepetition Lenders to permit the use of Cash Collateral after the occurrence of a Termination Event (as defined herein) under this Interim Order or the Final Order, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

(ii)   The Approved Budget and Approved Variance Report (as defined herein) shall, including any updates, amendments, supplements and modifications approved hereunder, at all times be in form and substance reasonably acceptable to the Requisite DIP Lenders and the Requisite Prepetition Lenders and approved by the DIP Agent (at the direction of the Requisite DIP Lenders) and the Prepetition Agent (at the direction of the Requisite Prepetition Lenders) and, after the Facility Termination Date (as defined in the DIP Credit Agreement), the Prepetition Agent (at the direction of the Requisite Prepetition Lenders) prior to the implementation thereof and shall not require further notice, hearing, or Court order.

(iii)  Once every four (4) weeks, the Borrower may seek the approval of the DIP Agent (acting on behalf of the Requisite DIP Lenders) and, after the Facility Termination Date, the Prepetition Agent (acting on behalf of the Requisite Prepetition Lenders) to replace the Approved Budget (as in effect immediately prior to giving effect to any such replacement) with an updated budget (an "Updated Budget") delivered in accordance with the DIP Credit Agreement, which approval shall be made in writing (which may be provided by email) at the reasonable discretion of the DIP Agent or, after the Facility Termination Date, the Prepetition Agent; *provided*, that, if any DIP Lender, or after the Facility Termination Date, any Prepetition Lender, shall object to any such replacement, then the approval of such replacement shall be at the reasonable discretion of the Requisite DIP Lenders or, after the Facility Termination Date, the Requisite Prepetition Lenders; *provided*, *further*, that, the DIP Agent and the DIP Lenders, and after the Facility Termination Date, the Prepetition Agent and the Prepetition Lenders, shall be deemed to have approved of any such Updated Budget unless the DIP Agent or any DIP Lender, as applicable, or after the Facility Termination Date, the Prepetition Agent and the Prepetition Lenders, as applicable, shall have objected thereto by written notice to the Borrower within five (5) business days after receipt thereof, and if the DIP Agent (or the Requisite DIP Lenders, as applicable), or after the Facility Termination Date, the Prepetition Agent (or the Requisite Prepetition Lenders, as applicable), so approves of such replacement, then such Updated Budget shall become the Approved Budget; *provided*, *further*, *however*, that, to the extent that either the DIP Agent or any DIP Lender (or after the Facility Termination Date, the Prepetition Agent or any Prepetition Lender) does provide such objection notice within such five (5) business day period, the then-existing Approved Budget shall constitute the Approved Budget for the projection period, without giving effect to any update, modification or

supplement (with appropriate adjustments for the timing of monthly or semi-monthly disbursements), until such time as an Updated Budget is approved by the DIP Agent (or Requisite DIP Lenders, as applicable) or, after the Facility Termination Date, the Prepetition Agent (or Requisite Prepetition Lenders, as applicable) in each case, in its (or their) reasonable discretion.

(iv)   The DIP Lenders (a) may assume the Debtors will comply with the Approved Budget (subject to Permitted Variances), (b) shall have no duty to monitor such compliance, and (c) shall not be obligated to pay (directly or indirectly from the DIP Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to any Approved Budget other than to permit the Debtors' use of Cash Collateral as expressly provided herein prior to the occurrence of a Termination Event. Subject to the terms and conditions of this Interim Order and the Final Order, the DIP Lenders shall have the right, but not the obligation, to extend credit independent of any Approved Budget restrictions on loan availability set forth in the DIP Documents, and all loans under the DIP Facility shall be entitled to the benefits and protections of this Interim Order and the Final Order. For the avoidance of doubt, no DIP Lender shall be obligated to extend credit outside the terms of the DIP Documents.

(v)   On or before 11:00 a.m. Eastern time on the fourth business day of each week (provided that the first Approved Variance Report (as defined herein) will be delivered commencing after the end of the first full week following the Petition Date), the Debtors shall deliver to the DIP Agent and the Prepetition Agent (with concurrent copies to the Creditors' Committee (if appointed) and the U.S. Trustee) a cash flow reconciliation and variance report in form and detail reasonably acceptable to the DIP Agent and the Prepetition Agent (an "Approved Variance Report") that shows (a) comparisons of actual results for each line item

against such line item in the Approved Budget for the prior periods ended and (b) for each Approved Variance Report delivered after the end of the third full week following the Petition Date, a report setting forth compliance or non-compliance with the Permitted Variance for such Variance Testing Period. As used herein, "Variance Testing Period" means the period from the Petition Date through the week most recently ended. The first Variance Testing Period shall be the period from the Petition Date through the end of the third full week following the Petition Date. As used herein, "Permitted Variance" means: (a) Total Operating Receipts (as defined in the Approved Budget) must not be less than, for all Variance Testing Periods, 90% of the budgeted amount for the applicable Variance Testing Period on a cumulative basis; and (b) Total Operating Disbursements (as defined in the Approved Budget) must not exceed, for all Variance Testing Periods, 110% of the budgeted amount for the applicable Variance Testing Period on a cumulative basis. The Approved Variance Report shall also provide a commercially reasonable narrative explanation of each variance. The DIP Agent shall promptly deliver to the DIP Lenders, and the Prepetition Agent shall promptly deliver to the other Prepetition Lenders, a copy of each Approved Variance Report upon such agent's receipt. For the avoidance of doubt, the cash disbursements considered for determining compliance with the Approved Budget shall exclude (i) the Debtors' disbursements in respect of professional fees paid to professionals of the Debtors and the Creditors' Committee (if appointed), and (ii) fees, costs and expenses of the DIP Agent and Prepetition Agent (collectively, "Restructuring Fees").

19.    Budget Compliance. The Debtors' payment of any expenses or other disbursements other than those set forth in the Approved Budget (subject to Permitted Variances) or otherwise permitted by the DIP Documents or this Interim Order, in each case without the written consent of the DIP Agent, shall constitute a Termination Event; *provided*, *however*, that in the case of the

Restructuring Fees, the Debtors shall pay such fees, costs and expenses in accordance with the DIP Documents and this Interim Order, and the Final Order, without being limited by the Approved Budget or constituting a Termination Event.

20.    <u>Modification of Automatic Stay</u>. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claim, and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such reasonable acts as the DIP Agent, DIP Lenders or the Prepetition Secured Parties may request, each in its reasonable discretion, to assure the perfection and priority of the liens granted herein; (c) permit the DIP Agent and Prepetition Agent, to file, as each in its sole discretion deems necessary or advisable, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and Adequate Protection Liens; (d) permit the Debtors to incur all liabilities and obligations to the DIP Agent, DIP Lenders, and Prepetition Secured Parties under the DIP Documents, the DIP Facility and this Interim Order; (e) authorize the Debtors to pay, and the DIP Agent, the DIP Lenders and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Interim Order and the DIP Documents; (f) upon entry of the Final Order, authorize the Debtors to segregate collections and apply such collections to the Prepetition Obligations as set forth therein; and (f) permit the Debtors and DIP Agent to take any other actions necessary and appropriate to implement the terms of this Interim Order and the DIP Documents, including, without limitation, the implementation of applicable reserves.

21.     <u>Perfection of DIP Liens and Adequate Protection Liens</u>. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of (i) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction, (ii) obtaining "control" (as defined in any applicable Uniform Commercial Code or other law) over any DIP Collateral (and the DIP Agent shall be deemed, without any further action, to have control over all the Debtors' deposit accounts, securities accounts and commodities accounts within the meaning of such Uniform Commercial Code and other law) or (iii) taking any other action to validate or perfect the DIP Liens and Adequate Protection Liens or to entitle the DIP Liens and Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, the DIP Agent and the Prepetition Agent each are authorized to file, as each in its sole discretion deems necessary or advisable, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or Adequate Protection Liens. The Debtors are authorized to execute and deliver promptly upon demand to the DIP Agent and the Prepetition Agent all such financing statements, mortgages, notices and other documents as the DIP Agent or Prepetition Agent may reasonably request. The DIP Agent and Prepetition Agent, each in its discretion, may file a photocopy of this Interim Order as a financing statement, notice of lien or similar instrument with any filing or recording office or with any registry of deeds or similar office, in addition to or in

lieu of such financing statements, notices of lien or similar instrument. To the extent that the Prepetition Agent is the secured party under any security agreement, guaranty, pledge agreement, deed, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, transfer power, financing statement, fixture filing, deposit account control agreements or securities account control agreements, listed as loss payee, lender loss payee, mortgagee or additional insured under any of the Debtors' insurance policies, or is the secured party under any of the Prepetition Credit Documents (the foregoing collectively, the "Ancillary Collateral Documents"), the DIP Agent shall also be deemed to be the secured party under such Ancillary Collateral Documents, shall have all rights and powers attendant to that position (including rights of enforcement), and shall act in that capacity and distribute any proceeds recovered or received in accordance with the DIP Documents.

22.    Protections of Rights of DIP Agent, DIP Lenders and Prepetition Secured Parties. Through the applicable Consummation Date (as defined herein), the Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will: (i) maintain books, records, and accounts to the extent and as required by the DIP Documents and the Prepetition Credit Documents; (ii) reasonably cooperate with, consult with, and provide to the DIP Agent and the Prepetition Agent all such information and documents that any or all of the Debtors are obligated (including upon request by any of the DIP Agent or the Prepetition Agent) to provide under the DIP Documents, Prepetition Credit Documents, or the provisions of this Interim Order; (iii) permit, upon reasonable advance written notice to the Debtors, consultants, advisors and other representatives (including third party representatives) of each of the DIP Agent and the Prepetition Agent to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises

and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents and/or the Prepetition Credit Documents as applicable, in each case at reasonable times during normal business hours; (iv) at the reasonable request of the DIP Agent or Prepetition Agent, upon reasonable advance written notice to the Debtors, permit the DIP Agent and the Prepetition Agent and their respective consultants, advisors and other representatives to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets, at reasonable times during normal business hours; and (v) permit, upon reasonable advance written notice to the Debtors, the DIP Agent and the Prepetition Agent and their respective consultants, advisors and other representatives to conduct, at their reasonable discretion and at the Debtors' cost and expense, field audits, collateral examinations and inventory appraisals at reasonable times during normal business hours, in respect of any or all of the DIP Collateral and the Prepetition Collateral; *provided*, that any DIP Lender or Prepetition Lender and its respective consultants, advisors or other representatives may join the DIP Agent and/or the Prepetition Agent, as applicable, in connection with the exercise of any of the foregoing rights. As used herein, the term "Consummation Date" shall mean (1) with respect to any matters relating to the DIP Credit Agreement, the date upon which the Facility Termination Date has occurred within the meaning of the DIP Credit Agreement, and (2) with respect to any matters relating to the Prepetition Credit Agreement, the date upon which (A) the Debtors have confirmed a chapter 11 plan or plans of reorganization or liquidation in each of the Cases with the consent of the Prepetition Agent and the Requisite Prepetition Lenders, and (B) each such plan (or plans) has been substantially

consummated. Notwithstanding anything to the contrary in herein, the Debtors shall not be required to disclose, or to permit the inspection or discussion of, any document, information or other matter (I) that constitutes trade secrets or proprietary information, (II) in respect of which disclosure to the DIP Agent, the Prepetition Agent, the DIP Lenders or the Prepetition Lenders (or any of their respective representatives) is prohibited by applicable law, fiduciary duty, or any binding agreement (*provided*, that, such binding agreement was not entered into in contemplation of the limitations of this clause (II)), or (III) that is subject to attorney client or similar privilege, or constitutes attorney work product.

23.    <u>Proceeds of Subsequent Financing</u>. If the Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Documents or this Interim Order at any time prior to the Facility Termination Date, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied in accordance with this Interim Order and the DIP Documents.

24.    <u>Cash Collection and Cash Management</u>. From and after the date of the entry of this Interim Order, all collections and cash proceeds of any DIP Collateral, Prepetition Collateral, accounts, checks and other items of payment or services provided by any Debtor and all Cash Collateral that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be handled in accordance with the DIP Credit Agreement and the Cash Management Orders (as defined herein). Upon the direction of the DIP Agent, at any time after the occurrence of the DIP Termination Date (defined

herein), and subject to the provisions of paragraph 28 and the rights in favor of the Cash Management Banks set forth in the Cash Management Orders, all cash proceeds shall be remitted to the DIP Agent for application in accordance with the DIP Documents and this Interim Order. Each of the Debtors shall establish and maintain cash management arrangements and procedures in accordance with the DIP Documents and any interim and final cash management orders entered by the Court (the "Cash Management Orders"), which shall be in form and substance reasonably acceptable to the DIP Agent and the Prepetition Agent. Unless otherwise agreed to in writing by the DIP Agent and Prepetition Agent, the Debtors shall maintain no deposit accounts except those identified in or opened pursuant to the Cash Management Orders. The Debtors and the Cash Management Banks are authorized and directed to remit, without offset or deduction, funds in such accounts upon receipt of any direction to that effect from the DIP Agent or Prepetition Agent, subject to the provisions of paragraph 28 of this Interim Order and subject to the rights in favor of Cash Management Banks set forth in the Cash Management Orders.

25.    Maintenance of DIP Collateral. Until the Consummation Date, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Credit Agreement and the Prepetition Credit Documents; and (b) cause the DIP Collateral to be maintained in compliance with the requirements of the DIP Documents and the Prepetition Credit Documents.

26.    Disposition of DIP Collateral. Until the Consummation Date, except as otherwise provided for in the DIP Documents, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral or the Prepetition Collateral other than in the ordinary course of business without the prior written consent of the DIP Agent (at the direction of the Requisite DIP Lenders), and the Prepetition Agent (at the direction of the Requisite Prepetition Lenders) (not to be unreasonably withheld), and no such consent shall be implied, from

any other action, inaction or acquiescence by the DIP Agent, DIP Lenders, or the Prepetition Secured Parties, or from any order of this Court; *provided*, that at least five (5) business days prior to seeking such authorization, the Debtors shall consult in good faith with the DIP Agent and Prepetition Agent concerning the proposed sale, transfer, lease, encumbrance or other disposition of such property.

27.    <u>Termination Events</u>. The occurrence of any of the following events, unless waived in writing in accordance with the DIP Documents, shall constitute a "<u>Termination Event</u>" (and collectively, the "<u>Termination Events</u>"): (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order; (b) any Debtor seeks any modification or extension of this Interim Order or the Final Order without the consent of the Requisite DIP Lenders and the Requisite Prepetition Lenders; (c) any application is filed by any Debtor for the approval of (or an order is entered by the Court approving) any claim arising under section 507(b) of the Bankruptcy Code or otherwise, or any lien in any of the Cases, which is *pari passu* with or senior to the DIP Obligations, the DIP Liens, the DIP Superpriority Claim, the Prepetition Obligations, the Adequate Protection Liens or the Adequate Protection Superpriority Claims (except to the extent granted by this Interim Order); (d) the (i) commencement of any action by any Debtor or (ii) support by any Debtor of the commencement of any action by any other party-in-interest with standing against any of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, or their respective agents and employees, to subordinate or avoid any liens made in connection with the Prepetition Credit Documents or the DIP Documents or to avoid any obligations incurred in connection with the Prepetition Credit Documents or the DIP Documents; (e) any order shall be entered granting relief from the stay arising under section 362 of the Bankruptcy Code to the holder or holders of any security interest,

lien or right of setoff to permit foreclosure (or the granting of a deed in lieu of foreclosure or similar instrument), possession, set-off or any similar remedy with respect to any assets of the Debtors with an aggregate value of more than $5,000,000; (f) any Debtor shall assert in any pleading filed in any court that any material provision of this Interim Order or the Final Order is not valid and binding for any reason; (g) any Debtor files, withdraws or modifies a motion to approve the sale of all or substantially all of the Debtors' assets without the prior written consent of the Requisite DIP Lenders and the Requisite Prepetition Lenders; (h) any Debtor shall fail in any material respect to comply with any provisions in the DIP Credit Agreement or the Prepetition Credit Agreement governing the maintenance of the Debtors' insurance coverage on the DIP Collateral; or (i) the occurrence of an "Event of Default" under the DIP Credit Agreement.

28.    <u>Rights and Remedies Upon Occurrence of Termination Event</u>. Upon the occurrence and during the continuation of a Termination Event and notwithstanding the provisions of section 362 of the Bankruptcy Code, but subject to the expiration of the Remedies Notice Period (as defined herein):

(i)    the DIP Agent, in its discretion or at the direction of the Requisite DIP Lenders, may declare (a) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (b) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains, (c) the termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, (d) that the Carve-Out has been triggered through the delivery of the Carve-Out Termination Notice (as defined herein), (e) the termination, reduction or restriction on the ability of the Debtors to use Cash Collateral other than in accordance with

this paragraph 28, and (f) the imposition of the default rate of interest set forth in the DIP Credit Agreement; and

        (ii)     the Prepetition Agent, in its discretion or at the direction of the Requisite Prepetition Lenders, may declare the termination, reduction or restriction on the ability of the Debtors to use Cash Collateral other than in accordance with this paragraph 28.

Either of the foregoing shall be referred to as a "Termination Declaration". The Termination Declaration shall be given by electronic mail or facsimile (or other electronic means) to counsel to the Debtors, counsel to the Creditors' Committee (if appointed), and the U.S. Trustee and filed on docket of the Chapter 11 Cases (and the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date"). Any automatic stay otherwise applicable to the DIP Agent, DIP Lenders, and the Prepetition Secured Parties is hereby modified so that four (4) business days after the Termination Declaration Date (such four (4) business day period, the "Remedies Notice Period") the DIP Agent or the Prepetition Agent, as applicable, shall be entitled to immediately exercise its rights and remedies in accordance with the DIP Documents, the Prepetition Credit Documents and/or this Interim Order, as the case may be, and shall be permitted to satisfy the DIP Obligations, the DIP Superpriority Claim, the DIP Liens, the Prepetition Secured Parties Adequate Protection Liens, and the Prepetition Secured Parties Adequate Protection Superpriority Claim, as applicable, in each case subject to the Carve-Out. During the Remedies Notice Period (A) the Debtors may use Cash Collateral solely to pay payroll and other expenses critical to keep the business of the Debtors operating in accordance with the Approved Budget, and (B) the Debtors and/or the Creditors' Committee shall be entitled to seek an emergency hearing before the Court, within the Remedies Notice Period, for the purpose of contesting whether a Termination Event has occurred and/or is not continuing and such other

matters as the parties may raise or the Court may wish to consider. Unless the Court determines otherwise during the Remedies Notice Period, the automatic stay, as to the DIP Agent and the Prepetition Agent, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the DIP Agent and the Prepetition Agent respectively shall be permitted to exercise all remedies set forth herein, in the DIP Documents and/or the Prepetition Credit Documents, and as otherwise available at law without further order of or application or motion to the Court; *provided*, that so long as there are any DIP Obligations outstanding, or the DIP Lenders' commitments to extend credit under the DIP Documents are in effect, no Prepetition Secured Party shall be permitted to take any action in the Court or otherwise related to the enforcement of the Prepetition Secured Parties Adequate Protection Liens without the prior written consent of the DIP Agent and the Requisite DIP Lenders.

29.    <u>DIP Termination Date</u>. Upon the earlier of (a) the expiration of the Remedies Notice Period or (b) the termination of the DIP Credit Agreement in accordance with the terms of this Interim Order or the DIP Documents (whether by acceleration or otherwise) (the "<u>DIP Termination Date</u>"), the Debtors' authority to borrow and obtain other credit accommodations from the DIP Agent and the DIP Lenders pursuant to the terms of this Interim Order and the DIP Documents shall terminate automatically without any application, motion or notice to, hearing before, or order of the Court (unless permitted by the DIP Agent and the Requisite DIP Lenders), and (x) all DIP Obligations shall be immediately due and payable, (y) all commitments to extend credit under the DIP Facility will terminate, and (z) the DIP Agent, in its discretion or at the direction of the Requisite DIP Lenders, or the Prepetition Agent, in its discretion or at the direction of the Requisite Prepetition Lenders, may declare that the Debtors' authority to use Cash Collateral has ceased or is restricted to the extent set forth in paragraph 28 above. Upon the occurrence and

during the continuance of a Termination Event, and during the pendency of any Remedies Notice Period, the DIP Lenders shall have no further obligation to provide financing under the DIP Documents.

30.     <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order</u>. The DIP Agent, DIP Lenders and the Prepetition Secured Parties have acted in good faith in connection with this Interim Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter reargued, reconsidered, reversed, modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code to the maximum extent set forth therein.

31.     <u>DIP and Other Expenses</u>. The Debtors are authorized and directed to pay all reasonable and documented out-of-pocket expenses of the DIP Agent incurred in connection with the DIP Facility and the preparation and negotiation of the DIP Documents, as provided in the DIP Documents, whether or not the transactions contemplated hereby are consummated, including without limitation, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses and, without duplication, any such similar fees and expenses of the Prepetition Agent in connection with the DIP Facility, the Prepetition Credit Agreement and the rights of Prepetition Secured Parties under this Interim Order (collectively, the "<u>DIP Negotiation Expenses</u>"). Payment of all such DIP Negotiation Expenses shall not be subject to

allowance by the Court or any Fee Objection (as defined herein). Professionals for the DIP Agent and the Prepetition Agent shall not be required to comply with the U.S. Trustee fee guidelines; provided, however, that on or before receiving payment or reimbursement after the Petition Date for any professional fees (other than the DIP Negotiation Expenses) incurred by the DIP Agent pursuant to the DIP Documents or the Prepetition Agent pursuant to the Prepetition Credit Agreement, the DIP Agent or the Prepetition Agent, as applicable, shall provide a summary fee statement along with a summary of tasks performed by all professionals during such period (such statement, a "Fee Statement") to the U.S. Trustee and counsel for the Creditors' Committee (if appointed) contemporaneously with the delivery thereof to the Debtors. To the extent that the Debtors, the U.S. Trustee, or Creditors' Committee (if appointed) has an objection to the reasonableness of the fees and expenses of any such professional, and cannot resolve the objection within ten (10) days of receipt of the Fee Statement, then the Debtors, the U.S. Trustee, or Creditors' Committee (if appointed) shall file with this Court and serve on such professionals an objection (the "Fee Objection") limited to the issue of the reasonableness of such professionals' fees and expenses, and any failure by the Debtors, the U.S. Trustee, or Creditors' Committee to file a Fee Objection within the ten (10) day period shall constitute a waiver of any right of such party to object to the applicable Fee Statement. The Fee Statement shall not be required to comply with any particular format, may be in summary form only, but must at a minimum include a general, brief description of the nature of the matters worked on, a list of the professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and, with respect to the invoices of law firms, shall include the year of law school graduation for each attorney; provided, that the Debtors, the U.S. Trustee, and Creditors' Committee reserve the right to seek that copies of such invoices containing the detailed

time entries of the applicable professional be provided to such party (and each applicable professional reserves all rights to object to such request and to redact privileged, confidential or sensitive information from any information provided to such parties). Any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a Fee Statement shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection. The Debtors shall promptly pay (a) the undisputed fees, costs, and expenses reflected on any Fee Statement to which a Fee Objection has been timely filed, (b) all fees, costs and expenses on any invoice to which no Fee Objection has been timely filed and (c) all fees, costs and expenses subject to a Fee Objection that are ultimately allowed by a final, non-appealable order resolving such Fee Objection, or pursuant to a consensual resolution of the Fee Objection reached by the DIP Agent or Prepetition Agent (as the case may be) and the party timely submitting such Fee Objection. All unpaid fees, costs, expenses, and charges of the DIP Agent or the Prepetition Agent, as applicable, that have not been disallowed by this Court on the basis of a timely filed Fee Objection shall constitute DIP Obligations and shall be secured by the DIP Collateral. Effective upon entry of the Final Order providing for such relief, any and all fees, commissions, costs, and expenses paid prior to the Petition Date by any Debtor to the DIP Agent in connection with or with respect to the DIP Facility or DIP Documents or to the Prepetition Agent in connection with or with respect to the Prepetition Credit Agreement are approved in full and nonrefundable and shall not otherwise be subject to any challenge.

32.     <u>Indemnification</u>. The Debtors shall indemnify and hold harmless the DIP Agent and the DIP Lenders in accordance with the terms and conditions of the DIP Credit Agreement.

33.     <u>Recharacterization</u>. In the event that it is determined by a final order that the Prepetition Secured Parties are not entitled to the payment of some or all of the fees, expenses, or

other amounts described in paragraph 15 of this Interim Order as adequate protection for the Diminution in Value of their interests in the Prepetition Collateral, and the Prepetition Secured Parties are determined to be undersecured or unsecured, then such fees, expenses, interest payments, or other amounts, as applicable, shall be applied as a payment made to be applied to the principal balance of the secured portion of the Prepetition Obligations. All defenses to any effort to recharacterize the payments described in this paragraph are expressed reserved.

34.    <u>Proofs of Claim</u>. The Prepetition Secured Parties will not be required to file proofs of claim in any of the Cases or Successor Cases for any of the Prepetition Obligations. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, the Prepetition Agent on behalf of itself and the Prepetition Secured Parties is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Cases or Successor Cases for any of the Prepetition Obligations. Any proof of claim filed by the Prepetition Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition Secured Parties. Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties.

35.    <u>Consent to Priming and Adequate Protection</u>. The Prepetition Agent, on behalf of itself and the other Prepetition Secured Parties, consents to the Adequate Protection Liens and Adequate Protection Superpriority Claim and the priming provided for herein; *provided*, *however,* that the consent of the Prepetition Agent, on behalf of itself and the other Prepetition Secured Parties, to the priming of the Prepetition Liens and the use of Cash Collateral is expressly

conditioned upon the entry of this Interim Order, and such consent shall not be deemed to extend to any other Cash Collateral usage or other replacement financing or debtor-in-possession financing other than the DIP Facility provided under the DIP Documents; and *provided, further,* that such consent shall be of no force and effect in the event this Interim Order is not entered or is entered and subsequently reversed, modified, stayed, or amended (unless such reversal, modification, stay, or amendment is acceptable to the Prepetition Agent and the Requisite Prepetition Lenders) or the DIP Documents and DIP Facility as set forth herein are not approved.

36.    <u>Right to Seek Additional Adequate Protection</u>. The Court finds that the adequate protection provided herein is reasonable to protect the interests of the Prepetition Secured Parties. However, the Prepetition Agent, on behalf of the Prepetition Secured Parties, may request Court approval for additional or alternative adequate protection, without prejudice to any objection of the Debtors or any other party in interest to the grant of any additional or alternative adequate protection; *provided* that any additional or alternative adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Agent and DIP Lenders granted under this Interim Order and the DIP Documents. The consent of the Prepetition Secured Parties to the priming of the Prepetition Liens by the DIP Liens, the Adequate Protection Liens and the Carve-Out and the Debtors' use of Cash Collateral on the terms set forth herein does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Secured Parties that their respective interests in the Prepetition Collateral are adequately protected pursuant to this Interim Order or otherwise.

37.    <u>Carve-Out</u>.

(i)    Subject to the terms and conditions set forth herein, the DIP Liens, DIP Superpriority Claim, Prepetition Liens, Adequate Protection Liens, and Adequate Protection

Superpriority Claims shall be subject to the payment of the Carve-Out. As used in this Interim Order, the "Carve-Out" means the following expenses, subject, in each case, to application of any retainers that may be held by the applicable professionals as well as proceeds from unencumbered assets then currently available: (a) in the event of the occurrence and during the continuance of an Event of Default under the DIP Documents, the payment of unpaid professional fees, costs and disbursements ("Professional Fees") incurred by the Debtors and the Creditors' Committee appointed in the Cases (exclusive of success fees or transaction fees of similar type of nature which are addressed and specified below), in each case to the extent approved by the Court at any time, in an aggregate amount not to exceed the amount of such unpaid Professional Fees incurred prior to the delivery of a Carve-Out Termination Notice (the "Pre-Trigger Amount Professional Fees"), whether or not such fees are allowed prior to or after delivery of a Carve-Out Termination Notice; (b) up to a maximum amount of $2,500,000 of Professional Fees (exclusive of such fees described in clause (c) immediately following this clause (b)) accrued or incurred following the delivery of a Carve-Out Termination Notice in each case to the extent allowed by the Court at any time; (c) all amounts earned by Rothschild & Co US Inc. ("Rothschild & Co") as a Minority M&A Transaction Fee, a Control M&A Transaction Fee, or a New Capital Fee (in each case, as defined in that certain Letter Agreement, dated as of April 8, 2022, by and between Rothschild & Co and the Borrower, as amended by that certain Amendment to Letter Agreement, dated as of August 9, 2022), in each case to the extent allowed by the Court at any time, provided that such amounts, other than the New Capital Fee on account of the DIP Facility, (x) are earned in respect of a transaction implemented through a chapter 11 plan or sale of assets pursuant to section 363 of the Bankruptcy Code, including through a credit bid by the Prepetition Secured Parties, the DIP Agent (on behalf of the DIP Lenders) or any of the DIP Lenders, or (y) are otherwise supported by the

Requisite DIP Lenders and the Requisite Prepetition Lenders (clauses (b) and (c), the "Wind-Down Carve-Out Amounts"); (d) fees assessed pursuant to 28 U.S.C. Section 1930(a)(6); (e) fees due the Clerk of Court; and (f) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $50,000. As used in this Interim Order, the term "Carve-Out Termination Notice" means the DIP Agent's delivery (and, following the Facility Termination Date, the Prepetition Agent's delivery) of a written notice to the Debtors, the U.S. Trustee and counsel to the Creditors' Committee (if appointed) following the occurrence and during the continuation of a Termination Event, expressly stating that the Wind-Down Carve-Out Amounts are invoked. Upon the Debtors' receipt of a Carve-Out Termination Notice, the Wind-Down Carve-Out Amounts and any Pre-Trigger Amount Professional Fees not yet paid or disbursed to the applicable professional (including reasonably estimated fees not yet allowed for the period through and including the date of the Carve-Out Termination Notice) (collectively, the "Carve-Out Fees") shall immediately be funded in an escrow account (the "Carve-Out Escrow") with an escrow agent selected by the Debtors and approved by the DIP Agent and the Prepetition Agent (which such approval shall not be unreasonably withheld, conditioned or delayed) pursuant to an escrow agreement reasonably acceptable to the DIP Agent and the Prepetition Agent, from any and all available Cash Collateral or cash held by the Debtors and, if the then-available cash and Cash Collateral is not sufficient to cover the Carve-Out Fees, the first proceeds from the sale or sales of the DIP Collateral until the Carve-Out Fees are fully funded into the Carve-Out Escrow. The Carve-Out Escrow shall be subject to a first-priority lien securing the Carve-Out Fees, a second-priority lien securing the DIP Obligations and a third-priority lien securing the Adequate Protection Superpriority Claims. Notwithstanding anything to the contrary herein, upon the delivery of a Carve-Out Termination Notice, the DIP Agent (and, following the

Facility Termination Date, the Prepetition Agent) shall be required to transfer cash that it sweeps, receives or forecloses upon at all times from and after the delivery of a Carve-Out Termination Notice into the Carve-Out Escrow until such time as the Carve-Out Fees have been fully funded into the Carve-Out Escrow; *provided* that prior to the funding of the Carve-Out Escrow the Debtors shall provide the DIP Agent and the Prepetition Agent with such information and supporting documents as the DIP Agent and the Prepetition Agent may reasonably request to confirm the amount of the Carve-Out Fees.   For the avoidance of doubt, upon delivery of a Carve-Out Termination Notice, in no instance shall any DIP Obligations or Prepetition Obligations be repaid until the Carve-Out Escrow is fully funded or as further set forth in other order(s) of the Court. So long as no Carve-Out Termination Notice has been delivered, the Debtors shall be permitted to pay compensation and reimbursement of expenses to third-party professionals allowed and payable under sections 330 and 331 of the Bankruptcy Code, but solely as allowed at any time by the Court, regardless of whether allowed by interim order, procedural order or otherwise; *provided*, that, for the avoidance of doubt, the payment of such compensation and reimbursement of such expenses prior to the delivery of a Carve-Out Termination Notice shall not reduce the applicable Wind-Down Carve-Out Amount. No portion of the Carve-Out may be used in contravention of the restrictions or the limitations on the use of the Carve-Out set forth in this Interim Order.

(ii)      *No Direct Obligation to Pay Professional Fees.* The DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any third-party professionals incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders or the Prepetition Secured Parties in any way to pay compensation to or to reimburse

expenses of any third-party professionals, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(iii)    *Payment of Carve-Out After Carve-Out Termination Notice.* Any payment or reimbursement made on or after the date of the delivery of the Carve-Out Termination Notice in respect of any Carve-Out Fees accrued or incurred after delivery of the Carve-Out Termination Notice shall permanently reduce the applicable component of the Carve-Out Fees on a dollar-for-dollar basis. For the avoidance of doubt, payment or reimbursement of Wind-Down Carve-Out Amounts shall reduce the component of the Carve-Out relating to Wind-Down Carve-Out Amounts, and any payment or reimbursement of Pre-Trigger Amount Professional Fees shall reduce the component of the Carve-Out relating to Pre-Trigger Amount Professional Fees.

38.    <u>Limitations on Use of DIP Proceeds, Cash Collateral and Carve-Out</u>. No loans and/or proceeds from the DIP Facility, DIP Collateral, Cash Collateral (including any retainer held by any professionals for the below-referenced parties), Prepetition Collateral, or any portion of the Carve-Out may be used by any Debtor, the Creditors' Committee (if appointed) or trustee or other estate representative appointed in the Cases or any Successor Cases, or any other person, party, or entity (including any of the Debtors' professionals, the Creditors' Committee's professionals or the individual members of the Creditors' Committee) to: (i) investigate (except as set forth below) or prosecute any challenge (including any litigation or other action) in connection with the value of the Prepetition Collateral or the DIP Collateral (or to pay any professional fees and disbursements incurred in connection therewith) at any time; (ii) (a) request or seek authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from the DIP Agent and DIP Lenders, (b) request or seek any modification to this Interim Order not approved by the DIP Agent and, to the extent

such modification would affect the rights of any of the Prepetition Secured Parties, the Prepetition Agent or (c) pay any professional fees and disbursements incurred in connection with any of the foregoing; or (iii) investigate (except as set forth below), assert, join, commence, support, or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, any or all of the DIP Agent, DIP Lenders or Prepetition Secured Parties, their respective affiliates, assigns or successors and the respective officers, directors, employees, agents, attorneys, representatives and other advisors of the foregoing, with respect to any transaction, occurrence, omission, action, or other matter (including formal or informal discovery proceedings in anticipation thereof), including, without limitation, (a) any challenges and any avoidance actions or other actions arising under chapter 5 of the Bankruptcy Code, (b) any action with respect to the validity, enforceability, priority, extent or amount of the DIP Obligations and/or the Prepetition Obligations, or the validity, extent, and/or priority of the DIP Liens, the Prepetition Liens, or the Prepetition Secured Parties Adequate Protection Liens, (c) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, (I) the DIP Liens, the Prepetition Liens, the Prepetition Secured Parties Adequate Protection Liens or any other adequate protection provided to the Prepetition Secured Parties pursuant to the terms of this Interim Order or the Final Order or (II) any of the DIP Obligations or the Prepetition Obligations, (d) subject to the right of the Debtors to seek an emergency hearing as permitted in paragraph 28, any action seeking, or having the effect of, preventing, hindering, or otherwise delaying (I) the DIP Agent's assertion, enforcement, or realization on the Cash Collateral or the DIP Collateral in accordance with the DIP Documents or this Interim Order, as applicable, or (II) the Prepetition Agent's assertion, enforcement, or realization on the Cash

Collateral, the Prepetition Secured Parties Adequate Protection Liens or the Prepetition Collateral in accordance with the Prepetition Credit Documents or this Interim Order, as applicable, (e) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any or all of the DIP Agent, DIP Lenders and Prepetition Secured Parties hereunder or under the DIP Documents or the Prepetition Credit Documents, as applicable, or any payments made thereunder or in respect thereof, or (f) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral or Prepetition Collateral, unless otherwise permitted hereby or by the DIP Documents, without the prior written consent of the DIP Agent, at the direction of the Requisite DIP Lenders, and the Prepetition Agent, at the direction of the Requisite Prepetition Lenders. Notwithstanding the foregoing, up to $50,000 in the aggregate of the Carve-Out, any DIP Collateral, any Prepetition Collateral, any Cash Collateral and proceeds of the DIP Facility may be used by the Creditors' Committee (if appointed) to investigate (but not to draft, file or prosecute claims or challenges relating to) the claims and/or liens of the Prepetition Secured Parties under the Prepetition Credit Documents (but not the claims and/or liens of the DIP Agent and DIP Lenders) so long as such investigation occurs within the Challenge Period (as defined herein).

39.     <u>Payment of Compensation</u>. Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any third-party professionals or shall affect the right of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.

40.     <u>Reservation of Certain Third-Party Rights and Bar of Challenges and Claims</u>.

(a)     The findings set forth in this Interim Order and the Debtors' Stipulations shall be binding upon the Debtors in all circumstances upon entry of this Interim Order. Nothing in this Interim Order or the DIP Documents shall prejudice the rights in any of the Cases of the

Creditors' Committee (if appointed), a successor trustee and any other party-in-interest with requisite standing other than the Debtors, to seek to object to or to challenge (collectively, a "Challenge") the findings set forth in this Interim Order or the Debtors' Stipulations, including, but not limited to those in relation to: (i) the amount, validity, extent, priority, or perfection of the mortgage, security interests, and liens of the Prepetition Agent with respect to the Prepetition Collateral; (ii) the validity, allowability and priority of the Prepetition Obligations, subject to the terms of this paragraph 40; and (iii) the releases set forth in the Debtors' Stipulations. A party, including the Creditors' Committee (if appointed), must commence, as appropriate, a contested matter or adversary proceeding raising a Challenge, including, without limitation, any claim against the Prepetition Secured Parties in the nature of a setoff, counterclaim or defense to the Prepetition Obligations, respectively: (a) with respect to the Creditors' Committee (if appointed), the earlier of (i) sixty (60) calendar days from the formation of the Creditors' Committee and (ii) ninety (90) calendar days from the entry of this Interim Order, and (b) with respect to any other party-in-interest (other than the Debtors) with requisite standing, seventy-five (75) calendar days from the entry of this Interim Order (the "Challenge Period"); *provided*, that the filing of a motion by the Committee or any other party in interest seeking standing to commence a Challenge prior to the applicable deadline shall toll such deadline for such party for a period of 45 days from the filing of the motion; and *provided*, *further*,  that any trustee that is appointed in any Case or in any Successor Case prior to the expiration of the Challenge Period shall have until the later of the expiration of the Challenge Period or twenty (20) days after such trustee's appointment to assert a Challenge; and *provided*, *further*, that the Challenge Period may be extended with respect to a particular party with the written consent of the Prepetition Agent. Only the Challenges expressly raised in a motion and/or complaint filed within the Challenge Period shall be preserved, and the

prosecution of such Challenges shall be limited to such person(s) having filed such motion or complaint. The applicable Challenge Period may only be extended: (I) with the written consent of the Debtors and the Prepetition Agent; (II) by the Court after notice and hearing granting a motion filed by a party with requisite standing prior to the expiration of the Challenge Period; (III) by the Court on its own initiative after notice and hearing prior to the expiration of the Challenge Period; and (IV) pursuant to the tolling provided in the preceding sentence. Nothing in this Interim Order shall, or shall be construed to, grant standing on any party-in-interest, including the Creditors' Committee (if appointed), to bring any Challenge. The failure of any party in interest, including the Creditors' Committee (if appointed), to obtain an order of this Court during the Challenge Period granting standing to bring any Challenge shall not be a defense to failing to commence a Challenge during the Challenge Period as required under this paragraph 40 or to require or permit an extension of the Challenge Period. Upon the expiration of the applicable Challenge Period: (A) any and all Challenges by any party (including, without limitation, any Creditors' Committee (if appointed), any chapter 11 trustee, and/or any examiner appointed in these Cases, and any chapter 7 trustee and/or examiner appointed in any Successor Case) to any of the findings set forth in this Interim Order or the Debtors' Stipulations shall be deemed to be forever waived and barred, other than those Challenges specifically and timely asserted during the Challenge Period (a "Timely Filed Challenge"); _provided_, that the Challenges asserted in any such Timely Filed Challenge shall be preserved only with respect to the person who filed such Timely Filed Challenge; (B) all of the findings set forth in this Interim Order and the Debtors' Stipulations (including all waivers, releases, affirmations and other stipulations as to the priority, extent, and validity of the Prepetition Secured Parties' claims, liens, and interests, of any nature, under the Prepetition Credit Documents, or otherwise incorporated or set forth in this Interim Order and the representations by the Debtors

that they have no claims or causes of action against the Prepetition Secured Parties) shall be of full force and effect and forever binding upon all creditors, interest holders, and other parties-in-interest in these Cases and any Successor Cases other than those persons who filed a Timely Filed Challenge; _provided_, that all findings set forth in this Interim Order and all of the Debtors' Stipulations other than those subject to a Timely Filed Challenge shall be binding on such persons; and (C) upon the entry of a final, non-appealable order dismissing, overruling or denying any Timely Filed Challenge, all of the findings in this Interim Order and all of the Debtors' Stipulations (including all waivers, releases, affirmations and other stipulations as to the priority, extent, and validity of the Prepetition Secured Parties' claims, liens, and interests, of any nature, under the Prepetition Credit Documents, or otherwise incorporated or set forth in this Interim Order and the representations by the Debtors that they have no claims or causes of action against the Prepetition Secured Parties) shall be of full force and effect and forever binding upon the person bringing such overruled or denied Timely Filed Challenge. For the avoidance of doubt, any trustee appointed or elected in these Cases shall, until the expiration of the Challenge Period for asserting challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgements, admissions, confirmations and stipulations of the Debtors in this Interim Order.  In the event of a Challenge, the Prepetition Agent and Prepetition Lenders shall be entitled to payment of the reasonable and documented related costs and expenses, included but not limited to reasonable and documented attorneys' fees, incurred in connection with defending itself or themselves in any such proceeding as adequate protection unless such Challenge is successful.

Upon a successful Challenge brought pursuant to this paragraph, the Court may fashion any appropriate remedy related to any such previously paid costs and expenses.

(b)      *Reservation Regarding Committee Standing*.    Nothing herein shall limit the Committee's ability to (x) file a timely standing motion in respect of any timely Challenge for which it cannot obtain standing as a matter of law because the applicable Debtor is a limited liability company (an "LLC Challenge Motion"), and (y) seek pursuant to such LLC Challenge Motion a mechanism by which to prosecute such Challenge, provided that the Committee otherwise satisfies the requirements set forth in this paragraph 40.  In the event the Committee files a timely LLC Challenge Motion for which it cannot obtain standing, and provided that the Committee otherwise satisfies the requirements set forth in this paragraph 40, the expiration of the Challenge Deadline solely for the specific Challenge set forth in the LLC Challenge Motion, and solely as to the defendant(s) named therein, shall be tolled pending further order of the Court, and applicable parties shall meet and confer with respect to an appropriate process (if any) for the prosecution of any such Challenge.

41.    No Third-Party Rights. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

42.    Parties Including Trustees; Bankruptcy Court Proceedings. The DIP Liens, DIP Superpriority Claim, Adequate Protection Liens, Adequate Protection Superpriority Claims and all other rights and privileges created by or pursuant to this Interim Order or the DIP Documents shall be binding upon each of the Debtors and their estates, the Creditors' Committee (if appointed) and any trustee, other estate representative or any successor in interest of the Debtors in the Cases or any Successor Cases. This Interim Order and the DIP Documents shall be binding upon, and

inure to the benefit of, the successors of the DIP Agent, any DIP Lender and their respective assigns, transferees and endorsees. The DIP Liens and Adequate Protection Liens shall be and remain valid and perfected in the event of the substantive consolidation or conversion of the Cases or any Successor Case to a case under chapter 7 of the Bankruptcy Code or in the event of dismissal of the Cases or the release of any DIP Collateral from the jurisdiction of the Court for any reason, without the necessity that the DIP Agent or the Prepetition Agent file financing statements or otherwise perfect its liens under applicable law. No Debtor may assign, transfer, hypothecate or otherwise convey its rights, benefits, obligations or duties hereunder or under any of the DIP Documents without the prior express written consent of the DIP Agent and the DIP Lenders. Any such purported assignment, transfer, hypothecation or other conveyance by any Debtor without the prior express written consent of the DIP Agent and the DIP Lenders shall be void.

43.    Section 506(c) Claims. Subject to and effective upon entry of a Final Order granting the waiver set forth in this paragraph, no costs or expenses of administration which have been or may be incurred in the Cases or any Successor Case at any time shall be charged against the DIP Agent, DIP Lenders or Prepetition Secured Parties, or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the DIP Agent, DIP Lenders or Prepetition Secured Parties, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

44.    Lenders Not Responsible Persons.    In (a) making the decision to make the loans under the DIP Facility and consent to the use of Cash Collateral, as applicable, (b) administering the DIP Facility and the extensions of credit made thereunder, (c) extending other financial accommodations to the Debtors under the DIP Documents, and (d) making the decision to collect

the indebtedness and obligations of the Debtors, neither the DIP Agent nor any DIP Lender nor any Prepetition Secured Party shall be considered to (x) owe any fiduciary obligation to the Debtors or any other party with respect to their exercise of any consent or other rights afforded them under the DIP Documents, this Interim Order or the Final Order or (y) be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law, including without limitation, any environmental law (including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, *et seq.*, and the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, *et seq.*, as either may be amended from time to time, or any similar federal or state statute) or any federal or state labor law or statute.

45.    <u>Limits on Liability.</u>    Nothing in this Interim Order, the Final Order or in any of the DIP Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, any DIP Lender, the Prepetition Agent or any other Prepetition Secured Party of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts or the cessation of their business operations or any portion thereof or any sale of all or a substantial portion of their assets.

46.    <u>Transaction Milestone</u>. It shall be a Termination Event if the Debtors fail to adhere to any of the following milestones with respect to the refinance of the DIP Obligations and Prepetition Obligations and/or the sale of all or substantially all of their assets (collectively, the "<u>Transaction Milestone</u>"):

(a)    within 105 days after the Petition Date, (x) deliver to the DIP Agent and Prepetition Agent fully-executed and bona fide commitment papers (in form and substance

reasonably acceptable to the DIP Agent), from a third party investor (or group of investors) with the financial wherewithal to consummate the transaction, in respect of a credit facility, equity investment, or other investment or financing that would, upon closing (and in any event prior to the Facility Termination Date under the DIP Facility), provide for the payment in full in cash of the DIP Obligations and Prepetition Obligations (any such credit facility, equity investment, or other investment or financing, an "Acceptable Financing") or (y) have filed a bid procedures motion in form and content reasonably acceptable to the DIP Agent and the Prepetition Agent seeking authority to (A) designate a "stalking horse" reasonably acceptable to the DIP Agent and the Prepetition Agent, (B) establish bidding procedures and (C) set a date for an auction within 75 days thereafter (such motion, the "Bid Procedures Motion"); *provided*, that if the Debtors have obtained fully-executed commitment papers for Acceptable Financing and after the Transaction Milestone such commitment is terminated or rescinded, then the Debtors would promptly, and in any event within 14 days thereafter, file the Bid Procedures Motion;

(b)     within 30 days after filing the Bid Procedures Motion (in the event it is required to be filed as provided above), have obtained an order in form and content reasonably acceptable to the DIP Agent and the Prepetition Agent approving the Bid Procedures Motion; and

(c)     in the event that a Bid Procedures Motion has been filed, have consummated a Sale Transaction consistent with the Bid Procedures Motion no later than fourteen (14) days prior to the outside date set forth in clause (d) of the definition of "DIP Facility Maturity Date" in the DIP Credit Agreement.

It shall be a Termination Event if any Debtor seeks or supports, directly or indirectly, the entry of any order that provides for either the sale of the stock of the Debtors or the sale of all or substantially all of the assets of any Debtor under section 363 of the Bankruptcy Code (such sale, a "Sale Transaction") to any party unless (a)(i) the Requisite DIP Lenders and the Requisite Prepetition Lenders consent or (ii) the Sale Transaction or the net proceeds thereof are sufficient to pay in full in cash the DIP Obligations and the Prepetition Obligations and (b) the order approving such sale provides that the sale proceeds shall be distributed in accordance with the DIP Documents, the Prepetition Credit Documents, this Interim Order, the Final Order and the order approving such Sale Transaction at the closing of such sale.  In addition to the reporting required under the Prepetition Credit Agreement and the DIP Credit Agreement, the Debtors shall provide or cause to be provided to the DIP Agent and the Prepetition Agent a weekly report from Rothschild & Co (or the Debtors' investment banker) and the management team of the Debtors (with any written reports being in form and substance reasonably satisfactory to the DIP Agent and the Prepetition Agent), which report shall address such items as are reasonably requested by the DIP Agent and the Prepetition Agent, including addressing the status of the marketing and sale process of the Debtors. Any non-legally privileged written materials prepared or produced by Rothschild & Co (or the Debtors' investment banker) for any of the Debtors shared with the DIP Agent and the Prepetition Agent may be shared with the DIP Lenders and the Prepetition Lenders, respectively. The Debtors shall also cause their management team and Rothschild & Co (or the Debtors' investment banker) to provide periodic telephonic updates of such reports to the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Lenders from time to time (but not less frequently than weekly unless agreed to by the DIP Agent), as reasonably requested by the DIP Agent.

47.    <u>No Marshaling/Applications of Proceeds</u>. Subject to and effective upon entry of a Final Order providing for the waiver set forth in this paragraph, the DIP Agent, DIP Lenders and Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Interim Order and the DIP Documents notwithstanding any other agreement or provision to the contrary.

48.    <u>Section 552(b)</u>. Subject to and effective upon entry of a Final Order providing for the waiver set forth in this paragraph, the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552 of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

49.    <u>No Discharge; Survival of Claims</u>. The DIP Obligations shall not be discharged by the entry of an order confirming a plan of reorganization, compromise or arrangement in any of the Cases (notwithstanding the provisions of section 1141(d)(4) of the Bankruptcy Code) except to the extent paid-in-full in cash in connection therewith, converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, or dismissing any of the Cases, or withdrawing the reference in any of the Cases or any Successor Case, or terminating the joint administration of the Cases or any Successor Cases.  The DIP Superpriority Claim and the DIP Liens granted to the DIP Agent and the DIP Lenders, as applicable, and the Adequate Protection Liens and the Adequate Protection Superpriority Claims granted to the Prepetition Secured Parties and the Arizona Mechanics' Lienholders pursuant to this Interim Order shall not be affected in any manner by the entry of an order confirming a plan of reorganization or liquidation in the Cases or any Successor

Case (except to the extent paid-in-full in cash in connection therewith, including on the effective date of any such plan).

50.    <u>Waiver of any Priming Rights</u>. Without in any way limiting the rights of the DIP Agent and the DIP Lenders under paragraph 6 herein, except with the prior written consent of the DIP Agent and the Prepetition Agent, as applicable, it shall be a Termination Event if any Debtor seeks or supports, directly or indirectly, the entry of any order that provides for the grant of any lien of equal or greater priority than the liens securing the DIP Obligations and the Prepetition Obligations, or that approves of a claim of equal or greater priority than the DIP Obligations and the Prepetition Obligations, except as expressly provided in this Interim Order.

51.    <u>Joint and Several Liability</u>. Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Documents.

52.    <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the DIP Agent's, DIP Lenders' and Prepetition Secured Parties' respective rights: (a) to seek any other or supplemental relief in respect of the Debtors under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (b) any other rights, claims or privileges (whether legal, equitable or otherwise). Except as otherwise specifically set forth herein,

entry of this Interim Order is without prejudice to any and all rights of any party in interest with respect to the terms and approval of the Final Order and any other position which any party in interest deems appropriate to raise in the Cases.

53.     No Waiver by Failure to Seek Relief. The failure of the DIP Agent, DIP Lenders or Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, the Prepetition Credit Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, DIP Lenders, Prepetition Secured Parties, Creditors' Committee (if appointed) or any party in interest.

54.     Binding Effect of Interim Order. Immediately upon this Court's entry of this Interim Order, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, DIP Agent, DIP Lenders, Prepetition Secured Parties, all other creditors of any of the Debtors, any Creditors' Committee (or any other court appointed committee) appointed in the Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

55.     Debtors' Waivers With Respect to Modification of Interim Order. It shall be a Termination Event if any Debtor seeks or supports, directly or indirectly: (a) without the prior written consent of the DIP Agent (at the direction of the Requisite DIP Lenders) and the Prepetition Agent (at the direction of the Requisite Prepetition Lenders), as applicable, (i) the entry of any order reconsidering, modifying, staying, vacating or amending this Interim Order, or (ii) the entry of any order granting a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without

limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claim or the Prepetition Secured Parties Adequate Protection Superpriority Claim, other than the Carve-Out; (b) without the prior written consent of the DIP Agent (at the direction of the Requisite DIP Lenders) and the Prepetition Agent (at the direction of the Requisite Prepetition Lenders under the Prepetition Credit Agreement), the entry of any order (other than the Final Order) allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) derived from DIP Collateral or Prepetition Collateral; (c) without the prior written consent of the DIP Agent (at the direction of the Requisite DIP Lenders under the DIP Credit Agreement), the granting of any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents; or (d) without the prior written consent of the Prepetition Agent (at the direction of the Requisite Prepetition Lenders), the granting of any lien on any of the DIP Collateral with priority equal or superior to the Prepetition Liens or Prepetition Secured Parties Adequate Protection Liens (other than the DIP Liens). The prior written consent of the DIP Agent or the Prepetition Agent shall not be implied by any other action, inaction or acquiescence of the DIP Agent or the Prepetition Agent, as applicable.

56.    _Interim Order Controls_. In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

57.    _Survival_. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization or liquidation in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which

this Court abstains from hearing any of the Cases or Successor Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Agent, DIP Lenders and Prepetition Secured Parties granted pursuant to this Interim Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until the Consummation Date. The terms and provisions concerning the indemnification of the DIP Agent and DIP Lenders, and any other terms or provisions contained in the DIP Facility which survive the repayment and discharge of the DIP Facility, shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Documents and/or repayment in full and discharge of the DIP Obligations.

58.    <u>Final Hearing</u>. The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for **<u>November 9, 2022 at 10:00 a.m. (Eastern Time), U.S. Courthouse, 299 E. Broward Boulevard, Courtroom 301, Fort Lauderdale, FL 33301</u>**. Within forty-eight (48) hours of the entry of this Interim Order, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim Order, the proposed Final Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for the Creditors' Committee (if appointed); and (d) the Internal Revenue Service. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than **<u>November 4, 2022 at 4:30 p.m. (Eastern Time)</u>**, which objections shall be served so as to be received on or

before such date by: (i) the Debtors, c/o Vital Pharmaceuticals, Inc., 1600 N. Winter Park Drive, Weston FL 33326, Attn: Frank Massabki (frank.massabki@bangenergy.com); (ii) proposed counsel to the Debtors: (A) Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004, Attn: Andrew Sorkin (andrew.sorkin@lw.com) and Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: Jeramy Webb (jeramy.webb@lw.com) and Whit Morley (whit.morley@lw.com), and (B) Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: Jordi Guso (JGuso@bergersingerman.com) and Michael Niles (mniles@bergersingerman.com); (iii) counsel to the DIP Agent and the Prepetition Agent, (A) Moore & Van Allen PLLC, 100 N. Tryon St., Suite 4700, Charlotte, NC 28202, Attn: Luis M. Lluberas (luislluberas@mvalaw.com) and Steve Gruendel (stevegruendel@mvalaw.com) and (B) Shutts & Bowen LLP, 200 South Biscayne Blvd., Ste. 4100, Miami, FL 33131, Attn: Aliette D. Rodz (ARodz@shutts.com) and Peter Levitt (PLevitt@shutts.com); and (iv) the Office of the United States Trustee, 51 S.W. First Avenue, Room 1204, Miami, FL 33130.

59.    Although the Court will conduct the Final Hearing in person, any interested party may choose to attend the Final Hearing remotely using the services of Zoom Video Communications, Inc. ("Zoom"), which permits remote participation by video or by telephone, if the judge's procedures allow. To participate in the Final hearing remotely via Zoom (whether by video or by telephone), you must register in advance no later than 3:00 p.m., one business day before the date of the hearing. To register, click on or manually enter the following registration link in a browser:

https://www.zoomgov.com/meeting/register/vJItcOqurD4qHUbwAimENeAkZ7QUKGhcZ7k

60.     All participants (whether attending in person or remotely) must observe the formalities of the courtroom, exercise civility, and otherwise conduct themselves in a manner consistent with the dignity of the Court. This includes appropriate courtroom attire for those participants appearing in person or by video.

61.     PLEASE NOTE: No person may record the proceedings from any location by any means. The audio recording maintained by the Court will be the sole basis for creation of a transcript that constitutes the official record of the hearing.

62.     _Nunc Pro Tunc_ Effect of this Interim Order. This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable _nunc pro tunc_ to the Petition Date immediately upon execution thereof.

63.     Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

#  #  #

Submitted by:
Jordi Guso, Esq.
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email: jguso@bergersingerman.com
Email: mniles@bergersingerman.com

(_Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service._)

**Exhibit A**

**Approved Budget**

**Vital Pharmaceuticals, Inc.**
Weekly Cashflow_DIP budget

($ in millions)

BK Filing 10/10/22

| Week Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total 13-Week |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Actual/Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast |
| Week Ending | Oct-22 10/14/22 | Oct-22 10/21/22 | Oct-22 10/28/22 | Nov-22 11/04/22 | Nov-22 11/11/22 | Nov-22 11/18/22 | Nov-22 11/25/22 | Dec-22 12/02/22 | Dec-22 12/09/22 | Dec-22 12/16/22 | Dec-22 12/23/22 | Dec-22 12/30/22 | Jan-23 01/06/23 | 10/08 to 01/06 |
| **Receipts** | | | | | | | | | | | | | | |
| Customer Receipts | $ 3.5 | $ 7.3 | $ 7.3 | $ 9.6 | $ 9.6 | $ 9.5 | $ 9.1 | $ 8.3 | $ 8.1 | $ 8.1 | $ 8.1 | $ 6.9 | $ 7.6 | $ 103.0 |
| Other Receipts | - | - | 1.0 | - | - | 0.7 | - | - | - | 0.7 | - | - | - | 2.3 |
| **Total Operating Receipts** | $ 3.5 | $ 7.3 | $ 8.3 | $ 9.6 | $ 9.6 | $ 10.2 | $ 9.1 | $ 8.3 | $ 8.1 | $ 8.8 | $ 8.1 | $ 6.9 | $ 7.6 | $ 105.4 |
| DIP Draw | - | 10.0 | 5.0 | 19.0 | - | - | - | 6.0 | - | 3.0 | - | 1.0 | 9.0 | 53.0 |
| **Total Receipts** | $ 3.5 | $ 17.3 | $ 13.3 | $ 28.6 | $ 9.6 | $ 10.2 | $ 9.1 | $ 14.3 | $ 8.1 | $ 11.8 | $ 8.1 | $ 7.9 | $ 16.6 | $ 158.4 |
| **Disbursements** | | | | | | | | | | | | | | |
| Material costs | (0.1) | (3.6) | (3.6) | (3.6) | (0.1) | (0.2) | (0.1) | (0.9) | (2.0) | (2.0) | (2.0) | (1.6) | (1.1) | (21.0) |
| Co-Packers | (0.4) | (1.1) | (1.1) | (0.8) | (0.1) | (0.2) | (0.1) | (0.4) | (0.7) | (0.7) | (0.7) | (0.5) | (0.4) | (7.1) |
| Freight & handling | (1.1) | (3.4) | (3.4) | (3.3) | (1.0) | (1.3) | (1.0) | (1.7) | (2.3) | (2.3) | (2.3) | (1.9) | (1.4) | (26.7) |
| Employee expenses | (0.5) | (4.6) | (0.5) | (4.5) | (0.5) | (0.5) | (0.5) | (0.5) | (0.5) | (4.4) | (0.5) | (0.5) | (0.6) | (30.1) |
| Trade promotion | (0.2) | (2.6) | (2.6) | (2.6) | (2.5) | (0.2) | (0.2) | (0.2) | (0.3) | (0.3) | (0.3) | (4.2) | (2.5) | (12.5) |
| Facility/Office expenses | (0.7) | (1.9) | (0.7) | (2.5) | (0.6) | (0.7) | (0.7) | (4.5) | (0.5) | (0.6) | (0.6) | (0.4) | (0.6) | (16.8) |
| Marketing | (0.1) | (0.5) | (0.7) | (0.6) | (0.6) | (0.3) | (0.2) | (0.2) | (0.3) | (0.2) | (0.3) | (0.4) | (1.0) | (4.8) |
| Legal expenses | (0.1) | (0.1) | (0.3) | (0.7) | (0.1) | (0.1) | (0.1) | (0.7) | (0.2) | (0.1) | (0.2) | (0.2) | - | (0.3) |
| Other | (1.5) | (1.5) | (1.5) | (1.5) | (1.5) | (1.5) | (1.5) | (1.5) | (1.5) | (1.5) | (1.5) | (1.5) | (0.4) | (15.0) |
| Subtotal | | | | | | | | | | | | | | |
| **Total Operating Disbursements** | $ (4.8) | $ (19.3) | $ (13.7) | $ (19.4) | $ (6.5) | $ (8.8) | $ (4.1) | $ (14.3) | $ (8.0) | $ (11.0) | $ (7.1) | $ (9.6) | $ (7.6) | $ (134.2) |
| Operating cash flow | (1.2) | (12.0) | (5.4) | (9.8) | 3.0 | 1.4 | 5.0 | (5.9) | 0.1 | (2.3) | 1.0 | (2.7) | 0.0 | (28.8) |
| **Professional Fees & Employee Retention** | | | | | | | | | | | | | | |
| Professional Fees Escrow account | - | - | - | (4.7) | - | (1.0) | - | (4.6) | - | - | - | - | (4.7) | (14.9) |
| Retention Plans | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Subtotal** | $ - | $ - | $ - | $ (4.7) | $ - | $ (1.0) | $ - | $ (4.6) | $ - | $ - | $ - | $ - | $ (4.7) | $ (14.9) |
| **Debt Service** | | | | | | | | | | | | | | |
| Adequate protection payments | - | - | - | (4.1) | - | - | - | (3.0) | - | - | - | - | (2.6) | (9.7) |
| Interest/Fees on DIP | - | (2.8) | - | (0.2) | - | - | - | (1.4) | - | - | - | - | (1.9) | (6.3) |
| **Subtotal** | $ - | $ (2.8) | $ - | $ (4.3) | $ - | $ - | $ - | $ (4.4) | $ - | $ - | $ - | $ - | $ (4.5) | $ (15.9) |
| **Net Cash Flow / (Deficit)** | $ (1.2) | $ (4.8) | $ (0.4) | $ 0.2 | $ 3.0 | $ 0.4 | $ 5.0 | $ (8.8) | $ 0.1 | $ 0.7 | $ 1.0 | $ (1.7) | $ (0.2) | $ (6.7) |
| **Cash Balance** | | | | | | | | | | | | | | |
| Beginning Cash Balance | 10.8 | 9.5 | 4.8 | 4.4 | 4.6 | 7.6 | 8.0 | 13.0 | 4.1 | 4.2 | 4.9 | 5.9 | 4.3 | 10.8 |
| Ending Cash Balance | 9.5 | 4.8 | 4.4 | 4.6 | 7.6 | 8.0 | 13.0 | 4.1 | 4.2 | 4.9 | 5.9 | 4.3 | 4.1 | 4.1 |