UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 |
| Debtors.[1] _____/ | (Jointly Administered) |

### SUPPLEMENTAL DECLARATION OF JOHN C. DIDONATO IN SUPPORT OF THE UTILITY MOTION [ECF NO. 193]

Under 28 U.S.C. § 1746, John C. DiDonato hereby declares as follows under the penalty of perjury:

1. I am the Chief Transformation Officer of Vital Pharmaceuticals, Inc. ("VPX") and the other debtors and debtors in possession (together with VPX, the "Company" or the "Debtors") in the above-captioned cases (collectively, the "Chapter 11 Cases"). I am authorized by each of the Debtors to submit this declaration (the "Supplemental Declaration") on behalf of the Debtors.

2. To minimize any adverse effects on the Debtors' businesses as a result of the commencement of these Chapter 11 Cases, the Debtors previously requested various forms of relief through certain "first day" motions designed to, among other things: (a) continue the Debtors' operations while in chapter 11 with as little disruption as possible; (b) allow the Debtors to continue serving valued customers and operate their businesses pending a restructuring of the

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO GA-1 Investment, LLC (9025); (iv) JHO NV-1 Investment, LLC (6688); (v) JHO Intellectual Property Holdings, LLC (0010); (vi) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vii) Rainbow Unicorn Bev LLC (2254); (viii) Sheridan Real Estate Investment A, LLC (5536); (ix) Sheridan Real Estate Investment B, LLC (4005); (x) Sheridan Real Estate Investment C, LLC (1523); and (xi) Vital Pharmaceuticals International Sales, Inc. (8019).

Debtors; and (c) establish procedures for the smooth and efficient administration of the Chapter 11 Cases.

3. By this Supplemental Declaration in Support of the Utility Motion, I hereby adopt and affirm in its entirety the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* executed by myself on October 10, 2022 (ECF No. 26, the "<u>First Day Declaration</u>").

> ***Debtors' Motion for Entry of An Order (I) Prohibiting Utilities From Altering, Refusing, Or Discontinuing Services, (II) Deeming Utilities Adequately Assured Of Future Performance, And (III) Establishing Procedures for Determining Adequate Assurance of Payment, And Request for Waiver of Local Rule 9013-1(L)(2)(b) Requirement*** [the "<u>Utility Motion</u>", ECF No. 193]

4. The Debtors now seek additional relief to stabilize their operations, and are by this Utility Motion requesting the entry of order i) determining that the Debtors' Utility Providers have been provided with adequate assurance of payment within the meaning of 11 U.S.C. § 366; (ii) approving the Debtors' proposed adequate assurance and related procedures; (iii) prohibiting the Utility Providers from altering, refusing or discontinuing Utility Services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance; and (iv) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed in this Motion.

5. To operate their business and manage their facilities, the Debtors employ various utility services, including, but not limited to, electricity, natural gas, water/sewage, network/internet, waste removal, telephone and other services (each, a "**Utility Service**" and collectively, the "**Utility Services**") from a number of utility providers (each, a "**Utility Provider**" and collectively, the "**Utility Providers**").

6.      Prior to the Petition Date, the Debtor spent an average of approximately $628,297.91 each month on Utility Services from the Utility Providers. Certain Utility Providers have required the Debtors to post deposits to secure the Debtors performance of certain obligations. Specifically, **Exhibit A** to the Utility Motion reflects a total of $840,213.14 in deposits provided to twelve (12) of the Utility Providers. As set forth in the Utility Motion, the Debtors are proposing to deposit an additional Adequate Assurance Deposit of $179,952.58 which is equal to the approximate aggregate cost of two weeks of Utility Services, calculated using the historical average for such payments during the current calendar year 2022, and adjusted downwards per account by the available security deposit and/or surety bond for that particular account, provided by thirty-eight (38) of the Utility Providers servicing the Debtors' business into a segregated account to be opened at an institution that is an approved depository, for the benefit of the Utility Provides.

7.      Uninterrupted Utility Services are essential to the Debtors' business operations during the pendency of these chapter 11 cases. Should any Utility Provider discontinue, alter, or refuse service, even for a brief period, the Debtors' business operations could be severely disrupted, and such disruption could negatively affect the Debtors' customer relationships, revenue and profits and could jeopardize the Debtors' potential reorganization efforts. Accordingly, the Debtors seek to establish an orderly process for providing adequate assurance to their Utility Providers.

## CONCLUSION

8.      I have reviewed the Utility Motion, proposed order, and exhibits thereto (or have otherwise had their contents explained to me), and the facts set forth therein are true and correct to the best of my knowledge, information, and belief.  Moreover, I believe that the relief sought in the Utility Motion (a) is vital to enabling the Debtors to make the transition to, and operate in,

Chapter 11 with minimal interruptions and disruptions to the Debtors' businesses or loss of productivity or value; (b) is necessary preserve valuable relationships with Utility Providers; and (c) constitutes a critical element in the Debtors' ability to successfully maximize value for the benefit of their estates.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: October 26, 2022
[Miami, Florida]

John C. DiDonato
Chief Transformation Officer