UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842-PDR |
| Debtors. | (Jointly Administered)[1] |

**OBJECTION OF FAITH TECHNOLOGIES INCORPORATED TO DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Faith Technologies, Inc. ("FTI") files this objection (the "Objection") to the "*Debtors' Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*" (the "DIP Motion" and ECF No. 24). In support of the Objection, FTI states as follows:

I.  INTRODUCTION

1.  This Court granted the DIP Motion on an interim basis pursuant to Section IV of the

"*Court's Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking*

---

[1] The jointly administered debtors include the debtor in the instant case Vital Pharmaceuticals, Inc. as well as the debtors in the following cases: *In re Bank Energy Canada, Inc*., Case No. 22-17844-PDR, *In re JHO Intellectual Property Holdings, LLC*, Case No. 22-17845-PDR, *In re JHO Real Estate Investment, LLC*, Case No. 22-17847-SMG, *In re Quash Seltzer, LLC*, Case No. 22-17848-SMG, *In re Rainbow Unicorn Bev LLC*, 22-17849-SMG, and *In re Vital Pharmaceuticals International Sales, Inc*., Case No. 22-17850-PDR.

119335393.1

*Approval of Postpetition Financing*."

2. Notwithstanding the fact the FTI recorded and holds mechanics' liens valued at more than $3.5 million, and was a party to pending litigation with two Debtors, Debtors did not provide FTI with notice of the DIP Motion.

3. Having learned of the DIP Motion and the relief requested, FTI objects to the DIP Motion.

4. First, the proposed post-petition financing will impair FTI's liens by subordinating them to potentially hundreds of millions of dollars of liens.

5. Second, to the extent that Debtors are offering FTI adequate protection, it appears to be illusory and fails to compensate FTI for the loss of value resulting from the proposed post-petition financing.

6. Accordingly, and as more fully detailed below, FTI objects to the DIP Motion.

**II.    STATEMENT OF FACTS**

7. FTI recorded two Mechanics' Liens against certain real property located at 1635 S. 43rd Avenue, Phoenix, AZ 85009, APN 105-14-001Q (the "Property") in the combined amount of $3,584,788.15.

8. Vital Pharmaceuticals, Inc. and JHO Real Estate Investment, LLC (collectively, "Defendants") are respectively the tenant and owner of the Property, and are two of the jointly administered Debtors in these cases.

9. FTI's Mechanics' Liens arose from FTI's furnishing labor, materials, equipment and tools for improvements to the Property for a project known as the Bang Energy – Phoenix Can Manufacturing Facility (the "Project").

10. The first Mechanics' Lien concerns building electrical work that FTI performed on the Property. FTI furnished labor, materials, fixtures, equipment and/or tools for building electrical work

119335393.1

on the Project. On February 12, 2021, FTI served a preliminary 20-Day notice in accordance with A.RS. § 33-992.01 concerning amounts due and owing to it for the building electrical work performed on the Project. And on March 24, 2022, FTI timely recorded a valid Notice and Claim of Lien for labor, materials, fixtures, equipment and/or tools in the amount of $2,777,007.15 with the Maricopa County Recorder at Docket No. 2022-0266676.

11. The second Mechanics' Lien concerns process electrical work that FTI performed on the Property. FTI provided labor, materials, fixtures, equipment and/or tools for process electrical work on the Project. On November 30, 2021, FTI served a preliminary 20-Day notice in accordance with A.RS. § 33-992.01 concerning amounts due and owing to it for the process electrical work performed on the Project. And on March 24, 2022, FTI timely recorded a valid Notice of Claim of Lien for labor, materials, fixtures, equipment and/or tools in the amount of $807,781.00 with the Maricopa County Recorder at Docket No. 2022-0266675.

12. A Branch Banking deed of trust was recorded for the Property on September 24, 2019.

13. A Truist Bank deed of trust was recorded for the Property on December 14, 2020.

14. On July 12, 2022, Nexus Steel, LLC initiated a prepetition lien foreclosure action against the Property and the Defendants in Maricopa County Superior Court, Cause No. CV2022-008873 (the "Arizona Action"). The Defendants are represented by counsel in the Arizona Action.

15. FTI filed a Counterclaim, Cross-Claim and Third-Party Complaint in the Arizona Action on September 20, 2022 to foreclose its two Mechanics' Liens.

16. The following lien claims are asserted in the Arizona Action:

| Claimant | Amount |
|---|---|
| FTI | $3,584,788.15[2] |
| Nexus Steel, LLC | $313,512.91[3] |
| Fabco Metal Products, LLC | $2,160,783.76[4] |
| ISEC, Inc. | Unknown |
| Heavy Equipment Movers & Installation, Inc. | Unknown |
| Hardrock Concrete Placement Co., Inc. | $669,195.67[5] |
| Stellar Group, Inc. | $7,722,974.37[6] |
| Integrated Masonry | $145,637.30[7] |
| HACI Mechanical Contractors, Inc. | Unknown |
| Trench Shore Rentals | Unknown |
| Total | *$14,596,892.20* |

17. All lien claimants in the Arizona Action are represented by counsel.

18. On October 10, 2022, Debtors (including Defendants) commenced the instant case (the "Bankruptcy Case"). Defendants filed a notice of commencement of the Bankruptcy Case in the Arizona Action.

19. On the same day, Debtors filed the DIP Financing Motion in the Bankruptcy Case,

---

[2] Faith Technologies, Inc.'s Answer to Nexus Steel, LLC's Complaint and Faith Technologies, Inc.'s Counterclaim, Cross-Claims and Third-Party Complaint at 17-22, *Nexus Steel, LLC v. JHO Real Estate Investment, LLC et al*, Case. No. CV2022-008873. An accurate copy of the pleading filed in the Superior Court of Arizona in Maricopa County is attached as Exhibit # 5.

[3] Nexus Steel, LLC's Complaint at 4, *Nexus Steel, LLC v. JHO Real Estate Investment, LLC et al*, Case. No. CV2022-008873. An accurate copy is attached as Exhibit # 1. Nexus Steel, LLC also seeks to recover interest and fees in addition to the principal amount claimed.

[4] Fabco Metal Products, LLC's Counterclaim and Cross-Claims at 4, *Nexus Steel, LLC v. JHO Real Estate Investment, LLC et al*, Case. No. CV2022-008873. An accurate copy is attached as Exhibit # 2.

[5] Hardrock Concrete Placement Co., Inc.'s Answer, Counterclaim and Crossclaims at 9, *Nexus Steel, LLC v. JHO Real Estate Investment, LLC et al*, Case. No. CV2022-008873. An accurate copy is attached as Exhibit # 3.

[6] Stellar Group, Inc's Answer, Counterclaim, and Cross-Claims at 10-11, *Nexus Steel, LLC v. JHO Real Estate Investment, LLC et al*, Case. No. CV2022-008873. An accurate copy is attached as Exhibit # 4.

[7] Integrated Masonry's Answer, Counterclaim and Crossclaims at 9-10, *Nexus Steel, LLC v. JHO Real Estate Investment, LLC et al*, Case. No. CV2022-008873. An accurate copy is attached as Exhibit # 6.

119335393.1

without notice[8] to the Arizona Mechanics' Lienholders.[9]

20.   After this Court was asked to enter an interim order on DIP financing without notice to the Arizona Mechanics' Lienholders, a final hearing was scheduled. None of the Arizona Mechanics' Lienholders and none of their counsel were served with notice of the Interim Order or the final hearing.[10]

21.   To date, Debtors have not filed their schedules of assets and liabilities and there is no evidence in this Court's file of the value of the Property or Debtors' assets generally, or that value *vis a vis* creditors' secured and unsecured claims.

### III.   THE DIP FACILITY IMPAIRS THE ARIZONA MECHANICS' LIENHOLDERS BY SUBORDINATING THEIR SECURED LIENS TO APPROXIMATELY $454 MILLION

22.   In the DIP Motion, Debtors seek authority to enter into a DIP Facility under which Debtors will borrow $34,000,000 in interim financing and $454,770,201.56 under the Final Order.[11]

23.   Debtors assert they require post-petition financing to maintain business relationships with vendors, suppliers, and customers, pay employees, and otherwise finance operations.[12] Notably, no part of the post-petitioning financing is proposed to improve the Property.[13]

---

[8] The due process implications of an interim order entered without notice to known claimants are troubling. *See In re Ctr. Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir. 1985) (post-petition financing without due process notice void); *Suntrust Bank v. Denmark Construction, Inc.*, 406 B.R. 683, 688 (E.D.N.C. 2009) ("Credit extended or debt incurred under Code § 364(d)(1) requires that a court order be entered only after notice to current lienholders and a hearing.").

[9] The Arizona Mechanics' Lienholders are defined as "the interests of the holders of mechanics' liens and/or materialmen's liens arising under applicable Arizona law." *Interim Order (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* at 20 (the "Interim Order" and ECF No. 120).

[10] Compare Certificate of Service filed October 21, 2022, ECF No. 199.

[11] DIP Motion at 2.

[12] Interim Order at 11.

[13] DIP Motion at 100 (the "Approved Budget").

119335393.1

24. Further, the DIP Motion and the Interim Order contain numerous provisions that bless the validity and priority of the Prepetition Prior Liens to the detriment of the Arizona Mechanics' Lienholders. For instance, Debtors stipulate that the Prepetition Obligations[14] "constitute legal, valid, binding and non-avoidable obligations of the Prepetition Credit Parties …."[15] Debtors also stipulate that the Prepetition Secured Parties[16] have "a first-priority security interest and continuing lien … on substantially all of the [Debtors'] assets and properties …."[17] And Debtors stipulate that the "Prepetition Liens[18] are senior in priority over any and all other liens on the Prepetition Collateral, subject only to liens that are valid, properly perfected … non-avoidable, and senior in priority as a matter of law to the Prepetition Liens …." (collectively the "Prepetition Prior Liens").[19] FTI cannot determine with certainty whether the Prepetition Prior Liens include the Arizona Mechanics' Liens.

25. Debtors also grant Priming Liens under the DIP Facility. Debtors grant to the DIP Agent, for the benefit of itself and the DIP Lenders and subject only to the Carve-Out and the Prepetition Prior Liens, "automatically perfected security interests in and liens on all of the DIP Collateral …."[20] The Interim Order further provides that the DIP Liens "are valid, automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien, claim or interest to or on any of the DIP Collateral, except that the DIP Liens shall be junior only to: (a) the

---

[14] The "Prepetition Obligations" are defined as all Obligations in the Prepetition Credit Agreement. Interim Order at 7.
[15] Interim Order at 8.
[16] The "Prepetition Secured Parties" are defined as those lenders party to the Prepetition Facility, the Prepetition Agent, the Prepetition Swingline Lenders, and the Prepetition L/C Issuer. Interim Order at 6-7.
[17] Interim Order at 7.
[18] The "Prepetition Liens" are defined as the lien granted by the Prepetition Credit Parties to the Prepetition Secured Parties. Interim Order at 7.
[19] Interim Order at 8.
[20] Interim Order at 3. *See also* Interim Order at 16 ("[T]he DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted, against each of the Debtors on a joint and several basis, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens (collectively, the 'DIP Liens') on all real and personal property….").

119335393.1

Prepetition Prior Liens; (b) any permitted senior liens, if any, under the DIP Documents; and (c) the Carve-Out."[21]

26. The DIP Agent and the DIP Lenders are also granted an allowed, senior secured, super-priority administrative expense claim (the "DIP Superpriority Claim"), which is given priority over all administrative expense claims and unsecured claims against the Debtors, subject only to the Carve-Out.[22]

27. The Priming Liens and the provisions that bless the validity and priority of the Prepetition Prior Liens impair the Arizona Mechanics' Lienholders by subordinating their liens to approximately $454 million in DIP financing.

28. The Prepetition Prior Liens appear to be protected under the DIP Motion, in that the DIP Liens are expressly made junior to the Prepetition Prior Liens,[23] and the priority of the Prepetition Liens are also made subject to the Prepetition Prior Liens.[24] However, as currently drafted, the definition of Prepetition Prior Liens does not expressly include or sufficiently protect the Arizona Mechanics' Liens. In the Interim Order, the Prepetition Prior Liens are defined as "liens that are valid, properly perfected … non-avoidable, and senior in priority as a matter of law to the Prepetition Liens …."[25]

29. For avoidance of doubt, FTI asserts that the definition of Prepetition Prior Liens should be changed to expressly include the Arizona Mechanics' Liens as follows:

> Liens that are valid, properly perfected (before the Petition Date or in accordance with section 546 of the Bankruptcy Code), non-avoidable, and senior in priority as a matter of law to the liens securing the Prepetition Loans (including without limitation the liens and rights of setoff of banks and other financial institutions providing treasury services comprising the Debtors' cash management system, *and the Arizona Mechanics' Liens*.").

---

[21] Interim Order at 17.
[22] Interim Order at 17-18.
[23] Interim Order at 17.
[24] Interim Order at 8.
[25] Interim Order at 8. *See also* DIP Motion at 9.

119335393.1

IV. **THE ADEQUATE PROTECTION OFFERED TO THE ARIZONA MECHANICS' LIENHOLDERS MAY BE ILLUSORY**

30. Debtors may prime the Arizona Mechanics' Lienholders only where Debtors prove "the holder of the lien to be subordinated has adequate protection."[26]

31. Debtors purport to adequately protect the Arizona Mechanics' Lienholders by granting them "continuing valid, binding, enforceable and perfected postpetition security interests in and liens on the DIP Collateral (such liens, the 'Arizona Mechanics' Lienholders Adequate Protection Liens' and together with the Prepetition Secured Parties Adequate Protection Liens, the 'Adequate Protection Liens')."[27] There is no identification of the DIP Collateral, its value, or whether there is any equity in such property.

32. The Debtors' so-called protection is not adequate and may be illusory as the Adequate Protection Liens are expressly made junior to "(a) Prepetition Prior Liens; (b) the Carve-Out; (c) the DIP Liens; and (d) the Prepetition Liens."[28] This provision effectively subordinates the Arizona Mechanics' Lienholders Adequate Protection Liens to many hundreds of millions of dollars in liens. As noted previously, Prepetition Prior Liens are all those "liens that are valid, properly perfected … non-avoidable, and senior in priority as a matter of law to the Prepetition Liens …." The Carve-Out includes (a) the payment of unpaid professional fees, costs, and disbursements ("Professional Fees") incurred by the Debtors and the Creditors' Committee in the event of the occurrence and during the continuance of an Event of Default under the DIP Documents; (b) up to a maximum amount of $2,500,000 of Professional Fees accrued or incurred following the delivery of a Carve-Out Termination Notice; (c) all amounts earned by Rothschild & Co US Inc. as a Minority M&A Transaction Fee, a Control M&A Transaction Fee, or a New Capital Fee; (d) fees assessed pursuant to

---

[26] *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (citation omitted).
[27] Interim Order at 20.
[28] Interim Order at 20.

119335393.1

28 U.S.C. Section 1930(a)(6); (e) fees due the Clerk of Court; and (f) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $50,000.[29] The DIP Liens are the liens granted to the DIP Agent and DIP Lenders under the DIP Facility to secure interim financing of $34,000,000 and $454,770,201.56 under the Final Order.[30] And the Prepetition Liens refer to the liens granted to the Prepetition Secured Parties under the Prepetition Facility to secure $260,000,000 in aggregate principal amount of revolving commitments, and $231,400,000 in aggregate principal amount in a term loan facility.[31]

33. Additionally, the Prepetition Secured Parties Adequate Protection Liens are senior to the Arizona Mechanics' Lienholders Adequate Protection Liens.[32] The Prepetition Secured Parties Adequate Protection Liens are for an unknown and unlimited amount.

34. Debtors purport to grant the Arizona Mechanics' Lienholders further adequate protection in the form of, "[A]n allowed, super-priority administrative expense claim … (collectively, the 'Arizona Mechanics' Lienholders Superpriority Claim' and together with the Prepetition Secured Parties Adequate Protection Superpriority Claim, the 'Adequate Protection Superpriority Claims')."[33]

35. But this protection may again be illusory as the Arizona Mechanics' Lienholders Superior Priority Claims are junior to the Carve-Out, the DIP Superpriority Claim, and the Prepetition Secured Parties Adequate Protection Superpriority Claim.[34]

36. In sum, the adequate protection offered to the Arizona Mechanics' Lienholders is subordinated to such an extent as to prove meaningless unless the realizable value of Debtors' assets materially exceeds the amounts that are senior to the Arizona Mechanics' Lienholders. The Debtors

---

[29] Interim Order at 44-45.
[30] Interim Order at 16.
[31] Interim Order at 7.
[32] Interim Order at 20.
[33] Interim Order at 21.
[34] Interim Order at 21.

119335393.1

have made no showing, much less evidence of the point.

37. Finally, this is not a situation where adequate protection is being provided in the form of improvements to real property (and even where improvements to real property are involved, courts hold that improvements to the property alone may not constitute adequate protection).[35] No part of the post-petitioning financing here appears to be improving the Property.[36]

V. **ADEQUATE PROTECTION MUST COMPENSATE THE SECURED CREDITOR FOR THE LOSS OF VALUE CAUSED BY THE POST-PETITION LOAN**

38. In addition to notice of a motion for post-petition financing to existing lienholders, Section 364(d) contains two requirements that must be met before a priming lien may be approved.[37]

39. First, the debtor must demonstrate it is unable to obtain financing in any other permissible manner.[38]

40. Second, the debtor must demonstrate that the proposed post-petition financing arrangement adequately protects the interests of the property's current lienholder(s) over which a senior or priming lien is proposed to be granted.[39]

41. Adequate protection is "designed to preserve the position of existing lienholders and requires a debtor to provide those existing lienholders with the same level of protection they would have had in the absence of any post-petition superpriority financing."[40] For protection to be adequate, "it must compensate the secured creditor for the loss of value caused by the superpriority given the

---

[35] *In re Swedeland Dev. Group, Inc.*, 16 F.3d at 566 (citing *Town of Westport v. Inn at Longshore*, 32 Bankr. 942, 946 (Bankr. D. Conn. 1983)).
[36] Approved Budget.
[37] *Suntrust Bank v. Denmark Construction, Inc.*, 406 B.R. 683, 689 (E.D.N.C. 2009).
[38] *Id.*
[39] *Id.* (citing 11 U.S.C. § 364(d)(1); *In re Campbell Sod, Inc.*, 378 B.R. 647, 653 (Bankr. D. Kan. 2007)).
[40] *SouthPoint Global Invs., LLC v. Warren (In re Westport Holdings Tampa, Ltd. P'ship)*, 607 B.R. 715, 729 (M.D. Fla. 2019) (citing *Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) (*en banc*)).
119335393.1

post-petition loan."[41]

42. Because super priority financing displaces liens on which creditors have relied in extending credit, "a court that is asked to authorize such financing must be particularly cautious when assessing whether the creditors so displaced are adequately protected."[42]

43. Among the ways a debtor may demonstrate the existence of adequate protection is by supplying the pre-petition lender with a new third-party guaranty or with substitute collateral.[43] The Second Circuit Court of Appeals found that adequate protection existed where a sale of the debtor's assets was permitted free and clear of encumbrances, but replacement liens were attached on the proceeds of such sale to the *same extent, validity, and priority* as the original liens.[44] Similarly, the Tenth Circuit Court of Appeals found that where the debtors proposed to give the creditor a new proceeds lien in property presently *worth over five times the sum of its original lien*, ample evidence supported the bankruptcy court's conclusion that there was adequate protection.[45]

44. The protection offered in the instant case falls far below the standard required by Section 364(d) and the courts. There is no evidence supporting any claim that the Arizona Mechanics' Lienholders' interests are adequately protected. Here, Debtors have not offered the Arizona Mechanics' Lienholders collateral that is augmented or substituted in any way. And Debtors have not provided the Arizona Mechanics' Lienholders with replacement liens that attach "to the *same extent,*

---

[41] *SouthPoint*, 607 B.R. at 729. *See also In re Fontainebleau Las Vegas Holdings, LLC*, 434 B.R. 716, 751-52 (S.D. Fla. 2010) ("Because the Statutory Lienholders were due to be 'primed,' the inquiry ought to have focused on compensating the Statutory Lienholders for the loss of value of their interests in the Project *caused by the priming lien*.") (citing *In re Swedeland Dev. Grp., Inc.*, 16 F.3d at 564).
[42] *In re First South Sav. Ass'n*, 820 F.2d 700, 710 (5th Cir. 1987).
[43] *In re Swedeland Dev. Group, Inc.*, 16 F.3d at 564.
[44] *Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.)*, 600 F.3d 231, 257 (2d Cir. 2010) (citing *In re WestPoint Stevens, Inc.*, 333 B.R. 30, 48 (S.D.N.Y. 2005)) (emphasis added).
[45] *In re O'Connor,* 808 F.2d 1393, 1397-98 (10th Cir. 1987) (emphasis added). *See also In re Fontainebleau Las Vegas Holdings, LLC*, 434 B.R. at 753 ("*In re O'Connor* concerns the decrease in value of collateral caused by the use of cash collateral, not by the grant of a priming lien, but the principle of adequate protection applies equally in both kinds of cases.").
119335393.1

*validity, and priority* as the original liens." Instead, Debtors have offered the Arizona Mechanics' Lienholders replacement liens that are subordinated to a litany of other liens, including the Prepetition Prior Liens, the Carve-Out, the DIP Liens, and the Prepetition Liens. The Arizona Mechanics' Lienholders have not been afforded the same level of protection they would have had in the absence of any post-petition superpriority financing.

45.     The Third Circuit's conclusion in *Swedeland* seems apt here:

> We cannot close this portion of our opinion without pointing out that what happened here is quite disturbing. There, of course, is no doubt that the policy underlying Chapter 11 is quite important. Nevertheless, Congress did not contemplate that a creditor could find its priority position eroded and, as compensation for the erosion, be offered an opportunity to recoup dependent upon the success of a business with inherently risky prospects. We trust that in the future bankruptcy judges in this circuit will require that adequate protection be demonstrated more tangibly than was done in this case.[46]

## VI.    CONCLUSION

46.     FTI raised its concerns and issues outlined in this Objection with the Debtors, but no accommodation could be reached.

47.     Based on the foregoing, the Court should reject the proposed post-petition financing on the current record.

48.     The Arizona Mechanics' Liens should not be subordinated to the Prepetition Prior Liens, the Carve-Out, the DIP Liens, the Prepetition Liens, and the Prepetition Secured Parties Adequate Protection Liens. Instead, the Property should be carved out of the DIP Loan collateral so that Debtors, the Prepetition Lenders and the Arizona Mechanics' Lienholders may rely on their pre-bankruptcy priority,[47] or other adequate protection provided that results in the indubitable equivalent of the liens being affected.[48]

---

[46] *In re Swedeland Dev. Grp., Inc.*, 16 F.3d at 567.
[47] The Arizona Mechanics' Lienholders reserve all other claims and objections, none of which are waived.
[48] Declarations made in support of the Objection by Ron Rheinheimer and Catherine Macan are attached hereto as Exhibits #7 and #8, respectively.

119335393.1

WHEREFORE, FTI respectfully requests entry of an order (a) sustaining the Objection, (b) denying the DIP Motion, (c) alternatively, carving out the Property from the DIP Loan collateral so that Debtors, the Prepetition Lenders and the Arizona Mechanics' Lienholders may rely on their pre-bankruptcy priority, and (d) granting such other and further relief as this Court deems appropriate under the circumstances.

Dated: November 4, 2022

LEWIS ROCA ROTHGERBER CHRISTIE LLP
*Attorney for Faith Technologies, Inc.*
201 E Washington St #1200
Phoenix, AZ 85004,
T: (520) 629-4427
F: (602) 262-5747
E: rcharles@lewisroca.com

By: /s/ Robert M. Charles, Jr.
    Robert M. Charles, Jr.[49]
    Arizona Bar No. 007359

and

MARKOWITZ RINGEL TRUSTY & HARTOG P.A.
*Local Counsel for Faith Technologies, Inc.*
9130 South Dadeland Boulevard, Suite 1800
Miami, FL 33156
T: (305) 670-5000
F: (305) 670-5011
E: jmarkowitz@mrthlaw.com

By: /s/ Jerry M. Markowitz
    Jerry M. Markowitz
    Florida Bar No. 182420
    Ross R. Hartog
    Florida Bar No. 272360

---

[49] A motion to admit Mr. Charles to practice before this Court *pro hac vice* is currently pending.

119335393.1