UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERALE DIVISION
www.flsb.uscourts.gov

In re:

| | | |
|---|---|---|
| Vital Pharmaceuticals, Inc. | Case Nos.: | 0:22-bk-17842-PDR |
| Bang Energy Canada, Inc. | | 0:22-bk-17844-PDR |
| JHO Intellectual Property Holdings, L.L.C. | | 0:22-bk-17845-PDR |
| JHO Real Estate Investment, L.L.C. | | 0:22-bk-17847-PDR |
| Quash Seltzer, L.L.C. | | 0:22-bk-17848-PDR |
| Rainbow Unicorn Beverage, L.L.C. | | 0:22-bk-17849-PDR |
| Vital Pharmaceuticals International Sales, Inc. | | 0:22-bk-17850-PDR |

Chapter 11 Cases

Debtors.                             *jointly administered under 22-17842*
_____/

**UNITED STATES TRUSTEE
OBJECTION TO ESTATE FIDUCIARIES' EMERGENCY
MOTION FOR FINAL ORDER (I) APPROVING POSTPETITION
FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL,
(III) GRANTING LIENS AND PROVIDING SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE
PROTECTION, (V) MODIFYING THE AUTOMATIC STAY,
(VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

This Honorable Court should deny the estate fiduciaries' extraordinary relief requesting

approval of post-petition financing and other related relief (D.E. # 24) or condition further

interim relief until a full evidentiary hearing explaining why the DIP Facility Lender needs to

have its pre-petition claims paid for prior to a confirmed plan or transmogrified into post-petition

lending while also receiving not only a super-priority administrative expense claim status, but

also senior liens on unencumbered assets, as well as priming liens on encumbered assets, all

while receiving post-petition payments on pre-petition claims. Congress did not provide any

statutory bases under §§ 361-365 to convert pre-petition debt into post-petition lending.

Congress recognized the cleavage date of the petition. Congress also wrote and enacted § 364 to

be read in the disjunctive—not the conjunctive. And although a plain reading of a disjunctive

sub-sections mean that each specific relief may be granted together, the burden of proof and persuasion necessitates a showing as to why each specific relief is insufficient and inadequate standing by itself for the DIP Facility Lender. In support of this Objection, the U.S. trustee states the following:

### *Background*

1.      On October 10, 2022, the seven jointly administered Debtors, as captioned above, voluntarily commenced their respective chapter 11 cases.

2.      The estate fiduciaries filed their extraordinary relief requesting approval of post-petition financing and other related relief (D.E. # 24).

3.      On October 13, 2022, this Court conducted a preliminary interim hearing and entered an interim order under Rule 4001(b)(2) and (c)(2), affording the estate fiduciary with relief only to the extent necessary to avoid immediate and irreparable harm to the bankruptcy estate on October 14, 2022. Interim Order (D.E. # 120).

### *Over-arching Issue – Incorrect Forum*

4.      The estate fiduciaries and the DIP Lenders present their requests for relief before a bankruptcy court. Regretfully, the United States Supreme Court has stated that such is not the proper forum to address these issues. As will be shown below, the DIP Lenders want to be given rights and protections that are not afforded to creditors under the current version of the Bankruptcy Code and Rules as enacted by Congress. The Supreme Court stated that:

> In any event, we do not sit to assess the relative merits of different approaches to various bankruptcy problems. It suffices that the natural reading of the text produces the result we announce. Achieving a better policy outcome—if what petitioner urges is that—is a task for Congress, not the courts.[1]

---

[1] *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 5301 U.S. 1, 13, 120 S. Ct. 1942 (2000); *Kawaauhau v. Geiger*, 523 U.S. 57, 64, 118 S. Ct. 974 (1998); *U.S. v. Noland*, 517 U.S. 535, 541-42, 116 S. Ct. 1524 (1996); and *Union Bank v. Wolas*, 502 U.S. 151, 162, 112 S. Ct. 527 (1991).

*Estate Fiduciaries' Requested Relief*

5.      The estate fiduciaries seek this Court to approve a total lending facility in excess of $454 Million dollars—only $100 Million of which will be lent post-petition. More than $350 Million dollars is from pre-petition lending that will be rolled-up and transmogrified into post-petition lending and afforded bankruptcy protections under §§ 361-365 that would not necessarily be available to a pre-petition lender.

6.      On top of the roll up in excess of $350 Million, the estate fiduciaries want to provide the DIP Lending Facility with a waiver of any surcharge challenge that may be brought under § 506(c)—absent express written consent of the DIP Lender, usurping this Court's authority and jurisdiction and an estate fiduciary's fiduciary obligations.

7.      And in addition to all of that, the estate fiduciaries want to provide the DIP Lending Facility with additional protections of: (1) super-priority administrative expense claim status, (2) senior liens on all unencumbered assets, and (3) priming liens on all encumbered assets.

*Roll Up of Pre-petition Debt into a Post-petition*
*DIP Lending Facility Impermissibly Breaches the Petition Filings' Cleavage Date*

8.      It is unclear whether the DIP Lenders are seeking to roll up the entire pre-petition lending or just that tranche that was lent within this calendar year. Clarity on that issue however is not needed.

9.      First, were the DIP Lenders only seeking roll up of this year's pre-petition tranche lending, the DIP Lenders exercised their astute business judgment pre-petition when they decided to lend additional funds to the Debtors without requiring protections that would be afforded unto them were the lending to occur under §§ 361-365. The DIP Lenders should now

not be able to re-write their exercise of their own pre-petition business judgment to afford them superior rights that they did not bargain for and obtain prior to lending.

10.     Likewise, had the pre-petition tranche financing arrangement required relief to be obtained under §§ 361-365, seeking that relief after agreement, after funding, and post-petition constitutes a post-facto request that runs contrary to the Bankruptcy Code and Rules prohibitions against pre-petition agreements impugning rights and interests of the non-existent bankruptcy estate, its fiduciaries, and its creditors. There existed no notice, due process, or legal adjudication of the approval of the agreement prior to the funding of it.

11.     Second, these roll up financing agreement rights are not provided for under the Bankruptcy Code and Rules as presently enacted by Congress.

12.     Congress does not provide for cross-collateralization—securing prepetition debt with pre- and post-petition collateral as part of a post-petition financing arrangement.[2] Similarly, Congress has not provided for the functionally equivalent roll up financing arrangements—the transmogrification of pre-petition debts into post-petition debts being afforded super-priority administrative expense claim status and secured claim rights.[3]

13.     It is long established that the Eleventh Circuit Court of Appeals holds cross-collateralization is not authorized under the Bankruptcy Code because it is "directly contrary to the fundamental priority scheme of the Bankruptcy Code."[4]

14.     On top of that prohibition, the United States Supreme Court recently addressed priority violating distributions that nonetheless may appear to serve significant Code-related objectives. Instead of endorsing them, the Supreme Court unequivocally stated that:

---

[2] *See* 11 U.S.C. §§ 361, 363, 364, and 365.
[3] *See* 11 U.S.C. §§ 501, 502, 503, 506, 507, *and see generally* 11 U.S.C. § 348(d).
[4] *Matter of Saybrook Mfg. Co., Inc.,* 963 F.2d 1490, 1495 (11th Cir. 1992).

Congress did not authorize a "rare case" exception. We cannot "alter the balance struck by the statute," not even in "rare cases."[5]

15.     And in explaining its holding in Norwest Bank, the United States Supreme Court went on to explain that:

Courts cannot deviate from the procedures "specified by the Code," even when they sincerely "believ[e] that … creditors would be better off."[6]

16.     Under the Bankruptcy Code as presently enacted, roll up financing arrangements constitute "priority violating distributions." To provide for such under the Bankruptcy Code through §§ 105 and 361-365 would require Congressional action—not bankruptcy judicial action.

17.     Were the DIP Lenders to believe that they should have such rights under the Bankruptcy Code and Rules, they need to address their concerns with Congress—not a bankruptcy judge.

### *Overreaching Waiver of Rights Under 11 U.S.C. § 506(c)*

18.     Congress enacted § 506(c) to provide bankruptcy estates with fundamental fairness for all parties in interest by providing that secured creditors share some of the burden of administrative expenses where it is reasonable and appropriate that the secured creditor should share in those expenses.[7]

---

[5] *Id.*, 137 S. Ct. at 987.

[6] *Id., citing Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207, 108 S. Ct. 963 (1988).

[7] *In re The Colad Group, Inc*., 324 B.R. 208, 224 (Bankr. W.D.N.Y. 2005)(bankruptcy court refused to approve postpetition financing agreement to the extent that it purported to modify Congressionally enacted statutory rights and obligations created under 11 U.S.C. § 506(c)); *McApline v. Comerica Bank-Detroit (In re Brown Bros., Inc.)*, 136 B.R. 470, 474 (W.D. Mich. 1991)(waiver of § 506(c) "is not enforceable in light of the congressional mandate that a trustee have authority to use a portion of secured collateral for its preservation or proper disposal.").

19.     The United States Supreme Court has also weighed in on the enforceability of §
506(c) waivers in deciding that irrespective of the court approved waiver between the secured
lender and the debtor, a trustee nonetheless has standing to pursue a surcharge.[8]

20.     This is where a bankruptcy fiction comes into force and effect in these jointly
administered chapter 11 cases. The DIP Lending Facility was worked out to agreement pre-
petition, as defined by the DIP Lending Facility's first WHEREAS Clause that provides:

> WHEREAS, on October 10, 2022, the Borrower and the other Loan Parties
> (together with certain Subsidiaries and/or Affiliates that are or are to become
> debtors under the Chapter 11 Case….[9]

Likewise, the DIP Lending Facility's condition precedent is written in the past perfect tense,
meaning that before the condition precedent has been satisfied a bankruptcy filing must have
occurred.[10] This indicates that when the DIP Lending Facility was originally drafted, that event
horizon—commencement of the bankruptcy cases—had not yet come to fruition.

21.     Further, these seven jointly administered cases were filed on October 10, 2022, at
2:14 p.m. The Motion (D.E. # 24) was filed at 8:02 p.m. That Motion contained a 121-page
unexecuted DIP Lending Facility. (D.E. # 24, pp. 102-223). It is beyond peradventure that the
121-page DIP Lending Facility was not negotiated, drafted, and agreed upon in just six post-
petition hours, but rather drafted, negotiated, and agreed upon pre-petition—in the lead up to
filing.

22.     An estate fiduciary "is obliged to seek recovery under [§ 506(c)] whenever his
fiduciary duties so require."[11] As § 506(c) surcharge constitutes a fiduciary function, the estate
fiduciary cannot contract such statutory obligations away.

---

[8] *Hartford*, 530 U.S. at 13.
[9] Mot. (D.E. # 24, pg. 108 of 223).
[10] Mot. (D.E. # 24, pg. 161 of 223).
[11] *Id.*

23.     Accordingly, the Debtors collectively entered into the DIP Lending Facility—not the estate fiduciaries. To see otherwise would evidence a breach of fiduciary duties by the estate fiduciaries—warranting the appointment of unbiased estate fiduciaries for the benefit of the estates and their creditors. This further establishes that the DIP Lending Facility was negotiated and agreed unto pre-petition—not in the six hours post-petition prior to the DIP Lending Facility being filed.

24.     Were the DIP Lenders to believe that they should have the ability to strip fiduciary obligations from estate fiduciaries in bankruptcy, they need to address their concerns with Congress—not a bankruptcy judge.

### *Avoidance Carve Out Is Illusory*

25.     Although the estate fiduciaries may argue that Avoidance Actions are carved out, such carve out is illusory due to the multiple reliefs provided the DIP Lending Facility under § 364.

26.     It is accepted that the DIP Lending Facility specifically provides that there is no security interest at all being provided in any Avoidance Actions. Yet by providing a super-priority administrative expense claim, such carve out from secured status is illusory, as evidenced below:

> **<u>DIP Superpriority Claim</u>**. Upon entry of this Interim Order, the DIP Agent and the DIP Lenders are hereby granted, against each of the Debtors on a joint and several basis, pursuant to section 364(c)(1) and 364(d) of the Bankruptcy Code, an allowed, senior secured, super-priority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "DIP Superpriority Claim") for all DIP Obligations that shall: (a) be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, subject to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of Prepetition Avoidance Actions…

Mot. (D.E. # 24, pg. 53 of 223); *see also* Order, Decretal para. 7 (D.E. # 120, pp. 17-18 of 66).[12]

27.    It is this type of incongruent confluence of relief that showcases congressional intent that § 364 is to be read in the disjunctive, rather than piling on of all available forms of § 364 relief without a showing of need, necessity, and deconfliction. To not require such showing creates unintended or intentional mischief.

28.    Not only does it constitute an incongruent confluence needing deconfliction, the DIP Lenders get the benefit of any and all proceeds recovered from a preference—without any litigation overhead—all due to the proceeds being paid to them through their super-priority administrative expense.

### *Conclusion*

29.    These specific set of rights and relief being sought through the DIP Lending Facility evidences an over-reach that § 105(a) cannot address, for to do so would disregard clear statutory law and rewrite the Bankruptcy Code and Rules—a legislative right reserved unto Congress.[13] And to date, Congress has not been inclined to take up *Jevic, Hartford,* or *Norwest Bank* relating to roll up financing arrangements, waiver of fiduciary obligations under § 506(c) surcharge, and illusory secured carve-out of preference actions only to be recovered through a super-priority administrative expense claim. This Court should too decline the invitation to go where Congress has refused to go on these issues.

---

[12] These type of provisions, couched in an Interim Order, is why the U.S. trustee and this Court prefer parties seeking the interim use of cash collateral or the interim authority to obtain post-petition credit submit straight forward vanilla proposed orders—rather than 66 page dissertations. *See Bankr. L.R.* 4001-2 and 4001-3 and *Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing.*
[13] *Law v. Siegel*, 571 U.S. 415, 421, 134 S. Ct. 1188 (2014)(§ 105(a) of the Bankruptcy Code does not permit courts to override explicit mandates of other sections of the Bankruptcy Code); *Norwest Bank*, 485 U.S. at 206 ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.").

WHEREFORE PREMISES CONSIDERED the United States Trustee for Region 21 respectfully prays that this Honorable Court sustain the objection and enter a final order disapproving the estate fiduciaries' extraordinary relief requesting approval of post-petition financing and other related relief (D.E. # 24), and for such other and additional relief as this Court determines requisite under these premises.

Dated: 7 November 2022

Respectfully submitted,

Mary Ida Townson
U.S. TRUSTEE, REGION 21

By: /s/ J. Steven Wilkes (Ala Bar # WIL-278)
Trial Attorney
U.S. Department of Justice
Office of the U.S. Trustee, Region 21
501 East Polk Street, Suite 1200
Tampa, Florida 33602
(813) 228-2000 / fax (813) 228-2303
steven.wilkes@usdoj.gov

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served electronically, or via United States mail service postage prepaid, on or before 01 November 2022:

Electronically:      Jordi Guso, Andrew Sorkin; Debtors' Counsel

All other parties receiving CM/ECF Notice of Filing

/s/ J. Steven Wilkes