UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842-PDR |
| Debtors.[1] | (Jointly Administered) |

_____/

| | |
|---|---|
| VITAL PHARMACEUTICALS, INC., *et al.*, | |
| Plaintiffs, | |
| v. | |
| ATLANTIC RECORDING CORPORATION, ATLANTIC RECORDS GROUP LLC, WARNER RECORDS INC., ASYLUM WORLDWIDE LLC, BAD BOY RECORDS LLC, RHINO ENTERTAINMENT COMPANY, RHINO ENTERTAINMENT LLC, SPINNIN RECORDS B.V., WARNER MUSIC INTERNATIONAL SERVICES LIMITED, WARNER MUSIC LATINA INC., GENE AUTRY'S WESTERN MUSIC PUBLISHING CO., UNICHAPPELL MUSIC INC., W CHAPPELL MUSIC CORP., WARNER CHAPPELL MUSIC, INC., WARNER-TAMERLANE PUBLISHING CORP. | Adv. Pro. No. |
| Defendants. | |

_____/

**DEBTORS' ADVERSARY COMPLAINT FOR INJUNCTIVE RELIEF**

---

[1]    The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii)  JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

Vital Pharmaceuticals, Inc. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") bring this Complaint against Atlantic Recording Corporation, Atlantic Records Group LLC, Warner Records Inc., Asylum Worldwide LLC, Bad Boy Records LLC, Rhino Entertainment Company, Rhino Entertainment LLC, Spinnin Records B.V., Warner Music International Services Limited, Warner Music Latina Inc., Gene Autry's Western Music Publishing Co., Unichappell Music Inc., W Chappell Music Corp., Warner Chappell Music, Inc., and Warner-Tamerlane Publishing Corp. (collectively, the "WMG Defendants," who are plaintiffs, respectively, in the WMG Action (as defined below)). The Debtors incorporate by reference the statements contained in (a) the *Debtors' Motion for Preliminary Injunction and Incorporated Memorandum of Law* (the "Motion") filed simultaneously herewith, (b) the *Declaration of John C. DiDonato in Support of Debtors' Motion for Preliminary Injunction and Incorporated Memorandum of Law* (the "DiDonato Declaration") filed simultaneously herewith, and (c) the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration" or "FDD") [Main Case Docket No. 26], and further state as follows:

## INTRODUCTION

1.    The Debtors have filed this adversary proceeding pursuant to Rule 7001(7) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking to enjoin or stay the continued prosecution of *Atlantic Recording Corporation, et al. v. Vital Pharmaceuticals, Inc., et al.*, Case. No. 1:22-cv-22951-RS (S.D. Fla.) (the "WMG Action") brought against Debtor Vital Pharmaceuticals, Inc. ("VPX") and the Debtors' founder, sole shareholder, Chief Scientific Officer, and Chief Executive Officer, John H. Owoc. Upon information and belief, each of the WMG Defendants is an affiliate of Warner Music Group Corporation ("WMG").

2.      Specifically, the Debtors seek an order: (i) extending the automatic stay under section 362(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") to the WMG Action; and (ii) enjoining the WMG Defendants from prosecuting the WMG Action or any claims asserted therein against Mr. Owoc until the earlier of either the effective date of a chapter 11 plan or the Transaction Milestone,[2] subject to extension upon further order of the Court.

3.      The Chapter 11 Cases remain at a critical stage, and the focus of the Debtors and their key personnel necessarily must remain on the Debtors' reorganization efforts. While the WMG Action is stayed as to VPX, it has not yet been stayed as to Mr. Owoc, and the WMG Defendants have declined to agree to a consensual complete stay of the WMG Action. The Debtors thus initiate this adversary proceeding in an effort to avoid irreparable harm to the Debtors' estates, ensure the integrity and protections of the automatic stay, and allow the Debtors an opportunity to pursue a successful reorganization.

4.      Contemporaneously with the filing of this Complaint, the Debtors have filed a motion seeking a preliminary injunction and a memorandum in support setting forth in full the bases for the requested relief.

**JURISDICTION AND VENUE**

5.      This adversary proceeding arises in and relates to the Debtors' Chapter 11 Cases pending before this Court under chapter 11 of the Bankruptcy Code.

6.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

7.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

---

[2]      "Transaction Milestone" as used in this Complaint has the meaning given to it in the *Interim Order (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief.* [Main Case Docket No. 120 ¶ 46.]

8.    The Debtors consent to entry of a final order by the Court in connection with this adversary proceeding to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PARTIES

9.    Plaintiff Vital Pharmaceuticals, Inc. is a Florida corporation with its principal place of business at 1600 N. Park Dr., Weston, Florida.

10.    Plaintiff Bang Energy Canada, Inc. is a Florida corporation with its principal place of business at 1600 N. Park Dr., Weston, Florida.

11.    Plaintiff JHO Intellectual Property Holdings, LLC is a Florida limited liability company with its principal place of business at 1600 N. Park Dr., Weston, Florida.

12.    Plaintiff JHO Real Estate Investment, LLC is a Florida limited liability company with its principal place of business at 1600 N. Park Dr., Weston, Florida.

13.    Plaintiff Quash Seltzer, LLC is a Florida limited liability company with its principal place of business at 20311 Sheridan Street, Fort Lauderdale, Florida.

14.    Plaintiff Rainbow Unicorn Bev LLC is a Florida limited liability company with its principal place of business at 1600 N. Park Dr., Weston, Florida.

15.    Plaintiff Vital Pharmaceuticals International Sales, Inc. is a Delaware corporation with its principal place of business at 1600 N. Park Dr., Weston, Florida.

16.    Each of the Plaintiffs is a Debtor in the above-captioned Chapter 11 Cases.

17.    Defendant Atlantic Recording Corporation is a Delaware corporation with its principal place of business at 1633 Broadway, New York, New Yok.

18.    Defendant Atlantic Records Group LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

4

19.    Defendant Warner Records Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

20.    Defendant Asylum Worldwide LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

21.    Defendant Bad Boy Records LLC is a Delaware limited liability company with its principal place of business at 1633 Broadway, New York, New York.

22.    Defendant Rhino Entertainment Company is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

23.    Defendant Rhino Entertainment LLC is a Delaware limited liability company with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

24.    Defendant Spinnin Records B.V. is a company organized and existing under the laws of the Netherlands, with its principal place of business at Marathon 4, Hilversum, The Netherlands.

25.    Defendant Warner Music International Services Limited is a limited liability company organized and existing under the laws of England and Wales, with its principal place of business at 27 Wrights Lane, London, England.

26.    Defendant Warner Music Latina Inc. is a Delaware corporation with its principal place of business at 555 Washington Avenue, Miami Beach, Florida.

27.    Defendant Gene Autry's Western Music Publishing Co. is a California corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

28.    Defendant Unichappell Music Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

29.     Defendant W Chappell Music Corp. is a California corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

30.     Defendant Warner Chappell Music, Inc. is a Delaware corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

31.     Defendant Warner-Tamerlane Publishing Corp. is California corporation with its principal place of business at 777 S. Santa Fe Avenue, Los Angeles, California.

## BASIS FOR RELIEF

32.     The statutory bases for the relief requested herein are sections 362(a) and 105(a) of the Bankruptcy Code.

33.     The Debtors have commenced this adversary proceeding pursuant to Rule 7001(7) of the Bankruptcy Rules.

34.     No prior request for the relief requested herein has been made to this or any other court.

## FACTUAL BACKGROUND

35.     On October 10, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

36.     The Debtors are operating their businesses and managing their affairs as debtors-in-possession under section 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in the Chapter 11 Cases.

37.     The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules.

## I.      COMPANY AND BUSINESS OVERVIEW

38.     First established in 1993 and headquartered in Weston, Florida, the Debtors are a frontrunner in sports nutrition and a pioneer in the performance energy drink industry.  FDD ¶ 7.

The Debtors' leading product, Bang energy drink ("Bang"), was launched in 2012 and was the fastest growing beverage in the U.S. non-alcoholic beverage section in 2018. *Id.* ¶ 8. Bang was the third-best selling energy drink in the United States as measured by retail sales and market share date. *Id.*

39.    The Debtors operate in a highly competitive market for energy drinks and dietary supplements, including products purchased for resale, where alternate suppliers of similar products are available to the same demographic that consumes the Debtors' products. *Id.* ¶ 116.

40.    To differentiate themselves from the competition and reach their customers, the Debtors deploy a unique, multifaceted marketing strategy utilizing multiple media channels, including (a) digital marketing, including social media (*e.g.*, TikTok, Facebook, Instagram, and YouTube), (b) influencers and brand ambassadors, and (c) in-store promotion. FDD ¶ 15. Taken together, the Debtors' marketing strategy has resulted in the Debtors becoming a dominant brand on social media, with over 4 million followers across their various social media accounts. *Id.*

41.    As of September 30, 2022, the Debtors work with approximately 1,000 influencers. *Id.* In total, the Debtors' marketing efforts on social media reach approximately 1.3 billion followers through the Debtors' contracted influencers and brand ambassadors. *Id.*

42.    The Debtors utilize their social media and influencers to create and post bespoke content on social media platforms, and participation in photoshoots, video-shoots, demos, fitness shows, professional events, industry expos, and trade shows. FDD ¶ 108. The Debtors' network of social media and use of influencers is industry-leading, and has helped create a brand image for the Debtors that is known globally. *Id.*

43.    The Debtors also host and sponsor music festivals, sporting events, concerts, and trade shows around the world to connect with customers at live gatherings and events. *Id.* ¶ 16.

In addition, the Debtors introduce their products through sampling and unique giveaways and utilizes unique packaging and vibrant displays to make its products stand out in stores. *Id.*

44.     The Debtors multifaceted, industry-leading marketing strategy has been successful and through their unique approach, they have been able to create a globally known brand image and achieve rapid growth and success in the competitive market for energy drinks and dietary supplements as a result. FDD ¶¶ 16, 108.[3]

45.     Mr. Owoc is the founder and sole shareholder of the Debtors. DiDonato Decl. ¶ 11. In addition to serving on the boards of directors or members, as applicable, of the Debtors, Mr. Owoc is the Debtors' Chief Executive Officer and Chief Scientific Officer. *Id.* In such capacities, Mr. Owoc has historically personally overseen—and continues to personally oversee—nearly all aspects of the Debtors' business, including but not limited to, providing leadership to the managerial, operational, and financial functions of the Debtors. *Id.* ¶¶ 11, 13.

46.     Mr. Owoc is actively involved in the day-to-day decision-making and operations of the Debtors. *Id.* He oversees all operations and business dealings, including management decisions, business operations, marketing strategy, development and maintenance of customer and vendor relationships, research and development, and key financial decisions, as well as guiding the overall vision of the Debtors. *Id.* For example, Mr. Owoc has been, and continues to be, actively involved in developing the Debtors' new distribution network, which is essential to Debtors' long-term success. *Id.* ¶ 14. In addition, he continues to be actively involved in developing and implementing the Debtors' marketing and advertising efforts, a critical part of growing and maintaining the business for the benefit of the estates and creditors. *Id.* ¶¶ 11,13.

---

[3]     For a further description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the First Day Declaration.

47.     Mr. Owoc's efforts and attention are essential to the Debtors' continued operations and business.  DiDonato Decl. ¶ 17.

## II.    THE WMG DISTRICT COURT ACTION

48.     On September 15, 2022, the WMG Defendants initiated the WMG Action by filing a complaint (the "<u>WMG Complaint</u>") in the United States District Court for the Southern District of Florida (the "<u>District Court</u>"), naming Debtor VPX and Mr. Owoc as defendants.  [WMG Action Docket No. 1.]  The WMG Complaint includes claims for copyright infringement, contributory infringement, and vicarious infringement.  Each of the counts set forth in the WMG Complaint is alleged against both VPX and Mr. Owoc, and the allegedly infringing acts pled in the WMG Complaint are attributed to both VPX and Mr. Owoc.

49.     On October 11, 2022, Debtor VPX filed a suggestion of bankruptcy in the WMG Action.  [WMG Action Docket No. 21.]

50.     On October 12, 2022, the District Court entered an order staying the WMG Action as to VPX.  [WMG Action Docket No. 22.]  The District Court did not stay the action as to Mr. Owoc.

51.     On November 1, 2022, Debtors' conferred with the WMG Defendants' regarding a consensual stay of the action against Mr. Owoc while these Chapter 11 Cases are pending.  The WMG Defendants' declined to stay the action with respect to Mr. Owoc, and reaffirmed their intent to prosecute claims included in the WMG Complaint against Mr. Owoc.

## III.    NEED FOR THE REQUESTED RELIEF

52.     On October 10, 2022, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code to (a) obtain breathing room from pending litigation, including significant outstanding judgments and verdicts, as well as the consequences of pending defaults on the Debtors' prepetition credit facilities; (b) obtain an essential infusion of liquidity to stabilize

the Debtors' operations at a critical juncture in their business lifecycles; and (c) pursue a recapitalization, a replacement financing, or other transaction that will result in payment in full of the Debtors' outstanding obligations and position the Debtors for success upon a successful emergence from chapter 11. DiDonato Decl. ¶ 18.

53.    Mr. Owoc is directly involved in developing and will remain critically involved in implementing the Debtors' bankruptcy and reorganization strategy by, among other things, working hand-in-hand with the Debtors' advisors as the Debtors pursue a financing process in pursuit of a recapitalization, replacement financing, or other transaction designed to enable the Debtors to successfully reorganize, as well as working with the Debtors' creditors to build consensus on a viable path forward. *Id.* ¶¶ 19-24.

54.    Mr. Owoc works closely with the Debtors' advisors, including the Debtors' investment banker Rothschild & Co US Inc. ("Rothschild & Co") and Debtors' counsel, Latham & Watkins LLP and Berger Singerman LLP, in pursuing all restructuring options and addressing any issues that arise with respect to these Chapter 11 Cases. *Id.* ¶¶ 21-22. In addition, Mr. Owoc works closely with the Debtors' Chief Transformation Officer, John C. DiDonato, and his firm, Huron Consulting Services EEC ("Huron"). *Id.* ¶ 22. Specifically, Mr. Owoc frequently and regularly meets with Mr. DiDonato and Huron to assist and collaborate on the Debtors' reorganization efforts. *Id.* Mr. Owoc thus is (and will continue to be) essential to the Debtors' reorganization efforts. *Id.* ¶ 24.

55.    In addition, the Debtors have or could have indemnification obligations to Mr. Owoc based on their bylaws, which provide for the indemnification of current and former officers, directors, and employees of the Debtors in connection with the claims asserted in the WMG Action. DiDonato Decl. ¶ 33. In addition, Mr. Owoc may be entitled to coverage for the claims

asserted against him in the WMG Action under Debtor VPX's directors and officers and entity liability insurance policy (the "D&O Insurance Policy"). *Id.* ¶ 34.

56.     Should litigation in the WMG Action continue as to Mr. Owoc, then (1) the Debtors will be compelled to participate in defending the allegations of the WMG Action due to the risk of adverse, preclusive rulings and potential indemnity obligations owed to Mr. Owoc; (2) the WMG Action would divert the attention and resources of Mr. Owoc, a critical person to the Debtors' ability to successful emerge from chapter 11, and others of the Debtors' employees from the reorganization efforts and business operations of the Debtors; (3) discovery obligations in the WMG Action will fall almost exclusively to the Debtors, diverting valuable resources from the Debtors at a critical juncture in these Chapter 11 Cases; and (4) the property of the estate could be depleted due to the Debtors' indemnification obligations owed to Mr. Owoc by Debtor VPX and the potential reduction of D&O Insurance Policy proceeds.

**COUNT I**
**INJUNCTIVE RELIEF PURSUANT TO**
**SECTION 362(a) OF THE BANKRUPTCY CODE**
**(Against All Defendants)**

57.     The Debtors repeat and reallege paragraphs 1 through 56 hereof, as if fully set forth herein.

58.     The Debtors seeks an order pursuant to section 105(a) of the Bankruptcy Code extending the automatic stay under section 362(a)(1) and (a)(3) of the Bankruptcy Code to the WMG Action until the earlier of either the effective date of a chapter 11 plan or the Transaction Milestone, subject to extension upon further order of the Court.

59.     Section 362(a)(1) of the Bankruptcy Code operates as a stay, "applicable to all entities," of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the

commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title."

60.     Section 362(a)(3) of the Bankruptcy Code operates as a stay, "applicable to all entities," of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

61.     Unusual circumstances exist that require extension of the automatic stay to Mr. Owoc.

62.     Extension of the automatic stay is warranted because the claims asserted against Mr. Owoc in the WMG Action are so inextricably intertwined with the claims asserted against Debtor VPX as to constitute a claim against the Debtors or property of the Debtors within the meaning of section 362(a).

63.     Extension of the stay is further warranted because if the WMG Action continues, then (1) the Debtors will be compelled to participate in defending the allegations of the WMG Action due to the risk of adverse, preclusive rulings and potential indemnity obligations owed to Mr. Owoc; (2) the WMG Action would divert the attention and resources of Mr. Owoc, a critical person to the Debtors' ability to successful emerge from chapter 11, and others of the Debtors' employees from the reorganization efforts and business operations of the Debtors; (3) discovery obligations in the WMG Action will fall almost exclusively to the Debtors, diverting valuable resources from the Debtors at a critical juncture in these Chapter 11 Cases; and (4) the property of the estate could be depleted due to the Debtors' indemnification obligations owed to Mr. Owoc by Debtor VPX and the potential reduction of D&O Insurance Policy proceeds.

64.     If the WMG Action is permitted to continue against Mr. Owoc, then the Debtors' prospects for confirming a plan of reorganization may be impaired, thwarting the Congressional

purpose of providing debtors with a breathing spell from litigation and other pressures to confirm a plan of reorganization.

65.     The automatic stay should be extended to the claims asserted against Mr. Owoc in the WMG Action.

**COUNT II**
**INJUNCTIVE RELIEF PURSUANT TO SECTION 105(a)**
**OF THE BANKRUPTCY CODE**
**(Against All Defendants)**

66.     The Debtors repeat and reallege paragraphs 1 through 56 hereof, as if fully set forth herein.

67.     The Debtors seek an injunction under section 105(a) of the Bankruptcy Code enjoining the continued prosecution of the WMG Action until the earlier of either the effective date of a chapter 11 plan or the Transaction Milestone, subject to extension upon further order of the Court.

68.     Relief under section 105(a) of the Bankruptcy Code is proper in a chapter 11 case when necessary to protect a debtor's ability to effectively reorganize and preserve property of the debtor's estate.

69.     The continuation of the WMG Action against Mr. Owoc will frustrate and jeopardize the Debtors' efforts to successfully reorganize and will interfere with property of the Debtors' estate.

70.     If the WMG Action is not enjoined, then the Debtors will likely suffer imminent, irreparable harm and their reorganization efforts will be threatened, including the risk that the WMG Action would divert the attention and resources of Mr. Owoc and others of the Debtors' employees critical to the Debtors' ability to successful emerge from chapter 11 from the reorganization efforts and business operations of the Debtors.

71.     The likelihood of irreparable harm to the Debtors in the absence of injunctive relief far outweighs any harm to Defendants.  Defendants will suffer little or no harm if the WMG Action is enjoined until the earlier of either the effective date of a chapter 11 plan or the Transaction Milestone.

72.     The Debtors' Chapter 11 Cases are at a critical juncture, and they have a substantial likelihood of reorganizing.

73.     The injunctive relief sought herein serves the public interest by supporting compliance with the Congressional purpose of the automatic stay and furthering the Debtors' efforts to reorganize.

**WHEREFORE**, for the foregoing reasons, the Debtors respectfully request entry of an order (i) extending the automatic stay to the claims asserted in the WMG Action against Mr. Owoc under section 362(a)(1) and (a)(3) of the Bankruptcy Code; (ii) enjoining the continued prosecution of claims asserted in the WMG Action against Mr. Owoc until the earlier of either the effective date of a chapter 11 plan or the Transaction Milestone, subject to extension upon further order of the Court; and (iii) granting other and further relief as the Court deems just and proper.

Dated:    November 14, 2022
        Miami, Florida

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
       tj.li@lw.com
       brian.rosen@lw.com
       jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: whit.morley@lw.com

Respectfully submitted,

*/s/ Jordi Guso*
_____
Jordi Guso
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email: jguso@bergersingerman.com

*Proposed Co-Counsel for the Debtors*