UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                          Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]       Case No.: 22-17842-PDR

    Debtors.                                    (Jointly Administered)
_____/

**DEBTORS' MOTION TO APPROVE COMPROMISE BETWEEN (I) DEBTOR, VITAL PHARMACEUTICALS, INC.; AND (II) BELVAC PRODUCTION MACHINERY, INC., AND REQUEST TO PAY PRE-PETITION CLAIM OF STORAGE FACILITY**

> **Any interested party who fails to file and serve a written response to this motion within 21 days after the date of service stated in this motion[2] shall, pursuant to Local Rule 9013-1(D), be deemed to have consented to the entry of an order in the form attached to this motion. Any scheduled hearing may then be canceled.**

Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev LLC and Vital Pharmaceuticals International Sales, Inc. (each a "Debtor" and, collectively, the "Debtors"), by undersigned counsel, move the Court, pursuant to Fed. R. Bankr. P. 9019 and Local Rule 9019-1, for entry of an Order approving a compromise between Debtor, Vital Pharmaceuticals, Inc. d/b/a Bang Energy ("Bang") and Belvac Production Machinery, Inc. ("Belvac", and, together with Bang, the "Parties"), and authorizing Bang to pay a portion of the pre-petition claim of MEI Rigging and Crating, LLC (d/b/a Dunkel Brothers) ("Dunkel

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Although there is no Certificate of Service included in this Motion reflecting the date of service, this Motion will be served today, November 15, 2022, by the Debtors' notice, claims and solicitation agent, Stretto, Inc.

11762952-1

Brothers"), with respect to the equipment subject of the compromise between the Parties.   In support of this Motion, the Debtors state:

### Jurisdiction and Venue

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The Debtors move for approval of that certain *Settlement Agreement* (the "Agreement"), pursuant to Fed. R. Bankr. P. 9019, and, in connection therewith, for authorization to pay certain pre-petition storage expenses to Dunkel Brothers (as further set forth herein), with respect to storing the equipment subject of the Agreement.  A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

### Background

4.     On October 10, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.

5.     The Debtors are operating their business and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.     For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* [ECF No. 26] filed on the Petition Date.

7.     On October 11, 2022, the Court entered an order jointly administering the Debtors' chapter 11 cases [ECF No. 43].

8.     On November 1, 2022, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in these chapter 11 cases [ECF No. 245].

9.      Prior to the Petition Date, on March 10, 2020, Bang and Belvac entered into that certain Equipment Purchase Agreement (the "Purchase Agreement"), pursuant to which Bang agreed, among other things, to purchase certain equipment and installation services from Belvac in exchange for an aggregate purchase price of $57,000,000.00.

10.     Bang paid and Belvac acknowledges receipt of approximately $41,400,000.00 toward the purchase of the equipment under the Purchase Agreement.

11.     In order to secure the obligations due and owing to Belvac under the Purchase Agreement, Bang granted Belvac a security interest in certain equipment to secure Bang's payment of amounts due, if any, under the Purchase Agreement.  Belvac perfected its security interest in the equipment delivered to Bang under the Purchase Agreement by, among other things, filing a UCC-1 financing statement.

12.     Belvac contends that Bang defaulted on its obligations under the Purchase Agreement, by, among other things, failing to make payments as and when due thereunder, which contention is disputed by Bang.

13.     Bang has maintained possession of certain equipment which was delivered to Bang pursuant to the Purchase Agreement, and which remains subject to Belvac's first priority security interest (the "Collateral").

14.     On August 26, 2022, Belvac commenced an action against Bang, captioned *Belvac Production Machinery, Inc. v. Vital Pharmaceuticals, Inc. d/b/a Bang Energy,* Case No. 22NWCV00763, in the Superior Court of the State of California for the County of Los Angeles, Southeast Judicial District (the "Litigation"), wherein Belvac sought possession of certain equipment based upon claims it asserts under the Purchase Agreement.   Bang disputes the right to possession that Belvac asserts in the Litigation.

## Relief Requested and Basis Therefor

15.    The Parties have agreed to amicably resolve and settle any and all disputes and claims arising under the Purchase Agreement, including the Litigation, and have entered into the Agreement, which memorializes the terms and conditions of their resolution and is subject to the approval of this Court after notice and hearing.   The principal terms and conditions of the Agreement are as follows:[3]

a.    <u>No Admission of Wrongdoing</u>:   Nothing in the Agreement shall be construed as an admission of liability by any Party. The Agreement is a compromise sought by the Parties to resolve their disputes and minimize the expense associated with litigation. Subject to the foregoing, Bang and Belvac seek to resolve any and all claims either Party has or may have under the Purchase Agreement, including any claims by Belvac for alleged damages for amounts due and owing towards the Aggregate Purchase Price (as such term is defined in the Purchase Agreement) (collectively, the "<u>Alleged Damages</u>");

b.    <u>Consideration</u>:  Belvac will retake possession of four (4) of the twelve (12) Bodymakers delivered to Bang pursuant to the Purchase Agreement, which four (4) shall be selected from the twelve (12) delivered under the Purchase Agreement in Belvac's sole discretion (collectively, the "<u>Bodymakers</u>"), whether currently located at Bang's place of business or elsewhere;

c.    Belvac agrees to remit to Bang the sum of $500,000.00 (the "<u>Cash Consideration</u>") less any out-of-pocket expenses paid by Belvac to obtain possession of the Bodymakers, up to a maximum of $100,000.00 (collectively, the "<u>Recovery Expenses</u>"), which Recovery Expenses shall include, but not be limited to, the payment of overdue and unpaid rents

---

[3] The terms and conditions set forth herein are in summary form only. The Debtors urge all interested parties in interest to review the Agreement in its entirety for all of the terms and conditions of the Agreement.

and penalties owed to Dunkel Brothers for storage of the Bodymakers at the facility located at 14555 Alondra Blvd., La Mirada, CA 90638 (the net of the Cash Consideration less the Recovery Expenses being referred to in the Agreement as the "Net Cash Consideration"). Upon transfer of title and physical possession of the Bodymakers and payment of the Net Cash Consideration, the Alleged Damages shall be deemed satisfied;

        d.    <u>Continuing Obligation to Execute Supporting Documentation</u>:   As additional consideration for the settlement reached as set forth in the Agreement, Bang agrees to execute such documents as may be necessary to transfer title to the Bodymakers to Belvac, provided, however, that Belvac reserves the right to foreclose its security interests in the Bodymakers in lieu of receiving a transfer of title to the Bodymakers from Bang. Notwithstanding the foregoing, and except as may be required in connection with the payment of the Net Cash Consideration, Bang shall not be required to satisfy any liens against the Bodymakers or otherwise incur out-of-pocket costs in connection with the Bodymakers;

        e.    <u>Termination of Financing Statement and any Liens on Bang's Facility</u>: Within ten business days of the transfer of title to the Bodymakers from Bang to Belvac or its designee, Belvac shall terminate any financing statements filed against Bang in accordance with the Uniform Commercial Code, and shall release any remaining security interest it may have against Collateral other than the Bodymakers, including that Collateral set forth on Exhibit A to the Agreement. For the avoidance of doubt, the release contemplated under Section 5 of the Agreement shall not impact Belvac's ownership interest in any equipment subject to the Purchase Agreement that was not delivered to Bang (collectively, the "<u>Undelivered Equipment</u>"), all of which is property of Belvac. Further, and also within ten business days of the transfer of title to the Bodymakers from Bang to Belvac or its designee, Belvac shall terminate any liens of any kind it filed in the State of Arizona against Bang's facility located at 1635 S.

43rd Ave, Phoenix, Arizona 85009 (the "Arizona Facility"), and Belvac shall thereafter and thenceforth disclaim any and all other liens whatsoever that it has, may have, had or may ever had against said Arizona Facility, whether such lien is express, implied, constructive or arising by operation of law, is filed or unfiled, is inchoate or perfected or of any other origin or form;

   f. Dismissal of Litigation With Prejudice:  In consideration of the settlement reached pursuant to the Agreement, Belvac and Bang shall cause the Litigation to be dismissed with prejudice, each party to bear its own attorneys' fees and costs. To that end, upon transfer of possession of, and title to, the Bodymakers to Belvac (the "Bodymaker Transfer Date"), both Belvac and Bang's counsel shall execute or otherwise consent to the filing of a Joint Stipulation for Dismissal with Prejudice, with proposed Agreed Order of Dismissal with Prejudice. Counsel for Belvac shall file the fully executed Joint Stipulation of Dismissal with Prejudice within three (3) calendar days after the Bodymaker Transfer Date;

   g. Release of Belvac:  Bang, on behalf of itself and each of its successors, assigns, and other legal representatives, and any person or entity claiming by or through it, unconditionally remises, releases, and forever discharges Belvac and its past and present officers, directors, shareholders, agents, employees, parent corporations, subsidiaries, affiliates, administrators, predecessors, and successors and assigns, as releasees (collectively, the "Belvac Releasees"), of and from any and all manner of actions, causes of action, suits, debts, dues, accounts, contracts, agreements, promises, warranties, guaranties, representations, liens, judgments, claims, counterclaims, cross-claims, defenses, (and/or demands whatsoever, including claims for contribution and/or indemnity, whether now known or unknown, past or present, asserted or unasserted, contingent or liquidated, at law or in equity, or resulting from any assignment, if any, which Bang has, ever had, or may have, arising out of the Purchase Agreement, including, but not limited to, all rights, claims or interests in any equipment or

services contemplated to be delivered or provided thereunder (collectively, the "Bang Claims"). Bang, on behalf of itself and any person or entity claiming by or through it, absolutely, unconditionally, and irrevocably agrees never to commence, prosecute, cause to be commenced or prosecuted, voluntarily aid in any way, or foment any suit, action, or other proceeding (at law, in equity, in any regulatory proceeding, or otherwise) against any of the Belvac Releasees based on any of the Bang Claims. If Bang or any person or entity claiming by or through Bang violates the foregoing covenant, Bang, on behalf of itself and any person or entity claiming by or through it, agrees to pay, in addition to such other damages as any Belvac Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Belvac Releasee as a result of such violation;

       h.    <u>Conditional Release of Bang</u>: Upon transfer of title to the four (4) Bodymakers, Belvac, on behalf of itself and each of its successors, assigns, and other legal representatives, and any person or entity claiming by or through it, unconditionally remises, releases, and forever discharges Bang and its past and present officers, directors, shareholders, agents, employees, parent corporations, subsidiaries, affiliates, administrators, predecessors, and successors and assigns, as releasees (collectively, the "Bang Releasees"), of and from any and all manner of actions, causes of action, suits, debts, dues, accounts, contracts, agreements, promises, warranties, guaranties, representations, liens, judgments, claims, counterclaims, cross-claims, defenses, (and/or demands whatsoever, including claims for contribution and/or indemnity, whether now known or unknown, past or present, asserted or unasserted, contingent or liquidated, at law or in equity, or resulting from any assignment, if any, which Belvac has, ever had, or may have, arising out of the Purchase Agreement, including, but not limited to, all rights, claims or interests in any Collateral other than the Bodymakers (collectively, the "Belvac Claims"). Belvac, on behalf of itself and any person or entity claiming by or through it, hereby

absolutely, unconditionally, and irrevocably agrees never to commence, prosecute, cause to be commenced or prosecuted, voluntarily aid in any way, or foment any suit, action, or other proceeding (at law, in equity, in any regulatory proceeding, or otherwise) against any of the Bang Releasees based on any of the Belvac Claims. If Belvac or any person or entity claiming by or through Belvac violates the foregoing covenant, Belvac, on behalf of itself and any person or entity claiming by or through it, hereby agrees to pay, in addition to such other damages as any Bang Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Bang Releasee as a result of such violation.

16.     The Debtors seek approval of the Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. In addition, the Debtors request authority to pay the Recovery Expenses up to the sum of $100,000.00, which includes the pre-petition storage fees owed to Dunkel Brothers for storing the equipment subject of the Agreement.  The amounts to be paid to Dunkel Brothers represents the overdue and unpaid rents and penalties alleged owed for storage of the Body Makers at their facility located at 14555 Alondra Blvd, La Mirada, California 90638. The payment to Dunkel Brothers is necessary to effectuate the settlement.

17.     Rule 9019(a) provides that, after notice and a hearing, a court may approve a proposed settlement of a claim.  The decision of whether or not to approve a compromise is within the sound discretion of the court. *In re Carson*, 82 B.R. 847 (Bankr. S.D. Ohio 1987); *In re Mobile Air Drilling Co.*, 53 B.R. 605 (Bankr. N.D. Ohio 1985).

18.     In passing on proposed settlements, the standard that courts applied under the former Bankruptcy Act is the same standard as courts should apply under the Bankruptcy Code. *In re Carla Leather, Inc.*, 44 B.R. 457, 466 (Bankr. S.D.N.Y. 1984).  As stated by the United States Supreme Court in *Protective Committee v. Anderson*, 300 U.S. 414 (1968), under the Act, to approve a proposed settlement, a court must find that the settlement was "fair and

equitable" based on an educated estimate of the complexity, expense, and likely duration of . . .

litigation, the possible difficulties of collecting on any judgment which might be obtained and

all other factors relevant to a full and fair assessment of the wisdom of the proposed

compromise. *Protective Committee*, 300 U.S. at 424.

19.    This test was adopted by the Eleventh Circuit in *In re Justice Oaks II, Ltd.*, 898

F.2d 1544, 1549 (11th Cir. 1990), which provides additional guidance as to whether a

compromise should be approved. *Justice Oaks* established a four-part test for approval:

(a)    The probability of success in litigation;

(b)    The difficulties, if any, to be encountered in the matter of collection;

(c)    The complexity of the litigation involved and the expense, inconvenience

and delay necessarily attending it; and

(d)    The paramount interest of the creditors and a proper deference to their

reasonable views in the premises.

20.    The Agreement satisfies the *Justice Oaks* standard.

21.    Applying the foregoing, the terms of the Agreement satisfy that four-part test

relating to the Rule 9019 request.  The Parties believe that after full and careful consideration of

the claims asserted by Belvac, the terms of the Agreement would be in the best interests of

Bang's estate.  Specifically, in exchange for the return of the Bodymakers and payment of the

Net Cash Consideration to Bang by Belvac, Belvac is waiving any claims it may have against

Bang relating to the Purchase Agreement (including the remaining amounts owed to Belvac by

Bang under the Purchase Agreement of approximately $15.6 million), and has agreed to dismiss

the Litigation with prejudice.

22.    Counsel for each the Parties is mindful of the additional administrative expenses

that will be incurred in the event that the Agreement is not approved.  The Parties believe that

resolution of Belvac's claims under the Purchase Agreements, upon the terms set forth in the Agreement, is reasonable and falls well above the lowest point in the range of reasonableness as required by Rule 9019 of the Federal Rules of Bankruptcy Procedure and applicable caselaw.

**WHEREFORE**, the Debtors respectfully request that this Court enter an Order, substantially in the form attached hereto as **Exhibit B**, (a) granting this Motion; (b) approving the Agreement; (c) authorizing Bang to pay up to the sum of $100,000.00 for Recovery Expenses from the Cash Consideration, including the storage fees associated with storing the equipment subject of the Agreement, and (d) granting such other and further relief as the Court deems just and proper.

Dated: November 15, 2022
          Miami, Florida

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
            tj.li@lw.com
            brian.rosen@lw.com
            jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Respectfully submitted,

*/s/ Jordi Guso*
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
            mniles@bergersingerman.com

Jeramy D. Webb (admitted *pro hac vice*)
Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:   jeramy.webb@lw.com
            whit.morley@lw.com

*Proposed Co-Counsel for the Debtors*

## Exhibit A

**(Settlement Agreement)**

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT ("**Agreement**") is dated as of October __, 2022 (the "**Effective Date**"), by and among BELVAC PRODUCTION MACHINERY, INC., a Virginia corporation ("**Belvac**"), and VITAL PHARMACEUTICALS, INC., D/B/A BANG ENERGY, a Florida corporation ("**Bang**").

### RECITALS

WHEREAS, on or about March 10, 2020, Belvac and Bang entered into that certain Equipment Purchase Agreement (the "**Purchase Agreement**"), pursuant to which Bang agreed, among other things, to purchase certain equipment and installation services from Belvac in exchange for an aggregate purchase price of Fifty-Seven Million Dollars ($57,000,000).

WHEREAS, Bang paid Belvac, and Belvac acknowledges receipt of, approximately Forty-One Million, Four Hundred Thousand Dollars ($41,400,000), toward the purchase of the equipment under the Purchase Agreement.

WHEREAS, in order to secure the obligations due and owing to Belvac under the Purchase Agreement, Bang granted Belvac a security interest in certain equipment to secure Bang's payment of the amounts due, if any, under the Purchase Agreement.

WHEREAS, Belvac has perfected its security interest in the equipment delivered to Bang under the Purchase Agreement by, among other things, filing a financing statement against Bang in accordance with the requirements of the Uniform Commercial Code.

WHEREAS, Belvac contends that Bang has defaulted on its obligations under the Purchase Agreement by, among other things, failing to make payments as and when due thereunder, while Bang disputes that contention (each, a "**Default**," and, collectively, the "**Defaults**").

WHEREAS, Bang has maintained possession of certain equipment which was delivered to Bang pursuant to the Purchase Agreement, and which remains subject to Belvac's first-priority security interest (collectively, the "**Collateral**").

WHEREAS, Belvac and Bang are, respectively, the Plaintiff and Defendant in *Belvac Production Machinery, Inc. v. Vital Pharmaceuticals, Inc. d/b/a Bang Energy*, Case No. 22NWCV00763, Superior Court of the State of California for the County of Los Angeles, Southeast Judicial District (the "**Litigation**"), wherein Belvac seeks possession of certain equipment based upon claims it asserts under the Purchase Agreement. Bang disputes the right to possession that Belvac asserts in the Litigation.

WHEREAS, Belvac and Bang have agreed to amicably resolve and settle any and all existing disputes and claims arising under the Purchase Agreement, including the Litigation, pursuant to the terms and conditions which are hereinafter set forth herein.

1

## AGREEMENTS

NOW, THEREFORE, in consideration of the premises and the mutual agreements herein contained, and for other good and valuable consideration, receipt of which is hereby acknowledged, the Belvac and Bang hereby agree as follows:

1.     Recitals; Defined Terms.  Bang and Belvac acknowledge that the above Recitals are true and correct and agree that the same are incorporated herein as material provisions of this Agreement.  Unless the context clearly indicates otherwise, each term used in this Agreement which is defined in the Recitals shall have the meaning given to such term in the Recitals.  Each capitalized term used herein which is not otherwise defined herein shall have the meaning given to such term in the Purchase Agreement.

2.     No Admission of Wrongdoing.  Nothing in this Agreement shall be construed as an admission of liability by any Party. This Agreement is a compromise sought by the parties hereto to resolve their disputes and minimize the expense associated with litigation. Subject to the foregoing, Bang and Belvac seek to resolve any and all claims either Party has or may have under the Purchase Agreement, including any claims by Belvac for alleged damages for amounts due and owing towards the Aggregate Purchase Price (as such term is defined in the Purchase Agreement) (collectively, the "**Alleged Damages**").

3.     Consideration.  Bang and Belvac agree that Belvac shall retake possession of 4 of the 12 Bodymakers delivered to Bang pursuant to the Purchase Agreement, which 4 shall be selected from the 12 delivered under the Purchase Agreement in Belvac's sole discretion (collectively, the "**Bodymakers**"), whether currently located at Bang's place of business or elsewhere.  Belvac agrees to remit to Bang the sum of Five Hundred Thousand Dollars ($500,000.00) (the "**Cash Consideration**") less any out-of-pocket expenses paid by Belvac to obtain possession of the Bodymakers, up to a maximum of One Hundred Thousand Dollars ($100,000) (collectively, the "**Recovery Expenses**"), which Recovery Expenses shall include, but not be limited to the payment of prepetition overdue and unpaid rents and penalties owed to Dunkel Brothers for storage of the Bodymakers at the facility located at 14555 Alondra Blvd, La Mirada, California 90638 (the net of the Cash Consideration less the Recovery Expenses being referred to herein as the "**Net Cash Consideration**").  Upon transfer of title and physical possession of the Bodymakers and payment of the Net Cash Consideration, the Alleged Damages shall be deemed satisfied.

4.     Continuing Obligation to Execute Supporting Documentation.  As additional consideration for the settlement reached pursuant to this Agreement, Bang agrees to execute such other documentation as may be necessary to transfer title to the Bodymakers to Belvac, provided, however, that Belvac reserves the right to foreclose its security interests in the Bodymakers in lieu of receiving a transfer of title to the Bodymakers from Bang.  Notwithstanding the foregoing, and except as may be required in connection with the payment of the Net Cash Consideration, Bang shall not be required to satisfy any liens against the Bodymakers or otherwise incur out-of-pocket costs in connection with the Bodymakers.

2

5.     Termination of Financing Statement and any Liens on Bang's Facility. Within ten business days of the transfer of title to the Bodymakers from Bang to Belvac or its designee, Belvac shall terminate any financing statements filed against Bang in accordance with the Uniform Commercial Code, and shall release any remaining security interest it may have against Collateral other than the Bodymakers, including that Collateral set forth on Exhibit A, attached hereto.     For the avoidance of doubt, this release contemplated under this Section 5 shall not impact Belvac's ownership interest in any equipment subject to the Purchase Agreement that was not delivered to Bang (collectively, the "**Undelivered Equipment**"), all of which is property of Belvac. Further, and also within ten business days of the transfer of title to the Bodymakers from Bang to Belvac or its designee, Belvac shall terminate any liens of any kind it filed in the State of Arizona against Bang's facility located at 1635 S. 43rd Ave, Phoenix, Arizona 85009 (the "**Arizona Facility**"), and Belvac shall thereafter and thenceforth disclaim any and all other liens whatsoever that it has, may have, had or may ever had against said Arizona Facility, whether such lien is express, implied, constructive or arising by operation of law, is filed or unfiled, is inchoate or perfected or of any other origin or form.

6.     Dismissal of Litigation with Prejudice.  In consideration of the settlement reached herein, Belvac and Bang shall cause the Litigation to be dismissed with prejudice, each party to bear its own attorneys' fees and costs.  To that end, upon transfer of possession of, and title to, the Bodymakers to Belvac (the "**Bodymaker Transfer Date**"), both Belvac and Bang's counsel shall execute or otherwise consent to the filing of a Joint Stipulation for Dismissal with Prejudice, with proposed Agreed Order of Dismissal with Prejudice.  Counsel for Belvac shall file the fully executed Joint Stipulation of Dismissal with Prejudice within three (3) calendar days after the Bodymaker Transfer Date.

7.     Release of Belvac.  Bang, on behalf of itself and each of its successors, assigns, and other legal representatives, and any person or entity claiming by or through it, hereby unconditionally remises, releases, and forever discharges Belvac and its past and present officers, directors, shareholders, agents, employees, parent corporations, subsidiaries, affiliates, administrators, predecessors, and successors and assigns, as releasees (collectively, the "**Belvac Releasees**"), of and from any and all manner of actions, causes of action, suits, debts, dues, accounts, contracts, agreements, promises, warranties, guaranties, representations, liens,  judgments, claims, counterclaims, cross-claims, defenses, (and/or demands whatsoever, including claims for contribution and/or indemnity, whether now known or unknown, past or present, asserted or unasserted, contingent or liquidated, at law or in equity, or resulting from any assignment, if any, which Bang has, ever had, or may have, arising out of the Purchase Agreement, including, but not limited to, all rights, claims or interests in any equipment or services contemplated to be delivered or provided thereunder (collectively, the "**Bang Claims**"). Bang, on behalf of itself and any person or entity claiming by or through it, hereby absolutely, unconditionally, and irrevocably agrees never to commence, prosecute, cause to be commenced or prosecuted, voluntarily aid in any way, or foment any suit, action, or other proceeding (at law, in equity, in any regulatory proceeding, or otherwise) against any of the Belvac Releasees based on any of the Bang Claims.  If Bang or any person or entity claiming by or through Bang violates the foregoing covenant, Bang, on behalf of itself and any person or entity claiming by or through it, hereby agrees to pay, in addition to such other damages as any Belvac

Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Belvac Releasee as a result of such violation.

8.    Conditional Release of Bang.    Upon transfer of title to the four (4) Bodymakers, Belvac, on behalf of itself and each of its successors, assigns, and other legal representatives, and any person or entity claiming by or through it, hereby unconditionally remises, releases, and forever discharges Bang and its past and present officers, directors, shareholders, agents, employees, parent corporations, subsidiaries, affiliates, administrators, predecessors, and successors and assigns, as releasees (collectively, the "**Bang Releasees**"), of and from any and all manner of actions, causes of action, suits, debts, dues, accounts, contracts, agreements, promises, warranties, guaranties, representations, liens, judgments, claims, counterclaims, cross-claims, defenses, (and/or demands whatsoever, including claims for contribution and/or indemnity, whether now known or unknown, past or present, asserted or unasserted, contingent or liquidated, at law or in equity, or resulting from any assignment, if any, which Belvac has, ever had, or may have, arising out of the Purchase Agreement, including, but not limited to, all rights, claims or interests in any Collateral other than the Bodymakers (collectively, the "**Belvac Claims**"). Belvac, on behalf of itself and any person or entity claiming by or through it, hereby absolutely, unconditionally, and irrevocably agrees never to commence, prosecute, cause to be commenced or prosecuted, voluntarily aid in any way, or foment any suit, action, or other proceeding (at law, in equity, in any regulatory proceeding, or otherwise) against any of the Bang Releasees based on any of the Belvac Claims. If Belvac or any person or entity claiming by or through Belvac violates the foregoing covenant, Belvac, on behalf of itself and any person or entity claiming by or through it, hereby agrees to pay, in addition to such other damages as any Bang Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Bang Releasee as a result of such violation.

9.    Bang's Representations and Warranties.    In order to induce Belvac to enter into this Agreement, Bang represents and warrants to Belvac that as of the date hereof:

(a) This Agreement has been duly executed and delivered by Bang and constitutes the legal, valid and binding obligation of Bang, enforceable against it in accordance with its terms, subject to bankruptcy, insolvency, fraudulent conveyance and similar laws and to other limitations that will not materially impair the benefits intended hereby.

(b) No consent, order, qualification, validation, license, approval or authorization of, or filing, recording, registration or declaration with, or other action in respect of, any governmental body, authority, bureau or agency or other person is required in connection with the execution, delivery or performance of, or the legality, validity, binding effect or enforceability of, this Agreement.

(c) Other than the Litigation and the case titled *Nexus Steel, LLC, vs. JHO Real Estate Investment, LLC, et al.*, pending in the Superior Court of the State of Arizona, in and for the County of Maricopa, as Case No. CV2022-008873 (the "Foreclosure Action"), in which both Bang and Belvac are named as Defendants, and the

4

pendency of which neither party believes will limit either its respective rights to enter into this Agreement or its ability to perform its obligations under the same, there are no suits or proceedings pending or threatened in court or before any regulatory commission, board or other administrative governmental agency against or affecting Bang which will have a material adverse effect on the ability of Bang to fulfill its obligations under this Agreement. Further, Belvac acknowledges and agrees that it has no claim against Bang or JHO Real Estate Investment, LLC in, or against any property that is the subject of, the Foreclosure Action.

10.    Belvac's Representations and Warranties. In order to induce Bang to enter into this Agreement, Belvac represents and warrants to Bang that as of the date hereof:

(a) Belvac has, or will promptly provide at Bang's request, any and all Technical Documentation, as that term is defined in Section 11(c) of the Purchase Agreement, regarding or related to any of the Collateral set forth on Exhibit A, attached hereto (the "**Delivered Equipment**"), and Belvac hereby acknowledges and extends into perpetuity Bang's non-exclusive royalty-free license to use the Technical Documentation provided by Belvac to Bang to service, maintain, operate and use the Delivered Equipment.

11.    Adequate Representation. Each of the parties to this Agreement have had the opportunity to consult with legal counsel of their choice, understand and are fully aware of the terms contained in this Agreement and have voluntarily, without coercion or duress of any kind, entered into this Agreement and the documents executed in connection with this Agreement. Bang acknowledges, understands and agrees that Belvac has not provided, and is not providing, any tax, accounting or legal advice to them and/or their legal advisors and that Belvac makes no representations regarding any tax obligations or consequences related to or arising from this Agreement.

12.    No Waiver, Novation or Modification. The execution, delivery and effectiveness of this Agreement shall not, except as expressly provided in this Agreement, operate as a waiver of any right, power or remedy of Belvac. Nothing in this Agreement shall in any way impair, alter, waive, annul, vary or affect any provision, condition, covenant, right, or remedy contained in the Purchase Agreement, except as expressly provided in this Agreement. Nothing contained herein shall be deemed to extinguish, terminate or impair any of the duties or obligations owed by Bang to Belvac with respect to the Purchase Agreement except as expressly set forth herein, and nothing contained herein shall be deemed to extinguish, terminate or impair any of the obligations owed by Bang to Belvac with respect to any contract other than the Purchase Agreement.

13.    Prior Understandings. This Agreement supersedes all prior and contemporaneous understandings and agreements, whether written or oral, among the parties hereto relating to the matters provided for herein. In the event of any inconsistency between the provisions of this Agreement and the Purchase Agreement, the provisions of this Agreement shall govern and control.

14.    Notices. To the extent required under this Agreement, notice shall be deemed received on the first business day after it was transmitted to the following:

5

If to Belvac:

Belvac Production Machinery, Inc.
237 Graves Mill Road
Lynchburg, VA 24502-4203
Email: danielm@belvac.com
Attn: Daniel Metzger

If to Bang:

Vital Pharmaceuticals, Inc.
1600 North Park Drive
Weston, FL 33326
Email:CEO@vpxsports.com
Attn: Jack Owoc

15.    Counterparts; Signatures.  This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which when taken together shall constitute one and the same instrument.  Electronic or facsimile signatures shall be acceptable to bind the parties to the terms of this Agreement.

16.    Headings. Section headings in this Agreement are included herein for convenience of reference only and shall not constitute a part of this Agreement for any other purpose and should not be considered in interpreting any provision hereof.

17.    No Third-Party Beneficiaries.  Notwithstanding anything contained in this Agreement that could be interpreted to the contrary, this Agreement is intended neither to inure to the benefit, nor create any obligations to, any person who has not executed this Agreement.

18.    Governing Law.  This Agreement shall be construed in accordance with and governed by the internal laws of the State of Florida regardless of any conflicts of law rules or any other statement as to jurisdiction or applicable law.

19.    Entire Agreement.  The Agreement, together with all exhibits hereto, embodies the entire agreement among the parties hereto relating to the subject matter hereof and supersedes all prior agreements, representations and understandings, if any, relating to the subject matter hereof.  Neither this Agreement nor any of the provisions can be changed, waived, discharged or terminated, except by an instrument in writing signed by the parties against whom enforcement of the change, waiver, discharge or termination is sought.

20.    Binding Effect.  This Agreement shall be binding upon and inure to the benefit of Bang and Belvac and their respective successors and permitted assigns.

21.    Forum: Waiver of Jury Trial. ON AND AFTER THE BODYMAKER TRANSFER DATE, THE PARTIES AGREE THAT ANY SUIT FOR THE ENFORCEMENT OF THIS AGREEMENT OR THE PURCHASE AGREEMENT SHALL BE BROUGHT IN THE STATE COURTS LOCATED IN BROWARD COUNTY, FLORIDA, AND CONSENTS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS AND SERVICE OF PROCESS IN ANY SUCH SUIT BEING MADE UPON THE BANG BY MAIL AT THE ADDRESS SET FORTH IN THIS AGREEMENT. EACH PARTY HEREBY WAIVES ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH SUIT OR ANY SUCH COURT OR THAT SUCH SUIT IS BROUGHT IN AN INCONVENIENT FORUM. BANG AND BELVAC MUTUALLY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER LOAN DOCUMENTS OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS, (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PART, INCLUDING, WITHOUT LIMITATION, ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS OR ACTIONS OF BELVAC RELATING TO THE PURCHASE AGREEMENT OR THE ENFORCEMENT OF ITS RIGHTS THEREUNDER, AND AGREE THAT NO PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. EXCEPT AS PROHIBITED BY LAW, BANG HEREBY WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION (WHETHER IN CONTRACT OR TORT) ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES.    BANG CERTIFIES THAT NO REPRESENTATIVE OR ATTORNEY OF BELVAC HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT BELVAC WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR BELVAC TO ACCEPT THIS AGREEMENT.

IN WITNESS WHEREOF, the parties hereto have each caused this Settlement Agreement to be executed as of the Effective Date.

VITAL PHARMACEUTICALS, INC.,
D/B/A BANG ENERGY, a Florida
corporation

By: _____
Name: John H Owoc
Its: CEO and CSO

BELVAC PRODUCTION MACHINERY,
INC., a Virginia corporation

By:_____

Name:_____

Its:_____

**<u>Exhibit B</u>**

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                    Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]                 Case No.: 22-17842-PDR

      Debtors.                                            (Jointly Administered)
_____/

**ORDER GRANTING DEBTORS' MOTION TO APPROVE COMPROMISE
BETWEEN (I) DEBTOR, VITAL PHARMACEUTICALS, INC.; AND (II) BELVAC
PRODUCTION MACHINERY, INC., AND REQUEST TO PAY PRE-PETITION
CLAIM OF STORAGE FACILITY**

      **THIS MATTER** came before the Court upon the *Debtors' Motion to Approve*

*Compromise Between (I) Debtor, Vital Pharmaceuticals, Inc.; and (II) Belvac Production*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

*Machinery, Inc., and Request to Pay Pre-Petition Claim of Storage Facility* (the "<u>Motion</u>") [ECF No. ____] filed by the Debtors[2]. The Court, having considered the Motion and the Court file, and the Debtors, by submitting this form of order having represented that the Motion was served on all parties required by Local Rule 9013-1(D), that the 21-day response time provided by that rule has expired, that no one has filed, or served on the Debtors, a response to the Motion, and that the form of order was attached as an exhibit to the Motion, and being otherwise fully advised in the premises, and for good cause, it is hereby

     **ORDERED AND ADJUDGED** as follows:

     1.    The Motion is **GRANTED**.

     2.    The Agreement attached to the Motion as Exhibit A is **APPROVED** in its entirety, and each and every provision of the Agreement is incorporated herein as if fully set forth in this order.

     3.    The Debtors are authorized to pay the Recovery Expenses up to the sum of $100,000.00, which includes the pre-petition storage fees owed to Dunkel Brothers for storing the equipment subject of the Agreement.

     4.    The Parties are directed to comply with the terms of the Agreement and the Court reserves jurisdiction to enforce the terms and conditions of the Agreement.

                                                                 #   #   #

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Motion.

Submitted by:
Jordi Guso, Esq.
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com
Email:  mniles@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*