**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No. 22-17842 (PDR) |
| Debtors. | (Jointly Administered) |

**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF LINCOLN PARTNERS ADVISORS LLC AS FINANCIAL ADVISOR TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, EFFECTIVE AS OF NOVEMBER 4, 2022**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the bankruptcy cases of the above-captioned debtors (the "Debtors"), hereby submits this application (the "Application"), pursuant to sections 328 and 1103 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules"), and consistent with the Guidelines For Reviewing Applications for Compensation and Reimbursement of Expenses filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases (the "U.S. Trustee Guidelines"), issued by the Executive Office of the United States Trustee (the "EOUST"), for the entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing and approving the employment and retention of

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019)

Lincoln Partners Advisors LLC ("Lincoln") as financial advisor to the Committee, effective as of November 4, 2022. In support of this Application, the Committee submits the *Declaration of Brent C. Williams in Support of Application of the Official Committee of Unsecured Creditors for an Order Authorizing and Approving the Employment and Retention of Lincoln Partners Advisors LLC as Financial Advisor, Effective as of November 4, 2022* (the "Williams Declaration"), a managing director of Lincoln, attached hereto as **Exhibit B**, and the *Engagement Letter between Lincoln Partners Advisors LLC and the Committee* (the "Engagement Letter") attached hereto as **Exhibit C**, and respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Order of Reference*, dated March 25, 2012 (F. Moreno, C.J.). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are sections 328(a) and 1103 of the Bankruptcy Code, Rule 2014(a) of the Bankruptcy Rules, and Rule 2014-1 of the Local Rules.

## BACKGROUND

3. On October 10, 2022 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Court") commencing these cases (the "Chapter 11 Cases"). No trustee or examiner has been appointed in the Chapter 11 Cases.

4. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to manage their properties and operate their businesses as debtors in possession.

5. On November 1, 2022, the Office of the United States Trustee appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code. [Docket No. 245]. The Committee is comprised of seven members: (i) Stellar Group, Inc..; (ii) Archer Daniels Midland Co.; (iii) Trinity Logistics, Inc.; (iv) Ardagh Metal Packaging USA Corp.; (v) Crown Cork & Seal USA, Inc.; (vi) Quik Trip Corporation; and (vii) XPO Logistics, L.L.C. (a.k.a. RXO Inc.).

6. On November 2, 2022, the Committee selected Lowenstein Sandler LLP ("Counsel") to serve as its lead counsel.

7. On November 4, 2022, the Committee selected Lincoln to serve as its financial advisor, Miller Buckfire & Co., LLC ("Miller Buckfire") to serve as its investment banker, and Sequor Law, P.A. ("Sequor") to serve as its Florida counsel in the Chapter 11 Cases.

8. Information regarding the Debtors' history, business operations, capital structure, secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 26].

**RELIEF REQUESTED**

9. By this Application, the Committee respectfully requests the entry of an order pursuant to sections 328, 330 and 1103(a) of the Banrkupcy Code authorizing and approving the employment and retention of Lincoln to perform financial advisory services as its counsel to perform legal services for the Committee relating to the Chapter 11 Cases, effective as of November 4, 2022.

A.    **Qualifications of Professionals**

10. Lincoln has significant qualifications and experience in providing the services contemplated herein. Lincoln's practice consists of senior financial, management consulting,

accounting, and other professionals who specialize in providing restructuring, transaction advisory, litigation support, solvency, and valuation assistance and providing a focus on viable solutions that maximize value for companies and creditors, typically in distressed business settings.  Lincoln has acted as financial advisor, crisis manager, and corporate officer in middle market to large multinational restructurings across a wide array of industries.  Lincoln's services include forensic analysis, plan development and implementation, and advice on sale/merger transactions.

       11.     Moreover, in addition to numerous out-of-court restructuring situations, Lincoln and its professionals have been actively involved in major chapter 11 cases. *See, e.g., In re Benevis Corp*, Case No. 20-33918 (Bankr. SD. TX. Aug. 2, 2020), ECF No. 348 (order authorizing employment of Lincoln as investment banker to the debtors); *In re Pyxus International, Inc.*, Case No. 20-11570 (Bankr. D. Del. June 15, 2020), ECF No. 373 (order authorizing employment of Lincoln as financial advisor to the official committee of equity security holders); *In re Valeritas Holdings, Inc.*, Case No. 20-10290 (Bankr. D. Del. Feb. 9, 2020), ECF No. 176  (order authorizing employment of Lincoln as investment banker to the debtors); *In re Dura Automotive Sys., LLC*, Case No. 19-12378 (KBO) (Bankr. D. Del. Dec. 19, 2019), ECF No. 453 (order authorizing employment of Lincoln as financial advisor and investment banker to the official committee of unsecured creditors); *In re PG&E Corp.*, Case No. 19-30088 (DM) (Bankr. N.D. Cal. May 10, 2019), ECF No. 1976 (order authorizing employment of Lincoln as financial advisor to the official committee of tort claimants); *In re EO Liquidating, LLC (f/k/a Eastern Outfitters)*, Case No. 17-10243 (LSS) (Bankr. D. Del. Mar. 3, 2017), ECF No. 173 (order authorizing employment of Lincoln as investment banker to the Debtors); *In re CRS Reprocessing, LLC*, Case No. 17-32565 (Bankr. W.D. Ky. Aug. 9, 2017,

ECF No. 137 (order authorizing employment of Lincoln as investment banker to the Debtors); *In re Visteon Corporation, et al.*, No. 09-11786 (Bankr. D. Del. 2009) (order authorizing employment of Lincoln as investment banker to the offical committee of unsecured creditors as as co-advisor along with the committee's retained financial advisor).

12.  The Committee chose Lincoln to act as its financial advisor in these Chapter 11 Cases based in large part on the experience outlined above. The Committee believes that Lincoln's services are necessary to enable the Committee to assess and monitor the Debtors' restructuring efforts in furtherance of the Committee's obligations to protect the interests of and maximize value for all unsecured creditors.  Moreover, based on the experience of Lincoln's professionals in large, complex chapter 11 cases, the Committee believes that Lincoln is well-qualified to provide such services in a cost-effective, efficient and timely manner.

**B.**     **Services to be Rendered**

13.  Lincoln will provide such financial advisory services to the Committee as the Committee deems necessary during the course of these Chapter 11 Cases.  Lincoln intends to communicate regularly with the Committee and its legal advisors to ensure that the actual financial advisory services performed are appropriate based on the status of the case and needs of the Committee.  The services to be rendered by Lincoln, which services may be subject to modification at the Committee's request, are necessary to enable the Committee to faithfully execute its statutory duties to unsecured creditors.  The services to be provided by Lincoln will be at the request and direction of the Committee, so as to avoid duplicative efforts among the Committee's professionals retained in these Chapter 11 Cases.

14. As is set forth in the Engagement Letter, and subject to further order of this Court, the Committee has requested that Lincoln render financial advisory services with respect to the following areas:

(a) Assist in the review of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

(b) Assist in the preparation of analyses required to assess any liquidity reporting under & compliance with any order approving Debtor-In-Possession ("DIP") financing or use of cash collateral;

(c) Assist with the assessment and monitoring of the Debtors' short term cash flow, liquidity, operating results, and cash management;

(d) Assist with the review of the Debtors' key employee incentive, management incentive, and any key employee retention and other employee benefits programs;

(e) Assist with the review of the Debtors' potential disposition or liquidation of both core and non-core assets;

(f) Assist with the review of the Debtors' analysis of core business assets, new business development initiatives and investments, and joint ventures;

(g) Assist with the review of the Debtors transition to a new distribution network;

(h) Assist with the review of the Debtors' identification of potential cost savings, including overhead and operating expense reductions and efficiency improvements;

(i) Assist in the review of the claims reconciliation and estimation process;

(j) Assist in the review of corporate governance;

(k) Assist in the review of intellectual property;

(l) Assist with the review of the Debtors' corporate structure, including analysis of intercompany activities, cost and tax allocations, and related claims;

(m) Assist with analyzing entity-level value waterfalls and potential recoveries with respect to any proposed plan of reorganization;

(n) Assist in the review of other financial information prepared by the Debtors, including, but not limited to, cash flow projections and budgets, business

plans, cash receipts and disbursement analysis, asset and liability analysis, and the economic analysis of proposed transactions for which Court approval is sought;

(o) Attend meetings and assistance in discussions with the Debtors, potential investors, banks, other secured lenders, the Committee and any other official committees organized in these chapter 11 cases, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

(p) Assist in the review and/or preparation of information and analysis necessary for the negotiation of, objection to and/or confirmation of a plan and related disclosure statement in these chapter 11 cases;

(q) Render such other general business consulting or such other assistance as the Committee or its counsel may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in these cases;

(r) Assist with insurance issues concerning the Company, as the Committee or its counsel may deem necessary;

(s) Assist with forensic accounting and related analysis of the Company, as the Committee or its counsel may deem necessary;

(t) Assist in the evaluation and analysis of pre-petition transactions, including avoidance actions (e.g., fraudulent conveyances and preferential transfers);

(u) Assist in the evaluation and analysis of the Debtors' First Day Motions;

(v) Assist in the prosecution of Committee responses/objections to the Debtors' motions, including attend depositions and provide expert reports and/or testimony on case issues as required by the Committee; and

(w) Review and analyze financial information prepared by the Debtors, their accountants and/or other financial advisors.

15. In addition to services related to these areas, Lincoln understands that it may be requested to participate, at the Committee's request and to the extent appropriate, in meetings and discussions with the Committee, the Debtors, and the other parties-in-interest and with their respective professionals.

C. **No Duplication of Services**

16. The services to be provided by Lincoln will be at the request and direction of the Committee so as to avoid duplicative efforts among the Committee's professionals retained in this case. As indicated in the Williams Declaration, Lincoln acknowledges that Miller Buckfire has been selected by the Committee to perform investment banking services for the Committee. The investment banking services that Miller Buckfire is to provide to the Committee (*e.g.*, potential DIP and exit financing, sale process if any) are separate and distinct from the restructuring and financial advisory services that Lincoln will be providing to the Committee (described above). The Committee has approved a delineation of responsibilities between Lincoln and Miller Buckfire to achieve case efficiencies and avoid duplication of efforts. Moreover, Lincoln has been a co-advisor before and thus they have experience ensuring that best practices are maintained in the provision of services to the Committee.

17. Lincoln intends to communicate regularly with the Committee and its legal advisors to ensure that the actual financial advisory services performed are appropriate based on the status of the case and needs of the Committee. Lincoln will coordinate all tasks with Counsel and Miller Buckfire to achieve case efficiencies and avoid duplication of efforts. The Committee believes it is necessary to employ Lincoln as its financial advisor to render the foregoing professional services. In light of Lincoln's substantial experience and expertise and the complex nature of the Debtors' business and financial affairs, the Committee believes that Lincoln is well qualified to advise it in these Chapter 11 Cases.

D. **Indemnification Provisions and Limitation of Liability**

18. Except in the case of conduct by Lincoln or its agents involving gross negligence, willful misconduct, reckless misconduct, or fraud, Lincoln shall not be liable under this

agreement to the Committee or their respective successors, assigns or affiliates for damages in excess of the amount of the fees paid hereunder to Lincoln. The terms of this paragraph shall survive the termination of this agreement and such commitments shall extend upon the terms set forth in this paragraph to any controlling person, director, officer, employee or affiliate of Lincoln.

19. The Committee has agreed that Lincoln shall not be liable for any delays resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

20. Except in the case of conduct by Lincoln or its agents involving gross negligence, willful misconduct, reckless misconduct, or fraud, the Committee has agreed that the parties shall not be liable to each other for any consequential, incidental, special or punitive damages, nor shall Lincoln be liable for direct compensatory damages in excess of the fees actually received by Lincoln for the performance of services hereunder.

E.   **Disinterestedness of Professionals**

21. To the best of the Committee's knowledge and based upon and subject to the disclosures made in the Williams Declaration filed contemporaneously herewith, Lincoln is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code and the Committee is satisfied that (i) Lincoln represents no interest adverse to the Committee, the Debtors, their estates, or any other party in interest in the matters upon which it is to be engaged and that its employment is in the best interest of the estates; (ii) Lincoln together with its Managing Directors and Directors do not have any financial interest in or business with the Debtors; (iii) Lincoln has no connection with the U.S. Trustee or any other person employed in

the office of the U.S. Trustee; and (iv) Lincoln has no connection with the bankruptcy judge approving the employment of Lincoln as the Committee's financial advisor. Lincoln has not provided, and will not provide, any professional services to the Debtors, any other creditors, other parties in interest, or their respective attorneys and accountants with regard to any matter related to these Cases.

### F. Professional Compensation and Fee Structure

22. Lincoln advised the Committee that it intends to charge its standard hourly rates for professional services rendered, plus reimbursement of actual and necessary expenses incurred by Lincoln. The professional fees shall be calculated by multiplying the hours worked by the standard hourly billing rates in effect for the specific personnel involved. The hourly rates charged by Lincoln for the services provided by its personnel differ based upon, among other things, each professional's level of experience, geographic differentials, and types of services being provided. In the ordinary course of business, Lincoln periodically revises its hourly rates to reflect promotions and other changes in personnel responsibilities, increases in experience, and increases in the cost of doing business.

23. Lincoln has advised the Committee that its fees will be commensurate with the fees charged to its other clients and in other cases of this size (provided such clients are billed hourly). Lincoln has also advised the Committee that it intends to make application to the Court for allowance of its compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the terms of any order establishing procedures for interim compensation that may be entered in these Chapter 11 Cases. Lincoln's compensation for services rendered on behalf of the Committee shall be fixed by the Court after due application.

24. For professional services, fees are based on Lincoln's standard hourly rates. The proposed rates of compensation, subject to final Court approval, are the customary hourly rates in effect when services are performed by the professionals and paraprofessionals who provide services to the Committee. The current standard hourly rates for Lincoln personnel that will work on this engagement are as follows:

| Title | 2022 Rates |
|---|---|
| Managing Director | $895-$1,075/hour |
| Director/Vice President | $715-$805/hour |
| Associates/Analysts | $355 to $625/hour |
| Administrative Staff | $225/hour |

These standard hourly rates are subject to periodic adjustment, which shall be noted on the invoices for the first time period in which the revised rates become effective. Lincoln believes that its standard hourly rates are at or below those of firms Lincoln considers its peers.

25. Following negotiations between Lincoln and the Committee, Lincoln has agreed to discount its fees by 10%. Lincoln's rates as set forth above are inclusive of this discount. There will be no limitation on Lincoln's right to seek reimbursement of all out-of-pocket disbursements and expenses.

26. Consistent with Lincoln's policy with respect to its other clients, Lincoln shall be reimbursed, upon request from time to time, for all reasonable and out-of-pocket expenses incurred in rendering services to the Committee (documented to the extent expenses exceed $75.00 as per Lincoln's expense policy) including without limitation, transportation, lodging, meals, communications, color copying, color printing, document services and legal counsel (including, but not limited to, engagement, retention and application for or disputes over fees and expenses payable).

27. Lincoln acknowledges that neither the Committee, its constituents, nor any of its advisors or professionals (including, but not limited to Counsel), shall be liable for the fees, expenses or other amounts payable to Lincoln.

28. Regardless of the time and manner of interim compensation, Lincoln understands that, subject to this Court's orders, Lincoln will be required to follow the procedures for final allowance of fees at the end of the Chapter 11 Cases.

29. No promises have been received by Lincoln, nor any employee or exclusive independent contractor thereof, as to payment or compensation in connection with these Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code. Except for internal agreements among the employees and exclusive independent contractors of Lincoln regarding the sharing of revenue or compensation, neither Lincoln nor any of its employees or exclusive independent contractors has entered into an agreement or understanding to share compensation with any other entity as described in Bankruptcy Code Section 504 and Bankruptcy Rule 2016.

## **NOTICE**

30. Notice of this Application has been given to (i) the Office of the United States Trustee for Region 21, 51 SW First Ave, Room 1204, Miami, FL 33130 (attn: J. Steven Wilkes); (ii) Latham & Watkins LLP, 555 Eleventh St, NW Suite 1000, Washington, DC 20004 (attn: Andrew Sorkin, Esq.) and 1271 Avenue of the Americas, New York, NY 10020 (attn: George A. Davis, Esq., Tianjio Li, Esq., Brian S. Rosen, Esq., and Jonathan J. Weichselbaum, Esq.) and Berger Singerman LLP, 1450 Brickell Ave., Suite 1900, Miami, FL (attn: Jordi Guso, Esq., and Michael J. Niles, Esq.); and (iii) those persons who have requested notice pursuant to Bankruptcy Rule 2002. The Committee submits that, in light of the nature of the relief requested, no other or further notice need be given.

31. No previous application for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, the Committee respectfully requests that this Court enter an Order, substantially in the form submitted herewith, authorizing the Committee to retain and employ Lincoln as counsel to the Committee, effective as of November 4, 2022, and grant the Committee such other and further relief as the Court deems just or proper.

Dated: November 17, 2022                    Respectfully submitted,

**The Official Committee of Unsecured Creditors of Vital Pharmaceuticals, Inc.,** *et al.*

By: _____
Clint E. Pyle of Stellar Group, Inc., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity

By: _____
Mark H. Speiser of Archer Daniels Midland Co., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity

-13-

31. No previous application for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, the Committee respectfully requests that this Court enter an Order, substantially in the form submitted herewith, authorizing the Committee to retain and employ Lincoln as counsel to the Committee, effective as of November 4, 2022, and grant the Committee such other and further relief as the Court deems just or proper.

Dated: November 17, 2022

Respectfully submitted,

**The Official Committee of Unsecured Creditors of Vital Pharmaceuticals, Inc.,** *et al.*

By:_____
Clint E. Pyle of Stellar Group, Inc., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity

By:_____
Mark H. Speiser of Archer Daniels Midland Co., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity