*EXHIBIT C*



**November 4, 2022**

Clint E. Pyle, Co-Chair
    -and-
Mark H. Speiser, Co-Chair
Official Committee of Unsecured Creditors
    c/o Jeffrey L. Cohen
Lowenstein Sandler LLP
1251 Avenue of the Americas, 17th Floor
New York, New York 10020

Dear Co-Chairs:

This letter agreement ("Letter Agreement") confirms our mutual understanding regarding the retention of Lincoln Partners Advisors LLC ("Lincoln Advisors") by The Official Committee of Unsecured Creditors (the "Committee") of Vital Pharmaceuticals Inc., et al., Chapter 11 Debtors in Case No. 22-17842-PDR (collectively with any entity formed or used for the purpose set forth herein, the "Debtors" or the "Company"). Lincoln Advisors acknowledges and agrees that this Letter Agreement (including Exhibit I hereto) is subject to Bankruptcy Court (as defined below) approval and the terms of the order of the Bankruptcy Court approving Lincoln Advisors' retention.

**Lincoln Advisors' Services and Role**

1.     In connection with this engagement, Lincoln Advisors is being retained to provide financial advisory services for the Committee in collection with the Debtors' restructuring and Chapter 11 cases (the "Chapter 11 Cases"), including the analysis, consideration and potential development of a Chapter 11 plan or plans of reorganization, before the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"). Upon retention, Lincoln Advisors will work at the direction of the Committee to:

    (a)     Assist in the review of financial related disclosures required by the Court, including the Schedules of Assets and Liabilities, the Statement of Financial Affairs and Monthly Operating Reports;

    (b)     Assist in the preparation of analyses required to assess any liquidity reporting under & compliance with any order approving Debtor-In-Possession ("DIP") financing or use of cash collateral;

    (c)     Assist with the assessment and monitoring of the Debtors' short term cash flow, liquidity, operating results, and cash management;

    (d)     Assist with the review of the Debtors' key employee incentive, management incentive, and any key employee retention and other employee benefits programs;

    (e)     Assist with the review of the Debtors' potential disposition or liquidation of both core and non-core assets;

    (f)     Assist with the review of the Debtors' analysis of core business assets, new business development initiatives and investments, and joint ventures;



(g)    Assist with the review of the Debtors transition to a new distribution network;

(h)    Assist with the review of the Debtors' identification of potential cost savings, including overhead and operating expense reductions and efficiency improvements;

(i)    Assist in the review of the claims reconciliation and estimation process;

(j)    Assist in the review of corporate governance;

(k)    Assist in the review of intellectual property;

(l)    Assist with the review of the Debtors' corporate structure, including analysis of intercompany activities, cost and tax allocations, and related claims;

(m)    Assist with analyzing entity-level value waterfalls and potential recoveries with respect to any proposed plan of reorganization;

(n)    Assist in the review of other financial information prepared by the Debtors, including, but not limited to, cash flow projections and budgets, business plans, cash receipts and disbursement analysis, asset and liability analysis, and the economic analysis of proposed transactions for which Court approval is sought;

(o)    Attend meetings and assistance in discussions with the Debtors, potential investors, banks, other secured lenders, the Committee and any other official committees organized in these chapter 11 cases, the U.S. Trustee, other parties in interest and professionals hired by the same, as requested;

(p)    Assist in the review and/or preparation of information and analysis necessary for the negotiation of, objection to and/or confirmation of a plan and related disclosure statement in these chapter 11 cases;

(q)    Render such other general business consulting or such other assistance as the Committee or its counsel may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in these cases;

(r)    Assist with insurance issues concerning the Company, as the Committee or its counsel may deem necessary;

(s)    Assist with forensic accounting and related analysis of the Company, as the Committee or its counsel may deem necessary;

(t)    Assist in the evaluation and analysis of pre-petition transactions, including avoidance actions (e.g., fraudulent conveyances and preferential transfers);

(u)    Assist in the evaluation and analysis of the Debtors' First Day Motions;



    (v)    Assist in the prosecution of Committee responses/objections to the Debtors' motions, including attend depositions and provide expert reports and/or testimony on case issues as required by the Committee; and

    (w)    Review and analyze financial information prepared by the Debtors, their accountants and/or other financial advisors.

The Committee acknowledges that Lincoln Advisors are not advisors as to legal, tax, accounting or regulatory matters in any jurisdiction. The Committee should consult with its own advisors concerning such matters and is responsible for making its own independent investigation and appraisal of the transactions contemplated by this Letter Agreement, and Lincoln Advisors shall have no responsibility or liability to the Committee with respect such matters.

**Company Information**

2.    The Committee recognizes and confirms that in rendering services hereunder, Lincoln Advisors will be using and relying on, and assuming the accuracy of, without any independent verification, data, material and other information (collectively, the "Information") furnished to Lincoln Advisors by or on behalf of the Committee, the Company or other third parties (including their agents, counsel, employees and representatives) and other Information available from public sources and other sources deemed reliable by Lincoln Advisors. The Committee understands that Lincoln Advisors will not be responsible for independently verifying any such Information or for independently appraising the Debtors' assets and Lincoln Advisors shall not be liable with respect to accuracy or completeness of any such Information. Unless required by subpoena or other valid legal or regulatory process, and prior written notice is provided to the Committee (if legally permissible) so that the Committee may challenge such disclosure, Lincoln Advisors will not disclose to any third party (other than Lincoln International and Lincoln Advisors' or the Committee's counsel) any portion of the Information provided by the Committee which constitutes confidential, proprietary or trade secret information except in furtherance of the Committee's engagement hereunder. Lincoln Advisors will not use such confidential Information for any purpose other than pursuant to Lincoln Advisors' engagement hereunder. The Committee acknowledges that Lincoln Advisors and Lincoln International have no obligation to disclose any information acquired in connection with various investment banking and financial advisory relationships with, or services for, other clients and customers, to the Committee or the Company or to use such information in connection with any transaction contemplated by this Letter Agreement.

**Compensation and Reimbursement of Expenses**

3.    All fees and expenses hereunder shall be paid subject to application to the Bankruptcy Court pursuant to the court-approved compensation procedures and allowance by the Bankruptcy Court.

    (a)    <u>Compensation</u>: Lincoln Advisors shall be paid in cash on an hourly basis, subject to periodic rate adjustments by Lincoln Advisors, based upon the time incurred by Lincoln Advisors' professionals in providing the services under this Agreement to the Committee as follows:

| Title / Hourly Rate (Range): | |
|---|---|
| Managing Directors: | $895 to $1,075 per hour |
| Directors / Vice Presidents: | $715 to $805 per hour |
| Associates / Analysts: | $355 to $625 per hour |
| Administrative Staff: | $225 per hour |



    (b)    <u>Expense Reimbursement</u>: Further, in addition to the compensation described in paragraph 3(a) above and the rights provided in Exhibit I, Lincoln Advisors shall be reimbursed, upon request from time to time, for all reasonable and out-of-pocket expenses (documented to the extent expenses exceed $75.00 as per Lincoln Advisors' expense policy) incurred by Lincoln Advisors in connection with the matters contemplated by this Letter Agreement, including without limitation, transportation, lodging, meals, communications, color copying, color printing, document services and legal counsel (including, but not limited to, engagement (including negotiation of this Letter Agreement), retention and application for or disputes over fees and expenses payable).

    (c)    All compensation and expense reimbursement paid pursuant to this paragraph 3 and all indemnity payments made pursuant to Exhibit I hereto shall be entitled to priority as an expense of administration in the Chapter 11 Cases.

    (d)    The Committee acknowledges and agrees that the rates payable to Lincoln Advisors pursuant to this Letter Agreement are reasonable based on the size and complexity of this case. The Committee and Lincoln Advisors acknowledge and agree that the hours worked, the results achieved and the ultimate benefit to the Committee of the work performed, in each case, in connection with this engagement, may be variable, and that the Committee and Lincoln Advisors have taken this into account in setting the fees under this Letter Agreement.

**Bankruptcy Court Approval**

4.    This Letter Agreement is subject to the entry of an order by the Bankruptcy Court in the Chapter 11 Cases approving the retention of Lincoln Advisors pursuant to the terms hereof. The Committee shall use commercially reasonable efforts to obtain authorization of the retention of Lincoln Advisors pursuant to, and subject to the standards of review set forth in, Section 1103 of the Bankruptcy Code of the Bankruptcy Code, on the terms and provisions in this Letter Agreement. The Committee shall supply Lincoln Advisors with a draft of the retention application and proposed order prior to the filing of such application and proposed order to enable Lincoln Advisors and its counsel to review and comment thereon. The order approving this Letter Agreement and authorizing Lincoln Advisors' retention shall be acceptable to Lincoln Advisors in its sole and absolute discretion.

**Engagement and Reliance**

5.    The Committee recognizes that Lincoln Advisors has been retained only by the Committee and that the Committee's engagement of Lincoln Advisors is not deemed to be on behalf of and is not intended to and does not confer rights upon any individual members of the Committee. Unless otherwise expressly agreed, no one other than the Committee is authorized to rely upon the engagement of Lincoln Advisors or any statements, advice, opinions or conduct by Lincoln Advisors.

**Indemnification and Remedies**

6.    The Committee hereby agrees to the provisions attached to this Letter Agreement as Exhibit I, which provisions are incorporated herein and made a part hereof. The Company shall provide indemnification and other obligations set forth in Exhibit I hereto, subject to approval of the Bankruptcy Court of the Committee's retention and employment of Lincoln Advisors. The terms and provisions of Exhibit I shall survive any termination or expiration of this Letter Agreement.



**Other Terms**

7.      In the event that (a) the Committee's application for employment of Lincoln Advisors under Section 1103 of the Bankruptcy Code is not granted by the Bankruptcy Court or (b) the form of the order entered by the Bankruptcy Court granting such employment application is not acceptable to Lincoln Advisors in its sole and absolute discretion, this Letter Agreement shall terminate immediately. Otherwise, either party hereto may terminate this Letter Agreement at any time but only upon 30 days prior written notice of termination to the other party, without continuing obligation except as set forth in this paragraph. The following paragraphs shall survive and remain in full force and effect following the termination of this Letter Agreement and the completion of Lincoln Advisors' engagement hereunder: 3 (to the extent such provisions relate to payment of compensation for services rendered, or to reimbursement of expenses incurred, on or prior to the effective date of termination), 4, 5, 6 (including Exhibit I) and 7 through 14. This Letter Agreement shall inure to the sole and exclusive benefit of the Committee and Lincoln Advisors and their respective successors and, with respect to paragraph 6 (including the provisions of Exhibit I), the Indemnified Parties (as defined in Exhibit I). This Letter Agreement constitutes the entire agreement between the parties and supersedes any and all prior or contemporaneous arrangements, understandings, written or oral, between them relating to the subject matter hereof and has been duly authorized and executed by each of the parties hereto and, once executed by the other party, constitutes the legal, valid and binding obligation of each party. This Letter Agreement may not be assigned by the Committee without the prior written consent of Lincoln Advisors. This Letter Agreement may not be amended or modified, nor may any provision be waived, except in writing signed by the parties. THE COMMITTEE, THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY LAW, ON BEHALF OF ITS EQUITY OWNERS AND ITS CREDITORS) AND LINCOLN ADVISORS EACH WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, CLAIM, SUIT OR PROCEEDING WITH RESPECT TO THE ENGAGEMENT OF LINCOLN ADVISORS UNDER THIS LETTER AGREEMENT OR ITS ROLE IN CONNECTION HEREWITH, which shall be heard by the Bankruptcy Court, to the extent the Bankruptcy Court has jurisdiction over such dispute. The Company shall be deemed bound to the terms of this Letter Agreement (including Exhibit I) applicable to it upon entry of an order approving the retention of Lincoln Advisors. The Committee agrees that Lincoln Advisors is acting as an independent contractor to perform the services for the Committee contemplated by this Letter Agreement and neither this Letter Agreement nor Lincoln Advisors' services to the Committee shall create any agency relationship with the Committee or any other party.

8.      The Committee may not publicly disclose or summarize any advice, whether formal or informal, rendered by Lincoln Advisors pursuant to this Letter Agreement without Lincoln Advisors' prior written consent.

9.      Notwithstanding anything contained in this Letter Agreement to the contrary: (a) Lincoln Advisors makes no representations or warranties, express or implied, about the Company's ability to (i) successfully improve its operations, (ii) maintain sufficient liquidity to operate its business or (iii) successfully complete any sale, transaction, restructuring, plan of reorganization or any other transaction (or whether any of the foregoing will be available to the Company), (b) neither Lincoln Advisors nor any of its affiliates makes any representation, warranty or commitment, express or implied, to underwrite, place or purchase any securities or provide any form of financing to the Company, (c) Lincoln Advisors is not assuming any responsibility for the underlying business decision of the Debtors, the Committee or any third party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any restructuring, sale transaction or other transaction and (d) Lincoln Advisors shall have no responsibility to provide "crisis management" services or to design or implement any initiatives to improve the Company's operations, profitability, cash management or liquidity.



**Public Announcements**

10.     Lincoln Advisors may publish (including on its website), at its own expense, advertisements announcing the completion of any restructuring transaction (including the name of the Company) and Lincoln Advisors' role therein (which may include the reproduction of the Company's logo and a hyperlink to the Company's website).

**Miscellaneous**

11.     This Letter Agreement shall be governed exclusively by and construed in accordance with the internal substantive laws of the State of Illinois. The Company and Lincoln Advisors irrevocably submit themselves to the jurisdiction of the Bankruptcy Court, and if the Bankruptcy Court chooses not to accept jurisdiction, to the non-exclusive jurisdiction of any State or Federal court sitting in Chicago, Illinois, over any suit, action or proceeding arising out of or relating to this Letter Agreement. The Company irrevocably waives, to the fullest extent permitted by law, any objection it may now or hereafter have to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in such a court has been brought in an inconvenient forum.  The Company agrees that a final judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon the Company and may be enforced in any other courts to whose jurisdiction the Company is or may be subject, by suit upon such judgment.

12.     The Committee acknowledges that this Letter Agreement is being entered into with Lincoln Advisors, an Illinois limited liability company. The Committee agrees that it has contracted solely with Lincoln Advisors, and shall look solely to Lincoln Advisors, for performance of the terms and condition hereof. The Committee shall have no recourse against any affiliate of Lincoln Advisors based on this Letter Agreement or the terms, conditions, and contemplated services to be provided hereunder.

13.     The invalidity or unenforceability of any provision of this Letter Agreement shall not affect the validity or enforceability of any other provision of this Letter Agreement, which shall remain in full force and effect pursuant to the terms of this Letter Agreement. There shall be no construction of any provision against Lincoln Advisors due to the fact that this Agreement was drafted by Lincoln Advisors, and the parties to this Letter Agreement waive any statute or rule of law to such effect. Subject to Bankruptcy Court approval of the Committee's retention of Lincoln Advisors, Committee has all requisite power and authority to enter into this Letter Agreement and to perform its obligations hereunder. This Letter Agreement has been duly and validly authorized by all necessary action on the part of the Committee and has been duly executed and delivered by the Committee and constitutes a legal, valid and binding agreement of the Committee, enforceable in accordance with its terms. This Letter Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

14.     Certain laws and regulations, including, but not limited to, Section 326 of the USA PATRIOT Act of 2001, as amended, and regulations promulgated thereunder, require Lincoln Advisors to collect certain identification elements and perform certain subsequent screening and diligence in connection with certain investment banking services.  Accordingly, the Company shall deliver to Lincoln Advisors, together with all applicable supporting documentation, the information Lincoln Advisors deems reasonably necessary to complete such screening and diligence.



If the foregoing correctly sets forth our understanding, please sign the enclosed copy of this Letter Agreement in the space provided and return it to us.

Very truly yours,

Lincoln Partners Advisors LLC

By: _____
Name: Brent C. Williams
Title: Managing Director

Accepted and agreed to as of
the date first set forth above

The Official Committee of Unsecured Creditors of Vital Pharmaceuticals, Inc., *et al.*

By: _____
Clint E. Pyle of Stellar Group, Inc., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity

By: _____
Mark H. Speiser of Archer Daniels Midland Co., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity



If the foregoing correctly sets forth our understanding, please sign the enclosed copy of this Letter Agreement in the space provided and return it to us.

Very truly yours,

Lincoln Partners Advisors LLC

By: _____
Name: Brent C. Williams
Title: Managing Director

Accepted and agreed to as of
the date first set forth above

The Official Committee of Unsecured Creditors of Vital Pharmaceuticals, Inc., *et al.*

By:_____
Clint E. Pyle of Stellar Group, Inc., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity

By:_____
Mark H. Speiser of Archer Daniels Midland Co., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity



**EXHIBIT I**
## INDEMNIFICATION AND REMEDIES

1.  **Indemnification.**  In the event that Lincoln Advisors, any affiliated entity of Lincolns Advisors, or any of their respective officers, directors, members, employees, agents, representatives, affiliates or any person who controls any of them within the meaning of the federal securities laws (each such entity and person being referred to hereinafter as an "Indemnified Party" and, collectively, the "Indemnified Parties") becomes involved in any capacity in any actual or threatened investigation, dispute (whether or not formal proceedings are instituted and whether or not the Indemnified Person is a party), claim, action, suit or proceeding (in court, arbitration, mediation or otherwise) related to or arising out of Lincoln Advisors' engagement contemplated by the Letter Agreement (including, but not limited to, any objections to Lincoln Advisors' fees in the Chapter 11 Cases), then the Company will reimburse each Indemnified Party for all legal and other expenses relating thereto as the expenses are incurred.  In addition, the Company agrees to indemnify and hold harmless each Indemnified Party from and against any and all losses, claims, damages, expenses and liabilities (collectively, "Losses") related to or arising out of (i) Lincoln Advisors' engagement contemplated by the Letter Agreement, except to the extent a court of competent jurisdiction shall have determined by a final judgment (without possibility of appeal) that such Losses were primarily caused by the gross negligence, bad faith, or willful misconduct of such Indemnified Party, and (ii) any untrue statement or alleged untrue statement of a material fact provided to Lincoln Advisors, or the omission or alleged omission to state (or correct) a material fact necessary in order to make the statements provided to Lincoln Advisors not misleading in light of the circumstances under which they were made. The Company's indemnification obligations are in addition to any liability that the Company might otherwise have to any Indemnified Party.

2.  **Contribution.**  If any indemnification or reimbursement sought by an Indemnified Party pursuant to the Letter Agreement is unavailable or insufficient to hold an Indemnified Party harmless, then (whether or not Lincoln Advisors is the Indemnified Party) the Company shall contribute to the Losses for which such indemnification or reimbursement is unavailable or insufficient in proportion to the relative economic interests of the Company on the one hand, and Lincoln Advisors on the other hand, in connection with the relevant matter.

3.  **Limitations**.  In no event shall any Indemnified Party be liable in connection with any matter relating to the engagement of Lincoln Advisors pursuant to the Letter Agreement, except to the extent that a court having competent jurisdiction shall have determined by final judgment (without possibility of appeal) that such liability was primarily caused by the gross negligence, bad faith or willful misconduct of such Indemnified Party.  In no event shall any Indemnified Party be deemed grossly negligent to the extent such party is acting in accordance with or in reliance on the direction or authority of the Committee.  In no event shall any Indemnified Party be liable for lost profits, consequential damages, special damages, incidental damages, punitive damages or similar items other than actual damages, in connection with any matter relating to the engagement of Lincoln Advisors pursuant to the Letter Agreement.

Notwithstanding anything to the contrary, in no event shall the aggregate liability of all Indemnified Parties in connection with any matter relating to the engagement of Lincoln Advisors pursuant to the Letter Agreement, exceed the amount of the fees (exclusive of expense reimbursement) actually paid to Lincoln Advisors pursuant to the Letter Agreement.

The Company shall not settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding arising out of or related to Lincoln Advisors' engagement pursuant to the Letter Agreement, or any matter referred to in, the Letter Agreement (whether or not an Indemnified Party is an actual or potential party thereto), or



participate in or otherwise facilitate any such settlement, compromise, consent or termination by or on behalf of any person or entity, unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Lincoln Advisors.

4.     **General**.  The provisions of this Exhibit I shall remain in full force and effect whether or not any of the transactions contemplated by this Letter Agreement are consummated and shall survive the expiration or termination of the period of Lincoln Advisors' engagement.  All capitalized terms defined in the Letter Agreement but not defined in this Exhibit I have the meanings set forth in the Letter Agreement.

Accepted and agreed to this
___ day of _____, 20__

Accepted and agreed to as of
the date first set forth above

The Official Committee of Unsecured Creditors of Vital Pharmaceuticals, Inc., *et al.*

By:_____
Clint E. Pyle of Stellar Group, Inc., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity

By:_____
Mark H. Speiser of Archer Daniels Midland Co., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity



participate in or otherwise facilitate any such settlement, compromise, consent or termination by or on behalf of any person or entity, unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Lincoln Advisors.

4. **General.** The provisions of this Exhibit I shall remain in full force and effect whether or not any of the transactions contemplated by this Letter Agreement are consummated and shall survive the expiration or termination of the period of Lincoln Advisors' engagement. All capitalized terms defined in the Letter Agreement but not defined in this Exhibit I have the meanings set forth in the Letter Agreement.

Accepted and agreed to this
___ day of _____, 20__

Accepted and agreed to as of
the date first set forth above

The Official Committee of Unsecured Creditors of Vital Pharmaceuticals, Inc., *et al.*

By:_____
Clint E. Pyle of Stellar Group, Inc., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity

By:_____
Mark H. Speiser of Archer Daniels Midland Co., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity