**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

|  |  |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al*.,[1] | Case No. 22-17842 (PDR) |
| Debtors. | (Jointly Administered) |

**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
**FOR AN ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT**
**AND RETENTION OF MILLER BUCKFIRE & CO., LLC AS INVESTMENT BANKER**
**TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS,**
**EFFECTIVE AS OF NOVEMBER 4, 2022**

The Official Committee of Unsecured Creditors of Vital Pharmaceuticals, Inc., *et al*., (the "Committee"), appointed in these above-captioned chapter 11 cases (the "Chapter 11 Cases") before the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), submits this application (the "Application"), pursuant to sections 105(a), 328(a) and 1103(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the related rules of the Local Bankruptcy Rules for the Southern District of Florida (the "Local Rules"), for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (a) authorizing the Committee to employ and retain Miller Buckfire & Co., LLC ("MB&Co.") and its affiliate Stifel, Nicolaus & Co., Inc. ("SN&Co." and together with MB&Co.,

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019)

"Miller Buckfire") as its investment banker, effective as of November 4, 2022, in accordance with the terms and conditions set forth in that certain Engagement Letter (defined herein); and (b) granting related relief. In support of this Application, the Committee relies upon and incorporates by reference the *Declaration of John D'Amico in Support of Application of the Official Committee of Unsecured Creditors for an Order Authorizing and Approving the Employment and Retention of Miller Buckfire & Co., LLC as Investment Banker to the Official Committee of Unsecured Creditors, Effective as of November 4, 2022* (the "D'Amico Declaration"), attached hereto as **Exhibit B**. In further support of the Application, the Committee respectfully states as follows:

## RELIEF REQUESTED

1.        By this Application, pursuant to sections 105(a), 328(a) and 1103 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and the related Local Rules, the Committee seeks authority to retain and employ Miller Buckfire as its investment banker in connection with the Chapter 11 Cases and all related matters, effective as of November 4, 2022, in accordance with the terms, and subject to the conditions of that certain engagement letter, dated as of November 4, 2022, attached hereto as **Exhibit C** (including the indemnity, reimbursement, contribution and other provisions set forth in Exhibit A of the engagement letter (the "Indemnity Provisions" and, together with the remainder of the engagement letter, the "Engagement Letter")). The Committee also seeks approval of the terms of Miller Buckfire's employment and retention including, without limitation, the proposed Fee Structure (defined below) and the Indemnity Provisions, subject to the standards set forth in section 328 of the Bankruptcy Code.

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

2.        This Bankruptcy Court has jurisdiction to consider this Application under 28 U.S.C.

§§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these Chapter 11 Cases and this Application is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and legal predicates for the relief requested by this Application are sections 105(a), 328(a) and 1103(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and the applicable Local Rules.

**BACKGROUND**

4.      On October 10, 2022 (the "Petition Date"), each of the above-captioned debtors and debtors in possession (the "Debtors") filed with the Bankruptcy Court a voluntary petition for relief under the Bankruptcy Code. Each Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases. Joint administration of these Chapter 11 Cases has been authorized by the Bankruptcy Court.

5.      On November 1, 2022, the Office of the United States Trustee appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code. [Docket No. 245]. The Committee is comprised of seven members: (i) Stellar Group, Inc..; (ii) Archer Daniels Midland Co.; (iii) Trinity Logistics, Inc.; (iv) Ardagh Metal Packaging USA Corp.; (v) Crown Cork & Seal USA, Inc.; (vi) Quik Trip Corporation; and (vii) XPO Logistics, L.L.C. (a.k.a. RXO Inc.).

6.      On November 2, 2022, the Committee selected Lowenstein Sandler LLP to serve as its lead counsel. On November 4, 2022, the Committee selected Miller Buckfire to serve as its investment banker in the Chapter 11 Cases

**MILLER BUCKFIRE'S QUALIFICATIONS**

7.      In light of the size and complexity of these Chapter 11 Cases, the Committee requires a qualified and experienced investment banker with Miller Buckfire's resources,

capabilities, and experience. Miller Buckfire is an investment banking and financial advisory firm focused on providing investment banking, financial advice, and transaction execution on behalf of its clients. Miller Buckfire's broad range of corporate advisory services includes general financial advice, corporate restructurings, domestic and cross-border mergers and acquisitions, divestitures, privatizations, special committee assignments, takeover defenses, and strategic partnerships/joint ventures. Furthermore, Miller Buckfire has dedicated professionals who provide restructuring services to its clients and the current managing directors, directors, vice presidents, and associates of Miller Buckfire have extensive experience working with financially troubled companies in complex financial restructurings out-of-court and in chapter 11 proceedings. Miller Buckfire and its principals have been involved as advisors to debtor, creditor, and equity constituencies and government agencies in many reorganization cases.

8.    Notably, Miller Buckfire has been retained as an investment banker and financial advisor in numerous large and complex chapter 11 cases, including, among others: Acterna Corporation; Aerovías Nacionales de Colombia S.A.; Allied Holdings, Inc.; Amtrol Inc.; Anchor Danly Company; Applied Extrusion Technologies, Inc.; AT&T Latin America; Aurora Foods Inc.; Autocam Corporation; Avado Brands, Inc.; Birch Telecom, Inc.; Black Diamond Mining Company, LLC; Bruno's Inc.; Burlington Industries; Calpine Corporation; Cambridge Industries; Carmike Cinemas; Celotex Corporation; Centerpoint Energy; Citation Corporation; CMS Energy Corporation; Criimi Mae, Inc.; CTC Communications; Dana Corporation; Delta Air Lines, Inc.; Dow Corning Corporation; Drypers, Inc.; Dura Automotive Systems, Inc.; EaglePicher Holdings Inc.; Exide Technologies; Eurotunnel Group; Favorite Brands International Inc.; FLYi, Inc.; Foamex International; Focal Communications Corporation; FPA Medical Management; Furniture Brands International, Inc.;

Gate Gourmet; General Growth Properties, Inc.; Grand Union Co.; Greatwide Logistics; Grupo TMM; hhgregg, Inc.; Hines Horticulture, Inc.; Horizon Natural Resources Company; Huntsman Corporation; ICG Communications; ICO Global Communication, Ltd.; IMPATH Inc.; Innkeepers USA Trust; Interstate Bakeries Corporation; J.L. French Automotive Castings; Kmart Corporation; Level (3) Communications; Laidlaw, Inc., Lenox Group, Inc.; Lodgenet, Inc.; Loewen Group; Magna Entertainment Corp.; MagnaChip Semiconductor LLC; McLeodUSA; Meridian Technologies Inc.; Mervyn's Inc.; Micro Warehouse; Mirant Corp.; Molycorp, Inc.; Montgomery Ward & Co.; National Airlines; Oakwood Homes; Neff Corp.; Pacific Crossing Limited; Pathmark Stores, Inc.; Pegasus Satellite Communications; PennCorp Financial Group, Inc.; Pioneer Companies; PSINet; Polaroid Corporation; Polymer Group, Inc.; Progressive Molded Products Inc.; Questex Media Group, Inc.; The Reader's Digest Association, Inc.; SI Corporation; Simmons Bedding Company; The Spiegel Group; Stallion Oilfield Services Ltd.; SquareTwo Financial Services Corporation; Sunbeam Corporation; Standard Pacific Corp.; Stolt-Nielsen S.A.; Stolt-Offshore S.A.; TECO Energy; Trans World Airlines; Ultrapetrol (Bahamas) Limited; Unitek GlobalServices, Inc.; U.S. Office Products; Vonage Corporation; and Women First Healthcare.

9.    Accordingly, Miller Buckfire has developed significant relevant experience and expertise that will enable Miller Buckfire and its professionals to provide necessary investment banking services in these Chapter 11 Cases.

10.    The Committee submits this Application because of its need to retain an investment banker to assist it in the critical tasks associated with guiding the Committee through the Debtors' restructuring efforts. The Committee respectfully submits that the services of an investment banker are necessary and appropriate to enable it to evaluate the complex financial and economic issues

raised by the Debtors' restructuring proceedings and to effectively fulfill its statutory duties.

11. The Committee reviewed materials submitted by Miller Buckfire prior to selecting it as the Committee's investment banker. Such selection was based on the Committee's determination that Miller Buckfire is the best candidate for the services to be provided and that its proposed Fee Structure is competitive and appropriate given the Committee's understanding of the facts and circumstances of the Chapter 11 Cases. The Committee further selected Miller Buckfire to act as its investment banker in the Chapter 11 Cases because of Miller Buckfire's significant expertise in providing investment banking services to debtors and creditors in restructurings and distressed situations.

12. Pursuant to section 1103(a) of the Bankruptcy Code, a committee may retain advisors to assist in the Chapter 11 Cases. *See* 11 U.S.C. § 1103(a). In the Debtors' Chapter 11 Cases, the Committee requires qualified professionals to render these essential investment banking services. As discussed above, Miller Buckfire has substantial expertise as an investment banker in complex chapter 11 cases and is well qualified to perform these services and to assist the Committee in these Chapter 11 Cases.

## **SERVICES TO BE RENDERED**

13. Miller Buckfire has agreed to provide services to the Committee in accordance with the terms and conditions of the Engagement Letter. The terms of the Engagement Letter reflect the mutual agreement between the Committee and Miller Buckfire as to the substantial efforts that may be required of Miller Buckfire in this engagement. The Engagement Letter provides, in consideration for the compensation contemplated thereby, that Miller Buckfire will, to the extent

reasonably requested by the Committee, render the following investment banking services:[2]

a. familiarize itself with the business, operations, properties, financial condition and prospects of the Debtors and advise and assist the Committee in structuring and effecting the financial aspects of certain transactions;

b. receive, review and perform diligence on information provided on a confidential basis by the Debtors or the Committee;

c. assist the Committee in negotiations regarding any sale, plan of reorganization or liquidation of any of the Debtors in the Chapter 11 Cases or other Transaction;[3]

d. represent and negotiate on the behalf of the Committee as it relates to any restructuring proposals advanced by the Committee, Debtors or any other parties or stakeholders; and

e. participate in hearings before the Bankruptcy Court in connection with Miller Buckfire's other services, including related testimony, in coordination with the Committee's counsel.

### **PROFESSIONAL COMPENSATION**

14.     Miller Buckfire intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases, subject to the Bankruptcy Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the fee guidelines established by the Executive Office of the United States Trustee (the "U.S. Trustee Guidelines"), and the Bankruptcy Court's orders (collectively, the "Fee Guidelines"), plus seek reimbursement of actual, necessary expenses and other charges that Miller Buckfire incurs.

15.     Investment bankers such as Miller Buckfire do not typically charge for their services on an hourly basis. Instead, they customarily charge periodic retainer fees plus additional

---

[2] This Application summarizes the terms of the Engagement Letter. To the extent there is a conflict between the Application and the Engagement Letter, the Engagement Letter will govern.

[3] The term "Transaction" in this Application shall mean "Transaction" as defined in the Engagement Letter.

7

fees that are contingent upon the occurrence of a specified type of transaction. The compensation arrangements that have been negotiated between Miller Buckfire and the Committee are highly beneficial to the Committee as they provide certainty and proper inducement for Miller Buckfire to act expeditiously and prudently with respect to the matters for which it will be employed. Accordingly, because the Committee is seeking to retain Miller Buckfire under section 328(a) of the Bankruptcy Code, the Committee believes that Miller Buckfire's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code and does not constitute a "bonus" or fee enhancement under applicable law.

16.     Subject to the Bankruptcy Court's approval and, except as otherwise modified herein or by order of the Bankruptcy Court, the Committee seeks the following consideration for Miller Buckfire's services (the "Fee Structure") pursuant to, and as further explained in, the Engagement Letter, to be paid by the Debtors, in each case in accordance with this Court's orders:

     a.   **Monthly Fee**:  $125,000.

     b.   **Deferred Fee**:  $2,500,000, payable upon consummation of any Transaction.

     c.   **Credit**:  Half of the fourth and subsequent Monthly Fees paid will be credited to reduce the Deferred Fee.

17.     As part of the Fee Structure, and in addition to the Monthly Fee, the Deferred Fee, and any fees that may be payable to Miller Buckfire, and regardless of whether any Transaction occurs, the Debtors shall promptly reimburse Miller Buckfire for all expenses (including fees and expenses of counsel, if any), travel and lodging, data processing and communications charges, courier services, and other expenditures incurred in connection with, or arising out of Miller Buckfire's activities under or contemplated by the engagement set forth in the Engagement Letter

(the "Expense Reimbursement"), subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules (to the extent not waived). No fee payable to any other person, by the Debtors, the Committee or any other person or entity, shall reduce or otherwise affect any fee payable pursuant to the Engagement Letter and the Order. This Fee Structure shall also incorporate the Indemnity Provisions, addressed in more detail below.

18.    In addition, Miller Buckfire will maintain records in support of any expenses incurred in connection with the rendering of its services in these Chapter 11 Cases. It is not the general practice of financial advisory and investment banking firms, including Miller Buckfire, to keep detailed time records similar to those customarily kept by attorneys. Because Miller Buckfire does not ordinarily maintain contemporaneous time records in one-tenth (.10) of an hour increments, or provide or conform to a schedule of hourly rates for its professionals, and because of the nature of the Fee Structure, the Committee seeks a waiver of the timekeeping requirements set forth in the Fee Guidelines to maintain records in the one-tenth (.10) of an hour requirement. Miller Buckfire will nonetheless maintain summary time records, in half-hour increments, which records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed. Courts in other large chapter 11 cases have excused flat-fee professionals from timekeeping requirements under similar circumstances. *See, e.g.*, *In re Belk, Inc.*, No. 21-30630 (MI) (Bankr. S.D. Tex. March 8, 2021*); In re Diamond Offshore Drilling, Inc.*, No. 20-32307 (DRJ) (Bankr. S.D. Tex. June 5, 2020); *In re Westmoreland Coal Co.*, No. 18-35672 (DRJ) (Bankr. S.D. Tex. Dec. 5,2018*); In re iHeartMedia, Inc.*, No. 18-31274 (Bankr. S.D. Tex. May 30, 2018); *In re EXCO Res., Inc.*, No. 17-30155 (MI) (Bankr. S.D. Tex. Jan. 18, 2018); *In re Seadrill Ltd.*, No. 17-60079 (DRJ) (Bankr. S.D. Tex. Sept. 13, 2017); *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. July 13, 2017*); In re CJ Holding*

*Co.*, No. 15-33590 (DRJ) (Bankr. S.D. Tex. Sept. 12, 2016); *In re Haverhill Chems. LLC*, No. 15-34918 (MI) (Bankr. S.D. Tex. Nov. 2, 2015); *In re Luca Int'l Grp.,* No. 15-34221 (DRJ) (Bankr. S.D. Tex. Oct. 9, 2015); *In re BPZ Res., Inc.*, No. 15-60016 (DRJ) (Bankr. S.D. Tex. Mar. 25, 2015).

19.     Miller Buckfire has not shared or agreed to share any compensation to be paid by the Committee with any other person, other than principals and employees of Miller Buckfire, in accordance with section 504 of the Bankruptcy Code.

20.     The Committee and Miller Buckfire negotiated the Fee Structure to function as and be an interrelated, integrated unit, in correspondence with Miller Buckfire's services, which Miller Buckfire renders not in parts, but as a whole. It would be contrary to the intention of Miller Buckfire and the Committee for any isolated component of the entire Fee Structure to be treated as sufficient consideration for any isolated portion of Miller Buckfire's services. Instead, the Committee and Miller Buckfire intend that Miller Buckfire's services be considered and be compensated by the Fee Structure in its entirety.

21.     The terms and conditions of the Engagement Letter were negotiated by the Committee at arm's length and in good faith. After discussions and arm's length negotiations, the Committee believes that the Fee Structure and the expense reimbursement provisions described above and in the Engagement Letter are consistent with, and typical of, compensation arrangements entered into by Miller Buckfire and other comparable firms in connection with the rendering of similar services under similar circumstances and are reasonable, market based and merited by Miller Buckfire's restructuring expertise.

**INDEMNITY PROVISIONS**

22.     The Engagement Letter provides that a material part of the consideration for Miller

Buckfire to furnish its services under the Engagement Letter is the Debtors' agreement to the Indemnity Provisions which provide, without limitation, that the Debtors will indemnify, reimburse and provide contribution to Miller Buckfire and its affiliates, and any of Miller Buckfire's or their respective directors, officers, members, employees, agents, or controlling persons, as detailed in the Engagement Letter. Investment bankers seek indemnification and the other provisions set forth in the Indemnity Provisions for a variety of reasons. The performance of Miller Buckfire's responsibilities requires the exercise of professional judgment regarding difficult business and financial issues, as to which many persons may have diverse financial interests. Miller Buckfire intends to rely on the accuracy and completeness of the financial information and other information to be provided by the Debtors.

23.     The Committee respectfully submits that the Indemnity Provisions reflected in the Engagement Letter are a customary and reasonable term of consideration for investment bankers such as Miller Buckfire for proceedings both out of court and in chapter 11. Such provisions, viewed in conjunction with the other terms of Miller Buckfire's proposed retention, are reasonable and in the best interests of the Committee, the Debtors, their estates and other creditors, in light of the fact that the Committee requires Miller Buckfire's services. The Indemnity Provisions, as modified by the Proposed Order, include qualifications and limits on the indemnification and related provisions that are customary in chapter 11 cases. Accordingly, as part of the Application, the Committee requests that the Bankruptcy Court approve the Indemnity Provisions and the obligations contained therein, as modified by the Proposed Order.

24.     The Committee and Miller Buckfire believe that the proposed Indemnity Provisions are customary and reasonable for investment banking engagements, both out-of-court and in chapter 11 proceedings. Similar indemnification arrangements have been approved and

11

implemented in other large chapter 11 cases. *See, e.g.*, *Sundance Energy, Inc.*, No. 21-30882 (DRJ) (Bankr. S.D. Tex. Apr. 15, 2021); *In re Haverhill Chems. LLC*, No. 15-34918 (MI) (Bankr. S.D. Tex. Nov. 2, 2015); *In re BPZ Res., Inc.*, No. 15-60016 (DRJ) (Bankr. S.D. Tex. Mar. 25, 2015); *In re Houston Reg'l Sports Network, L.P.*, No. 13-35998 (MI) (Bankr. S.D. Tex. Apr. 16, 2014); *In re Garrett Motion, Inc.*, No. 20-12212 (MEW) (Bankr. S.D.N.Y. Feb. 3, 2021); *In re Centric Brands Inc.*, No. 20-22637 (SHL) (Bankr. S.D.N.Y. Aug. 13, 2020); *In re Avianca Holdings S.A.*, No. 20-11133 (MG) (Bankr. S.D.N.Y. July 14, 2020); *In re Dean & Deluca New York Inc.*, No. 20-10916 (MEW) (Bankr. S.D.N.Y. June 22, 2020); *In re LSC Commc'ns., Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. June 5, 2020); *In re McClatchy Co.*, No. 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020); *In re Aegean Marine Petroleum Network, Inc.*, No. 18-13374 (MEW) (Bankr. S.D.N.Y. Jan. 17, 2019); *In re Local Insight Media Holdings, Inc.*, No. 10-13677 (KG) (Bankr. D. Del. Dec. 17, 2010); *In re Atrium Corp.*, No. 10-10150 (BLS) (Bankr. D. Del. Feb. 24, 2010).

## <u>MILLER BUCKFIRE'S DISINTERESTEDNESS</u>

25.    In connection with the proposed retention by the Committee in these Chapter 11 Cases, Miller Buckfire has received a list of parties in interest from the Debtors, along with the names of certain supplemental parties in interest suggested by counsel to the Committee attached to the D'Amico Declaration as Schedule 1 (the "<u>Potential Parties in Interest</u>").

26.    Miller Buckfire has informed the Committee that, except as set forth in the D'Amico Declaration, Miller Buckfire (collectively, the "<u>Miller Buckfire Entities</u>"): (a) have no connection with the Debtors or the Potential Parties in Interest in any matter related to the Debtors; (b) do not hold or represent an interest adverse to the Debtors' estates in connection with these cases; and (c) believe that they are each a "disinterested person" as that term is defined in section

101(14) of the Bankruptcy Code. If any new material facts or relationships are discovered, Miller Buckfire will promptly inform the Bankruptcy Court as required by Bankruptcy Rule 2014(a).

27.    Based on the foregoing, the Committee believes that the employment of Miller Buckfire would be in the best interests of the Committee, and the Debtors' estates and creditors.

## BASIS FOR RELIEF REQUESTED

I.    **The Bankruptcy Code Permits the Employment and Retention of Miller Buckfire on Terms Substantially Similar to Those in the Engagement Letter**

28.    The Committee seeks approval of the Engagement Letter, including the Fee Structure and the Indemnity Provisions stated therein, pursuant to sections 105(a), 328(a) and 1103(a) of the Bankruptcy Code. Section 1103(b) of the Bankruptcy Code requires that professionals may not "represent any other entity having an adverse interest in connection with the case." 11 U.S.C. § 1103(b). In addition, section 328(a) of the Bankruptcy Code provides, in relevant, part, that a committee "may employ or authorize the employment of a professional person under section . . . 1103 of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. . ." 11 U.S.C. § 328(a). Accordingly, section 328 permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions.

29.    The Committee believes the Fee Structure is fair and reasonable and consistent with and typical of compensation arrangements entered into by Miller Buckfire and other comparable firms in connection with the rendering of similar services under similar circumstances. Miller Buckfire's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Committee during the term of Miller Buckfire's engagement, were all important

13

factors in determining the Fee Structure. The Committee believes that the ultimate benefit of Miller Buckfire's services cannot be measured by reference to the number of hours to be expended by Miller Buckfire's professionals in the performance of such services. Indeed, the Committee and Miller Buckfire have agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and its professionals in connection with these Chapter 11 Cases and in light of the fact that: (a) such commitment may foreclose other opportunities for Miller Buckfire; and (b) the actual time and commitment required of Miller Buckfire and its professionals to perform its services under the Engagement Letter may vary substantially from week to week and month to month.

30.     As discussed, Miller Buckfire satisfies the disinterestedness standard in section 1103(b) of the Bankruptcy Code. In light of the foregoing and given the numerous issues that Miller Buckfire may be required to address in the performance of its services hereunder, Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Miller Buckfire's services for engagements of this nature both in and out of the chapter 11 context, the Committee believes that the Fee Structure is fair, reasonable, and market-based under the standard set forth in section 328(a) of the Bankruptcy Code.

## II.    Approval of This Engagement is Appropriate Pursuant to Section 328(a) of the Bankruptcy Code

31.     Section 328 of the Bankruptcy Code provides, in relevant part, that a committee "may employ or authorize the employment of a professional person under section . . . 1103 of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . ." 11 U.S.C. § 328(a). Thus, section 328(a) of the Bankruptcy Code permits the Bankruptcy Court to approve

the terms of Miller Buckfire's engagement as set forth in the Engagement Letter, including the Fee Structure, and the terms of the Indemnity Provisions.

32.     As recognized by numerous courts, Congress intended section 328(a) of the Bankruptcy Code to enable committees to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a); *see also Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861, 862–63 (5th Cir. 1997) ("If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment."); *In re Ultra Petroleum Corp., et al.,* No. 16-32202 (MI) (Bankr. S.D. Tex. May 20, 2016).

33.     The Fee Structure appropriately reflects the nature of the services to be provided by Miller Buckfire and is consistent with the fee structures typically utilized by leading investment bankers that do not bill their clients on an hourly basis. Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. *See, e.g.*, *In re Parker Drilling Company*, No. 18-36958 (Bankr. S.D. Tex. Jan. 15, 2019); *In re iHeartMedia, Inc.,* No. 18-31274 (Bankr. S.D. Tex. July 24, 2018); *In re Haverhill Chems. LLC*, No. 15-34918 (MI) (Bankr. S.D. Tex. Nov. 2, 2015); *In re Luca Int'l Grp.,* No. 15-34221 (DRJ) (Bankr. S.D. Tex. Oct. 9, 2015); *In re BPZ Res., Inc.*, No. 15-60016 (DRJ) (Bankr. S.D. Tex. Mar. 25, 2015); *In re Stoneway Capital Ltd., Inc.*, No. 21-10646 (JLG) (Bankr. S.D.N.Y. July 16, 2021); *In re Garrett Motion, Inc.*, No. 20-12212 (MEW) (Bankr. S.D.N.Y. Feb. 3, 2021); *In re Frontier Commc'ns, Corp.*, No. 20-22476 (RDD) (Bankr. S.D.N.Y. June 29, 2020); *In re LSC Commc'ns,*

*Inc.*, No. 20-10950 (SHL) (Bankr. S.D.N.Y. June 5, 2020); *In re OneWeb Global Ltd.*, No. 20-22437 (RDD) (Bankr. S.D.N.Y. May 29, 2020); *In re McClatchy Co.*, No. 20-10418 (MEW) (Bankr. S.D.N.Y. May 18, 2020); *In re Purdue Pharma L.P.*, No. 19-23619 (RDD) (Bankr. S.D.N.Y. Nov. 21, 2019).

34.     The Committee respectfully requests entry of an order authorizing Miller Buckfire to perform investment banking services for the Committee effective as of November 4, 2022. Immediately upon its selection by the Committee, Miller Buckfire commenced work on several matters and promptly devoted substantial resources to these Chapter 11 Cases pending submission and approval of this Application. Therefore, the Committee asserts that Miller Buckfire should be compensated for work performed prior to and after the entry of an order authorizing its retention.

35.     Based on the foregoing, the Committee submits that it has satisfied the requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules to support entry of an order authorizing the Committee to retain and employ Miller Buckfire in these Chapter 11 Cases on the terms described herein and in the Engagement Letter.

## NOTICE

36.     Notice of this Application has been given to (i) the Office of the United States Trustee for Region 21, 51 SW First Ave, Room 1204, Miami, FL 33130 (attn: J. Steven Wilkes); (ii) Latham & Watkins LLP, 555 Eleventh St, NW Suite 1000, Washington, DC 20004 (attn: Andrew Sorkin, Esq.) and 1271 Avenue of the Americas, New York, NY 10020 (attn: George A. Davis, Esq., Tianjio Li, Esq., Brian S. Rosen, Esq., and Jonathan J. Weichselbaum, Esq.) and Berger Singerman LLP, 1450 Brickell Ave., Suite 1900, Miami, FL (attn: Jordi Guso, Esq., and Michael J. Niles, Esq.); and (iii) those persons who have requested notice pursuant to Bankruptcy Rule 2002.  The Committee submits that, in light of the nature of the relief requested, no other or

16

further notice need be given.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Committee respectfully requests that the Bankruptcy Court grant the relief requested in this Application, the Proposed Order, and such other and further relief as is just and proper.

*[Remainder of page intentionally left blank]*

Dated: November <u>18</u>, 2022   Respectfully submitted,

**The Official Committee of Unsecured Creditors of Vital Pharmaceuticals, Inc.,** *et al.*

By:_____

Clint E. Pyle of Stellar Group, Inc., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity

By:_____

Mark H. Speiser of Archer Daniels Midland Co., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity

  capacity

Dated: November 18, 2022

Respectfully submitted,

**The Official Committee of Unsecured Creditors
of Vital Pharmaceuticals, Inc.,** *et al.*

By:_____
Clint E. Pyle of Stellar Group, Inc., solely in his
capacity as the Co-Chairperson of the Official
Committee of Unsecured Creditors and not in his
personal capacity

By:_____
Mark H. Speiser of Archer Daniels Midland Co., solely
in his capacity as the Co-Chairperson of the Official
Committee of Unsecured Creditors and not in his
personal capacity
   capacity

18