## **EXHIBIT C**

**Engagement Letter**

Case 22-17842-PDR Doc 375-3 Filed 11/19/22 Page 1 of 12

Miller Buckfire & Co., LLC
787 7th Avenue, 5th Floor
New York, New York 10019
www.millerbuckfire.com



As of November 4, 2022

Clint E. Pyle, Co-Chair
    -and-
Mark H. Speiser, Co-Chair
Official Committee of Unsecured Creditors
    c/o Jeffrey L. Cohen
Lowenstein Sandler LLP
1251 Avenue of the Americas, 17th Floor
New York, New York 10020

Dear Co-Chairs:

This letter (the "*Agreement*") confirms the terms and conditions of the agreement by which the Official Committee of Unsecured Creditors (the "*Committee*") in the Chapter 11 cases of Vital Pharmaceuticals, Inc., *et al.* (collectively, the "*Debtors*") filed under title 11 of the United States Code (the "*Bankruptcy Code*") (Bankr. S.D. Fla. Case No. 22-17842-PDR) (collectively, the "*Bankruptcy Case*"), in the United States Bankruptcy Court for the Southern District of Florida (the "*Bankruptcy Court*") has engaged Miller Buckfire & Co., LLC and Stifel Nicolaus & Co., Inc. (together, "*Miller Buckfire*") as its investment banker for the purposes set forth in Section 1 hereof. If appropriate in connection with performing its services for the Committee hereunder, Miller Buckfire may utilize the services of one or more of its affiliates, in which case references herein to Miller Buckfire shall include such affiliates.

Section 1.    Services.  Miller Buckfire will perform the following services, in each case as requested by the Committee and to the extent Miller Buckfire deems necessary, appropriate, feasible and consistent with its role as investment banker to the Committee:

a.    familiarize itself with the business, operations, properties, financial condition and prospects of the Debtors and advise and assist the Committee in structuring and effecting the financial aspects of the transactions defined below;

b.    receive, review and perform diligence on information provided on a confidential basis by the Debtors or the Committee;

c.    assist the Committee in negotiations regarding any sale, plan of reorganization or liquidation of any of the Debtors in the Bankruptcy Case (a "*Plan*") or other Transaction;

The Official Committee of Unsecured Creditors in *In re Vital Pharmaceuticals, Inc.,* et al.
As of November 4, 2022

- d. represent and negotiate on the behalf of the Committee as it relates to any restructuring proposals advanced by the Committee, Debtors or any other parties or stakeholders; and

- e. participate in hearings before the Bankruptcy Court in connection with Miller Buckfire's other services, including related testimony, in coordination with the Committee's counsel.

- f. "*Transaction*" means any Bankruptcy Court approved sale or other transfer of at least a majority of the assets of the company, recapitalization or restructuring (including an exchange, conversion, cancellation, forgiveness, retirement, and any material modification to related terms, conditions or covenants, whether by amendment or otherwise) of the Debtors' indebtedness, obligations or liabilities (including preferred stock, debt securities, unfunded pension and retiree medical liabilities, partnership interests, lease obligations, trade credit facilities and other contract and tort obligations), whether or not pursuant to a repurchase or exchange transaction or solicitation of consents, waivers, acceptances or authorizations, or any sale of some or all of the assets or equity interests of the Company, or a Plan (including, without limitation, a "pre-packaged" or "pre-arranged" plan), or a liquidation. A Transaction is deemed to occur on the earlier of confirmation or other approval by the Bankruptcy Court or closing, as applicable.

Section 2.  Fees and Expenses.  In consideration of Miller Buckfire's services under this Agreement, Miller Buckfire shall be paid by the Debtors in cash on the terms and at the times set forth below, subject to the Bankruptcy Court and applicable orders, rules and guidelines:

- a. "*Monthly Fee*": $125,000, due in advance on the first day of each month during the term of this Agreement.

- b. "*Deferred Fee*": $2,500,000 due upon a Transaction.

- c. *Crediting.* Beginning with the fourth Monthly Fee, 50% of all Monthly Fees actually paid shall be credited against the Deferred Fee.

- d. *Expense Reimbursement.* The Company shall reimburse Miller Buckfire's reasonable, out-of-pocket expenses incurred in connection with this Agreement, including Miller Buckfire's performance hereunder and any costs of enforcement. These expenses include the reasonable fees and expenses of Miller Buckfire's counsel, including in connection with defending retention and fee applications (without the requirement that such counsel be approved by the Bankruptcy Court), its consultants and other advisors, and also include travel and lodging expenses, data processing and communication charges, research and courier services. Obligations under this section are independent from and do not limit the obligations under the Indemnification Provisions.

- e. *No Committee Economic Obligation to Miller Buckfire; All Economic Obligations Subject to the Bankruptcy Court.* For the avoidance of doubt, each of the Committee and its members and its and their professionals are not and will not be responsible for payment of any fee to Miller Buckfire described herein, for reimbursement of expenses to Miller Buckfire, or for any other obligation owed to Miller Buckfire hereunder (including, without limitation, any obligation of indemnity or contribution) absent an express written agreement to the contrary. Miller Buckfire shall seek payment of fees in accordance with the fee application

The Official Committee of Unsecured Creditors in *In re Vital Pharmaceuticals, Inc.,* et al.
As of November 4, 2022

>procedures established by the Bankruptcy Court and all invoices will be paid by the Debtors, in accordance with the order approving Miller Buckfire's retention, the Bankruptcy Code, Bankruptcy Rules and applicable orders of the Bankruptcy Court.

Section 3.     Term and Termination.  This Agreement may be terminated by either party at any time by 21 days' advance written notice to the other party.  If this agreement is terminated other than by Miller Buckfire, Miller Buckfire's fees and reimbursable expenses accrued through the date of termination on or before such date shall be due.  Miller Buckfire shall also be due any fee described in Section 2 that arises from any transaction of a kind defined in Section 1 that occurs prior to the second anniversary of termination.  This Section 3 and Section 4.a, b, d, f, g and i shall survive termination of this Agreement.  Termination of this Agreement shall not affect or impair the continuing obligations under the Indemnification Provisions.

Section 4.     Additional Provisions.

a.     *Further Services.*

>i.     Except as set forth in this Section 4.a, services to be provided under this Agreement are limited to those set forth in Section 1.

>ii.    The Committee agrees that Miller Buckfire and its affiliates have made no expressed or implied commitment, by this Agreement or otherwise, to underwrite, place or purchase any financing or securities, or to act in any other capacity in connection therewith, which commitment shall be set forth in a separate underwriting, placement agency or other appropriate agreement or amendment hereto.

b.     *Indemnification.*  The Debtors will indemnify and exculpate Miller Buckfire and certain related persons in accordance with the indemnification and exculpation provisions (the "*Indemnification Provisions*") attached to this Agreement, which are integral to it and incorporated by reference.

c.     *Bankruptcy Case.*

>i.     Each provision of this Agreement is subject to approval by the Bankruptcy Court and all applicable orders, rules and guidelines, and is subject to the fiduciary obligations of the Committee.

>ii.    The Committee shall apply promptly to the Bankruptcy Court for approval pursuant to sections 327(a) and 328(a) of the Bankruptcy Code of this Agreement and Miller Buckfire's retention upon the terms of this Agreement, including all of Section 2, not subject to the standard of review under section 330 of the Bankruptcy Code, and shall use its best efforts to obtain Bankruptcy Court authorization thereof.  Absent such approval pursuant to a final order acceptable to Miller Buckfire in every respect, Miller Buckfire shall have no obligation to provide any services under this Agreement following commencement of a Bankruptcy Case.  The Committee shall supply Miller Buckfire and its counsel with a draft of such retention application and the related proposed order sufficiently in advance to enable Miller Buckfire and its counsel to review and comment thereon.

3

The Official Committee of Unsecured Creditors in *In re Vital Pharmaceuticals, Inc.,* et al.
As of November 4, 2022

    iii.    In any Bankruptcy Case, the Committee agrees that Miller Buckfire's post-petition compensation pursuant to this Agreement shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall further be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect in connection with any financing or sale or similar orders entered by the Bankruptcy Court (which carve-outs shall be adequate to enable the Debtors to pay Miller Buckfire's fees and expenses, fully and promptly, without detriment to any other similarly-situated administrative claims).  The Committee shall use its best efforts to ensure that any cash collateral order, debtor-in-possession financing order or similar order in the Bankruptcy Case permits the use of cash collateral, financing or sale proceeds for the full and prompt payment of all of Miller Buckfire's fees and expenses, including transaction fees, and has the agreements of the lenders (or parties whose cash collateral is being used) that Miller Buckfire's fees and expenses shall be paid at the times, on the terms, and from the sources set forth in this Agreement.  If such orders and carve-outs are or become insufficient to provide the foregoing assurances, Miller Buckfire shall then have no obligation to provide further services under this Agreement.

    iv.    Each party hereto acknowledges and agrees that Miller Buckfire's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required during the term of Miller Buckfire's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit of Miller Buckfire's services hereunder could not be measured merely by reference to the number of hours to be expended by Miller Buckfire's professionals in the performance of such services.  Each party hereto also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and that the actual time and commitment required of Miller Buckfire and its professionals to perform its services hereunder may vary substantially from time to time, creating "peak load" issues for Miller Buckfire.  In addition, given the numerous issues with Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Miller Buckfire's services for engagements of this nature in an out-of-court context, each party hereto agrees that the fee and expense arrangements hereunder are reasonable under each applicable legal standard.

d.    *Limited Engagement.*

    i.    By its services or otherwise, Miller Buckfire assumes no responsibility for the Committee's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any transaction, including those defined in Section 1.  The Committee agrees that Miller Buckfire shall have no obligation and no responsibility to provide accounting, audit, "crisis management," or business consultant services and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements, nor to provide any fairness or valuation opinions or any advice or opinions with respect to solvency in connection with any transaction.  The

                    Committee confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

        ii.        Miller Buckfire has been retained under this Agreement as an independent contractor with no fiduciary or agency relationship to the Committee or to any other party. Miller Buckfire has no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Committee, nor does Miller Buckfire have the authority to manage money or property of the Debtors or Committee. Miller Buckfire's advice and services, however rendered, are intended solely for the benefit and use of the Committee in considering the matters to which this Agreement relates. Except as expressly contemplated by this Agreement, the Committee agrees not to use, reproduce, disseminate, quote or refer to any such advice and services at any time in any way, unless Miller Buckfire consents in advance in writing.

e.        *Miller Buckfire's Affiliates.* The Committee understands that Miller Buckfire is a subsidiary of Stifel Financial Corp. and that Stifel Financial Corp. and its affiliates (collectively, "*Stifel*") comprise a full service securities firm and a commercial bank engaged in securities trading and brokerage activities, as well as providing investment banking, asset management, financing, and financial advisory services and other commercial and investment banking products and services to a wide range of corporations and individuals. In the ordinary course of Stifel's trading, brokerage, asset management, and financing activities, Stifel may at any time hold long or short positions, and may trade or otherwise effect transactions, for its own account or the accounts of customers, in debt or equity securities or senior loans of the Debtors or the members of the Committee. Stifel recognizes its responsibility for compliance with federal securities laws in connection with such activities. In addition, Stifel may have and may in future have investment and commercial banking, trust and other relationships with parties other than the Debtors or the members of the Committee, which parties may have interests with respect to the Debtors or the members of the Committee. Furthermore Stifel may have fiduciary or other relationships whereby Stifel may exercise voting power over securities of various persons, which securities may from time to time include securities of the Debtors or the members of the Committee. The Committee acknowledges that Stifel may exercise such powers and otherwise perform its functions in connection with such fiduciary or other relationships without regard to its or Miller Buckfire's relationship to the Debtors, Committee or the members of the Committee hereunder. Stifel will not provide any confidential information to any of its representatives whose job is to engage in securities transactions without appropriately restricting and monitoring any such representative's securities transaction activity in compliance with Stifel's internal policies and applicable securities laws.

f.        *Advertisements.* Miller Buckfire may place advertisements in financial and other newspapers and journals at its own expense describing its services to the Committee hereunder.

g.        *Jurisdiction, Choice of Law and Waiver of Trial by Jury.* THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN NEW YORK, NEW YORK. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO ITS PRINCIPLES OF CONFLICTS OF LAWS. REGARDLESS OF ANY PRESENT OR FUTURE

The Official Committee of Unsecured Creditors in *In re Vital Pharmaceuticals, Inc.,* et al.
As of November 4, 2022

> DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH SUCH PARTY IRREVOCABLY CONSENTS AND AGREES THAT ANY AND ALL CLAIMS OR DISPUTES BETWEEN THE PARTIES PERTAINING TO THIS AGREEMENT SHALL BE BROUGHT EITHER IN A STATE OR FEDERAL COURT OF COMPETENT JURISDICTION LOCATED IN NEW YORK COUNTY OR THE BANKRUPTCY COURT OR ANY COURT HAVING APPELLATE JURISDICTION OVER THE BANKRUPTCY COURT. BY THIS AGREEMENT, EACH PARTY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT. EACH PARTY WAIVES ANY OBJECTION BASED ON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND CONSENTS TO THE GRANTING OF SUCH LEGAL AND EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. EACH PARTY CONSENTS TO SERVICE OF PROCESS, IN ACCORDANCE WITH NEW YORK LAW, BY THE MAILING OF COPIES THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO ITS ADDRESS, SUCH SERVICE TO BECOME EFFECTIVE 10 DAYS AFTER SUCH MAILING. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH THIS ENGAGEMENT IS HEREBY WAIVED.

h. *Counterparts, Entire Agreement, Severability and Rules of Construction.* This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. This Agreement embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the Agreement in any other respect, which will remain in full force and effect. Words and phrases used in this Agreement shall be construed in accordance with section 102(1)-(7) and (9) of the Bankruptcy Code.

i. *Binding Effect, Beneficiaries.* This Agreement shall be binding upon Miller Buckfire and the Debtors and their respective successors and assigns (including, in the case of the Debtors, any successor to all or a portion of the assets or businesses of the Company under a Plan). If the Debtors are comprised of more than one entity or company, the obligations of the Company under this Agreement are joint and several, and any consent, direction, approval, demand, notice or the like given by any one of such entities or companies shall be deemed to be given by all of them and, as such, shall be binding on the Debtors. This Agreement is not intended to confer any rights upon any shareholder, creditor (other than the Committee and the class of creditors it represents), owner or partner of the Debtors, or any other person or entity not a party hereto other those referenced in the Indemnification Provisions.

j. *Amendments.* No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each party to be bound thereby.

*The remainder of this page is intentionally blank.*

The Official Committee of Unsecured Creditors in *In re Vital Pharmaceuticals, Inc.*, et al.
As of November 4, 2022

We are pleased to accept this engagement and look forward to working with the Committee. Please confirm that this Agreement is in accordance with your understanding by signing and returning a copy to us.

Very truly yours,

MILLER BUCKFIRE & CO., LLC

By: _____

Name: John D'Amico

Title: Managing Director


The Official Committee of Unsecured Creditors of Vital Pharmaceuticals, Inc., *et al.*

By: _____

Clint E. Pyle of Stellar Group, Inc., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity


By: _____

Mark H. Speiser of Archer Daniels Midland Co., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity

The Official Committee of Unsecured Creditors in *In re Vital Pharmaceuticals, Inc.*, et al.
As of November 4, 2022

We are pleased to accept this engagement and look forward to working with the Committee. Please confirm that this Agreement is in accordance with your understanding by signing and returning a copy to us.

Very truly yours,

MILLER BUCKFIRE & CO., LLC

By: *[signature]*

Name: John D'Amico

Title: Managing Director

The Official Committee of Unsecured Creditors of Vital Pharmaceuticals, Inc., *et al.*

By: _____

Clint E. Pyle of Stellar Group, Inc., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity

By: *[signature]*

Mark H. Speiser of Archer Daniels Midland Co., solely in his capacity as the Co-Chairperson of the Official Committee of Unsecured Creditors and not in his personal capacity

The Official Committee of Unsecured Creditors in *In re Vital Pharmaceuticals, Inc.,* et al.
As of November 4, 2022

**INDEMNIFICATION PROVISIONS**

In connection with the engagement of Miller Buckfire as investment banker to the Committee, subject to the approval of the Bankruptcy Court, the Debtors agree to hold harmless Miller Buckfire and its affiliates, their respective past and present directors, officers, shareholders, partners, members, managers, agents, representatives, employees and controlling persons (collectively, the "*Indemnified Persons*"), to the fullest extent lawful, from and against all losses, claims, damages, liabilities and reasonable and documented out-of-pocket expenses incurred by them, joint or several, which (A) are related to or arise out of (i) actions or alleged actions taken or omitted to be taken (including any untrue statements made or any statements omitted to be made) by the Committee or the Debtors in connection with this Agreement or (ii) actions or alleged actions taken or omitted to be taken by an Indemnified Person in connection with this Agreement with the Committee's or the Debtors' written consent or (B) are otherwise related to or arise out of this Agreement, Miller Buckfire's engagement under this Agreement or any transaction, or any actions taken or omitted to be taken by an Indemnified Person, the Committee or the Debtors in connection with this Agreement. The Debtors will not be responsible, however, for any losses, claims, damages, liabilities or expenses (i) which are finally judicially determined to have resulted from the fraud, bad faith, gross negligence or willful misconduct of the person seeking indemnification hereunder or (ii) to the extent related to an action, claim, suit, investigation or proceeding (an "*Action*") that is brought by an Indemnified Person (or their respective affiliates and related parties) against one or more other Indemnified Persons (or their respective affiliates and related parties) (clauses (i) and (ii), "*Excluded Claims*"). If an Indemnified Person is not entitled to reimbursement and/or indemnification with respect to an Excluded Claim pursuant to the previous sentence, Miller Buckfire or such Indemnified Person will promptly repay to the Debtors (i) any indemnification payments made by the Debtors under this agreement with respect to such Excluded Claim and (ii) any expenses previously reimbursed by the Debtors under this Agreement related to such Excluded Claim.

After receipt by an Indemnified Person of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such Indemnified Person will notify the Committee and the Debtors in writing of such complaint or of the commencement of such action or proceeding (such notice, the "*Indemnification Notice*"), but failure to so notify will relieve the Debtors from any liability which the Debtors may have hereunder only if, and solely to the extent that, such failure results in the forfeiture by the Debtors of rights and defenses, and will not in any event relieve the Debtors from any other obligation or liability that the Debtors may have to any Indemnified Person apart from these Indemnification Provisions. Upon the Debtors' and the Committee's receipt of an Indemnification Notice, the Debtors shall have the right to assume the defense of such action or proceeding. In the event, however, such Indemnified Person reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an Indemnified Person and the Debtors, and such Indemnified Person reasonably concludes that there may be legal defenses available to it or other Indemnified Persons that are different from or in addition to those available to the Debtors, or if the Debtors fail to assume the defense of the action or proceeding in a timely manner, then such Indemnified Person may employ separate counsel to represent or defend it in any such action or proceeding and the Debtors will pay all reasonable, documented fees and out-of-pocket disbursements of such counsel. However, the Debtors will not be required to pay the fees or disbursements of more than one separate counsel (in addition to one local counsel) for all Indemnified Persons in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Debtors assumes, the Indemnified Person will have the right to participate in such litigation and to retain its own counsel at such Indemnified Person's own expense. The Debtors further agree that it will not, without the prior written consent of Miller Buckfire (such consent not to be unreasonably withheld, delayed or conditioned), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Miller Buckfire or any other Indemnified Person is an actual or potential party to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of Miller Buckfire and each Indemnified Person hereunder from all liability arising out

The Official Committee of Unsecured Creditors in *In re Vital Pharmaceuticals, Inc.,* et al.
As of November 4, 2022

of such claim, action, suit or proceeding.  The Debtors shall not be liable for any settlement of any Action effected without the Debtors' prior written consent (which consent shall not be unreasonably conditioned, withheld or delayed).

The Debtors agree that if any indemnification sought by an Indemnified Person pursuant to these Indemnification Provisions is held by a court to be unavailable for any reason other than as specified in the second sentence of the first paragraph of these Indemnification Provisions, then (whether or not Miller Buckfire is the Indemnified Person), the Debtors and Miller Buckfire will contribute to the losses, claims, damages, liabilities and reasonable, documented, out-of-pocket expenses for which such indemnification is held unavailable (i) in such proportion as is appropriate to reflect the relative benefits to the Debtors, on the one hand, and Miller Buckfire, on the other hand, in connection with Miller Buckfire's engagement described in this Agreement, or (ii) if the allocation provided by clause (i) above is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i), but also the relative fault of the Debtors, on the one hand, and Miller Buckfire, on the other hand, in connection therewith, as well as any other relevant equitable considerations; provided however, that in any event the aggregate contribution of all Indemnified Persons, including Miller Buckfire, to all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder will not exceed the amount of fees actually received by Miller Buckfire pursuant to Miller Buckfire's engagement described in this Agreement.  It is hereby agreed that for purposes of this paragraph, the relative benefits to the Debtors, on the one hand, and Miller Buckfire, on the other hand, with respect to Miller Buckfire's engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received by the Debtors, claims holders or contract parties, as the case may be, pursuant to the Transaction, whether or not consummated, for which Miller Buckfire is engaged to render financial advisory services, bears to (ii) the fee(s) paid or proposed to be paid to Miller Buckfire in connection with such engagement.

The Debtors further agree that, except with respect to Excluded Claims, it will promptly reimburse Miller Buckfire and any other Indemnified Person hereunder for all reasonable, documented out-of-pocket expenses (including reasonable fees and out-of-pocket disbursements of counsel) as they are incurred by Miller Buckfire or such other Indemnified Person in connection with investigating, preparing for or defending, or providing evidence in, any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not Miller Buckfire or any other Indemnified Person is a party) and in enforcing these Indemnification Provisions.  However, if an Indemnified Person is not entitled to reimbursement with respect to an Excluded Claim as described in the second sentence of the first paragraph of these Indemnification Provisions, Miller Buckfire or such Indemnified Person will promptly repay to the Debtors any expenses previously reimbursed by the Debtors under this Agreement related to such Excluded Claim.

Solely for purposes of enforcing these Indemnification Provisions, the Debtors hereby consent to personal jurisdiction, service and venue in any court in which any claim or proceeding which is subject to, or which may give rise to a claim for indemnification or contribution under, these Indemnification Provisions is brought against Miller Buckfire or any other Indemnified Person.

These Indemnification Provisions shall apply to the related engagement described in this Agreement, activities relating to such engagement occurring prior to the date hereof, and any subsequent modification of or amendment to such engagement, and shall remain in full force and effect following the completion or termination of Miller Buckfire's engagement.

The Debtors further agree that neither Miller Buckfire nor any other Indemnified Person shall have any liability to the Debtors, or any person asserting claims on behalf of the Debtors, for or in connection with this Agreement, Miller Buckfire's engagement under this Agreement or any Transaction or proposed Transaction, or any actions taken or omitted to be taken by an Indemnified Person, the Committee or the Debtors in connection therewith, except for losses, claims, damages, liabilities or reasonable, documented,

The Official Committee of Unsecured Creditors in *In re Vital Pharmaceuticals, Inc.,* et al.
As of November 4, 2022

out-of-pocket expenses incurred by the Debtors which are finally judicially determined to have resulted from the fraud, bad faith, gross negligence or willful misconduct of such Indemnified Person.

The Debtors' indemnity, contribution, reimbursement and other obligations under these Indemnification Provisions (i) shall apply to any services provided by Miller Buckfire in connection with this engagement prior to the date hereof and to any modifications of this Agreement, (ii) shall be in addition to any liability that the Debtors may otherwise have, at common law or otherwise, to any Indemnified Person, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of any Indemnified Person or any person controlling any of them, (iv) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, this Agreement, and (v) shall be binding on the Debtors' successors and assigns.

* * *