

**ORDERED in the Southern District of Florida on November 21, 2022.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-17842-PDR |
| Debtors. | (Jointly Administered) |

_____/

**ORDER APPROVING THE EMPLOYMENT OF ROTHSCHILD & CO US INC.,**
**AS INVESTMENT BANKER FOR THE DEBTORS, EFFECTIVE**
**AS OF THE PETITION DATE**

**THIS MATTER** having come before the Court for a hearing on November 21, 2022, at

10:00 a.m. in Fort Lauderdale, Florida (the "Hearing") upon the *Debtors' Application for Entry of*

*Interim and Final Orders Under 11 U.S.C. §§ 327(a) and 328(a) Authorizing the Employment and*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

11722294-2

*Retention of Rothschild & Co US Inc. as Investment Banker for the Debtors, Effective as of the Petition Date* [ECF No. 23] (the "Application"),[2] the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* [ECF No. 26] (the "First Day Declaration"), the *Declaration of Homer Parkhill in Support of the Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Rothschild & Co US Inc. as Investment Banker for the Debtors, Effective as of the Petition Date* attached to the Application as **Exhibit A** and the *Notice of Filing Supplemental Declaration of Homer Parkhill in Support of Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Rothschild & Co US Inc. as Investment Banker for the Debtors, Effective as of the Petition Date* filed on November 11, 2022 [ECF No. 313] (collectively, the "Parkhill Declaration").  The Application requests approval of the Debtors' employment of Rothschild & Co US Inc. ("Rothschild & Co") to provide investment banking advisory services to the Debtors.

The Court, having considered the Application, the Parkhill Declaration, the First Day Declaration, and the record of the Hearing and all of the proceedings had before the Court, finds that (a) the Court has jurisdiction over the matters raised in the Application pursuant to 28 U.S.C. §§ 157 and 1334; (b) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (c) this matter is core pursuant to 28 U.S.C. § 157(b)(2)(A); (d) the Court may enter a final order consistent with Article III of the United States Constitution; (e) notice of the Application and the Hearing thereon was sufficient under the circumstances and no other or further notice need be provided; (f) the relief requested in the Application is in the best interests of the Debtors, their estates, their creditors and other parties in interest; (g) the terms and conditions of Rothschild &

---

[2] Any capitalized term not explicitly defined herein shall have the meaning ascribed to it in the Application or Engagement Letter, as applicable.

2

Co's employment set forth in the Engagement Letter, as further amended by the Amendment to Letter Agreement dated November 15, 2022 (the "Engagement Letter Amendment") (including the Fee and Expense Structure) are reasonable as required by section 328(a) of the Bankruptcy Code; (h) Rothschild & Co does not hold or represent interests adverse to the Debtors' estates and is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code; (i) the Application and the Parkhill Declaration are in full compliance with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; and (j) upon a review of the record before the Court, including the legal and factual bases set forth in the Application and the First Day Declaration and the statements made by counsel at the Hearing, and being otherwise fully advised in the premises, does for the reasons stated on the record of the Hearing, all of which are incorporated herein, and after due deliberation and sufficient cause appearing therefor, has determined good and sufficient causes exists to grant the relief requested.  Accordingly, it is

       **ORDERED** as follows:

       1.     The Application is **APPROVED**.

       2.     The Debtors are authorized, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016, to employ and retain Rothschild & Co as the Debtors' investment banker in accordance with the terms and conditions set forth in the Application, the Engagement Letter, and Engagement Letter Amendment, which terms and conditions of the Engagement Letter and Engagement Letter Amendment, attached hereto as **Composite Exhibit 1**, are approved and incorporated herein by reference, subject to the terms of this Order, effective as of the Petition Date.

       3.     All of Rothschild & Co's compensation set forth in the Engagement Letter, as amended by the Engagement Letter Amendment, including, without limitation, the Fee and

Expense Structure, is approved pursuant to section 328(a) of the Bankruptcy Code, and Rothschild & Co shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter, as amended by the Engagement Letter Amendment, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court.

4.      None of the fees payable to Rothschild & Co shall constitute a "bonus" or fee enhancement under applicable law.

5.      Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, orders of this Court, or any guidelines regarding submission and approval of fee applications, Rothschild & Co and its professionals shall not be required to keep time records except in accordance with its normal firm policies.

6.      Notwithstanding anything to the contrary in the Engagement Letter, Engagement Letter Amendment, or the Application, to the extent that the Debtors request Rothschild & Co to perform any services other than those detailed in the Engagement Letter and Engagement Letter Amendment, the Debtors shall seek further approval by the Court by an application that shall set forth the additional services to be performed and the additional fees sought to be paid.

7.      The Debtors shall be bound by the indemnification, contribution, reimbursement, exculpation and other provisions of the Engagement Letter, subject, during the pendency of the Chapter 11 Cases, to the following:

    (a) No Indemnified Party (as such term is defined in the Engagement Letter) shall be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

    (b) The Debtors shall have no obligation to indemnify any Indemnified Party, or provide contribution or reimbursement to any Indemnified Party, for any claim or expense that is either (i) judicially determined (the determination having become

4

final) to have arisen from such Indemnified Party's gross negligence, actual fraud, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of such Indemnified Party's contractual obligations, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to applicable law; or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which such Indemnified Party is not entitled to receive indemnity, contribution or reimbursement under the terms of the Engagement Letter; and

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Chapter 11 Cases, any Indemnified Party believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter, including, without limitation, the advancement of defense costs, such Indemnified Party must file an application therefor in this Court, and the Debtors may not pay any such amounts to such Indemnified Party before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by Indemnified Parties for indemnification, contribution, or reimbursement, and not as a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Parties. All parties in interest shall retain the right to object to any demand by any Indemnified Party for indemnification, contribution, or reimbursement.

8.    Section 2(d) of the Initial Engagement Letter is modified by deleting the following sentence: "For the avoidance of doubt, in no event shall Rothschild & Co be entitled to more than one New Capital Fee pursuant to this Letter Agreement."

9.    The terms and conditions of this Order are immediately effective and enforceable upon its entry.

10.    The Debtors and Rothschild & Co are authorized and empowered to take all actions necessary to effectuate the relief granted pursuant to this Order.

11722294-2

11.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in these Chapter 11 Cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these Chapter 11 Cases to cases under chapter 7.

12.     Notwithstanding anything in the Application, the Parkhill Declaration, the Engagement Letter or the Engagement Letter Amendment to the contrary, to the extent that Rothschild & Co uses the professional financial advisory or investment banking services of independent contractors, subcontractors or employees of affiliates or subsidiaries (collectively, the "Contractors") in these Chapter 11 Cases, Rothschild & Co shall (i) pass-through the cost of such Contractors to the Debtors at the same rate that Rothschild & Co pays the Contractors, (ii) seek reimbursement for actual costs only, (iii) ensure that the Contractors are subject to substantially similar conflict checks as required for Rothschild & Co, and (iv) file with the Court any disclosures required by Bankruptcy Rule 2014.

13.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation or enforcement of this Order.

# # #

Submitted by:
Jordi Guso, Esq.
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com
Email:  mniles@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

11722294-2

## COMPOSITE EXHIBIT 1

**(Engagement Letter and Engagement Letter Amendment)**

11722294-2

As of April 8, 2022

Jack Owoc
CEO
Vital Pharmaceuticals, Inc.
1600 N Park Dr.
Weston, FL 33326



Dear Mr. Owoc:

This letter (the "Letter Agreement") confirms the understanding and agreement between Rothschild & Co US Inc. ("Rothschild & Co") and Vital Pharmaceuticals, Inc. (the "Company"), pursuant to which Rothschild & Co is pleased to accept its engagement by the Company. This Letter Agreement shall be effective as of April 8, 2022 (the "Effective Date").

1. <u>Services to be Rendered</u>. The Company engages Rothschild & Co as its exclusive financial advisor for the purpose of:

(a) advising the Company with respect to a potential minority investment, sale, merger or other business/strategic combination involving the Company;

(b) assisting the Company in identifying possible counterparties for a potential M&A Transaction (as defined below);

(c) assisting the Company in the development and implementation of a marketing plan and assisting the Company in its preparation of an information memorandum describing the Company for use with potential counterparties to a M&A Transaction;

(d) assisting the Company in its assessment of the financial aspects of a M&A Transaction and, if the Company determines to pursue a M&A Transaction, in its development of a plan for accomplishing such M&A Transaction;

(e) assisting the Company in structuring a M&A Transaction;

(f) participating on the Company's behalf in negotiations concerning the financial aspects of a M&A Transaction;

(g) if and as requested by the Company, assisting or participating in negotiations with any current creditors of the Company and/or their respective representatives in connection with a Waiver/Forbearance Transaction (as defined below);

(h) assisting the Company in raising new debt or equity financing in connection with a New Capital Raise (as defined below);

Rothschild & Co US Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschildandco.com

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 2



(i)     assisting the Company in making internal and external presentations concerning the financial aspects of any proposed Transaction (as defined below), as appropriate;

(j)     advising and assisting the Company in connection with setting up a data room and due diligence efforts in connection with any proposed Transaction; and

(k)     providing such other investment banking and financial advisory services as the Company and Rothschild & Co may from time to time agree upon.

The Company acknowledges that Rothschild & Co is not providing any advice on tax, legal or accounting matters, and that the Company will seek the advice of its own professional advisors with respect to such matters and make an independent decision regarding any transaction contemplated herein based on such advice.

The Company further acknowledges that in performing the foregoing services, Rothschild & Co may utilize the services of one or more of its affiliates, as appropriate; provided that any such affiliates utilized by Rothschild & Co shall be subject to the terms of this Letter Agreement.

The parties understand that the terms of this Letter Agreement and the Indemnification Agreement (as defined herein) shall apply to any services provided by Rothschild & Co to the Company in connection with a potential Transaction or the other matters described herein as of the Effective Date.

2.   <u>Compensation</u>.  In connection with this engagement, the Company shall pay to Rothschild & Co the following fees in cash:

(a)     Immediately upon the consummation and funding of a Minority M&A Transaction (as defined below), a fee (the "Minority M&A Transaction Fee") equal to:

       i.    if the Implied Enterprise Value (as defined below) is $7.25 billion or less, (A) 0.50% of the aggregate Implied Enterprise Value *multiplied by* (B) the Minority M&A Percentage (as defined below); or

      ii.    if the Implied Enterprise Value is greater than $7.25 billion and equal to or less than $10.00 billion, (A) 0.75% of the aggregate Implied Enterprise Value *multiplied by* (B) the Minority M&A Percentage; or

     iii.    if the Implied Enterprise Value is greater than $10.00 billion, (A) 1.0% of the aggregate Implied Enterprise Value *multiplied by* (B) the Minority M&A Percentage;

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 3



provided, that in no event shall the Minority M&A Transaction Fee payable hereunder upon the consummation and funding of a Minority M&A Transaction be less than $6.5 million.

The term "Implied Enterprise Value" means the total enterprise value of 100% of the Company implied or otherwise derived from the investment in the Company made in the Minority M&A Transaction and based on the pre-transaction capital structure of the Company (i.e., on a pre-money basis), calculated as total equity value of 100% of the Company on a fully-diluted basis, plus the net debt of the Company (and including, without limitation, outstanding preferred stock of the Company) calculated based on the market value of such debt as of the consummation and funding of the Minority M&A Transaction.

The term "Minority M&A Percentage" means the percentage of equity interests (calculated on a fully-diluted basis) or assets of the Company purchased or otherwise acquired in the Minority M&A Transaction. For greater certainty, if economic and voting percentages differ, than the Minority M&A Percentage shall be based on the higher of the two percentages.

By way of example only, Appendix A attached hereto includes an illustrative calculation of the Minority M&A Transaction Fee.

For the avoidance of doubt, in no event shall Rothschild & Co be entitled to more than one Minority M&A Transaction Fee pursuant to this Letter Agreement.

(b)     Immediately upon the consummation and funding of a Control M&A Transaction (as defined below), a fee (a "Control M&A Transaction Fee") equal to:

    i.    if the aggregate Consideration (as defined below) involved in the Control M&A Transaction is less than or equal to $7.25 billion, 0.50% of the aggregate Consideration involved in the Control M&A Transaction; or

    ii.    if the aggregate Consideration involved in the Control M&A Transaction is greater than $7.25 billion and equal to or less than $10.00 billion, 0.75% of the aggregate Consideration involved in the Control M&A Transaction; or

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 4



iii. if the aggregate Consideration involved in the Control M&A Transaction is greater than $10.00 billion, 1.0% of the aggregate Consideration involved in the Control M&A Transaction;

provided, that in no event shall the Control M&A Transaction Fee payable hereunder upon the consummation and funding of a Control M&A Transaction be less than $6.5 million.

For the avoidance of doubt, in no event shall Rothschild & Co be entitled to more than one Control M&A Transaction Fee pursuant to this Letter Agreement.

(c) If Rothschild & Co provides services to the Company in connection with a Waiver/Forbearance Transaction as set forth in Paragraph 1 of this Letter Agreement, a fee (the "Waiver/Forbearance Fee") equal to 0.25% of the aggregate principal amount of any indebtedness and/or other liabilities of the Company and/or its affiliates under the credit agreements that are subject to, or otherwise affected by, the Waiver/Forbearance Transaction. The Waiver/Forbearance Fee shall be earned in full upon the Company's execution of a Waiver/Forbearance Transaction and shall be payable by the Company to Rothschild & Co within five business days thereafter. For the avoidance of doubt, in no event shall Rothschild & Co be entitled to more than one Waiver/Forbearance Fee pursuant to this Letter Agreement.

(d) If Rothschild & Co provides services to the Company in connection with a New Capital Raise, a fee (the "New Capital Fee") equal to (i) 1.0% of the face amount of any senior secured or senior unsecured debt raised; (ii) 2.0% of the face amount of any junior, mezzanine or subordinated secured or unsecured debt raised and (iii) 2.0% of any debt-like or hybrid equity capital raised, including, without limitation, any preferred stock or convertible debt raised for bona fide debt-like or hybrid financing purposes. For the avoidance of doubt, the term "raised" shall include the amount committed or otherwise made available to the Company or its affiliates whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company or its affiliates. The New Capital Fee shall be earned in full upon the closing of a New Capital Raise and shall be payable by the Company to Rothschild & Co within five business days thereafter. For the avoidance of doubt, in no event shall Rothschild & Co be entitled to more than one New Capital Fee pursuant to this Letter Agreement.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 5



No fees or expenses payable to any other financial advisor either by the Company or by any other entity shall reduce or otherwise adversely affect the fees payable hereunder to Rothschild & Co.

With respect to any New Capital Raise that closes prior to, or concurrently with, an M&A Transaction, Rothschild & Co shall credit against the Minority M&A Transaction Fee or Control M&A Transaction Fee, as applicable (such credit to be applied only once and without duplication): 25% of any New Capital Fees paid pursuant to Paragraph 2(d)(i) above (the "New Capital Fee Credit"); provided, that the sum of any New Capital Fee Credit shall not exceed the Minority M&A Transaction Fee or Control M&A Transaction Fee, as applicable.  With respect to any New Capital Raise that closes after the closing of an M&A Transaction for which Rothschild & Co was paid the Minority M&A Transaction Fee or Control M&A Transaction Fee, as applicable (and which New Capital Raise is not subject to the New Capital Fee Credit set forth in the preceding sentence), any New Capital Fees for such New Capital Raise payable pursuant to Paragraph 2(d)(i) above shall be reduced by 25% (the "New Capital Fee Reduction").  For greater certainty, no New Capital Fee shall be subject to both the New Capital Fee Credit and the New Capital Fee Reduction.

In the event that a Control M&A Transaction is not consummated and the Company receives a breakup, topping or similar fee and/or other expense reimbursement (including the settlement of or judgment in any litigation or dispute relating to a Control M&A Transaction net of any legal fees relating thereto) from the potential counterparty to such Control M&A Transaction or any of its affiliates, or similar consideration relating to the termination, abandonment or cancellation of a Control M&A Transaction (collectively, a "Breakup Fee"), the Company will pay Rothschild & Co a fee of 20% of such Breakup Fee (the "Rothschild & Co Breakup Fee"); provided, that the Rothschild & Co Breakup Fee shall not exceed the Control M&A Transaction Fee otherwise payable hereunder had the Control M&A Transaction been consummated.

All fees are payable in United States dollars.

The term "Control M&A Transaction" means any transaction or series or combination of transactions whereby, directly or indirectly, 50% or more of the equity interests (calculated on a fully-diluted voting or economic basis) or assets of the Company is purchased or otherwise acquired, including, without limitation, through a sale or exchange of capital stock or assets, a merger or consolidation, a leveraged buyout, a tender or exchange offer, the formation of a joint or collaborative venture or partnership or any other transaction.  For the avoidance of doubt, the definition of "Control M&A Transaction" shall include any Control M&A Transaction that the Company conducts through an affiliate entity or subsidiary of the Company.

The term "Minority M&A Transaction" means any transaction or series or combination of related transactions whereby, directly or indirectly, less than 50% of the equity interests (including, without limitation, through an investment in preferred stock or capital convertible into equity interests) (in each case, calculated on a fully-diluted voting and economic basis) or assets of the

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 6



Company is purchased or otherwise acquired, including, without limitation, through a sale or exchange of equity interests or assets, a tender or exchange offer, the formation of a joint or collaborative venture or partnership, a minority interest or any other transaction, in each case, other than pursuant to a New Capital Raise. For the avoidance of doubt, the term "Minority M&A Transaction" shall include any Minority M&A Transaction that the Company conducts through an affiliate entity or subsidiary of the Company. For the further avoidance of doubt, a Minority M&A Transaction may consist of a primary offering of equity interests by the Company and/or secondary resales of equity interests by shareholders of the Company if consummated as part of the same transaction or series of related transactions.

The term "M&A Transaction" means a Control M&A Transaction or a Minority M&A Transaction.

The term "New Capital Raise" means (i) the issuance of any debt securities by the Company or its affiliates, including, without limitation, senior, junior, mezzanine, secured or unsecured debt securities of the Company or its affiliates, (ii) the execution by the Company or its affiliates of a credit, revolving credit, term loan, letter of credit or similar facility, and whether in the form of senior, junior, secured, unsecured, mezzanine or any other debt, (iii) the issuance by the Company or its affiliates of any debt-like or hybrid equity capital, including, without limitation, any preferred stock or convertible debt raised for bona fide debt-like or hybrid financing purposes, and (iv) any similar financing or new capital raise. For greater certainty, with respect to a transaction described in clause (iii) above, (A) if such capital is raised primarily for bona fide debt-like or hybrid financing purposes, then such transaction shall be deemed a New Capital Raise as opposed to a Minority M&A Transaction, and (B) if such transaction is primarily for purposes of effecting a strategic minority equity investment in the Company or its affiliates, then such transaction shall be deemed a Minority M&A Transaction as opposed to a New Capital Raise. For the further avoidance of doubt, in no event shall both a Minority M&A Transaction Fee and a New Capital Raise be charged with respect to the same capital. For the further avoidance of doubt, a New Capital Raise shall include any new capital raised in a refinancing transaction. For the further avoidance of doubt, the definition of "New Capital Raise" shall include any New Capital Raise that the Company conducts through an affiliate entity or subsidiary of the Company.

The term "Waiver/Forbearance Transaction" means a waiver or forbearance under one or more of the Company's or its affiliates' outstanding credit agreements, which may include, without limitation, a waiver of any breaches of any of the financial or other material covenants under one or more of the credit agreements. For the avoidance of doubt, if the Company desires Rothschild & Co to assist the Company with any other amendment or modification to one or more of the Company's or its affiliates' outstanding credit agreements, including, without limitation, (i) an agreement by the lenders under one or more of the credit agreements to accept payment in kind interest for any portion of their interest payment, or (ii) an extension of the maturity date of any portion of the debt issued under one or more of the credit agreements, then such additional services shall be covered by an

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 7



amendment to this Letter Agreement containing customary fees for such services as mutually agreed in good-faith by the Company and Rothschild & Co.

The term "Transaction" means a M&A Transaction, a Waiver/Forbearance Transaction or a New Capital Raise.

The term "Consideration" means the total amount of all cash and the fair market value of any securities, agreements or other property and any other consideration, including, without limitation (and without duplication), (i) consideration paid to the holders of any options, warrants, convertible securities or stock appreciation rights of the Company, whether or not vested, (ii) the present value (determined as of the closing of the Control M&A Transaction) of any amounts, securities, agreements or other property to be paid contingent on future events or to be paid over time, and (iii) the present value (determined as of the closing of the Control M&A Transaction) of any amounts, securities, agreements or other property held in escrow (collectively, "Escrowed Amounts"), in each case paid or payable, directly or indirectly, in connection with a Control M&A Transaction.  For purposes of calculating the present value of Escrowed Amounts under clause (iii) above, any Escrowed Amounts shall be assumed to be paid in full to the Company upon the end of the escrow release schedule as agreed in the definitive agreements for the Control M&A Transaction. Consideration shall be deemed to include the aggregate principal amount of any indebtedness for borrowed money, pension liabilities, guarantees, capitalized loans, declared and unpaid dividends and other similar obligations or liabilities (in each case, net of cash and cash equivalents as of the closing of the Control M&A Transaction) assumed, retired, repaid, extinguished or defeased, directly or indirectly, in connection with a Control M&A Transaction, or which survive the closing of a Control M&A Transaction. Consideration also shall be deemed to include the aggregate amount of any dividends paid or other distributions made by the Company with respect to its stock after the date of a definitive agreement with respect to a Control M&A Transaction, other than normal recurring cash dividends in amounts not materially greater than currently paid.  The present value of any contingent payments or payments to be made over time shall be mutually determined in good-faith by the Company and Rothschild & Co.  If the consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such consideration is payable.  For the avoidance of doubt, if the Company conducts a Control M&A Transaction through an affiliate entity or subsidiary of the Company, then any consideration paid or payable to such affiliate entity or subsidiary shall be deemed Consideration hereunder to the same extent as if paid or payable to the Company.

In connection with the sale of 50% or more but less than 100% of the outstanding equity interests of the Company, Consideration will be calculated as if 100% of such outstanding equity interests of the Company on a fully diluted basis had been acquired for the same per share amount as paid in the Control M&A Transaction.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 8



The fair market value of any securities (whether debt, equity, options or warrants) or other property or agreements paid or payable as Consideration in a Control M&A Transaction shall be determined as follows: (a) the fair market value of securities that are freely tradable in an established public market shall be the last closing market price of such securities prior to the public announcement of a Control M&A Transaction; and (b) the fair market value of securities which are not freely tradable or which have no established public market, or of property or agreements other than securities, shall be the fair market value thereof as mutually agreed in good faith by the Company and Rothschild & Co.

     3.  <u>Expenses</u>.  In addition to the compensation payable pursuant to Paragraph 2 above and without limitation of any provision of the Indemnification Agreement, the Company shall reimburse Rothschild & Co for all of Rothschild & Co's reasonable out-of-pocket expenses incurred in connection with the performance of Rothschild & Co's engagement hereunder if a Transaction is not consummated, including, without limitation, the fees, disbursements and other charges of Rothschild & Co's legal counsel and any other advisor retained by Rothschild & Co, if any (it being understood that the retention of any such advisor, other than legal counsel, will be made with the Company's advance written consent, which shall not be unreasonably withheld).  Such reimbursable expenses shall be paid by the Company to Rothschild & Co upon the earlier of (i) the termination of this Letter Agreement and (ii) the abandonment of the process for a Transaction by the Company.  Reasonable such expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, third-party data processing, third-party document production, communication charges outside of existing communication plans (i.e., non-overhead), research outside of existing research plans (i.e., non-overhead), and third-party courier services.  Notwithstanding the foregoing, Rothschild & Co's reimbursable expenses under this Paragraph 3 shall not exceed $25,000 in the aggregate without the prior written consent of the Company, which shall not be unreasonably withheld.  For the avoidance of doubt, nothing contained in this Paragraph 3 shall affect any of the provisions of the Indemnification Agreement.

     4.  <u>Information</u>.

     (a)  The Company understands and agrees that the services to be rendered by Rothschild & Co pursuant to Paragraph 1 of this Letter Agreement and the advice, whether formal or informal, relating thereto are solely for the benefit and use of the Company.  The Company agrees that any presentations, reports, opinions or other advice provided by Rothschild & Co to the Company in the context of this engagement shall not be summarized, excerpted from, disclosed publicly or made available to third parties (other than on a confidential, need to know and non-reliance basis to the Company's legal counsel and accountants), in whole or in part, without the prior written consent of Rothschild & Co as to form and substance.  No reference to Rothschild & Co shall be made in any press release, filing or other document without Rothschild & Co's prior approval as to form and substance.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 9



(b)     The Company will cooperate with Rothschild & Co and furnish to, or cause to be furnished to, Rothschild & Co any information that Rothschild & Co reasonably deems appropriate to enable Rothschild & Co to render services hereunder (all such information provided by or on behalf of the Company being the "Information") and will provide Rothschild & Co with reasonable access to the officers, directors, employees, accountants, counsel and other representatives (collectively, the "Representatives") of the Company.    In addition, the Company shall promptly inform Rothschild & Co of any material developments that it believes is reasonably likely to have a material effect on the services provided by Rothschild & Co under this Letter Agreement.    The Company recognizes and confirms that Rothschild & Co (i) will use and rely solely on the Information supplied by the Company and its Representatives and on information available from generally recognized public sources in performing the services contemplated by this Letter Agreement without having assumed any obligation to verify or investigate independently the same; (ii) will be entitled to assume and rely upon the accuracy and completeness of the Information and such other information; (iii) does not assume responsibility for the accuracy or completeness of the Information and such other information; and (iv) has not been asked to and will not conduct a physical inspection of any properties or assets of the Company or any other party or make or obtain any independent evaluation or appraisal of any assets or liabilities (contingent or otherwise) of the Company or any other party.    The Information, when delivered by or on behalf of the Company, to the best of its knowledge, will (i) be true and correct in all material respects, (ii) be prepared in good faith, and (iii) not contain any material misstatement of fact or omit to state any material fact.    Without limitation of the foregoing, the Company agrees that any projections or forecasts prepared by the Company and provided to Rothschild & Co will have been prepared, to the best of its knowledge, in good faith and will be based upon assumptions which, in light of the circumstances under which they are made, are reasonable in the Company's business judgment.    Rothschild & Co will assume that any projected or forecasted financial information reflects the best available estimates of future financial performance. Rothschild & Co recognizes and confirms that the Company will be entitled to assume and rely upon the accuracy and completeness of any information available from generally recognized public sources not prepared by the Company without having assumed any obligation to verify or investigate the same and the Company does not assume responsibility for the accuracy or completeness of such information.

(c)     The Company will promptly notify Rothschild & Co if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Rothschild & Co.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 10



(d)    The Company hereby acknowledges that all information contained in any information memorandum will be provided by or based upon information provided by the Company or third parties on the Company's behalf, and that the Company will be solely responsible for the contents thereof.

5.    <u>Indemnification and Exculpation</u>.  As further compensation for Rothschild & Co's services under this Letter Agreement, the Company shall indemnify Rothschild & Co and certain other indemnified parties pursuant to the terms of the Indemnification Agreement, dated as of the date hereof (the "Indemnification Agreement"), between the Company and Rothschild & Co, and the Indemnification Agreement is incorporated by reference herein.  The Indemnification Agreement shall survive any termination or expiration of this Letter Agreement.

The Company also agrees that no Exculpated Party (as defined below) shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its owners, parents, affiliates, security holders, creditors or any other person claiming through or on behalf of the Company for or in connection with advice or services rendered or to be rendered by any Exculpated Party pursuant to this Letter Agreement or the transactions contemplated hereby or any Exculpated Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen because of the gross negligence, willful misconduct, or fraud of such Exculpated Party in connection with any such advice, actions, inactions or services.  The term "Exculpated Party" means each of Rothschild & Co, its affiliates (within the meaning of Rule 12b-2 of the Securities Exchange Act of 1934, as amended) and each of their respective officers, directors, employees and agents and each other person, if any, controlling Rothschild & Co or any of its affiliates.

6.    <u>Term</u>.  This Letter Agreement shall commence on the date hereof and shall continue thereafter until ten days after such time as the Company or Rothschild & Co shall have notified the other party in writing of the termination of this Letter Agreement with or without cause.  Notwithstanding any termination of this Letter Agreement, unless this Letter Agreement is terminated by the Company for Cause (as defined below), the Company shall pay to Rothschild & Co the fees set forth in Paragraph 2 above (at the times and in the amounts set forth therein) if the Company (i) consummates any Transaction at any time within twelve (12) months following the effective date of termination of this Letter Agreement (such period, the "Tail Period") or (ii) executes a letter of intent or definitive agreement with respect to any Transaction at any time within the Tail Period (which, except in the case of the Rothschild & Co Breakup Fee, subsequently results in the consummation of a Transaction at any time thereafter); provided, that the fees set forth in Paragraph 2 above shall not be payable by the Company to Rothschild & Co with respect to a Transaction consummated during the Tail Period if the Company requests that Rothschild & Co be re-engaged by the Company as its financial advisor to provide services to the Company with respect to such Transaction pursuant to a separate letter agreement with the Company with terms and conditions no

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 11



less favorable to Rothschild & Co than this Letter Agreement and the Indemnification Agreement, and Rothschild & Co declines such engagement. No termination of this Letter Agreement shall affect the Company's obligation to pay accrued fees and expenses except to the extent provided for herein and to indemnify Rothschild & Co as provided in the Indemnification Agreement. The provisions of Paragraphs 3 through 8 and 10 shall survive any termination of this Letter Agreement. The term "Cause" means the gross negligence, willful misconduct or fraud of Rothschild & Co.

7.    <u>Other Rothschild & Co Activities</u>.  Rothschild & Co and its affiliates are involved in a wide range of financial advisory and investment banking activities from which conflicting interests or duties may arise. Rothschild & Co will not have any duty to disclose to the Company or utilize for the Company's benefit any non-public information acquired in the course of providing services to any third-party, engaging in any transaction (for its own account or otherwise) or otherwise carrying on its business.  In addition, in the ordinary course of business, Rothschild & Co and its affiliates may provide financial advisory or other investment banking services to, or have other relationships with, companies that may be customers, counterparties or competitors of the Company or that may otherwise have relationships with the Company. Rothschild & Co shall have no obligation to disclose to the Company any information it receives as a result of such activities, or the fact that it is in possession of such information, and Rothschild & Co shall have no obligation to use any such information for the benefit of or on behalf of the Company.  In the ordinary course of their asset management, merchant banking and other business activities, affiliates of Rothschild & Co may hold long or short positions, and may trade or otherwise effect transactions, for their own accounts or the accounts of their clients in equity, debt or other securities (or related derivative securities) or financial instruments of the Company, any of its affiliates or any other company that may be involved in a Transaction.

8.    <u>Additional Services</u>.  The Company understands that if Rothschild & Co is asked to act for the Company in any other formal additional capacity not specifically addressed in this letter, such activities shall constitute separate engagements and the terms of any such additional engagements will be embodied in one or more separate written agreements containing terms and conditions to be mutually agreed upon, including, without limitation, appropriate indemnification provisions.

9.    <u>Authorization</u>.  Rothschild & Co will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given by a person who is, or is reasonably believed by Rothschild & Co to be, a director, officer, employee or authorized agent of the Company.

10.    <u>General</u>.  No party may assign its rights or delegate its obligations under this Letter Agreement without the prior written consent of the other party, except pursuant to merger, consolidation or operation of law.  A purported assignment or delegation in violation of the preceding sentence is void.  This Letter Agreement binds and benefits the parties and their respective permitted successors and assigns.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 12



Prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of the Company's assets in one or a series of transactions that does not provide for the assumption of the Company's obligations set forth in this Letter Agreement and the Indemnification Agreement, the Company will notify Rothschild & Co in writing thereof and, if requested by Rothschild & Co, shall arrange in connection therewith alternative means of providing for such obligations of the Company hereunder, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions reasonably satisfactory to Rothschild & Co.  In the event that a Transaction is effected through a subsidiary of the Company, then the Company shall cause such entity to also assume and honor, in addition to the Company, the obligations and liabilities of the Company hereunder.

Rothschild & Co has been retained under this Letter Agreement as an independent contractor and not as a fiduciary or agent of the Company or any third party (including security holders, creditors, employees or other stakeholders of the Company), and the Company hereby disclaims any such fiduciary relationship.

Notwithstanding anything herein to the contrary, in performing its services pursuant to this Letter Agreement, Rothschild & Co is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction or other transaction.

In the event that Rothschild & Co initiates an action to enforce its rights under this Letter Agreement, then the Company shall reimburse Rothschild & Co for all reasonable costs and expenses incurred by Rothschild & Co in connection with enforcing such rights under this Letter Agreement to the extent Rothschild & Co prevails in such enforcement.  Similarly, in the event that the Company initiates an action to enforce its rights under this Letter Agreement, then Rothschild & Co shall reimburse the Company for all reasonable costs and expenses incurred by the Company in connection with enforcing such rights under this Letter Agreement to the extent the Company prevails in such enforcement.

The Company agrees to provide Rothschild & Co with its tax or other similar identification number and/or other identifying documents as Rothschild & Co may reasonably request, to enable it to comply with applicable law.  For your information, Rothschild & Co may also screen the Company against various databases to verify its identity.  The Company represents and warrants that it has provided or, upon request, will timely provide to Rothschild & Co a true and complete list of (i) its directors and executive officers and (ii) each beneficial owner of 20% or more of the outstanding equity interests in the Company on a fully-diluted basis.

Each party confirms and agrees that, insofar as may be relevant to the services set forth in Paragraph 1 or a Transaction, it shall not, and shall ensure that its representatives and any other person who performs services for or on its behalf shall not, offer, give or agree to give, or request,

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 13



accept or agree to accept, from any person, whether for itself or on behalf of another, any gift, payment, consideration or benefit of any kind which constitutes an illegal or corrupt practice under the laws of any relevant jurisdiction.

The Company consents to Rothschild & Co's limited display of the Company's name and logo solely as part of Rothschild & Co's general marketing materials (*i.e.*, pitch books); provided, that such display is in the form of a customary tombstone announcement and that the Company is provided a copy of any such customary tombstone announcement. The Company agrees that in any press release issued by it announcing a transaction contemplated by this Letter Agreement, the Company will include in such press release a reference to Rothschild & Co as exclusive financial advisor to the Company with respect to such transaction in a form reasonably acceptable to the Company. Rothschild & Co further agrees that it will not issue or contribute to any press release announcing a transaction contemplated by this Letter Agreement without the Company's written preapproval of such press release.

This Letter Agreement and the Indemnification Agreement contain the entire agreement of the parties with respect to the subject matter hereof and supersede and take precedence over all prior agreements or understandings, either oral or written, between Rothschild & Co and the Company with respect to the subject matter hereof. The Company and Rothschild & Co have all requisite power and authority to enter into this Letter Agreement and the transactions contemplated hereby. This Letter Agreement has been duly and validly authorized by all necessary action on the part of the Company and Rothschild & Co and has been duly executed and delivered by the Company and Rothschild & Co and constitutes a legal, valid and binding agreement of the Company and Rothschild & Co, enforceable in accordance with its terms. Each of the Company and Rothschild & Co represents and warrants that it is validly existing and in good-standing under the laws of its jurisdiction of incorporation or formation.

This Letter Agreement may not be amended or modified except in a writing executed by the parties hereto. All aspects of the relationship created by this Letter Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed therein without giving effect to conflicts of law principles or rules to the extent such principles or rules would require or permit the application of the laws of another jurisdiction. THE COMPANY AND ROTHSCHILD & CO WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF ROTHSCHILD & CO PURSUANT TO OR THE PERFORMANCE BY ROTHSCHILD & CO OF THE SERVICES CONTEMPLATED BY THIS LETTER AGREEMENT. All actions and proceedings arising out of or relating to this Letter Agreement shall be heard and determined exclusively in any New York state or federal court sitting in the Borough of Manhattan of the City of New York, to whose jurisdiction the Company and Rothschild & Co hereby irrevocably submit. The Company and Rothschild & Co hereby irrevocably waive any defense or objection to the New York forum designated above.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 14



      This Letter Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.  Delivery of an executed counterpart of a signature page to this Letter Agreement by facsimile, portable document format (PDF) or other electronic means shall be effective as delivery of a manually executed counterpart to this Letter Agreement.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 15



If the foregoing correctly sets forth our agreement, we would appreciate your signing and returning to us the enclosed copies of this Letter Agreement and the Indemnification Agreement, whereupon this Letter Agreement and the Indemnification Agreement shall constitute binding agreements between us.

Sincerely,

ROTHSCHILD & CO US INC.

By: _____
Name:  Michael Speller
Title:  Partner

Date: _____April 24, 2022_____

Acknowledged:

ROTHSCHILD & CO
LEGAL & COMPLIANCE

By: _____
Name: Frank London
Title: Managing Director

Date: April 24, 2022

Agreed and Accepted:

VITAL PHARMACEUTICALS, INC.

By: _____
Jack Owoc
CEO

Date: _04/08/2022_

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 16



Appendix A – Illustrative Calculation of the Minority M&A Transaction Fee

**Illustrative Minority M&A Transaction Fee Example**

| Implied Enterprise Value | Percentage of Implied Enterprise Value | Calculation Prior to Application of Minority M&A Percentage | Minority M&A Percentage | Minority M&A Transaction Fee |
|---|---|---|---|---|
| $7,250,000,000 | 0.500% | $36,250,000 | 20% | $7,250,000 |
| $8,500,000,000 | 0.750% | $63,750,000 | 20% | $12,750,000 |
| $10,000,000,000 | 1.000% | $100,000,000 | 20% | $20,000,000 |
| ( A ) | ( B ) | ( C ) | ( D ) | ( E ) |

A x B = C (Calculation Prior to the Application of Minority M&A Percentage)

C x D = E (Minority M&A Transaction Fee)

As of April 8, 2022

Rothschild & Co US Inc.
1251 Avenue of the Americas
New York, New York 10020

Ladies and Gentlemen:

This letter (this "Indemnification Agreement") confirms the understanding and agreement between Rothschild & Co US Inc. ("Rothschild & Co") and Vital Pharmaceuticals, Inc. (the "Company") as to the matters set forth herein.  Reference is made to the letter agreement, dated as of the date hereof (the "Engagement Letter"), between Rothschild & Co and the Company, pursuant to which the Company engaged Rothschild & Co as its financial advisor in connection with the matters described therein.  For the purposes of this Indemnification Agreement, (i) the term "Indemnified Parties" shall mean Rothschild & Co, its affiliates (within the meaning of Rule 12b-2 of the Securities Exchange Act of 1934, as amended) and each of their respective officers, directors, employees and agents and each other person, if any, controlling Rothschild & Co or any of its affiliates, and (ii) each of the Indemnified Parties shall be referred to as an "Indemnified Party".  This Indemnification Agreement shall be effective as of April 8, 2022 (the "Effective Date").

The Company agrees to indemnify and hold harmless each Indemnified Party from and against any losses, claims, liabilities, damages, proceedings, actions (including, without limitation, stockholder, creditor or derivative actions), judgments, settlements, assessments, investigation costs, fines, penalties, arbitration awards and any other liabilities, costs, fees and expenses (collectively, "Losses"), directly or indirectly in connection with, arising out of, based upon or related to the engagement of Rothschild & Co by the Company under the Engagement Letter or any transaction, activities or conduct in connection therewith as of the Effective Date; provided, that the Company shall not be required to indemnify any Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose because of the gross negligence, willful misconduct, or fraud of such Indemnified Party.

The Company shall further promptly reimburse any Indemnified Party for any reasonable fees, charges and disbursements of legal counsel or other reasonable fees, disbursements or expenses as they are incurred (a) in investigating, preparing, pursuing, settling or defending or assisting in the defense of any action or other

Rothschild & Co US Inc.
As of April 8, 2022
Page 2

proceeding (whether formal or informal) or threat thereof (including, without limitation, any expenses incurred in connection with any response to a subpoena or similar request for documents and/or testimony) relating to any of the matters covered by the indemnification set forth in the preceding paragraph, whether or not in connection with pending or threatened litigation or arbitration, whether or not any Indemnified Party is a party and whether or not resulting in any liability, and (b) in connection with enforcing such Indemnified Party's rights under this Indemnification Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose because of the gross negligence, willful misconduct, or fraud of such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated in the Engagement Letter, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party and any other party. Relative benefits to the Company, on the one hand, and Rothschild & Co, on the other hand, with respect to the matters contemplated in the Engagement Letter shall be deemed to be in the same proportion as (i) the total net proceeds received by the Company or its security holders, as the case may be, pursuant to the transaction(s) contemplated by the Engagement Letter, bears to (ii) all fees actually received by Rothschild & Co in connection with the Engagement Letter. Relative fault shall be determined by reference to, among other things, whether any alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents), on the one hand, or by Rothschild & Co, on the other hand.

Promptly after receipt by an Indemnified Party of service of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such Indemnified Party will notify the Company in writing of such complaint or of the commencement of such action or proceeding, but failure to so notify the Company will relieve the Company from the obligation to indemnify such Indemnified Party only if and only to the extent that such failure results in the forfeiture by the Company of material rights and defenses, and will not in any event relieve the Company from any other obligation or liability that the Company may have to any Indemnified Party otherwise than in accordance with the provisions hereof. If the Company so elects or is requested by such Indemnified Party, the Company will assume the defense of such action or proceeding including the employment of counsel reasonably satisfactory to such Indemnified Party and the payment of the reasonable and customary fees and disbursements of such counsel. In the event, however, such Indemnified Party reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if the defendants in or targets of any such action or proceeding include both an Indemnified Party and the Company and such Indemnified Party reasonably concludes that there may be relevant legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Company, or if the Company fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such Indemnified Party in a timely manner, then such Indemnified Party may employ separate counsel to represent or defend it in any such action or proceeding and the Company will

Rothschild & Co US Inc.
As of April 8, 2022
Page 3

pay the reasonable and customary fees and disbursements of such counsel; provided, however that the Company will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for such Indemnified Parties in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense.

The Company will not, without Rothschild & Co's prior written consent, which shall not be unreasonably delayed, withheld or conditioned, settle, compromise, consent to the entry of any judgment in or otherwise resolve or seek to terminate any action, claim, suit, investigation or proceeding in respect of which indemnification may be sought hereunder (or permit or otherwise facilitate any such action by any director or executive officer of the Company) (in each case whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (i) includes an express, unconditional release of each Indemnified Party from any liabilities arising out of such action, claim, suit, investigation or proceeding and (ii) does not include a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of, an Indemnified Party. No Indemnified Party seeking indemnification, reimbursement or contribution under this Indemnification Agreement will, without the Company's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to herein.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Indemnification Agreement, if any term, provision, covenant or restriction contained in this Indemnification Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Indemnification Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated.

No party may assign any right or delegate any obligation under this Indemnification Agreement without the prior written consent of the other party, except pursuant to merger, consolidation or operation of law. A purported assignment or delegation in violation of the preceding sentence is void. This Indemnification Agreement binds and benefits the parties and their respective permitted successors and assigns. Each Indemnified Party (other than Rothschild & Co) shall be a third party beneficiary of this Indemnification Agreement, and as such, shall be entitled to the benefits of this Indemnification Agreement to the same extent as if it was a party. This Indemnification Agreement may not be amended or modified except in a writing executed by the parties.

This Indemnification Agreement and the Engagement Letter contain the entire agreement of the parties with respect to the subject matter hereof and thereof and supersede and take precedence over all prior agreements or understandings, either oral or written, between Rothschild & Co and the Company with respect to the subject matter hereof and thereof. The Company and Rothschild & Co have all requisite power and authority to enter into this Indemnification Agreement and the transactions contemplated hereby. This Indemnification Agreement has been duly and validly authorized by all necessary action on the part of the Company and Rothschild & Co and has been duly executed and delivered by the Company and Rothschild & Co and constitutes a legal, valid and binding agreement of the Company and Rothschild & Co, enforceable in accordance with its terms.

Rothschild & Co US Inc.
As of April 8, 2022
Page 4

This Indemnification Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed therein without giving effect to conflicts of law principles or rules to the extent such principles or rules would require or permit the application of the laws of another jurisdiction. THE COMPANY AND ROTHSCHILD & CO WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THIS INDEMNIFICATION AGREEMENT. All actions and proceedings arising out of or relating to this Indemnification Agreement shall be heard and determined exclusively in any New York state or federal court sitting in the Borough of Manhattan of the City of New York, to whose jurisdiction the Company and Rothschild & Co hereby irrevocably submit. The Company and Rothschild & Co hereby irrevocably waive any defense or objection to the New York forum designated above.

The provisions of this Indemnification Agreement shall apply to the Engagement Letter (including related activities prior to the date hereof) and any modification thereof and shall remain in full force and effect regardless of the expiration or termination of the Engagement Letter.

This Indemnification Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Indemnification Agreement by facsimile, portable document format (PDF) or other electronic means shall be effective as delivery of a manually executed counterpart to this Indemnification Agreement.

Rothschild & Co US Inc.
As of April 8, 2022
Page 5

Please indicate your agreement to and acceptance of the above terms by signing where indicated below.

Sincerely yours,

VITAL PHARMACEUTICALS, INC.

By:
Jack Owoc
CEO

Terms Agreed to and Accepted:

ROTHSCHILD & CO US INC.

By:
Name: Michael Speller
Title: Partner

Acknowledged:

ROTHSCHILD & CO
LEGAL & COMPLIANCE

By:
Name: Frank London
Title: Managing Director

Date: April 24, 2022

## AMENDMENT TO LETTER AGREEMENT

This amendment ("Amendment"), effective as of August 9, 2022, shall amend the letter agreement, dated as of April 8, 2022 (the "Letter Agreement"), between Rothschild & Co US Inc. ("Rothschild & Co") and Vital Pharmaceuticals, Inc. (the "Company"). Rothschild & Co and the Company may be referred to in this Amendment collectively as the "Parties" and individually as a "Party." All capitalized terms used herein but undefined shall have the meanings ascribed to such terms in the Letter Agreement.

In consideration of the mutual covenants contained herein, the Parties agree as follows:

A.      Additional Services to be Rendered. In addition to the services set forth in Paragraph 1 of the Letter Agreement, Rothschild & Co shall provide the following additional services as reasonably requested by the Company and appropriate:

        1.      advising and assisting the Company in the development and implementation of a process intended to generate bidders for a sale of the Loan Parties (as defined in the Fourth Forbearance Amendment and Fifth Amendment to Amended and Restated Revolving Credit and Term Loan Agreement, dated as of August 8, 2022) pursuant to Section 363 of the Bankruptcy Code (the "363 Sale Process");

        2.      in connection with any case or cases commenced by or against the Company, any of its subsidiaries, any of its affiliates or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under Title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code"), and if requested by the Company, participating in hearings before the Bankruptcy Court in which such cases are commenced (the "Bankruptcy Court") and providing relevant testimony with respect to the matters described herein and issues arising in connection with any proposed plan of reorganization under a Bankruptcy Case (a "Plan");

        3.      acting as Investment Banker to the Company in connection with a Bankruptcy Case;

        4.      reviewing and analyzing any proposals the Company receives from third parties in connection with a Transaction during a Bankruptcy Case, including, without limitation, any proposals for debtor-in-possession financing, mergers and acquisitions or other strategic alternatives, as appropriate; and

        5.      assisting or participating in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Transaction pursuant to a Bankruptcy Case.

B.      Control M&A Transaction and Minority M&A Transaction. For the avoidance of doubt, a Control M&A Transaction or Minority M&A Transaction may be conducted, without limitation, pursuant to a Plan (including, without limitation, as part of any Plan providing for any

restructuring or reorganization of debt or other liabilities, an equitization or an exchange of debt for equity) or Section 363 of the Bankruptcy Code, and including, without limitation, any sale of the Loan Parties pursuant to the 363 Sale Process or otherwise; provided, that, for the avoidance of doubt, any payment of any debts or liabilities of, or any return or distribution on account of any equity interests in, the Company from the proceeds of any M&A Transaction shall not constitute a separate M&A Transaction.  For the further avoidance of doubt, an M&A Transaction or Plan may be proposed by the Company or any other party.

      C.    New Capital Raise.  For the avoidance of doubt, a New Capital Raise may be effected, without limitation, through a debtor-in-possession financing as part of a Bankruptcy Case or pursuant to a Plan.

      D.    Application for Retention of Rothschild & Co for a Bankruptcy Case.  In the event a Bankruptcy Case is commenced, the Company shall apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (a) the Letter Agreement, as amended by this Amendment and (b) Rothschild & Co's retention by the Company under the terms of the Letter Agreement and this Amendment (including, without limitation, the reimbursement of the fees, disbursements and other charges of Rothschild & Co's counsel pursuant to Section F. hereof without the requirement that the retention of such counsel be approved by the Bankruptcy Court), nunc pro tunc to the date the Chapter 11 case was commenced, and shall use commercially reasonable efforts to obtain Bankruptcy Court authorization thereof.  The Company shall use commercially reasonable efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code.  The Company shall supply Rothschild & Co and its counsel with a draft of such application and any proposed order authorizing Rothschild & Co's retention sufficiently in advance of the filing of such application and proposed order to enable Rothschild & Co and its counsel to review and comment thereon.  Upon commencement of a Bankruptcy Case, Rothschild & Co shall have no obligation to provide any services under the Letter Agreement and this Amendment unless the Bankruptcy Court approves Rothschild & Co's retention under the terms of the Letter Agreement and this Amendment in a manner materially consistent with the above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, which order is reasonably acceptable to Rothschild & Co.  Rothschild & Co acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section D., payment of Rothschild & Co's fees and expenses shall be subject to (a) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code (and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code) and any order approving Rothschild & Co's retention, (b) any applicable fee and expense guidelines and/or orders and (c) any requirements governing interim and final fee applications.  In the event that Rothschild & Co's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and reasonably incurred expenses of Rothschild & Co under the Letter Agreement and this Amendment as promptly as practicable in accordance

with the terms of the Letter Agreement and this Amendment and any applicable orders of the Bankruptcy Court.

In a Bankruptcy Case, the Company agrees that Rothschild & Co's post-petition compensation as set forth in the Letter Agreement and this Amendment and payments made pursuant to reimbursement and indemnification provisions of the Letter Agreement and this Amendment shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Company to pay promptly Rothschild & Co the compensation and expense reimbursement contemplated under the Letter Agreement and this Amendment after taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court. In addition, the Company shall use its commercially reasonable efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in the Bankruptcy Case provides for the full and prompt payment of Rothschild & Co's fees and expenses contemplated under the Letter Agreement and this Amendment from any cash collateral and financing proceeds. Rothschild & Co shall have no obligation to provide any services under the Letter Agreement and this Amendment if the conditions of this paragraph are not satisfied.

Rothschild & Co shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

The Company and Rothschild & Co acknowledge and agree that (a) the hours worked, (b) the results achieved and (c) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Rothschild & Co have taken such factors into account in setting the fees under the Letter Agreement and this Amendment.

With respect to any Plan, the Company shall use its commercially reasonable efforts to include Rothschild & Co and the other Exculpated Parties in the customary release from liability of professionals in the Plan, subject to the customary carveouts applicable to the other professionals thereunder, including gross negligence, willful misconduct and fraud.

E.      Fees of Rothschild & Co. In addition to the fees set forth in the Letter Agreement (which shall continue to apply during a Bankruptcy Case), the Company, and its successors, if any, agree to pay Rothschild & Co (via wire transfer or other mutually acceptable means) the following additional fees in cash:

1.      Commencing upon the commencement of a Bankruptcy Case, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Fee") of $200,000 per month. The initial Monthly Fee shall be pro-rated based on the date of commencement of a Bankruptcy Case. The initial Monthly Fee shall be payable by the Company upon the commencement of a Bankruptcy Case, and thereafter the Monthly Fee shall be payable by the

Company in advance on the first day of each month. Rothschild & Co shall credit against the Minority M&A Transaction Fee or Control M&A Transaction Fee, as appropriate (such credit to be applied only once and without duplication), 50% of the Monthly Fees paid after the Company's payment of the third Monthly Fee and 100% of the Monthly Fees paid after the Company's payment of the sixth Monthly Fee (in each case, the "Monthly Fee Credit"); provided that the sum of the Monthly Fee Credit shall not exceed the Minority M&A Transaction Fee or Control M&A Transaction Fee, as appropriate.

F.   Bankruptcy Case Expenses. Notwithstanding Paragraph 3 of the Letter Agreement, if a Bankruptcy Case is commenced, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Rothschild & Co for all of its reasonable expenses incurred in connection with performing services for the Company with respect to a Bankruptcy Case upon presentation of an invoice or other similar documentation with reasonable detail. If a Bankruptcy Case is commenced, it is understood that Rothschild & Co's reimbursable counsel fees may include, without limitation, fees incurred in representing Rothschild & Co's interests during the pendency and following the conclusion of any Bankruptcy Case, including, without limitation, counsel fees incurred in connection with Rothschild & Co's retention and payment hereunder. Nothing contained in this Section F. shall limit any provision of the Indemnification Agreement.

G.   All Agreements. The Letter Agreement as amended by this Amendment contains all of the agreements of the Parties with respect to the matters contained herein. Nothing in this Amendment shall be deemed to waive or modify any of the provisions of the Letter Agreement, except as expressly stated herein. Without limitation of the foregoing, the Indemnification Agreement shall remain in full force and effect and shall be deemed to cover, without limitation, the additional services, and matters pertaining to such services, set forth in this Amendment.

H.   No Other Modifications. Except as hereby amended, the Letter Agreement shall remain unmodified and, as hereby amended, is ratified and reaffirmed.

I.   Further Assurances. The Parties agree (i) to execute and deliver to each other such other documents, and (ii) to do such other acts and things, as the other Party may at any time reasonably request, for the purpose of carrying out the intent of this Amendment.

J.   Headings. The headings in this Amendment are for reference only and shall not affect the interpretation of this Amendment.

K.   Counterparts. This Amendment may be executed in multiple counterparts with detachable signature pages, each of which will be deemed an original, but which taken together shall form a single agreement. A copy of this Amendment or of a signature thereto shall have the same force and effect as the original. An electronic signature of this Amendment and/or an electronic transmission of a signature shall be binding on each Party whose signature appears thereon.

L.   Electronic Signatures. The Parties may execute this Amendment electronically and further agree that any such execution by means of an electronically-produced signature shall

have the same legal validity and enforceability as a manually executed signature to the fullest extent permitted by applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, or any similar applicable federal or state law, rule, or regulation, as the same may be in effect from time to time, and the Parties hereby waive any objection to the contrary.

      M.    <u>Choice of Law and Venue.</u>  The choice of law and venue provisions set forth in Paragraph 10 of the Letter Agreement shall apply to this Amendment.

Each of the Parties has executed this Amendment to Letter Agreement to be effective as of August 9, 2022.

**Rothschild & Co US Inc.**

By: _____

Name:  Charles Delo

Title:   Managing Director

Date:   August 10, 2022


**Vital Pharmaceuticals, Inc.**

By: _____
      John H Owoc (Aug 10, 2022 16:04 EDT)

Name:  John H. Owoc

Title:   CEO

Date:   Aug 10, 2022

6

## <u>AMENDMENT TO LETTER AGREEMENT</u>

This amendment ("Amendment"), effective as of November 15, 2022, shall amend the letter agreement, dated as of April 8, 2022 and as amended as of August 9, 2022 (collectively, the "Letter Agreement"), between Rothschild & Co US Inc. ("Rothschild & Co") and Vital Pharmaceuticals, Inc. (the "Company"). Rothschild & Co and the Company may be referred to in this Amendment collectively as the "Parties" and individually as a "Party." All capitalized terms used herein but undefined shall have the meanings ascribed to such terms in the Letter Agreement.

In consideration of the mutual covenants contained herein, the Parties agree as follows:

A.      <u>Amendments to Fees</u>. The parties agree to the following amendments to Rothschild & Co's fees under the Letter Agreement:

1.   The following proviso in Paragraph 2(a) of the Letter Agreement shall be deleted:

"<u>provided</u>, that in no event shall the Minority M&A Transaction Fee payable hereunder upon the consummation and funding of a Minority M&A Transaction be less than $6.5 million."

2.   The proviso in Paragraph 2(b) under the Letter Agreement shall be amended and restated as follows:

"<u>provided</u>, that in no event shall the Control M&A Transaction Fee payable hereunder upon the consummation and funding of a Control M&A Transaction be less than: (i) if the aggregate Consideration involved in the Control M&A Transaction is $600 million or less, $6.3 million, or (ii) if the aggregate Consideration involved a Control M&A Transaction is greater than $600 million, $6.5 million."

3.   The two references to "Paragraph 2(d)(1)" contained in the second paragraph of page 5 of the Letter Agreement shall be changed to "Paragraph 2(d)" as follows (the changes are bolded and underlined for ease of reference):

"With respect to any New Capital Raise that closes prior to, or concurrently with, an M&A Transaction, Rothschild & Co shall credit against the Minority M&A Transaction Fee or Control M&A Transaction Fee, as applicable (such credit to be applied only once and without duplication): 25% of any New Capital Fees paid pursuant to **<u>Paragraph 2(d)</u>** above (the "New Capital Fee Credit"); provided, that the sum of any New Capital Fee Credit shall not exceed the Minority M&A Transaction Fee or Control M&A Transaction Fee, as applicable. With respect to any New Capital Raise that closes after the closing of an M&A Transaction for which Rothschild & Co was paid the Minority M&A Transaction Fee or Control M&A Transaction Fee, as applicable (and which New Capital Raise is not subject to the New Capital Fee Credit set forth

in the preceding sentence), any New Capital Fees for such New Capital Raise payable pursuant to **Paragraph 2(d)** above shall be reduced by 25% (the "New Capital Fee Reduction"). For greater certainty, no New Capital Fee shall be subject to both the New Capital Fee Credit and the New Capital Fee Reduction."

B.  <u>All Agreements</u>. The Letter Agreement as previously amended and as amended by this Amendment contains all of the agreements of the Parties with respect to the matters contained herein. Nothing in this Amendment shall be deemed to waive or modify any of the provisions of the Letter Agreement, except as expressly stated herein. Without limitation of the foregoing, the Indemnification Agreement shall remain in full force and effect.

C.  <u>No Other Modifications.</u> Except as previously amended and as amended by this Amendment, the Letter Agreement shall remain unmodified and, as hereby amended, is ratified and reaffirmed.

D.  <u>Further Assurances.</u> The Parties agree (i) to execute and deliver to each other such other documents, and (ii) to do such other acts and things, as the other Party may at any time reasonably request, for the purpose of carrying out the intent of this Amendment.

E.  <u>Headings.</u> The headings in this Amendment are for reference only and shall not affect the interpretation of this Amendment.

F.  <u>Counterparts.</u> This Amendment may be executed in multiple counterparts with detachable signature pages, each of which will be deemed an original, but which taken together shall form a single agreement. A copy of this Amendment or of a signature thereto shall have the same force and effect as the original. An electronic signature of this Amendment and/or an electronic transmission of a signature shall be binding on each Party whose signature appears thereon.

G.  <u>Electronic Signatures.</u> The Parties may execute this Amendment electronically and further agree that any such execution by means of an electronically-produced signature shall have the same legal validity and enforceability as a manually executed signature to the fullest extent permitted by applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, or any similar applicable federal or state law, rule, or regulation, as the same may be in effect from time to time, and the Parties hereby waive any objection to the contrary.

H.  <u>Choice of Law and Venue.</u> The choice of law and venue provisions set forth in Paragraph 10 of the Letter Agreement shall apply to this Amendment.

Each of the Parties has executed this Amendment to Letter Agreement to be effective as of November 15, 2022.

**Rothschild & Co US Inc.**

By:

Name: Homer Parkhill

Title: Global Co-Head of Restructuring

Date: 11-17-2022

**Vital Pharmaceuticals, Inc.**

By:

Jack Owoc (Nov 21, 2022 09:23 EST)

Name:

Title:

Date: 11-17-2022