

**ORDERED in the Southern District of Florida on November 21, 2022.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 (PDR) |
| | (Jointly Administered) |
| Debtors.[1] | |

**FINAL ORDER (A) AUTHORIZING THE DEBTORS TO CONTINUE**
**TO (I) MAINTAIN THEIR CASH MANAGEMENT SYSTEM,**
**(II) HONOR CERTAIN PREPETITION AND POSTPETITION OBLIGATIONS**
**RELATED THERETO, (III) USE EXISTING BUSINESS FORMS, AND (IV) PERFORM**
**INTERCOMPANY TRANSACTIONS, AND (B) GRANTING RELATED RELIEF**

**THIS MATTER** was before this Court on November 21, 2022, at 10:00 a.m. in Fort Lauderdale, Florida, upon the *Debtors' Emergency Motion for Entry of Interim and Final Orders (A) Authorizing the Debtors to Continue to (I) Maintain Their Cash Management System,*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

*(II) Honor Certain Prepetition and Postpetition Obligations Related Thereto, (III) Use Existing Business Forms, and (IV) Perform Intercompany Transactions, and (B) Granting Related Relief* [ECF No. 18] (the "Motion")[2] filed by the above-captioned debtors and debtors-in-possession (the "Debtors").  The Motion seeks entry of interim and final orders (a) authorizing the Debtors to continue to (i) maintain their cash management system, (ii) honor certain prepetition and postpetition obligations related thereto, (iii) use existing business forms, and (iv) perform certain intercompany transactions, and (b) granting related relief.  The Court finds that (i) it has jurisdiction over the matters raised in the Motion under 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding under 28 U.S.C § 157(b)(2)(A), and that this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; (v) notice of the Motion and the hearing were appropriate under the circumstances and no other notice need be provided; and (vi) upon review of the record before the Court, including the legal and factual bases set forth in the Motion and the First Day Declaration and the statements made by counsel at the hearing, good and sufficient cause exists to grant the relief requested in the Motion.  Accordingly, it is

   **ORDERED** as follows:

   1.   The Motion is **GRANTED**, on a final basis.

   2.   The Debtors are authorized to continue to (a) maintain their Cash Management System substantially as identified on **Exhibit 1** attached hereto and as described in the Motion, in each case consistent with prepetition practice, (b) honor certain prepetition and postpetition obligations related thereto, (c) use existing Business Forms and books and records, and

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the Motion.

11744663-4

(d) continue Intercompany Transactions consistent with historical practice and honor prepetition and postpetition obligations related thereto.

3.  The Debtors are authorized to (a) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those Bank Accounts identified on **Exhibit 2** attached hereto, (b) use, in their present form, all correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors in possession, (c) treat the Bank Accounts for all purposes as accounts of the Debtors as debtors in possession, (d) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits, and (e) pay the Bank Fees, including any prepetition amounts, and any ordinary course Bank Fees incurred in connection with the Bank Accounts, and to otherwise perform their obligations under the documents governing the Bank Accounts (collectively, the "Bank Account Agreements"), including, without limitation, to reimburse any Cash Management Bank for any checks deposited with such Cash Management Bank that have been dishonored or returned for insufficient funds, and any reimbursement or other obligations, such as overdrafts arising under the Bank Account Agreements (collectively, the "Bank Account Claims"). Except to the extent otherwise directed by the terms of this Order, all of the provisions of the Bank Account Agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect. The Cash Management Banks are hereby authorized, without further order of this Court, to charge to the Debtors and deduct from the appropriate Bank Accounts the Bank Account Claims that are incurred in connection therewith in the ordinary course of business, whether such items are dated prior to, on, or subsequent to the Petition Date.

4.  The Cash Management Banks are authorized to (a) continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without

11744663-4

interruption and in the ordinary course, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, and credit card payments issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be and (b) without further order of this Court, charge and deduct all applicable fees (including, without limitation, the Bank Fees) from the applicable Bank Accounts consistent with historical practice, whether such fees were incurred prior to, on, or subsequent to the Petition Date.

5. Subject to applicable bankruptcy or other law, those certain existing deposit agreements or other treasury management agreements between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Cash Management Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements shall remain in full force and effect.

6. The Debtors and the Cash Management Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures related thereto in the ordinary course of business, including, without limitation, the closing of Bank Accounts or the opening of New Accounts; *provided that* the Debtors will give timely notice to the U.S. Trustee, counsel to the administrative agent under the Debtors' proposed postpetition credit facility), and counsel to any statutory committee appointed in these chapter 11 cases of the closing of Bank Accounts, the opening of New Accounts or any other material changes to the Cash Management System.

7. The relief granted in this Order is extended to any New Account opened by the Debtors in the ordinary course of business after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened, which bank shall be deemed a

Cash Management Bank.  The Debtors are authorized to open New Accounts so long as any such new account is with one of the Debtors' existing Cash Management Banks or with a bank that is (a) insured with the FDIC or the Federal Savings and Loan Insurance Corporation, (b) designated as an authorized depository by the U.S. Trustee pursuant to the U.S. Trustee's Guidelines, and (c) with a bank that agrees to be bound by the terms of this Order.  As required herein, to the extent the Debtors open a New Account, they shall provide timely notice to the U.S. Trustee, counsel to the administrative agent under the Debtors' proposed postpetition credit facility, and counsel to any statutory committee appointed in these chapter 11 cases.

8. All Cash Management Banks maintaining any of the Bank Accounts that are provided with notice of this Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Bank Accounts.

9. Subject to the terms set forth herein, any bank, including the Cash Management Banks, may accept, honor and rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored or dishonored, consistent with any order of this Court and governing law, whether such checks, drafts, or wires and other withdrawals are dated prior to, on, or subsequent to the Petition Date, and shall have no duty to independently inquire as to whether such payments are authorized by an order of this Court; and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored or (c) as a result of a good faith error made despite implementation of reasonable item-handling procedures shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party

on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Order.

10. Any banks, including the Cash Management Banks, are: (a) further authorized to (i) honor the Debtors' directions with respect to the opening and closing of any Bank Account and (ii) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; and (b) have no duty to independently inquire as to whether such payments are authorized by an order of this Court; *provided* that the Cash Management Banks shall not have any liability to any party for relying on the Debtors' directions or instructions regarding any of the foregoing.

11. The Debtors are authorized to deposit funds in accordance with their established deposit practices in effect as of the Petition Date and, to the extent that such deposit practice is inconsistent with the requirements of section 345(b) of the Bankruptcy Code or the U.S. Trustee Guidelines, such requirements are waived, on a final basis; *provided that* the following funds shall be swept each business day to either the Truist Concentration Account or the PNC Bank Concentration Account: (a) funds in the PayPal Account in excess of $1,500.00, (b) funds in the HSBC Operating Account in excess of $179,952.58, and (c) funds in the Huntington National Bank Collections Account in excess of $10,000.00.

12. The Debtors are authorized to continue to enter into and engage in the Intercompany Transactions in the ordinary course of business on a postpetition basis and settle any prepetition Intercompany Claims discovered during a postpetition intercompany true-up that are related to costs not previously posted to the balances for each entity, including funding the operations of the Foreign Non-Debtor Affiliates and paying the Landlord Obligations; *provided* that the Debtors shall not be authorized to undertake any Intercompany Transactions that are not on terms materially consistent with the Debtors' operation of their business in the ordinary course during

the prepetition period; *provided*, *further*, that there shall be no intercompany loans from the Debtors to any non-Debtor affiliates, or any payments to any non-Debtor affiliates, absent further order of the Court (other than (i) the continued funding of the Foreign Non-Debtor Affiliates as described in the Motion and (ii) the continued payment of Landlord Obligations); *provided*, *further*, that any Intercompany Transactions shall be in accordance with the terms and conditions of the DIP facilities, including the DIP budget, the approved use of cash collateral, and the requirements of the DIP financing orders. To the extent that the Debtors seek to commence Intercompany Transactions to Foreign Non-Debtor Affiliates in excess of $500,000.00 on a gross basis over each calendar month, the Debtors must provide written notice to and obtain written consent from the Official Committee of Unsecured Creditors (the "<u>Committee</u>") within five (5) business days prior to any such Intercompany Transaction, which consent shall not be unreasonably withheld or delayed by the Committee. All postpetition payments from a Debtor to another Debtor under any postpetition Intercompany Transaction are hereby accorded administrative expense status immediately junior to the Carve-Out, Adequate Protection Liens, and Adequate Protection Superpriority Claims (each as defined in the DIP financing orders). In connection with the Intercompany Transactions, the Debtors shall continue to maintain current records with respect to all transfers of cash so that all transactions, including the Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts. On a monthly basis, the Debtors shall provide the Committee with a schedule of all Intercompany Transactions executed in the prior month, which schedule shall include individual Intercompany Transaction payment amounts and frequency. The Debtors otherwise shall make such records available upon request by the U.S. Trustee, the administrative

11744663-4

agent under the Debtors' proposed postpetition credit facility, and any other official statutory committee appointed in these chapter 11 cases.

13. Nothing contained in the Motion or this Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any interest or encumbrance on the property of any Debtor or its estate that existed as of the Petition Date.

14. Notwithstanding anything to the contrary in this Order, any payment made, or authorization contained, hereunder, shall be subject to the requirements imposed on the Debtors under the DIP financing orders. In the event of any inconsistency between the terms of this Order and the DIP financing orders, the terms of the DIP financing orders shall control.

15. Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief (including an administrative claim status granted on account of Intercompany Transactions), nothing in this Order shall be deemed: (a) an admission as to the amount of, basis for, or validity of any claim against any of the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) an impairment or waiver of any Debtor's or any other party in interest's right to dispute any claim against, or interest in, any Debtor, its property, or its estate on any grounds; (c) a promise or requirement to pay any claim; (d) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (e) an implication or admission that any particular claim is of a type specified or defined in the Motion, or any order granting the relief requested by the Motion; (f) an implication, admission, or finding as to (i) the validity, enforceability, or perfection of any interest or encumbrance on the property of any Debtor or its estate or (ii) a waiver or limitation on any party's ability to challenge, recharacterize as equity, void, claw back, or seek other relief with respect to prepetition

Intercompany Transactions or any particular payments authorized hereunder; (g) an impairment or waiver of any claims or causes of action which may exist against any entity; or (h) a waiver of any Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

16. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or funds transfer requests that are dishonored as a consequence of these chapter 11 cases, with respect to prepetition amounts owed where such payments are authorized by an order of this Court.

17. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Order.

18. The relief requested in the Motion satisfies the requirements of Bankruptcy Rule 6003(b) or are otherwise deemed waived.

19. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules and the Bankruptcy Local Rules are satisfied by such notice.

20. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry. As soon as practicable after the entry of this Order, the Debtors shall serve this Order on the Cash Management Banks.

11744663-4

21. The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Order in accordance with the Motion.

22. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # #

<u>Submitted by</u>:
Jordi Guso, Esq.,
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email: jguso@bergersingerman.com
      mniles@bergersingerman.com
*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

11744663-4

# Exhibit 1

## Cash Management System

11744663-4

## Cash Management System



# Exhibit 2

## Bank Accounts

11744663-4

**Debtor Bank Accounts**

| No. | Entity | Bank Name | Account Type | Last 4 Digits of Account No. |
|---|---|---|---|---|
| 1 | Vital Pharmaceuticals, Inc. | Truist Bank | Concentration Account | 7174 |
| 2 | Vital Pharmaceuticals, Inc. | Truist Bank | Lockbox Account | 9089 |
| 3 | Vital Pharmaceuticals, Inc. | Citizens Bank, N.A. | Depository Account | 6045 |
| 4 | Vital Pharmaceuticals, Inc. | PNC Bank, N.A. | Concentration Account | 9672 |
| 5 | Vital Pharmaceuticals, Inc. | PNC Bank, N.A. | Depository Account | 9699 |
| 6 | Vital Pharmaceuticals, Inc. | PNC Bank, N.A. | Money Market Fund Account | 6151 |
| 7 | Vital Pharmaceuticals, Inc. | Bank of America, N.A. | Depository Account | 7879 |
| 9 | Vital Pharmaceuticals, Inc. | HSBC Bank USA, National Association | Operating Account | 6219 |
| 8 | Vital Pharmaceuticals, Inc. | PayPal | Depository Account | GG5J |
| 10 | Quash Seltzer, LLC | Huntington National Bank | Operating Account | 1079 |

11744663-4