# **EXHIBIT D**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-27842 (PDR) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF JOHN D'AMICO IN SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Under 28 U.S.C. § 1746, John D'Amico hereby declares as follows under penalty of perjury:

1. I am a Managing Director of Miller Buckfire & Co., LLC and its affiliate Stifel, Nicolaus & Co., Inc. (together, "Miller Buckfire"), an investment banking and financial advisory firm retained by the Official Committee of Unsecured Creditors in these chapter 11 cases (the "Committee").

2. Miller Buckfire is an investment banking and financial advisory firm focused on providing investment banking, financial advice, and transaction execution on behalf of its clients. Miller Buckfire has dedicated professionals who provide restructuring services to its

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, EEC (0010); (iv) JHO Real Estate Investment, EEC (9394); (v) Quash Seltzer, EEC (6501); (vi) Rainbow Unicom Bev EEC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

clients and have extensive experience working with financially troubled companies in complex financial restructurings out-of-court and in chapter 11 proceedings. Miller Buckfire and its principals have been involved as advisors to debtor, creditor, and equity constituencies and government agencies in many reorganization cases.

3. I submit this Declaration (the "Declaration") on behalf of the Committee and in support of its Objection to the Debtors' DIP Motion.[2]

4. Miller Buckfire has been retained by the Committee as its investment banker in these chapter 11 cases. In connection with its engagement, Miller Buckfire has been asked to analyze the proposed DIP Facility and to opine on (a) how the proposed Roll-Up compares to the market, and (b) whether the DIP Facility's Transaction Milestones (or "Milestones") would facilitate a value-maximizing process.

5. Based on my understanding of the available information and my experience, it is my opinion that the size of the proposed Roll-Up relative to new money is above other recent similarly sized DIP facilities and that the Transaction Milestones would not facilitate a value-maximizing process.

6. Unless otherwise indicated, all facts set forth in this Declaration are based upon information learned from my review of relevant documents, information supplied by the Debtors' professionals, other members of Miller Buckfire's engagement team or the Committee's other advisors, my personal knowledge gleaned during the course of Miller Buckfire's engagement with the Committee, or my opinion informed by my experience, knowledge, and information concerning the proposed DIP Facility.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the DIP Motion, the Committee's Objection to the DIP Motion, or the Interim DIP Order, as applicable.

7. If called upon to testify, I could and would testify competently to the facts set forth herein on that basis.

8. I am not being compensated for this testimony other than through payments received by Miller Buckfire as a professional retained by the Committee. None of those payments are contingent upon the opinions or conclusions I reach, nor the outcome of this action.

I. **Qualifications and Experience.**

9. Miller Buckfire's broad range of corporate advisory services includes general financial advice, corporate restructurings, domestic and cross-border mergers and acquisitions, divestitures, privatizations, special committee assignments, takeover defenses, and strategic partnerships/joint ventures. Notably, Miller Buckfire has been retained as an investment banker and financial advisor by various different stakeholders in numerous large and complex chapter 11 cases, including, among others: Acterna Corporation; Aerovías Nacionales de Colombia S.A.; Allied Holdings, Inc.; Amtrol Inc.; Anchor Danly Company; Applied Extrusion Technologies, Inc.; AT&T Latin America; Aurora Foods Inc.; Autocam Corporation; Avado Brands, Inc.; Birch Telecom, Inc.; Black Diamond Mining Company, LLC; Bruno's Inc.; Burlington Industries; Calpine Corporation; Cambridge Industries; Carmike Cinemas; Celotex Corporation; Centerpoint Energy; Citation Corporation; CMS Energy Corporation; Criimi Mae, Inc.; CTC Communications; Dana Corporation; Delta Air Lines, Inc.; Dow Corning Corporation; Drypers, Inc.; Dura Automotive Systems, Inc.; EaglePicher Holdings Inc.; Exide Technologies; Eurotunnel Group; Favorite Brands International Inc.; FLYi, Inc.; Foamex International; Focal Communications Corporation; FPA Medical Management; Furniture Brands International, Inc.; Gate Gourmet; General Growth Properties, Inc.; Grand Union Co.; Greatwide Logistics; Grupo TMM; hhgregg, Inc.; Hines Horticulture, Inc.; Horizon Natural Resources Company; Huntsman

-3-

Corporation; ICG Communications; ICO Global Communication, Ltd.; IMPATH Inc.; Innkeepers USA Trust; Interstate Bakeries Corporation; J.L. French Automotive Castings; Kmart Corporation; Level (3) Communications; Laidlaw, Inc., Lenox Group, Inc.; Lodgenet, Inc.; Loewen Group; Magna Entertainment Corp.; MagnaChip Semiconductor LLC; McLeodUSA; Meridian Technologies Inc.; Mervyn's Inc.; Micro Warehouse; Mirant Corp.; Molycorp, Inc.; Montgomery Ward & Co.; National Airlines; Oakwood Homes; Neff Corp.; Pacific Crossing Limited; Pathmark Stores, Inc.; Pegasus Satellite Communications; PennCorp Financial Group, Inc.; Pioneer Companies; PSINet; Polaroid Corporation; Polymer Group, Inc.; Progressive Molded Products Inc.; Questex Media Group, Inc.; The Reader's Digest Association, Inc.; SI Corporation; Simmons Bedding Company; The Spiegel Group; Stallion Oilfield Services Ltd.; SquareTwo Financial Services Corporation; Sunbeam Corporation; Standard Pacific Corp.; Stolt-Nielsen S.A.; Stolt-Offshore S.A.; TECO Energy; Trans World Airlines; Ultrapetrol (Bahamas) Limited; Unitek GlobalServices, Inc.; U.S. Office Products; Vonage Corporation; and Women First Healthcare.

10. I have been employed by Miller Buckfire since 2019. Previously, I was a senior member of the Restructuring and Recapitalization Group of Jefferies LLC. Before Jefferies, I was employed for over five years at Clear Channel Communications, where I was a Director of Business Development responsible for strategic planning and the execution of strategic initiatives for Clear Channel Entertainment (d/b/a Live Nation), including the evaluation and execution of M&A transactions. Prior to my role with Clear Channel Communications, I was an investment banking analyst at ING Barings Furman Selz.

11. My experience includes advising clients on restructuring, M&A, and financing transactions. In particular, I have provided services to stakeholders in numerous bankruptcy cases, including, among others: Gibson Brands, Vertellus Specialties, Inc., K-V

Pharmaceuticals, EveryWare Global, Sager Creek, Classic Party Rentals, Velti plc, Agera Energy, GNC Holdings, Sable Permian Resources, Dean Foods, Alpha Media, iHeart Media, Claire's Stores, Momentive Performance Materials, M&G Chemicals, Caesars Entertainment Operating Company, Eastman Kodak, Innkeepers USA Trust, MSR Resorts, Aventine Renewable Energy, Frontier Communications, Abitibi-Bowater, Accuride, Great Atlantic & Pacific Tea Company (A&P), Vanguard Natural Resources, Washington Prime Group and Compute North. In many of these cases, I have advised clients on issues related to financings and sale processes.

12. I graduated from the University of Michigan with a B.B.A from the Ross School of Business and also received an M.B.A. from the Stern School of Business at New York University.

13. My current Miller Buckfire biography, attached hereto as **Exhibit 1**, summarizes my qualifications and professional experience.

## II. Background on the Debtors' Prepetition Indebtedness.

14. On August 14, 2020, the Prepetition Loan Parties and the Prepetition Secured Parties/DIP Lenders entered into the Prepetition Credit Agreement. The Prepetition Credit Agreement provides two separate credit facilities, each maturing on August 14, 2025: (a) the Prepetition Revolving Credit Facility and (b) the Prepetition Term Loan, which, together with the Prepetition Revolving Credit Facility and all other obligations arising under the Prepetition Credit Agreement, constitute the Prepetition Loans.

15. As of the Petition Date, the DIP Lenders were owed on account of the Prepetition Loans: (i) $240,000,000.00 in revolving loan principal obligations, (ii) $104,190,218.45 in term loan principal obligations, (iii) $6,349,912.27 in respect of unpaid interest accrued through October 9, 2022, (iv) $4,188,187.51 in respect of unpaid forbearance fees accrued through October 9, 2022, and (v) $41,883.33 in respect of unpaid commitment fees accrued

-5-

through October 9, 2022. Together with all "Obligations" as defined in the Prepetition Credit Agreement, these constitute the Prepetition Obligations.

### III. The Proposed DIP Financing.

16. The proposed DIP Financing consists of a $455 million DIP Facility, of which $100 million is new money and $354,770,201.56 worth of Prepetition Obligations would be rolled up into postpetition DIP Obligations (the "Roll-Up"). The Roll-Up consists of: (i) a prepetition advance of approximately $60 million from the DIP Lenders to the Debtors and (ii) a "creeping" rollup whereby the Debtors would pay down the Prepetition Obligations with postpetition collections and draw on the DIP Facility for liquidity. This provides a prepetition debt to new money ratio of approximately **3.5:1**, or a roll-up factor of approximately **3.5x**.

17. The DIP Motion also imposes the following Transaction Milestones:

   a. **January 23, 2023**: Debtors either: (i) provide a third-party investor commitment to consummate a refinancing transaction for the payment in full in cash of the DIP and prepetition obligations, or (ii) file a bid procedures motion for the sale of substantially all of the Debtors' assets;

      i. **Within 30 days after filing a bid procedures motion, if pursued**: Order approving the bid procedures motion;

      ii. **75 days from filing of bid procedures motion**: Auction; and

      iii. **14 days prior to the outside DIP maturity date**: Consummation of a sale if a bid procedures motion is filed.

### IV. The Proposed Roll-Up Factor is Significantly Larger than Other Recent Cases.

18. To assess how the Roll-Up compares to the market, I reviewed similarly sized DIP facilities in other bankruptcy cases. Specifically, I reviewed DIP facilities totaling between $250 million and $750 million in chapter 11 bankruptcy cases filed since January 1, 2020.

19. From those results, I identified sixteen (16) bankruptcy cases with DIP facilities that included a roll-up of prepetition debt, as set forth in **Exhibit 2** hereto. For each of

the 16 cases, I determined the new money component of the DIP facility, the roll-up component of the DIP facility, and the roll-up factor.

20. The roll-up factor reflects the size of the roll-up component relative to the new money component of each DIP facility.

21. To determine the market for a roll-up for these similarly sized DIP facilities, I calculated the average (mean) and median roll-up factors. The **mean** and **median** roll-up factors of these 16 cases were approximately **1.9x** and approximately **1.8x**, respectively.

22. The Roll-Up in the proposed DIP Facility has a roll-up factor of approximately 3.5x. Thus, the Roll-Up is significantly above the mean and median of these 16 cases. Indeed, the roll-up factor of the Roll-Up is **approximately 82% higher than the mean** and **approximately 103% higher than the median** of these similarly sized DIP facilities, respectively.

23. Furthermore, of the 16 cases, only three (3) included a roll-up factor equal to or larger than what is proposed in the DIP Facility.

24. Accordingly, based on DIP facilities totaling between $250 million and $750 million with a roll-up in chapter 11 bankruptcy cases filed since January 1, 2020, the roll-up factor under the DIP Facility is well above other similarly sized DIP facilities in other recent Chapter 11 cases.

**V.    The Transaction Milestones Would Not Facilitate a Value Maximizing Process.**

25. In my experience, the Milestones and the timeline contemplated thereunder would not provide for a process to maximize the value of the Debtors' assets.

26. To date, the information the Debtors have provided to third parties in the marketing process has been largely limited to historical information. Critically, the Debtors have

been unable to provide a business plan and other forward-looking diligence information necessary for third parties to determine their interest in a transaction.

27. As of the date of this Declaration – 49 days after the Petition Date – the Debtors still do not have a finalized business plan. Although the Debtors' advisors previously estimated that the business plan would be finalized no later than November 2022, the Debtors' advisors recently indicated to Miller Buckfire that the Debtors are targeting finalizing the business plan on December 2, 2022 and distributing the business plan to third parties on December 5, 2022. However, it is unclear whether the Debtors will be able to meet these dates, and further delays will result in third parties having even less time to perform diligence and evaluate a transaction.

28. Moreover, a meaningful portion of the remaining marketing process anticipated under the January 23rd Milestone will overlap with the calendar year end, including the holiday season. In my experience, the activity level and amount of diligence performed by third parties is generally negatively impacted by the calendar year end. Even if the Debtors were prepared to circulate their business plan on the day they currently anticipate having it available for distribution, December 5, 2022, that would leave a mere 49 days for parties to review the diligence information (assuming they have already negotiated and executed a non-disclosure agreement), perform diligence on the Debtors, and negotiate and finalize transaction documents to comply with the January 23rd Milestone.

29. Furthermore, a significant number of third parties have only recently been included in (or have yet to be added to) the Debtors' marketing process. The Debtors have identified a number of third parties that, as of the Debtors' latest update to Miller Buckfire on November 22, 2022, the Debtors' investment banker has yet to contact. Miller Buckfire has also identified over 40 parties that were not on the Debtors' initial outreach list that could be interested

parties in a transaction. The Debtors' investment banker has only recently contacted the additional parties identified by Miller Buckfire.

30. Given the delay in the timing of the business plan and other diligence information, Miller Buckfire understands that the Debtors have not formally communicated any interim deadline with respect to the submission of any indications of interest from third parties in advance of the January 23rd Milestone.

31. Therefore, the actual time that third parties will have available to diligence the Debtors' operations and financial performance and for the parties to negotiate and prepare any corresponding documents by the January 23rd Milestone is meaningfully shorter than the 105 days from the Petition Date as described in the DIP Motion.

## VI. Conclusions.

32. Based on my understanding of the available information and my experience, it is my opinion that the Roll-Up is above market.

33. Moreover, based on my understanding of the available information and my experience, it is my opinion that the Transaction Milestones would not facilitate a value-maximizing process.

Dated: November 28, 2022
      New York, New York

/s/ *John D'Amico*
John D'Amico

# **EXHIBIT 1**

# Biography



**John D'Amico**
Managing Director

**Address:**
787 7th Avenue
5th Floor
New York, NY 10019

**Phone:** (212) 895-1830
**Email:** john.damico@millerbuckfire.com

**John D'Amico** is a **Managing Director** of Miller Buckfire. Mr. D'Amico is an advisor to a broad range of clients (companies, Boards of Directors, lenders / creditors, equity holders, labor unions and other stakeholders) across multiple industries in complex Chapter 11 and out-of-court restructurings, mergers and acquisitions (M&A), financing and special situation transactions. Mr. D'Amico's company-side advisory includes mandates for Gibson Brands, Vertellus Specialties, Inc., K-V Pharmaceuticals, EveryWare Global, Sager Creek, Classic Party Rentals, Velti plc, Agera Energy, among others. Mr. D'Amico has advised official committees of unsecured creditors in the Chapter 11 cases of Dean Foods, iHeart Media, Claire's Stores, Momentive Performance Materials, M&G Chemicals, Caesars Entertainment Operating Company, Eastman Kodak, Innkeepers USA Trust, MSR Resorts, Aventine Renewable Energy, among others. Mr. D'Amico has been an advisor to labor unions including the Association of Professional Flight Attendants ("APFA") of American Airlines in the Chapter 11 restructuring and merger with US Airways and the National Basketball Players Association ("NBPA"), the labor union of ~450 active NBA players, on the negotiation and execution of the 2017 collective bargaining agreement with the NBA. Mr. D'Amico has advised lenders and other stakeholders in the restructurings of Abitibi-Bowater, Highland Hospitality, Accuride and Great Atlantic & Pacific Tea Company (A&P), Vanguard Natural Resources, among others.

## Career Background

Prior to Miller Buckfire, Mr. D'Amico was a senior member of the Restructuring and Recapitalization Group of Jefferies LLC. Prior to that, he was a Director of Business Development at Clear Channel Communications responsible for strategic planning and execution of strategic initiatives (including acquisitions, divestitures and real estate investments) for Clear Channel Entertainment (d/b/a Live Nation). Mr. D'Amico began his career as an investment banker covering media & entertainment at Furman Selz LLC.

## Education

M.B.A., New York University
B.B.A., University of Michigan

## Selected Transaction Experience:

- Abitibi-Bowater
- Accuride Corporation
- Agera Energy
- American Airlines
- Aventine Renewable Energy
- Caesars Entertainment
- Claire's Stores
- Classic Party Rentals
- Dean Foods

- Eastman Kodak
- EveryWare Global
- Frontier Communications
- Gibson Brands
- GNC
- Great Atlantic & Pacific Tea Company (A&P)
- Highland Hospitality
- iHeart Media
- Innkeepers USA Trust

- K-V Pharmaceuticals
- M&G Chemicals
- MSR Resorts
- National Basketball Players Association
- Rex Energy
- Sable Permian
- Sager Creek
- Vanguard Natural Resources
- Velti PLC

# **EXHIBIT 2**

| Case | Petition Date | DIP Amount ($MM) | | | Roll-Up Factor (B/A) |
| --- | --- | --- | --- | --- | --- |
| | | Total | New Money (A) | Roll-Up (B) | |
| TPC Group, Inc.[1] | 6/1/22 | $523 | $285 | $238 | 0.8x |
| Sungard AS New Holdings, LLC[2] | 4/11/22 | 336 | 105 | 231 | 2.2x |
| Philippine Airlines, Inc.[3] | 9/3/21 | 505 | 403 | 102 | 0.3x |
| Gulfport Energy Corporation[4] | 11/13/20 | 263 | 105 | 158 | 1.5x |
| Oasis Petroleum Inc.[5] | 9/30/20 | 450 | 150 | 300 | 2.0x |
| Tailored Brands, Inc.[6] | 8/2/20 | 500 | 102 | 398 | 3.9x |
| Denbury Resources, Inc.[7] | 7/30/20 | 614 | 290 | 324 | 1.1x |
| Ascena Retail Group, Inc.[8] | 7/23/20 | 712 | 217 | 495 | 2.3x |
| Briggs & Stratton Corporation[9] | 7/20/20 | 678 | 352 | 326 | 0.9x |
| Lakeland Tours, LLC (WorldStrides)[10] | 7/20/20 | 368 | 216 | 152 | 0.7x |
| GNC Holdings, Inc.[11] | 6/23/20 | 475 | 100 | 375 | 3.8x |
| 24 Hour Fitness Worldwide, Inc.[12] | 6/15/20 | 500 | 250 | 250 | 1.0x |
| Centric Brands Inc.[13] | 5/18/20 | 435 | 271 | 164 | 0.6x |
| OneWeb Global Limited[14] | 3/27/20 | 300 | 75 | 225 | 3.0x |
| Pier 1 Imports, Inc.[15] | 2/17/20 | 256 | 63 | 193 | 3.1x |
| American Commercial Lines, Inc.[16] | 2/7/20 | 690 | 137 | 553 | 4.0x |
| Median | | $488 | $183 | $244 | 1.8x |
| Mean | | 475 | 195 | 280 | 1.9x |
| Vital Pharmaceuticals, Inc. | 10/10/22 | $455 | $100 | $355 | 3.5x |

1) See [Case 22-10493-CTG]: Final DIP Order [Doc. 566], DIP Motion [Doc. 36] and First Day Declaration [Doc. 27].
2) See [Case 22-90018-DRJ]: Final DIP Order [Doc. 220], DIP Motion [Doc. 3] and First Day Declaration [Doc. 7].
3) See [Case 21-11569-SCC]: Disclosure Statement [Doc. 261], Final DIP Order [Doc. 123] and DIP Motion [Doc. 15].
4) See [Case 20-35562]: Final DIP Order [Doc. 468] and DIP Motion [Doc. 29].
5) See [Case 20-34771]: Amended Order Approving the Disclosure Statement & Prepackaged Plan [Doc. 335], Interim DIP Order [Doc. 73] and DIP Motion [Doc. 30].
6) See [Case 20-33900]: Final DIP Order [Doc. 512] and DIP Motion [Doc. 25].
7) See [Case 20-33801]: Final DIP Order [Doc. 255], DIP Motion [Doc. 37] and First Day Declaration [Doc. 3].
8) See [Case 20-33113-KRH]: Final DIP Order [Doc. 587] and Revised DIP Motion [Doc. 567].
9) See [Case 20-43597]: Final DIP Order [Doc. 526] and DIP Motion [Doc. 35].
10) See [Case 20-11647-JLG]: Final DIP Order [Doc. 95] and DIP Motion [Doc. 28].
11) See [Case 20-11662-KBO]: Final DIP Order [Doc. 502] and DIP Motion [Doc. 18].
12) See [Case 20-11558-KBO]: Final DIP Order [Doc. 652] and DIP Motion [Doc. 17].
13) See [Case 20-22637-SHL]: Final DIP Order [Doc. 220] and DIP Motion [Doc. 20].
14) See [Case 20-22437-RDD]: Final DIP Order [Doc. 121] and DIP Motion [Doc. 58].
15) See [Case 20-30805-KRH]: Final DIP Order [Doc. 342] and DIP Motion [Doc. 25].
16) See [Case 20-30982]: Final DIP Order [Doc. 202] and DIP Motion [Doc. 29].