# STELLAR'S EXHIBIT "2"

Clerk of the Superior Court
*** Electronically Filed ***
M. De La Cruz, Deputy
8/25/2022 10:00:12 AM
Filing ID 14752069

**MURPHY CORDIER CASALE AXEL PLC**
4647 North 32nd Street, Suite 150
Phoenix, Arizona 85018
Telephone (602) 274-9000

Richard B. Murphy (State Bar No. 015211)
  *Rich@mccalaw.com*
Chase E. Halsey (State Bar No. 023247)
  *Chase@mccalaw.com*

*Attorneys for Stellar Group, Inc.*

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| NEXUS STEEL, LLC, an Arizona limited liability company, | Case No: CV2022-008873 |
| Plaintiff, | **STELLAR GROUP, INC.'S ANSWER, COUNTERCLAIM, AND CROSS-CLAIMS** |
| v. | |
| JHO REAL ESTATE INVESTMENT, LLC, a Florida limited liability company; VITAL PHARMACEUTICALS, INC., a Florida corporation, d/b/a BANG, LLC, a Florida limited liability company; FABCO METAL PRODUCTS, LLC, a Florida limited liability company; BELVAC PRODUCTION MACHINERY, INC., a Virginia corporation; TRUIST BANK, a North Carolina company; ISEC, INC., a Colorado corporation; HEAVY EQUIPMENT MOVERS & INSTALLATION, LLC, a Delaware limited liability company; HARDROCK CONCRETE PLACEMENT CO., INC., an Arizona corporation; STELLAR GROUP, INC., a Florida corporation; FAITH TECHNOLOGIES, INC., a Wisconsin corporation; INTEGRATED MASONRY, an Arizona company; HACI MECHANICAL CONTRACTORS, INC., an Arizona | (Assigned to the Hon. Brad Astrowsky) |

corporation; TRENCH SHORE RENTALS, an
Arizona corporation; THE MARICOPA
COUNTY TREASURERS OFFICE, BLACK
AND WHITE CORPORATIONS 1-10;

     Defendants.

---

STELLAR GROUP, INC., a Florida
corporation,

     Counterclaimant,

v.

NEXUS STEEL, LLC, an Arizona limited
liability company,

     Counterdefendant.

---

STELLAR GROUP, INC., a Florida
corporation,

     Cross-claimant,

v.

JHO REAL ESTATE INVESTMENT, LLC, a
Florida limited liability company; VITAL
PHARMACEUTICALS, INC., a Florida
corporation, d/b/a BANG, LLC, a Florida
limited liability company; FABCO METAL
PRODUCTS, LLC, a Florida limited liability
company; BELVAC PRODUCTION
MACHINERY, INC., a Virginia corporation;
TRUIST BANK, a North Carolina company;
ISEC, INC., a Colorado corporation; HEAVY
EQUIPMENT MOVERS &
INSTALLATION, LLC, a Delaware limited
liability company; HARDROCK CONCRETE
PLACEMENT CO., INC., an Arizona
corporation; STELLAR GROUP, INC., a
Florida corporation; FAITH

1  TECHNOLOGIES, INC., a Wisconsin
corporation; INTEGRATED MASONRY, an
2  Arizona company; HACI MECHANICAL
CONTRACTORS, INC., an Arizona
3  corporation; TRENCH SHORE RENTALS, an
Arizona corporation; THE MARICOPA
4  COUNTY TREASURERS OFFICE; and
BLACK AND WHITE CORPORATIONS 1-
5  10,

6

7          Cross-defendants.

8          For its Answer to Nexus Steel, LLC's Complaint, Stellar Group, Inc. ("Stellar")

9  admits, denies, and alleges as follows:

10                          **GENERAL ALLEGATIONS**

11          1.      Stellar does not have sufficient knowledge or information on which to form

12  a belief as to the truth of the matters alleged in paragraph 1 and therefore denies the same.

13          2.      Upon information and belief, Stellar admits the allegations in paragraph 2.

14          3.      Upon information and belief, Stellar admits the allegations in paragraph 3.

15          4.      Stellar denies the allegations in paragraph 4 and affirmatively alleges that

16  Fabco was a subcontractor to Stellar.

17          5.      Upon information and belief, Stellar admits the allegations in paragraph 5.

18          6.      Upon information and belief, Stellar admits the allegations in paragraph 6.

19          7.      Upon information and belief, Stellar admits the allegations in paragraph 7.

20          8.      Upon information and belief, Stellar admits the allegations in paragraph 8.

21          9.      Upon information and belief, Stellar admits the allegations in paragraph 9.

22          10.     Upon information and belief, Stellar admits the allegations in paragraph 10.

23          11.     Upon information and belief, Stellar admits the allegations in paragraph 11.

24          12.     Upon information and belief, Stellar admits the allegations in paragraph 12.

25          13.     Upon information and belief, Stellar admits the allegations in paragraph 13.

26          14.     Upon information and belief, Stellar admits the allegations in paragraph 14.

15. Upon information and belief, Stellar admits the allegations in paragraph 15.

16. Stellar does not have sufficient knowledge or information on which to form a belief as to the truth of the matters alleged in paragraph 16 and therefore denies the same.

17. Stellar admits the allegations in paragraph 17.

18. Stellar does not have sufficient knowledge or information on which to form a belief as to the truth of the matters alleged in both paragraph numbered as 18 and therefore denies the same.

19. Stellar does not have sufficient knowledge or information on which to form a belief as to the truth of the matters alleged in paragraph 19 and therefore denies the same.

20. Stellar does not have sufficient knowledge or information on which to form a belief as to the truth of the matters alleged in paragraph 20 and therefore denies the same.

21. Stellar does not have sufficient knowledge or information on which to form a belief as to the truth of the matters alleged in paragraph 21 and therefore denies the same.

22. Upon information and belief, Stellar admits that Nexus recorded a mechanic's lien on January 20, 2022, but does not have sufficient knowledge or information on which to form a belief as to the remaining allegations in paragraph 22 and therefore denies the same.

23. Stellar admits the allegations in paragraph 23.

## COUNT I

### (Lien Foreclosure – All Defendants)

24. Stellar incorporates its prior responses as though fully set forth herein.

25. Stellar does not have sufficient knowledge or information on which to form

1  a belief as to the truth of the matters alleged in paragraph 25 and therefore denies the

2  same.

3      26.    Stellar does not have sufficient knowledge or information on which to form

4  a belief as to the truth of the matters alleged in paragraph 26 and therefore denies the

5  same.

6      27.    Stellar does not have sufficient knowledge or information on which to form

7  a belief as to the truth of the matters alleged in paragraph 27 and therefore denies the

8  same.

9      28.    Stellar does not have sufficient knowledge or information on which to form

10  a belief as to the truth of the matters alleged in paragraph 28 and therefore denies the

11  same.

## COUNT II

### (Breach of Subcontract – Fabco Metal Products, LLC)

14      29.    Stellar incorporates its prior responses as though fully set forth herein.

15      30.    The allegations in paragraphs 30 through 37 do not state a cause of action

16  against Stellar, and therefore no response is required.

## COUNT III

### (Unjust Enrichment – JHO Real Estate Investments, Inc., and Vital

### Pharmaceuticals)

20      31.    Stellar incorporates its prior responses as though fully set forth herein.

21      32.    The allegations in paragraphs 39 through 44 do not state a cause of action

22  against at Steller, and therefore no response is required.

## AFFIRMATIVE DEFENSES

24      33.    Stellar denies all allegations not specifically admitted.

25      34.    Stellar affirmatively alleges the Complaint fails to state a cause of action

26  against it.

35.     Stellar affirmatively alleges that discovery in this action may reveal facts to support affirmative defenses.  Therefore, under Rule 8(d), *Ariz.R.Civ.P.*, Stellar asserts the following affirmative defenses:  failure of condition precedent; statute of limitations; and failure to comply with Arizona's mechanic's lien statutes.

WHEREFORE, having answered Nexus Steel, LLC's Complaint, Stellar prays that it be dismissed, that Nexus take nothing thereby from Stellar, and that Stellar recover its attorneys' fees and costs incurred herein, as well as any further relief the Court deems proper.

## COUNTERCLAIM AND CROSS-CLAIMS

For its Counterclaim against Nexus and Cross-Claims against Cross-Defendants JHO Real Estate Investment, LLC, Vital Pharmaceuticals, Inc., d/b/a Bang, LLC, Fabco Metal Products, LLC, Belvac Production Machinery, Inc., Truist Bank, ISEC, Inc., Heavy Equipment Movers & Installation, Inc., Hardrock Concrete Placement Co., Inc., Faith Technologies, Inc., Integrated Masonry, HACI Mechanical Contractors, Inc., Trench Shore Rentals, The Maricopa County Treasurer's Office, and Black and White Corporations 1-10, Stellar alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Stellar Group, Inc. ("Stellar") is a Florida corporation authorized to and transacting business in Maricopa County, Arizona.

2.     At all times material hereto, Stellar held a valid license as a contractor under Arizona Revised Statutes, Title 32, Chapter 10.

3.     Upon information and belief, Nexus Steel, LLC ("Nexus"), is an Arizona limited liability company authorized to and transacting business in Maricopa County, Arizona.

4.     Upon information and belief, JHO Real Estate Investment, LLC ("JHO") is a Florida limited liability company authorized to and transacting business in Maricopa

1  County, Arizona.  JHO is the owner of the real property located at 1635 South 43rd

2  Avenue, Phoenix, Arizona 85009 (the "Subject Property").

3       5.     Upon information and belief, Vital Pharmaceuticals, Inc., d/b/a Bang, LLC,

4  ("Vital") is a Florida limited liability company authorized to and transacting business in

5  Maricopa County, Arizona.

6       6.     Upon information and belief, Fabco Metal Products, LLC ("Fabco") is a

7  Florida limited liability company authorized to and transacting business in Maricopa

8  County, Arizona.

9       7.     Upon information and belief, Belvac Product Machinery, Inc. ("Belvac") is

10  a Virginia corporation authorized to and transacting business in Maricopa County,

11  Arizona.

12       8.     Upon information and belief, Truist Bank ("Truist") is a North Carolina

13  bank authorized to and transacting business in Maricopa County, Arizona.  Truist has an

14  interest in the Subject Property by virtue of having recorded a Deed of Trust against the

15  Subject Property.

16       9.     Upon information and belief, ISEC, Inc., is a Colorado corporation

17  authorized to and transacting business in Maricopa County, Arizona.

18       10.     Upon information and belief, Heavy Equipment Movers & Installation, Inc.

19  ("Heavy") is a Delaware limited liability company authorized to and transacting business

20  in Maricopa County, Arizona.

21       11.     Upon information and belief, Hardrock Concrete Placement Co., Inc.

22  ("Hardrock") is an Arizona corporation authorized to and transacting business in

23  Maricopa County, Arizona.

24       12.     Upon information and belief, Faith Technologies, Inc. ("Faith") is a

25  Wisconsin corporation authorized to and transacting business in Maricopa County,

26  Arizona.

13. Upon information and belief, Integrated Masonry ("Integrated") is an Arizona corporation to and transacting business in Maricopa County, Arizona.

14. Upon information and belief, HACI Mechanical Contractors, Inc., ("HACI") is an Arizona corporation authorized to and transacting business in Maricopa County, Arizona.

15. Upon information and belief, Trench Shore Rentals ("Trench") is an Arizona corporation authorized to and transacting business in Maricopa County, Arizona.

16. The Maricopa County Treasurer recorded a tax lien on the Subject Property that is the subject of Stellar's lien foreclosure claim.

17. Nexus, Fabco, Belvac, ISEC, Heavy, Hardrock, Faith , Integrated, HACI, and Trench have an interest in the Subject Property by virtue of having recorded mechanic's liens against the Subject Property.

18. Black and White Corporations 1-10 represent unknown parties who have an interest or claim in the Subject Property that is the subject of Stellar's lien foreclosure claim. The actual names of these defendants are currently unknown and Stellar may later amend its claims when said names are discovered.

19. JHO, Vital, Nexus, Fabco, Belvac, Truist, ISEC, Heavy, Hardrock, Faith, Integrated, HACI, and Trench have caused events to occur in Maricopa County, Arizona out of which the claims that are the subject of Stellar's counterclaim and cross-claims arose. Further, the mechanic's lien Stellar seeks to foreclose herein in upon land located in Maricopa County. Venue is proper in Maricopa County, Arizona.

## GENERAL ALLEGATIONS

20. On or about July 28, 2020, Stellar, as design-builder, and Vital as owner, entered into that certain Standard Form of Agreement Between Owner and Design-Builder (the "Contract"), in which Stellar agreed to serve as the design-builder on a construction project known as "Phoenix Can Manufacturing" (the "Project").

1    21.    The Project is located on the Subject Property.

2    22.    Stellar commenced work on the Project in August 2020.

3    23.    In or about October or November 2021, Vital missed payments due under

4    the Contract.  Stellar continued to provide labor, materials, and equipment to the Project

5    despite Vital's failure to pay Stellar under its October and November 2021 invoices.

6    24.    Stellar served on Vital a *Notice of Intent to Stop Work* dated December 17,

7    2021, because of Vital's ongoing failure to make payments due under the Contract.

8    However, Stellar continued to provide labor, materials, and equipment to the Project.

9    25.    Stellar served on Vital a *Notice of Intent to Terminate Agreement* dated

10    February 7, 2022, because of Vital's failure to cure its failure to make payments due under

11    the Contract.

12    26.    Stellar served on Vital a *Second Notice of Intent to Terminate Agreement*

13    dated February 17, 2022, because of Vital's ongoing failure to make payments due under

14    the Contract.

15    27.    Stellar served on Vital a *Declaration of Termination* dated March 3, 2022,

16    formally terminating the Contract because of Vital's failure to make payment of all sums

17    due for labor, materials and equipment provided to the Project.   Stellar ceased work

18    thereafter.

19    28.    At no time between December 2021 and March 2022 did Vital pay Stellar

20    in response to the Notices.

21    29.    As of March 2022, Stellar had furnished $18,168,578.50 in labor, materials,

22    fixtures, and tools to the Project for incorporation into the Subject Property for which it

23    has not been paid.

24    \\\

25    \\\

26    \\\

## COUNT ONE

**(Mechanic's Lien Foreclosure – Nexus and all Cross-Defendants)**

30.    Stellar incorporates its prior allegations as though fully set forth herein.

31.    In accordance with A.R.S. § 33-992.01, Stellar served an Arizona Preliminary 20-Day Notice on or about December 23, 2021.  A true and correct copy of Stellar's Preliminary 20-Day Notice is attached to the Lien (as defined herein) and incorporated by reference.

32.    Within the applicable period covered by A.R.S. § 33-992.01, Stellar provided labor, material, and equipment to the Project in the amount of $7,722,974.37 for which it has not been paid.

33.    Stellar timely recorded a Notice and Claim of Mechanics' and Materialmen's Lien against the Subject Property on March 23, 2022, in the Maricopa County Recorder's Office at Document No. 2022-0259809 (the "Lien").  A true and correct copy of the Lien is attached hereto as **Exhibit 1**.

34.    Pursuant to A.R.S. § 33-981, et seq., Stellar performed all conditions to impose and secure a good and valid lien against the Subject Property for such labor, materials, fixtures, and tools furnished and incorporated into the Subject Property.

35.    Stellar is entitled to have this Court determine and declare the right and title of all lien claimants and other parties claiming an interest in the real property that is the subject of the Lien; to have this Court order Stellar's Lien foreclosed, and the Subject Property sold to satisfy all liens against it in the order of their priority and treating all valid mechanic's liens as being in parity; and to have the sales proceeds distributed accordingly.

36.    Stellar is entitled to foreclose the Lien against Nexus, all Cross-Defendants, and all others holding an interest that is equal or inferior to Stellar's Lien and to recover the amounts secured by the Lien from the foreclosure sale proceeds of the Subject

1    Property based upon the priorities established by the Court. The amount claimed in the

2    Lien represents the reasonable value of the labor, materials, fixtures, and tools furnished

3    and incorporated into the Project and Subject Property for which Stellar has not been paid

4    and which is not otherwise limited by the applicable provisions of A.R.S. § 33-992.01.

5         37.    Pursuant to A.R.S. §§ 33-995(E) and 33-998(B), Stellar is entitled to

6    recover its reasonable attorneys' fees incurred herein.

7         WHEREFORE, Stellar requests the following relief:

8         A.    Judgment on its Lien claim in favor of Stellar for the total sum of

9    $7,722,974.37, together with accruing interest thereon at the highest legal rate from the

10   date due until paid, plus reasonable attorneys' fees and collection costs;

11        B.    Judgment in favor of Stellar and against all that oppose this action for the

12   sum of money paid by Stellar for recording and serving its Lien, together with interest

13   thereon at the highest legal rate from the date due until paid;

14        C.    Judgment ordering that the Lien be foreclosed and that any person claiming

15   a junior interest in the real property subject to the Lien be forever barred and foreclosed

16   to all right, title, interest, estate, lien or equity;

17        D.    Judgment ordering that the Subject Property be adjudged and decreed to be

18   sold according to the law and practice of this Court and that Stellar be paid the amount

19   due out of the proceeds of that sale pursuant to A.R.S. § 33-1000;

20        E.    Judgement declaring that the above sum be adjudged to be a valid lien upon

21   the real property subject to the Lien to the full extent of and as described therein; and

22        F.    Judgment for such other and further relief as this Court deems just and

23   proper.

24                              **<u>COUNT TWO</u>**

25                           **(Breach of Contract – Vital)**

26        38.    Stellar incorporates its prior allegations as though fully set forth herein.

1    39.    The Contract is a valid and binding contract between Stellar and Vital.

2    40.    Pursuant to the Contract, Stellar furnished design-build services to Project.

3    41.    Stellar fully performed its obligations under the Contract through March

4    2022, when it ceased work because of Vital's first material breach of the Contract.

5    42.    Stellar ceased work and terminated the Contract in accordance with its

6    rights under A.R.S. § 32-1185(A).

7    43.    Vital breached its obligations under the Contract by failing to pay Stellar in

8    full for the labor, materials, and equipment Stellar furnished to the Project under the

9    Contract.

10    44.    As a direct result of Vital's breach of the Contract, Stellar has been damaged

11    in an amount to be proven at trial, but in no event less than $18,168,578.50.

12    45.    In accordance with A.R.S. § 32-1182, Stellar is entitled to interest on the

13    unpaid amount at the rate of 18% per annum from the date due until paid.

14    46.    Stellar is entitled to recover its attorneys' fees and costs under the terms of

15    the Contract and/or A.R.S. §§ 12-341 and 12-341.01.

16    WHEREFORE, Stellar requests the following relief against Vital:

17    A.    For damages arising from Vital's breach of contract in an amount to be

18    proven at trial, but in no event less than $18,168,578.50;

19    B.    For Stellar's reasonable attorneys' fees and costs under the terms of the

20    Contract and/or A.R.S. §§ 12-341 and 12-341.01;

21    C.    For pre and post-judgment interest at the highest rate permitted by law; and

22    D.    For such further relief the Court deems just and proper.

23    \\\

24    \\\

25    \\\

26

1    DATED this 25th day of August 2022.

2

             **MURPHY CORDIER CASALE AXEL PLC**

3

         By: */s/ Chase E. Halsey*
4
           Richard B. Murphy

5           Chase E. Halsey
           *Attorneys for Stellar Group, Inc.*
6

7 E-Filed through AZ Turbo Court
8 this 25th day of August, 2022 with COPIES e-mailed to:

9 Richard C. Gramlich, Esq.
  rcg@tblaw.com
10 TIFFANY & BOSCO
11 2525 E. Camelback Road, 7th Floor
  Phoenix, Arizona 85016
12 *Attorneys for Nexus Steel, LLC*

13 John L. Condrey, Esq.
  jcondrey@grsm.com
14 GORDON REES SCULLY MANSUKHANI, LLP
15 Two N. Central Avenue, Suite 2200
  Phoenix, Arizona 85004
16 *Attorneys for Fabco Metal Products, LLC*

17

18 */s/ Tiffany J. Hayes*

19

20

21

22

23

24

25

26

# EXHIBIT 1

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
STEPHEN RICHER
20220259809  03/23/2022  11:14
ELECTRONIC RECORDING

StellarMechLien-35-1-1--
Garciac

When recorded return to:

    MURPHY CORDIER CASALE AXEL PLC
    2025 N. 3rd Street, Suite 200
    Phoenix, Arizona 85004
    (602) 274-9000

## NOTICE AND CLAIM OF MECHANIC'S
## AND MATERIALMEN'S LIEN

**Claimant:**

    Stellar Group, Inc.
    2900 Hartley Road
    Jacksonville, Florida 32257

**Owner(s) or Reputed Owner(s):**

    Vital Pharmaceuticals, Inc.
    One Alhambra Plaza, Floor PH
    Coral Gables, Florida 33132

    Vital Pharmaceuticals, Inc.
    c/o Corporate Creations Network, Inc.
    3260 North Hayden Road, Suite 210
    Scottsdale, Arizona 85251

    JHO Real Estate Investment, LLC
    1600 North Park Drive
    Weston, Florida 33326

    JHO Real Estate Investment, LLC
    c/o Corporate Creations Network, Inc.
    3260 North Hayden Road, Suite 210
    Scottsdale, Arizona 85251

**Amount Due:** $ 7,722,974.37

**Amount of Mechanic's Lien Claim After Deducting Just Credits and Offsets:**

    $ 7,722,974.37, for the value of the work performed and covered by Claimant's Preliminary

Twenty Day Lien Notice, plus accruing interest and lien fees, in accordance with the limitations imposed by A.R.S. 33-992.01(E).

**Subject Real Property (Address or Location, City and County):**

1635 South 43rd Avenue
Phoenix, Arizona 85009
Maricopa County, Arizona

**Subject Real Property (Legal Description):**

A copy of the Subject Property's legal description is attached hereto as **Exhibit A**.

| | |
|---|---|
| STATE OF FLORIDA | ) |
| | ) ss. |
| County of Duval | ) |

Gabriel B. Crafton, being duly sworn upon oath, deposes and states that:

1.      I am the Claimant or Claimant's limited agent and have knowledge of the facts of this claim and make the statements set forth herein on Claimant's behalf in compliance with A.R.S. § 33-993.

2.      Claimant has furnished labor, services, materials, machinery, fixtures or tools in the construction, alteration or repair of the buildings, other structures or above described improvements on the Subject Real Property.  This was done at the request of Owner or Reputed Owner, or at the request of a person whom Claimant reasonably believed to be the lawful agent of Owner or Reputed Owner.

3.      Claimant was employed by and furnished labor and/or materials to:

Vital Pharmaceutical, Inc.
1600 North Park Drive
Weston, Florida 33326

4.      The labor, services, materials, machinery, fixtures or tools were furnished pursuant to a written contract, a copy of which is attached hereto as **Exhibit B**.

5.      The date of completion of the building, structure, or improvement, or any alteration or repair of such building, structure, or improvement:  Incomplete.

6.      A Preliminary Twenty Day Notice as required by A.R.S. § 33-992.01 was served on December 23, 2021.  A copy of said notice and proofs of service as required by A.R.S. § 33-992.02 are attached as **Exhibit C**.

WHEREFORE, in accordance with A.R.S. § 33-993, Claimant does claim and fix upon the property this lien in the amount provided herein by causing this Notice and Claim of Lien to be recorded with the Maricopa County Recorder and a copy served within a reasonable time upon the

Owner, the Owner's agent, the original contractor, or any other interested person, if found within Maricopa County.

DATED this 21st day of March 2022.

**STATE OF FLORIDA**        )

**COUNTY OF DUVAL**        )

STELLAR GROUP, INC.

By

Name: Gabriel B. Crafton

Its: Chief Legal Officer

Sworn to or affirmed and signed before me by means of physician presence on this 21st day of March, 2022 by Gabriel B. Crafton who is personally known to me or who has produced _____, as identification.

Notary Public, State of Florida

Print Name: Dorothy B Miller

My Commission Expires: March 2, 2026

DOROTHY BLANTON MILLER
NOTARY PUBLIC
MY COMMISSION
EXPIRES 3-2-2026
STATE OF FLORIDA
COMMISSION NUMBER HH 200876

3

20220259809

# EXHIBIT A

## LEGAL DESCRIPTION

That portion of the Northwest quarter of Section 15, Township 1 North, Range 2 East of the Gila and Salt River Meridian, Maricopa County, Arizona, described as follows:

Beginning at the Northwest corner of the North half of the Southwest quarter of said Northwest quarter;

Thence South (assumed bearing for purposes of this description) along the West line of said section, a distance of 660.00 feet to a line that is parallel with and distant 1968.46 feet Southerly measured at right angles from the North line of said section;

Thence South 89 degrees 50 minutes East, along said parallel line, a distance of 1307.28 feet to a line that is parallel with and distant 10.00 feet Westerly, measured at right angle, from the East line of said Southwest quarter, last said parallel line being also the center line of an existing drill track;

Thence North 00 degrees 01 minutes West, along last said parallel line, a distance of 1095.68 feet to a point of CUSP;

Thence Southwesterly along a tangent curve concave Northwesterly having a radius of 642.43 feet, through a central angle of 05 degrees 43 minutes 29 seconds, an arc distance of 64.19 feet;

Thence South 05 degrees 42 minutes 29 seconds West, tangent to said curve, a distance 26.38 feet;

Thence Southwesterly and Westerly along a tangent curve to the right having a radius 382.24 feet, through a central angle of 84 degrees 27 minutes 31 seconds, an arc distance of 563.45 feet to a point of tangency in a line that is parallel with and distant 1308.46 feet Southerly, measured at right angles, from said North line;

Thence North 89 degrees 50 minutes West, along last said parallel line, a distance of 919.70 feet to the point of beginning.

EXCEPTING THEREFROM that portion of said property lying below a depth of 500.00 feet measured vertically from the contour of the surface thereof;

Provided, however, that said grantor, its successors and assigns, shall not have the right for any and all purposes to enter upon, into or through the surface of the portion of said property lying above 500.00 feet, measured vertically from the contour of the surface of said property, as reserved in Deed recorded in Docket 9581, Page 180 and also recorded in Docket 9590, Page 873; and

EXCEPT all rights retained by Southern Pacific Company, a Delaware corporation in Warranty Deed recorded in Docket 3976, Page 407 of official records of Maricopa County, Arizona.

20220259809

# EXHIBIT B

Date: 7/28/2020



**D B I A**

**DESIGN-BUILD**
**INSTITUTE OF AMERICA**

# Standard Form of Agreement Between Owner and Design-Builder – Cost Plus Fee with an Option for a Guaranteed Maximum Price

*This document has important legal consequences. Consultation with an attorney is recommended with respect to its completion or modification.*

This **AGREEMENT** is made as of the 28th day of July in the year of 2020, by and between the following parties, for services in connection with the Project identified below:

**OWNER:**
*(Name and address)*

Vital Pharmaceuticals, Inc.
1600 N. Park Drive
Weston, FL 33326

**DESIGN-BUILDER:**
*(Name and address)*

Stellar Group, Inc.
2900 Hartley Road
Jacksonville, FL 32257

**PROJECT:**
*(Include Project name and location as it will appear in the Contract Documents)*

Phoenix Can Manufacturing
1635 South 43rd Avenue
Phoenix, AZ 85009

In consideration of the mutual covenants and obligations contained herein, Owner and Design-Builder agree as set forth herein.

## Article 1

### Scope of Work

**1.1**    Design-Builder shall perform all design and construction services, and provide all material, equipment, tools and labor, necessary to complete the Work described in and reasonably inferable from the Contract Documents.

## Article 2

### Contract Documents

**2.1**    The Contract Documents are comprised of the following:

.1    All written modifications, amendments (including, as applicable, the GMP Exhibit referenced in Section 6.5.1.1 hereof or the GMP Proposal accepted by Owner in accordance with Section 6.5.2 hereof) and change orders to this Agreement issued in accordance with DBIA Document No. 535, *Standard Form of General Conditions of Contract Between Owner and Design-Builder* (1998 Edition) ("General Conditions of Contract");

.2    This Agreement, including all exhibits (but excluding, if applicable, the GMP Exhibit) and attachments;

.3    The General Conditions of Contract;

.4    Construction Documents prepared and approved in accordance with Section 2.4 of the General Conditions of Contract;

.5    Stellar Group Proposal revision 1 dated July 24, 2020 including the exceptions and clarifications set forth therein;

.6    The following other documents, if any *(List, for example, Unit Price Schedules, Design-Builder's allowances, Performance Standard Requirements, Owner's Permit List and any other document Owner and Design-Builder elect to make a Contract Document);*

.7    Exhibit B – Insurance Requirements

.8    Design-Builder Rate Sheet, a copy of which is attached to this Agreement as Exhibit C. The rates contained in this Rate Sheet will remain fixed for the duration of the project.

.9    Exhibit D – Owner Permit List

## Article 3

### Interpretation and Intent

**3.1**    The Contract Documents are intended to permit the parties to complete the Work and all obligations required by the Contract Documents within the Contract Time(s) for the Contract Price. The Contract Documents are intended to be complementary and interpreted in harmony so as to avoid conflict, with words and phrases interpreted in a manner consistent with construction and design industry standards. In the event of any inconsistency, conflict, or ambiguity between or among the Contract

DBIA Document No. 530  •  Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America

Documents, the Contract Documents shall take precedence in the order in which they are listed in Section 2.1 hereof.

3.2    Terms, words and phrases used in the Contract Documents, including this Agreement, shall have the meanings given them in the General Conditions of Contract.

3.3    The Contract Documents form the entire agreement between Owner and Design-Builder and by incorporation herein are as fully binding on the parties as if repeated herein. No oral representations or other agreements have been made by the parties except as specifically stated in the Contract Documents.

## Article 4
## Ownership of Work Product

4.1    **Work Product.** All drawings, specifications and other documents and electronic data furnished by Design-Builder to Owner under this Agreement ("Work Product") are deemed to be instruments of service and Design-Builder shall retain the ownership and property interests therein, including the copyrights thereto.

4.2    **Owner's Limited License Upon Payment in Full.** Upon Owner's payment in full for all Work performed under the Contract Documents, Design-Builder shall grant Owner a limited license to use the Work Product in connection with Owner's occupancy of the Project, conditioned on Owner's express understanding that its use of the Work Product is at Owner's sole risk and without liability or legal exposure to Design-Builder or anyone working by or through Design-Builder, including Design Consultants of any tier (collectively the "Indemnified Parties").

4.3    **Owner's License upon Owner's Termination for Convenience or Design-Builder's Election to Terminate.** If Owner terminates this Agreement for its convenience as set forth in Article 8 hereof, or if Design-Builder elects to terminate this Agreement in accordance with Section 11.4 of the General Conditions of Contract, Design-Builder shall, upon Owner's payment in full of the undisputed amounts due Design-Builder under the Contract Documents, grant Owner an irrevocable, royalty-free, and transferable license to use the Work Product to complete the Project and subsequently occupy and use the Project, and Owner shall thereafter have the same rights as set forth in Section 4.2. However, if the Work Product is incomplete or the Owner alters or causes it on any other project without the involvement of the Design-Builder the Design-Builder or anyone working by or through Design-Builder, including Design Consultants of any tier shall not be liable for such use, and Owner shall have the obligation to provide the indemnity set forth in Section 4.5 below.

4.4    **Owner's Limited License Upon Design-Builder's Default.** If this Agreement is terminated due to Design-Builder's default pursuant to Section 11.2 of the General Conditions of Contract and (i) it is determined that Design-Builder was in default and (ii) Owner has fully satisfied all of its obligations under the Contract Documents, Design-Builder shall grant Owner a limited license to use the Work Product in connection with Owner's completion and occupancy of the Project. This limited license is conditioned on Owner's express understanding that its use of the Work Product is at Owner's sole risk and without liability or legal exposure to any Indemnified Party.

4.5    **Owner's Indemnification for Use of Work Product.** If Owner uses the Work Product under any of the circumstances identified in this Article 4, Owner shall defend, indemnify and hold harmless the Indemnified Parties from and against any and all claims, damages, liabilities, losses and expenses, including attorneys' fees, arising out of or resulting from the use of the Work Product.

## Article 5
## Contract Time

**5.1    Date of Commencement.** The Work shall commence within five (5) days of Design-Builder's receipt of Owner's Notice to Proceed ("Date of Commencement") unless the parties mutually agree otherwise in writing.

.1    The "Date of Commencement" shall be dependent upon receipt of required permits and the execution of this Agreement.

**5.2    Substantial Completion and Final Completion**

**5.2.1**    Mutually agreed Substantial Completion of the Phased Work shall be established by the Guaranteed Maximum Price (GMP) proposal, to be submitted at a later date.

**5.2.2**    Interim milestones and/or Substantial Completion of identified portions of the Work shall be achieved as follows:  *(Insert any interim milestones for portions of the Work with different scheduled dates for Substantial Completion)*

.1    Design Development 1 – (30% issue)        8/28/2020
.2    Design Development 2 – (60% issue)        10/30/2020
.3    Establish GMP Budget                              11/11/2020
.3    Additional interim milestones and / or Substantial Completion Dates will be established by the GMP Proposal.

**5.2.3**    Final Completion of the Work or identified portions of the Work shall be achieved as expeditiously as reasonably practicable.

**5.2.4**    All of the dates set forth in this Article 5 ("Contract Time(s)") shall be subject to adjustment in accordance with the General Conditions of Contract.

**5.3    Time is of the Essence.** Owner and Design-Builder mutually agree that time is of the essence with respect to the dates and times set forth in the Contract Documents.

**5.4    Liquidated Damages.** Design-Builder understands that if Substantial Completion is not attained by the Scheduled Substantial Completion Date, Owner will suffer damages which are difficult to determine and accurately specify. Design-Builder agrees that if Substantial Completion is not attained by the fourteen (14) days after the Scheduled Substantial Completion Date (the "LD Date"), Design-Builder shall pay Owner Five thousand  Dollars ($ 5,000) as liquidated damages for each day that Substantial Completion extends beyond the LD Date capped at Half of the CM Fee . The liquidated damages provided herein shall be in lieu of all liability for any and all extra costs, losses, expenses, claims, penalties and any other damages, whether special or consequential, and of whatsoever nature incurred by Owner which are occasioned by any delay in achieving Substantial Completion. *(If a GMP is not established upon execution of this Agreement, the parties should consider setting liquidated damages after GMP negotiations. If liquidated damages are applicable to any dates set forth in Section 5.2.2 hereof, this Section 5.4 will need to be modified accordingly.)*

**5.5    Omitted.**

**5.6 Adverse Weather.** Design-Builder has included normal working hours of forty (40) hours per week in the project schedule unless otherwise noted in GMP Proposal. Design-Builder has included one (1) adverse weather make-up day per week throughout the duration of on-site works for the Project (Saturdays). Should adverse weather occur in excess of one (1) day per week, an Extension of Time shall

DBIA Document No. 530  ·  Standard Form of Agreement Between
Owner and Design-Builder -- Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America



be granted equal to the lost time and any additional days necessary to dry-out or de-muck the site. Unused adverse weather make-up days do not carry over from week to week.

### Article 6

#### Contract Price

**6.1    Contract Price**

**6.1.1**    Owner shall pay Design-Builder in accordance with Article 6 of the General Conditions of Contract a contract price ("Contract Price") equal to Design-Builder's Fee (as defined in Section 6.2 hereof) plus the Cost of the Work (as defined in Section 6.3 hereof), subject to any GMP established in Section 6.5 hereof and any adjustments made in accordance with the General Conditions of Contract.

**6.1.2**    For the specific Work set forth below, Owner agrees to pay Design-Builder, as part of the Contract Price, on the following basis:

**6.2    Design-Builder's Fees and Insurance**

**6.2.1**    Design-Builder's Fee shall be:

.1    The Construction Management Fee is included at <u>Six</u> percent (<u>6</u>%) of the actual Cost of the Work.

**6.2.2**    Design-Builder's Fee will be adjusted as follows for any changes in the Work:    *(insert financial arrangements for adjustment)*

.1    Design Engineering Services will be adjusted for scope additions to the project via a lump sum amount or on a Time and Material basis per the Design-Builder's Rate Sheet included in Exhibit C to this Agreement, at Owner's option.

.2    All administrative and engineering travel associated with the changes will be invoiced to the Owner at cost.

.3    The Construction Management Fee of <u>6</u>% will be charged on the Cost of the Work in accordance with Section 6.2.1.1.

**6.2.3**    Design-Builder's Insurance shall be:

.1    The costs for Project Insurance is included at <u>One and Sixty Five hundredths</u> percent (<u>1.65</u>%) of the sum of (1) the actual Cost of Work plus (2) the Construction Management Fee calculated pursuant to Section 6.2.1.1.

**6.3    Cost of the Work.**  The term Cost of the Work shall mean costs reasonably incurred by Design-Builder in the proper performance of the Work. The Cost of the Work shall include only the following:

.1    Wages of direct employees of Design-Builder performing the Work at the Site or, with Owner's agreement, at locations off the Site. Until the GMP is established, these costs shall be in accordance with the rates set forth in exhibit C to this Agreement.

.2    Wages or salaries of Design-Builder's supervisory and administrative personnel engaged in the performance of the Work and who are located at the Site or working off-Site to assist in the production or transportation of material and equipment necessary for the Work. Until the GMP is established, these costs shall be in accordance with the rates set forth in Design-Builder's Rate Sheet included in Exhibit C to this Agreement.

.3    Wages or salaries of Design-Builder's personnel stationed at Design-Builder's principal or branch offices, which might include the vice president, project developer, senior project manager, project manager, assistant project manager, administrative assistant and the project accountant. Until the GMP is established, these costs shall be in accordance with the rates set forth in Design-Builder's Rate Sheet included in Exhibit C to this Agreement.

.4    Costs incurred by Design-Builder for employee benefits, premiums, taxes, insurance, contributions and assessments required by law, collective bargaining agreements, or which are customarily paid by Design-Builder, to the extent such costs are based on wages and salaries paid to employees of Design-Builder covered under Sections 6.3.1 through 6.3.3 hereof. Until the GMP is established, these costs shall be in accordance with and included in the rates set forth in Design-Builder's Rate Sheet included in Exhibit C to this Agreement.

.5    The reasonable portion of the cost of travel, accommodations and meals for Design-Builder's personnel necessarily and directly incurred in connection with the performance of the Work.

.6    Payments properly made by Design-Builder to Subcontractors and Design Consultants for performance of portions of the Work, including any insurance and bond premiums incurred by Subcontractors and Design Consultants.

.7    Costs incurred by Design-Builder in repairing or correcting defective, damaged or nonconforming Work, provided that such defective, damaged or nonconforming Work was beyond the reasonable control of Design-Builder or those working by or through Design-Builder. If the costs associated with such defective, damaged or nonconforming Work are recoverable from Insurance, Subcontractors or Design Consultants, Design-Builder shall exercise best efforts to obtain recovery from the appropriate source and credit Owner if recovery is obtained.

.8    Costs, including deposits, transportation, inspection, testing, storage and handling, of materials, equipment and supplies incorporated or reasonably used in completing the Work.

.9    Costs less salvage value of materials, supplies, temporary facilities, machinery, equipment and hand tools not customarily owned by the workers that are not fully consumed in the performance of the Work and which remain the property of Design-Builder, including the costs of transporting, inspecting, testing, handling, installing, maintaining, dismantling and removing such items.

.10    Costs of removal of debris and waste from the Site.

DBIA Document No. 530  •  Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America



.11 The reasonable costs and expenses incurred in establishing, operating and demobilizing the Site office, including the cost of facsimile transmissions, long-distance telephone calls, postage and express delivery charges, telephone service, high speed internet service, photocopying, video and/or photographic services and reasonable petty cash expenses.

.12 Rental charges and the costs of transportation, installation, minor repairs and replacements, dismantling and removal of temporary facilities, machinery, equipment and hand tools not customarily owned by the workers, which are provided by Design-Builder at the Site, whether rented from Design-Builder or others, and incurred in the performance of the Work.

.13 Premiums for insurance and bonds required by this Agreement or the performance of the Work.

.14 All fuel and utility costs incurred in the performance of the Work.

.15 Sales, use or similar taxes, tariffs or duties incurred in the performance of the Work.

.16 Legal costs, court costs and costs of mediation and arbitration reasonably arising from Design-Builder's performance of the Work, provided such costs do not arise from disputes between Owner and Design-Builder and incurred after the consent of the Owner.

.17 Costs for permits, royalties, licenses, tests and inspections incurred by Design-Builder as a requirement of the Contract Documents.

.18 The cost of defending suits or claims for infringement of patent rights arising from the use of a particular design, process, or product required by Owner, paying legal judgments against Design-Builder resulting from such suits or claims, and paying settlements made with Owner's consent.

.19 Deposits which are lost, except to the extent caused by Design-Builder's negligence.

.20 Costs incurred in preventing damage, injury or loss in case of an emergency affecting the safety of persons and property.

.21 Other costs reasonably and properly incurred in the performance of the Work to the extent approved in writing by Owner.

.22 Design Engineering Services as written in Design-Builder's proposal revision 1 dated <u>July 24, 2020</u> and included to this Agreement in Exhibit A. These services are defined and charged as follows:

    .1 Building and Infrastructure Design Engineering Services, charged at a lump sum cost of <u>Two million One hundred Seventy Five thousand</u> Dollars ($ <u>2,175,000</u>), not including travel and expenses, or Project Insurance.

    .2 Process Design Engineering Services, charged at a lump sum cost of <u>One million Two hundred Sixty Five thousand</u> Dollars ($ <u>1,265,000</u>), not including travel and expenses, or Project Insurance.

.3 Pre-Construction Services, charged at a lump sum cost of One hundred Fifty thousand Dollars ($ 150,000).

.23 Design-Builder's self-performed work and work performed by related companies to the Design-Builder (as noted below), will include a fifteen percent (15.0%) mark up on the total costs for the following scopes of work. These scopes of work will provide an open book estimate which will detail all cost, and show three (3) competitive bids for all major materials and equipment.  Once the estimate has been reviewed and approved by Owner, the scope will become a lump sum cost and will be handled like all other trade contracts.

.1 Design-Builder self-performed work including:

.1 Thermal (roofing, insulation metal panel walls/ceilings, floor insulation and thermal doors),

.2 Design-Builder related companies self-performing work:

.1 Stellar Refrigeration Contracting - Refrigeration (equipment, skids, piping, etc.) for all areas 60° and lower.

.2 Mechanical HVAC for all areas above 60°,

.3 Utilities (Steam, air, water, etc.)

.3 All other trades required, not listed above, will be subcontracted.

## 6.4   Non-Reimbursable Costs

The following shall be excluded from the Cost of the Work:

.1 Compensation for Design-Builder's personnel stationed at Design-Builder's principal or branch offices, except as provided for in Sections 6.3.1, 6.3.2 and 6.3.3 hereof.

.2 Overhead and general expenses, except as provided for in Section 6.3 hereof, or which may be recoverable for changes to the Work.

.3 The cost of Design-Builder's capital used in the performance of the Work.

.4 If the parties have agreed on a GMP, costs that would cause the GMP, as adjusted in accordance with the Contract Documents, to be exceeded.

*(The parties shall comply with the following Section 6.5 based upon whether the GMP is agreed upon before the execution of this Agreement or will be developed and agreed upon after execution of this Agreement.  If the parties do not use a GMP, this Section 6.5 shall be deemed inapplicable and compensation to Design-Builder shall be based on those fees and costs identified in the balance of this Article 6.)*

## 6.5   The Guaranteed Maximum Price

DBIA Document No. 530   •   Standard Form of Agreement Between
Owner and Design-Builder -- Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America



**6.5.1    Omitted**

**6.5.1.1 Omitted**

**6.5.1.2 Omitted**

**6.5.2    GMP Established after Execution of this Agreement**

**6.5.2.1 GMP Proposal.** No later than four (4) weeks after the 60% design review with Owner, Design-Builder shall submit a GMP Proposal to Owner which shall include the following, unless the parties mutually agree otherwise:

.1     A proposed GMP, which shall be the sum of:

    i.     Design-Builder's Fee as defined in Section 6.2.1 hereof;

    ii.    If applicable, any prices established under Section 6.1.2 hereof; and

    iii.   the estimated Cost of the Work as defined in Section 6.3 hereof, inclusive of any Design-Builder's Contingency defined as defined in Section 6.5.2.5 hereof.

.2     A list of the drawings and specifications, including all addenda, used as the basis for the GMP proposal;

.3     A list of the assumptions and clarifications made by Design-Builder in the preparation of the GMP Proposal, which list is intended to supplement the information contained in the drawings and specifications;

.4     The Scheduled Substantial Completion Date upon which the proposed GMP is based, to the extent said date has not already been established under Section 5.2 hereof, and a schedule upon which the Scheduled Substantial Completion Date is based;

.5     If applicable, a list of allowances and a statement of their basis;

.6     If applicable, a schedule of alternate prices;

.7     If applicable, a schedule of unit prices;

.8     If applicable, a statement of Additional Services; and

.9     The time limit for acceptance of the GMP Proposal.

**6.5.2.2 Review and Adjustment to GMP Proposal.** After submission of the GMP Proposal, Design-Builder and Owner shall meet to discuss and review the GMP Proposal. If Owner has any comments regarding the GMP Proposal, or finds any inconsistencies or inaccuracies in the information presented, it shall promptly give written notice to Design-Builder of such comments or findings. If appropriate, Design-Builder shall, upon receipt of Owner's notice, make appropriate adjustments to the GMP Proposal.

**6.5.2.3 Acceptance of GMP Proposal.** If Owner accepts the GMP Proposal, as may be amended by Design-Builder, the GMP and its basis shall be set forth in an amendment to this Agreement.

**6.5.2.4 Failure to Accept the GMP Proposal.** If Owner rejects the GMP Proposal, or fails to notify Design-Builder in writing on or before the date specified in the GMP Proposal that it accepts the GMP Proposal, the GMP Proposal shall be deemed withdrawn and of no effect. In such event, Owner and Design-Builder shall meet and confer as to how the Project will proceed, with Owner having the following options:

.1    Owner may suggest modifications to the GMP Proposal, whereupon, if such modifications are accepted in writing by Design-Builder, the GMP Proposal shall be deemed accepted and the parties shall proceed in accordance with Section 6.5.2.3 above;

.2    Owner may authorize Design-Builder to continue to proceed with the Work on the basis of reimbursement as provided in Section 6.1 hereof without a GMP, in which case all references in this Agreement to the GMP shall not be applicable; or

.3    Owner may terminate this Agreement for convenience in accordance with Article 8 hereof.

If Owner fails to exercise any of the above options, Design-Builder shall have the right to (i) continue with the Work as if Owner had elected to proceed in accordance with Item .2 above, and be paid by Owner accordingly, unless and until Owner notifies it in writing to stop the Work, or (ii) suspend performance of Work in accordance with Section 11.3.1 of the General Conditions of Contract.

**6.5.2.5 Contingency.** The GMP may contain an agreed amount for the Design-Builder's contingency. The contingency is available for Design-Builder's exclusive use for costs that are incurred in performing the Work that are not included in a specific line item or the basis for a Change Order under the Contract Documents. The Design-Builder shall be entitled to payment for costs that are incurred in performing the Work that are not included in the Cost of the Work set forth in Section 6.3. By way of example, and not as a limitation, such costs include trade buy-out differentials, overtime, acceleration, costs in correcting defective, damaged or nonconforming Work, design errors or omissions and Subcontractor defaults. The Contingency is not available to Owner for any reason, including changes in scope or any other item which would enable Design-Builder to increase the GMP under the Contract Documents. Design-Builder shall provide Owner with notice of all anticipated charges against the Contingency. Any unspent Contingency at project final completion will be considered "Savings" and addressed as defined in section 6.5.3.

**6.5.3    Savings**

**6.5.3.1** If the sum of the actual Cost of the Work and Design-Builder's Fee and amounts paid as contingency items pursuant to Section 6.5.2.5 (and, if applicable, any prices established under Section 6.1.2 hereof) is less than the GMP, as such GMP may have been adjusted over the course of the Project, the difference ("Savings") shall be shared as follows:

Zero percent (0 %) to Design-Builder and One hundred percent (100%) to Owner.

**6.5.3.2** Savings shall be calculated and paid as part of Final Payment under Section 7.3 hereof, with the understanding that to the extent Design-Builder incurs costs after Final Completion which would have been payable to Design-Builder as a Cost of the Work, Design-Builder shall be entitled to payment from Owner for that portion of such costs that were distributed to Owner as Savings.

DBIA Document No. 530  •  Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America



**Article 7**

**Procedure for Payment**

**7.1    Progress Payments**

**7.1.1**   Design-Builder shall submit to Owner on the Twenty-Fifth (25th) day of each month, beginning with the first month after the Date of Commencement, Design-Builder's Application for Payment in accordance with Article 6 of the General Conditions of Contract.

**7.1.2**   Owner shall make payment within thirty (30) days after Owner's receipt of each properly submitted and accurate Application for Payment in accordance with Article 6 of the General Conditions of Contract, but in each case less the total of payments previously made, and less amounts properly withheld under Section 6.3 of the General Conditions of Contract.

**7.1.3**   If Design-Builder's Fee under Section 6.2.1 hereof is a fixed amount, the amount of Design-Builder's Fee to be included in Design-Builder's monthly Application for Payment and paid by Owner shall be proportional to the percentage of the Work completed, less payments previously made on account of Design-Builder's Fee.

**7.1.4**   Prior to commencement of construction, the Design-Builder may submit a payment application in advance not to exceed Two hundred and Fifty thousand Dollars ($250,000) for labor, material and General Conditions costs. The advanced amount is considered a mobilization and cash flow payment and is to be considered part of the overall GMP.  The payment under this Section 7.1.4 shall be credited against the subsequent Applications for Payment until the amount advanced is recouped.

**7.2    Retainage on Progress Payments**

**7.2.1**   Owner will retain Ten percent (10%) of each Application for Payment provided, however, that when fifty percent (50%) of the Work has been completed by Design-Builder, if there are no disputes or delays, Owner will not retain any additional amounts from Design-Builder's subsequent Applications for Payment.  Owner will also reasonably consider reducing retainage for Subcontractors completing their work early in the Project.

   **.1**   Retainage will not be held on amounts covered by the General Conditions Amount, Design Engineering Services, Process Design Services, Process Equipment Purchases, Construction Management Fee and Project Insurances.

**7.2.2**   Upon Substantial Completion of the entire Work or, if applicable, any portion of the Work, pursuant to Section 6.6 of the General Conditions of Contract, Owner shall release to Design-Builder all retained amounts relating, as applicable, to the entire Work or completed portion of the Work, less an amount equal to the reasonable value of all remaining or incomplete items of Work as noted in the Certificate of Substantial Completion.

**7.3    Final Payment.**  Design-Builder shall submit its Final Application for Payment to Owner in accordance with Section 6.7 of the General Conditions of Contract.  Owner shall make payment on Design-Builder's properly submitted and accurate Final Application for Payment within thirty (30) days after Owner's receipt of the Final Application for Payment, provided that Design-Builder has satisfied the requirements for final payment set forth in Section 6.7.2 of the General Conditions of Contract.

**7.4    Interest.**  Payments due and unpaid by Owner to Design-Builder, whether progress payments or final payment, shall bear interest commencing fifteen (15) days after payment is due at the rate of Five percent(5.00%) per annum.

**7.5    Record Keeping and Finance Controls.**  Design-Builder acknowledges that this Agreement is to be administered on an "open book" arrangement relative to Costs of the Work.  Design-Builder shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management, using accounting and control systems in accordance with generally accepted accounting principles and as may be provided in the Contract Documents.  During the performance of the Work and for a period of three (3) years after Final Payment, Owner and Owner's accountants shall be afforded access from time to time, upon reasonable notice, to Design-Builder's records, books, correspondence, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to the Work, all of which Design-Builder shall preserve for a period of three (3) years after Final Payment.

## Article 8

### Termination for Convenience

**8.1**    Upon ten (10) days' written notice to Design-Builder, Owner may, for its convenience and without cause, elect to terminate this Agreement.  In such event, Owner shall pay Design-Builder for the following:

   .1    All Work executed and for proven loss, cost or expense in connection with the Work in accordance with the terms of this Agreement; and

   .2    The reasonable costs and expenses attributable to such termination, including demobilization costs and amounts due in settlement of terminated contracts with Subcontractors and Design Consultants; and

   .3    The fair and reasonable sums for overhead and profit on the sum of items .1 and .2 above.

**8.2**    Omitted.

   .1

**8.3**    If Owner terminates this Agreement pursuant to Section 8.1 above and proceeds to design and construct the Project through its employees, agents or third parties, Owner's rights to use the Work Product shall be as set forth in Article 4 hereof.

## Article 9

### Representatives of the Parties

**9.1    Owner's Representatives**

**9.1.1**    Owner designates the individual listed below as its Senior Representative ("Owner's Senior Representative"), which individual has the authority and responsibility for avoiding and resolving disputes under Section 10.2.3 of the General Conditions of Contract: *(Identify individual's name, title, address and telephone numbers)*

DBIA Document No. 530  ·  Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1996 Design-Build Institute of America

**9.1.2**   Owner designates the individual listed below as its Owner's Representative, which individual has the authority and responsibility set forth in Section 3.4 of the General Conditions of Contract:  *(Identify individual's name, title, address and telephone numbers)*

## 9.2   Design-Builder's Representatives

**9.2.1**   Design-Builder designates the individual listed below as its Senior Representative ("Design-Builder's Senior Representative"), which individual has the authority and responsibility for avoiding and resolving disputes under Section 10.2.3 of the General Conditions of Contract:  *(Identify individual's name, title, address and telephone numbers)*

Stellar Group, Inc.

Scott Mark
Sr. Vice President Food Manufacturing and Logistics
2900 Hartley Road
Jacksonville, FL 32257
Phone: 904-899-9448
Email: smark@stellar.net

**9.2.2**   Design-Builder designates the individuals listed below as its Design-Builder's Representative, which individual has the authority and responsibility set forth in Section 2.1.1 of the General Conditions of Contract:  *(Identify individual's name, title, address and telephone numbers)*

Derek Bickerton
Project Developer
2900 Hartley Road
Jacksonville, FL 32257
Phone: 904-899-9242
Email: dbickerton@stellar.net

DBIA Document No. 530  •  Standard Form of Agreement Between
Owner and Design-Builder — Cost Plus Fee with an Option for a Guaranteed Maximum Price
© 1998 Design-Build Institute of America

## Article 10

### Bonds and Insurance

**10.1** **Insurance.** Design-Builder shall procure in accordance with Article 5 of the General Conditions of Contract the insurance coverages set forth in the Exhibit B (Insurance Requirements) attached hereto:. *(Attach Insurance Schedule indicating the required coverage, amount of required coverage, duration of coverage, required rating of insurance carriers and any other insurance requirements required of the parties)*

**10.2** **Bonds and Other Performance Security.** Payment and Performance Bonds are not required.

## Article 11

### Other Provisions

**11.1** Other provisions, if any, are as follows: *(Insert any additional provisions)*

**11.1.1** Notwithstanding anything to the contrary herein contained, both the price and the project schedule set forth herein or elsewhere in the contract documents are subject to, conditioned upon and shall be changed as a result of the direct or indirect impacts experienced due to the COVID-19 or Corona virus. Such impacts include, but are not limited to, supply chain disruption, material shortage, labor shortage, price increases, governmental mandates, orders or directives, plant or facility closures, diminished output, disruption of the economy, permit delays or refusals, disruption of the financial system, and banking moratoriums. Contractor shall endeavor to notify the Owner from time to time of changes to [the price and/or the project schedule due to any such impacts, and where appropriate, provide any available backup documentation.

In executing this Agreement, Owner and Design-Builder each individually represents that it has the necessary financial resources to fulfill its obligations under this Agreement, and each has the necessary corporate approvals to execute this Agreement, and perform the services described herein.

OWNER:

John H. ousc
(Name of Owner)

_____
(Signature)

John H. Ousc
(Printed Name)

CEO & CSD
(Title)

Date: 7-29-2020

DESIGN-BUILDER:

Stellar Group, Inc.
(Name of Design-Builder)

_____
(Signature)

Scott Mark
(Printed Name)

Sr. VP Food + Beverage
(Title)

Date: 8-3-2020

Caution: You should sign an original DBIA document which has this caution printed in blue. An original assures that changes will not be obscured as may occur when documents are reproduced.

20220259809

## EXHIBIT B

## INSURANCE REQUIREMENTS

1. **Insurance Coverage of Stellar Group, Inc.** Stellar Group, Inc. ("Stellar") will maintain the insurance policies described in Schedule 1 attached hereto (collectively, the "Insurance Policies") for the duration agreed to by the parties in the Design Builder proposal or contract. If any of the Insurance Policies are canceled, renewal refused or materially changed, Stellar shall provide written notice to Owner within (10) days. Upon request by Owner, Stellar shall provide Owner with written evidence that the Insurance Policies are in force. Stellar shall name Owner as an additional insured under those Insurance Policies on Schedule 1 which indicate Owner is an additional insured.

2. **Builders' Risk Insurance.** Check one: ☐Owner ☐☒Stellar shall purchase and maintain in force builders' risk insurance for the Work. Such builders' risk insurance (the "Builders' Risk Insurance") shall:

(a) Be written in an amount at least equal to the initial contract sum as well as subsequent modifications of that sum.

(b) Name as insureds the Owner and Stellar, and contain a provision that the insurance will not be canceled or allowed to expire unless at least 10 days prior written notice has been given to Stellar and Owner

(c) Apply on a replacement cost basis and cover all risks of physical loss except those specifically excluded in the policy, but at a minimum cover the perils of fire, lightning, explosion, windstorm, hail, smoke, aircraft, vehicles, riot, civil commotion, theft, vandalism, malicious mischief, and collapse.

(d) Cover the portions of the Work that are intended for use at the construction site, but temporarily located away from the site or in transit to the site.

(e) Cover the cost of removing debris, including demolition as may be made legally necessary by the operation of any law, ordinance, or regulation.

If Stellar is responsible for purchasing and maintaining the Builders' Risk Insurance (as indicated above), Owner acknowledges and agrees that the Contract Sum does not include the amount of the premium of the Builders' Risk Insurance and Owner shall pay Stellar the amount of such premium in addition to the Contract Sum.

3. **Flood and Earthquake.** If either party desires to include under the Builders' Risk Insurance coverage for flood or earthquake, Owner and Stellar shall agree upon the price, scope and amount of deductibles of the supplemental coverage to be purchased. Otherwise, the Builders Risk Insurance will not cover damage caused by

flood or earthquake, and any and all Losses (as defined herein) attributable to flood or earthquake shall be exclusively the responsibility of Owner.

4. **Coverage of Owner's Property.** If Owner desires to include under the Builders' Risk Insurance coverage for damage or losses (a) arising from or out of work performed by Owner or by separate contractors under Owner's control (the "Owner's Work") or (b) sustained to Owner's property, including, but not limited to materials, structures, machinery or equipment, located or stored by Owner at the Site (the "Owner's Property"), Owner and Stellar shall agree upon the price, scope and amount of deductibles of the supplemental coverage to be purchased. Otherwise, the Builders' Risk Insurance will not cover losses or damage relating to the Owner's Work or damages sustained to the Owner's Property, and any and all such losses or damage shall be exclusively the responsibility of Owner.

5. **Partial occupancy or use of the Work.** Owner shall not commence with the partial occupancy or use of the Work until the Builders' Risk Insurance underwriter (the "Underwriter") has provided written consent to Owner's partial occupancy or use. Owner and Stellar shall take reasonable steps to obtain such consent, but failure to do so will preclude coverage under the Builders' Risk Insurance. Unless otherwise provided by the Underwriter, any and all Losses sustained after Owner's occupancy or use of the Work shall be exclusively the responsibility of Owner.

6. **Builders' Risk Insurance Policy Period.** The Builders' Risk Insurance will be maintained in effect, unless otherwise provided for by written agreement, from the date construction activities begin until the earliest of the following dates:

(a) the date the Owner and Stellar agree that it shall be terminated;

(b) the date final payment, as provided for in the agreement, has been made or

(c) the date a certificate of occupancy is issued.

7. **Builders' Risk Insurance Deductible.** In the event a claim is made under the Builders' Risk Insurance, payment of any deductibles applicable to the Builders' Risk Insurance (the "Builders' Risk Deductibles") shall be the sole and exclusive responsibility of Owner. Payment of the Builders' Risk Deductibles shall be the sole responsibility of Stellar regardless of whether the Builders' Risk Insurance is procured by Owner or procured by Stellar. Stellar shall include an allowance in the GMP Amendment to cover these potential costs.

JAX\1035534_1

8.    Waiver of Subrogation. Owner and Stellar waive all rights against each other and their officers, directors, agents, and employees for recovery from damages and injuries however caused to the extent they are covered by the Insurance Policies and the Builders' Risk Insurance or any other insurance applicable to the Work.

9.    Adequacy of Coverage. Owner agrees that the maintenance of the Insurance Policies (and the Builders' Risk Insurance, if applicable) shall fulfill any and all of Stellar's obligations of insurance coverage. Owner agrees that the Insurance Policies (and the Builders' Risk Insurance, if applicable) are the only insurance policies maintained, and that are required to be maintained, by Stellar.

10.    Insurance As Sole Remedy. Owner acknowledges the coverage limits of each of the Insurance Policies (and the Builders' Risk Insurance, if applicable) (the "Coverage Limits") and agrees that Stellar's obligation to Owner for any and all losses, damages or injuries arising from or out of the performance of the Work (each a "Loss" and collectively, "Losses") shall be limited to the Coverage Limits. Upon the occurrence of any Loss, Owner shall look solely to the Insurance Policies and the Builders' Risk Insurance for recovery for any Loss and Stellar shall not be responsible or liable for Loss in excess of the Coverage Limits. Owner acknowledges that any and all Losses covered by the Insurance Policies or the Builders' Risk Insurance that are in excess of the Coverage Limits, including, but not limited to, payment of deductibles or losses relating to Owner's collateral operations, shall be exclusively the responsibility of Owner and not Stellar regardless of the cause of the Loss.

11.    Supplemental Insurance. If Owner requires coverage in excess of the Coverage Limits, then Owner shall obtain such additional coverage or supplemental insurance.

12.    Owner's Insurance. Owner shall procure the following insurance (collectively, the "Owner's Insurance Policies"): (a) Commercial general liability; (b) Automobile liability insurance; (c) Property insurance; (d) Business interruption insurance; (e) Workers' compensation and employers liability insurance; and (f) Other insurance required by applicable law, rule, regulation or ordinance.

Owner shall maintain the Owner's Insurance Policies in full force and effect for the duration as agreed to by the parties. None of the Owner's Insurance Policies (or the Builders' Risk Insurance, if applicable) will be canceled, renewal refused or materially changed unless at least ten (10) days prior written notice is given to Stellar by either Owner or the insurer. Owner shall provide Stellar with insurance certificates and endorsements naming Stellar as an additional insured for ongoing and completed operation and waiving rights of subrogation. Owner's Property and Work. Owner acknowledges that, unless Owner has obtained coverage under the Builders' Risk Insurance as described in Section 4 above, neither the Insurance Policies nor the Builders' Risk Insurance shall provide coverage for any losses relating to the Owner's Work or damages sustained to the Owner's Property. Owner acknowledges and agrees that, unless Owner obtains coverage under the Builders' Risk Insurance as described in Section 4 above, it shall be the sole and exclusive responsibility of Owner to pay for any such losses or damage to the Owner's Work or the Owner's Property.

Acknowledged and agreed by:

STELLAR GROUP, INC.

By: _____
Its:

Owner: _____

By: _____
Its:

# CERTIFICATE OF LIABILITY INSURANCE

ACORD®

DATE (MM/DD/YYYY)
10/01/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: | | |
|---|---|---|---|---|
| MARSH USA, INC. TWO ALLIANCE CENTER 3560 LENOX ROAD, SUITE 2400 ATLANTA, GA 30326 | | PHONE (A/C, No, Ext): | | FAX (A/C, No): |
| | | E-MAIL ADDRESS: | | |
| 101379694-GAUX-19-20 | | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED | | INSURER A : The Travelers Indemnity Company | | 25658 |
| Staller Group Inc. 2900 Hartley Rd Jacksonville, FL 32257 | | INSURER B : | | |
| | | INSURER C : | | 25615 |
| | | INSURER D : The Charter Oak Fire Insurance Co. | | 25674 |
| | | INSURER E : Travelers Property Casualty Company of America | | |
| | | INSURER F : | | |

COVERAGES    CERTIFICATE NUMBER: ATL-004861409-02    REVISION NUMBER: 1

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | | | VTC2K-CO-5914B00A-19 | 10/01/2019 | 10/01/2020 | EACH OCCURRENCE | $ 1,000,000 |
| | CLAIMS-MADE X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 300,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | POLICY PRO-JECT LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| E | AUTOMOBILE LIABILITY | | | VTJCAP-5913898A-19 | 10/01/2019 | 10/01/2020 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS ONLY NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| E | X UMBRELLA LIAB X OCCUR | | | VTSMJ-CUP-0P663493-19-35 | 10/01/2019 | 10/01/2020 | EACH OCCURRENCE | $ 5,000,000 |
| | EXCESS LIAB CLAIMS-MADE | | | | | | AGGREGATE | $ 5,000,000 |
| | DED RETENTION $ | | | | | | | $ |
| D | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | | | UB-5K49528Y-19-25-X (AOS) | 10/01/2019 | 10/01/2020 | X PER STATUTE OTH-ER | |
| E | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | Y/N N | N/A | UB-9K161699-19-25-R (AZ & WI) | 10/01/2019 | 10/01/2020 | E.L. EACH ACCIDENT | $ 500,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 500,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ 500,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Evidence of Insurance

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Staller Group Inc. 2900 Hartley Rd Jacksonville, FL 32257 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE of Marsh USA Inc. Manashi Mukherjee |

© 1988-2016 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD

**EXHIBIT C**

**DESIGN-BUILDER RATE SHEET**

**(October 2019 – September 2020)**

|  |  | Hourly Rate | OT Hourly Rate |
|---|---|---|---|
| **Design Engineering Services** | | | |
| I. | Vice President – Design & Engineering | $175.00 | $175.00 |
| II. | Design Project Manager | $155.00 | $155.00 |
| III. | Discipline Director | $155.00 | $155.00 |
| IV. | Senior Architect/Engineer | $140.00 | $140.00 |
| V. | Project Architect/Engineer | $125.00 | $125.00 |
| VI. | Senior Designer | $110.00 | $165.00 |
| VII. | Designer | $95.00 | $143.00 |
| VIII. | Document Controller | $80.00 | $120.00 |
| IX. | CADD Technician | $75.00 | $113.00 |
| X. | Administrative Assistant | $55.00 | $83.00 |
| **Construction Administration & Field Services** | | | |
| I. | Project Executive | $175.00 | $175.00 |
| II. | Project Developer | $170.00 | $170.00 |
| III. | Senior Project Manager | $162.00 | $162.00 |
| IV. | Project Manager | $155.00 | $155.00 |
| V. | Assistant Project Manager | $135.00 | $135.00 |
| VII. | Project Accountant | $75.00 | $75.00 |
| VIII. | Superintendent | $165.00 | $165.00 |
| IX. | Assistant Superintendent | $145.00 | $145.00 |
| X. | On-Site Safety Manager | $145.00 | $145.00 |
| XI. | Field Engineer | $125.00 | $125.00 |
| XII. | Administrative Assistant | $55.00 | $83.00 |
| XIII. | Field Clerk | $35.00 | $53.00 |

The above rates shall be used for billing and valuation of any future works associated with the project. All hourly rates listed are current through September 2020 and are subject to adjustment should the contract execution be delayed beyond this date.

Jax\926574_4

-17-

**EXHIBIT D**

**PERMIT RESPONSIBILITY LIST**

To Be finalized with GMP Proposal

JMM

2022025989.9

# EXHIBIT C

**AFFIDAVIT AND PROOF OF SERVICE**
**RE:  ARIZONA TWENTY DAY PRELIMINARY LIEN NOTICE**

STATE OF FLORIDA          )
                          ) ss.
County of Duval           )

Gabriel B. Crafton, being first duly sworn upon [his/her] oath, deposes and states:

1.    I am the Chief Legal Officer for Stellar Group, Inc. ("Stellar").

2.    On December 23, 2021, I served copies of Stellar's Preliminary 20-Day Notice by mailing via certified mail, return receipt requested to the following parties:

| | |
|---|---|
| Vital Pharmaceuticals, Inc.<br>One Alhambra Plaza, Floor PH<br>Coral Gables, Florida 33132 | Vital Pharmaceuticals, Inc.<br>c/o Corporate Creations Network, Inc.<br>3260 North Hayden Road, Suite 210<br>Scottsdale, Arizona 85251 |
| JHO Real Estate Investment, LLC<br>1600 North Park Drive<br>Weston, Florida 33326 | JHO Real Estate Investment, LLC<br>c/o Corporate Creations Network, Inc.<br>3260 North Hayden Road, Suite 210<br>Scottsdale, Arizona 85251 |

3.    True and correct copies of the Preliminary Twenty Day Lien Notice and Certified Mail proofs of mailing are attached hereto.

[Signature Page Follows]

C-1

DATED this 21st day of March 2022.

**STATE OF FLORIDA**     )

**COUNTY OF DUVAL**     )

STELLAR GROUP, INC.

By

Name: Gabriel B. Crafton

Its: Chief Legal Officer

Sworn to or affirmed and signed before me by means of physician presence on this 21st day of March, 2022 by Gabriel B. Crafton, who is personally known to me or who has produced _____, as identification.

Notary Public State of Florida

Print Name: Dorothy D Miller

My Commission Expires: March 2, 2026

DOROTHY BLANTON MILLER
NOTARY PUBLIC
MY COMMISSION
EXPIRES 3-2-2026
STATE OF FLORIDA
COMMISSION NUMBER HH 123976

C-2

Arizona Preliminary Twenty Day Lien Notice

**In accordance with Arizona Revised Statutes section 33-992.01, this is not a lien. This is not a reflection on the integrity of any contractor or subcontractor.**

The name and address of the Owner or Reputed Owner are:

Vital Pharmaceuticals, Inc.
One Alhambra Plaza, Floor PH
Coral Gables, Florida 33132

JHO Real Estate Investment, LLC
1600 N. Park Drive
Weston, Florida 33326

Vital Pharmaceuticals, Inc.
c/o Corporate Creations Network, Inc.
3260 N. Hayden Road, Suite 210
Scottsdale, Arizona 85251

JHO Real Estate Investment, LLC
c/o Corporate Creations Network, Inc.
3260 N. Hayden Road, Suite 210
Scottsdale, Arizona 85251

The name and address of the Original Contractor are:

Stellar Group, Inc.
2900 Hartley Road
Jacksonville, Florida 32257

The name and address of any lender or reputed lender and/or assigns are:

Unknown/Requested

The name and address of the person with whom the claimant contracted are:

Vital Pharmaceuticals, Inc.
1600 N. Park Drive
Weston, Florida 33326

This preliminary lien notice has been completed by (name and address of claimant):

Stellar Group, Inc.
2900 Hartley Road
Jacksonville, Florida 32257

Date:  December 23, 2021

You are hereby notified that the claimant has furnished or will furnish labor, professional services, material, machinery, fixtures tools of the following general description:

Construction of the Bang Phoenix Can Manufacturing Facility located at:

1635 South 43rd Avenue
Phoenix, Arizona 85009

and situated upon that certain lot(s) or parcel(s) of land in Maricopa County, Arizona, described as follows:

1635 South 43rd Avenue
Phoenix, Arizona 85009
Parcel Number 105-14-001Q

An estimate of the total price of the labor, professional services, materials, machinery, fixtures or tools furnished or to be furnished is:

$58,596,630.00

- 1 -

2022025980909

**Notice to Property Owner**

If bills are not paid in full for the labor, professional services, materials, machinery, fixtures or tools furnished, or to be furnished, a mechanic's lien leading to the loss, through court foreclosure proceedings, of all or part of your property being improved may be placed against the property. You may wish to protect yourself against this consequence by either:

1. Requiring your contractor to furnish a conditional waiver and release pursuant to Arizona Revised Statutes section 33-1008, subsection D, paragraphs 1 and 3 signed by the person or firm giving you this notice before you make payment to your contractor.

2. Requiring your contractor to furnish an unconditional waiver and release pursuant to Arizona Revised Statutes section 33-1008, subsection D, paragraphs 2 and 4 signed by the person or firm giving you this notice after you make payment to your contractor.

3. Using any other method or device that is appropriate under the circumstances.

(The following language shall be in type at least as large as the largest type otherwise on the document.)

Within ten days of the receipt of this preliminary twenty day notice the owner or other interested party is required to furnish all information necessary to correct any inaccuracies in the notice pursuant to Arizona Revised Statutes section 33-992.01, subsection I or lose as a defense any inaccuracy of that information.

Within ten days of the receipt of this preliminary twenty-day notice if any payment bond has been recorded in compliance with Arizona Revised Statutes section 33-1003, the owner must provide a copy of the payment bond including the name and address of the surety company and bonding agent providing the payment bond to the person who has given the preliminary twenty-day notice. In the event that the owner or other interested party fails to provide the bond information within that ten-day period, the claimant shall retain lien rights to the extent precluded or prejudiced from asserting a claim against the bond as a result of not timely receiving the bond information.

Dated: December 23, 2021          Stellar Group, Inc.

By: _____

Gabriel Crafton, Chief Legal Officer

- 2 -

Upon receipt of this notice, please detach and sign this
Acknowledgement and return to Claimant listed above

------------------------------------------------------------------------------------------

### Acknowledgment of Receipt of Preliminary Twenty Day Notice

This acknowledges receipt on _____ of a copy of the preliminary twenty day notice at

(insert date)

_____. Date: _____.

(insert address)                      (date this acknowledgment is executed)

_____

Signature of person acknowledging receipt, with
title if acknowledgment is made on behalf of another person

2022025 2809

## Transaction Details

**Recipient:**
Vital Pharmaceuticals, Inc.
c/o Corporate Creations Network, Inc.
3260 N. Hayden Road. Suite 210
Scottsdale, AZ 85251

**Sender:**
Stellar Group, Inc.
c/o Gabe Crafton
2900 Hartley Road
Jacksonville, Fl 32257

| | |
|---|---|
| Date Created: | 12/23/2021 1:41 PM |
| Date Mail Delivered: | 12/27/2021 4:19 PM |
| USPS Article Number: | 9314869904300090178263 |
| Return Receipt Article Number: | Not Applicable |
| | |
| Service Options: | Return Receipt - Electronic Certified Mail |
| Mail Service: | Certified |
| Reference #: | 04646 |
| Postage: | $0.73 |
| Certified Mail Fees: | $5.60 |
| Status: | Delivered |

Transaction created by:    gtaylor@rtlaw.com
User ID:    22579
Firm Mailing Book ID:    None
Batch ID:

## Transaction History

| Event Description | Event Date | Details |
|---|---|---|
| USPS® Certified Mail | 12-23-2021 05:23 PM | [USPS] - PRESHIPMENT INFO SENT  USPS AWAITS ITEM at JACKSONVILLE,FL |
| USPS® Certified Mail | 12-23-2021 10:04 PM | [USPS] - ORIGIN ACCEPTANCE at JACKSONVILLE,FL |
| USPS® Certified Mail | 12-23-2021 11:19 PM | [USPS] - PROCESSED THROUGH USPS FACILITY at JACKSONVILLE FL DISTRIBUTION CE |
| USPS® Certified Mail | 12-25-2021 11:36 AM | [USPS] - PROCESSED THROUGH USPS FACILITY at PHOENIX AZ DISTRIBUTION CENTER |
| USPS® Certified Mail | 12-26-2021 06:32 PM | [USPS] - PROCESSED THROUGH USPS FACILITY at PHOENIX AZ DISTRIBUTION CENTER |
| USPS® Certified Mail | 12-27-2021 04:19 PM | [USPS] - CERTIFIED MAIL DELIVERED FRONT DESKRECEPTIONMAIL ROOM at SCOTTSDALE,AZ |

20220259809

## Transaction Details

**Recipient:**
Vital Pharmaceuticals, Inc.
One Alhambra Plaza, Floor PH
Coral Gables, FL 33132

**Sender:**
Stellar Group, Inc.
c/o Gabe Crafton
2900 Hartley Road
Jacksonville, FL 32257

Transaction created by:   gtaylor@rtlaw.com
User ID:                              22579
Firm Mailing Book ID:     None
Batch ID:

Date Created:                         12/23/2021 1:35 PM
Date Mail Delivered:                  12/28/2021 4:34 PM
USPS Article Number:                  9314869904300090178201
Return Receipt Article Number:        Not Applicable

Service Options:                      Return Receipt - Electronic
                                      Certified Mail
Mail Service:                         Certified
Reference #:                          04646
Postage:                              $0.73
Certified Mail Fees:                  $5.60
Status:                               Delivered

## Transaction History

| Event Description | Event Date | Details |
|---|---|---|
| USPS® Certified Mail | 12-23-2021 05:23 PM | [USPS] - PRESHIPMENT INFO SENT  USPS AWAITS ITEM at JACKSONVILLE,FL |
| USPS® Certified Mail | 12-23-2021 10:04 PM | [USPS] - ORIGIN ACCEPTANCE at JACKSONVILLE,FL |
| USPS® Certified Mail | 12-23-2021 11:19 PM | [USPS]  PROCESSED THROUGH USPS FACILITY at JACKSONVILLE FL DISTRIBUTION CE |
| USPS® Certified Mail | 12-26-2021 11:46 AM | [USPS] - PROCESSED THROUGH USPS FACILITY at OPA LOCKA FL DISTRIBUTION CENTE |
| USPS® Certified Mail | 12-27-2021 02:37 AM | [USPS] - PROCESSED THROUGH USPS FACILITY at OPA LOCKA FL DISTRIBUTION CENTE |
| USPS® Certified Mail | 12-27-2021 07:57 PM | [USPS] - PROCESSED THROUGH USPS FACILITY at OPA LOCKA FL DISTRIBUTION CENTE |
| USPS® Certified Mail | 12-27-2021 09:20 PM | [USPS] - PROCESSED THROUGH USPS FACILITY at OPA LOCKA FL DISTRIBUTION CENTE |
| USPS® Certified Mail | 12-28-2021 04:34 PM | [USPS] - CERTIFIED MAIL DELIVERED LEFT WITH INDIVIDUAL at MIAMI,FL |

20230259809

## Transaction Details

**Recipient:**
JHO Real Estate Investment, LLC
c/o Corporate Creations Network, Inc.
3260 N. Hayden Road, Suite 210
Scottsdale, AZ 85251

**Sender:**
Stellar Group, Inc.
c/o Gabe Crafton
2900 Hartley Road
Jacksonville, FL 32257

Transaction created by:   gtaylor@rtlaw.com
User ID:                  22579
Firm Mailing Book ID:     None
Batch ID:

| | |
|---|---|
| Date Created: | 12/23/2021 1:44 PM |
| Date Mail Delivered: | 12/31/2021 4:57 PM |
| USPS Article Number: | 9314869904300090178287 |
| Return Receipt Article Number: | Not Applicable |
| | |
| Service Options: | Return Receipt - Electronic |
| | Certified Mail |
| Mail Service: | Certified |
| Reference #: | 04646 |
| Postage: | $0.73 |
| Certified Mail Fees: | $5.60 |
| Status: | Delivered |

## Transaction History

| Event Description | Event Date | Details |
|---|---|---|
| USPS® Certified Mail | 12-23-2021 05:23 PM | [USPS] - PRESHIPMENT INFO SENT  USPS AWAITS ITEM at JACKSONVILLE,FL |
| USPS® Certified Mail | 12-23-2021 10:04 PM | [USPS] - ORIGIN ACCEPTANCE at JACKSONVILLE,FL |
| USPS® Certified Mail | 12-23-2021 11:19 PM | [USPS] - PROCESSED THROUGH USPS FACILITY at JACKSONVILLE FL DISTRIBUTION CE |
| USPS® Certified Mail | 12-25-2021 11:36 AM | [USPS] - PROCESSED THROUGH USPS FACILITY at PHOENIX AZ DISTRIBUTION CENTER |
| USPS® Certified Mail | 12-31-2021 04:57 PM | [USPS] - CERTIFIED MAIL DELIVERED FRONT DESKRECEPTIONMAIL ROOM at SCOTTSDALE,AZ |

20230259809

## Transaction Details

**Recipient:**
JHO Real Estate Investment, LLC
1600 N. Park Drive
Weston, FL 33326

**Sender:**
Stellar Group, Inc.
c/o Gabe Crafton
2900 Hartley Road
Jacksonville, FL 32257

| | |
|---|---|
| Transaction created by: | gtaylor@rtlaw.com |
| User ID: | 22579 |
| Firm Mailing Book ID: | None |
| Batch ID: | |

| | |
|---|---|
| Date Created: | 12/23/2021 1:38 PM |
| Date Mail Delivered: | 12/27/2021 9:59 AM |
| USPS Article Number: | 93148699043000090178232 |
| Return Receipt Article Number: | Not Applicable |
| Service Options: | Return Receipt - Electronic |
| | Certified Mail |
| Mail Service: | Certified |
| Reference #: | 04646 |
| Postage: | $0.73 |
| Certified Mail Fees: | $5.60 |
| Status: | Delivered |

## Transaction History

| Event Description | Event Date | Details |
|---|---|---|
| USPS® Certified Mail | 12-23-2021 05:23 PM | [USPS] - PRESHIPMENT INFO SENT  USPS AWAITS ITEM at JACKSONVILLE,FL |
| USPS® Certified Mail | 12-23-2021 10:04 PM | [USPS] - ORIGIN ACCEPTANCE at JACKSONVILLE,FL |
| USPS® Certified Mail | 12-23-2021 11:19 PM | [USPS] - PROCESSED THROUGH USPS FACILITY at JACKSONVILLE FL DISTRIBUTION CE |
| USPS® Certified Mail | 12-26-2021 07:29 AM | [USPS] - PROCESSED THROUGH USPS FACILITY at OPA LOCKA FL DISTRIBUTION CENTE |
| USPS® Certified Mail | 12-26-2021 09:36 PM | [USPS] - PROCESSED THROUGH USPS FACILITY at OPA LOCKA FL DISTRIBUTION CENTE |
| USPS® Certified Mail | 12-27-2021 09:59 AM | [USPS] - CERTIFIED MAIL DELIVERED LEFT WITH INDIVIDUAL at FORT LAUDERDALE,FL |