

**Jeffrey Cohen**
Partner

1251 Avenue of the Americas
New York, New York 10020

**T**: 212-419-5868
**F**: 973-597-2400
**E**: jcohen@lowenstein.com

November 10, 2022

<u>**Via Email**</u>

Andrew Sorkin, Esq.
Latham & Watkins LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Email: andrew.sorkin@lw.com

Jordi Guso
Berger Singerman
1450 Brickell Avenue, Suite 1900
Miami, FL  33131
Email:  JGuso@bergersingerman.com

**Re:    Demand for Reconstitution of the Board of Directors of Debtor Entities in *In re Vital Pharmaceuticals, Inc., et al.* (the "<u>Debtors</u>" or "<u>Company</u>"), Case No. 22-17842 (PDR) (Bankr. S.D. Fla.) (the "<u>Chapter 11 Cases</u>")**

Dear Mr. Sorkin and Mr. Guso:

We write on behalf of our client, the Official Committee of Unsecured Creditors in these Chapter 11 Cases (the "<u>Committee</u>"), to advise you of the Committee's concerns regarding the impartiality and independence of two putative members of the Debtors' Board of Directors (the "<u>Board</u>"). Based on the Committee's findings to date in our ongoing investigation of the independence and impartiality of these members of the Board, the Committee demands that these members be removed from the Board,[1] and suggests that we come to an agreement as soon as possible regarding any new Board members.  We also ask, as discussed below, for certain additional material relating to the members in question in aid of the Committee's ongoing investigation.

In particular, the First Day Affidavit[2] states that the Debtors' Chief Executive Officer John H. Owoc intends to appoint Dr. Guillermo Escalante and Eric Hillman (together, the "<u>Members</u>") to the Board for each of the Debtor entities.  The Members were characterized in the First Day Declaration as "two members unaffiliated with the Company".  This characterization is false, and suggests that certain of the Company's individuals were unaware of material information when preparing the First Day Affidavit.  Specifically, the Committee's investigation to date has revealed

---

[1] Our understanding is that these individuals were appointed to the Board, albeit with some delay.  At the time of filing of the First Day Affidavit, the individuals were not yet appointed.

[2] *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 26] (the "<u>First Day Affidavit</u>").

---

Committee's Exhibit

**23**

that the Members are, in fact, closely affiliated with the Company and with Mr. Owoc personally. This defeats the whole purpose of adding additional members to the Board, previously comprised solely of Mr. Owoc; as a reconstituted Board was presumably meant to wrest sole control of the Debtors from Mr. Owoc and incorporate the views of qualified and independent professionals, which is key to the restructuring process. Our preliminary findings, which are already sufficient to disqualify the Members, are set forth below.

## Dr. Guillermo Escalante

Far from being unaffiliated, the Company has a history of paying Dr. Escalante personally for various services. In connection with the trial and arbitration involving Orange Bang, Inc. ("Orange Bang") and Monster Energy Company ("Monster"), which ended disastrously for the Company, the arbitrator noted that the Company paid Dr. Escalante to act as "its most important expert" on the question of whether the product at issue was "creatine-based"—a claim that was adjudicated during the litigations to be specious.[3] The arbitrator also observed, to Dr. Escalante's discredit, that he "made some very significant admissions, some of which can only be characterized as **stunning** and not helpful in advancing [the Company's] position in the case . . . ."[4] Indeed, in those litigations, both Orange Bang and Monster raised similar concerns about Dr. Escalante's ability to act as an unbiased and untainted "expert." Specifically, Orange Bang and Monster raised issues of bias because Dr. Escalante had rendered services to the Company as an influencer and promoter of the Company's products.[5] At the recent trial on September 20, 2022, Dr. Escalante himself testified that he had worked as a consultant for the Company on "an on-and-off basis" for three years.[6] He also testified that he previously served as an "expert" on creatine on behalf of the Company in another matter.[7] In addition, Dr. Escalante has posted on multiple occasions on social media extolling the Company, including making claims found by the arbitrator or court to be false.[8] We presume Dr. Escalante was paid for his "expert" testimony and promotion of the Company and ask for all documents related to payments to Dr. Escalante or any person or entity affiliated with Dr. Escalante by the Debtor or Mr. Owoc, or any person or entity under Mr. Owoc's control, within the last five years.

Separate and apart from testifying for and promoting the Company, Dr. Escalante is also, evidently, a paid consultant to the Company. In August 2020, Dr. Escalante, with various other authors, published an article on the effects of certain of the Company's products.[9] The article expressly admits that Dr. Escalante is a paid consultant and has served as a "scientific consultant

---

[3] *See Monster Energy Company v. Vital Pharms., Inc., et al.*, Case No. EDCV18-1882-JGB (C.D. Cal.) (Docket No. 732-1 at 52 n.11).
[4] *Id.* at 51 (emphasis in original).
[5] *Id.* at 52 n.11.
[6] *See* Trial Tr. at 175:6–14, Sept. 20, 2022, *Monster Energy Company v. Vital Pharms., Inc., et al.*, Case No. EDCV18-1882-JGB (C.D. Cal.).
[7] *Id.* at 176:22–25.
[8] Dr. Escalante's social media posts are attached hereto as **Exhibit A**.
[9] *See* Patrick S. Harty, et al, *Effects of Bang® Keto Coffee Energy Drink on Metabolism and Exercise Performance in Resistance-Trained Adults: A Randomized, Double-blind, Placebo- controlled, Crossover Study*, J. of the Int'l Society of Sports Nutrition (2020).



for the Company."[10]  Mr. Owoc is well-aware of this; he has posted to his Instagram account about Dr. Escalante and a "study" he purportedly performed on the Company's products.[11]

These facts disqualify Dr. Escalante from the Board.  Regardless of whether Dr. Escalante has been appointed to the Board as of the date of the letter, we ask for documents sufficient to identify all services, including "consulting" services, provided by Dr. Escalante to the Company, Mr. Owoc, or any persons or entities under their control, during the past five years, as well as all communications between Dr. Escalante and Mr. Owoc during the same time period, so that we can ensure our investigation is complete.

**Eric Hillman**

Mr. Hillman served as Chief Executive Officer of Europa Sports Partners, LLC ("Europa").  It is undisputed that Europa has acted—and may still be acting as—a major distributor of the Company's BANG energy drinks.[12]  Although it is unclear from publicly available information if Mr. Hillman is still employed at Europa, the fact that the Company previously employed and paid a company under Mr. Hillman's leadership puts Mr. Hillman's ability to make independent and unbiased decisions about the Company into question.

Perhaps more concerning, Mr. Hillman also has a personal relationship with Mr. Owoc.  During a trial in 2020 involving the Company, Monster, and Reign Beverage Company, LLC, Mr. Owoc testified that Mr. Hillman is "a buddy of [his who] owns Europa Sports, which is the biggest sports nutrition distributor in the world.  We've done probably hundreds of millions of dollars with them."[13]  Mr. Owoc also listed Mr. Hillman as a personal reference on his application for the Company's liquor license in Georgia in August 2021.[14]  And, like Dr. Escalante, Mr. Hillman has promoted the Company on social media on multiple occasions, repeating claims found to be false during the litigations, and engaging in public conversations on social media with Mr. Owoc in support of the Company, during one of which Mr. Owoc discusses going to Mr. Hillman's home.[15]

These facts, taken together, are again *per se* disqualifying.  However, regardless of whether Mr. Hillman has been appointed to the Board as of the date of the letter, we ask for all communications between Mr. Hillman and Mr. Owoc from the last five years, as well as any documentation of payments to Mr. Hillman or any entity or person under his control from the Debtors, Mr. Owoc, or any person or entity under their control.

---

[10] *Id.*

[11] Mr. Owoc's social media posts are attached hereto as **Exhibit B**.

[12] *Imran v. Vital Pharms., Inc.*, Case No. 18-cv-05758-JST, 2019 WL 1509180, at *4 (N.D. Cal. Apr. 5, 2019).

[13]  Trial Tr. at 1050:13–15, Sept. 1, 2020, *Monster Energy Company and Reign Beverage Co., LLC*, Case No. 19-60809-CIV-RKA (S.D. Fla.).

[14] *Agenda Item Report* (Nov. 8, 2022, 9:56 PM), https://douglasville.civicweb.net/document/57748/Consider%20a%20request%20for%20the%20alcoholic%20beverages%20.pdf?handle=E8EF026317FF4B6A9AAB3E3F92837333.

[15] *See* **Exhibit B**.



Again, we do not understand, in light of the foregoing, how the Members were characterized as "unaffiliated" in the First Day Affidavit; we presume that Mr. Owoc had not disclosed his close relationships to the Members before this affidavit was presented to the Court. In any event, in light of the relationships between the Members and the Debtors and Mr. Owoc, it is indisputable that the Members are unable to serve as impartial members of the Debtors' Board who will make decisions to maximize the value of the Debtors' bankruptcy estates for the benefit of all creditors. There can be no doubt, at a minimum, that their appointment to the Board creates an appearance of impropriety that will be detrimental to the restructuring process. It is clear that Mr. Owoc is trying to hijack the restructuring process and does not understand or respect the necessity of having truly *independent* members of the Board.

Finally, in addition to the foregoing document requests, and to assist in our discussion regarding the reconstitution of the Board, we request that you provide us with copies of Dr. Escalante's and Mr. Hillman's *curriculum vitae* and the due diligence that was performed on the Members prior to their respective appointments, including any due diligence that led to the characterization of the Members as "unaffiliated."

**Recommended Resolution**

The Committee also has concerns regarding Steve Panagos's lack of authority as sole member of the Restructuring Committee (defined in the First Day Affidavit) to bind the Company in restructuring matters. While we understand Mr. Panagos is in fact independent, under the current structure, he is only permitted to provide advice to the Board—which is evidently controlled by Owoc and the Members. To resolve the issues outlined in this letter, we recommend: (1) the appointment of two different and ***independent*** board members; and (2) for those individuals to join the Restructuring Committee, which should have binding authority, and work with Mr. Panagos in steering the Company through its restructuring.

We look forward to hearing from you concerning the demands in this letter and hope that we can resolve them without judicial intervention.

Very truly yours,

*/s/ Jeffrey Cohen*
Jeffrey Cohen

Enclosures:
Dr. Escalante's social media posts (**Exhibit A**)
Mr. Owoc's social media posts (**Exhibit B**)

cc:
Latham & Watkins LLP
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071



November 10, 2022

Email: amy.quartarolo@lw.com
Attn: Amy Quartarolo, Esq.
(via email)

Berger Singerman LLP
313 N. Monroe Street Suite 301
Tallahassee, FL 32301
Email: mniles@bergersingerman.com
Attn: Michael Jordan Niles
(via email)



# EXHIBIT A

Instagram post regarding scientific study in support of Bang



Date: August 10, 2020

Instagram post on August 16, 2019 regarding monthly shipment from Bang and consulting for the Company



Date: August 16, 2019

Instagram post advertising new Bang Energy flavor, while defending Bang in the comments



Date: April 5, 2019

Instagram post advertising Bang and stating own discount code



Date: January 18, 2019

# EXHIBIT B

Instagram post referencing Dr. Escalante's study he purportedly performed on the Bang Keto coffee product line



Date: September 29, 2020

Jack Owoc tagged Eric Hillman in an Instagram post promoting Bang.  Jack comments on the post to another Instagram user:  "Meet me [Jack] at Hillman's [house] later this week!"



Date: July 17, 2016