Page 1

1              UNITED STATES BANKRUPTCY COURT

               SOUTHERN DISTRICT OF FLORIDA

2

3

4   IN RE:                    CASE NO. 22-17842-PDR

5   VITAL PHARMACEUTICALS, INC.,

6              Debtor.

    _____/

7

8              ECF #341, 418, 431

9              December 1, 2022

10             The above-entitled cause came on for hearing

11  before the Honorable Peter D. Russin, one of the Judges in

12  the UNITED STATES BANKRUPTCY COURT, in and for the

13  SOUTHERN DISTRICT OF FLORIDA, at 299 E. Broward Blvd.,

14  Fort Lauderdale, Broward County, Florida, on December 1,

15  2022, commencing at or about 2:30 p.m., and the following

16  proceedings were had.

17

18

19

20

21

22        Transcribed from a digital recording by:

               Cheryl L. Jenkins, RPR, RMR

23

24

25

Page 2

1
                    APPEARANCES VIA ZOOM:
2
                     BERGER SINGERMAN, by
3                     JORDI GUSO, Esquire
4                    MICHAEL NILES, Esquire
                            and
5                    LATHAM & WATKINS, by
                      LIZA BURTON, Esquire
6                   On behalf of the Debtor
7
                      AKERMAN, LLP, by
8                 MICHAEL I. GOLDBERG, Esquire
                  On behalf of Monster Energy
9
10                     SEQUOR LAW, by
                     JUAN MENDOZA, Esquire
11                          and
                     LOWENSTEIN SANDLER, by
12                   ERIC CHAFETZ, Esquire
                   On behalf of the Official
13             Committee of Unsecured Creditors
14
15          MARKOWITZ RINGEL TRUSTY & HARTOG, by
                    JERRY MARKOWITZ, Esquire
16                          and
                       LEWIS ROCA, by
17                 ROBERT CHARLES, Esquire
                On behalf of Faith Technologies
18
19          GENOVESE JOBLOVE & BATTISTA, by
                    PAUL BATTISTA, Esquire
20                 On behalf of Jack Owoc
21
                 J. STEVEN WILKES, Trial Attorney
22                HEIDI FEINMAN, Trial Attorney
                   Office of the U.S. Trustee
23                  Department of Justice
24
25

1

CONTINUED ZOOM APPEARANCES

2

3                    FURR & COHEN, by
                  MARC BARMAT, Esquire
4        On behalf of American Bottling Company

5

6                    FRANK/GECKER, by
                JEREMY KLEINMAN, Esquire
7            On behalf of PepsiCo, Inc.

8

              FENDER BOLLING AND PAIVA, by
9               G. STEVEN FENDER, Esquire
              On behalf of Orange Bang, Inc.

10

                      AGENTIS, by
11               JESSE CLOYD, Esquire
            On behalf of Stellar Group, Inc.

12

13                   ALSO PRESENT
14                  John DiDonato
15      ECRO - Electronic Court Reporting Operator

16

                    - - - - - - -

17

18

19

20

21

22

23

24

25

1              THE COURT:  The next matter is Vital
2    Pharmaceuticals, 22-17842.
3              Appearances, please.  I'll just start at the
4    top of the Zoom box.  Mr. Wilkes.
5              MR. WILKES:  Good afternoon, your Honor.
6    J. Steven Wilkes for the United States Trustee, Region 21.
7              THE COURT:  Mr. Cloyd.
8              MR. CLOYD:  Good afternoon, your Honor.
9    Jesse Cloyd on behalf of Stellar Group, Inc.
10             THE COURT:  If your camera is not on, I'm
11   not going to call on you, just so you know.
12             Ms. Feinman.
13             MS. FEINMAN:  Good afternoon, your Honor.
14   Heidi Feinman for the U.S. Trustee, and I'm merely
15   listening in to the hearing today.  Thank you.
16             THE COURT:  Thank you.
17             Mr. Guso.
18             MR. GUSO:  Good afternoon, your Honor.
19   Jordi Guso and Michael Niles, of Berger Singerman, along
20   with the Latham & Watkins firm, your Honor.  We are
21   counsel to the debtors, and our client representative,
22   your Honor, John DiDonato, the debtor's chief
23   transformation officer, is also appearing via Zoom this
24   afternoon, your Honor.
25             THE COURT:  Thank you.

1              Mr. Charles.

2              MR. CHARLES:  Good afternoon, your Honor.

3    Rob Charles, Lewis Roca.  Jerry Markowitz' firm is local

4    counsel with our firm to Faith Technologies, Incorporated.

5              THE COURT:  Mr. Mendoza.

6              MR. MENDOZA:  Good afternoon, your Honor.

7    Juan Mendoza on behalf of the official committee of

8    unsecured creditors.

9              THE COURT:  Thank you.

10             Mr. Battista.

11             MR. BATTISTA:  Good afternoon, Judge.

12   Paul Battista for Jack Owoc, O-w-o-c.

13             THE COURT:  Mr. Markowitz.

14             MR. MARKOWITZ:  Good afternoon, your Honor.

15   Jerry Markowitz for Faith Technologies.

16             THE COURT:  Ms. Burton.

17             MS. BURTON:  Good afternoon, your Honor.

18   Liza Burton of Latham Watkins on behalf of the debtors.

19             THE COURT:  Mr. Barmat.

20             MR. BARMAT:  Good afternoon, your Honor.

21   Marc Barmat on behalf of -- local counsel, on behalf of

22   American Bottling Company.

23             THE COURT:  And Mr. Chafetz.

24             MR. CHAFETZ:  Eric Chafetz, of Lowenstein

25   Sandler, on behalf of the official committee of unsecured

Page 6

1   creditors.

2               THE COURT:  Any other appearances?

3               (No verbal response.)

4               THE COURT:  All right.  So, we have a motion

5   to authorize and approve a KERP plan.  I assume, Mr. Guso,

6   will you handle that.

7               MR. GUSO:  May it please the Court.  Good

8   afternoon again, your Honor.  Jordi Guso for the debtors.

9               Your Honor, Ms. Burton will be presenting

10  the motion to approve the key employee retention plan.

11              THE COURT:  See what happens when I assume.

12  Ms. Burton.

13              MS. BURTON:  Thank you, your Honor.  Good

14  afternoon.  For the record Liza Burton of Latham & Watkins

15  on behalf of the debtors.

16              Before I get started, your Honor, I'd like

17  to submit the declaration of John C. DiDonato -- the

18  debtor's chief transformation officer -- in support of the

19  motion into evidence.  The declaration is attached as

20  Exhibit B to the motion, and John DiDonato is available

21  via Zoom for cross-examination if necessary.

22              THE COURT:  All right.  Thank you.

23              Any objections to the submission of

24  Mr. DiDonato's affidavit, or declaration?

25              (No verbal response.)

1                    THE COURT:  Any objection to the proffer of

2    that testimony?

3                    (No verbal response.)

4                    THE COURT:  All right, anyone wish to

5    cross-examine Mr. DiDonato?

6                    (No verbal response.)

7                    THE COURT:  All right.  Mr. DiDonato, you

8    can relax, the declaration is admitted.

9                    Go ahead.

10                   MS. BURTON:  Thank you, your Honor.

11                   Your Honor, I will be presenting the

12   debtor's motion for entry of an order authorizing and

13   approving the employee retention plan.  The motion was

14   filed on November 14th, and that's at Docket 341.

15                   Yesterday the debtors filed a red-line of a

16   revised proposed order against the form of order that was

17   attached to the KERP motion, and that's at Docket 441, and

18   we have received no formal objections to entry of the

19   order.

20                   THE COURT:  What's the origin of the

21   red-lining, it was an agreement of the parties, or where

22   does that come from?

23                   MS. BURTON:  Yes, yes, your Honor, it was an

24   agreement between the debtors and the committee, the major

25   substantive change with respect to payment that go to KERP

1   participants who have been found by a court to have

2   conducted any unlawful or otherwise prohibited activity,

3   and clarify that those KERP participants not be entitled

4   to future payments on the KERP, under the KERP, and that

5   any payments received by them will be disgorged.

6                  THE COURT:  Okay.  So, I'm just trying to

7   understand what that means, under what circumstances might

8   they be found a Court of competent jurisdiction to have

9   participated in any lawful or otherwise prohibitive

10  activity?

11                 It just seems -- I'm not sure how that would

12  be enforced, or what Court that would occur in, or why

13  that would even occur, but anyway, if that's language

14  you-all have agreed to, I have no problem with it, but is

15  there a particular problem that that language is meant to

16  address?

17                 MS. BURTON:  Yes, your Honor.  Certain of

18  the KERP participants are defendants in ongoing

19  litigation, and if they are found, you know, in connection

20  with that litigation to be guilty, their KERP payments

21  will be disgorged, and no future payments will be granted

22  to them under the KERP.

23                 THE COURT:  I see.  All right, and that's

24  pending litigation that's not been stayed in this

25  proceeding as we speak?

1                   MS. BURTON:  That's my understanding.

2                   THE COURT:  Okay.  All right.  Anyone wish

3     to speak on the language of the red-lined order at 441?

4                   (No verbal response.)

5                   THE COURT:  All right.  Hearing none, then

6     the Court will enter that order.  I assume -- who will we

7     receive it from, Ms. Burton?

8                   MS. BURTON:  I believe you'll receive it

9     from Berger Singerman.

10                  MR. GUSO:  That's correct, your Honor, we

11    will upload the order this afternoon.

12                  Your Honor, again, Jordi Guso for the

13    debtors.

14                  THE COURT:  All right.  I hesitate to ask,

15    but does anybody have any other comments with respect to

16    the KERP motion?

17                  (No verbal response.)

18                  THE COURT:  All right.  Great.  That solves

19    that problem.

20                  The other -- there are two other matters

21    that I have on the calendar, one is at 418, which is an

22    expedited motion for its chief legal officer to appear

23    remotely via Zoom, filed by Mr. Charbonneau's office, and

24    then there is 431, which is an expedited motion for

25    custodian of records to appear remotely, filed by

1    Mr. Markowitz' office.

2                    So let's cover 418 first.  Who is speaking

3    on that matter?

4                    MR. CLOYD:  Your Honor, that would be me,

5    Jesse Cloyd, on behalf of Stellar Group, Inc.

6                    THE COURT:  All right.

7                    MR. CLOYD:  Our motion requests authority to

8    allow the chief legal officer of Stellar, Mr. Crafton, to

9    appear via Zoom at the evidentiary hearing scheduled for

10   next week before this Court.

11                   Since filing the motion we have reached an

12   agreement with the debtor, who has stipulated to the

13   admissibility of Stellar's exhibits at the upcoming

14   evidentiary hearing.

15                   We do not anticipate calling Mr. Crafton on

16   direct examination, but would ask the Court to grant our

17   motion in the chance that we need to call him as a

18   rebuttal witness, your Honor.

19                   THE COURT:  All right, and how are you

20   addressing the issues presented by Rule 43?

21                   MR. GUSO:  Your Honor, may I be heard,

22   your Honor?

23                   THE COURT:  Sure.

24                   MR. GUSO:  Your Honor, Jordi Guso for the

25   debtors, again.

1           Your Honor, our stipulation with Mr. Cloyd's

2    client is that the three exhibits which are referenced in

3    the motion that is before you, we're stipulating to the

4    authenticity, and that they can be admitted into evidence,

5    not for the truth of the matter asserted in those

6    documents, but solely as evidence that they were filed.

7           The documents, your Honor, relate to the

8    assertion of a mechanic's lien on the facility owned by

9    one of the debtors in Phoenix, Arizona, and two pleadings

10   that were filed in connection with the lien foreclosures

11   that were pending prior to the commencement of the cases

12   before you, if that is responsive to your Honor's

13   question.

14           THE COURT:  Well, it is at some level,

15   because it goes to one of the issues in Rule 43.

16           And, Mr. Cloyd, what I'm trying to address

17   here is, the statute requires witnesses, even if you're

18   calling them on rebuttal, live witnesses to be live in

19   court as a general matter.

20           For cause, and compelling circumstances,

21   with appropriate safeguards, the Court can permit

22   testimony in open court by contemporaneous transmission

23   from a different location, and I'm open to that, but the

24   rule requires good cause, compelling circumstances, and

25   appropriate safeguards.

1                    So what I'm asking you is that if you do

2      need to call this witness, and it sounds like from

3      Mr. Guso's perspective you may, because the documents are

4      not being admitted for the truth of the matter, so there

5      might be some testimony that might be required, give me

6      some understanding of what you intend to do with respect

7      to compliance with Rule 43.

8                    MR. CLOYD:  Thank you, your Honor.

9                    We will make Mr. Crafton available for the

10     duration of the hearing.  He'll be able to appear via

11     Zoom, and if anyone wants to question Mr. Crafton, he will

12     be available, your Honor.

13                    THE COURT:  All right.  That doesn't really

14     address the issue, because what's important here is that

15     the Court can trust that the testimony being provided by

16     Mr. Crafton is his testimony, that he's not being assisted

17     by any third party by virtue of some form of communication

18     the Court is unaware of, and that -- and those are the

19     type of safeguards that are suggested, that he will -- I

20     mean, just from a practical perspective, will have a solid

21     connection, obviously an Internet connection so that we

22     don't get interrupted, and things of that sort.

23                    And I'm happy to do that -- I'm not actually

24     happy to do it, because, frankly, evidentiary hearings

25     need live witnesses, and I'm going to tell everybody now,

1   the Court is going to be far less willing going forward to

2   have live witnesses that are not in person in court.

3            All of the bankruptcy judges in the Southern

4   District generally feel the same way, and while, yes, we

5   have to measure the inconvenience to the parties, the

6   expense, et cetera, against the testimony that's going to

7   be offered, that often entails understanding the depth of

8   the testimony that's going to be necessary, whether

9   cross-examination is likely to be lengthy, and whether the

10  issues presented are complicated, and ones that are better

11  heard in open court in person.

12           So tell me a little bit about that,

13  Mr. Cloyd.

14           MR. CLOYD:  Thank you, your Honor.

15           We will assure that Mr. Crafton is isolated

16  in his own conference room.  Given the Court's mandates

17  going forward, we will make sure that on a going-forward

18  basis we will have live witnesses for this Court,

19  your Honor, and we are willing to take whatever safeguards

20  that the debtor and this Court would like regarding the

21  witness' testimony coming on Tuesday.

22           THE COURT:  Well, it's for you to offer

23  those safeguards, I'm not going to dictate what they are.

24  But as long as your witness is alone in a room, and is not

25  receiving communications from any third party in any

1   manner, that would obviously be violative of his

2   obligation to testify truthfully and on his own accord, I

3   don't really have any other issues, unless anyone else

4   does.

5              You said there was something about a

6   scheduling conflict, but the scheduling conflict was not

7   described.  What is that scheduling conflict?

8              MR. CLOYD:  Your Honor, I apologize, I'd

9   have to check with the client on that.

10             THE COURT:  Okay, and how long do you

11   anticipate your client -- or Mr. Crafton testifying, if

12   called on rebuttal?

13             MR. CLOYD:  If called, I --

14             THE COURT:  And remember, it may be

15   necessary, in light of Mr. Guso's caveat, that the

16   documents are being admitted not for the truth of the

17   matter asserted.

18             MR. CLOYD:  Thank you, your Honor.

19             As far as rebuttal goes, I can't say how

20   long he would be a rebuttal witness without seeing the

21   testimony that we rebutted, but as far as what the scope

22   of his testimony would be, it's a very narrow issue

23   regarding the lien on the property in Arizona.  I don't

24   anticipate our direct, if required, or even a rebuttal

25   would be more than, I would say, 30 minutes.

```
 1                    THE COURT:  Okay.  All right.  Mr. Guso,
 2    what is your understanding of what -- I guess it's hard to
 3    anticipate, as Mr. Cloyd suggested, but are you
 4    anticipating any greater amount of time, or any more
 5    complicated an issue to be testified to by Mr. Crafton?
 6                    MR. GUSO:  We do not presently, your Honor.
 7                    THE COURT:  Okay.  All right.  Any other --
 8    anyone else wish to be heard on this issue?
 9                    (No verbal response.)
10                    THE COURT:  All right.  The Court will grant
11    the motion, and just so you-all know, this is becoming a
12    very hot topic of discussion in Chambers, as well as
13    amongst many judges, District Court level judges,
14    Bankruptcy Court judges, it's just become a very hot topic
15    because, you know, there is a divergence of views with
16    respect to how much of a Zoom court we should all have
17    versus a live court, and as the pandemic fades into the
18    background, although, frankly, you could argue that it's
19    not fading into the background, and I'm certainly one of
20    those that thinks safety is critically important, and Zoom
21    is here to stay, effectively, we get it, but this is a
22    court of law, and Rule 43 does require live testimony, and
23    a good reason not to be in the courtroom.
24                    So, just be aware of that, and that's --
25    Mr. Cloyd, since you're the first person that filed such a
```

Page 16

1    motion that I've heard, you're the guinea pig, sorry about
2    that, but --
3                    MR. CLOYD:  It's okay, your Honor.
4                    THE COURT:  -- you know, the points need to
5    be made that if you're going to have an evidentiary
6    hearing, you should absolutely expect to be here live, in
7    person, with your witnesses, and really pay close
8    attention to what the circumstances would be seeking
9    relief under Rule 43, and they need to be significant.  So
10   just be aware of all of that.
11                   So the next guinea pig is Mr. Markowitz.
12   What do you have to say?
13                   MR. MARKOWITZ:  Thank you, your Honor.  I
14   will defer my guinea pig-ness to Mr. Charles.
15                   THE COURT:  All right.  Mr. Charles.
16                   MR. CHARLES:  Good afternoon, your Honor.
17                   If you would reply in your mind the same
18   conversation you've had with counsel for Stellar, I've
19   heard it, we understand it, we agree with it.  The witness
20   would be, as by way of an offer -- by the way, I cannot
21   imagine how I'm going to call a witness on redirect, who
22   I've never prepared, who is sitting by himself in an
23   office on Zoom, with only the three admitted exhibits, to
24   tell you anything other than the claim of the lien is
25   valid, but in any event --

1              THE COURT:  Well, all the more reason to

2    have him here, for a prep reason, but anyway, go ahead.

3              MR. CHARLES:  Well, actually I don't think

4    that's really going to be the issue in your court on

5    Tuesday, but we'll take that up on Tuesday.

6              So, under the circumstances of this motion

7    and this context, if the Court would permit the same

8    safeguards, we would make the same request as Stellar, the

9    witness would be alone in an office, not communicating

10   with anyone else about the case, and have only accessible

11   the exhibits that have been marked in the case, which I'll

12   personally provide.

13             THE COURT:  All right, and that should be

14   the same for you, Mr. Cloyd, that the only things

15   available would be the exhibits premarked in the case.

16             MR. CLOYD:  Understood, your Honor.

17             THE COURT:  Unless, I mean, I suppose there

18   are rebuttal exhibits that are potential but, you know,

19   and that's fine, since no one knows what those will be,

20   but, all right, I think that that's certainly reasonable.

21             And what is the reason?  I guess it's mostly

22   expense and inconvenience, Mr. Charles?

23             MR. CHARLES:  Yes, your Honor.  This, the

24   particular custodian wears a number of hats at the client,

25   which is not a large contractor, and the notion of killing

1  two days of his life to authenticate documents didn't make

2  sense.

3              We appreciate that counsel for the debtors

4  have agreed to the admissibility of the exhibits,

5  appreciate that they're not admitting the exhibits for the

6  purposes of the truth of the matter asserted, and I think

7  we can live with that within the context of the hearing on

8  Tuesday.

9              THE COURT:  All right.  Great.

10             All right.  So anyone else wish to be heard

11 on this matter?

12             (No verbal response.)

13             THE COURT:  All right.  The Court will grant

14 that motion as well, and please get me your orders in

15 quickly so they can be entered, and we won't have an issue

16 with that, as I have had in other matters, as you may have

17 overheard prior to this hearing, but anything else?  I

18 think that's everything for today, is that right?

19             MR. GUSO:  Yes, sir, that's all that's

20 scheduled for hearing this afternoon, your Honor.

21             THE COURT:  All right.  At the risk of

22 asking the wrong person, Mr. Guso, any interest in

23 previewing what's likely to happen on the 6th?  What's it

24 look like?

25             MR. GUSO:  Thank you, your Honor.

```
 1                    THE COURT:  Will we be here all day?  Any
 2   chance of an agreement?  You know, hope springs eternal.
 3                    MR. GUSO:  Your Honor, here is the report I
 4   can offer the Court.  Your Honor, all the parties continue
 5   to prepare for next Tuesday's hearings.  The debtors will
 6   file their reply to the objections tomorrow.  The debtors
 7   are circulating a draft stipulation of facts consistent
 8   with the order.  We hope to finalize those tomorrow as
 9   well.
10                    Discussions regarding potential resolutions
11   of the objections, your Honor, have started.  They are
12   ongoing.  In fact, some of those discussions are likely
13   taking places as I'm addressing the Court, which may
14   explain why Mr. Sorkin is not with us this afternoon, and
15   while waiting for the case to be called, your Honor, there
16   were a series of emails going back and forth by the
17   parties.  So I can represent to your Honor that, in fact,
18   discussions are ongoing.
19                    And, your Honor, in light of the fact that
20   those discussions are ongoing, I'd prefer not to
21   elaborate --
22                    THE COURT:  Oh, I'm not --
23                    MR. GUSO:  -- regarding the issues --
24                    THE COURT:  -- looking --
25                    MR. GUSO:  -- framed by the objections.
```

1              THE COURT:  I am not looking for any
2    elaboration on the discussions themselves.
3              MR. GUSO:  Yep.
4              THE COURT:  I'm just looking to hear that
5    they're happening, which is nice to hear, but --
6              MR. GUSO:  They are, your Honor, even over
7    the holiday weekend, before some of the objections were
8    filed, by way of preview.
9              We look forward to seeing the Court on
10   Tuesday, hopefully with more regarding resolution of the
11   objections, your Honor, and are prepared to otherwise put
12   on our case, to the extent any of the issues can't be
13   resolved.
14             I think that your Honor has appropriately
15   set aside one day for the hearing.  I'm cautiously
16   optimistic that we can get it done in one day or less, and
17   we renew our commitment that I made to you at the last
18   hearing, that while we may not get their consensually, we
19   certainly will make every effort to do so in advance of
20   the hearing.
21             THE COURT:  All right.  Fair enough.  Thank
22   you for that.
23             Mr. Wilkes.
24             MR. WILKES:  Thank you, your Honor.
25   J. Steven Wilkes for the United States Trustee.

1          Proceeding cautiously, as the Court stated

2     to you, Mr. Guso, in a preview of next week's hearing, the

3     United States Trustee does want to bring up a point of

4     order with the Court due to an arising conflict between

5     two local bankruptcy rules that play into next week's

6     hearing.  Those rules are Bankruptcy Local Rule 9014-1(b)

7     and Bankruptcy Local Rule 5005-1(f), and I'll explain it

8     fully as I go through.

9               THE COURT:  Well, hold on one second, and

10    let me -- let me pull up those rules, or at least --

11              MR. WILKES:  Affirmative, your Honor.

12              THE COURT:  -- one at a time.

13              Which rule again?  Say it again, 9014 --

14              MR. WILKES:  9014-1(b).

15              THE COURT:  All right.  Let me start there.

16              MR. WILKES:  And for the parties that don't

17    have that available, that's basically the rule that

18    provides respondents a 14-day deadline to file a written

19    response to a contested matter.

20              THE COURT:  Okay.

21              MR. WILKES:  And the conflict arises in

22    Bankruptcy Local Rule 5005-1(f), which states that written

23    responses shall be filed no later than 4:30 in the

24    afternoon two business days prior to the hearing.

25              The issue comes to point here on Docket

Page 22

1    Number -- Docket Entry 408, which is the joint motion to

2    appoint a creditors' committee, which was filed on

3    November 27, 2022, notice for December 6th hearing on

4    November 28, 2022, at Docket Number 409 by the clerk's

5    notice of hearing.

6                    Under 28 USC 2075, a substantive right

7    provided cannot be abridged or modified by local rules.

8                    Federal Rule of Bankruptcy Procedure 9014(a)

9    provides that unless the Court directs otherwise, written

10   responses are not required.  Here the Court has directed

11   otherwise by enacting Bankruptcy Local Rule 9014-1(b),

12   affirmatively stating that all respondents have 14 days to

13   file an answer.

14                    THE COURT:  So you were late from day one, I

15   guess.

16                    MR. WILKES:  Correct, your Honor.

17                    THE COURT:  I get it.

18                    MR. WILKES:  So, when the rubber hits the

19   road on this one, either Bankruptcy Local Rule 5005-1(f)

20   cannot be applicable to the December 6th hearing on the

21   motion to appoint a second committee or --

22                    THE COURT:  Well, I get it.  So can we

23   attack it --

24                    MR. WILKES:  Okay.

25                    THE COURT:  -- a slightly different way,

1    Mr. Wilkes?

2                    MR. WILKES:  Affirmative, your Honor.

3                    THE COURT:  I think the intention here from

4    the Court was there was some -- let me just catch up with

5    you on this issue for a moment.  Even though this is not

6    set for today, I don't mind dealing with it, and committee

7    counsel is here, correct?  Who is committee counsel?

8                    MR. GUSO:  Yes, your Honor, Mr. Chafetz is

9    present.

10                   THE COURT:  Mr. Chafetz?  Okay.  Great.

11                   MR. CHAFETZ:  Yes, your Honor.

12                   THE COURT:  All right, and if you have a

13   problem with proceeding in this manner, just let me know

14   that, and we can certainly set it for a separate time to

15   consider the briefing schedule, but I'm trying -- I'm

16   looking at the docket, and the motion filed by the

17   committee -- actually I'm in the wrong case.  Hold on one

18   second.  I'm just trying.

19                   MR. WILKES:  This is Docket Number 408,

20   your Honor.

21                   THE COURT:  Yes, I'm trying to recreate what

22   led to the quick setting of the hearing, or relatively

23   quick.

24                   MR. CHAFETZ:  Your Honor, this is Eric

25   Chafetz.

Page 24

1              I believe in the actual motion for the

2    appointment of the second committee, in the first one, the

3    first page of that motion, the movants requested the

4    hearing to be on the 6th, and then the court order was

5    entered, I believe, a day or so afterwards.  I may be

6    getting the sequencing slightly incorrect, but I believe

7    that the request by the movants is what necessitated or

8    led to the hearing date.

9              THE COURT:  And the reason you wanted the

10   hearing, Mr. Chafetz --

11             MR. CHAFETZ:  No.

12             THE COURT:  I'm sorry?

13             MR. CHAFETZ:  No, your Honor, we represent

14   the official committee --

15             THE COURT:  Oh, so who represents --

16             MR. CHAFETZ:  -- of unsecured creditors.

17             THE COURT:  -- Monster here?

18             MR. CHAFETZ:  It's Monster and a group of

19   other creditors, I'm not sure if any of them are actually

20   on the line right now.

21             THE COURT:  Ah, Mr. Goldberg is here.

22             MR. CHAFETZ:  Oh, okay.

23             THE COURT:  Mr. Goldberg.

24             MR. GOLDBERG:  Yes, your Honor.

25             THE COURT:  Mr. Goldberg, do you want to

1   make an appearance?  I know you didn't make one earlier,

2   and I don't mean to --

3                    MR. GOLDSTEIN:  Yes, I wasn't planning on

4   this issue being raised, your Honor, to be honest with

5   you, and I don't know if co-counsel is on, but --

6                    THE COURT:  Well, just so you know, just so

7   you know, Mr. Goldberg, I'm looking at this as a

8   scheduling issue and a timing issue.

9                    MR. GOLDBERG:  Sure.

10                   THE COURT:  I'm not looking at this in any

11  way substantively.  So, if that --

12                   MR. GOLDBERG:  Okay, but it --

13                   THE COURT:  -- eases some concern.

14                   MR. GOLDBERG:  Yes, your Honor, I would

15  appreciate, though, before the U.S. Trustee essentially is

16  raising a motion to continue, through procedural

17  arguments, that he would have called us and given us a

18  heads up, but that being said, I'll make an appearance.

19  Michael Goldberg, Akerman, on behalf of Monster Energy

20  Company, your Honor.  I'm available to answer your

21  questions.

22                   THE COURT:  All right.  So I think

23  Mr. Chafetz has helped me here recall what happened.  In

24  the motion itself, there was a request for the hearing to

25  be on December 6th.

1              I had the impression that it was going to be

2    somewhat preliminary but, Mr. Goldberg, are you saying

3    that the hearing on the 6th would be determinative of the

4    issue because there is some urgency to it, and I can

5    certainly understand why there might be urgency, just to

6    have the committee formed so that it could participate in

7    these matters.

8              Although, frankly, those that would likely

9    be on the committee are already in the case and

10   represented by counsel.  So I'm not sure that's the case.

11             It sounds to me like more of an attorney's

12   fee issue at the end of the day, but again, it's a

13   standing issue and things of that sort.  So, I'm not, I'm

14   not jumping to any conclusions, but what is the need --

15             MR. GOLDSTEIN:  Sure.

16             THE COURT:  -- to have the hearing as

17   quickly as you've requested it?

18             MR. GOLDBERG:  Your Honor, this case is on a

19   very fast track based on the deadlines and the DIP,

20   requiring very consequential things to take place, and we

21   find it very urgent to have a second committee, with the

22   majority of the creditors in this case, the non-trade

23   creditors, appointed so they can be organized, have

24   bylaws, and put the things necessary in place that a

25   committee would put in place so that they can adequately

1    represent a, what we would call, major constituent in this

2    case, that outnumbers the trade creditors, multiples, I

3    think it's eight to one.

4                    THE COURT:  I understand, I reviewed the

5    motion.  All right.  So I get it.

6                    Mr. Wilkes, what relief are you asking for,

7    if any today, and what is your general concern about going

8    forward on the 6th?

9                    MR. WILKES:  Your Honor, the United

10   States Trustee is not asking for a continuance.  To the

11   extent Mr. Goldberg thought the United States Trustee was

12   asking for a continuance, the United States Trustee is not

13   asking for a continuance.

14                   There is a conflict between local rules that

15   cause substantive rights afforded to parties to be

16   terminated, and that is contrary to 28 USC 2075.

17                   The United States Trustee understands that

18   this is a rare occasion that it occurs in, but when it

19   does occur, it needs to be addressed, and this is the

20   first time that it has occurred --

21                   THE COURT:  Well, I don't mean to interrupt

22   you --

23                   MR. WILKES:  -- to where --

24                   THE COURT:  -- but are you just looking to

25   have relief from the Court to file a response in a timely

1   fashion prior to the hearing, is that what this boils down

2   to?

3              MR. WILKES:  The United States Trustee

4   anticipates being able to file their response prior to the

5   hearing, and anticipates possibly being able to meet the

6   5005-1(f) deadline, but the other parties, as it's noted

7   by the debtors' statement, at Docket Number 416, need to

8   be able to rely on the substantive right provided by the

9   Southern District of Florida's Bankruptcy Local

10  Rules 9014-1(b), and file a response within the 14 days it

11  affords them, without being held in the position that

12  5005-1(f) puts them in, of having that response stricken.

13             THE COURT:  All right.  Well, I can assure

14  you that it would not be the intention of the Court to

15  strike a matter because it was not timely filed under a

16  rule, and that that untimeliness was literally caused by

17  the Court setting the hearing itself, that would never be

18  the result.  That would be completely and utterly unfair

19  and inconsistent with the rules, as you've stated,

20  Mr. Wilkes.  So I have no intention of doing that.

21             Mr. Guso, let me just ask you, what was the

22  debtor's intention with respect to filing a response to

23  the motion in terms of timing?

24             MR. GUSO:  Yes, sir.  May it please the

25  Court, your Honor.  Jordi Guso again for the debtors.

1            Your Honor, this motion was filed Sunday

2    evening, and as Mr. Wilkes observed, there was a request

3    at the top of the motion in the header that it be set for

4    hearing on December 6th.

5            The Court has -- the Clerk of the Court has

6    issued a notice of hearing setting it for a preliminary

7    hearing on December 6th, noting in the notice of hearing,

8    your Honor, that a total of 10 minutes has been allocated

9    for the Court's consideration of this matter.

10           In light of that, your Honor, on

11   November 28th, the debtor has filed a notice of intent to

12   file a response to the motion, it's Docket Entry 416.  Our

13   view, and please, I'd like the Court to please correct me

14   if I'm mistaken, your Honor, in light of what I've just

15   said, our view was that the Court would treat this hearing

16   on December 6th, on this matter, as a preliminary hearing.

17           We would suggest to the Court by that time a

18   briefing schedule, so that the debtors and other parties

19   in interest would have an opportunity to respond to the

20   motion.  Candidly, we're evaluating the need for some

21   limited discovery.  We'd be prepared to discuss that on

22   December 6th as well, and then ultimately, your Honor, set

23   a final, perhaps, evidentiary hearing to consider the

24   relief the movants seek in that motion, and any objections

25   thereto.  That's our view.

1          THE COURT:  Well, I will tell you that when

2    I reviewed the notice of intent, and reviewed the motion,

3    and it was set on December 6th, we actually had an

4    internal discussion as to what the December 6th hearing

5    would look like.

6          The December 6th hearing, as far as, at

7    least the Court was concerned, was going to certainly be

8    preliminary.  You raised the issue in your notice of

9    intent of limited discovery.  I did not understand what

10   that discovery would entail, and my intention was to ask

11   you what that discovery would entail, because I'm not

12   quite sure what the discovery would lead to, other than

13   facts that are already available on the record, because

14   Mr. Goldberg's motion essentially focuses on the size of

15   the creditor body, and the type of claims, which are

16   readily evident in the record itself, although I guess

17   there is room for dispute.  So I was going to ask that.

18          Frankly, it's an interesting issue, one that

19   certainly is going to require a little bit more time than

20   ruling on December 6th for the Court to consider, and my

21   intention was to hear from the parties, and determine what

22   the timing would need to be in terms of ruling.  I didn't

23   expect to go beyond that.

24          Mr. Goldberg has certainly argued today that

25   timing is important to Mr. Goldberg, but of course since

1    this case is moving quickly, and it's, you know, certainly

2    something that a committee, if it's going to be in place,

3    needs to be in sooner rather than later.  I don't know

4    that it needs to be in place by December 6th, or

5    December 15th, or December 25th, or whatever the date is.

6              So, I'm open to all of that.  So why don't

7    we leave it at this, and I'll hear from you if you

8    disagree, but my intention would be to go forward on the

9    6th, keep it as a preliminary hearing, especially since we

10   have a lot of other things to cover.  Hopefully we don't

11   have a lot of other things to cover on December 6th, but

12   if we do, we're likely going to need a decent part of the

13   day, treat as a preliminary hearing, which was the

14   intention of the Court from the beginning, have you all

15   ready to argue what discovery you need, what the urgency

16   is, what the timing that's being requested for the

17   formation of the committee, if the Court grants the motion

18   and, frankly, I would like some, at least, preliminary

19   understanding of the law that you think applies, subject

20   to further briefing, just because I'm curious myself how

21   courts have generally decided these issues in other

22   venues, but I'm not expecting full legal argument by any

23   means.  I just want a hint as to what I should likely be

24   looking at, and then we'll see where that takes us,

25   without the Court having any intention to rule on

1  December 6th, and likely subject to further briefing.

2              So let me first hear from Mr. Goldberg on

3  that concept, since the timing seems most important to

4  him, to have that ruling sooner rather than later.

5              MR. GOLDSTEIN:  Your Honor, that makes good

6  sense to me and, you know, we would just always ask the

7  Court to understand the urgency we have, but what you

8  certainly propose, and you control your calendar, makes

9  good sense to us.

10             THE COURT:  Okay.  All right, then I don't

11  need to hear from the other parties, since I assume they

12  wouldn't object to that.

13             All right.  So that's what we'll do.  You

14  don't need an order coming out of this hearing on that,

15  Mr. Wilkes, because we can address that on the 6th, but

16  you can be assured that the Court has no intention of

17  taking anyone's substantive rights away from them by

18  virtue of the setting of this hearing as a preliminary

19  matter on December 6th, which is, of course, no other

20  party's fault, that's what the Court decided to do.

21  So, no issue there, and you can quote me, Mr. Wilkes,

22  okay?

23             All right.  Anything else we need to do here

24  today?

25             (No verbal response.)

Page 33

1                    MR. GUSO:  Nothing from the debtors,

2    your Honor.  Thank you.

3                    THE COURT:  All right.  Thank you all very

4    much.  Have a beautiful rest of your week, and weekend,

5    and we will see some or all of you on the 6th.

6                    MR. GUSO:  Yes, sir.  Thank you, your Honor.

7                    THE COURT:  Thank you.

8

9

10

11                   (Thereupon, the hearing was concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 34

1

2

3                              CERTIFICATION

4

5    STATE OF FLORIDA        :

6    COUNTY OF MIAMI-DADE    :

7

8              I, Cheryl L. Jenkins, RPR, RMR, Shorthand

9    Reporter and Notary Public in and for the State of Florida

10   at Large, do hereby certify that the foregoing proceedings

11   were transcribed by me from a digital recording held on

12   the date and from the place as stated in the caption

13   hereto on Page 1 to the best of my ability.

14             WITNESS my hand this 6th day of

15   December, 2022.

16

17

18            _____

19              CHERYL L. JENKINS, RPR, RMR

20              Court Reporter and Notary Public

             in and for the State of Florida at Large

21                 Commission #HH 170910

                    December 27, 2025

22

23

24

25