UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 (PDR) |
| Debtors.[1] | (Jointly Administered) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF MONSTER ENERGY COMPANY, THE AMERICAN BOTTLING COMPANY, INC., SONY MUSIC ENTERTAINMENT, UMG RECORDINGS, INC. AND ORANGE BANG, INC. FOR AN ORDER PURSUANT TO 11 U.S.C. § 1102(a)(2) DIRECTING THE APPOINTMENT OF AN OFFICIAL COMMITTEE OF CREDITORS HOLDING NON-TRADE CLAIMS**

The Official Committee of Unsecured Creditors (the "Committee"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the *Motion of Monster Energy Company, The American Bottling Company, Inc., Sony Music Entertainment, UMG Recordings, Inc. and Orange Bang, Inc. For an Order Pursuant to 11 U.S.C. § 1102(a)(2) Directing the Appointment of an Official Committee of Creditors Holding Non-Trade Claims* [Docket No. 408] (the "Motion") filed by Monster Energy Company ("Monster"), Orange Bang Inc. ("Orange Bang"), The American Bottling Co., Inc. ("ABC"), Sony Music Entertainment, and UMG Recordings, Inc. (collectively, the "Litigation Claim Movants"). In support of this Objection, the Committee respectfully states as follows:

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicom Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

**PRELIMINARY STATEMENT[2]**

1. The Motion makes unfounded and dangerous assumptions regarding the current functionality of the Committee. The Motion basically alleges that members of the Committee have decided to forego their fiduciary duties to the Debtors' estates in favor of furthering their own individual agendas. The Motion further alleges that the Committee has already adopted a strategy to ensure its desired outcome of these Chapter 11 Cases. Finally, the Motion assumes that the addition of the New Members to the Committee will not matter because their voices would be quashed due to an overwhelming majority of contrary voices and therefore votes. Each of these assumptions is false, baseless, unfounded, and dangerous.

2. The Committee learned through the Motion that the Litigation Claim Movants have made multiple requests of the U.S. Trustee to appoint a separate non-trade creditors' committee. The Committee and its professionals were not involved in this process other than a single phone call with the U.S. Trustee on November 22, 2022, wherein the U.S. Trustee advised the Committee of these requests and inquired as to whether the Committee believed it could accommodate additional members and still function properly, or whether a separate committee would be necessary to incorporate the voices of non-trade creditors.[3] The next day, November 23, 2022, the U.S. Trustee reconstituted the seven-member Committee by adding the four New Members to address the concerns of the Litigation Claim Movants, regardless of the validity of such concerns. Each of the New Members hold significant litigation-based claims against the Debtors. The Committee has welcomed the two New Members that accepted the U.S. Trustee's invitation to

---

[2] Capitalized terms not defined in this Preliminary Statement have the meaning ascribed to them in this Objection.

[3] Correspondence between the U.S. Trustee and counsel to the Litigation Claim Movants attached to the Motion demonstrates that Debtors' counsel and the Committee were expressly excluded from certain discussions at the request of the Litigation Claim Movants. *See* Ex. F, Motion [Docket No. 408-6].

join the Committee and the reconstituted Committee has met on more than one occasion and is functioning effectively and efficiently.

3. Two of the New Members, ABC and Warner, declined to participate and have since resigned from the Committee. The Litigation Claim Movants (including ABC) thereafter filed the Motion seeking an order to appoint a second official committee of unsecured creditors dedicated to non-trade claimants. Ironically, the Motion argues that the Litigation Claim Movants are not adequately represented by the Committee, even though one of the movants, ABC, had been appointed to the Committee and could have represented itself and similarly situated creditors had it not resigned. Further, and most significantly, the Motion itself fails to provide *any evidence* that the Litigation Claim Movants are inadequately represented and instead proffers factually inaccurate mischaracterizations of the Committee and its members that are inconsistent with proofs of claim and other public filings.

4. The bottom line is that there is no precedent for forming a second unsecured creditors' committee under the circumstances present here. Committees are typically made up of unsecured creditors with differing commercial interests vis-à-vis the Debtors (i.e., landlords, litigation claimants, noteholders, vendors, etc.). The Motion is nothing more than a self-serving attempt by the Litigation Claim Movants to push their litigation agenda at the expense of other creditors of the estates. Even prior to reconstitution, the Committee more than adequately represented the interests of the non-trade creditors, with the initial Committee members holding trade claims (including vendors continuing and no longer doing business with the Debtors) and litigation-based claims. With the addition of the New Members (even with ABC and Warner's refusal to participate), non-trade creditors are clearly adequately represented. Thus, no additional committee is necessary and the Motion should be denied.

**BACKGROUND**

5. On October 10, 2022 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Court") commencing these cases (the "Chapter 11 Cases"). No trustee or examiner has been appointed in the Chapter 11 Cases.

6. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to manage their properties and operate their businesses as debtors in possession.

7. On November 1, 2022, the United States Trustee (the "U.S. Trustee") appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code and it was originally comprised of the following seven members: (i) Stellar Group, Inc. ("Stellar"); (ii) Archer Daniels Midland Co. ("ADM"); (iii) Trinity Logistics, Inc. ("Trinity"); (iv) Ardagh Metal Packaging USA Corp. ("Ardagh"); (v) Crown Cork & Seal USA, Inc. ("Crown Cork"); (vi) QuikTrip Corporation ("QuikTrip"); and (vii) RXO Capacity Solutions, LLC, formerly named XPO Logistics, LLC ("RXO"). [Docket No. 245]. On November 2, 2022, the Committee selected Lowenstein Sandler LLP to serve as its lead counsel. On November 4, 2022, the Committee selected Sequor Law, P.A. as its local counsel.

8. On November 23, 2022, the U.S. Trustee appointed the following new members to the Committee: (i) Warner Music Group Corp. ("Warner"); (ii) PepsiCo, Inc. ("Pepsi"); (iii) ABC; and (iv) Peter Fischer, c/o Daniel F. Harvath, putative class action plaintiff (the "Class Representative" and collectively, the "New Members"). [Docket No. 400].

9. Thus, as a result of the U.S. Trustee's decision to reconstitute the Committee, the Committee composition is as follows:

| Creditor (Including Any Affiliates) | Proof of Claim Amount[4] | Scheduled Claim Amount | Currently doing Business with Debtors | Litigation-Based Claims Against the Debtors |
|---|---|---|---|---|
| Stellar | Not yet filed | $18,880,536.77 | Yes | Yes |
| ADM[5] | Not yet filed | $1,058,142.52 | Yes | No |
| Trinity | $5,744,571.33 | $5,616,685.80 | No | No |
| Ardagh | Not yet filed | $11,143,726.21 | No | Yes |
| Crown Cork | Not yet filed | $5,020,998.24 | Yes | No |
| QuikTrip | Not yet filed | $464,786.00 | Yes | No |
| RXO | Not yet filed | $1,949,393.36 | No | No |
| Pepsi[6] | Not yet filed | $115,000,000.00 | No | Yes |
| Class Representative | $401,000,000.00 | Undetermined | No | Yes |
| Warner[7] | $28,050,000.00[8] | Undetermined | No | Yes |
| ABC[9] | $225,100,000.00 | $17,684,411.15 | No | Yes |
| **Total:** | **$659,894,571.33** | **$176,818,680.05** | | |

---

[4] The deadline to file proofs of claim in these Chapter 11 Cases is December 19, 2022. [Docket No. 114]. Amounts reflected in this chart may materially change based on proofs of claim filed by the Committee members. An amended chart will be provided to the Court to reflect those changes at the Final Hearing (as defined below).

[5] Amount listed includes those owed to ADM and its affiliates, Wild Flavors, Inc. and ADM Wild Europe G.m.b.H & Co.

[6] Pepsi's scheduled claim is the largest liquidated, undisputed, non-contingent unsecured claim in the Chapter 11 Cases. [*See Schedule F*, Docket No. 323]. The claim arises from a June 21, 2022 settlement between Pepsi and the Debtors.

[7] Resigned from the Committee.

[8] Warner's *Complaint* seeks damages against the Debtors totaling $28,050,000. *See Atl. Recording Corp. v. Vital Pharm., Inc.*, No. 1:22-cv-22951 (S.D. Fla. Sept. 19, 2022) [Docket No. 1] (seeking actual damages of Debtors' profits from alleged infringement, or, alternatively, $150,000 for each of the 187 alleged infringed works pursuant to the statutory damages cap under 17 U.S.C. § 504(c)). Warner has not yet filed a proof of claim, but the pending litigation was scheduled by the Debtors in *Schedule F*. [*See Schedule F*, Docket No. 323].

[9] Resigned from the Committee.

10. On November 27, 2022, the Litigation Claim Movants filed the Motion seeking the appointment of an official committee for non-trade creditors.

11. ABC and Warner subsequently declined to participate and resigned from the Committee.

12. On December 2, 2022, the U.S. Trustee filed the *United States Trustee Preliminary Objection to the Motion to Direct the United States Trustee to Appoint a Second Official Committee of Unsecured Creditors (D.E. # 408)* [Docket No. 446].

13. On December 6, 2022, the Court held a preliminary hearing on the Motion (the "Preliminary Hearing")—specifically asking the Litigation Claim Movants for clarity on: (1) what form of relief they are seeking; (2) what authority permits discovery of the U.S. Trustee's internal processes when formulating the original and reconstituted Committee; and (3) the standard the Court should apply to determine if the appointment of a second committee is necessary. Counsel to certain of the Litigation Claim Movants made clear at the Preliminary Hearing that: (1) the Litigation Claim Movants are only seeking relief under section 1102(a)(2) of the Bankruptcy Code; (2) the Court need not evaluate the U.S. Trustee's internal deliberations and thought processes in making his decisions to appoint and then reconstitute the Committee when considering the Motion under section 1102(a)(2); and (3) the six factor analysis from *Winn-Dixie* should be relied upon by the Court to determine if the Litigation Claim Movants are adequately represented in these Chapter 11 Cases.[10]

14. On December 9, 2022, the Court entered the *Order Setting Final Hearing and Briefing Schedule with Respect to Motion of Monster Energy Company, The American Bottling*

---

[10] *See* Dec. 6, 2022 Hearing, 35:10–13, 40:10–13, 46:20 to 47:23, *In re Vital Pharmaceuticals, Inc.*, No. 22-17842 (Bankr. S.D. Fla. Dec. 6, 2022) (the "Preliminary Hearing Transcript").

*Company, Inc., Sony Music Entertainment, UMG Recordings, Inc. and Orange Bang, Inc. for an Order Pursuant to 11 U.S.C. § 1102(a)(2) Directing the Appointment of an Official Committee of Creditors Holding Non-Trade Claims* [Docket No. 490] which, among other things, scheduled the final hearing on the Motion for December 19 and/or 20, 2022 (the "<u>Final Hearing</u>").

## OBJECTION

**I.   <u>The Motion Fails to Establish that a Second Committee is Necessary for the Litigation Claim Movants to Be Adequately Represented.</u>**

15.   The Litigation Claim Movants must establish that a second official committee of unsecured creditors dedicated to non-trade claimants is "necessary" to adequately represent the Litigation Claim Movants. 11 U.S.C. § 1102(a)(2). Ordering the appointment of an additional creditors' committee is an extraordinary remedy.[11] *Winn-Dixie.*, 326 B.R. at 857.

16.   Although the Bankruptcy Code does not define "adequate representation," bankruptcy courts evaluate the need for an additional committee on a "case-by-case basis" as the

---

[11] As the Litigation Claim Movants aptly note, the appointment of a second unsecured creditors or equity committee is certainly not commonplace. *See, e.g.*, *In re Celsius Network, LLC*, No. 22-10964, 2022 WL 13631877, at *1 (Bankr. S.D.N.Y. Oct. 4, 2022) (denying appointment of an equity committee); *In re Revlon, Inc.*, No. 22-10760 (Bankr. S.D.N.Y. Aug. 24, 2022) (denying appointment of an equity committee); *In SunEdison, Inc.*, 556 B.R. 94 (Bankr. S.D.N.Y. 2016) (denying appointment of an equity committee); *In re New Century TRS Holdings, Inc.*, No. 07–10416 (KJC), 2013 WL 5377962, at *1 (Bankr. D. Del. Sept. 26, 2013) (denying appointment of a borrowers' committee); *In re Eastman Kodak Co.*, No. 12-10202, 2012 WL 2501071, at *1 (Bankr. S.D.N.Y. June 28, 2012) (denying appointment of an equity committee); *In re Residential Cap., LLC*, 480 B.R. 550 (Bankr. S.D.N.Y. 2012) (denying appointment of a borrowers' committee); *In re Ampex Corp.*, No. 08-11094, 2008 WL 2051128, at *1 (Bankr. S.D.N.Y. May 14, 2008) (denying appointment of an equity committee); *In re Nat'l R.V. Holdings, Inc.*, 390 B.R. 690 (Bankr. C.D. Cal. 2008) (denying appointment of an equity committee); *In re Allied Holdings, Inc.*, No. 05-12515, 2007 WL 7138349, at *3 (Bankr. N.D. Ga. Mar. 13, 2007) (denying appointment of an equity committee), *aff'd sub nom. In re Allied Holding, Inc.*, 291 F. App'x 257 (11th Cir. 2008); *In re Dana Corp.*, 344 B.R. 35 (Bankr. S.D.N.Y. 2006) (denying appointment of an asbestos personal injury claimants' committee); *In re Winn-Dixie Stores, Inc.*, 326 B.R. 853 (Bankr. M.D. Fla. 2005) (denying appointment of nondebtor qualified retirement plan participants' committee); *In re Garden Ridge Corp.*, No. 04-10324, 2005 WL 523129, at *1 (Bankr. D. Del. Mar. 2, 2005) (denying appointment of a landlords' committee); *In re Agway, Inc.*, 297 B.R. 371 (Bankr. N.D.N.Y. 2003) (denying appointment of a retiree committee); *Mirant Am.s Energy Mktg., L.P. v. Off. Comm. of Unsecured Creditors of Enron Corp.*, No. 02 CIV. 6274, 2003 WL 22327118, at *1 (S.D.N.Y. Oct. 10, 2003) (denying appointment of an energy merchants' committee); *In re Enron Corp.*, 279 B.R. 671 (Bankr. S.D.N.Y. 2002) (denying appointment of an energy traders' committee); *In re Williams Commc'ns Grp., Inc.*, 281 B.R. 216 (Bankr. S.D.N.Y. 2002) (denying appointment of an equity committee); *In re Orfa Corp. of Pa.*, 121 B.R. 294, 295 (Bankr. E.D. Pa. 1990) (denying appointment of

adequate representation analysis "involves a delicate balancing of various and sometimes diverging interests" and is thus "not to be taken lightly." *Id.*; *Enron*, 279 B.R. at 685; *see also New Century*, 2013 WL 5377962 at *5.

17. Generally speaking, the presumption is that an official committee of unsecured creditors will represent the interests of all unsecured creditors. The Litigation Claim Movants (as commercial unsecured creditors with claims that are *pari passu* to the claims of trade creditors) must show **_with evidence_** that they are inadequately represented by the current Committee. The corollary to this is that a motion for an order to appoint an additional committee should be denied if the movant provides "no evidence" that a constituency is not adequately represented. *Dana Corp.*, 344 B.R. at 39; *accord Allied Holdings*, 2007 WL 7138349 at *3. The Litigation Claim Movants have woefully failed to meet this burden and for that reason alone the Motion must be denied.

    **A.    The Litigation Claim Movants' Interests Are Already Adequately Represented by the Existing, Reconstituted Committee.**

18. First, none of the Litigation Claim Movants should be permitted to decline to participate on the Committee and then assert that they are not adequately represented by that same Committee. This attempt to manipulate the membership of the reconstituted Committee to bolster their argument for a second committee is both flawed and inappropriate. Such action should not be condoned.

19. The Litigation Claim Movants argue that the Committee does not adequately represent non-trade creditors because the majority of the members of the newly reconstituted

---

a new committee for secured and investor creditors); *In re McLean Indus., Inc.*, 70 B.R. 852, 862 (Bankr. S.D.N.Y. 1987) (denying appointment of a debenture holders' committee).

Committee still continue to do business with the Debtors and, thus, prefer a go-forward Debtor at any cost, regardless of ultimate distribution amounts. Conversely, the Litigation Claim Movants claim that they are solely motivated by maximizing a recovery on account of their claims.[12] These bare and conclusory assumptions are not nearly enough for the Litigation Claim Movants to meet their high burden of proof to establish that an official non-trade creditors' committee is **necessary** to adequately represent their interests. *See Winn-Dixie*, 326 B.R. at 857 (emphasis added).

20. Moreover, these assumptions are incorrect. The desire for a committee to want a going concern to continue doing business with post-emergence or sale of the company does not foreclose upon value-maximizing transactions or other structures that are in the best interest of the estates and all general unsecured creditors. Further, the assumption that the New Members will be in a minority voting position on the Committee because they are not doing business with the Debtors is equally flawed due to the publicly available information about the breakdown and elements of the Committee members' claims. The Litigation Claim Movants go as far as to state that the addition of four non-trade creditors "creates more problems than it solves" because the non-trade creditors would be outvoted. Motion ¶ 46. First, at least three of the trade creditor Committee members are currently not doing business with the Debtors and, when combined with the New Members, actually form the majority of the Committee.[13] Second, two of the trade creditor Committee members also hold litigation claims against the Debtors.[14] Third, and

---

[12] Ironically, (despite asserting otherwise in the Motion) both Monster **and** Orange Bang have a strong interest in the Debtors' go-forward business prospects as they benefit from an ongoing 5% per-unit royalty. Motion ¶ 16; Monster's DIP Obj. ¶ 1 [Docket No. 411] (stating in no uncertain terms that Monster "benefits from the Debtors' ongoing business operations" and is therefore "vested" and has "every interest in the Debtors' successful reorganization and continued operation as a going concern post-emergence.").

[13] RXO, Trinity, and Ardagh have indicated that they are not currently doing business with the Debtors.

[14] Ardagh and Stellar have pending litigation against the Debtors as of the Petition Date. [*See Exhibit SOFA 7*, Docket No. 325 (referencing pending Stellar lawsuit)]; *Motion for Relief from the Automatic Stay, and Alternatively, for*

notwithstanding the actual characteristics of each Committee member's claims, the potential to be outvoted does not rise to the level of inadequate representation. *See Residential*, 480 B.R. at 559.

21.     The case law is clear, the appointment of an additional committee purely based on whether distinct classes of unsecured creditors have differing interests would lead to the "unnecessary proliferation of committees 'at an astronomical cost to the bankruptcy estates.'" *Mirant*, 2003 WL 22327118 at *8. In addition, adequate representation does not require proportionate representation of distinct groups of creditors on a committee of unsecured creditors. *Residential*, 480 B.R. at 559. Moreover, a creditors' committee need not be an "exact replica of the creditor body." *Id.*; *Enron*, 279 B.R. at 690. The determinative factor is instead whether the official committee is serving the Litigation Claim Movants' interests as unsecured creditors, *Residential*, 480 B.R. at 559, which here, the Committee clearly is and will continue to do.

22.     In the short time since its formation, the Committee has made significant strides towards a value-maximizing restructuring or sale that will inure to the benefit of all unsecured creditors, including trade, litigation, or otherwise. This alignment of interests is evident from actions taken or supported by the Committee, including, but not limited to, the Committee's (i) continued efforts to improve the terms of the DIP financing and effectuate corporate governance changes,[15] (ii) ongoing investigation into potential claims and causes of action (the proceeds of which will increase the amount of distributable value available to all unsecured creditors), and (iii)

---

*Adequate Protection, and for Allowance of an Administrative Claim*, at p. 4 [Docket No. 330] (motion filed by Ardagh referencing pending litigation).

[15] The Committee's efforts are mirrored in the objection filed by Monster [Docket No. 411] to the *Debtors' Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling A Final Hearing, and (VII) Granting Related Relief* [Docket No. 24] (the "DIP Motion").

collaboration with the Debtors to implement a workable and value-maximizing sale and/or capital raise process.

23. The Litigation Claim Movant's argument that the Committee is not sufficiently representative of the unsecured creditor body because holders of certain of the largest claims are not members also fails. No requirement exists for the seven largest unsecured creditors to be appointed to an official committee of unsecured creditors. In fact, the language of section 1102(b)(1) is "'precatory' and 'nonbinding' and 'affords no right of membership.'" *In re Park*, No. 10-12965, 2010 WL 3219531, at *1 (Bankr. S.D.N.Y. Aug. 11, 2010) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 118 B.R. 209, 212 (Bankr. S.D.N.Y. June 14, 1990) (citing H.R. Rep. No. 95–595, at 401 (1977)); 11 U.S.C. § 1102(b)(2). The "status as a large creditor does not automatically ensure a creditor membership on the Committee." *Park*, 2010 WL 3219531, at *6.[16] Regardless of claim size,[17] each member as a creditor in these Chapter 11 Cases gets one vote. The Litigation Claim Movants can yield the power of their substantial claims through their votes under the plan in accordance with the relevant provisions of the Bankruptcy Code.

---

[16] The Litigation Claim Movants rely on *In re Park* for the proposition that a creditor's ability to participate in a bankruptcy case on its own does not mean the committee would not benefit from that creditor's involvement. But the court in *In re Park* ordered the appointment of the requesting creditor to the unsecured creditors' committee after considering, among other things, the lack of objections from the debtors and other creditors. *Id.* Unlike the creditor in *In re Park*'s request to be added to an existing committee, the Litigation Claim Movants are seeking the appointment of an entirely new committee and one movant has tried to game the system and declined to participate in the existing Committee despite the U.S. Trustee's invitation. Further, non-trade claimants are already represented by the existing Committee, reconstituted or otherwise.

[17] While not relevant for an adequate representation analysis, the Litigation Claim Movants mischaracterize certain Committee members' claims. *E.g.*, Motion ¶ 13 (asserting that Archer Daniels Midland Co. "does not appear on that list and has no scheduled claim"). First, ADM's wholly owned subsidiary, Wild Flavors, Inc., is listed on the Debtors' Schedules **and appears on the Debtor's top creditor list** with a claim of not less than $880,225. ADM is also listed on the Debtors' Schedules and, according to ADM's books and records, is owed not less than $202,640. Likewise, ADM's wholly-owned German subsidiary, ADM Wild Europe G.m.b.H & Co., is listed on the Debtors' Schedules and is owed not less than $135,596.

24. The Committee (even prior to reconstituting its membership) more than adequately represented the interests of non-trade creditors. The U.S. Trustee's reconstitution of the Committee served as another safeguard to ensure adequate representation of non-trade creditors, while avoiding unnecessary costs to the estates and a balkanized unsecured creditor body. *See Mirant*, 2003 WL 22327118 at *8. With the inclusion of the New Members on the Committee, it is clear that non-trade creditors' interests continue to be adequately represented.

### B. *All Other Winn-Dixie Factors Weigh Against Appointing an Additional Committee of Unsecured Creditors*

25. The other factors considered by courts do not overcome the Litigation Claim Movants' failure to demonstrate the need for an additional official committee. *See Winn-Dixie*, 326 B.R. at 857.

### (i) An Additional Unsecured Creditors' Committee Would Not Provide Any Benefit to the Overall Administration of the Estates

26. While the appointment of a non-trade committee may provide the Litigation Claim Movants with a louder and more powerful voice in the Chapter 11 Cases, there is no evidence to support the assertion that voice would represent the unified position of all non-trade claimants (any better than the reconstituted Committee). Nor will it lead to a more efficient administration of the Chapter 11 Cases.

27. As noted by Monster during the Preliminary Hearing, as of the Petition Date, the Debtors were involved in approximately sixty pending litigations.[18] Monster has failed to acknowledge, strategically or otherwise, that while there may be approximately sixty litigations, at least half involve the Debtors as the plaintiff, not a defendant. [*Exhibit SOFA 7*, Docket No.

---

[18] *See* Preliminary Hearing Transcript at 32:16–17.

325]. As a result, the creditor pool that the Litigation Claim Movants purport to represent is significantly less than reported to the Court.

28. Further, the voluntary resignation of ABC after the Committee was reconstituted to include additional non-trade creditors is another fact that demonstrates the Litigation Claim Movants' inability to act as fiduciaries for all general unsecured creditors. Instead, the motivations of the Litigation Claim Movants appear to be of self-interest, which should not be countenanced by the Court. *See, e.g., Orfa Corp.*, 121 B.R. at 295 (denying a motion for the appointment of an additional creditors' committee where the movant had garnered support for its motion for "apparently-selfish motivations").

### (ii) The Costs of a Second Unsecured Creditors' Committee is Not Justified

29. The appointment of a non-trade creditors' committee undoubtedly carries with it significant costs, expenses, additional professionals, and delay. Here, the Debtors' estates should not be compelled to bear this hefty cost. *See In re Sharon Steel Corp.*, 100 B.R. 767, 778 (Bankr. W.D. Pa. 1989) (finding that, even if the requirements for appointment are met, additional committees still should not be appointed if "the cost factor outweigh[s] the need for adequate representation") (citations omitted).

30. Such costs would not only be substantial, but also duplicative. If a non-trade creditors' committee is appointed, the Litigation Claim Movants indicate that they will hire "a single team of professionals" consisting of counsel, a financial advisor, and an investment banker. *See* Motion ¶¶ 49, 59. The Debtors' other stakeholders, including the Committee as fiduciary to *all* unsecured creditors, already have experienced financial, legal, and other advisors that are actively involved in the Chapter 11 Cases and working to maximize recoveries for all unsecured creditors.

31.     Further, the Approved Budget (as defined in the DIP Motion) is finite and fully accounted for.  The relief sought in the Motion is an obvious attempt for the Litigation Claim Movants to get their professionals' fees paid and further their own agenda.  The Approved Budget cannot, and should not, be used to accommodate that agenda.  The costs of an additional committee's professionals and inevitability of redundant committee tasks would be unnecessarily expensive to the Debtors' estates and run counter to the effective and efficient administration of these Chapter 11 Cases, while at the same time reducing potential distributions to all unsecured creditors.

### *(iii)    The Litigation Claim Movants' Position is Not Unique From Any Other Unsecured Creditor*

32.     There is no precedent for establishing a second committee under the circumstances present here.

33.     The non-trade claims that the Litigation Claim Movants hold are just like those of the Committee members – unsecured commercial claims against the Debtors.  The Litigation Claim Movants make no assertion – because they cannot – that the debt owed to non-trade claimants is likely to be treated differently from other unsecured claims.  *See Drexel*, 118 B.R. at 212 (finding movants failed to show their unsecured debt would be treated differently from the members of the official committee's unsecured claims).  The Committee's current mixed member constituency (both trade and non-trade litigation claimants and creditors continuing to do business and those no longer transacting business with the Debtors) already adequately represent the interests of all unsecured creditors in these Chapter 11 Cases, including the non-trade creditors.

      *(iv)*    **The Litigation Claim Movants Have and Will Continue to Participate in the Chapter 11 Cases Without a Second Official Committee**

34.    The Litigation Claim Movants are equipped to continue monitoring and participating in the Chapter 11 Cases even without the appointment of an additional committee. As noted by the Litigation Claim Movants, their claims comprise a large portion of the aggregate general unsecured creditor claim pool. Motion ¶ 14. Each of the Litigation Claim Movants are large, sophisticated businesses with equally as sophisticated counsel that have the resources to represent their interests in these Chapter 11 Cases if they are incentivized and they choose to do so. Moreover, the Litigation Claim Movants have already demonstrated their ability to advocate for their own interests without the title of an official committee and the concurrent burden such committee would have on the estates' resources. *See Winn-Dixie*, 326 B.R. at 858 (finding the requesting parties were "able to participate in the cases without an official committee, either through an ad hoc committee or on an individual basis").

## **CONCLUSION**

Therefore, for the foregoing reasons, the Committee respectfully requests that the Court deny the Motion requesting this Court's entry of an order appointing a second unsecured creditors' committee.

Dated: December 12, 2022

                                      **LOWENSTEIN SANDLER LLP**
                                      Jeffrey L. Cohen, Esq.
                                      Eric Chafetz, Esq.
                                      Jordana L. Renert, Esq.
                                      1251 Avenue of the Americas
                                      New York, New York 10020
                                      Telephone: (212) 262-6700
                                      Facsimile: (212) 262-7402
                                      Email: jcohen@lowenstein.com
                                      Email: echafetz@lowenstein.com
                                      Email: jrenert@lowenstein.com

                                      **SEQUOR LAW, P.A.**
                                      By: */s/ Leyza F. Blanco*

15

Leyza F. Blanco
Florida Bar No.: 104639
Fernando J. Menendez
Florida Bar No.: 0018167
Juan J. Mendoza
Florida Bar No.: 113587
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202
Email: lblanco@sequorlaw.com
Email: fmenendez@sequorlaw.com
Email: jmendoza@sequorlaw.com

*Counsel to the Official Committee of Unsecured Creditors*