UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERALE DIVISION
www.flsb.uscourts.gov

In re:

| | | |
|---|---|---|
| Vital Pharmaceuticals, Inc. | Case Nos.: | 0:22-bk-17842-PDR |
| Bang Energy Canada, Inc. | | 0:22-bk-17844-PDR |
| JHO Intellectual Property Holdings, L.L.C. | | 0:22-bk-17845-PDR |
| JHO Real Estate Investment, L.L.C. | | 0:22-bk-17847-PDR |
| Quash Seltzer, L.L.C. | | 0:22-bk-17848-PDR |
| Rainbow Unicorn Beverage, L.L.C. | | 0:22-bk-17849-PDR |
| Vital Pharmaceuticals International Sales, Inc. | | 0:22-bk-17850-PDR |

Chapter 11 Cases

Debtors.                              *jointly administered under 22-17842*

_____/

**UNITED STATES TRUSTEE
TRIAL BRIEF ON THE PRELIMINARY OBJECTION (D.E. # 466) AGAINST
THE MOTION TO DIRECT THE UNITED STATES TRUSTEE TO APPOINT A
SECOND OFFICIAL COMMITTEE OF UNSECURED CREDITORS (D.E. # 408)**

Five creditors holding general unsecured claims ("Movants"),[1] dissatisfied with having a representative voice through and fiduciary membership upon the Official Committee of Creditors Holding Unsecured Claims ("Official Committee"), seek to be removed from the general population of unsecured claims and have their own segregated insular committee of creditors holding unsecured claims. After causing two resignations from the Official Committee, they now say such committee does not assure adequate representation. Evidenced by their Motion (D.E. # 408), Movants do not want to be part of a representative committee unless they control its voice. Were the Movants separated out from general population, they would not speak for creditors holding claims like their own—general unsecured claims—they would  speak only for their own agenda and only for those creditors they select. Embracing the Movants' invitation would create an opportunity for any committee member dissatisfied with being outvoted—just resign and get

---

[1] Collectively, the Movants include Monster Energy Co. ("Monster"); Orange Bang Inc.; The American

the bankruptcy court to appoint a self-interested committee. This turns committee fiduciary law on its head.

Assuming, arguendo, that the Movants could establish such insular committee may assure them adequate representation, the Movants cannot establish that such discretionary appointment is necessary. Such a committee would be either (1) unfettered by fiduciary obligations to creditors holding claims of the kinds represented on the committee; (2) wholly duplicative of the Official Committee, or both. These Movants fail to present any statutory authority or public policy concern supporting their segregation into an insular committee. This Bankruptcy Court should not provide legal sanction for a separate but equal committee of creditors holding nothing more than general unsecured claims. The U.S. Trustee adopts her Preliminary Objection (D.E. # 466) as if stated *in haec verba* and further provides the following brief on the statutory application under 11 U.S.C. § 1102(a)(2).

### *Background Facts*

On October 10, 2022, the seven debtors (the "Debtors) voluntarily commenced respective chapter 11 bankruptcy cases and filed their 30 largest unsecured creditor list. The cases are jointly administered. Pursuant to 11 U.S.C. § 1102(a)(1), the U.S. trustee promptly solicited the 30 largest unsecured creditors to serve on an official committee of creditors holding unsecured claims, as well as some unlisted creditors who asked for a solicitation questionnaire. Altogether, 19 general unsecured creditors, including the Movants, affirmatively responded, stating an intent and willingness to serve on the Official Committee.

Debtors did not list two of the Movants, Sony Music Entertainment ("Sony") and UMG Recordings ("UMG"), as holding one of the 30 largest claims and they responded after

Bottling Co., Inc.; Sony Music Entertainment; and UMG Recordings, Inc.

requesting a solicitation questionnaire. Included in their solicitation response were proxies

indicating that, were they to be appointed, retained outside counsel would sit on the committee

rather than an officer or employee of such creditor. The other two Movants, Monster Energy,

("Monster"), and The American Bottling Company, ("ABC"), were listed on the Debtor's top 30

list. ABC responded on October 21, 2022, that its claims were solely against the Debtor, Vital

Pharmaceuticals. Monster responded on October 25, 2022, that it had no right to assert any

priority claim status.

During the solicitation period, the Debtors neither completed nor filed their schedules of

liabilities. On October 26, 2022, Monster filed two proofs of claim, (POC ## 28-1 and 29-1).

Contrary to the express representations Monster made in its written response to the committee

solicitation questionnaire, Monster asserted in its proofs of claim priority claim status for

administrative expenses.[2]  On the same date, ABC filed seven proofs of claims, (POC ## 30-1,

31-1, 32-1, 33-1, 34-1, 35-1, and 36-1). Contrary to the express representations ABC made in its

written response to the committee solicitation questionnaire, ABC asserts litigation claims in all

seven jointly administered cases.

Less than one month into this case and almost two weeks prior to the meeting of

creditors, on November 1, 2022, the U.S. trustee appointed seven creditors to the Official

Committee.[3] Ten days later, the Debtors filed their schedules of liabilities. The Debtors declared

under penalties of perjury that there are no less than 2,445 unsecured claims in these jointly

---

[2] *But see* Fed. R. Bankr. P. 9009 and Official Form 410 ("**Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**")[emphasis as in original].
[3] ECF #245.

administered cases.[4] To date, Stretto, the claims agent, reports that there have been 190 filed

proofs of claim, with several claimants possessing multiple filed claims.[5] Since the last report

filed by Stretto, the filed proofs of claim now total more than 250.[6]

On November 23, 2022, the U.S. trustee reconstituted the Official Committee to add four

additional creditors to assure adequate representation of all unsecured creditors.[7] Those

additional creditors were: ABC, PepsiCo, Warner Music Group Corp., and the plaintiff in a

pending putative consumer class action case. Within two (2) days, Warner Music Group Corp.

and ABC both resigned from the Official Committee because they would be outvoted.[8]

Immediately after those voluntary resignations, the Movants[9] now seek the creation of a

separate, insular committee to represent an unidentified group of creditors holding unsecured

claims, arguing the Official Committee does not assure them adequate representation. The

Movants cite to the Debtors' own statements that there may exist some 63 claims that *could* be

like theirs.[10] However, the Movants remain silent as to the remainder of over 2,445 scheduled

unsecured claims arising in these jointly administered cases.

Further, the Movants fail to alert this Court that those 63 claims do not even correlate

one-for-one to being creditors. As illustrated above, to date, the Movants have filed no less than

---

[4] Sched. E/F., pp. 60-61 and 63-96 (D.E. # 323, pp. 60-61 and 63-96 of 143). Due to potential duplication of creditors across these jointly administered cases and claimants possessing multiple separate claims against these estates, the U.S. trustee is not at this time providing a complete picture of the universe of creditors holding unsecured claims across all seven cases.

[5] Claims Register (D.E. # 472). At this time, the U.S. trustee has not evaluated the deemed filed claims under § 1111(a) against the superseding filed proofs of claim indicated by the Claims Register. It is noted that the Claims Register (D.E. # 472) does not provide a listing of deemed filed claims that have not been superseded by a creditor's filed proof of claim.

[6] https://cases.stretto.com/VitalPharmaceuticals/filed-claims/, *see also* Fed. R. Bankr. P. 5003(b). To illustrate the incongruity between claims and creditors, the single creditor—Ally Bank, has filed 63 proofs of claim in these cases.

[7] ECF #400.

[8] Mot., paras. 8, 31, and 46 (D.E. # 408, pp. 5, 13, and 20 of 32).

[9] Warner Music Group Corp. is not a named member of the Movants, nor has it filed a joinder to the Motion, nor has any attorney associated with the Movants filed disclosures required under Fed. R. Bankr. P. 9010.

nine proofs of claim. Similarly, a single general unsecured creditor, Ally Bank, has filed 63

proofs of claim. At present, the total number of general unsecured creditors nor the exact number

the Movants seek to segregate out of general population can be determined.

The Movants make no allegations that the Official Committee has failed in its fiduciary

obligations to the unsecured creditor body—including theirs. Instead, the Movants merely appear

to argue they were not satisfied with their inability to control the discourse and agenda on the

Official Committee.[11]

### *Statutory Predicate for Relief and Procedural Rule Governing*

The sole statutory predicate for the relief the Movants seek states as follows:

> On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.

11 U.S.C. § 1102(a)(2).

A motion for entry of an order under 11 U.S.C. § 1102(a)(2) is procedurally governed under Fed.

R. Bankr. P. 9013. [12]

It is beyond peradventure that any official committee formed under the bankruptcy laws

is a fiduciary to the creditors holding claims against the debtor of the kind represented by such

committee.[13] Likewise, each committee member is a fiduciary for those other creditors not

---

[10] Mot., paras. 1, 14, 47, and 56 (D.E. # 408, pp. 2, 7, 20, and 23-24 of 32).
[11] Mot., para. 31 (ECF #408, pg. 13 of 32).
[12] *In re VTN, Inc.*, 65 B.R. 278, (Bankr. S.D. Fla. 1986)(Weaver, J.).
[13] *Woods v. City Nat'l. Bank & Trust Co. of Chicago*, 312 U.S. 262, 269, 61 S. Ct. 493 (1941)("Only strict adherence to these equitable principles can keep the standard of conduct for fiduciaries 'at a level higher than that trodden by the crowd.'")(*quoting Meinhard v. Salmon*, 164 N.E. 545, 547 (N.Y. Ct. Appeals 1928)(Cardozo, J.).

appointed to the committee.[14] The members of an official committee must act in the best interest of the body of general unsecured creditors as a whole and may not maximize their own interests at the expense of any individual or group of general unsecured creditors.[15]

### *Burden of Proof and Persuasion*

The Movants possess the burdens of proof and persuasion. The Movants must demonstrate that it is necessary to direct the appointment of a separate segregated committee of creditors holding unsecured claims because the Official Committee cannot, is not, and will not adequately represent all creditors holding unsecured claims. This is why an order under 11 U.S.C. § 1102(a)(2) is an extraordinary remedy that courts are reluctant to grant.[16]

### *Statutory Application of 11 U.S.C. § 1102(a)(2)*

Under § 1102(a)(2) this Bankruptcy Court may direct the appointment of an additional committee if it is "necessary to assure adequate representation of creditors,"[17] which, although still being discretionary, is a higher standard than that of "deems appropriate."[18] Any determination whether to appoint an additional committee under § 1102(a) necessarily must be read in concert with § 1102(b)(1), which provides that any committee appointed under § 1102(a) must be comprised of creditors holding claims of the kind represented by such committee.[19] The

---

[14] *In re Enron Corp*., 279 B.R. 671, 689 (Bankr. S.D.N.Y. 2002), *aff'd sub nom. Mirant Americas Energy Mktg., L.P. v. Official Comm. Of Unsecured Creditors of Enron Corp*., 2003 WL 22327118 (S.D.N.Y., Oct. 10, 2003).

[15] *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 836 (Bankr. D. Del 2008)(plan negotiated by committee provided for some general unsecured claims to receive 100% while other received approximately 13.2%).

[16] *In re Winn-Dixie Stores, Inc.,* 326 B.R. 853, 857 (Bankr. M.D. Fla. 2005); In re Dana Corp., 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006); *Enron Corp*., 279 B.R. at 685.

[17] *See generally In re National R.V. Holdings, Inc*., 300 B.R. 690 (Bankr. C.D. Cal. 2008); *In re Williams Communications Group, Inc*., 281 B.R. 216 (Bankr. S.D.N.Y. 2002).

[18] 11 U.S.C. § 1102(a)(1). Such administrative discretion connotes that the administrative officer considered it acceptable, believed it to be appropriate, found it to be suitable, or regarded it as proper. These discretionary beliefs differ than making a finding that an additional committee "is necessary to assure adequate representation."

[19] *See In re Johns-Manville*, 68 B.R. 155 (S.D.N.Y. 1986); *In re Edison Bros. Stores, Inc*., 1996 WL 534853 (D. Del., Sept. 17, 1996)

Movants seek the appointment of a committee of unsecured creditors, and therefore, both the Official Committee and the Movants' desired insular committee both would represent nothing more than general unsecured claims.

Prior to the voluntary resignations from the Official Committee, the Movants were not only represented by the Official Committee, but two held membership appointments on it.[20] The Movants were unsatisfied with fiduciary representation and discontent that they did not control the Official Committee by sheer numerosity.[21] Congress noted, the chief concern of adequacy of representation is whether it appears that *different classes of debt* may be treated differently under a plan and need representation through appointment of additional committees to represent those different classes of debt.[22]

### Necessary under 11 U.S.C. § 1102(a)(2)

The first prong under an § 1102(a)(2) analysis is whether a second committee is *necessary*. The standard of *necessary* is a high standard that is far more difficult to meet than *deems appropriate*.[23] Just as it may be useful for a party to be represented by counsel, it may be useful were the Movants to control their own committee. But Congress did not codify the term "useful" in § 1102(a)(2), nor did it codify "convenient" or "appropriate." Rather, the question this Bankruptcy Court must address is one of necessity: <u>Is a segregated insular committee necessary?</u> To ascertain what is necessary under § 1102(a)(2), this Bankruptcy Court must look to the request being sought by the Movants—the formation of a group of creditors all holding like similar claims so that they may have a fiduciary voice represent the group as one in a bankruptcy matter.

---

[20] Ntc. Reconstituted Official Committee of Unsecured Creditors (D.E. # 400).
[21] Mot., para. 53 (D.E. # 408, pg. 22 of 32).
[22] H.R. Rep. 595, 95th Cong.., 1st Sess. 401 (1997), U.S. Code Cong. & Admin. News 1978, p. 5787

An official committee is designed to "enable investigation and to provide a forum for negotiation on behalf of all of the claims or interests they represent."[24] The Bankruptcy Court must scrutinize whether a segregated insular committee is necessary to provide the Movants equal protections that the Official Committee either cannot provide or refuses to provide. Here, the Official Committee represents all of the claims or interests of creditors holding unsecured claims. The Movants are creditors holding unsecured claims. The Bankruptcy Code and Rules offer no recognizable specialized statutory treatment of their claims nor does public policy carve out their general unsecured claims from other unsecured claims. Movants fail to present any allegations of any breach of the Official Committee's fiduciary duties and obligations owing to any creditors holding unsecured claims such that an appointment of a separate committee is necessary under § 1102(a)(2).

### Assure Adequate Representation Under 11 U.S.C. § 1102(a)(2)

The second prong of 11 U.S.C. § 1102(a)(2) is whether a segregated insular committee *assures adequate representation.* Because § 1102(a) addresses committee formation and appointment, assuring a party in interest adequate representation necessarily does not provide that party a statutory right to its own appointed legal counsel. Thereby, assuring adequate representation is far less than appointing an attorney to represent a creditor.

Assuring adequate representation does not require a "proportionate representation of distinct groups of creditors."[25] An adequately representative committee need only be broadly typical, and does not need to be a replica or mirror image of the general population of unsecured

---

[23] *In re Oneida, LTD.*, 2006 WL 1288576 (Bankr. S.D.N.Y. 2006).
[24] *In re Drexel Burnham Lambert Group., Inc*., 118 B.R. 209, 212-13 (Bankr. S.D.N.Y. 1990).
[25] *In re Garden Ridge Corp*., 2005 WL 523129, at *3 (Bankr. D.Del., Mar. 2, 2005).

creditors.[26] In exercising discretion under 11 U.S.C. § 1102(a)(2), courts have used multiple

factors on a case-by-case basis in determining whether an additional committee would assure an

identifiable group of creditors adequate representation in a chapter 11 case. [27]

### Application of the Winn-Dixie Factors under 11 U.S.C. § 1102(a)(2)

The *Winn-Dixie* factors constitute a non-exhaustive list of factors including, but not

limited to: (1) the ability of the committee to function; (2) the nature of the case; (3) the standing

and desires of the various constituencies in the case; (4) the ability for creditors to participate in

the case even without the appointment of an additional committee, including any potential to

recover expenses under § 503(b); (5) whether different sectors of similarly situated creditors may

be treated differently under a plan and need separate committee representation; (6) the

motivation of the movants; (7) the delay and additional cost of granting the motion; (8) the point

in the proceeding when the motion is made; (9) the unique tasks the committee would perform

that would be different than that of the Official Committee; and (10) any other relevant factors.[28]

This review is done on a case-by-case basis. Adequate representation "lies not in the uniqueness

of a single claim but 'in the nature of the case and the composition of the committee.'"[29] As no

one factor is dispositive and must be considered together, the U.S. trustee will only highlight

certain factors: (a) lack of need for separate representation; (b) the motivation of the movants; (c)

lack of unique tasks such an additional committee would perform; (d) the burden to the estate;

(e) no disparate treatment by the Debtors and (f) other relevant factors.

---

[26] *In re Dana Corp.*, 344 B.R. 35, 39 (S.D.N.Y. 2006); *see also In re Park West Circle Realty, L.L.C.*, 2010 WL 3219531, at *2 fn.6 (Bankr. S.D.N.Y., Aug. 11, 2010); *accord In re Hill Stores Co.*, 137 B.R. 4, 7 (Bankr. S.D.N.Y. 1992); *In re Sharon Steel Corp.*, 100 B.R. 767, 777-78 (Bankr. W.D. Pa. 1989).
[27] *In re Winn-Dixie Stores, Inc.*, 326 B.R. 853, 857 (Bankr. M.D. Fla. 2005).
[28] *Winn-Dixie*, 326 B.R. at 857; *see also Enron Corp.*, 279 B.R. at 685; and *Dana Corp.*, 344 B.R. at 38.

*Need for Representation*

The Movants fail to adequately address the need for separate representation of their approximately 63 general unsecured claims juxtaposed against the approximate 2,445 total general unsecured claims. Likewise, the Movants do not state which general unsecured creditors they want to segregate from the general population of creditors holding unsecured claims. The Movants fail to cite to any statutory authority or public policy issue weighing in favor of special, disparate, or different treatment of their claims. Until the voluntary resignations a mere two days after their appointment, the Official Committee was representative of the type of creditors the Movants allege to be not adequately represented by the Official Committee.

*Motivation of the Movants and the*
*Movants Ability to Participate without a Committee*

By enacting 11 U.S.C. § 1109(b), Congress ensured that not only were all parties in interest afforded standing to be heard, but also that members of an official committee still retained their own independent voice—and ensured that such members would be heard over the drone and din of a committee. The Movants have not demonstrated how the bankruptcy estate, its creditors, and the estate fiduciaries would be better served by having a second committee of creditors holding unsecured claims segregated from the general population of creditors holding unsecured claims. Likewise, the Movants have not established nor demonstrated that a segregated insular committee would assist or be an asset to these bankruptcy estates and the creditors.

Determining the legitimacy of a party in interests' motives to be segregated from the general population of creditors holding unsecured claims is critical. Because the Movants have

---

[29] *Drexel*, 118 B.R. at 212 (*quoting McLean Indus.*, 70 B.R. at 861).

not identified the putative segregated claimants, the Movants cannot demonstrate or establish

that those claimants hold no intentions to trade in claims, securities, rights, choses in action, or

causes of action. Two of the Movants intended to use proxies were they to be appointed to the

Official Committee. But hidden agendas are anathema to any committee exercising fiduciary

duties to creditors holding unsecured claims.

*The Timing of the Motion and*
*The Cost of Granting the Motion*

Although the U.S. trustee takes no issue with the timing of the Movants' motion, that

cannot be gainsaid of the costs were the motion granted. On December 6, 2022, this Court

inquired as to the additional costs and administrative burden that could inure to the bankruptcy

estate as a result of the Official Committee seeking the appointment of its own Investment

Banker. Were this Bankruptcy Court to condone a segregated insular committee of unsecured

creditors, there necessarily would likely be additional local committee counsel, national

committee counsel, a CPA if not a Financial Advisor, an additional Investment Banker, and

additional committee member expenses. On top of that, the Movants' concede that their rights

and interests would be in conflict with those of the Official Committee.[30] So any cost benefit to

sharing of professionals between committees is illusory.

*Whether Different Sectors of General Unsecured Creditors may be*
*Afforded Different Treatment and Thereby Require Committee Representation*

The Debtors have not proposed a plan of reorganization nor provided significant detail

about any exit strategy in its papers filed to date or its testimony at the meetings of creditors.

Debtors have not indicated that they would separate classify certain general unsecured claims

---

[30] Mot. paras. 8, 31, and 46 (D.E. # 408, pp. 5, 13, and 20 of 32).

were a plan to be filed. The Movants do not provide or establish any statute or any public policy

issue that would provide the Movants with any treatment different than that provided to creditors

holding unsecured claims. Accordingly, the Movants' rights and interests are already adequately

represented by the Official Committee.

*Unique Tasks that the Movants' Committee Would Perform*
*Which Would be Different than that of the Official Committee*

The Movants neither address nor established the unique tasks to be performed by the

Movants' desired committee that differ from the Official Committee. For example, these

Movants do not hold claims against these Debtors arising from being victims of juvenile sexual

assault by a religious organization or a national "youth program of character development and

values-based leadership training, which helps young people be 'Prepared for Life.'"[31] Likewise,

these Movants are not equity security holders or any similarly identifiable group of claimants

holding claims to which title 11 provides some recognized treatment. Therefore, this Court

should carefully scrutinize what unique services and tasks the Movants' desired committee

would perform distinct from the Official Committee.

*Un-Enumerated or Any Other Relevant Factors*

This Bankruptcy Court should scrutinize other un-enumerated or relevant factors in

determining whether to legally condone segregating the Movants out of the general population of

creditors holding unsecured claims. This would include whether these Movants are seeking to

shift their costs of being heard in this case to the detriment of the bankruptcy estate and all other

general unsecured creditors. Another un-enumerated factor arises in the business identifiable

information, other privileged information, and potential conflict issues arising in these jointly

administered cases. The Movants have not fully addressed or established that there are no

concerns with potential disclosure of business identifiable information, other privileged

information, potential conflicts, proxies, or trading of claims, causes of actions, judgments, or

rights to recoveries.

### *Conclusion*

Congress did not design an official committee to provide a podium for a particular

creditor, but rather a fiduciary mouthpiece for a class of creditors. Section 1102(b)(1) clearly

indicates Congressional intent against segregated general unsecured creditor committees when

Congress stated that committees should have members appointed that are willing to serve,

holding claims "against the debtor of the kinds represented on such committee." Because the

Movants hold nothing more than general unsecured claims against the debtor, the Official

Committee assures adequate representation.

The Movants fail to establish adequate and sufficient cause exists under 11 U.S.C. §

1102(a)(2) that the Official Committee does not and cannot assure adequate representation of the

rights and interests of all creditors holding unsecured claims. Further Movants fail to establish

that it is compulsory to segregate the Movants from the general population of creditors holding

unsecured claims to assure adequate representation of the Movants. Such segregation under

sanction of law deprives the universe of general unsecured creditors of the benefits that they

could receive because full integration in one committee necessarily assures adequate

representation and equal protection.

---

[31]https://www.scouting.org/about/#:~:text=The%20Boy%20Scouts%20of%20America%20(BSA)%20provides%20the%20nation's%20foremost,For%20Life.

The Movants are not entitled to segregate themselves under color of law from the general population of creditors holding unsecured claims. The Movants motion for an order directing the U.S. trustee to appoint a second committee of creditors holding unsecured claims should be denied.

Dated:  12 December 2022

Respectfully submitted,

Mary Ida Townson
U.S. TRUSTEE, REGION 21

By:    /s/ Heidi A. Feinman
       HEIDI A. FEINMAN
       Assistant United States Trustee
       Florida Bar No. 0879460
       Office of the U.S. Trustee
       51 SW First Avenue, Suite 1204
       Miami, FL 33130
       (305) 536-7285

       and

       J. Steven Wilkes (Ala Bar # WIL-278)
       Trial Attorney
       U.S. Department of Justice
       Office of the U.S. Trustee, Region 21
       501 East Polk Street, Suite 1200
       Tampa, Florida 33602
       (813) 228-2000 / fax (813) 228-2303
       steven.wilkes@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served electronically, or via United States mail service postage prepaid, on or before 12 December 2022:

Electronically:      Counsel for the Movants
                      Debtors' Counsel
                      Official Committee Counsel
All other parties receiving CM/ECF Notice of Filing

/s/ J. Steven Wilkes
J. Steven Wilkes
Trial Attorney
U.S. Department of Justice
Office of the U.S. Trustee, Region 21
501 East Polk Street, Suite 1200
Tampa, Florida 33602
(813) 228-2000 / fax (813) 228-2303
steven.wilkes@usdoj.gov