UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                    Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]          Case No.: 22-17842-PDR

    Debtors.                                          (Jointly Administered)

_____/

## DEBTORS' APPLICATION FOR ORDER AUTHORIZING THE EMPLOYMENT OF ANDREW P. BEILFUSS AND THE LAW FIRM OF QUARLES & BRADY LLP AS SPECIAL COUNSEL TO THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE

Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev LLC and Vital Pharmaceuticals International Sales, Inc. (collectively, the "Debtors"), by and through their proposed undersigned counsel, pursuant to 11 U.S.C. § 327(e), Fed. R. Bankr. P. 2014(a), 2016 and 6003, Local Rules 2014-1(A) and 2016-1(A), hereby apply for entry of an order, substantially in the form attached hereto, authorizing the Debtors to retain and employ Andrew P. Beilfuss and the law firm of Quarles & Brady LLP ("Q&B") as special counsel, pursuant to 11 U.S.C. §327(e), effective as of the Petition Date. In support of this Application, the Debtors rely upon the *Declaration of Andrew P. Beilfuss, on Behalf of Quarles & Brady LLP, as Proposed Special Counsel to the Debtors* (the "Beilfuss Declaration"), and respectfully represent as follows:

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are 11 U.S.C. §327(e), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure, and Local Rules 2014-1(A) and 2016-1(A).

## BACKGROUND

4.      On October 10, 2022 (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code, 11 U.S.C. §§101 *et seq.* (the "Bankruptcy Code").

5.      The Debtors are operating their business and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      For a detailed description of the Debtors and their operation, the Debtors respectfully refer the Court and parties in interest to the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* [ECF No. 26].

### The California District Court Action

7.      On September 4, 2018, Monster Energy Company ("Monster") initiated an action against Vital Pharmaceuticals, Inc. ("VPX") and its Chief Executive Officer and sole owner, John H. "Jack" Owoc, in the United States District Court for the Central District of California (the "California Court") entitled *Monster Energy Co. v. Vital Pharmaceuticals, Inc.*, Case No. 18-cv-1882 (C.D. Cal.) (the "California District Court Action").  The California District Court Action asserts claims against VPX for alleged false advertising, alleged trade secret

misappropriation, alleged violations of the Federal Computer Fraud and Abuse Act, and alleged interference with certain of Monster's contracts for retail shelf space.

8.      The California District Court Action has involved production of hundreds of thousands of documents from parties and nonparties, more than 70 depositions, and significant motion practice over four years.  The California District Court Action was tried to a jury beginning on August 25, 2022.  The trial was complex, involving dozens of witnesses and hundreds of admitted exhibits.  On September 29, 2022, the jury found in favor of Monster and against VPX (the "Verdict") on all five claims tried to the jury.  The California Court has not entered judgment on the Verdict.[2]

9.      Q&B was prepetition counsel to VPX and Mr. Owoc in the California District Court Action; postpetition, Q&B has represented, and will represent, only VPX in the California District Court Action.

### The OBI Appeal

10.     In 2010, Orange Bang, Inc. ("OBI") and VPX entered into an agreement that settled OBI's allegations that VPX's BANG supplement product infringed OBI's trademark in the name ORANGE BANG for one of OBI's beverage products.

11.     In 2019, OBI assigned its rights under that settlement agreement to Monster, without VPX's knowledge.

12.     In June 2020, Monster and OBI demanded arbitration of claims against VPX alleging breach of the settlement agreement and further trademark infringement by VPX.  VPX

---

[2] On December 1, 2022, the Court entered an order [ECF No. 450] granting the *Debtors' and Creditor Monster Energy Company's Joint Agreed Motion for Relief From Automatic Stay to Continue Action in Nonbankruptcy Forum* [ECF No. 312], modifying the automatic stay to allow Monster and VPX to complete post-verdict briefing through final judgment in the California District Court Action.

11757001-3

brought suit in the California Court, seeking a judicial determination that those claims were not subject to arbitration. The California Court, however, ordered arbitration.

13.     On April 6, 2022, a *Final Arbitration Award – Phase 1 and Phase 2*, (the "Final Arbitration Award") was entered in favor of OBI and Monster, and against Debtors VPX and JHO Intellectual Property Holdings, LLC ("JHO") (the owner of the BANG trademark), in an arbitration proceeding captioned *Orange Bang, Inc. and Monster Energy Company v. Vital Pharmaceuticals, Inc. d/b/a VPX Sports*, AAA Case No. 01-20-0005-6081, pending before the American Arbitration Association (the "Arbitration Proceeding").

14.     VPX and JHO appealed the Final Arbitration Award to the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit"), which docketed the appeal on July 28, 2022 as Case No. 22-55722. VPX and JHO later appealed the California Court's entry of judgment on the Final Arbitration Award, which was docketed in the Ninth Circuit as Case No. 22-56019 (collectively, with Case No. 22-55722, the "OBI Appeal").[3]

15.     Q&B was prepetition counsel to VPX and JHO in the Arbitration Proceeding and OBI Appeal.

### The Warner Litigation

16.     VPX and Mr. Owoc are defendants in litigation (the "Warner Litigation") pending in the United States District Court for the Southern District of Florida and entitled *Atlantic Recording Corp., et al. v. Vital Pharmaceuticals, Inc. et al.*, Case No. 22-22951, brought by certain music publishers and/or copyright owners, alleging claims of copyright infringement arising from the use of music on certain social media platforms such as Tik Tok and Instagram.

---

[3] By orders entered on November 1 and November 28, 2022 the Ninth Circuit stayed briefing in the OBI Appeal, on account of the filing of the captioned chapter 11 cases. VPX and JHO anticipate that the parties will stipulate to (a) consolidating the two appeals; (b) relief from the automatic stay to allow the consolidated appeals to continue, and (c) an agreed briefing schedule related thereto.

4

17.    The claims against VPX have been stayed as a result of the filing of the captioned chapter 11 cases.  The Debtors are documenting an agreement in principle with the plaintiffs in the Warner Litigation to stay the Warner Litigation as to Mr. Owoc at least through April 2023.

18.    Q&B was prepetition counsel to VPX and Mr. Owoc in the Warner Litigation.

### The PHD Marketing Appeal

19.    Prepetition, Q&B represented VPX and JHO as plaintiffs in a trademark infringement suit against PHD Marketing, Inc. brought in the California Court and style *Vital Pharmaceuticals, Inc. and JHO Intellectual Property Holdings, LLC v. PHD Marketing, Inc.*, Case No. 2:20-cv-06745-RSWL-JC.

20.    PHD Marketing's appeal of the California Court's judgment in VPX's favor is currently pending in the Ninth Circuit as No. 22-55815 (the "PHD Marketing Appeal").

21.    Q&B was prepetition counsel to VPX and JHO in the PHD Marketing Appeal, as well as in the underlying litigation.

### The W&G Appeal

22.    Prepetition, VPX retained Q&B to prosecute an appeal of a Wisconsin state court judgment in favor of Webb & Gerritsen, Inc. ("W&G") and against VPX for alleged violation of the Wisconsin Fair Dealership Law.  (Q&B was not trial counsel in that matter.)  The matter is currently pending at the Wisconsin Court of Appeals (the intermediate Wisconsin appellate court) as Appeal No. 22-AP-488 (the "W&G Appeal").  A briefing schedule has not yet been set, pending transmission of the record by the Wisconsin trial court to the appellate court

### RELIEF REQUESTED

23.    By this Motion, the Debtors seek authorization to retain Q&B to represent (a) VPX in the California District Court Action; (b) VPX and JHO in the OBI Appeal; (c) VPX and

Mr. Owoc in the Warner Litigation; (d) VPX and JHO in the PHD Marketing Appeal, and (e) VPX in the W&G Appeal.

24.    In addition, the Debtors have requested that Q&B continue to represent VPX, as it has prepetition, as general counsel for transactional matters on an as-needed basis, including, but not necessarily limited to (a) matters regarding distributorship agreements and disputes arising in distributor-related matters; (b) regulatory matters (including, but not necessarily limited to, regulation pertaining to the sale and distribution of beverages containing alcohol, such as hard seltzer), and (c) general corporate matters (but excluding representation of VPX as bankruptcy counsel and the rendering of advice regarding matters involving VPX's bankruptcy cases), including, without limitation, advice regarding general intellectual property matters (but excluding representation of the Debtors before the Trademark Trial and Appeal Board, unless (i) the Debtors and Q&B agree to expand the scope of Q&B's special counsel representation to include any such matters and (ii) the Court approves such expansion of Q&B's representation) (the "General Counsel Matters").

### Services to be Rendered Regarding the California District Court Action

25.    VPX commenced the captioned chapter 11 case before the parties could fully brief, and the California Court could decide, multiple claims for equitable relief and other remaining issues in the litigation, including, without limitation: (a) VPX's request to reduce or set aside the Verdict and (b) Monster's request for (i) a permanent injunction; (ii) enhanced damages and disgorgement of profits under the Lanham Act; (iii) punitive and/or exemplary damages, and (iv) attorneys' fees, costs, and interest.

26.    The Debtors propose to retain Beilfuss and Q&B in connection with the California District Court Action to render services that include, without limitation, the following:

11757001-3

(a)    researching, drafting, and prosecuting all post-verdict motions;

(b)    researching, drafting, and prosecuting all responses, answers, objections, replies, and related papers in opposition, or otherwise in response, to filings made by Monster;

(c)    preparing and filing one or more notices of appeal to the Ninth Circuit (collectively, an "Appeal");

(d)    researching, drafting, and preparing all motions, briefs, stipulations, records on appeal, and related papers with regard to an Appeal;

(e)    appearing for VPX in the California Court and before the Ninth Circuit in connection with any of the above, including preparing for and presenting oral argument;

(f)    preparing papers in connection with, and representing VPX in, any mediation proceedings involving any of the above;

(g)    participating in negotiations, settlement discussions, conferences, and related meetings regarding any of the above;

(h)    participating in client conferences and/or preparing status reports to ensure that VPX is aware of all developments in the California District Court Action and any related Appeal, and

(i)    performing any services ancillary or related to any of the above, as requested by the Debtors.

### Services to be Rendered Regarding the OBI Appeal

27.    The Debtors propose to retain Beilfuss and Q&B in connection with the OBI Appeal to render services that include, without limitation, the following:

(a)    researching, drafting, and preparing all motions, briefs, stipulations, records on appeal, and related papers with regard to the OBI Appeal;

11757001-3

(b)      researching, drafting, and prosecuting all responses, answers, objections, replies, and related papers in opposition, or otherwise in response, to papers filed by Monster and/or OBI;

(c)      appearing for VPX and JHO before the Ninth Circuit in connection with any of the above, including preparing for and presenting oral argument;

(d)      preparing papers in connection with, and representing VPX and JHO in, any mediation proceedings involving the OBI Appeal;

(e)      participating in negotiations, settlement discussions, conferences, and related meetings in connection with the OBI Appeal;

(f)      participating in client conferences and/or in preparing status reports to ensure that VPX and JHO are aware of all developments in the OBI Appeal, and

(g)      performing any services ancillary or related to any of the above, as requested by the Debtors.

### Services to be Rendered Regarding the Warner Litigation

28.     As described above, the Warner Litigation is stayed as to VPX, and the Debtors and plaintiffs have reached an agreement to stay the Warner Litigation as to Mr. Owoc personally at least through April 2023.

29.     If the Warner Litigation remains stayed, the Debtors will not require Q&B to perform few, if any, services as special counsel regarding that litigation.  However, the Debtors propose to retain Beilfuss and Q&B to represent VPX in all aspects of the Warner Litigation to the extent any claims against VPX ultimately go forward in the Warner Litigation during the pendency of these chapter 11 cases.

8

**Services to be Rendered Regarding the PHD Marketing Appeal**[4]

30.    The Debtors propose to retain Beilfuss and Q&B in connection with the PHD Marketing Appeal to render services that include, without limitation, the following:

(a)    researching, drafting, and preparing all motions, briefs, stipulations, records on appeal, and related papers with regard to the PHD Marketing Appeal;

(b)    researching, drafting, and prosecuting all responses, answers, objections, replies, and related papers in opposition, or otherwise in response, to papers filed by PHD Marketing;

(c)    appearing for VPX and JHO before the Ninth Circuit in connection with any of the above, including preparing for and presenting oral argument;

(d)    preparing papers in connection with, and representing VPX and JHO in, any mediation proceedings involving the PHD Marketing Appeal;

(e)    participating in negotiations, settlement discussions, conferences, and related meetings in connection with the PHD Marketing Appeal;

(f)    participating in client conferences and/or in preparing status reports to ensure that VPX and JHO are aware of all developments in the PHD Marketing Appeal, and

(g)    performing any services ancillary or related to any of the above, as requested by the Debtors.

---

[4] The Debtors are evaluating whether to seek Court authority to proceed with the PHD Marketing Appeal or to allow it to remain stayed.  The services described below are those that are proposed to be rendered by Q&B in the event the PHD Marketing Appeal proceeds.

11757001-3

**<u>Services to be Rendered Regarding the W&G Appeal</u>**

31.    The Debtors propose to retain Beilfuss and Q&B in connection with the W&G

Appeal to render services that include, without limitation, the following:

(a)    researching, drafting, and preparing all motions, briefs, stipulations,

records on appeal, and related papers with regard to the W&G Appeal;

(b)    researching, drafting, and prosecuting all responses, answers, objections,

replies, and related papers in opposition, or otherwise in response, to papers filed by W&G;

(c)    appearing for VPX before the Wisconsin Court of Appeals in connection

with any of the above, including preparing for and presenting oral argument;

(d)    preparing papers in connection with, and representing VPX in, any

mediation proceedings involving the W&G Appeal;

(e)    participating in negotiations, settlement discussions, conferences, and

related meetings in connection with the W&G Appeal;

(f)    participating in client conferences and/or in preparing status reports to

ensure that VPX is aware of all developments in the W&G Appeal, and

(g)    performing any services ancillary or related to any of the above, as

requested by the Debtors, and

(h)    providing similar services in connection with any petition for review by

the Wisconsin Supreme Court, whether such petition is filed by VPX or W&B.

**<u>Services to be Rendered as General Counsel Matters</u>**

32.    The Debtors propose to retain Beilfuss and Q&B in connection with the General

Counsel Matters to render services that include, without limitation, the following:

(a)      drafting, reviewing, and negotiating contracts (including, but not limited to, distributorship agreements);

(b)      advising on general distributor-related matters, including, without limitation, advising on, preparing communications regarding, and negotiating any disputes, claims, or contentions that might arise in such matters;

(c)      providing regulatory advice, including, but not limited to, advising on regulations pertaining to sale and distribution of beverages containing alcohol such as hard seltzer, and

(d)      providing general corporate advice and assistance with general corporate matters for VPX and its Debtor-affiliates (but excluding representation of VPX as bankruptcy counsel and the rendering of advice regarding matters involving VPX's bankruptcy cases), including, without limitation, advice regarding general intellectual property matters (but excluding representation of the Debtors before the Trademark Trial and Appeal Board, unless (i) the Debtors and Q&B agree to expand the scope of Q&B's special counsel representation to include any such matters and (ii) the Court approves such expansion of Q&B's representation).

### BASIS FOR RELIEF REQUESTED

33.      Section 327(e) of the Bankruptcy Code provides that a debtor "may employ, for a specified special purpose, … an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed."

34.      The Debtors have determined that obtaining the continuing services of Beilfuss and Q&B in the matters described herein is in the best interests of the Debtors and their estates, creditors, and other parties in interest.

11

11757001-3

35.     Beilfuss and Q&B have represented the Debtors in the California District Court Action, the Warner Litigation, the PHD Marketing Appeal (and the related underlying trial court litigation) since their respective inceptions.  Beilfuss and Q&B represented VPX and JHO in the Arbitration Proceeding and assisted VPX and JHO, prepetition, with the commencement of the OBI Appeal.  Beilfuss and Q&B are VPX's sole appellate counsel in the W&G Appeal.  Finally, Beilfuss and Q&B have represented VPX and its affiliates prepetition in the General Counsel Matters.

36.     Accordingly, by this Application, the Debtors seek to employ Beilfuss and the attorneys and paraprofessionals of Q&B, pursuant to the terms of (a) a letter dated November 30, 2022 regarding "Agreement for Legal Services" and (b) a letter dated December 6, 2022 regarding "Joint Representation" (collectively, the "Engagement Letter"; copies of the items described in the preceding clauses (a) and (b) are attached hereto as **Exhibit "A"**).

37.     Beilfuss and Q&B are well qualified to represent VPX in connection with the matters described herein, because of their extensive experience representing debtors and other parties in all types of complex commercial bankruptcy cases and commercial litigation matters, their long experience with matters related to the Debtors' businesses, and their familiarity and extensive participation as counsel to VPX and JHO in the matters described herein.

38.     Moreover, Q&B has represented VPX and its affiliated entities in the General Counsel Matters prepetition and has developed significant familiarity and experience with the Debtors' businesses and their needs in those areas.

## No Adverse Interest

39.     Attached hereto as **Exhibit "B"** is the Beilfuss Declaration.  As set forth in the Beilfuss Declaration, to the best of Beilfuss's knowledge, and except as set forth therein, neither

11757001-3

he nor Q&B holds any interest adverse to the Debtors or their estates with respect to the matters on which they are to be employed by the Debtors.

40.    Q&B is not holding a prepetition retainer in connection with its proposed representation of the Debtors.

41.    As of the Petition Date, Q&B held an unsecured, non-priority claim against VPX in the amount of not less than $1,417,934.25 (the "Q&B Claim").[5]  To the best of Beilfuss's knowledge, the Q&B Claim is neither contingent, nor unliquidated, nor disputed.  Q&B intends to file a proof of claim for, and to seek payment of, the Q&B Claim pursuant to the applicable provisions of the Bankruptcy Code and related federal and local rules of procedure.

42.    Beilfuss and Q&B were retained prepetition to represent the applicable Debtors in all of the matters described above.  The Q&B Claim arises from unpaid amounts for prepetition services rendered under an alternative fee arrangement with the Debtors on one or more of the matters described above and unpaid amounts for prepetition services charged on matters for which Q&B is not being retained as special counsel.

43.    The Debtors seek to retain Q&B to represent both VPX and Mr. Owoc concurrently in the Warner Litigation, as Q&B has done prepetition.  The plaintiffs in the Warner Litigation assert various claims under federal copyright law; each claim is asserted against both VPX and Mr. Owoc, with no distinction drawn between the two.  The interests of VPX and Mr. Owoc are therefore aligned in the Warner Litigation.

44.    Moreover, the Warner Litigation has been stayed against VPX by the presiding judge, and the plaintiffs have agreed to a stay as to Mr. Owoc through at least April 2023. Therefore, as a practical matter, the Debtors would expect to require few, if any, services from

Q&B in connection with the Warner Litigation, but wish to retain Q&B in the event that issues in that litigation do become active during the Debtors' chapter 11 cases.

45.     Finally, Q&B will represent neither VPX nor Mr. Owoc in disputes (if any) that may arise between the two in the Warner Litigation, including, without limitation, as to indemnification or coverage under the Debtors' directors and officers insurance policy.

## COMPENSATION AND PAYMENT PROCEDURES

46.     Subject to Court approval in accordance with Bankruptcy Code §§ 330(a) and 331, compensation will be payable to Q&B on an hourly basis, plus reimbursement of actual, necessary expenses incurred by Q&B in connection with services rendered as special counsel, as described in more detail in the Engagement Letter.

47.     Q&B's current hourly rates for attorneys range from $300 for associates to $1,140 for partners; its current hourly rates for paralegals range from $185 to $300.   As an accommodation to the Debtors and their estates, Q&B has agreed that the hourly rates it will charge to the Debtors for services performed as special counsel will not exceed a blended rate of $495 for all partner time and $395 for all associate time and that it will charge all paralegal time at $275 per hour.

48.     It is Q&B's policy to charge its clients for all expenses incurred in connection with the client's case.   The expenses charged to clients include, among other things, photocopying, outgoing faxes, mail and express mail charges, special or hand delivery charges, travel expenses, expenses for working meals, and transcription costs.   Q&B will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to Q&B's other clients, subject to the Local Rules of this Court.   Q&B will maintain detailed

---

[5]   Q&B continues to review its billing records and refine its calculation of its prepetition claim against VPX;

records of actual and necessary costs and expenses incurred in connection with the legal services described above.

49.    Beilfuss and Q&B will submit applications for compensation and reimbursement of expenses to this Court for approval pursuant to section 330 and 331 of the Bankruptcy Code and the applicable Federal Rules of Bankruptcy Procedure and the Local Rules of this Court.

50.    Beilfuss and Q&B also intend to seek interim compensation pursuant to this Court's *Order Granting Debtors' Motion for Order Establishing Procedures for Monthly and Interim Compensation and Reimbursement of Expenses for Professionals* [ECF No. 396].

51.    Beilfuss and Q&B have agreed to work cooperatively with the Debtors' other professionals to avoid duplicative and/or competing efforts.

52.    Q&B first provided postpetition services to the Debtors on the Petition Date. Because these services were reasonable and necessary in connection with protection of the interests of the Debtors in the matters upon which Beilfuss and Q&B are to be employed and could not be delayed without compromising the Debtors' interests in those matters, the Debtors request that Q&B's retention be made effective as of the Petition Date.

**WHEREFORE,** the Debtors respectfully request the entry of an order, in the form attached hereto as **Exhibit "C"**, (A) approving the Debtors' employment of Beilfuss and Q&B as special counsel to the Debtors on the terms described herein and in the Engagement Letter, effective as of the Petition Date; and (B) granting the Debtors such other and further relief as

---

therefore, the amount of Q&B's filed proof of claim may differ from this figure.

11757001-3

may be just and proper.

Dated: December 14, 2022                        Respectfully submitted,
      Miami, Florida

                                                        */s/ Jordi Guso*

George A. Davis (admitted *pro hac vice*)          Jordi Guso
Tianjiao ("TJ") Li (admitted *pro hac vice*)        Florida Bar No. 863580
Brian S. Rosen (admitted *pro hac vice*)            Michael J. Niles
Jonathan J. Weichselbaum (admitted *pro hac vice*)   Florida Bar No. 107203
**LATHAM & WATKINS LLP**                       **BERGER SINGERMAN LLP**
1271 Avenue of the Americas                    1450 Brickell Avenue, Suite 1900
New York, NY 10020                             Miami, FL 33131
Telephone:  (212) 906-1200                     Telephone:  (305) 755-9500
Email:  george.davis@lw.com                    Email:  jguso@bergersingerman.com
       tj.li@lw.com                                    mniles@bergersingerman.com
       brian.rosen@lw.com
       jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Jeramy D. Webb (admitted *pro hac vice*)
Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  jeramy.webb@lw.com
       whit.morley@lw.com

*Co-Counsel for the Debtors*

11757001-3

**<u>EXHIBIT A</u>**
**(Engagement Letter)**



411 East Wisconsin Avenue
Suite 2400
Milwaukee, WI 53202-4428
414-277-5000
Fax 414-271-3552
www.quarles.com

Attorneys at Law in
Chicago
Indianapolis
Madison
Milwaukee
Minneapolis
Naples
Phoenix
Scottsdale
Tampa
Tucson
Washington, D.C.

Writer's Direct Dial: 414-277-5111
E-Mail: Andrew.Beilfuss@quarles.com

November 30. 2022

**PRIVILEGED AND CONFIDENTIAL**

Gregg Metzger
Chief Litigation Counsel
Vital Pharmaceuticals, Inc.
1600 North Park Drive
Weston, FL 33326

> **RE:**   *Agreement for Legal Services*

Dear Gregg:

We are pleased that Quarles & Brady LLP (the "Firm") has been selected as special counsel to represent Vital Pharmaceuticals, Inc. ("Vital") and JHO Intellectual Property Holding, LLC ("JHO"). This letter confirms the engagement of the Firm, describes the scope of the Firm's representation of Vital and JHO, the basis on which fees and expenses will be billed to Vital and JHO, and other important aspects of the representation. Because this letter is a formal agreement, we ask that Vital read it carefully.

1.      ***Client; Scope of Representation.***   Subject to and conditioned on an order appointing the Firm as special counsel for Vital and JHO being entered in the matter pending before the United States Bankruptcy Court, Southern District of Florida, Fort Lauderdale Division (the "Court"), captioned *In Re: Vital Pharmaceuticals, Inc. et al*, case number 22-17842-PDR (the "Bankruptcy"), Vital and JHO will be the Firm's clients in the following matters:

> *Monster Energy Company v. Vital Pharmaceuticals, Inc.*, case number 5:18-cv-01882-JGB-SHK, pending in United States District Court for the Central District of California (the "Monster Case"). The Firm will defend Vital in the Monster Case, including the prosecution of and opposition to post-verdict motions, appearance in post-verdict proceedings through entry of judgment as may be required through entry of final judgment, and representation of Vital in an appeal

November 30, 2022
Page 2

which might be filed with the 9th Circuit in that matter and any directly related activity.

*Vital Pharmaceuticals, Inc.; JHO Intellectual Property Holdings, LLC v. Orange Bang, Inc. and Monster Energy Company*, pending in the 9th Circuit, United States Court of Appeals, case numbers 22-55722 and 22-56019 (the "Orange Bang Appeal"). The Firm will represent Vital and JHO in Vital's and JHO's appeal of the United States District Court's confirmation of an arbitration award, and the appeal of a judgment entered in that matter, including, but not limited to, any activity that might be required to lift any existing stay and to otherwise expedite the appellate process as well as any directly related activity.

*Vital Pharmaceuticals, Inc.; JHO Intellectual Property Holdings, LLC v. PHD Marketing*, pending in the 9th Circuit, United States Court of Appeals, case number 22-55815 (the "PHD Appeal"). The Firm will represent Vital and JHO in the PHD Appeal.

*VPX vs. Webb & Gerritsen*, pending in the Wisconsin Court of Appeals (District II), case number 22-17842. The Firm will represent Vital in that appeal of a final judgment entered against Vital.

*Atlantic Recording Corporation, et. al. v. Vital Pharmaceuticals, Inc.; Jack Owoc*, pending in the United States District Court for the Southern District of Florida, case number 1:22-cv-22951 (the "Warner Case"). The Firm will defend Vital in the Warner Case. The Firm will also represent Mr. Jack Owoc in the Warner Case.

Various transactional matters on an as-needed basis, including, but not necessarily limited to, (i) contract negotiation and drafting (including, but not limited to, distributorship agreements), (ii) general distributor-related matters, including without exclusion, communications and negotiations regarding any disputes, claims or contentions that might arise; (iii) regulatory advice (including, but not necessarily limited, to regulation pertaining to sale and distribution of beverages containing alcohol such as hard seltzer); and (iv) general corporate advice (but excluding bankruptcy advice).

The Firm does not represent Vital or JHO in any matters other than those identified above, and the Firm's acceptance of this engagement does not mean the Firm will represent Vital or JHO in any matters other than those described in this letter. The Firm has not been engaged to provide Vital or JHO any advice regarding bankruptcy law or to represent Vital or JHO in the Bankruptcy. Further, the Firm does not represent Vital, JHO, or Jack Owoc in connection with any rights, issues, claims, or disputes that may exist between them, including but not limited to any claims for indemnity, contribution, reimbursement, payment of defense costs, or payment of judgments.

CONFIDENTIAL – ATTORNEY-CLIENT
PRIVILEGED COMMUNICATION

November 30, 2022
Page 3

Any expansion of the Firm's representation of Vital and JHO will be subject to and conditioned on the Firm's agreement to represent Vital and JHO in the new matter(s) in a separate engagement letter signed by the Firm, and an order being entered in the Bankruptcy appointing the Firm as special counsel in the new matter(s). After the Firm's representation of Vital and JHO is completed, changes may occur in the applicable laws or regulations that could have an impact upon Vital's and JHO's future rights and liabilities. The Firm has no obligation to update Vital or JHO on these changes.

2. ***Client Responsibilities.*** The Firm will provide legal counsel and assistance to Vital and JHO in accordance with this letter and will rely upon information and guidance Vital and JHO provides to us. The Firm will keep Vital and JHO reasonably informed of progress and developments, and respond to Vital's and JHO's inquiries. Subject to approval by the Court in the Bankruptcy, Vital and JHO agree to pay the Firm for its services and expenses as set forth in this letter. Further, in order to enable the Firm to provide the services set forth in this letter, Vital and JHO will disclose fully and accurately all facts and keep the Firm apprised of all developments relating to this matter. Vital and JHO will also cooperate fully with the Firm and be available to attend meetings, conferences, hearings and other proceedings on reasonable notice, and stay fully informed on all developments relating to this matter.

3. ***Staffing.*** Andy Beilfuss will be the primary contact at the Firm for the representation of Vital and JHO. Other attorneys and paralegals at the Firm also will work on the matters.

4. ***Fees, Expenses, and Billing.*** The Firm's charges to Vital and JHO for services are determined after considering a variety of factors, such as the novelty and difficulty of the issues involved, the skills needed to perform the legal services properly, special timing requirements and the results obtained. The Firm's fees, however, are based primarily upon the hourly billing rate for each attorney and legal assistant devoting time to this matter. Each lawyer and legal assistant has an hourly billing rate based generally on his or her experience and area of practice. The hourly rate multiplied by the time spent on behalf of VPX and/or JHO, measured in tenths of an hour, is the primary basis for determining the Firm's fees. The Firm and Vital and JHO have agreed that the Firm will charge and Vital and JHO will pay the following reduced, blended hourly rates: (i) partners - $495 per hour; (ii) associates - $395 per hour; (iii) paralegals - $275 per hour. The Firm reserves the right to apply for increases in these hourly rates one year after the date of the Firm's appointment as special counsel, and Vital and JHO agree to pay increased rates if approved by the Court in the Bankruptcy.

The Firm will provide monthly bills to Vital and JHO. The Firm will apply to the Court for payment of the Firm's bills pursuant to applicable provisions of Title 11 of the United States Bankruptcy Code, applicable federal and local rules of bankruptcy procedure, and applicable orders entered by the Court in the Bankruptcy. Payment will be due in accordance with orders of the Court in the Bankruptcy. The Firm's bills will include charges for legal services, and separate charges for expenses, costs and services such as photocopying, messenger and delivery service,

CONFIDENTIAL – ATTORNEY-CLIENT
PRIVILEGED COMMUNICATION

November 30, 2022
Page 4

computerized research, travel, facsimile and search and filing fees. The Firm charges for these expenses at a standard rate per unit for each item. The Firm does not currently charge for long distance domestic calls or regular U.S. mail delivery. These charges may be adjusted, and Vital and JHO agree to pay such adjustments. The Firm is not obligated to advance or pay for expenses and costs incurred in the representation of Vital and JHO, and the Firm reserves the right in its sole discretion to not advance or pay for such expenses and costs. The Firm further reserves the right to withdraw from its representation of Vital and JHO if the Firm's bills are not paid subject, if required, to approval of the Court in the Bankruptcy.

5.    ***Budgets and Estimates of Fees and Costs.*** The Firm is sometimes asked to prepare a budget for, or otherwise estimate, the legal fees and other costs that will be incurred in connection with, a particular matter. While the Firm is willing to provide such a budget or estimation, it is understood that any such budget or estimate necessarily incorporates a number of assumptions. There are uncertainties involved in handling any legal matter, particularly when other parties are involved whose level of activity may significantly affect the work required to protect our client's interests. Accordingly, no budget or estimate of fees or costs is to be interpreted as a guarantee or a maximum. The actual fees and costs incurred may vary significantly, depending upon the circumstances and requirements of the particular representation. In that regard, the Firm makes no commitment to Vital or JHO concerning the maximum fees and costs that will be necessary to resolve or complete this matter, and Vital and JHO agree to pay the Firm's fees and expenses even if such fees and expenses exceed budgets or estimates provided by the Firm.

Also, depending upon the facts of the matter and applicable law, Vital and JHO may have a right to assert a legal claim for reimbursement of attorneys' fees and costs from third parties. A court or jury may decide what amount is to be awarded to Vital and JHO for reimbursement of fees and costs, and the amount awarded may be less than the fees and costs charged by the Firm for the engagement. Subject to approval of the Court in the Bankruptcy, Vital and JHO agree to pay the Firm's full reasonable fees and expenses, even if the court or jury awards Vital less than full reimbursement.

6.    ***Joint Representation.*** As discussed, the Firm will not jointly represent Vital and Mr. Owoc in the Monster Case. The Genovese Joblove & Battista, PA firm will substitute for the Firm as counsel for Mr. Owoc in that matter. The Firm will continue to jointly represent Vital and Mr. Owoc in the Warner Case. The Firm will continue to jointly represent Vital and JHO in the Orange Bang Appeal, and in the PHD Appeal. Vital's and JHO's consent to those joint representations is set forth in a separate letter.

7.    ***Opinions and Beliefs.*** Since the outcome of litigation is subject to factors that cannot always be foreseen, such as the uncertainties and risks inherent in the litigation process, it is understood that the Firm has made no promises or guarantees to Vital or JHO concerning the outcome of the matters in which the Firm represents Vital and JHO and cannot do so at any time in the future.

**CONFIDENTIAL – ATTORNEY-CLIENT PRIVILEGED COMMUNICATION**

November 30, 2022
Page 5

     8.    ***Limited Liability Partnership.***  The Firm is a limited liability partnership ("LLP"). Because the Firm is an LLP, no partner of the firm has personal liability for any debts or liabilities of the firm except as otherwise required by law, and except that each partner can be personally liable for his or her own malpractice and for the malpractice of persons acting under his or her actual supervision and control.  Please call me if you have any questions about the Firm's status as a limited liability partnership.

     9.    ***Adverse Representations or Conflicts of Interest; Waiver of Conflicts.***  The Firm represents and in the future will represent other companies and individuals besides Vital and JHO. Some may be competitors of Vital or JHO, or otherwise have business interests that are contrary to Vital's or JHO's interests.  It is possible that during the time the Firm is representing Vital and JHO, an existing or future client of the Firm will seek to engage the Firm in connection with actual or potential transactions, or pending or potential litigation or other dispute resolution proceeding, in which such client's interests are or potentially may become adverse to Vital's, JHO's, or Vital's and JHO's affiliates' interests. Vital and JHO agree that the Firm may continue to represent or may undertake in the future to represent existing or new clients in any matter that is not substantially related to the Firm's work for Vital or JHO, even if the interests of such clients in those other matters are directly adverse to Vital, as long as that other matter is not substantially related to the Firm's representation of Vital or JHO.  Vital and JHO waive any conflict of interest that exists or might be asserted to exist and any other basis that might be asserted to preclude, challenge, or otherwise disqualify the Firm in any representation of any other client with respect to any such matter.  The Firm agrees, however, that Vital's prospective consent to conflicting representation contained in this paragraph shall not apply where, as a result of the Firm's representation of Vital or JHO, the Firm has obtained proprietary or other confidential information, that, if known to the other client, could be used by that other client to Vital's or JHO's material disadvantage.  The Firm will not disclose to the other client(s) any confidential information received during the course of our representation of Vital and JHO.

     We suggest that Vital and JHO consult with separate counsel with respect to this provision and its waiver.

     10.    ***Electronic Communications.***  The Firm communicates from time to time using fax machines, cell phones, and e-mail.  These forms of communication are not completely secure against unauthorized access.  There is some risk of disclosure and loss of attorney-client privilege in using these forms of communication because they do not ensure the confidentiality of their contents.  If VPX and/or JHO objects to the Firm's use of any one or more of these forms of communication, please let me know immediately and the Firm will attempt to honor that request.

     11.    ***Termination of Representation.***  Vital, JHO, or the Firm may terminate the engagement at any time for any reason by written notice, subject on the Firm's part to the applicable rules of professional conduct.  If Vital or JHO terminates the engagement, Vital and JHO will still be responsible for timely paying the Firm for all fees, charges, and expenses incurred prior to the date of the Firm's receipt of notice of termination.  In the event that the Firm terminates the

CONFIDENTIAL – ATTORNEY-CLIENT
PRIVILEGED COMMUNICATION

QB\76734344.3

November 30, 2022
Page 6

engagement, the Firm will take reasonably practicable steps to protect Vital's and JHO's interests in the matters identified in Section 1 of this letter. The Firm reserves the right to terminate the engagement if, among other things, Vital or JHO fails to cooperate or follow the Firm's advice on a material matter, Vital or JHO fails to honor the terms of this engagement letter, the Firm's bills are not paid, or the Firm becomes aware of any fact or circumstance that would, in the Firm's view, render continuing representation unlawful or unethical. Vital and JHO agree to pay for the reasonable fees and expenses associated with any withdrawal of the Firm from the engagement, regardless of who initiated the termination, subject to the applicable rules of professional conduct. The Firm's termination of its engagement may be subject to approval of the Court in the Bankruptcy.

12.     ***Records Retention.*** The Firm's policy with respect to retention of client records is to retain such records for a period of six (6) years from the date a matter is closed. For various reasons, including the minimization of unnecessary storage expenses, the Firm reserves the right to destroy or otherwise dispose of any such records retained by the Firm at the end of the Firm's retention period, without further notice.

This letter agreement contains the entire agreement between the Firm and Vital and JHO regarding the Firm's representation of Vital in the matters identified in Section 1 of this letter. Please sign and return a copy of this letter, further showing agreement to the terms in this letter and confirming that it accurately reflects the scope, terms, and conditions with respect to this engagement.

Very truly yours,

QUARLES & BRADY LLP

/s/ Andrew P. Beilfuss

CONFIDENTIAL – ATTORNEY-CLIENT
PRIVILEGED COMMUNICATION

November 30, 2022
Page 7

## AGREEMENT AND CONSENT TO REPRESENTATION

The undersigned agrees, approves, and consents to representation by Quarles & Brady LLP and on the terms and conditions stated above.

**Vital Pharmaceuticals, Inc.**                    **JHO Intellectual Property Holding, LLC**

By: _Jack Owoc (Dec 9, 2022 15:50 EST)_____      By: _Jack Owoc (Dec 9, 2022 15:50 EST)_____

Its: ___CEO_____          Its: ___CEO_____

Name: ___Jack Owoc_____        Name: ___Jack Owoc_____

Date: ___Dec 9, 2022_____        Date: ___Dec 9, 2022_____

CONFIDENTIAL – ATTORNEY-CLIENT
PRIVILEGED COMMUNICATION

| | |
|---|---|
| **From:** | Gregg Metzger |
| **To:** | O'Neal, John M. (PHX x3436) |
| **Cc:** | JGuso@bergersingerman.com; Andrew.Sorkin@lw.com; Amy.Quartarolo@lw.com; Bruett, Keith A. (MKE x1411); Combest, Christopher (CHI x6091) |
| **Subject:** | RE: VPX Special Counsel Engagement letter |
| **Date:** | Monday, December 12, 2022 2:56:33 PM |

Thanks, John. Confirmed, with the understanding we can revisit that limitation once a plan is confirmed. ██████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████ Thanks.

**Gregg Metzger**
Chief Litigation Counsel
Gregg.Metzger@bangenergy.com

**BANG | VPX | REDLINE**
1600 N. Park Drive Weston, FL 33326
Phone: 786-417-0104

BangEnergy.com [bangenergy.com]
**Fuel Your Destiny™**



---

**From:** O'Neal, John M. <John.ONeal@quarles.com>
**Sent:** Friday, December 9, 2022 5:02 PM
**To:** Gregg Metzger <Gregg.Metzger@bangenergy.com>
**Cc:** JGuso@bergersingerman.com; Andrew.Sorkin@lw.com; Amy.Quartarolo@lw.com; Bruett, Keith A. <Keith.Bruett@quarles.com>; Combest, Christopher <Christopher.Combest@quarles.com>
**Subject:** RE: VPX Special Counsel Engagement letter

Thanks Gregg. One addendum to the scope of Quarles' engagement is that Quarles is also being retained under the terms of the attached engagement letter to provide advice to the Debtors regarding general intellectual property matters (but excluding representation of the Debtors before the Trademark Trial and Appeal Board).

If this addendum is ok, please respond noting as much. We will treat our email exchange as the signed writing confirming that additional scope.

Thanks, and have a good weekend.



411 East Wisconsin Avenue
Suite 2400
Milwaukee, WI  53202-4428
414-277-5000
Fax 414-271-3552
www.quarles.com

Attorneys at Law in
Chicago
Indianapolis
Madison
Milwaukee
Minneapolis
Naples
Phoenix
Tampa
Tucson
Washington, D.C.

Writer's Direct Dial: 414-277-5111
E-Mail: Andrew.Beilfuss@quarles.com

December 6, 2022

## PRIVILEGED AND CONFIDENTIAL

Gregg Metzger
Vital Pharmaceuticals, Inc.
1600 North Park Drive
Weston, FL 33326

Jack Owoc
1600 North Park Drive
Weston FL 33326t

**RE:    Joint Representation**

Dear Gregg and Jack:

As you know, Quarles & Brady LLP (the "Firm") has been asked to serve as special counsel for JHO Intellectual Property Holding, LLC ("JHO") and Vital Pharmaceuticals, Inc. ("Vital") in the following matters:

*Monster Energy Company v. Vital Pharmaceuticals, Inc.; Jack Owoc*, case number 5:18-cv-01882-JGB-SHK, pending in United States District Court for the Central District of California (the "Monster Case").

*Vital Pharmaceuticals, Inc.; JHO Intellectual Property Holdings, LLC v. Orange Bang, Inc. and Monster Energy Company*, pending in the 9th Circuit, United States Court of Appeals, case number 22-55722 (the "Orange Bang Appeal").

*Vital Pharmaceuticals, Inc.; JHO Intellectual Property Holdings, LLC v. PHD Marketing*, pending in the 9th Circuit, United States Court of Appeals, case number 22-55815 (the "PHD Appeal").

December 6, 2022
Page 2

*VPX vs. Webb & Gerritsen*, pending in the Wisconsin Court of Appeals (District II), case number 22-17842.

*Atlantic Recording Corporation, et. al. v. Vital Phamaceuticals, Inc.; Jack Owoc*, pending in the United States District Court for the Southern District of Florida, case number 1:22-cv-22951 (the "Warner Case").

Various transactional matters for Vital and/or its affiliates on an as-needed basis, including, but not necessarily limited to, (i) contract negotiation and drafting (including, but not limited to, distributorship agreements), (ii) general distributor-related matters, including without exclusion, communications and negotiations regarding any disputes, claims or contentions that might arise; (iii) regulatory advice (including, but not necessarily limited, to regulation pertaining to sale and distribution of beverages containing alcohol such as hard seltzer); and (iv) general corporate advice (but excluding bankruptcy advice)

As you also know, Jack and Vital are co-defendants in the Monster Case and the Warner Case.  The Genovese Joblove & Battista, PA firm will substitute for the Firm as counsel for Jack in the Monster Case.  Subject to the Firm being appointed as special counsel by the Bankruptcy Court in the matter pending in United States Bankruptcy Court, Southern District of Florida, Fort Lauderdale Division, captioned *In Re: Vital Pharmaceuticals, Inc. et al*, case number 22-17842-PDR (the "Bankruptcy"), the Firm will continue to represent Vital in the Monster Case.  Subject to the Firm being appointed as special counsel by the Bankruptcy Court, the Firm will also continue to represent Vital and JHO in the Orange Bang Appeal, the PHD Appeal, and Vital and Jack in the Warner Case should the stay be lifted in the Warner Case.

As discussed, Jack, Vital, and JHO may have claims, defenses, and arguments against each other.  By signing this letter, Vital, Jack, and JHO confirm that they are aware of the potential claims, defenses, and arguments they may have against each other, and that they have consulted with separate counsel regarding the same.  Vital, Jack, and JHO further confirm that after consulting separate counsel, they have agreed to not assert claims, defenses, or arguments against each other in the matters Quarles is representing Vital, JHO, and/or Jack.  Vital, JHO, and Jack also confirm that the Firm has not been engaged to, and is not responsible for, advising Vital, JHO, or Jack regarding claims, defenses, and arguments they might have against each other.  Vital, JHO, and Jack, in consultation with separate counsel, will monitor the matters in which the Firm is representing them and advise the Firm if they terminate their agreement and intend to assert claims, defenses, or arguments against each other.  Please note that should that occur, the Firm may have to withdraw from its representation of Vital, Jack, and/or JHO.

With respect to the Firm's joint representation of: (i) Jack and Vital in the Warner Case; (ii) JHO and Vital in the Orange Bang Appeal and the PHD Appeal, this letter further advises Mr. Owoc, Vital, and JHO of some of the advantages and disadvantages of a joint representation, sets

December 6, 2022
Page 3

forth the conditions under which the Firm is able to maintain a joint representation, and confirms Vital's, Mr. Owoc's, and JHO's agreement and consent to the joint representation.

One advantage of joint representation is that it will promote a more coordinated and focused handling of litigation. Another benefit of joint representation is the likelihood (but not guarantee) of reduced legal fees. There are also possible disadvantages and risks associated with joint representation. One possible disadvantage of joint representation is that that there may be differences and disagreements between jointly represented parties with respect to settlement. For example, one may be offered a favorable settlement which is not offered to the other. Another possible disadvantage of joint representation is that the testimony of one client may conflict with another client. Such a conflict in testimony may have an adverse impact on the overall representation.

In addition, one of the necessary consequences of joint representation of multiple clients is the sharing of confidential information concerning the subject matter of the joint representation. This means that the Firm could not keep confidential information it might learn from one client from another client. Further, there is no attorney client privilege between jointly represented clients during a joint representation. This means that information provided to the Firm during the joint representation will not be privileged should a dispute arise between the jointly represented parties, and may be used in such a dispute to the advantage or disadvantage of the other. Jack and Vital, and Vital and JHO each acknowledges and agrees that communications or information that the Firm receives from either of them in their joint representation matters will be shared as the Firm considers appropriate. Jack, Vital, and JHO further acknowledge and agree that in the event of a dispute between or among them, and one or more is no longer represented by the Firm as the result of a conflict of interest or other cause, the Firm may nevertheless use any confidential information the Firm has concerning this matter adversely to the client the Firm does not represent to the advantage of that client the Firm continues to represent in any subsequent negotiation or proceeding relating to this matter

Jack and Vital, and JHO and Vital, have informed the Firm that they each agree on all material issues related to the representation, and that that they do not intend to assert claims, defenses or arguments against each other. Notwithstanding anything herein to the contrary, the parties hereto acknowledge that Jack will likely file and assert claims against Vital and/or JHO in the Bankruptcy. However, Jack, Vital, and JHO each acknowledges and agrees that, despite the current consensus on all material issues, it is possible that disagreements and other differences may arise between them in the future. In that event, the Firm will request that its clients resolve any such differences between or among themselves without the Firm's involvement or assistance. If they cannot resolve their differences and those differences result in a conflict of interest that would materially limit the Firm's ability to provide competent and diligent representation to each client, then the Firm may withdraw from the representation of Jack and/or Vital and/or JHO as necessary to resolve the conflict of interest. The Firm may also terminate its representation for other reasons as set forth in this letter, and any client may withdraw from the joint representation at any time for any reason upon written notice to the Firm and the other client.

December 6, 2022
Page 4


A withdrawal from or termination of a joint representation may cause delay and increased expense, and the terminated/withdrawn client will be responsible for retaining and paying for separate legal representation.  In the event of a withdrawal or termination, Jack, Vital, and JHO agree that the Firm may continue to represent the other client(s) even if as a result of such withdrawal or termination, the Firm takes positions adverse to the withdrawn/terminated client's interests in any subsequent negotiation or proceeding relating to the engagement.  In the event one or more of the clients are no longer represented by the Firm, then the Firm agrees to comply with the applicable ethical rules governing joint representation and the withdraw/termination of one of the clients, provided however, that the clients and the Firm may agree to address any continued representation by the Firm at that time.  Further, a withdrawn/terminated client remains responsible for paying the Firm's charges incurred to and including the date of the notice of termination/withdrawal.

It is not required that the Firm jointly represent Jack and Vital, or jointly represent Vital and JHO; each could have their own separate counsel.  This letter confirms that the Firm has explained to Jack, Vital, and JHO the potential rewards and risks of a joint representation, that each has had the opportunity to ask questions and raise any concerns, and that after consideration Jack, Vital, and JHO have consented to the joint representation by signing below.  Further, Jack, Vital, and JHO confirm that they have had the opportunity to consult with separate counsel regarding the joint representation.


Very truly yours,



Andrew P. Beilfuss

December 6, 2022
Page 5


APB:dlh

## AGREEMENT AND CONSENT TO REPRESENTATION

     The undersigned agrees, approves, and consents to representation by Quarles & Brady LLP and on the terms and conditions stated above.

**Vital Pharmaceuticals, Inc.**                  **Jack Owoc**

By: _____
     Jack Owoc (Dec 9, 2022 15:43 EST)

Its: __CEO, COO__

Name: __Jack Owoc__

Date: __Dec 9, 2022__

Date: __Dec 9, 2022__

     Jack Owoc (Dec 9, 2022 15:43 EST)


**JHO Intellectual Property Holding, LLC**

By: _____
     Jack Owoc (Dec 9, 2022 15:43 EST)

Its: __CEO__

Name: __JackOwoc__

Date: __Dec 9, 2022__

**<u>EXHIBIT B</u>**
**(Beilfuss Declaration)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                              Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]           Case No.: 22-17842-PDR

　　　Debtors.                                       (Jointly Administered)

_____/

## DECLARATION OF ANDREW P. BEILFUSS, ON BEHALF OF QUARLES & BRADY LLP, AS PROPOSED SPECIAL COUNSEL TO THE DEBTORS

I, Andrew P. Beilfuss of the law firm of Quarles & Brady LLP, declare and state as follows[2]:

1.　　I am Andrew P. Beilfuss.  I am an attorney and a partner with the law firm of Quarles & Brady LLP ("Q&B").  Our firm maintains an office for the practice of law at 411 East Wisconsin Avenue, Suite 2400, Milwaukee, WI 53202, as well as offices in Chicago, IL, Indianapolis, IN, Madison, WI, Minneapolis, MN, Naples, FL, Tampa, FL, Phoenix, AZ, Tucson, AZ and Washington, D.C.

2.　　I am familiar with the matters set forth herein and make this Declaration in support of the *Debtors' Application for Approval of the Employment of Andrew P. Beilfuss and the Law Firm of Quarles & Brady LLP, as Special Counsel to the Debtors, Effective as of the Petition Date* in the above-captioned case (the "Application").

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined in this Declaration shall have the meanings ascribed to them in the
11753893-3

3.      Except as otherwise indicated, I have personal knowledge of the facts set forth in this Declaration.  I make this Declaration based in material part on my review of the list of creditors and interested parties of the Debtors, as provided to me by the Debtors and/or the Debtors' general counsel. [3]

**Services to Be Provided**

4.      The Debtors have requested that Q&B represent (a) Vital Pharmaceuticals, Inc. ("VPX") in the California District Court Action; (b) VPX and JHO Intellectual Property Holdings, LLC ("JHO") in the OBI Appeal; (c) VPX and its Chief Executive Officer and sole shareholder, John H. "Jack" Owoc, individually, in the Warner Litigation; (d) VPX and JHO in the PHD Marketing Appeal, and (e) VPX in the W&G Appeal, to provide the services described in the Application.

5.      In addition, the Debtors have requested that Q&B continue to represent VPX and JHO, as it has prepetition, as general counsel for transactional matters on an as-needed basis, including, but not necessarily limited to (a) matters regarding distributorship agreements and disputes arising in distributor-related matters; (b) regulatory matters (including, but not necessarily limited to, regulation pertaining to the sale and distribution of beverages containing alcohol, such as hard seltzer), and (c) general corporate matters (but excluding representation of VPX and JHO as bankruptcy counsel and the rendering of advice regarding matters involving the bankruptcy cases of VPX and JHO) ("General Counsel Matters").

---

Application.

[3] The information contained in this Declaration is based, in part, on information kept in the ordinary course of business of Quarles & Brady LLP, information obtained from the electronic docket maintained by the Court in the

11753893-3

### No Adverse Interests

6.      Other than as set forth in this Declaration, neither I nor Q&B holds or represents any interest adverse to the Debtors or to the Debtors' estates with respect to the matters on which Q&B is to be employed as special counsel.

7.      As of the Petition Date, Q&B held an unsecured, non-priority claim against Vital Pharmaceuticals, Inc. ("VPX") in the amount of not less than $1,417,934.25 (the "Q&B Claim").[4]  To the best of my knowledge, the Q&B Claim is neither contingent, nor unliquidated, nor disputed.  Q&B intends to file a proof of claim for, and to seek payment of, the Q&B Claim pursuant to the applicable provisions of the Bankruptcy Code and related federal and local rules of procedure.

8.      Beilfuss and Q&B were retained prepetition to represent the relevant Debtors in all of the matters described above.  The Q&B Claim arises from (a) unpaid amounts for prepetition services rendered under an alternative fee arrangement with the Debtors on one or more of the matters described above; (b) unpaid amounts for prepetition services charged on matters for which Q&B is not being retained as special counsel, and (c) costs advanced by Q&B and not reimbursed by the Debtors prepetition.

9.      In connection with its proposed retention, Q&B researched its computerized client database to determine whether it had any connections to the following entities: (a) the Debtors; (b) the parties to the California District Court Action; (c) the parties to the OBI Appeal; (d) the

---

captioned jointly-administered proceedings, and information provided to me by Q&B and certain partners in, associates of, and/or employees of Q&B.

[4] Q&B continues to review its billing records and refine its calculation of its prepetition claim against VPX; therefore, the amount of Q&B's filed proof of claim may differ from this figure.

3

parties to the Warner Litigation; (e) the parties to the PHD Marketing Appeal; (f) the parties to the W&G Appeal; (g) the consolidated thirty (30) largest unsecured creditors of the Debtors; (h) the secured creditors of the Debtors, and (*i*) and the officers, directors and equity holders of the Debtors.  A list of the entities researched is attached to this Declaration as "Schedule 1."

      10.    The results of that research revealed the following matters:

      (a)    Prepetition, Q&B represented Mr. Owoc individually as a defendant in (i) the California District Court Action; (ii) the Warner Litigation; (iii) a copyright infringement action entitled *Sony Music Entertainment v. Vital Pharmaceuticals., Inc.*, No. 21-CV-22825-WPD (S.D. Fla.) ("Sony") and (iv) a copyright infringement action entitled *UMG Recordings, Inc. v. Vital Pharmaceuticals., Inc.*, No. 21-CV-60914-CIV (S.D. Fla.) ("UMG").

As described in the Application, Q&B will be retained as special counsel in the Warner Litigation to represent VPX and Mr. Owoc concurrently.  It is my understanding that the Warner Litigation will be stayed as to both VPX and Mr. Owoc at least through April 2023 and that the courts in the Sony and UMG litigation have stayed all proceedings in each against VPX and Mr. Owoc.  As special counsel, Q&B will not represent VPX or Mr. Owoc in the Sony litigation or in the UMG litigation and will not represent Mr. Owoc individually in the California District Court Litigation Action.

Finally, Q&B will represent neither VPX nor Mr. Owoc in disputes (if any) that may arise between the two in the Warner Litigation, including, without limitation, as to indemnification or coverage under the Debtors' directors and officers insurance policy.

      (b)    Prepetition, Q&B represented VPX as general counsel for certain

4

intellectual property matters that involved the structuring of certain of VPX's affiliates; Mr. Owoc is the sole owner of each of VPX and many of its affiliated entities.

(c)    Prepetition, Q&B advised VPX on matters related to a forbearance agreement in connection with a credit facility with Truist Bank, as agent for a syndicate of lenders.   During the course of that matter, Q&B also advised Mr. Owoc on issues arising under the proposed forbearance agreement that pertained to him individually.

(d)    An attorney now at Q&B represented a non-plaintiff affiliate of one or more of the plaintiffs in the Warner Litigation when she was employed by the firm at which she worked prior to her employment with Q&B.  The matter at her prior firm was wholly unrelated to the Debtors and to the matters upon which Q&B is to be retained as special counsel. That attorney was screened from Q&B's representation of VPX and Mr. Owoc in the Warner Litigation.

(e)    Q&B currently represents the following creditors of one or more of the Debtors.  Those representations are wholly unrelated to the Debtors and to the matters upon which Q&B is to be retained as special counsel:

    (i)    7-Eleven, Inc.

    (ii)    Ardagh Metal Beverage USA, Inc.

    (iii)    Bevcorp LLC

    (iv)    Citizens Bank, N.A.

    (v)    CoBank, ACB

    (vi)    Comerica Bank

    (vii)    Farm Credit Bank of Texas

11753893-3

    (viii)   HSBC Bank USA, N.A.

    (ix)   Huntington National Bank

    (x)   Target Corporation

(f)    Q&B has represented in the past the following creditors of one or more of the Debtors. Those representations were wholly unrelated to the Debtors and to the matters upon which Q&B is to be retained as special counsel:

    (i)   Ball Metal Beverage Container Corp.

    (ii)   Citizens Bank, N.A.

    (iii)   CoBank, ACB

    (iv)   Comerica Bank

    (v)   Farm Credit Bank of Texas

    (vi)   Fona International, Inc.

    (vii)   HSBC Bank USA, N.A.

    (viii)   Monster Energy Company

    (ix)   Nelson Mullins Broad and Cassel f/k/a Nelson Mullins Riley & Scarborough LLP

    (x)   Pepsico

    (xi)   Synovus Bank

    (xii)   Target Corporation

    (xiii)   Truist Bank

    (xiv)   United Community Bank d/b/a Seaside Bank and Trust

    (xv)   Wild Flavors, Inc.

6

(xvi)    XPO Global Forwarding, Inc.

11.    I do not believe that the items described above constitute interests adverse to the Debtors or the Debtors' estates on the matters upon which I and Q&B are to be retained as special counsel.

**Compensation of Q&B; Statement Under Section 329(a) of Bankruptcy Code**

12.    The professional fees and costs incurred by Q&B in the course of its representation of VPX and JHO in these cases shall be subject in all respects to the application and notice requirements of 11 U.S.C. §§ 327, 330 and 331, Fed. R. Bankr. P. 2014 and 2016, Local Rules 2014-1(A) and 2016-1(A) of the Court, and any relevant orders of by the Court.

13.    Subject to Court approval in accordance with 11 U.S.C. §§ 330(a) and 331, compensation will be payable to Q&B on an hourly basis, plus reimbursement of actual, necessary expenses incurred by Q&B in connection with services rendered as special counsel, as described in more detail in the Engagement Letter.

14.    Q&B's current hourly rates for attorneys range from $300 for associates to $1,140 for partners; the current hourly rates for paralegals range from $185 to $300.    As an accommodation to the Debtors and their estates, Q&B has agreed that the hourly rates it will charge the Debtors for services performed as special counsel will not exceed a blended rate of $495 for all partner time and $395 for all associate time and that it will charge all paralegal time at $275 per hour.

15.    It is Q&B's policy to charge its clients for all expenses incurred in connection with the client's case.    The expenses charged to clients include, among other things, photocopying, outgoing faxes, mail and express mail charges, special or hand delivery charges,

7

11753893-3

travel expenses, expenses for working meals, and transcription costs.  Q&B will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to Q&B's other clients, subject to the Local Rules of this Court.  Q&B will maintain detailed records of actual and necessary costs and expenses incurred in connection with the legal services described above.

16.    Q&B is not holding a prepetition retainer in connection with its proposed representation of the Debtors.

17.    Pursuant to section 329(a) of the Bankruptcy Code, I disclose that, during the one year preceding the Petition Date, Q&B received no compensation in contemplation of or in connection with the captioned chapter 11 bankruptcy cases and entered into no agreement regarding the same.

18.    Neither I nor Q&B has or will represent any entity in connection with these cases other than VPX and JHO (and Mr. Owoc in the Warner Litigation), and neither I nor Q&B will accept any fee from any other party or parties in connection with these cases other than the Debtors, except as may be otherwise authorized by the Court.

19.    There is no agreement of any nature as to the sharing of any compensation to be paid to the firm other than with partners, counsel, associates and employees of Q&B.  No promises have been received by Q&B nor any member or associate thereof, as to compensation in connection with these cases, other than in accordance with the provisions of title 11 of the United States Code.

20.    This concludes my Declaration.

8

## **28 U.S.C. § 1746 Declaration**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 14, 2022.


/s/ *Andrew P. Beilfuss*
Andrew P. Beilfuss

## Schedule 1

Conflict Check Entities

**Debtors**
Bang Energy Canada, Inc.
JHO Intellectual Property Holdings, LLC
JHO Real Estate Investment, LLC
Quash Seltzer, LLC
Rainbow Unicorn Bev LLC
Vital Pharmaceuticals International Sales, Inc.
Vital Pharmaceuticals, Inc.

**Secured Creditors**
Agcountry Farm Credit Services, FLCA
Citizens Bank, N.A.
CoBank, ACB
Comerica Bank
Compeer Financial, PCA
Farm Credit Bank of Texas
Federal Agricultural Mortgage Corporation
Greenstone Farm Credit Services, FLCA
HSBC Bank USA, N.A.
Huntington National Bank
Synovus Bank
Truist Bank
United Community Bank d/b/a Seaside Bank and Trust

**Current and Former Officers and Directors of Debtors and Affiliates**
Greg Robbins
Frank Massabki
Rich Caruso
Kathleen Cole
Eric Hillman
Gregg Metzger
Gene Bukovi
Eugene Bukovi
Guillermo Escalante
Steven Panagos

**Significant Equityholders**
John H. Owoc

**Unsecured Creditors (30 Largest Claims)**
7-Eleven, Inc.
Ardagh Metal Beverage USA, Inc.
Ball Metal Beverage Container Corp.
Bevcorp LLC
Crown Cork & Seal USA, Inc.
Dairy Farmers of America, Inc.
Direct Connect Logistix, Inc.

1

Doehler USA, Inc.
Fona International, Inc.
Graphic Packaging International
Green Wave Ingredients (GWI)
Inventus, LLC/Legility
Monster Energy Company
Nelson Mullins Broad and Cassel f/k/a Nelson Mullins Riley & Scarborough LLP
Orange Bang, Inc.
Pepsico
Pepsico
Premier Distributing Company
Priority-1, Inc.
QuikTrip Corporation
Speedway LLC
Stellar Group, Inc.
Target Corporation
The American Bottling Company
Total Quality Logistics LLC
Trinity Logistics, Inc.
Varni Brothers Corporation
Webb & Gerritsen
Wild Flavors, Inc.
XPO Global Forwarding, Inc.

**<u>Parties to Warner Litigation Not Included Above</u>**
Atlantic Recording Corporation
Atlantic Records Group LLC
Warner Records Inc.
Asylum Worldwide LLC
Bad Boy Records LLC
Rhino Entertainment Company
Rhino Entertainment LLC
Spinnin Records B.V.
Warner Music International Services Limited
Warner Music Latina Inc.
Gene Autry's Western Music Publishing Co.
Unichappell Music Inc.
W Chappell Music Corp.
Warner Chappell Music, Inc.
Warner-Tamerlane Publishing Corp.

2

**<u>EXHIBIT C</u>**
**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                     Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]          Case No.: 22-17842-PDR

    Debtors.                                           (Jointly Administered)

_____/

**ORDER APPROVING DEBTORS' APPLICATION FOR ORDER
AUTHORIZING THE EMPLOYMENT OF ANDREW P. BEILFUSS AND
THE LAW FIRM OF QUARLES & BRADY LLP AS SPECIAL COUNSEL
TO THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

    **THIS MATTER** came before the Court on the ____ day of December, 2022, at

_____ a.m./p.m., in Fort Lauderdale, Florida, upon the *Debtors' Application For Order*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

*Authorizing the Employment of Andrew P. Beilfuss and the Law Firm of Quarles & Brady LLP as Special Counsel to the Debtors, Effective as of the Petition Date* [ECF No. ___] (the "Application")[2]. The Court, having considered the Application, the Engagement Letter attached to the Application as Exhibit "A," and the *Declaration of Andrew P. Beilfuss, on Behalf of Quarles & Brady LLP, as Proposed Special Counsel to the Debtors*, attached to the Application as Exhibit "B" finds that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (c) Quarles & Brady LLP does not hold or represent any interest adverse to the Debtors' estates on any matter in which Quarles & Brady LLP is to be engaged, and (d) Quarles & Brady LLP's employment as special counsel to the Debtors pursuant to 11 U.S.C. §327(e) is necessary and is in the best interests of the Debtors, the bankruptcy estates, and all parties-in-interest. Accordingly, it is

**ORDERED** as follows**:**

1.    The Application is **APPROVED**.

2.    The employment of Quarles & Brady LLP, as special counsel to the Debtors, pursuant to the terms set forth in the Engagement Letter attached to the Application as Exhibit "A" is **APPROVED**, pursuant to 11 U.S.C. § 327(e), effective as of the Petition Date.

3.    Quarles & Brady LLP, as special counsel to the Debtors, shall apply for compensation on an hourly basis, at the rates described in the Declaration, plus reimbursement of actual, necessary expenses incurred by Quarles & Brady LLP in connection with services rendered by Quarles & Brady LLP as special counsel, pursuant to 11 U.S.C. §§ 330 and 331, applicable federal and local rules of procedure, and applicable orders of this Court.

4.    This Court shall retain jurisdiction to hear and determine all matters arising from or

---

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed in the Application.

related to the implementation of this Order.

# # #

<u>Submitted by</u>:
Jordi Guso, Esq.
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com
Email:  mniles@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

11754498-3