# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

2001 Ross Avenue
Dallas, TX  75201
Tel 214.698.3100
www.gibsondunn.com

Russell H. Falconer
Direct: +1 214.698.3170
Fax: +1 214.571.2958
RFalconer@gibsondunn.com

November 21, 2022

*Via e-mail*

Guy A. Van Baalen, Esq.
U.S. Department of Justice Office of the U.S. Trustee
Middle and Southern Districts of Florida 501 E. Polk Street, Suite 1200
Tampa, FL 33602
Guy.A.VanBaalen@usdoj.gov

Heidi A. Feinman, Esq.
U.S. Department of Justice Office of the U.S. Trustee 51
SW First Avenue, #1204
Miami, FL  33130
Heidi.A.Feinman@usdoj.gov

J. Steven Wilkes, Esq.
U.S. Department of Justice
Office of the U.S. Trustee, Region 21 501 East Polk Street, Suite 1200
Tampa, FL 33602
Steven.Wilkes@usdoj.gov

**Re: *In re Vital Pharmaceuticals, Inc. et al.*, Case No. 22-bk-17842-PDR**

Dear Mr. Van Baalen, Ms. Feinman, and Mr. Wilkes:

Thank you for taking the time to speak with us on Friday about the possibility of appointing an official committee of non-trade creditors in the above-captioned chapter 11 cases.  I am submitting this letter on behalf of my client, the American Bottling Company, which has asserted a large, non-trade claim against Vital Pharmaceuticals, Inc. and its affiliated debtors (collectively, the "Debtors").  I also write at the request of the following parties that participated in our call Friday and hold non-trade claims against some or all of the Debtors: Doehler USA, Inc.; Monster Energy Company; Orange Bang, Inc.; PepsiCo, Inc.; Sony Music Entertainment; and UMG Recordings, Inc.  We believe that the seven parties who have joined in sending this letter would work well together as the members of an official committee of non-trade creditors.

As we explained during our call on Friday, we believe that appointing an official committee of non-trade creditors would serve the interest of steering these cases to a speedy, efficient, and cost-effective resolution—an interest shared by the Court, the Debtors, your office, and the signatories to this letter.[1]  Given the size of the claims held by the largest non-trade

---

[1] As we also discussed on Friday, the non-trade creditors are also concerned that the official committee of unsecured creditors as presently constituted is not representative of the larger

Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles · Munich
New York · Orange County · Palo Alto · Paris · San Francisco · São Paulo · Singapore · Washington, D.C.

## GIBSON DUNN

J. Steven Wilkes
U.S. Department of Justice
November 21, 2022
Page 2

creditors, there can be no consensual resolution in these chapter 11 cases without the support of the non-trade creditors. And appointing an official committee would help drive these cases toward a consensual resolution in a variety of ways. It would give the Debtors a single point of contact for plan negotiations and other outreach. It would avoid a flurry of non-trade-creditor filings on certain contested issues on which each creditor would feel compelled to be heard to protect their rights. And perhaps most importantly, it would give the non-trade creditors both the opportunity and the incentive to arrive at consensus and speak with a unified voice. In light of these benefits, it should come as no surprise that we are aware of at least 15 cases in which the Office of the United States Trustee appointed two official committees cases where the facts warranted it.[2]

Our reason for submitting this letter is to address the concern we heard the U.S. Trustee express during our call on Friday regarding the manner in which a non-trade creditors' committee would handle confidential business information of the Debtors given that one or more potential members of that committee could be considered competitors of the Debtors.

This situation—where a member of an official creditors' committee is a competitor of the debtor—is not uncommon in large bankruptcy cases. As a result, there are established procedures, often embodied in a committee's bylaws or a formal confidentiality agreement, to preclude a debtor's confidential business information from being disclosed to a competitor who sits on the committee. Those procedures are known to be effective, and we have every confidence they would be effective here.

Below is an illustrative list of some of the tools and procedures that could potentially be employed to address concerns around disclosure of the Debtors' confidential business information to potential competitors:

1. **Committee Bylaws**: Creditors' committees routinely implement bylaws specifically designed to protect the confidentiality of sensitive business information of the debtors received by the committee. These bylaw provisions commonly, among other things: (a) prohibit committee members from disclosing, or using outside the bankruptcy, any

---

creditor body and therefore does not meet the objectives of section 1102(b)(1) of the Bankruptcy Code.

[2] While by no means an exhaustive list, we note that two official committees were appointed in the following cases: Archdiocese of New Orleans; A.H. Robins; Boy Scouts of America; Caesar's Entertainment Operating Company, Inc.; Diocese of Spokane; Dow Corning; Federal Mogul; Kmart I; Lamonts Apparel; Mallinckrodt; Mariner Health; Orange County; Revco Drug Stores; Takata and W.R. Grace.

**GIBSON DUNN**

J. Steven Wilkes
U.S. Department of Justice
November 21, 2022
Page 3

confidential business information they receive from the debtor; (b) give the debtor the ability to enforce the bylaws' confidentiality obligations; and (c) provide that in the event a conflict of interest arises for a committee member, the member must disclose the conflict and recuse from committee participation and certain information may be withheld from committee members as appropriate. *See* Exhibit 1 (sample bylaw provisions). It is standard practice for official creditors' committees to adopt bylaws containing provisions like these that prevent the disclosure of the debtor's confidential business information.[3]

2. **Nondisclosure Agreement ("NDA") or Protective Order**: In addition, or as an alternative, committee members could be required, as a condition of their appointment to the official committee, to sign an NDA—or agree to be bound by a stipulated protective order to be entered by the Court—that prohibited the dissemination or disclosure of any sensitive documents, spreadsheets, or other materials the Debtors provided to the committee, which the Debtors could stamp as confidential to designate as covered by the NDA. For especially sensitive materials, the NDA or protective order could allow the Debtors to mark the materials as "Professionals' Eyes Only" so that the materials would not be disclosed to employees of the committee members. *See* Exhibit 2 (sample NDA); Exhibit 3 (sample protective order).[4]

3. **Software Tools**: Finally, software tools are also available that limit the ability to forward or otherwise disseminate confidential material. For example, for PDF documents, Adobe allows users to restrict document access to unique digital user ID and password combinations, so that only specified users are able to open and view the

---

[3] The following is a non-exhaustive sampling of nearly a dozen cases filed within the last three years in which a creditors' committee adopted the bylaw provisions reflected in Exhibit 1: *Altera Infrastructure, L.P.*, Case No. 22-9013 (S.D. Tex.); *Ascena Retail Group*, Case No. 20-33113 (E.D. Va.); *Chinos Holdings, LLC (J Crew)*, Case No. 20-32181 (E.D. Va.); *Cinemex USA Real Estate Holdings, USA*, Case No. 20-14696 (S.D. Fla.); *Cineworld Group, plc*, Case No. 22-90168 (S.D. Tex.); *Corsicana Bedding, LLC*, Case No. 22-90016 (N.D. Tex.); *Neiman Marcus LTD LLC*, Case No. 20-32519 (S.D. Tex.); *Rockall Energy Holdings, LLC*, Case No. 22-90000 (N.D. Tex.); *Sungard A.S. New Holdings, LLC*, Case No. 22-90018 (S.D. Tex.); *Tailored Brands, Inc.*, Case No. 20-33916 (S.D. Tex.); *Whiting Petroleum Corp.*, Case No. 20-32021 (S.D. Tex.).

[4] Exhibits 1, 2, and 3 are examples intended to illustrate the types of bylaws and agreements that could be employed in these chapter 11 cases. In the event an official committee of non-trade creditors is formed, the members of that committee will negotiate and adopt any appropriate bylaws and agreements.

# GIBSON DUNN

J. Steven Wilkes
U.S. Department of Justice
November 21, 2022
Page 4

document.  Digital rights management software can create similar controls for non-PDF-format documents.

These are tried-and-true procedures with a track record of effectively protecting the confidentiality of trade secrets and other confidential business information in bankruptcies and many other commercial contexts, including civil litigation, M&A due diligence, and internal investigations.  Employing some combination of these measures here should be more than sufficient to address any concerns the U.S. Trustee and the Debtors might have around confidentiality in these chapter 11 cases.

If the U.S. Trustee has any other concerns around appointing a non-trade creditors' committee that these procedures would not address, please let us know; we would be happy to speak with the U.S. Trustee again today or tomorrow.  We are committed to being pragmatic and solutions-oriented, and we are confident we can work together with the U.S. Trustee to craft a workable structure for an official committee of non-trade creditors.  Thank you for your consideration.  We look forward to your prompt response.

Sincerely,


Russell H. Falconer

CC:    Robert Furr, Marc Barmat, and Matt Bouslog (American Bottling Company)
       Jarret Hitchings and Ezequiel Romero (Doehler USA)
       Richard Pachulski, Robert Feinstein, and Michael Goldberg (Monster Energy)
       Thomas Patterson (Orange Bang)
       Joseph Frank and Corali Lopez-Castro (PepsiCo)
       Seth Lieberman (Sony Music Entertainment and UMG Recordings)

# EXHIBIT 1

**Sample Bylaws**

**ARTICLE VIII**
**CONFLICTS OF INTEREST**

A. If any matter under consideration by the Committee may or appears to involve a conflict of interest with any Member serving on the Committee, the Member with the potential or actual conflicting interest shall: (i) disclose to the Committee the existence of any potential conflict of which it has knowledge, (ii) recuse itself from the discussion of such matter at the meeting unless, by majority vote of the Committee (after receiving advice of Committee Counsel and less the vote of the Member(s) having the apparent conflict of interest), the Member is permitted to remain at such meeting, and (iii) abstain from voting on the matter being considered by the Committee unless a majority of the remaining Members of the Committee (after receiving advice of Committee Counsel) determines such abstention is unnecessary. The existence of a potential conflict of interest may be raised by any Member or Committee Counsel and shall be determined by the affirmative vote of a majority in number of Members of the Committee present at a given meeting (less the vote of the Member(s) having the apparent conflict of interest and the vote of any other Member who appears to be, in the judgment of Committee Counsel, subject to the same conflict of interest).

B. Any Member subject to an alleged conflict of interest shall be provided with a reasonable opportunity to be heard and to provide non-conflicted Members with additional information and/or refute any allegations of its alleged conflict of interest prior to any Committee vote regarding such Conflicted Person's alleged conflict of interest. The issue of whether a conflict of interest exists as to a particular Member, a Member's professional, or group of Members will be determined on an individual basis and each Member or professional shall have the opportunity to be heard and have the Committee vote in connection with its alleged conflict of interest. For the purpose of a vote under this Article VIII.B to exclude a particular Member or a Member's professional from a meeting, that Member shall not be counted for a quorum and shall not be entitled to vote on whether or not a conflict of interest exists. Consistent with the foregoing, the Member having a conflict of interest shall not have access to summaries, analyses, reports or work product prepared by the professionals of the Committee with respect to the matter in which the conflict of interest exists, except to the extent determined to be appropriate under the circumstances in the discretion of the Committee (after receiving advice of Committee Counsel); provided, however, that best efforts will be made to share redacted versions of the foregoing materials when possible, upon the request of such Member having a conflict. Notwithstanding the foregoing, by majority vote of the Members (after receiving advice of Committee Counsel) not subject to such conflict then present, the Committee can elect to allow any Member alleged to have a conflict of interest to discuss with the Committee its views on the merits of the matter itself.

C. If the Committee decides an issue without notice of a conflict of interest and at a later time a conflict of interest is disclosed or determined, the Committee, by a majority vote of Members not subject to such conflict and who are present at any subsequent meeting, may deem the Committee's earlier decision to be null and void, or may take such other action as such majority deems necessary or appropriate.

1

D. Each Member of the Committee retains the right to appear in the Chapter 11 Cases of the Debtors in respect of its own interests and to take a position different from that of the Committee, provided, however, that except as provided herein no Member shall purport to represent or speak for the Committee in connection therewith. Nothing contained in these Bylaws shall (i) prevent any Member from exercising or seeking to enforce or protect any of its rights as an individual creditor or other party-in-interest or (ii) otherwise affect the ability of any Member to act in its capacity as an individual creditor or other party-in-interest as it may deem appropriate, whether or not such actions are opposed by the Committee.

E. A Member affiliated with an entity subject to or having a request for relief pending in the Court shall disclose the same to all Members before discussion and voting on all topics related to the request.

## ARTICLE IX
## CONFIDENTIALITY OF INFORMATION

A. Each Member of the Committee is aware of the fiduciary duty that it has to all unsecured creditors of the Debtors and agrees that it will act in accordance with such duty in dealing with confidential information. All matters discussed at Committee meetings (whether or not memorialized in any minutes thereof), not generally available to the public, are confidential and, except as otherwise permitted herein or required by applicable law or court order, shall not be disclosed to any person not in attendance at such meeting, other than Members not in attendance or professionals retained by the Members or the Committee.

B. Except as provided in the following sentence, all confidential or proprietary information provided by the Debtors or any professionals employed by the Debtors to the Committee or any professionals employed by the Committee ("Confidential Information"), shall also be deemed Confidential Information and not be disclosed to third parties. Notwithstanding the foregoing, Confidential Information shall not include any information which (i) at the time of disclosure by the Debtors or thereafter is generally available to the public other than by a person bound by these provisions acting in contravention of these provisions or other confidentiality agreement with the Debtors; (ii) was available to the Committee on a non-confidential basis from a source other than the Debtors, provided that such source was not bound by a confidentiality agreement with the Debtors respecting such information; or (iii) has been independently acquired by the Committee, provided that any source of such information was not bound by a confidentiality agreement or arrangement with the Debtors. The Members recognize the Debtors' ability to designate, in good faith and in writing, certain sensitive and/or proprietary information as being restricted Confidential Information that shall only be disclosed to the Committee's professionals and will not be disclosed to the Members. Any dispute on what is Confidential Information, including, but not limited to, the designation of "professional eyes only", shall be subject to judicial review if the Debtors and the Committee are unable to agree upon the designation, provided that the disputed material filed must be filed under seal.

C. Notwithstanding paragraphs A and B, above, all Confidential Information in the possession of or known to Members of the Committee may be disclosed: (i) to other Members;

2

(ii) each Member, including such Member's primary and alternative representatives; (iii) to any professionals retained by a Member, provided that any recipients are advised of and agree to be bound by all confidential obligations of these Bylaws; and (iv) where required by law, rule, process or where demanded by any regulatory authority, to third parties, provided confidentiality agreements acceptable to the Debtors are duly executed with such parties, or approval of the Court or other court of competent jurisdiction is obtained after notice as is appropriate in the particular circumstances is provided to the Debtors, as applicable. Notwithstanding the foregoing, Confidential Information may also be disclosed without notice or other requirements where the disclosure is made in connection with a routine audit or examination of a Member by a regulator or auditor, in each case, that does not specifically target or reference the Debtors.

D. In the event of a resignation or removal of a Member of the Committee, upon request of the Committee or the Debtors, such Member shall promptly return to Committee Counsel or destroy any non-public or confidential materials (including copies thereof) received by the Member in its capacity and in the course of its tenure as a Member of the Committee.

Notwithstanding the resignation or removal of a Member, such Member shall continue to be bound by the confidentiality provisions of these Bylaws. Notwithstanding the foregoing, a Member of the Committee and its counsel may retain copies of the Confidential Information to the extent such Member of the Committee or its counsel reasonably believes it is required to retain a copy of the Confidential Information under applicable law, for legal or regulatory purposes, or to satisfy internal compliance policies and procedures. For the avoidance of doubt, Members of the Committee and their counsel shall not be required to return, destroy, or expunge any Confidential Information located on backup servers and similar devices except in the ordinary course of business provided that any such Member of the Committee and their counsel shall not access or use such Confidential Information unless required by law to do so; provided further that any such materials so retained shall be held subject to the terms of Article IX of these Bylaws.

# EXHIBIT 2

## CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement ("**Agreement**") is made as of November __, 2022, by and among Vital Pharmaceuticals, Inc. and/or its subsidiaries, affiliates or divisions (collectively, the "**Company**") and the members of the Official Committee of Non-Trade Creditors (the "**NCC**") appointed in *In re Vital Pharmaceuticals, Inc., et al.,* Case No. 22-17842 (PDR) (Jointly Administered) (collectively, the "**Bankruptcy Case**") in the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**"), [insert NCC Advisor] (collectively, the "**NCC Advisors**," and together with the NCC members, each a "**Recipient**" and collectively, the "**Recipients**"). For purposes of this Agreement, Company and Recipients are referred to herein as the "**Parties**."

**WHEREAS**, for purposes of discussions and/or the exchange of information relating to the Bankruptcy Case, the Company may, in its sole discretion, disclose to Recipients certain information about the Company, its operations, lines of business, or industry that is non-public, confidential and/or proprietary in nature, whether or not delivered before, on or after the date of this Agreement and regardless of the manner or form in which it is obtained, including without limitation all written, oral and electronic communications, and whether or not such information is marked "confidential," "proprietary," or other similar type mark, together with any notes, analyses, compilations, studies, interpretations, documents or records containing, referring, relating to, based upon or derived from such information, in whole or in part (collectively, the "**Confidential Information**").

**NOW, THEREFORE**, for the exclusive purpose of establishing the agreements of the Parties governing such disclosure, receipt, custody, and use of Confidential Information, and in consideration of the covenants and conditions set forth herein, it is agreed as follows:

1.      As a condition to each Recipient receiving any Confidential Information, Recipient agrees to treat as confidential any and all Confidential Information that is furnished by or on behalf of the Company to Recipient or its directors, officers, employees, partners, independent contractors, subcontractors, agents, advisors, representatives and affiliates (including, without limitation, attorneys, accountants, consultants and any representatives of such advisors) (collectively, the "**Representatives**").

2.      The term "Confidential Information" does not include information that the Recipient can show by competent proof (i) is or becomes available to the public other than as a result of a direct or indirect disclosure by a Recipient or its Representatives; (ii) was within a Recipient's possession on a non-confidential basis prior to its being furnished to you by or on behalf of the Company; (iii) is received from a source other than the Company or any of its Representatives; or (iv) is disclosed by Recipient or any of its Representatives with the Company's prior written consent (including by email), provided such consent must be provided by the Chief Transformation Officer of the Company, his designee (which designee will be disclosed to Recipient prior to any such request for consent), or the Company's counsel (a "**Company Consent**"). As used in this Agreement, the term "person" shall be interpreted broadly to include, without limitation, any individual, corporation, trust, group, limited liability company, partnership, or other entity.

3.      Recipient agrees that the Confidential Information will be used solely in connection with its duties as a member of the NCC, or in the course of its representation of the NCC, in connection with the Bankruptcy Case and evaluation thereof, and that such information will be kept strictly confidential and will not be disclosed by Recipient or any of its Representatives to any third parties, in any manner whatsoever, directly or indirectly, in whole or in part, except to the extent that such disclosure or use (i) is made to its Representatives who need to know or use such information in connection with the Bankruptcy Case and evaluation thereof (it being understood that such Representatives shall have been advised of the confidential nature of the Confidential Information and this Agreement, provided with a copy of this Agreement and agree in writing to act in accordance with its terms to the same extent as if they were parties hereto); (ii) is approved in writing through a Company Consent; (iii) is made to the NCC or a member thereof (or another advisor to the NCC) that has executed, and remains bound by, a confidentiality agreement with the Company in connection with the Bankruptcy Case; or (iv) is required by applicable law, regulation or stock exchange requirements, or by legal or regulatory process; provided that Recipient will, to the extent permitted by applicable law or regulation, provide the Company with prompt written notice of the existence, terms and circumstances surrounding such request or requirement so that the Company may seek, at the Company's expense, a protective order or other appropriate remedy and Recipient and its Representatives will cooperate with the Company's efforts to obtain the same.  With respect to clause (iv), if, absent the entry of such a protective order or other remedy, Recipient or such Representative is, in the advice of counsel (including in-house counsel), legally required to disclose Confidential Information, Recipient or such Representative will disclose only that portion of the Confidential Information that Recipient or such Representative is legally required to disclose, based on the advice of its counsel (including in-house counsel), and will  exercise commercially reasonable efforts to obtain assurance that confidential treatment will be accorded to the Confidential Information that is being disclosed. Recipient shall ensure that each of its Representatives who are either provided with Confidential Information, or otherwise have access to such Confidential Information, understands the confidential nature of the Confidential Information.  Prior to disclosing Confidential Information to a Representative, Recipients shall obtain written agreement (which provides that the Company is express third party beneficiary of such agreement) from the Representative to be bound by the confidentiality and use terms of this Agreement.  Moreover, Confidential Information shared with NCC Advisors identified as "**For Professional Eyes Only**" (or other substantially identical demarcation) at the time of disclosure (including in writing in the case of any written disclosure) will not be made available to any members of the NCC who have executed a non-disclosure agreement without Company Consent or written consent (including by email) pursuant to Section 4 of this Agreement.  To the extent that Recipient or its Representatives are subject to examination by a regulatory or self-regulatory authority, bank examiner, or auditor, notice to the Company shall not be required where disclosure is in connection with an audit or examination or a blanket document request that does not reference the Company or this Agreement.

4.      All of Recipient's and its Representatives' communications regarding requests for information pursuant to this letter agreement must be directed to [insert], or, solely with respect to information regarding the process to market and sell the Company's assets and the virtual data room in connection therewith, [insert].  Neither Recipient nor its Representatives will initiate or maintain contact with the Company, its representatives, or its former employees

(who have been employed with the Company within the last twelve (12) months prior to the date hereof) regarding the business, operations, prospects or finances of the Company, except with the express permission of the Company.  For the avoidance of doubt, the foregoing does not in any way limit the NCC's or the NCC Advisors' ability to investigate potential claims or conduct discovery under applicable law.

5.      Within ten (10) business days after being so requested in writing (email being sufficient) by the Company, Recipient shall, and shall cause its Representatives to, return to the Company or destroy, at Recipient's election, all Confidential Information, without retaining any copies, summaries, or extracts thereof.  In the event of such request to return or destroy Confidential Information, all documents, analyses, compilations, studies, or other materials prepared by Recipient or its Representatives that contain or reflect Confidential Information shall be destroyed and no copy thereof shall be retained (such destruction to be confirmed in writing by a duly authorized representative of Recipient).  Any Confidential Information that is not returned or destroyed, including without limitation, any oral Confidential Information, shall remain subject to the confidentiality obligations set forth in this Agreement.  Notwithstanding the foregoing, Recipient and its Representatives may retain in its legal files an archival copy of the Confidential Information (and any materials prepared by Recipient or its Representatives to the extent based on or containing Confidential Information) solely for monitoring its and their obligations hereunder or as has been archived by Recipient's standard backup processes and systems or as required by applicable law, rule, or regulation or Recipients' document retention policies and procedures, provided that any such copies or files shall be stored in a manner that prevents unauthorized access or use of Confidential Information.

6.      It is understood and agreed that money damages would not be a sufficient remedy for any breach or threatened breach of this Agreement and that the Company shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach or threatened breach.  Such remedy or remedies shall not, however, be deemed to be the exclusive remedy or remedies for breach or threatened breach of this Agreement but shall be in addition to all other remedies available at law or equity to the Company.

7.      Unless extended in writing by mutual agreement of the Parties, each of the obligations under this Agreement with respect to Confidential Information shall terminate eighteen (18) months from the earliest of (x) the substantial consummation of a chapter 11 plan in the Bankruptcy Case, (y) the date on which the Bankruptcy Case is dismissed, or (z) the conversion of the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, except that, for any Confidential Information that is a trade secret as defined by applicable law in any jurisdiction, Recipient's obligations under this Agreement will remain in effect until that information loses its trade secret status under such applicable law.

8.      Recipient acknowledges, on behalf of itself and its Representatives, that neither the Company nor its Representatives makes any representations or warranties, express or implied, as to the accuracy or completeness of the Confidential Information, that neither the Company nor its Representatives shall have any liability whatsoever to Recipient or its Representatives or any other person as a result of the use of the Confidential Information or any errors therein or omissions therefrom by virtue of this Agreement.

9.     This Agreement is for the benefit of each of Recipient and the Company and is governed by the laws of the State of Delaware without regard to any conflict of laws principles thereof.  Any action brought in connection with this Agreement shall be brought in the Bankruptcy Court, and the Parties hereby irrevocably consent to the jurisdiction of such courts and waive any objections as to venue or inconvenient forum.

10.     This Agreement may not be assigned by Recipient without the prior written consent of the Company.  This Agreement sets forth the entire agreement between the Parties as to the subject matter hereof, and none of the terms of this Agreement may be amended except in a writing signed by each of the Parties.  No failure or delay by a Party in exercising any right hereunder or any partial exercise thereof shall operate as a waiver thereof or preclude any other or further exercise of any right hereunder.  The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect.

11.     This Agreement may be executed and transmitted by PDF via email and in counterparts, each of which shall constitute one and the same agreement.

[*Signature Pages Follow*]

IN WITNESS WHEREOF, the Company and Recipient have executed this Agreement as of the date first written above.

**VITAL PHARMACEUTICALS, INC, ET AL.**

By: _____
Name:
Title:

**COMMITTEE MEMBERS:**

**THE AMERICAN BOTTLING COMPANY**

By: _____
Name:
Title:

**COMMITTEE ADVISORS:**

**[ADVISOR]**

By: _____
Name:
Title:

**MONSTER ENERGY COMPANY**

By: _____
Name:
Title:

**[MEMBER]**

By: _____
Name:
Title:

*[Signature Page–Non-Trade Creditors' Committee NDA]*

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE AMERICAN BOTTLING COMPANY, INC., | CIVIL ACTION |
| Plaintiff, | Case No.: 1:20-cv-01268-TMH |
| vs. | |
| VITAL PHARMACEUTICALS, INC. d/b/a VPX/REDLINE, | |
| Defendant. | |

**AMENDED STIPULATED PROTECTIVE ORDER PURSUANT TO**
**FED. R. CIV. P. 26(c)**

This Stipulated Protective Order ("**Protective Order**") is made by and between The American Bottling Company Inc. ("**ABC'**), and Vital Pharmaceuticals, Inc. ("**VPX**"). Each of ABC and VPX is a "Party" under this Protective Order and together they constitute the "Parties."

WHEREAS, the Parties desire that certain information and documents provided in connection with this litigation, which may contain information considered by one or more of the Parties to be proprietary and/or confidential, be subject to a confidentiality agreement and protective order; and,

WHEREAS, the Parties to this action believe that good cause exists for entry of this Protective Order under Fed. R. Civ. P. 26(c) to prevent unnecessary disclosure or dissemination of confidential documents and information of the Parties, their affiliates and/or third parties, and to ensure that documents and information exchanged be limited to use for purposes of this action only; and,

WHEREAS, the Parties hereby request that the Court enter this Protective Order in this lawsuit, and as it appears to the Court that discovery in the above-captioned action is likely to involve the disclosure of confidential information,

**IT IS HEREBY ORDERED** as follows:

1.      Any Party to this litigation and any third party may designate as "Confidential" and subject to this Protective Order any information, document, thing, or portion of any document or thing ("**Material**"), believed to be unknown or unavailable to the public:  (a) that contains trade secrets, competitively sensitive technical, marketing, financial, sales, or other confidential business information; (b) that contains private or confidential personal information; (c) that contains information received in confidence from third parties; or (d) which the producing party otherwise believes in good faith to be entitled to protection under Rule 26(c)(l)(G) of the Federal Rules of Civil Procedure. Any party to this litigation or third party covered by this Protective Order who produces or discloses any Confidential Material (including without limitation any information, document, thing, interrogatory answer, admission, pleading, or testimony) shall mark that Material with the following or similar legend: "CONFIDENTIAL" or "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER."

2.      Any party to this litigation and any third party may designate as "Attorneys' Eyes Only" and subject to this Protective Order any Material, believed to be unknown or unavailable to the public, that contains highly sensitive business or personal information, the disclosure of which is highly likely to cause significant harm to an individual or to the business or competitive position of the designating party.  Any party to this litigation or third party covered by this Protective Order who produces or discloses any Attorneys' Eyes Only Material (including without limitation any information, document, thing, interrogatory answer, admission, pleading,

or testimony) shall mark that Material with the following or similar legend:  "ATTORNEYS' EYES ONLY" or "ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER."

3.      Any party, third party, person, or entity providing Material in connection with this litigation is referred to as a "**Producing Party**."  Any party, third party, person, or entity receiving Material in connection with this litigation is referred to as a "**Receiving Party**."

4.      Confidential Material subject to this Protective Order may be used for purposes of this litigation only, and, except by prior written agreement of the Parties or by order of the Court, Confidential Material and the contents thereof shall not be disclosed, directly or indirectly, by the Receiving Party to anyone other than:

a.      Outside counsel (defined herein as any attorney at the parties' outside law firms) for the Parties;

b.      In-house counsel for the Parties, provided that (1) in-house counsel is involved in this litigation; and (2) in-house counsel signs a non-disclosure agreement in the form attached hereto as Exhibit A and agrees to be bound by the terms of this Protective Order;

c.      Outside experts or consultants retained by outside counsel for purposes of this litigation, provided they have signed a non-disclosure agreement in the form attached hereto as Exhibit A and agree to be bound by the terms of this Protective Order;

d.      Secretarial, paralegal, clerical, duplicating, and data processing personnel of the foregoing;

e.      The court and court personnel;

f.      Any deponent may be shown or examined on any Confidential Material (1) if it appears that the witness (a) authored or received a copy of it, (b) was involved in the subject matter described therein, (c) is employed by the Party who produced the Confidential

Material, or (d) if the Producing Party consents to such disclosure, and (2) provided that the witness signs a non-disclosure agreement in the form attached hereto as Exhibit A and agrees to be bound by the terms of this Protective Order;

g.    Vendors retained by or for the Parties to assist in preparing for pretrial discovery, trial and/or hearings including but not limited to court reporters, litigation support personnel, jury consultants, individuals to prepare demonstrative and audiovisual aids for use in the courtroom, in depositions, or in mock jury sessions, as well as their staff, stenographic, and clerical employees whose duties and responsibilities require access to such Material; and

h.    The Parties' executives who are required to participate in decisions regarding this litigation, provided they have signed a non-disclosure agreement in the form attached hereto as Exhibit A and agree to be bound by the terms of this Protective Order.

5.    Attorneys' Eyes Only Material subject to this Protective Order may be used for purposes of this litigation only, and, except by prior written agreement of the Parties or by order of the Court, Attorneys' Eyes Only Material and the contents thereof shall not be disclosed, directly or indirectly, by the Receiving Party to anyone other than:

a.    Outside counsel (defined herein as any attorney at the parties' outside law firms) for the Parties;

b.    In-house counsel for the Parties, provided that (1) in-house counsel is involved in this litigation; and (2) in-house counsel signs a non-disclosure agreement in the form attached hereto as Exhibit A and agrees to be bound by the terms of this Protective Order;

c.    Outside experts or consultants retained by outside counsel for purposes of this litigation, provided they have signed a non-disclosure agreement in the form attached hereto as Exhibit A and agree to be bound by the terms of this Protective Order;

        d.      Secretarial, paralegal, clerical, duplicating, and data processing personnel of the foregoing;

        e.      The court and court personnel;

        f.      A deponent may be shown or examined on Attorneys' Eyes Only Material (1) only if it appears that the witness authored or received a copy of it, or if the Producing Party consents to such disclosure, and (2) provided that the witness signs a non-disclosure agreement in the form attached hereto as Exhibit A and agrees to be bound by the terms of this Protective Order; and

        g.      Vendors retained by or for the Parties to assist in preparing for pretrial discovery, trial and/or hearings including but not limited to court reporters, litigation support personnel, jury consultants, individuals to prepare demonstrative and audiovisual aids for use in the courtroom, in depositions, or in mock jury sessions, as well as their staff, stenographic, and clerical employees whose duties and responsibilities require access to such Material.

6.      Attorneys' Eyes Only Material subject to this Protective Order that is designated "ATTORNEYS' EYES ONLY, OUTSIDE COUNSEL ONLY" may be used for purposes of this litigation only, and, except by prior written agreement of the Parties or by order of the Court, Attorneys' Eyes Only Material designated "ATTORNEYS' EYES ONLY, OUTSIDE COUNSEL ONLY" and the contents thereof shall not be disclosed, directly or indirectly, by the Receiving Party to anyone, including any in-house person (e.g., in-house counsel or the secretarial or administrative staff thereof), other than:

        a.      Outside counsel (defined herein as any attorney at the parties' outside law firms) for the Parties;

b.      Outside experts or consultants retained by outside counsel for purposes of this litigation, provided they have signed a non-disclosure agreement in the form attached hereto as Exhibit A and agree to be bound by the terms of this Protective Order;

c.      Secretarial, paralegal, clerical, duplicating, and data processing personnel of the foregoing;

d.      The court and court personnel;

e.      A deponent may be shown or examined on Attorneys' Eyes Only, Outside Counsel Only Material (1) only if it appears that the witness authored or received a copy of it, or if the Producing Party consents to such disclosure, and (2) provided that the witness signs a non-disclosure agreement in the form attached hereto as Exhibit A and agrees to be bound by the terms of this Protective Order; and

f.      Vendors retained by or for the Parties to assist in preparing for pretrial discovery, trial and/or hearings including but not limited to court reporters, litigation support personnel, jury consultants, individuals to prepare demonstrative and audiovisual aids for use in the courtroom, in depositions, or in mock jury sessions, as well as their staff, stenographic, and clerical employees whose duties and responsibilities require access to such Material.

7.      If Confidential Material and/or Attorneys' Eyes Only Material are to be used during the deposition of a non-party witness, and disclosure of such Material is otherwise permissible under this Protective Order, the deponent shall be given a copy of this Protective Order, shall be informed on the record of the terms of this Protective Order, and shall agree to be bound by the terms of this Protective Order by signing the non-disclosure agreement attached hereto as Exhibit A.   In the event a non-party witness refuses to agree to be bound by this Protective Order, Confidential Material and Attorneys' Eyes Only Material shall not be revealed

to the non-party witness without the consent of all parties to this Protective Order or by leave of Court.

8.      Attendance at depositions at which Confidential Material or Attorneys' Eyes Only Material are identified, discussed or disclosed shall be limited to those persons who are authorized to receive such Material under the terms of this Protective Order.  If any person not entitled to receive such Material is in attendance at a deposition, a party at its request may have that individual excluded from the room in which the deposition is taking place for the duration of time in which the Material is being discussed.

9.      Nothing in this Protective Order shall bar or otherwise restrict an attorney who is a qualified recipient of Confidential Material or Attorneys' Eyes Only Material, from rendering advice to his or her client with respect to this action, and in the course thereof, from generally relying upon his or her examination of Confidential Material or Attorneys' Eyes Only Material. In rendering such advice or in otherwise communicating with the client, the attorney shall not disclose the specific content of any Confidential Material or Attorneys' Eyes Only Material of another person or party where such disclosure would not otherwise be permitted under the terms of this Protective Order.

10.     Information shall be designated as "Confidential" or "Attorneys' Eyes Only" in the following manner:

        a.      In the case of Material reduced to paper form, the designation shall be made by placing the legend "CONFIDENTIAL", "CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER", "ATTORNEYS' EYES ONLY", "ATTORNEYS' EYES ONLY, OUTSIDE COUNSEL ONLY", or "ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER" on the Material in a manner sufficient to identify the Material as

entitled to confidential treatment in this action.  A Producing Party shall designate such Material as Confidential or Attorneys' Eyes Only at or before the time of production.

b.      Material produced or provided on a computer disk, data tape or other medium that has not been reduced to paper form may be designated as Confidential Material or Attorneys' Eyes Only Material by informing counsel for the parties to this action in writing that the computer disk, data tape or other medium contains Confidential Material or Attorneys' Eyes Only Material.  To the extent practical, such physical medium should also be appropriately labeled as "CONFIDENTIAL", "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER", "ATTORNEYS' EYES ONLY", "ATTORNEYS' EYES ONLY, OUTSIDE COUNSEL ONLY", or "ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER". The Receiving Party receiving such Material under this Paragraph 7(b) shall then be responsible for appropriately labeling any printed version(s) of the Material which the Receiving Party creates after receiving the information in electronic format.

c.      In the case of deposition testimony, any Party or third party may designate Material disclosed during a deposition as Confidential Material or Attorneys' Eyes Only Material either by identifying on the record at the deposition the Material that is to be treated as Confidential Material or Attorneys' Eyes Only Material or by marking the portions of the deposition record to be designated as Confidential Material or Attorneys' Eyes Only Material within thirty (30) days after receipt of the transcript.  When the deponent and the attending parties do not agree to waive the reading, correcting, and signing of the transcript, all information disclosed during a deposition shall be treated as Confidential Material before the expiration of the 30-day period unless otherwise agreed by the Parties.  This 30-day period may be extended by agreement of the Parties.  If any deposition testimony or any document or information used

during the course of a deposition is designated as Confidential Material or Attorneys' Eyes Only Material, each page of the deposition record reflecting such material shall be marked by the court reporter as "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER", or "ATTORNEYS' EYES ONLY, OUTSIDE COUNSEL ONLY - SUBJECT TO PROTECTIVE ORDER", and the first page of the deposition record shall be marked by the court reporter in a manner that makes it readily apparent that the deposition record contains Confidential Material or Attorneys' Eyes Only Material.

11.     A party other than the Producing Party may designate Material as Confidential Material or Attorneys' Eyes Only Material by giving written notice to all Parties to this action within thirty (30) days of the date on which, exercising reasonable diligence, that designating party becomes aware of production.   All Parties shall then stamp or otherwise mark the designated documents as Confidential or Attorneys' Eyes Only pursuant to this Protective Order.

12.     If counsel for a Party receiving Material designated as Confidential or Attorneys' Eyes Only objects to that designation in whole or in part, counsel for the objecting party shall serve on the designating party a written objection describing with particularity the Material in question and stating the grounds for objection. Counsel for the designating party shall respond to the objection in writing within fourteen (14) days, and shall state with particularity the grounds for asserting that the Material is properly designated. Counsel shall confer in good faith in an effort to resolve the dispute.  If the dispute cannot be resolved by agreement within ten (10) business days, the objecting party may present the dispute to the Court consistent with Paragraph 3(g) of the Court's Scheduling Order.  If the objecting party does not present the dispute to the Court, then the Material shall remain as designated.  Any Material which has been

designated as Confidential Material or Attorneys' Eyes Only Material, but which is subject to a dispute as to its proper designation, shall be treated as it has been designated pending resolution of the dispute.

13.     Any party who wishes to file with the Court documents, pleadings, motions or other papers containing, affixing, or reflecting Confidential Material or Attorneys' Eyes Only Material (hereafter "Court Documents") shall be responsible for filing a motion to impound or seal such Court Documents (or the portions containing Confidential Material or Attorneys' Eyes Only Material). Should the motion to impound or seal not be resolved by the date the Court Documents are scheduled to be filed with the Court, the filing party shall serve the other party with the Court Documents on the day they are scheduled to be filed with the Court and, in lieu of filing such Court Documents (or the portions thereof containing Confidential Material or Attorneys' Eyes Only Material), will file instead a certificate of service.  The Court Documents (or portions thereof containing any Confidential Material or Attorneys' Eyes Only Material) will then be filed with the Court after the Court has resolved the motion to impound or seal.

14.     Any party wishing to disclose Confidential Material or Attorneys' Eyes Only Material during trial or at any hearing in this litigation may do so only as directed by the Court after giving notice to the Producing Party.

15.     To the extent consistent with applicable law, the inadvertent or unintentional disclosure of Confidential Material or Attorneys' Eyes Only Material that should have been designated as such shall not be deemed to waive a Party's claim of confidentiality, in whole or in part, either as to the specific Material disclosed or to other Material concerning the same or related subject matter.  Inadvertent or unintentional disclosures may be rectified by written notification to counsel for all Parties receiving the Material that the Material should have been

designated Confidential or Attorneys' Eyes Only. Such notice shall constitute a designation of the Material as Confidential or Attorneys' Eyes Only under this Protective Order.

16.     Inadvertent production of documents, tangible things, or information subject to the attorney client privilege or work product immunity shall not constitute a waiver of such privilege. After receiving notice from the Producing Party that documents, tangible things, or information subject to the attorney client privilege or work product immunity have been inadvertently produced, the Receiving Party shall not review, copy or disseminate such documents or information.  The Receiving Party shall return such documents or information and any copies to the Producing Party immediately.  However, nothing herein restricts the right of the Receiving Party to challenge the Producing Party's claim of privilege if appropriate within a reasonable time after receiving notice of the inadvertent or mistaken disclosure, but the Receiving Party shall not assert the fact or circumstances of the inadvertent production as a ground for the challenge.

17.     This Protective Order does not deprive any party of its right to object to discovery by any other party or on any otherwise permitted ground. This Protective Order is entered without prejudice to the right of any party to move the court for modification of or relief from any of its terms.

18.     This Protective Order survives the termination of this litigation and remains in full force and effect unless modified by order of the Court or by written stipulation of the Parties filed with the Court.

19.     Upon receipt of any subpoena from a third party seeking disclosure or production of Material which has been designated as Confidential Material or Attorneys' Eyes Only Material subject to this Protective Order, the party or person receiving the subpoena shall

(a) provide prompt written notice of such subpoena to the party whose designated Confidential Material or Attorneys' Eyes Only Material has been subpoenaed so that the designating party may contest such subpoena and (b) promptly serve objections to the subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure, or pursuant to the applicable state rule of civil procedure, on the ground that the Material is covered by this Protective Order.  The designating party whose Material is covered by the subpoena shall cooperate in good faith with the recipient of the subpoena in the preparation and filing of the objections under this paragraph.

20.    <u>Other Proceedings</u>.  By entering this Protective Order and limiting the disclosure of information in this case, this Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or party subject to this Protective Order who becomes subject to a motion to disclose another party's information designated Confidential or Attorneys Eyes Only pursuant to this Protective Order shall promptly notify that party of the motion so that party may have an opportunity to appear and be heard on whether that information should be disclosed.  At the conclusion of this action, by final dismissal, judgment or settlement, with all time to appeal having expired, all Confidential Material and Attorneys' Eyes Only Material covered by this Protective Order, and all copies of same, shall be returned by the Receiving Party to the Producing Party, or shall be destroyed, and counsel of record shall certify in writing within sixty (60) days of the conclusion of the action that such Material has been returned or destroyed**.**  After the conclusion of the action, each consultant or expert retained by counsel for the Parties who received Confidential Material or Attorneys' Eyes Only Material may retain such documents as are needed for professional liability purposes, but shall otherwise return such Material or certify in writing that such Material has been destroyed. Notwithstanding this requirement to return or destroy

documents, outside counsel may retain (1) attorney work product, and (2) a complete set of all documents filed with the Court including those filed under seal.  Any retained documents containing or referring to Confidential Material or Attorneys' Eyes Only Material shall continue to be protected under this Order.   Documents filed with the Court shall be deleted from the Electronic Case Filing (ECF) System only upon order of the Court.

SO, ORDERED, this __15___ day of December, 2021.


 /s/ Todd M. Hughes
_____

Todd M. Hughes Judge Presiding

Dated: December 14, 2021

Respectfully submitted,

By: */s/ Joseph S. Naylor* _____
Joseph S. Naylor, Esquire (Bar ID No. 3886)
**Swartz Campbell, LLC**
300 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Telephone: (302) 656-5935
jnaylor@swartzcampbell.com

-and-

Richard A. Illmer
State Bar No. 10388350
Rick.Illmer@huschblackwell.com
B. Ryan Weger
State Bar No. 24110519
Ryan.Weger@huschblackwell.com
**HUSCH BLACKWELL LLP**
1900 Pearl Street, Suite 1800
Dallas, Texas 75201
(241) 999-6100 (Telephone)
(241) 999-6170 (Facsimile)

**ATTORNEYS FOR PLAINTIFF THE
AMERICAN BOTTLING COMPANY**

Dated: December 14, 2021

By: */s/ Paul A. Logan*
Paul A. Logan, Esquire
Attorney I.D. No. 3339
**POST & SCHELL, P.C.**
300 Delaware Avenue
Suite 1380
Wilmington, DE 19801
Phone (302) 251-8856
Cell: (215) 287-9196
PLogan@PostSchell.com

**QUARLES & BRADY LLP**
David E. Worthen (*pro hac vice*)
Jonathan P. Labukas (*pro hac vice*)
1701 Pennsylvania Avenue NW, Suite 700
Washington, DC 20006
Phone: (202) 780-2662
David.Worthen@quarles.com
Jonathan.Labukas@quarles.com

Gregory T. Everts (*pro hac vice*)
33 East Main Street, Suite 900
Madison, WI 53703
(608) 230-2460
gregory.everts@quarles.com

Jeffrey Spoerk (*pro hac vice*)
411 East Wisconsin Avenue, Suite 2400
Milwaukee, WI 53202
(414) 277-5337
Jeff.Spoerk@quarles.com

Mark Bina (*pro hac vice*)
300 N. LaSalle Street, Suite 4000
Chicago, IL 60654
(312) 715-5051
Mark.Bina@quarles.com

**ATTORNEYS FOR DEFENDANT VITAL
PHARMACEUTICALS, INC. D/B/A
VPX/REDLINE**

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| THE AMERICAN BOTTLING COMPANY, INC., | CIVIL ACTION |
| Plaintiff, | Case No.: 1:20-cv-01268-TMH |
| vs. | |
| VITAL PHARMACEUTICALS, INC. d/b/a VPX/REDLINE, | |
| Defendant. | |

I hereby certify (i) I understand discovery material, Confidential Material, or Attorneys' Eyes Only Material are being provided to me pursuant to the terms and restrictions of the Stipulated Protective Order Pursuant to Fed. R. Civ. P. 26(c) (the "**Protective Order**") entered by the United States District Court for the District of Delaware (the "**Court**") in this action, and (ii) I have read said Protective Order.  I further certify I understand the terms of the Protective Order, I agree to be fully bound by the Protective Order, and I hereby submit to the jurisdiction of the Court for purposes of enforcement of the Protective Order. I understand a violation of the Protective Order may be punishable by contempt of Court.

Dated: _____

Signature: _____

Name: _____

Address: _____

_____