Page 1

```
                   UNITED STATES BANKRUPTCY COURT.
                   SOUTHERN DISTRICT OF FLORIDA


 IN RE:                         CASE NO. 22-17842-PDR
 VITAL PHARMACEUTICALS, INC.,
          Debtor.
 _____/


                         ECF #192, 193
                        October 27, 2022
              The above-entitled cause came on for hearing
 before the Honorable Peter D. Russin, one of the Judges in
 the UNITED STATES BANKRUPTCY COURT, in and for the
 SOUTHERN DISTRICT OF FLORIDA, at 299 E. Broward Blvd.,
 Fort Lauderdale, Broward County, Florida, on October 27,
 2022, commencing at or about 2:00 p.m., and the following
 proceedings were had.




              Transcribed from a digital recording by:
                   Cheryl L. Jenkins, RPR, RMR
```

```
 1
                     APPEARANCES VIA ZOOM:
 2
 3              BERGER SINGERMAN, by
              MICHAEL NILES, Esquire
 4          On behalf of the Debtor
                AKERMAN, LLP, by
 5        MICHAEL I. GOLDBERG, Esquire
 6                     and
          PACHULSKI STANG ZIEHL & JONES, by
 7             TEDDY KAPUR, Esquire
            On behalf of Monster Energy
 8
          J. STEVEN WILKES, Trial Attorney
 9           Office of the U.S. Trustee
                Department of Justice
10
                 FURR & COHEN, by
11             MARC BARMAT, Esquire
       On behalf of American Bottling Company
12
              MICHAEL SEESE, Esquire
13          On behalf of Driscoll, LLLP
14                  AGENTIS, by
              JESSE CLOYD, Esquire
15        On behalf of Stellar Group, Inc.
16           ANTHONY & PARTNERS, by
              JOHN ANTHONY, Esquire
17        On behalf of Nevada Beverage Corp.
18            JOSEPH IANNO, Esquire
                Inhouse for FP&L
19
                   ALSO PRESENT
20
                  John DiDonato
21
       ECRO - Electronic Court Reporting Operator
22
                     - - - - - - -
23
24
25
```

1  THE COURT: The next matter is Vital
2  Pharmaceuticals, 22-17842. Let's start with appearances.
3  Mr. Wilkes.
4  MR. WILKES: Good afternoon, your Honor.
5  J. Steven Wilkes for the United States Trustee, Region 21.
6  THE COURT: All right, and I'm just going to
7  go by the order of the Zoom windows.
8  Mr. Seese.
9  MR. SEESE: Good afternoon, your Honor.
10 Michael Seese, S-e-e-s-e, appearing today on behalf of
11 Driscoll, D-r-i-s-c-o-l-l, LLLP.
12 THE COURT: And Mr. Goldberg.
13 MR. GOLDBERG: Good afternoon, your Honor.
14 Michael Goldberg on behalf of Monster Energy Company, and
15 with me is Mr. Teddy Kapur of the Pachulski Stang law firm
16 in California.
17 THE COURT: Thank you.
18 Mr. Niles.
19 MR. NILES: Good afternoon, your Honor.
20 Michael Niles, from Berger Singerman, on behalf of the
21 debtor, Vital Pharmaceuticals, Inc., and in the courtroom,
22 or on Zoom with me, your Honor, is Mr. John DiDonato, the
23 chief transformation officer of the debtor.
24 THE COURT: Thank you.
25 Mr. Barmat.

1          MR. BARMAT:  Good afternoon, your Honor.
2     Marc Barmat, B-a-r-m-a-t, on behalf of creditor, the
3     American Bottling Company.
4          THE COURT:  Thank you.  Mr. Kapur, I think
5     Mr. Goldberg already introduced you, right?
6          Okay, and --
7          MR. KAPUR:  Yes, your Honor.
8          THE COURT:  Okay, and Mr. Cloyd.
9          MR. CLOYD:  Good afternoon, your Honor.
10    Jesse Cloyd, C-l-o-y-d, on behalf of Stellar Group, Inc.
11         THE COURT:  And The John Anthony, who I
12    haven't seen in a long time.  Mr. Anthony.
13         MR. ANTHONY:  It's a pleasure and honor to
14    appear before your Honor.  John Anthony on behalf of
15    Nevada Beverage Company.
16         THE COURT:  Thank you.
17         And, Mr. DiDonato, we already are aware of,
18    and Mr. Ianno, is that right?
19         MR. IANNO:  Correct.  Well, that's fine,
20    your Honor, that's one way to pronounce it.  Joseph Ianno,
21    I-a-n-n-o.  I'm in-house counsel for Florida Power & Light
22    Company.
23         THE COURT:  All right.  Thank you,
24    Mr. Ianno.  Sorry I mispronounced your name.
25         MR. IANNO:  That's fine.

1  THE COURT:  I may have even done it a second
2  time.
3  MR. IANNO:  In Italy that's how they would
4  pronounce it.
5  THE COURT:  Right.
6  All right.  Anyone wish to make an
7  appearance?  I'm not seeing any others.
8  I do see others that are here but may be
9  just observing.  So if you want to make an appearance, now
10 is the time.
11 (No verbal response.)
12 THE COURT:  Okay.  All right.  So, the first
13 matter I have on the calendar is 192, which is an
14 emergency motion to reject lease.  Who is going to handle
15 that matter, Mr. Niles?
16 MR. NILES:  Yes, your Honor.
17 THE COURT:  All right.  So I thought I
18 entered an order on part of it, is that right?  That
19 was --
20 MR. NILES:  You entered --
21 THE COURT:  -- agreed?
22 MR. NILES:  You entered an order,
23 your Honor, on a motion for relief from stay that was
24 filed by a separate landlord.
25 THE COURT:  Ah, I see.

1       Okay.  So, go ahead with the motion, and
2  we'll go from there.  Thank you.
3       MR. NILES:  Thank you.  Thank you,
4  your Honor.  Again, Michael Niles, from Berger Singerman,
5  on behalf of the debtor.
6       Judge, the lease rejection motion is in the
7  record at ECF 192.  The notice of hearing on that motion
8  is at ECF 200, and the certificate of service of that
9  motion, and the notice of hearing is at 212.  It was
10 mailed on the master service list and to the three
11 landlords, as reflected on Exhibits A, B, and C of the
12 certificate of service.
13      The debtors are seeking an order rejecting
14 certain unexpired nonresidential real property leases
15 effective as of the petition date.  The three leases,
16 which are identified on Exhibit A, include properties
17 located in Colorado Springs, Colorado, Denver, Colorado,
18 and Rogers, Arkansas, that each served as direct store
19 distribution centers, which as of the petition date were
20 no longer needed based upon the new distribution program
21 that the debtors have been implementing.
22      The aggregate monthly rent for these three
23 properties is over $30,000.  The debtor has vacated each
24 of these properties prior to the petition date, and
25 continuing to maintain these leases provide no benefit to

1  the debtors' estate on a go-forward basis.
2              Your Honor, prior to this hearing the
3  debtors were contacted by counsel for Driscoll, LLP (sic),
4  the landlord for the Colorado Springs property, Mr. Seese,
5  who is on the line today, and as to this property only, we
6  are agreeing to a rejection date of October 21st, 2022,
7  which is the date the rejection motion was filed, and
8  similarly we are agreeing to language in the order that is
9  preserving the issue of landlord's entitlement to rent
10 approved between the petition date and the rejection date,
11 subject to the debtor's defenses.
12             We've received no other objections to the
13 motion, and so as to the other two landlords, we would
14 request that the order remain, that rejection is as of the
15 petition date, and unless the Court has any other
16 questions, your Honor, the debtor requests that the motion
17 be granted subject to that revision pertaining to
18 Driscoll, LLP.
19             THE COURT:  All right.  Mr. Seese, anything
20 from you?
21             MR. SEESE:  No, your Honor, what counsel
22 stated is correct.
23             THE COURT:  All right.  So the Court will
24 grant as to the -- that's the Colorado Springs property,
25 is that right?

1    MR. SEESE: Yes, sir. And, your Honor, I
2 misspoke, I apologize. The only caveat to what counsel
3 said was that I was informed by my client this morning,
4 and was provided with photographs, that there are still
5 some items of personal property, refrigeration equipment,
6 office furniture that remain on the premises. So that was
7 the only caveat, but as far as the agreement goes, that
8 was the stipulation between the parties.
9    THE COURT: All right. So, it's still
10 deemed rejected as of the 21st, and I guess --
11    MR. SEESE: Yes, sir.
12    THE COURT: -- whatever rights you have
13 under the lease with respect to those items that remain in
14 the property, whether it was required to have been left in
15 broom-swept condition, or whatever the terms are of the
16 lease, that will be part of your rejection damage claim, I
17 assume, is that right?
18    MR. SEESE: Yes, correct. That's correct,
19 your Honor.
20    THE COURT: So that's why I'm saying that's
21 why you're raising those issues, right?
22    MR. SEESE: That is why I'm raising those
23 issues, your Honor, but I also think it relates to the
24 issue of whether we're entitled to Stub Rent or not,
25 whether the rent will have to be paid under 365(d)(3), or

1  whether it relates to 503(b), depending upon your Honor's
2  ruling on that issue --
3           THE COURT:  I see.
4           MR. SEESE:  -- if it gets that far.
5           THE COURT:  Okay.  I understand.
6           All right, then the Court will grant the
7  motion as agreed to between the parties with respect to
8  Colorado Springs, and with respect to the effective date
9  of rejection with respect to the other two properties,
10 you're asking for the petition date, right --
11          MR. NILES:  Correct, your Honor.
12          THE COURT:  -- Mr. Niles?
13          MR. NILES:  Yes, your Honor.
14          THE COURT:  Okay, and you haven't received
15 an objection from the other landlords, and they're not
16 here, correct?
17          MR. NILES:  We have not received an
18 objection, and I do not believe anyone has made an
19 appearance.
20          THE COURT:  All right.  So the Court will
21 grant that, and I guess I'll look forward to receiving two
22 separate -- three separate orders, or how are we doing
23 this?  Because I assume that the order, obviously, with
24 Mr. Seese will be slightly different than the order with
25 respect to the other two properties.

1   MR. NILES: Your Honor, I was thinking about
2   just modifying the single order to effectuate the relief
3   given to Mr. Seese's client, that the lease would be
4   rejected as of October 21st, while the other two leases
5   are as of the petition date, but --
6   THE COURT: So, you'll put it all in one
7   order, but address each property separately in the order?
8   MR. NILES: That was my thinking,
9   your Honor.
10  THE COURT: Okay. That's fine, that's fine.
11  All right, and just, obviously, remember to
12  follow the Local Rules with respect to notice of when
13  rejection damage claims need to be filed.
14  MR. NILES: Yes, your Honor.
15  THE COURT: Okay. I think it has to be in
16  bold, and it's 30 days from the date of the order,
17  et cetera, but just follow the Local Rules.
18  All right. Anything else we need to do on
19  that matter?
20  MR. SEESE: Your Honor, thank you very much.
21  This is Michael Seese. May I be excused from the rest of
22  the matters?
23  THE COURT: You certainly may. Thank you.
24  MR. SEESE: Thank you, your Honor. Have a
25  great day.

1        THE COURT: You, too.
2        All right. So the next matter is 193,
3   expedited motion for continuation of utility service.
4   Mr. Niles will be handling -- you will be handling that as
5   well?
6        MR. NILES: Yes, your Honor.
7        THE COURT: All right. Go for it.
8        MR. NILES: Thank you, your Honor. Again,
9   Michael Niles on behalf of the debtor.
10       We are here now on the utility motion, which
11  is of record on ECF 193. The notice of hearing on the
12  motion is at ECF 201, and the certificate of service of
13  the motion and notice of hearing is at 212. The motion
14  and the notice of hearing was mailed on the master
15  service list, and to all utility providers, as reflected
16  on Exhibits A, B, and D of the certificate of service.
17       In addition, your Honor, this morning the
18  debtors filed a supplemental declaration of John DiDonato
19  in support of the utility motion, which is filed at
20  ECF 224, in addition to the first day declaration, filed
21  at ECF 26, which provides the general background of the
22  debtor's operations, we intend to rely on this
23  supplemental declaration in support of this motion. We
24  would request that ECF 224 and ECF 26 be entered into
25  evidence.

```
 1              As I mentioned, Mr. DiDonato is in
 2   attendance, to the extent anyone would like to
 3   cross-examine him.
 4              THE COURT:  All right.  Anyone object to the
 5   entry into evidence, and the proffer of the testimony
 6   contained in Docket Entry 224, which is the declaration
 7   filed by Vital Pharmaceuticals as a supplemental
 8   declaration of John DiDonato in support of the utility
 9   motion?
10              (No verbal response.)
11              THE COURT:  All right.  Anyone wish to
12   cross-examine Mr. DiDonato?
13              (No verbal response.)
14              THE COURT:  All right.  So the Court will
15   accept that declaration, that testimony into evidence, and
16   you said there was another document you were seeking to
17   have into evidence?
18              MR. NILES:  Just the first day declaration,
19   your Honor, which is at ECF 26.
20              THE COURT:  All right.  So there is a first
21   day declaration as well that's already in evidence with
22   respect to the first days but, Mr. Ianno, I don't know if
23   that's of interest to you, or you have any objection to
24   that?
25              MR. IANNO:  No, no, your Honor.  Mr. Niles
```

1  and I have been discussing our issues, and we've
2  reached an agreement and stipulation, that's all we have
3  to put on the record.  So we have no objection to any of
4  that.
5           THE COURT:  All right.  The Court will
6  recognize the already admitted first day declaration of
7  Mr. DiDonato as well in support of the motion.
8           All right.  So what's the deal?
9           MR. NILES:  Thank you, your Honor.  So
10 pursuant to the motion, we're seeking approval of adequate
11 assurance deposits pursuant to Section 363 of the
12 Bankruptcy Code.  The exhibit that we attached to the
13 motion is the schedule that's required by the Local
14 Rule 9013-1, which identifies the utility providers and
15 their addresses.
16          In addition, we provided the account
17 numbers, the historical billing information, the deposits
18 held, if any, and the proposed adequate assurance of two
19 weeks, calculated using the historical preceding billings
20 from this year.
21          Judge, I do want to point out that due to
22 the voluminous amount of utility services and utility
23 providers, in the motion the debtors request a waiver of
24 the certification in Local Rules 9013-1, which requires
25 the debtor to reach out to each of the utility providers

1  prior to filing the motion.
2          While we've had conversations with some of
3  the utilities, and have come to some agreements, we've not
4  had the opportunity to discuss the motion prior to the
5  filing.
6          THE COURT:  And you need the resolution of
7  the matter given the 20-day issue?
8          MR. NILES:  Correct, your Honor.
9          THE COURT:  All right.  I understand.
10         All right.  Any objection to waiving that
11  certification process, Mr. Wilkes?
12         MR. WILKES:  Thank you, your Honor.
13  J. Steven Wilkes for the United States Trustee.
14         No objection to the request to waive that
15  requirement so long as the Court and the parties are under
16  an understanding that the utility provider, who hasn't
17  been contacted by debtor's counsel, that doesn't think
18  they're adequately protected, has an ability to come in
19  and seek relief, which this would be -- would provide
20  after the entry of this order.
21         THE COURT:  I think that's, I think that's
22  probably right, Mr. Niles.  I think the whole idea here
23  was to be able to speak to these utility providers and
24  reach an agreement.
25         They do have notice, and they could have

1   been here to object, I suppose, and I'm not going to -- I
2   don't think the order needs to say that they can seek
3   rehearing, because that's part of the rules anyway.
4               I also I think that if they don't feel
5   adequately protected, they can seek relief from the order,
6   so I don't think that's a problem.
7               So are you suggesting, Mr. Wilkes, that we
8   need to put a provision in the order itself, or is that
9   taken care of just in the normal course of, you know, the
10  procedural aspects of the Court?
11              MR. WILKES:  Those are carried out through
12  the normal procedural aspects of the Court either through
13  923 or 924, considering the timing within the utility bill
14  is no longer adequately assured.
15              MR. NILES:  I do want to point out that the
16  procedures under the motion do provide those utilities
17  with 15 days to reach out to us in the event that they
18  don't feel that they are adequately assured.
19              THE COURT:  From the -- 15 days starting
20  from when, the entry of the order?
21              MR. NILES:  From the date -- I believe it's
22  from the date of the order, your Honor.
23              THE COURT:  Okay.  That solves the problem.
24  Okay.  Great.
25              All right.  Any objections to the relief

1  requested?
2           (No verbal response.)
3           THE COURT:  Anybody want to cross-examine
4  Mr. DiDonato?  I mean, I really think you need to be
5  cross-examined at some point.
6           MR. NILES:  Your Honor, I do want to point
7  out two other slight changes to the motion.
8           THE COURT:  Maybe I'll cross-examine him.  I
9  mean, it's a little bit too easy so far.
10          Anyway, Mr. Niles.  Sorry.
11          MR. NILES:  Not a problem.
12          I just did want to point out, your Honor,
13 that the debtors did identify two additional telecom
14 utility providers after we submitted the motion, and right
15 before this hearing.  Cellhire USA, LLC, which is located
16 in Richardson, Texas, the average monthly payment for this
17 utility is about $2,500, and the debtors are proposing an
18 adequate assurance deposit in the amount of $1,265, and
19 also another telecom provider, Crown Castle Fiber, LLC,
20 located in New York.  The average monthly payment to this
21 utility is $6,675, and the debtor has proposed an adequate
22 assurance deposit in the amount of $3,338.  Pursuant to
23 the motion and the order, we will file an amended schedule
24 of utilities, which include these two additional entities,
25 your Honor.

| | |
|---|---|
| 1 | THE COURT: And will those entities be |
| 2 | included in the order that you have me enter subsequent to |
| 3 | this hearing? |
| 4 | MR. NILES: Yes, your Honor. |
| 5 | THE COURT: Or would it be a separate order? |
| 6 | MR. NILES: They would be included in this |
| 7 | order. |
| 8 | THE COURT: Okay. All right. Any |
| 9 | objections to that? |
| 10 | (No verbal response.) |
| 11 | THE COURT: Okay. All right. That's fine. |
| 12 | Go ahead and submit the orders, and -- or I guess it's |
| 13 | just a single order, and we'll get it entered as quickly |
| 14 | as possible. When is the twentieth day, by the way? |
| 15 | MR. NILES: The twentieth day would be the |
| 16 | 30th of this month, your Honor. |
| 17 | THE COURT: All right, and does the order |
| 18 | need to be entered prior to the 30th, or the motion just |
| 19 | needs to be filed before then? |
| 20 | MR. NILES: The order should be entered |
| 21 | prior to the 30th, your Honor. |
| 22 | THE COURT: All right, that was my concern. |
| 23 | So get it to us as quickly as you can, and because the |
| 24 | 30th will fall on a weekend, so I have now -- from now |
| 25 | until close of business tomorrow to get it entered and |

1  docketed, and remember that it's a multistep process, law
2  clerks review, I then review and sign, but then
3  honestly that's almost irrelevant because unless Ms.
4  Weldon gets ahold of it and actually dockets it, it's
5  meaningless.
6              And so I need to get the order and sign it
7  before, say, 3 o'clock tomorrow, all right --
8              MR. NILES:  We'll make sure --
9              THE COURT:  -- just to be aware of that, all
10 right?
11             MR. NILES:  Of course.
12             THE COURT:  Okay.  That's how the sausage is
13 made back here.
14             But anyway, all right, anything else we need
15 to do here today?
16             (No verbal response.)
17             THE COURT:  All right.
18             MR. NILES:  Nothing else from me,
19 your Honor.
20             THE COURT:  I guess we'll see you at the
21 next hearing, which, as I understand it, is on the 9th.
22             MR. NILES:  Yes, your Honor.
23             THE COURT:  All right.  Thank you all very
24 much.  Have a great day.
25             MR. NILES:  Thank you.  You, too.

Page 19

1          MR. IANNO:  Thank you, your Honor.
2          MR. CLOYD:  Thank you.
3
4
5
6          (Thereupon, the hearing was concluded.)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**OUELLETTE & MAULDIN COURT REPORTERS, INC.**
**(305) 358-8875**

```
                        CERTIFICATION


STATE OF FLORIDA       :
COUNTY OF MIAMI-DADE   :


            I, Cheryl L. Jenkins, RPR, RMR, Shorthand
Reporter and Notary Public in and for the State of Florida
at Large, do hereby certify that the foregoing proceedings
were transcribed by me from a digital recording held on
the date and from the place as stated in the caption
hereto on Page 1 to the best of my ability.
            WITNESS my hand this 19th day of
December, 2022.



               _____
                 CHERYL L. JENKINS, RPR, RMR
                Court Reporter and Notary Public
              in and for the State of Florida at Large
                   Commission #HH 170910
                     December 27, 2025
```