Page 1

```
 1              UNITED STATES BANKRUPTCY COURT.
                 SOUTHERN DISTRICT OF FLORIDA
 2

 3

 4    IN RE:                    CASE NO. 22-17842-PDR

 5   VITAL PHARMACEUTICALS, INC.,

 6              Debtor.
      _____/
 7

 8                      ECF #405

 9                December 15, 2022

10              The above-entitled cause came on for hearing

11   before the Honorable Peter D. Russin, one of the Judges in

12   the UNITED STATES BANKRUPTCY COURT, in and for the

13   SOUTHERN DISTRICT OF FLORIDA, at 299 E. Broward Blvd.,

14   Fort Lauderdale, Broward County, Florida, on December 15,

15   2022, commencing at or about 2:00 p.m., and the following

16   proceedings were had.

17

18

19

20

21

22          Transcribed from a digital recording by:
                 Cheryl L. Jenkins, RPR, RMR
23

24

25
```

1

APPEARANCES VIA ZOOM:

2

3              BERGER SINGERMAN, by
                JORDI GUSO, Esquire
4              MICHAEL NILES, Esquire
                       and
5              LATHAM & WATKINS, by
                ANDREW SORKIN, Esquire
6              AMY QUARTAROLO, Esquire
                On behalf of the Debtor

7

8                AKERMAN, LLP, by
            MICHAEL I. GOLDBERG, Esquire
9                      and
        PACHULSKI STANG ZIEHL & JONES, by
10            RICHARD PACHULSKI, Esquire
              ROBERT FEINSTEIN, Esquire
11           On behalf of Monster Energy

12

13               SEQUOR LAW, by
                LEYZA BLANCO, Esquire
                       and
14              LOWENSTEIN SANDLER, by
                ERIC CHAFETZ, Esquire
15              LINDSEY SKLAR, Esquire
               On behalf of the Official
16          Committee of Unsecured Creditors

17

18               SHUTTS BOWEN, by
                HARRIS KOROGLU, Esquire
                       and
19              MOORE & VAN ALLEN, by
                LUIS LLUBERAS, Esquire
20             On behalf of Truist Bank

21

22               BURR & FORMAN, by
                CHRIS THOMPSON, Esquire
               On behalf of GM Financial

23

24

25

Page 3

1
              CONTINUED APPEARANCES VIA ZOOM
2
3           J. STEVEN WILKES, Trial Attorney
                Office of the U.S. Trustee
4                Department of Justice
5
                  FURR & COHEN, by
6                MARC BARMAT, Esquire
        On behalf of American Bottling Company
7
8         GENOVESE JOBLOVE & BATTISTA, by
                PAUL BATTISTA, Esquire
9               On behalf of Jack Owoc
10
                   ALSO PRESENT
11
                  John DiDonato
12
                 Thomas Humphrey
13
                 Michael Cregg
14
        ECRO - Electronic Court Reporting Operator
15
                  - - - - - - -
16
17
18
19
20
21
22
23
24
25

Page 4

1                    THE COURT:  The next matter is Vital
2  Pharmaceuticals, 22-17842.
3                    Okay.  So, appearances, anyone in the
4  courtroom on Vital?
5                    Okay.  All right.  So let me just go through
6  in the order that you appear on the screen.  Mr. Wilkes.
7                    MR. WILKES:  Good afternoon, your Honor.
8  J. Steven Wilkes for the United States Trustee, Region 21.
9                    THE COURT:  All right, Mr. Humphry, are you
10  a lawyer, or are you a litigant?  And what's your
11  position?
12                    MR. CREGG:  Well, we're not really sure,
13  your Honor.  We contracted with Vital Pharmaceutical to
14  buy two of the trucks.
15                    THE COURT:  All right.  So, just --
16                    MR. CREGG:  We wired them --
17                    THE COURT:  So just state your name.  Do you
18  have counsel or not?
19                    MR. CREGG:  No, sir.
20                    THE COURT:  All right.
21                    MR. CREGG:  No, sir.
22                    THE COURT:  All right.  Just state your name
23  for the record, and we'll move on from there.
24                    MR. CREGG:  Cregg.
25                    THE COURT:  I'm sorry?

1          MR. CREGG:  Michael Cregg.

2          THE COURT:  Okay.

3          MR. HUMPHREY:  And I'm Tom Humphry.  We're

4     both here.

5          THE COURT:  Okay.  Great.

6          Mr. Lluberas.

7          MR. LLUBERAS:  Good afternoon, your Honor.

8     Luis Lluberas, L-l-u-b-e-r-a-s, counsel to Truist Bank,

9     who is both the prepetition administrative agent and the

10    postpetition administrative agent, and I've got my local

11    counsel, Harris Koroglu, on as well, your Honor.

12         THE COURT:  All right.  Thank you, and I'll

13    put the emphasis on the right part of your name

14    eventually.

15         Mr. Sorkin.

16         MR. SORKIN:  Good afternoon, your Honor.

17    Andrew Sorkin, Latham & Watkins, on behalf of the debtors.

18    I am joined by my colleague, Amy Quartarolo.

19         THE COURT:  Thank you.

20         Mr. Niles.

21         MR. NILES:  Good afternoon, your Honor.

22    Michael Niles, from Berger Singerman.  With me is

23    Mr. Jordi Guso, from Berger Singerman, and we are

24    co-counsel to the debtors.

25         THE COURT:  Thank you.

1                   Mr. Thompson.

2                   MR. THOMPSON:  Good afternoon, Judge.

3    Chris Thompson, of Burr & Forman, on behalf of

4    GM Financial.

5                   THE COURT:  Thank you.

6                   Mr. Barmat.

7                   MR. BARMAT:  Good afternoon, your Honor.

8    Marc Barmat, local counsel for American Bottling Company,

9    and I feel better than I sound.

10                   THE COURT:  Yes.  Have a hot toddy while

11   you're waiting around.

12                   Ms. Blanco.

13                   MS. BLANCO:  Good afternoon, your Honor.

14   Leyza Blanco, of Sequor Law, on behalf of the official

15   committee of unsecured creditors.

16                   THE COURT:  Thank you.

17                   Mr. Feinstein.

18                   MR. FEINSTEIN:  Good afternoon, your Honor.

19   Robert Feinstein, Pachulski Stang Ziehl & Jones, appearing

20   for Monster Energy.

21                   THE COURT:  Thank you.

22                   Mr. DiDonato, you're just a witness, so you

23   don't need to make an appearance.

24                   Ms. Quartarolo, is that right?  Sorry.

25                   MS. QUARTAROLO:  Quartarolo, your Honor.

1                    THE COURT:  Quartarolo.

2                    MS. QUARTAROLO:  I'm here with

3     Mr. Andrew Sorkin on behalf of the debtors, with

4     Latham & Watkins.

5                    THE COURT:  Thank you.

6                    Mr. Guso.

7                    MR. GUSO:  Good afternoon, your Honor.

8     Jordi Guso, of Berger Singerman, and along with the Latham

9     & Watkins firm we are counsel to the debtors.

10                    THE COURT:  Thank you.

11                    Mr. Battista.

12                    MR. BATTISTA:  Good afternoon, Judge.

13     Paul Battista on behalf of Jack Owoc, O-w-o-c.

14                    THE COURT:  Thank you.

15                    Ms. Sklar.

16                    MS. SKLAR:  Good afternoon, your Honor.

17     Lindsey Sklar, from Lowenstein Sandler, on behalf of the

18     official committee of unsecured creditors, joined by my

19     colleague Eric Chafetz.

20                    THE COURT:  Thank you.

21                    Mr. Lobban.

22                    (No verbal response.)

23                    THE COURT:  You're on mute.

24                    MR. LOBBAN:  Good afternoon, your Honor.

25     (Inaudible) from BPX, because I did some work for them,

1    and they sent a Chapter 11 letter for bankruptcy.

2                    THE COURT:  All right.  Well, just for your

3    information, this is a hearing on a motion by the debtor

4    to sell some of its fleet of vehicles.  If you don't think

5    that affects you, you don't need to hang around, unless

6    you just want to watch the proceeding.  If it might affect

7    you, you're, of course, welcome to hang around.

8                    MR. LOBBAN:  All right.  Thank you, sir.

9                    THE COURT:  Okay.

10                   MR. LOBBAN:  Thank you, your Honor.

11                   THE COURT:  Thank you.

12                   Mr. Koroglu, we've heard about you.

13                   And Mr. Goldberg.

14                   MR. GOLDBERG:  Good afternoon, your Honor.

15   Mike Goldberg, co-counsel to the Pachulski Stang law firm

16   for Monster Energy.

17                   THE COURT:  All right.  Thank you.  Any

18   other appearances?

19                   (No verbal response.)

20                   THE COURT:  Okay.  Mr. Sorkin.

21                   MR. SORKIN:  Thank you, your Honor.  Again,

22   for the record, Andrew Sorkin, Latham & Watkins, on behalf

23   of the debtors.

24                   Mr. Niles, from Berger Singerman, will be

25   handling the one item on this morning's agenda, but before

1    I want to turn it over to him, I wanted to provide a brief

2    update on the status of the DIP matter ahead of Monday's

3    hearing, if that's okay with your Honor.

4                    THE COURT:  Sure.

5                    MR. SORKIN:  So, as your Honor may have seen

6    from the replies that were filed last night by the debtors

7    and the lenders, meaningful progress has been made on the

8    DIP, but there is more work to do.

9                    I'll start with that progress.  First, the

10   open seat on the debtors' board that was left by

11   Ms. Cole's departure, as we described at the last hearing,

12   has been filled.  The new appointee is Bob Dickinson, who

13   previously had a long career in the travel industry,

14   including as the CEO and president of Carnival Cruise

15   Lines.  Mr. Dickinson had no prior relationship with the

16   debtors or their shareholder, Mr. Owoc.

17                   Mr. Dickinson was formally appointed to the

18   board yesterday, and he got to work very quickly, he

19   joined the regular standing meeting of the restructuring

20   committee, and he will be continuing to join those

21   meetings, and meetings of the full board going forward.

22                   The second update, in terms of the progress,

23   is that there is general agreement on the non-governance

24   terms of the DIP facility among the debtors, the

25   committee, and the lenders, as those terms were modified

1   by various concessions the lenders have made on the rollup

2   transaction milestones, and various other points.

3                    The lender --

4                    THE COURT:  So, I'm sorry, Mr. Sorkin, I

5   missed the most important part of that sentence, there is

6   general agreement on those non-governance terms, is that

7   what you said?

8                    MR. SORKIN:  Correct.

9                    THE COURT:  Ah, okay.

10                   MR. SORKIN:  The DIP order is still being

11  negotiated, but the framework for that resolution has been

12  agreed among those three parties.

13                   THE COURT:  Okay, and when you say that,

14  what are the three parties again?

15                   MR. SORKIN:  The debtors, the committee, and

16  the DIP lenders and prepetition lenders.

17                   THE COURT:  All right.  So there may -- it

18  may not resolve the issues, other objections that other

19  parties may have, is that right?  Because I think there

20  were 12 objections, last I checked.

21                   MR. SORKIN:  Correct.

22                   THE COURT:  But who's counting?

23                   MR. SORKIN:  So, the objections of Monster,

24  and the joining parties, in their objections, the

25  U.S. Trustee, and the Arizona mechanic's lienholders, and

1    I think that covers the general landscape of objectors,

2    remains unresolved, but we remain engaged in discussions

3    with all of those parties, and hope to narrow the issues,

4    if not fully resolve those.

5              THE COURT:  Okay.

6              MR. SORKIN:  The other issues that remain

7    open with the lenders and the committee are the governance

8    related issues that were raised, and as I mentioned at our

9    last hearing.  In light of those unresolved issues, and

10   the lender's position that they will not go forward with

11   the DIP without resolution on those topics, we agreed,

12   after a request for an adjournment of the hearing by

13   Monster, that we would support such a continuance.

14             I understand Mr. Guso reached out to your

15   courtroom deputy this morning, and we understand that the

16   next date that would be available for an evidentiary

17   hearing, if necessary, would be January 10th.

18             Speaking for the debtors, we'd propose to

19   reserve that date for the final DIP hearing now.  In the

20   meantime, we would still be before your Honor on Monday,

21   for the hearing on the motion to appoint the second

22   official creditors' committee, and I'd propose that we

23   have a further status conference on the DIP at that time.

24             THE COURT:  All right.  So before we go

25   further, let me just make sure January 10th actually

1  works.

2              What I see on January 10th, Ms. Weldon, is

3  an evidentiary hearing at 10:00 a.m., unless that's --

4  also they just -- all right.  So, Mr. Sorkin, is the 10th,

5  in the afternoon, enough time, should there be an

6  evidentiary hearing necessary on that date?

7              MR. SORKIN:  Your Honor --

8              THE COURT:  I assume there will be some

9  people flying around and, you know, staying in hotel rooms

10  and things of that sort, and I just want to make sure you

11  have all the time you need, because we do have another

12  evidentiary hearing set at 10:00 a.m. on that day.

13              MR. SORKIN:  I appreciate that, your Honor.

14  I believe it would be, particularly because I think we

15  also have some time reserved on the 11th as well if it

16  were necessary.

17              THE COURT:  No, that is my motion calendar.

18              MR. SORKIN:  Okay.  I thought --

19              THE COURT:  At least that week that's my

20  motion calendar.

21              The problem is that I am out on the 12th and

22  the 13th, that's the problem, and it has -- it's a family

23  wedding, lots of people coming into town.  So, just -- you

24  know, I just didn't have the ability to have the 12th and

25  13th, where I normally have my motion calendar on the

1  12th.  So, what does that change?

2                MR. SORKIN:  Your Honor, I'm not sure it

3  changes anything.  I think we should still reserve the

4  time on the 10th.  As always our goal will remain to

5  narrow the issues as much as possible, and hopefully do so

6  in a way that, you know, even if we did not achieve a

7  comprehensive resolution with all the parties, it at least

8  makes it a much shorter hearing.  I think we would benefit

9  from the time on that day regardless of what your next

10  availability after that may be.

11                THE COURT:  All right.  So, that's fine.

12  Are there -- let's just cover that now.  Any objections to

13  rolling the DIP portion of the evidentiary hearing over to

14  the 10th at 1:30, January 10th at 1:30?

15                (No verbal response.)

16                THE COURT:  All right.  Hearing none, we

17  will reserve that time for you all, and just so you know,

18  I didn't cover this at the last hearing, but I said it

19  earlier to Mr. Pugatch during the confirmation hearing,

20  you know, we have electronics in the courtroom, and I

21  strongly recommend that, you know, since there is probably

22  some atrophy involved in some of the electronics for lack

23  of use, or consistent use, you may want to show up some

24  time this week, or send somebody, just to make sure your

25  equipment works, because if you're showing documents, you

1   know, it can get a little funky sometimes.

2               So, we'll try to have an IT person

3   available, but the truth is that IT is generally in Miami.

4   We are in Fort Lauderdale, and it doesn't always happen

5   that we can get somebody to fix it as quickly as we'd

6   like.

7               So, it would be helpful if you all

8   schedule a time prior to Monday and Tuesday to have

9   somebody here, at least, to figure it out, and if you're

10  you going to do that, just call Melva Weldon, and she will

11  try to arrange that, and have an IT person available, all

12  right?

13              MR. SORKIN:  Yes, thank you, your Honor.  I

14  appreciate the advice and that offer of assistance, and

15  will reach out to chambers in advance of the hearing.

16              So, your Honor, that's really the update on

17  the DIP.  Obviously we would have liked to go forward

18  Monday, but this is the best option available at this

19  point.  So with that, subject to any other questions you

20  may have, I would turn it over to Mr. Niles to handle the

21  vehicle sale motion.

22              THE COURT:  Well, one question I would have

23  is, since you don't need Monday for the DIP, other than to

24  conduct an additional status conference, we had reserved

25  both Monday and Tuesday.  Do you still need both Monday

1    and Tuesday to be reserved, or can we limit this to

2    Monday?

3                    And that may be a question for Monster, but

4    anyways, since they are the movant, or Monster and others

5    who moved for the second committee, any thoughts on that?

6                    MR. PACHULSKI:  Your Honor, if I could,

7    Richard Pachulski.  I hadn't appeared, because I had

8    gotten on the court appearance, but I didn't know that

9    this would necessarily be raised, but I learned from a

10   prior hearing that it could happen.  So if I could appear,

11   Richard Pachulski.

12                    THE COURT:  Well, Mr. Pachulski, you should

13   be aware that I come from the Judge Mark school of

14   judging, which is every hearing is a status conference.

15   So, there you go.

16                    MR. PACHULSKI:  Yes, your Honor, I much

17   appreciate that, and I've learned that in other cases, and

18   I should have been aware of that in the past.  So I

19   apologize for my error, but I made sure that I wouldn't

20   make that mistake again.

21                    So, I agree, your Honor, I don't think it

22   will take more than a day, and I don't think we need the

23   Tuesday, frankly.

24                    THE COURT:  All right.  Okay.  So, I guess

25   I'll try to keep Tuesday, but if something comes up, you

1  know, at least I know I have a little bit of flexibility

2  there, but you all should assume, I think, unless

3  something drastic happens, that Monday should be the day

4  to get things done, all right?

5           MR. PACHULSKI:  Understood, your Honor.

6           THE COURT:  Okay.  All right.  So, I think

7  we're on to Mr. Niles.

8           MR. NILES:  Thank you, your Honor.

9  Michael Niles, from Berger Singerman, on behalf of the

10 debtor.

11          We're here on the debtor's motion to

12 authorize and approve the sale of excess vehicles outside

13 of the ordinary course of business.  It was filed at ECF

14 Number 405.

15          In support of the motion I'd like to submit

16 the declaration of John C. DiDonato, in support of the

17 evidence, which is filed at 406.  Mr. DiDonato is present

18 via Zoom in the event anyone would like to cross-examine

19 him.

20          At this time, your Honor, no objections have

21 been filed.  The debtors are in a process of rationalizing

22 their fleet distribution trucks, which generally consist

23 of medium-sized box trucks and Sprinter vans.  The debtor

24 no longer needs all of these vehicles in its fleet due to

25 changes in its distribution system.

1              Prepetition the debtor sold 21 vehicles to

2    their distributors.  These vehicles were delivered to the

3    buyers, and the buyers paid the purchase price.  However,

4    due to the bankruptcy filing, the debtor was unable to

5    satisfy the prepetition liens at the time of the sale and

6    deliver clear title.

7              Additionally, postpetition, the debtor sold

8    eight additional vehicles to their distributors, and

9    similarly the vehicles were delivered to the buyers, and

10   the buyers paid the purchase price.  However, due to the

11   bankruptcy filing, the debtor was unable to satisfy the

12   prepetition liens and deliver clear title.

13             So by this order, the debtors are seeking an

14   entry of an order ratifying those sales of the prepetition

15   purchased vehicles and the postpetition vehicles.  The

16   debtors have preserved the funds necessary to pay off the

17   prepetition liens and deliver clear title.

18             Additionally, as the debtors continue to

19   rationalize its fleet, the debtors are seeking an order

20   pursuant to 363(b)(1), authorizing the debtor, on a

21   go-forward basis, to continue selling vehicles in its

22   fleet that are no longer necessary to the debtors'

23   operations so long as the sales price exceeds the payoff

24   amounts, and the debtors provide notice to the committee

25   and Truist, as administrative agent to the DIP facility.

1          The debtors have already identified

2  purchasers of 23 of their main vehicles, which is

3  identified on Exhibit C.

4          Prior to the filing of this motion, counsel

5  -- we conferred with counsel to the committee, and with

6  Truist, and they both consent to this relief.

7          So, therefore, your Honor, we respectfully

8  request the Court enter an order, which is attached to the

9  motion as Exhibit D, ratifying the prepetition and

10  postpetition vehicle sales, and permitting the debtor to

11  continue rationalizing their fleet pursuant to the terms

12  of the motion.

13          THE COURT:  And just for my own edification,

14  when you say that as long as the price is greater than the

15  liens on the vehicles, you also mean that they'd be sold

16  for fair market value, I assume.

17          MR. NILES:  Of course, your Honor, yes.

18          THE COURT:  Okay, and is there an approval

19  process that I missed?  You'd have to go through Truist,

20  or the committee to get approval, or this is just the

21  debtor, as long as you comply with the conditions, you

22  don't need anyone -- any other approval, including the

23  approval --

24          MR. NILES:  So, in the proposed order,

25  your Honor, we are agreeing to provide Truist and the

1    committee with 10-days notice of the proposed sale.

2                    THE COURT:  Okay, and that notice would

3    include the vehicle that's proposed to be sold, the

4    purchaser -- the name of the purchaser, the purchase

5    price.  Would you also estimate the amount of the lien,

6    and would you also estimate the value, fair market value?

7                    MR. NILES:  Yes, your Honor.

8                    THE COURT:  All right.  Anyone have any

9    questions or objections?

10                   (No verbal response.)

11                   THE COURT:  Somebody does.

12                   MR. CREGG:  Your Honor, this is

13   Michael Cregg.  I didn't hear exactly our situation

14   referenced in the previous person's assessment.

15                   We contracted with Vital to buy two

16   vehicles, wired Vital the money, and have yet to receive

17   the vehicles.  I have no idea whether it's fair market

18   value, whether it exceeds the lien amount, I have no idea.

19   We negotiated in good faith, so where does that leave us?

20                   THE COURT:  All right.  So, Mr. Niles, I

21   think what I'm hearing is that you're seeking approval to

22   ratify a prior transaction in order to pay the lien

23   amount.

24                   I also did not hear, and maybe I just missed

25   it, that you're also seeking to deliver vehicles that have

1    not yet been delivered pursuant to contracts prepetition

2    where the money has been paid, is that what you're

3    doing --

4                    MR. NILES:  Thank you.

5                    THE COURT:  -- as well?

6                    MR. NILES:  So it's my understanding, and I

7    will need to confirm with the debtor, that the vehicles

8    that have already been sold prepetition, the 21 sold

9    prepetition, and the eight that were sold postpetition,

10   were delivered to the purchasers, and the purchase prices

11   were delivered to the debtors, and just clear title has

12   not been delivered yet.  I would need to look into this

13   issue of the exact trucks so that I can get a better

14   understanding of the issue.

15                   THE COURT:  All right.  So can you all work

16   together and get that information, and if there is a

17   dispute -- Mr. Niles, I would ask since -- what company

18   are you with, sir?

19                   MR. CREGG:  Yes, sir, I'm with Eagle

20   Distributing Company and Knoxville Beverage Company.

21   Michael --

22                   THE COURT:  Eagle Distributing and Knoxville

23   Beverage, and what -- do you have a description of the

24   vehicles, like a VIN number or something that you can

25   share or --

1              MR. CREGG:  I do, I've got contracts for

2     both vehicles.  Since we bought them, two different

3     companies, I can provide a copy of the contract signed by

4     Mr. Owoc, to the attorney or to the Court, whichever is

5     necessary.

6              THE COURT:  All right.  So, I'm going to

7     stay out of this, other than to help you guys get together

8     and figure this out a little bit.

9              If you could --

10             MR. CREGG:  Thank you.

11             THE COURT:  -- email those contracts, and

12    your contact information to Mr. Niles at Berger Singerman,

13    he's very easy to find, his email address is either on

14    LinkedIn, or Berger Singerman's website, I'm sure.

15             And then, Mr. Niles, what I'll ask you to

16    do, since I don't necessarily think it's -- you know, it

17    would be unfortunate for the distributor to have to hire

18    counsel and deal with this, if there is an issue, I would

19    want the debtor, especially since this is a prepetition

20    transaction that you're seeking approval for, or would

21    need to seek approval for since it's not been completed

22    and you haven't delivered the vehicles, to bring it to the

23    attention of the Court through some supplemental motion if

24    there is a dispute.

25             If there is no dispute, then it seems to me,

1  let's save everybody some time and effort, I'm okay with

2  you submitting an amended order, since we all now know

3  what the issue is, approving the transaction if you get

4  all the approvals you need from Truist, and the

5  committee, and whoever else, unless everybody thinks we

6  need to have another hearing on this, which I would like

7  to avoid.

8          MR. NILES:  Judge, Michael Niles again for

9  the debtor.

10          I don't know that another hearing would be

11  necessary, and I think that the relief requested in the

12  order, which would be to sell all the remaining vehicles

13  as well, would encompass the vehicles --

14          THE COURT:  It may, but it may not.  It may

15  fall into an unanticipated gap where there was a

16  prepetition contract, and you thought you delivered all

17  the vehicles, but apparently somebody thinks you didn't.

18  So just make sure that the order --

19          MR. DIDONATO:  Your Honor, if I could

20  interrupt you?  Sorry, John DiDonato.

21          THE COURT:  Sure.

22          MR. DIDONATO:  I've learned from one of my

23  colleagues, your Honor, these are postpetition sales that

24  should be covered by the order.

25          THE COURT:  Ah, okay, great, great.

1          MR. DIDONATO:  So, I think we're --

2          THE COURT:  I thought I heard prepetition,

3    but great.

4          MR. DIDONATO:  Yeah, I think you did, but

5    we have -- my colleague has confirmed they're

6    postpetition, and we should be covered by the order,

7    your Honor.

8          THE COURT:  Hallelujah.  Okay.  All right.

9    So, Mr. Niles -- I'm sorry, anybody else wish to be heard

10   on the motion?

11         (No verbal response.)

12         THE COURT:  All right.  So, Mr. Niles, I

13   will look forward to receiving an order from you approving

14   the motion, or granting the motion.

15         Is there anything else we need to do here

16   today?

17         MR. NILES:  Thank you, your Honor.  I have

18   nothing else.

19         THE COURT:  Okay.  Anyone else?

20         (No verbal response.)

21         THE COURT:  Is everybody feeling good?

22   Getting ready for Monday?  Great.  See you all then.

23         All right.  Thank you.

24         MR. NILES:  Thank you, Judge.

25         THE COURT:  Thank you.

Page 24

1              MR. SORKIN:  Thank you, your Honor.

2              MR. DIDONATO:  Thank you, your Honor.

3              MS. SKLAR:  Thanks, your Honor.

4

5

6

7              (Thereupon, the hearing was concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 25

1

2

3                          CERTIFICATION

4

5    STATE OF FLORIDA        :

6    COUNTY OF MIAMI-DADE   :

7

8              I, Cheryl L. Jenkins, RPR, RMR, Shorthand

9    Reporter and Notary Public in and for the State of Florida

10   at Large, do hereby certify that the foregoing proceedings

11   were transcribed by me from a digital recording held on

12   the date and from the place as stated in the caption

13   hereto on Page 1 to the best of my ability.

14              WITNESS my hand this 19th day of

15   December, 2022.

16

17

18              _____

19              CHERYL L. JENKINS, RPR, RMR

20              Court Reporter and Notary Public
             in and for the State of Florida at Large
21                  Commission #HH 170910
                    December 27, 2025

22

23

24

25