UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 Cases |
| | ) | |
| VITAL PHARMACEUTICALS, INC., et al.,[1] | ) | Case No. 22-17842-PDR |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' AND CREDITORS MONSTER ENERGY COMPANY AND ORANGE BANG, INC.'S JOINT AGREED MOTION TO APPROVE AGREEMENT REGARDING ROYALTY THAT ACCRUES POSTPETITION**

**(Hearing Requested for January 10, 2023 at 1:30 p.m.)**

The above-captioned debtors and debtors-in-possession (the "**Debtors**") and creditors Monster Energy Company ("**Monster**") and Orange Bang, Inc. ("**Orange Bang**", and, together with the Debtors and Monster, "**Movants**"), by and through undersigned counsel, hereby file this joint agreed motion (the "**Motion**"), pursuant to section 105 of title 11 of the United States Code, as complemented by Bankruptcy Rule 9019, and Local Bankruptcy Rule 9013-1, for an order in the form attached hereto as **Exhibit A**, approving an interim agreement among the Debtors, Monster and Orange Bang to fund an escrow account for the amount of the Royalty (defined below) that accrues postpetition. In support of the Motion, Movants respectfully state as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[1]  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, EEC (0010); (iv) JHO Real Estate Investment, EEC (9394); (v) Quash Seltzer, EEC (6501); (vi) Rainbow Unicom Bev EEC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

2.      Venue of this case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.The statutory predicates for the relief requested in this Motion are section 105 of the Bankruptcy Code, as complemented by Bankruptcy Rule 9019, and Local Bankruptcy Rule 9013-1.

### BACKGROUND

3.      On October 10, 2022 (the "**Petition Date**"), Vital Pharmaceuticals, Inc. ("**VPX**") and the other Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").

4.      On September 9, 2009, Orange Bang brought an action against VPX in the Central District of California relating to VPX's use of the "BANG" trademark in connection with one of its then-existing products.   Orange Bang's claims included trademark infringement, false designation of origin, misrepresentation and unfair competition, and cancellation of VPX's trademark registrations.

5.      On August 11, 2010, Orange Bang and VPX entered into a Settlement Agreement (the "**2010 Settlement Agreement**") to resolve the litigation that, among other things, addressed VPX's use of the BANG mark.

6.      On September 23, 2019, Monster and Orange Bang entered into an assignment agreement (the "**Assignment Agreement**") relating to the 2010 Settlement Agreement.

7.      On June 16, 2020, Orange Bang and Monster (collectively, the "**Claimants**") initiated an arbitration styled as *Orange Bang, Inc. and Monster Energy Co. v. Vital Pharms., Inc.*, AAA Case No. 01-20-0005-6081 (the "**Arbitration**") against VPX.   Within the Arbitration, Claimants asserted claims against VPX and Debtor, JHO Intellectual Property Holdings, LLC ("**JHO**") (collectively, "**Respondents**").

8.      On January 6, 2022, the arbitrator issued an Interim Arbitration Award – Phase 1 (the "**Interim Award**") in favor of Claimants on all claims and counterclaims.  The Interim Award granted certain equitable relief to Claimants in respect of Respondents' continued use of the "BANG" trademark.  Orange Bang and Monster had requested, as an alternative to the issuance of a permanent injunction, the award of a continuing royalty for continued use of the BANG mark. The arbitrator then afforded Respondents the opportunity to elect between (a) paying Claimants a royalty at the rate of 5% of Net Sales of Bang-branded products (as defined in the Final Award) on a continuing basis for so long as Respondents make any use of the "BANG" trademark (the "**Royalty**"), or (b) the imposition of a permanent injunction limiting Respondents' right to use the "BANG" trademark going forward.

9.      On January 31, 2022, Respondents elected to pay the Royalty.

10.     Phase 2 of the Arbitration took place between January and March 2022.  On April 4, 2022, the arbitrator issued the Final Arbitration Award (the "**Final Award**").  The arbitrator ordered Debtors to pay Claimants (a) $175 million in monetary relief, (b) pursuant to Debtors' election, the Royalty to Claimants on a quarterly basis, (c) $7,279,785 in attorneys' fees, and (d) $2,018,658.90 in costs, plus interest.

11.     Debtors have not made any payments required by the Final Award.

12.     On September 29, 2022, the Hon. Dale S. Fischer, U.S. District Judge for the Central District of California, in the case styled as *Vital Pharmaceuticals, Inc., et al. v. Orange Bang, Inc., et al.* Case No. 5:20-cv-01464 (the "**Action**"), entered a final judgment in favor of Claimants and against Respondents as set forth in the Final Award (the "**Judgment**").

13.     Respondents have appealed from the Judgment to the United States Court of Appeals for the Ninth Circuit (the "**Appeal**").  *See Vital Pharms., Inc. and JHO Intellectual Prop.*

*Holdings, LLC v. Orange Bang, Inc. and Monster Energy Co.*, C.D. Cal., Case No. 5:20-cv-1464, Notice of Appeal, Docket No. 131.

14.     Claimants allege, and Respondents dispute, that Respondents must pay the Royalty on a current basis notwithstanding the pendency of these chapter 11 cases and the Appeal.  In an effort to avoid the costs and risks associated with litigating such issues, the Movants have agreed, subject to Court approval, to an interim arrangement with respect to the Royalty on the terms and conditions set forth in the term sheet among the Debtors, Monster and Orange Bang that is attached hereto as **Exhibit B** (the "**Term Sheet**") and summarized below.

## THE PROPOSED INTERIM ARRANGEMENT[2]

15.     The key terms of the Term Sheet are as follows:

- Debtors agree to create and fund on a continuing basis an escrow account (the "**Postpetition Royalty Escrow Account**") for the amount of the Royalty based on Net Sales that take place on and after October 10, 2022 (the "**Postpetition Royalty**").  The term "Net Sales" shall have the meaning ascribed to it in the Final Award at pages 152 through 156.

- The funds in the Postpetition Royalty Escrow Account (the "**Funds**") are to be held in trust for the sole benefit of the Claimants.

- Once deposited in the Postpetition Royalty Escrow Account, the Funds shall not be property of the Debtors' bankruptcy estates; provided that the Debtors shall retain a reversionary interest in any Funds to the extent any such Funds are not required to satisfy any accrued Postpetition Royalty (the "**Reversionary Interest**").  Neither the DIP Lenders nor other creditors shall have any rights, claims or interests with respect to the Funds or the Postpetition Royalty Escrow Account, except with respect to the Reversionary Interest (if any).

- The Funds shall be used solely to pay the Claimants on account of the Postpetition Royalty or revert to the bankruptcy estate (as applicable), and once the Postpetition Royalty is satisfied in full, any remaining Funds shall be remitted to the Debtors in respect of the Reversionary Interest, in each case upon further order of the Bankruptcy Court.

---

[2] The following is a summary of the terms of the Term Sheet. In the event of any conflict between this summary and the Term Sheet, the terms of the Term Sheet shall control.

11840785-2

- The Debtors presently estimate that the Postpetition Royalty accrues at a rate of approximately $800,000 every two weeks. The Parties[3] shall not be bound by that amount going forward and reserve all rights to audit, contest and revise the estimate.

- Within three business days of entry of a  final order on the DIP Motion that budgets for the funding of the Postpetition Royalty Escrow Account (the "**Initial Funding Date**"), the Debtors shall fund the Postpetition Royalty Escrow Account with the amount of the Postpetition Royalty that has accrued from October 10, 2022 to Initial Funding Date, based on (i) for the period from and including October 10, 2022 through November 30, 2022, actual postpetition Net Sales for October and November 2022, and (ii) for the period from December 1, 2022 through the Initial Funding Date, the initial estimate set forth in the immediately preceding paragraph. Thereafter, the Debtors shall fund the Postpetition Royalty Escrow Account going forward with $800,000 on the first and fifteenth day of every month (the "**Recurring Deposit**"). Debtors shall provide the Claimants with evidence of such funding within one business day after the deadline for such funding. Without limiting the generality of paragraph 16 of the Term Sheet or modifying the Parties' rights thereunder, if the Initial Funding Date has not occurred by January 13, 2023 (or such later date on which the Parties may agree in writing) (the "**Initial Funding Outside Date**"), either party may terminate this Agreement upon written notice (which may be by electronic mail) to the other party.

- On or before February 14, 2023, the Debtors agree to deliver an accounting (the "**First Accounting**") of the Postpetition Royalty determination for Net Sales made in the prior quarter to the Claimants and Truist Bank, as administrative agent under that certain Superpriority Secured Debtor-in-Possession Credit Agreement, as may be amended, entered into with the Debtors (in such capacity, the "**DIP Agent**"). Within ten days of the delivery of the First Accounting to the Claimants, the Parties shall meet and confer in good faith in an attempt to "true up" the amount of Funds deposited into the Postpetition Royalty Escrow Account with the actual amount of the Postpetition Royalty for the prior quarter and to revise the amount of the Recurring Deposit going forward to reflect the actual Postpetition Royalty for the financial quarter ending December 31, 2022.

- Beginning in February 2023, on account of the Postpetition Royalty payable for January 2023 and thereafter, no later than the 20th day of each month, the Debtors agree to deliver to the Claimants and the DIP Agent an accounting (the "**Subsequent Accounting**") of the Postpetition Royalty determination for Net Sales made in the prior month. Within ten days of the delivery of the Subsequent Accounting to the Claimants, the Parties shall meet and confer in good faith in an attempt to "true up" the amount of Funds deposited into the Postpetition

---

[3] As defined in the Term Sheet, "Parties" means, collectively, the relevant Debtors (Vital Pharmaceuticals, Inc. and JHO Intellectual Property Holdings, LLC) and Claimants.

Royalty Escrow Account with the actual amount of the Postpetition Royalty for the prior month.

- If the Parties are unable to resolve all issues during the meet and confer procedures contemplated herein, including any requests to adjust the amount of the Recurring Deposit, then any of the Parties shall have the right to seek further order of the Bankruptcy Court. The Parties agree that without written agreement of the Parties or further order of the Bankruptcy Court, the Recurring Deposit shall not be altered.

- The Debtors' agreement to provide the Accounting shall in no way alter the reporting, audit and inspection rights provided for in the Final Award, which remain in full force and effect.  The Debtors acknowledge and agree that the Claimants' right to demand the Accounting and exercise their audit and inspection rights pursuant to the Final Award and the Agreement shall not be prohibited or enjoined by the automatic stay under section 362 of the Bankruptcy Code.

- The Agreement is made without prejudice to any and all rights, claims and interests the Claimants have (and defenses of the Debtors) with respect to the Royalty based on sales that took place before October 10, 2022, including, but not limited to, claims for accrued interest as provided for in the Final Award (the "**Prepetition Royalty**").

- By the Initial Funding Date, the Debtors agree to disclose to the Claimants and the DIP Agent the amount of the Prepetition Royalty and provide an accounting of the calculation thereof, which shall be subject to the reporting, audit and inspection rights set forth in the Final Award.

- The Agreement may be amended only by written agreement among the Parties or an order of the Bankruptcy Court; provided that any amendment that affects the Reversionary Interest or the DIP Agent's information rights shall also require the written agreement of the DIP Agent.

- The Agreement is an interim agreement between the Parties given Debtors' filing for protection under Chapter 11 of the Bankruptcy Code. This Agreement does not waive, alter, amend, or modify, in any respect, the Judgment or Final Award or any of the Parties' rights and/or obligations under the Judgment and Final Award, including, but not limited to, any right of Claimants to enforce and to provide written notice of Debtors' failure to pay the Royalty or take any action or steps as a result of such failure (or any rights of the Debtors arising from the provision of such written notice). The failure of any of the Parties to exercise any right, power, or remedy provided under the Judgment, the Final Award, or otherwise available in respect of the Judgment or Final Award, or to insist upon compliance by any other party with its obligations under the Judgment or Final Award, shall not constitute a waiver by such party of its right

to exercise any such or other right, power, or remedy or to demand or enforce such compliance.

- The Parties reserve all rights to terminate this Agreement going forward upon written notice, which may be by email, and such written notice will effect termination immediately upon transmission. In the event that the Agreement is terminated, all Funds in the Postpetition Royalty Escrow Account are to remain in the Postpetition Royalty Escrow Account until further order of the Bankruptcy Court.  Moreover, if the Debtors terminate the Agreement, they nonetheless shall be required to deposit into the Postpetition Royalty Escrow Account all amounts that were due and unpaid under this Agreement prior to the effective date of such termination.

- The Parties reserve all rights to file a motion with the Bankruptcy Court to alter the Agreement, including but not limited to: (i) modifying the Recurring Deposit going forward, and (ii) ordering the payment of the Prepetition Royalty and/or Postpetition Royalty to the Claimants or the Debtors.

- The Parties make the Agreement with a full reservation of rights with respect to the Action, the Judgment, the Final Award, the Prepetition Royalty, and Postpetition Royalty, including, but not limited to, (i) the Debtors' right to seek and/or obtain, as an incident of appeal, the Reversionary Interest or any other rights set forth above or under applicable law, and (ii) any right of Claimants to compel payment of the Royalty prior to the disposition of any appeal and/or to seek an injunction against the Debtors in consequence of the Debtors' failure to comply fully or timely with the Judgment or Final Award and/or seek any other relief.

## **RELIEF REQUESTED**

16.    The Movants respectfully request that the Court approve the Term Sheet. This agreement among the Movants is a reasonable compromise, on an interim basis only, with respect to the treatment of the Royalty that continues to accrue postpetition. The Movants agreed to the Term Sheet in good faith and after arm's length negotiations. Approval is in accord with the strong public policy which favors compromise in all types of litigation. *In re Grau*, 267 B.R. 896, 899 (Bankr. S.D. Fla. 2001).

17.    Bankruptcy Rule 9019(a) provides: "On motion . . . and after a hearing on notice to creditors, the debtor . . . and to such other entities as the court may designate, the court may approve a compromise or settlement."

11840785-2

18.     As this Court has previously found, such approval of a compromise or settlement "is within the sound discretion of the Court, and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion." *In re Arrow Air, Inc.*, 85 B.R. 886, 891 (Bankr. S.D. Fla. 1988) (Cristol, J.).

19.     The test is whether the proposed compromise "falls below the 'lowest point in the range of reasonableness.'" *Arrow Air*, 85 Bankr. at 891 (quoting *In re Teltronics Servs., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985)); *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983).

20.     According to the United States Eleventh Circuit Court of Appeals, when a bankruptcy court decides whether to approve or disapprove a proposed compromise, it must consider:

> (a) the probability of success in the litigation;
>
> (b) the difficulties, if any, to be encountered in the matter of collection;
>
> (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
>
> (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II. Ltd.)*, 898 F.2d 1544 (11th Cir. 1990); *see also In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980), *quoted in Arrow Air*, 85 B.R. at 891.

21.     In the instant case, each of the four factors set forth in *In re Justice Oaks II. Ltd.* weighs heavily in favor of approval of the Term Sheet.

A.  ***Probability of Success in Litigation***

22.     The Debtors, Monster and Orange Bang believe that approval of the Term Sheet is in the best interests of the estates.  Given the inherent risks of litigation, as compared to the

certainty of an agreement, from the perspective of the Debtors, the Term Sheet falls well within the reasonable range of anticipated litigation outcomes.

### B. *Difficulties Associated With Collection*

23.     This prong of *Justice Oaks* weighs in favor of the Term Sheet, as the Term Sheet ensures that sufficient funding will be set aside to honor the postpetition Royalty in the event that it is required to be paid to Claimants, while eliminating the need for the Debtors to pursue a recovery of Royalty amounts previously paid to Claimants in the event that the Appeal is successful.

### C. *Complexity, Expense, Inconvenience, and Delay*

24.     As with all litigation, there is expense, inconvenience, and delay that would undoubtedly arise.  The Debtors believe that litigating their claims and defenses provides no assurance of an outcome more favorable to the estates than the escrow arrangement contemplated by the Term Sheet.

### D. *Paramount Interest of Creditors*

25.     Finally, Debtors assert that the "paramount interest of creditors" prong of the *Justice Oaks* test is satisfied because the Term Sheet will help avoid the distraction and costs of burdensome litigation with the Claimants while Debtors administer these Chapter 11 Cases.

26.     Accordingly, for the reasons set forth herein, Movants assert that the Term Sheet meets the standards set forth in *Justice Oaks*, and therefore, recommend approval of the Term Sheet because it is fair and reasonable, falls within the reasonable range of possible litigation outcomes, and is in the Debtors' best interests.

### <u>OTHER RELATED RELIEF</u>

27.     Debtors will serve this Motion on all appropriate parties and will file a separate

certificate of service identifying the specific parties served with this Motion and the Notice of Hearing when issued.  Movants request that the Court make a determination that all necessary parties have received the requisite notice.

## CONCLUSION

28.     For the foregoing reasons, Movants respectfully request that the Court enter an order (a) granting the Motion approving the Term Sheet in all respects; (b) finding that entry into the Term Sheet constitutes a sound exercise and proper use of Debtors' business judgment; and (c) granting such further relief as justice requires.

## CERTIFICATIONS OF COUNSEL

29.     Counsel below hereby certifies that the undersigned attorneys are appearing *pro hac vice* in this matter pursuant to court orders dated as follows:

Teddy M. Kapur, October 14, 2022 [ECF 103]

Robert J. Feinstein, October 17, 2022 [ECF 133]

Steven W. Golden, October 17, 2022 [ECF 134]

Richard M. Pachulski, October 18, 2022 [ECF 158]

Ira D. Kharasch, October 18, 2022 [ECF 159]

Thomas Patterson, November 8, 2022 [ECF 269]

Nir Maoz, November 8, 2022 [ECF 270]

*Cf.* Local Rule 9011-4(B)(2).

- 10 -

Dated:    January 4, 2023

_/s/ Jordi Guso_____

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Email: jguso@bergersingerman.com
mniles@bergersingerman.com

-and-

George A. Davis (pro hac vice)
Tianjiao ("TJ") Li (pro hac vice)
Brian S. Rosen (pro hac vice)
Jonathan J. Weichselbaum (pro hac vice)
**LATHAM & WATKINS LLP**
1271 Avenue ofthe Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: george.davis@lw.com
tj.li@lw.com
brian.rosen@lw.com
jon.weichselbaum@lw.com

- and -

Andrew D. Sorkin (pro hac vice)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone: (202) 637-2200
Email: andrew.sorkin@lw.com

- and -

Whit Morley (pro hac vice)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IE 60611
Telephone: (312) 876-7700
Email: whit.morley@lw.com

*Co-Counsel to the Debtors.*

Dated: January 4, 2023                    **AKERMAN LLP**


 /s/ *Michael I. Goldberg* 
Michael I. Goldberg
Florida Bar No. 886602
Eyal Berger
Florida Bar No. 11069
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301
T: (954) 463-2700
F: (954) 463-2224
michael.goldberg@akerman.com
eyal.berger@akerman.com

-and-

**PACHULSKI STANG ZIEHL & JONES LLP**
Richard M. Pachulski (*pro hac vice*)
Ira D. Kharasch (*pro hac vice*)
Robert J. Feinstein (*pro hac vice*)
Teddy M. Kapur (*pro hac vice*)
Steven W. Golden (*pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
T: (310) 277-6910
F: (310) 201-0760
rpachulski@pszjlaw.com
ikharasch@pszjlaw.com
rfeinstein@pszjlaw.com
tkapur@pszjlaw.com
sgolden@pszjlaw.com

*Counsel to Monster Energy Company*

Dated: January 4, 2023                    **FENDER, BOLLING AND PAIVA, P.A.**

/s/ *G. Steven Fender*
G. Steven Fender
Florida Bar No. 060992
P.O. Box 1545
Ft. Lauderdale, FL 33302
Telephone: (407) 810-2458
Email: steven.fender@fender-law.com

-and-

**KTBS LAW LLP**
Thomas E. Patterson (*pro hac vice*)
Nir Maoz (*pro hac vice*)
California Bar No. 130723
1801 Century Park East, 26th Floor
Los Angeles, CA 90067
Phone: 310-407-4000
Fax: 310-407-9090
E-mail: tpatterson@ktbslaw.com

*Counsel to Orange Bang, Inc.*

- 13 -

## **EXHIBIT A**

**Proposed Form of Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

|  |  |
|---|---|
| In re: | Chapter 11 |
| VITAL PHARMACEUTICALS, INC., et al.,[1] | Case No. 22-17842 (PDR) |
| Debtors. | (Jointly Administered) |

**ORDER GRANTING DEBTORS' AND CREDITORS MONSTER ENERGY COMPANY
AND ORANGE BANG, INC.'S JOINT AGREED MOTION
TO APPROVE AGREEMENT REGARDING ROYALTY THAT ACCRUES
POSTPETITION [ECF NO. --]**

THIS MATTER came before the Court on the _____ day of January, 2023, at _____

a.m./p.m., in Fort Lauderdale, Florida, upon *Debtors' and Creditors Monster Energy Company*

*and Orange Bang, Inc.'s Joint Agreed Motion to Approve Agreement Regarding Royalty That*

*Accrues Postpetition* [ECF No. --] (the "**Motion**").[2]  The Court having reviewed the file and the

Motion, and having considered the arguments of counsel at the hearing on the Motion, and being

otherwise fully advised in the premises, and for good cause, it is hereby:

**ORDERED** and **ADJUDGED**:

1.    The Motion is **GRANTED**.

2.    The Term Sheet, as annexed to the Motion as Exhibit B, is approved in all respects.

---

[1]    The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal
tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada. Inc. (5454); (iii)
JHO Intellectual Property Holdings, EEC (0010); (iv) JHO Real Estate Investment, EEC (9394); (v) Quash
Seltzer, EEC (6501); (vi) Rainbow Unicorn Bev EEC (2254); and (vii) Vital Pharmaceuticals International Sales,
Inc. (8019).

[2]    All capitalized terms, unless otherwise herein defined, shall take on the meaning ascribed to them in the Motion
or the Term Sheet (as applicable).

3.      The funds in the Postpetition Royalty Escrow Account (the "Funds") are hereby deemed to be held in trust for the sole benefit of the Claimants.  Once deposited in the Postpetition Royalty Escrow Account, the Funds shall not be property of the Debtors' bankruptcy estates; *provided* that the Debtors shall retain a reversionary interest in any Funds to the extent any such Funds are not required to satisfy any accrued Postpetition Royalty (the "Reversionary Interest"). Neither the DIP Lenders nor other creditors shall have any rights, claims or interests with respect to the Funds or the Postpetition Royalty Escrow Account, except with respect to the Reversionary Interest (if any).

# # #

Submitted by:
Jordi Guso, Esq.
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com
Email:  mniles@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

11840785-2

**<u>EXHIBIT B</u>**

**Term Sheet**

<u>Term Sheet among Monster, Orange Bang, VPX and JHO IP Holdings regarding Royalty</u>

1. Debtors Vital Pharmaceuticals, Inc. and JHO Intellectual Property Holdings, LLC (collectively, the "<u>Debtors</u>") have not made any payments of the 5% royalty (the "<u>Royalty</u>") that is defined in and required by the judgment entered on September 29, 2022 by the Hon. Dale S. Fischer, U.S. District Judge for the Central District of California (the "<u>Judgment</u>"), as set forth in the final arbitration award (the "<u>Final Award</u>") issued on April 4, 2022 against the Debtors and in favor of Orange Bang, Inc. ("<u>Orange Bang</u>") and Monster Energy Company ("Monster," and together with Orange Bang, the "<u>Claimants</u>"), in the case styled as *Vital Pharmaceuticals, Inc., et al. v. Orange Bang, Inc., et al.* Case No. 5:20-cv-01464 (the "<u>Action</u>"). Together the Claimants and the Debtors are referred to herein as the "Parties."

2. Debtors agree to create and fund on a continuing basis an escrow account (the "<u>Postpetition Royalty Escrow Account</u>") for the amount of the Royalty based on Net Sales that take place on and after October 10, 2022 (the "<u>Postpetition Royalty</u>"). The term "Net Sales" shall have the meaning ascribed to it in the Final Award at pages 152 through 156.

3. The funds in the Postpetition Royalty Escrow Account (the "<u>Funds</u>") are to be held in trust for the sole benefit of the Claimants, and the order approving this Agreement shall so provide.

4. Once deposited in the Postpetition Royalty Escrow Account, the Funds shall not be property of the Debtors' bankruptcy estates; provided that the Debtors shall retain a reversionary interest in any Funds to the extent any such Funds are not required to satisfy any accrued Postpetition Royalty (the "<u>Reversionary Interest</u>"). Neither the DIP Lenders nor other creditors shall have any rights, claims or interests with respect to the Funds or the Postpetition Royalty Escrow Account, except with respect to the Reversionary Interest (if any).

5. The Funds shall be used solely to pay the Claimants on account of the Postpetition Royalty or revert to the bankruptcy estate (as applicable), and once the Postpetition Royalty is satisfied in full, any remaining Funds shall be remitted to the Debtors in respect of the Reversionary Interest, in each case upon further order of the Bankruptcy Court.

6. The Debtors presently estimate that the Postpetition Royalty accrues at a rate of approximately $800,000 every two weeks. The Parties shall not be bound by that amount going forward and reserve all rights to audit, contest and revise the estimate.

7. Within three business days of entry of a final order on the DIP Motion that budgets for the funding of the Postpetition Royalty Escrow Account (the "<u>Initial Funding Date</u>"), the Debtors shall fund the Postpetition Royalty Escrow Account with the amount of the Postpetition Royalty that has accrued from October 10, 2022 to Initial Funding Date, based on (i) for the period from and including October 10, 2022 through November 30,

11841135-1

2022, actual postpetition Net Sales for October and November 2022, and (ii) for the period from December 1, 2022 through the Initial Funding Date, the initial estimate set forth in paragraph 6 above.  Thereafter, the Debtors shall fund the Postpetition Royalty Escrow Account going forward with $800,000 on the first and fifteenth day of every month (the "Recurring Deposit"). Debtors shall provide the Claimants with evidence of such funding within one business day after the deadline for such funding.  Without limiting the generality of paragraph 16 or modifying the Parties' rights thereunder, if the Initial Funding Date has not occurred by January 13, 2023 (or such later date on which the Parties may agree in writing) (the "Initial Funding Outside Date"), either party may terminate this Agreement upon written notice (which may be by electronic mail) to the other party.

8.  On or before February 14, 2023, the Debtors agree to deliver an accounting (the "First Accounting") of the Postpetition Royalty determination for Net Sales made in the prior quarter to the Claimants and Truist Bank, as administrative agent under that certain Superpriority Secured Debtor-in-Possession Credit Agreement, as may be amended, entered into with the Debtors (in such capacity, the "DIP Agent"). Within ten days of the delivery of the First Accounting to the Claimants, the Parties shall meet and confer in good faith in an attempt to "true up" the amount of Funds deposited into the Postpetition Royalty Escrow Account with the actual amount of the Postpetition Royalty for the prior quarter and to revise the amount of the Recurring Deposit going forward to reflect the actual Postpetition Royalty for the financial quarter ending December 31, 2022.

9.  Beginning in February 2023, on account of the Postpetition Royalty payable for January 2023 and thereafter, no later than the 20th day of each month, the Debtors agree to deliver to the Claimants and the DIP Agent an accounting (the "Subsequent Accounting") of the Postpetition Royalty determination for Net Sales made in the prior month. Within ten days of the delivery of the Subsequent Accounting to the Claimants, the Parties shall meet and confer in good faith in an attempt to "true up" the amount of Funds deposited into the Postpetition Royalty Escrow Account with the actual amount of the Postpetition Royalty for the prior month.

10. If the Parties are unable to resolve all issues during the meet and confer procedures contemplated herein, including any requests to adjust the amount of the Recurring Deposit, then any of the Parties shall have the right to seek further order of the Bankruptcy Court. The Parties agree that without written agreement of the Parties or further order of the Bankruptcy Court, the Recurring Deposit shall not be altered.

11. The Debtors' agreement to provide the Accounting shall in no way alter the reporting, audit and inspection rights provided for in the Final Award, which remain in full force and effect.  The Debtors acknowledge and agree that the Claimants' right to demand the Accounting and exercise their audit and inspection rights pursuant to the Final Award and this agreement shall not be prohibited or enjoined by the automatic stay under section 362 of the Bankruptcy Code.

12. This Agreement is made without prejudice to any and all rights, claims and interests the Claimants have (and defenses of the Debtors) with respect to the Royalty based on sales that took place before October 10, 2022, including, but not limited to, claims for accrued interest as provided for in the Final Award (the "<u>Prepetition Royalty</u>").

13. By the Initial Funding Date, the Debtors agree to disclose to the Claimants and the DIP Agent the amount of the Prepetition Royalty and provide an accounting of the calculation thereof, which shall be subject to the reporting, audit and inspection rights set forth in the Final Award.

14. This Agreement may be amended only by written agreement among the Parties or an order of the Bankruptcy Court; provided that any amendment that affects the Reversionary Interest or the DIP Agent's information rights shall also require the written agreement of the DIP Agent.

15. This Agreement is an interim agreement between the Parties given Debtors' filing for protection under Chapter 11 of the Bankruptcy Code. This Agreement does not waive, alter, amend, or modify, in any respect, the Judgment or Final Award or any of the Parties' rights and/or obligations under the Judgment and Final Award, including, but not limited to, any right of Claimants to enforce and to provide written notice of the Debtors' failure to pay the Royalty or take any action or steps as a result of such failure (or any rights of the Debtors arising from the provision of such written notice). The failure of any of the Parties to exercise any right, power, or remedy provided under the Judgment, the Final Award, or otherwise available in respect of the Judgment or Final Award, or to insist upon compliance by any other party with its obligations under the Judgment or Final Award, shall not constitute a waiver by such party of its right to exercise any such or other right, power, or remedy or to demand or enforce such compliance.

16. The Parties reserve all rights to terminate this Agreement going forward upon written notice, which may be by email, and such written notice will effect termination immediately upon transmission. In the event that this Agreement is terminated, all Funds in the Postpetition Royalty Escrow Account are to remain in the Postpetition Royalty Escrow Account until further order of the Bankruptcy Court. Moreover, if the Debtors terminate this Agreement, they nonetheless shall be required to deposit into the Postpetition Royalty Escrow Account all amounts that were due and unpaid under this Agreement prior to the effective date of such termination.

17. The Parties reserve all rights to file a motion with the Bankruptcy Court to alter this Agreement, including but not limited to: (i) modifying the Recurring Deposit going forward, and (ii) ordering the payment of the Prepetition Royalty and/or Postpetition Royalty to the Claimants or the Debtors.

18. The Parties make this Agreement with a full reservation of rights with respect to the Action, the Judgment, the Final Award, the Prepetition Royalty, and Postpetition Royalty, including, but not limited to, (i) the Debtors' right to seek and/or obtain, as an incident of appeal, the Reversionary Interest or any other rights set forth above or under applicable

11841135-1

law, and (ii) any right of  Claimants to compel payment of the Royalty prior to the disposition of any appeal and/or to seek an injunction against the Debtors in consequence of the Debtors' failure to comply fully or timely with the Judgment or Final Award and/or seek any other relief.

4