# Debtors' Exhibit 7

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-17842-PDR |
| Debtors. | (Jointly Administered) |
| _____/ | |

## AMENDED[2] DECLARATION OF JOHN C. DIDONATO
## IN SUPPORT OF DIP FINANCING

Under 28 U.S.C. § 1746, John C. DiDonato hereby declares as follows under the penalty of perjury:

1.      I am the Chief Transformation Officer of Vital Pharmaceuticals, Inc. ("VPX") and the other debtors and debtors in possession (together with VPX, the "Company" or the "Debtors") in the above-captioned cases (collectively, the "Chapter 11 Cases").  I am authorized by each of the Debtors to submit this declaration (the "First Day Declaration") on behalf of the Debtors.

2.      I submit this declaration (this "DIP Declaration") in support of the *Debtors' Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic*

---

[1]  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2]  This declaration has been amended to clarify the necessity of the Debtors' access to Cash Collateral in paragraphs 5-7, 9, and 11, to bring current the amount the Debtors have drawn on the DIP Facility, and to attach the most recent Updated Approved Budget from January 6, 2023 as Exhibit A.

11848328-2

Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief [Docket No. 24] (the "Motion") and the *Debtors' Omnibus Reply to Objections to Debtors' Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 515] (the "Reply"), and as a supplement to the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Filings* [Docket No. 26] filed on October 10, 2022 (the "First Day Declaration").[3]

3.      In addition to being the Debtors' Chief Transformation Officer, I am a Managing Director of Huron Consulting Services LLC ("Huron") and Huron's Business Advisory Capability Leader.  I refer the Court to the First Day Declaration for more detailed information about my expertise, Huron's expertise, and our involvement with the Debtors and my personal work with the Debtors.

4.      Except as otherwise indicated, the statements in this DIP Declaration are based on (a) my personal knowledge, belief, or opinion; (b) information I have received from the Debtors' employees or advisors and/or employees of Huron working directly with me or under my supervision, direction, or control; or (c) the Debtors' records maintained in the ordinary course of their business.   I am authorized by the Debtors to submit this DIP Declaration and, if I were called upon to testify, I could and would testify competently to the facts set forth herein.[4]

---

[3] Capitalized terms used but not defined herein have the meanings given to them in the Motion, the Reply, or the First Day Declaration.

[4] For purposes of efficiency, this DIP Declaration incorporates those portions of the First Day Declaration that relate to the Motion and the Reply.

11848328-2

**<u>Access to the DIP and Cash Collateral is a Necessity</u>**

5.       Since the First Day Declaration, I, along with support from my colleagues at Huron, have continued to work tirelessly to familiarize myself with the Debtors' day-to-day operations, business affairs, financial performance, books, and records, and restructuring efforts.  Working closely with the Company's employees, we have evaluated the Debtors' liquidity position and have been working closely with the Debtors' management and other advisors to review, analyze, and help to develop an updated approved budget for the Chapter 11 Cases (the "<u>Updated Approved Budget</u>").  A copy of the most recent Updated Approved Budget is attached hereto as **Exhibit A**.  As the Updated Approved Budget demonstrates, the DIP Facility provides for adequate funds to satisfy the Debtors' reasonably anticipated administrative expenses.  In addition to items reflected in the Approved Budget that was attached to my First Day Declaration, the Updated Approved Budget reflects sufficient funding to cover, among other items, an escrow of postpetition Ongoing Royalties in connection with the Final Arbitration Award issued in the Orange Bang/Monster Arbitration, to be accrued on a bi-weekly basis.  The amounts for the escrow of Ongoing Royalties is included within the "Other" line item on the Updated Approved Budget.  While the Debtors reserve all rights with regard to the Final Arbitration Award, including to dispute that immediate payment of any such amounts is necessary or appropriate, they are willing to escrow such amounts in an effort to eliminate any concerns about the Debtors' ability to honor Ongoing Royalties.

6.       Consistent with my prior statements in the First Day Declaration and based on my and my team's analysis of the Debtors' current cash position and needs, I believe that the Debtors require immediate access to capital in the form of the DIP Facility, and specifically, the Debtors need access to the full DIP Facility in order to operate their business postpetition and to preserve the Debtors' estates as going concerns.  In addition, as I understand it, the Prepetition Lenders

have liens on substantially all of the Debtors' assets, including cash in accounts with the Prepetition Agent and other accounts subject to control agreements with the Prepetition Agent. Accordingly, the Debtors require access to Cash Collateral for the same reasons.   As the Debtors' financial forecasts and the budgets reveal, I believe that the Debtors are unable to generate sufficient levels of operating cash flow in the ordinary course of business to cover their operating and capital costs and the projected costs of these Chapter 11 Cases absent full funding under the DIP Facility.

7.     Specifically, the Debtors require the funding available from the DIP Facility (in addition to Cash Collateral) in order to, among other things, fund working capital, meet payroll obligations, pay suppliers, cover overhead costs, make adequate protection payments, make payments to critical vendors and shippers, and make any other payments essential for the continued management, operation, and preservation of the Debtors' business during the pendency of these Chapter 11 Cases, including payment of professional fees.  The ability to make these payments when due is essential to the continued operation of the Debtors' business throughout these Chapter 11 Cases.  I continue to believe that all such expenses are critical to the Debtors' business and that the Debtors' failure to make such payments will cause immediate and irreparable harm to the Debtors and their estates.

8.     If the Debtors cannot access the full DIP Facility, based on the Debtors' financial forecasts and budgets, then the Debtors will be unable to operate their business in the ordinary course through the conclusion of these Chapter 11 Cases.  In turn, this would negatively impact the Debtors' revenue, jeopardize the Debtors' stakeholders' confidence in the Debtors' business, and harm the value of the Debtors' estates to the detriment of all stakeholders.  Based on the

11848328-2

Debtors' financial forecasts and budgets, the liquidity provided by the DIP Facility should allow the Debtors to implement their business plan while they focus on these Chapter 11 Cases.

9.      I therefore believe that absent continued and full access to the DIP Facility and Cash Collateral, the Debtors could (a) face a severe interruption of their businesses; (b) lose the support of key constituencies, including the Debtors' workforce, key marketing partners, and customers; and (c) be forced to modify their operations in a significant and adverse manner (and, potentially, to shut down operations entirely).  To avoid those outcomes, it is imperative that the Debtors have full access to the DIP Facility in order to continue to signal to the Debtors' stakeholders, including their employees, marketing partners, vendors, and customers, that despite the filing, the outlook for the Debtors and their stakeholders is strong, and that they have the liquidity necessary to meet their obligations in the ordinary course until the business can emerge from the chapter 11 process.  For all these reasons, I believe that full access to the DIP Facility is a necessity.

10.     Moreover, continued access to the DIP Facility is the stabilizing assumption upon which the Updated Approved Budget is based.  Without such access, the Debtors could (a) lose the confidence and cooperation of employees and key business partners, including creditors, vendors, and customers; (b) face a detrimental interruption of their business; and (c) be forced to modify business operations in significant and adverse manners, all of which could detrimentally affect the Debtors' ability to maximize the value of the estates.

11.     In short, without full access to the DIP Facility and Cash Collateral, the Debtors' liquidity situation will be bleak.  The Debtors would likely face a liquidity crisis and run out of cash more quickly than the Updated Approved Budget projects and the erosion of confidence over the Debtors' ongoing operations would be significant and irreparably harm the Debtors' estates

to the detriment of the Debtors, their estate, and their creditors.   Accordingly, entry into the DIP Facility preserves the value of the Debtors' businesses and would benefit the Debtors.

12.     As of the date hereof, the Debtors have drawn $7 million on the DIP Facility.  This was less than anticipated in the Interim Order.  The Debtors did not draw on the DIP per the Interim Order as early as and in the amounts initially anticipated due primarily to the Debtors' efforts to exercise discipline in managing cash.

**The Arizona Real Property**

13.     The Debtors continue to pay expenses necessary to maintain the value of the Arizona real property that is allegedly subject to the Mechanics' Liens (including taxes, utilities, and insurance).  Accordingly, I do not believe that the Debtors' continued use of the Arizona real property, or the inability of the holders of Mechanics' Liens to foreclose on that property, will diminish the value of the Mechanics' Liens (if any) on such property.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated:  January 6, 2023

/s/ John C. DiDonato
John C. DiDonato
Chief Transformation Officer

**<u>Exhibit A</u>**

**Updated Approved Budget**

**Vital Pharmaceuticals, Inc.**
Weekly Cashflow_DIP budget

($ in millions)

| Week Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 13-Week Forecast Total | WCFF Forecast Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Actual/Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | | |
| Week Ending | 01/06/23 | 01/13/23 | 01/20/23 | 01/27/23 | 02/03/23 | 02/10/23 | 02/17/23 | 02/24/23 | 03/03/23 | 03/10/23 | 03/17/23 | 03/24/23 | 03/31/23 | 04/07/23 | 04/14/23 | 04/21/23 | 04/28/23 | 05/05/23 | 05/12/23 | 05/19/23 | 05/26/23 | | |
| **Receipts** | | | | | | | | | | | | | | | | | | | | | | | |
| Customer Receipts | 5.4 | 6.8 | 5.4 | 6.8 | 7.1 | 7.8 | 7.8 | 6.3 | 8.0 | 8.1 | 8.1 | 8.1 | 8.1 | 7.7 | 9.6 | 9.6 | 9.6 | 8.8 | 8.8 | 8.8 | 8.8 | 94.0 | 165.9 |
| Other Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Receipts** | 5.4 | 6.8 | 5.4 | 6.8 | 7.1 | 7.8 | 7.8 | 6.3 | 8.0 | 8.1 | 8.1 | 8.1 | 8.1 | 7.7 | 9.6 | 9.6 | 9.6 | 8.8 | 8.8 | 8.8 | 8.8 | 94.0 | 165.9 |
| DIP Draw | 9.0 | 6.0 | 13.0 | 4.0 | 14.0 | 3.0 | - | 3.0 | 12.0 | 2.0 | - | 1.0 | 3.0 | 8.0 | - | - | - | 12.0 | - | - | 3.0 | 70.0 | 93.0 |
| **Total Receipts** | 14.4 | 12.8 | 18.4 | 10.8 | 21.1 | 10.8 | 7.8 | 9.3 | 20.0 | 10.1 | 8.1 | 9.1 | 11.1 | 15.7 | 9.6 | 9.6 | 9.6 | 20.8 | 8.8 | 8.8 | 11.8 | 164.0 | 288.2 |
| **Disbursements** | | | | | | | | | | | | | | | | | | | | | | | |
| Material costs | (1.7) | (2.5) | (1.6) | (1.9) | (2.5) | (2.6) | (1.7) | (1.3) | (1.9) | (2.0) | (2.0) | (2.0) | (2.0) | (2.0) | (2.5) | (2.5) | (2.5) | (2.2) | (2.2) | (2.2) | (2.2) | (25.7) | (44.2) |
| Co-Packers | (0.2) | (0.2) | (0.2) | (0.2) | (0.3) | (0.3) | (0.3) | (0.2) | (0.3) | (0.3) | (0.3) | (0.3) | (0.3) | (0.3) | (0.4) | (0.4) | (0.4) | (0.3) | (0.3) | (0.3) | (0.3) | (3.4) | (6.2) |
| Freight & handling | (1.3) | (2.2) | (1.4) | (1.7) | (1.9) | (1.9) | (1.9) | (1.5) | (2.0) | (2.0) | (2.0) | (2.2) | (2.2) | (2.1) | (2.7) | (2.7) | (2.7) | (2.4) | (2.4) | (2.4) | (2.4) | (24.2) | (43.9) |
| Employee expenses | (0.6) | (3.7) | (0.6) | (3.8) | (0.6) | (3.9) | (0.6) | (4.3) | (0.6) | (4.1) | (0.6) | (3.5) | (0.5) | (3.5) | (0.5) | (3.8) | (0.5) | (3.9) | (0.5) | (3.6) | (0.5) | (27.3) | (44.3) |
| Trade promotion | (0.5) | (1.2) | (1.1) | (1.2) | (1.0) | (1.0) | (0.4) | (0.3) | (0.3) | (0.3) | (0.3) | (0.3) | (0.3) | (0.3) | (0.4) | (0.4) | (0.4) | (0.4) | (0.4) | (0.4) | (0.4) | (8.2) | (11.2) |
| Facility/Office expenses | (1.3) | (0.6) | (0.7) | (0.6) | (2.4) | (0.8) | (0.8) | (0.8) | (4.6) | (0.7) | (0.7) | (0.6) | (0.4) | (2.3) | (0.5) | (0.6) | (0.6) | (2.3) | (0.5) | (0.5) | (0.4) | (14.8) | (22.3) |
| Marketing | (1.0) | (0.6) | (0.6) | (0.7) | (1.1) | (0.6) | (0.6) | (0.5) | (1.0) | (0.5) | (0.5) | (0.5) | (0.5) | (1.2) | (0.5) | (0.5) | (0.5) | (1.2) | (0.4) | (0.4) | (0.4) | (8.8) | (14.2) |
| Legal expenses | (0.1) | (0.3) | (0.3) | (0.3) | (0.3) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (1.6) | (1.7) |
| Other | (0.1) | (0.1) | (0.5) | (0.6) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | - | - | - | - | - | - | - | - | (2.0) | (2.0) |
| Taxes | (0.1) | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (0.1) | (0.1) |
| OBI royalty reserve/payment | - | (4.3) | (0.8) | - | (0.8) | - | (0.8) | - | (0.8) | - | (0.8) | - | (0.8) | - | (0.8) | - | (0.8) | - | (0.8) | - | (0.8) | (9.1) | (12.3) |
| **Total Operating Disbursements** | (6.8) | (15.8) | (7.8) | (11.0) | (10.9) | (11.3) | (7.2) | (9.1) | (11.6) | (10.0) | (7.3) | (9.5) | (7.1) | (11.8) | (8.3) | (10.9) | (8.3) | (12.7) | (7.5) | (9.9) | (7.5) | (125.3) | (202.3) |
| Operating cash flow | (1.5) | (9.0) | (2.4) | (4.2) | (3.8) | (3.5) | 0.6 | (2.9) | (3.6) | (1.8) | 0.8 | (1.3) | 1.1 | (4.2) | 1.3 | (1.3) | 1.3 | (3.9) | 1.3 | (1.1) | 1.4 | (31.3) | (7.2) |
| **Professional Fees & Employee Retention** | | | | | | | | | | | | | | | | | | | | | | | |
| Professional fees carve out | (0.5) | - | (11.2) | - | (4.7) | - | - | - | (4.2) | - | - | - | (4.4) | - | - | - | (0.7) | (4.3) | - | - | (4.2) | (25.0) | (33.5) |
| Retention Plans | - | - | - | - | - | - | - | (0.3) | - | - | - | - | - | - | - | - | - | - | - | - | - | (0.3) | (1.0) |
| **Total Professional Fees & Employee Retention** | (0.5) | - | (11.2) | - | (4.7) | - | - | (0.3) | (4.2) | - | - | - | (4.4) | - | - | - | (0.7) | (4.3) | - | - | (4.2) | (25.3) | (34.6) |
| **Debt Service** | | | | | | | | | | | | | | | | | | | | | | | |
| Adequate protection payments | (5.0) | - | - | - | (2.7) | - | - | - | (1.5) | - | - | - | - | (0.8) | - | - | - | (0.7) | - | - | - | (9.3) | (10.7) |
| Interest/Fees on DIP | (0.1) | - | - | - | (2.5) | - | - | - | (3.0) | - | - | - | - | (3.5) | - | - | - | (3.6) | - | - | - | (5.6) | (12.8) |
| **Total Debt Service** | (5.1) | - | - | - | (5.2) | - | - | - | (4.5) | - | - | - | - | (4.3) | - | - | - | (4.3) | - | - | - | (14.9) | (23.5) |
| **Net Cash Flow / (Deficit)** | 1.9 | (3.0) | (0.6) | (0.2) | 0.3 | (0.5) | 0.3 | 0.1 | (0.3) | 0.2 | 0.8 | (0.3) | (0.3) | (0.5) | 1.3 | (1.3) | 0.6 | (0.5) | 1.3 | (1.1) | 0.1 | (1.6) | (2.6) |
| **Cash Balance** | | | | | | | | | | | | | | | | | | | | | | | |
| Beginning Cash Balance | 6.7 | 8.6 | 5.7 | 5.0 | 4.9 | 5.1 | 4.7 | 5.0 | 5.1 | 4.8 | 4.9 | 5.8 | 5.5 | 5.1 | 4.7 | 5.9 | 4.6 | 5.2 | 4.7 | 6.1 | 5.0 | 6.7 | 6.7 |
| Ending Cash Balance | 8.6 | 5.7 | 5.0 | 4.9 | 5.1 | 4.7 | 5.0 | 5.1 | 4.8 | 4.9 | 5.8 | 5.5 | 5.1 | 4.7 | 5.9 | 4.6 | 5.2 | 4.7 | 6.1 | 5.0 | 5.1 | 5.1 | 5.1 |
| DIP Balance | 16.0 | 22.0 | 35.0 | 39.0 | 53.0 | 56.0 | 56.0 | 59.0 | 71.0 | 73.0 | 73.0 | 74.0 | 77.0 | 85.0 | 85.0 | 86.0 | 86.0 | 97.0 | 97.0 | 97.0 | 100.0 | | |

1