# Debtors' Exhibit 9

Page 1

1            UNITED STATES BANKRUPTCY COURT

              SOUTHERN DISTRICT OF FLORIDA

2

3    IN RE:                    CASE NO. 22-17842-PDR

4    VITAL PHARMACEUTICALS, INC.,

5              Debtor.

     _____/

6

7            ECF #18, 19, 21, 22, 23, 24 and 194

8                  November 9, 2022

9              The above-entitled cause came on for hearing

10   before the Honorable Peter D. Russin, one of the Judges in

11   the UNITED STATES BANKRUPTCY COURT, in and for the

12   SOUTHERN DISTRICT OF FLORIDA, at 299 E. Broward Blvd.,

13   Fort Lauderdale, Broward County, Florida, on November 9,

14   2022, commencing at or about 10:00 a.m., and the following

15   proceedings were had.

16

17

18

19

20

21

22

23

24           Transcribed from a digital recording by:

                  Cheryl L. Jenkins, RPR, RMR

25

Page 2

1
                    APPEARANCES VIA ZOOM:
2
3                    BERGER SINGERMAN, by
                     JORDI GUSO, Esquire
4                          and
                     LATHAM & WATKINS, by
5                    ANDREW SORKIN, Esquire
                     JERAMY WEBB, Esquire
6                   On behalf of the Debtor
7
                     AKERMAN, LLP, by
8               MICHAEL I. GOLDBERG, Esquire
                           and
9          PACHULSKI STANG ZIEHL JONES, by
                   STEVEN GOLDEN, Esquire
10               ROBERT FEINSTEIN, Esquire
                 On behalf of Monster Energy
11
12                   SEQUOR LAW, by
                   LEYZA BLANCO, Esquire
13                         and
                   LOWENSTEIN SANDLER, by
14                 ERIC CHAFETZ, Esquire
                 NICOLE FULFREE, Esquire
15               JEFFREY COHEN, Esquire
                 On behalf of the Official
16          Committee of Unsecured Creditors
17
                   SHUTTS & BOWEN, by
18               HARRIS KOROGLU, Esquire
                         and
19               MOORE & VAN ALLEN, by
                 LUIS LLUBERAS, Esquire
20               STEPHEN GRUENDEL, Esquire
                 On behalf of Truist Bank
21
22        MARKOWITZ RINGEL TRUSTY & HARTOG, by
                 JERRY MARKOWITZ, Esquire
23                       and
                   LEWIS ROCA, by
24               ROBERT CHARLES, Esquire
               On behalf of Faith Technologies
25

```
 1                   CONTINUED APPEARANCES VIA ZOOM
 2
 3             GENOVESE JOBLOVE & BATTISTA, by
                    PAUL BATTISTA, Esquire
 4                  On behalf of Jack Owoc
 5
               J. STEVEN WILKES, Trial Attorney
 6                Office of the U.S. Trustee
                    Department of Justice
 7
 8                ANTHONY & PARTNERS, by
                    JOHN ANTHONY, Esquire
 9           On behalf of National Beverages
10
                    GIBBONS, P.C., by
11                  BRETT THEISEN, Esquire
             On behalf of EFL Global Logistics
12
13                   FURR & COHEN, by
                    MARC BARMAT, Esquire
14                        and
                    GIBSON DUNN, by
15               MATTHEW BOUSLOG, Esquire
             On behalf of American Bottling Company
16
17                  FRANK/GECKER, by
                  JEREMY KLEINMAN, Esquire
18               On behalf of PepsiCo, Inc.
19
             FENDER BOLLING AND PAIVA, by
20               G. STEVEN FENDER, Esquire
               On behalf of Orange Bang, Inc.
21
                     AGENTIS, by
22                  JESSE CLOYD, Esquire
             On behalf of Stellar Group, Inc.
23
24
25
```

Page 4

1

2                    CONTINUED APPEARANCES VIA ZOOM

3

                            ALSO PRESENT

4

            JAN NAIFEH, Financial Advisor, Truist Bank

5

        SCOTT ANDRON, Broward County, Tax Collector

6

            ECRO - Electronic Court Reporting Operator

7

8                        - - - - - - -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

```
 1                  THE COURT:  Good morning everybody.
 2                  Let me call Vital Pharmaceuticals, 22-17842.
 3       There are quite a number of people on Zoom this morning,
 4       so getting through appearances may be, I don't know, most
 5       of the hearing, from what I hear.  So, we'll just proceed.
 6       Mr. Guso.
 7                  MR. GUSO:  Yes, sir.  May it please the
 8       Court.  Good morning, your Honor.  Jordi Guso, G-u-s-o,
 9       Berger Singerman.  We are proposed local counsel to the
10       debtors, and we are joined, your Honor, by our colleagues
11       from Latham & Watkins, Andrew Sorkin, S-o-r-k-i-n, and
12       Jeramy Webb, W-e-b-b.
13                  THE COURT:  All right.  So if another
14       counsel makes your appearance for you, and I call on you,
15       just say hi, and we'll move on.
16                  All right.  Mr. Golden.
17                  (No verbal response.)
18                  THE COURT:  Mr. Golden.
19                  MR. GOLDEN:  Your Honor, yes, Steve Golden,
20       of Pachulski Stang Ziehl & Jones, on behalf of Monster
21       Energy, and Robert Feinstein is on as well, and
22       Michael Goldberg is on as well, who is our co-counsel.
23                  THE COURT:  All right.  I'm just going by,
24       you know, the Hollywood Squares version of this.  So --
25                  MR. GOLDEN:  Understood.
```

Page 6

1          THE COURT:  Jeffrey Cohen.

2          MR. COHEN:  Good morning, your Honor.  I

3   believe Leyza Blanco was going to introduce us as

4   committee counsel.  So, I'll --

5          THE COURT:  All right.  Thank you.  I see

6   Ms. Blanco next.  Ms. Blanco.

7          MS. BLANCO:  Good morning, your Honor.

8   Leyza Blanco of Sequor Law on behalf of the Official

9   Committee of Unsecured Creditors.

10         I'm local counsel to Lowenstein, I'm joined

11  -- joined with me today is Jeffrey Cohen, Eric Chafetz and

12  Nicole Fulfree, from Lowenstein, who will be counsel to

13  the committee.

14         THE COURT:  All right.  Thank you.

15         We've heard about Mr. Feinstein.  We've

16  heard about Mr. Goldberg.

17         Mr. Lluberas.

18         MR. LLUBERAS:  Good morning, your Honor.

19  This is Luis Lluberas, counsel for Truist Bank, the

20  proposed -- excuse me, counsel for the administrative

21  agent in both the prepetition and postpetition capacities.

22  I have my partner Steve Gruendel, from Moore & Van Allen,

23  on as well, and our local counsel, Harris Koroglu, from

24  Shutts & Bowen is on this morning as well.  Thank you,

25  your Honor.

Page 7

1                    THE COURT:  Thank you.  Sorry about the

2    mispronunciation.

3                    Mr. Sorkin.

4                    MR. LLUBERAS:  No worries.

5                    MR. SORKIN:  Good morning, your Honor,

6    Mr. Sorkin, Andrew Sorkin, sorry, Latham & Watkins, on

7    behalf of the debtors.

8                    THE COURT:  Thank you.

9                    Mr. Charles.

10                   MR. CHARLES:  Good morning, your Honor.

11   Rob Charles, Lewis Roca.  Jerry Markowitz is our local

12   counsel for our client, Faith Technologies, and our

13   pro hac vice application is on file.

14                   Thank you.

15                   THE COURT:  All right.  Thank you.  I think

16   I saw that.  I might have entered an order but, if not,

17   you'll see one soon.

18                   Mr. Battista.

19                   MR. BATTISTA:  Good morning, Judge.

20   Paul Battista, of Genovese Joblove & Battista, on behalf

21   of Jack Owoc, O-w-o-c.

22                   THE COURT:  Thank you.

23                   Mr. Wilkes.

24                   MR. WILKES:  Good morning, your Honor.

25                   J. Steven Wilkes for the United States

Page 8

1    Trustee, Region 21.

2                   THE COURT:  Mr. Chafetz.

3                   MR. CHAFETZ:  Sorry, your Honor.  Yes,

4    Eric Chafetz of Lowenstein Sandler on behalf of the

5    Official Committee of Unsecured Creditors, and it's

6    C-h-a-f, as in Frank, e-t-z, as in zebra.

7                   THE COURT:  Thank you.

8                   Mr. Anthony.

9                   MR. ANTHONY:  Good morning, your Honor.

10   John Anthony for National Beverages.

11                  THE COURT:  Thank you.

12                  Mr. Gruendel.

13                  MR. GRUENDEL:  Your Honor, I'm with

14   Mr. Lluberas, with Moore & Van Allen, on behalf of the

15   prepetition DIP --

16                  THE COURT:  Thank you.

17                  I think we heard about Ms. Fulfree.

18                  Mr. Andron.

19                  MR. ANDRON:  Good morning, your Honor.

20   Scott Andron for Broward County, in its capacity as Tax

21   Collector.

22                  THE COURT:  Thank you.

23                  We heard about Mr. Koroglu.

24                  Mr. Theisen.

25                  MR. THEISEN:  Good morning, your Honor.

1      Brett Theisen, of Gibbons, P.C. --

2                    THE COURT:  Theisen.

3                    MR. THEISEN:  -- on behalf of EFL Global

4      Logistics.

5                    I also have a pro hac application pending,

6      your Honor.  I wasn't intending to address the Court this

7      morning, just monitoring.

8                    THE COURT:  All right.  No worries, and

9      sorry for the mispronunciation.

10                    Mr. Barmat.

11                    MR. BARMAT:  Good morning, your Honor.

12     Marc Barmat on behalf of American Bottling Company.

13                    THE COURT:  Thank you.

14                    We heard about Mr. Markowitz.

15                    Mr. Kleinman.  I'm not sure why some are not

16     on video.  Perhaps they don't want to appear, I'm not

17     sure.

18                    MR. KLEINMAN:  Good morning, your Honor.

19     Jeremy Kleinman on behalf of PepsiCo., Inc.  I've been

20     admitted pro hac vice.  Our local counsel is

21     Corali Lopez-Castro from the Kozyak Throckmorton Tropin

22     firm.

23                    THE COURT:  Thank you.

24                    Mr. Fender.

25                    MR. FENDER:  Yes, good morning, your Honor.

1    This is Steven Fender for Orange Bang, Inc., and I'm the

2    local counsel, but I will be the only one appearing for

3    Orange Bang this morning.

4                    THE COURT:  All right.  Thank you.

5                    Mr. Bouslog.

6                    MR. BOUSLOG:  Yes, good morning, your Honor.

7    Matt Bouslog on behalf of the American Bottling Company.

8                    THE COURT:  I've had, like, a 50/50 shot at

9    some of these names, and I have missed it --

10                   MR. BOUSLOG:  No problem, your Honor.  Thank

11   you.

12                   THE COURT:  Mr. Cloyd.

13                   MR. CLOYD:  Good morning, your Honor.

14   Jesse Cloyd on behalf of Stellar Group, Inc.

15                   THE COURT:  Thank you.

16                   Ms. Naifeh, or Mr. Naifeh, I don't see --

17                   MS. NAIFEH:  Good morning, your Honor.

18   Jan Naifeh, financial advisor to Truist bank.

19                   THE COURT:  Thank you.

20                   Ms. or Mr. Harrison.

21                   (No verbal response.)

22                   THE COURT:  All right.  Ms. Steinhagen.

23                   (No verbal response.)

24                   THE COURT:  All right.  Ms. Jorgens.

25                   (No verbal response.)

```
 1              THE COURT:  Let's do this, I'm going to
 2   assume you don't want to make an appearance if your video
 3   is not on.  Let's do that, all right?
 4              Okay.  So that means to me that all
 5   appearances have been made and we can proceed.
 6              Mr. Guso, I understand there has been some
 7   communications between you and my CRD, and that dates have
 8   been now narrowed to November 21st and December 6th for
 9   various matters.
10              Why don't you take me through that and we
11   can figure that out.
12              MR. GUSO:  Yes, sir.  May it please the
13   Court.
14              Your Honor, with the Court's permission,
15   Mr. Sorkin will be presenting the schedule that has been
16   agreed to by all parties, your Honor, if that's
17   acceptable.
18              THE COURT:  All right.  Sure, of course.
19   Mr. Sorkin.
20              MR. SORKIN:  Good morning again, your Honor.
21   Andrew Sorkin on behalf of the debtors.
22              I believe at this point we, our DIP lenders,
23   and the committee are all aligned on a proposed schedule
24   moving forward.  We would include that in a proposed order
25   that we'd submit to your Honor, if you agree with our
```

1    proposed schedule.

2              And subject to the Court's approval, we

3    would propose the following, all motions and applications

4    that were originally scheduled for hearing today, other

5    than the DIP, would be heard on Monday, November 21st,

6    that includes retention apps, our cash -- our final cash

7    management hearing, and our interim comp procedures

8    motion.

9              No one besides the committee has requested

10   an extension of that objection deadline, or otherwise

11   objected for that matter.  So we propose to set an

12   objection deadline for the committee only at 5:00 p.m. on

13   November 15th, with any replies due by 5:00 p.m. on

14   Friday, November 18th.

15             With respect to the DIP, we propose to set

16   that hearing for December 6th, with an objection deadline

17   of 5:00 p.m. on November 28th for the committee, Monster,

18   American Bottling and Stellar, all of whom had reached out

19   and requested an extension of their objection deadline.

20   We would file a reply or other supportive papers on

21   Friday, December 2nd, by 5:00 p.m.

22             THE COURT:  Okay, and you state that your

23   agreement is with certain parties.  What about others that

24   have filed objections that I have noted with respect to

25   the original order, stating that there was a lack of

1   notice and other issues, and just generally other parties

2   in interest, did they agree with these dates, or do we

3   need to hear from them?

4                   MR. SORKIN:  I believe they have been

5   informed.  It may be helpful to hear from them in case

6   anybody has an issue with that proposed schedule.

7                   THE COURT:  All right.  So let's open it to

8   the floor, if you will, virtual floor.

9                   Does anyone object to the schedule that's

10  been proposed by Mr. Sorkin?

11                  MR. FEINSTEIN:  Your Honor, it's

12  Robert Feinstein for Monster Energy.

13                  Mr. Sorkin went through the list fairly

14  quickly, but I know we were in touch with certain parties

15  who knew -- actually saw our preliminary objection, and

16  knew, because we advised them, that we'd be filing an

17  objection in connection with the final hearing, who

18  indicated their desire to file a joinder.

19                  I don't know that they were listed in the

20  parties Mr. Sorkin named who are getting an extension, but

21  -- and I don't know that they're here today either, but I

22  think they should have the opportunity to follow through

23  on what they advised Monster their intention was, which

24  was, at the very least, to file a joinder in our

25  objection.

1          THE COURT:  Well, this hearing has been set

2    for some time.  It's clearly on the record.  If they're

3    not here to present their position, theoretically, their

4    objection day has come and gone, unless they had a notice

5    issue, I suppose, but who are these parties, can you name

6    them, or is that not --

7          MR. FEINSTEIN:  If I could just ask

8    Mr. Sorkin to repeat the names of the parties he is

9    extending for?

10         THE COURT:  Mr. Sorkin.

11         MR. SORKIN:  Yes, I'm happy to, your Honor,

12   and I believe that the only one of those parties I've

13   heard of is American Bottling, who is on today, and they

14   are on that list.

15         The extension would be for the creditors'

16   committee, Monster, American Bottling and Stellar Group.

17   I don't know if there are others that I'm not aware of

18   that maybe Mr. Feinstein can name.

19         MR. FEINSTEIN:  I was curious about, and

20   again, I don't think they're on the line (inaudible) and

21   Sony, but -- and, again, I'll abide by your Honor's --

22         THE COURT:  Well, I mean, one thing we can

23   do, Mr. Feinstein, I mean, again, they're not here.  They

24   do have notice of this hearing, do they not,

25   Mr. Feinstein, are you aware of that?

1          MR. FEINSTEIN:  I would expect that they do,

2     yes.

3          THE COURT:  Okay.  So, one thing we could

4     do, of course, is to just grant the relief in terms of

5     scheduling that Mr. Sorkin has suggested and, of course,

6     any party who needs relief from that order can certainly

7     ask for it and, you know, the only issue is going to be

8     whether that -- relief from that order, and the filing of

9     an objection somehow causes prejudice to those parties

10    that are directly involved in the financing, including the

11    debtor, the lender, the committee and others, but we can

12    take that up at the time.

13          I'm just not sure I want to force upon

14    anyone that's not involved in the agreement, or that is

15    involved in the agreement, additional opportunities to

16    object when, frankly, you know, we could take up the

17    merits today, that was what was scheduled for today.

18          So that's just my concern, unless,

19    Mr. Sorkin, you have no objection.  I mean, you know, I

20    will likely liberally grant relief from the order, should

21    there be any, you know, reasonable need to file an

22    objection, and a reason that they weren't here today, but

23    what is your position on that?

24          MR. SORKIN:  No, I mean our position is

25    that, you know, anybody who wanted to object either should

1    have objected by the original deadline of Friday,

2    November 4th, or reached out to us to request an

3    extension.  It's understood that under certain

4    circumstances your Honor may wish to grant leave from that

5    order, but for the time being, I think the objection

6    deadline extension should be limited solely to the parties

7    I've named.

8              THE COURT:  All right.  I tend to agree with

9    that, Mr. Feinstein, and I just -- you know, we're here,

10   they're not.

11             MR. FEINSTEIN:  Understood.

12             THE COURT:  That's my main issue.

13             MR. FEINSTEIN:  Okay.

14             THE COURT:  All right.  Anyone else wish to

15   be heard on the schedule that's been suggested by

16   Mr. Sorkin?

17             MR. WILKES:  J. Steven Wilkes for the United

18   States Trustee.

19             Regarding the professional applications and

20   the deadline to object, as objections to issues that come

21   up may be raised at any time, and I just wanted to put the

22   parties on notice that the United States Trustee reserves

23   her right to raise an objection to those applications

24   after further information and discovery at the Meeting of

25   Creditors.

1           So I just want Mr. Sorkin and Mr. Guso to

2   know that if something comes out at the Meeting of

3   Creditors the United States Trustee deems necessary to

4   object to a professional's application, that she would be

5   filing such an objection.  I do not anticipate it, but I

6   just want to give the parties clear notice.

7           THE COURT:  All right.  Any response or

8   concern about that, Mr. Sorkin, or others?

9           MR. SORKIN:  I don't have any concerns,

10  your Honor, that's fine, if it's, you know, limited to

11  objections based on, you know, facts that are disclosed at

12  that meeting, I understand and accept the reservation of

13  rights.

14          THE COURT:  Okay.  All right.  So, let me

15  ask a question.  On the 21st, it seems to me that, that

16  these are matters that can be set, you know, motion

17  calendar-style, if you will, and won't take more than an

18  hour or so.  I mean, do you have a different view of that?

19  Because I don't -- there is nothing that's been objected

20  to, is that right?

21          MR. SORKIN:  I would certainly hope so,

22  noting that, you know, the committee was just appointed, I

23  believe, eight days ago, and retained professionals -- or

24  selected, I should say, professionals as of the end of

25  last week.  So they're still getting up to speed, but at

1   this time I wouldn't anticipate needing anywhere north of

2   one hour.

3                    THE COURT:  All right.  So, and what time

4   did you propose starting on the 21st, in the morning,

5   afternoon?  I just want to make sure it's convenient for

6   everyone.

7                    MR. SORKIN:  I might have to defer to

8   Mr. Guso here, as he's had the conversations with your

9   courtroom deputy.

10                   MR. GUSO:  Your Honor, Ms. Weldon has

11  advised that the Court has availability at 10:00 a.m. on

12  the 21st, if that's acceptable.

13                   THE COURT:  That's certainly fine, and we

14  certainly have an hour, no problem, nothing else has been

15  set for that day, which is why we suggested it.  So that's

16  fine.

17                   And what about the financing matters on

18  December 6th?  Obviously there is a level -- to the extent

19  it remains contested and, you know, my hope for all of you

20  is that you can find a way to resolve any open issues and

21  objections, that's certainly the best way to control each

22  of your destinies, but if you're leaving it up to me, what

23  is your anticipated time for your presentation,

24  Mr. Sorkin?

25                   And I assume you understand that it would be

1    evidentiary?

2                    MR. SORKIN:  Yes, I anticipated it likely

3    would be an evidentiary hearing, in which case it may

4    require a full day.

5                    THE COURT:  All right.  Does anyone else

6    wish to be heard with respect to how much time might be

7    necessary on the 6th?

8                    MR. CHARLES:  Your Honor, Rob Charles on

9    behalf of one of the objectors, Faith Technologies.

10                   With respect to a day, that makes sense.  As

11   to an evidentiary hearing on the 6th, where there is

12   really very little relevant evidence in the record today,

13   I'm guessing it will be dropped on the world on

14   December 2nd, and so we will have four days to prepare for

15   an evidentiary hearing.  Having not seen the evidence, I

16   have some trepidation about that, and I apologize for

17   sounding like a cowardly Arizona bankruptcy lawyer.

18                   THE COURT:  You hardly sound cowardly, and,

19   quite frankly, the notion of having four days to prepare,

20   you know, is certainly tight.

21                   Mr. Sorkin, did you have some methodology

22   you wish to propose with respect to exchange of, you know,

23   documents, witness lists, et cetera, should that be

24   necessary?  Again, let me emphasize, my fervent hope is

25   that you all will resolve these matters.

1          But again, since there are a number of
2  objections, and that can't be presumed, by any means, we
3  need to prepare the time necessary to have such an
4  evidentiary hearing, and what I generally do, frankly, is
5  issue an order that sets out those types of deadlines,
6  discovery deadlines, exchange of witness lists, exchange
7  of documents, exhibits, with exhibit registers.  Certainly
8  to the extent that the parties can agree to a pretrial
9  stipulation, that certainly helps move things along, and
10 there is a deadline for that.  It's my standard order
11 setting evidentiary hearings.
12          I'm only hesitating to issue such an order
13 just, you know, because I don't necessarily want to turn
14 this into something that is beyond what the parties
15 anticipate is necessary.
16          So, let me hear from -- the easy thing to do
17 is simply issue that order, and you all work on the
18 prehearing dates, but I want to make sure that that's
19 something you all anticipate and think is necessary.  Let
20 me hear from Mr. Sorkin first.
21          MR. SORKIN:  I mean, I guess I should start
22 by saying, your Honor, that I actually, you know, haven't
23 heard from any party yet, you know, regarding the need for
24 discovery, or depositions, or anything of that sort, so I
25 certainly don't have a timeline proposal sitting here

1     today.

2                    I think I would encourage all parties who

3     intend to participate in the hearing, you know, to get on

4     a video conference in the very near future to discuss

5     those matters, but I don't know that we're prepared to do

6     so at this hearing.

7                    THE COURT:  All right.  So all you're trying

8     to do then is block out December 6th, the full day, which

9     we have, and we can do, and then figure out among

10    yourselves what types of deadlines, if any, and you can

11    work from my, you know, standard evidentiary hearing

12    order, and that's fine with me.

13                   I think -- I mean, from what I've read, many

14    of the facts can be stipulated to, unless there is, you

15    know, some contest to some of the matters that are in the

16    declarations, for example, but those are facts in the

17    possession of the debtor and the lender, so I'm not sure

18    how they would be contested, but they're fairly, you know,

19    simple concepts that are in those declarations.  So I

20    don't -- I'm hoping there isn't a tremendous amount of

21    evidence that's necessary.

22                   But, you know, the statute requires what it

23    requires.  So, you have to go through that process, and

24    the objecting parties certainly have the right to put on

25    evidence that's contrary in support of their objections.

1                So, anyway, so I'm fine with that.  Let me

2    hear from anyone else who suggests another process.  I

3    could pick the dates myself, but I don't want to do that

4    if the parties can work together and resolve them, but

5    given the number of parties, maybe it's easier if I pick

6    the dates myself.

7                Mr. Sorkin, do you have a thought on that?

8                MR. SORKIN:  Your Honor, I guess I would be

9    comfortable with your Honor setting the schedule to avoid

10   the need for another hearing to deal with disputes over

11   what that timeline should look like.

12               You know, I always prefer to resolve things

13   consensually if we can, but I think your Honor has made an

14   accurate observation, that we are dealing with a number of

15   different parties here, and that may be, you know, more

16   difficult in practice than I'm envisioning right now.

17               So, I think I'm somewhat agnostic, and I

18   see, you know, the logic in the Court, you know, setting

19   the deadlines for everybody.

20               THE COURT:  Well, I've gotten used to being

21   the bad guy over the last couple years.  So, you know,

22   somebody thinks I'm the bad guy most of the time.  So,

23   anyway, all right, anybody else wish to be heard?

24   Mr. Wilkes?

25               MR. WILKES:  Yes, your Honor.

1    J. Steven Wilkes for the United States Trustee.

2                   As this is the 9th, and the FEH is scheduled

3    now for the 6th, that's less than a month of calendar

4    time, your standard order would need to necessarily

5    provide dates that are truncated downward, probably for

6    responses -- for discovery responses to be provided within

7    seven days, rather than even the 10 days that I normally

8    see in the truncated FEH order, as well as discovery to be

9    able to commence immediately, just a suggestion.

10                  THE COURT:  Yes.  No, I understand that and,

11   quite frankly, these are matters that may not be

12   emergencies, but they are certainly matters we need to get

13   to finality on in this type of case, of course.  So, you

14   know, the truncated nature of the deadlines are what they

15   are in order to reach a conclusion here, which I think is,

16   of course, very important to advancing the case.

17                  So, I appreciate that, and I'll work on that

18   if that's the consensus.

19                  Mr. Cohen.

20                  MR. COHEN:  Good morning, your Honor.

21   Jeffrey Cohen, Lowenstein Sandler on behalf of the

22   committee.

23                  First of all, I want to thank Mr. Sorkin and

24   Mr. Guso for being incredibly accommodating.  The

25   committee has been late to this party, but we're catching

Page 24

1   up as quickly as we can and, frankly, couldn't be doing it

2   without their accommodation.

3                    The committee, your Honor, is operating

4   under the assumption that the declarations submitted by

5   the debtor constitute their case in chief in support of

6   the DIP financing request.

7                    If the committee has any contrary evidence,

8   we'll submit it in connection with an objection, to be

9   filed in a timely manner on November 28th.  Our goal is to

10  engage with lender's counsel and the debtors to try to

11  resolve this but, your Honor, we would assume that in

12  connection with any reply, if the debtor were to submit

13  any additional evidence, it would be only to rebut any

14  evidence we submit in connection with our objection.

15                   So I think we're flirting -- we're flirting

16  with the line of making this a larger show and a more

17  complex show than necessary.  If we can keep it

18  streamlined in the manner that I am under the impression

19  we are proceeding, in other words, their evidence is

20  already on record, and any objector can submit contrary

21  evidence, and then they can rebut it, I think that's what

22  I expected from a DIP financing process.

23                   Certainly, your Honor, it's your Court, but

24  that's what the committee plans on doing.

25                   THE COURT:  I think that's a wonderful

1    observation.  I think it's accurate, unless Mr. Sorkin

2    disagrees, but certainly the debtor was prepared, and the

3    lender, were prepared to go forward, theoretically, at the

4    initial hearing, if not the final hearing.

5            So that does make a lot of sense.

6    Mr. Sorkin, do you disagree with that supposition?

7            MR. SORKIN:  We may want to put in

8    additional declarations.  So I don't know that I'm willing

9    to, you know, limit our testimony to that which is in the

10   two declarations we filed in support of the interim DIP.

11   You know, at the final DIP hearing, we often will want to

12   do a bring-down to confirm that, for example, no superior

13   financing is available, no financing is available on

14   unsecured or, you know, junior secured terms and the like.

15           So, I think it's a little bit too

16   restrictive, what I just heard from Mr. Cohen.  I mean, I

17   think if there are deadlines that we need to agree to to,

18   you know, put parties on notice of, you know, generally

19   what the testimony is expected to include, we can discuss

20   that, but I don't know that I'm willing to limit myself

21   to, you know, just the two declarations that were

22   submitted on the first day in support of interim relief.

23           THE COURT:  All right.  My understanding,

24   though, Mr. Sorkin, was that the effort to find such

25   alternative financing had started before the bankruptcy

1   case was filed, and that you were unsuccessful.  I'm not

2   sure -- if there has been an ongoing effort to find

3   alternative financing, then certainly I don't think -- and

4   you've been unsuccessful in doing that, which is the

5   premise of what you need to show in order to prevail, then

6   -- you've been unsuccessful in finding financing on better

7   terms, that's something fairly easy for you to do, which

8   you could probably do fairly quickly.

9              Are there other issues that you think need

10  additional evidence that are not already included in your

11  declarations?

12             Because Mr. Cohen, again, makes a good

13  point.  I mean, I would assume that you would have been

14  prepared to go forward and, again, rebuttal is certainly

15  an option.  I mean, that's not being foreclosed, rebuttal

16  evidence, nor could you be, but -- so are there other

17  issues you're concerned about?  And I know you're on the

18  spot, and I don't like that.  It is what it is, but we are

19  taking process here and, you know, my goal, my sole goal

20  is due process, just to make sure everybody is playing on

21  a fair and level playing field.

22             MR. SORKIN:  I think as long as we can

23  present our rebuttal evidence, and your Honor is

24  comfortable on the point that I raised, that, you know,

25  the record we created at the first day hearing is likely

1    sufficient, then I think I may be fine with Mr. Cohen's
2    proposal.
3                    THE COURT:  Well, I'm not prejudging that,
4    but from what I read, it certainly seems like you have a
5    case to put on, that that is -- that you've made an
6    effort, and it was unsuccessful.
7                    I don't recall seeing the details, quite
8    frankly, but you'll -- you know, you'll put that on when
9    you need to.
10                   So I'm not prejudging it, but, you know, my
11   initial reaction was, yeah, they did what they were
12   required to do, theoretically, unless somebody can point
13   out that it was insufficient.  So -- but, again, I'm not
14   prejudging that.
15                   So how long would you need to supplement
16   that, if you intend to supplement it at all?
17                   MR. SORKIN:  I would like at least, I think
18   until, let's say just before the Thanksgiving holiday,
19   which would be prior to the objection deadline.
20                   THE COURT:  All right.  Mr. Cohen, are you
21   agile enough to respond to that additional evidence at
22   that point, as you wolf down your turkey leg?
23                   MR. COHEN:  Yes, your Honor, maybe the 21st,
24   to give us two days before our turkey fatigue kicks in.
25                   THE COURT:  You know, I think the 21st seems

1   okay, I mean, from today to the 21st, that's a fairly

2   substantial time.  So, any issue with that, Mr. Sorkin?

3   Because whatever you've done, you've already done, I

4   imagine.

5              MR. SORKIN:  No, I have no issue with that,

6   and to be clear, I'm not sure there will be any additional

7   submissions.  I just want to reserve the right in case,

8   you know, we decide in the next, I guess, 12 days, that it

9   becomes --

10              THE COURT:  Yes.  All right.  So let me make

11   sure I understand this since, again, there are so many

12   people involved, it's just probably easier for me to do

13   this.

14              All right.  So, November 21st to supplement

15   the declarations, or supplement the evidence, including

16   the declarations, with respect to efforts to obtain

17   alternative financing, correct?

18              MR. SORKIN:  Yes.

19              THE COURT:  Okay.  Any other issues you

20   think you're going to need to -- or reserve to supplement?

21              MR. SORKIN:  I don't believe so.  Obviously

22   we will -- you know, we will need to respond to

23   objections, and that may require additional evidence, but

24   that's the only issue I can think of for now we may want

25   to raise.

1        THE COURT:  All right, and that's in the

2   nature of rebuttal evidence, which, again, Mr. Cohen has

3   no problem with, nor should he.

4        All right.  I think we're narrowing in on

5   this.  All right.  So I don't know whether there is an

6   intention to do discovery, but there will be a deadline in

7   there for that.

8        I would encourage people to keep this

9   process as streamlined as possible, and exchange

10  information with each other at a high professional level,

11  which I certainly expect this group to do.

12        Anything else we need to cover here?

13        MR. CHARLES:  Your Honor, Rob Charles again

14  for Faith Technology.

15        Does your standard order have a deadline for

16  disclosure of expert information, to the extent an expert

17  would be offered at the hearing?

18        THE COURT:  It depends on the type of

19  hearing, whether experts are anticipated, but it certainly

20  can.  All right.  So we can add an expert deadline if one

21  is not already there.

22        Mr. Sorkin, do you expect to call an expert

23  or the lender?

24        MR. SORKIN:  I don't at this time, not as

25  part of our affirmative case.  You know, I don't expect to

Page 30

1    call any witnesses besides those that submitted the

2    declarations already.

3                    I guess, you know, I don't know -- I think

4    they are providing only that testimony here.  I just --

5    you know, this is not something that we've had a chance to

6    discuss with our witnesses in advance, so I just wanted to

7    reserve rights.

8                    THE COURT:  Sure.  So, Mr. Charles, what

9    it's sounding like to me is that what you see is what you

10   get, but there is a caveat that to the extent any of the

11   declarants need to be deemed experts, or are experts on

12   any topic, then Mr. Sorkin is reserving the right to

13   declare them as such.

14                   What is your response to that?

15                   MR. CHARLES:  Thank you, your Honor, first

16   of all.

17                   And, second, it's not the identity.  The

18   notion is if there is going to be expert testimony, new

19   expert testimony offered, seeing that at some point in

20   time before hearing it in Court on that Tuesday would be

21   very helpful.

22                   THE COURT:  Well, what I heard Mr. Sorkin

23   say was the declarations are what they are, and he does

24   not at this point anticipate any additional information

25   except potentially in rebuttal, but -- so do you intend to

1   call an expert?

2            MR. CHARLES:  I doubt it deeply.

3            THE COURT:  All right.  So if I were to set

4   an expert deadline, meaning a deadline within which to

5   exchange expert reports, it seems to me would be the

6   deadline that you're speaking of, how much time in advance

7   of December 6th would be needed by each party?

8   Mr. Charles?

9            MR. CHARLES:  We don't need any time, so you

10  can pick any date you want for us to disclose experts.

11           THE COURT:  All right.  Mr. Sorkin, thoughts

12  on that?

13           MR. SORKIN:  I think I'm similarly flexible.

14           THE COURT:  All right.  Okay.  So, I will

15  throw an expert deadline in there, and if there is a

16  problem, you all can come see me to figure that out, if

17  you can't work it out between you.

18           All right.  Any other issues?

19           MR. FEINSTEIN:  Yes, your Honor,

20  Robert Feinstein.

21           Mr. Sorkin may have just answered this

22  question, but I thought it would be helpful to have an

23  understanding sooner rather than later, the identity of

24  their witnesses, and so if it's the existing declarants,

25  no problem with them supplementing their declarations on

1   November 21st, but if there are going to be new or

2   additional witnesses, it would be helpful to know their

3   identity even before that, if possible, so that

4   appropriate discovery could be sought from them if needed.

5            THE COURT:  All right.  So, my intention is

6   to establish a witness list deadline but, of course,

7   Mr. Sorkin, if you know today what your intentions are and

8   can share them with Mr. Feinstein and the rest of us,

9   that's fine, too.

10           But, again, I hate putting you on the spot,

11  but Mr. Feinstein is doing a good job of making sure he

12  knows what's going on.  So --

13           MR. SORKIN:  Understood, your Honor.

14           At this time we're not anticipating offering

15  any additional witnesses besides Mr. DiDonato and

16  Mr. Parkhill in support of the DIP.

17           THE COURT:  All right, and so the witness

18  list, Mr. Feinstein, will be a fairly standard time period

19  prior to the hearing, along with an exhibit register,

20  that's to be exchanged --

21           MR. FEINSTEIN:  Thank you.

22           THE COURT:  -- unless you're seeking some

23  kind of alternative relief.

24           No?  Okay.  All right.  Anything else?

25           (No verbal response.)

1          THE COURT:  All right, and again, I'm trying

2    to anticipate issues.  My hope for you all is that you

3    resolve this matter, okay, let me say that again, my hope

4    for you is that you resolve this matter, okay?  There are

5    lots of objections out there, I get it.  I get that the

6    relief that's being sought is relief that you see in these

7    types of cases.  So, usually they get resolved, and I'm

8    hoping that will be the case here, but if it's not

9    resolved, I just don't want a circus to occur at this

10   hearing on December 6th, so that's why I'm trying to plan

11   as much as possible ahead of time.

12          So, I will prepare the order and get it out

13   theoretically today, and you'll see it posted on the

14   docket.

15          All right.  Does that cover everything we

16   need to do here today, Mr. Sorkin?

17          MR. SORKIN:  From my standpoint it does,

18   your Honor.  Thank you.

19          THE COURT:  All right.  Anybody else wish to

20   be heard?

21          MR. GUSO:  Your Honor, just for clarity, on

22   the other matters that are being continued to

23   November 21st, is the Court preparing an order?  Did you

24   wish us to?  How do you wish to handle that?

25          THE COURT:  I would much rather you prepare

```
 1    it than the Court prepare it.  The only reason I'm
 2    preparing the December 6th order is because of the big
 3    lift for you all to get together and agree on dates, given
 4    the number of the parties.  So, if you could prepare
 5    that --
 6              MR. GUSO:  Yes, sir.  We will do it.
 7              THE COURT:  -- that would be great.
 8              All right.  Anything else?
 9              (No verbal response.)
10              THE COURT:  All right.  Terrific.  We will
11    see you then all on the 21st, or whoever shows up on the
12    21st, and then again on the 6th, and have a beautiful day,
13    stay out of the rain, and stay safe.
14              MR. GUSO:  Our thanks to you and Ms. Weldon,
15    your Honor.  Thank you.
16              THE COURT:  Our pleasure.  Thank you.
17
18
19
20              (Thereupon, the hearing was concluded.)
21
22
23
24
25
```

Page 35

1

2

3                        CERTIFICATION

4

5   STATE OF FLORIDA        :

6   COUNTY OF MIAMI-DADE   :

7

8                I, Cheryl L. Jenkins, RPR, RMR, Shorthand

9   Reporter and Notary Public in and for the State of Florida

10  at Large, do hereby certify that the foregoing proceedings

11  were taken before me at the date and place as stated in

12  the caption hereto on page 1; that the foregoing

13  computer-aided transcription is a true record of my

14  stenographic notes taken at said proceedings.

15               WITNESS my hand this 17th day of

16  November, 2022.

17

18

19        _____

20             CHERYL L. JENKINS, RPR, RMR

21           Court Reporter and Notary Public

           in and for the State of Florida at Large

22               Commission #HH 170910

                 December 27, 2025

23

24

25