UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 (PDR) |
| Debtors.[1] | (Jointly Administered) |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' STATEMENT IN SUPPORT OF DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") of Vital Pharmaceuticals, Inc. et al., the above-captioned debtors and debtors-in-possession (the "Debtors"), by and through its undersigned counsel, hereby submits this statement (the "Statement") in support of the *Debtors' Emergency Motion for Interim* and *Final Orders (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling A Final Hearing, and (VII) Granting Related Relief* [Docket No. 24] (the "DIP Motion").[2] In support of its Statement, the Committee respectfully states as follows:

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicom Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the DIP Motion, the Interim DIP Order (as defined herein), or later in this Statement, as applicable.

**PRELIMINARY STATEMENT**

1. The Proposed Final DIP Order is the culmination of months of good faith and hard fought negotiations between and among the Committee, the Debtors, and the DIP Lenders. While the Committee had expressed deep concerns, both publicly and privately, about several aspects of the originally proposed DIP Facility, the Committee has now resolved all of its open issues. From a non-governance perspective, among other things, the amended DIP Facility materially reduces the originally above-market Roll-Up, extends the Milestones and Maturity Date to allow for a more robust and thorough marketing process, modifies and narrows the scope of the DIP Lenders' liens and superpriority claims, and provides the Committee with more meaningful Challenge rights. Most critically, the DIP Facility now imposes certain corporate governance changes on the Debtors to *truly* ensure that the Board remains independent through the pendency of these Chapter 11 Cases. At this juncture, because of these changes, among others, the Committee now believes that the DIP Facility and current Board composition will no longer be an impediment to the maximization of value for unsecured creditors and all of the Debtors' other stakeholders. Therefore, the Committee supports the approval of the DIP Motion on a final basis, and respectfully requests the Court's entry of the Proposed Final DIP Order.

**BACKGROUND**

**A.    Procedural History**

2. On October 10, 2022 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Court") commencing these cases (the "Chapter 11 Cases"). No trustee or examiner has been appointed in the Chapter 11 Cases.

3. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to manage their properties and operate their businesses as debtors-in-possession.

4. On November 1, 2022, the Office of the United States Trustee (the "U.S. Trustee") appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 245], which membership was reconstituted on November 23, 2022 [Docket No. 400].

5. Information regarding the Debtors' history, business operations, capital structure, secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* (the "DiDonato Declaration") [Docket No. 26].

**B.    The DIP Motion**

6. On October 10, 2022, the Debtors filed the DIP Motion seeking interim and final approval of debtor-in-possession financing ("DIP Facility") from the DIP Lenders.

7. On October 13, 2022, the Bankruptcy Court entered the *Interim Order (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (the "Interim DIP Order") [Docket No. 120]. The Interim DIP Order authorized the Debtors to access interim financing pending the entry of a final order of up to $34,000,000. *See* Interim DIP Order ¶3.

8. Pursuant to the Interim DIP Order, a final hearing on the DIP Motion was initially scheduled for November 9, 2022. Pursuant to that certain November 9, 2022 *Order Setting Evidentiary Hearing and Establishing Related Deadlines* [Docket No. 298], the final hearing with respect to the DIP Motion was continued to December 6, 2022.

9. On November 22, 2022, the Committee filed the *Official Committee of Unsecured Creditors' Objection to Debtors' Emergency Motion for Interim* and *Final Orders (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling A Final Hearing, and (VII) Granting Related Relief* [Docket No. 413] (the "Committee DIP Objection").

10. On December 2, 2022, due to pending objections to final approval of the DIP Facility, the Debtors filed the *Debtors' Amended Agreed Ex Parte Motion to Continue December 6, 2022 Evidentiary Hearing to Consider DIP Motion and Attendant Deadlines* [Docket No. 467] (the "Agreed DIP Continuance Motion"), requesting that the Court continue the final DIP hearing from December 6, 2022 to December 19, 2022. That same day, the Court entered the *Order granting the Agreed DIP Continuance Motion* [Docket No. 469] and continued the hearing on the DIP Motion to December 19, 2022.

11. Due to continued pending objections, on December 16, 2022, the Court entered the *Order Granting Debtors' Ore Tenus Motion to Continue December 19, 2022 Final Hearing On Dip Financing Motion* [Docket No. 543], further adjourning the hearing on final approval of the DIP Motion to January 10, 2023.

12. On December 23, 2022, following extensive arms-length negotiations between and among the Committee and the DIP Lenders, the Debtors filed clean and redlined versions of the proposed *Final Order (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Docket No. 575] (the "Initial Final DIP Order"). The Initial Final DIP Order incorporates certain

modifications to the DIP Facility, resolving several of the concerns outlined in the Committee DIP Objection.

13. In the weeks that followed, the Committee continued to negotiate with the DIP Lenders and the Debtors to resolve its remaining objections to the DIP Motion, which related solely to the Debtors' corporate governance structure. Namely, the Committee was laser-focused on ensuring that the boards of directors or other equivalent governing body (collectively, the "Boards") of each of the Debtor entities were truly independent and incorporating mechanisms/guardrails in any final DIP order and the Debtors' corporate organizational documents to ensure that the composition of the Boards could not be changed for the duration of these Chapter 11 Cases. These negotiations were protracted and hard-fought, but the Committee ultimately achieved a successful outcome: truly independent Boards and new corporate safeguards to ensure their continued independence.

14. On January 9, 2023, the Debtors filed the proposed *Final Order (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Docket No. 624] (the "Proposed Final DIP Order"), which modified the Initial Final DIP Order to impose additional protections relating to the Debtors' corporate governance.

15. On January 9, 2023, the Committee withdrew the Committee DIP Objection [Docket No. 626].

**STATEMENT**

16. The Proposed Final DIP Order embodies the combined efforts of the Debtors, DIP Lenders, and the Committee to ensure that the Debtors have uninterrupted access to DIP financing

under the DIP Facility on fair and reasonable terms, which is in the best interests of the Company, the Debtors' estates, and all of their stakeholders, including general unsecured creditors.

**A.   The Revised Non-Governance Terms of the Proposed DIP Facility Adequately Address the Committee's Concerns**

17.   The non-governance resolution between the Committee, the Debtors, and the DIP Lenders, which was reached shortly after the Committee DIP Objection was filed, addresses and resolves the Committee's concerns about several key features of the DIP Facility. The Proposed Final DIP Order reflects the following changes, among others:

- <u>DIP Facility and Roll-Up</u>: The Roll-Up as proposed in the DIP Motion was reduced from approximately $355 million to $235 million on a cashless basis. The new cash component is still $100 million. The creeping Roll-Up mechanics have been eliminated.

- <u>Extension of Milestones</u>:  The DIP Lenders agreed to the addition of a new Milestone of January 13, 2023 as the deadline for the Debtors to have received at least one indication of interest regarding commitments for an Acceptable Financing and/or an acquisition of all or substantially all of the Debtors' assets. In addition, the prior January 23, 2023 Milestone, by which the Debtors must provide a third-party investor commitment to consummate a refinancing transaction for the payment in full in cash of the DIP and prepetition obligations included in the original DIP Facility, was extended to March 13, 2023.

    The following additional Milestones were also extended and/or added:

    | Milestone | Initial Deadline | New Deadline |
    |---|---|---|
    | Filing bid procedures motion | January 23, 2023 | January 27, 2023 |
    | Bid procedures hearing | February 23, 2023 | February 28, 2023 |
    | Deadline for Approval of Stalking Horse | January 23, 2023 | March 31, 2023 |
    | Deadline for Auction | April 8, 2023 | April 19, 2023 |
    | Closing on an Acceptable Financing or Consummation of a Sale Transaction | May 1, 2023 | May 17, 2023 |

- <u>Asset Sale Proceeds</u>: While the Prepetition Secured Parties will receive a paydown of 100% of the net proceeds from the sale of the Lithia Springs real property and other non-debtor owned real property parcels, the Debtors will receive at closing in

- cash from each real property parcel's sale proceeds the costs funded by the Debtors in respect of each such parcel since Petition Date.[3]

- Adequate Protection:  Subject to the passage of the Challenge Period and without a Challenge by the Committee, adequate protection in the form of cash pay interest on the Prepetition Obligations remaining after the Roll-Up (estimated to be $120 million) will be capped at the "Agreed Rate," and additional amounts will only be paid under certain limited circumstances.  The Agreed Rate means the Base Rate (currently 7%, which will continue to float) plus the applicable spread (6.5% as of December 1) plus the default rate (2%), but in any event not less than 15% in total.

- Lien Investigation:  The Committee's investigation budget was increased from $50,000 to $100,000 to investigate the claims and/or liens of the Prepetition Secured Parties under the Prepetition Credit Documents and the Debtors' Stipulations.

- Challenge Period:  The Challenge Period was extended to January 16, 2023 as to all parties.[4]

- Automatic Standing: The Creditors' Committee shall be deemed to have standing to prosecute any Challenge to the amount, validity, extent, priority, or perfection of the mortgage, security interests, and liens of the Prepetition Agent with respect to the Prepetition Collateral owned by the Debtors.[5]

- Maturity Date:  The outside maturity date of the DIP Facility was extended by two weeks to May 24, 2023.

- DIP Collateral/Superpriority Administrative Claims:  Certain litigation claims (i.e., avoidance actions and commercial tort claims) are carved out from the DIP Collateral/Superpriority Administrative Claims.

- 506(c), 552, and Equities of the Case Exception:  The Committee agreed to the requested waiver of the equitable doctrine of "marshaling", and to waivers of the rights included in Bankruptcy Code section 506(c) and section 552's equities of the case exception.

---

[3] In addition to Lithia Springs, the other non-debtor owned real property parcels include the properties in Pembroke Pines, Florida ("Sheridan A"), Pembroke Pines, Florida ("Pembroke C"), and Las Vegas, Nevada.

[4] Notwithstanding the extended Challenge Period deadline, the Proposed Final DIP Order provided that the Committee was required to deliver a statement to the DIP Lenders concerning its lien review and any potential Challenge by December 31, 2022.  The Committee has complied with this deadline and negotiations are currently ongoing by and between the Committee and the DIP Lenders to informally resolve, if possible, any Challenges.

[5] However, the Committee does not have automatic standing to assert a Challenge not expressly provided for in the above-referenced provision.

**B.     The Debtors Have Enacted the Necessary Governance Changes to Comply with the DIP Credit Agreement and to Provide Additional Assurances to the Committee that the Debtors' Governance during the Chapter 11 Cases will not Change**

18.     In addition to the economic modifications to the DIP Facility, the Committee played an integral role in convincing the Debtors to enact the governance changes required under the DIP Credit Agreement after Kathy Cole's resignation, as well as to ensure that the Debtors are run by truly independent Boards for the duration of the Chapter 11 Cases so that value is maximized for the Debtors' estates and their stakeholders.

19.     The corporate governance changes are as follows:

- Chief Transformation Officer ("CTO") Scope Expansion:  The CTO shall be vested with certain authority, which shall include, at a minimum: (i) oversight of treasury and cash management functions, including (A) preparation and maintenance of cash flow forecasts, (B) management of cash disbursements, and (C) liquidity enhancement and cost savings initiatives; (ii) oversight of purchasing functions including (A) daily monitoring and analysis of purchase orders issued the previous day, goods received, and vendor relationships, (B) review of all purchase orders issued to ensure alignment with the Approved Budget, and cancelling any purchase order the Chief Transformation Officer determines is not aligned with the Approved Budget, and (C) for purchase orders (other than for materials, excluding purchases from Crown Holdings, Inc. and affiliates) exceeding $75,000 individually or in the aggregate, approval thereof before issuance; and (iii) review of restructuring related expenses and professional fee invoices and fee statements or applications.

- Composition of the Board:  The Boards must now be composed of at least three independent directors or managers.  The current independent board members are Bob Dickinson, Stephen S. Gray and Steven G. Panagos, all of whom are acceptable to the Committee.[6]

- Organizational Documents:  The Organizational Documents (as defined in the DIP Credit Agreement) have been amended to restrict the authority of John H. Owoc, as sole shareholder, to unilaterally make any changes to composition of the Boards. In addition, the Proposed Final DIP Order includes a prohibition on the Debtors from amending, modifying, and/or waiving any provisions included in their organizational documents (i.e., any of its respective certificate or articles of incorporation, certificate or articles of formation or organization, bylaws or operating agreement, as the case may be), and the Debtors are required to provide the Committee with a certificate attesting to the governance changes.

---

[6] After vetting several independent director candidates proposed by the Debtors that the Committee deemed unacceptable, the Committee ultimately determined that Stephen S. Gray was independent.

- **Restriction of Organizational Document Amendments**: Any Final DIP Order must include a provision restricting the Debtors from amending, modifying, and/or waiving any of its Organizational Documents.

## CONCLUSION

20. In light of the foregoing, the Committee believes that the Debtors are in a much better position to run value-maximizing sale/capital raise process for the benefit of all of their stakeholders, including general unsecured creditors. As the DIP Facility is necessary to ensure a successful outcome for the Chapter 11 Cases, the Committee requests the Court grant the DIP Motion on a final basis and the relief requested therein.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on January 9, 2023 upon all interested parties registered to receive notice via this Court's CM/ECF electronic notification system.

Dated: January 9, 2023

**LOWENSTEIN SANDLER LLP**
Jeffrey L. Cohen, Esq.
Eric Chafetz, Esq.
Jordana L. Renert, Esq.
Lindsay H. Sklar, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: jrenert@lowenstein.com
Email: lsklar@lowenstein.com
     -and-
Nicole Fulfree, Esq.
Erica G. Mannix, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2502
Facsimile: (973) 597-2400
Email: nfulfree@lowenstein.com
Email: emannix@lowenstein.com

        **SEQUOR LAW, P.A.**

        By: */s/ Leyza F. Blanco*
            Leyza F. Blanco
            Florida Bar No.: 104639
            Juan J. Mendoza
            Florida Bar No.: 113587
            1111 Brickell Avenue, Suite 1250
            Miami, FL 33131
            Telephone: (305) 372-8282
            Facsimile: (305) 372-8202
            Email: lblanco@sequorlaw.com
            Email: jmendoza@sequorlaw.com

            *Counsel to the Official Committee of Unsecured Creditors*