

ORDERED in the Southern District of Florida on January 12, 2023.



Peter D. Russin, Judge
United States Bankruptcy Court

___

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| VITAL PHARMACEUTICALS, INC., et al.,[1] | ) | Case No. 22-17842 (PDR) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER GRANTING DEBTORS' AND CREDITORS
MONSTER ENERGY COMPANY AND ORANGE BANG, INC.'S JOINT AGREED
MOTION TO APPROVE AGREEMENT REGARDING
ROYALTY THAT ACCRUES POSTPETITION [ECF NO. 603]**

THIS MATTER came before the Court on January 10, 2023, at 1:30 p.m., in Fort Lauderdale, Florida, upon, *inter alia*, *Debtors' and Creditors Monster Energy Company and Orange Bang, Inc.'s Joint Agreed Motion to Approve Agreement Regarding Royalty That Accrues*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, EEC (0010); (iv) JHO Real Estate Investment, EEC (9394); (v) Quash Seltzer, EEC (6501); (vi) Rainbow Unicom Bev EEC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

*Postpetition* [ECF No. 603] (the "**Motion**").[2]  The Court having reviewed the file and the Motion, and having considered the arguments of counsel at the hearing on the Motion, and being otherwise fully advised in the premises, and for good cause, it is hereby:

**ORDERED** and **ADJUDGED**:

1. The Motion is **GRANTED**.

2. The Term Sheet, attached hereto as **Exhibit A** and as annexed to the *Notice of Filing Revised Exhibit B* [ECF No. 625], is approved in all respects.

3. The funds in the Postpetition Royalty Escrow Account (the "Funds") are hereby deemed to be held in trust for the sole benefit of the Claimants.  Once deposited in the Postpetition Royalty Escrow Account, the Funds shall not be property of the Debtors' bankruptcy estates; *provided* that the Debtors shall retain a reversionary interest in any Funds to the extent any such Funds are not required to satisfy any accrued Postpetition Royalty (the "Reversionary Interest").  Neither the DIP Lenders nor other creditors shall have any rights, claims or interests with respect to the Funds or the Postpetition Royalty Escrow Account, except with respect to the Reversionary Interest (if any).

# # #

Submitted by:
Jordi Guso, Esq.
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com
Email:  mniles@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

---

[2] All capitalized terms, unless otherwise herein defined, shall take on the meaning ascribed to them in the Motion or the Term Sheet (as applicable).

## **EXHIBIT A**

Term Sheet among Monster, Orange Bang, VPX and JHO IP Holdings regarding Royalty

1. Debtors Vital Pharmaceuticals, Inc. and JHO Intellectual Property Holdings, LLC (collectively, the "Debtors") have not made any payments of the 5% royalty (the "Royalty") that is defined in and required by the judgment entered on September 29, 2022 by the Hon. Dale S. Fischer, U.S. District Judge for the Central District of California (the "Judgment"), as set forth in the final arbitration award (the "Final Award") issued on April 4, 2022 against the Debtors and in favor of Orange Bang, Inc. ("Orange Bang") and Monster Energy Company ("Monster," and together with Orange Bang, the "Claimants"), in the case styled as *Vital Pharmaceuticals, Inc., et al. v. Orange Bang, Inc., et al.* Case No. 5:20-cv-01464 (the "Action"). Together the Claimants and the Debtors are referred to herein as the "Parties."

2. Debtors agree to create and fund on a continuing basis an escrow account (the "Postpetition Royalty Escrow Account") for the amount of the Royalty based on Net Sales that take place on and after October 10, 2022 (the "Postpetition Royalty"). The term "Net Sales" shall have the meaning ascribed to it in the Final Award at pages 152 through 156.

3. Subject to the limitation set forth in paragraph 4, the funds in the Postpetition Royalty Escrow Account (the "Funds") are to be held in trust for the sole benefit of the Claimants, and the order approving this Agreement shall so provide.

4. Once deposited in the Postpetition Royalty Escrow Account, the Funds shall not be property of the Debtors' bankruptcy estates; *provided that* the Debtors shall retain a reversionary interest in any Funds to the extent any such Funds are not required to satisfy any accrued Postpetition Royalty (the "Reversionary Interest"). Neither the DIP Lenders nor other creditors shall have any rights, claims or interests with respect to the Funds or the Postpetition Royalty Escrow Account, except with respect to the Reversionary Interest (if any).

5. The Funds shall be used solely to pay the Claimants on account of the Postpetition Royalty or revert to the bankruptcy estate (as applicable), and once the Postpetition Royalty is satisfied in full, any remaining Funds shall be remitted to the Debtors in respect of the Reversionary Interest, in each case upon further order of the Bankruptcy Court; *provided*, that notwithstanding the foregoing, Funds shall be disbursed from the Postpetition Royalty Escrow Account without further court order as follows: (i) on the quarterly deadline for the Claimants to receive payment of the Royalty pursuant to the Final Award (i.e., 45 days after the close of each financial quarter) (the "Payment Deadline"), the Postpetition Royalty for the financial quarter to which such Payment Deadline relates shall be disbursed from escrow to Claimants; and (ii) to the bankruptcy estate pursuant to the "true up" procedure described in paragraphs 8 and 9 of this Agreement, in the event, and solely to the extent, that it is determined through such "true up" procedure that the Debtors overfunded the Postpetition Royalty Escrow Account during the relevant period.

11841135-1

6. The Debtors presently estimate that the Postpetition Royalty accrues at a rate of approximately $800,000 every two weeks. The Parties shall not be bound by that amount going forward and reserve all rights to audit, contest and revise the estimate.

7. On or before (a) three business days of entry of a final order on the DIP Motion that budgets for the funding of the Postpetition Royalty Escrow Account or (ii) one business day after the Postpetition Royalty Escrow Account is established and capable of being funded, whichever is later (the later of (a) and (b) being hereinafter referred to as the "Initial Funding Date"), the Debtors shall fund the Postpetition Royalty Escrow Account with the amount of the Postpetition Royalty that has accrued from October 10, 2022 to Initial Funding Date, based on (i) for the period from and including October 10, 2022 through December 31, 2022, actual postpetition Net Sales for October, November and December 2022, and (ii) for the period from January 1, 2023 through the Initial Funding Date, the initial estimate set forth in paragraph 6 above. Thereafter, the Debtors shall fund the Postpetition Royalty Escrow Account going forward with $800,000 on the first and fifteenth day of every month (the "Recurring Deposit"). Debtors shall provide the Claimants with evidence of such funding within one business day after the deadline for such funding. Without limiting the generality of paragraph 16 or modifying the Parties' rights thereunder, if the Initial Funding Date has not occurred by January 13, 2023 (or such later date on which the Parties may agree in writing) (the "Initial Funding Outside Date"), either party may terminate this Agreement upon written notice (which may be by electronic mail) to the other party.

8. On or before February 14, 2023, the Debtors agree to deliver an accounting (the "First Accounting") of the Postpetition Royalty determination for Net Sales made in the prior quarter to the Claimants, Truist Bank, as administrative agent under that certain Superpriority Secured Debtor-in-Possession Credit Agreement, as may be amended, entered into with the Debtors (in such capacity, the "DIP Agent"), and the Official Committee of Unsecured Creditors (the "Committee") Within ten days of the delivery of the First Accounting to the Claimants, the Parties shall meet and confer in good faith in an attempt to "true up" the amount of Funds deposited into the Postpetition Royalty Escrow Account with the actual amount of the Postpetition Royalty for the prior quarter and to revise the amount of the Recurring Deposit going forward to reflect the actual Postpetition Royalty for the financial quarter ending December 31, 2022.

9. Beginning in February 2023, on account of the Postpetition Royalty payable for January 2023 and thereafter, no later than the 20th day of each month, the Debtors agree to deliver to the Claimants, the DIP Agent, and the Committee an accounting (the "Subsequent Accounting") of the Postpetition Royalty determination for Net Sales made in the prior month. Within ten days of the delivery of the Subsequent Accounting to the Claimants, the Parties shall meet and confer in good faith in an attempt to "true up" the amount of Funds deposited into the Postpetition Royalty Escrow Account with the actual amount of the Postpetition Royalty for the prior month.

10. If the Parties are unable to resolve all issues during the meet and confer procedures contemplated herein, including any requests to adjust the amount of the Recurring

2

11841135-1

Deposit, then any of the Parties shall have the right to seek further order of the Bankruptcy Court. The Parties agree that without written agreement of the Parties or further order of the Bankruptcy Court, the Recurring Deposit shall not be altered. The Debtors' agreement to provide the Accounting shall in no way alter the reporting, audit and inspection rights provided for in the Final Award, which remain in full force and effect. The Debtors acknowledge and agree that the Claimants' right to demand the Accounting and exercise their audit and inspection rights pursuant to the Final Award and this agreement shall not be prohibited or enjoined by the automatic stay under section 362 of the Bankruptcy Code.

11. This Agreement is made without prejudice to any and all rights, claims and interests the Claimants have (and defenses of the Debtors) with respect to the Royalty based on sales that took place before October 10, 2022, including, but not limited to, claims for accrued interest as provided for in the Final Award (the "Prepetition Royalty").

12. By the Initial Funding Date, the Debtors agree to disclose to the Claimants and the DIP Agent the amount of the Prepetition Royalty and provide an accounting of the calculation thereof, which shall be subject to the reporting, audit and inspection rights set forth in the Final Award.

13. This Agreement may be amended only by written agreement among the Parties or an order of the Bankruptcy Court; *provided that* any amendment that affects the Reversionary Interest, or the DIP Agent's and Committee's information rights, shall also require the written agreement of the DIP Agent and the Committee, as applicable.

14. This Agreement is an interim agreement between the Parties given Debtors' filing for protection under Chapter 11 of the Bankruptcy Code. This Agreement does not waive, alter, amend, or modify, in any respect, the Judgment or Final Award or any of the Parties' rights and/or obligations under the Judgment and Final Award, including, but not limited to, any right of Claimants to enforce and to provide written notice of the Debtors' failure to pay the Royalty or take any action or steps as a result of such failure (or any rights of the Debtors arising from the provision of such written notice). The failure of any of the Parties to exercise any right, power, or remedy provided under the Judgment, the Final Award, or otherwise available in respect of the Judgment or Final Award, or to insist upon compliance by any other party with its obligations under the Judgment or Final Award, shall not constitute a waiver by such party of its right to exercise any such or other right, power, or remedy or to demand or enforce such compliance.

15. The Parties reserve all rights to terminate this Agreement going forward upon written notice, which may be by email, and such written notice will effect termination immediately upon transmission. In the event that this Agreement is terminated, all Funds in the Postpetition Royalty Escrow Account are to remain in the Postpetition Royalty Escrow Account until further order of the Bankruptcy Court. Moreover, if the Debtors terminate this Agreement, they nonetheless shall be required to deposit into the Postpetition Royalty Escrow Account all amounts that were due and unpaid under this Agreement prior to the effective date of such termination.

3

11841135-1

16. The Parties reserve all rights to file a motion with the Bankruptcy Court to alter this Agreement, including but not limited to: (i) modifying the Recurring Deposit going forward, and (ii) ordering the payment of the Prepetition Royalty and/or Postpetition Royalty to the Claimants or the Debtors.

17. The Parties make this Agreement with a full reservation of rights with respect to the Action, the Judgment, the Final Award, the Prepetition Royalty, and Postpetition Royalty, including, but not limited to, (i) the Debtors' right to seek and/or obtain, as an incident of appeal, the Reversionary Interest or any other rights set forth above or under applicable law, including with respect to any amounts disbursed from the Postpetition Royalty Escrow Account pursuant to paragraph 5 above, and (ii) any right of Claimants to compel payment of the Royalty prior to the disposition of any appeal and/or to seek an injunction against the Debtors in consequence of the Debtors' failure to comply fully or timely with the Judgment or Final Award and/or seek any other relief.

18. Nothing in this Agreement shall alter any rights the estates may have against any recipient of post-petition funds whether such funds were paid within or outside of the estates, including, in the event the estates becomes administratively insolvent.