UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:                                                                    Case No.: 22-17842-PDR
                                                                          Chapter 11
VITAL PHARMACEUTICALS, INC.,
d/b/a Bang Energy
d/b/a/ VPX Sports
d/b/a VPX Redline d/b/a Redline
d/b/a Quash Life Lift

          Debtor.
_____/

**VERIFIED MOTION FOR RELIEF FROM THE AUTOMATIC STAY,
OR IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION
(U.S. BANK NATIONAL ASSOCIATION d/b/a U.S. BANK EQUIPMENT FINANCE)**

U.S. BANK NATIONAL ASSOCIATION d/b/a U.S. BANK EQUIPMENT FINANCE, (hereinafter referred to as "U.S. BANK" or "Creditor"), by and through its undersigned counsel, respectfully moves this Court for relief from the automatic stay, or alternatively, for adequate protection, and in support of its Motion, states as follows:

1. This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1334(b), and 157(a) and 362(d) of Title 11, United States Code (hereinafter referred to as the "Code"). Furthermore, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

2. That on or about October 10, 2022, the Debtor, VITAL PHARMACEUTICALS, INC., *et al* ("Debtor") filed for relief under Chapter 11 of the United States Bankruptcy Code.

3. That on or about December 15, 2020, the Debtor and U.S. BANK entered into that certain Lease Agreement ("Lease" or "Lease Agreement")*,* whereby the said Debtor agreed to pay thirty-six (36) consecutive monthly payments in the amount of $2,570.66, including taxes, for the lease or otherwise financing of:

**One (1) 2020 YALE NR035DB FORKLIFT
One (1) 2020 YALE NR035DB FORKLIFT**

> Together with all replacement, parts, repairs, additions, accessions and accessories incorporated therein or affixed or attached thereto and any and all proceeds of the foregoing, including without limitation, insurance recoveries

(herein "Equipment").

A true and correct copy of the Lease and attachments thereto, including Addendum and Delivery and Acceptance Certificate, is attached hereto and incorporated herein by reference as **Composite Exhibit "A"**, including attachments thereto.

4. As further security under the Lease, U.S. BANK filed a UCC Financing Statement with the state of Florida. A true and correct copy of the UCC Financial Statement is attached hereto and incorporated herein by reference as **Exhibit "B"**.

5. Creditor, U.S. BANK, is the owner and holder of the Lease Agreement and holds a perfected security interest in the Equipment.

6. The Debtor defaulted under the terms of the Lease Agreement by failing to make the full monthly payment due on **September 15, 2022**, and all subsequent payments.

7. The Debtor has made no offer of adequate protection to Creditor, U.S. BANK, regarding Creditor's interest in the Equipment.

8. Creditor, U.S. BANK, has also been unable to inspect and verify the condition of the Equipment, or verify insurance thereon.

9. The Debtor has no equity in the subject Equipment. As of the date of the petition filing, the total amount due and owing is approximately **$41,688.94**, plus accrued interest and other contract charges; and the fair market value of Leased Equipment, upon information and belief, at the time of the bankruptcy petition was **$39,900.00**.

10. Section 362(d)(1) of the Bankruptcy Code provides that the Court shall, upon motion, grant relief from the automatic stay for cause, which include the lack of adequate

protection of an interest in property, of the moving party.

11. Further, section 362(d)(2) of the Bankruptcy Code provides that the Court shall grant relief from the automatic stay when the debtor lacks equity in the bankruptcy estate property and the property is not necessary to an effective reorganization.

12. The Debtor is in actual or constructive possession of all the Equipment, thereby subjecting the Equipment to continued wear, tear, and depreciation. The Equipment is diminishing and decreasing in value and continue to do so by virtue of the continued use of the Equipment by the Debtor without payments to Creditor.

13. U.S. BANK lacks adequate protection for its security interest in the Equipment.

14. The Equipment is not necessary for an effective reorganization.

15. Accordingly, good cause exists to terminate the automatic stay imposed under Section 362 of the Bankruptcy Code, so as to allow Creditor, U.S. BANK, to enforce its *in rem* rights and remedies in and to the Collateral.

16. Alternatively, Creditor, U.S. BANK, is entitled to adequate protection.

17. Creditor, U.S. BANK requests that this Court waive the requirement of Bankruptcy Rule 4001(a)(3), thereby allowing an Order to be effective upon this Honorable Court's execution thereof.

18. Creditor, U.S. BANK, has employed the firm of Emanuel & Zwiebel, PLLC to represent it in this action and has obligated itself to pay a fee. Debtor has agreed to pay such fees pursuant to the terms of the Lease Agreement.

WHEREFORE, Creditor, U.S. BANK NATIONAL ASSOCIATION d/b/a U.S. BANK EQUIPMENT FINANCE, prays for the entry of an Order terminating the automatic stay imposed under Section 362 (a) of the Bankruptcy Code so as to allow it to enforce *in rem* its security interest in the Leased Equipment and dispose of same accordingly, or in the alternative, continuing the stay

on the condition that adequate protection be provided to Creditor (and grant Creditor the ability to inspect the Leased Equipment and require proof of insurance be provided to Creditor), and waiver of the requirement of Bankruptcy Rule 4001(a)(3), and grant any such other and further relief that this Honorable Court deems just and equitable.

### **VERIFICATION / WRITTEN DECLARATION**

I, Glenda A. Werkman, of U.S. BANK NATIONAL ASSOCIATION d/b/a U.S. BANK EQUIPMENT FINANCE ("Plaintiff" or "U.S. BANK"), deposes and says:

1. I am employed by Plaintiff, U.S. BANK, as Senior Loss Mitigation Specialist. I am over the age of twenty-one (21) and am authorized to execute this Verification on behalf thereof.

2. I have read the foregoing VERIFIED MOTION FOR RELIEF FROM THE AUTOMATIC STAY, OR IN THE ALTERNATIVE, FOR ADEQUATE PROTECTION ("Motion"), and I have personal knowledge of the facts set forth therein, or of these facts as they appear in the business records, reports, memoranda, and data compilations of Plaintiff, U.S. BANK, made at or near the time of the events described by, or from information transmitted by, a person(s) with knowledge of the events described, whose regular practice it was to make and keep such records in the ordinary course of the regularly conducted business activities of U.S. BANK; that I am one of the persons with custody of such records; that I am familiar with the methods, preparation, and identity of such records; and that I routinely rely on such records in the usual course of my business and the business of U.S. BANK. In connection with making this Verification, I have acquired personal knowledge of the matters stated herein by examining these business records.

3. Under penalty of perjury, I declare that I have read the foregoing Motion and that the facts stated in it are true and correct.

FURTHER AFFIANT SAYETH NAUGHT

*Glenda Werkman*
GLENDA A. WERKMAN
Officer | Senior Loss Mitigation Specialist
U.S. Bank National Association d/b/a
U.S. Bank Equipment Finance
Date: 01.12.2023

-4-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this __13th__ day of January, 2023 the foregoing was filed via CM/ECF system in the United States Bankruptcy Court, Southern District of Florida, and that a true and correct was furnished to the parties listed below in the manner indicated.

I FURTHER CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and am in compliance with the additional qualifications to practice in this Court, as set forth in Local Rule 2090-1(A).

*/s/ Ronald M. Emanuel*
Ronald M. Emanuel, Esq.
Fla. Bar No.: 746932
ron.emanuel@emzwlaw.com
**EMANUEL & ZWIEBEL, PLLC**
7900 Peters Road
Building B, Suite 100
Plantation, Florida 33324
Telephone: (954) 472-7500
*Attorneys for Creditor, U.S. Bank National Association*

**Via CM/ECF**

Jordi Guso, Esq.
Andrew Sorkin, Esq.
Jeramy D. Webb, Esq.
J. Steven Wilkes, Office of the United States Region 21, USDOJ
United States Trustee
Claims Agent – Stretto
Creditor Committee – c/o Clint E. Pyle and Leyza F. Blanco, Esq. and Juan J. Mendoza, Esq. and Fernando J. Menendez, Esq.

All Rule 1007-2 parties on the attached matrix designated to receive notice via CM/ECF.

**Via U.S. Mail**

Vital Pharmaceuticals, Inc.
1600 N. Park Drive
Weston, FL 33326

All Rule 1007-2 parties on the attached matrix not designated to receive notice via CM/ECF.



**Lease Agreement**

# EQUIPMENT FINANCE

**AGREEMENT NO.** ▇▇▇0182

Send Account Inquiries to: 1310 Madrid Street · Marshall, MN 56258
Send Payments to: PO Box 790448 · St. Louis MO 63179-0448

The words "Lessee," "you" and "your" refer to Customer. The words "Lessor," "we," "us" and "our" refer to U.S. Bank Equipment Finance, a division of U.S. Bank National Association ("U.S. Bank Equipment Finance").

## CUSTOMER INFORMATION

| FULL LEGAL NAME | STREET ADDRESS |
|---|---|
| VITAL PHARMACEUTICALS INC | 1600 N PARK DRIVE |

| CITY | STATE | ZIP | PHONE | FAX |
|---|---|---|---|---|
| WESTIN, FL 33326 | | | (954) 641-0570 | (954) 641-4960 |

| EQUIPMENT LOCATION (IF DIFFERENT FROM ABOVE) | E-MAIL |
|---|---|
| 1635 S 43RD AVE, PHOENIX, AZ 85009 | |

| BILLING STREET ADDRESS (IF DIFFERENT FROM CUSTOMER ADDRESS ABOVE) | CITY | STATE | ZIP |
|---|---|---|---|
| 1600 N PARK DRIVE | WESTIN, FL 33326 | | |

## EQUIPMENT DESCRIPTION

1-2020 YALE NR035DB FORKLIFT
1-2020 YALE NR035DB FORKLIFT

together with all replacements, parts, repairs, additions, and accessions incorporated therein or attached thereto and any and all proceeds of the foregoing, including, without limitation, insurance recoveries

☐ See attached Schedule A

## PAYMENT & TERM INFORMATION

Advance Payment: $0.00
(plus applicable taxes)
If you are exempt from sales tax, attach your certificate.

**36** Payments of **$2349.38**
(plus applicable taxes)
The payment ("Payment") period is monthly unless otherwise indicated.

## END OF TERM OPTIONS

You may choose one of the following options, which you may exercise at the end of the term, provided that no event of default under this Agreement has occurred and is continuing. If no box is checked, Fair Market Value will be your end of term option. Fair Market Value means the value of the Equipment in continued use.

☐ Purchase all of the Equipment for its Fair Market Value, renew this Agreement or return the Equipment
☒ Purchase all of the Equipment for $1.00. At the end of the term, title to the Equipment will automatically transfer to you, AS IS, WHERE IS, with no warranties of any kind.

**Upon acceptance of the Equipment, THIS AGREEMENT IS NONCANCELABLE, IRREVOCABLE AND CANNOT BE TERMINATED.**

1. **AGREEMENT:** You agree to lease from us the goods ("Equipment") and, if applicable, finance certain software, software license(s), software components and/or professional services in connection with software (collectively, the "Financed Items," which are included in the word "Equipment" unless separately stated) from software licensor(s) and/or supplier(s) (collectively, the "Supplier"), all as described in this Agreement and in any attached schedule, addendum or amendment hereto ("Agreement"). You represent and warrant that you will use the Equipment for business purposes only. You agree to all of the terms and conditions contained in this Agreement, which, with the acceptance certification, is the entire agreement between you and us regarding the Equipment and which supersedes any purchase order, invoice, request for proposal, response or other related document. This Agreement becomes valid upon execution by us. The term shall start on the date we pay Supplier. If no advance payment is required, the first Payment is due 30 days after the start of this Agreement and each Payment thereafter shall be due on the same day of each month (the "Scheduled Due Date") unless a different due date is mutually agreed to by us and you. If the parties agree to adjust the Payment due date (an "Adjusted Due Date"), in addition to all Payments and other amounts due hereunder, you will pay an interim payment in an amount equal to 1/30th of the Payment, multiplied by the number of days between the Scheduled Due Date and the Adjusted Due Date. If any provision of this Agreement is declared unenforceable, the other provisions herein shall remain in full force and effect to the fullest extent permitted by law.

2. **OWNERSHIP; PAYMENTS; TAXES AND FEES:** We own the Equipment, excluding any Financed Items. Ownership of any Financed Items shall remain with Supplier thereof. You will pay all Payments, as adjusted, when due, without notice or demand and without abatement, set-off, counterclaim or deduction of any amount whatsoever. If any part of a Payment is more than 5 days late, you agree to pay a late charge of 10% of the Payment which is late or, if less, the maximum charge allowed by law. The Payment may be adjusted proportionately upward or downward: (i) by up to 10% to accommodate changes in the Equipment cost; (ii) if the shipping charges or taxes differ from the estimate given to you; (iii) to comply with the tax laws of the state in which the Equipment is located; and/or (iv) if a down payment or deposit is deducted. You shall pay all applicable taxes, assessments and penalties related to this Agreement, whether levied or assessed on this Agreement, on us (except on our income) or you, or on the Equipment, its lease, sale, ownership, possession, use or operation. If we pay any taxes or other expenses that are owed hereunder, you agree to reimburse us when we request. You agree to pay us a yearly processing fee of up to $50 for personal property taxes we pay related to the Equipment. You agree to pay us a fee of up to $50 for filing, searching and/or titling costs required under the Uniform Commercial Code ("UCC") or other laws. You agree to pay us an origination fee of $0.00 for all closing costs. We may apply all sums received from you to any amounts due and owed to us under the terms of this Agreement. If for any reason your check is returned for insufficient funds, you will pay us a service charge of $30 or, if less, the maximum charge allowed by law. We may make a profit on any fees, estimated tax payments and other charges paid under this Agreement.

## CUSTOMER ACCEPTANCE

BY SIGNING BELOW OR AUTHENTICATING AN ELECTRONIC RECORD HEREOF, YOU CERTIFY THAT YOU HAVE REVIEWED AND DO AGREE TO ALL TERMS AND CONDITIONS OF THIS AGREEMENT ON THIS PAGE AND ON PAGE 2 ATTACHED HERETO.

| VITAL PHARMACEUTICALS INC | | CEO |
|---|---|---|
| CUSTOMER (AS REFERENCED ABOVE) | SIGNATURE | TITLE |
| ▇▇▇▇8430 | John H. Owoc | 7/15/2020 |
| FEDERAL TAX IDENTIFICATION NUMBER | PRINT NAME | DATED |

## LESSOR ACCEPTANCE

| U.S. Bank Equipment Finance | | | 12/15/2020 |
|---|---|---|---|
| LESSOR | SIGNATURE | Authorized Signatory / TITLE | DATED |

11019 (2017) REV 03/19

**COMPOSITE EXHIBIT "A"**

3. **EQUIPMENT; SECURITY INTEREST:** At your expense, you shall keep the Equipment: (i) in good repair, condition and working order, in compliance with applicable laws, ordinances and manufacturers' and regulatory standards; (ii) free and clear of all liens and claims; and (iii) at your address shown on page 1, and you agree not to move it unless we agree in writing. You grant us a security interest in the Equipment to secure all amounts you owe us under this Agreement or any other agreement with us ("Other Agreements"), except amounts under Other Agreements which are secured by land and/or buildings. You authorize and ratify our filing of any financing statement(s) and the naming of us on any vehicle title(s) to show our interest. You will not change your name, state of organization, headquarters or residence without providing prior written notice to us. You will notify us within 30 days if your state of organization revokes or terminates your existence.

4. **INSURANCE; INDEMNITY; LOSS OR DAMAGE:** You agree to keep the Equipment fully insured against all risk, with us named as lender's loss payee, in an amount not less than the full replacement value of the Equipment until this Agreement is terminated. You also agree to maintain commercial general liability insurance with such coverage and from such insurance carrier as shall be satisfactory to us and to include us as an additional insured on the policy. You will provide written notice to us within 10 days of any modification or cancellation of your insurance policy(s). You agree to provide us certificates or other evidence of insurance acceptable to us. We are not responsible for, and you agree to hold us harmless and reimburse us for and to defend on our behalf against, any claim for any loss, expense, liability or injury caused by or in any way related to delivery, installation, possession, ownership, leasing, manufacture, use, condition, inspection, removal, return or storage of the Equipment. All indemnities will survive the expiration or termination of this Agreement. You are responsible for any loss, theft, destruction or damage to the Equipment ("Loss"), regardless of cause, whether or not insured. You agree to promptly notify us in writing of any Loss. If a Loss occurs, you will promptly pay to us the unpaid balance of this Agreement, including any future Payments to the end of the term plus the anticipated residual value of the Equipment, both discounted to present value at 2%. Any proceeds of insurance will be paid to us and credited against the Loss. You authorize us to sign on your behalf and appoint us as your attorney-in-fact to endorse in your name any insurance drafts or checks issued due to a Loss.

5. **ASSIGNMENT: YOU SHALL NOT SELL, TRANSFER, ASSIGN, ENCUMBER, PLEDGE OR SUBLEASE THE EQUIPMENT OR THIS AGREEMENT, without our prior written consent.** You shall not consolidate or merge with or into any other entity, distribute, sell or dispose of all or any substantial portion of your assets other than in the ordinary course of business, without our prior written consent, and the surviving, or successor entity or the transferee of such assets, as the case may be, shall assume all of your obligations under this Agreement by a written instrument acceptable to us. No event shall occur which causes or results in a transfer of majority ownership of you while any obligations are outstanding hereunder. We may sell, assign, or transfer this Agreement without notice to or consent from you. You agree that if we sell, assign or transfer this Agreement, our assignee will have the same rights and benefits that we have now and will not have to perform any of our obligations. **You agree that our assignee will not be subject to any claims, defenses, or offsets that you may have against us.** This Agreement shall be binding on and inure to the benefit of the parties hereto and their respective successors and assigns.

6. **DEFAULT AND REMEDIES:** You will be in default if: (i) you do not pay any Payment or other sum due to us or you fail to perform in accordance with the covenants, terms and conditions of this Agreement or any other agreement with us or any of our affiliates or fail to perform or pay under any material agreement with any other entity; (ii) you make or have made any false statement or misrepresentation to us; (iii) you or any guarantor dies, dissolves, liquidates, terminates existence or is in bankruptcy; (iv) you or any guarantor suffers a material adverse change in its financial, business or operating condition; or (v) any guarantor defaults under any guaranty for this Agreement. If you are ever in default, at our option, we can cancel this Agreement and require that you pay the unpaid balance of this Agreement, including any future Payments to the end of term plus the anticipated residual value of the Equipment, both discounted to present value at 2%. We may recover default interest on any unpaid amount at the rate of 12% per year. Concurrently and cumulatively, we may also use any remedies available to us under the UCC and any other law and we may require that you immediately stop using any Financed Items. If we take possession of the Equipment, you agree to pay the costs of repossession, moving, storage, repair and sale. The net proceeds of the sale of any Equipment will be credited against what you owe us under this Agreement and you will be responsible for any deficiency. In the event of any dispute or enforcement of our rights under this Agreement or any related agreement, you agree to pay our reasonable attorneys' fees (including any incurred before or at trial, on appeal or in any other proceeding), actual court costs and any other collection costs, including any collection agency fee. WE SHALL NOT BE RESPONSIBLE TO PAY YOU ANY CONSEQUENTIAL, INDIRECT OR INCIDENTAL DAMAGES FOR ANY DEFAULT, ACT OR OMISSION BY ANYONE. Any delay or failure to enforce our rights under this Agreement will not prevent us from enforcing any rights at a later time. You agree that this Agreement is a "Finance Lease" as defined by Article 2A of the UCC and your rights and remedies are governed exclusively by this Agreement. You waive all rights under sections 2A-508 through 522 of the UCC. If interest is charged or collected in excess of the maximum lawful rate, we will refund such excess to you, which will be your sole remedy.

7. **INSPECTIONS AND REPORTS:** We have the right, at any reasonable time, to inspect the Equipment and any documents relating to its installation, use, maintenance and repair. Within 30 days after our request (or such longer period as provided herein), you will deliver all requested information (including tax returns) which we deem reasonably necessary to determine your current financial condition and faithful performance of the terms hereof. This may include: (i) compiled, reviewed or audited annual financial statements (including, without limitation, a balance sheet, a statement of income, a statement of cash flow, a statement of changes in equity and notes to financial statements) within 120 days after your fiscal year end; and (ii) management-prepared interim financial statements within 45 days after the requested reporting period(s). Annual statements shall set forth the corresponding figures for the prior fiscal year in comparative form, all in reasonable detail without any qualification or exception deemed material by us. Unless otherwise accepted by us, each financial statement shall be prepared in accordance with generally accepted accounting principles consistently applied and shall fairly and accurately present your financial condition and results of operations for the period to which it pertains. You authorize us to obtain credit bureau reports for credit and collection purposes and to share them with our affiliates and agents.

8. **END OF TERM:** Unless the purchase option is _____ $1.00, at the end of the initial term, this Agreement shall renew for successive 3-month renewal term(s) under the same terms hereof unless you send us written notice between 60 and 120 days before the end of the initial term or at least 30 days before the end of any renewal term that you want to purchase or return the Equipment, and you timely purchase or return the Equipment. You shall continue making Payments and paying all other amounts due until the Equipment is purchased or returned. As long as you have given us the required written notice, if you do not purchase the Equipment, you will return all of the Equipment and all related manuals and use and maintenance records to a location we specify, at your expense, in retail re-saleable condition, full working order and complete repair. YOU ARE SOLELY RESPONSIBLE FOR REMOVING ANY DATA THAT MAY RESIDE IN THE EQUIPMENT, INCLUDING BUT NOT LIMITED TO HARD DRIVES, DISK DRIVES OR ANY OTHER FORM OF MEMORY.

9. **USA PATRIOT ACT NOTICE; ANTI-TERRORISM AND ANTI-CORRUPTION COMPLIANCE:** To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each customer who opens an account. When you enter into a transaction with us, we ask for your business name, address and other information that will allow us to identify you. We may also ask to see other documents that substantiate your business identity. You and any other person who you control, own a controlling interest in, or who owns a controlling interest in or otherwise controls you in any manner ("Representatives") are and will remain in full compliance with all laws, regulations and government guidance concerning foreign asset control, trade sanctions, embargoes, and the prevention and detection of money laundering, bribery, corruption, and terrorism, and neither you nor any of your Representatives is or will be listed in any Sanctions-related list of designated persons maintained by the U.S. Department of Treasury's Office of Foreign Assets Control or successor or the U.S. Department of State. You shall, and shall cause any Representative to, provide such information and take such actions as are reasonably requested by us in order to assist us in maintaining compliance with anti-money laundering laws and regulations.

10. **MISCELLANEOUS:** Unless otherwise stated in an addendum hereto, the parties agree that: (i) this Agreement and any related documents hereto may be authenticated by electronic means; (ii) the "original" of this Agreement shall be the copy that bears your manual, facsimile, scanned or electronic signature and that also bears our manually or electronically signed signature and is held or controlled by us; and (iii) to the extent this Agreement constitutes chattel paper (as defined by the UCC), a security interest may only be created in the original. You agree not to raise as a defense to the enforcement of this Agreement or any related documents that you or we executed or authenticated such documents by electronic or digital means or that you used facsimile or other electronic means to transmit your signature on such documents. Notwithstanding anything to the contrary herein, we reserve the right to require you to sign this Agreement or any related documents hereto manually and to send to us the manually signed, duly executed documents via overnight courier on the same day that you send us the facsimile, scanned or electronic transmission of the documents. You agree to execute any further documents that we may request to carry out the intents and purposes of this Agreement. Whenever our consent is required, we may withhold or condition such consent in our sole discretion, except as otherwise expressly stated herein. From time to time, Supplier may extend to us payment terms for Equipment financed under this Agreement that are more favorable than what has been quoted to you or the general public, and we may provide Supplier information regarding this Agreement if Supplier has assigned or referred it to us. All notices shall be mailed or delivered by facsimile transmission or overnight courier to the respective parties at the addresses shown on this Agreement or such other address as a party may provide in writing from time to time. By providing us with a telephone number for a cellular phone or other wireless device, including a number that you later convert to a cellular number, you are expressly consenting to receiving communications, including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system, from us and our affiliates and agents at that number. This express consent applies to each such telephone number that you provide to us now or in the future and permits such calls for non-marketing purposes. Calls and messages may incur access fees from your cellular provider. You authorize us to make non-material amendments (including completing and conforming the description of the Equipment) on any document in connection with this Agreement. Unless stated otherwise herein, all other modifications to this Agreement must be in writing and signed by each party or in a duly authenticated electronic record. This Agreement may not be modified by course of performance.

11. **WARRANTY DISCLAIMERS:** WE ARE LEASING THE EQUIPMENT TO YOU "AS-IS." YOU HAVE SELECTED SUPPLIER AND THE EQUIPMENT BASED UPON YOUR OWN JUDGMENT. WE DO NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE EQUIPMENT. SUPPLIER IS NOT AN AGENT OF OURS AND WE ARE NOT AN AGENT OF SUPPLIER, AND NOTHING SUPPLIER STATES OR DOES CAN AFFECT YOUR OBLIGATIONS HEREUNDER. YOU WILL MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST ANY SUPPLIER, LICENSOR OR MANUFACTURER, AND ANY FAILURE OF A SERVICE PROVIDER TO PROVIDE SERVICES WILL NOT EXCUSE YOUR OBLIGATIONS TO US UNDER THIS AGREEMENT. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, OF, AND TAKE ABSOLUTELY NO RESPONSIBILITY FOR, MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, CONDITION, QUALITY, ADEQUACY, INSTALLATION, PERFORMANCE, SAFETY, TITLE, DATA ACCURACY, SYSTEM INTEGRATION, FUNCTION, DEFECTS, INFRINGEMENT OR ANY OTHER ISSUE IN REGARD TO THE EQUIPMENT, ANY ASSOCIATED SOFTWARE AND ANY FINANCED ITEMS. SO LONG AS YOU ARE NOT IN DEFAULT UNDER THIS AGREEMENT, WE ASSIGN TO YOU ANY WARRANTIES IN THE EQUIPMENT GIVEN TO US. YOU ACKNOWLEDGE THAT THE EQUIPMENT IS EXTREMELY HAZARDOUS WHEN NOT ASSEMBLED, USED OR DISMANTLED PROPERLY. YOU ASSUME ALL RISKS ASSOCIATED WITH THE USE OF SUCH EQUIPMENT.

12. **LAW; JURY WAIVER:** This Agreement will be governed by and construed in accordance with Minnesota law. You consent to jurisdiction and venue of any state or federal court in Minnesota and waive the defense of inconvenient forum. For any action arising out of or relating to this Agreement or the Equipment, BOTH PARTIES WAIVE ALL RIGHTS TO A TRIAL BY JURY.

**X CUSTOMER INITIALS:** _____



**TERMS AND CONDITIONS ADDENDUM**

**AGREEMENT #**
██0182

Addendum to Agreement # ██0182 and any future supplements/schedules thereto, between **VITAL PHARMACEUTICALS, INC.**, as Customer and U.S. Bank Equipment Finance, a division of U.S. Bank National Association ("U.S. Bank Equipment Finance"), as Lessor/Secured Party ("Agreement"). The words "you" and "your" refer to Customer. The words "we," "us" and "our" refer to Lessor/Secured Party.

The parties wish to amend the above-referenced Agreement as follows:

Paragraph 6. DEFAULT AND REMEDIES:
Sentence 7 has been modified to read as follows:
"In the event of any dispute or enforcement of rights under this Agreement or any related agreement, the non-prevailing party shall pay the prevailing party's reasonable attorney's fees (including any incurred before or at trial, on appeal or in any other proceeding), actual court costs and any other collection costs, including any collection agency fee."

Paragraph 10. MISCELLANEOUS:
Sentence 5 has been modified to read as follows:
"Whenever our consent is required, we may withhold or condition such consent in our reasonable discretion, except as otherwise expressly stated herein."

By signing this Addendum, Customer acknowledges the above changes to the Agreement and authorizes Lessor/Secured Party to make such changes. In the event of any conflict between this Addendum and the Agreement, this Addendum shall prevail. In all other respects, the terms and conditions of the Agreement remain in full force and effect and remain binding on Customer.

| U.S. Bank Equipment Finance | VITAL PHARMACEUTICALS, INC. |
|---|---|
| Lessor/Secured Party | Customer |
| Signature: SW | Signature: X _(signed)_ |
| Title: AUTHORIZED SIGNER | Title: John H. Owoc / CEO |
| Date: 12/15/2020 | Date: 7/15/2020 |

NOTE: CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.

A500 REV 01/19



# DELIVERY & ACCEPTANCE CERTIFICATE

EQUIPMENT FINANCE

**AGREEMENT #** ▇0182

This Certificate is delivered to and for the benefit of Lessor/Secured Party and pertains to the below-described Equipment and/or Financed Items which are the subject of the above-referenced Agreement between U.S. Bank Equipment Finance, a division of U.S. Bank National Association as Lessor/Secured Party and the undersigned as Customer. The words you and your refer to Customer. The words we, us and our refer to Lessor/Secured Party.

You certify and acknowledge that all of the Equipment and Financed Items (as applicable): 1) have been received, installed and inspected, and 2) are fully operational and unconditionally accepted. Further, all terms and conditions of the above-referenced Agreement have been reviewed and acknowledged. Upon you signing below, your promises in the Agreement will be irrevocable and unconditional in all respects. You understand and agree that we have paid for the purchase of the Equipment and/or Financed Items from the below-referenced Supplier and you may contact the Supplier for any warranty rights, which, if the Agreement is a lease, we transfer to you for the term of the Agreement (or until you default).

| Supplier: | Equipment and/or Financed Items Description |
|---|---|
| BRIGGS EQUIPMENT INC | 1-2020 YALE NR035DB FORKLIFT |
|  | 1-2020 YALE NR035DB FORKLIFT |
|  |  |
|  |  |
|  |  |
|  |  |

together with all replacements, parts, repairs, additions, and accessions incorporated therein or attached thereto and any and all proceeds of the foregoing, including, without limitation, insurance recoveries.

VITAL PHARMACEUTICALS INC
Customer

X [signature]
Signature

Sr. Ops Manager    12/07/2020
Title               Acceptance Date

NOTE: A FACSIMILE OF THIS DOCUMENT WITH SIGNATURE SHALL BE CONSIDERED TO BE AN ORIGINAL. CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.

10000 REV 11/15

# FINANCING STATEMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
Wolters Kluwer Lien Solutions; (800)331-3282
Email sosack@uccdirect.com

**B. SEND ACKNOWLEDGEMENT TO:**

**FILED**
2020 Jun 24 05:16 PM
****** 202002465760 ******

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| VITAL PHARMACEUTICALS, INC. | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS Line One | | | |
| 5751 SW 41ST ST STE 300 | | This space not available. | |
| MAILING ADDRESS Line Two | CITY: DAVIE | STATE: FL  POSTAL CODE: 33331 | COUNTRY: USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS Line One | | This space not available. | |
| MAILING ADDRESS Line Two | CITY | STATE  POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| U.S. Bank Equipment Finance, a division of U.S. Bank National Association | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS Line One | | | |
| 1310 Madrid Street | | This space not available. | |
| MAILING ADDRESS Line Two | CITY: Marshall | STATE: MN  POSTAL CODE: 56258 | COUNTRY: USA |

**4. This FINANCING STATEMENT covers the following collateral:**

1-2020 YALE NR035DB FORKLIFT 1-2020 YALE NR035DB FORKLIFT TOGETHER WITH ALL REPLACEMENTS, PARTS, REPAIRS, ADDITIONS, ACCESSIONS AND ACCESSORIES INCORPORATED THEREIN OR AFFIXED OR ATTACHED THERETO AND ANY AND ALL PROCEEDS OF THE FOREGOING, INCLUDING, WITHOUT LIMITATION, INSURANCE RECOVERIES.

**5. ALTERNATE DESIGNATION (if applicable)** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ AG LIEN ☐ NON-UCC FILING ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX
☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**

STANDARD FORM - FORM UCC-1 (REV.05/2013)    Filing Office Copy    Approved by the Secretary of State, State of Florida

EXHIBIT "B"