**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:                                                          Chapter 11

      VITAL PHARMACEUTICALS, INC., *et al*.          Case No. 22-17842-PDR

Debtors.

_____ /

<u>NOTICE OF RULE 2004 EXAMINATION DUCES TECUM</u>
*(Seeking Production of Documents Only)*

      Brendan Abbott and Peter Fischer, individually and on behalf of all others similarly situated, request that Vital Pharmaceuticals, Inc. (the "<u>Debtor</u>") produce by Monday, February 6, 2023 at 10:00 a.m. (prevailing Eastern time), at Pack Law, P.A., 51 NE 24th St., Suite 108, Miami, Florida 33137, all of the documents as described in the attached **<u>Exhibit A</u>**.

      This request for production is pursuant to Federal Rule of Bankruptcy Procedure 2004 and Local Rule 2004-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida. The scope of this request is as described in Bankruptcy Rule 2004 and related to the acts, conduct, and financial affairs of the Debtors. Pursuant to Local Rule 2004-1, no order shall be necessary to authorize the examination and no subpoena shall be necessary to compel production of documents or ESI (as defined therein) from the Debtors.

      If the examinee receives this notice less than 14 days before the scheduled examination date, the examination will be rescheduled upon timely request to a mutually agreeable time.

      **YOU MAY BE EXCUSED FROM APPEARANCE BY PROVIDING COPIES OF THE REQUESTED DOCUMENTATION AND INFORMATION PRIOR TO THE SCHEDULED DATE OF THE DEPOSITION.**

      **YOU MUST FIRST CONTACT THE ABOVE ATTORNEY FOR ACCEPTANCE OF ANY COSTS IN PROVIDING COPIES BEFORE YOU WILL BE REIMBURSED FOR THE SAME.**

Dated: January 13, 2023

**PACK LAW, P.A.**
*Bankruptcy Counsel to Brendan Abbott and Peter Fischer*
51 Northeast 24th Street, Suite 108
Miami, Florida 33137
Telephone:  (305) 916-4500

By:  <u>/s/ Joseph A. Pack</u>
        Joseph A. Pack
        Email:  joe@packlaw.com
        Florida Bar No. 117882

        Jessey J. Krehl
        Email:  jessey@packlaw.com
        Florida Bar No. 1025848

**HARVATH LAW GROUP, LLC**
*Litigation Counsel to Brendan Abbott and Peter Fischer*
75 W. Lockwood, Suite #1
Webster Groves, Missouri 63119
Telephone:  (314) 550-3717

By:  <u>/s/ Daniel Harvath, Esq.</u>
        Daniel Harvath, Esq.
        Email:  dharvath@harvathlawgroup.com
        Missouri Bar No. 57599

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY THAT** on January 13, 2023, I electronically filed the foregoing via the Case Management/Electronic Case Filing system.  I further certify that the foregoing was furnished via Notice of Electronic Filing through the CM/ECF system to those parties registered to receive electronic notices of filing in this case.

**PACK LAW, P.A.**
*Counsel to Brendan Abbott and Peter Fischer*
51 Northeast 24th Street, Suite 108
Miami, Florida 33137
Telephone:  (305) 916-4500

By:   */s/ Joseph A. Pack*
     Joseph A. Pack
     Email:  joe@packlaw.com
     Florida Bar No. 117882

     Jessey J. Krehl
     Email:  jessey@packlaw.com
     Florida Bar No. 1025848

**<u>Exhibit A</u>**

## <u>DEFINITIONS</u>

A.      "Documents" shall mean the original, all copies and drafts of writings, data compilations, photographs, plans, recordings, and any other medium of any kind or nature used to record, memorialize or communicate information (including all originals, drafts and copies thereof). The term "Documents" includes, without limiting the generality of the foregoing: correspondence (including e-mail and any and all ***internal, "instant messaging"-type applications***), memoranda, reports, minutes, pamphlets, notes, letters, telegrams, messages (including reports, notes and memoranda of telephone conversations and conferences), calendar and diary entries, contracts, statements, research articles, treatises, records, data, and compilations, whether made, kept or stored in printed, digital, analog, optical or other format, including any audio, video, digital or optical recording or photograph.  Designated documents are to be taken to include all attachments, enclosures and other documents that are attached to, relate to or refer to such designated documents.

B.      "Identify" or "identity" with respect to documents shall mean to state the author, addressee, persons copied, date, subject matter and document character (e.g., letter, memorandum, invoice) and shall refer to documents within the possession, custody or control of the Debtor or any agent, employee or representative of the Debtor.

C.      "Identify" or "identity" with respect to individuals means to give the name and last known residence, address and telephone number of such individual and the name, address and telephone number of the last known place of business where such individual is or was employed.

D.      "Person" or "entity" refers to the plural as well as the singular and means any natural person, firm, association, partnership, corporation or other legal entity.

E.      "Possess" or "possession" as used herein, means having custody or control of, having access to, or having knowledge of.

F.  "You", "your", "the Debtor", "anyone acting for or on your behalf", or "anyone acting for or on the behalf of the Debtor" refer to the Debtor, "Vital Pharmaceuticals, Inc.," and/or all of its attorneys, agents, employees, representatives, accountants, and any other persons acting or purporting to act for or on his behalf.

G.  The term "relating to" means pertaining in any way to, referring to, reflecting, recording, memorializing, mentioning, constituting, describing or concerning, directly or indirectly.

H.  The singular of any word is intended to include the plural and vice-versa, and the conjunctive "and" to refer to and include the disjunctive "or" and vice-versa, unless the request clearly indicates otherwise.

I.  The term "Complaint" refers to the "First Amended Class Action Complaint," filed on June 27, 2022 in the United States Eastern District of Missouri federal court; said Complaint has further been incorporated into the above-referenced creditors' Proof of Claim ("POC"), Claim No. 87.

J.  The term "Product" refers to the consumer products at issue, specifically identified as the "Product" in the Complaint at, e.g., ¶ 2: the "Bang"-labeled drinkable liquid packaged in 16fl oz. aluminum canisters and bearing the "SUPER CREATINE" claim.

K.  The term "False Claims," unless indicated otherwise, refers to the uniformly-worded labels on the Products, as described in the Complaint at ¶10, claiming the Products contain "SUPER CREATINE."

L.  "Creatyl-l-leucine," or "CLL," is the substance identified in the Complaint at ¶4, the Debtor's purported "creatine bonded to L-leucine."

## <u>REQUESTS FOR PRODUCTION</u>

1.       All documents evidencing or memorializing any communication between you and Brendan Abbott or Peter Fischer.

    **<u>RESPONSE</u>:**

2.       All documents evidencing or memorializing any communication between you and any other person/entity related to the allegations of the Complaint, made at any time from January 1, 2012 until the present.

    **<u>RESPONSE</u>:**

3.       All statements obtained by you from any person or entity relating to the allegations of the Complaint, made at any time from January 1, 2012 until the present.

    **<u>RESPONSE</u>:**

4.       [Intentionally Blank]

5.       [Intentionally Blank].

6.      [Intentionally Blank].

7.      All communications, either internal or external, between any agent, employee, or director of the Debtor, made at any time between January 1, 2012 and the present, referring or in any way relating to the "False Claims," and/or "SUPER CREATINE."

**RESPONSE:**

8.      All communications, either internal or external, between any agent, employee, or director of the Debtor, made at any time between January 1, 2012 and the present, referring or in any way relating to the production and/or formulation of the Product.

**RESPONSE:**

9.      A detailed company/organizational/executive chart, showing the organizational structure of VPX, and the names of each executive officer and/or department head, for each of the preceding five years and for the present year.

**RESPONSE:**

10.     All information/documents specifically identifying each and every individual involved in the research and development, production, manufacturing, marketing and/or sale of the Product from January 1, 2012 until the present.

   **RESPONSE**:

11.     A detailed list of every single executive, manager and/or employee in any way involved in the research and development, production, manufacturing, marketing and/or sale of the Product from January 1, 2012 until the present.

**RESPONSE**:

12.     All information/documents specifically identifying each and every individual involved in the conception, assertion, publication and marketing use of "SUPER CREATINE."

   **RESPONSE**:

13.     A detailed list of every single executive, manager and/or employee in any way involved in the conception, assertion, publication and marketing use of the term "SUPER CREATINE" from January 1, 2012 until the present.

**RESPONSE**:

14.    All information/documents specifically identifying each and every individual involved in the validation, testing or qualification of the Product in relation to the "SUPER CREATINE."

   **RESPONSE:**

15.    A detailed list of every single executive, manager and/or employee in any way involved in the validation, testing or qualification of the Product in relation to the "SUPER CREATINE," from January 1, 2012 until the present.

   **RESPONSE:**

16.    All communications, either internal or external, between any agent, employee, or director of the Debtor, made at any time between January 1, 2012 and the present, referring or in any way relating to the truthfulness, accuracy, or appropriateness of the term "SUPER CREATINE."

   **RESPONSE:**

17.    All documentation, and/or communication explaining and/or illustrating and/or providing support for whatever factors make the Product's purported CLL substance appropriately labeled "SUPER CREATINE."

   **RESPONSE:**

18.     All documentation, and/or communication providing information on the raw materials sourcing for the Product, including supplier names, tradenames, and specifications for each raw material used in the Product from January 1, 2012 until the present.

**RESPONSE:**

19.     All Raw Material Information ("RMIF") Documents from suppliers for each of the raw materials used in the formulation of the Product from January 1, 2012 until the present.

**RESPONSE:**

20.     All FDA compliance data (written, electronic, or notes or recordings of verbal discussions) from each of the raw material suppliers identified in response to Request for Production # 18, *supra*, to substantiate that such raw materials meet FDA specifications, from January 1, 2012 until the present.

**RESPONSE:**

21.     All safety data and/or material safety data sheets ("MSDS") received from suppliers of each of the raw materials used in the Product, from January 1, 2012 until the present.

**RESPONSE:**

22.     All FDA Certification documents, and/or Notice of FDA Actions (including FDA 483 and Warning Letters) relating to any of the raw materials used in the Product formulation, from Jan. 1, 2012 until the present.

        **RESPONSE:**

23.     All documents relating to USA versus Foreign sourcing data for each of the raw materials used in the Product formulation, from Jan. 1, 2012 until the present.

        **RESPONSE:**

24.     All documents relating to USA versus Foreign sourcing data, including importation compliance documentation, for each of the raw materials used in the Product formulation, from Jan. 1, 2012 until the present.

        **RESPONSE:**

25. All Cosmetic Ingredient Raw Material safety data for each of the raw materials used in the Product formulation, from Jan. 1, 2012 until the present.

   **RESPONSE:**

26. To the extent not produced in response to preceding Requests for Production, *supra,* all MSDS and RMIF documentation related to each of the raw materials used in the Product from Jan. 1, 2012 until the present.

   **RESPONSE:**

27. All documentation, and/or communication explaining and/or illustrating and/or providing support for whatever factors make the Product's purported "SUPER CREATINE" technology effective.

   **RESPONSE:**

28. Any and all internal documents, including correspondence, relating to and/or discussing any comparison of the Product to any competitor product from companies to include, but not limited to, Monster Energy and/or Orange Bang, from Jan. 1, 2012 to the present.

   **RESPONSE:**

29.     Any internal comparisons, or discussions of comparison, of the Product to any competitor product from companies to include, but not limited to, Monster Energy and/or Orange Bang, from Jan. 1, 2012 to the present.

   **RESPONSE:**

30.     Any listing comparing the ingredients of the Product to any competitor product from Jan. 1, 2012 to the present.

   **RESPONSE:**

31.     Any internal or external correspondence or other documentation comparing the Product to the "normal" (i.e., without "SUPER CREATINE") products (either internal or competitor).

   **RESPONSE:**

32.     Any internal or external correspondence or other documentation discussing any material difference between the different varieties and/or different flavors of each Product.

   **RESPONSE:**

33.     Any and all data illustrating that the Product meets FDA guidelines for functional beverages.

   **RESPONSE:**

34.    Any and all documents relating to statistical data and/or any methodology used to support any argument that CLL is effective.

**RESPONSE:**

35.    Any documentation containing, referring or relating to statistical data used to support the Product's "SUPER CREATINE" claims.

**RESPONSE:**

36.    For each of the raw materials used in the Product formulation, all documentation identifying and listing its functional role, composition, supply source, specification, and rationale for incorporation into the formulation.

**RESPONSE:**

37.    All documentation illustrating the precise formula used in the Product, including the amount and percentages of each raw material used therein.

**RESPONSE:**

38.     All documents illustrating precisely how, in a step-by-step fashion, the Product is formulated and produced, from raw materials to final composition.

**RESPONSE:**

39.     All documents relating to the source and chemical composition of the CLL used in the Product.

**RESPONSE:**

40.     All documents relating to the source and chemical composition, including percentages of composing ingredients, of the formula used in each Product.

**RESPONSE:**

41.     All documents explaining how creatine is purportedly bonded to l-leucine to create "CLL."

**RESPONSE:**

42.     A list of any changes to raw material supply sourcing for the Product that includes certification/qualification data to support the change in sourcing along with the certification/qualification data used.

**RESPONSE:**

43.     All patents related to and/or supporting the Product's purported technology in general, along with all correspondence to and from the patent office during the patent approval process, including but not limited to (a) all rejections of any similar patent applications, and (b) any competitive patents used or compared to demonstrate patentable differences.

        **RESPONSE:**

44.     Provide the Standard Operating Procedure ("SOP") documentation for producing the Product, used since Jan. 1, 2012 to present.

        **RESPONSE:**

45.     Provide any additional Operation Process documentation for producing each Product used from Jan. 1, 2012 to the present.

        **RESPONSE:**

46.     Provide photographs, charts, and/or any other diagrams illustrating the SOP for production of the Product.

        **RESPONSE:**

47.     Provide the SOP and related information for each separate flavor of the Product.

        **RESPONSE:**

48.     Provide Final Laboratory process and Pilot Plant data that includes any changes prior to the qualifying process for the Products.

**RESPONSE:**

49.     Provide all documentation relating to the location of the production of the Product from Jan. 1, 2012 to present, whether in house or via contract manufacturer, or both.

**RESPONSE:**

50.     Provide all qualification studies (in-house and/or contract manufacturer) and final process documentation for the production of the Product.

**RESPONSE:**

51.     Provide any and all FDA certification of process documentation from each location where the Product is made, including FDA certification, sanitization documentation/procedures, quality assurance data/procedures, and quality control representing the first 10 lots and the last current lots made at each location, from Jan. 1, 2012 to present.

**RESPONSE:**

52.     Provide all documentation referring or relating to any changes to processing procedures and/or equipment that includes certification/qualification data to support change in process in relation to the production both of the Product, from Jan. 1, 2012 to the present.

**RESPONSE:**

53.     From the last ten years, provide all Claim Methodology for all claims made on packaging of the Product, listed on the Debtor's websites or print marketing, made to all distribution outlet buyers and/or made to any ingredient suppliers.

**RESPONSE:**

54.     From the last ten years, provide all documents listing or related to the Claims Methodology related to the "SUPER CREATINE," and or any claims made on the Debtor's websites.

**RESPONSE:**

55.     Provide all documentation related to the Claims Methodology, including all lists of such claims and all supporting documentation, produced and/or conveyed at any time since Jan. 1, 2012 to the present.

**RESPONSE**:

56.     Provide all correspondence, from Jan. 1, 2012 to present in which the effectiveness of CLL or "SUPER CREATINE" was questioned or challenged.

        **RESPONSE**:

57.     Provide all focus group data on any concept products (leading up to Product), up to the final Product, including but not limited to observer, moderator, and/or panelist notes.

        **RESPONSE:**

58.     From the last ten years, provide all promotional data in relation to the Product, including but not limited to in-house data and external presentations or discussions specifically related to and/or supporting "SUPER CREATINE."

        **RESPONSE:**

59.     Provide all correspondence, documentation and/or evidence of verbal meetings with the Federal Trade Commission ("FTC") and/or state advertising boards responsible for the approval of any claim made by the Product, including, but not limited to the "SUPER CREATINE" assertion.

        **RESPONSE:**

60.     For the last ten years, provide all correspondence, documentation and/or evidence of verbal meetings with the Federal Trade Commission ("FTC") and/or state advertising boards in relation to any issue concerning the Product.

**RESPONSE:**

61.     For the last ten years, provide all internal customer complaints and communications related to each Product.

**RESPONSE:**

62.     For the last ten years, provide all external customer complaints or adverse reporting relating to the Product.

 **RESPONSE:**

63.     For the last ten years, provide all external customer complaints or adverse reporting relating to the Product specifically relating to, and/or produced by the US Consumer Product Safety Commission, International Adverse Effect Safety Group, FDA, or FTC.

**RESPONSE:**

64. For the last ten years, provide all external or internal customer complaints or adverse reporting specifically relating to any Product ingredient and/or incidental ingredient and/or miscellaneous chemicals incorporated within the Product.

    **RESPONSE:**

65. Since the creation and first sale of the Product, provide any listing, statistical data, and or historical information relating to any internal or external complaint made about the efficacy or safety of the Product.

    **RESPONSE:**

66. From the past ten years, provide all documentation for the Product's SOP related to raw material approval.

    **RESPONSE:**

67. Provide all formulation reliability studies related to the Product or any of its ingredients, from Jan. 1, 2012 to the present.

    **RESPONSE:**

68.     Provide all ingredient safety documentation related to each of the ingredients used in the Product written/produced at any time from Jan. 1, 2012 to the present.

        **RESPONSE:**

69.     Provide all documentation and/or correspondence related to Equipment Sanitation procedures for any equipment used in the production of the Product, from Jan. 1, 2012 to the present.

        **RESPONSE:**

70.     Provide all documentation and/or correspondence related to the integrity/stability of any packaging material used for the Product, along with a list of such materials used in the packaging of the Product, from Jan. 1, 2012 to the present.

        **RESPONSE:**

71.     Provide all documentation and/or correspondence related to any shelf-life methodology followed for the Product from Jan. 1, 2012 to the present.

        **RESPONSE:**

72.     Provide all documentation and/or correspondence relating to any on-going or historical long-term stability testing performed for the Product, from Jan. 1, 2012 to the present.

**RESPONSE:**

73.     Provide all documentation of reporting of formulation and process to the FDA (voluntary or legally required) along with any documentation of related FDA notifications and/or violations.

**RESPONSE:**

74.     All documentation related to any other lawsuits brought against the Debtor for any issue in relation to the Product from Jan. 1, 2012 to the present.

**RESPONSE:**

75.     All documentation and/or correspondence presented to any third party to gain access to any distribution for the Product, from Jan. 1, 2012 to the present.

**RESPONSE:**

24

76.     Provide a list of all United States outlets at which the Product is or was sold, at any time from Jan. 1, 2012 to the present, including supermarket outlets, pharmacy outlets, mass market outlets, department outlets, and direct/internet outlets.

**RESPONSE:**

77.     For each outlet listed, provide the name of the contact person/persons the Debtor utilized to gain access to their distribution, along with copies of any correspondence used to gain such distribution, at any time from Jan. 1, 2012 to present.

**RESPONSE:**

78.     All financial information relating to the Product, in each of the fifty states, and in every fiscal year from 2012 until present.  Specifically, for each of the fifty states:

a.      Provide the total sales volume over the given time-frame, provided on a monthly and yearly basis for the Product;

b.      Provide the total revenue generated from sales of the Product, provided on a monthly and yearly basis for the given time-frame;

c.      Provide the total costs of goods sold (COGS) and/or total cost of production for the Product, on a monthly and a yearly basis for the given time-frame.

**RESPONSE:**

79.     Provide all data regarding the number of customers purchasing the Product and/or any related analog for such data, such as information relating to volume of specific sales made by retail location.

**RESPONSE:**

80.     All electronic communications – provided in an electronic, searchable format – produced in response to the following non-case-sensitive Boolean search, applied to all internal and external e-mails from January 1, 2012 to present: **("SUPER CREATINE" or "CLL" or "creatyl-l-leucine") /15 ("effect\*" or "not effective" or "does not work" or "does nothing" or "ineffective" or "fraud" or "false claim")**.

**RESPONSE:**

81.     All electronic communications – provided in an electronic, searchable format – produced in response to the following non-case-sensitive Boolean search, applied to all internal and external e-mails from January 1, 2012 to present: **("SUPER CREATINE" or "CLL" or "creatyl-l-leucine" or "creatine") /15 ("claim!" or "benefit!" or "effect!" or "value!" or "affect!" or "false")**.

**RESPONSE:**

82.    All electronic communications – provided in an electronic, searchable format – produced in response to the following non-case-sensitive Boolean search, applied to all internal and external e-mails from January 1, 2012 to present: **(("SUPER CREATINE" or "CLL" or "creatyl-l-leucine" or "creatine") /10 ("claim!" or "benefit!" or "effect!" or "value!" or "affect!")) /30 ("true" or "false" or "untrue" or "incorrect" or "fake" or "scam" or "work!" or "fail!" or "ineffective" or "lie" or "bogus")**, applied to the e-mail correspondence of every Debtor employee, agent, manager, or executive.

**RESPONSE:**

83.    All electronic communications – provided in an electronic, searchable format – produced in response to the following non-case-sensitive Boolean search, applied to all internal and external e-mails from January 1, 2012 to present: **("SUPER CREATINE" or "CLL" or "creatyl-l-leucine" or "creatine") /30 ("true" or "false" or "untrue" or "incorrect" or "fake" or "scam" or "work!" or "fail!" or "ineffective" or "lie" or "bogus")**, applied to the e-mail correspondence of every Debtor employee, agent, manager, or executive.

**RESPONSE:**

84.    All electronic communications – provided in an electronic, searchable format – produced in response to the following non-case-sensitive Boolean search, applied to all internal and external e-mails from January 1, 2012 to present: **("SUPER CREATINE" or "CLL" or "creatyl-l-leucine" or "creatine") /20 ("true" or "false" or "untrue" or "incorrect" or "fake" or "scam" or "work!" or "fail!" or "ineffective" or "lie" or "bogus")**, applied to the e-mail correspondence of every Debtor employee, agent, manager, or executive.

**RESPONSE:**


85.    All other electronic communications, not strictly limited by Boolean search, either internal or external, relating in any way to each Product and to the truth or falsity of the "SUPER CREATINE" claim, made or conveyed by any Debtor employee, agent, manager, or executive between Jan 1, 2012 and the present.

**RESPONSE:**


86.    All other electronic communications, not strictly limited by Boolean search, either internal or external, relating in any way to any false or bogus claims made as to any of the Debtor's products, made or conveyed by any Debtor employee, agent, manager, or executive between Jan. 1, 2012 and the present.

**RESPONSE:**

87.     All other electronic communications, not strictly limited by Boolean search, either internal or external, reflecting knowledge on the part of any of the Debtor's executives as to any false claims made in relation to the Product, made or conveyed by any Debtor employee, agent, manager, or executive between Jan. 1, 2012 and the present.

**RESPONSE:**

88.     All other electronic communications, not strictly limited by Boolean search, either internal or external, relating to any customer complaints relating to the Product, made or conveyed by any Debtor employee, agent, manager, or executive between Jan. 1, 2012 and the present.

**RESPONSE:**

88.     All other electronic communications, not strictly limited by Boolean search, either internal or external, relating to any customer complaints relating to SUPER CREATINE, made or conveyed by any Debtor employee, agent, manager, or executive between Jan. 1, 2012 and the present.

**RESPONSE:**