UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 (PDR) |
| Debtors.[1] | (Jointly Administered) |

**OMNIBUS OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO THE DEBTORS' PENDING APPLICATIONS TO RETAIN
SPECIAL COUNSEL**

The Official Committee of Unsecured Creditors (the "Committee") appointed in

the chapter 11 bankruptcy cases (the "Chapter 11 Cases") of the above-captioned debtors and

debtors-in-possession (the "Debtors"), by and through its undersigned counsel, hereby submits this

omnibus objection (the "Omnibus Objection") to the Debtors' pending applications to retain

special counsel,[2] and respectfully states as follows:

---

[1]  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("VPX") (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC ("JHO") (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2]  The applications include: (i) *Debtors' Application for Order Authorizing the Employment of Andrew P. Beilfuss and the Law Firm of Quarles & Brady LLP as Special Counsel to the Debtors, Effective as of the Petition Date* [Docket No. 511] (the "Q&B Application"); (ii) *Debtors' Application for Approval of the Employment of Daniel L. Geyser and the Law Firm of Haynes and Boone, LLP, as Special Counsel to the Debtors, Effective as of November 3, 2022* [Docket No. 565] (the "H&B Application"); and (iii) *Debtors' Application for Approval of the Employment of Richard D. Faulkner and the Law Firm of Faulkner ADR Law, PLLC, as Special Counsel to the Debtors, Effective as of November 1, 2022* [Docket No. 566] (the "Faulkner ADR Application"). On January 10, 2023, Debtors also filed the *Debtors' Application for Order Authorizing the Employment of David M. Levine and the Law Firm of Sanchez Fischer Levine, LLP as Special Counsel to the Debtors, Effective as of the Petition Date* [Docket No. 633] (the "SFL Application," and together with the Q&B Application, the H&B Application, and the Faulkner ADR Application, the "Special Counsel Applications"). The SFL Application is scheduled for hearing on February 9, 2023. Despite the retention applications being scheduled for different hearings, in order to preserve estate resources, the Committee includes the SFL Application in this Omnibus Objection and seeks the same modifications to the terms of retention outlined herein. The Committee reserves all rights with respect to the SFL Application and will outline its issues and concerns specific to the SFL Application by supplemental objection, as appropriate.

## PRELIMINARY STATEMENT[3]

1.      The continued postpetition litigation of the Prepetition Actions is not in the best interests of the Debtors' estates.  The Debtors have failed to demonstrate why it is necessary (at this time) to move forward with the litigations for which the Debtors seek to retain Special Counsel.  The Committee can only speculate that the rationale for the immediate prosecution is driven by John H. Owoc's ("Mr. Owoc") desire to continue his speculative and punitive prepetition litigation strategy, which has already failed in almost every case and directly contributed to the Debtors' need to pursue Chapter 11 protection in the first place.  *See* First Day Declaration, ¶ 41 ("The Company commenced these cases in order to (a) obtain 'breathing room' from pending litigation, including the OBI Judgment and FAA Verdict. . . .").

2.      Based on publicly available information, the Debtors spent in excess of $7 million on legal fees and expenses in just the ninety (90) days leading up to the Chapter 11 Cases.[4]  Yet the Committee is aware of only a single instance during this period where the Debtors prevailed in any of the underlying litigation.[5]  In fact, during that same period, judgments were entered in an aggregate amount of $477 million against the Debtors in two pending litigations that concern critical components of the Debtors' business: the use of (i) the "BANG" trademark, and (ii) the phrase "super creatine," still prominently featured in its product descriptions and advertising.

3.      Instead of availing themselves of the "breathing room" that Chapter 11 affords, the Debtors now seek to double down on these adverse rulings and other questionable claims and defenses by retaining four ***additional*** legal professionals to represent the Debtors—and, in at least

---

[3]  Capitalized terms not defined in this Preliminary Statement have the meaning ascribed to them in this Omnibus Objection.

[4]  *See Exhibit SOFA 3* [Docket No. 325].

[5]  *See Vital Pharmaceuticals, Inc. and JHO Intellectual Property Holdings, LLC v. PHD Marketing, Inc.*, Case No. 20-cv-06745 (C.D. Cal.), discussed in more detail below.

one action, Mr. Owoc as well—in certain pending litigations (the "Prepetition Actions").  Such a strategy is simply not reasonable, necessary, or actually beneficial to the estates, and therefore the Special Counsel Applications should not be approved.

4.      As more fully discussed herein, the Committee is agreeable to the retention of Q&B solely to the extent necessary to continue to prosecute one of the Prepetition Actions at this time, with such retention also being subject to the modifications and other protections discussed herein. Shortly after the Chapter 11 Cases were commenced, the Debtors sought the Committee's consent to lift the automatic stay to allow a lawsuit that resulted in a $293 million jury verdict against VPX, *Monster Energy Co. v. Vital Pharmaceuticals, Inc.*, Case No. 18-cv-01882 (C.D. Cal.) (the "False Advertising Litigation"), to proceed to final judgment.[6]  The Committee agreed to the requested stay relief.  As a result, the Committee is agreeable to the retention of Q&B to continue to represent the Debtors in connection with the False Advertising Litigation since VPX needs counsel in this action until the automatic stay is reimposed.[7]

5.      Since the entry of the Lift Stay Stipulation, however, the landscape of the Chapter 11 Cases has changed.  It is clear to the Committee that these Chapter 11 Cases will likely result in a sale transaction, rather than a stand-alone restructuring.  As a result, continued litigation of the Prepetition Actions provides no benefit to the estates.  Instead, the decision of whether to prosecute the Prepetition Actions should be made by a buyer of the Debtors' assets if such actions are purchased, or if certain of the Prepetition Actions are left behind with the estates, by the estate fiduciary appointed to wind down the Debtors' estates.  To be clear, as only the Q&B Application

---

[6] *See Order Granting Debtors' and Creditor Monster Energy Company's Joint Agreed Motion for Relief from Automatic Stay to Continue Action in Nonbankruptcy Forum* [Docket No. 450] ("Lift Stay Stipulation").

[7] The Committee reserves its right to seek to reimpose the automatic stay as to the False Advertising Litigation.

proposes to provide services to the Debtors in connection with the False Advertising Litigation, the Committee respectfully requests that all of the other Special Counsel Applications should be denied.

6.      If the Court is inclined to approve the retention of any of the Special Counsel (other than Q&B solely in connection with the False Advertising Litigation) at this juncture, such retention must include sufficient safeguards for the benefit of the estates.[8]  First, the Debtors must limit the scope of services for which any Special Counsel is retained to those reasonably necessary to provide a benefit to the estates.

7.      Second, the Committee requests that the proposed order in connection with the Q&B Application, and any other proposed orders that the Court may consider: (a) implement meaningful restraints on all litigation spending through monthly fee caps for the respective Special Counsel; (b) ensure the professional complies with the terms of the interim compensation procedures adopted in these Chapter 11 Cases to provide the Committee and other parties-in-interest with transparency and the opportunity to review and object to the fees and expenses associated with all services rendered (*see* Docket No. 503); (c) require any expansion in scope and material litigation decisions involving strategy be approved by the Debtors' board of directors; (d) require Special Counsel to confirm there will be no duplication of services amongst the various professionals; (e) add language expressly preserving the estates' claims and causes of action, if any, against the proposed Special Counsel; and (f) add language acknowledging that nothing in the proposed order alters any rights the estates may have against any recipient of post-petition funds whether such funds were paid within or outside of the estates, including in the event the

---

[8]  The Committee expressly reserves the right to object to the payment of any fees and expenses incurred by Special Counsel.

estates become administratively insolvent (subsections 7(a)-(f) are collectively referred to as the "Universal Modifications").

8.      Finally, the Committee has identified certain other issues and concerns with respect to the individual Special Counsel Applications, including the Q&B Application, that require additional disclosures and clarifications to the terms of the proposed retentions.

9.      All of the foregoing protections are necessary to ensure that Mr. Owoc does not use the Prepetition Actions as simply another vehicle to jeopardize the estates and the Chapter 11 Cases. [9]  Absent these changes, the Special Counsel Applications should be denied.

## **BACKGROUND**

### A. **Procedural History**

10.     On October 10, 2022 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Court") commencing these Chapter 11 Cases.  No trustee or examiner has been appointed in the Chapter 11 Cases.

11.     The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

12.     On November 1, 2022, the Office of the United States Trustee appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code [Docket No. 245], which membership was reconstituted on November 23, 2022 [Docket No. 400].

---

[9] The Committee reached out to the Debtors weeks ago seeking to consensually resolve its concerns and requested certain reasonable modifications to the terms of the Special Counsel Applications to ensure that appropriate limitations and monitoring mechanisms were put in place.  While the Committee has worked hard to resolve these issues with the Debtors, to date the parties have been unable to reach resolution.

13.     Information regarding the Debtors' history, business operations, capital structure, secured indebtedness, and the events leading up to the commencement of the Chapter 11 Cases can be found in the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") [Docket No. 26].

**B.  The Special Counsel Applications**

14.     On December 14, 2022, the Debtors filed the Q&B Application, which seeks authorization to retain Quarles & Brady LLP and Andrew Beilfuss (collectively, "Q&B") under Section 327(e) of the Bankruptcy Code for the following matters, effective as of the Petition Date:

a.  Represent Debtor VPX in the False Advertising Litigation, in which a jury found in favor of Monster Energy Company ("Monster") and against VPX and Mr. Owoc on all five claims related to willful and deliberate false advertising, among other things, and awarded $293 million in damages to Monster;

b.  Represent Debtors VPX and JHO in the pending appeals before the Ninth Circuit Court of Appeals in Case Nos. 22-55722 and 22-56019 (together, the "OBI Appeal") in connection with the entry of the final arbitration award (the "Final Arbitration Award"), which provided for approximately $9.3 million in costs and fees, a $175 million disgorgement of profits award, and certain injunctive relief, including a 5% royalty payment, in favor of Orange Bang, Inc. ("OBI") and Monster in *Orange Bang, Inc. and Monster Energy Company v. Vital Pharmaceuticals Inc. d/b/a VPX Sports,* AAA Case No. 01-20-0005-6081 (the "Arbitration Proceeding");

c.  Represent Debtor VPX ***and Mr. Owoc*** in *Atlantic Recording Corp., et al. v. Vital Pharmaceuticals, Inc. et al.*, Case No. 22-22951 (S.D. Fla);

d.   Represent Debtors VPX and JHO in *Vital Pharmaceuticals, Inc. and JHO Intellectual Property Holdings, LLC v. PHD Marketing, Inc.*, Case No. 20-cv-06745 (C.D. Cal.), in which the defendant is appealing a judgment for willful infringement of VPX and JHO's trademarks that awarded $10,584,308.48 in disgorged profits to VPX and JHO.  VPX and JHO also subsequently obtained an award of $5,210.61 in costs;

e.   Represent Debtor VPX in an appeal of a Wisconsin state court judgment in favor of Webb & Gerritsen, Inc. and against VPX (Appeal No. 22-AP-000488); and

f.   Serve as general counsel for transactional matters on an as-needed basis, as further described in the Q&B Application.

*See* Q&B Application, ¶¶ 23–24.

15.   On December 21, 2022, the Debtors filed the H&B Application, seeking to retain Haynes and Boone, LLP and Daniel L. Geyser (collectively, "H&B") under Section 327(e) of the Bankruptcy Code, effective as of November 3, 2022, to represent Debtors VPX and JHO in the OBI Appeal, and to the extent necessary, in any future proceeding relating to the OBI Appeal in the United States Supreme Court.  *See* H&B Application, at ¶ 2.

16.   Also on December 21, 2022, the Debtors filed the Faulkner ADR Application, seeking to retain Faulkner ADR Law, PLLC and Richard D. Faulkner (collectively, "Faulkner ADR") under Section 327(e) of the Bankruptcy Code, effective as of November 1, 2022, to represent Debtors VPX and JHO in the appeal of the entry of the Final Arbitration Award (Case No. 22-56019 of the OBI Appeal), in connection with the Arbitration Proceeding, and possibly for other matters.[10]  *See* Faulkner ADR Application, ¶ 8.

---

[10]  As discussed in more detail below, the Faulkner ADR Application and supporting documents are not specific about the scope of retention.  *See* ¶ 32, *infra*.

17.     On January 10, 2023, the Debtors filed the SFL Application, seeking to retain Sanchez Fischer Levine, LLP and David M. Levine (collectively, "SFL" and together with Q&B, H&B and Faulkner ADR, "Special Counsel") under Section 327(e) of the Bankruptcy Code for the following matters, effective as of the Petition Date:

   a.   Represent Debtor VPX in *Vital Pharmaceuticals, Inc. d/b/a Bang Energy v. Monster Beverage Corporation, Monster Energy Company, Reign Beverage Company, LLC, Energy Beverages, LLC, CSC Corporate Domains, Inc., Marherly, Inc., Jennifer Quillen, Brett Martin, Christin Kubsch, Crystal Bowley-Regan, Summer Shores, Amber N. Killmon, Amanda Light, Crystal Carder, Laura Dawson, Arianna Jonae Henderson, Kristin Wong, John Does 1 200, Jane and John Doe Influencers 1-200, and ABC Corporations 1-100*, Case No. 19-cv61974-CMA (S.D. Fla.); and

   b.   Represent Debtor VPX in *Vital Pharmaceuticals, Inc. d/b/a VPX and as Bang Energy v. Monster Beverage Corporation, Monster Energy Company, and Rodney Cyril Sacks*, Case No. 22-cv-61621-RKA (S.D. Fla.).

18.     The terms of the proposed retentions of Special Counsel are described in the respective Special Counsel Applications, declarations in support thereof, and engagement letters attached thereto.  To the extent the Committee takes issue with these terms, they are discussed in detail below.

## OMNIBUS OBJECTION

### A. The Special Counsel Applications Must Be Denied Because They Are Unnecessary and Not Beneficial to the Estates

19.     The proposed Special Counsel retentions are not only unnecessary given the trajectory of these Chapter 11 Cases, but they reflect Mr. Owoc's belief that litigation is a club to

be wielded not based on reasoned legal and cost-benefit analyses, but on spite and pride.  The proposed Special Counsel retentions other than the Q&B Application with respect to the False Advertising Litigation are therefore not in the best interest of the estates and should be denied.  *In re Thrush Aircraft, Inc.*, No. 19-10976, 2020 WL 1650323, at \*2 (Bankr. M.D. Ga. Mar. 31, 2020) ("In assessing whether to grant or deny a debtor's application to employ an attorney as special counsel, the court should consider all of the relevant facts and circumstances surrounding the debtor's case."); *Philadelphia Newspapers, LLC v. Off. Comm. Of Unsecured Creditors*, 408 B.R. 585, 597, 598 (E.D. Pa. 2009) (Special counsel must provide a "timely and concrete" benefit to the estate, "not merely a benefit to the debtor."); *In re Duque*, 48 B.R. 965, 974–75 (S.D. Fla. 1984) ("The need for counsel must be for purposes of protecting the assets of the estate or furthering its interests. . . [thus] [t]he propriety of employing counsel must be gauged by the needs of the estate and directly related to the . . . debtor-in-possession's performance of the duties and responsibilities imposed by the Bankruptcy Code.").

20.     At this point in the Chapter 11 Cases, the best opportunity for maximizing value is a successful sale process, not scattershot litigation that for the most part has already failed.  The Debtors' insistence on litigating the Prepetition Actions during the Chapter 11 Cases unnecessarily diverts the Debtors' and the estates' resources, both professional and financial, away from this process to the detriment of all parties in interest.[11]  There is simply no need for the Debtors to pursue any of the Prepetition Actions at this critical juncture, given that the automatic stay protects (or protected) the Debtors from any attempts to enforce the significant adverse judgments and

---

[11] Ironically, the Debtors have filed pleadings arguing that continuing prepetition litigations would "deplete its limited resources and force its personnel and professionals to spend time on the discovery and litigation." *Debtors' Objection to Motion for Relief from Automatic Stay to Liquidate Prepetition Claim* [Docket No. 623], ¶ 12 ("If the stay were lifted, VPX would be forced to litigate the State Court Action while in the midst of its Chapter 11 Case, which would continue to deplete its limited resources and force its personnel and professionals to spend time on the discovery and litigation, taking valuable time away from their restructuring efforts.").

awards against them.  Likewise, by initiating affirmative claims, the Debtors are inviting parties to assert counterclaims that may otherwise be subject to the automatic stay.  Moving forward with the Prepetition Actions unnecessarily gives away the primary benefit of these Chapter 11 Cases, which is the stay of the Debtors' myriad litigations.  Therefore, the Special Counsel Applications are not in the best interests of the estates.

**B. Global Concerns Regarding the Debtors' Litigation Strategy and Costs Require Modifications to the Terms of the Special Counsel Applications**

21.    The Committee takes some solace in the Debtors' recent corporate governance changes, including the implementation of a truly independent board and the expansion of John DiDonato's responsibilities as Chief Transformation Officer.  The Committee believes that these changes could provide much-needed independence and checks on the Debtors' litigation strategy and spend during the Chapter 11 Cases.  However, without formal board oversight of the Debtors' litigation strategy, the Committee remains concerned that Mr. Owoc will have too much control over the process.  Thus, if the Court is inclined to allow the Debtors to move forward with the retention of any Special Counsel at this time , the Debtors' litigation spend and scope of authorized services must be managed very carefully given that many of the litigations the Debtors seek to continue were a main cause of the Chapter 11 Cases.  A non-exhaustive list of facts that illustrate the Committee's concerns are highlighted below:

a.  The Debtors' Statement of Financial Affairs [Docket No. 325] ("SOFA") lists 85 legal actions, proceedings, investigations, arbitrations, mediations, and audits in which the Debtors were involved within the year prior to the Petition Date.

b.  According to the SOFA, in the ninety (90) days prior to the Petition Date, the Debtors incurred at least $7 million in legal fees and expenses in connection with the Prepetition Litigation.

      i. The Debtors paid almost $6.9 million to Q&B alone in the 90 days prepetition, pursuant to an unusual alternative fee arrangement obligating the Debtors to pay Q&B $625,000 *per week*, seemingly without regard to the amount of time spent by Q&B on the cases each week.  The Debtors agreed to this arrangement without having any apparent pre-existing relationship with Q&B from which to determine whether such an arrangement and material expenses were reasonable based on the scope of the services to be provided, the work product received, or any other metrics typically used to determine whether expected legal fees—particularly of this magnitude—are reasonable.

c. In fact, the fees were ultimately associated with major losses that contributed to the filing of these Chapter 11 Cases.  For example, of the four major litigations for which the Debtors seek to retain Q&B that reached a final judgment or disposition, three resulted in dispositions against the Debtors totaling more than $475 million of liability.  The litigation strategy to date has created an existential threat to the Debtors, most significantly due to uncertainty concerning the "Bang" trademark and the use of the phrase "super creatine" in the marketplace.

d. Rather than take advantage of the automatic stay, it appears the Debtors intend to continue their failed "scorched earth" litigation strategy postpetition.  This is illustrated by the fact that the Debtors seek approval of H&B's representation in "future proceedings" before the United States Supreme Court, even though the OBI Appeal is in its infancy before the Ninth Circuit and will likely not be completed during the pendency of the Chapter 11 Cases.  *See* H&B Application, at 2.

22.     As a result, absent (a) limiting the scope of the retentions to the False Advertising Litigation or any other litigation for which the Debtors can demonstrate that the retention of professionals and prosecution is reasonable and beneficial to the estates, (b) the imposition of reasonable monthly fee caps, and (c) more board of director involvement in the Debtors' overall litigation strategy, the Committee fears there is little stopping Mr. Owoc from continuing to drive the Debtors to pursue specious claims and defenses at great expense to the estates and their creditors.

23.     Section 327(e) of the Bankruptcy Code provides that a debtor-in-possession may, with court approval:

> employ, for a specified special purpose, other than to represent the trustee in conducting the case, **an attorney that has represented the debtor, if in the best interest of the estate**, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e) (emphasis added).

24.     To qualify for the narrow employment under Section 327(e), the debtor-in-possession must establish that "the employment will be in the best interest of the estate." *In re Abrass*, 250 B.R. 432, 435 (Bankr. M.D. Fla. 2000). As currently proposed, the Debtors cannot demonstrate the retention of Special Counsel and continued postpetition prosecution of the Prepetition Actions is in the best interest of the estates. The Debtors have failed to provide adequate support as to why pursuing these actions (i) would benefit the estates and (ii) would not unnecessarily deplete their limited resources.[12] Based on the foregoing, the Committee submits that none of the Special Counsel Applications should be approved. To the extent the Court is

---

[12] *See* note 11, *supra.*

inclined to approve the Special Counsel Applications, the proposed orders must implement the Universal Modifications[13] to ensure true oversight and to mitigate further unnecessary spending of estate resources associated with the Prepetition Actions.

### C. Concerns Specific to the Special Counsel Applications Require Modifications to the Terms of their Respective Retentions

25.     In addition to the Committee's global concerns outlined above, each of the Special Counsel Applications raises issues and concerns leading to material open questions that must be addressed prior to approval.  Despite numerous requests by the Committee, this information remains outstanding as of the filing of this Omnibus Objection.  Further, the Debtors declined the Committee's request to adjourn the hearing pending receipt of these open diligence items.

#### i.   Q&B Application

26.     It is unclear whether Q&B was paid a retainer as of the Petition Date.   The application represents that Q&B is not holding a prepetition retainer, and the Debtors subsequently advised that Q&B did not hold one as of the Petition Date; yet the schedules show a retainer of $1,600,166.95.  These inconsistencies require clarification.

27.     Next, Q&B discloses that it will represent both Debtor VPX and Mr. Owoc in *Atlantic Recording Corp., et al. v. Vital Pharmaceuticals, Inc. et al.*, Case No. 22-22951 (S.D. Fla.).  Without specifically addressing this joint representation, the declaration in support of the Q&B Application suggests that the Debtors will be the sole source of fees in connection with all matters for which the Debtors are retaining Q&B.  *See* Ex. B to Q&B Application, *Declaration of Andrew W. Beilfuss, on Behalf of Quarles & Brady LLP, as Proposed Special Counsel to the Debtors*, ¶ 18 ("Neither I nor Q&B has or will represent any entity in connection with these cases

---

[13] The Committee has identified additional deficiencies with respect to the specific retentions that require further modifications.

other than VPX and JHO (and Mr. Owoc in the Warner Litigation), and *neither I nor Q&B will accept any fee from any other party or parties in connection with these cases other than the Debtors, except as may be otherwise authorized by the Court*.") (emphasis added).  Even if the Debtors can demonstrate that it is in the best interests of the estates for Q&B to represent the Debtors in the various matters described in the Q&B Application and discussed herein, there is no basis whatsoever for the estates to bear the additional burden of Mr. Owoc's personal defense in any of these matters, whether pursuant to a joint representation agreement or otherwise.  Indeed, Mr. Owoc's participation in the Debtors' litigations is at the very core of the Committee's many concerns with the proposed Special Counsel Applications and the Debtors' overall litigation strategy.

28.    The Debtors must also provide the basis for approval of the proposed retention retroactive to the Petition Date.  *See In re United Container LLC*, 305 B.R. 120, 129 (Bankr. M.D. Fla. 2003) (to determine whether retroactive approval of retention under Section 327 is justified, courts examine, first, whether the failure to file a timely application was due to excusable neglect, and second, whether the applicant demonstrated it would have been approved initially if a timely application had been filed).  The Q&B Application does not address the factors underlying this analysis, nor does it explain why retention prior to December 9, 2022 is necessary since the engagement letter is dated November 30, 2022 and signed by Mr. Owoc on behalf of Debtors VPX and JHO on December 9, 2022.  *See* Q&B Application, Exhibit A.

*ii.  H&B Application*

29.    The scope of H&B's representation is overly broad and premature.  First, there is no justification for approving their retention for "future proceedings before the Supreme Court" when the OBI Appeal was only filed a few months ago in the Ninth Circuit.  To the extent retention

is appropriate at all, the engagement letter must be narrowly tailored to include only the services necessary and appropriate to be provided during the pendency of the Chapter 11 Cases.  Any future expansion of scope must be approved by the Debtors' board of directors and the Court.

30.    The H&B Application also fails to state whether H&B provided any services to the Debtors prepetition, as required for retention under Section 327(e).  "Section 327(e) expressly requires that, in order to serve as special counsel, the attorney must have previously represented the debtor."  *In re Cecil*, No. 8:12-cv-958-T-27, 2012 WL 3231321, at *4 (M.D. Fla. Aug. 3, 2012) (quoting *Abrass*, 250 B.R. at 435).  The Debtors advised that no such prepetition services were provided.  Therefore, H&B must demonstrate how retention under Section 327(e) is appropriate.

31.    Finally, the Debtors must explain the basis for approval of the proposed retention retroactive to November 3, 2022.  *See United Container*, 305 B.R. at 129.  The H&B Application does not address the factors underlying this analysis.

### iii.   Faulkner ADR Application

32.    As with the H&B Application, the Debtors must clarify the scope of Faulkner ADR's proposed retention.  The application and the engagement letter are inconsistent as to whether the Debtors are retaining Faulkner ADR for the OBI Appeal and the Arbitration Proceeding only, or other matters as well.  *See, e.g.,* Faulkner ADR Application, ¶ 8 ("the Debtors seek authorization to retain Faulkner ADR to represent VPX and JHO in the OBI Appeal as well as to represent VPX and JHO in connection with the "AAA Action" (undefined)); *but see* Faulkner ADR Application, Exhibit A at 1 ("Prosecution of Claim(s)/Action(s) Against AAA" and "providing legal advice and representation to prosecute Vacatur litigation issues in one or more U.S. District Court(s) and potential appeals").

33.     Although not mentioned in the Faulkner ADR Application or Mr. Faulkner's declaration in support thereof, the engagement letter indicates that Faulkner ADR will work as "co-counsel" with another attorney, Phillip J. Loree Jr., Esq. (d/b/a the Loree Law Firm). *Id.* If this is the intent, the Debtors must correct the declaration, which currently states that there is no fee sharing agreement in place, to lawfully disclose this arrangement. Details of the services to be performed by Mr. Loree, affirmation that there will be no overlap in services, and the fee arrangement must also be disclosed.

34.     Further, Mr. Loree should be required to file a declaration in support of the Faulkner ADR Application setting forth the Loree Law Firm's conflict disclosures as required by Federal Rule of Bankruptcy Procedure 2014(a). *See In re eToys, Inc.*, 331 B.R. 176, 189 (Bankr. D. Del. 2005) ("The duty to disclose under Rule 2014 is considered sacrosanct because the complete and candid disclosure by an attorney seeking employment is indispensable to the court's discharge of its duty to assure the attorney's eligibility for employment under §327 and to make an informed decision on whether the engagement is in the best interest of the estate.").

35.     In addition, many inconsistencies exist with respect to Faulkner ADR's relationship with the Debtors. Specifically, the Debtors represented to the Committee that Faulkner ADR did not provide services to the Debtors prepetition; however, the SOFA lists a payment of $50,000 to Faulkner ADR on July 19, 2022 and includes unpaid services of $68,000. Moreover, the Debtors' representation directly contradicts the declaration in support of the Faulkner ADR Application, which states that Faulkner *has* previously provided services to the Debtors. *See, e.g., Declaration of Richard D. Faulkner, on Behalf of Faulkner ADR Law, PLLC, as Proposed Special Counsel to the Debtors*, Ex. B to Faulkner ADR Application, ¶ 4 ("Faulkner Law has previously consulted with counsel for Debtors, but has not entered an appearance in any arbitration or litigation."); ¶ 5.a.

("Faulkner Law has provided advice to Debtors relating to arbitration issues and to the arbitration and related litigation seeking to vacate and oppose confirmation of the arbitration award between Debtors, Orange Bang and Monster Energy, Inc. and to appeal confirmation of the arbitration award by the district court.").

36.     To the extent Faulkner ADR provided services prepetition, the Debtors should produce a copy of Faulkner ADR's prepetition engagement letter, if any, and confirm whether Faulkner ADR received a prepetition retainer.  If this is a new relationship, the Debtors must demonstrate how retention pursuant to Section 327(e) is appropriate.

37.     Additionally, the Faulkner ADR Application should be amended to disclose whether any relationship exists between attorney Richard Faulkner and Debtors' employee Ashley Faulkner.  [*See* Docket No. 323, Schedule G].

38.     Finally, the Debtors must explain the basis for approval of the proposed retention retroactive to November 1, 2022, as requested.  *See United Container*, 305 B.R. at 129.  The Faulkner ADR Application does not provide sufficient information for the Court to conduct this analysis, nor does it explain why retention prior to December 21, 2022 is necessary since the engagement letter is signed by the Debtors' Chief Litigation Counsel, Gregg Metzger, on December 21, 2022.  *See* Faulkner ADR Application, Exhibit A.

**WHEREFORE**, the Committee respectfully requests that the Court deny the Debtors' Special Counsel Applications other than the Q&B Application solely in connection with the False Advertising Litigation, provided that the Q&B retention includes the Universal Modifications and addresses the deficiencies identified herein, or (i) condition entry of any orders approving the Special Counsel Applications on the Universal Modifications and other retention-specific changes requested herein, and (ii) order such other and further relief as is just and proper.

Dated:  January 17, 2023

**LOWENSTEIN SANDLER LLP**

Jeffrey L. Cohen, Esq.
Eric Chafetz, Esq.
Jordana L. Renert, Esq.
Lindsay H. Sklar, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: jrenert@lowenstein.com
Email: lsklar@lowenstein.com
                -and-
Nicole Fulfree, Esq.
Erica G. Mannix, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2502
Facsimile: (973) 597-2400
Email: nfulfree@lowenstein.com
Email: emannix@lowenstein.com

**SEQUOR LAW, P.A.**

By: */s/ Leyza F. Blanco*
Leyza F. Blanco
Florida Bar No.: 104639
Juan J. Mendoza
Florida Bar No.: 113587
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202
Email: lblanco@sequorlaw.com
Email: fmenendez@sequorlaw.com
Email: jmendoza@sequorlaw.com

*Counsel to the Official Committee of*
*Unsecured Creditors*