# EXHIBIT G

Clerk of the Superior Court
*** Electronically Filed ***
M. De La Cruz, Deputy
8/10/2022 1:10:48 PM
Filing ID 14680365

Scott Reynolds (State Bar No. 013652)
SATTERLEE GIBBS PLLC
3133 W. Frye Road, Suite 101
Chandler, Arizona 85226
Telephone: 480-702-1211
Fax: 480-546-3218
E-mail: scott@sgazlaw.com
        minuteentries@sgazlaw.com

Attorneys for Defendant/Counterclaimant/Cross-Claimant Hardrock Concrete Placement Co. Inc.

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| NEXUS STEEL, LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>JHO REAL ESTATE INVESTMENT, LLC., a Florida limited liability company, VITAL PHARMACEUTICALS, INC., a Florida corporation, d/b/a BANG, LLC, a Florida limited liability company, FABCO METAL PRODUCTS, LLC., a Florida limited liability company, BELVAC PRODUCTION MACHINERY, INC., a Virginia corporation, TRUIST BANK, a North Carolina company, ISEC, INC., a Colorado corporation, HEAVY EQUIPMENT MOVERS & INSTALLATION, LLC, a Delaware limited liability company, HARDROCK CONCRETE PLACEMENT CO. INC., an Arizona corporation, STELLAR GROUP, INC., a Florida corporation, FAITH TECHNOLOGIES INC., a Wisconsin corporation, INTEGRATED MASONRY, | Case No. CV2022-008873<br><br>**HARDROCK CONCRETE PLACEMENT CO., INC.'S ANSWER, COUNTERCLAIM AND CROSSCLAIMS**<br><br>**(Assigned to the Honorable Brad Astrowsky)** |

1

an Arizona company, HACI MECHANICAL CONTRACTORS, INC., an Arizona corporation, TRENCH SHORE RENTALS, an Arizona corporation, THE MARICOPA COUNTY TREASURERER'S OFFICE, BLACK & WHITE CORPORATIONS 1-10,

Defendants.

For its Answer to Plaintiff Nexus Steel, LLC's ("Plaintiff") Complaint, Defendant Hardrock Concrete Placement Co. Inc. ("Hardrock") admits, denies, and affirmatively alleges as follows:

### GENERAL ALLEGATIONS

1.     Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 1 of Plaintiff's Complaint and, therefore, denies them.

2.     Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 2 of Plaintiff's Complaint and, therefore, denies them.

3.     Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 3 of Plaintiff's Complaint and, therefore, denies them.

4.     Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 4 of Plaintiff's Complaint and, therefore, denies them.

5.     Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 5 of Plaintiff's Complaint and, therefore, denies them.

6.      Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 6 of Plaintiff's Complaint and, therefore, denies them.

7.      Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 7 of Plaintiff's Complaint and, therefore, denies them.

8.      Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 8 of Plaintiff's Complaint and, therefore, denies them.

9.      Hardrock admits the allegations in Paragraph 9 of Plaintiff's Complaint.

10.     Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 10 of Plaintiff's Complaint and, therefore, denies them.

11.     Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 11 of Plaintiff's Complaint and, therefore, denies them.

12.     Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 12 of Plaintiff's Complaint and, therefore, denies them.

13.     Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 13 of Plaintiff's Complaint and, therefore, denies them.

14.     Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 14 of Plaintiff's Complaint and, therefore, denies them.

15.     Hardrock is without knowledge or information sufficient to form a belief

as to the truth or falsity of the allegations contained in Paragraph 15 of Plaintiff's Complaint and, therefore, denies them.

16.    Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 16 of Plaintiff's Complaint and, therefore, denies them.

17.    Hardrock agrees that Tier III is appropriate for this case.

18.    Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in both Paragraphs that are identified as number 18 of Plaintiff's Complaint and, therefore, denies them.

19.    Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 19 of Plaintiff's Complaint and, therefore, denies them.

20.    Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 20 of Plaintiff's Complaint and, therefore, denies them.

21.    Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 21 of Plaintiff's Complaint and, therefore, denies them.

22.    Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 22 of Plaintiff's Complaint and, therefore, denies them.

23.    Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 23 of Plaintiff's Complaint and, therefore, denies them.

## COUNT I
### (Lien Foreclosure – All Defendants)

24.     Hardrock incorporates its prior responses as though fully set forth herein.

25.     Hardrock is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 25 of Plaintiff's Complaint and, therefore, denies them.

26.     To the extent valid, Hardrock admits the allegations contained in Paragraph 26 of Plaintiff's Complaint.

27.     Hardrock denies the allegations contained in Paragraph 27 of Plaintiff's Complaint.

28.     Hardrock denies the allegations contained in Paragraph 28 of Plaintiff's Complaint.

29.     Hardrock incorporates its prior responses as though fully set forth herein.

30.     The allegations set forth in Paragraphs 30-44 are neither alleged against, nor concern Hardrock, and, accordingly, no Answer is required.

## AFFIRMATIVE AND OTHER DEFENSES

1.     To the extent not addressed above, all remaining facts and allegations contained within Plaintiff's Complaint are expressly denied.

2.     Plaintiff has failed to state a cause or causes of action upon which relief may be granted.

3.     Contribution.

4.     Failure to comply with statutory requirements.

5.     Non-parties to this action may be solely or comparatively at fault. Pursuant to Rule 26 (b)(5), Arizona Rules of Civil Procedure and A.R.S. § 12-2506(B), *et seq*. Defendants reserve the right to have the trier of fact assess fault against these non-parties.

6.      Defendant Hardrock does not know whether additional defenses will prove to be applicable and therefore reserve the right to add affirmative defenses dependent upon subsequently discovered information including, but not limited to, those affirmative defenses contained within Rules 8(c) and 12(b) of the Arizona Rules of Civil Procedure.

**WHEREFORE,** Hardrock requests that Plaintiff take nothing on its Complaint and request that judgment be entered in favor of Hardrock and award Hardrock its attorneys' fees, costs, and charges as well as such further relief as it deems appropriate under the circumstances.

## COUNTERCLAIM AND CROSS-CLAIMS

Hardrock Concrete Placement Co., Inc. ("Hardrock") for its Counterclaim against Nexus Steel, LLC ("Nexus") and Cross-Claims against JHO Real Estate Investment, LLC ("JHO"), Vital Pharmaceuticals, Inc. ("Vital") d/b/a Bang, LLC, Fabco Metal Products, LLC ("Fabco"), Belvac Production Machinery, Inc. ("Belvac"), Truist Bank ("Truist"), ISEC, Inc. ("ISEC"), Heavy Equipment Movers & Installation, Inc ("HEMI"), Stellar Group, Inc. ("Stellar"), Faith Technologies, Inc. ("Faith"), Integrated Masonry ("Integrated"), HACI Mechanical Contractors, Inc. ("HACI"), Trench Shore Rentals ("Trench"), and the Maricopa County Treasurer's Office ("MCT"), hereby alleges and states as follows:

1.      Hardrock is an Arizona corporation with its principal place of business in Maricopa County, Arizona.  Hardrock is a duly licensed contractor with the Arizona Registrar of Contractors bearing license numbers 096338 and 102993.  Hardrock provided concrete materials and other services for the project located at 1635 South 43rd Avenue, Phoenix, Arizona, APN 105-14-001Q (hereinafter the "Property").

2.      JHO is a Florida corporation which is the owner and operator of the Property located at 1635 South 43rd Avenue, Phoenix, Arizona 85009, APN 105-14-001Q located in Maricopa County that is the subject of this action.

3.     Vital is a Florida corporation which operates an energy drink bottling facility and who otherwise may have an ownership or other interest in the Property that is the subject of this action.

4.     Fabco Metal Products, LLC is a Florida limited liability company which recorded a Mechanic's Lien on the Property.

5.     Belvac is a Virginia corporation which recorded a Mechanic's Lien on the Property.

6.     Truist is a North Carolina bank which recorded a Deed of Trust on the Property.

7.     ISEC is a Colorado corporation which recorded a Mechanic's Lien on the Property.

8.     HEMI is a Delaware limited liability company which recorded a Mechanic's Lien on the Property.

9.     Stellar is a Florida corporation who was the General Contractor on the Project and, upon information and belief, recorded a Mechanic's Lien on the Property.

10.     Faith is a Wisconsin which recorded a Mechanic's Lien on the Property.

11.     Integrated is an Arizona company which recorded a Mechanic's Lien on the Property.

12.     HACI is an Arizona corporation which recorded a Mechanic's Lien on the Property.

13.     Trench is an Arizona corporation which recorded a Mechanic's Lien on the Property.

14.     Upon information and belief, the MCT recorded a tax lien on the Property.

15.     The contracts that are the basis of this lawsuit were entered into, executed and breached in Maricopa County, Arizona.  The lien sought to be foreclosed by this Counterclaim and Cross-Claims are upon Property situated in Maricopa County, Arizona.

16. This Court has jurisdiction over the subject matter and the parties to this action. Venue is proper in this Court.

**GENERAL ALLEGATIONS**

17. On November 12, 2020, Hardrock, as a concrete subcontractor and Stellar as the general contractor, entered into a written agreement ("Agreement") for labor, material, and services to be provided by Hardrock to a project known as the Bang Phoenix Can Manufacturing Project #23006976 (the "Project"), located at 1635 South 43rd Avenue, Phoenix, Arizona, APN 105-14-001Q. A copy of the Agreement is attached hereto as Tab 1, Exhibit B thereto which is incorporated by this reference.

18. On November 18, 2020, and in accordance with A.R.S. § 33-992.01, Hardrock timely provided its 20-Day Preliminary Notice. A copy of the mailing receipt is attached hereto as Tab 1, Exhibit C thereto which is incorporated by this reference.

19. The legal description of the Property upon which Hardrock's labor, material, and services were provided is more specifically identified in Tab 1, Exhibit A thereto, which is attached hereto and incorporation by this reference ("Property").

20. The title to the Property is, upon information and belief, vested in JHO and/or Vital.

21. Commencing on or about November 16, 2020, and continuing, Hardrock furnished labor and materials and performed concrete construction work on the Property in accordance with the terms of the Agreement, change orders and other instructions from Stellar or its authorized agents.

22. Hardrock has fulfilled and performed all of its contractual obligations and duties under the Agreement, change orders and other instructions from Stellar or any of their authorized agents.

23.    Hardrock has made demand for payment from Stellar in the amount of $669,195.67 and Stellar has failed to make payment.

24.    Counterdefendant and Cross-Defendants may have an actual or beneficial interest in the Property.

**FIRST CLAIM FOR RELIEF**

**(Judicial Foreclosure of Lien – Counterdefendant and All Cross-Defendants)**

25.    Hardrock realleges all of the allegations set forth herein.

26.    Commencing on or about November 16, 2020, and continuing, Hardrock furnished labor and materials and performed concrete construction work on the Project and the Property in accordance with the terms of the Agreement, change orders and other instructions from Stellar or its authorized agents which is owned or reputed to be owned by JHO and/or Vital.

27.    The labor and materials furnished by Hardrock were installed and incorporated into the building structures or improvements on the Property.

28.    The unpaid liquidated balance due to Hardrock for the labor and materials furnished is $669,195.67, plus interest, costs, and fees.

29.    The amount set forth above is the reasonable value of the labor and materials supplied by Hardrock to the Property after deducting just credits and offsets.

30.    On March 22, 2022, Hardrock, duly and timely, recorded in the Maricopa County Recorder's Office, at instrument number 2022-0257254, its Notice and Claim of Mechanic's, Materialman's, or Professional Services Lien (in the amount of $669,195.67), exclusive of interest, costs, and fees.  A copy of the recorded Notice of Claim of Lien is attached as Tab 1 and incorporated by this reference.  Hardrock's Lien was also duly mailed to the reputed owners or those have a possible leasehold interest in the Project – JHO and Vital.

31.     Hardrock has performed all conditions precedent to the fixing of a good and sufficient lien under the provisions of Article 6, Chapter 7, Title 33 of the Arizona Revised Statutes, in favor of Hardrock and against the improvements and the Property.

32.     At the time of Hardrock's Notice and Claim of Lien was recorded, the construction of the project has not yet been completed, or in the alternative, not more than sixty (60) days had elapsed from the date of completion to the date the Notice and Claim of Lien was recorded.

33.     Upon information and belief, no Notice of Completion has been recorded at the time that Hardrock's Notice of Claim of Lien was recorded.  In the alternative, if a Notice of Completion was recorded, it was not served upon Hardrock in accordance with the requirement of A.R.S. § 33-993(f).

34.     Since the recording of the Notice of Claim of Lien, Hardrock has not been paid any part of the amount set forth in said Lien.

35.     Hardrock has impressed and secured a valid Lien in accordance with A.R.S. § 33-993, and entitled to enforce and foreclose upon the Lien, and to have the subject Property sold to satisfy the amount set forth in the Notice of Claim of Lien, including, all interest, attorneys' fees and costs.

36.     Except as to those mechanic's liens or other liens that may have been filed by other person, which are valid, and which mechanic's liens or other liens are on parity with Hardrock's Lien, the right, title, interest and claim of said other claimants in and to the Property and improvements thereon are junior and inferior to the Lien of Hardrock.

WHEREFORE, Hardrock requests judgment against Counterdefendant and Cross-Defendants as follows:

A. That Hardrock be determined and adjudged to have a valid lien on the Property and the improvements in an amount to be proven at trial, but not less that the

sum of $669,195.67, together with pre-judgment and post judgment interest, costs, and attorneys' fees;

B. That Hardrock's Lien on the Property and improvements thereon be foreclosed and that each and all of the Counterdefendants and Cross-Defendants, except those valid mechanic's liens or other valid liens on parity with Hardrock's Lien, be decreed to have claims junior and inferior to the lien of Hardrock;

C. That Counterdefendant and Cross-Defendants be forever barred and foreclosed of all right, title, interest, lien and equity in the Property and the improvements thereon;

D. That the Court order that the Property and improvements thereon be sold and a writ or other special execution be issued to the Sherriff of Maricopa County, Arizona directing him or her to seize and sell the Property, according to the law and practices of this Court, and that the proceeds of the sale be applied in satisfaction of the amount due to Hardrock, including all pre and post judgment interest, costs and attorneys' fees;

E. In the event of default, attorneys' fees in the amount of $25,000;

F. That Hardrock have judgment against the Counterdefendant and Cross-defendants for the amount of any deficiency after such sale;

G. For such other and further relief that this Court deems just and appropriate.

**SECOND CLAIM FOR RELIEF**

**(Breach of Contract - Stellar)**

37.     Hardrock realleges all of the allegations set forth herein.

38.     Cross-Defendant Stellar has failed to make payment as required by the Agreement.

39.     As a consequence of Stellar's breach, Hardrock has been damaged in the amount to be determined at trial, but not less than $669,195.67, plus pre and post judgment interest, attorneys' fees (A.R.S. 12-341.01) and costs.

WHEREFORE, Hardrock requests judgment against Stellar as follows:

A.  For damages in an amount to be determined at trial, but in no event less than $669,195.67;

B.  For pre and post judgment interest;

C.  For attorneys' fees and costs;

D.  In the event of default, attorneys' fees in the amount of $25,000;

E.  For such further relief as this Court deems just and appropriate.

**THIRD CLAIM FOR RELIEF**

**(Unjust Enrichment – JHO and Vital)**

40.     Hardrock realleges all of the allegations set forth herein.

41.     Hardrock provided concrete materials and labor for the Project which was a benefit to the subject Property according to the reasonable value of such materials and materials, which has enriched JHO and Vital.

42.     To date, Hardrock not been paid in the amount of $669,195.67 for those materials and services which enriched JHO and Vital which has resulted in a detriment or impoverishment to Hardrock.

43.     As such, JHO and/or Vital have been unjustly enriched and it is inequitable for JHO and/or Vital to retain said enrichment to the detriment of Hardrock, and, accordingly, Hardrock is entitled to payment from JHO and/or Vital for the materials and services provided by Hardrock.

WHEREFORE, Hardrock requests judgment against JHO and Vital as follows:

A.  For damages in an amount to be determined at trial, but in no event less than $669,195.67;

B.  For pre and post judgment interest;

C.  For attorneys' fees and costs;

D.  In the event of default, attorneys' fees in the amount of $25,000;

E.  For such further relief as this Court deems just and appropriate.

DATED this 10th day of August, 2022.

SATTERLEE GIBBS PLLC

By:  /s/ Scott Reynolds
     Scott Reynolds
     3133 W. Frye Road, Suite 101
     Chandler, Arizona 85226
     Attorneys for
     Defendant/Counterclaimant/Cross-Claimant

ORIGINAL of the foregoing e-filed and e-served
this 10th day of August, 2022, to:

Richard C. Gramlich
TIFFANY & BOSCO
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
Attorneys for Plaintiff/Counterdefendant Nexus Steel, LLC

John L. Condrey
GORDON REES SCULLY MANSUKHANI, LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004
Attorneys for Cross-Defendant Fabco Metal Products, LLC

COPY mailed this 10th day of August, 2022, to:

JHO Real Estate Investment, LLC
1600 N Park Drive
Weston, FL 33326

Vital Pharmaceuticals, Inc.
1600 N Park Drive
Weston, FL 33326

Belvac Production Machinery, Inc.
237 Graves Mill Road
Lynchburg, VA 24502


Truist Bank
Attn: Agency Services Manager
Agency Services
303 Peachtree St., NE
25th Floor
Atlanta, GA 30308

ISEC Incorporated
6000 Greenwood Plaza Blvd., Suite 200
Greenwood Village, CO 80111

Heavy Equipment Movers & Installation
126 Industrial Drive
Maysville, GA 30558

Stellar Group, Inc.
2900 Hartley Road
Jacksonville, Florida 32257

Faith Technologies, Incorporated
225 Man Street
Menasha Wisconsin 54952

Integrated Masonry
3241 E Shea Blvd, Ste 613
Phoenix Arizona 85028

HACI Mechanical Contractors, Inc.
2108 W Shangri La Rd
Phoenix Arizona 85029

Trench Shore Rentals
17200 N Perimeter, Ste 103
Scottsdale, Arizona 85255

Maricopa County Treasurer
301 W Jefferson Street
Suite 100
Phoenix Arizona 85003


By: */s/ Scott Reynolds*  _____

**TAB 1**

OFFICIAL RECORDS OF MARICOPA
COUNTY RECORDER STEPHEN RICHER
ELECTRONIC RECORDING
20220257254,03/22/2022
03:07,satterlee009-30-1-1--,N

**WHEN RECORDED RETURN TO:**

SATTERLEE GIBBS
3133 W. Frye Road, Suite 101
Chandler, Arizona 85226
Attention: Scott Reynolds

Recorder's Use

---

## NOTICE AND CLAIM OF
## MECHANIC'S, MATERIALMAN'S,
## OR PROFESSIONAL SERVICES LIEN

1.  **CLAIMANT.** Party on whose behalf this Lien is filed and served (the "Claimant"):

        Hardrock Concrete Placement Co., Inc.
        4839 West Brill Street
        Phoenix, Arizona 85043

2.  **REAL PROPERTY.** The real property sought to be charged with this Lien is the following described land, and includes any and all structures and improvements located thereon (the "Real Property"):

    (a)    Address of Location of Real Property:

        Phoenix Can Manufacturing
        1635 South 43rd Avenue
        Phoenix, Arizona 85009

    (b)    Legal Description of Real Property:

        The Legal Description is attached hereto as Exhibit "A" and is incorporated herein by this reference. APN 105-14-001Q

3.  **OWNER.** Owner or Reputed Owner of the Property (the "Owner"):

        Vital Pharmaceuticals, Inc.
        JHO Real Estate Investment LLC
        1600 N. Park Drive
        Weston, Florida 33326

4. **OWNER'S AGENT.** The name of the person by whom Claimant was employed, or to whom Claimant furnished the Materials or Services is:

> Stellar Group, Inc.
> 2900 Hartley Road
> Jacksonville, Florida 32257

5. **PROJECT.** The name or description of Owner's Project, if any, and the nature of the construction, alteration, repair, expansion, addition or improvement of the buildings, other structures or improvements on the Real Property (the "Project"), are as follows:

> Bang Phoenix Can Manufacturing – Project #23006976

6. **CONTRACT.** The Materials or Services were furnished by Claimant to the Project pursuant to a Contract with the following terms, time given, and conditions ("Terms"):

> Stellar Group Subcontractor Agreement dated November 12, 2020 and Subcontract Change Orders attached collectively as Exhibit "B".

7. **AMOUNT OF CLAIM.** After deducting all just offsets and credits, the Amount of Claim herein demanded by Claimant is as follows (which is also the reasonable value of the materials and services for which Claimant has not been paid). This Amount of Claim shall bear interest at 10% per annum. In addition, the Claimant shall be entitled to reimbursement for the cost of preparation and foreclosure of this Lien, pursuant to A.R.S. § 33-995(E) and 33-998(B), costs and attorneys' fees incurred in collecting this debt:

> $669,195.67

8. **MATERIALS OR SERVICES.** Claimant furnished to the Project the following types of materials and/or services, including labor, professional services, materials, machinery, fixture or tools (the "Materials or Services").

> Furnishing concrete, labor and materials.

9. **COMPLETION DATE.** Completion of the Project occurred on the following date:

> As of February 11, 2022, all work on the Project has ceased. Completion of the Project will occur as provided for in A.R.S. § 33-993(A).

10.    **COMMENCEMENT DATE.**  Materials and Services were first furnished to the Project:

      November 16, 2020

11.    **DATE OF PRE-LIENS.**  The preliminary twenty-day notices (the "Pre-Liens") were mailed pursuant to A.R.S. § 33-992.01 and given on the following dates:

      November 18, 2020

     A copy of the Pre-Liens and the proof of mailings required by A.R.S. § 33-992.02 are attached hereto collectively and incorporated by this reference as Exhibit "C".

     WHEREFORE, and pursuant to A.R.S. § 33-993, Claimant claims and fixes a lien upon the Real Property in the Amount of Claim provided herein by causing this Notice and Claim to be recorded with the County Recorder of the county in which the Real Property is situated and a copy to be served within a reasonable time upon the Owner if he can be found within that county.

           HARDROCK CONCRETE PLACEMENT CO., INC.

Dated: March _18_ , 2022    By

           Dean Abrahamson Its Chief Financial Officer

STATE OF ARIZONA      )
                  ) ss.
County of Maricopa      )

On this _18th_ day of March, 2022, Dean Abrahamson, who is known to me, or satisfactorily proven to me, to be the person whose name is subscribed to this document, personally appeared before me, a notary public, and who being duly sworn upon oath, stated that he read this document and knows of his own knowledge that the facts stated herein are true and correct, except those matters based upon information, which he believes to be true, and acknowledged that he executed this document in the capacity indicated for the principal named.

My Commission Expires:              Notary Public

May 8, 2024

RACHEL Y CAZARES
Notary Public - Arizona
Maricopa County
Commission # 580601
My Comm. Expires May 8, 2024

-3-

# Exhibit A

## Exhibit A
### Legal Description
### (Assessor Parcel Number 105-14-001Q)

That portion of the Northwest quarter of Section 15, Township 1 North, Range 2 East of the Gila and Salt River Meridian, Maricopa County, Arizona, described as follows:

Beginning at the Northwest corner of the North half of the Southwest quarter of said Northwest quarter;

Thence South (assumed bearing for purposes of this description) along the West line of said section, a distance of 660.00 feet to a line that is parallel with and distant 1968.46 feet Southerly measured at right angles from the North line of said section;

Thence South 89 degrees 50 minutes East, along said parallel line, a distance of 1307.28 feet to a line that is parallel with and distant 10.00 feet Westerly, measured at right angle, from the East line of said Southwest quarter, last said parallel line being also the center line of an existing drill track;

Thence North 00 degrees 01 minutes West, along last said parallel line, a distance of 1095.68 feet to a point of CUSP;

Thence Southwesterly along a tangent curve concave Northwesterly having a radius of 642.43 feet, through a central angle of 05 degrees 43 minutes 29 seconds, an arc distance of 64.19 feet;

Thence South 05 degrees 42 minutes 29 seconds West, tangent to said curve, a distance 26.38 feet;

Thence Southwesterly and Westerly along a tangent curve to the right having a radius 382.24 feet, through a central angle of 84 degrees 27 minutes 31 seconds, an arc distance of 563.45 feet to a point of tangency in a line that is parallel with and distant 1308.46 feet Southerly, measured at right angles, from said North line;

Thence North 89 degrees 50 minutes West, along last said parallel line, a distance of 919.70 feet to the point of beginning.

EXCEPTING THEREFROM that portion of said property lying below a depth of 500.00 feet measured vertically from the contour of the surface thereof;

Provided, however, that said grantor, its successors and assigns, shall not have the right for any and all purposes to enter upon, into or through the surface of the portion of said property lying above 500.00 feet, measured vertically from the contour of the surface of said property, as reserved in Deed recorded in Docket 9581, Page 180 and also recorded in Docket 9590, Page 873; and

EXCEPT all rights retained by Southern Pacific Company, a Delaware corporation in Warranty Deed recorded in Docket 3976, Page 407 of official records of Maricopa County, Arizona.

# Exhibit B

DocuSign Envelope ID: 32CC09D8-5F1B-425F-B5B2-09EDDCEC3356

# SUBCONTRACT
## Stellar Group, Inc.
2900 Hartley Road
Jacksonville, FL 32257

| | |
|---|---|
| **Subcontractor:** Hardrock Concrete Placement Co. Inc.<br>4839 W Brill St<br>Phoenix Arizona 85043-1815 | **Project Name and Location:** Bang Energy – Phoenix Can Manufacturing<br>1635 South 43rd Avenue<br>Phoenix Arizona 85009 |
| **Attention:** Cindy Kennemer | **Attention:** Brian Edberg |
| **Phone:** (602) 233-3334 | **Mobile:** (904) 349-0640 |
| **Fax:** (602) 233-2777 | **E-Mail:** bedberg@stellar.net |
| **E-Mail:** ckennemer@hrconcrete.com | |

| Date | SC # | Project # | Contract Type | FOB | Schedule |
|---|---|---|---|---|---|
| 11/9/2020 | 23006976-SUB-03 | 23006976 | Lump Sum | Jobsite | 10/23/2020 |

**Scope of Work: Concrete**

This Subcontract is made by and between Stellar Group, Incorporated, d/b/a Stellar, hereinafter referred to as Contractor, and the Subcontractor named above, at Jacksonville, Florida. In consideration of the mutual promises and undertakings set forth herein, Contractor and Subcontractor hereby agree to the terms and conditions set forth herein, including the Terms and Conditions attached hereto. Subcontractor agrees to perform and complete the following Work:

**A. Work:** Subcontractor agrees to perform and complete the scope of work generally as described in Exhibit A attached hereto and incorporated herein.

**B. Construction Progress Schedule:** Subcontractor agrees to complete the Work in strict accordance with the Construction Progress Schedule attached hereto as Exhibit B and incorporated herein.

**C. Contractor's Safety Requirements:** Subcontractor agrees to conform to Contractor's Request for Documentation, Bid Considerations, and Jobsite Safety Rules attached hereto as Exhibit C and incorporated herein.

**ALL FOR THE LUMP SUM OF** .................................................................................................................. **$2,111,428.00**

All licenses, permits, fees, taxes and insurance with Contractor named as additional insured included)

**Attachments:** Exhibit-F-General Requirements.pdf,  Exhibit-E—Stellar-Guide-for-Subcontractors-Usage-in-Procore.pdf,  Exhibit-D-PHX VPX-Stellar DBIA_530__535_Cost_Plus_GMP 2020-07-28_Executed (3).pdf,  23006976 - Arizona Form 5000.pdf,  23006976 - Subcontract Attachments.pdf,  Exhibit-C-JSP- Bang-Energy-Phoenix.pdf,  23006976 - Arizona Form 5005.pdf,  Exhibit-B-06976- Bang PHX Can Manufacturing Schedule_PRELIMINARY.pdf,  Concrete Submittal Log dated 11.09.2020.pdf,  Concrete Drawing Log as of 10.13.2020.pdf,  23006976 - Subcontract Attachments.pdf, Exhibit_A_23006976_SUB-03_Concrete.pdf

**FOR ACCOUNTING PURPOSES ONLY:**

| Cost Code | | Distributed Value |
|---|---|---|
| 03-0301 - | 1760 | $329,119.00 |
| 03-0302 - | 1760 | $771,203.00 |
| 03-0304 - | 1760 | $697,496.00 |
| 03-0305 - | 1760 | $145,796.00 |
| 03-0306 - | 1760 | $122,000.00 |
| 03-0307 - | 1760 | $45,814.00 |
| | **Total:** | $2,111,428.00 |

**THIS SUBCONTRACT INCLUDES AND IS SUBJECT TO THE TERMS AND CONDITIONS ATTACHED HERETO AND INCORPORATED HEREIN.**

IN WITNESS WHEREOF, the Subcontractor and Contractor have executed this Subcontract on the date set forth above.

**HARDROCK CONCRETE PLACEMENT CO. INC.**

Subcontractor

Signed and Dated: _Cindy Kennemer_    11/12/2020 | 10:15 AM PST
451EEBACE4A7454...

By: Cindy Kennemer

**STELLAR GROUP, INCORPORATED**

Contractor

Signed and Dated: _____

By: Jonah Petoskey
Senior Project Manager

DocuSign Envelope ID: 32CC09D8-5F1B-425F-B5B2-09EDDCEC3356

**CONTRACT**

**Stellar Group, Inc.**

| | | | |
|---|---|---|---|
| **SC #:** | 23006976-SUB-03 | **Date:** | 11/9/2020 |
| **Subcontractor:** | Hardrock Concrete Placement Co. Inc. | **Page:** | 2 of 6 |

Contract Agreement for: Bang Energy – Phoenix Can Manufacturing

Subcontract Agreement Addendum

This addendum modifies the accompanying Subcontract Agreement (together the "Subcontract Agreement") as set forth below.

## GENERAL NOTES

1.     Subcontractor and any Sub-Subcontractors must possess and, at the time of execution of this Agreement, furnish a copy of a valid state Contractors license for the state where the Project is located and for the scope of Work described herein. This Subcontractor must certify and warrant and furnish proof that it is currently registered to do business and remit state sales and use tax in the state where the Project is located. Contractor reserves the right to Withhold payment until this Subcontractor furnishes such proof. It is the Subcontractor's responsibility to obtain and keep in force proper licensing in accordance with the laws and statutes of the state where the Project is located and to otherwise comply with all applicable federal, state and local laws, ordinances and regulations. Any Sub-Subcontractor must also comply with these provisions, and Subcontractor shall expressly incorporate these provisions into any agreement in which the Subcontractor subcontracts with another to perform any portion of the Work described herein.

2.     Immediately upon execution of this Subcontract, Subcontractor shall furnish to the Contractor all certificates of insurance in accordance with Paragraph Six Insurance Requirements of the Terms and Conditions. Subcontractor must submit all certificates of insurance prior to performing any on this Project.

3.     Subcontractor agrees to diligently pursue the Work and to meet the requirements set forth in the Construction Progress Schedule. In the event the Subcontractor delays the progress of the Work, he shall bear all costs of overtime, expediting and all special freight or other charges required to bring its progress to the level required. This Subcontractor may also be subject to damages or claims by the Contractor or other subcontractors brought about by Subcontractor's negligence or its failure to adhere to the Construction Progress Schedule for any reason. Failure to comply with the Construction Progress Schedule may result in default under Paragraph Seven Default and Remedies of the Terms and Conditions.

4.     Work hours shall be established by the Contractor and shall be followed by the Subcontractor. The Subcontractor must work during regular hours and will not be permitted to work at night and/or on weekends. All overtime work must be approved by the Project Superintendent. A representative of Contractor must be on site at all times work is being performed.

5.     Subcontractor shall fully comply with the applicable employment verification procedures for all of its employees. Subcontractor certifies and warrants to Contractor that it maintains a I-9 compliance program for the express purpose of verifying lawful employment authorization to work in the United States for all of Subcontractors employees. The Subcontractor represents that it will follow all I-9 verification, reverification and updating procedures required by the Immigration Reform and Control Act of 1986 for all of Subcontractors employees on the Project. The Subcontractor further represents that it maintains a designated I-9 compliance officer who oversees the Subcontractors I-9 compliance procedures.

6.     Subcontractor shall cooperate fully the instructions and directions of the Project Superintendent and shall coordinate its Work the work of other subcontractors.

7.     Subcontractor shall perform all Work in a neat and professional manner and shall take great care not to damage any work already in place.

8.     The Subcontractor shall furnish shop drawings and submittal data to the Contractor no later than weeks after receipt of this Subcontract. Subcontractor shall submit six copies plus the number to be returned to Subcontractor.

9.     The Subcontractor shall furnish all layout and engineering in connection with its Work.

10.     The Subcontractor shall clean-up all debris from its work on a daily basis. If, in the reasonable opinion of the Contractor, clean-up is not satisfactory, the Contractor, after giving reasonable notice to the Subcontractor, may clean up the premises at the reasonable cost and expense of the subcontractor and deduct such expense from payments due to the Subcontractor.

11.     Subcontractor certifies and warrants that he is aware of all federal, state and local safety requirements and regulations pertaining to the Work, and Subcontractor shall perform its Work in strict compliance with such requirements and regulations. Subcontractor shall also comply with Contractor's safety regulations.

12.     Subcontractor shall furnish Material Safety Data Sheets to the Contractor for material used in the Work and shall have same in its possession at the jobsite. Subcontractor shall pay any fines imposed for lack of the proper Material Safety Data Sheets.

13.     Subcontractor shall comply with the code requirements of any governmental or regulatory body having jurisdiction over the Work. Subcontractor shall bring to the attention of the Contractor any patent discrepancy between the code requirements and the drawings or specifications.

14.     Subcontractor shall be responsible for scheduling, deliveries and receiving of all materials and supplies required for the Work. The Contractor accepts no responsibility for unloading deliveries or the condition or quantity of any materials delivered in the Subcontractor's absence.

15.     It is the Subcontractor's responsibility to store and protect its materials, tools and equipment. Contractor shall not be liable in the event that Subcontractor's materials, tools or equipment are lost, stolen or damaged.

16.     Subcontractor agrees to maintain as built documents and data applicable to the Work. Subcontractor shall provide these documents to (he Contractor prior to release of retainage.

17.     Payments shall be made in accordance with Paragraph Eight, Payment, of the Terms and Conditions attached to the Subcontract.

18.     Prior to submittal of the first Requisition for Payment, Subcontractor shall submit a detailed Schedule of Values acceptable to the Contractor, for the purpose of approving work-in-place and/or materials suitably stored on site.

19.     Prior to the final Requisition for Payment being processed, the Subcontractor shall submit to the Contractor, final lien waivers, final warranty, as-built drawings. copies of inspections and/or permits, three (3) hard copies and one (1) PDF copy of equipment operation and maintenance manuals and any other criteria required by the contract documents.

20.     Subcontractor must use the Contractors •Subcontractor Requisition for Payment' form for all payment requisitions, and the form must bear the Subcontractor's original signature, notarized.

21.     With every requisition for payment, Subcontractor must submit a validly executed Lien Waiver and, in the event that there is a payment bond on the project, a Waiver of Right to Claim Against the Bond, as a condition precedent to payment.

22.     The Subcontractor shall execute IRS document W-9 and return it to the Contractor with the executed Subcontract. Contractors receipt of the executed W-9 is a condition precedent to payment.

23.     Subcontractor hereby acknowledges that it has received contract drawings and specifications for the Work.

24.     Modifications or alterations to this Subcontract are not valid without prior written approval of the Contractor.

25.     Prior to execution of any extra or change in the work, Subcontractor must submit a claim for Change in the Work. and a Project Manager. or other Project Executive, must issue a Subcontract Modification in accordance with Paragraph Three Changes in the Work of the Terms and Conditions. Contractor shall not compensate Subcontractor for such Work if the Subcontractors claim was not timely or the Contractor did not approve the claim and issue a Subcontract Modification. The Superintendent does not have authority to modify the Subcontract or to approve extra work or claims for Change in the Work. Contractor covenants that it shall never direct Subcontractor to perform extra work except by means of a written change order properly executed by its authorized representative.

26.     Subcontractor shall not  in whole or in part assign or sublet this Subcontract or the proceeds due or to become due under this Subcontract without the prior, express and written consent of the Contractor.

27.     Subcontractor shall maintain accurate as-built drawings during construction, and upon request, Subcontractor shall submit the drawings to the Contractor for periodic review. Failure to maintain accurate as-built drawings during construction may result in default under Paragraph Seven Default and Remedies of the Terms and Conditions. Not later than Substantial Completion, the Subcontractor shall deliver one clean set of marked-up drawings to the Contractor for inclusion in the close-out documents with the Owner.

28.     For each day the Subcontractor is on the jobsite, the Subcontractor shall submit a "Subcontractor's Daily Report" form, available at the Contractor's field office, to the Contractors Superintendent by 10:00 a.m. the following morning. Subcontractor's compliance with this provision is a condition precedent to payment.

29.     Subcontractor shall pay all taxes, assessments and premiums under the federal Social Security Act, any applicable unemployment insurance, workers compensation, disability benefits, sates tax, use tax, business tax, personal property tax laws, or other applicable laws now or later in effect payable by reason of or in connection with any part of the Work. In the event that Subcontractor fails to comply with these laws and Contractor becomes liable for such taxes, assessment or premiums, Subcontractor shall indemnify and hold harmless the Contractor and/or the Owner from and against such liability that Contractor and/or the Owner may incur as a result of such failure.

30.     Subcontractor is responsible for having an approved Subcontractor prequalification package on file prior to the issuance of a Subcontract.

DocuSign Envelope ID: 32CC09D8-5F1B-425F-B5B2-09EDDCEC3356

**_ _ CONTRACT**

**Stellar Group, Inc.**

| | | | |
|---|---|---|---|
| **SC #:** | 23006976-SUB-03 | **Date:** | 11/9/2020 |
| **Subcontractor:** | Hardrock Concrete Placement Co. Inc. | **Page:** | 2 of 6 |

## TERMS AND CONDITIONS

1.    GENERAL CONTRACT. Contractor has entered or will enter into a General Contract with the Owner for the Project described on the first page of this Subcontract. Contractor has made or will make copies of the General Contract available to the Subcontractor (with dollar amounts redacted). The Project, including Subcontractor's Work, is to be constructed in accordance with the terms and conditions of the General Contract, including drawings and specifications and general, supplemental and special conditions and other Contract Documents described therein. Subcontractor hereby assumes the same conditions and responsibilities with respect to the performance under this Subcontract that the Contractor assumes toward the Owner with respect to its performance under the General Contract; and vice versa. If the General Contract varies or conflicts with any provision of this Subcontract, including any modification hereof, this Subcontract shall govern.

2.    SCOPE OF WORK. Subcontractor shall provide and pay for all labor, materials, services, tools, equipment and other things necessary to fully perform the Work set forth on the first page hereof, in cooperation with the other trades, in a good and workmanlike manner, and to the reasonable satisfaction and the acceptance of Contractor and Owner or Owner's representative, which shall be final. Subcontractor has examined the premises and ascertained existing site conditions (Including sub-surface conditions) and the nature and location of the Work thereon, the extent such conditions can be discovered by a reasonable and diligent inspection. All Work affected or governed by such site conditions or Work and services required for the thorough and satisfactory execution and completion of the work, whether indicated and specified or not, and regardless of quantity estimated, shall constitute a part of this Subcontract and be performed by Subcontractor without additional charge. Subcontractor expressly waives the right to make any claim arising out of minor variations in the actual condition of the premises from those conditions shown on the drawings and specifications.

3.    CHANGES IN THE WORK. Whenever the Contractor requests extra work, acceleration of work, compression of work or other changes requiring additional payments (collectively referred to herein as a 'Change in the Work') verbally or in writing directly or indirectly, Subcontractor shall present a written claim for compensation to the Contractor for such Change in the Work within ten (10) days of such request. Subcontractor hereby waives any claim for compensation not presented within ten (10) calendar days of the Change in the Work request. No dispute as to adjustment in the contract price due to Change in the Work shall excuse Subcontractor from proceeding within the original scope of Work or Change in the Work.

Subcontractor shall furnish a complete, itemized breakdown in sufficient detail to permit an analysis of all labor, material and equipment for any Change in the Work implemented at the direction of the Contractor and timely claimed in writing by Subcontractor.

In the event a Change in the Work affects the current Construction Progress Schedule, Subcontractor must include the claim for Change in the Work any request for time extension and justifications therefor.

It shall be a condition precedent to Subcontractors recovery of any compensation or damages for a Change in the Work of any type or any extension of time, whether requested (directly or indirectly, verbally or in writing) or caused by Contractor or others, that Subcontractor shall have made a specific written claim for such Change in the Work extension, compensations or damages within ten (10) days of the request or event giving rise to such Change in the Work or extension of time.

Subcontractor shall have no obligation to perform any Change in the Work unless it receives direction to do so in writing signed by Contractor's authorized representative.

Claims for any such Change in the Work, extension, compensation or damages received after ten (10) days are hereby waived by the Subcontractor and shall not be considered by the Contractor.

4.    PERFORMANCE. Subcontractor acknowledges that TIME IS OF THE ESSENCE with respect to Contractor's completing the Project pursuant to the General Contract, and that such completion is substantially dependent upon Subcontractor's performance of this Subcontract on or before the dates set forth in the Construction Progress Schedule and/or elsewhere herein. TIME IS OF THE ESSENCE IN THIS SUBCONTRACT. Subcontractor shall turn the Work over to the Contractor in good condition and free and clear of all claims and liens, and shall, at its expense, indemnify Contractor and defend all suits and pay all claims arising from its actions and omissions or those of its vendors, sub-subcontractors or second-tier subcontractors in its performance of this Subcontract. Subcontractor shall pay the cost of any bond necessary to remove any mechanic's lien from the Project arising out of the Work of Subcontractor, except when a mechanic's lien results from Contractor's breach of its payment obligations or Owner's breach of its payment obligations. Subcontractor covenants, agrees and warrants that he shall not employ any labor which may interfere with labor harmony at the job site or with the introduction and storage of materials and execution of work by other subcontractors. If Subcontractor breaches this covenant and such breach causes a stoppage or slowdown of Work at the jobsite, Subcontractor shall be liable for damages suffered by Contractor caused by such delay in completing the Project, including any liquidated damages in the General Contract imposed on Contractor for failing to complete the Project on the completion date set forth therein. This job shall be run Merit Shop. Subcontractor shall comply with all laws, ordinances and regulations relating to the manner of doing the Work or to the supplying of material, including, without limitation, laws, ordinances, rules, regulations and orders for the safety of persons and property, and Subcontractor shall provide safe working conditions for its employees and all other persons on the jobsite at all times. If Subcontractor discovers any errors, omissions or discrepancies in the drawings or specifications, the General Contractor this Subcontract, Subcontractor shall immediately notify Contractor in writing. Any Work affected by such discoveries which Subcontractor performs prior to notifying Contractor and obtaining Contractors authorization to proceed shall be performed at Subcontractor's risk. Subcontractor acknowledges that it may be performing the Work in the same area where other subcontractors, Contractor or Owner may be working, and the performance of work by the others may temporarily affect the Subcontractor's Work. Subcontractor agrees to fully cooperate with the others to ensure an expeditious completion of the interfaces. If Subcontractor's Work depends on the proper execution of work by others, then prior to the execution of its Work, Subcontractor shall inspect such work and submit a written report to the Contractor describing any defects. Subcontractor's failure to inspect and report any defects, which could have been detected by a reasonable and diligent inspection, prior to commencing its Work, constitutes acceptance of such work by Subcontractor.

5.    INDEMNITY. (a) Indemnity. (1) General Indemnification for Damages to Persons or Property, To the fullest extent permitted by law, Subcontractor shall defend, indemnify and hold harmless the Owner, its officers, directors, agents, and employees; and the Contractor, its officers, directors, agents, and employees; from and against claims, demands, payments, damages, losses and expenses arising from injury to or destruction of tangible property (other than the work itself), including loss of use resulting therefrom or accident, bodily injury, sickness, disease or death, or damage whatsoever to any person, firm or corporation, caused in whole or in part by any act, omission, negligence or default of the Subcontractor or its officers, directors, agents, or employees; or any of the Subcontractor's contractors, subcontractors, sub-subcontractors, materialmen, suppliers, servants, agents, or licensees of any tier or their respective employees.

Subcontractor's indemnification of Contractor and/or Owner shall include all costs, reasonable attorneys' fees, expenses, interest and liabilities incurred in or about any such claim, action or proceeding brought thereon.

If, by reason of such claims, any party brings any claim, action or proceeding against Contractor and/or Owner, Subcontractor, if requested and upon notice from Contractor, shall defend the Contractor and/or Owner against such claim, action or proceeding at Subcontractor's expense by counsel reasonably satisfactory to Contractor and/or Owner.

Additionally, the parties agree that the indemnity provisions herein are hereby incorporated into the project specifications or project bid documents, if any,

CONTRACT

**Stellar Group, Inc.**

| | | | |
|---|---|---|---|
| SC #: | 23006976-SUB-03 | Date: | 11/9/2020 |
| Subcontractor: | Hardrock Concrete Placement Co. Inc. | Page: | 2 of 6 |

(2) Indemnification for Economic Damages-Subcontractor's Labor Force. To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless the Owner, its officers, directors, agents, and employees; and the Contractor, its officers, directors, agents, and employees; from and against claims, demands, payments, damages, losses, premiums, fines and any other expenses arising from Subcontractor's, Subcontractor's contractor's, subcontractor's, sub-subcontractor's, or of any tier or their respective employee's or any other statutory employee of Contractor as defined in the Workers Compensation Laws applicable in the jurisdiction in which the Project is located.

Subcontractor's indemnification of Contractor and/or Owner shall include all costs, reasonable attorneys' fees, reasonable expenses, interest and liabilities incurred in or about any such claim, action or proceeding brought thereon. If by reason of such claims any party brings any claim, action or proceeding against Contractor and/or Owner, Subcontractor, if requested and upon notice from Contractor, shall defend the Contractor and/or Owner against such claim, action or proceeding at Subcontractor's expense by counsel reasonably satisfactory to Contractor and/or Owner.

(3) Indemnification for Damages Associated with Performance of the Contract Work. To the fullest extent permitted by law, Subcontractor shall defend, indemnify and hold harmless the Owner, its officers, directors, agents, and employees; and the Contractor, its officers, directors, agents, and employees; from and against claims, demands, payments, damages, losses and expenses arising from the conduct, management, or performance of the Work or the performance by Subcontractor under the terms of this Subcontract, including, but not limited to, any and all claims arising from any condition of the Work due to any act, omission, negligence, breach or default on the part of Subcontractor in the performance of any obligation on its part to be performed pursuant to this Subcontract or liens relating to Subcontractors Work, regardless of who performs the Work, supplies materials, or asserts such lien, excepting liens resulting from the breach of payment obligations respectively by Owner or Contractor.

Subcontractor's indemnity of Contractor and Owner shall include all costs, reasonable attorneys' fees, reasonable expenses, interest and liabilities incurred in or about any such claim, action or proceeding brought thereon. If, by reason of such claims, any party brings any claim, action or proceeding against Contractor and/or Owner, Subcontractor, if requested and upon notice from Contractor, shall defend the Contractor and/or Owner against such claim, action or proceeding at Subcontractors expense by counsel satisfactory to Contractor and/or Owner.

6.      INSURANCE REQUIREMENTS. At Subcontractor's own expense and prior to commencing the Work, Subcontractor shall procure all insurance coverage as required hereunder and furnish Contractor with certificates of insurance, and copies of additional insured endorsements, executed by an authorized representative from an insurer duly licensed to transact business at the location of the jobsite.

Subcontractor shall maintain the required insurance coverage and provide current evidence of such coverage to the Contractor until the warranty period of the Subcontractor's Work expires.

The insurance coverage as set forth below shall be issued from companies reasonably satisfactory to the Contractor and with an AM Best rating of not less than A- VII.

Securing and maintaining the insurance required hereunder is a condition precedent to payment. Furthermore, Subcontractor's failure to comply with the terms of this provision or its subparts shall constitute a default under Paragraph Seven Default and Remedies of the Terms and Conditions and, at Contractors option, Contractor may terminate this Subcontract for cause and/or purchase said insurance at Subcontractors expense.

(a) Commercial General and Umbrella Liability Insurance. If the estimated value of the Subcontract, including prospective change orders or modifications, is less than $2,000,000, the Subcontractor shall maintain commercial general liability (CGI) and, if necessary, umbrella insurance with a per project limit of not less than $2,000,000 each occurrence, subject to a general aggregate of not less than $2,000,000. If the estimated value of the Subcontract, including charge orders or modifications, exceeds $2,000,000, the Subcontractor shall maintain commercial general liability (CGL) and, if necessary, umbrella insurance with a per project limit of not less than the total estimated value of the Subcontract per occurrence, subject to a general aggregate of not less than said total. If any time a Change in the Work causes the total value of the Subcontract to exceed the Subcontractors current commercial general liability (CGL) per project limit and/or umbrella insurance per project limit, the Subcontractor must obtain the proper coverage as required herein and provide evidence of such coverage to the Contractor. The general aggregate limit shall apply separately to this Subcontract. The CGI- insurance shall be written on ISO occurrence form CG 00 01 (or a substitute form providing equivalent coverage). The coverage shall include liability arising from premises, operations, independent contractors, products-completed operations, personal injury & advertising injury, and liability assumed under an insured contract, including the tort liability of another assumed in a contract. The Subcontractor's CGL policy shall include Contractor as an additional insured for both ongoing and completed operations. The additional insured endorsements shall be written on ISO additional insured endorsement CG 20 10 07 04 (for ongoing operations) and CG 20 37 07 04 (for completed operations) (or substitute endorsements providing equivalent coverage) and attached to Subcontractors CGL, and to the commercial umbrella, if any. Subcontractor shall maintain ongoing CGL coverage for the products-completed operations hazard, including liability assumed under an insured contract, and the required additional insured coverage for the maximum period of time Subcontractor may be held legally liable for its work following substantial completion of the Work. Subcontractor shall maintain this coverage on ISO occurrence form CG 00 01 (or a substitute form providing equivalent coverage). Subcontractor's CGL insurance shall apply as primary insurance with respect to any other insurance or self-insurance programs afforded to Contractor, and no endorsement or modification of the CGL shall make the coverage excess over other available insurance.

(b) Automobile and Umbrella Insurance. Subcontractor shall maintain automobile liability insurance and, if necessary, umbrella liability insurance with a limit of not less than $1,000,000 each accident. Such insurance shall cover liability arising out of 'any auto', including owned, hired, and non-owned autos. Coverage shall be written on ISO form CA 00 01, or a substitute form providing equivalent liability coverage. Stellar shall be added as an additional insured to the auto and umbrella policy.

(c) Workers Compensation Insurance. Subcontractor shall maintain worker's compensation and employer's liability Insurance. The worker's compensation coverage shall provide the statutory maximum limit of liability.

The employer's liability limits shall not be less than $1,000,000 each accident for bodily injury by accident or $1,000,000 each employee for bodily injury by disease.

(d) Pollution Liability Insurance. Pollution Liability insurance is required with a limit of no less than $1,000,000 This coverage must Include damage caused by pollutants, which is any solid, liquid, gaseous or thermal irritant including mold and fungus, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. This coverage must include completed operations. Any exception to this requirement will be determined by Stellar according to Exhibit A Scope of Work.

(e) Professional Liability Insurance. If Subcontractor's scope of services includes design work or other professional services, then Subcontractor shall maintain insurance coverage for Subcontractor's errors, omissions and other wrongful acts arising out of the professional services performed by Subcontractor. The limit of liability shall not be less than $1,000,000.

(f) Waiver of Subrogation. Subcontractor waives all rights against Contractor and its agents, officers, directors and employees for recovery of damages to the extent that any of the policies of insurance maintained pursuant to this Subcontract covers these damages.

(g) Sub-subcontractor's Insurance. Subcontractor shall cause each Sub-subcontractor employed by Subcontractor to purchase and maintain insurance of the type specified in this agreement. When requested by Contractor, Subcontractor shall furnish to Contractor copies of certificates of insurance evidencing coverage for each Sub-subcontractor.

(h) No Representation of Coverage Adequacy. By requiring the insurance as set out in this Subcontract, Contractor does not represent that such coverage and limits will be adequate to protect Subcontractor, and Subcontractor acknowledges that its liability under the indemnities provided to the Contractor and/or Owner pursuant to this Subcontract is not limited to such coverage and limits.

7.      DEFAULT AND REMEDIES. (a) Should Subcontractor at any time fail to prosecute and complete the Work in accordance with the Construction Progress Schedule, as herein provided or as directed by Contractor; or fail to diligently and continuously perform its Work; or if, in the reasonable opinion of Contractor, the Work of Subcontractor cannot be completed in the time period required; or if Contractor Is notified of Subcontractor's failure to pay for any material or labor used on the Project; or in the event of a

DocuSign Envelope ID: 32CC09D8-5F1B-425F-B5B2-09EDDCEC3356 ___ CONTRACT

## Stellar Group, Inc.

| | | | |
|---|---|---|---|
| **SC #:** | 23006976-SUB-03 | **Date:** | 11/9/2020 |
| **Subcontractor:** | Hardrock Concrete Placement Co. Inc. | **Page:** | 2 of 6 |

strike or stoppage of Work resulting from a dispute involving or affecting the labor employed by Subcontractor or its sub-subcontractors; or if Subcontractor fails to perform any of the requirements of this Subcontract; then such event shall constitute a default hereunder and Contractor shall notify Subcontractor to correct such default and shall specify in such notice the action to be taken and the date by which the default shall be corrected (the "Notice of Default").

(b) If a default occurs and Subcontractor has not corrected the default on or before the date specified in the notice to the Subcontractor, Contractor may exercise any or all of the following remedies:

Contractor may immediately take any action necessary to correct such default, including without limitation the right to provide labor, overtime and materials, and may deduct the reasonable cost of correcting such default from any payment due or to become due to Subcontractor or recover such cost from Subcontractor if no sums are due or become due to Subcontractor.

The Contractor may terminate this Subcontract, take possession, to the extent it has paid for them, of Subcontractor's materials, tools and equipment used in performing the Work, and employ another subcontractor or use the employees of Contractor to finish the remaining Work to be performed hereunder.

Contractor may deduct the reasonable costs of completing the remaining Work from the unpaid Subcontract Price and if the cost of completing the remaining Work exceeds the unpaid Subcontract Price, Subcontractor shall pay Contractor such excess cost, including, without limitation, overhead and reasonable attorneys' fees; and

The Contractor may exercise any remedy at law or in equity available as a result of Subcontractor's default or non-performance under this Subcontract.

Contractor, in any such event, may also refrain from making any further payments to Subcontractor until the entire Project shall be fully finished and accepted by Owner at which time, if the unpaid balance of the amount to be paid under this Subcontract shall exceed the sum of the reasonable expense incurred by the Contractor in finishing the Work and the damage sustained by Contractor as a result of Subcontractor's default, then such excess shall be paid by Contractor to Subcontractor, but if the sum of such expenses and damages shall exceed such unpaid balance, Subcontractor shall promptly pay the difference to the Contractor.

(c) Upon any default or contract dispute, the prevailing party shall be entitled to collect from the non-prevailing party its reasonable attorneys' fees and court costs incurred in enforcing this Subcontract or seeking any remedies hereunder. The non-prevailing party shall pay all such fees and costs, whether or not suit is filed and in connection with any appeal and in connection with any bankruptcy or other insolvency proceeding.

(d) If Contractor does not terminate Subcontractor's right to proceed, Subcontractor shall continue with the Work.

(e) If Owner is damaged by reason of any breach by Subcontractor of this Subcontract, then Subcontractor shall pay Owner such damages, together with all costs of collection including, court costs and reasonable attorneys' fees.

(f) Only if subcontractor is in default, Subcontractor hereby knowingly and voluntarily waives all claims for damages due to delays, disruptions, constructive acceleration of work and similar economic losses and agrees that its sole and exclusive remedy for any such claims shall be an extension of the contract time provided that Subcontractor makes a written claim for such extension within ten (10) days of the event giving rise to the claim.

(g) Proposed Setoff Clause – If at any time Subcontractor is indebted to Contractor under any other subcontract or for any other reason, Contract shall have the right to set off such indebtedness against any payments earned under this Subcontract. Additionally, if Subcontractor defaults on any other subcontract on this Project for any reason, such default shall also constitute a default under this Subcontract.

(h) Proposed Bankruptcy/insolvency Clause - If Subcontractor should file for bankruptcy protection, otherwise become insolvent, or encounter financial difficulties which impair the ability of Subcontractor to perform its obligations under this Subcontract fully and efficiently, then Contractor may, upon written notice, terminate Subcontractor's performance under this Subcontract for cause, and Subcontractor shall pay to Contractor the amount of loss or damage sustained by Contractor as a result of the termination.

8.    PAYMENT. (a) Subcontractor shall, prior to submission of its first requisition for payment, give Contractor the name, address and telephone number of every material supplier and sub-subcontractor furnishing materials and/or labor to Subcontractor for the Work covered herein.

If Contractor receives the Subcontractor's requisition for payment and all required lien waivers by the 22nd day of the month, Contractor shall process the requisition for payment by the 25th day of the following month or 5 days after receipt of payment from the Owner, whichever is greater. The amount of each such payment is always subject to the approval of Contractor. Subcontractor, at Contractor's request, shall provide evidence that that the unpaid balance of the Subcontract Price, exclusive of Retainage, is at all times sufficient to complete Subcontractor's remaining Work hereunder. All monthly payments are subject to a ten (10) percent Retainage. Contractor shall disburse Subcontractor's Retainage within the earlier of due date required under the prompt pay laws applicable in the jurisdiction in which the Project is located or sixty (60) days following completion and acceptance by the Owner of the entire Project of which Subcontractors Work is a part, however, Contractor's receipt of the Retainage from Owner is an absolute condition precedent to disbursement of the Subcontractors Retainage.

Subcontractor shall submit all requisitions for payments on the Contractors "Subcontractor Requisition for Payment" form. The form must bear the original, notarized signature of an authorized agent of the Subcontractor. With each requisition for payment, Subcontract must also submit a valid lien and/or bond waiver(s), on the Contractor's form(s), from Subcontractor and each of its sub-subcontractors and suppliers. The waiver(s) must bear the original, notarized signature of an authorized agent of the entity waiving its bond and/or lien rights, and must cover the time period and the amount of all materials, labor and Work reflected in such requisition (including final lien and/or bond waivers with the final requisition for payment). Furthermore, if requested, Subcontractor shall submit evidence reasonably satisfactory to Contractor that all payroll; bills for materials and equipment; sales, use and business taxes; and all known indebtedness connected with Subcontractor's Work have been satisfied.

(b) Subcontractor shall defend and discharge any liens or claims arising from its performance or failure to perform under this Subcontract and shall indemnify and hold the Contractor and the Owner harmless from any losses, damages, costs, expenses and reasonable attorneys' fees relating to or resulting from mechanics' liens, equitable liens or payment bond claims arising by, through, or under Subcontractor, excepting any mechanic's liens recorded as a result of the failure by Owner or Contractor or both to comply with their legally binding payment obligations.

Subcontractor shall make payment to sub-subcontractors and suppliers in an amount equal to the percentage of completion allowed to the Subcontractor on account of its Work. Subcontractor agrees that it shall only use sums received for its performance of this Subcontract for labor, services and material provided hereunder and shall not use such sums to satisfy Subcontractors obligations on other contracts.

Subcontractor agrees that Contractor may pay Subcontractor's material suppliers or Sub-Subcontractors with Subcontractor-by joint checks at any time. Furthermore, Contractor may make direct payments to Subcontractor's material suppliers or Sub-Subcontractors, provided that Contractor has given Subcontractor seven (7) days prior written notice of intent to make such payment(s) and the amount of such payment(s).

(c) Notwithstanding anything to the contrary appearing herein or in any of the Contract Documents, (including but not limited to the General Contract between Owner and Contractor) either implicitly or explicitly, Subcontractor is not entitled to receive any progress payment or final payment prior to Contractor's actual receipt of that payment from Owner. Subcontractor agrees that Contractors actual receipt of full payment from the Owner is a condition precedent to Contractor's obligation to pay Subcontractor and to the bringing of any action by Subcontractor against Contractor (and its surety, if any) relating to Contractor's failure to make payment. Subcontractor further agrees that its full performance of this Subcontract shall not constitute an exception to the condition set forth in this paragraph. Subcontractor agrees that this provision also constitutes a condition precedent to any claim against any payment bond in effect on the Project.

9.    SHOP DRAWINGS. Subcontractor shall review Shop Drawings for compliance with the Subcontract Documents and approve and submit to the Contractor all Shop Drawings required by the Subcontract Documents. Subcontractor shall submit Shop Drawings with reasonable promptness and in such sequence as to cause no delay in the Work or in the activities of Owner, Contractor or other subcontractors. Contractor's review of the Subcontractor's submittals shall not (a) relieve Subcontractor of its obligations

DocuSign Envelope ID: 32CC09D8-5F1B-425F-B5B2-09EDDCEC3356      _ _CONTRACT

## Stellar Group, Inc.

| | | | |
|---|---|---|---|
| **SC #:** | 23006976-SUB-03 | **Date:** | 11/9/2020 |
| **Subcontractor:** | Hardrock Concrete Placement Co. Inc. | **Page:** | 2 of 6 |

or release Subcontractor for any liability under the Subcontract Documents or any section hereof, (b) constitute Owner's or Contractor's approval of Subcontractor's safety precautions, construction means, methods, techniques, sequences or procedures, or (c) represent Contractor's determination of accuracy and completeness of details of the Work such as dimensions or qualities, or Contractor's substantiation of instructions for installation or performance of equipment or systems, all of which remain the responsibility of Subcontractor as required by the Subcontract Documents.

10.        WARRANTY. Subcontractor warrants to the Contractor that all materials and equipment furnished under the Subcontract will be new unless otherwise specified and that all Work will be of good quality, free from faults and defects and in conformance with the Contract Documents. All Work not so conforming to these standards shall be considered defective. If required by the Contractor, the Subcontractor shall furnish reasonably satisfactory evidence as to the kind and quality of materials and equipment incorporated in the Project. Subcontractor shall warrant all materials and workmanship furnished or performed hereunder to be free of defects for a period of one year from date of acceptance by Owner of the entire Project unless otherwise specified herein and shall, at its expense, promptly replace, repair or correct any such defective materials or workmanship appearing within the warranty period as set forth herein. Subcontractor shall submit and assign all factory warranties on equipment and materials installed by it and, at the option of Contractor, shall initiate an assignment to Contractor and/or assigns a service agreement with a local service agency covering all equipment, workmanship and materials so installed. The warranty provided in this paragraph and elsewhere in the Contract Documents is in addition to and not in limitation of any other warranty or remedy provided by law or required by the Contract Documents.

11.        IMMIGRATION LAWS COMPLIANCE. Subcontractor must fully comply with all employment verification procedures, including without limitation, complying with all I-9 verification, reverification and updating procedures as required by the Immigration Reform and Control Act of 1986, for all of its employees. Subcontractor certifies and warrants to Contractor that it maintains an I-9 compliance program for the express purpose of verifying lawful employment authorization to work in the United States for all of its employees. The Subcontractor further represents that it maintains a designated I-9 compliance officer who oversees the Subcontractors I-9 compliance procedures.

12        MISCELLANEOUS. Subcontractor shall remove from the premises, as directed by Contractor, all rubbish and surplus material which may accumulate from the prosecution of its Work.

Should Subcontractor fail to do so, Contractor may, at its option, remove same and deduct the reasonable cost of such removal from any amounts owed to Subcontractor and if the cost of such removal exceeds the unpaid Subcontract Price, Subcontractor shall pay Contractor such excess cost.

Notwithstanding anything contained herein to the contrary, Contractor may, without cause, terminate this Subcontract at any time upon written notice to the Subcontractor.

The Subcontractor shall not be entitled to anticipate a profit or damages for any termination by Contractor for its convenience.

This Subcontract contains the entire agreement between Contractor and Subcontractor.

All prior negotiations, representations and agreements with respect to this Subcontract not specifically incorporated herein are hereby cancelled.

Owner's substantial performance of the General Contract is a condition of Contractor's obligation under this Subcontract.

If Owner becomes bankrupt or otherwise defaults in its payments to Contractor under the General Contract, and/or terminates the General Contract with or without cause, then, upon written notice thereof to Subcontractor, Contractor may terminate this Subcontract and will thereupon, subject to the conditions of paragraph 8(c) of this Subcontract, be liable to Subcontractor only for cost of Work actually performed by Subcontractor at the time of said notice (subject to the provisions of paragraph 8(c) hereof) and for no further compensation or damage.

Subcontractor shall protect its finished Work against damage by other trades and shall be liable for damage caused by him to the Work of others.

Subcontractor shall pay the cost of replacement or repair to the Work of other trades damaged by it or occasioned by the correction of its defective Work and should Subcontractor fail to do so, Contractor may, at its option, correct such defective Work and deduct the reasonable cost thereof from any amounts owed to Subcontractor and if the cost of such correction exceeds the unpaid Subcontract Price, Subcontractor shall pay Contractor such excess cost.

Subcontractor is responsible for determining the location of and for any damage caused by him to any underground objects, including but not limited to sewer, water, gas, electric or telephone lines, cables, pipes and tunnels.

Subcontractor shall obtain and pay for all taxes, permits, licenses and official inspections made necessary by its Work and comply with all laws, ordinances and regulations relating thereto.

~~Subcontractor expressly understands and agrees that its only remedy for delays in the Work shall be for an extension of time for the number of days by which he has been delayed, as determined by Contractor and/or Owner, and that Subcontractor shall not be entitled to any recovery for losses, expenses or damages relating to such delays, however caused; provided, however, that no allowance for additional time shall be made for any cause unless a request for an extension is presented in writing to Contractor within ten (10) days after occurrence of the event giving rise to the delay.~~

~~Any claim not so presented within ten (10) days shall be deemed waived by the Subcontractor and shall not be considered.~~

It may be necessary for the Owner to occupy a portion of the Work which Subcontractor has either partially or fully completed prior to final inspection or acceptance by the Owner.

Such occupancy shall not relieve the Subcontractor of its guarantee of Work or modify the warranty period described above.

The parties to this Subcontract agree that execution of this Subcontract was in Jacksonville, Duval County, Florida.

The laws of the State in which the Project is located shall govern the construction, interpretation, enforcement and all other matters relating to this Subcontract and any amendments or modifications, and jurisdiction and venue for any litigation arising under this Subcontract lies exclusively with the appropriate court in ~~the county in which the Project is located~~, to the exclusion of any other jurisdiction or venue.

Subcontractor waives the right to trial by jury on any issues relating to this Subcontract.

---

**HARDROCK CONCRETE PLACEMENT CO. INC.**

Subcontractor    ┌─ DocuSigned by:

Signed and Dated: *Cindy Kennemer*      11/12/2020 | 10:15 AM PST
                  └─ 451EEBACE4A7454

By: Cindy Kennemer
Vice President

**STELLAR GROUP, INCORPORATED**

Contractor

Signed and Dated: _____

By: Grayson Avery
Senior Project Manager

# Exhibit A
# Concrete

**Attachment Hardrock Concrete Placement Subcontract # 23006976-SUB-03 dated 11/09/2020**

1. **Scope of Work**

   1.1    The undersigned Subcontractor, having become thoroughly familiar with the project documents provided and the local conditions affecting the performance and cost of the work, hereby agrees to provide all labor, materials, tools, equipment, freight, supervision, applicable taxes, insurance, services, permits, and miscellaneous incidentals as required to complete in every respect the work as described herein, in strict accordance with the Exhibits, General Notes, and Terms and Conditions of the Subcontract, the additional Subcontract support documents listed below, and all applicable federal, state, and local requirements.

   1.2    Henceforth, the word "provide" shall mean furnish and install.

   1.3    Henceforth, the phrase "as indicated" shall mean as indicated in the project documents.

   1.4    The Work to be performed under this Subcontract includes (but is not limited to) the following work:

       1.4.1.  Foundations

       1.4.2.  Cast in Place Concrete (Trench Walls, Stem Walls, Dock Pits, Ramps, Etc.)

       1.4.3.  Slabs

       1.4.4.  Concrete Curbs

       1.4.5.  Install Only of Misc. Steel (Embeds, Grating, Bolts, Angle, Bollards, Etc.)

       1.4.6.  Misc. Concrete (House Keeping Pads for Lockers, Equipment, Etc.)

       1.4.7.  Concrete Reinforcement

       1.4.8.  Excavation, Backfill and Compaction for Concrete Work Only

   1.5    **Scope Specific Clarifications**

       1.5.1.  Subcontractor is responsible for all layout for this scope of work. Contractor to provide property benchmark and building corner.

       1.5.2.  Subcontractor acknowledges all required concrete placement (pumping or other means) is included in this scope of work and shall include all equipment necessary for complete execution of Subcontractor's work.

       1.5.3.  All earthwork required for the slabs including excavation, back filling, stockpiling, and compacting. All excavated materials shall be stored in a manner that they will be suitable for back fill where needed.

SUBCONTRACT CONTINUATION

Hardrock Concrete Placement
SC#: 23006976-SUB-03

Date: 11/09/2020
Page: 2 of 7

1.5.4. All excavated soils not used shall be legally disposed at an alternate/approved location offsite. This location must be compliant with all local, state and federal laws, ordinances, and standards for dumping material.

1.5.5. Provide all formwork, vapor barriers, rebar, and concrete required for a complete installation of this scope.

1.5.6. Provide clean granular base as required.

1.5.7. Ensure exterior edges are flat and true where Insulated Metal Panel walls will be installed.

1.5.8. Protect all finished work already in-place during concrete installation.

1.5.9. Provide all necessary drilling, epoxy and doweling into existing slabs as indicated.

1.5.10. Place all armored edge embeds and bollard embeds as indicated.

1.5.11. Form, pour, and finish all concrete slabs on grade to correct elevation. Sloped slabs shall have the correct elevation at all high points.

1.5.12. Control joints are to be cut as soon as possible to minimize unwanted cracking.

1.5.13. Provide concrete sealer as indicated on drawings. This includes floor caulking at sealed floor areas only.

1.5.14. Provide all forms, dowels, concrete, and finishing of interior concrete curbs as indicated. All curbs are to be hard troweled unless otherwise indicated.

1.5.15. Provide mock-up concrete curb constructed for approval by the Contractor and Owner prior to installation on finish floors. Mock-up curbs will be approximately 10 linear feet and will be installed inside of the facility at a location chosen by Contractor.

1.5.16. Attend Concrete Pre-Pour Meeting (date to be announced) at the jobsite trailer. It is also mandatory to arrange for any concrete suppliers and/or pumping sub tier subcontractors attend.

1.5.17. Provide, maintain, and install high visibility safety caps over rebar ends during installation as per OSHA requirements.

1.5.18. Set all bollards and U-guards as indicated. Where possible, bollards are to be set prior to concrete slab pours. Core drill existing slabs for installation of new bollards. Bollards to be filled solid with concrete and have a precast dome top.

1.5.19. Place all housekeeping pads as indicated on drawings. Coordinate with subcontractors.

## SUBCONTRACT CONTINUATION

Hardrock Concrete Placement
SC#: 23006976-SUB-03

Date: 11/09/2020
Page: 3 of 7

1.5.20. All exterior concrete paving, sidewalk, dolly pads, and door stoops shall have a light broom finish.

1.5.21. Additional demo and excavation of existing slab to safely perform trench work is included.

1.5.22. Protect existing slabs from undermining when excavating.

1.6    RELATED WORK NOT INCLUDED, ITEMS TO BE ADDED AS DESIGN IS FINALIZED:

1.6.1. Concrete Waterproofing Admixture for Trenches ILO Membrane - $48,600

1.6.2. Concrete Lids and Tie Beams for Rooms Chem Storage 193, Coolant 184 & Bulk Storage 165.

1.6.3. Equipment Rails (Embeds)

1.6.4. Masonry Wall Foundations

1.6.5. Electrical Panels/Transformer Pads

1.6.6. Equipment Housekeeping Pads (3.5" Thick) - $14/SF

1.6.7. Saw Cutting/Demo/Pourback for Exterior Plumbing Tie-In

1.6.8. 24 Hour 7 Days a Week Work Schedule - $390,000

1.6.9. Furnish Trench Grating, Beam, Embeds, Bollards and Angle

1.6.10. Additional Floor Caulking - $2.50/LF

1.6.11. Cooling Tower Exterior Foundations

1.6.12. Concrete Truck Paving Outside of Ramp Paving.

2.    **Change Orders & Extra Work**

2.1    Maximum aggregate mark-up of overhead and profit for all change order work performed under this Subcontract shall be as follows:

2.1.1. OHP – 10%

3.    **Contract Documents**

3.1    "Exhibit B" - Project Schedule dated 10/23/2020.

3.2    "Exhibit C" – Job Specific Safety Plan.

3.3    "Exhibit D" – DBA Owner Contract dated 07/28/2020.

3.4    "Exhibit E" – Stellar Guide for Subcontractors Usage in Procore

3.5    "Exhibit F" – General Requirements

3.6    "Exhibit G" – Facility Access and Site Utilization Plans

## SUBCONTRACT CONTINUATION

Hardrock Concrete Placement
SC#: 23006976-SUB-03

Date: 11/09/2020
Page: 4 of 7

3.7     "Exhibit H" – Drawings Included with Bid Package as of 10/13/2020.

4.      **Personnel Labor Rates**

| Item | Description | Hourly Rate |
|------|-------------|-------------|
| Labor | | ST |
| 1 | Project Manager | $65.00 |
| 2 | Superintendent | $60.00 |
| 3 | Carpenter | $55.00 |
| 4 | Finisher/Equipment Operator | $55.00 |

5.      **Miscellaneous**

5.1     All project collaboration, correspondence, communication, and documentation will be conducted using Procore. A "How To" guide for Subcontractors has been included within this Subcontractor for interaction with Stellar in the Procore system.  As a condition of this Subcontract, Procore shall be used throughout the duration of the project for the following items including but not limited to:

5.1.1.  RFI's

5.1.2.  Observations

5.1.3.  Drawings

5.1.4.  Commitments and Payment Requisitions

5.1.5.  Submittals

5.1.6.  Punch List

5.1.7.  Specifications

5.1.8.  Daily Log Entry

5.1.9.  All other documents and documentation pertaining to the project

5.2     The hours of operation for the project shall be five (5) days per week, forty (40) hours per week, eight (8) hours per day.  The site shall be available for work from the hours of 6:30 a.m. to 6:30 p.m., Monday through Friday.  This work shall be based upon the above listed hours.

SUBCONTRACT CONTINUATION

Hardrock Concrete Placement
SC#: 23006976-SUB-03

Date: 11/09/2020
Page: 5 of 7

Different work schedules must be approved by the Stellar Project Manager and Superintendent.

5.3 Provide all training for new equipment and systems installed under this scope of work. Prior to scheduled training session, a written agenda shall be issued for review. A sign in sheet shall be submitted after completion of training. One (1) hard copy of operation and maintenance manuals shall be available during the training session.

5.4 This scope of work will require multiple mobilizations as defined in the construction schedule. All costs for additional mobilizations as shown in the project schedule are specifically included in this subcontract unless noted otherwise.

5.5 Protection of all existing work is included.

5.6 Subcontractor shall store materials on elevated platforms, under cover and in a dry location, to prevent their deterioration or damage due to moisture, temperature changes, contaminants or other causes.

5.7 Make necessary repairs, in a manner acceptable to and approved by Contractor and Owner, including complete removal and replacement, as determined by the contractor of any work adjudged to be defective or nor conforming to the requirements of this Agreement, the Project Specifications, or standards of good and proper workmanship.

5.8 All deliveries will be scheduled with the Project Superintendent forty-eight (48) hours in advance. The Project Superintendent will approve all deliveries to the site in advance. Unannounced or unscheduled deliveries are subject to being turned away at the expense of the company for which the delivery was intended for both shipping costs and schedule delays.

5.9 Jobsite cleanliness and housekeeping is included in this scope of work. As noted in the General Notes of the Subcontract Agreement, the cost and expense to the subcontractor shall be defined as follows:

5.9.1. Should the jobsite housekeeping performance be found to be unacceptable, one written warning will be issued to correct the state of jobsite cleanliness for the areas in which this subcontractor is working. If the cleanliness deficiency is not immediately corrected, Stellar will take action to correct the situation at a charge of $2,500.00 per day for violation of the jobsite housekeeping and cleanliness standard. If this subcontractor is found to be a repeat violator of

## SUBCONTRACT CONTINUATION

Hardrock Concrete Placement
SC#: 23006976-SUB-03

Date: 11/09/2020
Page: 6 of 7

this policy, Stellar may terminate the contract and pursue legal avenues for compensating any losses associated with the completion of the work.

5.10    Responsibility for unloading of materials, tools, or equipment is included in this scope of work unless specifically excluded herein. Should Stellar be asked to unload any deliveries, it shall be done at a cost of $2,500.00 per day and Stellar will require a written release of liability for any damages from the company requesting this service. Deliveries which cannot be unloaded by this method or which do not have personnel onsite to handle their own shipments may be turned away at their expense for both shipping costs and schedule delays.

5.11    This project is a renovation to an existing, functioning facility in full operation. Subcontractor shall take all required steps and shall do all things necessary to ensure that neither the Owner nor his operations are interfered with, disrupted, or disturbed in any way.

5.12    Subcontractor shall strictly limit his activities to the limits of the construction area. All parking, unloading and receiving, storage, fabrication, and other similar activities shall be confined to designated areas away from the existing facility. The existing facilities roadways and parking areas shall not be used by Subcontractor for these activities or for any others, except for where specifically identified by the Stellar Superintendent.

5.13    Subcontractor's employees shall not enter any portion of the existing facility, except as required to install the work of the project. Subcontractor's employees shall not be permitted to use the existing facility's toilet rooms, lunchroom, or break areas.

5.14    Subcontractor shall notify the project superintendent a minimum of two (2) weeks prior to any activities that may impact the Owner's operations. This work shall be coordinated to minimize the impact to the Owner and may be required to be performed during off hours and/or on extended and/or continuous shifts. Premium costs for this work shall not be subject to a modification of the subcontract.

5.15    All eating, drinking (other than water), smoking, and other tobacco use shall occur outside of the existing building in an area designated by the project superintendent. All trash shall be placed into the dumpsters provided by the Contactor and shall not be left inside or outside of the building.

5.16    Subcontractor shall use only electrically operated equipment or fuel-based equipment provided with air scrubbers, for work inside the existing facility unless specifically instructed otherwise. Welding activities shall be limited to essential tasks such as welding of utility

## SUBCONTRACT CONTINUATION

**Hardrock Concrete Placement**
**SC#: 23006976-SUB-03**

**Date:  11/09/2020**
**Page: 7 of 7**

piping and held to a minimum indoors.  All welding activities must be properly protected and properly ventilated.

SUBCONTRACTOR ACKNOWLEDGES RECEIPT OF ALL CONTRACT DOCUMENTS NOTED ABOVE IN SECTION 3.

**Hardrock Concrete Placement**
Subcontractor

**STELLAR GROUP, INCORPORATED**
Contractor

By: _Cindy Kennemer_
Cindy Kennemer

By: _____
Jonah Petoskey, Sr. Project Manager

DocuSign Envelope ID: 659FD1C3-FB1E-4636-A6C8-9FB6A458153F

# SUBCONTRACT MODIFICATION
## Stellar Group, Inc.
2900 Hartley Road
Jacksonville, FL 32257

| | |
|---|---|
| **Subcontractor:** Hardrock Concrete Placement Co. Inc.<br>4839 W Brill St<br>Phoenix Arizona 85043-1815 | **Project Name and Location:** Bang Energy - Phoenix Can Manufacturing<br>1635 South 43rd Avenue<br>Phoenix Arizona 85009 |
| **Attention:** Donna Wood | **Attention:** Chuck Harrison |
| **Phone:** (602) 233-3334 | **Phone:** (904) 383-0163 |
| **Fax:** (602) 233-2777 | **E-Mail:** charrison@stellar.net |
| **E-Mail:** dwood@hrconcrete.com | |

| Date<br>3/1/2022 | SC #<br>23006976-SUB-03F | Project #<br>23006976 | Contract Type<br>Lump Sum | FOB<br>Jobsite | Schedule<br>Per Superintendent |
|---|---|---|---|---|---|

This Subcontract is made by and between Stellar Group, Incorporated, d/b/a Stellar, hereinafter referred to as "Contractor," and the Subcontractor named above, at Jacksonville, Florida. In consideration of the mutual promises and undertakings set forth herein, Contractor and Subcontractor hereby agree to the terms and conditions set forth herein, including the Terms and Conditions attached hereto. Subcontractor agrees to perform and complete the following Work:

Subcontract agrees to modify Subcontract No.: 23006976-SUB-03

| Item | Description | Net Amount |
|---|---|---|
| 1 | CIP Concrete Beams for Door Openings ILO of Steel & Precast Lintels. | $6,969.00 |

**Attachments:**
COR #11 CIP Lintels.pdf

| FOR ACCOUNTING PURPOSES ONLY: | | |
|---|---|---|
| Cost Codes | | Net Amount |
| 03-0302 - 1760 | | $6,969.00 |

| | |
|---|---|
| **TOTAL AMOUNT OF THIS MODIFICATION**<br>(All licenses, taxes, permits, fees and insurance with Stellar named as additional insured included) | **$6,969.00** |
| ORIGINAL SUBCONTRACT | $2,111,428.00 |
| PREVIOUS MODIFICATION(S) | $614,642.00 |
| THIS MODIFICATION | $6,969.00 |
| REVISED SUBCONTRACT | $2,733,039.00 |

This subcontract includes and is subject to the terms and conditions previously attached to the original subcontract.

IN WITNESS WHEREOF, the Subcontractor and Contractor have executed this Subcontract on the date set forth above.

**HARDROCK CONCRETE PLACEMENT CO. INC.**
Subcontractor

*Cindy Kennemer*

By: Donna Wood   Cindy Kennemer

**STELLAR GROUP, INC.**
Contractor

By: Gregory Ortego
Project Manager

DocuSign Envelope ID: BBB572EC-5E84-4E56-A182-A11ACF285F59

# SUBCONTRACT MODIFICATION

**Stellar Group, Inc.**
2900 Hartley Road
Jacksonville, FL 32257

| | | | |
|---|---|---|---|
| **Subcontractor:** | Hardrock Concrete Placement Co. Inc.<br>4839 W Brill St<br>Phoenix Arizona 85043-1815 | **Project Name and Location:** | Bang Energy - Phoenix Can Manufacturing<br>1635 South 43rd Avenue<br>Phoenix Arizona 85009 |
| **Attention:** | Lee Lopez | **Attention:** | Brian Edberg |
| **Phone:** | (602) 233-3334 | **Phone:** | (904) 349-0640 |
| **Fax:** | (602) 233-2777 | **E-Mail:** | bedberg@stellar.net |
| **E-Mail:** | lmlopez@hrconcrete.com | | |

| Date | SC # | Project # | Contract Type | FOB | Schedule |
|---|---|---|---|---|---|
| 3/17/2021 | 23006976-SUB-03C | 23006976 | Lump Sum | Jobsite | Per Superintendent |

This Subcontract is made by and between Stellar Group, Incorporated, d/b/a Stellar, hereinafter referred to as "Contractor," and the Subcontractor named above, at Jacksonville, Florida. In consideration of the mutual promises and undertakings set forth herein, Contractor and Subcontractor hereby agree to the terms and conditions set forth herein, including the Terms and Conditions attached hereto. Subcontractor agrees to perform and complete the following Work:

Subcontract agrees to modify Subcontract No.: 23006976-SUB-03

| Item | Description | Net Amount |
|---|---|---|
| 1 | Demolition of concrete slab at GL 19 around existing fire riser on the south elevation in order to pour the foundation below. | $3,261.00 |

**Attachments:**

**FOR ACCOUNTING PURPOSES ONLY:**

| Cost Codes | Net Amount |
|---|---|
| 03-0307 - 1760 | $3,261.00 |

| | |
|---|---|
| **TOTAL AMOUNT OF THIS MODIFICATION** | **$3,261.00** |
| (All licenses, taxes, permits, fees and insurance with Stellar named as additional insured included) | |
| ORIGINAL SUBCONTRACT | $2,111,428.00 |
| PREVIOUS MODIFICATION(S) | $611,381.00 |
| THIS MODIFICATION | $3,261.00 |
| REVISED SUBCONTRACT | $2,726,070.00 |

**This subcontract includes and is subject to the terms and conditions previously attached to the original subcontract.**

IN WITNESS WHEREOF, the Subcontractor and Contractor have executed this Subcontract on the date set forth above.

**HARDROCK CONCRETE PLACEMENT CO. INC.**
Subcontractor

*Cindy Kennemer*
—451EEBACE4A7454...
By: Lee Lopez          Cindy Kennemer
President              Vice President

**STELLAR GROUP, INCORPORATED**
Contractor

By: Jonah Petoskey
Senior Project Manager

DocuSign Envelope ID: FE25892F-C57D-43A1-87EE-DC44D7912D44

# SUBCONTRACT MODIFICATION
## Stellar Group, Inc.
### 2900 Hartley Road
### Jacksonville, FL 32257

| | |
|---|---|
| **Subcontractor:** Hardrock Concrete Placement Co. Inc.<br>4839 W Brill St<br>Phoenix Arizona 85043-1815 | **Project Name and Location:** Bang Energy - Phoenix Can Manufacturing<br>1635 South 43rd Avenue<br>Phoenix Arizona 85009 |
| **Attention:** Lee Lopez | **Attention:** Brian Edberg |
| **Phone:** (602) 233-3334 | **Phone:** (904) 349-0640 |
| **Fax:** (602) 233-2777 | **E-Mail:** bedberg@stellar.net |
| **E-Mail:** lmlopez@hrconcrete.com | |

| Date | SC # | Project # | Contract Type | FOB | Schedule |
|---|---|---|---|---|---|
| 2/16/2021 | 23006976-SUB-03B | 23006976 | Lump Sum | Jobsite | Per Superintendent |

This Subcontract is made by and between Stellar Group, Incorporated, d/b/a Stellar, hereinafter referred to as "Contractor," and the Subcontractor named above, at Jacksonville, Florida. In consideration of the mutual promises and undertakings set forth herein, Contractor and Subcontractor hereby agree to the terms and conditions set forth herein, including the Terms and Conditions attached hereto. Subcontractor agrees to perform and complete the following Work:

Subcontract agrees to modify Subcontract No.: 23006976-SUB-03

| Item | Description | Net Amount |
|---|---|---|
| 1 | Changes to Slabs based on building and process design development and owner review comments from drawing set dated 12.11.2020 to 01.08.2021. Including but not limited to: Concrete Paving 6" Thick & 12" Thick Reinforced, Exterior Chiller and Pump Pads. and Transformer Pads. | $43,864.10 |
| 2 | Concrete pour back for new AHU-5 floor sink underground piping. | $950.00 |
| 3 | Changes to Foundations based on building and process design development and owner review comments from drawing set dated 12.11.2020 to 01.08.2021. Including but not limited to: Exterior Retaining Wall and Cooling Tower Foundations. | $32,437.90 |
| 4 | Changes to Curbs based on building and process design development and owner review comments from drawing set dated 12.11.2020 to 01.08.2021. Including but not limited to: Exterior site curb and cooling tower curb. | $4,782.80 |
| 5 | Changes to CIP Concrete based on building and process design development and owner review comments from drawing set dated 12.11.2020 to 01.08.2021. Including but not limited to: Cast in place concrete at retaining walls. | $40,471.20 |

**Attachments:**
Change Request 4 CE 17 - Exterior Improvements (2).pdf, Change Request 5 CE 19 - Floor Drain Pour Back.pdf

**FOR ACCOUNTING PURPOSES ONLY:**

| Cost Codes | Net Amount |
|---|---|
| 03-0304 - 1760 | $43,864.10 |
| 03-0304 - 1760 | $950.00 |
| 03-0301 - 1760 | $32,437.90 |
| 03-0305 - 1760 | $4,782.80 |
| 03-0302 - 1760 | $40,471.20 |

| | |
|---|---|
| **TOTAL AMOUNT OF THIS MODIFICATION** | **$122,506.00** |
| (All licenses, taxes, permits, fees and insurance with Stellar named as additional insured included) | |
| ORIGINAL SUBCONTRACT | $2,111,428.00 |
| PREVIOUS MODIFICATION(S) | $488,875.00 |
| THIS MODIFICATION | $122,506.00 |
| REVISED SUBCONTRACT | $2,722,809.00 |

This subcontract includes and is subject to the terms and conditions previously attached to the original subcontract.

IN WITNESS WHEREOF, the Subcontractor and Contractor have executed this Subcontract on the date set forth above.

| **HARDROCK CONCRETE PLACEMENT CO. INC.** | **STELLAR GROUP, INCORPORATED** |
|---|---|
| Subcontractor | Contractor |
| DocuSigned by: | |
| *Cindy Kennemer* | |
| 451EEBACE4A7454... | |
| By: ~~Lee Lopez~~ Cindy Kennemer | By: Jonah Petoskey |
| ~~President~~ Vice President | Senior Project Manager |

DocuSign Envelope ID: 910EC4BD-34B6-4774-9EA7-0B809C0F58C5

# SUBCONTRACT MODIFICATION

**Stellar Group, Inc.**
2900 Hartley Road
Jacksonville, FL 32257

| | |
|---|---|
| **Subcontractor:** Hardrock Concrete Placement Co. Inc.<br>4839 W Brill St<br>Phoenix Arizona 85043-1815 | **Project Name and Location:** Bang Energy – Phoenix Can Manufacturing<br>1635 South 43rd Avenue<br>Phoenix Arizona 85009 |
| Attention: Lee Lopez | Attention: Brian Edberg |
| Phone: (602) 233-3334 | Phone: (904) 349-0640 |
| Fax: (602) 233-2777 | E-Mail: bedberg@stellar.net |
| E-Mail: lmlopez@hrconcrete.com | |

| Date | SC # | Project # | Contract Type | FOB | Schedule |
|---|---|---|---|---|---|
| 1/8/2021 | 23006976-SUB-03A | 23006976 | Lump Sum | Jobsite | Per Superintendent |

This Subcontract is made by and between Stellar Group, Incorporated, d/b/a Stellar, hereinafter referred to as "Contractor," and the Subcontractor named above, at Jacksonville, Florida. In consideration of the mutual promises and undertakings set forth herein, Contractor and Subcontractor hereby agree to the terms and conditions set forth herein, including the Terms and Conditions attached hereto. Subcontractor agrees to perform and complete the following Work:

Subcontract agrees to modify Subcontract No.: 23006976-SUB-03

| Item | Description | Net Amount |
|---|---|---|
| 1 | Changes to foundations based on building and process design development and owner review comments through revisions dated 11.24.2020 | $54,337.80 |
| 2 | Changes to curbs and columns based on building and process design development and owner review comments through revisions dated 11.24.2020 | –$18,876.00 |
| 3 | Changes to slabs based on building and process design development and owner review comments through revisions dated 11.24.2020 | $22,761.20 |
| 4 | Changes to cast in place concrete based on building and process design development and owner review comments through revisions dated 11.24.2020 | $316,742.80 |
| 5 | Changes to concrete misc steel install based on building and process design development and owner review comments through revisions dated 11.24.2020 | $924.00 |
| 6 | Changes to misc. concrete based on building and process design development and owner review comments through revisions dated 11.24.2020 | $51,185.20 |
| 7 | Concrete Waterproofing Admixture | $61,800.00 |

**Attachments:**
Change Request 1 Waterproofing Admixture (1).pdf, Change Request 3 Updated Drawings (1).pdf, Change Request 2 Waterproofing Admixture in Cast in Place Pit Walls (1).pdf

**FOR ACCOUNTING PURPOSES ONLY:**

| Cost Codes | Net Amount |
|---|---|
| 03-0301 – 1760 | $54,337.80 |
| 03-0305 – 1760 | –$18,876.00 |
| 03-0304 – 1760 | $22,761.20 |
| 03-0302 – 1760 | $316,742.80 |
| 03-0306 – 1760 | $924.00 |
| 03-0307 – 1760 | $51,185.20 |
| 03-0302 – 1760 | $61,800.00 |

| | |
|---|---|
| **TOTAL AMOUNT OF THIS MODIFICATION** | **$488,875.00** |

(All licenses, taxes, permits, fees and insurance with Stellar named as additional insured included)

| | |
|---|---|
| ORIGINAL SUBCONTRACT | $2,111,428.00 |
| PREVIOUS MODIFICATION(S) | $0.00 |
| THIS MODIFICATION | $488,875.00 |
| REVISED SUBCONTRACT | $2,600,303.00 |

**This subcontract includes and is subject to the terms and conditions previously attached to the original subcontract.**

IN WITNESS WHEREOF, the Subcontractor and Contractor have executed this Subcontract on the date set forth above.

| | |
|---|---|
| **HARDROCK CONCRETE PLACEMENT CO. INC.** | **STELLAR GROUP, INCORPORATED** |
| Subcontractor | Contractor |

DocuSign Envelope ID: 910EC4BD-34B6-4774-9EA7-0B809C0F58C5

_Cindy Kennemer_

By: Lee Lopez        Cindy Kennemer

President        Vice President

By: Jonah Petoskey

Senior Project Manager

DocuSign Envelope ID: 659FD1C3-FB1E-4636-A6C8-9FB6A458153F

# SUBCONTRACT MODIFICATION
## Stellar Group, Inc.
### 2900 Hartley Road
### Jacksonville, FL 32257

| | | |
|---|---|---|
| **Subcontractor:** | Hardrock Concrete Placement Co. Inc.<br>4839 W Brill St<br>Phoenix Arizona 85043-1815 | |
| **Attention:** | Donna Wood | |
| **Phone:** | (602) 233-3334 | |
| **Fax:** | (602) 233-2777 | |
| **E-Mail:** | dwood@hrconcrete.com | |

| | |
|---|---|
| **Project Name and Location:** | Bang Energy – Phoenix Can Manufacturing<br>1635 South 43rd Avenue<br>Phoenix Arizona 85009 |
| **Attention:** | Chuck Harrison |
| **Phone:** | (904) 383-0163 |
| **E-Mail:** | charrison@stellar.net |

| Date | SC # | Project # | Contract Type | FOB | Schedule |
|---|---|---|---|---|---|
| 3/1/2022 | 23006976-SUB-03D | 23006976 | Lump Sum | Jobsite | Per Superintendent |

This Subcontract is made by and between Stellar Group, Incorporated, d/b/a Stellar, hereinafter referred to as "Contractor," and the Subcontractor named above, at Jacksonville, Florida. In consideration of the mutual promises and undertakings set forth herein, Contractor and Subcontractor hereby agree to the terms and conditions set forth herein, including the Terms and Conditions attached hereto. Subcontractor agrees to perform and complete the following Work:

Subcontract agrees to modify Subcontract No.: 23006976-SUB-03

| Item | Description | Net Amount |
|---|---|---|
| 1 | Please review the revised schedule attached and provide details as list below. Provide detail for all impacts associated with the delay reflected in the updated schedule dated May 29, 2020. Confirm that you can meet the commitment required under your existing contract terms based on the revised schedule. If not please provide additional details. Provide detail for any additional costs associated with the delay if any. If you have any equipment in fabrication or storage, provide schedule or cost impacts associated with the equipment delivery or storage. Provide detail for any current cost you have that has not been billed and a date for when the costs will be billed. If you have any items onsite that need to be removed provide details of what needs to be removed and when it will be removed. Provide any other information that may be of concern regarding the revised project schedule. | $17,860.00 |

**Attachments:**
Change Request 9 Rescheduled Start.pdf, 06976- Bang PHX Can Manufacturing
Preliminary Restart Schedule.pdf

| FOR ACCOUNTING PURPOSES ONLY: | | |
|---|---|---|
| Cost Codes | | Net Amount |
| 03-0302 - 1760 | | $17,860.00 |

| | |
|---|---|
| **TOTAL AMOUNT OF THIS MODIFICATION** | **$17,860.00** |

(All licenses, taxes, permits, fees and insurance with Stellar named as additional insured included)

| | |
|---|---|
| ORIGINAL SUBCONTRACT | $2,111,428.00 |
| PREVIOUS MODIFICATION(S) | $621,611.00 |
| THIS MODIFICATION | $17,860.00 |
| REVISED SUBCONTRACT | $2,750,899.00 |

**This subcontract includes and is subject to the terms and conditions previously attached to the original subcontract.**

IN WITNESS WHEREOF, the Subcontractor and Contractor have executed this Subcontract on the date set forth above.

| | |
|---|---|
| **HARDROCK CONCRETE PLACEMENT CO. INC.** | **STELLAR GROUP, INC.** |
| Subcontractor | Contractor |
| *Cindy Kennemer* | *[signature]* |
| By: Donna Wood    Cindy Kennemer | By: Gregory Ortego |
| | Project Manager |

# SUBCONTRACT MODIFICATION
## Stellar Group, Inc.
2900 Hartley Road
Jacksonville, FL 32257

| | |
|---|---|
| **Subcontractor:** Hardrock Concrete Placement Co. Inc.<br>4839 W Brill St<br>Phoenix Arizona 85043-1815 | **Project Name and Location:** Bang Energy - Phoenix Can Manufacturing<br>1635 South 43rd Avenue<br>Phoenix Arizona 85009 |
| **Attention:** Donna Wood | **Attention:** Chuck Harrison |
| **Phone:** (602) 233-3334 | **Phone:** (904) 383-0163 |
| **Fax:** (602) 233-2777 | **E-Mail:** charrison@stellar.net |
| **E-Mail:** dwood@hrconcrete.com | |

| Date<br>3/1/2022 | SC #<br>23006976-SUB-03E | Project #<br>23006976 | Contract Type<br>Lump Sum | FOB<br>Jobsite | Schedule<br>Per Superintendent |
|---|---|---|---|---|---|

This Subcontract is made by and between Stellar Group, Incorporated, d/b/a Stellar, hereinafter referred to as "Contractor," and the Subcontractor named above, at Jacksonville, Florida. In consideration of the mutual promises and undertakings set forth herein, Contractor and Subcontractor hereby agree to the terms and conditions set forth herein, including the Terms and Conditions attached hereto. Subcontractor agrees to perform and complete the following Work:

Subcontract agrees to modify Subcontract No.: 23006976-SUB-03

| Item | Description | | Net Amount |
|---|---|---|---|
| 1 | Please review the revised schedule attached and provide details as list below. Provide detail for all impacts associated with the delay reflected in the updated schedule dated May 29, 2020. Confirm that you can meet the commitment required under your existing contract terms based on the revised schedule. If not please provide additional details. Provide detail for any additional costs associated with the delay if any. If you have any equipment in fabrication or storage, provide schedule or cost impacts associated with the equipment delivery or storage. Provide detail for any current cost you have that has not been billed and a date for when the costs will be billed. If you have any items onsite that need to be removed provide details of what needs to be removed and when it will be removed. Provide any other information that may be of concern regarding the revised project schedule. | | $15,400.00 |

**Attachments:**
Change Request 7 CE # 26 Project Hold.pdf, 06976- Bang PHX Can Manufacturing
Schedule  60 Day Hold.pdf

| FOR ACCOUNTING PURPOSES ONLY: | |
|---|---|
| Cost Codes | Net Amount |
| - | $15,400.00 |

**TOTAL AMOUNT OF THIS MODIFICATION**
(All licenses, taxes, permits, fees and insurance with Stellar named as additional insured included)          **$15,400.00**

| | |
|---|---|
| ORIGINAL SUBCONTRACT | $2,111,428.00 |
| PREVIOUS MODIFICATION(S) | $639,471.00 |
| THIS MODIFICATION | $15,400.00 |
| REVISED SUBCONTRACT | $2,766,299.00 |

This subcontract includes and is subject to the terms and conditions previously attached to the original subcontract.

IN WITNESS WHEREOF, the Subcontractor and Contractor have executed this Subcontract on the date set forth above.

**HARDROCK CONCRETE PLACEMENT CO. INC.**
Subcontractor

*Cindy Kennemer*

By: Donna Wood          Cindy Kennemer

**STELLAR GROUP, INC.**
Contractor

By: Gregory Ortego
Project Manager

# Exhibit C

File No: 183885 | AZ | OWNER

Customer: STELLAR GROUP, INC.
Project: Phoenix Can Manufacturing
1st Class Mail
Return Receipt Requested

## TWENTY DAY PRELIMINARY NOTICE
In Accordance With Arizona Revised Statutes Section 33-992.01
THIS IS NOT A LIEN. THIS IS NOT A REFLECTION ON THE INTEGRITY OF ANY CONTRACTOR OR SUBCONTRACTOR.

### NOTICE TO PROPERTY OWNER

If bills are not paid in full for the labor, professional services, materials, machinery, fixtures or tools furnished, or to be furnished, a Mechanic's Lien leading to the loss, through court foreclosure proceedings, of all or part of your property being improved may be placed against the property. You may wish to protect yourself against this consequence by either:

1. Requiring your contractor to furnish a conditional waiver and release pursuant to Arizona Revised Statutes Section 33-1008, Subsection D, Paragraphs 1 and 3 signed by the person or firm giving you this notice before you make payment to your contractor.
2. Requiring your contractor to furnish an unconditional waiver and release pursuant to Arizona Revised Statutes Section 33-1008, Subsection D, Paragraphs 2 and 4 signed by the person or firm giving you this notice before you make payment to your contractor.
3. Using any other method or device that is appropriate under the circumstances.

Within ten days of the receipt of this preliminary twenty day notice the owner or other interested party is required to furnish all information necessary to correct any inaccuracies in the notice pursuant to Arizona Revised Statutes Section 33-992.01, Subsection 1 or lose as a defense any inaccuracy of that information.

Within ten days of the receipt of this preliminary twenty day notice if any Payment Bond has been recorded in compliance with Arizona Revised Statutes Section 33-1003, the owner must provide a copy of the Payment Bond including the name and address of the surety company and bonding agent providing the Payment Bond to the person who has given the preliminary twenty day notice. In the event that the owner or other interested party fails to provide the bond information within that ten day period, the claimant shall retain lien rights to the extent precluded or prejudiced from asserting a claim against the bond as a result of not timely receiving the bond information.

**NAME AND ADDRESS OF
OWNER OR REPUTED OWNER:**
Vital Pharmaceuticals, Inc.
c/o JHO Real Estate Investment LLC
1600 N. Park Drive
Weston, FL 33326

We hereby request lender and/or bond information, if any.

**NAME AND ADDRESS OF GENERAL
OR PRIME CONTRACTOR:**
STELLAR GROUP, INC.
2900 Hartley Road
JACKSONVILLE, FL 32257

**THE NAME AND ADDRESS OF JOB:**
Phoenix Can Manufacturing
1635 S. 43rd Ave.
PHOENIX, AZ 85009
County of Maricopa

1. The following is an explanation of the labor, service, equipment or materials furnished or to be furnished by the undersigned:
CONCRETE CONTRACTOR

2. Estimated Amount of Labor or Material Furnished:          $2,533,713.60

3. The name of the person or company who furnished the labor, service, equipment or materials is:
HARDROCK CONCRETE PLACEMENT CO. INC.
4839 W BRILL ST
PHOENIX, AZ 85043

4. The name of the person or company who contracted for the labor, material or equipment is:
STELLAR GROUP, INC.
2900 Hartley Road
JACKSONVILLE, FL 32257

5. Date Claimant first provided said labor, services, equipment or materials:
November 16, 2020

By: _____    TODD HALEY, LIMITED AGENT, November 18, 2020

----------------------------- PLEASE DETACH AND MAIL BACK TO BOTTOM ADDRESS -----------------------------

ACKNOWLEDGMENT OF RECEIPT OF TWENTY DAY PRELIMINARY NOTICE --- File #: 183885

This acknowledges receipt on (date notice received) _____ of a copy of the Twenty Day Preliminary Notice

at (address where notice received) _____

Today's date _____

Signature of person acknowledging receipt, with title if acknowledgment is made for another person

_____

Prepared by: Corporate Lien Services LLC, 6908 E Thomas Rd Suite 210, Scottsdale, AZ 85251, Phone: (480) 345-2500, Fax: (480) 345-9931, Email: info@corpcollection.com

**AFFIDAVIT OF SERVICE OF PRELIMINARY TWENTY DAY NOTICE**

I, Todd Haley, declare under penalty of perjury that on November 18th, 2020 I served copies of this Preliminary Notice by placing them first-class postage prepaid with a certificate of mailing in the United States mail addressed to the reputed owner, lender (if a lender is listed), and the party with whom the claimant originally contracted with at their respective addresses shown on the attached record.

DATED this 22nd day of February, 2022

By: _____

Todd Haley

STATE OF ARIZONA          )

                          )ss

County of Maricopa

SUBSCRIBED AND SWORN TO before me this 22nd day of February, 2022

JAMIE ANN EVERETT
Notary Public - Arizona
Maricopa County
Commission # 576173
My Comm. Expires Feb 1, 2024

Notary Public

11-18-2020 10:18:16                                                                          Page 1

**Corporate Lien Services LLC**
**6908 E Thomas Rd Suite 210**
**Scottsdale, AZ 85251**
**First Class Certificate of Mailing**
**11/18/2020 Thru 11/18/2020**

| Item | Name of Addressee | Address | City | State | Zip | Prelim # |
|------|-------------------|---------|------|-------|-----|----------|
| 1 | TOUCHMARK AT THE RANCH LLC | 5150 SW GRIFFITH DR | BEAVERTON | OR | 97005 | 182905 |
| 2 | Wespac Construction, Inc. | 9440 North 26th Street Ste. #100 | PHOENIX | AZ | 85028 | 182905 |
| 3 | Mountain High Excavating | 4183 E. Huntington Dr | FLAGSTAFF | AZ | 86004 | 182905 |
| 4 | WEEKLEY HOMES LLC | 1111 N POST OAK RD | HOUSTON | TX | 77055 | 184098 |
| 5 | David Weekley Homes | 8058 S Priest Drive | Tempe | AZ | 85284 | 184098 |
| 6 | WEEKLEY HOMES LLC | 1111 N POST OAK RD | HOUSTON | TX | 77055 | 184099 |
| 7 | David Weekley Homes | 8058 S Priest Drive | Tempe | AZ | 85284 | 184099 |
| 8 | FHMC LLC | 9700 N. SAGUARO BLVD POB 17240 | FOUNTAIN HIL | AZ | 85269 | 184248 |
| 9 | E.D. SMITH PAVING, INC. | 12325 W. ALICE AVE | EL MIRAGE | AZ | 85335 | 184248 |
| 10 | STORE MASTER FUNDING XVIII LL | 8377 E. HARTFORD DR., SUITE 100 | SCOTTSDALE | AZ | 85255 | 184244 |
| 11 | STORE MASTER FUNDING  XVIII, LL | 55635 N. VULTURE MINE RD | WICKENBURG | AZ | 85390 | 184244 |
| 12 | TP RACING LLLP | 1501 W BELL RD | PHOENIX | AZ | 85023 | 184250 |
| 13 | Pinewood Country Club, Inc. | 395 Pinewood Blvd | MUNDS PARK | AZ | 86017 | 184240 |
| 14 | Pinewood Country Club, Inc. | PO Box 18614 | MUNDS PARK | AZ | 86017 | 184240 |
| 15 | SAFEWAY INC | 1371 OAKLAND BLVD STE 200 | WALNUT CRE | CA | 94596 | 184209 |
| 16 | National Retail Service Group | 8987 E. Tanque Verde #309-410 | TUCSON | AZ | 85749 | 184209 |
| 17 | EASTGROUP PROPERTIES L.P. | 2200 E. CAMELBACK RD., SUITE 210 | Phoenix | AZ | 85016 | 183914 |
| 18 | WILLMENG CONSTRUCTION INC | 2048 N. 44TH ST., STE 200 | PHOENIX | AZ | 85008 | 183914 |
| 19 | CTC GILBERT LLC | 4450 MACARTHUR BLVD 2ND FLOOR | NEWPORT BE | CA | 92660 | 183914 |
| 20 | Vital Pharmaceuticals, Inc. | 1600 N. Park Drive | Weston | FL | 33326 | 183885 |
| 21 | STELLAR GROUP, INC. | 2900 Hartley Road | JACKSONVILL | FL | 32257 | 183885 |
| 22 | GC NET LEASE PHOENIX BEARDSL | 410 17TH ST STE 1175 | DENVER | CO | 80202 | 183999 |

NUMBER OF PIECES: 22                                                                         8.8
Date Prepared: 11-18-2020

## VERIFICATION

MAILING PARTY                    POSTMASTER                  NUMBER OF PIECES: 22
Corporate Lien Services LLC
6908 E Thomas Rd Suite 210       _____     Total Pieces Received: _____
Scottsdale, AZ 85251

                                                             RECEIVED BY: _____