UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| IN RE: | Chapter 11 |
| VITAL PHARMACEUTICALS, INC., et al.,[1] | Case No. 22-17842-PDR |
| Debtors. | (Jointly Administered) |

**MONSTER ENERGY COMPANY'S RESPONSE TO THE DEBTORS' PENDING APPLICATION TO RETAIN SANCHEZ FISCHER LEVINE, LLP AS SPECIAL COUNSEL**

Monster Energy Company ("Monster"), a creditor in the above-captioned jointly administered chapter 11 cases ("Chapter 11 Cases"), hereby submits this response ("Response") to the Debtors' pending Application for Order Authorizing the Employment of David M. Levine and the Law Firm of Sanchez Fischer Levine, LLP as Special Counsel to the Debtors, Effective as of the Petition Date. [ECF No. 633] (the "SFL Application"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      In December 2022, the Debtors filed three applications to retain four separate law firms to represent them in various prepetition actions (the "Special Counsel Applications").[2] On January 17, 2023, the Committee of Unsecured Creditors (the "Committee") filed an Omnibus

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430) ("VPX"); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010) ("JHO"); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicom Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] The applications include: (i) Debtors' Application for Order Authorizing the Employment of Andrew P. Beilfuss and the Law Firm of Quarles & Brady LLP as Special Counsel to the Debtors, Effective as of the Petition Date [ECF No. 511]; (ii) Debtors' Application for Approval of the Employment of Daniel L. Geyser and the Law Firm of Haynes and Boone, LLP, as Special Counsel to the Debtors, Effective as of November 3, 2022 [ECF No. 565]; and (iii) Debtors' Application for Approval of the Employment of Richard D. Faulkner and the Law Firm of Faulkner ADR Law, PLLC, as Special Counsel to the Debtors, Effective as of November 1, 2022 (which also included proposed retention of the Loree Law Firm) [ECF No. 566].

Objection to the Special Counsel Applications (the "Omnibus Objection") on the basis that continued litigation of the preparation actions is not in the best interests of the Debtors' estates and appears "driven by John H. Owoc's ('Mr. Owoc') desire to continue his speculative and punitive prepetition litigation strategy, which has already failed in almost every case and directly contributed to the Debtors' need to pursue Chapter 11 protection in the first place." [ECF No. 651, ¶ 1.] Although Monster shares the Committee's concerns, Monster did not object to the Debtors' retention of Quarles & Brady, LLP, Haynes and Boone, LLP, Faulkner ADR Law, PLLC, or the Loree Law Firm.

2. On January 10, 2023, the Debtors filed the SFL Application, in which they proposed retaining David M. Levine and Sanchez Fischer Levine, LLP (collectively, "SFL") to litigate two lawsuits that Debtor Vital Pharmaceuticals, Inc. ("VPX") filed against Monster.[3] Although Monster does not object to SFL's retention, Monster hereby provides notice of its intention to object to any future application for payment of SFL's fees as, among other things, a waste of estate resources. As outlined below, the 2019 Lawsuit has been administratively closed for more than two-and-a-half years, and VPX has not proffered good cause to reopen it at this late juncture. The 2022 Lawsuit is a copycat of the 2019 Lawsuit, making VPX's claim objectively frivolous and barred by the doctrine against claim-splitting. Monster recently filed a motion under Federal Rule of Civil Procedure 11 ("Rule 11") seeking sanctions against VPX and its in-house counsel for initiating the 2022 Lawsuit.

---

[3] The two lawsuits are (i) *Vital Pharmaceuticals, Inc. d/b/a Bang Energy v. Monster Beverage Corporation, et al.*, Case No. 19-cv61974-CMA, in the United States District Court for the Southern District of Florida (the "2019 Lawsuit"); and (ii) *Vital Pharmaceuticals, Inc. d/b/a VPX and as Bang Energy v. Monster Beverage Corporation, et al.*, Case No. 22-cv-61621-RKA, in the United States District Court for the Southern District of Florida (the "2022 Lawsuit").

## BACKGROUND

### A.    The Chapter 11 Cases

3.    On October 10, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition with this Court under the Bankruptcy Code.

4.    The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

### B.    VPX's History of Failed Litigation and Retaliation Against Monster

5.    The Debtors instituted these bankruptcy proceedings shortly after a federal jury in California awarded Monster a $293 million verdict against VPX and Mr. Owoc. [*See* ECF No. 890] (Verdict Form) at 2–5, *Monster Energy Co. v. Vital Pharm., Inc.*, No. 5:18-cv-1882 (Sept. 29, 2022) (the "False Advertising Case").] The jury unanimously found that VPX and Mr. Owoc willfully engaged in systematic corporate misconduct, including falsely advertising their Bang Energy drink since 2015, tortiously interfering with Monster's contracts, and misappropriating Monster's trade secrets. (*Id.*) That verdict came just months after an arbitrator awarded Monster and co-claimant Orange Bang nearly $185 million in damages in another case against VPX. [ECF No. 127, *Vital Pharm., Inc. v. Orange Bang, Inc. & Monster Energy Co.*, No. 5:20-cv-1464-DSF-SHK (C.D. Cal.) (the "Trademark Infringement Case").] That award, which was confirmed by the District Court and reduced to judgment, found VPX liable for trademark infringement and breach of contract based on its use of Orange Bang's "Bang" trademarks. (*Id.*)

6.    On the morning of Mr. Owoc's anticipated testimony in the False Advertising Case, VPX filed its initial complaint in the 2022 Lawsuit against Monster and Rodney Sacks, Monster's CEO. [*See* ECF No. 1, *Vital Pharm., Inc v. Monster Beverage Co.*, No. 0:22-cv-61621-RKA.] VPX's Complaint was aptly described as a "legal-filing-as-press-release" that was focused more

3

on "using incendiary language to excoriate Sacks and his company" than on "advanc[ing] the specific legal claims."[4]

7. On December 22, 2022, Monster served a motion to dismiss pursuant to Federal Rule of Civil Procedure 12 on VPX and its in-house counsel in the 2022 Lawsuit. [ECF No. 46, No. 0:22-cv-61621-RKA.] In response, VPX filed an amended complaint, which, among other things, dropped Mr. Sacks as a defendant. [ECF No. 39.] However, VPX's amendment failed to resolve all material deficiencies that Monster identified, including the fact that VPX's claims in the 2022 Lawsuit are identical to claims that VPX brought against Monster in the 2019 Lawsuit. Accordingly, Monster filed a motion for sanctions pursuant Rule 11 on January 12, 2023 (the "Rule 11 Motion"). [ECF No. 46.]

8. In response to the Rule 11 Motion, VPX indicated that it intends to seek leave to amend its complaint in the 2019 Lawsuit to purportedly "moot" Monster's claim-splitting argument. [ECF No. 49 at 3 n.2.] VPX has not explained the changes that it plans to make to the complaint in the 2019 Lawsuit, much less how such amendment would supposedly obviate Monster's Rule 11 Motion. (*Id.*) Nor did VPX identify good cause for amending its allegations in the 2019 Lawsuit, which has been administratively closed for more than two-and-a-half years. [ECF No. 149, No. 0:19-cv-61974-CMA at 1.]

9. After being apprised of VPX's procedural machinations, the court presiding over the 2022 Lawsuit administratively closed and stayed the case for 60 days to allow VPX to decide whether to seek to reopen the 2019 Lawsuit. [ECF No. 54, No. 0:22-cv-61621-RKA.] Monster intends to oppose VPX's efforts to prosecute both cases and reserves the right to renew its Rule 11 motion against VPX and its counsel.

---

[4] *See* Ex. 1, Beverage Business Insights (Sept. 1, 2022).

**RESPONSE**

10. As the Committee correctly stated in the Omnibus Objection, "[t]he proposed Special Counsel retentions are not only unnecessary given the trajectory of these Chapter 11 Cases, but they reflect Mr. Owoc's belief that litigation is a club to wielded not based on reasoned legal and cost-benefit analyses, but on spite and pride." [ECF No. 651 at 8-9, No. 22-17842-PDR.] This is particularly true with respect to the SFL Application, which concerns lawsuits that Mr. Owoc filed in retaliation for Monster bringing lawsuits against VPX.

11. To the extent that VPX continues to pursue the 2019 and 2022 Lawsuits, Monster provides notice of its intention to object to any application for payment of SFL's fees. The 2019 and 2022 Lawsuits rest on frivolous allegations and were brought in an attempt to harass Monster. Monster will oppose VPX's efforts to prosecute those actions and will pursue all available remedies against VPX and SFL, including under Rule 11.

12. Because payment of fees to SFL would only serve to further Mr. Owoc's personal vendetta against Monster—while draining the limited resources of the estate and weakening the already tenuous position of unsecured creditors—no such payment should be authorized. *See, e.g.*, *In re Johnson*, 433 B.R. 626, 636 (Bankr. S.D. Tex. 2010) ("[T]he need for special counsel must be for the benefit of the estate and not merely for the personal benefit of the debtor."); *see also In re Abrass*, 250 B.R. 432, 435 (Bankr. M.D. Fla. 2000) (debtor must establish that "the employment will be in the best interest of the estate.").

**CONCLUSION**

13. Debtors hold a fiduciary duty to preserve and maximize the value of the estate for creditors. Retaining and paying SFL to litigate two overlapping and frivolous cases is not in the best interests of the estate. Accordingly, Monster reserves its right to object to any applications for compensation and reimbursement of expenses SFL submits for approval pursuant to section 330

and 331 of the Bankruptcy Code and the applicable Federal Rules of Bankruptcy Procedure and the Local Rules of this Court.

Dated: January 31, 2023

**AKERMAN LLP**
/s/ Michael I. Goldberg
Michael I. Goldberg
Florida Bar No. 886602
Eyal Berger
Florida Bar No. 11069
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301
T: (954) 463-2700 /F: (954) 463-2224
michael.goldberg@akerman.com
eyal.berger@akerman.com

-and-

**PACHULSKI STANG ZIEHL & JONES LLP**[5]
Richard M. Pachulski (pro hac vice)
Ira D. Kharasch (pro hac vice)
Robert J. Feinstein (pro hac vice)
Teddy M. Kapur (pro hac vice)
Steven W. Golden (pro hac vice)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
T: (310) 277-6910 /F: (310) 201-0760
rpachulski@pszjlaw.com
ikharasch@pszjlaw.com
rfeinstein@pszjlaw.com
tkapur@pszjlaw.com
sgolden@pszjlaw.com

*Counsel to Monster Energy Company*

---

[5] Michael I. Goldberg hereby certifies that the undersigned attorneys are appearing pro hac vice in this matter pursuant to court orders dated as follows: (i) Teddy M. Kapur, October 14, 2022 [ECF No. 103]; (ii) Robert J. Feinstein, October 17, 2022 [ECF 133]; (iii) Steven Golden, October 17, 2022 [ECF No. 134]; (iv) Richard M. Pachulski, October 18, 2022 [ECF No. 158]; and (v) Ira D. Kharasch, October 18, 2022 [ECF No. 159].

# EXHIBIT 1

| | |
|---|---|
| **From:** | Beverage Business Insights |
| **To:** | Denise Nordstrom |
| **Subject:** | Beverage Business Insights - Vol 19 No 168 |
| **Date:** | Thursday, September 01, 2022 12:50:19 PM |

# BEVERAGE BUSINESS INSIGHTS

**published 100+x a year**
**Vol 19 No 168 | Sep 1, 2022**
Publisher: **Benj Steinman**   Editor: **Gerry Khermouch**   Senior Editor: **Jim Sullivan**

**NOTE:** It is illegal to forward or reproduce Beverage Business Insights. This newsletter is intended exclusively for Monster Energy Site License Staff

## In This Issue:

- **Is That in Civil Code? Bang Marketer VPX Charges Monster with 'Wanton Malevolence' in Latest Legal Outburst; Asserts Sugar-Bomb Formulas Don't Provide Sustained Lift**
- **Athletic Campaign 'Fit for All Times' Features Celeb Investors JJ Watt, David Chang; Early Brewer to Tap Newly Liberated College Jocks**
- **NEW PRODUCTS: Lines Blur as PepsiCo Preps Gatorade Fast Twitch, Energized Extension with Similarities to Celsius, Rockstar Recovery**
- **EXTENSIONS: G Fuel Energy Cracks GNC Chain with Quartet of Exclusive 'Low Stim' RTDs with Moderate Caffeine Levels**

**Is That in Civil Code? Bang Marketer VPX Charges Monster with 'Wanton Malevolence' in Latest Legal Outburst; Asserts Sugar-Bomb Formulas Don't Provide Sustained Lift**   "Wanton malevolence." That's gist of Bang Energy marketer VPX's accusation vs Monster Beverage and its co-ceo Rodney Sacks as ongoing personal and commercial grudge match moves on to new forum, US District Court in South Florida, where VPX is based. After losing challenge on its formulation and branding brought by Orange Bang and Monster as well as its own challenge to trade dress of MNST's Bang fighter Reign, VPX now is attacking rival on range of broader grounds, from purportedly dangerous products to "trademark bullying."  Suit seems to adopt the legal-filing-as-press-release tone associated with figures like Donald Trump, whom VPX founder/ceo Jack Owoc admires, using incendiary language to excoriate Sacks and his company in manner that doesn't always clearly advance the specific legal claims that are at issue. It also comes as jury trial has gotten under way in Monster suit alleging false advertising at rival even as VPX continues its efforts to reassemble an indie DSD network after unraveling of its alliance with Pepsi.

Here's gist of new suit: "VPX brings this action to confront, and seek redress for,

Monster's decades of wanton malevolence, including (i) unfairly competing and falsely advertising the nature and attributes of its products, (ii) continuing to wreak grievous physical harm upon consumers by ignoring reports of that its products are hazardous, even potentially lethal, (iii) abusing judicial and arbitral processes as an anticompetitive tactic, and (iv) rank 'trademark bullying,' all in derogation of free and fair marketplace competition and at the direct behest of its ruthless (co-) CEO, Rodney Cyril Sacks, acting alone or in concert with others." MNST has been litigant in over 1,600 cases, suit tallies.

Among its causes of action, suit seems to relitigate issue that was focus of congressional hearings nearly a decade ago, when some legislators pushed FDA to rein in energy brands on safety grounds. In support of claim that Monster brand is dangerous, VPX suit pulls up gov't's database of adverse health events, same DB tapped years ago during anti-energy-drink hysteria in 2013. After congressionally mandated review back then, FDA wasn't able to show that those drinks carry greater risk to consumers than other caffeine sources. As suit notes, "Ultimately, the FDA reports did not represent any conclusion about whether the products caused the adverse events." At those hearings, industry leaders made some concessions, including moving away from marketing to preteens and pledging to keep their caffeine content moderate, tho they soon violated latter pledge as Bang's success inspired them to offer items with similar 300 mg caffeine payload. Bang had launched at NACS show just as energy drink controversy was coming to a head – BBI, Oct 11 2012.

After Monster in its suit alongside Orange Bang dismantled notion that Bang contains ingredient called super creatine, Bang in this suit tries to make case that Monster is similarly off-base in its marketing, since spike-&-crash nature of its formulation doesn't bring sustained energy lift (tho we don't recall Monster marketing often addressing how sustained the lift is). "Although caffeinated, the M-Claw is, in reality, an *anti-energy* drink that is a sugar-loaded, crash-inducing soda pop, the consumption of which provides no sustained energy, provides an overall net decrease in energy, and results in a subsequent crash that negatively affects consumers' energy and performance and health," suit charges. Or, as it puts it, "instead of a *big bad buzz*, all consumers are left with is a big bad crash." VPX notes, "a single can of the M-Claw contains a whopping 58 grams of carbohydrates, of which 54 grams are made up of 'added sugars.' Ingredients listed within the M-Claw label include 'sugar,' 'glucose,' and 'maltodextrin.'" Of course, besides core green can, MNST offers range of zero-sugar sublines like Ultra that rely on other ingredients to provide a lift.

**Athletic Campaign 'Fit for All Times' Features Celeb Investors JJ Watt, David Chang; Early Brewer to Tap Newly Liberated College Jocks**   Athletic Brewing continues to make news and make waves, this time with its marketing. "Fit for All Times" campaign launched today with new ads featuring celeb "early investors" like NFL star JJ Watt and chef/entrepreneur David Chang. "This campaign features world-class professionals enjoying our award-winning NA beer while still performing at their best," said Athletic cmo Andrew Katz, flagging effort that will run on national cable TV, YouTube, paid digital and "organic" social media.  Main 30-second spot depicts how Athletic is good for go time (showing a runner), show time (surfer), hang time (as in the living room), work time (Watt mowing the lawn), tee time (Chang golfing) and free time

(cleverly, a rock climber free soloing). Campaign expected to "generate 200 million impressions." Sounds like a big bet for player that's not even 1/10th of 1% of the beer biz, but which is still growing rapidly and making lotsa folks rethink what the ceiling might be for alc-alternatives.

Also, today, Athletic announced that it signed 3 "Heisman Hopefuls" to "name, image and likeness" (NIL) deals, including Ohio State qb CJ Stroud and Texas Longhorns running back Bijan Robinson, who "partnered" with Athletic in 2021 too. (Remember, Athletic operated a popup store in Austin.) Athletic added USC qb Caleb Williams. The athletes will "promote Athletic on social media and make press appearances." Founder Bill Shufelt noted that "beer sponsorships have always been problematic for NCAA athletes" but this program launched in 2021 when NCAA adopted new policy that allows student-athletes to "take advantage of name, image and likeness opportunities." These deals with college athletes "will help Athletic Brewing reach a growing wave of consumers who are more mindful about their drinking habits," co said.

Athletic up 140%, $7 mil yr-to-date thru Aug 7 in IRI foodstores, garnering over 10% of NA segment sales, but almost half the growth in most-developed channel. For 4 weeks, Athletic still up 137%, $2 mil, but captured virtually all of the growth in the segment in the latest period.

**NEW PRODUCTS: Lines Blur as PepsiCo Preps Gatorade Fast Twitch, Energized Extension with Similarities to Celsius, Rockstar Recovery**   Even as it onboards Celsius as its healthy-energy drink partner, PepsiCo is readying another play in that category via caffeinated Gatorade extension called Fast Twitch. Zero-sugar entry due early in 2023 will contain 200 mg caffeine boost per 12-oz bottle, same as Celsius 12-oz can, and double that of Body Armor Edge, the caffeinated extension of Coke-owned sports drink brand. Within PEP portfolio, Rockstar Recovery is noncarb hydrator with 160 mg of caffeine. Tho launch date is early next year, "consumers may see it on the sidelines of NFL games this season as part of an exclusive deal that PepsiCo has with the league," per Seeking Alpha report. Tho Celsius is exclusive healthy-energy play within PEP portfolio, it's presumed that incumbent PEP brand like Gatorade gets a pass, much as co was able to launch Starbucks-branded Baya energy line without violating contract of prior partner Bang. But effort shows range of platforms Pepsi's willing to use to finally develop a meaningful presence in lucrative category.

**EXTENSIONS: G Fuel Energy Cracks GNC Chain with Quartet of Exclusive 'Low Stim' RTDs with Moderate Caffeine Levels**   Gamer-oriented G Fuel energy drink has cracked GNC with assortment that includes 4 lower-caffeine RTDs created expressly for nutrition chain. Hitting stores and GNC DTC platform on RTD side is Low Stim subline that dials down caffeine to 140 mg from 300 mg, so entrants in gaming marathons can pound multiple cans to stay in the zone. But new entries also offer more moderate alternative to mainstays like Zoa (160 mg) and Alani Nu (200 mg). Low Stim is breaking in GNC stores and on its DTC platform in Knuckles Sour Power (sour raspberry candy), Divine Peach (peach, kiwi, dragon fruit), Miami Nights (strawberry, pineapple, coconut) and Compound V (inspired by The Boys comic book/movie franchise, with citrus, berry, coconut and ginseng powder). Also exclusive to GNC are 40-serving tubs of Compound V and another formulation called Hype Sauce. GNC also is picking up G Fuel's existing

Sonic Peach Rings and Hype Sauce Raspberry Lemonade RTDs. Move establishes Long Island-based brand in endemic retailer where rivals Ghost Energy and Zoa have established strong presence.

---

**EDITORIAL ADDRESS**: 49 East Maple Ave, Suffern, NY 10901
**Phone:** (845) 507-0040 **Fax:** (845) 507-0041 **Email:** info@bevinsights.com Website:www.beerinsights.com
**Copyright 2022 by Beer Marketer's INSIGHTS, Inc**. All Rights Reserved.
**WARNING:** **It is illegal under Federal Copyright Law to retransmit or reproduce this newsletter in any manner, including for internal use, without our permission. Copyright violations will be prosecuted.  START YOUR SUBSCRIPTION HERE or UNSUBSCRIBE HERE**