UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:
Vital Pharmaceuticals, Inc.,          Case no. 22-17842-PDR
_____Debtor(s)._____/          Chapter 11 Case

**SANTANDER CONSUMER USA, INC.'S MOTION FOR RELIEF FROM STAY**
**ANY INTERESTED PARTY WHO FAILS TO FILE AND SERVE A WRITTEN**
**RESPONSE TO THIS MOTION WITHIN 14 DAYS AFTER THE DATE OF SERVICE**
**STATED IN THIS MOTION SHALL, PURSUANT TO LOCAL RULE 4001-1(C),**
**BE DEEMED TO HAVE CONSENTED TO THE ENTRY OF AN ORDER GRANTING**
**THE RELIEF REQUESTED IN THE MOTION**

Santander Consumer USA, Inc. dba Chrysler Capital (hereinafter Santander), pursuant to 11 U.S.C. 362(d)(1), moves for relief from the stay as follows:

1.   On October 10, 2022, debtor(s) filed for relief under Chapter 11 of the Bankruptcy Code.

**COUNT I**
**(re 2018 Jeep Wrangler VIN: 1C4HJXDG8JW190077)**

2.   On October 26, 2018, debtor executed a contract pertaining to the purchase of a **2018 Jeep Wrangler VIN: 1C4HJXDG8JW190077**.   A copy of the contract is attached as Exhibit A.   The assignment of the contract to Chrysler Capital is located at the bottom of Page 1 of Exhibit A.

3.   Chrysler Capital provided buyer with the financing to purchase the vehicle and noted its lien on the vehicle's Title. Proof of title is attached as Exhibit B. Chrysler Capital is a dba of Santander Consumer USA Inc. Attached as Exhibit C is the Secretary's Certificate that reflects that Santander is the proper party of interest and can act as Chrysler Capital.

4.   Debtor defaulted by failing to remit the monthly

payments due on September 10, 2022 and each month thereafter.
As of January 19, 2023, the arrears on the account are
$3,371.70.

5.    The outstanding balance owed on this loan account is
**$12,328.28**, as of January 19, 2023, excluding attorney fees and
costs.  An affidavit of indebtedness is attached as Exhibit D.

## COUNT II
## (re 2018 Jeep Wrangler VIN: 1C4HJXDG9JW134228)

6.    On October 26, 2018, debtor executed a contract
pertaining to the purchase of a **2018 Jeep Wrangler VIN:**
**1C4HJXDG9JW134228.**    A copy of the contract is attached as
Exhibit E.   The assignment of the contract to Chrysler Capital
is located at the bottom of Page 1 of Exhibit E.

7.    Chrysler Capital provided buyer with the financing to
purchase the vehicle and noted its lien on the vehicle's Title.
Proof of title is attached as Exhibit F. Chrysler Capital is a
dba of Santander Consumer USA Inc. Attached as Exhibit C is the
Secretary's Certificate that reflects that Santander is the
proper party of interest and can act as Chrysler Capital.

8.    Debtor defaulted by failing to remit the monthly
payments due on September 10, 2022 and each month thereafter in
the amount of $800.76 each, plus late fees in the amount of
$40.03.

9.    The payoff balance owed on this loan account is
**$11,857.77**, as of January 4, 2023, excluding attorney fees and
costs.  An affidavit of indebtedness is attached as Exhibit G.

**COUNT III**
**(re 2018 Jeep Wranger VIN: 1C4HJXDG6JW190076)**

10. On October 26, 2018, debtor executed a contract pertaining to the purchase of a **2018 Jeep Wranger VIN: 1C4HJXDG6JW190076.** A copy of the contract is attached as Exhibit H. The assignment of the contract to Chrysler Capital is located at the bottom of Page 1 of Exhibit H.

11. Chrysler Capital provided buyer with the financing to purchase the vehicle and noted its lien on the vehicle's Title. Proof of title is attached as Exhibit I. Chrysler Capital is a dba of Santander Consumer USA Inc. Attached as Exhibit C is the Secretary's Certificate that reflects that Santander is the proper party of interest and can act as Chrysler Capital.

12. Debtor defaulted by failing to remit the monthly payments due on September 10, 2022 and each month thereafter in the amount of $832.52 each, plus late fees in the amount of $41.62.

13. The payoff balance owed on this loan account is **$12,328.28,** as of January 4, 2023, excluding attorney fees and costs. An affidavit of indebtedness is attached as Exhibit J.

**COUNT IV**
**(re 2018 Jeep Wrangler VIN: 1C4HJXDG4JW190075)**

14. On October 26, 2018, debtor executed a contract pertaining to the purchase of a **2018 Jeep Wrangler VIN: 1C4HJXDG4JW190075.** A copy of the contract is attached as

3

Exhibit K.  The assignment of the contract to Chrysler Capital is located at the bottom of Page 1 of Exhibit K.

15.  Chrysler Capital provided buyer with the financing to purchase the vehicle and noted its lien on the vehicle's Title. Proof of title is attached as Exhibit L. Chrysler Capital is a dba of Santander Consumer USA Inc. Attached as Exhibit C is the Secretary's Certificate that reflects that Santander is the proper party of interest and can act as Chrysler Capital.

16.  Debtor defaulted by failing to remit the monthly payments due on September 10, 2022 and each month thereafter in the amount of $832.52 each, plus late fees in the amount of $41.62.

17.  The payoff balance owed on this loan account is **$12,328.28,** as of January 4, 2023, excluding attorney fees and costs.  An affidavit of indebtedness is attached as Exhibit M.


## COUNT V
### (re 2018 Jeep Wrangler VIN: 1C4HJXDG7JW134227)

18.  On October 26, 2018, debtor executed a contract pertaining to the purchase of a **2018 Jeep Wrangler VIN: 1C4HJXDG7JW134227.**  A copy of the contract is attached as Exhibit N.  The assignment of the contract to Chrysler Capital is located at the bottom of Page 1 of Exhibit N.

19.  Chrysler Capital provided buyer with the financing to purchase the vehicle and noted its lien on the vehicle's Title. Proof of title is attached as Exhibit O. Chrysler Capital is a

4

dba of Santander Consumer USA Inc. Attached as Exhibit C is the Secretary's Certificate that reflects that Santander is the proper party of interest and can act as Chrysler Capital.

20. Debtor defaulted by failing to remit the monthly payments due on September 10, 2022 and each month thereafter in the amount of $814.61 each, plus late fees in the amount of $40.73.

21. The payoff balance owed on this loan account is **$12,062.92**, as of January 4, 2023, excluding attorney fees and costs.  An affidavit of indebtedness is attached as Exhibit P.

### COUNT VI
### (re 2018 Jeep Wrangler VIN: 1C4BJWDG4JL896433)

22. On October 26, 2018, debtor executed a contract pertaining to the purchase of a **2018 Jeep Wrangler VIN: 1C4BJWDG4JL896433**.  A copy of the contract is attached as Exhibit Q.  The assignment of the contract to Chrysler Capital is located at the bottom of Page 1 of Exhibit Q.

23. Chrysler Capital provided buyer with the financing to purchase the vehicle and noted its lien on the vehicle's Title. Proof of title is attached as Exhibit R. Chrysler Capital is a dba of Santander Consumer USA Inc. Attached as Exhibit C is the Secretary's Certificate that reflects that Santander is the proper party of interest and can act as Chrysler Capital.

24. Debtor defaulted by failing to remit the monthly payments due on September 10, 2022 and each month thereafter in the amount of $722.12 each.

25.  The outstanding balance owed on this loan account is **$10,693.41,** as of January 4, 2023, excluding attorney fees and costs.  An affidavit of indebtedness is attached as Exhibit S.

26.  A proposed order is attached as Exhibit T.

**WHEREFORE,** Santander requests an order under section 362(d)(1) modifying the stay so that Santander may repossess or replevy the vehicles, sell the vehicles, and apply the proceeds of the sales to the debt owed to Santander, and determining that Federal Rule of Bankruptcy Procedure 4001(a)(3) is not applicable and Santander may immediately enforce and implement the stay relief order.

**I HEREBY CERTIFY** that I am admitted to the bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that on February 3, 2023, copies of the foregoing motion were transmitted via ECF to the Office of the US Trustee, J. Steven Wilkes, Esq., & Heidi A Feinman, Esq., attorneys for US trustee, Jordi Guso, Esq., Michael Jordan Niles, Esq., Andrew Sorkin, Esq., & Jeramy D Webb, Esq., attorneys for debtor, Leyza F. Blanco, Esq., Juan J Mendoza, & Fernando J Menendez, Esq., attorneys for the Creditor Committee & all other parties scheduled to receive notice in the case; and mailed to Vital Pharmaceuticals, Inc., debtor, 1600 N. Park Dr., Weston, FL 33326.

GERARD M. KOURI, JR., P.A.
Counsel for Santander
5311 King Arthur Avenue
Davie, FL 33331
Tel: (954) 862-1731, Fax (954) 862 1732
*/s/ Gerard M. Kouri, Jr.*

By: _____
      GERARD M. KOURI, JR., ESQ.
      FBN 375969
      gmkouripaecf@gmail.com

RETAIL INSTALLMENT SALE CONTRACT - SIMPLE FINANCE CHARGE
(WITH ARBITRATION PROVISION)

EXHIBIT
A

ORIGINAL LIENHOLDER



OTHER IMPORTANT AGREEMENTS

1. FINANCE CHARGE AND PAYMENTS
   a. How we will figure Finance Charge. We will treat any Prepaid Finance Charge as fully earned on the date of this contract. We will figure the rest of the Finance Charge on a daily basis at the Base Rate on the unpaid part of your Principal Balance. Your Principal Balance is the sum of the Amount Financed and the Prepaid Finance Charge, if any.
   b. How we will apply payments. We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of your Principal Balance and to other amounts you owe under this contract in any order we choose.
   c. How late payments or early payments change what you must pay. We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. You may prepay. You may prepay all or part of your Principal Balance at any time. If the contract is paid in full within six months after the date you sign it, we may impose an acquisition charge, not exceeding $75, for services performed on your behalf for processing this contract. If you prepay, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.
   e. You may ask for a payment extension. You may ask us for a deferral of the scheduled due date of all or any part of a payment (extension). If we agree to your request, we may charge you a $15 extension fee. You must maintain the physical damage insurance required by this contract (see below) during any extension. If you do not have this insurance, we may buy it and charge you for it as this contract says. You may extend the term of any optional insurance you bought with this contract to cover the extension if the insurance company or your insurance contract permits it, and you pay the charge for extending this insurance.
   If you get a payment extension, you will pay additional finance charges at the Base Rate on the amount extended during the extension. You will also pay any additional insurance charges resulting from the extension, and the $15 extension fee if we charge you this fee.

2. YOUR OTHER PROMISES TO US
   a. If the vehicle is damaged, destroyed, or missing. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. Using the vehicle. You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. Security Interest.
   You give us a security interest in:
   - The vehicle and all parts or goods put on it;
   - All money or goods received (proceeds) for the vehicle;
   - All insurance, maintenance, service, or other contracts we finance for you; and
   - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

   This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.
   d. Insurance you must have on the vehicle.
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge at the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. What happens to returned insurance, maintenance, service, or other contract charges. If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES
   a. You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
   If you pay late, we may also take the steps described below.
   b. You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
   - You do not pay any payment on time;
   - You give false, incomplete, or misleading information on a credit application;
   - You start a proceeding in bankruptcy or one is started against you or your property; or
   - You break any agreements in this contract.

   The amount you will owe will be the unpaid part of your Principal Balance plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. You may have to pay collection costs. If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. This includes any attorneys' fees we incur as a result of any bankruptcy proceeding brought by or against you under federal law.
   d. We may take the vehicle from you. If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   e. How you can get the vehicle back if we take it. If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
   f. We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   g. What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. WARRANTIES SELLER DISCLAIMS
   Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
   This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
   Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. OPTIONAL SERVICE CONTRACTS
   You are not required to buy a service contract to obtain credit. Your choice of service contract providers for any service contracts you buy will not affect our decision to sell or extend credit to you.

7. REJECTION OR REVOCATION
   If you are permitted under Florida's Uniform Commercial Code to reject or revoke acceptance of the vehicle and you claim a security interest in the vehicle because of this, you must either: (a) post a bond in the amount of the disputed balance; or (b) deposit all installment payments as they become due into the registry of a court of competent jurisdiction.

8. SERVICING AND COLLECTION CONTACTS
   You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

9. APPLICABLE LAW
   Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

**Seller's Right to Cancel**

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit, locate financing for you on the exact terms shown on the front of this contract, and assign this contract to a financial institution. You agree that Seller has the number of days stated on the front of this contract to assign this contract. You agree that if Seller is unable to assign this contract within this time period to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel this contract. Seller's right to cancel this contract ends upon assignment of this contract.
b. If Seller elects to cancel per Paragraph a above, Seller will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new contract with different financing terms (for example, a larger down payment, a higher annual percentage rate, a required cosigner, etc.) or you may pay with alternate funds arranged by you.
c. Upon receipt of the notice of cancellation, you must return the vehicle to Seller within 48 hours in the same condition as when sold other than reasonable wear for the time you had it. Except as described below, Seller must give you back all consideration Seller has received from you in connection with this contract.
d. If you do not return the vehicle within 48 hours after receipt of the notice of cancellation, you agree that Seller may use any lawful means to take it back (including repossession if done peacefully) and you will be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller the charge shown in the Seller's Right to Cancel provision on the front of this contract for each day you do not return the vehicle after receipt of the notice of cancellation.
e. While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage done to the vehicle while the vehicle is in your possession. Seller may deduct from any consideration due to you under paragraph c. above Seller's reasonable costs to repair the vehicle and any daily charges you incur if you fail to return the vehicle within 48 hours after receipt of the notice of cancellation. If Seller cancels this contract, the terms of this Seller's Right to Cancel provision (including those on the front of this contract) remain in effect even after you no longer have possession of the vehicle.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable

Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827

# Chrysler Capital

## Lien and Title Information

Lienholder

**ELT Lien ID**
**Lienholder**          Chrysler Capital
**Lienholder Address**  PO BOX 961272
                        Ft. Worth, TX 76161

**Lien Release Date**

Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 1C4HJXDG8JW190077 | **Issuance Date** | 11/1/2018 |
| **Title Number** | 0132783255 | **Received Date** | 11/7/2018 |
| **Title State** | FL | **ELT/Paper** | ELECTRONIC |
| **Year** | 2018 | **Odometer Reading** | |
| **Make** | JEEP | **Branding** | |
| **Model** | | | |
| **Owner 1** | VITAL PHARMACEUTICALS INC | | |
| **Owner 2** | | | |
| **Owner Address** | 1600 N PARK DR | | |
| | WESTON, FL 33326 | | |

**Printed: Monday, January 9, 2023 8:51:20 AM PST**

EXhIbI+ B

## SANTANDER CONSUMER USA INC.
## SECRETARY'S CERTIFICATE

I, Eldridge A. Burns, Jr., Secretary of SANTANDER CONSUMER USA INC. (the "Corporation"), a private corporation duly organized and existing under the laws of the State of Illinois, do hereby certify that on February 6, 2013, Chrysler Group LLC granted to the corporation a non-transferable, royalty-free license to use the *"Chrysler Capital"*, *"Chrysler"*, *"Dodge"*, *"Jeep"*, *"RAM"*, *"Chrysler Capital"* and *"Mopar"* word trademarks, and their corresponding brand logos.

IN WITNESS WHEREOF, I have hereunto signed my name effective as of the 11th day of February 2013.

Eldridge A. Burns, Jr.
Chief Legal Officer and Secretary

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:

    Vital Pharmaceuticals, Inc.,
    Debtor(s)

Chapter 11

Bky. No. 22-17842

**STATE OF TEXAS**       )
                         ) ss.

**COUNTY OF TARRANT**   )     **AFFIDAVIT**

    I, Ashley Young, a Bankruptcy Specialist of Santander Consumer USA Inc. dba Chrysler Capital, declare under penalty of perjury that I have personal knowledge of the information set forth below, which is true and correct to the best of my knowledge, information, and belief.

    1.    This affidavit is based on the loan payment records of Santander Consumer USA Inc. dba Chrysler Capital as of January 4, 2023. These records are regularly maintained in the course of business and it is the regular practice to make and maintain these records. These records reflect the loan payments that are noted in the records at the time of receipt by persons whose regular duties include recording this information. I maintain these records and regularly use and rely upon them in the performance of my duties.

    2.    Santander Consumer USA Inc. dba Chrysler Capital has a valid, perfected security interest in the following (the "Collateral"): 2018 Jeep Wrangler, VIN: 1C4HJXDG8JW190077 .

    3.    $12,328.28 is the outstanding balance under the contract.

    4.    $3,371.70 is the amount of the existing delinquency under the contract.

    5.    $30,825.00 is the fair market value of the Collateral.

    6.    No appropriate insurance has been verified.

    Further your affiant sayeth not.

Dated: January 19, 2023

Subscribed and sworn to before me on this
19th day of January , 2023

_____
Notary Public
My commission expires: 11-12-2025

Printed Name: Ashley Young
Title: Bankruptcy Specialist
Creditor: Santander Consumer USA Inc.
dba Chrysler Capital

JANISCIA R. JACKSON
Notary Public, State of Texas
Comm. Expires 11-12-2025
Notary ID 124535075

EXHIBIT D

RETAIL INSTALLMENT SALE CONTRACT
WITH ARBITRATION PROVISION

EXHIBIT E



OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will treat any Prepaid Finance Charge as fully earned on the date of this contract. We will figure the rest of the finance charge on a daily basis at the Base Rate on the unpaid part of your Principal Balance. Your Principal Balance is the sum of the Amount Financed and the Prepaid Finance Charge, if any.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of your Principal Balance and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of your Principal Balance at any time. If the contract is paid in full within six months after the date you sign it, we may impose an acquisition charge, not exceeding $75, for services performed on your behalf for processing this contract. If you prepay, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.
   e. **You may ask for a payment extension.** You may ask us for a deferral of the scheduled due date of all or any part of a payment (extension). If we agree to your request, we may charge you a $15 extension fee. You must maintain the physical damage insurance required by this contract (see below) during any extension. If you do not have this insurance, we may buy it and charge you for it as this contract says. You may extend the term of any optional insurance you bought with this contract to cover the extension if the insurance company or your insurance contract permits it, and you pay the charge for extending this insurance.
   If you get a payment extension, you will pay additional finance charges at the Base Rate on the amount extended during the extension. You will also pay any additional insurance charges resulting from the extension, and the $15 extension fee if we charge you this fee.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
   You give us a security interest in:
   - The vehicle and all parts or goods put on it;
   - All money or goods received (proceeds) for the vehicle;
   - All insurance, maintenance, service, or other contracts we finance for you; and
   - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

   This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.
   d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge at the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

   If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
   - You do not pay any payment on time;
   - You give false, incomplete, or misleading information on a credit application;
   - You start a proceeding in bankruptcy or one is started against you or your property; or
   - You break any agreements in this contract.

   The amount you will owe will be the unpaid part of your Principal Balance plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. This includes any attorneys' fees we incur as a result of any bankruptcy proceeding brought by or against you under federal law.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
   f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**
   **Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
   This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
   **Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

6. **OPTIONAL SERVICE CONTRACTS**
   You are not required to buy a service contract to obtain credit. Your choice of service contract providers for any service contracts you buy will not affect our decision to sell or extend credit to you.

7. **REJECTION OR REVOCATION**
   If you are permitted under Florida's Uniform Commercial Code to reject or revoke acceptance of the vehicle and you claim a security interest in the vehicle because of this, you must either: (a) post a bond in the amount of the disputed balance; or (b) deposit all installment payments as they become due into the registry of a court of competent jurisdiction.

8. **SERVICING AND COLLECTION CONTACTS**
   You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

9. **APPLICABLE LAW**
   Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

**Seller's Right to Cancel**

a. **Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit, locate financing for you on the exact terms shown on the front of this contract, and assign this contract to a financial institution. You agree that Seller has the number of days stated on the front of this contract to assign this contract. You agree that if Seller is unable to assign this contract within this time period to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel this contract. Seller's right to cancel this contract ends upon assignment of this contract.**

b. **If Seller elects to cancel per Paragraph a above, Seller will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new contract with different financing terms (for example, a larger down payment, a higher annual percentage rate, a required cosigner, etc.) or you may pay with alternate funds arranged by you.**

c. **Upon receipt of the notice of cancellation, you must return the vehicle to Seller within 48 hours in the same condition as when sold other than reasonable wear for the time you had it. Except as described below, Seller must give you back all consideration Seller has received from you in connection with this contract.**

d. **If you do not return the vehicle within 48 hours after receipt of the notice of cancellation, you agree that Seller may use any lawful means to take it back (including repossession if done peacefully) and you will be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller the charge shown in the Seller's Right to Cancel provision on the front of this contract for each day you do not return the vehicle after receipt of the notice of cancellation.**

e. **While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage done to the vehicle while the vehicle is in your possession. Seller may deduct from any consideration due to you under paragraph c. above Seller's reasonable costs to repair the vehicle and any daily charges you incur if you fail to return the vehicle within 48 hours after receipt of the notice of cancellation. If Seller cancels this contract, the terms of this Seller's Right to Cancel provision (including those on the front of this contract) remain in effect even after you no longer have possession of the vehicle.**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827

# Chrysler Capital

## Lien and Title Information

Lienholder

**ELT Lien ID**
**Lienholder**          Chrysler Capital
**Lienholder Address**  PO BOX 961272
                        Ft. Worth, TX 76161

**Lien Release Date**

Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 1C4HJXDG9JW134228 | **Issuance Date** | 11/15/2018 |
| **Title Number** | 0132927759 | **Received Date** | 11/21/2018 |
| **Title State** | FL | **ELT/Paper** | ELECTRONIC |
| **Year** | 2018 | **Odometer Reading** | |
| **Make** | JEEP | **Branding** | |
| **Model** | | | |

| | |
|---|---|
| **Owner 1** | VITAL PHARMACEUTICALS INC |
| **Owner 2** | |
| **Owner Address** | 1600 N PARK DR |
| | WESTON, FL 33326 |

Printed: Monday, January 9, 2023 11:19:09 AM PST

Exhibit F

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:

Vital Pharmaceuticals, Inc.,

Case No.   22-17842

Debtor(s)          Chapter   11

## AFFIDAVIT OF INDEBTEDNESS IN SUPPORT OF SANTANDER CONSUMER USA INC. DBA CHRYSLER CAPITAL'S MOTION FOR RELIEF FROM STAY

Before me, the undersigned authority, personally appeared Ashley Young, who, being duly sworn, deposes and says:

1.     I am Ashley Young. I am employed as a Bankruptcy Specialist by Santander Consumer USA Inc. dba Chrysler Capital ("Creditor").

2.     This affidavit is based upon Creditor's loan payment records as of January 4, 2023. These records are regularly maintained in the course of business of Creditor and it is the regular practice of Creditor to make and maintain these records. These records reflect loan payments that are noted in the records at the time of receipt by persons whose regular duties include recording this information. I maintain these records for Creditor and regularly use and rely upon them in the performance of my duties.

3.     Debtor maintains a loan, account number XXXX5299, with Creditor. Creditor holds a security interest in the following property:

**2018 JEEP WRANGLER, VIN 1C4HJXDG9JW134228**



1

4.      The payments on this loan account, due for September 10th, 2022 through

December 10th, 2022, in the amount of $800.76 each, late fees of $40.03 for a total of $3,243.07

have not been received by Creditor.

5.      The payoff balance owed on this loan account is $11,857.77, as of January 4,

2023, excluding attorney fees and costs.

6.      Creditor does not have current verifiable proof of collision and comprehensive

insurance covering the vehicle.

7.      The contract and proof of title attached to this motion as exhibits are true and

accurate copies of the original documents.

8.      This concludes my affidavit.

_____
Ashley Young

**SWORN TO AND SUBSCRIBED TO** before me under penalty of perjury as being true
and correct based on the personal knowledge of Creditor's books and business records this
25th day of January , 2023, by Ashley Young, who is personally known to
me.

NOTARY PUBLIC:

Sign:_____

Print:_____

State of Texas at Large

My Commission Expires:  11-12 2025

JANISCIA R. JACKSON
Notary Public, State of Texas
Comm. Expires 11-12-2026
Notary ID 124535075

2

RETAIL INSTALLMENT SALE CONTRACT - SINGLE FINANCE CHARGE
(WITH ARBITRATION PROVISION)

| Buyer Name and Address | Co-Buyer Name and Address | Seller-Creditor (Name and Address) |
|---|---|---|
| VITAL PHARMACEUTICALS INC | N/A | ALAN JAY ENTERPRISES OF W |
| 1600 N PARK DR | | 1405 US HIGHWAY 17S |
| WESTON, FL 33326-3278 | | WAUCHULA, FL 33873 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller-Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used/Demo | Year | Make and Model | Weight (lbs.) | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2018 | JEEP WRANGLE | | 1C4HJXDG7JW198876 | Personal, family, or household unless otherwise indicated below ☐ business ☐ agricultural |

**FEDERAL TRUTH-IN-LENDING DISCLOSURES**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $3215.50 is |
|---|---|---|---|---|
| 3.99 % | 6963.67 | 54267.33 | 53931.24 | 53216.16 |

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | 835.52 | Monthly beginning 12/19/2018 |



Exhibit H

---

**NO COOLING OFF PERIOD**

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

ORIGINAL LIENHOLDER



## OTHER IMPORTANT AGREEMENTS

**1. FINANCE CHARGE AND PAYMENTS**

a. **How we will figure Finance Charge.** We will treat any Prepaid Finance Charge as fully earned on the date of this contract. We will figure the rest of the finance charge on a daily basis at the Base Rate on the unpaid part of your Principal Balance. Your Principal Balance is the sum of the Amount Financed and the Prepaid Finance Charge, if any.

b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of your Principal Balance and to other amounts you owe under this contract in any order we choose.

c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. **You may prepay.** You may prepay all or part of your Principal Balance at any time. If the contract is paid in full within six months after the date you sign it, we may impose an acquisition charge, not exceeding $75, for services performed on your behalf for processing this contract. If you prepay, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

e. **You may ask for a payment extension.** You may ask us for a deferral of the scheduled due date of all or any part of a payment (extension). If we agree to your request, we may charge you a $15 extension fee. You must maintain the physical damage insurance required by this contract (see below) during any extension. If you do not have this insurance, we may buy it and charge you for it as this contract says. You may extend the term of any optional insurance you bought with this contract to cover the extension if the insurance company or your insurance contract permits it, and you pay the charge for extending this insurance.

If you get a payment extension, you will pay additional finance charges at the Base Rate on the amount extended during the extension. You will also pay any additional insurance charges resulting from the extension, and the $15 extension fee if we charge you this fee.

**2. YOUR OTHER PROMISES TO US**

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. **Security Interest.**
You give us a security interest in:
- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

d. **Insurance you must have on the vehicle.**
You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge at the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
- You do not pay any payment on time;
- You give false, incomplete, or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of your Principal Balance plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. This includes any attorneys' fees we incur as a result of any bankruptcy proceeding brought by or against you under federal law.

d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4. WARRANTIES SELLER DISCLAIMS**

**Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**5. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

**6. OPTIONAL SERVICE CONTRACTS**

You are not required to buy a service contract to obtain credit. Your choice of service contract providers for any service contracts you buy will not affect our decision to sell or extend credit to you.

**7. REJECTION OR REVOCATION**

If you are permitted under Florida's Uniform Commercial Code to reject or revoke acceptance of the vehicle and you claim a security interest in the vehicle because of this, you must either: (a) post a bond in the amount of the disputed balance; or (b) deposit all installment payments as they become due into the registry of a court of competent jurisdiction.

**8. SERVICING AND COLLECTION CONTACTS**

You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

**9. APPLICABLE LAW**

Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

---

**Seller's Right to Cancel**

a. **Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit, locate financing for you on the exact terms shown on the front of this contract, and assign this contract to a financial institution. You agree that Seller has the number of days stated on the front of this contract to assign this contract. You agree that if Seller is unable to assign this contract within this time period to any one of the financial institutions with whom Seller regularly does business, under an assignment acceptable to Seller, Seller may cancel this contract. Seller's right to cancel this contract ends upon assignment of this contract.**

b. **If Seller elects to cancel per Paragraph a above, Seller will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new contract with different financing terms (for example, a larger down payment, a higher annual percentage rate, a required cosigner, etc.) or you may pay with alternate funds arranged by you.**

c. **Upon receipt of the notice of cancellation, you must return the vehicle to Seller within 48 hours in the same condition as when sold other than reasonable wear for the time you had it. Except as described below, Seller must give you back all consideration Seller has received from you in connection with this contract.**

d. **If you do not return the vehicle within 48 hours after receipt of the notice of cancellation, you agree that Seller may use any lawful means to take it back (including repossession if done peacefully) and you will be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller the charge shown in the Seller's Right to Cancel provision on the front of this contract for each day you do not return the vehicle after receipt of the notice of cancellation.**

e. **While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage done to the vehicle while the vehicle is in your possession. Seller may deduct from any consideration due to you under paragraph c above Seller's reasonable costs to repair the vehicle and any daily charges you incur if you fail to return the vehicle within 48 hours after receipt of the notice of cancellation. If Seller cancels this contract, the terms of this Seller's Right to Cancel provision (including those on the front of this contract) remain in effect even after you no longer have possession of the vehicle.**

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

---

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose The American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 __________, or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827

# Chrysler Capital

## Lien and Title Information

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | |
| **Lienholder** | Chrysler Capital |
| **Lienholder Address** | PO BOX 961272 |
| | Ft. Worth, TX 76161 |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 1C4HJXDG6JW190076 | **Issuance Date** | 11/1/2018 |
| **Title Number** | 0132782929 | **Received Date** | 11/7/2018 |
| **Title State** | FL | **ELT/Paper** | ELECTRONIC |
| **Year** | 2018 | **Odometer Reading** | |
| **Make** | JEEP | **Branding** | |
| **Model** | | | |
| **Owner 1** | VITAL PHARMACEUTICALS INC | | |
| **Owner 2** | | | |
| **Owner Address** | 1600 N PARK DR | | |
| | WESTON, FL 33326 | | |

Printed: Monday, January 9, 2023 9:08:37 AM PST

EXhibit I

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| In re: | | | |
|---|---|---|---|
| | | Case No. | 22-17842 |
| Vital Pharmaceuticals, Inc., | | | |
| | Debtor(s) | Chapter | 11 |

## AFFIDAVIT OF INDEBTEDNESS IN SUPPORT OF SANTANDER CONSUMER USA INC. DBA CHRYSLER CAPITAL'S MOTION FOR RELIEF FROM STAY

Before me, the undersigned authority, personally appeared Ashley Young, who, being duly sworn, deposes and says:

1.      I am Ashley Young.  I am employed as a Bankruptcy Specialist by Santander Consumer USA Inc. dba Chrysler Capital ("Creditor").

2.      This affidavit is based upon Creditor's loan payment records as of January 4, 2023.  These records are regularly maintained in the course of business of Creditor and it is the regular practice of Creditor to make and maintain these records.  These records reflect loan payments that are noted in the records at the time of receipt by persons whose regular duties include recording this information.  I maintain these records for Creditor and regularly use and rely upon them in the performance of my duties.

3.      Debtor maintains a loan, account number XXXX8242, with Creditor.  Creditor holds a security interest in the following property:

**2018 JEEP WRANGER, VIN 1C4HJXDG6JW190076**

Exhibit J

1

4.      The payments on this loan account, due for September 10th, 2022 through December 10th, 2022, in the amount of $832.52 each, late fees of $41.62, for a total of $3,371.70 have not been received by Creditor.

5.      The payoff balance owed on this loan account is $12,328.28, as of January 4, 2023, excluding attorney fees and costs.

6.      Creditor does not have current verifiable proof of collision and comprehensive insurance covering the vehicle.

7.      The contract and proof of title attached to this motion as exhibits are true and accurate copies of the original documents.

8.      This concludes my affidavit.

Ashley Young

**SWORN TO AND SUBSCRIBED TO** before me under penalty of perjury as being true and correct based on the personal knowledge of Creditor's books and business records this 25th day of January, 2023, by Ashley Young, who is personally known to me.

JANISCIA R. JACKSON
Notary Public, State of Texas
Comm. Expires 11-12-2026
Notary ID 124535075

NOTARY PUBLIC:

Sign: _____

Print: Janiscia R Jackson

State of Texas at Large

My Commission Expires:   11-12-2026

2

**FEDERAL TRUTH-IN-LENDING DISCLOSURES**

Buyer Name and Address: VITAL PHARMACEUTICALS INC, 1600 N PARK DR, WESTON FL 33326-3278

Seller-Creditor (Name and Address): ALAN JAY ENTERPRISES OF N LAKES LD HIGHWAY LTD, WAUCHULA, FL 33873

EXHIBIT K

NO COOLING OFF PERIOD
State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal causes. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.

ORIGINAL LIENHOLDER



## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
   a. **How we will figure Finance Charge.** We will treat any Prepaid Finance Charge as fully earned on the date of this contract. We will figure the rest of the finance charge on a daily basis at the Base Rate on the unpaid part of your Principal Balance. Your Principal Balance is the sum of the Amount Financed and the Prepaid Finance Charge, if any.
   b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of your Principal Balance and to other amounts you owe under this contract in any order we choose.
   c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
   d. **You may prepay.** You may prepay all or part of your Principal Balance at any time. If the contract is paid in full within six months after the date you sign it, we may impose an acquisition charge, not exceeding $75, for services performed on your behalf for processing this contract. If you prepay, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.
   e. **You may ask for a payment extension.** You may ask us for a deferral of the scheduled due date of all or any part of a payment (extension). If we agree to your request, we may charge you a $15 extension fee. You must maintain the physical damage insurance required by this contract (see below) during any extension. If you do not have this insurance, we may buy it and charge you for it as this contract says. You may extend the term of any optional insurance you bought with this contract to cover the extension if the insurance company or your insurance contract permits it, and you pay the charge for extending this insurance.
   If you get a payment extension, you will pay additional finance charges at the Base Rate on the amount extended during the extension. You will also pay any additional insurance charges resulting from the extension, and the $15 extension fee if we charge you this fee.

2. **YOUR OTHER PROMISES TO US**
   a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
   b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
   c. **Security Interest.**
   You give us a security interest in:
   - The vehicle and all parts or goods put on it;
   - All money or goods received (proceeds) for the vehicle;
   - All insurance, maintenance, service, or other contracts we finance for you; and
   - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

   This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.
   d. **Insurance you must have on the vehicle.**
   You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge at the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
   e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
   a. **You may owe late charges.** You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
   If you pay late, we may also take the steps described below.
   b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
   - You do not pay any payment on time;
   - You give false, incomplete, or misleading information on a credit application;
   - You start a proceeding in bankruptcy or one is started against you or your property; or
   - You break any agreements in this contract.

   The amount you will owe will be the unpaid part of your Principal Balance plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
   c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. This includes any attorneys' fees we incur as a result of any bankruptcy proceeding brought by or against you under federal law.
   d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.
   e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
   f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
   We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
   g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **WARRANTIES SELLER DISCLAIMS**
   **Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**
   This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
   **Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

6. **OPTIONAL SERVICE CONTRACTS**
   You are not required to buy a service contract to obtain credit. Your choice of service contract providers for any service contracts you buy will not affect our decision to sell or extend credit to you.

7. **REJECTION OR REVOCATION**
   If you are permitted under Florida's Uniform Commercial Code to reject or revoke acceptance of the vehicle and you claim a security interest in the vehicle because of this, you must either: (a) post a bond in the amount of the disputed balance; or (b) deposit all installment payments as they become due into the registry of a court of competent jurisdiction.

8. **SERVICING AND COLLECTION CONTACTS**
   You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

9. **APPLICABLE LAW**
   Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

**Seller's Right to Cancel**

a. **Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit, locate financing for you on the exact terms shown on the front of this contract, and assign this contract to a financial institution. You agree that Seller has the number of days stated on the front of this contract to assign this contract. You agree that if Seller is unable to assign this contract within this time period to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel this contract. Seller's right to cancel this contract ends upon assignment of this contract.**
b. **If Seller elects to cancel per Paragraph a above, Seller will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new contract with different financing terms (for example, a larger down payment, a higher annual percentage rate, a required cosigner, etc.) or you may pay with alternate funds arranged by you.**
c. **Upon receipt of the notice of cancellation, you must return the vehicle to Seller within 48 hours in the same condition as when sold other than reasonable wear for the time you had it. Except as described below, Seller must give you back all consideration Seller has received from you in connection with this contract.**
d. **If you do not return the vehicle within 48 hours after receipt of the notice of cancellation, you agree that Seller may use any lawful means to take it back (including repossession if done peacefully) and you will be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller the charge shown in the Seller's Right to Cancel provision on the front of this contract for each day you do not return the vehicle after receipt of the notice of cancellation.**
e. **While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage done to the vehicle while the vehicle is in your possession. Seller may deduct from any consideration due to you under paragraph c. above Seller's reasonable costs to repair the vehicle and any daily charges you incur if you fail to return the vehicle within 48 hours after receipt of the notice of cancellation. If Seller cancels this contract, the terms of this Seller's Right to Cancel provision (including those on the front of this contract) remain in effect even after you no longer have possession of the vehicle.**

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**ARBITRATION PROVISION**
**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 , or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827

# Chrysler Capital

## Lien and Title Information

Lienholder

**ELT Lien ID**
**Lienholder**          Chrysler Capital
**Lienholder Address**  PO BOX 961272
                        Ft. Worth, TX 76161

**Lien Release Date**

Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 1C4HJXDG4JW190075 | **Issuance Date** | 11/15/2018 |
| **Title Number** | 0132927398 | **Received Date** | 11/21/2018 |
| **Title State** | FL | **ELT/Paper** | ELECTRONIC |
| **Year** | 2018 | **Odometer Reading** | |
| **Make** | JEEP | **Branding** | |
| **Model** | | | |
| **Owner 1** | VITAL PHARMACEUTICALS INC | | |
| **Owner 2** | | | |
| **Owner Address** | 1600 N PARK DR | | |
| | WESTON, FL 33326 | | |

**Printed:** Monday, January 9, 2023 9:16:38 AM PST

EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:

Case No.   22-17842

Vital Pharmaceuticals, Inc.,

Debtor(s)          Chapter   11

## AFFIDAVIT OF INDEBTEDNESS IN SUPPORT OF SANTANDER CONSUMER USA INC. DBA CHRYSLER CAPITAL'S MOTION FOR RELIEF FROM STAY

Before me, the undersigned authority, personally appeared Ashley Young, who, being duly sworn, deposes and says:

1.     I am Ashley Young.  I am employed as a Bankruptcy Specialist by Santander Consumer USA Inc. dba Chrysler Capital ("Creditor").

2.     This affidavit is based upon Creditor's loan payment records as of January 4, 2023.  These records are regularly maintained in the course of business of Creditor and it is the regular practice of Creditor to make and maintain these records.  These records reflect loan payments that are noted in the records at the time of receipt by persons whose regular duties include recording this information.  I maintain these records for Creditor and regularly use and rely upon them in the performance of my duties.

3.     Debtor maintains a loan, account number XXXX8249, with Creditor.  Creditor holds a security interest in the following property:

**2018 JEEP WRANGLER, VIN 1C4HJXDG4JW190075**

Exhibit M

4.      The payments on this loan account, due for September 10th, 2022 through December 10th, 2022, in the amount of $832.52 each, Late fees of $41.62, for a total of $3,371.70 have not been received by Creditor.

5.      The payoff balance owed on this loan account is $12,328.28, as of January 4, 2023, excluding attorney fees and costs.

6.      Creditor does not have current verifiable proof of collision and comprehensive insurance covering the vehicle.

7.      The contract and proof of title attached to this motion as exhibits are true and accurate copies of the original documents.

8.      This concludes my affidavit.


_____
Ashley Young

**SWORN TO AND SUBSCRIBED TO** before me under penalty of perjury as being true and correct based on the personal knowledge of Creditor's books and business records this 25th day of January, 2023, by Ashley Young, who is personally known to me.

JANISCIA R. JACKSON
Notary Public, State of Texas
Comm. Expires 11-12-2026
Notary ID 124535075

NOTARY PUBLIC:

Sign: _____

Print: Janiscia R Jackson

State of Texas at Large

My Commission Expires: 11-12-2025

2

# RETAIL INSTALLMENT SALE CONTRACT - SIMPLE FINANCE CHARGE (WITH ARBITRATION PROVISION)

DEAL

Dealer Number ________ Contract Number ________

| Buyer Name and Address | Co-Buyer Name and Address | Seller-Creditor (Name and Address) |
|---|---|---|
| VITAL PHARMACEUTICALS INC<br>1600 N PARK DR<br>WESTON FL 33326-3278<br>Buyer's Birth Month: | N/A<br>Co-Buyer's Birth Month: | ALAN JAY ENTERPRISES OF W<br>1485 US HIGHWAY 17S<br>WAUCHULA, FL 33873 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Seller-Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis at the Base Rate of 5.930 % per year. The Truth-In-Lending Disclosures below are part of this contract. You have thoroughly inspected, accepted, and approved the vehicle in all respects.

| New/Used/Demo | Year | Make and Model | Weight (lbs.) | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| NEW | 2018 | JEEP WRANGLE | | 1C4HJXDG7JW134227 | Personal, family or household unless otherwise indicated below<br>☑ business<br>☐ agricultural ☐ ________ |

You agree that we advised you whether, based on seller's knowledge, the vehicle was titled, registered, or used as a taxicab, police vehicle, short term rental or is a vehicle that is rebuilt or assembled from parts, a kit car, a replica, a flood vehicle, or a manufacturer buy back.

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 5118.00 is |
|---|---|---|---|---|
| 5.92 % | $ 6033.74 | $ 40042.05 | $ 46075.60 | $ 53206.60 |

Your Payment Schedule Will Be: (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | 814.61 | Monthly beginning 12/10/2018 |
| N/A | | N/A |

Or As Follows:

N/A

Late Charge. If payment is not received in full within 10 days after it is due, you will pay a late charge of 5 % of each installment.

Prepayment. If you pay off all your debt early, you may have to pay a penalty.

Security Interest. You are giving a security interest in the vehicle being purchased.

Additional Information: See this contract for more information including information about nonpayment, default, prepayment penalties, any required repayment in full before the scheduled date and security interest.

### ITEMIZATION OF AMOUNT FINANCED

| | | |
|---|---|---|
| 1 Cash Price (including $ 2637.82 sales tax) | | $ 46997.81 (1) |
| 2 Total Downpayment = | | |
| Gross Trade-In Allowance | $ N/A | |
| Less Pay Off Made By Seller (e) | $ N/A | |
| Equals Net Trade In | $ N/A | |
| + Cash | $ 5118.00 | |
| + Other N/A | $ N/A | |
| (If total downpayment is negative, enter "0" and see 4J below) | | $ 5118.00 (2) |
| 3 Unpaid Balance of Cash Price (1 minus 2) | | $ 41807.81 (3) |
| 4 Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts): | | |
| A Cost of Optional Credit Insurance Paid to Insurance Company or Companies. Life $ N/A Disability $ N/A | | $ N/A |
| B Vendor's Single Interest Insurance Paid to Insurance Company | | $ N/A |
| C Other Optional Insurance Paid to Insurance Company or Companies | | $ N/A |
| D Optional Gap Contract | | $ N/A |
| E Official Fees Paid to Government Agencies | | $ N/A |
| F Government Documentary Stamp Taxes | | $ 147.35 |
| G Government Taxes Not Included in Cash Price | | $ N/A |
| H Government License and/or Registration Fees N/A | | $ 8.50 |
| I Government Certificate of Title Fees | | $ N/A |
| J Other Charges (Seller must identify who is paid and describe purpose) | | |
| to N/A for Prior Credit or Lease Balance (e) | | $ N/A |
| to N/A for N/A | | $ N/A |
| to N/A for N/A | | $ N/A |
| to N/A for N/A | | $ N/A |
| to N/A for N/A | | $ N/A |
| to N/A for N/A | | $ N/A |
| to N/A for N/A | | $ N/A |
| to N/A for N/A | | $ N/A |
| to N/A for N/A | | $ N/A |
| to N/A for N/A | | $ N/A |
| Total Other Charges and Amounts Paid to Others on Your Behalf | | $ 155.85 (4) |
| 5 Loan Processing Fee Paid to Seller (Prepaid Finance Charge) | | $ N/A (5) |
| 6 Amount Financed (3 plus 4) | | $ 40042.05 (6) |

OPTION: ☐ You pay no finance charge if the Amount Financed, item 6, is paid in full on or before N/A, Year N/A SELLER'S INITIALS N/A

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term N/A Mos. N/A Name of Gap Contract

I want to buy a gap contract.

Buyer Signs X N/A

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): [illegible] $ N/A [illegible]

Buyer Signs X N/A Co-Buyer Signs X N/A Date N/A

| Trade-In Vehicle | Trade-In Vehicle |
|---|---|
| Year N/A Make N/A | Year N/A Make N/A |
| Model N/A | Model N/A |
| VIN N/A | VIN N/A |
| Gross Trade-In Allowance $ N/A | Gross Trade-In Allowance $ N/A |
| Payoff Made by Seller $ N/A | Payoff Made by Seller $ N/A |
| Lienholder N/A | Lienholder N/A |

[illegible]

Buyer Initials N/A Co-Buyer Initials

Trade-In Payoff Agreement: [illegible]

Buyer Signature X N/A Co-Buyer Signature X N/A

Insurance. You may buy the physical damage insurance this contract requires (see back) from anyone you choose who is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below. Your choice of insurance providers will not affect our decision to sell you the vehicle or extend credit to you.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

Check the insurance you want and sign below:

Optional Credit Insurance

☐ Credit Life: ☐ Buyer ☐ Co-Buyer ☐ Both N/A

Term

☐ Credit Disability: ☐ Buyer ☐ Co-Buyer ☐ Both N/A

Term

Premium:

Credit Life $ N/A

Credit Disability $ N/A

Insurance Company Name N/A

N/A

Home Office Address N/A

N/A

[illegible]

X N/A N/A
Buyer Date

X N/A N/A
Co-Buyer Date

[illegible]

X N/A N/A
Buyer Date

X N/A N/A
Co-Buyer Date

[illegible]

X N/A N/A
Buyer Date

X N/A N/A
Co-Buyer Date

Other Optional Insurance

☐ N/A N/A
Type of Insurance Term

Premium $ N/A

Ins. Co. Name & Address N/A

N/A

N/A

☐ N/A N/A
Type of Insurance Term

Premium $ N/A

Ins. Co. Name & Address N/A

N/A

N/A

☐ N/A N/A
Type of Insurance Term

Premium $ N/A

Ins. Co. Name & Address N/A

N/A

N/A

☐ N/A N/A
Type of Insurance Term

Premium $ N/A

Ins. Co. Name & Address N/A

N/A

N/A

☐ N/A N/A
Type of Insurance Term

Premium $ N/A

Ins. Co. Name & Address N/A

N/A

N/A

[illegible]

I want the insurance checked above.

X N/A N/A
Buyer Signature Date

X N/A N/A
Co-Buyer Signature Date

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.

[illegible]

Florida documentary stamp tax required by law in the amount of $ 147.35 has been paid or will be paid directly to the Department of Revenue.

Certificate of Registration No. ________

You assign all manufacturer rebates and cash back incentives used as a downpayment on this contract to seller. You agree to complete all documents required for assignment of rebates and incentives.

Agreement to Arbitrate: By signing below, you agree that, pursuant to the Arbitration Provision on the reverse side of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X [signature] Co-Buyer Signs X ________

SELLER'S RIGHT TO CANCEL - If Buyer and Co-buyer sign here, the provisions of the Seller's Right to Cancel section on the back, which gives the Seller the right to cancel if Seller is unable to assign this contract within 30 days, will apply. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller a charge of $ 25.00 per day from the date of cancellation until the vehicle is returned or repossessed.

Buyer Signs [signature] X N/A Co-Buyer Signs

## NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding. Buyer Signs X [signature] Co-Buyer Signs X N/A

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

See back for other important agreements.

NOTICE TO THE BUYER: a) Do not sign this contract before you read it or if it contains any blank spaces. b) You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read both sides of this contract, including the arbitration provision on the reverse side, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs X [signature] Date 10/26/18 Co-Buyer Signs X N/A Date N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X N/A Address N/A

Seller Signs ALAN JAY ENTERPRISES OF W Date 10/26/18 By X [signature] Title Agent

Seller assigns its interest in this contract to Chrysler Capital Assigned under the terms of Seller's agreement(s) with Assignee.
☐ Assigned with recourse ☑ Assigned without recourse ☐ Assigned with limited recourse

Seller Alan Jay Enterprises of Wauchula By Title Agent

ORIGINAL LIENHOLDER

Exhibit n



OTHER IMPORTANT AGREEMENTS

1. FINANCE CHARGE AND PAYMENTS

a. How we will figure Finance Charge. We will treat any Prepaid Finance Charge as fully earned on the date of this contract. We will figure the rest of the finance charge on a daily basis at the Base Rate on the unpaid part of your Principal Balance. Your Principal Balance is the sum of the Amount Financed and the Prepaid Finance Charge, if any.

b. How we will apply payments. We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of your Principal Balance and to other amounts you owe under this contract in any order we choose.

c. How late payments or early payments change what you must pay. We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

d. You may prepay. You may prepay all or part of your Principal Balance at any time. If the contract is paid in full within six months after the date you sign it, we may impose an acquisition charge, not exceeding $75, for services performed on your behalf for processing this contract. If you prepay, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

e. You may ask for a payment extension. You may ask us for a deferral of the scheduled due date of all or any part of a payment (extension). If we agree to your request, we may charge you a $15 extension fee. You must maintain the physical damage insurance required by this contract (see below) during any extension. If you do not have this insurance, we may buy it and charge you for it as this contract says. You may extend the term of any optional insurance you bought with this contract to cover the extension if the insurance company or your insurance contract permits it, and you pay the charge for extending this insurance.

If you get a payment extension, you will pay additional finance charges at the Base Rate on the amount extended during the extension. You will also pay any additional insurance charges resulting from the extension, and the $15 extension fee if we charge you this fee.

2. YOUR OTHER PROMISES TO US

a. If the vehicle is damaged, destroyed, or missing. You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

b. Using the vehicle. You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

c. Security Interest.

You give us a security interest in:

- The vehicle and all parts or goods put on it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

d. Insurance you must have on the vehicle.

You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium of the insurance and a finance charge at the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

e. What happens to returned insurance, maintenance, service, or other contract charges. If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

a. You may owe late charges. You will pay a late charge on each late payment as shown on the front. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

b. You may have to pay all you owe at once. If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:

- You do not pay any payment on time;
- You give false, incomplete, or misleading information on a credit application;
- You start a proceeding in bankruptcy or one is started against you or your property; or
- You break any agreements in this contract.

The amount you will owe will be the unpaid part of your Principal Balance plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

c. You may have to pay collection costs. If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. This includes any attorneys' fees we incur as a result of any bankruptcy proceeding brought by or against you under federal law.

d. We may take the vehicle from you. If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device, you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you at your expense. If you do not ask for these items back, we may dispose of them as the law allows.

e. How you can get the vehicle back if we take it. If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.

f. We will sell the vehicle if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

g. What we may do about optional insurance, maintenance, service, or other contracts. This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. WARRANTIES SELLER DISCLAIMS

Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

6. OPTIONAL SERVICE CONTRACTS

You are not required to buy a service contract to obtain credit. Your choice of service contract providers for any service contracts you buy will not affect our decision to sell or extend credit to you.

7. REJECTION OR REVOCATION

If you are permitted under Florida's Uniform Commercial Code to reject or revoke acceptance of the vehicle and you claim a security interest in the vehicle because of this, you must either: (a) post a bond in the amount of the disputed balance; or (b) deposit all installment payments as they become due into the registry of a court of competent jurisdiction.

8. SERVICING AND COLLECTION CONTACTS

You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

9. APPLICABLE LAW

Federal law and the law of the state of our address shown on the front of this contract apply to this contract.

**Seller's Right to Cancel**

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit, locate financing for you on the exact terms shown on the front of this contract, and assign this contract to a financial institution. You agree that Seller has the number of days stated on the front of this contract to assign this contract. You agree that if Seller is unable to assign this contract within this time period to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel this contract. Seller's right to cancel this contract ends upon assignment of this contract.

b. If Seller elects to cancel per Paragraph a above, Seller will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new contract with different financing terms (for example, a larger down payment, a higher annual percentage rate, a required cosigner, etc.) or you may pay with alternate funds arranged by you.

c. Upon receipt of the notice of cancellation, you must return the vehicle to Seller within 48 hours in the same condition as when sold other than reasonable wear for the time you had it. Except as described below, Seller must give you back all consideration Seller has received from you in connection with this contract.

d. If you do not return the vehicle within 48 hours after receipt of the notice of cancellation, you agree that Seller may use any lawful means to take it back (including repossession if done peacefully) and you will be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller the charge shown in the Seller's Right to Cancel provision on the front of this contract for each day you do not return the vehicle after receipt of the notice of cancellation.

e. While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage done to the vehicle while the vehicle is in your possession. Seller may deduct from any consideration due to you under paragraph c. above Seller's reasonable costs to repair the vehicle and any daily charges you incur if you fail to return the vehicle within 48 hours after receipt of the notice of cancellation. If Seller cancels this contract, the terms of this Seller's Right to Cancel provision (including those on the front of this contract) remain in effect even after you no longer have possession of the vehicle.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

**ARBITRATION PROVISION**

**PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS**

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association, 1633 Broadway, 10th Floor, New York, New York 10019 , or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

Collateral Management Services
9750 Goethe Road | Sacramento. CA 95827

# Chrysler Capital

## Lien and Title Information

### Lienholder

**ELT Lien ID**
**Lienholder**        Chrysler Capital
**Lienholder Address**  PO BOX 961272
                      Ft. Worth, TX 76161

**Lien Release Date**

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 1C4HJXDG7JW134227 | **Issuance Date** | 11/15/2018 |
| **Title Number** | 0132927983 | **Received Date** | 11/21/2018 |
| **Title State** | FL | **ELT/Paper** | ELECTRONIC |
| **Year** | 2018 | **Odometer Reading** | |
| **Make** | JEEP | **Branding** | |
| **Model** | | | |

**Owner 1**        VITAL PHARMACEUTICALS INC
**Owner 2**
**Owner Address**    1600 N PARK DR
                     WESTON, FL 33326

Printed: Monday, January 9, 2023 9:28:06 AM PST

Exhibit O

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

| In re: | | Case No.   22-17842 |
|---|---|---|
| Vital Pharmaceuticals, Inc., | | |
| | Debtor(s) | Chapter   11 |

**AFFIDAVIT OF INDEBTEDNESS IN SUPPORT OF SANTANDER CONSUMER USA INC. DBA CHRYSLER CAPITAL'S MOTION FOR RELIEF FROM STAY**

Before me, the undersigned authority, personally appeared Ashley Young, who, being duly sworn, deposes and says:

1.      I am Ashley Young. I am employed as a Bankruptcy Specialist by Santander Consumer USA Inc. dba Chrysler Capital ("Creditor").

2.      This affidavit is based upon Creditor's loan payment records as of January 4, 2023. These records are regularly maintained in the course of business of Creditor and it is the regular practice of Creditor to make and maintain these records. These records reflect loan payments that are noted in the records at the time of receipt by persons whose regular duties include recording this information. I maintain these records for Creditor and regularly use and rely upon them in the performance of my duties.

3.      Debtor maintains a loan, account number XXXX8254, with Creditor. Creditor holds a security interest in the following property:

**2018 JEEP WRANGLER, VIN 1C4HJXDG7JW134227**

EXhibit P

1

4.      The payments on this loan account, due for September 10th, 2022 through December 10th, 2022, in the amount of $814.61 each, late fees of $40.73, for a total of $3,299.17 have not been received by Creditor.

5.      The payoff balance owed on this loan account is $12,062.92, as of January 4, 2023, excluding attorney fees and costs.

6.      Creditor does not have current verifiable proof of collision and comprehensive insurance covering the vehicle.

7.      The contract and proof of title attached to this motion as exhibits are true and accurate copies of the original documents.

8.      This concludes my affidavit.


Ashley Young

SWORN TO AND SUBSCRIBED TO before me under penalty of perjury as being true and correct based on the personal knowledge of Creditor's books and business records this 25th day of January , 2023, by Ashley Young, who is personally known to me.

JANISCIA R. JACKSON
Notary Public, State of Texas
Comm. Expires 11-12-2026
Notary ID 124635076

NOTARY PUBLIC:

Sign: Janiscia R Jackson

Print: Janiscia R Jackson

State of Texas at Large

My Commission Expires:    11-12-2025

2

RETAIL INSTALLMENT SALE CONTRACT (WITH ARBITRATION PROVISION)

EXHIBIT Q

ORIGINAL LIENHOLDER

OTHER IMPORTANT AGREEMENTS

1. FINANCE CHARGE AND PAYMENTS

2. YOUR OTHER PROMISES TO US

3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

4. WARRANTIES SELLER DISCLAIMS

5. Used Car Buyers Guide.

6. OPTIONAL SERVICE CONTRACTS

7. REJECTION OR REVOCATION

8. SERVICING AND COLLECTION CONTACTS

9. APPLICABLE LAW

Seller's Right to Cancel

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

ARBITRATION PROVISION
PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS



Collateral Management Services
9750 Goethe Road | Sacramento, CA 95827

# Chrysler Capital

## Lien and Title Information

Lienholder

| | |
|---|---|
| **ELT Lien ID** | |
| **Lienholder** | Chrysler Capital |
| **Lienholder Address** | PO BOX 961272 |
| | Ft. Worth, TX 76161 |
| **Lien Release Date** | |

Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 1C4BJWDG4JL896433 | **Issuance Date** | 11/15/2018 |
| **Title Number** | 0132927843 | **Received Date** | 11/21/2018 |
| **Title State** | FL | **ELT/Paper** | ELECTRONIC |
| **Year** | 2018 | **Odometer Reading** | |
| **Make** | JEEP | **Branding** | |
| **Model** | | | |
| **Owner 1** | VITAL PHARMACEUTICALS INC | | |
| **Owner 2** | | | |
| **Owner Address** | 1600 N PARK DR | | |
| | WESTON, FL 33326 | | |

Printed: Monday, January 9, 2023 11:38:00 AM PST

EXHIBIT R

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:

Case No. 22-17842

Vital Pharmaceuticals, Inc.,

Debtor(s)          Chapter 11

## AFFIDAVIT OF INDEBTEDNESS IN SUPPORT OF SANTANDER CONSUMER USA INC. DBA CHRYSLER CAPITAL'S MOTION FOR RELIEF FROM STAY

Before me, the undersigned authority, personally appeared Ashley Young, who, being duly sworn, deposes and says:

1.    I am Ashley Young. I am employed as a Bankruptcy Specialist by Santander Consumer USA Inc. dba Chrysler Capital ("Creditor").

2.    This affidavit is based upon Creditor's loan payment records as of January 4, 2023. These records are regularly maintained in the course of business of Creditor and it is the regular practice of Creditor to make and maintain these records. These records reflect loan payments that are noted in the records at the time of receipt by persons whose regular duties include recording this information. I maintain these records for Creditor and regularly use and rely upon them in the performance of my duties.

3.    Debtor maintains a loan, account number XXXX8255, with Creditor. Creditor holds a security interest in the following property:

**2018 JEEP WRANGLER, VIN 1C4BJWDG4JL896433**

Exhibit S

1

4.      The payments on this loan account, due for September 10th, 2022 through December 10th, 2022, in the amount of $722.12 each for a total of $2,924.58 have not been received by Creditor.

5.      The payoff balance owed on this loan account is $10,693.41, as of January 4, 2023, excluding attorney fees and costs.

6.      Creditor does not have current verifiable proof of collision and comprehensive insurance covering the vehicle.

7.      The contract and proof of title attached to this motion as exhibits are true and accurate copies of the original documents.

8.      This concludes my affidavit.

Ashley Young

**SWORN TO AND SUBSCRIBED TO** before me under penalty of perjury as being true and correct based on the personal knowledge of Creditor's books and business records this 25th day of January, 2023, by Norma Via, who is personally known to me.

JANISCIA R. JACKSON
Notary Public, State of Texas
Comm. Expires 11-12-2025
Notary ID 124535075

NOTARY PUBLIC:

Sign: _Janiscia R. Jackson_

Print: _Janiscia R. Jackson_

State of Texas at Large

My Commission Expires: _11 12 2025_

2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:
Vital Pharmaceuticals, Inc.,          Case no. 22-17842-PDR
_____ Debtor(s). _____/          Chapter 11 Case

### ORDER GRANTING SANTANDER CONSUMER USA, INC.'S
### MOTION FOR RELIEF FROM STAY

**THIS CAUSE** came before the Court on Santander Consumer USA, Inc.'s Motion Relief from Stay (DE xx).  Santander Consumer USA, Inc. dba Chrysler Capital ("Santander"), pursuant to Local Rule 4001-1(A,  B,  and  C),  served  the  debtor(s),  debtor's(s') attorney, the Office of the US Trustee, attorneys  for  the  US Trustee & attorneys for the Creditor Committee with copies of the Motion for Relief from Stay and all exhibits to the motion. By submitting this form of order Santander represents that the motion was served on all parties required by Local Rule 4001-1, that the 14 day response time provided by that rule has expired, that no one has filed, or served on the movant, a response to the motion, and that the form of order was attached as an exhibit to the motion.  Upon consideration of the motion and the

Exhibit T

record, it is

    **ORDERED** that:

    1.   The motion is **GRANTED** and the stay imposed pursuant to 11 U.S.C. Section 362 is modified so as to allow Creditor to repossess or replevy the **2018 Jeep Wrangler VIN: 1C4HJXDG8JW190077, 2018 Jeep Wrangler VIN: 1C4HJXDG9JW134228, 2018 Jeep Wranger VIN: 1C4HJXDG6JW190076, 2018 Jeep Wrangler VIN: 1C4HJXDG4JW190075, 2018 Jeep Wrangler VIN: 1C4HJXDG7JW134227, & 2018 Jeep Wrangler VIN: 1C4BJWDG4JL896433,** to sell the vehicles, and to apply the proceeds of the sales of the vehicle to the amount owed to Creditor.

    2.   The stay is modified for the purpose of allowing Creditor to obtain and sell the vehicles and to apply the proceeds of the sales to the indebtedness owed to Creditor or to proceed in a Court of competent jurisdiction for the sole purpose of seeking in rem remedies. Creditor shall not seek nor obtain any in personam judgment against the debtor(s).

    3.   Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure is not applicable and Santander may immediately enforce and implement this order granting relief from stay.

###

Submitted by:
GERARD M. KOURI, JR., P.A.
5311 King Arthur Ave, Davie, FL 33331
Tel (954) 862-1731; Fax  (954) 862-1732
Email: gmkouripaecf@gmail.com

2