UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 (PDR) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' OBJECTION TO MOTION FOR RELIEF FROM
AUTOMATIC STAY TO CONTINUE ACTION IN NON-BANKRUPTCY FORUM**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the *Joint Motion for Relief from Automatic Stay to Continue Action in Non-Bankruptcy Forum* [ECF No. 670] (the "Motion") filed by Faith Technologies Incorporated ("FTI") and Nexus Steel, LLC ("Nexus") and joined by Hardrock Concrete Placement Co., Inc. ("Hardrock") [ECF No. 711], HACI Mechanical Contractors, Inc. ("HACI") [ECF No. 738], and Integrated Masonry ("Integrated" and together with FTI, Nexus, Hardrock, and HACI, "Movants") [ECF No. 741]. In support of this Objection, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

1.  Movants want to continue their prepetition litigation. They want to conduct "discovery, motion practice, and trial" against the Debtors, in Arizona, in an action that concerns the validity of claims no one has challenged, and the priority of liens whose priority may never be

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

11914318-1

relevant. While Movants complain that they may be forced to litigate the same issues twice, they are demanding to litigate—now, in Arizona—issues that may never need to be litigated at all. If those issues ever do become relevant, they will be litigated once, in whichever forum proves best for all stakeholders at that time.

2. Requiring the Debtors and Truist (whose expenses are reimbursed by the bankruptcy estate) to litigate the Arizona action now would constitute a waste of estate resources, and Movants will suffer no prejudice from deferral of this premature dispute. Accordingly, the Motion should be denied.

## BACKGROUND

3. Debtor JHO Real Estate Investments, LLC ("JHO") owns a manufacturing and distribution center located at 1635 S. 43rd Avenue, Phoenix, Arizona (the "Arizona Property"), the continued functioning of which is important to the Debtors' successful business operations. *See Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* [ECF No. 26] (the "First Day Decl.") ¶ 11.

4. Movants are five of ten contractors (the "M&M Claimants") who assert they have not been paid in full for their work at the Arizona Property. *See* Mot. ¶ 36. Movants assert that the total claims (the "M&M Claims") of the unpaid contractors amount to approximately $15 million. *Id.* Movants assert that they and the other M&M Claimants have filed valid mechanics liens (the "M&M Liens") on the Arizona Property to secure the M&M Claims. *See id.* Movants themselves assert claims totaling roughly $5 million, as follows: FTI - $3,584,788.15; Nexus - $313,512.91; Hardrock - $669,195.67; HACI - $224,126.00; Integrated – $145,637.30. Four Movants have also filed secured claims in these cases on the same bases and in substantially the same amounts as asserted above. *See* Proofs of Claim Nos. 315 (Nexus), 459 (Hardrock), 623 (FTI), 674 (Integrated).

11914318-1

5. In July 2022, Movant Nexus commenced a state court action in Arizona (the "Arizona Action") to foreclose on its asserted M&M Lien. *See* Mot. ¶ 37 & Ex. D. Complaint, *Nexus Steel, LLC v. JHO Real Estate Investment, LLC*, Case No. CV2022-008873 (Az. Super. Ct. filed Jul. 12, 2022). Movants assert that other M&M Claimants thereafter answered, counterclaimed, and/or cross-claimed, seeking foreclosure of their respective M&M Liens. Mot. ¶ 37. Movants further assert that the M&M Claimants seek a determination in the Arizona Action that their M&M Liens have priority over the "Truist Bank Deed of Trust" (the "Truist Deed"). Mot. ¶ 37.

6. Truist Bank is the agent (in such capacity, "Truist") under the Debtors' prepetition and debtor-in-possession credit facilities (respectively, the "Prepetition Facility" and the "DIP Facility"). *See generally* Final DIP Order.[2] After giving effect to the Roll-Up under the Final DIP Order, there are approximately $119.7 million in outstanding obligations under the Prepetition Facility, and the DIP Facility obligations will total $335 million in aggregate principal amount, assuming the full $100 million new money tranche of the DIP Facility is fully drawn (together with all other amounts due and payable under the Prepetition Facility and the DIP Facility, the "Bank Obligations"). To secure the Bank Obligations, Truist holds valid and properly perfected liens in and on substantially all of the Debtors' assets (respectively, the "Prepetition Liens" and the "DIP Liens"), including the Arizona Property, subject only to certain challenges in respect of the Prepetition Liens. *See id.*

7. Movants present such a challenge. They assert that the Truist Deed is the basis for the Prepetition Lien on the Arizona Property and that the Truist Deed is junior to the M&M Liens

---

[2] *Order (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay and (VI) Granting Related Relief* [ECF No. 638] (the "Final DIP Order").

11914318-1

because it was recorded after the M&M Claimants commenced work. Mot. ¶ 41. Truist disputes this proposition and may assert, among other things, that the Bank Obligations benefit from an earlier filed deed. *See* Mot. ¶ 56 ("Truist will argue that it is entitled to be subrogated up to $35,000,000 on the released deed of trust" of a predecessor lender).

8. Truist and the Debtors agreed to a number of protections for the M&M Claimants in the Final DIP Order to preserve the M&M Claimants' liens and challenges. Specifically, the Final DIP Order (1) treats the Arizona Action as a timely challenge to the priority of the liens on the Arizona Property; (2) grants the M&M Claimants adequate protection liens and claims; (3) provides that the Prepetition Liens and DIP Liens, collectively, shall never take priority over the M&M Liens beyond the amount, if any, of Prepetition Liens already senior to the M&M Liens on the Petition Date; (4) confirms that to the extent the M&M Liens are judicially determined to be senior to the Prepetition Liens on the Arizona Property, then the M&M Liens will be "Prepetition Prior Liens" senior to the Prepetition Liens and the DIP Liens; and (5) preserves the M&M Claimants' ability to assert marshaling arguments in respect of the Arizona Property (collectively, the "DIP Protections"). *See* Final DIP Order ¶¶ 5, 11, 13, 40(d), 47, and fn. 4.

9. Notwithstanding the DIP Protections, Movants now seek to lift the stay to litigate immediately "the rights and liabilities as well as priority of each of the parties to the action." Mot. ¶ 44. Movants do not seek enforcement or foreclosure. *Id.* Movants state that "all of the parties have been joined" and that the Arizona court is "more familiar with [the] matter." *Id.* ¶¶ 49, 51.

10. The Arizona Action has not progressed beyond the filing of initial pleadings. The Debtors' bankruptcy filing on October 10, 2022 (the "Petition Date") stayed the case before all parties had answered. *See generally*, Docket, *Nexus Steel v. JHO Real Estate Investment, LLC*, *available at* http://www.superiorcourt.maricopa.gov (summary docket available by case number

11914318-1

search). Several named parties had not even filed appearances as of the Petition Date. *Id.* Movants do not assert that any general unsecured creditors or other stakeholders with rights to object to their proofs of claim are "joined" to the Arizona Action. Nor do Movants assert that the Arizona court has particular expertise in the valuation of assets in bankruptcy sales or the application of equitable remedies such as marshaling.

11. The Debtors have proposed a sale of substantially all of their assets, including the Arizona Property. *See generally* Sale Motion.[3] The Debtors have proposed to hold an auction on April 17, 2023, with a sale hearing to follow on or about April 26, 2023. *Id.* at 2-3.

## ARGUMENT

12. Movants fail to meet their burden to establish that cause exists to lift the automatic stay in order to proceed with the Arizona Action. The filing of a bankruptcy petition operates to stay litigation involving prepetition claims against a debtor. *See* 11 U.S.C. § 362(a)(1). "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws." *In re Feingold*, 730 F.3d 1268, 1276 (11th Cir. 2013) (quotations and citation omitted). This fundamental protection may only be modified if an interested party demonstrates "cause." *See In re Chan*, No. 6:18-bk-03297-KSJ, 2019 Bankr. LEXIS 2702, at *4 (Bankr. M.D. Fla. June 3, 2019). Cause is not defined in the Bankruptcy Code, so when determining whether cause exists courts apply a balancing test that considers the totality of the circumstances in each case. *Id.* (citing *In re Feingold*, 730 F.3d at 1276). In conducting a totality-of-circumstances analysis, courts in

---

[3] *Motion to Approve (A) Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Procedures for the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Form and Manner of Notice of the Sale Hearing, Assumption Procedures, and Auction Results, (D) Dates for an Auction and Sale Hearing, (E) the Sale of Substantially all off the Debtors' Assets Free and Clear of all Claims, Liens, Liabilities, Rights, Interests and Encumbrances, and (F) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing The Debtors to Provide Bid Protections, and (III) Granting Related Relief* (the "Sale Motion") [ECF No. 707].

the Eleventh Circuit have considered: (1) whether the debtor has acted in bad faith; (2) the "hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code"; and (3) the status of pending state court proceedings. *In re Feingold*, 730 F.3d at 1277. Movants fail to demonstrate that any of these factors—and any other factors they deem relevant—support relief from the stay.

13. *First*, Movants make no assertion and offer no evidence that the Debtors have acted in bad faith—nor could they. In determining whether a debtor acted in bad faith, courts may consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions or, in particular, factors which evidence that the petition was filed to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *In re 412 Boardwalk, Inc.*, 520 B.R. 126, 132-33 (Bankr. M.D. Fla. 2014) (quoting *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988)). The Debtors filed for bankruptcy protection for several legitimate reasons, including to obtain an essential infusion of liquidity to stabilize their operations (via the DIP Facility), and obtain breathing room from pending litigation. *See* First Day Decl. ¶ 41. This factor thus weighs against granting relief from the automatic stay.

14. *Second*, analyzing the hardships imposed on the parties also weighs against relief from the stay, because continuing the Arizona Action now is pointless and prejudicial to everyone. The Arizona Action concerns the validity of Movants' claims and the priority of their M&M Liens. Mot. ¶ 44. With regard to validity of claims, Movants have already filed proofs of claim in these cases in liquidated amounts. Properly executed proofs of claim establish the prima facie validity of claims and are deemed allowed unless objected to. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). The Arizona Action is not needed to establish Movants' claims.

15. Moreover, *if* a stakeholder does challenge Movants' claims, that stakeholder may have no connection with the Arizona Action. Any stakeholder, including, for example, any general unsecured creditor who believes Movants' claims improperly impair its recovery, can challenge Movants' proofs of claim. *See* 11 U.S.C. § 502(a). Such a challenge would create a core bankruptcy issue in this Court, *see* 28 U.S.C. §§ 157(b)(2)(B); 1334(b), and one that the Arizona court has no obvious practical way to address. In that event, the Arizona Action would likely be useless.

16. The same applies to disputes over lien priority: the Arizona Action is not presently needed and, in the hypothetical future where priorities matter, insufficient. Movants are not concerned with the priorities among M&M Liens. Mot ¶ 42 ("[T]he mechanics' lienholders share priority."). Instead, they seek a determination that the M&M Liens are senior to the Truist Deed and any other deed benefitting the Bank Obligations. *See* id. ¶¶ 41, 56. That determination is, at best, premature. The Debtors intend to sell substantially all assets, including the Arizona Property. *See generally* Sale Motion. The Debtors hope that the proceeds of that sale will be sufficient to repay entirely the Bank Obligations and the M&M Claims. In that case, the lien priority dispute will in all likelihood be moot, and with it the Arizona Action.

17. While the proceeds of a sale could instead be insufficient to repay entirely the Bank Obligations and the M&M Claims, in that case the issues relevant to determining the parties' recoveries will be more complex and more bankruptcy-focused than simply litigating lien priority. Among other things, parties may dispute valuation of the Arizona Property in the context of the bankruptcy sale, and M&M Claimants, Truist, and potentially other parties not joined to the Arizona Action may dispute or otherwise take positions with respect to any assertion of marshaling rights by the M&M Claimants. These issues, which are important to all stakeholders, are core

7

bankruptcy issues that are subject to developed bankruptcy law and are properly handled by bankruptcy courts with the benefit of bankruptcy valuation experts. *See, e.g.*, 11 U.S.C. § 506(a) (bankruptcy court must determine value of collateral "in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest."). In this hypothetical future, the Arizona Action is insufficient to address the relevant issues.

18. In short, the parties—including Movants—may never need to litigate the issues presented in the Arizona Action, *and* the Arizona Action may not be an appropriate forum if those issues become relevant. Moreover, Movants do not assert that they are at risk of loss of value, litigation options, or relative priority in the meantime. The Debtors and Truist more than assured Movants of the preservation of their rights through the DIP Protections. If Movants' issues do become relevant at a later date, Movants will be no differently situated than they are today.

19. Conversely, the hardships on the Debtors are substantial: the Debtors would be forced to endure the distraction and cost of "discovery, motion practice and trial," Mot. ¶ 44, in a distant forum, for no purpose. *See In re Jefferson Cnty., Ala.*, 491 B.R. 277, 297 (Bankr. N.D. Ala. 2013) (finding debtor would be prejudiced when lifting the automatic stay would "force[] [the debtor] to participate in an extensive and expensive discovery process and a trial in another state" which would further deplete the debtor's diminishing resources). The same is true for Movants (apart from being local to Arizona). In fact, the only way they will need to litigate the same issues twice, Mot. ¶ 52, is if they obtain relief from the stay, proceed in Arizona, and then must relitigate similar issues with bankruptcy stakeholders not party to the Arizona Action. Wasting everyone's time and effort is a hardship contrary to the goals of bankruptcy, and so this second factor also militates against relief from the stay.

20. *Third*, the status of the pending state court proceeding also supports denial of the Motion. "[W]here the stayed non-bankruptcy litigation has reached an advanced stage, courts have shown a willingness to lift the stay to allow the litigation to proceed." *In re R.J. Groover Const., LLC*, 411 B.R. 460, 464–65 (Bankr. S.D. Ga. 2008) (cited by Movants); *see also In re Tricare Rehab. Sys., Inc.*, 181 B.R. 569, 571 (Bankr. N.D. Ala. 1994) (cited by Movants). For example, in *In re R.J. Groover Construction*, the court lifted the automatic stay when "state court proceeding ha[d] been pending for almost three years and much of the discovery ha[d] been completed." *Groover*, 460 B.R. at 464-65. In *Tricare*, the court noted that state-court litigation necessary to liquidate claims was commenced two years before bankruptcy, all discovery and trial preparation were complete, and partial summary judgment had previously been entered. *Tricare*, 181 B.R. at 572. Here, however, the Arizona Action has hardly begun. Not all parties have answered, and some have not even appeared; no motions have been filed, let alone judgments rendered; no discovery has been proposed, let alone produced; and there has not been a single hearing, let alone a trial. *See generally*, Docket, *Nexus Steel v. JHO Real Estate Investment, LLC*, *available at* http://www.superiorcourt.maricopa.gov (summary docket available by case number search). Thus, the third and final factor also weighs against granting relief from the automatic stay

21. While Movants request that the Court consider slightly different factors, the result is the same. The first two factors proposed by Movants—assessing "great prejudice" to debtors against "hardship to the non-bankrupt," Mot. ¶ 47—amount to a balancing of hardships already discussed *infra*. Again, pursuing unnecessary litigation in a distant forum is greatly prejudicial to the Debtors, and it is also a hardship on the Movants themselves. Finally, Movants request the Court examine their likelihood of success on the merits. *Id.* Here, Movants assert they are likely to prevail on the merits because they believe they have superior arguments to Truist relating to lien

priority. Mot. ¶ 56. At the same time, Movants admit that Truist has at least one meaningful counterargument. Mot. ¶ 56. It is unclear on the basis of a one-paragraph description (that admits counterarguments), whether Movants will prevail. More importantly, it is also unclear whether Movants will ever *need* to prevail. At present, there is no likelihood that a court will even reach the merits. Accordingly, even when examining Movants' requested factors, all argue against relief from the stay.

## CONCLUSION

22. For these reasons, the Debtors respectively requests that the Court deny the Motion.

Dated: February 6, 2023
Miami, Florida

Respectfully submitted,

*/s/ Jordi Guso*

George A. Davis (admitted *pro hac vice*)
Hugh Murtagh (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: george.davis@lw.com
tj.li@lw.com
brian.rosen@lw.com
jon.weichselbaum@lw.com

Jordi Guso
Michael J. Niles
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Email: jguso@bergersingerman.com
Email: mniles@bergersingerman.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone: (202) 637-2200
Email: andrew.sorkin@lw.com

*Co-Counsel for the Debtors*

11914318-1