UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 (PDR) |
| Debtors.[1] | (Jointly Administered) |

**SUPPLEMENTAL OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' APPLICATION FOR ORDER AUTHORIZING THE EMPLOYMENT OF DAVID M. LEVINE AND THE LAW FIRM OF SANCHEZ FISCHER LEVINE, LLP AS SPECIAL COUNSEL TO THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 bankruptcy cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors-in-possession (the "Debtors"), by and through its undersigned counsel, hereby submits this supplemental objection (the "Supplemental Objection") to the *Debtors' Application for Order Authorizing the Employment of David M. Levine and the Law Firm of Sanchez Fischer Levine, LLP as Special Counsel to the Debtors, Effective as of the Petition Date* [Docket No. 633] (the "SFL Application"), and respectfully states as follows:

**PRELIMINARY STATEMENT[2]**

1. The Debtors have not demonstrated—nor can they—any benefit to the estates from

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("VPX") (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC ("JHO") (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicom Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms not defined herein have the meaning ascribed to them herein or in the *Objection of the Official Committee of Unsecured Creditors to the Debtors' Pending Applications to Retain Special Counsel* [Docket No. 651] (the "Omnibus Objection"). In addition to the SFL Application, the following retention applications are at issue in the Omnibus Objection: (i) *Debtors' Application for Order Authorizing the Employment of Andrew P. Beilfuss and*

the continued prosecution of the 2019 Litigation and the 2022 Litigation (each term defined herein, and collectively defined herein as the "SFL Litigations") for which the Debtors seek to retain David M. Levine and the Law Firm of Sanchez Fischer Levine, LLP (together, "SFL"). Indeed, the SFL Litigations are already administratively stayed and closed – with the 2019 Litigation having been suspended for two-and-a-half years – and have not advanced past the initial pleadings stage. Rather than engaging counsel and moving forward with the litigations, the Debtors should request that the District Court continue the stay in the 2022 Litigation to maintain the status quo, an action the District Court expressly offered.

2. Continuing to stay the SFL Litigations is appropriate given the current posture of the Chapter 11 Cases. No meaningful progress in the SFL Litigations will be made prior to the consummation of a sale or capital raise by the current case milestone of May 17, 2023, the deadline in the Debtors' DIP financing for the Debtors to have closed on an Acceptable Financing or consummated a Sale Transaction (as defined in the Final DIP Order) (the "May 17th Milestone"). The purchaser or estate fiduciary will then be the appropriate party to evaluate the merits and weigh the cost and benefits of continued prosecution of the SFL Litigations. Moreover, the Committee is skeptical that SFL can stay within the litigation budget allocated given that, as described below, the Debtors must overcome numerous court-ordered procedural hurdles before they can resume prosecuting the SFL Litigations past the initial pleading stages.

---

the Law Firm of Quarles & Brady LLP as Special Counsel to the Debtors, Effective as of the Petition Date [Docket No. 511] (the "Quarles & Brady Application"); (ii) *Debtors' Application for Approval of the Employment of Daniel L. Geyser and the Law Firm of Haynes and Boone, LLP, as Special Counsel to the Debtors, Effective as of November 3, 2022* [Docket No. 565] (the "Haynes and Boone Application"); and (iii) *Debtors' Application for Approval of the Employment of Richard D. Faulkner and the Law Firm of Faulkner ADR Law, PLLC, as Special Counsel to the Debtors, Effective as of November 1, 2022* [Docket No. 566] (the "Faulkner ADR Application," and together with the Quarles & Brady Application, the Haynes and Boone Application, and the SFL Application, the "Special Counsel Applications").

The Debtors' estates and unsecured creditors should not be forced to bear the cost of these litigations.

## RELEVANT BACKGROUND

### A. The Omnibus Objection

3. As discussed in further detail in the Omnibus Objection, the Committee continues to believe that the prosecution of the Prepetition Actions (including the SFL Litigations) will have little to no benefit to the estates. After filing the Omnibus Objection, the Committee sent a letter to the Debtors' reconstituted board requesting that they re-evaluate the Debtors' overall postpetition litigation strategy and the scope of the Special Counsel Retentions. As a result, the Debtors agreed to narrow the scope of certain of the Prepetition Actions they sought to pursue and to provide certain reasonable and necessary protections for the estates, including the following commitments (the "Agreed Retention Modifications")[3] by all Special Counsel (including, upon information and belief, SFL), in the proposed orders:

   a. Agreement to abide by and be compensated pursuant to the *Order Granting Ex Parte Motion to Amend the Interim Compensation Procedures Order* [ECF No. 503], and apply for compensation and reimbursement of costs, pursuant to 11 U.S.C. §§ 330 and 331, at its ordinary rates, as they may be adjusted from time to time, for services rendered and costs incurred on behalf of the Debtors;

   b. Agreement to a reasonable litigation budget reflecting the scope of services to be performed postpetition contained within the "Legal expenses" line item in the Approved Budget attached to the Final DIP Order. As of the date of this

---

[3] The Agreed Retention Modifications arose through the parties' negotiations of the Universal Modifications the Committee proposed in the Omnibus Objection, which consisted of: (a) implementing meaningful restraints on all litigation spending through monthly fee caps for the respective Special Counsel; (b) ensuring the professional complies with the terms of the interim compensation procedures adopted in these Chapter 11 Cases to provide the Committee and other parties-in-interest with transparency and the opportunity to review and object to the fees and expenses associated with all services rendered [*see* Docket No. 503]; (c) requiring any expansion in scope and material litigation decisions involving strategy be approved by the Debtors' board of directors; (d) requiring Special Counsel to confirm there will be no duplication of services amongst the various professionals; (e) adding language expressly preserving the estates' claims and causes of action, if any, against the proposed Special Counsel; and (f) adding language acknowledging that nothing in the proposed order alters any rights the estates may have against any recipient of post-petition funds whether such funds were paid within or outside of the estates, including in the event the estates become administratively insolvent. *See* Omnibus Objection, ¶ 7(a)-(f).

      Supplemental Objection, Quarles & Brady LLP has not agreed to this term. Without agreement, the Committee will continue to object to Quarles & Brady LLP's retention.

c. Use of good faith and commercially reasonable efforts to avoid duplication of services with any of the Debtors' other professionals;

d. Acknowledgment that nothing in the order or the retention will (i) waive or release any claims or causes of action the Debtors or their estates may have against any Special Counsel, whether prepetition or postpetition, or (ii) allow or admit to the allowance of any prepetition or postpetition amounts allegedly due and owing to Special Counsel, and such claims, causes of actions, and defenses shall be expressly preserved;

e. If not waived, Special Counsel retains its prepetition claim against the Debtors for distribution purposes only; and

f. Acknowledgment that nothing in the order approving the retention shall alter any rights the estates may have against Special Counsel for receipt of postpetition funds whether such funds were paid within or outside of the estates, including in the event the estates become administratively insolvent.

4. The parties are still negotiating the terms of agreed orders approving the Special Counsel retentions. While the Committee remains very concerned about the benefit to the estates, assuming the Quarles & Brady LLP budget issues can be resolved, the Committee has agreed to the limited-scope retention of Quarles & Brady LLP, Haynes and Boone, LLP, and Faulkner ADR Law, PLLC to pursue the False Advertising Litigation, the OBI Appeal and *Vital Pharmaceuticals, Inc. and JHO Intellectual Property Holdings, LLC v. PHD Marketing, Inc.*, Case No. 20-cv-06745 (C.D. Cal.), which the Committee understands is in mediation.

5. For the reasons described herein, the Committee continues to object to the Debtors' proposed retention of SFL.

  **B. The SFL Application**

6. The Debtors filed the SFL Application on January 10, 2023 seeking to retain SFL under § 327(e) of the Bankruptcy Code to represent VPX in the following matters that were pending as off the Petition Date, effective as of the Petition Date:

    a. *Vital Pharmaceuticals, Inc. d/b/a Bang Energy v. Monster Beverage Corporation, Monster Energy Company, Reign Beverage Company, LLC, Energy Beverages, LLC, CSC Corporate Domains, Inc., Marherly, Inc., Jennifer Quillen, Brett Martin, Christin Kubsch, Crystal Bowley-Regan, Summer Shores, Amber N. Killmon, Amanda Light, Crystal Carder, Laura Dawson, Arianna Jonae Henderson, Kristin Wong, John Does 1 200, Jane and John Doe Influencers 1-200, and ABC Corporations 1-100*, Case No. 19-cv-61974-CMA (S.D. Fla.) (the "2019 Litigation"); and

    b. *Vital Pharmaceuticals, Inc. d/b/a VPX and as Bang Energy v. Monster Beverage Corporation and Monster Energy Company*, Case No. 22-cv-61621-RKA (S.D. Fla.) (the "2022 Litigation, and together with the 2019 Litigation, the "SFL Litigations").

7. As of the administrative closure of both SFL Litigations, the asserted claims against Monster in each action include violations of the Lanham Act, violations of the Florida Deceptive and Unfair Trade Practices Act, and common law unfair competition, among others.

**C. The 2019 Litigation**

8. The District Court administratively closed the 2019 Litigation on July 1, 2020 pending VPX's filing of a motion advising that (a) an enforcement action VPX intended to file, but had not filed, in the Southern District of California to obtain discovery from a third-party, had concluded; (b) jurisdictional discovery was complete; and (c) VPX was prepared to proceed with the case. *See Administrative Order Closing Case*, 2019 Litigation, Docket No. 149, at 1. The docket does not reflect that any of these steps have occurred, further evidencing the Debtors' delay and lack of progress in prosecuting these actions, including in the more than two years prepetition.

**D. The 2022 Litigation**

9. On December 27, 2022, after notice to the Committee, the Debtors, through SFL, amended the complaint in the 2022 Litigation in response to a motion to dismiss filed by Monster and Monster's CEO, who was then a defendant in the case. Among the arguments Monster had raised in support of dismissal of the 2022 Litigation was that VPX engaged in impermissible

claim splitting by reasserting the same or virtually the same claims it brought against Monster in the 2019 Litigation and the failure to pursue compulsory counterclaims. *See Defendant Monster Beverage Corporation, Monster Energy Company, and Rodney Cyril Sacks's Combined Motion to Dismiss and Memorandum of Law*, 2022 Litigation, Docket No. 39, at 9.

10. Barely one month after the Debtors and SFL notified the Committee of their intent to amend the complaint in the 2022 Litigation, the docket in that case reflects that VPX and Monster are even further from a resolution on the merits than they were in late December 2022. Since the new year, the following motion practice has occurred in the 2022 Litigation:

   c. 1/6/2023 – Monster filed a motion to stay discovery, which the Debtors refused to consent to, pending the court's ruling on the motion to dismiss and VPX's filing of the amended complaint. *See* 2022 Litigation, Docket No. 42.

   d. 1/10/2023 – VPX filed an amended complaint, which dropped Monster's CEO as a defendant and alleged only the Lanham Act, Florida Deceptive and Unfair Trade Practices Act, and common law unfair competition claims. *See id.*, Docket No. 44.

   e. 1/11/2023 – In light of the amended complaint, the court denied Monster's motion to dismiss and motion to stay discovery as moot. *See id.*, Docket No. 45.

   f. 1/12/2023 – Monster filed a motion for sanctions against VPX and Greg Metzger for, among other things, continuing to allege the same claims VPX brought against Monster in the 2019 Litigation. *See id.*, Docket No. 46.

   g. 1/20/2023 – VPX filed a motion to extend time to respond to Monster's sanctions motion and seeking an expedited hearing. *See id.*, Docket No. 49.

11. The District Court scheduled a status conference for January 24, 2023. At the conference, the court stayed and closed the 2022 Litigation for 60 days. *See Paperless Order*, 2019 Litigation, Docket No. 54. The order directed the parties to move to reopen the case by the earlier of (a) March 27, 2023, or (b) within seven days of the court in the 2019 Litigation ruling on VPX's "forthcoming motion for leave to amend in [the 2019 Litigation]." *Id.* The order expressly stated that if the judge in the 2019 Litigation had not adjudicated the motion for leave to amend, either party could move to extend the stay, which the court would grant if requested

jointly. *See id.* ("[E]ither party may move to extend the stay (and, if the parties move jointly for an extension, we'll grant it)."). Without discussion as to the merits, the court terminated all deadlines and hearings in the case and denied all pending motions as moot.

## SUPPLEMENTAL OBJECTION

### A. The SFL Application Is Not in the Best Interest of the Estates and Must Be Denied

12. As discussed in further detail in the Omnibus Objection, to qualify for the narrow employment under Section 327(e), the debtor-in-possession must establish that "the employment will be in the best interest of the estate." 11 U.S.C. § 327(e); *In re Abrass*, 250 B.R. 432, 435 (Bankr. M.D. Fla. 2000). The Debtors have not shown—nor can they—that the proposed retention of SFL and continued postpetition prosecution of the SFL Litigations is necessary or is in the best interest of the estates. The Debtors have not provided the Committee with any analysis of the value of these claims. Nor have they demonstrated that failure to prosecute the claims at this time will result in some waiver or loss of the claims, or that not projecting whatever the Debtors consider to be "a strong litigation posture" in the eyes of the District Court would have any impact whatsoever on the claims. Rather, a purchaser or post-confirmation fiduciary can evaluate these claims in the future and determine whether to prosecute them.

13. Irrespective of the strength or weakness of the underlying claims,[4] one need only appreciate the procedural posture of the SFL Litigations to conclude that SFL's retention to prosecute these actions is not in the best interests of the estates.

14. First, and significantly, both of the SFL Litigations are currently stayed and

---

[4] The Debtors and Monster have a long-standing acrimonious relationship evidenced by the *nine* legal actions involving the parties pending within the year prior to the Petition Date. *See* Exhibit SOFA 7, Debtors' Statements and Schedules, Docket No. 325, at 68. The Committee has reason to believe that the SFL Litigations may be strike suits aimed at Monster to obtain a litigation advantage. Indeed, the complaint in the 2019 Action was filed on the morning John H. Owoc was scheduled to testify in the False Advertising Action. The Committee, however, takes no formal position on the merits of the SFL Litigations at this time.

-7-

*administratively closed*.  The 2019 Litigation has been closed for more than two-and-a-half years, with the Debtors having taken no apparent action to prosecute the action until recently advising the District Court in the 2022 Litigation that VPX intended to amend the complaint in the 2019 Litigation.

15. Contrary to the Debtors' insistence, the suggestion that they must move forward with the SFL Litigations now to preserve the claims is clearly belied by the District Court's administrative stay and case closure of both SFL Litigations.  In fact, the District Court's order staying and administratively closing the 2022 Litigation expressly indicated that either party could move to extend the stay and that a joint request would be granted.  The Debtors only need to request that the District Court continue the stay in the 2022 Litigation, consistent with the District Court's order staying and closing the case, to maintain the status quo in the SFL Litigations.  The Committee is hard-pressed to see how acting in compliance with the court's order and seeking to extend the stay results in any prejudice to the Debtors or the defendants.

16. Second, given the many procedural hurdles mandated by the District Court in the respective SFL Litigations, the fees and expenses that will be incurred just to move beyond the pleading stage will deplete limited estate resources in a manner that simply cannot be justified by a mere possibility of recovery several years down the road at the earliest.  Upon information and belief, SFL has already expended more than half of its share of the Debtors' proposed litigation budget, which may not include or be able to accommodate any of (a) the motions to reopen both of the SFL Litigations, which Monster will likely oppose for the 2019 Litigation; (b) the various contested motions and responses filed in the 2022 Litigation just over the last four weeks – including Monster's Rule 11 sanctions motion – that, while dismissed as moot upon closure of the 2022 Litigation, may well be re-filed if the case is reopened; and (c) costly discovery in both

cases. If, as the Committee suspects, SFL will soon be over budget, it will be the Committee's constituents left funding the Debtors' dubious litigation strategy.

17. Finally, even if the Debtors do succeed in satisfying the District Court's requirements to continue substantively prosecuting the SFL Litigations without exceeding SFL's budget allocation, it would realistically only be after the May 17th Milestone that any actual progress could be made. Even then, the SFL Litigations would still only be in their infancies and, if the Debtors are lucky, mired in costly discovery.

18. In light of all the foregoing, there is no reason these claims cannot be pursued after the closing of a transaction, which is expected to occur in the next few months, after evaluation by the purchaser or estate fiduciary, as applicable.

**B. If the Court is Inclined to Approve SFL's Retention, the Terms of the Proposed Retention Must Be Modified**

19. In addition to the Committee's global concerns about the Special Counsel Retentions, which are amplified by the uncertain procedural postures of the SFL Litigations and lack of information about the value of the claims, the proposed terms of SFL's retention raise additional issues and concerns that must be addressed. Therefore, to the extent the Court is inclined to approve the SFL Application, in addition to limiting the scope of that retention to only obtaining a further stay of the 2022 Litigation, the proposed order must (a) implement the Agreed Retention Modifications described in paragraph 3, *supra*, and (b) address the Committee's specific concerns about the terms of SFL's proposed retention.

20. First, the Debtors' SOFA reflects a $46,524.20 payment to SFL on October 7, 2022. SFL should confirm that this payment was for prepetition services rendered and not a retainer, consistent with the representations in the SFL Application and notwithstanding reference in the Engagement Letter to a $25,000 retainer.

21. Next, the Debtors fail to explain the basis for approval of retention retroactive the Petition Date, as requested. *See In re United Container LLC*, 305 B.R. 120, 129 (Bankr. M.D. Fla. 2003) (to determine whether retroactive approval of retention under Section 327 is justified, courts examine, first, whether the failure to file a timely application was due to excusable neglect, and second, whether the applicant demonstrated it would have been approved initially if a timely application had been filed). The Debtors provide no explanation for the glaring three-month delay between executing the Engagement Letter on October 7, 2022 and informing the District Court in the 2022 Litigation on October 12, 2022 that VPX would prosecute the action while in bankruptcy and timely file retention papers for SFL,[5] on the one hand, and filing the SFL Application in mid-January, on the other. This is particularly significant given the Committee's belief that SFL has already incurred more than half of its allocation of the Debtors' litigation budget.

22. Lastly, although the Engagement Letter indicates it would be superseded by a litigation finance agreement if the Debtors secured litigation funding, any such arrangement would be subject to Court approval.

## **CONCLUSION**

23. For all these reasons and the reasons described in the Omnibus Objection, the Committee urges the Court to deny the SFL Application. In the alternative, the Committee requests that SFL's retention be approved only to the extent necessary to seek and obtain a further stay of the 2022 Litigation, consistent with the District Court's January 24, 2023 order, while the sale/capital raise process runs its course.

---

[5] *See Plaintiff Vital Pharmaceuticals, Inc.'s Notice of Proceeding with Case*, 2022 Litigation, Case No. 22-cv-61621, Docket No. 12 at 1 (VPX "will proceed with the prosecution of the instant action, notwithstanding having filed for Chapter 11 relief. Further, Vital intends to timely seek bankruptcy court approval for Sanchez Fischer Levine, LLP's appointment as counsel.").

**WHEREFORE**, the Committee respectfully requests that the Court deny the SFL Application, or (i) condition entry of any order approving the SFL Application on the Agreed Retention Modifications and other retention-specific changes requested herein, and (ii) order such other and further relief as is just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on February 7, 2023 upon all interested parties registered to receive notice via this Court's CM/ECF electronic notification system.

Dated:  February 7, 2023

**LOWENSTEIN SANDLER LLP**
Jeffrey L. Cohen, Esq.
Eric Chafetz, Esq.
Jordana L. Renert, Esq.
Lindsay H. Sklar, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: jrenert@lowenstein.com
Email: lsklar@lowenstein.com
      -and-
Nicole Fulfree, Esq.
Arielle B. Adler, Esq.
Erica G. Mannix, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2502
Facsimile: (973) 597-2400
Email: nfulfree@lowenstein.com
Email: aadler@lowenstein.com
Email: emannix@lowenstein.com

**SEQUOR LAW, P.A.**

By: */s/ Leyza F. Blanco*
    Leyza F. Blanco
    Florida Bar No.: 104639
    Juan J. Mendoza
    Florida Bar No.: 113587

1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202
Email: lblanco@sequorlaw.com
Email: jmendoza@sequorlaw.com

*Counsel to the Official Committee of Unsecured Creditors*