Page 1

UNITED STATES BANKRUPTCY COURT.
SOUTHERN DISTRICT OF FLORIDA

IN RE:                          CASE NO. 22-17842-PDR

VITAL PHARMACEUTICALS, INC.,

       Debtor.
_____/

ECF #511, 558, 565, 566

January 26, 2023

      The above-entitled cause came on for hearing before the Honorable Peter D. Russin, one of the Judges in the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, at 299 E. Broward Blvd., Fort Lauderdale, Broward County, Florida, on January 26, 2023, commencing at or about 2:00 p.m., and the following proceedings were had.

Transcribed from a digital recording by:
Cheryl L. Jenkins, RPR, RMR

```
 1
                    APPEARANCES VIA ZOOM:
 2
 3              BERGER SINGERMAN, by
                   JORDI GUSO, Esquire
 4              On behalf of the Debtor
 5
                    QUARLES & BRADY, by
 6                ANDY BEILFUSS, Esquire
              CHRISTOPHER COMBEST, Esquire
 7              DANIEL JANSSEN, Esquire
         Special Counsel on behalf of the Debtor
 8
 9                  SEQUOR LAW, by
                  LEYZA BLANCO, Esquire
10                        and
                  LOWENSTEIN SANDLER, by
11                 ERIC CHAFETZ, Esquire
                 JORDANA RENERT, Esquire
12              On behalf of the Official
              Committee of Unsecured Creditors
13
14       QUINTAIROS PRIETO WOOD & BOYER, by
                ARTHUR NEIWIRTH, Esquire
15      On behalf of Hardrock Concrete Placement Co.
16
             J. STEVEN WILKES, Trial Attorney
17              Office of the U.S. Trustee
                   Department of Justice
18
19                  FURR & COHEN, by
                  MARC BARMAT, Esquire
20        On behalf of American Bottling Company
21
                       ALSO PRESENT
22
         ECRO - Electronic Court Reporting Operator
23
                      - - - - - - -
24
25
```

1      THE COURT:  All right.  2 o'clock calendar,
2  Vital Pharmaceuticals, 22-17842.
3      Appearances.  Let me just start with
4  Mr. Wilkes.
5      MR. WILKES:  Good afternoon, your Honor.
6  J. Steven Wilkes for the United States Trustee, Region 21.
7      THE COURT:  Mr. Guso.
8      MR. GUSO:  Yes, sir.  Good afternoon,
9  your Honor.  Jordi Guso of Berger Singerman.  We are
10 co-counsel with Latham & Watkins to the debtors.
11     THE COURT:  Thank you.
12     Ms. Blanco.
13     MS. BLANCO:  Good afternoon, your Honor.
14 Leyza Blanco, of Sequor Law on behalf of the Official
15 Committee of Unsecured Creditors, and also joining me
16 today are my co-counsel from Lowenstein Sandler
17 Jordana Renert and Eric Chafetz.
18     THE COURT:  All right.  Thank you.
19 Ms. Renert, you've been appeared.
20     Mr. Barmat.
21     MR. BARMAT:  Good afternoon.  Marc Barmat,
22 local counsel for American Bottling Company.  Thank you.
23     THE COURT:  Thank you.
24     We've heard about Mr. Chafetz.
25     Anyone else, anybody else want to make an

1   appearance, turn on their camera and I'll call on you.
2             MR. BEILFUSS:  Your Honor, this is Andy
3   Beilfuss with the law firm of Quarles & Brady, on behalf
4   of the Special Counsel application for the debtors.  For
5   some reason it appears that my camera is on, but it is not
6   showing video, at least not on my end.
7             THE COURT:  Ah, so if it's like mine, you
8   probably have the Facebook camera on, and not your actual
9   camera.
10            So if you go to the little -- or, you know,
11  unplug it and re-plug it, sometimes that helps as well.
12            MR. BEILFUSS:  Thank you.  If I only had my
13  high schoolers here, they could probably figure this out
14  for me.
15            THE COURT:  Yes, exactly.
16            MR. COMBEST:  Your Honor, this is Chris --
17            (Two people speaking.)
18            THE COURT:  Hold on one second.  What
19  worked?  What was it?
20            MR. BEILFUSS:  It was the camera.
21            THE COURT:  So, what, you had the thing on
22  it?  You had the --
23            MR. BEILFUSS:  It was on a different
24  application, yeah.
25            THE COURT:  Ah, okay.  So, anyway --

1     MR. COMBEST:  Your Honor, this is --
2     THE COURT:  Go ahead.
3     MR. COMBEST:  This is Christopher Combest.
4  I also am an attorney at Quarles & Brady.
5     I understand that we are still working out
6  some details of the order, Mr. Guso will address it.  So
7  we are here, but we're not appearing so much as just
8  watching.
9     THE COURT:  Okay.  Feel free.
10    Mr. Neiwirth.
11    MR. NEIWIRTH:  (No verbal response.)
12    THE COURT:  You're on mute.
13    MR. NEIWIRTH:  (No verbal response.)
14    THE COURT:  You're on mute.
15    MR. NEIWIRTH:  Thank you, your Honor.
16 Arthur Neiwirth, from Quintairos Prieto Wood & Boyer,
17 local counsel for Hardrock Concrete Placement Company,
18 basically just monitoring the proceedings today, I
19 believe.
20    THE COURT:  That's in the Vital case?
21    MR. NEIWIRTH:  Yes, sir.
22    THE COURT:  Okay.  Thank you.
23    And Mr. Janssen.
24    MR. JANSSEN:  Good afternoon, Judge.  I'm
25 with Andy Beilfuss, from Quarles & Brady, and presumably

1  you can see me and hear me.  We're not allowed on Facebook
2  at work, so I have my regular camera on.
3              THE COURT:  Smart, smart rule.
4              All right.  Anybody else?
5              (No verbal response.)
6              THE COURT:  All right.  Mr. Guso, apparently
7  there are some things up in the air on 558, tell me about
8  it.
9              MR. GUSO:  Yes, sir.  May it please the
10 Court.  Your Honor, thank you.
11             May I, primarily, your Honor, offer just
12 some brief remarks?  Just what brings us --
13             THE COURT:  Sure, of course.
14             MR. GUSO:  Thank you, Judge.
15             Your Honor, as the Court is aware, in
16 connection with the final approval of the DIP financing,
17 which your Honor approved on January 12th, 2022, the
18 debtors implemented changes to their corporate governance
19 to address the concerns of the DIP lenders, the committee,
20 and certain of the parties.
21             Those changes included the appointment of an
22 additional independent director, Mr. Steven Gray, to serve
23 on the board, resulting in the board having three
24 independent directors, Mr. Gray, Mr. Steven Panagos and
25 Mr. Bob Dickinson.  The four matters that are before the

1  Court this afternoon were filed back in December, before
2  the board was reconstituted, but we wanted to apprise the
3  Court and the parties, and Mr. DiDonato, who I believe is
4  participating, your Honor, as the debtors' chief
5  transformation officer, if he were called to the stand,
6  would testify that the reconstituted board, your Honor,
7  considered each of the matters that is before you de novo
8  and, your Honor, the reconstituted board unanimously voted
9  to direct management to continue to prosecute those four
10 matters, including, your Honor, the application to employ
11 the three professional firms that are up for consideration
12 today.
13             Notwithstanding that, your Honor, and
14 consistent with, I believe, the mutual efforts of the
15 professionals for the committee and the debtors, we have
16 tried at every instance to resolve all of the committee's
17 concerns, objections, or comments informally, in a
18 collaborative manner and, your Honor, that process
19 continued to the minutes leading up to this hearing,
20 including with the exchange of revised proposed orders
21 that we would tender to your Honor on a consensual basis.
22             Your Honor, regrettably, those orders are
23 still being reviewed, including by the Quarles & Brady
24 attorneys, who are participating here, and so, your Honor,
25 in the circumstances, and subject to your Honor's

Page 8

1 approval, we would ask that the Court defer these three
2 applications, the application to employ Quarles & Brady,
3 the application to employ Haynes and Boone, which is
4 complementary of the application to employ Quarles &
5 Brady, and the application to employ Faulkner Law until
6 February 9th, I believe we're back before you at 2:00 p.m.
7 I am reasonably confident that we will be able to resolve
8 the remaining concerns of the parties regarding the
9 language in the order consistent with our prior efforts in
10 these cases, your Honor.
11            Judge, now you're on mute, I apologize.
12            THE COURT:  Thank you.
13            MR. GUSO:  I'm not one to tell the Court
14 what to do, but --
15            THE COURT:  No, no, no, please, I need all
16 the help I can get.
17            So those are Docket Entries 511, 565, and
18 566, right?
19            MR. GUSO:  Yes, sir.
20            THE COURT:  Let me make sure I have them
21 correctly, and there were objections filed, so obviously
22 the objections would also --
23            MR. GUSO:  Yes, sir.  The committee filed an
24 omnibus objection, your Honor.
25            THE COURT:  At 651, I think.

1       MR. GUSO:  I will defer, your Honor, to
2  Ms. Blanco or Ms. Renert.  I don't have that number before
3  me.
4       THE COURT:  I think it's Docket -- I'm
5  pretty sure it's Docket Entry 651.
6       All right.  So somebody get me orders.  I
7  guess, Mr. Guso, you should get me --
8       MR. GUSO:  Yes, sir.
9       THE COURT:  -- an order continuing those to
10 the February 9th date, and that -- do we have much on on
11 February 9th?  I don't recall one way or the other.  I
12 just want to make sure we have enough time.
13      MR. GUSO:  From my recollection, your Honor,
14 I believe the only other matter that's on is another
15 retention application of the Sanchez Levine firm at that
16 time.
17      THE COURT:  All right.  Okay.  Any issue
18 with any of that, Ms. Blanco, continuing the hearing on
19 those three applications?
20      MS. BLANCO:  (No verbal response.)
21      THE COURT:  You're on mute.
22      MS. BLANCO:  There are no issues,
23 your Honor, with that.  We are in agreement.
24      THE COURT:  Okay.  All right.  Thank you.
25      All right, and then what's left is 558,

1    which is the motion to establish procedures.
2                Do you want to proceed on that, Mr. Guso?
3                MR. GUSO: Yes, sir. If it pleases the
4    Court, I may.
5                THE COURT: Okay. Yes.
6                MR. GUSO: Thank you, your Honor.
7                Your Honor, and let me preview it by saying
8    that prior to filing this motion, we provided drafts of
9    the motion and related papers to the committee, and to
10   Mr. Wilkes, on behalf of the United States Trustee. Each
11   provided comments, your Honor, which we've incorporated,
12   and are included in the motion that's before the Court at
13   Docket Entry 558.
14               And pursuant to this motion, your Honor, the
15   debtors seek an order establishing a bar date for the
16   filing of claims under Section 503(b)(9), and propose that
17   that bar date, your Honor, be 45 days from the date the
18   Court enters an order setting the bar date -- excuse me,
19   granting the motion and, your Honor, the order also
20   requests the Court approve the form of notice that would
21   be served on parties in the form attached as Exhibit B to
22   the motion. Based on the debtors' review of its books and
23   records, your Honor, vendors that delivered goods to the
24   debtors in the 20-day period preceding the petition date
25   will likely seek allowance of 503(b)(9) claims, and based

1  on the debtors' review of those books and records, the
2  debtors estimate that the total aggregate claims will be
3  approximately $1.47 million.
4         Your Honor, to provide those parties with
5  notice of the bar date, the debtors propose to serve the
6  form, again substantially in the form that's attached as
7  Exhibit B, on all vendors who provided goods to the
8  debtors in the 45 days prior to the petition date, as well
9  as to all parties who have requested notice under
10 Rule 2002.
11         Your Honor, any party wishing to assert a
12 503(b)(9) claim would be required to submit the claim in
13 the form attached as Exhibit C to the motion, to Stretto,
14 who is the debtors' claims and noticing agent.  That claim
15 form, your Honor, may be submitted through the U.S. mail,
16 or alternatively electronically through the link that is
17 available on Stretto's page for the Vital Pharmaceuticals
18 cases.
19         Your Honor, Stretto will not accept claims
20 submitted by email or facsimile.  They would be accepted
21 if they were received via U.S. mail, or in the electronic
22 form, and we also provide, your Honor, that the --
23         THE COURT:  That's stated clearly in the
24 form?
25         MR. GUSO:  Yes, it is.  It is, your Honor,

1  and it includes instructions on how to submit the claim
2  with the link.
3              And, your Honor, the failure to timely file
4  a claim in the manner provided for in the order would
5  result in the disallowance of any putative administrative
6  503(b)(9) claim that does not comply with the order.
7              THE COURT:  Absent some excusable neglect
8  or --
9              MR. GUSO:  Correct.  Correct, Judge.
10             THE COURT:  Okay.  All right.  Let me ask a
11 question though.  They're called claims requests, and the
12 statute requires notice and hearing.  So what happens when
13 these claims requests are filed?  It's not like a proof of
14 claim that's allowed when filed unless objected to, and
15 then you have an objection process.  What happens next?
16             MR. GUSO:  I think, your Honor, what will
17 happen is the Court -- the debtors will review the claims
18 that are filed and, your Honor, I would propose that if
19 the debtors have disputes with any of the claims, then the
20 burden would be on the debtors to object, because that
21 would trigger a hearing before the Court, otherwise they
22 would be deemed allowed.
23             THE COURT:  Well, so is the order -- is your
24 intention that the orders say that they are deemed allowed
25 upon filing unless an objection is filed by some deadline?

1  I mean, my concern here is that the -- that it's not the
2  same as a proof of claim, that's --
3          MR. GUSO: Sure.
4          THE COURT: It's not supposed to work the
5  same as a proof of claim.
6          MR. GUSO: Uh-huh.
7          THE COURT: So it's not necessarily deemed
8  allowed when filed, like a proof of claim would be,
9  generally speaking. So, it seems to me that some kind of
10 order, even if it's an omnibus order, might be necessary
11 here, if you don't object, then maybe the process would be
12 to submit an omnibus order on those claims requests that
13 you don't object to, and the Court can just grant them,
14 and if you do object, then, of course, you would -- I
15 don't know, what would you do? You'd have to object by a
16 certain date? Do you set them for hearing? What happens?
17         MR. GUSO: Your Honor, we -- well, I think
18 we would set them for hearing if there was an objection,
19 your Honor, in order to proceed efficiently.
20         I don't think we need a deadline set by the
21 Court today for the filing of those objections. I think
22 we can deal with that, your Honor, respectfully, as we
23 perhaps get closer to a sale date, and we have more
24 visibility into how the case is progressing, and certainly
25 your Honor's suggestion about submitting an omnibus order

1  that allows uncontested or undisputed 503(b)(9) claims
2  would be appropriate.
3              THE COURT:  All right.  Let me hear from the
4  committee just to make sure that there is agreement on
5  process, that's what concerns me the most.
6              Mr. Chafetz.
7              MR. CHAFETZ:  Yes, your Honor, can you hear
8  me?  My camera is not working now, I apologize.
9              THE COURT:  Okay.  Have you tried those
10 things the IT department has advised you to do?  I being
11 the IT department.
12             MR. CHAFETZ:  I have.  I'm sitting in a
13 hotel room, and I don't know if that's the issue, and I
14 apologize in advance.
15             THE COURT:  Okay.
16             MR. CHAFETZ:  I guess, very high level from
17 our perspective, the goal here really is, and this is
18 something that we've been successful in doing in numerous
19 prior cases, I believe many of which were -- or several of
20 which were included in the motion, is to kind of -- while
21 this is not necessarily a per se proof of claim, is to
22 allow folks to really streamline the process, and really
23 alleviate the Court and other parties from having to file
24 several motions for allowance of a Section 503(b)(9)
25 claim.

1      THE COURT:  Let me be clear, I am all for
2 that.  I'm just trying to make sure that -- my biggest
3 concern is that there is some uncertainty with respect to
4 those claim requests that have been filed, but not allowed
5 in any official capacity, what happens to those, and that
6 uncertainty is concerning to me, and what the objection
7 process looks like if those are objected to.  So those are
8 my big concerns, it's really just making sure the record
9 is very clear as to what claims are allowed and what
10 claims are not, and what happens to those that are not,
11 and how do we get to that point?
12      MR. CHAFETZ:  No, that's totally
13 understandable.
14      Yes, to your point with respect to some type
15 of omnibus notice allowing claims whereby the debtors
16 agree, based on their books and records, if they're fine,
17 that totally works for the committee, that's easy.
18      And we can talk about timeframes with
19 respect to when one of those has to be filed, likely after
20 the 45-day period, maybe we come back to the Court, and we
21 can build something into the notice as to when we want
22 that to be filed, if that works for the Court.
23      THE COURT:  That would be an order.
24      MR. CHAFETZ:  An order.
25      THE COURT:  And you would just submit an

1  order, you know, some reasonable time after the 45 days,
2  and your opportunity to review those claims, and everybody
3  agrees.
4         You know, why don't we do this, does it make
5  sense to just set a status conference on this some time
6  after the 45 days, so that you all can tell me what's been
7  filed, how many are likely to be objected to, and then you
8  can recommend a process from that point on?
9         I just don't like the fact that -- I love
10 the idea of streamlining it, all for it.  I just don't
11 like the idea that there is just going to be this
12 uncertainty about what we do next.
13        (Two people speaking.)
14        MR. CHAFETZ:  Sorry, Jordi.
15        MR. GUSO:  No, no.
16        Yes, sir, that's certainly acceptable to the
17 debtors, we can build that into the order, your Honor.
18        THE COURT:  Yeah, why don't we do that, and
19 that way you'll see the universe of claims, and you'll
20 have a better idea of what procedurally needs to take
21 place.
22        MR. CHAFETZ:  That works entirely for the
23 committee.  Thank you, your Honor.
24        THE COURT:  All right, and I'm not trying to
25 make work, I'm just trying to, you know, make certainty.

1    MR. GUSO:  Yes, sir.
2    THE COURT:  All right.  So include that.  I
3 guess -- how much time do you need after the 45 days, you
4 think, to review things and --
5    MR. GUSO:  Your Honor, can we take 30 days?
6    THE COURT:  Okay.  All right.  So that means
7 we need about 80 days from now for that status conference.
8    So, Ms. Weldon, any thoughts on what date
9 Mr. Guso can include in the order?
10   ECRO:  Give me a second, Judge.
11   THE COURT:  No problem, of course.
12   ECRO:  Do you want it just on a regular
13 motion day?
14   THE COURT:  Yes, a regular motion calendar
15 is fine, in the afternoon.
16   ECRO:  So we can do April 20th, say, 1:30,
17 or do you want to push it towards later in the day?
18   THE COURT:  1:30, 2 o'clock is fine, it
19 doesn't matter to me.
20   How are you all with --
21   ECRO:  It's fine, 1:30.  So we can do
22 April 20th at 1:30.
23   THE COURT:  Okay.  Great.  So if that
24 doesn't work, let me know.  Anybody?
25   MR. GUSO:  Yes, sir, that is acceptable to

Case 22-17842-PDR    Doc 782    Filed 02/10/23    Page 18 of 19

Page 18

1  the debtors.
2           THE COURT:  All right, great, then the Court
3  will grant the motion with that one change, and I guess
4  that takes care of everything for today, right?
5           MR. GUSO:  Yes, sir.
6           THE COURT:  All right.  Well --
7           MR. CHAFETZ:  Thank you, your Honor.
8           THE COURT:  -- it's a pleasure to see you,
9  and we'll see you next time.
10          MR. GUSO:  Yes, sir.
11          THE COURT:  All right.  2:30 has not yet
12  occurred, so we'll be in recess until then.
13
14
15
16              (Thereupon, the hearing was concluded.)
17
18
19
20
21
22
23
24
25

OUELLETTE & MAULDIN  COURT REPORTERS, INC.
(305) 358-8875

Page 19

## CERTIFICATION

STATE OF FLORIDA      :

COUNTY OF MIAMI-DADE  :

      I, Cheryl L. Jenkins, RPR, RMR, Shorthand Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were taken before me at the date and place as stated in the caption hereto on page 1; that the foregoing computer-aided transcription is a true record of my stenographic notes taken at said proceedings.

      WITNESS my hand this 1st day of February, 2023.

_____

CHERYL L. JENKINS, RPR, RMR
Court Reporter and Notary Public
in and for the State of Florida at Large
Commission #HH 170910
December 27, 2025