UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al*., | Case No.: 22-17842-PDR |
| Debtors.[1] _____/ | (Jointly Administered) |

### DEBTORS' MOTION TO QUASH AND FOR PROTECTIVE ORDER AS TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS' RULE 2004 NOTICES

Pursuant to Rule 45 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable by Rule 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules for the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules"), Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev LLC and Vital Pharmaceuticals International Sales, Inc. (collectively, the "Debtors"), by and through undersigned counsel, hereby file this motion (the "Motion") to quash and for a protective order, in the form attached hereto as **Exhibit 1**, as to the notices of examination duces tecum (collectively, the "Notices")[2] filed by the Official Committee of Unsecured Creditors (the

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("Vital Pharmaceuticals") (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC ("Quash Seltzer") (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] As used herein, "Notices" refers collectively to the Notices of Rule 2004 Examinations of: John H. Owoc [ECF No. 684]; Jonathan W. Owoc [ECF Nos. 685 & 702]; Megan Owoc [ECF No. 686]; Desiree Bolanos [ECF No. 687]; Krista Owoc [ECF No. 688]; Elite Island, LLC [ECF No. 689]; 3 Pelican Dr LLC [ECF No. 690 & 699]; Zachary Owoc [ECF No. 691]; Ryan Owoc [ECF No. 692]; JWO Real Estate Investment I, LLC [ECF No. 693, 704 & 720]; JWO Real Estate Investment II LLC [ECF No. 694 & 719]; 167 Spyglass LN LLC [ECF No. 696 & 701]; JW Owoc Enterprises, LLC [ECF No. 695 & 703]; 120 Spyglass LN LLC [ECF No. 697 & 700]; Eugene Bukovi [ECF No. 761]; Fritz Tilus [ECF No. 762]; Greg Robbins [ECF No. 763]; and Zurama Sury Rodriguez [ECF No. 764] (such noticed persons, the "Noticed Persons," such noticed entities (the "Noticed Entities"), and collectively, the "Noticed

11925685-1

"Committee") under Rule 2004 of the Bankruptcy Rules. In support of this Motion, the Debtors state as follows:

## PRELIMINARY STATEMENT

1. The Debtors have worked in good faith and dedicated substantial time and resources to provide the Committee with information and documents in order to enable the Committee to evaluate potential estate avoidance actions. Those efforts remains ongoing. The Committee nevertheless insists that, in addition to investigating such claims through discovery of the Debtors directly, it also should be entitled to pursue broad Rule 2004 discovery from any and all third-party sources, and that such discovery must be taken now. The Debtors disagree that such a strategy is necessary, appropriate, or in the best interests of the estates and their stakeholders.

2. The Committee is certain to argue that the costs and burdens imposed by their latest salvo of Rule 2004 discovery requests are not borne by the Debtors. This is false. The Debtors' chapter 11 cases (the "Chapter 11 Cases") are at a critical juncture. The Debtors are currently running a robust sale process. At the same time, the Debtors continue to operate their business with the goal of preserving and maximizing value under the difficult circumstances attendant to any chapter 11 case. The Committee has indicated multiple times that it supports the Debtors' efforts to maximize value. Yet, its myopic focus on pursuing avoidance actions now, at the expense of focusing collective efforts on an orderly sale process toward a common goal of maximizing estate value, suggests otherwise. Simply put, the Debtors have finite resources and are working on a limited budget. They cannot run a successful sale process and continue to effectively operate their business if they, or the employees they rely on, are distracted and burdened by discovery.

---

Parties"). Due to volume, the Debtors are not separately attaching the Notices to this Motion, but can make them available to the Court upon request.

3. The Committee's Rule 2004 discovery efforts are all the more problematic because there is no legitimate justification for demanding such discovery now. Much, if not all, of the information sought in the Notices already has been requested from the Debtors, or is otherwise expected to be in the Debtors' possession, if it exists at all. As a result, it ultimately will be the Debtors, not just the third-party targets of the Rule 2004 discovery, that will be forced to participate in this burdensome discovery process. And whatever discovery the Committee may eventually need from third parties can be pursued later.

4. Both the Debtors' estates and third parties should be protected from the costs and burden of unnecessary and duplicative discovery. Under the circumstances, the Debtors respectfully seek entry of a protective order and/or an order quashing the Notices, without prejudice to the Committee seeking the requested information from the Debtors and/or from third-parties at some later, less burdensome date.

## BACKGROUND

5. The U.S. Trustee appointed the Committee on November 1, 2022. On or around November 2, 2022, the Committee retained Sequor Law, P.A. and Lowenstein Sandler LLP as its counsel. The Committee was reconstituted by the U.S. Trustee on or about November 23, 2022.

6. Upon the Committee's formation and selection of advisors, the Debtors expressed their desire and willingness to cooperate with the Committee in providing necessary documents and information, promptly began producing documents to the Committee, beginning with the Debtors' first production on November 3, 2022.

7. Since its appointment, the Committee has served comprehensive requests for information on the Debtors (collectively, the "Informal Requests").

8. The Debtors have endeavored in good faith to respond to the Committee's Informal Requests as quickly as possible, providing information and documents to the Committee on a

rolling basis. As of this Motion, the Debtors have produced over 15,000 pages in response to the Informal Requests and expect to make additional documents available on a rolling basis as they continue working through the Committee's Informal Requests.

9. As would be expected, among the issues on which the Committee has been focused are potential avoidance actions under sections 547, 548, 549 of the Bankruptcy Code, or related state law claims. Many of the Informal Requests themselves are clearly focused on potential avoidance actions, including requests for information and documents related to distributions made by the Debtors, as well as the process and stated purpose for any distributions. The Debtors have provided and continue to provide information responsive to the Informal Requests.

10. Notwithstanding the Debtors' ongoing efforts to provide the requested information, between January 26, 2023, and February 7, 2023, the Committee filed Notices of 2004 Examination as to eighteen (18) Noticed Parties—eleven (11) Noticed Persons and seven (7) Noticed Entities—seeking production of documents and deposition testimony from each (the "Noticed Requests").[3] Each of the eleven Noticed Persons are current or former employees of the Debtors:

| Noticed Person | Title or Former Title |
|---|---|
| Meg Liz Owoc | Senior Director of Marketing |
| Jonathan W. Owoc | Director of Marketing |
| Desiree Bolanos | Accounts Payable Manager |
| Zachary Owoc | Field Support Specialist |
| Ryan Owoc | Territory Sales Manager |
| Krista Owoc | EMEA Sales Account Executive |
| John H. Owoc | President and Chief Executive Officer |
| Fritz Tilus | Financial Controller |
| Zurama Sury Rodriguez | Vice President of Finance |
| Greg Robbins | Senior Vice President of Finance |
| Eugene Bukovi | Executive Vice President of Sales |

---

[3] It is unclear which of the Notices have been served beyond those Notices for which the Debtors agreed to accept service on behalf of the Noticed Parties with all objections thereto preserved.

11925685-1

11. The Noticed Requests in large part seek information that would more likely be in the Debtors' possession, custody, or control rather than the Noticed Person. For example:

- Notice to Ryan Owoc [ECF No. 692], Noticed Request No. 1 seeks "[a]ll Documents, including any Communications and/or Bank Statements, relating to the following payments from the Debtors to You, including but not limited to, Documents sufficient to show which Debtor-entity the distribution was paid from, which individuals, entities, or bank account(s) the distributions were paid to, and the use of the funds."

- Notice to Fritz Tilus [ECF No. 762], Noticed Request No. 5 seeks "[a]ll Documents, including any Communications, manual, policy, or procedure, Related to the manner in which the Debtors' payments, including, but not limited to, suppliers, intercompany transactions, and distributions, are accounted for in the Debtors' books and records."

- Notice to Zurama Sury Rodriguez [ECF No. 764], Noticed Request No. 10 seeks "[a]ll Documents, including emails and Communications, about or Related to Your analysis of the Debtors' return on investment (ROI) from the Debtors' marketing expenditures."

12. In fact, the Noticed Requests are largely duplicative of discovery already sought from the Debtors directly, including many of the most recent Informal Requests directed to the Debtors, which they are continuing to work through. For example:

- The Noticed Requests to many of the Noticed Persons seek documents and communications relating to the individuals' roles and responsibilities with the Debtors, including information regarding compensation and reimbursements paid by the Debtors to the Noticed Persons. *See, e.g.*, Notice to Zachary Owoc [ECF No. 691], Noticed Request Nos. 4-6; Notice to Ryan Owoc [ECF No. 692], Noticed Request Nos. 6-8. But the Committee has separately sought from the Debtors, and the Debtors have provided, information relating to the roles, responsibilities, compensation and reimbursements paid to all Owoc family members, as well as asset transfers in the past three years between any affiliated entity and Mr. Owoc, or his family members.

- Noticed Request No. 8 to Ms. Rodriguez [ECF No. 764] seeks "[a]ll Documents, including any Communications, Related to the Debtors' decision to pay certain distributions identified in the document with the index number 9.7.12.8 to third parties." But the Committee's Informal Requests already sought from the Debtors documents and communications regarding the decision to these same transfers/distributions.

11925685-1

- The Noticed Requests directed to the Noticed Entities seek "[d]ocuments such as Bank Statements sufficient to show which debtor-entity [certain distributions] were paid from, which individuals, entities, or bank account(s) the distributions were paid to, and the use of the funds." *See, e.g.*, Notice to 120 Spyglass LN LLC [ECF No. 700], Noticed Request No. 1; Notice to JWO Real Estate Investment I LLC [ECF No. 720], Noticed Request No. 1. But the Committee also asked the Debtors in its most recent set of Informal Requests to produce documents and communications regarding these same distributions, including but not limited to, documents sufficient to show who directed the distribution, which entity the distribution was paid from, which individuals, entities, or bank account(s) the distributions were paid to.

- The requests to the Noticed Entities also seek information regarding any interest the Debtors have relating to real and/or personal property, a request that also is directly duplicative of the Requests directed to the Debtors through informal discovery. *See, e.g.*, Notice to JWO Real Estate Investment I LLC [ECF No. 720], Noticed Request Nos. 2-6.

13. The Notices specify production deadlines of February 11, 2023 or March 7, 2023, and seek to examine the various Noticed Parties on dates between late February and the end of March.

14. Separately, as the Court is aware, the Debtors are in the midst of a sale process. As required under the *Superpriority Secured Debtor-in-Possession Credit Agreement* (the "<u>DIP Agreement</u>") approved by this Court, the Debtors are operating in accordance with a transaction timeline and designated milestones, including receipt of indications of interest for the acquisition of substantially all of the Debtors' assets on or before January 13, 2023, designation of a stalking horse bidder on or before March 13, 2023, holding an auction, if necessary, on or before April 19, 2023, and completing a sale of all or substantially all of the Debtors' assets on or before May 17, 2023. *See* Final DIP Order [ECF No. 638], ¶ 46; Final DIP Order, Ex. B (DIP Agreement) § 5.18.[4] The Committee was involved in negotiating these dates with the lenders and expressly

---

[4] On January 27, 2023, as required under the DIP Agreement, the Debtors filed a motion (the "<u>Bid Procedures Motion</u>") [ECF No. 707] to approve bidding procedures for the sale of substantially all of their assets. The Bid Procedures Motion incorporates the sale milestones set forth in the DIP Order and DIP Agreement. *See* Bid Procedures Motion, Ex. B (Proposed Sale Timeline).

6

11925685-1

supported these milestones. *See* Committee's Statement in Support of DIP Financing Motion [ECF No. 627], ¶ 17.

15. The ongoing demands of the sale process require the time and attention of many of the Debtors' employees and advisors, including a number of the Noticed Persons who have spent substantial time assisting with diligence efforts and management presentations.

16. On February 6, 2023, the Debtors' counsel met and conferred with the Committee's counsel to express their concerns over the Notices, understand the Committee's rationale in seeking Rule 2004 discovery at this time, and determine whether the Committee was willing to suspend the current Rule 2004 discovery efforts for some period of time. Because the parties were unable to reach a resolution, the Debtors now proceed with filing this Motion.

## **BASIS FOR RELIEF**

17. While the scope of Rule 2004 may be broad, the Court has discretion to limit such discovery as appropriate. *See, e.g.*, Fed. R. Bankr. P. 2004(a) ("[T]he court *may* order the examination of any entity") (emphasis added). "[P]arties do not have an absolute right to Rule 2004 examinations – the granting of a Rule 2004 examination is dependent on the discretion of the court. The rule requires a balancing of 'the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination.'" *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 627-28 (Bankr. D. Del. 2016). "Courts will not order Rule 2004 discovery when the burden on the producing party outweighs the benefits to the requesting party." *In re Transmar Commodity Grp. Ltd.*, No. 16-13625-JLG, 2018 WL 4006324, at *4 (Bankr. S.D.N.Y. Aug. 17, 2018). The party requesting Rule 2004 discovery bears the burden of proving that good cause exists for taking the requested discovery. *See In re No Rust Rebar, Inc.*, Case No. 21-12188-PDR, 2022 Bankr. LEXIS 3390, *3-4 (Bankr. S.D. Fla. Nov. 30, 2022) (granting motion to quash subpoena and for protective order).

7

11925685-1

18. While a Rule 2004 examination is distinct from discovery under Fed. R. Civ. P. 26, courts have found that "the spirt of proportionality [under Rule 2004] is consistent with the historic concerns [under Federal Rule 26] regarding the burden on the producing party and is relevant to the determination of the cause." *In re SunEdison, Inc.*, 562 B.R. 243, 250 (Bankr. S.D.N.Y. 2017).

19. Under Rule 45 of the Federal Rules of Civil Procedure, made applicable to this bankruptcy proceeding by Rule 9016 of the Bankruptcy Rules, the court "must quash or modify a subpoena that . . . fails to allow a reasonable time to comply . . . or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(i), (iv).

### A. The Rule 2004 Discovery, as Sought Through the Notices, Is More Costly and Burdensome on the Debtors and Their Estates Than Beneficial to Any Creditor.

20. Rule 2004 discovery may be limited if it is "more disruptive and costly to the debtor than beneficial to the creditor." *In re Texaco Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987); *In re MF Global Inc.*, 2013 WL 74580, at * 1 (Bankr. S.D.N.Y. Jan. 8, 2013) ("The court must . . . weigh the relevance of the discovery against the burden it will impose on the producing party."); *In re Hammond*, 140 B.R. 197, 201 (S.D. Ohio 1992) (holding the court must balance the movant's interests against the debtor's interest in avoiding the cost and burden of disclosure and that "the debtor's interest may so greatly outweigh those of the examiner that the examination should be quashed").

#### 1. *The Notices impose a significant burden on the Debtors.*

21. Although the Noticed Parties are not themselves Debtors, the Notices unduly burden the Debtors in at least two ways. *First*, it will distract key personnel from the primary goal of maximizing value of the Debtors' estates during a critical juncture of these Chapter 11 cases. Several of the Noticed Persons are key employees essential to overseeing the Debtors' business operations, sale and marketing process, or both, and discovery of them at this time will

8

unnecessarily distract from their essential job functions during a critical juncture of the Chapter 11 Cases. For example, the Notice served on Greg Robbins, the Debtors' Senior Vice President of Finance, includes broad document requests seeking, among other things, "[a]ll Documents, including any Communications, sufficient to show the instructions given to You directing You to record and/or process payments made by the Debtors . . ." Notice to Greg Robbins [ECF No. 763], Noticed Request No. 7.[5] As the Senior Vice President of Finance, Mr. Robbins is supporting not only core functions of the Debtors' operations, but also playing an integral role in the sale process, including by ensuring that potential buyers promptly and adequately receive financial diligence. Jack Owoc (40 document requests), Meg Liz Owoc (30 document requests), Eugene Bukovi (17 document requests), Sury Rodriguez (14 document requests), Fritz Tilus (11 document requests), Krista Owoc (17 document requests), Ryan Owoc (18 document requests), and Zachary Owoc (16 document requests) likewise are involved in both the Debtors' business operations and sale process.

22. The DIP Agreement obligates the Debtors to designate a stalking horse bidder on or before March 13, 2023, hold an auction on or before April 19, 2023, and consummate a sale of substantially all of the Debtors' assets or otherwise close on an acceptable financing transaction on or before May 17, 2023. *See* DIP Order, Ex. B (DIP Agreement) § 5.18. Accordingly, the Debtors' employees and advisors have been working tirelessly to manage the Debtors' business operations, assist in the Debtors' sale and marketing process by reviewing and producing thousands of documents to the Debtors' virtual data room used for potential bidders, and gather and produce thousands of other documents in response to the Committee's discovery of the

---

[5] In addition, as addressed more fully below, such Noticed Request plainly seeks documents or information from the Debtors or Mr. Robbins as an employee of the Debtors, and not documents Mr. Robbins would be expected to have in his individual capacity.

11925685-1

Debtors. In order to run a robust, value maximizing sale process, it is imperative the Debtors' employees continue to focus on their essential job functions. This will be impossible, however, if the Debtors and *eleven* of their key employees are unable to dedicate sufficient time, energy, and focus both on effectively overseeing the Debtors' business operations and fully participating in the Debtors' proposed sale and marketing process, and instead are focused on responding to the Notices and preparing for depositions.[6] This is particularly true given that the Committee is seeking Rule 2004 examinations of many of the Company's senior executives, including the heads of sales, marketing, and finance.[7]

23. *Second*, any substantive response to the Notices will consume the Debtors' resources directly. Not only would the Debtors need to be involved in gathering documents of the nature requested in the Notices (because, as noted below, they are the types of documents that would be in the Debtors', not the individual's possession), but the Debtors and their advisors will need to be involved with aspects of such production, including through any review for privilege or confidentiality and in deposition preparation.

24. In addition, the Debtors are concerned with the costs that will be incurred as a result of discovery of the nature contemplated by the Notices. Not only will such discovery efforts strain

---

[6] With respect to the Noticed Entities, similar concerns arise, as each of the Noticed Entities is in some way alleged to be affiliated with Jack Owoc, the Debtors' CEO, and thus responding to the Notices will inevitably consume Mr. Owoc's time and resources when the Debtors need the CEO's attention to be focused on maximizing company value.

[7] The rationale for seeking Rule 2004 examinations from many of the Noticed Parties is unclear. Other than the senior most executives in certain key departments, it appears the only criteria for the Committee's Notices is that they share the last name "Owoc" with the Debtors' Chief Executive Officer. The targeting of entities and individuals related to Mr. Owoc is a harassing and improper use of Rule 2004. *In re No Rush Rebar, Inc.*, 2022 Bankr. LEXIS 3390, at *3-4 (Rule 2004 examinations "may not be used for purposes of harassment"); *see also In re Pan American Hosp. Corp.*, No. 04-11819-BKC–AJC, 2005 WL 2445907, at *2 (Bankr. S.D. Fla. Feb. 25, 2005) (quoting *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984) (Rule 2004 examinations "may not be used for purposes of harassment"). As for the Noticed Entities, the Debtors have explained numerous times to the Committee that these entities are unaffiliated with the Debtors, the Debtors have not made any payments or transfers for the benefit of the Noticed Entities other than as distributions paid to Mr. Owoc, and they have no bearing on these Chapter 11 Cases.

11925685-1

the Debtors' resources, but they will result in significant fees to be incurred by the Debtors' advisors as well as other advisors whose fees are borne by the estates, including the Committee. Such excessive litigation spend at this juncture of the case compromises the Debtors' ability to operate the Chapter 11 Cases within the DIP Budget.

### 2. *There is no cause to impose such a burden on the Debtors at this time.*

25. The Committee has articulated two reasons why it purportedly needs to pursue Rule 2004 discovery of third parties now, but each fails to justify broad and burdensome discovery at this point in time. *First*, the Committee has suggested it needs this discovery in the event that avoidance actions need to be valued as part of the sale process. But such an assertion is entirely speculative. It is unclear whether a buyer would seek to purchase such claims or whether the Debtors and other stakeholders (including the Committee) would agree that such claims should be part of any contemplated sale. *Second*, and equally unavailing, the Committee has suggested it needs this discovery in the event a plan, yet to be proposed, would include a release of such claims. No plan has been proposed, rendering such a justification entirely speculative. In any event, such information, if relevant, could be sought as part of plan discovery. *See In re Texaco, Inc.*, 79 B.R. at 555 (refusing, as premature, Rule 2004 examination requests relating to a proposed plan when no such plan had been presented; "Category IX calls for the production of documents relating to the development, preparation or content of restructuring of Texaco's operations or a plan of reorganization for Texaco. . . . Pennzoil's quest for this information is premature.").

26. Simply put, there is no justification for pursuing this Rule 2004 discovery now, particularly given the hardship that such discovery would impose on the Debtors. Accordingly, the Committee cannot meet its burden to show good cause, and the Notices should be quashed. *See In re No Rust Rebar*, 2022 Bankr. LEXIS 3390, at *4.

### B. The Notices Seek Information More Appropriately Obtained From The Debtors.

27. A protective order is appropriate where, as here, "[t]he parties are a more convenient source, and a request to parties is necessarily more targeted to relevant information. *Copeland v. C.A.A.I.R., Inc.*, No. 17-CV-564-TCK-JFJ, 2020 WL 972754, at *5 (N.D. Okla. Feb. 28, 2020) (citing Fed. R. Civ. P. 26(b)(2)(C)(i)). Discovery is only proper "from third parties after first discovering relevant information from the [Debtors] and determining whether a remaining need exists." *Id.*

28. A substantial amount of information being sought is the type of information that would be maintained by the Debtors, not the Debtors' employees. Employees would not typically be subject to discovery in their individual capacity for documents or information relating to the course of their work. For example, employees also would not typically have control over their work email in order to be able to respond to requests seeking "all communications" relating to aspects of their employment. It is not realistic to expect, given the nature of the Noticed Requests, that at least certain of the Noticed Parties would be in a position to respond substantively without effectively passing the Requests along to the Debtors.

29. Indeed, much of the information sought from the Noticed Parties is more appropriately targeted at the Debtors than third parties and, in fact, many of the Noticed Requests are duplicative, in form or substance, of Informal Requests served on the Debtors directly. The Committee served Informal Requests on the same day some of the Notices were served, seeking the same information as sought in the Notices. For example, the Noticed Request directed to the Noticed Entities seek "Documents such as Bank Statements sufficient to show which debtor-entity [certain distributions] were paid from, which individuals, entities, or bank account(s) the distributions were paid to, and the use of the funds." *See, e.g.*, Notice to JWO Real Estate

Investment I, LLC [ECF No. 720], Noticed Request No. 1. But this same information was sought in the most recent set of Informal Requests directed to the Debtors, in response to which the Debtors are gathering responsive information. There is no need at this time for the Committee to serve redundant discovery requests on both the Debtors directly and on third parties. Rather, the Committee should exhaust its discovery efforts with respect to the Debtors before determining whether any discovery from such third parties may be necessary or appropriate. *WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 896 (S.D. Ind. 2006) (requiring party to show that it sought information unsuccessfully from the opposing party in accordance with Fed. R. Civ. P. 26 before resorting to Rule 45 nonparty discovery); *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 114 (D. Conn. 2005) (motion to quash granted under Fed. R. Civ. P. 45 where information being sought could be obtained from party or public record, rather than placing undue burden on a non-party).

## **CONCLUSION**

For the reasons set forth above, the Debtors respectfully request that the Court grant the relief requested herein and such other relief as the Court may deem just and proper.

11925685-1

| | |
|---|---|
| Dated: February 10, 2023<br>Miami, Florida | Respectfully submitted,<br><br>*/s/ Jordi Guso* |

George A. Davis (admitted *pro hac vice*)  
Tianjiao ("TJ") Li (admitted *pro hac vice*)  
Brian S. Rosen (admitted *pro hac vice*)  
Jonathan J. Weichselbaum (admitted *pro hac vice*)  
**LATHAM & WATKINS LLP**  
1271 Avenue of the Americas  
New York, NY 10020  
Telephone: (212) 906-1200  
Email: george.davis@lw.com  
tj.li@lw.com  
brian.rosen@lw.com  
jon.weichselbaum@lw.com  

Jordi Guso  
Michael J. Niles  
**BERGER SINGERMAN LLP**  
1450 Brickell Avenue, Suite 1900  
Miami, FL 33131  
Telephone: (305) 755-9500  
Email: jguso@bergersingerman.com  
Email: mniles@bergersingerman.com  

– and –

Andrew D. Sorkin (admitted *pro hac vice*)  
**LATHAM & WATKINS LLP**  
555 Eleventh Street, NW, Suite 1000  
Washington, D.C. 2004  
Telephone: (202) 637-2200  
Email: andrew.sorkin@lw.com  

– and –

Whit Morley (admitted *pro hac vice*)  
**LATHAM & WATKINS LLP**  
330 North Wabash Avenue, Suite 2800  
Chicago, IL 60611  
Telephone: (312) 876-7700  
Email: whit.morley@lw.com  

11925685-1

# **EXHIBIT 1**

**(Proposed Form of Protective Order)**

11925685-1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al*., | Case No.: 22-17842-PDR |
| Debtors.[1] _____/ | (Jointly Administered) |

**ORDER GRANTING DEBTORS' MOTION TO QUASH AND
FOR PROTECTIVE ORDER AS TO OFFICIAL COMMITTEE
OF UNSECURED CREDITORS' RULE 2004 NOTICES**

**THIS MATTER** came before the Court on February ___, 2023, at _____ a.m./p.m., in Fort Lauderdale, Florida, upon the *Debtors' Motion to Quash and For Protective Order As To Official Committee of Unsecured Creditors' Rule 2004 Notices* (the "Motion") [ECF No. ____]. The Court, having considered the Motion, all responses thereto, and the record in this case, and having heard argument from counsel, for the reasons stated on the record, it is:

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("Vital Pharmaceuticals") (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC ("Quash Seltzer") (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

2

11925685-1

**ORDERED** that the Motion is **GRANTED**, and the Official Committee of Unsecured Creditors' Rule 2004 subpoenas directed to John H. Owoc [ECF No. 684]; Jonathan W. Owoc [ECF Nos. 685 & 702]; Megan Owoc [ECF No. 686]; Desiree Bolanos [ECF No. 687]; Krista Owoc [ECF No. 688]; Elite Island, LLC [ECF No. 689]; 3 Pelican Dr LLC [ECF No. 690 & 699]; Zachary Owoc [ECF No. 691]; Ryan Owoc [ECF No. 692]; JWO Real Estate Investment I, LLC [ECF No. 693, 704 & 720]; JWO Real Estate Investment II LLC [ECF No. 694 & 719]; 167 Spyglass LN LLC [ECF No. 696 & 701]; JW Owoc Enterprises, LLC [ECF No. 695 & 703]; 120 Spyglass LN LLC [ECF No. 697 & 700]; Eugene Bukovi [ECF No. 761]; Fritz Tilus [ECF No. 762]; Greg Robbins [ECF No. 763]; and Zurama Sury Rodriguez [ECF No. 764] are quashed.

# # #

Submitted by:
Jordi Guso, Esq.
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com
Email:  mniles@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

3

11925685-1