UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE:<br><br>VITAL PHARMACEUTICALS, INC., et al.,<br><br>Debtors | Chapter 11 Cases<br><br>Case No. 22-17842-PDR<br><br>(Jointly Administered) |

## OPPOSITION OF MONSTER ENERGY COMPANY TO DEBTORS' EXPEDITED MOTION FOR PROTECTIVE ORDER CONCERNING RULE 2004 NOTICES DIRECTED TO KATHLEEN COLE

Monster Energy Company ("Monster"), by and through undersigned counsel, hereby files this opposition (the "Opposition") to the Debtors'[1] Expedited Motion for Protective Order Concerning Rule 2004 Notices Directed to Kathleen Cole ("Motion"). In support of this Opposition, Monster respectfully states as follows:

### PRELIMINARY STATEMENT

1. The Debtors filed this Motion to limit the scope of two documents requests that Monster served with its Rule 2004 examination subpoena on VPX's former Chief Operating Officer and Board Member, Kathleen Cole. Following the filing of the Motion, Monster

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("Vital Pharmaceuticals") (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC ("Quash Seltzer") (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

significantly narrowed its requests. Specifically, Monster agreed that Ms. Cole need only produce documents relating to the following categories of information:

> [T]he Debtors' hiring of [Ms. Cole], the terms of [Ms. Cole's] employment with the Debtors, the duties of [Ms. Cole's] employment with the Debtors, corporate governance of the Debtors, conduct by the Debtors that [Ms. Cole] consider[s] to be misconduct by or mismanagement of the Debtors, any complaints or allegations of misconduct by or mismanagement of the Debtors, and the cessation of [Ms. Cole's] employment with the Debtors, including the reasons for the cessation of [Ms. Cole's] employment.

(Ex. 2.)

2. There is no reasonable dispute that this information is properly discoverable under Rule 2004. "The scope of a Rule 2004 examination is exceptionally broad," and [e]xaminations under Rule 2004 are allowed for the purpose of discovering assets and unearthing frauds and have been compared to a fishing expedition." *In re Gaddy*, 851 F. App'x 996, 1004 (11th Cir. 2021) (quoting *In re Duratech Indus., Inc.*, 241 B.R. 283, 289 (E.D.N.Y. 1999)); *see also In re No Rust Rebar, Inc.*, 2022 WL 17365810, at *2 (Bankr. S.D. Fla Dec. 1, 2022) (Russin, J.) ("[L]egitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred.").

3. Nevertheless, the Debtors have insisted on a further carve out providing that they may withheld "confidential and proprietary business information" even if directly relevant to the enumerated categories identified above. (Ex. 2.) The Debtors' position finds no support in the law and is particularly troubling because the Debtors have defined confidential information to include anything relating to "business strategy," which would conceivably encompass, among other things, the very reasons why Ms. Cole resigned her employment with the Debtors.

4. Courts uniformly hold that a party may not withhold from production relevant, responsive materials on the ground that those materials are "confidential" or "proprietary."

Instead, courts address such concerns through protective orders governing the use and disclosure of confidential information. *See, e.g.*, *In re Metiom, Inc.*, 318 B.R. 263, 271 (S.D.N.Y. 2004) ("[T]he Bankruptcy Court's order that the examination be subject to a confidentiality agreement . . . 'substantially if not entirely reduced or eliminated'" the potential of harm from producing "proprietary business methods"); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 2019 WL 4723718, at *3 (D.P.R. Apr. 18, 2019) (explaining that "the requested information is relevant under Rule 2004, and must be produced," and ordering the parties to submit a proposed confidentiality agreement and protective order). In this case, the Debtors have already requested entry of a protective order governing the use of confidential information that they produce in these proceedings. (Dkt. 775.) There is thus no basis for the Debtors to contend that should be able to withhold relevant materials because of supposed confidentiality concerns.

5. For these reasons, Monster respectfully requests that the Court deny the Debtors' Motion.

## BACKGROUND

6. The Debtors instituted these bankruptcy proceedings on October 10, 2022.

7. On or around October 12, 2022, the Debtors appointed Ms. Cole to serve as their Chief Operating Officer ("COO") and a member of the Board of Directors.

8. Mere weeks later, on December 1, 2022, Ms. Cole resigned from both positions. In her resignation letter, Ms. Cole stated that she was unable to fulfill her fiduciary responsibilities due to certain unspecified directives from VPX's CEO and sole shareholder, Mr. Jack Owoc:

> Given your recent changes and removing my authority to make decisions and lead in my position of Chief Operating Officer and as board member, I am unable to fulfill my fiduciary responsibilities. Therefore, with a heavy heart, I must resign from my positions as COO/Board Member effective immediately. As part of the governance process and my fiduciary responsibilities I must

> maintain duty of care, duty of loyalty and duty of obedience. I am
> unable to perform these responsibilities given the recent directives.

(Ex. 1.)

9. Ms. Cole's resignation letter obviously alarmed the Debtors' creditors, including Monster. Accordingly, to investigate the circumstances surrounding Ms. Cole's employment and resignation, and the Debtors' potential ongoing misconduct, Monster served a Rule 2004 examination subpoena on Ms. Cole. (*See* Dkt. 514.) In that subpoena, Monster included two document requests relating to Ms. Cole's employment and her communications with Mr. Owoc. (*Id.*)

10. Ms. Cole did not lodge objections to Monster's subpoena and agreed to produce all responsive documents, consisting of approximately 340 pages of handwritten notes and a handful of other documents, including a non-disclosure agreement. But despite the absence of any burden to Ms. Cole, the Debtors objected to the scope of Monster's document requests on the ground that they are purportedly overbroad and cover VPX's irrelevant confidential business information. On February 8, 2023, the Debtors filed this Motion seeking a protective order narrowing the scope of the subpoena to Ms. Cole. (Dkt. 773.)

11. Following the Debtors' Motion, the parties continued to discuss a potential compromise to moot this dispute. Although Monster continues to believe that its original requests to Ms. Cole fall squarely within the scope of Rule 2004,[2] it agreed to narrow them as follows:

> **Revised Request No. 1.** All Documents and Communications relating to the Debtors' hiring of you, the terms of Your employment

---

[2] Monster's original document requests were already narrowly tailored to obtain documents concerning the administration of the Debtors' estate and potential wrongdoing. *See In re No Rust Rebar, Inc.*, 2022 WL 17365810, at *2 (Bankr. S.D. Fla Dec. 1, 2022) (Russin, J.). Because Ms. Cole was at VPX for only approximately six weeks, the only documents in her possession falling within the scope of Monster's original requests consist of her handwritten notes and a handful of other employment-related documents.

      with the Debtors, the duties of Your employment with the Debtors, corporate governance of the Debtors, conduct by the Debtors that you consider to be misconduct by or mismanagement of the Debtors, any complaints or allegations of misconduct by or mismanagement of the Debtors, and the cessation of Your employment with the Debtors, including the reasons for the cessation of Your employment.

      **Revised Request No. 2.** All documents and communications with or concerning Jack Owoc relating to the Debtors' hiring of you, the terms of Your employment with the Debtors, the duties of Your employment with the Debtors, corporate governance of the Debtors, conduct by the Debtors that you consider to be misconduct by or mismanagement of the Debtors, any complaints or allegations of misconduct by or mismanagement of the Debtors, and the cessation of Your employment with the Debtors, including the reasons for the cessation of Your employment.

12.    In response, the Debtors suggested that the narrowed categories of information sought in Monster's revised requests to Ms. Cole might be acceptable. Nonetheless, the Debtors insisted that Monster agree to carve out any responsive "confidential and proprietary business information" from the scope of its requests. (Ex. 2.) Specifically, the Debtors asserted that Monster must agree to a limitation immunizing all confidential information from discovery: "For the avoidance of doubt, the Debtors' confidential and proprietary business information, including but not limited to pricing, sales and distribution information, and business strategy, is not subject to discovery under this subpoena." (*Id.*)

13.    The only dispute that remains is whether such a limitation is appropriate.

## OPPOSITION

14.    "Rule 2004 examinations are very broad." *In re No Rust Rebar, Inc.*, 2022 WL 17365810, at *2 (Bankr. S.D. Fla. Dec. 1, 2022) (Russin, J.). "Legitimate goals of Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 626 (Bankr.

D. Del. 2016). "Numerous courts have acknowledged the rule's broad scope, holding that a Rule 2004 examination can be legitimately in the nature of a 'fishing expedition.'" *In re No Rust Rebar, Inc.*, 2022 WL 17365810, at *2; *In re Washington Mut., Inc.*, 408 B.R. 45, 49 (Bankr. D. Del. 2009) ("[A] Rule 2004 examination is unfettered and broad.") (citation omitted); *Matter of Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985) ("The general rule is that the scope of a Rule 2004 examination is very broad . . . . such examination is not limited to the debtor or his agents, but may extend to creditors and third parties who have had dealings with the debtor").

15. There is no genuine dispute that the categories of information listed in Monster's revised requests to Ms. Cole fall within the scope of Rule 2004. Indeed, each of those categories is directly relevant to investigating potential post-petition misconduct of the Debtors, including conduct that ultimately led Ms. Cole to conclude that she was unable to simultaneously follow "directives" and properly perform her fiduciary duties as the Debtors' COO and Board Member. *See In re No Rust Rebar, Inc.*, 2022 WL 17365810, at *2 (stating that legitimate areas of investigation under Rule 2004 include the debtor's potential misconduct).

16. The Debtors have nonetheless insisted that their "confidential and proprietary information" may not be discovered under Rule 2004 ***even if*** it falls within the categories of information in Monster's requests. No authority permits the Debtors to immunize from discovery business information that is appropriately discoverable under Rule 2004. As numerous courts have held, any concerns about confidentiality can and should be addressed through a protective order, on which the Debtors themselves have insisted in these proceedings. (Dkt. 773; *In re Metiom, Inc.*, 318 B.R. 263, 271 (S.D.N.Y. 2004) ("[C]ourts have typically found confidentiality agreements sufficient to protect parties subject to examinations from the use of information gained in those examinations for improper competitive purposes."); *In re Fin. Oversight & Mgmt.*

*Bd. for Puerto Rico*, 2019 WL 4723718, at *3 (D.P.R. Apr. 18, 2019) (ordering production of information, including confidential information, and permitting the parties to propose a protective order); *RePet, Inc. v. Zhao*, 2016 WL 11634744, at *6 (C.D. Cal. Nov. 3, 2016) ("[P]arty's interest in the confidentiality of financial information may be adequately addressed via a protective order."); *cf. Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 362 n.24 (1979) ("[O]rders forbidding any disclosure of trade secrets or confidential commercial information are rare. More commonly, the trial court will enter a protective order . . . .").

17.   The Debtors' position is particularly problematic, given how broadly they have defined their "confidential and proprietary information." For example, according to the Debtors, their "business strategy" constitutes "confidential information" that may not be produced in response to the subpoena to Ms. Cole ***even if*** that strategy contains evidence of post-petition misconduct and formed the basis for Ms. Cole's resignation. This remarkable proposition finds no support in either law or logic and would allow the Debtor's the unfettered discretion to withhold very important responsive documents.

## CONCLUSION

18.   Monster's document request to Ms. Cole fall squarely within Rule 2004. Because no authority permits the Debtors to immunize from discovery responsive documents that happen to contain their confidential or proprietary information, their Motion must be denied.

Dated: February 13, 2023

**AKERMAN LLP**
/s/ Michael I. Goldberg
Michael I. Goldberg
Florida Bar No. 886602
Eyal Berger
Florida Bar No. 11069
201 East Las Olas Boulevard, Suite 1800
Fort Lauderdale, FL 33301

T: (954) 463-2700 /F: (954) 463-2224
michael.goldberg@akerman.com
eyal.berger@akerman.com

-and-

**PACHULSKI STANG ZIEHL & JONES LLP**
Richard M. Pachulski (pro hac vice)
Ira D. Kharasch (pro hac vice)
Robert J. Feinstein (pro hac vice)
Teddy M. Kapur (pro hac vice)
Steven W. Golden (pro hac vice)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067-4003
T: (310) 277-6910 /F: (310) 201-0760
rpachulski@pszjlaw.com
ikharasch@pszjlaw.com
rfeinstein@pszjlaw.com
tkapur@pszjlaw.com
sgolden@pszjlaw.com

*Counsel to Monster Energy Company*

# EXHIBIT "1"

December 1st, 2022

Jack,

I want to thank you for the opportunity to be part of such an exciting organization with so much potential for long term success. During my time at Vital Pharmaceuticals, I've led a group of incredibly talented and dedicated professionals through the Chapter 11- Bankruptcy process and ongoing culture change.

Given your recent changes and removing my authority to make decisions and lead in my position of Chief Operating Officer and as board member, I am unable to fulfill my fiduciary responsibilities. Therefore, with a heavy heart, I must resign from my positions as COO/Board Member effective immediately. As part of the governance process and my fiduciary responsibilities I must maintain duty of care, duty of loyalty and duty of obedience. I am unable to perform these responsibilities given the recent directives.

Wishing you and the entire organization a successful future in all endeavors.

Regards,

Kathy Cole

# EXHIBIT "2"

| | |
|---|---|
| **From:** | Robert Feinstein |
| **To:** | Amy Quartarolo |
| **Cc:** | Michael Goldberg |
| **Subject:** | RE: VPX/Cole |
| **Date:** | Saturday, February 11, 2023 8:52:02 AM |

Amy,

Although Monster is not targeting confidential business information with its requests to Ms. Cole, such information must be produced if it relates to the topics listed in our proposed formulations. Nothing in Rule 2004 allows VPX to immunize from discovery confidential business information if it relates, for example, to the Debtors' post-petition misconduct. Your attempt to do so is especially concerning, given how broadly you have defined confidential business information.

Once again, all of your concerns can and should be addressed through the protective order. We are genuinely confused as to why you would even insist on a protective order if you believe that no confidential business information may be produced under Rule 2004.

Please let us know your final position by 5:00p.

---

**From:** Amy.Quartarolo@lw.com [mailto:Amy.Quartarolo@lw.com]
**Sent:** Saturday, February 11, 2023 11:09 AM
**To:** Robert Feinstein <rfeinstein@pszjlaw.com>
**Cc:** Michael Goldberg <michael.goldberg@akerman.com>
**Subject:** RE: VPX/Cole

Leaving aside the inaccurate assumptions baked into your email below, it is concerning if Monster won't confirm that it is not seeking the Debtors' confidential business information from Ms. Cole - particularly given what you and Michael said on the call yesterday.

If there is some language along the lines I suggested that would be acceptable, then we are happy to discuss further.

**Amy C. Quartarolo**

**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
Direct Dial: +1.213.891.8966
Fax: +1.213.891.8763
Email: amy.quartarolo@lw.com
http://www.lw.com

---

**From:** Robert Feinstein <rfeinstein@pszjlaw.com>
**Date:** Saturday, Feb 11, 2023 at 7:58 AM
**To:** Quartarolo, Amy (LA) <Amy.Quartarolo@lw.com>
**Cc:** Michael Goldberg <michael.goldberg@akerman.com>
**Subject:** RE: VPX/Cole

The language you propose to add is too broad for us to agree to.  As we said yesterday, we don't want to be denied information, e.g., a discussion about a false advertising campaign, if that is the context where the misconduct occurred, on the basis that what was being discussed was business strategy.  You will have a confidentiality order that will protect all proprietary information.

We will have to address the confidentiality order separately.   Litigation counsel remains opposed to an order that would extend to restricting the use of non-confidential, non-privileged information revealed in discovery.

**From:** Amy.Quartarolo@lw.com [mailto:Amy.Quartarolo@lw.com]
**Sent:** Saturday, February 11, 2023 10:18 AM
**To:** Robert Feinstein <rfeinstein@pszjlaw.com>
**Cc:** Michael Goldberg <michael.goldberg@akerman.com>
**Subject:** RE: VPX/Cole

I've forwarded your proposed revisions to others on my side and will work to get back to you with a definitive response today.  We would like to add something at the end, along the lines of what Michael suggested, that makes clear that confidential business information is not being produced.  Something like:  "For the avoidance of doubt, the Debtors' confidential and proprietary business information, including but not limited to pricing, sales and distribution information, and business strategy, is not subject to discovery under this subpoena."

Do we separately need to discuss the confidentiality order or are we proceeding with that on a contested basis?

**Amy C. Quartarolo**

**LATHAM & WATKINS LLP**
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
Direct Dial: +1.213.891.8966
Fax: +1.213.891.8763
Email: amy.quartarolo@lw.com
http://www.lw.com

**From:** Robert Feinstein <rfeinstein@pszjlaw.com>
**Date:** Saturday, Feb 11, 2023 at 6:53 AM
**To:** Quartarolo, Amy (LA) <Amy.Quartarolo@lw.com>
**Cc:** Michael Goldberg <michael.goldberg@akerman.com>
**Subject:** RE: VPX/Cole

Hi, Amy, following up on this.  Since responsive papers are due on Monday, if we can resolve this we can avoid drafting over the weekend.  Thanks.

**From:** Robert Feinstein
**Sent:** Friday, February 10, 2023 4:06 PM
**To:** Amy Quartarolo <Amy.Quartarolo@lw.com>
**Cc:** Michael Goldberg <michael.goldberg@akerman.com>

**Subject:** VPX/Cole

HI Amy, thanks for your time today. We've consulted with co-counsel and client and have just few additional words to insert per the below and we are good to go:

Revised Request 1: All Documents and Communications relating to the Debtors' hiring of you, the terms of Your employment with the Debtors, the duties of Your employment with the Debtors, corporate governance of the Debtors, conduct ~~by the Debtors~~ that you consider to be misconduct by or mismanagement of the Debtors, any complaints or allegations of misconduct by or mismanagement of the Debtors, and the cessation of Your employment with the Debtors, including the reasons for the cessation of Your employment.

Revised Request 2: All documents and communications with or concerning Jack Owoc relating to the Debtors' hiring of you, the terms of Your employment with the Debtors, the duties of Your employment with the Debtors, corporate governance of the Debtors, conduct ~~by the Debtors~~ that you consider to be misconduct by or mismanagement of the Debtors, any complaints or allegations of misconduct by or mismanagement of the Debtors, and the cessation of Your employment with the Debtors, including the reasons for the cessation of Your employment.

Please let us know if this works.

Best,
Rob
**Robert Feinstein**
Pachulski Stang Ziehl & Jones LLP
Direct Dial: 212.561.7710
Tel: 212.561.7700 | Cell: 917-533-1996 | Fax: 212.561.7777
rfeinstein@pszjlaw.com
vCard | Bio | LinkedIn



Los Angeles | San Francisco | Wilmington, DE | New York | Houston

_____

This email may contain material that is confidential, privileged and/or attorney work product for the sole use of the intended recipient. Any review, disclosure, reliance or distribution by others or forwarding without express permission is strictly prohibited. If you are not the intended recipient, please contact the sender and delete all copies including any attachments.

Latham & Watkins LLP or any of its affiliates may monitor electronic communications sent or received by our networks in order to protect our business and verify compliance with our policies and relevant legal requirements. Any personal information contained or referred to

within this electronic communication will be processed in accordance with the firm's privacy notices and Global Privacy Standards available at www.lw.com.