UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 (PDR) |
| Debtors.[1] | (Jointly Administered) |

**DECLARATION OF BRENT C. WILLIAMS IN SUPPORT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO DEBTORS' MOTION TO QUASH AND FOR PROTECTIVE ORDER AS TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS' RULE 2004 NOTICES**

Under 28 U.S.C. § 1746, Brent C. Williams hereby declares as follows under the penalty of perjury:

1. I am the Co-Head of the Capital Advisory Group at Lincoln Partners Advisors LLC ("Lincoln"), a financial advisory firm retained by the Official Committee of Unsecured Creditors (the "Committee") in these chapter 11 cases (the "Chapter 11 Cases"). Lincoln has expertise in operational and financial restructurings, mergers and acquisitions (M&A) and capital raising services to stakeholders in stressed and distressed situations.

2. I submit this declaration ("Declaration") on behalf of the Committee and in support of its Objection to the *Debtors' Motion to Quash and for Protective Order as to Official Committee of Unsecured Creditors' Rule 2004 Notices* [Docket No. 786] (the "Motion").[2]

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. Tire last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicom Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized or referenced terms used but not defined herein shall have the meanings given to them in the Committee's Objection or the Motion.

3.      As the Committee's financial advisor in these Chapter 11 Cases, Lincoln has been asked to, among other things, review and analyze the Debtors' books and records (the "Books").

4.      Unless otherwise indicated, all facts set forth in this Declaration are based upon information learned from my review of relevant documents, information supplied by members of the Company's management or financial advisors, Huron Consulting Services LLC ("Huron"), other members of Lincoln's engagement team or the Committee's other advisors, my personal knowledge gleaned during the course of my engagement with the Committee, or my opinion informed by my experience, knowledge, and information concerning the Debtors' operations and financial affairs.

5.      If called upon to testify, I could and would testify competently to the facts set forth herein on that basis.

6.      I am not being compensated for this testimony other than through payments received by Lincoln as a professional retained by the Committee; none of those payments are contingent upon the opinions or conclusions I reach, nor the outcome of this Motion.

7.      To date, the Debtors have produced documents purportedly from the general ledger accounts containing the Debtors' transactions for various periods between October 2019 through October 2022. However, the Debtors only produced portions of the general ledger accounts, and therefore, it is not possible to fully audit and trace the transactions.

8.      Specifically, the Debtors produced documents purporting to contain the Debtors': (i) distributions (the "Distributions File"); (ii) intercompany transactions (the "Intercompany Files"); (iii) supplier payments (the "Supplier Payment Files"); and (iv) other payments admittedly related to insiders (the "Insider Payment Files"). A majority of the

documents produced by the Debtors containing transaction data contain a Professionals'-Eyes-Only designation.

9. There were over 100,000 transactions between all of the various general ledger accounts and supplemental information that were produced to date. Lincoln participated in at least five calls with Huron on this subject and performed a thorough review that spanned across weeks and totaled over 180 hours spent attempting to decipher and make sense of the Books.

10. Even after this exhaustive review, the data contained in the Books is still difficult to discern and is lacking in certain areas.

11. For example, Lincoln has identified the following issues/inconsistencies with the Books: (i) certain transactions appeared on both the Distributions File and the Supplier Payment Files; (ii) after reviewing the transactions identified as "distributions" in the SOFA 4, Lincoln discovered those transactions were pulled from a combination of the Distributions File and Supplier Payment Files; (iii) certain transactions being presented as "distributions" to Jack in SOFA 4 appeared to be payments to third parties who, upon information and belief, are either insiders or are seemingly unrelated to the Debtors' businesses; (iv) payments contained in the Supplier Payment Files were made to parties that do not appear to be actual "suppliers" of the Debtors; (v) it is unclear how intercompany transactions flowed between the various general ledger accounts as it seems not all payments to non-Debtors ran through intercompany transactions; (vi) there were direct cash payments made by the Debtors on behalf of non-Debtors that the Committee still doesn't have the data to properly analyze; (vi) manual journal entries that did not have a specified reason as to why they were entered in manually; (vii) inconsistencies in the presentation between the various documents, like the absence of data providing the identity of the individual responsible for entering each journal entry, purportedly produced from the general ledger causing

Lincoln to question if the document produced was the complete native file or not; and (viii) general ledger entries that did not contain enough detail to accurately determine what the transaction was specifically related to—like whether the transaction was in fact related to the Debtors' businesses.

12. Lincoln identified over 200 transactions (the "Suspect Transactions") that appear problematic due to many of the issues outlined above in paragraph 11 and were seemingly: (i) received or for the benefit of a third party; (ii) affiliated with an insider; (iii) unrelated to the Debtors' businesses; and (iv) without corresponding value received by the Debtors according to the Books. The Suspect Transactions account for tens of millions of dollars transferred out of the Debtors' accounts.

13. As a result of these issues and others that remain outstanding, Lincoln has reason to question the credibility and/or accuracy of the information contained in the Books that have been produced to date.

Dated: February 17, 2023
      New York, New York

                                                           Brent C. Williams