UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                          Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]      Case No.: 22-17842-PDR

    Debtors.                                    (Jointly Administered)

_____/

**NOTICE OF FILING CLEAN AND REDLINE VERSIONS OF THE
PROPOSED ORDER (I) APPROVING BIDDING PROCEDURES, (II)
AUTHORIZING THE DEBTORS TO PROVIDE BID PROTECTIONS,
AND (III) GRANTING RELATED RELIEF, WITH EXHIBITS**

Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property
Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev
LLC and Vital Pharmaceuticals International Sales, Inc. (collectively, the "Debtors"), by and
through their undersigned counsel, file a (a) clean version of the proposed *Order (I) Approving
Bidding Procedures, (II) Authorizing the Debtors to Provide Bid Protections, and (III)
Granting Related Relief* with exhibits, attached hereto as **Exhibit A**, and (b) redline version of
the proposed *Order (I) Approving Bidding Procedures, (II) Authorizing the Debtors to Provide*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors'
federal tax identification numbers are as: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc.
(5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC
(9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital
Pharmaceuticals International Sales, Inc. (8019).

*Bid Protections, and (III) Granting Related Relief* with exhibits, attached hereto as **Exhibit B**.

Dated: February 21, 2023                    Respectfully submitted,
          Miami, Florida

                                            */s/ Jordi Guso*
George A. Davis (admitted *pro hac vice*)    Jordi Guso
Tianjiao ("TJ") Li (admitted *pro hac vice*)    Florida Bar No. 863580
Brian S. Rosen (admitted *pro hac vice*)    Michael J. Niles
Jonathan J. Weichselbaum (admitted *pro hac vice*)    Florida Bar No. 107203
**LATHAM & WATKINS LLP**                    **BERGER SINGERMAN LLP**
1271 Avenue of the Americas                 1450 Brickell Avenue, Suite 1900
New York, NY 10020                          Miami, FL 33131
Telephone:  (212) 906-1200                  Telephone:  (305) 755-9500
Email:  george.davis@lw.com                 Email:  jguso@bergersingerman.com
        tj.li@lw.com                                mniles@bergersingerman.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*Co-Counsel for the Debtors*

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]                 Case No.: 22-17842-PDR

        Debtors.                                          (Jointly Administered)

_____/

**ORDER (I) APPROVING BIDDING
PROCEDURES, (II) AUTHORIZING THE DEBTORS TO
PROVIDE BID PROTECTIONS, AND (III) GRANTING RELATED RELIEF**

**THIS MATTER** came before the Court on February 23, 2023 at 2:00 p.m. (the "Hearing"),

in Fort Lauderdale, Florida, upon the motion [ECF No. 707] (the "Motion")[2] filed by the above-

captioned debtors and debtors-in-possession (collectively, the "Debtors"), requesting the entry of

an order: (i) approving the Bidding Procedures; (ii) establishing the Assumption and Assignment

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein have the meanings given to them in the Motion or the Bidding Procedures, as applicable.

Procedures; (iii) approving the form and manner of the Sale Notice, the Assumption Notice, and the Post-Auction Notice; (iv) scheduling dates for the Auction and the Sale Hearing; (v) authorizing the Debtors to provide Bid Protections (as defined herein); and (vi) granting related relief, all as more fully set forth in the Motion; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at the Hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing established just cause for the relief granted herein; and upon all of the proceedings had before this Court and at the Hearing; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory bases for the relief sought in the Motion are: (i) sections 105, 363, 365, 503, and 507 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and (ii) Bankruptcy Rule 6006.

D.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties-in-interest.

E.      The Debtors' notice of the Motion, the Hearing, and the proposed entry of this Bidding Procedures Order was adequate and sufficient under the circumstances of these chapter 11 cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Accordingly, no further notice of the Motion, the Hearing, or this Bidding Procedures Order is necessary or required.

F.      The Debtors have demonstrated a sound business justification for this Court to grant the relief requested in the Motion, including, without limitation, to (i) approve the Bidding Procedures; (ii) establish the Assumption and Assignment Procedures; (iii) approve the form and manner of notice of all procedures and protections attached hereto; (iv) schedule dates for the Auction and Sale Hearing; (v) authorize the Debtors to provide the Bid Protections in accordance with the terms of this Bidding Procedures Order; and (vi) grant related relief as set forth herein. Such sound business justification, which was set forth in the Motion and on the record at the Hearing, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

G.      Under the circumstances, the Bidding Procedures, substantially in the form attached as **<u>Exhibit 1</u>** hereto, are fair, reasonable, and appropriate and designed to maximize the value of the Debtors' assets and estates for the benefit of all stakeholders.

3

H.      The Sale Notice, substantially in the form attached as **Exhibit 2** hereto, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of, among other things, (i) the proposed sale of the Assets, (ii) the Bidding Procedures, (iii) the date, time, and place of the Auction (if one is held), (iv) the Sale Objection Deadline, (v) and the Sale Hearing, and no other or further notice is required.

I.      The Assumption Notice, substantially in the form attached as **Exhibit 3** hereto, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of (i) the potential assumption and assignment of the Assigned Contracts in connection with a sale of the Assets and the related Cure Amounts, and (ii) the relevant deadlines and other requirements for objecting thereto, and no other or further notice is required.

J.      The Post-Auction Notice, substantially in the form attached as **Exhibit 4** hereto, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of any Successful Bid and Back-Up Bid, and no other or further notice is required.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is **GRANTED** to the extent set forth herein.

2.      Except as explicitly provided herein to the contrary, all objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled and denied on the merits with prejudice.

### Transaction Process Timeline

3.      The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the timeline set forth in the

Bidding Procedures attached as **Exhibit 1** hereto; *provided*, that the Debtors may extend such dates in their reasonable discretion, and in consultation with the Consultation Parties.[3]

4.      The failure by a party to timely file an objection in accordance with this Bidding Procedures Order shall forever bar such party from asserting any objection to the Motion, entry of an order approving a Transaction, consummation of a Transaction, and the assumption and assignment of contracts and leases to the Successful Bidder in connection with the Transaction, and shall be deemed to constitute any such party's consent to entry of the applicable order, assumption, assignment, consummation of the Transaction and all other transactions related thereto; *provided*, that notwithstanding anything to the contrary herein, any deadline to object to any chapter 11 plan proposed in these cases (including any plan incorporating a Restructuring Transaction) shall be established by separate order.

## The Bidding Procedures

5.      The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are incorporated herein and approved in their entirety.  The Bidding Procedures shall govern all Bids relating to any proposed Transaction.  The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance therewith. The failure to specifically include or reference a particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of any such provision. The Debtors reserve the right, and are authorized (after consultation with the Consultation Parties),

---

[3] Each "Consultation Party," and collectively, the "Consultation Parties" means:  (i) Truist Bank, in its capacities as administrative agent under the Debtors' prepetition secured credit facility and debtor-in-possession credit facility (in such capacities, the "Agent"), and the Agent's counsel and financial advisor; and (ii) counsel, investment banker, and financial advisor to the Committee; *provided*, that no person or entity that constitutes a Potential Bidder, an Acceptable Bidder, a Qualified Bidder, a Stalking Horse Bidder, a Successful Bidder, or a Back-Up Bidder (each as defined in the Bidding Procedures) (as determined by the Debtors, in their reasonable discretion and in consultation with the Committee) shall be deemed a Consultation Party for so long as such person constitutes a Potential Bidder, an Acceptable Bidder, a Qualified Bidder, a Stalking Horse Bidder, a Successful Bidder, or a Back-Up Bidder.

to modify the Bidding Procedures in accordance with the Bidding Procedures and this Bidding Procedures Order.

6.       Except as otherwise provided in the Bidding Procedures with respect to a Stalking Horse Bidder, no person or entity shall receive any break-up fee, expense reimbursement, or other similar fees or payment, and by submitting a Bid, each Bidder is deemed to have waived its right to request or to file with this Court any request for expense reimbursement or any fee of any nature solely in connection with such Bid, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

7.       Any deposit provided by a Qualified Bidder shall be held in a segregated account by the Debtors or their agent in accordance with the Bidding Procedures, and shall not become property of the Debtors' bankruptcy estates unless and until released to the Debtors pursuant to the terms of the Stalking Horse Agreement or order of this Court.

8.       The Debtors may (i) determine which Qualified Bid is the highest or otherwise best Bid in accordance with the Bidding Procedures, in consultation with the Consultation Parties; (ii) at any time prior to entry of an order of this Court approving the Successful Bid, reject any Bid (other than a Stalking Horse Bid) that the Debtors determine, in consultation with the Consultation Parties, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (c) contrary to the best interests of the Debtors' estates and their creditors; and (iii) prior to conclusion of any Auction, impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these chapter 11 cases.

9.       To the extent any Bid contemplates the acquisition of assets owned by non-Debtors, which are not encumbered by the Agent's liens and/or security interests, the Committee and the

6

Agent reserve their rights to contest the allocation of the proceeds of any such resulting sale.

**<u>Stalking Horse Bidder and Bid Protections</u>**

10.     The Debtors, in consultation with the Consultation Parties, are authorized, but not directed, to: (i) select a potential bidder to act as Stalking Horse Bidder(s), and enter into a Stalking Horse Agreement with each such Stalking Horse Bidder; (ii) provide a breakup fee (the "<u>Breakup Fee</u>"); and/or (iii) agree to reimburse reasonable and documented out-of-pocket fees and expenses (the "<u>Expense Reimbursement</u>" and, together with the Breakup Fee, the "<u>Bid Protections</u>"), all as reasonably acceptable to the Debtors, after consultation with the Consultation Parties, and subject to the terms and conditions set forth in this Bidding Procedures Order; *provided*, that absent a further order of this Court the aggregate value of any Bid Protections shall not exceed 3% of the cash purchase price under the Stalking Horse Agreement.

11.     Nothing contained in this Bidding Procedures Order shall prohibit the Debtors from selecting a Bid in the form of a Restructuring Transaction to be the Stalking Horse Bid in accordance with the terms of the Bidding Procedures.

12.     No later than **March 24, 2023 at 11:59 p.m.** (Prevailing Eastern Time), the Debtors shall file with this Court a notice of the Debtors' selection of the Stalking Horse Bidder and the Stalking Horse Bid (the "<u>Stalking Horse Selection Notice</u>"), which Stalking Horse Selection Notice shall describe any Bid Protections granted in connection with the Stalking Horse Bid and attach (i) a copy of a Stalking Horse Agreement that has been executed by, and is binding upon, the Stalking Horse Bidder and (ii) a proposed form of order authorizing and approving the Debtors' entry into and performance under the Stalking Horse Agreement (subject to the submission of higher or otherwise better offers for the Assets) and any Bid Protections being granted to the Stalking Horse Bidder (the "<u>Stalking Horse Order</u>").

7

13.      Parties in interest shall file objections (a "<u>Stalking Horse Objection</u>") to the designation of the Stalking Horse Bidder or approval of the proposed Bid Protections, no later than **March 31, 2023 at 4:00 p.m.** (Prevailing Eastern Time) (the "<u>Stalking Horse Objection Deadline</u>").  If one or more Stalking Horse Objections are timely filed, a hearing shall be held before this Court on [ ● ], 2023 to consider the relief requested in the proposed Stalking Horse Order.  If no Stalking Horse Objections are received, or in the event that all such Stalking Horse Objections are resolved consensually, the proposed Stalking Horse Order may be entered without a hearing, unless otherwise required by the Stalking Horse Bidder.

<u>**Notice Procedures**</u>

**A.      Sale Notice**

14.      The form of Sale Notice, substantially in the form attached as **<u>Exhibit 2</u>** hereto, is approved.  The Debtors are authorized to make non-substantive or immaterial changes to the Sale Notice or to fill in missing information, in each case to the extent not inconsistent with this Bidding Procedures Order, prior to service or publication of the Sale Notice.

15.      On or before three (3) business days after the entry of this Bidding Procedures Order, the Debtors will file the Sale Notice with this Court and shall serve the Sale Notice by first-class mail, postage prepaid, or, for those parties who have consented to receive notice by the ECF system, by ECF, upon: (i) to the best knowledge of the Debtors' management, all entities that have expressed written interest in a Sale Transaction with respect to all or substantially all of the Assets within the past six (6) months; (ii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Assets; (iii) counsel to the Committee; (iv) the Agent; (v) counsel to the Agent; (vi) the U.S. Trustee; (vii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief granted herein; (viii) the United States Attorney's office for the Southern District of Florida; (ix) the Internal

Revenue Service; (x) all parties entitled to notice pursuant to Bankruptcy Rule 2002; and (xi) all known creditors of the Debtors, including their contract counterparties; *provided*, *however*, that to the extent email addresses are available for any of the foregoing parties, such parties may be served by email.

16.     The Debtors are authorized to file under seal that part of the service list providing the names and mailing addresses for potential bidders previously identified or otherwise known to the debtors that are served with the Sale Notice and this Bidding Procedures Order.

17.     Service of the Sale Notice as described herein shall be deemed good and sufficient notice of the Transaction with respect to known interested parties.

18.     The Debtors are authorized and directed to publish the Sale Notice, as modified for publication, in the *New York Times* within eight (8) business days after the entry of this Bidding Procedures Order.  In addition, the Debtors are authorized, but not directed, to (i) publish the Sale Notice in additional publications as the Debtors deem appropriate, and (ii) cause the Sale Notice to be posted on the Case Website.

19.     Publication of the Sale Notice as described herein shall be good and sufficient notice of the Transaction with respect to all unknown creditors or other parties.

**B.      Assumption Notice**

20.     The Assumption Notice, substantially in the form attached as **Exhibit 3** hereto, is approved, and the Debtors are authorized to make non-substantive or immaterial changes to the Assumption Notice or to fill in missing information, in each case to the extent not inconsistent with this Bidding Procedures Order, prior to service of the Assumption Notice.

21.     Service of the Assumption Notice as provided herein shall be deemed good and sufficient notice of, among other things, the proposed assumption and assignment of the Assigned

Contracts, the applicable Cure Amounts related thereto, and the procedures for objecting thereto, and no other or further notice is necessary.

**C.      Post-Auction Notice**

22.      The form of Post-Auction Notice, substantially in the form attached as **Exhibit 4** hereto, is approved, and the Debtors are authorized to make non-substantive or immaterial changes to the Post-Auction Notice or to fill in missing information, in each case to the extent not inconsistent with this Bidding Procedures Order, prior to service of the Post-Auction Notice.

23.      As soon as practicable after the Auction (if any) and in any event no later than twenty-four (24) hours following the closing of the Auction, the Debtors shall file on the Court's docket and serve, by overnight delivery, on the Counterparties (as defined below) the Post-Auction Notice identifying any Successful Bidder and Back-Up Bidder.

24.      The filing and service of the Post-Auction Notice as described herein shall be deemed good and sufficient notice of the Debtors' selection of the Successful Bid and Back-Up Bid, and the deadlines and other requirements for objecting to the same, the conduct of the Auction, and to the potential assumption and assignment of the Assigned Contracts to the Successful Bidder and/or Back-Up Bidder, and no other or further notice is required.

## The Auction

25.      If the Debtors receive more than one Qualified Bid by the Bid Deadline, an Auction shall take place on **April 27, 2023 at 10:00 a.m.** (Prevailing Eastern Time), or such later time the Debtors reasonably determine at: (i) the offices of Latham & Watkins LLP, located at 1271 Avenue of the Americas, New York, New York 10020; (ii) telephonically; or (iii) by video via Zoom, or other place (or by such other electronic means) as the Debtors reasonably determine; *provided*, that the Debtors timely notify all Qualified Bidders and other invitees of the time and place of the Auction in accordance with the Bidding Procedures, and for the avoidance of any doubt, the

Auction is subject to the right of the Debtors, in the reasonable exercise of their business judgment, in consultation with the Consultation Parties, to adjourn the Auction to a later date.  The Auction shall be conducted in accordance with the Bidding Procedures.

26.     In the event no Auction is to be held, the Debtors shall file a notice with this Court not later than **April 26, 2023 at 4:00 p.m.** (Prevailing Eastern Time) stating that there will be no Auction.

### **Assumption and Assignment Procedures**

27.     The proposed Assumption and Assignment Procedures, and the payment by the Debtors or the Successful Bidder, as applicable, of any related Cure Amounts, as set forth in the Motion and in this Bidding Procedures Order, are approved.

28.     The Assumption and Assignment Procedures are as follows:

(a)     On or prior to **March 3, 2023** (the "Assumption Notice Deadline"), the Debtors shall file with this Court, post on the Case Website and serve on each counterparty (each, a "Counterparty," and collectively, the "Counterparties") to an Assigned Contract, the Assumption Notice.

(b)     The Assumption Notice shall include, without limitation, a list of Assigned Contracts (the "Assigned Contract List") that may be assumed and assigned in connection with a Transaction and the Cure Amount, if any, that the Debtors believe is required to be paid to the applicable Counterparty under sections 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assigned Contracts.  If no Cure Amount is listed on the Assigned Contracts List for a particular Assigned Contract, the Debtors' asserted Cure Amount for such Assigned Contract shall be deemed to be $0.00.  If a Counterparty objects to the Cure Amount or the assumption of its Assigned Contract on any basis ***other than*** the ability of the Successful Bidder to provide adequate assurance of future performance (an "Adequate Assurance Objection"), the Counterparty must file with this Court and serve on the Objection Recipients (as defined herein) a written objection (a "Contract Objection") on or **March 31, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Contract Objection Deadline").

(c)     Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and Local Rules; (iii) be filed with the Clerk of the Court on or before the Contract Objection Deadline, except as otherwise set forth below with respect to Assigned Contracts added to the Assigned Contracts

List (or for which the proposed Cure Amount is modified) after the Assumption Notice Deadline; (iv) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under sections 365(b)(1)(A) and (B) of the Bankruptcy Code for the applicable Assigned Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto; and (v) be served upon the Objection Recipients.

(d)     The Debtors reserve the right, and are authorized to (i) add previously omitted Assigned Contracts to the Assigned Contracts List as executory contracts or unexpired leases that may be assumed and assigned to a Successful Bidder in accordance with the definitive agreement for a Sale Transaction, (ii) remove Assigned Contracts from the Assigned Contract List, or (iii) modify the previously stated Cure Amount associated with any Assigned Contract; *provided*, that up until the closing of the Sale Transaction, the Debtors may seek to reject any Assigned Contract included on the Assigned Contracts List if such Assigned Contract is not ultimately assigned to the Successful Bidder.

(e)     If, after the Assumption Notice Deadline (i) additional executory contracts or unexpired leases of the Debtors are determined to be Assigned Contracts in connection with such Sale Transaction, or (ii) any Cure Amounts associated with Assigned Contracts are modified, as soon as practicable thereafter, the Debtors shall file with this Court and serve, by overnight delivery, on the applicable Counterparties a supplemental or revised Assumption Notice, and such Counterparties shall file any Contract Objections not later than (a) the Contract Objection Deadline in the event that such Assumption Notice was filed and served at least ten (10) days prior to the Contract Objection Deadline, and (b) seven (7) days from the date such supplemental or revised Assumption Notice was filed and served in accordance with the above, in the event that such supplemental or revised Assumption Notice was filed and served less than ten (10) days prior to the Contract Objection Deadline.  In the event that a supplemental or revised Assumption Notice was filed and served less than seven (7) days prior to the commencement of the Sale Hearing and an objection is filed that is not otherwise consensually resolved, then such objection will not be adjudicated at the Sale Hearing and will be set for a subsequent hearing.

(f)     As soon as practicable after the Auction and in any event no later than twenty-four (24) hours following the closing of the Auction, the Debtors shall file with this Court and serve, by overnight delivery, on the Counterparties the Post-Auction Notice substantially in the form attached as **Exhibit 4** here to, identifying any Successful Bidder and Backup Bidder, and the Counterparties shall file any Adequate Assurance Objections not later than 4:00 p.m. (Prevailing Eastern Time) on the date that is three (3)

business days prior to the commencement of the Sale Hearing (such deadline, the "Post-Auction Sale Objection Deadline"), or, if applicable, any later deadline established pursuant to subparagraph 28(e) above.

(g)     At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to the Successful Bidder of only those Assigned Contracts that have been selected by the Successful Bidder to be assumed and assigned (collectively, the "Selected Assigned Contracts"). The inclusion of an Assigned Contract on an Assumption Notice or the identification of such Assigned Contract as a Selected Assigned Contract will not (i) obligate the Debtors to assume any Assigned Contract listed thereon nor the Successful Bidder to take assignment of such Assigned Contract, or (ii) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease. The Debtors reserve any and all rights with respect to any Assigned Contracts that are not ultimately designated as Selected Assigned Contracts, and reserve the right to reject any Assigned Contract identified as a Selected Assigned Contract if such Assigned Contract is not ultimately assigned to the Successful Bidder.

(h)     If no Contract Objection or Adequate Assurance Objection, as applicable, is timely received with respect to a Selected Assigned Contract: (i) the Counterparty to such Selected Assigned Contract shall be deemed to have consented to the assumption by the Debtors and assignment to Successful Bidder of the Selected Assigned Contract, and be forever barred from asserting any objection with regard to such assumption or assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder); (ii) any and all defaults under the Selected Assigned Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code upon payment of the Cure Amount set forth in the most recent Assumption Notice for such Selected Assigned Contract; and (iii) the Cure Amount set forth in the most recent Assumption Notice for such Selected Assigned Contract shall be controlling, notwithstanding anything to the contrary in such Selected Assigned Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Assigned Contract against the Debtors and their estates, the Successful Bidder, or the property of any of them, that existed prior to the entry of the order resolving the Contract Objections and the Sale Order.

29.     To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the Cure Amount required to be paid to the applicable Counterparty under

13

sections 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Court; *provided*, *however*, that if the Contract Objection relates solely to a Cure Dispute, the Selected Assigned Contract may be assumed by the Debtors and assigned to the Successful Bidder so long as the cure amount the Counterparty asserts is required to be paid under sections 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as may be agreed to by the Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute. The Debtors and the Successful Bidder reserve their rights to remove an Assigned Contract from the Assigned Contract List or from any list of Selected Assigned Contracts based on the outcome of a Cure Dispute held at a hearing subsequent to the Sale Hearing or for any other reason.

## Sale Hearing

30.    A Sale Hearing to approve any Sale Transaction shall be held on or around **May 11, 2023 at 1:30 p.m.** (Prevailing Eastern Time), and may be adjourned or rescheduled by the Debtors from time to time in accordance with the Bidding Procedures.

31.    Except as otherwise provided herein, any objection to any Transaction (a "Sale Objection") must be filed no later than **March 31, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Sale Objection Deadline"). Any and all such objections must be served on the Objection Recipients and counsel to any Successful Bidder, if known on the Sale Objection Deadline; *provided*, that, any or objections to the outcome and conduct of the Auction, the designation or Court-approval of the Successful Bid or Back-Up Bid, or Adequate Assurance Objections must be filed no later than 4:00 p.m. (Prevailing Eastern Time) on the date that is three (3) business days prior to the commencement of the Sale Hearing.

32.    All replies to any objections must be filed by 4:30 p.m. on the date that is two (2) business days prior to the commencement of the Sale Hearing (the "Reply Deadline").

**Other Relief**

33.    Except as otherwise provided herein, any objection provided hereunder must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and Local Rules, (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor, and (iv) be filed with this Court and served so actually received no later than the applicable objection deadline by the following parties (collectively, the "Objection Recipients"):

i.    the Debtors, c/o Vital Pharmaceuticals, Inc., 1600 N. Park Drive, Weston, FL 33326 (Attn: Greg Robbins (Greg.Robbins@bangenergy.com) and Gregg Metzger (Gregg.Metzger@bangenergy.com));

ii.    co-counsel for the Debtors:

(a)    Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004 (Attn: Andrew Sorkin (andrew.sorkin@lw.com)) and Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: Liza Burton (liza.burton@lw.com) and Jonathan Weichselbaum (jon.weichselbaum@lw.com)); and

(b)    Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Jordi Guso (JGuso@bergersingerman.com) and Michael Niles (mniles@bergersingerman.com));

iii.    the Agent, Truist Bank 10500 Little Patuxent Parkway Ste 450, Columbia, MD 21046, Mail Code 420-20-01-00 (Attn: Jade Silver (jade.silver@truist.com));

iv.    co-counsel to the Agent:

(a)    Moore & Van Allen PLLC, 100 North Tryon Street, Suite 4700, Charlotte, NC 28202-4003 (Attn: Luis Lluberas (luislluberas@mvalaw.com), Steve Gruendel (stevegruendel@mvalaw.com), and Cole Richins (colerichins@mvalaw.com)); and

(b)    Shutts & Bowen LLP, 200 South Biscayne Blvd., Ste 4100, Miami, FL 33131 (Attn: Aliette D. Rodz (ARodz@shutts.com), Peter Levitt

15

(plevitt@shutts.com), Harris J. Koroglu (hkoroglu@shutts.com), and Martha M. Ferral (MFerral@shutts.com));

v.      the Office of the United States Trustee, 51 SW First Avenue, Room 1204, Miami, Florida 33130; and

vi.     co-counsel to the Committee:

(a)    Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, NY 10020 (Attn: Jeffrey Cohen (jcohen@lowenstein.com), Eric Chafetz (echafetz@lowenstein.com), and Lindsay Sklar (lsklar@lowenstein.com)) and Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, NJ 07068, Attn: Erica Mannix (emannix@lowenstein.com)); and

(b)    Sequor Law, P.A., 1111 Brickell Avenue, Suite 1250, Miami, FL 33131 (Attn: Leyza Blanco (lblanco@sequorlaw.com) and Fernando Menendez (fmenendez@sequorlaw.com)).

34.     [KJ Can Bid.  Notwithstanding anything contained in this Bidding Procedures Order or the Bidding Procedures, the following Bid Requirements contained in the Bidding Procedures do not apply to a bid from KJ Can (Singapore) Pte. Ltd. ("KJ Can") that is for less than substantially all assets (a "KJ Can Bid"): (a) the Minimum Bid requirement set forth in Section E(iii); (b) the Pro Forma Capital Structure requirement set forth in Section E(vi); and (c) the Executed Agreement requirement set forth in Section E(viii); *provided*, that in order for any KJ Can Bid to constitute a Qualified Bid, KJ Can must submit an executed, binding irrevocable purchase agreement for the assets that are subject to such bid that otherwise satisfies the requirements of Section E (other than as expressly waived or modified herein), including that such bid not be subject to any financing or diligence contingencies.  Furthermore, the Bid Deposit requirement set forth in Section E(iv) shall be 10% of the cash purchase price set forth in a KJ Can Bid.  Notwithstanding anything contained in this Bidding Procedures Order or the Bidding Procedures, but subject to the proviso at the end of this sentence, Section I(i)(f) of the Auction Procedures does not apply to a KJ Can Bid to the extent it requires that overbids at the Auction

16

otherwise satisfy the requirements for Qualified Bids (and it being understood that to the extent that a KJ Can Bid is deemed actionable by the Debtors, the Debtors shall propose, in their good faith, reasonable discretion and in consultation with the Consultation Parties, an alternative overbid increment for the assets subject to the KJ Can Bid); *provided*, that nothing herein shall require the Debtors to accept or advance at the Auction any KJ Can Bid that the Debtors determine, in good faith and in their reasonable discretion, after consultation with the Consultation Parties, is not actionable, including because the transaction contemplated by the KJ Can Bid would preclude the Debtors from consummating a sale of all or substantially all of the Debtors' assets not subject to such bid.][4]

35.     All persons and entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Assets, the Auction, and any transaction contemplated herein.

36.     Notwithstanding any provision of the Bankruptcy Rules or the Local Rules stating to the contrary, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry and no automatic stay shall apply to this Bidding Procedures Order.

37.     All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

38.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

---

[4] Note: This language is subject to further discussion between KJ Can and the Debtors and may be modified.

39.    In the event there is any inconsistency between the Motion or the Bidding Procedures, on the one hand, and this Bidding Procedures Order, on the other, the terms of this Bidding Procedures Order shall govern.  In the event of any inconsistency between the Motion and the Bidding Procedures, the Bidding Procedures shall govern.

40.    This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bidding Procedures Order.  All matters arising from or related to the implementation of this Bidding Procedures Order may be brought before this Court as a contested matter, without the necessity of commencing an adversary proceeding.

# # #

<u>Submitted by</u>:

Jordi Guso
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

18

## **EXHIBIT 1**

**(BIDDING PROCEDURES)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                        Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]                     Case No.: 22-17842-PDR

        Debtors.                                              (Jointly Administered)

_____/

## BIDDING PROCEDURES

        On October 10, 2022 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

        On _____, 2023, the Bankruptcy Court entered an order [ECF No. [ _____ ] (the "Bidding Procedures Order")[2] approving, among other things, these bidding procedures (the "Bidding Procedures").

        These Bidding Procedures set forth the process by which the Debtors are authorized to solicit and select the highest or otherwise best bid or bids (each, a "Bid") for the Debtors' assets (including, for the avoidance of doubt, rights under leases or other contracts, certain causes of action, intellectual property rights and other intangible assets) (the "Assets"),[3] culminating in an auction (the "Auction") if more than one Qualified Bid (as defined herein) is received. The sale is contemplated to be implemented through either (i) a sale or sales under section 363(b) of the Bankruptcy Code (each, a "Sale Transaction") pursuant to the terms and conditions of an asset purchase agreement, or (ii) a transaction that will be consummated through a plan of a

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein have the meanings given to them in the *Debtors' Motion for an Order (I) Approving (A) Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Procedures for the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) The Form and Manner of Notice of the Sale Hearing, Assumption Procedures, and Auction Results, (D) Dates for an Auction and Sale Hearing, (E) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances, and (F) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing the Debtors to Provide Bid Protections, and (III) Granting Related Relief.*

[3] A Bid may also contemplate the acquisition of assets owned by non-Debtors.

reorganization (a "<u>Restructuring Transaction</u>" and together with a Sale Transaction, each a "<u>Transaction</u>").

**<u>Summary of Key Dates</u>**

The key dates for the Debtors' sale process are as follows. Such dates may be extended by the Debtors, in their reasonable discretion and in consultation with the Consultation Parties.[4]

| <u>Event</u> | <u>Date</u>[5] |
|---|---|
| Deadline to serve the Bidding Procedures Order | Within three (3) business days after entry of the Bidding Procedures Order |
| Deadline to file and serve initial Assumption Notice<br>Deadline to file proposed Sale Order | March 3, 2023 |
| Deadline to file the Stalking Horse Selection Notice and seek Bankruptcy Court approval of proposed Bid Protections (if any) | March 24, 2023 at 11:59 p.m. |
| Deadline to object to designation of Stalking Horse Bidder and/or proposed Bid Protections<br>Contract Objection Deadline (other than any objections based on adequate assurance of future performance, or objections subject to a later deadline pursuant to the Assumption and Assignment Procedures)<br>Sale Objection Deadline (other than any objection based on the manner in which the Auction was conducted or the designation of the Successful Bid or Back-Up Bid) | March 31, 2023 at 4:00 p.m. |
| Bid Deadline | April 24, 2023 at 12:00 p.m. |
| Auction (if necessary) | April 27, 2023 at 10:00 a.m. |
| Deadline to file Post-Auction Notice | Promptly following the conclusion of the Auction, but in no event later than 24 hours following the conclusion of the Auction |

---

[4]  Each "<u>Consultation Party</u>," and collectively, the "<u>Consultation Parties</u>" means: (i) Truist Bank, in its capacities as administrative agent under the Debtors' prepetition secured credit facility and debtor-in-possession credit facility (the "<u>DIP Facility</u>") (in such capacities, the "<u>Agent</u>"), and the Agent's counsel and financial advisor; and (ii) counsel, investment banker, and financial advisor to the Committee; *provided*, that no person or entity that constitutes a Potential Bidder, an Acceptable Bidder, a Qualified Bidder, a Stalking Horse Bidder, a Successful Bidder, or a Back-Up Bidder (each as defined herein) (as determined by the Debtors, in their reasonable discretion and in consultation with the Committee) shall be deemed a Consultation Party for so long as such person constitutes a Potential Bidder, an Acceptable Bidder, a Qualified Bidder, a Stalking Horse Bidder, a Successful Bidder, or a Back-Up Bidder.

[5]  All times are listed in Prevailing Eastern Time.

11892533-1

| Event | Date[5] |
|---|---|
| Deadline to object to (i) conduct of the Auction, (ii) the identity of the Successful Bidder or Back-Up Bidder, and (iii) adequate assurance of future performance by the Successful Bidder or Back-Up Bidder (such deadline, the "Post-Auction Sale Objection Deadline") | 4:00 p.m. on the date that is three (3) business days prior to the Sale Hearing |
| Deadline for Debtors to file a reply to objections to sale/assumption objections (and any other filings by parties in interest in support of the proposed Transaction) | 4:30 p.m. on the date that is two (2) business days prior to the Sale Hearing |
| Sale Hearing | May 11, 2023 at 1:30 p.m. |

**A.    Purchase Agreement; Restructuring Transaction Documentation**

The Debtors are soliciting and shall select the highest or otherwise best Bid for the Debtors' Assets.  Certain non-Debtors may also sell assets related to the Debtors' business, the acquisition of which may be contemplated or required by a Bid.  A Bid may take the form of (i) a Sale Transaction of all or substantially all of the Debtors' Assets pursuant to an asset purchase agreement to be consummated under section 363 of the Bankruptcy Code, or (ii) a Restructuring Transaction.

The Debtors have prepared a form of Asset Purchase Agreement (together with all ancillary documents and agreements, the "APA") for parties interested in acquiring the Assets pursuant to a Sale Transaction.  The Debtors intend to provide copies of the form APA to Acceptable Bidders and will also make such form APA available in the electronic data room established by the Debtors in connection with their sale process.

Parties interested in submitting Bids in the form of a Restructuring Transaction may do so by submitting a term sheet for a plan of reorganization (a "Plan Term Sheet").  The Debtors, in consultation with the Consultation Parties, reserve the right to modify these Bidding Procedures, including, without limitation, Qualified Bid requirements, as necessary or appropriate to reflect the submission and the Debtors' consideration of one or more Bids in the form of a Restructuring Transaction; *provided*, that in order for a Bid in the form of a Plan Term Sheet to constitute a Qualified Bid, among other things, the Debtors, in consultation with the Consultation Parties, must determine in good faith that such Bid (i) is capable of satisfying the requirements of section 1129 of the Bankruptcy Code, (ii) provides for the payment in full in cash on the Effective Date of (a) all allowed secured claims of the Prepetition Lenders (as defined herein) arising under the Debtors' prepetition secured credit facility and (b) all allowed claims arising under the Debtors' DIP Facility, and (iii) is capable of being consummated.  Any Bid in the form of a Plan Term Sheet satisfying the requirements of this paragraph may be determined by the Debtors, in consultation with the Consultation Parties, to be a Qualified Bid, Successful Bid, Stalking Horse Bid (as defined herein), or Back-Up Bid.

**B.      Due Diligence**

**(i)      Acceptable Bidder Designation**

For purposes of these Bidding Procedures, a "Potential Bidder" shall refer to any person or entity interested in submitting a Bid.

A Potential Bidder that (i) executes a confidentiality agreement on customary terms that are reasonably acceptable to the Debtors (a "Confidentiality Agreement"),[6] (ii) provides sufficient evidence, as reasonably determined by the Debtors, in consultation with the Consultation Parties, that the Potential Bidder intends to obtain due diligence and participate in the sale process for a bona fide purpose consistent with these Bidding Procedures and not for any other purpose, and (iii) provides evidence acceptable to the Debtors of such Potential Bidder's financial capability to consummate the Transaction, the adequacy of which will be assessed by the Debtors (with the assistance of their advisors) in consultation with the Consultation Parties (any such Potential Bidder being referred to as an "Acceptable Bidder"), will be eligible to receive due diligence materials and access to certain non-public information regarding the Assets. **Neither the Debtors nor their representatives will be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder.**

Each Acceptable Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding such bidder's (i) qualification as an Acceptable Bidder, (ii) the terms of the Potential Bidder's Bid, or (iii) the ability of the Potential Bidder to consummate the Transaction. Failure by a Potential Bidder to comply with reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with the Consultation Parties, to determine that such bidder does not qualify as an Acceptable Bidder, or that any Bid made by such bidder is not a Qualified Bid.

**(ii)      Access to Due Diligence**

The Debtors will provide each Acceptable Bidder with such information as is reasonably contemplated to enable such Acceptable Bidder to make a Bid for the Assets. The Debtors will also provide each Acceptable Bidder with reasonable due diligence information as requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request. The Debtors will post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic data room (the "Data Room"). The Debtors reserve the right, in consultation with the Consultation Parties, to restrict or limit access of any Acceptable Bidder to the Data Room if the Debtors determine, based on their reasonable business judgment, that certain information in the Data Room is sensitive, proprietary, or otherwise not appropriate for disclosure to any Acceptable Bidder.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors will not furnish any confidential information relating to the Debtors, the Debtors' Assets or liabilities, or the Transaction to any person except an Acceptable Bidder or such Acceptable

---

[6] Potential Bidders may obtain a form of Confidentiality Agreement by contacting the Debtors' advisors listed below.

Bidder's duly-authorized representatives, in each case, to the extent provided in and subject to the terms of the applicable Confidentiality Agreement.

The Debtors and their advisors will coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided*, that the Debtors may, after consultation with the Consultation Parties, decline to provide such additional information and diligence access to Acceptable Bidders who, in the Debtors' reasonable business judgment have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate their Bid.

No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline (as defined herein). Following the Bid Deadline, the Debtors may, in their reasonable discretion and in consultation with the Consultation Parties, furnish additional non-public information to any Qualified Bidder that submits a Qualified Bid, but shall have no obligation to do so.

Each Acceptable Bidder will be deemed to acknowledge and represent that it: (i) either directly or through its advisors has had an opportunity to conduct any and all due diligence regarding the Debtors' Assets and liabilities prior to making any Qualified Bid; (ii) has relied solely upon its own or its advisors' independent review, investigation, and/or inspection of any documents and/or the Assets and liabilities in making any Qualified Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Debtors' Assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or the Acceptable Bidder's proposed asset purchase agreement (including, in the case of any Stalking Horse Bidder, its Stalking Horse Agreement (as defined herein)) or Plan Term Sheet, as applicable. Neither the Debtors, the Consultation Parties, nor any of their respective employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors, or professionals are responsible for, and will bear no liability with respect to, any information obtained by Acceptable Bidders in connection with the Transaction.

---

**The Debtors have designated Rothschild & Co US Inc. to coordinate all reasonable requests for additional information and due diligence access.**
**Rothschild & Co US Inc.**
**1251 Avenue of the Americas,**
**New York, NY 10020**
**Email: ProjectBlast@rothschildandco.com**

---

(iii)    **No Communications Among Bidders**

There shall be no communications regarding the Transaction between or among any bidders, including any Acceptable Bidder, Qualified Bidder, or Stalking Horse Bidder, unless the Debtors, in consultation with the Consultation Parties, have previously authorized such communication in writing. The Debtors reserve the right, in their reasonable business judgment, in consultation with the Consultation Parties, to disqualify any bidder that the Debtors believe in

their reasonable judgement has communicated with another bidder in violation of these Bidding Procedures.

## C.      Stalking Horse Bidder and Bid Protections

Until March 24, 2023, the Debtors shall be authorized in the exercise of their business judgment and in consultation with the Consultation Parties, to: (i) select one or more bidders to act as stalking horse bidder(s) in connection with a Sale Transaction (each, a "Stalking Horse Bidder," and the bid of a Stalking Horse Bidder a "Stalking Horse Bid") and enter into an asset purchase agreement with respect to a Sale Transaction with such Stalking Horse Bidder (each, a "Stalking Horse Agreement") (which shall be binding, non-contingent, and accompanied by a Good Faith Deposit (as defined herein)), (ii) provide a breakup fee (the "Breakup Fee"), and/or (iii) agree to reimburse reasonable and documented out-of-pocket fees and expenses (the "Expense Reimbursement" and, together with the Breakup Fee, the "Bid Protections"), all as reasonably acceptable to the Debtors, after consultation with the Consultation Parties, and as otherwise provided by the Bidding Procedures Order.  The Debtors reserve the right, in consultation with the Consultation Parties, to select a Bid in the form of a Restructuring Transaction to be the Stalking Horse Bid.

No later than March 24, 2023 at 11:59 p.m. (Prevailing Eastern Time), the Debtors shall file with the Bankruptcy Court a notice of the Debtors' selection of the Stalking Horse Bidder and the Stalking Horse Bid (the "Stalking Horse Selection Notice"), which Stalking Horse Selection Notice shall describe any Bid Protections granted in connection with the Stalking Horse Bid and attach (i) a copy of a Stalking Horse Agreement that has been executed by, and is binding upon, the Stalking Horse Bidder and (ii) a proposed form of order authorizing and approving the Debtors' entry into and performance under the Stalking Horse Agreement (subject to the submission of higher or otherwise better offers for the Assets) and any Bid Protections being granted to the Stalking Horse Bidder (the "Stalking Horse Order").

Parties in interest may file objections (a "Stalking Horse Objection") to the designation of the Stalking Horse Bidder or any of the terms of the Stalking Horse Agreement, including to any of the proposed Bid Protections, no later than March 31, 2023 at 4:00 p.m. (Prevailing Eastern Time) (the "Stalking Horse Objection Deadline").  If one or more Stalking Horse Objections are timely filed, a hearing shall be held before the Bankruptcy Court on [ ● ], 2023, to consider the relief requested in the proposed Stalking Horse Order.  If no Stalking Horse Objections are received, or in the event that all such Stalking Horse Objections are resolved consensually, the proposed Stalking Horse Order may be entered without a hearing, unless otherwise required by the Stalking Horse Bidder.

## D.      Submission of Bids

Unless otherwise agreed to in writing by the Debtors, in consultation with the Consultation Parties, only Acceptable Bidders shall be permitted to submit a Bid.

## E.      Bid Requirements

To be eligible to participate in the Auction, any bidder (other than any Stalking Horse Bidder designated by the Debtors in consultation with the Consultation Parties) must deliver to the

Debtors and their advisors, a written, irrevocable offer that must be determined by the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, to satisfy each of the conditions set forth below (collectively, the "Bid Requirements").

A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions:

(i)     **Purpose**.  With respect to a proposed Sale Transaction, each bidder must state that the Bid includes an offer by such bidder to purchase some or all of the Assets, and identify the Assets with reasonable specificity and the particular liabilities, if any, such bidder seeks to assume.  With respect to a proposed Restructuring Transaction, each bidder must propose a Plan Term Sheet for the Debtors that includes the treatment of the Debtors' creditors that complies with the requirements of the Bankruptcy Code.

(ii)    **Purchase Price**.  With respect to a proposed Sale Transaction, each Bid must clearly set forth the purchase price to be paid.  With respect to a proposed Restructuring Transaction, each Bid must clearly set forth the cash or other consideration to be furnished, including and identifying separately any cash and non-cash components; *provided*, that in the event of a Restructuring Transaction, the Plan Term Sheet must provide for the payment, in cash, of the full outstanding amounts due under the Debtors' prepetition secured credit facility.

(iii)   **Minimum Bid**.  In the event a Stalking Horse Bidder is designated, each Bid must exceed (a) the Stalking Horse Bid (as determined by the Debtors in consultation with the Consultation Parties), *plus* (b) the amount of the Bid Protections payable to such Stalking Horse Bidder, *plus* (c) the minimum bid increment of $10 million (or such other amount as the Debtors may determine in consultation with the Consultation Parties, which amount may be higher or lower than $10 million).

(iv)    **Bid Deposit**.  Each Bid must be accompanied by a cash deposit (made by wire transfer or certified or cashier's check) equal to $50 million (the "Good Faith Deposit").  The Good Faith Deposit will be held in a segregated account established by the Debtors.

(v)     **Committed Financing**.  If a Bid is not accompanied by evidence of the bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction, in consultation with the Consultation Parties, that demonstrates that such bidder has received sufficient debt and/or equity funding commitments to satisfy such bidder's purchase price (in the case of a Sale Transaction), cash consideration (in the case of a Restructuring Transaction), and other obligations (including any assumed liabilities) under its Bid.  Such funding commitments or other financing must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants, conditions and term and termination provisions acceptable to the Debtors, in consultation with the Consultation Parties.

7

(vi)    **Pro Forma Capital Structure**.  Each Bid must include a description of the bidder's pro forma capital structure, if applicable.

(vii)   **Good Faith Offer**.  Each Bid must constitute, in the Debtors' reasonable judgment in consultation with the Consultation Parties, a good faith, bona fide offer to consummate the proposed Transaction set forth in such Bid.

(viii)  **Executed Agreement**.  Each Bid contemplating a Sale Transaction must be based on the APA (in the absence of a Stalking Horse Agreement), or the Stalking Horse Agreement if one exists, and each Bid contemplating a Restructuring Transaction must be based on a Plan Term Sheet.  Bids proposing a purchase of the Assets pursuant to an APA, must include a form of asset purchase agreement indicating any modifications proposed by such bidder to the form APA prepared by the Debtors or the Stalking Horse Agreement if one exists (the "Modified APA"), including those changes related to the purchase price.  Bids proposing a Plan Term Sheet must describe in reasonable detail the terms and conditions of such Restructuring Transaction and the treatment of various classes of creditor claims that complies with the applicable requirements of the Bankruptcy Code.  In each case, the Modified APA or Plan Term Sheet must be accompanied by a certification signed by an authorized representative of such bidder, pursuant to which such bidder proposes to effectuate the Transaction agreeing to proceed to negotiate, document, and close such Transaction if such Bid is determined by the Debtors, after consultation with the Consultation Parties, to be the highest or otherwise best Bid as provided herein.  Each Bid must also identify any non-Debtor assets to be acquired by such bidder in connection with or as contemplated by such Bid and the process to acquire such assets and accompanying timeline.

(ix)    **Contracts and Leases**.  Each Bid must identify an initial schedule of each executory contract and unexpired lease to be assumed and assigned to the bidder in connection with the Transaction.  Each Bid must identify with specificity the party responsible for satisfying cure amounts and other amounts that have accrued under assumed and assigned contracts and leases after the Petition Date and prior to Closing (as defined herein), including amounts that have accrued but have not yet become due prior to the Closing.

(x)     **No Contingencies**.  Each Bid must contain a clear statement that it is not conditioned on any contingency, including, among others, on obtaining any of the following (a) financing, (b) shareholder, board of directors, or other approvals, and/or (c) the outcome or completion of a due diligence review by the bidder.

(xi)    **Binding and Irrevocable**.  Each Bid must be irrevocable unless and until the Debtors accept a higher or otherwise better Bid and such bidder is not selected as the Back-Up Bidder.  The APA documenting such Bid most provide that, in the event the Bid is chosen as the Back-Up Bid, the Bid will remain irrevocable until the Debtors and the Successful Bidder consummate the Transaction.

(xii)   **Joint Bids**.  The Debtors will be authorized (but are not required) to accept joint Bids in their reasonable discretion, in consultation with the Consultation Parties, on a case-by-case basis.

(xiii)  **Adequate Assurance Information**.  Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the reasonable satisfaction of the Debtors, in consultation with the Consultation Parties, that such bidder (a) has the financial wherewithal and ability to consummate the Transaction covered by the Bid (the "Closing"), and (b) can provide adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and such bidder's willingness to perform, under any contracts that are proposed to be assumed and assigned to such party.  The Bid must also identify a contact person that parties may contact to obtain additional Adequate Assurance Information.  Adequate Assurance Information may include, without limitation, bank and/or financial statements, evidence of board authorization, and financial capacity/commitment letters.  The Adequate Assurance Information may be filed with the Bankruptcy Court by the Debtors.

(xiv)   **Identity**.  Each Bid must fully disclose the identity of each entity that will be participating in such Bid (including any equity owners or sponsors, if the purchaser is an entity formed for the purpose of consummating the proposed Transaction), and the complete terms of any such participation, along with sufficient evidence that the bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties.  A Bid must also fully disclose any connections or agreements with the Debtors, any known, potential, prospective bidder, or Qualified Bidder, or any officer, director, Insider (as such term is defined by the Bankruptcy Code) of the Debtors, or equity security holder of the Debtors.

(xv)    **Authorization**.  Each Bid must contain evidence that the bidder has obtained authorization or approval from its board of directors and, if required, its shareholders (or a comparable governing body reasonably acceptable to the Debtors in consultation with the Consultation Parties) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid.

(xvi)   **Costs and Expenses; No Fees**.  (a) Each bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed Transaction; (b) by submitting its Bid, each bidder agrees to waive its right to request or receive fees or reimbursement of expenses on any basis, including under section 503(b) of the Bankruptcy Code; and (c) each Bid must expressly state that the Bid does not entitle the bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement; *provided,* that, subject to the terms of the Bidding Procedures Order, the Debtors are authorized in their discretion in consultation with the Consultation Parties to provide the Bid Protections to one or more Stalking Horse Bidders in accordance with these Bidding Procedures.

9

(xvii) **Adherence to Bidding Procedures**.  By submitting its Bid, each bidder is agreeing to (a) abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction and (b) serve as Back-Up Bidder, if its Bid is selected as the next-highest or otherwise second-best Bid after the Successful Bid with respect to the applicable Assets.

(xviii) **Regulatory Approvals and Covenants**.  A Bid must, if applicable, set forth the regulatory and third-party approvals, including any filings or disclosures necessary under the Hart-Scott-Rodino Act, required for the bidder to consummate the Transaction and the time period within which such bidder expects to receive such approvals (and in the case that receipt of any such approval is expected to take more than thirty (30) days following execution and delivery of the asset purchase agreement or Plan Term Sheet, as applicable, those actions such bidder will take to ensure receipt of such approvals as promptly as possible).

(xix) **As-Is, Where-Is**.  Each Bid must include a written acknowledgement and representation that the bidder (a) has had an opportunity to conduct any and all due diligence regarding the Debtors' Assets and liabilities prior to making its Bid, (b) has relied solely upon its own or its advisors' independent review, investigation, and/or inspection of any documents and/or the Assets and liabilities in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, liabilities, or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in such bidder's proposed asset purchase agreement, or Plan Term Sheet, as applicable.

(xx) **Conditions to Closing**.  Each Bid must identify with particularity each condition to Closing.

(xxi) **Time Frame for Closing**.  A Bid must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame reasonably acceptable to the Debtors in consultation with the Consultation Parties.

(xxii) **Consent to Jurisdiction**.  All bidders must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, any chapter 11 plan in the Debtors' chapter 11 cases, the Transaction documents, and the Closing, as applicable.

(xxiii) **Bid Deadline**.  Each Bid must be received by each of the following parties, in writing or electronically, so as to be **actually received** no later than **April 24, 2023 at 12:00 p.m.**, Prevailing Eastern Time (the "Bid Deadline"):

a.      Vital Pharmaceuticals, Inc., 1600 N. Park Drive, Weston, FL 33326, Attn: Greg Robbins (Greg.Robbins@bangenergy.com) and Gregg Metzger (Gregg.Metzger@bangenergy.com);

b.      Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004, Attn: Andrew Sorkin (andrew.sorkin@lw.com);

c.      Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 Attn: Liza Burton (liza.burton@lw.com) and Jonathan Weichselbaum (jon.weichselbaum@lw.com);

d.      Berger Singerman LLP, 1450 Brickell Avenue, Unit 1900, Miami, FL 33131, Attn: Jordi Guso (JGuso@bergersingerman.com) and Michael Niles (mniles@bergersingerman.com);

e.      Rothschild & Co US Inc., 1251 Avenue of the Americas, 33rd Fl., New York, NY 10020; (ProjectBlast@rothschildandco.com);

f.      Truist Bank, 10500 Little Patuxent Parkway Suite 450, Columbia, MD 21046, Mail Code 420-20-01-00, Attn: Jade Silver (Jade.Silver@truist.com);

g.      Moore & Van Allen PLLC, 100 North Tryon Street, Suite 4700, Charlotte, NC 28202-4003, Attn: Luis Lluberas (luislluberas@mvalaw.com), Steve Gruendel (stevegruendel@mvalaw.com), and Cole Richins (colerichins@mvalaw.com);

h.      Shutts & Bowen LLP, 200 South Biscayne Blvd., Suite 4100, Miami, FL 33131, Attn: Aliette D. Rodz (ARodz@shutts.com), Martha M. Ferral (MFerral@shutts.com), Peter H. Levitt (plevitt@shutts.com), and Harris J. Koroglu (hkoroglu@shutts.com);

i.      Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, NY 10020, Attn: Jeffrey Cohen (jcohen@lowenstein.com), Eric Chafetz (echafetz@lowenstein.com), and Lindsay Sklar (lsklar@lowenstein.com);

j.      Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, NJ 07068, Attn: Erica Mannix (emannix@lowenstein.com));

k.      Sequor Law, P.A., 1111 Brickell Avenue, Suite 1250, Miami, FL 33131, Attn: Leyza Blanco (lblanco@sequorlaw.com) and Fernando Menendez (fmenendez@sequorlaw.com); and

l.      Miller Buckfire & Co. LLC, 787 7th Ave 5th floor, New York, NY 10019, Attn: John D'Amico (john.damico@millerbuckfire.com) and James Doak (james.doak@millerbuckfire.com)

Bids fulfilling all of the preceding requirements, as determined by the Debtors and their advisors, in their reasonable business judgment and in consultation with the Consultation Parties, will be deemed to be "Qualified Bids," and those parties submitting Qualified Bids will be deemed to be "Qualified Bidders."  For the avoidance of doubt, and notwithstanding anything herein, any Stalking Horse Bidder (who complies with the Bid Requirements) will be deemed to be a Qualified Bidder and any Stalking Horse Agreement will be deemed a Qualified Bid, which qualify such Stalking Horse Bidder to participate in the Auction (if any).  If a Stalking Horse Bid is chosen as the Successful Bid, the rights and obligations of the Stalking Horse Bidder shall be as set forth in the Stalking Horse Agreement (as the same may be modified in connection with the Auction).

All information disclosed by any bidder in connection with all of the preceding requirements will be made available by the Debtors to the Consultation Parties promptly upon the Debtors' receipt thereof but in any event no later than the earlier of one (1) business day or two (2) calendar days following the Bid Deadline or the Debtors' receipt of such information (whichever is later); *provided,* that any confidential financing and/or equity commitment documents received from a bidder shall only be shared with the Consultation Parties on a professional-eyes'-only basis.  The Debtors reserve the right, in consultation with the Consultation Parties, to work with any bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.

In addition, the Debtors, in consultation with the Consultation Parties, reserve the right to waive any of the Bid Requirements set forth above and deem a Bid to be a Qualified Bid notwithstanding any non-compliance with such requirements.  Within three (3) business days after the Bid Deadline, the Debtors and their advisors, in consultation with the Consultation Parties, will determine which bidders are Qualified Bidders and will notify such bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to bid at the Auction.  Any Bid that is not deemed a Qualified Bid will not be considered by the Debtors.

## F.    Evaluation of Qualified Bids and Designation of the Starting Bid

Prior to the Auction, the Debtors and their advisors will evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, the highest or otherwise best Bid (the "Starting Bid").    In determining the Starting Bid, the Debtors will take into account, among other things: (i) the amount and nature of consideration offered in each Qualified Bid, and, in the case of a Bid in the form of a Plan Term Sheet, the proposed treatment of the creditors thereunder, (ii) the impact on customers, vendors, and employees, (iii) the certainty of a Qualified Bid leading to a consummated Transaction, (iv) the execution risk attendant to any submitted Bids, (v) the number, type, and nature of any changes to (as applicable) the APA or the Stalking Horse Agreement, if any, requested by the Qualified Bidder, including the type and amount of Assets sought to be purchased and obligations to be assumed in the Qualified Bid, (vi) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified

12

Bid, taking into account any Stalking Horse Bidder's rights to any Bid Protections or the structure, confirmability, and feasibility of a Plan Term Sheet's proposed chapter 11 plan including, the time and costs necessary to negotiate, document, and confirm the proposed chapter 11 plan, (vii) the tax consequences of such Qualified Bid, (viii) the assumption of liabilities, including obligations under contracts and leases, and (ix) the cure amounts to be paid (collectively, the "Evaluation Criteria").

Not later than one (1) business day prior to the date of the Auction, the Debtors will (i) notify the Consultation Parties as to which Qualified Bid is the Starting Bid, and (ii) distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid and to the Consultation Parties.

For the avoidance of doubt, whenever these Bidding Procedures refer to the highest or otherwise best Bid, such determination shall take into account the Evaluation Criteria and any other factors that Debtors, in consultation with the Consultation Parties, reasonably deem relevant to the value of the applicable Bid to the Debtors' estates.

**G.    Only One Qualified Bid**

If only one Qualified Bid is received by the Bid Deadline and such Bid is acceptable to the Debtors after consultation with the Consultation Parties, then the Auction will not occur, the sole Qualified Bidder will be deemed the Successful Bidder, and the Debtors will pursue entry of an order by the Bankruptcy Court approving and authorizing the Transaction to the sole Bidder at the Sale Hearing (as defined herein).

**H.    Credit Bidding**

Notwithstanding anything else contained in these Bidding Procedures, the lenders under the Debtors' prepetition secured credit facility and debtor-in-possession credit facility (the "Prepetition Lenders") with the Agent, shall have the right, subject in all respects to the Bankruptcy Code and other applicable law, to credit bid all or any portion of their allowed secured claims in any Sale Transaction of the Assets constituting the collateral of the Prepetition Lenders under the prepetition secured credit facility at the Auction to the extent provided in section 363(k) of the Bankruptcy Code or other applicable law, in accordance with the applicable provisions of the documents governing such debt obligations; *provided*, that for the avoidance of doubt, (i) the foregoing shall not impair or waive any challenge rights preserved pursuant to the DIP Order or any parties' right to object to selection or approval of such credit bid based on such challenge rights or for good cause shown, and (ii) the Debtors, in consultation with the Committee, may take into account any such objection in evaluating such credit bid.

**I.    Auction**

If more than one Qualified Bid is received by the Bid Deadline, the Debtors will conduct the Auction with respect to the Debtors' Assets. For the avoidance of doubt, the Debtors may also conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets. The Auction will commence on **April 27, 2023, at 10:00 a.m., Prevailing Eastern Time**, or such later time the Debtors reasonably determine at: (i) the offices of Latham & Watkins LLP, located at 1271 Avenue of the Americas, New York, New York 10020; (ii) telephonically; or (iii)

13

by video via Zoom, or other place (or by such other electronic means) as the Debtors reasonably determine; *provided*, that the Debtors timely notify all Qualified Bidders and other invitees of the time and place of the Auction, and for the avoidance of any doubt, the Auction is subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Auction to a later date.

      **(i)**      **The Auction Procedures**

The Auction will be conducted in accordance with the following procedures (the "<u>Auction Procedures</u>"):

      a.      the Auction will be conducted openly;

      b.      only the Qualified Bidders, including any Stalking Horse Bidder, will be entitled to bid at the Auction;

      c.      the Qualified Bidders, including any Stalking Horse Bidder, must appear in person, telephonically, or by video via Zoom, or through duly-authorized representatives at the Auction;

      d.      only the duly-authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidder) and the Consultation Parties will be permitted to attend the Auction; *provided*, that, in addition, any party in interest that requests permission and is granted permission from the Debtors, in consultation with the Consultation Parties, to attend the Auction shall also be permitted to attend;

      e.      bidding at the Auction will begin at the Starting Bid;

      f.      subsequent Bids at the Auction, including any Bids by any Stalking Horse Bidder, will be binding and irrevocable and must (i) be made in minimum increments of $10 million (or such other amount as the Debtors may determine in consultation with the Consultation Parties, which amount may be higher or lower than $10 million) of additional value, if applicable, and (ii) otherwise satisfy the requirements for a Qualified Bid set forth above (provided that the Bid Deadline will not apply);

      g.      each Qualified Bidder will be informed of the terms of the previous Bids and the Debtors shall, during the course of the Auction, promptly inform each Qualified Bidder of which subsequent Bids reflect, in the Debtors' reasonable business judgment, and in consultation with the Consultation Parties, the highest or otherwise best Bid for the applicable Assets;

      h.      the Auction will be transcribed to ensure an accurate recording of the bidding at the Auction and the transcript will be filed with the Bankruptcy Court;

i.     each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Transaction;

j.     the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then prevailing highest or otherwise best Bid, subject to the Debtors' right to require, in consultation with the Consultation Parties, last and final Bids to be submitted on a "blind" basis;

k.     the Debtors reserve the right, in their reasonable business judgment and in consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, may require to establish that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Transaction at the prevailing amount; and

l.     the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors, after consultation with the Consultation Parties, from time to time on the record at the Auction; *provided*, that such other Auction Procedures are (i) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, or any other order of the Bankruptcy Court, (ii) disclosed orally or in writing to all Qualified Bidders and other attendees at the Auction and recorded on the record, and (iii) determined by the Debtors, in good faith and in consultation with the Consultation Parties, to further the goal of attaining the highest or otherwise best offer for the Assets.

For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors in consultation with their outside legal counsel).

## J.     Acceptance of the Successful Bid or Successful Bids

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, will identify the highest or otherwise best Qualified Bid or Qualified Bids for the Assets (each, a "Successful Bid," and each person or entity submitting a Successful Bid, a "Successful Bidder"), which will be determined by considering, among other things, (i) the type and amount of Assets sought to be acquired in the Bid or Bids and whether such Assets should or can be severed from other Assets (whether subject to competing Bids or otherwise), (ii) the total expected consideration to be received by the Debtors and the expected net benefit to the estates, in each case, taking into

account any Stalking Horse Bidder's rights to any Bid Protections, (iii) the Qualified Bidder's or Qualified Bidders' ability to close a transaction and the timing thereof (including any anticipated delays to Closing and the cost to the Debtors of such delays), and other matters affecting the execution risk associated with a particular Bid or Bids, (iv) the impact on customers, vendors, and employees, (v) the certainty of the Debtors being able to consummate a successful Transaction, and (vi) any other criteria, including the Evaluation Criteria, as may be considered by the Debtors in their reasonable business judgment (including any considerations raised by the Consultation Parties that the Debtors determine, in their reasonable business judgment, are pertinent to the determination of the highest or otherwise best Bid).

If a Stalking Horse Bid is chosen as the Successful Bid, the rights and obligations of the Stalking Horse Bidder shall be as set forth in the Stalking Horse Agreement (as the same may be modified in connection with the Auction).

The Successful Bidder and the Debtors shall, as soon as commercially reasonably practicable after the conclusion of the Auction, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid were made.  In addition, the Debtors reserve the right to require the Successful Bidder (or Back-Up Bidder, if applicable) to increase its Good Faith Deposit, *provided* that, in no event shall the Good Faith Deposit be increased by more than $50 million.

The Debtors shall file a notice substantially in the form annexed to the Bidding Procedures Order as **Exhibit 4** (the "Post-Auction Notice") identifying the Successful Bidder, together with financial and other information sufficient to demonstrate adequate assurance of future performance of Assigned Contracts (including the name of the Successful Bidder and a description of its business) and the proposed asset purchase agreement with the Successful Bidder, no later than twenty four (24) hours after the conclusion of the Auction.  Such Post-Auction Notice shall also identify the Back-Up Bidder (if any) and contain either (i) a summary of the material terms of the Back-Up Bid or (ii) proposed asset purchase agreement with the Back-Up Bidder.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing, at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (i) the Auction was conducted, and the Successful Bidder was selected, in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure, and (iii) consummation of the Successful Bid will provide the highest or otherwise best value for the Debtors' Assets and is in the best interests of the Debtors' estates.

If an Auction is held, the Debtors will be deemed to have accepted a Qualified Bid only when (i) such Qualified Bid is declared a Successful Bid at the Auction, and (ii) definitive documentation has been executed in respect thereof.  Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid and entry of an order approving such Successful Bid (the "Sale Order"), which Sale Order may be (but is not required to be) the order confirming a chapter 11 plan.

**K.     Sale Hearing**

A hearing before the Bankruptcy Court to consider approval of the Successful Bid (the "Sale Hearing"), pursuant to which the Debtors and the Successful Bidder will consummate the Sale Transaction, will be held on **May 11, 2023 at 1:30 p.m.,** Prevailing Eastern Time, before the Bankruptcy Court.  The Sale Hearing may also be the hearing to consider confirmation of a chapter 11 plan.

**The Sale Hearing may be continued to a later date by the Debtors, in consultation with the Consultation Parties, by sending notice prior to, or making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtors will present the Successful Bid to the Bankruptcy Court for approval.

**L.     Designation of Back-Up Bidder**

The Qualified Bid that the Debtors determine in their reasonable business judgment (in consultation with the Consultation Parties), is the next-highest or otherwise second-best Bid will be designated the "Back-Up Bid" and the bidder submitting such Back-Up Bid, the "Back-Up Bidder."  The Back-Up Bidder shall be required to keep the Back-Up Bid open and irrevocable until the closing of the transaction with the Successful Bidder.  Following entry of the Sale Order, if the Successful Bidder fails to consummate the Successful Bid, the Debtors will be authorized, but not required, in consultation with the Consultation Parties, to designate the Back-Up Bid to be the new Successful Bid and consummate the transaction pursuant to the Back-Up Bid as soon as commercially reasonably practicable without further Bankruptcy Court order; *provided* that the Back-Up Bid shall be subject to Bankruptcy Court approval in connection with the Bankruptcy Court's approval of the Successful Bid.

**M.     Return of Good Faith Deposit to Qualified Bidders that Submit Qualified Bids**

The Good Faith Deposit of the Successful Bidder will, upon consummation of the Successful Bid, become property of the Debtors' estates and be credited against any cash consideration payable by the Successful Bidder in connection with the Successful Bid.  If the Successful Bidder (or Back-Up Bidder, if applicable) fails to consummate the Successful Bid (or Back-Up Bid, if applicable), then the Good Faith Deposit of such Successful Bidder (or Back-Up Bidder, if applicable) will be irrevocably forfeited to the Debtors and may be retained by the Debtors as damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, in each case, subject to the terms and conditions of the asset purchase agreement or Plan Term Sheet with the Successful Bidder (or Back-Up Bidder, as applicable).

The Good Faith Deposit (including interest (if any)) of any unsuccessful Qualified Bidders (except for the Successful Bidder and the Back-Up Bidder) will be returned within the earlier of five (5) business days after the conclusion of the Auction or upon the permanent withdrawal of the proposed Transaction of the Debtors' Assets by the Debtors.  The Good Faith Deposit (including any interest (if any)) of the Back-Up Bidder, if any, will be returned to such Back-Up Bidder no

17

later than five (5) business days after the Closing with the Successful Bidder for the Assets bid upon by such Back-Up Bidder.

Except as set forth in the first paragraph of this Section M, all deposits shall be held in a segregated account maintained by the Debtors and at no time shall be deemed property of the Debtors' estates absent further order of the Bankruptcy Court.

## N.    Consent to Jurisdiction

All Qualified Bidders at the Auction will be deemed to have (i) consented to the jurisdiction of the Bankruptcy Court, (ii) waived any right to a jury trial in connection with any disputes relating to the Transaction, the Auction, the construction and enforcement of these Bidding Procedures, as applicable, and (iii) consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the sale or bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Bankruptcy Court on an expedited basis.

## O.    Fiduciary Out

Nothing in these Bidding Procedures will require any director, manager or officer of any Debtor to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, that would violate his or her fiduciary duties to any Debtor.

## P.    Sale Is As Is/Where Is

The Assets sold pursuant to these Bidding Procedures will be conveyed at the Closing in their then present condition, "as is, with all faults, and without any warranty whatsoever, express or implied," except as otherwise expressly provided in the asset purchase agreement with the Successful Bidder.

## Q.    Reservation of Rights

The Debtors reserve their rights, in consultation with the Consultation Parties, to modify these Bidding Procedures in good faith, including by setting additional procedures for an Auction, to further the goal of attaining the highest or otherwise best offer for the Assets, or impose, at or prior to the Auction, additional customary terms and conditions on the Transaction for the Assets. The Debtors shall provide notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidder.

All parties expressly reserve all of their rights (and do not waive any such rights) to seek Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, the Transaction, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

For the avoidance of doubt and notwithstanding anything herein to the contrary, nothing in these Bidding Procedures shall, or shall be construed to, in any way amend, impair, prejudice, alter, or otherwise modify the terms of the Debtors' postpetition financing facility, or the rights of any party thereunder or under the DIP Order.

11892533-1

**<u>EXHIBIT 2</u>**

**(SALE NOTICE)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-17842-PDR |
| Debtors. | (Jointly Administered) |
| _____/ | |

**NOTICE OF PROPOSED SALE,
BIDDING PROCEDURES, AUCTION, AND SALE HEARING**

  **PLEASE TAKE NOTICE** that, on October 10, 2022, the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed voluntary petitions commencing these cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

  **PLEASE TAKE FURTHER NOTICE** that, on _____, 2023, the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") entered an order [ECF No. _____] (the "Bidding Procedures Order")[2]:

   i. approving proposed bidding procedures (the "Bidding Procedures"), attached as **Exhibit 1** to the Bidding Procedures Order, by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all of their assets (the "Assets") through either (a) one or more sales of the Assets (each, a "Sale Transaction") or (b) a transaction through a plan of reorganization;

   ii. approving the Bid Protections, as defined and described in the Bidding Procedures;

   iii. establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures");

   iv. approving the form and manner of the Sale Notice, attached as **Exhibit 2** to the Bidding Procedures Order;

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

    v.     approving the form and manner of the Assumption Notice, attached as **Exhibit 3** to the Bidding Procedures Order;

    vi.    approving the form and manner of the Post-Auction Notice, attached as **Exhibit 4** to the Bidding Procedures Order;

    vii.   scheduling a date for an auction if the Debtors receive one or more Qualified Bids (the "Auction");

    viii.  scheduling a hearing to approve one or more Sale Transactions, as necessary (the "Sale Hearing"); and

    ix.    granting related relief.

**ALL INTERESTED OR POTENTIALLY AFFECTED PARTIES SHOULD CAREFULLY READ THE BIDDING PROCEDURES AND THE BIDDING PROCEDURES ORDER.**

**PLEASE TAKE FURTHER NOTICE** that any party that wishes to take part in the sale process contemplated by the Bidding Procedures must submit a Bid for the Assets in accordance with the terms and conditions of the Bidding Procedures by **April 24, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Bid Deadline").[3]

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order and the Bidding Procedures, if the Debtors receive more than one Qualified Bid for the Assets, the Debtors will conduct the Auction on **April 27, 2023 at 10:00 a.m. (Prevailing Eastern Time)**, or such later time the Debtors reasonably determine at: (a) the offices of Latham & Watkins LLP, located at 1271 Avenue of the Americas, New York, New York 10020; (b) telephonically; or (c) by video via Zoom, or other place (or by such other electronic means) as the Debtors reasonably determine; *provided*, that the Debtors shall timely notify all Qualified Bidders, the Consultation Parties, and all other parties entitled to attend the Auction of such later time or other place. The Debtors have the right to adjourn or cancel the Auction at or prior to the Auction.

**PLEASE TAKE FURTHER NOTICE** that only the Debtors, the Consultation Parties, Qualified Bidders, the U.S. Trustee, and/or other parties in interest that request permission and are granted permission from the Debtors to attend the Auction, in each case, along with their duly-authorized representatives, shall be entitled to attend the Auction, and only Qualified Bidders shall be entitled to bid at the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of a Sale Transaction and the transfer of the Assets free and clear of all liens, claims, interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code will be held before the Honorable Judge Peter D. Russin, United States Bankruptcy Judge for the Southern District of Florida, at the Bankruptcy Court, 299 E. Broward Blvd., Courtroom 112, Fort Lauderdale, FL

---

[3] Pursuant to the Bidding Procedures, a Bid may contemplate the acquisition of assets of non-Debtors.

33301 on **May 11, 2023 at 1:30 p.m. (Prevailing Eastern Time)**.[4]  The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.

      **PLEASE TAKE FURTHER NOTICE** that any objections to the Sale Transaction (each a "Sale Objection") must be filed no later than **March 31, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline"); *provided* that, notwithstanding the foregoing, any objections to the outcome of the Sale Transaction, the conduct of the Auction or designation or court-approval of the Successful Bid or Back-Up Bid, or Adequate Assurance Objections must be filed no later than 4:00 p.m. (Prevailing Eastern Time) on the date that is three (3) business days prior to the commencement of the Sale Hearing.

## CONSEQUENCES OF FAILING TO TIMELY ASSERT A SALE OBJECTION

      **ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE A SALE OBJECTION ON OR BEFORE THE APPLICABLE DEADLINE IN ACCORDANCE WITH THE ENTERED BIDDING PROCEDURES ORDER MAY BE FOREVER BARRED FROM ASSERTING ANY SALE OBJECTION TO THE SALE TRANSACTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE TRANSFERRED ASSETS OF THE DEBTORS' ESTATES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS EFFECTED THEREUNDER.**

      **PLEASE TAKE FURTHER NOTICE** that this Sale Notice is subject to the terms and conditions of the Bidding Procedures Order, with the Bidding Procedures Order controlling in the event of any conflict.  The Debtors encourage parties in interest to review such document in its entirety.  Parties interested in receiving more information regarding the sale of the Assets and/or copies of any related document, including the Bidding Procedures Order, may make a written request to counsel to the Debtors, Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004 (Attn: Andrew Sorkin (andrew.sorkin@lw.com)) and Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: Liza Burton (liza.burton@lw.com) and Jonathan Weichselbaum (jon.weichselbaum@lw.com)).

      Copies of the Bidding Procedures, the Bidding Procedures Order, and this Sale Notice may be examined by interested parties free of charge at the website established for these chapter 11 cases by the Debtors' court-approved noticing, claims, and solicitation agent, Stretto, Inc., at https://cases.stretto.com/VitalPharmaceuticals.

---

[4]  To the extent the Sale Hearing occurs virtually, participation instructions will be provided on the agenda filed on the docket prior to the Sale Hearing.

Dated: _____, 2023          Respectfully submitted,
      Miami, Florida

                                                  */s/ Draft*

George A. Davis (admitted *pro hac vice*)          Jordi Guso
Liza L. Burton (admitted *pro hac vice*)          Florida Bar No. 863580
Tianjiao ("TJ") Li (admitted *pro hac vice*)          Michael J. Niles
Brian S. Rosen (admitted *pro hac vice*)          Florida Bar No. 107203
Jonathan J. Weichselbaum (admitted *pro hac vice*)          **BERGER SINGERMAN LLP**
**LATHAM & WATKINS LLP**          1450 Brickell Avenue, Suite 1900
1271 Avenue of the Americas          Miami, FL 33131
New York, NY 10020          Telephone:  (305) 755-9500
Telephone:  (212) 906-1200          Email:  jguso@bergersingerman.com
Email:  george.davis@lw.com                     mniles@bergersingerman.com
       liza.burton@lw.com
       tj.li@lw.com
       brian.rosen@lw.com
       jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*Co-Counsel for the Debtors and Debtors in Possession*

**<u>EXHIBIT 3</u>**

**(ASSUMPTION NOTICE)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,[1]

Debtors.

_____/

Chapter 11 Cases

Case No.: 22-17842-PDR

(Jointly Administered)

**NOTICE OF (I) EXECUTORY CONTRACTS AND
UNEXPIRED LEASES THAT MAY BE ASSUMED
AND ASSIGNED IN CONNECTION WITH A SALE OF THE DEBTORS'
ASSETS AND (II) THE PROPOSED CURE AMOUNTS WITH RESPECT THERETO**

**YOU ARE RECEIVING THIS NOTICE OF (I) EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH A SALE OF THE DEBTORS' ASSETS AND (II) THE PROPOSED CURE AMOUNTS WITH RESPECT THERETO (THIS "<u>ASSUMPTION NOTICE</u>") BECAUSE YOU MAY BE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS. PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN.**

**PLEASE TAKE NOTICE** that, on _____, 2023, the United States Bankruptcy Court for the Southern District of Florida (the "<u>Bankruptcy Court</u>") entered an order [ECF No. _____] (the "<u>Bidding Procedures Order</u>")[2]:

    i.    approving proposed bidding procedures (the "<u>Bidding Procedures</u>"), attached as **Exhibit 1** to the Bidding Procedures Order, by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all of their assets (the "<u>Assets</u>") through either (a) one or more sales of the Assets (each, a "<u>Sale Transaction</u>") or (b) a transaction through a plan of reorganization;

    ii.    approving the Bid Protections, as defined and described in the Bidding Procedures;

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

iii.    establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "<u>Assumption and Assignment Procedures</u>");

iv.    approving the form and manner of the Sale Notice, attached as **Exhibit 2** to the Bidding Procedures Order;

v.    approving the form and manner of the Assumption Notice, attached as **Exhibit 3** to the Bidding Procedures Order;

vi.    approving the form and manner of the Post-Auction Notice, attached as **Exhibit 4** to the Bidding Procedures Order;

vii.    scheduling a date for an auction if the Debtors receive one or more Qualified Bids (the "<u>Auction</u>");

viii.    scheduling a hearing to approve one or more Sale Transactions, as necessary (the "<u>Sale Hearing</u>"); and

ix.    granting related relief.

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures Order approves procedures for (i) the assumption of certain executory contracts and unexpired leases that the Debtors may seek to assume and assign to a Successful Bidder in connection with a Sale Transaction, if one occurs (collectively, the "<u>Assigned Contracts</u>") and (ii) the determination of related Cure Amounts (as defined below).

**PLEASE TAKE FURTHER NOTICE** that the Debtors are parties to numerous executory contracts and unexpired leases and hereby file this notice identifying (i) the Assigned Contracts, and (ii) the proposed amounts, if any, the Debtors believe are owed to the counterparties to the Assigned Contracts to cure any defaults or arrears existing under the Assigned Contract (the "<u>Cure Amounts</u>"), both as set forth on **Exhibit 1** attached hereto.  Other than the Cure Amounts listed on **Exhibit 1**, the Debtors are not aware of any amounts due and owing under the Assigned Contracts listed therein.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing is expected to be held before the Honorable Judge Peter D. Russin, United States Bankruptcy Judge for the Southern District of Florida, at the Bankruptcy Court, 299 E. Broward Blvd., Courtroom 112, Fort Lauderdale, FL 33301 on **May 11, 2023 at 1:30 p.m. (Prevailing Eastern Time)**.[3]  The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that the listing of an Assigned Contract on **Exhibit 1** does not constitute an admission that such Assigned Contract is an executory contract

---

[3] To the extent the Sale Hearing occurs virtually, participation instructions will be provided on the agenda filed on the docket prior to the Sale Hearing.

or unexpired lease as contemplated by section 365(a) of the Bankruptcy Code or that the Debtors have any liability thereunder, and the Debtors expressly reserve all of their rights, claims, causes of action, and defenses with respect to the Assigned Contracts listed on **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that to the extent a counterparty to an Assigned Contract listed on this Assumption Notice objects to the proposed assumption and assignment of the applicable Assigned Contract (other than an Adequate Assurance Objection (as defined below) or the proposed Cure Amounts, if any, such counterparty must file an objection (a "Contract Objection") in accordance with the procedures described herein and in the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that all Contract Objections must (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Amounts are required, if any, (ii) include appropriate documentation in support thereof, and (iii) be filed no later than **March 31, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Contract Objection Deadline"), except as set forth below.

**PLEASE TAKE FURTHER NOTICE THAT IF A COUNTERPARTY TO AN ASSIGNED CONTRACT FILES A CONTRACT OBJECTION IN A MANNER THAT IS CONSISTENT WITH THE REQUIREMENTS SET FORTH HEREIN, AND THE PARTIES ARE UNABLE TO CONSENSUALLY RESOLVE THE DISPUTE PRIOR TO THE SALE HEARING, THE AMOUNT TO BE PAID OR RESERVED WITH RESPECT TO SUCH OBJECTION WILL BE DETERMINED AT THE SALE HEARING, SUCH LATER HEARING DATE THAT THE DEBTORS DETERMINE IN THEIR DISCRETION, OR SUCH OTHER DATE DETERMINED BY THE BANKRUPTCY COURT. ALL OTHER OBJECTIONS TO THE PROPOSED ASSUMPTION OR PROPOSED ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' RIGHT, TITLE, AND INTEREST IN, TO, AND UNDER THE ASSIGNED CONTRACTS WILL BE HEARD AT THE SALE HEARING.**

Any objections to the ability of the Successful Bidder or Back-Up Bidder (as applicable) to provide adequate assurance of future performance (each, an "Adequate Assurance Objection") must be filed with the Bankruptcy Court no later than 4:00 p.m. (Prevailing Eastern Time) on the date that is three (3) business days prior to the commencement of the Sale Hearing (the "Adequate Assurance Objection Deadline"), or, if applicable, any later deadline established pursuant to the Bidding Procedures Order and the procedures described below. The identity of the Successful Bidder and Back-Up Bidder (if any) shall be disclosed in a subsequent notice to be delivered to counterparties to the applicable Assigned Contracts following the Auction.

**PLEASE TAKE FURTHER NOTICE** that if the counterparty to an Assigned Contract does not timely file a Contract Objection that is consistent with the requirements set forth above by the Contract Objection Deadline (with respect to all objections other than Adequate Assurance Objections) or the Adequate Assurance Objection Deadline (with respect to Adequate Assurance Objections only), such counterparty will be deemed to have consented to the assumption and assignment of the Assigned Contract to a Successful Bidder, notwithstanding any provision or restriction on assumption or assignment in the Assigned Contract, and shall be forever barred from

3

asserting any objection with regard to such assumption and assignment and/or Cure Amounts set forth in **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that although the Debtors have made a good-faith effort to identify all Assigned Contracts that might be assumed and assigned in connection with a Sale Transaction, the Debtors or the Successful Bidder may identify certain other executory contracts that should be assumed and assigned in connection with a Sale Transaction. Accordingly, the Debtors have reserved the right, at any time before the closing of a Sale Transaction, to (i) supplement the list of Assigned Contracts on this Assumption Notice with previously omitted Assigned Contracts in accordance with the definitive agreement for a Sale Transaction, (ii) remove an Assigned Contract from the list of contracts ultimately selected as an Assigned Contract that may be assumed and assigned in connection with a Sale Transaction, and/or (iii) modify the previously stated Cure Amounts associated with any Assigned Contract; *provided*, that up until the closing of the Sale Transaction, the Debtors may seek to reject any Assigned Contract if such Assigned Contract is not ultimately assigned to the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that in the event that the Debtors supplement the list of Assigned Contracts or modify the previously stated Cure Amounts for a particular Assigned Contract, the Debtors will promptly file and serve a revised Assumption Notice on each counterparty affected.  Such counterparties shall file any Contract Objections with respect to the revised Assumption Notice not later than (a) the Contract Objection Deadline in the event that such Assumption Notice was filed and served at least ten (10) days prior to the Contract Objection Deadline, and (b) seven (7) days from the date such supplemental or revised Assumption Notice was filed and served in accordance with the above, in the event that such supplemental or revised Assumption Notice was filed and served less than ten (10) days prior to the Contract Objection Deadline.  In the event that a supplemental or revised Assumption Notice was filed and served less than seven (7) days prior to the commencement of the Sale Hearing and an objection is filed that is not otherwise consensually resolved, then such objection will not be adjudicated at the Sale Hearing and will be set for a subsequent hearing.

**PLEASE TAKE FURTHER NOTICE** that this Assumption Notice is subject to the terms and conditions of the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such document in its entirety.  Parties with questions regarding the Assumption and Assignment Procedures contained herein should contact the Debtors' counsel, Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004 (Attn: Andrew Sorkin (andrew.sorkin@lw.com)) and Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: Liza Burton (liza.burton@lw.com) and Jonathan Weichselbaum (jon.weichselbaum@lw.com)).

**PLEASE TAKE FURTHER NOTICE** that the inclusion of an Assigned Contract on this Assumption Notice (or a revised Assumption Notice) will not obligate the Debtors to assume any Assigned Contract listed thereon or the Successful Bidder to take assignment of such Assigned Contract and, as set forth above, the Debtors reserve the right to modify the list of Assigned Contracts in accordance with the Bidding Procedures Order, including to remove executory contracts or unexpired leases from such list.  Only those Assigned Contracts that are included on a schedule of assumed and assigned executory contracts and unexpired leases attached to the final

4

Sale Transaction documentation with the Successful Bidder will be assumed and assigned to the Successful Bidder.

*[Remainder of Page Intentionally Left Blank]*

Dated: _____, 2023            Respectfully submitted,
        Miami, Florida

                                        /s/ Draft
George A. Davis (admitted *pro hac vice*)        Jordi Guso
Liza L. Burton (admitted *pro hac vice*)        Florida Bar No. 863580
Tianjiao ("TJ") Li (admitted *pro hac vice*)     Michael J. Niles
Brian S. Rosen (admitted *pro hac vice*)         Florida Bar No. 107203
Jonathan J. Weichselbaum (admitted *pro hac vice*)  **BERGER SINGERMAN LLP**
**LATHAM & WATKINS LLP**                          1450 Brickell Avenue, Suite 1900
1271 Avenue of the Americas                       Miami, FL 33131
New York, NY 10020                                Telephone:   (305) 755-9500
Telephone:  (212) 906-1200                        Email:  jguso@bergersingerman.com
Email:  george.davis@lw.com                                mniles@bergersingerman.com
        liza.burton@lw.com
        tj.li@lw.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*Co-Counsel for the Debtors and Debtors in Possession*

6

**Exhibit 1**

**<u>EXHIBIT 4</u>**

**(POST-AUCTION NOTICE)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al*.,[1]               Case No.: 22-17842-PDR

        Debtors.                                          (Jointly Administered)

_____/

**NOTICE OF SUCCESSFUL AND BACK-UP BIDDERS
WITH RESPECT TO THE AUCTION OF THE DEBTORS' ASSETS**

        **PLEASE TAKE NOTICE** that, on _____, 2023, the United States
Bankruptcy Court for the Southern District of Florida (the "<u>Bankruptcy Court</u>") entered an order
[ECF No. _____] (the "<u>Bidding Procedures Order</u>")[2]:

 i. approving proposed bidding procedures (the "<u>Bidding Procedures</u>"), attached as
**Exhibit 1** to the Bidding Procedures Order, by which the Debtors will solicit and
select the highest or otherwise best offer for the sale of substantially all of their
assets (the "<u>Assets</u>") through either (a) one or more sales of the Assets (each, a
"<u>Sale Transaction</u>") or (b) a transaction through a plan of reorganization;

 ii. approving the Bid Protections, as defined and described in the Bidding Procedures;

 iii. establishing procedures for the assumption and assignment of executory contracts
and unexpired leases, including notice of proposed cure amounts (the "<u>Assumption
and Assignment Procedures</u>");

 iv. approving the form and manner of the Sale Notice, attached as **Exhibit 2** to the
Bidding Procedures Order;

 v. approving the form and manner of the Assumption Notice, attached as **Exhibit 3** to
the Bidding Procedures Order;

 vi. approving the form and manner of the Post-Auction Notice, attached as **Exhibit 4**
to the Bidding Procedures Order;

---

[1]  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal
tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454);
(iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash
Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales,
Inc. (8019).

[2]  Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures Order or
the Bidding Procedures, as applicable.

vii.   scheduling a date for an auction if the Debtors receive one or more Qualified Bids (the "<u>Auction</u>");

viii.  scheduling a hearing to approve one or more Sale Transactions, as necessary (the "<u>Sale Hearing</u>"); and

ix.    granting related relief.

**PLEASE TAKE FURTHER NOTICE** that on April 27, 2023, pursuant to the Bidding Procedures Order, the Debtors conducted the Auction with respect to the Assets.

**PLEASE TAKE FURTHER NOTICE** that, at the conclusion of the Auction, the Debtors, in consultation with their professionals and Consultation Parties, selected the following Successful Bidder and Back-Up Bidder with respect to the Assets:

| Assets | Successful Bidder | Back-Up Bidder |
|--------|-------------------|----------------|
| Substantially all assets of the Debtors as further described in the APA (as defined below) filed contemporaneously herewith and as made available at no cost at: https://cases.stretto.com/VitalPharmaceuticals. | [ ● ] | [ ● ] |

**PLEASE TAKE FURTHER NOTICE** that the Debtors entered into an Asset Purchase Agreement (the "<u>APA</u>"), by and between the Debtors and [ ● ] (the "<u>Successful Bidder</u>"), a copy of which is attached hereto as **Exhibit 1**, pursuant to which the Debtors shall sell substantially all of their assets to the Successful Bidder.

**[PLEASE TAKE FURTHER NOTICE THAT THE APA CONTEMPLATES CONSENSUAL, MUTUAL RELEASES BY THE DEBTORS, THEIR ESTATES, AND CERTAIN AFFILIATED PARTIES, ON THE ONE HAND, AND THE SUCCESSFUL BIDDER AND CERTAIN AFFILIATED PARTIES, ON THE OTHER HAND.  THE DEBTORS HAVE REQUESTED THAT THE BANKRUPTCY COURT APPROVE SUCH RELEASES IN CONNECTION WITH APPROVAL OF THE APA AND, UPON APPROVAL OF THE APA AND CONSUMMATION OF THE SALE TRANSACTION(S) CONTEMPLATED THEREBY, SUCH RELEASES SHALL BE BINDING AND EFFECTIVE IN ALL RESPECTS.]**

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of (i) the Sale Transaction, (ii) the transfer of the Assets **free and clear of all liens, claims, interests, and encumbrances** in accordance with section 363(f) of the Bankruptcy Code[, and (iii) approval of the releases contemplated by the APA], will be held before the Honorable Judge Peter D. Russin, United States Bankruptcy Judge for the Southern District of Florida, at the Bankruptcy Court, 299 E Broward Blvd., Courtroom 112, Fort Lauderdale, FL 33301 on **May 11, 2023 at 1:30 p.m.**

2

**(Prevailing Eastern Time)**.[3]  The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that the deadline for any objections to the sale of the Assets [(including the releases to be effectuated in connection therewith)], except for those described in the following paragraph, was **March 31, 2023 at 4:00 pm (Prevailing Eastern Time)** and has already passed.

**PLEASE TAKE FURTHER NOTICE** that any objections (i) to the outcome of the Sale Transaction, (ii) to the manner in which the Auction was conducted, (iii) to the designation or court-approval of the Successful Bidder or Back-Up Bidder, and/or (iv) based on the ability of the Successful Bidder to provide adequate assurance of future performance to counterparties to executory contracts and unexpired leases contemplated to be assumed and assigned to the Successful Bidder ("Adequate Assurance Objection") must be filed with the Bankruptcy Court no later than **4:00 p.m. (Prevailing Eastern Time) on the date that is three (3) business days prior to the Sale Hearing unless otherwise provided by the Bidding Procedures Order**.

**PLEASE TAKE FURTHER NOTICE** that, at the Sale Hearing, the Debtors will seek Bankruptcy Court approval of the Successful Bid and the assumption and assignment of the Selected Assigned Contracts to the Successful Bidder.  Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the sale of the Debtors' Assets and there will be no further bidding at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that if the Successful Bidder fails to consummate the Successful Bid, the Debtors may, in consultation with the Consultation Parties, designate the Back-Up Bid to be the new Successful Bid and the Back-Up Bidder to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction with the Back-Up Bidder without further order of the Bankruptcy Court, so long as such Back-Up Bid shall have been approved in connection with the Bankruptcy Court's approval of the Successful Bid, or subject to Bankruptcy Court approval if not.  In such case of a breach or failure to perform on the part of the Successful Bidder and in such other circumstances as may be specified in the definitive documentation governing the Successful Bid, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors.  The Debtors specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Back-Up Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that this Post-Auction Notice is subject to the terms and conditions of the Bidding Procedures Order, with the Bidding Procedures Order controlling in the event of any conflict.  The Debtors encourage parties in interest to review such document in its entirety.  Parties with questions regarding this Post-Auction Notice may make a written request to proposed counsel to the Debtors, Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004 (Attn: Andrew Sorkin (andrew.sorkin@lw.com)) and

---

[3]  To the extent the Sale Hearing occurs virtually, participation instructions will be provided on the agenda filed on the docket prior to the Sale Hearing.

Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: Liza Burton (liza.burton@lw.com) and Jonathan Weichselbaum (jon.weichselbaum@lw.com)).

      **PLEASE TAKE FURTHER NOTICE** that parties interested in receiving more information regarding the contemplated Sale Transaction and/or copies of any related documents may visit the website maintained by Stretto, Inc., the Debtors' court-approved noticing, claims, and solicitation agent at https://cases.stretto.com/VitalPharmaceuticals.

4

Dated: _____, 2023
     Miami, Florida

George A. Davis (admitted *pro hac vice*)
Liza L. Burton (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: george.davis@lw.com
     liza.burton@lw.com
     tj.li@lw.com
     brian.rosen@lw.com
     jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone: (202) 637-2200
Email: andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: whit.morley@lw.com

Respectfully submitted,

*/s/ Draft*
_____
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Email: jguso@bergersingerman.com
     mniles@bergersingerman.com

*Co-Counsel for the Debtors and Debtors in Possession*

**<u>Exhibit 1</u>**

APA

(to come)

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-17842-PDR |
| Debtors. | (Jointly Administered) |
| _____/ | |

**ORDER (I) APPROVING BIDDING
PROCEDURES, (II) AUTHORIZING THE DEBTORS TO
PROVIDE BID PROTECTIONS, AND (III) GRANTING RELATED RELIEF**

**THIS MATTER** came before the Court on ~~————————————~~ **February 23**, 2023 at

~~————————————~~ ~~**a.m./p.m**~~**2:00 p.m**. (the "Hearing"), in Fort Lauderdale, Florida, upon the motion [ECF

No. ~~————~~**707**] (the "Motion")[2] filed by the above-captioned debtors and debtors-in-possession

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein have the meanings given to them in the Motion or the Bidding Procedures, as applicable.

(collectively, the "Debtors"), requesting the entry of an order: (i) approving the Bidding Procedures; (ii) establishing the Assumption and Assignment Procedures; (iii) approving the form and manner of the Sale Notice, the Assumption Notice, and the Post-Auction Notice; (iv) scheduling dates for the Auction and the Sale Hearing; (v) authorizing the Debtors to provide Bid Protections (as defined herein); and (vi) granting related relief, all as more fully set forth in the Motion; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at ~~a~~**the** Hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing established just cause for the relief granted herein; and upon all of the proceedings had before this Court and at the Hearing; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

   A.    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     The statutory bases for the relief sought in the Motion are: (i) sections 105, 363, 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code") and (ii) Bankruptcy Rule 6006.

D.     The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties-in-interest.

E.     The Debtors' notice of the Motion, the Hearing, and the proposed entry of this Bidding Procedures Order was adequate and sufficient under the circumstances of these chapter 11 cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Accordingly, no further notice of the Motion, the Hearing, or this Bidding Procedures Order is necessary or required.

F.     The Debtors have demonstrated a sound business justification for this Court to grant the relief requested in the Motion, including, without limitation, to (i) approve the Bidding Procedures; (ii) establish the Assumption and Assignment Procedures; (iii) approve the form and manner of notice of all procedures and protections attached hereto; (iv) schedule dates for the Auction and Sale Hearing; (v) authorize the Debtors to provide the Bid Protections in accordance with the terms of this Bidding Procedures Order; and (vi) grant related relief as set forth herein.  Such sound business justification, which was set forth in the Motion and on the record at the Hearing, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

3

G.     Under the circumstances, the Bidding Procedures, substantially in the form attached as **Exhibit 1** hereto, are fair, reasonable, and appropriate and designed to maximize the value of the Debtors' assets and estates for the benefit of all stakeholders.

H.     The Sale Notice, substantially in the form attached as **Exhibit 2** hereto, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of, among other things, (i) the proposed sale of the Assets, (ii) the Bidding Procedures, (iii) the date, time, and place of the Auction (if one is held), (iv) the Sale Objection Deadline, (v) and the Sale Hearing, and no other or further notice is required.

I.     The Assumption Notice, substantially in the form attached as **Exhibit 3** hereto, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of (i) the potential assumption and assignment of the Assigned Contracts in connection with a sale of the Assets and the related Cure Amounts, and (ii) the relevant deadlines and other requirements for objecting thereto, and no other or further notice is required.

J.     The Post-Auction Notice, substantially in the form attached as **Exhibit 4** hereto, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of any Successful Bid and Back-Up Bid, and no other or further notice is required.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is **GRANTED** to the extent set forth herein.

2.     Except as explicitly provided herein to the contrary, all objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled and denied on the merits with prejudice.

**Transaction Process Timeline**

4

3.     The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the timeline set forth in the Bidding Procedures attached as **Exhibit 1** hereto; *provided*, that the Debtors may extend such dates in their reasonable discretion, and in consultation with the Consultation Parties.[3]

4.     The failure by a party to timely file an objection in accordance with this Bidding Procedures Order shall forever bar such party from asserting any objection to the Motion, entry of an order approving a Transaction, consummation of a Transaction, and the assumption and assignment of contracts and leases to the Successful Bidder in connection with the Transaction, and shall be deemed to constitute any such party's consent to entry of the applicable order, assumption, assignment, consummation of the Transaction and all other transactions related thereto; *provided*, that notwithstanding ~~the~~ anything to the contrary herein, any deadline to object to any chapter 11 plan proposed in these cases (including any plan incorporating a Restructuring Transaction) shall be established by separate order.

### The Bidding Procedures

5.     The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are incorporated herein and approved in their entirety.  The Bidding Procedures shall govern all Bids relating to any proposed Transaction.  The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance

---

[3] Each "Consultation Party," and collectively, the "Consultation Parties" means:  (i) Truist Bank, in its capacities as administrative agent under the Debtors' prepetition secured credit facility and debtor-in-possession credit facility (in such capacities, the "Agent"), and the Agent's counsel and financial advisor; and (ii) counsel, investment banker, and financial advisor to the Committee; *provided*, that no person or entity that constitutes a Potential Bidder, an Acceptable Bidder, a Qualified Bidder, a Stalking Horse Bidder, a Successful Bidder, or a Back-Up Bidder (each as defined in the Bidding Procedures) (as determined by the Debtors, in their reasonable discretion and in consultation with the Committee) shall be deemed a Consultation Party for so long as such person constitutes a Potential Bidder, an Acceptable Bidder, a Qualified Bidder, a Stalking Horse Bidder, a Successful Bidder, or a Back-Up Bidder.

therewith.  The failure to specifically include or reference a particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of any such provision.  The Debtors reserve the right, and are authorized (after consultation with the Consultation Parties), to modify the Bidding Procedures in accordance with the Bidding Procedures and this Bidding Procedures Order.

6.      Except as otherwise provided in the Bidding Procedures with respect to a Stalking Horse Bidder, no person or entity shall receive any break-up fee, expense reimbursement, or other similar fees or payment, and by submitting a Bid, each Bidder is deemed to have waived its right to request or to file with this Court any request for expense reimbursement or any fee of any nature solely in connection with such Bid, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

7.      Any deposit provided by a Qualified Bidder shall be held in a segregated account by the Debtors or their agent in accordance with the Bidding Procedures, and shall not become property of the Debtors' bankruptcy estates unless and until released to the Debtors pursuant to the terms of the Stalking Horse Agreement or order of this Court.

8.      The Debtors may (i) determine which Qualified Bid is the highest or otherwise best Bid in accordance with the Bidding Procedures, in consultation with the Consultation Parties; (ii) at any time prior to entry of an order of this Court approving the Successful Bid, reject any Bid (other than a Stalking Horse Bid) that the Debtors determine, in consultation with the Consultation Parties, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (c) contrary to the best interests of the Debtors' estates and their creditors; and (iii) prior to conclusion of any Auction, impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be

6

in the best interests of the Debtors' estates in these chapter 11 cases.

9.    To the extent any Bid contemplates the acquisition of assets owned by non-Debtors, which are not encumbered by the Agent's liens and/or security interests, the Committee and the Agent reserve their rights to contest the allocation of the proceeds of any such resulting sale.

### Stalking Horse Bidder and Bid Protections

10.    The Debtors, in consultation with the Consultation Parties, are authorized, but not directed, to: (i) select a potential bidder to act as Stalking Horse Bidder(s), and enter into a Stalking Horse Agreement with each such Stalking Horse Bidder; (ii) provide a breakup fee (the "Breakup Fee"); and/or (iii) agree to reimburse reasonable and documented out-of-pocket fees and expenses (the "Expense Reimbursement" and, together with the Breakup Fee, the "Bid Protections"), all as reasonably acceptable to the Debtors, after consultation with the Consultation Parties, and subject to the terms and conditions set forth in this Bidding Procedures Order; *provided*, that absent a further order of this Court the aggregate value of any Bid Protections shall not exceed 3% of the cash purchase price under the Stalking Horse Agreement.

11.    Nothing contained in this Bidding Procedures Order shall prohibit the Debtors from selecting a Bid in the form of a Restructuring Transaction to be the Stalking Horse Bid in accordance with the terms of the Bidding Procedures.

12.    No later than **March 1324, 2023 at 11:59 p.m.** (Prevailing Eastern Time), the Debtors shall file with this Court a notice of the Debtors' selection of the Stalking Horse Bidder and the Stalking Horse Bid (the "Stalking Horse Selection Notice"), which Stalking Horse Selection Notice shall describe any Bid Protections granted in connection with the Stalking Horse Bid and attach (i) a copy of a Stalking Horse Agreement that has been executed by, and is

7

binding upon, the Stalking Horse Bidder and (ii) a proposed form of order authorizing and approving the Debtors' entry into and performance under the Stalking Horse Agreement (subject to the submission of higher or otherwise better offers for the Assets) and any Bid Protections being granted to the Stalking Horse Bidder (the "Stalking Horse Order").

13.    Parties in interest shall file objections (a "Stalking Horse Objection") to the designation of the Stalking Horse Bidder or approval of the proposed Bid Protections, no later than **March 2031, 2023 at 4:00 p.m.** (Prevailing Eastern Time) (the "Stalking Horse Objection Deadline").  If one or more Stalking Horse Objections are timely filed, a hearing shall be held before this Court on **or around March 31**[ ● ], 2023 to consider the relief requested in the proposed Stalking Horse Order.  If no Stalking Horse Objections are received, or in the event that all such Stalking Horse Objections are resolved consensually, the proposed Stalking Horse Order may be entered without a hearing, unless otherwise required by the Stalking Horse Bidder.

**Notice Procedures**

**A.    Sale Notice**

14.    The form of Sale Notice, substantially in the form attached as **Exhibit 2** hereto, is approved.  The Debtors are authorized to make non-substantive or immaterial changes to the Sale Notice or to fill in missing information, in each case to the extent not inconsistent with this Bidding Procedures Order, prior to service or publication of the Sale Notice.

15.    On or before three (3) business days after the entry of this Bidding Procedures Order, the Debtors will file the Sale Notice with this Court and shall serve the Sale Notice by first-class mail, postage prepaid, or, for those parties who have consented to receive notice by the ECF system, by ECF, upon: (i) to the best knowledge of the Debtors' management, all entities that have expressed written interest in a Sale Transaction with respect to all or substantially all of

8

the Assets within the past six (6) months; (ii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Assets; (iii) counsel to the Committee; (iv) the Agent; (v) counsel to the Agent; (vi) the U.S. Trustee; (vii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief granted herein; (viii) the United States Attorney's office for the Southern District of Florida; (ix) the Internal Revenue Service; (x) all parties entitled to notice pursuant to Bankruptcy Rule 2002; and (xi) all known creditors of the Debtors, including their contract counterparties; *provided*, *however*, that to the extent email addresses are available for any of the foregoing parties, such parties may be served by email.

16.     The Debtors are authorized to file under seal that part of the service list providing the names and mailing addresses for potential bidders previously identified or otherwise known to the debtors that are served with the Sale Notice and this Bidding Procedures Order.

17.     Service of the Sale Notice as described herein shall be deemed good and sufficient notice of the Transaction with respect to known interested parties.

18.     The Debtors are authorized and directed to publish the Sale Notice, as modified for publication, in the ~~*Wall Street Journal*~~*New York Times* within eight (8) business days after the entry of this Bidding Procedures Order.  In addition, the Debtors are authorized, but not directed, to (i) publish the Sale Notice in additional publications as the Debtors deem appropriate, and (ii) cause the Sale Notice to be posted on the Case Website.

19.     Publication of the Sale Notice as described herein shall be good and sufficient notice of the Transaction with respect to all unknown creditors or other parties.

9

**B.**      **Assumption Notice**

20.      The Assumption Notice, substantially in the form attached as **Exhibit 3** hereto, is approved, and the Debtors are authorized to make non-substantive or immaterial changes to the Assumption Notice or to fill in missing information, in each case to the extent not inconsistent with this Bidding Procedures Order, prior to service of the Assumption Notice.

21.      Service of the Assumption Notice as provided herein shall be deemed good and sufficient notice of, among other things, the proposed assumption and assignment of the Assigned Contracts, the applicable Cure Amounts related thereto, and the procedures for objecting thereto, and no other or further notice is necessary.

**C.**      **Post-Auction Notice**

22.      The form of Post-Auction Notice, substantially in the form attached as **Exhibit 4** hereto, is approved, and the Debtors are authorized to make non-substantive or immaterial changes to the Post-Auction Notice or to fill in missing information, in each case to the extent not inconsistent with this Bidding Procedures Order, prior to service of the Post-Auction Notice.

23.      As soon as practicable after the Auction (if any) and in any event no later than twenty-four (24) hours following the closing of the Auction, the Debtors shall file on the Court's docket and serve, by overnight delivery, on the Counterparties (as defined below) the Post-Auction Notice identifying any Successful Bidder and Back-Up Bidder.

24.      The filing and service of the Post-Auction Notice as described herein shall be deemed good and sufficient notice of the Debtors' selection of the Successful Bid and Back-Up Bid, and the deadlines and other requirements for objecting to the same, the conduct of the Auction, and to the potential assumption and assignment of the Assigned Contracts to the Successful Bidder and/or Back-Up Bidder, and no other or further notice is required.

**The Auction**

25.     If the Debtors receive more than one Qualified Bid by the Bid Deadline, an Auction shall take place on **April ~~17~~27, 2023 at 10:00 a.m.** (Prevailing Eastern Time), or such later time the Debtors reasonably determine at: (i) the offices of Latham & Watkins LLP, located at 1271 Avenue of the Americas, New York, New York 10020; (ii) telephonically; or (iii) by video via Zoom, or other place (or by such other electronic means) as the Debtors reasonably determine; *provided*, that the Debtors timely notify all Qualified Bidders and other invitees of the time and place of the Auction in accordance with the Bidding Procedures, and for the avoidance of any doubt, the Auction is subject to the right of the Debtors, in the reasonable exercise of their business judgment, in consultation with the Consultation Parties, to adjourn the Auction to a later date.  The Auction shall be conducted in accordance with the Bidding Procedures.

26.     In the event no Auction is to be held, the Debtors shall file a notice with this Court not later than **April ~~14~~26, 2023 at 4:00 p.m.** (Prevailing Eastern Time) stating that there will be no Auction.

**Assumption and Assignment Procedures**

27.     The proposed Assumption and Assignment Procedures, and the payment by the Debtors or the Successful Bidder, as applicable, of any related Cure Amounts, as set forth in the Motion and in this Bidding Procedures Order, are approved.

28.     The Assumption and Assignment Procedures are as follows:

(a)     On or prior to ~~February 20~~March 3, 2023 (the "Assumption Notice Deadline"), the Debtors shall file with this Court, post on the Case Website and serve on each counterparty (each, a "Counterparty," and collectively, the "Counterparties") to an Assigned Contract, the Assumption Notice.

(b)     The Assumption Notice shall include, without limitation, a list of Assigned Contracts (the "Assigned Contract List") that may be assumed and assigned in connection with a Transaction and the Cure Amount, if

11

any, that the Debtors believe is required to be paid to the applicable Counterparty under sections 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assigned Contracts. If no Cure Amount is listed on the Assigned Contracts List for a particular Assigned Contract, the Debtors' asserted Cure Amount for such Assigned Contract shall be deemed to be $0.00. If a Counterparty objects to the Cure Amount or the assumption of its Assigned Contract on any basis ***other than*** the ability of the Successful Bidder to provide adequate assurance of future performance (an "Adequate Assurance Objection"), the Counterparty must file with this Court and serve on the Objection Recipients (as defined herein) a written objection (a "Contract Objection") on or before **March ~~20~~31, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Contract Objection Deadline").

(c)     Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and Local Rules; (iii) be filed with the Clerk of the Court on or before the Contract Objection Deadline, except as otherwise set forth below with respect to Assigned Contracts added to the Assigned Contracts List (or for which the proposed Cure Amount is modified) after the Assumption Notice Deadline; (iv) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under sections 365(b)(1)(A) and (B) of the Bankruptcy Code for the applicable Assigned Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto; and (v) be served upon the Objection Recipients.

(d)     The Debtors reserve the right, and are authorized to (i) add previously omitted Assigned Contracts to the Assigned Contracts List as executory contracts or unexpired leases that may be assumed and assigned to a Successful Bidder in accordance with the definitive agreement for a Sale Transaction, (ii) remove Assigned Contracts from the Assigned Contract List, or (iii) modify the previously stated Cure Amount associated with any Assigned Contract; *provided*, that up until the closing of the Sale Transaction, the Debtors may seek to reject any Assigned Contract included on the Assigned Contracts List if such Assigned Contract is not ultimately assigned to the Successful Bidder.

(e)     If, after the Assumption Notice Deadline (i) additional executory contracts or unexpired leases of the Debtors are determined to be Assigned Contracts in connection with such Sale Transaction, or (ii) any Cure Amounts associated with Assigned Contracts are modified, as soon as practicable thereafter, the Debtors shall file with this Court and serve, by overnight delivery, on the applicable Counterparties a supplemental or revised Assumption Notice, and such Counterparties shall file any Contract Objections not later than (a) the Contract Objection Deadline in the event that such Assumption Notice was filed and served at least ten

(10) days prior to the Contract Objection Deadline, and (b) seven (7) days from the date such supplemental or revised Assumption Notice was filed and served in accordance with the above, in the event that such supplemental or revised Assumption Notice was filed and served less than ten (10) days prior to the Contract Objection Deadline.  In the event that a supplemental or revised Assumption Notice was filed and served less than seven (7) days prior to the commencement of the Sale Hearing and an objection is filed that is not otherwise consensually resolved, then such objection will not be adjudicated at the Sale Hearing and will be set for a subsequent hearing.

(f)     As soon as practicable after the Auction and in any event no later than twenty-four (24) hours following the closing of the Auction, the Debtors shall file with this Court and serve, by overnight delivery, on the Counterparties the Post-Auction Notice substantially in the form attached as **Exhibit 4** here to, identifying any Successful Bidder and Backup Bidder, and the Counterparties shall file any Adequate Assurance Objections not later than 4:00 p.m. (Prevailing Eastern Time) on the date that is three (3) business days prior to the commencement of the Sale Hearing (such deadline, the "Post-Auction Sale Objection Deadline"), or, if applicable, any later deadline established pursuant to subparagraph 28(e) above.

(g)     At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to the Successful Bidder of only those Assigned Contracts that have been selected by the Successful Bidder to be assumed and assigned (collectively, the "Selected Assigned Contracts"). The inclusion of an Assigned Contract on an Assumption Notice or the identification of such Assigned Contract as a Selected Assigned Contract will not (i) obligate the Debtors to assume any Assigned Contract listed thereon nor the Successful Bidder to take assignment of such Assigned Contract, or (ii) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease.  The Debtors reserve any and all rights with respect to any Assigned Contracts that are not ultimately designated as Selected Assigned Contracts, and reserve the right to reject any Assigned Contract identified as a Selected Assigned Contract if such Assigned Contract is not ultimately assigned to the Successful Bidder.

(h)     If no Contract Objection or Adequate Assurance Objection, as applicable, is timely received with respect to a Selected Assigned Contract: (i) the Counterparty to such Selected Assigned Contract shall be deemed to have consented to the assumption by the Debtors and assignment to Successful Bidder of the Selected Assigned Contract, and be forever barred from asserting any objection with regard to such assumption or assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder); (ii) any and all

13

defaults under the Selected Assigned Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code upon payment of the Cure Amount set forth in the most recent Assumption Notice for such Selected Assigned Contract; and (iii) the Cure Amount set forth in the most recent Assumption Notice for such Selected Assigned Contract shall be controlling, notwithstanding anything to the contrary in such Selected Assigned Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Assigned Contract against the Debtors and their estates, the Successful Bidder, or the property of any of them, that existed prior to the entry of the order resolving the Contract Objections and the Sale Order.

29.     To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the Cure Amount required to be paid to the applicable Counterparty under sections 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Court; *provided*, *however*, that if the Contract Objection relates solely to a Cure Dispute, the Selected Assigned Contract may be assumed by the Debtors and assigned to the Successful Bidder so long as the cure amount the Counterparty asserts is required to be paid under sections 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as may be agreed to by the Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.  The Debtors and the Successful Bidder reserve their rights to remove an Assigned Contract from the Assigned Contract List or from any list of Selected Assigned Contracts based on the outcome of a Cure Dispute held at a hearing subsequent to the Sale Hearing or for any other reason.

**Sale Hearing**

30.    A Sale Hearing to approve any Sale Transaction shall be held on or around ~~April 26~~May 11, 2023 at ~~_____ a.m./p.m~~1:30 p.m. (Prevailing Eastern Time), and may be adjourned or rescheduled by the Debtors from time to time in accordance with the Bidding Procedures.

31.    Except as otherwise provided herein, any objection to any Transaction (a "Sale Objection") must be filed no later than **March 31, 2023 at 4:00 p.m. (Prevailing Eastern Time) (**the **"Sale Objection Deadline")**.  Any and all such objections must be served on the Objection Recipients and counsel to any Successful Bidder, if known on the Sale Objection Deadline; *provided*, that, any or objections to the outcome and conduct of the Auction, the designation or Court-approval of the Successful Bid or Back-Up Bid, or Adequate Assurance Objections must be filed no later than 4:00 p.m. (Prevailing Eastern Time) on the date that is three (3) business days prior to the commencement of the Sale Hearing.

32.    All replies to any objections must be filed by 4:30 p.m. on the date that is two (2) business days prior to the commencement of the Sale Hearing (the "Reply Deadline").

**Other Relief**

33.    Except as otherwise provided herein, any objection provided hereunder must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and Local Rules, (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor, and (iv) be filed with this Court and served so actually received no later than the applicable objection deadline by the following parties (collectively, the "Objection Recipients"):

i.    the Debtors, c/o Vital Pharmaceuticals, Inc., 1600 N. Park Drive, Weston, FL 33326 (Attn: Greg Robbins (Greg.Robbins@bangenergy.com) and Gregg Metzger (Gregg.Metzger@bangenergy.com));

ii.    co-counsel for the Debtors:

    (a)    Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004 (Attn: Andrew Sorkin (andrew.sorkin@lw.com)) and Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: Liza Burton (liza.burton@lw.com) and Jonathan Weichselbaum (jon.weichselbaum@lw.com)); and

    (b)    Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Jordi Guso (JGuso@bergersingerman.com) and Michael Niles (mniles@bergersingerman.com));

iii.    the Agent, Truist Bank 10500 Little Patuxent Parkway Ste 450, Columbia, MD 21046, Mail Code 420-20-01-00 (Attn: Jade Silver (jade.silver@truist.com));

iv.    co-counsel to the Agent:

    (a)    Moore & Van Allen PLLC, 100 North Tryon Street, Suite 4700, Charlotte, NC 28202-4003 (Attn: Luis Lluberas (luislluberas@mvalaw.com), Steve Gruendel (stevegruendel@mvalaw.com), and Cole Richins (colerichins@mvalaw.com)); and

    (b)    Shutts & Bowen LLP, 200 South Biscayne Blvd., Ste 4100, Miami, FL 33131 (Attn: Aliette D. Rodz (ARodz@shutts.com), Peter Levitt (plevitt@shutts.com), Harris J. Koroglu (hkoroglu@shutts.com), and Martha M. Ferral (MFerral@shutts.com));

v.    the Office of the United States Trustee, 51 SW First Avenue, Room 1204, Miami, Florida 33130; and

vi.    co-counsel to the Committee:

    (a)    Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, NY 10020 (Attn: Jeffrey Cohen (jcohen@lowenstein.com), Eric Chafetz (echafetz@lowenstein.com), and Lindsay Sklar (lsklar@lowenstein.com)) and Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, NJ 07068, Attn: Erica Mannix (emannix@lowenstein.com)); and

(b)    Sequor Law, P.A., 1111 Brickell Avenue, Suite 1250, Miami, FL 33131 (Attn: Leyza Blanco (lblanco@sequorlaw.com) and Fernando Menendez (fmenendez@sequorlaw.com)).

34.    [KJ Can Bid.  Notwithstanding anything contained in this Bidding Procedures Order or the Bidding Procedures, the following Bid Requirements contained in the Bidding Procedures do not apply to a bid from KJ Can (Singapore) Pte. Ltd. ("KJ Can") that is for less than substantially all assets (a "KJ Can Bid"): (a) the Minimum Bid requirement set forth in Section E(iii); (b) the Pro Forma Capital Structure requirement set forth in Section E(vi); and (c) the Executed Agreement requirement set forth in Section E(viii); *provided*, that in order for any KJ Can Bid to constitute a Qualified Bid, KJ Can must submit an executed, binding irrevocable purchase agreement for the assets that are subject to such bid that otherwise satisfies the requirements of Section E (other than as expressly waived or modified herein), including that such bid not be subject to any financing or diligence contingencies.  Furthermore, the Bid Deposit requirement set forth in Section E(iv) shall be 10% of the cash purchase price set forth in a KJ Can Bid. Notwithstanding anything contained in this Bidding Procedures Order or the Bidding Procedures, but subject to the proviso at the end of this sentence, Section I(i)(f) of the Auction Procedures does not apply to a KJ Can Bid to the extent it requires that overbids at the Auction otherwise satisfy the requirements for Qualified Bids (and it being understood that to the extent that a KJ Can Bid is deemed actionable by the Debtors, the Debtors shall propose, in their good faith, reasonable discretion and in consultation with the Consultation Parties, an alternative overbid increment for the assets subject to the KJ Can Bid); *provided*, that nothing herein shall require the Debtors to accept or advance at the Auction any KJ Can Bid that the Debtors determine, in good faith and in their

17

**reasonable discretion, after consultation with the Consultation Parties, is not actionable, including because the transaction contemplated by the KJ Can Bid would preclude the Debtors from consummating a sale of all or substantially all of the Debtors' assets not subject to such bid.][4]**

35. ~~34.~~ All persons and entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Assets, the Auction, and any transaction contemplated herein.

36. ~~35.~~ Notwithstanding any provision of the Bankruptcy Rules or the Local Rules stating to the contrary, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry and no automatic stay shall apply to this Bidding Procedures Order.

37. ~~36.~~ All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

38. ~~37.~~ The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

39. ~~38.~~ In the event there is any inconsistency between the Motion or the Bidding Procedures, on the one hand, and this Bidding Procedures Order, on the other, the terms of this Bidding Procedures Order shall govern.  In the event of any inconsistency between the Motion and the Bidding Procedures, the Bidding Procedures shall govern.

40. ~~39.~~ This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bidding Procedures Order.  All matters arising from or related to the

---

[4] **Note: This language is subject to further discussion between KJ Can and the Debtors and may be modified.**

implementation of this Bidding Procedures Order may be brought before this Court as a contested matter, without the necessity of commencing an adversary proceeding.

# # #

<u>Submitted by</u>:

Jordi Guso
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email: jguso@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

| Summary report: Litera® Change-Pro for Word 10.14.0.46 Document comparison done on 2/21/2023 4:02:39 PM | |
|---|---|
| **Style name:** L&W w. Moves | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://usdocs.lw.com/US-DOCS/134127085/15 | |
| **Modified DMS:** iw://usdocs.lw.com/US-DOCS/134127085/16 | |
| **Changes:** | |
| **Add** | 30 |
| **Delete** | 21 |
| *Move From* | 0 |
| *Move To* | 0 |
| **Table Insert** | 0 |
| **Table Delete** | 0 |
| *Table moves to* | 0 |
| *Table moves from* | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 51 |

**<u>EXHIBIT 1</u>**

**(BIDDING PROCEDURES)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]                 Case No.: 22-17842-PDR

      Debtors.                                            (Jointly Administered)

_____/

## BIDDING PROCEDURES

On October 10, 2022 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

On _____, 2023, the Bankruptcy Court entered an order [ECF No. [ _____ ] (the "Bidding Procedures Order")[2] approving, among other things, these bidding procedures (the "Bidding Procedures").

These Bidding Procedures set forth the process by which the Debtors are authorized to solicit and select the highest or otherwise best bid or bids (each, a "Bid") for the Debtors' assets (including, for the avoidance of doubt, rights under leases or other contracts, certain causes of action, intellectual property rights and other intangible assets) (the "Assets"),[3] culminating in an auction (the "Auction") if more than one Qualified Bid (as defined herein) is received. The sale is contemplated to be implemented through either (i) a sale or sales under section 363(b) of the Bankruptcy Code (each, a "Sale Transaction") pursuant to the terms and conditions of an asset purchase agreement, or (ii) a transaction that will be consummated through a plan of a

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein have the meanings given to them in the *Debtors' Motion for an Order (I) Approving (A) Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Procedures for the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Form and Manner of Notice of the Sale Hearing, Assumption Procedures, and Auction Results, (D) Dates for an Auction and Sale Hearing, (E) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances, and (F) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing the Debtors to Provide Bid Protections, and (III) Granting Related Relief.*

[3] A Bid may also contemplate the acquisition of assets owned by non-Debtors.

reorganization (a "<u>Restructuring Transaction</u>" and together with a Sale Transaction, each a "<u>Transaction</u>").

**<u>Summary of Key Dates</u>**

The key dates for the Debtors' sale process are as follows.  Such dates may be extended by the Debtors, in their reasonable discretion and in consultation with the Consultation Parties.[4]

| <u>Event</u> | <u>Date</u>[5] |
|---|---|
| Deadline to serve the Bidding Procedures Order | Within three (3) business days after entry of the Bidding Procedures Order |
| Deadline to file and serve initial Assumption Notice<br><br>Deadline to file proposed Sale Order | ~~February 20~~**March 3**, 2023 |
| Deadline to file the Stalking Horse Selection Notice and seek Bankruptcy Court approval of proposed Bid Protections (if any) | March ~~13~~**24**, 2023 at 11:59 p.m. |
| Deadline to object to designation of Stalking Horse Bidder and/or proposed Bid Protections<br><br>Contract Objection Deadline (other than any objections based on adequate assurance of future performance, or objections subject to a later deadline pursuant to the Assumption and Assignment Procedures)<br><br>Sale Objection Deadline (other than any objection based on the manner in which the Auction was conducted or the designation of the Successful Bid or Back-Up Bid) | March ~~20~~**31**, 2023 at 4:00 p.m. |
| Bid Deadline | April ~~11~~**24**, 2023 at 12:00 p.m. |
| Auction (if necessary) | April ~~17~~**27**, 2023 at 10:00 a.m. |
| Deadline to file Post-Auction Notice | Promptly following the conclusion of the Auction, but in no event later than 24 hours following the conclusion of the Auction |

---

[4]  Each "<u>Consultation Party</u>," and collectively, the "<u>Consultation Parties</u>" means: (i) Truist Bank, in its capacities as administrative agent under the Debtors' prepetition secured credit facility and debtor-in-possession credit facility (the "<u>DIP Facility</u>") (in such capacities, the "<u>Agent</u>"), and the Agent's counsel and financial advisor; and (ii) counsel, investment banker, and financial advisor to the Committee; *provided*, that no person or entity that constitutes a Potential Bidder, an Acceptable Bidder, a Qualified Bidder, a Stalking Horse Bidder, a Successful Bidder, or a Back-Up Bidder (each as defined herein) (as determined by the Debtors, in their reasonable discretion and in consultation with the Committee) shall be deemed a Consultation Party for so long as such person constitutes a Potential Bidder, an Acceptable Bidder, a Qualified Bidder, a Stalking Horse Bidder, a Successful Bidder, or a Back-Up Bidder.

[5]  All times are listed in Prevailing Eastern Time.

| Event | Date[5] |
|---|---|
| Deadline to object to (i) conduct of the Auction, (ii) the identity of the Successful Bidder or Back-Up Bidder, and (iii) adequate assurance of future performance by the Successful Bidder or Back-Up Bidder (such deadline, the "Post-Auction Sale Objection Deadline") | 4:00 p.m. on the date that is three (3) business days prior to the Sale Hearing |
| Deadline for Debtors to file a reply to objections to sale/assumption objections (and any other filings by parties in interest in support of the proposed Transaction) | 4:30 p.m. on the date that is two (2) business days prior to the Sale Hearing |
| Sale Hearing | ~~April 26~~ May 11, 2023 at 1:30 p.m. |

## A.    Purchase Agreement; Restructuring Transaction Documentation

The Debtors are soliciting and shall select the highest or otherwise best Bid for the Debtors' Assets.  Certain non-Debtors may also sell assets related to the Debtors' business, the acquisition of which may be contemplated or required by a Bid.  A Bid may take the form of (i) a Sale Transaction of all or substantially all of the Debtors' Assets pursuant to an asset purchase agreement to be consummated under section 363 of the Bankruptcy Code, or (ii) a Restructuring Transaction.

The Debtors have prepared a form of Asset Purchase Agreement (together with all ancillary documents and agreements, the "APA") for parties interested in acquiring the Assets pursuant to a Sale Transaction.  The Debtors intend to provide copies of the form APA to Acceptable Bidders and will also make such form APA available in the electronic data room established by the Debtors in connection with their sale process.

Parties interested in submitting Bids in the form of a Restructuring Transaction may do so by submitting a term sheet for a plan of reorganization (a "Plan Term Sheet").  The Debtors, in consultation with the Consultation Parties, reserve the right to modify these Bidding Procedures, including, without limitation, Qualified Bid requirements, as necessary or appropriate to reflect the submission and the Debtors' consideration of one or more Bids in the form of a Restructuring Transaction; *provided*, that in order for a Bid in the form of a Plan Term Sheet to constitute a Qualified Bid, among other things, the Debtors, in consultation with the Consultation Parties, must determine in good faith that such Bid (i) is capable of satisfying the requirements of section 1129 of the Bankruptcy Code, (ii) provides for the payment in full in cash on the Effective Date of (a) all allowed secured claims of the Prepetition Lenders (as defined herein) arising under the Debtors' prepetition secured credit facility and (b) all allowed claims arising under the Debtors' DIP Facility, and (iii) is capable of being consummated.  Any Bid in the form of a Plan Term Sheet satisfying the requirements of this paragraph may be determined by the Debtors, in consultation with the Consultation Parties, to be a Qualified Bid, Successful Bid, Stalking Horse Bid (as defined herein), or Back-Up Bid.

## B.    Due Diligence

### (i)    Acceptable Bidder Designation

For purposes of these Bidding Procedures, a "Potential Bidder" shall refer to any person or entity interested in submitting a Bid.

A Potential Bidder that (i) executes a confidentiality agreement on customary terms that are reasonably acceptable to the Debtors (a "Confidentiality Agreement"),[6] (ii) provides sufficient evidence, as reasonably determined by the Debtors, in consultation with the Consultation Parties, that the Potential Bidder intends to obtain due diligence and participate in the sale process for a bona fide purpose consistent with these Bidding Procedures and not for any other purpose, and (iii) provides evidence acceptable to the Debtors of such Potential Bidder's financial capability to consummate the Transaction, the adequacy of which will be assessed by the Debtors (with the assistance of their advisors) in consultation with the Consultation Parties (any such Potential Bidder being referred to as an "Acceptable Bidder"), will be eligible to receive due diligence materials and access to certain non-public information regarding the Assets.  **Neither the Debtors nor their representatives will be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder.**

Each Acceptable Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding such bidder's (i) qualification as an Acceptable Bidder, (ii) the terms of the Potential Bidder's Bid, or (iii) the ability of the Potential Bidder to consummate the Transaction.  Failure by a Potential Bidder to comply with reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with the Consultation Parties, to determine that such bidder does not qualify as an Acceptable Bidder, or that any Bid made by such bidder is not a Qualified Bid.

### (ii)    Access to Due Diligence

The Debtors will provide each Acceptable Bidder with such information as is reasonably contemplated to enable such Acceptable Bidder to make a Bid for the Assets.  The Debtors will also provide each Acceptable Bidder with reasonable due diligence information as requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request.  The Debtors will post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic data room (the "Data Room").  The Debtors reserve the right, in consultation with the Consultation Parties, to restrict or limit access of any Acceptable Bidder to the Data Room if the Debtors determine, based on their reasonable business judgment, that certain information in the Data Room is sensitive, proprietary, or otherwise not appropriate for disclosure to any Acceptable Bidder.

---

[6] Potential Bidders may obtain a form of Confidentiality Agreement by contacting the Debtors' advisors listed below.

11892533-1

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors will not furnish any confidential information relating to the Debtors, the Debtors' Assets or liabilities, or the Transaction to any person except an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives, in each case, to the extent provided in and subject to the terms of the applicable Confidentiality Agreement.

The Debtors and their advisors will coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided*, that the Debtors may, after consultation with the Consultation Parties, decline to provide such additional information and diligence access to Acceptable Bidders who, in the Debtors' reasonable business judgment have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate their Bid.

No conditions relating to the completion of due diligence will be permitted to exist after the Bid Deadline (as defined herein). Following the Bid Deadline, the Debtors may, in their reasonable discretion and in consultation with the Consultation Parties, furnish additional non-public information to any Qualified Bidder that submits a Qualified Bid, but shall have no obligation to do so.

Each Acceptable Bidder will be deemed to acknowledge and represent that it: (i) either directly or through its advisors has had an opportunity to conduct any and all due diligence regarding the Debtors' Assets and liabilities prior to making any Qualified Bid; (ii) has relied solely upon its own or its advisors' independent review, investigation, and/or inspection of any documents and/or the Assets and liabilities in making any Qualified Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise regarding the Debtors' Assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or the Acceptable Bidder's proposed asset purchase agreement (including, in the case of any Stalking Horse Bidder, its Stalking Horse Agreement (as defined herein)) or Plan Term Sheet, as applicable. Neither the Debtors, the Consultation Parties, nor any of their respective employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors, or professionals are responsible for, and will bear no liability with respect to, any information obtained by Acceptable Bidders in connection with the Transaction.

---

**The Debtors have designated Rothschild & Co US Inc. to coordinate all reasonable requests for additional information and due diligence access.**
**Rothschild & Co US Inc.**
**1251 Avenue of the Americas,**
**New York, NY 10020**
**Email: ProjectBlast@rothschildandco.com**

---

### (iii)    No Communications Among Bidders

There shall be no communications regarding the Transaction between or among any bidders, including any Acceptable Bidder, Qualified Bidder, or Stalking Horse Bidder, unless the Debtors, in consultation with the Consultation Parties, have previously authorized such communication in writing.  The Debtors reserve the right, in their reasonable business judgment, in consultation with the Consultation Parties, to disqualify any bidder that the Debtors believe in their reasonable judgement has communicated with another bidder in violation of these Bidding Procedures.

### C.    Stalking Horse Bidder and Bid Protections

Until March ~~13~~24, 2023, the Debtors shall be authorized in the exercise of their business judgment and in consultation with the Consultation Parties, to: (i) select one or more bidders to act as stalking horse bidder(s) in connection with a Sale Transaction (each, a "Stalking Horse Bidder," and the bid of a Stalking Horse Bidder a "Stalking Horse Bid") and enter into an asset purchase agreement with respect to a Sale Transaction with such Stalking Horse Bidder (each, a "Stalking Horse Agreement") (which shall be binding, non-contingent, and accompanied by a Good Faith Deposit (as defined herein)), (ii) provide a breakup fee (the "Breakup Fee"), and/or (iii) agree to reimburse reasonable and documented out-of-pocket fees and expenses (the "Expense Reimbursement" and, together with the Breakup Fee, the "Bid Protections"), all as reasonably acceptable to the Debtors, after consultation with the Consultation Parties, and as otherwise provided by the Bidding Procedures Order.  The Debtors reserve the right, in consultation with the Consultation Parties, to select a Bid in the form of a Restructuring Transaction to be the Stalking Horse Bid.

No later than March ~~13~~24, 2023 at 11:59 p.m. (Prevailing Eastern Time), the Debtors shall file with the Bankruptcy Court a notice of the Debtors' selection of the Stalking Horse Bidder and the Stalking Horse Bid (the "Stalking Horse Selection Notice"), which Stalking Horse Selection Notice shall describe any Bid Protections granted in connection with the Stalking Horse Bid and attach (i) a copy of a Stalking Horse Agreement that has been executed by, and is binding upon, the Stalking Horse Bidder and (ii) a proposed form of order authorizing and approving the Debtors' entry into and performance under the Stalking Horse Agreement (subject to the submission of higher or otherwise better offers for the Assets) and any Bid Protections being granted to the Stalking Horse Bidder (the "Stalking Horse Order").

Parties in interest may file objections (a "Stalking Horse Objection") to the designation of the Stalking Horse Bidder or any of the terms of the Stalking Horse Agreement, including to any of the proposed Bid Protections, no later than March ~~20~~31, 2023 at 4:00 p.m. (Prevailing Eastern Time) (the "Stalking Horse Objection Deadline").  If one or more Stalking Horse Objections are timely filed, a hearing shall be held before the Bankruptcy Court on ~~March 31~~[ ● ], 2023, to consider the relief requested in the proposed Stalking Horse Order.  If no Stalking Horse Objections are received, or in the event that all such Stalking Horse Objections are resolved consensually, the proposed Stalking Horse Order may be entered without a hearing, unless otherwise required by the Stalking Horse Bidder.

### D.    Submission of Bids

Unless otherwise agreed to in writing by the Debtors, in consultation with the Consultation Parties, only Acceptable Bidders shall be permitted to submit a Bid.

### E.    Bid Requirements

To be eligible to participate in the Auction, any bidder (other than any Stalking Horse Bidder designated by the Debtors in consultation with the Consultation Parties) must deliver to the Debtors and their advisors, a written, irrevocable offer that must be determined by the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, to satisfy each of the conditions set forth below (collectively, the "Bid Requirements").

A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions:

(i)    **Purpose**.  With respect to a proposed Sale Transaction, each bidder must state that the Bid includes an offer by such bidder to purchase some or all of the Assets, and identify the Assets with reasonable specificity and the particular liabilities, if any, such bidder seeks to assume.  With respect to a proposed Restructuring Transaction, each bidder must propose a Plan Term Sheet for the Debtors that includes the treatment of the Debtors' creditors that complies with the requirements of the Bankruptcy Code.

(ii)    **Purchase Price**.  With respect to a proposed Sale Transaction, each Bid must clearly set forth the purchase price to be paid.  With respect to a proposed Restructuring Transaction, each Bid must clearly set forth the cash or other consideration to be furnished, including and identifying separately any cash and non-cash components; *provided*, that in the event of a Restructuring Transaction, the Plan Term Sheet must provide for the payment, in cash, of the full outstanding amounts due under the Debtors' prepetition secured credit facility.

(iii)    **Minimum Bid**.  In the event a Stalking Horse Bidder is designated, each Bid must exceed (a) the Stalking Horse Bid (as determined by the Debtors in consultation with the Consultation Parties), *plus* (b) the amount of the Bid Protections payable to such Stalking Horse Bidder, *plus* (c) the minimum bid increment of $10 million (or such other amount as the Debtors may determine in consultation with the Consultation Parties, which amount may be higher or lower than $10 million).

(iv)    **Bid Deposit**.  Each Bid must be accompanied by a cash deposit (made by wire transfer or certified or cashier's check) equal to $50 million (the "Good Faith Deposit").  The Good Faith Deposit will be held in a segregated account established by the Debtors.

(v)    **Committed Financing**.  If a Bid is not accompanied by evidence of the bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors'

7

satisfaction, in consultation with the Consultation Parties, that demonstrates that such bidder has received sufficient debt and/or equity funding commitments to satisfy such bidder's purchase price (in the case of a Sale Transaction), cash consideration (in the case of a Restructuring Transaction), and other obligations (including any assumed liabilities) under its Bid. Such funding commitments or other financing must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants, conditions and term and termination provisions acceptable to the Debtors, in consultation with the Consultation Parties.

(vi)    **Pro Forma Capital Structure**. Each Bid must include a description of the bidder's pro forma capital structure, if applicable.

(vii)    **Good Faith Offer**. Each Bid must constitute, in the Debtors' reasonable judgment in consultation with the Consultation Parties, a good faith, bona fide offer to consummate the proposed Transaction set forth in such Bid.

(viii)    **Executed Agreement**. Each Bid contemplating a Sale Transaction must be based on the APA (in the absence of a Stalking Horse Agreement), or the Stalking Horse Agreement if one exists, and each Bid contemplating a Restructuring Transaction must be based on a Plan Term Sheet. Bids proposing a purchase of the Assets pursuant to an APA, must include a form of asset purchase agreement indicating any modifications proposed by such bidder to the form APA prepared by the Debtors or the Stalking Horse Agreement if one exists (the "Modified APA"), including those changes related to the purchase price. Bids proposing a Plan Term Sheet must describe in reasonable detail the terms and conditions of such Restructuring Transaction and the treatment of various classes of creditor claims that complies with the applicable requirements of the Bankruptcy Code. In each case, the Modified APA or Plan Term Sheet must be accompanied by a certification signed by an authorized representative of such bidder, pursuant to which such bidder proposes to effectuate the Transaction agreeing to proceed to negotiate, document, and close such Transaction if such Bid is determined by the Debtors, after consultation with the Consultation Parties, to be the highest or otherwise best Bid as provided herein. Each Bid must also identify any non-Debtor assets to be acquired by such bidder in connection with or as contemplated by such Bid and the process to acquire such assets and accompanying timeline.

(ix)    **Contracts and Leases**. Each Bid must identify an initial schedule of each executory contract and unexpired lease to be assumed and assigned to the bidder in connection with the Transaction. Each Bid must identify with specificity the party responsible for satisfying cure amounts and other amounts that have accrued under assumed and assigned contracts and leases after the Petition Date and prior to Closing (as defined herein), including amounts that have accrued but have not yet become due prior to the Closing.

(x)     **No Contingencies**.  Each Bid must contain a clear statement that it is not conditioned on any contingency, including, among others, on obtaining any of the following (a) financing, (b) shareholder, board of directors, or other approvals, and/or (c) the outcome or completion of a due diligence review by the bidder.

(xi)    **Binding and Irrevocable**.  Each Bid must be irrevocable unless and until the Debtors accept a higher or otherwise better Bid and such bidder is not selected as the Back-Up Bidder.  The APA documenting such Bid most provide that, in the event the Bid is chosen as the Back-Up Bid, the Bid will remain irrevocable until the Debtors and the Successful Bidder consummate the Transaction.

(xii)   **Joint Bids**.  The Debtors will be authorized (but are not required) to accept joint Bids in their reasonable discretion, in consultation with the Consultation Parties, on a case-by-case basis.

(xiii)  **Adequate Assurance Information**.  Each Bid must be accompanied by sufficient and adequate financial and other information (the "<u>Adequate Assurance Information</u>") to demonstrate, to the reasonable satisfaction of the Debtors, in consultation with the Consultation Parties, that such bidder (a) has the financial wherewithal and ability to consummate the Transaction covered by the Bid (the "<u>Closing</u>"), and (b) can provide adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and such bidder's willingness to perform, under any contracts that are proposed to be assumed and assigned to such party.  The Bid must also identify a contact person that parties may contact to obtain additional Adequate Assurance Information.  Adequate Assurance Information may include, without limitation, bank and/or financial statements, evidence of board authorization, and financial capacity/commitment letters.  The Adequate Assurance Information may be filed with the Bankruptcy Court by the Debtors.

(xiv)   **Identity**.  Each Bid must fully disclose the identity of each entity that will be participating in such Bid (including any equity owners or sponsors, if the purchaser is an entity formed for the purpose of consummating the proposed Transaction), and the complete terms of any such participation, along with sufficient evidence that the bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties.  A Bid must also fully disclose any connections or agreements with the Debtors, any known, potential, prospective bidder, or Qualified Bidder, or any officer, director, Insider (as such term is defined by the Bankruptcy Code) of the Debtors, or equity security holder of the Debtors.

(xv)    **Authorization**.  Each Bid must contain evidence that the bidder has obtained authorization or approval from its board of directors and, if required, its shareholders (or a comparable governing body reasonably acceptable to the Debtors in consultation with the Consultation Parties) with respect to the

9

submission of its Bid and the consummation of the transactions contemplated in such Bid.

**(xvi)**  **Costs and Expenses; No Fees**.  (a) Each bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed Transaction; (b) by submitting its Bid, each bidder agrees to waive its right to request or receive fees or reimbursement of expenses on any basis, including under section 503(b) of the Bankruptcy Code; and (c) each Bid must expressly state that the Bid does not entitle the bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement; *provided,* that, subject to the terms of the Bidding Procedures Order, the Debtors are authorized in their discretion in consultation with the Consultation Parties to provide the Bid Protections to one or more Stalking Horse Bidders in accordance with these Bidding Procedures.

**(xvii)**  **Adherence to Bidding Procedures**.  By submitting its Bid, each bidder is agreeing to (a) abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction and (b) serve as Back-Up Bidder, if its Bid is selected as the next-highest or otherwise second-best Bid after the Successful Bid with respect to the applicable Assets.

**(xviii)**  **Regulatory Approvals and Covenants**.  A Bid must, if applicable, set forth the regulatory and third-party approvals, including any filings or disclosures necessary under the Hart-Scott-Rodino Act, required for the bidder to consummate the Transaction and the time period within which such bidder expects to receive such approvals (and in the case that receipt of any such approval is expected to take more than thirty (30) days following execution and delivery of the asset purchase agreement or Plan Term Sheet, as applicable, those actions such bidder will take to ensure receipt of such approvals as promptly as possible).

**(xix)**  **As-Is, Where-Is**.  Each Bid must include a written acknowledgement and representation that the bidder (a) has had an opportunity to conduct any and all due diligence regarding the Debtors' Assets and liabilities prior to making its Bid, (b) has relied solely upon its own or its advisors' independent review, investigation, and/or inspection of any documents and/or the Assets and liabilities in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, liabilities, or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in such bidder's proposed asset purchase agreement, or Plan Term Sheet, as applicable.

**(xx)**  **Conditions to Closing**.  Each Bid must identify with particularity each condition to Closing.

**(xxi)** **Time Frame for Closing**.  A Bid must be reasonably likely (based on antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame reasonably acceptable to the Debtors in consultation with the Consultation Parties.

**(xxii)** **Consent to Jurisdiction**.  All bidders must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, any chapter 11 plan in the Debtors' chapter 11 cases, the Transaction documents, and the Closing, as applicable.

**(xxiii)** **Bid Deadline**.  Each Bid must be received by each of the following parties, in writing or electronically, so as to be **actually received** no later than **April ~~11~~24, 2023 at 12:00 p.m.**, Prevailing Eastern Time (the "Bid Deadline"):

    a.    Vital Pharmaceuticals, Inc., 1600 N. Park Drive, Weston, FL 33326, Attn: Greg Robbins (Greg.Robbins@bangenergy.com) and Gregg Metzger (Gregg.Metzger@bangenergy.com);

    b.    Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004, Attn: Andrew Sorkin (andrew.sorkin@lw.com);

    c.    Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 Attn: Liza Burton (liza.burton@lw.com) and Jonathan Weichselbaum (jon.weichselbaum@lw.com);

    d.    Berger Singerman LLP, 1450 Brickell Avenue, Unit 1900, Miami, FL 33131, Attn: Jordi Guso (JGuso@bergersingerman.com) and Michael Niles (mniles@bergersingerman.com);

    e.    Rothschild & Co US Inc., 1251 Avenue of the Americas, 33rd Fl., New York, NY 10020; (ProjectBlast@rothschildandco.com);

    f.    Truist Bank, 10500 Little Patuxent Parkway Suite 450, Columbia, MD 21046, Mail Code 420-20-01-00, Attn: Jade Silver (Jade.Silver@truist.com);

    g.    Moore & Van Allen PLLC, 100 North Tryon Street, Suite 4700, Charlotte, NC 28202-4003, Attn: Luis Lluberas (luislluberas@mvalaw.com), Steve Gruendel (stevegruendel@mvalaw.com), and Cole Richins (colerichins@mvalaw.com);

    h.    Shutts & Bowen LLP, 200 South Biscayne Blvd., Suite 4100, Miami, FL 33131, Attn: Aliette D. Rodz (ARodz@shutts.com), Martha M. Ferral (MFerral@shutts.com), Peter H. Levitt

(plevitt@shutts.com), and Harris J. Koroglu (hkoroglu@shutts.com);

i. Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, NY 10020, Attn: Jeffrey Cohen (jcohen@lowenstein.com), Eric Chafetz (echafetz@lowenstein.com), and Lindsay Sklar (lsklar@lowenstein.com);

j. Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, NJ 07068, Attn: Erica Mannix (emannix@lowenstein.com));

k. Sequor Law, P.A., 1111 Brickell Avenue, Suite 1250, Miami, FL 33131, Attn: Leyza Blanco (lblanco@sequorlaw.com) and Fernando Menendez (fmenendez@sequorlaw.com); and

l. Miller Buckfire & Co. LLC, 787 7th Ave 5th floor, New York, NY 10019, Attn: John D'Amico (john.damico@millerbuckfire.com) and James Doak (james.doak@millerbuckfire.com).

Bids fulfilling all of the preceding requirements, as determined by the Debtors and their advisors, in their reasonable business judgment and in consultation with the Consultation Parties, will be deemed to be "Qualified Bids," and those parties submitting Qualified Bids will be deemed to be "Qualified Bidders." For the avoidance of doubt, and notwithstanding anything herein, any Stalking Horse Bidder (who complies with the Bid Requirements) will be deemed to be a Qualified Bidder and any Stalking Horse Agreement will be deemed a Qualified Bid, which qualify such Stalking Horse Bidder to participate in the Auction (if any). If a Stalking Horse Bid is chosen as the Successful Bid, the rights and obligations of the Stalking Horse Bidder shall be as set forth in the Stalking Horse Agreement (as the same may be modified in connection with the Auction).

All information disclosed by any bidder in connection with all of the preceding requirements will be made available by the Debtors to the Consultation Parties promptly upon the Debtors' receipt thereof but in any event no later than the earlier of one (1) business day or two (2) calendar days following the Bid Deadline or the Debtors' receipt of such information (whichever is later); *provided,* that any confidential financing and/or equity commitment documents received from a bidder shall only be shared with the Consultation Parties on a professional-eyes'-only basis. The Debtors reserve the right, in consultation with the Consultation Parties, to work with any bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed to be a Qualified Bid.

In addition, the Debtors, in consultation with the Consultation Parties, reserve the right to waive any of the Bid Requirements set forth above and deem a Bid to be a Qualified Bid notwithstanding any non-compliance with such requirements. Within three (3) business days after the Bid Deadline, the Debtors and their advisors, in consultation with the Consultation Parties, will determine which bidders are Qualified Bidders and will notify such bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such

12

Qualified Bidders to bid at the Auction.  Any Bid that is not deemed a Qualified Bid will not be considered by the Debtors.

**F.      Evaluation of Qualified Bids and Designation of the Starting Bid**

Prior to the Auction, the Debtors and their advisors will evaluate Qualified Bids and identify the Qualified Bid that is, in the Debtors' reasonable business judgment, in consultation with the Consultation Parties, the highest or otherwise best Bid (the "Starting Bid").   In determining the Starting Bid, the Debtors will take into account, among other things: (i) the amount and nature of consideration offered in each Qualified Bid, and, in the case of a Bid in the form of a Plan Term Sheet, the proposed treatment of the creditors thereunder, (ii) the impact on customers, vendors, and employees, (iii) the certainty of a Qualified Bid leading to a consummated Transaction, (iv) the execution risk attendant to any submitted Bids, (v) the number, type, and nature of any changes to (as applicable) the APA or the Stalking Horse Agreement, if any, requested by the Qualified Bidder, including the type and amount of Assets sought to be purchased and obligations to be assumed in the Qualified Bid, (vi) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Qualified Bid, taking into account any Stalking Horse Bidder's rights to any Bid Protections or the structure, confirmability, and feasibility of a Plan Term Sheet's proposed chapter 11 plan including, the time and costs necessary to negotiate, document, and confirm the proposed chapter 11 plan, (vii) the tax consequences of such Qualified Bid, (viii) the assumption of liabilities, including obligations under contracts and leases, and (ix) the cure amounts to be paid (collectively, the "Evaluation Criteria").

Not later than one (1) business day prior to the date of the Auction, the Debtors will (i) notify the Consultation Parties as to which Qualified Bid is the Starting Bid, and (ii) distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid and to the Consultation Parties.

For the avoidance of doubt, whenever these Bidding Procedures refer to the highest or otherwise best Bid, such determination shall take into account the Evaluation Criteria and any other factors that Debtors, in consultation with the Consultation Parties, reasonably deem relevant to the value of the applicable Bid to the Debtors' estates.

**G.      Only One Qualified Bid**

If only one Qualified Bid is received by the Bid Deadline and such Bid is acceptable to the Debtors after consultation with the Consultation Parties, then the Auction will not occur, the sole Qualified Bidder will be deemed the Successful Bidder, and the Debtors will pursue entry of an order by the Bankruptcy Court approving and authorizing the Transaction to the sole Bidder at the Sale Hearing (as defined herein).

**H.      Credit Bidding**

Notwithstanding anything else contained in these Bidding Procedures, the lenders under the Debtors' prepetition secured credit facility and debtor-in-possession credit facility (the "Prepetition Lenders") with the Agent, shall have the right, subject in all respects to the Bankruptcy Code and other applicable law, to credit bid all or any portion of their allowed

13

secured claims in any Sale Transaction of the Assets constituting the collateral of the Prepetition Lenders under the prepetition secured credit facility at the Auction to the extent provided in section 363(k) of the Bankruptcy Code or other applicable law, in accordance with the applicable provisions of the documents governing such debt obligations; *provided*, that for the avoidance of doubt, (i) the foregoing shall not impair or waive any challenge rights preserved pursuant to the DIP Order or any parties' right to object to selection or approval of such credit bid based on such challenge rights or for good cause shown, and (ii) the Debtors, in consultation with the Committee, may take into account any such objection in evaluating such credit bid.

**I.    Auction**

If more than one Qualified Bid is received by the Bid Deadline, the Debtors will conduct the Auction with respect to the Debtors' Assets.  For the avoidance of doubt, the Debtors may also conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets.  The Auction will commence on **April 1727, 2023, at 10:00 a.m., Prevailing Eastern Time**, or such later time the Debtors reasonably determine at: (i) the offices of Latham & Watkins LLP, located at 1271 Avenue of the Americas, New York, New York 10020; (ii) telephonically; or (iii) by video via Zoom, or other place (or by such other electronic means) as the Debtors reasonably determine; *provided*, that the Debtors timely notify all Qualified Bidders and other invitees of the time and place of the Auction, and for the avoidance of any doubt, the Auction is subject to the right of the Debtors, in the reasonable exercise of their business judgment, to adjourn the Auction to a later date.

**(i)    The Auction Procedures**

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

a.    the Auction will be conducted openly;

b.    only the Qualified Bidders, including any Stalking Horse Bidder, will be entitled to bid at the Auction;

c.    the Qualified Bidders, including any Stalking Horse Bidder, must appear in person, telephonically, or by video via Zoom, or through duly-authorized representatives at the Auction;

d.    only the duly-authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidder) and the Consultation Parties will be permitted to attend the Auction; *provided*, that, in addition, any party in interest that requests permission and is granted permission from the Debtors, in consultation with the Consultation Parties, to attend the Auction shall also be permitted to attend;

e.    bidding at the Auction will begin at the Starting Bid;

f.    subsequent Bids at the Auction, including any Bids by any Stalking Horse Bidder, will be binding and irrevocable and must (i) be made in minimum

increments of $10 million (or such other amount as the Debtors may determine in consultation with the Consultation Parties, which amount may be higher or lower than $10 million) of additional value, if applicable, and (ii) otherwise satisfy the requirements for a Qualified Bid set forth above (provided that the Bid Deadline will not apply);

g.  each Qualified Bidder will be informed of the terms of the previous Bids and the Debtors shall, during the course of the Auction, promptly inform each Qualified Bidder of which subsequent Bids reflect, in the Debtors' reasonable business judgment, and in consultation with the Consultation Parties, the highest or otherwise best Bid for the applicable Assets;

h.  the Auction will be transcribed to ensure an accurate recording of the bidding at the Auction and the transcript will be filed with the Bankruptcy Court;

i.  each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Transaction;

j.  the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then prevailing highest or otherwise best Bid, subject to the Debtors' right to require, in consultation with the Consultation Parties, last and final Bids to be submitted on a "blind" basis;

k.  the Debtors reserve the right, in their reasonable business judgment and in consultation with the Consultation Parties, to adjourn the Auction one or more times to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment and in consultation with the Consultation Parties, may require to establish that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Transaction at the prevailing amount; and

l.  the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors, after consultation with the Consultation Parties, from time to time on the record at the Auction; *provided*, that such other Auction Procedures are (i) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, or any other order of the Bankruptcy Court, (ii) disclosed orally or in writing to all Qualified Bidders and other attendees at the Auction and recorded on the record, and (iii) determined by the Debtors, in good faith and in consultation with the

15

Consultation Parties, to further the goal of attaining the highest or otherwise best offer for the Assets.

For the avoidance of doubt, nothing in the Auction Procedures will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors in consultation with their outside legal counsel).

**J.      Acceptance of the Successful Bid or Successful Bids**

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, will identify the highest or otherwise best Qualified Bid or Qualified Bids for the Assets (each, a "Successful Bid," and each person or entity submitting a Successful Bid, a "Successful Bidder"), which will be determined by considering, among other things, (i) the type and amount of Assets sought to be acquired in the Bid or Bids and whether such Assets should or can be severed from other Assets (whether subject to competing Bids or otherwise), (ii) the total expected consideration to be received by the Debtors and the expected net benefit to the estates, in each case, taking into account any Stalking Horse Bidder's rights to any Bid Protections, (iii) the Qualified Bidder's or Qualified Bidders' ability to close a transaction and the timing thereof (including any anticipated delays to Closing and the cost to the Debtors of such delays), and other matters affecting the execution risk associated with a particular Bid or Bids, (iv) the impact on customers, vendors, and employees, (v) the certainty of the Debtors being able to consummate a successful Transaction, and (vi) any other criteria, including the Evaluation Criteria, as may be considered by the Debtors in their reasonable business judgment (including any considerations raised by the Consultation Parties that the Debtors determine, in their reasonable business judgment, are pertinent to the determination of the highest or otherwise best Bid).

If a Stalking Horse Bid is chosen as the Successful Bid, the rights and obligations of the Stalking Horse Bidder shall be as set forth in the Stalking Horse Agreement (as the same may be modified in connection with the Auction).

The Successful Bidder and the Debtors shall, as soon as commercially reasonably practicable after the conclusion of the Auction, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which such Successful Bid were made.  In addition, the Debtors reserve the right to require the Successful Bidder (or Back-Up Bidder, if applicable) to increase its Good Faith Deposit, *provided* that, in no event shall the Good Faith Deposit be increased by more than $50 million.

The Debtors shall file a notice substantially in the form annexed to the Bidding Procedures Order as **Exhibit 4** (the "Post-Auction Notice") identifying the Successful Bidder, together with financial and other information sufficient to demonstrate adequate assurance of future performance of Assigned Contracts (including the name of the Successful Bidder and a description of its business) and the proposed asset purchase agreement with the Successful Bidder, no later than twenty four (24) hours after the conclusion of the Auction.  Such Post-Auction Notice shall also identify the Back-Up Bidder (if any) and contain either (i) a

16

summary of the material terms of the Back-Up Bid or (ii) proposed asset purchase agreement with the Back-Up Bidder.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing, at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (i) the Auction was conducted, and the Successful Bidder was selected, in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure, and (iii) consummation of the Successful Bid will provide the highest or otherwise best value for the Debtors' Assets and is in the best interests of the Debtors' estates.

If an Auction is held, the Debtors will be deemed to have accepted a Qualified Bid only when (i) such Qualified Bid is declared a Successful Bid at the Auction, and (ii) definitive documentation has been executed in respect thereof. Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid and entry of an order approving such Successful Bid (the "Sale Order"), which Sale Order may be (but is not required to be) the order confirming a chapter 11 plan.

## K.    Sale Hearing

A hearing before the Bankruptcy Court to consider approval of the Successful Bid (the "Sale Hearing"), pursuant to which the Debtors and the Successful Bidder will consummate the Sale Transaction, will be held on ~~April 26~~**May 11**, 2023~~,~~ at ~~————————— a.m./p.m~~**1:30 p.m.**, Prevailing Eastern Time, before the Bankruptcy Court. The Sale Hearing may also be the hearing to consider confirmation of a chapter 11 plan.

**The Sale Hearing may be continued to a later date by the Debtors, in consultation with the Consultation Parties, by sending notice prior to, or making an announcement at, the Sale Hearing. No further notice of any such continuance will be required to be provided to any party.**

At the Sale Hearing, the Debtors will present the Successful Bid to the Bankruptcy Court for approval.

## L.    Designation of Back-Up Bidder

The Qualified Bid that the Debtors determine in their reasonable business judgment (in consultation with the Consultation Parties), is the next-highest or otherwise second-best Bid will be designated the "Back-Up Bid" and the bidder submitting such Back-Up Bid, the "Back-Up Bidder." The Back-Up Bidder shall be required to keep the Back-Up Bid open and irrevocable until the closing of the transaction with the Successful Bidder. Following entry of the Sale Order, if the Successful Bidder fails to consummate the Successful Bid, the Debtors will be authorized, but not required, in consultation with the Consultation Parties, to designate the Back-Up Bid to be the new Successful Bid and consummate the transaction pursuant to the Back-Up Bid as soon as commercially reasonably practicable without further Bankruptcy Court order; *provided* that the Back-Up Bid shall be subject to Bankruptcy Court approval in connection with the Bankruptcy Court's approval of the Successful Bid.

**M.      Return of Good Faith Deposit to Qualified Bidders that Submit Qualified Bids**

The Good Faith Deposit of the Successful Bidder will, upon consummation of the Successful Bid, become property of the Debtors' estates and be credited against any cash consideration payable by the Successful Bidder in connection with the Successful Bid. If the Successful Bidder (or Back-Up Bidder, if applicable) fails to consummate the Successful Bid (or Back-Up Bid, if applicable), then the Good Faith Deposit of such Successful Bidder (or Back-Up Bidder, if applicable) will be irrevocably forfeited to the Debtors and may be retained by the Debtors as damages, in addition to any and all rights, remedies, or causes of action that may be available to the Debtors, in each case, subject to the terms and conditions of the asset purchase agreement or Plan Term Sheet with the Successful Bidder (or Back-Up Bidder, as applicable).

The Good Faith Deposit (including interest (if any)) of any unsuccessful Qualified Bidders (except for the Successful Bidder and the Back-Up Bidder) will be returned within the earlier of five (5) business days after the conclusion of the Auction or upon the permanent withdrawal of the proposed Transaction of the Debtors' Assets by the Debtors. The Good Faith Deposit (including any interest (if any)) of the Back-Up Bidder, if any, will be returned to such Back-Up Bidder no later than five (5) business days after the Closing with the Successful Bidder for the Assets bid upon by such Back-Up Bidder.

Except as set forth in the first paragraph of this <u>Section M</u>, all deposits shall be held in a segregated account maintained by the Debtors and at no time shall be deemed property of the Debtors' estates absent further order of the Bankruptcy Court.

**N.      Consent to Jurisdiction**

All Qualified Bidders at the Auction will be deemed to have (i) consented to the jurisdiction of the Bankruptcy Court, (ii) waived any right to a jury trial in connection with any disputes relating to the Transaction, the Auction, the construction and enforcement of these Bidding Procedures, as applicable, and (iii) consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the sale or bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Bankruptcy Court on an expedited basis.

**O.      Fiduciary Out**

Nothing in these Bidding Procedures will require any director, manager or officer of any Debtor to take any action, or to refrain from taking any action, with respect to these Bidding Procedures, that would violate his or her fiduciary duties to any Debtor.

**P.      Sale Is As Is/Where Is**

The Assets sold pursuant to these Bidding Procedures will be conveyed at the Closing in their then present condition, "as is, with all faults, and without any warranty whatsoever, express

18

or implied," except as otherwise expressly provided in the asset purchase agreement with the Successful Bidder.

## Q.    Reservation of Rights

The Debtors reserve their rights, in consultation with the Consultation Parties, to modify these Bidding Procedures in good faith, including by setting additional procedures for an Auction, to further the goal of attaining the highest or otherwise best offer for the Assets, or impose, at or prior to the Auction, additional customary terms and conditions on the Transaction for the Assets.  The Debtors shall provide notice of any such modification to any Qualified Bidder, including any Stalking Horse Bidder.

All parties expressly reserve all of their rights (and do not waive any such rights) to seek Bankruptcy Court relief with regard to the Auction, the Bidding Procedures, the Transaction, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

For the avoidance of doubt and notwithstanding anything herein to the contrary, nothing in these Bidding Procedures shall, or shall be construed to, in any way amend, impair, prejudice, alter, or otherwise modify the terms of the Debtors' postpetition financing facility, or the rights of any party thereunder or under the DIP Order.

| Summary report: Litera® Change-Pro for Word 10.14.0.46 Document comparison done on 2/21/2023 2:24:28 PM | |
|---|---|
| **Style name:** L&W w. Moves | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://usdocs.lw.com/US-DOCS/134054858/24 | |
| **Modified DMS:** iw://usdocs.lw.com/US-DOCS/134054858/25 | |
| **Changes:** | |
| **Add** | 16 |
| **Delete** | 16 |
| *Move From* | 0 |
| *Move To* | 0 |
| **Table Insert** | 0 |
| **Table Delete** | 0 |
| *Table moves to* | 0 |
| *Table moves from* | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 32 |

**<u>EXHIBIT 2</u>**

**(SALE NOTICE)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al*.,[1] | Case No.: 22-17842-PDR |
| Debtors. | (Jointly Administered) |

_____/

**NOTICE OF PROPOSED SALE,**
**BIDDING PROCEDURES, AUCTION, AND SALE HEARING**

**PLEASE TAKE NOTICE** that, on October 10, 2022, the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed voluntary petitions commencing these cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that, on _____, 2023, the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") entered an order [ECF **No.** _____] (the "Bidding Procedures Order")[2]:

    i.   approving proposed bidding procedures (the "Bidding Procedures"), attached as **Exhibit 1** to the Bidding Procedures Order, by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all of their assets (the "Assets") through either (a) one or more sales of the Assets (each, a "Sale Transaction") or (b) a transaction through a plan of reorganization;

    ii.   approving the Bid Protections, as defined and described in the Bidding Procedures;

    iii.  establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures");

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

    iv.  approving the form and manner of the Sale Notice, attached as **Exhibit 2** to the Bidding Procedures Order;

    v.  approving the form and manner of the Assumption Notice, attached as **Exhibit 3** to the Bidding Procedures Order;

    vi.  approving the form and manner of the Post-Auction Notice, attached as **Exhibit 4** to the Bidding Procedures Order;

    vii.  scheduling a date for an auction if the Debtors receive one or more Qualified Bids (the "Auction");

    viii. scheduling a hearing to approve one or more Sale Transactions, as necessary (the "Sale Hearing"); and

    ix.  granting related relief.

**ALL INTERESTED OR POTENTIALLY AFFECTED PARTIES SHOULD CAREFULLY READ THE BIDDING PROCEDURES AND THE BIDDING PROCEDURES ORDER.**

        **PLEASE TAKE FURTHER NOTICE** that any party that wishes to take part in the sale process contemplated by the Bidding Procedures must submit a Bid for the Assets in accordance with the terms and conditions of the Bidding Procedures by **April ~~12~~24, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Bid Deadline").[3]

        **PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order and the Bidding Procedures, if the Debtors receive more than one Qualified Bid for the Assets, the Debtors will conduct the Auction on **April ~~19~~27, 2023 at 10:00 a.m. (Prevailing Eastern Time)**, or such later time the Debtors reasonably determine at: (a) the offices of Latham & Watkins LLP, located at 1271 Avenue of the Americas, New York, New York 10020; (b) telephonically; or (c) by video via Zoom, or other place (or by such other electronic means) as the Debtors reasonably determine; *provided*, that the Debtors shall timely notify all Qualified Bidders, the Consultation Parties, and all other parties entitled to attend the Auction of such later time or other place. The Debtors have the right to adjourn or cancel the Auction at or prior to the Auction.

        **PLEASE TAKE FURTHER NOTICE** that only the Debtors, the Consultation Parties, Qualified Bidders, the U.S. Trustee, and/or other parties in interest that request permission and are granted permission from the Debtors to attend the Auction, in each case, along with their duly-authorized representatives, shall be entitled to attend the Auction, and only Qualified Bidders shall be entitled to bid at the Auction.

---

[3] Pursuant to the Bidding Procedures, a Bid may contemplate the acquisition of assets of non-Debtors.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of a Sale Transaction and the transfer of the Assets <u>free and clear of all liens, claims, interests, and encumbrances</u> in accordance with section 363(f) of the Bankruptcy Code will be held before the Honorable Judge Peter D. Russin, United States Bankruptcy Judge for the Southern District of Florida, at the Bankruptcy Court, 299 E. Broward Blvd., Courtroom 112, Fort Lauderdale, FL 33301 on ~~May 11~~, 2023 at ~~a.m./p.m~~<u>1:30  p.m.</u> **(Prevailing Eastern Time)**.[4]  The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that any objections to the Sale Transaction (each a "<u>Sale Objection</u>") must be filed no later than **March ~~20~~<u>31</u>**, **2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "<u>Objection Deadline</u>"); *provided* that, notwithstanding the foregoing, any objections to the outcome of the Sale Transaction, the conduct of the Auction or designation or court-approval of the Successful Bid or Back-Up Bid, or Adequate Assurance Objections must be filed no later than 4:00 p.m. (Prevailing Eastern Time) on the date that is three (3) business days prior to the commencement of the Sale Hearing.

<u>**CONSEQUENCES OF FAILING TO TIMELY ASSERT A SALE OBJECTION**</u>

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE A SALE OBJECTION ON OR BEFORE THE APPLICABLE DEADLINE IN ACCORDANCE WITH THE ENTERED BIDDING PROCEDURES ORDER MAY BE FOREVER BARRED FROM ASSERTING ANY SALE OBJECTION TO THE SALE TRANSACTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE TRANSFERRED ASSETS OF THE DEBTORS' ESTATES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS EFFECTED THEREUNDER.**

**PLEASE TAKE FURTHER NOTICE** that this Sale Notice is subject to the terms and conditions of the Bidding Procedures Order, with the Bidding Procedures Order controlling in the event of any conflict.  The Debtors encourage parties in interest to review such document in its entirety.  Parties interested in receiving more information regarding the sale of the Assets and/or copies of any related document, including the Bidding Procedures Order, may make a written request to counsel to the Debtors, Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004 (Attn: Andrew Sorkin (andrew.sorkin@lw.com)) and Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: Liza Burton (liza.burton@lw.com) and Jonathan Weichselbaum (jon.weichselbaum@lw.com)).

Copies of the Bidding Procedures, the Bidding Procedures Order, and this Sale Notice may be examined by interested parties free of charge at the website established for these chapter 11 cases by the Debtors' court-approved noticing, claims, and solicitation agent, Stretto, Inc., at https://cases.stretto.com/VitalPharmaceuticals.

---

[4]  To the extent the Sale Hearing occurs virtually, participation instructions will be provided on the agenda filed on the docket prior to the Sale Hearing.

Dated: _____, 2023                Respectfully submitted,
      Miami, Florida

                                              */s/ ~~Jordi Guso~~Draft*

George A. Davis (admitted *pro hac vice*)        Jordi Guso
Liza L. Burton (admitted *pro hac vice*)          Florida Bar No. 863580
Tianjiao ("TJ") Li (admitted *pro hac vice*)      Michael J. Niles
Brian S. Rosen (admitted *pro hac vice*)          Florida Bar No. 107203
Jonathan J. Weichselbaum (admitted *pro hac vice*)  **BERGER SINGERMAN LLP**
**LATHAM & WATKINS LLP**                          1450 Brickell Avenue, Suite 1900
1271 Avenue of the Americas                       Miami, FL 33131
New York, NY 10020                                Telephone:  (305) 755-9500
Telephone:  (212) 906-1200                        Email:  jguso@bergersingerman.com
Email:  george.davis@lw.com                               mniles@bergersingerman.com
        liza.burton@lw.com
        tj.li@lw.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*Co-Counsel for the Debtors and Debtors in Possession*

11892540-1
US-DOCS\~~138326879.7~~138326879.8

| Summary report: Litera® Change-Pro for Word 10.14.0.46 Document comparison done on 2/21/2023 2:18:23 PM | |
|---|---|
| **Style name:** L&W w. Moves | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://usdocs.lw.com/US-DOCS/138326879/7 | |
| **Modified DMS:** iw://usdocs.lw.com/US-DOCS/138326879/8 | |
| **Changes:** | |
| **Add** | 9 |
| **Delete** | 10 |
| *Move From* | 0 |
| *Move To* | 0 |
| **Table Insert** | 0 |
| **Table Delete** | 0 |
| *Table moves to* | 0 |
| *Table moves from* | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 19 |

**<u>EXHIBIT 3</u>**

**(ASSUMPTION NOTICE)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-17842-PDR |
| Debtors. | (Jointly Administered) |
| _____/ | |

**NOTICE OF (I) EXECUTORY CONTRACTS AND
UNEXPIRED LEASES THAT MAY BE ASSUMED
AND ASSIGNED IN CONNECTION WITH A SALE OF THE DEBTORS'
ASSETS AND (II) THE PROPOSED CURE AMOUNTS WITH RESPECT THERETO**

> **YOU ARE RECEIVING THIS NOTICE OF (I) EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH A SALE OF THE DEBTORS' ASSETS AND (II) THE PROPOSED CURE AMOUNTS WITH RESPECT THERETO (THIS "ASSUMPTION NOTICE") BECAUSE YOU MAY BE A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS. PLEASE READ THIS NOTICE CAREFULLY AS YOUR RIGHTS MAY BE AFFECTED BY THE TRANSACTIONS DESCRIBED HEREIN.**

      **PLEASE TAKE NOTICE** that, on _____, 2023, the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") entered an order [ECF **No.**____] (the "Bidding Procedures Order")[2]:

    i.    approving proposed bidding procedures (the "Bidding Procedures"), attached as **Exhibit 1** to the Bidding Procedures Order, by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all of their assets (the "Assets") through either (a) one or more sales of the Assets (each, a "Sale Transaction") or (b) a transaction through a plan of reorganization;

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

ii. approving the Bid Protections, as defined and described in the Bidding Procedures;

iii. establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures");

iv. approving the form and manner of the Sale Notice, attached as **Exhibit 2** to the Bidding Procedures Order;

v. approving the form and manner of the Assumption Notice, attached as **Exhibit 3** to the Bidding Procedures Order;

vi. approving the form and manner of the Post-Auction Notice, attached as **Exhibit 4** to the Bidding Procedures Order;

vii. scheduling a date for an auction if the Debtors receive one or more Qualified Bids (the "Auction");

viii. scheduling a hearing to approve one or more Sale Transactions, as necessary (the "Sale Hearing"); and

ix. granting related relief.

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures Order approves procedures for (i) the assumption of certain executory contracts and unexpired leases that the Debtors may seek to assume and assign to a Successful Bidder in connection with a Sale Transaction, if one occurs (collectively, the "Assigned Contracts") and (ii) the determination of related Cure Amounts (as defined below).

**PLEASE TAKE FURTHER NOTICE** that the Debtors are parties to numerous executory contracts and unexpired leases and hereby file this notice identifying (i) the Assigned Contracts, and (ii) the proposed amounts, if any, the Debtors believe are owed to the counterparties to the Assigned Contracts to cure any defaults or arrears existing under the Assigned Contract (the "Cure Amounts"), both as set forth on **Exhibit 1** attached hereto. Other than the Cure Amounts listed on **Exhibit 1**, the Debtors are not aware of any amounts due and owing under the Assigned Contracts listed therein.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing is expected to be held before the Honorable Judge Peter D. Russin, United States Bankruptcy Judge for the Southern District of Florida, at the Bankruptcy Court, 299 E. Broward Blvd., Courtroom 112, Fort Lauderdale, FL 33301 on ~~————————~~**May 11**, 2023 at ~~————————~~ ~~a.m./p.m~~**1:30 p.m.** **(Prevailing Eastern Time)**.[3]  The Sale Hearing may be adjourned from time to time without

---

[3] To the extent the Sale Hearing occurs virtually, participation instructions will be provided on the agenda filed on the docket prior to the Sale Hearing.

further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that the listing of an Assigned Contract on **Exhibit 1** does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease as contemplated by section 365(a) of the Bankruptcy Code or that the Debtors have any liability thereunder, and the Debtors expressly reserve all of their rights, claims, causes of action, and defenses with respect to the Assigned Contracts listed on **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that to the extent a counterparty to an Assigned Contract listed on this Assumption Notice objects to the proposed assumption and assignment of the applicable Assigned Contract (other than an Adequate Assurance Objection (as defined below)) or the proposed Cure Amounts, if any, such counterparty must file an objection (a "Contract Objection") in accordance with the procedures described herein and in the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that all Contract Objections must (i) state, with specificity, the legal and factual basis for the objection as well as what Cure Amounts are required, if any, (ii) include appropriate documentation in support thereof, and (iii) be filed no later than **March ~~20~~31, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Contract Objection Deadline"), except as set forth below.

**PLEASE TAKE FURTHER NOTICE THAT IF A COUNTERPARTY TO AN ASSIGNED CONTRACT FILES A CONTRACT OBJECTION IN A MANNER THAT IS CONSISTENT WITH THE REQUIREMENTS SET FORTH HEREIN, AND THE PARTIES ARE UNABLE TO CONSENSUALLY RESOLVE THE DISPUTE PRIOR TO THE SALE HEARING, THE AMOUNT TO BE PAID OR RESERVED WITH RESPECT TO SUCH OBJECTION WILL BE DETERMINED AT THE SALE HEARING, SUCH LATER HEARING DATE THAT THE DEBTORS DETERMINE IN THEIR DISCRETION, OR SUCH OTHER DATE DETERMINED BY THE BANKRUPTCY COURT.  ALL OTHER OBJECTIONS TO THE PROPOSED ASSUMPTION OR PROPOSED ASSUMPTION AND ASSIGNMENT OF THE DEBTORS' RIGHT, TITLE, AND INTEREST IN, TO, AND UNDER THE ASSIGNED CONTRACTS WILL BE HEARD AT THE SALE HEARING.**

Any objections to the ability of the Successful Bidder or Back-Up Bidder (as applicable) to provide adequate assurance of future performance (each, an "Adequate Assurance Objection") must be filed with the Bankruptcy Court no later than 4:00 p.m. (Prevailing Eastern Time) on the date that is three (3) business days prior to the commencement of the Sale Hearing (the "Adequate Assurance Objection Deadline"), or, if applicable, any later deadline established pursuant to the Bidding Procedures Order and the procedures described below.  The identity of the Successful Bidder and Back-Up Bidder (if any) shall be disclosed in a subsequent notice to be delivered to counterparties to the applicable Assigned Contracts following the Auction.

**PLEASE TAKE FURTHER NOTICE** that if the counterparty to an Assigned Contract does not timely file a Contract Objection that is consistent with the requirements set forth above by the Contract Objection Deadline (with respect to all objections other than Adequate

3

Assurance Objections) or the Adequate Assurance Objection Deadline (with respect to Adequate Assurance Objections only), such counterparty will be deemed to have consented to the assumption and assignment of the Assigned Contract to a Successful Bidder, notwithstanding any provision or restriction on assumption or assignment in the Assigned Contract, and shall be forever barred from asserting any objection with regard to such assumption and assignment and/or Cure Amounts set forth in **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that although the Debtors have made a good-faith effort to identify all Assigned Contracts that might be assumed and assigned in connection with a Sale Transaction, the Debtors or the Successful Bidder may identify certain other executory contracts that should be assumed and assigned in connection with a Sale Transaction. Accordingly, the Debtors have reserved the right, at any time before the closing of a Sale Transaction, to (i) supplement the list of Assigned Contracts on this Assumption Notice with previously omitted Assigned Contracts in accordance with the definitive agreement for a Sale Transaction, (ii) remove an Assigned Contract from the list of contracts ultimately selected as an Assigned Contract that may be assumed and assigned in connection with a Sale Transaction, and/or (iii) modify the previously stated Cure Amounts associated with any Assigned Contract; *provided*, that up until the closing of the Sale Transaction, the Debtors may seek to reject any Assigned Contract if such Assigned Contract is not ultimately assigned to the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that in the event that the Debtors supplement the list of Assigned Contracts or modify the previously stated Cure Amounts for a particular Assigned Contract, the Debtors will promptly file and serve a revised Assumption Notice on each counterparty affected. Such counterparties shall file any Contract Objections with respect to the revised Assumption Notice not later than (a) the Contract Objection Deadline in the event that such Assumption Notice was filed and served at least ten (10) days prior to the Contract Objection Deadline, and (b) seven (7) days from the date such supplemental or revised Assumption Notice was filed and served in accordance with the above, in the event that such supplemental or revised Assumption Notice was filed and served less than ten (10) days prior to the Contract Objection Deadline. In the event that a supplemental or revised Assumption Notice was filed and served less than seven (7) days prior to the commencement of the Sale Hearing and an objection is filed that is not otherwise consensually resolved, then such objection will not be adjudicated at the Sale Hearing and will be set for a subsequent hearing.

**PLEASE TAKE FURTHER NOTICE** that this Assumption Notice is subject to the terms and conditions of the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such document in its entirety. Parties with questions regarding the Assumption and Assignment Procedures contained herein should contact the Debtors' counsel, Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004 (Attn: Andrew Sorkin (andrew.sorkin@lw.com)) and Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: Liza Burton (liza.burton@lw.com) and Jonathan Weichselbaum (jon.weichselbaum@lw.com)).

**PLEASE TAKE FURTHER NOTICE** that the inclusion of an Assigned Contract on this Assumption Notice (or a revised Assumption Notice) will not obligate the Debtors to

4

assume any Assigned Contract listed thereon or the Successful Bidder to take assignment of such Assigned Contract and, as set forth above, the Debtors reserve the right to modify the list of Assigned Contracts in accordance with the Bidding Procedures Order, including to remove executory contracts or unexpired leases from such list.  Only those Assigned Contracts that are included on a schedule of assumed and assigned executory contracts and unexpired leases attached to the final Sale Transaction documentation with the Successful Bidder will be assumed and assigned to the Successful Bidder.

*[Remainder of Page Intentionally Left Blank]*

5

Dated: _____, 2023

Miami, Florida

George A. Davis (admitted *pro hac vice*)
Liza L. Burton (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
            liza.burton@lw.com
            tj.li@lw.com
            brian.rosen@lw.com
            jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

Respectfully submitted,

/s/ ~~Jordi Guso~~Draft

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
            mniles@bergersingerman.com

*Co-Counsel for the Debtors and Debtors in Possession*

6

**<u>Exhibit 1</u>**

| Summary report:<br>**Litera® Change-Pro for Word 10.14.0.46 Document comparison done on 2/21/2023 2:19:40 PM** | |
|---|---|
| **Style name:** L&W w. Moves | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://usdocs.lw.com/US-DOCS/138326961/7 | |
| **Modified DMS:** iw://usdocs.lw.com/US-DOCS/138326961/9 | |
| **Changes:** | |
| **Add** | 5 |
| **Delete** | 4 |
| *Move From* | 0 |
| *Move To* | 0 |
| **Table Insert** | 0 |
| **Table Delete** | 0 |
| *Table moves to* | 0 |
| *Table moves from* | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 9 |

**EXHIBIT 4**

**(POST-AUCTION NOTICE)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al*.,[1] | Case No.: 22-17842-PDR |
| Debtors. | (Jointly Administered) |
| _____/ | |

**NOTICE OF SUCCESSFUL AND BACK-UP BIDDERS**
**WITH RESPECT TO THE AUCTION OF THE DEBTORS' ASSETS**

**PLEASE TAKE NOTICE** that, on _____, 2023, the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") entered an order [ECF **No.**_____] (the "Bidding Procedures Order")[2]:

    i.    approving proposed bidding procedures (the "Bidding Procedures"), attached as **Exhibit 1** to the Bidding Procedures Order, by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all of their assets (the "Assets") through either (a) one or more sales of the Assets (each, a "Sale Transaction") or (b) a transaction through a plan of reorganization;

    ii.    approving the Bid Protections, as defined and described in the Bidding Procedures;

    iii.    establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures");

    iv.    approving the form and manner of the Sale Notice, attached as **Exhibit 2** to the Bidding Procedures Order;

    v.    approving the form and manner of the Assumption Notice, attached as **Exhibit 3** to the Bidding Procedures Order;

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

vi.    approving the form and manner of the Post-Auction Notice, attached as **Exhibit 4** to the Bidding Procedures Order;

vii.    scheduling a date for an auction if the Debtors receive one or more Qualified Bids (the "Auction");

viii.    scheduling a hearing to approve one or more Sale Transactions, as necessary (the "Sale Hearing"); and

ix.    granting related relief.

**PLEASE TAKE FURTHER NOTICE** that on [April ~~19~~27, 2023, pursuant to the Bidding Procedures Order, the Debtors conducted the Auction with respect to the Assets.

**PLEASE TAKE FURTHER NOTICE** that, at the conclusion of the Auction, the Debtors, in consultation with their professionals and Consultation Parties, selected the following Successful Bidder and Back-Up Bidder with respect to the Assets:

| Assets | Successful Bidder | Back-Up Bidder |
|---|---|---|
| Substantially all assets of the Debtors as further described in the APA (as defined below) filed contemporaneously herewith and as made available at no cost at: https://cases.stretto.com/VitalPharmaceuticals. | [ ● ] | [ ● ] |

**PLEASE TAKE FURTHER NOTICE** that the Debtors entered into an Asset Purchase Agreement (the "APA"), by and between the Debtors and [ ● ] (the "Successful Bidder"), a copy of which is attached hereto as **Exhibit 1**, pursuant to which the Debtors shall sell substantially all of their assets to the Successful Bidder.

**[PLEASE TAKE FURTHER NOTICE THAT THE APA CONTEMPLATES CONSENSUAL, MUTUAL RELEASES BY THE DEBTORS, THEIR ESTATES, AND CERTAIN AFFILIATED PARTIES, ON THE ONE HAND, AND THE SUCCESSFUL BIDDER AND CERTAIN AFFILIATED PARTIES, ON THE OTHER HAND. THE DEBTORS HAVE REQUESTED THAT THE BANKRUPTCY COURT APPROVE SUCH RELEASES IN CONNECTION WITH APPROVAL OF THE APA AND, UPON APPROVAL OF THE APA AND CONSUMMATION OF THE SALE TRANSACTION(S) CONTEMPLATED THEREBY, SUCH RELEASES SHALL BE BINDING AND EFFECTIVE IN ALL RESPECTS.]**

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of (i) the Sale Transaction, (ii) the transfer of the Assets **free and clear of all liens, claims, interests, and encumbrances** in accordance with section 363(f) of the Bankruptcy Code[, and (iii) approval of the releases contemplated by the APA], will be held before the Honorable Judge

Peter D. Russin, United States Bankruptcy Judge for the Southern District of Florida, at the Bankruptcy Court, 299 E Broward Blvd., Courtroom 112, Fort Lauderdale, FL 33301 on ~~_____, 2022 at _____ a.m./p.m~~May 11, 2023 at 1:30 p.m. (Prevailing Eastern Time).[3]  The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.

PLEASE TAKE FURTHER NOTICE that the deadline for any objections to the sale of the Assets [(including the releases to be effectuated in connection therewith)], except for those described in the following paragraph, was **March ~~20~~31, 2023 at 4:00 pm (Prevailing Eastern Time)** and has already passed.

PLEASE TAKE FURTHER NOTICE that any objections (i) to the outcome of the Sale Transaction, (ii) to the manner in which the Auction was conducted, (iii) to the designation or court-approval of the Successful Bidder or Back-Up Bidder, and/or (iv) based on the ability of the Successful Bidder to provide adequate assurance of future performance to counterparties to executory contracts and unexpired leases contemplated to be assumed and assigned to the Successful Bidder ("Adequate Assurance Objection") must be filed with the Bankruptcy Court no later than **4:00 p.m. (Prevailing Eastern Time) on the date that is three (3) business days prior to the Sale Hearing unless otherwise provided by the Bidding Procedures Order**.

PLEASE TAKE FURTHER NOTICE that, at the Sale Hearing, the Debtors will seek Bankruptcy Court approval of the Successful Bid and the assumption and assignment of the Selected Assigned Contracts to the Successful Bidder.  Unless the Bankruptcy Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the sale of the Debtors' Assets and there will be no further bidding at the Sale Hearing.

PLEASE TAKE FURTHER NOTICE that if the Successful Bidder fails to consummate the Successful Bid, the Debtors may, in consultation with the Consultation Parties, designate the Back-Up Bid to be the new Successful Bid and the Back-Up Bidder to be the new Successful Bidder, and the Debtors will be authorized, but not required, to consummate the transaction with the Back-Up Bidder without further order of the Bankruptcy Court, so long as such Back-Up Bid shall have been approved in connection with the Bankruptcy Court's approval of the Successful Bid, or subject to Bankruptcy Court approval if not.  In such case of a breach or failure to perform on the part of the Successful Bidder and in such other circumstances as may be specified in the definitive documentation governing the Successful Bid, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors.  The Debtors specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Back-Up Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

PLEASE TAKE FURTHER NOTICE that this Post-Auction Notice is subject to the terms and conditions of the Bidding Procedures Order, with the Bidding Procedures Order

---

[3]  To the extent the Sale Hearing occurs virtually, participation instructions will be provided on the agenda filed on the docket prior to the Sale Hearing.

3

controlling in the event of any conflict.  The Debtors encourage parties in interest to review such document in its entirety.  Parties with questions regarding this Post-Auction Notice may make a written request to proposed counsel to the Debtors, Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004 (Attn: Andrew Sorkin (andrew.sorkin@lw.com)) and Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: Liza Burton (liza.burton@lw.com) and Jonathan Weichselbaum (jon.weichselbaum@lw.com)).

     **PLEASE TAKE FURTHER NOTICE** that parties interested in receiving more information regarding the contemplated Sale Transaction and/or copies of any related documents may visit the website maintained by Stretto, Inc., the Debtors' court-approved noticing, claims, and solicitation agent at https://cases.stretto.com/VitalPharmaceuticals.

Dated:  _____, 2023

       Miami, Florida

George A. Davis (admitted *pro hac vice*)
Liza L. Burton (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
       liza.burton@lw.com
       tj.li@lw.com
       brian.rosen@lw.com
       jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

Respectfully submitted,

/s/ ~~Jordi Guso~~ Draft
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
       mniles@bergersingerman.com

*Co-Counsel for the Debtors and Debtors in Possession*

**<u>Exhibit 1</u>**

APA

(to come)

| Summary report: Litera® Change-Pro for Word 10.14.0.46 Document comparison done on 2/21/2023 2:21:02 PM | |
|---|---|
| **Style name:** L&W w. Moves | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://usdocs.lw.com/US-DOCS/138327000/6 | |
| **Modified DMS:** iw://usdocs.lw.com/US-DOCS/138327000/7 | |
| **Changes:** | |
| **Add** | 7 |
| **Delete** | 13 |
| *Move From* | 0 |
| *Move To* | 0 |
| **Table Insert** | 0 |
| **Table Delete** | 0 |
| *Table moves to* | 0 |
| *Table moves from* | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 20 |