UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No. 22-17842 (PDR) |
| | (Jointly Administered) |
| Debtors._____/ | |

# DECLARATION OF CHARLES DELO
# IN SUPPORT OF BIDDING PROCEDURES

I, Charles Delo, hereby declare under penalty of perjury as follows:

1. I submit this declaration ("Declaration") in support of the Bidding Procedures Motion filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors").[2]

## Background and Qualifications

2. I am a Managing Director at Rothschild & Co US Inc. ("Rothschild & Co"), an investment banking firm with its principal office at 1251 Avenue of the Americas, New York, New York 10020.

3. I have over fifteen years of restructuring, reorganization, mergers and acquisitions and strategic advisory expertise, including over twelve years at Rothschild & Co. Prior to joining

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] *Debtors' Motion for an Order (I) Approving (A) Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Procedures for the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Form and Manner of Notice of the Sale Hearing, Assumption Procedures, and Auction Results, (D) Dates for an Auction and Sale Hearing, (E) the Sale of Substantially all of the Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances, and (F) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing the Debtors to Provide Bid Protections, and (III) Granting Related Relief* [ECF No. 707] (the "Bidding Procedures Motion"). Capitalized terms used but not defined otherwise herein shall have the meanings ascribed to them in the Bidding Procedures Motion.

11946787-1

Rothschild & Co, I spent three years in the Transactions Advisory Services team at Ernst & Young LLP. I have advised debtors, creditors and other stakeholders on high profile in-court and out-of-court transactions that have resulted in the restructuring of over $100 billion of liabilities, including but not limited to: Lyons Magnus, Boart Longyear, the Hertz Corporation, Chesapeake Energy Corporation, Floatel International, PG&E Corporation, EXCO Resources, Westinghouse Electric Company LLC, Expro Holdings, CGG SA, Performance Sports Group, Alpha Natural Resources Inc., GTAT Advanced Technologies and OGX. I also have substantial distressed and non-distressed merger and acquisition and financing transaction experience. I hold a BSc in Economics from Nottingham University and am qualified as a Chartered Accountant.

4. Rothschild & Co is a member of one of the world's leading independent investment banking groups, with over fifty offices in more than forty countries. Rothschild & Co has expertise in domestic and cross-border restructurings, merger and acquisitions, new capital raises, debt advisory, and other investment banking services and particular experience in providing high-quality financial advice to financially troubled companies. Rothschild & Co has extensive experience representing the interests of the debtors, creditors, and institutional investors in business and sovereign restructurings and workouts both in and out of chapter 11, and in representing clients in a wide range of industries. Rothschild & Co is both a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

5. Except as otherwise indicated, the statements in this Declaration are based on (a) my personal knowledge, belief, or opinion; (b) information I have received from the Debtors' employees or advisors and/or employees of Rothschild & Co working directly with me or under my supervision, direction, or control; or (c) the Debtors' records maintained in the ordinary course of their business. I am not being specifically compensated for this testimony other than through payments that Rothschild & Co received in its capacity as a professional retained by the Debtors; none of those

2

11946787-1

payments are specifically payable on account of this testimony. I am authorized by the Debtors to submit this Declaration and, if I were called upon to testify, I could and would testify competently to the facts set forth herein.

## Marketing Process

6. In April 2022, Rothschild & Co was engaged by the Debtors to provide investment banking services in connection with restructuring, financing, and strategic initiatives. Rothschild & Co has worked closely with the Debtors' management and retained professionals and has become well-acquainted with the Debtors' capital structure, liquidity needs, and business operations.

7. Since June 2022, the Debtors, together with Rothschild & Co, have been engaged in a marketing process in furtherance of a sale or financing transaction, and since the Debtors' chapter 11 filing on October 10, 2022, have continued to pursue such a sale, financing, or other transaction that will maximize the value of the Debtors' Assets. Since June 2022 and continuing after the Debtors' petition date, in total, Rothschild & Co has contacted over 140 potential transaction counterparties, over 40 of which have executed non-disclosure agreements in order to obtain certain diligence information related to the Debtors' Assets. Following the petition date, Rothschild & Co, in concert with the Debtors and their other advisors, has engaged with prospective counterparties to potentially serve as a Stalking Horse Bidder in connection with the Debtors' sale process, and also has engaged in regular dialogue with interested parties and the Debtors' key stakeholders, responded to numerous diligence requests, and held multiple management presentations and expert diligence sessions to assist potential bidders in their evaluation of a Transaction. To that end, Rothschild & Co has also established a virtual data room containing certain confidential data related to the Assets in an effort to facilitate due diligence with potential buyers that have executed non-disclosure agreements. On behalf of the Debtors, Rothschild & Co will continue working with potential bidders,

with the intent of identifying a Stalking Horse Bidder to set a "floor" for competitive bidding with the ultimate goal of maximizing the value of the Debtors' Assets.

## The Bidding Procedures

8. The proposed Bidding Procedures delineate, among other things, the process and timeline for designating a Stalking Horse Bidder (including the ability to provide Bid Protections), the Bid Deadline, the requirements of a Qualified Bid, the basis for evaluating bids, and the timing and conduct of the Auction, if necessary.

### A.     Stalking Horse Bidder

9. The Bidding Procedures provide that the Debtors are authorized, but not directed, to designate a Stalking Horse Bidder and to provide Bid Protections to any such Stalking Horse Bidder, subject to the notice and objection procedures described in the Bidding Procedures and Bidding Procedures Order.  As is customary, the Bid Protections may include: (i) a breakup fee, and/or (ii) the reimbursement of reasonable and documented out-of-pocket fees and expenses, in an aggregate amount not to exceed 3% of the cash purchase price set forth in the Stalking Horse Agreement.

10. Based on my experience, securing a Stalking Horse Bidder will help maximize value by setting a "floor" for competitive bidding and bring certainty to the process. In order to induce potential bidders to act as a Stalking Horse Bidder, the Debtors may be required to provide the Bid Protections.  I believe, absent the ability to provide the Bid Protections, it is unlikely that a prospective Stalking Horse Bidder would agree to act as a stalking horse.  In any event, parties in interest may still file objections to the designation of the Stalking Horse Bidder and the proposed Bid Protections.

11. The ability to provide Bid Protections is likely to be a necessary inducement for a Stalking Horse Bidder to enter into a Stalking Horse Agreement, and the Debtors' ability to seek

approval of such Bid Protections on an expedited basis will maximize the time available to the Debtors and a potential Stalking Horse Bidder to finalize the terms of a Stalking Horse Bid.

**B.    Minimum and Overbid Amounts**

12.    The Bidding Procedures provide that in the event a Stalking Horse Bidder is designated, each Bid must exceed (a) the Stalking Horse Bid (as determined by the Debtors in consultation with the Consultation Parties), *plus* (b) the amount of any Bid Protections payable to such Stalking Horse Bidder, *plus* (c) the minimum bid increment of $10 million (or such other amount as the Debtors may determine in consultation with the Consultation Parties, which amount may be higher or lower than $10 million).  Overbidding at the Auction will proceed in increments of $10 million (or such other amount as the Debtors may determine in consultation with the Consultation Parties) as well.

13.    I believe that the $10 million bid increments and overbid provisions more generally will promote competitive bidding both before and at the Auction, and are appropriate under the circumstances.

14.    The Bidding Procedures require Qualified Bids to be accompanied by a Good Faith Deposit of $50 million, which may be required to be "topped up" following the Auction.  The amount of the Good Faith Deposit was carefully calibrated to ensure that Qualified Bidders have sufficient "skin in the game" and incentive to proceed with their transactions, without chilling interest in participating in the Debtors' process.  Accordingly, I believe the requirements of the Bidding Procedures relating to the Good Faith Deposit are fair and reasonable under the circumstances.

**C.    Bid Deadline and Auction**

15.    As described in the proposed Bidding Procedures Order, the proposed Bid Deadline requires bids for the purchase of the Assets to be submitted no later than of April 24, 2023 at 12:00 p.m. (Prevailing Eastern Time).  Based on my experience, and in light of the fact that the Debtors'

11946787-1

marketing process is already well underway, this deadline provides potential bidders sufficient time to review a Stalking Horse Bid (which would become public no later than March 24, 2023), obtain additional information regarding the Assets and to formulate and submit a timely and informed competing bid to purchase the Assets.

16.     The Debtors also propose to hold an Auction on April 27, 2023 at 10:00 a.m. (Prevailing Eastern Time). I believe that the schedule for the Auction is appropriate in light of the overall timeline in which the Debtors must consummate a Sale Transaction pursuant to the milestones contained in the DIP Facility.

17.     Lastly, the Debtors request that the Court set a hearing to consider approval of a Sale Transaction on May 11, 2023. The Debtors seek a Sale Hearing at such time in order to ensure compliance with the relevant transaction milestones under their DIP Facility.

18.     I believe these and the other proposed dates and deadlines in the Bidding Procedures are appropriate and reasonable in light of the current status of the marketing process, and the milestones and maturity under the Debtors' DIP Facility.

## Conclusion

19.     Based on my experience, I believe that the proposed Bidding Procedures will maximize the value received for the Assets by facilitating a competitive bidding process in which potential bidders are encouraged to participate and submit competing bids within the specified timeframe, such that the Debtors are able to consummate a transaction prior to exhausting their liquidity and prior to certain sale-related milestones (regarding entry of a sale order and consummation of a sale) required under the DIP Facility. The Bidding Procedures provide for an orderly, definitive, uniform, and appropriately competitive and transparent process through which interested parties may submit offers to purchase the Assets. Additionally, the Bidding Procedures will allow the Debtors to conduct the Auction, if necessary, in a fair and open manner that will

encourage participation by financially capable bidders with demonstrated ability to timely consummate a Sale Transaction. At the Auction, the Debtors, in consultation with the Consultation Parties, will have an opportunity to consider all competing offers and select the offer that they deem to be the highest or otherwise best offer for the Assets.

20.     Given the Debtors' marketing process to date, ongoing marketing efforts, and ability to allow other prospective bidders to participate in the Auction, it is my view, based on my experience, that the proposed postpetition sale process set forth in the Bidding Procedures, including, without limitation, the timeline set forth therein, is reasonable, appropriate, and designed to maximize value under the circumstances. I believe it provides a sufficient time to canvas the market while maintaining competitive tension and complying with the milestones and maturity under the Debtors' DIP Facility, and thus identify the best potential bids for the benefit of all stakeholders.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: February 21, 2023

By:  */s/ Charles Delo*
      Charles Delo, Managing Director
      Rothschild & Co US Inc.