UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-17842-PDR |
| Debtors. | (Jointly Administered) |
| _____/ | |

**DEBTORS' EXPEDITED[2] MOTION TO APPROVE COMPROMISE
BETWEEN  DEBTOR, VITAL PHARMACEUTICALS, INC.,
AND  SIDEL BLOWING AND SERVICES SAS**
**[Hearing Requested on March 9, 2023 at 2:00 p.m.]**

Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev LLC and Vital Pharmaceuticals International Sales, Inc. (each a "Debtor" and, collectively, the "Debtors"), by undersigned counsel, move the Court, pursuant to Fed. R. Bankr. P.  9019, and Local Rule 9019-1, for entry of an Order approving a compromise between Debtor, Vital Pharmaceuticals, Inc. d/b/a Bang Energy ("Bang") and Sidel Blowing and Services SAS ("Sidel", and, together with Bang, the "Parties").  In support of this Motion, the Debtors state:

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Contemporaneous with the filing of this Motion, the Debtors are filing *Debtors' Ex Parte Motion for Order Shortening Time for Hearing on Debtors' Motion to Approve Compromise Between Debtor, Vital Pharmaceuticals, Inc. and Sidel Blowing and Services SAS;*, seeking to shorten the twenty (21) day notice period prescribed by Bankruptcy Rule 2002(a)(3), to 10 days so that this Motion can be heard on March 9, 2023 at 2:00 p.m., when the Court is scheduled to consider other matters in the Debtors' cases.

11845213-8

**Jurisdiction and Venue**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are section 363 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 9019-1.

**Background**

4.      On October 10, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

5.      The Debtors are operating their business and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* [ECF No. 26] filed on the Petition Date.

7.      On October 11, 2022, the Court entered an order jointly administering the Debtors' chapter 11 cases [ECF No. 43].

8.      On November 1, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in these chapter 11 cases [ECF No. 245].    On November 23, 2022, the United States Trustee reconstituted the Committee [ECF No. 400].

9.      Prior to the Petition Date, on or about November 25, 2020, Bang agreed to purchase certain equipment (the "Equipment") and services from Sidel pursuant to the mutually

executed Offer nr. 105309 rev. C.5.5., and any purchase orders or change orders in connection therewith (collectively, the "Purchase Agreement").

10.    Sidel is located in France and is a leading provider of equipment and service solutions for packaging beverage, food, home and personal care products in PET (a polymer material suitable for product packing), can, glass and other materials.

11.    Pursuant to the Purchase Agreement, Bang agreed to purchase and Sidel agreed to sell and install the Equipment the Debtors intended to utilize at the yet-to-be completed manufacturing facility located in Lithia Springs, Georgia (the "Lithia Springs Facility") and owned by JHO GA-1 Investment, LLC, a non-debtor ("JHO GA").  The Equipment is highly specialized and was designed for Bang's intended use at the Lithia Springs Facility.

12.    Prior to the Petition Date, on or about April 30, 2022, Sidel delivered the Equipment to the Lithia Springs Facility, and Bang paid Sidel the sum of $9,036,351.09 for the Equipment (the "Equipment Fee").  The Equipment has not been installed and has been stored in its original packing. Bang has not paid the final payment of $767,816.20 (the "Installation Fee") due to Sidel pursuant to the Purchase Agreement, which sum was allocated to Sidel's anticipated installation of the Equipment.

13.    Since the commencement of these cases, Bang has determined that it no longer desires for Sidel to complete the installation of the Equipment and no longer intends to operate a facility in Lithia Springs Facility.

14.    The Lithia Springs Facility is presently under contract for sale to a third party, which sale is expected to close on or about March 16, 2023 (the "Closing Date").

15.    The Equipment must be removed from the Lithia Springs Facility prior to the closing on the sale of the real property.

## Relief Requested

16.     Bang and Sidel have agreed to amicably resolve and settle any and all disputes and claims arising under the Purchase Agreement, to terminate the Purchase Agreement and have entered into an *Agreement for Takeback of Equipment* dated February 23, 2023 (the "Agreement").  A copy of the Agreement is attached hereto as **Exhibit A**, which memorializes the terms and conditions of their resolution – including the return of Applicable Equipment (as defined below) - and is subject to the approval of this Court after notice and hearing.  The principal terms and conditions of the Agreement are as follows:[3]

a.     Sidel has agreed to take back a portion of the Equipment and the related ancillary parts (collectively, the "Applicable Equipment") from Bang, and return a portion of the Equipment Fee, in the amount of One Million Seven Hundred Fifty-Five Thousand Seven Hundred Euros (€1,755,700) (the "Settlement Amount"), which sum is equal to approximately $1,852,981.53 as of February 24, 2023. As set forth in the Agreement, the Settlement Amount for the Applicable Equipment will be paid by Sidel to Bang no later than fifteen (15) days following satisfaction of the release conditions set forth in Section VI of the Agreement and in paragraphs 16(d) and (e) below.   A description of the Applicable Equipment to be returned to Sidel is set forth as follows:

   i.     EvoBlow SBO34 Xs P40 GM Regular;

   ii.     Filler SF300 192 / 48, P94;

   iii.     Capper:  EURO PK IES 48 heads, pitch 94 AROL;

   iv.     Cap Feeder 22" Tall CF24 & FTAC;

   v.     Mixer SM500 M1; and

---

[3] The terms and conditions set forth herein are in summary form only. The Debtors urge all interested parties in interest to review the Agreement in its entirety for all of the terms and conditions of the Agreement.

vi.        Atelier Francois oil free high pressure air compressor L4A – 30-40 bar

b.        Sidel will remove, load and ship the Applicable Equipment from the Lithia Springs Facility at no cost to Bang.

c.        Sidel shall be responsible for coordinating the removal, loading and shipment of the Applicable Equipment from the Lithia Springs Facility, such that the Applicable Equipment shall be entirely removed and shipped away from the Lithia Springs Facility as of no later than March 10, 2023; provided that Bang cooperates with Sidel in such shipping.  Sidel shall solely and fully bear the costs of such removal, loading and shipment from the Lithia Springs Facility of the Applicable Equipment.  Sidel agrees to protect, indemnify, defend and hold Bang and its bankruptcy estate harmless from and against, and reimburse Bang for any and all losses, costs, claims, settlements, damages, expenses (including legal and other professional fees and expenses) for any damage or destruction to the Lithia Springs Facility arising from, or caused by, Sidel's removal and/or transport of the Applicable Equipment.

d.        In connection with the Agreement and in consideration of the mutual commitments and obligations set forth in the Agreement, Sidel will release Bang, along with its owners, managers, members, officers, directors, employees, shareholders, partners, agents, attorneys, predecessors, successors and assigns, parents, and subsidiary entities, insurers, insured, heirs, successors, assigns and affiliates, from any actual or alleged remaining payment, or other monetary obligation or claim under the Purchase Agreement (including, but not limited to the Installation Fee, whether such obligation or claim actually or allegedly arose before or since the Petition Date,

e.        Further, in connection with the Agreement, and in consideration of the mutual commitments and obligations set forth in the Agreement, Bang will release Sidel, along

with its owners, managers, members, officers, directors, employees, shareholders, partners, agents, attorneys, predecessors, successors and assigns, parents, and subsidiary entities, insurers, insured, heirs, successors, assigns and affiliates, from any obligations due to Bang under the Purchase Agreement, including the obligation to install the Equipment or perform any further services related to the Equipment and acknowledge and agree that all warranties with respect to the Equipment have expired.

f.       Bang and Sidel acknowledge and agree that Sidel has full, clean and clear title to the Applicable Equipment, free and clear of any lien, security interest, pledge, mortgage or similar encumbrance and no party has any right, interest or claim with respect to the Applicable Equipment.

g.       As set forth in the Agreement, Sidel transfers title to all Equipment other than the Applicable Equipment, to Bang free and clear of all liens, security interests, pledges, mortgages or similar encumbrances.

h.       Bang shall provide Sidel with any documentation that may be required or otherwise reasonably requested by Sidel (such as, for example, a bill of sale or certificate of title);

i.       Each party will be responsible for and pay its own legal and accounting fees and other costs in connection with this transaction.

### Legal Authority

17.     The Debtors seek approval of the Agreement pursuant to 9019 of the Federal Rules of Bankruptcy Procedure.

18.     Rule 9019(a) provides that, after notice and a hearing, a court may approve a proposed settlement of a claim.  The decision of whether or not to approve a compromise is

11845213-8                                                                 6

within the sound discretion of the court. *In re Carson*, 82 B.R. 847 (Bankr. S.D. Ohio 1987); *In re Mobile Air Drilling Co.*, 53 B.R. 605 (Bankr. N.D. Ohio 1985).

19.     In passing on proposed settlements, the standard that courts applied under the former Bankruptcy Act is the same standard as courts should apply under the Bankruptcy Code. *In re Carla Leather, Inc.*, 44 B.R. 457, 466 (Bankr. S.D.N.Y. 1984).  As stated by the United States Supreme Court in *Protective Committee v. Anderson*, 300 U.S. 414 (1968), under the Act, to approve a proposed settlement, a court must find that the settlement was "fair and equitable" based on an educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. *Protective Committee*, 300 U.S. at 424.

20.     This test was adopted by the Eleventh Circuit in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990), which provides additional guidance as to whether a compromise should be approved. *Justice Oaks* established a four-part test for approval:

(a)     The probability of success in litigation;

(b)     The difficulties, if any, to be encountered in the matter of collection;

(c)     The complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

(d)     The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

21.     The Agreement satisfies the *Justice Oaks* standard.

22.     Applying the foregoing, the terms of the Agreement satisfy that four-part test relating to the Rule 9019 request.  The Parties believe that after full and careful consideration of the Agreement, approval of the Agreement would be in the best interests of Bang's estate.

Specifically, Sidel is waiving any claims it may have against Bang relating to the Purchase Agreement, including the payment of the Installation Fee, and is removing the Applicable Equipment from the Lithia Springs Facility at no cost to Bang, and taking back the unnecessary Applicable Equipment from Bang for the sum of One Million Seven Hundred Fifty-Five Thousand Seven Hundred Euros (€1,755,700) which sum is equal to approximately $1,852,981.53 as of February 24, 2023. The Debtors believe that the terms of the proposed return of the Applicable Equipment are fair and favorable to the Debtors and that the Applicable Equipment Settlement Amount is reflective of the fair market value. Furthermore, the return of the Applicable Equipment is on an "as is, where is" basis, and does not contain any representations or warranties.

23. Counsel for each of the Parties is mindful of the additional administrative expenses that will be incurred in the event that the Agreement is not approved. The Parties believe that resolution of any claims of Sidel under the Purchase Agreement, upon the terms set forth in the Agreement, is reasonable and falls well above the lowest point in the range of reasonableness as required by Rule 9019 of the Federal Rules of Bankruptcy Procedure and applicable caselaw.

24. Prior to the filing of this Motion, the Debtors conferred with counsel to the Committee regarding the relief the Debtors seek herein. The Committee consents to the relief requested in this Motion.

25. **WHEREFORE**, the Debtors respectfully request that this Court enter an Order, substantially in the form attached hereto as **Exhibit B**, (a) granting this Motion; (b) approving the Agreement including the return of the Applicable Equipment by Sidel for the sum of One Million Seven Hundred Fifty-Five Thousand Seven Hundred Euros (€1,755,700) which sum is

equal to approximately $1,852,981.53 as of February 24, 2023; and (c) granting such other and further relief as the Court deems just and proper.

Dated: February 27, 2023
       Miami, Florida

Respectfully submitted,

/s/ Michael J. Niles
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
        mniles@bergersingerman.com

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
        tj.li@lw.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*Co-Counsel for the Debtors*

11845213-8

9

**<u>EXHIBIT A</u>**

**(Agreement)**

## AGREEMENT FOR TAKEBACK OF EQUIPMENT

This Agreement for Take Back of Equipment *("Agreement")*, dated as of February 23, 2023, by and between Sidel Blowing & Services SAS ("*Sidel*") and Vital Pharmaceuticals Inc., d/b/a Bang Energy ("*Vital*" and together with Sidel, each a "*Party*" and together the "*Parties*").

WHEREAS, on or about November 25, 2020, Vital agreed to purchase certain equipment and services from Sidel pursuant to the mutually executed Offer nr. 105309 rev. C.5.5. and any purchase orders or change orders in connection therewith (the "*EPA*");

WHEREAS, Sidel fully completed delivery of the Equipment (as defined in the EPA) on or about April 30, 2022, and such equipment has not yet been installed due to Vital's request and is being stored at the facility owned by JHO GA- 1 Investment, LLC and located in Lithia Springs, Ga. (the "Lithia Springs Facility");

WHEREAS, Vital has not made the final payment due to Sidel in connection with installation of the Equipment under the EPA and, pursuant to the EPA, Sidel retains title to the Equipment;

WHEREAS, on October 10, 2022, Vital and certain of its affiliates filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code (the "*Bankruptcy Code*") in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy *Court*");

WHEREAS, the Parties desire for Sidel to take back a portion of the Equipment in exchange for the consideration and releases contemplated by this Agreement; and

NOW, THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged and agreed, the Parties agree as follows:

I.    **ASSETS TO BE TAKEN BACK:** Subject to the Conditions set forth herein and for the consideration set forth below, Sidel shall take back the following Equipment and the related ancillary parts (the "*Applicable Equipment*"):

    a.   EvoBlow SBO34 Xs P40 GM Regular
    b.   Filler SF300 192 / 48, P94
    c.   Capper: EURO PK IES 48 heads, pitch 94 AROL
    d.   Cap Feeder 22" Tall CF24 & FTAC
    e.   Mixer SM500 M1
    f.   Atelier Francois oil free high pressure air compressor L4A – 30-40 bar

II.    **TITLE TO EQUIPMENT**:

    a.   *Applicable Equipment*: Vital acknowledges and agrees that (i) Sidel has full, clean and clear title to the Applicable Equipment, free and clear of any lien, security interest, pledge, mortgage or similar encumbrance and (ii) that no other party has any right, interest or claim with respect to the Applicable Equipment.

    b.   *Other Equipment*: Sidel hereby transfers title to all Equipment other than the Applicable Equipment to Vital free and clear of all liens, security interests, pledges, mortgages or similar encumbrances.

III.    **CONSIDERATION**: In consideration for taking back the Applicable Equipment and the other agreements contemplated by this Agreement, Sidel shall pay to Vital One Million Seven Hundred Fifty-Five Thousand Seven Hundred Euros (€1,755,700) no later than fifteen (15) days following the satisfaction of the conditions set forth in Section VI, and Sidel shall bear, at its cost, the costs and expenses of removing loading and shipping the Applicable Equipment from the premises.

**IV.**    Sidel payment shall be made ACH to Vital's account in accordance with the following ACH instructions:

Account Name:  Vital Pharmaceuticals, Inc.

Banking Institution: Truist

Account No.: ▮▮▮▮▮▮7174

Routing No.: 263191387

**V.**    **RELEASE:**

a.   *Release of Vital*. In connection with the foregoing, and in consideration of the mutual commitments and obligations set forth within this Agreement, Sidel hereby releases Vital, along with its owners, managers, members, officers, directors, employees, shareholders, partners, agents, attorneys, predecessors, successors and assigns, parents, and subsidiary entities, insurers, insured, heirs, successors, assigns and affiliates, from any actual or alleged remaining payment, or other monetary, obligation or claim under the EPA, whether such obligation or claim actually or allegedly arose before or since Vital's aforesaid Chapter 11 filing on October 10, 2022.

b.   *Release of Sidel*.  In connection with the foregoing, and in consideration of the mutual commitments and obligations set forth within this Agreement, Vital hereby releases Sidel, along with its owners, managers, members, officers, directors, employees, shareholders, partners, agents, attorneys, predecessors, successors and assigns, parents, and subsidiary entities, insurers, insured, heirs, successors, assigns and affiliates, from any obligations due to Vital under the EPA, including the obligation to install the Equipment or perform any further services related to the Equipment and acknowledges and agrees that all warranties with respect to the Equipment have expired.

**VI.**    **CONDITIONS**: Sidel's obligations pursuant to this Agreement are expressly contingent upon the following:

a.   The entry of a mutually acceptable Bankruptcy Court order, pursuant to Bankruptcy Rule 9019, approving the terms of this Agreement.

**VII.**    **REPRESENTATIONS & WARRANTIES**: Each Party represents to the other Party that:

a.   *Organization; Good Standing*. Such Party (i) is duly organized and validly existing under the laws of the state or country of organization or formation; (ii) has all requisite power and authority to own, lease and operate the properties and assets used in its business; and (iii) is duly qualified to do business and is in good standing under the laws of each state, country or other jurisdiction in which the operation of its business requires such qualification.

b.   *Authority; Enforceability*. Such Party has the right, authority, power and capacity to (i) execute and deliver this Agreement and (ii) perform its obligations hereunder. The execution and delivery and the consummation of the transactions contemplated thereby have been duly and validly authorized by all necessary corporate or organizational action. This Agreement has been duly and validly executed and delivered by such Party and shall constitute, the legal, valid and binding obligation of such Party, enforceable against it in accordance with its terms.

    c.   *Consents and Approvals; No Violations*. The execution and delivery of this Agreement and the performance of the such Party's obligations hereunder and the consummation of the transactions contemplated thereby will not: (a) conflict with or result in a breach of the terms, conditions, or provisions of, (b) constitute a default under, (c) result in a violation of, (d) result in the creation of any lien on the Equipment pursuant to, or (e) except for Bankruptcy Court approval pursuant to Bankruptcy Rule 9019(b), require any governmental authorization, exemption or other action by or declaration or notice to any third party or governmental authority pursuant to (i) any organizational documents of such Party or (iii) any statute, law, treaty, rule, regulation, order, decree, writ, injunction or determination of any arbitrator or court or governmental authority or any approval, consent, license, permit or other authorization issued, granted, given or otherwise made available by or under the authority of any governmental authority.

**VIII.**   **TIMING**: Sidel shall be responsible for coordinating the removal, loading and shipment of the Applicable Equipment from the premises, such that the Applicable Equipment shall be entirely removed and shipped away from the premises as of no later than March 10, 2023; provided, Vital cooperates with Sidel in such shipping. Sidel shall solely and fully bear the costs of such removal, loading and shipment from the premises of the Applicable Equipment. Sidel hereby agrees to protect, indemnify, defend and hold Vital and its bankruptcy estate harmless from and against, and reimburse Vital for any and all losses, costs, claims, settlements, damages, expenses (including legal and other professional fees and expenses) for any damage or destruction to the Lithia Springs Facility arising from, or caused by, Sidel's removal and/or transport of the Applicable Equipment.

**IX.**   **BANKRUPTCY COURT APPROVAL**: After execution of this Agreement, Vital shall promptly file a motion and proposed order in a form reasonably acceptable to Sidel, seeking entry of an Order by the Bankruptcy Court approving the Agreement pursuant to Bankruptcy Rule 9019.

**X.**   **MISCELLEANOUS**:

    a.   *Notices*. All notices and other communications hereunder shall be in writing and shall be (i) delivered by hand; (ii) sent by email transmission; or (iii) sent by certified mail or by a nationally recognized overnight delivery service, charges prepaid, to the addresses set forth below hereto (or such other address for a party as shall be specified by like notice). Each such notice or other communication shall be deemed to have been duly given and to be effective (x) if delivered by hand, immediately upon delivery if delivered on a business day during normal business hours and, if otherwise, on the next business day; (y) if sent by email transmission, immediately upon confirmation that such transmission has been successfully transmitted on a business day before or during normal business hours and, if otherwise, on the business day following such confirmation; or (z) if sent by a nationally recognized overnight delivery service, on the day of delivery by such service or, if not a business day, on the first business day after delivery, or if sent by certified mail, on the fifth (5th) business day following mailing.

    b.   *Assignment; No Third-Party Rights*. This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns, but neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any party hereto without the prior written consent of the other parties hereto.

    c.   *Amendment*. No alteration or amendment to this Agreement shall be valid unless made in writing and signed by both Parties.

    d.   *Governing Law*. This Agreement and any other related documents are governed and construed in accordance with the laws of the State of Florida, without giving effect to the conflict of laws provisions thereof. Each party irrevocably and unconditionally agrees that it will not commence any action, litigation, or proceeding of any kind whatsoever against any other party in any way

arising from or relating to this Agreement and all contemplated transactions in any forum other than the courts of the State of Florida located in Broward County, Florida, or the federal courts applicable thereto. Each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in such courts. Each party agrees that a final judgment in any such action, litigation, or proceedings is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Notwithstanding the foregoing, for so long as Vital's case is pending before the Bankruptcy Court, any dispute arising from or relating to this Agreement shall be adjudicated exclusively by the Bankruptcy Court each party irrevocably and unconditionally submits to the exclusive jurisdiction of the Bankruptcy Court.

e.   *Severability*. If any provision contained in this Agreement shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein, unless the invalidity of any such provision substantially deprives either party of the practical benefits intended to be conferred by this Agreement. Notwithstanding the foregoing, any provision of this Agreement held invalid, illegal or unenforceable only in part or degree shall remain in full force and effect to the extent not held invalid or unenforceable, and the determination that any provision of this Agreement is invalid, illegal or unenforceable as applied to particular circumstances shall not affect the application of such provision to circumstances other than those as to which it is held invalid, illegal or unenforceable.

f.   *Counterparts*. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. This Agreement may be executed on signature pages exchanged by facsimile, in which event each party shall promptly deliver to the others such number of original executed copies as the others may reasonably request.

g.   *Entire Agreement*. This Agreement constitutes the entire agreement and understanding of the parties hereto in respect of the subject matter hereof. This Agreement supersedes all prior agreements, understandings, promises, representations and statements between the Parties and their representatives with respect to the transactions contemplated by this Agreement.

*[Signatures appear on the following page]*

1095742812\2\AMERICAS

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first written above.

DocuSigned by:

*Andréas Baessler*

—64E0805B3C9245F...

Andréas Baessler

VP Spare Parts

**SIDEL BLOWING & SERVICES SAS**

By:

Name:

Title:

DocuSigned by:

*Raphaël Clairin*

—93BEE208A73D414...

Raphaël Clairin

Industrial base management and global resource p

**VITAL PHARMACEUTICALS INC.**

By: *Gregg Metzger*

Gregg Metzger (Feb 27, 2023 17:10 EST)

Name: Gregg Metzger

Title: Interim General Counsel

**DocuSign**

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 27415A67D7B14B37B1E8AA4F242B81EE | | Status: Completed |
| Subject: Agreement for Takeback of Equipment | | |
| Source Envelope: | | |
| Document Pages: 5 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 2 | Initials: 0 | Sidel E-Signing |
| AutoNav: Enabled | | Avenue de la Patrouille de France |
| EnvelopeId Stamping: Enabled | | Octeville-sur-Mer, France  76930 |
| Time Zone: (UTC+01:00) Brussels, Copenhagen, Madrid, Paris | | brackets@sidel.com |
| | | IP Address: 128.127.142.145 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Sidel E-Signing | Location: DocuSign |
| 2023-02-23 \| 23:17 | brackets@sidel.com | |

## Signer Events

| Signer Events | Signature | Timestamp |
|---|---|---|
| Andréas Baessler<br>andreas.baessler@sidel.com<br>VP Spare Parts<br>Security Level: Email, Account Authentication (None) | *Andréas Baessler*<br>64E0805B3C9245F...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 77.205.153.160<br>Signed using mobile | Sent: 2023-02-23 \| 23:17<br>Viewed: 2023-02-24 \| 00:16<br>Signed: 2023-02-24 \| 00:17 |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |
| Raphaël Clairin<br>raphael.clairin@sidel.com<br>Industrial base management and global resource planning VP<br>Security Level: Email, Account Authentication (None) | *Raphaël Clairin*<br>93BEE208A73D414...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 176.147.183.239 | Sent: 2023-02-23 \| 23:17<br>Viewed: 2023-02-27 \| 10:14<br>Signed: 2023-02-27 \| 10:14 |
| **Electronic Record and Signature Disclosure:**<br>    Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 2023-02-23 \| 23:17 |
| Certified Delivered | Security Checked | 2023-02-27 \| 10:14 |
| Signing Complete | Security Checked | 2023-02-27 \| 10:14 |

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Completed | Security Checked | 2023-02-27 | 10:14 |

| Payment Events | Status | Timestamps |
|---|---|---|

# 2023-02-27_vpx_-_agreement_for_takeback_of_equipment_-_final

Final Audit Report                                                          2023-02-27

| | |
|---|---|
| Created: | 2023-02-27 |
| By: | Gabrielle Mckean (gabrielle.mckean@vpxsports.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAALWzssIMGFP5J2o9hybrkNRwC8gQsMxOH |

## "2023-02-27_vpx_-_agreement_for_takeback_of_equipment_-_final" History

Document created by Gabrielle Mckean (gabrielle.mckean@vpxsports.com)
2023-02-27 - 10:09:04 PM GMT- IP address: 108.207.136.100

Document emailed to gregg.metzger@bangenergy.com for signature
2023-02-27 - 10:09:35 PM GMT

Email viewed by gregg.metzger@bangenergy.com
2023-02-27 - 10:09:59 PM GMT- IP address: 104.47.55.254

Signer gregg.metzger@bangenergy.com entered name at signing as Gregg Metzger
2023-02-27 - 10:10:15 PM GMT- IP address: 74.175.96.98

Document e-signed by Gregg Metzger (gregg.metzger@bangenergy.com)
Signature Date: 2023-02-27 - 10:10:17 PM GMT - Time Source: server- IP address: 74.175.96.98

Agreement completed.
2023-02-27 - 10:10:17 PM GMT

Adobe Acrobat Sign

**<u>EXHIBIT B</u>**

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                    Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]        Case No.: 22-17842-PDR

      Debtors.                                        (Jointly Administered)

_____/

**ORDER GRANTING DEBTORS' EXPEDITED MOTION TO APPROVE
COMPROMISE BETWEEN DEBTOR, VITAL PHARMACEUTICALS, INC.
AND SIDEL BLOWING AND SERVICES SAS**

**THIS MATTER** having come before the Court on March __, 2023, at _____ p.m., in

Fort Lauderdale, Florida, the *Debtors' Motion to Approve Compromise Between Debtor, Vital*

*Pharmaceuticals, Inc. and Sidel Blowing and Services SAS* (the "Motion") [ECF No. ___] filed by

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

the Debtors[2]. The Court finds that (i) it has jurisdiction over the matters raised in the Motion under 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding under 28 U.S.C § 157(b)(2)(A), and that this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; (v) notice of the Motion and the hearing were appropriate under the circumstances and pursuant to the *Order Granting Debtors' Ex Parte Motion For Order Shortening Time for Hearing On Debtors' Motion to Approve Compromise Between (I) Debtor, Vital Pharmaceuticals, Inc.; and (II) Sidel Blowing and Services SAS* [ECF. No. __] no other notice need be provided; and (vi) upon review of the record before the Court, including the legal and factual bases set forth in the Motion and the statements made by counsel at the hearing, good and sufficient cause exists to grant the relief requested in the Motion, it is

**ORDERED AND ADJUDGED** as follows:

1.      The Motion is **GRANTED**.

2.      The Agreement attached to the Motion as Exhibit A is **APPROVED** in its entirety, and each and every provision of the Agreement is incorporated herein as if fully set forth in this Order.

3.      Proper, timely, adequate, and sufficient notice of the Motion was provided and no other or further notice of the Motion or of the entry of this Order is required.

4.      The Parties to the Agreement are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Agreement.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Motion.

5.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C.

§ 158(a).  Notwithstanding an applicability of Bankruptcy Rule 6004(h), the Court expressly finds

that there is no just reason for delay in the implementation of this Order, and expressly directs

entry of judgment as set forth herein.  This Order shall be effective immediately upon entry, and

the Parties are authorized to consummate the terms and conditions set forth in the Agreement

immediately upon entry of this Order.

6.      The Parties are directed to comply with the terms of the Agreement, and the Court

reserves jurisdiction to enforce the terms and conditions of the Agreement.

#   #   #


Submitted by:
Jordi Guso, Esq.
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com
Email:  mniles@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

3