UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                    Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]                  Case No.: 22-17842-PDR

    Debtors.                                              (Jointly Administered)

_____/

### DEBTORS' EXPEDITED[2] MOTION TO APPROVE COMPROMISE BETWEEN (I) DEBTOR, VITAL PHARMACEUTICALS, INC.; AND (II) CROWN CORK & SEAL USA, INC. AND CROWN METAL PACKAGING CANADA LP
[Hearing Requested on March 9, 2023 at 2:00 p.m.]

Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev LLC and Vital Pharmaceuticals International Sales, Inc. (each a "Debtor" and, collectively, the "Debtors"), by undersigned counsel, move the Court, pursuant to Fed. R. Bankr. P. 9019 and Local Rule 9019-1, for entry of an Order approving a compromise between Debtor, Vital Pharmaceuticals, Inc. d/b/a Bang Energy ("VPX") and Crown Cork & Seal USA, Inc. and Crown Metal Packaging Canada LP (collectively, "Crown", and, together with VPX, the "Parties"). In support of this Motion, the Debtors state:

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Contemporaneous with the filing of this Motion, the Debtors are filing *Debtors' Ex Parte Motion for Order Shortening Time for Hearing on Debtors' Motion to Approve Compromise Between (I) Debtor, Vital Pharmaceuticals, Inc.; and (II) Crown Cork & Seal USA, Inc. and Crown Metal Packaging Canada LP*, seeking to shorten the twenty (21) day notice period prescribed by Bankruptcy Rule 2002(a)(3), to 8 days so that this Motion can be heard on March 9, 2023 at 2:00 p.m., when the Court is scheduled to consider other matters in the Debtors' cases.

11892077-5

**Jurisdiction and Venue**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The Debtors move for approval of that certain letter agreement entered into between the Parties on February 24, 2023, (the "Agreement"), pursuant to Fed. R. Bankr. P. 9019.  A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

**Background**

4.      On October 10, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code.

5.      The Debtors are operating their business and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* [ECF No. 26] filed on the Petition Date.

7.      On October 11, 2022, the Court entered an order jointly administering the Debtors' chapter 11 cases [ECF No. 43].

8.      On November 1, 2022, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in these chapter 11 cases [ECF No. 245].

9.      Prior to the Petition Date, on or about May 28, 2019, Bang and Crown Cork & Seal USA, Inc. entered into that certain Container Supply Agreement, which was subsequently amended (collectively, the "Container Supply Agreement"), which governed the pre-petition trade terms ("Net 30") between the Parties.

11892077-5                                                  2

10.    In accordance with the Container Supply Agreement, Crown supplies can bodies and can ends (the "Products") and services to the Debtors.

11.    On October 14, 2022, the Court entered an *Order Granting Debtors' Emergency Motion for an Order Authorizing Payment of Prepetition Claims of Critical Vendors* [ECF No. 112] (the "Critical Vendor Order"), which authorized, but did not require, the Debtors to pay or honor prepetition obligations to critical vendors (including Crown) and directed any critical vendor receiving a prepetition claim payment to extend all customary trade terms to the Debtors.

### Relief Requested and Basis Therefor

12.    To receive payment on prepetition claims, Crown has agreed to continue to supply Products and services to the Debtors pursuant to the terms (the "Negotiated Terms") of the Agreement, which is subject to the approval of this Court after notice and hearing. The Negotiated Terms of the Agreement are as follows:[3]

    a.    VPX will pay Crown the balance of the prepetition accounts receivable (net of setoffs, credits or discounts, except as provided in the Agreement) in the amount of $5,538,660 (the "Prepetition Receivables Claim")[4], comprised of $5,344,861 for accounts receivables owed to Crown Cork & Seal USA, Inc. and $193,799 for accounts receivables owed to Crown Metal Packaging Canada LP, which VPX will pay, on its own behalf and on behalf of Debtor, Bang Energy Canada, Inc. ("Bang Energy Canada") over the following timeline:

    i.    The sum of $1,500,000 (which was paid on November 18, 2022); and

    ii.    The sum of $500,000 each week thereafter until the balance of the outstanding Prepetition Receivables Claim has been paid in full.

---

[3] The terms and conditions set forth herein are in summary form only. The Debtors urge all interested parties in interest to review the Agreement in its entirety for all of the terms and conditions of the Agreement.

[4] As set forth in the Agreement, Crown acknowledges that the Prepetition Receivables Claim has been timely and fully paid in accordance with the payment schedule set forth below and in the Agreement.

b.    The prepetition can bodies manufactured for the Debtors and held in inventory by Crown (comprising 68,152,800 can bodies (the "Can Inventory") will be purchased and paid for by VPX, on its own behalf and on behalf of Bang Energy Canada, pursuant to the following terms:

i.    The Debtors will use commercially reasonable efforts to purchase the Can Inventory from Crown by May 19, 2023 (the "Inventory Purchase Period");

ii.    Unless otherwise agreed to in writing, beginning May 13, 2023, Crown will scrap all remaining can bodies in the Can Inventory and invoice VPX for such can bodies, billed at a rate of $69 for 1,000 can bodies (the "Negotiated Inventory Claim"). The Parties estimate that the Negotiated Inventory Claim will be approximately $713,769.19. Beginning March 1, 2023, VPX will pay $178,442.30 each first and 15th of the month through the earlier of the fourth payment or May 15, 2023, towards the Negotiated Inventory Claim. The parties shall true-up the total Negotiated Inventory Claim based upon the total amount of Can Inventory remaining on May 19, 2023. So long as VPX uses best efforts to purchase the entire Can Inventory during the remainder of the Inventory Purchase Period, the true-up may result in VPX having to pay Crown additional sums, such that VPX fully pays the then actual amount of the Negotiated Inventory Claim up to a maximum total amount paid of $1,000,000. If the Negotiated Inventory Claim exceeds a total of $1,000,000, all excess amounts of the Negotiated Inventory Claim shall be a general unsecured claim that will be paid pro rata with other general unsecured claims.

iii.    On March 31, 2023, the Debtors shall pay Crown $65,000.00 for storage of the Can Inventory during the month of April 2023. The Parties shall work in good faith to calculate the storage costs for May 2023, based upon the remaining Can Inventory.

c.    Unless the Agreement is terminated as a result of Crown's failure to extend to the Debtors the Negotiated Terms through no fault of the Debtors, and subject to the approval of the Bankruptcy Court, the Debtors, on behalf of their estates, waive any avoidance action, including those set forth in Chapter 5 of the Bankruptcy Code, or other action, against Crown pursuant to which recovery of any amounts paid by the Debtors to, or received from the Debtors by, Crown prior to the Petition Date could be sought, it being the intention of the Parties that the Debtors pay all amounts owed for cans delivered to the Debtors, including the Prepetition Receivables and Negotiated Inventory Claims (to the extent provided in paragraph 2 of the Agreement) owed to Crown as of the Petition Date as a condition to Crown extending to the Debtors the Negotiated Terms set forth in the Agreement.  Should Crown be required to return any payments previously received from the Debtors prior to the Petition Date, the amount so returned will be added to the Prepetition Receivables Claim required to be paid in full as set forth in the Agreement.

d.    Subject to the terms of the Agreement, Crown will extend to the Debtors the following Negotiated Terms:

i.    All newly manufactured Products will be "made-to-order" with a lead-time of three (3) weeks from the date a purchase order is received and accepted by Crown for such Products. Crown will use commercially reasonable efforts to reduce such lead-time. Once a purchase order is accepted by Crown, no changes will be allowed unless agreed to in writing by the Parties. If during the first quarter of 2023, the Debtors' forecasts become reliable and the new graphics are acceptable to Crown, then, beginning in the second quarter of 2023, the Parties will operate under a new forecasting/production/release process to be agreed, in writing, by the Parties (the "New Forecasting Process"). The Parties agree to meet and discuss in good faith the New Forecasting Process in late February 2023.

ii. The Parties agree to use commercially reasonable efforts to ensure that all dunnage belonging to Crown, whether received by the Debtors prior to or after the Petition Date, is returned to Crown in good condition by March 31, 2023. If Dunnage is not returned or is returned in damaged or in poor condition, then the Debtors will reimburse Crown for the cost of repairing or replacing such Dunnage. Crown shall hold an unsecured claim for all dunnage received by the Debtors prior to the Petition Date and an administrative claim for all dunnage received by the Debtors after the Petition Date that is not returned to Crown or is returned to Crown in damaged or unreasonably deteriorated condition.

iii. Unless the critical vendor payments set forth in numbered paragraph 1 of the Agreement already have been, or hereafter are, completed, payment terms for post-petition shipments of Products remain cash-on-delivery ("COD") for Inventory Cans and cash-in-advance ("CIA") for newly manufactured Products;

iv. Following completion of the payments set forth in numbered paragraph 1 of the Agreement, payment terms for post-petition shipments of Products will be Net 30-days;

v. A post-petition credit limit of $3,000,000 (the "Credit Limit") shall apply to all Products shipped on credit to the Debtors. On April 1, 2023, and each quarter thereafter, as needed, the Parties will meet and re-evaluate in good faith the Credit Limit based on Debtors' requirements, forecasts, financial status, and reliability.

vi. Crown may decline to ship Products to the Debtors if the value of the shipment plus the then-outstanding post-petition balance owed to Crown by the Debtors exceeds the Credit Limit, unless the Debtors provide cash in advance for the amount by which the shipment plus the post-petition balance exceeds the Credit Limit.

11892077-5       6

vii.      The Parties agree that the term of the Container Supply Agreement shall be extended for two years to December 31, 2026, with the exception that, if the Container Supply Agreement is rejected in the Debtors' Chapter 11 cases, any rejection damages claim shall be limited to the term of such agreement as existed on the Petition Date.

viii.      The Debtors will include as an asset for assumption and assignment to the purchaser of Debtors' assets, the Container Supply Agreement including the Negotiated Terms set forth in the Agreement for the remainder of the Term of the Container Supply Agreement.

e.      Except as altered by the Negotiated Terms set forth in the Agreement, all terms of the Container Supply Agreement shall remain in full force and effect between the Parties.

f.      The Parties acknowledge that the Prepetition Receivables Claim and the Negotiated Inventory Claim, as defined in the Agreement, includes only (i) the accounts receivable owed by the Debtors to Crown under the Container Supply Agreement and (ii) the negotiated value of the Inventory Cans (not the actual value of the Can Inventory) and does not include other prepetition amounts that may be owed by the Debtors to Crown under the Container Supply Agreement or that may become owed by the Debtors as a result of action that may be taken by or on behalf of the Debtors under the Bankruptcy Code, including any rejection of the Container Supply Agreement. Crown reserves the right to include these amounts in a proof of claim filed in the Debtors' Chapter 11 cases, and the Debtors reserve the right to object to such proof of claim, as necessary.

g.      Payment of Crown's Prepetition Receivables Claim and Negotiated Inventory Claim in the manner set forth in the [Critical Vendor] Order may occur only upon execution of the Agreement by a duly authorized representative of Crown and the return of the

Agreement to the Debtors. Crown's execution of the Agreement and return of the same to the Debtors constitutes an agreement by Crown and the Debtors. Crown agrees to be bound by the [Critical Vendor] Order and Crown submits to the jurisdiction of the Bankruptcy Court for enforcement thereof, and Crown further agrees:

     i.     to the Negotiated Terms set forth in the Agreement and, subject to the reservations contained in the Agreement and the [Critical Vendor] Order, to the amount of the Prepetition Receivables Claim Negotiated Inventory Claim set forth above;

     ii.     that, from and after the Petition Date until the end of the Term of the Container Supply Agreement, so long as the Debtors pay for such Products in accordance with Negotiated Terms stated in the Agreement, Crown will continue to supply the Debtors with Products or services, as applicable, pursuant to the Negotiated Terms as stated in the Agreement, and the Debtors will pay for such Products in accordance with Negotiated Terms as stated therein; and

     iii.     that Crown has reviewed the terms and provisions of the [Critical Vendor] Order and consents to be bound by such terms.

     h.     Notwithstanding the foregoing, if Crown receives the Prepetition Receivables Claim and Negotiated Inventory Claim payments from the Debtors based on any pre-bankruptcy amount owing to Crown, and Crown does not extend to the Debtors all Negotiated Terms as stated in the Agreement, unless Crown's refusal to extend the Negotiated Terms is in accordance with the Agreement or is the result of the Debtors' default under the Agreement, Crown shall return the Prepetition Receivables Claim and Negotiated Inventory Claim payments to the Debtors, less any amounts owed by the Debtors to Crown post-petition, and the parties shall be returned to their positions immediately prior to execution of the Agreement as if this agreement had not been executed.

i.      If the Agreement is terminated or the critical vendor program is discontinued for any reason other than Crown's failure to extend the Negotiated Terms on the terms set forth therein, Crown shall no longer be required to extend the Negotiated Terms, the Debtors shall pay all amounts owed post-petition in the ordinary course of business or as an Administrative Claim, as defined by the Bankruptcy Code, and the Debtors shall not be entitled to recover any amounts previously paid to Crown as set forth in the Agreement.

13.     The Debtors seek approval of the Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure.

14.     Rule 9019(a) provides that, after notice and a hearing, a court may approve a proposed settlement of a claim.  The decision of whether or not to approve a compromise is within the sound discretion of the court. *In re Carson*, 82 B.R. 847 (Bankr. S.D. Ohio 1987); *In re Mobile Air Drilling Co.*, 53 B.R. 605 (Bankr. N.D. Ohio 1985).

15.     In passing on proposed settlements, the standard that courts applied under the former Bankruptcy Act is the same standard as courts should apply under the Bankruptcy Code. *In re Carla Leather, Inc.*, 44 B.R. 457, 466 (Bankr. S.D.N.Y. 1984).  As stated by the United States Supreme Court in *Protective Committee v. Anderson*, 300 U.S. 414 (1968), under the Act, to approve a proposed settlement, a court must find that the settlement was "fair and equitable" based on an educated estimate of the complexity, expense, and likely duration of . . . litigation, the possible difficulties of collecting on any judgment which might be obtained and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. *Protective Committee*, 300 U.S. at 424.

16.     This test was adopted by the Eleventh Circuit in *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990), which provides additional guidance as to whether a compromise should be approved. *Justice Oaks* established a four-part test for approval:

(a)    The probability of success in litigation;

(b)    The difficulties, if any, to be encountered in the matter of collection;

(c)    The complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and

(d)    The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

17.    The Agreement satisfies the *Justice Oaks* standard.

18.    Applying the foregoing, the terms of the Agreement satisfy that four-part test relating to the Rule 9019 request.  The Parties believe that after full and careful consideration of the Agreement, the Agreement would be in the best interests of the Debtors' estates.

19.    Counsel for each the Parties is mindful of the additional administrative expenses that will be incurred in the event that the Agreement is not approved.  The Parties believe that the Agreement, is reasonable and falls well above the lowest point in the range of reasonableness as required by Rule 9019 of the Federal Rules of Bankruptcy Procedure and applicable caselaw.

**WHEREFORE**, the Debtors respectfully request that this Court enter an Order, substantially in the form attached hereto as **Exhibit B**, (a) granting this Motion; (b) approving

the Agreement; and (c) granting such other and further relief as the Court deems just and proper.

Dated:  March 1, 2023                          Respectfully submitted,
         Miami, Florida

                                               /s/ Jordi Guso
George A. Davis (admitted *pro hac vice*)       Jordi Guso
Tianjiao ("TJ") Li (admitted *pro hac vice*)    Florida Bar No. 863580
Brian S. Rosen (admitted *pro hac vice*)        Michael J. Niles
Jonathan J. Weichselbaum (admitted *pro hac vice*)  Florida Bar No. 107203
**LATHAM & WATKINS LLP**                         **BERGER SINGERMAN LLP**
1271 Avenue of the Americas                     1450 Brickell Avenue, Suite 1900
New York, NY 10020                              Miami, FL 33131
Telephone:  (212) 906-1200                      Telephone:  (305) 755-9500
Email:  george.davis@lw.com                     Email:  jguso@bergersingerman.com
        tj.li@lw.com                                    mniles@bergersingerman.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com


– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com


– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com


*Co-Counsel for the Debtors*

# **<u>EXHIBIT A</u>**



February 21, 2023

CROWN CORK & SEAL USA, INC.
CROWN METAL PACKAGING CANADA LP
770 TOWNSHIP LINE RD
YARDLEY PA 19067-4219

Dear Ron Skotleski,

As Crown Cork & Seal USA, Inc. and Crown Metal Packaging Canada LP (together, "Crown") are no doubt aware, on October 10, 2022 (the "Petition Date"), Vital Pharmaceuticals, Inc. ("VPX"), and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief (the "Chapter 11 Cases") under title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"). On October 13, 2022, we requested the Bankruptcy Court's authority to pay Crown in recognition of the importance of our relationship with Crown and our desire that the Chapter 11 Cases have as little effect on Crown as possible. On October 14, 2022, the Bankruptcy Court entered an order (the "Order") authorizing VPX, under the conditions set forth in the Order and in this agreement, to pay pre-bankruptcy claims of Crown if it agrees to be bound by the terms of the Order. A copy of the Order is enclosed.

To receive payment on pre-bankruptcy claims, Crown agrees to continue supplying can bodies and can ends ("Products") and services to the Debtors based on the terms set forth herein, which modify the Container Supply Agreement dated May 28, 2019, as amended, between VPX and Crown Cork & Seal USA, Inc. ("Container Supply Agreement"), which governed the pre-petition trade terms between the parties ("Net 30"). The Container Supply Agreement and pre-petition trade terms between the parties are hereby amended by the Negotiated Terms set forth herein (the "Amendment").

For purposes of administration of this Amendment as authorized by the Bankruptcy Court, the Debtors and Crown agree as follows:

1.      The balance of the prepetition accounts receivable (net of any setoffs, credits or discounts, except as provided for herein) that the Debtors will pay Crown, pursuant to the terms set forth herein, is $5,538,660 (the "Prepetition Receivables Claim"), comprised of $5,344,861 for accounts receivable owed to Crown Cork & Seal USA,

1

Inc. and $193,799 for accounts receivable owed to Crown Metal Packaging Canada LP. VPX, on its own behalf and on behalf of co-Debtor Bang Energy Canada, will pay the Prepetition Receivables Claim over the following timeline:

a. Friday, November 18, 2022 - $1,500,000.
b. $500,000 weekly thereafter until the balance of the outstanding Prepetition Receivables Claim is brought to zero.

Crown hereby acknowledges that the Prepetition Receivables Claim has been timely and fully paid in accordance with the foregoing payment schedule as of the actual date of execution hereof.

2. The prepetition can bodies manufactured for Debtors and held in inventory by Crown (comprising of 68,152,800 can bodies (the "Can Inventory")) will be purchased/paid for by VPX, on its own behalf and on behalf of Co-Debtor Bang Energy Canada, in accordance with the following:

a. Debtors will use commercially reasonable efforts to purchase the Can Inventory from Crown by May 19, 2023 (the "Inventory Purchase Period").
b. Unless otherwise agreed in writing, beginning May 19, 2023, Crown will scrap can bodies that remain in the Can Inventory and invoice VPX for such can bodies, billed at a rate of $69/1000 can bodies (the "Negotiated Inventory Claim"). The Parties estimate that the Negotiated Inventory Claim will be approximately $713,769.19. Beginning March 1, 2023, VPX will pay $178,442.30 each 1st and 15th of the month through the earlier of the fourth payment or May 15, 2023, towards the Negotiated Inventory Claim. The parties shall true-up the total Negotiated Inventory Claim based upon the total amount of Can Inventory remaining on May 19, 2023. So long as VPX uses best efforts to purchase the entire Can Inventory during the remainder of the Inventory Purchase Period, the true-up may result in VPX having to pay Crown additional sums, such that VPX fully pays the then actual amount of the Negotiated Inventory Claim up to a maximum total amount paid of $1,250,000. If total Negotiated Inventory Claim exceeds $1,250,000, all excess amounts of the total Negotiated Inventory Claim shall be a general unsecured claim that will be paid pro rata with other general unsecured claims.
c. On March 31, 2023, the Debtors shall pay Crown $65,000.00 for storage of the Can Inventory during the month of April 2023. The Parties shall work in good faith to calculate the storage costs for May 2023 based upon the remaining Can Inventory.

3. Unless this agreement is terminated as a result of Crown's failure to extend to the Debtors the Negotiated Terms through no fault of the Debtors, and subject to the approval of the Bankruptcy Court, the Debtors, on behalf of their estates, hereby waive any avoidance action, including those set forth in Chapter 5 of the Bankruptcy Code, or other action, against Crown pursuant to which recovery of any amounts paid by the Debtors to, or received from the Debtors by, Crown prior

to the Petition Date could be sought, it being the intention of the parties that the Debtors pay all amounts owed for cans delivered to the Debtors, including the Prepetition Receivables and Negotiated Inventory Claims (to the extent provided in paragraph 2 hereof) owed to Crown as of the Petition Date as a condition to Crown extending to the Debtors the Negotiated Terms set forth herein. Should Crown be required to return any payments previously received from the Debtors prior to the Petition Date, the amount so returned, will be added to the Prepetition Receivables Claim required to be paid in full hereunder.

4.    Subject to the terms of this agreement, Crown will hereafter extend to the Debtors the following Negotiated Terms:

   a.   All newly manufactured Products will be "made-to-order" with a lead-time of three (3) weeks from the date a purchase order is received and accepted by Crown for such Products. Crown will use commercially reasonable efforts to reduce such lead-time. Once a purchase order is accepted by Crown, no changes will be allowed unless agreed to in writing by the parties. If during Q1 2023, Debtors' forecasts become reliable and the new graphics are acceptable to Crown, then beginning Q2 2023 the Parties will operate under a new forecasting/production/release process to be agreed, in writing, by the Parties (the "New Forecasting Process"). The Parties agree to meet and discuss in good faith the New Forecasting Process in late February 2023.

   b.   The parties agree to use commercially reasonable efforts to ensure that all dunnage belonging to Crown, whether received by the Debtors prior to or after the Petition Date, is returned to Crown in good condition by March 31, 2023. If dunnage is not returned or is returned in damaged or unreasonably deteriorated condition, then Debtors will reimburse Crown for the reasonable actual cost of repairing or replacing such dunnage. Crown shall hold an unsecured claim for all dunnage received by the Debtors prior to the Petition Date and an administrative claim for all dunnage received by the Debtors after the Petition Date that is not returned to Crown or is returned to Crown in damaged or unreasonably deteriorated condition.

   c.   Unless the critical vendor payments set forth in numbered paragraph 1 above already have been, or hereafter are, completed, payment terms for post-petition shipments of Products remain cash-on-delivery ("COD") for Inventory Cans and cash-in-advance ("CIA") for newly manufactured Products.

   d.   Following completion of the payments set forth in numbered paragraph 1 above, payment terms for post-petition shipments of Products will be Net 30-days.

   e.   A post-petition credit limit of $3,000,000 (the "Credit Limit") shall apply to all Products shipped on credit to the Debtors. On April 1, 2023, and each quarter thereafter, as needed, the parties will meet and re-evaluate in good faith the Credit Limit based on Debtors' requirements, forecasts, financial status, and reliability.

   f.   Crown may decline to ship Products to the Debtors if the value of the shipment plus the then-outstanding post-petition balance owed to Crown by the Debtors

exceeds the Credit Limit, unless the Debtors provide cash in advance for the amount by which the shipment plus the post-petition balance exceeds the Credit Limit.

g.  The Parties agree that the term of the Container Supply Agreement shall hereby be extended two years to December 31, 2026, with the exception that, if the Container Supply Agreement is rejected in the Debtors' Chapter 11 cases, any rejection damages claim shall be limited to the term of such agreement as existed on the Petition Date.

h.  Debtors will include as an asset for assumption and assignment to a purchaser of Debtors' assets, the Container Supply Agreement including the Negotiated Terms herein for the remainder of the Term of the Container Supply Agreement.

5.  Except as altered by the Negotiated Terms herein, all terms of the Container Supply Agreement remain in full force and effect between the parties.

6.  The parties acknowledge that the Prepetition Receivables Claim and the Negotiated Inventory Claim, as defined herein, includes only (i) the accounts receivable owed by the Debtors to Crown under the Container Supply Agreement and (ii) the negotiated value of the Inventory Cans (not the actual value of the Can Inventory) and does not include other prepetition amounts that may be owed by the Debtors to Crown under the Container Supply Agreement or that may become owed by the Debtors as a result of action that may be taken by or on behalf of the Debtors under the Bankruptcy Code, including any rejection of the Container Supply Agreement. Crown reserves the right to include these amounts in a proof of claim filed in the Debtors' Chapter 11 Cases and the Debtors reserve the right to object to such proof of claim, as necessary.

7.  Payment of Crown's Prepetition Receivables Claim and Negotiated Inventory Claim in the manner set forth in the Order may occur only upon execution of this letter by a duly authorized representative of Crown and the return of this letter to the Debtors. Crown's execution of this letter agreement and return of the same to the Debtors constitutes an agreement by Crown and the Debtors. Crown agrees to be bound by the Order and Crown submits to the jurisdiction of the Bankruptcy Court for enforcement thereof, and Crown further agrees:

(a)  to the Negotiated Terms set forth herein and, subject to the reservations contained herein and in the Order, to the amount of the Prepetition Receivables Claim Negotiated Inventory Claim set forth above;

(b)  that, from and after the Petition Date until the end of the Term of the Container Supply Agreement, so long as the Debtors pay for such Products in accordance with Negotiated Terms stated herein, Crown will continue to supply the Debtors with Products or services, as applicable, pursuant to the Negotiated Terms as stated herein and the Debtors will pay for such Products in accordance with Negotiated Terms as stated herein ; and

(c)      that Crown has reviewed the terms and provisions of the Order and consents to be bound by such terms.

8.      Notwithstanding the foregoing, if Crown receives the Prepetition Receivables Claim and Negotiated Inventory Claim payments from the Debtors based on any pre-bankruptcy amount owing to Crown and Crown does not extend to the Debtors all Negotiated Terms as stated herein, unless Crown's refusal to extend the Negotiated Terms is in accordance with this agreement or is the result of the Debtors' default under this agreement, Crown shall return the Prepetition Receivables Claim and Negotiated Inventory Claim payments to the Debtors, less any amounts owed by the Debtors to Crown post-petition, and the parties shall be returned to their positions immediately prior to execution of this agreement as if this agreement had not been executed.

9.      If this agreement is terminated or the critical vendor program is discontinued for any reason other than Crown's failure to extend the Negotiated Terms on the terms set forth herein, Crown shall no longer be required to extend the Negotiated Terms, the Debtors shall pay all amounts owed post-petition in the ordinary course of business or as an Administrative Claim, as defined by the Bankruptcy Code, and the Debtors shall not be entitled to recover any amounts previously paid to Crown as set forth in this agreement.

Sincerely,

Vital Pharmaceuticals, Inc., on its behalf and on behalf of Bang Energy Canada

*Gregg Metzger*
Gregg Metzger (Feb 24, 2023 18:01 EST)

By: Gregg Metzger

Its: Acting General Counsel/Authorized Representative

Dated:  Feb 24, 2023

Agreed and Accepted By:

Crown Cork & Seal USA, on its behalf and on behalf of Crown Metal Packaging Canada LP

By: Ron Stotleski

Its:  VP, Sales & Marketing, CROWN Beverage Packaging North America

Dated:  2/24/2023

# 2023-02-23 - Crown Negotiated Agreement (BSLLP Clean)

Final Audit Report                                    2023-02-24

| | |
|---|---|
| Created: | 2023-02-24 |
| By: | Gregg Metzger (gregg.metzger@vpxsports.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAvvIMVCcJPusj52yie4eh9rCsBWv6Ll7X |

## "2023-02-23 - Crown Negotiated Agreement (BSLLP Clean)" History

🖋 Document digitally presigned by DocuSign\, Inc. (enterprisesupport@docusign.com)
   2023-02-24 - 2:36:09 PM GMT- IP address: 98.249.142.167

📄 Document created by Gregg Metzger (gregg.metzger@vpxsports.com)
   2023-02-24 - 10:58:04 PM GMT- IP address: 98.249.142.167

✉ Document emailed to gregg.metzger@bangenergy.com for signature
   2023-02-24 - 11:00:04 PM GMT

📄 Email viewed by gregg.metzger@bangenergy.com
   2023-02-24 - 11:00:23 PM GMT- IP address: 104.47.59.254

🖋 Signer gregg.metzger@bangenergy.com entered name at signing as Gregg Metzger
   2023-02-24 - 11:01:21 PM GMT- IP address: 98.249.142.167

🖋 Document e-signed by Gregg Metzger (gregg.metzger@bangenergy.com)
   Signature Date: 2023-02-24 - 11:01:23 PM GMT - Time Source: server- IP address: 98.249.142.167

✅ Agreement completed.
   2023-02-24 - 11:01:23 PM GMT

**Adobe Acrobat Sign**

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]            Case No.: 22-17842-PDR

    Debtors.                                         (Jointly Administered)

_____/

**ORDER GRANTING DEBTORS' EXPEDITED MOTION TO APPROVE
COMPROMISE BETWEEN (I) DEBTOR, VITAL PHARMACEUTICALS, INC.;
AND (II) CROWN CORK & SEAL USA, INC. AND CROWN METAL
<u>PACKAGING CANADA LP</u>**

**THIS MATTER** having come before the Court on March ____, 2023 at _____

a.m./p.m., in Fort Lauderdale, Florida, upon the *Debtors' Expedited Motion to Approve*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

*Compromise Between (I) Debtor, Vital Pharmaceuticals, Inc.; and (II) Crown Cork & Seal USA, Inc. and Crown Metal Packaging Canada LP* (the "Motion") [ECF No. ____] filed by the Debtors[2].  The Court finds that (i) it has jurisdiction over the matters raised in the Motion under 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding under 28 U.S.C § 157(b)(2)(A), and that this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; (v) notice of the Motion and the hearing were appropriate under the circumstances and pursuant to the *Order Granting Debtors' Ex Parte Motion For Order Shortening Time for Hearing On Debtors' Expedited Motion to Approve Compromise Between (I) Debtor, Vital Pharmaceuticals, Inc.; and (II) Crown Cork & Seal USA, Inc. and Crown Metal Packaging Canada LP* [ECF. No. __] no other notice need be provided; and (vi) upon review of the record before the Court, including the legal and factual bases set forth in the Motion and the statements made by counsel at the hearing, good and sufficient cause exists to grant the relief requested in the Motion, it is

**ORDERED AND ADJUDGED** as follows:

1.      The Motion is **GRANTED**.

2.      The Agreement attached to the Motion as Exhibit A is **APPROVED** in its entirety, and each and every provision of the Agreement is incorporated herein as if fully set forth in this Order.

3.      The parties to the Agreement are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Agreement.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Motion.

4.    The Parties are directed to comply with the terms of the Agreement and the Court reserves jurisdiction to enforce the terms and conditions of the Agreement.

#   #   #

Submitted by:
Jordi Guso, Esq.
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com
Email:  mniles@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

3