**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Case |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No. 22-17842 (PDR) |
| Debtors. | (Jointly Administered) |

_____/

**CERTIFICATE OF PUBLICATION FOR THE
NOTICE OF PROPOSED SALE, BIDDING PROCEDURES,
AUCTION, AND SALE HEARING IN THE NEW YORK TIMES**

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).



**The New York Times Company**

620 8th Avenue
New York, NY 10018
nytimes.com

Sworn to me this 2nd day of
March, 2023

*Ellen Herb*

_____
Notary Public

Ellen Herb
Notary Public, State of New York
No. 01HE6163785
Qualified in New York County
Commission Expires April 2, 2023

# PROOF OF PUBLICATION

3/2/23

I, Tami Bacon, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

 Mar 2, 2023, NYT & NATL, pg B3

*Tami Bacon*

---

UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF FLORIDA, FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: VITAL PHARMACEUTICALS, INC., *et al.*,[1] Debtors. | Chapter 11 Cases Case No.: 22-17842-PDR (Jointly Administered) |

**NOTICE OF PROPOSED SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING**

   **PLEASE TAKE NOTICE** that, on October 10, 2022, the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed voluntary petitions commencing these cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

   **PLEASE TAKE FURTHER NOTICE** that, on February 24, 2023, the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") entered an order [ECF No. 854] (the "Bidding Procedures Order"): i. approving proposed bidding procedures (the "Bidding Procedures"), attached as **Exhibit 1** to the Bidding Procedures Order, by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all of their assets (the "Assets") through either (a) one or more sales of the Assets (each, a "Sale Transaction") or (b) a transaction through a plan of reorganization; ii. approving the Bid Protections, as defined and described in the Bidding Procedures; iii. establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"); iv. approving the form and manner of the Sale Notice, attached as **Exhibit 2** to the Bidding Procedures Order; v. approving the form and manner of the Assumption Notice, attached as **Exhibit 3** to the Bidding Procedures Order; vi. approving the form and manner of the Post-Auction Notice, attached as **Exhibit 4** to the Bidding Procedures Order; vii. scheduling a date for an auction if the Debtors receive one or more Qualified Bids (the "Auction"); viii. scheduling a hearing to approve one or more Sale Transactions, as necessary (the "Sale Hearing"); and ix. granting related relief. **ALL INTERESTED OR POTENTIALLY AFFECTED PARTIES SHOULD CAREFULLY READ THE BIDDING PROCEDURES AND THE BIDDING PROCEDURES ORDER.**

   **PLEASE TAKE FURTHER NOTICE** that any party that wishes to take part in the sale process contemplated by the Bidding Procedures must submit a Bid for the Assets in accordance with the terms and conditions of the Bidding Procedures by **April 24, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Bid Deadline").[2]

   **PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order and the Bidding Procedures, if the Debtors receive more than one Qualified Bid for the Assets, the Debtors will conduct the Auction on **April 27, 2023 at 10:00 a.m. (Prevailing Eastern Time)**, or such later time the Debtors reasonably determine at: (a) the offices of Latham & Watkins LLP, located at 1271 Avenue of the Americas, New York, New York 10020; (b) telephonically; or (c) by video via Zoom, or other place (or by such other electronic means) as the Debtors reasonably determine; *provided*, that the Debtors shall timely notify all Qualified Bidders, the Consultation Parties, and all other parties entitled to attend the Auction of such later time or other place. The Debtors have the right to adjourn or cancel the Auction at or prior to the Auction.

   **PLEASE TAKE FURTHER NOTICE** that only the Debtors, the Consultation Parties, Qualified Bidders, the U.S. Trustee, and/or other parties in interest that request permission and are granted permission from the Debtors to attend the Auction, in each case, along with their duly-authorized representatives, shall be entitled to attend the Auction, and only Qualified Bidders shall be entitled to bid at the Auction.

   **PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of a Sale Transaction and the transfer of the Assets free and clear of all liens, claims, interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code will be held before the Honorable Judge Peter D. Russin, United States Bankruptcy Judge for the Southern District of Florida, at the Bankruptcy Court, 299 E. Broward Blvd., Courtroom 112, Fort Lauderdale, FL 33301 on **May 10, 2023 at 10:00 a.m. (Prevailing Eastern Time).**[4] The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by

announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.

   **PLEASE TAKE FURTHER NOTICE** that any objections to the Sale Transaction (each a "Sale Objection") must be filed no later than **March 31, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline"); *provided* that, notwithstanding the foregoing, any objections to the outcome of the Sale Transaction, the conduct of the Auction or designation or court-approval of the Successful Bid or Back-Up Bid, or Adequate Assurance Objections must be filed no later than 4:00 p.m. (Prevailing Eastern Time) on the date that is three (3) business days prior to the commencement of the Sale Hearing.

   **CONSEQUENCES OF FAILING TO TIMELY ASSERT A SALE OBJECTION. ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE A SALE OBJECTION ON OR BEFORE THE APPLICABLE DEADLINE IN ACCORDANCE WITH THE ENTERED BIDDING PROCEDURES ORDER MAY BE FOREVER BARRED FROM ASSERTING ANY SALE OBJECTION TO THE SALE TRANSACTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE TRANSFERRED ASSETS OF THE DEBTORS' ESTATES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS EFFECTED THEREUNDER.**

   **PLEASE TAKE FURTHER NOTICE** that this Sale Notice is subject to the terms and conditions of the Bidding Procedures Order, with the Bidding Procedures Order controlling in the event of any conflict. The Debtors encourage parties in interest to review such document in its entirety. Parties interested in receiving more information regarding the sale of the Assets and/or copies of any related document, including the Bidding Procedures Order, may make a written request to counsel to the Debtors, Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004 (Attn: Andrew Sorkin (andrew.sorkin@lw.com)) and Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: Liza Burton (liza.burton@lw.com) and Jonathan Weichselbaum (jon.weichselbaum@lw.com)).

   Copies of the Bidding Procedures, the Bidding Procedures Order, and this Sale Notice may be examined by interested parties free of charge at the website established for these chapter 11 cases by the Debtors' court-approved noticing, claims, and solicitation agent, Stretto, Inc., at https://cases.stretto.com/VitalPharmaceuticals.

   Dated: February 27, 2023, Miami, Florida, Respectfully submitted, /s/ Jordi Guso , George A. Davis (admitted *pro hac vice*), Tianjiao "TJ" Li (admitted *pro hac vice*), Brian S. Rosen (admitted *pro hac vice*), Jonathan J. Weichselbaum (admitted *pro hac vice*), **LATHAM & WATKINS LLP**, 1271 Avenue of the Americas, New York, NY 10020, Telephone: (212) 906-1200, Email: george.davis@lw.com, liza.burton@lw.com, tj.li@lw.com, brian.rosen@lw.com, jon.weichselbaum@lw.com -and- Andrew D. Sorkin (admitted *pro hac vice*), **LATHAM & WATKINS LLP**, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 2004, Telephone: (202) 637-2200, Email: andrew.sorkin@lw.com -and- Whit Morley (admitted *pro hac vice*), **LATHAM & WATKINS LLP**, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Telephone: (312) 876-7700, Email: whit.morley@lw.com -and- Jordi Guso, Florida Bar No. 863580, Michael J. Niles, Florida Bar No. 107203, **BERGER SINGERMAN LLP**, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, Telephone: (305) 755-9500, Email: jguso@bergersingerman.com, mniles@bergersingerman.com, *Co-Counsel for the Debtors and Debtors in Possession*

---

[1]   The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

[3]   Pursuant to the Bidding Procedures, a Bid may contemplate the acquisition of assets of non-Debtors.

[4]   To the extent the Sale Hearing occurs virtually, participation instructions will be provided on the agenda filed on the docket prior to the Sale Hearing.

## HEALTH CARE

# Some Are Underwhelmed After Eli Lilly Says It Will Cut Insulin Prices

FROM FIRST BUSINESS PAGE

hailed Lilly's announcement as "a big deal, and it's time for other manufacturers to follow."

In reality, though, Lilly's moves are more limited than they initially appear. Lilly's existing $35 cap on out-of-pocket payments will be easier for privately insured patients to take advantage of. But the policies announced Wednesday will not have much, if any, effect on what many people are actually paying.

And Lilly was already charging

*Lilly's announcement 'does not mean that the situation is fixed.'*

Elizabeth Pfiester, executive director of T1International.

insurers only a fraction of its high list price when accounting for rebates and discounts.

David Ricks, Lilly's chief executive, acknowledged in an interview on Wednesday that there was no guarantee that the company's changes would result in insurers paying less for Humalog, though he said he expected that would happen.

In addition, the lower list prices, which will take effect over the course of this year, only apply to Lilly's older insulin products.

"I don't think that these prices are quite as impressive as they look when you first see them," said Stacie Dusetzina, a professor of health policy at Vanderbilt University School of Medicine. "It doesn't necessarily mean that Lilly is taking a big financial hit to do this."

More than 30 million Americans have diabetes, and more than seven million of them rely on insulin. Without insulin, patients can die or face serious health consequences, including amputation and kidney failure.

Lilly's price cuts follow years of mounting pressure not just from officials in Washington and state capitals, but also from a well-organized community of patients who have called for insulin to be more affordable.

Lilly's announcement follows a change that went into effect at the start of this year for patients on Medicare. Under last year's Inflation Reduction Act, Congress imposed a $35-a-month ceiling on insulin co-payments for Medicare patients.

Lilly said it planned to reduce the list price of Humalog by 70 percent in the last three months of this year.

A vial of Humalog — patients often go through several vials per month — has a list price of $275; Lilly plans to reduce that to $66. However, insurers already pay much less than that: The average net price Lilly charged in 2021 for



Eli Lilly said it planned to reduce the list price of its most commonly used insulin, Humalog, by 70 percent. A vial of Humalog has a list price of $275. SIMON DAWSON/REUTERS

a vial of Humalog or its generic version was $43 after discounts and rebates, according to the company's website.

Humalog's new $66 list price will still be more than triple what it was when the product was introduced in 1996. (Lilly said it will also sharply reduce the list price of its generic version of Humalog, as well as another of its insulin products, Humulin.)

Lilly said that one of its newer Humalog products, a prefilled insulin pen that has a list price of $530, would not have its price cut. Nor would its long-acting insulin product, Basaglar, which was first approved in 2015.

Lilly's announcement "does not mean that the situation is fixed or everything is solved," said Elizabeth Pfiester, who has diabetes and is the executive director of T1International, a group that has been pushing for a federal ceiling on insulin list prices.

"This is good news for some, but we need regulation to make sure that the companies can't change their mind again and decide to raise the price," she added.

Some patient advocates are also pushing for legislation that would require insulin manufacturers to charge no more in the United States than they do elsewhere. Insulin is much cheaper in other countries, where governments negotiate prices directly with drug manufacturers.

Mr. Ricks said that Lilly opposes "price setting from the federal government," saying his company and other drug makers need incentives to innovate and develop improved versions of insulin.

Asked whether Lilly would rule out further price increases for Humalog and the other products for which it announced price cuts on Wednesday, Mr. Ricks declined to make a firm commitment. He said the company has not increased the list price of any of its insulin products since 2017.

The price of the lifesaving product has been a sensitive issue ever since insulin was invented.

When Frederick Banting helped create the substance a century ago, he refused to put his name on the first patent application because he felt it would be at odds with the Hippocratic oath he had taken as a physician. The inventors soon transferred the patent to the University of Toronto for $1, in the hopes of making it as widely available and affordable as possible. "Insulin does not belong to me," Mr. Banting famously said. "It belongs to the world."

That is not how it has ended up. In recent years, the three leading insulin manufacturers — Lilly, Sanofi and Novo Nordisk — have replaced older products with newer, costlier versions and steadily increased their prices. Together, the three companies control about 90 percent of the insulin market in the United States.

Researchers have estimated that a vial of insulin costs less than $7 to manufacture and could be sold profitably at less than $9. In 2019, in response to a Senate inquiry into high insulin prices, Sanofi acknowledged that, by one measure, it cost the company less than $2 to make one of its insulin pens, which at the time carried a list price of $75.

Representatives for Sanofi and Novo Nordisk would not say whether they would follow Lilly's moves, but said they already have programs that significantly limit most patients' out-of-pocket costs.

*Christine Hauser and Sheryl Gay Stolberg contributed reporting.*

---

# Brokers Got Lavish Perks for Selling Costly Medigap Insurance, Report Says

**By REED ABELSON**

Federal and state regulators are being urged to increase their oversight of insurance agents and brokers selling Medigap policies, the private supplemental coverage owned by millions of people with traditional Medicare that pays out-of-pocket costs.

These brokers received paid vacations and cash bonuses to enroll customers in plans offered by specific companies, according to a report released Wednesday by Senator Elizabeth Warren, the Massachusetts Democrat.

"Giant insurance companies have free rein to scam millions of seniors in Medigap, offering agents lavish vacations to steer unknowing beneficiaries into more expensive plans," Ms. Warren said in a statement. "Regulators must act to make sure seniors aren't getting fleeced."

The report found that at least 32 Medigap insurers were associated with reward programs, either directly or through third parties. These incentives are legal, but can create financial reasons for agents to recommend more expensive policies or plans from a single insurer.

"Seniors can pay a high price for these agent bonuses: Signing up for the wrong plan could cost hundreds or thousands of dollars more each year, either in higher premiums, higher out-of-pocket medical costs, or both," the report said.

Roughly half of those enrolled in traditional Medicare, about 14 million people, have Medigap policies. Sold by a wide range of insurance companies, the supplemental plans differ in price and the benefits they offer. They are intended to fill the gaps in Medicare coverage created through the program's deductibles and coinsurance. Some plans begin paying any out-of-pocket costs immedi-



A report found that at least 32 Medigap insurers, including Cigna, were associated with reward programs, which are legal but can create outsize financial incentives. Right, a pitch from Cigna offered a Caribbean vacation. KRISTOFFER TRIPPLAAR/ALAMY

ately, while others charge lower premiums and require patients to shoulder at least some of the bills for a hospital stay or a visit to the doctor.

Senate Democrats had previously raised concerns about the overly aggressive marketing tactics used to enroll people in private Medicare Advantage plans, which now make up nearly half of all coverage for people 65 and over. Older Americans have been flooded by marketing communications, some of which appear to come from federal agencies, urging them to sign up for private coverage. Medicare has also tightened rules around how the plans are marketed.

The Warren report details numerous examples of luxurious vacations and other perks high-performing brokers receive. "Earn the sales reward trip of a lifetime," reads one pitch, offering a paid vacation to St. Thomas in the U.S. Virgin Islands. "Sell Cigna Supplemental Benefits to earn a five-day, four-night trip."

Brokers who sold large numbers of Aetna policies in 2020 were offered the opportunity to "unlock the magic of the Golden City," San Francisco, but only if they also retained a high percentage of customers. (The trip never took place because of the pandemic.) Brokers selling Mutual of Omaha plans were offered cash bonuses.

Cigna declined to comment. Aetna said it offered "a wide range of plans to meet the specific needs of Medicare beneficiaries and it is our expectation that agents sell plans that best meet these needs." Mutual of Omaha said the insurer "provides a variety of compliant, industry-standard incentives in order to encourage independent brokers to consider our solutions."

In a letter to officials at the Centers for Medicare and Medicaid Services and the National Association of Insurance Commissioners, which represents state regulators, Ms. Warren described



TICKET TO St. THOMAS

Earn the sales reward trip of a lifetime.
Sell Cigna Supplemental Benefits to earn a five-day, four-night trip to St. Thomas USVI. It's all happening June 8-12, 2023, at The Westin Beach Resort & Spa at Frenchman's Reef.

**When is the qualification period?**
September 1, 2022, to February 28, 2023

**What products qualify?**
Earn 100% issued annualized premium (IAP) for production credit by selling:
› **Cigna Medicare Supplement products**
› **Cigna Supplemental Health products**
  • Flexible Choice Cancer    • Flexible Choice Hospital Indemnity
  • Flexible Choice Heart Attack & Stroke    • Accident Treatment
  • Flexible Choice Dental, Vision & Hearing    • Cancer Treatment
  • Individual Whole Life

**Who is eligible?**
› **National marketing organizations (NMOs)** – NMOs with a minimum of $3,000,000 in production credits during the qualification period will earn a trip for one organization representative and a guest.
› **Recruiting agencies** – All recruiting agencies with a minimum of $1,250,000 in production credits during the qualification period will earn a trip for one agency representative and a guest.
› **Agents** – All agents with a minimum of $100,000 in production credits during the qualification period, based on personal production, will earn a trip for themselves and a guest.

Earn your ticket to St. Thomas. We'll see you there.
**Access sales support and resources to claim your place under the palms.**
Visit Cignaforbrokers.com.
The qualification period lasts from September 1, 2022, to February 28, 2023.


**Together, all the way.** Cigna.

these practices as "an abuse of the trust that seniors place in Medicare." She urged regulators to take steps to ban their use.

Medicare officials said they were "committed to ensuring that people exploring Medicare coverage options have peace of mind and receive honest, transparent and accurate information about health coverage options." The National Association of Insurance Commissioners said it was reviewing Senator Warren's letter.

Unlike the sale of Obamacare

policies, brokers and agents offering Medigap plans are under no obligation to offer every policy or tell customers about how they select plans for customers, said Gretchen Jacobson, vice president of the Medicare program at the Commonwealth Fund, a nonprofit group that funds health care research. This week, the fund released a report looking at the choices people make in buying the plans, based on discussions with brokers and agents.

Someone hoping to lower their premiums may want to pick a plan with a high deductible, but a broker typically earns higher commissions by steering customers to more costly plans that have more generous coverage.

Brokers also tend to make more when someone chooses a private Medicare Advantage plan. Individuals who pick a Medicare Advantage plan and then want to switch to the traditional program may have difficulty. In most states, insurers can either deny someone coverage or charge them higher prices if they have a medical condition that is potentially expensive.

While federal dollars go to help pay for Medicare Advantage, Medigap is paid for privately by consumers or employers and is largely overseen by state insurance regulators rather than the federal government. Federal officials have standardized the kind of Medigap policies available and play some role in their oversight.

People who want to make sure they know their options should check in with their state insurance regulators, said Casey Schwarz, senior counsel for education and federal policy for the Medicare Rights Center, which helps people navigate the program. The states disclose all of the Medigap plans sold and how much they cost, Ms. Schwarz said, and can usually be found on regulators' websites. "It is not super easy to find in some states, but it is there," she said.

UCC PUBLIC SALE NOTICE and UNITED STATES BANKRUPTCY COURT legal notices appear in fine print across the bottom of the page, including notices in In re: TARONIS FUELS, INC., et al. (Chapter 11, Case No. 22-11121 (BLS)), In re: VITAL PHARMACEUTICALS, INC., et al. (Chapter 11 Cases, Case No. 22-17842-PDR), and a UCC Public Sale Notice relating to Peachtree Property Sub, LLC and Citizens Bank. These consist of dense legal boilerplate regarding deadlines for filing proofs of claim, notices of proposed sale, bidding procedures, auction and sale hearings.