UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,

Debtors.
_____/

Case No. **22-17842 (PDR)**

Chapter **11**

## AMENDED NOTICE OF RULE 2004 EXAMINATION

**[X]** *Testimony:* Pursuant to Federal Rule of Bankruptcy Procedure 2004 and Local Rule 2004-1, **Monster Energy Company** will examine **a designee of the above-captioned debtors and debtors-in-possession (the "Debtors") pursuant to Fed R. Civ. P. 30(b)(6)** under oath on **April 6, 2023** at **9:00 a.m. EST**. The examination will be conducted **via Zoom video conference at a link to be provided by counsel**, and will be recorded by transcription. The examination may continue from day to day until completed.

**[X]** *Production:* Pursuant to Federal Rule of Bankruptcy Procedure 2004 and Local Rule 2004-1, **Monster Energy Company** requests that **the Debtors** produce the documents, electronically stored information, or objects described on the attached schedule (or if the examination is of a witness other than the debtor, on the attached subpoena), who must permit inspection, copying, testing, or sampling of the materials on **March 27, 2023** at **10:00 a.m. PST**, at **Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067, Attn: Teddy M. Kapur, Esq.**

If the examinee receives this notice less than 14 days before the scheduled examination date, the examination will be rescheduled upon timely request to a mutually agreeable time. The scope of the examination will be as described in Bankruptcy Rule 2004. Pursuant to Local Rule 2004-1 no order is necessary. If the examination is of a witness other than the debtor, the Local Form "Subpoena for Rule 2004 Examination" is included with this notice.

*[Remainder of page intentionally left blank]*

69224627;1

March 13, 2023

                     <u>/s/ Michael I. Goldberg, Esquire</u>
                     **AKERMAN LLP**
                     Michael I. Goldberg, Esquire
                     Florida Bar No. 886602
                     Eyal Berger, Esquire
                     Florida Bar No. 11069
                     201 East Las Olas Boulevard, Suite 1800
                     Fort Lauderdale, FL 33301
                     T: (954) 463-2700
                     F: (954) 463-2224
                     michael.goldberg@akerman.com
                     eyal.berger@akerman.com

                     -and-

                     **PACHULSKI STANG ZIEHL & JONES LLP**
                     Richard M. Pachulski (*pro hac vice*)
                     Ira D. Kharasch (*pro hac vice*)
                     Robert J. Feinstein (*pro hac vice*)
                     Teddy M. Kapur (*pro hac vice*)
                     Steven W. Golden (*pro hac vice*)
                     10100 Santa Monica Blvd., 13th Floor
                     Los Angeles, CA 90067-4003
                     T: (310) 277-6910
                     F: (310) 201-0760
                     rpachulski@pszjlaw.com
                     ikharasch@pszjlaw.com
                     rfeinstein@pszjlaw.com
                     tkapur@pszjlaw.com
                     sgolden@pszjlaw.com

                     *Counsel to Monster Energy Company*

## <u>CERTIFICATE OF SERVICE</u>

    **I HEREBY CERTIFY** that a true and correct copy of the forgoing was served via CM/ECF Notice of Electronic Filings to all parties registered to receive electronic noticing in this case on March 13, 2023.

                                           By: <u>/s/ Michael I. Goldberg, Esquire</u>

69224627;1

## Schedule A

## DEFINITIONS

For the purposes of this Subpoena, the following Definitions shall apply:

1. The terms "all," "any," and "each" shall each be construed as encompassing any and all. The singular shall include the plural and vice versa; the terms "and" or "or" shall be both conjunctive and disjunctive; and the term "including" means "including without limitation." The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

2. "Communications" shall mean all inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations, letters, notes, telegrams, correspondence, memoranda, emails, facsimile transmissions, or other form of verbal, written, mechanical, or electronic disclosure, in Your actual or constructive control or custody or in the control or custody of any current or former affiliates, representatives or advisors.

3. "Concerning" means relating to, evidencing, supporting, negating, refuting, embodying, containing, memorializing, comprising, reflecting, analyzing, constituting, describing, identifying, referring to, referencing, discussing, indicating, connected with or otherwise pertaining in any way, in whole or in part, to the subject matter being referenced.

4. "Debtors" means, collectively or individually, as context requires and to encompass responsive documents, Vital Pharmaceuticals, Inc.; Bang Energy Canada. Inc.; JHO Intellectual Property Holdings, EEC; JHO Real Estate Investment, EEC; Quash Seltzer, EEC; Rainbow Unicom Bev EEC; and Vital Pharmaceuticals International Sales, Inc., and each of their agents, accountants, financial advisors, employees, experts, attorneys, officers, directors,

69224627;1

direct or indirect shareholders, members, representatives, affiliates, subsidiaries, predecessors and/or successors (including, for the avoidance of doubt, Jack Owoc).

5. "<u>Documents</u>" shall mean any writings, recordings, electronic files and mails, or photographs, whether original or duplicate, as defined in Federal Rule of Evidence 1001 and Federal Rule of Civil Procedure 34(a), inclusively, including (but not limited to) all Documents and information in Your possession, custody, or control, and includes: all and any written, recorded, or graphic material, however produced or reproduced, minutes, summaries, memoranda, transcripts, tapes, or other voice recordings, and all other Documents and tangible things, including booklets, brochures, pamphlets, circulars, notices, periodicals, papers, records, contracts, agreements, photographs, minutes, memoranda, messages, appraisals, analyses, reports, files, interoffice memoranda, or interoffice communications of any description, calculations, invoices, accounting entries, diary entries, calendars, inventory sheets, ledgers, correspondence, emails, phone recordings, instant messages, text messages, telegrams, advertisements, press releases, notes, letters, diaries, working papers, schedules, projections, graphs, charts, films, tapes, print-outs, and all other data, whether recorded by electronic or other means, and all drafts thereof. If a Document was prepared in several copies, or if additional copies were thereafter made, and if any such copies are not identical in all respects or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including notes on the front or back, in the margins, or on any of the pages thereof, then each such non-identical copy is a separate Document and must be produced. When examples of categories or types of Documents are given in a particular Request for Production by use of phrases such as "including," this shall always be interpreted as being for illustrative purposes only (*i.e.*, to be understood as "including without limitation") and in no way limits or narrows the scope of any Request for Production. "Documents" always includes Communications, whether so stated in a particular Request for Production or not.

69224627;1

6.     "You" or "Your" and variants thereof mean the Debtors.

## INSTRUCTIONS

The preceding Definitions apply to each of these Instructions, and for purposes of this Subpoena, the following Instructions shall be followed:

1.     Unless otherwise specified, the relevant time period shall be from January 1, 2018 to the date hereof.

2.     Produce all Documents and all other materials described below in Your actual or constructive possession, custody, or control, wherever those Documents and materials are maintained, including on personal computers, PDAs, wireless devices, local area networks, application-based communications services (including, without limitation, Facebook Messenger, Instant Bloomberg, WeChat, Skype, KakaoTalk, WhatsApp, Signal, iMessage, etc.), web-based file hosting services (including, without limitation, Dropbox, Box, Apple iCloud, Google Drive, Hightail, etc.), or web-based email systems such as Gmail, Yahoo, etc.

3.     You must produce all Documents in Your possession, custody, or control, whether maintained in electronic or paper form and whether located on hardware owned and maintained by You or hardware owned and/or maintained by a third party that stores data on Your behalf.  You must produce all such Documents even if they were deleted or in draft form. Without limitation, hardware where such data may be stored includes:  servers; desktop, laptop, or tablet computers; cell and smart phones; PDA devices; scanners, fax machines, and copying machines; and mobile storage devices, such as thumb or external hard drives.  Electronically stored Documents include any computerized data or content stored on electromagnetic media. Without limitation, types of electronically stored Documents include email, voicemail, instant messages, intranet and internet system data, telephone and cellular telephone calling records,

69224627;1

data compilations, spreadsheets, word processing Documents, images, databases, digital photocopier memory, and any other information stored in memory storage devices.

4. Produce the original or duplicate, as such terms are defined by Rule 1001 of the Federal Rules of Evidence, of each Document requested together with all non-identical copies and drafts of that Document. If a duplicate is produced, it should be legible and bound or stapled in the same manner as the original.

5. Documents should include all exhibits, appendices, linked Documents, or otherwise appended Documents that are referenced in, attached to, included with, or are a part of the requested Documents.

6. If any Document, or any part thereof, is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, then in answer to such Request for Production or part thereof, for each such Document, You must:

    a. Identify the type, title and subject matter of the Document;

    b. State the place, date, and manner of preparation of the Document;

    c. Identify all authors, addressees, and recipients of the Document, including information about such persons to assess the privilege asserted; and

    d. Identify the legal privilege(s) and the factual basis for the claim.

7. Documents should not contain redactions unless such redactions are made to protect information subject to the attorney-client privilege and/or work-product doctrine. In the event any Documents are produced with redactions, a log setting forth the information requested in Instruction 6 above must be provided.

### MANNER OF PRODUCTION

1. All Documents produced to the Movants shall be provided in either native file ("native") or single-page 300 dpi-resolution group IV TIF format ("tiff") format as specified below, along with appropriately formatted industry-standard database load files and

69224627;1

accompanied by true and correct copies or representations of unaltered attendant metadata. Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents. Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

    2.    <u>Database Load Files and Production Media Structure</u>:  Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

    3.    <u>Electronic Documents and Data, Generally</u>:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the Movants, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

    4.    <u>Emails and Attachments, and Other Email Account-Related Documents</u>:  All Documents and accompanying metadata created and/or stored in the ordinary course of business

69224627;1

within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Movants.

     5.     <u>Documents and Data Created or Stored in or by Structured Electronic Databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Movants to reasonably manage and import those Documents into a useable, coherent database. Documents must be accompanied by reasonably detailed documentation explaining the Documents' content and format including but not limited to data dictionaries and diagrams. Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

     a.     XML format file(s);

     b.     Microsoft SQL database(s);

     c.     Access database(s); and/or

     d.     fixed or variable length ASCII delimited files.

     6.     <u>Spreadsheets, Multimedia, and Non-Standard File Types</u>: All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet, database and/or statistical programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent You have other file types that do not readily or easily and accurately convert to tiff and searchable text, You may elect to produce those files in native format subject

to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7. "Other" Electronic Documents: All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8. Paper Documents: Documents originally created or stored on paper shall be produced in tiff format. Relationships between Documents shall be identified within the .dat file utilizing document identifier numbers to express parent Document/child attachment boundaries, folder boundaries, and other groupings. In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these Requests for Production.

## DOCUMENT REQUESTS

**Request No. 1.** All minutes of all meetings of Your Board of Directors, including, without limitation, all committees of the Board of Directors.

**Request No. 2.** Documents sufficient to identify Your assets and any sale, transfer, assignment, or divestiture of any of Your assets from January 1, 2018 through the date hereof.

**Request No. 3.** All Documents and Communications Concerning Mr. Owoc's compensation and/or any decisions Concerning Mr. Owoc's compensation, from January 1, 2018 through the date hereof, including, without limitation, salary, shareholder distributions, dividends, bonuses, incentive plans, retirement benefits, non-cash perquisites (e.g., meals, lodging, aircraft use, vehicle use, club memberships), reimbursement of expenses, grants of equity, stock options, or restricted stock units.

69224627;1

**Request No. 4.** Documents sufficient to show all money, assets, and/or any other thing of value that any Debtor transferred to: (i) Mr. Owoc; (ii) any member of Mr. Owoc's family; (iii) a trust or other entity for which Mr. Owoc or any member of Mr. Owoc's family is a trustor, trustee, grantor, grantee, beneficiary and/or otherwise affiliated; and/or (iv) another party on behalf of or to benefit Mr. Owoc, any member of Mr. Owoc's family, or a trust or other entity for which Mr. Owoc or any member of Mr. Owoc's family is a trustor, trustee, grantor, grantee, beneficiary and/or otherwise affiliated.

**Request No. 5.** All Documents and Communications Concerning any use of Your money, assets, and/or any other thing of value to purchase, lease, and/or rent any property that was used, at any time, for personal reasons by Mr. Owoc and/or any member of Mr. Owoc's family, including, without limitation: (1) real property; (2) automobiles, and (3) airplanes, including the airplane purchased, leased, or rented by Bang Jets, LLC.

**Request No. 6.** Documents sufficient to show the date, point-of-origin, destination, time of departure, time of arrival, and passengers for all flights made by any airplane purchased, leased, or rented by Bang Jets, LLC.

**Request No. 7.** Copies of all of Your liability insurance policies in effect at any time during the period from January 1, 2018 through the date hereof, including, without limitation, commercial general liability insurance, directors & officers insurance, errors & omission insurance, and excess liability insurance.

**Request No. 8.** All agreements from January 1, 2018 through the date hereof: (i) Concerning Your payment of legal fees for any of Your current or former employees; (ii) under which You may be liable to satisfy all or part of any judgment issued against any of Your current or former employees; and/or (iii) under which You may be liable to indemnify or reimburse any of Your current or former employees for payments made to satisfy any judgment.

**Request No. 9.** All Documents and Communications from January 1, 2018 through the date hereof Concerning the value of or any valuation of any Debtor, any affiliate of the Debtor, and/or Mr. Owoc's interests in any Debtor or any Debtor's affiliates.

**Request No. 10.** All Documents and Communications from January 1, 2018 through the date hereof Concerning any consummated or contemplated debt or equity financing for any Debtor, including, without limitation, any sale, equity investment, private placement, initial public offering, loan, or recapitalization.

**Request No. 11.** All Documents and Communications Concerning any actual or contemplated civil, criminal, or regulatory investigation and/or proceedings made, or threatened to be made, against You or any of Your officers or directors.

**Request No. 12.** All Documents and Communications Concerning any actual or contemplated complaints, allegations, claims, or causes of action of any kind made, or threatened to be made, accusing You, or any of Your current or former employees, officers, or directors, of fraud, breach of fiduciary duty, dishonesty, and/or gross mismanagement.

**Request No. 13.** Documents sufficient to show any financial, professional, and/or personal relationship between Mr. Owoc and any of Your current or former directors, including, without limitation, John DiDonato, Jack Dickinson, Eric Hillman, Guillermo Escalante, Kathy Cole, David Strickland, and Stephen Gray, or any entities affiliated with the foregoing individuals.

**Request No. 14.** All Documents and Communications Concerning Kathy Cole's resignation from Your employment and/or Board of Directors, and/or the events leading to her resignation, including, without limitation, (i) any decision to remove, circumscribe, or otherwise modify Ms. Cole's duties, role, or authority with You, and (ii) any directives, instructions, orders, or requests made to Ms. Cole by You.

**Request No. 15.** All Communications to or from Kathy Cole.

**Request No. 16.** All Documents and Communications Concerning Frank Massabki's resignation from Your employment and/or the events leading to his resignation, including, without limitation, (i) any decision to remove, circumscribe, or otherwise modify Mr. Massabki's duties, role, or authority with You, and (ii) any directives, instructions, orders, or requests made to Mr. Massabki by You.

**Request No. 17.** All Documents and Communications Concerning any juror in *Monster Energy Co. v. Vital Pharms., Inc. and John H. Owoc.*, Case No. 5:18-cv-1882 (C.D. Cal.), including, without limitation, all Communications with any jurors in the foregoing case, notes or videos from any interviews with any juror in the foregoing case, and/or any compensation, benefits, or other things of value provided to any juror in the foregoing case.

**Request No. 18.** All Documents and Communications Concerning any film and/or documentary about any Debtor and/or Mr. Owoc including, without limitation, expenditures Concerning such film or documentary and all film or video footage shot for such film or documentary.

**Request No. 19.** All Documents and Communications Concerning Your use of, and decision to continue the use of, the terms "creatine" and/or "Super Creatine" in selling, offering to sell, marketing, promoting, or advertising any Bang energy drink from September 29, 2022 through the date hereof, including, without limitation: (1) on Bang cans, labels, packaging, or point-of-sale materials; (2) in physical locations such as retail stores; (3) on social media, including Instagram, TikTok, YouTube, Facebook, and Twitter; and (4) in Communications with third parties, including retailers, distributors, and/or consumers.

**Request No. 20.** All Documents and Communications Concerning any actual or contemplated decision to remove the terms "creatine" and/or "Super Creatine" from Bang cans, labels, packaging, or point-of-sale materials, or to stop using the terms "creatine" and/or "Super Creatine" in selling, offering to sell, marketing, promoting, or advertising any Bang energy

69224627;1

drink, including, without limitation, Your expected timeline for making such decisions and/or changes.

**Request No. 21.** All Documents and Communications Concerning any video or other post Concerning the terms "creatine" and/or "Super Creatine" that Mr. Owoc posted on social media on or after September 29, 2022, including, without limitation, the filming or creation of such post, the unedited film or video footage, any drafts of such post, the decision to upload such post, the decision to remove such post, and any refusal to remove such post.

**Request No. 22.** All Documents and Communications Concerning any decision, on or after September 29, 2022, by any retailer or distributor to stop selling, offering to sell, marketing, promoting, or advertising any Bang energy drink.

**Request No. 23.** All Documents and Communications Concerning Your decision to enter into, terminate, and/or breach any contract or agreement for the distribution of any of Your products.

**Request No. 24.** All Documents and Communications Concerning any video or other presentation Concerning the Debtors by You on or after September 29, 2022 including, without limitation, the filming or creation of such presentation, the unedited film or video footage, any drafts of such presentation, and the decision to make such presentation.

## 30(b)(6) DEPOSITION TOPICS

**Topic 1.** Kathy Cole's resignation from Your employment and/or Board of Directors, and/or the events leading to her resignation, including, without limitation, (i) any decision to remove, circumscribe, or otherwise modify Ms. Cole's duties, role, or authority with You, and (ii) any directives, instructions, orders, or requests made to Ms. Cole by You.

**Topic 2.** Frank Massabki's resignation from Your employment and/or the events leading to his resignation, including, without limitation, (i) any decision to remove, circumscribe,

or otherwise modify Mr. Massabki's duties, role, or authority with You, and (ii) any directives, instructions, orders, or requests made to Mr. Massabki by You.

**Topic 3.** Your use of, and decision to continue the use of, the terms "creatine" and/or "Super Creatine" in selling, offering to sell, marketing, promoting, or advertising any Bang energy drink from September 29, 2022 through the date hereof, including, without limitation: (1) on Bang cans, labels, packaging, or point-of-sale materials; (2) in physical locations such as retail stores; (3) on social media, including Instagram, TikTok, YouTube, Facebook, and Twitter; and (4) in Communications with third parties, including retailers, distributors, and/or consumers.

**Topic 4.** Mr. Owoc's compensation and/or any decisions Concerning Mr. Owoc's compensation from January 1, 2018 through the date hereof, including, without limitation, salary, shareholder distributions, dividends, bonuses, incentive plans, retirement benefits, non-cash perquisites (e.g., meals, lodging, aircraft use, vehicle use, club memberships), reimbursement of expenses, grants of equity, stock options, or restricted stock units.

**Topic 5.** All transfers of money, assets, and/or any other thing of value from any Debtor to (i) Mr. Owoc; (ii) any member of Mr. Owoc's family; (iii) a trust or other entity for which Mr. Owoc or any member of Mr. Owoc's family is a trustor, trustee, grantor, grantee, beneficiary and/or otherwise affiliated; and/or (iv) another party on behalf of or to benefit Mr. Owoc, any member of Mr. Owoc's family, or a trust or other entity for which Mr. Owoc or any member of Mr. Owoc's family is a trustor, trustee, grantor, grantee, beneficiary and/or otherwise affiliated.

**Topic 6.** The value or any valuation of any Debtor, any affiliate of the Debtor, and/or Mr. Owoc's interests in any Debtor or any of Debtor's affiliates from January 1, 2018 to the date hereof.

**Topic 7.** Any consummated or contemplated debt or equity financing for any Debtor, including, without limitation, any sale, equity investment, private placement, initial public offering, loan, or recapitalization, from January 1, 2018 to the date hereof.

**Topic 8.** Any actual or contemplated civil, criminal, or regulatory investigation and/or proceedings made, or threatened to be made, against You or any of Your officers or directors.

**Topic 9.** Any film and/or documentary about any Debtor and/or Mr. Owoc including, without limitation, expenditures Concerning such film or documentary and all film or video footage shot for such film or documentary.

**Topic 10.** Your assets and any sale, transfer, assignment, or divestiture of any of Your assets from January 1, 2018 through the date hereof.

**Topic 11.** Any use of Your money, assets, and/or any other thing of value to purchase, lease, and/or rent any property that was used, at any time, for personal reasons by Mr. Owoc and/or any member of Mr. Owoc's family, including, without limitation: (1) real property; (2) automobiles, and (3) airplanes, including the airplane purchased, leased, or rented by Bang Jets, LLC.

**Topic 12.** Any actual or contemplated complaints, allegations, claims, or causes of action of any kind made, or threatened to be made, accusing You, or any of Your current or former employees, officers, or directors, of fraud, breach of fiduciary duty, dishonesty, and/or gross mismanagement.

**Topic 13.** Any Communications with or Concerning any juror in *Monster Energy Co. v. Vital Pharms., Inc. and John H. Owoc.*, Case No. 5:18-cv-1882 (C.D. Cal.), including, without limitation, the purpose of any such communication, any interviews with any juror in the foregoing case, and/or any compensation, benefits, or other things of value provided to any juror in the foregoing case.

69224627;1

**Topic 14.** Any actual or contemplated daecision to remove the terms "creatine" and/or "Super Creatine" from Bang cans, labels, packaging, or point-of-sale materials, or to stop using the terms "creatine" and/or "Super Creatine" in selling, offering to sell, marketing, promoting, or advertising any Bang energy drink, including, without limitation, Your expected timeline for making such decisions and/or changes.

**Topic 15.** Any video or other post Concerning the terms "creatine" and/or "Super Creatine" that Mr. Owoc posted on social media on or after September 29, 2022, including, without limitation, the filming or creation of such post, the unedited film or video footage, any drafts of such post, the decision to upload such post, the decision to remove such post, and any refusal to remove such post.

**Topic 16.** Any decision, on or after September 29, 2022, by any retailer or distributor to stop selling, offering to sell, marketing, promoting, or advertising any Bang energy drink.

**Topic 17.** The identity of persons most knowledgeable about the foregoing topics.