UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 (PDR) (Jointly Administered) |
| Debtors.[1] / | |
| VITAL PHARMACEUTICALS, INC., *et al.*, | |
| Plaintiffs, | Adv. Pro. No. |
| v. | |
| JOHN H. OWOC and MEGAN E. OWOC, | |
| Defendants. / | |

**ADVERSARY COMPLAINT FOR DECLARATORY JUDGMENT
AND TURNOVER OF ESTATE PROPERTY**

Plaintiff Vital Pharmaceuticals, Inc., and its affiliated debtors in the above-captioned chapter 11 cases (the "Chapter 11 Cases") as debtors and debtors in possession (the "Debtors" or the "Company"), bring this complaint (this "Complaint") against John ("Jack") H. Owoc and Megan E. ("Meg Liz") Owoc (collectively, "Defendants") seeking (i) a declaration that the Instagram and TikTok accounts bearing the handle "@bangenergy.ceo" (respectively, the "CEO Instagram Account" and the "CEO TikTok Account") and the Twitter account bearing the handle

---

[1] The Debtors include (i) Vital Pharmaceuticals, Inc.; (ii) Bang Energy Canada, Inc.; (iii) JHO Intellectual Property Holdings, LLC; (iv) JHO Real Estate Investment, LLC; (v) Quash Seltzer, LLC; (vi) Rainbow Unicorn Bev LLC; and (vii) Vital Pharmaceuticals International Sales, Inc.  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

11996589-1

"@BangEnergyCEO" (the "CEO Twitter Account" and together, with the CEO Instagram Account and the CEO TikTok Account, the "CEO Accounts"), and any other social media accounts used in the ordinary course of the Debtors' business operations (collectively, with the CEO Accounts, the "Company Accounts") are property of the Debtors' estates and (ii) turnover of the same to the estates, and state as follows:

## NATURE OF THIS ACTION

1. The Debtors' intensive marketing strategy employing a strong and consistent social media presence has contributed to the Company's becoming a dominant brand on social media, with over 4 million followers across its various social media accounts. Among the social media accounts regularly and routinely used by the Debtors in connection with their social media marketing have been the CEO Accounts.

2. On March 9, 2023, the Debtors' boards of directors and managers (collectively, the "Board") terminated Jack Owoc from his role as Chief Executive Officer and Chief Science Officer and removed him from the Debtors' Board, and also terminated Meg Liz Owoc from her employment with the Debtors as Senior Vice President of Marketing. While the Debtors have since secured access to a majority of the Debtors' social media accounts, Defendants have refused to voluntarily turn over access to the CEO Accounts or otherwise respond to the Company's demands to return control of such social media accounts to the Company. The Debtors and their advisors continue to investigate whether Defendants are in possession of, or otherwise have access to, any other Company Accounts.

3. The Debtors now bring this action to obtain an order from this Court declaring that the CEO Accounts, as well as any other Company Accounts, are property of the Debtors' estates, and ordering turnover of the CEO Accounts and any other Company Accounts, including all login

credentials needed to access, secure, and continue the Debtors' marketing efforts on the CEO Accounts and any other Company Accounts.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

5. Venue is proper under 28 U.S.C. § 1409(a). This adversary proceeding is related to the Chapter 11 Cases, which are pending in this Court.

6. This adversary proceeding is commenced pursuant to:

(a) Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which allows for a proceeding to "recover money or property" of the estate from a non-debtor.

(b) Rule 7001(2) of the Bankruptcy Rules, which allows for a proceeding "to determine the validity, priority, or extent of a lien or other interest in property";

(c) Rule 7001(9) of the Bankruptcy Rules, which allows for a proceeding to obtain a declaratory judgment relating to the foregoing;

(d) 11 U.S.C. § 542, which allows for the Debtors to recover property of their estates; and

(e) 11 U.S.C § 105(a), which allows this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" title 11 of the United States Code (the "Bankruptcy Code").

7. Declaratory relief is appropriate pursuant to both Rule 7001 of the Bankruptcy Rules and 28 U.S.C. §§ 2201 – 02 (the "Declaratory Judgment Act").

8. As set forth below, an actual legal controversy exists with respect to the declaratory relief requested herein.

9. Pursuant to Rule 7008 of the Bankruptcy Rules, Plaintiffs consent to the entry of a final judgment or order with respect to this Complaint if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## PARTIES

10. Debtors Vital Pharmaceuticals, Inc., and Bang Energy Canada, Inc., are Florida corporations. Debtors JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, and Rainbow Unicorn Bev LLC are Florida limited liability companies. Debtor Vital Pharmaceuticals International Sales, Inc., is a Delaware corporation. The Debtors' principal place of business is in Weston, Florida.

11. Defendant Jack Owoc is the Debtors' former Chief Executive Officer and Chief Science Officer and former Chairman of the Debtors' Board, and resides in Southwest Ranches, Florida.

12. Defendant Meg Liz Owoc is the Debtors' former Senior Vice President of Marketing, is married to Defendant Jack Owoc, and resides in Southwest Ranches, Florida.

## BACKGROUND

**I.     THE DEBTORS' SOCIAL MEDIA ASSETS**

13. Since as early as 2010, the Debtors have made strategic use of a variety of non-traditional marketing channels, including marketing directly to customers through various social media platforms. As of the Petition Date, the Debtors created and operated a number of social media accounts as part of their marketing efforts.

14. Both pre- and post-petition, the Company's marketing department created content that was posted across their various social media accounts in a regular and coordinated fashion. The CEO Accounts were among the accounts created by the Company's marketing department and for which the Company's marketing department curated and posted content for purposes of

promotion of the Debtors' products and business.  The CEO Instagram Account is a verified account with over 1 million followers and more than 6400 posts, the vast majority of which promote the Debtors' products and business.  The CEO Instagram Account is also displayed prominently on the can label for the Debtors' signature product, Bang energy drink:



15. Similarly, the CEO TikTok Account has over 850,000 followers and the CEO Twitter Account has over 7,000, with each including content primarily focused on promoting the Debtors' products and business. Content is frequently cross-posted across the three CEO Accounts.

16. Only a few employees of the Company, including Defendants, had direct access to the Debtors' social media accounts, including knowledge of login credentials and the ability to post content. On information and belief, to the extent any Company employee other than Defendants had knowledge of the login credentials for the CEO Accounts, Defendants have instructed such employee(s) not to reveal the login credentials to the responsible Company officers, and Defendants have changed the login credentials so as to ensure that the Company cannot access or control such accounts.

## II.     THE CHAPTER 11 CASES

17. On October 10, 2022, each of the Debtors commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' Chapter 11 Cases are being jointly administered.

18. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108, 11 U.S.C. §§ 1107, 1108.

19. On November 1, 2022, the Office of the United States Trustee (the "<u>U.S. Trustee</u>") appointed the official committee of unsecured creditors (the "<u>Committee</u>") [ECF No. 245]. On November 23, 2022, the U.S. Trustee reconstituted the Committee [ECF No. 400]. No request has been made to the Court to order the appointment of a trustee or examiner.

20. It is imperative that the Debtors continue operations, including marketing efforts, during the Chapter 11 Cases, particularly given that the Debtors are in the midst of a sales process.

## III. THE BOARD'S TERMINATION OF MR. AND MRS. OWOC

21. On March 9, 2023, the Debtors' Board voted to terminate the employment of Mr. Jack Owoc and Mrs. Meg Liz Owoc, and to remove Mr. Owoc from the Board for cause.

22. The Company promptly notified Defendants and their individual counsel of the Board's decision. The Company directed Defendants to immediately return all of the Debtors' property, including, among other items, any access codes or devices, mobile phones, computers, and any other property and information.[2]

23. Following Mr. Owoc's termination, Mr. John DiDonato of Huron Consulting, who had been serving as the Debtors' Chief Transformation Officer, was named by the Board as the Debtors' Interim Chief Executive Officer.

## IV. THE COMPANY'S ATTEMPTS TO SECURE ALL SOCIAL MEDIA ACCOUNTS

24. Given the management transition, the Company and its advisors worked to secure all estate property, including access to the Company's social media accounts. While the Debtors were able to secure a majority of the social media accounts and changed login credentials and points of contact, they were unable to obtain the current login credentials to the CEO Accounts.

25. On information and belief, the Debtors understand that, following their termination from the Company, Defendants instructed a certain Company employee who had access to login credentials to the Company's social media accounts, including the login credentials for the CEO Accounts, to refuse to disclose those login credentials to others at the Company or its advisors.

---

[2] The Company continues to assess the extent to which Mr. Owoc or Mrs. Owoc may be in possession of Company property and reserve the right to amend this complaint and take additional appropriate action with regard to any additional Company property that Mr. Owoc or Mrs. Owoc have retained and refused to return.

26. On March 10, 2023, the Company sent a letter to counsel for Defendants reiterating the need that they promptly return all Company property and demanding that they reveal the login credentials to the CEO Instagram Account.

27. Despite multiple follow-up attempts, as of the filing of this complaint, the Debtors have been unable to secure Defendants' voluntary turnover of access to and control over the CEO Accounts. In addition to using the CEO Accounts for promotional marketing that is important to the Debtors' efforts to maximize value, the Company is concerned that while Defendants remain in control of the CEO Accounts they might post content that is intended to harm or (intended or not) is otherwise harmful to the Debtors, their business, and/or the ongoing marketing process.

28. Even in the absence of harmful content, the Company's lack of access to the CEO Accounts itself constitutes immediate and increasing harm. The Company relies heavily on social media for its marketing strategy; losing access to the CEO Accounts with a substantial number of followers thus creates an immediate, substantial, and compounding harm to the Company's ability to market its products and to present an attractive target for potential purchasers.

29. Simultaneously herewith, the Debtors have filed an *Emergency Motion for Temporary Restraining Order and Incorporated Memorandum of Law* seeking immediate turnover of control of the CEO Accounts pending resolution of this Adversary Proceeding.

### COUNT I

**DECLARATORY JUDGMENT**
**(The Debtors Are Entitled to Control of the CEO Accounts)**
*Asserted Against All Defendants*

30. The allegations set forth in Paragraph 1 through Paragraph 29 are incorporated by reference as if set forth fully herein.

31. An actual legal and substantial controversy exists as to whether the Debtors are entitled to control over and return of the login credentials associated with the CEO Accounts.

8

Specifically, while the Company has demanded that Defendants reveal the login credentials to the CEO Accounts, they have not provided that information.

32.     This controversy is of sufficient immediacy to warrant judicial relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

33.     Plaintiff is entitled to a declaratory judgment that the Debtors are entitled to control over the CEO Accounts.

## COUNT II

### TURNOVER OF ESTATE PROPERTY PURSUANT TO 11 U.S.C. § 542(E)
*Asserted Against All Defendants*

34.     The allegations set forth in Paragraph 1 through Paragraph 33 are incorporated by reference as if set forth fully herein.

35.     The CEO Accounts and any other Company Accounts are property of the Debtors' bankruptcy estate pursuant to 11 U.S.C. § 541(a). By withholding the login credentials for the CEO Accounts from the Company, Defendants have taken effective possession of the accounts. For the same reason, the login credentials necessary to access and control the accounts are property of the Debtors' bankruptcy estate. Plaintiff is entitled to the login credentials and to control over the CEO Accounts as among the various social media accounts used both pre- and post-petition for purposes of marketing the Debtors' products and business.

36.     The login credentials to the CEO Accounts, and therefore the accounts themselves, are presently in the effective possession, custody, or control of Defendants.

37.     Through counsel, Plaintiff made demand upon Defendants for the turnover of the login credentials to the Company Accounts.

38.     To date, Defendants have failed and refused and continue to fail and refuse to turn over the login credentials to the CEO Accounts.

39. The login credentials, and with them control of the CEO Accounts, are necessary to fully secure the Company's social media marketing channels, both to preserve and maximize value of the Debtors' estates and to avoid the risk that Defendants could post content on the CEO Accounts that is intended to harm or does harm the Company.

40. The Debtors are entitled to entry of an order pursuant to 11 U.S.C. § 542(e) directing Defendants to turn over the login credentials to the CEO Accounts and granting the Debtors such other and further relief as may be just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests this Court enter an order:

a) confirming through a declaratory judgment that the Debtors are entitled to control of the CEO Accounts and all other Company Accounts.

b) ordering Defendants to turn over to the Debtors the login credentials to, and all access to and control over, the CEO Accounts and all other Company Accounts.

c) granting such other and further relief as the Court deems just and proper.

Dated: March 14, 2023
      Miami, Florida

Respectfully submitted,

/s/ Jordi Guso
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Email: jguso@bergersingerman.com
      mniles@bergersingerman.com

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: george.davis@lw.com
    tj.li@lw.com
    brian.rosen@lw.com
    jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone:   (202) 637-2200
Email:   andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:   whit.morley@lw.com

*Co-Counsel for the Debtors/Plaintiffs*