UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:

VITAL PHARMACEUTICALS, INC., *et al.*,[1]

Debtors.
_____/

Chapter 11 Cases

Case No.: 22-17842-PDR

(Jointly Administered)

**DEBTORS' MOTION FOR AUTHORIZATION TO ENTER INTO AN EXCESS INSURANCE POLICY WITH XL SPECIALTY INSURANCE COMPANY**
[Hearing Requested on March 23, 2023 at 1:30 p.m.]

Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev LLC and Vital Pharmaceuticals International Sales, Inc. (collectively, the "Debtors"), by and through their undersigned counsel, pursuant to 11 U.S.C. §§ 105 and 363(b), file this *Debtors' Motion for Authorization to Enter into an Excess Insurance Policy with XL Specialty Insurance Company* (the "Motion"). The Motion seeks entry of an order, substantially in the form attached hereto as **Exhibit "B"**, authorizing the Debtors to enter into an additional excess insurance policy with XL Specialty Insurance Company, providing additional Side A D&O liability insurance to the Debtors' officers and directors. In support of this Motion, the Debtors rely upon the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* (ECF No. 26, the "First Day Declaration") and the *Declaration of John C. DiDonato in Support of the Motion For Authorization to Enter into an Excess Insurance Policy with XL*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

11962400-4

*Specialty Insurance* which has been filed with the Court on the date hereof and is incorporated herein, and respectfully represent as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are sections 105(a), 363(b) and 507(a)(5) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

### Background

4. On October 10, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

5. The Debtors are operating their business and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the First Day Declaration filed on the Petition Date.

7. On October 11, 2022, the Court entered an order jointly administering the Debtors' chapter 11 cases [ECF No. 43].

8. On October 14, 2022, the Court entered an *Order Granting Debtors' Emergency Motion for Authorization to (I) Continue to Administer Insurance Policies and Related Agreements; and (II) Honor Certain Obligations in Respect Thereof* [ECF No. 109], authorizing,

2

11962400-4

*inter alia,* the Debtors' continued maintenance and payment of the Chubb D&O Policy with Federal Insurance Company, as further defined below.

9. On November 1, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in these chapter 11 cases [ECF No. 245]. On November 23, 2022, the United States Trustee reconstituted the Committee [ECF No. 400].

10. On or about October 24, 2022, the Debtors took corporate action to increase the number of directors or managers of each Debtor from one (1) to five (5) members ("Board of Directors"). Thereafter, on January 7, 2023, the Debtors appointed four (4) directors and managers to serve along with John H. Owoc. The Debtors' current independent directors/managers are: (i) Steve Panagos; (ii) Eric Hillman; (iii) Bob Dickerson; and (iv) Steven Gray (collectively, the "Directors"). The January 7, 2023, resolutions also provide that John DiDonato, the Debtors' Chief Transformation Officer ("CTO"), is to report to the Restructuring Committee created and appointed by the Debtors' then-Directors, which is chaired by Mr. Panagos.

11. As of March 9, 2023, Mr. Owoc is no longer an officer or director of the Debtors. On that date, the Directors appointed Mr. DiDonato as the Debtors' Interim CEO. Mr. DiDonato continues to serve as the CTO.

**D&O Coverage**

12. Prepetition, the Debtors obtained and maintained a Directors & Officers and Entity Liability Policy through Federal Insurance Company in the aggregate coverage amount of $2,000,000.00 (Policy No. 8261-9808, the "Chubb D&O Policy"). The Chubb D&O Policy expires on May 31, 2023.

13. Prior to the Petition Date, as additional coverage for the CTO and the Directors,

3

11962400-4

the Debtors obtained a Directors & Officers Excess Side A Difference in Conditions Policy through Sombo International Insurance Company, in the aggregate limit amount of $5,000,000.00 (Policy No. ADL30026160500, the "Sombo Excess Policy"). The Sombo Excess Policy expires on May 31, 2023, and provides coverage, subject to certain exclusions, to the CTO and the Directors provided they have not already been indemnified for those losses by the Debtors.

14. At the request of the Directors, the Debtors obtained an additional layer of Side A Directors & Officers Coverage, pursuant to the quote provided by XL Specialty Insurance Company, attached hereto as **Exhibit "A"** (the "XL Specialty Policy"). The XL Specialty Policy provides additional Excess Side A liability coverage, subject to certain exclusions, in the amount of $5,000,000.00 through May 31, 2023, to the CTO and Directors. Combined with the Sombo Excess Policy a total of $10 million Side A Difference in Condition Coverage would be available to the Directors through May 31, 2023.

15. The Debtors have determined that they are currently under-insured with respect to their officers and directors' liability insurance given the size and complexity of their business. The Debtors are advised that companies of similar size to the Debtors (*i.e.*, assets between $500M and $1B), typically maintain a median total limit (including Side A coverage) of $15,000,000. The proposed XL Specialty Policy, if approved, would provide a total of $10 million of coverage to the Directors as of the date the XL Specialty Policy is bound, more closely aligning the Debtors' D&O coverage with that of similarly sized companies. The XL Specialty Policy will include a Prior & Pending Litigation Exclusion, precluding coverage for any litigation or demands existing as of the policy inception date.

16. The premium associated with the XL Specialty Insurance Company's Excess Side

A Liability coverage through May 31, 2023, is $70,000.00, plus a 2% surcharge paid to the state of Florida for a total amount of $71,400.

17.     The XL Specialty Policy will not provide coverage for Mr. Owoc or any other former officer or director of the Debtors.

### Relief Requested and Basis Therefor

18.     The Debtors seek authority, in their reasonable business judgment, to obtain excess Side A liability D&O Coverage from XL Specialty Insurance Company. For the reasons set forth below, the Debtors believe that the relief requested is necessary and appropriate under the circumstances.

19.     Section 105(a) of the Bankruptcy Code provides, in relevant part:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105(a).

20.     Section 363(b)(1) authorizes a debtor in possession "after notice and a hearing" to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

21.     Pursuant to section 363(b), a bankruptcy court is empowered to authorize a debtor to expend funds in the bankruptcy court's discretion outside of the ordinary course of the debtor's business. *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005); *In re Ionosphere Clubs, Inc.,* 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances." *In re Ionosphere Clubs, Inc.,* 98 B.R. at 175; see also *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 155 (D. Del. 1999) ("Section 363(b) should be interpreted liberally to provide a bankruptcy judge with 'substantial freedom to tailor his orders to meet differing circumstances'

and to avoid 'shackling the judge with unnecessarily rigid rules." (citation omitted)). Although section 363(b) does not set forth a standard for determining when it is appropriate to authorize transactions outside of the ordinary course, courts generally grant such relief if the debtors articulate a sound business purpose. *In re Friedman's Inc*., 336 B.R. 891, 895 (Bankr. S.D. Ga. 2005); see also *In re Tropical Sportswear Int'l Corp*., 320 B.R. at 17 (finding a "sound business justification" for transaction outside of ordinary course). In addition, courts "should approve an exercise of a debtor's business judgment unless it is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *In re Friedman's Inc*., 336 B.R. at 895 (quoting Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985)).

22.　　The Debtors have compelling business reasons for seeking to increase the D&O Side A coverage provided by the XL Specialty Policy. First, pursuant to their organizational documents, the Debtors have agreed to indemnify their directors and managers to the fullest extent permitted under applicable law. Similarly, the contracts between the Debtors and the CTO and the Debtors and each Director obligate the Debtors to indemnify and hold each harmless for any claim or expense arising from his service to the Debtors. Third, the Debtors currently have insufficient insurance coverage for their officers and directors given the size and complexity of their business. The median D&O coverage for a company with similar assets to the Debtors is closer to $15,000,000. The additional policy will more closely align the Debtors' insurance coverage with those maintained by similar sized businesses. The Debtors have the liquidity to pay the additional premium and will not constrained by the additional expense.

### Reservation of Rights

23.　　Nothing contained herein is intended or should be construed as an admission as to

the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365. The Debtors expressly reserve their right to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

24. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a), and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**WHEREFORE**, the Debtors respectfully request that the Court enter an order in the form attached hereto as **Exhibit "B**,*"* (i) granting the relief requested in this Motion, and (ii) granting such other relief as the Court deems just and proper.

| | |
|---|---|
| Dated: March 14, 2023<br>Miami, Florida | Respectfully submitted,<br><br>*/s/ Jordi Guso*<br>Jordi Guso |
| George A. Davis (admitted *pro hac vice*)<br>Tianjiao ("TJ") Li (admitted *pro hac vice*)<br>Brian S. Rosen (admitted *pro hac vice*)<br>Jonathan J. Weichselbaum (admitted *pro hac vice*)<br>**LATHAM & WATKINS LLP**<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Email:  george.davis@lw.com<br>            tj.li@lw.com<br>            brian.rosen@lw.com<br>            jon.weichselbaum@lw.com | Florida Bar No. 863580<br>Michael J. Niles<br>Florida Bar No. 107203<br>**BERGER SINGERMAN LLP**<br>1450 Brickell Avenue, Suite 1900<br>Miami, FL 33131<br>Telephone: (305) 755-9500<br>Email:  jguso@bergersingerman.com<br>            mniles@bergersingerman.com |

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Email:   andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:   whit.morley@lw.com

*Co-Counsel for Debtors*

8

11962400-4

# **EXHIBIT "A"**
# **(XL SPECIALTY POLICY QUOTE)**

11962400-4



**AXA XL - Professional**
100 Constitution Plaza
17th Floor
Hartford, CT 06103
Phone    860-246-1863
Fax       860-246-1899

## EXCESS SIDE A LIABILITY QUOTE

| | |
|---|---|
| Date: | January 27, 2023 |
| Name: | Billy Kroupa |
| Company: | Cobbs Allen |
| From: | Hank Toolan    Direct: 860.948.1846    hank.toolan@axaxl.com |

### INSURED INFORMATION

| | |
|---|---|
| Name: | Vital Pharmaceuticals, Inc. |
| Address: | 1600 North Park Dr |
| | Weston, FL 33326 |
| Carrier: | XL Specialty Insurance Company |

| POLICY FORM | | POLICY PERIOD |
|---|---|---|
| XS 71 00 05 14 | Excess Liability | Inception to 5/31/23 |
| **LIMIT of LIABILITY** | | **ATTACHMENT** |
| $5,000,000 | Aggregate each Policy Period (including defense expenses) | $5,000,000 |

**PREMIUM:**  $70,000.00  (Plus 2% FL Surcharge)

**The portion of your annual premium that is attributable to coverage for acts of terrorism is: $ waived.**

Commission:  15.00%

### ENDORSEMENTS:

- **Terrorism TRIA**
- **In Witness Endorsement**
- **Office of Foreign Assets Control Notice**
- **Privacy Notice**
- **Fraud Notice**
- **Countersignature**
- **FL Notices**
- **FL Amendatory Endorsement (XS 72 08 02 21)**
- **Excess Terrorism Endorsement (XS 80 224 11 21)**
- **Excess Endorsement  (XS 80 07 12 14)**
- **Inconsistency (XL 80 38 02 05)**
- **Not Follow Form of Sublimited Coverage (Recognize Erosion) (XS 80 05 12 14)**
- **DIC into DIC Endorsement (XSX 80 19 10 17)**
- **P&P Lit Exclusion – Inception (XS 83 02 12 14)**
- **Fully Earned Premium (XL 80 66 03 11)**

**PRIOR TO BINDING, THIS QUOTATION IS SUBJECT TO RECEIPT, REVIEW, AND ACCEPTANCE OF THE FOLLOWING ITEMS:**

- N/A

## Quote Expires in 30 Days

# POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

**Coverage for acts of terrorism is already included in your current policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your existing coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by federal law. Under this formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019; and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. However, your policy may contain other exclusions that may affect your coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.**

**The portion of your annual premium that is attributable to coverage for acts of terrorism is:**
**$ waived. Any premium waiver is only valid for the current Policy Period.**

I ACKNOWLEDGE THAT I HAVE BEEN NOTIFIED THAT UNDER THE TERRORISM RISK INSURANCE ACT, AS AMENDED, ANY LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM UNDER MY POLICY COVERAGE MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT AND I HAVE BEEN NOTIFIED OF THE AMOUNT OF MY PREMIUM ATTRIBUTABLE TO SUCH COVERAGE.

Name of Insurer: **XL Specialty Insurance Company**

Policy Number: **Quote Only**

_____
Signature of Insured

_____
Print Name and Title

_____
Date

# EXHIBIT "B"
# (PROPOSED ORDER)

11962400-4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                                                    Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]                  Case No.: 22-17842-PDR

    Debtors.                                                                     (Jointly Administered)
_____/

**ORDER GRANTING DEBTORS' MOTION FOR AUTHORIZATION TO ENTER INTO AN EXCESS INSURANCE POLICY WITH XL SPECIALTY INSURANCE COMPANY**

        **THIS MATTER** having come before the Court on March __, 2023, at _____ p.m., in Fort Lauderdale, Florida, the *Debtors' Motion for Authorization to Enter into an Excess Insurance Policy with XL Specialty Insurance Company* (the "Motion") [ECF No. ___] filed by the Debtors[2]. The Court finds that (i) it has jurisdiction over the matters raised in the Motion under 28 U.S.C.

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Motion.

11987586-1

§§ 157 and 1334; (ii) this is a core proceeding under 28 U.S.C § 157(b)(2)(A), and that this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; (v) notice of the Motion and the hearing were appropriate under the circumstances; and (vi) upon review of the record before the Court, including the legal and factual bases set forth in the Motion, the *Declaration of John C. DiDonato in Support of the Motion For Authorization to Enter into an Excess Insurance Policy with XL Specialty Insurance* [ECF No. ___] and the statements made by counsel at the hearing, good and sufficient cause exists to grant the relief requested in the Motion, it is

      **ORDERED AND ADJUDGED** as follows:

    1.    The Motion is **GRANTED**.

    2.    The Debtors are authorized to enter into that certain additional excess insurance policy with XL Specialty Insurance Company, pursuant to the quote attached to the Motion as **Exhibit "A"**.

    3.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

#   #   #

Submitted by:
Jordi Guso, Esq.
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email: jguso@bergersingerman.com
Email: mniles@bergersingerman.com

(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)

11987586-1