Page 1

1    UNITED STATES BANKRUPTCY COURT
        SOUTHERN DISTRICT OF FLORIDA

2

3

4    IN RE:                    CASE NO. 22-17842-PDR

5    VITAL PHARMACEUTICALS, INC.,

6            Debtor.
     _____/

7

8                    ECF #559

9               January 4, 2023

10           The above-entitled cause came on for hearing

11    before the Honorable Peter D. Russin, one of the Judges in

12    the UNITED STATES BANKRUPTCY COURT, in and for the

13    SOUTHERN DISTRICT OF FLORIDA, at 299 E. Broward Blvd.,

14    Fort Lauderdale, Broward County, Florida, on January 4,

15    2023, commencing at or about 2:00 p.m., and the following

16    proceedings were had.

17

18

19

20

21

22

23        Transcribed from a digital recording by:
              Cheryl L. Jenkins, RPR, RMR

24

25

Page 2

```
 1
                        APPEARANCES VIA ZOOM:
 2
 3                     LATHAM & WATKINS, by
                       ANDREW SORKIN, Esquire
 4                     AMY QUARTAROLO, Esquire
                       LIZA BURTON, Esquire
 5                 On behalf of the Debtor
 6                     AKERMAN, LLP, by
                     MICHAEL GOLDBERG, Esquire
 7                            and
                PACHULSKI STANG ZIEHL & JONES, by
 8                   ROBERT FEINSTEIN, Esquire
                       TEDDY KAPUR, Esquire
 9                On behalf of Monster Energy
10                        SEQUOR LAW, by
                       LEYZA BLANCO, Esquire
11                            and
                       LOWENSTEIN SANDLER, by
12                     JEFFREY COHEN, Esquire
                       LINDSAY SKLAR, Esquire
13                 On behalf of the Official
                Committee of Unsecured Creditors
14
                       SHUTTS BOWEN, by
15                    HARRIS KOROGLU, Esquire
                            and
16                   MOORE & VAN ALLEN, by
                     LUIS LLUBERAS, Esquire
17                 On behalf of Truist Bank
18             J. STEVEN WILKES, Trial Attorney
                   Office of the U.S. Trustee
19                   Department of Justice
20                     FURR & COHEN, by
                     MARC BARMAT, Esquire
21          On behalf of American Bottling Company
22
                       ALSO PRESENT
23
            ECRO - Electronic Court Reporting Operator
24
25
```

Page 3

```
 1                    THE COURT:  Good morning -- I mean,
 2    afternoon.  Calling the 2 o'clock matter, Vital
 3    Pharmaceuticals, 22-17842.
 4                    Appearances, let's start with Mr. Wilkes.
 5                    MR. WILKES:  Good afternoon, your Honor.
 6    J. Steven Wilkes for the United States Trustee, Region 21.
 7                    THE COURT:  Mr. Lluberas.
 8                    MR. LLUBERAS:  Good afternoon, your Honor.
 9    Luis Lluberas on behalf of Truist Bank, as both the
10    prepetition agent and postpetition agent for the
11    syndicated credit facilities.
12                    I believe my co-counsel, Harris Koroglu, is
13    also on as well, from Shutts & Bowen.
14                    THE COURT:  I see him.
15                    Mr. Sorkin.
16                    MR. SORKIN:  Good afternoon, your Honor.
17    Andrew Sorkin, Latham & Watkins, on behalf of the debtors.
18    I am joined by two of my colleagues, Liza Burton,
19    Amy Quartarolo, from Latham, as well.
20                    THE COURT:  All right.  Thank you.
21                    Mr. Barmat.
22                    MR. BARMAT:  Good afternoon, your Honor.
23    Marc Barmat on behalf of American Bottling Company.  Also
24    here, but I don't think he's appearing, is Russell
25    Faulkner, who is also counsel for American Bottling
```

1    company.  Thank you.

2                    THE COURT:  Thank you.

3                    Mr. Cohen.

4                    MR. COHEN:  Good afternoon, your Honor.

5    Jeffrey Cohen, Lowenstein Sandler, on behalf of the

6    creditors' committee.  With me today my colleagues from

7    Lowenstein Sandler, Lindsay Sklar and my co-counsel,

8    Leyza Blanco.

9                    THE COURT:  All right.  Thank you.

10                   Mr. Kapur.

11                   (No verbal response.)

12                   THE COURT:  Mr. Kapur, are you there?  Can

13   you hear us?

14                   MR. KAPUR:  Good afternoon, your Honor.

15   Teddy Kapur, of Pachulski Stang Ziehl & Jones, on behalf

16   of Monster Energy company.  I see Rob Feinstein on as well

17   as Michael Goldberg, on our team.

18                   THE COURT:  Yes.  Mr. Feinstein, can you

19   rename yourself?  It was hard to see you there, because I

20   think you're on your phone, but all good.  There is only

21   one Mr. Feinstein, and you're it.

22                   MR. FEINSTEIN:  Okay.  I'm having computer

23   difficulties, your Honor, I'm trying to switch over to a

24   regular computer, but I am present, and I will try to

25   limit --

1                    THE COURT:  Yes, I see that.

2                    All right.  So we already heard about

3    Ms. Sklar and Ms. Blanco.

4                    Mr. Goldberg -- and we already heard about

5    Mr. Goldberg.  All right, but do you want to make an

6    appearance?

7                    MR. GOLDBERG:  Good afternoon, your Honor.

8    Mike Goldberg on behalf of Monster Energy.

9                    THE COURT:  Any other appearances?

10                   (No verbal response.)

11                   THE COURT:  Okay.  So, expedited motion to

12   extend time to remove certain actions filed by the debtor.

13                   I assume, Mr. Sorkin, you will be arguing

14   this?

15                   MR. SORKIN:  That matter will actually be

16   handled by my colleague, Ms. Burton.

17                   Before she does that, I know we often begin

18   with a status update on DIP and governance matters, and

19   I'm happy to do that again if it pleases your Honor.

20                   THE COURT:  Sure.

21                   MR. SORKIN:  Thank you.

22                   So the last time we were all together,

23   your Honor, I believe it was December 19th, the debtors'

24   boards had just approved acceptance of the lenders'

25   proposal with respect to governance, which would get the

1   DIP back on track to be heard next Tuesday, January 10th.

2                   I'm pleased to report that we remain on

3   track, and we now have a full agreement among the company,

4   the committee, and the lenders with respect to the

5   composition of our boards going forward, and all other

6   governance matters, subject to completion of certain

7   amendments to our organizational documents, and the

8   adoption of those amendments through written board

9   resolutions, and we're hopeful that this is going to

10  significantly streamline next week's hearing.

11                  The high-level terms of that governance

12  resolution I announced on December 19th were reflected in

13  the revised DIP documents that we filed on December 23rd,

14  that was at Docket Entry 75, and those docs also reflected

15  the other concessions that the lenders had made as part of

16  their settlement with the committee.

17                  As you may recall, one of the terms of the

18  governance resolution was that one of two board members,

19  either Dr. Escalante or Mr. Hillman, be replaced with a

20  new independent director acceptable to the lenders.

21                  We spent the last couple of weeks working

22  with the lenders and the committee to agree on who that

23  new independent director will be, and we found him.  His

24  name is Steven Gray.  He's an experienced restructuring

25  professional, who served as an independent director for

Page 7

1    distressed companies in a variety of industries inside and

2    outside of Chapter 11, and in many other roles, including

3    as financial advisor, Chapter 7 or 11 trustee,

4    post-confirmation trustee and examiner.  He will be

5    joining the debtors' boards, and replacing Dr. Escalante,

6    who resigned on December 29th.

7                   We're finalizing his independent director

8    agreement as we speak, and we expect it to be executed

9    today, and I think everyone can agree that Mr. Gray's

10   experience and independence will be a welcome addition to

11   the board.

12                  So, just to back up, that means the board

13   going forward will be comprised of Mr. Owoc, Mr. Hillman,

14   Mr. Dickinson, Mr. Gray, and Mr. Panagos.

15                  Both the lenders and the committee are

16   satisfied proceeding with that set of directors and

17   managers, as they view each of Mr. Dickinson, Mr. Gray,

18   and Mr. Panagos as independent, and they want to be sure

19   the board stays that way.  So another part of the

20   resolution involves modification of our organizational

21   documents, that are designed to achieve that objective.

22                  First, there is going to be a set of

23   amendments that vest the power to make further changes to

24   the board's composition, exclusively in the board itself,

25   such that the shareholder can't change the board's

1    composition unilaterally.

2              In addition, in the event that a director is

3    removed, it will need to be for cause, and if a vacancy

4    arises in one of the seats held by Mr. Dickinson,

5    Mr. Gray, or Mr. Panagos, the three directors that the

6    lenders and committee view as independent, that seat would

7    need to be filed by another independent director.

8              The second set of changes relates to the

9    quorum requirements.  Those requirements would be amended

10   to require that at least two of the directors or managers

11   deemed independent by the lenders and committee be present

12   for a quorum to exist, and for the board to take action.

13             As I mentioned, your Honor, we, the

14   committee and the lenders, are in process of memorializing

15   those changes to the organizational documents through

16   written board resolutions, and those will also give effect

17   to the rest of the governance settlement that I described

18   on December 19th, including the terms that more clearly

19   define the scope of Mr. DiDonato's mandate as chief

20   transformation officer.

21             We will likely add additional provisions to

22   the final DIP order, consistent with the safeguards for

23   which the lenders and the committee have negotiated.  So

24   we have quite a bit of wood to chop on these documents,

25   but we're working quickly, and all of the constituents are

1    hoping to complete it as promptly as possible, ideally by

2    tomorrow, but hopefully no later than the end of this

3    week.

4                This settlement will do two things, it

5    allows us to gain access to additional DIP financing in

6    the interim, and it will fully resolve the committee's DIP

7    objections, such that they wouldn't be presenting or

8    examining any witnesses at Tuesday's hearing.

9                With the governance issues hopefully behind

10   us, we're continuing to work with each of the remaining

11   objectors to the DIP to try to build further consensus

12   around entry of the final order.

13               Just to recap, those objectors are Monster,

14   the U.S. Trustee, and a group of contractors that assert

15   mechanic's liens against our Arizona manufacturing

16   facility.

17               To the extent that additional resolutions

18   are reached, which we hope there will be, we will include

19   them in a further revised order.

20               One related note with respect to Monster,

21   specifically, just before the hearing we filed a motion to

22   approve an arrangement whereby we will establish an escrow

23   for Monster and Orange Bang's 5 percent royalty, that I

24   think you heard about the last time we were together.

25               THE COURT:  Yeah, I thought I saw a motion

1   filed dealing with that, right?

2              MR. SORKIN:  Yes, yes, so that 5 percent

3   royalty, to the extent accruing postpetition, we would

4   escrow in a segregated account solely for their benefit,

5   the estate would have a reversionary interest in it, to

6   the extent it prevails on appeal.  That would address one

7   of the issues that they raised in connection with their

8   DIP objection, but it goes beyond that, and avoids the

9   need to bring to your Honor various other disputes

10  concerning current payment of the postpetition royalty.

11             Because the agreement contemplates that the

12  escrow would be funded shortly after we gain access to the

13  remainder of the DIP, we've asked for it to be heard on

14  shortened notice, alongside the DIP on January 10th.

15             So just to wrap up, your Honor --

16             THE COURT:  So, do you want me to schedule

17  that now, or agree to that scheduling now, and is everyone

18  in agreement to that scheduling?

19             MR. SORKIN:  We previewed it with the

20  lenders and the committee, I believe they are, but I know

21  they're all represented at today's hearing, so I don't

22  want to speak out of turn.

23             THE COURT:  All right.  Well, why don't we

24  interrupt your status for a moment and see if we can -- if

25  everyone agrees to the January 10th date, so we can just

1    go ahead and have that noticed.  The sooner the better,

2    since we're on shortened notice.

3                    Does anyone disagree with setting that

4    hearing?  What's the docket entry number, Mr. Sorkin?

5                    MR. SORKIN:  If you'll give me one moment.

6                    THE COURT:  I would try to find it on my

7    computer, but I just changed Password Managers, which I

8    just do not recommend you ever having to do, because it is

9    a nightmare, and I can't easily get into anything, but

10   anyway --

11                   MR. SORKIN:  Understood, your Honor, and 603

12   is the motion, and 604 is the motion to shorten time.

13                   THE COURT:  All right.  So 603 and 604, does

14   anyone object to setting 603 -- granting 604, and setting

15   603 for the January 10th date?

16                   (No verbal response.)

17                   THE COURT:  All right.  No objections.

18   Mr. Sorkin, submit an order granting 604, setting 603 for

19   that date and time, and I don't think you need to submit

20   an order -- just one order on 604.

21                   MR. SORKIN:  Okay.  Thank you, your Honor.

22                   THE COURT:  Sure.

23                   MR. SORKIN:  I was just about to wrap up.

24                   We are hopeful that given resolution of the

25   committee's objection, and the nature of the remaining

Page 12

1    open issues of the objectors, Tuesday's hearing can
2    largely focus on argument on the open issues, and it won't
3    be necessary to have an extensive live evidentiary
4    presentation, and we can instead rely on the evidence as
5    we submit it through our declarations and exhibits.
6                    And I'll pause there, and ask if your Honor
7    has any questions, and yield to anyone else who would like
8    to be heard.
9                    THE COURT:  Meaning that the declarants
10   would not need to be made available for cross-examination,
11   there are just cross-declarations, or how does that play
12   out?
13                   MR. SORKIN:  No, sorry, your Honor, we will
14   make them available for cross-examination, to the extent
15   anybody desires cross-examination.  We'll have them
16   present anyway, I just don't know whether anybody intends
17   to cross-examine them or not.
18                   THE COURT:  Oh, I see, so to save time for
19   the hearing, I will have read -- I usually do anyway, all
20   of the declarations before we walk into court, and then
21   you'll just present those as part of your case in chief,
22   and then we'll see if there is anybody who wishes to
23   cross, that's the idea?
24                   MR. SORKIN:  Right, right, we would try to
25   move the declarations into evidence in lieu of live

1   direct, and that would all be subject to

2   cross-examination, of course.

3                   THE COURT:  All right, and any other

4   heads-up with respect to what may happen on January 10th

5   in terms of how the hearing will play out, or how many

6   witnesses, and things of that nature, how long it will

7   take?

8                   MR. SORKIN:  Speaking for the debtors, I

9   mean, we have two witnesses that, again, hopefully they

10  never actually have to testify live, that's Mr. DiDonato

11  and Mr. Parkhill.

12                  I would think that, you know, if the hearing

13  starts at 1:30, we will have sufficient time to wrap up

14  that day.

15                  THE COURT:  All right.  Great.

16                  All right.  Anyone else wish to be heard by

17  way of status?

18                  MR. COHEN:  Your Honor, if I may,

19  Jeffrey Cohen on behalf of the committee.

20                  THE COURT:  Sure, Mr. Cohen.

21                  MR. COHEN:  First of all, happy New Year,

22  your Honor.

23                  THE COURT:  The same to you.

24                  MR. COHEN:  Thank you.

25                  Not much to add, your Honor.  I think

Page 14

1    Mr. Sorkin did an excellent job of summarizing where we

2    stand today.  Just one clarifying remark.  Mr. Sorkin said

3    that the committee will not be examining any witnesses or

4    presenting argument.

5                    Our objection is full -- will be fully and

6    finally resolved, subject to the documentation, over the

7    next few days, but being the committee is a party in

8    interest, we do reserve the right to argue or examine a

9    witness if it becomes appropriate in the moment.  We don't

10   have the intention to do so now, but I just wanted to

11   mention that to your Honor.

12                   THE COURT:  All right.  Thank you.

13                   And, Mr. Wilkes, I know the U.S. Trustee's

14   Office has filed an objection, but it seems to me mainly

15   legal argument would be required, is that right?

16                   MR. WILKES:  That is correct, your Honor,

17   and as we spoke between the hearings this afternoon, at

18   most the United States Trustee would reserve an

19   opportunity to cross-examine any witnesses that are

20   actually put on the stand to testify, but does not

21   anticipate bringing any witnesses in herself.

22                   THE COURT:  All right.  Well, that would

23   mean that the witnesses would be live in the courtroom,

24   correct, Mr. Sorkin?

25                   MR. SORKIN:  Yes, they will be.

Page 15

```
1                THE COURT:  All right.  So tell me, so your
2    intention would be to be here in person, or you would do
3    that by Zoom?  Because we do have some --
4                MR. WILKES:  Your Honor --
5                THE COURT:  -- limitations with respect to
6    examining witnesses by Zoom.
7                MR. WILKES:  -- at this time, as you've
8    heard from Mr. Sorkin, it's probably hopeful that no
9    witnesses will actually be taking the stand and
10   testifying.  If that is the truth -- not the truth, but if
11   that's the result of everyone's position by the 11th, then
12   the United States Trustee won't be doing any
13   cross-examination because there won't be any live
14   testimony, just reserving the right to seek clarification
15   of live testimony given.
16               THE COURT:  All right.  So, let me just make
17   a couple of comments here before we hear further from
18   others.
19               The Court is currently in the throes of
20   figuring out how, and to what extent hearings would be
21   required to be in person.
22               Where we are right now, and Judge Grossman
23   and I are working together on this, and Judge Isicoff, I
24   think, has already made strides in this regard, we're
25   going to likely be requiring all substantive matters to be
```

Page 16

1    in person, including all argument, even if there is no

2    evidence, and certainly evidentiary matters would need to

3    be in person.

4                The limitations would be circumstances in

5    which counsel is not arguing before the Court on any

6    substantive matter, and not examining any witnesses or

7    presenting any evidence.  Those -- and essentially

8    observing, of course those folks need not be here in

9    person.

10               But anyone essentially addressing the Court

11   on a matter that is not fully agreed by all interested

12   parties, and whether objected to or not, if a party has

13   the right to object at a hearing, those -- all of those

14   arguments would need to be made by counsel in person, as

15   well as evidentiary matters.

16               So that's where we're going in this court.

17   I think that a number of courts have already done this.

18   We are trying to balance maintaining the institution, the

19   dignity of the court, the processes that we're all used to

20   in what has become known as the before times, and

21   balancing that against the clear benefits of Zoom, in

22   terms of lowering costs, access to justice, and those

23   kinds of things.

24               But at the end of the day, the court needs

25   to function as a court, and so we are trying to carve out

1    those matters that just need to be in person, unless there

2    is a very good reason not to, and those good reasons are

3    going to likely be more related to what they were in the

4    before times, than a good reason merely being that it's

5    less expensive and easier by Zoom.  So that's where we

6    are, like it or not.  I personally think it's much more

7    fun that way, but anyway, we're not here to have fun, I

8    suppose, but I just wanted to give you all a heads-up of

9    where -- and this will likely be instituted in the next

10   couple of weeks, it seems to me, at least in this court.

11   So, I'm just giving you a warning.

12                   All right.  So that takes care of status,

13   Mr. Sorkin?

14                   MR. SORKIN:  From my standpoint it does,

15   your Honor.

16                   THE COURT:  All right.  Mr. Cohen, did you

17   have anything more to add?

18                   MR. COHEN:  No.  Thank you, your Honor.

19                   THE COURT:  All right.  Anyone else wish to

20   be heard by way of status?

21                   (No verbal response.)

22                   THE COURT:  Okay.

23                   MR. LLUBERAS:  Your Honor, just --

24                   THE COURT:  Yes.

25                   MR. LLUBERAS:  Sorry, your Honor, just very

1   briefly, Luis Lluberas on behalf of Truist Bank.  Just to

2   echo that Mr. Sorkin's presentation was accurate from the

3   lender's perspective, and that we don't have any witnesses

4   of our own either for the hearings on Tuesday.

5                   THE COURT:  All right.

6                   MR. LLUBERAS:  Thank you, your Honor.

7                   THE COURT:  Great.  Thank you, Mr. Lluberas.

8                   All right.  So that brings us to the matter

9   at hand, which is Docket Entry 559, the expedited motion

10  to extend time to remove certain actions.

11                  I've read the motion.  I don't see any

12  objections.  I think you're asking until May of '23, is

13  that right?

14                  MS. BURTON:  Yes.  Good afternoon,

15  your Honor.  It's Liza Burton of Latham & Watkins on

16  behalf of the debtors.

17                  We're asking until May 9th of 2023.

18                  THE COURT:  And I looked at the standard,

19  Ms. Burton, and the statutes just seem to be for cause, so

20  it's pretty open-ended.  I didn't see any cases that speak

21  directly on this point, except to generally state that the

22  Court has the ability to do it, as long as it's within the

23  Court's discretion and reasonable.

24                  Were all of the litigation participants in

25  those matters noticed of the motion and the hearing?

1          In other words, is everybody that might have

2  a stake in the outcome, meaning they've got to wait until

3  May to know whether their matter is going to be removed or

4  not, have they heard about this motion, and have they

5  received the notice of hearing?  Because they may have

6  something to say about it.

7          MS. BURTON:  Your Honor, I would need to

8  double-check the affidavit of service to confirm that they

9  all received notice --

10          THE COURT:  Well, I think it's at 572, if

11  I'm not mistaken.  We have a certificate of service at

12  572.  I just don't know who everybody is.

13          MS. BURTON:  So we have listed on the

14  schedules and statements all of the pending litigations

15  that we are aware of.

16          THE COURT:  And are all those parties listed

17  as creditors or interested parties somewhere in the

18  schedules, so that they would receive notice?

19          MS. BURTON:  I believe so.  If you could

20  just give me a minute to confirm.

21          THE COURT:  Okay.  I mean, what I can do is

22  enter the order, and then require service on all

23  interested parties of the order, and they, of course, can

24  seek rehearing if they don't like the result, but from a

25  due process perspective, it seems to me that they are

1    interested parties and probably should have been noticed.

2                    MS. BURTON:  I think that would be a good

3    solution, your Honor.

4                    THE COURT:  But so you don't -- it's hard to

5    tell from the certificate whether they were noticed

6    already?

7                    MS. BURTON:  It's hard to tell, yeah,

8    exactly, it's hard to tell from this certificate,

9    your Honor, because there is a very large number of

10   pending litigations, and I can't --

11                   THE COURT:  I think it's 63 cases --

12                   MS. BURTON:  -- cross --

13                   THE COURT:  -- or something like that, no?

14                   MR. BURTON:  Yes, it's a little bit over 63.

15                   THE COURT:  Yes.  All right, and tell me

16   about May.  I mean, the statute, or the rule says for

17   cause, and the cause is, obviously you are all focused on,

18   you know, trying to reach confirmation of a plan, and all

19   of those things that are involved prior to that, including

20   DIP financing and things of that sort.

21                   Tell me where you got May from, and tell me

22   a little bit more about the cause, and just so you know,

23   Ms. Burton, my concern here, I'm trying to put myself in

24   the shoes of the counterparties to the litigation, and the

25   notion that, you know, you would normally know within

1    30 days whether your case is being removed to the

2    Bankruptcy Court, and now not knowing, you know, until

3    May, just may be something that, you know, is a -- could

4    be problematic, it's just unusual, it may create issues,

5    and so I'm just trying to gauge how much time should be

6    given for that, because May is -- you know, it's another

7    five months from now, and certainly a significant period

8    of time since the case has been filed.  Actually it's

9    90 days, but beyond the 90 days.

10                  MR. BURTON:  Thank you, your Honor, and we

11   are certainly happy to shorten the deadline from 120 days

12   to a shorter amount, such as 90 days, which is also

13   consistent with, you know, some of the precedent that we

14   have seen in this court.

15                  To answer your question about the cause for

16   extending the deadline, it's exactly as you mentioned, we

17   have been focused on a smooth transition into bankruptcy,

18   we have been focused on finalizing our DIP, and the

19   governance issues, and we just have not had the

20   opportunity to thoughtfully go through each of the varying

21   litigations that we have, which are, you know, across

22   jurisdictions, and different types of claims, and

23   different types of litigations themselves, and make an

24   informed decision.

25                  THE COURT:  All right, and it seemed from

1    the motion that there was not any particular plan to

2    remove any cases, and you may not remove any cases, that's

3    a fair statement?

4                    MS. BURTON:  At this moment we have not

5    removed any cases, and I am not aware of us planning to

6    remove any cases, that's correct.

7                    THE COURT:  Okay.  All right.  Anyone else

8    wish to be heard?

9                    (No verbal response.)

10                    THE COURT:  No?  All right.  So let's go

11   with the 90 days you suggested and, of course, if you need

12   a further extension, you can always ask for it, and let's

13   make sure that the order is served on all of the

14   counterparties to the litigation, so that they at least

15   know what's happening, and if they feel that they need to

16   seek rehearing, they can do that.

17                    I frankly don't know what their argument

18   would be to shorten the time, since it seems to me that in

19   a case like this the focus ought to be where it currently

20   is, and not necessarily on removing litigation, unless

21   that litigation will relate directly to your ability to

22   confirm, or other pending matters in the case, as opposed

23   to a matter of convenience and things of that sort, but

24   just make sure that the order is served on those

25   counterparties, and make it clear in your certificate of

Page 23

1    service that that's been done.

2                   MR. BURTON:  Absolutely, will do,

3    your Honor.

4                   THE COURT:  All right.  I'll look forward to

5    receiving that order then.  Anything else we need to do

6    here today?

7                   MR. SORKIN:  That's all we have on the

8    agenda, your Honor.

9                   THE COURT:  All right.  Great.  Thank you

10   all, and I guess the next time we see each other will be

11   January 10th, correct?

12                  MR. SORKIN:  Correct.

13                  THE COURT:  All right.

14                  MR. SORKIN:  We will see you Tuesday.

15                  THE COURT:  Great.  Thank you all very much.

16                  MR. SORKIN:  Thank you.

17                  MS. BURTON:  Thank you.

18

19

20

21

22                  (Thereupon, the hearing was concluded.)

23

24

25

Page 24

1

2

3                              CERTIFICATION

4

5    STATE OF FLORIDA         :

6    COUNTY OF MIAMI-DADE   :

7

8                  I, Cheryl L. Jenkins, RPR, RMR, Shorthand

9    Reporter and Notary Public in and for the State of Florida

10   at Large, do hereby certify that the foregoing proceedings

11   were transcribed by me from a digital recording held on

12   the date and from the place as stated in the caption

13   hereto on Page 1 to the best of my ability.

14                  WITNESS my hand this 3rd day of March, 2023.

15

16

17          _____

18              CHERYL L. JENKINS, RPR, RMR

19              Court Reporter and Notary Public
             in and for the State of Florida at Large
20                   Commission #HH 170910
                     December 27, 2025

21

22

23

24

25