Page 1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF FLORIDA

IN RE:                          CASE NO. 22-17842-PDR

VITAL PHARMACEUTICALS, INC.,

      Debtor.

_____/

ECF #879

March 16, 2023

      The above-entitled cause came on for hearing before the Honorable Peter D. Russin, one of the Judges in the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, at 299 E. Broward Blvd., Fort Lauderdale, Broward County, Florida, on March 16, 2023, commencing at or about 2:20 p.m., and the following proceedings were had.

      Transcribed from a digital recording by:

Cheryl L. Jenkins, RPR, RMR

```
 1
                         APPEARANCES:
 2

 3                    BERGER SINGERMAN, by
                PAUL AVRON, Esquire (via Zoom)
 4                            and
                     LATHAM & WATKINS, by
 5             HUGH MURTAGH, Esquire (via Zoom)
                   On behalf of the Debtor
 6

 7                   LOWENSTEIN SANDLER, by
                ERIC CHAFETZ, Esquire (via Zoom)
 8             ANDREW SORKIN, Esquire (via Zoom)
                    On behalf of the Official
 9              Committee of Unsecured Creditors
10
                        GRAYROBINSON, by
11             STEVEN SOLOMON, Esquire (via Zoom)
     On behalf of Fiesta Warehousing and Distribution Company
12
13          MARTIN OCHS, Trial Attorney (via Zoom)
                     Office of the U.S. Trustee
14                     Department of Justice
15
                           ALSO PRESENT
16
          ECRO - Electronic Court Reporting Operator
17
18                        - - - - - - -
19
20
21
22
23
24
25
```

1   THE COURT: So now moving on to Vital,
2   22-17842.
3   All right. Mr. Ochs, do you want to make an
4   appearance?
5   MR. OCHS: Yes, thank you, your Honor.
6   Martin Ochs, United States Trustee.
7   THE COURT: All right. Mr. Sorkin.
8   MR. SORKIN: Good afternoon, your Honor.
9   Andrew Sorkin, Latham & Watkins, on behalf of the debtors.
10  THE COURT: Mr. Chafetz.
11  MR. CHAFETZ: Good morning, your Honor.
12  Eric Chafetz, of Lowenstein Sandler, on behalf of the
13  official committee of unsecured creditors.
14  THE COURT: Mr. Solomon.
15  MR. SOLOMON: Thank you. Steven Solomon,
16  S-o-l-o-m-o-n, on behalf of Fiesta Warehouse and
17  Distribution Company.
18  THE COURT: Mr. Murtagh.
19  MR. MURTAGH: Good afternoon, your Honor.
20  Hugh Murtagh on behalf of the Vital Pharmaceuticals
21  debtors.
22  THE COURT: Thank you.
23  And Mr. Avron.
24  MR. AVRON: Good afternoon, your Honor.
25  Paul Avron, with Berger Singerman, counsel for the

1   debtors.
2              THE COURT:  Thank you.
3              MR. AVRON:  Yes, sir.
4              THE COURT:  And so I previously entered an
5   order approving the stipulation in the adversary, so
6   that's resolved, nothing to do here on that today, and so
7   that only leaves the rejection motion.
8              MR. AVRON:  Your Honor, I believe that's
9   correct, except I think co-counsel wanted to give a brief
10  status report before we get to the motion to reject, if
11  that's acceptable to the Court.
12             THE COURT:  Absolutely, I always enjoy
13  Mr. Sorkin's status reports.  Go for it, Mr. Sorkin.
14             MR. SORKIN:  Thank you, your Honor.
15             The company has undergone some leadership
16  changes over the course of the last week, so I thought it
17  would be helpful just to bring your Honor and our
18  constituents up to speed on those developments.
19             THE COURT:  I learned that as a result of
20  the adversary, and the motion for the injunction, which
21  has been resolved but, yes, go ahead.
22             MR. SORKIN:  Understood.  I just thought I'd
23  provide a little bit more color.
24             So, as you're aware, last Thursday the
25  debtors' board voted to terminate Mr. Owoc's employment

1   with the company as CEO and chief science officer, and to
2   remove him from the boards for cause.
3            Mr. Owoc's wife, Meg Liz, was also removed
4   from her role as senior vice president of marketing, and
5   at the same meeting Mr. DiDonato, who was the existing
6   CTO, was appointed as interim CEO of the company, and
7   Gene Bukovi, who was formerly the executive vice president
8   of sales, was promoted to interim chief operating officer.
9            I won't get too far into the weeds of the
10  board's decision, but I can say that the board believes
11  that those management changes were in the best interest of
12  the company as it enters a critical phase in the sale
13  process, and these cases more generally.
14           We did brief the committee and DIP lender
15  advisors, including by holding a meeting with those
16  advisors and the sole member of our restructuring
17  committee, Steve Panagos, this past Monday.
18           In the wake of the management changes, the
19  company and its advisors took swift action to minimize any
20  disruption that would result from the changes.
21           First, the company and its advisors
22  developed a comprehensive communication strategy that was
23  deployed immediately following the board's decision, among
24  other things, we held an all-employee town hall first
25  thing Friday morning to explain the situation, and try to

|     |                                                                 |
| --- | --------------------------------------------------------------- |
| 1   | allay any concerns employees might have.                        |
| 2   | We also took steps to secure information,                       |
| 3   | technology systems, bank accounts, and social media             |
| 4   | accounts, all of which are obviously of vital importance        |
| 5   | to this business.  We've accomplished quite a bit on this       |
| 6   | front, but the work is ongoing, and our inability to            |
| 7   | recover the passwords to certain of the key social media        |
| 8   | accounts led to the turnover proceeding that your Honor         |
| 9   | just referenced.                                                |
| 10  | As your Honor is aware, and other                               |
| 11  | constituents may also be aware, we were able to reach           |
| 12  | agreement with counsel to the Owocs, and it avoided the         |
| 13  | need for the TRO hearing to go forward today, and we'd          |
| 14  | like to thank your Honor for entering that agreed order on      |
| 15  | very short notice this morning.                                 |
| 16  | And, lastly, on that subject, I'd say --                        |
| 17  | THE COURT:  That's my job, it's not a                           |
| 18  | problem.                                                        |
| 19  | MR. SORKIN:  Thank you again, your Honor.                       |
| 20  | Just, last, on sort of transition matters,                      |
| 21  | I'd just note that we're still evaluating other matters on      |
| 22  | which we might need the Court's involvement, but for today      |
| 23  | we are all set.                                                 |
| 24  | One more note on management issues.                             |
| 25  | Mr. Owoc's departure obviously left a vacancy on the board      |

1   of each debtor.
2              On Tuesday the board voted to appoint his
3   replacement, that would be Richard Caruso.  Mr. Caruso
4   previously served in a consulting role with the company
5   prior to the bankruptcy filing, and he's currently serving
6   on a number of other boards, in addition to having served
7   in a variety of other capacities to companies that are in
8   Chapter 11, or in financial distress.
9              He has deep restructuring experience, and we
10  believe his knowledge of this company and its business
11  from his prior involvement, will be a significant asset to
12  the board and the bankruptcy estate.  We understand that
13  both the committee and the DIP lenders are supportive of
14  his appointment.
15             And, finally, it should go without saying,
16  the reconstituted board, and the companies' advisors
17  continue to be actively engaged in, and very focused on
18  the ongoing sale process.  We've worked hard to ensure
19  that the appropriate messaging has been shared with the
20  parties involved in that process, and I'm pleased to
21  report there haven't been any disruptions to this point.
22             So with that, your Honor, subject to any
23  questions you may have, I will turn it back over to
24  Mr. Avron to proceed with the one matter on today's
25  agenda.

Page 8

1              THE COURT: All right. Thank you,
2  Mr. Sorkin. I have no questions.
3              Mr. Avron.
4              MR. AVRON: Thank you, Judge. Paul Avron,
5  again, for the record.
6              We're here on the motion to reject, that's
7  at ECF 824, the certificate of service of the motion is
8  841, there is a limited objection by Fiesta, which has
9  been resolved, and I'll get to that in due course, that's
10 at ECF 885. There was a re-notice of hearing, I think
11 rescheduling this from 2:00 to 2:30, and that's at
12 ECF 919, and, finally, there is a certificate of service
13 of that re-notice, and that's at ECF 923.
14             Before --
15             THE COURT: Did I re-notice that? How did
16 it get re-noticed? Was it something on my end?
17             MR. AVRON: I think it was a change from --
18 just a change of time.
19             THE COURT: Oh, I see.
20             MR. AVRON: Not the date, I think it was
21 2:00 to 2:30.
22             THE COURT: Gotcha, okay.
23             MR. AVRON: Again, that was at 919, and the
24 certificate of service of that re-notice was at 923.
25             THE COURT: Gotcha.

1       MR. AVRON:  So, Judge, we're here on a
2  motion to reject.  Your Honor knows that the statutory
3  basis is 356, and the standard is business judgment, and
4  the underlying issue is reduction going to benefit the
5  estate, that's the framework.
6       We have three contracts here that we've
7  identified in the motion.  We've explained that we --
8       THE COURT:  Constellium, Novelis and
9  Fiesta?
10       MR. AVRON:  Correct.
11       We've explained that we no longer need those
12  services, and we're essentially trying to avoid
13  administrative expenses, and I submit that that more than
14  satisfies the business judgment test.
15       THE COURT:  And there is no objection other
16  than Fiesta's limited objection.
17       MR. AVRON:  So let me get into that.  So it
18  was limited, and the objection, and Mr. Solomon can --
19       THE COURT:  It had to do with the landlord's
20  lien on the contents of the --
21       MR. AVRON:  Well, no, the limited -- there
22  was some discussions of monies owed, and I think that's
23  being resolved, as far as processing postpetition monies
24  owed.
25       The objection was strictly related to when

1    is the proper effective date for rejection.
2              THE COURT:  Oh, sorry.
3              MR. AVRON:  We had put in the motion that it
4    would be as of the filing of the motion.  The basis of the
5    objection was that it should be on the date an order was
6    entered.
7              We have gone back and forth, myself and
8    Mike Niles, my colleague, and we agreed to modify the
9    order as to Fiesta to say the effective date would be as
10   of the entry of the order --
11             THE COURT:  All right.
12             MR. AVRON:  --- or the date of the order, I
13   should say.
14             THE COURT:  And then Mr. Solomon represents
15   Fiesta, is that right?
16             MR. AVRON:  Correct, and then the only other
17   change to the order, the proposed order, I should say,
18   that was submitted, was language at the very end, where we
19   give the 30-day deadline to file rejection claims, we just
20   added to effect saying that that doesn't apply to
21   administrative expense claims, and that will be guided by
22   any order your Honor enters setting an administrative bar
23   date, administrative expenses --
24             THE COURT:  So, in other words --
25             MR. AVRON:  -- claim bar date.

1    THE COURT: -- there are postpetition
2    amounts due, given the effective date of the rejection
3    and, therefore, there would be, arguably, an
4    administrative expense claim --
5    MR. AVRON: And they're not governed by the
6    30-day deadline --
7    THE COURT: They can file that whenever they
8    feel like it?
9    MR. AVRON: Exactly.
10    THE COURT: As long as -- as long as it's
11    timely for other reasons --
12    MR. AVRON: Right, I mean, we'd have to pay
13    them either in the ordinary course, or to confirm a plan,
14    certainly. You know, so we've agreed to those changes,
15    and the order that we will upload is with Mr. Solomon's
16    consent, and I'd ask him to confirm what I've just
17    represented to your Honor.
18    THE COURT: Mr. Solomon, do you confirm?
19    MR. SOLOMON: I do confirm. Thank you very
20    much.
21    THE COURT: All right. Great.
22    MR. AVRON: And with that, unless your Honor
23    has any questions of me, I'd ask the Court to grant the
24    motion.
25    THE COURT: Any objections?

1               (No verbal response.)
2               THE COURT:  Anyone wish to be heard?
3               (No verbal response.)
4               THE COURT:  All right.  Granted.  Mr. Avron,
5    thank you.
6               MR. AVRON:  Thank you.  I will submit an
7    order.
8               THE COURT:  So, one order, since it was one
9    motion --
10              MR. AVRON:  Yes, sir.
11              THE COURT:  -- right?
12              MR. AVRON:  We put all of the --
13              THE COURT:  You just laid them out
14   separately?
15              MR. AVRON:  We delineated each of the
16   contracts, we identified them separately.
17              THE COURT:  Okay.
18              MR. AVRON:  So, yes, it will be one order.
19              THE COURT:  Great.  All right.
20              MR. SOLOMON:  And I have seen that proposed
21   order, and it is approved --
22              THE COURT:  All right.
23              MR. SOLOMON:  -- from Fiesta.
24              THE COURT:  Thank you, Mr. Solomon.
25              Thank you, Mr. Avron, for making the trip,

Page 13

1  and I'll look forward to -- has that already been
2  uploaded?
3              MR. AVRON:  It will be shortly.
4              THE COURT:  Okay.  Great.
5              MR. AVRON:  As soon as I get out of here,
6  I'll make a phone call and it will be on the way.
7              THE COURT:  All right.  Well, we'll look for
8  that, and get that signed as soon as possible, and I wish
9  you all the best, and we'll see you next time.
10             Mr. Ochs, thanks for covering for
11 Mr. Wilkes, I'm sure he appreciates it today, and we'll
12 see you next time.
13             MR. OCHS:  Thank you, your Honor.  I
14 appreciate the courtesy of allowing me to appear and
15 attend.
16             THE COURT:  Of course.
17             Thank you all very much.  Have a great day.
18             MR. SORKIN:  Thank you, your Honor.
19
20
21
22             (Thereupon, the hearing was concluded.)
23
24
25

Page 14

## CERTIFICATION

STATE OF FLORIDA      :

COUNTY OF MIAMI-DADE  :

      I, Cheryl L. Jenkins, RPR, RMR, Shorthand Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were transcribed by me from a digital recording held on the date and from the place as stated in the caption hereto on Page 1 to the best of my ability.

      WITNESS my hand this 22nd day of March, 2023.

_____

CHERYL L. JENKINS, RPR, RMR
Court Reporter and Notary Public
in and for the State of Florida at Large
Commission #HH 170910
December 27, 2025