**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 (PDR) |
| Debtors.[1] | |

### NOTICE OF VIDEOTAPED RULE 2004 EXAMINATION *DUCES TECUM*

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Federal Rule of Bankruptcy Procedure 2004, and Local Rule 2004-1, the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned chapter 11 cases of the above-referenced debtors (the "Debtors" or "Company"), requests that the Debtors produce the documents, electronically stored information, or objects described on **Exhibit A** on the attached subpoena, who must permit inspection, copying, testing, or sampling of the materials **on or before April 10, 2023** at **5:00 p.m. EST**, at the offices **of Sequor Law, P.A., Attn: Leyza F. Blanco 1111 Brickell Avenue, Suite 1250, Miami, Florida 33131**.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Federal Rule of Bankruptcy Procedure 2004, and Local Rule 2004-1, the Committee will examine the person designated by the Debtors with respect to the topics identified in **Exhibit B** hereto **on April 17, 2023 at 9:30 a.m. EST**. The examination will be conducted in-person at the offices of **Sequor Law, P.A Leyza F. Blanco 1111 Brickell Avenue, Suite 1250, Miami, Florida 33131** and will be recorded by sound,

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are as: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

sound-and-visual, or stenographic means. The examination may continue from day to day until complete. The Debtors are to identify in writing, at least one week prior to the deposition, one or more officers, directors, managing agents, or other persons who is/are qualified to testify on its behalf with respect to matters known or reasonably available to the Debtors regarding the topics set forth in **Exhibit B** of this notice.

If the examinee receives this notice less than 14 days before the scheduled examination date, the examination will be rescheduled upon timely request to a mutually agreeable time. The scope of the examination will be as described in Bankruptcy Rule 2004. Pursuant to Local Rule 2004-1 no order is necessary. If the examination is of a witness other than the debtor, the Local Form "Subpoena for Rule 2004 Examination" is included with this notice.

Dated: March 25, 2023

**LOWENSTEIN SANDLER LLP**
Jeffrey L. Cohen, Esq.
Eric Chafetz, Esq.
Jordana L. Renert, Esq.
Lindsay H. Sklar, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: jrenert@lowenstein.com
Email: lsklar@lowenstein.com
-and-
Nicole Fulfree, Esq.
Arielle B. Adler, Esq.
Erica G. Mannix, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2502
Facsimile: (973) 597-2400
Email: nfulfree@lowenstein.com
Email: aadler@lowenstein.com
Email: emannix@lowenstein.com

**SEQUOR LAW, P.A.**
By: */s/ Leyza F. Blanco*
Leyza F. Blanco
Florida Bar No.: 104639
Fernando J. Menendez
Florida Bar No.: 0018167
Juan J. Mendoza
Florida Bar No.: 113587
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202
Email: lblanco@sequorlaw.com
Email: fmenendez@sequorlaw.com
Email: jmendoza@sequorlaw.com

*Counsel to the Official Committee of*
*Unsecured Creditors*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on the

25th day of March, 2023, by electronic transmission through the Court's CM/ECF system upon

all parties registered to receive electronic noticing in this case.

*/s/ Leyza F. Blanco*
Leyza F. Blanco

## EXHIBIT A

## DEFINITIONS

1.      "Bank Statements" include any Documents evidencing transactions with traditional banking institutions and/or decentralized finance platforms, including but not limited to Venmo, Zelle, PayPal, Coinbase Wallet, or any other digital payment or cryptocurrency wallet applications.

2.      "Chapter 11 Cases" means the chapter 11 cases filed by the Debtors in the Bankruptcy Court for the Southern District of Florida, jointly administered under lead Case No. 22-17842.

3.      "Communication" means any writing or any oral conversation of any kind or character, including, by way of example and without limitation, e-mails, instant messages, text messages, voicemail or messages, personal conversations, telephone conversations, letters, meetings, memoranda, telegraphic and telex communications or transmittals of Documents, and all Documents concerning such writing or such oral conversation.

4.      "Company" means the Debtors and any and all affiliates[1] of the Debtors relating to the Debtors' business operations.

5.      "Concerning" means consisting of, reflecting, referring to, relating to, regarding, involving, evidencing, constituting, or having any legal, logical, evidential, or factual connection with (whether to support or to rebut) the subject matter designated in any paragraph of these requests.  A request for Documents "concerning" a specified subject matter always shall include communications, notes, and memoranda (whenever prepared) relating to the subject matter of the request.

6.       "Debtors" means, collectively or individually, Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicom Bev LLC, and Vital Pharmaceuticals International Sales, Inc., and each of their predecessors or successors, assignees, prior or current parents, partners, subsidiaries, direct or indirect affiliates or controlled

---

[1] Where referenced herein, the term "affiliate" and related variations of such term shall have the meaning set forth in 11 U.S.C. § 101(2).

companies, prior or current Officers, Directors, employees, members, representatives, agents, advisors, accountants and/or attorneys, including but not limited to the Debtors' former CEO, John H. ("Jack") Owoc ("Jack Owoc").

7. "Directors" means each present and former director of the Debtors.

8. "Document(s)" means, without limitation, the original and all copies, prior drafts, and translations of information in any written, typed, printed, recorded or graphic form, however produced or reproduced, of any type or description, regardless of origin or location, including without limitation all Electronically Stored Information, correspondence, records, tables, charts, analyses, graphs, schedules, reports, memoranda, notes, lists, calendar and diary entries, letters (sent or received), telegrams, telexes, messages (including, but not limited to, reports of telephone conversations and conferences), studies, books, periodicals, magazines, booklets, circulars, bulletins, instructions, papers, files, minutes, other communications (including, but not limited to, inter- and intra-office communications), questionnaires, contracts, memoranda or agreements, assignments, licenses, ledgers, books of account, orders, invoices, statements, bills, checks, vouchers, notebooks, receipts, acknowledgments, microfilm, photographs, motion pictures, video tapes, photographic negatives, phonograph records, tape recordings, wire recordings, voice mail recordings or messages, other mechanical records, transcripts or logs of any such recordings, and all other data compilations from which information can be obtained. The term "Document(s)" is intended to be at least as broad in meaning and scope as the usage of this term in or pursuant to the Federal Rules of Civil Procedure.

9. "Electronically Stored Information" shall include, without limitation, the following: information that is generated, received, processed, recorded, or accessed by computers and other electronic devices, including but not limited to—

    i. e-mail;

    ii. Internal or external web sites;

    iii. Output resulting from the use of any software program; and

    iv. All information stored on cache memories, magnetic disks (such as computer hard drives or floppy drives), optical disks (such as DVDs or CDs), magnetic tapes, microfiche, or on any other

media for digital data storage or transmittal (e.g., a smartphone such as an iPhone®, a tablet such as an iPad®, or a personal digital assistant such as a Blackberry®).

10.    Non-Debtor affiliates includes any non-debtor entity, and that entities' predecessors or successors, assignees, prior or current parents, partners, subsidiaries, affiliates or controlled companies, and each of their prior or current officers, Directors, employees, agents, advisors, and attorneys.

11.    "Officers" means each present and former officer of the Debtors.

12.    "Participated in" means had any Communications Relating to, prepared, sent, or received any Documents Relating to, or had any role in whatsoever.

13.    "Person" means any natural person or any business, legal, or governmental entity or association.

14.    "Relating to" or "related to" means consisting of, reflecting, referring to, regarding, concerning, involving, evidencing, constituting, or having any legal, logical, evidential, or factual connection with (whether to support or to rebut) the subject matter designated in any paragraph of this request.  A request for documents "relating to" a specified subject matter always shall include notes and memoranda (whenever prepared) relating to the subject matter of the request.

15.    "Time Period" means the period from January 1, 2018 through and including the present.

16.    "You" or "Your" shall mean the Debtors.

## <u>RULES OF CONSTRUCTION</u>

1.    The following rules of construction apply to these Requests:

    i.    the terms "all" and "each" shall be construed as encompassing the ordinary definitions of both "all" and "each," conjunctively;

    ii.    the connectives, "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests all responses that might otherwise be construed to be outside of their scope; and

    iii.    the use of the singular form of any word shall include the plural and vice versa.

2.    All words, terms, and phrases not defined herein are to be given their normal and customary meaning in the context in which they are used.

## <u>INSTRUCTIONS</u>

1.      Unless otherwise indicated, the time period applicable to these requests is from January 1, 2018 through the present, and includes any Documents created on an earlier date, but in use, modified, accessed, opened, uploaded or downloaded during the relevant time period.

2.      The obligation to produce documents responsive to these Document Requests shall be continuing in nature, and a producing party is required to promptly produce any Document requested herein that it locates or obtains after responding to these Document Requests, up to the date on which these Chapter 11 Cases are closed by an order of the Court.

3.      Where an objection is made to any Document Request, the objection shall state with specificity all grounds for objection.

4.      Where a claim of privilege is asserted in objecting to the production of any document and a document called for by this Document Request is withheld on the basis of such assertion, the objecting party shall identify the extent and nature of the privilege (including work product) that is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked.  In addition, the objecting party shall provide the following information with respect to any Document so withheld:  (i) the type of Document, *e.g.*, letter or memorandum; (ii) the general subject matter of the Document; (iii) the date of the Document; and (iv) such other information as is sufficient to identify the Document for a subpoena *duces tecum*, including, where appropriate, the author of the Document, the addressees of the Document, and any other recipients shown in the Document, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

5.      In the event that a requested Document has been lost, destroyed, discarded, and/or otherwise disposed of; the parties will identify the Document by identifying: (i) its author or preparer; (ii) all persons to whom distributed or shown; (iii) date; (iv) subject matter; (v) attachments or appendices; (vi) date, manner, and reason for destruction or other disposition; (vii) person authorizing destruction or other disposition; (viii) the Document Request or Requests to which the Document is responsive.

6.      Produce all responsive Documents as they are kept in the usual course of business, or organize and label them to correspond with the Document Request to which they are responsive.

7.      Pursuant to the *Protective Order and Confidentiality Agreement* entered on February 17, 2023, in *In re Vital Pharmaceuticals, Inc., et al.*, Case No. 22-17842 (PDR), ¶ 6, Docket No. 823 (the "Protective Order"), a copy of which is enclosed herewith, You may designate documents or testimony in accordance with the provisions of the Protective Order.

## **MANNER OF PRODUCTION**

1.      All Documents produced to the Committee shall be provided in both native file ("native") and bates-stamped single-page 300 dpi-resolution group IV TIF ("tiff") format as specified below, along with appropriately formatted industry-standard database load files that identify the Bates number, location and name of each image, and document breaks, and accompanied by true and correct copies or representations of unaltered attendant metadata.  Where Documents are produced in tiff format, each Document shall be produced along with a multi-page, Document-level searchable text file ("searchable text") as rendered by an industry-standard text extraction program in the case of electronic originals, or by an industry-standard Optical Character Recognition ("ocr") program in the case of scanned paper Documents.    Searchable text of Documents shall not be produced as fielded data within the ".dat file" as described below.

2.      <u>Database load files and production media structure</u>:  Database load files shall consist of: (i) a comma-delimited values (".dat") file containing: production Document identifier information, data designed to preserve "parent and child" relationships within Document "families," reasonably accessible and properly preserved metadata (or bibliographic coding in the case of paper Documents), custodian or Document source information; and (ii) an Opticon (".opt") file to facilitate the loading of tiff images.  Load files should be provided in a root-level folder named "Data," images shall be provided within a root level "Images" folder containing reasonably structured subfolders, and searchable text files shall be provided in a single root-level "Text" folder.

3.      If any of the documents produced in response to these requests are designated as confidential pursuant to the Protective Order, in addition to marking the documents with the brand "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or branding the media with the word "CONFIDENTIAL" or the words "HIGHLY CONFIDENTIAL," also include a confidential field within the load file, with a "yes" or "no" indicating whether the document has been designated as

confidential, as well as native file loading/linking information (where applicable). <u>Electronic documents and data, generally</u>:  Documents and other responsive data or materials created, stored, or displayed on electronic or electro-magnetic media shall be produced in the order in which the Documents are or were stored in the ordinary course of business, including all reasonably accessible metadata, custodian or Document source information, and searchable text as to allow the Committee, through a reasonable and modest effort, to fairly, accurately, and completely access, search, display, comprehend, and assess the Documents' true and original content.

4.    <u>Emails and attachments, and other email account-related documents</u>:    All Documents and accompanying metadata created and/or stored in the ordinary course of business within commercial, off-the-shelf email systems including but not limited to Microsoft Exchange™, Lotus Notes™, or Novell Groupwise™ shall be produced in tiff format, accompanying metadata, and searchable text files or, alternately, in a format that fairly, accurately, and completely represents each Document in such a manner as to make the Document(s) reasonably useable, manageable, and comprehendible by the Committee.

5.    <u>Documents and data created or stored in or by structured electronic databases</u>: With the exclusion of email and email account-related Documents and data, all Documents and accompanying metadata created and/or stored in structured electronic databases or files shall be produced in a format that enables the Committee to reasonably manage and import those Documents into a useable, coherent database.  Documents must be accompanied with reasonably detailed documentation explaining the Documents' content and format, including but not limited to data dictionaries and diagrams.  Some acceptable formats, if and only if provided with definitive file(s), table(s), and field level schemas include:

   a.  XML format file(s);
   b.  Microsoft SQL database(s);
   c.  Access database(s); and/or
   d.  fixed or variable length ASCII delimited files.

6.      <u>Spreadsheets, multimedia, and non-standard file types</u>:  All Documents generated or stored in software such as Microsoft Excel or other commercially available spreadsheet programs, as well as any multimedia files such as audio or video, shall be produced in their native format, along with an accompanying placeholder image in tiff format indicating a native file has been produced. A "Nativelink" entry shall be included in the .dat load file indicating the relative file path to each native file on the production media. To the extent the party has other file types that do not readily or easily and accurately convert to tiff and searchable text, the party may elect to produce those files in native format subject to the other requirements listed herein. Native files may be produced within a separate root-level folder structure on deliverable media entitled "Natives."

7.      <u>"Other" electronic documents</u>:  All other Documents and accompanying metadata and embedded data created or stored in unstructured files generated by commercially available software systems (excluding emails, structured electronic databases, spreadsheets, or multimedia) such as, but not limited to, word processing files (such as Microsoft Word), image files (such as Adobe .pdf files and other formats), and text files shall be produced in tiff and searchable text format in the order the files are or were stored in the ordinary course of business.

8.      <u>Paper documents</u>:  Documents originally created or stored on paper shall be produced in tiff format.  Relationships between Documents shall be identified within the Relativity.dat file utilizing document identifier numbers to express parent document/child attachment boundaries, folder boundaries, and other groupings.  In addition, the searchable text of each Document shall be provided as a multi-page text file as provided for by these requests.

## DOCUMENT REQUESTS

1.      All minutes for meetings of the board of Directors for either of the Debtors and any associated presentations or Documents for the past four (4) years.

2.      Copies of the Debtors' corporate, state, and federal tax returns, audit reports, balance sheet statements, general ledgers, and related financial statements.

3.      Any records relating to intercompany transactions between the Company and Non-Debtor Affiliates, whether under operating agreements or otherwise.

4.      All Documents and Communications related to any historical inventory write-offs.

5.      All Documents and Communications related to the Debtors' inventory reserve estimate for 2022 and 2023.

6.      All Documents and Communications regarding the Debtors' transition to an independent distributor network for its products.

7.      All Documents and Communications regarding all financial arrangements, including payments between the Debtors and Mr. Hillman or any person or entity affiliated with Mr. Hillman, within the last five years.

8.      All Documents and Communications regarding all financial arrangements, including payments between Mr. Owoc or any person or entity under Jack Owoc's control and Mr. Hillman or any person or entity affiliated with Mr. Hillman, within the last five years.

9.      All Documents and Communications regarding the formation and operation of non-Debtor entity Bang Energy, LLC.

10.      All Documents and Communications (including, but not limited to, social media posts) regarding statements made by Jack Owoc, or any of the Debtors' Officers, executives, or board members, regarding creatyl-l-leucine ("CLL") or "Super Creatine" or creatine including but not limited to all public statements since the issuance of the arbitration award in *Monster Energy Company v. Vital Pharms., Inc., et al.*, Case No. EDCV18-1882-JGB (C.D. Cal. Apr. 6, 2022).

11.     All Documents and Communications regarding the royalty owed to Monster Energy Company pursuant to the arbitration award in *Monster Energy Company v. Vital Pharms., Inc.*, *et al.*, Case No. EDCV18-1882-JGB (C.D. Cal. Apr. 6, 2022).

12.     All Documents and Communications regarding any asset transfers between any affiliated entity and Jack Owoc, or his family members, or an entity affiliated with Jack Owoc or his family members.

13.     All Documents and Communications regarding any asset transfers between any affiliated entity and any member of the Debtors' Boards of Directors.

14.     All Documents and Communications regarding any transactions between the Debtors and any individual listed on the Company's organizational charts.

15.     All Documents and Communications related to any planned employee reductions in the calendar year 2022.

16.     Copies of all transactional records and related supporting documents concerning all travel expenses in excess of $1,000 submitted by, reimbursed to and/or paid on behalf of any insiders, related parties, Officers, and/or trustees of the Debtors.

17.     Copies of all transactional records and related supporting documentation concerning all other expenses in excess of $1,000 incurred by the Debtors on behalf of any insiders, related parties, Officers, and/or trustees of the Debtors.

18.     Documents concerning any payments made to any insiders, related parties, Officers, and/or trustees of the Debtors.

19.     A list of all of the Debtors' influencers and/or brand ambassadors, including the amount paid to each over the past five years.

20.     All business plans and forecasted financials, or financial projections prepared for or by the Debtors, including but not limited to forecasted financials for the year 2023.

21.     All solvency analyses, appraisals, and/or valuation reports that were prepared by or for the Debtors.

22.     All Documents and Communications regarding any shareholder distributions.

23.     All Documents and Communications regarding any equity transfers to Jack Owoc.

24.     If any of the Debtors, the Debtors' board of Directors, or any committee of the Debtors' board of Directors at any time engaged a compensation consultant, provide copies of (i) all engagement letters, employment agreements and/or contracts with any compensation consultants, and (ii) any reports or memos provided or issued by any compensation consultant.

25.     All Documents relied upon by the Debtors to set, or determine, compensation for Jack Owoc, Meg Owoc, Eugene Bukovi, or any family members of Jack Owoc employed by the Debtors.

26.     All Documents relating to any issues raised by the Debtors' internal auditor or outside auditors concerning the Debtors' compensation practices for Jack Owoc, Meg Owoc, Eugene Bukovi, or any family members of Jack Owoc employed by the Debtors.

27.     Any comparative analysis of the Debtors utilized to fix or determine the compensation for Jack Owoc, Meg Owoc, Eugene Bukovi, or any family members of Jack Owoc employed by the Company, including drafts of the same and any other Documents related to the comparative analysis.

28.     Any management letters or similar Documents that attest to the accuracy of the Debtors' financial statements that the Debtors received from their internal auditor or outside auditors.

29.     Any internal control reports issued by the Debtors' outside auditors describing any internal control weaknesses and/or deficiencies.

30.    All Documents, including any Communications, sufficient to show the business purpose of each expense incurred by the Debtors on behalf of Jack Owoc, including but not limited to vehicle expenses, travel expenses, or other employee expenses.

31.    All Documents, including any Communications, regarding each expense incurred by the Debtors and identified in the Documents with the following index numbers: 9.7.11.1 to 9.7.12.5,9.7.12.8, 9.19.1 to 9.19.4, 9.19.7, 9.19.8.

32.    Documents sufficient to show which of the Debtor entities made each of the distributions identified in the document with the index number 9.7.12.8 and 9.19.7.

33.    All Documents, including any Communications, flight logs, and passenger lists, related to each flight taken using the jet (the "Bang Jet"), owned by Bang Jets LLC, a Non-Debtor Affiliate, from September 28, 2018 to December 17, 2021, including but not limited to documents sufficient to show the business purpose for each flight taken using the Bang Jet.

34.    Any and all Documents and Communications concerning, discussing, or constituting a valuation, appraisal or other measure of value of any pending lawsuits, including but not limited to, any appeals taken from any trial court orders, verdicts, or decisions.

35.    All Documents and Communications regarding a documentary about Jack Owoc.

36.    Documents sufficient to identify all of the Company's marketing expenses for the years 2018 through and including 2022, including but not limited to compensation agreements with influencers for social media platforms such as TikTok, Instagram, YouTube, Facebook, and Twitter, and rental agreements for content creation houses.

37.    Monthly credit card statements for 2018-2022 for the Debtors' American Express – Centurion Black credit card referenced in the documents with index numbers 9.7.11.1 and 9.7.12.8.

38.     Documents sufficient to show the account(s) to which the following distributions listed as ███████████████ or ███████████████ in the document with the index number 9.7.12.8 were deposited:



39.     All Documents and Communications regarding the decisions to make the transfers/distributions identified in Request No. 38.

40.     All Documents and Communications regarding the decision to increase Jack Owoc's salary from ███████████████████████.

41.     All Documents and Communications regarding the decision to increase Meg Owoc's salary from ███████████████████, including, but not limited to, Documents sufficient to show when the salary increase was first requested and by whom.

42.     All Documents and Communications regarding the decision to increase Eugene Bukovi's salary from ███████████████████, including, but not limited to, Documents sufficient to show when the salary increase was first requested and by whom.

43.     Documents sufficient to show the purpose of the following cash transfers to Bang Jets, LLC as listed in the document with the index number 9.7.11.1:



44.    All Documents and Communications regarding the distributions in the document with the index number 9.7.12.8 that relate to the following properties (addresses are listed as they appear on the Debtors' records), including but not limited to, Documents sufficient to show who directed the distribution, which entity the distribution was paid from, which individuals, entities, or bank account(s) the distributions were paid to:



45.    If distributions referenced in Request No. 44 were made to anyone other than Jack Owoc, all Documents and Communications supporting any consideration the Debtors received in exchange for the payment.

46.    Documents sufficient to identify all payments made by any of the Debtors to counsel for services rendered on behalf of Jack Owoc in connection with the defense or prosecution of any litigation claim(s) involving Jack Owoc.

47.    Documents and Communications regarding the Debtors' efforts to recruit former Monster employees, including, but not limited to, the conduct giving rise to the jury finding in *Monster Energy Company v. Vital* Pharmaceuticals*, Inc. et al.*, Case No. 5:18-cv-1882, Docket

No. 890 (C.D. Cal. Sep. 29, 2022), that Debtor Vital Pharmaceuticals, Inc. "maliciously and willfully misappropriate[d] Monster's trade secrets".

48.     All Communications regarding any asset transfers, loans, or distributions between any of the Debtors and any of the following individuals:

- Darlene Owoc
- Erin Owoc
- Jonathan Owoc
- Jonathan W. Owoc
- Krista M. Owoc
- Ryan Owoc
- Victor Owoc
- Vincent Owoc
- Gregory Owoc

49.     All Documents and Communications regarding the ███████ payment to ███████ ████████████████████ including, but not limited to, Documents sufficient to show who directed the distribution; which entity the distribution was paid from; which individuals, entities, or bank account(s) the distributions were paid to; any promissory notes or loan agreements related to the payment; and any Documents regarding the repayment of the loan.

50.     All engagement letters or retention agreements between any of the Debtors or Jack Owoc and the following entities or law firms (names are listed as they appear in the Debtors records):





51.    Documents sufficient to identify all of the Company's influencers, brand ambassadors, and content creators, and any agreements (employment or otherwise) that such individuals entered into with any of the Debtors.

52.    Documents sufficient to identify the amounts paid to each of the Company's influencers, brand ambassadors, and content creators.

53.    Documents identifying the transactions that comprise the ███████ amount spent on "model appearances" in 2019 as indicated in the document with the index number 2.2.1.1.

54.    Documents identifying the transactions that comprise the ███████ amount spent on "model appearances" in 2020 as indicated in the document with the index number 2.2.1.2.

55.    Documents identifying the transactions that comprise the ███████ amount

spent on "███████████" in 2021 as indicated in the document with the index number 2.2.1.3.

56.    All Documents and Communications regarding each of the following "██

███████ identified in document with the index number 9.7.12.8, including but not limited to

Documents sufficient to show who directed the distribution, which entity the distribution was paid

from, and which individuals, entities, or bank account(s) to which the distributions were paid.



57.    Documents sufficient to identify the relationship between VPX Swim, Sports Gear

LLC and "Meg Liz Swimwear," if any.

58.    Documents sufficient to identify any employees of any of the Debtors that are

employed by, or performed work – whether compensated or uncompensated – for, either VPX

Swim and Sports Gear LLC or "Meg Liz Swimwear," if any.

59.    Documents sufficient to identify the value and/or assets that each non-Debtor

affiliate pledged relating to the Debtors' prepetition loans.

60.    All loan documents, operating agreements, management fee agreements or other

agreements between any of the Debtors and any non-Debtor from 2018 to present.

61.    Documents sufficient to show all payments by the Debtors for non-debtor real

estate expenses from 2018 to present, including but not limited to payments for expenses incurred

by or on behalf of non-debtors "JHO Phoenix" (as it appears in the Debtors' records); JHO GA-1

Investment, LLC; JHO NV-1 Investment, LLC; Sheridan Real Estate Investment A, LLC; Sheridan Real Estate Investment B, LLC; and Sheridan Real Estate Investment C, LLC.

62.    Documents sufficient to show the basis for the payments to each taxing authority listed in the in the document with the index number 9.7.12.8 and 9.19.7, including but not limited to the payments to the following entities (as they appear in the Debtors' records):



63.    All Documents and Communications regarding the following transfers from the Debtors to Jonathan W. Owoc, including, but not limited to, Documents such as Bank Statements sufficient to show who authorized each distribution, which Debtor-entity the distribution was paid from, which individuals, entities, or bank account(s) the distributions were paid to, and the use of the funds:



64.    All Documents and Communications regarding the following transfers from the Debtors to JW Owoc Enterprise, including, but not limited to, Documents such as Bank Statements sufficient to show who authorized each distribution, which Debtor-entity the distribution was paid from, which individuals, entities, or bank account(s) the distributions were paid to, and the use of the funds:



65.    All Documents and Communications regarding the following transfers from the Debtors to various state entities and taxing authorities (as identified in the Debtors' books and

records), including, but not limited to, Documents such as Bank Statements sufficient to show who authorized each distribution, which Debtor-entity the distribution was paid from, and the individual(s) or entity on whose behalf the taxes were paid:





66.    All Documents and Communications the two "Distributions" made to Megan E. Owoc, in the amount of ████████████████████████████, including but not limited to Documents sufficient to show who directed the distribution, which entity the distribution was paid from, and which individuals, entities, or bank account(s) to which the distributions were paid.

67.    All Documents and Communications regarding the following transfers from the Debtors to title companies (as identified in the Debtors' books and records), including, but not limited to, Documents such as Bank Statements sufficient to show who authorized each distribution, which Debtor-entity the distribution was paid from, and the individual(s) or entity on whose behalf the taxes were paid:



68.    The monthly account statements for the Debtors' American Express Centurion credit card for the years 2018 – 2020.

69.    Any Documents evidencing the transfer of intellectual property, including but not limited to the Bang mark, from the Debtors to any non-debtor (or vice versa) or between Debtor-entities.

70.    All documents concerning "Stoked IP" as defined in the Prepetition Credit Agreement, itself as defined in the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* (Docket No. 26), including but not limited to documents identifying the specific IP, and any transfers of Stoked IP from the Debtors to non-debtors (or vice versa) or between Debtor entities.

71.    All documents relating to the transfer of Debtors' funds related to the ███ ███████████ and similar ██████ transactions currently characterized as ████████ in the distributions to Jack Owoc in the spreadsheet with the index number 9.7.12.8.

72.    All documents related to the ████████ in intercompany transactions identified as the ███████████ in the spreadsheet with the index number 9.7.12.7.

73.    Documents sufficient to show the basis for the ███████ in transfers from the ████████████████████████████████████████████

74.    Bates-stamped versions of the Documents previously produced to the Committee in these Chapter 11 Cases.

## EXHIBIT B

## TOPICS FOR EXAMINATION

1.     The Debtors' corporate organization and structure, including the roles and responsibilities of officers and employees, and any parent, subsidiary, or affiliate entities.

2.     The facts and circumstances surrounding each transaction or monetary transfer the transactions described in the Document Requests contained in Exhibit A.

3.     All payments made or transfers of property by the Debtors to or on behalf of any insiders, related parties, affiliates, Officers, and/or Directors of the Debtors, including intercompany transactions.

4.     The Debtors' financial condition, including corporate, state, and federal tax returns, audit reports, balance sheet statements, general ledgers, and related financial statements, valuations, inventory reserve estimates and write-offs, and solvency analyses.

5.     The Company's corporate governance, including operations and powers of the Debtors' Board of Directors and Jack Owoc's ability to direct Company actions including entry into and termination of contracts and/or agreements, employee hiring and firing, transfers of money property, and incurrence and satisfaction of Company debt.

6.     The relationships, including any service and compensation agreements, between Jack Owoc and current or former members of the Debtors' Board of Directors.

7.     All facts, circumstances, Documents and Communications concerning Jack Owoc's use of Company resources, including company funds and employee time, other than for business purposes.

8.     The Company's Marketing Department budgets and arrangements with "influencers" and "brand ambassadors."

9.     The Company's distribution network for its products.

10.     The process and procedures for use of the Bang Jet.

11.    The process and procedures for payment or reimbursement of employee expenses.

12.    All litigations and other legal proceedings involving the Debtors and Jack Owoc.

13.    The Company's termination of Jack Owoc as an employee of the Company.

14.    The Company's termination of Meg Owoc as an employee of the Company.

15.    The compensation, including salary raises, vehicle reimbursements, and other benefits for the following present and former Debtor employees: Jack Owoc, Meg Owoc, Eugene Bukovi, Gregory Robbins, Sury Rodriguez, Fritz Tilus, Krista Owoc, and Ryan Owoc.

16.    The valuation or appraisal of the Debtors' pending legal actions or claims.

17.    Any statements made by the Debtors' Officers,  executives, or board members, regarding creatyl-l-leucine ("CLL") or "Super Creatine" or creatine including but not limited to all public statements giving rise to the *Monster Energy Company v. Vital Pharms., Inc., et al*., Case No. EDCV18-1882-JGB (C.D. Cal. Apr. 6, 2022).

18.    All facts, circumstances, Documents and Communications Concerning the royalty owed to Monster Energy Company pursuant to the arbitration award in *Monster Energy Company v. Vital Pharms., Inc*., *et al.*, Case No. EDCV18-1882-JGB (C.D. Cal. Apr. 6, 2022).

19.    The Debtors' search to identify and locate documents and information responsive to the Committee's informal document requests to the Debtors in these Chapter 11 Cases.