**UNITED STATES BANKRUPTCY COURT**
**FORT LAUDERDALE DISTRICT OF FLORIDA**

In Re:

VITAL PHARMACEUTICALS, INC., *et al.*,    Case No. 22-17842-PDR
                                          Chapter 11
    Debtors,                              (Jointly Administered)
_____/

**OBJECTION AND RESERVATION OF RIGHTS OF C.K.S. PACKAGING, INC. TO THE NOTICES OF ASSUMPTION AND ASSIGNMENT IN CONNECTION WITH THE PROPOSED SALE OF THE DEBTORS' ASSETS**

Creditor, C.K.S. Packaging, Inc. ("CKS"), by its undersigned counsel, hereby files this *Objection and Reservation of Rights of C.K.S. Packaging, Inc. to the Notice of Assumption and Assignment in Connection with a Sale of the Debtors' Assets* (this "Objection") in connection with the Debtors' *Notice of (I) Executory Contracts and Unexpired Agreements that may be Assumed and Assigned in Connection with a Sale of the Debtors' Assets and (II) the Proposed Cure Amounts with Respect Thereto* (Docket No. 893) and *Supplemental Notice of (I) Executory Contracts and Unexpired Agreements that may be Assumed and Assigned in Connection with a Sale of the Debtors' Assets and (II) the Proposed Cure Amounts with Respect Thereto* (Docket No. 995) (collectively, the "Notices[1]"). In support of this Objection, CKS states:

**BACKGROUND**

1. On October 10, 2022 ("Petition Date"), the above-captioned debtors ("Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida ("Court").

    **A.    The CKS Vendor Agreement**

---

[1] Capitalized terms used herein (but not defined herein) have the meanings ascribed to them in the Notices or the Bidding Procedures Order.

1

2. CKS and the Debtors are parties to a Purchase and Sale Agreement dated January 7, 2017, as amended by a First Amendment to Purchase and Sale Agreement dated July 20, 2018, and then further amended by a critical vendor letter agreement dated November 9, 2022[2]. (collectively, the "CKS Agreement") pursuant to which CKS supplies goods and services to the Debtors.

3. On November 28, 2022, CKS timely and properly filed a proof of claim for remaining amounts due and owing under the CKS Agreement. Specifically, CKS filed a claim, identified as Claim No. 150, asserting $27,533.78 as the aggregate amount remaining due and owing under the Agreement.

4. As of March 30, 2023, the Debtors owe CKS an amount not less than $158,615.80[3] under the CKS Agreement (the "CKS Cure Amount"). Based on information and belief, the CKS Cure Amount has been provided to the Debtors in the ordinary course of business between the Debtors and CKS.

**B.    The Debtors' Sale Process**

5. On January 27, 2022, the Debtors filed their Motion for an Order Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Procedures for the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Agreements, (II) Authorizing the Debtors to Provide Bid Protections and (III) Granting Related Relief (Docket No. 707) (the "Bidding Procedures Motion").

6. On February 24, 2023, the Court entered its *Order (I) Approving Bidding Procedures, Authorizing the Debtors to Provide Bid Protections, and (III) Granting Related Relief*

---

[2] The Critical Vendor letter agreement dated November 9, 2022 is referred to herein as the ("Critical Vendor Agreement").
[3] This amount is prior to application of 2021 credits totaling $35,777.90 and 2022 credits totaling $26,776.06.

(Docket No. 854) (the "Bidding Procedures Order") which, among other things, authorized and approved procedures for the assumption and assignment certain executory contracts and leases, as part of a potential sale (or sales) of the Debtors' assets (the "Proposed Sale").

7. On March 3, 2023, and March 21, 2023, the Debtors filed the Notices, which identify certain executory contracts and leases the Debtors propose to assume and assign as part of the Proposed Sale. The Notices identify $0.00 as the amount necessary to cure all monetary defaults owed to CKS under the CKS Agreement (and $6,522.11 as the amount necessary to cure all monetary defaults owed to CKS under the Critical Vendor Agreement) in connection with the Proposed Sale.

8. As provided by the Notices, the deadline to file a Cure Objection or an Adequate Assurance Objection is March 31, 2023 at 4:00 p.m. Prevailing Eastern Time.

**OBJECTION**

9. While CKS does not generally oppose the assumption and assignment of the CKS Agreement to a financially viable assignee, the CKS objects to the assignment of the CKS Agreement by the Debtors as currently proposed. The proposed assumption and assignment of the CKS Agreement fails to strictly comply with the requirements of section 365 of the Bankruptcy Code and the terms and conditions of CKS Agreement. The proposed assignment of the CKS Agreement by the Debtors must be conditioned on, among other things: (i) the payment of all amounts due and owing under the CKS Agreement through the effective date of the assignment of the CKS Agreement; and (ii) the Debtors satisfying their burden under the Bankruptcy Code of demonstrating adequate assurance of future performance under the CKS Agreement by the Prospective Bidder.

I. **The Cure Amounts**

10. The Debtors' proposed assignment of the CKS Agreement must be conditioned on all defaults under the CKS Agreement being cured by the Debtors as of the effective date of the assumption and assignment of the CKS Agreement. As of March 30, 2023 the aggregate cure amount due and owing under the CKS Agreement is in an amount not less than $158,615.80[4] (*i.e.*, the "CKS Cure Amount"), although amounts due and owing under the CKS Agreement continue to accrue from and after March 30, 2023.

11. The CKS Cure Amount represent known amounts that are currently due and owing to CKS under the Agreement, exclusive of any sums which have become due or have been paid after March 30, 2023. The CKS Cure Amounts may increase prior to any actual date of assignment of the CKS Agreement if the Debtors do not timely and properly pay all amounts that accrue after the date of this Objection (as required by the Bankruptcy Code), including attorneys' fees pursuant to the CKS Agreement and other amounts that may come due pursuant to the terms of the CKS Agreement and regardless of when those amounts accrued.

12. Accordingly, CKS expressly reserves its right to amend or supplement this Objection and the CKS Cure Amount from time to time and at any time, and requests that the Debtors remain liable for, among other things: (a) all post-petition charges under the CKS Agreement; (b) all amounts accruing under the CKS Agreement which may be unbilled as of March 30, 2023; (c) any regular or periodic adjustment of charges under the CKS Agreement which were not due or had not been determined as of the date of March 30, 2023; (d) any non-monetary defaults; and/or (e) other contractual obligations under the CKS Agreement.

13. As part of the proposed assumption and assignment of the CKS Agreement, the

---

[4] See footnote #4.

Debtors must assume and assign the Agreement in its entirety. This obligation requires the Debtors to assume and assign all terms, conditions, covenants, and obligations under the CKS Agreement, whether monetary or non-monetary, for which the Debtors are responsible pursuant to the CKS Agreement. Any order entered by this Court approving the assumption and assignment of the terms and conditions should provide for the same.

14. Consistent with the foregoing, CKS respectfully requests that any order approving the assumption and assignment of the CKS Agreement provide, among other things, that the Debtors or any proposed assignee of the CKS Agreement, including the Prospective Bidder, pay to CKS, on the effective date of the assignment, all amounts due and owing under the CKS Agreement through the effective date of assignment of the CKS Agreement (*i.e.*, the CKS Cure Amount, as the same may increase). In addition, CKS respectfully request that any order approving the assumption and assignment of the CKS Agreement specifically provide that any proposed assignee of the CKS Agreement, including the Prospective Bidder, will be responsible for paying the following charges when they become due, regardless of whether these obligations and charges accrue prior to or after the effective date of assumption and/or assignment of the CKS Agreement:

    a) all accruing but unbilled charges under the CKS Agreement;
    b) all regular or periodic adjustment of charges under the CKS Agreement which were not due or had not been determined as of March 30, 2023; and
    c) all other obligations under the CKS Agreement.

Such provisions are supported by the statutory requirement that the Debtors cure all arrears and that the Debtors and/or the proposed assignee of the CKS Agreement, including the Prospective Bidder, provide adequate assurance of future performance under the terms of the CKS Agreement. *See* 11 U.S.C.§ 365(b)(1).

## II.    **Adequate Assurance of Future Performance**

15. Pursuant to section 365(f)(2)(B) of the Bankruptcy Code, the Debtors may only

assign the CKS Agreement if CKS receives adequate assurance of future performance under the CKS Agreement. Additionally, the Bidding Procedures Order requires that counterparties to Contracts and Agreement be provided with "the Prospective Bidder's financial wherewithal and willingness to perform under the Proposed Assumed Contracts and any other Contracts or Agreement that may later be designated by the Prospective Bidder." Bidding Procedures Order, ¶ 30. The Debtors bear the burden of demonstrating the Prospective Bidder's ability to provide adequate assurance of future performance under the Agreement. *In re Uniq Shoes Corp.*, 316 B.R. 748, 751 (Bankr. S.D. Fla. 2004) (the debtor bears the burden of sufficiently demonstrating adequate assurance).

16.  As of the filing of this Objection, the Debtors have not provided CKS with information demonstrating the Prospective Bidder's ability to satisfy all obligations (monetary and non-monetary) under the CKS Agreement, when required under the CKS Agreement. CKS should receive sufficient adequate assurance information for the Prospective Bidder prior to the Sale Hearing in order to properly evaluate the Prospective Bidder's ability to continue operating under the CKS Agreement and comply with all terms thereof. Until CKS Entities receive sufficient adequate assurance information for the Prospective Bidder, CKS objects to the assumption and assignment of the CKS Agreement to the Prospective Bidder.

## RESERVATION OF RIGHTS

17.  Nothing in this Objection is intended to be, or should be construed as, a waiver by CKS of any of its rights under the CKS Agreement, the Bankruptcy Code, or applicable law. CKS expressly reserves all such rights, including, without limitation, the right to: (a) supplement and/or amend this Objection and to assert any additional objections with respect to the CKS Cure Amount and any proposed assignment of the CKS Agreement on any and all grounds; (b) amend the CKS

Cure Amount; (c) assert any nonmonetary defaults under the CKS Agreement; (d) object to any proposed assignee's adequate assurance of future performance; and (e) assert any further objections as it deems necessary or appropriate.

**WHEREFORE**, Creditor, C.K.S. Packaging, Inc., respectfully requests that this Court enter an order: (a) sustaining this Objection; (b) affirmatively requiring the Debtors or the Prospective Bidder to pay all amounts owing to CKS under the CKS Agreement through the effective date of any assignment of the CKS Agreement plus attorneys' fees; (c) affirmatively requiring the assignee to comply with each and every term, condition and obligation set forth in the CKS Agreement; and (d) granting CKS such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

**LORIUM PLLC**
*Counsel for Creditors, Intrastate Distributing and C.K.S. Packaging, Inc.*
197 South Federal Highway, Suite 200
Boca Raton, FL 33432
Telephone: 561.361.1000
Facsimile: 561.672.7581
Email: jgrant@loriumlaw.com

By:     /s/ Joe M. Grant
          JOE M. GRANT
          Florida Bar No. 137758

*/s/ Bruce J. Ruzinsky*
Bruce J. Ruzinsky (TX Bar No. 17469425)
JACKSON WALKER LLP
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:    (713) 752-4200
Facsimile:    (713) 752-4221
Email: bruzinsky@jw.com
*Attorney for C.K.S. Packaging, Inc.*

7

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 31st day of March, 2023, I electronically filed this document with the Clerk of Court using CM/ECF. I also certify that the document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.