# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>VITAL PHARMACEUTICALS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-17842-PDR<br><br>(Jointly Administered)<br><br>**Hearing Date: May 10, 2023 at 10:00 a.m.**<br>**Objection Deadline: March 31, 2023 at 4:00 p.m.**<br>**Re: Docket No. 707, 893, 995** |

**LIMITED OBJECTION OF THE CHUBB COMPANIES TO (1) DEBTORS' MOTION FOR AN ORDER (I) APPROVING (A) BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) PROCEDURES FOR THE DEBTORS' ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) THE FORM AND MANNER OF NOTICE OF THE SALE HEARING, ASSUMPTION PROCEDURES, AND AUCTION RESULTS, (D) DATES FOR AN AUCTION AND SALE HEARING, (E) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, LIABILITIES, RIGHTS, INTERESTS AND ENCUMBRANCES, AND (F) THE DEBTORS' ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) AUTHORIZING THE DEBTORS TO PROVIDE BID PROTECTIONS, AND (III) GRANTING RELATED RELIEF, (2) THE NOTICE OF (I) EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH A SALE OF THE DEBTORS' ASSETS AND (II) THE PROPOSED CURE AMOUNTS WITH RESPECT THERETO, AND (3) THE SUPPLEMENTAL NOTICE OF (I) EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH A SALE OF THE DEBTORS' ASSETS AND (II) THE PROPOSED CURE AMOUNTS WITH RESPECT <u>THERETO</u>**

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

Federal Insurance Company, Great Northern Insurance Company, Chubb Custom Insurance Company, Vigilant Insurance Company, and each of their respective U.S.-based affiliates and successors (collectively, the "Chubb Companies"), by and through their undersigned counsel, hereby file this limited objection (the "Limited Objection") to the *Debtors' Motion For An Order (I) Approving (A) Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Procedures for the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) The Form and Manner of Notice of the Sale Hearing, Assumption Procedures, and Auction Results, (D) Dates for an Auction and Sale Hearing, (E) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests, Encumbrances, and (F) The Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing The Debtors to Provide Bid Protections, and (III) Granting Related Relief* [Docket No. 707] (the "Sale Motion"), the *Notice of (I) Executory Contracts and Unexpired Leases That May Be Assumed and Assigned in Connection With a Sale of the Debtors' Assets and (II) The Proposed Cure Amounts With Respect Thereto* [Docket No. 893] (the "First Assumption Notice"), and the *Supplemental Notice of (I) Executory Contracts and Unexpired Leases That May Be Assumed and Assigned in Connection With a Sale of The Debtors' Assets And (II) The Proposed Cure Amounts With Respect Thereto* [Docket No. 995] (the "Supplemental Assumption Notice" and, together with the First Assumption Notice, the "Assumption Notices"), and in support of the Limited Objection, the Chubb Companies respectfully state as follows:

## BACKGROUND

**A.    The Bankruptcy Case**

1.    On October 10, 2022 (the "Petition Date"), Vital Pharmaceuticals, Inc. and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Florida (the "Court").

### B. The Sale Motion

2. On January 27, 2023, the Debtors filed the Sale Motion.

3. Pursuant to the Sale Motion, the Debtors sought entry of (a) an order approving, *inter alia*, the Bidding Procedures[2] and the Assumption and Assignment Procedures; (b) an order authorizing and approving, *inter alia*, the sale of substantially all of the Debtors' assets to the Successful Bidder and the assumption and assignment of the Assigned Contracts in connection with the Sale Transaction.

4. On February 24, 2023, the Court entered the *Order (I) Approving Bidding Procedures, (II) Authorizing the Debtors to Provide Bid Protections, and (III) Granting Related Relief* [Docket No. 854] (the "Bidding Procedures Order"), approving, *inter alia*, the Bidding Procedures and the Assumption and Assignment Procedures.

5. Pursuant to the Bidding Procedures Order, on March 3, 2023, the Debtors filed the First Assumption Notice identifying certain contracts and leases that the Debtors may assume and assign to a Successful Bidder in connection with a Sale Transaction, if one occurs.

6. On March 21, 2023, the Debtors filed the Supplemental Assumption Notice which (i) added certain additional Assigned Contracts omitted from the First Assumption Notice; (ii) updated Cure Amounts for certain Assigned Contracts listed on the First Assumption Notice; and (iii) removed certain Assigned Contracts listed on the First Assumption Notice.

---

[2] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Sale Motion.

7.  In both of the Assumption Notices, the Debtors identified one document on the Assigned Contracts List that may be one of the Policies (as defined herein) issued by the Chubb Companies (the "Identified Chubb Contract") that may be assumed and assigned to a Successful Bidder in connection with the Sale Transaction:

| No. | Counterparty | Address | Debtor | Description | Cure Amount |
|---|---|---|---|---|---|
| 874[3] | Chubb Group of Insurance Companies | 15 Mountain View Road Warren NJ 07059 | Vital Pharmaceuticals, Inc. | Insuring Agreement, dated December 04, 2010 | $0.00 |

8.  The Assigned Contracts List fails to identify with sufficient specificity the contract or contracts that the Debtors hold with the Chubb Companies that may be subject to potential assumption and assignment,[4] nevertheless the Debtors propose that the Cure Amount for the Identified Chubb Contract is $0.00.

9.  Under the terms of the Bidding Procedures Order, the Debtors may modify the Assigned Contracts List up until the closing of the Sale Transaction. *See* Bidding Procedures Order ¶ 28(d).

10. As of the date hereof, a Successful Bidder has not yet been identified and a proposed asset purchase agreement has not yet been filed.

---

[3]  The Identified Chubb Contract was identified as No. 871 in the First Assumption Notice.

[4]  As evident above, although the Assigned Contracts List describes the Identified Chubb Contract as an "Insuring Agreement," the Assigned Contracts List fails to clarify whether the Identified Chubb Contract is an insurance policy or another type of insurance-related agreement, or whether the Assigned Contracts List intends to identify one or multiple insurance policies and/or insurance agreements. To the extent the Identified Chubb Contract is an insurance policy (or multiple insurance policies), the Assigned Contracts List fails to provide the applicable policy number, type of coverage, first named insured, or full policy term. Further, the "Chubb Group of Insurance Companies" is not the proper name of any of the Chubb Companies.

    C.    **<u>The Insurance Program</u>**

11.    Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "<u>Policies</u>") to the Debtors as named insureds.

12.    Under the Policies and any agreements related thereto (collectively, the "<u>Insurance Program</u>,"[5] the Chubb Companies provide, *inter alia*, certain property, automobile liability, crime, directors' and officers', employment practices liability, commercial excess, general liability, workers' compensation, and certain other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Insurance Program (the "<u>Obligations</u>").

13.    The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

## **LIMITED OBJECTION**

14.    Based on the Assigned Contracts List, the Debtors appear to contemplate a potential sale or other transfer of at least a portion of the Insurance Program in connection with the proposed Sale Transaction. The Chubb Companies, therefore, object to any Sale Transaction

---

[5] The description of the Insurance Program set forth herein is not intended to, and shall not be deemed to amend, modify or waive, any of the terms or conditions of the Insurance Program. Reference is made to the Insurance Program for a complete description of its terms and conditions.

5

to the extent that the Debtors seek to assume and assign or otherwise transfer the Insurance Program, a portion thereof, and/or any rights thereunder.

15. The Chubb Companies assert that (A) the Insurance Program must be assumed and assigned, if at all, as a whole, and, in order to be entitled to any of the benefits of the Insurance Program, the Successful Bidder must remain liable for the Obligations thereunder; (B) to the extent that the Debtors seek to assume and assign or otherwise transfer the Insurance Program, the Insurance Program cannot be assigned or otherwise transferred without the consent of the Chubb Companies, and such consent has not been sought or given; (C) without altering the foregoing, to the extent that the Debtors intend to transfer any of the Insurance Program, or any rights or proceeds thereunder to the Successful Bidder, the Chubb Companies seek clarification that the Chubb Companies are not responsible for determining which entity, as between the Debtors and the Successful Bidder, is entitled to coverage under the Insurance Program; (D) the Assigned Contracts List lists a $0.00 Cure Amount for the Identified Chubb Contract, but amounts continue to accrue under the Insurance Programs and any proposed Cure Amount must be evaluated at the time of assumption; and (E) because the Chubb Companies have not been definitively advised as to whether the Successful Bidder intends to seek assignment of the Insurance Program, the Chubb Companies lack adequate assurance of future performance under the Insurance Program by the Successful Bidder.

A. **The Insurance Program and the Obligations Thereunder Are Indivisible.**

16. It is well-established that a party cannot receive the benefits of a contract without being liable for the obligations thereunder. *See Tompkins* ex. rel. *A.T. v. Troy Sch. Dist.*, 199 Fed. App'x 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th

Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. App'x 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Tr. Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract"); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted)); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . . ."); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("'The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (internal citations omitted); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

17. It is also well-established that courts cannot alter terms of contracts, and must instead enforce them as written. *See, e.g.*, *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997) (noting that a debtor's estate has "no greater rights in property than those held by the debtor prior to the bankruptcy"); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (a "court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included.") (citation omitted); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court"); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D.N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

18. Accordingly, in order to be entitled to any of the benefits of the Insurance Program, the Successful Bidder must also remain liable for the obligations thereunder.

19. Moreover, the Insurance Program, which is an integrated insurance program, must be read, interpreted and enforced together. *See Huron Consulting Servs., LLC v. Physiotherapy Hldgs., Inc. (In re Physiotherapy Hldgs., Inc.)*, 538 B.R. 225 (D. Del. 2015)

(reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *Allegheny Enters. v. J-W Operating Co.*, No. 10-02539, 2014 U.S. Dist. LEXIS 27998, at *18-19 (M.D. Pa. Mar. 5, 2014) (finding an integrated agreement where several contracts between the same parties govern the parties' relationship as to a particular subject); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

20. Accordingly, any assumption and assignment or other transfer of the Insurance Program must be in its entirety, and the Chubb Companies therefore object to the Sale Motion and the assumption and assignment or other transfer of the Insurance Program to the extent that any Successful Bidder is permitted to pick and choose certain Policies, including the Identified Chubb Contract,[6] for assignment, and to the extent that any Sale Transaction otherwise contemplates an improper split of the Insurance Program.

### B. The Insurance Program Cannot Be Assigned or Otherwise Transferred Without the Prior Written Consent of the Chubb Companies, Which Has <u>Not Been Sought or Given</u>.

21. To the extent that the Debtors seek to assign or otherwise transfer the Insurance Program in connection with the Sale Motion or any Sale Transaction, such assignment cannot occur without the express written consent of the Chubb Companies.

---

[6] The Chubb Companies specifically reserve the right to contest the assignment of any individual Policy.

9

22. Section 365 of the Bankruptcy Code governs a debtor's use of executory contracts and unexpired leases and provides the basis by which a debtor may assume and assign said contracts.

23. Section 365(f)(1), which allows assignment of a contract or lease despite a prohibition, restriction, or condition in the contract to the contrary, is not without limits. Section 365(f) is subject to and controlled in all respects by section 365(c). *See* 11 U.S.C. § 365(f)(1) ("Except as provided in subsection (b) and (c) of this section[.]"); *see also In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015) ("Section 365(f)(1), though, is expressly subject to any alternative rule provided in Section 365(c).").

24. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

25. Therefore, under section 365(c)(1) "if non-bankruptcy law provides that the [counterparty] would have to consent to an assignment of the [executory] contract to a third party, *i.e.*, someone 'other than the debtor or the debtor in possession,' then [the Debtor] . . . cannot assume that contract" and, by extension, assign it. *In re West Elecs. Inc.*, 852 F.2d 79, 83 (3d Cir. 1988); *see also Trump Ent. Resorts, Inc.*, 526 B.R. at 122 ("The Section 365(c)(1) limitation on the assumption of executory contracts applies whenever the contract is 'subject to a legal prohibition against assignment' to a third party and the non-debtor party to the contract does no consent to assignment.").

26. Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g., Banco Popular v. Kanning*, No. A-13-CV-200

RP, 2015 U.S. Dist. LEXIS 175647, at *25 (W.D. Tex. Mar. 9, 2015) (finding that a purported assignment of an insurance policy that did not comply with the express terms of the insurance policy was not enforceable); *Rotella v. Cutting*, 2011 Tex. App. LEXIS 7116, Tex. App.—Fort Worth 2011, *no pet*.) (where an insurer's express written consent to any transfer of rights under an insurance policy is required by the terms of the policy, failure to evidence the insurer's express written consent renders any purported transfer invalid); *Mercedes-Benz of W. Chester v. Am. Family Ins.*, Nos. CA2009-09-244, CA2009-09-245, CA2009-09-246, 2010 Ohio App. LEXIS 1898, at ¶ 22 (Ohio Ct. App. May 24, 2010) (finding that third party "cannot impute a legally binding obligation to pay against [insurer]" where insureds assigned insurance contract without insurer's consent, because to find otherwise "would place an undue risk and burden on [insurer]"); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured and that "coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[7]

27.  Similarly, insurers cannot be compelled to provide insurance coverage to any entity. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450,

---

[7] Some courts have found that insurance policies may be assigned to a trust created under § 524(g) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g.*, *In re Fed.-Mogul Glob.*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were "preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust."); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case does not involve an assignment to a trust created pursuant to § 524(g) nor an assignment under a plan.

at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, the Insurance Program cannot be assigned without the prior written consent of the Chubb Companies.

28. As a condition precedent for any consent that may be given by the Chubb Companies to an assignment, sale, or other transfer of the Insurance Program, the Debtors and the assignee will be required to execute one or more assumption agreements, in form and substance acceptable to the Chubb Companies. In the event that the Debtors do attempt to transfer all or any part of the Insurance Program in connection with the Sale Motion, any proposed assignee will also need to satisfy the Chubb Companies' extensive underwriting and financial review process, which takes substantial time to complete.

29. Therefore, because the Chubb Companies have not consented to any proposed assignment of the Insurance Program, the Chubb Companies object to any and all such assignments or transfers.

### C. The Chubb Companies Are Not Required to Make Coverage Determinations Between the Debtors and A Successful Bidder.

30. As the Debtors have not identified any Stalking Horse Bidder or proposed any Stalking Horse Agreement with respect to the Sale Transaction, it is not clear exactly what, if

any, portion of the Insurance Program the Debtors intend to transfer to the Successful Bidder pursuant to the Sale Motion.

31. While it is improper, as discussed above, to split the Insurance Program itself, or to split the rights under the Insurance Program from the Obligations thereunder, any transfer of only a certain (as yet unspecified) portion of the Insurance Program in connection with any Sale Transaction is likely to result in coverage disputes between the Successful Bidder and the Debtors.

32. To the extent that the Chubb Companies agree to the assignment of the Insurance Program, the Chubb Companies should not be put in the position of determining, as between the Debtors and the Successful Bidder, which entity is entitled to coverage thereunder in connection with a particular claim. Similarly, the Chubb Companies should not be put in the position of determining, as between the Debtors and the Successful Bidder, which entity is entitled to proceeds under the Insurance Program.

### D. The Cure Amount is Improper and Must Be Evaluated At The Time Of Assumption.

33. On the Assigned Contracts List, despite failing to identify with sufficient specificity the Identified Chubb Contract potentially subject to assumption and assignment, the Debtors state that there is no Cure Amount due to the Chubb Companies on account of such Identified Chubb Contract.

34. To the extent the Debtors seek to assume and assign any portion or all of the Insurance Program, the Debtors must, as noted above, assume and assign the Insurance Program in its entirety. Further, as more particularly described in the Insurance Program, the Debtors are required to pay the Obligations, and, therefore, amounts may become due and owing under the Insurance Program either prior to or after the assumption thereof.

35. The Chubb Companies have contingent, unliquidated claims against the Debtors for the Obligations, given the nature of the Insurance Program and the Obligations. By way of example and not limitation, premiums may be payable at audit under the terms of the Insurance Program, based upon factors as they exist throughout the coverage period. Therefore, the Chubb Companies have contingent, unliquidated claims against the Debtors for any additional premium that may become due upon completion of audit(s). By way of further example, as insured claims develop, amounts payable in relation thereto arise at various points in time; so it is common for amounts to arise in the future with respect to insured claims where the date of loss was prior to the Petition Date.

36. The amount owed by the Debtors on account of the Obligations may vary from day to day, and is subject to ongoing reconciliation based on, among other things, claims funding provided by the Debtors and claims submitted to the Chubb Companies.

37. Accordingly, any Cure Amounts must be determined at the time of assumption, and, further, as a condition for the assignment of the Insurance Program, the assignee must remain liable for all of the Debtors' obligations and liabilities (including the Obligations), whether now existing or hereafter arising, under the Insurance Program including, without limitation, paying the Obligations as they become due.

38. For this reason, it is improper for the Debtors to set a $0.00 Cure Amount with respect to the Identified Chubb Contract.

E. **Any Successful Bidder Must Provide Adequate Assurance of Future Performance.**

39. It is currently unknown what entity, if any, will be the Successful Bidder or if the Assigned Contracts List will be modified, and the Chubb Companies have therefore not yet been

definitively advised as to whether the Successful Bidder intends to seek assignment of the Insurance Program.

40. Pursuant to § 365(f)(2) of the Bankruptcy Code, any assignee of a contract must provide adequate assurance of future performance.

41. Considering the fact that the Successful Bidder is not yet known, the Chubb Companies do not have, and the Debtors have not supplied, any information—much less sufficient information or a reasonable amount of time—to determine if the Successful Bidder would be capable of providing adequate assurance of future performance and whether the Successful Bidder would satisfy the Chubb Companies' credit and underwriting criteria. Accordingly, the Chubb Companies are unable, at this time, to assess whether any Successful Bidder would satisfy those criteria.

42. Accordingly, the Chubb Companies further object on the basis that the Chubb Companies do not have adequate assurance as required by § 365(f)(2) of the Bankruptcy Code.

## **RESERVATION OF RIGHTS**

43. The Chubb Companies specifically reserve all of their rights with respect to the Insurance Program and their right to assert additional objections to the Sale Motion and any Stalking Horse Selection Motion, any list or schedule or assumed contracts, assumed or assigned contracts, or cure amounts or any documents relating to any of the foregoing and/or the Sale Transaction.

WHEREFORE, the Chubb Companies object to the Sale Motion on the bases set forth herein, and reserve their rights to assert any additional objections to the Sale Motion, any list of schedule of assumed contracts, assumed and assigned contracts, or cure amounts or any

documents relating to any of the foregoing and/or the Sale Transaction and to the assignment of the Insurance Program, particularly once the Successful Bidder is identified.

Dated: March 31, 2023

Respectfully submitted,

**DUANE MORRIS LLP**

/s/ Phillip M. Hudson III

Phillip M. Hudson III, Esq. (Fla. Bar No. 518743)
Morgan L. Swing, Esq. (Fla. Bar No. 17092)
201 S. Biscayne Boulevard, Suite 3400
Miami, FL 33131-4325
Phone: 305-960-2352
Fax: 305-675-5752
Email: MLSwing@duanemorris.com

*and*

Wendy M. Simkulak, Esq.
Catherine Heitzenrater, Esq.
Roxanne J. Indelicato, Esq.
30 South 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax: (215) 979-1020
Email: WMSimkulak@duanemorris.com
CHeitzenrater@duanemorris.com
RIndelicato@duanemorris.com

*Counsel for the Chubb Companies*