**EXHIBIT A**

## CO-PACKING AGREEMENT

**THIS AGREEMENT** is entered into as of the 25th day of July, 2017 (the "Effective Date"), by and between Vital Pharmaceuticals, Inc., a Florida corporation with offices at 1600 North Park Drive, Weston, FL 33326 ("VPX"), and Cott Beverages Inc., a Georgia corporation with offices at 5519 W. Idlewild Avenue, Tampa, Florida 33634 ("Cott").

### RECITALS:

A.     VPX represents and warrants that it has the necessary rights and licenses in the United States (the "Territory") to the brand names set out in Exhibit A which are used in connection with certain beverage products.

B.     Cott is in the business of manufacturing beverage products.

C.     The parties have agreed that Cott shall manufacture those products in the package sizes described on Exhibit A, as amended from time to time upon agreement of the parties, (the "Products") on a non-exclusive basis in accordance with the terms of this Agreement.

NOW, THEREFORE, for value received, the parties agree as follows:

1. **APPOINTMENT; COMPENSATION**

    (a)     Subject to the terms of this Agreement, Cott agrees to manufacture Products in such quantities (subject to the loss factors with respect to ingredient and packaging (the "Loss Factors") as set forth in Exhibit A attached hereto, as may be amended by Cott in writing from time to time) and at such times, as VPX requests and Cott agrees from time to time.

    (b)     The appointment of Cott is non-exclusive for any Products required by VPX within the Territory. Notwithstanding the foregoing, VPX agrees to approach and work collaboratively with Cott in connection with any new manufacturing opportunities for additional and/or new beverage products and/or package types or configurations that are or become available for the manufacture for or on behalf of VPX during the Term, as defined below. Nothing in this Agreement precludes Cott from manufacturing and supplying similar and/or competitive beverages to competitors of VPX and/or from manufacturing and supplying similar and/or competitive beverages under Cott's or Cott's subsidiaries' and affiliates' own brand names.

    (c)     All contract packing is to take place at Cott's plant located at 4238 Director Drive, San Antonio, TX 78219 or such other facility or facilities that are previously approved by VPX in writing from time to time (each referred to as the "Plant"), which approval shall not be unreasonably withheld or delayed. Further, Cott and VPX agree that Cott will make commercially reasonable efforts to offer contract packing at its facility located at 631 S. Waterman Avenue, San Bernardino, CA 92408 on or before January 1, 2018 to accommodate



production requested in that facility by VPX, which shall not be more than twenty-five percent (25%) of VPX's overall Volume Guarantee (as defined in Section 3(d) below) in any given calendar year. Except to the extent delayed due to the actions or inactions of VPX and/or VPX's suppliers, relative to VPX's obligations and responsibilities under this Agreement, should such production not be available in San Bernardino by January 1, 2018 for reasons solely within Cott's control, then beginning with the month of January 2018 Cott agrees to provide a credit memo each month that production is not available in San Bernardino in the amount of Five Thousand Dollars per month ($5,000.00/month), to be pro-rated for any partial months, until such time as production is available in San Bernardino.

(d)  VPX shall pay the fees for each case of Products manufactured by Cott (the "Fees") as set forth in Exhibit A. The Fees are subject to adjustment by Cott as set forth in Exhibit A.

(e)  Payment terms are net thirty (30) days from the date of invoice, with invoices being issued by Cott at the time of shipment of Products to VPX. If at any time VPX is in breach of such payment terms, then, without limiting any of Cott's other rights and remedies, Cott may, at Cott's sole discretion, (i) cease producing and/or shipping Products until such time as VPX has paid any outstanding Fees, and/or (ii) change the payment terms to wire transfer or some other payment in immediately available funds, which must be made prior to production or release of any Products by Cott to VPX.

(f)  No deductions or set-off may be made by VPX, for any reason, on any amounts payable under this Agreement, except those that have been approved by Cott in writing. Cott will not be bound or prejudiced by any endorsement, note, direction or statement accompanying any payment made to Cott by VPX notwithstanding that Cott retains any such payment and such retention shall be without prejudice to any of Cott's other rights and remedies under this Agreement, in equity or at law, whether or not Cott notifies VPX of any disagreement with or non-acceptance of any amount paid or any endorsement, direction, note, instruction or statement received.

## 2. TERM

The term of this Agreement shall begin on the Effective Date set forth above and shall continue for an initial term of three (3) years thereafter (the "Initial Term"), unless terminated earlier in accordance with the provisions of this Agreement. At the end of the Initial Term, this Agreement shall be renewed for successive one (1) year periods (each, a "Renewal Term") on the same terms and conditions, unless (a) either party provides the other party with written Notice of its intent to terminate this Agreement, such Notice to be provided by no later than ninety (90) days prior to the end of the Initial Term or any Renewal Term, such termination to be effective upon the expiry of the Initial Term or the then-current Renewal Term; or (b) this Agreement is terminated earlier in accordance with the provisions of this Agreement. The Initial Term and all Renewal Terms are collectively referred to in this Agreement as the "Term". If Cott continues to supply Products to VPX following the expiry of the Term, then the terms and conditions of this Agreement shall continue to apply to such supply of Products.

3. **MANUFACTURING; PRODUCT DISPOSITION; TITLE/RISK OF LOSS**

(a) VPX will provide forecasts of its future requirements for Product as follows: at least four (4) weeks prior to each calendar month during the Term, VPX will furnish to Cott (i) a twelve (12) month rolling volume forecast, providing monthly case volume by SKU, and (ii) a volume forecast for such calendar month, providing weekly case volume by SKU (the "Firm Forecast"); provided, however, that VPX agrees that it shall not issue a Firm Forecast that exceeds 62,500 cases/month at Cott's San Bernardino Plant without Cott's written confirmation and approval. Cott will use reasonable commercial efforts to fill all orders even if less than such lead-time is given, provided that Cott shall not have any liability to VPX for any failure to fill any such orders.

(b) VPX will issue written purchase orders for, and purchase, all Products that are produced in accordance with Firm Forecasts. If VPX issues purchase orders which are in excess of the applicable Firm Forecast ("Excess Orders"), then Cott will use reasonable commercial efforts to fill all orders, provided that Cott shall not have any liability to VPX for any failure to fill any such orders, and VPX will purchase all Products produced in accordance with Excess Orders.

(c) VPX acknowledges and agrees that Cott requires that a minimum case production quantity be maintained for each flavor SKU (i.e. package and flavor) in accordance with the provisions set forth on Exhibit A, and that Cott requires a minimum production cycle of at least thirty thousand (30,000) cases, with a minimum of five thousand (5,000) 12ct cases per flavor SKU ordered for each day scheduled. VPX agrees to purchase all minimum run quantities, whether or not ordered in full by VPX. VPX will not order less than the minimum run quantities, as specified in Exhibit A.

(d) VPX is not obligated to purchase any minimum volume of Product from Cott in any given calendar year. Notwithstanding the foregoing, VPX forecasts demand for approximately Two Million (2,000,000) cases of Product to be produced by Cott in its Plants each calendar year of the Term. VPX acknowledges and agrees that it will purchase no less than a total volume of Six Million (6,000,000) cases of Products from Cott (with no more than twenty-five percent (25%) of such volume being purchased from Cott's San Bernardino Plant once production begins at that facility) during the Initial Term of this Agreement (the "Volume Guarantee"), subject to the following:

  i. If at the end of the Initial Term VPX has not purchased at least the Volume Guarantee of Products, then VPX will pay Cott a per case fee equal to thirty cents per case ($0.30/case) for the difference between actual cases purchased and the shortfall of the Volume Guarantee (the "Volume Guarantee Payment"), with such payment to be made within thirty (30) days of the expiration of the Initial Term; and/or

  ii. If Cott terminates this Agreement as a result of an uncured default by VPX during the Initial Term, the Volume Guarantee Payment will be calculated based on case

3

volumes purchased as of the effective date of such termination and shall be payable within thirty (30) days of the termination date; and/or

    iii.    If VPX terminates this Agreement as a result of an uncured default by Cott during the Initial Term, the Volume Guarantee Payment will be waived at termination.

At the expiration of the Initial Term and during any subsequent Renewal Term, the Volume Guarantee anticipated in each Renewal Term will be no less than Two Million (2,000,000) cases per each Renewal Term unless otherwise agreed to in writing by the parties and the Volume Guarantee Payment provisions of Section 3(d)(i) above shall apply during each Renewal Term.

    (e)    In the event any Product is discontinued by VPX or packaging is changed by VPX, such discontinuance or change shall be subject to VPX reimbursing Cott for all raw and packaging materials and finished Products, with such reimbursement to be made in accordance with the invoice and payment terms in place between the Parties at the time of such event.

    (f)    VPX will furnish those raw and/or packaging materials listed in Exhibit B for the manufacture of Products (the "VPX Supplied Materials") at no charge to Cott as and when reasonably requested by Cott to enable production in accordance with VPX's forecasts. All such materials shall remain the property of VPX and Cott assumes no responsibility for the quality or compliance with laws or regulations of any VPX Supplied Materials. Cott will use all VPX Supplied Materials only to manufacture the Products for or on behalf of VPX unless otherwise mutually agreed. Cott shall notify VPX as soon as reasonably practicable after discovery by Cott that VPX Supplied Materials are damaged or defective ("Damaged Materials") and that such Damaged Materials are being rejected for use in production.

    (g)    Subject to any right of Cott to increase Fees in accordance with Section 1(d) above, Cott will supply those raw and/or packaging materials listed in Exhibit C at no additional charge to VPX (the "Cott Supplies"). VPX will be liable to Cott for the costs associated with no more than ninety (90) days' worth of inventory of Cott Supplies which Cott has procured in reliance upon the forecasts provided by VPX and which Cott is unable to produce into finished Product; provided, however, that VPX will be liable to Cott for either that ninety (90) days' worth of inventory or the minimum production runs of materials purchased by Cott to meet and support VPX's forecasted demand, whichever is greater, with respect to any Cott Supplies that are unique to the Products ("Unique Cott Supplies") as identified on Exhibit C, which Cott is unable to produce into finished Product.

    (h)    VPX is responsible for the costs associated with the initial setup and any change in Product labels and/or packaging, including artwork design, film, separations, plates, and dies for production. Prior to any future redesign costs being incurred, VPX and Cott shall mutually agree to the appropriate and reasonable timelines for such redesign projects, which shall not be implemented without Cott's prior written approval.

    (i)    Unless VPX and Cott mutually agree in writing upon a different procedure, Product shall be delivered to VPX's place of business at 1600 North Park Drive, Weston FL

4



33326 and/or VPX's designated facility located at 13874 Norton Avenue, Chino, CA 91710, or such other address as may be mutually-agreed upon by VPX and Cott in advance of delivery. All such deliveries shall be made in full truckload quantities and full flavor pallets. The Fees include warehousing for a maximum of twenty-five (25) days following the production of the Products. Thereafter, beginning on the twenty-sixth (26th) day of storage, VPX will be charged a storage and handling fee of ten dollars per pallet ($10.00/pallet) for each partial or full additional twenty-five (25) days of storage that exceed the initial 25 days of storage that is included in the Fees.

(j) Title to the Products manufactured by Cott for VPX and risk of loss shall pass to VPX at such time as the Products are delivered to VPX as set forth in Section 3(i) above.

(k) VPX is solely responsible for (i) all design and trademark/trade dress of the labels and packaging materials, including compliance with all applicable labeling and packaging laws with respect to any elements incorporated into the labels and/or packaging materials by VPX for the Products in all jurisdictions in which the Products will be sold; (ii) ensuring that all labels and other packaging for the Products are in compliance with all product labelling and packaging laws applicable in the jurisdictions where the Products will be sold; and (iii) complying with any and all applicable container return laws and other environmental, recycling, redemption and/or deposit laws in connection with the Products as applicable in all jurisdiction where the Products will be sold, at its sole cost and expense.

4. **QUALITY ASSURANCE POLICIES; INSPECTION**

(a) Cott will maintain its facilities and equipment and shall discharge its obligations under this Agreement in compliance with all applicable U.S. pure food, sanitation and public health laws and regulations.

(b) VPX will supply written formulae for the Products, including instructions for mixing ingredients, blending, packaging (including date coding) for preparation and manufacture of the Products, and any other procedures, including sanitation, necessary for the Products (the "Specifications"), which shall in any event be subject to Cott's prior written approval for manufacture. VPX shall be responsible for ensuring that the Specifications are in compliance with all applicable laws in the jurisdictions where the Products are sold.

(c) Cott shall manufacture the Products in accordance with the Specifications. Cott makes no other warranty or representation, express or implied, with respect to the Products, including no warranty or representation regarding merchantability or fitness for any particular purpose. Cott shall be responsible for and shall indemnify and save harmless VPX in respect of, property damage, bodily injury and/or death caused by its failure to manufacture Products in accordance with the Specifications, but in no event shall Cott be liable or responsible for any other damages, costs, losses or expenses, including any indirect, consequential, special, incidental or punitive losses or damages or any loss of business. The indemnities contained in this Section 4(c) shall survive the expiration or earlier termination of this Agreement.

5



(d) Upon receipt of VPX's written request at reasonable intervals, Cott will provide VPX with samples of finished Products. Any additional outside testing and analyses will be at VPX's request and expense.

(e) VPX will have the right to inspect the Plant during the Plant's normal business hours for the purpose of ensuring that Cott is in compliance with its obligations under this Agreement. Such requests for inspection must be arranged upon at least two (2) business days prior notice.

5. **INSURANCE; INDEMNITY**

(a) Each party agrees to maintain during the Term of this Agreement comprehensive general product and public liability insurance in connection with the Products and all activities and/or obligations of each party hereunder, with limits of at least $5,000,000 per occurrence, such insurance to be primary, non-contributory, and not in excess of any other insurance policy, and naming the other party as an additional insured. If requested in writing by the other party, each party shall furnish the other party with certificates of insurance evidencing polices of insurance with a carrier with an AM Best rating of "A" or better satisfying the requirements set forth herein and each party shall endeavor to notify the other of any cancellation, termination or material changes to such polices within thirty (30) days of such event.

(b) Except to the extent caused by the acts or inactions, and/or the negligence or willful misconduct, of VPX, Cott shall indemnify, defend, and save harmless VPX from and against all damages, losses, costs and expenses which VPX incur, suffer or have to pay as a result of any claim, action or proceeding relating to any breach by Cott with respect to a failure to manufacture Products in accordance with the Specifications.

(c) Except to the extent caused by the acts or inactions, and/or the negligence or willful misconduct, of Cott, VPX shall indemnify, defend, and save harmless Cott from and against all damages, losses, costs and expenses (including product recall and withdrawal costs, warehousing costs, product disposal costs, the Fees and reasonable attorney's fees) which Cott may incur, suffer or have to pay as a result of any claim, action or proceeding brought by any third party or parties relating to: (i) any allegation that trademarks, flavor names, trade dress, designs and/or any other features which may be incorporated into the packaging of the Products with the approval of, the knowledge of, or at the direction of, VPX, infringe any trademark or other intellectual property right of any third party or parties, including without limitation the intellectual property rights of the brand owner if intellectual property is not owned by VPX (including any losses relating to raw and packaging materials and finished Products that Cott is unable to use); (ii) any allegation that the patents, trade secrets, and/or other intellectual property rights in the formulae provided, or approved for use, by VPX, infringe the intellectual property and/or proprietary rights of any third party or parties (including any losses relating to raw and packaging materials and finished Products that Cott is unable to use); (iii) any contest or advertising provided by or on behalf of VPX or its customers; (iv) alleged or actual non-compliance with applicable product labelling or packaging laws and/or with applicable container return or other environmental, recycling, redemption and/or deposit laws; (v) claims, including claims of negligence, alleging that the Product, its labeling and/or packaging mislead or confuse the consumer; (vi) any breach by VPX of its representations, warranties, or obligations

6



hereunder; (vii) the Specifications; (viii) any VPX Supplied Materials, and/or (ix) the handling of the Products after VPX receives them from Cott.

(d)     In no event shall either party be liable or responsible for any indirect, consequential, special, incidental or punitive losses, costs, expenses or damages, including without limitation any loss of profits, any loss of business or damage or negative impact to product brands or reputation on any basis.

(e)     In the event of any third party claim for which indemnification is available hereunder, the indemnitor will have the right to assume and conduct the defense of that claim with counsel of its choosing acceptable to the indemnitee, acting reasonably, provided that the indemnitee will be entitled to participate in any such defense through counsel of its own choosing (at its cost unless its counsel's participation results from a conflict of interest under the applicable standards of professional conduct that would make it inappropriate for the same counsel to represent both Cott and VPX). If the indemnitor does not assume the defense of a third party claim within ten (10) calendar days after notice thereof with counsel acceptable to indemnitee, or does not prosecute that defense diligently, then the indemnitee may defend the claim at the sole cost and expense of the indemnitor and the indemnitor may participate in, but not control, that defense at its sole cost and expense. Each party will have the right to approve any settlement of any claim for which indemnification is available to it hereunder, such approval not to be unreasonably withheld.

(f)     The indemnities contained in this Section 5 shall survive the expiration or earlier termination of this Agreement.

## 6.  CURRENCY; TAXES; ENVIRONMENTAL LEVIES

All dollar amounts expressed in this Agreement are in United States funds and all prices are exclusive of taxes, deposits and environmental charges, including any export or import duties or taxes, all of which are VPX's responsibility. For greater clarity, it is understood and agreed that if any such amounts are required, by local, provincial or federal law, to be paid by the manufacturer, Cott shall pay them at first instance but VPX shall nonetheless reimburse Cott forthwith for all such amounts.

## 7.  FORCE MAJEURE

If Cott's performance is prevented, hindered or delayed by reason of any cause(s) beyond its reasonable control ("Force Majeure Event"), including war, acts of sabotage, acts of terrorism, labor disputes, civil disorders, governmental acts, epidemics, quarantines, embargoes, fires, earthquakes, storms, or acts of God, which cannot be overcome by reasonable diligence, Cott's obligations hereunder shall be excused so long as and to the extent that such Force Majeure Event prevents, hinders or delays performance.

## 8.  CONFIDENTIALITY

(a)     Each party (in such capacity, the "receiving party") agrees that all information it has received or will receive from the other party (in such capacity, the "disclosing party") prior

7



to or during the Term, including information concerning the production and marketing of the Products, the sourcing, acquisition and pricing of VPX Supplied Materials, Cott Supplies, pricing, fees, rebates, allowances, payment terms and profit margins, all constitute the sole property of the disclosing party, and the receiving party hereby agrees to keep and hold such information confidential during the Term and following the expiration or earlier termination of this Agreement for any reason, and does further agree that it will not disclose, directly or indirectly, such information to any third party (other than (i) to the receiving party's respective lenders or professional advisors (or, in the case of Cott, to its co-packers), (ii) to the extent that such disclosure is required by law, judicial process or the requirements of any applicable stock exchange or securities commission, provided, however, that to the extent practicable in the circumstances, the receiving party shall promptly advise the disclosing party of any such proposed disclosure in order to permit the disclosing party to seek a protective order or other remedy or waive compliance with this Agreement, or (iii) to the extent necessary to enforce the receiving party's rights or raise defenses in the context of litigation with the disclosing party) or use such information for its own benefit other than in the discharge of its obligations under this Agreement. Upon request, the receiving party will promptly return to the disclosing party (without retaining any copies thereof) all such information provided by the disclosing party.

(b) The obligations in section 8(a) shall survive the expiration or earlier termination of this Agreement, but shall not apply to information that: (i) at the time of disclosure is in the public domain; (ii) after disclosure, becomes part of the public domain through no violation of this Agreement; (iii) prior to disclosure, was in the possession of or known to the receiving party, or (iv) is acquired from any third party, provided that the receiving party does not know and ought not to have known that it was acquired by such third party directly or indirectly from the disclosing party or its affiliates under an obligation of secrecy.

9. **TERMINATION**

(a) If either party is in default in any material respect of the terms hereof, this Agreement shall, at the option of the non-defaulting party, be terminated thirty (30) days (or five (5) business days for a payment default) after the defaulting party has been given Notice of its default (which Notice shall describe the alleged default in reasonable detail), unless such default is cured within such thirty (30) day period (or five (5) business day period for a payment default), or if the default is not capable of being cured within such period, unless procedures reasonably satisfactory to the non-defaulting party are put in place by the defaulting party to avoid a similar default in the future.

(b) Either party (the "terminating party") shall have the right to terminate this Agreement immediately upon written Notice to the other party (the "non-terminating party") if: (i) the non-terminating party files a petition in bankruptcy under any section or provision of any applicable bankruptcy law; (ii) any involuntary petition in bankruptcy is filed against the non-terminating party; (iii) an order for relief is entered against the non-terminating party in any bankruptcy proceeding; (iv) an order appointing a receiver or trustee for a substantial portion of the non-terminating party's property shall remain in force for thirty (30) days after the entry of such order; (v) the non-terminating party makes an assignment for the benefit of creditors; (vi) any levy or attachment upon a substantial portion of the non-terminating party's property is not

8

satisfied or dissolved within thirty (30) days after the date of such levy or attachment; (vii) the non-terminating party, whether voluntarily or involuntarily, takes advantage of any debtor relief proceedings under any present or future law; or (viii) any insurance that the non-terminating party is required to maintain is terminated without replacement or is materially adversely modified.

(c) Upon the expiration or earlier termination of this Agreement, VPX will be liable to Cott for (i) the costs associated with no more than ninety (90) days' worth of finished Products inventory and any remaining inventory of Cott Supplies that were procured in reliance upon the forecasts provided by VPX; provided, however, that VPX will be liable to Cott for either that ninety (90) days' worth of remaining inventory or the minimum production runs purchased by Cott to meet and support VPX's forecasted demand, whichever is greater, with respect to any Cott Supplies that are unique to the Products ("Unique Cott Supplies") as identified on Exhibit C; (ii) the Fees for any Products produced in accordance with binding purchase orders, including any Excess Volume requests; and (iii) any warehousing fees under Section 3(c), all to be paid within thirty (30) calendar days after termination.

(d) The obligations contained in this Section 9 shall survive the expiration or earlier termination of this Agreement.

## 10. NOTICES

Any and all notices, elections, demands, requests, responses or other communications required or permitted under this Agreement (collectively, "Notices") shall be in writing and shall be deemed to have been given and shall be effective upon the date of receipt by the addressee in the case of personal delivery (including by recognized national or international courier) or of facsimile or e-mail transmission (with Read Receipt confirmation), or five (5) days following the date of deposit in the mail or the national postal service of any country, postage prepaid, certified or registered with return receipt requested, to the other party in each case at the address, facsimile number or e-mail address of such other party as set forth below or at such other address, facsimile number or e-mail address as such other party may designate by Notice specifically designated as a notice of change of address, facsimile number, and/or e-mail address as the case may be, and given in accordance herewith. Rejection or other refusal to accept or inability to deliver because of changed address of which no Notice has been received shall constitute receipt. Personal delivery to a party or to any officer, partner, agent, or authorized employee of such party at such address shall constitute receipt. Notwithstanding the foregoing, Notices of default or termination may not be sent by facsimile or e-mail transmission alone, and further any facsimile transmissions that are received after 4:00 p.m. on a business day or received on a day that is not a business day, in the jurisdiction of the recipient, shall be deemed to have been received on the next business day. Any such Notice shall be addressed as follows:

**As to Cott:**    Cott Beverages Inc.
Attention: Vice President, Co-Pack Sales
5519 W. Idlewild Avenue
Tampa, Florida 33634
Fax No.: 813-881-1870
E-mail: gthompson@cott.com

9 

|  |  |
|---|---|
| **With a copy of any Notice of default to:** | Cott - Legal Department<br>Attention: General Counsel<br>5519 W. Idlewild Avenue<br>Tampa, Florida 33634<br>Fax No.: 813-881-1923<br>E-mail: gencounsel@cott.com |
| **As to VPX:** | **Vital Pharmaceuticals, Inc**<br>Attention: Gene Bukovi<br>1600 North Park Drive<br>Weston, Florida 33326<br>Fax No.: 954-389-1538<br>E-mail: Gene.Bukovi@vpxsports.com |
| With a Copy to: | Vital Pharmaceuticals, Inc.<br>Attention: Office of the General Counsel<br>1600 North Park Drive<br>Weston, Florida 33326<br>Fax No.: 954-389-6254<br>E-mail: Legal@vpxsports.com |

11. **MISCELLANEOUS**

(a) The parties agree that the relationship established by this Agreement shall be solely that of independent bottler/Cott, that Cott is an independent contractor with respect to VPX, that neither party nor any of its agents or employees are agents or employees of the other, and that neither party shall have any right or authority to create any obligation of any kind on behalf of the other except as expressly directed by the other party in writing.

(b) Each party shall from time to time promptly execute and deliver all further documents and take all further action reasonably necessary or appropriate to give effect to the provisions and intent of this Agreement.

(c) The rights and remedies under this Agreement are cumulative and are in addition to, and not in substitution for, any other rights and remedies available at law or in equity or otherwise. No single or partial exercise by a party of any right or remedy precludes or otherwise affects the exercise of any other right or remedy to which that party may be entitled. Neither party shall by act, delay, omission, or otherwise be deemed to have waived any of its rights or remedies under this Agreement unless such waiver is in writing and signed by the party entitled to grant the waiver. No waiver of any breach of any provision of this Agreement will be deemed to be a waiver of any subsequent breach of that provision.

(d) This Agreement shall for all purposes be deemed to be made in, to be performed in, and shall be governed by the laws of the State of Florida without regard to any principle of

10



conflicts of laws. If any controversies arise between VPX and Cott that require judicial determination, each party expressly consents to submitting itself to the jurisdiction of the courts of Broward County, State of Florida.

(e) This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective successors and permitted assigns. Neither party may assign its rights or obligations under this Agreement to any other person or entity without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed. Notwithstanding the foregoing, provided the party wishing to assign is not in default under the terms of this Agreement, either party may, without consent but upon prior written Notice to the other, assign its rights (but not its obligations) under this Agreement to a person or entity that directly or indirectly controls, is controlled by, or is under common control with such party.

(f) The headings or captions contained in this Agreement are inserted merely for the convenience of the parties, and shall not be deemed to limit or otherwise affect the construction of the substantive portions of this Agreement. The term "including" means "including without limitation" and variations of the term "including" have a similar meaning. The term "business day" means any day that is not a Saturday or Sunday or a statutory holiday in the United States.

(g) VPX and Cott have read, approved and appended as part of this Agreement Exhibits A, B and C, the terms of which are incorporated herein.

(h) This Agreement contains the entire agreement of the parties with respect to the subject matter hereof, and supersedes all prior understandings, negotiations, letters or commitments of any nature whatsoever relating generally to the same subject matter.

(i) If any part of this Agreement is held to be invalid or unenforceable it shall be severed from this Agreement without invalidating or affecting the enforceability of the remaining provisions of this Agreement.

(j) This Agreement shall not be amended or modified without specific written provision to that effect, signed by a duly authorized officer of both parties. No oral statement of any person shall in any manner or degree modify or otherwise affect the terms and provision of this Agreement. Without limiting the generality of the foregoing, in the event of any conflict or inconsistency between the terms and conditions of any purchase order for Products and of this Agreement, the terms and conditions of this Agreement shall govern.

(k) Each party hereby represents and warrants to the other party that its execution and delivery of this Agreement and the performance of its obligations under this Agreement will not result in it being in breach of any other agreement to which it is a party or by which it is bound and further, that it is legally existing under the laws of its jurisdiction of incorporation with full power and authority to perform its obligations under this Agreement.

Each party has caused this Agreement to be executed by and through its duly authorized representatives on the day and year first above written.

*[Signature page immediately follows]*

11 

COTT BEVERAGES INC.

By: _____
      JON BILLER
Title: _____C.L.O._____

Date: ___8 | 3 | 17___

VITAL PHARMACEUTICALS, INC.

By: _____
      JOHN H. OWOC
Title: ___CEO___

Date: ___July 26, 2017___

Approved as to legal form
_Susan H. McCarty_
Cott Legal Dept

# EXHIBIT A

## 1. **PRODUCT DESCRIPTION**
**Product Brand:**                                          **Package Size:**
"Bang Energy"                                               12ct/16oz can - tray/shrink

In each case, produced and made available for delivery in accordance with Sections 3(c) and 3(h) of this Agreement.

## 2. **MINIMUM PRODUCTION RUNS REQUIRED**

In accordance with Section 3(c), Cott requires a minimum production run of thirty thousand (30,000) 12ct cases per production cycle with five thousand (5,000) 12ct cases per flavor SKU for each day scheduled.

## 3. **LOSS FACTORS**

Cott is permitted up to and including a loss allowance of five percent (5%) for all ingredient supplies and a loss allowance of two percent (2%) for all packaging materials and supplies provided by VPX pursuant to Exhibit B hereto. The loss allowance amounts shall be calculated on a quarterly basis, provided that any VPX Supplied Materials which are Damaged Materials in accordance with Section 3(f) will not be included in the calculation of any actual losses.

Loss allowances are based on fill level targets of 16oz, or as otherwise mutually agreed to by the parties in writing. However, (i) Cott will not be responsible for any losses of VPX Supplied Materials or Cott Supplies in connection with sample runs for any new products to be added to this Agreement, and/or (ii) if Product formulations are not unitized to Cott's batching capabilities, Cott will not be responsible for any excess ingredient losses that are part of VPX Supplied Materials, and VPX is responsible for all charges associated with destruction or disposal of such unused VPX Supplied Materials. The parties hereto agree to work together to confirm and ensure that the Product formulations and the Specifications are unitized to Cott's batching capabilities.

## 4. **FEE SCHEDULE**

a. The following fees will apply to those production runs:

| **Case Package** | **Fees**** |
|---|---|
| 12ct/16oz can cases* | $3.71/case FOB Delivered to Weston, FL |
| *all flavors other than "Sour Heads" | $3.71/case FOB Delivered to Chino, CA |
| | |
| 12ct/16oz can cases – "Sour Heads" | $3.79/case FOB Delivered to Weston, FL |
| | $3.79/case FOB Delivered to Chino, CA |

** Fees listed reflect FOB Delivered from Cott's San Antonio, TX Plant. When Cott's San Bernardino, CA production is available, Fees for FOB Delivered from San Bernardino to Chino, CA will be reduced to $3.56/case (and $3.64 for "Sour Heads") and the Fees for FOB

13



Delivered from San Antonio to Weston, FL will remain at $3.71/case (and $3.79 for "Sour Heads").

Cott may adjust the Fees as necessary to reflect unique costs associated with any specific ingredients and/or materials required by a formulation (such as is the case with "Sour Heads" flavored Product), any change in Cott's costs for production, and/or delivery costs and expenses of the Product by giving VPX at least thirty (30) days' prior notice. In accordance with Section 3(i) of the Agreement, these Fees include warehousing for a maximum of twenty-one (21) calendar days after production of the Products only, and do not include any additional warehouse costs if the Products are not picked up within those 21 calendar days.

**Fees are Delivered to VPX's places of business at 1600 North Park Drive, Weston FL 33326 and/or 13874 Norton Avenue, Chino, CA 91710 in full truckload quantities and full flavor pallets, subject to the specific provisions of the Agreement, including without limitation the provisions of Sections 1(c), 1(e) and 3(i).**

14

## EXHIBIT B

## VPX SUPPLIED MATERIALS

1. Flavor and Extract

2. Magnesium Chloride, Niacinamide, vitamin B12, vitamin B6, Leucine, Isoleucine, Valine, Potassium Phosphate Dibasic, Sucralose liquid

15

## EXHIBIT C

## COTT SUPPLIES

1. Water

2. Caffeine, Calcium Chloride, Potassium Citrate, Citric Acid, Sodium Benzoate, Potassium Sorbate, EDTA, Ace K, and Malic Acid

3. Cans*

4. Can Ends (black with orange tab) *

5. Tray (white printed) *

6. Clear Shrink

7. Stretch Wrap (on pallet)

8. Grade A Wood Pallet

* Indicates a "Unique Cott Supply", per Section 3(g) and Section 9(c) of the Agreement.

16