UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| In re:<br>VITAL PHARMACEUTICALS, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case No. 22-17842-PDR<br>Hon. Peter D. Russin<br>(Jointly Administered) |

### LIMITED OBJECTION OF WEBB & GERRITSEN, INC. TO SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

Webb & Gerritsen, Inc. ("Webb") hereby files this limited objection to the Debtors' *Motion For An Order (I) Approving (A) Bidding Procedures For the Sale of Substantially all of the Debtors' Assets, (B) Procedures for the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Form and Manner of Notice of the Sale Hearing, Assumption Procedures, and Auction Results, (D) Dates for an Auction and Sale Hearing, (E) the Sale of Substantially all of the Debtors' Assets Free and Clear of all Claims, Liens, Liabilities, Rights, Interests and Encumbrances, and (F) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing the Debtors to Provide Bid Protections, and (III) Granting Related Relief* [Dkt. No. 707] (the "Sale Motion").[2]

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("VPX") (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC ("JHO") (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicom Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] The Debtors have filed a motion to adjourn the hearing on approval of a Stalking Horse Bidder for the Sale because they have not yet identified such a party. *See Ex Parte* Motion to Cancel Hearing to Consider Debtors' Proposed Stalking Horse Bidder [Dkt. No. 1071] and the Court has granted that motion. [Dkt. No. 1086]. However, Webb files

Webb has been a judgment creditor of Vital Pharmaceuticals, Inc. (the "Debtor" or "VPX") since February 8, 2022. The jury verdict-based judgment was in the amount of $2,445,098.10 (the "Judgment on Verdict"). On March 18, 2022, in connection with its anticipated appeal from the judgment, VPX asked for and obtained an order regarding judgment collection from the Waukesha County, Wisconsin Circuit Court (the "March 18th Order"). That March 18th Order temporarily stayed Webb's collection of the Judgment for one week, and offered VPX a continuing indefinite stay pending the outcome of the appeal, provided VPX first did one of two things: either a) post a bond from a surety or b) deposit $2,897,098.10 with the Clerk of the Circuit Court, subject to the terms of the Court's March 18th Order. VPX complied with the March 18th Order on March 23, 2022, by making a cash payment to the Clerk of the Circuit Court (the "Final Judgment Deposit"). The difference between the Judgment on Verdict and the Final Judgment Deposit was $452,000.00, intended to include and protect Webb as the judgment creditor for interest and attorneys' fees as allowed by the statute underlying the claim giving rise to the Verdict and anticipated appellate proceedings. Interest on the Judgment continues to accrue in favor of Webb at a rate of 4.25% annually, totaling $103,916.67 per year. Webb continues to incur fees.[3]

Because the Sale Motion does not make clear precisely what assets will be included in the proposed sale, in an abundance of caution, Webb objects to the Sale Motion only to the extent that any proposed sale agreement purports to sell or otherwise transfer anything other than the Debtor's reversionary interest that the Debtor has in the Final Judgment Deposit, which is currently held in

---

this Limited Objection in an abundance of caution because the deadline of March 31, 2023 to file objections to the sale has not been adjourned.

[3] The Debtors incorrectly identified the Final Judgment Deposit, at page 19 of their Schedules of Assets and Liabilities (Dkt. 323), as an 'Escrow Deposit" held by the firm of Wilson Elser Moskowitz Edelman, which has never appeared in either the Circuit Court or the Wisconsin Court of Appeals as counsel for VPX. The Final Judgment Deposit is, in fact, in the custody of the Clerk of the Circuit Court.

an account of the Clerk of the Court, bearing interest (the "Supersedeas Account"). Under the March 18th Order, the Debtor has a reversionary interest in any interest accruing on the Final Judgment Deposit. In addition, if the Debtor pursues the pending appeal (of which the Debtor obtained a stay order from the Wisconsin Court of Appeals on March 20, 2023 due to this ongoing bankruptcy), the Debtor may in the future obtain a right to obtain payment from the Clerk of the Court out of the Final Judgment Deposit, if it obtains an order of reversal and remittitur after appellate rights are exhausted.

Although the Supersedeas Account itself is not property of VPX's estate, other than with respect to the right to any interest accruing on the Final Judgment Deposit in the Supersedeas Account, it is possible that the Debtors will enter into an asset purchase agreement with a buyer that might include a definition of purchased assets encompassing "all assets other than as explicitly excluded." That would encompass, one assumes, both the reversionary interest in the accruing interest, and/or the potential future right to obtain payment upon entry of an order of reversal and remittitur. But it might also imply a purchase of more than those, and Webb does not want to be deemed to have waived the issue of characterization of the rights sold or otherwise transferred if more is implied or intended.

Therefore, the Debtors should only be permitted to sell or transfer these two limited property interests that it has in the Supersedeas Account (if that is its intention). However, even if the Court were to determine that the Supersedeas Account includes property of the estate, that property could not be sold free and clear of Webb's interests in it, as explained further below.

## BACKGROUND FACTS

1.     Webb was the exclusive distributor of VPX's energy drink products in parts of Wisconsin and Illinois from 2015 through 2019.

2.	Webb undertook significant efforts to promote and distribute VPX's products.

3.	In 2018, VPX, improperly and without notice, terminated Webb's exclusivity in certain counties Webb had previously been servicing.

4.	In 2019, VPX abruptly terminated the remainder of Webb's distribution agreement without notice.

5.	In June 2019, Webb sued VPX under Wisconsin's Fair Dealership Law, Wis. Stat. ch. 135, in an action styled as *Webb & Gerritsen, Inc. v. Vital Pharmaceuticals, Inc.*, Case No. 2019CV001049, pending in the Circuit Court for Waukesha County, Wisconsin (the "Wisconsin Action"). VPX raised counterclaims against Webb in the Wisconsin Action.

6.	On November 9, 2021, the court in the Wisconsin Action granted Webb's motion to enforce its prior discovery orders; struck VPX's answer denying liability for Webb's claims as a sanction for its violations of prior court orders; granted a default judgment on the issue of VPX's liability; and held that trial would proceed on the issue of damages. *See* Order Granting Plaintiff's Motion to Enforce Prior Court Orders Pursuant to Wis. Stat. § 804.12(2), attached hereto as Exhibit 1.

7.	On November 11, 2021, a jury found in favor of Webb in the Wisconsin Action and returned a verdict in the amount of $2,445,098.10 (net of VPX's counterclaims). *See* Verdict Form, attached hereto as Exhibit 2.

8.	On February 8, 2022, the court in the Wisconsin Action denied VPX's motions after verdict and entered a Judgment in favor of Webb in the amount of $2,445,098.10. *See* Order for Judgment and Judgment, attached hereto as Exhibit 3.

9.	On March 18, 2022, following VPX's motion for stay of execution and collection of the Judgment pending appeal, the court in the Wisconsin Action entered the March 18th Order,

4

including Webb's reasonable actual attorneys' fees and costs to be incurred in the Appeal, in the Judgment, resulting in a total Final Judgment of $2,897,098.10 in favor of Webb (the "Final Judgment"). *See* Order from Hearing on February 24, 2022, attached hereto as Exhibit 4.

10. The March 18th Order further provided that enforcement of the Final Judgment would be stayed until March 24, 2022, in order to allow VPX to either obtain a surety bond or deposit the amount of the Final Judgment with the Clerk of the Court, to secure Webb's collection ability from harm during the expected appeal.

11. The March 18th Order also provided that, if VPX deposited the Final Judgment Deposit with the Clerk of the Court, then the Clerk would place those funds in an interest-bearing account, and the interest accruing on that account would be property of VPX and revert to it following the conclusion of the appeal.

12. On March 22, 2022, VPX wired the Final Judgment Deposit of $2,897,098.10 to the Clerk of Court, who placed it in the Supersedeas Account, held at First Federal Bank for the benefit of Webb per the March 18th Order. See Payment Detail, attached hereto as Exhibit 5. VPX filed its appeal from the Final Judgment on March 25, 2022, Case No. 22-AP-488, in the Wisconsin Court of Appeals (the "Wisconsin Appeal").

13. The Debtors filed these Chapter 11 Cases on October 10, 2022, and filed the Sale Motion on January 27, 2023.

14. The Court entered an order approving the bidding procedures set forth in the Sale Motion on February 27, 2023 [Dkt. No. 854] (the "Bidding Procedures Order").

15. On March 17, 2023, VPX's counsel in the Wisconsin Appeal first notified the Wisconsin Court of Appeals of the pendency of these cases by filing a Notice of Bankruptcy in

the Wisconsin Appeal. *See* March 17, 2023 letter from James E. Goldschmidt of Quarles & Brady LLP, attached hereto as Exhibit 6.

16. Pursuant to that filing, on March 20, 2023, the Wisconsin Court of Appeals entered an order staying the Wisconsin Appeal. *See* Order Staying Case, attached hereto as Exhibit 7.

17. The Bidding Procedures Order set a deadline for the Debtors to file a motion to approve the sale to a stalking horse bidder no later than March 24, 2023 at 11:59 p.m. The Debtors did not file the motion or any documents identifying a stalking horse bidder by that date.

18. Webb believes that VPX sought to identify the funds in the Supersedeas Account as an asset of its estate, but it has improperly scheduled them an "Escrow Deposit" in the amount of $2,897,098.10, stating incorrectly that the funds are held by Wilson Elser Moskowitz Edelman, a firm that has no known connection to the Wisconsin Action or the Wisconsin Appeal. *See* Debtor's Schedule AB 7 Attachment, Dkt. No. 323, p. 19.

19. In fact, the Final Judgment Deposit is still being held in the Supersedeas Account held by the Waukesha County Clerk of Court at First Federal Bank, for the benefit of Webb.

## **LIMITED OBJECTION**

While the Debtors have not yet filed the proposed sale agreement, the Sale Motion indicates that the Debtors intend to sell substantially all of their assets free and clear of all claims and interests. Webb files this limited objection only with respect to the Final Judgment Deposit in the Supersedeas Account, to the extent the Debtors are seeking to sell or transfer the funds in that account.[4] The Supersedeas Account is not property of the estate, other than any reversionary interest VPX may hold in it, and therefore cannot be sold pursuant to Section 363 of the Bankruptcy

---

[4] Webb reserves its rights to file further objections to the Sale Motion and any proposed sale agreement or order if and when such documents are filed in this case.

6

Code. Any order approving a sale pursuant to the Sale Motion should exclude the Supersedeas Account from the assets to be sold.

A supersedeas bond or its cash equivalent is designed to protect the prevailing party against the insolvency or otherwise deterioration of the financial condition of the losing party during the pendency of its appeal, while the judgment creditor would otherwise be able to use execution and other post-judgment processes to collect the judgment from the losing party's assets.[5] *Carter Benson Drilling v. Excel Energy Corp.*, 75 B.R. 172, 173 (D. Colo. 1987). While bankruptcy courts throughout the country have addressed cash deposits held by courts in lieu of supersedeas bonds slightly differently, the ultimate result is the same: the prevailing party in litigation is protected from any other claims against the funds until the resolution of the appeals process. *See, e.g., Carter Benson*, 76 B.R. at 174 (holding that funds deposited with the court in place of a supersedeas bond were held *in custodia legis* and were not property of the estate, and thus available to the prevailing party upon the completion of the appellate process); *In re Vescovo*, 125 B.R. 468, 473-474 (cash held by the court pending an appeal is cash collateral, and while it was property of the estate it could not be used without consent of the counterparty or adequate protection, and without that, could not be released because the counterparty had a lien on it); *In re Snap Line Services, Inc.*, 594 B.R. 502 (Bankr. N.D. Ga. 2018) (holding that cash deposited with the court as security for an appeal created a "lien perfected in favor of the [prevailing party]" and no other creditor could lay claim to the funds). The Supersedeas Account should be similarly protected by this Court pending the outcome of the Wisconsin Appeal.

---

[5] Under Wisconsin law, a judgment creditor may collect a money judgment pending appeal, *see* Wis. Stat. § 815.04, unless the judgment debtor obtains a stay, *see* Wis. Stat. § 808.07(2)(a)2.

Even if the estate has an interest in the Supersedeas Account, the extent of that interest is determined under the applicable state law, which here is that of Wisconsin. *In re ANR Advance Transp. Co., Inc.*, 247 B.R. 771, 774 (Bankr. E.D. Wis. 2000) (finding that under Wisconsin law, funds deposited by the debtor in an escrow account for environmental remediation were not property of the estate because the debtor did not have rights to the funds prepetition under the escrow agreement). Here, Wisconsin law governs the extent of the Debtor's interest in the Supersedeas Account. Courts in Wisconsin routinely find that funds set aside for the protection of a party's interest are not property of the estate, other than any reversionary interest the debtor may hold. *See, e.g.*, *Matter of Lenk*, 48 B.R. 867 (W.D. Wis. 1985) (finding that funds deposited into a statutory trust to pay claims of those injured by uninsured drivers were not property of the bankruptcy estate of the depositor); *ANR*, *supra*, 241 B.R. 774; *In re Ryan*, 629 B.R. 616, 623 (Bankr. E.D. Wis. 2021), *aff'd Ryan v. Branko Prpa MD LLC*, 55 F.4th 1108, 1117 (7th Cir. 2022) (holding that funds deposited into an escrow account to pay medical providers as a result of a workers' compensation claim under Wisconsin law were not property of the estate, other than as to any reversionary interest after all expenses were paid).

While the definition of property of the estate under Section 541 of the Bankruptcy Code is broad, it is not unlimited. Rather, property of the estate only encompasses the debtor's claims in particular property and not the property itself. *Ryan* 55 F.4th at 1117-18. In other words, the estate takes its interest in the property subject to any limits on the debtor's use of that property. *Id.*; *see also Matter of Carousel Intern. Corp.*, 89 F.3d 359, 362 (7th Cir. 1996) (holding that funds paid by a purchaser of a debtor's assets directly to the debtor's shareholders in exchange for their agreement not to compete was not property of the bankruptcy estate because the debtor had no interest in those funds even though they arose from the sale of the debtor's business); *In re*

8

*Southwest Florida Heart Group, P.A.*, 342 B.R. 639, 644 (Bankr. M.D. Fla. 2006) (holding that the debtor's leasehold interest in certain real property was property of the estate, but that trustee was not permitted to sell the real estate because the real estate itself was not property of the estate). Here, at best, the Debtor owns the interest accruing in the Supersedeas Account (which, pursuant to the Wisconsin court's March 18th Order is subject to release to the Debtor at the end of the appeal process), and a reversionary interest in the funds if it prevails in the Wisconsin Appeal. Those are the only property interests that VPX has in the Supersedeas Account and all that is potentially available for the Debtors to sell.

The Debtors have not addressed how they will fulfill the requirements of Section 363(f) in order to be able to sell their assets free and clear of all claims and interests. *See* Sale Motion, ¶49 (stating the Debtors intend to demonstrate at the Sale Hearing that they have satisfied 363(f)). It is unclear what assets the Debtors will seek to sell at this time because they have not filed a draft sale agreement or any information about a potential purchaser. However, as to the Supersedeas Account, Webb does not consent to the sale of its interest free and clear of liens. To the extent the Supersedeas Account is included in the Debtor's eventual sale of its assets and the Debtors identify how they intend to satisfy 363(f) as to the Supersedeas Account, Webb reserves its rights to further object to the sale.

## **CONCLUSION**

Webb obtained the Judgment 14 months ago and was prevented from executing on it, including executing on the Debtor's assets, obtaining judgment liens against the Debtor's property, or otherwise collecting the Judgment, because the Debtor placed the Final Judgment Deposit into the Supersedeas Account for the sole benefit of Webb, to secure Webb's rights in the Judgment. The purpose of that account is to protect Webb, *and only Webb*, from the risk of the Debtor's delay,

deteriorating financial condition, and insolvency. To the extent such relief is intended, the Debtors should not be permitted to sell the Supersedeas Account as potentially contemplated in the Sale Motion, and the Court should deny the Sale Motion to the extent it seeks such relief.

Dated:  March 31, 2023    Respectfully submitted,

                                      FOLEY & LARDNER LLP

                                      By: /s/ Mark J. Wolfson
                                      Mark J. Wolfson (FL Bar No. 0352756)
                                      *Counsel to Webb & Gerritsen, Inc.*
                                      100 North Tampa Street
                                      Suite 2700
                                      Tampa, Florida 33609
                                      (813) 225-4119
                                      mwolfson@foley.com