UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

In Re:

VITAL PHARMACEUTICALS, INC., et al     CHAPTER 11

                                                       Case No.: 22-17842-PDR

         Debtor.

_____/     (Joint Administration)

## NOTICE OF FILING DOCUMENTS IN SUPPORT OF LIMITED CONTRACT OBJECTION [ECF NO. 1053]

VS Carbonics, Inc. ("VS"), by and through counsel and in support of the *Limited Contract Objection* [ECF No. 1053] hereby files the following:

1. November 11, 2019, Sale and Rental Agreement between Vital Pharmaceuticals, Inc. ("Vital") and VS.  A copy is attached hereto as **Exhibit A.**

2. August 31, 2020 First Amendment to the Sale and Rental Agreement.  A copy is attached hereto as **Exhibit B.**

3. June 15, 2021, Second Amendment to the Sale and Rental Agreement.  A copy is attached hereto as **Exhibit C.**

4. January 26, 2022, Third Amendment to the Sale and Rental Agreement.  A copy is attached hereto as **Exhibit D.**

Respectfully submitted on March 31, 2023.

**DGIM Law, PLLC**
*Counsel for the VS Carbonics, Inc.*
2875 NE 191st Street, Suite 705
Aventura, FL 33180
Phone: (305) 763-8708

*/s/ Isaac Marcushamer*
Isaac Marcushamer, Esq.
Florida Bar No. 0060373

isaac@dgimlaw.com
Monique D. Hayes, Esq.
Florida Bar No. 0841573
monique@dgimlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that, on this March 31, 2023 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that a true and correct copy of the foregoing was served via CM/ECF electronic transmission upon those parties who are registered with the Court to receive notifications in this matter.

*/s/ Isaac Marcushamer*
Isaac Marcushamer

# EXHIBIT A



Reference Number: 000240

## Customer Information & Terms

**Seller:**
VS Carbonics Inc.
3491 NW 79th Street
Miami Florida 33147
(305) 215-2833

**Purchaser:**
Vital Pharmaceuticals Inc. d/b/a VPX Sports
1600 N Park Drive
Weston Florida 33326

**Terms:**
Initial Term: 2 years (24 Months)
Date: 12-1-2019
Payment Terms: Net 30 Days

**Consuming Location:**
Vital Pharmaceuticals Inc. d/b/a VPX Sports
1600 N Park Drive
Weston Florida 33326

| Product | Line Item Description | Quantity | Unit Price | Amount | Frequency |
|---|---|---|---|---|---|
| 20 Ton ISO CO2 Horizontal Mobile Storage Unit Rental | Rental is for 24 months (2 years). | 1.00 | $2400.00 | $2400.00 | Monthly |
| 60 Kw Liquid to Process Vaporizer Rental | Rental is for 24 Months (2 years). | 1.00 | $350.00 | $350.00 | Monthly |
| UN1013 Bulk CO2 Fills | | 1.00 | $0.189 cents/lb. | $0.189 cents/lb. | Per Delivery |
| Bulk CO2 Delivery Fee | | 1.00 | $75.00 | $75.00 | Per Delivery |
| Bulk CO2 Hazmat Fee | | 1.00 | $50.00 | $50.00 | Per Delivery |

Taxable Amount  $2,750.00    7% Tax    $192.50

BY SIGNING BELOW, PURCHASER ACKNOWLEDGES AND ACCEPTS THIS PROPOSAL ALONG WITH THE GENERAL TERMS AND CONDITIONS, WHICH TOGETHER FORM THE SALES AGREEMENT ("AGREEMENT") BETWEEN SELLER AND PURCHASER, AND PURCHASER REPRESENTS THAT HE/SHE IS DULY AUTHORIZED TO SIGN THIS AGREEMENT

## Signatures

Seller: VS Carbonics
Signature
Name: MICHAEL MURPHY   COO
Date: 11/12/19

Purchaser: Vital Pharmaceuticals Inc. d/b/a VPX Sports
Signature
Name: Marc J. Kesten   GENERAL COUNSEL
Date: November 11, 2019



Reference Number: 000240

**General Terms and Conditions**

These General Terms and Conditions, in combination with the Proposal, form a Sales Agreement ("Agreement") by and between VS Carbonics, Inc. ("Seller") and Purchaser as of the date of the Proposal (the "Effective Date"). Seller and Purchaser, intending to legally bind themselves, hereby agree as follows:

1. **Agreement's Purpose and Initial and Renewal Term(s):** Seller offers to sell to Purchaser and Purchaser agrees to purchase from Seller Purchaser's entire present and future requirements of the liquids and gases ("Products") listed in the Proposal or any amendments hereto for use in connection with Purchaser's operations now or hereafter at the Consuming Location(s) or at any of Purchaser's other existing or new locations within Seller's service coverage area while this Agreement is in effect. This Agreement shall be binding upon signature by both parties and effective as of the Effective Date. The initial term of this Agreement begins on the Effective Date, or on the date of delivery of the first System to Purchaser, whichever is later (the "Initial Term"), and it shall automatically renew on the same terms and conditions stated herein for terms equal in length to the Initial Term ("Renewal Term") thereafter until terminated by either party upon written notice of termination made at least six (6) months before the end of the Term ("Term" shall include the Initial Term and/or any Renewal Term, as applicable).

2. **Deliveries, Access, and Product Measurement:** Delivery terms shall be FOB Seller's delivery vehicle. Title and risk of loss or damage as to Product(s) shall pass to Purchaser upon delivery by Seller. Purchaser shall furnish at each Consuming Location a site that is accessible to Seller and Purchaser at all times, but inaccessible to all others ("Site"). The Site must not only be secure, but satisfactory for delivery and storage, control and vaporization of all Products, including proper foundations for storage tanks, fences, pipelines and other equipment necessary for the safe storage and distribution of Product from the Site to all points of consumption. If Seller's delivery vehicle is denied access to the Site or equipment, Purchaser shall be responsible for all delay costs Seller incurs. Deliveries that Seller makes during a strike or other labor disturbance affecting Purchaser shall be at Purchaser's sole risk. Seller shall measure Product when it delivers Product to the equipment at the Site. Billings for gas shall be made in cubic feet, billings for liquids shall be made in liters, and billing for CO2 shall be made in pounds.

3. **Bulk Storage System**

   a) Seller shall:

   - Deliver to the Consuming Location(s), at Purchaser's sole expense, cylinder(s) or storage tank(s) that are reasonably adequate to meet Purchaser's Estimated Monthly Volume (the "System(s)"). The System(s) may include safety and control apparatus and other devices and systems up to but excluding the point of connection with Purchaser's piping but shall not include any storage vessel or system owned by Purchaser.

   - Maintain said System(s) according to Seller's standard practices and conduct an annual safety inspection of each System at Purchaser's expense.

   - Have the right to remove said System(s) from the Consuming Location and substitute therefor a System(s) of appropriate type and size if, in the sole opinion of Seller, Purchaser's monthly consumption of Product(s) changes significantly or if the System(s) requires maintenance that cannot be performed at the Consuming Location in a safe and/or practical manner.

   b) Purchaser shall, at Purchaser's sole cost and expense:

   - Provide and maintain at all times a clean and safe Site acceptable to Seller and a concrete foundation(s) or other improved area(s) meeting all Federal, state and local requirements for placement of the System(s) and delivery and storage of the Products(s). Such site shall be free from overhead and underground obstacles. Seller shall have unobstructed access to the System(s) at all times.

   - Place such System(s) upon concrete foundation(s) or other improved area(s) acceptable to Seller and connect said System(s) to piping installed by Purchaser. The bulk rental monthly service charges shall commence upon the delivery of the System(s) by Seller to Purchaser.

   - Provide fencing and security around the System(s) and prevent unauthorized persons from tampering with, repairing, moving or accessing the System(s). Purchaser shall provide and/or reimburse Seller for the costs and expenses of any certificates, permits, governmental or insurance company annual inspection fees for the System(s). System(s) shall remain in the sole and exclusive possession of Purchaser for the Term unless removed by Seller. If Purchaser is not the fee simple owner of the Consuming Location, Purchaser shall obtain and deliver to Seller a waiver of rights in the System(s) executed by the fee simple property owner.

   - Install and maintain in good condition all piping, connections and apparatus necessary for distribution of Product(s) from the System(s).

   - Furnish and pay for lighting, water, telephone lines, power and steam and other applicable utilities as required for the System(s). Purchaser shall reimburse Seller for any additional costs (including engineering costs) required to design, certify, or make changes to any existing or new foundation for the placement of the System(s).

   - Grant to Seller and Seller's representatives' access to System(s) at all times.

   - Notify Seller immediately of any unsafe or irregular condition involving the System, including any damage to, malfunction of or changes in the System(s). Purchaser shall not tamper with, modify or repair the System(s).

   - Provide an access roadway and area adjacent to all System(s) acceptable to Seller to facilitate delivery of Product(s) and the parking of Seller's delivery vehicles. If the Product is liquid oxygen, the aforementioned hard surface must be constructed of concrete.

   - Prohibit the use or storage of oil, grease or lubricants or any flammable or combustible materials in, on or near the System and/or the related concrete area.

   - Comply with all applicable laws, regulations, rules and ordinances concerning Seller's delivery and Purchaser's installation, use and storage of the Product(s) and System(s) including, but not limited to, zoning, licensing, permitting and all relevant reporting obligations under the Emergency Planning and Community Right To Know Act of 1986 resulting from the presence of the Product(s) supplied under this Agreement.





Reference Number: 000240

- Reimburse Seller at Seller's then prevailing rates for the cost of any temporary System(s) used during installation, modification and/or relocation of the System(s).

- Pay to Seller its costs to i) deliver and remove the System(s) to/from the Consuming Location(s) from/to the point of storage or manufacture, as the caser may be; ii) inspect the System(s) as required by applicable law; and (iii) to provide labor, parts, and materials for any service call made by Seller for any reason except for routine maintenance upon System by Seller.

c) Notwithstanding the manner in which the System(s) may be affixed to any real property, the System(s) shall be deemed to be personal property and not a fixture. Purchaser shall not suffer or allow said System(s) to become subject to any lien, claim or encumbrance. Purchaser shall not remove any labels or evidence of ownership affixed to the System(s). Title to all System(s) shall at all time remain with Seller and, upon termination or expiration of this Agreement, Purchaser grants to Seller the right to access the Consuming Location and to remove the System(s) at Purchaser's expense without notice or consent. Purchaser grants to Seller a security interest in all System(s) delivered by Seller at any Consuming Location and consents to Seller and/or its affiliates filing UCC financing statements regarding such System(s).

d) If, in Seller's opinion, additions and/or modifications to the System(s) are required or the System(s) should be relocated (whether due to changes in Purchaser's methods or locations of use, changes in the accessibility to the System(s), or change required by law), Seller may, after giving Purchaser an opportunity to comments, make such addition, modification and/or relocation at Purchaser's expense. In such event, the Service Charge may be increased or decreased in accordance with Seller's then prevailing prices and rates for such additional or different System(s) and a new Renewal Term shall begin from the date the addition, modification and/or relocation is completed.

e) IT IS EXPRESSLY AGREED THAT, UNTIL THE SYSTEM(S) ARE RETURNED TO SELLER, ALL RISK OF LOSS OR DAMAGE TO THE SYSTEM(S) IS HEREBY ASSUMED BY PURCHASER (REGARDLESS OF THE CAUSE OR ANY DEGREE OF NEGLIGENCE BY SELLER OR FOR BREACH OF WARRANTY OR CONTRACT OR FOR STRICT LIABILITY) UNLESS CAUSED BY THE GROSS NEGLIGENCE OR WILFUL MISCONDUCT OF SELLER. FOR SYSTEM(S) DAMAGED BEYOND REPAIR, PURCHASER SHALL PAY TO SELLER, ON DEMAND, THE FULL REPLACEMENT VALUE OF THE SYSTEM(S) AT SELLER'S THEN CURRENT VALUATIONS. FOR DAMAGE TO SYSTEM(S) THAT SELLER IS ABLE TO REPAIR, PURCHASER SHALL PAY SELLER THE ACTUAL COSTS OF THE REPAIRS. PURCHASER COVENANTS THAT IT SHALL MAINTAIN ADEQUATE FIRE AND EXTENDED INSURANCE COVERAGE FOR THE BENEFIT OF SELLER COVERING SUCH SYSTEM(S).

f) If Purchaser's requirements for Product(s) cease to exist prior to the expiration of the Term for any reason, Purchaser shall reimburse Seller for the costs of removing the System(s). However, the removal of the System(s) shall not be deemed to be a termination of the Agreement.

g) In the event that Purchaser requests that Seller deliver Product(s) to Purchaser's bulk storage system, Purchaser shall be solely liable for the maintenance of the system, provide adequate training to Seller's delivery personnel regarding the system, indemnify and defend Seller from any and all claims arising as a result of Seller's delivery of Product(s) into the system and otherwise comply with the applicable requirements of Section 3(b) regarding the Purchaser's system.

4. **Default and Remedies.**

a) . Any of the following shall be considered a "Default": (i) either party commits a breach of any of its respective representations, duties or obligations arising under this Agreement and fails to cure such breach within 30 days after being notified by the non-breaching party of said breach; or (ii) a petition is brought by or against either party under any bankruptcy or insolvency laws seeking any reorganization, arrangement, liquidation, dissolution or similar relief (hereinafter, "Insolvent Party") with respect to the Insolvent Party or the Insolvent Party shall make an assignment for the benefit of creditors or if a receiver is appointed for the Insolvent Party.  To the extend any such breach cannot be cured, any breach described above shall be deemed a Default five business (5) days after the breaching party is given notice of a breach.

b) If a Default has occurred and is continuing, Seller may exercise any or all of the following remedies without notice or leave of court: (i) terminate this Agreement upon five (5) business days' notice, (ii) remove the cylinders, storage tanks, equipment and/or System(s) from the Consuming Location(s), (iii) disable the cylinders, storage tanks and/or System(s) to prevent the consumption of Product(s) by Purchaser, (iv) cease making deliveries of Product(s) to Purchaser, (v) impose new payment terms, including cash on delivery, (vi) bring an action at law or in equity against Purchaser, or (vii) exercise any other right or remedy available to Seller. In the event of a Default, Purchaser agrees to pay to Seller liquidated damages equivalent to the amount that Purchaser would have paid to Seller for the monthly rental service charges for the System(s) on the Proposal for the remainder of the Term or a twelve (12) month period, whichever is longer.

c) IF ANY PRODUCT(S) SHALL NOT BE AS WARRANTED, PURCHASER SHALL NOTIFY SELLER IN WRITING AND SHALL BE PERMITTED TO REJECT THE NONCONFORMING PRODUCT(S). FAILURE OF PURCHASER TO GIVE NOTICE TO SELLER OF A CLAIM BASED ON THE PRODUCT(S) DELIVERED HEREUNDER WITHIN FIFTEEN (15) DAYS FROM RECEIPT OF THE PRODUCT(S) IN QUESTION SHALL CONSTITUTE AN UNCONDITIONAL WAIVER BY PURCHASER OF ALL CLAIMS WITH RESPECT TO SUCH PRODUCT(S). PURCHASER'S SOLE AND EXCLUSIVE REMEDY FOR EACH UNEXCUSED FAILURE OF SELLER TO DELIVER PRODUCT(S) TO PURCHASER (i) WHEN REQUESTED BY PURCHASER, (ii) IN THE AMOUNTS REQUESTED BY PURCHASER, AND/OR (iii) OTHERWISE CONFORMING TO THE EXPRESS WARRANTIES MADE BY SELLER HEREUNDER, SHALL BE TO OBTAIN, AT NO CHARGE, A QUANTITY OF PRODUCT(S) FROM SELLER WHICH SELLER SO FAILED TO DELIVER.

5. **Excused Non-Performance, Including Product Shortages.** Either party's performance (except to pay money when due) shall be subject to events that are beyond a party's reasonable control (including, but not limited to, floods, strikes, carrier delays, inability to obtain power, fuel or raw materials, abnormal demand, failure of normal supply sources, governmental action, etc.). If Seller's current production network cannot reasonably meet all of Seller's customers' demands, then Seller may divide the available production among its various purchasers. Seller shall then exercise reasonable efforts to obtain replacement Products from other sources on a temporary basis until sufficient Products are again available. Seller shall promptly notify Purchaser of the foregoing and Purchaser may decline any such temporary replacement Products to the extent that such production is so unavailable, but Purchaser shall pay all additional costs associated with any such Products that it accepts, in the form of surcharges as defined in Section 8 below.

6. **Payment Terms and Pricing. (a)** Purchaser shall pay for Product(s), System(s), charges, assessments, surcharges and fees without set-off or

VS Carbonics Inc.               3491 NW 79th Street * Miami Florida 33147 * (305) 215-2833                 Initial



Reference Number: 000240

deduction within the payment terms listed on the Proposal, plus interest at 1.0 % per month on any past-due amounts, whichever is lower. (b) Purchaser shall pay any tax, assessment or excise imposed by any present or future law or by any governmental authority, and surcharges for increases in the cost of energy, raw materials or feedstock related to the production or delivery of any Product(s) or System(s). Purchaser shall pay any Seller drayage charges for Products delivered, including fuel costs, and a hazardous material compliance charge. No such assessments, surcharges or charges, or any increases in same, shall constitute "price changes" or "cost increases" under Section 8, below. All fuel gas prices shall be in effect at the time of delivery and are subject to monthly revisions without advance notice. (c) If Seller believes that Purchaser may be unable to make payments when due, Seller may require Purchaser to pay for deliveries in advance and pay any outstanding indebtedness before making any further deliveries. Seller may apply any credit or amount that Seller may owe Purchaser towards the payment of any amount owed to it.

7. **Prices:** The price(s) of Products, System(s) rental charges, assessments, surcharges, and fees (the "Prices") are contained in the executed Proposal which shall be binding on the parties and made a part of this Agreement

8. **Price Changes:** Cost increases may require Seller to revise Product Prices. Such increases shall become effective twenty (20) days after written notice to Purchaser. If, however, within twenty (20) days of such notice, Purchaser provides Seller with a copy of a bona fide firm written offer from a reputable competitor to sell Purchaser Products of the same quantities and quality under similar circumstances, at prices lower than Seller's revised Prices, Seller shall have twenty (20) days to either meet the lower prices or revert back to its previous Prices. If Seller does not opt to so adjust or maintain its previous Prices, Purchaser may terminate this Agreement upon thirty (30) days written notice.

9. **Duty to Warn and Indemnify.** Purchaser acknowledges receipt of the Material Safety Data Sheets that describe the Product(s). Purchaser also acknowledges that it has full knowledge of the potential hazards associated with storing, distributing and using the Product(s). Purchaser hereby assumes the duty to warn and train its personnel and all other third parties on its premises of such potential hazards. Purchaser agrees to defend, indemnify and hold harmless Seller, its wholly owned subsidiaries and other affiliates, and each of their respective owners, directors, officers, employees, successors and assigns ("Indemnified Parties") against all claims, demands, and causes of action (including reasonable attorney fees and court costs) of any kind asserted against the Indemnified Parties by any third party for personal injury, death, or loss of or damage to property resulting from Purchaser's or Seller's delivery, installation, use and storage of Product(s) and System(s) under this Agreement, except that Purchaser shall not indemnify or hold Seller harmless for any claims, demands, and causes of action which are the sole result of gross negligence or willful misconduct on the Seller's part.

10. **Representations and Warranties.**

    a) Seller warrants that the Product(s) delivered to Purchaser shall comply with Seller's standard specifications. **SELLER MAKES NO OTHER WARRANTY OR ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THOSE ARISING UNDER THE UNIFORM COMMERCIAL CODE ("UCC"), THE IMPLIED WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE, EVEN IF SELLER IS AWARE OF THE INTENDED PURPOSE OF THE PRODUCT(s).**

    b) Purchaser represents and warrants that, through the Term, it has the unrestricted right to enter into this Agreement and to satisfy all obligations hereunder, and it is not obligated to buy any Product(s) for use at the Consuming Location(s) from any third party. Purchaser shall indemnify Seller against any and all costs, expenses and damages (including, but not limited to, attorneys' fees) should the foregoing representations be inaccurate. Purchaser also represents and warrants that all requisite approvals have been obtained authorizing the execution of and performance under this Agreement.

11. **Limitations of Liability.** IN NO EVENT SHALL SELLER BE LIABLE TO PURCHASER FOR ANY INCIDENTAL, SPECIAL, INDIRECT, PUNITIVE, LIQUIDATED OR CONSEQUENTIAL DAMAGES, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS OR BUSINESS OPPORTUNITY OR INTEREST, EVEN IF ADVISED OF THE POSSIBILITY OF THOSE DAMAGES. NOTWITHSTANDING THE FOREGOING OR ANYTHING TO THE CONTRARY HEREIN OR IN ANY OTHER DOCUMENT, EXCEPT FOR PERSONAL INJURY CAUSED SOLELY AND DIRECTLY BY SELLER'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, SELLER'S AGGREGATE LIABILITY FOR ANY DAMAGES HOWSOEVER OCCURING, WHETHER BASED IN TORT, WARRANTY, STRICT LIABILITY, NEGLIGENCE OR ANY OTHER THEORY OF LAW SHALL BE LIMITED TO AND NOT EXCEED THE PAYMENT, IF ANY, RECEIVED BY SELLER FOR THE QUANTITY OF PRODUCT(S) WHICH FAILED TO MEET SPECIFICATIONS OR WHICH WAS NOT DELIVERED OR SERVICE FURNISHED OR TO BE FURNISHED, AS THE CASE MAY BE, WHICH IS THE SUBJECT OF SUCH CLAIM OR DISPUTE, EVEN IF A TERM OF THE AGREEMENT FAILS OF ITS ESSENTIAL PURPOSE. PURCHASER AGREES THAT THE FOREGOING EXCLUSION AND LIMITATION IS A REASONABLE ALLOCATION OF RISK. NO ACTION, REGARDLESS OF FORM, ARISING OUT OF, OR IN ANY WAY CONNECTED WITH THE PRODUCT(S), SYSTEM(S) OF THIS AGREEMENT MAY BE BROUGHT BY PURCHASER MORE THAN NINETY (90) DAYS AFTER THE CAUSE OF ACTION HAS ACCRUED.

12. **Insurances.** Purchaser shall furnish and maintain minimum coverages of $1,000,000 per occurrence/$2,000,000 aggregate through General Liability and/or Excess/Umbrella Liability and a certificate of insurance evidencing the above required coverage that names VS Carbonics, Inc. as an "Additional Insured", stating that such coverage is "primary to any other insurance, and includes a waiver of subrogation in favor of VS Carbonics, Inc." The coverage provided by such policies must be at least as broad as that provided to the first named insured on each policy. All insurance policies shall expressly require thirty (30) days written notice to Seller at the address set out in the Proposal, of the cancellations or material alternations of such policies, and the certificates of insurance shall provide the same. The limits of insurance are minimum limits only; in the event Purchaser's policies provide greater limits, then the Additional Insureds shall be entitled to, or to share in, the full limits of such policy, and this Agreement shall be deemed to require such full limits. Seller shall furnish and maintain minimum coverage of $1,000,000 per occurrence/$2,000,000 aggregate through General Liability and/or Excess/Umbrella Liability and a certificate of insurance evidencing the above required coverage that names Vital Pharmaceuticals Inc. d/b/a VPX Sports as an "Additional Insured".

13. **Miscellaneous Contractual Provisions.** (a) This Agreement shall bind Seller only when signed by a duly authorized Seller representative. It constitutes the entire agreement between the parties relating to the sale and purchase of Products and rental of System(s) at the Consuming Location(s). (b) This Agreement may be modified only in a written document that both Parties sign specifically stating their intent to modify this

VS Carbonics Inc.                    3491 NW 79th Street * Miami Florida 33147 * (305) 215-2833                    Initial



Reference Number: 000240

Agreement. Purchaser may use purchase orders, acknowledgments or other documents to order Products or System(s), acknowledge or specify delivery times and/or quantities, and otherwise conduct business under this Agreement, but any provisions contained therein are not intended to and will not modify any of this Agreement's terms, even if signed or accepted on behalf of Seller. **(c)** This Agreement shall inure to the benefit of the Parties and their respective successors and assigns. **(d)** If any of this Agreement's provisions is held to be invalid or unenforceable in whole or in part, that provision shall be severed from the Agreement and replaced by a valid, enforceable or legal provision containing terms as nearly like the severed provision as possible and the Agreement, as so modified, shall remain in full force and effect. **(e)** If a legal or equitable proceeding is instituted by either party against the other party to enforce its rights hereunder, the prevailing party shall be entitled to recover from the other party its costs and expenses (including attorney's fees and court costs). **(f)** This agreement shall be governed by and construed in accordance with the laws of the State of Florida without regard to conflict of laws principles. The parties hereto agree to consent to the exclusive jurisdiction of the courts located in Broward County, FL with regard to any dispute arising hereunder and waive their right to request arbitration. **(g)** The provisions of Sections 9, 11 and 12 shall survive the termination or expiration of this Agreement. This Agreement may be executed in any number of counterparts, the combination of which shall be construed as the entire executed Agreement.

VS Carbonics Inc.     3491 NW 79th Street * Miami Florida 33147 * (305) 215-2833     Initial 

# EXHIBIT B



## AMENDMENT #1 TO
## BULKSALE AGREEMENT BY AND BETWEEN
## VS CARBONICS INC. AND VITAL PHARMACEUTICALS INC. D/B/A VPX SPORTS

WHEREAS, VS Carbonics Inc. ("Seller") and Vital Pharmaceuticals Inc. (d/b/a VPX Sports) ("Buyer"), entered into a Bulk Product Sale Agreement with reference date of November 11th 2019 and reference number: 000240 for the purchase by Buyer, and furnishing by Seller of, industrial, specialty gas supply and rentals (the "Agreement") and;

WHEREAS, the parties further desire to amend the Agreement to which this Amendment is attached as set forth herein.

NOW THEREFORE, effective as of August 15th, 2020, for and in consideration of the mutual covenants and premises set forth in said agreement, and intending to be legally bound thereby, the parties agree as follows:

1. The 20-ton ISO container is replaced with a 6-ton vertical foam insulated CO2 storage tank and liquid refrigeration condensing unit to be placed at 20351 Sheridan Street, Fort Lauderdale FL 33332.
2. The 60 Kw liquid to process vaporizer to be relocated to 20351 Sheridan Street, Fort Lauderdale FL 33332.
3. The initial term of the agreement is hereby extended for 3 years from the date signed of this addendum.
4. The rental price changes from $2750.00 per month plus applicable sales tax to $1990.00 per month plus applicable sales tax.
5. CO2 bulk delivery fills change from $0.189 cents to $0.220 cents per lb. Prices based on customer quoted estimated volumes of 2.75 tons per week + or – 20 %.
6. Delivery and Hazmat fees change from $75 per delivery / $50 Hazmat to $50 per delivery / $25 Hazmat.

Except as set forth herein, all terms and conditions of this agreement remain in full force and effect. This Amendment may be executed in counterparts, each of which shall be an original and both of which taken together shall constitute the same instrument. Transmission by facsimile, email or other form of electronic transmission of an executed counterpart of this Amendment shall be deemed to constitute due and sufficient delivery of such counterpart and legal, valid and binding execution by such party.

IN WITNESS WHEREOF, the parties, by their authorized representatives, have duly executed this Amendment.

**BUYER:**
VITAL PHARMACEUTICALS INC.
D/B/A VPX SPORTS
By: _____
Name: John H. Owoc
Title: CEO & CSO
Date: 8.28.2020

**SELLER:**
VS CARBONICS INC.
By: _____
Name: MICHAEL MURRAY
Title: COO
Date: 8/31/2020



Liquid Nitrogen    CO2    Cylinder Sales         Gas Blends    Dry Ice    Carbonation Systems

# EXHIBIT C



## AMENDMENT #2 TO
## BULKSALE AGREEMENT BY AND BETWEEN
## VS CARBONICS INC. AND VITAL PHARMACEUTICALS INC. D/B/A VPX SPORTS

WHEREAS VS Carbonics Inc. ("Seller") and Vital Pharmaceuticals Inc. (d/b/a VPX Sports) ("Buyer"), entered into a Bulk Product Sale Agreement with reference date of November 11th, 2019, and reference number: 000240 for the purchase by Buyer, and furnishing by Seller of, industrial, specialty gas supply and rentals (the "Agreement") and.

WHEREAS the parties further desire to amend the Agreement to which this Amendment is attached as set forth herein.

NOW THEREFORE, effective as of June 15th 2021, for and in consideration of the mutual covenants and premises set forth in said agreement, and intending to be legally bound thereby, the parties agree as follows:

1. 6-ton vertical foam insulated $CO_2$ storage tank and liquid refrigeration condensing unit placed at 20351 Sheridan Street, Fort Lauderdale FL 33332.
2. The 60 Kw liquid to process vaporizer located to 20351 Sheridan Street, Fort Lauderdale FL 33332.
3. The rental price for the $CO_2$ storage tank and liquid to process vaporizer remain the same at $1990.00 per month plus applicable sales tax.
4. $CO_2$ bulk delivery fills remain the same at $0.250 cents per lb. Prices based on customer quoted estimated volumes of 2.75 tons per week + or – 20 %.
5. Delivery and Hazmat fees remain the same at $50 Hazmat Fee and $75 per delivery.
6. Liquid Nitrogen 2000-liter Microbulk 522 PSI stainless steel tank to be placed at 20351 Sheridan Street, Fort Lauderdale FL 33332.
7. The rental price for the Liquid Nitrogen storage tank to be at $695.00 per month plus applicable sales tax.
8. Liquid Nitrogen fills to be at $1.42 per 100 SCF plus Delivery fee of $75 and Hazmat fee of $50.
9. The initial term of the agreement is hereby extended for 4 years from the date signed of this addendum.

Except as set forth herein, all terms and conditions of this agreement remain in full force and effect. This Amendment may be executed in counterparts, each of which shall be an original and both of which taken together shall constitute the same instrument. Transmission by facsimile, email or other form of electronic transmission of an executed counterpart of this Amendment shall be deemed to constitute due and sufficient delivery of such counterpart and legal, valid and binding execution by such party.

Liquid Nitrogen    CO2    Cylinder Sales    Gas Blends    Dry Ice    Carbonation Systems





IN WITNESS WHEREOF, the parties, by their authorized representatives, have duly executed this Amendment.

**BUYER:**
VITAL PHARMACEUTICALS INC.
D/B/A VPX SPORTS

By: _(signed)_
Name: Eugene S. Bukov Jr.
Title: EVP of Sales
Date: 6/15/2021

**SELLER:**
VS CARBONICS INC.

By: _Mike Murray_ (DocuSigned by: 1909CC621A6F432...)
Name: Mike Murray
Title: COO
Date: 6/16/2021

# EXHIBIT D



# AMENDMENT #3 TO
# BULKSALE AGREEMENT BY AND BETWEEN
# VS CARBONICS INC. AND VITAL PHARMACEUTICALS INC. D/B/A VPX SPORTS

WHEREAS VS Carbonics Inc. ("Seller") and Vital Pharmaceuticals Inc. (d/b/a VPX Sports) ("Buyer"), entered into a Bulk Product Sale Agreement with reference date of November 11th, 2019, and reference number: 000240 for the purchase by Buyer, and furnishing by Seller of, industrial, specialty gas supply and rentals (the "Agreement") and.

WHEREAS the parties further desire to amend the Agreement to which this Amendment is attached as set forth herein.

NOW THEREFORE, effective as of October 10th 2021, for and in consideration of the mutual covenants and premises set forth in said agreement, and intending to be legally bound thereby, the parties agree as follows:

1. 6-ton vertical foam insulated CO2 storage tank and liquid refrigeration condensing unit placed at 20351 Sheridan Street, Fort Lauderdale FL 33332.
2. The 60 Kw liquid to process vaporizer located to 20351 Sheridan Street, Fort Lauderdale FL 33332.
3. Liquid Nitrogen 2000-liter Microbulk 522 PSI stainless steel tank located at 20351 Sheridan Street, Fort Lauderdale FL 33332.
4. Liquid Nitrogen 4000-Gallon storage tank **to be placed** at 20351 Sheridan Street, Fort Lauderdale FL 33332.
5. 6-ton vertical foam insulated CO2 storage tank **to be placed** at 20351 Sheridan Street, Fort Lauderdale FL 33332.
6. The initial term of the agreement is hereby extended for 4 years from the date signed of this addendum.

| Tanks and Equipment | Current Rental Pricing | New Rental Pricing |
|---|---|---|
| 6-ton vertical foam insulated CO2 storage tank with 60 Kw liquid to process vaporizer | $1990.00 / Month | Same |
| Liquid Nitrogen 2000-liter Microbulk steel tank | $695.00 / Month | Same |
| Liquid Nitrogen 4000-Gallon storage tank | N/A | $1500.00 / Month |
| 6-ton vertical foam insulated CO2 storage tank | N/A | $900.00 / Month |

| Deliveries and Fill Pricing | Current Pricing | New Pricing |
|---|---|---|
| Delivery Fee | $75.00 per delivery | Same |
| Hazmat Fee | $50.00 per delivery | Same |
| Co2 Bulk Delivery Fills | $0.250 cents per lb. | $0.230 cents per lb. |
| Liquid Nitrogen Delivery Fills | $1.42 per 100 SCF | $1.38 per 100 SCF |



Liquid Nitrogen    CO2    Cylinder Sales         Gas Blends    Dry Ice    Carbonation Systems



Except as set forth herein, all terms and conditions of this agreement remain in full force and effect. This Amendment may be executed in counterparts, each of which shall be an original and both of which taken together shall constitute the same instrument. Transmission by facsimile, email or other form of electronic transmission of an executed counterpart of this Amendment shall be deemed to constitute due and sufficient delivery of such counterpart and legal, valid and binding execution by such party.

IN WITNESS WHEREOF, the parties, by their authorized representatives, have duly executed this Amendment.

**BUYER:**
VITAL PHARMACEUTICALS INC.
D/B/A VPX SPORTS

By: _____
Name: Eugene S. Bukovi, Jr.
Title: EVP of Sales
Date: 1/26/2022

**SELLER:**
VS CARBONICS INC.

By: _____
Name: _____
Title: _____
Date: _____



**Liquid Nitrogen**    **CO2**    **Cylinder Sales**         **Gas Blends**    **Dry Ice**    **Carbonation Systems**