# <u>Exhibit 1</u>

STATE OF WISCONSIN        CIRCUIT COURT        WAUKESHA COUNTY

Branch 1

_____


WEBB & GERRITSEN, INC.,

                    Plaintiff,


          -vs-                         File No. 2019-CV-001049

VITAL PHARMACEUTICALS, INC.,

                    Defendant.

_____


MOTION HEARING

_____



Proceeding held on November 8, 2021



BEFORE THE HONORABLE MICHAEL O. BOHREN
CIRCUIT COURT JUDGE, PRESIDING



A P P E A R A N C E S

          DAVID HENRY WEBER, Attorney at Law, and
LAINA P. STUEBNER, appeared on behalf of the Plaintiff.

          TIMOTHY DAVID EDWARDS, Attorney at Law,
appeared on behalf of the defendant.

**COPY**



ROSE MARIE RODERICK
Official Court Reporter
1

1               **TRANSCRIPT OF PROCEEDINGS**

2                        THE COURT:  The Court will call the matter

3        of Webb & Gerritsen, Incorporated versus Vital

4        Pharmaceuticals, Incorporated, 19-CV-1049.

5                              Appearances.

6                        MR. WEBER:  Good afternoon, Your Honor.

7        David Weber on behalf of the Plaintiff, Webb & Gerritsen.

8        Also with me today is Mr. Rake, the owner of Webb &

9        Gerritsen, Laina Stuebner of my office and our trial team.

10                       THE COURT:  Thank you.  Good afternoon.

11       Further appearances.

12                       MR. FRICKER:  For the Defendants, Matt

13       Fricker from the Matthiesen, Wickert & Lehrer firm.

14       Earlier today another attorney from my office filed a

15       notice of appearance, Griffin Gross.  He'll be here

16       tomorrow, along with another client representative who

17       will be here tomorrow as well.

18                       THE COURT:  Who will be here tomorrow?

19                       MR. FRICKER:  Daniel Hertes.

20                       THE COURT:  Was his name floated about

21       before?  I don't recognize the name.

22                       MR. FRICKER:  He is with counsel's office

23       at my client.  I think he has seen some of the Zoom

24       proceedings, so he was familiar with the history.

25                       THE COURT:  Very good.  Thank you.  Let me

                              2

1                          At the beginning of the hearing, I asked

2          about Mr. Bukovi's role in how he comes into play in the

3          case, what he can bring forward, is Mr. Gerritsen really

4          just a side show -- excuse me, is Mr. Owoc really just a

5          side show.  And that comes back to my comments a few

6          minutes ago.  I don't think he is a side show.  I think

7          he's a critical witness for the Plaintiff to examine and

8          gain information from in a calm, respectful manner, which

9          did not occur in this case.

10                          I'm satisfied that Mr. Owoc's conduct was

11          in bad faith.  I think it -- as I have said a few minutes

12          ago, it was intentional to undermine the deposition and

13          prevent information from coming out.  I think the conduct

14          then is egregious, as that egregiousness has played out in

15          Wisconsin cases, in particular in the *Mohns* case that I

16          quoted from a few minutes ago.

17                          The alternative is to instruct the jury

18          about the refusal to cooperate and other issues I think

19          will extend the time of a trial just to -- it may double

20          or triple it because of the issues that would come up and

21          how one would have to stop and refer to each statement and

22          try and discern it.  So I don't think that's a workable

23          solution.

24                          In another case without complex issues,

25          that might work, but I don't think it will work in this

                                    38

1    case.  As I see the matter, the critical issue is -- I had

2    2769, the jury instructions, run off.  I can't quite find

3    it, but I believe the key is really the

4    community-of-interest testimony and how that plays out to

5    establish the foundation for the Plaintiff's case.

6              Owoc's testimony potentially plays right

7    into that and is critical.  And based upon those two

8    e-mails, which can be developed or should be developed at

9    a deposition, certainly that becomes a key player in

10   making that community-of-interest determination.

11             So I'm satisfied his conduct, that

12   Mr. Owoc's conduct and the conduct of VPX, Vital

13   Pharmaceuticals, Incorporated was in bad faith.  I don't

14   think what happened at the deposition of Mr. Owoc was

15   Mr. Owoc going off on his own.  He is the company.  He's

16   the CEO.  I infer from all of the circumstances that the

17   conduct was sanctioned by VPX, by Vital Pharmaceuticals,

18   Incorporated as part of their defense plan in the case.

19             That applies to bad faith to Vital

20   Pharmaceuticals, Incorporated.  It applies to bad faith to

21   the corporation.  It also makes the egregious conduct

22   apply to the corporation.  I'm satisfied this wasn't Owoc

23   acting on his own.  It's Owoc acting with the

24   participation of the corporation, and perhaps -- and I

25   believe, I'll not say perhaps, I'm satisfied that it was a

39

1          strategy or plan to disrupt the case.

2                          On that basis then, I'm going to grant a

3          default judgment on liability, a default judgment based

4          upon the findings that would occur in the 2769

5          instruction, and I'll conduct the trial on damages.  The

6          jury will be appropriately instructed as to that to

7          proceed properly.

8                          I'll need an order.  I'll look to Mr. Weber

9          to draft an order that the Court can review and

10         Mr. Fricker can agree, not agree but look at as well, so

11         that we have a proper basis to proceed tomorrow morning.

12                         Now, I sent out -- I looked at the agreed

13         statement to the jury.  I modified it.  That was before

14         I made this ruling today.  I'll make a modification of

15         that, and my thought would be that we may have some

16         wrangling tomorrow morning to be sure we've got everything

17         in order to proceed properly with the trial, that we would

18         pick the jury, and if necessary, release the jury and come

19         back for opening statements after we've resolved other

20         issues.

21                         It may be that if we can't complete -- we

22         pick the jury, it would perhaps be a short adjournment to

23         get everything in order.  On the other hand, it may take

24         an hour or so, but that's how I'll proceed then.  I'll

25         take under advisement the motion with regard to the

40