UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| In re:<br>VITAL PHARMACEUTICALS, INC., *et al.*,[1]<br><br>    Debtors. | Chapter 11<br>Case No. 22-17842-PDR<br>Hon. Peter D. Russin<br>(Jointly Administered) |

## MOTION OF WEBB & GERRITSEN, INC. TO ALLOW LATE FILING OF PROOF OF CLAIM

Webb & Gerritsen, Inc. ("Webb") files this Motion to Allow Late Filing of Proof of Claim (the "Motion"). In support of the Motion, Webb respectfully states as follows:

The Motion is necessary because: (1) as a judgment creditor of the Debtor Vital Pharmaceuticals, Inc. whose judgment is secured by a cash deposit in the custody of the state court that entered the judgment, Webb did not file a proof of claim prior to the Bar Date of December 2022; (2) the passage of time (and the attendant interest accrual and attorneys' fee incurrence) will change the circumstances of the sufficiency of the cash deposit providing security in connection with Webb's judgment; and (3) in the event that the Debtor (a) resumes pursuit of its pending appeal in state court (of which it has obtained a stay separate from the automatic stay) and (b) then succeeds in obtaining reversal of the judgment, Webb will need to be able to assert its entire claim as an unsecured prepetition claim in the above-captioned case.

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("VPX") (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC ("JHO") (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicom Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

4881-1280-8538.7

**INTRODUCTION**

Webb has been a judgment creditor of Vital Pharmaceuticals, Inc. (the "Debtor" or "VPX") since February 8, 2022. The jury verdict-based judgment was in the amount of $2,445,098.10 (the "Judgment on Verdict"). Webb was then entitled under the applicable law of Wisconsin to seek enforcement of the judgment.

In connection with its anticipated appeal from the judgment, VPX asked for and, on March 18, 2022, obtained an order staying enforcement of the judgment pending VPX's anticipated appeal from the Waukesha County, Wisconsin Circuit Court (the "March 18th Order"). The March 18th Order offered VPX a continuing indefinite stay of collection during the pendency of the appeal, provided that VPX first did one of two things: either (a) post a bond from a surety or (b) deposit $2,897,098.10, the amount of the Final Judgment, with the Clerk of the Circuit Court, to be held *in custodia legis*, subject to the terms of the Court's March 18th Order. VPX complied with the March 18th Order on March 23, 2022, by making a cash payment to the Clerk of the Circuit Court (the "Final Judgment Deposit") which is currently held in an account at First Federal Bank (the "Supersedeas Account").

The difference between the amounts of the Judgment on Verdict and the Final Judgment was $452,000.00, intended to include and protect Webb as the judgment creditor for interest accruing on the Final Judgment during the appeal and attorneys' fees allowed by the Final Judgment and the statute underlying the claim that led to Webb's verdict and judgment. Interest on the Judgment continues to accrue in favor of Webb at a rate of 4.25% annually, totaling $103,916.67 per year. Webb continues to incur fees.[2]

---

[2] The Debtors incorrectly identified the Final Judgment Deposit, at page 19 of their Schedules of Assets and Liabilities (Dkt. 323), as an 'Escrow Deposit" held by the firm of Wilson Elser Moskowitz Edelman, which has never appeared

Five months after the Chapter 11 filing, the Debtors, on March 17, 2023, asked the Wisconsin Court of Appeals to stay the appellate proceedings, on the representation that an automatic stay precluded further proceedings. That court entered the requested order on March 20, 2023, staying the appeal based on the Debtors' request, with the stay to terminate on the expiration of any automatic stay.[3] Webb is concerned that a lengthy delay will render it undersecured once the matter is finally decided.

Therefore, in an abundance of caution, Webb requests the right to file a proof of claim to protect its rights to seek distribution in the above-captioned case beyond the amount of the Final Judgment, to the extent required, or in the alternative, for its entire claim if the Final Judgment is reversed and the matter remanded. The Debtors, their estates, and other creditors are not prejudiced by this request because Webb's claim is at present a contingent unsecured claim that may never accrue for purposes of the Chapter 11 cases, because the Debtors are still in the midst of a sale process (baking the pie) and have not yet proposed a plan of reorganization or liquidation (dividing the pie). In addition, Webb is simultaneously filing a motion to lift the automatic stay, to require the Debtors to litigate the appeal or drop it, so that this matter may be timely resolved.

## BACKGROUND FACTS

1.  Contemporaneously with the filing of this Motion, Webb is also filing its Motion to Lift the Automatic Stay to Allow the Appeal Pending in the Wisconsin Court of Appeals to Proceed [Dkt. No. ] (the "Lift Stay Motion"). In the interest of brevity, Webb hereby restates and

---

in either the Circuit Court or the Wisconsin Court of Appeals as counsel for VPX. The Final Judgment Deposit is, in fact, in the custody of the Clerk of the Circuit Court.

[3] While it is not clear if the automatic stay in Section 362 applies to court proceedings that a debtor itself institutes, like the Wisconsin Appeal, the Court need not decide that issue because it was VPX's request for the Wisconsin appellate court's stay that put the matter on hold. The simplest way to proceed is to lift the automatic stay in this case (if any) so that the Wisconsin Court of Appeals will lift its stay and set a schedule to resolve the appeal.

incorporates the contents of the Lift Stay Motion (other than the separate relief sought therein) in this Motion, and includes only facts pertinent to the relief sought herein below.

2. The Debtors filed these Chapter 11 Cases on October 10, 2022.

3. On or about October 24, 2022, the Debtors' Claims and Noticing Agent caused the Notice of Chapter 11 Bankruptcy Case (the "Notice") to be mailed and/or emailed to creditors of the Debtors. *See* Certificate of Service, Dkt. No. 203. The Notice provided a deadline of December 19, 2022 as the deadline to file proofs of claim (the "Bar Date").

4. The Notice states on page 2, within the box describing the bar date, that "[s]ecured creditors retain their rights in their collateral regardless of whether they file a proof of claim."

5. Consistent with the language of the Notice, Webb did not file a proof of claim, based on the Final Judgment Deposit held in the Supersedeas Account, because the Final Judgment is secured by the Final Judgment Deposit, and the principal amount would have been sufficient to cover the amounts due Webb if the appeal proceeded timely or if it is resumed soon.

6. On March 17, 2023, approximately three months after the Bar Date, VPX's counsel in the Wisconsin Appeal first notified the Wisconsin Court of Appeals of the pendency of these cases by filing a Notice of Bankruptcy in the Wisconsin Appeal. *See* March 17, 2023 letter from James E. Goldschmidt of Quarles & Brady LLP, attached as Exhibit 7 to the Lift Stay Motion.

7. On March 20, 2023, having been told by VPX that an automatic stay precluded continuation of the appeal, the Wisconsin Court of Appeals entered an order staying the Wisconsin Appeal until the automatic stay expires. *See* Order Staying Case, attached as Exhibit 8 to the Lift Stay Motion.

8. It appears that the Debtor sought to describe the funds in the Supersedeas Account as an asset of the Debtor's estate, but has actually scheduled them as an "Escrow Deposit" in the

4

amount of $2,897,098.10, stating that the funds are held by Wilson Elser Moskowitz Edelman, a firm that has no known connection to the Wisconsin Action or the Wisconsin Appeal *See* Debtor's Schedule AB 7 Attachment, Dkt. No. 323, p. 19.

9. On March 31, 2023, Webb filed its limited objection to the Debtors' Sale Motion (the "Objection") [Dkt. No. 1094], which argues that the Final Judgment Deposit in the Supersedeas Account is not property of VPX's estate, but even if the Court finds that the Debtor does have some interest in that property, Webb has by operation of Wisconsin law a first priority lien on the funds pending resolution of the Wisconsin Appeal. Webb hereby restates and incorporates the contents of the Objection (other than the separate relief sought therein) in this Motion.

10. When deposited approximately one year ago, the Final Judgment Deposit provided Webb a cushion of $452,000. Interest on the Final Judgment is accruing at an annual rate of about $100,000, and Webb continues to incur legal fees, which is causing and will cause the surplus amount of the Final Judgment Deposit to decrease over time.

## RELIEF REQUESTED

11. Webb requests that this Court permit it to file an unsecured proof of claim for (i) any interest and fees that accrue on the Final Judgment after the Final Judgment Deposit is exhausted and (ii) its entire claim if the Judgment is reversed and the matter remanded for further proceedings. On the Bar Date, Webb did not know that the Debtors would seek to stay the Wisconsin Appeal, and indeed, the Debtors did not do so until three months later, and approximately five months into these Chapter 11 Cases. Therefore, Webb believed that the Wisconsin Appeal would be resolved in a reasonable time and that the Final Judgment Deposit would be enough to fully protect its interest. Now that the Debtors have induced the appellate court

5

4881-1280-8538.7

to issue a stay of indefinite duration, Webb should be permitted to file a proof of claim to account for any additional interest and costs it incurs while awaiting resolution of the Wisconsin Appeal.

12. The filing of proofs of claim in bankruptcy cases is governed by Federal Rule of Bankruptcy Procedure 3003. This rule provides that courts can extend the time for a creditor to file a proof of claim for "cause shown." Under Federal Rule of Bankruptcy Procedure 9006(b)(1), courts may also permit late-filed claims upon a finding of "excusable neglect." Webb has shown the necessary cause under Rule 3003, as well as a basis to rule that any neglect is excusable under Rule 9006.

13. The necessary cause under Rule 3003 in this instance is obvious. VPX created the delay in the resolution of the Wisconsin Appeal, which perpetuated a potential need for Webb to seek distribution from VPX's estate and therefore, to file a proof of claim.

14. In *Pioneer Inv. Services Co. v. Brunswick Assoc's Ltd. Partnership*, the Supreme Court set forth the standard for excusable neglect under these circumstances. According to the Supreme Court, the "[t]he ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or, closer to the point for our purposes, 'to leave undone or unattended to *esp[ecially] through carelessness.*' " 507 U.S. 380, 388 (1993) (emphasis in original). Factors identified to determine whether to allow a late-filed claim as timely filed (by essentially extending the bar date to include the claim) include:

(1)   whether granting the delay will prejudice the debtor;

(2)   the length of the delay and its impact on efficient court administration;

(3)   whether the delay was beyond the reasonable control of the person whose duty it was to perform;

(4)   whether the creditor acted in good faith; and

  (5) whether clients should be penalized for their counsel's mistake or neglect.

*See In re Dix*, 95 B.R. 134 (9th Cir. BAP 1988) (quoting *In re Magouirk*, 693 F.2d 948, 951 (9th Cir. 1982))). The Court also suggested that the Bankruptcy Court consider whether the failure to comply with the bar date "resulted from negligence, indifference or culpable conduct on the part of a moving creditor or its counsel." *Id*. at 385. In sum, the Court adopted a principle of equity in determining if there was excusable neglect.

  15. In this case, equity favors Webb's being permitted to file a proof of claim at this time. Webb relied on the language of the Notice and the facts as it understood them at the time and did not file a proof of claim because it believed that it would be protected by the amount of the Final Judgment Deposit. Webb's failure to anticipate this additional delay in the resolution of the Wisconsin Appeal, based on the language of the Notice and the actions of the Debtors, constitutes excusable neglect, and this Court should permit the filing of Webb's proof of claim. Similarly, in *Pioneer*, the Supreme Court considered the language of the notice of the bar date, which was included in the notice regarding the meeting of creditors, and found that it could have been confusing to understand that the deadline in the notice applied to the filing of claims. *Pioneer*, 507 U.S. at 386-87. The Court also found that the absence of any prejudice to the Debtor or the bankruptcy court, and the lack of any bad faith on the part of the claimant weighed in favor of permitting the late filing of the claim under the excusable neglect standard. *Id*. at 398. All of those factors are equally applicable here.

  16. Allowing Webb to file a proof of claim less than four months after the Bar Date does not prejudice the Debtors or impact the Court's administration of these Chapter 11 Cases. Indeed, the Debtors are still in the process of attempting to sell their assets, but do not have a stalking horse bidder at this time. *See* Ex Parte Motion to Cancel Hearing to Consider the Debtors'

7

Proposed Stalking Horse Bidder [Dkt. No. 1071], which was subsequently canceled by the Court. Furthermore, the Debtors have not yet filed a plan of reorganization (or liquidation), and the Court has extended their exclusive period to file such a plan until June 7, 2023. *See* Order Granting Debtors' Expedited Motion for Entry of an Order (I) Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances; and (II) Granting Related Relief [Dkt. No. 744].

17. Webb has acted in good faith and brought this motion only three weeks after the Debtors sought and obtained a stay of the Wisconsin Appeal. If Webb is permitted to file its proof of claim, there will only have been a delay of less than four months from the Bar Date, at a time when no plan has been filed. Courts in this district have approved the late filing of claims even after a plan has been filed and with longer delays, under the *Pioneer* standard. *See e.g.*, *In re SunCruz Casinos, LLC*, 377 B.R. 741 (Bankr. S.D. Fla. 2007) (permitting a late-filed administrative claim 18 months after the administrative claims bar date and after the plan had been confirmed under the excusable neglect standard, where the claimant believed at the time of the bar date that he did not have a claim for his post-petition injury because he was not feeling any pain at that time); *In re Pappalardo*, 210 B.R. 634 (S.D. Fla. 1997) (allowing a claimant to file a claim seven months after the bar date and after a plan had been filed because there was no prejudice to the debtor or the court and no evidence of bad faith on the part of the claimant). The Court should permit Webb to file its claim at this time, for the filing will not have a significant impact on the case.

## CONCLUSION

Webb reasonably believed, and continues to hope, that it will be fully protected by the Final Judgment Deposit in the Supersedeas Account. Since the Debtors obtained a stay of the Wisconsin

4881-1280-8538.7

Appeal, Webb has acted promptly to bring this Motion to file a late proof of claim. Cause exists to grant the relief sought, and any neglect is excusable.

Therefore, Webb requests that this Court enter an order: (i) granting Webb permission to file a proof of claim within 14 days of such order; and (ii) granting such other relief as is just and proper under the circumstances.

Dated:  April 14, 2023            Respectfully submitted,

FOLEY & LARDNER LLP

By: /s/ Mark J. Wolfson
Mark J. Wolfson (FL Bar No. 0352756)
*Counsel to Webb & Gerritsen, Inc.*
100 North Tampa Street
Suite 2700
Tampa, Florida 33609
(813) 225-4119
mwolfson@foley.com