UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No.: 22-17842-PDR |
| Debtors.[1] | (Jointly Administered) |
| _____/ | |

**DEBTORS' *EX PARTE* OMNIBUS MOTION PURSUANT TO SECTION 365(D)(4)(B)(II) OF THE BANKRUPTCY CODE TO APPROVE STIPULATIONS BY AND AMONG THE DEBTORS AND LESSORS REGARDING EXTENSION OF TIME TO ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, pursuant to section 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), file this omnibus motion (this "Motion") seeking entry of an omnibus order (the "Proposed Order"), substantially in the form annexed hereto as **Exhibit A**, approving each *Stipulation Extending the Deadline by Which the Debtors Must Assume or Reject Unexpired Lease* (each, a "Stipulation")[2] entered into between the Debtors and each Lessor[3] pursuant to which the time period within which the Debtors must assume or reject each Extended Lease (as defined in each applicable Stipulation) is extended pursuant to the terms set

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used herein and not defined have the meanings given to such terms in the applicable Stipulation or in the Deadline Extension Order.

[3] The Lessors include:  (i) 1600FLL LLC; (ii) CI 4747 W. Buckeye LLC, ALDA 4747 W. Buckeye LLC, MFP 4747 W. Buckeye LLC; (iii) CI DAL III-V, LLC; (iv) CK Waitt Industrial, LLC; (v) Dogwood Propco FL, LLP; (vi) Duke Secured Financing 2009-1PAC, LLC; (vii) EastGroup Properties, L.P.; (viii) CIVF VI-TX1M01-M04, LLC; (ix) Icon Owner Pool 1 LA Non-Business Parks, LLC; (x) Kearny Mesa West (San Diego), LLC; (xi) PPF Lincoln Medley, LLC; (xii) Prologis Targeted U.S. Logistics Fund, L.P.; (xiii) Ranger H-TX LP; and (xiv) Rexford Industrial Realty, L.P.

12116540-1

forth in each applicable Stipulation.[4]  In support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are section 365(d)(4)(B)(ii) of the Bankruptcy Code and Rule 9013-1(C)(1) of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules").

## BACKGROUND

4.      On October 10, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On November 1, 2022, the Office of the United States Trustee appointed the official committee of unsecured creditors (the "Committee") [ECF No. 245].  On November 23, 2022, the U.S. Trustee reconstituted the Committee [ECF No. 400].  No request has been made for the Court to order the appointment of a trustee or examiner.

7.      For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* [ECF No. 10] (the "First Day Declaration"), which is incorporated herein by reference.

---

[4]  Copies of the Stipulations are attached to the Proposed Order as **Exhibits 1 - 14**.

8.      On February 3, 2023, the Court entered the *Order Granting Debtors' Expedited Motion for the Entry of an Order (I) Extending the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 745] (the "Deadline Extension Order").  Pursuant to Paragraph 4 of the Deadline Extension Order, the Debtors' deadline to assume or reject any Unexpired Lease is May 8, 2023, subject to further extensions as contemplated under section 365(d)(4)(B) of the Bankruptcy Code.[5]  *See* Deadline Extension Order ¶ 4.

9.      As memorialized in the Stipulations, the Debtors and each Lessor have determined to extend the period within which the Debtors must assume or reject each Extended Lease pursuant to the terms set forth in each applicable Stipulation.

## BASIS FOR RELIEF REQUESTED

10.      Section 365(d)(4)(A) of the Bankruptcy Code provides that a debtor is deemed automatically to reject nonresidential real property leases to which it is a party by the deadline prescribed in section 365(d)(4)(A).  However, pursuant to section 365(d)(4)(B)(i) of the Bankruptcy Code, the Court may extend the applicable period to assume or reject unexpired nonresidential real property leases for 90 days on the motion of a debtor "for cause." 11 U.S.C. § 365(d)(4)(B)(i).[6]  Section 365(d)(4)(B)(ii) of the Bankruptcy Code provides that, to the extent

---

[5] The Debtors have filed a motion with the Court seeking a further extension of the Assumption/Rejection Deadline through and including August 7, 2023 in accordance with the Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Division FF, Title X, Sec. 1001.  *See Motion for Entry of an Order (I) Ruling Section 365 As Amended By The Act Applies to the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 1185] (the "Extension Motion").  Nothing in this Motion shall be construed as an admission that the Assumption/Rejection Deadline is May 8, 2023; indeed, the Debtors believe that the Assumption/Rejection Deadline is August 7, 2023.  Out of an abundance of caution, however, the Debtors have entered into the Stipulations attached to the Proposed Order as **Exhibits 1 - 14** pursuant to which the applicable lessors have consented to a further extension of the Assumption/Rejection Deadline pursuant to 11 U.S.C. § 365(d)(4)(B)(ii).  Notwithstanding any ruling on the Extension Motion, the deadline by which the Debtors may assume or reject the Extended Leases shall be governed by the terms of the applicable Stipulation.

[6] *See* footnote 5, *supra.*

an extension under section 365(d)(4)(B)(i) is granted, the court may grant a subsequent extension "only upon prior written consent of the lessor in each instance."  11 U.S.C. § 365(d)(4)(B)(ii).

11. The Debtors and each Lessor have determined to extend the time period within which the Debtors must assume or reject the Extended Leases in accordance with section 365(d)(4)(B)(ii), as set forth in each applicable Stipulation.  Because the terms of the Proposed Order reflect these agreements and do not alter the *status quo* under the terms of the Extended Leases, no party in interest other than the Debtors and each Lessor is materially affected by the relief requested by this Motion.

12. Pursuant to Local Rule 9013-1(C)(1), a party may file a motion seeking relief from the bankruptcy court on an *ex parte* basis if the movant certifies that all affected parties have consented to the requested relief.  The Debtors certify that each Lessor consents to the entry of the Proposed Order.

**WHEREFORE**, the Debtors respectfully request that the Court enter the proposed form of order, attached hereto as **Exhibit A**, approving each Stipulation attached thereto as **Exhibits 1 - 14**.

Dated: May 2, 2023
     Miami, Florida

Respectfully submitted,

*/s/ Jordi Guso*

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email: george.davis@lw.com
    tj.li@lw.com
    brian.rosen@lw.com
    jon.weichselbaum@lw.com

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
      mniles@bergersingerman.com

12116540-1

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*Co-Counsel for the Debtors*

12116540-1

**<u>Exhibit A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,

Debtors.[1]

_____/

Chapter 11 Cases

Case No.: 22-17842-PDR

(Jointly Administered)

**OMNIBUS ORDER GRANTING DEBTORS' *EX PARTE* OMNIBUS MOTION PURSUANT TO SECTION 365(D)(4)(B)(II) OF THE BANKRUPTCY CODE TO APPROVE STIPULATIONS BY AND AMONG THE DEBTORS AND LESSORS REGARDING EXTENSION OF TIME TO ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY**

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

**THIS MATTER** came before the Court upon the *Debtors' Ex Parte Omnibus Motion Pursuant to Section 365(d)(4)(B)(ii) of the Bankruptcy Code to Approve Stipulations By and Among the Debtors and Lessors Regarding Extension of Time to Assume or Reject Unexpired Leases of Nonresidential Real Property* [ECF No _____] (the "<u>Motion</u>").  The Court, having considered the Motion, finding that each Lessor consents to the relief requested in the Motion as it affects such Lessor, and finding good cause for the granting thereof, does:

**ORDER** that:

1.      The Motion is **GRANTED**.

2.      Each Stipulation attached hereto as <u>**Exhibits 1 - 14**</u> is hereby approved.

3.      Each Stipulation shall become effective immediately upon entry of this Order.

4.      This Court shall retain jurisdiction with respect to all matters arising from or related to this Order.

# # #

<u>Submitted by</u>:
Jordi Guso, Esq.,
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email: jguso@bergersingerman.com
        mniles@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

12116540-1

**<u>Exhibit 1</u>**

12116540-1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No.: 22-17842-PDR |
| Debtors.[1] | (Jointly Administered) |

_____/

## STIPULATION EXTENDING THE DEADLINE BY WHICH
## THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASE

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") and

1600FLL LLC ("Lessor" together with the Debtors, the "Parties") hereby enter into this stipulation

(this "Stipulation") pursuant to which the Parties agree to the following:[2]

## RECITALS

**WHEREAS**, the Debtors lease the premises at 1600 North Park Drive, Weston, FL 33326

from Lessor pursuant to that certain lease agreement dated May 26, 2009 (as amended, modified,

and supplemented from time to time, the "Extended Lease").

**WHEREAS**, on February 3, 2023, the Court entered the *Order Granting Debtors'*

*Expedited Motion for the Entry of an Order (I) Extending the Deadline By Which the Debtors May*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used in this Stipulation and not immediately defined have the meanings given to such terms elsewhere in this Stipulation or in the Deadline Extension Order (as defined herein).

*Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 745] (the "Deadline Extension Order").

**WHEREAS**, pursuant to Paragraph 4 of the Deadline Extension Order, the Debtors' deadline to assume or reject any Unexpired Lease is May 8, 2023, subject to further extensions as contemplated under section 365(d)(4)(B)(ii) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").[3]

**WHEREAS**, the Debtors have requested, and Lessor has agreed to grant, additional time as permitted under section 365(d)(4) of the Bankruptcy Code up to and including the earlier of (a) the date on which the Debtors obtain confirmation of a chapter 11 plan, (b) the date on which the Debtors consummate a sale, or (c) June 12, 2023 (the "Extended Deadline").

**WHEREAS**, the Parties desire to memorialize their agreement in this Stipulation.

**NOW THEREFORE**, the Parties stipulate and agree as follows:

1.      Lessor consents to extend the time period within which the Debtors must assume or reject the Extended Lease through and including the Extended Deadline.

2.      The Parties acknowledge and agree that this Stipulation constitutes "prior written consent of the lessor," as required by section 365(d)(4)(B)(ii) of the Bankruptcy Code, and that no further consent of Lessor shall be required for the purpose of granting the Extended Deadline.

---

[3]  The Debtors have filed a motion with the Court seeking a further extension of the Assumption/Rejection Deadline through and including August 7, 2023 on the basis that the initial Assumption/Rejection Deadline is May 8, 2023 in accordance with the Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Division FF, Title X, Sec. 1001. *See Motion for Entry of an Order (I) Ruling Section 365 As Amended By The Act Applies to the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 1185].

US-DOCS\140942794.3

3.      The Extended Deadline granted pursuant to this Stipulation is without prejudice to the Debtors' right to seek further extensions as provided in section 365(d)(4) of the Bankruptcy Code.

4.      Nothing in this Stipulation shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties, (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds, (c) a promise to pay any claim, (d) an implication or admission that any particular claim would constitute an allowed claim, (e) an assumption or rejection of the Extended Lease pursuant to section 365 of the Bankruptcy Code, or (f) an admission or finding with respect to whether the Extended Lease is an unexpired lease of nonresidential real property within the meaning of section 365(d) of the Bankruptcy Code.  Any and all of the Parties' rights, claims, and defenses with respect to the characterization of the Extended Lease pursuant to section 365 of the Bankruptcy Code or otherwise are expressly reserved.

5.      This Stipulation shall be binding and effective upon execution by all the Parties hereto.  This Stipulation may not be amended or modified without the written consent of the Parties hereto.   This Stipulation may be executed in counterparts by facsimile or other electronic transmission, each of which will be deemed an original, and all of which when taken together will constitute one document.

6.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Stipulation.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation.

US-DOCS\140942794.3

Dated:    May 2, 2023
          Miami, Florida

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
        tj.li@lw.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*/s/ Michael J. Niles*
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
mniles@bergersingerman.com

*Counsel for the Debtors and Debtors-in-Possession*

4

*/s/ Jimmy D. Parrish*
_____

Jimmy D. Parrish
**BAKERHOSTETLER LLP**
200 South Orange Avenue
Orlando, FL 32801
Telephone:  (407) 649-4000
Email:  jparrish@bakerlaw.com

*Counsel for the Lessor*

US-DOCS\140942794.3

**Exhibit 2**

12116540-1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                               Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,               Case No.: 22-17842-PDR

Debtors.[1]                                          (Jointly Administered)

_____/

### STIPULATION EXTENDING THE DEADLINE BY WHICH THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASE

The above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") and

CI421 4747 W. Buckeye LLC, ALDA 4747 W. Buckeye LLC, and MFP 4747 W. Buckeye LLC

(collectively, the "<u>Lessor</u>" together with the Debtors, the "<u>Parties</u>") hereby enter into this

stipulation (this "<u>Stipulation</u>") pursuant to which the Parties agree to the following:[2]

### RECITALS

**WHEREAS**, the Debtors lease the premises at 4747 West Buckeye Road, Phoenix, AZ

85043 (the "<u>Premises</u>") from Lessor pursuant to that certain lease agreement dated November 15,

2019 (as amended, modified, and supplemented from time to time, the "<u>Extended Lease</u>").

**WHEREAS**, on February 3, 2023, the Court entered the *Order Granting Debtors'*

*Expedited Motion for the Entry of an Order (I) Extending the Deadline By Which the Debtors May*

---

[1]  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2]  Capitalized terms used in this Stipulation and not immediately defined have the meanings given to such terms elsewhere in this Stipulation or in the Deadline Extension Order (as defined herein).

*Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 745] (the "Deadline Extension Order").

**WHEREAS**, pursuant to Paragraph 4 of the Deadline Extension Order, the Debtors' deadline to assume or reject any Unexpired Lease is May 8, 2023, subject to further extensions as contemplated under section 365(d)(4)(B)(ii) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").[3]

**WHEREAS**, the Debtors have requested, and Lessor has agreed to grant, additional time as permitted under section 365(d)(4) of the Bankruptcy Code up to and including the earlier of (a) the date on which the Debtors obtain confirmation of a chapter 11 plan, (b) the date on which the Debtors consummate a sale, or (c) June 15, 2023 (the "Extended Deadline").

**WHEREAS**, the Parties desire to memorialize their agreement in this Stipulation.

**NOW THEREFORE**, the Parties stipulate and agree as follows:

1.      Lessor consents to extend the time period within which the Debtors must assume or reject the Extended Lease through and including the Extended Deadline.

2.      The Parties acknowledge and agree that this Stipulation constitutes "prior written consent of the lessor," as required by section 365(d)(4)(B)(ii) of the Bankruptcy Code, and that no further consent of Lessor shall be required for the purpose of granting the Extended Deadline.

---

[3]   The Debtors have filed a motion with the Court seeking a further extension of the Assumption/Rejection Deadline through and including August 7, 2023 on the basis that the initial Assumption/Rejection Deadline is May 8, 2023 in accordance with the Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Division FF, Title X, Sec. 1001. *See Motion for Entry of an Order (I) Ruling Section 365 As Amended By The Act Applies to the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 1185].

3.      The Extended Deadline granted pursuant to this Stipulation is without prejudice to the Debtors' right to seek further extensions as provided in section 365(d)(4) of the Bankruptcy Code.

4.      Nothing in this Stipulation shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties, (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds, (c) a promise to pay any claim, (d) an implication or admission that any particular claim would constitute an allowed claim, (e) an assumption or rejection of the Extended Lease pursuant to section 365 of the Bankruptcy Code, or (f) an admission or finding with respect to whether the Extended Lease is an unexpired lease of nonresidential real property within the meaning of section 365(d) of the Bankruptcy Code.  Any and all of the Parties' rights, claims, and defenses with respect to the characterization of the Extended Lease pursuant to section 365 of the Bankruptcy Code or otherwise are expressly reserved.

5.      This Stipulation shall be binding and effective upon execution by all the Parties hereto.  This Stipulation may not be amended or modified without the written consent of the Parties hereto.  This Stipulation may be executed in counterparts by facsimile or other electronic transmission, each of which will be deemed an original, and all of which when taken together will constitute one document.

6.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Stipulation.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation.

US-DOCS\140927204.1

8.    As a material inducement and consideration to Lessor to execute and deliver this Stipulation extending the deadline by which the Debtors' must assume or reject the Extended Lease, Debtors (Lessee) represent and warrant to Lessor the truth of the following statements: (i) a true, complete and correct copy of the Lease is attached hereto as **Exhibit "A"**; (ii) the Extended Lease constitutes the entire agreement between Lessor and Debtors (Lessee) with respect to the Premises, is presently in full force and effect, and has not been further modified, changed, altered, assigned, supplemented or amended in any respect;  (iii) as of the date of this Stipulation extending the deadline by which the debtor's must assume or reject the Extended Lease, Debtors (Lessee) have not assigned, sold or otherwise transferred their interest in the Extended Lease; (iv) the Extended Lease is the only lease or agreement, written or oral, between Lessor and Debtors (Lessee) affecting or relating to the Premises; and (v) no one except Debtors (Lessee), their employees and contract workers occupies the Premises.

4

Dated:    April 28, 2023
          Miami, Florida

/s/ Michael J. Niles

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
        tj.li@lw.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
mniles@bergersingerman.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*Counsel for the Debtors and Debtors-in-Possession*

/s/ *Hamid R. Rafatjoo*

Hamid R. Rafatjoo
**RAINES FELDMAN LLP**
1800 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
Telephone:  (310) 440-4100
Email:  hra@raineslaw.com


*Counsel for the Lessor*

# EXHIBIT A

# INDUSTRIAL LEASE

## by and between

## TGA CACTUS DC II LLC,
### a Delaware limited liability company

### ("Landlord")

### and

## VITAL PHARMACEUTICALS, INC.,
a _Florida_ corporation

### ("Tenant")

### Dated as of

_November 15_, 2019

ARIZONA WITH NNN

### INDUSTRIAL LEASE

THIS INDUSTRIAL LEASE (this "Lease") is made between Landlord described in *Item 2* of the Basic Lease Provisions and the Tenant described in *Item 1* of the Basic Lease Provisions.

### LEASE OF PREMISES

Landlord hereby leases to Tenant and Tenant hereby leases from Landlord, subject to all of the terms and conditions set forth herein, those certain premises (the "Premises") described in *Item 3* of the Basic Lease Provisions and as shown in the drawing attached hereto as *Exhibit A*. The Premises are located in the Building described in *Item 4* of the Basic Lease Provisions. The Building is located on that certain Land, more particularly described in *Item 5* of the Basic Lease Provisions, which is also improved with landscaping, parking facilities and other improvements, fixtures and common areas and appurtenances now or hereafter placed, constructed or erected on the Land (sometimes referred to herein as the "Additional Facilities").

### BASIC LEASE PROVISIONS

| 1. | Tenant: | **VITAL PHARMACEUTICALS, INC.,** a ~~Florida~~ corporation |
|----|---------|---------------------------------------------------------------|
| 2. | Landlord: | **TGA CACTUS DC II LLC**, a Delaware limited liability company |
| 3. | Premises: | The entire Building cross-hatched on *Exhibit A*, containing approximately 376,760 rentable square feet ("Rentable Area") (more or less) of area. |
| 4. | Building: | The Premises, located at 4747 W. Buckeye, Phoenix, Arizona. |
| 5. | Land: | That certain tract of real property more particularly described on *Exhibit B* hereto. |
| 6. | Property: | The Land, the Building and the Additional Facilities. |
| 7. | Initial Term: | One hundred twenty-six (126) months, commencing on the Commencement Date and ending on the day immediately preceding the one hundred twenty-sixth (126th) month anniversary of the Commencement Date (See Paragraph 1) |
| 8. | Estimated Commencement Date (Section 2): | April 1, 2020 |
| 9. | Estimated Expiration Date (Section 2): | September 30, 2030 |
| 10. | Base Rent (Section 4): | |

| Months: | | | | Approximate Monthly rate per Rentable Area: | Monthly rate: |
|---------|---|---|---|---|---|
| 01 | through | 06 | , inclusive | $0.00, plus NNN | (Base Rent is abated for the entire Premises)* |
| 07 | through | 18 | , inclusive | $0.40, plus NNN, plus applicable rental sales tax | $150,704.00 |

| | | | | | |
|---|---|---|---|---|---|
| 19 | Through | 30 | , inclusive | $0.41, plus NNN, plus applicable rental sales tax | $154,471.60 |
| 31 | through | 42 | , inclusive | $0.42, plus NNN, plus applicable rental sales tax | $158,239.20 |
| 43 | through | 54 | , inclusive | $0.43, plus NNN, plus applicable rental sales tax | $162,006.80 |
| 55 | through | 66 | , inclusive | $0.442, plus NNN, plus applicable rental sales tax | $166,527.92 |
| 67 | through | 78 | , inclusive | $0.453, plus NNN, plus applicable rental sales tax | $170,672.28 |
| 79 | through | 90 | , inclusive | $0.464, plus NNN, plus applicable rental sales tax | $174,816.64 |
| 91 | through | 102 | , inclusive | $0.476, plus NNN, plus applicable rental sales tax | $179,337.76 |
| 103 | through | 114 | , inclusive | $0.487, plus NNN, plus applicable rental sales tax | $183,482.12 |
| 115 | through | 126 | , inclusive | $0.50, plus NNN, plus applicable rental sales tax | $188,380.00 |

*Base Rent shall be abated for Months 01 through Month 06, inclusive of the Initial Term (such period being referred to herein as the "Abated Rent Period").  Additional Rent shall not be abated during the Abated Rent Period.

| | | |
|---|---|---|
| 11. | Installment Payable Upon Execution: | $432,018.14 (Security Deposit plus 1st Month's Rent) |
| 12. | Tenant's Pro Rata Share (Section 3): | 100% (376,760 rsf/376,760 rsf) |
| 13. | Initial Estimated Monthly Expenses (Section 4): | Taxes = $32,966.50/month ($1.05/rsf/annum), Insurance = $1,255.87 ($0.04/rsf/annum), CAM = $12,244.70 ($0.39/rsf/annum), Total = $46,467.07 ($1.48/rsf/annum) |
| 14. | Security Deposit (Section 2(b)): | $234,847.07 (last month's Base Rent plus one (1) month's Initial Estimated Monthly Expenses) |
| 15. | Rent Payment Address: | Cushman & Wakefield Attn : Patti Farina 2555 E. Camelback Rd., Suite 400 Phoenix, AZ 85016 |
| 16. | Landlord's Construction Allowance: | Turnkey (See _Exhibit C_). |
| 17. | Permitted Use of the Premises (Section 6): | General warehouse and distribution, with incidental office use. |

| 18. | Landlord's Address: | TGA Cactus DC II LLC<br>c/o Nuveen Real Estate<br>4675 MacArthur Court, Suite 1100<br>Newport Beach, CA 92626 |
|---|---|---|
| | With a copy to: | Nuveen Real Estate<br>4675 N. MacArthur Court, Suite 1100<br>Newport Beach, California  92660<br>Attn:  Keith Awad |
| 19. | Tenant's Address: | 1600 North Park Drive<br>Weston, Florida 33326 |
| | With a copy to: | Marc J. Kesten, Esq. |
| 20. | Guarantor: | None |
| 21. | Landlord's Broker(s) (Section 30): | Jones Lange LaSalle<br>3131 E. Camelback Rd., Suite 400<br>Phoenix, AZ 85016 |
| 22. | Tenant's Broker: | Jones Lange LaSalle<br>3131 E. Camelback Rd., Suite 400<br>Phoenix, AZ 85016 |
| 23. | Effective Date: | _____, 2019 |
| 24. | The "State" is the state, commonwealth, district or jurisdiction in which the Building is located. | |

This Lease consists of the foregoing introductory paragraphs and Basic Lease Provisions, the provisions of the Standard Lease Provisions (the "Standard Lease Provisions") (consisting of Paragraph 1 through Paragraph 33 which follow) and *Exhibits A-1* through *Exhibit A-2* and *Exhibit B* through *Exhibit E,* and the following Addenda: Addendum One (Two Renewal Options (Baseball Arbitration)) and Addendum Two (Cancellation Option), all of which are incorporated herein by this reference.  In the event of any conflict between the provisions of the Basic Lease Provisions and the provisions of the Standard Lease Provisions, the Standard Lease Provisions shall control.

## STANDARD LEASE PROVISIONS

1.    **COMMENCEMENT**.

(a)    The Initial Term of this Lease shall be for the period shown in *Item 7* of the Basic Lease Provisions, commencing on the earlier to occur of (i) the date that the Tenant Improvements are Substantially Completed, or (ii) the date the Tenant Improvements would have been Substantially Completed except for Tenant Delays, or (iii) the date that Tenant, or any person occupying any of the Premises with Tenant's permission, commences business operations from the Premises, or (iv) April 1, 2020 (the "Commencement Date").  Unless earlier terminated in accordance with the provisions hereof, the Initial Term of this Lease shall be the period shown in *Item 7* of the Basic Lease Provisions.  This Lease shall be a binding contractual obligation effective upon execution hereof by Landlord and Tenant, notwithstanding the later commencement of the Lease Term.  The terms "Tenant Improvements" and "Substantial Completion" or "Substantially Completed" are defined in the attached *Exhibit C* Work Letter.  The Initial Term, as extended in writing by both Landlord and Tenant, shall be known as the "Lease Term".

(b)    If the Commencement Date is delayed or otherwise does not occur on the Estimated Commencement Date set forth in *Item 8* of the Basic Lease Provisions, this Lease shall not be void or voidable, nor shall Landlord be liable to Tenant for any loss or damage resulting therefrom.  If the Commencement Date is delayed, the Estimated Expiration Date set forth in *Item 9* shall be extended to the last day of the month in which the term will continue for the Lease Term (the "Expiration Date").  Beginning no earlier than December 1, 2019 (such date being referred to herein as the "Pre-Term Access Commencement Date") and ending on the day immediately preceding the Commencement Date (such period being referred to as the "Pre-Term Access Period"), Tenant, and Tenant's contractors reasonably approved by Landlord, may access the Premises (the "Pre-Term Access") for the purpose of preparing the Premises for occupancy by Tenant, including, but not limited to, performing improvements to the Premises, installing Tenant's furniture, fixtures, equipment, computer and phone cabling and wiring systems in the Premises and related improvements; provided, however, Tenant and/or Tenant's contractors, must coordinate all access to the Premises during such Pre-Term Access Period with the Property Manager of the Building prior to such access.  Except for the payment of Base Rent and Additional Rent under this Lease, all other terms, conditions, rules, regulations and obligations of Tenant, as set forth in this Lease, shall apply during the Pre-Term Access Period. Tenant, and its approved contractors, shall not interfere with the completion of construction of the Tenant Improvements or cause any labor dispute as a result of such Pre-Term Access, and Tenant hereby agrees to indemnify, defend, and hold Landlord harmless from any loss or damage to such property, and all liability, loss, or damage arising from any injury to the Project, Building or the property of Landlord, its contractors, subcontractors, or materialmen, and any death or personal injury to any person or persons arising out of such Pre-Term Access, EVEN IF SUCH LOSS, DAMAGE, LIABILITY, DEATH, OR PERSONAL INJURY WAS CAUSED SOLELY OR IN PART BY LANDLORD'S NEGLIGENCE, BUT NOT TO THE EXTENT CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF LANDLORD.  Any such Pre-Term Access shall be subject to Tenant providing to Landlord satisfactory evidence of insurance for personal injury and property damage related to such Pre-Term Access Period prior to the commencement of the Pre-Term Access Period, including such insurance from Tenant's contractors, as required by Landlord for third party contractors working in the Building.  Any delay in putting Tenant in possession of the Premises due to such Pre-Term Access Period shall not serve to extend the Lease Term of this Lease or to make Landlord liable for any damages arising therefrom.

(c)    Upon Substantial Completion of the Tenant Improvements, Landlord shall prepare and deliver to Tenant, Tenant's Commencement Letter in the form of *Exhibit G* attached hereto (the "Commencement Letter") which Tenant shall acknowledge by executing a copy and returning it to Landlord.  If Tenant fails to sign and return the Commencement Letter to Landlord within ten (10) days of its receipt from Landlord, the Commencement Letter as sent by Landlord shall be deemed to have correctly set forth the Commencement Date and the other matters addressed in the Commencement Letter.  Failure of Landlord to send the Commencement Letter shall have no effect on the Commencement Date.

2.    **BASE RENT AND SECURITY DEPOSIT**

(a)    Tenant shall pay to Landlord, as Base Rent, the sums and amounts set forth in *Item 10* of the Basic Lease Provisions, Additional Rent (hereinafter defined) and any other amounts required to be paid by Tenant to Landlord under this Lease (collectively referred to as "Rent") during the Lease Term, in advance, on the first day of

each calendar month, or as otherwise set forth in this Lease, without setoff or deduction, at the address set forth in *Item 15* of the Basic Lease Provisions. In the event any Rent is due for a partial calendar month or year, the Rent shall be equitably adjusted to reflect that portion of the Lease Term within such month or year. All accrued Rent shall survive the expiration or earlier termination of the Lease Term. The obligation of Tenant to pay Rent and other sums to Landlord and the obligations of Landlord under this Lease are independent obligations. The first full monthly installment of Base Rent (as set forth in *Item 10* of the Basic Lease Provisions) shall be payable upon Tenant's execution of this Lease.

(b)     Tenant has deposited with Landlord a Security Deposit as set forth in *Item 14* of the Basic Lease Provisions, as security for the full and faithful performance of Tenant's obligations under this Lease. The parties agree that, unless otherwise required by law, Landlord shall not be required to keep said Security Deposit separate from its general funds, nor pay any interest thereon to Tenant. Such Security Deposit shall not be construed as an advance Rent payment, or as a measure of Landlord's damages in the event of a Default by Tenant. If Tenant defaults with respect to any provision of this Lease, including, without limitation, the provisions relating to the payment of Rent, the cleaning of the Premises upon the termination of this Lease, Landlord may, but shall not be required to, use, apply or retain all or any part of the Security Deposit (i) for the payment of any Rent or any other sum in Default, (ii) for the payment of any other amount which Landlord may spend or become obligated to spend by reason of Tenant's Default hereunder, or (iii) to compensate Landlord for any other loss or damage which Landlord may suffer by reason of Tenant's Default hereunder, including, without limitation, costs and reasonable attorneys' fees incurred by Landlord to recover possession of the Premises following a Default by Tenant hereunder. If any portion of said Security Deposit is so applied, Tenant shall deposit with Landlord, within five (5) days after receipt of Landlord's written demand, an amount sufficient to restore said Security Deposit to its original amount. Upon the expiration of this Lease, Landlord shall return said Security Deposit to Tenant, provided Tenant has paid to Landlord all sums owing to Landlord under this Lease, and Tenant has returned the Premises to Landlord in as good order and satisfactory condition as when Tenant took possession. If Landlord transfers its interest in the Property or this Lease, Landlord may transfer the Security Deposit to its transferee. Upon such transfer, Landlord shall have no further obligation to return the Security Deposit to Tenant, and Tenant's right to the return of the Security Deposit shall apply solely against Landlord's transferee.

(c)     The parties agree that for all purposes hereunder the Premises shall be stipulated to contain the number of square feet of Rentable Area described in *Item 3* of the Basic Lease Provisions. Upon the request of Landlord during any extension or renewal of the Initial Term, Landlord's space planner shall verify the exact number of square feet of Rentable Area in the Premises. If during any extension or renewal of the Initial Term there is a variation from the number of square feet specified in *Item 3* of the Basic Lease Provisions, Landlord and Tenant shall execute an amendment to this Lease for the purpose of making appropriate adjustments to the Base Rent, the Security Deposit, Tenant's Pro Rata Share and such other provisions hereof as shall be appropriate under the circumstances.

(d)     Base Rent shall be paid to Landlord absolutely net of all costs and expenses. The provisions for payment of Operating Expenses by means of periodic payment of Tenant's Pro Rata Share of estimated Operating Expenses and the year end adjustment of such payments are intended to pass on to Tenant and reimburse Landlord for Tenant's Pro Rata Share of all costs and expenses of the nature described in Paragraph 3 of this Lease.

3.     **ADDITIONAL RENT**

(a)     Tenant shall pay to Landlord, as Additional Rent, Tenant's Pro Rata Share of Operating Expenses (as such terms are hereinafter defined) incurred by Landlord for and on behalf of the Property.

(b)     "Tenant's Pro Rata Share" is, subject to the provisions of Paragraph 2(c), the percentage number described in *Item 12* of the Basic Lease Provisions. Tenant's Pro Rata Share represents, subject to the provisions of Paragraph 2(c), a fraction, the numerator of which is the number of square feet of Rentable Area in the Premises and the denominator of which is the number of square feet of Rentable Area for lease to third parties in the Property, as determined by Landlord pursuant to Paragraph 2(c).

(c)     "Operating Expenses" means all costs, expenses and obligations incurred or payable by Landlord in connection with the operation, ownership, management, repair or maintenance of the Building and the Property during or allocable to the Lease Term, including without limitation, the following:

(i)    <u>Taxes</u>.  Any form of assessment, license fee, license tax, business license fee, commercial rental tax, levy, charge, improvement bond, tax, water and sewer rents and charges, utilities and communications taxes and charges or similar or dissimilar imposition imposed by any authority having the direct power to tax, including any city, county, state or federal government, or any school, agricultural, lighting, drainage or other improvement or special assessment district thereof, or any other governmental charge, general and special, ordinary and extraordinary, foreseen and unforeseen, which may be assessed against any legal or equitable interest of Landlord in the Premises, Building, common areas of the Building or Property (collectively, "<u>Taxes</u>").  Taxes shall also include, without limitation:

(A)    any tax on Landlord's "right" to rent or "right" to other income from the Premises or as against Landlord's business of leasing the Premises;

(B)    any assessment, tax, fee, levy or charge allocable to or measured by the area of the Premises or other premises in the Building or the rent payable by Tenant hereunder or other tenants of the Property, including, without limitation, any gross receipts tax or excise tax levied by state, city or federal government, or any political subdivision thereof, with respect to the receipt of such rent, or upon or with respect to the possession, leasing, operation, management, maintenance, alteration, repair, use or occupancy by Tenant of the Premises, or any portion thereof but not on Landlord's other operations;

(C)    any assessment, tax, fee, levy or charge upon this transaction or any document to which Tenant is a party, creating or transferring an interest or an estate in the Premises;

(D)    City of Phoenix privilege tax (currently 2.9% of gross receipts from the Property) per Chapter 14 of the City of Phoenix Tax code;

(E)    any assessment, tax, fee, levy or charge by any governmental agency related to any transportation plan, fund or system (including assessment districts) instituted within the geographic area of which the Property is a part; and/or

(F)    any costs and expenses (including, without limitation, reasonable attorneys' fees) incurred in attempting to protest, reduce or minimize Taxes.

(ii)    <u>Insurance</u>.  Insurance shall include, without limitation, premiums for liability, property damage, fire, workers compensation, earthquake, terrorism, wind and/or hurricane, rent and any and all other insurance (herein collectively referred to as "<u>Insurance</u>") which Landlord deems necessary to carry on, for, or in connection with Landlord's operation of the Property.  In addition thereto, in the event Tenant's use of the Premises shall result in an increase of any of Landlord's Insurance premiums, Tenant shall pay to Landlord, upon demand, as Additional Rent, an amount equal to such increase in Insurance.  Such payments of Insurance shall be in addition to all premiums of insurance which Tenant is required to carry pursuant to <u>Paragraph 19</u> of this Lease.  The estimated monthly amount of Tenant's Pro Rata Share of Insurance is set forth in <u>*Item 13*</u> of the Basic Lease Provisions, which amount is subject to increase as provided for herein.

(iii)    <u>Common Area Maintenance</u>.  Common area maintenance charges (hereinafter referred to as "<u>CAM</u>") shall mean any and all costs, expenses and obligations incurred by Landlord in connection with the operation, ownership, management, repair and replacement, if necessary, of the Building and the Property, including, without limitation, the following:  the maintenance, repair and replacement, if necessary, of the downspouts, gutters and the non-structural portions of the roof; the paving of all parking facilities, access roads, driveways, truck ways, sidewalks and passageways; loading docks and access ramps, trunk-line plumbing (as opposed to branch-line plumbing); common utilities and exterior lighting; landscaping; snow and ice removal; fire protection; exterior painting and interior painting of the common areas of the Property; management fees; additions or alterations made by Landlord to the Property or the building in order to comply with laws (other than those expressly required herein to be made by Tenant) or that are appropriate to the continued operation of the Property or the building as a bulk warehouse facility in the market area, provided that the cost of additions or alterations that are required to be capitalized for federal income tax purposes

shall be amortized on a straight line basis over a period equal to the lesser of the useful life thereof for federal income tax purposes or ten (10) years; and all other similar maintenance and repair expenses incurred by Landlord for or on behalf of the Property. The estimated monthly amount of Tenant's Pro Rata Share of CAM is set forth in *Item 13* of the Basic Lease Provisions, which amount is subject to increase as provided for herein.

Notwithstanding the foregoing, the following items shall be excluded from CAM:

        (A)      leasing commissions, attorneys' fees, costs and disbursements and other expenses incurred in connection with leasing, renovating or improving vacant space in the Property for tenants or prospective tenants of the Property;

        (B)      costs (including permit, license and inspection fees) incurred in renovating or otherwise improving or decorating, painting or redecorating space for tenants or vacant space;

        (C)      Landlord's costs of any services sold to tenants for which Landlord is entitled to be reimbursed by such tenants as an additional charge or rental over and above the Base Rent and Operating Expenses payable under the lease with such tenant or other occupant;

        (D)      any depreciation or amortization of the Property except as expressly permitted herein;

        (E)      costs incurred due to a violation of law by Landlord relating to the Property;

        (F)      interest on debt or amortization payments on any mortgages or deeds of trust or any other debt for borrowed money;

        (G)      all items and services for which Tenant or other tenants reimburse Landlord outside of CAM;

        (H)      repairs or other work occasioned by fire, windstorm or other work paid for through insurance or condemnation proceeds (excluding any deductible);

        (I)      legal expenses incurred for (i) negotiating lease terms for prospective tenants, (ii) negotiating termination or extension of leases with existing tenants, or (iii) proceedings against any other specific tenant relating solely to the collection of rent or other sums due to Landlord from such tenant;

        (J)      costs incurred from any Landlord Structural Repairs; and

        (K)      repairs resulting from any defect in the original design or construction of the Property.

        (d)      <u>Payment of Additional Rent</u>. Landlord shall have the right to invoice Tenant monthly or quarterly for Tenant's Pro Rata Share of the actual Taxes, Insurance and CAM expenses payable by Tenant under this Lease; and Tenant shall pay to Landlord, as Additional Rent, those amounts for which Tenant is invoiced within thirty (30) days after receipt of said invoice. Alternatively, at Landlord's election, Landlord shall have the right to invoice Tenant monthly for Tenant's Pro Rata Share of such Taxes, Insurance and CAM expenses, as reasonably estimated by Landlord. Any monies paid in advance to Landlord by Tenant shall not accrue interest thereon. At the end of each calendar year or property fiscal year, Landlord shall deliver a statement to Tenant setting forth the difference between Tenant's actual Pro Rata Share of Taxes, Insurance and/or CAM expenses and the total amount of monthly payments, paid by Tenant to Landlord. Tenant shall thereafter pay to Landlord the full amount of any difference between

Tenant's actual obligation over the total amount of Tenant's estimated payments, within thirty (30) days after receipt of said statement; conversely, in the event Tenant's estimated payments exceed Tenant's actual obligation, Landlord shall either refund the overpayment to Tenant or credit said overpayment against Tenant's monthly obligation in the forthcoming year. In the event this Lease expires on a date other than the end of a billing period, Tenant's obligation with respect to any amounts owed to Landlord shall survive the expiration of the Lease Term, and shall be invoiced to Tenant when the same have been accurately determined or, at Landlord's option, such amounts shall be reasonably estimated by Landlord to reflect the period of time the Lease was in effect during such billing period.

(e)  Any delay or failure of Landlord in (i) delivering any estimate or statement described in this Article 3, or (ii) computing or billing of Tenant's Pro Rata Share of Operating Expenses shall not constitute a waiver of its right to require an increase in Rent, or in any way impair the continuing obligations of Tenant under this Article 3. In the event of any dispute as to any Additional Rent due under this Article 3, Tenant, an officer of Tenant or Tenant's certified public accountant (but (a) in no event shall Tenant hire or employ an accounting firm or any other person to audit Landlord as set forth under this Paragraph who is compensated or paid for such audit on a contingency basis and (b) in the event Tenant hires or employs an independent party to perform such audit, Tenant shall provide Landlord with a copy of the engagement letter) shall have the right after reasonable notice and at reasonable times to inspect Landlord's accounting records at Landlord's accounting office. If, after such inspection, Tenant still disputes such Additional Rent, upon Tenant's written request therefor, a certification as to the proper amount of all Taxes, Insurance and CAM charges and the amount due to or payable by Tenant shall be made by an independent certified public accountant mutually agreed to by Landlord and Tenant. If Landlord and Tenant cannot mutually agree to an independent certified public accountant, then the parties agree that Landlord shall choose an independent certified public accountant to conduct the certification as to the proper amount of all of Tenant's Pro Rata Share of Taxes, Insurance and CAM charges due by Tenant for the period in question; provided, however, such certified public accountant shall not be the accountant who conducted Landlord's initial calculation of all Taxes, Insurance and CAM charges to which Tenant is now objecting. Such certification shall be final and conclusive as to all parties. If the certification reflects that Tenant has overpaid Tenant's Pro Rata Share of Taxes, Insurance and CAM charges for the period in question, then Landlord shall credit such excess to Tenant's next payment of such charges and conversely, if Tenant has underpaid Tenant's Pro Rata Share of Taxes, Insurance and CAM charges, Tenant shall promptly pay such additional charges to Landlord. Tenant agrees to pay the cost of such certification and the investigation with respect thereto unless it is determined that Landlord's original statement was in error in Landlord's favor by more than five percent (5%). Tenant waives the right to dispute any matter relating to the calculation of Tenant's Pro Rata Share of Taxes, Insurance and CAM charges or Additional Rent under this Article 3 if any claim or dispute is not asserted in writing to Landlord within one hundred eighty (180) days after delivery to Tenant of the original billing statement with respect thereto. Notwithstanding the foregoing, Tenant shall maintain strict confidentiality of all of Landlord's accounting records and shall not disclose the same to any other person or entity except for Tenant's professional advisory representatives (such as Tenant's employees, accountants, advisors, attorneys and consultants) with a need to know such accounting information, who agree to similarly maintain the confidentiality of such financial information.

(f)  Tenant shall not be obligated to pay for Controllable Operating Expenses in any year to the extent they have increased by more than five percent (5%) per annum, compounded annually on a cumulative basis from and after the first day of the twenty-fifth (25th) full calendar month of the Initial Term and continuing thereafter throughout the remainder of the Lease Term. For purposes of this Lease, Controllable Operating Expenses shall mean all Operating Expenses except for Taxes, insurance premiums, the costs to comply with governmental requirements and regulations, wages and salaries affected by the minimum wage, utility costs and snow and ice removal for the Building and the Project. Controllable Operating Expenses shall be determined on an aggregate basis and not on an individual basis, and the cap on Controllable Operating Expenses shall be determined on Operating Expenses as they have been adjusted for vacancy or usage pursuant to the terms of the Lease. For purposes of clarification, there shall be no cap on Controllable Operating Expenses at any time during the first twenty-four (24) full calendar months of the Initial Term.

(g)  Notwithstanding anything to the contrary contained in this Lease (including the abatement of Base Rent referred to in Item 10 of the Basic Lease Provisions), Tenant's Pro Rata Share of Taxes, Insurance and CAM shall be due and payable in accordance with the terms set forth in this Lease throughout the entire Lease Term and shall not be abated at any time during the Abated Rent Period.

(h)      The terms and provisions of this Article 3 shall survive the expiration or earlier termination of this Lease.

**4.      ALTERATIONS**

(a)      Except as otherwise set forth in *Exhibit C* hereto, Landlord shall deliver the Premises to Tenant, and Tenant agrees to accept the Premises from Landlord in its existing "AS-IS", "WHERE-IS" and "WITH ALL FAULTS" condition, and Landlord shall have no obligation to refurbish or otherwise improve the Premises throughout the Lease Term.

(b)      Tenant shall not make any alterations, additions or improvements to the Premises or Property ("Alterations") without the prior written consent of Landlord, such consent not to be unreasonably withheld, delayed or conditioned.  Tenant shall have the right at any time during the Lease Term, without needing Landlord's prior written consent, to make cosmetic, non-material and non-structural alterations to the Premises which cost shall not exceed Fifty Thousand Dollars ($50,000.00) in any one calendar year.  Notwithstanding the foregoing, Tenant shall make no Alterations to the Premises (i) which will adversely impact the Building's mechanical, electrical or heating, ventilation or air conditioning systems, or (ii) which will adversely impact the structure of the Building, or (iii) which are visible from the exterior of the Premises or (iv) which will result in the penetration or puncturing of the roof or floor, without first obtaining Landlord's prior written consent or approval to such Alterations (which consent or approval shall be in the Landlord's sole and absolute discretion).  Notwithstanding the aforesaid, Tenant, at Tenant's sole cost and expense, may install such trade fixtures as Tenant may deem necessary, so long as such trade fixtures do not penetrate or disturb the structural integrity and support provided by the roof, exterior walls or sub floors.  All such trade fixtures shall be constructed and/or installed by contractors approved by Landlord, in a good and workmanlike manner, and in compliance with all applicable governmental and quasi-governmental laws, ordinances and regulations, as well as all requirements of Landlord's insurance carrier.

(c)      Upon the expiration or earlier termination of this Lease, Tenant shall remove all trade fixtures and any other Alterations installed by Tenant within the Premises; and, upon such removal, Tenant shall restore the Premises to a condition substantially similar to that condition when received by Tenant.  However, notwithstanding the aforesaid, upon Landlord's written election, such Alterations shall revert to Landlord and shall remain within the Premises.  In no event shall Landlord have any right to any of Tenant's trade fixtures; and, except as otherwise set forth in this Lease, Tenant may remove such trade fixtures upon the termination of this Lease, provided Tenant repairs any damage caused by such removal.  If Tenant does not timely remove such property, then Tenant shall be conclusively presumed to have, at Landlord's election (i) conveyed such property to Landlord without compensation or (ii) abandoned such property, and Landlord may dispose of or store any part thereof in any manner at Tenant's sole cost, without waiving Landlord's right to claim from Tenant all expenses arising out of Tenant's failure to remove the property, and without liability to Tenant or any other person.  Landlord shall have no duty to be a bailee of any such personal property.  If Landlord elects abandonment, Tenant shall pay to Landlord, upon demand, any expenses incurred for disposition.

(d)      Tenant shall keep the Premises, the Building and the Property free from any and all liens arising out of any Alterations, work performed, materials furnished, or obligations incurred by or for Tenant.  In the event that Tenant shall not, within ten (10) days following the imposition of any such lien, cause the same to be released of record by payment or posting of a bond in a form and issued by a surety acceptable to Landlord, Landlord shall have the right, but not the obligation, to cause such lien to be released by such means as it shall deem proper (including payment of or defense against the claim giving rise to such lien); in such case, Tenant shall reimburse Landlord for all amounts so paid by Landlord in connection therewith, together with all of Landlord's costs and expenses, with interest thereon at the Default Rate (defined below), and Tenant shall indemnify and defend each and all of the Landlord Indemnitees (defined below) against any damages, losses or costs arising out of any such claim.  Tenant's indemnification of Landlord contained in this Paragraph shall survive the expiration or earlier termination of this Lease.  Such rights of Landlord shall be in addition to all other remedies provided herein or by law.

**5.      INTEREST, LATE CHARGE.**

(a)      If any monthly installment of Rent or any other amount payable by Tenant hereunder is not received by Landlord by the date when due, it shall bear interest at the Default Rate from the date due until paid.  All interest,

and any late charges imposed pursuant to Section 5(b) below, shall be considered Additional Rent due from Tenant to Landlord under the terms of this Lease.  The term "Default Rate" as used in this Lease shall mean the lesser of (A) the rate announced from time to time by Wells Fargo Bank or, if Wells Fargo Bank ceases to exist or ceases to publish such rate, then the rate announced from time to time by the largest (as measured by deposits) chartered bank operating in the State, as its "prime rate" or "reference rate", plus five percent (5%), or (B) the maximum rate of interest permitted by applicable law.

(b)    Tenant acknowledges that, in addition to interest costs, the late payments by Tenant to Landlord of any monthly installments of Base Rent, Additional Rent or other sums due under this Lease will cause Landlord to incur costs not contemplated by this Lease, the exact amount of such costs being extremely difficult and impractical to fix.  Such other costs include, without limitation, processing, administrative and accounting charges and late charges that may be imposed on Landlord by the terms of any Mortgage (as defined below) or related loan documents encumbering the Premises, the Building or the Property.  Accordingly, if any monthly installment of Base Rent, Additional Rent or any other amount payable by Tenant hereunder is not received by Landlord by the due date thereof, Tenant shall pay to Landlord an additional sum of five percent (5%) of the overdue amount as a late charge, but in no event more than the maximum late charge allowed by law.  The parties agree that such late charge represents a fair and reasonable estimate of the costs that Landlord will incur by reason of any late payment as hereinabove referred to by Tenant, and the payment of late charges and interest are distinct and separate in that the payment of interest is to compensate Landlord for Landlord's processing, administrative and other costs incurred by Landlord as a result of Tenant's delinquent payments.  Acceptance of a late charge or interest shall not constitute a waiver of Tenant's default with respect to the overdue amount or prevent Landlord from exercising any of the other rights and remedies available to Landlord under this Lease or at law or in equity now or hereinafter in effect.

6.    **USE**.

(a)    The Premises shall be used only for the purpose set forth in *Item 17* of the Basic Lease Provisions, and shall not be used for any other purpose.  Landlord shall have the right to deny its consent to any change in the permitted use of the Premises in its sole and absolute discretion.

(b)    Outside storage including, without limitation, drop shipments, dock storage, trucks and other vehicles, is prohibited without Landlord's prior written consent, such consent not to be unreasonably withheld, delayed or conditioned.  Tenant shall obtain, at Tenant's sole cost and expense, any and all licenses and permits necessary for Tenant's contemplated use of the Premises.  Tenant shall comply with all existing and future governmental laws, ordinances and regulations applicable to the use of the Premises, as well as all requirements of Landlord's insurance carrier.  Tenant shall not permit any objectionable or unpleasant odors, smoke, dust, gas, noise or vibrations to emanate from the Premises, nor take any other action which would constitute a nuisance or if there are other tenants at the Property, which would disturb or endanger such other tenants, or unreasonably interfere with such other tenants' use of their respective space.  Tenant shall not receive, store or otherwise handle any product, material or merchandise which is explosive or highly inflammable.

(c)    At Tenant's sole cost and expense, Tenant agrees to procure, maintain and hold available for Landlord's inspection, all governmental licenses and permits required for the proper and lawful conduct of Tenant's business from the Premises, if any.  Tenant agrees not to use, alter or occupy the Premises or allow the Premises to be used, altered and occupied in violation of, and Tenant, at its sole cost and expense, agrees to use and occupy the Premises, and cause the Premises to be used and occupied, in compliance with: (i) any and all laws, statutes, zoning restrictions, ordinances, rules, regulations, orders and rulings now or hereafter in force and any requirements of any insurer, insurance authority or duly constituted public authority having jurisdiction over the Premises, the Building or the Property now or hereafter in force, (ii) the requirements of the Board of Fire Underwriters and any other similar body, (iii) the certificate of occupancy issued for the Building, and (iv) any recorded covenants, conditions and restrictions and similar regulatory agreements, if any, which affect the use, occupation or alteration of the Premises, the Building and/or the Property.  Tenant agrees to comply with the Rules and Regulations referenced in *Exhibit D* of this Lease.  Tenant agrees not to do or permit anything to be done in or about the Premises which will in any manner obstruct or interfere with the rights of other tenants or occupants of the Property, or injure or unreasonably annoy them, or use or allow the Premises to be used for any unlawful or unreasonably objectionable purpose.  Tenant agrees not to place or store any articles or materials outside of the Premises or to cause, maintain or permit any nuisance or

10

waste in, on, under or about the Premises or elsewhere within the Property. Tenant shall not use or allow the Premises to be used for lodging, bathing or the washing of clothes.

(d)     Tenant shall not at any time use or occupy the Premises in violation of the certificates of occupancy issued for or restrictive covenants pertaining to the Building or the Premises, and in the event that any architectural control committee or department of the State or the city or county in which the Property is located shall at any time contend or declare that the Premises are used or occupied in violation of such certificate or certificates of occupancy or restrictive covenants, Tenant shall, upon five (5) days' notice from Landlord or any such governmental agency, immediately discontinue such use of the Premises (and otherwise remedy such violation). The failure by Tenant to discontinue such use shall be considered a default under this Lease and Landlord shall have the right to exercise any and all rights and remedies provided herein or available by law or in equity. Tenant shall not place weight upon any portion of the Premises exceeding the structural floor load (per square foot of area) which such area was designated (and is permitted by law) to carry or otherwise use any Building system in excess of its capacity or in any other manner which may damage such system or the Building.

7.     UTILITIES.

Landlord agrees to supply water, gas, electricity and sewer connections [INTERNET TO BE DETERMINED] to the Premises. Tenant shall pay for all gas, electricity, water and sewer used by Tenant within the Premises, together with any taxes, penalties, surcharges or the like pertaining thereto, and Tenant shall be liable for all maintenance and equipment with respect to the continued operation thereof including, without limitation, all electric light bulbs and tubes. In no event shall Landlord be liable for any interruption or failure of any utility servicing the Property. Landlord may cause at Tenant's expenses any utilities used by Tenant to be separately metered or charged directly to Tenant by the provider. Tenant hereby waives the provisions of any existing or future law, ordinance or governmental regulation permitting the termination of this Lease due to an interruption, failure or inability to provide any services.

8.     LANDLORD'S REPAIRS AND MAINTENANCE OBLIGATIONS.

Landlord, at its sole cost, agrees to repair and maintain the structural portions of the Building, including the foundation, exterior walls (excluding glass), subgrade utilities, floor slab and the structural elements of the roof (excluding skylights) (collectively, the "Landlord Structural Repairs"), and any costs to repair and maintain the Landlord Structural Repairs shall not be included in Operating Expenses, unless such maintenance and repairs are caused in part or in whole by the act, neglect or omission of any duty by Tenant, its agents, servants, employees or invitees, in which case Tenant will pay to Landlord, as Additional Rent, the reasonable cost of such maintenance and repairs. Landlord, as an Operating Expense, shall repair and maintain the gutters and downspouts on the Building and the heating, ventilating and air conditioning systems which serve the Premises (provided that it shall be the Tenant's obligation to maintain a service contract on the HVAC unit(s) as set forth in Paragraph 9(d) below). Landlord's obligation with respect to the HVAC unit(s) shall be limited to the replacement of such units if such replacement is necessary despite Tenant's maintenance efforts. Except for the Landlord Structural Repairs, the costs of maintenance and repairs performed by Landlord will be included in Tenant's Pro Rata Share of Operating Expenses. Except as provided in this Paragraph 8 and in Exhibit C, Landlord has no obligation to alter, remodel, improve, repair, decorate or paint the Premises or any part thereof. Landlord will not be liable for any failure to make any such repairs or to perform any maintenance unless such failure shall persist for an unreasonable time after written notice of the need of such repairs or maintenance is given to Landlord by Tenant. Tenant will not be entitled to any abatement of Base Rent and Landlord will not have any liability by reason of any injury to or interference with Tenant's business arising from the making of any repairs, alterations or improvements in or to any portion of the Building or the Premises or in or to fixtures, appurtenances and equipment therein. Tenant waives the right to make repairs at Landlord's expense under any law, statute, ordinance, rule, regulation, order or ruling. Notwithstanding the foregoing, Landlord and Tenant agree that Landlord will deliver the Premises to Tenant such that the fire systems, mechanical, electrical (including light fixtures and switches) and plumbing systems, including the heating, ventilating and air conditions systems (the "HVAC System") and the Building systems (including the doors, dock levelers, lights, fixtures, and related equipment (the "Building Systems") in the Premises are in good working order as of the Commencement Date.

Notwithstanding anything herein to the contrary, Landlord, at its sole cost and expense, shall perform all repairs and replacements necessary to deliver the HVAC System and Building Systems servicing the Premises to

11

Tenant in good working order as of the Commencement Date. If, during the first twelve (12) calendar months following the Commencement Date (the "Maintenance Period"), any portion of the HVAC System or Building Systems are determined to not be in good working order and Tenant timely delivers written notice to Landlord of the same during such twelve (12) calendar month period, then Landlord shall be fully responsible, at its sole cost and expense (which shall not be included in Operating Expenses or otherwise passed through to Tenant), for making all repairs and replacements to the HVAC System and/or Building Systems as necessary so that such HVAC System and/or Building Systems are in good working order; provided, however, Landlord shall not be responsible for any damage and defect to the HVAC System and/or Building Systems caused by or due to abuse by Tenant, its contractors, employees, agents and invitees; improper or insufficient maintenance performed by or on behalf of Tenant to the HVAC System and/or the Building Systems; and/or improper operation of the HVAC System and/or Building Systems by Tenant its contractors, employees, agents and invitees. Landlord agrees to use commercially reasonable efforts to pass through all manufacturers warranties to Tenant in connection with the HVAC System and Building Systems.

9.     **TENANT'S REPAIRS AND MAINTENANCE OBLIGATIONS**.

(a)     Tenant agrees to keep, maintain and preserve the Premises in a state of condition and repair consistent with the Building and, when and if needed, at Tenant's sole cost and expense, to make all repairs to the Premises and every part thereof including, without limitation, all walls, storefronts, floors, ceilings, interior and exterior doors and windows and fixtures interior plumbing and HVAC (heating ventilation, and air conditioning) systems and equipment. Tenant shall maintain a preventive maintenance contract providing for the regular inspection and maintenance of the heating and air conditioning system by a licensed heating and air conditioning contractor, unless Landlord maintains such equipment under Paragraph 8 above. Tenant shall provide Landlord with written proof of said preventive maintenance contract within thirty (30) days of the Commencement Date of Lease. Any such maintenance and repairs will be performed by Landlord's contractor, or at Landlord's option, by such contractor or contractors as Tenant may choose from an approved list to be submitted by Landlord. Tenant agrees to pay all costs and expenses incurred in such maintenance and repair within thirty (30) days after billing by such contractor or contractors. If Tenant refuses or neglects to repair and maintain the Premises properly as required hereunder to the reasonable satisfaction of Landlord, Landlord, at any time following thirty (30) days from the date on which Landlord makes a written demand on Tenant to effect such repair and maintenance, may enter upon the Premises and make such repairs and/or maintenance, and upon completion thereof, Tenant agrees to pay to Landlord as Additional Rent, Landlord's costs for making such repairs plus an amount not to exceed ten percent (10%) of such costs for overhead, within ten (10) days of receipt from Landlord of a written itemized bill therefor. Any amounts not reimbursed by Tenant within such ten (10) day period will bear interest at the Interest Rate until paid by Tenant.

(b)     Notwithstanding the foregoing, and with respect to the rooftop HVAC unit, only, if Tenant has complied with this Paragraph 9 regarding repair and maintenance of the HVAC system and, notwithstanding such compliance, the rooftop HVAC unit cannot, in the sole and reasonable business judgment of Landlord, be repaired other than at a cost which is in excess of fifty percent (50%) of the cost of replacing such unit, then the unit will be replaced by Landlord and the cost thereof shall be prorated between the parties as set forth herein. Tenant shall only be obligated to pay, each month during the remainder of the term of this Lease, on the date on which Rent is due, an amount equal to the product of multiplying the cost of such replacement by a fraction, the numerator of which is one, and the denominator of which is 144 (i.e. 1/144th of the replacement cost per month). The cost shall include a commercially reasonable interest rate on the unamortized balance. Tenant may prepay its obligation at any time. Such payments shall be deemed to be Additional Rent. It will be in Landlord's sole and reasonable discretion to determine the make, model and size of the replacement unit. Replacement of the unit shall not require Landlord to undertake any other work in or about the Premises with respect to the HVAC system.

(c)     Tenant acknowledges and agrees that it has made such investigation as it deems necessary and appropriate to assure itself that the HVAC system serving the Premises, including but not limited to the rooftop HVAC unit, is in good condition and working order and that Landlord has made no representations regarding the HVAC system other than as expressly set forth in the Lease. Based on its investigation and subject to Landlord's representations and warranties expressly set forth in this Lease, Tenant accepts the HVAC system in its as is condition and acknowledges its obligations to repair and maintain such system as set forth in this Lease.

(d)     As set forth on _Exhibit E_ hereto, Tenant, at its own cost and expense, shall enter into a regularly scheduled preventive maintenance/service contract with a maintenance contractor approved by Landlord for servicing

12

all hot water, heating and air conditioning systems and equipment within the Premises. The service contract must include all services suggested by the equipment manufacturer in its operations/maintenance manual and an executed copy of such contract must be provided to Landlord prior to the date Tenant takes possession of the Premises. Notwithstanding the aforesaid, Landlord shall have the option to enter into a regularly scheduled preventative maintenance/service contract on items for and on behalf of Tenant. Such contract may include, without limitation, all services suggested or recommended by the equipment manufacturer in the operation and maintenance of such system. In the event Landlord elects such option, Tenant shall reimburse to Landlord, as Additional Rent, all of Landlord's costs in connection with said contract, as well as Landlord's actual costs of repair and maintenance of the HVAC system.

(e)     Tenant shall perform all repairs and maintenance in a good and workmanlike manner, using materials and labor of the same character, kind and quality as originally employed within the Property; and all such repairs and maintenance shall be in compliance with all governmental and quasi-governmental laws, ordinances and regulations, as well as all requirements of Landlord's insurance carrier. In the event Tenant fails to properly perform any such repairs or maintenance within a reasonable period of time, Landlord shall have the option to perform such repairs on behalf of Tenant, in which event Tenant shall reimburse to Landlord, as Additional Rent, the costs thereof within thirty (30) days after receipt of Landlord's invoice for same.

## 10. **DESTRUCTION**.

If the Premises or the Property are damaged in whole or in part by casualty so as to render the Premises untenantable, and if the damages cannot be repaired as reasonably determined by Landlord within two hundred ten (210) days from the date of said casualty, this Lease shall terminate as of the date of such casualty. If the damages can be repaired within said two hundred ten (210) days, and Landlord does not elect within ninety (90) days after the date of such casualty to repair same, then either party may terminate this Lease by written notice served upon the other. In the event of any such termination, the parties shall have no further obligations to the other, except for those obligations accrued through the effective date of such termination; and, upon such termination, Tenant shall immediately surrender possession of the Premises to Landlord. Should Landlord elect to make such repairs, this Lease shall remain in full force and effect, and Landlord shall proceed with all due diligence to repair and restore the Premises to a condition substantially similar to that condition which existed prior to such casualty (excluding Tenant's Alterations, trade fixtures, equipment and personal property, which Tenant shall be required to restore). In the event the repair and restoration of the Premises extends beyond two hundred ten (210) days after the date of such casualty due to causes beyond the control of Landlord, this Lease shall remain in full force and effect, and Landlord shall not be liable therefor; but Landlord shall continue to complete such repairs and restoration with all due diligence. Landlord and Tenant acknowledge and agree that Rent shall abate during the period the Premises is untenantable due to a casualty loss under this Paragraph 10. In the event only a portion of the Premises are untenantable, Tenant's Rent shall be equitably abated in proportion to that portion of the Premises which are so unfit. Tenant waives any statutory or other right Tenant may have, including, without limitation, rights under Section 33-343 of the Arizona Revised Statutes, to cancel this Lease as a result of such destruction and no such destruction shall annul or void this Lease.

## 11. **ASSIGNMENT AND SUBLETTING**.

(a)     Tenant shall not directly or indirectly, by operation of law or otherwise, assign, sublet, mortgage, hypothecate or otherwise encumber all or any portion of its interest in this Lease or in the Premises or grant any license in any person other than Tenant or its employees to use or occupy the Premises or any part thereof without obtaining the prior written consent of Landlord, which consent shall not be unreasonably withheld or delayed. Any such attempted assignment, subletting, license, mortgage, hypothecation, other encumbrance or other use or occupancy without the consent of Landlord shall be null and void and of no effect. Any mortgage, hypothecation or encumbrance of all or any portion of Tenant's interest in this Lease or in the Premises and any grant of a license or sufferance of any person other than Tenant or its employees to use or occupy the Premises or any part thereof shall be deemed to be an "assignment" of this Lease. In addition, as used in this Paragraph 11, the term "Tenant" shall also mean any entity that has guaranteed Tenant's obligations under this Lease, and the restrictions applicable to Tenant contained herein shall also be applicable to such guarantor. Provided no event of monetary default has occurred and is continuing under this Lease, upon thirty (30) days prior written notice to Landlord, Tenant may, without Landlord's prior written consent, assign this Lease to an entity into which Tenant is merged or consolidated or to an entity to which substantially all of Tenant's assets are transferred or to an entity controlled by or is commonly controlled with Tenant (a "Tenant

13

Affiliate"), provided (i) such merger, consolidation, or transfer of assets is for a good business purpose and not principally for the purpose of transferring Tenant's leasehold estate, and (ii) the assignee or successor entity has a tangible net worth, calculated in accordance with generally accepted accounting principles (and evidenced by financial statements in form reasonably satisfactory to Landlord) at least equal to the tangible net worth of Tenant immediately prior to such merger, consolidation, or transfer. The term "controlled by" or "commonly controlled with" shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of such controlled person or entity; the ownership, directly or indirectly, of at least fifty-one percent (51%) of the voting securities of, or possession of the right to vote, in the ordinary direction of its affairs, at least fifty-one percent (51%) of the voting interest in, any person or entity shall be presumed to constitute such control.

(b)      No permitted assignment or subletting shall relieve Tenant of its obligation to pay the Rent and to perform all of the other obligations to be performed by Tenant hereunder. The acceptance of Rent by Landlord from any other person shall not be deemed to be a waiver by Landlord of any provision of this Lease or to be a consent to any subletting or assignment. Consent by Landlord to one subletting or assignment shall not be deemed to constitute a consent to any other or subsequent attempted subletting or assignment. If Tenant desires at any time to assign this Lease or to sublet the Premises or any portion thereof, it shall first notify Landlord of its desire to do so and shall submit in writing to Landlord all pertinent information relating to the proposed assignee or sublessee, all pertinent information relating to the proposed assignment or sublease, and all such financial information as Landlord may reasonably request concerning the proposed assignee or subtenant. Any approved assignment or sublease shall be expressly subject to the terms and conditions of this Lease.

(c)      At any time within thirty (30) days after Landlord's receipt of the information specified in subparagraph (b) above, Landlord may by written notice to Tenant elect to terminate this Lease as to the portion of the Premises so proposed to be subleased or assigned (which may include all of the Premises), with a proportionate abatement in the Rent payable hereunder.

(d)      Tenant acknowledges that it shall be reasonable for Landlord to withhold its consent to a proposed assignment or sublease in any of the following instances.

(i)      The assignee or sublessee is not, in Landlord's reasonable opinion, sufficiently creditworthy to perform the obligations such assignee or sublessee will have under this Lease;

(ii)     The intended use of the Premises by the assignee or sublessee is not the same as set forth in this Lease or otherwise reasonably satisfactory to Landlord;

(iii)    The intended use of the Premises by the assignee or sublessee would materially increase the pedestrian or vehicular traffic to the Premises or the Property;

(iv)    Occupancy of the Premises by the assignee or sublessee would, in the good faith judgment of Landlord, violate any agreement binding upon Landlord, or the Property with regard to the identity of tenants, usage in the Property, or similar matters;

(v)     The assignee or sublessee (or any affiliate of the assignee or sublessee) is then actively negotiating with Landlord or has negotiated with Landlord within the previous six (6) months, or is a current tenant or subtenant within the Premises or Property;

(vi)    The identity or business reputation of the assignee or sublessee will, in the good faith judgment of Landlord, tend to damage the goodwill or reputation of the Premises or Property; or

(vii)   In the case of a sublease, the subtenant has not acknowledged that the Lease controls over any inconsistent provision in the sublease.

The foregoing criteria shall not exclude any other reasonable basis for Landlord to refuse its consent to such assignment or sublease

14

(e)     Notwithstanding any assignment or subletting, Tenant and any guarantor or surety of Tenant's obligations under this Lease shall at all times during the Initial Term and any subsequent renewals or extensions remain fully responsible and liable for the payment of the Rent and for compliance with all of Tenant's other obligations under this Lease. In the event that the Rent due and payable by a sublessee or assignee (or a combination of the rental payable under such sublease or assignment, plus any bonus or other consideration therefor or incident thereto) exceeds the Rent payable under this Lease, then Tenant, after the recovery of all reasonable expenses associated with the sublease, including tenant improvement costs, architectural fees, commissions, and any other reasonable concessions provided, shall be bound and obligated to pay Landlord, as Additional Rent hereunder, one-half of all such excess Rent and other excess consideration within ten (10) days following receipt thereof by Tenant.

(f)     If this Lease is assigned or if the Premises is subleased (whether in whole or in part), or in the event of the mortgage, pledge, or hypothecation of Tenant's leasehold interest, or grant of any concession or license within the Premises, or if the Premises are occupied in whole or in part by anyone other than Tenant, then upon a default by Tenant hereunder Landlord may collect Rent from the assignee, sublessee, mortgagee, pledgee, party to whom the leasehold interest was hypothecated, concessionee or licensee or other occupant and, except to the extent set forth in the preceding Paragraph, apply the amount collected to the next Rent payable hereunder; and all such Rent collected by Tenant shall be held in deposit for Landlord and immediately forwarded to Landlord. No such transaction or collection of Rent or application thereof by Landlord, however, shall be deemed a waiver of these provisions or a release of Tenant from the further performance by Tenant of its covenants, duties, or obligations hereunder.

(g)     Should Tenant request of Landlord the right to assign or sublet its rights under this Lease, Landlord shall charge Tenant, and Tenant shall pay to Landlord, the actual cost of Landlord's legal fees up to a maximum amount of One Thousand and No/100 Dollars ($1,000.00).

(h)     If Tenant is any form of partnership, a withdrawal or change, voluntary, involuntary or by operation of law of any partner, or the dissolution of the partnership, shall be deemed a voluntary assignment. If Tenant consists of more than one (1) person, a purported assignment, voluntary or involuntary or by operation of law from one (1) person to the other shall be deemed a voluntary assignment. If Tenant is a corporation or limited liability entity, any dissolution, merger, consolidation or other reorganization of Tenant, or sale or other transfer of a controlling percentage of the ownership interest of Tenant, or the sale of at least twenty-five percent (25%) of the value of the assets of Tenant shall be deemed a voluntary assignment.

12.   **INSPECTION**.

(a)     Landlord shall at all reasonable times, during normal business hours and after 24 hours prior notice (except in the event of an emergency when no notice is necessary), have the right to enter the Premises to inspect the same, to supply janitorial service and any other service to be provided by Landlord to Tenant hereunder, to exhibit the Premises to prospective purchasers, lenders or tenants, to post notices of non-responsibility, to alter, improve, restore, rebuild or repair the Premises or any other portion of the Building, or to do any other act permitted or contemplated to be done by Landlord hereunder, all without being deemed guilty of an eviction of Tenant and without liability for abatement of Rent or otherwise; provided, however, Landlord shall use reasonable efforts to minimize any disruption to Tenant's business in the Premises during such entry by Landlord. Tenant shall have the duty to periodically inspect the Premises and notify Landlord should Tenant observe a need for repairs or maintenance of any obligation to be performed by Landlord under this Lease. Upon receipt of Tenant's notice, Landlord shall have a commercially reasonable period of time to make such repairs or maintenance. In addition thereto, during the last year of the Lease Term, upon notice to Tenant, Landlord shall have the right to enter the Premises at any reasonable time for the purpose of showing the Premises to prospective third-party tenants; and, during said year, Landlord shall have the right to erect on the Property and/or Premises suitable signs indicating that the Premises are available for lease.

(b)     Tenant shall give Landlord thirty (30) days written notice prior to Tenant vacating the Premises, for the purpose of arranging a joint inspection of the Premises with respect to any obligation to be performed therein by Tenant, including, without limitation, the necessity of any repair or restoration of the Premises. In the event Tenant fails to notify Landlord of such inspection, Landlord's inspection after Tenant vacates shall be conclusively deemed correct for purposes of determining Tenant's responsibility for repairs and restoration.

13.   **SIGNS**.

15

Tenant shall not place or permit any signs, lights, awnings or poles in or about the Premises or the Property, other than the standard building signage as per Landlord specifications, without the prior written consent of Landlord; nor shall Tenant change the uniform architecture, paint, landscape, or otherwise alter or modify the exterior of the Property without the prior written consent of Landlord. Notwithstanding the foregoing, provided that (x) Tenant is the Tenant originally named herein, or a Tenant Affiliate, (y) Tenant, or a Tenant Affiliate, is leasing and actually occupies all of the Building, and (z) no event of default or event which but for the passage of time or the giving of notice, or both, would constitute an event of default has occurred and is continuing, Tenant, at Tenant's sole cost and expense, shall have the right to install the following signage:

(a)     Exterior Building Signage. Tenant, at Tenant's sole cost and expense, shall have the right to install one (1) building sign located on the exterior of the Building (the "Tenant's Sign"). Notwithstanding the foregoing sentence, Tenant's Sign shall be subject to and in compliance with all laws, applicable conditions, covenants and restrictions affecting the Property, including, but not limited to, the City of Phoenix, Maricopa County, Arizona. Tenant shall be solely responsible for the cost and expense of obtaining and maintaining any necessary permits for Tenant's Sign and any sign licenses related thereto, including, but not limited to, the City of Phoenix, Maricopa County, Arizona, and for the cost and expense of maintenance and utilities for Tenant's Sign (including all metered electrical usage, if any). Additionally, Tenant shall maintain Tenant's Sign in a first class manner. Tenant's Sign shall be installed in accordance with all applicable laws, codes, ordinances, covenants, conditions and restrictions relating to the Building, including, but not limited to, the City of Phoenix, Maricopa County, Arizona, as well as all applicable covenants, restrictions or deed restrictions affecting the Property. The style, type, color, size, and design of Tenant's Sign and the means and method of attachment of Tenant's Sign to the Building shall be subject to Landlord's prior written approval, which approval shall not be unreasonably withheld or delayed. All rights and remedies of Landlord under this Lease (including, without limitation, Landlord's self-help remedies) shall apply in the event Tenant fails to maintain Tenant's Sign as herein required. Upon the expiration or earlier termination of the Lease Term, Tenant shall pay all costs associated with the removal of Tenant's Sign and the restoration of the Building where Tenant's Sign are located to as near its original condition as may then be reasonably required by Landlord. The installation and maintenance of the Tenant's Sign shall be in compliance with all applicable rules and restrictions or restrictive covenants and/or deed restrictions affecting the Property. The terms and provisions of this Paragraph 13(a) shall survive the expiration or earlier termination of the Lease.

(b)     Monument Signage Rights. Tenant, at Tenant's sole cost and expense, shall have the right to install and maintain one (1) building standard listing reflecting Tenant's name on the Building's existing monument sign, in a location designated by Landlord (the "Monument Sign Listing"). Landlord shall pay for the initial costs of preparing and installing the Monument Sign Listing, and Tenant shall be responsible for all other costs associated with the Monument Sign Listing. Notwithstanding the foregoing, the Monument Sign Listing (and Tenant's right to install and maintain the same) shall be subject to and in compliance with all laws, applicable conditions, covenants and restrictions affecting the Building. Tenant shall be solely responsible for the cost and expense of obtaining and maintaining any necessary permits for the Monument Sign Listing and any sign licenses related thereto, and for the cost and expense of maintenance and utilities for the Monument Sign Listing (including all metered electrical usage, if any). Additionally, Tenant shall, in a first class manner, maintain and repair any damage to the Monument Sign Listing. The Monument Sign Listing shall be installed in accordance with all applicable laws, codes, ordinances, covenants, conditions and restrictions relating to the Building. The style, type, color, size, and design of the Monument Sign Listing shall be subject to Landlord's prior written approval, which approval shall not be unreasonably withheld or delayed. Upon the expiration or earlier termination of the Lease, Tenant shall pay all costs associated with the removal of the Monument Sign Listing. All rights and remedies of Landlord under the Lease (including, without limitation, Landlord's self-help remedies) shall apply in the event Tenant fails to perform Tenant's obligations hereunder with respect to the Monument Sign Listing, and, in the event Landlord performs any of Tenant's obligations hereunder, Tenant shall pay to Landlord, upon demand as additional rental hereunder, the cost incurred by Landlord in connection therewith, plus an additional charge of fifteen percent (15%) of such cost to cover overhead. Tenant shall protect, defend, indemnify and hold harmless Landlord from and against any and all claims, damages, liabilities, costs or expenses of every kind and nature (including without limitation reasonable attorney's fees) imposed upon or incurred by or asserted against Landlord and which arise out of any work performed by or on behalf of Tenant in connection with the Monument Sign Listing. The terms and provisions of this Paragraph 13(b) shall survive the expiration or earlier termination of this Lease.

14.     **DEFAULT**.

16

(a)     Events of Default.  The occurrence of any one or more of the following events shall constitute an "event of default" or "default" (herein so called) or "Default" under this Lease by Tenant: (i) the failure by Tenant to pay Rent or any other rental or sums payable by Tenant hereunder within five (5) days after Landlord notifies Tenant of such nonpayment; provided, however, Landlord shall only be obligated to provide such written notice to Tenant two (2) times within any calendar year and in the event Tenant fails to timely pay Rent or any other sums for a third time during any calendar year, then Tenant shall be in default for such late payment and Landlord shall have no obligation or duty to provide notice of such non-payment to Tenant prior to declaring an event of default under this Lease; (ii) the failure by Tenant to observe or perform any of the express or implied covenants or provisions of this Lease to be observed or performed by Tenant, other than monetary failures as specified in Paragraph 14(a)(i) above, where such failure shall continue for a period of thirty (30) days after written notice thereof from Landlord to Tenant; provided, however, that if the nature of Tenant's default is such that more than thirty (30) days are reasonably required for its cure, then Tenant shall not be deemed to be in default if Tenant shall commence such cure within said thirty (30) day period and thereafter diligently prosecute such cure to completion, which completion shall occur not later than one hundred and twenty (120) days from the date of such notice from Landlord; (iii) the making by Tenant or any guarantor hereof of any general assignment for the benefit of creditors, (iv) the filing by or against Tenant or any guarantor hereof of a petition to have Tenant or any guarantor hereof adjudged a bankrupt or a petition for reorganization or arrangement under any law relating to bankruptcy (unless, in the case of a petition filed against Tenant or any guarantor hereof, the same is dismissed within sixty (60) days), (v) the appointment of a trustee or receiver to take possession of substantially all of Tenant's assets located at the Premises or of Tenant's interest in this Lease or of substantially all of guarantor's assets, where possession is not restored to Tenant or guarantor within sixty (60) days, (vi) the attachment, execution or other judicial seizure of substantially all of Tenant's assets located at the Premises or of substantially all of guarantor's assets or of Tenant's interest in this Lease where such seizure is not discharged within sixty (60) days; (vii) any material representation or warranty made by Tenant or guarantor in this Lease or any other document delivered in connection with the execution and delivery of this Lease or pursuant to this Lease proves to be incorrect in any material respect; (viii) Tenant or guarantor shall be liquidated or dissolved or shall begin proceedings towards its liquidation or dissolution; or (ix) the vacation or abandonment of the Premises by Tenant in excess of fifteen (15) business days.

(b)     Remedies.  Upon the occurrence of any event of default specified in this Lease, Landlord shall have the option to pursue any (i) one or more of the following remedies without any notice or demand whatsoever and without releasing Tenant from any obligation under this Lease; or (ii) other remedy offered Landlord in law or in equity:

(i)     Termination of Lease or Possession.  If Tenant defaults, then without any further notice, demand or delay, Landlord may, in the exercise of its sole and absolute discretion, pursue whatever remedies it may have under this Lease, at law or in equity including, but not necessarily limited to, termination of this Lease or termination of the Tenant's possession of the Premises without termination of this Lease.  In the event Landlord either terminates this Lease or terminates Tenant's right to possession of the Premises without terminating this Lease, Tenant shall immediately vacate the Premises and deliver possession to Landlord, and Landlord may repossess the Premises and may, at Tenant's sole cost, remove any of Tenant's signs and any of its other property, without relinquishing its right to receive Rent or any other right against Tenant.

(ii)    Lease Termination Damages.  If Landlord terminates the Lease, Tenant shall pay to Landlord all Rent due on or before the date of termination, plus Landlord's reasonable estimate of the aggregate Rent that would have been payable from the date of termination through the Termination Date, reduced by the rental value of the Premises calculated as of the date of termination for the same period, taking into account anticipated vacancy prior to reletting, reletting expenses and market concessions, both discounted to present value at the rate of three percent (3%) per annum.  If Landlord shall relet any part of the Premises for any part of such period before such present value amount shall have been paid by Tenant or finally determined by a court, then the amount of Rent payable pursuant to such reletting (taking into account vacancy prior to reletting and reletting expenses or concessions) shall be deemed to be the reasonable rental value for that portion of the Premises relet during the period of the reletting.

(iii)   Possession Termination Damages.  If Landlord terminates Tenant's right to possession without terminating the Lease and Landlord takes possession of the Premises itself, Landlord may relet any part of the Premises for such Rent, for such time, and upon such terms as Landlord in its sole discretion shall

17

determine, without any obligation to do so prior to renting other vacant areas in the Building. Any proceeds from reletting the Premises shall first be applied to the expenses of reletting, including redecoration, repair, alteration, advertising, brokerage, legal, and other reasonably necessary expenses. If the reletting proceeds after payment of expenses are insufficient to pay the full amount of Rent under this Lease, Tenant shall pay such deficiency to Landlord monthly upon demand as it becomes due. Any excess proceeds shall be retained by Landlord.

(iv)    Landlord's Remedies Cumulative. All of Landlord's remedies under this Lease shall be in addition to all other remedies Landlord may have at law or in equity. Waiver by Landlord of any breach of any obligation by Tenant shall be effective only if it is in writing, and shall not be deemed a waiver of any other breach, or any subsequent breach of the same obligation. Landlord's acceptance of payment by Tenant shall not constitute a waiver of any breach by Tenant, and if the acceptance occurs after Landlord's notice to Tenant, or termination of the Lease or of Tenant's right to possession, the acceptance shall not affect such notice or termination. Acceptance of payment by Landlord after commencement of a legal proceeding or final judgment shall not affect such proceeding or judgment. Landlord may advance such monies and take such other actions for Tenant's account as reasonably may be required to cure or mitigate any default by Tenant. Tenant shall immediately reimburse Landlord for any such advance, and such sums shall bear interest at the default interest rate until paid.

(c)    Effect of Suit or Partial Collection. Institution of a forcible detainer action to re-enter the Premises shall not be construed to be an election by Landlord to terminate this Lease. Landlord may collect and receive any Rent due from Tenant and the payment thereof shall not constitute a waiver of or affect any notice or demand given, suit instituted or judgment obtained by Landlord, or be held to waive or alter the rights or remedies which Landlord may have at law or in equity or by virtue of this Lease at the time of such payment.

(d)    Landlord's Remedies; Re-Entry Rights. In the event of any event of default by Tenant, in addition to any other remedies available to Landlord under this Lease, at law or in equity, Landlord shall also have the right, with or without terminating this Lease, to re-enter the Premises and remove all persons and property from the Premises; such property may be removed, stored and/or disposed of pursuant to Paragraph 15 of this Lease or any other procedures permitted by applicable law. No re-entry or taking possession of the Premises by Landlord pursuant to this Paragraph 14(d), and no acceptance of surrender of the Premises or other action on Landlord's part, shall be construed as an election to terminate this Lease unless a written notice of such intention be given to Tenant or unless the termination thereof be decreed by a court of competent jurisdiction.

(e)    Continuation of Lease. If Landlord does not elect to terminate this Lease on account of any event of default by Tenant, Landlord may, from time to time, without terminating this Lease, enforce all of its rights and remedies under this Lease, including the right to recover all Rent as it becomes due.

(f)    Landlord's Right to Perform. Except as specifically provided otherwise in this Lease, all covenants and agreements by Tenant under this Lease shall be performed by Tenant at Tenant's sole cost and expense and without any abatement or offset of Rent. If Tenant shall fail to pay any sum of money (other than Base Rent) or perform any other act on its part to be paid or performed hereunder and such failure shall continue for three (3) days with respect to monetary obligations (or ten (10) days with respect to non-monetary obligations, except in case of emergencies, in which such case, such shorter period of time as is reasonable under the circumstances) after Tenant's receipt of written notice thereof from Landlord, Landlord may, without waiving or releasing Tenant from any of Tenant's obligations, make such payment or perform such other act on behalf of Tenant. All sums so paid by Landlord and all necessary incidental costs incurred by Landlord in performing such other acts shall be payable by Tenant to Landlord within five (5) days after demand therefor as Additional Rent.

(g)    Rights and Remedies Cumulative. All rights, options and remedies of Landlord contained in this Paragraph 14 and elsewhere in this Lease shall be construed and held to be cumulative, and no one of them shall be exclusive of the other, and Landlord shall have the right to pursue any one or all of such remedies or any other remedy or relief which may be provided by law or in equity, whether or not stated in this Lease. Nothing in this Paragraph 14 shall be deemed to limit or otherwise affect Tenant's indemnification of Landlord pursuant to any provision of this Lease.

(h)    Tenant's Waiver of Redemption.  Tenant hereby waives and surrenders for itself and all those claiming under it, including creditors of all kinds, (i) any right and privilege which it or any of them may have under any present or future law to redeem any of the Premises or to have a continuance of this Lease after termination of this Lease or of Tenant's right of occupancy or possession pursuant to any court order or any provision hereof, and (ii) the benefits of any present or future law which exempts property from liability for debt or for distress for Rent.

(i)    Costs Upon Default and Litigation.  Tenant shall pay to Landlord and the holder of any Mortgage as Additional Rent all the expenses incurred by Landlord or such holder in connection with any default by Tenant hereunder or the exercise of any remedy by reason of any default by Tenant hereunder, including reasonable attorneys' fees and expenses.  If Landlord or any such holder shall be made a party to any litigation commenced against Tenant or any litigation pertaining to this Lease or the Premises, at the option of Landlord and/or any such holder, Tenant, at its expense, shall provide Landlord and/or such holder with counsel approved by Landlord and/or its mortgagees and shall pay all costs incurred or paid by Landlord and/or such holder in connection with such litigation.

## 15.    SURRENDER; HOLDOVER.

(a)    Surrender.  The voluntary or other surrender of this Lease by Tenant, or a mutual cancellation thereof, shall not constitute a merger, and shall, at the option of Landlord, operate as an assignment to Landlord of any or all subleases or subtenancies.  Upon the expiration or earlier termination of this Lease, Tenant agrees to timely and peaceably surrender the Premises to Landlord broom clean and in a state of good order, repair and condition, ordinary wear and tear and casualty damage excepted, with all of Tenant's personal property and Alterations removed from the Premises to the extent required under Paragraph 4 and all damage caused by such removal repaired as required by Paragraph 4.  The delivery of keys to any employee of Landlord or to Landlord's agent or any employee thereof alone will not be sufficient to constitute a termination of this Lease or a surrender of the Premises.

(b)    Holdover.  If Tenant retains possession of the Premises after the termination or expiration of the Lease Term, then Tenant shall, at Landlord's election become a tenant at sufferance (and not a tenant at will), such possession shall be subject to immediate termination by Landlord at any time, and all of the other terms and provisions of this Lease (excluding any expansion or renewal option or other similar right or option) shall be applicable during such holdover period, except that Tenant shall pay Landlord from time to time, upon demand, as Base Rent for the holdover period, an amount equal to one hundred fifty percent (150%) of the Base Rent in effect on the termination date, computed on a monthly basis for each month or part thereof during such holding over.  All other payments (including payment of Additional Rent) shall continue under the terms of this Lease.  In addition, Tenant shall be liable for all damages incurred by Landlord as a result of such holding over.  No holding over by Tenant, whether with or without consent of Landlord, shall operate to extend this Lease except as otherwise expressly provided, and this Paragraph shall not be construed as consent for Tenant to retain possession of the Premises.

## 16.    RIGHT TO CURE TENANT'S DEFAULT.

In the event Tenant is in Default under any provision of this Lease, other than for the payment of Rent, and Tenant has not cured same within thirty (30) days after receipt of Landlord's written notice, Landlord may cure such Default on behalf of Tenant, at Tenant's expense.  Landlord may also perform any obligation of Tenant, without notice to Tenant, should Landlord deem the performance of same to be an emergency.  Any monies expended by Landlord to cure any such Default(s), or resolve any deemed emergency shall be payable by Tenant as Additional Rent.  If Landlord incurs any expense, including reasonable attorney's fees, in prosecuting and/or defending any action or proceeding by reason of any emergency or Default, Tenant shall reimburse Landlord for same, as Additional Rent, with interest thereon at twelve percent (12%) annually from the date such payment is due Landlord.

## 17.    ASSUMPTION OF RISK AND HOLD HARMLESS.

(a)    Assumption of Risk.  To the greatest extent permitted by law, and except to the extent caused by Landlord's sole negligence, gross negligence or willful misconduct, Landlord shall not be liable for any injury, loss or damage suffered by Tenant or to any person or property occurring or incurred in or about the Premises, the Building or the Property from any cause EVEN IF SUCH LIABILITIES ARE CAUSED IN PART BY THE NEGLIGENCE OF ANY LANDLORD INDEMNITEE (DEFINED BELOW), BUT NOT TO THE EXTENT SUCH LIABILITIES ARE CAUSED BY THE SOLE NEGLIGENCE, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY

SUCH LANDLORD INDEMNITEE (DEFINED BELOW).  Without limiting the foregoing, neither Landlord nor any of its partners, officers, trustees, affiliates, directors, employees, contractors, agents or representatives (collectively, "Affiliates") shall be liable for and there shall be no abatement of Rent (except in the event of a casualty loss or a condemnation as set forth in Paragraph 18 of this Lease) for (i) any damage to Tenant's property stored with or entrusted to Affiliates of Landlord, (ii) loss of or damage to any property by theft or any other wrongful or illegal act, or (iii) any injury or damage to persons or property resulting from fire, explosion, falling plaster, steam, gas, electricity, water or rain which may leak from any part of the Building or the Property or from the pipes, appliances, appurtenances or plumbing works therein or from the roof, street or sub-surface or from any other place or resulting from dampness or any other cause whatsoever or from the acts or omissions of any other tenants, occupants or other visitors to the Building or the Property or from any other cause whatsoever, (iv) any diminution or shutting off of light, air or view by any structure which may be erected on lands adjacent to the Building, whether within or outside of the Property, or (v) any latent or other defect in the Premises, the Building or the Property.  Tenant shall give prompt notice to Landlord in the event of (i) the occurrence of a fire or accident in the Premises or in the Building, or (ii) the discovery of a defect therein or in the fixtures or equipment thereof.  This Paragraph 17(a) shall survive the expiration or earlier termination of this Lease.

(b)    Hold Harmless.  To the greatest extent permitted by law, and except to the extent caused by Landlord's sole negligence, gross negligence or willful misconduct, Tenant hereby agrees to indemnify, protect, defend and hold harmless Landlord and its designated property management company, and their respective partners, members, affiliates and subsidiaries, and all of their respective officers, trustees, directors, shareholders, employees, servants, partners, representatives, insurers and agents (collectively, "Landlord Indemnitees") for, from and against all liabilities, claims, fines, penalties, costs, damages or injuries to persons, damages to property, losses, liens, causes of action, suits, judgments and expenses (including court costs, attorneys' fees, expert witness fees and costs of investigation), of any nature, kind or description of any person or entity, directly or indirectly arising out of, caused by, or resulting from (in whole or part) (1) Tenant's construction of, or use, occupancy or enjoyment of, the Premises, (2) any activity, work or other things done, permitted or suffered by Tenant and its agents and employees in or about the Premises, (3) any breach or default in the performance of any of Tenant's obligations under this Lease, (4) any act, omission, negligence or willful misconduct of Tenant or any of its agents, contractors, employees, business invitees or licensees, or (5) any damage to Tenant's property, or the property of Tenant's agents, employees, contractors, business invitees or licensees, located in or about the Premises (collectively, "Liabilities"); EVEN IF SUCH LIABILITIES ARE CAUSED IN PART BY THE NEGLIGENCE OF ANY LANDLORD INDEMNITEE, BUT NOT TO THE EXTENT SUCH LIABILITIES ARE CAUSED BY THE SOLE NEGLIGENCE, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY SUCH LANDLORD INDEMNITEE.  This Paragraph 17(b) shall survive the expiration or earlier termination of this Lease.

18.    **CONDEMNATION**.

If the whole or any part of the Property or the Premises shall be taken in condemnation, or transferred by agreement in lieu of condemnation, either Tenant or Landlord may terminate this Lease by serving the other party with written notice of same, effective as of the taking date; provided in the case of termination by Tenant that at least fifty percent (50%) of the Premises is so taken and the remaining portion of the Premises is not adequate for the reasonable conduct of Tenant's business in the Premises.  If neither Tenant nor Landlord elect to terminate this Lease as aforesaid, then this Lease shall terminate on the taking date only as to that portion of the Premises so taken, and the Rent and other charges payable by Tenant shall be reduced proportionally.  Landlord shall be entitled to the entire condemnation award for all realty and improvements.  Tenant shall only be entitled to an award for Tenant's fixtures, personal property, and reasonable moving expenses, provided Tenant independently petitions the condemning authority for same.  Notwithstanding the aforesaid, if any condemnation takes a portion of the parking area the result of which does not reduce the minimum required parking ratio below that established by local code or ordinance, this Lease shall continue in full force and effect without modification.  This Paragraph 18 shall be Tenant's sole and exclusive remedy in the event of a taking or condemnation.  This Lease sets forth the terms and conditions upon which this Lease may terminate in the event of a taking or condemnation.  Accordingly, the parties waive the provisions of any applicable statutes permitting the parties to terminate this Lease as a result of a taking or condemnation.

19.    **INSURANCE**.

(a)     Landlord shall maintain in full force and effect policies of insurance covering the Property in an amount not less than one hundred percent (100%) of the Property's "replacement cost", as such term is defined in the Replacement Cost Endorsement attached to such policy, insuring against physical loss or damage generally included in the classification of "all risk" coverage.  Except as set forth below, such insurance shall be for the sole benefit of Landlord, and under Landlord's sole control.

(b)     Tenant at all times during the Lease Term shall, at its own expense, keep in full force and effect (A) commercial general liability insurance providing coverage against bodily injury and disease, including death resulting therefrom and property damage to a combined single limit of $1,000,000 to one or more than one person as the result of any one accident or occurrence, which shall include provision for contractual liability coverage insuring Tenant for the performance of its indemnity obligations set forth in this Lease, with an Excess Limits (Umbrella) Policy in the amount of $5,000,000, (B) worker's compensation insurance to the statutory limit, if any, and employer's liability insurance to the limit of $500,000 per occurrence, and (C) All Risk or Causes of Loss - Special Form property insurance, including fire and extended coverage, sprinkler leakage (including earthquake, sprinkler leakage), vandalism, malicious mischief, wind and/or hurricane coverage, and earthquake and flood coverage, covering full replacement value of all of Tenant's personal property, trade fixtures and improvements in the Premises.  Landlord and its designated property management firm shall be named an additional insured on each of said policies (excluding the worker's compensation policy) and said policies shall be issued by an insurance company or companies authorized to do business in the State and which have policyholder ratings not lower than "A-" and financial ratings not lower than "VII" in Best's Insurance Guide (latest edition in effect as of the Effective Date and subsequently in effect as of the date of renewal of the required policies).  EACH OF SAID POLICIES SHALL ALSO INCLUDE A WAIVER OF SUBROGATION PROVISION OR ENDORSEMENT IN FAVOR OF LANDLORD, AND AN ENDORSEMENT PROVIDING THAT LANDLORD SHALL RECEIVE THIRTY (30) DAYS PRIOR WRITTEN NOTICE OF ANY CANCELLATION OF, NONRENEWAL OF, REDUCTION OF COVERAGE OR MATERIAL CHANGE IN COVERAGE ON SAID POLICIES.  Tenant hereby waives its right of recovery against any Landlord Indemnitee of any amounts paid by Tenant or on Tenant's behalf to satisfy applicable worker's compensation laws.  The policies or duly executed certificates showing the material terms for the same, together with satisfactory evidence of the payment of the premiums therefor, shall be deposited with Landlord on the date Tenant first occupies the Premises and upon renewals of such policies not less than thirty (30) days prior to the expiration of the term of such coverage.  If certificates are supplied rather than the policies themselves, Tenant shall allow Landlord, at all reasonable times, to inspect the policies of insurance required herein.  All such policies shall be primary and non-contributing with or in excess of any insurance carried by Landlord.  Tenant shall not do any act which may make void or voidable any insurance on the Premises or Property; and, in the event Tenant's use of the Premises shall result in an increase in Landlord's insurance premiums, Tenant shall pay to Landlord upon demand, as Additional Rent, an amount equal to such increase in insurance.

(c)     Landlord, Tenant, and all parties claiming under them, each mutually release and discharge each other from responsibility for that portion of any loss or damage paid or reimbursed by an insurer of Landlord or Tenant under any fire, extended coverage or other property insurance policy maintained by Tenant with respect to its Premises or by Landlord with respect to the Building or the Property (or which would have been paid had the insurance required to be maintained hereunder been in full force and effect), no matter how caused, including negligence, and each waives any right of recovery from the other including, but not limited to, claims for contribution or indemnity, which might otherwise exist on account thereof.  Any fire, extended coverage or property insurance policy maintained by Tenant with respect to the Premises, or Landlord with respect to the Building or the Property, shall contain, in the case of Tenant's policies, a waiver of subrogation provision or endorsement in favor of Landlord, and in the case of Landlord's policies, a waiver of subrogation provision or endorsement in favor of Tenant, or, in the event that such insurers cannot or shall not include or attach such waiver of subrogation provision or endorsement, Tenant and Landlord shall obtain the approval and consent of their respective insurers, in writing, to the terms of this Lease.  Tenant agrees to indemnify, protect, defend and hold harmless Landlord, and its agents, officers, employees and contractors from and against any claim, suit or cause of action asserted or brought by Tenant's insurers for, on behalf of, or in the name of Tenant, including, but not limited to, claims for contribution, indemnity or subrogation, brought in contravention of this Paragraph.  The mutual releases, discharges and waivers contained in this provision shall apply EVEN IF THE LOSS OR DAMAGE TO WHICH THIS PROVISION APPLIES IS CAUSED SOLELY OR IN PART BY THE NEGLIGENCE OF LANDLORD OR TENANT.

734680170.3 7-Nov-19 15:48

(d)     Notwithstanding anything in this Lease to the contrary, Landlord shall not be responsible for, and Tenant releases and discharges Landlord from, and Tenant further waives any right of recovery from Landlord for, any loss for or from business interruption or loss of use of the Premises suffered by Tenant in connection with Tenant's use or occupancy of the Premises, EVEN IF SUCH LOSS IS CAUSED SOLELY OR IN PART BY THE NEGLIGENCE OF LANDLORD.

20.     **MORTGAGES**.

(a)     This Lease is subject and subordinated to any mortgages, deed to secure debt, deeds of trust or underlying leases, as well as to any extensions or modifications thereof (hereinafter collectively referred to as "Mortgages"), now of record or hereafter placed of record. In the event Landlord exercises its option to further subordinate this Lease, Tenant shall at the option of the holder of said Mortgage attorn to said holder. Any subordination shall be self-executing, but Tenant shall, at the written request of Landlord, execute such further assurances as Landlord deems desirable to confirm such subordination. In the event Tenant should fail or refuse to execute any instrument required under this Paragraph, within fifteen (15) days after Landlord's request, Landlord shall be granted a limited power of attorney to execute such instrument in the name of Tenant. In the event any existing or future lender, holding a Mortgage, deed of trust or other commercial paper, requires a modification of this Lease which does not increase Tenant's Rent hereunder, or does not materially change any obligation of Tenant hereunder, Tenant agrees to execute appropriate instruments to reflect such modification, upon request by Landlord.

(b)     If Tenant desires to obtain a loan secured by Tenant's personal property in the Premises and requests that Landlord execute a lien waiver in connection therewith, Landlord shall, in its reasonable discretion, based upon Landlord's review of Tenant's financial condition, agree to subordinate its lien rights to the rights of Tenant's lender pursuant to a lien subordination on Landlord's standard form, provided that Tenant delivers such request in writing to Landlord together with a nonrefundable processing fee in the amount of Three Hundred Dollars ($300.00). Notwithstanding the foregoing, however, if Landlord incurs processing costs (including attorneys' fees) in connection with any such request which exceed Three Hundred Dollars ($300.00), then Tenant shall reimburse Landlord for such excess within three (3) business days following Tenant's receipt of invoice(s) therefor from Landlord. Nothing in this Paragraph 20(b) shall permit Tenant to encumber its leasehold interest in the Premises.

21.     **LIENS**.

Tenant shall not mortgage or otherwise encumber or allow to be encumbered its interest herein without obtaining the prior written consent of Landlord. Should Tenant cause any mortgage, lien or other encumbrance (hereinafter singularly or collectively referred to as "Encumbrance") to be filed, against the Premises or the Property, Tenant shall dismiss or bond against same within fifteen (15) days after the filing thereof. If Tenant fails to remove said Encumbrance within said fifteen (15) days, Landlord shall have the absolute right to remove said Encumbrance by whatever measures Landlord shall deem convenient including, without limitation, payment of such Encumbrance, in which event Tenant shall reimburse Landlord, as Additional Rent, all costs expended by Landlord, including reasonable attorneys fees, in removing said Encumbrance. Tenant shall indemnify Landlord and its agents, employees and contractors against any damages, losses or costs arising out of any such claim. Tenant's indemnification of Landlord contained in this Paragraph shall survive the expiration or earlier termination of this Lease. All of the aforesaid rights of Landlord shall be in addition to any remedies which either Landlord or Tenant may have available to them at law or in equity.

22.     **GOVERNMENT REGULATIONS**.

Tenant, at Tenant's sole cost and expense, shall conform with all laws and requirements of any municipal, State, or Federal, authorities now in force, or which may hereafter be in force, pertaining to the Premises, as well as any requirement of Landlord's insurance carrier with respect to Tenant's use of the Premises. The judgment of any court, or an admission of Tenant in any action or proceeding at law, whether Landlord be a party thereto or not, shall be conclusive of the fact as between Landlord and Tenant.

23.     **NOTICES**.

734680170.3 7-Nov-19 15:48

All notices which are required to be given hereunder shall be in writing, and delivered by either (a) United States registered or certified mail, or (b) an overnight commercial package courier/delivery service with a follow-up letter sent by United States mail; and such notices shall be sent postage prepaid, addressed to the parties hereto at their respective addresses set forth in *Item 18* and *Item 19* of the Basic Lease Provisions. Either party may designate a different address by giving notice to the other party of same at the address set forth above. Notices shall be deemed received on the date of the return receipt. If any such notices are refused, or if the party to whom any such notice is sent has relocated without leaving a forwarding address, then the notice shall be deemed received on the date the notice-receipt is returned stating that the same was refused or is undeliverable at such address. For the purpose of this Lease, Landlord's counsel may provide Notices to Tenant on behalf of Landlord and such notices shall be binding on Tenant as if such notices have been provided directly by Landlord.

24.    **PARKING**.

Tenant shall be liable for all vehicles owned, rented or used by Tenant or Tenant's agents, employees, contractors and invitees in or about the Property. Tenant shall not store any equipment, inventory or other property in any trucks, nor store any trucks on the parking lot of the Property without the prior written consent of Landlord, such consent not to be unreasonably withheld, delayed or conditioned. In no event shall Tenant park any vehicle in or about a loading dock which exclusively services another tenant within the Property, or in a thoroughfare, driveway, street, or other area not specifically designated for parking. Landlord reserves the right to establish uniform rules and regulations for the loading and unloading of trucks upon the Property, which rules may include the right to designate specific parking spaces for tenants' use. Upon request by Landlord, Tenant shall move its trucks and vehicles if, in Landlord's reasonable opinion, said vehicles are in violation of any of the above restrictions. Notwithstanding the foregoing, Tenant shall have the right to use all available parking at the Building throughout the Lease Term.

25.    **OWNERSHIP**.

(a)    In the event of a sale or conveyance by Landlord of the Building or the Property, Landlord shall be released from any and all liability under this Lease. If the Security Deposit has been made by Tenant prior to such sale or conveyance, Landlord shall transfer the Security Deposit to the purchaser, and upon delivery to Tenant of notice thereof, Landlord shall be discharged from any further liability in reference thereto.

(b)    Landlord shall not be in default of any obligation of Landlord hereunder unless Landlord fails to perform any of its obligations under this Lease within thirty (30) days after receipt of written notice of such failure from Tenant; provided, however, that if the nature of Landlord's obligation is such that more than thirty (30) days are required for its performance, Landlord shall not be in default if Landlord commences to cure such default within the thirty (30) day period and thereafter diligently prosecutes the same to completion. All obligations of Landlord under this Lease will be binding upon Landlord only during the period of its ownership of the Premises and not thereafter. All obligations of Landlord hereunder shall be construed as covenants, not conditions; and, except as may be otherwise expressly provided in this Lease, Tenant may not terminate this Lease for breach of Landlord's obligations hereunder.

(c)    Notwithstanding anything contained in this Lease to the contrary, the obligations of Landlord under this Lease (including any actual or alleged breach or default by Landlord) do not constitute personal obligations of the individual partners, directors, officers, members or shareholders of Landlord or Landlord's members or partners, and Tenant shall not seek recourse against the individual partners, directors, officers, members or shareholders of Landlord or against Landlord's members or partners or against any other persons or entities having any interest in Landlord, or against any of their personal assets for satisfaction of any liability with respect to this Lease. Any liability of Landlord for a default by Landlord under this Lease, or a breach by Landlord of any of its obligations under the Lease, shall be limited solely to its interest in the Property, and in no event shall any personal liability be asserted against Landlord in connection with this Lease nor shall any recourse be had to any other property or assets of Landlord, its partners, directors, officers, members, shareholders or any other persons or entities having any interest in Landlord. Tenant's sole and exclusive remedy for a default or breach of this Lease by Landlord shall be either (i) an action for damages, or (ii) an action for injunctive relief; Tenant hereby waiving and agreeing that Tenant shall have no offset rights or right to terminate this Lease on account of any breach or default by Landlord under this Lease. Under no circumstances whatsoever shall Landlord ever be liable for punitive, consequential or special damages under this Lease and Tenant waives any rights it may have to such damages under this Lease in the event of a breach or default by Landlord under this Lease.

26.     **ESTOPPEL CERTIFICATES**.

Upon Landlord's written request, Tenant shall execute and return to Landlord, within fifteen (15) days, a statement in writing certifying that this Lease is unmodified and in full force and effect, that Tenant has no defenses, offsets or counterclaims against its obligations to pay any Rent or to perform any other covenants under this Lease, that there are no uncured Defaults of Landlord or Tenant, and setting forth the dates to which the Rent and other charges have been paid, and any other information reasonably requested by Landlord. In the event Tenant fails to return such statement within said fifteen (15) days, setting forth the above or, alternatively, setting forth those lease modifications, defenses and/or uncured Defaults, Tenant shall be in default hereunder or, at Landlord's election, it shall be deemed that Landlord's statement is correct with respect to the information therein contained. Any such statement delivered pursuant to this Paragraph may be relied upon by any prospective purchaser, holder of any Mortgage, or assignee of any such holder of any Mortgage of the Property.

27.     **CONDITION OF PREMISES**.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THIS LEASE, LANDLORD HEREBY DISCLAIMS ANY EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY THAT THE PREMISES ARE SUITABLE FOR TENANT'S INTENDED PURPOSE OR USE, WHICH DISCLAIMER IS HEREBY ACKNOWLEDGED BY TENANT. THE TAKING OF POSSESSION BY TENANT SHALL BE CONCLUSIVE EVIDENCE THAT TENANT:

(i)     ACCEPTS THE PREMISES, THE BUILDING AND LEASEHOLD IMPROVEMENTS AS SUITABLE FOR THE PURPOSES FOR WHICH THE PREMISES WERE LEASED;

(ii)     ACCEPTS THE PREMISES AND PROPERTY AS BEING IN GOOD AND SATISFACTORY CONDITION;

(iii)     WAIVES ANY DEFECTS IN THE PREMISES AND ITS APPURTENANCES EXISTING NOW OR IN THE FUTURE, EXCEPT THAT TENANT'S TAKING OF POSSESSION SHALL NOT BE DEEMED TO WAIVE LANDLORD'S COMPLETION OF MINOR FINISH WORK ITEMS THAT DO NOT INTERFERE WITH TENANT'S OCCUPANCY OF THE PREMISES; AND

(iv)     WAIVES ALL CLAIMS BASED ON ANY IMPLIED WARRANTY OF SUITABILITY OR HABITABILITY.

28.     **INTENTIONALLY DELETED**.

29.     **PERSONAL PROPERTY TAXES**.

Tenant shall timely pay all taxes assessed against Tenant's personal property and all improvements to the Premises in excess of Landlord's standard installations. If said personal property and improvements are assessed with the property of Landlord, Tenant shall pay to Landlord an amount equal to Tenant's share of such taxes, within ten (10) days after receipt of Landlord's statement for same.

30.     **BROKERAGE**.

Landlord and Tenant each warrant to the other that it has had no dealings with any real estate broker or agent in connection with the negotiation of this Lease, excepting only those referred to in *Item 21* and *Item 22* of the Basic Lease Provisions ("Brokers") and that it knows of no other real estate broker or agent who is or might be entitled to a commission in connection with this Lease. Landlord agrees to pay brokerage commissions to the Brokers as set forth in separate written agreements between Landlord and Brokers. Landlord and Tenant each hereby agree to indemnify, defend and hold the other harmless from and against all claims for any brokerage commissions, finders' fees or similar payments by any persons other than those Brokers listed above and all costs, expenses and liabilities incurred in connection with such claims, including reasonable attorneys' fees and costs.

31.  **SEVERABILITY**.

In the event any provision of this Lease is invalid or unenforceable, the same shall not affect or impair the validity or enforceability of any other provision.

32.  **HAZARDOUS MATERIALS**.

Except for ordinary and general office supplies, such as copier toner, liquid paper, glue, ink and common household cleaning materials (some or all of which may constitute "Hazardous Materials" as defined in this Lease), Tenant agrees not to cause or permit any Hazardous Materials to be brought upon, stored, used, handled, generated, released or disposed of on, in, under or about the Premises, the Building, the common areas or any other portion of the Property by Tenant, its agents, employees, subtenants, assignees, licensees, contractors or invitees (collectively, "Tenant's Parties"), without the prior written consent of Landlord, which consent Landlord may withhold in its sole and absolute discretion. Concurrently with the execution of this Lease and annually thereafter, within ten (10) days of written request from Landlord, Tenant agrees to complete and deliver to Landlord an Environmental Questionnaire in the form of *Exhibit H* attached hereto. Upon the expiration or earlier termination of this Lease, Tenant agrees to promptly remove from the Premises, the Building and the Property, at its sole cost and expense, any and all Hazardous Materials, including any equipment or systems containing Hazardous Materials which are installed, brought upon, stored, used, generated or released upon, in, under or about the Premises, the Building and/or the Property or any portion thereof by Tenant or any of Tenant's Parties. To the fullest extent permitted by law, Tenant agrees to promptly indemnify, protect, defend and hold harmless Landlord and Landlord's partners, officers, directors, employees, agents, successors and assigns (collectively, "Landlord Indemnified Parties") from and against any and all claims, damages, judgments, suits, causes of action, losses, liabilities, penalties, fines, expenses and costs (including, without limitation, clean-up, removal, remediation and restoration costs, sums paid in settlement of claims, attorneys' fees, consultant fees and expert fees and court costs) which arise or result from the presence of Hazardous Materials on, in, under or about the Premises, the Building or any other portion of the Property and which are caused or permitted by Tenant or any of Tenant's Parties. Tenant agrees to promptly notify Landlord of any release of Hazardous Materials in the Premises, the Building or any other portion of the Property which Tenant becomes aware of during the Lease Term, whether caused by Tenant or any other persons or entities. In the event of any release of Hazardous Materials caused or permitted by Tenant or any of Tenant's Parties, Landlord shall have the right, but not the obligation, to cause Tenant to immediately take all steps Landlord deems necessary or appropriate to remediate such release and prevent any similar future release to the satisfaction of Landlord and the holder of any Mortgage. At all times during the Lease Term, Landlord will have the right, but not the obligation, to enter upon the Premises to inspect, investigate, sample and/or monitor the Premises to determine if Tenant is in compliance with the terms of this Lease regarding Hazardous Materials. As used in this Lease, the term "Hazardous Materials" shall mean and include any hazardous or toxic materials, substances or wastes as now or hereafter designated under any law, statute, ordinance, rule, regulation, order or ruling of any agency of the State, the United States Government or any local governmental authority, including, without limitation, asbestos, petroleum, petroleum hydrocarbons and petroleum based products, urea formaldehyde foam insulation, polychlorinated biphenyls ("PCBs"), and freon and other chlorofluorocarbons. The provisions of this Paragraph 32 will survive the expiration or earlier termination of this Lease.

33.  **MISCELLANEOUS**.

(a)  In addition to the terms and conditions set forth herein, Landlord and Tenant shall be bound by those certain Rules and Regulations, set forth on *Exhibit D*, attached hereto and made a part hereof.

(b)  All of the covenants of Tenant hereunder shall be deemed and construed to be "conditions" as well as "covenants" as though both words were used in each separate instance.

(c)  This Lease shall not be recorded by Tenant without the prior written consent of Landlord.

(d)  The paragraph headings appearing in this Lease are inserted only as a matter of convenience, and in no way define or limit the scope of any paragraph.

25

(e)     Any prevention, delay or stoppage due to strikes, lockouts, labor disputes, acts of God, acts of war, terrorism, terrorist activities, inability to obtain services, labor, or materials or reasonable substitutes therefore, governmental actions, civil commotions, fire, flood, earthquake or other casualty, and other causes beyond the reasonable control of the party obligated to perform, except with respect to the obligations imposed with regard to Rent and other charges to be paid by Tenant pursuant to this Lease (collectively, a "Force Majeure"), notwithstanding anything to the contrary contained in this Lease, shall excuse the performance of such party for a period equal to any such prevention, delay or stoppage and, therefore, if this Lease specifies a time period for performance of an obligation of either party, that time period shall be extended by the period of any delay in such party's performance caused by a Force Majeure.

(f)     Submission of this Lease shall not be deemed to be an offer, or an acceptance, or a reservation of the Premises; and Landlord shall not be bound hereby until Landlord has delivered to Tenant a fully executed copy of this Lease, signed by both of the parties on the last page of this Lease in the spaces herein provided. Until such delivery, Landlord reserves the right to exhibit and lease the Premises to other prospective tenants. Notwithstanding anything contained herein to the contrary, Landlord may withhold possession of the Premises from Tenant until such time as Tenant has paid to Landlord the Security Deposit, and the first month of Base Rent.

(g)     All of the terms of this Lease shall extend to and be binding upon the parties hereto and their respective heirs, executors, administrators, successors and assigns.

(h)     This Lease and the parties' respective rights hereunder shall be governed by the laws of the State of Arizona. In the event of litigation, suit shall be brought in Maricopa County, Arizona. **LANDLORD AND TENANT WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY OF ANY CONTRACT OR TORT CLAIM, COUNTERCLAIM, CROSS-COMPLAINT, OR CAUSE OF ACTION IN ANY ACTION, PROCEEDING, OR HEARING BROUGHT BY EITHER PARTY AGAINST THE OTHER ON ANY MATTER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS LEASE, THE RELATIONSHIP OF LANDLORD AND TENANT, OR TENANT'S USE OR OCCUPANCY OF THE LEASED PREMISES, INCLUDING WITHOUT LIMITATION ANY CLAIM OF INJURY OR DAMAGE OR THE ENFORCEMENT OF ANY REMEDY UNDER ANY CURRENT OR FUTURE LAW, STATUTE, REGULATION, CODE, OR ORDINANCE.**

(i)     In the event of any legal action or proceeding brought by either party against the other arising out of this Lease, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs (including, without limitation, court costs and expert witness fees) incurred in such action. Such amounts shall be included in any judgment rendered in any such action or proceeding.

(j)     No waiver by Landlord of any provision of this Lease or of any breach by Tenant hereunder shall be deemed to be a waiver of any other provision hereof, or of any subsequent breach by Tenant. Landlord's consent to or approval of any act by Tenant requiring Landlord's consent or approval under this Lease shall not be deemed to render unnecessary the obtaining of Landlord's consent to or approval of any subsequent act of Tenant. No act or thing done by Landlord or Landlord's agents during the Lease Term shall be deemed an acceptance of a surrender of the Premises, unless in writing signed by Landlord. The delivery of the keys to any employee or agent of Landlord shall not operate as a termination of the Lease or a surrender of the Premises. The acceptance of any Rent by Landlord following a breach of this Lease by Tenant shall not constitute a waiver by Landlord of such breach or any other breach unless such waiver is expressly stated in a writing signed by Landlord.

(k)     Landlord shall be the sole determinant of the type and amount of any access control or courtesy guard services to be provided to the Property, if any. IN ALL EVENTS, LANDLORD SHALL NOT BE LIABLE TO TENANT, AND TENANT HEREBY WAIVES ANY CLAIM AGAINST LANDLORD, FOR (I) ANY UNAUTHORIZED OR CRIMINAL ENTRY OF THIRD PARTIES INTO THE PREMISES, THE BUILDING OR THE PROPERTY, (II) ANY DAMAGE TO PERSONS, OR (III) ANY LOSS OF PROPERTY IN AND ABOUT THE PREMISES, THE BUILDING OR THE PROPERTY, BY OR FROM ANY UNAUTHORIZED OR CRIMINAL ACTS OF THIRD PARTIES, REGARDLESS OF ANY ACTION, INACTION, FAILURE, BREAKDOWN, MALFUNCTION AND/OR INSUFFICIENCY OF THE ACCESS CONTROL OR COURTESY GUARD SERVICES PROVIDED BY LANDLORD.

(l)      Upon Tenant's paying the Rent reserved hereunder and observing and performing all of the covenants, conditions and provisions on Tenant's part to be observed and performed hereunder, Tenant shall have quiet possession of the Premises for the term hereof without hindrance or ejection by any person lawfully claiming under Landlord, subject to the provisions of this Lease and to the provisions of any (i) covenants, conditions and restrictions, (ii) master lease, or (iii) Mortgages to which this Lease is subordinate or may be subordinated.

(m)      Time is of the essence of this Lease and each and all of its provisions.

(n)      If Tenant is a corporation or limited liability company, each individual executing this Lease on behalf of Tenant hereby covenants and warrants that Tenant is a duly authorized and existing corporation or limited liability company, that Tenant has and is qualified to do business in the State of Arizona, that the corporation or limited liability company has full right and authority to enter into this Lease, and that each person signing on behalf of the corporation is authorized to do so. If Tenant is a partnership or trust, each individual executing this Lease on behalf of Tenant hereby covenants and warrants that he is duly authorized to execute and deliver this Lease on behalf of Tenant in accordance with the terms of such entity's partnership or trust agreement. Tenant shall provide Landlord on demand with such evidence of such authority as Landlord shall reasonably request, including, without limitation, resolutions, certificates and opinions of counsel. This Lease shall not be construed to create a partnership, joint venture or similar relationship or arrangement between Landlord and Tenant hereunder.

(o)      If two or more individuals, corporations, partnerships or other business associations (or any combination of two or more thereof) shall sign this Lease as Tenant, the liability of each such individual, corporation, partnership or other business association to pay Rent and perform all other obligations hereunder shall be deemed to be joint and several, and all notices, payments and agreements given or made by, with or to any one of such individuals, corporations, partnerships or other business associations shall be deemed to have been given or made by, with or to all of them. In like manner, if Tenant shall be a partnership or other business association, the members of which are, by virtue of statute or federal law, subject to personal liability, then the liability of each such member shall be joint and several.

(p)      This Agreement is the result of arms-length negotiations between Landlord and Tenant and their respective attorneys. Accordingly, neither party shall be deemed to be the author of this Lease and this Lease shall not be construed against either party.

(q)      Upon Landlord's written request, Tenant shall promptly furnish Landlord, from time to time, with the most current audited financial statements prepared in accordance with generally accepted accounting principles, certified by Tenant and an independent auditor to be true and correct, reflecting Tenant's then current financial condition.

(r)      This Lease may be executed in several counterparts, each of which shall be deemed an original, and all of which shall constitute but one and the same instrument.

(s)      <u>OFAC Compliance</u>.

(i)      <u>Certification</u>. Tenant certifies, represents, warrants and covenants that:

(A)      It is not acting and will not act, directly or indirectly, for or on behalf of any person, group, entity, or nation named by any Executive Order or the United States Treasury Department as a terrorist, "<u>Specially Designated National and Blocked Person</u>", or other banned or blocked person, entity, nation or transaction pursuant to any law, order, rule, or regulation that is enforced or administered by the Office of Foreign Assets Control; and

(B)      It is not engaged in this transaction, directly or indirectly on behalf of, or instigating or facilitating this transaction, directly or indirectly on behalf of, any such person, group, entity or nation.

(ii)    Indemnity.  Tenant hereby agrees to defend (with counsel reasonably acceptable to Landlord), indemnify and hold harmless Landlord and the Landlord Indemnitees from and against any and all Claims arising from or related to any such breach of the foregoing certifications, representations, warranties and covenants.

(t)    Nondisclosure of Lease Terms.  Tenant agrees that the terms of this Lease are confidential and constitute proprietary information of Landlord, and that disclosure of the terms hereof could adversely affect the ability of Landlord to negotiate with other tenants.  Tenant hereby agrees that Tenant and its partners, officers, directors, employees, agents, real estate brokers and sales persons and attorneys shall not disclose the terms of this Lease to any other person without Landlord's prior written consent, except to any accountants of Tenant in connection with the preparation of Tenant's financial statements or tax returns, to an assignee of this Lease or subtenant of the Premises, or to an entity or person to whom disclosure is require by applicable law or in connection with any action brought to enforce this Lease.

(u)    [Intentionally Deleted]

(v)    ERISA.  Tenant is not an "employee benefit plan" as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), which is subject to Title I of ERISA, or a "plan" as defined in Section 4975(e)(1) of the Internal Revenue Code of 1986, which is subject to Section 4975 of the Internal Revenue Code of 1986; and (b) the assets of Tenant do not constitute "plan assets" of one or more such plans for purposes of Title I of ERISA or Section 4975 of the Internal Revenue Code of 1986; and (c) Tenant is not a "governmental plan" within the meaning of Section 3(32) of ERISA, and assets of Tenant do not constitute plan assets of one or more such plans; or (d) transactions by or with Tenant are not in violation of state statutes applicable to Tenant regulating investments of and fiduciary obligations with respect to governmental plans.

(w)    No Easement For Light, Air And View.  This Lease conveys to Tenant no rights for any light, air or view.  No diminution of light, air or view, or any impairment of the visibility of the Premises from inside or outside the Building, by any structure or other object that may hereafter be erected (whether or not by Landlord) shall entitle Tenant to any reduction of Rent under this Lease, constitute an actual or constructive eviction of Tenant, result in any liability of Landlord to Tenant, or in any other way affect this Lease or Tenant's obligations hereunder.

(x)    Inducement Recapture in Event of Default.  Any agreement by Landlord for free or abated rent or other charges applicable to the Premises, or for the giving or paying by Landlord to or for Tenant of any cash or other bonus, inducement or consideration for Tenant's entering into this Lease, including, but not limited to, any tenant finish allowance, all of which concessions are hereinafter referred to as "Inducement Provisions" shall be deemed conditioned upon Tenant's full and faithful performance of all of the terms, covenants and conditions of this Lease to be performed or observed by Tenant during the term hereof as the same may be extended.  Upon the occurrence of an event of default (as defined in Paragraph 14) of this Lease by Tenant, should such default not be cured as provided herein, any such Inducement Provision shall automatically be deemed deleted from this Lease and of no further force or effect, and any rent, other charge, bonus, inducement or consideration theretofore abated, given or paid by Landlord under such an Inducement Provision shall be immediately due and payable by Tenant to Landlord, and recoverable by Landlord, as additional rent due under this Lease.  The acceptance by Landlord of rent or the cure of the event of default which initiated the operation of this Paragraph 33(x) shall not be deemed a waiver by Landlord of the provisions of this Lease unless specifically so stated in writing by Landlord at the time of such acceptance.

(y)    This Lease may be executed in any number of counterparts, each of which shall be deemed an original, and all of such counterparts shall constitute one agreement.  To facilitate execution of this Lease, the parties may execute and exchange telefaxed or e-mailed counterparts of the signature pages and such counterparts shall serve as originals.

*[SIGNATURE PAGE TO FOLLOW]*

WHEREFORE, Landlord and Tenant have respectively executed this Lease the day and year first above written.

**LANDLORD:**                                              **TENANT:**

**TGA CACTUS DC II LLC,**                      **VITAL PHARMACEUTICALS, INC.,**
**a Delaware limited liability company**      a Florida _____ corporation

By:   **Nuveen Alternatives Advisors LLC,**
       **a Delaware limited liability company,**
       **its Manager**

By:   _____              By:   _____
Name:       Keith Awad                          Name:       John H. Owoc
Title:       Senior Director                     Title:       C.E.O.

Date:   11/15 _____, 2019                   Date:   11/12/19 _____, 2019

**EXHIBIT A**

**PREMISES**

A - 1



**EXHIBIT B**

**LEGAL DESCRIPTION OF PROPERTY**

734680170.3 7-Nov-19 15:48

## **LEGAL DESCRIPTION**

PARCEL NO. 1:

Lot 1, RIVERSIDE INDUSTRIAL CENTER - UNIT ONE AMENDED, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona recorded in Book 909 of Maps, page 3.

EXCEPT all rights to any and all minerals, ores and metals of every kind and character, and all coal, asphaltum, oil, gases, fertilizers, fossils and other like substances in or under said land as reserved to the State of Arizona by Patent recorded in Book 120 of Deeds, page 168, records of Maricopa County, Arizona.

PARCEL NO. 2:

Easements for storm water facilities, utilities, ingress and egress and enjoyment of common areas as set forth in Amended and Restated Declaration of Covenants, Conditions and Restrictions and Grant of Easements For Riverside Industrial Center dated February 05, 2007, recorded February 12, 2007 in Recording No. 2007-0172606, records of Maricopa County, Arizona and re-recorded May 01, 2007 in Recording No. 2007-0505589 of Official Records and Assignment of Declarant's Rights in Recording No. 2007-0172609, and Assignment of Declarant's Rights in Recording No. 2012-0402033 records, Maricopa County Arizona.

PARCEL NO. 3:

An easement for access as set forth on the final plat of Riverside Industrial Center – Unit Two, according to the plat of record in Book 910 of Maps, page 24, records of Maricopa County, Arizona.

**EXHIBIT C**

**WORK LETTER**

THIS WORK LETTER is attached as <u>Exhibit C</u> to the Industrial Lease between **TGA CACTUS DC II LLC**, a Delaware limited liability company, as Landlord, and **VITAL PHARMACEUTICALS, INC.**, a _____ corporation, as Tenant, and constitutes the further agreement between Landlord and Tenant as follows:

(a)    Landlord agrees to furnish or perform, at Landlord's sole cost and expense, those items of construction and those improvements (the "<u>Tenant Improvements</u>") specified below:

(i)    Install motion activated LED lighting, as more fully shown on the Plans;

(ii)    Upgrade warehouse to be air conditioned and add insulation to the Building and roll up doors per code as more fully shown on the Plans, including, without limitation, with approximately eighty-two (82) ten (10) ton units with 8' concentric duct drops, all as more particularly shown on the Plans;

(iii)    Paint all walls white, utilizing building standard materials;

(iv)    Install four (4) additional Big Ass Fans (or equivalent), in accordance with Plans;

(v)    Provide an allowance up to $50,000 toward flooring, paint and lighting upgrades for the office in the Building;

(vi)    Install thirty-two (32) mechanical dock locks; and

(vii)    Such other improvements being set forth and described on the plans mutually approved by Landlord and Tenant dated _____, 2019, and as shown on <u>Exhibit C-1</u> attached hereto and incorporated herein for all purposes ("<u>Plans</u>").

(b)    If Tenant shall desire any changes in the Tenant Improvements, Tenant shall so advise Landlord in writing and Landlord shall determine whether such changes can be made in a reasonable and feasible manner. Any and all costs of reviewing any requested changes, and any and all costs of making any changes to the Tenant Improvements which Tenant may request and which Landlord may agree to shall be at Tenant's sole cost and expense and shall be paid to Landlord upon demand and before execution of the change order.

(c)    Landlord shall proceed with and complete the construction of the Tenant Improvements. As soon as such improvements have been Substantially Completed, Landlord shall notify Tenant in writing of the date that the Tenant Improvements were Substantially Completed. The Tenant Improvements shall be deemed substantially completed ("<u>Substantially Completed</u>", or any grammatical variant thereof) when, in the opinion of the Landlord's architect (whether an employee or agent of Landlord or a third party architect) ("<u>Architect</u>"), the Premises are substantially completed except for punch list items which do not prevent in any material way the use of the Premises for the purposes for which they were intended. In the event Tenant, its employees, agents, or contractors cause construction of such Tenant Improvements to be delayed, the date of Substantial Completion shall be deemed to be the date that, in the opinion of the Architect, Substantial Completion would have occurred if such delays had not taken place. Without limiting the foregoing, Tenant shall be solely responsible for delays caused by Tenant's request for any changes in the plans, Tenant's request for long lead items or Tenant's interference with the construction of the Tenant Improvements (each of the foregoing, a "<u>Tenant Delay</u>"), and such Tenant Delays shall not cause a deferral of the Commencement Date beyond what it otherwise would have been. After the Commencement Date Tenant shall, upon demand, execute and deliver to Landlord a letter of acceptance of delivery of the Premises. In the event of any dispute as to the Tenant Improvements, including the Commencement Date, the certificate of the Architect shall be conclusive absent manifest error. Notwithstanding anything herein to the contrary, Landlord covenants and

734680170.3 7-Nov-19 15:48

agrees that as of the Commencement Date and for a period of one (1) year after the Commencement Date ("One Year Period"), all Buildings systems shall be in good working order and condition, including, without limitation, all fire systems, mechanical, plumbing, electrical and ventilation systems, and all light fixtures, loading doors, loading door equipment, interior office doors, entrance gates to the Premises and the guard shack.  If during the One Year Period any of the Building Systems are found to not be in good working order and condition, then following written notice to Landlord, Landlord agrees, at Landlord's sole cost and expense, to fix such Building systems so that such Building systems are in good working order and condition.

(d)    The failure of Tenant to take possession of or to occupy the Premises shall not serve to relieve Tenant of obligations arising on the Commencement Date or delay the payment of Rent by Tenant.  Delay in putting Tenant in possession of the Premises shall not serve to extend the Lease Term of this Lease or to make Landlord liable for any damages arising therefrom.

(e)    Except for incomplete punch list items, Tenant upon the Commencement Date shall have and hold the Premises as the same shall then be without any liability or obligation on the part of Landlord for making any further alterations or improvements of any kind in or about the Premises.

734680170.3 7-Nov-19 15:48

**EXHIBIT C-1**

<u>**DESCRIPTION OF TENANT IMPROVEMENTS**</u>

734680170.3 7-Nov-19 15:48



**FINAL - COST SUMMARY**

| | |
|---|---|
| Project: | **BANG ENERGY T.I.** |
| Location: | 4747 W Buckeye Rd, Phoenix, AZ |
| Architect: | DEUTSCH ARCHITECTURE GROUP |
| Est. Date: | 31-Mar-20 |
| Revision #1: | 6-May-20 |

Gross Area:    376,760   sf

 

| Division | | C.S.I | Description | Bid | Div. Subtotal | $/SF of Gross Area: | Notes |
|---|---|---|---|---|---|---|---|
| **1** | **Design & Engineering** | | | **Division - Total:** | **91,600.00** | **0.24** | |
| | | 1310.00 | Evaluation & Planning Services | 91,600.00 | | 0.24 | Architectural & Engineering fee for Landlord's Scope of Work. Includes city submittal & review, material specifications submittal review & approval, weekly progress meetings, & coordination throughout project duration. |
| | | 1002.60 | Reimbursables, Plans/Specs. | By Owner | | | Reproduction of plans and specs. |
| **1** | **Permits/Develop. Fees/Utility Company Charges** | | | **Division - Total:** | **16,633.20** | **0.04** | |
| | | 1215.00 | Plan Review Fee | 16,633.20 | | 0.04 | Allowance for plan review and permit fee based on City of Phoenix fee schedule - for Landlord's scope of work only. |
| | | 1216.00 | Electric, Phone, Internet, Gas Company Charges, Costs & Fees | By Owner | | | |
| **1** | **Construction Cleanup** | | | **Division - Total:** | **12,553.84** | **0.03** | |
| | | 1741.30 | General Clean-Up | 1,000.00 | | 0.00 | Maintain a clean & safe job site. |
| | | 1744.30 | Construction Rough And Final Clean | 11,553.84 | | 0.03 | Final clean NW Office at completion. Includes machine scrubbing unoccupied warehouse floors. |
| **2** | **Site Construction** | | | **Division - Total:** | **2,350.00** | **0.01** | |
| | | 2411.60 | Demolition | 2,350.00 | | 0.01 | Remove flooring throughout at exiting NW Office. |
| **5** | **Metals** | | | **Division - Total:** | **30,240.00** | **0.08** | |
| | | 5100.00 | Fencing & Joist Reinforcement | 30,240.00 | | 0.08 | Reinforce joists with additional L-angles at HVAC rooftop unit locations. |
| **6** | **Woods, Plastics & Composites** | | | **Division - Total:** | **117,290.00** | **0.31** | |
| | | 6100.00 | Rough Carpentry | 114,370.00 | | 0.30 | H-frame support for all HVAC rooftop units. |
| **7** | **Thermal & Moisture Protection** | | | **Division - Total:** | **195,725.50** | **0.52** | |
| | | 7210.00 | Insulation | 108,537.50 | | 0.29 | R-13 fiberglass batt insulation w/ white scrim sheet pinned to tilt walls from 10' aff to deck Patch & repair deck insulation at all rooftop unit locations and at all locations where exhaust fans are capped. |
| | | 7500.00 | Roofing | 87,188.00 | | 0.23 | Flash roof at warehouse HVAC unit locations. |
| **8** | **Openings** | | | **Division - Total:** | **N/A** | | |
| | | 8110.00 | Doors, Frames & Hardware | By Tenant | | | (1)3070 solid core wood doors in Timely clear anodized Aluminum frames throughout new SE Office. Includes (4) 3070 Hm Doors in Hm Frames at Cold Storage Room. |
| | | 8330.00 | Overhead Doors | By Tenant | | | (4) overhead rapid doors per plan notes. |
| | | 8800.00 | Interior Glazing | By Tenant | | | Windows at SE office per plans. |

CONFIDENTIAL/PROPRIETARY

EXHIBIT 'A'



**FINAL - COST SUMMARY**

| | |
|---|---|
| Project: | **BANG ENERGY T.I.** |
| Location: | 4747 W Buckeye Rd, Phoenix, AZ |
| Architect: | DEUTSCH ARCHITECTURE GROUP |
| Bid Date: | 31-Mar-20 |
| Revision #: | 6-May-20 |

Gross Area:     376,760   sf

 

| Division | | C.S.I | Description | Bid | Div. Subtotal | $/SF of Gross Area | Notes |
|---|---|---|---|---|---|---|---|
| 9 | Finishes | | | | 3,000.00 | 0.01 | |
| | | 9200.00 | Framing & Drywall | 3,000.00 | | 0.01 | Allowance to patch & repair drywall at NW Office. |
| | | 9500.00 | Acoustical Ceiling | By Tenant | | | New Ceiling grid and tile to match existing offices at SE Office area. |
| 9 | Flooring/Ceramic | | | | 13,750.00 | 0.04 | |
| | | 9300.10 | Flooring | 13,750.00 | | 0.04 | New floor finishes in existing NW Office to match with floor selections made in NE Office. Restrooms to remain as-is at NE Office. |
| 9 | Painting | | | | 28,780.00 | 0.08 | |
| | | 9900.00 | Interior Painting | 28,780.00 | | 0.08 | Paint NW Office throughout with paint patch in warehouse tilt walls. |
| 11 | Equipment | | | | 192,500.00 | 0.51 | |
| | | 11130.00 | Dock Equipment | 192,500.00 | | 0.51 | Supply & Install (32) truck restraints |
| 21 | Fire Suppression | | | | 21,700.00 | 0.06 | |
| | | 21100.00 | Fire Protection System | 21,700.00 | | 0.06 | Drop sprinkler heads at each HVAC concentric duct drop locations. |
| 22 | Plumbing | | | | 3,000.00 | 0.01 | |
| | | 22100.00 | Plumbing System | 3,000.00 | | 0.01 | Assumed existing plumbing fixtures are in good working condition. |
| 23 | HVAC | | | | 1,088,425.00 | 2.89 | |
| | | 23050.00 | HVAC System | 1,088,425.00 | | 2.89 | (52) 10.0T Units with concentric duct drops in warehouse. Existing HVLS fans in warehouse to remain as-is. |
| 26 | Electrical | | | | 643,410.00 | 1.71 | |
| | | 26050.00 | Electrical Systems - Office & Warehouse | 643,410.00 | | 1.71 | Replace existing warehouse lights with new LED high-bay lights at same location. New panels with Aluminum feeders in lieu of Copper feeders. Includes power to warehouse HVAC units and new LED lights at existing NW Office. |
| | | 28310.00 | Fire Life Safety Systems | Excluded | | | As per Building Fire Alarm maintenance contractor - Aero Automatic, this building does not require fire alarm notification in warehouse and in office. |



**FINAL - COST SUMMARY**

Project: *BANG ENERGY T.I.*
Location: 4747 W Buckeye Rd, Phoenix, AZ
Architect: DEUTSCH ARCHITECTURE GROUP
Est. Date: 31-Mar-20                                Gross Area:          376,760   sf
Revision #1: 6-May-20




| Division | C.S.I | Description | Bid | Div. Subtotal | $/SF of Gross Area | Notes |
|---|---|---|---|---|---|---|
| | | **Subtotal COST BREAKDOWN:** | | 2,460,357.68 | 6.53 | |
| **1** | **General Conditions/Supervision** | | **Division - Total:** | **84,906.01** | **0.23** | |
| | 1000.01 | General Conditions | 21,938.07 | | 0.06 | |
| | 1311.05 | Supervision/Project Management | 62,967.94 | | 0.17 | |

| | 1211.70 | CONTRACTOR'S CONTINGENCY (0%) | | Excluded | | |
| | 0120.00 | GENERAL LIABILITY INSURANCE | | 27,330.61 | 0.07 | |
| | 0110.00 | BUILDERS RISK INSURANCE - NON-COMBUSTIBLE | | 1,739.48 | 0.00 | |
| | 0120.30 | DESIGN BUILD INSURANCE | | 10,299.73 | 0.03 | |
| | 0100.00 | PAYMENT & PERFORMANCE BOND | | Excluded | | |
| | 0160.00 | SALES TAX (PHOENIX, AZ - 5.59%) | | 152,105.58 | 0.40 | |
| | 0140.00 | CONTRACTOR'S OVERHEAD & PROFIT | | 136,869.95 | 0.36 | |
| | | **TOTAL:** | | $2,874,268.96 | $7.63 | |



AZ ROC B-01 082904
Willmeng Construction, Inc.

Printed on Wed May 6, 2020 at 10:06 am MST

Job #: 20-01-3207 Bang Energy Phase II
4747 W. Buckeye Road
Phoenix, Arizona 85043

## Current Set

| Drawing No. | Drawing Title | Revision | Drawing Date | Received Date | Set |
|---|---|---|---|---|---|
| **General** | | | | | |
| C5 | COVER SHEET | 0 | 03/13/2020 | | CD Set |
| G-011 | LIFE SAFETY PLAN | 0 | 03/13/2020 | | CD Set |
| G-020 | BUILDING GENERAL NOTES | 0 | 03/13/2020 | | CD Set |
| G-021 | MOUNTING HEIGHTS AND CLEARANCE NOTES | 0 | 03/13/2020 | | CD Set |
| **Architectural** | | | | | |
| A-100 | OVERALL FLOOR PLAN | 0 | 03/13/2020 | | CD Set |
| A-101 | PARTIAL FLOOR PLAN | 0 | 03/13/2020 | | CD Set |
| A-120 | PARTIAL RCP | 0 | 03/13/2020 | | CD Set |
| A-410 | ENLARGE FLOOR PLAN AND INTERIOR ELEVATION | 0 | 03/13/2020 | | CD Set |
| A-510 | DETAILS | 0 | 03/13/2020 | | CD Set |
| A-610 | DOOR & WINDOW SCHEDULE | 0 | 03/13/2020 | | CD Set |
| A-630 | FINISH PLAN | 0 | 03/13/2020 | | CD Set |
| **Structural** | | | | | |
| S1.1 | G.S.N. & TYPICAL DETAILS | 0 | 03/11/2020 | | CD Set |
| S2.1 | FOUNDATION PLAN | 0 | 03/11/2020 | | CD Set |
| S2.2 | ROOF FRAMING PLAN | 0 | 03/11/2020 | | CD Set |
| S3.1 | STRUCTURAL DETAILS | 0 | 03/11/2020 | | CD Set |
| **Mechanical** | | | | | |
| M-000 | VENTILATION COVERSHEET | 0 | 03/12/2020 | | CD Set |
| M-100 | MECHANICAL ROOF PLAN - DEMOLITION | 0 | 03/12/2020 | | CD Set |
| M-101 | MECHANICAL FLOOR PLAN | 0 | 03/12/2020 | | CD Set |
| M-102 | MECHANICAL ROOF PLAN | 0 | 03/12/2020 | | CD Set |
| M-200 | MECHANICAL ENLARGED PLANS | 0 | 03/12/2020 | | CD Set |
| M-400 | MECHANICAL SCHEDULES | 0 | 03/12/2020 | | CD Set |
| M-500 | MECHANICAL DETAILS | 0 | 03/12/2020 | | CD Set |
| M-600 | MECHANICAL CONTROLS | 0 | 03/12/2020 | | CD Set |
| M-601 | MECHANICAL CONTROLS | 0 | 03/12/2020 | | CD Set |
| M-700 | MECHANICAL SPECIFICATIONS | 0 | 03/12/2020 | | CD Set |
| M-701 | MECHANICAL SPECIFICATIONS | 0 | 03/12/2020 | | CD Set |
| M-702 | MECHANICAL SPECIFICATIONS | 0 | 03/12/2020 | | CD Set |
| M-800 | MECHANICAL COMPLIANCE FORMS | 0 | 03/12/2020 | | CD Set |
| **Plumbing** | | | | | |
| P000 | PLUMBING COVERSHEET | 0 | 03/12/2020 | | CD Set |
| P-101 | PLUMBING FLOOR PLAN | 0 | 03/12/2020 | | CD Set |
| P-200 | PLUMBING ENLARGED PLANS | 0 | 03/12/2020 | | CD Set |



AZ ROC B-01 082904
Willmeng Construction, Inc.

Printed on Wed May 6, 2020 at 10:06 am MST

Job #: 20-01-3207 Bang Energy Phase II
4747 W. Buckeye Road
Phoenix, Arizona 85043

| Drawing No. | Drawing Title | Revision | Drawing Date | Received Date | Set |
|---|---|---|---|---|---|
| P-300 | PLUMBING SCHEDULES AND DETAILS | 0 | 03/12/2020 | | CD Set |
| P-500 | PLUMBING SPECIFICATIONS | 0 | 03/12/2020 | | CD Set |
| P-501 | PLUMBING SPECIFICATIONS | 0 | 03/12/2020 | | CD Set |
| P-502 | PLUMBING SPECIFICATIONS | 0 | 03/12/2020 | | CD Set |
| P-503 | PLUMBING SPECIFICATIONS | 0 | 03/12/2020 | | CD Set |
| **Electrical** | | | | | |
| E-000 | ELECTRICAL COVERSHEET | 0 | 03/12/2020 | | CD Set |
| E-100 | ELECTRICAL LIGHTING PLAN - DEMOLITION | 0 | 03/12/2020 | | CD Set |
| E-101 | ELECTRICAL ROOF PLAN - DEMOLITION | 0 | 03/12/2020 | | CD Set |
| E-200 | ELECTRICAL LIGHTING FLOOR PLAN | 0 | 03/12/2020 | | CD Set |
| E-300 | ELECTRICAL POWER FLOOR PLAN | 0 | 03/12/2020 | | CD Set |
| E-301 | ELECTRICAL POWER ROOF PLAN | 0 | 03/12/2020 | | CD Set |
| E-400 | ENLARGED ELECTRICAL PLANS | 0 | 03/12/2020 | | CD Set |
| E-401 | ENLARGED ELECTRICAL PLANS | 0 | 03/12/2020 | | CD Set |
| E-402 | ENLARGED ELECTRICAL PLANS | 0 | 03/12/2020 | | CD Set |
| E-500 | ELECTRICAL ONELINE DIAGRAM | 0 | 03/12/2020 | | CD Set |
| E-501 | ELECTRICAL SCHEDULES | 0 | 03/12/2020 | | CD Set |
| E-502 | ELECTRICAL SCHEDULES | 0 | 03/12/2020 | | CD Set |
| E-503 | PANEL SCHEDULES | 0 | 03/12/2020 | | CD Set |
| E-504 | PANEL SCHEDULES | 0 | 03/12/2020 | | CD Set |
| E-600 | ELECTRICAL SPECIFICATIONS | 0 | 03/12/2020 | | CD Set |
| E-601 | ELECTRICAL SPECIFICATIONS | 0 | 03/12/2020 | | CD Set |

**EXHIBIT D**

**RULES AND REGULATIONS**

Tenant agrees to comply with the following rules and regulations, and any subsequent rules or regulations which Landlord may reasonably adopt or modify from time to time. Tenant shall be bound by such rules and regulations to the same extent as if such rules and regulations were covenants of this Lease; and any non-compliance thereof shall constitute grounds for Default under this Lease. Landlord shall not be liable for the non-observance of said rules and regulations by any other tenant.

1.      Tenant shall not use any picture or likeness of the Property in any notices or advertisements, without Landlord's prior written consent.

2.      In the event Tenant requires any telephone or satellite dish connections [INTERNET TO BE DETERMINED], Landlord shall have the right to prescribe additional rules and regulations regarding the same including, but not limited to, the size, manner, location and attachment of such equipment and connections.

3.      No additional locks shall be placed upon any door of the Premises, and Tenant shall not permit any duplicate keys to be made, without the prior consent of Landlord. Upon the expiration or earlier termination of this Lease, Tenant shall surrender to Landlord all keys to the Premises and Property.

4.      Tenant shall not install or operate any boiler, machinery, or carry on any mechanical business within the Premises. Tenant shall not use any fuel source within the Premises other than the fuel source(s) provided by Landlord.

5.      Tenant shall not permit within the Premises any animals other than service animals; nor shall Tenant create or allow any foul or noxious gas, noise, odors, sounds, and/or vibrations to emanate from the Premises, or create any interference with the operation of any equipment or radio or television broadcasting/reception from within or about the Property.

6.      All sidewalks, loading areas, stairways, doorways, corridors, and other common areas shall not be obstructed by Tenant or used for any purpose other than for ingress and egress. Landlord retains the right to control all public and other areas not specifically designated as the Premises, provided nothing herein shall be construed to prevent access to the Premises or the common areas of the Property by Tenant or Tenant's invitees.

7.      Tenant shall not install any window treatments other than existing treatments or otherwise obstruct the windows of the Premises without Landlord's prior written consent.

8.      After business hours, Tenant shall lock all doors and windows of the Premises which enter upon any common areas of the Property; and Tenant shall be liable for all damages sustained by Landlord or other tenants within the Property resulting from Tenant's default or carelessness in this respect.

9.      Any person(s) who shall be employed by Tenant for the purpose of cleaning the Premises shall be employed at Tenant's cost. Tenant shall indemnify and hold Landlord harmless from all losses, claims, liability, damages, and expenses for any injury to person or damage to property of Tenant, or third persons, caused by Tenant's cleaning contractor.

10.     Landlord reserves the right to place into effect a "no smoking" policy within all or selected portions of the common areas of the Property, wherein Tenant, its agents, employees and invitees shall not be allowed to smoke. Tenant shall not be allowed to smoke in any common stairwells, elevators or bathrooms; nor shall Tenant dispose of any smoking material including, without limitation, matches, ashes and cigarette butts on the floors of the Property, about the grounds of the Property, or in any receptacle other than a specifically designated receptacle for smoking.

D - 1

**EXHIBIT E**

**HVAC MAINTENANCE CONTRACT**

Paragraph 9 of the Lease, captioned "TENANT REPAIRS AND MAINTENANCE," is revised to include the following provisions:

Tenant agrees to enter into and maintain through the Lease Term, a regularly scheduled preventative maintenance/service contract for servicing all hot water, heating and air conditioning systems and equipment within the Premises. Landlord requires Tenant to retain a qualified HVAC contractor to perform this work. A copy of the service contract must be provided to the Landlord within sixty (60) days upon occupancy of the Premises.

The service contract must become effective within thirty (30) days of Tenant's occupancy, and service visits should be performed on a quarterly basis. Landlord agrees that Tenant may utilize Landlord's HVAC contractor at the rate Landlord would pay for such contract. Landlord suggests that Tenant send the following list to a qualified HVAC contractor to be assured that these items are included in the maintenance contract:

1.    Adjust belt tension;
2.    Lubricate all moving parts, as necessary;
3.    Inspect and adjust all temperature and safety controls;
4.    Check refrigeration system for leaks and operation;
5.    Check refrigeration system for moisture;
6.    Inspect compressor oil level and crank case heaters;
7.    Check head pressure, suction pressure and oil pressure;
8.    Inspect air filters and replace when necessary;
9.    Check space conditions;
10.   Check condensate drains and drain pans and clean, if necessary;
11.   Inspect and adjust all valves;
12.   Check and adjust dampers; and
13.   Run machine through complete cycle.

E - 1

**EXHIBIT F**

**MOVE-OUT CONDITIONS**

Notwithstanding anything to the contrary in this Lease, Tenant is obligated to check and address prior to move-out of the facility the following items.  Landlord expects to receive the space in a well maintained condition, with normal wear and tear of certain areas acceptable.  The following list is designed to assist Tenant in the move-out procedures but is not intended to be all inclusive.

1.      All lighting is to be placed into good working order.  This includes replacement of bulbs, ballasts, and lenses as needed.

2.      All truck doors and dock levelers should be serviced and placed in good operating order.  This would include the necessary replacement of any dented truck door panels and adjustment of door tension to insure proper operation.  All door panels which are replaced need to be painted to match the building standard.

3.      All structural steel columns in the warehouse and office should be inspected for damage and Tenant shall be responsible for repairing any damage to such structural steel columns caused by or attributable to Tenant, its agents, employees or invitees.  Repairs of this nature should be pre-approved by the Landlord prior to implementation.

4.      Heating/air-conditioning systems should be placed in good working order, including the necessary replacement of any parts to return the unit to a well maintained condition.  This includes warehouse heaters and exhaust fans.  Upon move-out, Landlord will have an exit inspection performed by a certified mechanical contractor to determine the condition.

5.      All holes in the sheetrock walls should be repaired prior to move-out.

6.      The carpets and vinyl tiles should be in a clean condition and should not have any holes or chips in them.  Landlord will accept normal wear on these items provided they appear to be in a maintained condition.

7.      Facilities should be returned in a clean condition which would include cleaning of the coffee bar, restroom areas, windows, and other portions of the space.

8.      The warehouse should be in broom clean condition with all inventory and racking removed.  There should be no protrusion of anchors from the warehouse floor and all holes should be appropriately patched.  If machinery/equipment is removed, the electrical lines should be properly terminated at the nearest junction box.

9.      All exterior windows with cracks or breakage should be replaced.

10.     The Tenant shall provide to Landlord the keys for all locks on the Premises, including front doors, rear doors, and interior doors.

11.     Items that have been added by the Tenant and affixed to the Property (excluding personal property and equipment that are not fixtures) will remain the property of Landlord, unless agreed otherwise in this Lease.  This would include but is not limited to mini-blinds, air conditioners, electrical, water heaters, cabinets, flooring, etc. normal wear and tear excepted.  Except as otherwise set forth in this Lease, please note that if modifications have been made to the space, such as the addition of office areas, Landlord retains the right to have the Tenant remove these at Tenant's expense.

12.     All electrical systems should be left in a safe condition that conforms to code.  Bare wires and dangerous installations should be corrected prior to move-out.

F - 1

734680170.3 7-Nov-19 15:48

13.      All plumbing fixtures should be in good working order, including the water heater.  Faucets and toilets should not leak.

14.      All dock bumpers must be left in place and well secured.

Notwithstanding the foregoing and except as otherwise set forth in this Lease, Tenant agrees to surrender the Premises to Landlord in substantially the same condition as exists at the time that Tenant occupies the Premises and opens for business.

F - 2

**EXHIBIT G**

**TENANT'S COMMENCEMENT LETTER**

To: _____ ("Landlord")

Date: _____

Tenant's Commencement Letter

_____

The undersigned, as the Tenant under that certain Lease (the "Lease") dated _____, made and entered into between _____, a _____ as Landlord, and the undersigned, as Tenant, hereby certifies that:

1.  The undersigned has accepted possession and entered into occupancy of the Premises described in the Lease.

2.  The Commencement Date of the Lease was _____.

3.  The expiration date of the Lease is _____.

4.  The Lease is in full force and effect and has not been modified or amended.

5.  Landlord has performed all of its obligations to improve the Premises for occupancy by the undersigned.

Very truly yours,

_____,

a _____

By: _____
Name: _____
Title: _____

G - 1

**EXHIBIT H**

**FORM OF ENVIRONMENTAL QUESTIONNAIRE**

**EXHIBIT**
**FORM OF ENVIRONMENTAL QUESTIONNAIRE**


**ENVIRONMENTAL AND USE QUESTIONNAIRE**
**FOR TENANT MOVE-IN AND LEASE RENEWAL**

Property Name:      _____
Property Address:      _____, Suite ___, _____, __.
Lease Date:      _____
Landlord:      _____
Tenant:      _____

***Instructions****: The following questionnaire is to be completed by the Tenant Representative with knowledge of the planned/existing operations for the specified building/location. A copy of the completed form must be attached to all new leases and renewals, and forwarded to the Landlord's Risk Management Department.*

1-0      PLANNED USE/OPERATIONS

1-1.      Describe planned use (new lease) or existing operations (lease renewal), and include brief description of manufacturing processes employed.


2.0      HAZARDOUS MATERIALS

2-1.      Are hazardous materials used or stored? If so, continue with the next question. If not, go to Section 3.0.      ☐ No      ☐ Yes

2-2.      Are any of the following materials handled on the property? (A material is handled if it is used, generated, processed, produced, packaged, treated, stored, emitted, discharged, or disposed.) If so, complete this section. If this question is not applicable, skip this section and go on to Section 5.0.

| | | |
|---|---|---|
| ☐ Explosives | ☐ Fuels | ☐ Oils |
| ☐ Solvents | ☐ Oxidizers | ☐ Organics/Inorganics |
| ☐ Acids | ☐ Bases | ☐ Pesticides |
| ☐ Gases | ☐ PCBs | ☐ Radioactive Materials |
| ☐ Other (please specify) | | |

2-3.      For the following groups of chemicals, please check the type(s), use(s), and quantity of each chemical used or stored on the site. Attach either a chemical inventory or list the chemicals in each category.

_____ Solvents

Type: _____

Use: _____

Quantity: _____

_____ Inorganic

Type: _____

Use: _____

Quantity: _____

_____ Fuels

Type: _____

Use: _____

Quantity: _____

_____ Oils

Type: _____

Use: _____

Quantity: _____

_____ Oxidizers

Type: _____

Use: _____

Quantity: _____

_____ Gases

Type: _____

Use: _____

Quantity: _____

_____ Acids

Type: _____

Use: _____

Quantity: _____

_____ Explosives

Type: _____

Use: _____

Quantity: _____

_____ Bases

Type: _____

Use: _____

Quantity: _____

_____ Pesticides

Type: _____

Use: _____

Quantity: _____

_____ Organic                           _____ Radioactive Materials

Type:        _____         Type:        _____

Use:         _____         Use:         _____

Quantity: _____         Quantity: _____


_____ Other

Type:        _____

Use:         _____

Quantity: _____

2-4.    List and quantify the materials identified above.

| MATERIAL | PHYSICAL STATE | CONTAINER SIZE | NUMBER OF CONTAINERS |
|----------|----------------|----------------|----------------------|
|          |                |                |                      |
|          |                |                |                      |
|          |                |                |                      |
|          |                |                |                      |
|          |                |                |                      |
|          |                |                |                      |
|          |                |                |                      |
|          |                |                |                      |
|          |                |                |                      |

2-5.    Describe the storage area location(s) for these materials.

3.0    HAZARDOUS WASTES

3-1.    Are hazardous wastes generated?  If so, continue with the next question.  If not, skip this section and go to section 4.0.        ☐ No        ☐ Yes

3-2.    Are any of the following wastes generated, handled, or disposed of (where applicable) on the property?

☐ Hazardous wastes        ☐ Industrial Wastewater
☐ Waste oils              ☐ PCBs
☐ Air emissions           ☐ Sludges
☐ Other (please specify)

3-3.    Identify and describe those wastes generated, handled or disposed of (disposition). Specify any wastes known to be regulated under the Resource Conservation and Recovery Act (RCRA) as "listed characteristic or statutory" wastes.  Include total amounts generated monthly. Please include name, location, and permit number (e.g. EPA ID No.) for transporter and disposal facility, if applicable).  Attach separate pages as necessary.

3-4.    List and quantify the materials identified in Question 3-2 of this section.

| WASTE GENERATED | SOURCE | APPROXIMATE MONTHLY QUANTITY | WASTE CHARACTERIZATION | DISPOSITION |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

3-5.    Are pollution controls or monitoring employed in the process to prevent or minimize the release of wastes into the environment?  If so, please describe.

## 4.0    USTS/ASTS

4-1.    Are underground storage tanks (USTs), aboveground storage tanks (ASTs), or associated pipelines present on site (lease renewals) or required for planned operations (new tenants)?  If not, continue with section 5.0.   If yes, please describe capacity, contents, age, design and construction of USTs or ASTs


4-2.    Is the UST/AST registered and permitted with the appropriate regulatory agencies? Please provide a copy of the required permits.


4-3.    Indicate if any of the following leak prevention measures have been provided for the USTs/ASTs and their associated piping.  Additionally, please indicate the number of tanks that are provided with the indicated measure.  Please provide copies of written test results and monitoring documentation.

_____  Integrity testing                     _____  Inventory reconciliation

_____  Leak detection system            _____  Overfill spill protection

_____  Secondary containment          _____  Other (please describe)

_____  Cathodic protection


4-4.    If this Questionnaire is being completed for a lease renewal, and if any of the USTs/ASTs have leaked, please state the substance released, the media(s) impacted (e.g., soil, water, asphalt, etc.), the actions taken, and all remedial responses to the incident.


4-5.    If this Questionnaire is being completed for a lease renewal, have USTs/ASTs been removed from the property?  If so, please provide any official closure letters or reports and supporting documentation (e.g., analytical test results, remediation report results, etc.).


4-6.    For lease renewals, are there any above or below ground pipelines on site used to transfer chemicals or wastes?  For new tenants, are installations of this type required for the planned operations?  If so, please describe.

4-7.    If present or planned, have the chemical transfer pipelines been inspected or tested for leaks?  If so, please indicate the results and provide a copy of the inspection or test results.

## 5.0    ASBESTOS CONTAINING BUILDING MATERIALS

5-1.    Please be advised that this property participates in an Asbestos Operations and Maintenance Program, and that an asbestos survey may have been performed at the Property.  If provided, please review the information that identifies the locations of known asbestos containing material or presumed asbestos containing material.  All personnel and appropriate subcontractors should be notified of the presence of these materials, and informed not to disturb these materials.  Any activity that involves the disturbance or removal of these materials must be done by an appropriately trained individual/contractor.

## 6.0    REGULATORY

6-1.    For lease renewals, are there any past, current, or pending regulatory actions by federal, state, or local environmental agencies alleging noncompliance with regulations?  If so, please describe.

6-2.    For lease renewals, are there any past, current, or pending lawsuits or administrative proceedings for alleged environmental damages involving the property, you, or any owner or tenant of the property?  If so, please describe.

6-3.    Does the operation have or require a National Pollutant Discharge Elimination System (NPDES) or equivalent permit?  If so, please provide a copy of this permit.

6-4.    For lease renewals, have there been any complaints from the surrounding community regarding facility operations?  If so, please describe.  Have there been any worker complaints or regulatory investigations regarding hazardous material exposure at the facility?  If so, please describe status and any corrective actions taken.

6-5.    Has a Hazardous Materials Business Plan been developed for the site?  If so, please provide a copy.

CERTIFICATION

I am familiar with the real property and facility operations described in this questionnaire.  By signing below, I represent and warrant that the answers to the above questions are complete and accurate to the best of my knowledge.  I also understand that the Landlord will rely on the completeness and accuracy of my answers in assessing any environmental liability risks associated with the property.

Signature: _____

Name: _____

Title: _____

Date: _____

Telephone: _____

**ADDENDUM ONE**

**TWO RENEWAL OPTIONS**
<u>(BASEBALL ARBITRATION)</u>

**ATTACHED TO AND A PART OF THE INDUSTRIAL LEASE**
**BY AND BETWEEN**

**TGA CACTUS DC II LLC**

**AND**

**VITAL PHARMACEUTICALS, INC.**

(a)    Provided that as of the time of the giving of the First Extension Notice and the Commencement Date of the First Extension Term (as such terms are defined below), (i) Tenant is the Tenant originally named herein or a Tenant Affiliate, (ii) Tenant or a Tenant Affiliate actually occupies all of the Premises initially demised under this Lease and any space added to the Premises, and (iii) no event of default exists, or would exist but for the passage of time or the giving of notice, or both; then Tenant shall have the right to extend the Lease Term for an additional period of five (5) years (such additional period is hereinafter called the "<u>First Extension Term</u>") commencing on the day following the expiration of the Lease Term (hereinafter referred to as the "<u>Commencement Date of the First Extension Term</u>"). Tenant must give Landlord notice (hereinafter called the "<u>First Extension Notice</u>") of its election to extend the Lease Term at least nine (9) months, but not more than twenty-four (24) months, prior to the scheduled expiration date of the Lease Term.

(b)    Provided that as of the time of the giving of the Second Extension Notice and the Commencement Date of the Second Extension Term, (i) Tenant is the Tenant originally named herein or a Tenant Affiliate, (ii) Tenant or a Tenant Affiliate actually occupies all of the Premises initially demised under this Lease and any space added to the Premises, and (iii) no event of default exists or would exist but for the passage of time or the giving of notice, or both and provided Tenant has exercised its option for the First Extension Term; then Tenant shall have the right to extend the Lease Term for an additional period of five (5) years (such additional period is hereinafter called the "<u>Second Extension Term</u>") commencing on the day following the expiration of the First Extension Term (hereinafter referred to as the "<u>Commencement Date of the Second Extension Term</u>"). Tenant shall give Landlord notice (hereinafter called the "<u>Second Extension Notice</u>") of its election to extend the Lease Term at least nine (9) months, but not more than twenty-four (24) months, prior to the scheduled expiration date of the First Extension Term.

(c)    The Base Rent payable by Tenant to Landlord during the First Extension Term and/or the Second Extension Term (if applicable) shall be at the Fair Market Rent, as defined and determined pursuant to <u>Paragraph (d)</u>, <u>Paragraph (e)</u>, and <u>Paragraph (f)</u> below.

(d)    The term "<u>Fair Market Rent</u>" shall mean the Base Rent, expressed as an annual rent per square foot of Rentable Area, which Landlord would have received from leasing the Premises for the First Extension Term or Second Extension Term (as applicable) to an unaffiliated person which is not then a tenant in the Project, assuming that such space were to be delivered in "as-is" condition, and taking into account the rental which such other tenant would most likely have paid for such premises, including market escalations. Fair Market Rent shall not be reduced by reason of any costs or expenses saved by Landlord by reason of Landlord's not having to find a new tenant for the Premises (including without limitation brokerage commissions, cost of improvements necessary to prepare the space for such tenant's occupancy, rent concession, or lost rental income during any vacancy period). Fair Market Rent means only the rent component defined as Base Rent in the Lease and does not include reimbursements and payments by Tenant to Landlord with respect to operating expenses and other items payable or reimbursable by Tenant under the Lease. In addition to its obligation to pay Base Rent (as determined herein), Tenant shall continue to pay and reimburse Landlord as set forth in the Lease with respect to such operating expenses and other items with respect to the Premises during the First Extension Term and/or Second Extension Term. The arbitration process described below shall be limited to the determination of the Base Rent and shall not affect or otherwise reduce or modify the Tenant's obligation to pay or reimburse Landlord for such operating expenses and other reimbursable items.

(e)     Landlord shall notify Tenant of its determination of the Fair Market Rent (which shall be made in Landlord's sole discretion), and Tenant shall advise Landlord of any objection within ten (10) days of receipt of Landlord's notice.  Failure to respond within the ten (10) day period shall constitute Tenant's acceptance of such Fair Market Rent.  If Tenant objects, Landlord and Tenant shall commence negotiations to attempt to agree upon the Fair Market Rent within thirty (30) days of Landlord's receipt of Tenant's notice.  If the parties cannot agree, each acting in good faith but without any obligation to agree, then the Lease Term shall not be extended and shall terminate on its scheduled termination date and Tenant shall have no further right hereunder or any remedy by reason of the parties' failure to agree unless Tenant or Landlord invokes the arbitration procedure provided below to determine the Fair Market Rent.

(f)     Arbitration to determine the Fair Market Rent shall be in accordance with the Real Estate Valuation Arbitration Rules of the American Arbitration Association.  Unless otherwise required by state law, arbitration shall be conducted in the metropolitan area where the Project is located by a single arbitrator unaffiliated with either party.  Either party may elect to arbitrate by sending written notice to the other party and the Regional Office of the American Arbitration Association within five (5) days after the thirty (30) day negotiating period provided in Paragraph (e), invoking the binding arbitration provisions of this paragraph.  Landlord and Tenant shall each submit to the arbitrator their respective proposal of Fair Market Rent.  The arbitrator must choose between the Landlord's proposal and the Tenant's proposal and may not compromise between the two or select some other amount.  The cost of the arbitration shall be paid by Landlord if the Fair Market Rent is that proposed by Tenant and by Tenant if the Fair Market Rent is that proposed by Landlord; and shall be borne equally otherwise.  If the arbitrator has not determined the Fair Market Rent as of the end of the Lease Term or the First Extension Term, as applicable, Tenant shall pay one hundred five percent (105%) of the Base Rent in effect under the Lease as of the end of the Lease Term or First Extension Term, as applicable, until the Fair Market Rent is determined as provided herein.  Upon such determination, Landlord and Tenant shall make the appropriate adjustments to the payments between them.

(g)     The parties consent to the jurisdiction of any appropriate court to enforce the arbitration provisions of this Addendum One and to enter judgment upon the decision of the arbitrator.

(h)     Except for the Base Rent as determined above, Tenant's occupancy of the Premises during the First Extension Term shall be on the same terms and conditions as are in effect immediately prior to the expiration of the initial Lease Term; provided, however, Tenant shall have no further right to extend the Lease Term pursuant to this Addendum One or to any allowances, credits or abatements or options to expand, contract, renew or extend the Lease.  Except for the Base Rent as determined above, Tenant's occupancy of the Premises during the Second Extension Term shall be on the same terms and conditions as are in effect immediately prior to the expiration of the First Extension Term; provided, however, Tenant shall have no further right to extend the Lease Term pursuant to this Addendum One or to any allowances, credits or abatements or options to expand, contract, renew or extend the Lease.

(i)     If Tenant does not send the First Extension Notice within the period set forth in Paragraph (a) above, Tenant's right to extend the Lease Term for the First Extension Term and the Second Extension Term shall automatically terminate.  If Tenant does not give the Second Extension Notice within the period set forth in Paragraph (b) above, Tenant's right to extend the Lease Term for the Second Extension Term shall automatically terminate.  Time is of the essence as to the giving of the First Extension Notice and Second Extension Notice and the notice of Tenant's objection under Paragraph (e).

(j)     Landlord shall have no obligation to refurbish or otherwise improve the Premises for the First Extension Term and/or the Second Extension Term.  The Premises shall be tendered on the Commencement Date of the First Extension Term and the Commencement Date of the Second Extension Term in "as-is", "where-is", and "with all faults" condition.

(k)     If the Lease is extended for the First Extension Term and/or the Second Extension Term, then Landlord shall prepare and Tenant shall execute an amendment to the Lease confirming the extension of the Lease Term and the other provisions applicable thereto.

(l)     If Tenant exercises its right to extend the Lease Term of the Lease for the First Extension Term or Second Extension Term pursuant to this Addendum One, the term "Lease Term" as used in the Lease, shall be construed to include, when practicable, the First Extension Term and/or Second Extension Term.

(m)    Notwithstanding anything contained in this Addendum One to the contrary, Landlord and Tenant acknowledge and agree that following the delivery by Tenant the Cancellation Notice (as set forth in Addendum Two), the right to extend the Lease Term granted to Tenant pursuant to this Addendum One shall terminate and become null and void and of no further force and effect.

734680170.3 7-Nov-19 15:48

**ADDENDUM TWO**

<u>**CANCELLATION OPTION**</u>

**ATTACHED TO AND A PART OF THE INDUSTRIAL LEASE
BY AND BETWEEN**

**TGA CACTUS DC II LLC**

**and**

**VITAL PHARMACEUTICALS, INC.**

Provided no event of default shall then exist under the Lease and no condition shall then exist which with the passage of time or giving of notice, or both, would constitute an event of default under the Lease, Tenant shall have the one-time right to send Landlord irrevocable written notice (the "Cancellation Notice") that Tenant has elected to terminate the Lease, effective on the last day of the eighty-fourth (84th) full calendar month of the Initial Term (such date being the "Cancellation Date"), by delivering the Cancellation Notice to Landlord at least twelve (12) full calendar months prior to the Cancellation Date ("Cancellation Option").

If Tenant elects to terminate the Lease pursuant to the immediately preceding paragraph, the effectiveness of such termination shall be conditioned upon Tenant paying to Landlord, simultaneously with Tenant's delivery of the Cancellation Notice to Landlord, a termination fee equal to the sum of any and all of Landlord's unamortized costs and expenses relating to the Premises, including, without limitation, any costs and expenses relating to the Tenant Improvements, any rental abatement, leasing commissions, architectural fees or legal fees for the Premises, calculated as of the Cancellation Date (all such amounts being amortized on a straight-line basis over the Initial Term in which Tenant is obligated to pay Base Rent (but excluding the Abated Rent Period, as applicable, and as defined in the Basic Lease Provisions of this Lease, plus interest on all such amortized amounts, payable at a rate of eight percent (8%) per annum), plus six (6) months of rental at the rental rate then being charged at the time of cancellation (which rental shall include Base Rent, and Tenant's Pro Rata Share of Operating Expenses) (collectively, the "Termination Fee"). Such Termination Fee is consideration for Tenant's option to terminate and shall not be applied to Rent or any other obligation of Tenant. Except as otherwise expressly set forth in this Lease, Landlord and Tenant shall be relieved of all obligations accruing under the Lease after the Cancellation Date, but not any obligations accruing under the Lease prior to the effective date of such termination. Both Landlord and Tenant acknowledge and agree that it would be impracticable or extremely difficult to affix damages if Tenant terminates the Lease and that the Termination Fee set forth above represents a reasonable estimate of Landlord's damages in the event Tenant terminates the Lease under this Addendum Two. If Tenant does not timely deliver the Cancellation Notice or Termination Fee to Landlord, then this Cancellation Option shall become null and void and the Lease shall continue in full force and effect.

**TABLE OF CONTENTS**

Page

LEASE OF PREMISES ........................................................................................................... 1
1.    COMMENCEMENT ............................................................................................. 1
2.    BASE RENT AND SECURITY DEPOSIT ........................................................ 1
3.    ADDITIONAL RENT ........................................................................................... 2
4.    ALTERATIONS ..................................................................................................... 5
5.    INTEREST, LATE CHARGE ............................................................................... 6
6.    USE .......................................................................................................................... 7
7.    UTILITIES ............................................................................................................. 7
8.    LANDLORD'S REPAIRS AND MAINTENANCE OBLIGATIONS ................ 8
9.    TENANT'S REPAIRS AND MAINTENANCE OBLIGATIONS ..................... 8
10.   DESTRUCTION .................................................................................................... 9
11.   ASSIGNMENT AND SUBLETTING ................................................................ 10
12.   INSPECTION ....................................................................................................... 11
13.   SIGNS ................................................................................................................... 12
14.   DEFAULT ............................................................................................................. 12
15.   SURRENDER; HOLDOVER .............................................................................. 14
16.   RIGHT TO CURE TENANT'S DEFAULT ....................................................... 15
17.   ASSUMPTION OF RISK AND HOLD HARMLESS ...................................... 15
18.   CONDEMNATION .............................................................................................. 16
19.   INSURANCE ........................................................................................................ 16
20.   MORTGAGES ...................................................................................................... 17
21.   LIENS ................................................................................................................... 18
22.   GOVERNMENT REGULATIONS ..................................................................... 18
23.   NOTICES .............................................................................................................. 18
24.   PARKING ............................................................................................................. 19
25.   OWNERSHIP ....................................................................................................... 19
26.   ESTOPPEL CERTIFICATES .............................................................................. 20
27.   CONDITION OF PREMISES .............................................................................. 20
28.   SUBSTITUTE PREMISES .................................................................................. 20
29.   PERSONAL PROPERTY TAXES ...................................................................... 20
30.   BROKERAGE ...................................................................................................... 21
31.   SEVERABILITY .................................................................................................. 21
32.   HAZARDOUS MATERIALS .............................................................................. 21
33.   MISCELLANEOUS ............................................................................................. 21

EXHIBIT A – PREMISES
EXHIBIT B – LEGAL DESCRIPTION OF PROPERTY
EXHIBIT C – WORK LETTER
EXHIBIT C-1 – DESCRIPTION OF TENANT IMPROVEMENTS
EXHIBIT D – RULES AND REGULATIONS
EXHIBIT E – HVAC MAINTENANCE CONTRACT
EXHIBIT F – MOVE-OUT CONDITIONS
EXHIBIT G – TENANT'S COMMENCEMENT LETTER
EXHIBIT H - FORM OF ENVIRONMENTAL QUESTIONNAIRE

ADDENDUM ONE - TWO RENEWAL OPTIONS (BASEBALL ARBITRATION)
ADDENDUM TWO - CANCELLATION OPTION

734680170.3 7-Nov-19 15:48

**Exhibit 3**

12116540-1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,

Debtors.[1]

_____/

Chapter 11 Cases

Case No.: 22-17842-PDR

(Jointly Administered)

## STIPULATION EXTENDING THE DEADLINE BY WHICH
## THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASE

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") and

CI DAL III-V, LLC ("Lessor" together with the Debtors, the "Parties") hereby enter into this

stipulation (this "Stipulation") pursuant to which the Parties agree to the following:[2]

## RECITALS

**WHEREAS**, the Debtors lease the premises at 1601 Wallace Drive, Carrollton, TX 75006

from Lessor pursuant to that certain lease agreement dated September 18, 2023 (as amended,

modified, and supplemented from time to time, the "Extended Lease").

**WHEREAS**, on February 3, 2023, the Court entered the *Order Granting Debtors'*

*Expedited Motion for the Entry of an Order (I) Extending the Deadline By Which the Debtors May*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used in this Stipulation and not immediately defined have the meanings given to such terms elsewhere in this Stipulation or in the Deadline Extension Order (as defined herein).

*Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 745] (the "Deadline Extension Order").

**WHEREAS**, pursuant to Paragraph 4 of the Deadline Extension Order, the Debtors' deadline to assume or reject any Unexpired Lease is May 8, 2023, subject to further extensions as contemplated under section 365(d)(4)(B)(ii) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").[3]

**WHEREAS**, the Debtors have requested, and Lessor has agreed to grant, additional time as permitted under section 365(d)(4) of the Bankruptcy Code up to and including the earlier of (a) the date on which the Debtors obtain confirmation of a chapter 11 plan, (b) the date on which the Debtors consummate a sale, or (c) August 7, 2023 (the "Extended Deadline").

**WHEREAS**, the Parties desire to memorialize their agreement in this Stipulation.

**NOW THEREFORE**, the Parties stipulate and agree as follows:

1.      Lessor consents to extend the time period within which the Debtors must assume or reject the Extended Lease through and including the Extended Deadline.

2.      The Parties acknowledge and agree that this Stipulation constitutes "prior written consent of the lessor," as required by section 365(d)(4)(B)(ii) of the Bankruptcy Code, and that no further consent of Lessor shall be required for the purpose of granting the Extended Deadline.

---

[3]   The Debtors have filed a motion with the Court seeking a further extension of the Assumption/Rejection Deadline through and including August 7, 2023 on the basis that the initial Assumption/Rejection Deadline is May 8, 2023 in accordance with the Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Division FF, Title X, Sec. 1001. *See Motion for Entry of an Order (I) Ruling Section 365 As Amended By The Act Applies to the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 1185].

US-DOCS\141073254.5

3.      The Extended Deadline granted pursuant to this Stipulation is without prejudice to the Debtors' right to seek further extensions as provided in section 365(d)(4) of the Bankruptcy Code.

4.      Nothing in this Stipulation shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties, (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds, (c) a promise to pay any claim, (d) an implication or admission that any particular claim would constitute an allowed claim, (e) an assumption or rejection of the Extended Lease pursuant to section 365 of the Bankruptcy Code, or (f) an admission or finding with respect to whether the Extended Lease is an unexpired lease of nonresidential real property within the meaning of section 365(d) of the Bankruptcy Code.  Any and all of the Parties' rights, claims, and defenses with respect to the characterization of the Extended Lease pursuant to section 365 of the Bankruptcy Code or otherwise are expressly reserved.

5.      This Stipulation shall be binding and effective upon execution by all the Parties hereto.  This Stipulation may not be amended or modified without the written consent of the Parties hereto.   This Stipulation may be executed in counterparts by facsimile or other electronic transmission, each of which will be deemed an original, and all of which when taken together will constitute one document.

6.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Stipulation.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation.

US-DOCS\141073254.5

Dated:   May 1, 2023
         Miami, Florida

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
        tj.li@lw.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

/s/ Michael J. Niles
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
mniles@bergersingerman.com

*Counsel for the Debtors and Debtors-in-Possession*

*/s/ Michelle E. Shriro*
_____

Michelle E. Shriro
**SINGER LEVICK, P.C.**
16200 Addison Road, Suite 140
Dallas, TX 75001
Telephone:  (972) 380-5533
Email:  mshriro@singerlevick.com

*Counsel for the Lessor*

**<u>Exhibit 4</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No.: 22-17842-PDR |
| Debtors.[1] | (Jointly Administered) |

_____/

**STIPULATION EXTENDING THE DEADLINE BY WHICH
THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASE**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") and

CK Waitt Industrial, LLC, as assignee of CK Afton Ridge II, LLC ("Lessor" together with the

Debtors, the "Parties") hereby enter into this stipulation (this "Stipulation") pursuant to which the

Parties agree to the following:[2]

**RECITALS**

**WHEREAS**, the Debtors lease the premises at 6100 Glen Afton Boulevard, Concord, North

Carolina 28027 from Lessor pursuant to that certain lease agreement dated February 21, 2019 (as

amended, modified, and supplemented from time to time, the "Extended Lease").

**WHEREAS**, on February 3, 2023, the Court entered the *Order Granting Debtors'*

*Expedited Motion for the Entry of an Order (I) Extending the Deadline By Which the Debtors May*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used in this Stipulation and not immediately defined have the meanings given to such terms elsewhere in this Stipulation or in the Deadline Extension Order (as defined herein).

*Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 745] (the "Deadline Extension Order").

**WHEREAS**, pursuant to Paragraph 4 of the Deadline Extension Order, the Debtors' deadline to assume or reject any Unexpired Lease is May 8, 2023, subject to further extensions as contemplated under section 365(d)(4)(B)(ii) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").[3]

**WHEREAS**, the Debtors have requested, and Lessor has agreed to grant, additional time as permitted under section 365(d)(4) of the Bankruptcy Code up to and including the earlier of (a) the date on which the Debtors obtain confirmation of a chapter 11 plan, (b) the date on which the Debtors consummate a sale, or (c) August 7, 2023 (the "Extended Deadline").

**WHEREAS**, the Parties desire to memorialize their agreement in this Stipulation.

**NOW THEREFORE**, the Parties stipulate and agree as follows:

1.      Lessor consents to extend the time period within which the Debtors must assume or reject the Extended Lease through and including the Extended Deadline.

2.      The Parties acknowledge and agree that this Stipulation constitutes "prior written consent of the lessor," as required by section 365(d)(4)(B)(ii) of the Bankruptcy Code, and that no further consent of Lessor shall be required for the purpose of granting the Extended Deadline.

---

[3] The Debtors have filed a motion with the Court seeking a further extension of the Assumption/Rejection Deadline through and including August 7, 2023 on the basis that the initial Assumption/Rejection Deadline is May 8, 2023 in accordance with the Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Division FF, Title X, Sec. 1001. *See Motion for Entry of an Order (I) Ruling Section 365 As Amended By The Act Applies to the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 1185].

3.      The Extended Deadline granted pursuant to this Stipulation is without prejudice to the Debtors' right to seek further extensions as provided in section 365(d)(4) of the Bankruptcy Code.

4.      Nothing in this Stipulation shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties, (b) a waiver of Lessor's rights to assert, or the Debtors' rights to dispute, any claim or lien on any grounds, (c) a promise to pay any claim, (d) an implication or admission that any particular claim would constitute an allowed claim, (e) an assumption or rejection of the Extended Lease pursuant to section 365 of the Bankruptcy Code, or (f) an admission or finding with respect to whether the Extended Lease is an unexpired lease of nonresidential real property within the meaning of section 365(d) of the Bankruptcy Code.  Any and all of the Parties' rights, claims, and defenses with respect to the characterization of the Extended Lease pursuant to section 365 of the Bankruptcy Code or otherwise are expressly reserved.

5.      This Stipulation shall be binding and effective upon execution by all the Parties hereto.  This Stipulation may not be amended or modified without the written consent of the Parties hereto.   This Stipulation may be executed in counterparts by facsimile or other electronic transmission, each of which will be deemed an original, and all of which when taken together will constitute one document.

6.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Stipulation.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation.

Dated:    April 25, 2023
               Miami, Florida

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
             tj.li@lw.com
             brian.rosen@lw.com
             jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*/s/ Michael J. Niles*

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
mniles@bergersingerman.com

*Counsel for the Debtors and Debtors-in-Possession*

*/s/ Chip Ford*

Chip Ford
Patricia M. Adcroft
**PARKER POE ADAMS & BERNSTEIN LLP**
301 Fayetteville Street, Suite 1400
Raleigh, NC 27601
Telephone:  (919) 835-4564
Email:  chipford@parkerpoe.com
pattyadcroft@parkerpoe.com

*Counsel for the Lessor*

**Exhibit 5**

12116540-1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                    Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,                    Case No.: 22-17842-PDR

Debtors.[1]                                               (Jointly Administered)

_____/

**STIPULATION EXTENDING THE DEADLINE BY WHICH
THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASE**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") and

Dogwood Propco FL, LLP ("Lessor" together with the Debtors, the "Parties") hereby enter into

this stipulation (this "Stipulation") pursuant to which the Parties agree to the following:[2]

**RECITALS**

**WHEREAS**, Debtor Vital Pharmaceuticals, Inc. leases the premises at 1907-1911 US

Highway 301 North, Suites D140, D150, and D160, Tampa, FL 33619 from Lessor (as successor

in interest to the original landlord, Center Point Flex Owner LLC) pursuant to that certain lease

agreement dated November 1, 2018 (as amended, modified, and supplemented from time to time

including, without limitation the Second Amendment to Lease dated March 6, 2020, the "Extended

Lease").

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used in this Stipulation and not immediately defined have the meanings given to such terms elsewhere in this Stipulation or in the Deadline Extension Order (as defined herein).

US-DOCS\140920582.7

**WHEREAS**, on February 3, 2023, the Court entered the *Order Granting Debtors' Expedited Motion for the Entry of an Order (I) Extending the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 745] (the "Deadline Extension Order").

**WHEREAS**, pursuant to Paragraph 4 of the Deadline Extension Order, the Debtors' deadline to assume or reject any Unexpired Lease is May 8, 2023, subject to further extensions as contemplated under section 365(d)(4)(B)(ii) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").[3]

**WHEREAS**, the Debtors have requested, and Lessor has agreed to grant, additional time as permitted under section 365(d)(4) of the Bankruptcy Code for the Debtors to assume or reject the Extended Lease up to and including the earlier of (a) the date on which the Debtors obtain confirmation of a chapter 11 plan, (b) the date on which the Debtors consummate a sale of substantially all assets, or (c) August 7, 2023 (the "Extended Deadline").

**WHEREAS**, the Parties desire to memorialize their agreement in this Stipulation.

**NOW THEREFORE**, the Parties stipulate and agree as follows:

1.    Lessor consents to extend the time period within which the Debtors must assume or reject the Extended Lease through and including the Extended Deadline.  Debtors acknowledge and agree that they shall continue to fulfill their obligations under section 365(d)(3) of the Bankruptcy Code during such extended period.

---

[3]  The Debtors have filed a motion with the Court seeking a further extension of the Assumption/Rejection Deadline through and including August 7, 2023 on the basis that the initial Assumption/Rejection Deadline is May 8, 2023 in accordance with the Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Division FF, Title X, Sec. 1001.  *See Motion for Entry of an Order (I) Ruling Section 365 As Amended By The Act Applies to the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 1185].

US-DOCS\140920582.7

2.      The Parties acknowledge and agree that this Stipulation constitutes "prior written consent of the lessor," as required by section 365(d)(4)(B)(ii) of the Bankruptcy Code, and that no further consent of Lessor shall be required for the purpose of granting the Extended Deadline.

3.      The Extended Deadline granted pursuant to this Stipulation is without prejudice to the Debtors' right to seek further extensions as provided in section 365(d)(4) of the Bankruptcy Code or the Lessor's right to object to any further extension.

4.      Nothing in this Stipulation shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties, (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds, (c) a promise to pay any claim, (d) an implication or admission that any particular claim would constitute an allowed claim, or (e) an assumption or rejection of the Extended Lease pursuant to section 365 of the Bankruptcy Code.

5.      This Stipulation shall be binding and effective upon execution by all the Parties hereto.  This Stipulation may not be amended or modified without the written consent of the Parties hereto.   This Stipulation may be executed in counterparts by facsimile or other electronic transmission, each of which will be deemed an original, and all of which when taken together will constitute one document.

6.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Stipulation.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation.

US-DOCS\140920582.7

Dated:    April 26, 2023
          Miami, Florida

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
         tj.li@lw.com
         brian.rosen@lw.com
         jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

_/s/ Michael J. Niles_
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
mniles@bergersingerman.com

*Counsel for the Debtors and Debtors-in-Possession*

*/s/ Felton Parrish*

Felton Parrish
**ALEXANDER RICKS PLLC**
1420 East 7th Street, Suite 100
Charlotte, NC 28204
Telephone:  (980) 334-2001
Email:  Felton.Parrish@alexanderricks.com

*Counsel for the Lessor*

**Exhibit 6**

12116540-1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,

Debtors.[1]

_____/

Chapter 11 Cases

Case No.: 22-17842-PDR

(Jointly Administered)

## STIPULATION EXTENDING THE DEADLINE BY WHICH THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASE

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") and Duke Secured Financing 2009-1PAC, LLC ("Lessor" together with the Debtors, the "Parties") hereby enter into this stipulation (this "Stipulation") pursuant to which the Parties agree to the following:[2]

## RECITALS

**WHEREAS**, the Debtors lease the premises at 9550 Parksouth Court, Orlando, FL 32837 from Lessor pursuant to that certain lease agreement dated February 11, 2019 (as amended, modified, and supplemented from time to time, the "Extended Lease").

**WHEREAS**, on February 3, 2023, the Court entered the *Order Granting Debtors' Expedited Motion for the Entry of an Order (I) Extending the Deadline By Which the Debtors May*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used in this Stipulation and not immediately defined have the meanings given to such terms elsewhere in this Stipulation or in the Deadline Extension Order (as defined herein).

*Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 745] (the "Deadline Extension Order").

**WHEREAS**, pursuant to Paragraph 4 of the Deadline Extension Order, the Debtors' deadline to assume or reject any Unexpired Lease is May 8, 2023, subject to further extensions as contemplated under section 365(d)(4)(B)(ii) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").[3]

**WHEREAS**, the Debtors have requested, and Lessor has agreed to grant, additional time as permitted under section 365(d)(4) of the Bankruptcy Code up to and including the earlier of (a) the date on which the Debtors obtain confirmation of a chapter 11 plan, (b) the date on which the Debtors consummate a sale, or (c) August 7, 2023 (the "Extended Deadline").

**WHEREAS**, the Parties desire to memorialize their agreement in this Stipulation.

**NOW THEREFORE**, the Parties stipulate and agree as follows:

1.      Lessor consents to extend the time period within which the Debtors must assume or reject the Extended Lease through and including the Extended Deadline.

2.      The Parties acknowledge and agree that this Stipulation constitutes "prior written consent of the lessor," as required by section 365(d)(4)(B)(ii) of the Bankruptcy Code, and that no further consent of Lessor shall be required for the purpose of granting the Extended Deadline.

---

[3] The Debtors have filed a motion with the Court seeking a further extension of the Assumption/Rejection Deadline through and including August 7, 2023 on the basis that the initial Assumption/Rejection Deadline is May 8, 2023 in accordance with the Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Division FF, Title X, Sec. 1001. *See Motion for Entry of an Order (I) Ruling Section 365 As Amended By The Act Applies to the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 1185].

US-DOCS\140916802.2

3.      The Extended Deadline granted pursuant to this Stipulation is without prejudice to the Debtors' right to seek further extensions as provided in section 365(d)(4) of the Bankruptcy Code.

4.      Nothing in this Stipulation shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties, (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds, (c) a promise to pay any claim, (d) an implication or admission that any particular claim would constitute an allowed claim, (e) an assumption or rejection of the Extended Lease pursuant to section 365 of the Bankruptcy Code, or (f) an admission or finding with respect to whether the Extended Lease is an unexpired lease of nonresidential real property within the meaning of section 365(d) of the Bankruptcy Code.  Any and all of the Parties' rights, claims, and defenses with respect to the characterization of the Extended Lease pursuant to section 365 of the Bankruptcy Code or otherwise are expressly reserved.

5.      This Stipulation shall be binding and effective upon execution by all the Parties hereto.  This Stipulation may not be amended or modified without the written consent of the Parties hereto.   This Stipulation may be executed in counterparts by facsimile or other electronic transmission, each of which will be deemed an original, and all of which when taken together will constitute one document.

6.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Stipulation.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation.

*[Remainder of page intentionally left blank]*

3

Dated:   April 24, 2023
         Miami, Florida

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
        tj.li@lw.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

/s/ Michael J. Niles
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
mniles@bergersingerman.com

*Counsel for the Debtors and Debtors-in-Possession*

/s/ Richard J. Bernard
_____
Richard J. Bernard
**FAEGRE DRINKER BIDDLE & REATH LLP**
1177 Avenue of the Americas, 41st Floor
New York, NY 10036
Telephone:  (212) 248-3140
Email:  richard.bernard@faegredrinker.com

*Counsel for the Lessor*

2

**<u>Exhibit 7</u>**

12116540-1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No.: 22-17842-PDR |
| Debtors.[1] | (Jointly Administered) |

_____/

**STIPULATION EXTENDING THE DEADLINE BY WHICH
THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASE**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") and

EastGroup Properties, L.P. ("Lessor" together with the Debtors, the "Parties") hereby enter into

this stipulation (this "Stipulation") pursuant to which the Parties agree to the following:[2]

**RECITALS**

**WHEREAS**, the Debtors lease the premises at 7950 Central Industrial Drive, Suite 102-

104, Riviera Beach, Florida 33404 from Lessor pursuant to that certain lease agreement dated April

1, 2019 (as amended, modified, and supplemented from time to time, the "Extended Lease").

**WHEREAS**, on February 3, 2023, the Court entered the *Order Granting Debtors'*

*Expedited Motion for the Entry of an Order (I) Extending the Deadline By Which the Debtors May*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used in this Stipulation and not immediately defined have the meanings given to such terms elsewhere in this Stipulation or in the Deadline Extension Order (as defined herein).

*Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 745] (the "<u>Deadline Extension Order</u>").

**WHEREAS**, pursuant to Paragraph 4 of the Deadline Extension Order, the Debtors' deadline to assume or reject any Unexpired Lease is May 8, 2023, subject to further extensions as contemplated under section 365(d)(4)(B)(ii) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>").[3]

**WHEREAS**, the Debtors have requested, and Lessor has agreed to grant, additional time as permitted under section 365(d)(4) of the Bankruptcy Code up to and including the earlier of (a) the date on which the Debtors obtain confirmation of a chapter 11 plan, (b) the date on which the Debtors consummate a sale, or (c) August 7, 2023 (the "<u>Extended Deadline</u>").

**WHEREAS**, the Parties desire to memorialize their agreement in this Stipulation.

**NOW THEREFORE**, the Parties stipulate and agree as follows:

1.      Lessor consents to extend the time period within which the Debtors must assume or reject the Extended Lease through and including the Extended Deadline; *provided* that the Debtors continue to perform all of their postpetition obligations under the Extended Lease in accordance with section 365 of the Bankruptcy Code through the Extended Deadline.

2.      The Parties acknowledge and agree that this Stipulation constitutes "prior written consent of the lessor," as required by section 365(d)(4)(B)(ii) of the Bankruptcy Code, and that no further consent of Lessor shall be required for the purpose of granting the Extended Deadline.

---

[3]  The Debtors have filed a motion with the Court seeking a further extension of the Assumption/Rejection Deadline through and including August 7, 2023 on the basis that the initial Assumption/Rejection Deadline is May 8, 2023 in accordance with the Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Division FF, Title X, Sec. 1001. *See Motion for Entry of an Order (I) Ruling Section 365 As Amended By The Act Applies to the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 1185].

US-DOCS\141226188.3

3.      The Extended Deadline granted pursuant to this Stipulation is without prejudice to the Debtors' right to seek further extensions as provided in section 365(d)(4) of the Bankruptcy Code.

4.      Nothing in this Stipulation shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties, (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds, (c) a promise to pay any claim, (d) an implication or admission that any particular claim would constitute an allowed claim, (e) an assumption or rejection of the Extended Lease pursuant to section 365 of the Bankruptcy Code, or (f) an admission or finding with respect to whether the Extended Lease is an unexpired lease of nonresidential real property within the meaning of section 365(d) of the Bankruptcy Code.  Any and all of the Parties' rights, claims, and defenses with respect to the characterization of the Extended Lease pursuant to section 365 of the Bankruptcy Code or otherwise are expressly reserved.

5.      This Stipulation shall be binding and effective upon execution by all the Parties hereto.  This Stipulation may not be amended or modified without the written consent of the Parties hereto.   This Stipulation may be executed in counterparts by facsimile or other electronic transmission, each of which will be deemed an original, and all of which when taken together will constitute one document.

6.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Stipulation.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation.

US-DOCS\141226188.3

Dated:   May 1, 2023
         Miami, Florida

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
        tj.li@lw.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

/s/ Michael J. Niles
_____
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
mniles@bergersingerman.com

*Counsel for the Debtors and Debtors-in-Possession*

/s/ *Thomas L. Abrams*
_____
Thomas L. Abrams, Esq.
**THOMAS L. ABRAMS P.A.**
633 South Andrews Avenue, Suite 500
Fort Lauderdale, Florida 33301
Telephone:  (954) 523-0900
Email:  tabrams@tabramslaw.com

*Counsel for the Lessor*

**Exhibit 8**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,

Debtors.[1]

_____/

Chapter 11 Cases

Case No.: 22-17842-PDR

(Jointly Administered)

## STIPULATION EXTENDING THE DEADLINE BY WHICH
## THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASE

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") and

CIVF VI - TX1M01-M04, LLC, as successor in interest to Everman Trade Center L.P. ("Lessor"

together with the Debtors, the "Parties"), hereby enter into this stipulation (this "Stipulation")

pursuant to which the Parties agree to the following:[2]

## RECITALS

**WHEREAS**, the Debtors lease the premises at 160 W Everman Parkway, Fort Worth, Texas

76134 from Lessor pursuant to that certain lease agreement dated October 22, 2019 (as amended,

modified, and supplemented from time to time, the "Extended Lease").

**WHEREAS**, on February 3, 2023, the Court entered the *Order Granting Debtors'*

*Expedited Motion for the Entry of an Order (I) Extending the Deadline By Which the Debtors May*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used in this Stipulation and not immediately defined have the meanings given to such terms elsewhere in this Stipulation or in the Deadline Extension Order (as defined herein).

*Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 745] (the "Deadline Extension Order").

**WHEREAS**, pursuant to Paragraph 4 of the Deadline Extension Order, the Debtors' deadline to assume or reject any Unexpired Lease is May 8, 2023, subject to further extensions as contemplated under section 365(d)(4)(B)(ii) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").[3]

**WHEREAS**, the Debtors have requested, and Lessor has agreed to grant, additional time as permitted under section 365(d)(4) of the Bankruptcy Code up to and including the earlier of (a) the date of entry of an order confirming a chapter 11 plan, (b) the date on which the Debtors close a sale of substantially all their assets in accordance with an order of this Court permitting same, or (c) August 7, 2023 (the "Extended Deadline").

**WHEREAS**, the Parties desire to memorialize their agreement in this Stipulation.

**NOW THEREFORE**, the Parties stipulate and agree as follows:

1.      Lessor consents to extend the time period within which the Debtors must assume or reject the Extended Lease through and including the Extended Deadline.

2.      The Parties acknowledge and agree that this Stipulation constitutes "prior written consent of the lessor," as required by section 365(d)(4)(B)(ii) of the Bankruptcy Code, and that no further consent of Lessor shall be required for the purpose of granting the Extended Deadline.

---

[3] The Debtors have filed a motion with the Court seeking a further extension of the Assumption/Rejection Deadline through and including August 7, 2023 on the basis that the initial Assumption/Rejection Deadline is May 8, 2023 in accordance with the Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Division FF, Title X, Sec. 1001. *See Motion for Entry of an Order (I) Ruling Section 365 As Amended By The Act Applies to the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 1185].

2

3.      The Extended Deadline granted pursuant to this Stipulation is without prejudice to the Debtors' right to seek further extensions as provided in section 365(d)(4) of the Bankruptcy Code.

4.      Nothing in this Stipulation shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties, (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds, (c) a promise to pay any claim, (d) an implication or admission that any particular claim would constitute an allowed claim, (e) an assumption or rejection of the Extended Lease pursuant to section 365 of the Bankruptcy Code, or (f) an admission or finding with respect to whether the Extended Lease is an unexpired lease of nonresidential real property within the meaning of section 365(d) of the Bankruptcy Code.  Any and all of the Parties' rights, claims, and defenses with respect to the characterization of the Extended Lease pursuant to section 365 of the Bankruptcy Code or otherwise are expressly reserved.

5.      This Stipulation shall be binding and effective upon execution by all the Parties hereto.  This Stipulation may not be amended or modified without the written consent of the Parties hereto.   This Stipulation may be executed in counterparts by facsimile or other electronic transmission, each of which will be deemed an original, and all of which when taken together will constitute one document.

6.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Stipulation.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation.

US-DOCS\140925741.6

Dated:    April 26, 2023
          Miami, Florida

                                              /s/ Michael J. Niles
                                              _____

George A. Davis (admitted *pro hac vice*)     Jordi Guso
Tianjiao ("TJ") Li (admitted *pro hac vice*)  Florida Bar No. 863580
Brian S. Rosen (admitted *pro hac vice*)      Michael J. Niles
Jonathan J. Weichselbaum (admitted *pro hac*  Florida Bar No. 107203
*vice*)                                       **BERGER SINGERMAN LLP**
**LATHAM & WATKINS LLP**                      1450 Brickell Avenue, Suite 1900
1271 Avenue of the Americas                   Miami, FL 33131
New York, NY 10020                            Telephone:  (305) 755-9500
Telephone:  (212) 906-1200                    Email:  jguso@bergersingerman.com
Email:  george.davis@lw.com                   mniles@bergersingerman.com
        tj.li@lw.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*Counsel for the Debtors and Debtors-in-Possession*

*/s/ Beau H. Butler*

Jennifer F. Wertz
Beau H. Butler
JACKSON WALKER LLP
100 Congress Avenue, Suite 1100
Austin, TX 78701
(512) 236-2247 - direct dial
(512) 391-2147-direct fax
Email: jwertz@iw.com
Email: bbutler@jw.com

*Counsel for the Lessor, CIVF VI - TX1M01-M04, LLC*

5

**Exhibit 9**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,

Debtors.[1]

_____/

Chapter 11 Cases

Case No.: 22-17842-PDR

(Jointly Administered)

### STIPULATION EXTENDING THE DEADLINE BY WHICH
### THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASE

The above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") and

Icon Owner Pool 1 LA Non-Business Parks, LLC ("<u>Lessor</u>" together with the Debtors, the

"<u>Parties</u>") hereby enter into this stipulation (this "<u>Stipulation</u>") pursuant to which the Parties agree

to the following:[2]

### RECITALS

**WHEREAS**, the Debtors lease the premises at 11130 Sherman Way, North Hollywood,

CA 91352 from Lessor pursuant to that certain lease agreement dated June 21, 2019 (as amended,

modified, and supplemented from time to time, the "<u>Extended Lease</u>").

**WHEREAS**, on February 3, 2023, the Court entered the *Order Granting Debtors'*

*Expedited Motion for the Entry of an Order (I) Extending the Deadline By Which the Debtors May*

---

[1]  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2]  Capitalized terms used in this Stipulation and not immediately defined have the meanings given to such terms elsewhere in this Stipulation or in the Deadline Extension Order (as defined herein).

*Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 745] (the "Deadline Extension Order").

**WHEREAS**, pursuant to Paragraph 4 of the Deadline Extension Order, the Debtors' deadline to assume or reject any Unexpired Lease is May 8, 2023, subject to further extensions as contemplated under section 365(d)(4)(B)(ii) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").[3]

**WHEREAS**, the Debtors have requested, and Lessor has agreed to grant, additional time as permitted under section 365(d)(4) of the Bankruptcy Code up to and including the earlier of (a) the date on which the Debtors obtain confirmation of a chapter 11 plan, (b) the date on which the Debtors consummate a sale, or (c) August 7, 2023 (the "Extended Deadline").

**WHEREAS**, the Parties desire to memorialize their agreement in this Stipulation.

**NOW THEREFORE**, the Parties stipulate and agree as follows:

1.      Lessor consents to extend the time period within which the Debtors must assume or reject the Extended Lease through and including the Extended Deadline.

2.      The Parties acknowledge and agree that this Stipulation constitutes "prior written consent of the lessor," as required by section 365(d)(4)(B)(ii) of the Bankruptcy Code, and that no further consent of Lessor shall be required for the purpose of granting the Extended Deadline.

---

[3] The Debtors have filed a motion with the Court seeking a further extension of the Assumption/Rejection Deadline through and including August 7, 2023 on the basis that the initial Assumption/Rejection Deadline is May 8, 2023 in accordance with the Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Division FF, Title X, Sec. 1001. *See Motion for Entry of an Order (I) Ruling Section 365 As Amended By The Act Applies to the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 1185].

US-DOCS\140920529.3

3.    The Extended Deadline granted pursuant to this Stipulation is without prejudice to the Debtors' right to seek further extensions as provided in section 365(d)(4) of the Bankruptcy Code.

4.    Nothing in this Stipulation shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties, (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds, (c) a promise to pay any claim, (d) an implication or admission that any particular claim would constitute an allowed claim, (e) an assumption or rejection of the Extended Lease pursuant to section 365 of the Bankruptcy Code, or (f) an admission or finding with respect to whether the Extended Lease is an unexpired lease of nonresidential real property within the meaning of section 365(d) of the Bankruptcy Code.  Any and all of the Parties' rights, claims, and defenses with respect to the characterization of the Extended Lease pursuant to section 365 of the Bankruptcy Code or otherwise are expressly reserved.

5.    This Stipulation shall be binding and effective upon execution by all the Parties hereto.  This Stipulation may not be amended or modified without the written consent of the Parties hereto.  This Stipulation may be executed in counterparts by facsimile or other electronic transmission, each of which will be deemed an original, and all of which when taken together will constitute one document.

6.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Stipulation.

7.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation.

Dated:   May 1, 2023
         Miami, Florida

|  |  |
|---|---|
| George A. Davis (admitted *pro hac vice*)<br>Tianjiao ("TJ") Li (admitted *pro hac vice*)<br>Brian S. Rosen (admitted *pro hac vice*)<br>Jonathan J. Weichselbaum (admitted *pro hac vice*)<br>**LATHAM & WATKINS LLP**<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone:  (212) 906-1200<br>Email:  george.davis@lw.com<br>         tj.li@lw.com<br>         brian.rosen@lw.com<br>         jon.weichselbaum@lw.com | */s/ Michael J. Niles*<br>Jordi Guso<br>Florida Bar No. 863580<br>Michael J. Niles<br>Florida Bar No. 107203<br>**BERGER SINGERMAN LLP**<br>1450 Brickell Avenue, Suite 1900<br>Miami, FL 33131<br>Telephone:  (305) 755-9500<br>Email:  jguso@bergersingerman.com<br>        mniles@bergersingerman.com |

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*Counsel for the Debtors and Debtors-in-Possession*

/s/ Michelle E. Shriro
_____

Michelle E. Shriro
**SINGER LEVICK, P.C.**
16200 Addison Road, Suite 140
Dallas, TX 75001
Telephone:  (972) 380-5533
Email:  mshriro@singerlevick.com

*Counsel for the Lessor*

2

**Exhibit 10**

12116540-1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,

Debtors.[1]

_____/

Chapter 11 Cases

Case No.: 22-17842-PDR

(Jointly Administered)

## STIPULATION EXTENDING THE DEADLINE BY WHICH THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASE

The above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") and

Kearny Mesa West (San Diego), LLC ("<u>Lessor</u>" together with the Debtors, the "<u>Parties</u>") hereby

enter into this stipulation (this "<u>Stipulation</u>") pursuant to which the Parties agree to the following:[2]

## RECITALS

**WHEREAS**, the Debtors lease the premises at 7292 Opportunity Road, Suite E and Suite

F, San Diego, California 92111 from Lessor pursuant to that certain lease agreement dated as of

December 31, 2019 (as amended, modified, and supplemented from time to time, the "<u>Extended</u>

<u>Lease</u>").

**WHEREAS**, on February 3, 2023, the Court entered the *Order Granting Debtors'*

*Expedited Motion for the Entry of an Order (I) Extending the Deadline By Which the Debtors May*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used in this Stipulation and not immediately defined have the meanings given to such terms elsewhere in this Stipulation or in the Deadline Extension Order (as defined herein).

*Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 745] (the "Deadline Extension Order").

**WHEREAS**, pursuant to Paragraph 4 of the Deadline Extension Order, the Debtors' deadline to assume or reject any Unexpired Lease is May 8, 2023, subject to further extensions as contemplated under section 365(d)(4)(B)(ii) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").[3]

**WHEREAS**, the Debtors have requested, and Lessor has agreed to grant, additional time as permitted under section 365(d)(4) of the Bankruptcy Code up to and including the earlier of (a) the date on which the Debtors obtain confirmation of a chapter 11 plan, (b) the date on which the Debtors consummate a sale, or (c) July 7, 2023 (the "Extended Deadline").

**WHEREAS**, the Parties desire to memorialize their agreement in this Stipulation.

**NOW THEREFORE**, the Parties stipulate and agree as follows:

1.      Lessor consents to extend the time period within which the Debtors must assume or reject the Extended Lease through and including the Extended Deadline; *provided* that the Debtors continue to perform all of their postpetition obligations under the Extended Lease in accordance with section 365 of the Bankruptcy Code until the Extended Lease is assumed, assumed and assigned, or rejected.

2.      The Parties acknowledge and agree that this Stipulation (a) constitutes "prior written consent of the lessor," as required by section 365(d)(4)(B)(ii) of the Bankruptcy Code, and

---

[3] The Debtors have filed a motion with the Court seeking a further extension of the Assumption/Rejection Deadline through and including August 7, 2023 on the basis that the initial Assumption/Rejection Deadline is May 8, 2023 in accordance with the Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Division FF, Title X, Sec. 1001. *See Motion for Entry of an Order (I) Ruling Section 365 As Amended By The Act Applies to the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 1185].

US-DOCS\140896305.5

that no further consent of Lessor shall be required for the purpose of granting the Extended Deadline; and (b) this Stipulation will govern and supersede, as to the Extended Lease, any other order (except for an order approving this Stipulation) entered in the Debtors' bankruptcy cases with respect to the Debtors' deadline to assume or reject any other Unexpired Lease.

3.      The Extended Deadline granted pursuant to this Stipulation is without prejudice to (a) the Debtors' right to seek further extensions as provided in section 365(d)(4) of the Bankruptcy Code or (b) Lessor's rights with respect to any such requests for further extensions.

4.      Nothing in this Stipulation shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties, (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds, (c) a promise to pay any claim, (d) an implication or admission that any particular claim would constitute an allowed claim, (e) an assumption or rejection of the Extended Lease pursuant to section 365 of the Bankruptcy Code, or (f) an admission or finding with respect to whether the Extended Lease is an unexpired lease of nonresidential real property within the meaning of section 365(d) of the Bankruptcy Code.  Any and all of the Parties' rights, claims, and defenses with respect to the characterization of the Extended Lease pursuant to section 365 of the Bankruptcy Code or otherwise are expressly reserved.

5.      This Stipulation shall be binding and effective upon execution by all the Parties hereto.  This Stipulation may not be amended or modified without the written consent of the Parties hereto.  This Stipulation may be executed in counterparts by facsimile or other electronic transmission, each of which will be deemed an original, and all of which when taken together will constitute one document.

US-DOCS\140896305.5

6.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Stipulation.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation.

[*Remainder of page intentionally left blank*]

Dated:    April 25, 2023
                 Miami, Florida
George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
              tj.li@lw.com
              brian.rosen@lw.com
              jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*/s/ Michael J. Niles*
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
mniles@bergersingerman.com

*Counsel for the Debtors and Debtors-in-Possession*

*/s/ Lisa M. Peters*

Lisa M. Peters
**KUTAK ROCK LLP**
The Omaha Building
1650 Farnam Street
Omaha, NE 68102
Telephone:  (402) 346-6000
Email:  Lisa.Peters@KutakRock.com


*Counsel for the Lessor*

2

**Exhibit 11**

13

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                  Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,                  Case No.: 22-17842-PDR

      Debtors.[1]                                      (Jointly Administered)

_____/

## STIPULATION EXTENDING THE DEADLINE BY WHICH THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASE

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") and

PPF Lincoln Medley, LLC ("Lessor" together with the Debtors, the "Parties") hereby enter into

this stipulation (this "Stipulation") pursuant to which the Parties agree to the following:[2]

## RECITALS

**WHEREAS**, the Debtors lease the premises at 12600 NW 15th Avenue, Medley, FL 33916,

from Lessor pursuant to that certain lease agreement dated July 23, 2019 (as amended, modified,

and supplemented from time to time, the "Extended Lease").

**WHEREAS**, on February 3, 2023, the Court entered the *Order Granting Debtors'*

*Expedited Motion for the Entry of an Order (I) Extending the Deadline By Which the Debtors May*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used in this Stipulation and not immediately defined have the meanings given to such terms elsewhere in this Stipulation or in the Deadline Extension Order (as defined herein).

*Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 745] (the "Deadline Extension Order").

**WHEREAS**, pursuant to Paragraph 4 of the Deadline Extension Order, the Debtors' deadline to assume or reject any Unexpired Lease is May 8, 2023, subject to further extensions as contemplated under section 365(d)(4)(B)(ii) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").[3]

**WHEREAS**, the Debtors have requested, and Lessor has agreed to grant, additional time as permitted under section 365(d)(4) of the Bankruptcy Code up to and including the earlier of (a) the date on which the Debtors obtain confirmation of a chapter 11 plan, (b) the date on which the Debtors consummate a sale, or (c) August 7, 2023 (the "Extended Deadline").

**WHEREAS**, the Parties desire to memorialize their agreement in this Stipulation.

**NOW THEREFORE**, the Parties stipulate and agree as follows:

1.      Lessor consents to extend the time period within which the Debtors must assume or reject the Extended Lease through and including the Extended Deadline.

2.      The Parties acknowledge and agree that this Stipulation constitutes "prior written consent of the lessor," as required by section 365(d)(4)(B)(ii) of the Bankruptcy Code, and that no further consent of Lessor shall be required for the purpose of granting the Extended Deadline.

---

[3]  The Debtors have filed a motion with the Court seeking a further extension of the Assumption/Rejection Deadline through and including August 7, 2023 on the basis that the initial Assumption/Rejection Deadline is May 8, 2023 in accordance with the Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Division FF, Title X, Sec. 1001. *See Motion for Entry of an Order (I) Ruling Section 365 As Amended By The Act Applies to the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 1185].

US-DOCS\140999360.5

3.      The Extended Deadline granted pursuant to this Stipulation is without prejudice to the Debtors' right to seek further extensions as provided in section 365(d)(4) of the Bankruptcy Code.

4.      Nothing in this Stipulation shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties, (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds, (c) a promise to pay any claim, (d) an implication or admission that any particular claim would constitute an allowed claim, (e) an assumption or rejection of the Extended Lease pursuant to section 365 of the Bankruptcy Code, or (f) an admission or finding with respect to whether the Extended Lease is an unexpired lease of nonresidential real property within the meaning of section 365(d) of the Bankruptcy Code.  Any and all of the Parties' rights, claims, and defenses with respect to the characterization of the Extended Lease pursuant to section 365 of the Bankruptcy Code or otherwise are expressly reserved.

5.      This Stipulation shall be binding and effective upon execution by all the Parties hereto.  This Stipulation may not be amended or modified without the written consent of the Parties hereto.   This Stipulation may be executed in counterparts by facsimile or other electronic transmission, each of which will be deemed an original, and all of which when taken together will constitute one document.

6.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Stipulation.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation.

Dated:   April 26, 2023
         Miami, Florida

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
        tj.li@lw.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
        mniles@bergersingerman.com

*Counsel for the Debtors and Debtors-in-Possession*

**PPF LINCOLN MEDLEY LLC**,
a Delaware limited liability company

By:     PPF INDUSTRIAL AFFILIATE, LLC,
        Delaware limited liability company, its Manager

By:     PPF INDUSTRIAL, LLC,
        a Delaware limited liability company, its Sole Member

By:     PPF OP, LP,
        a Delaware limited partnership, its Sole Member

By:     PPF OPGP, LLC,
        a Delaware limited liability company, its General Partner

By:     PRIME PROPERTY FUND, LLC,
        a Delaware limited liability company, its Sole Member

By:     MORGAN STANLEY REAL ESTATE ADVISOR, INC.,
        its Investment Adviser

By:     _____
        Nicholas Karali, Vice President

**Exhibit 12**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,

Debtors.[1]

_____/

Chapter 11 Cases

Case No.: 22-17842-PDR

(Jointly Administered)

## STIPULATION EXTENDING THE DEADLINE BY WHICH
## THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASE

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") and

Prologis Targeted U.S. Logistics Fund, L.P. ("Lessor" together with the Debtors, the "Parties")

hereby enter into this stipulation (this "Stipulation") pursuant to which the Parties agree to the

following:[2]

## RECITALS

**WHEREAS**, the Debtors lease the premises at Prologis Aviation Logistics Center A,

10100 Aviation Boulevard, Los Angeles, CA 90045 from Lessor pursuant to that certain lease

agreement dated May 23, 2019 (as amended, modified, and supplemented from time to time, the

"Extended Lease").

**WHEREAS**, on February 3, 2023, the Court entered the *Order Granting Debtors'*

*Expedited Motion for the Entry of an Order (I) Extending the Deadline By Which the Debtors May*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used in this Stipulation and not immediately defined have the meanings given to such terms elsewhere in this Stipulation or in the Deadline Extension Order (as defined herein).

*Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 745] (the "Deadline Extension Order").

**WHEREAS**, pursuant to Paragraph 4 of the Deadline Extension Order, the Debtors' deadline to assume or reject any Unexpired Lease is May 8, 2023, subject to further extensions as contemplated under section 365(d)(4)(B)(ii) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").[3]

**WHEREAS**, the Debtors have requested, and Lessor has agreed to grant, additional time as permitted under section 365(d)(4) of the Bankruptcy Code up to and including the earlier of (a) the date on which the Debtors obtain confirmation of a chapter 11 plan, (b) the date on which the Debtors consummate a sale, or (c) August 7, 2023 (the "Extended Deadline").

**WHEREAS**, the Parties desire to memorialize their agreement in this Stipulation.

**NOW THEREFORE**, the Parties stipulate and agree as follows:

1.      Lessor consents to extend the time period within which the Debtors must assume or reject the Extended Lease through and including the Extended Deadline.

2.      The Parties acknowledge and agree that this Stipulation constitutes "prior written consent of the lessor," as required by section 365(d)(4)(B)(ii) of the Bankruptcy Code, and that no further consent of Lessor shall be required for the purpose of granting the Extended Deadline.

---

[3]  The Debtors have filed a motion with the Court seeking a further extension of the Assumption/Rejection Deadline through and including August 7, 2023 on the basis that the initial Assumption/Rejection Deadline is May 8, 2023 in accordance with the Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Division FF, Title X, Sec. 1001. *See Motion for Entry of an Order (I) Ruling Section 365 As Amended By The Act Applies to the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 1185].

US-DOCS\140896314.3

3.      The Extended Deadline granted pursuant to this Stipulation is without prejudice to the Debtors' right to seek further extensions as provided in section 365(d)(4) of the Bankruptcy Code.

4.      Nothing in this Stipulation shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties, (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds, (c) a promise to pay any claim, (d) an implication or admission that any particular claim would constitute an allowed claim, (e) an assumption or rejection of the Extended Lease pursuant to section 365 of the Bankruptcy Code, or (f) an admission or finding with respect to whether the Extended Lease is an unexpired lease of nonresidential real property within the meaning of section 365(d) of the Bankruptcy Code.  Any and all of the Parties' rights, claims, and defenses with respect to the characterization of the Extended Lease pursuant to section 365 of the Bankruptcy Code or otherwise are expressly reserved.

5.      This Stipulation shall be binding and effective upon execution by all the Parties hereto.  This Stipulation may not be amended or modified without the written consent of the Parties hereto.   This Stipulation may be executed in counterparts by facsimile or other electronic transmission, each of which will be deemed an original, and all of which when taken together will constitute one document.

6.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Stipulation.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation.

*[Remainder of page intentionally left blank]*

3

Dated:   April 24, 2023
         Miami, Florida

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
         tj.li@lw.com
         brian.rosen@lw.com
         jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*/s/ Michael J. Niles*
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
mniles@bergersingerman.com

*Counsel for the Debtors and Debtors-in-Possession*

*/s/ Richard J. Bernard*

Richard J. Bernard
**FAEGRE DRINKER BIDDLE & REATH LLP**
1177 Avenue of the Americas, 41st Floor
New York, NY 10036
Telephone:  (212) 248-3140
Email:  richard.bernard@faegredrinker.com

*Counsel for the Lessor*

2

**<u>Exhibit 13</u>**

12116540-1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No.: 22-17842-PDR |
| Debtors.[1] | (Jointly Administered) |

_____/

## STIPULATION EXTENDING THE DEADLINE BY WHICH
## THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASE

The above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") and

Ranger H-TX LP ("<u>Lessor</u>" together with the Debtors, the "<u>Parties</u>") hereby enter into this

stipulation (this "<u>Stipulation</u>") pursuant to which the Parties agree to the following:[2]

## RECITALS

**WHEREAS**, Vital Pharmaceuticals, Inc. (referred to herein as "<u>VPX</u>"), leases the premises

at 11707 South Sam Houston Parkway West, Suite H, Houston, TX 77031 from Lessor pursuant

to that certain lease agreement dated July 7, 2021 (as amended, modified, and supplemented from

time to time, the "<u>Extended Lease</u>").

**WHEREAS**, on February 3, 2023, the Court entered the *Order Granting Debtors'*

*Expedited Motion for the Entry of an Order (I) Extending the Deadline By Which the Debtors May*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used in this Stipulation and not immediately defined have the meanings given to such terms elsewhere in this Stipulation or in the Deadline Extension Order (as defined herein).

*Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 745] (the "Deadline Extension Order").

**WHEREAS**, pursuant to Paragraph 4 of the Deadline Extension Order, the Debtors' deadline to assume or reject any Unexpired Lease is May 8, 2023, subject to further extensions as contemplated under section 365(d)(4)(B)(ii) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").[3]

**WHEREAS**, the Debtors have requested, and Lessor has consented to, additional time as permitted under section 365(d)(4) of the Bankruptcy Code up to and including the earlier of (a) the date on which the Debtors obtain confirmation of a chapter 11 plan, (b) the date on which the Debtors consummate a sale, or (c) August 7, 2023 (the "Extended Deadline").

**WHEREAS**, the Parties desire to memorialize their agreement in this Stipulation.

**NOW THEREFORE**, the Parties stipulate and agree as follows:

1.     Lessor consents to extend the time period within which VPX must assume or reject the Extended Lease through and including the Extended Deadline; however, Lessor's consent to the requested extension is expressly conditioned on VPX continuing to satisfy all its post-petition obligations under the Extended Lease, pursuant to section 365(d)(3) of the Bankruptcy Code. Further, notwithstanding anything to the contrary in this Stipulation, the Lessor reserves and does not waive any and all rights under the Bankruptcy Code and applicable non-bankruptcy law, including all rights with respect to assumption, assumption and assignment, and rejection of the

---

[3] The Debtors have filed a motion with the Court seeking a further extension of the Assumption/Rejection Deadline through and including August 7, 2023 on the basis that the initial Assumption/Rejection Deadline is May 8, 2023 in accordance with the Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Division FF, Title X, Sec. 1001. *See Motion for Entry of an Order (I) Ruling Section 365 As Amended By The Act Applies to the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 1185].

US-DOCS\140922389.6

Extended Lease, and the right to seek to compel assumption or rejection of the Extended Lease prior to the Extended Deadline if VPX does not satisfy its post-petition obligations under the Extended Lease, pursuant to section 365(d)(3) of the Bankruptcy Code.

2.      The Parties acknowledge and agree that this Stipulation constitutes "prior written consent of the lessor," as required by section 365(d)(4)(B)(ii) of the Bankruptcy Code, and that no further consent of Lessor shall be required for the purpose of granting the Extended Deadline.

3.      The Extended Deadline granted pursuant to this Stipulation is without prejudice to the Debtors' right to seek further extensions as provided in section 365(d)(4) of the Bankruptcy Code.

4.      Nothing in this Stipulation shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties, (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds, (c) a promise to pay any claim, (d) an implication or admission that any particular claim would constitute an allowed claim, (e) an assumption or rejection of the Extended Lease pursuant to section 365 of the Bankruptcy Code, or (f) an admission or finding with respect to whether the Extended Lease is an unexpired lease of nonresidential real property within the meaning of section 365(d) of the Bankruptcy Code.  Any and all of the Parties' rights, claims, and defenses with respect to the characterization of the Extended Lease pursuant to section 365 of the Bankruptcy Code or otherwise are expressly reserved.

5.      This Stipulation shall be binding and effective upon execution by all the Parties hereto.  This Stipulation may not be amended or modified without the written consent of the Parties hereto.   This Stipulation may be executed in counterparts by facsimile or other electronic

3

transmission, each of which will be deemed an original, and all of which when taken together will constitute one document.

6.      The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Stipulation.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation.

*[Remainder of page intentionally left blank]*

Dated:   April 26, 2023
         Miami, Florida

|  |  |
|---|---|
| | _/s/ Michael J. Niles_ |
| George A. Davis (admitted _pro hac vice_) | Jordi Guso |
| Tianjiao ("TJ") Li (admitted _pro hac vice_) | Florida Bar No. 863580 |
| Brian S. Rosen (admitted _pro hac vice_) | Michael J. Niles |
| Jonathan J. Weichselbaum (admitted _pro hac vice_) | Florida Bar No. 107203 |
| **LATHAM & WATKINS LLP** | **BERGER SINGERMAN LLP** |
| 1271 Avenue of the Americas | 1450 Brickell Avenue, Suite 1900 |
| New York, NY 10020 | Miami, FL 33131 |
| Telephone:  (212) 906-1200 | Telephone:  (305) 755-9500 |
| Email:  george.davis@lw.com | Email:  jguso@bergersingerman.com |
|         tj.li@lw.com | mniles@bergersingerman.com |
|         brian.rosen@lw.com | |
|         jon.weichselbaum@lw.com | |

– and –

Andrew D. Sorkin (admitted _pro hac vice_)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted _pro hac vice_)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

_Counsel for the Debtors and Debtors-in-Possession_

US-DOCS\140922389.6

*/s/ Jason A. Enright*

Jason A. Enright
**WINSTEAD PC**
500 Winstead Building
2728 N. Harwood Street, Suite 500
Dallas, TX 75201
Telephone:  (214) 745-5400
Email:  jenright@winstead.com

*Counsel for the Lessor*

6

US-DOCS\140922389.6

**Exhibit 14**

12116540-1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                  Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,                  Case No.: 22-17842-PDR

        Debtors.[1]                                (Jointly Administered)

_____/

## STIPULATION EXTENDING THE DEADLINE BY WHICH THE DEBTORS MUST ASSUME OR REJECT UNEXPIRED LEASE

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") and

Rexford Industrial Realty, L.P., a Maryland limited partnership ("Lessor" together with the

Debtors, the "Parties") hereby enter into this stipulation (this "Stipulation") pursuant to which the

Parties agree to the following:[2]

### RECITALS

**WHEREAS**, the Debtors lease the premises at 3042 E. Inland Empire Boulevard, Suite A,

Ontario, CA 91764 (the "Property") from Lessor pursuant to that certain lease agreement dated

May 8, 2019 (as amended, modified, and supplemented from time to time, the "Extended Lease").

**WHEREAS**, on February 3, 2023, the Court entered the *Order Granting Debtors'*

*Expedited Motion for the Entry of an Order (I) Extending the Deadline By Which the Debtors May*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used in this Stipulation and not immediately defined have the meanings given to such terms elsewhere in this Stipulation or in the Deadline Extension Order (as defined herein).

*Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 745] (the "Deadline Extension Order").

**WHEREAS**, pursuant to Paragraph 4 of the Deadline Extension Order, the Debtors' deadline to assume or reject any Unexpired Lease is May 8, 2023, subject to further extensions as contemplated under section 365(d)(4)(B)(ii) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code").[3]

**WHEREAS**, the Debtors have requested, and Lessor has agreed to grant, additional time as permitted under section 365(d)(4) of the Bankruptcy Code up to and including the earlier of (a) the date on which the Debtors obtain confirmation of a chapter 11 plan, (b) the date on which the Debtors consummate a sale, or (c) August 7, 2023 (the "Extended Deadline").

**WHEREAS**, the Parties desire to memorialize their agreement in this Stipulation.

**NOW THEREFORE**, the Parties stipulate and agree as follows:

1.    The Recitals set forth herein above are incorporated by reference.

2.    Lessor consents to extend the time period within which the Debtors must assume or reject the Extended Lease through and including the Extended Deadline.

3.    The Parties acknowledge and agree that this Stipulation constitutes "prior written consent of the lessor," as required by section 365(d)(4)(B)(ii) of the Bankruptcy Code, and that no further consent of Lessor shall be required for the purpose of granting the Extended Deadline.

---

[3]   The Debtors have filed a motion with the Court seeking a further extension of the Assumption/Rejection Deadline through and including August 7, 2023 on the basis that the initial Assumption/Rejection Deadline is May 8, 2023 in accordance with the Consolidated Appropriations Act of 2021, Pub. L. No. 116-260, Division FF, Title X, Sec. 1001. *See Motion for Entry of an Order (I) Ruling Section 365 As Amended By The Act Applies to the Deadline By Which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* [ECF No. 1185].

2

4.   The Extended Deadline granted pursuant to this Stipulation is without prejudice to the Debtors' right to seek further extensions as provided in section 365(d)(4) of the Bankruptcy Code as well as Lessor's right to object to same.

5.   Nothing in this Stipulation shall be deemed or construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties, (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds, (c) a promise to pay any claim, (d) an implication or admission that any particular claim would constitute an allowed claim, (e) an assumption or rejection of the Extended Lease pursuant to section 365 of the Bankruptcy Code, or (f) an admission or finding with respect to whether the Extended Lease is an unexpired lease of nonresidential real property within the meaning of section 365(d) of the Bankruptcy Code.  Any and all of the Parties' rights, claims, remedies and defenses with respect to the characterization of the Extended Lease pursuant to section 365 of the Bankruptcy Code or otherwise are expressly reserved.

6.   Nothing in this Stipulation shall be construed as a waiver by Lessor of any  right, claim or remedy under the bankruptcy code, including but not limited to the provisions of 11 U.S.C. Sec. 363 or 11 U.S.C. Sec. 365.

8.   The Debtors intend to remain current on all postpetition obligations under the Extended Lease of the Property through the Extended Deadline.  The Debtors do not intend to challenge or seek to avoid any payment made by the Debtors pursuant to said Extended Lease, nor seek turnover of the security deposit.

9.   For the avoidance of doubt, nothing contained in this Stipulation shall be construed as otherwise modifying the Extended Lease and the Debtors' obligations thereunder.

US-DOCS\140941102.6

10. This Stipulation shall be binding and effective upon execution by all the Parties hereto. This Stipulation may not be amended or modified without the written consent of the Parties hereto. This Stipulation may be executed in counterparts by facsimile or other electronic transmission, each of which will be deemed an original, and all of which when taken together will constitute one document.

11. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Stipulation.

12. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation.

4

Dated:    April 28, 2023
          Miami, Florida

/s/ Michael J. Niles

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
         tj.li@lw.com
         brian.rosen@lw.com
         jon.weichselbaum@lw.com

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
mniles@bergersingerman.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*Counsel for the Debtors and Debtors-in-Possession*

/s/ Allan D. Sarver

Allan D. Sarver

**LAW OFFICE OF ALLAN D. SARVER**

16000 Ventura Boulevard, Suite 1000

Encino, California 91436

Telephone:  (818) 981-0581

Email:  ads@asarverlaw.com


*Counsel for the Lessor*

2