UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-17842-PDR |
| Debtors. _____/ | (Jointly Administered) |

**RESPONSE TO OBJECTION [ECF NO. 1255] AND SUPPLEMENT TO OBJECTION [ECF NO. 1306] TO EXPEDITED SUPPLEMENTAL APPLICATION FOR APPROVAL TO EMPLOY GRANT THORNTON LLP**
*(Hearing Scheduled on May 4, 2023 at 2:00 p.m.)*

Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev LLC and Vital Pharmaceuticals International Sales, Inc. (collectively, the "Debtors"), by and through undersigned counsel, file this response (the "Response") to the *Objection to Expedited Supplemental Application for Approval to Employ Grant Thornton LLP* [ECF No. 1255] (the "Initial Objection") and the *Supplement to Objection to Expedited Supplemental Application for Approval to Employ Grant Thornton LLP* [ECF No. 1306] (the "Supplemental Objection," and together with the Initial Objection, the "Objection") filed by John H. Owoc and Megan Owoc (together, the "Owocs"). In support of this Response, the Debtors submit the *Second Supplemental Declaration of Mark Margulies in Support of Debtors' Supplemental Application for Approval to Employ Grant Thornton LLP to Provide Tax Examination Assistance, Effective March 6, 2023, and Expand the Scope of the Transaction Advisory Services to the Debtors, Effective April 11,*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

12115369-2

*2023* (the "Second Supplemental Margulies Declaration") filed concurrently herewith, and respectfully state as follows:

**INTRODUCTION**

In the Objection, Mr. Owoc asserts that Grant Thornton is not a disinterested person because Mr. Owoc is the sole shareholder of the Debtor, Vital Pharmaceuticals, Inc. ("VPX"), and is also, individually, a client of Grant Thornton (which prepares his tax returns). To the contrary, as a legal matter under applicable tax law, the Owocs' and the Debtors' interests are aligned for tax purposes and there is no apparent, much less actual, conflict of interest.

Grant Thornton has performed tax return preparation services for the Owocs and VPX for the past three (3) years. After VPX filed for bankruptcy on October 10, 2022, VPX sought to continue to use Grant Thornton's services because, among other reasons, such retention was both efficient and economical based on Grant Thornton's prior knowledge and experience with the Debtors' business operations. Accordingly, on January 13, 2023, the *Debtors' Expedited Application for Approval of the Employment of Grant Thornton LLP, as Financial Advisors to the Debtors, Effective as of December 17, 2022* (the "Initial Employment Application") [ECF No. 643] was filed with the Court.

At that time, Mr. Owoc had already retained Grant Thornton to assist in preparing his personal tax returns for the 2022 tax period, and such relationship was properly disclosed to creditors and other parties in interest in the Initial Employment Application. Not only did Mr. Owoc not raise any objection to Grant Thornton's employment at the time the Initial Employment Application was filed, but Mr. Owoc both approved and signed each of the engagement agreements retaining Grant Thornton. See Initial Employment Application, Exhibit B. Based on the record and evidence presented, the Court found that Grant Thornton was disinterested, and on January

2

12115369-2

23, 2023 entered an order approving the Initial Employment Application [ECF No. 665] (the "Employment Order"). The Owocs did not appeal the Employment Order.[2]

The reason no objections were ever previously filed is simple – the very nature of the Debtors' corporate structure and the relationship between Mr. Owoc and the Debtors are aligned from a tax perspective. However, since Mr. Owoc's removal as CEO, the Owocs seek to recharacterize their relationship with the Debtors as adversarial. Irrespective of their legal woes with the Debtors, the nature of the tax relationship has not altered or been affected in any way by Mr. Owoc's removal as CEO. As an S corporation (created and designated as such by Mr. Owoc), VPX elects to pass corporate income, losses, deductions, and credits through to its shareholders for federal tax purposes. Mr. Owoc reports this flow-through of income and losses on his personal tax returns and is assessed tax at individual income tax rates. Because Mr. Owoc elected to incorporate VPX as a pass-thru entity for tax purposes, if the tax reporting or tax treatment performed by Grant Thornton is beneficial or nonbeneficial to VPX, it also is, by virtue of the pass-through treatment, beneficial or nonbeneficial, respectively, to the Owocs.[3] Thus, the Objection, which is based on hypothetical conflicts that have no bases in reality, should be overruled in its entirety.

---

[2] Even though the Objection should be overruled on the merits for the reasons discussed below, the Objection also is procedurally defective based on Mr. Owoc's unjustified delay in bringing the Objection. "An unjustified delay in bringing a motion to disqualify [a professional under § 327(a)] provides a separate ground to deny the relief requested in the underlying motion." In re Brooke Corp., No. 08-22786, 2016 WL 519731, at *7 (Bankr. D. Kan. Feb. 5, 2016) (citing In re WorldCom Inc., 311 B.R. 151, 166-67 (Bankr. S.D.N.Y. 2004). See also In re Enron Corp., No. 02 CIV. 5638 (BSJ), 2003 WL 223455, at *4, n.2 (S.D.N.Y. Feb. 3, 2003) (A delay of less than two months in contesting the disinterestedness of counsel found to be unjustified). Here, like in Enron, the basis for the objection was known at the time the Initial Employment Application was filed but the Owocs have waited over three (3) months to raise an objection.

[3] Likewise, some of the other Debtors are single owner limited liability companies that are "disregarded" by the Internal Revenue Service, meaning that any taxes owed by such entities are reported under the owner's income tax return. Like the S corporation pass through structure, such characterization and the applicable tax treatment is a function of how Mr. Owoc set up the business.

3

12115369-2

## THE OBJECTION SHOULD BE OVERRULED IN ITS ENTIRETY BECAUSE GRANT THORNTON IS DISINTERESTED

Section 327(a) of the Bankruptcy Code authorizes a trustee or debtor in possession to employ counsel and other professionals to represent or assist the trustee or debtor in possession in carrying out their duties and responsibilities under the Bankruptcy Code; provided that such professional is a "disinterested person." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines a disinterested person as follows:

> "The term "disinterested person" means a person that —
>
> (A) is not a creditor, an equity security holder, or an insider;
>
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

In the Supplemental Objection, the Owocs assert that the "dual representation of a closely held corporation and its principal" is "disfavored" and as such, Grant Thornton cannot be found to be disinterested. See Supplemental Objection, ¶ 3. Not only does this argument blatantly disregard how a public accounting firm and a law firm differ vastly in their representation of a bankruptcy estate, but each of the cases cited are inapposite to the facts here.

Unlike here, each of the cases cited in the Supplemental Objection involve dual representations by law firms of a debtor and its principal where an actual conflict was present, not a representation by an accounting firm, such as Grant Thornton, where no conflict has been demonstrated. See In re N. John Cunzolo Assocs., Inc., 423 B.R. 735, 739 (Bankr. W.D. Pa. 2010) (finding that the "taint is simply too much" for law firm to represent both the debtor and its principal where principal transferred debtor's assets to family members and associates on the eve

4

of the debtor's bankruptcy filing); In re Frascella Enterprises, Inc., No. 06-10322DWS, 2006 WL 1530256, at *7 (Bankr. E.D. Pa. Apr. 12, 2006) (finding that "the conflicts inherent in the legal undertakings by [the law firm] on behalf of the Debtor and the [principals]" required denial of the law firm's employment application); In re BH & P , Inc., 949 F.2d 1300, 1312 (3d Cir. 1991)(upholding bankruptcy court's finding that representation of multiple debtors with interdebtor claims among themselves create actual conflict);[4] Matter of Bohack Corp., 607 F.2d 258 (2d Cir. 1979) (law firm whose senior partner had close business and personal relationship with chairman of the board of the debtor was disqualified from pursuing a state court action based on allegations that the board of directors had been improperly manipulated by the majority shareholder).

Contrary to the cases cited in the Supplemental Objection, courts have recognized that, unlike a law firm, an accounting firm does not necessarily "represent" the interests of a bankruptcy estate. In re Aircraft Instrument & Dev., Inc., 151 B.R. 939 (Bankr. D. Kan. 1993) ("Aircraft"); In re Michigan General Corp., 77 B.R. 97 (Bankr. N.D. Tex. 1987) ("Michigan General"). In Aircraft, the court considered disqualification of the trustee's accounting firm because the accounting firm had previously worked for the debtor's competitor. The court held that not only did the accountants not represent an interest materially adverse to bankruptcy estate, but that they did not "represent" the bankruptcy estate at all. The court reasoned that:

> "[The objecting party], R.C. Allen, would have the Court equate the services of an accountant in advising the trustee on accounting, tax, and other financial matters with the work of an attorney representing the trustee in court and out of court with respect to legal actions in connection with the bankruptcy case. The Court concludes that there is a fundamental difference between the services of the two professions in that an accountant cannot be said to "represent" the interests of the estate. The work of an accountant in a bankruptcy case is largely internal in that the accountants advise the trustee concerning the accuracy of the information available

---

[4] The Third Circuit in BH & P , Inc. rejected a per se rule that "interdebtor claims mandate disqualification of the trustee in every instance" but rather that "each case involving a single trustee in jointly administered estates with interdebtor claims be evaluated prospectively on a case-by-case basis." BH & P , Inc., 949 F.2d at 1312-13.

5

and the trustee or to some other party in interest and, with the possible exception of tax work which may constitute representation if it involves appearances before the tax court or other tax tribunals, does not constitute representation as that term is generally used in adversarial system of justice developed in the common law countries."

151 B.R. at 942-43.

Similarly, in <u>Michigan General</u>, the official committee of unsecured creditors objected to the continued employment of a law firm as counsel for related chapter 11 debtors, and approval was sought for employment of an accounting firm that represented the related chapter 11 debtors. Although the court held that the law firm was not disinterested, the court noted that the function of a public accountant employed by related chapter 11 debtors was one of reporting rather than one of advocacy, and thus, related debtors could employ the same accounting firm. In reaching this conclusion, the court stated that:

> "[T]he function of Arthur Andersen as a public accountant permits dual employment by the estates because the function is one of reporting rather than one of advocacy. The preparation of consolidated accounting statements is an accepted practice in public accounting. <u>See</u> <u>e.g.,</u> SEC Regulation S–X, 17 C.F.R. sec. 210 (1986) (reporting requirements of publicly held companies). Because of the public ownership of GFI Nevada, Inc. and the public distribution of the Michigan General debentures, consolidated reporting to the SEC appears to be necessary in these cases. The assisting of the debtors in preparing the required bankruptcy reports is likewise distinguished from advocacy. There is no reason why these accounting functions, even though representative of the debtors, need to entail adverse representation. The unsecured creditors committee of Diamond Lumber has objected to Arthur Andersen's employment by more than one of the estates, but under the circumstances the court sees no reason to believe that an adverse situation is created solely by the fact of dual employment."

<u>Id.</u> at 108. As determined in the <u>Aircraft</u> and <u>Michigan General</u> cases, accountants are unlike attorneys in the sense that while they perform services on behalf of the estate, they do not represent the interests of the estate like attorneys.

In another case, <u>In re United Refuse LLC</u>, No. 04-11503-RGM, 2007 WL 1695337 (Bankr. E.D. Va. June 7, 2007), a court determined that an accounting firm was disinterested notwithstanding its dual representation of a debtor and its principal. In that case, a company,

6

United Leasing, was in the business of financing small businesses and accomplished this primarily through equipment leases.  Because it had significant lending facilities open with a trash refuse business, United Leasing organized United Refuse LLC to first manage the trash refuse business, and then to hold its assets until the business could be sold to a third party. Edward H. Shield, the principal and president of United Leasing, authorized James C. Lehner, a United Leasing vice-president, to be the sole member of United Refuse LLC and assigned Mr. Lehner to operate the business until it was sold.

Later, Mr. Lehner claimed to be the sole owner of both the legal and equitable interest of United Refuse LLC, which he transferred to his wife and himself.  Mr. Shield and United Leasing contested Mr. Lehner's claim of ownership. United Leasing commenced two suits in an effort to regain control of United Refuse LLC, but United Refuse LLC eventually filed a bankruptcy petition.

In the bankruptcy case, United Leasing filed an objection to the accounting firm's, Frank & Company's ("Frank & Co."), final fee application, arguing, among other things, that Frank & Co. was not disinterested because it prepared Mr. Lehners' 2003 income tax returns in October 2004 shortly after Frank & Co. was engaged by the debtor.  The court rejected this argument, holding that:

> "While it was improvident for Frank & Company to undertake the assignment, it did not develop into an actual conflict. Neither United Refuse nor United Leasing has shown how that relatively modest engagement adversely affected Frank & Company performing its duties to the debtor. The evidence presented by Mr. Young and Ms. Miller reflect that there was no effect. They were each undertaken without impacting on the other. Forfeitures are not favored at law. Here, the tax return was a relatively modest undertaking in comparison to the work performed for the debtor, the two engagements did not affect each other; and the potential conflict did not develop into an actual conflict. The court is unwilling to disqualify the accounting firm *ex post facto* and disallow its fees in these circumstances. There are conflicts that require that action. This is not one of them."

Id. at 48.

12115369-2

There has been no evidence submitted here suggesting that Grant Thornton's tax return preparation services for the Owocs in any way creates a conflict of interest on account of services Grant Thornton also provides to the Debtors. The Owocs' unfounded assertion that "[t]ax savings for the Debtor could result in increased liability for Mr. Owoc," see Supplemental Objection, ¶ 5, is simple wrong under the circumstances here. To the contrary, it is customary for an accounting firm to represent both the entity and its principal when taxes pass through the entity as they do here.[5] Based on the pass through tax treatment here, if the reporting or tax treatment is beneficial to the Debtors, it is beneficial to the Owocs; and if the reporting or tax treatment is negative to the Owocs, then it is negative to the Debtors.

Grant Thornton's transaction advisory services also do not present any conflict of interest. Not only are such services completely unrelated to the limited tax return preparation services Grant Thornton provides to the Owocs, but the sales transaction has been fully vetted and agreed to as part of the debtor in possession financing transaction (which was negotiated and approved by Mr. Owoc at the onset of these cases), with an agreed to path for restructuring and milestones with respect thereto. Thus, the work being performed by Grant Thornton in preparing and advising on quality of earnings reports in connection with the sales transaction is providing support to facilitate the already agreed to restructuring pathway, and as such does not present a potential or actual conflict of interest with respect to any services being provided to Mr. Owoc by Grant Thornton. Mr. Owoc's argument that "[a] sale price acceptable to the Debtor might be opposed by Mr. Owoc" is completely unrelated to the services to be provided by Grant Thornton. See Supplemental

---

5 By comparison, under applicable law, a public accounting firm performing tax compliance services to a public company is prohibited from preparing the tax returns for the public company's chief executive officer. However, there are no such restrictions placed on accounting firms for privately held companies, such as VPX, and accounting firms routinely undertake preparation of both the shareholders' and the companies tax returns where the company has elected pass through tax treatment.

12115369-2

Objection, ¶ 5. Grant Thornton has no control over a potential sales price accepted by the Debtor or approved by the Bankruptcy Court.

Put simply, for tax purposes, the interests of VPX and the Owocs are aligned and there is no conflict of interest between the two. The Owocs' attempt to otherwise create "hypothetical conflicts" and "horrible imaginings" where none actually exist should be disregarded. In re Caldor, Inc. NY, 193 B.R. 165, 174 (Bankr. S.D.N.Y. 1996) (holding that the "Trustee's assertion of a disqualifying adverse interest among the Committees is rejected as the product of 'hypothetical conflicts' and 'horrible imaginings'"); see also TWI Int'l, Inc. v. Vanguard Oil & Serv. Co., 162 B.R. 672, 675 (S.D.N.Y. 1994) ("merely hypothesizing that conflicts may arise is not a sufficient basis to warrant the disqualification" of an attorney) (internal citation omitted).[6]

Additionally, similar to United Refuse, the work performed for both the Owocs and the Debtors make up a very small percentage of Grant Thornton's business. As relatively modest engagements, such representations do not adversely affect Grant Thornton's ability to perform its duties to either client. Because Grant Thornton's interest in maintaining its client relationship with Mr. Owoc will not impair the firm's ability to act impartially with respect to work to be performed for VPX and vice versa, and will not require Grant Thornton to compromise the representation of the other, Grant Thornton is in full compliance with its obligations under the AICPA Code of Professional Conduct.

Finally, requiring Grant Thornton to withdraw from its engagement with the Debtors would be unduly disruptive and result in unnecessary delay and administrative expenses attendant to bringing in a new accounting firm to familiarize itself with the Debtors' business operations, their

---

[6] Even if a conflict were to arise with respect to the work being performed by Grant Thornton for the Debtors and Mr. Owoc, Grant Thornton has standard procedures for an ethical wall to prevent any actual conflict of interests from occurring. See Second Supplemental Margulies Declaration, ¶ 22. Moreover, the Owocs' personal tax records and information are confidential and are not made available to the Debtors. Id. at ¶ 14.

9

12115369-2

tax financial reporting and the sales transaction. Removal of Grant Thornton to provide professional services to the Debtors at this stage does not benefit, and potentially harms, the bankruptcy estates and their creditors.

## CONCLUSION

For all of the foregoing reasons, Grant Thornton continues to be disinterested in these cases. As such, the Objection should be overruled in its entirety and the relief set forth in the Supplemental Employment Application granted.

| | |
|---|---|
| Dated: May 3, 2023<br>Miami, Florida | Respectfully submitted,<br><br>/s/ Jordi Guso |
| George A. Davis (admitted *pro hac vice*)<br>Tianjiao ("TJ") Li (admitted *pro hac vice*)<br>Brian S. Rosen (admitted *pro hac vice*)<br>Jonathan J. Weichselbaum (admitted *pro hac vice*)<br>**LATHAM & WATKINS LLP**<br>1271 Avenue of the Americas<br>New York, NY 10020<br>Telephone: (212) 906-1200<br>Email: george.davis@lw.com<br>          tj.li@lw.com<br>          brian.rosen@lw.com<br>          jon.weichselbaum@lw.com | Jordi Guso<br>Florida Bar No. 863580<br>Michael J. Niles<br>Florida Bar No. 107203<br>**BERGER SINGERMAN LLP**<br>1450 Brickell Avenue, Suite 1900<br>Miami, FL 33131<br>Telephone: (305) 755-9500<br>Email: jguso@bergersingerman.com<br>          mniles@bergersingerman.com |

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: whit.morley@lw.com

*Co-Counsel for the Debtors*

12115369-2