

**ORDERED in the Southern District of Florida on May 8, 2023.**



**Peter D. Russin, Judge
United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

Vital Pharmaceuticals, Inc., *et al.*,

    Debtors.

_____/

Case No. 22-17842-PDR

Chapter 11
(Jointly Administered)

**ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) RULING SECTION 365 AS AMENDED BY THE ACT APPLIES TO THE DEADLINE BY WHICH THE DEBTORS MAY ASSUME OR REJECT UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY AND (II) GRANTING RELATED RELIEF**

THIS CASE came before the Court on May 4, 2023, at 2:00 p.m., on *Debtors' Motion for Entry of an Order (I) Ruling Section 365 as Amended by the Act Applies to the Deadline by which the Debtors May Assume or Reject Unexpired Leases of Nonresidential Real Property and (II) Granting Related Relief* (the "Motion").[1] In their Motion, the Debtors ask the Court to rule that they have 210 days from the

---

[1] Doc. 1185.

petition date to assume unexpired nonresidential leases of real property and to provide an additional 90-day extension. Under the Consolidated Appropriations Act of 2021, Congress amended Bankruptcy Code § 365(d)(4) to extend the time for debtors to assume unexpired nonresidential leases of real property from 120 days to 210 days. By its terms, that amendment, which sunsetted on December 27, 2022, continues to apply only in subchapter V cases, not to traditional chapter 11 cases, that were pending before the sunset date. Because a rational Congress could not have conceivably intended the amendment to § 365(d)(4) to continue to apply only in subchapter V cases, and not traditional chapter 11 cases, this Court (1) concludes that the amendment to § 365(d)(4) continues to apply in traditional chapter 11 cases, like this one, filed before the amendment sunsetted; and (2) finds cause for a 90-day extension of the deadline to assume.

## I.    Background

In March 2020, the country found itself amid a national emergency.[2] By that time, COVID-19 had already spread to the United States, and thousands of new cases were being reported each day.[3] To keep COVID-19 from overwhelming the country's healthcare system, states began issuing stay-at-home orders, which

---

[2] https://trumpwhitehouse.archives.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/. Under Federal Rule of Evidence 201, the Court may, on its own, take judicial notice of facts that are generally known within its territorial jurisdiction or facts that can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b), (c). That includes statistics compiled by government agencies, such as job losses and the number of COVID-19 cases. *McGhee v. City of Flagstaff*, 2020 WL 2309881, at *2 – 4 (D. Ariz. May 8, 2020); *Tuttle v. Educ. Credit Mgmt. Corp. (In re Tuttle)*, 600 B.R. 783, 806 (Bankr. E.D. Wis. 2019). It can also include public statements about COVID-19, such as the President's declaration of a national emergency. *McGhee*, 2020 WL 2309881, at *3 – 4.

[3] https://covid.cdc.gov/covid-data-tracker/#trends_weeklycases_select_00.

resulted in the closure of nonessential businesses.[4] As a result, consumer spending and the country's gross domestic product plummeted, while unemployment skyrocketed.[5]

Congress needed to act fast to provide relief to American workers and businesses. And it did. Within two weeks of the President declaring a national emergency, Congress passed the Coronavirus Aid, Relief, and Economic Security (CARES) Act (2020).[6]

Nine months later, on December 21, 2020, Congress passed the Consolidated Appropriations Act (2021) (the "Act"), which was signed into law on December 27, 2020.[7] Spanning 5,593 pages, far and away the longest bill ever passed by Congress, the Act provided roughly $900 billion in COVID-19 relief (in addition to $1.4 trillion in regular appropriations).[8]

The Act also included a variety of relief to bankrupt debtors. For instance, it provided that COVID-19 relief stimulus payments did not become part of a debtor's

---

[4] https://www.cdc.gov/mmwr/volumes/69/wr/mm6935a2.htm#F2_down.

[5] https://www.bea.gov/news/2020/personal-income-and-outlays-march-2020; see also Carlie Porterfield, U.*S. Consumer Spending Sees Sharpest Monthly Drop Ever Recorded*, Forbes, Apr. 30, 2020, *available at* https://www.forbes.com/sites/carlieporterfield/2020/04/30/us-consumer-spending-sees-sharpestmonthly-drop-ever-recorded/#469a619420da ("Consumer spending—which drives around 70% of the U.S. economy—dropped by 7.5% in March, the steepest drop in history since records began being kept in 1959 according to the U.S. Commerce Department, as businesses close, layoffs abound and Americans shelter-in-place during the coronavirus pandemic");

[6] Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 4003(b)(4), 134 Stat. 281 (2020) (to be codified at 15 U.S.C. § 9042).

[7] Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, 134 Stat. 1182 (2020).

[8] https://www.cbo.gov/system/files/2021-01/PL_116-260_Summary.pdf.

bankruptcy estate;[9] ensured that no debtor would be denied relief under certain provisions of the CARES Act because of their status as a debtor;[10] and extended the time for subchapter V debtors to perform under unexpired leases.[11]

Relevant to this case, the Act also extended the time for debtors to assume unexpired nonresidential leases of real property.[12] Before Congress passed the Act, Bankruptcy Code § 365(d)(4) gave debtors 120 days from the petition date to assume an unexpired nonresidential lease, failing which the lease would be deemed rejected.[13] The Act, however, amended § 365(d)(4) to give debtors 210 days—rather than 120.[14] But the amendment to § 365(d)(4) had a sunset provision under which the time period would revert to 120 days on December 27, 2022.[15]

Importantly, § 365(d)(4) authorizes only one 90-day extension for cause, after which the debtor must obtain "prior written consent of the landlord" for any further extension. If the landlord does not provide such consent, the debtor has a Hobson's choice: it must decide whether to seek assumption even though it may not be prepared to do so or to allow the nonresidential lease of real property to be deemed

---

[9] Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, 134 Stat. 1182, § 1001(a) (2020).

[10] *Id.* § 1001(c).

[11] *Id.* § 1001(f)(1)(A).

[12] *Id.* § 1001(f)(1)(B).

[13] 11 U.S.C. § 365(d)(4)(A) (2020). For cause shown, the court could extend the 120-day period for an additional 90 days. 11 U.S.C. § 365(d)(4)(B).

[14] Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, 134 Stat. 1182, § 1001(f)(1)(B).

[15] *Id.* § 1001(f)(2)(A).

4

rejected upon the passing of the deadline.[16] Both options may have detrimental impacts on the estate. If the debtor assumes a lease, it may regret the decision because, for example, in this case a later buyer may have preferred the lease be rejected. If the debtor allows the lease to be rejected, the debtor must deal with a (potentially hefty) rejection-damage claim and the consequences of a buyer potentially preferring assumption.

On October 10, 2022, two months before the § 365(d)(4) amendment sunsetted, the Debtors filed for chapter 11 bankruptcy.[17] The Debtors, which manufacture and distribute performance energy drinks, operate out of twelve leased "Direct Store Delivery" locations; three leased "Fuel Team" buildings; nine leased "Distribution Centers"; ten leased "Parkout Storage" locations; and eighteen leased "POS Storage" locations.[18] So, in all, the Debtors have more than 50 leases that are crucial to its operations.

Much of the Debtors' efforts during the early stages of this case were focused on negotiating with its lenders and the Official Committee of Unsecured Creditors to secure debtor-in-possession (DIP) financing.[19] As part of that process, the Debtors settled on an exit strategy: the Debtors would maximize the value of their assets by

---

[16] A Hobson's choice is "(1) a situation in which one is presented with only one "choice," and hence no choice at all; or (2) a situation in which either of one's two choices is bad." Garner, Bryan, A., *Garner's Modern English Usage* 150 (4th ed. 2016).

[17] Docs. 1 & 26.

[18] Doc. 27, ¶ 4.

[19] *See, e.g.,* Docs. 24, 87, 120, 256, 259, 267, 388, 411 – 13, 516, 525 – 27, 594, 624 – 26 & 638; *see also* Doc. 627, ¶ 1 ("The Proposed Final DIP Order is the culmination of months of good faith and hard fought negotiations between and among the Committee, the Debtors, and the DIP Lenders.").

soliciting bids for the sale of their business as a going concern. By mid-January 2023, the Debtors' investment banker had contacted nearly 150 potential buyers, roughly 40 of whom entered into nondisclosure agreements, and the Debtors negotiated with potential bidders from whom they received non-binding indications of interest.[20] This all culminated with the Debtors filing a motion seeking approval of bid procedures designed to promote a competitive sale and yield maximum value for their assets.[21]

To maximize the value of their assets, though, the Debtors must retain flexibility to assume or reject unexpired nonresidential leases: it goes without saying that any buyer will want to evaluate the Debtors' unexpired leases, so until the Debtors know who the buyer is, they won't know which leases the buyer will want (i.e., which leases need to be assumed and assigned). To maintain that flexibility, the Debtors moved in late-January 2023 to extend the deadline for assuming unexpired nonresidential leases.[22]

In their motion, the Debtors explained that even though the amendment to § 365(d)(4), which gave them 210 days to assume their leases, had sunsetted in December 2022, they believed they still had the benefit of the 210 days because the amendment had been in effect at the time the case was filed.[23] But if the 120-day period applied, it would have expired on February 7, 2023—nearly three months

---

[20] Doc. 707, ¶ 11.

[21] Doc. 707.

[22] Doc. 671.

[23] Doc. 671, ¶¶ 11 & 12.

before the sale of the Debtors' assets was originally supposed to take place. Ultimately, the Court granted the Debtors an "extension" through May 8, 2023 to assume any unexpired leases, but the "extension" was without prejudice to the Debtors seeking (1) a determination that the 210-day lease assumption period had been in effect (and therefore the "extension" through May 8, 2023 was really not an extension at all); and (2) a statutorily authorized 90-day extension for cause.[24]

The Debtors now seek such relief.[25] Although the Debtors have stipulated to an extension with fourteen of their landlords,[26] there are two landlords from whom the Debtors were unable to obtain consent. This Court must now determine whether the 210-day lease-assumption period in the § 365(d)(4) amendment in effect at the time this case was filed applies even though the amendment sunsetted on December 27, 2022.[27]

## II. Analysis

If the 210-day lease-assumption period applies, then the initial lease-assumption deadline was May 8, 2023. That means this Court may extend the May 8 lease-assumption deadline—over a landlord's objection—for cause. If, however, the 120-day lease-assumption deadline applies, then the Debtors have used their "for cause" extension, in which case this Court is powerless to extend the deadline further absent "prior written consent" of the landlord.

---

[24] Doc. 745, ¶¶ 3 & 4.

[25] Doc. 1185.

[26] Docs. 1312 & 1322.

[27] Doc. 1185,

7

A. <u>The Court must determine whether the 210-day lease-assumption deadline applies even though no party has objected</u>.

No party has objected to the Debtors' request that this Court declare that the 210-day lease-assumption deadline applies in this case. However, § 365(d)(4) specifically provides that if the Court grants a debtor an initial 90-day extension of the lease-assumption deadline, "the court may grant a subsequent extension only upon prior written consent of the lessor in each instance."[28] While it is tempting to rely on the absence of any objections to grant the relief the Debtors request, that approach would require the Court to ignore § 365(d)(4)'s prohibition against doing so absent "prior written consent" of the lessor. The Court will not do so.

B. <u>The 210-day lease-assumption deadline applies here</u>.

By its terms, the § 365(d)(4) amendment sunsetted on December 27, 2022.[29] The Act includes a specific provision expressly providing that the amendment extending the lease-assumption deadline from 120 days to 210 days "shall apply in any case commenced under subchapter V of chapter 11 of title 11, United States Code, before the date that is 2 years after the date of enactment of this Act."[30] In other words, the sunset provision is clear that a subchapter V debtor that filed bankruptcy during the pendency of the amendment receives the full benefit of the 210-day period, even in cases where that period expires after the amendment sunsets. Curiously, though, the sunset provision makes no mention of whether the

---

[28] 11 U.S.C. § 365(d)(4)(B)(ii).

[29] Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, 134 Stat. 1182, § 1001(f)(2)(A).

[30] *Id.* § 1001(f)(2)(B).

amendment likewise applies in traditional chapter 11 cases. To determine whether the amendment applies to traditional chapter 11 cases, this Court must interpret the Act.

When interpreting a statute, this Court must begin with the text.[31] And when that text is unambiguous, the Court's inquiry ordinarily ends.[32] Here, the Act specifically provides that the amendment to § 365(d)(4) applies to subchapter V cases pending before the amendment sunsets, but it does not make any mention of the amendment applying in traditional chapter 11 cases. Applying the doctrine of *expressio unius est exclusio alterius*—i.e., "[t]he expression of one thing implies the exclusion of others"—a fair reading of the Act's literal language is that the amendment to § 365(d)(4) is unambiguous and applies only to subchapter V cases and does not apply to traditional chapter 11 cases pending before the amendment sunsetted.

The Eleventh Circuit, however, has recognized that courts may "depart from the literal meaning of an unambiguous statute . . . where a rational Congress could not conceivably have intended the literal meaning to apply."[33] After careful

---

[31] *United States v. Stevens*, 997 F.3d 1307, 1314 (11th Cir. 2021) ("As with any statutory interpretation question, our analysis "must begin, and usually ends, with the text of the statute.") (quoting *Boca Ciega Hotel, Inc., v. Bouchard Transp. Co.*, 51 F.3d 235, 237 (11th Cir. 1995)); *Reeves v. Astrue*, 526 F.3d 732, 734 (11th Cir. 2008) ("Statutory interpretation begins and ends with the text of the statute so long as the text's meaning is clear.").

[32] *United States v. Stevens*, 997 F.3d 1307, 1314 (11th Cir. 2021) ("As with any statutory interpretation question, our analysis "must begin, and usually ends, with the text of the statute.") (quoting *Boca Ciega Hotel, Inc., v. Bouchard Transp. Co.*, 51 F.3d 235, 237 (11th Cir. 1995)); *Reeves v. Astrue*, 526 F.3d 732, 734 (11th Cir. 2008) ("Statutory interpretation begins and ends with the text of the statute so long as the text's meaning is clear.").

[33] *United States v. Garcon*, 54 F.4th 1274, 1283 (11th Cir. 2022) (quoting *Vachon v. Travelers Home & Marine Ins. Co.*, 20 F.4th 1343, 1350 (11th Cir. 2021) (Pryor, C.J., concurring)).

9

consideration, and with a healthy level of trepidation, this Court concludes a rational Congress could not have conceivably intended the amendment to § 365(d)(4) to apply only to pending subchapter V cases—and not traditional chapter 11 cases.

To reach this conclusion, it is important to compare subchapter V cases with traditional chapter 11 cases to understand why if any debtor needs additional time to assume nonresidential leases of real property, it is the traditional chapter 11 debtor—not the subchapter V debtor.

Subchapter V bankruptcy, which was created as part of the Small Business Reorganization Act, applies to small business debtors—i.e., debtors who owe less than $7.5 million in debt.[34] As the court in *In re Seven Stars on the Hudson Corp.* explained, subchapter V bankruptcy provides "some powerful and cost-saving restructuring tools not otherwise available to Chapter 11 debtors"—*e.g.*, elimination of the absolute priority rule; elimination of the requirement to file a disclosure statement; the exclusive right to file a plan; the ability to confirm a plan even if all classes reject it; and the ability to pay administrative expenses over time.[35]

Those restructuring tools, however, came with a tradeoff. "[T]o balance the special new powers available to small business debtors, Congress granted creditors a very important protection: the requirement that a Subchapter V case proceed

---

[34] Small Business Reorganization Act of 2019, Pub. L. No. 116-54, Aug. 23, 2019, 133 Stat. 1079.

[35] *In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 340 (Bankr. S.D. Fla. 2020).

expeditiously."[36] To that end, Congress requires subchapter V debtors to file their chapter 11 plan within 90 days of the order for relief.[37] While a subchapter V debtor may move to extend the 90-day deadline for filing a plan, Congress limited extensions to only those circumstances where the need for more time "is attributable to circumstances for which the debtor should not be justly held accountable."[38] A high bar indeed.

Subchapter V cases involve debtors whose debts are below $7.5 million; who must file a plan of reorganization within 90 days; who must satisfy a stringent standard for extending the plan deadline; and whose obligation to file a plan within 90 days and otherwise proceed expeditiously is part of a bargain for receiving powerful reorganizational tools. In those cases, the need for an additional 90 days (the increase from 120 days to 210) to assume a lease is antithetical to this expeditious timeframe.

In fact, given that a subchapter V debtor must file a plan within 90 days, it is hard to see why such a debtor would need the extra 90 days (from 120 to 210) at all. Indeed, a debtor typically makes a business decision to assume or reject a nonresidential lease of real property by the time it files its plan. So why would a subchapter V debtor need another 120 days—after filing its plan—to assume

---

[36] *In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 340 (Bankr. S.D. Fla. 2020).

[37] 11 U.S.C. § 1189(b); *In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 341 (Bankr. S.D. Fla. 2020).

[38] 11 U.S.C. § 1189(b).

11

nonresidential leases? Continuing to apply the 210-day lease-assumption deadline in subchapter V cases literally accomplishes next to nothing.

The juxtaposition of the needs of a traditional chapter 11 case is striking. Unlike in subchapter V cases, there is no deadline for filing a plan in a traditional chapter 11 case. Instead, traditional chapter 11 debtors have the exclusive right to file a plan during the first 120 days of a case.[39] For "cause," exclusivity may be extended up to eighteen months.[40] Thus, Congress has recognized that traditional chapter 11 debtors may need significantly more time before they must file a plan, which, again, is when a debtor typically makes a decision to assume or reject nonresidential leases. Because of the complexity of traditional chapter 11 cases, and the amount of time it may take to reach confirmation, it is the traditional chapter 11 debtor that needs the benefit of the continued application of the § 365(d)(4) amendment.

This case is a perfect example. Here, the Debtors, which have more than $1 billion in debt (more than $365 million in secured debt and $800 million in unsecured debt), have more than 50 leases that are crucial to the operation of their business. Before they can even decide whether to assume any of those leases, they have had to spend the first 90 to 120 days of this case—essentially all the allotted time for assuming nonresidential leases if the § 365(d)(4) amendment does not apply—negotiating DIP financing, as well as a sale process designed to maximize

---

[39] 11 U.S.C. § 1121(b).

[40] 11 U.S.C. § 1121(d)(2).

the value of their assets. Currently, the deadline for potential buyers to submit bids is May 22, 2023 (224 days from the petition date), with a sale hearing scheduled for June 7, 2023 (240 days from the petition date). In the meantime, flexibility in determining whether to assume or reject leases is crucial to maximizing the sale price from potential buyers. This is a textbook example of why the complexities of a traditional chapter 11 case give rise to the need for the 210-day lease-assumption provision. Imagine an even more acute situation of a large retailer, like a restaurant chain or movie theater business with hundreds of leases of non-residential real property, whose business has effectively been shuttered due to the pandemic.

The Court cannot think of a circumstance better suited to rationalize the amendment to § 365(d)(4). Yet, the statute as written would provide the subchapter V debtor with the additional time—but not the traditional chapter 11 debtor. No rational Congress could have conceivably intended such a result.

In fact, it is quite the opposite. Despite having given considerable thought to this matter, the Court cannot conceive of a single reason why a subchapter V debtor would get the benefit of the continued application of the 210-day lease-assumption deadline but a traditional chapter 11 debtor would not. Because of the irrationality of the outcome, and the fact that Congress (nor any other legal commentator) has provided no explanation for it, the Court can only conclude that in its haste to provide much-needed relief in the throes of a once-in-100-year pandemic, Congress simply made a mistake.

13

### III. Conclusion

This Court is mindful that the absurdity doctrine should be invoked only in rare and exceptional cases.[41] The Act itself is rare in terms of the emergency extraordinary relief it provides. So too is its historical length, the speed in which it was enacted, and the emergency dire conditions of the pandemic it was intended to mollify. By interpreting the Act to give subchapter V debtors additional time to assume unexpired nonresidential leases, while denying that relief to traditional chapter 11 debtors, this Court would have to conclude that Congress intended to give an essential reorganization tool to debtors who do not need it, while denying it to the very debtors who need it the most. Because no rational Congress would have done so, this Court concludes that the 210-day lease assumption period applies in traditional chapter 11 cases—such as this one—that were pending before the amendment to § 365(d)(4) sunsetted.

Accordingly, the Court ORDERS:

1.  The Debtors' Motion is GRANTED.

2.  The amendment to § 365(d)(4) applies in this case. Therefore, the initial deadline for assuming unexpired nonresidential leases is May 8, 2023.

3.  The Debtors have demonstrated cause to extend the lease assumption deadline for an additional 90 days.

---

[41] *United States v. Garcon*, 54 F.4th 1274, 1283 (11th Cir. 2022) ("Because '[c]ourts should not be in the business of rewriting legislation, . . . we apply the absurdity doctrine only under rare and exceptional circumstances.'") (quoting *Vachon v. Travelers Home & Marine Ins. Co.*, 20 F.4th 1343, 1350 (11th Cir. 2021) (Pryor, C.J., concurring)).

4. This Order is without prejudice to the Debtors' right to seek further extensions of the Assumption/Rejection Deadline with the prior written consent of each applicable landlord.

5. Nothing in the Motion or this Order, nor any actions or payments made by the Debtors pursuant to this Order, shall be construed as: (i) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties; (ii) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim would constitute an allowed claim; (v) an assumption or rejection of any executory contract or unexpired lease pursuant to Section 365 of the Bankruptcy Code; or (vi) a limitation on the Debtors' rights under Section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Order. Nothing contained in this Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

6. Nothing in this Order shall extend the Assumption/Rejection Deadline beyond the date on which an order is entered confirming a plan in these chapter 11 cases.

7. Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

8. The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

9.  This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

###

Copies to:
All parties in interest.