```
STATE OF WISCONSIN         CIRCUIT COURT        WAUKESHA COUNTY
                             Branch 1
_____


WEBB & GERRITSEN, INC.,

                Plaintiff,


                  -vs-                   File No. 2019-CV-001049

VITAL PHARMACEUTICALS, INC.,

                Defendant.

_____


                     EXCERPT OF MOTION HEARING
                        DECISION AND ORDER



_____


             Proceeding held on February 24, 2022


              BEFORE THE HONORABLE MICHAEL O. BOHREN
                 CIRCUIT COURT JUDGE, PRESIDING

                     A P P E A R A N C E S

              DAVID HENRY WEBER, Attorney at Law,
       appeared by Zoom on behalf of the Plaintiff.

              MATTHEW T. FRICKER, Attorney at Law,
       appeared by Zoom on behalf of the defendant.
```

**COPY**

```
                   ROSE MARIE RODERICK
                   Official Court Reporter
```

1

EXHIBIT 1

|   |   |
|---|---|
| 1 | ***EXCERPT OF PROCEEDINGS*** |
| 2 | THE COURT: All right. Thank you. I'm |
| 3 | just reviewing the statute for a moment. The Court has |
| 4 | reviewed and both parties cited to the *Scullion* case. |
| 5 | I'll recite the facts in *Scullion*. In reaching my |
| 6 | decision and conclusion about the stay, it's *Scullion v.* |
| 7 | *Wisconsin Power Light Company,* S-C-U-L-L-I-O-N, *v.* |
| 8 | *Wisconsin Power Light,* 237 Wis 2d. 439. It's a 2000 WI |
| 9 | App 120. |
| 10 | So it's a discussion of the criteria and |
| 11 | the factors the Court should consider in granting a stay |
| 12 | after an appeal, and specifically it addresses the issue |
| 13 | of a money judgment and how to address a money judgment, |
| 14 | as opposed to some other type of judgment, an injunction |
| 15 | case, under the *Gudenschwager* case. That's |
| 16 | G-U-D-E-N-S-C-H-W-A-G-E-R. |
| 17 | So the *Gudenschwager* case is *State of* |
| 18 | *Wisconsin v. Gudenschwager,* G-U-D-E-N-S-C-H-W-A-G-E-R, 191 |
| 19 | Wis. 2d 431, a 1995 decision. That case is then |
| 20 | embellished in more detail with the *Scullion* case, and |
| 21 | they discuss the *Gudenschwager* factors and then get into |
| 22 | what's necessary for a money judgment case. |
| 23 | So looking first at Paragraph 18 of the |
| 24 | *Scullion* case, it says, "First, as under *Gudenschwager*, |
| 25 | the court must consider the issues the appellant is |

1  appealing and the likelihood of success on those issues.
2  Then it goes on to say, "Bearing in mind that the motion
3  for a stay, in most instances, is addressed to the very
4  individual who just made the rulings the appellant is
5  challenging on appeal, it is not to be expected that a
6  circuit court will often conclude there is a high
7  probability that it has just erred.  However, that is not
8  required for a stay of a judgment granting or denying an
9  injunction, and similarly, we do not require that for a
10 stay of a money judgment.  The movant need not always a
11 establish a high probability of success on appeal, but it
12 must be more than a mere possibility."
13              The issues that the appellant lays out,
14 that the defendant lays out, on appeal are highly
15 contested issues in this case and they -- it's not a
16 surprise that there are the issues on appeal, so I'm
17 satisfied that they have met the mere burden of a
18 possibility of success on appeal by making the allegations
19 that they have and that they've met the first factor.
20              I also conclude that they wouldn't even
21 have to make much of a case for success on appeal, based
22 on the way the Court of Appeals has worded that particular
23 factor.
24              "Second, the circuit court must consider
25 the need to ensure the collectibility of the judgment and

1   the accumulated interest if the appellant does not succeed
2   on appeal." And this is really the key factor that the
3   Plaintiff asserts, that it's a $2.4 million judgment. The
4   actual amount would be $2,445,098.10. That's the amount
5   of the verdict. That's a significant amount of money
6   under any set of circumstances.
7              The Plaintiff has the right to have the
8   fruits of their judgment if the Defendant is not
9   successful on appeal. So the defendant's, the appellant's
10  response is, We're a big company, we have a lot of money,
11  don't worry about it, we proved at the trial how much
12  money we make and how much we're worth.
13             The parties and the Court are certainly
14  cognizant of the rapid ups and downs of market interest,
15  and we're not talking about stock value in this case,
16  we're talking asset value of a corporation. But the Court
17  is aware of the fluidity of market value and of values of
18  various assets, as well as companies on a stock market
19  basis.
20             Certainly the stocks have taken substantial
21  downward trends in the last several days. Today is
22  February 24, 2022, and one can look historically back and
23  determine what's going in the world to cause the market
24  downturn, but nonetheless it's there.
25             The Court also looks at the highly volatile

1  market, generally speaking.  This is a soft-drink
2  business, a highly marketed soft-drink business, and it's
3  been very successful.  They established the successfulness
4  of the company during the course of the trial.
5  Nonetheless, that doesn't mean that the Plaintiff isn't at
6  risk if something goes south or if the company itself
7  makes a determination to make monetary decisions that
8  would affect the payment of a judgment.
9                $2.4 million is said to be not a lot of
10  money by the defense, yet it's a significant amount for
11  the Plaintiff, a significant amount, generally speaking.
12  The Court is satisfied further that the mental attitude,
13  if you will, of the corporation is important in whether
14  the corporate officers would take action to depress value
15  or deliquify assets so that the judgment became less
16  collectible.
17                Further, the state is -- the company is
18  located in Florida, it's not located in Wisconsin.
19  Plaintiff is located in Wisconsin.  In order to collect on
20  a judgment in Wisconsin, one would have to seize numerous
21  assets at various dealership locations through the state.
22                I'm satisfied that based upon the need to
23  protect the collectibility of the judgment, that if the
24  Court issues a stay, that there has to be some basis to
25  protect the Plaintiff's interest in the amount of the

5

1  judgment.

2  As the Court addresses in Paragraph 20 of
3  the *Scullion* decision, it states, quote, As we have
4  indicated above, consideration of this factor addresses
5  the appellant's ability to file an undertaking or
6  otherwise provide security that the court determines is
7  sufficient, or to satisfy the court that even without an
8  undertaking or security, there is no risk the appellant
9  will not be able to pay the full judgment plus accumulated
10 interest and costs.

11 The one approach we've talked about is an
12 undertaking.  The court also says, has there been adequate
13 assurances that the defendant is collectible and the money
14 will be there when it's time to pay, if that time arises.
15 The Court is satisfied that statements as to the amount of
16 money a corporation is worth on a particular day isn't
17 really a satisfactory method of determining taking away
18 the risk that the appellee has if the appellant is not
19 successful and there's no money to pay the judgment.

20 So on that basis, the Court finds that this
21 factor leans toward either requiring a deposit of funds or
22 an undertaking to ensure that if the Court issues a stay,
23 that the stay is that the appellee, the Plaintiff in this
24 case, if successful on appeal, can be paid.

25 The third factor under *Scullion* is

1     considering the interest of the appellant in securing the
2     fruits of the appeal if it's ultimately successful.  Now,
3     in the *Scullion* case, this had to do with a stray voltage
4     case and the plaintiff farmer had won against the
5     Wisconsin Electric Power Company.  It was I think
6     $264,000.  It might have been $264,000 times two, but it
7     was a significant amount of money to the farmers involved.
8                    It was not a lot of money to Wisconsin
9     Power Light.  That was clear during the course of the
10    case.  But then the power company -- the prevailing
11    plaintiff wanted to get its money because it was losing
12    value in its farm and having to replace cows and spending
13    a lot of money that they didn't have to stay in business
14    because of what had happened and what the facts were in
15    the case that were proved to the court and to the jury.
16                   The Court considered that.  And this factor
17    goes to what happens if Wisconsin Power Company pays the
18    money, and of course, the plaintiff then spends all the
19    money in other aspects of the case and it's not there.
20    And the plaintiff loses the appeal and the money is not
21    there for the appellee -- let me rephrase that, for the
22    appellant, in this case Vital Pharmaceuticals, to get
23    their money back.
24                   But that assumes the money is paid out and
25    somehow gets into the Plaintiff's hands.  The Plaintiff

                                    7

1    spends it and it's not held secure.  So that fourth factor
2    to protect the interest of the appellant can be addressed
3    if the court issues a stay by having a bond issued, by
4    having an undertaking issued, protects the appellant,
5    protects the appellee.
6                There was a fifth factor that the Court
7    looked at and that was in Paragraph 23.  And it states,
8    "We list as a fifth factor the interest of the public,
9    although in the usual money judgment appeal that is not a
10   relevant consideration and will not weigh either in favor
11   of or against a stay."
12               Under looking at all the circumstances and
13   looking at the analysis using the *Scullion* factors, I'm
14   satisfied, first, that there's issues on appeal that in
15   good legal practice should be ventilated on appeal, if the
16   parties choose to do that.  If that's the case, the appeal
17   should go forward with a stay.  I'm satisfied of that.
18               The question is -- that permits the appeal
19   to go forward, the issues to be argued on appeal in the
20   appellate court, but there also has to be a way to protect
21   the Plaintiff so that the money is there if they prevail
22   on appeal.  That's the issue the Court -- I think it is
23   really the crux of the case that the parties bring to the
24   court.
25               I'm satisfied that an undertaking is

1	appropriate.  I'm satisfied as much money as the defendant
2	may have, it's that most entities don't want to tie up
3	their cash by giving it to the opposition and having the
4	opposition potentially spend it, or even in another case,
5	to have the money put into an account and held in an
6	account securely in the clerk of courts while the parties
7	fight over the issue in the appellate courts.
8	           I'm satisfied that rather than posting
9	money, an undertaking is appropriate.  That's what the
10	Court will order in this case, an undertaking, a bond.  I
11	have not searched out fees for a bond.
12	                Mr. Fricker, have you done that?
13	           MR. FRICKER:  I have, Your Honor.  It
14	averages about one percent per year for the amount of the
15	bond.  And that's what a bond will cost.
16	           THE COURT:  Well, that's certainly
17	economical, rather than holding the funds up someplace.  A
18	bond, an undertaking, then I'm satisfied that is an
19	appropriate legal fee, legal cost, involved in a case such
20	as this.
21	           Looking at the amount of the bond, first,
22	I'm satisfied that the bond should be equal to the amount
23	of the judgment, which is $245,098.10.  I think that's
24	appropriate.  There's interest at 5 percent that the Court
25	should take into account, that at least for a year, I'm

9

1    satisfied that an appeal of this nature will take at least
2    a year.
3                And the issue as to costs, the statute that
4    addresses the undertaking -- a stay with an undertaking is
5    808.07.  And we've addressed the criteria for a stay.  The
6    Court has determined that a stay is appropriate and an
7    undertaking is appropriate.  Under Section 808.07(2m)(a),
8    it states, "During the pendency of an appeal of a judgment
9    in any civil action, the court shall set the amount of the
10   undertaking to be furnished by all appellants collectively
11   in order to stay the execution of the judgment during
12   appellate review, but the undertaking shall not exceed
13   $100,000,000."
14               Then it goes on to state in Sub(3), "An
15   undertaking for costs is not required unless specifically
16   required by statute, or, except as provided in 655" --
17   which is the Patient Compensation Section -- "by the trial
18   court acting in its discretion."
19               So I'm reading that last phrase as that it
20   says, "As provided in Section 655.27(5)(a)3., then by the
21   trial court acting in its discretion."  That last phrase
22   modifies the entire section of the statute, not just the
23   Section 655.  So I am reading it to modify both parts of
24   the statute.
25               With the costs in this case, this is a

1  matter under some contention is under Section 135.06 is
2  the Dealership Damage Statute, and that damage section
3  says that if any grantor violates this chapter, a dealer
4  may bring an action.  It talks about the damages,
5  including actual attorney's fees and the dealer may also
6  be granted injunctive relief, et cetera.
7  Let me read the whole sentence to be sure
8  it's clear:  If any grantor violates this chapter, a
9  dealer may bring an action against such grantor in any
10 court of competent jurisdiction for damages sustained by
11 the dealer as a consequence of the grantor's violation,
12 actual attorney's fees, and the dealer may also be granted
13 injunctive relief.
14 So actual attorney's fees is listed in the
15 statute.  It's been a matter that's been contested whether
16 attorney's fees have to be granted by the court.  I think
17 it's a discretionary matter by the court, but it's
18 certainly open.  And in a case such as this, I think the
19 argument by the Plaintiff is that the Plaintiff is never
20 made whole for lost profits, which essentially this case
21 centers on without payment of its actual court costs.
22 ==And here the primary court costs will be==
23 ==attorney's fees, as opposed to out-of-pocket costs, which==
24 ==although I think Attorney Fricker was correct in his==
25 ==estimate of $20 to $30,000 in out-of-pocket costs==,

11

1  depositions, things like that, but then the actual
2  attorney's fees on both sides would be substantially more.
3              I'm satisfied that attorney's fees are part
4  of the argument as well.  I'm just looking at a calculator
5  for a moment.  I get interest over a year at 5 percent
6  being over $122,000.  I don't know if anybody else has
7  checked that out.
8              MR. FRICKER:  I just did, Your Honor, and
9  that's my calculation as well.
10             THE COURT:  All right.  Thank you.  So I'm
11 going to round it off at $122,000.  I'll add in -- I'm
12 going to include an undertaking for costs and interest.
13 I'll include -- I'm going to include attorney's fees.  As
14 an estimate on fees for damages, I'm going to include
15 $300,000 for fees.
16             I'm assuming -- I don't believe I have
17 information on the hourly rate, but I am assuming it's
18 somewhere between $200 and $300 an hour.  A case such as
19 this on both sides involve substantial legal actions,
20 substantial legal research and work.  I'm satisfied that
21 at least at this point the amount of $300,000 for fees
22 would not be unreasonable.  And it takes into account the
23 general status.
24             Using $125,000 for costs, $300,000 -- or
25 $122,000 for interest, $300,000 for attorney's fees,

1  estimated $30,000 for costs, in my book that comes out to
2  $452,000.  If I add that to the judgment amount, my
3  numbers come out to $2,897,098.10 cents.  I'd order that
4  there be an undertaking for that amount filed by the
5  Plaintiff as a condition of the court issuing a stay.
6              I'll issue a stay based upon the filing
7  with the court of the undertaking in that amount, using
8  the estimated costs given by Attorney Fricker at one
9  percent for the cost of that bond, that upon the filing of
10 that bond, the stay would be in effect.  So ordered.
11             Now, in doing a stay, the statute addresses
12 stay on the merits of the verdict and addresses a stay on
13 costs as well.  If you wish to separate that out, I would
14 separate that out as the amount of the verdict plus costs
15 and attorney's fees at $452,000 if there were to be two
16 undertakings filed.
17             I understand the estimate on attorney's
18 fees is just that, an estimate.  I understand the
19 Plaintiff has discussed fees substantially above that.  I
20 understand that the defense has argued that there
21 shouldn't be fees at all in a case such as this.  At this
22 point, in order for purposes of protecting the appellate
23 process and my reading of the statute, is that fees would
24 be appropriate in this case.
25             I've found that fees are appropriate.  I've

1  taken an estimate of my Court's, this Court's view, as to
2  how to generate those fees based upon my earlier
3  statements to arrive at $300,000.  That amount could be
4  more or less.  It's actually determined by the court, it's
5  not meant to fix that amount.  The court costs at $30,000
6  is, again, an estimate based upon the discussion we've had
7  on the record.  It's not meant to lock in that court costs
8  $30,000.  It could be more or it could be less.  That will
9  be the order of the court.  So ordered.
10             I'll ask Attorney Weber to draft the
11 necessary order and submit it to the court and to Attorney
12 Fricker.  The stay was to continue to today's date.  I'll
13 continue the stay pending appeal to the filing of this
14 order to -- I could say Monday.  I could say longer than
15 that.  I'll ask the parties, can you resolve this order by
16 tomorrow or do you wish to have more time?
17             MR. WEBER:  I think the order itself we
18 could certainly resolve by tomorrow.  I don't know how
19 long Mr. Fricker will need to file that undertaking and
20 bond.  In the past I've seen ten days or so from this type
21 of ruling.  I'm not sure if that's not enough time for
22 him, but I would have no objection to the Court continuing
23 the stay for that short amount of time that's briefly
24 needed to file the bond under these circumstances, so
25 there's no question about a time lapse that may exist

1   between today's date and whatever date that may be for me
2   to perfect the judgment.
3              And I would not suggest we should separate
4   it.  I think we should continue the stay, and I'll file --
5   the order would be to amend the judgment to add reference
6   to the costs that we've asked for and the attorney's fees
7   to be determined upon remand and that the stay would then
8   continue as set forth in the structure of my proposed
9   order.  The date that I had listed, I'm not sure if
10  Mr. Fricker thinks that's enough time or not.
11             THE COURT:  What day did you list?
12             MR. WEBER:  Let me pull that up here.  The
13  date I had suggested in my briefing was March --
14             MR. FRICKER:  It was March 7th, wasn't it?
15             MR. WEBER:  That sounds right.
16             THE COURT:  That's a week from Monday.
17  Attorney Fricker, is that good for you?
18             MR. FRICKER:  Your Honor, I guess that's
19  not good for me.  I propose a somewhat different
20  timetable, basically more time.  And let me explain why.
21  I believe the judgment date here is February 8, and I'm
22  assuming that Mr. Weber is going to file a Notice of Entry
23  of Judgment, which will make our deadline to file an
24  appeal March 24th.
25             And so that's a decision point for Vital,

1    appeal or not.  I think an appeal is likely, but I can't
2    say if the final decision has been made.  What I would
3    like to ask the Court is to continue the stay and allow
4    Vital until March 24 to comply with the Court's direction
5    to file an undertaking as a condition of the stay pending
6    an appeal.
7             THE COURT:  By your calculations, that's
8    March 24th?
9             MR. FRICKER:  Yes.
10            THE COURT:  Attorney Weber, what's your
11   view?
12            MR. WEBER:  I would defer to the Court on
13   this, Your Honor.
14            THE COURT:  Well, I want the parties to
15   have time to work through it.  If I recall correctly, if
16   you enter a judgment, file a notice of entry of judgment,
17   that reduces the appellate time down to 45 days; is that
18   true?
19            MR. WEBER:  Yes.
20            THE COURT:  So putting that 45-day
21   calculation into the time limits we've talked about comes
22   out with March 24th, then according to Attorney Fricker
23   and using I think it was February 5th as the date of the
24   judgment, so if that's true, I'll rely upon his date.  And
25   I would issue the order, the stay continues to be in

16

1    effect to the close of business on March 24, 2022.  So
2    ordered.
3                 MR. FRICKER:  And Your Honor, just to make
4    sure a couple other points are clear, assuming Vital then
5    complies with the condition of the stay by filing the
6    undertaking, then the stay would continue during the
7    pendency of an appeal.  Do I understand the Court
8    correctly?
9                 THE COURT:  If the undertaking is good for
10   a year, it continues for a year.  If the undertaking -- if
11   you have to renew the undertaking, it would have to be
12   renewed.
13                MR. FRICKER:  One additional question, if
14   Vital decides to save the expense of a bond premium and
15   instead simply deposits the amount you just mentioned into
16   the clerk of court, would that be sufficient to secure the
17   stay as well?
18                THE COURT:  Well, I would say yes.  I don't
19   see -- that's the dollar amount I've set.  I think that's
20   sufficient.
21                MR. FRICKER:  Okay.  So then the order
22   should reflect that as well?
23                THE COURT:  All right.  That's reasonable.
24                MR. FRICKER:  And then a final question I
25   have is there's been a lot of briefing on the question of

17

1   whether the Court would decide that Webb should recover
2   its reasonable actual attorney's fees in this case.  And
3   if I understood the Court's decision, the Court initially
4   held that the decision to grant reasonable actual
5   attorney's fees under Statute 135.06 is discretionary with
6   the court.
7                Has the Court decided to exercise its
8   discretion in this case to grant Webb its attorney's fees
9   but will leave the determination of the amount to a later
10  date or is the Court kind of deferring the entire question
11  of attorney's fees to a later date?
12               THE COURT:  I'm satisfied, based upon my
13  reading of the statute and the limited case law in the
14  area, that the Court will grant fees in this case.  I'll
15  leave the amount of the fees to be decided after the
16  appeal.  And that should be included in the order.  I
17  think that's what you were leading up to.
18               MR. WEBER:  Yes, that was my understanding
19  of the Court's ruling and that would be what I would
20  prepare.
21               THE COURT: All right.  Very good.  We
22  should be set then to go ahead.  Are we ready?
23               MR. WEBER:  We are, Your Honor.  Thank you.
24               MR. FRICKER:  Thank you, Your Honor.  We
25  are.

```
1                        THE COURT:  Well, thank you too.  Good luck
2      to each of you.  Have a good day.  Good spring.  Thank
3      you.
4                        MR. WEBER:  You as well, Your Honor.  Thank
5      you.
6                        (Whereupon, proceedings were concluded.)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
STATE OF WISCONSIN    )
                      ) SS.
COUNTY OF WAUKESHA    )
```

        I, ROSE MARIE RODERICK, certify that I am the official court reporter assigned to report the proceedings herein for the Circuit Court; that the foregoing pages, numbered 1 through 20 inclusive, have been carefully compared by me with my stenographic notes; that the same is a true and correct transcript of all such proceedings taken on the 24th day of February, 2022.

        Dated this 5th day of May, 2023.

ELECTRONICALLY SIGNED BY:

*Rose Marie Roderick*

_____

ROSE MARIE RODERICK
Official Court Reporter

20