Page 1

1          UNITED STATES BANKRUPTCY COURT
            SOUTHERN DISTRICT OF FLORIDA
2

3

4   IN RE:                    CASE NO. 22-17842-PDR

5   VITAL PHARMACEUTICALS, INC.,

6          Debtors.
    _____/
7

8          ECF #1135, 1175, 1185, 1188

9              May 4, 2023

10             The above-entitled cause came on for hearing

11  before the Honorable Peter D. Russin, one of the Judges in

12  the UNITED STATES BANKRUPTCY COURT, in and for the

13  SOUTHERN DISTRICT OF FLORIDA, at 299 E. Broward Blvd.,

14  Fort Lauderdale, Broward County, Florida, on May 4, 2023,

15  commencing at or about 2:00 p.m., and the following

16  proceedings were had.

17

18

19

20

21

22

23    Transcribed from the backup digital Zoom recording by:
              Cheryl L. Jenkins, RPR, RMR
24

25

```
 1
                    APPEARANCES VIA ZOOM:
 2
 3                   BERGER SINGERMAN, by
                     JORDI GUSO, Esquire
 4                  MICHAEL NILES, Esquire
                             and
 5                  LATHAM & WATKINS, by
                   JON WEICHSELBAUM, Esquire
 6                 On behalf of the Debtors
 7
                      SEQUOR LAW, by
 8                  LEYZA BLANCO, Esquire
                             and
 9                LOWENSTEIN SANDLER, by
                   RACHEL MAIMIN, Esquire
10                 LINDSAY SKLAR, Esquire
                   On behalf of the Official
11              Committee of Unsecured Creditors
12
                      BAST AMRON, by
13                 DAIN DE SOUZA, Esquire
                             and
14                  CHIPMAN BROWN, by
                   ROBERT WEBER, Esquire
15                 On behalf of Circle K
16
                    SHRAIBERG & PAGE, by
17                BRADLEY SHRAIBERG, Esquire
                On behalf of Jack and Megan Owoc
18
19
              J. STEVEN WILKES, Trial Attorney
20                Office of the U.S. Trustee
                   Department of Justice
21
22                    ALSO PRESENT
23              Mark Margulies, Grant Thornton
24         ECRO - Electronic Court Reporting Operator
25                    - - - - - - -
```

1          THE COURT:  All right.  Calling Vital

2   Pharmaceuticals, 22-17842.  Appearances, please.

3   Mr. Wilkes.

4          MR. WILKES:  Good afternoon, your Honor.

5   J. Steven Wilkes for the United States Trustee, Region 21.

6          THE COURT:  Thank you.

7          Mr. Niles.

8          MR. NILES:  Good afternoon, your Honor.

9   Michael Niles on behalf of the debtor.  With me today is

10  also Mr. Jordi Guso, from Berger Singerman, and

11  Jon Weichselbaum, from Latham & Watkins, along with Mark

12  Margulies, your Honor, from Grant Thornton.

13         THE COURT:  Thank you.

14         Ms. Sklar.

15         MS. SKLAR:  Good afternoon, your Honor.

16  Lindsay Sklar, from Lowenstein Sandler, for the committee.

17  With me today is my colleague, Rachel Maimin.

18         THE COURT:  Thank you.

19         Ms. Blanco.

20         MS. BLANCO:  Good afternoon, your Honor.

21  Leyza Blanco, of Sequor Law, local counsel for the

22  unsecured creditors' committee.

23         THE COURT:  Thank you.

24         And for the court reporter Weichselbaum is

25  W-e-i-c-h-s-e-l-b-a-u-m.  You're the only tough one.

1          Ms. Maimin.

2          MR. DE SOUZA:  Good afternoon, your Honor.

3  Also, Dain de Souza, of Bast Amron, for Circle K.  With

4  me, your Honor, is Robert Weber, of the Chipman Brown

5  firm.

6          THE COURT:  Thank you.

7          Ms. Maimin.

8          MS. MAIMIN:  Good afternoon, your Honor.

9          As the Court is aware, we filed yet another

10  emergency motion.

11          THE COURT:  Actually, hold on.  I think I

12  missed Mr. Shraiberg.  Mr. Shraiberg.

13          MR. SHRAIBERG:  Thank you, your Honor.

14  Brad Shraiberg, on behalf of creditors Jack and Meg Owoc.

15          THE COURT:  Okay.  Sorry, Ms. Maimin, you

16  were saying you filed another motion?  When was it filed?

17          MS. MAIMIN:  Today.

18          Judge, we have been unable to secure dates

19  for the depositions of Mr. and Mrs. Owoc.  I don't doubt

20  -- your Honor, I seriously do not doubt that counsel is

21  doing his best to schedule these, but they're not getting

22  scheduled.

23          We offered to have them later on in the

24  month, the 15th and the 16th, which we viewed to be the

25  latest possible dates to comply with your Honor's

Page 5

```
 1    directive that they happen by mid-month.  We still don't
 2    have any agreement on that, nor do we have any
 3    confirmation that we have all the documents that --
 4                    THE COURT:  All right.  Well, Ms. Maimin,
 5    hang on there.  Let me deal with --
 6                    MS. MAIMIN:  Yes.
 7                    THE COURT:  -- everyone else first.
 8                    MS. MAIMIN:  Okay.
 9                    THE COURT:  And then if, you know, we can
10    try to resolve this after what's been scheduled for today,
11    we'll do that.  So just hang on until we can get there.
12                    Yes, all right, Mr. Niles, Mr. Guso, who is
13    handling the hearing today?
14                    MR. GUSO:  Your Honor, I believe there are
15    three matters on the calendar this afternoon.  I will be
16    handling the debtors' motion to extend the exclusivity
17    period.  Mr. Niles, who handled the application to modify
18    the terms of the Grant Thornton retention application the
19    last time we were before you will handle that matter, and
20    Mr. Weichselbaum will handle the debtors' motion to extend
21    the deadline to assume or reject leases pursuant to
22    365(d)(4), if that's acceptable to your Honor.
23                    THE COURT:  Yes, of course.  All right.
24                    MR. GUSO:  Where would you like to begin?
25                    THE COURT:  Wherever you would like to
```

1    begin.

2                    MR. GUSO:  Why don't we, with the Court's

3    permission, why don't we take up, your Honor, the debtors'

4    motion for the entry of an order extending the exclusive

5    periods in which they could file a Chapter 11 plan and

6    solicit acceptances to that plan?  It's Docket Entry 1175.

7                    Your Honor, pursuant --

8                    THE COURT:  And I didn't see any objection

9    this time around, is that right?

10                    MR. GUSO:  There were no written objections

11    filed or served to the motion, your Honor.

12                    In a conversation with Mr. Shraiberg this

13    morning, I understand that Mr. Owoc will advance an oral

14    (inaudible) exclusivity period only through June 30th, and

15    I'm prepared to respond to that, your Honor, at the

16    Court's pleasure.

17                    THE COURT:  All right.  So, why don't you

18    make your argument, we'll hear from Mr. Shraiberg, and

19    then anyone else who wishes to be heard.  Go ahead.

20                    MR. GUSO:  Thank you, your Honor.

21                    Pursuant to the motion, your Honor, the

22    debtors seek an extension of the period during which only

23    they may file a plan by 88 days, from May 8 (inaudible)

24    2023, and an extension of the period during which only

25    they may solicit acceptances to a plan, from July 10th

1   through October 6th, 2023, also by 88 days, your Honor,

2   and of course it's without prejudice to the debtors'

3   rights to request an additional extension, or any parties'

4   rights to object to any further extension of those

5   periods, your Honor.

6              As the Court is aware, on February 23rd,

7   2023, the Court entered an order approving bidding

8   procedures, pursuant to which the debtors are soliciting

9   proposals for the debtors' assets in the form of a 363

10  sale, or a plan of reorganization.

11             The debtors, in coordination with their

12  lenders and the committee, are in the midst of running

13  that competitive process, your Honor, with the goal of

14  consummating a going-concern transaction for the benefit

15  of all stakeholders.

16             The debtors have been actively involved in

17  negotiations with interested parties, with the aim of

18  securing a stalking horse bid, to set the floor for the

19  committee bid process, as well, your Honor, as attempting

20  to address inquiries from those parties with respect to

21  the impact of the ongoing litigation between the debtors

22  -- certain of the debtors, and Monster Energy Company, and

23  Orange Bang.  Presently, your Honor, the deadline -- the

24  timeline contemplated by that process is set forth in the

25  notice filed by the debtors at Docket Entry 1283.

Page 8

1                    The debtors have -- -

2                    THE COURT:  When was that, when was that

3    filed?

4                    MR. GUSO:  Your Honor, Docket Entry 1283 was

5    filed on April 28th, following --

6                    THE COURT:  And is that still -- that's the

7    timeline that's still in play?

8                    MR. GUSO:  Yes, as of today it is,

9    your Honor.  We are targeting a bid deadline of May 22nd,

10   2023, an auction on May 25, and a sale hearing on

11   June 7th, 2023.  I believe, your Honor indicated you had

12   available at 1:30 the last time we were discussing this

13   timeline, which I believe, your Honor, was at the

14   April 20th hearing, when we were before you.

15                    Your Honor, the cases tell us that in --

16                    THE COURT:  And tell me, what's the

17   extension of exclusivity through, what date?

18                    MR. GUSO:  The proposed extension of

19   exclusivity, your Honor, would be through August 4th,

20   2023.

21                    THE COURT:  All right.  So let's talk about

22   that for a second, so I can you understand that date.

23                    So, that means that the hearing on

24   June 21st, was it?

25                    MR. GUSO:  The sale hearing, your Honor?

Page 9

```
1                    THE COURT:  Yes.
2                    MR. GUSO:  June 7th.
3                    THE COURT:  June 7th.
4                    MR. GUSO:  Right.
5                    THE COURT:  All right.  So the idea would be
6    that the hearing on June 7th, which would, you know, in
7    theory approve a sale, would be the -- you know, obviously
8    the backbone of the plan, right?
9                    MR. GUSO:  Correct, your Honor, unless the
10   debtors receive a proposal for a plan term sheet, which
11   would then, assuming that's the winning bid, would then
12   need to be memorialized in the form of a plan, and that's
13   why the debtors are requesting an extension of 88 days,
14   your Honor, to cushion against two things, the timeline to
15   get to a closing on a sale, between June 7th and the date
16   the sale order becomes final, and the parties can
17   consummate the sale, or, your Honor, in the event that the
18   winning bid is one which contemplates a plan-based
19   transaction for the plan to be drafted, circulated,
20   solicited, and the like.
21                    THE COURT:  I see.  Okay.  All right.
22   Understood.
23                    Keep going, I didn't mean to interrupt.  I
24   just wanted to understand the relative dates.
25                    MR. GUSO:  Yes, sir.  No issue at all,
```

1    your Honor.

2               Your Honor, as we set forth in the motion,

3    the courts evaluate a number of factors in considering

4    whether cause exists to warrant an extension of the

5    debtor's exclusivity period, your Honor, and the cases

6    also tell us, your Honor, that not all of the factors may

7    be applicable in every case, and the court needs to

8    evaluate the request on a case-by-case basis.

9               And as we highlighted in the motion,

10   your Honor, the debtors believe that the following factors

11   are particularly relevant here, first, your Honor, the

12   size and complexity of the cases, there can be no

13   legitimate dispute that these cases are, in fact, large

14   and complex.  The debtors have over $340 million in funded

15   debt.  There are over 700 claims asserted against the

16   debtors, in the aggregate, your Honor, over a billion

17   dollars in general unsecured claims asserted against the

18   debtors.

19              Secondly, your Honor, there is the pending

20   transaction process which is ongoing, and which has the

21   benefit of material involvement from the committee and the

22   lenders, the economic, true economic stakeholders in the

23   case, given, your Honor, that the procedures contemplate,

24   or afford parties the opportunity to submit a plan as a

25   vehicle for exiting the cases, your Honor, we believe that

1    factor militates in favor of an extension.

2                    Your Honor, the debtors have made meaningful

3    progress in the case, including by securing DIP financing

4    on a final basis and, again, continuing negotiations with

5    the lenders and the committee.  The debtors are paying

6    their postpetition obligations as they come due and,

7    your Honor, the request that is before you is not intended

8    in any respect to put any pressure on creditors, or any

9    other stakeholders.  In fact, your Honor, as we observed

10   earlier in my remarks, there has been no written objection

11   to the relief that is before you.

12                    The only objection that we've received,

13   your Honor, as I said, is Mr. Owoc's objection, who

14   suggests that the deadline be extended only through

15   June 30th.  In the event that, if there is no sale, he

16   would like the opportunity, as I understand it,

17   your Honor, to propose a plan.

18                    Mr. Owoc is not impeded, in any respect,

19   under the procedures from submitting a proposal for a plan

20   and, in fact, we encourage him to do so if that's what he

21   wishes to do, and assuming he has the liquidity to propose

22   a plan.  He can participate in the process.  The process

23   is intended to be organized, and orchestrated, your Honor,

24   to maximize value.  Whatever proposals the debtors receive

25   will be vetted with the committee and the lenders as

1   consultation parties, with the aim of maximizing value for

2   the benefit of all stakeholders.

3                So, your Honor, in these circumstances, we'd

4   ask the Court to grant the motion.  I'd be happy to answer

5   any questions the Court may have.

6                THE COURT:  Thank you, Mr. Guso.  I don't

7   have any at this time.

8                Mr. Shraiberg.

9                MR. SHRAIBERG:  Thank you, your Honor.

10               Mr. Guso pretty much summed up what our

11   argument is.  The current bid deadline is the 22nd,

12   May 22nd.  The auction is currently set for May 25th, with

13   the sale hearing on June 7th.

14               In the event that there is no purchaser,

15   Mr. Owoc would like the ability to propose a going concern

16   plan.  We have already reached out to at least one of the

17   largest creditors in this estate to see if they would

18   support that, and we think that August 8th -- or, excuse

19   me, August 4th is too long.

20               If there is a buyer that is approved on

21   June 7th, we're not saying that this would be a one final

22   extension, then there would be cause to extend for

23   whatever closing time is necessary, but we would like the

24   ability to -- this company is, it's gross sales are

25   diminishing, and this ice cube is melting.  So, we would

Page 13

1    like the ability, that if there is no buyer on the 7th, to

2    be able to propose a plan and go forward with some way to

3    make a distribution to creditors.

4                    THE COURT:  All right, I understand.  Let me

5    hear from the committee.

6                    MS. SKLAR:  Good afternoon, your Honor.  The

7    committee does not oppose the relief requested by the

8    debtors.  The committee supports the debtors' extension of

9    the exclusivity period as requested through the motion.

10                   THE COURT:  All right.  Thank you.

11                   All right.  So, Mr. Shraiberg, the way I

12   sort of see this at this point, is that there is a

13   committee, and there is the debtor that is corporately

14   governed by, you know, what I would describe as

15   fiduciaries, obviously.  I mean, they are in a fiduciary

16   capacity, and Mr. DiDonato is the acting CEO, as I

17   understand it, Mr. Guso, is that --

18                   MR. GUSO:  Yes, sir, he is the chief

19   transformation officer and acting CEO of the debtors,

20   your Honor.

21                   THE COURT:  And it's true that he

22   essentially has a fiduciary duty to the debtor, as well as

23   all creditors --

24                   MR. GUSO:  Yes, sir.

25                   THE COURT:  -- in the case, is that a fair

1    statement?

2                     MR. GUSO:  He is an officer, as are the

3    independent directors that are on the board, your Honor.

4                     THE COURT:  All right, and with the

5    committee being in support of the debtor, I'm struggling

6    to understand why I should not grant this relief, when it

7    seems, Mr. Shraiberg, that your client certainly could

8    seek relief from the order, it seems to me, to terminate

9    exclusivity, and while that would place the burden on your

10   client to come forward with, you know, a basis for

11   terminating exclusivity, which would, by definition,

12   likely have to include some level of understanding of what

13   the plan would be that would be proposed, and whether

14   there was financing, and some likelihood of success, it

15   seems to me, although I don't, at this moment, know the

16   precise burden that would be on your client to terminate

17   exclusivity, but it seems to me that they'd have to show

18   some reasonable progress towards a plan that could

19   actually be confirmed.  It just seems to me that that's

20   the best course of action.

21                     What is your response to that, why shouldn't

22   I do that?

23                     MR. SHRAIBERG:  What you pointed out, it

24   would just create a burden shift, when I don't think there

25   is any, there is any harm or prejudice to use the earlier

1    date now, with the debtor having the ability to come back

2    and show cause again.  I would think it would be a near

3    impossible burden for me if they had a contract with a

4    buyer, and they needed, let's say, 60 days from the 7th to

5    close, that they wouldn't -- that the debtor wouldn't be

6    able to show cause to extend that exclusivity date.

7                    But what we're concerned about is if there

8    is no buyer, and there hasn't been a buyer at the last

9    deadline, it's our understanding from the information that

10   we've received, that they're having difficulty finding a

11   buyer this time, and we would like, if we're going to try

12   to keep the company as a going concern, we want to know

13   that the company is still there.

14                   THE COURT:  Well, wouldn't it also be true

15   that, should that be the case, and you were prepared to

16   seek to terminate exclusivity, your chances of success

17   would increase fairly dramatically, if you had a plan to

18   show that that had some reasonable likelihood of

19   confirmation?

20                   MR. SHRAIBERG:  Correct, but then it would

21   become our burden, versus today it's the debtors' burden.

22                   THE COURT:  Well, you know, the way I see

23   the Code is it's structured in that way.  In other words,

24   it should be a non-debtor's burden to terminate

25   exclusivity, if all other indications are that exclusivity

Page 16

```
 1   should be in place.  Here, it does seem as though Mr. Guso
 2   has laid out an appropriate case under the various
 3   factors, you know, dictated by Friedman and other cases,
 4   for extending exclusivity, and it seems to me that the
 5   burden should shift under those kinds of circumstances to
 6   a non-debtor when it comes to terminating exclusivity.
 7                   That's the way, you know, the Bankruptcy
 8   Code in the United States is different than most other
 9   countries.  You know, we keep the debtor-in-possession
10   here, and the burden does shift, at least for some
11   reasonable period of time, extensions included where
12   appropriate, and, you know, the idea there is one that's
13   been tried and true for decades, if not over a century,
14   and it seems to me that that's the case here.
15                   Mr. Guso has laid out an appropriate case,
16   and you don't really object to the case that he's laid
17   out, and depending on the circumstances, and changes in
18   circumstances in this case, that may give you a window of
19   opportunity, fine, that window of opportunity exists, and
20   you know where to find me and, you know, you and
21   Ms. Maimin have hearings in front of me by the hour, so
22   you know where to find me.
23                   So, I think that's where I'm going with
24   this, I'm going to grant the extension, but again, I hear
25   you.  If there is no buyer, if the sale is unsuccessful,
```

1    we'll know that, and certainly that leaves an opening for

2    anyone, really who has a viable plan to come forward and

3    seek to terminate exclusivity on those grounds, and we'll

4    adjudicate that at that time.

5              All right.  So, Mr. Guso, get me an order

6    extending exclusivity on the timeline you had requested,

7    all right?

8              MR. GUSO:  Yes, sir, I shall, your Honor.

9    Thank you.

10             THE COURT:  Thank you.

11             All right.  I think 1135, on the allowance

12   of the late filed claims by Circle K, I thought I saw,

13   somebody -- my clerk told me there is an order that's been

14   submitted already.  Who is handling that?

15             MR. DE SOUZA:  Good afternoon, your Honor.

16   Dain de Souza, of Bast Amron, for the Circle K movements

17   -- movants, sorry.  With me, as I indicated, is

18   Robert Weber.

19             That's correct, your Honor, as of now we're

20   pleased to announce that there is no objections that we're

21   aware of to the motion.  The debtor and -- the debtors and

22   Circle K have agreed to a form of order, which we uploaded

23   yesterday.

24             The committee, I think, reviewed that order,

25   and so did Truist, and have indicated they have no

1    objections.

2              THE COURT:  All right, and you referenced --

3    I see (inaudible) referenced the hearing in the order.

4              MR. DE SOUZA:  In the order there is one

5    reference to the hearing, and it's to cancel the hearing,

6    at the top, the title.

7              THE COURT:  Okay.  So, unfortunately, the

8    way things work with the clerk's office is you have to

9    resubmit the order, reference the hearing today, since I

10   didn't sign it, because this was set, and it is possible

11   that other creditors, or other parties might have

12   objected.

13             So, just resubmit the order, and let me --

14   actually, let me make sure nobody objects.  Does anyone

15   object?

16             (No verbal response.)

17             THE COURT:  I don't want to make that

18   assumption.  Okay.  No one objects.  So, just submit,

19   resubmit the order, but referencing today's hearing, okay?

20             MR. DE SOUZA:  Thank you, your Honor, will

21   do.

22             And I think that does it for us, for me and

23   Robert Weber, if we may be excused?

24             THE COURT:  Of course you may.  Thank you.

25             MR. DE SOUZA:  Thank you.

```
 1                    THE COURT:  Are you sure you don't want to
 2      hang around and listen to Rachel Maimin and
 3      Bradley Shraiberg argue on depo dates?
 4                    I don't mean to make light of it, it's just
 5      frustrating, I'm sure for all involved.  So, anyway --
 6                    MR. SHRAIBERG:  And I'm pleased to say it
 7      won't even be an argument, but we'll --
 8                    MS. MAIMIN:  Oh, right.
 9                    MR. SHRAIBERG:  -- see when we get to it.
10                    THE COURT:  Right.
11                    So, next is what, Mr. Guso, the Grant
12      Thornton matter?
13                    MR. GUSO:  Yes, sir, I believe it is,
14      your Honor.  Mr. Niles will handle that.
15                    THE COURT:  Okay.
16                    MR. NILES:  Thank you, your Honor.
17      Michael Niles on behalf of the debtor.
18                    I think, if we could -- if I could propose a
19      quick recess of the hearing, I think that there might be
20      an agreement between the debtor and Mr. Owoc, and I would
21      just like to confirm that with Mr. Shraiberg.
22                    THE COURT:  On the Grant Thornton issue?
23                    MR. NILES:  I think so, your Honor.
24                    THE COURT:  Oh, okay, all right.
25                    MR. SHRAIBERG:  That's correct, your Honor.
```

Page 20

1              THE COURT:  All right.

2              MR. SHRAIBERG:  I spoke with the client

3    late, so I sprang that on them, I think, as the parties

4    were entering appearance.  So, yes, that --

5              THE COURT:  Okay.  Terrific, and that's all

6    that's left for today, right?

7              MR. NILES:  No, your Honor.

8              THE COURT:  Oh, except for the argument on

9    extending exclusivity for those -- extending assumption or

10   rejection deadline, right?

11             MR. NILES:  That's correct, your Honor.

12             THE COURT:  All right.  Is it -- should we

13   handle that now, or do you want to take a recess now?

14             MR. NILES:  I think it might make sense to

15   handle the hearing on the extension of the lease

16   rejection, and I can potentially reach out to

17   Mr. Shraiberg during that, and email, or I can call him.

18             THE COURT:  All right.  Let's do that.

19             Okay.  So who's handling that?

20             MR. WEICHSELBAUM:  Your Honor, for the

21   record, it's Jonathan Weichselbaum, of Latham & Watkins,

22   on behalf of the debtors.  Can you hear me all right?

23             THE COURT:  Yes, sort of.  It's a little

24   faint, but I think I can hear you mostly.

25             You know, those headphones, they either work

Page 21

1    great, or not so great.  Yours is eh, but I think --

2              MR. WEICHSELBAUM:  I think the headset is

3    better than without the headset, but you let me know if I

4    need to speak a little louder.

5              THE COURT:  We'll take you however we can

6    get you.  Go for it.

7              MR. WEICHSELBAUM:  Okay.  So, it's Jonathan

8    Weichselbaum, again, of Latham & Watkins, on behalf of the

9    debtors.  It's W-e-i-c-h-s-e-l-b-a-u-m.

10             So, you Honor, I'll be presenting the

11   debtors' motion for entry of an order ruling that

12   Section 365 of the Bankruptcy Code, as amended by the

13   CARES Act, applies to the deadline by which the debtors

14   may assume or reject unexpired leases, which can be found

15   at Docket 1185, and was filed on April 17th.

16             Your Honor, before getting into the motion,

17   I'd just like to note up front that we did not receive any

18   objections to the relief that we were seeking by this

19   motion.

20             As your Honor may recall, on January 23rd,

21   the debtors filed their motion to extend their deadline to

22   assume or reject unexpired leases under Section 365 of the

23   Bankruptcy Code, which is at Docket Number 671.

24             Your Honor, through this motion, the debtors

25   initially sought an extension of their assumption/reject

Page 22

1    deadline through and including August 7th, on the basis

2    that the CARES Act amendments to Section 365(d)(4) apply

3    to these cases, notwithstanding that these amendments have

4    since expired.

5                At the hearing on this motion, your Honor

6    questioned whether the debtors are actually entitled to

7    the additional time afforded under the CARES Act due to

8    the sunsetting of these amendments, and accordingly the

9    debtors modified their initial request, and we only sought

10   an extension of our assumption/rejection deadline through

11   and including May 8th, while preserving our rights to come

12   back to your Honor and seek the additional time afforded

13   under the CARES Act, and your Honor entered an order

14   reflecting this on February 3rd, Docket Number 745.

15               So, with that backdrop, your Honor, we filed

16   the motion that is before you today, and as an initial

17   matter, I just want to -- maybe you have seen, your Honor,

18   that on May 2nd we filed a motion for approval of

19   stipulations that the debtors have entered into with a

20   number of --

21               THE COURT:  When I signed that order there

22   were 14 of them, as I recall, right?

23               MR. WEICHSELBAUM:  There are 14.  I may have

24   missed that you signed the order.  We appreciate you

25   signing the order.

Page 23

```
 1              THE COURT:  Yeah, I just did, so you
 2    probably wouldn't have seen it yet but, yes, it's been
 3    signed.
 4              MR. WEICHSELBAUM:  Well, we appreciate it,
 5    your Honor, and thank you for that.
 6              So, your Honor, while we have been able to
 7    reach agreement --
 8              THE COURT:  How many are left?  What's left?
 9              MR. WEICHSELBAUM:  That's what I was about
10    to get to.  So we have a few left.
11              THE COURT:  Okay.
12              MR. WEICHSELBAUM:  So I think, by my count,
13    we have two leases that we were not able to reach
14    agreements on, and we have a number of storage unit
15    facilities that we were not able to reach agreements on.
16              So, because of the fact that we have a few
17    remaining leases, we are here before your Honor seeking
18    the relief requested in that motion.
19              So to start, we are mindful of your Honor's
20    remarks at the hearing on first extension motion, that
21    there is a general rule that the language of an affected
22    statutory provision automatically reverts back to its
23    language as it was written before the amendment went into
24    effect, upon the expiration of the subject amendments.
25              However, your Honor, as we note in our
```

Page 24

1    motion, there are exceptions to this general rule, and we

2    do believe the debtors' situation is one in which an

3    exception is appropriate.

4              As relevant here, your Honor, there are

5    bankruptcy courts that involve cases that are similar to

6    our position, which is that the debtors have filed for

7    bankruptcy before the amendment expired, but while the

8    120-day deadline expired after the sunset date, and those

9    courts have granted the same relief that we're seeking

10   here today.

11             For example, your Honor, in In Re:

12   PhaseBio, Case Number 22-10995, the Delaware Bankruptcy

13   Court granted the debtors an extension of their

14   assumption/rejection deadline for 90 days, on top of the

15   210-day deadline afforded under the CARES Act.  Another

16   Delaware bankruptcy case, In Re:  Winc, Inc., Case

17   Number 22-11238, the bankruptcy court, again, granted the

18   debtors an extension of their assumption/rejection

19   deadline for 90 days, on top of the 210-day deadline under

20   the CARES Act, and lastly in In Re:  BlockFi, Inc., Case

21   Number 22-19361, the New Jersey Bankruptcy Court granted

22   the debtors an extension of their assumption/rejection

23   deadline for 90 days, on top of the 210-day deadline

24   afforded under the CARES Act.

25             THE COURT:  And what was the reasoning in

1    those cases?  I didn't -- I'm not sure there was any.

2    Maybe I missed it.

3                    MR. WEICHSELBAUM:  No, you're correct,

4    your Honor, there was no reason given.  I don't believe

5    there was actually ever a hearing on it, but in each of

6    those cases, the debtors filed for bankruptcy before the

7    sunset date, they filed their motions for an extension of

8    their assumption/rejection deadlines after the sunset date

9    came and went, and the debtors asserted that they were

10   entitled to the additional time because they filed before

11   the expiration of CARES Act amendments.

12                   So, your Honor, while these cases are not

13   binding on this Court, we do believe this lends support

14   for our position, especially given the similarities that

15   we just discussed.

16                   And, your Honor, we are aware that there are

17   some cases where courts did not grant the debtors an

18   extension utilizing the additional time under the CARES

19   Act, but we would submit those cases are distinguishable,

20   and should not preclude the relief that we are seeking

21   here today.

22                   Most notably, your Honor, in the cases that

23   we're aware of, the debtors did not actually seek the

24   extensions that we're seeking.  In other words, those

25   cases did not hold that the debtor was not entitled to the

Page 26

1    additional time under the CARES Act and, therefore, we

2    submit that there is no precedential value in the context

3    of this motion.

4                        And, your Honor, lastly, while I don't think

5    that cause -- whether cause exists is the main issue here,

6    I would just like to state the obvious, that this is

7    important relief for the debtors.  We are still working

8    towards a sale, as has been discussed at this hearing, and

9    the relief we are seeking will aid in the success of the

10   debtors' sale process by giving the debtors and a buyer

11   sufficient time to make assumption/rejection decisions

12   with respect to the unexpired leases for which we have not

13   come to an agreement on.

14                        And, your Honor, lastly, I'd like to

15   reiterate that we have not received any objections to the

16   relief requested by the motion.  We did preview this

17   motion before filing with the U.S. Trustee, with the

18   committee, and our lenders.

19                        And with that, your Honor, we request entry

20   of an order ruling that the CARES Act amendments to

21   Section 365(d)(4) apply to these cases, and as such, the

22   debtors' assumption/rejection deadline should be

23   August 7th, 2023, and, of course, your Honor, I'm happy to

24   answer any questions that you may have.

25                        THE COURT:  All right.  Thank you for that.

1              Mr. Weichselbaum -- yes, Weichselbaum.

2              MR. WEICHSELBAUM:  Perfect.

3              THE COURT:  -- tell me, what happens if you

4    don't get the relief you're seeking today with respect to

5    the leases that have not been extended by agreement with

6    the lessors, what happens?  It's not automatic rejection

7    until the deadline comes and goes, right?  So, what are

8    the debtors' options?

9              MR. WEICHSELBAUM:  So, you Honor, we have --

10   we can either file a motion seeking to assume them, we can

11   file a motion seeking to reject them, or we can let the

12   May deadline come and go, and then they will be deemed

13   rejected on May 8th.

14             THE COURT:  And if you filed a motion to

15   assume these two leases -- there are two, right, two

16   remaining you said?

17             MR. WEICHSELBAUM:  That is my understanding.

18             THE COURT:  And if you filed a motion to

19   assume prior to the May 8th deadline, or on or before the

20   May 8th deadline, what is the downside to the debtor in

21   doing so?  Are you concerned you'll be stuck with these

22   two leases, a buyer won't want them?  What's the business

23   -- or benefit or detriment to the estate?

24             MR. WEICHSELBAUM:  So, your Honor, you're

25   correct that if we file a motion seeking to assume them,

Page 28

```
 1    and then a buyer later does not want them, I believe the
 2    lessors would have an admin claim for the entirety of the
 3    lease.
 4                    THE COURT:  I see.
 5                    MR. WEICHSELBAUM:  So we would be making a
 6    decision without the benefit of what a buyer will
 7    ultimately want, and we would like to avoid that,
 8    obviously.
 9                    THE COURT:  And the issue with these
10    particular lessors is that you've actually communicated,
11    tried to reach terms, and have been unable to so far?
12                    MR. WEICHSELBAUM:  With one of them, that is
13    correct.  The other one is actually a lease where Mr. Owoc
14    is the lessor.
15                    THE COURT:  I see.  Okay.  So he owns the
16    property.  All right.
17                    MR. WEICHSELBAUM:  One of his (inaudible) --
18                    THE COURT:  Got it.
19                    MR. WEICHSELBAUM:  -- correct.
20                    THE COURT:  Okay.  All right, and if
21    ultimately you're unable to reach an agreement, and you
22    don't want to take the risk of assumption, what is the
23    downside to the debtor rejecting?
24                    MR. WEICHSELBAUM:  I don't -- there is no
25    downside, necessarily.  I don't know if we're able to get
```

Page 29

1    out of those properties on the timeframe that we would

2    have to, if we don't get the relief that we are

3    requesting, your Honor.

4                    THE COURT:  Meaning, like, vacating them

5    with your assets?

6                    MR. WEICHSELBAUM:  Correct.

7                    THE COURT:  And what's the import of that?

8                    MR. WEICHSELBAUM:  So, don't quote me on the

9    exact value, but --

10                   THE COURT:  Couldn't the lease be rejected,

11   but you still, as long as you paid compensation, still

12   have the ability to vacate in a relatively reasonable

13   period of time, or --

14                   MR. WEICHSELBAUM:  I believe you're right,

15   your Honor.  I just know from my conversations with one of

16   the lessors, they want us out ASAP.  They've actually

17   spoken to employees, telling them that they have to be out

18   by June 1st.  I believe Mr. Owoc also made a comment about

19   wanting us out of the other property.

20                   So, I don't know if we would be able to have

21   the time that we would need to get out, which is

22   especially important for the one with Mr. Owoc.  I

23   understand there is millions of dollars worth of equipment

24   at that property.

25                   THE COURT:  Okay, and you would be able to

Page 30

```
 1   come to this Court, though, and seek some kind of relief,
 2   or is that not available?
 3                MR. WEICHSELBAUM:  I believe that is
 4   available.  I believe we're waiting to see what your Honor
 5   rules on this one, to then decide how we're going to
 6   handle it, as soon as this hearing concludes.
 7                THE COURT:  Okay.  All right.  Well, I've
 8   got two problems.  One is that the statute says that any
 9   additional, any additional extension beyond the -- if it's
10   deemed that it was 120 days, you've already gotten your
11   90-day extension, the only way to get an additional
12   extension is, as you know -- let's see.
13                MR. WEICHSELBAUM:  With the landlord's
14   consent.
15                THE COURT:  Would be only upon written -- I
16   mean, I'm trying to get to the language of the statute, it
17   says only upon prior written consent of the lessor.
18                MR. WEICHSELBAUM:  Correct.
19                THE COURT:  Here, you don't have that prior
20   written consent of these two lessors.
21                The cases that you reference, that lend
22   support to the notion that the Court can grant this
23   relief, don't address that issue, except to extend the
24   210 days, to find that the 210 days applies as opposed to
25   the 120, is that correct?
```

Page 31

1                    MR. WEICHSELBAUM:  Correct.

2                    THE COURT:  Okay.  All right, but in the

3    circumstance where the 120-days applies, you agree that

4    the Court -- I don't know if it's jurisdictional, but the

5    statute is pretty clear that I cannot extend without prior

6    written consent of the lessor --

7                    MR. WEICHSELBAUM:  Correct.

8                    THE COURT:  -- is that a fair statement?

9                    MR. WEICHSELBAUM:  That is correct,

10   your Honor.

11                   THE COURT:  Okay.  So, then the other

12   problem I have -- so that creates this issue, and the

13   other problem I have is, that in looking at the Act

14   itself, there is the provision -- let's see, (f)(2)(B) of

15   the Act provides that notwithstanding the sunset

16   provision, the amendments made by Paragraph 1, i.e., the

17   extension of the lease assumption period from 120 days to

18   210 days, shall apply in any case commenced under

19   Subchapter V of Chapter 11 of Title 11 United States Code

20   before the date that is two years after the date of the

21   enactment of this Act.

22                   That's the only reference in the sunset

23   provision, or reference to the sunset provision that talks

24   about what happens for a case that's filed prior to

25   sunset, but where the sunset occurs prior to the 210 days,

1    it's the only reference to it.

2              And that suggests to me that although some

3    may not have the highest degree of confidence in Congress

4    thinking about every permutation out there, statutory

5    construction would suggest that, you know, that's not an

6    ambiguity, there is no ambiguity there, and the silence

7    with respect to any other type of Chapter 11 means that

8    Congress actually thought about it and did not feel the

9    sunset provision shouldn't go into effect with respect to

10   regular Chapter 11s, that may have been filed where the

11   deadline passes, the 210 days -- where the sunset occurs

12   prior to the passing of the 210 days.

13             So, what is your -- have you looked at that,

14   have you seen that in the statute, and do you have an

15   argument with respect to statutory interpretation in

16   support of your position?

17             MR. WEICHSELBAUM:  So, your Honor, we did

18   notice that.  We did put it in our motion, because we were

19   not trying to hide the ball there.  We looked through the

20   legislative history, and the hearings on this amendment,

21   and in our view there is a lack of discussion or intent

22   that the inclusion of the Subchapter V should mean

23   anything with respect to Chapter 11.  I know that's not

24   necessarily the best answer, but there is the lack of any

25   sort of indication that Congress meant that this -- that

Page 33

1    it should not apply to debtors who file for Chapter 11

2    before the sunset date, would be, you know, our argument

3    there.

4                    THE COURT:  Yeah, I mean, in thinking about

5    this, the problem that I have with it is that it's a

6    little backwards, because a Subchapter V case,

7    theoretically, should happen quicker, not slower, that's

8    the whole idea behind Sub V, that you should be able to

9    file your plan -- you have to file your plan within

10   90 days.  Here, the exact opposite, you just grant

11   extensions to exclusivity, so there is no (inaudible).

12                    Imagine a large retail case, you know,

13   where, if anything, more time is needed, especially

14   because of COVID.  I mean, COVID affected retailers, you

15   know, more than anything.  So, it almost should have read,

16   other than a Subchapter V case, but it doesn't.

17                    So, to me it is -- it seems odd.  I'm just

18   not finding an ambiguity, and I don't -- and from a

19   statutory construction perspective, I don't know how I can

20   ignore that, and just conclude that, you know, Congress

21   mentioned Sub V, but that doesn't mean they didn't also

22   intend to include a regular Chapter 11, that's the

23   struggle that I'm having with this.  Help me with that, if

24   you can, and I'm not saying you can.  I mean, I'm not sure

25   there is an answer here.

```
1                  MR. WEICHSELBAUM:  So, I'll give it my best
2     shot, your Honor.
3                  I think COVID was a very unique situation
4     for us all, and Congress maybe was trying to do something
5     to help, you know, the smaller businesses that needed
6     relief from the Bankruptcy Code, and that may be why they
7     thought it was important to make absolutely clear that all
8     Subchapter V debtors benefitted from this, and maybe just
9     did not put enough thought into how that may impact
10    debtors in Chapter 11, and this is not --
11                  THE COURT:  (Inaudible.)
12                  MR. WEICHSELBAUM:  Yes, go ahead.
13                  THE COURT:  But what about from a statutory
14    construction perspective?  What's the rule, are there
15    rules that apply here?  I mean, I know there is an
16    absurdity rule, there is all kinds of -- I just don't, I
17    don't know of any that apply to this situation, that would
18    give me that leeway.  Do you know of any?
19                  MR. WEICHSELBAUM:  Not offhand.
20                  THE COURT:  Yeah, that's the problem.
21                  All right.  So, we could do a couple of
22    things, I can either -- we can either hear, if Mr. Niles
23    and Mr. Shraiberg have completed their discussions about
24    Grant Thornton, and then I can take a moment to just get
25    some -- you know, think about this, you know, after having
```

1   heard your argument, and I also want to hear from

2   Mr. Wilkes to see if he has anything to say, or we can

3   take that break now, and go with all of this in about five

4   minutes, or seven minutes or so.

5               But first let me he hear from Mr. Wilkes.

6   Mr. Wilkes, does the U.S. Trustee's Office have any ideas

7   about statutory construction or issues with respect to

8   this matter?

9               MR. WILKES:  Thank you, your Honor.

10  J. Steven Wilkes for the United States Trustee.

11              Regarding the statutory canon that the Court

12  is toying with, it's a semantic canon, and I'm not Latin,

13  so I'm not going to speak it in Latin, but it's the

14  omitted case canon, that nothing is to be added to the

15  statute to what the text states or reasonably implies.

16  Alternatively, that is a matter that is not covered by the

17  statute, is to be treated as not covered.

18              As you pointed out, the Sub V provisions

19  specifically discussed cases that go beyond the sunset

20  provision, yet the statute did not specifically discuss

21  cases that -- other than Sub V that would also go,

22  necessarily, beyond the sunset provision.  So, under the

23  omitted case, canon, I think that's the semantic canon

24  that the Court will be wrestling with.

25              THE COURT:  Okay, and how do I -- what's the

1    conclusion of that wrestling match?

2               You're saying that if its omitted, then the

3    Court really has no ability to read it into the statute

4    ultimately?

5               MR. WILKES:  That is correct.  If the

6    statute is silent, and that silence, by itself, does not

7    result in an absurd rendering, then the omitted case canon

8    would control, and that portion that is omitted, i.e., the

9    ability to extend a non-Sub V case's time period beyond

10   the time after the sunset is not available to the Court.

11              THE COURT:  And what's the standard for

12   finding absurdity?  Has anyone looked at that?

13              MR. WEICHSELBAUM:  I have not, your Honor,

14   but now that we're using the word "absurd", if -- I guess

15   my question is, there are a number cases where the debtors

16   filed this relief before the sunset date, when they still

17   had months of time before their deadline ran, and the

18   courts didn't blink twice, and entered the order extending

19   their deadline.

20              And I recall an early matter before

21   your Honor, where we filed the removal extension deadline,

22   and your Honor asked us if we really need that relief, and

23   I think if we came before your Honor in December saying we

24   needed this time, I think your Honor would have asked us,

25   do we really need it, and I think that it could be -- I

```
 1   don't want to use word again, but if the answer is only
 2   that if we filed it four months earlier, we'd be entitled
 3   to it, that doesn't seem like the right result to me.
 4              THE COURT:  So, you're -- oh, I see.  So
 5   you're saying there are cases where the debtor files the
 6   motion prior to the sunset occurring, which is very early,
 7   getting the 210 days, plus 90.
 8              MR. WEICHSELBAUM:  Correct.
 9              THE COURT:  The order is entered, so that's
10   the law of the case, that's the deadline, the sunset then
11   goes into effect, but doesn't change the terms of the
12   order.
13              MR. WEICHSELBAUM:  Correct.
14              THE COURT:  And, therefore, the order
15   prevails.
16              MR. WEICHSELBAUM:  Correct.
17              THE COURT:  And that is not what happened
18   here?
19              MR. WEICHSELBAUM:  Correct, we didn't file,
20   we didn't file this motion months in advance, correct.
21              THE COURT:  When did you file the motion --
22              MR. WEICHSELBAUM:  We filed --
23              THE COURT:  -- initially?
24              MR. WEICHSELBAUM:  We filed the initial one
25   in January, January 23rd.
```

1                  THE COURT:  Isn't that after the sunset?

2                  MR. WEICHSELBAUM:  No, that is.  I'm just --

3      my point is that the statute is silent as to whether

4      debtors who just filed it four months in advance benefit

5      from the sunset, simply because they filed the motion

6      before the sunset date that came and went.

7                  THE COURT:  Yes.

8                  MR. WEICHSELBAUM:  And I can give you a

9      couple examples of that, but that seems --

10                 THE COURT:  Well, those cases just entered

11     the order and found that it was appropriate and didn't

12     worry about sunset, I assume, is that right?

13                 MR. WEICHSELBAUM:  That is correct.

14                 THE COURT:  Yes, interesting.

15                 All right.  Well, the thing I want to think

16     about is the absurdity issue because, again, you know, the

17     logic of this, I just don't see it.  I mean, a Sub V needs

18     this -- needs the 210 days less than a large retail case.

19     So I don't understand the inclusion of Sub V, and the

20     exclusion of -- it feels like a mistake to me, and I just

21     don't understand.  I need to understand how to apply

22     absurdity to this, because it does feel absurd, honestly.

23     So, that's the issue to me.

24                 MR. WEICHSELBAUM:  Your Honor, I will

25     petition Congress to be clearer next time around.

Page 39

1                    THE COURT:  You will what?

2                    MR. WEICHSELBAUM:  I will petition Congress

3       to be clearer next time around.

4                    THE COURT:  Yes.  Well, good luck with that,

5       let me know how it goes.

6                    All right.  So, Mr. Niles, are you all ready

7       for the Grant Thornton matter?  Because I do want to take

8       a couple of minutes at some point just to think about the

9       assumption and rejection issue.

10                   MR. NILES:  Your Honor, Mike Niles, again,

11      for the debtor.

12                   We would actually like to take a short

13      recess so that we can jump on a call, collectively, and

14      work out some of the details of --

15                   THE COURT:  All right.  Perfect, we'll all

16      recess at the same time then, perfect.

17                   All right.  So, how much time do you think

18      you need, Mr. Niles?

19                   MR. NILES:  Judge, I think we don't -- I

20      don't think we need more than 5 to 10 minutes.

21                   THE COURT:  All right.  Okay.  Perfect.  All

22      right.  So, we'll be in recess then -- let me just, does

23      anybody else want to be heard on this, Ms. Sklar, do you

24      want to be heard for the committee on the extension issue?

25                   MS. SKLAR:  No, your Honor.

Page 40

```
1              THE COURT:  Okay, staying way away from
2    that, I get it.
3              MS. SKLAR:  Your Honor, we are letting the
4    debtors handle that one.
5              THE COURT:  All right.  Fair enough.  All
6    right.  So we'll be in recess then.  What I'll do is just
7    pop back on.  If I see you all on -- turn your cameras on
8    when you're ready, just so I can see that you're ready,
9    and then I'll pop on at that point when I'm ready, okay?
10   Thank you all.
11             MR. GUSO:  Yes, sir.  Thank you.
12             (Thereupon, a recess was had, after which
13   the following proceedings were had:)
14             THE COURT:  Okay.  We're back.
15             Let me just tell you what I'm doing on the
16   assumption and rejection deadline issue.  I am going to --
17   I'm going to reserve ruling.  I'm probably going to
18   write-up a decision in the next couple of days.  I'm
19   likely going to grant the motion, and the reason I'm
20   likely going to grant it, although I am not by any means
21   guaranteeing I'm going to do that, I need to give this a
22   bit more thought, is because I just think Congress got
23   this wrong.  I think they made a mistake, because it just
24   makes no sense to me that Congress would give a Sub V
25   debtor more time, and a large retailer less time,
```

Page 41

1    especially if, when you read the statute, the whole

2    purpose of the statute is to -- is in recognition of the

3    difficulty COVID causes retailers and other debtors to

4    make a business decision, and put themselves in a position

5    to make a decision as to whether to assume or reject,

6    that's why the statute gives the debtor more time.

7              And so the intent of the statute is the

8    language of the statute itself, it's obvious, and in the

9    absence of, you know, any significant legislative history,

10   and I didn't see any, and none has been argued, it just

11   seems to me that -- you know, that they made a mistake,

12   and maybe, you know, listen they rushed to do this.  This

13   was not something that was done over a long period of

14   time.

15             You know, COVID was a national emergency, an

16   international emergency, and this -- these statutes were

17   approved by Congress in an expedited fashion and, you

18   know, Congress makes mistakes, and here it just seems

19   completely counterintuitive that Sub V cases would get

20   more time than regular 11s, especially if you think about

21   a large retailer, would get less.  To me, that just smacks

22   of a mistake, and that's where I'm going with this, that's

23   my initial thought process.

24             But I have to tell you, I don't know what a

25   District Court would do on appeal, or the 11th Circuit,

Page 42

```
 1   that might be something that's tough to stomach at the

 2   appellate level, and so even if I rule that, you know,

 3   this May deadline may still be very important, even though

 4   it's extended, you know, to mitigate against risk on

 5   appeal.

 6              I throw that out there only because, you

 7   know, I don't want anybody to get too comfortable with

 8   what I'm doing, it may be wrong, and so maybe think about

 9   a motion to assume prior to the May 8th deadline anyway.

10   I don't know.  I mean, I'm just throwing that out there

11   because I just don't -- you know, when a court is making a

12   decision like this, you know, it doesn't happen often, and

13   there is a high level of concern about whether I really

14   ought to be finding Congress made a mistake, when the

15   language is in and of itself, you know, the words aren't

16   difficult to understand, they say what they say.

17              So, that's my current thought process, for

18   whatever it's worth.  Hopefully I can get an order out in

19   the next few days, but just think about whether, you know,

20   it really solves the problem --

21              MR. WEICHSELBAUM:  Thank you, your Honor.

22              THE COURT:  -- ultimately.

23              MR. WEICHSELBAUM:  Thank you.

24              THE COURT:  All right.  So, now let's cover

25   the Grant Thornton motion, is there an agreement?
```

Page 43

1              MR. NILES:  Thank you, your Honor.

2     Michael Niles, from Berger Singerman, on behalf of the

3     debtor again.

4              Yes, I do believe we have an agreement.

5              THE COURT:  Okay.

6              MR. NILES:  So, I invite Mr. Shraiberg to

7     correct what I believe to be the agreement, which is as

8     follows, but the Owocs have agreed that there is currently

9     no conflict of interest, and that Grant Thornton is

10    currently disinterested.  However, if hereafter there is

11    an actual conflict of interest, based upon Grant

12    Thornton's concurrent representation of Mr. Owoc and the

13    debtors, the Court will adjudicate that conflict upon

14    motion of either party.

15             THE COURT:  All right.  Mr. Shraiberg.

16             MR. SHRAIBERG:  Missed one word, provided

17    actual or potential conflict of interest.

18             THE COURT:  All right.  So, I'm

19    understanding that to mean that all is well in Whoville,

20    and if something pops up, it's the burden of

21    Mr. Shraiberg, on behalf of the Owocs, to bring that to

22    the attention of the Court, and to seek, I guess,

23    determination of Grant Thornton's, approval of their

24    employment, and we would take that up at that time, and

25    there may still be a disagreement at that point, but the

Page 44

```
 1    Court would adjudicate that issue, is that right?
 2                    MR. SHRAIBERG:  That's correct, your Honor.
 3                    THE COURT:  Okay.  All right.  That's fine.
 4    Anyone have any comments on that, or wish to be heard?
 5                    (No verbal response.)
 6                    THE COURT:  No, all right, that's fine.
 7                    So, I guess, Mr. Niles, you'll get me an
 8    order?
 9                    MR. NILES:  Yes, your Honor.
10                    THE COURT:  Yeah, and just so you know, I
11    think that's right.  I mean, I thought about this a lot
12    and, you know, I'm just trying to understand a
13    circumstance in which a Subchapter S, you know,
14    shareholder would have -- where it's a flow through, so
15    it's hard for me to imagine where there would be a
16    disagreement and, in fact, it seems to me in an audit, if
17    anything, the Subchapter S shareholder would want the
18    accountant handling that audit, on behalf of the debtor,
19    to have a duty to that Subchapter S shareholder.  So in
20    some ways it's actually better that Grant Thornton
21    represent both.
22                    But anyway, that's my own thought in trying
23    to understand whether there really was a conflict, and I'm
24    not seeing one as it stands today, but you're right, one
25    may develop, and if one does, Mr. Shraiberg, you'll bring
```

Page 45

1    that to my attention, and we'll deal with it.

2                    MR. SHRAIBERG:  Perfect.  Thank you,

3    your Honor.

4                    THE COURT:  All right.  Great.  So,

5    Mr. Niles, I'll look forward to receiving that order.

6                    And I think that leaves the motion filed

7    22 minutes before the hearing, dispute between

8    Mr. Shraiberg and Ms. Maimin, on behalf of their clients,

9    with respect to this ever elusive deposition date.

10                    MS. MAIMIN:  Your Honor, I am pleased to

11   report that in the interim we have agreed that Mr. Owoc

12   will be deposed on the 15th of May, that Elite Island will

13   be deposed on the 17th of May, and that Mr. Owoc and Elite

14   Island have confirmed that they have produced all

15   responsive material in their possession, and have also

16   searched all debtor issued work devices in their

17   possession.  Therefore, we have resolved the issue, and

18   thank you, your Honor.

19                    THE COURT:  So, in resolving the issue, and

20   bless you all for that, are you submitting an order,

21   withdrawing the motion, what's happening?

22                    MS. MAIMIN:  I think we'd like to submit an

23   order, just to prevent future mishaps, ordering the

24   dates --

25                    THE COURT:  Okay.

Page 46

1              MS. MAIMIN:  -- of the depositions, but

2    other than that, I think it's just a simple order.  I

3    don't know --

4              THE COURT:  All right.

5              MS. MAIMIN:  I haven't discussed that with

6    Mr. Shraiberg yet.

7              THE COURT:  Okay.  Mr. Shraiberg.

8              MR. SHRAIBERG:  Your Honor, I haven't even

9    seen their motion.  I don't know what was actually filed.

10             MS. MAIMIN:  No, the order would simply

11   order the depositions to happen on the 15th and the 17th.

12             THE COURT:  By agreement, it can say agreed,

13   if that helps, but I don't need an order.  It's really --

14   I'm leaving it up to you all to tell me whether you want

15   an order.

16             MR. SHRAIBERG:  We do not.  We have put on

17   the record, these are the dates that work, and my clients

18   will be there.  I don't think that we need an order.

19             MS. MAIMIN:  Okay.  Your Honor, rather than

20   create additional paperwork for the Court, since everyone

21   is listening and hearing the same thing, God forbid there

22   should be a delay, we will get -- we will tell the Court

23   promptly, but it doesn't sound like that's going to

24   happen.

25             THE COURT:  Okay.  All right.  So, then do a

Page 47

1    notice of withdrawal of the motion, so that I don't need

2    to set it for hearing, and we need to --

3                    MS. MAIMIN:  Okay.

4                    THE COURT:  -- get it off the docket

5    somehow, by order or withdrawal, one or the other.

6                    MS. MAIMIN:  Got it, we will.

7                    THE COURT:  And all you're doing, you

8    announced an agreement.  So to me this wasn't a hearing on

9    the merits of the motion, it was just you all have agreed

10   now.

11                   MS. MAIMIN:  Correct, Judge.

12                   THE COURT:  Okay.  So that should resolve

13   the clerk's issue.

14                   Ms. Weldon, does that -- since it wasn't

15   noticed for hearing, do we need an order?  I assume we

16   don't, but --

17                   ECRO:  Can you hear me?

18                   MS. MAIMIN:  Yes.

19                   THE COURT:  I couldn't.  I can hear you now.

20                   ECRO:  She would just do a notice to

21   withdraw.

22                   THE COURT:  Okay.  All right.  Fine.  Okay.

23   Great.  Anything else left on the docket in Vital today?

24                   MR. GUSO:  Nothing from the debtors,

25   your Honor.

Page 48

1                    THE COURT:  Okay.  Great.

2                    MS. MAIMIN:  Nothing on behalf of us,

3    your Honor.

4                    THE COURT:  All right.  Thank you all very

5    much, and have a beautiful day everyone.

6                    MR. NILES:  Thank you, your Honor.

7                    MR. WEICHSELBAUM:  Thank you, your Honor,

8    you, too.

9                    MS. SKLAR:  Thank you, your Honor.

10                   MR. SHRAIBERG:  Thank you.

11

12

13

14                   (Thereupon, the hearing was concluded.)

15

16

17

18

19

20

21

22

23

24

25

Page 49

```
 1

 2

 3                     CERTIFICATION

 4

 5   STATE OF FLORIDA        :

 6   COUNTY OF MIAMI-DADE    :

 7

 8              I, Cheryl L. Jenkins, RPR, RMR, Shorthand

 9   Reporter and Notary Public in and for the State of Florida

10   at Large, do hereby certify that the foregoing proceedings

11   were transcribed by me from a digital recording held on

12   the date and from the place as stated in the caption

13   hereto on Page 1 to the best of my ability.

14              WITNESS my hand this 8th day of May, 2023.

15

16

17        _____

18             CHERYL L. JENKINS, RPR, RMR

19             Court Reporter and Notary Public
              in and for the State of Florida at Large
20                 Commission #HH 170910
                    December 27, 2025

21

22

23

24

25
```