UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 (PDR) |
| Debtors.[1] | (Jointly Administered) |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
COMPEL THE TESTIMONY OF MEGAN ELIZABETH OWOC**

**Expedited Hearing Request for May 11, 2023**

On May 10, 2023, during Mrs. Owoc's deposition, Mrs. Owoc blanketly objected to all questions regarding the Owocs' Personal Finances as beyond the scope of the Rule 2004 Subpoena. With this Court's intervention, Mrs. Owoc was compelled to provide responses to certain questions related to distributions from the Debtors to Mrs. Owoc and her family. However, the Court directed the parties to address questions regarding the scope of the Rule 2004 examination. Ultimately, because of remaining legal dispute, and technical issues impeding the deposition, the parties agreed to adjourn the deposition. As the recipients of millions of dollars of transfers from the Debtors, the Owocs' testimony about their personal assets is critical to the Committee's investigation. The Committee intends to resume Mrs. Owoc's deposition as soon as the legal dispute is resolved. Accordingly, the Committee respectfully requests that the Court schedule this Motion for **May 11, 2023 at 2:00 p.m.** or the earliest date available for the Court.

The Official Committee of Unsecured Creditors (the "Committee") appointed in the

chapter 11 bankruptcy cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors-

---

[1]  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("VPX") (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC ("JHO") (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicom Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

in-possession (the "Debtors"), by and through its undersigned counsel, pursuant to Federal Rule

of Bankruptcy Procedure ("Rule") 2004, Federal Rules of Civil Procedure ("Federal Rule") 34, 37

and 45, made applicable by Bankruptcy Rules 7034, 7037 and 9016, and Southern District of

Florida Bankruptcy Local Rule (the "Local Rule") 2004-1, hereby files this motion to compel (the

"Motion") Megan E. Owoc ("Mrs. Owoc")[2] to provide testimony regarding her personal assets,

bank accounts, and real estate holdings ("Personal Finances").

## **RELEVANT FACTS**

1.      On January 26, 2023, the Committee issued Rule 2004 Notices to Elite Island, LLC,

John H. ("Jack"), and Megan Owoc (collectively, "2004 Notices") seeking the production of

Documents and Communications by February 11, 2023, and setting deposition dates in mid-

February. [*See* Docket Nos. 684, 686, and 689]. The 2004 Notice to Jack Owoc was later amended

to include requests for additional documents and communications. [*See* Docket No. 981].

2.      The 2004 Notices have been the subject of several discovery disputes: (1) the

Debtors' February 10, 2023 motion to quash [Docket No. 786]; (2) the Owocs' April 13, 2023

motion to extend the production deadlines [Docket No. 1041]; (3) the Committee's Objection to

the Owocs' motion to extend and cross-motion to compel [Docket No. 1057]; (4) the Committee's

April 3, 2023 contempt and sanctions motion seeking compliance with the Court's prior discovery

order [Docket No. 1076]; (5) the Owocs' April 13, 2023 motion to extend the production deadlines

---

[2] The Committee anticipates that it will encounter similar issues at John H. Owoc's ("Mr. Owoc", and together with Mrs. Owoc, the "Owocs") examination. To obviate the need for further motion practice, the Committee respectfully requests that any ruling with respect to Mrs. Owoc's deposition apply to Mr. Owoc's deposition, as well.

At Mrs. Owoc's examination on May 10, 2023, Mrs. Owoc indicated that she has handled Mr. Owoc's finances for the last year. She further testified that, in order to identify responsive materials to Mr. Owoc's 2004 Notice, the Owocs "went on a tower [sic] in every bank in Weston and walked in . . . and was able to receive a couple of responsive bank accounts that related to what you were asking for." Neither Mrs. Owoc nor Mr. Owoc produced bank statements to the Committee. To the extent that responsive bank statements or other responsive documents exist and are in the Owocs' possession, the Committee requests the Court compel the production of these documents.

[Docket No. 1164]; and (6) the Committee's April 29, 2023 renewed motion to Compel [Docket No. 1290].

3.      After a series of adjournments resulting from the above-motions, and the Owocs' failure to timely produce documents, the Committee filed notices of re-examination setting the deposition dates for the Owocs and Elite Island as follows:

- Mrs. Owoc – May 10, 2023;

- Mr. Owoc – May 15, 2023; and

- Elite Island – May 17, 2023.

[*See* Docket Nos. 1329, 1330, 1331].

4.      On May 10, 2023, at the onset of her examination, Mrs. Owoc was asked "what documents [she] reviewed in preparation for this deposition, if any", to which she responded "[s]pecifically bank statements . . . ."[3]  Throughout Mrs. Owoc's examination, counsel for Mrs. Owoc continued to object to all questions regarding the Owocs' Personal Finances on the basis that those questions are outside the scope of the Committee's 2004 Notice to Mrs. Owoc and directed her not to respond to the questions.  Confusingly, Mrs. Owoc's counsel argued that, among other things, Mrs. Owoc did not possess responsive material to certain of the 2004 Notice document requests, and therefore those document requests were outside the scope of examination.

5.      Due to Mrs. Owoc's refusal to answer the Committee's questions, the Committee was left with no choice but to seek judicial relief.  After hearing argument from the parties, this Court made the following determinations:

---

[3] The quoted language of the May 10th deposition of Megan Owoc in this Motion is from a rough transcript provided by Veritext.  A copy of the rough transcript can be provided to the Court if requested.

- "Mr. Albin, you may ask and the witness shall respond, shall answer questions relating to any and all transfers received by any and all transfers received by any and all of the Owoc family from any of the debtors.";

- "I am finding that the failure to object [to the subpoena] is a waiver at this point.";

- "But I am not necessarily finding that the waiver applies to all potential questions . . . because it seems to be that the waiver needs to have some rational relationship to the document request itself."; and

- "[O]nce this is completed, you all can come before me on any disagreements you have with respect to the applicability of my ruling to a particular question or answer."

6. After this Court's ruling, the parties resumed the examination. Again, counsel for Mrs. Owoc objected to questions related to the Owocs' personal bank accounts and other financial information. For example, counsel to the Committee asked "tell us the banks for which you reviewed the bank statements", and Mrs. Owoc's counsel responded "[o]bjection . . . I will instruct her not to answer that question because it could be outside of the scope of what you are allowed to ask." Mrs. Owoc was directed not to answer a simple question as to what bank statement(s) she reviewed in preparation for her examination that was directly responsive to the document requests in the 2004 Notice.

7. After 5:00 p.m. ET, the Committee indicated that it, and other cross-notice parties, had questions remaining and needed the Court's resolution of the outstanding 2004 Notice scope issues. In response, Mrs. Owoc stated that "I'm going to state for the record that until the legal issue gets settled, I am not going to appear for a deposition until you handle that . . . ."

## **RELIEF REQUESTED**

8. By this Motion, the Committee respectfully requests that this Court enter an Order compelling Mrs. Owoc to testify regarding her Personal Finances.

9. Additionally, the Committee requests that this Court order Mrs. Owoc to sit for the remainder of her deposition.

**BASIS FOR RELIEF**

10.      The Committee has a duty to investigate the Debtors' prepetition transactions to determine the viability and value of the claims and causes of action that may be brought on behalf of the estate.  Mr. Owoc is the former CEO and sole shareholder of all of the Debtors and received tens of millions of dollars of transfers under investigation by the Committee.  Mrs. Owoc, former Senior Vice President of Marketing for the Debtors, also received many non-salary distributions from the Debtors solely authorized by her husband—Mr. Owoc.  The 2004 Notice requests, among other things, "[a]ll Documents and Communications, including but not limited to Communications and/or Bank Statements, sufficient to show each distribution received by You from the any of the Debtors."[4]  [Docket No. 686].  Therefore, the Owocs' Personal Finances are within the scope of Rule 2004 discovery and critical to the Committee's investigation.

**TESTIMONY REGARDING THE OWOCS' PERSONAL FINANCES**

11.      During her examination, Mrs. Owoc, for the first time, objected to all questions relating to the Owocs' Personal Finances as outside the scope of Rule 2004.  Mrs. Owoc should be compelled to provide testimony in response to those questions since she waived any right to make those objections by failing to provide written objections to the document requests or file a motion to quash seeking to narrow the scope of the subpoena.  As the Court ruled, the waiver "needs to have some rational relationship to the document request itself" and Mrs. Owoc admitted that she reviewed bank statements and went on a "tour of all the banks in Weston" to search for responsive documents to the 2004 Notice.  Based on that statement, Mrs. Owoc understood that documents pertaining to either her individual or joint bank accounts with her husband are

---

[4] The Committee's 2004 Notice to Mr. Owoc makes the identical document request at number 12.

responsive to the Committee's 2004 Notice. This admission surely establishes the rationale relationship between Mrs. Owoc's wavier and bank statements requested in the 2004 Notice.

12.    Local Rule 2004-1(c) provides that "[a]n interested party may file, prior to the date of the proposed examination, a motion for protective order stating the reasons for prohibiting, limiting or rescheduling the examination."  Similarly, Rule 45 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 9016, provides that a "person who is commanded to respond to a subpoena may object, but must do so within fourteen days after the subpoena is served." *Stringer v. Ryan,* No. 08-21877, 2009 WL 3644360 (S.D. Fla. Oct. 30, 2009). At bottom, these authorities dictate that to object to the scope of a subpoena for testimony, a non-party must do so prior to the date of the proposed examination, and thus, "[a] non-party waives any objections if she does not timely object to the subpoena." *Id.*; *see also Stringer v. Ryan,* No. 08-21877, 2009 WL 3644360 (S.D. Fla. Oct. 30, 2009); *PDV USA, Inc. v. Commc'n Sols., Inc.*, 1:22-MC-21372-JAL, 2022 WL 19693817 (S.D. Fla. Aug. 18, 2022) ("The failure to timely respond, object, or move to quash could support a finding that Respondents here waived any objection to the Subpoenas."); *In re Asia Global Crossing, Ltd.*, 322 B.R. 247, 254 n.5 (Bankr. S.D.N.Y. 2005) (holding that where an objection to a subpoena duces tecum was not filed within the time parameters set forth in Rule 45(c)(2)(B), the examinee waived any objection).

13.    Mrs. Owoc made no written objections to the scope of the 2004 Notice, nor did she file any motion to quash to limit its scope, despite multiple opportunities to do so.  Myriad motions have been filed relating to her 2004 Notice since it was served on January 26, 2023, including a Motion to Quash filed by the Debtors.  In none of these motions did Mrs. Owoc seek an order

protecting her from disclosing information about her and Mr. Owoc's Personal Finances.  Mrs. Owoc should not be permitted to do so now, at the eleventh hour.

14.    Any attempt by Mrs. Owoc to argue that she was not aware that the Committee would seek information about her and her husband's Personal Finances during her examination must be rejected.  The document requests, which were attached to the 2004 Notice as Exhibit A, plainly sought such information.  Specifically:

- Request 8 sought "All Documents, including any Communications, relating to real and/or personal property in Your use and/or possession for which the Debtors participated in or funded (full or in part) the acquisition transaction";

- Request 8 also sought "All Documents and Communications, including but not limited to Communications and/or Bank Statements, sufficient to show each distribution received by You from the any of the Debtors"; and

- Request 13 sought "All Documents, including any Communications, regarding the use of any and all distributions from the Debtor entities to You or Your family members during the relevant time period."

Mrs. Owoc did not object to these requests but, rather, told the Committee that she had no responsive documents.  A lack of responsive documents should not relieve Mrs. Owoc from providing testimony on the topics.  Indeed, Mrs. Owoc's knowledge that the Committee would seek information about the Owocs' Personal Finances is evident from her testimony itself.  If Mrs. Owoc was opposed to offering testimony on these topics, she should have complied with the Local Rules and filed a motion to quash to limit the scope of the 2004 Notice.  She did not and should not be permitted to do so now.  *See PDV USA, Inc.*, 2022 WL 19693817.

15.     Even if the objection was not waived, it is without merit.  The Committee's requests for information and testimony regarding the Owocs' Personal Finances fall squarely within the scope of Rule 2004.  A Rule 2004 examination may relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge."  Fed. R. Bankr. P. 2004(b).  "The scope of a Rule 2004 examination is exceptionally broad and . . . [e]xaminations under Rule 2004 are allowed for the purpose of discovering assets and unearthing frauds and have been compared to a fishing expedition."  *In re Gaddy*, 851 F. App'x 996, 1004 n.6 (11th Cir. 2021) (quotations omitted); *see also In re No Rust Rebar, Inc.*, Case No. 21-12188 (PDR), 2022 WL 17365810, at *2 (Bankr. S.D. Fla. Dec. 1, 2022).[5]  Emphasizing the broad purpose of Rule 2004, courts generally allow examination of any third parties shown to have had dealings with the debtor. *See, e.g.*, *In re Correra*, 589 B.R. 76, 108 (Bankr. N.D. Tex. 2018); *In re Youk-See*, 450 B.R. 312, 319 (Bankr. D. Mass. 2011); *c.f. In re Sanomedics, Inc.*, 583 B.R. 796, 797 (Bankr. S.D. Fla. 2018) ("Creditors normally have a right to conduct Rule 2004 examinations of third parties who possess documents and information relevant to the administration of a bankruptcy case.").

16.     Investigation into the Owocs' Personal Finances is necessary because, as Mrs. Owoc testified, "[Mr. Owoc] and Bang Energy have always been one in the same."  In other words, the Owocs' Personal Finances were so intertwined with the Debtors' assets that it is difficult to draw a line between the two.  The Committee must be permitted to scrutinize the Owocs' Personal Finances to fairly assess the existence and viability of claims that could inure to the benefit of

---

[5]  While this Court granted the motion to quash in *No Rust Rebar*, the Court found that the creditor's Rule 2004 subpoena (unlike the 2004 Notices in these cases) was (i) not seeking to establish a claim for the benefit of the estate; and (ii) sought discovery for their own benefit.  *No Rust Rebar*, 2022 WL 17365810, at *4.  This Court did, however, recognize that legitimate goals of Rule 2004 include discovering assets, analyzing transactions, and exposing any unlawful or improper conduct.  *Id.* at *2.

unsecured creditors.[6] *See In re Bounds*, 443 B.R. 729, 732 (Bankr. W.D. Tex. 2010) (Rule 2004 discovery is "aimed at discovering evidence upon which future causes of action may be based.") (emphasis added and citation omitted); *see, e.g., In re Sheetz*, 452 B.R. 746, 750 (Bankr. N.D. Ind. 2011) (rejecting argument that party seeking examination "failed to provide enough specific information concerning the discrepancies she wants to investigate" because "Rule 2004 can properly be a fishing expedition and upon setting out for such an expedition one does not usually limit the fish one sets out to catch" rather "[i]t is perfectly permissible to troll for whatever might bite."); *In re Mirant Corp.*, 326 B.R. 354, 357 (Bankr. N.D. Tex. 2005) ("Discovery [under Rule 2004] now, not later, may be critical to ensure that no viable cause of action is lost, for while it may be certain [that] suit will be filed against [a party], that does not mean all possible claims . . . have been identified.").[7]

---

[6]  Mrs. Owoc makes no compelling argument to the contrary.  Rather, Mrs. Owoc contends that disclosure of the Owocs' Personal Finances would violate their right to privacy under the Florida Constitution.  She is incorrect.  While a party's personal financial information is entitled to heightened protection in litigation proceedings under Florida law, such protection applies only "in a case in which the information is not relevant." *Lombardo v. Gov't Employees Ins. Co.*, 3:16CV392/MCR/EMT, 2017 WL 3113410, at *3 (N.D. Fla. Feb. 23, 2017).  As explained above, the Owocs' Personal Finances are relevant to this bankruptcy as the finances of the Owocs and Debtors were so intertwined such that investigation into Mr. and Mrs. Owoc's personal finances is necessary to administer the Debtors' estates.

[7] Towards the conclusion of the examination, the Committee began to ask Mrs. Owoc regarding communications that she had with Mr. Owoc relating to certain business decisions made by him as the CEO of the Debtors.  Counsel instructed Mrs. Owoc not to answer on the basis of spousal privilege.  While the Committee did not pose additional questions due to lack of time, it anticipates making similar inquires at the continuation of Mrs. Owoc's examination that counsel may find objectionable.  In that regard, the Committee posits that the business matter exception to the spousal privilege applies. Indeed, the common-law martial communications privilege is not applicable to communications about business matters and therefore, it does not apply to discussions between Mr. and Mrs. Owoc about the Debtors' business. *See generally*, *Veracities PBC v. Strand*, 602 F. Supp. 3d 1354, 1358 (D. Or. 2022); *Brophy v. Hartley Doering Grp., Inc.*, No. 1:18-CV-02169, 2020 WL 3172706 (M.D. Pa. June 15, 2020); *Hanger Orthopedic Grp., Inc. v. McMurray*, 181 F.R.D. 525, 530 (M.D. Fla. 1998) ("The fact that the communication relates to business may demonstrate the intent that a communication was not intended to be confidential.") (applying Florida state law).

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that this Court grant this Motion and enter an Order compelling the Owocs to provide testimony regarding their Personal Finances and requiring Mrs. Owoc to sit for the remainder of her deposition forthwith.

Dated:  May 11, 2023

**LOWENSTEIN SANDLER LLP**

Jeffrey L. Cohen, Esq.
Eric Chafetz, Esq.
Rachel Maimin, Esq.
Erica G. Mannix, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: rmaimin@lowenstein.com
Email: emannix@lowenstein.com
-and-
Wayne Fang, Esq. (*pro hac vice* pending)
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2502
Facsimile: (973) 597-2400
Email: wfang@lowenstein.com

**SEQUOR LAW, P.A.**

By: */s/ Leyza F. Blanco*
     Leyza F. Blanco
     Florida Bar No.: 104639
     Juan J. Mendoza
     Florida Bar No.: 113587
     1111 Brickell Avenue, Suite 1250
     Miami, FL 33131
     Telephone: (305) 372-8282
     Facsimile: (305) 372-8202
     Email: lblanco@sequorlaw.com
     Email: jmendoza@sequorlaw.com

     *Counsel to the Official Committee of*
     *Unsecured Creditors*