Page 1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:                        CASE NO. 22-17842-PDR

VITAL PHARMACEUTICALS, INC.,

              Debtor.
_____/

VITAL PHARMACEUTICALS, INC.,

              Plaintiff,

v                            ADV. NO. 23-1051-PDR-A

JOHN H. OWOC and MEGAN E. OWOC.,

              Defendants.
_____/

ECF #1169, 1346, 1365, 1367 (main)

ECF #77 (adv)

May 11, 2023

          The above-entitled cause came on for hearing
before the Honorable Peter D. Russin, one of the Judges in
the UNITED STATES BANKRUPTCY COURT, in and for the
SOUTHERN DISTRICT OF FLORIDA, at 299 E. Broward Blvd.,
Fort Lauderdale, Broward County, Florida, on May 11, 2023,
commencing at or about 2:00 p.m., and the following
proceedings were had.


          Transcribed from a digital recording by:
                 Cheryl L. Jenkins, RPR, RMR

```
 1
 2                      APPEARANCES:
 3
                   BERGER SINGERMAN, by
 4                  JORDI GUSO, Esquire
                          and
 5                 LATHAM & WATKINS, by
             AMY QUARTAROLO, Esquire (via Zoom)
 6              On behalf of the Debtor
 7
                    SEQUOR LAW, by
 8           JUAN MENDOZA, Esquire (via Zoom)
                          and
 9               LOWENSTEIN SANDLER, by
             RACHEL MAIMIN, Esquire (via Zoom)
10           ERICA MANNIX, Esquire (via Zoom)
                 On behalf of the Official
11           Committee of Unsecured Creditors
12
                  HUESTON HENNIGAN, by
13           YEGOR FURSEVICH, Esquire (via Zoom)
                On behalf of Monster Energy
14
15                 SHRAIBERG & PAGE, by
                  BRAD SHRAIBERG, Esquire
16           On behalf of Jack and Megan Owoc
17
                   FOLEY & LARDNER, by
18            MARK WOLFSON, Esquire (via Zoom)
             On behalf of Webb & Gerritsen, Inc.
19
20                   FURR & COHEN, by
              ROBERT FURR, Esquire (via Zoom)
21             On behalf of Keurig Dr. Pepper
22
23
24
25
```

1

2                        **CONTINUED APPEARANCES**

3         **J. STEVEN WILKES, Trial Attorney (via Zoom)**
                   **Office of the U.S. Trustee**
4                   **Department of Justice**

5

6                          **ALSO PRESENT**

7      **ECRO - Electronic Court Reporting Operator**

8                        - - - - - - -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    THE COURT:  All right.  The next matter, I
 2   guess, is the 2 o'clock calendar, Vital Pharmaceuticals,
 3   22-17842.
 4                    Okay.  Appearances, let's start at the top
 5   of Zoom.  Mr. Wilkes.
 6                    MR. WILKES:  Thank you, your Honor.
 7   J. Steven Wilkes for the United States Trustee, Region 21.
 8                    THE COURT:  Thank you.
 9                    Ms. Maimin.
10                    MS. MAIMIN:  Good afternoon, your Honor.
11   Rachel Maimin on behalf of the Committee of Unsecured
12   Creditors.
13                    THE COURT:  Thank you.
14                    Mr. Mendoza.
15                    MR. MENDOZA:  Good afternoon, your Honor.
16   Juan Mendoza, on behalf of the Official Committee of
17   Unsecured Creditors.
18                    THE COURT:  Mr. Wolfson.
19                    MR. WOLFSON:  Good afternoon, your Honor.
20   Mark Wolfson, of Foley & Lardner, on behalf of
21   Webb & Gerritsen, G-e-r-r-i-t-s-e-n, Inc.
22                    THE COURT:  Thank you.
23                    Mr. Fursevich.
24                    MR. FURSEVICH:  Good afternoon, your Honor.
25   Yegor Fursevich on behalf of Monster Energy company.
```

1                    THE COURT:  Thank you.

2                    Ms. Mannix.

3                    MS. MANNIX:  Good afternoon, your Honor.

4    Erica Mannix, of Lowenstein Sandler, on behalf of the

5    Unsecured Creditors' Committee.

6                    THE COURT:  Thank you.

7                    Mr. Furr.

8                    MR. FURR:  Good afternoon, Judge.

9    Robert Furr for Keurig Dr. Pepper.

10                   THE COURT:  Thank you.

11                   Ms. Quartarolo.

12                   MS. QUARTAROLO:  Your Honor, Amy Quartarolo

13   on behalf of the debtors.

14                   THE COURT:  Okay, and I assume if your

15   camera is not on, that you do not wish to make an

16   appearance.

17                   Okay.  All right.  This is a motion to allow

18   a late filed -- well, is there any particular -- who is

19   going to handle the hearing today for the debtor?

20                   MR. GUSO:  Your Honor, Mr. Shraiberg and I

21   didn't get the memo that everybody is appearing by Zoom

22   today, but we're here --

23                   THE COURT:  Yes, sorry.

24                   MR. GUSO:  -- pleased to accompany

25   Ms. Weldon this afternoon.

1               THE COURT:  Sorry about that, Mr. Guso.  Go

2    ahead and make your appearance.

3               I would have been in the courtroom.  You

4    know, I'm sort of lucky I'm not, because I have this cold,

5    but anyway, go ahead.

6               MR. GUSO:  I hope you're feeling better,

7    Judge.

8               Good afternoon, your Honor.  Jordi Guso, of

9    Berger Singerman, along with the Latham & Watkins firm.

10   We are co-counsel to the debtors.

11              THE COURT:  Thank you.

12              Mr. Shraiberg.

13              MR. SHRAIBERG:  Brad Shraiberg, on behalf

14   the Owocs.

15              THE COURT:  Okay.  Thank you.

16              All right.  Mr. Guso, how do you want to

17   proceed?

18              MR. GUSO:  Thank you, your Honor.  We can

19   take the matters up in the order in which they appear, at

20   least on the online calendar, if that's acceptable to

21   your Honor.

22              THE COURT:  I wish I knew what that was, but

23   -- so why don't you go ahead.

24              MR. GUSO:  Thank you, your Honor.

25              At least on my copy of the calendar,

1    your Honor, the first matter is the motion to allow the

2    late-filed claim of Webb & Gerritsen, represented by

3    Mr. Wolfson.

4                    Your Honor, I'm pleased to report that this

5    matter has been resolved in its entirety, including the

6    underlying dispute.

7                    Your Honor, this relates to a litigation

8    matter that was pending in Wisconsin prepetition.  There,

9    your Honor, the trial court struck the debtors' defenses

10   based on Mr. Owoc's conduct during discovery.  The case

11   went to trial before a jury, and the jury returned a

12   verdict for Mr. Wolfson's client in the approximate amount

13   of $2.6 million.  The debtors posted a bond to stay the

14   effectiveness of the judgment pending appeal.

15                   Your Honor, the parties have agreed, in full

16   compromise and settlement of their disputes, to the entry

17   of an order following notice under Rule 9019, your Honor,

18   to split the funds on deposit, 80 percent to

19   Webb & Gerritsen, and 20 percent to the estate, meaning

20   that the estate will realize approximately $580,000.

21                   The arrangement I've just described,

22   your Honor, was vetted with the committee and with the

23   lenders, as well, both have no objection to what I've

24   described.

25                   We've actually circulated a form of

1   settlement agreement to counsel, your Honor, and for
2   purposes of today what we'd ask is for the Court to
3   continue this hearing for approximately 45 days, so that
4   the parties can file their 9019 papers, hopefully let the
5   notice period run, without objection have your Honor
6   approve the settlement, and the settlement does
7   contemplate the withdrawal of this motion, as well as the
8   motion for stay relief that Webb & Gerritsen also filed,
9   which is subject of an objection that's not yet been set
10  for hearing.
11              THE COURT:  And it resolves the judgment,
12  the appeal, everything?
13              MR. GUSO:  Correct, your Honor.
14              THE COURT:  Okay.  So, it's a global
15  settlement?
16              MR. GUSO:  Correct.
17              THE COURT:  All right.  All that I need to
18  do today, though, is continue this hearing until you all
19  get those papers filed and set for hearing?
20              MR. GUSO:  Correct, your Honor.
21              THE COURT:  Okay.  Mr. Wolfson, anything to
22  add?
23              MR. WOLFSON:  The only thing I'm going to --
24  no, he articulated everything exactly as it has developed
25  in this case, and we're appreciative that the debtors and

1    the parties were able to reach a resolution.

2                    The only thing I'll note is that the

3    original judgment, I think, was $2.4 million, not 2.6, but

4    nonetheless, everything else is in the -- we're just

5    waiting to file a final settlement agreement, sign it, the

6    9019, and set it for hearing.

7                    So, we just need to find a date, I guess,

8    Judge, on which we'd have a hearing on the motion,

9    continue the late-filed claim, a motion for the

10   compromise, which can be kind of the -- but using the

11   late-filed claim motion kind of to set it, because that's

12   the one that's actually of record, and also, if necessary,

13   com -- I guess under the rules you're supposed to file a

14   certification on the lift stay, but the idea is that would

15   just be continued as well, and the stay would stay in

16   place, obviously, until that is addressed.

17                   THE COURT:  Okay.  I think I understand what

18   you're saying, but I'll leave it to you all to get

19   everything set on a date that makes sense to be heard at

20   the same time as the 9019 motion, whenever that might be

21   filed, which I assume will be fairly soon, is that right,

22   Mr. Guso?

23                   MR. GUSO:  It will, your Honor, it will be

24   filed by next week, and we intend, your Honor, to seek

25   approval of the settlement, giving the lender consent, and

Page 10

1    the committee consent on negative notice.  So, I don't
2    think we'll need another hearing absent an objection, and
3    what we'd like is just to have a place saver date,
4    probably some time at the end of June, as a safeguard,
5    Judge, but we should be done well in advance of that
6    deadline, and there likely won't be a need for that
7    hearing.
8              THE COURT:  All right.  Well, let's -- so,
9    in other words, the matters that are currently set, or
10   need to be set, not including the 9019 motion, which would
11   not need to be set, theoretically, unless there is an
12   objection, would be set for that date in late June, and
13   then withdrawn, with that hearing cancelled, assuming the
14   9019 motion is granted, right?
15             MR. GUSO:  Correct, your Honor, that's
16   exactly right.
17             THE COURT:  Okay.  So let's get a date,
18   let's get a date then in late June.
19             Ms. Weldon, do you have a date in late June
20   we can give them?
21             ECRO:  Yes, June 29th at 1:30.
22             THE COURT:  June 29th at 1:30.
23             ECRO:  Yes.
24             THE COURT:  Does that work for everyone?
25             MR. GUSO:  It does for me --

```
 1                    THE COURT:  Any issues?
 2                    MR. GUSO:  -- your Honor.
 3                    THE COURT:  All right.  Ms. Maimin, did you
 4    want to speak on this?
 5                    MS. MAIMIN:  No, your Honor.
 6                    THE COURT:  Okay.  All right.  So, then I
 7    need an order that continues the hearing on Docket
 8    Entry 1169 to June 29th at 1:30, and then with respect to
 9    those matters that are not set for today, that you want
10    continued, that relate to all of this, stay relief or
11    whatever it is, please re-notice those for that date and
12    time --
13                    MR. GUSO:  Your Honor, the --
14                    THE COURT:  -- all right, Mr. Guso?
15                    MR. GUSO:  That's fine, Judge.
16                    The order that we've drafted, subject to
17    obtaining a date from Ms. Weldon, your Honor, would have
18    set -- continued this hearing, as well as set a hearing on
19    the stay relief motion, and the debtors' objection for the
20    same time, if that's acceptable to your Honor.
21                    THE COURT:  Okay.  Sure, that works as well,
22    perfectly fine.
23                    MR. WOLFSON:  Yes, Judge.
24                    THE COURT:  Okay.  What's next?
25                    MR. GUSO:  Your Honor, I think next, at
```

1    least on my calendar, is the emergency motion to compel

2    discovery from the Owocs and Elite Island, filed by

3    Monster Energy Company, and for that, your Honor, I'll

4    yield the podium, or lectern to somebody.  I don't know

5    who is handling that.

6              MR. WOLFSON:  Your Honor, Mr. Wolfson.  I'm

7    going to leave, if that's okay with your Honor.

8              THE COURT:  We'll miss you, Mr. Wolfson.

9    Good to see you.

10             MR. WOLFSON:  I'm sure you will, Judge.

11             THE COURT:  All right.  So who, on behalf of

12   Monster, is arguing this?

13             MR. FURSEVICH:  I will be, your Honor.  This

14   is Yegor Fursevich on behalf of Monster.

15             We are -- in this emergency motion,

16   your Honor, we are seeking the production of documents

17   from Meg Owoc, Jack Owoc, and Elite Island pursuant to

18   Monster's Rule 2004 requests, that have already been

19   produced to the Committee of Unsecured Creditors in these

20   proceedings.

21             THE COURT:  Right, let me just --

22   Mr. Fursevich, let me just check that.

23             So, all you're asking for is that the

24   documents that have been produced to the committee, be

25   copied, electronically or otherwise, and sent your way, is

1    that the bottom line?

2                    MR. FURSEVICH:  That's exactly right, that's

3    exactly right.

4                    THE COURT:  Okay.  All right.  So easy

5    argument for you to make.

6                    Now, let me understand who is arguing on

7    behalf of the Owocs, Mr. Shraiberg.

8                    MR. SHRAIBERG:  Thank you, your Honor.

9                    I have spoken with counsel, local counsel,

10   Mr. Eyal Berger, and I believe that this motion, along

11   with the debtors' motion, is -- we've entered into an

12   agreement.  We thought that there was --

13                    THE COURT:  What's the debtors' -- I'm

14   sorry, let me catch up to you.  What's the debtors'

15   motion?

16                    MR. SHRAIBERG:  I thought the debtor had one

17   as well, the exact same motion, if I wasn't --

18                    MR. GUSO:  Your Honor, the debtors filed a

19   joinder in the request filed by Monster.

20                    MR. SHRAIBERG:  Sorry.  Thank you.

21                    THE COURT:  Okay.  So, in other words, the

22   debtor wants the same documents that the Committee has,

23   and that Monster is seeking, is that right, Mr. Guso?

24                    MR. GUSO:  Yes, sir.

25                    THE COURT:  I see.  Okay.  All right.  So,

1   you may have to copy them twice.

2              MR. SHRAIBERG:  So, the primary issue was we

3   thought both parties had already turned documents over to

4   the Committee as well, and we were requesting that.  We

5   have learned that Monster has not, but the debtor has, and

6   we were looking for, in the order, that we agree that the

7   Committee can share those documents with both the debtor

8   and with Monster, but we also are --

9              THE COURT:  Okay, wait, wait, wait, I'm not

10  understanding, I'm not understanding.

11             MR. SHRAIBERG:  Sure.

12             THE COURT:  Cover one thing at a time.

13             MR. SHRAIBERG:  Okay.

14             THE COURT:  With respect to the documents

15  that the Committee has -- I'm sorry, the documents that

16  have --

17             MR. SHRAIBERG:  Been turned over to --

18             THE COURT:  Yes, that have been produced to

19  the Committee, is there any objection to those very same

20  documents being copied and/or turned over to Monster and

21  the debtor, yes or no?

22             MR. SHRAIBERG:  No, no objection.

23             THE COURT:  Okay.  So, what else are you

24  adding to this that I'm not aware of?

25             MR. SHRAIBERG:  That the debtor turns over

1    the documents that they produced to the Committee to us as

2    well.

3                    THE COURT:  Okay.  Is there any objection

4    from the debtor of the Committee doing that?

5                    MR. GUSO:  Your Honor, subject to Mr. and

6    Mrs. Owoc signing the confidentiality order, and

7    protective order that's been used in the proceedings, no

8    objection.

9                    THE COURT:  Okay.  Any issue with that,

10   Mr. Shraiberg?

11                   MR. SHRAIBERG:  No, your Honor, that order

12   exists, so we're fine with that.

13                   Counsel for them has already signed it, but

14   if -- we will be sharing these documents with the clients

15   as well, therefore, we're fine with that.

16                   MR. GUSO:  Correct, Judge.

17                   THE COURT:  Okay.  Sorry, I've just got a

18   large quantity of liquid that seem to be leaving my face,

19   sorry.

20                   MR. GUSO:  It's a carryover from the prior

21   hearing, I'm sure.

22                   THE COURT:  Oh, because, you know, it's just

23   all so sad.

24                   Anyway, all right, so there doesn't seem to

25   be any issues here.  Mr. Maimin, any problems with any of

1    that?

2                    MS. MAIMIN:  Your Honor, we wish a 2004

3    notice had been filed so we could actually weigh in

4    substantively, but we don't take a position, and at this

5    point, for all of the reasons that the Court is aware of,

6    we really just want the case to move forward, so we're not

7    going to take a position.

8                    THE COURT:  All right.  So, who is getting

9    -- anyone else wish to be heard?  Mr. Fursevich, you win,

10   so I assume you don't need to be heard?

11                   MR. FURSEVICH:  Nothing further from us,

12   your Honor.

13                   THE COURT:  Okay.  All right.  So, what's

14   this order going to look like, who is drafting it, and

15   when will I get it?  Mr. Shraiberg.

16                   MR. SHRAIBERG:  Yes, we'll be glad to draft

17   it, and I'll circulate it to both -- to all three counsels

18   before submitting -- all three counsel.

19                   THE COURT:  All right.  Does that work,

20   Mr. Fursevich?

21                   MR. FURSEVICH:  That works for us.

22                   THE COURT:  Okay.  Great.  So that resolves

23   Docket Entry 1346 and the joinder, I don't see that docket

24   entry.  What docket entry is the joinder by the debtor?

25                   MR. SHRAIBERG:  I didn't see. It.

1              THE COURT:  Just make sure we reference the

2    joinder in the order, okay?

3              MR. SHRAIBERG:  Will do, your Honor.

4              MR. GUSO:  Thank you, your Honor.

5              THE COURT:  Okay, and of course today's

6    hearing.

7              All right.  So does that take us to 1365,

8    the expedited motion to compel?

9              MR. SHRAIBERG:  Yes, your Honor.  However,

10   we filed at 1367 a motion to continue this hearing.

11             THE COURT:  Okay.  All right.  Well, let's

12   hear the motion to continue.  I haven't seen that.  I

13   assume you filed that today, right?

14             MR. SHRAIBERG:  Yes, your Honor.  Similarly

15   this motion -- and one of the primary reasons for the

16   motion was this motion was equally filed today.

17             THE COURT:  Okay.

18             MR. SHRAIBERG:  It's at Docket Entry 1367,

19   it's the Owocs' motion to continue the expedited hearing.

20   This motion was filed at 8:42 this morning, after we were

21   in an all-day deposition yesterday with the Committee, as

22   well as all other of the active interested parties in this

23   case.

24             The motion says that this motion to compel

25   is critical and warrants the Court scheduling a hearing

Page 18

1    specifically today, which we believe there is no emergency

2    basis for this motion.

3                    The motion, this emergency motion that was

4    filed by the Committee, once again, didn't follow Local

5    Rule 9073-1, where they would reach out and consult with

6    us with regard to the emergency motion prior to filing

7    same.  Instead, I literally saw on my computer a popup of

8    a notice of hearing for today at 2:00 p.m., because I

9    didn't even see that the motion was filed, as it was filed

10   at 8:45 this morning.

11                   The subject matter of the motion to compel

12   is not so critical as to warrant a hearing in less than

13   five hours.  We had the preliminary hearing yesterday, and

14   there are very serious issues that we want time to brief,

15   and five hours doesn't allow us that, especially when --

16                   THE COURT:  What are those serious issues?

17                   MR. SHRAIBERG:  The issue with regard to the

18   Florida Constitution, and right to privacy, along with

19   what is the scope of a 2004 Exam, and the waiver issue.

20                   THE COURT:  Okay.  All right, and how long

21   are you asking for?

22                   MR. SHRAIBERG:  We would ask for one week to

23   properly brief that, if we need to do it within two days

24   before a hearing.

25                   THE COURT:  Doesn't that push past the dates

1    for the depositions that have been scheduled, and

2    rescheduled, and rescheduled for months?

3                    MR. SHRAIBERG:  There is a rescheduled

4    deposition of Jack Owoc on this coming Monday, and Elite

5    Island on this coming Wednesday.  The --

6                    THE COURT:  So the answer is yes?

7                    MR. SHRAIBERG:  The answer would potentially

8    be yes, but your Honor has already ruled, and at that

9    hearing -- after your ruling, questions were asked, and we

10   feel that we abided by your ruling, including, while not

11   giving any personal information about the Owocs' finances,

12   we did disclose where the transfers from the debtor, what

13   bank they went to.

14                    THE COURT:  Okay.  Anything else?

15                    But you refused to answer other questions or

16   what?

17                    MR. SHRAIBERG:  I don't believe, and counsel

18   will correct me if I'm wrong, there were any other

19   questions with regard to their personal finances that -- I

20   don't know that the Committee tried to push past that.

21   The only one that I remember, other than disclosing where

22   the transfers went to, meaning specifically which

23   institutions they went to, there was a general question

24   of, Ms. Owoc said in preparation for the deposition she

25   reviewed numerous bank statements to see if transfers had

1    been received, into those bank accounts.  The question was

2    asked, which ones?  That question was objected to because

3    the nature of that specific question would have to --

4    would give their personal finances with regard to other

5    banks accounts that were not -- that have nothing to do

6    with these debtors.

7                    THE COURT:  All right.  So, let me ask you,

8    are you concerned about confidentiality, or what are you

9    concerned about, just the mere disclosure that violates

10   the right to privacy under the Florida Constitution, or

11   what's the main concern here?

12                   MR. SHRAIBERG:  That the Creditors'

13   Committee is trying to do a deposition in aid of execution

14   before even filing a lawsuit, let alone getting a

15   judgment.

16                   THE COURT:  Okay.  All right.  I understand,

17   a similar argument to what you made yesterday --

18                   MR. SHRAIBERG:  Correct.

19                   THE COURT:  -- correct?

20                   MR. SHRAIBERG:  Correct.

21                   THE COURT:  Okay.  All right.  Understood.

22                   MR. SHRAIBERG:  But I need to emphasize that

23   we disclosed the receipt of the payments that we were

24   asked about, and which institutions they went to.

25                   THE COURT:  Okay.  All right.  I understand.

```
 1                    Anything else on the motion to continue?
 2               MR. SHRAIBERG:  One moment.
 3               THE COURT:  All right.
 4               MR. SHRAIBERG:  Also important, if they're
 5  going to start to get into what was said and what wasn't
 6  said, as of today we didn't have a copy of the transcript.
 7  I saw at about, a little after 12 noon, someone from the
 8  Committee --
 9               THE COURT:  Well, you there were.
10               MR. SHRAIBERG:  I'm sorry?
11               THE COURT:  You were at the deposition.
12               MR. SHRAIBERG:  Yes, correct, absolutely.
13               THE COURT:  Okay.
14               MR. SHRAIBERG:  I can go from my memory --
15               THE COURT:  Or the 2004 Examination.
16               MR. SHRAIBERG:  -- but with regard to, if
17  there is going to be half stories stated in the motion of,
18  Ms. Owoc refused to testify to this, I need to be able to
19  say, well, she did testify to that.
20               THE COURT:  Okay.  Well, there is -- nothing
21  like that's been argued in the motion that I understand.
22               MR. SHRAIBERG:  I think they did.  I think
23  there -- and they start talking about spousal privilege,
24  when in one instance I did not permit them -- I prohibited
25  the witness from responding, and then numerous other
```

1    times, when I felt the exception to the spousal privilege

2    existed, I did allow her, and she did answer those

3    questions.

4                    So, to show --

5                    THE COURT:  Okay.

6                    MR. SHRAIBERG:  Yes, okay, but that --

7                    THE COURT:  I understand, and you can do

8    that, you can continue to do that, with some clarification

9    of at least what the Court's view is of the spousal

10   privilege and how far it goes.

11                   MR. SHRAIBERG:  Sure.

12                   THE COURT:  Is that a fair statement?

13                   MR. SHRAIBERG:  Absolutely, yes.

14                   THE COURT:  Okay, and I don't think the law

15   on that is very complicated.

16                   MR. SHRAIBERG:  With that issue, I agree,

17   but I don't like the --

18                   THE COURT:  Okay.

19                   MR. SHRAIBERG:  -- attempt to make it look

20   like Ms. Owoc was being difficult with regard to those

21   issues.

22                   THE COURT:  I'm not making any judgments

23   with respect to your advice to your client not to answer

24   questions, your client's decision not to answer, I'm not

25   -- I have zero interest in those types of things.

1              What I care about is that these depositions

2    continue and be completed, with the scope fairly

3    understood between the parties, that's all I care about,

4    and what happens from there, that's up to you guys, and

5    how you all use that information, you know, that's not for

6    me, that's above my pay grade, although I'm sure I'll hear

7    about it at some point.

8              So, that's -- just so you understand, that's

9    my interest.  I have no -- I'm not -- I'm not, you know,

10   determining any kind of bad faith or anything at this

11   point.

12             MR. SHRAIBERG:  Thank you.

13             THE COURT:  Okay.  All right.  Anything else

14   on the motion to continue?

15             MR. SHRAIBERG:  No.

16             MS. MAIMIN:  Just --

17             MR. SHRAIBERG:  No, not from me, your Honor.

18             THE COURT:  All right.  Ms. Maimin, I'm

19   sorry, I just keep -- I just have this cold.  Sorry about

20   the interruption.  Go ahead, just on the motion to

21   continue, not the merits of the motion itself.

22             MS. MAIMIN:  Your Honor, the motion to

23   continue is an extraordinary 14th-hour effort to delay the

24   depositions that have now been pending since January 20th.

25   All we want to do is ask questions within the scope of

1    your Honor's ruling yesterday, with which we take no

2    issue.  We did not have the opportunity to ask again the

3    questions that did fall within that scope, and there were

4    two additional questions that we did have time to ask,

5    that did fall within the scope, that they refused to

6    answer.  That's all we want to do, and we want to ensure

7    that Mr. Owoc does not follow in the footsteps of what

8    happened yesterday, and cause the same delays.

9               So, there is no basis whatsoever.  These

10   important issues due to privacy, it's a very simple, yes,

11   the Florida Constitution does govern here, and it's well

12   settled that where materials sought by a party are

13   relevant to the subject matter, it's wholly discoverable.

14   There is no special, secret privacy issue going on here.

15               Also, with respect to the scope of the

16   2004s, there is a very long footnote about this, the cases

17   cited in the footnote about the scope of 2004s state the

18   uncontroversial premise that the 2004s have to have some

19   -- a certain relationship to the action, but in all those

20   cases -- in both of those cases the court ruled that the

21   2004s could go forward, and that the scope was proper.

22               So, there is artificial legal issues being

23   raised right now in order to create yet additional delay.

24   We want to move forward with the depositions, according to

25   the structures that your Honor set forth yesterday, finish

1   Ms. Owoc's deposition by being able to ask the questions

2   that your Honor has permitted us to ask, and have a

3   deposition of Mr. Owoc that does not devolve into what

4   happened yesterday.

5               THE COURT:  Mr. Shraiberg, let me -- I'm

6   going to deny the motion to continue.  We're going to get

7   as far as we can on this today, in light of the fact that

8   you've got some depositions scheduled before, in your

9   view, we could have another hearing on this.

10              I agree, I don't think these issues are

11  particularly complicated.  You were able to argue them

12  yesterday, you know, effectively.  So, let me just hear

13  from you with respect to -- actually, let me go -- I'm

14  just going to deny the motion for continuance at this

15  time.

16              Ms. Maimin, I have a particular interest in

17  what exactly was testified to by Ms. Owoc with respect to

18  the Owoc relationship with Bang Energy.

19              You tried to quote it, and you basically

20  said that Ms. Owoc testified that the Owocs -- or Mr. Owoc

21  and Bang Energy are one and the same.  Can you get -- can

22  you tell me the context in which that testimony occurred?

23              MS. MAIMIN:  Your Honor, I believe -- I

24  don't have the exact location, but I believe that Ms. Owoc

25  testified, as everyone else has, that Mr. Owoc has

```
1   complete -- had complete and total control over Bang, and
2   all important decisions had to be run past him.  That's
3   been -- nobody has ever disputed that in any deposition.
4              THE COURT:  Okay, but tell me, as close as
5   you can, what the testimony was in this regard.  I think
6   you -- I think it was a quote, but I thought you said that
7   she, that Mrs. Owoc testified that -- let me just see
8   here, that --
9              MS. MAIMIN:  Yes, your Honor.
10              THE COURT:  Go ahead.
11              MS. MAIMIN:  She testified that Mr. Owoc and
12   Bang Energy have always been one and the same, this is in
13   the context of a number of subjects that were discussed
14   yesterday, including the fact that Mr. Owoc used the
15   administrative staff of Bang to handle his personal
16   finances, that he took distributions at will, without any,
17   you know, reason given, from Bang Energy, and also that
18   every decision that happened at Bang Energy had to be run
19   by Mr. Owoc, and that's, I don't think, remotely disputed
20   by anybody, including even Mr. Owoc.
21              THE COURT:  All right.  Thank you for that.
22   I've read your motion, so I don't think I need anything
23   further on that.
24              Mr. Shraiberg, your response.
25              MR. SHRAIBERG:  With -- part of it is with
```

Page 27

1    regard to what?  It seems to be kind of all over the

2    place.

3                    If we were going forward, and everyone

4    agrees that yesterday's ruling is your view and is the

5    ruling, there is nothing to object to, we agree with that.

6                    I mean, I thought yesterday's ruling was

7    perfectly correct, and we testified pursuant to that.  The

8    only question that I'm aware of, that they were concerned

9    that I directed the witness not to respond to, was the

10   question of which bank accounts did you, Meg Owoc, review,

11   and that includes a negative, in essence, that includes

12   her personal bank accounts that did not receive -- that

13   was not in response to that document request.

14                   So, that's it is, and that would be

15   consistent with your ruling.  So if the question is, do we

16   understand where the Court's mindset is at, not only do we

17   understand it, we agree with it.

18                   THE COURT:  Okay.  All right.

19                   MS. MAIMIN:  Your Honor --

20                   THE COURT:  Hold on, Ms. Maimin.

21                   Anything further, Mr. Shraiberg?

22                   MR. SHRAIBERG:  I don't know if there is a

23   -- usually a motion to compel is, as you stated yesterday,

24   the Court marked Question X on Page 42 of the deposition

25   transcript, that the debtor refused -- excuse me, the

Page 28

1    deponent refused to respond to.  I don't have that here,

2    so that's why I'm saying we're kind of all over the place.

3              Are we clarifying that yesterday's ruling

4    stands?  We're not debating that, or the Owocs are not

5    debating that.

6              If there is one specific question, I am only

7    going with the one that I remember, then we would have an

8    objection.

9              Another prior question, but I think it was

10   resolved in your ruling yesterday, was do you have an

11   offshore bank account?  Do you have a retirement account?

12   They were literally doing a deposition in aid of

13   execution.

14              MS. MAIMIN:  Your Honor -- oh, I'm sorry.

15              THE COURT:  Okay.  So, on that, Ms. Maimin,

16   it seems to me that if monies were transferred from the

17   debtor to the Owocs, and then the Owocs transferred those

18   monies, or certain amounts of those monies to a retirement

19   account, I think that that is fair game, but just to ask

20   if they have a retirement account, I'm not sure that that

21   is fair game.

22              In other words, there has to be some

23   rational relationship between the questions you're asking

24   and the scope of 2004, which allows you basically to

25   follow the debtor's money.

1          MS. MAIMIN:  I agree, your Honor.

2          Because so much time yesterday was spent

3  litigating, we were unable to revisit a number of

4  questions that are well within the scope, including, for

5  instance, whether during certain years any of Mr. Owoc's

6  distributions, or compensation went into any of Ms. Owoc's

7  personal bank accounts, we asked that for several years.

8  We weren't -- she wasn't permitted to answer that.  We

9  asked about the --

10         THE COURT:  Well, you can go over the old

11 ground, which would be consistent -- which would require

12 answers consistent with -- I'm sorry, you can go over

13 questions that were not answered, where there was an

14 instruction not to answer, where my ruling would have

15 eviscerated that obstruction, or that instruction.  You

16 just need time --

17         MS. MAIMIN:  Yes, your Honor.

18         THE COURT:  --- is what you're saying?

19         MS. MAIMIN:  Well, Mr. -- my understanding

20 is Ms. Owoc is refusing to sit for that deposition.

21         THE COURT:  Okay.  Well, she has to sit for

22 that deposition, period.

23         Mr. Shraiberg.

24         MR. SHRAIBERG:  Your Honor, they have not

25 provided us with a date and we said no, that's not a fair

1    comment.

2                    What has happened so far, and what Ms. Owoc

3    did put on the record correctly, is that she was there for

4    over eight hours, of which only two and a half hours were

5    on the record.  The Creditors' Committee repeatedly took

6    break, after break, after break, which allowed --

7                    THE COURT:  Okay.  Well, that's not -- none

8    of that is before me.

9                    All I'm saying is that the Committee has a

10   right to complete the deposition, and ask the questions

11   that you instructed your client not to answer that are

12   within the scope that I had ruled is appropriate, that's

13   what I'm saying.

14                   MR. SHRAIBERG:  I understand.

15                   THE COURT:  And any additional questions

16   that are within that scope that they were unable to ask,

17   and it may very well have been that the time they were

18   spending was because they were trying to figure out what

19   to do in light of your instructions not to answer.

20                   So, I'm not getting all of that right now.

21   All I'm asking, or all I'm saying is that your client will

22   need to sit again to complete this 2004 Examination.  Do

23   you have a problem with that?

24                   MR. SHRAIBERG:  No, and we wouldn't have if

25   we were provided dates to continue.

Page 31

1          The amount of time --

2          THE COURT:  All right, then you'll work

3    cooperatively to get that date reset promptly --

4          MR. SHRAIBERG:  Yes.

5          THE COURT:  -- correct?

6          MR. SHRAIBERG:  Yes, your Honor.

7          THE COURT:  Okay.

8          MR. SHRAIBERG:  But I would like to revisit

9    one thing that was said that wasn't addressed.  I don't

10   believe that your ruling yesterday, or at least my

11   interpretation of it, allowed for following the debtors'

12   money.  It allowed for if there was a transfer to another

13   entity, but not to if -- these transfers occurred over

14   years, especially many -- most of the time, if not all of

15   the time, the debtor was solvent at the time.

16          So, to follow the debtors' -- excuse me, the

17   Owocs' money, once they receive it, if they receive it

18   internally, and it stays internally, that's discovery in

19   aid of execution, that implies that they have wrongfully

20   received the money.

21          THE COURT:  It may imply many potential

22   things, I have no idea, but I can clarify my ruling, I

23   have no problem, and I intend to do so today.

24          So, anything else?

25          MR. SHRAIBERG:  This would be something that

1   we would want to brief, if that's going to be changed from

2   what we thought the ruling was yesterday.

3                    THE COURT:  Okay.  Well, I suppose you can

4   seek rehearing, but at the end of the day these

5   depositions have been set -- or there has been an effort

6   to set these depositions for many months, and they are

7   going forward as scheduled.

8                    So, Ms. Maimin, anything else from you

9   before I rule?

10                   MS. MAIMIN:  No, your Honor.  Thank you.

11                   THE COURT:  All right.  So, this is my

12  ruling now, and you all will have to live with this ruling

13  with respect to the depositions of Mr. and Mrs. Owoc that

14  are currently scheduled, and to be scheduled.

15                   The Court has before it the Committee's

16  motion to compel Rule 2004 testimony from Megan Owoc.

17  Mrs. Owoc -- and by the way, this also equally applies to

18  Jack Owoc.

19                   Mrs. Owoc is the wife of Jack Owoc, the

20  debtors' founder, sole shareholder, and former CEO.  For

21  more than a decade Mrs. Owoc was the debtors' senior vice

22  president of marketing.

23                   Over the years the Owocs, together, have

24  allegedly received more than $100 million in transfers

25  from the debtors.  For example, between 2019 and 2021,

1    Mr. Owoc allegedly received $110 million in distributions.

2    Between 2018 and '20 he allegedly received $30 million in

3    salary.  Mrs. Owoc also allegedly received non-salary

4    distributions that were solely authorized by Mr. Owoc.

5                    So the Committee would like to examine

6    Mrs. Owoc regarding a number of matters, including

7    transfers she and her husband received from the debtors.

8                    The Committee first subpoenaed Mrs. Owoc for

9    a Rule 2004 Exam on January 26, 2023.  The Committee's

10   subpoena sought production of 30 categories of documents,

11   three are argued to be relevant here.

12                   Request 8, all documents, including any

13   communications, relating to real and/or personal property

14   in your use and/or possession, for which the debtors

15   participated in, or funded, full or in part, the

16   acquisition transaction.

17                   Request 9, all documents and communications,

18   including but not limited to communications and/or bank

19   statements sufficient to show each distribution received

20   by you from any of the debtors.

21                   Request 13, all documents, including any

22   communications regarding the use of any and all

23   distributions from the debtor entities to you or your

24   family members during the relevant time period.

25                   Mrs. Owoc never objected to the subpoena.

Page 34

1    Instead, she represented that she had no documents

2    responsive to those requests.

3              On May 10th, 2023, Mrs. Owoc finally set her

4    -- sat for Rule 2004 Exam.  During the exam the Committee

5    sought to examine her regarding what it described as her

6    personal finances.  In each instance Mrs. Owoc objected

7    that the questions were outside of the scope of Rule 2004,

8    and a violation of her right to privacy under the Florida

9    Constitution.

10              The Committee now asks the Court to compel

11   Mrs. Owoc to answer questions regarding her personal

12   finances.

13              As a threshold matter the Court must address

14   a waiver argument.  The Committee contends that Mrs. Owoc

15   has waived any objections to questions about her personal

16   finances because she failed to object to the Committee's

17   Rule 2004 subpoena.

18              Generally, a non-party's failure to file

19   written objections to a subpoena within the applicable

20   timeframe results in waiver of the right to object to

21   enforcement of a subpoena, PDV USA, Inc. versus

22   Communication Solutions, 2022 Westlaw 19693817, Southern

23   District of Florida, 2022.

24              Because Mrs. Owoc failed to object to the

25   subpoena, she has waived her objections to the Committee's

Page 35

1    subpoena, but that waiver is not absolute.

2                    In some circumstances courts have allowed an

3    untimely objection to a subpoena for good cause where the

4    subpoena is overbroad in terms of -- in that it goes

5    beyond the boundaries of fair discovery, In Re:  Parikh,

6    P-a-r-i-k-h, 397 BR 518, Bankruptcy, Eastern District of

7    New York, 2008, citing Moon versus SCP Pool Corp., 232 FRD

8    633, District of California 2005, and American Electric

9    Power Company verus United States, 191 FRD 132, Southern

10   District of Ohio 1999.

11                   Rule 2004 authorizes the examination of any

12   person regarding any matter relating to the acts, conduct

13   and/or property, or to the liabilities and financial

14   condition of the debtor, or to any matter which may affect

15   the administration of the debtor's estate, or to the

16   debtor's right to a discharge.

17                   Court after court has recognized that the

18   scope of a Rule 2004 Examination is exceptionally broad,

19   In Re:  Gaby (phonetic), 851 Federal Appendix 996, 1004

20   Note 6, 11th Circuit 2021, indeed the scope of Rule 2004

21   has been compared to a fishing expedition, also citing to

22   that case.

23                   So long as the examination relates to the

24   administration of the debtor's estate, it is permissible

25   generally under Rule 2004.

1          Hold on for one minute.  You all have to let

2    me take a nap before you file your next emergency motion,

3    okay, please?

4          Generally, a Rule 2004 allows investigation

5    into the debtor's assets.  Here that investigation is said

6    to intend to determine the funds or assets transferred to

7    the Owocs, and then to follow those assets to subsequent

8    transferees so as to discover whether the debtors' estates

9    may have causes of action, including avoidance actions,

10   against the Owocs and subsequent transferees.  As a

11   general matter, that may necessarily include discovery in

12   what has been described as the Owocs' personal finances.

13         Here, the Committee's examination of

14   Mrs. Owoc's personal finances does relate to the

15   administration of the estate at some level.  For one

16   thing, questions about distributions that Mrs. Owoc and/or

17   her husband received from the debtors are unquestionably

18   relevant to identifying potential avoidance actions, even

19   Mrs. Owoc concedes that point.

20         The real fight here is over whether the

21   Committee had asked Mrs. Owoc about what she did with the

22   distributions she received.  Mrs. Owoc contends those

23   questions crossed the line into impermissible postjudgment

24   discovery in aid of execution.  The Court disagrees.

25         For starters, Rule 2004 plainly authorizes

Page 37

1    examinations regarding the debtor's financial condition.

2    It appears Mrs. Owoc has testified that Mr. Owoc and Bang

3    Energy have always been one and the same.

4                    Given that, questions about the Owocs'

5    personal finances are, in fact, questions about the

6    debtors' financial condition.

7                    Putting that aside for a moment, under

8    Bankruptcy Code Section 550, a trustee or a

9    debtor-in-possession can recover an avoidable transfer

10   from the initial transferee of such transfer, or any

11   immediate or mediate transferee of such initial transfer,

12   take a classic example, it is often the case that a

13   corporate debtor will make distributions to an individual,

14   say an officer, director, or shareholder of the company,

15   who, in turn, uses the money to pay, for example, a large

16   American Express bill.

17                    There is no question that in that example

18   information about a transfer from the individual to

19   American Express is relevant to the administration of the

20   estate because it would identify a person from whom the

21   trustee or debtor-in-possession could recover if the

22   initial transfer to the individual were avoidable.

23                    Take another example, monies transferred to

24   the Owocs, which the Owocs then transferred into a trust,

25   or into real estate, or into some other asset or entity

1    would likewise be discoverable in that it may reveal a

2    subsequent transferee against who the (sound cut out)

3    cause of action.

4              So (sound cut out) the Committee can

5    investigate whether potential transfers from the debtor to

6    Mrs. Owoc, her family, or companies she owns or controls,

7    or they own and control, are fraudulent or otherwise

8    avoidable, and it can likewise investigate whether

9    Mrs. Owoc, her family, or companies she owns or controls

10   transferred funds to third parties who may be liable to

11   the estate, meaning funds from the debtor.  The debtor

12   transferring funds to the Owocs, or their family members,

13   or companies they control, discovery can be sought on

14   where those funds may have been transferred.

15             Taken to its logical conclusions,

16   Mrs. Owoc's position that any discovery of potential

17   subsequent transferees is outside the scope of a

18   Rule 2004, would require the debtors to first sue

19   Mrs. Owoc, obtain a judgment against her for fraudulent

20   transfers, and then seek discovery to discover potential

21   subsequent transferees who may be liable to the estate

22   under Bankruptcy Code Section 550.

23             Mrs. Owoc has offered no authority for that

24   proposition, and it appears contrary to existing law.  For

25   example, In Re:  Defoor Center, the court ruled that

1    Rule 2004 Examinations are meant to be used to obtain

2    prelaminarly information needed to file an adversary

3    proceeding, 634 BR 630 Bankruptcy, Middle District of

4    Florida 2021.

5             Thus, the Committee can examine Mrs. Owoc

6    regarding her -- and Mr. Owoc, regarding their finances,

7    to the extent necessary to discover potential Chapter V

8    causes of action, including potential fraudulent transfer

9    actions against initial transferees and subsequent

10   transferees.

11            Article 1, Section 23 of the Florida

12   Constitution guarantees that, quote, every natural person

13   has the right to be let alone, and free from governmental

14   intrusion into a person's private life.

15            The Court is unaware of a single case

16   holding that Florida's constitutional right to privacy

17   bars Rule 2004 discovery, and Ms. Owoc has cited no such

18   authority.  The only authority cited by Mrs. Owoc is

19   Lombardo (phonetic) versus GEICO, 2017 Westlaw 3113410,

20   Northern District of Florida, February 23rd 2017.

21            There an insured, Lombardo, sued his

22   insurer, GEICO, in federal District Court for bad faith

23   for failing to fully investigate and settle a claim within

24   policy limits.

25            During the action Lombardo sought discovery

1  from GEICO relating to financial information for the

2  company's employees.  GEICO objected.

3                    In ruling on the discovery dispute, the

4  District Court explained that, quote, Florida courts have

5  repeatedly held that private, individual financial

6  information is not discoverable when there is no financial

7  issue pending in the case to which the discovery applies,

8  end quote.

9                    The court went on to explain that, quote,

10 given that private individuals have a constitutionally

11 guaranteed right to privacy, disclosure of personal

12 financial information may cause irreparable harm to a

13 person to disclose it in a case in which the information

14 is not relevant, end quote.

15                    Neither of those unremarkable propositions

16 are relevant here.  Unlike in Lombardo, Mrs. Owoc's

17 financial condition is relevant, and at least one Florida

18 court, 2020 -- I'm sorry, 2245 Venetian Court Building 4,

19 Inc. versus Harrison, 149 So.3d 1176, Florida 2nd DCA

20 2014, has overruled the objection under the constitutional

21 right to privacy with respect to discovery into potential

22 fraudulent transfers.

23                    It appears that during her

24 Rule 2004 Examination Mrs. Owoc raised the spousal

25 privilege in response to questions about communications

Page 41

1   she held with Mr. Owoc regarding certain business

2   decisions he made while he was the debtors' CEO.

3            It is true that federal common law

4   recognizing a marital privilege to protect the integrity

5   of marriages, and ensure that spouses freely communicate

6   with one another.

7            Numerous courts, however, have recognized an

8   exception to state and federal marital privileges for

9   business communications, see Veracities PBC versus Strand,

10  602 F.Supp 3rd 1354, District of Oregon 2022.  The court

11  has identified many cases -- this is a quote from that

12  case, the court has identified many cases applying the law

13  of various states, and holding that business

14  communications are not subject to marital privilege.

15           The rationale behind such exceptions is that

16  the fact that the communication is about business shows it

17  was not intended to be confidential.

18           This Court agrees, communications between

19  Mrs. Owoc and Mr. Owoc regarding businesses decisions he

20  made as CEO would not have been intended to be

21  confidential and, therefore, would not be protected under

22  the marital privilege.

23           So, with that guidance, I bid you all good

24  luck with these depositions, but that's my ruling, and it

25  applies to both depositions, or both 2004 Examinations.

1    MS. MAIMIN:  Your Honor, in order to avoid

2    any further litigation, the Court had ordered that these

3    depositions take place by the middle of the month.  We

4    just simply request that the Court order that these --

5    that Ms. Owoc sit next week, which might go past the

6    middle of the month, but we don't want it to go past next

7    week, and we don't want to have to be back before

8    your Honor asking for that relief again.

9    THE COURT:  All right.  Mr. Shraiberg.

10   MR. SHRAIBERG:  Your Honor, we have two

11   depos set for next week, Monday and Wednesday.  It can't

12   be the following Monday or Tuesday, just from all people's

13   time perspective?

14   MS. MAIMIN:  Not from -- we have our duties

15   to our clients, and there is no reason for any further

16   delay.  People can do more than two depositions in a week,

17   it happens all the time.

18   THE COURT:  All right.  So, the Court will

19   require that Ms. Owoc sit for deposition on a date that

20   hopefully the parties will agree to prior to -- on or

21   before May 23rd, that gives a bit more time, but that's

22   the deadline that these dep -- that she will need to be

23   sitting for depo, to continue her 2004.

24   Okay.  So, Ms. Maimin, please get me an

25   order granting your motion for the reasons stated, and to

1    the extent stated, and requiring that Ms. Owoc have her

2    continued 2004 Examination on or before that Tuesday,

3    May 23rd.

4                   MS. MAIMIN:  Very well, your Honor.  Thank

5    you.

6                   THE COURT:  Okay.  I don't know, am I

7    reserving anything?  There is no -- I don't think you

8    sought sanctions, did you?

9                   MS. MAIMIN:  Not this time.

10                  THE COURT:  Okay.  All right.  I just wanted

11   to make sure there is no reservation necessary.

12                  All right.  The next matter, as I understand

13   it, is in the Vital Pharmaceuticals versus Owoc adversary,

14   23-1051.

15                  MR. GUSO:  Yes, sir.

16                  THE COURT:  Any additional appearances

17   needed in that matter?

18                  MR. GUSO:  Jordi Guso, of Berger Singerman,

19   your Honor, again on behalf of the debtors/plaintiffs.

20                  THE COURT:  Okay.

21                  MR. SHRAIBERG:  Brad Shraiberg, again, on

22   behalf of the Owocs.

23                  THE COURT:  All right.  Thank you.

24                  All right.  Mr. Guso, I have read the

25   motion, but go ahead and make your presentation.

Page 44

1              MR. GUSO:  Sure, Judge.  Thank you.

2              This is a motion to compel the posting of a

3    corrective statement, your Honor.  That corrective

4    statement is mandated by the preliminary -- excuse me,

5    permanent injunction entered by the United States District

6    Court for the Central District of California on

7    April 12th, 2023, in the case commenced by Monster Energy

8    Company against Vital Pharmaceuticals, Inc. and Mr. Owoc.

9              The preliminary -- excuse me, the permanent

10   injunction, your Honor, is an exhibit to our motion, it's

11   at Exhibit A, starting at Page 9 of 37, and the corrective

12   statement itself, your Honor, is found at Page 20 of 29 of

13   the permanent injunction.  My ECF stamping on my copy,

14   your Honor, is double stamped from the District Court and

15   from this Court, so I can't read what --

16              THE COURT:  No, I have it.

17              MR. GUSO:  All right.

18              THE COURT:  It's the paragraph that says in

19   September 2022 a jury issued a unanimous verdict, blah,

20   blah, blah.

21              MR. GUSO:  Yes, sir, correct, your Honor,

22   and the debtors --

23              THE COURT:  I have it.

24              MR. GUSO:  The debtors have complied with

25   the permanent injunction by posting the corrective

Page 45

1    statement on their website, as well as all of their social

2    media accounts.

3                    Your Honor, reading the mandate

4    conservatively on the prior page, it says, within 60 days

5    of the issuance of this permanent injunction, for a period

6    of one year.

7                    We take that to mean, your Honor that we

8    have to post within 60 days, and make -- have that

9    corrective statement posted for that period of time within

10   that first 60 days, which is what brings --

11                   THE COURT:  When is that sixtieth day?

12                   MR. GUSO:  That sixtieth day is June 11th,

13   your Honor.

14                   The confusion stems from the fact that -- if

15   you bear with me one second.  That's where I was going.

16   Thank you.

17                   Your Honor, actually if I can direct the

18   Court -- thank you, Mr. Shraiberg -- to Page 26 of 29, on

19   the bottom, at Paragraph 5, it says "within 60 days of the

20   issuance of this permanent injunction, for a period of one

21   month, the defendants must".

22                   So, your Honor, a conservative reading of

23   that language would mean that the one-month period has to

24   run within the 60 days, so really that the debtors have

25   30 days from the date of the order within which to post

Page 46

1    for a period of 30 continuous days.

2              THE COURT:  Hold on, I need to absorb that

3    for a second.  Say that one more time.

4              MR. GUSO:  Sure.

5              THE COURT:  I'm looking at it, it says --

6    I'm sorry, what page is it again, 26?

7              MR. GUSO:  26 of 29, Paragraph 5, within

8    60 days of this issuance of this -- the issuance of this

9    permanent inunction, for a period of one month, defendants

10   must post.

11             THE COURT:  So, that doesn't mean that you

12   have to post it within 60, and has to sit there for

13   30 days?

14             MR. GUSO:  From our way of thinking,

15   your Honor, it would if it said, within 60 days of the

16   issuance of this permanent injunction, for a period of one

17   month thereafter defendants shall post, but the thereafter

18   is missing.

19             So a conservative reading of this order

20   could mean that within 60 days, and for a period of

21   30 days within that 60-day period, the debtors are

22   required to post.  That's what brings us before the Court,

23   your Honor.

24             THE COURT:  All right.  Well, I mean, you

25   know, I'm not here to interpret that ruling, per se.

Page 47

1  That's your and the Owocs' concern.  The debtor and the

2  Owocs are both -- or Mr. Owoc, are both subject matter of

3  the permanent injunction, correct?

4                    MR. GUSO:  Correct, Judge.  The reason we're

5  here is, when we were here last on May 1st, the Court

6  extended the TRO in the adversary proceeding, but

7  your Honor's ruling was that neither the debtors nor the

8  Owocs could post during the extended TRO period.  So we're

9  asking the Court's permission to make the post on the CEO

10 social media account.

11                    THE COURT:  And this is the first I'm

12 hearing of the California court's permanent injunction.  I

13 had not heard that before --

14                    MR. GUSO:  Yes, sir.

15                    THE COURT:  -- is that right?

16                    MR. GUSO:  Only in terms of disclosures made

17 by counsel at the podium, your Honor.  Quarles & Brady may

18 have mentioned it during the hearing on its fee

19 application.  I know I've mentioned it once before in a

20 virtual hearing, but certainly no substantive discussion

21 about the ruling itself.

22                    THE COURT:  And no one raised the issue with

23 respect to my rulings on the non-posting or inability to

24 post?

25                    MR. GUSO:  Correct, your Honor, we did not.

1           THE COURT:  Okay.  I just want to make sure
2    I did not miss something here.
3           MR. GUSO:  No, sir.
4           THE COURT:  Because the last thing I would
5    want to do is do something that -- enter an order that
6    prevents either of the parties, or any of the parties from
7    complying with the California District Court's permanent
8    inunction, and that was not my intention.
9           MR. GUSO:  Yes, sir.
10          THE COURT:  Okay.
11          MR. SHRAIBERG:  Your Honor, with regard to
12   these three accounts, we're asking for a little more time.
13   The deadline, we agree with Mr. Guso's calculation, that
14   the 60-day period ends June 11th, but we read it how I
15   think your initial reaction was.
16          THE COURT:  Why are you asking me?  Go to
17   the California court, don't ask me.
18          MR. SHRAIBERG:  Well, that's a great segue,
19   we agree with you.  I think -- well, what we're doing is
20   we, in addition to -- well, why we need more time is
21   because we're interviewing appellate lawyers in California
22   now, and we are --
23          THE COURT:  Mr. Shraiberg, that's not
24   relevant to me.
25          MR. SHRAIBERG:  Okay.

```
 1                    THE COURT:  You can't ask me for more time
 2   to comply the California District Court's permanent
 3   injunction.
 4                    MR. SHRAIBERG:  And we're not.
 5                    THE COURT:  I cannot -- I am not doing that.
 6                    MR. SHRAIBERG:  We're not.  I apologize if
 7   I'm confusing, if I'm not being clear.  We're not asking
 8   for --
 9                    THE COURT:  Then what do you want more time
10   for from me?
11                    MR. SHRAIBERG:  We believe that the reading
12   -- I think the debtor is wanting the Owocs to be compelled
13   to put this blurb on the three, what we call the Owoc
14   accounts.
15                    THE COURT:  No, it's a motion to allow.  I'm
16   not going there, okay?
17                    MR. SHRAIBERG:  Okay.
18                    THE COURT:  My ruling, if at all, would be
19   very simple, it would be that no order of mine shall be
20   interpreted by any party to prevent compliance with the
21   permanent injunction pursuant to the permanent
22   injunction's terms.
23                    You all decide what the permanent injunction
24   terms are and when you have to post, and if you're wrong,
25   then you would have the wrath of the California District
```

Page 50

1  Court, and so that's your call.  I have nothing to do with

2  that, nor am I going to get involved in that.

3          My only ruling here, which I assume would

4  not be objectionable by any party, is that none of my

5  rulings shall inhibit -- it's a clarification, that none

6  of my prior rulings shall inhibit or prevent either party

7  from complying with the California District Court's

8  permanent injunction.

9          Does anyone disagree with that?

10          MR. SHRAIBERG:  No, your Honor.

11          MR. GUSO:  No, sir.

12          THE COURT:  Okay, and is that the clarity

13  you're looking for, Mr. Guso, by your motion?

14          MR. GUSO:  Your Honor, the direct answer is,

15  yes, we will again renew the request to post.  The Owocs

16  can either accede to our request or not.

17          We have demonstrated that the debtors have

18  attempted in good faith to comply with the permanent

19  injunction, and the consequences of that, your Honor, as

20  your Honor observes, will be adjudicated by the District

21  Court in California.

22          THE COURT:  All right.  Mr. Shraiberg, any

23  issue with that?

24          MR. SHRAIBERG:  No, your Honor.

25          THE COURT:  Okay.  Ms. Quartarolo, I see

Page 51

1    you.  Are you wishing to chime in here?

2                    MS. QUARTAROLO:  Yes, I just have one

3    clarification, your Honor.  Amy Quartarolo on behalf of

4    the debtors.

5                    To be clear, we had been before you last

6    week.  We still do not have access to the Twitter account

7    or the --

8                    THE COURT:  I'm sorry, you're cutting in and

9    out a bit, so maybe get closer to your mic.

10                    MS. QUARTAROLO:  Sure.

11                    THE COURT:  You still -- I think what I

12    gathered was that you still don't have access to the

13    Twitter account --

14                    MS. QUARTAROLO:  Or the --

15                    THE COURT:  -- is that what I heard?

16                    MS. QUARTAROLO:  -- TikTok account.

17                    THE COURT:  Or the TikTok account?

18                    MS. QUARTAROLO:  Correct.  So --

19                    THE COURT:  Why is that?

20                    MS. QUARTAROLO:  Because despite our best

21    efforts to work with Mr. Shraiberg, we have not been able

22    to overcome the two-factor authentication, and I'm not

23    sure if it is a refusal on behalf of his client or

24    otherwise, and for TikTok we need them to change the

25    password, and then provide us with the password, because

1    they have said that they don't have the password anymore.

2              So, in order to post the corrective

3    statement to each of the three CEO accounts, we're asking

4    this Court not only to clarify, as your Honor has

5    helpfully done, but also to make clear that the Owocs,

6    through their counsel, are to facilitate our access to the

7    accounts to do so.

8              THE COURT:  All right.  I understand.

9              Mr. Shraiberg --

10             MR. SHRAIBERG:  I believe --

11             THE COURT:  -- is there any reason, is there

12   any reason for the Owocs to object to the debtor, on the

13   CEO accounts, simply posting the required statement as

14   required by the preliminary injunction, do you have any

15   problem with that?

16             MR. SHRAIBERG:  I wasn't expecting that

17   question.

18             The answer is as of now, yes, because we're

19   filing a motion --

20             THE COURT:  As of any time.

21             MR. SHRAIBERG:  Oh, no, but before

22   June 11th, if a motion for stay pending appeal is denied,

23   or if June 11th comes first, then there is no objection,

24   we need to honor that by June 11th.

25             THE COURT:  So, your view is not that they

1    can't post it, it's that they can't post it until,

2    according to your interpretation of it, the date comes and

3    goes, which is the June 11th date?

4                    MR. SHRAIBERG:  No, no, no, no.  It has to

5    be done prior to June -- or June 11th or before, but we

6    are planning on filing a motion for stay pending appeal,

7    and we don't want -- we want to have that hearing, that

8    motion heard before we post this on the three accounts

9    that we believe are owned by the Owocs, or Mr. Owoc.

10                   THE COURT:  What if I were to decide that

11   the debtors owned these accounts, wouldn't you have put

12   them in a position, if you're wrong in your interpretation

13   of the preliminary injunction, wouldn't you have put them

14   in a position of having violated the permanent injunction?

15                   MR. SHRAIBERG:  Potentially, but we don't --

16   you know, the answer is potentially, but we think that the

17   order is clear and unambiguous, that it says within

18   60 days you need to post it for 30 days.

19                   THE COURT:  Okay.  All right.  Tell me why

20   it is that you have not provided the information necessary

21   for the debtors pursuant to my order to have access to the

22   accounts.

23                   MR. SHRAIBERG:  They have changed the

24   password for two of them.  The TikTok account is the one

25   that's at issue, that we've lost the password for, and

1    it's --

2                    THE COURT:  Okay.  Listen, Mr. Shraiberg, I

3    didn't wake up, you know, yesterday morning.  When

4    somebody forgets their password, there is a little button

5    that says forget password, question mark, and you press

6    it, and you can reset the password.

7                    Are you telling me that the Owocs have sons

8    who are -- who profess to be experts at this, don't know

9    how to do that?

10                   MR. SHRAIBERG:  No.  According to the

11   clients, the email that is the -- that is attached to that

12   account is a Bang Energy email that does not go -- we've

13   been shut out of the system, it goes to the debtor now.

14                   THE COURT:  So, you're telling me that the

15   two parties who have -- certainly Bang Energy would have

16   access to that email, would it not, the debtor?

17                   MR. SHRAIBERG:  Correct, I guess, yes.

18                   THE COURT:  So you're telling me that two

19   smart people can't get on a phone call with each other,

20   with lawyers sitting there, to figure out how to get

21   access to these accounts, including all of the emails that

22   might be necessary to get that accomplished, is that what

23   you're telling me?

24                   MR. SHRAIBERG:  I will tell you,

25   unfortunately, it has not happened to date.

1          THE COURT:  Well, it better happen, it

2  better happen, and it better happen very quickly, by

3  tomorrow.

4          MR. SHRAIBERG:  Will do, your Honor.

5          THE COURT:  Mr. Shraiberg, I've raised my

6  voice almost never as a judge in the last two and a half

7  years.  I am raising my voice because I am truly done with

8  this, really done.  The next order that comes from me on

9  an order compelling, or an order for contempt is going to

10  be far worse than any prior order I have entered if this

11  does not happen.

12          I expect you, as counsel for Mr. Owoc,

13  Mr. Owoc, Mrs. Owoc, if Mrs. Owoc is necessary, and

14  representatives from the debtor, including counsel for the

15  debtor, to get on a phone call, on a conference call, in

16  front of their computers, and do whatever is necessary to

17  get to change the passwords as necessary, and give the

18  debtor control over these accounts, is that understood?

19          MR. SHRAIBERG:  Understood, your Honor.

20          THE COURT:  And that shall occur by the end

21  of this week, meaning by the close of business tomorrow,

22  understood?

23          MR. SHRAIBERG:  Understood, your Honor.

24          THE COURT:  Mr. Guso, do you understand?

25          MR. GUSO:  I do, your Honor.  Thank you.

1              THE COURT:  And you will make your people
2    available for that purpose, correct?
3              MR. GUSO:  Absolutely, your Honor.
4              THE COURT:  Okay.  That doesn't change my
5    ruling that nothing is to be posted by either party for
6    the period of time in which the TRO is in existence.  The
7    only thing that can be posted is the statement required by
8    the California District Court, and I am not going to rule
9    it is required to occur.
10             What I am going to say is that if either
11   party obstructs the placement of that statement on these
12   three accounts, and is found to be wrong for having done
13   so, they will be subject to the contempt of court by the
14   California court, I assume, in violating a permanent
15   injunction, and by this Court, if that obstruction
16   violates my order.  Is that understood?
17             MR. GUSO:  Yes, sir.
18             MR. SHRAIBERG:  Yes, sir, your Honor.
19             THE COURT:  I'm not going to be in the
20   business of interpreting the California preliminary
21   injunction, okay?  That's for the California court, not
22   me.
23             The only thing I'm ruling is that nothing
24   that I have ordered shall be interpreted to mean that
25   either party, neither party can comply with the California

Page 57

1    permanent injunction pursuant to its terms.

2              MR. GUSO:  Yes, sir.

3              THE COURT:  Understood?

4              MR. SHRAIBERG:  Yes, your Honor.

5              MR. GUSO:  Yes, your Honor.

6              THE COURT:  And this is my ruling, the Court

7    has before it the debtors' emergency motion seeking

8    authorization to post corrective statement to what has

9    been referred to as the CEO social media accounts.

10   Prepetition the debtor and Jack Owoc were sued by Monster

11   in California federal court for, among other things, false

12   advertising under the Lanham Act.  That case went to trial

13   in August 2022, and the jury found in favor of Monster.

14             To remedy the Lanham Act violation, the

15   California federal court issued a permanent injunction on

16   April 12th, 2023.  That permanent injunction requires the

17   defendants, i.e., the debtors and Mr. Owoc, to post the

18   following corrective statement for one month on all --

19   well, the following corrective statement, timing and

20   duration is as you all may interpret it, but I wouldn't

21   advise you to be wrong in how you interpret it, the

22   statement states as follows, in September 2022 a jury

23   issued a unanimous verdict finding that Vital

24   Pharmaceuticals, Inc., d/b/a Bang Energy VPX, and chief

25   executor officer John H. "Jack" Owoc willfully and

1    deliberately engaged in false advertising by claiming that

2    the Bang Energy drink contains creatine, contains super

3    creatine, and provides the benefits of creatine.

4                    The United States District Court for the

5    Central District of California has permanently enjoined

6    VPX and Mr. Owoc from selling, offering to sell,

7    marketing, promoting, or advertising Bang as containing

8    creatine, as containing super creatine, or as providing

9    the benefits of creatine.

10                   Two weeks after the California federal court

11   issued its injunction the Court entered an order requiring

12   Mr. Owoc to do whatever was necessary to enable the

13   debtors, who now have the pass -- who should now have the

14   passwords to the CEO accounts, to gain access to the CEO

15   accounts, and enjoining both the debtors and the Owocs

16   from posting any content to the CEO accounts.

17                   At the time it issued its May 1 ruling, the

18   Court was unaware of the California federal court

19   permanent injunction, and does not recall any party

20   bringing this to the Court's attention with respect to its

21   ruling.  This Court's May 1 ruling could be interpreted as

22   prohibiting the parties from complying with the California

23   federal court injunction.

24                   Putting that aside, the debtor complains it

25   cannot comply with the California federal court

Page 59

1    injunction, because although this Court previously

2    required Mr. Owoc to turn over the passwords to the CEO

3    accounts to the debtors, Mr. Owoc still has not cooperated

4    with them to enable them to gain access to the accounts.

5                This Court's May 1 ruling should not be

6    interpreted to prohibit either party from posting the

7    corrective statement required by the California federal

8    court and permanent injunction.

9                The parties agreed to stay relief, and this

10   Court, of course, is not an appellate court that sits in

11   review of the District Court's ruling.

12               Thus, to the extent the Court's ruling does

13   so, this Court will now clarify that any prior ruling

14   prohibiting posting is amended to provide that the posting

15   required by the preliminary injunction should be permitted

16   pursuant to the terms of that preliminary injunction.

17               To be clear, neither party should be

18   prevented, whether by this Court's prior rulings or

19   otherwise, from posting the corrective statement.  The

20   debtors are willing and anxious to comply with the

21   California federal court injunction, even though the

22   corrective statement is not exactly good for business.

23               Unfortunately, the only thing standing in

24   the way of the debtors complying with the federal court

25   injunction is Mr. Owoc.  It appears Mr. Owoc still has not

Page 60

1    complied with this Court's May 1 ruling, requiring him to

2    do whatever is necessary to enable the debtors to gain

3    access to the CEO accounts.

4                    Thus, this Court is ordering Mr. Owoc, once

5    again, to do whatever is necessary to enable the debtors

6    to access the CEO account so that they can post the

7    corrective statements in accordance with the California

8    federal court injunction.

9                    Enforcement of the California federal court

10   injunction, of course, is up to the California court, not

11   this Court.

12                   But the Court will caution Mr. Owoc that if

13   he fails to do whatever is necessary to enable the debtors

14   to access the CEO accounts so that they can post the

15   corrective statement, he may not only be in contempt of

16   the California federal court's injunction, he may be in

17   violation of this Court's ruling today, and its ruling on

18   May 1.

19                   So, to be clear, by tomorrow at 5:00 p.m.,

20   Eastern standard time, or Eastern daylight time, Mr. Owoc,

21   along with his counsel, shall have a conference call, or

22   Zoom call, or whatever other means are necessary, with the

23   debtor and the debtor's lawyer, and sit there and figure

24   out precisely how to give control of the CEO accounts to

25   the debtor pursuant to my prior order.

1                    Mr. Guso, please get me an order consistent

2     with what I've just ruled, for the reasons stated on the

3     record.

4                    MR. GUSO:  Yes, sir, I shall, your Honor.

5                    THE COURT:  All right.  Anything else in the

6     Vital matter?

7                    MR. GUSO:  Nothing from the debtors,

8     your Honor.

9                    MR. SHRAIBERG:  Nothing from the Owocs,

10    your Honor.

11                   THE COURT:  All right.  Thank you all.

12

13

14

15                   (Thereupon, the hearing was concluded.)

16

17

18

19

20

21

22

23

24

25

Page 62

1

2

3                           CERTIFICATION

4

5    STATE OF FLORIDA        :

6    COUNTY OF MIAMI-DADE   :

7

8              I, Cheryl L. Jenkins, RPR, RMR, Shorthand

9    Reporter and Notary Public in and for the State of Florida

10   at Large, do hereby certify that the foregoing proceedings

11   were transcribed by me from a digital recording held on

12   the date and from the place as stated in the caption

13   hereto on Page 1 to the best of my ability.

14              WITNESS my hand this 15th day of May, 2023.

15

16

17   _____

18        CHERYL L. JENKINS, RPR, RMR

19        Court Reporter and Notary Public
          in and for the State of Florida at Large
20             Commission #HH 170910
               December 27, 2025

21

22

23

24

25