UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al*., | Case No.: 22-17842-PDR |
| Debtors.[1] | (Jointly Administered) |
| _____/ | |

**JOINT EMERGENCY MOTION FOR AN ORDER
(I) HOLDING JOHN H. OWOC AND MEGAN E. OWOC IN CONTEMPT
OF COURT, AND (II) IMPOSING SANCTIONS**
**(Expedited Hearing Requested)**

**Basis for Request for Expedited Hearing**

**The Debtors and the Official Committee of Unsecured Creditors respectfully request the Court conduct an expedited hearing on this Motion on June 22, 2023, or as soon thereafter as the Court's schedule permits because the Owocs and their counsel have admitted to having possession of, accessing, and reviewing company property and documents.**

**PRELIMINARY STATEMENT**

Debtors Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev LLC, and Vital Pharmaceuticals International Sales, Inc. (collectively, the "Debtors") in the above-captioned chapter 11 cases jointly with the Official Committee of Unsecured Creditors (the "Committee") seek emergency relief from the Court to remedy egregious and alarming discovery

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("Vital Pharmaceuticals") (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC ("Quash Seltzer") (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

violations by the Debtors' former Chief Executive Officer, John H. Owoc, and his wife, the Debtors' former Senior Vice President of Marketing, Megan E. Owoc (collectively, the "Owocs").

Because the Owocs have, without explanation, failed to comply with their discovery obligations and repeatedly made misrepresentations, both to the Court (through counsel) and during Rule 2004 examinations, the Debtors and the Committee jointly seek an emergency hearing on June 22, 2023, or as soon thereafter as the Court's schedule accommodates, on their request for an order holding the Owocs in contempt and imposing appropriate sanctions, including compelling the Owocs immediately to identify and turn over all company-purchased devices and company-related documents or information in their possession and prohibiting the Owocs from accessing, using, or disseminating any Company-related information that they improperly retained following their termination.

## **BACKGROUND**

### I.    **THE OWOCS ARE TERMINATED BY THE DEBTORS FOR CAUSE.**

On March 9, 2023, the Debtors' boards of directors and managers (collectively, the "Board") terminated Jack Owoc from his role as Chief Executive Officer and Chief Science Officer and removed him from the Debtors' Board, and also terminated Meg Liz Owoc from her employment with the Debtors as Senior Vice President of Marketing.  That same day, the Debtors sent letters to the Owocs confirming their termination and requesting that they each "return all of the Debtors' property, including identification cards or badges, access codes or devices, keys, mobile phones, computers, credit cards, physical files and any other property and information in [their] possess."  *See* **Exhibits 1 & 2**.  Neither of the Owocs returned any devices, documents, or other property following their termination.

While the Debtors moved swiftly to suspend the Owocs' access to the Company's servers upon their termination, Mr. Owoc was able to gain access to a legacy email domain, from which

12217510-2

he sent an email to all Company personnel entitled "HOSTILE TAKEOVER – MEG AND JACK FIRED!"

## II.    THE OWOCS REFUSE TO RETURN COMPANY PROPERTY.

In the days following their termination, the Debtors made efforts to determine what documents, devices, and other information the Owocs may have retained following their termination.  Because Mr. Owoc, in particular, largely operated the Company from his house, the Debtors had reason to believe that he may have retained multiple electronic devices that had been purchased with Company funds and used in connection with the Debtors' business, as well as an unknown amount of Company-related information.

On March 22, 2023, the Debtors sent the Owocs' then-counsel, Mr. Justin Luna, a letter demanding that they return to the Company certain identified property that the Debtors had determined likely was in the Owocs' possession.  *See* **Exhibit 3**.  Mr. Luna never responded to the March 22 letter, and subsequently withdrew as counsel to the Owocs.

Thereafter, on March 23, 2023, the Debtors forwarded the March 22 letter to the Owocs' new counsel, Mr. Jeremy Fischer.  *See* **Exhibit 4**.  Mr. Fischer did not respond to the request, and the following day, March 24, Mr. Fischer advised that he no longer represented Mr. Owoc.  *See* **Exhibit 5**.

The Owocs subsequently retained Brad Shraiberg and Patrick Dorsey as counsel, and they entered their appearances in the Chapter 11 Cases on April 5, 2023.   ECF Nos. 1133, 1134.  On April 17, 2023, the Debtors forwarded the March 22 letter to Messrs. Shraiberg and Dorsey and requested a call to discuss.  *See* **Exhibit 6**.  Counsel to the Debtors subsequently discussed the matter with Mr. Shraiberg, who advised he would discuss with his clients.  Among other issues raised, the Debtors expressed concern over whether the Owocs would have access to any confidential Company-related information and/or documents or information protected by

Company privilege. Mr. Shraiberg eventually responded and advised that his clients would not be returning any property provided to them by the Company as they contended all such property had been a "gift."

## III. THE OWOCS MISREPRESENT THE COMPLETENESS OF THEIR DOCUMENT PRODUCTION AND FAIL TO TESTIFY TRUTHFULLY AND COMPLETELY AT THEIR RESPECTIVE DEPOSITIONS.

On or about January 26, 2023, the Committee served Rule 2004 discovery on the Owocs seeking documents and testimony. The Owocs delayed responding and producing documents as they cycled through counsel. Eventually, that delay resulted in substantial motion practice before the Court, with Messrs. Shraiberg and Dorsey serving as counsel to the Owocs. *See, e.g.*, ECF Nos. 1041, 1055, 1057, 1112, 1118, 1164. During one hearing on the Owocs' discovery delays and failures, Mr. Dorsey represented to the Court that "Mr. Owoc does not have access to work email [or] corporate documents," the Owocs had engaged "a third-party vendor," and that "Owocs have been working as hard as they can to produce documents." *See* **Exhibit 7** (April 25, 2023 Hearing Tr.) at 9:6-22, 18:23-19:8.

The Court subsequently entered several Orders compelling the Owocs to comply with the Rule 2004 discovery served. ECF Nos. 1075, 1076, 1150, 1276. The Owocs eventually produced what they represented were the only responsive documents in their possession, text messages recovered from their cell phones.[2]

The Owocs subsequently appeared for examination pursuant to Rule 2004. In response to questioning by counsel to the Debtors, Mr. Owoc testified that "[a]ll the property was [his] because

---

[2] Counsel to the Committee had previously reached out to Messrs. Shraiberg and Dorsey to confirm their understanding that the Owocs had "Debtor-provided laptops, mobile devices, physical files, and other materials in their possession" and seeking to "confirm that [they would be] searching those devices/materials for responsive documents and communications." **Exhibit 8**.

. . . of the excellent job [he] was doing."  **Exhibit 9** (J. Owoc Transcript) at 264:24-265:5.[3]  He

went on to testify:

- "Any property I have is my property,"

- "I don't have any of the debtors' property,"

- "I don't have any of the debtors' materials,"

- "I don't have anything that belongs to the debtors."

- "I have no property of VPX."

- "I have nothing in my possession that belongs [to] VPX."

- "I don't have anything that's property of the debtors, period."

*Id.* at 266:2-267:17, 269:25-271:8, 272:12-273:22, 274:15-16, 289:2-9.

Mr. Owoc went on to testify under oath that his computer "hasn't been turned on since [he]

found out [the Company] remotely shut it down," and stated that he had not provided any company

documents to his counsel in response to discovery requests because "I don't have any documents."

*Id.* at 294:12-295:22.

During her Rule 2004 examination, Mrs. Owoc similarly testified, "I don't have any

company property."  *See* **Exhibit 10** (M. Owoc Transcript) at 318:22.  In response to the question

of whether she had any company property in her possession at the time of her termination, Mrs.

Owoc testified unequivocally: "No."  *Id.* at 318:23-319:1.  Mrs. Owoc further testified that she

retained a device that she previously had used to access company information, but that she did not

"have access to company information."  *Id.* at 324:16-325:3.  Mrs. Owoc went on to confirm that

---

[3]    At the request of the Debtors the transcripts for the examinations of Mr. and Mrs. Owoc were marked as
Confidential on a provisional basis pending the Debtors review of the final transcript and review of any comments
or corrections the Owocs may make during their review of the transcripts.  The Debtors thus have filed the
transcript excerpts under seal out of an abundance of caution.  However, the Debtors do not believe that any of
the testimony cited and quoted herein is in any way confidential and thus have not sought to seal this *Emergency*
Motion.

12217510-2

she was unable to provide documents requested by the Committee because her access to documents had been cut off, and stated that she had retained only a "few" emails that she represented she "saved prior to [her] wrongful termination." *Id.* at 330:18-333:5.

## IV. THE DEBTORS ARE INFORMED THAT, CONTRARY TO THE OWOCS' NUMEROUS PRIOR REPRESENTATIONS UNDER OATH, THE OWOCS HAD RETAINED AND ACCESSED THOUSANDS OF COMPANY DOCUMENTS.

Subsequent to the Owocs' unequivocal testimony under oath, on June 13, 2023, the Debtors learned for the first time that Mr. Owoc – with the assistance of counsel – provided one or more devices to an unknown third-party vendor for purposes of extracting company documents and information. Notably, Mr. Shraiberg informed Debtors' counsel of this development only after the June 13 hearing before this Court during which the integrity of the Owocs' discovery compliance had been questioned by the Committee. The Debtors asked Mr. Shraiberg for additional information, including details around the timing of this effort to access company documents and information, who had been involved, and whether the Owocs or their counsel had accessed or reviewed any of the information extracted from the device(s). Mr. Shraiberg was unable to answer most of the Debtors' questions and indicated that he understood the Owocs' new counsel – Irwin Gilbert – had been involved and that there were over 5500 company documents extracted from the device in question.[4]

---

[4] Mr. Gilbert first filed a *Notice of Appearance* in the Chapter 11 Cases [ECF No. 1395] on May 24, 2023. On behalf of Mr. Owoc, Mr. Gilbert subsequently filed a complaint against certain members of the Debtors' Board (Broward Co. Case No. CACE-23-014222) and has sought relief from the automatic stay to name Debtor Vital Pharmaceuticals, Inc. [ECF No. 1442] as a defendant in that action. It is entirely unclear what information Mr. Gilbert or his client accessed in preparing that complaint, but the Debtors suspect that Mr. Gilbert and his client gained access to a Company-issued laptop – a device that Mr. Owoc had refused to return to the Debtors upon his termination and from which the thousands of company documents have now been extracted – for purposes of preparing the complaint filed against the Debtors' Board members.

Mr. Gilbert also filed a subpoena purportedly served on DocuSign, Inc. [ECF No. 1451] that seeks, among other things, "all documents, records, and/or files associated in any way with any digital transactions conducted by or with JOHN H. OWOC, or VITAL PHARMACEUTICALS, INC." The Debtors questioned the purpose for which such a request was being made and reached out to Mr. Gilbert to express their concerns that Mr. Gilbert and his

The Debtors subsequently sent an email to Mr. Shraiberg detailing a list of questions they had surrounding this development.  *See* **Exhibit 11**.  Recognizing that these materials were clearly property of the Company and likely included information protected by the Company's privilege, Mr. Shraiberg offered to provide the materials to the Debtors for review.  *See* **Exhibit 12**.  The Debtors followed up twice with Mr. Shraiberg in an effort to get answers to their questions – answers that should have been readily available.  Mr. Shraiberg declined to provide responses, and eventually stated that these inquiries should be directed to Mr. Gilbert.  *See* **Exhibits 13 & 14**.

Thereafter, on June 15, 2023, Mr. Gilbert emailed, again declining to provide the requested information, but confirming that the company documents extracted from the device in question were indeed being accessed and reviewed, and dismissively advising that he "need[ed] to focus on more substantive matters . . . ."[5]  **Exhibit 15**.

As of the filing of this *Emergency* Motion, the Debtors and Committee still do not have answers to any of the questions posed.

## REQUEST FOR RELIEF

Based on the facts and circumstances as set forth above, the Debtors and the Committee jointly seek an order holding the Owocs in contempt and imposing appropriate sanctions.

---

client were attempting to access confidential or even privileged Company-related documents.  The Debtors have separately moved to quash the DocuSign subpoena.

The Debtors also requested that, if he intended to participate in the Chapter 11 Cases and access any documents, then Mr. Gilbert sign the Protective Order entered by the Court [ECF No. 823].  Mr. Gilbert admitted that he had not signed the acknowledgement to the Protective Order at least as of June 12, 2023.  As of the filing of this *Emergency* Motion, Mr. Gilbert has not returned an executed acknowledgement to the Protective Order.

[5]    Mr. Gilbert suggested that there should be nothing wrong with the Owocs accessing of privileged Company files because they previously viewed them prior to their termination.  *See* Exhibit 15.  This plainly is incorrect.  *See, e.g., Hershey Co. v. Cadiz*, 2006 U.S. Dist. LEXIS 110895, *10-12 (S.D. Fla. Aug. 23, 2006) (confirming that former officers and directors are not permitted to access privileged corporate documents even if they once had access to them; "When the control of a corporation passes to new management, the authority to assert and waive the lawyer-client privilege passes as well." (internal citations omitted)).

Given the Owocs' clear and admitted failure to comply with their discovery obligations and related Orders issued by this Court, as well as their now known misrepresentations to the Court and under oath during their Rule 2004 examinations, an order holding the Owocs in civil contempt and granting sanctions is appropriate. *See In re Spanish River Plaza Realty Co., Ltd.*, 155 B.R. 249, 255-56 (Bankr. S.D. Fla. 1993) (holding party in civil contempt for violating court order); *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151, 129 S. Ct. 2195, 2205, 174 L. Ed. 2d 99 (2009) (a bankruptcy court "plainly [has] jurisdiction to interpret and enforce its own prior orders."); *see also In re A-1 Specialty Gasolines, Inc.*, 246 B.R. 445, 450-51 (Bankr. S.D. Fla. 2000) ("Bankruptcy courts have inherent power to hold parties in contempt, as well as an implied statutory power pursuant to 11 U.S.C. § 105."); *Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 96 (2d Cir. 2010) ("The statutory contempt powers given to a bankruptcy court under § 105(a) complement the inherent powers of a federal court to enforce its own orders."), *citing Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 831, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994); *In re River Ctr. Holdings LLC*, 394 B.R. 704, 711 (Bankr. S.D.N.Y. 2008) (holding that "section 105(a) plainly may be used 'to enforce and implement' earlier orders).

Under the circumstances and given the Owocs' history of failing to adhere to their discovery obligations and their willful flouting of this Court's Orders, the Debtors and Committee submit that severe sanctions are warranted.[6]  Specifically, the Debtors and Committee request that

---

[6]  The Owocs' conduct may also support a finding of criminal sanctions.  Under 18 U.S.C. § 402, "[c]ontempt of court may be punished as a criminal offense."  *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1242 (11th Cir. 2007).  Unlike civil contempt, "[c]riminal contempt . . . is punitive [and] serves to vindicate the authority of the court, and cannot be ended by any action of the contemnor.'"  *BLANCO GmbH + Co. KG v. Vlanco Indus., LLC*, 12-61580-CIV, 2022 WL 488934 (S.D. Fla. Jan. 19, 2022), *report and recommendation adopted*, 12-61580-CIV, 2022 WL 479786 (S.D. Fla. Feb. 16, 2022).  The Eleventh Circuit has explained that "[a] federal court may punish contemptuous conduct that occurs outside its presence only after giving notice of 'the essential facts constituting the charged criminal contempt,' 'request[ing] that the contempt be prosecuted by an attorney for the government,' and affording other procedural protections."  *Romero*, 480 F.3d at 1242 (citing Fed. R. Crim. P. 42); *see also United States v. Bardell*, No. 11-401, 2022 WL 16921698, at *17 (M.D. Fla. 2022).

the Owocs (i) submit to this Court declarations, signed under penalty of perjury, detailing with specificity all property that remained in their possession at the time of their termination that was either purchased with company funds and/or used in connection with company business, regardless of whether the Owocs contend that such property was a "gift," including electronic devices, mobile phones, keys, badges, documents, or any other property (the "Disputed Property"); (ii) immediately return all Disputed Property to the Debtors; and (iii) the Owocs promptly agree to sit for further depositions.  In addition, the Debtors and Committee seek compensatory sanctions in an amount to be determined based on the time spent attempting to secure compliance with the Owocs' discovery obligations, the incremental time and expense in deposing the Owocs for a second time (if needed), addressing the Owocs' failure to adhere to their discovery obligations, and drafting and prosecuting this Emergency Motion.

## CONCLUSION

For the reasons set forth above, the Debtors and the Committee respectfully request that the Court grant the relief requested herein and such other relief as the Court may deem just and proper.

---

There are three elements of criminal contempt: "(1) a lawful and reasonably specific order that (2) [a party] has violated (3) willfully." *Romero*, 480 F.3d at 1242; *see also United States v. Bernardine*, 237 F.3d 1279, 1282 (11th Cir. 2001).  In other words, "a finding of criminal contempt requires 'both a contemptuous act and a willful, contumacious, or reckless state of mind." *Bardell*, 2022 WL 16921698, at *17 (quoting *In re Joyce*, 506 F.2d 373, 378 (5th Cir. 1975)).  Willful in this context means "a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation of an order." *United States v. Baldwin*, 770 F.2d 1550, 1557-58 (11th Cir. 1985) (quoting *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 782 (9th Cir. 1983)).

Courts have frequently based criminal contempt proceedings on a party's failure to comply with orders to produce documents.  *See, e.g., Nilva v. United States*, 352 U.S. 385, 392-95 (1957) (affirming conviction for criminal contempt where party willfully disobeyed a court order to produce subpoenaed corporate records); *In re Adler, Coleman Clearing Corp.*, 06-80157-CIV, 2007 WL 9707008 (S.D. Fla. Oct. 18, 2007) ("A court may impose criminal or civil contempt charges on a person who fails to comply with a subpoena duces tecum."), *report and recommendation adopted*, 06-80157-CIV, 2007 WL 9707005 (S.D. Fla. Nov. 8, 2007).

9

Dated:   June 16, 2023
         Miami, Florida

Respectfully submitted,

*/s/ Jordi Guso*

George A. Davis (admitted *pro hac vice*)
Hugh K. Murtagh (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:   george.davis@lw.com
         hugh.murtagh@lw.com
         tj.li@lw.com
         brian.rosen@lw.com
         jon.weichselbaum@lw.com

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:   jguso@bergersingerman.com
         mniles@bergersingerman.com

               - and -

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:   andrew.sorkin@lw.com

               – and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:   whit.morley@lw.com

                    *Co-Counsel for the Debtors*

12217510-2

**LOWENSTEIN SANDLER LLP**

Jeffrey L. Cohen, Esq.
Eric Chafetz, Esq.
Rachel Maimin, Esq.
Erica G. Mannix, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: rmaimin@lowenstein.com
Email: emannix@lowenstein.com

-and-

Wayne Fang, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2502
Facsimile: (973) 597-2400
Email: wfang@lowenstein.com

**SEQUOR LAW, P.A.**

By: */s/ Leyza F. Blanco*
    Leyza F. Blanco
    Florida Bar No.: 104639
    Fernando J. Menendez
    Florida Bar No.: 0018167
    Juan J. Mendoza
    Florida Bar No.: 113587
    1111 Brickell Avenue, Suite 1250
    Miami, FL 33131
    Telephone: (305) 372-8282
    Facsimile: (305) 372-8202
    Email: lblanco@sequorlaw.com
    Email: fmenendez@sequorlaw.com
    Email: jmendoza@sequorlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

12217510-2