UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 (PDR) |
| Debtors.[1] | (Jointly Administered) |

**SUPPLEMENTAL MEMORANDUM OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF OBJECTION TO JOHN H. OWOC AND MEGAN OWOC'S *EMERGENCY* MOTION FOR PROTECTIVE ORDER REGARDING THIRD PARTY SUBPOENAS**

As directed at the June 12, 2023 hearing ("Hearing") on the *Emergency Motion for Protective Order Regarding Third Party Subpoenas* filed by John H. Owoc ("Mr. Owoc") and Megan Owoc ("Mrs. Owoc") (together, "the Owocs") [Docket No. 1449] (the "Motion"), the Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors-in-possession (the "Debtors"), by and through its undersigned counsel, submits this supplemental memorandum (the "Supplemental Memorandum") and respectfully states as follows:

### THE INDEPENDENT REVIEW TEAM AND THE PROPOSED REVIEW PROCEDURE

1.    At the Hearing, the Court held that the Committee is entitled to obtain certain of the Owocs' personal bank account information to fulfill its investigatory obligations. *See* Exhibit A, Tr. of June 12, 2023 Hearing on the Owocs' Motion to Quash, at 17:10-15 ("if you want to boil

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("VPX") (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC ("JHO") (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicom Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

down my prior ruling . . . the committee can examine Mrs. Owoc, and this applies to Mr. Owoc as well, regarding her and Mr. Owoc, regarding their finances to the extent necessary to discover potential . . . causes of action, including potential fraudulent transfer actions against initial transferees and subsequent transferees. That's basically what I ruled was, the scope of the Rule 2004 in this particular situation"). The Court has ruled that the Committee may investigate the transfers from the Debtors to the Owocs' bank accounts, or those of family members, and any subsequent transfers of those funds to insiders or other Owoc-owned or controlled accounts. *Id*. at 19:1-9. Consistent with this Court's ruling, the subpoenas to (1) Wells Fargo Bank, (2) Truist Bank, (3) Sun Credit Union, (4) Regions Bank, (5) City National Bank, (6) JPMorgan Chase Bank, N.A., and (7) Bank of America [Docket Nos. 1423-1430] (together, the "Subpoenas") seek account statements and wire transfer information for accounts to which the Debtors made transfers.[2] While the Court found that the subpoenas were appropriately served, the Court questioned the best mechanism to redact certain sensitive and personal information of the Owocs on responsive bank account statements. To that end, the Court directed the Committee and the Owocs to submit a proposed procedure for reviewing any production(s) made in response to the Subpoenas in order to ensure that the information received by the Committee is limited in scope and consistent with the Court's prior rulings regarding the Owocs' bank accounts.

2. The Committee proposes the following procedure for the review of the documents produced in response to the Subpoenas:

---

[2] The Subpoenas to Wells Fargo Bank, Truist Bank, Regions Bank, City National Bank, and Bank of America (the "Jack Owoc Bank Subpoenas") seek account statements and documentation of wire transfers for accounts held by Mr. Owoc and companies which he controls. The Subpoenas to JPMorgan Chase Bank, N.A. and Sun Credit Union (the "JWO Bank Subpoenas") seek account statements and documentation of wire transfers for accounts held by JW Owoc Enterprises.

a. The Committee will assemble a team comprised of attorneys who have not had any prior involvement in this matter and will not have any future involvement in this matter ("Independent Review Team").[3]

b. The recipients of the Subpoenas will produce relevant documents/bank statements (the "Documents") directly to the Independent Review Team.[4] The Documents will then be loaded into an electronic database and only the members of the Independent Review Team will have permission or the ability to access them.

c. Consistent with this Court's ruling, the members of the Independent Review Team will review the Documents to assess whether the transactions are relevant to the Committee's investigation of subsequent transfers of funds transferred to the Owocs, either in the form of salary or as a distribution.

d. Transactions will be considered relevant if they meet the following criteria ("Relevant Transactions")

  i. The transaction occurred between January 1, 2018 and October 10, 2022 *and* was within 90 days of a transfer from any of the Debtors' accounts to an account owned by Mr. Owoc, Mrs. Owoc, or JW Owoc Enterprises. To facilitate the identification of relevant transfers, the Committee will provide the Independent Review Team with a list of all of the transfers from Debtors' accounts to accounts

---

[3] Counsel for the Owocs expressed concern that allowing independent attorneys at Committee counsel's office review the documents would be permitting "the fox to guard the hen house." To obviate counsel's concerns, the Committee proposes hiring a team of contract attorneys to review the documents. Moreover, a team of contract attorneys could review the documents at a significantly lower rate than either Committee counsel or the Owocs' counsel.

[4] On June 14, 2023, Sun Credit Union produced documents in response to its subpoena. Committee counsel promptly notified counsel for the Owocs of the production and has not accessed the documents.

     owned by Mr. Owoc, Mrs. Owoc, or JW Owoc Enterprises, or entities controlled by Mrs. Owoc, Mr. Owoc, or Jonathan Owoc.

   ii. The transaction amount is equal to or exceeds $5,000.

   iii. The transaction was an electronic transfer (wire, ACH, etc), or check, to 1) an individual, 2) financial and/or investment institution, 3) brokerage account, or 4) associated with a real estate transaction.

 e. Transactions, other than the Relevant Transactions, will be redacted from the Documents. Once the Independent Review Team has completed its review and redactions, all documents containing Relevant Transactions will be produced to the Owocs and the Committee simultaneously. The Owocs will also receive a complete set of unredacted material, whether or not it has been deemed relevant.

 f. If the Owocs believe there are certain transactions that should have been, but were not redacted, it will notify the Committee within five days. Thereafter, the Committee and the Owocs will meet and confer to resolve any disputes regarding the relevance of the redacted transactions.

 g. If the Committee and the Owocs cannot reach an agreement, the parties will file a notice with the Court and the Court shall rule on the dispute.

3.  The Committee's proposed process is routinely used by federal courts across the country in criminal cases in order to protect attorney-client communications from disclosure when reviewing materials seized pursuant to a search warrant.[5] *See In re Sealed Search Warrant &*

---

[5] While taint or filter teams are traditionally utilized in criminal cases, the proposed procedure is no different than an appointed special master reviewing documents. Unlike a special master, however, the proposed Independent Review Team would be more efficient than a single special master, and likely more cost-effective.

*Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235, 1251 (11th Cir. 2021) (upholding the constitutionality of the use of a "filter team" to review potentially privileged documents in a criminal case); *In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, No. 20-03278-MJ, 2020 WL 6689045, at *2 (S.D. Fla. Nov. 2, 2020), *aff'd,* 11 F.4th 1235 (11th Cir. 2021) ("it is well-established that filter teams—also called "taint teams"—are routinely employed to conduct privilege reviews"); *In re Sealed Search Warrant & Application for a Warrant*, No. 20-MJ-03278, 2020 WL 5658721, at *4 (S.D. Fla. Sept. 23, 2020), *aff'd sub nom. In re Sealed Search Warrant & Application for a Warrant by Tel. or Other Reliable Elec. Means*, 11 F.4th 1235 (11th Cir. 2021) ("Filter teams have been employed to conduct privilege reviews in numerous cases."). In *In re Sealed Search Warrant & Application,* the Eleventh Circuit approved a procedure functionally identical to the Committee's proposal in order to facilitate the review of potentially privileged documents collected in response to a search warrant. 11 F.4th at 1243. In that case, the court reviewed the propriety of the government's filter team, which consisted of attorneys outside the branch office responsible for the investigation. The government walled off the investigating attorneys from the filter team; gave the filter team responsibility for performing the privilege review; and outlined a dispute-resolution procedure for the parties to resolve any dispute. *Id*. In approving the government's procedure, the Eleventh Circuit recognized that circuit courts around the country have approved the use of similar procedures. *Id*. at 1250 (collecting cases and noting that the "Second, Third, Fourth, Seventh, Eighth, Ninth and Tenth Circuits, in at least some cases, have also either approved of or recognized and declined to criticize the use of government filter teams"). Filter teams are used precisely to limit access to documents and are a mechanism for safeguarding litigant's rights. *See Matter of O'Donovan*, No. 22-MJ-1000-DLC, 2022 WL 10483922, at *3 (D. Mass. Oct. 17, 2022) (finding

that procedures similar to those proposed by the Committee posed no "no real cause for concern" that the government could "use the filter team review as a fishing expedition to find otherwise-undiscoverable evidence").

4. Indeed, a procedure utilized to protect a criminal defendant's constitutional rights is more than sufficient to protect the Owocs' purported privacy interest in the bank transactions. *See Reynolds v. Alabama Dep't of Transp.,* 4 F. Supp. 2d 1055, 1064 (M.D. Ala. 1998) (explaining that a "criminal defendant faced with a potential loss of his personal liberty has much more at stake than a civil litigant asserting or contesting a claim for damages, and for this reason the law affords greater protection to the criminal defendant's rights."); *Pack v. Beyer*, 157 F.R.D. 226, 230 (D.N.J. 1994) (noting that in-camera review procedure utilized to protect privilege in criminal cases was appropriate in civil proceedings because "no greater protection should be afforded to civil Plaintiffs then to criminal Defendants"). The Committee's proposed procedure both safeguards the Owocs' rights by ensuring that information in the Documents to be reviewed by the Committee is limited to, and consistent with, the scope of this Court's prior order, and ensures that the Committee obtains the information to which it is entitized.

### THE COURT SHOULD NOT PERMIT THE OWOCS TO DETERMINE WHETHER THE DOCUMENTS PRODUCED IN RESPONSE TO THE BANK SUBPOENAS ARE RESPONSIVE

5. Neither the Owocs nor their counsel should be permitted to review the produced documents for responsiveness. An unscrupulous litigant might be motivated to inappropriately narrow responsive transactions in order to minimize or hide the information that the Committee would otherwise be entitled to and to receive. That concern is particularly apt in the instant matter with respect to the Owocs. The Court need not look further than their conduct before this Court to date. Due to the Owocs' repeated and blatant violations of the Court's prior orders, to obtain

relevant and discoverable documents, the Committee had to file multiple discovery motions over the course of several months to compel the Owocs' productions. [Docket No. 1057 -Committee's Objection to the Owocs' Motion to Extend and Cross-motion to compel; Docket No. 1076 – the Committee's contempt and sanctions motion; Docket No. 1290 – the Committee's April 29, 2023 renewed motion to compel]. After finally obtaining the sought-after documents, during the deposition of Mrs. Owoc, the Committee was yet again forced to engage in motion practice in order to compel Mrs. Owoc to testify about the Owocs' personal bank accounts and other financial information. [Docket No. 1365 – Expedited Motion to Compel Testimony of Megan Elizabeth Owoc]. The Owocs have shown repeatedly that their primary goal is to stymie the Committee's investigation.

6. Perhaps most concerning, following the June 12, 2023 hearing, the Committee became aware that the Owocs' gamesmanship has reached new levels. Immediately after the hearing—at which the Owocs' lawyers tried to convince the Court that the Owocs could be relied upon to make fair and appropriate decisions about responsiveness despite their history of noncompliance—the Owocs' lawyer disclosed (as detailed in the Debtors' and the Committee's joint emergency motion filed today) that there were thousands of previously undisclosed responsive documents in the Owocs' possession. There can be no question that both the Committee and this Court should have been advised about the existence of these unproduced documents prior to the hearing, which revolved around the Owocs' credibility. But counsel purposely waited until immediately after the hearing. Under the circumstances, it is evident that the Owocs cannot be trusted to review the Documents in good faith, and their counsel—who *still* has not disclosed this material information to the Court, even though it is necessary to correct the

record—would necessarily rely on the Owocs for this review. Accordingly, the Court should grant the Committee's request for the appointment of an Independent Review Team.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court (i) enter an order approving the use of the Independent Review Team and (ii) grant such other and further relief as the Court deems just and proper.

I HEREBY CERTIFY that a true and correct copy of the foregoing has served upon all interested parties registered to receive notice via this Court's CM/ECF electronic notification system on June 16, 2023.

Dated:  June 16, 2023

**LOWENSTEIN SANDLER LLP**

Jeffrey L. Cohen, Esq.
Eric Chafetz, Esq.
Rachel Maimin, Esq.
Erica G. Mannix, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: rmaimin@lowenstein.com
Email: emannix@lowenstein.com
-and-
Wayne Fang, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2502
Facsimile: (973) 597-2400
Email: wfang@lowenstein.com

**SEQUOR LAW, P.A.**

By: */s/ Leyza F. Blanco*
    Leyza F. Blanco
    Florida Bar No.: 104639
    Juan J. Mendoza

Florida Bar No.: 113587
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Telephone: (305) 372-8282
Facsimile: (305) 372-8202
Email: lblanco@sequorlaw.com
Email: jmendoza@sequorlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

-9-