UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE:<br><br>VITAL PHARMACEUTICALS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 22-17842 (PDR)<br><br>(Jointly Administered) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO JOHN H. OWOC AND MEGAN OWOC'S EMERGENCY MOTION FOR ENTRY OF AN ORDER FOR THE COMMITTEE OF UNSECURED CREDITORS TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE IMPOSED FOR VIOLATIONS OF THE COURT'S PROTECTIVE ORDER AND CONFIDENTIALITY AGREEMENT**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors-in-possession (the "Debtors"), by and through its undersigned counsel, submits this objection (the "Objection") to the *Emergency Motion For Entry Of An Order For Committee Of Unsecured Creditors To Show Cause Why Sanctions Should Not Be Imposed For Violations Of The Court's Protective Order And Confidentiality Agreement [DE 823] And For Other Relief* filed by John H. Owoc ("Mr. Owoc") and Megan Owoc ("Mrs. Owoc") (together, "the Owocs") [Docket No. 1470] (the "Motion") and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Motion is meritless; it seeks relief that the Owocs have already obtained. Specifically, the Owocs move this Court to sanction the Committee for summarizing portions of

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("VPX") (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC ("JHO") (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicom Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

Meg Owoc's deposition, which was declared confidential at the close of her deposition, and filing certain purportedly "confidential" exhibits —without objection from the Owocs or their prior counsel at the time—pursuant to the Protective Order and Confidentiality Agreement [Docket No. 823] (the "Protective Order").[2] The summarized testimony and exhibits (together, the "Exhibits") are appended hereto under seal as Exhibit 1 and, on their face, contain nothing "confidential" in the practical sense or remotely personal or prejudicial to the Owocs; the parties had simply agreed for purpose of efficiency to designate all transcripts and exhibits confidential to expedite the depositions. And the Debtors, to which the majority of the Exhibits belong[3], have now stated that the exhibits are not in fact confidential.

2.      In any event, the Owocs sought a meet-and-confer with the Committee before filing the Motion, prior to which the Owocs sent the Committee a draft of the Motion in apparently final form. Within less than ten minutes of the meet-and-confer—although it was at that time unclear that the Exhibits were confidential—the Committee notified the Owocs's counsel that a motion to seal would be filed imminently in order to avoid motion practice. The Committee's motion to seal was filed that day. But the Owocs filed the Motion anyway, seeking attorney's fees to punish the Committee for previously filing the Exhibits.

3.      The Owocs are constrained to admit (at the tail end of their brief) that the Committee took prompt steps to seal the Exhibits but still seek these sanctions, presumably for fees incurred drafting the Motion prior to the meet-and-confer. But drafting the Motion prematurely was the Owocs's choice, defeating the purpose of the meet-and-confer, which is meant

---

[2] Counsel at the time was Bradley Schraiberg, Esq. The Motion was filed by Irwin R. Gilbert, Esq., who—along with one or two additional firms (the record is unclear)—now represents the Owocs before this Court. Mr. Gilbert represents Mr. Owoc in his lawsuit against the Board of Directors; this motion for sanctions is Mr. Gilbert's first substantive filing in these bankruptcy cases.

[3] A three-page portion of the Exhibits is a document that was produced by Mr. Owoc; the remainder of the documents were produced by the Debtors.

to and *would* have avoided any motion practice here had the Owocs waited to draft the Motion before conferring. And there is no "emergency" that justified drafting the Motion in advance; the exhibits in question had been on the docket for a week and were the subject of a hearing before the Court, without any complaint by the Owocs or their lawyers. The Owocs, not the Committee, must bear the costs of drafting a brief that never needed to be written. Not only do the facts here fall far short of warranting sanctions, to impose sanctions under these circumstances would vitiate the whole purpose of a meet-and-confer by punishing a party that took steps to avoid motion practice to the benefit of all parties and the Court—and here, perhaps most importantly, to the Debtors' estates, which cannot spare resources on such frivolous motions.

## RELEVANT FACTS

4. On June 12, 2023, the Committee filed its Objection to *John H. Owoc and Megan Owoc's Emergency Motion for Protective Order Regarding Third Party Subpoenas* [Docket No. 1449] ("Owocs' Motion for Protective Order"). The Objection summarized portions of the transcript of Mrs. Owoc's Rule 2004 Examination (the "Deposition Transcript") and Exhibits B and C, appended to the Objection, which contained portions of the Deposition Transcript and certain documents produced during discovery. *See id.*[4] The Committee took careful measures to redact any confidential and/or personal information contained in the Exhibits to protect sensitive financial information. The Owocs did not object to the filing of the Exhibits that day.

5. The next day, on June 13, 2023, the Court held a hearing on the Owocs' Motion for Protective Order. At that hearing, the Owocs' prior counsel also did not object to the filing of the Exhibits or raise any issue with the purportedly confidential nature of those Exhibits; that lawyer

---

[4] For the Court's convenience, the Committee has attached the relevant exhibits to this Objection as **Exhibit 1**.

had been present at the deposition where the transcripts was perfunctorily marked confidential for purposes of efficiency.

6. Four days later, on June 16, 2023, the Owocs, in a purported effort to meet-and-confer, informed the Committee that in their view, the Exhibits should have been filed under seal. A complete and seemingly final draft of the Motion was sent to the Committee shortly in advance of the meet-and-confer. Within minutes of the meet-and-confer, the Committee notified the Owocs —in order to avoid motion practice, even though it was unclear that the Exhibits were in fact confidential—that the Committee would move to seal its Objection to the Owocs' Motion for Protective Order. That same day, the Committee did so, filing an *Ex Parte Motion To Restrict Access To Information Subject Of Confidentiality Agreement And To File Under Seal* [Docket No. 1469] (the "Committee's Motion to Seal"), to restrict the Objection and Exhibits from public view while preserving the dispute for the Court's resolution, if needed. Despite the Committee's good faith efforts to resolve the issue promptly—which had the Owocs' desired effect of removing the Exhibits from public view—the Motion was filed, seeking sanctions against the Committee.

7. On June 21, 2023, this Court granted the Committee's Motion to Seal and the Objection and its exhibits have been restricted from public view. [Docket No. 1500].

## OBJECTION

8. The Court should deny the Motion because (1) the Committee acted promptly to restrict the information at issue from public view; (2) the information at issue is not truly confidential; and (3) the Owocs have not met their heavy burden to warrant sanctions.

9. Although this court has the inherent power to issue sanctions for violations of its orders, "[t]he key to unlocking a court's inherent power is a finding of bad faith." *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005) (quoting *Byrne v. Nezhat*,

261 F.3d 1075, 1106 (11th Cir. 2001)); *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002) ("To exercise its inherent power a court must find that the party acted in bad faith."); *see also Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 151(2009) (a bankruptcy court "plainly [has] jurisdiction to interpret and enforce its own prior orders"). "Bad faith exists when the court finds that a fraud has been practiced upon it, or that the very temple of justice has been defiled, . . . or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order." *Allapattah*, 372 F. Supp. 2d at 1373. Not only do the Owocs' claims fall far short of the bad faith standard; all of the Committee's actions actually demonstrate good faith.

10. *First*, the Owocs' have already received the relief they seek from the Committee. The Owocs purported to ask the Court to have Paragraph 18 of the Objection and Exhibits stricken from the docket or sealed. *See* Owocs' Motion at 6. Buried in their certificate of conference, however, the Owocs admit that the Committee had *already agreed to their requested relief*—and, indeed, had taken all steps in its power to obtain it by filing a sealing motion—and that the only issue before the Court is their request for fees.[5] *See* Owocs' Motion at 6-7 (acknowledging that "the attorneys came to an agreement regarding the requested relief to seal the" Objection). As to the issue of fees, the purpose of the meet and confer process is, among other things, to avoid unnecessary motion practice that results in needless attorney's fees. *See Alhassid v. Bank of Am., N.A.*, No. 14-20484, 2015 U.S. Dist. LEXIS 30255, at *9 (S.D. Fla. Mar. 12, 2015); *Avocent Huntsville, LLC v. ZPE Sys.*, No. 17-04319, 2018 U.S. Dist. LEXIS 59250, at *10 (N.D. Cal. Apr.

---

[5] Perplexingly, the Owocs assert that the parties were unable to come to an agreement regarding the request "to strike those portions of the UCC's Objection to the Motion for Protective Order that summarizes certain content of the confidential deposition and Attachments B and C to the Objection." Motion at 7. That is false. The Committee's Motion to Seal requested the Court to seal the *entire filing*, which is more than what the Owocs were even asking for. Indeed, the Court granted the Motion to Seal and the *entire filing* is now sealed. *See* Docket No. 1500.

6, 2018) ("The parties are reminded of their obligation to meet and confer in good faith and stipulate whenever possible to avoid further unnecessary motion practice, which gives rise to an unnecessary expense to the parties and a waste of judicial resources."). As this is a bankruptcy matter—where the Committee's costs are borne by the Debtors' estates—those concerns are paramount. After the parties had conferred, and before the filing of the instant Motion, the Owocs knew that the Committee had agreed to their request to seal and had in fact moved to seal the entire filing. The costs incurred by the Owocs's decision to draft a brief in full prior to a meet-and-confer should not be shouldered by the Debtors' Estates. The request for attorneys' fees should be denied for that reason alone.

11.     *Second*, neither the objection to Owoc's Motion for Protective Order nor its Exhibits disclose truly confidential information.[6] *The Debtors, who produced the majority of the documents at issue and designated the deposition transcript confidential, have stated that the unredacted material in the Exhibits is not in fact confidential*. Nor do the Exhibits reveal private or personal information; the Committee took care to ensure that such information was redacted. For example, Exhibit B to the Objection is a 9-page excerpt from Mrs. Owoc's examination relating to financial information. All account numbers were redacted. The excerpts merely identify certain financial institutions where the Owocs have or had accounts, which is hardly private. As such, the redacted version of the transcript cannot be considered confidential as this information is already publicly available through various sources, including the subpoenas, filed on the public docket without complaint from the Owocs, that have been served on the banking

---

[6] The provisional designation of Mrs. Owoc's deposition transcript as confidential is not dispositive of whether the information contained therein is, in fact, confidential. Critically, the Protective Order outlines a process for objecting to confidentiality designations. *See* Protective Order ¶ 16. The Committee was not required to object to the designation at the time it was made and the failure to do so does not "preclude or have any relevance" to the Committee's ability to challenge the designation on the present motion, or at a later time. *Id*. ¶ 17.

institutions. *See Graff v. Haverhill N. Coke Co.*, No. 09-670, 2014 U.S. Dist. LEXIS 13180, at *16 (S.D. Ohio Feb. 3, 2014) (finding that "[a]s publicly available information, it is not confidential despite defendants' characterization of the report as 'confidential'").

12. Similarly, Exhibit C is excerpts of wire transfers and other information produced by the Debtors and the Owocs in this proceeding. All account numbers and wire amounts were redacted. Without any actual disclosure of substantive information, the Owocs' claim of the Committee violating the Protective Order, does not rise to sanctionable conduct. *Hollywood Cmty. Synagogue, Inc. v. City of Hollywood Fla.*, No. 04-CV-61212, 2006 WL 8431623, at *1 (S.D. Fla. Apr. 20, 2006) (denying motion for sanctions and attorney's fees where party violated mediation privilege but "nothing of substance was revealed").

13. *Third*, the Owocs were not harmed by the purported disclosure of "confidential information." Even assuming that the information at issue was confidential (which it is not) the Committee promptly moved to seal the exhibits to mitigate the extraordinarily remote possibility of harm to the Owocs. The Owocs—without any citation to an exhibit or a supporting affirmation—contend that "[s]elected excerpts of hearing transcripts and Mrs. Owoc's financial information have already appeared in social media, including LinkedIn." *See* Owocs' Motion at 17. Conclusory allegations and speculations of harm simply cannot satisfy the Owocs' heavy burden on a sanctions motion. *See BridgeTower Opco LLC v. Workforce Rsch. Grp. LLC*, No. 21-2999, 2023 U.S. Dist. LEXIS 10768, at *15 (S.D. Tex. Jan. 23, 2023) ("Speculative harm cannot justify imposing the severest sanctions."). And even if this were true, it would not warrant sanctions, since no portion of the Exhibits is confidential, personal, private, or embarrassing in any way.

14. In short, the Court should reject the Owocs' attempt to shift the costs of their own hasty drafting to the Committee, which has done nothing but act in good faith and comply with the Owocs's requests despite the fact that they were without merit. *See City of Alexandria v. C L E C O*, 547 Fed. Appx. 568, 569 (5th Cir. 2013) (holding that "[b]ecause sanctions issuing under a court's inherent power require a 'specific finding that the attorney acted in 'bad faith,' the district court abused its discretion."(citations and quotations omitted)); *see also Davis v. Harris*, No. 03-3007, 2006 U.S. Dist. LEXIS 33664, at *14 (C.D. Ill. May 25, 2006) (finding that errors based on inadvertence cannot justify sanctions). In reality, it is the Motion—not the Committee's reasonable and good faith conduct—that is frivolous and sanctionable, especially in this case where funds are particularly precious, but the Committee is not interested in engaging in a tit-for-tat with the Owocs that would drain yet more money from the estate. We simply ask that the Motion be denied.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court (i) deny the relief requested in the Motion, and (ii) grant such other and further relief as the Court deems just and proper.

Dated: June 27, 2023

**LOWENSTEIN SANDLER LLP**
Jeffrey L. Cohen, Esq.
Rachel Maimin, Esq.
Eric Chafetz, Esq.
Erica G. Mannix, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email: jcohen@lowenstein.com
Email: rmaimin@lowenstein.com
Email: echafetz@lowenstein.com
Email: emannix@lowenstein.com

-and-
Wayne Fang, Esq.
One Lowenstein Drive
Roseland, New Jersey 07068
Telephone: (973) 597-2502
Facsimile: (973) 597-2400
Email: wfang@lowenstein.com

**SEQUOR LAW, P.A.**

By: */s/ Leyza F. Blanco*
    Leyza F. Blanco
    Florida Bar No.: 104639
    Juan J. Mendoza
    Florida Bar No.: 113587
    1111 Brickell Avenue, Suite 1250
    Miami, FL 33131
    Telephone: (305) 372-8282
    Facsimile: (305) 372-8202
    Email: lblanco@sequorlaw.com
    Email: jmendoza@sequorlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

# EXHIBIT 1

(to be filed under seal)