UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-17842-PDR |
| Debtors. | (Jointly Administered) |

_____/

## <u>NOTICE OF FILING OF REVISED PROPOSED SALE ORDER</u>

**PLEASE TAKE NOTICE** that, on January 27, 2023, the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") filed the *Debtors' Motion For an Order (I) Approving (A) Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Procedures for the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Form and Manner of Notice of the Sale Hearing, Assumption Procedures, and Auction Results, (D) Dates for an Auction and Sale Hearing, (E) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances, and (F) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing the Debtors to Provide Bid Protections, and (III) Granting Related Relief* [ECF No. 707] (the "<u>Motion</u>").[2]

**PLEASE TAKE FURTHER NOTICE** that, on February 24, 2023, the Court entered an order [ECF No. 854] (the "<u>Bidding Procedures Order</u>") granting certain of the relief sought in the Motion, including, among other things, approving (i) the Bidding Procedures, which establish the key dates and times related to the Transaction, and (ii) the Assumption and Assignment Procedures.

**PLEASE TAKE FURTHER NOTICE** that concurrently with the filing of this notice, the Debtors are filing a notice designating Blast Asset Acquisition LLC as the Successful Bidder.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of the Sale Transaction and the transfer of the Assets <u>free and clear of all liens, claims, interests, and encumbrances</u> to the Successful Bidder in accordance with section 363(f) of the Bankruptcy Code will be held before the Honorable Judge Peter D. Russin, United States Bankruptcy Judge for the Southern District of Florida, at the Bankruptcy Court, 299 E. Broward Blvd., Courtroom 112, Fort

---

[1]  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

Lauderdale, FL 33301 on **July 13, 2023 at 1:30 p.m. (Prevailing Eastern Time)**.[3]  The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.

      **PLEASE TAKE FURTHER NOTICE** that that any objections to: (i) the identity of the Successful Bidder, and/or (ii) adequate assurance of future performance by the Successful Bidder, in each case, must be filed with the Court **no later than 4:00 p.m. (Prevailing Eastern Time) on July 7, 2023**.

      **PLEASE TAKE FURTHER NOTICE** that, on March 3, 2023, the Debtors filed that certain *Notice of Filing of Proposed Sale Order* [ECF No. 896] (the "Proposed Sale Order").

      **PLEASE TAKE FURTHER NOTICE** that subsequent to filing the Proposed Sale Order the Debtors made certain modifications thereto as reflected in the revised form of the Proposed Sale Order (the "Revised Proposed Sale Order") attached hereto as **Exhibit A**.  For the convenience of the Court and other interested parties attached hereto as **Exhibit B** is a blackline showing the changes made from the Proposed Sale Order to the Revised Proposed Sale Order.

      **PLEASE TAKE FURTHER NOTICE** that the Debtors intend to seek entry of the Revised Proposed Sale Order at the Sale Hearing.  The Debtors reserve all rights to revise the Revised Proposed Sale Order at or prior to the Sale Hearing.  Copies of the Revised Proposed Sale Order, the Bidding Procedures, the Bidding Procedures Order, and other relevant documents may be examined by interested parties free of charge at the website established for these chapter 11 cases by the Debtors' court-approved noticing, claims, and solicitation agent, Stretto, Inc., at https://cases.stretto.com/VitalPharmaceuticals.  Parties interested in receiving more information regarding the sale of the Assets and/or copies of any related documents, including the Revised Proposed Sale Order, may make a written request to counsel to the Debtors, Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004 (Attn: Andrew Sorkin (andrew.sorkin@lw.com)) and Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: Liza Burton (liza.burton@lw.com) and Jonathan Weichselbaum (jon.weichselbaum@lw.com)).

---

[3] To the extent the Sale Hearing occurs virtually, participation instructions will be provided on the agenda filed on the docket prior to the Sale Hearing.

Dated: June 28, 2023                    Respectfully submitted,
            Miami, Florida

                                        */s/ Jordi Guso*
George A. Davis (admitted *pro hac vice*)    Jordi Guso
Liza L. Burton (admitted *pro hac vice*)    Florida Bar No. 863580
Jonathan J. Weichselbaum (admitted *pro hac vice*)    Michael J. Niles
**LATHAM & WATKINS LLP**                Florida Bar No. 107203
1271 Avenue of the Americas             **BERGER SINGERMAN LLP**
New York, NY 10020                      1450 Brickell Avenue, Suite 1900
Telephone: (212) 906-1200               Miami, FL 33131
Email: george.davis@lw.com              Telephone: (305) 755-9500
        liza.burton@lw.com               Email: jguso@bergersingerman.com
        jon.weichselbaum@lw.com                  mniles@bergersingerman.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: andrew.sorkin@lw.com

– and –

Joseph C. Celentino[4] (admitted *pro hac vice*)
Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: whit.morley@lw.com


                *Co-Counsel for the Debtors and Debtors in Possession*

---

[4] Not admitted in Illinois.  Admitted in New York.

## Exhibit A

**Revised Proposed Sale Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                          Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al*.,          Case No.: 22-17842-PDR

Debtors.[1]                                     (Jointly Administered)

_____/

**ORDER (I) AUTHORIZING AND APPROVING (A) THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR
OF ALL LIENS, CLAIMS, AND ENCUMBRANCES AND (B) THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES IN CONNECTION THEREWITH, AND (II) GRANTING RELATED RELIEF**

Upon the motion [ECF No. 707] (the "Motion")[2] of the above-captioned debtors and

debtors in possession (collectively, the "Debtors") for entry of an order (this "Sale Order"),

(i) authorizing (a) the sale of substantially all of the Debtors' assets free and clear of all claims,

liens, liabilities, rights, interests, and encumbrances (except for Assumed Liabilities and Permitted

Encumbrances), and (b) the assumption and assignment of certain of the Debtors' executory

contracts and unexpired leases, and (ii) granting related relief; and this Court having entered the

*Order (I) Approving Bidding Procedures, (II) Authorizing the Debtors to Provide Bid Protections,*

*and (III) Granting Related Relief* [ECF No. 854] (the "Bidding Procedures Order"); and Blast

Asset Acquisition LLC, the buyer (the "Buyer"), having been selected as the Successful Bidder;

and upon the Buyer and certain of the Debtors having entered into that certain *Asset Purchase*

---

[1]  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal
tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("Vital Pharmaceuticals") (8430); (ii) Bang Energy
Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC
(9394); (v) Quash Seltzer, LLC ("Quash Seltzer") (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital
Pharmaceuticals International Sales, Inc. (8019).

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in, as applicable,
the Asset Purchase Agreement (as defined herein), or if not defined therein, the Motion, or the Bidding Procedures
Order (as defined herein).

*Agreement*, dated as of June 28, 2023, a copy of which is attached hereto as **Exhibit A** (as may be amended, modified, or supplemented in accordance with the terms of this Sale Order and such agreement, the "Asset Purchase Agreement"); and this Court having reviewed the 9019 Motion; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and a hearing having been held to consider the relief requested in the Motion (the "Sale Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and evidence adduced at the Sale Hearing or otherwise establish just cause for the relief granted herein; and upon all of the proceedings had before this Court and at the Sale Hearing; and after due deliberation thereon; and good and sufficient cause appearing therefor,

   **THE COURT HEREBY FINDS THAT:**[3]

**<u>JURISDICTION</u>**

   A. This Court has jurisdiction to hear and determine the Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).

   B. Venue of the Debtors' above-captioned chapter 11 cases (these "Chapter 11 Cases") and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

   C. This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable

---

[3] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of this Sale Order as set forth herein.

D.    The statutory predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and the applicable Local Rules.

## NOTICE OF THE SALE AND THE CURE PAYMENTS

E.    As evidenced by the affidavits and/or certificates of service filed with the Court,[4] proper, timely, adequate, and sufficient notice of, *inter alia*, the Motion, the Bidding Procedures, the Assumption and Assignment Procedures, the Asset Purchase Agreement, the sale of the Purchased Assets pursuant to the terms of the Asset Purchase Agreement and this Sale Order (the "Sale"), the Sale Hearing, and all deadlines related thereto, has been provided in accordance with sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007,

---

[4]    Such affidavits and/or certificates of service were filed by the Debtors at [ECF No. 710] (certificate of service regarding the Motion); [ECF No. 735] (certificate of service regarding hearing on Motion); [ECF No. 841] (certificate of service regarding revised Bidding Procedures Order and declaration in support of Bidding Procedures); [ECF No. 847] (certificate of service regarding extension of certain transaction deadlines); [ECF No. 909] (certificate of publication of Sale Notice); [ECF No. 911] (certificate of service of Bidding Procedures Order and Sale Notice); [ECF No. 927] (certificate of service of initial Assumption Notice (as defined herein) and proposed form of Sale Order); [ECF No. 1014] (certificate of service of first supplemental Assumption Notice); [ECF No. 1042] (certificate of service of Sale Notice); [ECF No. 1125] (certificate of service of Sale Notice and initial Assumption Notice); [ECF No. 1155] (certificate of service of initial Assumption Notice); [ECF No. 1186] (certificate of service of initial Assumption Notice and Sale Notice); [ECF No. 1252] (certificate of service of initial Assumption Notice and Sale Notice); [ECF No. 1305] (certificate of service of extension of transaction deadlines); [ECF No. 1360] (certificate of service of Sale Order and initial Assumption Notice); [ECF No. 1383] (certificate of service of Sale Notice and initial Assumption Notice); [ECF No. 1392] (certificate of service of Sale Notice and extension of certain transaction milestones); [ECF No. 1403] (certificate of service of notice of adjournment of Auction); [ECF No. 1414] (certificate of service of Sale Notice and extension of certain transaction milestones); [ECF No. 1439] (certificate of service of extension of certain transaction milestones and adjournment of Auction); [ECF No. 1462] (certificate of service of extension of certain transaction milestones and adjournment of Auction); [ECF No. 1464] (certificate of service of extensions of certain transaction milestones, including the Sale Hearing); [ECF No. 1493] (supplemental certificate of service of notice of adjournment of Auction and extensions of certain transaction milestones, including the Sale Hearing); and [ECF No. 1541] (certificate of service of notice of adjournment of Sale Hearing).

9008, and 9014, and in compliance with the Bidding Procedures Order, to all parties required to receive such notice.

      F.      The Debtors served the *Notice of Proposed Sale, Bidding Procedures, Auction, and Sale Hearing* [ECF No. 856] (the "Sale Notice") on all parties required to receive such notice under the Bidding Procedures Order and applicable rules, published such notice in *The New York Times* and posted the Sale Notice on the Debtors' Case Website.  Such publication of the Sale Notice conforms to the requirements of the Bidding Procedures Order and Bankruptcy Rules 2002(l) and 9008 and was reasonably calculated to provide notice to any affected party and afford any affected party the opportunity to exercise any rights related to the Motion and the relief granted by this Sale Order.  Service and publication of the Sale Notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Purchased Assets, including the proposed sale of the Purchased Assets free and clear of all liens, claims, encumbrances, and interests (other than Assumed Liabilities and Permitted Encumbrances), the Sale, the Bidding Procedures, and the Sale Hearing.

      G.      The Debtors served the (i) *Notice of (I) Executory Contracts and Unexpired Leases that May be Assumed and Assigned in Connection with a Sale of the Debtors' Assets and (II) the Proposed Cure Costs with Respect Thereto* [ECF No. 893]; (ii) *Supplemental Notice of (I) Executory Contracts and Unexpired Leases that May be Assumed and Assigned in Connection with a Sale of the Debtors' Assets and (II) the Proposed Cure Costs with Respect Thereto* [ECF No. 995]; and (iii) *Second Supplemental Notice of (I) Executory Contracts and Unexpired Leases that May be Assumed and Assigned in Connection with a Sale of the Debtors' Assets and (II) the Proposed Cure Costs with Respect Thereto* [ECF No. 1460] (together, the "Assumption Notice") on each of the counterparties to the Assumed Agreements and Assumed Real Property Leases in

accordance with the Assumption and Assignment Procedures and the Bidding Procedures Order. The service of the Assumption Notice was sufficient under the circumstances and in full compliance with the Assumption and Assignment Procedures and the Bidding Procedures Order, and no further notice need be provided in respect of the Debtors' assumption and assignment to the Buyer of the Assumed Agreements and Assumed Real Property Leases that have been (or may be) selected by the Buyer to be assumed and assigned in connection with the Sale[5] or the Cure Costs (as defined in the Assumption Notice or as otherwise agreed by the Buyer and the counterparty to any Assumed Agreements or Assumed Real Property Leases). All counterparties to the Assumed Agreements and Assumed Real Property Leases have had an adequate opportunity to object to the assumption and assignment of the Assumed Agreements and Assumed Real Property Leases and the Cure Costs. Service of the Assumption Notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the Assumed Agreements and Assumed Real Property Leases in connection with the sale of the Purchased Assets and the related Cure Costs.

H.    The Debtors served the *Notice of Auction Cancellation and Successful Bidder* [ECF No. [ ● ]] (the "Designation Notice") on all parties required to receive such notice under the Bidding Procedures Order and applicable rules. Because only one Qualified Bid was received for substantially all of the Debtors' assets, which was submitted by the Buyer, no Auction was conducted.

I.    The notice described in the foregoing paragraphs is due, proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures, the Sale Hearing, the assumption and

---

[5]    For avoidance of doubt, as used herein, Assumed Agreements and Assumed Real Property Leases shall only include those Assumed Agreements and Assumed Real Property Leases to which a Debtor is a party.

assignment of the Assumed Agreements and Assumed Real Property Leases, the Sale, and the entry of this Sale Order, and has been provided to all parties in interest. Such notice was, and is, good, sufficient, and appropriate under the circumstances of these Chapter 11 Cases, provided a fair and reasonable opportunity for parties in interest to object, and to be heard, with respect thereto, and was timely provided in accordance with sections 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and the applicable Local Rules. Accordingly, no other or further notice with respect to such matters is necessary or shall be required.

### BUSINESS JUDGMENT

J.     The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Sale and the other transactions contemplated by the Asset Purchase Agreement and related documents (together with the Asset Purchase Agreement, the "Transaction Documents"), including, without limitation, the assumption, assignment, and/or transfer of the Assumed Agreements and Assumed Real Property Leases (collectively, the "Transaction") pursuant to sections 105, 363, and 365 of the Bankruptcy Code, prior to and outside of a plan of reorganization, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, and their creditors. Such business reasons include, but are not limited to, the fact that: (i) there is substantial risk that the Debtors will lose access to the financing necessary to maintain their day-to-day business operations, including, among other reasons, the impending maturity of the DIP Facility; (ii) the Asset Purchase Agreement and the Closing present the best opportunity to maximize the value of the Debtors' estates; and (iii) unless the Sale is concluded expeditiously as provided for in this Sale Order and pursuant to the Asset Purchase Agreement, potential creditor recoveries may be substantially diminished.

## GOOD FAITH OF THE BUYER; NO COLLUSION

K.      The Buyer is purchasing the Purchased Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and therefore is entitled to, and granted pursuant to paragraph 35 below, the full rights, benefits, privileges, and protections of that provision, and has otherwise proceeded in good faith in all respects in connection with the Transaction in that, *inter alia*: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Buyer complied with the provisions in the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; and (v) the negotiation and execution of the Asset Purchase Agreement and the other Transaction Documents were at arms' length and in good faith.

L.      None of the Debtors, the Buyer, any other party in interest, or any of their respective Representatives has engaged in any conduct that would cause or permit the Asset Purchase Agreement or any of the Transaction Documents, or the consummation of the Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any Person (as defined in the Asset Purchase Agreement) in connection therewith.

## HIGHEST OR OTHERWISE BEST OFFER

M.      In accordance with the Bidding Procedures Order, the Asset Purchase Agreement was deemed a Qualified Bid for the Purchased Assets.

N.      The Debtors conducted a competitive marketing and sale process in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order,

and accordingly have afforded a full, fair, and reasonable opportunity for any Person to make a higher or otherwise better offer to purchase the Purchased Assets.

O.    The Asset Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets and represents a fair and reasonable offer to purchase the Purchased Assets under the totality of circumstances of these Chapter 11 Cases.

P.    The Transaction described in the Asset Purchase Agreement will provide a greater benefit to the Debtors, their estates, and their creditors than any alternative transaction.

<u>**NO FRAUDULENT TRANSFER**</u>

Q.    The Asset Purchase Agreement and the other Transaction Documents were not entered into, and the Transaction is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under applicable law, and none of the parties to the Asset Purchase Agreement or parties to any of the other Transaction Documents are consummating the Transaction with any fraudulent or otherwise improper purpose.  The purchase price for the Purchased Assets constitutes reasonably equivalent value, fair consideration and fair value for the conveyance of such Purchased Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable laws of the United States, any state, territory, or possession, the District of Columbia or any applicable foreign laws.

<u>**VALIDITY OF TRANSFER**</u>

R.    The Debtors have full corporate power and authority (i) to seek approval of and perform all of their obligations under the Asset Purchase Agreement and the other Transaction Documents; and (ii) to consummate the Transaction.  Subject to the entry of this Sale Order, no further consents or approvals are required for the Debtors to consummate the Transaction or otherwise perform their obligations under the Transaction Documents, except in each case as

otherwise expressly set forth in the Final DIP Order (which consents or approvals have already been obtained),[6] the Asset Purchase Agreement, or the other applicable Transaction Documents.

S.     The Debtors' rights, title, and interest in the Purchased Assets constitute property of the Selling Entities' bankruptcy estates and title thereto is vested in their estates within the meaning of section 541(a) of the Bankruptcy Code.  As of the date of the closing of the Transaction ("Closing," and such date, the "Closing Date"), the transfer of the Purchased Assets to the Buyer, including, without limitation, the assumption, assignment, and transfer of the Assumed Agreements and Assumed Real Property Leases, will be a legal, valid, and effective transfer thereof, and will vest the Buyer with good and marketable title to, and all right, title, and interest in and to the Purchased Assets, free and clear of all Interests (as defined below) except for Assumed Liabilities and Permitted Encumbrances accruing or arising any time prior to the Closing Date, except as expressly set forth in the Asset Purchase Agreement.

## SECTION 363(F) IS SATISFIED

T.     The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the transaction contemplated thereby if the sale of the Purchased Assets, including the assumption, assignment, and transfer of the Assumed Agreements and Assumed Real Property Leases to the Buyer, were not free and clear of all Interests of any kind or nature whatsoever (except for Assumed Liabilities and Permitted Encumbrances), or if the Buyer or any of its affiliates, subsidiaries, or any of its Representatives would, or in the future could, be liable for any such Interests (except for Assumed Liabilities and Permitted Encumbrances).

---

[6]     The "Final DIP Order" means the *Final Order (I) Approving Postpetition Financing, (II) Authorizing Use Of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* entered on January 12, 2023 [ECF No. 638].

U.      The Debtors may sell or otherwise transfer the Purchased Assets free and clear of all Interests (except for Assumed Liabilities and Permitted Encumbrances) to the extent set forth herein because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests against the Debtors, their estates, or any of the Purchased Assets who did not object, or who withdrew their objection to the Sale or the Motion, are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of such Interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by the terms of this Sale Order, including, as applicable, by having their Interests, if any, attach to the portion of the Sale Proceeds (as defined below) attributable to the Purchased Assets in which such creditor alleges or asserts an Interest, in the same order of priority, with the same validity, force, and effect, that such creditor had against the Purchased Assets immediately prior to consummation of the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

V.      As used in this Sale Order, the terms "Interest" and "Interests" include all of the following, in each case, to the extent against or with respect to the Debtors, or in, on, or against, or with respect to any of the Purchased Assets: liens (including as defined in section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial, or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code) ("Claims"), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, or interests of any kind or nature whatsoever, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or

noncontingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to, on, or subsequent to, the commencement of these Chapter 11 Cases, and in each case, whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to: (i) mortgages, security deeds, deeds of trust, pledges, charges, security interests, levies, hypothecations, encumbrances, easements, servitudes, leases, subleases, licenses, rights-of-way, encroachments, restrictive covenants, restrictions on transferability, voting, sale, transfer or other similar restrictions, rights of setoff (except for setoffs validly exercised before the Petition Date, or preserved in a timely filed proof of claim or motion filed with the Court), rights of use or possession, conditional sale arrangements, deferred purchase price obligations, profit sharing interest, or any similar rights; (ii) all Claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff (except for setoffs validly exercised before the Petition Date, or preserved in a timely filed proof of claim or motion filed with the Court), indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other Person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise; (iii) all debts, liabilities, obligations, contractual rights and claims, including labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Buyer's interest in the Purchased Assets, or any similar rights; (v) any rights under labor or employment

agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA")), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee claims related to worker's compensation, occupation disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and the Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (l) the WARN Act (29 U.S.C. §§ 2101, et seq.) or any state or other laws of similar effect; (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances or other laws of similar effect, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets before the closing of a Sale; (x) any unexpired and executory contract or unexpired lease to which the Debtors are a party that is not an Assumed Agreement or Assumed Real Property Lease; (xi) any other excluded liabilities under the Asset Purchase Agreement; and

(xii) Interests arising under or in connection with any acts, or failures to act, of the Debtors or any of their predecessors, affiliates, or subsidiaries, including, but not limited to, Interests arising under any doctrines of successor liability (to the greatest extent permitted by applicable law), or transferee or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable law or otherwise.

### NOT A SUCCESSOR; NOT A SUB ROSA PLAN

W.     The Buyer is not, and shall not be deemed to, as a result of any action taken in connection with the Transaction (i) be a successor to or a mere continuation or substantial continuation (or other such similarly situated party) to the Debtors or their estates; or (ii) have, *de facto* or otherwise, merged or consolidated with or into the Debtors.

X.     The Sale does not constitute a *de facto* plan of reorganization or liquidation or an element of such a plan for the Debtors, as it does not and does not propose to impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a chapter 11 plan for the Debtors.

### ASSUMPTION, ASSIGNMENT AND/OR TRANSFER OF THE ASSUMED AGREEMENTS AND ASSUMED REAL PROPERTY LEASES

Y.     The Debtors have demonstrated that (i) it is an exercise of their sound business judgment to assume and assign the Assumed Agreements and Assumed Real Property Leases to the Buyer in each case in connection with the consummation of the Transaction, and (ii) the assumption and assignment of the Assumed Agreements and Assumed Real Property Leases to the Buyer is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The Assumed Agreements and Assumed Real Property Leases being assigned to the Buyer are an integral part of the Purchased Assets being purchased by the Buyer and, accordingly,

such assumption, assignment and cure of any defaults under the Assumed Agreements and Assumed Real Property Leases are reasonable and enhance the value of the Debtors' estates. Each and every provision of the documents governing the Purchased Assets or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any of the Purchased Assets, if any, have been or will be satisfied or are otherwise unenforceable under section 365 of the Bankruptcy Code. Any non-Debtor counterparty to an Assumed Agreement or Assumed Real Property Lease that has not filed with this Court an objection to such assumption and assignment in accordance with the terms of the Motion and the Assumption Notice is deemed to have consented to such assumption and assignment.

Z.    To the extent necessary or required by applicable law, the Debtors (or the Buyer on behalf of the Debtors) has or will have as of the Closing Date (i) cured, or provided adequate assurance of cure, of any default existing prior to the Closing Date with respect to the Assumed Agreements and Assumed Real Property Leases, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) provided compensation, or adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from such default, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. Subject to the terms of this Sale Order, and except as otherwise determined by separate order of the Court after the date hereof, the respective Cure Costs set forth on **Exhibit B** hereto are the sole amounts necessary under sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code to cure all such monetary defaults and pay all actual pecuniary losses under the Assumed Agreements and Assumed Real Property Leases.

AA.    The promise of the Buyer to perform (and the Buyer's financial wherewithal to perform) the obligations first arising under the Assumed Agreements and Assumed Real Property Leases after their assumption and assignment to the Buyer constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparties to such Assumed Agreements and Assumed Real Property Leases.  Except for those objections and other disputes listed as adjourned on **Exhibit C** (collectively, the "Adjourned Objections"), any objections to the foregoing, the determination of any Cure Costs, or otherwise related to or in connection with the assumption, assignment, or transfer of any of the Assumed Agreements and Assumed Real Property Leases to the Buyer are hereby overruled on the merits or otherwise treated as set forth in paragraph 3 below.  Those non-Debtor counterparties to Assumed Agreements and Assumed Real Property Leases who did not object to the assumption, assignment, or transfer of their applicable Assumed Agreement or Assumed Real Property Lease, or to their applicable Cure Cost, are deemed to have consented thereto for all purposes of this Sale Order.  All rights of the parties with respect to the issues raised in the Adjourned Objections are preserved.

### COMPELLING CIRCUMSTANCES FOR AN IMMEDIATE SALE

BB.    Time is of the essence in consummating the Transaction.  In order to maximize the value of the Purchased Assets, it is essential that the sale and assignment of the Purchased Assets occur within the time constraints set forth in the Asset Purchase Agreement.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and, sufficient cause having been shown, waives any such stay, and expressly directs entry of this

15

Sale Order as set forth herein.  The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the immediate approval and consummation of the Transaction as contemplated by the Asset Purchase Agreement.  The Buyer, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the Transaction contemplated by the Asset Purchase Agreement at any time after entry of this Sale Order, subject to the terms and conditions of the Asset Purchase Agreement.

CC.    The consummation of the Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105, 363, and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**GENERAL PROVISIONS**

1.    The Motion, and the relief requested therein, is granted and approved, and the Transaction contemplated thereby and by the Asset Purchase Agreement and Transaction Documents are approved, in each case as set forth in this Sale Order.

2.    This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein in their entirety by reference.

3.    Other than the Adjourned Objections, which are hereby preserved pending further order of the Court, all objections to the Motion or the relief requested therein that have not been withdrawn, waived, resolved, adjourned, or otherwise settled as set forth herein, as announced to this Court at the Sale Hearing or by stipulation filed with this Court, and all reservations of rights included therein, are hereby denied and overruled on the merits.  Those parties who did not object to the Motion or the entry of this Sale Order in accordance with the Bidding Procedures Order, or

16

who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

### APPROVAL OF ASSET PURCHASE AGREEMENT; BINDING NATURE

4.      The Asset Purchase Agreement and the other Transaction Documents, and all of the terms and conditions thereof, are hereby approved as set forth herein, specifically including the mutual releases set forth in Section 7.16 of the Asset Purchase Agreement, subject in all cases to the terms thereof.

5.      The consideration provided by the Buyer for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable law, and the Transaction may not be avoided or rejected by any Person, or costs or damages imposed or awarded against the Buyer, under section 363(n) or any other provision of the Bankruptcy Code.

6.      Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized and empowered to, and shall, take any and all actions necessary or appropriate to (i) consummate the Transaction pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement and the other Transaction Documents and otherwise comply with the terms of this Sale Order, and (ii) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of their obligations as contemplated by the Asset Purchase Agreement and the other Transaction Documents, in each case without further notice to or order of this Court.   The Transaction authorized herein shall immediately be of full force and effect.

7.    In accordance with this Sale Order and subject to the terms of the Asset Purchase Agreement, each of the following Debtor entities (i) JHO Intellectual Property Holdings, LLC; (ii) JHO Real Estate Investment, LLC; (iii) Quash Seltzer, LLC; and (iv) Rainbow Unicorn Bev, LLC, is authorized, but not directed, in its sole discretion, to (a) contribute and transfer all of its respective right, title, and interest (free and clear of all Liabilities and Encumbrances other than the Assumed Liabilities and Permitted Encumbrances or as set forth on Section 2.1 of the Seller Disclosure Schedule in the Asset Purchase Agreement) in and to all of the assets (including any Purchased Assets) of or held by such Debtor entity to Debtor Vital Pharmaceuticals via a contribution of such assets to Debtor Vital Pharmaceuticals and such contribution and transfer shall be deemed to have occurred prior to the Closing, and/or (b) assign and transfer all of the Liabilities of such Debtor entity (including any Assumed Liabilities) to Debtor Vital Pharmaceuticals via an assignment and assumption of such Liabilities by Debtor Vital Pharmaceuticals.

8.    This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of any Claim(s) (whether known or unknown) against the Debtors, all holders of Interests (whether known or unknown) against, in, or on, all or any portion of the Purchased Assets, all non-Debtor parties to the Assumed Agreements and Assumed Real Property Leases, the Buyer, and all successors and assigns of the foregoing, including, without limitation, any trustee, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to Chapter 7 under the Bankruptcy Code of these Chapter 11 Cases, or, to the extent applicable, other plan fiduciaries, plan administrators, liquidating trustees, or other estate representatives appointed or elected in the Debtors' Chapter 11 Cases.

**TRANSFER OF ASSETS FREE AND CLEAR OF INTERESTS; INJUNCTION**

9.      Pursuant to sections 105(a), 363(b), 363(f), 365(a), 365(b), and 365(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Purchased Assets, including but not limited to the Assumed Agreements and Assumed Real Property Leases, to the Buyer on the Closing Date in accordance with the Asset Purchase Agreement and the other Transaction Documents.  Upon and as of the Closing Date, such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets free and clear of all Interests of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase Agreement with respect to Permitted Encumbrances and Assumed Liabilities) and shall vest the Buyer with all right, title, and interest to and in such Purchased Assets subject only to the Permitted Encumbrances and Assumed Liabilities expressly set forth in the Asset Purchase Agreement.  For the avoidance of doubt, the transfer of the Purchased Assets by the Debtors to the Buyer pursuant to the Asset Purchase Agreement and this Sale Order shall be free and clear of the Interests set forth in Requirements 11, 16, 19, 20, 21, 22, 23, 26, and 34 of Schedule B, Part I of the Form Title Commitment attached as **Exhibit E** hereto, including, without limitation, the Interests described on the attached **Exhibit D** (Schedule of Interests).

10.      All such Interests shall attach solely to the Sale Proceeds with the same validity, priority, force, and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtors and their estates or any other Person may possess with respect thereto. This Sale Order shall be effective as a determination that, on and as of the Closing, all Interests of any kind or nature whatsoever (except for Assumed Liabilities and Permitted Encumbrances) have been unconditionally released, discharged, and terminated in, on, or against the Purchased Assets (but not the proceeds thereof).  The provisions of this Sale Order authorizing and approving the transfer of the Purchased Assets free and clear of Interests shall be self-executing, and neither the

Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

11.     Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all Persons holding Interests (other than Assumed Liabilities and Permitted Encumbrances) are hereby forever barred, estopped, and permanently enjoined from asserting their respective Interests against the Buyer, and each of its properties and assets, including, without limitation, the Purchased Assets.

12.     On and after the Closing Date, the Buyer shall be authorized to execute and file such documents, and to take all other actions as may be necessary, on behalf of each holder of an Interest to release, discharge, and terminate such Interests in, on and against the Purchased Assets (but not the proceeds thereof) as provided for herein, as such Interests may have been recorded or may otherwise exist.  On and after the Closing Date, and without limiting the foregoing, the Buyer shall be authorized to file termination statements, mortgage releases, or lien terminations in any required jurisdiction to remove any mortgage, record, notice filing, or financing statement recorded to attach, perfect, or otherwise notice any Interest that is extinguished or otherwise released pursuant to this Sale Order.  This Sale Order constitutes authorization under all applicable jurisdictions and versions of the Uniform Commercial Code (the "UCC") and other applicable law for the Buyer to file UCC and other applicable termination statements with respect to all security interests in, liens on, or other Interests in the Purchased Assets.

13.     On and after the Closing, the Persons holding an Interest (other than an Assumed Liability or Permitted Encumbrance expressly set forth in the Asset Purchase Agreement) shall execute such documents and take all other actions as may be reasonably necessary to release their

respective Interests in the Purchased Assets (but not the proceeds thereof), as such Interests may have been recorded or otherwise filed. The Buyer may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county, or other jurisdiction in which the Debtors are incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Sale Order as of the Closing Date. All Persons that are in possession of any portion of the Purchased Assets on the Closing Date shall promptly surrender possession thereof to the Buyer at the Closing.

14.     On and after the Closing Date, no holder of an Interest in or against the Debtors or the Purchased Assets (other than Assumed Liabilities and Permitted Encumbrances) shall interfere with the Buyer's title to, or use and enjoyment of, the Purchased Assets based on or related to such Interest.

15.     The transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement and the other Transaction Documents does not require any consents other than specifically provided for in the Asset Purchase Agreement or as otherwise provided for herein.

16.     Upon consummation of the Sale and the Closing Date, other than with respect to payment of Cure Costs, all cash proceeds of the Sale (the "Sale Proceeds") will be applied in the following order:

      i.     *First*, the full amount necessary, currently estimated at $16 million, out of the Sale Proceeds (the "Asserted Lien Amount") to satisfy in full the liens and claims of mechanics, repairmen, workmen, suppliers or materialmen liens (the "Asserted Liens") as set forth in Section 3.1(c) of the Asset Purchase Agreement, and initially

deposited into a segregated interest bearing account (the "Asserted Lien Escrow Account") to be held and disbursed pursuant to the terms set forth in paragraph 17 of this Sale Order;

ii.   *Second,* an amount of Sale Proceeds equal to $8,000,000 shall be set aside in a segregated account reserved for the payment of the WARN Act and other employee liabilities described in Section 3.1(c) of the Asset Purchase Agreement, subject in all respects to the terms thereof;

iii.   *Third,* an amount of Sale Proceeds equal to $1,000,000 to pay in full all principal and interest under the loan agreements, financing agreements, or lease arrangements with respect to the vehicles that constitute the Purchased Assets to the extent outstanding as of the Closing in accordance with Section 7.22 of the Asset Purchase Agreement;

iv.   *Fourth,* an amount of Sale Proceeds equal to $20,000,000 (in respect of items (a), (b), and (c) of the Carve-Out (as defined in paragraph 37 of the Final DIP Order)) plus an estimate not to exceed $50,000 (in respect of items (d), (e), and (f) of the Carve-Out), shall be deemed deposited into a Carve-Out Escrow (as defined in paragraph 37 of the Final DIP Order), in full and complete satisfaction of any obligations in connection with the Carve-Out as defined in the Final DIP Order, or any other obligations (if any) of the DIP Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Lenders (each as defined in the Final DIP Order) in respect of professional fees and expenses (and other Carve-Out obligations) payable in connection with these Chapter 11 Cases and without for avoidance of

doubt the requirement of a Carve-Out Termination Notice or any other notice or action;

 v. *Fifth,* an amount equal to the sum of (A) $287,000,000, <u>less</u> (B) any unfunded portion of the commitments under the DIP Facility at such time, <u>plus</u> (C) an amount equal to the unreimbursed professional fees and expenses of the DIP Agent accrued through the Closing Date, <u>less</u> (D) an amount equal to the aggregate amount of interest accrued in respect of the DIP Facility that the Debtors pay to the DIP Agent during the period from June 6, 2023 through the Closing Date, if any, to the outstanding obligations under the DIP Facility (to be applied in accordance with the DIP Facility or as otherwise determined by the Administrative Agent under the DIP Facility and otherwise permitted under applicable law (the "<u>DIP Partial Payoff</u>")); and

 vi. *Sixth,* the remainder of the Sale Proceeds shall be deposited into a segregated interest-bearing account (the "<u>Sale Proceeds Account</u>") to fund expenses of the Debtors' estates in the ordinary course, or to make such other distributions to creditors as may be authorized by further Court order.

Reasonable notice of any request for the release of Sale Proceeds from the Sale Proceeds Account or the Asserted Lien Escrow Account shall be filed with this Court and given to the Debtors and all parties in interest asserting a Claim to, or Interest in, the Sale Proceeds and the rights of the Debtors and all parties in interest to object to the release of all or any part of the Sale Proceeds from the Sale Proceeds Account or the Asserted Lien Escrow Account is hereby fully preserved. All Claims and Interests will attach to the Sale Proceeds to the same extent and with the same priority as existed immediately prior to consummation of the Sale, subject to any claims,

defenses and objections, if any, that the Debtors, their estates, or any other party in interest may possess with respect thereto; *provided that* the foregoing does not alter or impair any parties' rights provided under the Final DIP Order (except as specifically provided above).

17. Notwithstanding anything in this Sale Order or the Asset Purchase Agreement to the contrary, Sale Proceeds in an amount equal to the Asserted Lien Amount shall be placed in the Asserted Lien Escrow Account as soon as reasonably practicable after receipt of the Sale Proceeds and shall remain in the Asserted Lien Escrow Account pending further order of the Court or agreement between the Debtors and Stellar Group, Inc.  Any property transferred to the Buyer pursuant to the Sale that is subject to the Asserted Liens shall pass free and clear of all Interests notwithstanding the Asserted Liens.  For the avoidance of doubt, to the extent that the Asserted Liens are deemed valid by order of the Court or agreement between the Debtors and Stellar Group, Inc., such liens shall attach solely to the funds in the Asserted Lien Escrow Account.

18. On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to the Buyer of the Purchased Assets and the Debtors' interests in the Purchased Assets acquired by the Buyer under the Asset Purchase Agreement.  This Sale Order is and shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date (other than Assumed Liabilities and Permitted Encumbrances), shall have been unconditionally released, discharged, and terminated to the fullest extent permitted by applicable law, and that the conveyances described herein have been effected.

19. This Sale Order is and shall be binding upon and govern the acts of all Persons (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, secretaries of state, and federal, state, and local officials) who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease.  Each of the foregoing Persons shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the Interests or to otherwise consummate the Transaction contemplated by this Sale Order, the Asset Purchase Agreement, or any Transaction Document.

## ASSUMED AGREEMENTS AND
## ASSUMED REAL PROPERTY LEASES; CURE PAYMENTS

20.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing Date, the Debtors' assumption, assignment, and transfer to the Buyer of the Assumed Agreements and Assumed Real Property Leases is hereby authorized and approved in full subject to the terms set forth below.

21.    Upon and as of the Closing, the Debtors are authorized and empowered to, and shall, assume, assign, and/or transfer each of the Assumed Agreements and Assumed Real Property Leases to the Buyer free and clear of all Interests (except as expressly set forth in the Asset Purchase Agreement with respect to Permitted Encumbrances and Assumed Liabilities). The payment of the applicable Cure Costs (if any), or—with respect to any disputed Cure Costs— the reservation by the Debtors (or the Buyer on behalf of the Debtors) of an amount of cash that is equal to the lesser of (i) the amount of any cure or other compensation asserted by the applicable counterparty to such Assumed Agreement or Assumed Real Property Lease as required under section 365 of the Bankruptcy Code, or (ii) the amount approved by order of this Court to reserve for such payment (such lesser amount, the "Alleged Cure Claim") shall, pursuant to section 365 of the Bankruptcy Code and other applicable law, (a) effect a cure, or provide adequate assurance

of cure, of all defaults existing thereunder as of the Closing Date, and (b) compensate, or provide adequate assurance of compensation, for any actual pecuniary loss to such non-Debtor party resulting from such default. Accordingly, on and as of the Closing Date, other than such payment or reservation, neither the Debtors nor the Buyer shall have any further liabilities or obligations to the non-Debtor counterparties to the Assumed Agreements and Assumed Real Property Leases with respect to, and the non-Debtor counterparties to the Assumed Agreements and Assumed Real Property Leases shall be forever barred, estopped, and permanently enjoined from seeking, any additional amounts or Claims that arose, accrued, or were incurred at any time on or prior to the Closing Date on account of the Debtors' cure or compensation obligations arising under section 365 of the Bankruptcy Code. Notwithstanding anything to the contrary in the Motion, the Asset Purchase Agreement, or this Sale Order, from and after the assumption and assignment of such Assumed Agreements and Assumed Real Property Leases after the Closing, the Buyer shall comply with the terms of each Assumed Agreement and Assumed Real Property Lease. The Buyer has provided adequate assurance of future performance under the relevant Assumed Agreements and Assumed Real Property Leases within the meaning of section 365(f) of the Bankruptcy Code.

22. To the extent any provision in any Assumed Agreement or Assumed Real Property Lease assumed and assigned pursuant to this Sale Order (including, without limitation, any "change of control" provision) (i) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, such assumption or assignment, or (ii) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following: (a) the commencement of these Chapter 11 Cases; (b) the insolvency or financial condition of the Debtors at any time before the closing of these Chapter 11 Cases; (c) the Debtors' assumption and assignment of such Assumed Agreement or Assumed Real Property Lease; or (d) the consummation of the Transaction, then

such provision shall be deemed modified so as to not entitle the non-Debtor counterparty thereto to prohibit, restrict, or condition such assumption or assignment, to modify or terminate such Assumed Agreement or Assumed Real Property Lease, or to exercise any other default-related rights or remedies with respect thereto, including, without limitation, any such provision that purports to allow the non-Debtor counterparty thereto to recapture such Assumed Agreements and Assumed Real Property Leases, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.    All such provisions constitute unenforceable anti-assignment provisions that are void *ab initio* and of no force and effect pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code; *provided, however*, this paragraph 22 shall only apply to the assumption and assignment of the Assumed Agreements and Assumed Real Property Leases effectuated as part of the Sale and nothing in this Sale Order shall permit any further or other assignment, assignment and assumption, or other transfer of any Assumed Agreements or Assumed Real Property Leases except as expressly permitted under and in accordance with the terms of such Assumed Agreements and Assumed Real Property Leases.

23.    All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assumed Agreements and Assumed Real Property Leases have been satisfied.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Assumed Agreements and Assumed Real Property Leases free and clear of any Interest (other than Permitted Encumbrances and Assumed Liabilities as provided for in the Asset Purchase Agreement), and each Assumed Agreement or Assumed Real Property Lease shall be fully enforceable by the Buyer in accordance

with its respective terms and conditions, except as limited or modified by the provisions of this Sale Order.  Upon and as of the Closing, the Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Agreements and Assumed Real Property Leases and, accordingly, the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Agreements and Assumed Real Property Leases.  The Buyer shall have no liability arising or accruing under the Assumed Agreements and Assumed Real Property Leases on or prior to the Closing Date, except as otherwise expressly provided in the Asset Purchase Agreement or this Sale Order.

24.     To the extent a non-Debtor counterparty to a Assumed Agreement or Assumed Real Property Lease failed to timely object to a Cure Cost in accordance with the Bidding Procedures Order and Assumption Notice, such Cure Cost shall be deemed to be finally determined and any such non-Debtor counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost at any time, and such Cure Cost, when paid, shall be deemed to resolve any defaults or other breaches with respect to any Assumed Agreement or Assumed Real Property Lease to which it relates.  Unless as otherwise set forth in this Sale Order or the Asset Purchase Agreement, the non-Debtor counterparties to the Assumed Agreements and Assumed Real Property Leases are barred from asserting against the Debtors, their estates, and the Buyer, any default or unpaid obligation allegedly arising or occurring before the Closing Date, any pecuniary loss resulting from such default, or any other obligation under the Assumed Agreements and Assumed Real Property Leases arising or incurred prior to the Closing Date, other than the applicable Cure Costs.  Upon the payment of the applicable Cure Costs or the reservation of the Alleged Cure Claims, if any, the Assumed Agreements and Assumed Real Property Leases will remain in full force and effect, and no default shall exist, or be deemed to exist, under the Assumed

Agreements and Assumed Real Property Leases as of the Closing Date nor shall there exist, or be deemed to exist, any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

25.    All counterparties to the Assumed Agreements and Assumed Real Property Leases shall be deemed to have consented to such assumption and assignment under section 365(c)(1)(B) of the Bankruptcy Code and the Buyer shall enjoy all of the Debtors' rights, benefits, and privileges under each such Assumed Agreement and Assumed Real Property Lease as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.

26.    Upon payment of the Cure Costs, no default or other obligations arising prior to the Closing Date shall exist under any Assumed Agreement or Assumed Real Property Lease, and, except as otherwise set forth in this Sale Order, each non-Debtor party is forever barred and estopped from: (i) declaring a default by the Debtors or the Buyer under such Assumed Agreement or Assumed Real Property Lease; (ii) raising or asserting against the Debtors or the Buyer, or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Agreements and Assumed Real Property Leases; or (iii) taking any other action against the Buyer as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assumed Agreement or Assumed Real Property Lease, in each case in connection with the Sale. Except as otherwise set forth in this Sale Order, each non-Debtor counterparty is also forever barred and estopped from raising or asserting against the Buyer any assignment fee, default, breach, Claim, pecuniary loss, or condition to assignment arising under or related to the Assumed

Agreements and Assumed Real Property Leases existing as of the Closing Date or arising by reason of the Closing of the Sale other than the Cure Costs.

27.     Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors that any Assumed Agreement or Assumed Real Property Lease is an executory contract or unexpired lease under section 365 of the Bankruptcy Code.  Individual purchase orders issued by vendors with whom the Debtors have master supply agreements shall not be deemed to constitute one and the same contract as the master supply agreement.  The Debtors may assume and assign to the Buyer a vendor's master supply agreement without assuming and assigning or paying claims arising under individual purchase orders issued by such vendor, and such claims shall not constitute Cure Costs under the master supply agreement.

28.     The failure of the Debtors or the Buyer, or any non-Debtor party to enforce at any time one or more terms or conditions of any Assumed Agreement or Assumed Real Property Lease shall not be a waiver of such terms or conditions or of their respective rights to enforce every term and condition of the Assumed Agreements and Assumed Real Property Leases.

**ADDITIONAL INJUNCTION; NO SUCCESSOR LIABILITY**

29.     Effective upon the Closing Date and except as expressly set forth in the Asset Purchase Agreement with respect to Permitted Encumbrances and Assumed Liabilities, all Persons forever barred, estopped, and permanently enjoined from asserting against the Buyer any Interest of any kind or nature whatsoever such Person had, has, or may have against or in the Debtors, their estates, officers, directors, managers, shareholders, or the Purchased Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other proceeding) to collect or recover any Interest; (ii) enforcing,

attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to an Interest; (iii) creating, perfecting, or enforcing any Interest; (iv) asserting any right of subrogation, setoff or recoupment of any kind with respect to an Interest (except if such right was asserted before the Petition Date, or preserved in a timely filed proof of claim or motion filed with the Court); (v) commencing or continuing any action in any manner or place, that does not comply with or is inconsistent with the provisions of this Sale Order, other orders of this Court, the Asset Purchase Agreement, the other Transaction Documents, or any other agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating, failing, or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets in connection with the Sale, in each case of (i) through (vi), as against the Buyer, or any of its affiliates or subsidiaries, or any of their respective Representatives, or any of its or their respective property or assets, including the Purchased Assets.

30.     To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing Date.

31.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Purchased Assets sold, transferred, assigned, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale.  Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all

documents and instruments necessary and appropriate to consummate the Sale set forth in the Asset Purchase Agreement.

32.     Subject to the terms, conditions, and provisions of this Sale Order, Persons are hereby forever prohibited and barred from taking any action that would adversely affect or interfere (i) with the ability of the Debtors to sell and transfer the Purchased Assets to Buyer in accordance with the terms of the Asset Purchase Agreement (subject to the Permitted Encumbrances and Assumed Liabilities) and this Sale Order, and (ii) with the ability of the Buyer to acquire, take possession of, use and operate the Purchased Assets in accordance with the terms of the Asset Purchase Agreement and this Sale Order.

33.     The Buyer shall not be deemed, as a result of any action taken in connection with the Transaction contemplated by the Asset Purchase Agreement or the Transaction Documents to: (i) be a successor to the Debtors or their estates; (ii) have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates; (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors; (iv) have a common identity with the Debtors; (v) have acquired the trade or business of any of the Debtors for any purpose under applicable U.S. federal law (including the Bankruptcy Code and the Internal Revenue Code of 1986, as amended); or (vi) be held out to the public as a continuation of the Debtors or the Debtors' trade or business.

34.     Except as expressly set forth in the Asset Purchase Agreement or this Sale Order with respect to Assumed Liabilities or Permitted Encumbrances, the transfer of the Purchased Assets, including, without limitation, the assumption, assignment, and transfer of any Assumed Agreement and Assumed Real Property Lease, to the Buyer shall not cause or result in, or be deemed to cause or result in, the Buyer, any of its affiliates or subsidiaries, or any of their

respective representatives, having any liability, obligation, or responsibility for, or any Purchased Assets being subject to or being recourse for, any Interest whatsoever, whether arising under any doctrines of successor, transferee, or vicarious liability or any kind or character, including, but not limited to, under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee, or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, or regulation, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, breach of fiduciary duty, aiding or abetting breach of fiduciary duty, or otherwise, whether at law or in equity, directly or indirectly, and whether by payment or otherwise.  The Buyer shall not be deemed to have expressly or implicitly assumed any of the Debtors' liabilities (other than a Permitted Encumbrance or Assumed Liability expressly set forth in the Asset Purchase Agreement).  Except as otherwise provided herein or in the Asset Purchase Agreement, the transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement shall not result in the Buyer or the Purchased Assets having any liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any claim against the Debtors or against any insider of the Debtors or Interests (other than Assumed Liabilities or Permitted Encumbrances).

## **GOOD FAITH**

35.    The Transaction contemplated by this Sale Order, the Asset Purchase Agreement, and the other Transaction Documents is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale

and Transaction shall not alter, affect, limit, or otherwise impair the validity of the Sale or Transaction (including the assumption, assignment, and/or transfer of the Assumed Agreements and Assumed Real Property Leases), except for so long as such authorization and consummation are duly stayed pending such appeal.  The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code.  The Buyer is also not an "insider" of any Debtor, as that term is defined in the Bankruptcy Code.

### OTHER PROVISIONS AND RESOLUTIONS OF SALE OBJECTIONS

36.    Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stay provisions provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply.  In the absence of any Person obtaining a stay pending appeal, the Debtors and the Buyer are free to close the Transaction under the Asset Purchase Agreement at any time pursuant to the terms thereof.

37.    The Buyer shall not be required, pursuant to section 365(l) of the Bankruptcy Code or otherwise, to provide any additional deposit or security with respect to any of the Assumed Agreements and Assumed Real Property Leases to the extent not previously provided by the Debtors.

38.    Neither the Buyer nor the Debtors shall have an obligation to close the Transaction until all conditions precedent in the Asset Purchase Agreement to each of their respective obligations to close the Transaction have been met, satisfied, or waived in accordance with the terms of the Asset Purchase Agreement.  The provisions of this Sale Order are self-executing.  In the absence of any Person obtaining a stay pending appeal, the Debtors and the Buyer are free to close the Transaction under the Asset Purchase Agreement at any time pursuant to the terms

thereof.  The Transaction contemplated by the Asset Purchase Agreement is undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the sale of the Purchased Assets to the Buyer (including the assumption and assignment by the Debtors of any of the Assumed Agreements and Assumed Real Property Leases), except for so long as such authorization is duly stayed pending such appeal.  The Buyer is a buyer in good faith of the Purchased Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

39.    Nothing in this Sale Order shall modify or waive any closing conditions or termination rights set forth in the Asset Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

40.    No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Transaction.

41.    The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

42.    The Asset Purchase Agreement and the other Transaction Documents may be modified, amended, or supplemented in a writing signed by the parties thereto, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates or their creditors, without further notice to or order of this Court.  Any modifications, amendments or supplements having a material adverse effect on the Debtors' estates or their creditors shall be subject to the approval of this Court after notice and a hearing.

43.     <u>Broward County</u>.  To the extent that Broward County, Florida ("<u>Broward County</u>"), has valid, perfected, enforceable, senior and non-avoidable liens for 2023 property taxes and non-ad valorem assessments arising under state law on any proceeds from the Transaction (the "<u>2023 Broward County Liens</u>"), proceeds shall be placed in a segregated account in the aggregate amount of $125,965.61 as adequate protection for Broward County's claims or used to pay Broward County on account of such claims promptly following Closing.  The 2023 Broward County Liens shall attach to such proceeds to the same extent and with the same priority as the liens they now hold against the property of the Debtors.  Any funds placed in a segregated account shall be on the order of adequate protection and shall constitute neither the allowance of the claims of Broward County, nor a cap on the amounts they may be entitled to receive.  Furthermore, the 2023 Broward County Liens shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens.  Any funds segregated pursuant to this paragraph may be distributed only upon agreement between Broward County and the Debtors, or by subsequent order of the Court, duly noticed to Broward County.

44.     <u>Chubb</u>.  Notwithstanding anything to the contrary in the Motion, the Asset Purchase Agreement, any lists of Assumed Agreements and Assumed Real Property Leases to be assumed and assigned and/or any Assumption Notices, this Sale Order, or any documents relating to any of the foregoing: nothing shall permit or otherwise effect a sale, an assignment, or any other transfer of: (i) any insurance policies that have been issued by Federal Insurance Company, Great Northern Insurance Company, Chubb Custom Insurance Company, Vigilant Insurance Company, and/or any of their U.S.-based affiliates and successors (collectively, the "<u>Chubb Companies</u>") and all agreements, documents or instruments relating thereto (collectively, the "<u>Chubb Insurance Contracts</u>"); and/or (ii) any rights, proceeds, benefits, claims, rights to payments and/or recoveries

under such Chubb Insurance Contracts to the Buyer; *provided, however*, that to the extent any claim with respect to the Purchased Assets arises that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Buyer any such insurance proceeds (each, a "Proceed Turnover"), *provided, further, however*, that the Chubb Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover.

45.      OBI/Monster Escrow Account.   The *Order Granting Debtors' and Creditors Monster Energy Company and Orange Bang, Inc.'s Joint Agreed Motion to Approved Agreement Regarding Royalty that Accrued Postpetition* [ECF No. 639] (the "Royalty Order") is modified such that both the Debtors' and Buyers' obligations under the Royalty Order shall be deemed satisfied following distribution of the OBI/Monster Escrow Amount (and if applicable, payment of such amount from reserves from the Sale Proceeds established in accordance with this Sale Order) in accordance with Section 7.19 of the Asset Purchase Agreement.  For the avoidance of doubt, upon Closing of the Transaction under the Asset Purchase Agreement and the satisfaction of the terms of Section 7.19 of the Asset Purchase Agreement, the Debtors shall have no further financial obligations to MEC or Orange Bang, Inc. with respect to the Postpetition Royalty (as defined in the Royalty Order).

46.      This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things: (i) interpret, implement, and enforce the terms and provisions of this Sale Order, the Asset Purchase Agreement, the Transaction Documents, and any amendments thereto and any waivers and consents given thereunder; (ii) compel delivery of the Purchased Assets to the Buyer; (iii) compel performance of obligations owed to the Debtors; (iv) resolve any disputes related to the Transaction Documents; (v) compel delivery of any waivers, releases, or

other related documentation reasonably requested by the Debtors or the Buyer to evidence the release of any Interests in the Purchased Assets; (vi) enforce the injunctions and limitations of liability set forth in this Sale Order; and (vii) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assumed Agreements and Assumed Real Property Leases.

47.    All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

48.    Consistent with the terms of the Asset Purchase Agreement, the Debtors are authorized to change their legal names, and file any necessary documents to effectuate such name changes, without further order of the Court. The Debtors shall file a motion to correct the debtor's name pursuant to Local Rule 1009-1(B).

49.    Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (i) these Chapter 11 Cases, (ii) any subsequent chapter 7 case into which these Chapter 11 Cases may be converted, or (iii) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order. To the extent of any such conflict or derogation, the terms of this Sale Order shall govern.

50.    To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion, the terms of this Sale Order shall govern.

51.    To the extent there are any inconsistencies between the terms of this Sale Order, on the one hand, and the Asset Purchase Agreement or any Transaction Document, on the other hand, the terms of this Sale Order shall govern.

52.    The provisions of this Sale Order are non-severable and mutually dependent.

# EXHIBIT A

**Asset Purchase Agreement**

## EXHIBIT B

**Schedule of Cure Costs**

**EXHIBIT C**

**Adjourned Objections**

| Objector [ECF No.] | Status |
|---|---|
| *Formal Objections* | |
| SLBS Limited Partnership d/b/a Summit Distributing [ECF No. 1054] | Adjourned to a date to be determined |
| Archer Daniels Midland Company, ADM Wild Europe GmbH & Co. KG and Wild Flavors [ECF No. 1040] | Adjourned to a date to be determined |
| LPUSA, LLC, d/b/a Network [ECF No. 1074] | Adjourned to a date to be determined |
| Doehler USA Inc. [ECF No. 1087] | Adjourned to a date to be determined |
| Ally Bank [ECF No. 1090] | Adjourned to a date to be determined |
| Ardagh Metal Packaging USA Corp [ECF No 1101] | Adjourned to a date to be determined |
| Graphic Packaging International [ECF Nos. 1102 & 1480] | Adjourned to a date to be determined |
| Fona International, Inc. [ECF No. 1106] | Adjourned to a date to be determined |
| Prologis Targeted US Logistics Fund L.P. [ECF No. 1108] | Adjourned to a date to be determined |
| Ball Metal Beverage Container Corp [ECF No. 1110] | Adjourned to a date to be determined |
| **Informal Objections** | |
| Krones Inc. | Adjourned to a date to be determined |

**EXHIBIT D**[7]

**Schedule of Interests Affecting Real Property Located at:**
**1635 S. 43rd Ave., Phoenix, Maricopa County, AZ**

11. Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing
      Amount:     $541,400,000.00
      Dated:       December 3, 2020
      Grantor:     JHO Real Estate Investment, LLC, a Florida limited liability company
      Trustee:      Stewart Title & Trust of Phoenix, Inc., a Delaware corporation
      Beneficiary:  Truist Bank, as Administrative Agent
      Recording Date: December 14, 2020
      Recording No.:    20201230181

16. Mechanic's Lien
      Claimant:    Nexus Steel, L.L.C.
      Amount:     $313,512.91
      Recording Date: January 20, 2022
      Recording No.:    20220060823

19. Mechanic's Lien
      Claimant:    Hardrock Concrete Placement Co., Inc.
      Amount:     $669,195.67
      Recording Date:    March 22, 2022
      Recording No.:    20220257254

20. Mechanic's Lien
      Claimant:    Stellar Group, Inc.
      Amount:     $7,722,974.37
      Recording Date: March 23, 2022
      Recording No.:    20220259809

21. Mechanic's Lien
      Claimant:    Faith Technologies Incorporated, a Wisconsin corporation
      Amount:     $807,781.00
      Recording Date: March 24, 2022
      Recording No.:    20220266675

22. Mechanic's Lien
      Claimant:    Faith Technologies Incorporated, a Wisconsin corporation
      Amount:     $2,777,007.15
      Recording Date: March 24, 2022
      Recording No.:    20220266676

---

[7] Number references in this Exhibit are to Schedule B, Part I, of Chicago Title commitment no. CT349230039 Dated May 23, 2023, attached as **Exhibit E** hereto.

23. Mechanic's Lien
      Claimant:      HACI Mechanical Contractors, Inc.
      Amount:      $224,126.00
      Recording Date:      April 22, 2022
      Recording No.:      20220357919

26. Notices of Lis Pendens
      Court:      Superior Court of Maricopa County, AZ
      Case No.:      CV2022-008873
      Plaintiff:      Nexus Steel, LLC
      Defendant:      JHO Real Estate Investment, LLC, et al.
      Recording Dates and Recording Nos.:      July 13, 2022, Recording No. 20220570741
      August 10, 2022, Recording No. 20220633035
      August 25, 2022, Recording No. 20220667523
      September 21, 2022, Recording No. 20220726494
      October 3, 2022, Recording No. 20220753033
      October 21, 2022, Recording No. 20220791939

31. Any lien, or right to a lien, for services, labor, materials or equipment whether or not shown by the public records.

34. Mechanic's Lien
      Claimant:      CM Builders, Inc., d/b/a Integrated Masonry
      Amount:      $145,637.30
      Recording Date:      April 4, 2022
      Recording No.:      20220297171

**<u>EXHIBIT E</u>**

**Schedule B, Part I of Chicago Title Commitment**

CHICAGO TITLE INSURANCE COMPANY

# SCHEDULE B, PART I - Requirements

All of the following Requirements must be met:

1.      The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land.  The Company may then make additional Requirements or Exceptions.

2.      Pay the agreed amount for the estate or interest to be insured.

3.      Pay the premiums, fees, and charges for the Policy to the Company.

4.      Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

5.      Notice:  Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

6.      Intentionally Deleted

7.      Intentionally Deleted

8.      Intentionally Deleted

9.      The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below.

        Limited Liability Company:   Blast Asset Acquisition LLC, a Delaware limited liability company

        a.      A copy of its operating agreement, if any, and any and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member.

        b.      If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendment thereto with the appropriate filing stamps.

        c.      If the Limited Liability Company is  member-managed a full and complete current list of members certified by the appropriate manager or member.

        d.      A current dated certificate of good standing from the proper governmental authority of the state in which the entity was created.

        e.      If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

        The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

10.     Intentionally Deleted

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.

COMMITMENT NO. CT349230039

CHICAGO TITLE INSURANCE COMPANY

AMENDMENT 1

## SCHEDULE B, PART I - Requirements
(continued)

11.     Furnish for recordation a full release/reconveyance of deed of trust:

Amount:             $541,400,000.00
Dated:              December 3, 2020
Trustor/Grantor:    JHO Real Estate Investment, LLC, a Florida Limited Liability Company
Trustee:            Stewart Title & Trust of Phoenix, Inc., a Delaware Corporation
Beneficiary:        Truist Bank
Recording Date:     December 14, 2020
Recording No.:      20201230181

The Deed of Trust set forth above is purported to be a "Credit Line" Deed of Trust.  It is a requirement that the Trustor/Grantor of said Deed of Trust provide written authorization to close said credit line account to the Lender when the Deed of Trust is being paid off through the Company or other Settlement/Escrow Agent or provide a satisfactory subordination of this Deed of Trust to the proposed Deed of Trust to be recorded at closing.

12.     Furnish a copy of the Cancellation Instruction (Credit Line Authorization), signed by the Borrower and sent to the Lender, for the Deed of Trust shown in Requirement No. 11.

13.     Intentionally Deleted

14.     Intentionally Deleted

15.     The Company will require that an Owner's Affidavit be completed by the party(s) named below before the issuance of any policy of title insurance.

Party(s):           JHO Real Estate Investment, LLC, a Florida limited liability company

The Company reserves the right to add additional items or make further requirements after review of the requested Affidavit.

16.     Furnish for recordation a release of the notice and claim of mechanic's or materialman's lien by

Claimant:           Nexus Steel, LLC
Amount:             $313,512.91
Recording Date:     January 20, 2022
Recording No:       20220060823

17.     Intentionally Deleted

18.     Intentionally Deleted

19.     Furnish for recordation a release of the notice and claim of mechanic's or materialman's lien by

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



COMMITMENT NO. CT349230039

CHICAGO TITLE INSURANCE COMPANY | AMENDMENT 1

### SCHEDULE B, PART I - Requirements
(continued)

| | |
|---|---|
| Claimant: | Hardrock Concrete Placement Co., Inc. |
| Amount: | $669,195.67 |
| Recording Date: | March 22, 2022 |
| Recording No: | 20220257254 |

20.   Furnish for recordation a release of the notice and claim of mechanic's or materialman's lien by

| | |
|---|---|
| Claimant: | Stellar Group, Inc. |
| Amount: | $7,722,974.37 |
| Recording Date: | March 23, 2022 |
| Recording No: | 20220259809 |

21.   Furnish for recordation a release of the notice and claim of mechanic's or materialman's lien by

| | |
|---|---|
| Claimant: | Faith Technologies Incorporated, a Wisconsin Corporation |
| Amount: | $807,781.00 |
| Recording Date: | March 24, 2022 |
| Recording No: | 20220266675 |

22.   Furnish for recordation a release of the notice and claim of mechanic's or materialman's lien by

| | |
|---|---|
| Claimant: | Faith Technologies Incorporated, a Wisconsin Corporation |
| Amount: | $2,777,007.15 |
| Recording Date: | March 24, 2022 |
| Recording No: | 20220266676 |

23.   Furnish for recordation a release of the notice and claim of mechanic's or materialman's lien by

| | |
|---|---|
| Claimant: | HACI Mechanical Contractors, Inc. |
| Amount: | $224,126.00 |
| Recording Date: | April 22, 2022 |
| Recording No: | 20220357919 |

24.   Intentionally Deleted

25.   Intentionally Deleted

26.   Dismiss the pending court action referred to below and furnish for recordation a release of the lis pendens:

| | |
|---|---|
| Court: | Superior Court |
| Case No: | CR2022-008873 |

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

Printed: 06.02.23 @ 11:58 AM
AZ-CT-FWPY-01085.043349-SPS-1-23-CT349230039

**COMMITMENT NO. CT349230039**

CHICAGO TITLE INSURANCE COMPANY

**AMENDMENT 1**

### SCHEDULE B, PART I - Requirements
(continued)

| | |
|---|---|
| County: | Maricopa |
| Plaintiff: | Nexus Steel, LLC, an Arizona limited liability company |
| Defendant: | JHO Real Estate Investment, LLC, a Florida Limited Liability Company, et al |
| Lis Pendens Recording Date: | July 13, 2022 |
| Lis Pendens Recording No: | 20220570741, and recorded August 10, 2022 in |
| Lis Pendens Recording No: | 20220633035, and recorded August 25, 2022 in |
| Lis Pendens Recording No: | 20220667523, and recorded September 21, 2022 in |
| Lis Pendens Recording No: | 20220726494, and recorded October 3, 2022 in |
| Lis Pendens Recording No: | 20220753033, and recorded October 21, 2022 |
| Lis Pendens Recording No: | 20220791939 |

27.     Institute proceedings in the bankruptcy court where a petition was filed:

Name of Debtor:    JHO Real Estate Investment, LLC, a Florida Limited Liability Company
U.S. District Court:  Southern District of Florida, Fort Lauderdale Division
Case No.            22-17847-SMG

Leading to the entry of a Final Non-appealable Order

Authorizing the transaction to be insured.

Provide a certified copy of the Order called for above.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

28.     Intentionally Deleted

29.     Furnish for recordation a deed as set forth below:

Type of deed:   Warranty Deed
Grantor(s):     JHO Real Estate Investment, LLC
Grantee(s):     Purchaser with contractual rights

Note: ARS 11:1133 may require the completion and filing of an Affidavit of Value.

30.     Intentionally Deleted

31.     Information reviewed and/or in the possession of the Company indicates that improvements to the land are being contemplated, are underway or recently completed.  Furnish documents required by the Company for review and approval by Company's Corporate Underwriting Department.  Documents requested for review will be used to determine if an indemnification by the seller/borrower, and/or contractor will be acceptable to the Company. Any

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



COMMITMENT NO. CT349230039
AMENDMENT 1

**CHICAGO TITLE INSURANCE COMPANY**

## SCHEDULE B, PART I - Requirements
(continued)

indemnity must be on the Company's form.  Spouses and individual principals of corporations or other entities may be required to join in the execution of said indemnity.

Please contact your Escrow Officer or Title Officer for clarification as to what documentation will be needed to begin the underwriting review process.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

32.    The transaction contemplated in connection with this Report is subject to the review and approval of the Company's Corporate Underwriting Department.  The Company will require a liability amount and list of requested endorsements prior to submitting the transaction for said approval. Failure to provide this information may result in the closing being delayed.

The Company reserves the right to add additional items or make further requirements after review of the requested documentation.

33.    Notwithstanding anything to the contrary in this Commitment, upon entry of a sale order that is not subject to appeal in JHO Real Estate Investment LLC's pending chapter 11 bankruptcy case (which sale order contains "free and clear" language pursuant to section 363 of the United States Bankruptcy Code acceptable to Chicago Title and the motion seeking which was properly served on the parties named in the following listed Requirements), each of Requirements 11, 16, 19, 20, 21 - 23, 26, 31 and 34 of this Schedule B, Part 1 shall conclusively be deemed satisfied

34.    Furnish for recordation a release of the notice and claim of mechanic's or materialman's lien by

| | |
|---|---|
| Claimant: | Integrated Masonry |
| Amount: | $145,637.30 |
| Recording Date: | April 4, 2022 |
| Recording No: | 20220297171 |

Tax Note:

| | |
|---|---|
| Year: | 2022 |
| Tax Parcel No: | 105-14-001Q |
| Total Tax: | $401,833.68 |
| First Installment Amount: | $PAID |
| Second Installment Amount: | $PAID |

Note:  Any documents being executed in conjunction with this transaction must be signed in the presence of an authorized Company employee, an authorized employee of a Company agent, an authorized employee of the insured lender, or by using Bancserv or other Company-approved third-party service.  If the above requirement cannot be met, please call the Company at the number provided in this report.

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright American Land Title Association.  All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.



CHICAGO TITLE INSURANCE COMPANY

**COMMITMENT NO. CT349230039**
**AMENDMENT 1**

## SCHEDULE B, PART I - Requirements
(continued)

**END OF SCHEDULE B, PART I**

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance issued by Chicago Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I-Requirements; Schedule B, Part II-Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright American Land Title Association. All rights reserved.**

The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**Exhibit B**

**Blackline**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No.: 22-17842-PDR |
| Debtors.[1] | (Jointly Administered) |

_____/

**ORDER (I) AUTHORIZING AND APPROVING (A) THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR
OF ALL LIENS, CLAIMS, AND ENCUMBRANCES AND (B) THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES IN CONNECTION THEREWITH, AND (II) GRANTING RELATED RELIEF**

Upon the motion [ECF No. 707] (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Sale Order"), (i) authorizing (a) the sale of substantially all of the Debtors' assets free and clear of all claims, liens, liabilities, rights, interests, and encumbrances (except for Assumed Liabilities and Permitted Encumbrances), and (b) the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases, and (ii) granting related relief; and this Court having entered the *Order (I) Approving Bidding Procedures, (II) Authorizing the Debtors to Provide Bid Protections, and (III) Granting Related Relief* [ECF No. 854] (the "Bidding Procedures Order");[3] and

---

[1]    The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("Vital Pharmaceuticals") (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC ("Quash Seltzer") (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in, as applicable, the Asset Purchase Agreement (as defined herein), or if not defined therein, the Motion, or the Bidding Procedures Order (as defined herein).

[3]    [If a Stalking Horse Bidder is approved by a Court order, insert "and the [*Stalking Horse Order* [ECF No. [ ● ]] approving the Stalking Horse Bidder, the Stalking Horse Agreement and the Bid Protections, each as defined below (the "Stalking Horse Order")."]

Blast Asset Acquisition LLC, the buyer (the "Buyer"), having been selected as the Successful Bidder; and upon the Buyer and certain of the Debtors [and certain of their non-Debtor affiliates] having entered into that certain *Asset Purchase Agreement*, dated as of June 28, 2023, a copy of which is attached hereto as **Exhibit A** (as may be amended, modified, or supplemented in accordance with the terms of this Sale Order and such agreement, the "Asset Purchase Agreement"); and this Court having reviewed the 9019 Motion; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and this Court having considered the [●] Declaration; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and a hearing having been held to consider the relief requested in the Motion (the "Sale Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and evidence adduced at the Sale Hearing or otherwise establish just cause for the relief granted herein; and upon all of the proceedings had before this Court and at the Sale Hearing; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT:**[43]

## JURISDICTION

A.    This Court has jurisdiction to hear and determine the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).

B.    Venue of the Debtors' above-captioned chapter 11 cases (these "Chapter 11 Cases") and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

---

[43]    The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

US-DOCS\138480896.10

C.    This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of this Sale Order as set forth herein.

D.    The statutory predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and the applicable Local Rules.

## **NOTICE OF THE SALE, AUCTION AND THE CURE PAYMENTS**

E.    As evidenced by the affidavits and/or certificates of service filed with the Court,[54] proper, timely, adequate, and sufficient notice of, *inter alia*, the Motion, the Bidding Procedures, the Assumption and Assignment Procedures, the Asset Purchase Agreement, the Auction, the sale of the Purchased Assets pursuant to the terms of the Asset Purchase Agreement and this Sale Order

---

[54]    Such affidavits and/or certificates of service were filed by the Debtors at [ECF Nos No. [ 710] (certificate of service regarding the Motion); [ECF No. 735] (certificate of service regarding hearing on Motion); [ECF No. 841] (certificate of service regarding revised Bidding Procedures Order and declaration in support of Bidding Procedures); [ECF No. 847] (certificate of service regarding extension of certain transaction deadlines); [ECF No. 909] (certificate of publication of Sale Notice); [ECF No. 911] (certificate of service of Bidding Procedures Order and Sale Notice); [ECF No. 927] (certificate of service of initial Assumption Notice (as defined herein) and proposed form of Sale Order); [ECF No. 1014] (certificate of service of first supplemental Assumption Notice); [ECF No. 1042] (certificate of service of Sale Notice); [ECF No. 1125] (certificate of service of Sale Notice and initial Assumption Notice); [ECF No. 1155] (certificate of service of initial Assumption Notice); [ECF No. 1186] (certificate of service of initial Assumption Notice and Sale Notice); [ECF No. 1252] (certificate of service of initial Assumption Notice and Sale Notice); [ECF No. 1305] (certificate of service of extension of transaction deadlines); [ECF No. 1360] (certificate of service of Sale Order and initial Assumption Notice); [ECF No. 1383] (certificate of service of Sale Notice and initial Assumption Notice); [ECF No. 1392] (certificate of service of Sale Notice and extension of certain transaction milestones); [ECF No. 1403] (certificate of service of notice of adjournment of Auction); [ECF No. 1414] (certificate of service of Sale Notice and extension of certain transaction milestones); [ECF No. 1439] (certificate of service of extension of certain transaction milestones and adjournment of Auction); [ECF No. 1462] (certificate of service of extension of certain transaction milestones and adjournment of Auction); [ECF No. 1464] (certificate of service of extensions of certain transaction milestones, ● ] including the Sale Hearing); [ECF No. 1493] (supplemental certificate of service of notice of adjournment of Auction and extensions of certain transaction milestones, including the Sale Hearing); and [ECF No. 1541] (certificate of service of notice of adjournment of Sale Hearing).

US-DOCS\138480896.10

(the "Sale"), the Sale Hearing, and all deadlines related thereto, has been provided in accordance with sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and in compliance with the Bidding Procedures Order, to all parties required to receive such notice.

F.      The Debtors served the *Notice of Proposed Sale, Bidding Procedures, Auction, and Sale Hearing* [ECF No. 856] (the "Sale Notice") on all parties required to receive such notice under the Bidding Procedures Order and applicable rules, published such notice in *The New York Times* and posted the Sale Notice on the Debtors' Case Website.  Such publication of the Sale Notice conforms to the requirements of the Bidding Procedures Order and Bankruptcy Rules 2002(l) and 9008 and was reasonably calculated to provide notice to any affected party and afford any affected party the opportunity to exercise any rights related to the Motion and the relief granted by this Sale Order.  Service and publication of the Sale Notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Purchased Assets, including the proposed sale of the Purchased Assets free and clear of all liens, claims, encumbrances, and interests (other than Assumed Liabilities and Permitted Encumbrances), the Sale, the Bidding Procedures, the Auction, and the Sale Hearing.

G.      The Debtors served the (i) *Notice of (I) Executory Contracts and Unexpired Leases that May be Assumed and Assigned in Connection with a Sale of the Debtors' Assets and (II) the Proposed Cure Costs with Respect Thereto* [ECF No. 893]; (ii) *Supplemental Notice of (I) Executory Contracts and Unexpired Leases that May be Assumed and Assigned in Connection with a Sale of the Debtors' Assets and (II) the Proposed Cure Costs with Respect Thereto* [●] [ECF No. 995]; and (iii) *Second Supplemental Notice of (I) Executory Contracts and Unexpired Leases that May be Assumed and Assigned in Connection with a Sale of the Debtors' Assets and*

4

*(II) the Proposed Cure Costs with Respect Thereto* [ECF No. 1460] (together, the "Assumption Notice") on each of the counterparties to the ~~Assigned Contracts~~ Assumed Agreements and Assumed Real Property Leases in accordance with the Assumption and Assignment Procedures and the Bidding Procedures Order.  The service of the Assumption Notice was sufficient under the circumstances and in full compliance with the Assumption and Assignment Procedures and the Bidding Procedures Order, and no further notice need be provided in respect of the Debtors' assumption and assignment to the Buyer of the ~~Assigned Contracts~~ Assumed Agreements and Assumed Real Property Leases that have been (or may be) selected by the Buyer to be assumed and assigned in connection with the Sale[5] ~~(collectively, the "Assumed Agreements and Assumed Real Property Leases"[6])~~ or the Cure Costs (as defined in the Assumption Notice or as otherwise agreed by the Buyer and the counterparty to any Assumed Agreements or Assumed Real Property Leases).  All counterparties to the Assumed Agreements and Assumed Real Property Leases have had an adequate opportunity to object to the assumption and assignment of the Assumed Agreements and Assumed Real Property Leases and the Cure Costs.  Service of the Assumption Notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the Assumed Agreements and Assumed Real Property Leases in connection with the sale of the Purchased Assets and the related Cure Costs.[7]

---

[5]    For avoidance of doubt, as used herein, Assumed Agreements and Assumed Real Property Leases shall only include those Assumed Agreements and Assumed Real Property Leases to which a Debtor is a party.

[6]    ~~For avoidance of doubt, as used herein Assumed Agreements and Assumed Real Property Leases shall only include those Assumed Agreements and Assumed Real Property Leases to which a Debtor is a party.~~

[7]    ~~[If a Stalking Horse Bidder is approved, insert: "The Debtors served the [*Stalking Horse Selection Motion*] [ECF No. [⬤]] (the "Stalking Horse Selection Motion"), on all parties required to receive such notice under the Bidding Procedures Order and applicable rules. Service of the Stalking Horse Selection Motion was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of execution of the [*Stalking Horse Agreement*] (the "Stalking Horse Agreement") by and between the Debtors and [⬤] (the "Stalking Horse Bidder"), pursuant to which the Debtors agreed, subject to Court approval, to pay the Bid~~

US-DOCS\138480896.10

H.      The Debtors served the *Notice of Auction Cancellation and Successful and Back-up Bidders with Respect to the Auction of the Debtors' Assets Bidder* [ECF No. [ ● ]] (the "Post-Auction Designation Notice") on all parties required to receive such notice under the Bidding Procedures Order and applicable rules.  Service of the Post-Auction Notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the conclusion of the Auction and the identity of the Successful Bidder and Back-Up BidderBecause only one Qualified Bid was received for substantially all of the Debtors' assets, which was submitted by the Buyer, no Auction was conducted.

I.      The notice described in the foregoing paragraphs is due, proper, timely, adequate, and sufficient notice of the Motion, the Auction, the Bidding Procedures, the Sale Hearing, the assumption and assignment of the Assumed Agreements and Assumed Real Property Leases, the Sale, and the entry of this Sale Order, and has been provided to all parties in interest.  Such notice was, and is, good, sufficient, and appropriate under the circumstances of these Chapter 11 Cases, provided a fair and reasonable opportunity for parties in interest to object, and to be heard, with respect thereto, and was timely provided in accordance with sections 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and the applicable Local Rules.  Accordingly, no other or further notice with respect to such matters is necessary or shall be required.

**BUSINESS JUDGMENT**

J.      The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Sale and the other transactions contemplated by the Asset Purchase Agreement and related documents (together with

Protections as set forth in the Stalking Horse Agreement.]

US-DOCS\138480896.10

6

the Asset Purchase Agreement, the "<u>Transaction Documents</u>"), including, without limitation, the assumption, assignment, and/or transfer of the Assumed Agreements and Assumed Real Property Leases (collectively, the "<u>Transaction</u>") pursuant to sections 105, 363, and 365 of the Bankruptcy Code, prior to and outside of a plan of reorganization, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, and their creditors.  Such business reasons include, but are not limited to, the fact that: (i) there is substantial risk that the Debtors will lose access to the financing necessary to maintain their day-to-day business operations, including, among other reasons, the impending maturity of the DIP Facility; (ii) the Asset Purchase Agreement and the Closing present the best opportunity to maximize the value of the Debtors' estates; ~~(iii) the cash proceeds from the Sale, once consummated, will be used to indefeasibly pay in full the outstanding obligations under the DIP Facility and the Prepetition Obligations (as such term is defined in the Final DIP Order) at Closing and the remaining proceeds shall be used to satisfy the claims of the Debtors' other prepetition secured creditors in accordance with this Sale Order or further order of this Court, which for the avoidance of doubt, may be the order confirming a chapter 11 plan for the Debtors; and (iv~~<u>and (iii)</u> unless the Sale is concluded expeditiously as provided for in this Sale Order and pursuant to the Asset Purchase Agreement, potential creditor recoveries may be substantially diminished.

## <u>GOOD FAITH OF THE BUYER; NO COLLUSION</u>

K.    The Buyer is purchasing the Purchased Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and therefore is entitled to, and granted pursuant to paragraph ~~33~~ <u>35</u> below, the full rights, benefits, privileges, and protections of that provision, and has otherwise proceeded in good faith in all respects in connection with the Transaction in that, *inter alia*: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Buyer

7

complied with the provisions in the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; and (v) the negotiation and execution of the Asset Purchase Agreement and the other Transaction Documents were at arms' length and in good faith.

L.        None of the Debtors, the Buyer, any other party in interest, or any of their respective Representatives has engaged in any conduct that would cause or permit the Asset Purchase Agreement or any of the Transaction Documents, or the consummation of the Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any Person or Entity (each as defined in the Bankruptcy CodeAsset Purchase Agreement) in connection therewith.

### HIGHEST OR OTHERWISE BEST OFFER

M.        In accordance with the Bidding Procedures Order, the Asset Purchase Agreement was deemed a Qualified Bid and the Buyer was eligible to participate in the Auction for the Purchased Assets.

N.        The Debtors conducted a competitive marketing and auction sale process in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order, and accordingly have afforded a full, fair, and reasonable opportunity for any Person or Entity to make a higher or otherwise better offer to purchase the Purchased Assets.

O.        The Asset Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets and represents a fair and reasonable offer to purchase the Purchased Assets under the totality of circumstances of these Chapter 11 Cases.

US-DOCS\138480896.10

P.      The Transaction described in the Asset Purchase Agreement will provide a greater benefit to the Debtors, their estates, and their creditors than any alternative transaction.

## NO FRAUDULENT TRANSFER

Q.      The Asset Purchase Agreement and the other Transaction Documents were not entered into, and the Transaction is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under applicable law, and none of the parties to the Asset Purchase Agreement or parties to any of the other Transaction Documents are consummating the Transaction with any fraudulent or otherwise improper purpose.  The purchase price for the Purchased Assets constitutes reasonably equivalent value, fair consideration and fair value for the conveyance of such Purchased Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable laws of the United States, any state, territory, or possession, the District of Columbia or any applicable foreign laws.

## VALIDITY OF TRANSFER

R.      The Debtors have full corporate power and authority (i) to seek approval of and perform all of their obligations under the Asset Purchase Agreement and the other Transaction Documents; and (ii) to consummate the Transaction.  Subject to the entry of this Sale Order, no further consents or approvals are required for the Debtors to consummate the Transaction or otherwise perform their obligations under the Asset Purchase Agreement or the Transaction Documents, except in each case as otherwise expressly set forth in the Final DIP Order (which consents or approvals have already been obtained),[86] the Asset Purchase Agreement, or the other applicable Transaction Documents.

---

[86] The "Final DIP Order" means the *Final Order (I) Approving Postpetition Financing, (II) Authorizing Use Of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting*

US-DOCS\138480896.10

S.    ~~As of the date of the closing of the Transaction ("Closing," and such date, the "Closing Date"), the transfer of the Purchased Assets to the Buyer, including, without limitation, the assumption, assignment, and transfer of the Assumed Agreements and Assumed Real Property Leases, will be a legal, valid, and effective transfer thereof, and will vest the Buyer with~~ The Debtors' rights, title, and interest in the Purchased Assets constitute property of the Selling Entities' bankruptcy estates and title thereto is vested in their estates within the meaning of section 541(a) of the Bankruptcy Code.  As of the date of the closing of the Transaction ("Closing," and such date, the "Closing Date"), the transfer of the Purchased Assets to the Buyer, including, without limitation, the assumption, assignment, and transfer of the Assumed Agreements and Assumed Real Property Leases, will be a legal, valid, and effective transfer thereof, and will vest the Buyer with good and marketable title to, and all right, title, and interest ~~of the Debtors~~ in and to the Purchased Assets, free and clear of all Interests (as defined below) except for Assumed Liabilities and Permitted Encumbrances accruing or arising any time prior to the Closing Date, except as expressly set forth in the Asset Purchase Agreement.

## SECTION ~~363(f~~363(F) IS SATISFIED

T.    The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the transaction contemplated thereby if the sale of the Purchased Assets, including the assumption, assignment, and transfer of the Assumed Agreements and Assumed Real Property Leases to the Buyer, were not free and clear of all Interests of any kind or nature whatsoever (except for Assumed Liabilities and Permitted Encumbrances), or if the Buyer or any of its affiliates, subsidiaries, or any of its Representatives would, or in the future could, be liable for any such Interests (except for Assumed Liabilities and Permitted Encumbrances).

---

*Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* entered on January 12, 2023 [ECF No. 638].

US-DOCS\138480896.10

U.      The Debtors may sell or otherwise transfer the Purchased Assets free and clear of all Interests (except for Assumed Liabilities and Permitted Encumbrances) to the extent set forth herein because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests against the Debtors, their estates, or any of the Purchased Assets who did not object, or who withdrew their objection to the Sale or the Motion, are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of such Interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by the terms of this Sale Order, including, as applicable, by having their Interests, if any, attach to the portion of the Sale Proceeds (as defined below) attributable to the Purchased Assets in which such creditor alleges or asserts an Interest, in the same order of priority, with the same validity, force, and effect, that such creditor had against the Purchased Assets immediately prior to consummation of the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

V.      As used in this Sale Order, the terms "Interest" and "Interests" include all of the following, in each case, to the extent against or with respect to the Debtors, or in, on, or against, or with respect to any of the Purchased Assets: liens (including as defined in section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial, or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code) ("Claims"), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, or interests of any kind or nature whatsoever, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or

11

noncontingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to, on~,~ or subsequent to~,~ the commencement of these Chapter 11 Cases, and in each case, whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to~, (a~: (i)~ mortgages, security deeds, deeds of trust, pledges, charges, security interests, levies, hypothecations, encumbrances, easements, servitudes, leases, subleases, licenses, rights-of-way, encroachments, restrictive covenants, restrictions on transferability, voting, sale, transfer or other similar restrictions, rights of setoff (except for setoffs validly exercised before the Petition Date, or preserved in a timely filed proof of claim or motion filed with the Court), rights of use or possession, conditional sale arrangements, deferred purchase price obligations, profit sharing interest, or any similar rights; (~b~ii) all Claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff (except for setoffs validly exercised before the Petition Date, or preserved in a timely filed proof of claim or motion filed with the Court), indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other Person ~or Entity~, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise; (~c~iii) all debts, liabilities, obligations, contractual rights and claims, ~and~ including labor, employment, and pension claims; (~d~iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Buyer's interest in the Purchased Assets, or any similar rights; (~e~v) any rights under labor or employment

12

agreements; (~~f~~vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA")), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (~~g~~vii) any other employee claims related to worker's compensation, occupation disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (~~i~~a) ERISA, (~~ii~~b) the Fair Labor Standards Act, (~~iii~~c) Title VII of the Civil Rights Act of 1964, (~~iv~~d) the Federal Rehabilitation Act of 1973, (~~v~~e) the National Labor Relations Act, (~~vi~~f) the Age Discrimination and Employment Act of 1967 and the Age Discrimination in Employment Act, each as amended, (~~vii~~g) the Americans with Disabilities Act of 1990, (~~viii~~h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (~~ix~~(i) state discrimination laws, (~~x~~j) state unemployment compensation laws or any other similar state laws, (~~xi~~k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (~~xii~~l) the WARN Act (29 U.S.C. §§ 2101, et seq.) or any state or other laws of similar effect; (~~h~~viii) any bulk sales or similar law; (~~i~~(ix) any tax statutes or ordinances or other laws of similar effect, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets before the closing of a Sale; (~~j~~x) any unexpired and executory contract or unexpired lease to which the Debtors are a party that is not an Assumed ~~Agreements~~ Agreement or Assumed Real Property ~~Leases~~Lease; (~~k~~xi) any other excluded liabilities under the

Asset Purchase Agreement; and (~~l~~xii) Interests arising under or in connection with any acts, or failures to act, of the Debtors or any of their predecessors, affiliates, or subsidiaries, including, but not limited to, Interests arising under any doctrines of successor liability (to the greatest extent permitted by applicable law), or transferee or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable law or otherwise.

### NOT A SUCCESSOR; NOT A SUB ROSA PLAN

W.    The Buyer is not, and shall not be deemed to, as a result of any action taken in connection with the Transaction~~:~~ (i) be a successor to or a mere continuation or substantial continuation (or other such similarly situated party) to the Debtors or their estates; or (ii) have, *de facto* or otherwise, merged or consolidated with or into the Debtors~~; *provided that*, notwithstanding the foregoing, the Buyer may be, and the arguments of the Debtors and the Buyer are preserved as to whether, Buyer is in privity with Debtors for purposes of *res judicata* analyses~~.

X.    The Sale does not constitute a *de facto* plan of reorganization or liquidation or an element of such a plan for the Debtors, as it does not and does not propose to ~~: (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors; (iii) circumvent Chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies, or extend debt maturities.~~impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a chapter 11 plan for the Debtors.

US-DOCS\138480896.10

**ASSUMPTION, ASSIGNMENT AND/OR TRANSFER OF THE ASSUMED
AGREEMENTS AND ASSUMED REAL PROPERTY LEASES**

Y.      The Debtors have demonstrated that (i) ~~that~~ it is an exercise of their sound business judgment to assume and assign the Assumed Agreements and Assumed Real Property Leases to the Buyer in each case in connection with the consummation of the Transaction ~~,~~ and (ii) ~~that~~ the assumption and assignment of the Assumed Agreements and Assumed Real Property Leases to the Buyer is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The Assumed Agreements and Assumed Real Property Leases being assigned to the Buyer are an integral part of the Purchased Assets being purchased by the Buyer and, accordingly, such assumption, assignment and cure of any defaults under the Assumed Agreements and Assumed Real Property Leases are reasonable and enhance the value of the Debtors' estates.  Each and every provision of the documents governing the Purchased Assets or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any of the Purchased Assets, if any, have been or will be satisfied or are otherwise unenforceable under section 365 of the Bankruptcy Code.  Any non-Debtor counterparty to an Assumed Agreement or Assumed Real Property Lease that has not filed with this Court an objection to such assumption and assignment in accordance with the terms of the Motion and the Assumption Notice is deemed to have consented to such assumption and assignment.

Z.      To the extent necessary or required by applicable law, the Debtors (or the Buyer on behalf of the Debtors) has or will have as of the Closing Date ~~:~~ (i) cured, or provided adequate assurance of cure, of any default existing prior to the Closing Date with respect to the Assumed Agreements and Assumed Real Property Leases, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) provided compensation, or adequate assurance of

15

compensation, to any party for any actual pecuniary loss to such party resulting from such default, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. ~~The respective amounts~~ Subject to the terms of this Sale Order, and except as otherwise determined by separate order of the Court after the date hereof, the respective Cure Costs set forth on **Exhibit ~~[    ]~~ B** hereto are the sole amounts necessary under sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code to cure all such monetary defaults and pay all actual pecuniary losses under the Assumed Agreements and Assumed Real Property Leases.

AA.    The promise of the Buyer to perform (and the Buyer's financial wherewithal to perform) the obligations first arising under the Assumed Agreements and Assumed Real Property Leases after their assumption and assignment to the Buyer constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparties to such Assumed Agreements and Assumed Real Property Leases. ~~Any~~ Except for those objections and other disputes listed as adjourned on **Exhibit C** (collectively, the "Adjourned Objections"), any objections to the foregoing, the determination of any Cure Costs, or otherwise related to or in connection with the assumption, assignment, or transfer of any of the Assumed Agreements and Assumed Real Property Leases to the Buyer are hereby overruled on the merits or otherwise treated as set forth in paragraph 3 below.  Those non-Debtor counterparties to Assumed Agreements and Assumed Real Property Leases who did not object to the assumption, assignment, or transfer of their applicable Assumed Agreement or Assumed Real Property Lease, or to their applicable Cure Cost, are deemed to have consented thereto for all purposes of this Sale Order.  All rights of the parties with respect to the issues raised in the Adjourned Objections are preserved.

16

## COMPELLING CIRCUMSTANCES FOR AN IMMEDIATE SALE

BB.    Time is of the essence in consummating the Transaction.  In order to maximize the value of the Purchased Assets, it is essential that the sale and assignment of the Purchased Assets occur within the time constraints set forth in the Asset Purchase Agreement.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and, sufficient cause having been shown, waives any such stay, and expressly directs entry of this Sale Order as set forth herein.  The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the immediate approval and consummation of the Transaction as contemplated by the Asset Purchase Agreement.  The Buyer, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the Transaction contemplated by the Asset Purchase Agreement at any time after entry of this Sale Order, subject to the terms and conditions of the Asset Purchase Agreement.

CC.    The consummation of the Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105, 363, and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Transaction.

US-DOCS\138480896.10

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**GENERAL PROVISIONS**

1.      The Motion, and the relief requested therein, is granted and approved, and the Transaction contemplated thereby and by the Asset Purchase Agreement and Transaction Documents are approved, in each case as set forth in this Sale Order.

2.      This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order [and the order approving the Stalking Horse Bid] are incorporated herein in their entirety by reference.

3.      All Other than the Adjourned Objections, which are hereby preserved pending further order of the Court, all objections to the Motion or the relief requested therein that have not been withdrawn, waived, resolved, adjourned, or otherwise settled as set forth herein, as announced to this Court at the Sale Hearing or by stipulation filed with this Court, and all reservations of rights included therein, are hereby denied and overruled on the merits.  Those parties who did not object to the Motion or the entry of this Sale Order in accordance with the Bidding Procedures Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

**APPROVAL OF ASSET PURCHASE AGREEMENT; BINDING NATURE**

4.      The Asset Purchase Agreement and the other Transaction Documents, and all of the terms and conditions thereof, are hereby approved as set forth herein, specifically including the mutual releases set forth in Section 7.16 of the Asset Purchase Agreement, subject in all cases to the terms thereof.

US-DOCS\138480896.10

5.      The consideration provided by the Buyer for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable law, and the Transaction may not be avoided or rejected by any ~~person~~Person, or costs or damages imposed or awarded against the Buyer, under section 363(n) or any other provision of the Bankruptcy Code.

6.      Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized and empowered to, and shall, take any and all actions necessary or appropriate to (i) consummate the Transaction pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement and the other Transaction Documents and otherwise comply with the terms of this Sale Order, and (ii) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of their obligations as contemplated by the Asset Purchase Agreement and the other Transaction Documents, in each case without further notice to or order of this Court.  The Transaction authorized herein shall immediately be of full force and effect.

7.      In accordance with this Sale Order and subject to the terms of the Asset Purchase Agreement, each of the following Debtor entities (i) JHO Intellectual Property Holdings, LLC; (ii) JHO Real Estate Investment, LLC; (iii) Quash Seltzer, LLC; and (iv) Rainbow Unicorn Bev, LLC, is authorized, but not directed, in its sole discretion, to (a) contribute and transfer all of its respective right, title, and interest (free and clear of all Liabilities and Encumbrances other than the Assumed Liabilities and Permitted Encumbrances or as set forth on Section 2.1 of the Seller Disclosure Schedule in the Asset Purchase Agreement) in and to all of the assets (including any

US-DOCS\138480896.10

Purchased Assets) of or held by such Debtor entity to Debtor Vital Pharmaceuticals via a contribution of such assets to Debtor Vital Pharmaceuticals and such contribution and transfer shall be deemed to have occurred prior to the Closing, and/or (b) assign and transfer all of the Liabilities of such Debtor entity (including any Assumed Liabilities) to Debtor Vital Pharmaceuticals via an assignment and assumption of such Liabilities by Debtor Vital Pharmaceuticals.

8.    7.This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of any Claim(s) (whether known or unknown) against the Debtors, all holders of Interests (whether known or unknown) against, in , or on , all or any portion of the Purchased Assets, all non-Debtor parties to the Assumed Agreements and Assumed Real Property Leases, the Buyer, and all successors and assigns of the foregoing, including, without limitation, any trustee, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to Chapter 7 under the Bankruptcy Code of these Chapter 11 Cases, or, to the extent applicable, other plan fiduciaries, plan administrators, liquidating trustees, or other estate representatives appointed or elected in the Debtors' Chapter 11 Cases.

## TRANSFER OF ASSETS FREE AND CLEAR OF INTERESTS; INJUNCTION

9.    8.Pursuant to sections 105(a), 363(b), 363(f), 365(a), 365(b), and 365(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Purchased Assets, including but not limited to the Assumed Agreements and Assumed Real Property Leases, to the Buyer on the Closing Date in accordance with the Asset Purchase Agreement and the other Transaction Documents.  Upon and as of the Closing Date, such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets free and clear of all Interests of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase Agreement with respect to Permitted Encumbrances and Assumed Liabilities) and shall vest the Buyer with all

US-DOCS\138480896.10

right, title, and interest to and in such Purchased Assets subject only to the Permitted Encumbrances and Assumed Liabilities expressly set forth in the Asset Purchase Agreement. For the avoidance of doubt, the transfer of the Purchased Assets by the Debtors to the Buyer pursuant to the Asset Purchase Agreement and this Sale Order shall be free and clear of the Interests set forth in Requirements 11, 16, 19, 20, 21, 22, 23, 26, and 34 of Schedule B, Part I of the Form Title Commitment attached as **Exhibit E** hereto, including, without limitation, the Interests described on the attached **Exhibit D** (Schedule of Interests).

10.    9.All such Interests shall attach solely to the Sale Proceeds with the same validity, priority, force, and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtors and their estates or any other Person or Entity may possess with respect thereto. This Sale Order shall be effective as a determination that, on and as of the Closing, all Interests of any kind or nature whatsoever (except for Assumed Liabilities and Permitted Encumbrances) have been unconditionally released, discharged, and terminated in, on, or against the Purchased Assets (but not the proceeds thereof). The provisions of this Sale Order authorizing and approving the transfer of the Purchased Assets free and clear of Interests shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

11.    10.Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all entities and persons Persons holding Interests (other than Assumed Liabilities and Permitted Encumbrances) are hereby forever barred, estopped, and permanently enjoined from asserting their respective Interests against the Buyer, and each of its properties and assets, including, without limitation, the Purchased Assets.

21

12.    ~~11.~~On and after the Closing Date, the Buyer shall be authorized to execute and file such documents, and to take all other actions as may be necessary, on behalf of each holder of an Interest to release, discharge, and terminate such Interests in, on and against the Purchased Assets (but not the proceeds thereof) as provided for herein, as such Interests may have been recorded or may otherwise exist.  On and after the Closing Date, and without limiting the foregoing, the Buyer shall be authorized to file termination statements, mortgage releases, or lien terminations in any required jurisdiction to remove any mortgage, record, notice filing, or financing statement recorded to attach, perfect, or otherwise notice any Interest that is extinguished or otherwise released pursuant to this Sale Order.  This Sale Order constitutes authorization under all applicable jurisdictions and versions of the Uniform Commercial Code (the "UCC") and other applicable law for the Buyer to file UCC and other applicable termination statements with respect to all security interests in, liens on, or other Interests in the Purchased Assets.

13.    ~~12.~~On and after the Closing, the ~~entities and persons~~ Persons holding an Interest (other than an Assumed Liability or Permitted Encumbrance expressly set forth in the Asset Purchase Agreement) shall execute such documents and take all other actions as may be reasonably necessary to release their respective Interests in the Purchased Assets (but not the proceeds thereof), as such Interests may have been recorded or otherwise filed.  The Buyer may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county, or other jurisdiction in which the Debtors are incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Sale Order as of the Closing Date.  All ~~entities~~

22

and persons Persons that are in possession of any portion of the Purchased Assets on the Closing Date shall promptly surrender possession thereof to the Buyer at the Closing.

14.    13.On and after the Closing Date, no holder of an Interest in or against the Debtors or the Purchased Assets (other than Assumed Liabilities and Permitted Encumbrances) shall interfere with the Buyer's title to, or use and enjoyment of, the Purchased Assets based on or related to such Interest.

15.    14.The transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement and the other Transaction Documents does not require any consents other than specifically provided for in the Asset Purchase Agreement or as otherwise provided for herein.

16.    Upon consummation of the Sale and the Closing Date, other than with respect to payment of Cure Costs, all cash proceeds of the Sale (the "Sale Proceeds") will be applied in the following order:

  i.    *First*, the full amount necessary, currently estimated at $16 million, out of the Sale Proceeds (the "Asserted Lien Amount") to satisfy in full the liens and claims of mechanics, repairmen, workmen, suppliers or materialmen liens (the "Asserted Liens") as set forth in Section 3.1(c) of the Asset Purchase Agreement, and initially deposited into a segregated interest bearing account (the "Asserted Lien Escrow Account") to be held and disbursed pursuant to the terms set forth in paragraph 17 of this Sale Order;

  ii.   *Second,* an amount of Sale Proceeds equal to $8,000,000 shall be set aside in a segregated account reserved for the payment of the WARN Act and other employee liabilities described in Section 3.1(c) of the Asset Purchase Agreement, subject in all respects to the terms thereof;

23

US-DOCS\138480896.10

iii. *Third,* an amount of Sale Proceeds equal to $1,000,000 to pay in full all principal and interest under the loan agreements, financing agreements, or lease arrangements with respect to the vehicles that constitute the Purchased Assets to the extent outstanding as of the Closing in accordance with Section 7.22 of the Asset Purchase Agreement;

iv. *Fourth,* an amount of Sale Proceeds equal to $20,000,000 (in respect of items (a), (b), and (c) of the Carve-Out (as defined in paragraph 37 of the Final DIP Order)) plus an estimate not to exceed $50,000 (in respect of items (d), (e), and (f) of the Carve-Out), shall be deemed deposited into a Carve-Out Escrow (as defined in paragraph 37 of the Final DIP Order), in full and complete satisfaction of any obligations in connection with the Carve-Out as defined in the Final DIP Order, or any other obligations (if any) of the DIP Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Lenders (each as defined in the Final DIP Order) in respect of professional fees and expenses (and other Carve-Out obligations) payable in connection with these Chapter 11 Cases and without for avoidance of doubt the requirement of a Carve-Out Termination Notice or any other notice or action;

v. *Fifth,* an amount equal to the sum of (A) $287,000,000, less (B) any unfunded portion of the commitments under the DIP Facility at such time, plus (C) an amount equal to the unreimbursed professional fees and expenses of the DIP Agent accrued through the Closing Date, less (D) an amount equal to the aggregate amount of interest accrued in respect of the DIP Facility that the Debtors pay to the DIP Agent during the period from June 6, 2023 through the Closing Date, if any, to the

24

outstanding obligations under the DIP Facility (to be applied in accordance with the DIP Facility or as otherwise determined by the Administrative Agent under the DIP Facility and otherwise permitted under applicable law (the "DIP Partial Payoff")); and

vi.  *Sixth,* the remainder of the Sale Proceeds shall be deposited into a segregated interest-bearing account (the "Sale Proceeds Account") to fund expenses of the Debtors' estates in the ordinary course, or to make such other distributions to creditors as may be authorized by further Court order.

15. Upon consummation of the Sale and the Closing Date, other than with respect to payment of Cure Costs and the payment in full of the outstanding obligations under the DIP Facility and the Prepetition Obligations (as such term is defined in the Final DIP Order), all cash proceeds of the Sale (the "Sale Proceeds") (other than those required to be held in escrow pursuant to the terms of this Sale Order (if any) (the "Escrowed Amounts")) will be placed into a segregated, interest-bearing account established and maintained by the Debtors and will remain in that account until further order of this Court, which order, for the avoidance of doubt, may be the order confirming a chapter 11 plan for the Debtors. Reasonable notice of any request for the release of Sale Proceeds from such segregated account the Sale Proceeds Account or the Asserted Lien Escrow Account shall be filed with this Court and given to the Debtors and all parties in interest asserting a Claim to, or Interest in, the Sale Proceeds and the rights of the Debtors and all parties in interest to object to the release of all or any part of the Sale Proceeds from the segregated account Sale Proceeds Account or the Asserted Lien Escrow Account is hereby fully preserved. To the extent the Debtors are entitled to any Escrowed Amounts released from escrow, such released Escrowed Amounts shall be Sale Proceeds for all purposes hereunder and shall be placed in the

25

~~segregated, interest-bearing account referenced in the prior sentence pending further order of this Court~~.  All Claims and Interests will attach to the Sale Proceeds to the same extent and with the same priority as existed immediately prior to consummation of the Sale, subject to any claims, defenses and objections, if any, that the Debtors, their estates, or any other party in interest may possess with respect thereto; *provided that* the foregoing does not alter or impair any parties' rights provided under the Final DIP Order ~~.~~ (except as specifically provided above).

17.    Notwithstanding anything in this Sale Order or the Asset Purchase Agreement to the contrary, Sale Proceeds in an amount equal to the Asserted Lien Amount shall be placed in the Asserted Lien Escrow Account as soon as reasonably practicable after receipt of the Sale Proceeds and shall remain in the Asserted Lien Escrow Account pending further order of the Court or agreement between the Debtors and Stellar Group, Inc.  Any property transferred to the Buyer pursuant to the Sale that is subject to the Asserted Liens shall pass free and clear of all Interests notwithstanding the Asserted Liens.  For the avoidance of doubt, to the extent that the Asserted Liens are deemed valid by order of the Court or agreement between the Debtors and Stellar Group, Inc., such liens shall attach solely to the funds in the Asserted Lien Escrow Account.

18.    ~~16.~~On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to the Buyer of the Purchased Assets and the Debtors' interests in the Purchased Assets acquired by the Buyer under the Asset Purchase Agreement.  This Sale Order is and shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date (other than Assumed Liabilities and Permitted Encumbrances), shall have been unconditionally released, discharged, and terminated to the fullest extent permitted by applicable law, and that the conveyances described herein have been effected.

US-DOCS\138480896.10

19.    17.This Sale Order is and shall be binding upon and govern the acts of all persons and entities Persons (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials) who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease.  Each of the foregoing persons and entities Persons shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the Interests or to otherwise consummate the Transaction contemplated by this Sale Order, the Asset Purchase Agreement, or any Transaction Document.

### ASSIGNED CONTRACTSASSUMED AGREEMENTS AND ASSUMED REAL PROPERTY LEASES; CURE PAYMENTS

20.    18.Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing Date, the Debtors' assumption, assignment, and transfer to the Buyer of the Assigned Contracts Assumed Agreements and Assumed Real Property Leases is hereby authorized and approved in full subject to the terms set forth below.

21.    19.Upon and as of the Closing, the Debtors are authorized and empowered to, and shall, assume, assign, and/or transfer each of the Assumed Agreements and Assumed Real Property Leases to the Buyer free and clear of all Interests (except as expressly set forth in the Asset Purchase Agreement with respect to Permitted Encumbrances and Assumed Liabilities). The payment of the applicable Cure Costs (if any), or with or—with respect to any disputed Cure Costs—the Costs—the reservation by the Debtors (or the Buyer on behalf of the Debtors) of an amount of cash that is equal to the lesser of (i) the amount of any cure or other compensation

US-DOCS\138480896.10

asserted by the applicable counterparty to such Assumed Agreement or Assumed Real Property Lease as required under section 365 of the Bankruptcy Code, or (ii) the amount approved by order of this Court to reserve for such payment (such lesser amount, the "Alleged Cure Claim") shall, pursuant to section 365 of the Bankruptcy Code and other applicable law, (a) effect a cure, or provide adequate assurance of cure, of all defaults existing thereunder as of the Closing Date, and (b) compensate, or provide adequate assurance of compensation, for any actual pecuniary loss to such non-Debtor party resulting from such default. Accordingly, on and as of the Closing Date, other than such payment or reservation, neither the Debtors nor the Buyer shall have any further liabilities or obligations to the non-Debtor counterparties to the Assumed Agreements and Assumed Real Property Leases with respect to, and the non-Debtor counterparties to the Assumed Agreements and Assumed Real Property Leases shall be forever barred, estopped, and permanently enjoined from seeking, any additional amounts or Claims that arose, accrued, or were incurred at any time on or prior to the Closing Date on account of the Debtors' cure or compensation obligations arising under section 365 of the Bankruptcy Code. Notwithstanding anything to the contrary in the Motion, the Asset Purchase Agreement, or this Sale Order, from and after the assumption and assignment of such Assumed Agreements and Assumed Real Property Leases after the Closing, the Buyer shall comply with the terms of each Assumed Agreement and Assumed Real Property Lease. The Buyer has provided adequate assurance of future performance under the relevant Assumed Agreements and Assumed Real Property Leases within the meaning of section 365(f) of the Bankruptcy Code.

22.    20.To the extent any provision in any Assumed Agreement or Assumed Real Property Lease assumed or assumed and assigned (as applicable) pursuant to this Sale Order (including, without limitation, any "change of control" provision) (ai) prohibits, restricts, or

US-DOCS\138480896.10

conditions, or purports to prohibit, restrict, or condition, such assumption or assignment , or (bii)

is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the

following: (ia) the commencement of these Chapter 11 Cases, (ii; (b) the insolvency or financial

condition of the Debtors at any time before the closing of these Chapter 11 Cases, (iii; (c) the

Debtors' assumption or assumption and assignment (as applicable) of such Assumed Agreement

or Assumed Real Property Lease , ; or (ivd) the consummation of the Transaction, then such

provision shall be deemed modified so as to not entitle the non-Debtor counterparty thereto to

prohibit, restrict, or condition such assumption or assignment, to modify or terminate such

Assumed Agreement or Assumed Real Property Lease, or to exercise any other default-related

rights or remedies with respect thereto, including, without limitation, any such provision that

purports to allow the non-Debtor counterparty thereto to recapture such Assumed Agreements and

Assumed Real Property Leases, impose any penalty thereunder, condition any renewal or

extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose

any other fees or other charges in connection therewith.    All such provisions constitute

unenforceable anti-assignment provisions that are void *ab initio* and of no force and effect pursuant

to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code; *provided, however*, this paragraph

22 shall only apply to the assumption and assignment of the Assumed Agreements and Assumed

Real Property Leases effectuated as part of the Sale and nothing in this Sale Order shall permit any

further or other assignment, assignment and assumption, or other transfer of any Assumed

Agreements or Assumed Real Property Leases except as expressly permitted under and in

accordance with the terms of such Assumed Agreements and Assumed Real Property Leases.

      23.        21.All requirements and conditions under sections 363 and 365 of the Bankruptcy

Code for the assumption by the Debtors and assignment to the Buyer of the Assumed Agreements

US-DOCS\138480896.10

and Assumed Real Property Leases have been satisfied.  Upon the Closing, in accordance with

sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with

all right, title, and interest of the Debtors in and under the Assumed Agreements and Assumed

Real Property Leases free and clear of any Interest (other than Permitted Encumbrances and

Assumed Liabilities as provided for in the Asset Purchase Agreement), and each Assumed

Agreement or Assumed Real Property Lease shall be fully enforceable by the Buyer in accordance

with its respective terms and conditions, except as limited or modified by the provisions of this

Sale Order.  Upon and as of the Closing, the Buyer shall be deemed to be substituted for the

Debtors as a party to the applicable Assumed Agreements and Assumed Real Property Leases and,

accordingly, the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code,

from any further liability under the Assumed Agreements and Assumed Real Property Leases.  The

Buyer shall have no liability arising or accruing under the Assumed Agreements and Assumed

Real Property Leases on or prior to the Closing Date, except as otherwise expressly provided in

the Asset Purchase Agreement or this Sale Order.

24.      22.To the extent a non-Debtor counterparty to a Assumed Agreement or Assumed

Real Property Lease failed to timely object to a Cure Cost in accordance with the Bidding

Procedures Order and Assumption Notice, such Cure Cost shall be deemed to be finally determined

and any such non-Debtor counterparty shall be prohibited from challenging, objecting to, or

denying the validity and finality of the Cure Cost at any time, and such Cure Cost, when paid, shall

be deemed to resolve any defaults or other breaches with respect to any Assumed Agreement or

Assumed Real Property Lease to which it relates.  Unless as otherwise set forth in this Sale Order

or the Asset Purchase Agreement, the non-Debtor counterparties to the Assumed Agreements and

Assumed Real Property Leases are barred from asserting against the Debtors, their estates, and the

30

Buyer, any default or unpaid obligation allegedly arising or occurring before the Closing Date, any pecuniary loss resulting from such default, or any other obligation under the Assumed Agreements and Assumed Real Property Leases arising or incurred prior to the Closing Date, other than the applicable Cure Costs.  Upon the payment of the applicable Cure Costs or the reservation of the Alleged Cure Claims, if any, the Assumed Agreements and Assumed Real Property Leases will remain in full force and effect, and no default shall exist, or be deemed to exist, under the Assumed Agreements and Assumed Real Property Leases as of the Closing Date nor shall there exist, or be deemed to exist, any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

25.    23.All counterparties to the Assumed Agreements and Assumed Real Property Leases shall be deemed to have consented to such assumption and assignment under section 365(c)(1)(B) of the Bankruptcy Code and the Buyer shall enjoy all of the Debtors' rights, benefits, and privileges under each such ~~Assigned Contract~~ Assumed Agreement and Assumed Real Property Lease as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.

26.    24.Upon payment of the Cure Costs, no default or other obligations arising prior to the Closing Date shall exist under any Assumed Agreement or Assumed Real Property Lease, and , except as otherwise set forth in this Sale Order, each non-Debtor party is forever barred and estopped from: (i) declaring a default by the Debtors or the Buyer under such Assumed Agreement or Assumed Real Property Lease; (ii) raising or asserting against the Debtors or the Buyer, or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Agreements and Assumed Real Property Leases; or (iii) taking any other action against the Buyer as a result of any Debtor's

US-DOCS\138480896.10

financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assumed Agreement or Assumed Real Property Lease, in each case in connection with the Sale. Each Except as otherwise set forth in this Sale Order, each non-Debtor counterparty is also forever barred and estopped from raising or asserting against the Buyer any assignment fee, default, breach, Claim, pecuniary loss, or condition to assignment arising under or related to the Assumed Agreements and Assumed Real Property Leases existing as of the Closing Date or arising by reason of the closing Closing of the Sale other than the Cure Costs.

27.    25. Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors that any Assumed Agreement or Assumed Real Property Lease is an executory contract or unexpired lease under section 365 of the Bankruptcy Code.  Individual purchase orders issued by vendors with whom the Debtors have master supply agreements shall not be deemed to constitute one and the same contract as the master supply agreement.  The Debtors may assume and assign to the Buyer a vendor's master supply agreement without assuming and assigning or paying claims arising under individual purchase orders issued by such vendor, and such claims shall not constitute Cure Costs under the master supply agreement.

28.    26. The failure of the Debtors or the Buyer, or any non-Debtor party to enforce at any time one or more terms or conditions of any Assumed Agreement or Assumed Real Property Lease shall not be a waiver of such terms or conditions or of their respective rights to enforce every term and condition of the Assumed Agreements and Assumed Real Property Leases.

## ADDITIONAL INJUNCTION; NO SUCCESSOR LIABILITY

29.    27. Effective upon the Closing Date and except as expressly set forth in the Asset Purchase Agreement with respect to Permitted Encumbrances and Assumed Liabilities, all Persons and Entities are forever barred, estopped, and permanently enjoined from asserting against the

32

Buyer any Interest of any kind or nature whatsoever such ~~person~~ Person had, has, or may have against or in the Debtors, their estates, officers, directors, managers, shareholders, [9] or the Purchased Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other proceeding) to collect or recover any Interest; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to an Interest; (iii) creating, perfecting, or enforcing any Interest; (iv) asserting any right of subrogation, setoff or recoupment of any kind with respect to an Interest (except if such right was asserted before the Petition Date, or preserved in a timely filed proof of claim or motion filed with the Court); (v) commencing or continuing any action in any manner or place, that does not comply with or is inconsistent with the provisions of this Sale Order, other orders of this Court, the Asset Purchase Agreement, the other Transaction Documents, or any other agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating, failing, or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets in connection with the Sale, in each case of (i) through (vi), as against the Buyer, or any of its affiliates or subsidiaries, or any of their respective ~~representatives~~ Representatives, or any of its or their respective property or assets, including the Purchased Assets~~; provided that, notwithstanding the foregoing, the Buyer may be, and the arguments of the Debtors and the Buyer are preserved as to whether, Buyer is in privity with Debtors for purposes of res judicata analyses~~.

---

[9] ~~For the avoidance of doubt, nothing in this Sale Order shall bar, estop, or permanently enjoin the Debtors or their estates from asserting any causes of action directly against the Debtors' current and former officers, directors, managers, or shareholders.~~

33

30. 28. To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing Date.

31. 29. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Purchased Assets sold, transferred, assigned, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale. Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale set forth in the Asset Purchase Agreement.

32. 30. Subject to the terms, conditions, and provisions of this Sale Order, all entities and persons Persons are hereby forever prohibited and barred from taking any action that would adversely affect or interfere (i) with the ability of the Debtors to sell and transfer the Purchased Assets to Buyer in accordance with the terms of the Asset Purchase Agreement (subject to the Permitted Encumbrances and Assumed Liabilities) and this Sale Order, and (ii) with the ability of the Buyer to acquire, take possession of, use and operate the Purchased Assets in accordance with the terms of the Asset Purchase Agreement and this Sale Order.

33. 31. The Buyer shall not be deemed, as a result of any action taken in connection with the Transaction contemplated by the Asset Purchase Agreement or the Transaction Documents, to: (i) to be a successor to the Debtors or their estates, ; (ii) to have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates, ; (iii) to be a

34

US-DOCS\138480896.10

continuation or substantial continuation of the Debtors or any enterprise of the Debtors, ; (iv) to have a common identity with the Debtors, ; (v) to have acquired the trade or business of any of the Debtors for any purpose under applicable U.S. federal law (including the Bankruptcy Code and the Internal Revenue Code of 1986, as amended), ; or (vi) to be held out to the public as a continuation of the Debtors or the Debtors' trade or business; *provided that*, notwithstanding the foregoing, the Buyer may be, and the arguments of the Debtors and the Buyer are preserved as to whether, Buyer is in privity with Debtors for purposes of *res judicata* analyses.

34.    32. Except as expressly set forth in the Asset Purchase Agreement or this Sale Order with respect to Assumed Liabilities or Permitted Encumbrances, the transfer of the Purchased Assets, including, without limitation, the assumption, assignment, and transfer of any Assumed Agreement and Assumed Real Property Lease, to the Buyer shall not cause or result in, or be deemed to cause or result in, the Buyer, any of its affiliates or subsidiaries, or any of their respective representatives, having any liability, obligation, or responsibility for, or any Purchased Assets being subject to or being recourse for, any Interest whatsoever, whether arising under any doctrines of successor, transferee, or vicarious liability or any kind or character, including, but not limited to, under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee, or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, or regulation, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, breach of fiduciary duty, aiding or abetting breach of fiduciary duty, or otherwise, whether at law or in equity, directly or indirectly, and whether by payment or otherwise.  The Buyer shall not be deemed to have expressly or implicitly assumed any of the

35

Debtors' liabilities (other than a Permitted Encumbrance or Assumed Liability expressly set forth in the Asset Purchase Agreement). Except as otherwise provided herein or in the Asset Purchase Agreement, the transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement shall not result in the Buyer or the Purchased Assets having any liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any claim against the Debtors or against any insider of the Debtors or Interests (other than Assumed Liabilities or Permitted Encumbrances).

## **GOOD FAITH**

35.    The Transaction contemplated by this Sale Order, the Asset Purchase Agreement, and the other Transaction Documents is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale and Transaction shall not alter, affect, limit, or otherwise impair the validity of the Sale or Transaction (including the assumption, assignment, and/or transfer of the Assumed Agreements and Assumed Real Property Leases), except for so long as such authorization and consummation are duly stayed pending such appeal. The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code. The Buyer is also not an "insider" of any Debtor, as that term is defined in the Bankruptcy Code.

## ~~**OBLIGATIONS OF THE BACK-UP BIDDER**~~

~~34.    The Back-Up Bid is hereby approved and is deemed open and irrevocable until the Closing of the Asset Purchase Agreement. If the Buyer fails to consummate the Sale because of~~

US-DOCS\138480896.10

its failure to perform, the Debtors shall be authorized to consummate the Sale with the Back-Up Bidder subject to the procedures set forth in the Bidding Procedures Order.

35.    In the event that the Debtors consummate the Sale with the Back-Up Bidder as set forth herein, the Back-Up Bidder shall have the same protections as the Buyer as set forth in this Sale Order and shall acquire the Purchased Assets and assume liabilities in accordance with the Back-Up Bid and this Sale Order subject to the procedures set forth in the Bidding Procedures Order.

**OTHER PROVISIONS AND RESOLUTIONS OF SALE OBJECTIONS**

36.    Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stay provisions provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply. Accordingly, the Debtors are authorized and empowered to close the Sale and Transaction immediately upon entry of this Sale Order. In the absence of any Person obtaining a stay pending appeal, the Debtors and the Buyer are free to close the Transaction under the Asset Purchase Agreement at any time pursuant to the terms thereof.

37.    The Buyer shall not be required, pursuant to section 365(l) of the Bankruptcy Code or otherwise, to provide any additional deposit or security with respect to any of the Assumed Agreements and Assumed Real Property Leases to the extent not previously provided by the Debtors.

38.    Neither the Buyer nor the Debtors shall have an obligation to close the Transaction until all conditions precedent in the Asset Purchase Agreement to each of their respective obligations to close the Transaction have been met, satisfied, or waived in accordance with the terms of the Asset Purchase Agreement. The provisions of this Sale Order are self-executing. In the absence of any Person obtaining a stay pending appeal, the Debtors and the Buyer are free to

37

close the Transaction under the Asset Purchase Agreement at any time pursuant to the terms thereof.  The Transaction contemplated by the Asset Purchase Agreement is undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the sale of the Purchased Assets to the Buyer (including the assumption and assignment by the Debtors of any of the Assumed Agreements and Assumed Real Property Leases), except for so long as such authorization is duly stayed pending such appeal.  The Buyer is a buyer in good faith of the Purchased Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

39.     Nothing in this Sale Order shall modify or waive any closing conditions or termination rights set forth in the Asset Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

40.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Transaction.

41.     The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

42.     The Asset Purchase Agreement and the other Transaction Documents may be modified, amended, or supplemented in a writing signed by the parties thereto, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates or their creditors, without further notice to or order of this Court.   Any

38

modifications, amendments or supplements having a material adverse effect on the Debtors' estates or their creditors shall be subject to the approval of this Court after notice and a hearing.

43.     Broward County.  To the extent that Broward County, Florida ("Broward County"), has valid, perfected, enforceable, senior and non-avoidable liens for 2023 property taxes and non-ad valorem assessments arising under state law on any proceeds from the Transaction (the "2023 Broward County Liens"), proceeds shall be placed in a segregated account in the aggregate amount of $125,965.61 as adequate protection for Broward County's claims or used to pay Broward County on account of such claims promptly following Closing.  The 2023 Broward County Liens shall attach to such proceeds to the same extent and with the same priority as the liens they now hold against the property of the Debtors.  Any funds placed in a segregated account shall be on the order of adequate protection and shall constitute neither the allowance of the claims of Broward County, nor a cap on the amounts they may be entitled to receive.  Furthermore, the 2023 Broward County Liens shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens.  Any funds segregated pursuant to this paragraph may be distributed only upon agreement between Broward County and the Debtors, or by subsequent order of the Court, duly noticed to Broward County.

44.     Chubb. Notwithstanding anything to the contrary in the Motion, the Asset Purchase Agreement, any lists of Assumed Agreements and Assumed Real Property Leases to be assumed and assigned and/or any Assumption Notices, this Sale Order, or any documents relating to any of the foregoing: nothing shall permit or otherwise effect a sale, an assignment, or any other transfer of: (i) any insurance policies that have been issued by Federal Insurance Company, Great Northern Insurance Company, Chubb Custom Insurance Company, Vigilant Insurance Company, and/or any of their U.S.-based affiliates and successors (collectively, the "Chubb Companies") and all

US-DOCS\138480896.10

agreements, documents or instruments relating thereto (collectively, the "Chubb Insurance Contracts"); and/or (ii) any rights, proceeds, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts to the Buyer; *provided, however*, that to the extent any claim with respect to the Purchased Assets arises that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Buyer any such insurance proceeds (each, a "Proceed Turnover"), *provided, further, however*, that the Chubb Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover.

45.    OBI/Monster Escrow Account.  The *Order Granting Debtors' and Creditors Monster Energy Company and Orange Bang, Inc.'s Joint Agreed Motion to Approved Agreement Regarding Royalty that Accrued Postpetition* [ECF No. 639] (the "Royalty Order") is modified such that both the Debtors' and Buyers' obligations under the Royalty Order shall be deemed satisfied following distribution of the OBI/Monster Escrow Amount (and if applicable, payment of such amount from reserves from the Sale Proceeds established in accordance with this Sale Order) in accordance with Section 7.19 of the Asset Purchase Agreement.  For the avoidance of doubt, upon Closing of the Transaction under the Asset Purchase Agreement and the satisfaction of the terms of Section 7.19 of the Asset Purchase Agreement, the Debtors shall have no further financial obligations to MEC or Orange Bang, Inc. with respect to the Postpetition Royalty (as defined in the Royalty Order).

46.    ~~43.~~ This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things~~,~~: (i) interpret, implement, and enforce the terms and provisions of this Sale Order, the Asset Purchase Agreement, the Transaction Documents, and any amendments thereto and any waivers and consents given thereunder~~,~~; (ii) compel delivery of the

40

Purchased Assets to the Buyer~~,~~; (iii) compel performance of obligations owed to the Debtors~~,~~; (iv) resolve any disputes related to the Transaction Documents~~,~~; (v) compel delivery of any waivers, releases, or other related documentation reasonably requested by the Debtors or the Buyer to evidence the release of any Interests in the Purchased Assets~~,~~; (vi) enforce the injunctions and limitations of liability set forth in this Sale Order~~,~~; and (vii) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assumed Agreements and Assumed Real Property Leases.

47. ~~44.~~All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

~~45.    Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Sale Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any Person or Entity obtaining a stay pending appeal, the Debtors and the Buyer are free to close the Transaction under the Asset Purchase Agreement at any time pursuant to the terms thereof.  The Transaction contemplated by the Asset Purchase Agreement is undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the sale of the Purchased Assets to the Buyer (including the assumption and assignment by the Debtors of any of the Assumed Agreements and Assumed Real Property Leases), except for so long as such authorization is duly stayed pending such appeal.  The Buyer is a buyer in good faith of the Purchased Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.~~

48. ~~46.The~~ Consistent with the terms of the Asset Purchase Agreement, the Debtors are authorized to change their legal names, and file any necessary documents to effectuate such name

41

changes, without further order of the Court.  The Debtors shall file a motion to correct the debtor's name pursuant to Local Rule 1009-1(B).

49.    47. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (ai) these Chapter 11 Cases, (bii) any subsequent chapter 7 case into which these Chapter 11 Cases may be converted, or (ciii) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.  To the extent of any such conflict or derogation, the terms of this Sale Order shall govern.

50.    48. To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion, the terms of this Sale Order shall govern.

51.    49. To the extent there are any inconsistencies between the terms of this Sale Order, on the one hand, and the Asset Purchase Agreement or any Transaction Document, on the other hand, the terms of this Sale Order shall govern.

52.    50. The provisions of this Sale Order are non-severable and mutually dependent.

US-DOCS\138480896.10

**EXHIBIT A**

**Asset Purchase Agreement**

US-DOCS\138480896.10

**EXHIBIT B**

**Schedule of Cure Costs**

**EXHIBIT C**

**Adjourned Objections**

| Objector [ECF No.] | Status |
|---|---|
| *Formal Objections* | |
| SLBS Limited Partnership d/b/a Summit Distributing<br>[ECF No. 1054] | Adjourned to a date to be determined |
| Archer Daniels Midland Company, ADM Wild Europe GmbH & Co. KG and Wild Flavors<br>[ECF No. 1040] | Adjourned to a date to be determined |
| LPUSA, LLC, d/b/a Network<br>[ECF No. 1074] | Adjourned to a date to be determined |
| Doehler USA Inc.<br>[ECF No. 1087] | Adjourned to a date to be determined |
| Ally Bank<br>[ECF No. 1090] | Adjourned to a date to be determined |
| Ardagh Metal Packaging USA Corp<br>[ECF No 1101] | Adjourned to a date to be determined |
| Graphic Packaging International<br>[ECF Nos. 1102 & 1480] | Adjourned to a date to be determined |
| Fona International, Inc.<br>[ECF No. 1106] | Adjourned to a date to be determined |
| Prologis Targeted US Logistics Fund L.P.<br>[ECF No. 1108] | Adjourned to a date to be determined |
| Ball Metal Beverage Container Corp<br>[ECF No. 1110] | Adjourned to a date to be determined |
| *Informal Objections* | |
| Krones Inc. | Adjourned to a date to be determined |

**EXHIBIT D[7]**

**Schedule of Interests Affecting Real Property Located at:**
**1635 S. 43rd Ave., Phoenix, Maricopa County, AZ**

11.  Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing
      Amount:      $541,400,000.00
      Dated:       December 3, 2020
      Grantor:      JHO Real Estate Investment, LLC, a Florida limited liability company
      Trustee:      Stewart Title & Trust of Phoenix, Inc., a Delaware corporation
      Beneficiary:  Truist Bank, as Administrative Agent
      Recording Date: December 14, 2020
      Recording No.:    20201230181

16.  Mechanic's Lien
      Claimant:     Nexus Steel, L.L.C.
      Amount:     $313,512.91
      Recording Date: January 20, 2022
      Recording No.:    20220060823

19.  Mechanic's Lien
      Claimant:     Hardrock Concrete Placement Co., Inc.
      Amount:     $669,195.67
      Recording Date:    March 22, 2022
      Recording No.:    20220257254

20.  Mechanic's Lien
      Claimant:     Stellar Group, Inc.
      Amount:     $7,722,974.37
      Recording Date: March 23, 2022
      Recording No.:    20220259809

21.  Mechanic's Lien
      Claimant:     Faith Technologies Incorporated, a Wisconsin corporation
      Amount:     $807,781.00
      Recording Date: March 24, 2022
      Recording No.:    20220266675

22.  Mechanic's Lien
      Claimant:     Faith Technologies Incorporated, a Wisconsin corporation
      Amount:     $2,777,007.15
      Recording Date: March 24, 2022
      Recording No.:    20220266676

---

[7]  Number references in this Exhibit are to Schedule B, Part I, of Chicago Title commitment no. CT349230039 Dated May 23, 2023, attached as **Exhibit E** hereto.

23.  Mechanic's Lien
        Claimant:        HACI Mechanical Contractors, Inc.
        Amount:          $224,126.00
        Recording Date:        April 22, 2022
        Recording No.:        20220357919

26.  Notices of Lis Pendens
        Court:            Superior Court of Maricopa County, AZ
        Case No.:        CV2022-008873
        Plaintiff:        Nexus Steel, LLC
        Defendant:      JHO Real Estate Investment, LLC, et al.
        Recording Dates and Recording Nos.:        July 13, 2022, Recording No. 20220570741
                                        August 10, 2022, Recording No. 20220633035
                                        August 25, 2022, Recording No. 20220667523
                                        September 21, 2022, Recording No. 20220726494
                                        October 3, 2022, Recording No. 20220753033
                                        October 21, 2022, Recording No. 20220791939

31.  Any lien, or right to a lien, for services, labor, materials or equipment whether or not shown
by the public records.

34.  Mechanic's Lien
        Claimant:        CM Builders, Inc., d/b/a Integrated Masonry
        Amount:          $145,637.30
        Recording Date:        April 4, 2022
        Recording No.:        20220297171

**EXHIBIT E**

**Schedule B, Part I of Chicago Title Commitment**