

**ORDERED in the Southern District of Florida on June 30, 2023.**



**Peter D. Russin, Judge
United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

Vital Pharmaceuticals, Inc., *et al.*,

    Debtors.

_____/

Case No. 22-17842-PDR

Chapter 11 Cases
(Jointly Administered)

**ORDER GRANTING, IN PART, JOHN H. OWOC AND
MEGAN OWOC'S EMERGENCY MOTION FOR
PROTECTIVE ORDER REGARDING
<u>THIRD-PARTY SUBPOENAS</u>**

THIS CAUSE came before the Court on June 13, 2023, at 10:00 a.m. on John H. Owoc and Megan Owoc's *Emergency Motion for Protective Order Regarding Third-Party Subpoenas* (the "Motion for Protective Order").[1] In January 2023, the Official Committee of Unsecured Creditors served Notices of Taking Rule 2004 Examinations

---

[1] Doc. 1449.

on Mr. and Mrs. Owoc ("Rule 2004 Notices").[2] The Rule 2004 Notices demanded that the Owocs sit for Rule 2004 examinations and produce all documents regarding (among other things) the use of any distributions they or their family have received from the Debtors.[3] Neither Mr. Owoc nor Mrs. Owoc objected to the Rule 2004 Notices. At her Rule 2004 examination, however, Mrs. Owoc objected to questions about her personal bank accounts and personal finances. So the Committee sought to compel her testimony on those topics.[4] At a May 11, 2023 hearing, the Court ruled that the Committee can examine the Owocs about their personal finances to the extent necessary to investigate potential targets of Chapter 5 avoidance actions.[5]

When Mrs. Owoc failed to produce all the requested bank statements at her rescheduled Rule 2004 examination, the Committee issued Rule 2004 subpoenas to banks where Mr. Owoc or JW Owoc Enterprises had accounts (the "Rule 2004 Subpoenas").[6] The Rule 2004 Subpoenas command the banks to produce:

- All statements from January 1, 2018 through the present for accounts in the name of either John H. Owoc or JW Owoc Enterprises;

---

[2] Doc. 684.

[3] Doc. 684, Ex. A, ¶ 17; Doc. 686, Ex. A, ¶ 13.

[4] Doc. 1365.

[5] Doc. 1382, p. 36, l. 13 – p. 38, l. 14.

[6] The banks that were subpoenaed are Bank of America; JPMorgan Chase; City National Bank of Florida; City National Bank; Regions Bank; Sun Credit Union; Truist Bank; and Wells Fargo Bank. Doc. Nos. 1423 – 30.

- All wire statements for those accounts; and

- All statements from January 1, 2018 through the present for accounts associated with eighteen Debtor and non-debtor entities.

The Owocs seek a protective order from the Rule 2004 Subpoenas.[7] In essence, the Owocs argue that the subpoenas amount to a wholesale investigation into their private affairs, denying them the procedural safeguards afforded by the Federal Rules of Civil Procedure in the process.[8] Thus, the Owocs ask the Court to quash the Rule 2004 Subpoenas.

The Committee opposes the Owocs' request to quash the Rule 2004 Subpoenas on three grounds: First, the Committee says the Owocs lack standing to quash the subpoenas.[9] Second, the Committee says the Owocs waived any right to challenge discovery of their personal finances because they failed to object to the Rule 2004 Notices.[10] Third, the Committee says the Court has already ruled the Owocs' personal finances are fair game for Rule 2004 discovery.[11]

The Court is not convinced the Owocs lack standing to seek a protective order. Nor is the Court convinced that the Owocs have waived a challenge to the scope of

---

[7] Doc. No. 1449.

[8] *Id.* ¶¶ 4 – 5 (citing *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) ("It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs.")).

[9] Doc. 1458, ¶¶ 8 – 13.

[10] *Id.* ¶ 14.

[11] *Id.* ¶¶ 15 – 19.

Rule 2004 discovery.[12] And while the Court has ruled that the Committee is entitled to discover the Owocs' personal finances, the Court was clear that discovery is limited to—at least as it relates to discovery from third-party financial institutions—discovery of potential subsequent (i.e., immediate or mediate) transferees of avoidable transfers.

In limiting discovery, the Court was concerned about striking the appropriate balance between the Committee's right to investigate potential Chapter 5 avoidance actions, on the one hand, and any potential right of privacy the Owocs may have, on the other.[13] The Committee proposes a way to strike that balance:

- The Committee proposes to hire a team of contract attorneys (the "Independent Review Team") who will review any bank statements produced in response to the Rule 2004 Subpoenas to assess whether the transfers identified on the bank statements are relevant to the Committee's investigation of potential Chapter 5 avoidance actions. Transfers are deemed relevant if they were made during a certain time period; exceed $5,000; and were made to an individual, financial or investment institution, or brokerage account or are associated with a real estate transaction.

---

[12] *In re Parikh*, 397 B.R. 518, 525 (Bankr. E.D.N.Y. 2008) ("The party subject to the subpoena may bring such a motion within fourteen days of service. While a failure to object within the fourteen-day time limit usually constitutes a waiver of objection, a late objection is not automatically a bar to consideration. . . . A late objection may be allowed for good cause where the subpoena is overbroad so that it goes beyond the boundaries of fair discovery, the recipient is a non-party acting in good faith, and the counsel for both the recipient and the issuing party were in contact concerning the recipient's compliance before the ultimate challenge to the subpoena.") (citations omitted).

[13] The Florida Constitution guarantees every "natural person . . . the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein." Art. I, § 23, Fla. Const. Florida courts have held that the "right to privacy" under the Florida Constitution "protects the disclosure of financial information of private persons if there is no *relevant* or compelling reason to require disclosure." *See, e.g., McFall v. Welsh*, 301 So. 3d 320, 321 (Fla. 5th DCA 2019) (citing *Rowe v. Rodriguez-Schmidt*, 89 So. 3d 1101, 1103 (Fla. 2d DCA 2012); *Woodward v. Berkery*, 714 So. 2d 1027, 1035 (Fla. 4th DCA 1998)).

- The Independent Review Team will redact transactions that are not relevant.

- All statements identifying transactions the Independent Review Team has deemed relevant will be produced to the Owocs and the Committee simultaneously (the Owocs will also receive a complete set of unredacted statements).

- The Owocs will have five days to notify the Committee whether transfers identified as relevant should be redacted. If the parties cannot agree over how to resolve a dispute regarding the relevance of a transfer, the Court will resolve the dispute.[14]

The Committee says courts across the country routinely use a similar process to protect privileged documents when reviewing materials seized pursuant to a search warrant.[15]

Although the Court agrees that objective criteria should guide the determination of which transfers on the bank account statements are discoverable, the Court declines to adopt the Independent Review Team approach for four reasons: First, general discovery rules entrust the party responding to discovery with the responsibility for determining, in the first instance, which documents are responsive to a discovery request. Second, unlike a recent dispute over the review of documents belonging to the Debtors, the Owocs have every right to see their own bank statements. Third, to the extent objective criteria guides the determination of which transfers are relevant, the Owocs' counsel can identify the relevant transfers just as

---

[14] Doc. 1478, ¶ 2.

[15] *Id.* ¶ 3.

easily as an Independent Review Team could. And because the Owocs' counsel owes a duty of candor to the Court, there is little risk the Owocs' counsel will fail to scrupulously apply the criteria for determining which documents are relevant. Fourth, use of an Independent Review Team would give rise to an administrative expense that would have to be borne by the bankruptcy estate.

The Court concludes that having the Owocs' counsel review the Owocs' bank statements to identify relevant transfers—subject to objective criteria—comports with the process contemplated by the discovery rules; balances the Committee's right to discovery against any privacy rights the Owocs might have; and avoids an unnecessary administrative expense to the bankruptcy estate. Accordingly, the Court **ORDERS**:

1. The Owocs' Motion for Protective Order is GRANTED to the extent set forth in this Order.

2. Within 7 days of entry of this Order, the Committee shall turn over to the Owocs' counsel any bank statements that have already been produced in response to the Rule 2004 Subpoenas. If bank statements are produced in response to the Rule 2004 Subpoenas after entry of this Order, the Committee shall turn those statements over to the Owocs' counsel within 7 days of receipt of the statements. Neither the Committee nor its counsel shall review any bank statements produced in response to the Rule 2004 Subpoenas.

3. Within 14 days of entry of this Order, the Committee will serve on the Owocs a list of transfers made by any of the Debtors during the four years before the

petition date that the Committee believes in good faith may be avoided and recovered under Chapter 5 of the Bankruptcy Code ("Potential Avoidable Transfers").

4. The Owocs' counsel shall promptly review any bank statements produced in response to the Rule 2004 Subpoenas to identify potentially relevant transfers to subsequent (i.e., immediate or mediate) transferees. Subject to paragraph 5, a transfer out of an account in the name of John H. Owoc, Megan Owoc, or JW Owoc Enterprises is relevant if the following conditions are met (a "Relevant Transfer"):

    a. The transfer occurred between January 1, 2018 and October 10, 2022;

    b. The transfer was made within 90 days of a Potential Avoidable Transfer;

    c. The amount of the transfer exceeds $5,000;

    d. The transfer was made by electronic means (wire, ACH, etc.) or check; and

    e. The transfer was made:

        i. to an individual;

        ii. to a financial or investment institution;

        iii. to a brokerage account; or

        iv. in connection with a real estate transaction.

5. Even if a transfer meets the criteria in paragraph 4, it shall not be deemed a Relevant Transfer if the transfer was made to acquire personal property in the name of John H. Owoc or Megan Owoc for fair market value.

6. The Owocs may redact from the bank account statements produced in response to the Rule 2004 Subpoenas any transfers that are not Relevant Transfers under this Order.

7. Within 14 days of receiving the list of Potential Avoidable Transfers, the Owocs' counsel shall redact, consistent with the terms of this Order, any bank account statements produced in response to the Rule 2004 Subpoenas that are in counsel's possession and produce to the Committee any redacted bank account statements that identify Relevant Transfers.

8. If the Owocs' counsel receives any bank account statements from the Committee after entry of this Order, then within 14 days of receipt of the bank account statements, the Owocs' counsel shall redact, consistent with the terms of this Order, any bank account statements produced in response to the Rule 2004 Subpoenas and produce to the Committee any redacted bank statements that identify Relevant Transfers.

9. The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order, including the imposition of sanctions against the Owocs or their counsel if they fail to properly identify all Relevant Transfers.

###

Copies to:
All parties in interest.