UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No.: 22-17842-PDR |
| Debtors.[1] | (Jointly Administered) |

_____/

**DEBTORS' OBJECTION TO CREDITOR AND INTERESTED PARTY JOHN H.
OWOC'S EMERGENCY MOTION TO DISMISS CHAPTER 11 BANKRUPTCY
OF JHO REAL ESTATE INVESTMENT, LLC**

Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property

Holdings, LLC, JHO Real Estate Investment, LLC ("JHO RE"), Quash Seltzer, LLC, Rainbow

Unicorn Bev LLC and Vital Pharmaceuticals International Sales, Inc. (collectively, the

"Debtors"), by and through undersigned counsel, hereby file this objection (the "Objection") to

*Creditor and Interested Party John H. Owoc's Emergency Motion to Dismiss Chapter 11*

*Bankruptcy of Debtor JHO Real Estate Investment, LLC* [D.I. 1466] (the "Opening Brief") and

Supplemental Brief in support of the Motion [D.I. 1574] (the "Supplemental Brief" and together

with the Opening Brief, the "Motion").  In support of this Objection, the Debtors respectfully

state as follows:

**PRELIMINARY STATEMENT**

1.    The Motion was meritless at the time of its filing, and discovery has only

confirmed it is nothing more than a costly, wasteful, and value-destructive stunt.  Mr. Owoc

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal
tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("Vital Pharmaceuticals") (8430); (ii) Bang Energy
Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC
(9394); (v) Quash Seltzer, LLC ("Quash Seltzer") (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital
Pharmaceuticals International Sales, Inc. (8019).

signed the written consent authorizing the JHO RE filing just as he signed the authorizations for every other Debtor, on the same evening, in sequential order, with the same signature, on the same e-signature platform. Mr. Owoc knew exactly what he was signing, and he knew the consequences of doing so—for the Debtors and for him personally. He participated in the discussions as the Chairman of JHO RE Board of Managers leading up to and approving the filings, and he also had personal counsel advising him. Thereafter, he participated in the bankruptcy proceedings, including the JHO RE case, for five months as CEO and for an additional three months as a creditor and interested party. During that entire time, the plan for the case included exploring a sale of all of the assets of the Debtors, including the assets of JHO RE. Never once in those eight months did Mr. Owoc question the validity of the filing of the JHO RE case. To the contrary, he signed and caused JHO RE to enter into a post-petition credit facility in October 2022, and an amendment to that facility in January 2023. And he even filed a proof of claim against JHO RE—in December 2022. Mr. Owoc cannot now rewrite history, whether through his Motion or accompanying submission of demonstrably false statements to this Court. The Motion should be denied and sanctions should be imposed against Mr. Owoc and his counsel.[2]

## I. FACTS

### A.    Mr. Owoc's Pleadings and Statements

2.    Mr. Owoc filed the Opening Brief on June 16, 2023. Therein, Mr. Owoc represented that (a) he did not authorize the JHO RE bankruptcy filing; (b) JHO RE was not in financial distress in October 2022; (c) his advisors failed to inform him of the consequences of a

---

[2] By letter dated July 8, 2023, the Debtors put Mr. Owoc's counsel on notice that prosecution of the Motion constituted a violation of Federal Rule of Bankruptcy Procedure 9011(b) as well as 28 U.S.C. § 1927, and requested that counsel withdraw the Motion no later than 5:00 p.m. on Sunday July 9, 2023. As of the time of this filing, counsel has not responded.

JHO RE filing; and (d) the Debtors failed to comply with Local Rule 9011-1 in respect of signatures related to the written consent authorizing JHO RE's chapter 11 petition.

3.      Mr. Owoc filed a declaration in support of the Motion on June 23, 2023 [D.I. 1520] (the "First Owoc Declaration").   Therein Mr. Owoc represented to the Court under penalty of perjury that, among other things: (a) he did not sign the written consent authorizing the JHO RE petition, (b) he did not authorize John DiDonato, the Debtors' then-Chief Transformation Officer, to file such a petition; (c) no person ever advised him about "the substance and purpose of a filing of bankruptcy on behalf of [JHO RE]"; (d) he did not discover that JHO RE was a part of the Debtors' bankruptcy until April 2023; and (e) he was not represented by his personal attorney, Paul Battista, until after the petition was filed.

4.      Mr. Owoc filed his Supplemental Brief on July 6, 2023, purportedly in response to concerns raised by this Court.  Therein, Mr. Owoc asserted that he never ratified the bankruptcy filing of JHO RE, and that JHO RE itself has not ratified the bankruptcy filing, or benefitted from the filing.

5.      The Debtors deposed Mr. Owoc on July 7, 2023.  *See* Transcript of Deposition of John H. Owoc, *In re Vital Pharmaceuticals Inc.*, Case No. 22-17842-PDR (Bankr. S.D. Fl.) dated July 7, 2023 ("Owoc Tr.") (attached hereto as **Exhibit 1**).  During the deposition, the Debtors presented documents to Mr. Owoc demonstrating the falsity of his foregoing sworn assertions.

6.      Later that day, Mr. Owoc filed a supplemental declaration [D.I. 1586] (the "Supplemental Declaration") admitting that portions of the First Owoc Declaration were false and confirming that Mr. Battista had been Mr. Owoc's personal counsel prior to the bankruptcy filings, but offering no other recantations.

**B.      Prepetition Obligations**

7.      JHO RE was in financial distress on and before the petition date of October 10, 2022.  JHO RE was a guarantor on the Debtors' prepetition credit facility, was liable upon default for the entirety of the obligations under the credit facility, and had pledged substantially all of its assets to secure that guarantee, including mortgaging of its principal asset, the Phoenix manufacturing facility.  *See* Amended and Restated Revolving Credit and Term Loan Agreement dated August 14, 2020 (attached hereto as **Exhibit 2**); Amended and Restated Pledge and Security Agreement dated August 14, 2020 (attached hereto as **Exhibit 3**); Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated December 14, 2020 (attached hereto as **Exhibit 4**).  Indeed, Mr. Owoc himself had pledged his equity in JHO RE to secure the credit facility obligations.  *See* Owner Pledge Agreement dated August 14, 200 (attached hereto as **Exhibit 5**).  By October 2022, the credit facility had approximately $344 million outstanding and had been in default on multiple bases for seven months.  *See* Fifth Forbearance Agreement dated September 15, 2022 (attached hereto as **Exhibit 6**) Recitals, §§ 2-3, Schedule 1.  In the absence of forbearance from the lenders, the lenders had the right to immediately foreclose on the equity in, or assets of, JHO RE.

8.      As a result, JHO RE had, together with the other obligors on the prepetition facility, entered five successive forbearance agreements with the lenders.  *See* Forbearance Agreements dated March 11, 2022, June 17, 2022, June 30, 2022, August 8, 2022, and September 15, 2022 (attached hereto as **Exhibits 6-10**) (together, the "Forbearance Agreements").  Each of these agreements reaffirms on behalf of each obligor, including JHO RE, the validity of the obligations and the existence of the defaults under the prepetition facility.  *See generally id.*  Mr. Owoc signed each one of the Forbearance Agreements on behalf of JHO RE.  *Id.*  In short, JHO RE was incontestably liable on $344 million of debt obligations and was at risk of immediate

12257469-2

foreclosure—as was Mr. Owoc in respect of his equity interests in JHO RE—if and when the lenders refused to grant further forbearances.

9.       In addition, by October 2022, JHO RE was a defendant in state-court debt-collection and foreclosure proceedings in Arizona.  As discussed at some length during these chapter 11 cases, certain contractors asserted pre-petition liens upon the real property and improvements comprising the Phoenix facility and were seeking to foreclose in order to recover an estimated $15 million for goods, materials, and labor provided to JHO RE's Phoenix facility. *See generally Joint Motion for Relief from the Automatic Stay to Continue Action in Non-Bankruptcy Form* [D.I. 670]) (the "AZ Stay Motion").  Without the benefit of the automatic stay, JHO RE was at substantial risk of losing the Phoenix facility to liquidation in a foreclosure sale, with the proceeds thereof being distributed to satisfy the lienholders.

10.       JHO RE's Summary of Assets and Liabilities [D.I. 14] lists assets of approximately $47 million, comprising its Phoenix facility and underlying real property, set against liabilities of approximately $403 million, comprising its obligations in respect of the prepetition credit facility and nearly $50 million owed to Vital Pharmaceuticals, Inc.[3]

### C.       Chapter 11 Filing Information Presented to Mr. Owoc

11.       The Debtors' bankruptcy filings were the culmination of careful restructuring planning in which Mr. Owoc fully participated as sole manager, CEO and Chairman of the Board. Those discussions are memorialized in, among other documents, minutes of the combined meeting of the Debtors' Boards of Directors and/or Managers (collectively, the "Board"), dated September 29, 2022, and signed by Mr. Owoc.  *See* Minutes of Joint Special Meeting of Board

---

[3] The Claims Register maintained by Stretto, Inc., the Debtors' claims and noticing agent, evidences that 16 additional claims have been filed against the JHO RE bankruptcy estate in a total amount of over $25 million in secured and unsecured liabilities.  *See* **Exhibit 29**.

of Directors/Managers of Vital Pharmaceuticals, Inc. and Certain Affiliates and Subsidiaries dated Sept. 29, 2022 (attached hereto as **Exhibit 11**) (the "Minutes").

12.     Those Minutes detail the discussion held by the Board in respect of the prospective Debtors, including JHO RE. *See* Minutes at 1. The seven prospective Debtor entities are referred to in the Minutes as the "Company." *Id.* The Minutes reflect that the combined Board of the Company comprised at that time a single person: Jack Owoc. *Id.* Mr. Owoc was represented at the meeting in his individual capacity by his counsel, Paul Battista. *Id.* at 2. In his capacity as sole Board member, Mr. Owoc had the benefit of the participation of several members of Company management, as well as Company advisors from Latham & Watkins LLP ("Latham"), Berger Singerman LLP ("Berger"), Rothschild & Co ("Rothschild") and Huron Consulting Services ("Huron").

13.     At the meeting, Berger led a discussion of fiduciary duties as is typical in the lead up to a bankruptcy filing. *Id.* at 2. Rothschild then led a discussion of the challenges facing the Company, including its "liquidity shortfall," the expiration of forbearance with secured lenders, and impending required payments. *Id.* at 2-3. The Company's advisors then walked Mr. Owoc through presentation materials attached to the Minutes as Exhibit B. *Id.* That presentation states explicitly that the "Filing entities" will include JHO:



**Filing entities**

Vital Pharmaceuticals, Inc.; Vital Pharmaceuticals International Sales, Inc.; Bang Energy Canada, Inc.; JHO Intellectual Property Holdings, LLC; JHO Real Estate Investment, LLC; Rainbow Unicorn Bev, LLC

*Id.*, Ex. B at 5 (highlight added).

14.     The presentation further notes that the filing entities are "borrowers or guarantors under the defaulted bank debt and/or have other material obligations (e.g., mechanics' liens, litigation claims)." *Id.* The presentation further explains that a "key objective" of the filing will

6

be to "[p]ursue a value-maximizing dual track strategic alternative process, which includes a strategic marketing of the business . . . ." *Id.* The presentation further notes that bankruptcy is "the only forum in which the Company has a viable path to raise the necessary liquidity to support and protect the business." *Id.*

15.    At the conclusion of the meeting, the Board—i.e., Mr. Owoc—took the matter under advisement. *Id.* at 6. Mr. Owoc subsequently approved, and signed, the Minutes reflecting all of the foregoing.



*Id.* at 7.

16.    While Mr. Owoc may now contend that his approval of the Minutes is somehow forged by computer hackers, Mr. Owoc admitted at deposition that he had no basis for such an assertion:

> Q: And [in the audit trail for Mr. Owoc's signature on the Minutes] it says document emailed to CEO@bangenergy.com for signature; do you see that?
> A: Yes.
> Q: That was your email address at the time you were CEO of the company; is that correct?
> A: That was my email that you hacked into and had access to, correct, yes, the debtors did that.
> ***
> Q: What is your basis for saying that?
> A: *I have no basis* but I'm sure this -- the biggest mistake you ever made was confiscating my computer because when

you did forensic, forensics is going to show exactly what you
and Vital did.

Owoc Tr. at 61:12-62:8 (emphasis added).[4]

### D.    Written Consent to File JHO RE

17.    The Debtors, including JHO RE, filed their petitions on October 10, 2022 (the

"Petition Date").  *See* Chapter 11 Voluntary Petition and Corporate Resolution, *In re JHO Real*

*Estate Investment LLC*, Case No. 22-17847 [D.I. 1] (the "JHO RE Petition").  The JHO RE

Petition is signed by John DiDonato as Chief Transformation Officer.  *Id* at 5.  The JHO RE

Petition attaches the Written Consent of Sole Member and Sole Manager of JHO Real Estate

Investment LLC (in the form attached hereto as **Exhibit 12**, inclusive of the e-signature audit

trail, the "JHO RE Written Consent")*.*  The JHO RE Written Consent states, among other things,

that the Manager, Mr. Owoc, "has received, reviewed and considered the recommendations of the

management of the Company [defined therein as JHO] and the Company's legal, financial and

other advisors," that the Manager has "fully considered each of the strategic alternatives available

the Company," and that "the Manager has determined in the exercise of his business judgment

that it is in the best interest of the Company to authorize and empower management of the

Company to file a Chapter 11 bankruptcy case."  *Id.*  The Written Consent thereafter approves,

among other acts, the filing of a chapter 11 case for JHO RE.  *Id.*

18.    Mr. Owoc executed the JHO RE Written Consent via the AdobeSign e-signature

platform.  He did so on the same evening, in the same manner, and in sequential order within

minutes of the written consents he executed for each of the other Debtors, whose filings he has

not challenged.  Specifically, Mr. Owoc executed the documents as follows:

---

[4] Despite having previously asserted a desire to obtain a "log" relating to activity on the device or devices Mr. Owoc
used to sign documents in these cases, Mr. Owoc's counsel failed to respond to repeated requests from Debtors'
counsel that he engage with them to do so in advance of the scheduled hearing.

- Written Consent of Sole Member and Sole Manager of Quash Seltzer, LLC (attached hereto as **Exhibit 13**) at 10:02 p.m.

- *JHO RE Written Consent at 10:03 p.m.*

- Written Consent of Sole Shareholder and Sole Director of Bang Energy Canada Inc. (attached hereto as **Exhibit 14**) at 10:04 p.m.

- Written Consent of Sole Member and Sole Manager of Rainbow Unicorn Bev LLC (attached hereto as **Exhibit 15**) at 10:05 p.m.

- Written Consent of Sole Shareholder and Sole Director of Vital Pharmaceuticals International Sales Inc. (attached hereto as **Exhibit 16**) at 10:06 p.m.

- Written Consent of Sole Member and Sole Manager of JHO Intellectual Property Holdings, LLC (attached hereto as **Exhibit 17**) at 10:12 p.m.

- Written Consent of Sole Shareholder and Sole Director of Vital Pharmaceuticals Inc. (attached hereto as **Exhibit 18**, and together with Exhibits 13-17, the "Other Consents") at 10:13 p.m.

19.    The signatures on all 7 written consents appear as follows, with a scrawl indistinguishable from the myriad other electronic signatures Mr. Owoc has used throughout the course of these cases:

October __8__, 2022



Jack H. Owoc, Sole Member and Sole Manager

20.    The transmission and execution history for the JHO RE Written Consent is the same as for all of the other written consents and is captured in the audit trail generated by AdobeSign, as follows:  Company paralegal Yaylin Duran creates the document for transmission, the document is then emailed to the account "ceo@bangenergy.com"; the email is viewed by the operator of that account; the operator electronically signs the document with the name "John Owoc," and thereupon the document is complete:

12257469-2



*Compare* JHO RE Written Consent (Exhibit 12) with Other Consents (Exhibits 13-18).

21.    Immediately upon electronically signing the JHO RE Written Consent, Mr. Owoc received an email confirming that he had signed the JHO RE Written Consent. *See* Email from Vital Pharmaceuticals, Inc., to Jack Owoc, dated October 9, 2023, 9:03 p.m. (header "You signed . . . .") (attached hereto as **Exhibit 19**).  Mr. Owoc also received a second email confirming that the JHO RE Written Consent was "completed." *See* Email from Vital Pharmaceuticals, Inc., to Jack Owoc, dated October 9, 2023, 2:03 p.m., (header "Completed . . . .") (attached hereto as **Exhibit 28**).

22.    As the evidence will show, the IP addresses from the "ceo@bangenergy.com" account signed the JHO RE Written Consent and each of the Other Consents is the same, and is also the same as the IP address from which the operator of that account sent emails before and

after signing the written consents, all in the name of Jack Owoc.  Mr. Owoc does not dispute that

"ceo@bangenergy.com" was his corporate email address while employed as CEO of the Debtors.

*See* Owoc Tr. at  57:19-21.

23.     Instead, Mr. Owoc contends that the Debtors and their purported co-conspirators

had comprehensively "hacked" and "controlled" his email.  But Mr. Owoc admitted repeatedly at

deposition that he had no basis for such an assertion.  For example:

> Q:  And what is your basis to say that the debtors were accessing
> that email [ceo@bangenergy.com]?
> A:  Because they hacked into my computer, as I told you four or five
> times.
> Q:  And what is your basis?
> A:  And, again, they hacked in – I have no basis.  The basis will
> show up when the forensics are done on the computer you guys
> confiscated from my house.
> Q:  Who else at the company do you believe had access to your email
> address ceo@bangenergy.com?
> A:  I don't know.  Didn't you guys hire a high-powered CIO . . . to
> do you your will?  . . .
> ***
> Q:  So . . . The basis is that there's a CIO who came into the company
> after you were terminated?
> A:  He was -- I believe he was hired afterwards, but you guys are so
> sketchy.  And there's been so much fraud going, he might have been
> working behind my back before he was even hired.  But my basis is
> not him.  It's just anybody in IT instructed by John DiDonato to do
> John's dirty work.
> ***
> Q:  Sitting here today, Mr. Owoc, are you aware of any evidence
> that demonstrates that your email account was hacked into?
> A:  Yes.
> Q:  What evidence is that?
> A:  I don't know.  We're going to have to recover it from the hard
> drive.

Owoc. Tr. at 108:10-112:22; *see also id.* at 50:23-51:19 (asserting that Debtors accessed computer

but admitting "I have no basis" for said assertion); 61:12-62:8 (admitting having "no basis" for

assertion that Debtors had accessed his email account); 143:24-144:18 (disputing authenticity of

signature on Other Written Consent because signature "doesn't mean anything" because it could have been signed "by someone else" but admitting having "no basis" for such statement).

24.    Based on Mr. Owoc's express authorization, Mr. DiDonato signed the JHO RE Petition, which was then filed on October 10, 2023.

**E.    Certain Conduct During the Chapter 11 Case**

25.    One of Mr. Owoc's first acts upon the filing of the petitions was to approve the filing of the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 26] (the "<u>First Day Declaration</u>").  *See* Email from J. Owoc to. A. Sorkin dated October 10, 2022 (attached hereto as **Exhibit 20**) (stating, in response to a request for review and sign-off, that the declaration was "[a]pproved").

26.    The First Day Declaration approved by Mr. Owoc identifies the individual Debtors more than once, including in a table describing each debtor, and in an organizational chart identifying Debtors and non-debtors:

| Debtor | Description |
|---|---|
| Vital Pharmaceuticals, Inc. | Operating company of the Debtors' non-alcohol-based beverages, including Bang, and party to the Debtors' distribution agreements. |
| Bang Energy Canada, Inc. | Holding company for a non-Debtor foreign entity doing business in Canada (Bang Energy Canada, ULC). |
| JHO Intellectual Property Holdings, LLC | Owner of the intellectual property rights used in connection with the Debtors' beverage business. |
| JHO Real Estate Investment, LLC | Owner of the Debtors' manufacturing facility in Phoenix, Arizona. |
| Quash Seltzer, LLC | Operating company that manufactures and distributes the Debtors' alcoholic seltzer. |
| Rainbow Unicorn Bev, LLC | Inactive entity with no operations, entities, or employees. |
| Vital Pharmaceuticals International Sales, Inc. | Inactive entity with no operations, entities, or employees; a domestic corporation previously formed to export U.S. products. |



*Id.* ¶ 10 , Ex. A (cropped).

27.    From the outset of these Chapter 11 Cases and up until the filing of the Motion, Mr. Owoc never questioned the JHO RE filing, and instead took actions recognizing and advancing the JHO RE proceeding.  In fact, in December 2022, Mr. Owoc filed a proof of claim against JHO RE for alleged indemnification and other obligations, signing it in his own hand under penalty of perjury and representing that he had examined the information in the proof of claim and believed it was correct.  *See* Proof of Claim No. 654.[5]

28.    Mr. Owoc also repeatedly executed post-petition credit documents and lending requests for JHO RE.  Among other things, on October 26, 2022, Mr. Owoc signed the Debtors' Superpriority Secured Debtor-In-Possession Credit Agreement (in the form attached hereto as **Exhibit 21**, the "<u>DIP Credit Agreement</u>") on behalf of JHO RE as a guarantor.  At the same time, he signed the Omnibus Officer's Certificate in respect of the credit agreement (attached hereto as **Exhibit 22**); and the Debtors' Vice President Eugene Bukovi signed an affirmation that Mr. Owoc's signature thereon is genuine.  *See* Omnibus Officer's Certificate at 2.  In so signing, Mr.

---

[5] Notably, Mr. Owoc confirms therein that his email address is "ceo@bangenergy.com."

Owoc affirmed the validity of the authorizing documents for the DIP Credit Agreement, including the written consent of JHO RE approving entry into the DIP Credit Agreement. *Id.* at 1. Of course, that consent—relied upon by the lenders in extending DIP financing—is signed by Mr. Owoc. *Id.* Ex. A.  It is also signed by the four other Managers of JHO RE that had by that time been appointed by Mr. Owoc in response to stakeholder concerns. *See* JHO Real Estate Investment, LLC Action by Unanimous Written Consent of the Member and Managers in Lieu of Meeting dated January 7, 2023 (attached hereto as **Exhibit 23**).  Mr. Owoc has not alleged that any other Manager of JHO RE did not recognize that JHO RE was a debtor or was otherwise confused when executing the consent for the DIP financing on behalf of JHO RE.

29.    Mr. Owoc then repeated the same practice with the amended DIP Credit Agreement and accompanying Omnibus Officer's Certificate executed on January 13, 2023. *See* First Amendment to Superpriority Secured Debtor-In-Possession Credit Agreement (attached hereto as **Exhibit 24**) and Omnibus Officer's Certificate (attached hereto as **Exhibit 25**). Exemplars from the Omnibus Officer's Certificate for the First Amendment are as follows:

12257469-2

First Amendment:



Omnibus Officer's Certificate:



30.    Furthermore, also in January 2023, when the Arizona lien claimants sought to lift

the automatic stay to continue their prepetition litigation against JHO RE, *see* AZ Stay Motion,

15

Mr. Owoc raised no concern.  In February, when the combined Board discussed providing data to bidders that would allow them "to understand the run-rate capacity of the Phoenix facility," Mr. Owoc again did not question why bidders would need data on the Phoenix facility if JHO RE's assets were not for sale.  *See* Minutes of Joint Special Meeting of Board of Directors/Managers of Vital Pharmaceuticals, Inc. and Certain Affiliates and Subsidiaries dated February 28, 2023 (attached hereto as **Exhibit 26**) at 4.  Both through inaction and substantial affirmative action, Mr. Owoc demonstrated his understanding and approval of JHO RE's ongoing bankruptcy proceeding.

### F.    Express Ratification

31.    In addition to the governance changes referenced above, on March 9, 2023, the Board terminated Mr. Owoc from his position as CEO and removed him from the Board for cause. *See* **Exhibit 30**.  While Mr. Owoc now seeks to undermine the validity of that termination through a separate lawsuit, Mr. Owoc does not allege that the current Board ever thought that JHO RE was not, or should not be, a Debtor.

32.    On July 5, 2023, at the request of the purchaser of the Debtors' assets, and for good measure, the Board of Managers of JHO RE expressly ratified the filing of the JHO RE Petition.  *See* Action by Unanimous Written Consent, JHO Real Estate Investment, LLC (attached hereto as **Exhibit 27**).

### II. ARGUMENT

### A.    Mr. Owoc Authorized the Filing of the JHO RE Bankruptcy Petition

33.    Mr. Owoc now contends that he did not sign the Written Consent authorizing the JHO RE Petition.  Mot. 3-4.  However, the Written Consent bears his electronic signature, *see* **Exhibit 12** (JHO RE Written Consent), the audit trail confirms the signature was entered by the operator of the "ceo@bangenergy.com" email account, *id.*, Mr. Owoc admits that was his account,

*see* Owoc Tr. at 61:19-21, and he concedes he has "no basis" for his assertion that the Debtors or anyone else had access to that account, *id.* at 50:23-51:11 ("no basis"); 61:12-62:8 ("no basis") 108:10-112:22 ("I have no basis…"); 139:22-140:14 ("no basis").

34.    Electronic signatures such as Mr. Owoc's on the Written Consents and other documents are binding and enforceable under Florida and federal law.  *See* 15 U.S.C.A. § 7001 ("a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form"); Fla. Stat. Ann. § 668.50 ("A record or signature may not be denied legal effect or enforceability solely because the record or signature is in electronic form.").[6]

35.    Furthermore, an electronic audit trail evidences the authenticity of such signatures and unsupported contentions—like Mr. Owoc's—that the signature was somehow created by an unidentified intruder do not rebut that authenticity.  *See IO Moonwalkers, Inc. v. Bank of America Merchant Services, LLC*, 228 N.C.App. 608, 620 (Ct. App. N.C. 2018) (relying on DocuSign certificate of completion to substantiate signature and disregarding unsupported assertion of intrusion because "[t]he affidavit provides no explanation of how [intruder] could have accessed the Moonwalkers email account or altered the DocuSign records."); *Moton v. Maplebear, Inc.*, 2016 WL 616343, *5 (S.D.N.Y. 2016) (giving legal effect to electronic signature, relying on audit trail); *see also* Fla. Stat. Ann. § 668.50(9)(a) ("An electronic record or electronic signature is attributable to a person if the record or signature was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure

---

[6] At deposition, Mr. Owoc repeatedly contended that "wet ink" signatures are required "by law" to create a valid record but also admitted he is not an attorney and has no specific law in mind when making said assertion.  *See* Owoc Tr. at 146:5-7.  Mr. Owoc also admitted that he frequently used electronic signatures during his tenure as CEO.  *Id.* at 64:15-18.

applied to determine the person to which the electronic record or electronic signature was attributable.").

36.     Mr. Owoc signed the JHO RE Written Consent, it is binding and effective, and his eleventh-hour assertions to the contrary are utterly baseless.

**B.     JHO RE Was in Financial Distress**

37.     Mr. Owoc next asserts that the JHO RE bankruptcy is subject to dismissal because JHO RE was not in financial distress prior to the Petition Date.  Mot. 4-6.  Even accepting, for the sake of argument, Mr. Owoc's assertion in the First Owoc Declaration that the Phoenix facility is worth "substantially more" than the purchase price of $47 million, First Owoc Decl. ¶ 11, or the unsupported assertion in the Motion that the property is worth $85 million, Mot. 5, the purported value of JHO RE's sole asset is irrelevant in the face of immediate creditor demands for repayment of over $350 million.  JHO RE was obligated on approximately $340 million of accelerated prepetition debt and subject to immediate foreclosure—at both the equity and asset level—in the absence of a stay to prevent lender enforcement action.  *See* **Exhibit 6** (Fifth Forbearance Agreement) §§ 2-3; **Exhibit 4** (Deed of Trust); **Exhibit 5** (Owner Pledge Agreement).  A foreclosure suit had been commenced in Arizona against JHO RE seeking to enforce substantial liens against its Phoenix facility.  *See generally* AZ Stay Motion.  JHO RE's liabilities were far in excess of its assets.  In any event, JHO RE had no cash to pay its current obligations.  That is quintessential financial distress.  *See In re LTL Mgmt., LLC*, 64 F.4th 84, 102 (3d Cir. 2023) (holding that in determining financial distress "a debtor's balance-sheet insolvency

or insufficient cash flows to pay liabilities (or the future likelihood of these issues occurring) are likely always relevant.").[7]

### C.    Mr. Owoc Was Informed of the Purposes of the Bankruptcy Filing

38.    Mr. Owoc next argues that the JHO RE petition should be dismissed because, even if he authorized JHO RE's bankruptcy filing, his advisors failed to explain to him that "administration of JHO Real Estate's bankruptcy would result in a liquidation of the entity's Arizona real estate." Mot. 7-8.  JHO RE's Arizona real estate—i.e., the manufacturing plant—is not being "liquidated," it is being sold together with substantially all of the Debtors' assets as part of a going-concern sale to the successful bidder.  *See Notice of Auction Cancellation and Successful Bidder* [D.I. 1546] at 4 (sale of all business assets), Ex. 1. at Schedule 2.1(f) (transfer of Arizona property).

39.    That is exactly what the Debtors' advisors discussed with Mr. Owoc when JHO RE and the other Debtors filed their chapter 11 petitions.  In extensive conversations, including during the September 29, 2022 Board meeting, the Debtors' advisors explained to Mr. Owoc that the plan was for JHO RE to be included in the filings, that the filings would prevent enforcement action, that the filings would also facilitate lending to sustain the business, and that a "key objective" of the filings would be to "[p]ursue a value-maximizing dual track strategic alternative process, *which includes a strategic marketing of the business* . . . ."  Minutes, Ex. B., at 5 (emphasis added).  Mr. Owoc not only heard this advice when it was given, he later approved the

---

[7] While financial distress is one of a number of factors courts may examine to determine whether a petition is subject to dismissal under for lack of good faith under 11 U.S.C. 1112(b), it is not dispositive and may be unexamined entirely.  *See, e.g.*, *In re Nat. Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987) (examining various factors, not including financial distress).  Instead, "courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions."  *Id.*  Mr. Owoc provides no evidence of any intent to abuse the judicial process.

Minutes evidencing his receipt of this information.  *Id.* at 7.  Mr. Owoc now disavows his signature approving the minutes, asserting that the signature is a forgery by hackers, but, again, he admits he has "no basis" for that assertion.  Owoc Tr. at 61:12-62:8.  The Debtors' advisors informed Mr. Owoc in detail of the exact plan that has come to pass with regard to JHO RE. Whether Mr. Owoc failed to listen, or failed to read the Minutes he signed, or just forgot, or is simply compounding his false narratives in an effort to support the Motion, does not matter – none serves as a basis to grant the relief sought in the Motion.

### D.    The Debtors Complied with Rule 9011-1

40.    Finally, Mr. Owoc asserts that the JHO RE petition should be dismissed because the Debtors' advisors failed to comply with the requirements of Local Rule 9011-1.  Mot. 8-10. Specifically, Mr. Owoc asserts that the Debtors' advisors have not retained a required "wet ink" signature on the JHO RE Petition or on the JHO RE Written Consent—and for this reason the bankruptcy should be undone.  There are numerous problems with this assertion.

41.    First, Local Rule 9011-1 does not apply to the JHO RE Written Consent.  The Local Rule applies to "[p]etitions, lists, schedules and statements, amendments, pleadings, [and] affidavits."  Bankr. L.R. 9011-1(A).  The JHO RE Written Consent is none of those things; it is a corporate governance document the electronic signature on which is fully valid under Florida and federal law.  *See Section II.A*, *supra*.   While the Local Rule applies to the JHO RE Petition, Mr. DiDonato does not assert that his signature is forged, improper, or insufficient, and instead stands ready to reaffirm that signature if so asked.

42.    Second, the operation of the local rule was modified by Administrative Order 2020-13 (USBC SDFL, Dec. 1, 2020) at the time of the Petition Date, which specifically authorized the use of "commercial digital software which provides signature authentication" provided that the signer received the full document and the filer communicated with the signer

12257469-2

regarding the substance of the document.   Mr. Owoc does not dispute that AdobeSign is

qualifying software.   Mr. Owoc disputes receipt of the document, but the audit trail refutes that

assertion, and he admits he has no basis for that assertion.   *See Sections I.D, II.A*, *supra*.   Here,

the documented history of information explained to Mr. Owoc refutes his assertion that he was

not aware of the substance and purpose of the JHO RE chapter 11 filing, and he has no basis for

the assertion that he never received that such information, *see Sections I.C, II.C*, *supra.*

43.     Third, regardless of compliance with the Local Rule, dismissal of the JHO RE

Petition would not be an appropriate remedy.   The Local Rules grant this Court broad discretion

to impose sanctions for failure to comply with the rules, provided the sanction is "appropriate

under the circumstances."   L.R. 1001-1(D).   Dismissal of the case of an entity whose assets are

included in the proposed sale of the Debtors' business, and the attendant undermining of the sale,

would be grossly disproportionate to the asserted error of not retaining a wet ink signature.

### E.     Mr. Owoc and JHO RE Ratified the JHO RE Petition

44.     Mr. Owoc has impliedly ratified the JHO RE filing, and JHO RE has expressly

ratified the filing.   "A principal can ratify the unauthorized act of an agent purportedly done on

behalf of the principal either expressly or by implication through conduct that is inconsistent with

an intention to repudiate the unauthorized act." *McDonald v. Hamilton Elec., Inc.*, 666 F. 2d 509,

514 (11th Cir. 1982); *see also First Telebanc Corp. v. First Union Corp*., No. 02-80715-CIV,

2007 WL 9702557, at *8 (S.D. Fla. Aug. 6, 2007) ("There is no question that, under Florida law,

a board of directors may ratify the previously unauthorized actions of a board member, director,

or other office-holder of a corporation."); *Gentry-Futch Co. v. Gentry*, 90 Fla. 595, 612, 106 So.

473, 479 (1925) ("While a corporation cannot ratify absolutely void and ultra vires acts, it may,

like an individual, ratify and act done on its behalf which it had the power to do or to authorize to

be done in the first instance.")

12257469-2

45.     Relying on this principle, courts in the Eleventh Circuit and elsewhere have rejected dismissal requests where the debtor ratified the filing through participation, benefit received, or express affirmation.  *See In re Mojo Brands Media*, 2016 WL 1072508, *2 (Bankr. M.D. Fla. Mar. 16, 2016) (refusing  shareholders' request to dismiss the debtors' petition because the shareholder had ratified the petition through active participation in the case, and dismissal would be inequitable and prejudicial to stakeholder); *In re Alternate Fuels, Inc.*, 2010 WL 4866690, at *13 (Bankr. D. Kan. Nov. 23, 2010) (filing ratified where movant belatedly pursued dismissal and debtor obtained benefits of bankruptcy process in interim); *In re Reliable Air, Inc.*, 2007 WL 7136475, at *6 (Bankr. N.D. Ga. Mar. 9, 2007) (same); *Hager v. Gibson*, 108 F.3d 35, 40 (4th Cir. 1997) (filing ratified where movant was aware of bankruptcy and benefitted from automatic stay); *In re Martin–Trigona*, 760 F.2d 1334, 1341 (2d Cir. 1985) (sole stockholder "acquiesced in and ratified" filing by their ensuing participatory conduct); *Boyce v. Chemical Plastics, Inc.*, 175 F.2d 839, 842–44 (8th Cir. 1949) (finding unauthorized filing ratified and jurisdiction thereby validated by later board of directors' resolution); *Gentry*, 90 Fla. at 612 (express ratification).

46.     Here, Mr. Owoc at least impliedly ratified the JHO RE bankruptcy filing.  Mr. Owoc was indisputably aware of JHO RE's status as a Debtor when, in December 2022, he filed a proof of claim against JHO RE.  *See* Proof of Claim No. 654.  He was aware—and he chose to participate as a creditor in the bankruptcy, rather than seeking to dismiss the case.  In the months that followed JHO RE's chapter 11 filing, JHO RE benefitted, and Mr. Owoc as its shareholder benefitted, from the automatic stay, the willingness of lenders to provide liquidity to the Debtors' business, and the opportunity provided by time and liquidity to pursue a sale process to maximize recoveries for the creditors to whom he owes a fiduciary duty—and for his own chance at an

equity recovery.  Again, Mr. Owoc entered into the DIP facility, and an amendment thereto, on behalf of JHO RE, and participated in Board meetings discussing sale of the Arizona facility without question.  *See* **Exhibit 21** (DIP Credit Agreement); **Exhibit 24** (First Amendment); **Exhibit 26** (February 28, 2023 Board Minutes).  Mr. Owoc has long been aware of, participated in, and benefitted from the JHO RE bankruptcy, and he therefore ratified its filing even assuming that filing had been unauthorized.  *See Mojo Brands*, 2016 WL 1072508 at *2; *In re Alternate Fuels, Inc.*, 2010 WL 4866690 at *13; *In re Reliable Air, Inc.*, 2007 WL 7136475 at *6; *Hager v. Gibson*, 108 F.3d 35 at 40; *In re Martin–Trigona*, 760 F.2d 1334 at 1341 (2d Cir. 1985) *Boyce*, 175 F.2d 839 at 842–44 (8th Cir. 1949).

47.     In addition, JHO RE has expressly ratified the bankruptcy filing.  On July 5, 2023, the Board of Managers of JHO RE executed its Action by Unanimous Written Consent, JHO Real Estate Investment, LLC, confirming, among other things, the intention to file, the benefits obtained by filing, and the desirability of completing the sale process.  *See* **Exhibit 27** at 1-3. This express ratification is independently sufficient under Florida law to confirm the JHO RE Petition.  *See Gentry*, 90 Fla. at 612.

48.     Thus, even looking past Mr. Owoc's implausible and baseless factual assertions regarding the initial filing, dismissal of the JHO RE Petition still would not be warranted.  Mr. Owoc's attempt to invoke this Court's authority at this point in these chapter 11 cases,  without a modicum of legal or factual support, is reckless and wasteful and should be rejected in the strongest terms.

For the reasons set forth above, the Debtors respectfully request that the Court deny the Motion**.**

*[Remainder of page left intentionally blank.]*

12257469-2

Dated:    July 10, 2023
          Miami, Florida

George A. Davis (admitted *pro hac vice*)
Hugh Murtagh (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
        hugh.murtagh@lw.com
        jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

Respectfully submitted,

*/s/ Jordi Guso*
_____
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
        mniles@bergersingerman.com

24