# **EXHIBIT 22**

*Execution Version*

## OMNIBUS OFFICER'S CERTIFICATE OF
## VITAL PHARMACEUTICALS, INC. AND
## CERTAIN SUBSIDIARIES AND AFFILIATES
## THEREOF

October 26, 2022

This certificate is furnished in connection with, and pursuant to Section 3.1(b) of the Superpriority Secured Debtor-In-Possession Credit Agreement, dated as of the date hereof (the "**DIP Credit Agreement**"), by and among Vital Pharmaceuticals, Inc., a Florida corporation, as borrower (the "**Borrower**"), Vital Pharmaceuticals International Sales, Inc., a Delaware corporation ("**Vital International**"), Bang Energy Canada, Inc., a Florida corporation ("**Bang Canada**"), Rainbow Unicorn Bev LLC, a Florida limited liability company ("**Rainbow Unicorn**"), JHO Intellectual Property Holdings, LLC, a Florida limited liability company ("**JHO IP**"), Quash Seltzer, LLC, a Florida limited liability company ("**Quash**"), JHO Real Estate Investment, LLC, a Florida limited liability company ("**JHO Real Estate**", and, together with the Borrower, Vital International, Bang Canada, Rainbow Unicorn, JHO IP, Quash and JHO Real Estate, each, a "**Loan Party**" and collectively, the "**Loan Parties**"), the Lenders party thereto, and Truist Bank, in its capacities as Administrative Agent, Swingline Lender, and Issuing Bank.

The undersigned does hereby certify to the Administrative Agent that the undersigned is the duly elected, qualified and acting President, Chief Scientific Officer, and Chief Executive Office of each of the Loan Parties, and in such capacity and not in any individual capacity, hereby certifies on the date hereof that:

1.      Attached hereto as Exhibit A are true, complete and correct copies of the resolutions (each, "**Resolutions**") of the Board of Directors, the Member or the Manager (each, a "**Governing Body**"), as applicable, of each of the Loan Parties, authorizing the execution, delivery and performance, among other things, of the DIP Credit Agreement, related transaction documents, and all documents or instruments to be executed and delivered in conjunction therewith and the consummation of the transactions contemplated thereby (collectively, the "**DIP Credit Documents**"). Such resolutions remain in full force and effect and have not been amended, revoked, or modified and are the only resolutions of the Governing Body which relate to the authorization, execution, and delivery of the DIP Credit Documents to which any Loan Party is a party.

2.      Attached hereto as Exhibit B are true, complete and correct copies of the bylaws or operating agreements, as applicable, of the Loan Parties (each, a "**Governing Document**"). Such Governing Documents have not been amended or otherwise modified except as set forth on Exhibit B, and each such Governing Document remains in full force and effect.

3.      Attached hereto as Exhibit C are true, complete and correct copies of the certificate of formation, certification of incorporation or articles of incorporation, as applicable, with respect to each Loan Party (each, a "**Charter**"). Such Charters have not been amended or otherwise modified except as set forth on Exhibit C, and each such Charter remains in full force and effect.

4.      Attached hereto as Exhibit D are the incumbency and specimen signatures of the officers of each of the Loan Parties signing the DIP Credit Documents. Each of the officers set forth in Exhibit D is a Responsible Officer of the applicable Loan Party listed on Exhibit D as of the date hereof and is authorized to execute and deliver the DIP Credit Documents to which such Loan Party is a party, and the signature of such person appearing beside his or her name is his or her respective genuine signature.

[Signature Pages Follow]

US-DOCS\136113469.3

**IN WITNESS WHEREOF**, the undersigned has executed this Omnibus Officer's Certificate as of the date first written above.

By:_____
Name:  John H. Owoc
Title:    President, Chief Scientific Officer & Chief Executive Officer

I, Eugene Bukovi, being the duly elected and acting Vice President of each of the Loan Parties, hereby certify that John H. Owoc is duly elected, qualified and acting President, Chief Scientific Officer & Chief Executive Officer of each of the Loan Parties, and the signature appearing above is his genuine signature.

By:_____
Name:  Eugene Bukovi
Title:    Vice President

*[Signature Page to Omnibus Officer's Certificate]*

CONFIDENTIAL

**IN WITNESS WHEREOF**, the undersigned has executed this Omnibus Officer's Certificate as of the date first written above.

By:_____
Name:  John H. Owoc
Title:  President, Chief Scientific Officer & Chief Executive Officer

I, Eugene Bukovi, being the duly elected and acting Vice President of each of the Loan Parties, hereby certify that John H. Owoc is duly elected, qualified and acting President, Chief Scientific Officer & Chief Executive Officer of each of the Loan Parties, and the signature appearing above is his genuine signature.

By:_____
Name:  Eugene Bukovi
Title:  Vice President

*[Signature Page to Omnibus Officer's Certificate]*

CONFIDENTIAL

## EXHIBIT A

## RESOLUTIONS

[*See attached*]

US-DOCS\136113469.3

CONFIDENTIAL                                                          VPX-JHO0000001788

## VITAL PHARMACEUTICALS, INC.
(a Florida corporation)

## ACTION BY UNANIMOUS WRITTEN CONSENT
### OF
### THE SHAREHOLDER AND
### BOARD OF DIRECTORS
### IN LIEU OF MEETING

### Effective: October 26, 2022

The undersigned, being the sole shareholder (the "Shareholder") and all of the members of the Board of Directors (the "Board") of Vital Pharmaceuticals, Inc., a Florida corporation (the "Company"), hereby (a) take, authorize and adopt the following actions and matters, without and in lieu of a meeting, pursuant to Sections 607.0704 (as applicable to the Shareholder) and 607.0821 (as applicable to the Board), of the Florida Business Corporation Act (Chapter 607, Florida Statutes) (the "FBCA"), (b) waive any and all notices and requirements for notice, including of the time, date, place and/or purpose of or with regard to any meeting of the Shareholder and/or the Board of the Company and of or with regard to the actions and matters set forth in this action by unanimous written consent of the Shareholder and Board (this "Written Consent"), and (c) consent and agree to the authorization, approval and adoption of the following resolutions (collectively, the "Resolutions") as provided or described below:

**WHEREAS**, on and as of the date hereof (a) the Shareholder owns all of the issued and outstanding shares of capital stock of the Company enabling him to take the following actions by written consent without a shareholders' meeting pursuant to and in accordance with Section 607.0704 of the FBCA, and (b) the undersigned are the only duly elected members of the Board of Directors of the Company (and thus constitute the entire Board of Directors) enabling them to take the following actions by written consent without a directors' meeting pursuant to and in accordance with Section 607.0821 of the FBCA; and

**WHEREAS**, the Shareholder and the Board of Directors, each of whom: (a) has reviewed in its entirety this Written Consent, the recitals and Resolutions included herein and (b) has had the opportunity to ask questions of and receive responses from senior management of the Company regarding the Resolutions, and the actions and matters set forth herein, have determined that the actions and matters described, provided for, authorized and ratified herein are desirable for, and are fair to and in the best interests of, the Company and the Shareholder; and

**WHEREAS**, on October 10, 2022, the Company and certain of its subsidiaries and affiliates (together with the Company, collectively, the "Debtors") filed voluntary petitions for relief under Title 11 of the United States Code (as now or hereafter in effect, or any successor thereto, the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") (such cases being jointly administered under Case No. 22-17842, and are referred to herein as the "Chapter 11 Case"), and continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

VPX-JHO0000001789

**WHEREAS**, in connection with the Chapter 11 Cases, it is proposed that the Company enter into that certain Superpriority Secured Debtor-In-Possession Credit Agreement, to be dated on or about the date hereof (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Credit Agreement"), by and among the Company, as borrower, the other Debtors and certain other subsidiaries and affiliates of the Company party thereto from time to time as guarantors (collectively the "DIP Guarantors"), the lenders party thereto from time to time (collectively, the "DIP Lenders") and Truist Bank, as administrative agent for the DIP Lenders (in such capacity, the "DIP Agent"). The date that the DIP Credit Agreement is entered into is referred to herein as the "DIP Effective Date";

**WHEREAS**, it is proposed that the Company enter into that certain Postpetition Security and Pledge Agreement, dated as of the DIP Effective Date (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Security Agreement"), by and among the Company, the DIP Guarantors and the DIP Agent, pursuant to which the Company and the DIP Guarantors will grant liens in substantially all of their respective personal property to the DIP Agent for the benefit of the holders of the Secured Obligations (as defined in the DIP Security Agreement);

**WHEREAS**, in connection with the DIP Credit Agreement and the DIP Security Agreement, it is proposed that the Company enter into certain Loan Documents (as defined in the DIP Credit Agreement) (together with the DIP Credit Agreement and the DIP Security Agreement, collectively, the "DIP Loan Documents") and certain other instruments, certificates, agreements and other documents necessary, desirable, convenient, appropriate, advisable or otherwise requested by the DIP Agent to satisfy the covenants, conditions precedent and any conditions subsequent for the extension of credit under the DIP Credit Agreement, or in connection with the performance of its obligations under the DIP Loan Documents, including, without limitation, mortgages, deeds of trust, trust deeds, collateral access agreements, landlord waivers, bailee letters, common carrier letters, warehouse letters (or any similar agreement to any of the foregoing), security agreements, pledge agreements, guaranties, control agreements, lockbox agreements, stock powers, intercompany notes, promissory notes, alonges, assignments, Uniform Commercial Code financing statements, promissory notes, indorsements, notices of borrowing, borrowing base certificates, requests for advances, requests for issuance of letters of credit, any fee letters, engagement letters, commitment letters, payoff letters, post-closing agreements and any other affidavits, agreements, certificates, documents, instruments, notices, recordings or filings deemed necessary or proper by the DIP Agent or required by the DIP Loan Documents, and affidavits, agreements, certificates, documents, instruments, notices, recordings or filings relating to any of the foregoing (together with the DIP Loan Documents, collectively, the "DIP Credit Documents");

**WHEREAS**, in connection with the execution, delivery and performance by the Company of the DIP Credit Documents to which it is a party, the Company may be required, or may deem it necessary or appropriate, to take such other actions, including, without limitation, the filing of Uniform Commercial Code financing statements or amendments thereto, or other filings necessary to perfect or give notice of liens, the notating of liens on titles, the delivery of stock powers and stock or other equity certificates, the delivery of alonges and notes, the payment of fees, costs and expenses, the giving of notices, the designation of persons authorized to act, and other actions as may be necessary or appropriate to perform under any DIP Credit Documents to which it is a party (collectively, the "Related Actions");

VPX-JHO0000001790

**WHEREAS**, the Shareholder and the Board have determined that the Company's entry into the DIP Credit Documents to which it is a party, and taking of the Related Actions (i) is necessary or convenient to the conduct, promotion or attainment of the Company's business and (ii) may reasonably be expected to benefit the Company, directly or indirectly; and

**WHEREAS**, the Shareholder and the Board have determined that the execution, delivery and performance of each DIP Credit Document to which the Company is a party, and taking of the applicable Related Actions will benefit the Company and is in the best interest of the Shareholder and the Company, including the granting of a lien on and/or security interest in substantially all of its assets to secure the obligations under the DIP Credit Documents to which it is a party, and to enter into and to perform its obligations under each DIP Credit Document to which it is a party.

### NOW THEREFORE LET IT BE:

**RESOLVED**, that the Shareholder and the Board hereby determine that the approval of the transactions contemplated by the DIP Credit Documents and the execution, delivery and performance by the Company of the DIP Credit Documents to which it is a party on the terms and conditions as substantially described or provided to the Shareholder and the Board will benefit the Company and is in the best interest of Shareholder and the Company; and it is further

**RESOLVED**, that the Company is hereby authorized, and that each of the President, Chief Executive Officer, each Vice President, the Chief Transformation Officer (either existing now or later appointed), General Counsel, Chief Financial Officer, Treasurer and/or Secretary of the Company (collectively, the "Authorized Officers"), acting alone or in combination, shall be, and hereby is, authorized and empowered, with full power of delegation, on behalf of and in the name of the Company, to execute, verify and/or file, or cause to be filed and/or executed or verified (or direct others to do so on their behalf as provided herein), and to amend, supplement or otherwise modify from time to time (including, without limitation, any amendments or supplements to the DIP Credit Agreement that increase the amount of credit available thereunder) any of the DIP Credit Documents to which the Company is a party, and to take any and all actions that each such Authorized Officer deems necessary or appropriate, each in connection with the Chapter 11 Case and/or any post-petition financing or any cash collateral usage contemplated hereby or thereby; and it is further

**RESOLVED**, that each Authorized Officer is hereby authorized, directed and empowered to do or cause to be done all such acts or things and to execute and deliver, or cause to be executed and delivered, under seal or otherwise, all such DIP Credit Documents or other affidavits, agreements, certificates, documents, instruments, notices, recordings and filings (including, without limitation, any and all certificates and notices required or permitted to be given or made under the terms, conditions or provisions of any of the agreements, documents or instruments executed therewith), in the name and on behalf of the Company on behalf of each of the Company's direct or indirect subsidiaries, as any such Authorized Officer, in his or her discretion, may deem necessary, proper or advisable to effectuate or carry out the purposes and intent of the foregoing resolutions and to perform the obligations of such subsidiary under all affidavits, agreements, certificates, documents, instruments, recordings and filings executed or delivered on behalf of such subsidiary in connection with the DIP Credit Documents to which such subsidiary is a party, and all acts of any Authorized Officer taken pursuant to the authority granted herein, or having

occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects; and it is further

**RESOLVED**, that the Company is hereby authorized to grant a lien on, security interest in, and/or pledge any and all of its properties and assets to secure its obligations (including any obligations guaranteed by it under the DIP Credit Agreement and any other DIP Credit Document to which it is a party) under the DIP Credit Documents to which it is a party and to enter into and to perform its obligations under each DIP Credit Document to which it is a party and that the grant of liens, security interests and pledges by the Company as contemplated in the DIP Credit Documents to which it is party, and the grant of any additional liens, security interests or pledges pursuant to any additional security agreements or pledge agreements that may be required under the DIP Credit Documents to which it is or may become a party, and the execution of documents, agreements and instruments in connection therewith, and the filing of financing statements to perfect or otherwise evidence such liens, security interests or pledges, are in each case hereby authorized, approved, and adopted, as applicable; and it is further

**RESOLVED**, that the Company and any of its designees is hereby authorized to take any of the Related Actions, and that the DIP Agent or its designee may file any financing statement(s) or other filing or recording documents or instruments against the Company in connection with the grant of security under the DIP Security Agreement and the other DIP Credit Documents to which it is party, and that such financing statement(s) may, without limitation, include an "all assets" collateral description (including, without limitation, "all assets of debtor", "all personal property of the debtor", "all assets of the debtor, whether now existing or hereafter acquired or arising or in which debtor otherwise has rights and all proceeds thereof", or words of similar effect); and it is further

**RESOLVED**, that each Authorized Officer of the Company, who may act without the joinder of any of the other officer of the Company, is hereby authorized to such further actions and execute and deliver all such further instruments and documents in the names and on behalf of the Company under their corporate seals or otherwise and to incur and pay such expenses as in his or their judgment shall be necessary, proper or advisable in order to fully carry out the intent and accomplish the purposes of each of the foregoing resolutions (such acts to be conclusive evidence that such Authorized Officer deemed the same to be necessary, appropriate, or advisable), and all acts of any Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects.

This Written Consent may be executed in one or more counterparts, and by different parties hereto in separate counterparts, each of which when so executed shall be deemed an original, but all of which together shall constitute one and the same instrument. This Written Consent may be executed by manual, facsimile, conformed or electronic (including PDF) signature, with the same effect as an executed written original.

[Signature Page to Follow]

VPX-JHO0000001792

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

**<u>Shareholder:</u>**

_____

John Owoc (Oct 24, 2022 12:08 EDT)

John H. Owoc

**<u>Board of Directors:</u>**

_____

John Owoc (Oct 24, 2022 12:08 EDT)

John H. Owoc

_____

Kathleen Cole

_____

Dr. Guillermo Escalante

_____

Eric Hillman

_____

Steven G. Panagos

*Signature Page to Written Consent (Vital Pharmaceuticals, Inc.)*

CONFIDENTIAL                                                                                   VPX-JHO0000001793

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

**Shareholder:**

_____

John H. Owoc

**Board of Directors:**

_____

John H. Owoc

_____

Kathleen Cole

_____

Dr. Guillermo Escalante

_____

Eric Hillman

_____

Steven G. Panagos

*Signature Page to Written Consent (Vital Pharmaceuticals, Inc.)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

**Shareholder:**

_____

John H. Owoc

**Board of Directors:**

_____

John H. Owoc

_____

Kathleen Cole

_____
Guillermo Escalante (Oct 21, 2022 08:53 PDT)

Dr. Guillermo Escalante

_____

Eric Hillman

_____

Steven G. Panagos

*Signature Page to Written Consent (Vital Pharmaceuticals, Inc.)*

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

<u>**Shareholder:**</u>

_____

John H. Owoc

<u>**Board of Directors:**</u>

_____

John H. Owoc

_____

Kathleen Cole

_____

Dr. Guillermo Escalante

_____

Eric Hillman

_____

Steven G. Panagos

*Signature Page to Written Consent (Vital Pharmaceuticals, Inc.)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

**Shareholder:**

_____

John H. Owoc

**Board of Directors:**

_____

John H. Owoc

_____

Kathleen Cole

_____

Dr. Guillermo Escalante

_____

Eric Hillman

_____
Steven G. Panagos (Oct 25, 2022 17:57 EDT)

Steven G. Panagos

*Signature Page to Written Consent (Vital Pharmaceuticals, Inc.)*

CONFIDENTIAL

**VITAL PHARMACEUTICALS INTERNATIONAL SALES, INC.**
(a Delaware corporation)

**ACTION BY UNANIMOUS WRITTEN CONSENT**
**OF**
**THE SHAREHOLDER AND**
**BOARD OF DIRECTORS**
**IN LIEU OF MEETING**

**Effective: October 26, 2022**

The undersigned, being the sole shareholder (the "Shareholder") and all of the members of the Board of Directors (the "Board") of Vital Pharmaceuticals International Sales, Inc., a Delaware corporation (the "Company"), hereby (a) take, authorize and adopt the following actions and matters, without and in lieu of a meeting Sections 141(f) and 228 of the Delaware General Corporation Law ("DGCL"), (b) waive any and all notices and requirements for notice, including of the time, date, place and/or purpose of or with regard to any meeting of the Shareholder and/or the Board of the Company and of or with regard to the actions and matters set forth in this action by unanimous written consent of the Shareholder and Board (this "Written Consent"), and (c) consent and agree to the authorization, approval and adoption of the following resolutions (collectively, the "Resolutions") as provided or described below:

**WHEREAS**, on and as of the date hereof (a) the Shareholder owns all of the issued and outstanding shares of capital stock of the Company enabling him to take the following actions by written consent without a shareholders' meeting pursuant to and in accordance with Section 228 of the DGCL, and (b) the undersigned are the only duly elected members of the Board of Directors of the Company (and thus constitute the entire Board of Directors) enabling them to take the following actions by written consent without a directors' meeting pursuant to and in accordance with Section 141(f) of the DGCL;

**WHEREAS**, the Shareholder and the Board of Directors, each of whom: (a) has reviewed in its entirety this Written Consent, the recitals and Resolutions included herein and (b) has had the opportunity to ask questions of and receive responses from senior management of the Company regarding the Resolutions, and the actions and matters set forth herein, have determined that the actions and matters described, provided for, authorized and ratified herein are desirable for, and are fair to and in the best interests of, the Company and the Shareholder;

**WHEREAS**, on October 10, 2022, the Company and certain of its affiliates (including Vital Pharmaceuticals, Inc., a Florida corporation (the "DIP Borrower")) (together with the Company, collectively, the "Debtors") filed voluntary petitions for relief under Title 11 of the United States Code (as now or hereafter in effect, or any successor thereto, the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") (such cases being jointly administered under Case No. 22-17842, and are referred to herein as the "Chapter 11 Case"), and continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

CONFIDENTIAL

**WHEREAS**, in connection with the Chapter 11 Cases, it is proposed that the Company enter into that certain Superpriority Secured Debtor-In-Possession Credit Agreement, to be dated on or about the date hereof (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Credit Agreement"), by and among the DIP Borrower, as borrower, the Company and each other Debtor (other than the DIP Borrower) and certain other subsidiaries and affiliates of the DIP Borrower party thereto from time to time as guarantors (collectively the "DIP Guarantors"), the lenders party thereto from time to time (collectively, the "DIP Lenders") and Truist Bank, as administrative agent for the DIP Lenders (in such capacity, the "DIP Agent"). The date that the DIP Credit Agreement is entered into is referred to herein as the "DIP Effective Date";

**WHEREAS**, it is proposed that the Company enter into that certain Postpetition Security and Pledge Agreement, dated as of the DIP Effective Date (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Security Agreement"), by and among the DIP Borrower, the Company, the other DIP Guarantors and the DIP Agent, pursuant to which the DIP Borrower, the Company and the other DIP Guarantors will grant liens in substantially all of their respective personal property to the DIP Agent for the benefit of the holders of the Secured Obligations (as defined in the DIP Security Agreement);

**WHEREAS**, in connection with the DIP Credit Agreement and the DIP Security Agreement, it is proposed that the Company enter into certain Loan Documents (as defined in the DIP Credit Agreement) (together with the DIP Credit Agreement and the DIP Security Agreement, collectively, the "DIP Loan Documents") and certain other instruments, certificates, agreements and other documents necessary, desirable, convenient, appropriate, advisable or otherwise requested by the DIP Agent to satisfy the covenants, conditions precedent and any conditions subsequent for the extension of credit under the DIP Credit Agreement, or in connection with the performance of its obligations under the DIP Loan Documents, including, without limitation, mortgages, deeds of trust, trust deeds, collateral access agreements, landlord waivers, bailee letters, common carrier letters, warehouse letters (or any similar agreement to any of the foregoing), security agreements, pledge agreements, guaranties, control agreements, lockbox agreements, stock powers, intercompany notes, promissory notes, alonges, assignments, Uniform Commercial Code financing statements, promissory notes, indorsements, notices of borrowing, borrowing base certificates, requests for advances, requests for issuance of letters of credit, any fee letters, engagement letters, commitment letters, payoff letters, post-closing agreements and any other affidavits, agreements, certificates, documents, instruments, notices, recordings or filings deemed necessary or proper by the DIP Agent or required by the DIP Loan Documents, and affidavits, agreements, certificates, documents, instruments, notices, recordings or filings relating to any of the foregoing (together with the DIP Loan Documents, collectively, the "DIP Credit Documents");

**WHEREAS**, in connection with the execution, delivery and performance by the Company of the DIP Credit Documents to which it is a party, the Company may be required, or may deem it necessary or appropriate, to take such other actions, including, without limitation, the filing of Uniform Commercial Code financing statements or amendments thereto, or other filings necessary to perfect or give notice of liens, the notating of liens on titles, the delivery of stock powers and stock or other equity certificates, the delivery of alonges and notes, the payment of fees, costs and expenses, the giving of notices, the designation of persons authorized to act, and other actions as

 VPX-JHO0000001799

may be necessary or appropriate to perform under any DIP Credit Documents to which it is a party (collectively, the "Related Actions");

WHEREAS, the Shareholder and the Board have determined that the Company's entry into the DIP Credit Documents to which it is a party, including, if applicable, the Company's guarantee of obligations of the DIP Borrower and the other DIP Guarantors in the DIP Credit Agreement and taking of the Related Actions (i) is necessary or convenient to the conduct, promotion or attainment of the Company's business and (ii) may reasonably be expected to benefit the Company, directly or indirectly; and

WHEREAS, the Shareholder and the Board have determined that the execution, delivery and performance of each DIP Credit Document to which the Company is a party, and taking of the applicable Related Actions will benefit the Company and is in the best interest of the Shareholder and the Company, including the granting of a lien on and/or security interest in substantially all of its assets to secure the obligations under the DIP Credit Documents to which it is a party, and to enter into and to perform its obligations under each DIP Credit Document to which it is a party.

NOW THEREFORE LET IT BE:

RESOLVED, that the Shareholder and the Board hereby determine that the approval of the transactions contemplated by the DIP Credit Documents and the execution, delivery and performance by the Company of the DIP Credit Documents to which it is a party on the terms and conditions as substantially described or provided to the Shareholder and the Board will benefit the Company and is in the best interest of Shareholder and the Company; and it is further

RESOLVED, that the Company is hereby authorized, and that each of the President, Chief Executive Officer, each Vice President, the Chief Transformation Officer (either existing now or later appointed), General Counsel, Chief Financial Officer, Treasurer and/or Secretary of the Company (collectively, the "Authorized Officers"), acting alone or in combination, shall be, and hereby is, authorized and empowered, with full power of delegation, on behalf of and in the name of the Company, to execute, verify and/or file, or cause to be filed and/or executed or verified (or direct others to do so on their behalf as provided herein), and to amend, supplement or otherwise modify from time to time (including, without limitation, any amendments or supplements to the DIP Credit Agreement that increase the amount of credit available thereunder) any of the DIP Credit Documents to which the Company is a party, and to take any and all actions that each such Authorized Officer deems necessary or appropriate, each in connection with the Chapter 11 Case and/or any post-petition financing or any cash collateral usage contemplated hereby or thereby; and it is further

RESOLVED, that each Authorized Officer is hereby authorized, directed and empowered to do or cause to be done all such acts or things and to execute and deliver, or cause to be executed and delivered, under seal or otherwise, all such DIP Credit Documents or other affidavits, agreements, certificates, documents, instruments, notices, recordings and filings (including, without limitation, any and all certificates and notices required or permitted to be given or made under the terms, conditions or provisions of any of the agreements, documents or instruments executed therewith), in the name and on behalf of the Company on behalf of each of the Company's direct or indirect subsidiaries, as any such Authorized Officer, in his or her discretion, may deem necessary, proper or advisable to effectuate or carry out the purposes and intent of the foregoing

resolutions and to perform the obligations of such subsidiary under all affidavits, agreements, certificates, documents, instruments, recordings and filings executed or delivered on behalf of such subsidiary in connection with the DIP Credit Documents to which such subsidiary is a party, and all acts of any Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects; and it is further

**RESOLVED**, that the Company is hereby authorized to grant a lien on, security interest in, and/or pledge any and all of its properties and assets to secure its obligations (including any obligations guaranteed by it under the DIP Credit Agreement, any other DIP Credit Document to which it is a party) under the DIP Credit Documents to which it is a party and to enter into and to perform its obligations under each DIP Credit Document to which it is a party and that the grant of liens, security interests and pledges by the Company as contemplated in the DIP Credit Documents to which it is party, and the grant of any additional liens, security interests or pledges pursuant to any additional security agreements or pledge agreements that may be required under the DIP Credit Documents to which it is or may become a party, and the execution of documents, agreements and instruments in connection therewith, and the filing of financing statements to perfect or otherwise evidence such liens, security interests or pledges, are in each case hereby authorized, approved, and adopted, as applicable; and it is further

**RESOLVED**, that the Company and any of its designees is hereby authorized to take any of the Related Actions, and that the DIP Agent or its designee may file any financing statement(s) or other filing or recording documents or instruments against the Company in connection with the grant of security under the DIP Security Agreement and the other DIP Credit Documents to which it is party, and that such financing statement(s) may, without limitation, include an "all assets" collateral description (including, without limitation, "all assets of debtor", "all personal property of the debtor", "all assets of the debtor, whether now existing or hereafter acquired or arising or in which debtor otherwise has rights and all proceeds thereof", or words of similar effect); and it is further

**RESOLVED**, that each Authorized Officer of the Company, who may act without the joinder of any of the other officer of the Company, is hereby authorized to such further actions and execute and deliver all such further instruments and documents in the names and on behalf of the Company under their corporate seals or otherwise and to incur and pay such expenses as in his or their judgment shall be necessary, proper or advisable in order to fully carry out the intent and accomplish the purposes of each of the foregoing resolutions (such acts to be conclusive evidence that such Authorized Officer deemed the same to be necessary, appropriate, or advisable), and all acts of any Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects.

This Written Consent may be executed in one or more counterparts, and by different parties hereto in separate counterparts, each of which when so executed shall be deemed an original, but all of which together shall constitute one and the same instrument. This Written Consent may be executed by manual, facsimile, conformed or electronic (including PDF) signature, with the same effect as an executed written original.

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Delaware law, effective as of the date first above written.

**Shareholder:**

_____

John Owoc (Oct 24, 2022 12:08 EDT)

John H. Owoc

**Board of Directors:**

_____

John Owoc (Oct 24, 2022 12:08 EDT)

John H. Owoc


_____

Kathleen Cole


_____

Dr. Guillermo Escalante


_____

Eric Hillman


_____

Steven G. Panagos

_Signature Page to Written Consent (Vital Pharmaceuticals International Sales, Inc.)_

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Delaware law, effective as of the date first above written.

<u>**Shareholder:**</u>

_____
John H. Owoc

<u>**Board of Directors:**</u>

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*Signature Page to Written Consent (Vital Pharmaceuticals International Sales, Inc.)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Delaware law, effective as of the date first above written.

<u>**Shareholder:**</u>

_____

John H. Owoc

<u>**Board of Directors:**</u>

_____

John H. Owoc

_____

Kathleen Cole

_____
Guillermo Escalante (Oct 21, 2022 08:53 PDT)

Dr. Guillermo Escalante

_____

Eric Hillman

_____

Steven G. Panagos

*Signature Page to Written Consent (Vital Pharmaceuticals International Sales, Inc.)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Delaware law, effective as of the date first above written.

<u>**Shareholder:**</u>

_____
John H. Owoc

<u>**Board of Directors:**</u>

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*Signature Page to Written Consent (Vital Pharmaceuticals International Sales, Inc.)*

CONFIDENTIAL
VPX-JHO0000001805

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Delaware law, effective as of the date first above written.

<u>**Shareholder:**</u>

_____

John H. Owoc

<u>**Board of Directors:**</u>

_____

John H. Owoc

_____

Kathleen Cole

_____

Dr. Guillermo Escalante

_____

Eric Hillman

_____
Steven G. Panagos (Oct 25, 2022 17:57 EDT)

Steven G. Panagos

*Signature Page to Written Consent (Vital Pharmaceuticals International Sales, Inc.)*

CONFIDENTIAL

**BANG ENERGY CANADA, INC.**
(a Florida corporation)

**ACTION BY UNANIMOUS WRITTEN CONSENT**
**OF**
**THE SHAREHOLDER AND**
**BOARD OF DIRECTORS**
**IN LIEU OF MEETING**

**Effective: October 26, 2022**

The undersigned, being the sole shareholder (the "Shareholder") and all of the members of the Board of Directors (the "Board") of Bang Energy Canada, Inc., a Florida corporation (the "Company"), hereby (a) take, authorize and adopt the following actions and matters, without and in lieu of a meeting, pursuant to Sections 607.0704 (as applicable to the Shareholder) and 607.0821 (as applicable to the Board), of the Florida Business Corporation Act (Chapter 607, Florida Statutes) (the "FBCA"), (b) waive any and all notices and requirements for notice, including of the time, date, place and/or purpose of or with regard to any meeting of the Shareholder and/or the Board of the Company and of or with regard to the actions and matters set forth in this action by unanimous written consent of the Shareholder and Board (this "Written Consent"), and (c) consent and agree to the authorization, approval and adoption of the following resolutions (collectively, the "Resolutions") as provided or described below:

**WHEREAS**, on and as of the date hereof (a) the Shareholder owns all of the issued and outstanding shares of capital stock of the Company enabling him to take the following actions by written consent without a shareholders' meeting pursuant to and in accordance with Section 607.0704 of the FBCA, and (b) the undersigned are the only duly elected members of the Board of Directors of the Company (and thus constitute the entire Board of Directors) enabling them to take the following actions by written consent without a directors' meeting pursuant to and in accordance with Section 607.0821 of the FBCA; and

**WHEREAS**, the Shareholder and the Board of Directors, each of whom: (a) has reviewed in its entirety this Written Consent, the recitals and Resolutions included herein and (b) has had the opportunity to ask questions of and receive responses from senior management of the Company regarding the Resolutions, and the actions and matters set forth herein, have determined that the actions and matters described, provided for, authorized and ratified herein are desirable for, and are fair to and in the best interests of, the Company and the Shareholder; and

**WHEREAS**, on October 10, 2022, the Company and certain of its affiliates (including Vital Pharmaceuticals, Inc., a Florida corporation (the "DIP Borrower")) (together with the Company, collectively, the "Debtors") filed voluntary petitions for relief under Title 11 of the United States Code (as now or hereafter in effect, or any successor thereto, the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") (such cases being jointly administered under Case No. 22-17842, and are referred to herein as the "Chapter 11 Case"), and continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

VPX-JHO0000001807

**WHEREAS**, in connection with the Chapter 11 Cases, it is proposed that the Company enter into that certain Superpriority Secured Debtor-In-Possession Credit Agreement, to be dated on or about the date hereof (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Credit Agreement"), by and among the DIP Borrower, as borrower, the Company and each other Debtor (other than the DIP Borrower) and certain other subsidiaries and affiliates of the DIP Borrower party thereto from time to time as guarantors (collectively the "DIP Guarantors"), the lenders party thereto from time to time (collectively, the "DIP Lenders") and Truist Bank, as administrative agent for the DIP Lenders (in such capacity, the "DIP Agent"). The date that the DIP Credit Agreement is entered into is referred to herein as the "DIP Effective Date";

**WHEREAS**, it is proposed that the Company enter into that certain Postpetition Security and Pledge Agreement, dated as of the DIP Effective Date (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Security Agreement"), by and among the DIP Borrower, the Company, the other DIP Guarantors and the DIP Agent, pursuant to which the DIP Borrower, the Company and the other DIP Guarantors will grant liens in substantially all of their respective personal property to the DIP Agent for the benefit of the holders of the Secured Obligations (as defined in the DIP Security Agreement);

**WHEREAS**, in connection with the DIP Credit Agreement and the DIP Security Agreement, it is proposed that the Company enter into certain Loan Documents (as defined in the DIP Credit Agreement) (together with the DIP Credit Agreement and the DIP Security Agreement, collectively, the "DIP Loan Documents") and certain other instruments, certificates, agreements and other documents necessary, desirable, convenient, appropriate, advisable or otherwise requested by the DIP Agent to satisfy the covenants, conditions precedent and any conditions subsequent for the extension of credit under the DIP Credit Agreement, or in connection with the performance of its obligations under the DIP Loan Documents, including, without limitation, mortgages, deeds of trust, trust deeds, collateral access agreements, landlord waivers, bailee letters, common carrier letters, warehouse letters (or any similar agreement to any of the foregoing), security agreements, pledge agreements, guaranties, control agreements, lockbox agreements, stock powers, intercompany notes, promissory notes, alonges, assignments, Uniform Commercial Code financing statements, promissory notes, indorsements, notices of borrowing, borrowing base certificates, requests for advances, requests for issuance of letters of credit, any fee letters, engagement letters, commitment letters, payoff letters, post-closing agreements and any other affidavits, agreements, certificates, documents, instruments, notices, recordings or filings deemed necessary or proper by the DIP Agent or required by the DIP Loan Documents, and affidavits, agreements, certificates, documents, instruments, notices, recordings or filings relating to any of the foregoing (together with the DIP Loan Documents, collectively, the "DIP Credit Documents");

**WHEREAS**, in connection with the execution, delivery and performance by the Company of the DIP Credit Documents to which it is a party, the Company may be required, or may deem it necessary or appropriate, to take such other actions, including, without limitation, the filing of Uniform Commercial Code financing statements or amendments thereto, or other filings necessary to perfect or give notice of liens, the notating of liens on titles, the delivery of stock powers and stock or other equity certificates, the delivery of alonges and notes, the payment of fees, costs and expenses, the giving of notices, the designation of persons authorized to act, and other actions as

may be necessary or appropriate to perform under any DIP Credit Documents to which it is a party (collectively, the "Related Actions");

WHEREAS, the Shareholder and the Board have determined that the Company's entry into the DIP Credit Documents to which it is a party, including, if applicable, the Company's guarantee of obligations of the DIP Borrower and the other DIP Guarantors in the DIP Credit Agreement and taking of the Related Actions (i) is necessary or convenient to the conduct, promotion or attainment of the Company's business and (ii) may reasonably be expected to benefit the Company, directly or indirectly; and

WHEREAS, the Shareholder and the Board have determined that the execution, delivery and performance of each DIP Credit Document to which the Company is a party, and taking of the applicable Related Actions will benefit the Company and is in the best interest of the Shareholder and the Company, including the granting of a lien on and/or security interest in substantially all of its assets to secure the obligations under the DIP Credit Documents to which it is a party, and to enter into and to perform its obligations under each DIP Credit Document to which it is a party.

**NOW THEREFORE LET IT BE:**

RESOLVED, that the Shareholder and the Board hereby determine that the approval of the transactions contemplated by the DIP Credit Documents and the execution, delivery and performance by the Company of the DIP Credit Documents to which it is a party on the terms and conditions as substantially described or provided to the Shareholder and the Board will benefit the Company and is in the best interest of Shareholder and the Company; and it is further

RESOLVED, that the Company is hereby authorized, and that each of the President, Chief Executive Officer, each Vice President, the Chief Transformation Officer (either existing now or later appointed), General Counsel, Chief Financial Officer, Treasurer and/or Secretary of the Company (collectively, the "Authorized Officers"), acting alone or in combination, shall be, and hereby is, authorized and empowered, with full power of delegation, on behalf of and in the name of the Company, to execute, verify and/or file, or cause to be filed and/or executed or verified (or direct others to do so on their behalf as provided herein), and to amend, supplement or otherwise modify from time to time (including, without limitation, any amendments or supplements to the DIP Credit Agreement that increase the amount of credit available thereunder) any of the DIP Credit Documents to which the Company is a party, and to take any and all actions that each such Authorized Officer deems necessary or appropriate, each in connection with the Chapter 11 Case and/or any post-petition financing or any cash collateral usage contemplated hereby or thereby; and it is further

RESOLVED, that each Authorized Officer is hereby authorized, directed and empowered to do or cause to be done all such acts or things and to execute and deliver, or cause to be executed and delivered, under seal or otherwise, all such DIP Credit Documents or other affidavits, agreements, certificates, documents, instruments, notices, recordings and filings (including, without limitation, any and all certificates and notices required or permitted to be given or made under the terms, conditions or provisions of any of the agreements, documents or instruments executed therewith), in the name and on behalf of the Company on behalf of each of the Company's direct or indirect subsidiaries, as any such Authorized Officer, in his or her discretion, may deem necessary, proper or advisable to effectuate or carry out the purposes and intent of the foregoing

resolutions and to perform the obligations of such subsidiary under all affidavits, agreements, certificates, documents, instruments, recordings and filings executed or delivered on behalf of such subsidiary in connection with the DIP Credit Documents to which such subsidiary is a party, and all acts of any Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects; and it is further

**RESOLVED**, that the Company is hereby authorized to grant a lien on, security interest in, and/or pledge any and all of its properties and assets to secure its obligations (including any obligations guaranteed by it under the DIP Credit Agreement, any other DIP Credit Document to which it is a party) under the DIP Credit Documents to which it is a party and to enter into and to perform its obligations under each DIP Credit Document to which it is a party and that the grant of liens, security interests and pledges by the Company as contemplated in the DIP Credit Documents to which it is party, and the grant of any additional liens, security interests or pledges pursuant to any additional security agreements or pledge agreements that may be required under the DIP Credit Documents to which it is or may become a party, and the execution of documents, agreements and instruments in connection therewith, and the filing of financing statements to perfect or otherwise evidence such liens, security interests or pledges, are in each case hereby authorized, approved, and adopted, as applicable; and it is further

**RESOLVED**, that the Company and any of its designees is hereby authorized to take any of the Related Actions, and that the DIP Agent or its designee may file any financing statement(s) or other filing or recording documents or instruments against the Company in connection with the grant of security under the DIP Security Agreement and the other DIP Credit Documents to which it is party, and that such financing statement(s) may, without limitation, include an "all assets" collateral description (including, without limitation, "all assets of debtor", "all personal property of the debtor", "all assets of the debtor, whether now existing or hereafter acquired or arising or in which debtor otherwise has rights and all proceeds thereof", or words of similar effect); and it is further

**RESOLVED**, that each Authorized Officer of the Company, who may act without the joinder of any of the other officer of the Company, is hereby authorized to such further actions and execute and deliver all such further instruments and documents in the names and on behalf of the Company under their corporate seals or otherwise and to incur and pay such expenses as in his or their judgment shall be necessary, proper or advisable in order to fully carry out the intent and accomplish the purposes of each of the foregoing resolutions (such acts to be conclusive evidence that such Authorized Officer deemed the same to be necessary, appropriate, or advisable), and all acts of any Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects.

This Written Consent may be executed in one or more counterparts, and by different parties hereto in separate counterparts, each of which when so executed shall be deemed an original, but all of which together shall constitute one and the same instrument. This Written Consent may be executed by manual, facsimile, conformed or electronic (including PDF) signature, with the same effect as an executed written original.

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

**Shareholder:**

Vital Pharmaceuticals, Inc., a Florida corporation

By: John Owoc (Oct 24, 2022 12.08 EDT)
Name: John H. Owoc
Title: Chief Executive Officer

**Board of Directors:**

John Owoc (Oct 24, 2022 12:38 EDT)
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*Signature Page to Written Consent (Bang Energy Canada, Inc.)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

<u>**Shareholder:**</u>

Vital Pharmaceuticals, Inc., a Florida corporation

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

<u>**Board of Directors:**</u>

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*Signature Page to Written Consent (Bang Energy Canada, Inc.)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

<u>**Shareholder:**</u>

Vital Pharmaceuticals, Inc., a Florida corporation

By: _____

Name: John H. Owoc

Title: Chief Executive Officer

<u>**Board of Directors:**</u>

_____

John H. Owoc

_____

Kathleen Cole

_____
Guillermo Escalante (Oct 21, 2022 08:53 PDT)

Dr. Guillermo Escalante

_____

Eric Hillman

_____

Steven G. Panagos

*Signature Page to Written Consent (Bang Energy Canada, Inc.)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

<u>**Shareholder:**</u>

Vital Pharmaceuticals, Inc., a Florida corporation

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

<u>**Board of Directors:**</u>

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*Signature Page to Written Consent (Bang Energy Canada, Inc.)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

<u>**Shareholder:**</u>

Vital Pharmaceuticals, Inc., a Florida corporation

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

<u>**Board of Directors:**</u>

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos (Oct 25, 2022 17:57 EDT)
Steven G. Panagos

*Signature Page to Written Consent (Bang Energy Canada, Inc.)*

CONFIDENTIAL                                                                    VPX-JHO0000001815

<u>**WRITTEN CONSENT OF THE MANAGERS OF**</u>
<u>**RAINBOW UNICORN BEV LLC**</u>

**Effective: October 26, 2022**

The undersigned, being all of the Managers of Rainbow Unicorn Bev LLC, a Florida limited liability company (the "<u>Company</u>"), hereby adopt the following resolutions by this written consent in lieu of a meeting:

**WHEREAS**, on October 10, 2022, the Company and certain of its affiliates (including Vital Pharmaceuticals, Inc., a Florida corporation (the "<u>DIP Borrower</u>")) (together with the Company, collectively, the "<u>Debtors</u>") filed voluntary petitions for relief under Title 11 of the United States Code (as now or hereafter in effect, or any successor thereto, the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the Southern District of Florida (the "<u>Bankruptcy Court</u>") (such cases being jointly administered under Case No. 22-17842, and are referred to herein as the "<u>Chapter 11 Case</u>"), and continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

**WHEREAS**, it is proposed that the Company enter into that certain Superpriority Secured Debtor-In-Possession Credit Agreement, to be dated on or about the date hereof (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "<u>DIP Credit Agreement</u>"), by and among the DIP Borrower, as borrower, the Company and each other Debtor (other than the DIP Borrower) and certain other subsidiaries and affiliates of the DIP Borrower party thereto from time to time as guarantors (collectively the "<u>DIP Guarantors</u>"), the lenders party thereto from time to time (collectively, the "<u>DIP Lenders</u>") and Truist Bank, as administrative agent for the DIP Lenders (in such capacity, the "<u>DIP Agent</u>"). The date that the DIP Credit Agreement is entered into is referred to herein as the "<u>DIP Effective Date</u>";

**WHEREAS**, it is proposed that the Company enter into that certain Postpetition Security and Pledge Agreement, dated as of the DIP Effective Date (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "<u>DIP Security Agreement</u>"), by and among the DIP Borrower, the Company, the other DIP Guarantors and the DIP Agent, pursuant to which the DIP Borrower, the Company and the other DIP Guarantors will grant liens in substantially all of their respective personal property to the DIP Agent for the benefit of the holders of the Secured Obligations (as defined in the DIP Security Agreement);

**WHEREAS**, in connection with the DIP Credit Agreement and the DIP Security Agreement, it is proposed that the Company enter into certain Loan Documents (as defined in the DIP Credit Agreement) (together with the DIP Credit Agreement and the DIP Security Agreement, collectively, the "<u>DIP Loan Documents</u>") and certain other instruments, certificates, agreements and other documents necessary, desirable, convenient, appropriate, advisable or otherwise requested by the DIP Agent to satisfy the covenants, conditions precedent and any conditions subsequent for the extension of credit under the DIP Credit Agreement, or in connection with the performance of its obligations under the DIP Loan Documents, including, without limitation, mortgages, deeds of trust, trust deeds, collateral access agreements, landlord waivers, bailee letters, common carrier letters, warehouse letters (or any similar agreement to any of the foregoing),

VPX-JHO0000001816

security agreements, pledge agreements, guaranties, control agreements, lockbox agreements, stock powers, intercompany notes, promissory notes, alonges, assignments, Uniform Commercial Code financing statements, promissory notes, indorsements, notices of borrowing, borrowing base certificates, requests for advances, requests for issuance of letters of credit, any fee letters, engagement letters, commitment letters, payoff letters, post-closing agreements and any other affidavits, agreements, certificates, documents, instruments, notices, recordings or filings deemed necessary or proper by the DIP Agent or required by the DIP Loan Documents, and affidavits, agreements, certificates, documents, instruments, notices, recordings or filings relating to any of the foregoing (together with the DIP Loan Documents, collectively, the "DIP Credit Documents");

WHEREAS, in connection with the execution, delivery and performance by the Company of the DIP Credit Documents to which it is a party, the Company may be required, or may deem it necessary or appropriate, to take such other actions, including, without limitation, the filing of Uniform Commercial Code financing statements or amendments thereto, or other filings necessary to perfect or give notice of liens, the notating of liens on titles, the delivery of stock powers and stock or other equity certificates, the delivery of alonges and notes, the payment of fees, costs and expenses, the giving of notices, the designation of persons authorized to act, and other actions as may be necessary or appropriate to perform under any DIP Credit Documents to which it is a party (collectively, the "Related Actions");

WHEREAS, the Managers have determined that the Company's entry into the DIP Credit Documents to which it is a party, including, if applicable, the Company's guarantee of obligations of the DIP Borrower and the other DIP Guarantors in the DIP Security Agreement and taking of the Related Actions (i) is necessary or convenient to the conduct, promotion or attainment of the Company's business and (ii) may reasonably be expected to benefit the Company, directly or indirectly; and

WHEREAS, the Managers have determined that the execution, delivery and performance of each DIP Credit Document to which the Company is a party, and taking of the applicable Related Actions will benefit the Company and is in the best interest of the Company, including the granting of a lien on and/or security interest in substantially all of its assets to secure the obligations under the DIP Credit Documents to which it is a party, and to enter into and to perform its obligations under each DIP Credit Document to which it is a party.

**NOW THEREFORE LET IT BE:**

RESOLVED, that the Managers hereby determine that the approval of the transactions contemplated by the DIP Credit Documents and the execution, delivery and performance by the Company of the DIP Credit Documents to which it is a party on the terms and conditions as substantially described or provided to the Managers will benefit the Company and is in the best interest of the Company; and it is further

RESOLVED, that the Company is hereby authorized, and that each of the President, Chief Executive Officer, each Vice President, the Chief Transformation Officer (either existing now or later appointed), General Counsel, Chief Financial Officer, Treasurer and/or Secretary of the Company (collectively, the "Authorized Officers"), acting alone or in combination, shall be, and hereby is, authorized and empowered, with full power of delegation, on behalf of and in the name of the Company, to execute, verify and/or file, or cause to be filed and/or executed or verified (or

VPX-JHO0000001817

direct others to do so on their behalf as provided herein), and to amend, supplement or otherwise modify from time to time (including, without limitation, any amendments or supplements to the DIP Credit Agreement that increase the amount of credit available thereunder) any of the DIP Credit Documents to which the Company is a party, and to take any and all actions that each such Authorized Officer deems necessary or appropriate, each in connection with the Chapter 11 Case and/or any post-petition financing or any cash collateral usage contemplated hereby or thereby; and it is further

**RESOLVED**, that each Authorized Officer is hereby authorized, directed and empowered to do or cause to be done all such acts or things and to execute and deliver, or cause to be executed and delivered, under seal or otherwise, all such DIP Credit Documents or other affidavits, agreements, certificates, documents, instruments, notices, recordings and filings (including, without limitation, any and all certificates and notices required or permitted to be given or made under the terms, conditions or provisions of any of the agreements, documents or instruments executed therewith), in the name and on behalf of the Company on behalf of each of the Company's direct or indirect subsidiaries, as any such Authorized Officer, in his or her discretion, may deem necessary, proper or advisable to effectuate or carry out the purposes and intent of the foregoing resolutions and to perform the obligations of such subsidiary under all affidavits, agreements, certificates, documents, instruments, recordings and filings executed or delivered on behalf of such subsidiary in connection with the DIP Credit Documents to which such subsidiary is a party, and all acts of any Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects; and it is further

**RESOLVED**, that the Company is hereby authorized to grant a lien on, security interest in, and/or pledge any and all of its properties and assets to secure its obligations (including any obligations guaranteed by it under the DIP Security Agreement, any other DIP Credit Document to which it is a party) under the DIP Credit Documents to which it is a party and to enter into and to perform its obligations under each DIP Credit Document to which it is a party and that the grant of liens, security interests and pledges by the Company as contemplated in the DIP Credit Documents to which it is party, and the grant of any additional liens, security interests or pledges pursuant to any additional security agreements or pledge agreements that may be required under the DIP Credit Documents to which it is party, and the execution of documents, agreements and instruments in connection therewith, and the filing of financing statements to perfect or otherwise evidence such liens, security interests or pledges, are in each case hereby authorized, approved, and adopted, as applicable; and it is further

**RESOLVED**, that the Company and any of its designees is hereby authorized to take any of the Related Actions, and that the DIP Agent or its designee may file any financing statement(s) or other filing or recording documents or instruments against the Company in connection with the grant of security under the DIP Security Agreement and the other DIP Credit Documents to which it is party, and that such financing statement(s) may, without limitation, include an "all assets" collateral description (including, without limitation, "all assets of debtor", "all personal property of the debtor", "all assets of the debtor, whether now existing or hereafter acquired or arising or in which debtor otherwise has rights and all proceeds thereof", or words of similar effect); and it is further

VPX-JHO0000001818

**RESOLVED**, that each Authorized Officer of the Company, who may act without the joinder of any of the other officer of the Company, is hereby authorized to such further actions and execute and deliver all such further instruments and documents in the names and on behalf of the Company under their corporate seals or otherwise and to incur and pay such expenses as in his or their judgment shall be necessary, proper or advisable in order to fully carry out the intent and accomplish the purposes of each of the foregoing resolutions (such acts to be conclusive evidence that such Authorized Officer deemed the same to be necessary, appropriate, or advisable), and all acts of any Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects.

This Written Consent may be executed in one or more counterparts, and by different parties hereto in separate counterparts, each of which when so executed shall be deemed an original, but all of which together shall constitute one and the same instrument. This Written Consent may be executed by manual, facsimile, conformed or electronic (including PDF) signature, with the same effect as an executed written original.

[Signature Page to Follow]

CONFIDENTIAL

VPX-JHO0000001819

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

**Managers:**

_____
John Owoc (Oct 24, 2022 12:08 EDT)
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*Signature Page to Written Consent (Rainbow Unicorn Bev LLC)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

<u>**Managers:**</u>

_____

John H. Owoc

_____

Kathleen Cole

_____

Dr. Guillermo Escalante

_____

Eric Hillman

_____

Steven G. Panagos

*Signature Page to Written Consent (Rainbow Unicorn Bev LLC)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

### Managers:

_____

John H. Owoc


_____

Kathleen Cole


_____

Guillermo Escalante (Oct 21, 2022 08:53 PDT)

Dr. Guillermo Escalante


_____

Eric Hillman


_____

Steven G. Panagos

*Signature Page to Written Consent (Rainbow Unicorn Bev LLC)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

<u>**Managers:**</u>

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

*Eric Hillman*
_____
Eric Hillman

_____
Steven G. Panagos

*Signature Page to Written Consent (Rainbow Unicorn Bev LLC)*

VPX-JHO0000001823

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

<u>**Managers:**</u>

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos (Oct 25, 2022 17:57 EDT)
Steven G. Panagos

*Signature Page to Written Consent (Rainbow Unicorn Bev LLC)*

CONFIDENTIAL

**WRITTEN CONSENT OF THE MANAGERS OF
JHO INTELLECTUAL PROPERTY HOLDINGS, LLC**

**Effective: October 26, 2022**

The undersigned, being all of the Managers of JHO Intellectual Property Holdings, LLC, a Florida limited liability company (the "Company"), hereby adopt the following resolutions by this written consent in lieu of a meeting:

**WHEREAS**, on October 10, 2022, the Company and certain of its affiliates (including Vital Pharmaceuticals, Inc., a Florida corporation (the "DIP Borrower")) (together with the Company, collectively, the "Debtors") filed voluntary petitions for relief under Title 11 of the United States Code (as now or hereafter in effect, or any successor thereto, as the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") (such cases being jointly administered under Case No. 22-17842, and are referred to herein as the "Chapter 11 Case"), and continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

**WHEREAS**, in connection with the Chapter 11 Cases, it is proposed that the Company enter into that certain Superpriority Secured Debtor-In-Possession Credit Agreement, to be dated on or about the date hereof (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Credit Agreement"), by and among the DIP Borrower, as borrower, the Company and each other Debtor (other than the DIP Borrower) and certain other subsidiaries and affiliates of the DIP Borrower party thereto from time to time as guarantors (collectively the "DIP Guarantors"), the lenders party thereto from time to time (collectively the "DIP Lenders") and Truist Bank, as administrative agent for the DIP Lenders (in such capacity, the "DIP Agent"). The date that the DIP Credit Agreement is entered into is referred to herein as the "DIP Effective Date";

**WHEREAS**, it is proposed that the Company enter into that certain Postpetition Security and Pledge Agreement, dated as of the DIP Effective Date (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Security Agreement"), by and among the DIP Borrower, the Company, the other DIP Guarantors and the DIP Agent, pursuant to which the DIP Borrower, the Company and the other DIP Guarantors will grant liens in substantially all of their respective personal property to the DIP Agent for the benefit of the holders of the Secured Obligations (as defined in the DIP Security Agreement);

**WHEREAS**, in connection with the DIP Credit Agreement and the DIP Security Agreement, it is proposed that the Company enter into certain Loan Documents (as defined in the DIP Credit Agreement) (together with the DIP Credit Agreement and the DIP Security Agreement, collectively, the "DIP Loan Documents") and certain other instruments, certificates, agreements and other documents necessary, desirable, convenient, appropriate, advisable or otherwise requested by the DIP Agent to satisfy the covenants, conditions precedent and any conditions subsequent for the extension of credit under the DIP Credit Agreement, or in connection with the performance of its obligations under the DIP Loan Documents, including, without limitation, mortgages, deeds of trust, trust deeds, collateral access agreements, landlord waivers, bailee letters,

VPX-JHO0000001825

common carrier letters, warehouse letters (or any similar agreement to any of the foregoing), security agreements, pledge agreements, guaranties, control agreements, lockbox agreements, stock powers, intercompany notes, promissory notes, alonges, assignments, Uniform Commercial Code financing statements, promissory notes, indorsements, notices of borrowing, borrowing base certificates, requests for advances, requests for issuance of letters of credit, any fee letters, engagement letters, commitment letters, payoff letters, post-closing agreements and any other affidavits, agreements, certificates, documents, instruments, notices, recordings or filings deemed necessary or proper by the DIP Agent or required by the DIP Loan Documents, and affidavits, agreements, certificates, documents, instruments, notices, recordings or filings relating to any of the foregoing (together with the DIP Loan Documents, collectively, the "DIP Credit Documents");

WHEREAS, in connection with the execution, delivery and performance by the Company of the DIP Credit Documents to which it is a party, the Company may be required, or may deem it necessary or appropriate, to take such other actions, including, without limitation, the filing of Uniform Commercial Code financing statements or amendments thereto, or other filings necessary to perfect or give notice of liens, the notating of liens on titles, the delivery of stock powers and stock or other equity certificates, the delivery of alonges and notes, the payment of fees, costs and expenses, the giving of notices, the designation of persons authorized to act, and other actions as may be necessary or appropriate to perform under any DIP Credit Documents to which it is a party (collectively, the "Related Actions");

WHEREAS, the Managers have determined that the Company's entry into the DIP Credit Documents to which it is a party, including, if applicable, the Company's guarantee of obligations of the DIP Borrower and the other DIP Guarantors in the DIP Credit Agreement and taking of the Related Actions (i) is necessary or convenient to the conduct, promotion or attainment of the Company's business and (ii) may reasonably be expected to benefit the Company, directly or indirectly; and

WHEREAS, the Managers have determined that the execution, delivery and performance of each DIP Credit Document to which the Company is a party, and taking of the applicable Related Actions will benefit the Company and is in the best interest of the Company, including the granting of a lien on and/or security interest in substantially all of its assets to secure the obligations under the DIP Credit Documents to which it is a party, and to enter into and to perform its obligations under each DIP Credit Document to which it is a party.

NOW THEREFORE LET IT BE:

RESOLVED, that the Managers hereby determine that the approval of the transactions contemplated by the DIP Credit Documents and the execution, delivery and performance by the Company of the DIP Credit Documents to which it is a party on the terms and conditions as substantially described or provided to the Managers will benefit the Company and is in the best interest of the Company; and it is further

RESOLVED, that the Company is hereby authorized, and that each of the President, Chief Executive Officer, each Vice President, the Chief Transformation Officer (either existing now or later appointed), General Counsel, Chief Financial Officer, Treasurer and/or Secretary of the Company (collectively, the "Authorized Officers"), acting alone or in combination, shall be, and hereby is, authorized and empowered, with full power of delegation, on behalf of and in the name

VPX-JHO0000001826

of the Company, to execute, verify and/or file, or cause to be filed and/or executed or verified (or direct others to do so on their behalf as provided herein), and to amend, supplement or otherwise modify from time to time (including, without limitation, any amendments or supplements to the DIP Credit Agreement that increase the amount of credit available thereunder) any of the DIP Credit Documents to which the Company is a party, and to take any and all actions that each such Authorized Officer deems necessary or appropriate, each in connection with the Chapter 11 Case and/or any post-petition financing or any cash collateral usage contemplated hereby or thereby; and it is further

**RESOLVED**, that each Authorized Officer is hereby authorized, directed and empowered to do or cause to be done all such acts or things and to execute and deliver, or cause to be executed and delivered, under seal or otherwise, all such DIP Credit Documents or other affidavits, agreements, certificates, documents, instruments, notices, recordings and filings (including, without limitation, any and all certificates and notices required or permitted to be given or made under the terms, conditions or provisions of any of the agreements, documents or instruments executed therewith), in the name and on behalf of the Company on behalf of each of the Company's direct or indirect subsidiaries, as any such Authorized Officer, in his or her discretion, may deem necessary, proper or advisable to effectuate or carry out the purposes and intent of the foregoing resolutions and to perform the obligations of such subsidiary under all affidavits, agreements, certificates, documents, instruments, recordings and filings executed or delivered on behalf of such subsidiary in connection with the DIP Credit Documents to which such subsidiary is a party, and all acts of any Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects; and it is further

**RESOLVED**, that the Company is hereby authorized to grant a lien on, security interest in, and/or pledge any and all of its properties and assets to secure its obligations (including any obligations guaranteed by it under the DIP Credit Agreement, any other DIP Credit Document to which it is a party) under the DIP Credit Documents to which it is a party and to enter into and to perform its obligations under each DIP Credit Document to which it is a party and that the grant of liens, security interests and pledges by the Company as contemplated in the DIP Credit Documents to which it is party, and the grant of any additional liens, security interests or pledges pursuant to any additional security agreements or pledge agreements that may be required under the DIP Credit Documents to which it is or may become a party, and the execution of documents, agreements and instruments in connection therewith, and the filing of financing statements to perfect or otherwise evidence such liens, security interests or pledges, are in each case hereby authorized, approved, and adopted, as applicable; and it is further

**RESOLVED**, that the Company and any of its designees is hereby authorized to take any of the Related Actions, and that the DIP Agent or its designee may file any financing statement(s) or other filing or recording documents or instruments against the Company in connection with the grant of security under the DIP Security Agreement and the other DIP Credit Documents to which it is party, and that such financing statement(s) may, without limitation, include an "all assets" collateral description (including, without limitation, "all assets of debtor", "all personal property of the debtor", "all assets of the debtor, whether now existing or hereafter acquired or arising or in which debtor otherwise has rights and all proceeds thereof", or words of similar effect); and it is further

**RESOLVED**, that each Authorized Officer of the Company, who may act without the joinder of any of the other officer of the Company, is hereby authorized to such further actions and execute and deliver all such further instruments and documents in the names and on behalf of the Company under their corporate seals or otherwise and to incur and pay such expenses as in his or their judgment shall be necessary, proper or advisable in order to fully carry out the intent and accomplish the purposes of each of the foregoing resolutions (such acts to be conclusive evidence that such Authorized Officer deemed the same to be necessary, appropriate, or advisable), and all acts of any Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects.

This Written Consent may be executed in one or more counterparts, and by different parties hereto in separate counterparts, each of which when so executed shall be deemed an original, but all of which together shall constitute one and the same instrument. This Written Consent may be executed by manual, facsimile, conformed or electronic (including PDF) signature, with the same effect as an executed written original.

[Signature Page to Follow]

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

<u>**Managers:**</u>

_____
John Owoc (Oct 24, 2022 12:08 EDT)
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

_Signature Page to Written Consent (JHO Intellectual Property Holdings, LLC)_

CONFIDENTIAL                                                                              VPX-JHO0000001829

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

<u>**Managers:**</u>

_____

John H. Owoc

_____

Kathleen Cole

_____

Dr. Guillermo Escalante

_____

Eric Hillman

_____

Steven G. Panagos

*Signature Page to Written Consent (JHO Intellectual Property Holdings, LLC)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

### **Managers:**

_____

John H. Owoc

_____

Kathleen Cole

*ᏝᏌ*
Guillermo Escalante (Oct 21, 2022 08:53 PDT)
_____

Dr. Guillermo Escalante

_____

Eric Hillman

_____

Steven G. Panagos

*Signature Page to Written Consent (JHO Intellectual Property Holdings, LLC)*

VPX-JHO0000001831

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

**<u>Managers:</u>**

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

*Eric Hillman*
_____
Eric Hillman

_____
Steven G. Panagos

*Signature Page to Written Consent (JHO Intellectual Property Holdings, LLC)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

**<u>Managers:</u>**

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos (Oct 25, 2022 17:37 EDT)
Steven G. Panagos

_Signature Page to Written Consent (JHO Intellectual Property Holdings, LLC)_

VPX-JHO0000001833

**WRITTEN CONSENT OF THE MANAGERS OF**
**QUASH SELTZER, LLC**

**Effective: October 26, 2022**

     The undersigned, being all of the Managers of Quash Selzter, LLC, a Florida limited liability company (the "Company"), hereby adopt the following resolutions by this written consent in lieu of a meeting:

     **WHEREAS**, on October 10, 2022, the Company and certain of its affiliates (including Vital Pharmaceuticals, Inc., a Florida Corporation (the "DIP Borrower")) (together with the Company, collectively, the "Debtors") filed voluntary petitions for relief under Title 11 of the United States Code (as now or hereafter in effect, or any successor thereto, the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") (such cases being jointly administered under Case No. 22-17842, and are referred to herein as the "Chapter 11 Case"), and continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

     **WHEREAS**, it is proposed that the Company enter into that certain Superpriority Secured Debtor-In-Possession Credit Agreement, to be dated on or about the date hereof (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Credit Agreement"), by and among the DIP Borrower, as borrower, the Company and each other Debtor (other than the DIP Borrower) and certain other subsidiaries and affiliates of the DIP Borrower party thereto from time to time as guarantors (collectively the "DIP Guarantors"), the lenders party thereto from time to time (collectively, the "DIP Lenders") and Truist Bank, as administrative agent for the DIP Lenders (in such capacity, the "DIP Agent"). The date that the DIP Credit Agreement is entered into is referred to herein as the "DIP Effective Date";

     **WHEREAS**, in connection with the Chapter 11 Cases, it is proposed that the Company enter into that certain Postpetition Security and Pledge Agreement, dated as of the DIP Effective Date (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Security Agreement"), by and among the DIP Borrower, the Company, the other DIP Guarantors and the DIP Agent, pursuant to which the DIP Borrower, the Company and the other DIP Guarantors will grant liens in substantially all of their respective personal property to the DIP Agent for the benefit of the holders of the Secured Obligations (as defined in the DIP Security Agreement);

     **WHEREAS**, in connection with the DIP Credit Agreement and the DIP Security Agreement, it is proposed that the Company enter into certain Loan Documents (as defined in the DIP Credit Agreement) (together with the DIP Credit Agreement and the DIP Security Agreement, collectively, the "DIP Loan Documents") and certain other instruments, certificates, agreements and other documents necessary, desirable, convenient, appropriate, advisable or otherwise requested by the DIP Agent to satisfy the covenants, conditions precedent and any conditions subsequent for the extension of credit under the DIP Credit Agreement, or in connection with the performance of its obligations under the DIP Loan Documents, including, without limitation, mortgages, deeds of trust, trust deeds, collateral access agreements, landlord waivers, bailee letters,

VPX-JHO0000001834

common carrier letters, warehouse letters (or any similar agreement to any of the foregoing), security agreements, pledge agreements, guaranties, control agreements, lockbox agreements, stock powers, intercompany notes, promissory notes, alonges, assignments, Uniform Commercial Code financing statements, promissory notes, indorsements, notices of borrowing, borrowing base certificates, requests for advances, requests for issuance of letters of credit, any fee letters, engagement letters, commitment letters, payoff letters, post-closing agreements and any other affidavits, agreements, certificates, documents, instruments, notices, recordings or filings deemed necessary or proper by the DIP Agent or required by the DIP Loan Documents, and affidavits, agreements, certificates, documents, instruments, notices, recordings or filings relating to any of the foregoing (together with the DIP Loan Documents, collectively, the "DIP Credit Documents");

WHEREAS, in connection with the execution, delivery and performance by the Company of the DIP Credit Documents to which it is a party, the Company may be required, or may deem it necessary or appropriate, to take such other actions, including, without limitation, the filing of Uniform Commercial Code financing statements or amendments thereto, or other filings necessary to perfect or give notice of liens, the notating of liens on titles, the delivery of stock powers and stock or other equity certificates, the delivery of alonges and notes, the payment of fees, costs and expenses, the giving of notices, the designation of persons authorized to act, and other actions as may be necessary or appropriate to perform under any DIP Credit Documents to which it is a party (collectively, the "Related Actions");

WHEREAS, the Managers have determined that the Company's entry into the DIP Credit Documents to which it is a party, including, if applicable, the Company's guarantee of obligations of the DIP Borrower and the other DIP Guarantors in the DIP Credit Agreement and taking of the Related Actions (i) is necessary or convenient to the conduct, promotion or attainment of the Company's business and (ii) may reasonably be expected to benefit the Company, directly or indirectly; and

WHEREAS, the Managers have determined that the execution, delivery and performance of each DIP Credit Document to which the Company is a party, and taking of the applicable Related Actions will benefit the Company and is in the best interest of the Company, including the granting of a lien on and/or security interest in substantially all of its assets to secure the obligations under the DIP Credit Documents to which it is a party, and to enter into and to perform its obligations under each DIP Credit Document to which it is a party.

NOW THEREFORE LET IT BE:

RESOLVED, that the Managers hereby determine that the approval of the transactions contemplated by the DIP Credit Documents and the execution, delivery and performance by the Company of the DIP Credit Documents to which it is a party on the terms and conditions as substantially described or provided to the Managers will benefit the Company and is in the best interest of the Company; and it is further

RESOLVED, that the Company is hereby authorized, and that each of the President, Chief Executive Officer, each Vice President, the Chief Transformation Officer (either existing now or later appointed), General Counsel, Chief Financial Officer, Treasurer and/or Secretary of the Company (collectively, the "Authorized Officers"), acting alone or in combination, shall be, and hereby is, authorized and empowered, with full power of delegation, on behalf of and in the name

VPX-JHO0000001835

of the Company, to execute, verify and/or file, or cause to be filed and/or executed or verified (or direct others to do so on their behalf as provided herein), and to amend, supplement or otherwise modify from time to time (including, without limitation, any amendments or supplements to the DIP Credit Agreement that increase the amount of credit available thereunder) any of the DIP Credit Documents to which the Company is a party, and to take any and all actions that each such Authorized Officer deems necessary or appropriate, each in connection with the Chapter 11 Case and/or any post-petition financing or any cash collateral usage contemplated hereby or thereby; and it is further

RESOLVED, that each Authorized Officer is hereby authorized, directed and empowered to do or cause to be done all such acts or things and to execute and deliver, or cause to be executed and delivered, under seal or otherwise, all such DIP Credit Documents or other affidavits, agreements, certificates, documents, instruments, notices, recordings and filings (including, without limitation, any and all certificates and notices required or permitted to be given or made under the terms, conditions or provisions of any of the agreements, documents or instruments executed therewith), in the name and on behalf of the Company on behalf of each of the Company's direct or indirect subsidiaries, as any such Authorized Officer, in his or her discretion, may deem necessary, proper or advisable to effectuate or carry out the purposes and intent of the foregoing resolutions and to perform the obligations of such subsidiary under all affidavits, agreements, certificates, documents, instruments, recordings and filings executed or delivered on behalf of such subsidiary in connection with the DIP Credit Documents to which such subsidiary is a party, and all acts of any Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects; and it is further

RESOLVED, that the Company is hereby authorized to grant a lien on, security interest in, and/or pledge any and all of its properties and assets to secure its obligations (including any obligations guaranteed by it under the DIP Credit Agreement, any other DIP Credit Document to which it is a party) under the DIP Credit Documents to which it is a party and to enter into and to perform its obligations under each DIP Credit Document to which it is a party and that the grant of liens, security interests and pledges by the Company as contemplated in the DIP Credit Documents to which it is party, and the grant of any additional liens, security interests or pledges pursuant to any additional security agreements or pledge agreements that may be required under the DIP Credit Documents to which it is or may become a party, and the execution of documents, agreements and instruments in connection therewith, and the filing of financing statements to perfect or otherwise evidence such liens, security interests or pledges, are in each case hereby authorized, approved, and adopted, as applicable; and it is further

RESOLVED, that the Company and any of its designees is hereby authorized to take any of the Related Actions, and that the DIP Agent or its designee may file any financing statement(s) or other filing or recording documents or instruments against the Company in connection with the grant of security under the DIP Security Agreement and the other DIP Credit Documents to which it is party, and that such financing statement(s) may, without limitation, include an "all assets" collateral description (including, without limitation, "all assets of debtor", "all personal property of the debtor", "all assets of the debtor, whether now existing or hereafter acquired or arising or in which debtor otherwise has rights and all proceeds thereof", or words of similar effect); and it is further

**RESOLVED**, that each Authorized Officer of the Company, who may act without the joinder of any of the other officer of the Company, is hereby authorized to such further actions and execute and deliver all such further instruments and documents in the names and on behalf of the Company under their corporate seals or otherwise and to incur and pay such expenses as in his or their judgment shall be necessary, proper or advisable in order to fully carry out the intent and accomplish the purposes of each of the foregoing resolutions (such acts to be conclusive evidence that such Authorized Officer deemed the same to be necessary, appropriate, or advisable), and all acts of any Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects.

This Written Consent may be executed in one or more counterparts, and by different parties hereto in separate counterparts, each of which when so executed shall be deemed an original, but all of which together shall constitute one and the same instrument. This Written Consent may be executed by manual, facsimile, conformed or electronic (including PDF) signature, with the same effect as an executed written original.

[Signature Page to Follow]

VPX-JHO0000001837

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

<u>**Managers:**</u>

_____
John Owoc (Oct 24, 2022 12:08 EDT)
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*Signature Page to Written Consent (Quash Seltzer, LLC)*

CONFIDENTIAL                                                                 VPX-JHO0000001838

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

### Managers:

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*Signature Page to Written Consent (Quash Seltzer, LLC)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

## **Managers:**

_____

John H. Owoc

_____

Kathleen Cole

_____
Guillermo Escalante (Oct 21, 2022 08:53 PDT)

Dr. Guillermo Escalante

_____

Eric Hillman

_____

Steven G. Panagos

*Signature Page to Written Consent (Quash Seltzer, LLC)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

### Managers:

_____

John H. Owoc

_____

Kathleen Cole

_____

Dr. Guillermo Escalante

*Eric Hillman*
_____

Eric Hillman

_____

Steven G. Panagos

*Signature Page to Written Consent (Quash Seltzer, LLC)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

**<u>Managers:</u>**

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos (Oct 25, 2022 17:57 EDT)
Steven G. Panagos

*Signature Page to Written Consent (Quash Seltzer, LLC)*

CONFIDENTIAL

VPX-JHO0000001842

**WRITTEN CONSENT OF THE MANAGERS OF**
**JHO REAL ESTATE INVESTMENT, LLC**

**Effective: October 26, 2022**

The undersigned, being all of the Managers of JHO Real Estate Investment, LLC, a Florida limited liability company (the "Company"), hereby adopt the following resolutions by this written consent in lieu of a meeting:

**WHEREAS**, on October 10, 2022, the Company and certain of its affiliates (including Vital Pharmaceuticals, Inc., a Florida corporation (the "DIP Borrower")) (together with the Company, collectively, the "Debtors") filed voluntary petitions for relief under Title 11 of the United States Code (as now or hereafter in effect, or any successor thereto, the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") (such cases being jointly administered under Case No. 22-17842, and are referred to herein as the "Chapter 11 Case"), and continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

**WHEREAS**, in connection with the Chapter 11 Cases, it is proposed that the Company enter into that certain Superpriority Secured Debtor-In-Possession Credit Agreement, to be dated on or about the date hereof (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Credit Agreement"), by and among the DIP Borrower, as borrower, the Company and each other Debtor (other than the DIP Borrower) and certain other subsidiaries and affiliates of the DIP Borrower party thereto from time to time as guarantors (collectively the "DIP Guarantors"), the lenders party thereto from time to time (collectively, the "DIP Lenders") and Truist Bank, as administrative agent for the DIP Lenders (in such capacity, the "DIP Agent"). The date that the DIP Credit Agreement is entered into is referred to herein as the "DIP Effective Date";

**WHEREAS**, it is proposed that the Company enter into that certain Postpetition Security and Pledge Agreement, dated as of the DIP Effective Date (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Security Agreement"), by and among the DIP Borrower, the Company, the other DIP Guarantors and the DIP Agent, pursuant to which the DIP Borrower, the Company and the other DIP Guarantors will grant liens in substantially all of their respective personal property to the DIP Agent for the benefit of the holders of the Secured Obligations (as defined in the DIP Security Agreement);

**WHEREAS**, in connection with the DIP Credit Agreement and the DIP Security Agreement, it is proposed that the Company enter into certain Loan Documents (as defined in the DIP Credit Agreement) (together with the DIP Credit Agreement and the DIP Security Agreement, collectively, the "DIP Loan Documents") and certain other instruments, certificates, agreements and other documents necessary, desirable, convenient, appropriate, advisable or otherwise requested by the DIP Agent to satisfy the covenants, conditions precedent and any conditions subsequent for the extension of credit under the DIP Credit Agreement, or in connection with the performance of its obligations under the DIP Loan Documents, including, without limitation, mortgages, deeds of trust, trust deeds, collateral access agreements, landlord waivers, bailee letters,

VPX-JHO0000001843

common carrier letters, warehouse letters (or any similar agreement to any of the foregoing), security agreements, pledge agreements, guaranties, control agreements, lockbox agreements, stock powers, intercompany notes, promissory notes, allonges, assignments, Uniform Commercial Code financing statements, promissory notes, indorsements, notices of borrowing, borrowing base certificates, requests for advances, requests for issuance of letters of credit, any fee letters, engagement letters, commitment letters, payoff letters, post-closing agreements and any other affidavits, agreements, certificates, documents, instruments, notices, recordings or filings deemed necessary or proper by the DIP Agent or required by the DIP Loan Documents, and affidavits, agreements, certificates, documents, instruments, notices, recordings or filings relating to any of the foregoing (together with the DIP Loan Documents, collectively, the "DIP Credit Documents");

**WHEREAS**, in connection with the execution, delivery and performance by the Company of the DIP Credit Documents to which it is a party, the Company may be required, or may deem it necessary or appropriate, to take such other actions, including, without limitation, the filing of Uniform Commercial Code financing statements or amendments thereto, or other filings necessary to perfect or give notice of liens, the notating of liens on titles, the delivery of stock powers and stock or other equity certificates, the delivery of allonges and notes, the payment of fees, costs and expenses, the giving of notices, the designation of persons authorized to act, and other actions as may be necessary or appropriate to perform under any DIP Credit Documents to which it is a party (collectively, the "Related Actions");

**WHEREAS**, the Managers have determined that the Company's entry into the DIP Credit Documents to which it is a party, including, if applicable, the Company's guarantee of obligations of the DIP Borrower and the other DIP Guarantors in the DIP Credit Agreement and taking of the Related Actions (i) is necessary or convenient to the conduct, promotion or attainment of the Company's business and (ii) may reasonably be expected to benefit the Company, directly or indirectly; and

**WHEREAS**, the Managers have determined that the execution, delivery and performance of each DIP Credit Document to which the Company is a party, and taking of the applicable Related Actions will benefit the Company and is in the best interest of the Company, including the granting of a lien on and/or security interest in substantially all of its assets to secure the obligations under the DIP Credit Documents to which it is a party, and to enter into and to perform its obligations under each DIP Credit Document to which it is a party.

**NOW THEREFORE LET IT BE:**

**RESOLVED**, that the Managers hereby determine that the approval of the transactions contemplated by the DIP Credit Documents and the execution, delivery and performance by the Company of the DIP Credit Documents to which it is a party on the terms and conditions as substantially described or provided to the Managers will benefit the Company and is in the best interest of the Company; and it is further

**RESOLVED**, that the Company is hereby authorized, and that each of the President, Chief Executive Officer, each Vice President, the Chief Transformation Officer (either existing now or later appointed), General Counsel, Chief Financial Officer, Treasurer and/or Secretary of the Company (collectively, the "Authorized Officers"), acting alone or in combination, shall be, and hereby is, authorized and empowered, with full power of delegation, on behalf of and in the name

of the Company, to execute, verify and/or file, or cause to be filed and/or executed or verified (or direct others to do so on their behalf as provided herein), and to amend, supplement or otherwise modify from time to time (including, without limitation, any amendments or supplements to the DIP Credit Agreement that increase the amount of credit available thereunder) any of the DIP Credit Documents to which the Company is a party, and to take any and all actions that each such Authorized Officer deems necessary or appropriate, each in connection with the Chapter 11 Case and/or any post-petition financing or any cash collateral usage contemplated hereby or thereby; and it is further

RESOLVED, that each Authorized Officer is hereby authorized, directed and empowered to do or cause to be done all such acts or things and to execute and deliver, or cause to be executed and delivered, under seal or otherwise, all such DIP Credit Documents or other affidavits, agreements, certificates, documents, instruments, notices, recordings and filings (including, without limitation, any and all certificates and notices required or permitted to be given or made under the terms, conditions or provisions of any of the agreements, documents or instruments executed therewith), in the name and on behalf of the Company on behalf of each of the Company's direct or indirect subsidiaries, as any such Authorized Officer, in his or her discretion, may deem necessary, proper or advisable to effectuate or carry out the purposes and intent of the foregoing resolutions and to perform the obligations of such subsidiary under all affidavits, agreements, certificates, documents, instruments, recordings and filings executed or delivered on behalf of such subsidiary in connection with the DIP Credit Documents to which such subsidiary is a party, and all acts of any Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects; and it is further

RESOLVED, that the Company is hereby authorized to grant a lien on, security interest in, and/or pledge any and all of its properties and assets to secure its obligations (including any obligations guaranteed by it under the DIP Credit Agreement, any other DIP Credit Document to which it is a party) under the DIP Credit Documents to which it is a party and to enter into and to perform its obligations under each DIP Credit Document to which it is a party and that the grant of liens, security interests and pledges by the Company as contemplated in the DIP Credit Documents to which it is party, and the grant of any additional liens, security interests or pledges pursuant to any additional security agreements or pledge agreements that may be required under the DIP Credit Documents to which it is or may become a party, and the execution of documents, agreements and instruments in connection therewith, and the filing of financing statements to perfect or otherwise evidence such liens, security interests or pledges, are in each case hereby authorized, approved, and adopted, as applicable; and it is further

RESOLVED, that the Company and any of its designees is hereby authorized to take any of the Related Actions, and that the DIP Agent or its designee may file any financing statement(s) or other filing or recording documents or instruments against the Company in connection with the grant of security under the DIP Security Agreement and the other DIP Credit Documents to which it is party, and that such financing statement(s) may, without limitation, include an "all assets" collateral description (including, without limitation, "all assets of debtor", "all personal property of the debtor", "all assets of the debtor, whether now existing or hereafter acquired or arising or in which debtor otherwise has rights and all proceeds thereof", or words of similar effect); and it is further

**RESOLVED**, that each Authorized Officer of the Company, who may act without the joinder of any of the other officer of the Company, is hereby authorized to such further actions and execute and deliver all such further instruments and documents in the names and on behalf of the Company under their corporate seals or otherwise and to incur and pay such expenses as in his or their judgment shall be necessary, proper or advisable in order to fully carry out the intent and accomplish the purposes of each of the foregoing resolutions (such acts to be conclusive evidence that such Authorized Officer deemed the same to be necessary, appropriate, or advisable), and all acts of any Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects.

This Written Consent may be executed in one or more counterparts, and by different parties hereto in separate counterparts, each of which when so executed shall be deemed an original, but all of which together shall constitute one and the same instrument. This Written Consent may be executed by manual, facsimile, conformed or electronic (including PDF) signature, with the same effect as an executed written original.

[Signature Page to Follow]

VPX-JHO0000001846

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

<u>**Managers:**</u>

John Owoc (Oct 24, 2022 12:08 EDT)

_____

John H. Owoc


_____

Kathleen Cole


_____

Dr. Guillermo Escalante


_____

Eric Hillman


_____

Steven G. Panagos

_Signature Page to Written Consent (JHO Real Estate Investment, LLC)_

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

**Managers:**

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*Signature Page to Written Consent (JHO Real Estate Investment, LLC)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

### Managers:

_____
John H. Owoc


_____
Kathleen Cole


_____
Dr. Guillermo Escalante


_____
Eric Hillman


_____
Steven G. Panagos

*Signature Page to Written Consent (JHO Real Estate Investment, LLC)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

### <u>Managers:</u>

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

*Eric Hillman*
_____
Eric Hillman

_____
Steven G. Panagos

*Signature Page to Written Consent (JHO Real Estate Investment, LLC)*

CONFIDENTIAL

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

## **Managers:**

_____
John H. Owoc


_____
Kathleen Cole


_____
Dr. Guillermo Escalante


_____
Eric Hillman


_____
Steven G. Panagos (Oct 25, 2022 17:57 EDT)
Steven G. Panagos

*Signature Page to Written Consent (JHO Real Estate Investment, LLC)*

CONFIDENTIAL

**EXHIBIT B**

**GOVERNING DOCUMENTS**

[*See attached*]

CONFIDENTIAL

VPX-JHO0000001852

**BYLAWS**

**OF**

**VITAL PHARMACEUTICALS, INC.**

**(a Florida Corporation)**

CONFIDENTIAL

# INDEX

**<u>PAGE</u>**

ARTICLE 1 OFFICES............................................................................................. 1

    **Section 1.1**    **Registered Office** ........................................................... 1

    **Section 1.2**    **Other Offices** ................................................................. 1

ARTICLE 2 MEETINGS OF SHAREHOLDERS........................................................ 1

    **Section 2.1**    **Place** ................................................................................ 1

    **Section 2.2**    **Time of Annual Meeting**................................................ 1

    **Section 2.3**    **Call of Special Meetings** ............................................... 1

    **Section 2.4**    **Conduct of Meetings** .................................................... 1

    **Section 2.5**    **Notice and Waiver of Notice** ....................................... 1

    **Section 2.6**    **Quorum** ......................................................................... 2

    **Section 2.7**    **Voting per Share** .......................................................... 2

    **Section 2.8**    **Voting of Shares** ........................................................... 3

    **Section 2.9**    **Proxies**........................................................................... 3

    **Section 2.10**    **Shareholder List** ........................................................ 4

    **Section 2.11**    **Action Without Meeting**............................................ 4

    **Section 2.12**    **Fixing Record Date** ................................................... 4

    **Section 2.13**    **Inspectors and Judges**............................................... 5

    **Section 2.14**    **Voting for Directors** .................................................. 5

    **Section 2.15**    **Voting Trusts** ............................................................. 5

    **Section 2.16**    **Shareholders' Agreements** ........................................ 5

ARTICLE 3 DIRECTORS ...................................................................................... 6

    **Section 3.1**    **Number, Election and Term** ........................................ 6

    **Section 3.2**    **Vacancies** ...................................................................... 6

    **Section 3.3**    **Powers** ........................................................................... 6

    **Section 3.4**    **Duties of Directors** ....................................................... 6

    **Section 3.5**    **Place of Meetings**.......................................................... 7

    **Section 3.6**    **Annual Meeting** ............................................................ 7

    **Section 3.7**    **Regular Meetings** ......................................................... 7

    **Section 3.8**    **Special Meetings and Notice** ........................................ 7

i

VPX-JHO0000001854

**Section 3.9    Quorum; Required Votes Presumption of Assent** ................................. 7

**Section 3.10    Action Without Meeting** ............................................................................. 8

**Section 3.11    Conference Telephone or Similar Communications Equipment Meetings** ....................................................................................................... 8

**Section 3.12    Committees** ...................................................................................................... 8

**Section 3.13    Compensation of Directors** .......................................................................... 8

**Section 3.14    Chairman of the Board** ................................................................................ 9

**Section 3.15    Removal of Directors** .................................................................................... 9

**Section 3.16    Director Conflicts of Interest** ..................................................................... 9

ARTICLE 4 OFFICERS .................................................................................................................... 9

**Section 4.1    Positions** ............................................................................................................ 9

**Section 4.2    Election of Specified Officers by Board** ....................................................... 9

**Section 4.3    Election or Appointment of Other Officers** ................................................ 9

**Section 4.4    Salaries** ............................................................................................................ 10

**Section 4.5    Term; Resignation** ......................................................................................... 10

**Section 4.6    President** ......................................................................................................... 10

**Section 4.7    Vice Presidents** ............................................................................................... 10

**Section 4.8    Secretary** ......................................................................................................... 10

**Section 4.9    Treasurer** ........................................................................................................ 11

**Section 4.10    Other Officers, Employees and Agents** .................................................... 11

ARTICLE 5 CERTIFICATES FOR SHARES .............................................................................. 11

**Section 5.1    Issue of Certificates** ...................................................................................... 11

**Section 5.2    Legends for Preferences and Restrictions on Transfer** ........................... 11

**Section 5.3    Facsimile Signatures** ..................................................................................... 12

**Section 5.4    Lost Certificates** ............................................................................................ 12

**Section 5.5    Transfer of Shares** ......................................................................................... 12

**Section 5.6    Registered Shareholders** ............................................................................... 12

ARTICLE 6 INDEMNIFICATION ................................................................................................ 12

ARTICLE 7 BOOKS AND RECORDS .......................................................................................... 13

**Section 7.1    Books and Records** ......................................................................................... 13

**Section 7.2    Shareholders' Inspection Rights** ................................................................. 13

ii

VPX-JHO0000001855

ARTICLE 8 GENERAL PROVISIONS ................................................................................ 14

    **Section 8.1**   **Dividends** ............................................................................. **14**

    **Section 8.2**   **Reserves** ............................................................................... **14**

    **Section 8.3**   **Checks** ................................................................................... **14**

    **Section 8.4**   **Fiscal Year** ........................................................................... **14**

    **Section 8.5**   **Seal** ....................................................................................... **14**

    **Section 8.6**   **Gender** .................................................................................. **14**

ARTICLE 9 AMENDMENTS OF BYLAWS ........................................................................ 14

iii

VPX-JHO0000001856

**BYLAWS OF**

**VITAL PHARMACEUTICALS, INC.**

**ARTICLE 1**
**OFFICES**

**THESE BYLAWS** (these "Bylaws") of Vital Pharmaceuticals, Inc., a Florida corporation (the "Corporation"), are made as of the 13th day of August, 2020.

**Section 1.1    Registered Office**.  The registered office of the Corporation shall be such location as the Board of Directors of the Corporation (the "Board of Directors" or "Board") may designate from time to time.

**Section 1.2    Other Offices**.  The Corporation also may have offices at such other places, either within or without the State of Florida, as the Board of Directors may designate from time to time or as the business of the Corporation may require.

**ARTICLE 2**
**MEETINGS OF SHAREHOLDERS**

**Section 2.1    Place**.  All annual meetings of shareholders of the Corporation shall be held at such place, within or without the State of Florida, as may be designated by the Board of Directors and stated in the notice of the meeting or in a duly executed waiver of notice thereof. Special meetings of shareholders may be held at such place, within or without the State of Florida, and at such time as shall be stated in the notice of the meeting or in a duly executed waiver of notice thereof.

**Section 2.2    Time of Annual Meeting**.  Annual meetings of shareholders shall be held on such date and at such time fixed, from time to time, by the Board of Directors, provided that there shall be an annual meeting held every year at which the shareholders shall elect a Board of Directors and transact such other business as may properly be brought before the meeting.

**Section 2.3    Call of Special Meetings**.  Special meetings of the shareholders shall be held if called by the Board of Directors, the President, or if the holders of not less than fifty percent (50%) of all the votes entitled to be cast on any issue proposed to be considered at the proposed special meeting sign, date, and deliver to the Secretary one or more written demands for the meeting describing the purpose or purposes for which it is to be held.  Business transacted at any special meeting shall be confined to the purposes stated in the notice thereof.

**Section 2.4    Conduct of Meetings**.  The Chairman of the Board (or in his absence, the President or such other designee of the Chairman of the Board) shall preside at the annual and special meetings of shareholders and shall be given full discretion in establishing the rules and procedures to be followed in conducting the meetings, except as otherwise provided by law or in these Bylaws.

**Section 2.5    Notice and Waiver of Notice**.  Except as otherwise provided by law, written or printed notice stating the place, day and hour of the meeting and, in the case of a

VPX-JHO0000001857

special meeting, the purpose or purposes for which the meeting is called, shall be delivered not less than ten (10) nor more than sixty (60) days before the day of the meeting, either personally or by first-class mail, by or at the direction of the President, the Secretary, or the officer or person calling the meeting, to each shareholder of record entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail addressed to the shareholder at his address as it appears on the stock transfer books of the Corporation, with postage thereon prepaid. If a meeting is adjourned to another time and/or place, and if an announcement of the adjourned time and/or place is made at the meeting, it shall not be necessary to give notice of the adjourned meeting unless the Board of Directors, after adjournment, fixes a new record date for the adjourned meeting. Whenever any notice is required to be given to any shareholder, a waiver thereof in writing signed by the person or persons entitled to such notice, whether signed before, during or after the time of the meeting stated therein, and delivered to the Corporation for inclusion in the minutes or filing with the corporate records, shall be equivalent to the giving of such notice. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the shareholders need be specified in any written waiver of notice. Attendance of a person at a meeting shall constitute a waiver of (a) lack of or defective notice of such meeting, unless the person objects at the beginning to the holding of the meeting or the transacting of any business at the meeting, or (b) lack of defective notice of a particular matter at a meeting that is not within the purpose or purposes described in the meeting notice, unless the person objects to considering such matter when it is presented.

**Section 2.6    Quorum**.  Shares entitled to vote as a separate voting group may take action on a matter at a meeting only if a quorum of these shares exists with respect to that matter. Except as otherwise provided in the Articles of Incorporation of the Corporation (the "Articles of Incorporation") or by law, a majority of the shares entitled to vote on the matter by each voting group, represented in person or by proxy, shall constitute a quorum at any meeting of shareholders. If a quorum is present, the affirmative vote of the majority of the shares represented at the meeting and entitled to vote on the subject matter shall be the act of the shareholders unless otherwise provided in the Articles of Incorporation, these Bylaws or by law. If less than a majority of outstanding shares entitled to vote are represented at a meeting, a majority of the shares so represented may adjourn the meeting from time to time without further notice. After a quorum has been established at any shareholders' meeting, the subsequent withdrawal of shareholders, so as to reduce the number of shares entitled to vote at the meeting below the number required for a quorum, shall not affect the validity of any action taken at the meeting or any adjournment thereof. Once a share is represented for any purpose at a meeting, it is deemed present for quorum purposes for the remainder of the meeting and for any adjournment of that meeting unless a new record date is or must be set for that adjourned meeting.

**Section 2.7    Voting per Share**.  Except as otherwise provided in the Articles of Incorporation or by law, each shareholder is entitled to one (1) vote for each outstanding share held by him on each matter voted at a shareholders' meeting. Shares of stock of the Corporation owned by another corporation, the majority of the voting stock of which is owned or controlled by the Corporation, and shares of stock of the Corporation held by it in a fiduciary capacity shall not be voted, directly or indirectly, at any meeting, and shall not be counted in determining the

2

    VPX-JHO0000001858

total number of shares outstanding at any given time. At each election of directors, every shareholder entitled to vote at such election shall have the right to vote, in person or by proxy, the number of shares owned by him for as many persons as there are directors to be elected at that time and for whose election he has a right to vote.

**Section 2.8    Voting of Shares**. A shareholder may vote at any meeting of shareholders of the Corporation, either in person or by proxy. Shares standing in the name of another corporation, domestic or foreign, may be voted by the officer, agent or proxy designated by the bylaws of such corporate shareholder or, in the absence of any applicable bylaw, by such person or persons as the board of directors of the corporate shareholder may designate. In the absence of any such designation, or, in case of conflicting designation by the corporate shareholder, the president, any vice president, the secretary and the treasurer of the corporate shareholder, in that order, shall be presumed to be fully authorized to vote such shares. Shares held by an administrator, executor, guardian, personal representative, or conservator may be voted by him, either in person or by proxy, without a transfer of such shares into his name. Shares standing in the name of a trustee may be voted by him, either in person or by proxy, but no trustee shall be entitled to vote shares held by him without a transfer of such shares into his name or the name of his nominee. Shares held by or under the control of a receiver, a trustee in bankruptcy proceedings, or an assignee for the benefit of creditors may be voted by such person without the transfer thereof into his name. If shares stand of record in the names of two or more persons, whether fiduciaries, members of a partnership, joint tenants, tenants in common, tenants by the entirety or otherwise, or if two or more persons have the same fiduciary relationship respecting the same shares, unless the Secretary of the Corporation is given notice to the contrary and is furnished with a copy of the instrument or order appointing them or creating the relationship wherein it is so provided, then acts with respect to voting shall have the following effect: (a) if only one votes, in person or by proxy, his act binds all; (b) if more than one vote, in person or by proxy, the act of the majority so voting binds all; (c) if more than one vote, in person or by proxy, but the vote is evenly split on any particular matter, each faction is entitled to vote the share or shares in question proportionally; or (d) if the instrument or order so filed shows that any such tenancy is held in unequal interest, a majority or a vote evenly split for purposes hereof shall be a majority or a vote evenly split in interest. A shareholder whose shares are pledged shall be entitled to vote such shares until the shares have been transferred into the name of the pledgee, and thereafter the pledgee or his nominee shall be entitled to vote the shares so transferred. On or after the date on which written notice of redemption of redeemable shares has been mailed to the holders thereof and a sum sufficient to redeem such shares has been deposited with a bank or trust company with irrevocable instrument and authority to pay the redemption price to the holders thereof upon surrender of certificates therefor, such shares shall not be entitled to vote on any matter and shall not be deemed to be outstanding shares. The principles of this paragraph shall apply, insofar as possible, to execution of proxies, waivers, consents, or objections and for the purpose of ascertaining the presence of a quorum.

**Section 2.9    Proxies**. Any shareholder of the Corporation, other person entitled to vote on behalf of a shareholder pursuant to law, or attorney-in-fact for such persons may vote the shareholder's shares in person or by proxy. Any shareholder of the Corporation may appoint a proxy to vote or otherwise act for him by signing an appointment form, either personally or by his attorney-in-fact. An executed telegram or cablegram appearing to have been transmitted by

3

VPX-JHO0000001859

such person, or a photographic, photostatic, or equivalent reproduction of an appointment form, shall be deemed a sufficient appointment form. An appointment of a proxy is effective when received by the Secretary of the Corporation or such other officer or agent which is authorized to tabulate votes, and shall be valid for up to 11 months, unless a longer period is expressly provided in the appointment form. The death or incapacity of the shareholder appointing a proxy does not affect the right of the Corporation to accept the proxy's authority unless notice of the death or incapacity is received by the secretary or other officer or agent authorized to tabulate votes before the proxy exercises his authority under the appointment. An appointment of a proxy is revocable by the shareholder unless the appointment is coupled with an interest.

**Section 2.10   Shareholder List**.   After fixing a record date for a meeting of shareholders, the Corporation shall prepare an alphabetical list of the names of all its shareholders who are entitled to notice of the meeting, arranged by voting group with the address of, and the number and class and series, if any, of shares held by each. The shareholders' list must be available for inspection by any shareholder for a period of ten (10) days prior to the meeting or such shorter time as exists between the record date and the meeting and continuing through the meeting at the Corporation's principal office, at a place identified in the meeting notice in the city where the meeting will be held, or at the office of the Corporation's transfer agent or registrar. Any shareholder of the Corporation or his agent or attorney is entitled on written demand to inspect the shareholders' list (subject to the requirements of law), during regular business hours and at his expense, during the period it is available for inspection. The Corporation shall make the shareholders' list available at the meeting of shareholders, and any shareholder or his agent or attorney is entitled to inspect the list at any time during the meeting or any adjournment. If the requirements of this Section have not been substantially complied with, the meeting on demand of any shareholders in person or by proxy, shall be adjourned until the requirements are complied with. If no such demand is made, failure to comply with the requirements of this Section shall not affect the validity of any action taken at such meeting.

**Section 2.11   Action Without Meeting**.   Any action required by law to be taken at a meeting of shareholders, or any action that may be taken at a meeting of shareholders, may be taken without a meeting or notice if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock constituting the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted with respect to the subject matter thereof, and such consent shall have the same force and effect as a vote of shareholders taken at such a meeting. Within ten days after obtaining such authorization by written consent, notice shall be given to those shareholders who have not consented in writing. The notice shall fairly summarize the material features of the authorized action and, if the action be a merger, consolidation or sale or exchange of assets for which dissenters rights are provided by law, the notice shall contain a clear statement of the right of shareholders dissenting therefrom to be paid the fair value of their shares upon compliance with further provisions as provided by law regarding the rights of dissenting shareholders.

**Section 2.12   Fixing Record Date**.   For the purpose of determining shareholders entitled to notice of or to vote at any meeting of shareholders or any adjournment thereof or entitled to receive payment of any dividend, or in order to make a determination of shareholders for any other proper purposes, the Board of Directors may fix in advance a date as the record

4

date for any such determination of shareholders, such date in any case to be not more than sixty (60) days, and, in case of a meeting of shareholders, not less than ten (10) days, prior to the date on which the particular action requiring such determination of shareholders is to be taken.  If no record date is fixed for the determination of shareholders entitled to notice of or to vote at a meeting of shareholders, or shareholders entitled to receive payment of a dividend, the date on which the notice of the meeting is mailed or the date on which the resolutions of the Board of Directors declaring such dividend is adopted, as the case may be, shall be the record date for such determination of shareholders.  When a determination of shareholders entitled to vote at any meeting of shareholders has been made as provided in this Section, such determination shall apply to any adjournment thereof, except where the Board of Directors fixes a new record date for the adjourned meeting or as required by law.

**Section 2.13  Inspectors and Judges**.  The Board of Directors in advance of any meeting may, but need not, appoint one or more inspectors of election or judges of the vote, as the case may be, to act at the meeting or any adjournment(s) thereof.  If any inspector or inspectors, or judge or judges, are not appointed, the person presiding at the meeting may, but need not, appoint one or more inspectors or judges.  In case any person who may be appointed as an inspector or judge fails to appear or act, the vacancy may be filled by the Board of Directors in advance of the meeting, or at the meeting by the person presiding thereat.  The inspectors or judges, if any, shall determine the number of shares of stock outstanding and the voting power of each, the shares of stock represented at the meeting, the existence of a quorum, the validity and effect of proxies, and shall receive votes, ballots and consents, hear and determine all challenges and questions arising in connection with the right to vote, count and tabulate votes, ballots and consents, determine the result, and do such acts as are proper to conduct the election or vote with fairness to all shareholders.  On request of the person presiding at the meeting, the inspector or inspectors or judge or judges, if any, shall make a report in writing of any challenge, question or matter determined by him or them, and execute a certificate of any fact found by him or them.

**Section 2.14  Voting for Directors**.  Unless otherwise provided in the Articles of Incorporation, directors shall be elected by a plurality of the votes cast by the shares entitled to vote in the election at a meeting at which a quorum is present.

**Section 2.15  Voting Trusts**.  Any number of shareholders of the Corporation may create a voting trust for the purpose of conferring upon a trustee or trustees the right to vote or otherwise represent their shares, as provided by law.  Where the counterpart of a voting trust agreement and the copy of the record of the holders of voting trust certificates has been deposited with the Corporation as provided by law, such documents shall be subject to the same right of examination by a shareholder of the Corporation, in person or by agent or attorney, as are the books and records of the Corporation, and such counterpart and such copy of such record shall be subject to examination by any holder of record of voting trust certificates either in person or by agent or attorney, at any reasonable time for any proper purpose.

**Section 2.16  Shareholders' Agreements**.  Two or more shareholders of the Corporation may enter an agreement providing for the exercise of voting rights in the manner provided in the agreement or relating to any phase of the affairs of the Corporation as provided by law.  If all of the shareholders of the Corporation have entered into a shareholders' agreement (before or after the effective date of these Bylaws), which contains terms that are different from

5

the terms set forth in these Bylaws, then the terms of the shareholders' agreement shall be controlling to the extent that the terms of the shareholders' agreement are at variance with the terms of these Bylaws. Nothing therein shall impair the right of the Corporation to treat the shareholders of record as entitled to vote the shares standing in their names. A transfer of shares of the Corporation whose shareholders have a shareholder's agreement authorized by this Section shall be bound by such agreement if he takes shares subject to such agreement with notice thereof. A transferee shall be deemed to have notice of any such agreement if the exercise thereof is noted on the face or back of the certificate or certificates representing such shares.

## ARTICLE 3
## DIRECTORS

**Section 3.1    Number, Election and Term**.    The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors. The Board of Directors shall consist of one or more members, the exact number to be determined from time to time by the shareholders or the Board of Directors. The number of directors may be increased or decreased from time to time by the shareholders or the Board of Directors, but no decrease shall have the effect of shortening the terms of any incumbent director. Directors need not be residents of this State or shareholders of the Corporation. A director shall hold office until the annual meeting for the year in which his term expires and until his successor shall be elected and shall qualify, subject, however, to prior death, resignation, retirement, disqualification or removal from office.

**Section 3.2    Vacancies**. A director may resign at any time by giving written notice to the Corporation, the Board of Directors or the President. Such resignation shall take effect when the notice is delivered unless the notice specifies a later effective date, in which event the Board of Directors may fill the pending vacancy before the effective date if they provide that the successor does not take office until the effective date. Any vacancy occurring in the Board of Directors and any directorship to be filled by reason of an increase in the size of the Board of Directors shall be filled by the affirmative vote of a majority of the current directors though less than a quorum of the Board of Directors, or may be filled by an election at an annual or special meeting of the shareholders called for that purpose, unless otherwise provided by law. A director elected to fill a vacancy shall be elected for the unexpired term of his predecessor in office, or until the next election of one or more directors by shareholders if the vacancy is caused by an increase in the number of directors.

**Section 3.3    Powers**. Except as provided in the Articles of Incorporation and by law, all corporate powers shall be exercised by or under the authority of, and the business and affairs of the Corporation shall be managed under the direction of, its Board of Directors.

**Section 3.4    Duties of Directors**. A director shall perform his duties as a director, including his duties as a member of any committee of the board upon which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the Corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. In performing his duties, a director shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by (1) one or more officers or employees of the Corporation whom

6

the director reasonably believes to be reliable and competent in the matters presented, (2) counsel, public accountants, or (3) other persons as to matters which the director reasonably believes to be within such person's professional or expert competence, or a committee of the Board upon which he does not serve, duly designated in accordance with a provision of the Articles of Incorporation or these Bylaws, as to matters within its designated authority, which committee the director reasonably believes to merit confidence.    A director shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance described above to be unwarranted.  A person who performs his duties in compliance with this Section shall have no liability by reason of being or having been a director of the Corporation and shall be indemnified by the Corporation for any and all claims and/or losses arising out of his service as a director of the Corporation.

Section 3.5    **Place of Meetings**.  Meetings of the Board of Directors, regular or special, may be held either within or without the State of Florida.

Section 3.6    **Annual Meeting**.    The first meeting of each newly elected Board of Directors shall be held, without call or notice, immediately following each annual meeting of shareholders.

Section 3.7    **Regular Meetings**.  Regular meetings of the Board of Directors may also be held without notice at such time and at such place as shall from time to time be determined by the Board of Directors.

Section 3.8    **Special Meetings and Notice**.  Special meetings of the Board of Directors may be called by the President and shall be called by the Secretary on the written request of any two directors.  Written notice of special meetings of the Board of Directors shall be given to each director at least two (2) days before the meeting.  Except as required by statute, neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors need be specified in the notice or waiver of notice of such meeting.  Notices to directors shall be in writing and delivered personally or mailed to the directors at their addresses appearing on the books of the Corporation.  Notice by mail shall be deemed to be given at the time when the same shall be received.  Notice to directors may also be given by telegram, teletype or other form of electronic communication.  Notice of a meeting of the Board of Directors need not be given to any director who signs a written waiver of notice before, during or after the meeting.  Attendance of a director at a meeting shall constitute a waiver of notice of such meeting and a waiver of any and all objections to the place of the meeting, the time of the meeting and the manner in which it has been called or convened, except when a director states, at the beginning of the meeting or promptly upon arrival at the meeting, any objection to the transaction of business because the meeting is not lawfully called or convened.

Section 3.9    **Quorum; Required Votes Presumption of Assent**.  A majority of the number of directors fixed by, or in the manner provided in, these Bylaws shall constitute a quorum for the transaction of business; provided, however, that whenever, for any reason, a vacancy occurs in the Board of Directors, a quorum shall consist of a majority of the remaining directors until the vacancy has been filled.  The act of a majority of the directors present at a meeting at which a quorum is present when the vote is taken shall be the act of the Board of Directors.  A majority of the directors present, whether or not a quorum exists, may adjourn any

7

                                                      VPX-JHO0000001863

meeting of the Board of Directors to another time and place. Notice of any such adjourned meeting shall be given to the directors who were not present at the time of adjournment, and, unless the time and place of the adjourned meeting are announced at the time of adjournment, to the other directors. A director of the Corporation who is present at a meeting of the Board of Directors or a committee of the Board of Directors when corporate action is taken shall be presumed to have assented to the action taken, unless he objects at the beginning of the meeting, or promptly upon his arrival, to holding the meeting or transacting specific business at the meeting, or he votes against or abstains from the action taken.

Section 3.10    **Action Without Meeting**.  Any action required or permitted to be taken at a meeting of the Board of Directors or a committee thereof may be taken without a meeting if a consent in writing, setting forth the action taken, is signed by all of the members of the Board of Directors or the committee, as the case may be, and such consent shall have the same force and effect as a unanimous vote at a meeting. Action taken under this Section is effective when the last director signs the consent, unless the consent specifies a different effective date. A consent signed under this Section shall have the effect of a meeting vote and may be described as such in any document.

Section 3.11    **Conference Telephone or Similar Communications Equipment Meetings**.  Members of the Board of Directors may participate in a meeting of the Board by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other at the same time. Participation in such a meeting shall constitute presence in person at the meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground the meeting is not lawfully called or convened.

Section 3.12    **Committees**.  The Board of Directors, by resolution adopted by a majority of the full Board of Directors, may designate from among its members an executive committee and one or more other committees, each of which, to the extent provided in such resolution, shall have and may exercise all of the authority of the Board of Directors in the business and affairs of the Corporation except where the action of the full Board of Directors is required by statute. Each committee must have two or more members who serve at the pleasure of the Board of Directors. The Board of Directors, by resolution adopted in accordance with this Article Three, may designate one or more directors as alternate members of any committee, who may act in the place and stead of any absent member or members at any meeting of such committee. Vacancies in the membership of a committee shall be filled by the Board of Directors at a regular or special meeting of the Board of Directors. The executive committee shall keep regular minutes of its proceedings and report the same to the Board of Directors when required. The designation of any such committee and the delegation thereto of authority shall not operate to relieve the Board of Directors, or any member thereof, of any responsibility imposed upon it or him by law.

Section 3.13    **Compensation of Directors**.  The directors may be paid their expenses, if any, of attendance at each meeting of the Board of Directors and may be paid a fixed sum for attendance at each meeting of the Board of Directors or a stated salary as director. No such payment shall preclude any director from serving the Corporation in any other capacity and receiving compensation therefor. Members of special or standing committees may be allowed like compensation for attending committee meetings.

CONFIDENTIAL                                                                    VPX-JHO0000001864

**Section 3.14    Chairman of the Board**.  The Board of Directors may, in its discretion, choose a chairman of the board (the "Chairman of the Board") who shall preside at meetings of the shareholders and of the directors and shall be an ex officio member of all standing committees.  The Chairman of the Board shall have such other powers and shall perform such other duties as shall be designated by the Board of Directors.  The Chairman of the Board shall be a member of the Board of Directors but no other officers of the Corporation need be a director.  The Chairman of the Board shall serve until his successor is chosen and qualified, but he may be removed at any time by the affirmative vote of a majority of the Board of Directors.

**Section 3.15    Removal of Directors**.  At a meeting of shareholders called expressly for that purpose, any director or the entire Board of Directors may be removed, with or without cause, by a vote of the holders of a majority of the shares then entitled to vote at an election of directors.

**Section 3.16    Director Conflicts of Interest**.  No contract or other transaction between the Corporation and one or more of its directors or any other corporation, firm, association or entity in which one or more of the directors are directors or officers or are financially interested, shall be either void or voidable because of such relationship or interest or because such director or directors are present at the meeting of the Board of Directors or a committee thereof which authorizes, approves or ratifies such contract or transaction or because his or their votes are counted for such purpose, if:  (1) the fact of such relationship or interest is disclosed or known to the Board of Directors or committee which authorizes, approves or ratifies the contract or transaction by a vote or consent sufficient for the purpose without counting the votes or consents of such interested directors; (2) the fact of such relationship or interest is disclosed or known to the shareholders entitled to vote and they authorize, approve or ratify such contract or transaction by vote or written consent; or (3) the contract or transaction is fair and reasonable as to the Corporation at the time it is authorized by the Board, a committee or the shareholders.  Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or a committee thereof which authorizes, approves or ratifies such contract or transaction.

## ARTICLE 4
## OFFICERS

**Section 4.1    Positions**.  The officers of the Corporation shall consist of a President and, if elected by the Board of Directors by a resolution, one or more Vice Presidents, a Secretary, a Treasurer, and any other officers as may be appointed by the Board of Directors in accordance with these bylaws.  Any two or more offices may be held by the same person.

**Section 4.2    Election of Specified Officers by Board**.  The Board of Directors at its first meeting after each annual meeting of shareholders shall elect the officers of the Corporation as specified above in Section 4.1, subject to the rights, if any, of an officer under any contract of employment.

**Section 4.3    Election or Appointment of Other Officers**.  Such other officers and assistant officers and agents as may be deemed necessary may be elected or appointed by the Board of Directors, or, unless otherwise specified herein, appointed by the President of the

9

VPX-JHO0000001865

Corporation. The Board of Directors shall be advised of appointments by the President at or before the next scheduled Board of Directors meeting.

**Section 4.4    Salaries**. The salaries of all officers of the Corporation to be elected by the Board of Directors pursuant to Article Four, Section 2 hereof shall be fixed from time to time by the Board of Directors or pursuant to its discretion. The salaries of all other elected or appointed officers of the Corporation shall be fixed from time to time by the President of the Corporation or pursuant to his direction.

**Section 4.5    Term; Resignation**. The officers of the Corporation shall hold office until their successors are chosen and qualified. Any officer or agent elected or appointed by the Board of Directors or the President of the Corporation may be removed, with or without cause, by the Board of Directors. Any officers or agents appointed by the President of the Corporation pursuant to Section 3 of this Article Four may also be removed from such officer positions by the President, with or without cause. Any vacancy occurring in any office of the Corporation by death, resignation, removal or otherwise shall be filled by the Board of Directors, or, in the case of an officer appointed by the President of the Corporation, by the President or the Board of Directors. Any officer of the Corporation may resign from his respective office or position by delivering notice to the Corporation. Such resignation is effective when delivered unless the notice specifies a later effective date. If a resignation is made effective at a later date and the Corporation accepts the future effective date, the Board of Directors may fill the pending vacancy before the effective date if the Board provides that the successor does not take office until the effective date.

**Section 4.6    President**. The President shall be the Chief Executive Officer of the Corporation, shall have general and active management of the business of the Corporation and shall see that all orders and resolutions of the Board of Directors are carried into effect. In the absence of the Chairman of the Board or in the event the Board of Directors shall not have designated a chairman of the board, the President shall preside at meetings of the shareholders and the Board of Directors.

**Section 4.7    Vice Presidents**. The Vice Presidents in the order of their seniority, unless otherwise determined by the Board of Directors, shall, in the absence or disability of the President, perform the duties and exercise the powers of the President. They shall perform such other duties and have such other powers as the Board of Directors shall prescribe or as the President may from time to time delegate.

**Section 4.8    Secretary**. The Secretary shall attend all meetings of the Board of Directors and all meetings of the shareholders and record all the proceedings of the meetings of the shareholders and of the Board of Directors in a book to be kept for that purpose and shall perform like duties for the standing committees when required. The Secretary shall give, or cause to be given, notice of all meetings of the shareholders and special meetings of the Board of Directors, and shall perform such other duties as may be prescribed by the Board of Directors or President, under whose supervision the Secretary shall be. The Secretary shall keep in safe custody the seal of the Corporation and, when authorized by the Board of Directors, affix the same to any instrument requiring it.

10

                                                    VPX-JHO0000001866

**Section 4.9    Treasurer**.  The Treasurer shall have the custody of corporate funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation and shall deposit all moneys and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated by the Board of Directors.  The Treasurer shall disburse the funds of the Corporation as may be ordered by the Board of Directors, taking proper vouchers for such disbursements, and shall render to the President and the Board of Directors at its regular meetings or when the Board of Directors so requires an account of all the Treasurer's transactions as treasurer and of the financial condition of the Corporation unless otherwise specified by the Board of Directors, the Treasurer shall be the Corporation's Chief Financial Officer.

**Section 4.10    Other Officers, Employees and Agents**.  Each and every other officer, employee and agent of the Corporation shall possess, and may exercise, such power and authority, and shall perform such duties, as may from time to time be assigned to him by the Board of Directors, the officer so appointing him and such officer or officers who may from time to time be designated by the Board of Directors to exercise such supervisory authority.

**ARTICLE 5**
**CERTIFICATES FOR SHARES**

**Section 5.1    Issue of Certificates**.  The Corporation may, but shall not be required to, deliver certificates representing all shares to which shareholders are entitled; and such certificates shall be signed by the President or a Vice President, and by the Secretary or an Assistant Secretary of the Corporation, and may be sealed with the seal of the Corporation or a facsimile thereof.

**Section 5.2    Legends for Preferences and Restrictions on Transfer**.    The designations, relative rights, preferences and limitations applicable to each class of shares and the variations in rights, preferences and limitations determined for each series within a class (and the authority of the Board of Directors to determine variations for future series) shall be summarized on the front or back of each certificate.  Alternatively, each certificate may state conspicuously on its front or back that the Corporation will furnish the shareholder a full statement of this information on request and without charge.  Every certificate representing shares that are restricted as to the sale, disposition, or transfer of such shares shall also indicate that such shares are restricted as to transfer and there shall be set forth or fairly summarized upon the certificate, or the certificate shall indicate that the Corporation will furnish to any shareholder upon request and without charge, a full statement of such restrictions.  If the Corporation issues any shares that are not registered under the Securities Act of 1933, as amended, and registered or qualified under the applicable state securities laws, the transfer of any such shares shall be restricted substantially in accordance with the following legend:

> "THESE SHARES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR UNDER ANY APPLICABLE STATE LAW. THEY MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR PLEDGED WITHOUT (1) REGISTRATION UNDER THE SECURITIES ACT OF 1933 AND ANY APPLICABLE STATE LAW, OR (2) AT HOLDER'S EXPENSE, AN OPINION (SATISFACTORY TO THE CORPORATION) OF

11

COUNSEL (SATISFACTORY TO THE CORPORATION) THAT REGISTRATION IS NOT REQUIRED."

**Section 5.3    Facsimile Signatures**.  The signatures of the President or a Vice President and the Secretary or Assistant Secretary upon a certificate may be facsimiles, if the certificate is manually signed by a transfer agent, or registered by a registrar, other than the Corporation itself or an employee of the Corporation.  In case any officer who has signed or whose facsimile signature has been placed upon such certificate shall have ceased to be such officer before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer at the date of the issuance.

**Section 5.4    Lost Certificates**.  The Board of Directors may direct a new certificate or certificates to be issued in place of any certificate or certificates theretofore issued by the Corporation alleged to have been lost or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost or destroyed.  When authorizing such issue of a new certificate or certificates, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of such lost or destroyed certificate or certificates, or his legal representative, to advertise the same in such manner as it shall require and/or to give the Corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost or destroyed.

**Section 5.5    Transfer of Shares**.  Upon surrender to the Corporation or the transfer agent of the Corporation of a certificate for shares duly endorsed or accompanied by proper evidence of succession, assignment or authority to transfer, it shall be the duty of the Corporation to issue a new certificate to the person entitled thereto, cancel the old certificate and record the transaction upon its books.

**Section 5.6    Registered Shareholders**.  The Corporation shall be entitled to recognize the exclusive rights of a person registered on its books as the owner of shares to receive dividends, and to vote as such owner, and shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it shall have express or other notice thereof except as otherwise provided by the laws of the State of Florida.

## ARTICLE 6
## INDEMNIFICATION

Any person, his heirs, or personal representative, made, or threatened to be made, a party to any threatened, pending, or completed action or proceeding, whether civil, criminal, administrative, or investigative, because he, his testator, or intestate is or was a director, officer, employee, or agent of the Corporation or serves or served any other corporation or other enterprise in any capacity at the request of the Corporation, shall be indemnified by the Corporation, and the Corporation may advance his related expenses to the full extent permitted by law. In discharging his duty, any director, officer, employee, or agent, when acting in good faith, may rely upon information, opinions, reports, or statements, including financial statements and other financial data, in each case prepared or presented by (1) one or more officers or

12

employees of the Corporation whom the director, officer, employee, or agent reasonably believes to be reliable and competent in the matters presented, (2) counsel, public accountants, or other persons as to matters that the director, officer, employee, or agent believes to be within that person's professional or expert competence, or (3) in the case of a director, a committee of the Board of Directors upon which he does not serve, duly designated according to law, as to matters within its designated authority, if the director reasonably believes that the committee is competent.  The indemnification provided by this Article shall not be deemed exclusive of any other rights to which those indemnified may be entitled under any agreement, vote or shareholders or disinterested directors or otherwise, both as to actions in such person's official capacity and as to actions in another capacity while holding such office, and shall continue as to an indemnified person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors, administrators, personal representatives and estate of such person.  All rights to indemnification and advances under this Article shall be deemed to be a contract between the Corporation and each indemnified person who serves or served in such capacity at any time while this Article is in effect and, as such, are enforceable against the Corporation.  Any repeal or modification of this Article or any repeal or modification of relevant provisions of Florida's corporation law or any other applicable laws shall not in any way diminish these rights to indemnification of or advances to such indemnified person, or the obligations of the Corporation arising hereunder, for claims relating to matters occurring prior to such repeals or modification.  The Corporation may purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee, trustee or agent of another corporation, partnership, joint venture, trust or other enterprise (including serving as a fiduciary of an employee benefit plan), with respect to any liability asserted against him and incurred by him in any such capacity or arising out of his status as such, whether or not the Corporation would have the power to indemnify him against such liability under the provisions of this Article or the applicable provisions of Florida law.  If this Article or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then the Corporation shall nevertheless indemnify and hold harmless, and make advances to, each indemnified person as to costs, charges and expenses (including attorneys' fees), liabilities, judgments, fines and amounts paid in settlement with respect to any proceeding including any action by or in the right of the Corporation, to the full extent permitted by any applicable portion of this Article that shall not have been invalidated and as otherwise permitted by applicable law.

## ARTICLE 7
## BOOKS AND RECORDS

**Section 7.1    Books and Records**.  The Corporation shall keep correct and complete books and records of accounts and shall keep minutes of the proceedings of its shareholders, Board of Directors and committees of directors.  The Corporation shall keep at its registered office or principal place of business, or at the office of its transfer agent or registrar, a record of its shareholders, giving the names and addresses of all shareholders, and the number, class and series, if any, of the shares held by each.  Any books, records and minutes may be in written form or in any other form capable of being converted into written form within a reasonable time.

**Section 7.2    Shareholders' Inspection Rights**.  Any person who shall have been a holder of record of shares or of voting trust certificates therefor at least six months immediately

13

preceding his demand or shall be the holder of record of, or the holder of record of voting trust certificates for, at least five percent of the outstanding shares of any class or series of the Corporation, upon written demand stating the purpose thereof, shall have the right to examine, in person or by agent or attorney, at any reasonable time or times, for any proper purpose its relevant books and records of accounts, minutes and records of shareholders and to make extracts therefrom.

## ARTICLE 8
## GENERAL PROVISIONS

**Section 8.1    Dividends**.  The Board of Directors may from time to time declare, and the Corporation may pay, dividends on its outstanding shares in cash, property, or its own shares pursuant to law and subject to the provisions of the Articles of Incorporation.

**Section 8.2    Reserves**.  The Board of Directors may by resolution create a reserve or reserves out of earned surplus for any proper purpose or purposes, and may abolish any such reserve in the same manner.

**Section 8.3    Checks**.  All checks or demands for money and notes of the Corporation shall be signed by such officer or officers or such other person or persons as the Board of Directors may from time to time designate.

**Section 8.4    Fiscal Year**.  The fiscal year of the Corporation shall be fixed by the Board of Directors and may be changed from time to time by resolution of the Board of Directors.

**Section 8.5    Seal**.  The corporate seal shall have inscribed thereon the name and state of incorporation of the Corporation.  The seal may be used by causing it or a facsimile thereof to be impressed or affixed or in any other manner reproduced.

**Section 8.6    Gender**.  All words used in these Bylaws in the masculine gender shall extend to and shall include the feminine and neuter genders.

## ARTICLE 9
## AMENDMENTS OF BYLAWS

Unless otherwise provided by law, these Bylaws may be altered, amended or repealed or new Bylaws may be adopted by action of the Board of Directors or the shareholders, but the Board of Directors may not amend or repeal any by-law adopted by shareholders if the shareholders specifically provide such by-law shall not be subject to amendment or repeal by the directors.

*  *  *  *  *

14

# VITAL PHARMACEUTICALS INTERNATIONAL SALES, INC.

## BYLAWS

CONFIDENTIAL

# TABLE OF CONTENTS

Page

Article I  MEETINGS OF STOCKHOLDERS .................................................................... 1
1.1.  Place of Meetings ............................................................................................ 1
1.2.  Annual Meeting ............................................................................................... 1
1.3.  Special Meeting ............................................................................................... 1
1.4.  Notice of Stockholders' Meetings ................................................................... 1
1.5.  Manner of Giving Notice; Affidavit of Notice ............................................... 2
1.6.  Quorum ............................................................................................................ 2
1.7.  Adjourned Meeting; Notice .............................................................................. 2
1.8.  Conduct of Business ........................................................................................ 2
1.9.  Voting ............................................................................................................... 3
1.10.  Stockholder Action by Written Consent Without a Meeting ........................... 3
1.11.  Record Date for Stockholder Notice; Voting; Giving Consents ...................... 4
1.12.  Proxies ............................................................................................................. 4
1.13.  List of Stockholders Entitled to Vote .............................................................. 5
Article II  DIRECTORS ...................................................................................................... 5
2.1.  Powers .............................................................................................................. 5
2.2.  Number of Directors ........................................................................................ 5
2.3.  Election, Qualification and Term of Office of Directors ................................. 5
2.4.  Resignation and Vacancies .............................................................................. 5
2.5.  Place of Meetings; Meetings by Telephone ..................................................... 6
2.6.  Conduct of Business ........................................................................................ 6
2.7.  Regular Meetings ............................................................................................. 6
2.8.  Special Meetings; Notice ................................................................................. 6
2.9.  Quorum ............................................................................................................ 7
2.10.  Board Action by Written Consent Without a Meeting ..................................... 7
2.11.  Fees and Compensation of Directors ............................................................... 7
2.12.  Approval of Loans to Officers ......................................................................... 7
2.13.  Removal of Directors ....................................................................................... 7
Article III  COMMITTEES ................................................................................................. 7
3.1.  Committees of Directors .................................................................................. 7
3.2.  Committee Minutes .......................................................................................... 8
3.3.  Meetings and Action of Committees ............................................................... 8
Article IV  OFFICERS ....................................................................................................... 8
4.1.  Officers ............................................................................................................ 8
4.2.  Appointment of Officers .................................................................................. 9
4.3.  Subordinate Officers ........................................................................................ 9
4.4.  Removal and Resignation of Officers .............................................................. 9
4.5.  Vacancies in Offices ........................................................................................ 9
4.6.  Representation of Shares of Other Corporations ............................................. 9
4.7.  Authority and Duties of Officers ..................................................................... 9
4.8.  Salaries of Officers .......................................................................................... 9
Article V  RECORDS AND REPORTS .............................................................................. 9
5.1.  Maintenance and Inspection of Records .......................................................... 9
5.2.  Inspection by Directors .................................................................................... 10

VPX-JHO0000001872

TABLE OF CONTENTS
(Continued)

Page

5.3.     Annual Report .................................................................................................... 10
Article VI     GENERAL MATTERS ............................................................................. 10
6.1.     Stock Certificates; Partly Paid Share ................................................................. 10
6.2.     Special Designation on Certificates ................................................................... 10
6.3.     Lost Certificates ................................................................................................. 11
6.4.     Construction; Definition ..................................................................................... 11
6.5.     Dividends ............................................................................................................ 11
6.6.     Fiscal Year .......................................................................................................... 11
6.7.     Seal ..................................................................................................................... 11
6.8.     Stock Transfer Agreements ................................................................................ 11
6.9.     Registered Stockholders ..................................................................................... 12
6.10.    Waiver of Notice ................................................................................................ 12
Article VII     NOTICE BY ELECTRONIC TRANSMISSION ...................................... 12
7.1.     Notice by Electronic Transmission .................................................................... 12
7.2.     Definition of Electronic Transmission ............................................................... 13
7.3.     Inapplicability .................................................................................................... 13
Article VIII     INDEMNIFICATION ............................................................................ 13
8.1.     Indemnification of Directors and Officers ......................................................... 13
8.2.     Indemnification of Others .................................................................................. 13
8.3.     Prepayment of Expenses .................................................................................... 14
8.4.     Determination; Claim ......................................................................................... 14
8.5.     Non-Exclusivity of Rights .................................................................................. 14
8.6.     Insurance ............................................................................................................ 14
8.7.     Other Indemnification ........................................................................................ 14
8.8.     Amendment or Repeal ........................................................................................ 14
Article IX     AMENDMENTS ....................................................................................... 14

-ii-

CONFIDENTIAL

## BYLAWS

## ARTICLE I    MEETINGS OF STOCKHOLDERS

1.1.    ***Place of Meetings***.  Meetings of stockholders of **VITAL PHARMACEUTICAL INTERNATIONAL SALES, INC.** (the "Corporation") shall be held at any place, within or outside the State of Delaware, determined by the Corporation's board of directors (the "Board"). The Board may, in its sole discretion, determine that a meeting of stockholders shall not be held at any place, but may instead be held solely by means of remote communication as authorized by Section 211(a)(2) of the Delaware General Corporation Law (the "DGCL"). In the absence of any such designation or determination, stockholders' meetings shall be held at the Corporation's principal executive office.

1.2.    ***Annual Meeting***.  An annual meeting of stockholders shall be held for the election of directors at such date and time as may be designated by resolution of the Board from time to time. Any other proper business may be transacted at the annual meeting. The Corporation shall not be required to hold an annual meeting of stockholders; provided that (a) the stockholders take action by written consent to elect directors and (b) the stockholders unanimously consent to such action or, if such consent is less than unanimous, all of the directorships to which directors could be elected at an annual meeting held at the effective time of such action are vacant and are filled by such action.

1.3.    ***Special Meeting***.  A special meeting of the stockholders may be called at any time by the Board, Chairperson of the Board, Chief Executive Officer or President (in the absence of a Chief Executive Officer) or by one or more stockholders holding shares in the aggregate entitled to cast not less than ten percent (10%) of the votes at that meeting.

If any person(s) other than the Board calls a special meeting, the request shall:

(a)    be in writing;

(b)    specify the time of such meeting and the general nature of the business proposed to be transacted; and

(c)    be delivered personally or sent by registered mail or by facsimile transmission to the Chairperson of the Board, the Chief Executive Officer, the President (in the absence of a Chief Executive Officer) or the Secretary of the Corporation.

The officer(s) receiving the request shall cause notice to be promptly given to the stockholders entitled to vote at such meeting, in accordance with the provisions of **Sections 1.4** and **1.5** of these bylaws, that a meeting will be held at the time requested by the person or persons calling the meeting. No business may be transacted at such special meeting other than the business specified in such notice to stockholders. Nothing contained in this paragraph of this **Section 1.3** shall be construed as limiting, fixing, or affecting the time when a meeting of stockholders called by action of the Board may be held.

1.4.    ***Notice of Stockholders' Meetings***.  All notices of meetings of stockholders shall be sent or otherwise given in accordance with either **Section 1.5** or **Section 7.1** of these bylaws

VPX-JHO0000001874

not less than ten (10) or more than sixty (60) days before the date of the meeting to each stockholder entitled to vote at such meeting. The notice shall specify the place, if any, date and hour of the meeting, the means of remote communication, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called.

1.5. ***Manner of Giving Notice; Affidavit of Notice***.    Notice of any meeting of stockholders shall be given:

(a)    if mailed, when deposited in the United States mail, postage prepaid, directed to the stockholder at his or her address as it appears on the Corporation's records; or

(b)    if electronically transmitted as provided in **Section 7.1** of these bylaws.

An affidavit of the Secretary or an Assistant Secretary of the Corporation or of the transfer agent or any other agent of the Corporation that the notice has been given by mail or by a form of electronic transmission, as applicable, shall, in the absence of fraud, be *prima facie* evidence of the facts stated therein.

1.6. ***Quorum***.    Except as otherwise provided by law, the certificate of incorporation or these bylaws, at each meeting of stockholders the presence in person or by proxy of the holders of shares of stock having a majority of the votes which could be cast by the holders of all outstanding shares of stock entitled to vote at the meeting shall be necessary and sufficient to constitute a quorum. If, however, such quorum is not present or represented at any meeting of the stockholders, then either (a) the chairperson of the meeting, or (b) the stockholders entitled to vote at the meeting, present in person or represented by proxy, shall have the power to adjourn the meeting from time to time, in the manner provided in **Section 1.7** of these bylaws, until a quorum is present or represented.

1.7. ***Adjourned Meeting; Notice***.    Any meeting of stockholders, annual or special, may adjourn from time to time to reconvene at the same or some other place, and notice need not be given of the adjourned meeting if the time, place, if any, thereof, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken. At the adjourned meeting, the Corporation may transact any business which might have been transacted at the original meeting. If the adjournment is for more than thirty (30) days, or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting.

1.8. ***Conduct of Business***.    Meetings of stockholders shall be presided over by the Chairperson of the Board, if any, or in his or her absence by the Vice Chairperson of the Board, if any, or in the absence of the foregoing persons by the Chief Executive Officer, or in the absence of the foregoing persons by the President, or in the absence of the foregoing persons by a Vice President, or in the absence of the foregoing persons by a chairperson designated by the Board, or in the absence of such designation by a chairperson chosen at the meeting. The Secretary shall act as secretary of the meeting, but in his or her absence the chairperson of the

-2-

VPX-JHO0000001875

meeting may appoint any person to act as secretary of the meeting. The chairperson of any meeting of stockholders shall determine the order of business and the procedure at the meeting, including such regulation of the manner of voting and the conduct of business.

1.9. ***Voting.*** The stockholders entitled to vote at any meeting of stockholders shall be determined in accordance with the provisions of **Section 1.11** of these bylaws, subject to Section 217 (relating to voting rights of fiduciaries, pledgors and joint owners of stock) and Section 218 (relating to voting trusts and other voting agreements) of the DGCL.

Except as may be otherwise provided in the certificate of incorporation, each stockholder entitled to vote at any meeting of stockholders shall be entitled to one vote for each share of capital stock held by such stockholder which has voting power upon the matter in question. Voting at meetings of stockholders need not be by written ballot and, unless otherwise required by law, need not be conducted by inspectors of election unless so determined by the holders of shares of stock having a majority of the votes which could be cast by the holders of all outstanding shares of stock entitled to vote thereon which are present in person or by proxy at such meeting. If authorized by the Board, the requirement of a written ballot for the election of directors shall be satisfied by a ballot submitted by electronic transmission (as defined in **Section 7.2** of these bylaws); provided that any such electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the stockholder or proxy holder.

At all meetings of stockholders for the election of directors a plurality of the votes cast shall be sufficient to elect. All other elections and questions shall, unless otherwise provided by law, the certificate of incorporation or these bylaws, be decided by the vote of the holders of shares of stock having a majority of the votes which could be cast by the holders of all shares of stock entitled to vote thereon which are present in person or represented by proxy at the meeting.

1.10. ***Stockholder Action by Written Consent Without a Meeting.*** Unless otherwise provided in the certificate of incorporation, any action required by the DGCL to be taken at any annual or special meeting of stockholders of a corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.

Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for such meeting had been the date that written consents signed by a sufficient number of holders to take the action were delivered to the Corporation as provided in Section 228 of the DGCL. In the event that the action which is consented to is such as would have required the filing of a certificate under any provision of the DGCL, if such action had been voted on by stockholders at a meeting thereof, the certificate filed under such provision shall state, in lieu of any statement required by such provision concerning any vote of stockholders, that written consent has been given in accordance with Section 228 of the DGCL.

-3-

VPX-JHO0000001876

1.11.  ***Record Date for Stockholder Notice; Voting; Giving Consents***.  In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or entitled to express consent to corporate action in writing without a meeting, or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board and which record date:

(a)  in the case of determination of stockholders entitled to notice of or to vote at any meeting of stockholders or adjournment thereof, shall, unless otherwise required by law, not be more than sixty nor less than ten days before the date of such meeting;

(b)  in the case of determination of stockholders entitled to express consent to corporate action in writing without a meeting, shall not be more than ten days after the date upon which the resolution fixing the record date is adopted by the Board; and

(c)  in the case of determination of stockholders for any other action, shall not be more than sixty days prior to such other action.

If no record date is fixed by the Board:

(a)  the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held;

(b)  the record date for determining stockholders entitled to express consent to corporate action in writing without a meeting when no prior action of the Board is required by law, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation in accordance with applicable law, or, if prior action by the Board is required by law, shall be at the close of business on the day on which the Board adopts the resolution taking such prior action; and

(c)  the record date for determining stockholders for any other purpose shall be at the close of business on the day on which the Board adopts the resolution relating thereto.

A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting, *provided* that the Board may fix a new record date for the adjourned meeting.

1.12.  ***Proxies***.  Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy authorized by an instrument in writing or by a transmission permitted by law filed in accordance with the procedure established for the meeting, but no such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period. The revocability of a proxy that states on its face that it is irrevocable shall be governed by the provisions of Section 212 of the DGCL.

-4-

CONFIDENTIAL

1.13.   ***List of Stockholders Entitled to Vote.***   The officer who has charge of the stock ledger of the Corporation shall prepare and make, at least ten (10) days before every meeting of stockholders, a complete list of the stockholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder. The Corporation shall not be required to include electronic mail addresses or other electronic contact information on such list. Such list shall be open to the examination of any stockholder, for any purpose germane to the meeting for a period of at least ten (10) days prior to the meeting: (a) on a reasonably accessible electronic network; provided that the information required to gain access to such list is provided with the notice of the meeting; or (b) during ordinary business hours, at the Corporation's principal executive office. In the event that the Corporation determines to make the list available on an electronic network, the Corporation may take reasonable steps to ensure that such information is available only to stockholders of the Corporation. If the meeting is to be held at a place, then the list shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be inspected by any stockholder who is present. If the meeting is to be held solely by means of remote communication, then the list shall also be open to the examination of any stockholder during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of the meeting. Such list shall presumptively determine the identity of the stockholders entitled to vote at the meeting and the number of shares held by each of them.

## ARTICLE II    DIRECTORS

2.1.   ***Powers.***   Subject to the provisions of the DGCL and any limitations in the certificate of incorporation or these bylaws relating to action required to be approved by the stockholders or by the outstanding shares, the business and affairs of the Corporation shall be managed and all corporate powers shall be exercised by or under the direction of the Board.

2.2.   ***Number of Directors.***   The number of directors shall be determined from time to time by resolution of the Board; provided that the Board shall consist of at least one (1) member. No reduction of the authorized number of directors shall have the effect of removing any director before that director's term of office expires.

2.3.   ***Election, Qualification and Term of Office of Directors.***   Except as provided in **Section 2.4** of these bylaws, directors shall be elected at each annual meeting of stockholders to hold office until the next annual meeting. Directors need not be stockholders unless so required by the certificate of incorporation or these bylaws. The certificate of incorporation or these bylaws may prescribe other qualifications for directors. Each director, including a director elected to fill a vacancy, shall hold office until such director's successor is elected and qualified or until such director's earlier death, resignation or removal.

2.4.   ***Resignation and Vacancies.***   Any director may resign at any time upon notice given in writing or by electronic transmission to the Corporation. When one or more directors so resigns and the resignation is effective at a future date, any officer or any stockholder or an executor, administrator, trustee or guardian of a stockholder, or other fiduciary entrusted with like responsibility for the person or estate of a stockholder, may call a special meeting of stockholders in accordance with the provisions of the certificate of incorporation or these bylaws,

CONFIDENTIAL                                                      VPX-JHO0000001878

or may apply to the Court of Chancery for a decree summarily ordering an election as provided in Section 211 of the DGCL, to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective, and each director so chosen shall hold office as provided in this section in the filling of other vacancies.

2.5.    ***Place of Meetings; Meetings by Telephone***.  The Board may hold meetings, both regular and special, either within or outside the State of Delaware.

Unless otherwise restricted by the certificate of incorporation or these bylaws, members of the Board, or any committee designated by the Board, may participate in a meeting of the Board, or any committee, by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and such participation in a meeting shall constitute presence in person at the meeting.

2.6.    ***Conduct of Business***.  Meetings of the Board shall be presided over by the Chairperson of the Board, if any, or in his or her absence by the Vice Chairperson of the Board, if any, or in the absence of the foregoing persons by a chairperson designated by the Board, or in the absence of such designation by a chairperson chosen at the meeting. The Secretary shall act as secretary of the meeting, but in his or her absence the chairperson of the meeting may appoint any person to act as secretary of the meeting.

2.7.    ***Regular Meetings***.  Regular meetings of the Board may be held without notice at such time and at such place as shall from time to time be determined by the Board.

2.8.    ***Special Meetings; Notice***.  Special meetings of the Board for any purpose or purposes may be called at any time by the Chairperson of the Board, the Chief Executive Officer, the President, the Secretary or any two directors.

Notice of the time and place of special meetings shall be:

        (a)     delivered personally by hand, by courier or by telephone;

        (b)     sent by United States first-class mail, postage prepaid;

        (c)     sent by facsimile; or

        (d)     sent by electronic mail;

directed to each director at that director's address, telephone number, facsimile number or electronic mail address, as the case may be, as shown on the Corporation's records.

If the notice is (i) delivered personally by hand, by courier or by telephone, (ii) sent by facsimile or (iii) sent by electronic mail, it shall be delivered or sent at least twenty-four (24) hours before the time of the holding of the meeting. If the notice is sent by United States mail, it shall be deposited in the United States mail at least four (4) days before the time of the holding of the meeting. Any oral notice may be communicated to the director. The notice need not specify the place of the meeting (if the meeting is to be held at the Corporation's principal executive office) nor the purpose of the meeting.

-6-

VPX-JHO0000001879

2.9.  **Quorum**.  At all meetings of the Board, a majority of the total number of directors shall constitute a quorum for the transaction of business. The vote of a majority of the directors present at any meeting at which a quorum is present shall be the act of the Board, except as may be otherwise specifically provided by statute, the certificate of incorporation or these bylaws. If a quorum is not present at any meeting of the Board, then the directors present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum is present.

A meeting at which a quorum is initially present may continue to transact business notwithstanding the withdrawal of directors, if any action taken is approved by at least a majority of the required quorum for that meeting.

2.10.  **Board Action by Written Consent Without a Meeting**.  Unless otherwise restricted by the certificate of incorporation or these bylaws, any action required or permitted to be taken at any meeting of the Board, or of any committee thereof, may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission and the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of the Board or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

2.11.  **Fees and Compensation of Directors**.  Unless otherwise restricted by the certificate of incorporation or these bylaws, the Board shall have the authority to fix the compensation of directors.

2.12.  **Approval of Loans to Officers**.  The Corporation may lend money to, or guarantee any obligation of, or otherwise assist any officer or other employee of the Corporation or of its subsidiary, including any officer or employee who is a director of the Corporation or its subsidiary, whenever, in the judgment of the Board, such loan, guaranty or assistance may reasonably be expected to benefit the Corporation. The loan, guaranty or other assistance may be with or without interest and may be unsecured, or secured in such manner as the Board shall approve, including, without limitation, a pledge of shares of stock of the Corporation.

2.13.  **Removal of Directors**.  Any director or the entire Board may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of directors.

No reduction of the authorized number of directors shall have the effect of removing any director prior to the expiration of such director's term of office.

## ARTICLE III  COMMITTEES

3.1.  **Committees of Directors**.  The Board may designate one or more committees, each committee to consist of one or more of the directors of the Corporation. The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not such member or members constitute a

-7-

quorum, may unanimously appoint another member of the Board to act at the meeting in the place of any such absent or disqualified member. Any such committee, to the extent provided in the resolution of the Board or in these bylaws, shall have and may exercise all the powers and authority of the Board in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers that may require it; but no such committee shall have the power or authority to (a) approve or adopt, or recommend to the stockholders, any action or matter expressly required by the DGCL to be submitted to stockholders for approval, or (b) adopt, amend or repeal any bylaw of the Corporation.

3.2.    ***Committee Minutes***.  Each committee shall keep regular minutes of its meetings and report the same to the Board when required.

3.3.    ***Meetings and Action of Committees***.  Meetings and actions of committees shall be governed by, and held and taken in accordance with, the provisions of the following Sections of these bylaws:

    (a)    **Section 2.5** (Place of Meetings; Meetings by Telephone);

    (b)    **Section 2.7** (Regular Meetings);

    (c)    **Section 2.8** (Special Meetings; Notice);

    (d)    **Section 2.9** (Quorum);

    (e)    **Section 2.10** (Board Action by Written Consent Without a Meeting); and

    (f)    **Section 6.10** (Waiver of Notice)

with such changes in the context of those bylaws as are necessary to substitute the committee and its members for the Board and its members. *However*:

    (a)    the time of regular meetings of committees may be determined either by resolution of the Board or by resolution of the committee;

    (b)    special meetings of committees may also be called by resolution of the Board; and

    (c)    notice of special meetings of committees shall also be given to all alternate members, who shall have the right to attend all meetings of the committee. The Board may adopt rules for the government of any committee not inconsistent with the provisions of these bylaws.

### ARTICLE IV   OFFICERS

4.1.    ***Officers***.  The officers of the Corporation shall consist of a President, and if elected by the Board of Directors by a resolution, one or more Vice Presidents, a Treasurer and a Secretary. Any such other officers as may be appointed in accordance with the provisions of these bylaws. Any number of offices may be held by the same person.

CONFIDENTIAL                                                                VPX-JHO0000001881

4.2. ***Appointment of Officers.*** The Board shall appoint the officers of the Corporation, except such officers as may be appointed in accordance with the provisions of **Sections 4.3** and **4.5** of these bylaws, subject to the rights, if any, of an officer under any contract of employment.

4.3. ***Subordinate Officers.*** The Board may appoint, or empower the Chief Executive Officer or, in the absence of a Chief Executive Officer, the President, to appoint, such other officers and agents as the business of the Corporation may require. Each of such officers and agents shall hold office for such period, have such authority, and perform such duties as are provided in these bylaws or as the Board may from time to time determine.

4.4. ***Removal and Resignation of Officers.*** Subject to the rights, if any, of an officer under any contract of employment, any officer may be removed, either with or without cause, by an affirmative vote of the majority of the Board at any regular or special meeting of the Board or, except in the case of an officer chosen by the Board, by any officer upon whom such power of removal may be conferred by the Board.

Any officer may resign at any time by giving written notice to the Corporation. Any resignation shall take effect at the date of the receipt of that notice or at any later time specified in that notice. Unless otherwise specified in the notice of resignation, the acceptance of the resignation shall not be necessary to make it effective. Any resignation is without prejudice to the rights, if any, of the Corporation under any contract to which the officer is a party.

4.5. ***Vacancies in Offices.*** Any vacancy occurring in any office of the Corporation shall be filled by the Board or as provided in **Section 4.2** of these bylaws.

4.6. ***Representation of Shares of Other Corporations.*** Unless otherwise directed by the Board, the President or any other person authorized by the Board or the President is authorized to vote, represent and exercise on behalf of the Corporation all rights incident to any and all shares of any other corporation or corporations standing in the name of the Corporation. The authority granted herein may be exercised either by such person directly or by any other person authorized to do so by proxy or power of attorney duly executed by such person having the authority.

4.7. ***Authority and Duties of Officers.*** Except as otherwise provided in these bylaws, the officers of the Corporation shall have such powers and duties in the management of the Corporation as may be designated from time to time by the Board and, to the extent not so provided, as generally pertain to their respective offices, subject to the control of the Board.

4.8. ***Salaries of Officers.*** Unless otherwise restricted by the certificate of incorporation or these bylaws, the Board shall have the authority to determine the compensation of the officers of the Corporation.

## ARTICLE V  RECORDS AND REPORTS

5.1. ***Maintenance and Inspection of Records.*** The Corporation shall, either at its principal executive office or at such place or places as designated by the Board, keep a record of its stockholders listing their names and addresses and the number and class of shares held by

CONFIDENTIAL                                                                                      VPX-JHO0000001882

each stockholder, a copy of these bylaws as amended to date, accounting books, and other records.

Any stockholder of record, in person or by attorney or other agent, shall, upon written demand under oath stating the purpose thereof, have the right during the usual hours for business to inspect for any proper purpose the Corporation's stock ledger, a list of its stockholders, and its other books and records and to make copies or extracts therefrom. A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder. In every instance where an attorney or other agent is the person who seeks the right to inspection, the demand under oath shall be accompanied by a power of attorney or such other writing that authorizes the attorney or other agent so to act on behalf of the stockholder. The demand under oath shall be directed to the Corporation at its registered office in Delaware or at its principal executive office.

5.2.    ***Inspection by Directors***.    Any director shall have the right to examine the Corporation's stock ledger, a list of its stockholders, and its other books and records for a purpose reasonably related to his or her position as a director. The Court of Chancery is hereby vested with the exclusive jurisdiction to determine whether a director is entitled to the inspection sought. The Court may summarily order the Corporation to permit the director to inspect any and all books and records, the stock ledger, and the stock list and to make copies or extracts therefrom. The Court may, in its discretion, prescribe any limitations or conditions with reference to the inspection, or award such other and further relief as the Court may deem just and proper.

5.3.    ***Annual Report***.    The Corporation shall cause an annual report to be sent to the stockholders of the Corporation to the extent required by applicable law. If and so long as there are fewer than one hundred (100) holders of record of the Corporation's shares, the requirement of sending of an annual report to the stockholders of the Corporation is expressly waived (to the extent permitted under applicable law).

## ARTICLE VI    GENERAL MATTERS

6.1.    ***Stock Certificates; Partly Paid Share***.    The shares of the Corporation may, but are not required to be, represented by certificates.

The Corporation may issue the whole or any part of its shares as partly paid and subject to call for the remainder of the consideration to be paid therefor. Upon the face or back of each stock certificate issued to represent any such partly paid shares, upon the books and records of the Corporation in the case of uncertificated partly paid shares, the total amount of the consideration to be paid therefor and the amount paid thereon shall be stated. Upon the declaration of any dividend on fully paid shares, the Corporation shall declare a dividend upon partly paid shares of the same class, but only upon the basis of the percentage of the consideration actually paid thereon.

6.2.    ***Special Designation on Certificates***.    If the Corporation is authorized to issue more than one class of stock or more than one series of any class, then the powers, the designations, the preferences, and the relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such

-10-

                                                                 VPX-JHO0000001883

preferences and/or rights shall be set forth in full or summarized on the face or back of the certificate that the Corporation shall issue to represent such class or series of stock; provided that, except as otherwise provided in Section 202 of the DGCL, in lieu of the foregoing requirements there may be set forth on the face or back of the certificate that the Corporation shall issue to represent such class or series of stock a statement that the Corporation will furnish without charge to each stockholder who so requests the powers, the designations, the preferences, and the relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights.

6.3.    **Lost Certificates**.  Except as provided in this **Section 6.3** of these bylaws, no new certificates for shares shall be issued to replace a previously issued certificate unless the latter is surrendered to the Corporation and cancelled at the same time. The Corporation may issue a new certificate of stock or uncertificated shares in the place of any certificate theretofore issued by it, alleged to have been lost, stolen or destroyed, and the Corporation may require the owner of the lost, stolen or destroyed certificate, or such owner's legal representative, to give the Corporation a bond sufficient to indemnify it against any claim that may be made against it on account of the alleged loss, theft or destruction of any such certificate or the issuance of such new certificate or uncertificated shares.

6.4.    **Construction; Definition**.  Unless the context requires otherwise, the general provisions, rules of construction, and definitions in the DGCL shall govern the construction of these bylaws. Without limiting the generality of this provision, the singular number includes the plural, the plural number includes the singular, and the term "person" includes both a corporation and a natural person.

6.5.    **Dividends**.  The Board, subject to any restrictions contained in either (a) the DGCL, or (b) the certificate of incorporation, may declare and pay dividends upon the shares of its capital stock. Dividends may be paid in cash, in property, or in shares of the Corporation's capital stock.

The Board may set apart out of any of the funds of the Corporation available for dividends a reserve or reserves for any proper purpose and may abolish any such reserve. Such purposes shall include but not be limited to equalizing dividends, repairing or maintaining any property of the Corporation, and meeting contingencies.

6.6.    **Fiscal Year**.  The fiscal year of the Corporation shall be fixed by resolution of the Board and may be changed by the Board.

6.7.    **Seal**.  The Corporation may adopt a corporate seal, which shall be in such form as may be approved from time to time by the Board. The Corporation may use the corporate seal by causing it or a facsimile thereof to be impressed or affixed or in any other manner reproduced.

6.8.    **Stock Transfer Agreements**.  The Corporation shall have power to enter into and perform any agreement with any number of stockholders of any one or more classes of stock of the Corporation to restrict the transfer of shares of stock of the Corporation of any one or more classes owned by such stockholders in any manner not prohibited by the DGCL.

-11-

CONFIDENTIAL

6.9.    ***Registered Stockholders***.  The Corporation:

(a)    shall be entitled to recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends and to vote as such owner;

(b)    shall be entitled to hold liable for calls and assessments the person registered on its books as the owner of shares; and

(c)    shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of another person, whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of Delaware.

6.10.    ***Waiver of Notice***.  Whenever notice is required to be given under any provision of the DGCL, the certificate of incorporation or these bylaws, a written waiver, signed by the person entitled to notice, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time of the event for which notice is to be given, shall be deemed equivalent to notice. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the stockholders need be specified in any written waiver of notice or any waiver by electronic transmission unless so required by the certificate of incorporation or these bylaws.

## ARTICLE VII NOTICE BY ELECTRONIC TRANSMISSION

7.1.    ***Notice by Electronic Transmission***.  Without limiting the manner by which notice otherwise may be given effectively to stockholders pursuant to the DGCL, the certificate of incorporation or these bylaws, any notice to stockholders given by the Corporation under any provision of the DGCL, the certificate of incorporation or these bylaws shall be effective if given by a form of electronic transmission consented to by the stockholder to whom the notice is given. Any such consent shall be revocable by the stockholder by written notice to the Corporation. Any such consent shall be deemed revoked if:

(a)    the Corporation is unable to deliver by electronic transmission two consecutive notices given by the Corporation in accordance with such consent; and

(b)    such inability becomes known to the Secretary or an Assistant Secretary of the Corporation or to the transfer agent, or other person responsible for the giving of notice.

However, the inadvertent failure to treat such inability as a revocation shall not invalidate any meeting or other action.

Any notice given pursuant to the preceding paragraph shall be deemed given:

(a)    if by facsimile telecommunication, when directed to a number at which the stockholder has consented to receive notice;

-12-

VPX-JHO0000001885

(b)    if by electronic mail, when directed to an electronic mail address at which the stockholder has consented to receive notice;

(c)    if by a posting on an electronic network together with separate notice to the stockholder of such specific posting, upon the later of (i) such posting and (ii) the giving of such separate notice; and

(d)    if by any other form of electronic transmission, when directed to the stockholder.

An affidavit of the Secretary or an Assistant Secretary or of the transfer agent or other agent of the Corporation that the notice has been given by a form of electronic transmission shall, in the absence of fraud, be *prima facie* evidence of the facts stated therein.

7.2.    ***Definition of Electronic Transmission.***  An "electronic transmission" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved, and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process.

7.3.    ***Inapplicability.***  Notice by a form of electronic transmission shall not apply to Sections 164, 296, 311, 312 or 324 of the DGCL.

## ARTICLE VIII  INDEMNIFICATION

8.1.    ***Indemnification of Directors and Officers.***  The Corporation shall indemnify and hold harmless, to the fullest extent permitted by the DGCL as it presently exists or may hereafter be amended, any director or officer of the Corporation who was or is made or is threatened to be made a party or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (a "Proceeding") by reason of the fact that he or she, or a person for whom he or she is the legal representative, is or was a director, officer, employee or agent of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, enterprise or non-profit entity, including service with respect to employee benefit plans, against all liability and loss suffered and expenses reasonably incurred by such person in connection with any such Proceeding. The Corporation shall be required to indemnify a person in connection with a Proceeding initiated by such person only if the Proceeding was authorized by the Board.

8.2.    ***Indemnification of Others.***  The Corporation shall have the power to indemnify and hold harmless, to the extent permitted by applicable law as it presently exists or may hereafter be amended, any employee or agent of the Corporation who was or is made or is threatened to be made a party or is otherwise involved in any Proceeding by reason of the fact that he or she, or a person for whom he or she is the legal representative, is or was an employee or agent of the Corporation or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, enterprise or non-profit entity, including service with respect to employee benefit plans, against all liability and loss suffered and expenses reasonably incurred by such person in connection with any such Proceeding.

-13-

VPX-JHO0000001886

8.3.    ***Prepayment of Expenses***.  The Corporation shall pay the expenses incurred by any officer or director of the Corporation, and may pay the expenses incurred by any employee or agent of the Corporation, in defending any Proceeding in advance of its final disposition; *provided* that the payment of expenses incurred by a person in advance of the final disposition of the Proceeding shall be made only upon receipt of an undertaking by the person to repay all amounts advanced if it should be ultimately determined that the person is not entitled to be indemnified under this **Article VIII** or otherwise.

8.4.    ***Determination; Claim***.  If a claim for indemnification or payment of expenses under this **Article VIII** is not paid in full within sixty (60) days after a written claim therefor has been received by the Corporation the claimant may file suit to recover the unpaid amount of such claim and, if successful in whole or in part, shall be entitled to be paid the expense of prosecuting such claim. In any such action the Corporation shall have the burden of proving that the claimant was not entitled to the requested indemnification or payment of expenses under applicable law.

8.5.    ***Non-Exclusivity of Rights***.  The rights conferred on any person by this **Article VIII** shall not be exclusive of any other rights such person may have or hereafter acquire under any statute, provision of the certificate of incorporation, these bylaws, agreement, vote of stockholders or disinterested directors or otherwise.

8.6.    ***Insurance***.  The Corporation may purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against him or her and incurred by him or her in any such capacity, or arising out of his or her status as such, whether or not the Corporation would have the power to indemnify him or her against such liability under the provisions of the DGCL.

8.7.    ***Other Indemnification***.  The Corporation's obligation, if any, to indemnify any person who was or is serving at its request as a director, officer, employee or agent of another corporation, partnership, joint venture, trust, enterprise or non-profit entity shall be reduced by any amount such person may collect as indemnification from such other corporation, partnership, joint venture, trust, enterprise or non-profit enterprise.

8.8.    ***Amendment or Repeal***.  Any repeal or modification of the foregoing provisions of this **Article VIII** shall not adversely affect any right or protection hereunder of any person in respect of any act or omission occurring prior to the time of such repeal or modification.

## ARTICLE IX    AMENDMENTS

These bylaws may be adopted, amended or repealed by the stockholders entitled to vote. However, the Corporation may, in its certificate of incorporation, confer the power to adopt, amend or repeal bylaws upon the directors. The fact that such power has been so conferred upon the directors shall not divest the stockholders of the power, nor limit their power to adopt, amend or repeal bylaws.

-14-

## CERTIFICATE OF ADOPTION OF BYLAWS
### OF
## VITAL PHARMACEUTICALS INTERNATIONAL SALES, INC.

The undersigned certifies that he is the duly elected, qualified and acting President of **VITAL PHARMACEUTICALS INTERNATIONAL SALES, INC.**, a Delaware corporation (the "Corporation"), and that the foregoing bylaws were adopted as the bylaws of the Corporation on August 13, 2020, by the sole director of the board of directors of the Corporation.

IN WITNESS WHEREOF, the undersigned has executed this certificate as of August 13, 2020.



**JOHN H. OWOC**

*ACTIVE 51986857v1*

VPX-JHO0000001888

**BYLAWS**

**OF**

**BANG ENERGY CANADA, INC.**

**(a Florida Corporation)**

VPX-JHO0000001889

## INDEX

**PAGE**

ARTICLE 1 OFFICES.................................................................................................................. 1

    **Section 1.1    Registered Office** ................................................................................. 1

    **Section 1.2    Other Offices** ...................................................................................... 1

ARTICLE 2 MEETINGS OF SHAREHOLDERS ........................................................................ 1

    **Section 2.1    Place** .................................................................................................... 1

    **Section 2.2    Time of Annual Meeting**.................................................................... 1

    **Section 2.3    Call of Special Meetings** ................................................................... 1

    **Section 2.4    Conduct of Meetings** ......................................................................... 1

    **Section 2.5    Notice and Waiver of Notice** ............................................................ 1

    **Section 2.6    Quorum** ............................................................................................. 2

    **Section 2.7    Voting per Share** .............................................................................. 2

    **Section 2.8    Voting of Shares** ............................................................................... 3

    **Section 2.9    Proxies**............................................................................................... 3

    **Section 2.10    Shareholder List** .............................................................................. 4

    **Section 2.11    Action Without Meeting** .................................................................. 4

    **Section 2.12    Fixing Record Date** ......................................................................... 4

    **Section 2.13    Inspectors and Judges**..................................................................... 5

    **Section 2.14    Voting for Directors** ........................................................................ 5

    **Section 2.15    Voting Trusts** ................................................................................... 5

    **Section 2.16    Shareholders' Agreements** ............................................................. 5

ARTICLE 3 DIRECTORS ........................................................................................................... 6

    **Section 3.1    Number, Election and Term** ............................................................ 6

    **Section 3.2    Vacancies** .......................................................................................... 6

    **Section 3.3    Powers** .............................................................................................. 6

    **Section 3.4    Duties of Directors** .......................................................................... 6

    **Section 3.5    Place of Meetings**............................................................................. 7

    **Section 3.6    Annual Meeting** ............................................................................... 7

    **Section 3.7    Regular Meetings** ............................................................................ 7

    **Section 3.8    Special Meetings and Notice** .......................................................... 7

i

VPX-JHO0000001890

**Section 3.9**    **Quorum; Required Votes Presumption of Assent** ................................. 7

**Section 3.10**    **Action Without Meeting** ........................................................................ 8

**Section 3.11**    **Conference Telephone or Similar Communications Equipment Meetings** ............................................................................................... 8

**Section 3.12**    **Committees** .......................................................................................... 8

**Section 3.13**    **Compensation of Directors** .................................................................. 8

**Section 3.14**    **Chairman of the Board** ........................................................................ 9

**Section 3.15**    **Removal of Directors** .......................................................................... 9

**Section 3.16**    **Director Conflicts of Interest** ............................................................. 9

ARTICLE 4 OFFICERS ........................................................................................................ 9

**Section 4.1**    **Positions** .............................................................................................. 9

**Section 4.2**    **Election of Specified Officers by Board** .............................................. 9

**Section 4.3**    **Election or Appointment of Other Officers** .......................................... 9

**Section 4.4**    **Salaries** ............................................................................................. 10

**Section 4.5**    **Term; Resignation** ............................................................................. 10

**Section 4.6**    **President** ............................................................................................ 10

**Section 4.7**    **Vice Presidents** ................................................................................. 10

**Section 4.8**    **Secretary** ........................................................................................... 10

**Section 4.9**    **Treasurer** .......................................................................................... 11

**Section 4.10**    **Other Officers, Employees and Agents** .............................................. 11

ARTICLE 5 CERTIFICATES FOR SHARES ..................................................................... 11

**Section 5.1**    **Issue of Certificates** ........................................................................... 11

**Section 5.2**    **Legends for Preferences and Restrictions on Transfer** ....................... 11

**Section 5.3**    **Facsimile Signatures** ......................................................................... 12

**Section 5.4**    **Lost Certificates** ................................................................................ 12

**Section 5.5**    **Transfer of Shares** ............................................................................. 12

**Section 5.6**    **Registered Shareholders** .................................................................... 12

ARTICLE 6 INDEMNIFICATION ....................................................................................... 12

ARTICLE 7 BOOKS AND RECORDS ................................................................................. 13

**Section 7.1**    **Books and Records** ............................................................................ 13

**Section 7.2**    **Shareholders' Inspection Rights** ........................................................ 13

ii

ARTICLE 8 GENERAL PROVISIONS ......................................................................... 14

    **Section 8.1**   **Dividends** ............................................................................. **14**

    **Section 8.2**   **Reserves** ............................................................................... **14**

    **Section 8.3**   **Checks** .................................................................................. **14**

    **Section 8.4**   **Fiscal Year** .......................................................................... **14**

    **Section 8.5**   **Seal** ...................................................................................... **14**

    **Section 8.6**   **Gender** ................................................................................. **14**

ARTICLE 9 AMENDMENTS OF BYLAWS ............................................................. 14

CONFIDENTIAL

VPX-JHO0000001892

# BYLAWS OF

## BANG ENERGY CANADA, INC.

### ARTICLE 1
### OFFICES

**THESE BYLAWS** (these "Bylaws") of Bang Energy Canada, Inc., a Florida corporation (the "Corporation"), are made as of the 13th day of August, 2020.

**Section 1.1    Registered Office**.  The registered office of the Corporation shall be such location as the Board of Directors of the Corporation (the "Board of Directors" or "Board") may designate from time to time.

**Section 1.2    Other Offices**.  The Corporation also may have offices at such other places, either within or without the State of Florida, as the Board of Directors may designate from time to time or as the business of the Corporation may require.

### ARTICLE 2
### MEETINGS OF SHAREHOLDERS

**Section 2.1    Place**.  All annual meetings of shareholders of the Corporation shall be held at such place, within or without the State of Florida, as may be designated by the Board of Directors and stated in the notice of the meeting or in a duly executed waiver of notice thereof. Special meetings of shareholders may be held at such place, within or without the State of Florida, and at such time as shall be stated in the notice of the meeting or in a duly executed waiver of notice thereof.

**Section 2.2    Time of Annual Meeting**.  Annual meetings of shareholders shall be held on such date and at such time fixed, from time to time, by the Board of Directors, provided that there shall be an annual meeting held every year at which the shareholders shall elect a Board of Directors and transact such other business as may properly be brought before the meeting.

**Section 2.3    Call of Special Meetings**.  Special meetings of the shareholders shall be held if called by the Board of Directors, the President, or if the holders of not less than fifty percent (50%) of all the votes entitled to be cast on any issue proposed to be considered at the proposed special meeting sign, date, and deliver to the Secretary one or more written demands for the meeting describing the purpose or purposes for which it is to be held.  Business transacted at any special meeting shall be confined to the purposes stated in the notice thereof.

**Section 2.4    Conduct of Meetings**.  The Chairman of the Board (or in his absence, the President or such other designee of the Chairman of the Board) shall preside at the annual and special meetings of shareholders and shall be given full discretion in establishing the rules and procedures to be followed in conducting the meetings, except as otherwise provided by law or in these Bylaws.

**Section 2.5    Notice and Waiver of Notice**.  Except as otherwise provided by law, written or printed notice stating the place, day and hour of the meeting and, in the case of a

                                                                      VPX-JHO0000001893

special meeting, the purpose or purposes for which the meeting is called, shall be delivered not less than ten (10) nor more than sixty (60) days before the day of the meeting, either personally or by first-class mail, by or at the direction of the President, the Secretary, or the officer or person calling the meeting, to each shareholder of record entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail addressed to the shareholder at his address as it appears on the stock transfer books of the Corporation, with postage thereon prepaid. If a meeting is adjourned to another time and/or place, and if an announcement of the adjourned time and/or place is made at the meeting, it shall not be necessary to give notice of the adjourned meeting unless the Board of Directors, after adjournment, fixes a new record date for the adjourned meeting. Whenever any notice is required to be given to any shareholder, a waiver thereof in writing signed by the person or persons entitled to such notice, whether signed before, during or after the time of the meeting stated therein, and delivered to the Corporation for inclusion in the minutes or filing with the corporate records, shall be equivalent to the giving of such notice. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the shareholders need be specified in any written waiver of notice. Attendance of a person at a meeting shall constitute a waiver of (a) lack of or defective notice of such meeting, unless the person objects at the beginning to the holding of the meeting or the transacting of any business at the meeting, or (b) lack of defective notice of a particular matter at a meeting that is not within the purpose or purposes described in the meeting notice, unless the person objects to considering such matter when it is presented.

**Section 2.6    Quorum**.  Shares entitled to vote as a separate voting group may take action on a matter at a meeting only if a quorum of these shares exists with respect to that matter. Except as otherwise provided in the Articles of Incorporation of the Corporation (the "Articles of Incorporation") or by law, a majority of the shares entitled to vote on the matter by each voting group, represented in person or by proxy, shall constitute a quorum at any meeting of shareholders.  If a quorum is present, the affirmative vote of the majority of the shares represented at the meeting and entitled to vote on the subject matter shall be the act of the shareholders unless otherwise provided in the Articles of Incorporation, these Bylaws or by law. If less than a majority of outstanding shares entitled to vote are represented at a meeting, a majority of the shares so represented may adjourn the meeting from time to time without further notice.  After a quorum has been established at any shareholders' meeting, the subsequent withdrawal of shareholders, so as to reduce the number of shares entitled to vote at the meeting below the number required for a quorum, shall not affect the validity of any action taken at the meeting or any adjournment thereof.  Once a share is represented for any purpose at a meeting, it is deemed present for quorum purposes for the remainder of the meeting and for any adjournment of that meeting unless a new record date is or must be set for that adjourned meeting.

**Section 2.7    Voting per Share**.  Except as otherwise provided in the Articles of Incorporation or by law, each shareholder is entitled to one (1) vote for each outstanding share held by him on each matter voted at a shareholders' meeting.  Shares of stock of the Corporation owned by another corporation, the majority of the voting stock of which is owned or controlled by the Corporation, and shares of stock of the Corporation held by it in a fiduciary capacity shall not be voted, directly or indirectly, at any meeting, and shall not be counted in determining the

2

VPX-JHO0000001894

total number of shares outstanding at any given time.  At each election of directors, every shareholder entitled to vote at such election shall have the right to vote, in person or by proxy, the number of shares owned by him for as many persons as there are directors to be elected at that time and for whose election he has a right to vote.

  **Section 2.8 Voting of Shares**.  A shareholder may vote at any meeting of shareholders of the Corporation, either in person or by proxy.  Shares standing in the name of another corporation, domestic or foreign, may be voted by the officer, agent or proxy designated by the bylaws of such corporate shareholder or, in the absence of any applicable bylaw, by such person or persons as the board of directors of the corporate shareholder may designate.  In the absence of any such designation, or, in case of conflicting designation by the corporate shareholder, the president, any vice president, the secretary and the treasurer of the corporate shareholder, in that order, shall be presumed to be fully authorized to vote such shares.  Shares held by an administrator, executor, guardian, personal representative, or conservator may be voted by him, either in person or by proxy, without a transfer of such shares into his name.  Shares standing in the name of a trustee may be voted by him, either in person or by proxy, but no trustee shall be entitled to vote shares held by him without a transfer of such shares into his name or the name of his nominee.  Shares held by or under the control of a receiver, a trustee in bankruptcy proceedings, or an assignee for the benefit of creditors may be voted by such person without the transfer thereof into his name.  If shares stand of record in the names of two or more persons, whether fiduciaries, members of a partnership, joint tenants, tenants in common, tenants by the entirety or otherwise, or if two or more persons have the same fiduciary relationship respecting the same shares, unless the Secretary of the Corporation is given notice to the contrary and is furnished with a copy of the instrument or order appointing them or creating the relationship wherein it is so provided, then acts with respect to voting shall have the following effect:  (a) if only one votes, in person or by proxy, his act binds all; (b) if more than one vote, in person or by proxy, the act of the majority so voting binds all; (c) if more than one vote, in person or by proxy, but the vote is evenly split on any particular matter, each faction is entitled to vote the share or shares in question proportionally; or (d) if the instrument or order so filed shows that any such tenancy is held in unequal interest, a majority or a vote evenly split for purposes hereof shall be a majority or a vote evenly split in interest.  A shareholder whose shares are pledged shall be entitled to vote such shares until the shares have been transferred into the name of the pledgee, and thereafter the pledgee or his nominee shall be entitled to vote the shares so transferred.  On or after the date on which written notice of redemption of redeemable shares has been mailed to the holders thereof and a sum sufficient to redeem such shares has been deposited with a bank or trust company with irrevocable instrument and authority to pay the redemption price to the holders thereof upon surrender of certificates therefor, such shares shall not be entitled to vote on any matter and shall not be deemed to be outstanding shares.  The principles of this paragraph shall apply, insofar as possible, to execution of proxies, waivers, consents, or objections and for the purpose of ascertaining the presence of a quorum.

  **Section 2.9 Proxies**.  Any shareholder of the Corporation, other person entitled to vote on behalf of a shareholder pursuant to law, or attorney-in-fact for such persons may vote the shareholder's shares in person or by proxy.  Any shareholder of the Corporation may appoint a proxy to vote or otherwise act for him by signing an appointment form, either personally or by his attorney-in-fact.  An executed telegram or cablegram appearing to have been transmitted by

3

VPX-JHO0000001895

such person, or a photographic, photostatic, or equivalent reproduction of an appointment form, shall be deemed a sufficient appointment form. An appointment of a proxy is effective when received by the Secretary of the Corporation or such other officer or agent which is authorized to tabulate votes, and shall be valid for up to 11 months, unless a longer period is expressly provided in the appointment form. The death or incapacity of the shareholder appointing a proxy does not affect the right of the Corporation to accept the proxy's authority unless notice of the death or incapacity is received by the secretary or other officer or agent authorized to tabulate votes before the proxy exercises his authority under the appointment. An appointment of a proxy is revocable by the shareholder unless the appointment is coupled with an interest.

**Section 2.10   Shareholder List**.   After fixing a record date for a meeting of shareholders, the Corporation shall prepare an alphabetical list of the names of all its shareholders who are entitled to notice of the meeting, arranged by voting group with the address of, and the number and class and series, if any, of shares held by each. The shareholders' list must be available for inspection by any shareholder for a period of ten (10) days prior to the meeting or such shorter time as exists between the record date and the meeting and continuing through the meeting at the Corporation's principal office, at a place identified in the meeting notice in the city where the meeting will be held, or at the office of the Corporation's transfer agent or registrar. Any shareholder of the Corporation or his agent or attorney is entitled on written demand to inspect the shareholders' list (subject to the requirements of law), during regular business hours and at his expense, during the period it is available for inspection. The Corporation shall make the shareholders' list available at the meeting of shareholders, and any shareholder or his agent or attorney is entitled to inspect the list at any time during the meeting or any adjournment. If the requirements of this Section have not been substantially complied with, the meeting on demand of any shareholders in person or by proxy, shall be adjourned until the requirements are complied with. If no such demand is made, failure to comply with the requirements of this Section shall not affect the validity of any action taken at such meeting.

**Section 2.11   Action Without Meeting**.   Any action required by law to be taken at a meeting of shareholders, or any action that may be taken at a meeting of shareholders, may be taken without a meeting or notice if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock constituting the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted with respect to the subject matter thereof, and such consent shall have the same force and effect as a vote of shareholders taken at such a meeting. Within ten days after obtaining such authorization by written consent, notice shall be given to those shareholders who have not consented in writing. The notice shall fairly summarize the material features of the authorized action and, if the action be a merger, consolidation or sale or exchange of assets for which dissenters rights are provided by law, the notice shall contain a clear statement of the right of shareholders dissenting therefrom to be paid the fair value of their shares upon compliance with further provisions as provided by law regarding the rights of dissenting shareholders.

**Section 2.12   Fixing Record Date**.   For the purpose of determining shareholders entitled to notice of or to vote at any meeting of shareholders or any adjournment thereof or entitled to receive payment of any dividend, or in order to make a determination of shareholders for any other proper purposes, the Board of Directors may fix in advance a date as the record

4

date for any such determination of shareholders, such date in any case to be not more than sixty (60) days, and, in case of a meeting of shareholders, not less than ten (10) days, prior to the date on which the particular action requiring such determination of shareholders is to be taken. If no record date is fixed for the determination of shareholders entitled to notice of or to vote at a meeting of shareholders, or shareholders entitled to receive payment of a dividend, the date on which the notice of the meeting is mailed or the date on which the resolutions of the Board of Directors declaring such dividend is adopted, as the case may be, shall be the record date for such determination of shareholders. When a determination of shareholders entitled to vote at any meeting of shareholders has been made as provided in this Section, such determination shall apply to any adjournment thereof, except where the Board of Directors fixes a new record date for the adjourned meeting or as required by law.

**Section 2.13   Inspectors and Judges**.   The Board of Directors in advance of any meeting may, but need not, appoint one or more inspectors of election or judges of the vote, as the case may be, to act at the meeting or any adjournment(s) thereof. If any inspector or inspectors, or judge or judges, are not appointed, the person presiding at the meeting may, but need not, appoint one or more inspectors or judges. In case any person who may be appointed as an inspector or judge fails to appear or act, the vacancy may be filled by the Board of Directors in advance of the meeting, or at the meeting by the person presiding thereat. The inspectors or judges, if any, shall determine the number of shares of stock outstanding and the voting power of each, the shares of stock represented at the meeting, the existence of a quorum, the validity and effect of proxies, and shall receive votes, ballots and consents, hear and determine all challenges and questions arising in connection with the right to vote, count and tabulate votes, ballots and consents, determine the result, and do such acts as are proper to conduct the election or vote with fairness to all shareholders. On request of the person presiding at the meeting, the inspector or inspectors or judge or judges, if any, shall make a report in writing of any challenge, question or matter determined by him or them, and execute a certificate of any fact found by him or them.

**Section 2.14   Voting for Directors**.   Unless otherwise provided in the Articles of Incorporation, directors shall be elected by a plurality of the votes cast by the shares entitled to vote in the election at a meeting at which a quorum is present.

**Section 2.15   Voting Trusts**.   Any number of shareholders of the Corporation may create a voting trust for the purpose of conferring upon a trustee or trustees the right to vote or otherwise represent their shares, as provided by law. Where the counterpart of a voting trust agreement and the copy of the record of the holders of voting trust certificates has been deposited with the Corporation as provided by law, such documents shall be subject to the same right of examination by a shareholder of the Corporation, in person or by agent or attorney, as are the books and records of the Corporation, and such counterpart and such copy of such record shall be subject to examination by any holder of record of voting trust certificates either in person or by agent or attorney, at any reasonable time for any proper purpose.

**Section 2.16   Shareholders' Agreements**.   Two or more shareholders of the Corporation may enter an agreement providing for the exercise of voting rights in the manner provided in the agreement or relating to any phase of the affairs of the Corporation as provided by law. If all of the shareholders of the Corporation have entered into a shareholders' agreement (before or after the effective date of these Bylaws), which contains terms that are different from

5

the terms set forth in these Bylaws, then the terms of the shareholders' agreement shall be controlling to the extent that the terms of the shareholders' agreement are at variance with the terms of these Bylaws. Nothing therein shall impair the right of the Corporation to treat the shareholders of record as entitled to vote the shares standing in their names. A transfer of shares of the Corporation whose shareholders have a shareholder's agreement authorized by this Section shall be bound by such agreement if he takes shares subject to such agreement with notice thereof. A transferee shall be deemed to have notice of any such agreement if the exercise thereof is noted on the face or back of the certificate or certificates representing such shares.

## ARTICLE 3
## DIRECTORS

**Section 3.1    Number, Election and Term**.    The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors. The Board of Directors shall consist of one or more members, the exact number to be determined from time to time by the shareholders or the Board of Directors. The number of directors may be increased or decreased from time to time by the shareholders or the Board of Directors, but no decrease shall have the effect of shortening the terms of any incumbent director. Directors need not be residents of this State or shareholders of the Corporation. A director shall hold office until the annual meeting for the year in which his term expires and until his successor shall be elected and shall qualify, subject, however, to prior death, resignation, retirement, disqualification or removal from office.

**Section 3.2    Vacancies**.    A director may resign at any time by giving written notice to the Corporation, the Board of Directors or the President. Such resignation shall take effect when the notice is delivered unless the notice specifies a later effective date, in which event the Board of Directors may fill the pending vacancy before the effective date if they provide that the successor does not take office until the effective date. Any vacancy occurring in the Board of Directors and any directorship to be filled by reason of an increase in the size of the Board of Directors shall be filled by the affirmative vote of a majority of the current directors though less than a quorum of the Board of Directors, or may be filled by an election at an annual or special meeting of the shareholders called for that purpose, unless otherwise provided by law. A director elected to fill a vacancy shall be elected for the unexpired term of his predecessor in office, or until the next election of one or more directors by shareholders if the vacancy is caused by an increase in the number of directors.

**Section 3.3    Powers**.    Except as provided in the Articles of Incorporation and by law, all corporate powers shall be exercised by or under the authority of, and the business and affairs of the Corporation shall be managed under the direction of, its Board of Directors.

**Section 3.4    Duties of Directors**.    A director shall perform his duties as a director, including his duties as a member of any committee of the board upon which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the Corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. In performing his duties, a director shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by (1) one or more officers or employees of the Corporation whom

6

the director reasonably believes to be reliable and competent in the matters presented, (2) counsel, public accountants, or (3) other persons as to matters which the director reasonably believes to be within such person's professional or expert competence, or a committee of the Board upon which he does not serve, duly designated in accordance with a provision of the Articles of Incorporation or these Bylaws, as to matters within its designated authority, which committee the director reasonably believes to merit confidence. A director shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance described above to be unwarranted. A person who performs his duties in compliance with this Section shall have no liability by reason of being or having been a director of the Corporation and shall be indemnified by the Corporation for any and all claims and/or losses arising out of his service as a director of the Corporation.

**Section 3.5    Place of Meetings**. Meetings of the Board of Directors, regular or special, may be held either within or without the State of Florida.

**Section 3.6    Annual Meeting**. The first meeting of each newly elected Board of Directors shall be held, without call or notice, immediately following each annual meeting of shareholders.

**Section 3.7    Regular Meetings**. Regular meetings of the Board of Directors may also be held without notice at such time and at such place as shall from time to time be determined by the Board of Directors.

**Section 3.8    Special Meetings and Notice**. Special meetings of the Board of Directors may be called by the President and shall be called by the Secretary on the written request of any two directors. Written notice of special meetings of the Board of Directors shall be given to each director at least two (2) days before the meeting. Except as required by statute, neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors need be specified in the notice or waiver of notice of such meeting. Notices to directors shall be in writing and delivered personally or mailed to the directors at their addresses appearing on the books of the Corporation. Notice by mail shall be deemed to be given at the time when the same shall be received. Notice to directors may also be given by telegram, teletype or other form of electronic communication. Notice of a meeting of the Board of Directors need not be given to any director who signs a written waiver of notice before, during or after the meeting. Attendance of a director at a meeting shall constitute a waiver of notice of such meeting and a waiver of any and all objections to the place of the meeting, the time of the meeting and the manner in which it has been called or convened, except when a director states, at the beginning of the meeting or promptly upon arrival at the meeting, any objection to the transaction of business because the meeting is not lawfully called or convened.

**Section 3.9    Quorum; Required Votes Presumption of Assent**. A majority of the number of directors fixed by, or in the manner provided in, these Bylaws shall constitute a quorum for the transaction of business; provided, however, that whenever, for any reason, a vacancy occurs in the Board of Directors, a quorum shall consist of a majority of the remaining directors until the vacancy has been filled. The act of a majority of the directors present at a meeting at which a quorum is present when the vote is taken shall be the act of the Board of Directors. A majority of the directors present, whether or not a quorum exists, may adjourn any

7

meeting of the Board of Directors to another time and place. Notice of any such adjourned meeting shall be given to the directors who were not present at the time of adjournment, and, unless the time and place of the adjourned meeting are announced at the time of adjournment, to the other directors. A director of the Corporation who is present at a meeting of the Board of Directors or a committee of the Board of Directors when corporate action is taken shall be presumed to have assented to the action taken, unless he objects at the beginning of the meeting, or promptly upon his arrival, to holding the meeting or transacting specific business at the meeting, or he votes against or abstains from the action taken.

**Section 3.10    Action Without Meeting**. Any action required or permitted to be taken at a meeting of the Board of Directors or a committee thereof may be taken without a meeting if a consent in writing, setting forth the action taken, is signed by all of the members of the Board of Directors or the committee, as the case may be, and such consent shall have the same force and effect as a unanimous vote at a meeting. Action taken under this Section is effective when the last director signs the consent, unless the consent specifies a different effective date. A consent signed under this Section shall have the effect of a meeting vote and may be described as such in any document.

**Section 3.11    Conference Telephone or Similar Communications Equipment Meetings**. Members of the Board of Directors may participate in a meeting of the Board by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other at the same time. Participation in such a meeting shall constitute presence in person at the meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground the meeting is not lawfully called or convened.

**Section 3.12    Committees**. The Board of Directors, by resolution adopted by a majority of the full Board of Directors, may designate from among its members an executive committee and one or more other committees, each of which, to the extent provided in such resolution, shall have and may exercise all of the authority of the Board of Directors in the business and affairs of the Corporation except where the action of the full Board of Directors is required by statute. Each committee must have two or more members who serve at the pleasure of the Board of Directors. The Board of Directors, by resolution adopted in accordance with this Article Three, may designate one or more directors as alternate members of any committee, who may act in the place and stead of any absent member or members at any meeting of such committee. Vacancies in the membership of a committee shall be filled by the Board of Directors at a regular or special meeting of the Board of Directors. The executive committee shall keep regular minutes of its proceedings and report the same to the Board of Directors when required. The designation of any such committee and the delegation thereto of authority shall not operate to relieve the Board of Directors, or any member thereof, of any responsibility imposed upon it or him by law.

**Section 3.13    Compensation of Directors**. The directors may be paid their expenses, if any, of attendance at each meeting of the Board of Directors and may be paid a fixed sum for attendance at each meeting of the Board of Directors or a stated salary as director. No such payment shall preclude any director from serving the Corporation in any other capacity and receiving compensation therefor. Members of special or standing committees may be allowed like compensation for attending committee meetings.

8

**Section 3.14    Chairman of the Board**.  The Board of Directors may, in its discretion, choose a chairman of the board (the "Chairman of the Board") who shall preside at meetings of the shareholders and of the directors and shall be an ex officio member of all standing committees.  The Chairman of the Board shall have such other powers and shall perform such other duties as shall be designated by the Board of Directors.  The Chairman of the Board shall be a member of the Board of Directors but no other officers of the Corporation need be a director.  The Chairman of the Board shall serve until his successor is chosen and qualified, but he may be removed at any time by the affirmative vote of a majority of the Board of Directors.

**Section 3.15    Removal of Directors**.  At a meeting of shareholders called expressly for that purpose, any director or the entire Board of Directors may be removed, with or without cause, by a vote of the holders of a majority of the shares then entitled to vote at an election of directors.

**Section 3.16    Director Conflicts of Interest**.  No contract or other transaction between the Corporation and one or more of its directors or any other corporation, firm, association or entity in which one or more of the directors are directors or officers or are financially interested, shall be either void or voidable because of such relationship or interest or because such director or directors are present at the meeting of the Board of Directors or a committee thereof which authorizes, approves or ratifies such contract or transaction or because his or their votes are counted for such purpose, if:  (1) the fact of such relationship or interest is disclosed or known to the Board of Directors or committee which authorizes, approves or ratifies the contract or transaction by a vote or consent sufficient for the purpose without counting the votes or consents of such interested directors; (2) the fact of such relationship or interest is disclosed or known to the shareholders entitled to vote and they authorize, approve or ratify such contract or transaction by vote or written consent; or (3) the contract or transaction is fair and reasonable as to the Corporation at the time it is authorized by the Board, a committee or the shareholders.  Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or a committee thereof which authorizes, approves or ratifies such contract or transaction.

## ARTICLE 4
## OFFICERS

**Section 4.1      Positions**.  The officers of the Corporation shall consist of a President and, if elected by the Board of Directors by a resolution, one or more Vice Presidents, a Secretary and a Treasurer, and any other officers as may be appointed by the Board of Directors in accordance with these bylaws.  Any two or more offices may be held by the same person.

**Section 4.2      Election of Specified Officers by Board**.  The Board of Directors at its first meeting after each annual meeting of shareholders shall elect the officers of the Corporation as specified above in Section 4.1, subject to the rights, if any, of an officer under any contract of employment.

**Section 4.3      Election or Appointment of Other Officers**.  Such other officers and assistant officers and agents as may be deemed necessary may be elected or appointed by the Board of Directors, or, unless otherwise specified herein, appointed by the President of the

9

Corporation. The Board of Directors shall be advised of appointments by the President at or before the next scheduled Board of Directors meeting.

**Section 4.4    Salaries**. The salaries of all officers of the Corporation to be elected by the Board of Directors pursuant to Article Four, Section 2 hereof shall be fixed from time to time by the Board of Directors or pursuant to its discretion. The salaries of all other elected or appointed officers of the Corporation shall be fixed from time to time by the President of the Corporation or pursuant to his direction.

**Section 4.5    Term; Resignation**. The officers of the Corporation shall hold office until their successors are chosen and qualified. Any officer or agent elected or appointed by the Board of Directors or the President of the Corporation may be removed, with or without cause, by the Board of Directors. Any officers or agents appointed by the President of the Corporation pursuant to Section 3 of this Article Four may also be removed from such officer positions by the President, with or without cause. Any vacancy occurring in any office of the Corporation by death, resignation, removal or otherwise shall be filled by the Board of Directors, or, in the case of an officer appointed by the President of the Corporation, by the President or the Board of Directors. Any officer of the Corporation may resign from his respective office or position by delivering notice to the Corporation. Such resignation is effective when delivered unless the notice specifies a later effective date. If a resignation is made effective at a later date and the Corporation accepts the future effective date, the Board of Directors may fill the pending vacancy before the effective date if the Board provides that the successor does not take office until the effective date.

**Section 4.6    President**. The President shall be the Chief Executive Officer of the Corporation, shall have general and active management of the business of the Corporation and shall see that all orders and resolutions of the Board of Directors are carried into effect. In the absence of the Chairman of the Board or in the event the Board of Directors shall not have designated a chairman of the board, the President shall preside at meetings of the shareholders and the Board of Directors.

**Section 4.7    Vice Presidents**. The Vice Presidents in the order of their seniority, unless otherwise determined by the Board of Directors, shall, in the absence or disability of the President, perform the duties and exercise the powers of the President. They shall perform such other duties and have such other powers as the Board of Directors shall prescribe or as the President may from time to time delegate.

**Section 4.8    Secretary**. The Secretary shall attend all meetings of the Board of Directors and all meetings of the shareholders and record all the proceedings of the meetings of the shareholders and of the Board of Directors in a book to be kept for that purpose and shall perform like duties for the standing committees when required. The Secretary shall give, or cause to be given, notice of all meetings of the shareholders and special meetings of the Board of Directors, and shall perform such other duties as may be prescribed by the Board of Directors or President, under whose supervision the Secretary shall be. The Secretary shall keep in safe custody the seal of the Corporation and, when authorized by the Board of Directors, affix the same to any instrument requiring it.

10

CONFIDENTIAL                                                                          VPX-JHO0000001902

**Section 4.9    Treasurer**.  The Treasurer shall have the custody of corporate funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation and shall deposit all moneys and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated by the Board of Directors.  The Treasurer shall disburse the funds of the Corporation as may be ordered by the Board of Directors, taking proper vouchers for such disbursements, and shall render to the President and the Board of Directors at its regular meetings or when the Board of Directors so requires an account of all the Treasurer's transactions as treasurer and of the financial condition of the Corporation unless otherwise specified by the Board of Directors, the Treasurer shall be the Corporation's Chief Financial Officer.

**Section 4.10    Other Officers, Employees and Agents**.  Each and every other officer, employee and agent of the Corporation shall possess, and may exercise, such power and authority, and shall perform such duties, as may from time to time be assigned to him by the Board of Directors, the officer so appointing him and such officer or officers who may from time to time be designated by the Board of Directors to exercise such supervisory authority.

## ARTICLE 5
## CERTIFICATES FOR SHARES

**Section 5.1    Issue of Certificates**.  The Corporation may, but shall not be required to, deliver certificates representing all shares to which shareholders are entitled; and such certificates shall be signed by the President or a Vice President, and by the Secretary or an Assistant Secretary of the Corporation, and may be sealed with the seal of the Corporation or a facsimile thereof.

**Section 5.2    Legends for Preferences and Restrictions on Transfer**.    The designations, relative rights, preferences and limitations applicable to each class of shares and the variations in rights, preferences and limitations determined for each series within a class (and the authority of the Board of Directors to determine variations for future series) shall be summarized on the front or back of each certificate.  Alternatively, each certificate may state conspicuously on its front or back that the Corporation will furnish the shareholder a full statement of this information on request and without charge.  Every certificate representing shares that are restricted as to the sale, disposition, or transfer of such shares shall also indicate that such shares are restricted as to transfer and there shall be set forth or fairly summarized upon the certificate, or the certificate shall indicate that the Corporation will furnish to any shareholder upon request and without charge, a full statement of such restrictions.  If the Corporation issues any shares that are not registered under the Securities Act of 1933, as amended, and registered or qualified under the applicable state securities laws, the transfer of any such shares shall be restricted substantially in accordance with the following legend:

"THESE SHARES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR UNDER ANY APPLICABLE STATE LAW. THEY MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR PLEDGED WITHOUT (1) REGISTRATION UNDER THE SECURITIES ACT OF 1933 AND ANY APPLICABLE STATE LAW, OR (2) AT HOLDER'S EXPENSE, AN OPINION (SATISFACTORY TO THE CORPORATION) OF

11

VPX-JHO0000001903

COUNSEL (SATISFACTORY TO THE CORPORATION) THAT REGISTRATION IS NOT REQUIRED."

**Section 5.3    Facsimile Signatures**.  The signatures of the President or a Vice President and the Secretary or Assistant Secretary upon a certificate may be facsimiles, if the certificate is manually signed by a transfer agent, or registered by a registrar, other than the Corporation itself or an employee of the Corporation.  In case any officer who has signed or whose facsimile signature has been placed upon such certificate shall have ceased to be such officer before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer at the date of the issuance.

**Section 5.4    Lost Certificates**.  The Board of Directors may direct a new certificate or certificates to be issued in place of any certificate or certificates theretofore issued by the Corporation alleged to have been lost or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost or destroyed.  When authorizing such issue of a new certificate or certificates, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of such lost or destroyed certificate or certificates, or his legal representative, to advertise the same in such manner as it shall require and/or to give the Corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost or destroyed.

**Section 5.5    Transfer of Shares**.  Upon surrender to the Corporation or the transfer agent of the Corporation of a certificate for shares duly endorsed or accompanied by proper evidence of succession, assignment or authority to transfer, it shall be the duty of the Corporation to issue a new certificate to the person entitled thereto, cancel the old certificate and record the transaction upon its books.

**Section 5.6    Registered Shareholders**.  The Corporation shall be entitled to recognize the exclusive rights of a person registered on its books as the owner of shares to receive dividends, and to vote as such owner, and shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it shall have express or other notice thereof except as otherwise provided by the laws of the State of Florida.

## ARTICLE 6
## INDEMNIFICATION

Any person, his heirs, or personal representative, made, or threatened to be made, a party to any threatened, pending, or completed action or proceeding, whether civil, criminal, administrative, or investigative, because he, his testator, or intestate is or was a director, officer, employee, or agent of the Corporation or serves or served any other corporation or other enterprise in any capacity at the request of the Corporation, shall be indemnified by the Corporation, and the Corporation may advance his related expenses to the full extent permitted by law. In discharging his duty, any director, officer, employee, or agent, when acting in good faith, may rely upon information, opinions, reports, or statements, including financial statements and other financial data, in each case prepared or presented by (1) one or more officers or

12

employees of the Corporation whom the director, officer, employee, or agent reasonably believes to be reliable and competent in the matters presented, (2) counsel, public accountants, or other persons as to matters that the director, officer, employee, or agent believes to be within that person's professional or expert competence, or (3) in the case of a director, a committee of the Board of Directors upon which he does not serve, duly designated according to law, as to matters within its designated authority, if the director reasonably believes that the committee is competent.  The indemnification provided by this Article shall not be deemed exclusive of any other rights to which those indemnified may be entitled under any agreement, vote or shareholders or disinterested directors or otherwise, both as to actions in such person's official capacity and as to actions in another capacity while holding such office, and shall continue as to an indemnified person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors, administrators, personal representatives and estate of such person.  All rights to indemnification and advances under this Article shall be deemed to be a contract between the Corporation and each indemnified person who serves or served in such capacity at any time while this Article is in effect and, as such, are enforceable against the Corporation.  Any repeal or modification of this Article or any repeal or modification of relevant provisions of Florida's corporation law or any other applicable laws shall not in any way diminish these rights to indemnification of or advances to such indemnified person, or the obligations of the Corporation arising hereunder, for claims relating to matters occurring prior to such repeals or modification.  The Corporation may purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee, trustee or agent of another corporation, partnership, joint venture, trust or other enterprise (including serving as a fiduciary of an employee benefit plan), with respect to any liability asserted against him and incurred by him in any such capacity or arising out of his status as such, whether or not the Corporation would have the power to indemnify him against such liability under the provisions of this Article or the applicable provisions of Florida law.  If this Article or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then the Corporation shall nevertheless indemnify and hold harmless, and make advances to, each indemnified person as to costs, charges and expenses (including attorneys' fees), liabilities, judgments, fines and amounts paid in settlement with respect to any proceeding including any action by or in the right of the Corporation, to the full extent permitted by any applicable portion of this Article that shall not have been invalidated and as otherwise permitted by applicable law.

## ARTICLE 7
## BOOKS AND RECORDS

**Section 7.1    Books and Records**.  The Corporation shall keep correct and complete books and records of accounts and shall keep minutes of the proceedings of its shareholders, Board of Directors and committees of directors.  The Corporation shall keep at its registered office or principal place of business, or at the office of its transfer agent or registrar, a record of its shareholders, giving the names and addresses of all shareholders, and the number, class and series, if any, of the shares held by each.  Any books, records and minutes may be in written form or in any other form capable of being converted into written form within a reasonable time.

**Section 7.2    Shareholders' Inspection Rights**.  Any person who shall have been a holder of record of shares or of voting trust certificates therefor at least six months immediately

13

preceding his demand or shall be the holder of record of, or the holder of record of voting trust certificates for, at least five percent of the outstanding shares of any class or series of the Corporation, upon written demand stating the purpose thereof, shall have the right to examine, in person or by agent or attorney, at any reasonable time or times, for any proper purpose its relevant books and records of accounts, minutes and records of shareholders and to make extracts therefrom.

## ARTICLE 8
## GENERAL PROVISIONS

**Section 8.1    Dividends**.  The Board of Directors may from time to time declare, and the Corporation may pay, dividends on its outstanding shares in cash, property, or its own shares pursuant to law and subject to the provisions of the Articles of Incorporation.

**Section 8.2    Reserves**.  The Board of Directors may by resolution create a reserve or reserves out of earned surplus for any proper purpose or purposes, and may abolish any such reserve in the same manner.

**Section 8.3    Checks**.  All checks or demands for money and notes of the Corporation shall be signed by such officer or officers or such other person or persons as the Board of Directors may from time to time designate.

**Section 8.4    Fiscal Year**.  The fiscal year of the Corporation shall be fixed by the Board of Directors and may be changed from time to time by resolution of the Board of Directors.

**Section 8.5    Seal**.  The corporate seal shall have inscribed thereon the name and state of incorporation of the Corporation.  The seal may be used by causing it or a facsimile thereof to be impressed or affixed or in any other manner reproduced.

**Section 8.6    Gender**.  All words used in these Bylaws in the masculine gender shall extend to and shall include the feminine and neuter genders.

## ARTICLE 9
## AMENDMENTS OF BYLAWS

Unless otherwise provided by law, these Bylaws may be altered, amended or repealed or new Bylaws may be adopted by action of the Board of Directors or the shareholders, but the Board of Directors may not amend or repeal any by-law adopted by shareholders if the shareholders specifically provide such by-law shall not be subject to amendment or repeal by the directors.

\* \* \* \* \*

14

**OPERATING AGREEMENT**
**OF**
**RAINBOW UNICORN BEV LLC**


**THIS OPERATING AGREEMENT** (this "Agreement") of Rainbow Unicorn Bev LLC, a Florida limited liability company (the "Company"), is made and entered into as of the 2nd day of June 2022, by the undersigned sole member of the Company (the "Member"), with reference to the following facts:

**WHEREAS**, the Company was formed as a limited liability company on May 24, 2022, when the Company's Articles of Organization (the "Articles") became effective upon filing with the Florida Department of State, Division of Corporations (the "DOC") pursuant to and in accordance with the Florida Revised Limited Liability Company Act (§ 605.0101 et seq., Fla. Stat. Ann.), as amended from time to time (the "Act");

**WHEREAS**, the Member is the sole member of the Company and the Member agrees that the membership in and management of the Company shall be governed by the terms set forth herein.

**NOW THEREFORE**, in consideration of the agreements and obligations set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Member and the Company hereby agree as follows:

1.  **Name.**  The name of the Company is Rainbow Unicorn Bev LLC.

2.  **Principal Office and Place of Business.**  The principal office and place of business of the Company shall be such location as the Member shall appoint from time to time (the "Principal Office").

3.  **Agent for Service of Process.**  The agent for service of process for the Company shall be such person or entity as the Member shall appoint from time to time.

4.  **Purpose.**  The purpose of the Company is to transact any and all lawful business for which a limited liability company may be organized under the Act.

5.  **Term.**  The term of the Company shall commence on the filing date of the Articles and shall continue until dissolved.

6.  **Capital Contributions.**  The Member may make capital contributions to the Company in such amounts and at such times as the Member shall determine in the Member's sole discretion.

7.  **Distributions of Available Cash Flow.**  Distributions of available cash flow shall be made in such amounts and at such times as the Member shall determine in the Member's sole discretion.

8.  **Management.**  The management and control of the Company shall be vested in a sole manager (the "Manager"), who shall have full power and authority to manage the Company in all respects. The Company shall be deemed a "manager-managed company" within the meaning of the Act.  The Manager shall have full, exclusive and complete power, authority and discretion  to

VPX-JHO0000001907

manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and to supervise, direct and control the actions of the officers of the Company (each an "Officer" and, collectively, the "Officers") and to perform any and all other actions customary or incident to the management of the Company and shall have all of the rights and powers provided to a member of a manager-managed company by law, and to take any other actions on behalf of the Company, whether or not such actions are for carrying on the business of the Company in its usual way. The Manager of the Company shall be John H. Owoc. The Manager's terms shall continue until his termination by operation of law, voluntary resignation, removal by the written consent by the Member, order or decree of any court of competent jurisdiction, or by his death. Any vacancy shall be filled with the consent of the Member.

9. **Officers.** The Manager may appoint officers, from time to time, with such other titles as the Manager may select, including the titles of Chief Executive Officer, Chief Scientific Officer, President, Vice President, Treasurer and Secretary, to act on behalf of the Company. An officer shall have such power and authority as the Manager may delegate to any such person and need not be a member of the Company. The officers of the Company shall be as follows:

| Person | Position(s) |
|--------|-------------|
| John H. Owoc | Chief Executive Officer, Chief Scientific Officer, and President |

10. **Banking Resolution.** The Manager shall open all banking accounts as the Manager deems necessary and enter into any deposit agreements as are required by the financial institution at which such accounts are opened. The Member, officers and such other persons or entities designated in writing by the Manager shall have signing authority with respect to such bank accounts. Funds deposited into such accounts shall be used only for the business of the Company.

11. **Indemnification.** The Company and its successors shall indemnify, defend and hold harmless the Member, other members, the Manager, other managers, officers, and the Member's or Manager's Affiliates, as defined below (each, an "Indemnitee"), to the extent of the Company's assets, for, from and against any liability, damage, cost, expense, loss, claim or judgment incurred by the Indemnitee arising out of any claim based upon acts performed or omitted to be performed by the Indemnitee in connection with the business of the Company, including attorneys' fees and costs incurred by the Indemnitee in settlement or defense of such claims. Notwithstanding the foregoing, no Indemnitee shall be so indemnified, defended or held harmless for claims based upon acts or omissions in breach of this Agreement or which constitute fraud, gross negligence, or willful misconduct. Amounts incurred by an Indemnitee in connection with any action or suit arising out of or in connection with Company affairs shall be reimbursed by the Company. "Affiliate" means a person or entity who, with respect to the Member or the Manager: (a) directly or indirectly controls, is controlled by or is under common control with such member or manager, as applicable; (b) owns or controls 10 percent or more of the outstanding voting securities of such member or manager, as applicable; (c) is an officer, director, shareholder, partner or member of such member or manager, as applicable; or (d) if such member or manager, as applicable, is an officer, director, shareholder, partner or member of any entity, the entity for which member or manager, as applicable, acts in any such capacity.

12. **Liability.** No Indemnitee shall be personally liable, responsible, accountable in damages or otherwise to the Company for any act or omission performed or omitted by such Indemnitee in connection with the Company or its business. The liability of the Member for the

VPX-JHO0000001908

debts and obligations of the Company shall be limited as set forth in the Act and other applicable law.

13.    **Reimbursable Expenses.**    The Company will reimburse the Member and the Manager for all actual out-of-pocket third-party expenses incurred in connection with the carrying out of the duties set forth in this Agreement.

14.    **Records.**    The Member or the Manager shall keep or cause to be kept at the Principal Office or other location the following records of the Company: (a) a written record of the full name and business, residence or mailing address of the Member; (b) a copy of the initial Articles of Organization and all amendments thereto; (c) copies of all written limited liability company agreements and all amendments to such agreements, including any prior written limited liability company agreements no longer in effect; (d) copies of any written and signed promises by the Member to make capital contributions to the Company; (e) copies of the Company's federal, state and local income tax returns and reports, if any, for the three most recent years; (f) copies of any prepared financial statements of the Company for the three most recent years; and (g) minutes of every meeting as well as any written consents or actions taken without a meeting.

15.    **Dissolution.**    The Company shall be dissolved upon the election of the Member.

16.    **Filing Upon Dissolution.**    As soon as possible following the dissolution of the Company, the Member or the Manager shall execute and file all notices and other documents required under the Act and any other applicable law.

17.    **Liquidation.**    Upon dissolution of the Company, the Company shall be wound up and liquidated as rapidly as business circumstances permit, the Manager shall act as the liquidating trustee, and the assets of the Company shall be liquidated and the proceeds thereof shall be paid (to the extent permitted by applicable law) in the following order: (a) first, to creditors, including the Member if the Member is a creditor, in the order and priority required by applicable law; (b) second, to a reserve for contingent liabilities to be distributed at the time and in the manner as the liquidating trustee determines in its sole discretion; and (c) third, to the Member.

18.    **Governing Law.**    This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without regard to its conflicts of laws principles.

19.    **Severability.**    If any provision of this Agreement shall be conclusively determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement shall not be affected thereby.

20.    **Binding Effect.**    Except as otherwise provided herein, this Agreement shall inure to benefit of and be binding upon the Member and the Member's respective successors and assigns.

21.    **Titles and Captions.**    All article, section and paragraph titles and captions contained in this Agreement are for convenience only and are not a part of the context hereof.

22.    **Pronouns and Plurals.**    All pronouns and any variations thereof are deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the appropriate person may require.

    VPX-JHO0000001909

23.     **No Third-Party Rights.**  This Agreement is intended to create enforceable rights between the parties hereto only, and, except as expressly provided herein, creates no rights in, or obligations to, any other persons.

24.     **Entire Agreement.**  This Agreement, together with the Articles, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, whether written or oral, with respect to such subject matter.  There are no other agreements (written or otherwise) with respect to business affairs of the company or capital and profits of the Company.

25.     **Amendments.**  This Agreement may not be amended except by a written document executed by the Member and the Company.

26.     **Creditors.**  None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditors of the Company.

*[signature page to follow]*

VPX-JHO0000001910

**IN WITNESS WHEREOF**, the undersigned, being the sole member of Rainbow Unicorn Bev LLC, a Florida limited liability company, has executed this Agreement, effective as of the date first written above.

**SOLE MEMBER**:

John H. Owoc

[Operating Agreement of Rainbow Unicorn Bev, LLC]

VPX-JHO0000001911

## AMENDMENT TO OPERATING AGREEMENT OF
## RAINBOW UNICORN BEV LLC

This Amendment to Operating Agreement of Rainbow Unicorn Bev LLC (the "**Amendment**") is effective as of October 26, 2022 (the "**Effective Date**") by and between Rainbow Unicorn Bev LLC, a Florida limited liability company (the "**Company**") and John H. Owoc ("**Owoc**"), with Katherine Cole, Dr. Guillermo Escalante, Eric Hillman and Steven G. Panagos (the "**Additional Managers**") joining this Amendment solely for the purposes of Section 3. The Company and Owoc are sometimes collectively referred to in this Amendment as the "**Parties**", and each, a "**Party**".

## RECITALS

**WHEREAS**, the Parties previously entered into that certain Operating Agreement of the Company dated June 2, 2020 (the "**Existing Agreement**");

**WHEREAS**, the Parties desire to amend the Existing Agreement to provide for additional managers; and

**WHEREAS**, after giving effect to the amendments to the Existing Agreement provided for below, Owoc and the Additional Managers desire to create a restructuring committee.

**NOW, THEREFORE**, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      **Definitions**. Capitalized terms used and not defined in this Amendment have the respective meanings assigned to them in the Existing Agreement.

2.      **Amendments to the Existing Agreement**. As of the Effective Date, the Existing Agreement is hereby amended or modified as follows:

(a)      Section 8 of the Existing Agreement is hereby deleted in its entirety and replaced with the following:

"Management.

     a.   The management and control of the Company shall be vested in one or more managers (the "Managers"), who shall have full power and authority to manage the Company in all respects. The Company shall be deemed a "manager-managed company" within the meaning of the Act. The Managers shall have full, exclusive and complete power, authority and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and to supervise, direct and control the actions of the officers of the Company (each an "Officer" and, collectively, the "Officers") and to perform any and all other actions customary or incident to the management of the Company and shall

11690245-3
US-DOCS\136615091.2

VPX-JHO0000001912

have all of the rights and powers provided to a member of a manager-managed company by law, and to take any other actions on behalf of the Company, whether or not such actions are for carrying on the business of the Company in its usual way. The Managers of the Company shall be John H. Owoc, Katherine Cole, Dr. Guillermo Escalante, Eric Hillman and Steven G. Panagos. Each Manager's term shall continue until his or her termination by operation of law, voluntary resignation, removal by the written consent by the Member, order or decree of any court of competent jurisdiction, or by his or her death. Any vacancy shall be filled with the consent of the Member.

b.  The Managers may designate one or more other committees, each of which shall have and may exercise all of the authority of the Managers in the business and affairs of the Company, except where the action of the Managers is required by statute. Each committee may consist of only one member. Vacancies in the membership of a committee shall be filled by the Managers at a regular or special meeting of the Managers. The designation of any such committee and the delegation thereto of authority shall not operate to relieve the Managers, or any member thereof, of any responsibility imposed upon any Manager by law."

(b)    Each reference to the term "Manager" shall be deleted in its entirety and replaced with the term "Managers". Any related language providing for a singular or a plural form with reference to a "Manager" shall be deleted in its entirety and replaced with the appropriate singular or plural form with reference to the "Managers".

**3.    Creation of Special Committee**. After giving effect to the amendments to the Existing Agreement provided for in Section 2 of this Amendment, the Managers hereby create a restructuring committee composed of one (1) individual (the "**Restructuring Committee**") and appoint Steven G. Panagos to serve on the Restructuring Committee. The Restructuring Committee shall make recommendations to the Managers regarding all aspects of the Company's restructuring, including with respect to filings (whether existing presently or in the future) under chapter 11 of the United States Bankruptcy Code without limitation the undertaking by the Company to satisfy any requirements of Section 3.1(b)(iii) of the Superpriority Secured Debtor-in-Possession Credit Agreement by and among Vital Pharmaceuticals, Inc., a Florida corporation (the "Borrower"), as borrower, and certain other subsidiaries and affiliates of the Borrower from time to time as guarantors, the lenders party thereto from time to time (collectively, the "DIP Lenders") and Truist Bank, as administrative agent for the DIP Lenders.

**4.    Date of Effectiveness; Limited Effect**. This Amendment will be effective as of the Effective Date. Except as expressly provided in this Amendment, all the terms and provisions of the Existing Agreement are and will remain in full force and effect and are hereby ratified and confirmed by the Parties. Without limiting the generality of the foregoing, the amendments contained herein will not be construed as an amendment to or waiver of any other provision of the Existing Agreement or as a waiver of or consent to any further or future action on the part of either Party that would require the waiver or consent of the other Party. On and after the Effective Date,

2

11690245-3
US-DOCS\136615091.2

each reference in the Existing Agreement to "this Agreement," "the Agreement," "hereunder," "hereof," "herein," or words of like import will mean and be a reference to the Existing Agreement as amended by this Amendment.

5.    **Miscellaneous**.

(a)    This Amendment is governed by and construed in accordance with the laws of the State of Florida, without regard to the conflict of laws provisions of such State.

(b)    This Amendment shall inure to the benefit of and be binding upon each of the Parties and each of their respective permitted successors and permitted assigns.

(c)    The headings in this Amendment are for reference only and do not affect the interpretation of this Amendment.

(d)    This Amendment may be executed in counterparts, each of which is deemed an original, but all of which constitute one and the same agreement. Delivery of an executed counterpart of this Amendment electronically or by facsimile shall be effective as delivery of an original executed counterpart of this Amendment.

(e)    This Amendment constitutes the sole and entire agreement between the Parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

[Signature Page to Follow]

11690245-3
US-DOCS\136615091.2

CONFIDENTIAL                                                                VPX-JHO0000001914

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

<u>**COMPANY**</u>

RAINBOW UNICORN BEV, LLC, a Florida limited liability company

By: _John Owoc (Oct 24, 2022 12:23 EDT)_
Name: John H. Owoc
Title: Chief Executive Officer

<u>**MEMBER**</u>

_John Owoc (Oct 24, 2022 12:23 EDT)_
John H. Owoc

<u>**MANAGERS**</u>

_John Owoc (Oct 24, 2022 12:23 EDT)_
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of Rainbow Unicorn Bev, LLC]*

CONFIDENTIAL

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

**COMPANY**

RAINBOW UNICORN BEV, LLC, a Florida limited liability company

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

**MEMBER**

_____
John H. Owoc

**MANAGERS**

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of Rainbow Unicorn Bev, LLC]*

CONFIDENTIAL                                                                                 VPX-JHO0000001916

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

## COMPANY

RAINBOW UNICORN BEV, LLC, a Florida limited liability company

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

## MEMBER

_____
John H. Owoc

## MANAGERS

_____
John H. Owoc

_____
Kathleen Cole

_____
Guillermo Escalante (Oct 21, 2022 08:53 PDT)
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of Rainbow Unicorn Bev, LLC]*

CONFIDENTIAL

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

## COMPANY

RAINBOW UNICORN BEV, LLC, a Florida limited liability company

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

## MEMBER

_____
John H. Owoc

## MANAGERS

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

*Eric Hillman*
_____
Eric Hillman

_____
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of Rainbow Unicorn Bev, LLC]*

CONFIDENTIAL

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

**COMPANY**

RAINBOW UNICORN BEV, LLC, a Florida limited liability company

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

**MEMBER**

_____
John H. Owoc

**MANAGERS**

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven Panagos (Oct 25, 2022 17:56 EDT)
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of Rainbow Unicorn Bev, LLC]*

VPX-JHO0000001919

**OPERATING AGREEMENT**
**OF**
**JHO INTELLECTUAL PROPERTY HOLDINGS, LLC**


**THIS OPERATING AGREEMENT** (this "Agreement") of JHO Intellectual Property Holdings, LLC, a Florida limited liability company (the "Company"), is made and entered into as of the 13th day of August 2020, by the undersigned as the sole member of the Company (the "Member"), with reference to the following facts:

**WHEREAS**, the Company was formed as a limited liability company on September 15, 2014, when the Company's Articles of Organization (the "Articles") became effective upon filing with the Florida Department of State, Division of Corporations (the "DOC") pursuant to and in accordance with the Florida Revised Limited Liability Company Act (§ 605.0101 et seq., Fla. Stat. Ann.), as amended from time to time (the "Act");

**WHEREAS**, the Member is the sole member of the Company and the Member agrees that the membership in and management of the Company shall be governed by the terms set forth herein.

**NOW THEREFORE**, in consideration of the agreements and obligations set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Member and the Company hereby agree as follows:

1.    **Name.** The name of the Company is JHO Intellectual Property Holdings, LLC.

2.    **Principal Office and Place of Business.** The principal office and place of business of the Company shall be such location as the Member shall appoint from time to time (the "Principal Office").

3.    **Agent for Service of Process.** The agent for service of process for the Company shall be such person or entity as the Member shall appoint from time to time.

4.    **Purpose.** The purpose of the Company is to transact any and all lawful business for which a limited liability company may be organized under the Act.

5.    **Term.** The term of the Company shall commence on the filing date of the Articles and shall continue until dissolved.

6.    **Capital Contributions.** The Member may make capital contributions to the Company in such amounts and at such times as the Member shall determine in the Member's sole discretion.

7.    **Distributions of Available Cash Flow.** Distributions of available cash flow shall be made in such amounts and at such times as the Member shall determine in the Member's sole discretion.

8.    **Management.** The management and control of the Company shall be vested in a sole manager (the "Manager"), who shall have full power and authority to manage the Company in all respects. The Company shall be deemed a "manager-managed company" within the meaning of the Act. The Manager shall have full, exclusive and complete power, authority and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and to supervise, direct and control the actions of the officers of the Company (each an

CONFIDENTIAL

"Officer" and, collectively, the "Officers") and to perform any and all other actions customary or incident to the management of the Company and shall have all of the rights and powers provided to a member of a manager-managed company by law, and to take any other actions on behalf of the Company, whether or not such actions are for carrying on the business of the Company in its usual way. The Manager of the Company shall be John H. Owoc. The Manager's terms shall continue until his termination by operation of law, voluntary resignation, removal by the written consent by the Member, order or decree of any court of competent jurisdiction, or by his death. Any vacancy shall be filled with the consent of the Member.

9.      **Officers.**  The Member or Manager may appoint officers, from time to time, with such other titles as the Member or the Manager may select, including the titles of Chief Executive Officer, Chief Scientific Officer, President, Vice President, Treasurer and Secretary, to act on behalf of the Company.  An officer shall have such power and authority as the Member or the Manager may delegate to any such person and need not be a member of the Company.  The officers of the Company shall be as follows:

| Person | Position(s) |
|---|---|
| John H. Owoc | Chief Executive Officer, Chief Scientific Officer, and President |

10.      **Banking Resolution.**  The Manager shall open all banking accounts as the Manager deems necessary and enter into any deposit agreements as are required by the financial institution at which such accounts are opened.  The Member, officers and such other persons or entities designated in writing by the Manager shall have signing authority with respect to such bank accounts.  Funds deposited into such accounts shall be used only for the business of the Company.

11.      **Indemnification.**  The Company and its successors shall indemnify, defend and hold harmless the Member, the Manager, any other manager appointed by the Member, the officers, and the Member's or Manager's Affiliates, as defined below (each, an "Indemnitee"), to the extent of the Company's assets, for, from and against any liability, damage, cost, expense, loss, claim or judgment incurred by the Indemnitee arising out of any claim based upon acts performed or omitted to be performed by the Indemnitee in connection with the business of the Company, including attorneys' fees and costs incurred by the Indemnitee in settlement or defense of such claims.  Notwithstanding the foregoing, no Indemnitee shall be so indemnified, defended or held harmless for claims based upon acts or omissions in breach of this Agreement or which constitute fraud, gross negligence, or willful misconduct.  Amounts incurred by an Indemnitee in connection with any action or suit arising out of or in connection with Company affairs shall be reimbursed by the Company.  "Affiliate" means a person or entity who, with respect to the Member or the Manager: (a) directly or indirectly controls, is controlled by or is under common control with such member or manager, as applicable; (b) owns or controls 10 percent or more of the outstanding voting securities of such member or manager, as applicable; (c) is an officer, director, shareholder, partner or member of such member or manager, as applicable; or (d) if such member or manager, as applicable, is an officer, director, shareholder, partner or member of any entity, the entity for which member or manager, as applicable, acts in any such capacity.

12.      **Liability.**  No Indemnitee shall be personally liable, responsible, accountable in damages or otherwise to the Company for any act or omission performed or omitted by such Indemnitee in connection with the Company or its business.  The liability of the Member for the debts and obligations of the Company shall be limited as set forth in the Act and other applicable law.

13.     **Reimbursable Expenses.** The Company will reimburse the Member and the Manager for all actual out-of-pocket third-party expenses incurred in connection with the carrying out of the duties set forth in this Agreement.

14.     **Records.** The Member or the Manager shall keep or cause to be kept at the Principal Office or other location the following records of the Company: (a) a written record of the full name and business, residence or mailing address of the Member; (b) a copy of the initial Articles of Organization and all amendments thereto; (c) copies of all written limited liability company agreements and all amendments to such agreements, including any prior written limited liability company agreements no longer in effect; (d) copies of any written and signed promises by the Member to make capital contributions to the Company; (e) copies of the Company's federal, state and local income tax returns and reports, if any, for the three most recent years; (f) copies of any prepared financial statements of the Company for the three most recent years; and (g) minutes of every meeting as well as any written consents or actions taken without a meeting.

15.     **Dissolution.** The Company shall be dissolved upon the election of the Member.

16.     **Filing Upon Dissolution.** As soon as possible following the dissolution of the Company, the Member or the Manager shall execute and file all notices and other documents required under the Act and any other applicable law.

17.     **Liquidation.** Upon dissolution of the Company, the Company shall be wound up and liquidated as rapidly as business circumstances permit, the Manager shall act as the liquidating trustee, and the assets of the Company shall be liquidated and the proceeds thereof shall be paid (to the extent permitted by applicable law) in the following order: (a) first, to creditors, including the Member if the Member is a creditor, in the order and priority required by applicable law; (b) second, to a reserve for contingent liabilities to be distributed at the time and in the manner as the liquidating trustee determines in its sole discretion; and (c) third, to the Member.

18.     **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without regard to its conflicts of laws principles.

19.     **Severability.** If any provision of this Agreement shall be conclusively determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement shall not be affected thereby.

20.     **Binding Effect.** Except as otherwise provided herein, this Agreement shall inure to benefit of and be binding upon the Member and the Member's respective successors and assigns.

21.     **Titles and Captions.** All article, section and paragraph titles and captions contained in this Agreement are for convenience only and are not a part of the context hereof.

22.     **Pronouns and Plurals.** All pronouns and any variations thereof are deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the appropriate person may require.

23.     **No Third-Party Rights.** This Agreement is intended to create enforceable rights between the parties hereto only, and, except as expressly provided herein, creates no rights in, or obligations to, any other persons.

24.    **Entire Agreement.**  This Agreement, together with the Articles, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, whether written or oral, with respect to such subject matter.  There are no other agreements (written or otherwise) with respect to business affairs of the company or capital and profits of the Company.

25.    **Amendments.**  This Agreement may not be amended except by a written document executed by the Member and the Company.

*[signature page to follow]*

CONFIDENTIAL

**IN WITNESS WHEREOF**, the undersigned, being the sole member of JHO Intellectual Property Holdings, LLC, a Florida limited liability company, has executed this Agreement, effective as of the date first written above.

**MEMBER**:

John H. Owoc

Chief Executive Officer, Chief Scientific Officer, and President

VPX-JHO0000001924

## AMENDMENT TO OPERATING AGREEMENT OF
## JHO INTELLECTUAL PROPERTY HOLDINGS, LLC

This Amendment to Operating Agreement of JHO Intellectual Property Holdings, LLC (the "**Amendment**") is effective as of October 26, 2022 (the "**Effective Date**") by and between JHO Intellectual Property Holdings, LLC, a Florida limited liability company (the "**Company**") and John H. Owoc ("**Owoc**"), with Katherine Cole, Dr. Guillermo Escalante, Eric Hillman and Steven G. Panagos (the "**Additional Managers**") joining this Amendment solely for the purposes of Section 3. The Company and Owoc are sometimes collectively referred to in this Amendment as the "**Parties**", and each, a "**Party**".

### RECITALS

**WHEREAS**, the Parties previously entered into that certain Operating Agreement of the Company dated August 13, 2020 (the "**Existing Agreement**");

**WHEREAS**, the Parties desire to amend the Existing Agreement to provide for additional managers; and

**WHEREAS**, after giving effect to the amendments to the Existing Agreement provided for below, Owoc and the Additional Managers desire to create a restructuring committee.

**NOW, THEREFORE**, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      **Definitions**. Capitalized terms used and not defined in this Amendment have the respective meanings assigned to them in the Existing Agreement.

2.      **Amendments to the Existing Agreement**. As of the Effective Date, the Existing Agreement is hereby amended or modified as follows:

(a)      Section 8 of the Existing Agreement is hereby deleted in its entirety and replaced with the following:

"Management.

      a.   The management and control of the Company shall be vested in one or more managers (the "Managers"), who shall have full power and authority to manage the Company in all respects. The Company shall be deemed a "manager-managed company" within the meaning of the Act. The Managers shall have full, exclusive and complete power, authority and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and to supervise, direct and control the actions of the officers of the Company (each an "Officer" and, collectively, the "Officers") and to perform any and all other actions customary or incident to the management of the Company and shall

11690243-3
US-DOCS\136615094.2

have all of the rights and powers provided to a member of a manager-managed company by law, and to take any other actions on behalf of the Company, whether or not such actions are for carrying on the business of the Company in its usual way. The Managers of the Company shall be John H. Owoc, Katherine Cole, Dr. Guillermo Escalante, Eric Hillman and Steven G. Panagos. Each Manager's term shall continue until his or her termination by operation of law, voluntary resignation, removal by the written consent by the Member, order or decree of any court of competent jurisdiction, or by his or her death. Any vacancy shall be filled with the consent of the Member.

b.  The Managers may designate one or more other committees, each of which shall have and may exercise all of the authority of the Managers in the business and affairs of the Company, except where the action of the Managers is required by statute. Each committee may consist of only one member. Vacancies in the membership of a committee shall be filled by the Managers at a regular or special meeting of the Managers. The designation of any such committee and the delegation thereto of authority shall not operate to relieve the Managers, or any member thereof, of any responsibility imposed upon any Manager by law."

(b)     Each reference to the term "Manager" shall be deleted in its entirety and replaced with the term "Managers". Any related language providing for a singular or a plural form with reference to a "Manager" shall be deleted in its entirety and replaced with the appropriate singular or plural form with reference to the "Managers".

3.     **Creation of Special Committee**. After giving effect to the amendments to the Existing Agreement provided for in Section 2 of this Amendment, the Managers hereby create a restructuring committee composed of one (1) individual (the "**Restructuring Committee**") and appoint Steven G. Panagos to serve on the Restructuring Committee. The Restructuring Committee shall make recommendations to the Managers regarding all aspects of the Company's restructuring, including with respect to filings (whether existing presently or in the future) under chapter 11 of the United States Bankruptcy Code without limitation the undertaking by the Company to satisfy any requirements of Section 3.1(b)(iii) of the Superpriority Secured Debtor-in-Possession Credit Agreement by and among Vital Pharmaceuticals, Inc., a Florida corporation (the "Borrower"), as borrower, and certain other subsidiaries and affiliates of the Borrower from time to time as guarantors, the lenders party thereto from time to time (collectively, the "DIP Lenders") and Truist Bank, as administrative agent for the DIP Lenders.

4.     **Date of Effectiveness; Limited Effect**. This Amendment will be effective as of the Effective Date. Except as expressly provided in this Amendment, all the terms and provisions of the Existing Agreement are and will remain in full force and effect and are hereby ratified and confirmed by the Parties. Without limiting the generality of the foregoing, the amendments contained herein will not be construed as an amendment to or waiver of any other provision of the Existing Agreement or as a waiver of or consent to any further or future action on the part of either Party that would require the waiver or consent of the other Party. On and after the Effective Date,

2

11690243-3
US-DOCS\136615094.2

each reference in the Existing Agreement to "this Agreement," "the Agreement," "hereunder," "hereof," "herein," or words of like import will mean and be a reference to the Existing Agreement as amended by this Amendment.

5.    **Miscellaneous**.

(a)    This Amendment is governed by and construed in accordance with the laws of the State of Florida, without regard to the conflict of laws provisions of such State.

(b)    This Amendment shall inure to the benefit of and be binding upon each of the Parties and each of their respective permitted successors and permitted assigns.

(c)    The headings in this Amendment are for reference only and do not affect the interpretation of this Amendment.

(d)    This Amendment may be executed in counterparts, each of which is deemed an original, but all of which constitute one and the same agreement. Delivery of an executed counterpart of this Amendment electronically or by facsimile shall be effective as delivery of an original executed counterpart of this Amendment.

(e)    This Amendment constitutes the sole and entire agreement between the Parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

[Signature Page to Follow]

3

11690243-3
US-DOCS\136615094.2

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

<u>**COMPANY**</u>

JHO INTELLECTUAL PROPERTY HOLDINGS, LLC, a Florida limited liability company

By: _____
    John Owoc (Oct 24, 2022 12:23 EDT)
Name: John H. Owoc
Title: Chief Executive Officer

<u>**MEMBER**</u>

_____
John Owoc (Oct 24, 2022 12:23 EDT)

John H. Owoc

<u>**MANAGERS**</u>

_____
John Owoc (Oct 24, 2022 12:23 EDT)

John H. Owoc

_____

Kathleen Cole

_____

Dr. Guillermo Escalante

_____

Eric Hillman

_____

Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of JHO Intellectual Property Holdings, LLC]*

CONFIDENTIAL

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

**COMPANY**

JHO INTELLECTUAL PROPERTY HOLDINGS, LLC, a Florida limited liability company

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

**MEMBER**

_____
John H. Owoc

**MANAGERS**

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of JHO Intellectual Property Holdings, LLC]*

CONFIDENTIAL

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

**COMPANY**

JHO INTELLECTUAL PROPERTY HOLDINGS, LLC, a Florida limited liability company

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

**MEMBER**

_____
John H. Owoc

**MANAGERS**

_____
John H. Owoc

_____
Kathleen Cole

_____
Guillermo Escalante (Oct 21, 2022 08:53 PDT)
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of JHO Intellectual Property Holdings, LLC]*

CONFIDENTIAL

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

## COMPANY

JHO INTELLECTUAL PROPERTY HOLDINGS, LLC, a Florida limited liability company

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

## MEMBER

_____
John H. Owoc

## MANAGERS

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

*Eric Hillman*
_____
Eric Hillman

_____
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of JHO Intellectual Property Holdings, LLC]*

                                                  VPX-JHO0000001931

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

## COMPANY

JHO INTELLECTUAL PROPERTY HOLDINGS, LLC, a Florida limited liability company

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

## MEMBER

_____
John H. Owoc

## MANAGERS

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

*StGP*
Steven Panagos (Oct 25, 2022 17:56 EDT)
_____
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of JHO Intellectual Property Holdings, LLC]*

VPX-JHO0000001932

**OPERATING AGREEMENT**
**OF**
**QUASH SELTZER, LLC**

**THIS OPERATING AGREEMENT** (this "Agreement") of Quash Seltzer, LLC, a Florida limited liability company (the "Company"), is made and entered into as of the 6th day of August 2020, by the undersigned sole member of the Company (the "Member").

**WHEREAS**, the Company was formed as a limited liability company on August 4, 2020, when the Company's Articles of Organization (the "Articles") became effective upon filing with the Florida Department of State, Division of Corporations (the "DOC") pursuant to and in accordance with the Florida Revised Limited Liability Company Act (§ 605.0101 et seq., Fla. Stat. Ann.), as amended from time to time (the "Act");

**WHEREAS**, the Member is the sole Member of the Company and the Member agrees that the membership in and management of the Company shall be governed by the terms set forth herein.

**NOW THEREFORE**, in consideration of the agreements and obligations set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Member hereby agrees as follows:

1.    **Name:** The name of the Company is Quash Seltzer, LLC.

2.    **Principal Office and Place of Business.** The principal office and place of business of the Company shall be such location as the Member shall designate from time to time (the "Principal Office").

3.    **Agent for Service of Process.** The agent for service of process for the Company shall be such person or entity as the Member shall appoint from time to time.

4.    **Purpose.** The purpose of the Company is to transact any and all lawful business for which a limited liability company may be organized under the Act.

5.    **Term.** The term of the Company shall commence on the filing date of the Articles and shall continue until dissolved.

6.    **Capital Contributions.** The Member may make capital contributions to the Company in such amounts and at such times as the Member shall determine from time to time.

7.    **Distributions of Available Cash Flow.** Distributions of available cash flow shall be made in such amounts and at such times as the Member shall determine from time to time.

8.    **Management.** The Member shall have full, exclusive, and complete power to manage and control the business and affairs of the Company, and the decisions and acts of the Member shall bind the Company. The Member shall have all of the rights and powers provided to a member of a member-managed limited liability company by law, including the power and authority to execute instruments and documents, to mortgage or dispose of any real property held in the name of the Company, and to take any other actions on behalf of the Company, whether or not such actions are for carrying on the business of the Company in its usual way.

9.    **Officers.** The Member may appoint officers, from time to time, with such other titles as the Member may select, including the titles of Chief Executive Officer, Chief Scientific Officer, President, Vice President, Treasurer and Secretary, to act on behalf of the Company. An officer shall have such power and authority as the Member may delegate to any such person and need not be a member of the Company. The officers of the Company shall be as follows:

VPX-JHO0000001933

| Person | Position |
|--------|----------|
| John H. Owoc | Chief Executive Officer, Chief Scientific Officer and President |

10.  **Banking Resolution.** The Member shall open all banking accounts as the Member deems necessary and enter into any deposit agreements as are required by the financial institution at which such accounts are opened. The Member and such other persons or entities designated in writing by the Member shall have signing authority with respect to such bank accounts. Funds deposited into such accounts shall be used only for the business of the Company.

11.  **Indemnification.** The Company and its successors shall indemnify, defend and hold harmless the Member, the Member's Affiliates, and any officers of the Company (each, an "Indemnitee"), to the extent of the Company's assets, for, from and against any liability, damage, cost, expense, loss, claim or judgment incurred by the Indemnitee arising out of any claim based upon acts performed or omitted to be performed by the Indemnitee in connection with the business of the Company, including attorneys' fees and costs incurred by the Indemnitee in settlement or defense of such claims. Notwithstanding the foregoing, no Indemnitee shall be so indemnified, defended or held harmless for claims based upon acts or omissions in breach of this Agreement or which constitute fraud, gross negligence, or willful misconduct. Amounts incurred by an Indemnitee in connection with any action or suit arising out of or in connection with Company affairs shall be reimbursed by the Company. "Affiliate" means a person or entity who, with respect to the Member: (a) directly or indirectly controls, is controlled by or is under common control with the Member; (b) owns or controls 10 percent or more of the outstanding voting securities of the Member; (c) is an officer, director, shareholder, partner or member of the Member; or (d) if the Member is an officer, director, shareholder, partner or member of any entity, the entity for which the Member acts in any such capacity.

12.  **Liability.** No Indemnitee shall be personally liable, responsible, accountable in damages or otherwise to the Company for any act or omission performed or omitted by such Indemnitee in connection with the Company or its business. The Member's liability for the debts and obligations of the Company shall be limited as set forth in the Act and other applicable law.

13.  **Reimbursable Expenses.** The Company will reimburse the Member and any officers of the Company for all actual out-of-pocket third-party expenses incurred in connection with the carrying out of the duties set forth in this Agreement.

14.  **Records.** The Member shall keep or cause to be kept at the Principal Office or other location the following records of the Company: (a) a written record of the full name and business, residence or mailing address of the Member; (b) a copy of the initial Articles of Organization and all amendments thereto; (c) copies of all written operating agreements and all amendments to such agreements, including any prior written operating agreements no longer in effect; (d) copies of any written and signed promises by the Member to make capital contributions to the Company; (e) copies of the Company's federal, state and local income tax returns and reports, if any, for the three most recent years; (f) copies of any prepared financial statements of the Company for the three most recent years; and (g) minutes of every meeting as well as any written consents or actions taken without a meeting.

15.  **Dissolution; Liquidation.**

(a)    The Company shall dissolve, and its affairs shall be wound up upon the first to occur of the following (a "Dissolution Event"): (i) written consent or election of the Member or (ii) any other event or circumstance giving rise to the dissolution of the Company under Section 605.0701 of the Act, unless the Company's existence is continued pursuant to the Act.

2

(b)     Upon dissolution of the Company, the Company shall immediately commence to wind up its affairs and the Member shall promptly liquidate the business of the Company.  During the period of the winding up of the affairs of the Company, the rights and obligations of the Member under this Agreement shall continue.

(c)     In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied as follows: (i) first, to creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the Company (whether by payment or the making of reasonable provision for payment thereof); and (ii) second, to the Member.

(d)     Upon the occurrence of: (i) a Dissolution Event, the Member shall file articles of dissolution and (ii) the completion of the winding up of the Company, the Member shall file a statement of termination; in each case, with the DOC in accordance with the Act.

16.     **Governing Law.**  This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without regard to its conflicts of laws principles.

17.     **Severability.**  If any provision of this Agreement shall be conclusively determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement shall not be affected thereby.

18.     **Binding Effect.**  Except as otherwise provided herein, this Agreement shall inure to benefit of and be binding upon the Member and the Member's respective successors and assigns.

19.     **Titles and Captions.**  All article, section and paragraph titles and captions contained in this Agreement are for convenience only and are not a part of the context hereof.

20.     **Pronouns and Plurals.**  All pronouns and any variations thereof are deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the appropriate person may require.

21.     **No Third Party Rights.**  This Agreement is intended to create enforceable rights between the parties hereto only, and, except as expressly provided herein, creates no rights in, or obligations to, any other persons.

22.     **Amendments.**  This Agreement may not be amended except by a written document executed by the Member and the Company.

23.     **Entire Agreement.**  This Agreement, together with the Articles, constitutes the sole and entire agreement with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, whether written or oral, with respect to such subject matters.  There are no other agreements (written or otherwise) with respect to the business affairs of the Company, or capital and profits of the Company.

*[Signature Page to Follow]*

3

VPX-JHO0000001935

**IN WITNESS WHEREOF**, the undersigned, being the sole member of Quash Seltzer, LLC, a Florida limited liability company, has executed this Agreement, effective as of the date first written above.

SOLE MEMBER OF THE COMPANY:

John H. Owoc

Chief Executive Officer, Chief Scientific Officer and President

CONFIDENTIAL

## AMENDMENT TO OPERATING AGREEMENT OF
## QUASH SELTZER, LLC

This Amendment to Operating Agreement of Quash Seltzer, LLC (the "**Amendment**") is effective as of October 26, 2022 (the "**Effective Date**") by and between Quash Seltzer, LLC, a Florida limited liability company (the "**Company**") and John H. Owoc ("**Owoc**"), with Katherine Cole, Dr. Guillermo Escalante, Eric Hillman and Steven G. Panagos (the "**Additional Managers**") joining this Amendment solely for the purposes of Section 3. The Company and Owoc are sometimes collectively referred to in this Amendment as the "**Parties**", and each, a "**Party**".

## RECITALS

**WHEREAS**, the Parties previously entered into that certain Operating Agreement of the Company dated August 6, 2020 (the "**Existing Agreement**");

**WHEREAS**, the Parties desire to amend the Existing Agreement to provide for the Company being a manager-managed limited liability company; and

**WHEREAS**, after giving effect to the amendments to the Existing Agreement provided for below, Owoc and the Additional Managers desire to create a restructuring committee.

**NOW, THEREFORE**, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Definitions**. Capitalized terms used and not defined in this Amendment have the respective meanings assigned to them in the Existing Agreement.

2. **Amendments to the Existing Agreement**. As of the Effective Date, the Existing Agreement is hereby amended or modified as follows:

(a) Section 8 of the Existing Agreement is hereby deleted in its entirety and replaced with the following:

"Management.

    a. The management and control of the Company shall be vested in one or more managers (the "Managers"), who shall have full power and authority to manage the Company in all respects. The Company shall be deemed a "manager-managed company" within the meaning of the Act. The Managers shall have full, exclusive and complete power, authority and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and to supervise, direct and control the actions of the officers of the Company (each an "Officer" and, collectively, the "Officers") and to perform any and all other actions customary or incident to the management of the Company and shall have all of the rights and powers provided to a member of a manager-

11690246-3
US-DOCS\136615092.2

CONFIDENTIAL

managed company by law, and to take any other actions on behalf of the Company, whether or not such actions are for carrying on the business of the Company in its usual way. The Managers of the Company shall be John H. Owoc, Katherine Cole, Dr. Guillermo Escalante, Eric Hillman and Steven G. Panagos. Each Manager's term shall continue until his or her termination by operation of law, voluntary resignation, removal by the written consent by the Member, order or decree of any court of competent jurisdiction, or by his or her death. Any vacancy shall be filled with the consent of the Member.

b.   The Managers may designate one or more other committees, each of which shall have and may exercise all of the authority of the Managers in the business and affairs of the Company, except where the action of the Managers is required by statute. Each committee may consist of only one member. Vacancies in the membership of a committee shall be filled by the Managers at a regular or special meeting of the Managers. The designation of any such committee and the delegation thereto of authority shall not operate to relieve the Managers, or any member thereof, of any responsibility imposed upon any Manager by law."

(b)   Each reference to "the Member" in Section 9 through Section 13 shall be deleted in its entirety and replaced with "the Member and/or the Managers". Any related language providing for a singular or a plural form with reference to the "Member" shall be deleted in its entirety and replaced with the appropriate singular or plural form with reference to the "Member and/or the Managers".

3.   **Creation of Special Committee**. After giving effect to the amendments to the Existing Agreement provided for in Section 2 of this Amendment, the Managers hereby create a restructuring committee composed of one (1) individual (the "**Restructuring Committee**") and appoint Steven G. Panagos to serve on the Restructuring Committee. The Restructuring Committee shall make recommendations to the Managers regarding all aspects of the Company's restructuring, including with respect to filings (whether existing presently or in the future) under chapter 11 of the United States Bankruptcy Code without limitation the undertaking by the Company to satisfy any requirements of Section 3.1(b)(iii) of the Superpriority Secured Debtor-in-Possession Credit Agreement by and among Vital Pharmaceuticals, Inc., a Florida corporation (the "Borrower"), as borrower, and certain other subsidiaries and affiliates of the Borrower from time to time as guarantors, the lenders party thereto from time to time (collectively, the "DIP Lenders") and Truist Bank, as administrative agent for the DIP Lenders.

4.   **Date of Effectiveness; Limited Effect**. This Amendment will be effective as of the Effective Date. Except as expressly provided in this Amendment, all the terms and provisions of the Existing Agreement are and will remain in full force and effect and are hereby ratified and confirmed by the Parties. Without limiting the generality of the foregoing, the amendments contained herein will not be construed as an amendment to or waiver of any other provision of the Existing Agreement or as a waiver of or consent to any further or future action on the part of either Party that would require the waiver or consent of the other Party. On and after the Effective Date,

2

11690246-3
US-DOCS\136615092.2

each reference in the Existing Agreement to "this Agreement," "the Agreement," "hereunder," "hereof," "herein," or words of like import will mean and be a reference to the Existing Agreement as amended by this Amendment.

      **5.**     **<u>Miscellaneous</u>**.

      (a)     This Amendment is governed by and construed in accordance with the laws of the State of Florida, without regard to the conflict of laws provisions of such State.

      (b)     This Amendment shall inure to the benefit of and be binding upon each of the Parties and each of their respective permitted successors and permitted assigns.

      (c)     The headings in this Amendment are for reference only and do not affect the interpretation of this Amendment.

      (d)     This Amendment may be executed in counterparts, each of which is deemed an original, but all of which constitute one and the same agreement. Delivery of an executed counterpart of this Amendment electronically or by facsimile shall be effective as delivery of an original executed counterpart of this Amendment.

      (e)     This Amendment constitutes the sole and entire agreement between the Parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

[Signature Page to Follow]

3

11690246-3
US-DOCS\136615092.2

VPX-JHO0000001939

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

<u>**COMPANY**</u>

QUASH SELTZER, LLC, a Florida limited liability company

By: _____
John Owoc (Oct 24, 2022 12:23 EDT)
Name: John H. Owoc
Title: Chief Executive Officer

<u>**MEMBER**</u>

_____
John Owoc (Oct 24, 2022 12:23 EDT)
John H. Owoc

<u>**MANAGERS**</u>

_____
John Owoc (Oct 24, 2022 12:23 EDT)
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of Quash Seltzer, LLC]*

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

**COMPANY**

QUASH SELTZER, LLC, a Florida limited liability company

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

**MEMBER**

_____
John H. Owoc

**MANAGERS**

_____
John H. Owoc

_Kathleen Cole_
_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of Quash Seltzer, LLC]*

VPX-JHO0000001941

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

## COMPANY

QUASH SELTZER, LLC, a Florida limited liability company

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

## MEMBER

_____
John H. Owoc

## MANAGERS

_____
John H. Owoc

_____
Kathleen Cole

_____
Guillermo Escalante (Oct 21, 2022 08:53 PDT)
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of Quash Seltzer, LLC]*

VPX-JHO0000001942

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

## COMPANY

QUASH SELTZER, LLC, a Florida limited liability company

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

## MEMBER

_____
John H. Owoc

## MANAGERS

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

*Eric Hillman*
_____
Eric Hillman

_____
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of Quash Seltzer, LLC]*

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

<u>**COMPANY**</u>

QUASH SELTZER, LLC, a Florida limited liability company


By: _____
Name: John H. Owoc
Title: Chief Executive Officer


<u>**MEMBER**</u>


_____
John H. Owoc


<u>**MANAGERS**</u>


_____
John H. Owoc


_____
Kathleen Cole


_____
Dr. Guillermo Escalante


_____
Eric Hillman

*StGPT*
Steven Panagos (Oct 25, 2022 17:56 EDT)
_____
Steven G. Panagos


*[Signature Page to Amendment to Operating Agreement of Quash Seltzer, LLC]*

CONFIDENTIAL                                                           VPX-JHO0000001944

# OPERATING AGREEMENT
## OF
## JHO REAL ESTATE INVESTMENT, LLC

**THIS OPERATING AGREEMENT** (this "Agreement") of JHO Real Estate Investment, LLC, a Florida limited liability company (the "Company"), is made and entered into as of the 13th day of August 2020, by the undersigned as the sole member of the Company (the "Member"), with reference to the following facts:

**WHEREAS**, the Company was formed as a limited liability company on August 15, 2019, when the Company's Articles of Organization (the "Articles") became effective upon filing with the Florida Department of State, Division of Corporations (the "DOC") pursuant to and in accordance with the Florida Revised Limited Liability Company Act (§ 605.0101 et seq., Fla. Stat. Ann.), as amended from time to time (the "Act");

**WHEREAS**, the Member is the sole member of the Company and the Member agrees that the membership in and management of the Company shall be governed by the terms set forth herein.

**NOW THEREFORE**, in consideration of the agreements and obligations set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Member and the Company hereby agree as follows:

1.  **Name.** The name of the Company is JHO Real Estate Investment, LLC.

2.  **Principal Office and Place of Business.** The principal office and place of business of the Company shall be such location as the Member shall appoint from time to time (the "Principal Office").

3.  **Agent for Service of Process.** The agent for service of process for the Company shall be such person or entity as the Member shall appoint from time to time.

4.  **Purpose.** The purpose of the Company is to transact any and all lawful business for which a limited liability company may be organized under the Act.

5.  **Term.** The term of the Company shall commence on the filing date of the Articles and shall continue until dissolved.

6.  **Capital Contributions.** The Member may make capital contributions to the Company in such amounts and at such times as the Member shall determine in the Member's sole discretion.

7.  **Distributions of Available Cash Flow.** Distributions of available cash flow shall be made in such amounts and at such times as the Member shall determine in the Member's sole discretion.

8.  **Management.** The management and control of the Company shall be vested in a sole manager (the "Manager"), who shall have full power and authority to manage the Company in all respects. The Company shall be deemed a "manager-managed company" within the meaning of the Act. The Manager shall have full, exclusive and complete power, authority and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and to supervise, direct and control the actions of the officers of the Company (each an

"Officer" and, collectively, the "Officers") and to perform any and all other actions customary or incident to the management of the Company and shall have all of the rights and powers provided to a member of a manager-managed company by law, and to take any other actions on behalf of the Company, whether or not such actions are for carrying on the business of the Company in its usual way. The Manager of the Company shall be John H. Owoc. The Manager's terms shall continue until his termination by operation of law, voluntary resignation, removal by the written consent by the Member, order or decree of any court of competent jurisdiction, or by his death. Any vacancy shall be filled with the consent of the Member.

9.    **Officers.**  The Member or Manager may appoint officers, from time to time, with such other titles as the Member or the Manager may select, including the titles of Chief Executive Officer, Chief Scientific Officer, President, Vice President, Treasurer and Secretary, to act on behalf of the Company. An officer shall have such power and authority as the Member or the Manager may delegate to any such person and need not be a member of the Company. The officers of the Company shall be as follows:

| Person | Position(s) |
|--------|-------------|
| John H. Owoc | Chief Executive Officer, Chief Scientific Officer, and President |

10.    **Banking Resolution.**  The Manager shall open all banking accounts as the Manager deems necessary and enter into any deposit agreements as are required by the financial institution at which such accounts are opened. The Member, officers and such other persons or entities designated in writing by the Manager shall have signing authority with respect to such bank accounts. Funds deposited into such accounts shall be used only for the business of the Company.

11.    **Indemnification.**  The Company and its successors shall indemnify, defend and hold harmless the Member, the Manager, any other manager appointed by the Member, the officers, and the Member's or Manager's Affiliates, as defined below (each, an "Indemnitee"), to the extent of the Company's assets, for, from and against any liability, damage, cost, expense, loss, claim or judgment incurred by the Indemnitee arising out of any claim based upon acts performed or omitted to be performed by the Indemnitee in connection with the business of the Company, including attorneys' fees and costs incurred by the Indemnitee in settlement or defense of such claims. Notwithstanding the foregoing, no Indemnitee shall be so indemnified, defended or held harmless for claims based upon acts or omissions in breach of this Agreement or which constitute fraud, gross negligence, or willful misconduct. Amounts incurred by an Indemnitee in connection with any action or suit arising out of or in connection with Company affairs shall be reimbursed by the Company. "Affiliate" means a person or entity who, with respect to the Member or the Manager: (a) directly or indirectly controls, is controlled by or is under common control with such member or manager, as applicable; (b) owns or controls 10 percent or more of the outstanding voting securities of such member or manager, as applicable; (c) is an officer, director, shareholder, partner or member of such member or manager, as applicable; or (d) if such member or manager, as applicable, is an officer, director, shareholder, partner or member of any entity, the entity for which member or manager, as applicable, acts in any such capacity.

12.    **Liability.**  No Indemnitee shall be personally liable, responsible, accountable in damages or otherwise to the Company for any act or omission performed or omitted by such Indemnitee in connection with the Company or its business. The liability of the Member for the debts and obligations of the Company shall be limited as set forth in the Act and other applicable law.

VPX-JHO0000001946

13.     **Reimbursable Expenses.** The Company will reimburse the Member and the Manager for all actual out-of-pocket third-party expenses incurred in connection with the carrying out of the duties set forth in this Agreement.

14.     **Records.** The Member or the Manager shall keep or cause to be kept at the Principal Office or other location the following records of the Company: (a) a written record of the full name and business, residence or mailing address of the Member; (b) a copy of the initial Articles of Organization and all amendments thereto; (c) copies of all written limited liability company agreements and all amendments to such agreements, including any prior written limited liability company agreements no longer in effect; (d) copies of any written and signed promises by the Member to make capital contributions to the Company; (e) copies of the Company's federal, state and local income tax returns and reports, if any, for the three most recent years; (f) copies of any prepared financial statements of the Company for the three most recent years; and (g) minutes of every meeting as well as any written consents or actions taken without a meeting.

15.     **Dissolution.** The Company shall be dissolved upon the election of the Member.

16.     **Filing Upon Dissolution.** As soon as possible following the dissolution of the Company, the Member or the Manager shall execute and file all notices and other documents required under the Act and any other applicable law.

17.     **Liquidation.** Upon dissolution of the Company, the Company shall be wound up and liquidated as rapidly as business circumstances permit, the Manager shall act as the liquidating trustee, and the assets of the Company shall be liquidated and the proceeds thereof shall be paid (to the extent permitted by applicable law) in the following order: (a) first, to creditors, including the Member if the Member is a creditor, in the order and priority required by applicable law; (b) second, to a reserve for contingent liabilities to be distributed at the time and in the manner as the liquidating trustee determines in its sole discretion; and (c) third, to the Member.

18.     **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without regard to its conflicts of laws principles.

19.     **Severability.** If any provision of this Agreement shall be conclusively determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement shall not be affected thereby.

20.     **Binding Effect.** Except as otherwise provided herein, this Agreement shall inure to benefit of and be binding upon the Member and the Member's respective successors and assigns.

21.     **Titles and Captions.** All article, section and paragraph titles and captions contained in this Agreement are for convenience only and are not a part of the context hereof.

22.     **Pronouns and Plurals.** All pronouns and any variations thereof are deemed to refer to the masculine, feminine, neuter, singular or plural as the identity of the appropriate person may require.

23.     **No Third-Party Rights.** This Agreement is intended to create enforceable rights between the parties hereto only, and, except as expressly provided herein, creates no rights in, or obligations to, any other persons.

24.     **Entire Agreement.**  This Agreement, together with the Articles, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, whether written or oral, with respect to such subject matter.  There are no other agreements (written or otherwise) with respect to business affairs of the company or capital and profits of the Company.

25.     **Amendments.**  This Agreement may not be amended except by a written document executed by the Member and the Company.

*[signature page to follow]*

VPX-JHO0000001948

**IN WITNESS WHEREOF**, the undersigned, being the sole member of JHO Real Estate Investment, LLC, a Florida limited liability company, has executed this Agreement, effective as of the date first written above.

**MEMBER**:

John H. Owoc

Chief Executive Officer, Chief Scientific Officer, and President

CONFIDENTIAL

VPX-JHO0000001949

**AMENDMENT TO OPERATING AGREEMENT OF**
**JHO REAL ESTATE INVESTMENT, LLC**

This Amendment to Operating Agreement of JHO Real Estate Investment, LLC (the "**Amendment**") is effective as of October 26, 2022 (the "**Effective Date**") by and between JHO Real Estate Investment, LLC, a Florida limited liability company (the "**Company**") and John H. Owoc ("**Owoc**"), with Katherine Cole, Dr. Guillermo Escalante, Eric Hillman and Steven G. Panagos (the "**Additional Managers**") joining this Amendment solely for the purposes of Section 3. The Company and Owoc are sometimes collectively referred to in this Amendment as the "**Parties**", and each, a "**Party**".

## RECITALS

**WHEREAS**, the Parties previously entered into that certain Operating Agreement of the Company dated August 13, 2020 (the "**Existing Agreement**");

**WHEREAS**, the Parties desire to amend the Existing Agreement to provide for additional managers; and

**WHEREAS**, after giving effect to the amendments to the Existing Agreement provided for below, Owoc and the Additional Managers desire to create a restructuring committee.

**NOW, THEREFORE**, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.     **Definitions**. Capitalized terms used and not defined in this Amendment have the respective meanings assigned to them in the Existing Agreement.

2.     **Amendments to the Existing Agreement**. As of the Effective Date, the Existing Agreement is hereby amended or modified as follows:

(a)     Section 8 of the Existing Agreement is hereby deleted in its entirety and replaced with the following:

"Management.

a.     The management and control of the Company shall be vested in one or more managers (the "Managers"), who shall have full power and authority to manage the Company in all respects. The Company shall be deemed a "manager-managed company" within the meaning of the Act. The Managers shall have full, exclusive and complete power, authority and discretion to manage and control the business, property and affairs of the Company, to make all decisions regarding those matters and to supervise, direct and control the actions of the officers of the Company (each an "Officer" and, collectively, the "Officers") and to perform any and all other actions customary or incident to the management of the Company and shall

11690201-3
US-DOCS\136615093.2

CONFIDENTIAL

have all of the rights and powers provided to a member of a manager-managed company by law, and to take any other actions on behalf of the Company, whether or not such actions are for carrying on the business of the Company in its usual way. The Managers of the Company shall be John H. Owoc, Katherine Cole,  Dr. Guillermo Escalante, Eric Hillman and Steven G. Panagos. Each Manager's term shall continue until his or her termination by operation of law, voluntary resignation, removal by the written consent by the Member, order or decree of any court of competent jurisdiction, or by his or her death. Any vacancy shall be filled with the consent of the Member.

b.  The Managers may designate one or more other committees, each of which shall have and may exercise all of the authority of the Managers in the business and affairs of the Company, except where the action of the Managers is required by statute. Each committee may consist of only one member. Vacancies in the membership of a committee shall be filled by the Managers at a regular or special meeting of the Managers. The designation of any such committee and the delegation thereto of authority shall not operate to relieve the Managers, or any member thereof, of any responsibility imposed upon any Manager by law."

(b)  Each reference to the term "Manager" shall be deleted in its entirety and replaced with the term "Managers". Any related language providing for a singular or a plural form with reference to a "Manager" shall be deleted in its entirety and replaced with the appropriate singular or plural form with reference to the "Managers".

**3.**  **Creation of Special Committee**. After giving effect to the amendments to the Existing Agreement provided for in Section 2 of this Amendment, the Managers hereby create a restructuring committee composed of one (1) individual (the "**Restructuring Committee**") and appoint Steven G. Panagos to serve on the Restructuring Committee. The Restructuring Committee shall make recommendations to the Managers regarding all aspects of the Company's restructuring, including with respect to filings (whether existing presently or in the future) under chapter 11 of the United States Bankruptcy Code without limitation the undertaking by the Company to satisfy any requirements of Section 3.1(b)(iii) of the Superpriority Secured Debtor-in-Possession Credit Agreement by and among Vital Pharmaceuticals, Inc., a Florida corporation (the "Borrower"), as borrower, and certain other subsidiaries and affiliates of the Borrower from time to time as guarantors, the lenders party thereto from time to time (collectively, the "DIP Lenders") and Truist Bank, as administrative agent for the DIP Lenders.

**4.**  **Date of Effectiveness; Limited Effect**. This Amendment will be effective as of the Effective Date. Except as expressly provided in this Amendment, all the terms and provisions of the Existing Agreement are and will remain in full force and effect and are hereby ratified and confirmed by the Parties. Without limiting the generality of the foregoing, the amendments contained herein will not be construed as an amendment to or waiver of any other provision of the Existing Agreement or as a waiver of or consent to any further or future action on the part of either Party that would require the waiver or consent of the other Party. On and after the Effective Date,

11690201-3
US-DOCS\136615093.2

CONFIDENTIAL                                                      VPX-JHO0000001951

each reference in the Existing Agreement to "this Agreement," "the Agreement," "hereunder," "hereof," "herein," or words of like import will mean and be a reference to the Existing Agreement as amended by this Amendment.

5.    **Miscellaneous**.

(a)    This Amendment is governed by and construed in accordance with the laws of the State of Florida, without regard to the conflict of laws provisions of such State.

(b)    This Amendment shall inure to the benefit of and be binding upon each of the Parties and each of their respective permitted successors and permitted assigns.

(c)    The headings in this Amendment are for reference only and do not affect the interpretation of this Amendment.

(d)    This Amendment may be executed in counterparts, each of which is deemed an original, but all of which constitute one and the same agreement. Delivery of an executed counterpart of this Amendment electronically or by facsimile shall be effective as delivery of an original executed counterpart of this Amendment.

(e)    This Amendment constitutes the sole and entire agreement between the Parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

[Signature Page to Follow]

3

CONFIDENTIAL     VPX-JHO0000001952

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

**COMPANY**

JHO REAL ESTATE INVESTMENT, LLC, a Florida limited liability company

By: _____
John Owoc (Oct 24, 2022 12:23 EDT)
Name: John H. Owoc
Title: Chief Executive Officer

**MEMBER**

_____
John Owoc (Oct 24, 2022 12:23 EDT)
John H. Owoc

**MANAGERS**

_____
John Owoc (Oct 24, 2022 12:23 EDT)
John H. Owoc


_____
Kathleen Cole


_____
Dr. Guillermo Escalante


_____
Eric Hillman


_____
Steven G. Panagos


*[Signature Page to Amendment to Operating Agreement of JHO Real Estate Investment, LLC]*

VPX-JHO0000001953

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

<u>**COMPANY**</u>

JHO REAL ESTATE INVESTMENT, LLC, a Florida limited liability company

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

<u>**MEMBER**</u>

_____
John H. Owoc

<u>**MANAGERS**</u>

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of JHO Real Estate Investment, LLC]*

CONFIDENTIAL                                                 VPX-JHO0000001954

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

## COMPANY

JHO REAL ESTATE INVESTMENT, LLC, a Florida limited liability company

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

## MEMBER

_____
John H. Owoc

## MANAGERS

_____
John H. Owoc

_____
Kathleen Cole

_____
Guillermo Escalante (Oct 21, 2022 08:53 PDT)
Dr. Guillermo Escalante

_____
Eric Hillman

_____
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of JHO Real Estate Investment, LLC]*

VPX-JHO0000001955

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

## COMPANY

JHO REAL ESTATE INVESTMENT, LLC, a Florida limited liability company

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

## MEMBER

_____
John H. Owoc

## MANAGERS

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

*Eric Hillman*
_____
Eric Hillman

_____
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of JHO Real Estate Investment, LLC]*

VPX-JHO0000001956

**IN WITNESS WHEREOF**, the Parties have executed this Amendment effective as of the Effective Date.

## COMPANY

JHO REAL ESTATE INVESTMENT, LLC, a Florida limited liability company

By: _____
Name: John H. Owoc
Title: Chief Executive Officer

## MEMBER

_____
John H. Owoc

## MANAGERS

_____
John H. Owoc

_____
Kathleen Cole

_____
Dr. Guillermo Escalante

_____
Eric Hillman

_St G P T_
Steven Panagos (Oct 25, 2022 17:56 EDT)
_____
Steven G. Panagos

*[Signature Page to Amendment to Operating Agreement of JHO Real Estate Investment, LLC]*

CONFIDENTIAL                                                          VPX-JHO0000001957

## EXHIBIT C

**CHARTERS**

[*See attached*]



# State of Florida

## Department of State

I certify the attached is a true and correct copy of the Articles of Incorporation, as amended to date, of VITAL PHARMACEUTICALS, INC., a corporation organized under the laws of the State of Florida, as shown by the records of this office.

The document number of this corporation is P96000040071.

Given under my hand and the Great Seal of the State of Florida at Tallahassee, the Capital, this the Thirtieth day of September, 2022



*Cord Byrd*
*Secretary of State*

CR2E022 (01-11)

## ARTICLES OF INCORPORATION

### OF

### VITAL PHARMACEUTICALS, INC.

FILED

96 MAY -7 PM 3: 3?

SECRE...
TALLAHASSEE, FLORIDA

The undersigned, desiring to form a corporation under the provisions of the Laws of the State of Florida, hereby makes, adopts, subscribes and acknowledges before a Notary Public, and files with the Secretary of State of the State of Florida, the following Articles of Incorporation for such corporation:

### ARTICLE ONE

#### Name

The name of the corporation is Vital Pharmaceuticals , Inc.

### ARTICLE TWO

#### Mailing Address and Principal Office

The mailing address and principal office of the corporation is 6573 Stirling Rd., Ft. Lauderdale, Florida 33314.

### ARTICLE THREE

#### Purpose

The corporation is organized for the purpose of transacting any and all lawful business.

### ARTICLE FOUR

#### Capitalization

The aggregate number of shares which the corporation is authorized to issue is 1000 shares of Common Stock. Such shares shall be of a single class, and shall have a par value of $1.00 per share, subject to Shareholders Agreement dated March 19, 1996.

-1-

CONFIDENTIAL

VPX-JHO0000001960

## ARTICLE FIVE

### Pre-emptive Rights

Every shareholder, upon the sale for cash of any new stock of this corporation of the same kind, class or series as that which he already holds, shall have the right to purchase his or her pro rata share thereof (as nearly as may be done without issuance of fractional shares) at the price at which it is offered to others, subject to Shareholders Agreement dated March 19, 1996 between shareholders.

### ARTICLE SIX

### Registered Office and Agent

The street address of the initial registered office of the corporation is 6573 Stirling Rd., Ft. Lauderdale, Florida 33314, and the name of its initial registered agent a, that address is JOHN H. OWOC. Notwithstanding the above, this corporation may move the principal office to any other address.

### ARTICLE SEVEN

### Incorporator

The name and address of the incorporator is:
JOHN H. OWOC, 6573 Stirling Rd., Ft. Lauderdale, Florida 33314.

### ARTICLE EIGHT

### Directors

The initial board of directors of the corporation shall consist of one director and such director shall hold office for the first year of the corporation's existence, or until his or her successor has been duly elected and qualified, or until his or her death. The number of directors may be either increased or decreased by the bylaws of the corporation but shall never be less than one. The name and address of the director is: JOHN H. OWOC, 6573 Stirling Rd., Ft. Lauderdale, Florida 33314.

-2-

VPX-JHO0000001961

## ARTICLE NINE

### Indemnification

The corporation shall indemnify any officer, director, employee or agent, or any former officer, director, employee or agent, to the full extent permitted by law.

## ARTICLE TEN

### By-laws

The shareholders of the corporation shall have the power to adopt, alter, amend or repeal the by-laws of the corporation.

## ARTICLE ELEVEN

### Amendment

This corporation reserves the right to amend or repeal any provision contained in these Articles of Incorporation, or any amendment hereto, and any right conferred upon the shareholders is subject to this reservation.

IN WITNESS WHEREOF, the undersigned incorporator has executed these Articles of Incorporartion this 19 day of March, 1996.

JOHN H. OWOC

-3-

CONFIDENTIAL

STATE OF FLORIDA
COUNTY OF BROWARD

BEFORE ME, the undersigned authority, personally appeared, JOHN H.
OWOC, who has produced his Florida Driver's License as identification, or who is
personally known to me and who, after being by me first duly cautioned and sworn,
deposes and says under oath that he is the party to the foregoing Articles of Incorporation
and he executed such articles voluntarily, and that the facts therein are true.

WITNESS my hand and seal at Broward County, Florida, the day and date first
above set forth.

My commission expires:

Notary Public, State of Florida

VINCENT J. OWOC
MY COMMISSION # CC 394028
EXPIRES: August 10, 1998
Bonded Thru Notary Public Underwriters

-4-

CONFIDENTIAL

VPX-JHO0000001963

## CERTIFICATE OF DESIGNATION
## REGISTERED AGENT/REGISTERED OFFICE

*FILED 96 MAY -7 PM 3: 33 SECRETARY OF STATE TALLAHASSEE, FLORIDA*

Pursuant to the provisions of sections 607.0501 or 617.0501, Florida Statutes, the undersigned corporation, organized under the laws of the State of Florida, submits the following statement in designating the registered office/registered agent, in the State of Florida.

1. The name of the corporation is: **VITAL PHARMACEUTICALS, INC.**

2. The name and address of the registered agent and office is:

**JOHN H. OWOC**

(NAME)

**6573 Stirling Rd.**

(P.O. BOX NOT ACCEPTABLE)

**Ft. Lauderdale, Florida 33314**

(CITY/STATE/ZIP)

HAVING BEEN NAMED AS REGISTERED AGENT AND TO ACCEPT SERVICE OF PROCESS FOR THE ABOVE STATED CORPORATION AT THE PLACE DESIGNATED IN THIS CERTIFICATE, I HEREBY ACCEPT THE APPOINTMENT AS REGISTERED AGENT AND AGREE TO ACT IN THIS CAPACITY. I FURTHER AGREE TO COMPLY WITH THE PROVISIONS OF ALL STATUTES RELATING TO THE PROPER AND COMPLETE PERFORMANCE OF MY DUTIES, AND I AM FAMILIAR WITH AND ACCEPT THE OBLIGATIONS OF MY POSITION AS REGISTERED AGENT.

SIGNATURE _____

DATE ___5/5/96___

VPX-JHO0000001964

**Articles of Amendment**
**to**
**Articles of Incorporation**
**of**

VITAL PHARMACEUTICALS, INC.

**(Name of Corporation as currently filed with the Florida Dept. of State)**

P96000040071

(Document Number of Corporation (if known))

Pursuant to the provisions of section 607.1006, Florida Statutes, this *Florida Profit Corporation* adopts the following amendment(s) to its Articles of Incorporation:

**A. If amending name, enter the new name of the corporation:**

_____*The new*
*name must be distinguishable and contain the word "corporation," "company," or "incorporated" or the abbreviation "Corp.,"*
*"Inc.," or Co.," or the designation "Corp," "Inc," or "Co". A professional corporation name must contain the word*
*"chartered," "professional association," or the abbreviation "P.A."*

**B. Enter new principal office address, if applicable:**
*(Principal office address MUST BE A STREET ADDRESS )*

_____
_____
_____
_____

**C. Enter new mailing address, if applicable:**
*(Mailing address MAY BE A POST OFFICE BOX)*

_____
_____
_____

**D. If amending the registered agent and/or registered office address in Florida, enter the name of the new registered agent and/or the new registered office address:**

*Name of New Registered Agent*  _____

_____
*(Florida street address)*

*New Registered Office Address*: _____, Florida_____
(City)                                    (Zip Code)

**New Registered Agent's Signature, if changing Registered Agent:**
*I hereby accept the appointment as registered agent. I am familiar with and accept the obligations of the position.*

_____
*Signature of New Registered Agent, if changing*

**Check if applicable**
☐ The amendment(s) is/are being filed pursuant to s. 607.0120 (11) (e), F.S.

CONFIDENTIAL

If amending the Officers and/or Directors, enter the title and name of each officer/director being removed and title, name, and address of each Officer and/or Director being added:

*(Attach additional sheets, if necessary)*

*Please note the officer/director title by the first letter of the office title:*

*P = President; V= Vice President; T= Treasurer; S= Secretary; D= Director; TR= Trustee; C = Chairman or Clerk; CEO = Chief Executive Officer; CFO = Chief Financial Officer. If an officer/director holds more than one title, list the first letter of each office held. President, Treasurer, Director would be PTD.*

*Changes should be noted in the following manner. Currently John Doe is listed as the PST and Mike Jones is listed as the V. There is a change, Mike Jones leaves the corporation, Sally Smith is named the V and S. These should be noted as John Doe, PT as a Change, Mike Jones, V as Remove, and Sally Smith, SV as an Add.*

Example:

| | | |
|---|---|---|
| X Change | PT | John Doe |
| X Remove | V | Mike Jones |
| X Add | SV | Sally Smith |

| Type of Action (Check One) | Title | Name | Address |
|---|---|---|---|
| 1) ____ Change | S | Frank Massabki | 1600 N. PARK DR. |
| ____ Add | | | WESTON, FL 33326 |
| X ____ Remove | | | |
| 2) ____ Change | EVP | Eugene Bukovi | 1600 N. PARK DR. |
| ____ Add | | | WESTON, FL 33326 |
| X ____ Remove | | | |
| 3) ____ Change | | | |
| ____ Add | | | |
| ____ Remove | | | |
| 4) ____ Change | | | |
| ____ Add | | | |
| ____ Remove | | | |
| 5) ____ Change | | | |
| ____ Add | | | |
| ____ Remove | | | |
| 6) ____ Change | | | |
| ____ Add | | | |
| ____ Remove | | | |

CONFIDENTIAL

E. **If amending or adding additional Articles, enter change(s) here:**
    (Attach *additional sheets, if necessary).*    *(Be specific)*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

F. **If an amendment provides for an exchange, reclassification, or cancellation of issued shares, provisions for implementing the amendment if not contained in the amendment itself:**
    *(if not applicable, indicate N/A)*

_____

_____

_____

_____

_____

_____

_____

_____

_____

CONFIDENTIAL

The date of each amendment(s) adoption: _____, if other than the date this document was signed.

Effective date _if applicable_: _____

(no more than 90 days after amendment file date)

Note: If the date inserted in this block does not meet the applicable statutory filing requirements, this date will not be listed as the document's effective date on the Department of State's records.

Adoption of Amendment(s)        (CHECK ONE)

☒ The amendment(s) was/were adopted by the incorporators, or board of directors without shareholder action and shareholder action was not required.

☐ The amendment(s) was/were adopted by the shareholders. The number of votes cast for the amendment(s) by the shareholders was/were sufficient for approval.

☐ The amendment(s) was/were approved by the shareholders through voting groups. *The following statement must be separately provided for each voting group entitled to vote separately on the amendment(s):*

"The number of votes cast for the amendment(s) was/were sufficient for approval

by _____."

(voting group)

Dated ___August 12, 2020___

Signature _____

(By a director, president or other officer – if directors or officers have not been selected, by an incorporator – if in the hands of a receiver, trustee, or other court appointed fiduciary by that fiduciary)

Carlos M Alvarez

(Typed or printed name of person signing)

Attorney-in-Fact

(Title of person signing)

CONFIDENTIAL

⊙ 11/06/2020 12:54 PM          15612148442              → 18506176380                                    pg 2 of 5

Articles of Amendment
to
Articles of Incorporation
of

VITAL PHARMACEUTICALS, INC.
_____
(Name of Corporation as currently filed with the Florida Dept. of State)

P96000040071
_____
(Document Number of Corporation (if known))

Pursuant to the provisions of section 607.1006, Florida Statutes, this *Florida Profit Corporation* adopts the following amendment(s) to its Articles of Incorporation:

A. **If amending name, enter the new name of the corporation:**

_____The  new
name must be distinguishable and contain the word "corporation," "company," or "incorporated" or the abbreviation "Corp.," "Inc.," or Co.," or the designation "Corp," "Inc," or "Co". A professional corporation name must contain the word "chartered," "professional association," or the abbreviation "P.A."

B. **Enter new principal office address, if applicable:**
(Principal office address *MUST BE A STREET ADDRESS* )

C. **Enter new mailing address, if applicable:**
(Mailing address *MAY BE A POST OFFICE BOX*)

D. **If amending the registered agent and/or registered office address in Florida, enter the name of the new registered agent and/or the new registered office address:**

*Name of New Registered Agent*   _____

_____
(Florida street address)

*New Registered Office Address*:  _____, Florida_____
(City)                                (Zip Code)

**New Registered Agent's Signature, if changing Registered Agent:**
*I hereby accept the appointment as registered agent. I am familiar with and accept the obligations of the position.*

_____
*Signature of New Registered Agent, if changing*

**Check if applicable**
☐ The amendment(s) is/are being filed pursuant to s. 607.0120 (11) (e), F.S.

CONFIDENTIAL

11/06/2020 12:54 PM    15612148442    → 18506176380    pg 3 of 5

If amending the Officers and/or Directors, enter the title and name of each officer/director being removed and title, name, and address of each Officer and/or Director being added:

*(Attach additional sheets, if necessary)*

*Please note the officer/director title by the first letter of the office title:*

*P = President; V= Vice President; T= Treasurer; S= Secretary; D= Director; TR= Trustee; C = Chairman or Clerk; CEO = Chief Executive Officer; CFO = Chief Financial Officer. If an officer/director holds more than one title, list the first letter of each office held. President, Treasurer, Director would be PTD.*

*Changes should be noted in the following manner. Currently John Doe is listed as the PST and Mike Jones is listed as the V. There is a change, Mike Jones leaves the corporation, Sally Smith is named the V and S. These should be noted as John Doe, PT as a Change, Mike Jones, V as Remove, and Sally Smith, SV as an Add.*

**Example:**

| X Change | PT | John Doe |
|---|---|---|
| X Remove | V | Mike Jones |
| X Add | SV | Sally Smith |

| Type of Action (Check One) | Title | Name | Address |
|---|---|---|---|
| | Authorized | | |
| 1) ___ Change | Person | Gregg Metzger | 1600 N. PARK DR. |
| X ___ Add | | | WESTON, FL 33326 |
| ___ Remove | | | |
| 2) ___ Change | _____ | _____ | _____ |
| ___ Add | | | _____ |
| ___ Remove | | | _____ |
| 3 ) ___ Change | _____ | _____ | _____ |
| ___ Add | | | _____ |
| ___ Remove | | | _____ |
| 4) ___ Change | _____ | _____ | _____ |
| ___ Add | | | _____ |
| ___ Remove | | | _____ |
| 5) ___ Change | _____ | _____ | _____ |
| ___ Add | | | _____ |
| ___ Remove | | | _____ |
| 6) ___ Change | _____ | _____ | _____ |
| ___ Add | | | _____ |
| ___ Remove | | | _____ |

FILED 2020 NOV -6 AM 11:18

E. **If amending or adding additional Articles, enter change(s) here:**
  (Attach *additional sheets, if necessary).    (Be specific)*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

F. **If an amendment provides for an exchange, reclassification, or cancellation of issued shares,**
  **provisions for implementing the amendment if not contained in the amendment itself:**
  *(if not applicable, indicate N/A)*

_____

_____

_____

_____

_____

_____

2020 NOV -6 AM 11:18

FILED

CONFIDENTIAL

The date of each amendment(s) adoption: _____, if other than the
date this document was signed.

Effective date **if applicable**: _____
                                        *(no more than 90 days after amendment file date)*

Note:  If the date inserted in this block does not meet the applicable statutory filing requirements, this date will not be listed as the
document's effective date on the Department of State's records.

**Adoption of Amendment(s)**           **(CHECK ONE)**

☑ The amendment(s) was/were adopted by the incorporators, or board of directors without shareholder action and shareholder
action was not required.

☐ The amendment(s) was/were adopted by the shareholders.  The number of votes cast for the amendment(s)
by the shareholders was/were sufficient for approval.

☐ The amendment(s) was/were approved by the shareholders through voting groups. *The following statement
must be separately provided for each voting group entitled to vote separately on the amendment(s):*

"The number of votes cast for the amendment(s) was/were sufficient for approval

by _____."
                        *(voting group)*

                November 6th 2020
Dated_____

Signature_____
        (By a director, president or other officer – if directors or officers have not been
        selected, by an incorporator – if in the hands of a receiver, trustee, or other court
        appointed fiduciary by that fiduciary)

        Carlos M Alvarez
        _____
            (Typed or printed name of person signing)

        Attorney-in-Fact
        _____
            (Title of person signing)

FILED 2020 NOV -6 AM 11:19

**Articles of Amendment**
**to**
**Articles of Incorporation**
**of**

**FILED**

VITAL PHARMACEUTICALS, INC.

2022 FEB 22 AM 11: 30

(Name of Corporation as currently filed with the Florida Dept. of State)

65-0668430

SECRETARY OF STATE
TALLAHASSEE, FL

(Document Number of Corporation (if known))

Pursuant to the provisions of section 607.1006, Florida Statutes, this *Florida Profit Corporation* adopts the following amendment(s) to its Articles of Incorporation:

**A. If amending name, enter the new name of the corporation:**

_____ *The new name must be distinguishable and contain the word "corporation," "company," or "incorporated" or the abbreviation "Corp.," "Inc.," or Co.," or the designation "Corp," "Inc," or "Co". A professional corporation name must contain the word "chartered," "professional association," or the abbreviation "P.A."*

**B. Enter new principal office address, if applicable:**
*(Principal office address MUST BE A STREET ADDRESS )*

5201 Blue Lagoon Drive

Miami, Florida 33126

**C. Enter new mailing address, if applicable:**
*(Mailing address MAY BE A POST OFFICE BOX)*

5201 Blue Lagoon Drive

Miami, Florida 33126

**D. If amending the registered agent and/or registered office address in Florida, enter the name of the new registered agent and/or the new registered office address:**

*Name of New Registered Agent*    Gaspar Metralha

500 Flagler Street

*(Florida street address)*

*New Registered Office Address:*    Miami _____, Florida 33130

*(City)*                                *(Zip Code)*

**New Registered Agent's Signature, if changing Registered Agent:**
*I hereby accept the appointment as registered agent. I am familiar with and accept the obligations of the position.*

_____
*Signature of New Registered Agent, if changing*

**Check if applicable**
☐ The amendment(s) is/are being filed pursuant to s. 607.0120 (11) (e), F.S.

CONFIDENTIAL

VPX-JHO0000001973

If amending the Officers and/or Directors, enter the title and name of each officer/director being removed and title, name, and address of each Officer and/or Director being added:
*(Attach additional sheets, if necessary)*
*Please note the officer/director title by the first letter of the office title:*
*P = President; V= Vice President; T= Treasurer; S= Secretary; D= Director; TR= Trustee; C = Chairman or Clerk; CEO = Chief Executive Officer; CFO = Chief Financial Officer. If an officer/director holds more than one title, list the first letter of each office held. President, Treasurer, Director would be PTD.*
*Changes should be noted in the following manner. Currently John Doe is listed as the PST and Mike Jones is listed as the V. There is a change, Mike Jones leaves the corporation, Sally Smith is named the V and S. These should be noted as John Doe, PT as a Change, Mike Jones, V as Remove, and Sally Smith, SV as an Add.*
**Example:**

| X Change | PT | John Doe |
| X Remove | V | Mike Jones |
| X Add | SV | Sally Smith |

| Type of Action (Check One) | Title | Name | Address |
|---|---|---|---|
| 1) ____ Change<br>_X_ Add<br>____ Remove | cco | SCOTTON' ROGERIO | 391 SE. MIZNER BLVD 1921<br>BOCA RATON FL 33442 |
| 2) ____ Change<br>_X_ Add<br>____ Remove | VP | KENNEDY' ALEJANDRO | 801 BRICKELL AVENUE<br>MIAMI FL 33131 |
| 3) ____ Change<br>____ Add<br>____ Remove | | | |
| 4) ____ Change<br>____ Add<br>____ Remove | | | |
| 5) ____ Change<br>____ Add<br>____ Remove | | | |
| 6) ____ Change<br>____ Add<br>____ Remove | | | |

CONFIDENTIAL

E.  **If amending or adding additional Articles, enter change(s) here:**
   (Attach *additional sheets, if necessary).    (Be specific)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

F.  **If an amendment provides for an exchange, reclassification, or cancellation of issued shares,**
   **provisions for implementing the amendment if not contained in the amendment itself:**
   (if not applicable, indicate N/A)

_____

_____

_____

_____

_____

_____

_____

_____

CONFIDENTIAL

The date of each amendment(s) adoption: _____, if other than the
date this document was signed.

Effective date **if applicable:**  01/18/2022
_____
*(no more than 90 days after amendment file date)*

**Note:** If the date inserted in this block does not meet the applicable statutory filing requirements, this date will not be listed as the document's effective date on the Department of State's records.

**Adoption of Amendment(s)**          **(CHECK ONE)**

☒ The amendment(s) was/were adopted by the incorporators, or board of directors without shareholder action and shareholder action was not required.

☐ The amendment(s) was/were adopted by the shareholders. The number of votes cast for the amendment(s) by the shareholders was/were sufficient for approval.

☐ The amendment(s) was/were approved by the shareholders through voting groups. *The following statement must be separately provided for each voting group entitled to vote separately on the amendment(s):*

"The number of votes cast for the amendment(s) was/were sufficient for approval

by _____,"
               *(voting group)*

Dated  01/18/2022 _____

Signature _____
(By a director, president or other officer – if directors or officers have not been
selected, by an incorporator – if in the hands of a receiver, trustee, or other court
appointed fiduciary by that fiduciary)

OWOC, JOHN H.
_____
              (Typed or printed name of person signing)

PRESIDENT
_____
              (Title of person signing)

CONFIDENTIAL

# Delaware

Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS ON FILE OF "VITAL PHARMACEUTICALS INTERNATIONAL SALES, INC." AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

CERTIFICATE OF INCORPORATION, FILED THE TWENTY-THIRD DAY OF DECEMBER, A.D. 2015, AT 4:57 O`CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF INCORPORATION IS THE FIRST DAY OF JANUARY, A.D. 2016.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE AFORESAID CORPORATION, "VITAL PHARMACEUTICALS INTERNATIONAL SALES, INC.".

Jeffrey W. Bullock, Secretary of State

5916694  8100H
SR# 20223653114

Authentication: 204511754
Date: 09-29-22

You may verify this certificate online at corp.delaware.gov/authver.shtml

VPX-JHO0000001977

State of Delaware
Secretary of State
Division of Corporations
Delivered  04:57 PM 12/23/2015
FILED  04:57 PM 12/23/2015
SR 20151522447 - File Number 5916694

# STATE *of* DELAWARE
## CERTIFICATE *of* INCORPORATIO
### A STOCK CORPORATION

- **First:** The name of this Corporation is _____
  VITAL PHARMACEUTICALS INTERNATIONAL SALES, INC. _____ .
- **Second:** Its registered office in the State of Delaware is to be located at 3411 Silverside
  Road Rodney Building #104 _____ Street, in the City of Wilmington _____
  County of New Castle _____ Zip Code 19810 ____ . The registered agent in
  charge thereof is Corporate Creations Network Inc. _____
  _____ .

  **Third:** The purpose of the corporation is to engage in any lawful act or activity for
  which corporations may be organized under the General Corporation Law of
  Delaware.
- **Fourth:** The amount of the total stock of this corporation is authorized to issue is
  ___ 2,500 _____ shares (number of authorized shares) with a par value of
  _____ $1.00 _____ per share.
- **Fifth:** The name and mailing address of the incorporator are as follows:
  Name Corporate Creations International, Inc. _____
  Mailing Address 11380 Prosperity Farms Rd. #221E _____
  _____ Palm Beach Gardens Florida Zip Code 33410 ____
- **I, The Undersigned,** for the purpose of forming a corporation under the laws of the
  State of Delaware, do make, file and record this Certificate, and do certify that the
  facts herein stated are true, and I have accordingly hereunto set my hand this
  ___ 23rd ___ day of ___ December _____ , A.D. 20 15 ____ .

  Sixth: The formation will be effective on 1/1/2016.

  BY: _____
  **(Incorporator)**
  Corporate Creations International Inc. - Incorporator
  NAME: By: Tim Pratts, Special Secretary ____
  **(type or print)**

CONFIDENTIAL



# State of Florida

## Department of State

I certify the attached is a true and correct copy of the Articles of Incorporation of BANG ENERGY CANADA, INC., a corporation organized under the laws of the State of Florida, filed on January 23, 2019, effective January 23, 2019, as shown by the records of this office.

The document number of this corporation is P19000008492.

Given under my hand and the Great Seal of the State of Florida at Tallahassee, the Capital, this the Thirtieth day of September, 2022





Cord Byrd
Secretary of State

CR2E022 (01-11)

# Electronic Articles of Incorporation
# For

**P19000008492
FILED
January 23, 2019
Sec. Of State
dlokeefe**

BANG ENERGY CANADA, INC.

The undersigned incorporator, for the purpose of forming a Florida
profit corporation, hereby adopts the following Articles of Incorporation:

## Article I
The name of the corporation is:
 BANG ENERGY CANADA, INC.

## Article II
The principal place of business address:
 1600 NORTH PARK DRIVE
 WESTON, FL.   33326

The mailing address of the corporation is:
 1600 NORTH PARK DRIVE
 WESTON, FL.   33326

## Article III
The purpose for which this corporation is organized is:
 ANY AND ALL LAWFUL BUSINESS.

## Article IV
The number of shares the corporation is authorized to issue is:
 1000

## Article V
The name and Florida street address of the registered agent is:
 MARC J. KESTEN, P.L.
 9220 NW 72ND STREET
 PARKLAND, FL.   33067

I certify that I am familiar with and accept the responsibilities of
registered agent.

Registered Agent Signature:  MARC J. KESTEN

VPX-JHO0000001980

P19000008492
FILED
**January 23, 2019**
Sec. Of State
dlokeefe

## Article VI

The name and address of the incorporator is:

JOHN H. OWOC
1600 NORTH PARK DRIVE

WESTON, FL 33326

Electronic Signature of Incorporator:   JOHN H. OWOC

I am the incorporator submitting these Articles of Incorporation and affirm that the facts stated herein are true.  I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S.  I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of this corporation and every year thereafter to maintain "active" status.

## Article VII

The effective date for this corporation shall be:

01/23/2019

VPX-JHO0000001981



# State of Florida

## Department of State

I certify the attached is a true and correct copy of Articles of Organization of RAINBOW UNICORN BEV LLC, a limited liability company, organized under the laws of the State of Florida, filed on May 24, 2022, effective May 24, 2022, as shown by the records of this office.

The document number of this company is L22000223243.

Given under my hand and the Great Seal of the State of Florida at Tallahassee, the Capital, this the Thirtieth day of September, 2022



*Cord Byrd*
*Secretary of State*

CR2E022 (01-11)

CONFIDENTIAL

🕓 05/24/2022 12:11 PM          15612148442          → 18506176381                                    pg 2 of 4

H22000184088

# ARTICLES OF ORGANIZATION

## Article I. Name

The name of this Florida limited liability company is:
Rainbow Unicorn Bev LLC

## Article II. Address

The street and mailing address of the Company's initial principal office is:

Rainbow Unicorn Bev LLC
1600 North Park Drive
Weston FL 33326

## Article III. Registered Agent

The name and street address of the Company's registered agent is:

Corporate Creations Network Inc.
801 US Highway I
North Palm Beach FL 33408 UNITED STATES

2022 MAY 24  AM 8: 02

FILED

## Article IV. Management

This will be a member-managed company. The name and address of each member is:

JACK OWOC

1600 North Park Drive,
Weston, FL 33326

Computershare Governance Services Inc.
801 US Highway 1
North Palm Beach FL 33408
(561) 694-8107

H22000184088                                              Copyright © 1993-2022 CC

CONFIDENTIAL                                                                    VPX-JHO0000001983

H22000184088

Article V. Company Existence

The Company's existence shall begin effective as of May 24, 2022.

The undersigned authorized representative of a member executed these Articles of Organization on May 24, 2022.

COMPUTERSHARE GOVERNANCE SERVICES INC.
Diana Serra  Vice President
Carlos M Alvarez, Attorney-in-Fact

2022 MAY 24  AM 8:02
FILED

Computershare Governance Services Inc.
801 US Highway 1
North Palm Beach FL 33408
(561) 694-8107

H22000184088                                    Copyright © 1993-2022 CC

CONFIDENTIAL                                    VPX-JHO0000001984

H22000184088

# STATEMENT OF REGISTERED AGENT

LIMITED LIABILITY COMPANY:
Rainbow Unicorn Bev LLC

REGISTERED AGENT/OFFICE:
Corporate Creations Network Inc.
801 US Highway 1
North Palm Beach FL 33408
UNITED STATES

I agree to act as registered agent to accept service of process for the company named above at the place designated in this Statement. I agree to comply with the provisions of all statutes relating to the proper and complete performance of the registered agent duties. I am familiar with and accept the obligations of the registered agent position.

CORPORATE CREATIONS NETWORK INC.
Carlos M Alvarez, Special Secretary

Date: May 24, 2022

Computershare Governance Services Inc.
801 US Highway 1
North Palm Beach FL 33408
(561) 694-8107

H22000184088

Copyright © 1993-2022 CC

CONFIDENTIAL

VPX-JHO0000001985



# State of Florida

## Department of State

I certify the attached is a true and correct copy of Articles of Organization, as amended to date, of JHO INTELLECTUAL PROPERTY HOLDINGS, LLC, a limited liability company, organized under the laws of the State of Florida, as shown by the records of this office.

The document number of this company is L14000145128.

Given under my hand and the Great Seal of the State of Florida at Tallahassee, the Capital, this the Thirtieth day of September, 2022



*Cord Byrd*
*Secretary of State*

CR2E022 (01-11)

CONFIDENTIAL                                        VPX-JHO0000001986

# Electronic Articles of Organization
## For
# Florida Limited Liability Company

L14000145128
FILED 8:00 AM
September 17, 2014
Sec. Of State
jdharris

## Article I

The name of the Limited Liability Company is:

JHO INTELLECTUAL PROPERTY HOLDINGS, LLC

## Article II

The street address of the principal office of the Limited Liability Company is:

1721 SW 131 TERRACE
DAVIE, FL. US  33325

The mailing address of the Limited Liability Company is:

1721 SW 131 TERRACE
DAVIE, FL. US  33325

## Article III

The name and Florida street address of the registered agent is:

JOHN H OWOC
1721 SW 131 TERRACE
DAVIE, FL.  33325

Having been named as registered agent and to accept service of process for the above stated limited
liability company at the place designated in this certificate, I hereby accept the appointment as registered
agent and agree to act in this capacity.  I further agree to comply with the provisions of all statutes
relating to the proper and complete performance of my duties, and I am familiar with and accept the
obligations of my position as registered agent.

Registered Agent Signature:   /JOHN H. OWOC/

CONFIDENTIAL

VPX-JHO0000001987

## Article IV

The name and address of person(s) authorized to manage LLC:

Title:  MGR
JOHN H OWOC
1721 SW 131 TERRACE
DAVIE, FL.  33325  US

L14000145128
FILED 8:00 AM
September 17, 2014
Sec. Of State
jdharris

## Article V

The effective date for this Limited Liability Company shall be:

09/15/2014

Signature of member or an authorized representative

Electronic Signature: /JOHN H. OWOC/

I am the member or authorized representative submitting these Articles of Organization and affirm that the facts stated herein are true.  I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S. I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of the LLC and every year thereafter to maintain "active" status.

VPX-JHO0000001988

08/12/2020 11:46 AM · · 14154847068 → 18506176383 pg 2 of 5

# ARTICLES OF AMENDMENT
## TO
## ARTICLES OF ORGANIZATION
## OF

JHO INTELLECTUAL PROPERTY HOLDINGS, LLC

**(Name of the Limited Liability Company as it now appears on our records.)**
(A Florida Limited Liability Company)

The Articles of Organization for this Limited Liability Company were filed on <u>09/17/2014</u> and assigned Florida document number <u>L14000145128</u>.

This amendment is submitted to amend the following:

**A. If amending name, enter the new name of the limited liability company here:**

The new name must be distinguishable and contain the words "Limited Liability Company," the designation "LLC" or the abbreviation "L.L.C."

**Enter new principal offices address, if applicable:**

***(Principal office address MUST BE A STREET ADDRESS)***

**Enter new mailing address, if applicable:**

***(Mailing address MAY BE A POST OFFICE BOX)***

**B. If amending the registered agent and/or registered office address on our records, enter the name of the new registered agent and/or the new registered office address here:**

Name of New Registered Agent:

New Registered Office Address:

*Enter Florida street address*

_____, **Florida** _____
City                                            Zip Code

**New Registered Agent's Signature, if changing Registered Agent:**

*I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relative to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent as provided for in Chapter 605, F.S. Or, if this document is being filed to merely reflect a change in the registered office address, I hereby confirm that the limited liability company has been notified in writing of this change.*

**If Changing Registered Agent, Signature of New Registered Agent**

CONFIDENTIAL

VPX-JHO0000001989

**If amending Authorized Person(s) authorized to manage, <u>enter the title, name, and address of each person  being added or removed from our records</u>:**

**MGR =   Manager**
**AMBR = Authorized Member**

| Title | Name | Address | Type of Action |
|---|---|---|---|
| Authorized Representative | FRANCIS MASSABKI | 1600 N PARK DR | ☐Add |
| | | WESTON, FL 33326 | ☒Remove |
| | | | ☐Change |
| | | | ☐Add |
| | | | ☐Remove |
| | | | ☐Change |
| | | | ☐Add |
| | | | ☐Remove |
| | | | ☐Change |
| | | | ☐Add |
| | | | ☐Remove |
| | | | ☐Change |
| | | | ☐Add |
| | | | ☐Remove |
| | | | ☐Change |
| | | | ☐Add |
| | | | ☐Remove |
| | | | ☐Change |

CONFIDENTIAL

VPX-JHO0000001990

**D.  If amending any other information, enter change(s) here:** *(Attach additional sheets, if necessary.)*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**E.  Effective date, if other than the date of filing:** _____ (optional)
(If an effective date is listed, the date must be specific and cannot be prior to date of filing or more than 90 days after filing.) Pursuant to 605.0207 (3)(b)
<u>Note:</u>  If the date inserted in this block does not meet the applicable statutory filing requirements, this date will not be listed as the document's effective date on the Department of State's records.

If the record specifies a delayed effective date, but not an effective time, at 12:01 a.m. on the earlier of: (b)   The 90th day after the record is filed.

Dated ___AUGUST 12TH_____, ___2020___

_____
Signature of a member or authorized representative of a member

Carlos M Alvarez, Attorney-in-Fact
_____
Typed or printed name of signee

**Filing Fee:  $25.00**

CONFIDENTIAL

11/06/2020 1:00 PM          15612148442          → 18506176383                    pg 2 of 4

# ARTICLES OF AMENDMENT
## TO
## ARTICLES OF ORGANIZATION
## OF

### JHO INTELLECTUAL PROPERTY HOLDINGS, LLC

**(Name of the Limited Liability Company as it now appears on our records.)**
(A Florida Limited Liability Company)

The Articles of Organization for this Limited Liability Company were filed on 09/17/2014 _____ and assigned

Florida document number L14000145128 _____ .

This amendment is submitted to amend the following:

**A. If amending name, enter the new name of the limited liability company here:**

_____

The new name must be distinguishable and contain the words "Limited Liability Company," the designation "LLC" or the abbreviation "L.L.C."

**Enter new principal offices address, if applicable:**

*(Principal office address MUST BE A STREET ADDRESS)*

**Enter new mailing address, if applicable:**

*(Mailing address MAY BE A POST OFFICE BOX)*

**B. If amending the registered agent and/or registered office address on our records, enter the name of the new registered agent and/or the new registered office address here:**

Name of New Registered Agent: _____

New Registered Office Address: _____
                                         *Enter Florida street address*

_____ , **Florida** _____
                    *City*                                  *Zip Code*

**New Registered Agent's Signature, if changing Registered Agent:**

*I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes relative to the proper and complete performance of my duties, and I am familiar with and accept the obligations of my position as registered agent as provided for in Chapter 605, F.S. Or, if this document is being filed to merely reflect a change in the registered office address, I hereby confirm that the limited liability company has been notified in writing of this change.*

_____

If Changing Registered Agent, **Signature of New Registered Agent**

CONFIDENTIAL

VPX-JHO0000001992

If amending Authorized Person(s) authorized to manage, <u>enter the title, name, and address of each person  being added or removed from our records:</u>

MGR =   Manager
AMBR =  Authorized Member

| <u>Title</u> | <u>Name</u> | <u>Address</u> | <u>Type of Action</u> |
|---|---|---|---|
| Authorized Person | Gregg Metzger | 1600 North Park Drive | ☒ Add |
| | | Weston, FL 33326 | ☐ Remove |
| | | | ☐ Change |
| | | | ☐ Add |
| | | | ☐ Remove |
| | | | ☐ Change |
| | | | ☐ Add |
| | | | ☐ Remove |
| | | | ☐ Change |
| | | | ☐ Add |
| | | | ☐ Remove |
| | | | ☐ Change |
| | | | ☐ Add |
| | | | ☐ Remove |
| | | | ☐ Change |
| | | | ☐ Add |
| | | | ☐ Remove |
| | | | ☐ Change |

CONFIDENTIAL

VPX-JHO0000001993

**D. If amending any other information, enter change(s) here:** *(Attach additional sheets, if necessary.)*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

FILED 2020 NOV -9 AM 10: 45

**E. Effective date, if other than the date of filing:** _____ **(optional)**
  (If an effective date is listed, the date must be specific and cannot be prior to date of filing or more than 90 days after filing.) Pursuant to 605.0207 (3)(b)
  **Note:** If the date inserted in this block does not meet the applicable statutory filing requirements, this date will not be listed as the
  document's effective date on the Department of State's records.

If the record specifies a delayed effective date, but not an effective time, at 12:01 a.m. on the earlier of: (b)   The 90th day after the
record is filed.

Dated ___November 6th___, ___2020___

_____
  Signature of a member or authorized representative of a member

Carlos M Alvarez, Attorney-in-Fact
_____
  Typed or printed name of signee

**Filing Fee:  $25.00**

CONFIDENTIAL

**Articles of Merger**
**For**
**Florida Limited Liability Company**

FILED

MAY 2↑  Pm 5:15

SECRETARY OF STATE
TALLAHASSEE, FL

The following Articles of Merger is submitted to merge the following Florida Limited Liability Company(ies) in accordance with s. 605.1025, Florida Statutes.

**FIRST:** The exact name, form/entity type, and jurisdiction for each **merging** party are as follows:

| Name | Jurisdiction | Form/Entity Type |
|------|-------------|------------------|
| JHO Intellectual Property Holdings, LLC | Florida | LLC |
| Elite IP Holdings, LLC | Florida | LLC |
| | | |
| | | |

**SECOND:** The exact name, form/entity type, and jurisdiction of the **surviving** party are as follows:

| Name | Jurisdiction | Form/Entity Type |
|------|-------------|------------------|
| JHO Intellectual Property Holdings, LLC | Florida | LLC |

**THIRD:** The merger was approved by each domestic merging entity that is a limited liability company in accordance with ss.605.1021-605.1026; by each other merging entity in accordance with the laws of its jurisdiction; and by each member of such limited liability company who as a result of the merger will have interest holder liability under s.605.1023(1)(b).

CONFIDENTIAL

VPX-JHO0000001995

**FOURTH:** Please check one of the boxes that apply to surviving entity: (if applicable)

☑ This entity exists before the merger and is a domestic filing entity, the amendment, if any to its public organic record are attached.

☐ This entity is created by the merger and is a domestic filing entity, the public organic record is attached.

☐ This entity is created by the merger and is a domestic limited liability limited partnership or a domestic limited liability partnership, its statement of qualification is attached.

☐ This entity is a foreign entity that does not have a certificate of authority to transact business in this state. The mailing address to which the department may send any process served pursuant to s. 605.0117 and Chapter 48, Florida Statutes is:

_____

_____

_____

**FIFTH:** This entity agrees to pay any members with appraisal rights the amount, to which members are entitled under ss.605.1006 and 605.1061-605.1072, F.S.

**SIXTH:** If other than the date of filing, the delayed effective date of the merger, which cannot be prior to nor more than 90 days after the date this document is filed by the Florida Department of State:

Date of filing
_____

**Note:** If the date inserted in this block does not meet the applicable statutory filing requirements, this date will not be listed as the document's effective date on the Department of State's records.

**SEVENTH:** Signature(s) for Each Party:

| Name of Entity/Organization: | Signature(s): | Typed or Printed Name of Individual: |
|---|---|---|
| JHO Intellectual Property Holdings, LLC | | John H. Owoc |
| Elite IP Holdings, LLC | | John H. Owoc |
| | | |
| | | |

| | |
|---|---|
| Corporations: | Chairman, Vice Chairman, President or Officer *(If no directors selected, signature of incorporator.)* |
| General partnerships: | Signature of a general partner or authorized person |
| Florida Limited Partnerships: | Signatures of all general partners |
| Non-Florida Limited Partnerships: | Signature of a general partner |
| Limited Liability Companies: | Signature of an authorized person |

| Fees: | | | | |
|---|---|---|---|---|
| For each Limited Liability Company: | $25.00 | For each Corporation: | $35.00 |
| For each Limited Partnership: | $52.50 | For each General Partnership: | $25.00 |
| For each Other Business Entity: | $25.00 | **Certified Copy (optional):** | $30.00 |

VPX-JHO0000001996



# State of Florida

## Department of State

I certify the attached is a true and correct copy of Articles of Organization of QUASH SELTZER, LLC, a limited liability company, organized under the laws of the State of Florida, filed on August 4, 2020, effective August 4, 2020, as shown by the records of this office.

The document number of this company is L20000224976.

Given under my hand and the Great Seal of the State of Florida at Tallahassee, the Capital, this the Thirtieth day of September, 2022



Cord Byrd
Secretary of State



CR2E022 (01-11)

VPX-JHO0000001997

# ARTICLES OF ORGANIZATION

Article I. Name
The name of this Florida limited liability company is:
Quash Seltzer, LLC

Article II. Address
The street address of the Company's initial principal office is:
Quash Seltzer, LLC
1600 North Park Drive
Weston FL 33326

The mailing address of the Company's initial principal office is:
Quash Seltzer, LLC
1600 North Park Drive
Weston FL 33326

Article III. Registered Agent
The name and street address of the Company's registered agent is:

Corporate Creations Network Inc.
801 US Highway 1
North Palm Beach FL 33408

Article IV. Transferability of Membership Interests
No members shall have the right to assign their membership interests in the Company without the written agreement of all of the membership interests, unless otherwise provided in the Company's Operating Agreement. If the assignment is not approved by all of the membership interests, the assignee shall have no right to become a member, to participate in the management of the Company, or to exercise any other rights or powers of a member. The assignee shall merely be entitled to receive the share of profits and other distributions and the allocation of income, gain, loss deduction, credit or similar item to which the assignor was entitled, to the extent assigned.

Corporate Creations International
801 US Highway 1
North Palm Beach FL 33408
(561) 694-8107

Copyright © 1993-2020 CC

CONFIDENTIAL                                                                 VPX-JHO0000001998

## Article V. Distribution of Profits

Unless otherwise provided in the Company's Operating Agreement, there shall not be any distribution of profits unless each separate distribution is approved by the affirmative vote of members who own more than 50% of the voting interest in the Company. The voting members shall have complete discretion on when and if to approve any distribution of profits.

## Article VI. Management

This will be a member-managed company. The name and address of each member is:

John H. Owoc
1600 North Park Drive
Weston FL 33326

## Article VII. Company Existence

The Company's existence shall begin effective as of August 4, 2020.

The undersigned authorized representative of a member executed these Articles of Organization on 8/4/2020.

_____
CORPORATE CREATIONS INTERNATIONAL
Diana Serra Vice President
Carlos M Alvarez, Attorney-in-Fact

Corporate Creations International
801 US Highway 1
North Palm Beach FL 33408
(561) 694-8107

Copyright © 1993-2020 CC

VPX-JHO0000001999

# STATEMENT OF REGISTERED AGENT

<u>LIMITED LIABILITY COMPANY</u>:
Quash Seltzer, LLC


<u>REGISTERED AGENT/OFFICE</u>:
Corporate Creations Network Inc.
801 US Highway 1
North Palm Beach FL 33408
UNITED STATES


I agree to act as registered agent to accept service of process for the company named above at the place designated in this Statement. I agree to comply with the provisions of all statutes relating to the proper and complete performance of the registered agent duties. I am familiar with and accept the obligations of the registered agent position.

_____
CORPORATE CREATIONS NETWORK INC.
Carlos M Alvarez, Special Secretary

Date: August 4, 2020.

Corporate Creations International
801 US Highway 1
North Palm Beach FL 33408
(561) 694-8107

Copyright © 1993-2020 CC

CONFIDENTIAL                                                    VPX-JHO0000002000



# State of Florida

## Department of State

I certify the attached is a true and correct copy of Articles of Organization of JHO REAL ESTATE INVESTMENT, LLC, a limited liability company, organized under the laws of the State of Florida, filed on August 19, 2019, effective August 15, 2019, as shown by the records of this office.

The document number of this company is L19000210274.

Given under my hand and the Great Seal of the State of Florida at Tallahassee, the Capital, this the Thirtieth day of September, 2022



*Cord Byrd*
*Secretary of State*

CR2E022 (01-11)

CONFIDENTIAL

# Electronic Articles of Organization
## For
## Florida Limited Liability Company

L19000210274
FILED 8:00 AM
August 19, 2019
Sec. Of State
jafason

## Article I

The name of the Limited Liability Company is:

JHO REAL ESTATE INVESTMENT, LLC

## Article II

The street address of the principal office of the Limited Liability Company is:

1600 NORTH PARK DRIVE
WESTON, FL. US  33326

The mailing address of the Limited Liability Company is:

1600 NORTH PARK DRIVE
WESTON, FL.  33326

## Article III

Other provisions, if any:

THE PURPOSE OF THE LIMITED LIABILITY COMPANY IS TO ENGAGE
IN ANY LAWFUL ACTIVITY FOR WHICH A LIMITED LIABILITY
COMPANY MAY BE ORGANIZED IN THIS STATE.

## Article IV

The name and Florida street address of the registered agent is:

MARC J. KESTEN, PL
9220 NW 72ND STREET
PARKLAND, FL.  33067

Having been named as registered agent and to accept service of process for the above stated limited
liability company at the place designated in this certificate, I hereby accept the appointment as registered
agent and agree to act in this capacity. I further agree to comply with the provisions of all statutes
relating to the proper and complete performance of my duties, and I am familiar with and accept the
obligations of my position as registered agent.

Registered Agent Signature:  MARC KESTEN

## Article V

The name and address of person(s) authorized to manage LLC:

Title:  MGR
JOHN H OWOC
1600 NORTH PARK DRIVE
WESTON, FL.  33326

L19000210274
FILED 8:00 AM
August 19, 2019
Sec. Of State
jafason

## Article VI

The effective date for this Limited Liability Company shall be:

08/15/2019

Signature of member or an authorized representative

Electronic Signature: JOHN H. OWOC

I am the member or authorized representative submitting these Articles of Organization and affirm that the facts stated herein are true.  I am aware that false information submitted in a document to the Department of State constitutes a third degree felony as provided for in s.817.155, F.S. I understand the requirement to file an annual report between January 1st and May 1st in the calendar year following formation of the LLC and every year thereafter to maintain "active" status.

VPX-JHO0000002003

**EXHIBIT D**

**Incumbency of Each Loan Party**

| **NAME** | **OFFICE** | **SIGNATURE** |
|---|---|---|
| John H. Owoc | President, Chief Scientific Officer & Chief Executive Officer | |
| Eugene Bukovi | Vice President | |

*[Signature Page to Incumbency]*

CONFIDENTIAL

VPX-JHO0000002004

**EXHIBIT D**

**Incumbency of Each Loan Party**

| NAME | OFFICE | SIGNATURE |
|------|--------|-----------|
| John H. Owoc | President, Chief Scientific Officer & Chief Executive Officer | _____ |
| Eugene Bukovi | Vice President | |

*[Signature Page to Incumbency]*

CONFIDENTIAL

VPX-JHO0000002005