**DEBTORS EXHIBIT 4**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

VITAL PHARMACEUTICALS, INC., *et al.*[1],

_____/

Case No.: 22-17842-PDR
Chapter 11
(Jointly Administered)

**DECLARATION OF JOHN H. OWOC IN SUPPORT OF MOTION TO DISMISS CHAPTER 11 BANKRUPTCY OF DEBTOR JHO REAL ESTATE INVESTMENT, LLC**

I, John H. Owoc, hereby declare under penalty of perjury as follows:

1. I am the sole member of JHO Real Estate Investment, LLC ("JHO Real Estate").

2. I submit this Declaration in support of *Creditor and Interested Party John H. Owoc's Emergency Motion to Dismiss Chapter 11 Bankruptcy of Debtor JHO Real Estate Investment, LLC* ("Motion") [D.E. 1466] filed on June 16, 2023.

3. As the sole member of JHO Real Estate, I was the only individual authorized to consent to the filing of the above-captioned bankruptcy.

4. I did not knowingly authorize John DiDonato to sign nor file a Chapter 11 bankruptcy on behalf of JHO Real Estate.

5. I neither viewed nor signed, nor authorized anyone to sign on my behalf, the Written Consent of Sole Shareholder and Sole Director of Vital Pharmaceuticals, Inc. ("VPX"), dated October 8, 2022 ("Written Consent")[2], from which Mr. DiDonato purportedly derived his authority to file a Chapter 11 bankruptcy on behalf of JHO Real Estate.

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] The Written Consent purports to have been signed by me via DocuSign. I do not recall signing the Written Consent via DocuSign and I do not recall physically sign the Written Consent.

1

6. In the discussions leading up to the filing of VPX's bankruptcy, I was never advised about the substance and purpose of a filing of bankruptcy on behalf of JHO Real Estate. I was barraged with documents to sign on the eve of filing.

7. I did not discover that JHO Real Estate was a party to the bankruptcy until recently in late April 2023, when one of my attorneys was looking into the ownership of the JHO Real Estate's sole asset, a state-of-the-art distribution facility in Phoenix, Arizona (the "Phoenix Facility"), it was pointed out to me that the Phoenix Facility was owned by JHO Real Estate and that JHO Real Estate was a debtor in this proceeding. Up until this date, I was not aware that JHO Real Estate was a debtor.

8. I was not represented by Paul Battista until after the petition was filed. VPX was represented by outside counsel Berger Singerman and Latham & Watkins. Despite the fact that I was CEO of VPX at the time of the filing of the bankruptcy, both Berger Singerman and Latham & Watkins primarily communicated to VPX's in-house counsel, Gregg Metzger and, in fact, I believe the engagement agreements with both firms directed the lawyers to speak with Mr. Metzger directly and not me. I believe that this was done in an attempt to keep me out of critical communications and decision making, such as which entities to include in the instant proceeding.

9. From February 22, 2023, to March 23, 2023, I was personally represented by Justin Luna. Mr. Luna took actions adverse to my interests and never informed me that JHO Real Estate was a debtor in the instant proceeding.

10. Had I been advised, I would never have authorized the filing of a Chapter 11 bankruptcy with respect to JHO Real Estate or a liquidation of the Phoenix Facility. In fact, I did not knowingly authorize the filing of a Chapter 11 bankruptcy on behalf of JHO Real Estate.

11. JHO Real Estate paid $47,960,100 for the Phoenix Facility. The Phoenix Facility is a 382,800 square foot facility. At purchase, it was simply a warehouse. JHO Real Estate invested over $85,000.00 to make substantial improvements at the Phoenix Facility to make it a state-of-the-art beverage production facility. The Phoenix Facility ran nearly all of the BANG energy drinks when I was CEO at VPX, which accounted for over 90% of the revenue generated by VPX. After improvements, it became a turnkey manufacturing and distribution facility generating over ½ a billion in revenues, to the best of my knowledge having been cut off from accessing the necessary information from the Debtors. The Phoenix Facility can produce 70 million, 12 count beverage cases per year. Running full-time, the Phoenix Facility could easily generate around $125 million in annual profit. The Phoenix Facility is worth substantially more than the purchase price.

12. It was never revealed to me that there was a plan to liquidate the assets of JHO Real Estate. I was informed that VPX needed a loan merely to operate and that in order to secure a loan from Truist Bank guarantees were required. No one explained to me that the assets of JHO Real Estate would be subject to a liquidation. That was the critical consequence of a bankruptcy by JHO Real Estate. Six months ago, five months ago, four months ago, three months ago, I was not alerted to a plan that would end in a liquidation of JHO Real Estate.

13. On around April 19, 2023, my attorneys discovered that the Phoenix Facility was included in the bankruptcy estate. Prior to this discovery, I had no actual knowledge that JHO Real Estate had been included in the bankruptcy. Since my prior counsel Mr. Luna was not acting to support my interests, and in fact, was acting adversely to them, he failed to inform me that JHO Real Estate had been improperly and unnecessarily included in the bankruptcy. Moreover, I did not personally receive electronic notifications or notices of related to JHO Real Estate's inclusion in the bankruptcy. Further, following my replacement of Mr. Luna as my counsel, my attorneys and I

have been besieged by a deluge of unnecessary, bad faith motion practice usually filed without any compliance with the Court's requirement that the parties meet and confer prior to the filing of motions, usually filed under the pre-text of an emergency, and set as a 'fire drill' without affording my counsel reasonable opportunity to respond such that upon first learning of JHO Real Estate's improper inclusion in the bankruptcy, I have acted as quickly as circumstances would permit – which I submit has been reasonable – again, under the unique circumstances presented here.

14. With regard to the timing of the Emergency Motion to Dismiss the Chapter 11 Bankruptcy of JHO Real Estate, I was completely distracted by the onslaught of my company being taken away from me. My main focus as CEO of VPX was sales. In 2022, VPX had sales in excess of $1 billion. In the course of losing control of the company, sales have radically diminished to approximately $17 million a month. Adding new lawyers to my legal team that were proactively getting involved in the case and called attention to the lack of jurisdiction resulted in focusing in on these issues.

15. I did not and have not knowing, willingly, nor voluntarily waived any of my rights in connection with the JHO Real Estate bankruptcy, nor did I knowingly, willingly, nor voluntarily waive or forego any of my constitutionally protected property or due process rights in connection with the placement of JHO Real Estate into bankruptcy in the first place.

16. I further believe and submit that it would be wholly inequitable under the circumstances to permit the JHO Real Estate bankruptcy to continue without affording me an opportunity to put forth evidence to the Court that would substantiate and corroborate the inequitable and unreasonable nature of a finding that a) I somehow waived my rights, b) that knowing of my rights, I failed to promptly take action to protect them, or c) that I somehow affirmatively led the Debtors or the Court to believe that I knew of and supported JHO Real Estate's inclusion of the bankruptcy.

17. In my view, there was no reason in file a bankruptcy petition on behalf of JHO Real Estate. That company was not a judgment debtor as was VPX. JHO Real Estate had guaranteed certain indebtedness to a lender group administered by Truist Bank along with several other companies. That debt to Truist was substantially over-secured, sales of other company's real estate assets would substantially reduce or eliminate that indebtedness without liquidating the JHO Real Estate's assets.

18. In light of the indefinite delay the auction and sale of the Debtors' estate now faces due to the Federal Trade Commission's concerns about anti-competitive injury, no party will suffer harm from the Court recognizing that the facts, as here alleged, present a sufficient basis, if corroborated, to find that JHO Real Estate should be dismissed from the bankruptcy, and to further find that there is insufficient support for claims that I have waived, am estopped, or should otherwise be precluded from raising these issues.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: June 23, 2023

By: _____
John H. Owoc