**DEBTORS EXHIBIT 20**

**JHO REAL ESTATE INVESTMENT, LLC**
(a Florida limited liability company)

**ACTION BY UNANIMOUS WRITTEN CONSENT
OF
THE MEMBER AND
MANAGERS
IN LIEU OF MEETING
Effective: January 7, 2023**

The undersigned, comprised of the sole member (the "Member") and, after giving effect to their respective appointments, all the managers (collectively, the "Managers" and each a "Manager") of JHO Real Estate Investment, LLC, a Florida limited liability company (the "LLC" or "DIP Borrower"), hereby (a) take, authorize and adopt the following actions and matters, without and in lieu of a meeting, pursuant to Sections 605.04073 of the Florida Revised Limited Liability Company Act (Chapter 605, Florida Statutes), (b) waive any and all notices and requirements for notice, including of the time, date, place and/or purpose of or with regard to any meeting of the Member and/or the Managers and of or with regard to the actions and matters set forth in this action by unanimous written consent of the Member and Managers (this "Written Consent"), and (c) consent and agree to the authorization, approval and adoption of the following resolutions (collectively, the "Resolutions") as provided or described below:

**WHEREAS**, on October 10, 2022, the LLC and certain of its affiliates (together with the LLC, the "Debtors" or the "Company") filed voluntary petitions for relief under Title 11 of the United States Code (as now or hereafter in effect, or any successor thereto, the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") (such cases being jointly administered under Case No. 22-17842, and are referred to herein as the "Chapter 11 Cases"), and continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

**WHEREAS**, in connection with the Chapter 11 Cases, the Company entered into that certain Superpriority Secured Debtor-In-Possession Credit Agreement (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Credit Agreement"), and each other Debtor (other than the DIP Borrower) party thereto from time to time as guarantors (collectively the "DIP Guarantors"), the lenders party thereto from time to time

CHAR1\1967736v3
11841105-5

VPX-JHO0000000112

(collectively, the "DIP Lenders") and Truist Bank, as administrative agent for the DIP Lenders (in such capacity, the "DIP Agent");

WHEREAS, on October 14, 2022, the Bankruptcy Court entered the *Interim Order (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing and (VII) Granting Related Relief* [ECF No. 120] authorizing, on an interim basis, the DIP Borrower and DIP Guarantors to execute, deliver and perform their obligations under the DIP Credit Agreement and all other documents executed and delivered in connection therewith (collectively, the "DIP Credit Documents");

WHEREAS, on November 1, 2022, the United States Trustee appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "Committee"), which membership was subsequently reconstituted on November 23, 2022;

WHEREAS, certain Defaults and an Event of Default (each as defined under the DIP Credit Agreement) have occurred and are continuing;

WHEREAS, the DIP Agent, the Committee, and other constituents have negotiated proposed modifications (the "DIP Amendments") to the DIP Credit Documents and final DIP order that, among other things, resolve the Committee's objections to the DIP Credit Documents, resolve the existing Defaults and Event of Default to the satisfaction of the DIP Agent and DIP Lenders, provides the DIP Borrower and DIP Guarantors, their bankruptcy estates, and other stakeholders with certain benefits, including, but not limited to, additional time to achieve the milestones contained in the DIP Credit Agreement;

WHEREAS, implementation of the DIP Amendments by the Company and entry of an order by the Bankruptcy Court approving the transactions contemplated by the DIP Credit Agreement, as amended, on a final basis are essential to the Company's ability to receive additional extensions pursuant to the credit facility established under the DIP Credit Agreement;

WHEREAS, on October 26, 2022, the Company resolved to appoint a restructuring committee (the "Restructuring Committee"), the sole member of which is Mr. Steven G. Panagos ("Mr. Panagos"), to, among other things, oversee the Company's restructuring and the management of the Chapter 11 Cases;

WHEREAS, after consultation with the Company, its management and advisors, and due consideration, the Restructuring Committee recommended that the Company approve and implement the DIP Amendments;

WHEREAS, the Company retained Huron Consulting Group, LLC pursuant to an engagement letter dated September 15, 2022, as amended thereafter on October 19, 2022, and November 28, 2022, respectively (the "Engagement Letter"), to, among other things, provide the services of John DiDonato as the Company's Chief Transformation Officer (the "CTO");

WHEREAS, in compliance with the DIP Amendments, the Company wishes to: (1) memorialize the scope of authority of the CTO; specifically providing the CTO with authority to oversee the Company's treasury and cash management functions, including at a minimum: (a)

CHAR1\1967736v3
11841105-5

oversight of treasury and cash management functions, including (i) preparation and maintenance of cash flow forecasts, (ii) management of cash disbursements, and (iii) liquidity enhancement and cost savings initiatives; (b) oversight of purchasing functions including (x) daily monitoring and analysis of purchase orders issued the previous day, goods received, and vendor relationships, (y) review of all purchase orders issued to ensure alignment with the Budget (as defined in the DIP Credit Agreement), and cancelling any purchase order the CTO determines is not aligned with the Budget (as defined in the DIP Credit Agreement), and (z) for purchase orders (other than for materials, excluding purchases from Crown Holdings, Inc. and affiliates) exceeding $75,000 individually or in the aggregate, approval thereof before issuance; and (c) review of restructuring related expenses and professional fee invoices and fee statements or applications; and (2) have the CTO report directly to the Restructuring Committee;

**WHEREAS**, on December 29, 2022, the Member and certain Managers, decided to appoint John Barrett ("Mr. Barrett") as a Manager, and, thereafter, the Member and the Managers decided that they no longer wished to appoint Mr. Barrett as a Manager;

**WHEREAS**, on December 29, 2022, immediately after the appointment of Mr. Barrett, Dr. Guillermo Escalante ("Dr. Escalante") resigned as a Manager, and the Member and the Managers, after giving effect to their election, wish to appoint Stephen S. Gray ("Mr. Gray") to replace Dr. Escalante as a Manager; and

**WHEREAS**, the Member, and, after giving effect to their appointment, the Managers: (a) have each reviewed the recitals, the DIP Amendments and Resolutions included herein and the form, content, terms and provisions of each exhibit annexed hereto and referenced herein, and (b) have each had the opportunity to ask questions of and receive responses from senior management of, and advisors to, the LLC regarding the Resolutions, and the actions and matters set forth herein, have determined that the actions and matters described, provided for, authorized and ratified herein are desirable for, and are fair to and in the best interests of, the Company.

Removal of and Election of the Managers

**NOW, THEREFORE, BE IT RESOLVED**, that the Member by and through this Resolution hereby removes Mr. Barrett as a Manager; and be it further

**RESOLVED**, after giving effect to the foregoing removal, in connection with the appointment of the Managers, the following persons be and hereby are, designated and appointed to serve as the sole Managers of the LLC (collectively, the "Initial Managers"), in each case, to serve as such, in accordance with the articles of organization of the LLC (the "Articles") and the operating agreement of the LLC, as amended (the "Operating Agreement"), each until their respective successor is duly elected and qualified, or until his earlier death, resignation or removal for cause:

      1. John H. Owoc
      2. Eric Hillman ("Mr. Hillman")
      3. Bob Dickinson ("Mr. Dickinson")
      4. Mr. Panagos

Approval of the DIP Amendments

**NOW, THEREFORE, BE IT RESOLVED**, that, after giving effect to the appointment of the Initial Managers, the Managers hereby determine that the approval of the transactions contemplated by the DIP Amendments and the execution, delivery and performance by the LLC of the documents necessary to memorialize and implement the DIP Amendments on the terms and conditions as substantially described or provided to the Managers will benefit the LLC and is in the best interest of the LLC and its Member; and be it further

**RESOLVED**, that, to give effect to and implement the DIP Amendments, the LLC is hereby authorized, and that each of the President, Chief Executive Officer, each Vice President, the CTO (either existing now or later appointed consistent with the terms of the DIP Credit Documents), General Counsel, Chief Financial Officer, Treasurer and/or Secretary of the LLC (collectively, the "Authorized Officers"), acting alone or in combination, shall be, and hereby are, authorized, directed, and empowered, with full power of delegation, on behalf of and in the name of the LLC, to execute, verify and/or file, or cause to be filed and/or executed or verified (or direct others to do so on their behalf as provided herein), and to amend, supplement or otherwise modify from time to time (including, without limitation, any amendments or supplements to the DIP Credit Agreement that increase the amount of credit available thereunder) any of the DIP Credit Documents to which the LLC is a party, and to take any and all actions that each such Authorized Officer deems necessary or appropriate, each in connection with the Chapter 11 Cases and/or any post-petition financing or any cash collateral usage contemplated hereby or thereby, but solely consistent with the terms of these Resolutions; and it is further

**RESOLVED**, that each Authorized Officer is hereby authorized, directed and empowered to do or cause to be done all such acts or things and to execute and deliver, or cause to be executed and delivered, under seal or otherwise, all such documents or other affidavits, agreements, certificates, documents, instruments, notices, recordings and filings (including, without limitation, any and all certificates and notices required or permitted to be given or made under the terms, conditions or provisions of any of the agreements, documents or instruments executed therewith), in the name and on behalf of the LLC on behalf of each of the LLC's direct or indirect subsidiaries, as any such Authorized Officer, in his or her discretion, may deem necessary, proper or advisable to effectuate or carry out the purposes and intent of the foregoing Resolutions and to perform the obligations of such subsidiary under all affidavits, agreements, certificates, documents, instruments, recordings and filings executed or delivered on behalf of such subsidiary in connection with the DIP Credit Documents to which such subsidiary is a party, and all acts solely consistent with these Resolutions of any Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are hereby approved, adopted, ratified, and confirmed in all respects; and it is further

**RESOLVED**, without limiting the scope of services set forth in the Engagement Letter, the CTO is hereby vested with authority to oversee the LLC's treasury and cash management functions, including at a minimum: (a) oversight of treasury and cash management functions, including (i) preparation and maintenance of cash flow forecasts, (ii) management of cash disbursements, and (iii) liquidity enhancement and cost savings initiatives; (b) oversight of purchasing functions including (i) daily monitoring and analysis of purchase orders issued the previous day, goods received, and vendor relationships, (ii) review of all purchase orders issued to

CHAR1\1967736v3
11841105-5

VPX-JHO0000000115

ensure alignment with the Budget (as defined in the DIP Credit Agreement), and cancelling any purchase order the CTO determines is not aligned with the Budget (as defined in the DIP Credit Agreement), and (iii) for purchase orders (other than for materials, excluding purchases from Crown Holdings, Inc. and affiliates) exceeding $75,000 individually or in the aggregate, approval thereof before issuance; and (c) review of restructuring related expenses and professional fee invoices and fee statements or applications; and it is further

**RESOLVED**, that the CTO shall report directly to the Restructuring Committee and not the Member.

Election of the Additional Managers

**NOW, THEREFORE, BE IT RESOLVED**, that, after giving effect to the approval of the DIP Amendments and related resolutions above, in connection with the appointment of the Managers, Mr. Gray is designated and appointed to serve as a Manager in accordance with the Articles and the Operating Agreement until his respective successor is duly elected and qualified, or until his earlier death, resignation or removal for cause; and be it further

**RESOLVED**, with the election of Mr. Gray, the Managers of the LLC shall be comprised of the following individuals:

1. John H. Owoc
2. Mr. Hillman
3. Mr. Dickinson
4. Mr. Panagos
5. Mr. Gray

Amendment to Operating Agreement

**NOW, THEREFORE, BE IT RESOLVED**, that, to implement the DIP Amendments, the Member and the Managers hereby adopt the following amendments to the Operating Agreement:

(i) Section 8 of the Operating Agreement is hereby amended to add the following new subsection c.:

"c.

 i. **Appointment**. Notwithstanding anything to the contrary in this Agreement, the Members of the Company shall only have the right to appoint as Managers those persons nominated and appointed by the Managers to serve as Managers, and no person may serve as a Manager unless such person has been nominated and appointed to serve by the then current Managers.

 ii. **Number, Appointment, and Term**. At all times, the Company shall maintain five (5) Managers, and at all times shall include three (3) independent Managers (the "Independent Managers"). An individual

may serve as an Independent Manager only if and so long as such person (i) does not have a relationship by blood (to the second (2nd) degree of consanguinity), marriage or adoption to John Henry Owoc and (ii) is not an employee, officer, manager or consultant of, or independent contractor or advisor to, the Company or any of its affiliates (other than in respect of service on such board or other equivalent governing body). The initial Independent Managers shall be Bob Dickinson, Stephen S. Gray, and Steven G. Panagos. A Manager shall hold their appointment until the annual meeting for the year in which his term expires and shall serve until his death, resignation, retirement, disqualification or removal from office, which removal shall only occur pursuant to Section 8.c.v of this Agreement. Notwithstanding anything to the contrary in this Agreement, no individual shall be elected to serve as a Manager unless such individual has been nominated and appointed to serve by the then current Managers.

iii. **Vacancies**. A Manager may resign at any time by giving written notice to the Company, the other Managers or the President. Such resignation shall take effect when the notice is delivered unless the notice specifies a later effective date, in which event the Managers may fill the pending vacancy before the effective date if they provide that the successor does not take office until the effective date. Any Manager vacancy and any open Manager appointment to be filled by reason of an increase in the authorized number of Managers, may only be filled by the affirmative vote of a majority of the current Managers though less than a quorum of the Managers; provided, however, any vacancy of an Independent Manager may only be filled by the affirmative vote of a majority of the current Independent Managers. A Manager elected to fill a vacancy shall be elected for the unexpired term of his predecessor in office.

iv. **Quorum; Required Votes Presumption of Assent**. A quorum for the transaction of business shall consist of no less than three (3) Managers, two (2) of whom must be Independent Managers (or, in the event that any such manager is no longer serving as a Manager, such Manager's successor, which, in the case of any of the Independent Managers, each such successor must also be independent). The act of a majority of the Managers present at a meeting at which a quorum is present when the vote is taken shall be the act of the Managers.

v. **Removal of Managers**. At a meeting of the Managers called expressly for that purpose, at which a quorum is present, one or more Managers may be removed, solely for good cause, by a vote of a majority of Managers present at such meeting (excluding the vote of any Manager or Managers proposed to be removed), and, notwithstanding anything to the contrary in this Agreement, the Member may not remove an individual serving as a Manager unless the Managers have voted to remove such Manager in accordance with this Section 8.c.v. With respect to any

    Manager that is the subject of an independent manager (or director) agreement with the Company or any of its affiliates, "good cause" shall have the same meaning as the definition of "cause" in such independent manager (or director) agreement."

 (vi) Section 25 of the Operating Agreement is deleted and replaced in its entirety with the following:

    "25. **Amendments**. Unless otherwise required by law, this Agreement and the articles of organization of the Company may be altered, amended, amended and restated or repealed solely by action of the Managers. In the event any law authorizes or otherwise permits the members of the Company to alter, amend, amend and restate or repeal this Agreement or the articles of organization of the Company, the members shall not do so unless the Managers have first approved such alteration, amendment, amendment and restatement or repeal of this Agreement or the articles of organization of the Company and recommended to the members that they approve the same."

General Ratification and Authorization

 **NOW, THEREFORE, BE IT RESOLVED**, that in addition to and without limiting the foregoing, the proper officers of the LLC be, and each of them hereby is, for and in the name and on behalf of the LLC, authorized to take, or cause to be taken, such further action, to make such filings and certifications, to deliver such notices, to execute and deliver, or cause to be delivered, all such agreements, instruments, notices and documents, to pay such fees and expenses, and to do all such things, in each case, as he or she may deem necessary or appropriate in order to effect and implement the purposes or to carry out the intent of the foregoing Resolutions (as conclusively evidenced by the execution, delivery, filing or performance of any such agreement, document or action, as the case may be), and any and all actions contemplated herein or heretofore taken by the Managers, officers, employees, agents or Member of the LLC in connection with the subject of the foregoing recitals and Resolutions be, and each of them hereby is, ratified, confirmed, approved and adopted in all respects as the act and deed of the LLC.

    [Signatures appear on the following page.]

**IN WITNESS WHEREOF**, the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

**Member:**

_Jack Owoc (Jan 6, 2023 12:49 EST)_
John H. Owoc

**Managers:**

_Jack Owoc (Jan 6, 2023 12:49 EST)_
John H. Owoc


Bob Dickinson


Stephen S. Gray


Eric Hillman


Steven G. Panagos

**IN WITNESS WHEREOF**, the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

**Member:**

_____
John H. Owoc

**Managers:**

_____
John H. Owoc

*Bob Dickinson*
Bob Dickinson (Jan 6, 2023 16:51 EST)
Bob Dickinson

*Stephen Gray*
Stephen Gray (Jan 6, 2023 17:22 EST)
Stephen S. Gray

*Eric Hillman*
Eric Hillman

*SGP*
Steven G Panagos (Jan 6, 2023 16:53 EST)
Steven G. Panagos