UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,

Debtors.[1]

_____/

Chapter 11 Cases

Case No.: 22-17842-PDR

(Jointly Administered)

**DEBTORS' MOTION FOR ENTRY OF
AN ORDER (I) EXTENDING THE EXCLUSIVE PERIODS
WITHIN WHICH TO FILE A CHAPTER 11 PLAN AND SOLICIT
ACCEPTANCES THEREOF AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, pursuant to section 1121 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), file this motion (this "Motion") seeking entry of an order (the "Proposed Order"), substantially in the form attached hereto as **Exhibit A**, (i) extending (a) the Debtors' exclusive period to file a chapter 11 plan (the "Exclusive Filing Period") by twenty-nine (29) days (through and including September 1, 2023), and (b) the Debtors' exclusive period to solicit votes on said plan by 30 days (through and including November 6, 2023) (the "Exclusive Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods"), without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods; and (ii) granting related relief. In further support of this Motion, the Debtors respectfully represent as follows:

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

## PRELIMINARY STATEMENT

1.        Since the entry of the Final DIP Order (as defined below) and the *Order Granting Debtors' Motion for Entry of an Order (I) Extending the Exclusive Periods within which to File a Chapter 11 Plan and Solicit Acceptances thereof and (II) Granting Related Relief* [ECF No. 1324] (the "Second Extension Order"), the Debtors have made significant progress in these chapter 11 cases forging a path forward for a successful conclusion to these cases.  In particular, pursuant to the Bidding Procedures Order (defined below), the Debtors conducted a Court-approved sale process that culminated in the Debtors filing an *Amended Notice of Auction Cancellation and Successful Bidder* [ECF No. 1556] identifying the Asset Purchase Agreement ("APA")[2] by and between certain of the Debtors, as sellers, and Blast Asset Acquisition LLC, an acquisition vehicle that is a subsidiary of Monster, as buyer, for a sale of substantially all of the Debtors' assets. The Debtors, along with the official committee of unsecured creditors (the "Committee") and DIP Lenders-- who collectively represent essentially all of the Debtors' creditors -- determined that the transaction memorialized in the APA represents the highest and best (and only actionable) offer to purchase substantially all of the Debtors' assets as a going concern (the "Transaction"). The hearing to consider the approval of the Transaction is scheduled for July 12, 2023. If approved, the APA provides for an outside closing date for the Transaction of no later than August 3, 2023. The current Exclusive Filing Period expires on August  4, 2023, and the Debtors, by this Motion, propose to extend such period to September 1, 2023 (as well as the Exclusive Solicitation Period by a corresponding amount of time).  An extension of the Exclusive Periods will allow the Debtors to remain focused on consummating the Transaction for the benefit of all stakeholders and will

---

[2] Capitalized terms used in this Motion and not otherwise defined herein shall have the meanings ascribed to such terms in the APA.

avoid the distractions that would result should the Debtors' Exclusive Periods terminate.

2.      There is no need to terminate the Debtors' Exclusive Periods.  The Bidding Procedures Motion offered parties in interest the ability to submit a bid in the form of a plan of reorganization. No parties proposed such a plan. As asserted in the withdrawn Motion to Convert,[3] but for the Transaction, the Debtors would have no alternative but to wind-down their operations and covert these cases to cases under Chapter 7.  As such, extending the Debtors' Exclusive Periods does not prejudice any third party.  In contrast, ending the Debtors' Exclusive Periods at this juncture would potentially undermine the closing of the Transaction and enjoys the support of the Debtors' key economic constituents.  The importance of extending the Exclusive Periods is clear, and, as set forth herein, "cause" clearly exists for the Court to do so.  Accordingly, the Debtors respectfully request that the Court grant the relief requested.

## JURISDICTION

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory basis for the relief requested herein is section 1121(d) of the Bankruptcy Code.

## BACKGROUND

6.      On October 10, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of Bankruptcy Code.

---

[3] *Debtors' Motion for Entry of An Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* [ECF No. 1551], withdrawn at ECF No. 1562.

7.    The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.    On November 1, 2022, the Office of the United States Trustee (the "U.S. Trustee") appointed the Committee [ECF No. 245].  On November 23, 2022, the U.S. Trustee reconstituted the Committee [ECF No. 400].  No request has been made to the Court to order the appointment of a trustee or examiner.

9.    Since the filing of these chapter 11 cases, the Debtors have worked diligently to stabilize their operations, fulfill their obligations as debtors-in-possession, and address numerous complex issues.  In furtherance of these goals, the Debtors engaged in extensive and hard-fought negotiations with their pre- and post-petition lenders (the "DIP Lenders") to secure debtor-in-possession financing on terms acceptable not only to those lenders, but to the Committee, Monster, and certain other litigation and lien claimants.  As a result of these efforts, the Debtors were able to obtain debtor-in-possession financing on a largely consensual basis, and on January 12, 2023, this Court entered the *Final Order (I) Approving Postpetition Financing, (II) Authorizing Use Of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [ECF 638] (the "Final DIP Order") approving the Debtors' postpetition financing on a final basis.

10.    In accordance with the terms of the Final DIP Order, on January 27, 2023, the Debtors filed the *Debtors' Motion for an Order (I) Approving (A) Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Procedures for the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Form and Manner of Notice of the Sale Hearing, Assumption Procedures, and Auction Results, (D) Dates for an Auction*

*and Sale Hearing, (E) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances, and (F) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing the Debtors to Provide Bid Protections, and (III) Granting Related Relief* [ECF No. 707] (the "Bidding Procedures Motion").  On February 24, 2023, this Court entered an order granting the Bidding Procedures Motion [ECF No. 854] (the "Bidding Procedures Order").  The Bidding Procedures Order set forth certain sale milestones (the "Bidding Procedures Milestones") to guide the Debtors' marketing and sale process (the "Transaction Process").  The Transaction Process and the Transaction is supported by both the Committee and the DIP Lenders.

11.     On February 3, 2023, this Court entered the First Extension Order [ECF No. 744], which extended the Exclusive Filing Period from February 7, 2023, through and including May 8, 2023; and (b) extending the Exclusive Solicitation Period from April 10, 2023, through and including July 10, 2023, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods.

12.     On May 5, 2023, this Court entered the Second Extension Order [ECF No. 1324], which extended Exclusive Filing Period from May 8, 2023, through and including August 4, 2023; and (b) extending the Exclusive Solicitation Period from July 10, 2023, through and including October  8, 2023, without prejudice to the debtors right to seek further extensions of the Exclusive Periods.

## **RELIEF REQUESTED**

13.     By this Motion, the Debtors respectfully request that, pursuant to section 1121(d) of the Bankruptcy Code and without prejudice to the Debtors' rights to seek additional extensions of time, the Court enter the Proposed Order (i) extending the time during which the Debtors shall

have the exclusive right to file a chapter 11 plan from August 4, 2023, through and including September 1, 2023; and (ii) extending the time during which the Debtors shall have the exclusive right to solicit acceptances on said plan from October 6, 2023, through and including November 6, 2023.

**BASIS FOR REQUESTED RELIEF**

14.    Section 1121(b) of the Bankruptcy Code provides debtors with the exclusive right to file a chapter 11 plan during the first 120 days after commencement of a chapter 11 case.  11 U.S.C. § 1121(b).  If a debtor files a plan during this period, section 1121(c)(3) of the Bankruptcy Code provides the debtor with an additional 60 days following the expiration thereof (or 180 days following the commencement of the case) to solicit votes on such plan.  11 U.S.C. § 1121(c)(3). Section 1121(d) of the Bankruptcy Code permits the bankruptcy court to extend a debtor's exclusive period to file a plan and solicit acceptances thereof upon demonstration of "cause."  11 U.S.C. § 1121(d).

15.    Although the Bankruptcy Code does not define "cause," the legislative history indicates it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors.  *See* H.R. REP. NO. 95–595, at 231–32 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).  This time of exclusivity affords a debtor an opportunity to propose a chapter 11 plan and solicit acceptances thereof without the potential value deterioration and disruption to business operations that would ensue from the filing and solicitation of competing plans by non-debtor parties.  Further, the legislative history indicates that "cause" should be interpreted in such a way "to allow the debtor to reach an agreement."  H.R. Rep. No. 95-595 at 231-32 (1978), as reprinted in 1978 U.S.C.C.A.N. 5963, 6191.

6

16.    In determining whether cause exists to extend a debtor's exclusive periods, courts consider a variety of factors, including:

i.    the size and complexity of the case;

ii.    the necessity of sufficient time to negotiate and prepare adequate information;

iii.    the existence of good faith progress toward reorganization;

iv.    whether the debtor is paying its debts as they come due;

v.    whether the debtor has demonstrated reasonable prospects for filing a viable plan;

vi.    whether the debtor has made progress in its negotiations with creditors;

vii.    the amount of time that has elapsed in the case;

viii.    whether the debtor is not seeking to extend exclusivity to pressure creditors; and

ix.    the existence of an unresolved contingency.

*See In re Friedman's, Inc.*, 336 B.R. 884, 888 (Bankr. S.D. Ga. 2005) (citations omitted); *see also In re Dow Corning Corp.*, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) (identifying the above factors and noting that courts generally rely on the same factors to determine whether exclusivity should be extended).

17.    Not all of these factors may be applicable in every case, accordingly courts may consider a relevant subset of factors to determine whether cause exists to grant an exclusivity extension in a particular chapter 11 case. *See, e.g.*, *In re Express One Int'l, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (identifying four of the factors as relevant in determining whether "cause" exists to extend exclusivity); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (finding that the debtor showed "cause" to extend exclusivity based upon three of the factors); *In re Pine Run Trust, Inc.*, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986) (relying on two factors in holding that cause existed to extend exclusivity). Finally, the decision to extend a

7

debtor's exclusive filing and solicitation periods is left to the discretion of the court, and should be based upon the facts and circumstances of the particular case. *See, e.g., First Am. Bank of N.Y. v. Sw. Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986).

18.     The application of the relevant factors to the facts and circumstances of these chapter 11 cases demonstrates that the requested extension of the Exclusive Periods is both appropriate and necessary.

**I.    These Chapter 11 Cases Are Large and Complex.**

19.     With respect to the first factor, it is clear that the Debtors' cases are large and complex. The Debtors capital structure is complex, and it is subject to numerous liabilities that need to be addressed during the pendency of these chapter 11 cases. As of the Petition Date, the Debtors' funded debt obligations totaled approximately $344.2 million, and the Debtors' outstanding trade payables totaled approximately $83 million. *See* First Day Declaration, ¶¶ 25, 27. Over 700 proofs of claim have been filed to date asserting, in the aggregate, over $1 billion in claims against the estates. Further, the Debtors' chapter 11 cases involve numerous active creditor constituents, including, the Committee, the DIP Lenders, Monster, and certain other litigation claimants, as well as a multitude of counterparties to the Debtors' contracts and leases.

20.     ***DIP Financing***.  Prior to the entry of the Final DIP Order, numerous objections were filed to the proposed debtor-in-possession financing, and the hearing to consider entry of the Final DIP Order was delayed several times. By working constructively with the objecting parties, the Debtors were able to consensually resolve all but one of the objections. But the issues raised in the objections, including, among others, those related to the terms of the Debtors' postpetition financing and corporate governance changes, evidence the complex nature of these cases.

21.     ***Transaction Process***.  The Debtors, in coordination with the DIP Lenders and the Committee, ran a competitive sale and marketing process pursuant to the Bidding Procedures

Order. The sale and marketing process culminated in the APA, which contemplates the sale of substantially all of the Debtors' assets for a purchase price up to $362,000,000.00. In connection therewith, the Debtors have been actively involved in negotiations with interested parties to address questions regarding, and informal comments to, the Transaction and its impact on a potential chapter 11 plan.    In accordance with the Bidding Procedures Milestones, the Debtors timely filed the Form Sale Order and Assumption Notices.[4]  As a result of these filings, the Debtors have been in discussions with numerous lessors, contract counterparties, taxing authorities, and others, regarding informal comments and formal objections to the Form Sale Order and matters relating to the assumption and/or assignment of an array of contracts and leases listed on the Assumption Notices.

22.    Approval of the APA runs hand-in-hand with the approval of comprehensive settlement agreement by and between the Debtors, the Committee, the DIP Lenders, Monster and Orange Bang, Inc. (the "Settlement") [ECF No. 1548].  If approved by the Court, the Settlement resolves a number of controversies, including the disputes regarding the allowance and priority of the claims asserted by Monster, OBI and the DIP Lenders.  The Debtors reasonably believe that, if approved, the Settlement will also permit the Debtors to propose and consummate a nearly consensual plan of reorganization.

---

[4]  On March 3, 2023, the Debtors filed the *Notice of Filing of Proposed Sale Order* [ECF No. 896] (the "Form Sale Order") and the *Notice of (I) Executory Contracts and Unexpired Leases that May Be Assumed and Assigned in Connection with a Sale of the Debtors' Assets and (II) the Proposed Cure Amounts with Respect Thereto* [ECF No. 893] (the "First Assumption Notice").  Thereafter, on March 21, 2023, the Debtors filed the *Supplemental Notice of (I) Executory Contracts and Unexpired Leases that May Be Assumed and Assigned in Connection with a Sale of the Debtors' Assets and (II) the Proposed Cure Amounts with Respect Thereto* [ECF No. 995] (the "Second Assumption Notice,") Thereafter on June 13, 2023, the Debtors filed the *Second Supplemental Notice of (I) Executory Contracts and Unexpired Leases that May Be Assumed and Assigned in Connection with a Sale of the Debtors' Assets and (II) the Proposed Cure Amounts with Respect Thereto* [ECF No. 1460] (the "Third Assumption Notice, and together with the First Assumption Notice and the Second Assumption Notice, the "Assumption Notices").  The Assumption Notices identify the Debtors' executory contracts and unexpired leases that may be assumed or assumed and assigned in connection with a Transaction.

23.    *Litigation*.  The Debtors' chapter 11 cases are further complicated by numerous complex litigation matters.  As of the Petition Date, the Debtors were party to approximately 63 disputes that are in active litigation or are the subject of threatened litigation.  The Debtors were also involved in ongoing litigation relating to the Arbitration Award granted in favor of Monster and OBI, which was affirmed by the District Court for the Central District of California, for approximately $175 million plus a 5% royalty of net sales of Bang energy drinks.  The Settlement resolves these disputes.

24.    Based on the foregoing, there is no question that the Debtors' cases are large and complex, warranting the extensions of the Exclusive Periods.

**II.    The Debtors Have Made Significant Progress to Date.**

25.    While much work remains, as described herein, the Debtors have made significant progress with respect to maximizing the value of their assets and bringing these chapter 11 cases to a successful conclusion.  The Debtors have secured DIP financing on a final basis through hard-fought negotiations that resulted in the entry of the Final DIP Order and Bidding Procedures Order on a largely consensual basis.  The Debtors remained focused throughout the cases on the Transaction Process, which has resulted in productive negotiations with a number of bidders and culminated in the Transaction.  Additionally, the Debtors have been narrowing the issues raised in the informal and formal objections received in connection with the Form Sale Order and Assumption Notices, and will continue to do so.

26.    The Transaction is supported by the Debtors' key constituents, including the Committee and the DIP Lenders.  The Debtors anticipate proposing a chapter 11 plan that has the support of those constituents and the other parties to the Settlement.  Given the proximity of the outside closing date of the current Transaction to the expiration of the Exclusive Filing Period, the Debtors request a 29-day extension of the exclusive period to file a chapter 11 plan in order to give

10

the Debtors sufficient time to file a plan of liquidation following the consummation of the Transaction.  The progress achieved to date should not be derailed by the termination of the Exclusive Periods.

**III.    The Debtors Are Paying their Debts Current.**

27.    Since the filing of these chapter 11 cases, the Debtors and their advisors have focused on the continued operation of the Debtors' business and have secured the required financing to allow the Debtors to pay their post-petition debts as and when they come due.  The Debtors have timely filed all of their monthly operating reports that detail all of the foregoing payments.

**IV.    The Debtors Have Demonstrated Reasonable Prospects for Filing a Viable Plan.**

28.    The Debtors believe the Transaction preserves the Debtors' business and maximizes the value of their assets.  The Debtors expect the closing of the Transaction and the consideration the Debtors will receive pursuant to the Settlement will permit the Debtors to make distributions to creditors through a plan of liquidation.  Accordingly, this factor also weighs in favor of the Debtors' requested extensions of their exclusive periods.

**V.    The Debtors Have Made Progress with their Creditors.**

29.    As mentioned above, the Debtors have already achieved numerous goals in their ongoing negotiations with their creditors.

30.    The Debtors have a constructive working relationship with the Committee, DIP Lenders, and other key creditors and have proven that they can and will work with their creditors to drive consensus where possible.  In sum, substantial progress to date has been accomplished through the Debtors' engagement with their creditors.

12249807-2

## VI.    Limited Time Has Passed in these Chapter 11 Cases.

31.    The Debtors filed these cases in early October 2022, approximately nine months ago.  While unresolved issues remain, with additional time, and absent the added confusion and disruption of competing third-party plans, the Debtors will endeavor to resolve all such issues through the Transaction.

## VII.    The Debtors Are Not Seeking to Extend the Exclusive Periods to Pressure Creditors.

32.    The Debtors are not pressuring their creditors via the relief requested by this Motion – rather, they simply seek to continue the coordinated process they commenced months ago to consummate a value-maximizing transaction for the benefit of all stakeholders.  The Debtors have shown their willingness to negotiate in good faith and make concessions at every turn.  The proposed extension of the Exclusive Periods will serve only to allow such negotiations to progress constructively and in a controlled manner rather than introducing potential confusion and value degradation.

## VIII.    Existence of Unresolved Contingencies

33.    An example of an "unresolved contingency may include the favorable resolution of litigation involving the debtor's right to use an asset (*e.g.,* a lease or a trademark) that is essential to the debtor's business."  *See In re GMG Cap. Partners III, L.P.*, 503 B.R. 596, 603 (Bankr. S.D.N.Y. 2014).  The approval and consummation of the compromise memorialized in the Settlement is precisely the type of unresolved contingency that weighs in favor of granting the relief requested by this Motion.  Additionally, as noted herein, the Debtors are parties to numerous pending litigations, including adversary proceedings pending before this Court, and two appeals prosecuted by Mr. Owoc.

34.    For all the foregoing reasons, the Debtors respectfully submit that cause exists to extend the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

12249807-2

**NOTICE**

35.      The Debtors have provided notice of this Motion to (a) the U.S. Trustee; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition and proposed postpetition revolving credit facilities and its counsel; (d) counsel to the Committee; (e) the United States Attorney's Office for the Southern District of Florida; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the state attorneys general for states in which the Debtors conduct business; and (i) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, under the circumstances, no other or further notice is required.

12249807-2

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order in the form attached hereto as **Exhibit A**, extending the Exclusive Periods and granting the Debtors such other related relief as the Court may deem necessary.

Dated:   July 10, 2023
         Miami, Florida

Respectfully submitted,

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
        tj.li@lw.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*/s/ Jordi Guso*
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
        mniles@bergersingerman.com

*Counsel for the Debtors and Debtors-in-Possession*

14

**Exhibit A**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                              Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al*.,              Case No.: 22-17842-PDR

　　　　　Debtors.[1]                                (Jointly Administered)

_____/

**ORDER GRANTING DEBTORS' MOTION
FOR ENTRY OF AN ORDER (I) EXTENDING THE EXCLUSIVE
PERIODS WITHIN WHICH TO FILE A CHAPTER 11 PLAN AND
SOLICIT ACCEPTANCES THEREOF AND (II) GRANTING RELATED RELIEF**

**THIS MATTER** was before this Court on _____, 2023, at ___ _.m. in Fort

Lauderdale, Florida, upon the *Debtors' Motion for Entry of an Order (I) Extending the Exclusive*

*Periods within which to File a Chapter 11 Plan and Solicit Acceptances Thereof and (II) Granting*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

*Related Relief* [ECF No. ___] (the "<u>Motion</u>")[2] filed by the above-captioned debtors and debtors-in-possession (the "<u>Debtors</u>").  The Motion seeks entry of an order (this "<u>Order</u>") (i) extending the Debtors' exclusive periods to (a) file a chapter 11 plan (the "<u>Exclusive Filing Period</u>") by 29 days (through and including September 1, 2023) and (b) the Debtors' exclusive period to solicit votes on said plan by 30 days (through and including November 6, 2023) (the "<u>Exclusive Solicitation Period</u>," and together with the Exclusive Filing Period, the "<u>Exclusive Periods</u>"), without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods and (ii) granting related relief, all as more fully set forth in the Motion.  The Court finds that (i) it has jurisdiction over the matters raised in the Motion under 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding under 28 U.S.C § 157(b)(2)(A), and that this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; (v) notice of the Motion and the hearing were appropriate under the circumstances and no other notice need be provided; and (vi) upon review of the record before the Court, including the legal and factual bases set forth in the Motion, the First Day Declaration and the statements made by counsel at the hearing, good and sufficient cause exists to grant the relief requested in the Motion.  Accordingly, it is

        **ORDERED** as follows**:**

1.      The Motion is **GRANTED** as set forth herein.

2.      All objections to entry of this Order, to the extent not withdrawn or settled, are overruled.

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the Motion.

3.      The exclusive period for the Debtors to file a chapter 11 plan is hereby extended through and including September 1, 2023.

4.      The period during which the Debtors have the exclusive right to solicit acceptances of a chapter 11 plan is hereby extended through and including November 6, 2023.

5.      The relief granted herein shall not prejudice the Debtors from seeking further extensions made pursuant to section 1121(d) of the Bankruptcy Code, nor any parties in interest from objecting to any such further extensions.

6.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

7.      The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

8.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

# # #

<u>Submitted by</u>:
Jordi Guso, Esq.,
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email: jguso@bergersingerman.com
        mniles@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

12249807-2