**DEBTORS EXHIBIT 35**

OFFICIAL RECORDS OF
MARICOPA COUNTY RECORDER
ADRIAN FONTES
20201230181  12/14/2020  01:46
ELECTRONIC RECORDING

4823175-16-1-1--
morenoa

Drawn By and Return To:
Greg Faltin
Moore & Van Allen, PLLC
Bank of America Corporate Center
100 North Tryon Street, Suite 4700
Charlotte, North Carolina  28202-4003


STATE OF ARIZONA

COUNTY OF MARICOPA

ATTENTION: FILING OFFICER – THIS DEED OF TRUST COVERS GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN AND IS TO BE FILED FOR RECORD IN THE RECORDS WHERE DEED OF TRUSTS ON REAL ESTATE ARE RECORDED.  ADDITIONALLY, THIS DEED OF TRUST SHOULD BE APPROPRIATELY INDEXED, NOT ONLY AS A DEED OF TRUST, BUT ALSO AS A FIXTURE FILING AND FINANCING STATEMENT COVERING GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED HEREIN.  THE MAILING ADDRESSES OF THE GRANTOR (DEBTOR) AND AGENT (SECURED PARTY) ARE SET FORTH IN THIS INSTRUMENT.

MAXIMUM PRINCIPAL AMOUNT TO BE ADVANCED PURSUANT TO THE LOAN DOCUMENTS IS $541,400,000.00

THE MATURITY DATE OF THE LOAN DOCUMENTS, EXCLUSIVE OF ANY OPTION TO RENEW OR EXTEND SUCH MATURITY DATE, IS AUGUST 14, 2025.

### DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIS DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "Deed of Trust") is made and entered into as of December 2, 2020, by JHO REAL ESTATE INVESTMENT, LLC, a Florida limited liability company with an address of 1600 N. Park Drive, Weston, Florida 33326 (the "Grantor"), as grantor, in favor of STEWART TITLE & TRUST OF PHOENIX, INC.,  a Delaware corporation with an address of 2930 E. Camelback

CHAR2\2313747v4

Road, Suite 210, Phoenix, AZ 85016, in its capacity as trustee (together with its successors and assigns in such capacity, the "Trustee"), for the benefit of TRUIST BANK ("Truist", as successor by merger to Branch Banking and Trust), in its capacity as Administrative Agent for the Lenders (as defined in the Credit Agreement (as hereinafter defined)), and any other holder of the Secured Obligations (as hereinafter defined), with an address of Agency Services, 303 Peachtree St., N.E. / 25th Floor, Atlanta, Georgia 30308, Attn Agency Services Manager (Truist, in such capacity, together with any successors and assigns, the "Agent"), as beneficiary.

## RECITALS

WHEREAS, Vital Pharmaceuticals, Inc., a Florida corporation (the "Borrower") and certain other Loan Parties are party to that certain Amended and Restated Loan Agreement, dated as of September 20, 2019, as amended from time to time (the "Existing Credit Agreement");

WHEREAS, certain obligations described in the Existing Credit Agreement are secured by the Existing Deed of Trust;

WHEREAS, the Borrower, the Agent, and the Lenders desire to amend and restate the Existing Credit Agreement pursuant to the terms of that certain Amended and Restated Revolving Credit And Term Loan Agreement dated as of August 14, 2020, between the Borrower, the Guarantors from time to time party thereto, the Agent, and the Lenders (as further amended, modified, supplemented, extended, renewed or replaced from time to time, the "Credit Agreement"). All terms used but not otherwise defined herein shall have the meanings provided in the Credit Agreement.

WHEREAS, the Grantor is a Guarantor under the Credit Agreement and, as such, is required by the Credit Agreement to execute and deliver this Deed of Trust as security for the Secured Obligations (as hereinafter defined), which the Grantor is willing to do in consideration of the agreement of Agent and the Lenders to make the Loans available to the Borrower pursuant to the terms of the Credit Agreement.

## W I T N E S S E T H:

In consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Grantor irrevocably grants, mortgages, warrants, bargains, sells, pledges, remises, aliens, assigns, conveys, transfers and sets over to Trustee and the Trustee's successors and assigns, in trust, with POWER OF SALE, for the benefit of Agent and the Lenders, and with all other statutory rights and covenants and subject to the further terms of this Deed of Trust, all of the Grantor's right, title and interest in and to the following:

(a)      All those tracts or parcels of land and other real property interests in Maricopa County, Arizona, as more particularly described in Exhibit A attached hereto and made a part hereof, together with all of the Grantor's right, title and interest in, to and under all rights of way, easements, privileges and appurtenances relating or appertaining to such real estate and all water and water rights, sewer and sewer rights, ditches and ditch rights, minerals, oil and gas rights, royalties, lease or leasehold interests owned by the Grantor, now or hereafter used in connection with or appurtenant to or related to such real estate, and all interests of the Grantor now owned or hereafter acquired in and to streets, roads, alleys and public places, now or hereafter used in connection with such real estate, and all existing or future licenses, contracts, permits and agreements required or used in connection with the ownership, operation or maintenance of such real estate, and any and all insurance proceeds, and any and all awards, including interest, previously or hereafter made to the Grantor for taking by eminent domain or in lieu thereof (collectively, the "Land"); and

2

CHAR2\2313747v4

(b)      All buildings and improvements of every kind and description now or hereafter erected or placed on the Land (the "Improvements") and all materials intended for construction, reconstruction, alteration and repair of such Improvements now or hereafter erected thereon, all of which materials shall be deemed to be included within the Premises (as hereinafter defined) immediately upon the delivery thereof to the Land, and all "equipment", "goods" and "fixtures" as such terms are defined in the Uniform Commercial Code as adopted and in effect in the state in which the Premises is located, as amended from time to time (the "Uniform Commercial Code") and all articles of personal property now or hereafter owned by the Grantor and attached to or contained in and used in connection with the Land and Improvements including, but not limited to, all furniture, furnishings, apparatus, machinery, equipment, motors, elevators, supplies, fittings, radiators, ranges, refrigerators, awnings, shades, screens, blinds, carpeting, office equipment and other furnishings and all plumbing, heating, lighting, cooking, laundry, ventilating, refrigerating, incinerating, air conditioning and sprinkler equipment and fixtures and appurtenances thereto and all renewals or replacements thereof or articles in substitution thereof, whether or not the same are or shall be attached to the Land and Improvements in any manner (the "Tangible Personalty") and all proceeds of the Tangible Personalty (hereinafter, the Land, Improvements, Tangible Personalty and all other property and interests described above, together with all proceeds thereof, being collectively referred to as the "Premises").

TO HAVE AND HOLD the same, together with all privileges, hereditaments, easements and appurtenances thereunto belonging forever, subject to the Permitted Encumbrances, to the Trustee and Trustee's successors and assigns, to secure the Secured Obligations (hereinafter defined) and other obligations herein recited; provided that, should (i) the Secured Obligations secured hereby be paid in full and the Borrower fully discharges its obligations secured hereby and satisfy the obligations in full or (ii) the conditions set forth in the Credit Agreement for the release of this Deed of Trust be fully satisfied, the lien and security interest of this Deed of Trust shall cease, terminate and be void and Agent shall promptly cause a release of this Deed of Trust to be filed in the appropriate office; and until such obligations are fully satisfied, it shall remain in full force and effect.

And, as additional security for the Secured Obligations, the Grantor hereby irrevocably assigns to the Agent, for the benefit of the Lenders, all the security deposits, rents, issues, profits and revenues of the Premises from time to time accruing (the "Rents and Profits") which assignment constitutes a present, absolute and unconditional assignment and not an assignment for additional security only. Notwithstanding the foregoing, so long as no Event of Default (as defined in Article III) shall exist, Grantor shall have a license (which license shall terminate automatically and without notice upon the occurrence and during the continuance of an Event of Default) to collect, but not prior to accrual, all Rents and Profits. In the event, however, that Grantor shall cure any such Event of Default, then the license granted under this paragraph shall be reinstated unless and until another Event of Default occurs and is continuing, at which time the license shall again terminate.

As additional collateral and further security for the Secured Obligations, the Grantor does hereby assign to Agent, for the benefit of the Lenders, a security interest in all of the right, title and the interest of the Grantor in and to any and all insurance policies and proceeds thereof and any and all leases (including equipment leases), rental agreements, management contracts, construction contracts, architects' contracts, technical services agreements, or other contracts, licenses and permits to the extent now or hereafter relating solely to the Premises (the "Intangible Personalty") or any part thereof, and the Grantor agrees to execute and deliver to the Agent such additional instruments, in form and substance reasonably satisfactory to the Agent, as may hereafter be reasonably requested by the Agent to evidence and confirm said assignment; provided, however, that acceptance of any such assignment shall not be construed as a consent by the Agent to any lease, rental agreement, management contract, franchise agreement, construction contract, technical services agreement or other contract, license or permit, or to impose upon the Agent, or any Lender, any obligation with respect thereto. Notwithstanding the foregoing provisions,

3

such assignment and grant of security interest contained herein shall not extend to, and the Intangible Personalty shall not include, any personalty which is now or hereafter held by the Grantor as licensee, lessee or otherwise, to the extent that such personalty is not assignable or capable of being encumbered as a matter of law or under the terms of the license, lease or other agreement applicable thereto (but solely to the extent that any such restriction shall be enforceable under applicable law); provided, however, that the foregoing assignment and grant of security interest shall extend to, and the Intangible Personalty shall include, any and all proceeds of such personalty to the extent that the assignment or encumbering of such proceeds is not so restricted under the terms of the license, lease or other agreement applicable thereto.

All the Tangible Personalty which comprises a part of the Premises shall, as far as permitted by law, be deemed to be affixed to the aforesaid Land and conveyed therewith. Grantor hereby grants to Agent, for the benefit of the Lenders, a security interest as to the balance of the Tangible Personalty and the Intangible Personalty, and this Deed of Trust shall be considered to be a security agreement which creates a security interest in such items for the benefit of the Agent and the Lenders. In that regard, the Grantor grants to the Agent all of the rights and remedies of a secured party under the laws of the state in which the Premises are located.

The Grantor and the Agent covenant, represent and agree as follows:

## ARTICLE I

### Secured Obligations

1.1     Secured Obligations.  The Lenders have established Five Hundred Forty-One Million Four Hundred Thousand and No/100 Dollars ($541,400,000.00) in secured credit facilities in favor of the Borrower pursuant to the terms of the Credit Agreement.  This Deed of Trust is given to secure the payment and performance of (a) all Obligations of the Loan Parties under the Credit Agreement, as the same may be amended from time to time, (b) all obligations of the Grantor under the terms of this Deed of Trust, and (c) all obligations and liabilities incurred in connection with the collection and enforcement of the foregoing (all of which whether now existing or hereafter arising, collectively, the "Secured Obligations").

1.2     Future Advances.  This Deed of Trust is given to secure the Secured Obligations and the repayment of the aforesaid credit facilities together with each advance of any Loan, any renewals or extensions or modifications thereof upon the same or different terms or at the same or different rate of interest and also to secure all future advances and readvances that may subsequently be made to the Borrower or any other Loan Party by Agent or the Lenders, in connection with the aforesaid Credit Agreement, and all renewals, modifications, replacements and extensions thereof.

## ARTICLE II

### Grantor's Covenants, Representations and Agreements

2.1     Title to Property.  The Grantor represents and warrants to the Agent and Lenders (i) that it is seized of the Land and the Improvements and has indefeasible fee simple title to the Land and the Improvements and has the right to encumber and convey the same, and title to such Land and Improvements is free and clear of all liens and encumbrances except for Permitted Encumbrances, (ii) that it is the owner of the Tangible Personalty free and clear of all liens and encumbrances except for the Permitted Encumbrances and (iii) that it will warrant and defend the title to such property except for the Permitted Encumbrances against the claims of all Persons.  As to the balance of the Premises, the Rents

4

and Profits and the Intangible Personalty, the Grantor represents and warrants that it will defend such property against the claims of all Persons subject to the Permitted Encumbrances.

2.2     Taxes and Fees. Subject to the right of the Grantor set forth in Section 4.8 of the Credit Agreement to contest the same, the Grantor will pay prior to delinquency all taxes, general and special assessments, permit fees, inspection fees, user fees, license fees, water and sewer charges, and franchise fees lawfully levied, imposed or asserted by the United States of America or any state, county, municipality or other taxing authority upon the Grantor in respect of the Premises or any charge which, if unpaid, would become a lien or charge upon the Premises prior to or equal to the lien of this Deed of Trust for any amounts secured hereby or which would have priority or equality with this Deed of Trust in the distribution of the proceeds of any foreclosure sale of the Premises (collectively, "Governmental Assessments") and all insurance premiums due and payable in connection with maintaining the insurance required under Section 2.9(a) hereof as required by the terms and conditions of the Credit Agreement (and the Grantor, upon request of the Agent, will submit to the Agent receipts evidencing said payments). The Grantor shall also pay all Deed of Trust taxes, recording fees and all other costs and expenses, if any, due or payable in connection with the execution, delivery and/or recording of this Deed of Trust and in connection with any advance secured by this Deed of Trust.

2.3     Reimbursement. Subject to the right of the Grantor set forth in Section 4.8 of the Credit Agreement to contest any tax assessment or charge, the Grantor agrees that if it shall fail to pay on or before the date that the same become delinquent any Governmental Assessment or any utility charge, whether public or private, or any insurance premium, on or prior to the cancellation date of such insurance, or if it shall fail to procure the insurance coverage and deliver the insurance certificates required hereunder, or if it shall fail to pay any other charge or fee described in Sections 2.2, 2.3, 2.6 or 5.6 hereof, then the Agent or the Lenders, at their option, may pay or procure the same and will give the Grantor prompt notice of any such expenditures. The Grantor will reimburse the Agent or the Lenders within thirty (30) days of demand for any sums of money paid by the Agent or the Lenders pursuant to this Section, together with interest on each such payment at the default rate under the Credit Agreement, and all such sums and interest thereon shall be secured hereby.

2.4     Additional Documents. The Grantor agrees to execute and deliver to the Agent, concurrently with the execution of this Deed of Trust and upon the reasonable request of the Agent from time to time hereafter, all financing statements and other documents reasonably required to perfect and maintain the security interest created hereby. The Grantor hereby authorizes the Agent to prepare and file such financing statements, fixture filings, renewals thereof, amendments thereof, supplements thereto and other instruments as the Agent may from time to time deem necessary or appropriate in order to perfect and maintain the security interests granted hereby in accordance with the Uniform Commercial Code as adopted and as in effect in the state in which the Land is located (the "UCC").

2.5     Sale or Encumbrance. Except as otherwise permitted in the Credit Agreement, the Grantor will not sell, encumber or otherwise dispose of any of the Tangible Personalty except to incorporate such into the Improvements or replace such with goods of quality and value at least equal to that replaced. In the event the Grantor sells or otherwise disposes of any of the Tangible Personalty other than as permitted above, the Agent's security interest in the proceeds of the Tangible Personalty shall continue pursuant to this Deed of Trust.

2.6     Fees and Expenses. The Grantor will promptly pay upon demand any and all reasonable costs and expenses of the Agent or the Lenders and the Trustee, including, without limitation, reasonable attorneys' fees actually incurred by Agent or the Lenders, (a) as required under the Credit Agreement and (b) as necessary to protect the Premises, the Rents and Profits or the Intangible Personalty in accordance with Section 5.6 hereof, or to exercise any rights or remedies under this Deed of Trust or with respect to

5

|

the Premises, Rents and Profits or the Intangible Personalty. All of the foregoing costs and expenses shall be secured hereby.

2.7     Leases and Other Agreements. The Grantor shall faithfully keep and perform, or cause to be kept and performed, in all material respects, all of the covenants, conditions, and agreements contained in each material lease now or hereafter affecting the Premises on the part of the Grantor to be kept and performed (including performance of all covenants to be performed under any and all leases of the Premises or any part thereof) and shall at all times use commercially reasonable efforts to enforce, with respect to each other party to said agreements, all material obligations, covenants and agreements by such other party to be performed thereunder.

2.8     Maintenance of Premises.  The Grantor will abstain from and will not permit the commission of any material physical waste in or about the Premises and will maintain, or cause to be maintained, the Premises in reasonable condition and repair, ordinary wear and tear and casualty and obsolescence excepted.

2.9     Insurance.

(a)     Types Required. The Grantor shall maintain insurance for the Premises as set forth in Section 5.8 of the Credit Agreement. Notwithstanding any other provision in this Deed of Trust or the Credit Agreement to the contrary, to the extent any building located on the real property that is subject to this Deed of Trust contains personal property owned by the Grantor, Agent disclaims any security interest created under this Deed of Trust in such personal property if (i) such personal property is required to be insured pursuant to any existing or future Federal statute, regulation, policy or guideline related to flood insurance (collectively, the "Flood Laws") and (ii) such personal property is not covered by flood insurance to the extent required by the Flood Laws.

(b)     Use of Proceeds. The Grantor assigns to the Agent any proceeds which may become due by reason of any material loss, damage to or destruction of the Premises to which the Grantor is entitled. All insurance proceeds shall be used and applied in the manner set forth in Section 5.8 of the Credit Agreement.

2.10     Eminent Domain. Subject to the provisions of the Credit Agreement, the Grantor assigns to the Agent any proceeds or awards which may become due by reason of any condemnation or other taking for public use of the whole or any part of the Premises or any rights appurtenant thereto to which the Grantor is entitled, and such proceeds or awards shall be applied in the same manner the insurance proceeds are applied as set forth in the Credit Agreement. If such proceeds exceed the balance due under Credit Agreement and the other Loan Documents, any such excess shall be repaid to the Grantor. The Grantor agrees to execute such further assignments and agreements as may be reasonably required by the Agent to assure the effectiveness of this Section. In the event any Governmental Authority shall require or commence any proceedings for the demolition of any buildings or structures comprising a part of the Premises, or shall commence any proceedings to condemn or otherwise take pursuant to the power of eminent domain a material portion of the Premises, the Grantor shall promptly notify the Agent of such requirements or commencement of proceeding (for demolition, condemnation or other taking).

2.11     Releases and Waivers. The Grantor agrees that no release by the Agent of any portion of the Premises, the Rents and Profits or the Intangible Personalty, no subordination of lien, no forbearance on the part of the Agent to collect on any Loans, or any part thereof, no waiver of any right granted or remedy available to the Agent and no action taken or not taken by the Agent shall, except to the extent expressly released, in any way have the effect of releasing the Grantor from full responsibility to the Agent for the complete discharge of each and every of the Grantor's obligations hereunder.

6

CHAR2\2313747v4

2.12    Transfer of Premises.    Any sale, transfer, conveyance, mortgage, encumbrance or other disposition of the Premises, the Rents and Profits or the Intangible Personalty or any part thereof or any interest therein, or any subordinate financing with respect thereto, during the term of this Deed of Trust may be made only in accordance with the terms and conditions of the Credit Agreement.

2.13    Compliance with Law.    The Grantor will comply with all applicable statutes, regulations and orders of, and all applicable restrictions imposed by, all governmental authorities in respect of the ownership of the Premises (including applicable statutes, regulations, orders and restrictions relating to environmental standards and controls) to the extent required by the Credit Agreement.

2.14    Inspection.    Subject to the terms of the Credit Agreement, the Grantor will permit the Agent, or its agents, at all reasonable times and with advance prior notice to enter and pass through or over the Premises for the purpose of inspecting same; provided, however, so long as no Event of Default has occurred and is continuing, inspections shall be at reasonable times during the Grantor's normal business hours.

2.15    Security Agreement.

(a)    This Deed of Trust is hereby made and declared to be a security agreement, encumbering each and every item of Fixtures and Tangible Personalty. In furtherance thereof, in order to secure the payment of the Secured Obligations, Grantor hereby grants to Agent, for the benefit of the Lenders, a security interest in all of Grantor's right, title and interest in all Fixtures and Tangible Personalty in compliance with the provisions of the UCC. A financing statement or statements reciting this Deed of Trust to be a security agreement, affecting all of said Fixtures and Tangible Personalty, shall be appropriately filed by Agent. Grantor hereby authorizes the Agent to file financing statements in any jurisdiction and with any filing office that the Agent may determine, in its sole discretion, is necessary or advisable to perfect the security interests granted herein. Such financing statements may describe or indicate the collateral to the extent a security interest therein is granted hereby, including without limitation the description "All goods of the debtor that are or are to become fixtures located on the Land, whether now owned or hereafter acquired by Debtor and whether now or hereafter located on the Land" or words of similar import. To the extent permitted by applicable law, the remedies for any violation of the covenants, terms and condition of the security agreement herein contained shall be (i) as prescribed herein or (ii) as prescribed by general law or (iii) as prescribed by the specific statutory consequences now or hereafter enacted and specified under the UCC, all at Agent's sole election. The Grantor and the Agent agree that the filing of such financing statement(s) in the records normally having to do with personal property shall never be construed as in anywise derogating from or impairing this declaration and hereby stated intention of the Grantor and the Agent that everything used in connection with the production of income from the Premises or adapted for use therein or which is described or reflected in this Deed of Trust is, and at all times and for all purposes and in all proceedings both legal or equitable shall be, regarded as part of the real estate irrespective of whether (a) any such item is physically attached to the improvements, (b) serial numbers are used for the better identification of certain items capable of being thus identified in a recital contained herein, or (c) any such item is referred to or reflected in any such financing statement(s) so filed at any time. Similarly, the mention in any such financing statement(s) of the rights in and to (aa) the proceeds of any fire or hazard insurance policy or (bb) any award in eminent domain proceedings for a taking or for loss of value or (cc) the Grantor's interest as lessor in any present or future lease or rights to income growing out of the use or occupancy of the Premises, whether pursuant to lease or otherwise, shall never be construed as in anywise altering any of the rights of the Grantor or the Agent as determined by this instrument or impugning the priority of the Agent's lien granted hereby or by any other recorded document, but such mention in such financing statement(s) is declared to be for the protection of the Agent in the event any court shall at any time hold

7

with respect to the foregoing (aa) or (bb) or (cc), that notice of the Agent's priority of interest to be effective against a particular class of persons, must be filed in the UCC records, provided, if there is a conflict between the terms of this paragraph and the terms of the Credit Agreement, the Credit Agreement shall govern.

(b)     The Grantor warrants that the name and address of the "Debtor" (which is the Grantor) are as set forth in Section 6.2 hereof and a statement indicating the types, or describing the items, of collateral is set forth hereinabove.  Grantor warrants that Grantor's exact legal name is correctly set forth in the preamble of this Deed of Trust.  The Grantor agrees to furnish the Agent with notice of any change in the name, identity, state of organization, residence, principal place of business or mailing address of the Grantor within twenty (20) days of the effective date of any such change and the Grantor will promptly take any action reasonably deemed necessary by the Agent to prevent any filed financing statement from becoming misleading or losing its perfected status.

## ARTICLE III

### Event of Default

An Event of Default shall exist under the terms of this Deed of Trust upon the existence of an Event of Default under the terms of the Credit Agreement.

## ARTICLE IV

### Acceleration; Foreclosure

4.1     Acceleration of Secured Obligations; Foreclosure.  Upon the occurrence and during the continuance of an Event of Default after expiration of all applicable cure periods, the entire balance of the Secured Obligations and any other obligations due under the Loan Documents, including all accrued interest, shall, at the option of the Agent, become immediately due and payable.  Upon failure to pay the Secured Obligations or reimburse any other amounts due under the Loan Documents in full at any stated or accelerated maturity and in addition to all other remedies available to the Agent at law or in equity, the Agent may do any of the following:

(a)     Give such notice of default and of election to cause the Premises (together with the Rents and Profits, Intangible Property and all other property subject to this Deed of Trust) to be sold as may be required by law or as may be necessary to cause the Trustee to exercise the power of sale granted herein.  The Trustee shall then record and give such notice of trustee's sale as then required by law and, after the expiration of such time as may be required by law, may sell the property subject to this Deed of Trust at the time and place specified in the notice of sale, as a whole or in separate parcels as directed by the Agent, or by the Grantor to the extent required by law, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale, all in accordance with applicable law.  The Trustee, from time to time, may postpone or continue the sale of all or any portion of the property subject to this Deed of Trust by public declaration at the time and place last appointed for the sale.  No other notice of the postponed sale shall be required except as required by applicable law.  Upon any sale, the Trustee shall deliver its deed conveying the property sold, without any covenant or warranty, express or implied, to the purchaser or purchasers at the sale.  The recitals in such deed of any matters or facts shall be conclusive as to the accuracy thereof.  Any person, including the Grantor, the Trustee, Agent or any Lender, may purchase at the sale.

(b)     Commence proceedings for foreclosure of this Deed of Trust in the manner provided by law for the foreclosure of a real property mortgage or deed of trust.

8

4.2     Proceeds of Sale. The proceeds of any foreclosure sale of the Premises, or any part thereof, will be distributed and applied in accordance with the terms and conditions of the Credit Agreement (subject to any applicable provisions of applicable law).

4.3     Trustee's Fees. If a foreclosure proceeding is commenced by the Trustee but terminated prior to its completion, the Trustee shall be entitled to a reasonable fee in accordance with applicable law.

## ARTICLE V

## Additional Rights and Remedies of Agent

5.1     Rights Upon an Event of Default. Upon the occurrence and during the continuance of an Event of Default after expiration of all applicable cure periods, the Agent, immediately and without additional notice and without liability therefor to the Grantor, except for gross negligence, willful misconduct or unlawful conduct, may do or cause to be done any or all of the following to the extent permitted by applicable law: (a) exercise its right to collect the Rents and Profits; (b) enter into contracts for the completion, repair and maintenance of the Improvements thereon; (c) expend Loan funds and any rents, income and profits derived from the Premises for the payment of any taxes, insurance premiums, assessments and charges for completion, repair and maintenance of the Improvements, preservation of the lien of this Deed of Trust and satisfaction and fulfillment of any liabilities or obligations of the Grantor arising out of or in any way connected with the Premises whether or not such liabilities and obligations in any way affect, or may affect, the lien of this Deed of Trust; (d) take such steps to protect and enforce the specific performance of any covenant, condition or agreement in this Deed of Trust, the Credit Agreement or the other Loan Documents, or to aid the execution of any power herein granted; and (e) generally, supervise, manage, and contract with reference to the Premises as if the Agent were equitable owner of the Premises. Notwithstanding the occurrence of an Event of Default or acceleration of any Loans, the Agent shall continue to have the right to pay money, whether or not Loan funds, for the purposes described in Sections 2.2, 2.6 and 2.8 hereof, and all such sums and interest thereon shall be secured hereby. The Grantor also agrees that any of the foregoing rights and remedies of the Agent may be exercised at any time during the continuance of an Event of Default independently of the exercise of any other such rights and remedies, and the Agent may continue to exercise any or all such rights and remedies until the Event(s) of Default are cured, until foreclosure and the conveyance of the Premises to the high bidder or until the Credit Agreement is no longer in effect or the Secured Obligations is otherwise satisfied or paid in full.

5.2     Appointment of Receiver. Upon the occurrence and during the continuance of an Event of Default after expiration of all applicable cure periods, the Agent shall be entitled, without additional notice and without regard to the adequacy of any security for the Secured Obligations secured hereby, whether the same shall then be occupied as a homestead or not, or the solvency of any party bound for its payment, to make application for the appointment of a receiver to take possession of and to operate the Premises, and to collect the rents, issues, profits, and income thereof, all expenses of which shall be added to the Secured Obligations and secured hereby. The receiver shall have all the rights and powers provided for under the laws of the state in which the Premises are located, including without limitation, the power to execute leases, and the power to collect the rents, sales proceeds, issues, profits and proceeds of the Premises during the pendency of such foreclosure suit, as well as during any further times when the Grantor, its successors or assigns, except for the intervention of such receiver, would be entitled to collect such rents, sales proceeds, issues, proceeds and profits, and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Premises during the whole of said period. All costs and expenses (including receiver's fees, reasonable attorneys'

9

fees and costs incurred in connection with the appointment of a receiver) shall be secured by this Deed of Trust. Notwithstanding the appointment of any receiver, trustee or other custodian, the Agent shall be entitled to retain possession and control of any cash or other instruments at the time held by or payable or deliverable under the terms of the Deed of Trust to the Agent to the fullest extent permitted by law.

5.3     Waivers. No waiver of any Event of Default shall at any time thereafter be held to be a waiver of any rights of the Agent stated anywhere in this Deed of Trust, the Credit Agreement or any of the other Loan Documents, nor shall any waiver of a prior Event of Default operate to waive any subsequent Event(s) of Default. All remedies provided in this Deed of Trust, the Credit Agreement or any of the other Loan Documents are cumulative and may, at the election of the Agent, be exercised alternatively, successively, or in any manner and are in addition to any other rights provided by law.

5.4     Delivery of Possession After Foreclosure.     In the event there is a foreclosure sale hereunder and at the time of such sale, the Grantor or the Grantor's heirs, devises, representatives, successors or assigns are occupying or using the Premises, or any part thereof, each and all immediately shall become the tenant of the purchaser at such sale, which tenancy shall be a tenancy from day to day, terminable at the will of either landlord or tenant, at a reasonable rental per day based upon the value of the property occupied, such rental to be due daily to the purchaser; and to the extent permitted by applicable law, the purchaser at such sale, notwithstanding any language herein apparently to the contrary, shall have the sole option to demand possession immediately following the sale or to permit the occupants to remain as tenants at will. In the event the tenant fails to surrender possession of said property upon demand, the purchaser shall be entitled to institute and maintain a summary action for possession of the property (such as an action for forcible detainer) in any court having jurisdiction.

5.5     Marshalling.     The Grantor hereby waives, in the event of foreclosure of this Deed of Trust or the enforcement by the Agent of any other rights and remedies hereunder, any right otherwise available in respect to marshalling of assets which secure any Loans and any other indebtedness secured hereby or to require the Agent to pursue its remedies against any other such assets.

5.6     Protection of Premises.  If Grantor fails to perform the covenants and agreements contained in this Deed of Trust, the Credit Agreement or any of the other Loan Documents, and such failure continues beyond any applicable grace, notice and cure periods, except in the case of an emergency in which event Agent may act immediately, then Agent may take such actions, including, but not limited to, disbursements of such sums, as Agent in its sole but reasonable discretion deems necessary to protect Agent's interest in the Premises.

## ARTICLE VI

### General Conditions

6.1     Substitution of Trustee.  If, for any reason, the Agent shall  elect to substitute for the Trustee herein named (or for any successor to said Trustee), the Agent shall have the right to  appoint successor Trustee(s) by duly acknowledged written instruments, and each new Trustee immediately upon recordation of the instrument so appointing him shall become successor in title to the Premises for the uses and purposes of this Deed of Trust, with all the powers, duties and obligations conferred on the Trustee in the same manner and to the same effect as though he were named herein as the Trustee. If more than one Trustee has been appointed, each of such Trustees and each successor thereto shall be and hereby is empowered to act independently.

10

CHAR2\2313747v4

6.2     Terms.  The singular used herein shall be deemed to include the plural; the masculine deemed to include the feminine and neuter; and the named parties deemed to include their heirs, successors and assigns.  The term "Agent" shall include any of the Persons identified as a "Agent" on the signature pages to the Credit Agreement, and any Person which may become a Agent by way of assignment in accordance with the terms of the Credit Agreement, together with their successors and permitted assigns.  Capitalized terms used herein and not otherwise defined shall have the respective meanings ascribed to such terms in the Credit Agreement.

6.3     Notices.  All notices and other communications required or permitted to be given hereunder shall have been duly given in accordance with the requirement of the Credit Agreement.

6.4     Severability.  If any provision of this Deed of Trust is determined to be illegal, invalid or unenforceable, such provision shall be fully severable and the remaining provisions shall remain in full force and effect and shall be construed without giving effect to the illegal, invalid or unenforceable provisions.

6.5     Headings.  The captions and headings herein are inserted only as a matter of convenience and for reference and in no way define, limit, or describe the scope of this Deed of Trust nor the intent of any provision hereof.  The Recitals set forth above are incorporated herein.

6.6     Conflicting Terms.  In the event the terms and conditions of this Deed of Trust conflict with the terms and conditions of the Credit Agreement, the terms and conditions of the Credit Agreement shall control and supersede the provisions of this Deed of Trust with respect to such conflicts.

6.7     Governing Law.  This Deed of Trust shall be governed by and construed in accordance with the internal law of the state where the Premises is located.

6.8     Application of the Foreclosure Law.  If any provision in this Deed of Trust shall be inconsistent with any provision of the foreclosure laws of the state where the Premises is located, the provisions of such laws shall take precedence over the provisions of this Deed of Trust, but shall not invalidate or render unenforceable any other provision of this Deed of Trust that can be construed in a manner consistent with such laws.

6.9     WRITTEN AGREEMENT.

(a)     THE RIGHTS AND OBLIGATIONS OF THE GRANTOR AND THE AGENT SHALL BE DETERMINED SOLELY FROM THIS WRITTEN DEED OF TRUST AND THE OTHER LOAN DOCUMENTS, AND ANY PRIOR ORAL OR WRITTEN AGREEMENTS BETWEEN THE AGENT AND THE GRANTOR CONCERNING THE SUBJECT MATTER HEREOF AND OF THE OTHER LOAN DOCUMENTS ARE SUPERSEDED BY AND MERGED INTO THIS DEED OF TRUST AND THE OTHER LOAN DOCUMENTS.

(b)     THIS DEED OF TRUST MAY NOT BE VARIED BY ANY ORAL AGREEMENTS OR DISCUSSIONS THAT OCCUR BEFORE, CONTEMPORANEOUSLY WITH, OR SUBSEQUENT TO THE EXECUTION OF THIS DEED OF TRUST OR THE OTHER LOAN DOCUMENTS.

(c)     THIS WRITTEN DEED OF TRUST AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENTS BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

11

6.10    WAIVER OF JURY TRIAL.  THE AGENT AND THE GRANTOR HEREBY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS DEED OF TRUST.  THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY THE AGENT AND THE GRANTOR, AND THE AGENT AND THE GRANTOR ACKNOWLEDGE THAT NO PERSON ACTING ON BEHALF OF ANOTHER PARTY TO THIS AGREEMENT HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THE AGENT AND THE GRANTOR FURTHER ACKNOWLEDGE THAT THEY HAVE BEEN REPRESENTED (OR HAVE HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS DEED OF TRUST AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF THEIR OWN FREE WILL, AND THAT THEY HAVE HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

6.11    State Specific Provisions.  In the event of any inconsistencies between this Section and any of the other terms and provisions of this Deed of Trust, the terms and provisions of this Section shall control and be binding.

(a)    Without limiting any of the rights, benefits and remedies otherwise conferred upon Agent and/or Trustee in this Deed of Trust, Agent and Trustee shall have all of the rights, benefits and remedies conferred under the laws of the State of Arizona with respect to the property encumbered by this Deed of Trust, including, without limitation, those provided under Arizona Revised Statutes ("A.R.S."), §§ 33-801 et. seq. and 33-702B.

(b)    Grantor agrees to an effective rate of interest equal to the rate stated herein and in the documents evidencing the Secured Obligations plus any additional rate, if any, resulting from any charge or fee in the nature of interest paid or to be paid by Grantor or Borrower in connection with the Secured Obligations, or any benefit received or to be received by Agent or Trustee in connection with the Secured Obligations.

(c)    If for any reason this Deed of Trust shall be ineffective as a deed of trust, it shall be construed as a realty mortgage with Grantor being the mortgagor and Agent being the mortgagee.

(d)    Any party that has signed this Deed of Trust as a surety or accommodation party, or that has subjected its property to this Deed of Trust to secure the Secured Obligations of another hereby expressly waives the benefits of any statutory provision limiting the liability of a surety, including without limitation, the provisions of A.R.S. §§ 12-1641, et seq. and Rule 17(f) of the Arizona Rules of Civil Procedures, and any defense arising by reason of any disability or other defense of Borrower or by reason of the cessation from any cause whatsoever of the liability of Borrower.

(e)    Without obtaining the prior written consent of Agent, Grantor shall not consent to, or vote in favor of, the inclusion of all or any part of the Premises in any Community Facilities District formed pursuant to the Community Facilities District Act, A.R.S. § 48-701, et seq., as amended from time to time.  Grantor shall immediately give notice to Agent of any notification or advice that Grantor may receive from any municipality or other third party of any intent or proposal to include all or any part of the Premises in a Community Facilities District.  Agent shall have the right to file a written objection to the inclusion of all or any part of the Premises in a Community Facilities District, either in its own name or in the name of Grantor, and to appear at, and participate in, any hearing with respect to the formation of any such district.

CHAR2\2313747v4

(f)      This Deed of Trust constitutes a financing statement filed as a fixture filing under A.R.S. § 47-9502.C, or any successor or similar statute, covering any property which now is or later may become fixtures attached to the Premises.

PROVIDED ALWAYS, and it is the true intent and meaning of the Grantor and the Agent, that if the Secured Obligations shall be fully and finally paid and discharged according to the terms of the Credit Agreement, this Deed of Trust and the other Loan Documents and all Commitments are terminated, then this Deed of Trust shall cease and be void, otherwise it shall remain in full force and virtue.

[Page Ends Here; Signatures to Follow]

13

CHAR2\2313747v4

IN WITNESS WHEREOF, the Grantor has executed and delivered this Deed of Trust under seal as of the above written date.

> JHO REAL ESTATE INVESTMENT, LLC,
> a Florida limited liability company,
>
> By: _____ (SEAL)
> John H. Owoc, Manager

STATE OF FLORIDA

COUNTY OF BROWARD

The foregoing instrument was acknowledged before me this $\underline{4}$ day of December 2020, by John H. Owoc, as Manager of JHO REAL ESTATE INVESTMENT, LLC, a Florida limited liability company, on behalf of said limited liability company.

> PATRICIA MARIE ARIAS
> Notary Public – State of Florida
> Commission # GG 180248
> My Comm. Expires Jan 29. 2022
> Bonded through National Notary Assn

Notary Public _____

My Commission Expires: $\underline{01}$ | $\underline{29}$ | $\underline{2022}$

[Affix Seal]

CHAR2\2313747v3

**TRUIST BANK,**
as Administrative Agent

By: _____

Name: _____KEITH ARNOLD_____

Title: _____SVP_____

STATE OF _Florida_

COUNTY OF _Broward_

The foregoing instrument was acknowledged before me this _17_ day of November, 2020, by _Keith Arnold_, as _SVP_ of Truist Bank, a North Carolina banking corporation on behalf of said banking corporation.

_____
Notary Public

My Commission Expires:

CAMILLE P. LALL
Notary Public - State of Florida
Commission # GG 063665
My Comm. Expires Feb 13, 2021
Bonded through National Notary Assn.

[Affix Seal]

**[Signature Page to Amended and Restated Arizona Deed of Trust]**

## EXHIBIT A

### Legal Description

That portion of the Northwest quarter of Section 15, Township 1 North, Range 2 East of the Gila and Salt River Meridian, Maricopa County, Arizona, described as follows:

Beginning at the Northwest corner of the North half of the Southwest quarter of said Northwest quarter;

Thence South (assumed bearing for purposes of this description) along the West line of said section, a distance of 660.00 feet to a line that is parallel with and distant 1968.46 feet Southerly measured at right angles from the North line of said section;

Thence South 89 degrees 50 minutes East, along said parallel line, a distance of 1307.28 feet to a line that is parallel with and distant 10.00 feet Westerly, measured at right angle, from the East line of said Southwest quarter, last said parallel line being also the center line of an existing drill track;

Thence North 00 degrees 01 minutes West, along last said parallel line, a distance of 1095.68 feet to a point of CUSP;

Thence Southwesterly along a tangent curve concave Northwesterly having a radius of 642.43 feet, through a central angle of 05 degrees 43 minutes 29 seconds, an arc distance of 64.19 feet;

Thence South 05 degrees 42 minutes 29 seconds West, tangent to said curve, a distance 26.38 feet;

Thence Southwesterly and Westerly along a tangent curve to the right having a radius 382.24 feet, through a central angle of 84 degrees 27 minutes 31 seconds, an arc distance of 563.45 feet to a point of tangency in a line that is parallel with and distant 1308.46 feet Southerly, measured at right angles, from said North line;

Thence North 89 degrees 50 minutes West, along last said parallel line, a distance of 919.70 feet to the point of beginning.

EXCEPTING THEREFROM that portion of said property lying below a depth of 500.00 feet measured vertically from the contour of the surface thereof;

Provided, however, that said grantor, its successors and assigns, shall not have the right for any and all purposes to enter upon, into or through the surface of the portion of said property lying above 500.00 feet, measured vertically from the contour of the surface of said property, as reserved in Deed recorded in Docket 9581, Page 180 and also recorded in Docket 9590, Page 873; and

EXCEPT all rights retained by Southern Pacific Company, a Delaware corporation in Warranty Deed recorded in Docket 3976, Page 407 of official records of Maricopa County, Arizona.

CHAR2\2313747v3