**DEBTORS EXHIBIT 55**

*Execution Copy*

# OWNER PLEDGE AGREEMENT

This OWNER PLEDGE AGREEMENT (this "*Agreement*") is entered into as of August 14, 2020, by and among the party identified as an "Obligor" on the signature pages hereto and such other parties that may become Obligors hereunder after the date hereof (each individually, an "*Obligor*"; and collectively, the "*Obligors*"), and TRUIST BANK, in its capacity as administrative agent (in such capacity, together with any successors and assigns in such capacity, the "*Administrative Agent*") for the holders of the Secured Obligations (as defined below).

## RECITALS

WHEREAS, pursuant to that certain Amended and Restated Revolving Credit and Term Loan Agreement, dated as of the date hereof, by and among Vital Pharmaceuticals, Inc., a Florida corporation, as the Borrower, the Guarantors from time to time party thereto, the Lenders from time to time party thereto, and TRUIST BANK, in its capacities as Administrative Agent, Swingline Lender, and Issuing Bank (as amended, restated, amended and restated, supplemented, increased, extended, refinanced, renewed, replaced, and/or otherwise modified in writing from time to time, the "*Credit Agreement*"), the Lenders have agreed to make Loans, and the Issuing Bank has agreed to issue Letters of Credit, in each case, upon the terms and subject to the conditions set forth therein; and

WHEREAS, this Agreement is required by the terms of the Credit Agreement.

NOW, THEREFORE, in consideration of these premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## AGREEMENT

1. <u>Definitions</u>.

(a) Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to such terms in the Credit Agreement, <u>provided</u>, <u>that</u>, the following terms shall have the meanings ascribed to such terms in accordance with the version of the Uniform Commercial Code enacted, and as in effect from time to time, in the State of New York, except to the extent that such terms may be used in connection with the perfection of any Collateral, in which case, such terms shall instead have the meanings ascribed to such terms in accordance with the version of the Uniform Commercial Code enacted, and as in effect from time to time, in the applicable jurisdiction with respect to such affected Collateral (the "*UCC*"): "*Adverse Claim*", "*Financial Asset*", "*Investment Company Security*", "*Money*", "*Proceeds*", "*Securities Account*", "*Securities Intermediary*", and "*Security*".

(b) In addition, the following terms shall have the meanings set forth below:

"*Administrative Agent*" has the meaning provided in the introductory paragraph hereof.

"*Agreement*" has the meaning provided in the introductory paragraph hereof.

"*Collateral*" has the meaning provided in <u>Section 2</u> hereof.

"*Credit Agreement*" has the meaning provided in the recitals hereof.

"*Obligor*" and "*Obligors*" have the meanings provided in the introductory paragraph hereof.

Owner Pledge Agreement (Vital Pharmaceuticals, Inc.)

CONFIDENTIAL                                                                                                                                           VPX-UCC0000101569

"*Pledged Equity*" shall mean, with respect to each Obligor, one hundred percent (100.0%) of the issued and outstanding Capital Stock held by such Obligor in each Loan Party and Subsidiary (other than any Excluded Property), including, without limitation, the Capital Stock in each Loan Party and Subsidiary that is owned by any Obligor as set forth on Schedule 1 hereto, together with the certificates (or other agreements or instruments), if any, representing such Capital Stock, and all options and other rights, contractual or otherwise, with respect thereto, including, without limitation, the following:

>   (A)    all Capital Stock representing a dividend thereon, representing a distribution or return of capital upon or in respect thereof, or resulting from a stock split, revision, reclassification or other exchange therefor, and any subscriptions, warrants, rights or options issued to the holder thereof, or otherwise issued in respect thereof; and

>   (B)    in the event of any consolidation or merger involving the issuer thereof and, as a result of which, such issuer is *not* the surviving Person, all shares of each class of the Capital Stock of the successor Person formed by, or resulting from, such consolidation or merger, to the extent that any such Capital Stock is owned by any Obligor.

"*Secured Obligations*" shall mean, without duplication: (a) all Obligations; and (b) all costs and expenses incurred in connection with enforcement and collection of the Obligations pursuant to the terms of the Loan Documents and/or applicable Laws, including, without limitation, any fees, charges and disbursements of counsel.

"*Securities Act*" shall mean the Securities Act of 1933 (15 U.S.C. §–77a *et seq.*), as amended and in effect from time to time, and any successor statute(s), together with any rules and regulations promulgated thereunder or in connection therewith, any rulings or orders issued by any applicable Governmental Authorities (including, without limitation, the SEC) thereunder or in connection therewith, or the application or official interpretation of any of the foregoing.

"*UCC*" has the meaning provided in Section 1(a) hereof.

2.   Grant of Security Interest in the Collateral. To secure the prompt payment and performance in full when due, whether by lapse of time, acceleration, mandatory prepayment or otherwise, of the Secured Obligations, each Obligor hereby grants to the Administrative Agent, for the benefit of the holders of the Secured Obligations, a continuing security interest in, and a right to set off against, any and all right, title, and interest of such Obligor in and to all of the following, whether now owned or existing, or owned, acquired or arising hereafter (collectively, the "*Collateral*"): (a) (i) all Pledged Equity, (ii) all books and records relating to the Collateral; and (b) all Proceeds of any and all of the foregoing.

Notwithstanding anything to the contrary contained herein, the security interests granted under this Agreement shall not extend to, and the term "Collateral" shall *not* include, any Excluded Property; provided, that, upon the occurrence of an event or events that result in any such property no longer constituting Excluded Property, a security interest in such property shall be automatically and simultaneously granted hereunder, and such property shall be included as Collateral hereunder.

The Obligors and the Administrative Agent, on behalf of the holders of the Secured Obligations, hereby acknowledge and agree that the security interest created pursuant to this Agreement in the Collateral constitutes continuing collateral security for all of the Secured Obligations, whether now existing or hereafter arising.

3.   Representations and Warranties. Each of the Obligors hereby represents and warrants to the Administrative Agent, for the benefit of the holders of the Secured Obligations, that:

>   (a)    Ownership. Such Obligor is the legal and beneficial owner of its Collateral and has the right to pledge, sell, assign, or transfer the same. There exists no Adverse Claim with respect to the Pledged Equity of such Obligor.

CONFIDENTIAL   VPX-UCC0000101570

(b) <u>Security Interest / Priority</u>. This Agreement creates a valid security interest in favor of the Administrative Agent, for the benefit of the holders of the Secured Obligations, in the Collateral of such Obligor, and, when properly perfected by filing, shall constitute a valid and perfected, first priority security interest in such Collateral (including, without limitation, all uncertificated Pledged Equity consisting of partnership or limited liability company interests that do not constitute Securities), to the extent that such security interest can be perfected by filing under the UCC, free and clear of all Liens except for Liens permitted by Section 7.2 of the Credit Agreement. The taking of possession by the Administrative Agent of the Certificated Securities (if any) evidencing the Pledged Equity, will perfect, and establish the first priority of, the Administrative Agent's security interest in all of the Pledged Equity evidenced by any such Certificated Securities.

(c) <u>Authorization of Pledged Equity</u>. All Pledged Equity is duly authorized and validly issued, is fully paid and, to the extent applicable, non-assessable, and is not subject to the preemptive rights, warrants, options, or other rights to purchase of any Person, or of any equity-holder, voting trust or similar agreements outstanding with respect to, or with respect to property that is convertible into, or that require the issuance and sale of, any such Pledged Equity, in each case, except to the extent expressly permitted under the Loan Documents.

(d) <u>No Other Capital Stock, Instruments, Etc</u>. As of the Effective Date, such Obligor owns all of the certificated Capital Stock in each Loan Party and Subsidiary that is required to be pledged and delivered by it to the Administrative Agent hereunder, as set forth on <u>Schedule 1</u> hereto, and all such certificated Capital Stock has been delivered to the Administrative Agent.

(e) <u>Partnership and Limited Liability Company Interests</u>. None of the Collateral consisting of an interest or interests in a partnership or a limited liability company: (i) is dealt in, or traded on, a securities exchange, or dealt in a securities market; (ii) by its terms, expressly provides that such interest is a Security governed by Article 8 of the UCC; (iii) is an Investment Company Security; (iv) is held in a Securities Account; or (v) constitutes a Security or a Financial Asset.

(f) <u>Consents; Etc</u>. There are no restrictions in any Organization Document or any other contract or agreement of any Obligor governing any Pledged Equity, or any other document related thereto, which would limit or restrict: (i) the granting of a Lien pursuant to this Agreement on such Pledged Equity; (ii) the perfection of such Lien; or (iii) the exercise of remedies in respect of such perfected Lien on such Pledged Equity, as contemplated by this Agreement. Except for (I) the filing or recording of UCC financing statements, (II) obtaining control of Collateral to perfect the Liens created, or purported to be created, by this Agreement (to the extent required under <u>Section 4(a)</u> hereof), (III) such actions as may be required by Laws affecting the offering and sale of securities, (IV) such actions as may be required by applicable foreign Laws affecting the pledge of the Pledged Equity of Foreign Subsidiaries (if any), and (V) consents, authorizations, filings or other actions which have been obtained or made, no consent or authorization of, filing with, or other act by or in respect of, any arbitrator or Governmental Authority, and no consent of any other Person (including, without limitation, any stockholder, member, or creditor of such Obligor, as applicable), is required that has not been obtained for: (A) the grant by such Obligor of the Lien pursuant to this Agreement on the Pledged Equity or any other security interest in the Collateral granted by this Agreement, or the execution and delivery of, and performance under, this Agreement by such Obligor; (B) the perfection of such security interest (to the extent that such security interest can be perfected by (I) filing under the UCC, or (II) the granting of control of Collateral (to the extent required under <u>Section 4(a)</u> hereof)); or (C) the exercise by the Administrative Agent, or any of the holder(s) of the Secured Obligations, of the rights and remedies provided for in this Agreement.

4. <u>Covenants</u>. Each Obligor covenants that, until such time as the Secured Obligations arising under the Loan Documents have been paid in full and the Commitments have expired or been terminated, such Obligor shall:

3

(a) <u>Pledged Equity</u>. Deliver to the Administrative Agent promptly (and, in any event, within thirty (30) calendar days of such receipt), upon the receipt thereof by, or on behalf of, such Obligor, all certificates and instruments constituting Pledged Equity. Prior to such delivery to the Administrative Agent, all such certificates constituting Pledged Equity shall be held in trust by such Obligor for the benefit of the Administrative Agent and the other holder(s) of the Secured Obligations pursuant hereto. All such certificates representing Pledged Equity shall be delivered in suitable form for transfer by delivery, or shall be accompanied by duly executed instruments of transfer, or assignment in blank, substantially in the form provided in <u>Exhibit 4(a)</u> hereto (or such other form acceptable to the Administrative Agent in its reasonable discretion).

(b) <u>Filing of Financing Statements, Notices, Etc</u>. Execute and deliver to the Administrative Agent such agreements, assignments, or instruments (including, without limitation, affidavits, notices, reaffirmations, and amendments and restatements of existing documents) as the Administrative Agent may reasonably request, and do all such other things as the Administrative Agent may reasonably deem necessary or appropriate: (i) to provide adequate assurance to the Administrative Agent regarding the proper filing, maintenance and perfection of the security interests created, or purported to be created, hereunder, including, without limitation, such instruments as the Administrative Agent may from time to time reasonably request, in order to perfect and maintain the security interests granted hereunder in accordance with the UCC or otherwise in compliance with the requirements of the applicable Law of the relevant jurisdiction; (ii) to consummate the transactions contemplated hereby; and (iii) to otherwise protect, and assure the Administrative Agent of, its rights and interests hereunder.

Furthermore, such Obligor also hereby irrevocably makes, constitutes, and appoints the Administrative Agent, a nominee of the Administrative Agent, or any other person whom the Administrative Agent may so designate, as such Obligor's attorney in fact, with full power with respect to, and for the limited purpose of, preparing and filing (and, to the extent applicable, signing), in the name of such Obligor, any financing statements, any amendments and/or supplements to financing statements, any renewal financing statements, and any notices and/or similar documents, which, in the Administrative Agent's reasonable discretion, would be necessary or appropriate in order to perfect, or to maintain the perfection of, the security interests granted hereunder, such power, being coupled with an interest, being and remaining irrevocable until such time as the Secured Obligations arising under the Loan Documents have been paid in full and the Commitments have expired or been terminated. Such Obligor hereby agrees that a carbon, photographic or other reproduction of this Agreement, or of any such financing statement (or amendment thereof or supplement thereto), shall be sufficient for filing as a financing statement (or amendment thereof or supplement thereto) by the Administrative Agent, without notice thereof to such Obligor, wherever the Administrative Agent may in its sole discretion desire to file the same.

(c) <u>Books and Records</u>. Mark its books and records (and cause the issuer(s) of any Pledged Equity of such Obligor to mark its books and records) to reflect the security interest granted pursuant to this Agreement.

(d) <u>Issuance or Acquisition of Capital Stock in Partnership or Limited Liability Company</u>. Not without executing and delivering, or causing to be executed and delivered, to the Administrative Agent such agreements, documents and instruments as the Administrative Agent may reasonably require to be executed and delivered in connection therewith, issue or acquire any Pledged Equity consisting of an interest in a partnership or a limited liability company that: (i) is dealt in, or traded on, a securities exchange, or dealt in a securities market; (ii) by its terms, expressly provides that such interest is a Security governed by Article 8 of the UCC; (iii) is an Investment Company Security; (iv) is held in a Securities Account; or (v) constitutes a Security or a Financial Asset.

5. <u>Authorization to File Financing Statements</u>. Each Obligor hereby authorizes the Administrative Agent to prepare and file such financing statements (including, without limitation, continuation statements), amendments thereof or supplements thereto, and such other instruments as the Administrative Agent may, from time

4

to time, deem necessary or appropriate in order to perfect and maintain the security interests granted hereunder in accordance with the UCC (including, without limitation, authorization to describe the Collateral as "all personal property" and/or "all assets", in each case, "whether now owned or hereafter acquired", or words of similar meaning).

6. Advances. After the occurrence and during the continuance of an Event of Default, on failure of any Obligor to perform any of the covenants and agreements contained herein or in any other Loan Document, the Administrative Agent may, at its sole option and in its sole discretion, perform the same, and, in so doing, the Administrative Agent may expend such sums as the Administrative Agent may reasonably deem advisable in the performance thereof, including, without limitation, the payment of any taxes, payments to obtain the release of a Lien or potential Lien, expenditures made in defending against any adverse claim, and all other expenditures that the Administrative Agent may make for the protection of the security interests hereof, or which the Administrative Agent may be compelled to make by operation of Law. All such sums and amounts so expended shall be repayable by the Obligors, on a several but not joint basis, promptly upon timely notice thereof and demand therefor, shall constitute additional Secured Obligations, and shall bear interest from the date said amounts are expended as Default Interest. No such performance of any covenant or agreement by the Administrative Agent on behalf of any Obligor, and no such advance or expenditure therefor, shall relieve the Obligors of any Default or Event of Default. The Administrative Agent may make any payment hereby authorized in accordance with any bill, statement, or estimate procured from the appropriate public office or holder of a claim to be discharged, without inquiry into the accuracy of such bill, statement or estimate, or into the validity of any tax assessment, sale, forfeiture, tax lien, title or claim, except to the extent such payment is being contested in good faith by an Obligor in appropriate proceedings and against which adequate reserves are being maintained in accordance with GAAP.

7. Remedies.

(a) General Remedies. After the occurrence and during the continuance of an Event of Default, the Administrative Agent shall have, in addition to the rights and remedies provided herein, in the Loan Documents, in any other documents relating to the Secured Obligations, or as provided by Law (including, without limitation, levy of attachment, garnishment, and the rights and remedies set forth in the UCC of the jurisdiction applicable to the affected Collateral), all rights and remedies of a secured party under the UCC (regardless of whether the UCC is the law of the jurisdiction where the rights and remedies are asserted, and regardless of whether the UCC applies to the affected Collateral); and further, the Administrative Agent may, with or without judicial process and/or the aid or assistance of others, without demand and without advertisement, notice, hearing or other process of Law (provided, that, with respect to the exercise of rights and/or remedies hereunder in respect of Pledged Equity, the Administrative Agent shall provide prior or substantially contemporaneous notice to the Borrower), all of which each of the Obligors hereby waives to the fullest extent permitted by Law, at any place(s) and time(s), sell and deliver any or all Collateral held by or for it at any public or private sale (which, in the case of a private sale of Pledged Equity, may be to a restricted group of purchasers who will be obligated to agree, among other things, to acquire such securities for their own account, for investment and not with a view to the distribution or resale thereof), at any exchange or broker's board or elsewhere, by one (1) or more contracts, for Money, upon credit or otherwise, at such prices and upon such terms as the Administrative Agent deems advisable, in its sole discretion (subject to any and all mandatory legal requirements). Each Obligor acknowledges that any such private sale may be at prices and on terms less favorable to the seller than the prices and other terms that might have been obtained at a public sale, and, notwithstanding the foregoing, agrees that any such private sale shall be deemed to have been made in a commercially reasonable manner, and, in the case of a private sale of Pledged Equity, that the Administrative Agent shall have no obligation to delay any sale of any such securities for the period of time necessary to permit the issuer of such securities to register such securities for public sale under the Securities Act. Neither the Administrative Agent's compliance with applicable Law, nor its disclaimer of warranties relating to the Collateral, shall be considered to adversely affect the commercial reasonableness of any sale.

To the extent that any applicable rights of notice cannot be legally waived hereunder, each Obligor agrees that any requirement of reasonable notice shall be met if such notice, specifying the place of any such public sale or the time after which any such private sale is to be made, is personally served on, or mailed, postage prepaid, to,

5

the Obligors, in accordance with the notice provisions of Section 11.1 of the Credit Agreement (except using the relevant address for each Obligor as set forth on Schedule 7 hereto, as such schedule may be updated and/or modified from time to time in accordance with Section 11 hereof, or such other address for such Obligor as previously provided in writing to, and acknowledged in writing by, the Administrative Agent), *at least* ten (10) calendar days before the time of such sale or other event giving rise to the requirement of such notice. The Administrative Agent may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned. Each Obligor further acknowledges and agrees that any offer to sell any Pledged Equity which has been: (A) publicly advertised on a bona fide basis in a newspaper, or other publication of general circulation, in the financial community of New York, New York (to the extent that such offer may be advertised without prior registration under the Securities Act); or (B) made privately in the manner described above, shall be deemed to involve a "public sale" under the UCC notwithstanding that such sale may not constitute a "public offering" under the Securities Act, and the Administrative Agent may, in any such event, bid for the purchase of such securities. The Administrative Agent shall not be obligated to make any sale or other disposition of the Collateral, regardless of notice having been given. To the extent permitted by applicable Law, any holder of Secured Obligations may be a purchaser at any such sale. To the extent permitted by applicable Law, each of the Obligors hereby waives all of its rights of redemption with respect to any such sale. Subject to the provisions of applicable Law, the Administrative Agent may postpone, or cause the postponement of, the sale of all, or any portion, of the Collateral by announcement at the time and place of such sale, and such sale may, without further notice and to the extent permitted by applicable Law, be made at the time and place to which such sale was postponed, or the Administrative Agent may further postpone such sale by announcement made at such time and place.

(b) <u>Access</u>. In addition to the rights and remedies hereunder, upon the occurrence and during the continuance of an Event of Default, the Administrative Agent shall have the right, with prior or substantially contemporaneous notice to the Borrower, to enter into and remain upon the various premises of the Obligors where any Collateral is located, without cost or charge to the Administrative Agent, and to use the same, together with any materials, supplies, books and records of the Obligors, for the purpose of collecting and liquidating the Collateral or preparing for and conducting a sale of the Collateral, whether by foreclosure, auction or otherwise. In addition, the Administrative Agent may remove any records with respect to any Collateral from any such premises in order to effectively collect, liquidate or sell such Collateral; <u>provided</u>, <u>that</u>, in the case of any such removal, the Administrative Agent shall provide to the Obligors complete and accurate copies of any such records so removed as soon as practicable after such removal.

(c) <u>Non-Exclusive Nature of Remedies</u>. Failure by the Administrative Agent or the holders of the Secured Obligations to exercise any right, remedy or option under this Agreement, any other Loan Document, any other document relating to the Secured Obligations, or as provided by Law, or any delay by the Administrative Agent or the holders of the Secured Obligations in exercising the same, shall not operate as a waiver of any such right, remedy or option. No waiver hereunder shall be effective unless such waiver is in writing and signed by the party against whom such waiver is sought to be enforced, and in such case, such waiver shall be effective only to the extent specifically stated, and, if granted on behalf of the Administrative Agent or the holders of the Secured Obligations, such waiver shall only be granted as provided herein. To the extent permitted by applicable Law, neither the Administrative Agent, any holder(s) of the Secured Obligations, nor any party acting as attorney for the Administrative Agent or the holders of the Secured Obligations, shall be liable hereunder for any acts or omissions taken or not taken, or for any error of judgment or mistake of fact or Law, other than with respect to their gross negligence or willful misconduct hereunder. The rights and remedies of the Administrative Agent, and the holders of the Secured Obligations, under this Agreement shall be cumulative and not exclusive of any other right or remedy that the Administrative Agent, or the holders of the Secured Obligations, may have.

CONFIDENTIAL VPX-UCC0000101574

(d) <u>Retention of Collateral</u>. In addition to the rights and remedies hereunder, the Administrative Agent may, in compliance with Sections 9–620 and 9–621 of the UCC, or otherwise in compliance with the requirements of applicable Law of the relevant jurisdiction, accept or retain the Collateral in satisfaction of the Secured Obligations. Unless and until the Administrative Agent shall have provided any required notices, however, the Administrative Agent shall not be deemed to have retained any Collateral in satisfaction of any Secured Obligations for any reason.

(e) <u>Limited Recourse; Surplus Proceeds; Avoidance Limitation</u>.

(i) Notwithstanding any provision to the contrary contained herein, the liability of any Obligor hereunder to the Administrative Agent and the other holder(s) of the Secured Obligations is limited to the value of the Collateral held by such Obligor. Any surplus proceeds of any sale, liquidation or collection of, or realization on, any Collateral remaining after the full payment and satisfaction of the Secured Obligations shall be returned to the applicable Obligors, or to whomsoever a court of competent jurisdiction shall determine to be entitled thereto.

(ii) Notwithstanding any provision to the contrary contained herein, in any other Loan Documents, or in any other documents relating to the Secured Obligations, the obligations of each Obligor under the Credit Agreement and the other Loan Documents shall be limited to an aggregate amount equal to the largest amount that would not render such obligations subject to avoidance under Section 548 of the Bankruptcy Code of the United States, or under any other applicable Debtor Relief Law (including, without limitation, any comparable provisions of any applicable state Law).

8. <u>Rights of the Administrative Agent</u>.

(a) <u>Power of Attorney</u>. In addition to any other powers of attorney contained herein, each Obligor hereby designates and appoints the Administrative Agent, and each of the Administrative Agent's designees or agents, on behalf of the holders of the Secured Obligations, as the attorney-in-fact of such Obligor, irrevocably and with power of substitution, with authority to take any or all of the following actions upon the occurrence and during the continuance of an Event of Default:

(i) to demand, collect, settle, compromise, adjust, discharge, and release any claims related to the Collateral and/or the Secured Obligations, all as the Administrative Agent may reasonably determine;

(ii) to commence and prosecute any actions at any court for the purposes of collecting any Collateral and enforcing any other right(s) in respect thereof;

(iii) to defend, settle or compromise any such action brought, and, in connection therewith, to give such discharge or release as the Administrative Agent may deem reasonably appropriate;

(iv) to sell, assign, transfer, make any agreement in respect of, or otherwise deal with or exercise any rights in respect of, any Collateral, as fully and completely as though the Administrative Agent were the absolute or beneficial owner thereof for all purposes;

(v) to execute and deliver all assignments, conveyances, statements, financing statements (including, without limitation, all amendments thereof and supplements thereto), renewal financing statements, security agreements, affidavits, notices, and other agreements, instruments and documents that the Administrative Agent may determine necessary in order to perfect and maintain the security interests and liens granted in this Agreement, and in order to fully consummate all of the transactions contemplated herein;

(vi) to sign and endorse any drafts, assignments, proxies, stock powers, verifications, notices, and other documents relating to the Collateral;

CONFIDENTIAL
VPX-UCC0000101575

(vii)    to exchange any of the Pledged Equity upon any merger, consolidation, reorganization, recapitalization, or other readjustment of the issuer thereof, and, in connection therewith, deposit any of the Pledged Equity with any committee, depository, transfer agent, registrar or other designated agency, upon such terms as the Administrative Agent may reasonably deem appropriate;

(viii)    to vote for a shareholder resolution, or to sign an instrument in writing, sanctioning the transfer of any or all of the Pledged Equity into the name of the Administrative Agent or one (1) or more of the holders of the Secured Obligations, or into the name of any transferee to whom such Pledged Equity, or any part thereof, may be sold pursuant to Section 7 hereof;

(ix)    to pay or discharge taxes, liens, security interests, or other encumbrances levied or placed on, or threatened against, the Collateral;

(x)    to direct any parties liable for any payment in connection with any of the Collateral to make payment of any and all such monies due, and to become due, thereunder, directly to the Administrative Agent or as the Administrative Agent shall direct;

(xi)    to receive payment of, and receipt for, any and all monies, claims, and other amounts due and to become due at any time in respect of, or arising out of, any Collateral; and

(xii)    to do and perform all such other acts and things as the Administrative Agent may reasonably deem to be necessary, proper or convenient to accomplish the purposes of the Loan Documents.

This power of attorney is a power coupled with an interest, and shall be irrevocable until such time as the Secured Obligations arising under the Loan Documents have been paid in full and the Commitments have expired or been terminated. The Administrative Agent shall be under no duty to exercise, or withhold the exercise of, any of the rights, powers, privileges, and options expressly or implicitly granted to the Administrative Agent in this Agreement, and shall not be liable for either any failure to do so or any delay in doing so. The Administrative Agent shall not be liable for any act or omission, error of judgment, or mistake of fact or Law, in its individual capacity or in its capacity as the attorney-in-fact, except for acts or omissions resulting from its gross negligence or willful misconduct. This power of attorney is conferred on the Administrative Agent solely to protect, preserve and realize upon its security interest in the Collateral.

(b)    <u>Assignment by the Administrative Agent</u>. The Administrative Agent may from time to time assign the Secured Obligations and/or its rights and obligations under this Agreement, in each case, to a successor Administrative Agent appointed in accordance with the Credit Agreement, and such successor shall be entitled to all of the rights and remedies of the Administrative Agent under this Agreement in relation thereto.

(c)    <u>The Administrative Agent's Duty of Care</u>. Other than the exercise of reasonable care to assure the safe custody of the Collateral while being held by the Administrative Agent hereunder, the Administrative Agent shall have no duty or liability to preserve any rights pertaining thereto, it being understood and agreed that the Obligors shall be solely responsible for the preservation of all rights in the Collateral, and the Administrative Agent shall be relieved of all responsibility for the Collateral upon surrendering it, or tendering the surrender of it, to the Obligors. The Administrative Agent shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in its possession if such Collateral is accorded treatment substantially equal to that which the Administrative Agent accords its own property, which shall be no less than the treatment employed by a reasonable and prudent agent in the industry, it being understood that the Administrative Agent shall not have any responsibility for taking any necessary steps to preserve any rights against any parties with respect to any of the Collateral. In the event of a public or private sale of Collateral pursuant to Section 7 hereof, the Administrative Agent shall have no responsibility for: (i) ascertaining, or taking action with respect to, calls, conversions, exchanges, maturities, tenders, or other matters relating to any such Collateral, whether or not the Administrative Agent has, or is deemed to have, knowledge of such matters; or (ii) taking any steps to clean, repair or otherwise prepare any such Collateral for sale.

8

(d)     Voting and Payment Rights in Respect of the Pledged Equity.

(i)     So long as no Event of Default shall have occurred and be continuing, each Obligor may: (A) exercise any and all voting and other consensual rights pertaining to the Pledged Equity of such Obligor, or any part thereof, for any purpose not inconsistent with the terms of this Agreement or the Credit Agreement; and (B) receive and retain any and all dividends (other than stock dividends and other dividends constituting Collateral, which are addressed hereinabove), principal or interest paid in respect of the Pledged Equity, to the extent they are allowed under the Credit Agreement; and

(ii)     Upon the occurrence and during the continuance of an Event of Default: (A) all rights of any Obligor to exercise the voting and other consensual rights that it would otherwise be entitled to exercise pursuant to clause (d)(i)(A) above shall cease, and all such rights shall thereupon become vested in the Administrative Agent, which shall then have the sole right to exercise such voting and other consensual rights (provided, that, with respect to the exercise of rights and/or remedies hereunder in respect of Pledged Equity, the Administrative Agent shall provide prior or substantially contemporaneous notice to the Borrower); (B) all rights of any Obligor to receive the dividends, principal and interest payments that it would otherwise be authorized to receive and retain pursuant to clause (d)(i)(B) above shall cease, and all such rights shall thereupon be vested in the Administrative Agent, which shall then have the sole right to receive and hold as Collateral such dividends, principal and interest payments; and (C) all dividends, principal and interest payments that are received by any Obligor contrary to the provisions of clause (d)(ii)(B) above shall be received in trust, for the benefit of the Administrative Agent and the other holder(s) of the Secured Obligations, shall be segregated from any other property or funds of such Obligor, and shall be forthwith paid over to the Administrative Agent as Collateral, in the exact form received, to be held by the Administrative Agent as Collateral for the benefit of the holders of the Secured Obligations.

(e)     Releases of Collateral.

(i)     If any Collateral (including, without limitation, any Pledged Equity), shall be sold, transferred, or otherwise disposed of by any Obligor, in a transaction permitted under the Credit Agreement, then the Administrative Agent, at the request and sole expense of such Obligor, shall promptly execute and/or deliver to such Obligor all releases, terminations, and other documents, and take all such other action(s), that are reasonably necessary for the release of the Liens created, or purported to be created, hereby, or by any other Collateral Document, on such Collateral.

(ii)     The Administrative Agent may release any of the Pledged Equity from this Agreement, or may substitute, or permit an Obligor to substitute, any of the Pledged Equity for other Pledged Equity, in each case, without altering, varying or diminishing in any way the force, effect, lien, pledge, or security interest created, or purported to be created, under this Agreement as to any Pledged Equity not expressly released or substituted, and this Agreement shall continue as a first priority lien on all such Pledged Equity that is not so expressly released or substituted.

9.     Application of Proceeds. Upon the acceleration of the Obligations under the Loan Documents pursuant to Section 8.1 of the Credit Agreement, any payments in respect of the Secured Obligations and any proceeds of the Collateral, when received by the Administrative Agent or any other holder(s) of the Secured Obligations, in Money or its equivalent, will be applied in reduction of the Secured Obligations in the order set forth in Section 8.2 of the Credit Agreement.

10.     Continuing Agreement.

(a)     This Agreement shall remain in full force and effect until such time as the Secured Obligations arising under the Loan Documents have been paid in full and the Commitments have expired or been terminated, at which time, this Agreement shall be automatically terminated and the Administrative Agent shall: (i) upon the

CONFIDENTIAL                                                                                                                                                 VPX-UCC0000101577

request and at the expense of the Obligors, forthwith release all of its liens and security interests hereunder; and (ii) execute and/or deliver all UCC termination statements and/or other documents reasonably requested by the Obligors evidencing such termination.

(b) This Agreement shall continue to be effective or be automatically reinstated, as the case may be, if, at any time, payment, in whole or in part, of any of the Secured Obligations is rescinded, or must otherwise be restored or returned by the Administrative Agent or any other holder(s) of the Secured Obligations, as a preference, fraudulent conveyance, or otherwise, under any Debtor Relief Law, all as though such payment had not been made; provided, that, in the event payment of all or any part of the Secured Obligations is rescinded or must be restored or returned, all reasonable costs and expenses (including, without limitation, any reasonable legal fees and disbursements) incurred by the Administrative Agent, or by any other holder(s) of the Secured Obligations, in defending and/or enforcing such reinstatement shall be deemed to be included as a part of the Secured Obligations.

11. Amendments; Waivers; Modifications, Etc. This Agreement and the provisions hereof may not be amended, waived, modified, changed, discharged or terminated, except as set forth in Section 11.2 of the Credit Agreement; provided, that, any update or revision to Schedule 7 hereof delivered by any Obligor shall not constitute an amendment for purposes of either this Section 11 or Section 11.2 of the Credit Agreement.

12. Successors in Interest. This Agreement shall be binding upon each Obligor and its respective successors and assigns, and shall inure, together with the rights and remedies of the Administrative Agent and the holders of the Secured Obligations hereunder, to the benefit of the Administrative Agent, the other holders of the Secured Obligations, and their respective successors and permitted assigns.

13. Notices. All notices required or permitted to be given under this Agreement shall be in conformance with Section 11.1 of the Credit Agreement (except using the relevant address for each Obligor as set forth on Schedule 7 hereto, as such schedule may be updated and/or modified from time to time in accordance with Section 11 hereof, or such other address for such Obligor as previously provided in writing to, and acknowledged in writing by, the Administrative Agent).

14. Counterparts. This Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which, when taken together, shall constitute a single contract. It shall not be necessary, in making proof of this Agreement, to produce or account for more than one (1) such counterpart. Delivery of an executed counterpart of a signature page of this Agreement by facsimile or other electronic imaging means (*e.g.*, "pdf" or "tif") shall be effective as delivery of a manually executed counterpart of this Agreement.

15. Headings. The headings of the sections hereof are provided for convenience only and shall not, in any way, affect the meaning or construction of any provision of this Agreement.

16. Governing Law; Submission to Jurisdiction; Venue; WAIVER OF JURY TRIAL. The terms of Sections 11.5 and 11.6 of the Credit Agreement with respect to governing law, submission to jurisdiction, venue, and waiver of jury trial are incorporated herein by reference, *mutatis mutandis*, and the parties hereto agree to such terms.

17. Severability. If any provision of this Agreement is held to be illegal, invalid or unenforceable: (a) the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected or impaired thereby; and (b) the parties shall endeavor in good faith negotiations to replace the illegal, invalid or unenforceable provisions with valid provisions, the economic effect of which shall come as close as possible to that of the illegal, invalid or unenforceable provisions. The invalidity of a provision in a particular jurisdiction shall not invalidate, or render unenforceable, such provision in any other jurisdiction.

18. Entirety. This Agreement, the other Loan Documents, and any separate letter agreements with respect to any fees payable to the Administrative Agent or the Issuing Bank, constitute the entire contract among

CONFIDENTIAL
VPX-UCC0000101578

the parties relating to the subject matter hereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.

19. <u>Other Security</u>. To the extent that any of the Secured Obligations are now or hereafter secured by property other than the Collateral (including, without limitation, real property and securities owned by an Obligor), or by a guarantee, endorsement, or property of any other Person, then the Administrative Agent shall have the right to proceed against such other property, guarantee, or endorsement upon the occurrence of any Event of Default, and the Administrative Agent shall have the right, in its sole discretion, to determine which rights, security, liens, security interests, or remedies the Administrative Agent shall at any time pursue, relinquish, subordinate, modify, or take with respect thereto, without in any way modifying or affecting any of them, the Secured Obligations or any of the rights of the Administrative Agent or the holders of the Secured Obligations under this Agreement, any other Loan Documents, or any other documents relating to the Secured Obligations.

20. <u>Joinder</u>. At any time after the date of this Agreement, one (1) or more additional Persons may become party hereto by executing and delivering to the Administrative Agent a Guarantor Joinder Agreement. Immediately upon such execution and delivery of such Guarantor Joinder Agreement (and without any further action), each such additional Person will become a party to this Agreement as an "Obligor" and shall have all of the rights and obligations of an Obligor hereunder, and this Agreement and the schedules hereto shall be deemed amended and/or supplemented, as applicable, by such Guarantor Joinder Agreement.

21. <u>Bankruptcy Savings</u>. Notwithstanding any provision to the contrary contained herein, in any other Loan Documents, or in any other documents relating to the Secured Obligations, the Obligations of each Obligor under the Credit Agreement, the other Loan Documents, and the other documents relating to the Secured Obligations shall be limited to an aggregate amount equal to the largest amount that would not render such Obligations subject to avoidance under Section 548 of the U.S. Bankruptcy Code or any comparable provisions of any other Debtor Relief Law.

[*Remainder of Page Intentionally Left Blank; Body of Owner Pledge Agreement Continues*]

CONFIDENTIAL                                                                                                                                    VPX-UCC0000101579

22.     <u>Consent of Issuers of Pledged Equity</u>. Each of the undersigned issuers of Pledged Equity hereby acknowledges, consents and agrees, as of the date first written above, to the grant of the security interest in the Pledged Equity by the Obligor party hereto on the Effective Date pursuant to this Agreement, together with all rights accompanying such security interest as provided by this Agreement and applicable Laws, notwithstanding any anti-assignment provisions in any Organization Document of such issuer.

**VITAL PHARMACEUTICALS, INC.,**
a Florida corporation

By: _____ (Seal)
Name:  John H. Owoc
Title:    President, Chief Scientific Officer & Chief Executive Officer

**BANG FOODS, LLC,**
a Florida limited liability company

By: _____ (Seal)
Name:  John H. Owoc
Title:    President, Chief Scientific Officer & Chief Executive Officer

**ENERGY TRAIN, LLC,**
a Florida limited liability company

By: _____ (Seal)
Name:  John H. Owoc
Title:    President, Chief Scientific Officer & Chief Executive Officer

**ELITE IP HOLDINGS, LLC,**
a Florida limited liability company,

By: _____ (Seal)
Name:  John H. Owoc
Title:    President, Chief Scientific Officer & Chief Executive Officer

**ENTOURAGE IP HOLDINGS, LLC,**
a Florida limited liability company,

By: _____ (Seal)
Name:  John H. Owoc
Title:    President, Chief Scientific Officer & Chief Executive Officer

*[Pledged Equity Issuer Acknowledgement Signature Pages Continue]*

CONFIDENTIAL                                                                                                    VPX-UCC0000101580

**JHO INTELLECTUAL PROPERTY HOLDINGS, LLC,**
a Florida limited liability company

By: _____ (Seal)
Name: John H. Owoc
Title: President, Chief Scientific Officer & Chief Executive Officer

**JHO NV-1 INVESTMENT, LLC,**
a Florida limited liability company

By: _____ (Seal)
Name: John H. Owoc
Title: President, Chief Scientific Officer & Chief Executive Officer

**JHO REAL ESTATE INVESTMENT, LLC,**
a Florida limited liability company

By: _____ (Seal)
Name: John H. Owoc
Title: President, Chief Scientific Officer & Chief Executive Officer

**QUASH SELTZER, LLC,**
a Florida limited liability company

By: _____ (Seal)
Name: John H. Owoc
Title: President, Chief Scientific Officer & Chief Executive Officer

**SHERIDAN REAL ESTATE INVESTMENT A, LLC,**
a Florida limited liability company

By: _____ (Seal)
Name: John H. Owoc
Title: President, Chief Scientific Officer & Chief Executive Officer

[*Pledged Equity Issuer Acknowledgement Signature Pages Continue*]

13

CONFIDENTIAL
VPX-UCC0000101581

**SHERIDAN REAL ESTATE INVESTMENT B, LLC,**
a Florida limited liability company

By: _____ (Seal)
Name:  John H. Owoc
Title:   President, Chief Scientific Officer & Chief Executive Officer

**SHERIDAN REAL ESTATE INVESTMENT C, LLC,**
a Florida limited liability company

By: _____ (Seal)
Name:  John H. Owoc
Title:   President, Chief Scientific Officer & Chief Executive Officer

**VITAL PHARMACEUTICALS INTERNATIONAL SALES, INC.,**
a Delaware corporation

By: _____ (Seal)
Name:  John H. Owoc
Title:   President, Chief Scientific Officer & Chief Executive Officer

**VPX SWIM AND SPORTS GEAR, LLC,**
a Florida limited liability company

By: _____ (Seal)
Name:  John H. Owoc
Title:   President, Chief Scientific Officer & Chief Executive Officer

*[Remainder of Page Intentionally Left Blank; Body of Owner Pledge Agreement Ends; Obligor Signature Page Follows]*

CONFIDENTIAL                                                                                                             VPX-UCC0000101582

Each of the parties hereto has caused a counterpart of this Agreement to be duly executed and delivered as of the date first above written, intending to create an instrument under seal.

OBLIGOR:

**JOHN H. OWOC,**
an individual resident of the State of Florida

By: _____(Seal)

*[Signature Pages Continue]*

Signature Page to Owner Pledge Agreement (Vital Pharmaceuticals, Inc.)

ACCEPTED AND AGREED TO
AS OF THE DATE FIRST WRITTEN ABOVE:

**TRUIST BANK,**
as Administrative Agent

By: _____ (Seal)
Name: KEITH ARNOLD
Title: SVP

*[Signature Pages End]*

## SCHEDULE 1

## PLEDGED EQUITY

| Obligor | Issuer / Subsidiary Info. | | Share / Unit Info. | | | Ownership Info. | |
|---|---|---|---|---|---|---|---|
| | Name | JDX | Class / Type (*of Capital Stock*) | # Issued (*Shares / Units*) | Cert. # | Owned (%) | Pledged (%) |
| John Henry Owoc | Bang Foods, LLC | FL | Uncertificated Membership Interests | N/A | N/A | 100.0% | 100.0% |
| | Elite IP Holdings, LLC | | | | | 100.0% | 100.0% |
| | Energy Train, LLC | | | | | 100.0% | 100.0% |
| | Entourage IP Holdings, LLC | | | | | 100.0% | 100.0% |
| | JHO Intellectual Property Holdings, LLC | | | | | 100.0% | 100.0% |
| | JHO NV-1 Investment, LLC | | | | | 100.0% | 100.0% |
| | JHO Real Estate Investment, LLC | | | | | 100.0% | 100.0% |
| | Quash Seltzer, LLC | | | | | 100.0% | 100.0% |
| | Sheridan Real Estate Investment A, LLC | | | | | 100.0% | 100.0% |
| | Sheridan Real Estate Investment B, LLC | | | | | 100.0% | 100.0% |
| | Sheridan Real Estate Investment C, LLC | | | | | 100.0% | 100.0% |
| | Vital Pharmaceuticals, Inc. | DE | Uncertificated Common Stock | | | 100.0% | 100.0% |
| | Vital Pharmaceuticals International Sales, Inc. | | | | | 100.0% | 100.0% |
| | VPX Swim and Sports Gear, LLC | FL | Uncertificated Membership Interests | | | 100.0% | 100.0% |

[*Remainder of Page Intentionally Left Blank*]

CONFIDENTIAL                                                                                            VPX-UCC0000101585

SCHEDULE 7

**OBLIGOR CONTACT INFORMATION**

| Obligor | Contact Information |
|---|---|
| John Henry Owoc | 16720 Stratford Ct.<br>Southwest Ranches, FL 33331<br>*Attn*:         Jack H. Owoc<br>E-mail:      CEO@bangenergy.com |

*[Remainder of Page Intentionally Left Blank]*

EXHIBIT 4(a)

**IRREVOCABLE [STOCK][UNIT] POWER**

FOR VALUE RECEIVED, the undersigned hereby sells, assigns, and transfers to:

_____

the following equity interests of _____, a _____ [corporation][limited liability company]:

No. of [Shares][Units] _____   Certificate No. _____

and irrevocably appoints _____, as its agent and attorney-in-fact, to transfer all or any part of such equity interests, and to take all necessary and appropriate action to effect any such transfer. The agent and attorney-in-fact may substitute and appoint one (1) or more persons to act for [him][her][it].

Dated: _____, 20___

_____

By: _____
Name:
Title:

*[Remainder of Page Intentionally Left Blank]*

Exhibit 4(a) to Owner Pledge Agreement (Vital Pharmaceuticals, Inc.)

CHAR1\1742215v5