# **<u>EXHIBIT 3</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,

      Debtors.[1]

_____/

Chapter 11 Cases

Case No. 22-17842 (PDR)
(Jointly Administered)

**DEBTORS' OBJECTION TO CREDITOR AND
INTERESTED PARTY JOHN H. OWOC'S MOTION TO CLARIFY EXTENT
OF AUTOMATIC STAY OR IN THE ALTERNATIVE FOR RELIEF FROM STAY**

      The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the *Creditor and Interested Party John H. Owoc's Motion to Clarify Extent of Automatic Stay or in the Alternative for Relief from Stay* [ECF No. 1442] (the "Motion") filed by John H. Owoc ("Mr. Owoc"). In support of this Objection, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

      1.    The Motion, and the related underlying litigation (the "Owoc State Court Action") against members of the Debtors' Boards of Directors or Managers (the "Board"), constitute another baseless ploy by Mr. Owoc to thwart the Debtors' efforts to consummate a value-maximizing sale of the Debtors' business. There is no merit to the arguments raised by Mr. Owoc and the Motion should be denied.

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

2.      While the Motion purports to seek "clarification" regarding the automatic stay, no such "clarification" is needed.  The automatic stay prohibits Mr. Owoc's attempt to gain control of debtor property.  And longstanding precedent prohibits suits against the estates' court-approved fiduciaries absent leave of this Court.  This is black-letter law.

3.      The only question for this Court is whether cause exists to lift the stay or to grant leave to allow Mr. Owoc to proceed.  The answer is no.  Even if the Owoc State Court Action were not frivolous and premised on a false narrative—and it is—it would still be futile.  The issues underlying that lawsuit will be mooted:  the Debtors will have sold substantially all of their assets long before the Owoc State Court Action can result in any revision to the Debtors' governance, and such later revision will thereafter be meaningless.  Additionally, at the upcoming sale hearing, this Court will be asked to make a finding as to the authority of the Board to enter into the proposed sale transaction.  Once that finding is made, Mr. Owoc will be precluded from asserting to the contrary.  And the Board members have already removed the Owoc State Court Action to the District Court, from which it will be referred to this this Court.  Lifting the stay would therefore affect only this Court, and would require it to address the same issue twice in two different postures, once at the sale hearing, and once after the sale hearing moots the dispute and precludes Mr. Owoc's re-raising the issue.  Accordingly, the Motion should be denied.

## BACKGROUND

4.      Mr. Owoc is the sole shareholder of the Debtors, and until March 2023 served as the Chief Executive Officer and Chairman of the Board of Directors of Vital Pharmaceuticals, Inc. ("VPX") and its Debtor affiliates.

### A.      Governance Matters

5.      Prior to Mr. Owoc's termination, the Debtors undertook, and Mr. Owoc approved, several governance changes.  *First*, the Debtors increased the size of the Board from one member

2

12254965-1

(Mr. Owoc) to five members, pursuant to governance amendments executed by Mr. Owoc.[2] Initially, the new five-member Board consisted of two executives of the Debtors (Mr. Owoc and Ms. Cole (the former COO)) and three others, Steve Panagos, Eric Hillman, and Dr. Guillermo Escalante.[3]  *Second*, Mr. Owoc approved the creation of the Restructuring Committee compromising a single independent director (Mr. Panagos).[4]  *Third*, in connection with the Final DIP Order (as defined herein), the Debtors reconstituted the Board, again with Mr. Owoc's express approval, to include independent directors acceptable to the Debtors' secured lenders and the Official Committee of Unsecured Creditors.[5]

6.      The governance changes ultimately formed part of a global settlement with the Official Committee of Unsecured Creditors and the Debtors' secured lenders, among others, that culminated in this Court's entry of the Final DIP Order[6] [ECF No. 638] on January 12, 2023.  *See* Final DIP Order ¶ 62.  In particular, as approved by the Final DIP Order, the Board was to include five members, three of whom were required to be independent directors (among other requirements).  *See id.* at ¶ 62(b).  Furthermore, the Final DIP Order explicitly confirmed that as of January 13, 2023, "the Debtors' boards of directors or managers (or equivalent body) shall be

---

[2]  *See Action by Unanimous Written Consent of the Shareholder and Board of Directors in Lieu of Meeting*, effective October 26, 2022 (the "Oct. 26 Written Consent"), page 2.  The Oct. 26 Written Consent is attached hereto as **Exhibit A**.

[3]  *See id.* at page 3.

[4]  *See id.* at page 2.

[5]  *See* Final DIP Order ¶ 62.; *see also*, *Action by Unanimous Written Consent of the Shareholder and Board of Directors in Lieu of Meeting*, effective January 7, 2023 (the "Jan. 7 Written Consent"), pages 6-7 ("The Board of Directors shall consist of five (5) members, and at all times shall include three (3) independent directors (the 'Independent Directors').  An individual may serve as an Independent Director only if and so long as such person (i) does not have a relationship by blood (to the second (2nd) degree of consanguinity), marriage or adoption to John Henry Owoc and (ii) is not an employee, officer, manager or consultant of, or independent contractor or advisor to, the Corporation or any of its affiliates (other than in respect of service on such board or other equivalent governing body).")  The Jan. 7 Written Consent is attached hereto as **Exhibit B**.

[6]  The *Final Order (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [ECF No. 638] (the "Final DIP Order").

composed of John H. Owoc, as Chairman of the Board, Eric Hillman, Bob Dickinson, Stephen S. Gray and Steven G. Panagos." *See id.*; *see also*, Jan. 7 Written Consent.[7]

7. While Mr. Owoc now claims that Mr. Dickinson[8] was terminated on December 15, 2022, at no point (until now) did Mr. Owoc raise any objection to or any concern with the Final DIP Order and the explicit acknowledgment that Mr. Dickinson remained a member of the Board on January 13, 2023. Furthermore, Mr. Owoc almost immediately retracted his desire to remove Mr. Dickinson from the Board. Mr. Owoc also never raised an issue with Mr. Dickinson attending and participating in Board meetings subsequent to his purported termination.

**B. Termination of Mr. Owoc**

8. After entry of the Final DIP Order and in connection with the Debtors' sale process, the Board repeatedly requested, in writing and at meetings of the Board attended by Mr. Owoc prior to his dismissal, that Mr. Owoc take or refrain from certain actions in order to facilitate the sale process and enable the Debtors to maximize value through a going-concern sale. Mr. Owoc, however, consistently failed to comply with requests of the Board and the Debtors' advisors.

---

[7] In addition, the Debtors amended their respective certificate or articles of incorporation, certificate or articles of formation or organization, bylaws or operating agreement, as applicable, in order to provide that members of the Board could be removed only by a majority vote as opposed to allowing Mr. Owoc to terminate a Board member in his absolute and sole discretion. *Compare Bylaws of Vital Pharmaceuticals, Inc.*, dated Aug. 13, 2020, attached hereto as **Exhibit C**, Section 3.15 ("[a]t a meeting of shareholders called expressly for that purpose, any director or the entire Board of Directors may be removed, *with or without cause, by a vote of the holders of a majority of the shares then entitled to vote at an election of directors*") (emphasis added) *with* Jan. 7 Written Consent, page 7 ("[a]t a meeting of the Board of Directors called expressly for that purpose, at which a quorum is present, one or more directors may be removed, solely for good cause, by a vote of a majority of directors present at such meeting (excluding the vote of any director or directors proposed to be removed), and, notwithstanding anything to the contrary in these Bylaws, the shareholders may not remove an individual serving on the Board of Directors unless the Board of Directors has voted to remove such director in accordance with this Section 3.15"). Mr. Owoc signed the relevant documents to effectuate the foregoing, the Final DIP Order explicitly acknowledges the foregoing and again, Mr. Owoc raised no concerns with these amendments until now. *See id.*

[8] Mr. Dickinson was appointed on December 14, 2022 with Mr. Owoc express approval. *See Action by Unanimous Written Consent of the Shareholder and Board of Directors in Lieu of Meeting*, effective December 14, 2022 (the "Dec. 14 Written Consent"), page 2. The Dec. 14 Written Consent is attached hereto as **Exhibit D**.

12254965-1

9.      On March 9, 2023, the Board held a duly-noticed Board meeting, which Mr. Owoc (and his then counsel) was invited to attend.  Mr. Owoc refused to attend.  Consistent with the notice provided for the March 9 Board meeting, among the issues taken up by the Board was Mr. Owoc's continued role with the Debtors and the Board.  After deliberation, the Board voted to terminate Mr. Owoc's employment with the Debtors as Chief Executive Officer and Chief Scientific Officer, and to remove him from the Board for cause, effective immediately.  Mr. Owoc was promptly notified of the Board's decision.[9]

10.     As of the March 9 Board meeting, the Board consisted of five members: (a) Mr. Owoc, (b) Mr. Eric Hillman, (c) Mr. Bob Dickinson, (d) Mr. Stephen Gray, and (e) Mr. Steven Panagos—the same composition as detailed in the Final DIP Order.  As required by the applicable governing documents of each Debtor (as approved by the Final DIP Order), Mr. Owoc's termination was approved by three of the five members of the Board, constituting a majority of the Board.[10]

11.     Notwithstanding the clear authority of the Board to terminate Mr. Owoc, and the undisputed evidence that such termination was valid, Mr. Owoc now seeks relief from the automatic stay to pursue a frivolous lawsuit challenging his termination (and implicitly the proposed sale transaction).

12.     Subsequent to the filing of the Motion, the defendant Board members in the Owoc State Court Action filed the *Defendants' Notice of Removal*, removing the Owoc State Court Action to the United States District Court for the Southern District of Florida.  *See John Owoc v. Robert Dickinson, Stephen Gray, and Steven Panagos*, No. Case No. 23-0142250 [ECF No. 1].

---

[9]  *See Termination Notice* sent on March 9, 2023, attached hereto as **Exhibit E**.

[10] *See* Jan. 7 Written Consent, page 7.

## ARGUMENT

### A.    The automatic stay applies.

13.      The Bankruptcy Code's automatic stay applies to the lawsuit Mr. Owoc seeks to commence.  Section 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).   Mr. Owoc's attempt to re-take control over the Debtors, through a declaratory judgment, is an act "to exercise control over property of the estate" and whether or not the Debtors are named as defendants in such action, such suit would violate the automatic stay.  *See In re Bicoastal Corp.,* No. 89-8191-8P1, 1989 WL 607352, at *6 (Bankr. M.D. Fla. Nov. 21, 1989) (finding that section 362(a)(3) applied to a creditor's/shareholder's attempt to "control the Board" of a debtor for their own personal benefit holding that "the automatic stay does apply and prohibits [creditor/shareholder] to proceed as they intend to do to appoint the majority of the Board"); *In re Korean W. Presbyterian Church of Los Angeles*, 618 B.R. 282, 287 (Bankr. C.D. Cal. 2020) ("[i]t is difficult to see how… acts to wrest control of Debtor and all its property from one another are not acts to "exercise control over property of the estate."); *In re Patterson*, 967 F.2d 505, 512 (11th Cir. 1992) (holding that an action to control property of debtor "violates the express terms of Section 362(a)(3)").  It does not matter that Mr. Owoc is seeking a declaratory judgment.  *In re Jefferson Cnty., Ala.*, 484 B.R. 427, 446–47 (Bankr. N.D. Ala. 2012) (stating that "[a]ny action that affects property of the debtor in a manner within the automatic stay's sphere, including a declaratory judgment action, is subject to § 362(a)(3), even if the debtor is not named in the action.").  And in any event, Mr. Owoc is effectively seeking to enjoin the Debtors' proposed sale transaction through injunctive relief.  Such an action is clearly an attempt by Mr. Owoc to exercise control over the property of the Debtors' estates.

14.     While Mr. Owoc cites to numerous cases, none support the relief he seeks.   In general, these cases stand for the proposition that shareholders of a debtor corporation are entitled to exercise their ordinary shareholder rights (*e.g.*, compelling long overdue annual board meetings; review of corporation's books and records) and that the automatic stay does not apply to or prevent the exercise of such ordinary shareholder rights.   What the cases do not provide is that shareholders, like Mr. Owoc, can commence a lawsuit aimed at taking control of the debtor corporation.[11]

**B.     Mr. Owoc is required to obtain leave from this Court under the *Barton* doctrine.**

15.     Furthermore, under well-established United States Supreme Court precedent, there is "a general rule that before suit is brought against a receiver leave of the court by which he was appointed must be obtained."  *See Barton v. Barbour*, 104 U.S. 126, 127, 26 L. Ed. 672 (1881) (the "*Barton* doctrine").   As explained by the 11th Circuit Court of Appeals, "circuit courts have extended the *Barton* doctrine to lawsuits against a bankruptcy trustee."  *See Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000).   Additionally, the *Barton* doctrine applies to actions against court-approved officers when those officers function "as the equivalent of court appointed officers."  *See id.* (noting that the distinction between a court appointed estate fiduciary as opposed

---

[11] *See e.g., In re mpX Tech., Inc.*, 310 B.R. 453, 454 (Bankr. M.D. Fla. 2004) (while the court states that "disputes involving corporate governance is generally not within the competence and jurisdiction of a Bankruptcy Court even if the corporation is a debtor under Chapter 11 of the Bankruptcy Code," nothing in the case discusses the applicable of the automatic stay nor does the court delve into the issues of presented here.); *In re Lionel Corp.*, 30 B.R. 327, 328 (Bankr. S.D.N.Y. 1983) (while the case discusses corporate governance issues, the issue was whether a debtor should be compelled to hold "long overdue annual meetings"); *In re Bush Terminal Co.*, 78 F.2d 662, 665 (2d Cir. 1935) (while agreeing with the proposition that shareholders can exercise certain rights with respect to debtor corporations, the rights sought to be exercised were reviewing the corporation's books and records, and the court relied heavily on unique New York law); *In re Marvel Ent. Grp., Inc.*, 209 B.R. 832, 838 (D. Del. 1997) (while stating that "[i]t is well settled that the right of shareholders to compel a shareholders' meeting for the purpose of electing a new board of directors subsists during reorganization proceedings," what Mr. Owoc is seeking here is beyond merely seeking to compel a shareholder meeting to elect a new board.  Mr. Owoc is seeking to commence a lawsuit against the Debtors and their Board, outside of this Court, for the sole purpose of re-taking possession of, and control over, the Debtors and their property.  This case is easily distinguishable and should have no bearing on the dispute before this Court.).

7

to a court approved estate fiduciary is "irrelevant, [holding] that these court approved officers functioned as the equivalent of court appointed officers for purposes of the *Barton* doctrine"); *Lawrence v. Goldberg*, 573 F.3d 1265, 1269 (11th Cir. 2009). The *Barton* doctrine also applies to protect debtors-in-possession. S*ee Helmer v. Pogue,* No. 2:12-CV-1635-VEH, 2012 WL 5231153, at *12 (N.D. Ala. Oct. 22, 2012) (extending the *Barton* doctrine to apply to debtor-in-possession); *In re Gen. Growth Properties, Inc.*, 426 B.R. 71, 75 (Bankr. S.D.N.Y. 2010) (stating that the *Barton* "doctrine protects any fiduciary of the estate, including a debtor-in-possession"); *In re Jasmine Networks, Inc.*, No. 02-54815-MM, 2006 WL 3392062, at *2 (Bankr. N.D. Cal. Nov. 20, 2006) ("[t]he [*Barton* doctrine] extends beyond trustees to other persons appointed by the bankruptcy court, like debtors-in-possession and their court-approved counsel"); *see also In re J.S. II, L.L.C.*, 389 B.R. 570, 583 (Bankr. N.D. Ill. 2008) (in analyzing the *Barton* doctrine, the court noted that it applies to a debtor-in-possession because under the Bankruptcy Code a "debtor-in-possession enjoys the same rights and protections as a bankruptcy trustee"). Lastly, "the scope of the *Barton* Doctrine is extremely broad." *See In re W.B. Care Ctr., LLC*, 497 B.R. 604, 611 (Bankr. S.D. Fla. 2013).

16.     The *Barton* doctrine applies here. The Debtors here are acting as debtors-in-possession charged with the administration of their estates. *See* 11 U.S.C. § 1107. The Debtors administer their estates through the decision-making of the Board. The members of the Board at issue here—*i.e.*, as constituted at the time of Mr. Owoc's termination—are as set forth in and approved by this Court's Final DIP Order. The Debtors and their Board were acting in their fiduciary capacities, as approved by this Court, when terminating Mr. Owoc and are therefore

8

protected by the *Barton* doctrine.[12]  Accordingly, Mr. Owoc's filing of the initial complaint against members of the Board itself violated the automatic stay and/or the *Barton* doctrine.[13]  *See In re Gen. Growth Properties, Inc.*, 426 B.R. at 74 (addressing shareholder commencing a state court action against the directors of a debtor corporation in connection with actions the board took in furtherance of the debtor's sale process, and holding that "[u]nder the circumstances of this case, an action against the Board, whose members act as officers of the court, implicates the Barton doctrine").  Given that the *Barton* doctrine applies to the action Mr. Owoc already commenced against the Board members, Mr. Owoc's violation of the *Barton* doctrine will subject the lawsuit to dismissal with prejudice once the case is transferred to this Court.

17.     Based on the foregoing, Mr. Owoc may not proceed with his lawsuit unless cause exists to lift the stay.  As discussed more fully below, no such cause exists.

**C.     Cause does not exists to lift the automatic stay.**

18.     Because the automatic stay applies to the action Mr. Owoc seeks to bring against VPX and its Board, Mr. Owoc must seek relief from the automatic stay (and Mr. Owoc arguably already violated the automatic stay by initiating the Owoc State Court Action in violation of the *Barton* doctrine).  Mr. Owoc wholly fails to establish that cause exists to lift the stay in order to proceed with his meritless state court action.

---

[12] While there are two limited exceptions to the applicability of the Barton doctrine, (a) the "carrying on business" exception and (b) the "*ultra vires*" exception, neither is applicable in this case.  First, as regards carrying on business, the complaint does not address the manner in which the Debtors or the directors carried on the commercial operations of the Debtor entities.  Second, regarding *ultra vires* actions, in the context of the *Barton* doctrine, the *ultra vires* exception is limited to cases involving actions against estate fiduciaries "who seize[] or otherwise attempt[] to administer property that is not [estate] property, but that actually belongs to a third party."  *See In re Cruz*, 562 B.R. 812, 817 (Bankr. M.D. Fla. 2016); *Satterfield v. Malloy*, 700 F.3d 1231, 1235 (10th Cir. 2012) (noting that "courts have most commonly relied upon the [*ultra vires*] exception when a trustee wrongfully seizes possession of a third party's assets").

[13] For the avoidance of doubt, the Debtors reserve all their rights and remedies with respect to the foregoing, and nothing herein shall be construed or deemed as a waiver of such rights and remedies.

19.    As noted, the filing of a bankruptcy petition operates to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws."  *In re Feingold*, 730 F.3d 1268, 1276 (11th Cir. 2013) (quotations and citation omitted).  This fundamental protection may only be modified if an interested party demonstrates "cause."  *See In re Chan*, No. 6:18-bk-03297-KSJ, 2019 Bankr. LEXIS 2702, at *4 (Bankr. M.D. Fla. June 3, 2019).  Cause is not defined in the Bankruptcy Code, so when determining whether cause exists courts apply a balancing test that considers the totality of the circumstances in each case.  *Id.* (citing *In re Feingold*, 730 F.3d at 1276).  In conducting a totality-of-circumstances analysis, courts in the Eleventh Circuit have considered: (1) whether the debtor has acted in bad faith; (2) the "hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code"; and (3) the status of pending state court proceedings.  *In re Feingold*, 730 F.3d at 1277.  Mr. Owoc does not and cannot demonstrate that any of these factors—or any other factors—warrant relief from the stay.

20.    *First*, Mr. Owoc offers no evidence that the Debtors have acted in bad faith.  In determining whether a debtor acted in bad faith, courts look for an "intent to abuse the judicial process and the purposes of the reorganization provisions."  *In re Dixie Broad., Inc.*, 871 F.2d 1023, 1027 (11th Cir. 1989).  The relevant cases uniformly examine whether the petitions were filed in bad faith.  *See id.* (collecting cases).  Mr. Owoc provides no allegation, let alone evidence, that the Debtors' petitions were filed to abuse the judicial process or the reorganization provisions of the Bankruptcy Code.  While Mr. Owoc has separately moved to dismiss the petition of Debtor JHO Real Estate Investment, LLC, *see Creditor and Interested Party John H. Owoc's Emergency Motion to Dismiss Chapter 11 Bankruptcy of Debtor JHO Real Estate Investment, LLC* [ECF No.

1466], he has no evidence to suggest any impropriety in that filing, let alone a bad-faith purpose. This factor thus weighs against granting relief from the automatic stay.

21.     *Second*, analyzing the hardships imposed on the parties also weighs against relief from the stay.  Allowing Mr. Owoc to commence his lawsuit now against VPX is prejudicial to all parties—including even as to Mr. Owoc—because it can have no effect other than to waste the litigants' resources.  The Debtors imminently will gain approval of the sale of substantially all of their assets to Blast Asset Acquisition LLC.[14]  The sale process will be complete long before Mr. Owoc could realistically adjudicate the Owoc State Court Action.  And the question of whether Mr. Owoc can be restored to his prior positions with the Debtors will be moot; Mr. Owoc will not be entitled to govern the business (*i.e.*, there will be new owners), and the sale transaction will not be subject to reversal or being unwound.  *See* 11 U.S.C. § 363(m).  Allowing the Owoc State Court Action to proceed (with or without adding VPX) will only cause expenditure of time and effort on proceedings to no productive end.[15]  *Cf. In re Jefferson Cnty., Ala.*, 491 B.R. at 297 (finding debtor would be prejudiced when lifting the automatic stay would "force[] [the debtor] to participate in an extensive and expensive discovery process and a trial in another state" which would further deplete the debtor's diminishing resources).  Using the state-court action in an attempt to inflict

---

[14] *See Amended Notice of Auction Cancellation and Successful Bidder* [ECF No. 1556] filed on June 30, 2023.  For avoidance of doubt, if the proposed sale transaction cannot be consummated, the Debtors will be forced to liquidate which will still moot the issues raised by Mr. Owoc.

[15] To further demonstrate the futility of the Owoc State Court Action, once successfully removed and transferred to this Court (which process has already begun by the directors), the Debtors will seek to dismiss the action, with prejudice, given that Mr. Owoc violated the *Barton* doctrine by filing his initial complaint without first seeking leave of this Court.  *See In re Trafford Distrib. Ctr., Inc.*, 520 B.R. 147, 156 (Bankr. S.D. Fla. 2014) (finding that "[t]he removal of the State Action to this Court does not retroactively cure the defect in Plaintiffs' failure to seek and obtain leave of this Court prior to filing the Complaint in State Court as required by the *Barton* doctrine.  The Court also adopts the reasoning of the cases cited by Judge Carey for the proposition that cases filed in violation of the *Barton* doctrine are void *ab initio*.  Accordingly, the Court concludes that the Removed Action should be dismissed with prejudice on the basis of the *Barton* doctrine.").

pain on those who Mr. Owoc perceives wronged him is not a benefit to anyone; rather, it is a hardship to everyone.

22.     Mr. Owoc asserts he is merely seeking to exercise fundamental governance rights as the sole shareholder of the Debtors.  Again, that simply is not true.  Suing a company and its directors to invalidate corporate action is not exercise of a governance right, it is an attack on governance rights.  Unsurprisingly, Mr. Owoc cites no case supporting his proposition, and instead relies on cases addressing ordinary shareholder rights—*i.e.*, meeting and voting, not commencing lawsuits—and which caution against abusive or tactical deployment of even those rights.  *See, e.g.*, *In re Bicoastal Corp.*, No. 89-8191-8P1, 1989 WL 607352, at *6-7 ("[T]the automatic stay does apply and prohibits [a creditor/shareholder] to . . . appoint the majority of the Board."); *id.* at *5 (distinguishing between ordinary shareholder interest (*e.g.*, a shareholder "who has a genuine concern for the health, welfare and survival of a corporation") as opposed to a shareholding merely seeking "to assure that it would have control of the affairs of [the debtor] until [a debt] . . .is satisfied in full."); *see also In re Marvel Ent. Grp., Inc.*, 209 B.R. 832, 838 (D. Del. 1997) (permitting ordinary exercise of board-election rights while noting that shareholder rights may not be exercised for abusive purposes, and likely are never appropriately exercised where the debtor is insolvent).  Therefore, not lifting the stay causes no harm to Mr. Owoc.

23.     *Third*, the status of the proceeding also supports denial of the Motion.  "[W]here the stayed non-bankruptcy litigation has reached an advanced stage, courts have shown a willingness to lift the stay to allow the litigation to proceed."  *In re R.J. Groover Const., LLC*, 411 B.R. 460, 464–65 (Bankr. S.D. Ga. 2008); *see also In re Tricare Rehab. Sys., Inc.*, 181 B.R. 569, 571 (Bankr. N.D. Ala. 1994).  For example, in *In re R.J. Groover Construction*, the court lifted the automatic stay when "state court proceeding ha[d] been pending for almost three years and much

of the discovery ha[d] been completed." *Groover*, 460 B.R. at 464-65.  In *Tricare*, the court noted that state-court litigation necessary to liquidate claims was commenced two years before bankruptcy, all discovery and trial preparation were complete, and partial summary judgment had previously been entered.  *Tricare*, 181 B.R. at 572.  Here, however, the proceeding against the directors is in its infancy, and the putative proceeding against VPX has not begun at all.  Thus, the third and final factor also weighs (heavily) against granting relief from the automatic stay.

24.     Finally, Mr. Owoc asserts that "[unless] [] a bankruptcy reason exists, the stay should be lifted."  *See* Motion ¶ 7.  There can be no greater bankruptcy reason to *not* lift the stay than the situation here:  the lawsuit can only diminish the Debtors' estates and impair the sale process.  Lifting the stay and allowing Mr. Owoc's frivolous lawsuit to go forward would threaten the very purpose of these chapter 11 cases, and conflicts with the policies and purposes of the Bankruptcy Code.

12254965-1

## CONCLUSION

25.     For the reasons set forth herein, the Debtors respectively requests that the Court

deny the Motion.

Dated:   July 7, 2023
         Miami, Florida

Respectfully submitted,

/s/ Jordi Guso

George A. Davis (admitted *pro hac vice*)
Hugh Murtagh (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:   george.davis@lw.com
         tj.li@lw.com
         brian.rosen@lw.com
         jon.weichselbaum@lw.com

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:   jguso@bergersingerman.com
         mniles@bergersingerman.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Email:   andrew.sorkin@lw.com

*Co-Counsel for the Debtors*

**<u>EXHIBIT A</u>**

**Oct. 26 Written Consent**

12254965-1

**VITAL PHARMACEUTICALS, INC.**
(a Florida corporation)

**ACTION BY UNANIMOUS WRITTEN CONSENT**
**OF**
**THE SHAREHOLDER AND**
**BOARD OF DIRECTORS**
**IN LIEU OF MEETING**

**Effective: October 26, 2022**

————————————

The undersigned, being the sole shareholder (the "Shareholder") and the sole member of the Board of Directors (the "Board" or "Board of Directors") of Vital Pharmaceuticals, Inc., a Florida corporation (the "Corporation"), hereby (a) take, authorize and adopt the following actions and matters, without and in lieu of a meeting, pursuant to Sections 607.0704 (as applicable to the Shareholder) and 607.0821 (as applicable to the Board of Directors), of the Florida Business Corporation Act (Chapter 607, Florida Statutes) (the "FBCA"), (b) waive any and all notices and requirements for notice, including of the time, date, place and/or purpose of or with regard to any meeting of the Shareholder and/or the Board of Directors of the Corporation and of or with regard to the actions and matters set forth in this action by unanimous written consent of the Shareholder and Board of Directors (the "Written Consent"), and (c) consent and agree to the authorization, approval and adoption of the following resolutions (collectively, the "Resolutions") as provided or described below:

**WHEREAS**, on and as of the date hereof (a) the Shareholder owns all of the issued and outstanding shares of capital stock of the Corporation enabling him to take the following actions by written consent without a shareholders' meeting pursuant to and in accordance with Section 607.0704 of the FBCA, and (b) the undersigned is the only duly elected member of the Board of Directors of the Corporation (and thus constitute the entire Board of Directors) enabling him to take the following actions by written consent without a Directors' meeting pursuant to and in accordance with Section 607.0821 of the FBCA; and

**WHEREAS**, the Shareholder and the Board of Directors, each of whom: (a) has reviewed in its entirety this Written Consent, the recitals and Resolutions included herein and the form,

content, terms and provisions of each exhibit annexed hereto and referenced herein, and (b) has had the opportunity to ask questions of and receive responses from senior management of the Corporation regarding the Resolutions, and the actions and matters set forth herein, have determined that the actions and matters described, provided for, authorized and ratified herein are desirable for, and are fair to and in the best interests of, the Corporation and the Shareholder.

Bylaws Amendment

WHEREAS, the Shareholder desires to amend (the "Amendment") Section 3.12 of the bylaws of the Corporation (the "Bylaws", and, as amended, the "Amended Bylaws"), adopted as of August 13, 2020, to provide a committee may consist of one person.

NOW, THEREFORE, LET IT BE RESOLVED, that Section 3.12 of the Bylaws is hereby deleted in its entirety and replaced with the following:

"Section 3.12 Committees. The Board of Directors, by resolution adopted by a majority of the then-existing Board of Directors, may designate from among its members one or more other committees, each of which shall have and may exercise all of the authority of the Board of Directors in the business and affairs of the Corporation except where the action of the full Board of Directors is required by statute. Each committee may consist of one member. Vacancies in the membership of a committee shall be filled by the Board of Directors at a regular or special meeting of the Board of Directors. The designation of any such committee and the delegation thereto of authority shall not operate to relieve the Board of Directors, or any member thereof, of any responsibility imposed upon the Board of Directors by law."

Restructuring Committee

NOW, THEREFORE, BE IT RESOLVED, that, after giving effect to the Amendment, the Board of Directors hereby create a restructuring committee composed of one (1) individual (the "Restructuring Committee") and appoints Steven G. Panagos to serve on the Restructuring Committee. The Restructuring Committee shall make recommendations to the Board of Directors regarding all aspects of the Corporation's restructuring, including with respect to filings (whether existing presently or in the future) under chapter 11 of the United States Bankruptcy Code, including without limitation the undertaking by the Corporation to satisfy any requirements of Section 3.1(b)(iii) of the Superpriority Secured Debtor-in-Possession Credit Agreement by and among the Corporation, as borrower, and certain other subsidiaries and affiliates of the Corporation from time to time as guarantors, the lenders party thereto from time to time (collectively, the "DIP Lenders") and Truist Bank, as administrative agent for the DIP Lenders.

Fixing Board Size

NOW, THEREFORE, BE IT RESOLVED, that, after giving effect to the Amendment, in accordance with Section 3.1 of the Amended Bylaws, the Shareholder hereby increases the number of members of the Board of Directors from one (1) to five (5) members (the "Board Increase").

Election of Board of Directors

**NOW, THEREFORE, BE IT RESOLVED**, that, after giving effect to the Board Increase, in connection with the election of the Board of Directors of the Corporation and the members thereof (each, a "Director") by and through this Written Consent (in lieu of holding an annual or other meeting of the Shareholder), the following persons be and hereby are, designated, elected and appointed to serve as Directors (and members of the Board of Directors) of the Corporation, in each case, to serve as such, in accordance with the articles of incorporation of the Corporation, the Amended Bylaws, and the FBCA, each until their respective successor is duly elected and qualified, or until his or her earlier death, resignation or removal:

> John H. Owoc, as Chairman of the Board
> Katherine Cole
> Dr. Guillermo Escalante
> Eric Hillman
> Steven G. Panagos

General Ratification and Authorization

**NOW, THEREFORE, BE IT RESOLVED**, that any matters, actions, transactions, and resolutions that were authorized, approved, taken, or entered into by any member of the Board or the Corporation's officers prior to the date hereof are hereby ratified, confirmed, approved, and adopted in all respects as the actions and deeds of the Corporation; and be it further

**RESOLVED**, that in addition to and without limiting the foregoing, the proper officers of the Corporation be, and each of them hereby is, for and in the name and on behalf of the Corporation, authorized to take, or cause to be taken, such further action, to make such filings and certifications, to deliver such notices, to execute and deliver, or cause to be delivered, all such agreements, instruments, notices and documents, to pay such fees and expenses, and to do all such things, in each case, as he or she may deem necessary or appropriate in order to effect and implement the purposes or to carry out the intent of the foregoing Resolutions (as conclusively evidenced by the execution, delivery, filing or performance of any such agreement, document or action, as the case may be), and any and all actions contemplated herein or heretofore taken by the directors, officers, employees, agents or shareholders of the Corporation in connection with the subject of the foregoing recitals and Resolutions be, and each of them hereby is, ratified, confirmed, approved and adopted in all respects as the act and deed of the Corporation.

This Written Consent may be executed in one or more counterparts, and by different parties hereto in separate counterparts, each of which when so executed shall be deemed an original, but all of which together shall constitute one and the same instrument. This Written Consent may be executed by manual, facsimile, conformed or electronic (including PDF) signature, with the same effect as an executed written original.

[Signature Page to Follow]

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

**SHAREHOLDER**:

John Owoc (Oct 24, 2022 12:02 EDT)

John H. Owoc

**BOARD OF DIRECTORS**:

John Owoc (Oct 24, 2022 12:02 EDT)

John H. Owoc

**EXHIBIT B**

**Jan. 7 Written Consent**

# VITAL PHARMACEUTICALS, INC.
(a Florida corporation)

**ACTION BY UNANIMOUS WRITTEN CONSENT**
**OF**
**THE SHAREHOLDER AND**
**BOARD OF DIRECTORS**
**IN LIEU OF MEETING**
**Effective: January 7, 2023**

_____

The undersigned, comprised of the sole shareholder (the "Shareholder") and, after giving effect to their respective elections, all the members (each a "Director") of the Board of Directors (the "Board" or "Board of Directors") of Vital Pharmaceuticals, Inc., a Florida corporation (the "Corporation" or "DIP Borrower"), hereby (a) take, authorize and adopt the following actions and matters, without and in lieu of a meeting, pursuant to Sections 607.0704 (as applicable to the Shareholder) and 607.0821 (as applicable to the Board of Directors), of the Florida Business Corporation Act (Chapter 607, Florida Statutes) (the "FBCA"), (b) waive any and all notices and requirements for notice, including of the time, date, place and/or purpose of or with regard to any meeting of the Shareholder and/or the Board of Directors and of or with regard to the actions and matters set forth in this action by unanimous written consent of the Shareholder and Board of Directors (this "Written Consent"), and (c) consent and agree to the authorization, approval and adoption of the following resolutions (collectively, the "Resolutions") as provided or described below:

**WHEREAS**, on October 10, 2022, the Corporation and certain of its affiliates (together with the Corporation, collectively, the "Debtors" or the "Company") filed voluntary petitions for relief under Title 11 of the United States Code (as now or hereafter in effect, or any successor thereto, the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") (such cases being jointly administered under Case No. 22-17842, and are referred to herein as the "Chapter 11 Cases"), and continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code;

**WHEREAS**, in connection with the Chapter 11 Cases, the Corporation entered into that certain Superpriority Secured Debtor-In-Possession Credit Agreement (as amended, restated, amended and restated, supplemented and/or otherwise modified from time to time, the "DIP Credit Agreement"), and each other Debtor (other than the DIP Borrower) party thereto from time to time as guarantors (collectively the "DIP Guarantors"), the lenders party thereto from time to time (collectively, the "DIP Lenders") and Truist Bank, as administrative agent for the DIP Lenders (in such capacity, the "DIP Agent");

**WHEREAS**, on October 14, 2022, the Bankruptcy Court entered the *Interim Order (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing and (VII) Granting Related Relief* [ECF No. 120] authorizing, on an interim basis, the DIP Borrower and DIP Guarantors to execute, deliver and perform their obligations under the DIP Credit Agreement and all other documents executed and delivered in connection therewith (collectively, the "DIP Credit Documents");

**WHEREAS**, on November 1, 2022, the United States Trustee appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "Committee"), which membership was subsequently reconstituted on November 23, 2022;

**WHEREAS**, certain Defaults and an Event of Default (each as defined under the DIP Credit Agreement) have occurred and are continuing;

**WHEREAS**, the DIP Agent, the Committee, and other constituents have negotiated proposed modifications (the "DIP Amendments") to the DIP Credit Documents and final DIP order that, among other things, resolve the Committee's objections to the DIP Credit Documents, resolve the existing Defaults and Event of Default to the satisfaction of the DIP Agent and DIP Lenders, provides the DIP Borrower and DIP Guarantors, their bankruptcy estates, and other stakeholders with certain benefits, including, but not limited to, additional time to achieve the milestones contained in the DIP Credit Agreement;

**WHEREAS**, implementation of the DIP Amendments by the Company and entry of an order by the Bankruptcy Court approving the transactions contemplated by the DIP Credit Agreement, as amended, on a final basis are essential to the Company's ability to receive additional extensions pursuant to the credit facility established under the DIP Credit Agreement;

**WHEREAS**, on October 26, 2022, the Corporation resolved to appoint a restructuring committee (the "Restructuring Committee"), the sole member of which is Mr. Steven G. Panagos ("Mr. Panagos"), to, among other things, oversee the Company's restructuring and the management of the Chapter 11 Cases;

**WHEREAS**, after consultation with the Company, its management and advisors, and due consideration, the Restructuring Committee recommended that the Company approve and implement the DIP Amendments;

**WHEREAS**, the Corporation retained Huron Consulting Group, LLC pursuant to an engagement letter dated September 15, 2022, as amended thereafter on October 19, 2022, and

November 28, 2022, respectively (the "Engagement Letter"), to, among other things, provide the services of John DiDonato as the Corporation's Chief Transformation Officer (the "CTO");

WHEREAS, in compliance with the DIP Amendments, the Corporation wishes to: (1) memorialize the scope of authority of the CTO; specifically providing the CTO with authority to oversee the Company's treasury and cash management functions, including at a minimum: (a) oversight of treasury and cash management functions, including (i) preparation and maintenance of cash flow forecasts, (ii) management of cash disbursements, and (iii) liquidity enhancement and cost savings initiatives; (b) oversight of purchasing functions including (x) daily monitoring and analysis of purchase orders issued the previous day, goods received, and vendor relationships, (y) review of all purchase orders issued to ensure alignment with the Budget (as defined in the DIP Credit Agreement), and cancelling any purchase order the CTO determines is not aligned with the Budget (as defined in the DIP Credit Agreement), and (z) for purchase orders (other than for materials, excluding purchases from Crown Holdings, Inc. and affiliates) exceeding $75,000 individually or in the aggregate, approval thereof before issuance; and (c) review of restructuring related expenses and professional fee invoices and fee statements or applications; and (2) have the CTO report directly to the Restructuring Committee;

WHEREAS, on December 29, 2022, the Shareholder of the Corporation and certain of the other members of the Board of Directors, decided to appoint John Barrett ("Mr. Barrett") to the Board of Directors, thereafter, the Shareholder and the Board of Directors decided that they no longer wished to appoint Mr. Barrett to the Board of Directors;

WHEREAS, on December 29, 2022, immediately after the appointment of Mr. Barrett, Dr. Guillermo Escalante ("Dr. Escalante") resigned as a member of the Board of Directors and the Shareholder and the other members of the Board of Directors, after giving effect to their election, wish to appoint Stephen S. Gray ("Mr. Gray") to replace Dr. Escalante on the Board of Directors; and

WHEREAS, the Shareholder, and, after giving effect to their election, the Board of Directors: (a) have each reviewed the recitals, the DIP Amendments and Resolutions included herein and the form, content, terms and provisions of each exhibit annexed hereto and referenced herein, and (b) have each had the opportunity to ask questions of and receive responses from senior management of, and advisors to, the Corporation regarding the Resolutions, and the actions and matters set forth herein, have determined that the actions and matters described, provided for, authorized and ratified herein are desirable for, and are fair to and in the best interests of, the Corporation.

Removal of and Election of the Board of Directors

NOW, THEREFORE, BE IT RESOLVED, that the Shareholder by and through this Resolution hereby removes Mr. Barrett as a member of the Board; and be it further

RESOLVED, after giving effect to the foregoing removal, in connection with the election of the Board of Directors and the members thereof, the following persons be and hereby are, designated, elected and appointed to serve as the sole Directors (and members of the Board of Directors) (collectively, the "Initial Directors"), in each case, to serve as such, in accordance with

the articles of incorporation of the Corporation (the "<u>Articles</u>") and the bylaws of the Corporation (the "<u>Bylaws</u>"), each until their respective successor is duly elected and qualified, or until his earlier death, resignation or removal for cause:

1. John H. Owoc, as Chairman of the Board
2. Eric Hillman ("<u>Mr. Hillman</u>")
3. Bob Dickinson ("<u>Mr. Dickinson</u>")
4. Mr. Panagos

<u>Approval of the DIP Amendments</u>

**NOW, THEREFORE, BE IT RESOLVED**, that, after giving effect to the election of the Initial Directors, the Board hereby determines that the approval of the transactions contemplated by the DIP Amendments and the execution, delivery and performance by the Corporation of the documents necessary to memorialize and implement the DIP Amendments on the terms and conditions as substantially described or provided to the Board will benefit the Corporation and is in the best interest of the Corporation and its shareholders; and be it further

**RESOLVED**, that, to give effect to and implement the DIP Amendments, the Corporation is hereby authorized, and that each of the President, Chief Executive Officer, each Vice President, the CTO (either existing now or later appointed consistent with the terms of the DIP Credit Documents), General Counsel, Chief Financial Officer, Treasurer and/or Secretary of the Corporation (collectively, the "<u>Authorized Officers</u>"), acting alone or in combination, shall be, and hereby are, authorized, directed, and empowered, with full power of delegation, on behalf of and in the name of the Corporation, to execute, verify and/or file, or cause to be filed and/or executed or verified (or direct others to do so on their behalf as provided herein), and to amend, supplement or otherwise modify from time to time (including, without limitation, any amendments or supplements to the DIP Credit Agreement that increase the amount of credit available thereunder) any of the DIP Credit Documents to which the Corporation is a party, and to take any and all actions that each such Authorized Officer deems necessary or appropriate, each in connection with the Chapter 11 Cases and/or any post-petition financing or any cash collateral usage contemplated hereby or thereby, but solely consistent with the terms of these Resolutions; and it is further

**RESOLVED**, that each Authorized Officer is hereby authorized, directed and empowered to do or cause to be done all such acts or things and to execute and deliver, or cause to be executed and delivered, under seal or otherwise, all such documents or other affidavits, agreements, certificates, documents, instruments, notices, recordings and filings (including, without limitation, any and all certificates and notices required or permitted to be given or made under the terms, conditions or provisions of any of the agreements, documents or instruments executed therewith), in the name and on behalf of the Corporation on behalf of each of the Corporation's direct or indirect subsidiaries, as any such Authorized Officer, in his or her discretion, may deem necessary, proper or advisable to effectuate or carry out the purposes and intent of the foregoing Resolutions and to perform the obligations of such subsidiary under all affidavits, agreements, certificates, documents, instruments, recordings and filings executed or delivered on behalf of such subsidiary in connection with the DIP Credit Documents to which such subsidiary is a party, and all acts solely consistent with these Resolutions of any Authorized Officer taken pursuant to the authority granted herein, or having occurred prior to the date hereof in order to effect such transactions, are

hereby approved, adopted, ratified, and confirmed in all respects; and it is further

**RESOLVED**, without limiting the scope of services set forth in the Engagement Letter, the CTO is hereby vested with authority to oversee the Company's treasury and cash management functions, including at a minimum: (a) oversight of treasury and cash management functions, including (i) preparation and maintenance of cash flow forecasts, (ii) management of cash disbursements, and (iii) liquidity enhancement and cost savings initiatives; (b) oversight of purchasing functions including (i) daily monitoring and analysis of purchase orders issued the previous day, goods received, and vendor relationships, (ii) review of all purchase orders issued to ensure alignment with the Budget (as defined in the DIP Credit Agreement), and cancelling any purchase order the CTO determines is not aligned with the Budget (as defined in the DIP Credit Agreement), and (iii) for purchase orders (other than for materials, excluding purchases from Crown Holdings, Inc. and affiliates) exceeding $75,000 individually or in the aggregate, approval thereof before issuance; and (c) review of restructuring related expenses and professional fee invoices and fee statements or applications; and it is further

**RESOLVED**, that the CTO shall report directly to the Restructuring Committee and not the Shareholder.

Election of the Additional Board of Directors

**NOW, THEREFORE, BE IT RESOLVED**, that, after giving effect to the approval of the DIP Amendments and related resolutions above, in connection with the election of the Board of Directors and the members thereof, Mr. Gray is designated, elected and appointed to serve as a Director (and as a member of the Board of Directors) in accordance with the Articles and the Bylaws until his respective successor is duly elected and qualified, or until his earlier death, resignation or removal for cause; and be it further

**RESOLVED**, with the election of Mr. Gray, the Board shall be comprised of the following individuals:

1. John H. Owoc, as Chairman of the Board
2. Mr. Hillman
3. Mr. Dickinson
4. Mr. Panagos
5. Mr. Gray

Recommendation of Amendment to Articles of Incorporation

**WHEREAS**, after giving effect to the additional election to the Board above, the Board desires to recommend an amendment to the Articles to amend the authority of the Shareholder to unilaterally amend the Bylaws and the Articles.

**NOW, THEREFORE, BE IT RESOLVED**, that, after giving effect to their election, the form, terms and provisions of the Articles of Amendment to Articles of Incorporation of the Corporation (the "Articles Amendment"), in the form attached to this Written Consent as Exhibit A, be and they hereby are, approved and adopted in all respects (including all the amendments to

the Articles included therein) by the Board, which constitutes the approval and adoption of the Articles Amendment by the Board; and be it further

**RESOLVED**, that the Board hereby recommends that the Shareholder approves the Articles Amendment in accordance with Section 607.1003 of the FBCA.

Approval of Amendment to Articles of Incorporation

**NOW, THEREFORE, BE IT RESOLVED**, that, upon adoption of and given the resolution by the Board above recommending to the Shareholder that the Shareholder approves the Articles Amendment, pursuant to Section 607.1003 of the FBCA, the Shareholder hereby approves the Articles Amendment (and the amendments to the Articles included therein), as set forth in Exhibit A; and be it further

**RESOLVED,** that John H. Owoc, as President of the Corporation, be, and hereby is, authorized, empowered and directed, for and in the name and on behalf of the Corporation, to execute the Articles Amendment (in the form attached in Exhibit A) and to file the same, together with any required articles or consent(s), with the Department of State of the State of Florida, all pursuant to and in accordance with the applicable provisions of the FBCA, and to implement and effectuate the terms and provisions of the Articles, as amended by the Articles Amendment.

Amendment to Bylaws

**NOW, THEREFORE, BE IT RESOLVED**, that, to implement the DIP Amendments, the Board of Directors hereby adopt the following amendments to the Bylaws (the "Bylaws Amendments"):

(i)      Section 2.14 of the Bylaws is hereby amended to add the following new provision to the end of such section:

> "Notwithstanding anything to the contrary in these Bylaws, the shareholders of the Corporation shall only have the right to elect to the Board those persons nominated and appointed by the Board to serve as directors, and no person may serve on the Board unless such person has been nominated and appointed to serve by the then current members of the Board."

(ii)     Section 3.1 of the Bylaws is deleted and replaced in its entirety with the following:

> "**Section 3.1 Number, Election and Term.** The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors. The Board of Directors shall consist of five (5) members, and at all times shall include three (3) independent directors (the "Independent Directors"). An individual may serve as an Independent Director only if and so long as such person (i) does not have a relationship by blood (to the second (2nd) degree of consanguinity), marriage or adoption to John Henry Owoc and (ii) is not an employee, officer, manager or consultant of, or independent contractor or advisor to, the Corporation or any of its affiliates (other than in respect of service on such board or other equivalent governing

body). The initial Independent Directors shall be Bob Dickinson, Stephen S. Gray, and Steven G. Panagos (collectively, the "Initial Independent Directors"). A director shall hold office until the annual meeting for the year in which his term expires and shall serve until his death, resignation, retirement, disqualification or removal from office, which removal shall only occur pursuant to Section 3.15 of these Bylaws. Notwithstanding anything to the contrary in these Bylaws, no individual shall be elected to serve on the Board of Directors unless such individual has been nominated and appointed to serve by the then current Board of Directors."

(iii)    Section 3.2 of the Bylaws is deleted and replaced in its entirety with the following:

"**Section 3.2 Vacancies**. A director may resign at any time by giving written notice to the Corporation, the Board of Directors or the President. Such resignation shall take effect when the notice is delivered unless the notice specifies a later effective date, in which event the Board of Directors may fill the pending vacancy before the effective date if they provide that the successor does not take office until the effective date. Any vacancy occurring on the Board of Directors and any directorship to be filled by reason of an increase in the size of the Board of Directors may only be filled by the affirmative vote of a majority of the current directors though less than a quorum of the Board of Directors; provided, however, any vacancy in a directorship of an Independent Director may only be filled by the affirmative vote of a majority of the current Independent Directors. A director elected to fill a vacancy shall be elected for the unexpired term of his predecessor in office."

(iv)    Section 3.9 of the Bylaws is deleted and replaced in its entirety with the following:

"**Section 3.9 Quorum; Required Votes Presumption of Assent.** A quorum for the transaction of business shall consist of no less than three (3) directors, two (2) of whom must be Independent Directors (or, in the event that any such director is no longer serving on the Board of Directors, such director's successor, which, in the case of any of the Independent Directors, each such successor must also be independent). The act of a majority of the directors present at a meeting at which a quorum is present when the vote is taken shall be the act of the Board of Directors."

(v)    Section 3.15 of the Bylaws is deleted and replaced in its entirety with the following:

"**Section 3.15 Removal of Directors**. At a meeting of the Board of Directors called expressly for that purpose, at which a quorum is present, one or more directors may be removed, solely for good cause, by a vote of a majority of directors present at such meeting (excluding the vote of any director or directors proposed to be removed), and, notwithstanding anything to the contrary in these Bylaws, the shareholders may not remove an individual serving on the Board of Directors unless the Board of Directors has voted

to remove such director in accordance with this Section 3.15. With respect to any director that is the subject of an independent director agreement with the Corporation, "good cause" shall have the same meaning as the definition of "cause" in such independent director agreement."

(vi) Article 9 of the Bylaws is deleted and replaced in its entirety with the following:

"**ARTICLE 9**
**AMENDMENTS OF BYLAWS**

Unless otherwise required by law, these Bylaws may be altered, amended or repealed or new Bylaws may be adopted solely by action of the Board of Directors.  In the event any law authorizes or otherwise permits the shareholders to alter, amend or repeal any Bylaws or to adopt new Bylaws, the shareholders shall not do so unless the Board of Directors has first approved such alteration, amendment or repeal of such Bylaws or adoption of new Bylaws and recommended to the shareholders that they approve the same."

General Ratification and Authorization

**NOW, THEREFORE, BE IT RESOLVED**, that in addition to and without limiting the foregoing, the proper officers of the Corporation be, and each of them hereby is, for and in the name and on behalf of the Corporation, authorized to take, or cause to be taken, such further action, to make such filings and certifications, to deliver such notices, to execute and deliver, or cause to be delivered, all such agreements, instruments, notices and documents, to pay such fees and expenses, and to do all such things, in each case, as he or she may deem necessary or appropriate in order to effect and implement the purposes or to carry out the intent of the foregoing Resolutions (as conclusively evidenced by the execution, delivery, filing or performance of any such agreement, document or action, as the case may be), and any and all actions contemplated herein or heretofore taken by the directors, officers, employees, agents or shareholders of the Corporation in connection with the subject of the foregoing recitals and Resolutions be, and each of them hereby is, ratified, confirmed, approved and adopted in all respects as the act and deed of the Corporation.

[Signatures appear on the following page.]

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

**Shareholder**:

Jack Owoc (Jan 6, 2023 12:45 EST)

John H. Owoc

**Board of Directors**:

Jack Owoc (Jan 6, 2023 12:45 EST)

John H. Owoc

_____

Bob Dickinson

_____

Stephen S. Gray

_____

Eric Hillman

_____

Steven G. Panagos

**IN WITNESS WHEREOF**, the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

**Shareholder:**

_____

John H. Owoc

**Board of Directors:**

_____

John H. Owoc

*Bob Dickinson*
Bob Dickinson (Jan 6, 2023 16:55 EST)
_____

Bob Dickinson

*Stephen Gray*
Stephen Gray (Jan 6, 2023 17:36 EST)
_____

Stephen S. Gray

*Eric Hillman*
_____

Eric Hillman

*Stgl*
Steven G Panagos (Jan 6, 2023 16:56 EST)
_____

Steven G. Panagos

**<u>Exhibit A</u>**

(See Attached)

# ARTICLES OF AMENDMENT
## TO
## ARTICLES OF INCORPORATION
## OF
## VITAL PHARMACEUTICALS, INC.,
### a Florida corporation

Dated: January ___, 2023

Pursuant to the provisions of Section 607.1006, Florida Statutes, **VITAL PHARMACEUTICALS, INC.**, a Florida corporation (the "Corporation"), document number P96000040071, that filed its Articles of Incorporation with the Florida Department of State on May 7, 1996, hereby adopts the following amendment to its Articles of Incorporation:

The Corporation's Articles of Incorporation are hereby amended by deleting Article Ten thereof in its entirety and inserting a new Article Ten to read as follows:

"ARTICLE TEN

### Amendment to By-laws and Articles

The board of directors of the corporation shall have the sole authority to adopt, alter, amend or repeal the by-laws of the corporation. In the event any law authorizes or otherwise permits the shareholders to alter, amend or repeal any of the by-laws of the corporation or to adopt new by-laws of the corporation, the shareholders shall not do so unless the board of directors of the corporation has first approved such alteration, amendment or repeal of such by-laws or adoption of new by-laws and recommended to the shareholders that they approve the same.

In the event any law authorizes or otherwise permits the shareholders to alter, amend, restate, amend and restate or repeal any of the articles of incorporation of the corporation or to adopt new articles of incorporation of the corporation, the shareholders shall not do so unless the board of directors of the corporation has first approved such alteration, amendment, restatement, amendment and restatement or repeal of such articles of incorporation or adoption of new articles of incorporation and recommended to the shareholders that they approve the same."

This amendment was approved by action by written consent of the sole shareholder and all the members of the board of directors of the Corporation dated as of January __, 2023. The number of votes cast for the amendment by the shareholder was sufficient for approval.

[Signature Page to Follow]

CHAR1\1967064v12
11824319-17

The undersigned has executed these Articles of Amendment as of the date first written above.

VITAL PHARMACEUTICALS, INC.,
a Florida corporation

By: _____
      John H. Owoc, President

# EXHIBIT C

**August 13, 2020 Bylaws**

**BYLAWS**

**OF**

**VITAL PHARMACEUTICALS, INC.**

**(a Florida Corporation)**

# INDEX

**PAGE**

ARTICLE 1 OFFICES ................................................................................................ 1

    **Section 1.1**    **Registered Office** ....................................................... 1

    **Section 1.2**    **Other Offices** .............................................................. 1

ARTICLE 2 MEETINGS OF SHAREHOLDERS ................................................... 1

    **Section 2.1**    **Place** ............................................................................. 1

    **Section 2.2**    **Time of Annual Meeting** ........................................... 1

    **Section 2.3**    **Call of Special Meetings** ........................................... 1

    **Section 2.4**    **Conduct of Meetings** ................................................. 1

    **Section 2.5**    **Notice and Waiver of Notice** .................................... 1

    **Section 2.6**    **Quorum** ....................................................................... 2

    **Section 2.7**    **Voting per Share** ........................................................ 2

    **Section 2.8**    **Voting of Shares** ........................................................ 3

    **Section 2.9**    **Proxies** ........................................................................ 3

    **Section 2.10**   **Shareholder List** ....................................................... 4

    **Section 2.11**   **Action Without Meeting** ........................................... 4

    **Section 2.12**   **Fixing Record Date** ................................................... 4

    **Section 2.13**   **Inspectors and Judges** .............................................. 5

    **Section 2.14**   **Voting for Directors** .................................................. 5

    **Section 2.15**   **Voting Trusts** ............................................................. 5

    **Section 2.16**   **Shareholders' Agreements** ...................................... 5

ARTICLE 3 DIRECTORS ......................................................................................... 6

    **Section 3.1**    **Number, Election and Term** ..................................... 6

    **Section 3.2**    **Vacancies** ................................................................... 6

    **Section 3.3**    **Powers** ........................................................................ 6

    **Section 3.4**    **Duties of Directors** .................................................... 6

    **Section 3.5**    **Place of Meetings** ...................................................... 7

    **Section 3.6**    **Annual Meeting** ......................................................... 7

    **Section 3.7**    **Regular Meetings** ...................................................... 7

    **Section 3.8**    **Special Meetings and Notice** .................................... 7

i

Section 3.9     **Quorum; Required Votes Presumption of Assent** ................................. 7

Section 3.10    **Action Without Meeting** ................................................... 8

Section 3.11    **Conference Telephone or Similar Communications Equipment Meetings** ................................................... 8

Section 3.12    **Committees** ................................................... 8

Section 3.13    **Compensation of Directors** ................................................... 8

Section 3.14    **Chairman of the Board** ................................................... 9

Section 3.15    **Removal of Directors** ................................................... 9

Section 3.16    **Director Conflicts of Interest** ................................................... 9

ARTICLE 4 OFFICERS ................................................... 9

Section 4.1     **Positions** ................................................... 9

Section 4.2     **Election of Specified Officers by Board** ................................................... 9

Section 4.3     **Election or Appointment of Other Officers** ................................................... 9

Section 4.4     **Salaries** ................................................... 10

Section 4.5     **Term; Resignation** ................................................... 10

Section 4.6     **President** ................................................... 10

Section 4.7     **Vice Presidents** ................................................... 10

Section 4.8     **Secretary** ................................................... 10

Section 4.9     **Treasurer** ................................................... 11

Section 4.10    **Other Officers, Employees and Agents** ................................................... 11

ARTICLE 5 CERTIFICATES FOR SHARES ................................................... 11

Section 5.1     **Issue of Certificates** ................................................... 11

Section 5.2     **Legends for Preferences and Restrictions on Transfer** ................................................... 11

Section 5.3     **Facsimile Signatures** ................................................... 12

Section 5.4     **Lost Certificates** ................................................... 12

Section 5.5     **Transfer of Shares** ................................................... 12

Section 5.6     **Registered Shareholders** ................................................... 12

ARTICLE 6 INDEMNIFICATION ................................................... 12

ARTICLE 7 BOOKS AND RECORDS ................................................... 13

Section 7.1     **Books and Records** ................................................... 13

Section 7.2     **Shareholders' Inspection Rights** ................................................... 13

ARTICLE 8 GENERAL PROVISIONS ..................................................................... 14

    **Section 8.1**    **Dividends** ............................................................. **14**

    **Section 8.2**    **Reserves** ............................................................... **14**

    **Section 8.3**    **Checks** .................................................................. **14**

    **Section 8.4**    **Fiscal Year** ........................................................... **14**

    **Section 8.5**    **Seal** ....................................................................... **14**

    **Section 8.6**    **Gender** .................................................................. **14**

ARTICLE 9 AMENDMENTS OF BYLAWS ............................................................ 14

# BYLAWS OF

# VITAL PHARMACEUTICALS, INC.

## ARTICLE 1
## OFFICES

**THESE BYLAWS** (these "Bylaws") of Vital Pharmaceuticals, Inc., a Florida corporation (the "Corporation"), are made as of the 13th day of August, 2020.

**Section 1.1    Registered Office**.  The registered office of the Corporation shall be such location as the Board of Directors of the Corporation (the "Board of Directors" or "Board") may designate from time to time.

**Section 1.2    Other Offices**.  The Corporation also may have offices at such other places, either within or without the State of Florida, as the Board of Directors may designate from time to time or as the business of the Corporation may require.

## ARTICLE 2
## MEETINGS OF SHAREHOLDERS

**Section 2.1    Place**.  All annual meetings of shareholders of the Corporation shall be held at such place, within or without the State of Florida, as may be designated by the Board of Directors and stated in the notice of the meeting or in a duly executed waiver of notice thereof. Special meetings of shareholders may be held at such place, within or without the State of Florida, and at such time as shall be stated in the notice of the meeting or in a duly executed waiver of notice thereof.

**Section 2.2    Time of Annual Meeting**.  Annual meetings of shareholders shall be held on such date and at such time fixed, from time to time, by the Board of Directors, provided that there shall be an annual meeting held every year at which the shareholders shall elect a Board of Directors and transact such other business as may properly be brought before the meeting.

**Section 2.3    Call of Special Meetings**.  Special meetings of the shareholders shall be held if called by the Board of Directors, the President, or if the holders of not less than fifty percent (50%) of all the votes entitled to be cast on any issue proposed to be considered at the proposed special meeting sign, date, and deliver to the Secretary one or more written demands for the meeting describing the purpose or purposes for which it is to be held.  Business transacted at any special meeting shall be confined to the purposes stated in the notice thereof.

**Section 2.4    Conduct of Meetings**.  The Chairman of the Board (or in his absence, the President or such other designee of the Chairman of the Board) shall preside at the annual and special meetings of shareholders and shall be given full discretion in establishing the rules and procedures to be followed in conducting the meetings, except as otherwise provided by law or in these Bylaws.

**Section 2.5    Notice and Waiver of Notice**.  Except as otherwise provided by law, written or printed notice stating the place, day and hour of the meeting and, in the case of a

special meeting, the purpose or purposes for which the meeting is called, shall be delivered not less than ten (10) nor more than sixty (60) days before the day of the meeting, either personally or by first-class mail, by or at the direction of the President, the Secretary, or the officer or person calling the meeting, to each shareholder of record entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail addressed to the shareholder at his address as it appears on the stock transfer books of the Corporation, with postage thereon prepaid. If a meeting is adjourned to another time and/or place, and if an announcement of the adjourned time and/or place is made at the meeting, it shall not be necessary to give notice of the adjourned meeting unless the Board of Directors, after adjournment, fixes a new record date for the adjourned meeting. Whenever any notice is required to be given to any shareholder, a waiver thereof in writing signed by the person or persons entitled to such notice, whether signed before, during or after the time of the meeting stated therein, and delivered to the Corporation for inclusion in the minutes or filing with the corporate records, shall be equivalent to the giving of such notice. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the shareholders need be specified in any written waiver of notice. Attendance of a person at a meeting shall constitute a waiver of (a) lack of or defective notice of such meeting, unless the person objects at the beginning to the holding of the meeting or the transacting of any business at the meeting, or (b) lack of defective notice of a particular matter at a meeting that is not within the purpose or purposes described in the meeting notice, unless the person objects to considering such matter when it is presented.

**Section 2.6    Quorum.** Shares entitled to vote as a separate voting group may take action on a matter at a meeting only if a quorum of these shares exists with respect to that matter. Except as otherwise provided in the Articles of Incorporation of the Corporation (the "Articles of Incorporation") or by law, a majority of the shares entitled to vote on the matter by each voting group, represented in person or by proxy, shall constitute a quorum at any meeting of shareholders. If a quorum is present, the affirmative vote of the majority of the shares represented at the meeting and entitled to vote on the subject matter shall be the act of the shareholders unless otherwise provided in the Articles of Incorporation, these Bylaws or by law. If less than a majority of outstanding shares entitled to vote are represented at a meeting, a majority of the shares so represented may adjourn the meeting from time to time without further notice. After a quorum has been established at any shareholders' meeting, the subsequent withdrawal of shareholders, so as to reduce the number of shares entitled to vote at the meeting below the number required for a quorum, shall not affect the validity of any action taken at the meeting or any adjournment thereof. Once a share is represented for any purpose at a meeting, it is deemed present for quorum purposes for the remainder of the meeting and for any adjournment of that meeting unless a new record date is or must be set for that adjourned meeting.

**Section 2.7    Voting per Share.** Except as otherwise provided in the Articles of Incorporation or by law, each shareholder is entitled to one (1) vote for each outstanding share held by him on each matter voted at a shareholders' meeting. Shares of stock of the Corporation owned by another corporation, the majority of the voting stock of which is owned or controlled by the Corporation, and shares of stock of the Corporation held by it in a fiduciary capacity shall not be voted, directly or indirectly, at any meeting, and shall not be counted in determining the

2

total number of shares outstanding at any given time. At each election of directors, every shareholder entitled to vote at such election shall have the right to vote, in person or by proxy, the number of shares owned by him for as many persons as there are directors to be elected at that time and for whose election he has a right to vote.

**Section 2.8** **Voting of Shares**. A shareholder may vote at any meeting of shareholders of the Corporation, either in person or by proxy. Shares standing in the name of another corporation, domestic or foreign, may be voted by the officer, agent or proxy designated by the bylaws of such corporate shareholder or, in the absence of any applicable bylaw, by such person or persons as the board of directors of the corporate shareholder may designate. In the absence of any such designation, or, in case of conflicting designation by the corporate shareholder, the president, any vice president, the secretary and the treasurer of the corporate shareholder, in that order, shall be presumed to be fully authorized to vote such shares. Shares held by an administrator, executor, guardian, personal representative, or conservator may be voted by him, either in person or by proxy, without a transfer of such shares into his name. Shares standing in the name of a trustee may be voted by him, either in person or by proxy, but no trustee shall be entitled to vote shares held by him without a transfer of such shares into his name or the name of his nominee. Shares held by or under the control of a receiver, a trustee in bankruptcy proceedings, or an assignee for the benefit of creditors may be voted by such person without the transfer thereof into his name. If shares stand of record in the names of two or more persons, whether fiduciaries, members of a partnership, joint tenants, tenants in common, tenants by the entirety or otherwise, or if two or more persons have the same fiduciary relationship respecting the same shares, unless the Secretary of the Corporation is given notice to the contrary and is furnished with a copy of the instrument or order appointing them or creating the relationship wherein it is so provided, then acts with respect to voting shall have the following effect: (a) if only one votes, in person or by proxy, his act binds all; (b) if more than one vote, in person or by proxy, the act of the majority so voting binds all; (c) if more than one vote, in person or by proxy, but the vote is evenly split on any particular matter, each faction is entitled to vote the share or shares in question proportionally; or (d) if the instrument or order so filed shows that any such tenancy is held in unequal interest, a majority or a vote evenly split for purposes hereof shall be a majority or a vote evenly split in interest. A shareholder whose shares are pledged shall be entitled to vote such shares until the shares have been transferred into the name of the pledgee, and thereafter the pledgee or his nominee shall be entitled to vote the shares so transferred. On or after the date on which written notice of redemption of redeemable shares has been mailed to the holders thereof and a sum sufficient to redeem such shares has been deposited with a bank or trust company with irrevocable instrument and authority to pay the redemption price to the holders thereof upon surrender of certificates therefor, such shares shall not be entitled to vote on any matter and shall not be deemed to be outstanding shares. The principles of this paragraph shall apply, insofar as possible, to execution of proxies, waivers, consents, or objections and for the purpose of ascertaining the presence of a quorum.

**Section 2.9** **Proxies**. Any shareholder of the Corporation, other person entitled to vote on behalf of a shareholder pursuant to law, or attorney-in-fact for such persons may vote the shareholder's shares in person or by proxy. Any shareholder of the Corporation may appoint a proxy to vote or otherwise act for him by signing an appointment form, either personally or by his attorney-in-fact. An executed telegram or cablegram appearing to have been transmitted by

3

such person, or a photographic, photostatic, or equivalent reproduction of an appointment form, shall be deemed a sufficient appointment form. An appointment of a proxy is effective when received by the Secretary of the Corporation or such other officer or agent which is authorized to tabulate votes, and shall be valid for up to 11 months, unless a longer period is expressly provided in the appointment form. The death or incapacity of the shareholder appointing a proxy does not affect the right of the Corporation to accept the proxy's authority unless notice of the death or incapacity is received by the secretary or other officer or agent authorized to tabulate votes before the proxy exercises his authority under the appointment. An appointment of a proxy is revocable by the shareholder unless the appointment is coupled with an interest.

**Section 2.10 Shareholder List**. After fixing a record date for a meeting of shareholders, the Corporation shall prepare an alphabetical list of the names of all its shareholders who are entitled to notice of the meeting, arranged by voting group with the address of, and the number and class and series, if any, of shares held by each. The shareholders' list must be available for inspection by any shareholder for a period of ten (10) days prior to the meeting or such shorter time as exists between the record date and the meeting and continuing through the meeting at the Corporation's principal office, at a place identified in the meeting notice in the city where the meeting will be held, or at the office of the Corporation's transfer agent or registrar. Any shareholder of the Corporation or his agent or attorney is entitled on written demand to inspect the shareholders' list (subject to the requirements of law), during regular business hours and at his expense, during the period it is available for inspection. The Corporation shall make the shareholders' list available at the meeting of shareholders, and any shareholder or his agent or attorney is entitled to inspect the list at any time during the meeting or any adjournment. If the requirements of this Section have not been substantially complied with, the meeting on demand of any shareholders in person or by proxy, shall be adjourned until the requirements are complied with. If no such demand is made, failure to comply with the requirements of this Section shall not affect the validity of any action taken at such meeting.

**Section 2.11 Action Without Meeting**. Any action required by law to be taken at a meeting of shareholders, or any action that may be taken at a meeting of shareholders, may be taken without a meeting or notice if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock constituting the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted with respect to the subject matter thereof, and such consent shall have the same force and effect as a vote of shareholders taken at such a meeting. Within ten days after obtaining such authorization by written consent, notice shall be given to those shareholders who have not consented in writing. The notice shall fairly summarize the material features of the authorized action and, if the action be a merger, consolidation or sale or exchange of assets for which dissenters rights are provided by law, the notice shall contain a clear statement of the right of shareholders dissenting therefrom to be paid the fair value of their shares upon compliance with further provisions as provided by law regarding the rights of dissenting shareholders.

**Section 2.12 Fixing Record Date**. For the purpose of determining shareholders entitled to notice of or to vote at any meeting of shareholders or any adjournment thereof or entitled to receive payment of any dividend, or in order to make a determination of shareholders for any other proper purposes, the Board of Directors may fix in advance a date as the record

4

date for any such determination of shareholders, such date in any case to be not more than sixty (60) days, and, in case of a meeting of shareholders, not less than ten (10) days, prior to the date on which the particular action requiring such determination of shareholders is to be taken.  If no record date is fixed for the determination of shareholders entitled to notice of or to vote at a meeting of shareholders, or shareholders entitled to receive payment of a dividend, the date on which the notice of the meeting is mailed or the date on which the resolutions of the Board of Directors declaring such dividend is adopted, as the case may be, shall be the record date for such determination of shareholders.  When a determination of shareholders entitled to vote at any meeting of shareholders has been made as provided in this Section, such determination shall apply to any adjournment thereof, except where the Board of Directors fixes a new record date for the adjourned meeting or as required by law.

**Section 2.13  Inspectors and Judges**.   The Board of Directors in advance of any meeting may, but need not, appoint one or more inspectors of election or judges of the vote, as the case may be, to act at the meeting or any adjournment(s) thereof.  If any inspector or inspectors, or judge or judges, are not appointed, the person presiding at the meeting may, but need not, appoint one or more inspectors or judges.  In case any person who may be appointed as an inspector or judge fails to appear or act, the vacancy may be filled by the Board of Directors in advance of the meeting, or at the meeting by the person presiding thereat.  The inspectors or judges, if any, shall determine the number of shares of stock outstanding and the voting power of each, the shares of stock represented at the meeting, the existence of a quorum, the validity and effect of proxies, and shall receive votes, ballots and consents, hear and determine all challenges and questions arising in connection with the right to vote, count and tabulate votes, ballots and consents, determine the result, and do such acts as are proper to conduct the election or vote with fairness to all shareholders.  On request of the person presiding at the meeting, the inspector or inspectors or judge or judges, if any, shall make a report in writing of any challenge, question or matter determined by him or them, and execute a certificate of any fact found by him or them.

**Section 2.14  Voting for Directors**.   Unless otherwise provided in the Articles of Incorporation, directors shall be elected by a plurality of the votes cast by the shares entitled to vote in the election at a meeting at which a quorum is present.

**Section 2.15  Voting Trusts**.   Any number of shareholders of the Corporation may create a voting trust for the purpose of conferring upon a trustee or trustees the right to vote or otherwise represent their shares, as provided by law.  Where the counterpart of a voting trust agreement and the copy of the record of the holders of voting trust certificates has been deposited with the Corporation as provided by law, such documents shall be subject to the same right of examination by a shareholder of the Corporation, in person or by agent or attorney, as are the books and records of the Corporation, and such counterpart and such copy of such record shall be subject to examination by any holder of record of voting trust certificates either in person or by agent or attorney, at any reasonable time for any proper purpose.

**Section 2.16  Shareholders' Agreements**.   Two or more shareholders of the Corporation may enter an agreement providing for the exercise of voting rights in the manner provided in the agreement or relating to any phase of the affairs of the Corporation as provided by law.  If all of the shareholders of the Corporation have entered into a shareholders' agreement (before or after the effective date of these Bylaws), which contains terms that are different from

5

the terms set forth in these Bylaws, then the terms of the shareholders' agreement shall be controlling to the extent that the terms of the shareholders' agreement are at variance with the terms of these Bylaws. Nothing therein shall impair the right of the Corporation to treat the shareholders of record as entitled to vote the shares standing in their names. A transfer of shares of the Corporation whose shareholders have a shareholder's agreement authorized by this Section shall be bound by such agreement if he takes shares subject to such agreement with notice thereof. A transferee shall be deemed to have notice of any such agreement if the exercise thereof is noted on the face or back of the certificate or certificates representing such shares.

## ARTICLE 3
## DIRECTORS

**Section 3.1 Number, Election and Term**. The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors. The Board of Directors shall consist of one or more members, the exact number to be determined from time to time by the shareholders or the Board of Directors. The number of directors may be increased or decreased from time to time by the shareholders or the Board of Directors, but no decrease shall have the effect of shortening the terms of any incumbent director. Directors need not be residents of this State or shareholders of the Corporation. A director shall hold office until the annual meeting for the year in which his term expires and until his successor shall be elected and shall qualify, subject, however, to prior death, resignation, retirement, disqualification or removal from office.

**Section 3.2 Vacancies**. A director may resign at any time by giving written notice to the Corporation, the Board of Directors or the President. Such resignation shall take effect when the notice is delivered unless the notice specifies a later effective date, in which event the Board of Directors may fill the pending vacancy before the effective date if they provide that the successor does not take office until the effective date. Any vacancy occurring in the Board of Directors and any directorship to be filled by reason of an increase in the size of the Board of Directors shall be filled by the affirmative vote of a majority of the current directors though less than a quorum of the Board of Directors, or may be filled by an election at an annual or special meeting of the shareholders called for that purpose, unless otherwise provided by law. A director elected to fill a vacancy shall be elected for the unexpired term of his predecessor in office, or until the next election of one or more directors by shareholders if the vacancy is caused by an increase in the number of directors.

**Section 3.3 Powers**. Except as provided in the Articles of Incorporation and by law, all corporate powers shall be exercised by or under the authority of, and the business and affairs of the Corporation shall be managed under the direction of, its Board of Directors.

**Section 3.4 Duties of Directors**. A director shall perform his duties as a director, including his duties as a member of any committee of the board upon which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the Corporation, and with such care as an ordinarily prudent person in a like position would use under similar circumstances. In performing his duties, a director shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by (1) one or more officers or employees of the Corporation whom

6

the director reasonably believes to be reliable and competent in the matters presented, (2) counsel, public accountants, or (3) other persons as to matters which the director reasonably believes to be within such person's professional or expert competence, or a committee of the Board upon which he does not serve, duly designated in accordance with a provision of the Articles of Incorporation or these Bylaws, as to matters within its designated authority, which committee the director reasonably believes to merit confidence.   A director shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance described above to be unwarranted.  A person who performs his duties in compliance with this Section shall have no liability by reason of being or having been a director of the Corporation and shall be indemnified by the Corporation for any and all claims and/or losses arising out of his service as a director of the Corporation.

Section 3.5    **Place of Meetings**.  Meetings of the Board of Directors, regular or special, may be held either within or without the State of Florida.

Section 3.6    **Annual Meeting**.   The first meeting of each newly elected Board of Directors shall be held, without call or notice, immediately following each annual meeting of shareholders.

Section 3.7    **Regular Meetings**.  Regular meetings of the Board of Directors may also be held without notice at such time and at such place as shall from time to time be determined by the Board of Directors.

Section 3.8    **Special Meetings and Notice**.  Special meetings of the Board of Directors may be called by the President and shall be called by the Secretary on the written request of any two directors.  Written notice of special meetings of the Board of Directors shall be given to each director at least two (2) days before the meeting.  Except as required by statute, neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors need be specified in the notice or waiver of notice of such meeting.   Notices to directors shall be in writing and delivered personally or mailed to the directors at their addresses appearing on the books of the Corporation.  Notice by mail shall be deemed to be given at the time when the same shall be received.  Notice to directors may also be given by telegram, teletype or other form of electronic communication.  Notice of a meeting of the Board of Directors need not be given to any director who signs a written waiver of notice before, during or after the meeting.  Attendance of a director at a meeting shall constitute a waiver of notice of such meeting and a waiver of any and all objections to the place of the meeting, the time of the meeting and the manner in which it has been called or convened, except when a director states, at the beginning of the meeting or promptly upon arrival at the meeting, any objection to the transaction of business because the meeting is not lawfully called or convened.

Section 3.9    **Quorum; Required Votes Presumption of Assent**.  A majority of the number of directors fixed by, or in the manner provided in, these Bylaws shall constitute a quorum for the transaction of business; provided, however, that whenever, for any reason, a vacancy occurs in the Board of Directors, a quorum shall consist of a majority of the remaining directors until the vacancy has been filled.  The act of a majority of the directors present at a meeting at which a quorum is present when the vote is taken shall be the act of the Board of Directors.  A majority of the directors present, whether or not a quorum exists, may adjourn any

7

meeting of the Board of Directors to another time and place. Notice of any such adjourned meeting shall be given to the directors who were not present at the time of adjournment, and, unless the time and place of the adjourned meeting are announced at the time of adjournment, to the other directors. A director of the Corporation who is present at a meeting of the Board of Directors or a committee of the Board of Directors when corporate action is taken shall be presumed to have assented to the action taken, unless he objects at the beginning of the meeting, or promptly upon his arrival, to holding the meeting or transacting specific business at the meeting, or he votes against or abstains from the action taken.

**Section 3.10   Action Without Meeting**. Any action required or permitted to be taken at a meeting of the Board of Directors or a committee thereof may be taken without a meeting if a consent in writing, setting forth the action taken, is signed by all of the members of the Board of Directors or the committee, as the case may be, and such consent shall have the same force and effect as a unanimous vote at a meeting. Action taken under this Section is effective when the last director signs the consent, unless the consent specifies a different effective date. A consent signed under this Section shall have the effect of a meeting vote and may be described as such in any document.

**Section 3.11   Conference Telephone or Similar Communications Equipment Meetings**. Members of the Board of Directors may participate in a meeting of the Board by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other at the same time. Participation in such a meeting shall constitute presence in person at the meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground the meeting is not lawfully called or convened.

**Section 3.12   Committees**. The Board of Directors, by resolution adopted by a majority of the full Board of Directors, may designate from among its members an executive committee and one or more other committees, each of which, to the extent provided in such resolution, shall have and may exercise all of the authority of the Board of Directors in the business and affairs of the Corporation except where the action of the full Board of Directors is required by statute. Each committee must have two or more members who serve at the pleasure of the Board of Directors. The Board of Directors, by resolution adopted in accordance with this Article Three, may designate one or more directors as alternate members of any committee, who may act in the place and stead of any absent member or members at any meeting of such committee. Vacancies in the membership of a committee shall be filled by the Board of Directors at a regular or special meeting of the Board of Directors. The executive committee shall keep regular minutes of its proceedings and report the same to the Board of Directors when required. The designation of any such committee and the delegation thereto of authority shall not operate to relieve the Board of Directors, or any member thereof, of any responsibility imposed upon it or him by law.

**Section 3.13   Compensation of Directors**. The directors may be paid their expenses, if any, of attendance at each meeting of the Board of Directors and may be paid a fixed sum for attendance at each meeting of the Board of Directors or a stated salary as director. No such payment shall preclude any director from serving the Corporation in any other capacity and receiving compensation therefor. Members of special or standing committees may be allowed like compensation for attending committee meetings.

8

**Section 3.14   Chairman of the Board**.  The Board of Directors may, in its discretion, choose a chairman of the board (the "Chairman of the Board") who shall preside at meetings of the shareholders and of the directors and shall be an ex officio member of all standing committees.  The Chairman of the Board shall have such other powers and shall perform such other duties as shall be designated by the Board of Directors.  The Chairman of the Board shall be a member of the Board of Directors but no other officers of the Corporation need be a director.  The Chairman of the Board shall serve until his successor is chosen and qualified, but he may be removed at any time by the affirmative vote of a majority of the Board of Directors.

**Section 3.15   Removal of Directors**.  At a meeting of shareholders called expressly for that purpose, any director or the entire Board of Directors may be removed, with or without cause, by a vote of the holders of a majority of the shares then entitled to vote at an election of directors.

**Section 3.16   Director Conflicts of Interest**.  No contract or other transaction between the Corporation and one or more of its directors or any other corporation, firm, association or entity in which one or more of the directors are directors or officers or are financially interested, shall be either void or voidable because of such relationship or interest or because such director or directors are present at the meeting of the Board of Directors or a committee thereof which authorizes, approves or ratifies such contract or transaction or because his or their votes are counted for such purpose, if:  (1) the fact of such relationship or interest is disclosed or known to the Board of Directors or committee which authorizes, approves or ratifies the contract or transaction by a vote or consent sufficient for the purpose without counting the votes or consents of such interested directors; (2) the fact of such relationship or interest is disclosed or known to the shareholders entitled to vote and they authorize, approve or ratify such contract or transaction by vote or written consent; or (3) the contract or transaction is fair and reasonable as to the Corporation at the time it is authorized by the Board, a committee or the shareholders.  Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or a committee thereof which authorizes, approves or ratifies such contract or transaction.

## ARTICLE 4
## OFFICERS

**Section 4.1   Positions**.  The officers of the Corporation shall consist of a President and, if elected by the Board of Directors by a resolution, one or more Vice Presidents, a Secretary, a Treasurer, and any other officers as may be appointed by the Board of Directors in accordance with these bylaws.  Any two or more offices may be held by the same person.

**Section 4.2   Election of Specified Officers by Board**.  The Board of Directors at its first meeting after each annual meeting of shareholders shall elect the officers of the Corporation as specified above in Section 4.1, subject to the rights, if any, of an officer under any contract of employment.

**Section 4.3   Election or Appointment of Other Officers**.  Such other officers and assistant officers and agents as may be deemed necessary may be elected or appointed by the Board of Directors, or, unless otherwise specified herein, appointed by the President of the

Corporation.  The Board of Directors shall be advised of appointments by the President at or before the next scheduled Board of Directors meeting.

**Section 4.4    Salaries**.  The salaries of all officers of the Corporation to be elected by the Board of Directors pursuant to Article Four, Section 2 hereof shall be fixed from time to time by the Board of Directors or pursuant to its discretion.  The salaries of all other elected or appointed officers of the Corporation shall be fixed from time to time by the President of the Corporation or pursuant to his direction.

**Section 4.5    Term; Resignation**.  The officers of the Corporation shall hold office until their successors are chosen and qualified.  Any officer or agent elected or appointed by the Board of Directors or the President of the Corporation may be removed, with or without cause, by the Board of Directors.  Any officers or agents appointed by the President of the Corporation pursuant to Section 3 of this Article Four may also be removed from such officer positions by the President, with or without cause.  Any vacancy occurring in any office of the Corporation by death, resignation, removal or otherwise shall be filled by the Board of Directors, or, in the case of an officer appointed by the President of the Corporation, by the President or the Board of Directors.  Any officer of the Corporation may resign from his respective office or position by delivering notice to the Corporation.  Such resignation is effective when delivered unless the notice specifies a later effective date.  If a resignation is made effective at a later date and the Corporation accepts the future effective date, the Board of Directors may fill the pending vacancy before the effective date if the Board provides that the successor does not take office until the effective date.

**Section 4.6    President**.  The President shall be the Chief Executive Officer of the Corporation, shall have general and active management of the business of the Corporation and shall see that all orders and resolutions of the Board of Directors are carried into effect.  In the absence of the Chairman of the Board or in the event the Board of Directors shall not have designated a chairman of the board, the President shall preside at meetings of the shareholders and the Board of Directors.

**Section 4.7    Vice Presidents**.  The Vice Presidents in the order of their seniority, unless otherwise determined by the Board of Directors, shall, in the absence or disability of the President, perform the duties and exercise the powers of the President.  They shall perform such other duties and have such other powers as the Board of Directors shall prescribe or as the President may from time to time delegate.

**Section 4.8    Secretary**.  The Secretary shall attend all meetings of the Board of Directors and all meetings of the shareholders and record all the proceedings of the meetings of the shareholders and of the Board of Directors in a book to be kept for that purpose and shall perform like duties for the standing committees when required.  The Secretary shall give, or cause to be given, notice of all meetings of the shareholders and special meetings of the Board of Directors, and shall perform such other duties as may be prescribed by the Board of Directors or President, under whose supervision the Secretary shall be.  The Secretary shall keep in safe custody the seal of the Corporation and, when authorized by the Board of Directors, affix the same to any instrument requiring it.

10

**Section 4.9    Treasurer**.  The Treasurer shall have the custody of corporate funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation and shall deposit all moneys and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated by the Board of Directors.  The Treasurer shall disburse the funds of the Corporation as may be ordered by the Board of Directors, taking proper vouchers for such disbursements, and shall render to the President and the Board of Directors at its regular meetings or when the Board of Directors so requires an account of all the Treasurer's transactions as treasurer and of the financial condition of the Corporation unless otherwise specified by the Board of Directors, the Treasurer shall be the Corporation's Chief Financial Officer.

**Section 4.10   Other Officers, Employees and Agents**.  Each and every other officer, employee and agent of the Corporation shall possess, and may exercise, such power and authority, and shall perform such duties, as may from time to time be assigned to him by the Board of Directors, the officer so appointing him and such officer or officers who may from time to time be designated by the Board of Directors to exercise such supervisory authority.

**ARTICLE 5**
**CERTIFICATES FOR SHARES**

**Section 5.1    Issue of Certificates**.  The Corporation may, but shall not be required to, deliver certificates representing all shares to which shareholders are entitled; and such certificates shall be signed by the President or a Vice President, and by the Secretary or an Assistant Secretary of the Corporation, and may be sealed with the seal of the Corporation or a facsimile thereof.

**Section 5.2    Legends for Preferences and Restrictions on Transfer**.  The designations, relative rights, preferences and limitations applicable to each class of shares and the variations in rights, preferences and limitations determined for each series within a class (and the authority of the Board of Directors to determine variations for future series) shall be summarized on the front or back of each certificate.  Alternatively, each certificate may state conspicuously on its front or back that the Corporation will furnish the shareholder a full statement of this information on request and without charge.  Every certificate representing shares that are restricted as to the sale, disposition, or transfer of such shares shall also indicate that such shares are restricted as to transfer and there shall be set forth or fairly summarized upon the certificate, or the certificate shall indicate that the Corporation will furnish to any shareholder upon request and without charge, a full statement of such restrictions.  If the Corporation issues any shares that are not registered under the Securities Act of 1933, as amended, and registered or qualified under the applicable state securities laws, the transfer of any such shares shall be restricted substantially in accordance with the following legend:

> "THESE SHARES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 OR UNDER ANY APPLICABLE STATE LAW. THEY MAY NOT BE OFFERED FOR SALE, SOLD, TRANSFERRED OR PLEDGED WITHOUT (1) REGISTRATION UNDER THE SECURITIES ACT OF 1933 AND ANY APPLICABLE STATE LAW, OR (2) AT HOLDER'S EXPENSE, AN OPINION (SATISFACTORY TO THE CORPORATION) OF

11

COUNSEL (SATISFACTORY TO THE CORPORATION) THAT REGISTRATION IS NOT REQUIRED."

**Section 5.3     Facsimile Signatures**.  The signatures of the President or a Vice President and the Secretary or Assistant Secretary upon a certificate may be facsimiles, if the certificate is manually signed by a transfer agent, or registered by a registrar, other than the Corporation itself or an employee of the Corporation.  In case any officer who has signed or whose facsimile signature has been placed upon such certificate shall have ceased to be such officer before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer at the date of the issuance.

**Section 5.4     Lost Certificates**.  The Board of Directors may direct a new certificate or certificates to be issued in place of any certificate or certificates theretofore issued by the Corporation alleged to have been lost or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost or destroyed.  When authorizing such issue of a new certificate or certificates, the Board of Directors may, in its discretion and as a condition precedent to the issuance thereof, require the owner of such lost or destroyed certificate or certificates, or his legal representative, to advertise the same in such manner as it shall require and/or to give the Corporation a bond in such sum as it may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost or destroyed.

**Section 5.5     Transfer of Shares**.  Upon surrender to the Corporation or the transfer agent of the Corporation of a certificate for shares duly endorsed or accompanied by proper evidence of succession, assignment or authority to transfer, it shall be the duty of the Corporation to issue a new certificate to the person entitled thereto, cancel the old certificate and record the transaction upon its books.

**Section 5.6     Registered Shareholders**.  The Corporation shall be entitled to recognize the exclusive rights of a person registered on its books as the owner of shares to receive dividends, and to vote as such owner, and shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it shall have express or other notice thereof except as otherwise provided by the laws of the State of Florida.

## ARTICLE 6
## INDEMNIFICATION

Any person, his heirs, or personal representative, made, or threatened to be made, a party to any threatened, pending, or completed action or proceeding, whether civil, criminal, administrative, or investigative, because he, his testator, or intestate is or was a director, officer, employee, or agent of the Corporation or serves or served any other corporation or other enterprise in any capacity at the request of the Corporation, shall be indemnified by the Corporation, and the Corporation may advance his related expenses to the full extent permitted by law. In discharging his duty, any director, officer, employee, or agent, when acting in good faith, may rely upon information, opinions, reports, or statements, including financial statements and other financial data, in each case prepared or presented by (1) one or more officers or

12

employees of the Corporation whom the director, officer, employee, or agent reasonably believes to be reliable and competent in the matters presented, (2) counsel, public accountants, or other persons as to matters that the director, officer, employee, or agent believes to be within that person's professional or expert competence, or (3) in the case of a director, a committee of the Board of Directors upon which he does not serve, duly designated according to law, as to matters within its designated authority, if the director reasonably believes that the committee is competent. The indemnification provided by this Article shall not be deemed exclusive of any other rights to which those indemnified may be entitled under any agreement, vote or shareholders or disinterested directors or otherwise, both as to actions in such person's official capacity and as to actions in another capacity while holding such office, and shall continue as to an indemnified person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, executors, administrators, personal representatives and estate of such person. All rights to indemnification and advances under this Article shall be deemed to be a contract between the Corporation and each indemnified person who serves or served in such capacity at any time while this Article is in effect and, as such, are enforceable against the Corporation. Any repeal or modification of this Article or any repeal or modification of relevant provisions of Florida's corporation law or any other applicable laws shall not in any way diminish these rights to indemnification of or advances to such indemnified person, or the obligations of the Corporation arising hereunder, for claims relating to matters occurring prior to such repeals or modification. The Corporation may purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee, trustee or agent of another corporation, partnership, joint venture, trust or other enterprise (including serving as a fiduciary of an employee benefit plan), with respect to any liability asserted against him and incurred by him in any such capacity or arising out of his status as such, whether or not the Corporation would have the power to indemnify him against such liability under the provisions of this Article or the applicable provisions of Florida law. If this Article or any portion hereof shall be invalidated on any ground by any court of competent jurisdiction, then the Corporation shall nevertheless indemnify and hold harmless, and make advances to, each indemnified person as to costs, charges and expenses (including attorneys' fees), liabilities, judgments, fines and amounts paid in settlement with respect to any proceeding including any action by or in the right of the Corporation, to the full extent permitted by any applicable portion of this Article that shall not have been invalidated and as otherwise permitted by applicable law.

## ARTICLE 7
## BOOKS AND RECORDS

**Section 7.1    Books and Records**.  The Corporation shall keep correct and complete books and records of accounts and shall keep minutes of the proceedings of its shareholders, Board of Directors and committees of directors. The Corporation shall keep at its registered office or principal place of business, or at the office of its transfer agent or registrar, a record of its shareholders, giving the names and addresses of all shareholders, and the number, class and series, if any, of the shares held by each. Any books, records and minutes may be in written form or in any other form capable of being converted into written form within a reasonable time.

**Section 7.2    Shareholders' Inspection Rights**.  Any person who shall have been a holder of record of shares or of voting trust certificates therefor at least six months immediately

13

preceding his demand or shall be the holder of record of, or the holder of record of voting trust certificates for, at least five percent of the outstanding shares of any class or series of the Corporation, upon written demand stating the purpose thereof, shall have the right to examine, in person or by agent or attorney, at any reasonable time or times, for any proper purpose its relevant books and records of accounts, minutes and records of shareholders and to make extracts therefrom.

## ARTICLE 8
## GENERAL PROVISIONS

**Section 8.1     Dividends**.  The Board of Directors may from time to time declare, and the Corporation may pay, dividends on its outstanding shares in cash, property, or its own shares pursuant to law and subject to the provisions of the Articles of Incorporation.

**Section 8.2     Reserves**.  The Board of Directors may by resolution create a reserve or reserves out of earned surplus for any proper purpose or purposes, and may abolish any such reserve in the same manner.

**Section 8.3     Checks**.  All checks or demands for money and notes of the Corporation shall be signed by such officer or officers or such other person or persons as the Board of Directors may from time to time designate.

**Section 8.4     Fiscal Year**.  The fiscal year of the Corporation shall be fixed by the Board of Directors and may be changed from time to time by resolution of the Board of Directors.

**Section 8.5     Seal**.  The corporate seal shall have inscribed thereon the name and state of incorporation of the Corporation.  The seal may be used by causing it or a facsimile thereof to be impressed or affixed or in any other manner reproduced.

**Section 8.6     Gender**.  All words used in these Bylaws in the masculine gender shall extend to and shall include the feminine and neuter genders.

## ARTICLE 9
## AMENDMENTS OF BYLAWS

Unless otherwise provided by law, these Bylaws may be altered, amended or repealed or new Bylaws may be adopted by action of the Board of Directors or the shareholders, but the Board of Directors may not amend or repeal any by-law adopted by shareholders if the shareholders specifically provide such by-law shall not be subject to amendment or repeal by the directors.

* * * * *

14

**EXHIBIT D**

**Dec. 14 Written Consent**

**VITAL PHARMACEUTICALS, INC.**
(a Florida corporation)

**ACTION BY UNANIMOUS WRITTEN CONSENT**
**OF**
**THE SHAREHOLDER AND**
**BOARD OF DIRECTORS**
**IN LIEU OF MEETING**

**Effective: December 14, 2022**

_____

The undersigned, being the sole shareholder (the "Shareholder") and, after giving effect to the elections below, all the members of the Board of Directors (the "Board" or "Board of Directors") of Vital Pharmaceuticals, Inc., a Florida corporation (the "Corporation"), hereby (a) take, authorize and adopt the following actions and matters, without and in lieu of a meeting, pursuant to Sections 607.0704 (as applicable to the Shareholder) and 607.0821 (as applicable to the Board of Directors), of the Florida Business Corporation Act (Chapter 607, Florida Statutes) (the "FBCA"), (b) waive any and all notices and requirements for notice, including of the time, date, place and/or purpose of or with regard to any meeting of the Shareholder and/or the Board of Directors of the Corporation and of or with regard to the actions and matters set forth in this action by unanimous written consent of the Shareholder and Board of Directors (the "Written Consent"), and (c) consent and agree to the authorization, approval and adoption of the following resolutions (collectively, the "Resolutions") as provided or described below:

**WHEREAS**, on and as of the date hereof (a) the Shareholder owns all of the issued and outstanding shares of capital stock of the Corporation enabling him to take the following actions by written consent without a shareholders' meeting pursuant to and in accordance with Section 607.0704 of the FBCA, and, after giving effect to the elections below, (b) the undersigned comprise all the duly elected members of the Board of Directors of the Corporation (and thus constitute the entire Board of Directors) enabling them to take the following actions by written consent without a Directors' meeting pursuant to and in accordance with Section 607.0821 of the FBCA; and

**WHEREAS**, the Shareholder: (a) has reviewed in its entirety this Written Consent, the recitals and Resolutions included herein and the form, content, terms and provisions of each exhibit annexed hereto and referenced herein, and (b) has had the opportunity to ask questions of and

receive responses from senior management of the Corporation regarding the Resolutions, and the actions and matters set forth herein, have determined that the actions and matters described, provided for, authorized and ratified herein are desirable for, and are fair to and in the best interests of, the Corporation and the Shareholder.

Election of Board of Directors

**WHEREAS**, Kathleen Cole has resigned as a member of the Board of Directors; and

**WHEREAS**, the Shareholder desires to elect Bob Dickinson to the Board of Directors to serve on the Board of Directors together with John H. Owoc, as Chairman of the Board, Eric Hillman, Dr. Guillermo Escalante and Steven G. Panagos.

**NOW, THEREFORE, BE IT RESOLVED**, that the Shareholder by and through this Written Consent (in lieu of holding a meeting of the Board of Directors) hereby removes Kathleen Cole as a member of the Board of Directors and elects Bob Dickinson as her replacement; and be it further

**RESOLVED**, after giving effect to the foregoing removal and replacement, in connection with the election of the Board of Directors of the Corporation and the members thereof (each, a "Director") by and through this Written Consent (in lieu of holding an annual or other meeting of the Shareholder), the following persons be and hereby are, designated, elected and appointed to serve as Directors (and members of the Board of Directors) of the Corporation, in each case, to serve as such, in accordance with the articles of incorporation of the Corporation (the "Articles"), the bylaws of the Corporation (the "Bylaws"), and the FBCA, each until their respective successor is duly elected and qualified, or until his earlier death, resignation or removal:

> John H. Owoc, as Chairman of the Board
> Bob Dickinson
> Dr. Guillermo Escalante
> Eric Hillman
> Steven G. Panagos

**RESOLVED**, that the number of Directors constituting the Corporation's Board of Directors shall remain fixed at five (5) members, such size of the Board to remain in effect until modified or revised by the Board of Directors in accordance with the Articles and the Bylaws; and be it further

Fixing Board Size

**NOW, THEREFORE, BE IT RESOLVED**, that, after giving effect to the Amendment, in accordance with Section 3.1 of the Amended Bylaws, the Shareholder hereby increases the number of members of the Board of Directors from one (1) to five (5) members (the "Board Increase").

This Written Consent may be executed by manual, facsimile, conformed or electronic (including PDF) signature, with the same effect as an executed written original.

**IN WITNESS WHEREOF,** the undersigned have executed and delivered this Written Consent for the purposes described herein and in accordance with Florida law, effective as of the date first above written.

**<u>SHAREHOLDER</u>**:

John Owoc (Dec 14, 2022 11:10 EST)
_____

John H. Owoc

# 2022-12-14 - Written Consent - Vital Pharmaceuticals, Inc. Appointing Dickinson (JG)

**Final Audit Report** 2022-12-14

| | |
|---|---|
| Created: | 2022-12-14 |
| By: | Yaylin Duran (yaylin.duran@bangenergy.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAdSQeLqDUZ13xaQGGx811u8v5xmxR3jJq |

## "2022-12-14 - Written Consent - Vital Pharmaceuticals, Inc. Appointing Dickinson (JG)" History

🗋 Document created by Yaylin Duran (yaylin.duran@bangenergy.com)
2022-12-14 - 3:49:43 PM GMT- IP address: 107.115.159.130

📧 Document emailed to ceo@bangenergy.com for signature
2022-12-14 - 3:54:11 PM GMT

🗋 Email viewed by ceo@bangenergy.com
2022-12-14 - 4:09:51 PM GMT- IP address: 104.47.55.254

✍️ Signer ceo@bangenergy.com entered name at signing as John Owoc
2022-12-14 - 4:10:17 PM GMT- IP address: 98.249.238.179

✍️ Document e-signed by John Owoc (ceo@bangenergy.com)
Signature Date: 2022-12-14 - 4:10:19 PM GMT - Time Source: server- IP address: 98.249.238.179

✅ Agreement completed.
2022-12-14 - 4:10:19 PM GMT

**Adobe Acrobat Sign**

# **EXHIBIT E**

## **Termination Notice**

# ≣ BERGER SINGERMAN

March 9, 2023

**VIA OVERNIGHT MAIL**

Mr. Jack Owoc
16720 Stratford Court
Southwest Ranches, FL 33131

Re:    Termination Notice

Dear Mr. Owoc:

As you are aware, this afternoon, there was a regularly scheduled meeting of the Boards of Directors or Managers (as applicable) (collectively, the "<u>Board</u>") of Vital Pharmaceuticals, Inc. and its affiliated debtors (collectively, the "<u>Company</u>" or the "<u>Debtors</u>").  You had not previously indicated that you were unavailable or did not intend to attend the March 9 Board meeting.  At our direction, several individuals reached out to you and your individual counsel, Justin Luna, in an attempt to secure your attendance at the Board meeting.  After waiting for more than 15 minutes, the Board meeting went forward.

Among the issues taken up by the Board was your continued role with the Company and the Board. For the reasons discussed during the Board meeting, the Board voted to terminate your employment with the Company as Chief Executive Officer and Chief Scientific Officer, and to remove you from the Board for cause, effective immediately ("<u>Termination Date</u>" or March 9, 2023).

Your final paycheck representing all compensation due and owing to you for hours worked through the Termination Date will be provided to you on the next regularly scheduled pay day.

Upon receipt of this notice, you must return all of the Debtors' property, including identification cards or badges, access codes or devices, keys, mobile phones, computers, credit cards, physical files and any other property and information in your possession of the Debtors.  Please return this property and information to John DiDonato immediately.

Nothing contained in or omitted from this letter is or shall be deemed to be a limitation, restriction, or waiver of any of the Debtors' rights or remedies, either at law or in equity, against you, all of which are expressly reserved.

Sincerely,

Berger Singerman LLP

Jordi Guso

11989961-1