**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,

Debtors.

Case No. 22-17842-PDR

Chapter 11
(Jointly Administered)

**EMERGENCY MOTION OF JOHN H. OWOC'S FOR CONFIRMATION THAT THE AUTOMATIC STAY DOES NOT APPLY TO TERMINATION OF DEBTOR'S SUBCHAPTER S CORPORATION STATUS OR, ALTERNATVELY, FOR RELIEF FROM STAY**

**(EMERGENCY HEARING REQUESTED FOR JULY 12, 2023)**

**BASIS FOR EXIGENCY: CLOSING OF THE SALE TRANSACTION SET FOR HEARING ON JULY 12, 2023, WILL HAVE SIGNFICANT NEGATIVE IMPACT ON JOHN H. OWOC. TO AVOID ANY ATTEMPT BY THE DEBTORS TO LATER CLAIM A VIOLATION OF THE AUTOMATIC STAY, MR. OWOC SEEKS IMMEDIATE RULING BY THE COURT REGARDING APPLICATION OF THE AUTOMATIC STAY TO THE RELIEF REQUESTED HEREIN. UNDERSIGNED COUNSEL HAS YET TO CONFER WITH COUNSEL FOR THE DEBTORS AT THE TIME THIS MOTION HAS BEEN FILED BUT WILL DO SO PRIOR TO ANY HEARING.**

John H. Owoc, a/k/a Jack Owoc ("Mr. Owoc"), a creditor and equity holder in the above-captioned chapter 11 cases (the "Chapter 11 Cases") of the above-referenced debtors (the "Debtors"), pursuant to sections 105(a) and 362 of title 11 of the United States Code (the "Bankruptcy Code"), Federal Rule of Bankruptcy Procedure ("FRBP") 9014 and Local Bankruptcy Rule ("LBR") 4001-1, hereby moves for entry of an order *on an emergency basis* (i) confirming that the automatic stay under Bankruptcy Code section 362(a) does not apply to Mr. Owoc's right as the sole shareholder of the Debtor Vital Pharmaceuticals, Inc. ("VPX") to

terminate VPX's status as a "Subchapter S Corporation" ("S-Corp"); or (ii) alternatively, granting relief from the automatic stay to terminate such status for cause under Bankruptcy Code section 362(d)(1) (the "Motion"); and (iii) authorizing and directing the Debtors to cooperate with Mr. Owoc with respect to any steps that are reasonably necessary to effectuate the termination of VPX's status as an S-Corp, and respectfully states as follows:

**INTRODUCTION**

1. At the outset, this Motion is filed on an emergency basis given that the Debtors' proposed Sale (defined below) of their assets is currently set for hearing on Wednesday, July 12, 2023, and without the relief requested, that Sale could have substantial *and severe* tax implications on Mr. Owoc. Specifically, as described below, Mr. Owoc remains personally liable for the tax liabilities of the Debtor Vital Pharmaceuticals, Inc. ("VPX"), including any and all tax liabilities resulting from the proposed Sale, yet stands to receive *no* benefit from such Sale, as he otherwise would outside of bankruptcy. By this Motion, Mr. Owoc seeks confirmation that his right as the sole shareholder of VPX to terminate VPX's status as an S-Corp in order to avoid such tax liabilities does not implicate the automatic stay – relief that must necessarily be considered in conjunction with any approval of the Sale. Mr. Owoc seeks a determination with respect to such prior to the closing on any sale.

2. Mr. Owoc is the founder and sole shareholder of VPX. VPX is currently classified as an S-Corp for federal and state tax purposes. Such classification means, among other things, that VPX's income is passed through to Mr. Owoc as its sole shareholder and Mr. Owoc is liable for reporting and paying taxes on such income. VPX has requested Court approval to sell substantially all of its assets to an affiliate of Monster Beverage Corporation (the "Sale") as detailed more fully in that certain sale motion currently set for hearing on July 12, 2023. If

approved, the Sale could have an enormous – *and highly inequitable* – impact on Mr. Owoc who would potentially be liable for all tax implications of the Sale by VPX including taxes based on any capital gains and disallowed losses and deductions, among other things.  While at this point it is impossible to quantify such implications (and the subject Sale motion includes a 60-day period to designate an allocation of the value of the various assets to be sold), it is conceivable that Mr. Owoc could face multi-millions of dollars in tax liabilities as a result of the Sale.

3. Such potential tax liability under the S-Corp structure presents unique and substantial inequities to Mr. Owoc in the bankruptcy context.  In particular, tax burdens are typically borne and paid by those who derive some benefit from the taxed income.  In the typical case where an S-Corp receives income, the shareholder has the ability to extract the income from the corporation in order to pay the taxes due on that income.  However, a shareholder faces substantial inequities under such structure in a bankruptcy case.  As the Third Circuit has found: "…any income generated during or as part of the reorganization process (*such as the sale of assets*) is likely to remain in the corporation, and ultimately in the hands of creditors, but the resulting tax liability must be borne by the S-Corp shareholders." *Majestic Star Casino, LLC v. Barden Dev., Inc.* (*In re Majestic Star Casino, LLC*), 716 F.3d 736, 757 (3d Cir. 2013) (emphasis added) ("*Majestic*").  In other words, if VPX retains its S-Corp status at the time of the Sale, Mr. Owoc will potentially face massive personal tax exposure without receiving any income or other benefit from the Sale, which, outside of bankruptcy, would otherwise flow through to him and be available to pay such tax burden.

4. Accordingly, Mr. Owoc intends to terminate VPX's status as an S-Corp in order to avoid such inequities.  Importantly, the decision to terminate that status ultimately belongs to Mr. Owoc as the sole shareholder of VPX.  As the Third Circuit stated in *Majestic*: "the shareholders

of an S-Corp can terminate its pass-through status at will, regardless of how long it has been an S-Corp and whatever its pre-bankruptcy operating history has been. The tax status of the entity is entirely contingent on the will of the shareholders." 716 F.3d at 755. Termination of a corporation's S-Corp status is normally accomplished through filing a revocation with the IRS or transferring shares in the corporation to a non-S-Corp corporation, which automatically revokes S-Corp status.

5. Here, the termination of VPX's S-Corp status by Mr. Owoc as shareholder would *not* violate the automatic stay under Bankruptcy Code section 362. Indeed, while the courts that have considered the issue – *i.e.*, whether a non-debtor shareholder's revocation of a debtor's status as an S-Corp is subject to the automatic stay – have reached different results, the only circuit court of appeals to squarely address the issue is the Third Circuit in *Majestic*, which determined that a debtor's S-Corp status is **not** "property of the estate" and therefore can be revoked or terminated. As detailed below, the *Majestic* decision is "on all fours" with the facts here and distinguishes and rejects earlier (non-court of appeals') authority holding otherwise. Specifically, in *Majestic*, the Third Circuit found, among other things: (i) S-Corp status is not "property" within the meaning of the Bankruptcy Code and (ii) even if S-Corp status were "property," it is not properly seen as "property of the estate". *See, generally, id*. at 752-62.

6. Moreover, and in any case, even if the automatic stay did apply to the termination of VPX's tax status, the substantial inequities Mr. Owoc would face without the termination provide sufficient cause to lift the stay for that purpose. As described above and detailed further below, if the Sale closes with VPX as an S-Corp, Mr. Owoc faces substantial potential tax liabilities without the benefit of the income or other tax attributes that would otherwise flow directly to him and that would be available to address such liabilities. Accordingly, cause exists

to lift the stay in order to allow Mr. Owoc to terminate VPX's S-Corp status and avoid such inequities.

7. It is anticipated that were Mr. Owoc to unilaterally elect to terminate VPX's S-Corp status, the Debtors would take the position that such election runs afoul of the automatic stay and constitutes an improper transfer of VPX's property. While Mr. Owoc asserts there is no basis for such argument (as detailed herein) and reserves all rights with respect to the same, in an abundance of caution, by this Motion, Mr. Owoc requests that the Court, consistent with the holding in *Majestic*, confirm that the automatic stay does not apply to Mr. Owoc's right as the sole shareholder of VPX to terminate VPX's status as an S-Corp. Alternatively, assuming, *arguendo*, that the automatic stay applies, Mr. Owoc requests relief from the stay for cause to terminate that status. Mr. Owoc further requests that the Court, to the extent necessary, authorize and direct the Debtors to cooperate with Mr. Owoc with respect to any steps that are reasonably necessary to effectuate the termination of VPX's status as an S-Corp.

## FACTUAL BACKGROUND

8. Mr. Owoc is the founder and sole shareholder of VPX. From 1997 through the present, VPX has been classified as an S-Corp for federal tax purposes under 26 U.S.C. § 1361(a). Among other things, VPX's S-Corp status means that VPX's income is passed through to Mr. Owoc as its sole shareholder and Mr. Owoc is liable for reporting and paying taxes on such income. VPX's Chapter 11 bankruptcy petition did not terminate or revoke VPX's S-Corp status, and Mr. Owoc remains potentially liable for taxes on VPX's post-petition income, including gains resulting from the Sale and/or assumption of liabilities, under the subchapter S rules. *See Mourad v. Comm'r*, 121 T.C. No. 1 (2003), *aff'd* 387 F.3d 27 (1st Cir. 2004).

9. Mr. Owoc seeks to terminate VPX's S-Corp status by filing a Revocation of the Subchapter S Corporate Election and associated Shareholder Consent with the Internal Revenue

Service and/or transferring shares of VPX to a non-S-Corp entity resulting in automatic termination of VPX's S-Corp status. The Revocation would specify that it would be effective as of July 11, 2023. Upon termination of its S-Corp status, VPX would be classified as a Subchapter C Corporation effective July 11, 2023. 26 U.S.C. § 1362(d)(1)(D). Mr. Owoc further seeks to elect (and cause VPX to agree to) opt out of the *pro-rata* rules for allocating the resulting substantial income tax liability from the pending Sale to VPX and not to himself. 26 U.S.C. § 1362(e)(3); Treas. Reg. § 1.1362-3(b)(1). By making this "close the books election," income would be allocated between the former Subchapter S Corporation and the new C Corporation based on VPX's normal method of accounting. Treas. Reg. §§ 1.1362(a), (b)(1).

10.    As described herein, Mr. Owoc has a vested interest in VPX's S-Corp status for federal (and state) income tax purposes. In particular, the proposed Sale could have substantial tax implications for Mr. Owoc personally including, among other things, taxes based on any capital gains, assumption of liabilities and/or disallowed losses and deductions.

## ARGUMENT

### A. The Automatic Stay Does Not Apply to Mr. Owoc's Termination of the Debtors' S-Corp Status

11.    Bankruptcy Code section 362 stays, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . ." 11 U.S.C. § 362(a)(3). Bankruptcy Code section 541, in turn, defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case," with a few limited exceptions. But Bankruptcy Code section 541 does not say what constitutes a "legal or equitable interest." 11 U.S.C. § 541. For that, the Court should look to non-bankruptcy law, including other state and federal laws. *See Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000) (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)).

6

12.     As described above, at issue here is VPX's status as an S-Corp. The Court should enter an order confirming that the automatic stay does not apply to that status or to Mr. Owoc's termination of that status. Indeed, as described above and detailed further below, the only Court of Appeals to have reviewed such issue, the Third Circuit, considered this precise question in *Majestic* and held that a debtor's S-Corp status is not "property" nor "property of the estate" under the Bankruptcy Code and as such, not subject to the automatic stay. *See, generally*, 716 F.3d at 755; *see also*, *Arrowsmith v. United States (In re Health Diagnostic Lab., Inc.)*, 578 B.R. 552, 570 (Bankr. E.D. Va. 2017) ("*Health Diagnostic*") (adopting the holding in *Majestic* that S-Corp status is *not* property under federal tax law); *Harker v. Cummings (In re GYPC, Inc.)*, 2020 Bankr. LEXIS 2384, *21-23 (Bankr. S.D. Ohio Aug. 4, 2020) ("*GYPC*") (relying on the holdings in *Health Diagnostic* and *Majestic* in holding that S-corp status is *not* a property interest that may be avoided as a preferential or fraudulent transfer).

13.     As noted above, the facts in *Majestic* closely parallel the facts here. In *Majestic*, the subject debtor, Majestic Star Casino II, Inc. ("MSC II"), was a qualified subchapter S subsidiary (or "QSub") as designated by its 100% owner, Barden Development, Inc. ("BDI"), a non-debtor S-Corp. 716 F. 3d at 742-43. As an S-Corp, BDI was not subject to federal or state taxation, rather, its income and losses were passed through to its sole shareholder, Don Barden ("Barden"), who was required to report BDI's income on his individual tax returns. *Id*. Prior to the bankruptcy petition, BDI elected to treat MSC II as a QSub (the designation for an S-Corp subsidiary) for federal tax purposes, which meant that MSC II was not treated as a separate tax entity from BDI, but rather, all of its assets, liabilities and income were treated for federal tax purposes as assets, liabilities and income of BDI. *Id*. After MSC II's bankruptcy filing, Barden, as the sole shareholder of BDI, successfully petitioned the IRS to revoke BDI's S-Corp status. *Id*.

7

Such revocation also caused the debtor MSC II, as an indirect and wholly-owned BDI subsidiary, to lose its status as a QSub, which meant that it, like BDI, became subject to federal taxation. *Id*.

14. Neither BDI nor Barden sought or obtained authorization from the debtors or the bankruptcy court prior to such revocation, which the debtors did not even become aware of for some four months later. *Id*. at 744. MSC II and its related debtors subsequently filed an adversary complaint asserting that the revocation of BDI's S-Corp status caused an unlawful post-petition transfer of property of the MSC II bankruptcy estate in violation of Bankruptcy Code sections 362 and 549. *Id*. at 746. Specifically, the debtors argued that MSC II's QSub status (resulting from BDI's S-Corp status) was property of the debtors, and the revocation constituted an improper transfer of property of the estate. *Id*. The bankruptcy court agreed and ordered that Barden, BDI and the IRS reinstate both BDI's status as an S-Corp and MSC II's status as a QSub. *Id*. at 742. The case was certified to the Third Circuit for direct appeal and the Third Circuit vacated the bankruptcy court's order holding, as detailed below, that S-Corp status is not "property" under the Bankruptcy Code and even it was, it is not "property of the estate." *Id*. at 742.

1. **VPX's S-Corp Status Is Not "Property" Under the Bankruptcy Code**

15. As *Majestic* explains, "the [b]ankruptcy [c]ourt [in that case] reasoned that QSub status is analogous to S-Corp status and, based on a few cases holding that the latter is 'property' for purposes of the [Bankruptcy] Code, concluded that the former is 'property' too." *Id*. at 752. The principal case relied on by the *Majestic* bankruptcy court was *In re Trans-Lines West, Inc.*, 203 B.R. 653 (Bankr. E.D. Tenn. 1996), which considered whether a corporation's revocation of its S-Corp status prior to filing for bankruptcy was a prepetition transfer of property avoidable under Bankruptcy Code section 548. *Id*. Ultimately, the *Trans- Lines West* court concluded that "'the Debtor possessed a property interest (i.e., a guaranteed right to use, enjoy and dispose of that

8

interest) in its Subchapter S status….'" *Id*. at 753 (*quoting In re Trans-Line West*, 203 B.R. at 662).

16. In *Majestic*, the Third Circuit explained that "the *Trans-Lines West* decision and those that follow it base their conclusion that S-Corp status is 'property' on a series of precedents holding net operating losses ("NOLs") to be property." *Id*. at 753. *Trans-Lines West* and its progeny incorrectly extended those precedents "saying that the ability to make an S-Corp election, like the ability to elect whether to carry forward or carry back NOLs, is property." *Id*. at 754-55. The Third Circuit found "that extension untenable, though, for several reasons" which are equally applicable here. *Id*. at 755.

17. <u>First</u>, *Majestic* determined that those decisions fail to consider important differences between NOLs and S-Corp status – the two purported property interests – and the analogy of S-Corp status to NOLs relied on by *Trans-Lines West* and its progeny are of limited validity. *Id*.; *see also, GYPC*, 2020 LEXIS 2384 at *21 ("as explained in *Health Diagnostic[]*, a corporation's tax status cannot be equated to an NOL."). In particular, NOLs are far less prospective or contingent in nature than a corporation's status as an S-Corp. *Id*. A debtor holding NOLs has a defined amount of them at the time the bankruptcy is filed as they are a function of the debtor's operations prior to bankruptcy and are not subject to either revocation by the shareholders or termination by the IRS. *Id*. By contrast, and applicable here, "the shareholders of an S-Corp can terminate its pass-through status at will, regardless of how long it has been an S-Corp and whatever its pre-bankruptcy operating history has been." *Id*. Unlike an NOL, "[t]he tax status of the entity is entirely contingent on the will of the shareholders." *Id*. Further, the value of an NOL is readily discernable as a tax refund immediately available to the bankruptcy estate. *Id*. at 755-56. However, the value of the S-Corp election is dependent on its not being revoked, as

well as the amount and timing of future earnings. *Id*. at 756. Moreover, NOLs can be monetized in a manner that S-Corp status cannot. *Id*. For example, a corporation that does not expect to generate sufficient future earnings to use its NOLs may be purchased by a more profitable corporation which may then use the NOLs to shelter its own income. *Id*. "By contrast, the sale of an S-Corp will generally result in the termination of its tax-free status." *Id*.

18. *Second*, *Majestic* held that those decisions incorrectly assume that "'once a corporation elects to be treated as an S corporation, [the Internal Revenue Code (the "I.R.C.")] guarantees and protects an S corporation's right to use and enjoy that status … [and] guarantees and protects an S corporation's right to dispose of that status at will.'" *Id*. at 756 (*quoting Trans-Lines West*, 203 B.R. at 662). To the contrary, however, the I.R.C. does *not*, *and cannot*, guaranty a corporation's right to S-Corp status because the corporation's shareholders may elect to revoke that status at will (or an individual shareholder can sell its interest through various transactions that would also trigger revocation of the corporation's S-Corp status). *Id*. "Thus, the *Trans-Lines West* line of cases is incorrect in concluding that S-corp status is a 'right' that is 'guaranteed' under the I.R.C." *Id*.

19. *Third*, some courts reaching the decision that S-Corp status is "property" have improperly "defaulted to the argument that such status must be property because it has value to the estate." *Id*. at 757 (*citing In re Prudential Lines*, 928 F.2d 565, 573 (2d. Cir. 1991); *In re Bakersfield Westar, Inc.*, 226 B.R. 227, 234) (9th Cir. BAP 2001)). However, *Majestic* held that while the right of an S-Corp to place its tax liabilities on a non-debtor may have some value, "we are convinced it does not extend so far as to override rights statutorily granted to shareholders to control the tax status of the entity they own … a tax classification over which the debtor has no control is not a 'legal or equitable interest[] of the debtor in property' for purposes of § 541." *Id*.

20.     *Finally*, and importantly, notwithstanding such flawed reasoning, *Majestic* held that such decisions produce substantial inequities. *Id*. In particular, taxes burdens are typically borne and paid by those who derive some benefit from the income. *Id*. In the typical case where an S-Corp receives income, the shareholder has the ability to extract the income from the corporation in order to pay the taxes due on that income. *Id*. However, "[i]f a bankruptcy trustee is permitted to avoid the termination of a debtor's S-Corp or QSub status, then any income generated during or as part of the reorganization process (*such as the sale of assets*) is likely to remain in the corporation, and ultimately in the hands of creditors, but the resulting tax liability must be borne by the S-Corp shareholders." *Id*. (emphasis added).

21.     For all of these reasons, the Third Circuit rejected the rationale of *Trans-Lines West* and its progeny (and the bankruptcy court's decision in *Majestic*), and (correctly) concluded that S-Corp status is <u>not</u> "property" within the meaning of the Bankruptcy Code. *Id*. at 758; *see also*, *Health Diagnostic*, 578 B.R. at 570 (same); *GYPC*, 2020 Bankr. LEXIS 2384 at *21-23 (same). The same reasoning applies here to determine that VPX's S-Corp status is not "property" subject to the Bankruptcy Code's automatic stay. Any other determination would run afoul of the purpose and intent of the tax laws, and result in a potentially staggering windfall to the Debtors, while Mr. Owoc would be left with devastating tax liabilities for income that he never received or benefited from.

**2. Even if Deemed Property Under the Bankruptcy Code, VPX's S-Corp Status Is Not "Property of the Estate"**

22.     As an additional analysis under *Majestic*, the Third Circuit further held that even if QSub[1] status was "property" under Bankruptcy Code section 541, it is not property of MSC II's

---

[1] In *Majestic*, the Court considered QSub status rather than S-Corp status as property of the estate because as detailed above, the debtor MSC II was a QSub. However, as further detailed above, QSub status is simply the tax-exempt status given to a subsidiary of an S-Corp. Accordingly, for all intents and purposes, considering whether QSub status

11

bankruptcy estate, as it must be for a transfer of that status to be void under Bankruptcy Code section 362 or avoidable under section 549. *Id*. at 759-62. <u>First</u>, S-Corp (or QSub) status is not accurately seen as property *owned* by the debtor holding that status where the related benefits "flow-through" to shareholders. "The S-Corp debtor is merely a 'conduit' for tax benefits that flow through to shareholders. The corporation retains no real benefit from its tax-free status in that, while there is no entity-level tax, all of its pre-tax income is passed on to its shareholders." *Id*. at 759 (citations omitted)

24. <u>Second</u>, holding that S-Corp status is property of the estate improperly expands a debtor's interest in that "property," contrary to the Bankruptcy Code. *Id*. at 761 (citations omitted) ("Filing a bankruptcy petition is not supposed to 'expand or change a debtor's interest in an asset, it merely changes the party who holds that interest.'"). Specifically, *Majestic* held that allowing QSub status to be treated as property of the debtor subsidiary rather than the non-debtor parent, significantly restricts rights of the parent including its rights to (i) terminate its subsidiary's QSub status; (ii) sell the subsidiary's shares to any purchaser other than an S-Corp (which sale would otherwise trigger loss of the QSub status); and (iii) sell the parent to a C-corporation, partnership or other non-S-corp entity, to a non-resident alien, or to more than 100 shareholders (which sale would also trigger the loss of the QSub status). *Id*. Accordingly, "under the Bankruptcy Court's holding in [*Majestic*], a QSub in bankruptcy can stymie legitimate transactions of its parent as unauthorized transfers of property of the estate, even though the QSub would have no right to interfere with any of those transactions prior to the filing for bankruptcy." *Id*.

24. <u>Finally</u>, ownership is not properly determined simply based on the fact that the debtor corporation possesses and enjoys the benefits that result from S-Corp tax status at the time

---

is property of the estate requires an identical analysis to that of an S-Corp and the Third Circuit's analysis whether QSub status is property of the estate is entirely applicable to VPX's S-Corp status here.

a petition is filed. *Id*. at 762. Indeed, "the QSub's S-corp parent – *and the parent's ultimate shareholders* – have at least as strong an argument that they possess and enjoy the benefits that result from the subsidiary's QSub status due to the pass-through of the income, the pass-through of losses which may be used to shelter other income, and the elimination of entity-level tax at the QSub." *Id*. (emphasis added).

25. For all of these reasons, the Third Circuit in *Majestic* held that even if the debtor MSC II's status as a QSub were "property" under Bankruptcy Code section 541 (which it determined it was not), it is not property of MSC II's estate. The same reasoning applies here to find that even if VPX's S-Corp status is deemed "property," it is not properly seen as property of VPX's estate subject to the automatic stay.

**B. Even if the Automatic Stay Did Apply, Cause Exists to Lift the Stay**

26. Alternatively, even if the automatic stay did apply here (which, for the reasons detailed above, it does not), the Court should enter an order lifting the stay for cause under Bankruptcy Code section 362(d). 11 U.S.C. § 362(d)(1). Courts have focused on practical considerations in lifting a stay, including: "1. the harm to the party seeking relief from the stay … if the stay is not lifted; 2. the harm to the debtor … if the stay is lifted; 3. the interests of creditors; and 4. the effect on the fair and efficient administration of justice." *Peerless Ins. Co. v. Rivera*, 208 B.R. 313, 315 (D.R.I. 1997).

27. In addition, the Eleventh Circuit has ruled that transactions in violation of the automatic stay of 11 U.S.C. 362(a) are void, but may be validated through annulment of the stay pursuant to § 362(d). *BKGD, LLC v. Townsend (In re Smith)*, 2018 Bankr. LEXIS 1076, *17 (Bankr. N.D. Ga. Apr. 9, 2018) (citing *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 675 (11th Cir. 1984); *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306,

1308 (11th Cir. 1982)) (granting relief from stay). Courts have applied two similar standards for deciding whether to annul the stay: an "extreme circumstances" test and a "balancing of the equities" test. *Id*. at *17-18 (holding that relief from stay was warranted under either test). Courts applying the "balancing of the equities" test do not consider "dispositive" factors, but rather, balance the equities in order to determine whether retroactive annulment is justified. *Id*. at *18 (*citing In re Envtl. Waste Corp.*, 129 F.3d 102, 1055 (9th Cir. 1997). "Other relevant considerations include whether there is equity in the property; whether the property is necessary for an effective reorganization; whether the court would have granted relief from the stay if a motion for relief had been timely filed prior to the stay violation; whether failure to grant retroactive relief will cause unnecessary expense to the creditor; or whether the creditor has detrimentally changed its position on the basis of its action." *Id*. at *18-19 (*citing In re Anderson*, 341 B.R. 365, 369-370 (Bankr. D. D.C. 2006)).

28. Importantly here, Mr. Owoc does not seek retroactive annulment of the stay but rather, submits this request prospectively, in an abundance of caution, to the extent the stay even applies at all, which he submits it does not. *See Moore v. Complete Cash Holdings, LLC (In re Moore)*, 448 B.R. 93, 105 (Bankr. N.D. Ga. 2011) (granting motion for relief from stay where, among other things, the vehicles repossessed and alleged to be a stay violation were not property of the estate.). Specifically, Mr. Owoc submits that cause exists to lift the stay here where Mr. Owoc would face extreme consequences and inequities if he were denied his right as the sole shareholder to terminate the S-Corp status of the Debtors. As detailed above, without a termination of VPX's S-Corp status, Mr. Owoc could be exposed to *substantial* tax liability based on the proposed Sale, while receiving little or no benefit from such Sale, as he otherwise would outside of bankruptcy, and that could be used to offset such tax burdens. As the sole shareholder of VPX,

Mr. Owoc may terminate the S-Corp status at will and there is no basis, under either the I.R.C. or the Bankruptcy Code, to strip him of that right now.

29. Accordingly, while Mr. Owoc maintains that the automatic stay does not affect his rights as sole shareholder of VPX to terminate its S-Corp status, to the extent the Court determines otherwise, Mr. Owoc seeks relief from the stay for cause to terminate such status in order to avoid the substantial inequities he otherwise faces as a result of the Sale.

### C. To the Extent Necessary, the Court Should Authorize and Direct the Debtors to Take Any Actions Reasonably Necessary to Effectuate Termination of VPX's S-Corp Status

30. As confirmed by the Third Circuit in *Majestic*, shareholders are granted statutory rights "to control the tax status of the entity they own" and "the shareholders of an S-Corp can terminate its pass-through status at will." 716 F.3d at 755-57. Accordingly, as the sole shareholder of VPX, Mr. Owoc has the right to terminate VPX's S-Corp status by any means allowed under the I.R.C. or otherwise. For the reasons described in section A, *supra*, Mr. Owoc's right should not be disturbed in bankruptcy and to the extent necessary, this Court should exercise its broad powers under Bankruptcy Code section 105 to authorize and direct the Debtors to cooperate with Mr. Owoc with respect to any steps that are reasonably necessary to effectuate the termination of VPX's status as an S-Corp.

31. Alternatively, even if it is determined that the stay applies to Mr. Owoc's right to terminate the S-Corp status, for the reasons described in section B, *supra*, cause exists to lift the stay to allow such termination to proceed. To the extent such relief from stay is deemed necessary and appropriate, this Court should similarly exercise its power, to the extent necessary, to authorize and direct the Debtors to take any reasonably necessary actions to effectuate Mr. Owoc's termination of VPX's status as an S-Corp.

WHEREFORE, Mr. Owoc requests the Court grant the Motion and enter an Order (i) confirming that the automatic stay under Bankruptcy Code section 362(a) does not apply to Mr. Owoc's right as the sole shareholder of VPX to revoke VPX's status as a tax exempt "S-Corp"; or (ii) alternatively, granting relief from the automatic stay for cause under Bankruptcy Code section 362(d)(1); and (iii) authorizing and directing the Debtors to cooperate with Mr. Owoc with respect to any steps that are reasonably necessary to effectuate the termination of VPX's status as an S-Corp.

Dated: July 11, 2023

PHANG & FELDMAN, P.A.
*Attorneys for John H. Owoc, Megan Owoc,*
*Elite Island, LLC and Entourage IP Holding, LLC*
2 S. Biscayne Boulevard, Suite 1600
One Biscayne Tower
Miami, Florida 33131
Telephone: (305) 614-1223
Fax: (305) 614-1887

By:   */s/ Jonathan S. Feldman*
      Jonathan S. Feldman (12682)
      feldman@katiephang.com
      service@katiephang.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 11, 2023, a true and correct copy of the foregoing was served based on the Court docket, by transmission of Notices of Electronic Filing ("NEF") generated by CM/ECF to those parties registered to receive NEF in this case and in accordance with Local Rule 2002-1(H).

By:   */s/ Jonathan S. Feldman*
      Jonathan S. Feldman (12682)
      feldman@katiephang.com
      service@katiephang.com