# **EXHIBIT 2**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-17842-PDR |
| Debtors. | (Jointly Administered) |
| _____/ | |

## NOTICE OF AUCTION CANCELLATION AND SUCCESSFUL BIDDER

**PLEASE TAKE NOTICE** that, on January 27, 2023, Vital Pharmaceuticals, Inc. and its affiliate debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), filed the *Debtors' Motion for an Order (I) Approving (A) Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Procedures for the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Form and Manner of Notice of the Sale Hearing, Assumption Procedures, and Auction Results, (D) Dates for an Auction and Sale Hearing, (E) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances, and (F) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing the Debtors to Provide Bid Protections, and (III) Granting Related Relief* [ECF No. 707] (the "Bidding Procedures Motion").[2]

**PLEASE TAKE FURTHER NOTICE** that, on February 24, 2023, the Court entered an order [ECF No. 854] (the "Bidding Procedures Order") granting certain of the relief sought in the Bidding Procedures Motion, including, among other things, approval of the Bidding Procedures, which established the key dates and times related to the Transaction and the Auction.

**PLEASE TAKE FURTHER NOTICE** that, on April 28, 2023, the Debtors filed the *Notice of Extension of Certain Sale-Related Deadlines* [ECF No. 1283], which notice identified extensions of certain transaction milestones set forth in the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that the deadline for parties to submit a bid for the Debtors' assets or any portion thereof was May 22, 2023 at 12:00 p.m. (Prevailing Eastern Time).

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are as: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev, LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Bidding Procedures Motion or the APA (as defined herein), as applicable.

PLEASE TAKE FURTHER NOTICE that, on May 24, 2023, the Debtors filed the *Notice of Adjournment of Auction* [ECF No. 1394], which notified parties in interest of the adjournment of the Auction from May 25, 2023 until June 2, 2023.

PLEASE TAKE FURTHER NOTICE that, on June 1, 2023, the Debtors filed the *Notice of Adjournment of Auction and Modified Sale-Related Dates and Deadlines* [ECF No. 1416], which notified parties in interest of, among other things, the adjournment of the (a) Auction from June 2, 2023 until June 8, 2023 and (b) Sale Hearing from June 7, 2023 until June 16, 2023 at 10:00 a.m. (Prevailing Eastern Time).

PLEASE TAKE FURTHER NOTICE that, on June 8, 2023, the Debtors filed the *Notice of Adjournment of Auction* [ECF No. 1445], adjourning the Auction from June 8, 2023 until a time to be determined.

PLEASE TAKE FURTHER NOTICE that, on June 12, 2023, the Debtors filed the *Notice of Modified Sale-Related Dates and Deadlines* [ECF No. 1457], which notified parties in interest of, among other things, the adjournment of the Sale Hearing from June 16, 2023 at 10:00 a.m. (Prevailing Eastern Time) until June 30, 2023 at 10:00 a.m. (Prevailing Eastern Time).

PLEASE TAKE FURTHER NOTICE that, on June 23, 2023, the Debtors filed the *Notice of Adjournment of Sale Hearing and Related Deadlines* [ECF No. 1514], which notified parties in interest of, among other things, the adjournment of the Sale Hearing from June 30, 2023 at 10:00 a.m. (Prevailing Eastern Time) until a time to be determined.

PLEASE TAKE FURTHER NOTICE that the Debtors, in consultation with the Consultation Parties, have determined that only one bid received for substantially all of the Debtors' assets, from Blast Asset Acquisition LLC, an acquisition vehicle that is a subsidiary of Monster Beverage Corporation, is a Qualified Bid for such assets, and that no bids for less than substantially all of the Debtors' assets are acceptable to the Debtors and the Consultation Parties. Therefore, pursuant to the Bidding Procedures, the Debtors are cancelling the Auction and designating Blast Asset Acquisition LLC as the "Successful Bidder."

PLEASE TAKE FURTHER NOTICE that the Debtors entered into an Asset Purchase Agreement (the "APA"), by and between certain of the Debtors and Blast Asset Acquisition LLC, a copy of which is attached hereto as **Exhibit 1**, pursuant to which the Debtors shall sell substantially all of their assets to the Successful Bidder, subject to the terms and conditions set forth therein, including expiration of all applicable waiting periods, including under the Hart-Scott-Rodino Act (the "HSR Act").

**PLEASE TAKE FURTHER NOTICE that, in the event that the Debtors are unable to pursue and/or consummate the Transactions, including as a result of (i) termination of the APA due to the Transactions not having received the expiration or termination of the applicable waiting period under the HSR Act by June 30, 2023, or (ii) the Debtors being unable to secure necessary funding for these cases pending consummation of the Transactions, the Debtors intend to file immediately a motion seeking to convert the chapter 11 cases to cases under chapter 7 of the Bankruptcy Code in order to effectuate an orderly liquidation.**

The following table summarizes some of the material terms of the APA:

| SUMMARY OF MATERIAL TERMS OF APA[3] | |
|---|---|
| **Parties** | <u>Selling Entities</u>:  Vital Pharmaceuticals, Inc. and certain of its Debtor-affiliates.[4]<br><br><u>Buyer Parties</u>:<br><br>• Blast Asset Acquisition LLC, a subsidiary of Monster Beverage Corporation;<br><br>• Monster Energy Company, solely for purposes of <u>Section 7.16</u> of the APA; and<br><br>• Monster Beverage Corporation solely for purposes of <u>Section 7.16</u> and <u>Section 10.16</u> of the APA.<br><br>*See* APA, Preamble. |
| **Purchase Price** | The aggregate consideration for all or substantially all of the assets of the Selling Entities will be up to $362,000,000, which shall be inclusive of the full amount of the following:<br><br>• an amount in cash equal to the Cash Purchase Price;<br><br>• the Deposit (*i.e.*, $25,000,000); and<br><br>• the assumption of the Assumed Liabilities by execution of the Assignment and Assumption Agreement.<br><br>An additional $10,000,000 to paid by the Buyer in cash promptly (but not later than thirty (30) days) following the Buyer's receipt (pursuant to the transfer documents in form and content reasonably satisfactory to the Buyer) of title to and ownership of certain Intellectual Property set forth in the APA, presently titled in the name of Entourage IP Holdings, LLC.<br><br>The Seller will apply the Cash Purchase Price as follows: (i) $16,000,000 to satisfy Encumbrances against the Owned Real Property; (ii) $4,000,000 set aside to pay Excluded WARN Act Liabilities; (iii) $4,000,000 set aside to pay all Liabilities to prior or current employees of the Seller for Excluded Liabilities; and (iv) the remainder to pay the Debtors, subject to payment of the DIP Obligations as set forth |

---

[3]  This summary is provided for the convenience of the Court and parties in interest.  To the extent there is any conflict between this summary and the APA, the latter governs in all respects.  This is a general overview, subject in all respects to the terms of the definitive documents.  There are several adjustments and caveats.  Please read the documents carefully.  Capitalized terms used that are not defined in this summary have the respective meanings set forth in the APA.

[4]  The "<u>Selling Entities</u>" include the following Debtor entities: (a) Vital Pharmaceuticals, Inc.; (b) Vital Pharmaceuticals, International Sales, Inc.; (c) JHO Intellectual Property Holdings, LLC; (d) JHO Real Estate Investment, LLC; (e) Quash Seltzer, LLC; and (f) Rainbow Unicorn Bev, LLC.

| SUMMARY OF MATERIAL TERMS OF APA[3] | |
|---|---|
| | in the Sale Order. |
| | *See* APA, §3.1. |
| | It is the intent of the Buyer and the Selling Entities that portions of the Cash Purchase Price be used to honor and/or otherwise satisfy certain of the Debtors' obligations to, among others, certain of their employees and distributors. |
| **Purchased Assets** | The assets shall include substantially all of the Selling Entities' assets related to the Business. |
| | *See* APA, §2.1. |
| **Assumed Liabilities** | In accordance with the terms of the APA, the Buyer shall assume, among other things: |
| | • Liabilities arising out of the Selling Entities' business or relating to the Purchased Assets from and after Closing or from manufacturing or promoting the Business after Closing; |
| | • Liabilities of the Selling Entities arising under the Assumed Agreements and the Assumed Real Property Leases from and after Closing and after the Petition Date but not yet due as of Closing; |
| | • Cure Payments not otherwise paid by the Buyer at Closing; |
| | • Liabilities for taxes on Purchased Assets for any Post-Closing Tax Period; |
| | • Liabilities entitled to be set off for Accounts Receivable that are Purchased Assets; and |
| | • the Assumed WARN Act Liabilities. |
| | *See* APA, §2.3. |
| **Closing Conditions** | The obligations of the parties to consummate the Transactions shall be subject to the satisfaction of the conditions precedent as set forth in the Transaction Documents.  Such conditions precedent include: (a) no Law or Order has been issued that makes the transaction illegal or prohibits it; (b) that all applicable waiting periods, including the HSR Act waiting period, shall have expired or been terminated; (c) that the Court shall have entered the Sale Order and such Sale Order shall be a Final Order; and (d) the Court shall have entered the 9019 Order, which order shall approve that certain settlement reflecting a compromise among the Debtors, their DIP Lenders, the Official Committee of Unsecured Creditors, Monster Energy Company, Monster Beverage Corporation, and Orange Bang, Inc. concerning the allowance and/or treatment of certain claims held or asserted by the DIP Lenders, Monster Energy Company, Monster Beverage Corporation, and Orange Bang, Inc. |

| SUMMARY OF MATERIAL TERMS OF APA[3] | |
|---|---|
| | *See* APA, Art. 8. |
| **Guarantee** | Monster Beverage Corporation shall guarantee the obligations of the Buyer under the APA up to the Purchase Price. *See* APA, §10.16. |
| **"Insider" Status of Buyer** | The Buyer is not an "insider" or otherwise affiliated with the Debtors. |
| **Mutual Release** | The APA contemplates consensual, mutual releases by the Selling Entities, their estates, and certain related parties and representatives, on the one hand, and the Buyer and certain related parties and representatives, on the other hand (including, in the case of the Buyer, releases of any claims against the Seller Related Parties constituting Purchased Assets), subject to certain carve-outs. *See* APA, §7.16. |
| **Closing and Other Deadlines** | The APA provides June 30, 2023 or 17 days after the Sale Order is entered and, in any event, no later than August 3, 2023 as the Outside Date for Closing. *See* APA, §9.1(g). |
| **Requested Findings as to Successor Liability** | The Debtors expect the proposed Sale Order to include a customary finding concerning the absence of successor liability for the Buyer. |

    **PLEASE TAKE FURTHER NOTICE** that a hearing to consider approval of the sale of the Debtors' assets to Blast Asset Acquisition LLC will be held before the Honorable Judge Peter D. Russin, United States Bankruptcy Judge for the Southern District of Florida, at the Bankruptcy Court, 299 E Broward Blvd., Courtroom 112, Fort Lauderdale, FL 33301 on **July 13, 2023 at 1:30 p.m. (Prevailing Eastern Time)**. The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.

    **PLEASE TAKE FURTHER NOTICE** that any objections to: (i) the identity of the Successful Bidder, and/or (ii) adequate assurance of future performance by the Successful Bidder, in each case, must be filed with the Court **no later than 4:00 p.m. (Prevailing Eastern Time) on July 7, 2023**.

    **PLEASE TAKE FURTHER NOTICE** that parties interested in receiving more information regarding the contemplated sale and/or copies of any related documents may visit the website maintained by Stretto, Inc., the Debtors' court-approved noticing, claims, and solicitation agent at https://cases.stretto.com/VitalPharmaceuticals.

Dated:   June 28, 2023                                    Respectfully submitted,
         Miami, Florida

                                                         /s/ Jordi Guso
George A. Davis (admitted *pro hac vice*)                Jordi Guso
Liza L. Burton (admitted *pro hac vice*)                 Florida Bar No. 863580
Jonathan J. Weichselbaum (admitted *pro hac vice*)       Michael J. Niles
**LATHAM & WATKINS LLP**                                 Florida Bar No. 107203
1271 Avenue of the Americas                              **BERGER SINGERMAN LLP**
New York, NY 10020                                       1450 Brickell Avenue, Suite 1900
Telephone:  (212) 906-1200                               Miami, FL 33131
Email:  george.davis@lw.com                              Telephone:  (305) 755-9500
        liza.burton@lw.com                               Email:  jguso@bergersingerman.com
        jon.weichselbaum@lw.com                                  mniles@bergersingerman.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Joseph C. Celentino[5] (admitted *pro hac vice*)
Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  joe.celentino@lw.com
        whit.morley@lw.com

*Counsel for Debtors and Debtors in Possession*

---

[5]  Not admitted in Illinois.  Admitted in New York.

6

# EXHIBIT 1

## Asset Purchase Agreement

*EXECUTION VERSION*

**ASSET PURCHASE AGREEMENT**

**BY AND AMONG**

**VITAL PHARMACEUTICALS, INC., AS THE SELLER,**

**EACH OF THE AFFILIATES OF THE SELLER LISTED ON SCHEDULE I**

**AND**

**BLAST ASSET ACQUISITION LLC, AS THE BUYER,**

**SOLELY FOR PURPOSES OF SECTION 7.16,**

**MONSTER ENERGY COMPANY**

**AND**

**SOLELY FOR PURPOSES OF SECTION 7.16 AND SECTION 10.16,**

**MONSTER BEVERAGE CORPORATION**

**DATED AS OF JUNE 28, 2023**

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS ................................................................................................4

    Section 1.1    Definitions..........................................................................................4
    Section 1.2    Construction......................................................................................21

ARTICLE II PURCHASE AND SALE ............................................................................22

    Section 2.1    Purchase and Sale of Assets............................................................22
    Section 2.2    Excluded Assets ...............................................................................25
    Section 2.3    Assumed Liabilities .........................................................................27
    Section 2.4    Excluded Liabilities .........................................................................28
    Section 2.5    Assumption and Assignment of Certain Contracts.........................29
    Section 2.6    Designation of Assets and Liabilities ..............................................31
    Section 2.7    Consents to Certain Assignments ....................................................31
    Section 2.8    Wrong Pockets .................................................................................32

ARTICLE III PURCHASE PRICE; DEPOSIT ...............................................................33

    Section 3.1    Purchase Price..................................................................................33
    Section 3.2    Deposit Escrow; Deposit Release ...................................................34
    Section 3.3    Allocation.........................................................................................36
    Section 3.4    Closing Cash Amount ......................................................................37

ARTICLE IV THE CLOSING ..........................................................................................38

    Section 4.1    Time and Place of the Closing.........................................................38
    Section 4.2    Deliveries by the Seller....................................................................38
    Section 4.3    Deliveries by the Buyer ...................................................................39

ARTICLE V REPRESENTATIONS AND WARRANTIES OF THE SELLING
ENTITIES ........................................................................................................................39

    Section 5.1    Organization, Standing and Corporate Power ................................39
    Section 5.2    Authority; Execution and Delivery; Enforceability.......................39
    Section 5.3    No Conflicts.....................................................................................40
    Section 5.4    Legal Proceedings and Orders ........................................................41
    Section 5.5    Permits .............................................................................................41
    Section 5.6    Compliance with Law ......................................................................42
    Section 5.7    Absence of Certain Developments...................................................42
    Section 5.8    Financial Statements ........................................................................42
    Section 5.9    Employee Benefit Plans ...................................................................43
    Section 5.10    Material Contracts............................................................................45
    Section 5.11    Intellectual Property; Information Technology ...............................46
    Section 5.12    Data Privacy.....................................................................................47
    Section 5.13    Taxes................................................................................................48

Section 5.14    Insurance .................................................................................................48
Section 5.15    Title to Assets; Real Property ...............................................................49
Section 5.16    Environmental Matters ...........................................................................50
Section 5.17    Brokers ....................................................................................................51
Section 5.18    OFAC; Foreign Corrupt Practices Act; Anticorruption Laws ...............51
Section 5.19    Material Customers; Material Suppliers .................................................51
Section 5.20    Affiliate Transactions .............................................................................52
Section 5.21    Sufficiency of Assets .............................................................................52
Section 5.22    Food Regulatory Matters ........................................................................52

ARTICLE VI REPRESENTATIONS AND WARRANTIES OF THE BUYER ........................53

Section 6.1    Organization and Good Standing ............................................................53
Section 6.2    Authority Relative to this Agreement ......................................................53
Section 6.3    No Violation; Consents ...........................................................................53
Section 6.4    Legal Proceedings and Orders ................................................................54
Section 6.5    Brokers ....................................................................................................54
Section 6.6    Buyer Funding ........................................................................................54
Section 6.7    Solvency ..................................................................................................55

ARTICLE VII COVENANTS OF THE PARTIES .................................................................55

Section 7.1    Conduct of Business of the Selling Entities ............................................55
Section 7.2    Allowed Claims of MEC and Orange Bang, Inc. ....................................57
Section 7.3    Access to and Delivery of Information; Maintenance of Records;
                Transition and Destruction .....................................................................57
Section 7.4    Expenses ..................................................................................................59
Section 7.5    Further Assurances ..................................................................................59
Section 7.6    Public Statements ....................................................................................60
Section 7.7    Governmental Authority Approvals and Cooperation ..............................60
Section 7.8    Termination or Assumption of Certain Intellectual Property
                Licenses/Agreements ..............................................................................62
Section 7.9    Employee Matters ...................................................................................63
Section 7.10   Tax Matters .............................................................................................65
Section 7.11   Submission for Bankruptcy Court Approval ...........................................66
Section 7.12   Adequate Assurance ...............................................................................67
Section 7.13   Transfer of Purchased Assets; Wind-Down of Subsidiaries;
                Payments Received ..................................................................................67
Section 7.14   Name Changes .........................................................................................69
Section 7.15   Purchased Assets "AS IS;" Certain Acknowledgements ..........................69
Section 7.16   Mutual Release ........................................................................................70
Section 7.17   Withholding .............................................................................................73
Section 7.18   Title Matters ............................................................................................74
Section 7.19   OBI/Monster Escrow ...............................................................................74
Section 7.20   Contributions ...........................................................................................75
Section 7.21   Reservation of Rights ..............................................................................75
Section 7.22   Vehicle Loans ..........................................................................................76

Section 7.23   Ratification ................................................................................76

ARTICLE VIII CONDITIONS TO CLOSING ................................................................76

Section 8.1   Conditions to Each Party's Obligations to Effect the Closing .................76
Section 8.2   Conditions to Obligations of the Buyer ...............................................77
Section 8.3   Conditions to Obligations of the Selling Entities ................................77
Section 8.4   Frustration of Closing Conditions ....................................................78

ARTICLE IX TERMINATION; WAIVER .....................................................................78

Section 9.1   Termination .................................................................................78
Section 9.2   Procedure and Effect of Termination ...............................................81
Section 9.3   Extension; Waiver .........................................................................82

ARTICLE X MISCELLANEOUS PROVISIONS ...........................................................82

Section 10.1   Amendment and Modification .........................................................82
Section 10.2   Survival ....................................................................................82
Section 10.3   Notices .....................................................................................82
Section 10.4   Assignment ................................................................................83
Section 10.5   Severability ...............................................................................84
Section 10.6   Governing Law ...........................................................................84
Section 10.7   Acknowledgement and Release; Non-Recourse ................................84
Section 10.8   Submission to Jurisdiction; WAIVER OF JURY TRIAL ......................85
Section 10.9   Counterparts ..............................................................................86
Section 10.10   Incorporation of Schedules and Exhibits ........................................87
Section 10.11   Entire Agreement .......................................................................87
Section 10.12   Specific Performance ..................................................................87
Section 10.13   Bulk Sales or Transfer Laws ........................................................88
Section 10.14   Seller Disclosure Schedule ..........................................................88
Section 10.15   Mutual Drafting; Headings; Information Made Available ...................89
Section 10.16   Guarantee ................................................................................89
Section 10.17   Use of Retained Records .............................................................91
Section 10.18   Approval of the Bankruptcy Court .................................................92

SCHEDULES

Schedule I               Other Selling Entities

Seller Disclosure Schedules

Section 1.1(a)           Business Marks
Section 1.1(b)           Permitted Encumbrances
Section 1.1(c)           Real Property Leases
Section 2.1(d)           Assumed Agreements
Section 2.1(e)           Assumed Real Property Leases
Section 2.1(f)           Owned Real Property
Section 2.1(h)           Personal Property Assets
Section 2.2              Excluded Assets
Section 2.4(j)           Additional Excluded Liabilities
Section 2.5(a)           Amounts Necessary to Cure Defaults of Assumed Contracts
Section 3.1(a)           Entourage Assets
Section 5.2              Authority; Execution and Delivery; Enforceability
Section 5.3(a)           Required Consents and Approvals
Section 5.4              Legal Proceedings and Orders
Section 5.5              Permits
Section 5.6              Compliance with Laws
Section 5.7              Absence of Certain Developments
Section 5.8              Financial Statements
Section 5.9              Employee Benefit Plans
Section 5.10             Material Contracts
Section 5.11             Intellectual Property
Section 5.13             Taxes
Section 5.14             Insurance
Section 5.15             Title to Assets; Real Property
Section 5.17             Brokers
Section 5.19             Material Customers; Material Suppliers
Section 5.20             Affiliate Transactions
Section 5.21             Sufficiency of Assets
Section 5.22             Food Regulatory Matters
Section 7.1              Conduct of Business of Selling Entities
Section 7.3              Trade Secret Cooperation
Section 7.8(b)           Termination of Certain Intellectual Property Licenses/Agreements
Section 7.8(c)           Assumption of Certain Intellectual Property Licenses/Agreements
Section 9.1(k)           Budget

EXHIBITS

Exhibit A                Form of Sale Order
Exhibit B                Form of Assignment and Assumption Agreement
Exhibit C                Form of Bill of Sale

Exhibit D          Form of Intellectual Property Assignment Agreements
Exhibit E          Escrow Agreement
Exhibit F          Form of Mutual Release of Liability
Exhibit G          Form of Owner's Affidavit
Exhibit H          Form of Deed

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (as amended, modified or supplemented from time to time, this "Agreement") is made and entered into as of June 28, 2023, by and among Vital Pharmaceuticals, Inc., a Florida corporation (the "Seller"), the Affiliates of the Seller listed on Schedule I (such Affiliates, together with the Seller, the "Selling Entities"), and Blast Asset Acquisition LLC, a Delaware limited liability company (the "Buyer"), solely for purposes of Section 7.16, Monster Energy Company, a Delaware corporation ("MEC"), and solely for purposes of Section 7.16 and Section 10.16, Monster Beverage Corporation, a Delaware corporation ("MBC"). Each of the Selling Entities and the Buyer are referred to herein as a "Party" and collectively as the "Parties." Capitalized terms used but not otherwise defined herein have the meanings set forth in Article I.

## RECITALS

**WHEREAS**, the Seller and the other Debtor Entities commenced voluntary cases under the Bankruptcy Code in the Bankruptcy Court on October 10, 2022 (the "Petition Date");

**WHEREAS**, each of the Seller and the other Debtor Entities continues to be in possession of its assets and is authorized under the Bankruptcy Code to continue the operation of its businesses as a debtor-in-possession;

**WHEREAS**, the Buyer desires to purchase from the Selling Entities, and the Selling Entities desire to sell to the Buyer, those assets of the Selling Entities which are more particularly described in the provisions hereof, and the Buyer desires to assume from the Selling Entities, certain specified liabilities, in each case pursuant to the terms and subject to the conditions set forth herein;

**WHEREAS**, as a condition and inducement to the Selling Entities' willingness to enter into this Agreement, MBC is joining in this Agreement to guarantee the obligations of the Buyer in connection with this Agreement (MBC in its capacity as the provider of such guarantee, the "Guarantor") pursuant to and to the extent set forth in Section 10.16 hereof;

**WHEREAS**, HSR filings were submitted by the Buyer and Seller on May 23, 2023, after which the Buyer withdrew its HSR filing on June 6, 2023, and the Buyer resubmitted that filing on June 7, 2023;

**WHEREAS**, the Buyer and Seller received second requests from the FTC on June 22, 2023;

**WHEREAS,** if the second requests are not rescinded by the FTC, the investigation is not closed, and/or the HSR Act waiting period (including any extensions thereof) has not expired or been terminated by June 30, 2023, this Agreement shall automatically terminate on such date, unless such date is expressly extended in writing by both the Buyer and the Selling Entities;

**WHEREAS,** upon this Agreement terminating pursuant to Section 9.1(g)(i) hereof, the Deposit shall immediately be returned to the Buyer;

**WHEREAS**, the Selling Entities and the Buyer have agreed that the sale, transfer and assignment of the Purchased Assets and the Assumed Liabilities from the Selling Entities to the Buyer shall be effected pursuant to sections 105, 363 and 365 of the Bankruptcy Code; and

**WHEREAS**, in connection with the Bankruptcy Case and subject to the terms and conditions contained herein, following entry of the Sale Order, the Selling Entities shall sell and transfer to the Buyer, and the Buyer shall purchase and acquire from the Selling Entities, pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Purchased Assets, and the Buyer shall assume from the Selling Entities the Assumed Liabilities, all as more specifically provided herein and in the Sale Order.

**NOW**, **THEREFORE**, in consideration of the premises and of the mutual covenants and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

## ARTICLE I
## DEFINITIONS

Section 1.1    <u>Definitions</u>.    A defined term has its defined meaning throughout this Agreement and in each Exhibit and Schedule to this Agreement, regardless of whether it appears before or after the place where it is defined.  As used in this Agreement, the following terms have the meanings specified below:

"<u>9019 Motion</u>" means the *Debtors' Expedited Motion to Approve Compromise between (I) the Debtors, (II) Monster Energy Company, (III) Monster Beverage Corporation, (IV) Orange Bang, Inc., (V) the Committee, and (VI) the Supporting Lenders*.

"<u>9019 Order</u>" means an order entered by the Bankruptcy Court granting the 9019 Motion, in form and substance reasonably acceptable to the Seller and the Buyer.

"<u>ACA</u>" has the meaning given to such term in <u>Section 5.9(c)</u>.

"<u>Accounting Firm</u>" has the meaning given to such term in <u>Section 3.3</u>.

"<u>Accounts Receivable</u>" means any and all (a) accounts receivable, notes receivable, trade receivables and other amounts receivable generated by the Business or otherwise owed to the Selling Entities (whether current or non-current), together with all security or collateral therefor and any interest or unpaid financing charges accrued thereon, including all causes of action pertaining to the collection of amounts payable, or that may become payable, to the Selling Entities with respect to products sold or services performed on or prior to the Closing Date, (b) license and royalty receivables payable, or that may become payable, to the Selling Entities with respect to products sold or services performed on or prior to the Closing Date and (c) other amounts due to the Selling Entities which the Selling Entities have historically classified as accounts receivable in the Seller Financial Statements with respect to products sold or services performed on or prior to the Closing Date.

"Affiliate" means, with respect to any specified Person, any other Person that directly or indirectly, through one or more intermediaries, controls, is controlled by or is under common control with, such specified Person.  For purposes of this definition, "control" (and any similar term) means the power of one or more Persons to direct, or cause the direction of, the management or affairs of another Person by reason of ownership of voting stock, as general partner or managing member or by Contract or otherwise.

"Agreement" has the meaning given to such term in the Preamble hereto.

"Allocation" has the meaning given to such term in Section 3.3.

"Anticorruption Laws" means all Laws of any jurisdiction applicable to the Selling Entities or the Business from time to time concerning or relating to bribery or corruption.

"Assignment and Assumption Agreement" means one or more Assignment and Assumption Agreements to be executed and delivered by the Buyer and the Selling Entities at the Closing, with respect to the Assumed Agreements, Assumed Liabilities, and the Assumed Real Property Leases, substantially in the form of Exhibit B.

"Assumed Agreements" has the meaning given to such term in Section 2.1(d).

"Assumed Liabilities" has the meaning given to such term in Section 2.3.

"Assumed Real Property Leases" has the meaning given to such term in Section 2.1(e).

"Assumed WARN Act Liabilities" has the meaning given to such term in Section 7.9(b).

"Assumption Approval" has the meaning given to such term in Section 2.5(g).

"Balance Sheet Date" has the meaning given to such term in Section 5.8(a).

"Bankruptcy Case" means the Seller's and the Debtor Entities' cases commenced under Chapter 11 of the Bankruptcy Code jointly administered under Case No. 22-17842 (PDR) in the Bankruptcy Court.

"Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*, as amended.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Florida or such other court having competent jurisdiction over the Bankruptcy Case.

"Bill of Sale" means one or more Bills of Sale to be executed and delivered by the Selling Entities to the Buyer at the Closing, substantially in the form of Exhibit C.

"Business" means the business of designing, formulating, manufacturing, marketing, distributing and selling energy and performance beverages, nutritional supplements and low alcohol beverages and products, services and merchandising to the extent relating to the foregoing,

including under the Business Marks, in each case, as conducted by the Selling Entities in the United States of America.

"<u>Business Day</u>" means any day that is not a Saturday, Sunday or other day on which banks are required or authorized by Law to be closed in New York, New York.

"<u>Business Marks</u>" means all Trademarks in all classes of goods and services containing, in whole or in part, the names, terms or logos listed on <u>Section 1.1(a)</u> of the Seller Disclosure Schedule, or any combinations or variation thereof.

"<u>Business Names</u>" means "Bang," "Bang Energy" and any names being used by the Selling Entities as of the date of this Agreement.

"<u>Buyer</u>" has the meaning given to such term in the Preamble hereto.

"<u>Buyer Default Termination</u>" has the meaning given to such term in <u>Section 3.2</u>.

"<u>Buyer Fundamental Representations</u>" has the meaning given to such term in <u>Section 8.3(b)</u>.

"<u>Buyer Related Party</u>" means, collectively, the Buyer and its Affiliates (including MEC and MBC) and each of the foregoing's respective current and former Representatives; but excluding, in all cases, any Excluded Parties.

"<u>Buyer Releasing Party</u>" has the meaning given to such term in <u>Section 7.16(a)</u>.

"<u>California District Court</u>" means the United States District Court for the Central District of California.

"<u>California District Court Action</u>" means the action including the Seller, MEC, and John H. "Jack" Owoc filed in the California District Court, captioned *Monster Energy Co. v. Vital Pharmaceuticals, Inc.*, Case No. 18-cv-1882 (C.D. Cal., filed Sept. 4, 2018), including the appeals thereof and any other related Proceedings.

"<u>California District Court Action Allowed Unsecured Claim</u>" means an allowed general unsecured claim in the Bankruptcy Case in favor of MEC in an amount equal to (i) $292,939,761.00, minus the amount of any remittitur granted by the California District Court pursuant to any ruling on the Seller Post-Verdict Motion (or, in the case of a judgment notwithstanding the verdict in favor of the Seller or a grant of a new trial, minus the entire amount), plus accrued interest (if any) until the Petition Date, plus (ii) fifty percent (50%) of any additional award as shall be determined by the California District Court, including, pursuant to any ruling on the MEC Post-Verdict Motion, plus accrued interest until the Petition Date.

"<u>Cash</u>" means any cash and cash equivalents (including checks, deposits, demand deposits, money markets or similar accounts, escrow accounts, checking account balances, marketable securities, short-term instruments, certificates of deposits, time deposits, bankers' acceptances, commercial paper, security entitlements, securities accounts or deposits, commodity Contracts,

commodity accounts, government securities and any other cash equivalents, whether on hand, in transit, in banks or other financial institutions, or otherwise held by or on behalf of any Person).

"Cash Purchase Price" means an amount equal to (a) Three Hundred Sixty Two Million Dollars ($362,000,000.00) plus (b) the Closing Cash Amount minus (c) the Deposit. For the purposes of the definition of "Cash Purchase Price," the "Deposit" shall include any interest accrued on the amount deposited by the Buyer into the Escrow Account pursuant to Section 3.2.

"Claim" has the meaning given to such term in Section 101(5) of the Bankruptcy Code, except when used in the definition of Excluded Estate Claims and in Section 7.16, in which cases it has the meaning given in Section 7.16.

"Closing" has the meaning given to such term in Section 4.1.

"Closing Cash Amount" means, without duplication, the aggregate amount of (i) the Purchased Assets which will be acquired by the Buyer at the Closing pursuant to and in accordance with Section 2.1(c), calculated based upon and consistent with the books and financial records of the Selling Entities; and (ii) to the extent the Buyer designates as an Assumed Agreement or an Assumed Real Property Lease, as applicable, in accordance with Section 2.5, any Non-Real Property Contract or Real Property Lease that any Selling Entity is seeking to reject, all amounts, costs and expenses incurred, owing or outstanding as of the Closing, or paid by the Selling Entities after (x) filing a motion to reject or (y) otherwise providing written notice to the Buyer of the Selling Entities' intent to reject, but as of or prior to the Closing (or if later, the date on which such Non-Real Property Contract or Real Property Lease, as applicable, is assumed by the Buyer), under all such Non-Real Property Contracts and Real Property Leases.

"Closing Date" has the meaning given to such term in Section 4.1.

"Closing Payroll Period" has the meaning given to such term in Section 7.9(d).

"Closing Statement" has the meaning given to such term in Section 3.4(b).

"COBRA" has the meaning given to such term in Section 7.9(b).

"Code" means the Internal Revenue Code of 1986, as amended.

"Cohen Matter" means the action including MEC and Stephen Cohen filed in the Superior Court for the State of California, County of San Diego, captioned *Monster Energy Co. v. Stephen Cohen*, Case No. 37-2019-00051917 (San Diego Super. Ct., filed Sept. 26, 2019).

"Confidentiality Agreement" means, collectively, (i) the Confidentiality and Non-Disclosure Agreement, by and between the Seller and MEC, dated February 15, 2023, and (ii) the Clean Team Addendum thereto dated as of the same date.

"Consent" means any approval, consent, ratification, designation, permission, clearance, waiver or other authorization.

"Contract" means, with respect to any Person, any lease, sublease, contract, license, sublicense or other agreement (including any employment, marketing, distributor or other type of contract or agreement) to which such Person is a party or by which such Person is bound, whether written or oral, and that is legally enforceable against such Person.

"Contract Notice Period" has the meaning given to such term in Section 2.5(d).

"Cure Payments" has the meaning given to such term in Section 2.5(f).

"Cure Schedule" has the meaning given to such term in Section 7.11(b).

"Debtor Entities" means (a) the Seller, (b) Bang Energy Canada, Inc., a Florida corporation, (c) JHO Intellectual Property Holdings, LLC, a Florida limited liability company, (d) JHO Real Estate Investment, LLC, a Florida limited liability company, (e) Quash Seltzer, LLC, a Florida limited liability company, (f) Rainbow Unicorn Bev, LLC, a Florida limited liability company, and (g) Vital Pharmaceuticals International Sales, Inc., a Delaware corporation.

"Deed" means one or more Special Warranty Deeds transferring fee simple title (or the local equivalent) of the applicable Owned Real Property to the Buyer to be executed, notarized, and delivered by the applicable Selling Entities to the Buyer at Closing, in each case, in all material respects in the form attached hereto as Exhibit H.

"Dees Matter" means the action including MEC and Bryan Shane Dees filed before JAMS, captioned *Monster Energy Co. v. Bryan Shane Dees*, Case No. 1310025232 (JAMS, filed Oct. 8, 2020).

"Deposit" has the meaning given to such term in Section 3.2.

"DIP Lenders" has the meaning given to such term in the DIP Order.

"DIP Obligations" has the meaning given to such term in the DIP Order.

"DIP Order" means the Final Order *(I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief*, ECF No. 638, filed on January 12, 2023.

"D&O Claims" means all rights, claims and causes of action against any current or former director, officer, equityholder or Transferred Employee of any Selling Entity and all rights, claims and causes of action under director and officer, fiduciary, employment practices and similar insurance policies maintained by any Selling Entity.

"D&O Insurance" has the meaning given to such term in Section 2.2(o).

"Documentary Materials" has the meaning given to such term in Section 2.1(i).

"DOJ" has the meaning given to such term in Section 7.7(a).

"DOL" has the meaning given to such term in Section 5.9(b).

"Employees" means all employees of the Selling Entities, including those on disability or a leave of absence, whether paid or unpaid.

"Encumbrance" means any charge, lien (statutory or otherwise), mortgage, lease, hypothecation, encumbrance, pledge, security interest, option, right of use, first offer or first refusal, easement, servitude, encroachment or similar restriction or other encumbrance affecting any right or title to the Purchased Assets.

"Entourage Assets" has the meaning given to such term in Section 3.1(a).

"Entourage Consideration" has the meaning given to such term in Section 3.1(a).

"Entourage IP Holdings" means Entourage IP Holdings, LLC, a Florida limited liability company.

"Environmental Laws" means Laws relating to pollution, natural resources, Hazardous Materials, or the protection of the environment or to occupational health and safety.

"Environmental Permits" means any permit, certificate, consent, registration, notice, approval, identification number, license or other authorization required under any applicable Environmental Law.

"ERISA" has the meaning given to such term in Section 5.9(a).

"ERISA Affiliate" has the meaning given to such term in Section 5.9(e).

"Escrow Account" has the meaning given to such term in Section 3.2.

"Escrow Agent" has the meaning given to such term in Section 3.2.

"Escrow Agreement" has the meaning given to such term in Section 3.2.

"Excluded Assets" has the meaning given to such term in Section 2.2.

"Excluded Estate Claims" means (i) any rights, claims or causes of action as of the Closing of any Selling Entity or any of its Affiliates (including any D&O Claims) against any of the Excluded Parties and (ii) any rights, claims or causes of action that relate to any Excluded Assets or Excluded Liabilities.

"Excluded Liabilities" has the meaning given to such term in Section 2.4.

"Excluded Parties" means each of John "Jack" H. Owoc, Megan E. Owoc, each of their family members, any of their Affiliates, and any trusts or other estate planning vehicles of which any of the foregoing are trustees or beneficiaries, in each case that are not Selling Entities, including Entourage IP Holdings, LLC, Cognitive IP Holdings, LLC, Fun Energy, LLC, Bang Energy Family, LLC, Bang Gyms, LLC, Candemonium, LLC, Captain Crunch Fishing, LLC, Liquid IP Holdings, LLC, The Fixx, LLC, Bang Vapes, LLC, Ultra Experiences, LLC, Bang

Foods, LLC, Energy Train, LLC, VPX Swim and Sports Gear, LLC, Stoked Seltzer, LLC, Stoked Brands, LLC, Birth Right, LLC, Bang Energy International, LLC, JHO GA-1 Investment, LLC, JHO NV-1 Investment, LLC, Sheridan Real Estate Investment A, LLC, Sheridan Real Estate Investment B, LLC and Sheridan Real Estate Investment C, LLC.

"Excluded WARN Act Liabilities" has the meaning given to such term in Section 7.9(b).

"FCPA" has the meaning given to such term in Section 5.18(b).

"FDA" has the meaning given to such term in the definition of "Food Regulatory Laws."

"Filing Fees" has the meaning given to such term in Section 7.7(a).

"Final Allocation" has the meaning given to such term in Section 3.3.

"Final Order" means a judgment or order of the Bankruptcy Court (or any other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court (or such other court) on the docket in the Bankruptcy Cases (or the docket of such other court), which has not been modified, amended, reversed, vacated or stayed (other than such modifications or amendments that are consented in writing to by the Buyer) and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, stay, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, stay, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument or rehearing shall have expired, as a result of which such proceeding or order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure; *provided* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedures, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be filed relating to such order, shall not cause an order not to be a Final Order.

"Food Regulatory Laws" means all laws, regulations, and requirements relating to food and beverage manufacturing, storage, preparation, packaging, marketing, advertising, labeling and sale, including the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., the Federal Trade Commission Act, 15 U.S.C. § 41 et seq., the California Safe Drinking Water and Toxic Enforcement Act of 1986 (also known as Proposition 65), Cal. Health & Safety § 25249.5 et seq., relevant provisions of 9 C.F.R. pt. 66 (the United States Department of Agriculture's national mandatory bioengineered food disclosure standard), and other applicable laws and regulations administered or issued by the U.S. Food and Drug Administration ("FDA"), the FTC, or any similar governmental entity where the Selling Entities' products are manufactured, stored, prepared, packaged, marketed, advertised, labeled or sold.

"Fraud" means an act committed by (a) the Selling Entities, in the making to the Buyer of the representations and warranties expressly contained in Article V (as qualified by the Seller Disclosure Schedules and in accordance with the express terms and conditions (including limitations and exclusions) of this Agreement) or in the certificate to be delivered pursuant to Section 8.2(c), and (b) the Buyer, in the making to the Selling Entities of the representations and

warranties expressly contained in <u>Article VI</u> (in accordance with the express terms and conditions (including limitations and exclusions) of this Agreement) or in the certificate to be delivered pursuant to <u>Section 8.3(c)</u>, in any such case, that constitutes actual and intentional fraud under Delaware Law (and does not in any case include any fraud or claim based on equitable fraud, constructive knowledge, promissory fraud, reckless or negligent misrepresentation or omission, or a similar theory).

"<u>FTC</u>" has the meaning given to such term in <u>Section 7.7(a)</u>.

"<u>GAAP</u>" means generally accepted accounting principles in the United States.

"<u>General Enforceability Exceptions</u>" means (a) bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and other similar Laws of general application affecting or relating to the enforcement of creditors' rights generally and (b) general equitable principles, whether considered in a proceeding at law or in equity.

"<u>Governmental Authority</u>" means any federal, municipal, state, regional, provincial, local or foreign governmental, quasi-governmental, self-regulatory, administrative or regulatory authority, department, agency, board, bureau, commission or body (including any court, arbitral body or similar tribunal), including the Bankruptcy Court.

"<u>Governmental Authorization</u>" means any Permit or Consent issued, granted, given or otherwise made available by or under the authority of any Governmental Authority or pursuant to any Law.

"<u>Guaranteed Obligations</u>" is defined in <u>Section 10.16(a)</u>.

"<u>Guarantor</u>" has the meaning given to such term in the Recitals above.

"<u>Hazardous Materials</u>" means any material, substance or waste that is listed, classified, regulated, characterized or otherwise defined as "hazardous," "toxic," "radioactive," a "pollutant," or "contaminant," (or words of similar intent or meaning) under any Environmental Laws, including any quantity of asbestos in any form, urea formaldehyde, PCBs, radon gas, mold, crude oil or any fraction thereof, all forms of natural gas, petroleum products, petroleum breakdown products, petroleum by-products or petroleum derivatives.

"<u>HSR Act</u>" has the meaning given to such term in <u>Section 7.7(a)</u>.

"<u>Intellectual Property</u>" means the global intellectual or proprietary rights, which may exist or be created under the Laws of any jurisdiction in the world, including all: (a) rights associated with works of authorship (including can art, text, and graphics, packaging art, text and graphics, and website art, text and graphics and copyrights in the Trademarks), including exclusive exploitation rights, mask work rights, copyrights, and moral and similar attribution rights; (b) Trademarks, and design rights; (c) proprietary rights in internet domain names, IP addresses, social media and third-party website handles, pages, and accounts including the access information for the same; (d) trade secrets, formulas, recipes, and ingredients lists, including the access information for the same, know-how, technical data, processes, techniques, lists of or information relating to suppliers and customers, pricing lists and methodologies, cost and market share data,

11

marketing and business plans, financial forecasts and histories, and budgets; (e) patents, industrial design and other industrial property rights; (f) rights in or relating to any and all registrations, goodwill, issuances, provisionals, reissuances, continuations, continuations-in-part, revisions, substitutions, reexaminations, renewals, extensions, combinations, divisions, and reissues of, and applications for, any of the foregoing rights and all common law rights; (g) rights of publicity; and (h) rights to prosecute, sue, enforce, or recover or retain damages, costs, or attorneys' fees with respect to the past, present and future infringement, misappropriation, dilution, unauthorized use or disclosure, or other violation of any of the foregoing.

"Inventory" means all inventory (including raw materials, products in-process, finished products, goods in transit, packaging materials and other inventories) owned by any of the Selling Entities relating to the Business, wherever located and whether in the Selling Entities' warehouses, distribution facilities or otherwise.

"IP Assignment Agreements" means the Intellectual Property Assignment Agreements to be executed and delivered by the Selling Entities and the Buyer, substantially in the forms attached hereto as Exhibit D, or as amended as necessary to meet local jurisdictional requirements.

"IRS" means the U.S. Internal Revenue Service.

"IT Systems" means any and all information, payment and communications technologies owned or controlled by the Selling Entities and used in the conduct of the Business, including all computers, hardware, software (whether in object or source code form), databases, servers, workstations, routers, hubs, switches, data communication lines, networks and all other information technology systems included therein.

"Joint Defense Agreement" means that certain Common Interest and Joint Defense Agreement, to be entered into by the Parties' Representatives on behalf of the applicable Party, in the form mutually agreed upon by the Parties.

"Knowledge" means, as to a particular matter, the actual knowledge after reasonable due inquiry with respect to any Selling Entity, of John DiDonato (Chief Transformation Officer) and Gene Bukovi (Chief Operating Officer).

"Law" means any federal, state, local, municipal or foreign law, statute, legislation, common law, rule, regulation, ruling, directive, treaty, ordinance, code, or other similar requirement having the effect of law issued, enacted, adopted, promulgated, implemented or otherwise put into effect by any Governmental Authority.

"Leased Real Property" has the meaning given to such term in Section 5.15(d).

"Leopardo Matter" means the action including MEC, MBC, and Joao Paulo "JP" Leopardo filed in the United States District Court for the Central District of California, captioned *Monster Energy Co. v. Joao Paulo Leopardo*, Case No. 5:20-cv-02076 (C.D. Cal., filed Oct. 5, 2020).

"Liability" means any indebtedness, obligation, lien, loss, damage, claim, fine, penalty, judgment, duty, responsibility, expense (including reasonable attorneys' fees and reasonable costs of investigation and defense) or liability of any nature, whether known or unknown, asserted or

unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, direct or indirect, fixed, absolute or contingent, matured or unmatured, ascertained or ascertainable, disputed or undisputed, secured or unsecured, joint or several, vested or unvested, due or to become due, executory, determined or determinable, whether in contract, tort, strict liability, or otherwise.

"Material Adverse Effect" means any event, change, condition, circumstance, development, occurrence or effect that has had or would have, individually or in the aggregate, a material adverse effect on (i) the results of operations and condition (financial or otherwise) of the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, or (ii) the ability of the Selling Entities to consummate the Transactions; provided, however, that none of the following events, changes, conditions, circumstances, developments, occurrences or effects shall be taken into account, individually or in the aggregate, in determining whether a "Material Adverse Effect" has occurred for purposes of the foregoing clause (i): (a) the identity of the Buyer and the announcement of the signing of this Agreement or the other Transaction Documents or the filing of the Petitions (including any action or inaction by the customers, suppliers, landlords, employees, consultants of the Selling Entities and their respective Affiliates as a result thereof) or compliance with any obligation (including any obligation to not take action) expressly required by this Agreement or the other Transaction Documents; (b) (i) the commencement or pendency of the Bankruptcy Case, (ii) any objections in the Bankruptcy Court to (A) this Agreement, the other Transaction Documents or any of the Transactions, (B) the Sale Order or the reorganization of the Selling Entities and their Affiliates, or (C) the assumption or rejection of any Assumed Agreements, or (iii) any Order of the Bankruptcy Court or any actions or omissions of the Debtor Entities in compliance therewith; (c) the negotiation, announcement or pendency of this Agreement or the Transactions, the identity, nature or ownership of the Buyer or the Buyer's plans with respect to the Purchased Assets and the Assumed Liabilities, including the impact thereof on the relationships, contractual or otherwise, of the Business with employees, customers, lessors, suppliers, distributors, vendors or other commercial partners or litigation arising from or relating to this Agreement or the Transactions; (d) (i) actions or omissions taken or not taken by or on behalf of the Selling Entities or any of their respective Affiliates (x) to the extent permitted or required pursuant to this Agreement or (y) at the express written request of the Buyer or its Affiliates or (ii) the failure to take any action if such action is expressly prohibited by this Agreement; (e) actions taken by the Buyer or its Affiliates; (f) actions not taken by or on behalf of the Selling Entities or any of their Affiliates which (i) require the approval of the Buyer, and (ii) with respect to which the Selling Entities have requested the approval of the Buyer and such approval was not timely provided (after the disclosure to the Buyer of all material relevant facts and information); (g) failure of any Selling Entity to meet any internal or published projections, forecasts, estimates, performance metrics, operating statistics or predictions (it being understood that the foregoing shall not preclude any assertion that the facts or occurrences giving rise to or contributing to such failure that are not otherwise excluded from the definition of Material Adverse Effect should be deemed to constitute, or be taken into account in determining whether there has been, or would be, a Material Adverse Effect); (h) changes in applicable Law, GAAP or other generally accepted accounting principles in any other applicable jurisdiction, or in the interpretation, directives or enforcement of any of the foregoing, or any changes or prospective changes in general legal, regulatory or political conditions; (i) volcanoes, tsunamis, pandemics, earthquakes, fires, floods, storms, hurricanes, tornadoes or other natural disasters; (j) changes in general economic conditions, currency exchange rates or United States or international debt or equity markets; (k) events or conditions generally affecting the industry or markets in which the

Selling Entities operate; (l) national or international political or social conditions (including tariffs, riots or protests) or any national or international hostilities, acts of terror or acts of war (whether or not declared), or any escalation or worsening of any such conditions, hostilities, acts of terror or acts of war (whether or not declared); and (m) any pandemic or epidemic (including COVID-19 or any variation thereof), including outbreaks or additional waves of outbreaks and any escalation or worsening thereof, of any contagious diseases and any direct or indirect consequence thereof; *provided*, *however*, that in the cases of clauses (h) through (m) above, such event, change, condition, circumstance, development, occurrence or effect will not be taken into account in determining whether there has been a "Material Adverse Effect" only to the extent that such event, change, condition, circumstance, development, occurrence or effect does not have a materially disproportionate impact on the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, as compared to other participants in the industries in which the Selling Entities operate.

"Material Contract" has the meaning given to such term in Section 5.10(a).

"Material Customers" has the meaning given to such term in Section 5.19(a).

"Material Suppliers" has the meaning given to such term in Section 5.19(b).

"MBC" has the meaning given to such term in the Preamble hereto.

"MEC" has the meaning given to such term in the Preamble hereto.

"MEC Post-Verdict Motion" means that certain *Plaintiff Monster Energy Company's Post-Verdict Motion for Equitable Relief, Fees, and Costs* filed at docket number 928 by MEC that is pending before the court in the California District Court Action.

"Nguyen Matter" means the action including MEC and Quang Nguyen filed before JAMS, captioned *Monster Energy Co. v. Quang Nguyen*, Case No. 1110026280 (JAMS, filed Oct. 8, 2020).

"Non-Real Property Contracts" means the Contracts (including any open purchase orders) related to the Business to which any Selling Entity is a party other than the Real Property Leases.

"OBI/Monster Escrow Account" means the escrow account established pursuant to the OBI/Monster Escrow Order.

"OBI/Monster Escrow Amount" means, as of the applicable date of determination, the amounts required to be funded by the Debtor Entities pursuant to the OBI/Monster Escrow Order into the OBI/Monster Escrow Account that, in the aggregate, are equal to 5% of actual net sales of BANG-branded products that take place on and after the Petition Date through the Closing Date.

"OBI/Monster Escrow Excess" means, as of the applicable date of determination, any amounts funded by the Debtor Entities into the OBI/Monster Escrow Account in excess of the OBI/Monster Escrow Amount.

"OBI/Monster Escrow Fund" means, as of the applicable date of determination, an aggregate amount equal to all amounts funded by the Debtor Entities into the OBI/Monster Escrow Account.

"OBI/Monster Escrow Order" means the *Order Granting Debtors' and Creditors Monster Energy Company and Orange Bang, Inc.'s Joint Agreed Motion to Approve Agreement Regarding Royalty that Accrues Postpetition* [Dkt. No. 639].

"OBI/Monster Escrow Shortfall" means, as of the applicable date of determination, only to the extent that the OBI/Monster Escrow Amount is greater than the OBI/Monster Escrow Fund, an amount equal to (i) the OBI/Monster Escrow Amount minus (ii) the OBI/Monster Escrow Fund. Notwithstanding anything to the contrary herein, if the OBI/Monster Escrow Fund is greater than or equal to the OBI/Monster Escrow Amount, then the OBI/Monster Escrow Shortfall shall be zero.

"OBI/Monster Matter" means the action including the Seller, JHO Intellectual Property Holdings, LLC, Orange Bang, Inc., and MEC filed in the United States District Court for the Central District of California, captioned *Vital Pharms., Inc. and JHO Intellectual Prop. Holdings, LLC v. Orange Bang, Inc. and Monster Energy Co.*, Case No. 5:20-cv-1464, including the related arbitration proceedings and ruling, judgment, and appeals and other related Proceedings.

"OBI/Monster Matter Allowed Unsecured Claim" means an allowed general unsecured claim in the Bankruptcy Case jointly in favor of MEC and Orange Bang, Inc. in the amount of $216,131,658.35, plus accrued interest until the Petition Date; *provided, however*, that MEC agrees to subordinate any recoveries on its 100% share of the California District Court Action Allowed Unsecured Claim and its 50% share of the OBI/Monster Matter Allowed Unsecured Claim until the Selling Entities recover $5 million from the Excluded Assets, including Excluded Estate Claims, for the benefit of their estates. MEC shall not have an allowed administrative claim in the Bankruptcy Case, provided that the DIP Lenders and the Prepetition Secured Parties agree that they also will not have any allowed administrative claims in the Bankruptcy Case.

"OFAC" has the meaning given to such term in Section 5.18(a).

"Offered Employee" has the meaning given to such term in Section 7.9(a).

"Orange Bang Trademark License Action" means the adversary proceeding filed in the Bankruptcy Case by the Debtor Entities Vital Pharmaceuticals, Inc. and JHO Intellectual Property Holdings, LLC against Orange Bang, Inc. and MEC, captioned *Vital Pharmaceuticals, Inc. and JHO Intellectual Property Holdings, LLC v. Orange Bang, Inc. and Monster Energy Company*, Bankr. Adv. Pro. No. 23-01031, including the related Proceeding pending in the United States District Court for the Southern District of Florida, Case No. 23-cv-60599, the related Proceeding pending in the United States District Court for the Central District of California, Case No. 23-cv-03862, and any other related Proceedings.

"Order" means any order, writ, judgment, injunction, decree, rule, ruling, directive, determination or other award made, issued, entered or rendered by or with any Governmental Authority, whether preliminary, interlocutory or final, including any Order entered by the Bankruptcy Court in the Bankruptcy Case (including the Sale Order).

"Ordinary Course of Business" means, with respect to the Business, the ordinary and usual course of day-to-day operations of the Business consistent with past practice, in each case taking into account the Business becoming distressed and the contemplation, commencement, consummation and pendency of the Bankruptcy Case.

"Outside Date" has the meaning given to such term in Section 9.1(g)(ii).

"Owned Real Property" has the meaning given to such term in Section 2.1(f).

"Party" or "Parties" has the meaning given to such term in the Preamble hereto.

"Permits" has the meaning given to such term in Section 5.5.

"Permitted Encumbrances" means: (a) Encumbrances for Taxes, special assessments, utilities or other governmental charges not yet due and payable, that are being contested in good faith (in the case of each such contest, to the extent constituting accrued liabilities on the financial statements of Selling Entities (or the applicable Selling Entity)) or the nonpayment of which is permitted or required by the Bankruptcy Code, (b) statutory Encumbrances and rights of set-off of landlords, carriers, warehousemen, mechanics, repairmen, workmen, customs brokers or agencies, suppliers and materialmen arising in the Ordinary Course of Business, in each case for amounts not yet delinquent or that are being contested in good faith (in each case of such a contest, which accrued as liabilities on the Selling Entities' balance sheet), (c) non-exclusive, and terminable without payment, licenses of or other grants of rights to use Intellectual Property that are not material to the Business granted in the Ordinary Course of Business, and excluding any licenses or grants of rights to Excluded Parties, (d) Laws now or hereafter in effect relating to real property, leases, license agreements and other occupancy agreements, Encumbrances that are zoning regulations, building codes, entitlements and easements and similar Encumbrances, and other similar matters affecting title to such real property and other title defects which do not have a Material Adverse Effect on the current use by the Selling Entities of the real property subject thereto, (e) all matters that would be disclosed on an accurate current survey or title report or are otherwise filed or recorded in the applicable public records of the Owned Real Property or property subject to Real Property Leases that do not materially interfere with the current use by the Selling Entities of the Owned Real Property or the property subject to Real Property Leases, taken as a whole, (f) statutory Encumbrances creating a security interest in favor of landlords with respect to property of the Selling Entities which do not interfere with the current use of such leased real property by the Selling Entities in any material respect, (g) Encumbrances arising from applicable Laws of general application which do not interfere with the current operation of the Business in any material respect, (h) Encumbrances contained in or created by the Assumed Agreements or the Assumed Real Property Leases, (i) Encumbrances arising by operation of law under Article 2 of any state's Uniform Commercial Code (or successor statute) in favor of a seller of goods or buyer of goods, (j) subdivision, site plan control, development, reciprocal, servicing, facility, facility cost sharing or similar agreements currently existing or entered into, which do not materially interfere with the current use by the Selling Entities of the Owned Real Property, (k) purchase money liens and Encumbrances securing rental payments under capital lease arrangements, (l) the Encumbrances disclosed on Section 1.1(b) of the Seller Disclosure Schedule, or (m) such other Encumbrances which would not be material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole.  For the avoidance of all doubt, in no event

16

shall the presence of any tenants or other persons or occupants in, at or on the Owned Real Property (in each case, without the Buyer's express written authorization) be deemed to be Permitted Encumbrances.

"Person" means any individual, corporation, partnership, limited partnership, limited liability company, syndicate, group, trust, association or other organization or entity or Governmental Authority. References to any Person include such Person's successors and permitted assigns.

"Personal Information" means any information that is considered "personally identifiable information," "personal information" or "personal data" by any applicable Privacy Laws.

"Petition" means the voluntary petition under Chapter 11 of the Bankruptcy Code filed by the Debtor Entities with the Bankruptcy Court.

"Petition Date" has the meaning given to such term in the Recitals.

"Post-Closing Tax Period" means any taxable period beginning after the Closing Date and the portion of any Straddle Period beginning after the Closing Date.

"Post-Verdict Motions" means, collectively, the MEC Post-Verdict Motion and the Seller Post-Verdict Motion.

"Pre-Closing Tax Period" means any taxable period ending on or prior to the Closing Date and the portion of any Straddle Period ending on the Closing Date.

"Prepetition Secured Parties" has the meaning given to such term in the DIP Order.

"Privacy Laws" means any applicable Laws, regulations, and requirements relating to the data privacy, information security, data breach notification, and the processing of Personal Information, including as applicable, the Federal Trade Commission Act, General Data Protection Regulation ("GDPR"), and U.S. state privacy laws and regulations including the California Consumer Privacy Act.

"Proceeding" has the meaning given to such term in Section 5.4.

"Professional Services" has the meaning given to such term in Section 2.4(b).

"Property Taxes" has the meaning given to such term in Section 7.10(e).

"Purchase Price" has the meaning given to such term in Section 3.1(a).

"Purchased Assets" has the meaning given to such term in Section 2.1.

"Real Property Leases" means all leases, subleases, tenancy agreements, licenses, and other occupancy Contracts with respect to real property pursuant to which any Selling Entity is a party listed or described on Section 1.1(c) of the Seller Disclosure Schedule.

17

"Registered IP" means all Seller IP that is registered, filed, pending or issued under the authority of, with or by any Governmental Authority and all applications for any of the foregoing and renewals thereof.

"Regulatory Clearance" has the meaning given to such term in Section 8.1(b).

"Regulatory Laws" has the meaning given to such term in Section 7.7(b).

"Related Persons" has the meaning given to such term in Section 10.16(a).

"Release" means disposing, discharging, injecting, spilling, leaking, pumping, pouring, leaching, dumping, emitting, escaping or emptying into or upon the indoor or outdoor environment, including any soil, sediment, subsurface strata, surface water, drinking water, ground water, ambient air, the atmosphere or any other media.

"Representatives" means, with respect to a particular Person, any director, officer, manager, employee or other authorized representative of such Person or its Subsidiaries, including such Person's attorneys, accountants, consultants, investment bankers, professionals, financial advisors and restructuring advisors.

"Retained Employee" has the meaning given to such term in Section 7.9(a).

"Retained Records" has the meaning given to such term in Section 2.1.

"Sale Hearing" means the hearing at which the Bankruptcy Court considers entry of the Sale Order.

"Sale Order" means an Order of the Bankruptcy Court, substantially in the form attached hereto as Exhibit A (with any amendments and modifications thereto as the Title Company may reasonably request) or otherwise acceptable to the Buyer, which Order shall, among other things, (a) approve, pursuant to sections 105, 363 and 365 of the Bankruptcy Code, (i) the execution, delivery and performance by the Selling Entities of this Agreement, (ii) the sale of all of the Purchased Assets to the Buyer on the terms set forth herein and free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances), (iii) the assignment and assumption by the Selling Entities and the assignment to the Buyer of all Assumed Agreements and Assumed Real Property Leases, and (iv) the performance by the Selling Entities of their respective obligations under this Agreement, (b) authorize each of the Selling Entities and the Buyer to execute and file termination statements, instruments of satisfaction, releases and similar documents with respect to all Encumbrances that any Person has with respect to the Purchased Assets, (c) find that the Buyer is a buyer in good faith for purposes of section 363(m) of the Bankruptcy Code, and (d) order that the Buyer is receiving good and marketable title to all of the Purchased Assets free and clear of all Encumbrances (other than Assumed Liabilities and Permitted Encumbrances).

"Security Incident" means (a) any unauthorized access, acquisition, interruption, alteration or modification, loss, theft, corruption or other unauthorized processing of Personal Information or Seller IP, (b) inadvertent, unauthorized, and/or unlawful sale, or rental of Personal Information or other Seller IP, or (c) any breach of the security of or other unauthorized access to or use of or other compromise to the integrity or availability of the IT Systems.

"Seller" has the meaning given to such term in the Preamble hereto.

"Seller Compensation and Benefit Program" has the meaning given to such term in Section 5.9(a).

"Seller Disclosure Schedule" has the meaning given to such term in the Preamble to Article V.

"Seller Financial Statements" has the meaning given to such term in Section 5.8(a).

"Seller Fundamental Representations" has the meaning given to such term in Section 8.2(b).

"Seller IP" means all Intellectual Property owned by the Selling Entities.

"Seller Post-Verdict Motion" means that certain *Defendant Vital Pharmaceuticals Inc.'s Notice of Motion and Motion for JNOV, New Trial, and Remittitur* filed at docket number 921 that is pending before the court in the California District Court Action.

"Seller Properties" has the meaning given to such term in Section 5.15(b).

"Seller Related Party" means, collectively, the Selling Entities, their respective Subsidiaries and other Affiliates, and each of the foregoing's respective current and former Representatives and owners; but excluding, in all cases, any Excluded Parties.

"Seller Releasing Party" has the meaning given to such term in Section 7.16(b).

"Selling Entities" has the meaning given to such term in the Preamble hereto.

"Service Provider" has the meaning given to such term in Section 5.9(a).

"Specified Employees" has the meaning given to such term in Section 7.9(a).

"Specified Event" means that objections to entry of the Sale Order have been filed and served by one or more the Excluded Parties on or before June 26, 2023 at 12:00 p.m. (eastern time) or such other later objection deadline as may be established or allowed by the Bankruptcy Court or specified by agreement of the Debtor Entities.

"Specified Termination" means a termination of this Agreement by the Buyer pursuant to Section 9.1(i).  Notwithstanding anything to the contrary herein or otherwise, any termination of this Agreement by the Buyer pursuant to Section 9.1(b), Section 9.1(c), Section 9.1(f), Section 9.1(g)(ii), Section 9.1(i), Section 9.1(j) or Section 9.1(k) at a time when the Seller would have been entitled to terminate this Agreement pursuant to Section 9.1(d) or Section 9.1(h) shall constitute a Buyer Default Termination and not a Specified Termination.

"Specified Termination Amount" means $10,000,000.

"Straddle Period" means any taxable period that includes, but does not end on, the Closing Date.

"Subsidiary" means, with respect to any Person, (a) any corporation or similar entity of which at least 50% of the securities or interests having, by their terms, ordinary voting power to elect members of the board of directors, or other persons performing similar functions with respect to such corporation or similar entity, is held, directly or indirectly by such Person and (b) any partnership, limited liability company or similar entity of which (i) such Person is a general partner or managing member or has the power to direct the policies, management or affairs or (ii) such Person possesses a 50% or greater interest in the total capitalization or total income of such partnership, limited liability company or similar entity.

"Tax" means all U.S. federal, state, local or non-U.S. income, gross receipts, capital gains, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, capital stock, ad valorem, value added, inventory, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, escheat or unclaimed property liability (whether or not considered a tax under local law), alternative or add-on minimum, estimated, and other taxes, assessments, charges, duties, fees, levies or other governmental charges of any kind whatsoever (whether payable directly or by withholding and whether or not requiring the filing of a return) imposed by any Governmental Authority (to the extent the foregoing are taxes or in the nature of a tax), and including any interest, penalty, or addition thereto.

"Tax Return" means any return, claim for refund, declaration, report, statement, information return or other similar document (including any related or supporting information, amendments, schedule or supplements of any of the foregoing) required to be filed with any Governmental Authority with respect to Taxes.

"Terminated Employee" has the meaning given to such term in Section 7.9(a).

"Title Company" means Chicago Title Company.

"Trade Dress Action Allowed Unsecured Claim" means an allowed general unsecured claim in the Bankruptcy Case in favor of MEC in the amount of $58,000 as taxable litigation costs awarded to MEC and its affiliate Reign Beverage Company, LLC ("Reign") and due from the Seller pursuant to that certain Order entered on December 17, 2021, granting the Motion for Bill of Costs filed by MEC and Reign against the Seller in the case filed in the United States District Court for the Southern District of Florida, captioned *Vital Pharmaceuticals, Inc. v. Monster Energy Company et al.*, Case No. 0:19-cv-60809 (filed March 28, 2019) (the "Trade Dress Action"); *provided, however*, that MEC agrees to subordinate any recoveries on its 100% share of Trade Dress Action Allowed Unsecured Claim until the Selling Entities recover $5 million from the Excluded Assets, including Excluded Estate Claims, for the benefit of their estates. MEC shall not have an allowed administrative claim in the Bankruptcy Case, provided that the DIP Lenders and the Prepetition Secured Parties agree that they also will not have any allowed administrative claims in the Bankruptcy Case.

"Trade Secret Matters" means the Cohen Matter, the Dees Matter, the Leopardo Matter, the Nguyen Matter, and the Troglia Matter.

"Trademarks" means any and all trade names, corporate names, logos, slogans, taglines, trade dress, trademarks, service marks, certification marks, collective marks, and other source or business identifiers and general intangibles of a like nature, and common law rights, as well as trademark and service mark registrations and applications therefor, and all goodwill associated with the foregoing, whether protected, created, or arising under the laws of the United States (including common law) or any other jurisdiction or under any international convention.

"Transaction Documents" means this Agreement (including the Seller Disclosure Schedule), the Assignment and Assumption Agreement, the Bill of Sale, the IP Assignment Agreements, the Deeds, the Escrow Agreement, the Joint Defense Agreement and any other Contract to be entered into by the Parties in connection with the Transactions.

"Transactions" means the transactions contemplated by this Agreement and the other Transaction Documents, including the purchase and sale of the Purchased Assets in exchange for the Purchase Price and the assumption of the Assumed Liabilities.

"Transfer Taxes" has the meaning given to such term in Section 7.10(a).

"Transferred Employees" has the meaning given to such term in Section 7.9(a).

"Troglia Matter" means the action including MEC and Shannon Troglia filed before JAMS, captioned *Monster Energy Co. v. Shannon Troglia*, Case No. 1110026279 (JAMS, filed Oct. 8, 2020).

"TTAB Matter" means the proceeding including JHO Intellectual Property Holdings, LLC and MEC filed in the United States Patent and Trademark Office before the Trademark Trial and Appeal Board (TTAB), captioned *Monster Energy Co.* v. *JHO Intellectual Prop. Holdings, LLC*, Cancellation No. 92070514 (TTAB, filed Feb. 5, 2019).

"Union" means a labor union, trade union, works council or any other employee representative body.

"VPX Florida Matters" means the actions including the Seller, MEC, and MBC filed in the United States District Court for the Southern District of Florida, captioned (i) *Vital Pharmaceuticals, Inc. v. Monster Beverage Co., et al.*, No. 0:19-cv-61974 (S.D. Fla., filed Aug. 7, 2019); and (ii) *Vital Pharmaceuticals, Inc. v. Monster Beverage Corp., et al.*, No. 0:22-cv-61621 (S.D. Fla., filed Aug. 31, 2022).

"WARN Act" means the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (1988) and any similar Laws, including Laws of any country, state or other locality that is applicable to a termination of employees.

"Willful Breach" has the meaning given to such term in Section 9.2.

Section 1.2    Construction.  The terms "hereby," "hereto," "hereunder" and any similar terms as used in this Agreement refer to this Agreement in its entirety and not only to the particular portion of this Agreement where the term is used.  The terms "including," "includes" or similar terms when used herein shall mean "including, without limitation," and will not be construed to

limit any general statement that it follows to the specific or similar items or matters immediately following it. The word "or" when used in this Agreement is not meant to be exclusive unless expressly indicated otherwise. The word "extent" in the phrase "to the extent" means the degree to which a subject or other thing extends, if applicable, and such phrase does not mean simply "if." The word "will" shall be construed to have the same meaning as the word "shall." Any reference to "days" means calendar days unless Business Days are expressly specified. The meaning of defined terms shall be equally applicable to the singular and plural forms of the defined terms, and the masculine gender shall include the feminine and neuter genders, and vice versa, as the context shall require. Any reference to any federal, state, provincial, local or foreign statute or Law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise. Unless otherwise indicated, references to (a) Articles, Sections, Schedules and Exhibits refer to Articles, Sections, Schedules and Exhibits of and to this Agreement, (b) references to $ (Dollars) are to United States Dollars and (c) a Contract means such Contract as amended from time to time. When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period will be excluded. If the last day of such period is a day other than a Business Day, the period in question will end on the next succeeding Business Day; *provided*, that the foregoing shall not apply to Section 3.4 and Section 7.4. All references to dates and times herein, except as otherwise specifically noted, shall refer to New York City time. All accounting terms used in this Agreement and not otherwise defined herein shall have the respective meanings ascribed to such terms under GAAP.

## ARTICLE II
## PURCHASE AND SALE

Section 2.1    Purchase and Sale of Assets.  Pursuant to sections 105, 363 and 365 of the Bankruptcy Code and on the terms and subject to the satisfaction of the conditions contained in this Agreement, at the Closing, the Selling Entities shall sell, assign, convey, transfer and deliver to the Buyer, and the Buyer shall purchase and acquire from the Selling Entities, all of the Selling Entities' right, title and interest, free and clear of all Liabilities and Encumbrances (other than the Assumed Liabilities and Permitted Encumbrances), in and to all of the properties, rights, interests and other tangible and intangible assets of the Selling Entities of every nature (wherever located, whether real, personal or mixed, whether or not required to be reflected on a balance sheet prepared in accordance with GAAP), including any assets acquired by the Selling Entities after the date hereof but prior to the Closing (collectively, the "Purchased Assets"); *provided*, *however*, that notwithstanding anything to the contrary herein, the Purchased Assets shall not include any Excluded Assets.  Without limiting the generality of the foregoing, the Purchased Assets shall include all of the Selling Entities' right, title and interest in and to the following (except to the extent listed as, or otherwise constituting, an Excluded Asset):

(a)    all Accounts Receivable of the Selling Entities, except any Accounts Receivable set forth in Section 2.2(k), in each case subject to any rights of set-off pursuant to Section 2.3(e);

(b)    all Inventory as of the Closing, including Inventory that is obsolete or otherwise not saleable;

(c)    (i) all royalties, advances, prepaid assets, prepaid expenses, prepaid license payments, prepaid rents, security and other deposits, prepayments and other current assets, including any non-fungible tokens or cryptocurrency, (ii) any other prepaid items and deferred items (including all prepaid rentals and unbilled charges, fees and deposits), (iii) all rent, real estate Taxes, utility, lease, association fees or other similar operating expenses or payments that have been paid for the month in which the Closing occurs, in each case prorated to reflect the number of days from and including the Closing Date to the end of the period for which such expense or payment relates (it being understood that the Buyer is to receive the benefit of such amounts for such post-Closing period), and (iv) all premiums and other amounts paid by the Selling Entities as of the Closing in respect of insurance policies of the Selling Entities under which the rights to insurance proceeds constitute Purchased Assets pursuant to Section 2.1(r)(ii), in each case prorated to reflect the remaining coverage period under such insurance policies from and including the Closing Date to the end of such coverage period, in the case of each of clauses (i), (ii) and (iii), to the extent relating to the Purchased Assets and the Assumed Liabilities as of the Closing and excluding, for the avoidance of doubt, the items set forth in Section 2.2(j);

(d)    all Non-Real Property Contracts listed in Section 2.1(d) of the Seller Disclosure Schedule (as amended from time to time in accordance with Section 2.5 hereof, the "Assumed Agreements") assumed and assigned to the Buyer pursuant to Section 2.5;

(e)    all Real Property Leases listed in Section 2.1(e) of the Seller Disclosure Schedule (as amended from time to time in accordance with Section 2.5 hereof, the "Assumed Real Property Leases") assumed and assigned to the Buyer pursuant to Section 2.5;

(f)    all real property and any buildings, fixtures, and improvements thereon or thereto owned by the Selling Entities as of the Closing (collectively, the "Owned Real Property") listed in Section 2.1(f) of the Seller Disclosure Schedule;

(g)    all Seller IP and with respect to art, text and graphics used on cans and product packaging for products or, to the extent in the Selling Entities' possession, proposed products of the Business, files containing such works for at least the past five (5) years;

(h)    all items of machinery, equipment, vehicles (as set forth on Schedule 1.1(b) attached to Section 1.1(b) of the Seller Disclosure Schedule and subject to Section 7.22), supplies, furniture, fixtures, leasehold improvements (to the extent of the Selling Entities' rights to any leasehold improvements under Assumed Real Property Leases) and other tangible personal property and fixed assets owned by the Selling Entities as of the Closing, including the personal property assets listed in Section 2.1(h) of the Seller Disclosure Schedule;

(i)    all books, records, information, files, data, plans, servers, e-mails, and archival backups (whether written, electronic or in any other medium), advertising and promotional materials and similar items of the Selling Entities as of the Closing (except as otherwise described in Section 2.2), including any and all customer, distributor, supplier and vendor lists, mailing lists, and video and media footage and related materials (whether edited or unedited) that was filmed by or on behalf of any of the Selling Entities, in each case other than those items in Section 2.1(l) and excluding the agreements and rights set forth in Section 2.2(c) (collectively, the "Documentary Materials");

(j)     the OBI/Monster Escrow Amount;

(k)     subject to <u>Section 2.8(b)</u>, all rights to the websites, domain names, telephone, and facsimile numbers and e-mail addresses used by each Selling Entity;

(l)     all rights of the Selling Entities under non-disclosure or confidentiality, invention and/or Intellectual Property assignment, work made for hire agreements with current Employees, former Employees or current or former directors, consultants, independent contractors and agents of any of the Selling Entities, and any records, documents or other information relating to Transferred Employees, and any materials to the extent containing information about any Transferred Employee in each case, that may be transferred under applicable Law, the written employment policies of the Selling Entities and the Seller Compensation and Benefit Programs, but in each case excluding (i) the agreements and rights set forth in <u>Section 2.2(c)</u> and (ii) any such rights to the extent necessary to pursue Excluded Estate Claims;

(m)     all of the rights and benefits accruing under all Permits (other than Environmental Permits which are addressed in <u>Section 2.1(n)</u>) held by the Selling Entities, in each case, to the extent related to the Business and to the extent such Permits are transferrable;

(n)     all Environmental Permits needed for operations at the Owned Real Property and sites subject to Assumed Real Property Leases, to the extent such Environmental Permits are transferable;

(o)     any credits, allowances, rebates (including any vendor or supplier rebates), or rights of setoff (other than against the Selling Entities) arising out of or relating to any of the Purchased Assets as of the Closing;

(p)     any rights, claims or causes of action as of the Closing of any Selling Entity (including any D&O Claims) relating to or arising from the Purchased Assets, the Assumed Liabilities, or the Bankruptcy Case, including (i) any of the foregoing against any Seller Related Parties, (ii) any of the foregoing against the Buyer and/or any of the Buyer's Affiliates (including MEC, MBC, and any of their respective Affiliates), and (iii) all preference or avoidance claims and all other causes of action of the Selling Entities, in the case of each of clauses (i), (ii) and (iii), excluding the items in <u>Section 2.1(r)</u>, the Excluded Estate Claims and any rights, claims or causes of action to the extent they relate to any Excluded Assets or Excluded Liabilities; *provided*, that any preference or avoidance claims acquired by the Buyer pursuant to clause (iii) above shall be automatically released upon Closing;

(q)     all rights, title, and interest (but only to the extent relating to the period from and after the Closing) to use the BANG trademark in exchange for a 5% continuing royalty on net sales of BANG-branded products payable to MEC and Orange Bang, Inc., pursuant to that certain judgment entered on September 29, 2022 by the Hon. Dale S. Fischer, U.S. District Judge for the Central District of California, adopting the final arbitration award issued on April 4, 2022 against the Seller and JHO Intellectual Property Holdings, LLC and in favor of Orange Bang, Inc. and MEC, in the case styled as *Vital Pharmaceuticals, Inc. v. Orange Bang, Inc.*, Case No. 5:20-cv-01464 (excluding any right, title and interest in and to the OBI/Monster Escrow Excess);

(r)      (i) other than the items set forth in the immediately following clause (ii), all rights, claims (including claims for past, present and future infringement or misappropriation or other violation of Seller IP), and causes of action of the Selling Entities as of the Closing against Persons (including the Buyer and/or any of the Buyer's Affiliates) other than the Selling Entities (regardless of whether or not such claims and causes of action have been asserted by the Selling Entities), (ii) to the extent that the Buyer notifies the Seller in writing (at Buyer's sole election) at least two (2) Business Days prior to the Closing Date of its election to assume as a Purchased Asset rights to claims or proceeds under any insurance policy of the Selling Entities (other than D&O Insurance or insurance policies described in Section 2.2(g)) with respect to Purchased Assets or Assumed Liabilities, all rights to claims or proceeds with respect to the Purchased Assets or Assumed Liabilities (regardless of whether such rights are currently exercisable) under such insurance policies so elected by the Buyer, and (iii) other than the items set forth in the immediately preceding clause (ii), all rights of indemnity, warranty rights, rights of contribution, rights to refunds, rights of reimbursement and other rights of recovery possessed by the Selling Entities as of the Closing (regardless of whether such rights are currently exercisable), in the case of each of clauses (i), (ii) and (iii), to the extent related to the Purchased Assets and/or the Assumed Liabilities, and in each case, excluding any rights, claims or causes of action to the extent they relate to any Excluded Assets or Excluded Liabilities; and

(s)      product bar codes and GTIN codes owned by each Selling Entity;

*provided*, that notwithstanding anything to the contrary or otherwise in this Section 2.1, and without limiting the scope of the Excluded Assets contained in Section 2.2, "Purchased Assets" will not include any books, records, information, correspondence, files or other similar information or materials (whether written, electronic or in any other medium), to the extent subject to attorney client, attorney work product or other privilege or to the extent reasonably necessary for any Debtor Entity to pursue any Excluded Estate Claims or all correspondences or communications prior to the Closing among any Selling Entity or any of its Affiliates and their respective Representatives and their counsel or any other third party that relate to the negotiation of Transactions or any other transaction relating to the sale of the assets of the Selling Entities or any of their Affiliates (including any archival copies of such communications) (collectively, the "Retained Records").

Section 2.2    Excluded Assets.  Notwithstanding any provision herein to the contrary, the Purchased Assets shall not include the following (collectively, the "Excluded Assets"):

(a)      (i) all of the capital stock or other equity interests owned by the Selling Entities in any of their respective Subsidiaries or other Affiliates, or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interests of any of the Selling Entities, their respective Subsidiaries or Affiliates, and (ii) any properties, rights, interests and other tangible and intangible assets directly held by any Subsidiaries or other Affiliates of the Selling Entities;

(b)      except for the Documentary Materials and the items described in Section 2.1(l), any records, documents or other information relating to current or former Employees that are not Transferred Employees, and any materials to the extent containing information about any Employee (including any Transferred Employee), disclosure of which would violate applicable Law, the written employment policies of the Selling Entities, or any Seller Compensation and

Benefit Program, it being agreed that the Buyer shall, at any time prior to the Closing and without in any way affecting the Purchase Price, have the right, in its sole discretion, to designate additional records, data, documents and other information as Excluded Assets based upon the Buyer's determination that the transfer of the same to the Buyer would violate applicable Law, the written employment policies of the Selling Entities, or any Seller Compensation and Benefit Program;

(c)  any restrictive covenant, non-compete, non-solicit, no-hire or similar agreements with any current or former Employees and all rights of the Selling Entities under such agreements;

(d)  the Selling Entities' (i) minute books and other corporate books and records relating to their organization and existence and the Selling Entities' books and records relating to Taxes of the Selling Entities, including Tax Returns filed by or with respect to the Selling Entities, and (ii) books, records, information, files, data and plans (whether written, electronic or in any other medium), advertising and promotional materials and similar items exclusively relating to any Excluded Assets or Excluded Liabilities;

(e)  the Selling Entities' rights under this Agreement and the other Transaction Documents, and all cash and non-cash consideration payable or deliverable to the Selling Entities pursuant to the terms and provisions hereof and thereof;

(f)  any Contracts other than the Assumed Agreements and the Assumed Real Property Leases;

(g)  (i) all director and officer insurance policies, and (ii) all other current and prior insurance policies of the Selling Entities (x) related to any Excluded Asset or Excluded Liability or (y) to the extent not related to the Purchased Assets or the Business;

(h)  all rights, claims and causes of action of any Selling Entity and all rights of indemnity, warranty rights, rights of contribution, rights to refunds or prepayments, rights of reimbursement and other rights of recovery, including rights to insurance proceeds (including in all cases the proceeds of D&O Claims), of any Selling Entity (regardless of whether such rights are currently exercisable), in each case (i) related to any Excluded Asset or Excluded Liability or (ii) not related to the Purchased Assets or the Business;

(i)  all Retained Records;

(j)  (i) all Cash of the Selling Entities and their respective Subsidiaries and other Affiliates, (ii) the OBI/Monster Escrow Excess and (iii) all bank and deposit accounts of the Business, the Selling Entities and their respective Subsidiaries and other Affiliates (excluding, for the avoidance of doubt, the items set forth in Section 2.1(c) and Section 2.1(j));

(k)  (i) all intercompany Accounts Receivable of any Selling Entity owed to it by another Selling Entity or any of the Subsidiaries of the Selling Entities, (ii) any Accounts Receivable owing to any Selling Entity or any of the Subsidiaries of the Selling Entities by any Excluded Party, and (iii) any Accounts Receivable owing to any Subsidiary of any Selling Entity by any other Person;

(l)     any Seller Compensation and Benefit Program or stock option, restricted stock or other equity-based benefit plan of the Selling Entities, and the Selling Entities' right, title and interest in any assets of or relating thereto;

(m)     all Excluded Estate Claims;

(n)     all Tax refunds, overpayments, credits or other attributes with respect to Taxes that are Excluded Liabilities;

(o)     (i) any "tail" policy providing directors' and officers' liability insurance coverage for the benefit of those Persons who are covered by the Selling Entities' directors' and officers' liability insurance policies as of the date hereof or at the Closing with respect to matters occurring prior to the Closing (together with the policies described in Section 2.1(g)(i), "D&O Insurance"), and (ii) all rights and benefits of any nature of the Selling Entities with respect to insurance policies  (including those retained by the Selling Entities pursuant to Section 2.2(g)), including all insurance recoveries thereunder and rights to assert claims with respect to any such insurance recoveries, other than those rights to claims or proceeds that the Buyer has elected in writing to assume pursuant to Section 2.1(r)(ii);

(p)     the Selling Entities' right, title and interest in and to the other assets, if any, set forth in Section 2.2 of the Seller Disclosure Schedule; and

(q)     all assets that are directly or indirectly owned by the Excluded Parties.

Section 2.3     Assumed Liabilities.  Subject to the terms and conditions of this Agreement, effective as of the Closing, the Buyer shall assume and agree to pay, perform and discharge when due in accordance with their respective terms the Assumed Liabilities.  For purposes of this Agreement, "Assumed Liabilities" means, without duplication, only the following Liabilities (to the extent not paid prior to the Closing):

(a)     all Liabilities arising out of the conduct of the Business or relating to the Purchased Assets (including any accounts payable or other amounts payable), in each case, to the extent such Liabilities (i) arise from and after the Closing, or (ii) arise from or relate to (A) events, facts and circumstances first existing after the Closing, or (B) directly or indirectly manufacturing, selling, offering to sell, marketing, promoting or advertising any products or services, or the conduct of the Business, by the Buyer or any of its Affiliates, in each case, from and after the Closing;

(b)     all Liabilities of the Selling Entities arising under the Assumed Agreements and the Assumed Real Property Leases from and after the Closing Date (excluding any liability or obligation with respect to such Contracts as a result of any violation or breach of any such Contracts or any violation of Law or any tort in each case which first occurred or arose on or prior to the Closing Date), plus any such Liabilities of the Selling Entities arising under the Assumed Agreements and the Assumed Real Property Leases from and after the Petition Date that are accrued, but not yet due as of the Closing, in the Ordinary Course of Business;

(c)     the Cure Payments, to the extent not paid by the Buyer at Closing pursuant to Section 2.5(f) hereof;

(d)     any Liability for Taxes with respect to the Purchased Assets for any Post-Closing Tax Period (as determined in accordance with Section 7.10(a));

(e)     with respect to any Accounts Receivable that are Purchased Assets pursuant to Section 2.1(a), the amount of any corresponding Liability that is entitled to be set off with respect to such Accounts Receivable, in each case not to exceed the amount of such Accounts Receivable; and

(f)     the Assumed WARN Act Liabilities and Liabilities or obligations of the Selling Entities under COBRA, in each case pursuant to Section 7.9(b).

Section 2.4     Excluded Liabilities.  Notwithstanding anything to the contrary herein, the Buyer shall not assume or be obligated to pay, perform or otherwise discharge or in any other manner be liable or responsible for any Liabilities of, or Proceeding against, the Selling Entities, other than the Assumed Liabilities (all such Liabilities that the Buyer is not assuming being referred to collectively as the "Excluded Liabilities").  The Excluded Liabilities include the following (other than the Assumed Liabilities):

(a)     all Liabilities for (i) Transfer Taxes, (ii) Taxes with respect to the Purchased Assets for any Pre-Closing Tax Period (as determined in accordance with Section 7.10(b)) and (iii) Taxes of the Selling Entities and their equity holders;

(b)     all Liabilities of the Selling Entities relating to legal services, accounting services, financial advisory services, investment banking services or any other professional services ("Professional Services") performed in connection with this Agreement and any of the transactions contemplated hereby, and any pre-Petition or post-Petition Claims for such Professional Services;

(c)     all Liabilities of the Selling Entities with respect to current and former Employees, Service Providers, and current and former directors and officers of the Selling Entities (including Liabilities under or relating to any Seller Compensation and Benefit Program, any workers compensation and unemployment benefits related Liabilities, any Liabilities for deferred salary, wages, unused vacation, sick days, personal days or leave earned and/or accrued, and any Liabilities pursuant to the WARN Act, including the Excluded WARN Act Liabilities pursuant to Section 7.9(b)), in any case arising up to and including the Closing and in each case, other than any Assumed Liabilities set forth in Section 2.3(f);

(d)     all Liabilities of the Selling Entities arising under the Assumed Agreements and the Assumed Real Property Leases to the extent such Liabilities arise prior to the Closing Date or relate to events, facts and circumstances first existing prior to the Closing Date, other than any Assumed Liabilities;

(e)     all Liabilities relating to Excluded Assets, Excluded Parties, and all intercompany accounts payable and other amounts payable owed by any Selling Entity, and any other intercompany obligations owed by any Selling Entity, to any other Selling Entity, any Subsidiary, any Excluded Party, or any of their respective Affiliates;

(f)      all Liabilities of any Selling Entity, whether in respect of indebtedness for borrowed money or otherwise, to the extent such Liabilities arise prior to the Closing Date or relate to events, facts and circumstances first existing prior to the Closing Date, other than any Cure Payments and any Assumed Liabilities;

(g)      all Liabilities of any Selling Entity to any current, former or prospective shareholder or other holder of equity securities or equity-linked securities of such Selling Entity, including all Liabilities of such Selling Entity related to the right to or issuance of any capital stock or other equity securities or the payment of any dividend or other distribution on or in respect of any capital stock or other equity securities;

(h)      all Liabilities of the Subsidiaries (or any of them) of any Selling Entity;

(i)      subject in all respects to Section 2.3, all Liabilities (including with respect to product liability, false advertising, deceptive business practices, consumer protection laws, trademark infringement, trade dress infringement, false designation of origin, false patent marking, patent infringement, trade libel, unfair competition, breach of contract, breach of warranty, and unjust enrichment) arising out of the conduct of the business or relating to the Purchased Assets, in each case, to the extent such Liabilities (i) arise prior to the Closing, or (ii) arise from or relate to (A) events, facts and circumstances first existing before the Closing, (B) any product (including products containing Super Creatine) of the Selling Entities that was manufactured prior to the Closing, (C) any product (including products containing Super Creatine) of the Selling Entities that has been sold and delivered to third parties, including distributors and/or retailers prior to the Closing, or (D) any actions taken, directly or indirectly, in manufacturing, selling, offering to sell, marketing, promoting, or advertising Super Creatine or any products or services of the Selling Entities, or in the conduct of the Business, prior to the Closing; and

(j)      all Liabilities listed in Section 2.4(j) of the Seller Disclosure Schedule.

Section 2.5      Assumption and Assignment of Certain Contracts.  The Sale Order shall provide for the assumption by the Selling Entities, and the Sale Order shall provide for the assignment by the Selling Entities to the Buyer, effective upon the Closing, of the Assumed Agreements and the Assumed Real Property Leases on the terms and conditions set forth in the remainder of this Section 2.5.

(a)      The Debtor Entities have provided reasonably timely and proper written notice of the Sale Hearing to all parties to any executory Contracts or unexpired leases to which any Debtor Entity is a party that are (or may be) the Assumed Agreements or the Assumed Real Property Leases.  The Debtor Entities shall take all other actions reasonably necessary to cause such Contracts to be assumed by the Debtor Entities and assigned to the Buyer pursuant to section 365 of the Bankruptcy Code.  At the Closing, the Debtor Entities shall assume and assign to the Buyer the Assumed Agreements and the Assumed Real Property Leases that may be assigned by any such Debtor Entity to the Buyer pursuant to sections 363 and 365 of the Bankruptcy Code. Section 2.5(a) of the Seller Disclosure Schedule sets forth the Selling Entities' good faith estimate (on a vendor by vendor basis) as of the date of this Agreement of the amounts necessary to cure defaults, if any, with respect to each counterparty to any of the Assumed Agreements set forth in Section 2.1(d) of the Seller Disclosure Schedule, the Assumed Real Property Leases set forth in

Section 2.1(e) of the Seller Disclosure Schedule, and the Contracts listed in Section 7.8(c) of the Seller Disclosure Schedule, in each case as determined by the Selling Entities based on the their books and records and good faith judgment.  The Selling Entities shall provide an update of such good faith estimate not less than five (5) Business Days prior to the Closing Date.

(b)     From and after the date of this Agreement, unless this Agreement is terminated, until two (2) Business Days prior to the Closing, the Buyer may, in its sole discretion, designate any Contract of any Selling Entity as an Assumed Agreement or Assumed Real Property Lease, as applicable, or remove any such Contract from Section 2.1(d), Section 2.1(e), Section 2.5(a), or Section 7.8(c) of the Seller Disclosure Schedule, respectively, such that it is not an Assumed Agreement or Assumed Real Property Lease, in each case by providing written notice of such designation or removal to the Selling Entities, in which case Section 2.1(d), Section 2.1(e), Section 2.5(a), or Section 7.8(c) of the Seller Disclosure Schedule, as applicable, shall automatically be deemed to be amended to include or remove, as applicable, such Contract as an Assumed Agreement or an Assumed Real Property Lease, in each case, (i) without any adjustment to the Purchase Price (other than any Cure Payment, any adjustment in respect of the Closing Cash Amount or Section 3.4) and (ii) to the extent permitted by applicable Law.

(c)     In the case of any amendment by the Buyer of Section 2.1(d), Section 2.1(e), or Section 7.8(c) of the Seller Disclosure Schedule pursuant to Section 2.5(b), the Selling Entities shall give notice to the other parties to any Contract to which such amendment relates of the removal or addition of such Contract from Section 2.1(d), Section 2.1(e), or Section 7.8(c) of the Seller Disclosure Schedule, as applicable.

(d)     From and after the date of this Agreement until the earlier of the Closing and the termination of this Agreement, the Selling Entities may move to reject any Contract which is not an Assumed Agreement or an Assumed Real Property Lease; *provided* that the Selling Entities shall provide the Buyer with not less than five (5) Business Days prior written notice ("Contract Notice Period") of such motion and the Buyer may (in the Buyer's sole discretion) direct the Selling Entities not to move to reject such Contract during the Contract Notice Period; *provided, however,* that the Buyer may, at any time during the Contract Notice Period, designate such Contract as an Assumed Agreement or an Assumed Real Property Lease in accordance with Section 2.5(b) and the Selling Entities shall not thereafter reject or seek to reject such Contract.

(e)     The Debtor Entities shall file the Cure Schedule no later than one (1) week prior to the Closing Date.  The Bankruptcy Court shall deem any non-debtor party to a Contract included on the Cure Schedule that does not timely file an objection with the Bankruptcy Court to have given any required Consent to the assumption of such Contract by the Debtor Entity and assignment to the Buyer pursuant to section 365 of the Bankruptcy Code.

(f)     In connection with the assumption and assignment to the Buyer (as requested in writing by the Buyer) of any Assumed Agreement or Assumed Real Property Lease pursuant to this Section 2.5, in addition to the Purchase Price, the Buyer shall bear and pay, in addition to the Cash Purchase Price, all of the cure amounts, as determined by the Bankruptcy Court, if any, necessary to cure all defaults, if any (such amounts, collectively, the "Cure Payments"); *provided,* that to the extent such Cure Payments are not made prior to the Closing, all

30

Liabilities related to such Cure Payments shall be assumed by the Buyer at the Closing as Assumed Liabilities.  No Selling Entity shall have any liability for such Cure Payments.

(g)     The Seller shall use its reasonable best efforts to obtain an order of the Bankruptcy Court to assign the Assumed Agreements and the Assumed Real Property Leases to the Buyer (the "Assumption Approval") on the terms set forth in this Section 2.5.  In the event the Selling Entities are unable to assign any such Assumed Agreement or Assumed Real Property Lease to the Buyer pursuant to an order of the Bankruptcy Court, then the Parties shall use commercially reasonable efforts prior to the Closing to obtain, and to cooperate in obtaining, all Consents and Governmental Authorizations from Governmental Authorities and third parties necessary to assume and assign such Assumed Agreement or Assumed Real Property Lease to the Buyer; *provided*, *however*, that the Seller shall not be required to pay any amount or incur any obligation to any Person from whom any such Consent or Governmental Authorization may be required in order to obtain such Consent.

(h)     In addition to all other rights granted to the Buyer regarding the designation of Contracts to be Assumed Agreements or Assumed Real Property Leases hereunder, the Buyer shall have the right after the Closing to designate in writing, additional Contracts as Assumed Agreements or Assumed Real Property Leases, in each case to the extent permitted by applicable Law, until such Contracts are sold, transferred, rejected or wound down by the Debtor Entities. The Debtor Entities shall provide timely and proper written notice of such assumption and assignment to all parties to any such additional Assumed Agreements or Assumed Real Property Leases and take all other actions reasonably necessary to cause such Contracts to be assumed by the Debtor Entities and assigned to the Buyer pursuant to section 365 of the Bankruptcy Code. The Buyer shall be responsible for (i) any Cure Payments due and owing under such Assumed Agreements or Assumed Real Property Leases so designated by the Buyer post-Closing and (ii) any amounts (A) described in the definition of "Closing Cash Amount", or (B) contemplated by Section 3.4(a) to be paid by the Buyer in respect of such Assumed Agreements or Assumed Real Property Leases designated post-Closing.

Section 2.6     Designation of Assets and Liabilities.  From and after the date of this Agreement, unless this Agreement is terminated, until two (2) Business Days prior to the Closing Date, the Buyer may, in its sole discretion by written notice to the Selling Entities, (a) designate any of the Purchased Assets as additional Excluded Assets and/or (b) designate any of the Excluded Liabilities as additional Assumed Liabilities, which notice shall set forth in reasonable detail the assets or Liabilities so designated; *provided*, that (i) there shall be no increase or reduction in the Purchase Price in connection with any such designation by the Buyer (other than any adjustment in respect of the Closing Cash Amount or Section 3.4) and (ii) the Buyer shall not be permitted to designate as an Excluded Asset pursuant to this Section 2.6, any Purchased Assets or items included or taken into account in the Closing Cash Amount.  Notwithstanding any other provision hereof, the Liabilities of the Selling Entities under or related to any Purchased Asset excluded under this paragraph shall constitute Excluded Liabilities.

Section 2.7     Consents to Certain Assignments.  If notwithstanding the applicable provisions of Sections 363 and 365 of the Bankruptcy Code and the Sale Order and the commercially reasonable efforts of the Selling Entities and the Buyer pursuant to Section 2.5(g), (a) any Consent or Governmental Authorization is not obtained prior to Closing and as a result

thereof the Buyer shall be prevented by a third party from receiving the rights and benefits with respect to a Purchased Asset intended to be transferred hereunder, or (b) any Purchased Asset is not otherwise capable of sale and/or assignment (after giving effect to the Sale Order and the Bankruptcy Code), then, in any such case, the Selling Entities shall, prior to the closing of the Bankruptcy Case and subject to any approval of the Bankruptcy Court that may be required and at the request of the Buyer, cooperate with the Buyer in any lawful and commercially reasonable arrangement under which the Buyer would, to the extent practicable, obtain (for no additional cost or consideration) the economic claims, rights and benefits under such asset and assume the economic burdens and obligations with respect thereto in accordance with this Agreement, including by subcontracting, sublicensing or subleasing to the Buyer, and the Buyer shall assume any related burden and obligation with respect to such Purchased Asset to the extent such burden and obligation would constitute an Assumed Liability if such Purchased Asset was transferred at Closing; *provided*, that the Selling Entities' cooperation obligations contemplated by this <u>Section 2.7</u> shall not include any obligation by any Selling Entity or any of its Affiliates to pay money (advance or otherwise) to any third party or to incur out-of-pocket expenses unless the Buyer funds such amounts.  The Buyer shall cooperate with the Selling Entities in order to enable the Selling Entities to provide to the Buyer the benefits contemplated by this <u>Section 2.7</u>.  The Selling Entities shall as promptly as practicable pay to the Buyer when received all monies received by the Selling Entities attributable to such Purchased Asset from and after the Closing Date and the Buyer shall reasonably promptly pay the Selling Entities for all reasonable and documented out-of-pocket costs incurred by the applicable Selling Entities associated with, arising or resulting from such arrangement.  Notwithstanding the foregoing, this <u>Section 2.7</u> shall not be deemed to require any Selling Entity or any of its Affiliates to make available, or enter into any arrangement to provide, any Permit or the use or benefit thereof to the Buyer or any of its Affiliates; *provided* that this sentence shall not limit the Selling Entities' obligations under <u>Section 7.5</u>.

Section 2.8    <u>Wrong Pockets</u>.

(a)    From and after the Closing, if either the Buyer or any Selling Entity becomes aware that any right, property or asset forming part of the Purchased Assets has not been transferred to the Buyer or that any right, property or asset forming part of the Excluded Assets has been transferred to the Buyer, such Party shall promptly notify the other Party and the Parties shall, as soon as reasonably practicable thereafter, use reasonable best efforts to cause such right, property or asset (and any related Liability) to be transferred at the expense of the Party that is seeking the assets to be transferred to it and with any necessary prior Consent, to (i) the Buyer, in the case of any right, property or asset forming part of the Purchased Assets which was not transferred to the Buyer at or in connection with the Closing, or (ii) the applicable Selling Entity, in the case of any right, property or asset forming part of the Excluded Assets which was transferred to the Buyer at the Closing.  In furtherance of the foregoing, if after the Closing, the Buyer discovers any Contract that should have been disclosed in <u>Section 2.1(d)</u> of the Seller Disclosure Schedule or <u>Section 2.1(e)</u> of the Seller Disclosure Schedule that was not assumed, then the Buyer may at its sole discretion elect to include such Contract in <u>Section 2.1(d)</u> of the Seller Disclosure Schedule or <u>Section 2.1(e)</u> of the Seller Disclosure Schedule, as applicable, as if disclosed thereon at Closing or to exclude such Contract from the Purchased Assets; *provided* that in the event the Buyer elects to include such Contract, the Buyer shall be responsible to make all Cure Payments with respect to such Contract.

(b)     From and after the Closing, if either the Buyer or any Selling Entity or any of their respective Affiliates (other than any Excluded Parties) receives any (i) funds or property that is, in the reasonable determination of the receiving Party, intended for or otherwise the property of the other Party pursuant to the terms of this Agreement or any other Transaction Document, the receiving Party shall reasonably promptly (A) notify and (B) forward such funds or property to, the other Party (and, for the avoidance of doubt, the Parties acknowledge and agree that there is no right of offset with respect to such funds or property, whether in connection with a dispute under this Agreement or any other Transaction Document or otherwise) or (ii) mail, courier package, facsimile transmission, purchase order, invoice, service request or other document that is, in the reasonable determination of the receiving Party, intended for or otherwise the property of the other Party pursuant to the terms of this Agreement or any other Transaction Document, the receiving Party shall reasonably promptly (A) notify and (B) forward such document or property to, the other Party.

(c)     From and after the Closing, if either the Buyer or any Selling Entity or any of their respective Affiliates (other than any Excluded Parties) pays any amount to any third party in satisfaction of any Liability of the other Party pursuant to the terms of this Agreement or any other Transaction Document, (i) the paying Party shall promptly notify the other Party of such payment and (ii) to the extent the paying Party is not obligated to make such payment pursuant to the terms of this Agreement or any other Transaction Document, the other Party shall promptly reimburse the paying Party for the amount so paid by the paying Party to such third party (and, for the avoidance of doubt, the Parties acknowledge and agree that there is no right of offset with respect to such amount, whether in connection with a dispute under this Agreement or any other Transaction Document or otherwise).

### ARTICLE III
### PURCHASE PRICE; DEPOSIT

Section 3.1     Purchase Price.

(a)     The consideration for the sale and transfer of the Purchased Assets from the Selling Entities to the Buyer (collectively, the "Purchase Price") shall be: (i) an amount in cash equal to the Cash Purchase Price, plus (ii) the Deposit, plus (iii) the assumption of the Assumed Liabilities, plus (iv) an additional Ten Million Dollars ($10,000,000.00) (the "Entourage Consideration") paid by the Buyer in cash promptly (but not later than thirty (30) days) following the satisfaction of either of the following conditions: (A) the Buyer's receipt (pursuant to transfer documents in form and content reasonably satisfactory to the Buyer) of title to and ownership of the Intellectual Property owned by, or purported to be owned by, Entourage IP Holdings (the "Entourage Assets") free and clear of all Encumbrances (other than Permitted Encumbrances, and excluding any Entourage Assets that have been abandoned, invalidated or cancelled), or (B) the Selling Entities' exercise of commercially reasonable efforts to secure for the Buyer, the Entourage Assets set forth in Section 3.1(a)(i) and Section 3.1(a) (ii) of the Seller Disclosure Schedule (excluding any Entourage Assets that have been abandoned, invalidated or cancelled), resulting in the Buyer's receipt (pursuant to transfer documents in form and content reasonably satisfactory to the Buyer) of title to and ownership of at least the Entourage Assets set forth in Section 3.1(a)(i) of the Seller Disclosure Schedule (excluding any Entourage Assets that have been abandoned, invalidated or cancelled).  Upon such transfer of the applicable Entourage Assets, the Entourage

Assets (excluding any Entourage Assets that have been abandoned, invalidated or cancelled) shall be deemed Purchased Assets hereunder.

(b)      On the Closing Date, the Buyer shall pay or cause to be paid to the Seller or its designee(s), by wire transfer of immediately available funds to an account or series of accounts designated by the Seller prior to the Closing, an amount or amounts in cash equal, in the aggregate, to the Cash Purchase Price, Price, which Cash Purchase Price shall be used, directed and applied as provided in Section 3.1(c) below.

(c)      Concurrently with the Closing, the Selling Entities shall use, direct and apply the Cash Purchase Price as follows: (i) the amount necessary, currently estimated at approximately Sixteen Million Dollars ($16,000,000), shall be used to satisfy in full any outstanding Encumbrances imposed by Law against the Owned Real Property that have been or may be asserted by any mechanics, repairmen, workmen, suppliers or materialmen; (ii) Four Million Dollars ($4,000,000) shall be set aside in a segregated account and reserved for the payment of the Excluded WARN Act Liabilities; (iii) Four Million Dollars ($4,000,000) shall be set aside in a segregated account and reserved for the payment of all Liabilities owing to prior and/or current employees of the Selling Entities that constitute Excluded Liabilities other than the Excluded WARN Act Liabilities (it being agreed that following payment in full of all such Liabilities in subsections (i) through (iii) hereof, all amounts then remaining in such reserves shall be released to the Debtor Entities); and (iv) the remainder of the Cash Purchase Price shall be paid to the Debtor Entities, subject to payment of the DIP Obligations as set forth in the Sale Order. Notwithstanding anything to the contrary herein or otherwise, to the extent any portion of the Cash Purchase Price remains after the pursuit of the Excluded Estate Claims, such remaining consideration shall be retained for the benefit of the Debtor Entities' estates and not be distributed to any Buyer Related Party, the DIP Lenders and/or the Prepetition Secured Parties.

Section 3.2      Deposit Escrow; Deposit Release.  The Seller and the Buyer have entered into an escrow agreement (the "Escrow Agreement") with Citibank, N.A. (the "Escrow Agent"), a copy of which is attached hereto as Exhibit E, and the Buyer has deposited into an escrow account (the "Escrow Account") with the Escrow Agent an amount equal to Twenty-Five Million Dollars ($25,000,000) (together with any interest accrued thereon prior to the Closing Date, the "Deposit") by wire transfer of immediately available funds pursuant to the terms of this Agreement and the Escrow Agreement.  The Deposit shall not be subject to any Encumbrance, attachment, trustee process or any other judicial process of any creditor of any of the Parties; provided, that the Seller's right to receive the Deposit in accordance with the terms of this Agreement shall be subject to the liens securing the DIP Obligations.  The Deposit (or, in the case of a Specified Termination, a portion of the Deposit equal to the Specified Termination Amount, together with a pro rata portion of any received investment income on the Deposit, if any) shall become payable to the Seller upon the earliest to occur of (i) the Closing, (ii) a Specified Termination, and (iii) the termination of this Agreement (A) by the Seller pursuant to Section 9.1(d) or Section 9.1(h), (B) by the Buyer pursuant to Section 9.1(b), Section 9.1(c), Section 9.1(f), Section 9.1(g)(ii), Section 9.1(i), Section 9.1(j), or Section 9.1(k) or by the Seller pursuant to Section 9.1(g)(ii), in each case (solely with respect to this clause (B)) at a time when the Seller would have been entitled to terminate this Agreement pursuant to Section 9.1(d) or Section 9.1(h), or (C) a termination by the Buyer or the Seller pursuant to Section 9.1(g)(ii) (solely in the event that (I) all of the conditions set forth in Section 8.1 and Section 8.2 have been satisfied or waived (other than (x) those conditions to

Closing that by their terms or their nature are to be satisfied at the Closing, but subject to such conditions being satisfied assuming the Closing would occur and (y) the conditions in Section 8.1(c) and Section 8.2(e), solely as a result of the Sale Order having been entered but not having become a Final Order), (II) the Seller has confirmed in writing that it is ready, willing and able to waive the conditions in Section 8.1(c) and Section 8.3(d) and consummate the Closing, and (III) within three (3) days of such written confirmation from the Seller, (x) the Buyer fails to consummate the Closing, (y) the Buyer states in writing that it is not willing to waive the conditions in Section 8.1(c) and Section 8.2(e), or (z) the Buyer does not confirm in writing to the Seller that it is willing to waive the conditions in Section 8.1(c) and Section 8.2(e) (any such termination described in the foregoing clause (iii)(A), clause (iii)(B) or clause (iii)(C), a "<u>Buyer Default Termination</u>"). If the Closing occurs, the Deposit shall be delivered to an account designated by the Selling Entities by wire transfer of immediately available funds as payment of a portion of the Purchase Price. Upon a termination of this Agreement by the Buyer pursuant to Section 9.1(j) or Section 9.1(k) or by virtue of an automatic termination pursuant to Section 9.1(g)(i) hereof, the Deposit (together with any investment income received thereon) shall be immediately delivered to an account designated by the Buyer (by wire transfer of immediately available funds) to be retained by the Buyer for its own account, except to the extent that there is a dispute between Buyer and Seller about a termination pursuant to Section 9.1(j) or Section 9.1(k) and the disposition of the Deposit is resolved consensually in writing or pursuant to an Order of the Bankruptcy Court (or other court having jurisdiction under this Agreement), in which event the Deposit will not be distributed to the Buyer and shall be held in the Escrow Account until any portion of the Deposit that is otherwise payable to the Seller pursuant to such consensual resolution or Order of the Bankruptcy Court (or other court having jurisdiction under this Agreement) (including in respect of the Specified Termination Amount) in connection with a Specified Termination or Buyer Default Termination shall be paid to the Seller (without duplication) in accordance with the provisions hereof. If the Deposit (or, in the case of a Specified Termination, a portion of the Deposit equal to the Specified Termination Amount, together with a pro rata portion of any received investment income on the Deposit) becomes payable to the Seller by reason of a Specified Termination or Buyer Default Termination, as applicable, then either (A) the Seller and the Buyer shall jointly instruct the Escrow Agent to disburse, or (B) the Seller or the Buyer shall deliver to the Escrow Agent a final and non-appealable written Order from a court of competent jurisdiction directing the Escrow Agent to disburse, the Deposit (or, in the case of a Specified Termination, a portion of the Deposit equal to the Specified Termination Amount, together with a pro rata portion of any received investment income on the Deposit) to the Seller, in each case in accordance with the Escrow Agreement, and the Escrow Agent shall, within two (2) Business Days after receiving such written instruction or Order, as the case may be, disburse the Deposit (or, in the case of a Specified Termination, a portion of the Deposit equal to the Specified Termination Amount, as applicable and without duplication, together with a pro rata portion of any received investment income on the Deposit) to Seller by wire transfer of immediately available funds to the account designated in writing by the Seller to be retained by the Seller for its own account and, in the case of a Specified Termination, any amounts remaining in the Escrow Account after such disbursement to the Seller to Buyer by wire transfer of immediately available funds to the account designated in writing by Buyer to be retained by Buyer for its own account. If this Agreement or the transactions contemplated herein are terminated other than for a termination which constitutes a Buyer Default Termination or a Specified Termination, then either (A) the Seller and the Buyer shall jointly instruct the Escrow Agent to refund, or (B) the Seller or the Buyer shall deliver to the Escrow

Agent a final and non-appealable written Order from a court of competent jurisdiction directing the Escrow Agent to refund, the Deposit to the Buyer, in each case in accordance with the Escrow Agreement, and the Escrow Agent shall, within two (2) Business Days after receiving such written instruction or Order, as the case may be, refund the Deposit to an account designated by the Buyer in writing by wire transfer of immediately available funds to be retained by the Buyer for its own account. The Escrow Agent's escrow fees and charges shall be paid by the Buyer. For purposes of this Section 3.2, "pro rata portion" shall be calculated based on the Specified Termination Amount expressed as a percentage of the Deposit (excluding any interest for this purpose). For the avoidance of doubt, in the event of a Specified Termination, the Seller shall retain $10,000,000 of the Deposit and the Buyer shall receive a refund of $15,000,000 of the Deposit, plus each Party shall receive a prorated portion of any investment income on the Deposit. Notwithstanding anything to the contrary herein (including in Article IX or Section 10.12), any recovery by the Seller of the Specified Termination Amount from the Deposit pursuant to the terms of this Section 3.2 solely in the case of a Specified Termination (and not in the case of a Buyer Default Termination or any other scenario, event, fact or circumstance) shall constitute the Seller's and the other Selling Entities' sole and exclusive remedy against the Buyer under this Agreement solely with respect to such Specified Termination (and not with respect to a Buyer Default Termination or any other scenario, event, fact or circumstance), other than in the event of Fraud; *provided* that until such time as the Buyer pays or causes to be paid to the Seller the Specified Termination Amount, the remedies available to the Seller and the Selling Entities hereunder shall be in addition to any other remedy to which it is entitled at law or in equity, and the election to pursue an injunction or specific performance shall not restrict, impair or otherwise limit the Selling Entities from, in the alternative, seeking to collect the Specified Termination Amount (for the avoidance of doubt and notwithstanding anything to the contrary herein (including in Section 9.2(a) hereof), while the Selling Entities may pursue both a grant of specific performance to the extent permitted by Section 10.12(b) in connection with any breach of this Agreement by the Buyer, MEC or MBC and the payment of the Specified Termination Amount, as applicable, under no circumstances shall the Selling Entities be permitted or entitled to (i) receive both a grant of specific performance to require the Buyer to consummate the Closing and payment of the Specified Termination Amount or (ii) solely with respect to a Specified Termination (and not with respect to a Buyer Default Termination or any other scenario, event, fact or circumstance), seek specific performance or any other remedy (other than collection of the Specified Termination Amount) in the event that Buyer has timely and validly exercised its rights hereunder to terminate this Agreement pursuant to a Specified Termination).

Section 3.3    Allocation. The Buyer shall, not later than one hundred twenty (120) days after the Closing Date, prepare and deliver to the Seller an allocation of the Purchase Price (and the Assumed Liabilities and other relevant items, to the extent properly taken into account for Tax purposes) among the Purchased Assets (the "Allocation") in accordance with Section 1060 of the Code, the Treasury Regulations thereunder and other applicable Law for the Seller's review and approval (such approval not to be unreasonably withheld, conditioned or delayed). Any reasonable comments provided by the Seller to the Buyer in accordance with this Section 3.3 shall be considered by the Buyer in good faith. The Allocation shall be conclusive and binding on the Parties unless the Seller notifies the Buyer in writing that the Seller objects to one or more items reflected in the Allocation, and specifies the reasonable basis for such objection, within thirty (30) days after delivery to the Seller of the Allocation. In the case of such an objection, the Seller and the Buyer shall negotiate in good faith to resolve any disputed items. Any resolution by the Seller

and the Buyer shall be conclusive and binding on the parties once set forth in writing (any such conclusive and binding Allocation, the "Final Allocation"). If the Seller and the Buyer are unable to resolve all disputed items within fifteen (15) days after the delivery of the Seller's written objection to the Buyer, the Buyer and the Seller shall jointly retain a mutually agreed independent internationally recognized accounting firm (the "Accounting Firm") (which may in turn select an appraiser, if needed) to resolve any disputed item(s). The costs, fees and expenses of the Accounting Firm shall be borne equally by the Buyer and the Seller. The Accounting Firm shall resolve any such dispute within ninety (90) days after the retention, and the Final Allocation shall be adjusted to reflect any such resolution of any disputed item(s). The Parties agree to (and shall cause their Affiliates (in the case of the Selling Entities, other than any Excluded Parties) to) file all Tax Returns (including the filing of IRS Form 8594 with their U.S. federal income Tax Return for the taxable year that includes the date of the Closing) consistent with, and shall not take any position in connection with Tax matters that is inconsistent with, the Final Allocation unless otherwise required by a final determination within the meaning of Section 1313 of the Code or any corresponding provision of state, local or non-U.S. Law, or as the Buyer or the Seller (as applicable) determines is necessary to settle a dispute with a Tax authority after making a good faith effort to defend the Final Allocation. In the event that a Governmental Authority disputes the Final Allocation, the Party receiving notice of such dispute shall promptly notify the other Party hereto, and the Seller and the Buyer shall, and shall cause their respective Affiliates (in the case of the Selling Entities, other than any Excluded Parties) to, use their reasonable best efforts to defend such Final Allocation in any applicable proceeding.

Section 3.4    Closing Cash Amount.

(a)    At least one (1) Business Day prior to the Closing Date, the Seller shall prepare and deliver, or cause to be prepared and delivered, to the Buyer a statement setting forth in reasonable detail the Seller's good faith calculation of the Closing Cash Amount. During the period beginning on the delivery of such statement and ending upon the delivery of the Closing Statement pursuant to Section 3.4(b), the Buyer shall have an opportunity to review such statement and provide reasonable comments with respect to such statement to the Seller in good faith, and the Seller shall in good faith consider such comments so provided by the Buyer. Notwithstanding anything to the contrary herein or otherwise, to the extent that, following the Closing, the Buyer identifies for the Seller in writing items set forth in Section 2.1(c) and the corresponding Contracts that the Buyer would like to acquire or assume as a Purchased Asset, then if and to the extent such item has not been sold, transferred, terminated, rejected or wound down, or returned to the Selling Entities, the applicable Selling Entity shall sell and transfer such item to the Buyer in exchange for payment by the Buyer to the Seller of the amount of such item (calculated in the same manner as the Closing Cash Amount, *mutatis mutandis*) by wire transfer of immediately available funds.

(b)    On the calendar day immediately preceding the Closing Date, the Seller shall prepare and deliver, or cause to be prepared and delivered, to the Buyer a statement (the "Closing Statement") setting forth in reasonable detail the Closing Cash Amount, taking into account any comments from the Buyer provided in accordance with Section 3.4(a) that the Seller in respect of the Closing Statement or the Closing Cash Amount has determined to incorporate into the Closing Statement; *provided*, that if there is any disagreement or dispute between the Buyer and the Seller with respect to the Closing Statement or the calculation of the Closing Cash Amount, such disagreement shall not delay or impede the Closing and the Seller's calculation of

the Closing Cash Amount, absent manifest error, set forth in the Closing Statement shall control; *provided further* that the Buyer shall have the opportunity to present any disagreement or dispute with respect to the Closing Statement to the Bankruptcy Court for determination after the Closing.

## ARTICLE IV
## THE CLOSING

Section 4.1    Time and Place of the Closing.    Upon the terms and subject to the satisfaction or, to the extent permitted by applicable Law, waiver of the conditions contained in Article VIII of this Agreement, the closing of the sale of the Purchased Assets and the assumption of the Assumed Liabilities contemplated by this Agreement (the "Closing") shall take place either by virtual means or at the offices of Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, at 9:00 a.m. (eastern time) as promptly as practicable, and at no time later than the third (3rd) Business Day following the date on which the conditions set forth in Article VIII have been satisfied or, to the extent permitted by applicable Law, waived by the applicable Party in writing (other than conditions which by their nature are to be satisfied at the Closing, but subject to the satisfaction or, to the extent permitted, waiver of such conditions at or prior to the Closing), or at such other place and time as the Buyer and the Seller may mutually agree.  The date on which the Closing actually occurs is herein referred to as the "Closing Date."

Section 4.2    Deliveries by the Seller.  At or prior to the Closing, the Seller shall deliver or cause to be delivered the following to the Buyer:

(a)    the Bill of Sale, duly executed by the Selling Entities;

(b)    the Assignment and Assumption Agreement, duly executed by the Selling Entities;

(c)    the IP Assignment Agreements, duly executed by the applicable Selling Entities;

(d)    Deeds with respect to all Owned Real Property, duly executed by the applicable Selling Entities;

(e)    a certified copy of the Sale Order as entered by the Bankruptcy Court;

(f)    the certificate contemplated by Section 8.2(c); and

(g)    certified copies of the resolutions duly adopted by the Selling Entities' board of directors (or similar governing body) authorizing the execution, delivery and performance of this Agreement and each of the Transactions; and

(h)    a properly executed IRS Form W-9 from each Selling Entity (or, if applicable, its regarded owner for U.S. federal income tax purposes), but excluding any Selling Entity that transfers all of the Purchased Assets held by such Selling Entity to Seller in accordance with Section 7.20 prior to the Closing; *provided*, that notwithstanding anything else contained herein to the contrary, the only remedy for a failure to make the delivery contemplated by this Section 4.2(h) shall be to make any withholding required by Law resulting therefrom as provided

in Section 7.17 and such failure shall not constitute a breach of covenant, agreement or obligation hereunder or constitute a failure of a condition precedent to Closing set forth in Section 8.1 or Section 8.2 to be satisfied.

Section 4.3    Deliveries by the Buyer.  At or prior to the Closing, the Buyer shall deliver or cause to be delivered the following to the Seller:

(a)    the Cash Purchase Price, payable in accordance with Section 3.1(b);

(b)    the Deposit in accordance with Section 3.2;

(c)    the Bill of Sale, duly executed by the Buyer (or its designee);

(d)    the Assignment and Assumption Agreement, duly executed by the Buyer (or its designee);

(e)    the IP Assignment Agreements, duly executed by the Buyer (or its designee);

(f)    certified copies of the resolutions duly adopted by the Buyer's board of directors (or similar governing body) authorizing the execution, delivery and performance of this Agreement and each of the Transactions; and

(g)    the certificate contemplated by Section 8.3(c).

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF THE SELLING ENTITIES

Except as set forth in the disclosure schedule delivered by the Seller to the Buyer (the "Seller Disclosure Schedule") pursuant to this Agreement and subject to such exceptions that result from the filing and commencement of the Bankruptcy Case, including the entry of the Sale Order and any other Orders of the Bankruptcy Court necessary to consummate the Transactions, each Selling Entity hereby represents and warrants to the Buyer (in the case of any assets or liabilities of the Selling Entities, solely with respect to the Purchased Assets and the Assumed Liabilities) as follows:

Section 5.1    Organization, Standing and Corporate Power.  Each Selling Entity is a corporation or other entity duly organized, validly existing and, to the extent applicable, in good standing (or its equivalent) under the laws of the jurisdiction of its incorporation or organization and has the requisite corporate or other entity power and authority to own or lease all of its properties and assets and to carry on its business as it is now being conducted.  Each Selling Entity is duly licensed or qualified to do business in each jurisdiction in which the nature of the business conducted by it or the character or location of the properties and assets owned or leased by it makes such licensing or qualification necessary, except where the failure to be so licensed or qualified would not have a Material Adverse Effect.

Section 5.2    Authority; Execution and Delivery; Enforceability.  Each of the Selling Entities has, subject to the entry and effectiveness of the Sale Order, all necessary power and

authority to execute and deliver this Agreement and the other Transaction Documents to which it is or will be a party, to perform and comply with each of its obligations hereunder and thereunder and, upon entry and effectiveness of the Sale Order, in accordance with the terms hereof and thereof, will have all necessary corporate or similar authority to consummate the Transactions. Subject to the entry and effectiveness of the Sale Order, the execution and delivery by the Selling Entities of this Agreement and the other Transaction Documents to which any Selling Entity is or will be a party, the performance and compliance by the Selling Entities with each of their obligations herein and therein, and the consummation by it of the Transactions have been duly and validly authorized and approved by all necessary corporate or other action on the part of the Selling Entities, and no other corporate or other Proceedings on the part of the Selling Entities and no other stockholder votes are necessary to authorize the execution of this Agreement or the other Transaction Documents, or the performance or consummation by the Selling Entities of the Transactions.  Subject to the entry and effectiveness of the Sale Order, each Selling Entity has duly and validly executed and delivered this Agreement and will (as of the Closing) duly and validly execute and deliver the other Transaction Documents to which it is a party and, assuming the due authorization, execution and delivery by the Buyer of this Agreement and the other Transaction Documents to which it is party, and by the other parties to the Transaction Documents, this Agreement constitutes and the other Transaction Documents will constitute (as of the Closing) legal, valid and binding obligations of each Selling Entity, enforceable against such Selling Entity in accordance with its terms, subject in all cases the General Enforceability Exceptions.

Section 5.3    No Conflicts.

(a)    The authorization, execution and delivery of this Agreement and the other Transaction Documents does not and will not, and the performance by the Selling Entities of this Agreement and the other Transaction Documents will not, except to the extent excused by or unenforceable as a result of the filing of the Bankruptcy Case and except for the entry and effectiveness of the Sale Order, with or without notice, lapse of time or both, (i) conflict with or violate any provision of any Selling Entity's organizational or governing documents, (ii) assuming that all consents, approvals, authorizations and permits described in Section 5.3(b) have been obtained and all filings and notifications described in Section 5.3(b) have been made and any waiting periods thereunder have terminated or expired, conflict with or violate any Law, Permit or Order applicable to any Selling Entity or by which any property or asset of any Selling Entity is bound or affected (iii) except as set forth in Section 5.3(a) of the Seller Disclosure Schedule, require any notice, Consent or approval under, violate, result in any breach of or any loss of any benefit under, constitute a change of control or default (or an event which with notice or lapse of time or both would become a default) under or give to others any right of termination, vesting, amendment, acceleration or cancellation of, or result in the creation of an Encumbrance (other than a Permitted Encumbrance), in each case on or with respect to any Purchased Assets pursuant to or under, any Material Contract or material Permit to which any Selling Entity is party or (iv) result in the creation of any Encumbrance (other than Permitted Encumbrances) on any of the Purchased Assets, except, with respect to clauses (ii), (iii) and (iv), for any such conflicts, violations, breaches, defaults or other occurrences which would not, individually or in the aggregate, have a Material Adverse Effect.

(b)    Assuming the accuracy of the representations and warranties of the Buyer in Section 6.3(a), the execution and delivery by the Selling Entities of this Agreement and the other

Transaction Documents does not and will not, and the consummation by the Selling Entities of the Transactions and compliance by the Selling Entities with any of the terms or provisions hereof will not, require any Consent, approval, authorization or permit of, registration with, or filing with or notification to, any Governmental Authority, except (i) compliance with any applicable requirements under the Regulatory Laws, (ii) the entry of the Sale Order by the Bankruptcy Court and (iii) such other Consents where the failure to obtain such Consents would not, individually or in the aggregate, have a Material Adverse Effect.

Section 5.4    Legal Proceedings and Orders.  Except as would not be, individually or in the aggregate, material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, or except as described in Section 5.4 of the Seller Disclosure Schedule, other than in connection with the Bankruptcy Case, there is no pending or threatened in writing or to the Knowledge of the Selling Entities otherwise threatened, action, suit, arbitration, proceeding (including any civil, criminal, administrative, investigative or appellate proceeding or any informal proceeding) or investigation pending or being heard by or before, or otherwise involving, any Governmental Authority, arbitrator, arbitration panel, advertising self-regulatory body or any other Person (each a "Proceeding")  against or affecting the Selling Entities, the Business, the Purchased Assets or the Assumed Liabilities and as of the date hereof, no Person has commenced or, threatened in writing, or to the Knowledge of the Selling Entities, otherwise threatened to commence any Proceeding (a) that relates to any of the Selling Entities, the Business, the Purchased Assets or the Assumed Liabilities, or (b) that would have the effect of preventing, materially delaying, making illegal or otherwise materially interfering with any of the transactions contemplated by this Agreement. Except as described in Section 5.4 of the Seller Disclosure Schedule, there is no material Order to which any of the Selling Entities or any of the Purchased Assets is subject.  Except as would not be, individually or in the aggregate, material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, no suit, action or other Proceeding is pending or threatened in writing before any Governmental Authority seeking to restrain the Selling Entities from consummating the Transactions or prohibit their entry into this Agreement or prohibit the Closing, or seeking damages as a result of the consummation of this Agreement or the Transaction Documents.

Section 5.5    Permits.  Except as set forth in Section 5.5 of the Seller Disclosure Schedule, other than in connection with or as a result of the Bankruptcy Case, each of the Selling Entities has all material federal, state, provincial, local and foreign governmental licenses, franchises, permits, certificates, registrations, consents, certificates, rights, agreements, consents, approvals, orders, exemptions, billing, qualifications and authorizations ("Permits") necessary for the conduct of their business and the use of their properties and assets, as presently conducted and used, and each of the Permits is valid, subsisting and in full force and effect in all material respects, and except as would not be, individually or in the aggregate, material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, no event has occurred or circumstance exists that may result in the revocation, default, withdrawal, suspension, cancellation, or modification of or to any Permit. The Selling Entities have not during the past five (5) years received any notice from any Governmental Authority or any other Person of (A) any actual or potential violation of any Permit, or (B) any actual or potential revocation, withdrawal, suspension, cancellation, termination of or modification of any such Permit and all applications for renewal and other filings required to have been made with respect to the Selling Entity's Permits have been duly made on a timely basis with the appropriate Governmental Authorities, in

each case, except as would not be, individually or in the aggregate, material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole.

Section 5.6    <u>Compliance with Law</u>.  Each of the Selling Entities is in compliance in all material respects with, and, since January 1, 2018 has been in compliance in all material respects with all Laws and Orders relating to the Purchased Assets, except (a) for such past noncompliance as has been remedied and imposes no continuing current or future obligations or costs on such Selling Entity or (b) as set forth in <u>Section 5.6</u> of the Seller Disclosure Schedule.  Except as would not, individually or in the aggregate, have a Material Adverse Effect, none of the Selling Entities has received any written notice, citation, complaint, Order, or, to the Knowledge of the Selling Entities, other communication since January 1, 2018 from a Governmental Authority that alleges that such Selling Entity is not in compliance in any material respect with any Law or Order.

Section 5.7    <u>Absence of Certain Developments</u>.  Since the Balance Sheet Date, (a) no Material Adverse Effect has occurred, (b) except as set forth in <u>Section 5.7</u> of the Seller Disclosure Schedule and other than in connection with the Bankruptcy Case, the Business has been conducted, in all material respects in the Ordinary Course of Business, and (c) none of the Selling Entities have taken or agreed to take any action that, if taken after the date hereof, would require the consent of the Buyer pursuant to <u>Section 7.1</u>.

Section 5.8    <u>Financial Statements</u>.

(a)    <u>Section 5.8(a)</u> of the Seller Disclosure Schedule contains: (i) the Selling Entities' consolidated unaudited balance sheet as of the latest date available prior to the date hereof (such date, the "<u>Balance Sheet Date</u>") and the related unaudited statements of income and cash flows for the 12-month period then ended, and (ii) the Selling Entities' consolidated unaudited balance sheet and statements of income and cash flows for the latest fiscal year available prior to the date hereof (all such financial statements referred to in (i) and (ii), the "<u>Seller Financial Statements</u>").  Except as set forth in <u>Section 5.8(a)</u> of the Seller Disclosure Schedule, the Seller Financial Statements present fairly in all material respects the financial condition, results of operations and cash flows of the Selling Entities as of the times and for the periods referred to therein in all material respects in accordance with GAAP, consistently applied (subject in the case of the unaudited financial statements to (x) the absence of footnote disclosures and other presentation items, and (y) changes resulting from year-end adjustments none of which are material). The Seller Financial Statements are based on the books and records of the Selling Entities, and the books and records are accurate and complete in all material respects.

(b)    All notes and accounts receivable of the Selling Entities related to the Business are reflected properly on their books and records, are valid receivables subject to no setoffs or counterclaims, and are current and collectible subject to the reserve for bad debts set forth on the applicable Seller Financial Statements as adjusted for the passage of time through the Closing in accordance with the past custom and practice of the Selling Entities related to the Business. The accounts payable and accruals of the Selling Entities related to the Business have arisen in bona fide arm's length transactions in the Ordinary Course of Business.

(c)    The Selling Entities do not have any material Liabilities required by GAAP to be reflected or reserved on a consolidated balance sheet of the Seller (or the notes thereto) except

(i) as expressly disclosed, reflected or reserved against in the most recent balance sheet included in the Seller Financial Statements or the notes thereto, (ii) for Liabilities arising out of or in connection with this Agreement, the other Transaction Documents, or the Transactions, or disclosed in Section 5.8(b) of the Seller Disclosure Schedule, (iii) for Liabilities that, individually or in the aggregate, have not been, or would not be, material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole or (iv) Liabilities that will be or are Liabilities of the Selling Entities as debtors in the Bankruptcy Case, and that will not result in any Encumbrance (other than a Permitted Encumbrance) on the Purchased Assets following the entry of the Sale Order.

Section 5.9    Employee Benefit Plans.

(a)    Section 5.9(a) of the Seller Disclosure Schedule sets forth a true and complete list of each material (i) "employee benefit plan" as defined in Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), whether or not subject to ERISA, (ii) end of service or severance, termination protection, retirement, pension, profit sharing, deferred compensation, phantom, equity or equity-based, health or welfare, employment, independent contractor, vacation, change in control, transaction, retention, bonus or other incentive, fringe benefit, paid time off or similar plan, agreement, arrangement, program or policy, or (iii) other plan, Contract, policy or arrangement providing compensation or benefits, in each case whether or not written, in the case of clauses (i)-(iii), that is sponsored, maintained, administered, contributed to or entered into by any Selling Entity or any of their ERISA Affiliates (as defined in paragraph (e) below), for the benefit of any current or former directors, officers, employees or individual independent contractors of any Selling Entity (each, a "Service Provider" and, such programs, regardless of materiality, the "Seller Compensation and Benefit Programs"). No Seller Compensation and Benefit Program that is subject to Laws of any jurisdiction other than the United States is a defined benefit pension plan.

(b)    With respect to each material Seller Compensation and Benefit Program, the Seller has made available to the Buyer, as of the date hereof, or as reasonably practicable thereafter, to the extent applicable, true, correct and complete copies of (i) the Seller Compensation and Benefit Program document, including any amendments thereto, and all related trust documents, insurance contracts or other funding vehicles, (ii) a written description of such Seller Compensation and Benefit Program if such plan is not set forth in a written document, (iii) the most recent summary plan description together with the summary or summaries of all material modifications thereto, (iv) the most recent IRS determination or opinion letter, (v) the three most recent finalized and filed annual reports (Form 5500 series and all schedules and financial statements attached thereto), (vi) the three most recent yearly compliance testing results performed under the Code, and (vii) all material and non-routine correspondence to or from the IRS, the United States Department of Labor ("DOL"), the Pension Benefit Guaranty Corporation or any other Governmental Authority received in the last three (3) years prior to the date hereof with respect to such Seller Compensation and Benefit Program.

(c)    (i) Each Seller Compensation and Benefit Program has been administered in accordance with its terms and is in compliance (both in form and operation) with all applicable Laws, in each case in all material respects, including ERISA, the Code and the Patient Protection and Affordable Care Act of 2010, as amended (the "ACA"), (ii) there has been no material

violation of, or material failure to comply with, ERISA, the Code or the ACA with respect to the filing of applicable returns, reports, documents and notices regarding any of the Seller Compensation and Benefit Programs with any Governmental Authority or the furnishing of such notices or documents to the participants or beneficiaries of the Seller Compensation and Benefit Programs, and (iii) no material Proceeding has been brought, or to the Knowledge of the Selling Entities is threatened, against or with respect to any Seller Compensation and Benefit Program, including any material audit or inquiry by any Governmental Authority (other than routine claims for benefits and appeals thereof).

(d)     Each Seller Compensation and Benefit Program that is intended to be qualified under Section 401(a) of the Code has received or is the subject of a favorable determination letter from the IRS or, with respect to a pre-approved plan, can rely on an opinion or advisory letter from the IRS to the pre-approved plan sponsor, to the effect that such plan is exempt from federal income taxes under Section 401(a) of the Code.

(e)     None of the Selling Entities or any trade or business that, together with any Selling Entity would be deemed a single employer within the meaning of Section 4001 of ERISA (an "ERISA Affiliate") or other applicable Laws maintains, contributes to, or sponsors (or has in the past six years maintained, contributed to or sponsored), or otherwise has any Liability in respect of, a multiemployer plan as defined in Section 3(37) of ERISA, a plan subject to Title IV or Section 302 of ERISA or Section 412 of the Code, a "multiple employer welfare arrangement" within the meaning of Section 3(40) of ERISA, "multiple employer plan" within the meaning of Section 413(c) of the Code, or an employee welfare benefit plan (as defined in Section 3(1) of ERISA) that is a self-insured group health plan.  No Seller Compensation and Benefit Program provides post-employment health or welfare benefits for any current or former director, officer, employee or individual independent contractor of any Selling Entity (or their dependents), in any jurisdiction, other than as required under Section 4980B of the Code at the participant's sole expense or as required by other applicable Law.

(f)     Except as set forth in Section 5.9(f) of the Seller Disclosure Schedule, neither the execution and delivery of this Agreement, shareholder approval of this Agreement, nor any of the transactions contemplated by this Agreement will (either alone or upon the occurrence of any additional or subsequent events): (i) entitle any current or former Service Provider to any increase in severance pay; (ii) accelerate the time of payment, funding or vesting, or materially increase the amount of compensation (including stock or stock-based compensation) due to any such individual under a Seller Compensation and Benefit Program; (iii) limit or restrict the right of the Selling Entities to merge, amend or terminate any Seller Compensation and Benefit Programs; or (iv) result in "excess parachute payments" within the meaning of Code section 280G(b) of the Code to any "disqualified individual" (as such term is defined in proposed Treasury Regulation section 1.280G-1).  No Seller Compensation and Benefit Program provides for the gross-up or reimbursement of Taxes under Section 4999 or Section 409A of the Code or otherwise.

(g)     None of the Selling Entities is a party to, or otherwise bound by, any collective bargaining agreement or other Contract with a Union.  No Employee (in such capacity) is represented by a Union.  To the Knowledge of the Selling Entities, there are no Union organizing activities or demands of any Union for recognition or certification pending or threatened against

any Selling Entity, and there have been no such activities or demands for the past three (3) years prior to the date hereof.

Section 5.10    Material Contracts.

(a)    Section 5.10(a) of the Seller Disclosure Schedule sets forth a list of each Material Contract as of the date of this Agreement.  For purposes of this Agreement, "Material Contract" means any of the following types of the Contracts to which a Selling Entity is a party or by which a Selling Entity is bound:

(i)    any license or assignment of, or Encumbrance on, any material Intellectual Property whether or not it involves payments and any agreement that addresses the right to use any material Intellectual Property;

(ii)    any Contract or group of related Contracts with the same party for the purchase of products or services, in either case, under which the aggregate undelivered balance of such products and services has a selling price in excess of $50,000.00 and which is not terminable by such Selling Entity upon notice of ninety (90) days or less (other than purchase orders entered into in the Ordinary Course of Business);

(iii)    any Contract that contains any provision (A) materially limiting the right of the Selling Entities to engage in any business, compete with any Person, or operate anywhere in the world, or (B) granting any exclusivity right, right of first refusal, right of first negotiation or offer or similar right to any third party or containing a "most favored nation" provision in favor of any third party, other than a Contract that can be terminated upon notice of ninety (90) days or less;

(iv)    any Contract relating to any acquisition or disposition by such Selling Entity of any business (whether by asset or stock purchase or otherwise) or any merger, consolidation or similar business combination transaction, in each case, pursuant to which such Selling Entity has an outstanding obligation to pay purchase price in excess of $50,000.00;

(v)    any Contract with any Material Customer or Material Supplier;

(vi)    any Contract with any distributor;

(vii)    any Contract pursuant to which any Selling Entity offers or obligates itself to pay any material volume discounts, rebates or other promotional allowances or commissions; or

(viii)    any joint venture, shareholder, limited liability company operating, partnership or similar Contract or any Contract concerning the sharing of profits.

(b)    Each Material Contract is in full force and effect and a valid and binding obligation of each Selling Entity party thereto, as applicable, and, to the Knowledge of the Selling Entities, the other parties thereto, enforceable against each of them in accordance with its terms,

45

except, in each case, as set forth in <u>Section 5.10(b)</u> of the Seller Disclosure Schedule or as such enforceability may be limited by the General Enforceability Exceptions.

(c)     None of the Selling Entities is, and to the Knowledge of the Selling Entities, the other parties thereto are not, in material breach of or default under the Material Contracts (or is alleged to be in breach of or default under), has provided or received any notice of any intention to terminate any Material Contract, and none of the Selling Entities has waived any material rights under any Material Contracts, except, in each case, (i) as a result of the Bankruptcy Case, (ii) as set forth in <u>Section 5.10(c)</u> of the Seller Disclosure Schedule, (iii) as may be cured upon entry of the Sale Order and payment of the Cure Payments, or (iv) for Contracts that have been or will be rejected in the Bankruptcy Case. Complete and correct copies of each Material Contract (including all modifications, amendments, and supplements thereto and waivers thereunder) have been made available to the Buyer.

Section 5.11   <u>Intellectual Property; Information Technology</u>.

(a)     <u>Section 5.11(a)</u> of the Seller Disclosure Schedule sets forth, as of the date of this Agreement, a complete and accurate list of all (i) Registered IP, (ii) domain names included in the Seller IP, and (iii) social media handles included in the Seller IP.  Other than as filed by MEC or Orange Bang, Inc., and except as has not been, or would not be, individually or in the aggregate, material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, none of the Registered IP is involved in any opposition, cancellation, nullity, reissue, reexamination, inter partes review or proceeding, post-grant review, interference, derivation, or other proceeding or action challenging the use, validity, issuance, registration, enforceability, inventorship, authorship, or ownership of such Registered IP.

(b)     Except as has not been, or would not be, individually or in the aggregate, material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, or as set forth in <u>Section 5.11(b)</u> of the Seller Disclosure Schedule, the Seller IP that is being assigned per this Agreement together with all Intellectual Property licensed or made available to the Selling Entities pursuant to the Assumed Agreements contain all the material Intellectual Property needed to operate the Business in substantially the same manner as currently conducted by the Selling Entities.

(c)     Except as has not been, or would not be, individually or in the aggregate, material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, and as set forth in <u>Section 5.11(c)</u> of the Seller Disclosure Schedule, with respect to each trade secret being transferred as part of the Seller IP, including recipes, formulas, and ingredients lists, each Selling Entity has taken reasonable precautions to protect the secrecy, confidentiality, and value of its trade secrets and, to the Knowledge of the Selling Entities, the trade secrets have not been used, divulged, or appropriated either for the benefit of any Person (other than the Selling Entities) or to the detriment of the Selling Entities and no trade secret is subject to any adverse claim or has been challenged or threatened in any way.

(d)     Except as has not been, or would not be, individually or in the aggregate, material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, and as set forth in <u>Section 5.11(d)</u> of the Seller Disclosure Schedule, to the Knowledge of the Selling

Entities, none of the Selling Entities is infringing, misappropriating, diluting, or otherwise violating any Intellectual Property rights of any Person.  Except as would not have a Material Adverse Effect, there is no Proceeding pending and none of the Selling Entities has received any written charge, complaint, claim, demand, or notice (other than from any Buyer Related Party or Orange Bang, Inc. and any of its Affiliates) since January 1, 2020 (or earlier, if presently not fully resolved) alleging: either (i) any such infringement, misappropriation, dilution, or violation or (ii) challenging the use, validity, inventorship, authorship, ownership, or enforceability of any Seller IP.  To the Knowledge of the Selling Entities, none of the Selling Entities are in breach of any contract relating to the Seller IP, except (A) as a result of the Bankruptcy Case, (B) as has not been, or would not be, individually or in the aggregate, material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, (C) as may be cured upon entry of the Sale Order and payment of the Cure Payments, (D) for Contracts that have been or will be rejected in the Bankruptcy Case or (E) any such assertions by any Buyer Related Party or Orange Bang, Inc. and any of its Affiliates in any Proceeding.

(e)     To the Knowledge of the Selling Entities, except as has not been, or would not be, individually or in the aggregate, material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, no Person is infringing, misappropriating, diluting or otherwise violating any Seller IP.  No Selling Entity has made or asserted any charge, complaint, claim, demand or notice since January 1, 2020 alleging any such infringement, misappropriation, dilution, or violation.

(f)     To the Knowledge of the Selling Entities, the IT Systems operate as required by the Selling Entities.

Section 5.12     Data Privacy.

(a)     As it relates to the Business and Purchased Assets, the Selling Entities have been at all times since January 1, 2020, and remain in compliance in all material respects with all applicable: (i) externally published policies relating to the Selling Entities' processing of Personal Information; (ii) terms of any material agreements to which the Selling Entities are bound relating to the processing of Personal Information by the Selling Entities; and (iii) Privacy Laws.

(b)     Since January 1, 2020, the Selling Entities have implemented and maintained, and continue to maintain as of the date hereof commercially reasonable administrative, technical, and physical measures designed to protect Personal Information with respect to the Business and Seller IP against loss, damage, and unauthorized access, use, modification, or other misuse and the continued, materially uninterrupted and error-free operation of its services and IT Systems as currently conducted by the Business. Except as has not been, or would not be, individually or in the aggregate, material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, since January 1, 2020, each of the Selling Entities have timely and reasonably remediated and addressed known critical and high security assessment findings relating to its implementation of administrative, technical, and physical security measures with respect to the Business.  To the Knowledge of the Selling Entities, as of the date of this Agreement, there are no unremediated security assessment findings that have been identified as "critical."

(c)     Except as set forth in Section 5.12(c) of the Seller Disclosure Schedule, since January 1, 2020, there have not been any Security Incidents related to the Business that would be material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, and to the Knowledge of the Selling Entities, there are currently no facts or circumstances which would serve as the basis for any such Security Incident.

Section 5.13     Taxes.

(a)     All income and other material Tax Returns relating to the Business or the Purchased Assets that are required by applicable Law to be filed by or with respect to any Selling Entity have been timely filed (taking into account any extension of time within which to file), and all such Tax Returns are true, complete, and accurate in all material respects.

(b)     Each of the Selling Entities has timely paid all material Taxes relating to the Business or the Purchased Assets due and owing by it (whether or not required to be shown on a Tax Return), including any material Taxes required to be withheld from amounts owing to, or collected from, any employee, creditor, or other third party and all such material Taxes required to be withheld have been properly withheld and remitted, other than Taxes not due as of the date of the filing of the Bankruptcy Case as to which subsequent payment was not required by reason of the Bankruptcy Case or Taxes that are being contested in good faith in appropriate Proceedings as set forth in Section 5.13(b) of the Seller Disclosure Schedule.

(c)     No material deficiencies for Taxes relating to the Business or the Purchased Assets have been claimed, proposed or assessed by any Governmental Authority in writing against the Selling Entities except for deficiencies which have been fully satisfied by payment, settled or withdrawn or adequately reserved for in accordance with GAAP or other generally accepted accounting principles applicable to the financial statements of the Selling Entities.

(d)     There are no material audits, examinations, investigations or other proceedings ongoing or pending against or with respect to the Selling Entities with respect to any Taxes relating to the Business or the Purchased Assets and no written notification has been received by the Selling Entities that such a material audit, examination, investigation or other proceeding has been proposed.

(e)     There are no Encumbrances for Taxes relating to the Business or the Purchased Assets upon any property or assets of the Selling Entities, except for Permitted Encumbrances.

(f)     After the Closing Date, the Buyer will not be required to include any material item of income in, or exclude any material item of deduction from, taxable income for any Post-Closing Tax Period with respect to the Purchased Assets or the Business as a result of any installment sale or other open transaction, undertaken, closing agreement entered into, change in accounting method made, improper method of accounting used, or any of the Purchased Assets constituting a prepaid amount or advanced payment received or deferred revenue accrued, in each case, prior to the Closing.

Section 5.14     Insurance.  The Selling Entities are insured with policies in such amounts and with such deductibles and covering such risks as the Selling Entities reasonably believe are

generally deemed adequate and customary in all material respects for the Business. Except as set forth in Section 5.14 of the Seller Disclosure Schedule, all premiums due and payable under the applicable insurance policies of the Selling Entities to the extent relating to the Business have been timely paid as of the date of this Agreement. No Selling Entity has been denied in writing any insurance coverage for which it has applied, except as would not be, or would not be, material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole.

Section 5.15    Title to Assets; Real Property.

(a)    The Selling Entities have good and valid title to, or have good and valid leasehold interests in, all material tangible personal property that is included in the Business (other than the Excluded Assets), free and clear of all Encumbrances other than Permitted Encumbrances, and except (i) to the extent that such Encumbrances will not be enforceable against such material tangible personal property following the Closing in accordance with the Sale Order or (ii) as set forth in Section 5.15(a) of the Seller Disclosure Schedule. The Purchased Assets and all other material tangible personal property owned or leased by the Selling Entities in connection with the Business are in good operating condition and repair, ordinary wear and tear excepted.

(b)    (i) A Selling Entity owns fee simple title to the Owned Real Property and (ii) the Selling Entity set forth in Section 5.15(b) of the Seller Disclosure Schedule, as applicable, has valid leasehold interests in the real property leased pursuant to the Real Property Leases (the real property described in the foregoing clauses (i) and (ii), collectively, the "Seller Properties"), in each case sufficient to conduct the Business as currently conducted and free and clear of all Encumbrances (other than Permitted Encumbrances).

(c)    Except as set forth in Section 5.15(c) of the Seller Disclosure Schedule or in any title commitment or title policy delivered to Buyer or its representatives:  (i) there is no pending or, to the Knowledge of the Selling Entities, threatened, condemnation, or expropriation or other Proceeding relating to the Owned Real Property; (ii) there are no leases, subleases, licenses, concessions or other Contracts of the Selling Entities, as applicable, written or oral, granting to any Person the right to use or occupy any portion of the Owned Real Property; (iii) to the Knowledge of Selling Entities, there are no rights of first refusal, reversionary rights, purchase options, rights of first offer recorded or unrecorded, affecting any portion of the Owned Real Property; (iv) to the Knowledge of Selling Entities, no Person (other than a Selling Entity) has the right to possess any portion of the Owned Real Property; and (v) none of the Selling Entities have received any written notice of any violation of applicable Laws relating to the Owned Real Property and, to the Knowledge of the Selling Entities, the Selling Entities and their respective Owned Real Property are in compliance, in all material respects, with all material applicable Laws relating to the Owned Real Property.

(d)    Section 5.15(d) of the Seller Disclosure Schedule contains a complete and accurate list of all of the Selling Entities' underlying leases, subleases, and sub-leases, tenancy agreements, licenses or other rights of occupation (written or oral) affecting any real property used or occupied, or permitted to be used or occupied, by the Selling Entities (the "Leased Real Property"), and all amendments, extensions, renewals, guaranties, modifications, or supplements thereto, together with the amount of security deposit thereunder. True, complete and correct copies of all the Real Property Leases have been delivered or made available to the Buyer prior to the

date hereof. There are no Real Property Leases entered into by the Selling Entities (with respect to the Business) that are currently in effect except as set forth in <u>Section 5.15(d)</u> of the Seller Disclosure Schedule. The Seller or a Selling Entity, as applicable, holds a valid leasehold interest in the Leased Real Property of which it is a lessee or sublessee free and clear of all Encumbrance (other than Permitted Encumbrances), and each Real Property Lease is fully enforceable against the Seller or a Selling Entity, as applicable, and, to the Knowledge of the Selling Entities, the applicable lessor(s), sublessor(s) or sublessee(s), as the case may be, in accordance with its terms. Neither the Seller or the Selling Entities nor, to the Selling Entities' Knowledge, the applicable lessor, sublessor and/or sublessee, as the case may be, is in default in the performance, observance or fulfillment of any material monetary obligation, covenant or condition contained in any Real Property Lease to which it is a party or bound, and no event has occurred that (with or without the giving of notice or lapse of time, or both) would constitute such a material monetary default by the Seller or the Selling Entities, as applicable.

(e)     To the Selling Entities' Knowledge, neither the Leased Real Property nor any part thereof has been expropriated or condemned, nor has any Selling Entities received any written notice of any proposed expropriation or condemnation. Neither the Seller nor any of the other Selling Entities has received written notice of, or has Knowledge of, any proposed assessment for public improvement with respect to the Leased Real Property. As of the date hereof, neither the Seller nor any of the other Selling Entities has provided or received any written notice of any material default with respect to any Real Property Lease, which material default has not been remedied. The present use and operation of the Leased Real Property conforms to the permitted use under each of the Real Property Leases in all material respects.

(f)     The Selling Entities have made available to the Buyer true and correct copies of the most recent title insurance commitments and policies and surveys for all Owned Real Property in their possession, and, where requested by the Buyer, any plans, specifications, manuals and reports relating to the physical condition of any improvements on the Owned Real Property, possessed by, or in the control of, the Selling Entities.

(g)     To the Knowledge of the Selling Entities, since January 1, 2022, no Selling Entity has received any written notice of any condition which would have a material adverse effect on the use and enjoyment of the Owned Real Property for the purposes for which the Selling Entities currently use the Owned Real Property, except (i) for any such condition which has been remedied in all material respects or no longer exists in any manner which would result in a material adverse effect on the use and enjoyment of the Owned Real Property for the purposes for which the Selling Entities currently use the Owned Real Property, or (ii) to the extent the party submitting such written notice to the Selling Entities has withdrawn or is deemed to have withdrawn such written notice.

Section 5.16   <u>Environmental Matters</u>.

(a)     None of the Selling Entities has received any written notification of any allegation of actual or potential responsibility for any material Release or threatened Release of any Hazardous Materials, the subject matter of which has not been resolved.

(b)     None of the Selling Entities has any material unresolved obligations pursuant to any consent decree or consent order or is otherwise subject to any material unresolved obligations pursuant to any judgment, decree, or judicial or administrative order, in each case, relating to material compliance with applicable Environmental Laws, Environmental Permits or to the investigation, sampling, monitoring, treatment, remediation, response, removal or cleanup of Hazardous Materials.

(c)     No Selling Entity has treated, stored, disposed of, arranged for the disposal of, transported, handled, released, nor, to the Knowledge of the Selling Entities, exposed any Person to, any Hazardous Materials except in compliance in all material respects with applicable Environmental Laws.

Section 5.17     <u>Brokers</u>.  Except for Rothschild & Co US Inc. or as set forth in <u>Section 5.17</u> of the Seller Disclosure Schedule, none of the Selling Entities have used any investment banker, broker, finder or similar agent in connection with the Transactions, and no Person is entitled to any investment banker, brokerage, financial advisory, finder's or other similar fee or commission payable by any Selling Entity in connection with the Transactions.  Any such fees shall be paid in full by the Selling Entities.

Section 5.18     <u>OFAC; Foreign Corrupt Practices Act; Anticorruption Laws</u>.

(a)     Except as has not been, or would not be, individually or in the aggregate, material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, no Selling Entity or, to the Knowledge of the Selling Entities, any director, officer, or employee acting on behalf of such Selling Entity, is currently, or during the past five (5) years prior to the date hereof has been, subject to any U.S. sanctions administered by the Office of Foreign Assets Control of the U.S. Treasury Department ("<u>OFAC</u>").

(b)     Except as has not been, or would not be, individually or in the aggregate, material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, no Selling Entity or, to the Knowledge of the Selling Entities, any director, officer, agent, employee or other person acting on behalf of such Selling Entity has during the past five (5) years prior to the date hereof, in the course of its actions for, or on behalf of, such Selling Entity (i) used any corporate funds for any unlawful contribution, gift, entertainment or other unlawful expenses relating to political activity; (ii) made any direct or indirect unlawful payment to any domestic government official "foreign official" (as defined in the U.S. Foreign Corrupt Practices Act of 1977, as amended, and the rules and regulations thereunder (collectively, the "<u>FCPA</u>")) or employee from corporate funds; (iii) violated or is in violation of any provision of the FCPA or any applicable non-U.S. anti-bribery statute or regulation; or (iv) made any unlawful bribe, rebate, payoff, influence payment, kickback or other unlawful payment.

(c)     The Selling Entities have implemented and maintain in effect policies and procedures that are designed to ensure material compliance by the Selling Entities with Anticorruption Laws.

Section 5.19     <u>Material Customers; Material Suppliers</u>.

(a)      Section 5.19(a) of the Seller Disclosure Schedule sets forth a list of the twenty (20) largest customers (measured by revenue) of the Selling Entities, taken as a whole (collectively, the "Material Customers") during the twelve (12) month period ended May 31, 2023. Except as set forth in Section 5.19(a) of the Seller Disclosure Schedule, there has been no written or, to the Knowledge of the Selling Entities, oral notice received from any such party of any termination, cancellation or material limitation of, or any materially adverse modification or change in, the business relationship of the Selling Entities with any Material Customer.

(b)      Section 5.19(b) of the Seller Disclosure Schedule sets forth a list of the twenty (20) largest vendors and suppliers (measured by fees paid) of the Selling Entities, taken as a whole (collectively, the "Material Suppliers") during the twelve (12) month period ended May 31, 2023. Except as set forth in Section 5.19(b) of the Seller Disclosure Schedule, there has been no written or, to the Knowledge of the Selling Entities, oral notice received from any such party of any termination, cancellation or material limitation of, or any materially adverse modification or change in, the business relationship of the Selling Entities with any Material Suppliers.

Section 5.20   Affiliate Transactions.   Except as set forth in Section 5.20 of the Seller Disclosure Schedule and except for any Excluded Assets or Excluded Liabilities, no Affiliate of the Selling Entities (other than (x) another Selling Entity or Subsidiary of such Selling Entity or (y) any Excluded Party), or any officer or director of the Selling Entities or any Subsidiary of any Selling Entity or any former officers or directors of the Selling Entities or any of their respective Subsidiaries (a) is a party to any agreement or transaction with the Selling Entities having a potential or actual value or a contingent or actual liability exceeding $50,000.00, other than (i) loans and other extensions of credit to directors and officers of the Selling Entities for travel, business or relocation expenses or other employment-related purposes in the Ordinary Course of Business, (ii) employment arrangements in the Ordinary Course of Business and (iii) the Seller Compensation and Benefit Programs, (b) has any material interest in any material property used in the Business by the Selling Entities or any of their respective Subsidiaries or (c) owns any material interest in, or is an officer, director, employee or consultant of, any Person which is, or is engaged in business as a supplier or customer of the Selling Entities or their respective Subsidiaries.

Section 5.21   Sufficiency of Assets.   Except as set forth in Section 5.21 of the Seller Disclosure Schedules and except as has not been, or would not be, individually or in the aggregate, material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole, the Purchased Assets are sufficient to allow the Buyer as of immediately following the Closing to conduct the Business as currently conducted by the Selling Entities.

Section 5.22   Food Regulatory Matters.

(a)      Except as set forth on Section 5.22(a) of the Seller Disclosure Schedules, each Selling Entity is, and has been since January 1, 2020, in material compliance with all Food Regulatory Laws.  Since January 1, 2020, the Selling Entities have not (i) received written notice of any adverse inspection, finding of deficiency, or other finding of non-compliance from any Governmental Authority or (ii) been part of or subject to any pending or, to the Knowledge of the Selling Entities, threatened FDA, FTC, Advertising Self-Regulatory Council, or equivalent state, local, or foreign agency action, including any FDA Form 483, Warning Letter, Untitled Letter,

Cyber Letter, civil investigative demand, seizure, injunction, detention, refusal of admittance, recall, market withdrawal, civil penalty, criminal investigation or penalty, disqualification or debarment, or class action demand letter alleging non-compliance with any applicable Food Regulatory Laws, in each case with respect to clauses (i) and (ii), except as would not be material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole.

(b)     Since January 1, 2020, no recalls, withdrawals, post-sale warnings, safety alerts, suspensions, seizures, or similar actions are pending or, to the Knowledge of the Selling Entities, threatened, or have been conducted by the Selling Entities or in relation to any products manufactured or distributed by or on behalf of the Selling Entities, in each case except as would not be material to the Business, the Purchased Assets and the Assumed Liabilities, taken as a whole.

## ARTICLE VI
## REPRESENTATIONS AND WARRANTIES OF THE BUYER

The Buyer hereby represents and warrants to the Selling Entities as follows:

Section 6.1     <u>Organization and Good Standing</u>.  The Buyer is a limited liability company duly organized, validly existing and, to the extent applicable, in good standing (or its equivalent) under the jurisdiction of its incorporation or organization and has the requisite corporate power and authority to own or lease all of its properties and assets and to carry on its business as it is being conducted on the date hereof.  The Buyer is duly licensed or qualified to do business in each jurisdiction in which the nature of the business conducted by it or the character or location of the properties and assets owned or leased by it makes such licensing or qualification necessary, except for those licenses or qualifications the absence of which would not prevent or materially delay the consummation of the Transactions.

Section 6.2     <u>Authority Relative to this Agreement</u>.  The Buyer has all necessary power and authority to execute and deliver this Agreement and the other Transaction Documents to which it is party, to perform and comply with each of its obligations hereunder and thereunder and to consummate the Transactions.  The execution and delivery by the Buyer of this Agreement and the other Transaction Documents to which it is party, the performance and compliance by the Buyer with each of its obligations herein and therein and the consummation by the Buyer of the Transactions have been duly and validly authorized and approved by all necessary corporate or other action on the part of the Buyer and no other corporate or other proceedings on the part of the Buyer and no stockholder votes are necessary to authorize this Agreement, the other Transaction Documents to which it is party or the performance or consummation by the Buyer of the Transactions.  The Buyer has duly and validly executed and delivered this Agreement, and the other Transaction Documents to which it is party will be duly executed and delivered by the Buyer as of the Closing and, assuming the due and valid authorization, approval, execution and delivery by the Selling Entities of this Agreement and the other Transaction Documents, this Agreement and the other Transaction Documents to which the Buyer is party constitutes or will constitute the Buyer's legal, valid and binding obligation, enforceable against the Buyer in accordance with its terms, subject to the General Enforceability Exceptions.

Section 6.3     <u>No Violation; Consents</u>.

(a)     The authorization, execution and delivery of this Agreement or the other Transaction Documents by the Buyer does not and will not, and the performance by the Buyer of this Agreement and the other Transaction Documents to which it is party will not, with or without notice, lapse of time or both, (i) conflict with or violate any provision of the organizational documents of the Buyer, (ii) assuming that all consents, approvals, authorizations and permits described in <u>Section 6.3(b)</u> have been obtained and all filings and notifications described in <u>Section 6.3(b)</u> have been made and any waiting periods thereunder have terminated or expired, conflict with or violate any Law or Order applicable to the Buyer or its Affiliates, or by which any property or asset of the Buyer is bound or affected or (iii) require any consent or approval under, result in any breach of or any loss of any benefit under, constitute a change of control or default (or an event which with notice or lapse of time or both would become a default) under or give to others any right of termination, vesting, amendment, acceleration or cancellation of, or result in the creation of an Encumbrance on any property or asset of the Buyer, pursuant to, any Contract or Permit to which the Buyer is a party, except, with respect to clauses (ii) and (iii), for any such conflicts, violations, breaches, defaults or other occurrences which would not, individually or in the aggregate, prevent or materially delay the consummation of the Transactions.

(b)     Assuming the accuracy of the representations and warranties of the Selling Entities in <u>Section 5.3(a)</u>, the execution and delivery by the Buyer of this Agreement and the other Transaction Documents to which it is party does not and will not, and the consummation by the Buyer of the Transactions and compliance by the Buyer with any of the terms or provisions hereof will not, require any consent, approval, authorization or permit of, or filing with or notification to, any Governmental Authority, except (i) compliance with any applicable requirements under the Regulatory Laws, (ii) the entry of the Sale Order by the Bankruptcy Court or (iii) such other Consents where failure to obtain such Consents would not, individually or in the aggregate, prevent or materially delay the Transactions.

Section 6.4     <u>Legal Proceedings and Orders</u>.  Except for the Bankruptcy Case, there is no Proceeding pending, or to the knowledge of the Buyer, threatened that, individually or in the aggregate, would prevent or materially delay the Transactions, and the Buyer is not subject to any outstanding Order that, individually or in the aggregate, would prevent or materially delay the Transactions.

Section 6.5     <u>Brokers</u>.  Except for Evercore Group L.L.C., the Buyer has not used any investment banker, broker, finder or similar agent in connection with the Transactions, and no Person is entitled to any investment banker, brokerage, financial advisory, finder's or other similar fee or commission payable by the Buyer or any of its Affiliates in connection with the Transactions.  Any such fees shall be paid in full by the Buyer.

Section 6.6     <u>Buyer Funding</u>.  The Buyer has, and will have at the Closing, sufficient available funds to pay the Purchase Price and any other payments to be made by the Buyer hereunder, including any fees, costs and expenses incurred or payable by the Buyer hereunder, under the other Transaction Documents or in connection with the Transactions.  The Buyer's obligations hereunder and under any other Transaction Documents are not subject to any condition regarding the Buyer's obtaining of funds to consummate the Transactions.

Section 6.7  <u>Solvency</u>.  Immediately after giving effect to the Transactions, the Buyer shall be solvent and shall: (a) be able to pay its debts as they become due; (b) own property that has a fair saleable value greater than the amounts required to pay its debt (including a reasonable estimate of the amount of all contingent liabilities); and (c) have adequate capital to carry on its business.  In connection with the Transactions, the Buyer has not incurred debts beyond its ability to pay as they become absolute and matured, which would render the Buyer insolvent as of the date hereof or immediately following the Closing.

## ARTICLE VII
## COVENANTS OF THE PARTIES

Section 7.1  <u>Conduct of Business of the Selling Entities</u>.  Except (u) as set forth on <u>Section 7.1</u> of the Seller Disclosure Schedules, (v) any limitations on operations imposed by the Bankruptcy Court or the Bankruptcy Code, (w) as required by applicable Law, Order or a Governmental Authority, (x) to the extent related to an Excluded Asset or an Excluded Liability, (y) as contemplated or required by the terms of any Transaction Document, or (z) as otherwise consented to in writing by the Buyer (which may not be unreasonably withheld, conditioned or delayed), during the period commencing on the date of this Agreement and continuing through the Closing or the earlier termination of this Agreement in accordance with its terms:

(a)  each of the Selling Entities shall use commercially reasonable efforts to (i) operate the Business in the Ordinary Course of Business, (ii) preserve in all material respects the Purchased Assets (excluding sales of Inventory), (iii) keep available the services of its present employees, (iv) comply in all material respects with all applicable Law, and (v) preserve its present relationships with Material Suppliers, Material Customers and other Persons having material business relations therewith; and

(b)  the Selling Entities shall not:

(i)  acquire (whether by merger, consolidation or acquisition of stock or assets or otherwise) or make any investment in any interest in, any material assets, securities, properties, interests or businesses for the conduct of the Business, tangible or intangible, other than purchases of Inventory in the Ordinary Course of Business;

(ii)  sell, lease (as lessor), license, transfer or otherwise dispose of (or permit to become subject to any Encumbrance, other than (A) Permitted Encumbrances, (B) Encumbrances arising under any Order of the Bankruptcy Court relating to the use of cash collateral (as defined in the Bankruptcy Code) or (C) Encumbrances arising in connection with any debtor-in-possession financing of the Selling Entities) any material Purchased Assets (including any Seller IP), except for (1) non-exclusive, revocable (upon sixty (60) days' notice or less without additional payment), licenses granted in the Ordinary Course of Business, except to any Excluded Parties, (2) the sale of Inventory in the Ordinary Course of Business, (3) the collection of receivables or the payment of payables, and (4) the use of prepaid assets or amounts and Documentary Materials in the conduct of the Business;

(iii)     incur or make any material capital expenditures, except (A) to the extent permitted by the terms of the Selling Entities' existing financing arrangements (including any existing debtor-in-possession financing), (B) capital expenditures made in the Ordinary Course of Business or (C) capital expenditures that are provided for in any Selling Entity's budget for calendar year 2023;

(iv)     amend in any material and adverse respect or voluntarily terminate any Assumed Agreement or Assumed Real Property Lease, in each case other than in the Ordinary Course of Business; *provided*, that no Selling Entity shall be required to enter into any extension or amendment with respect to any Assumed Agreement or Assumed Real Property Lease that would otherwise terminate prior to the Closing;

(v)     merge or consolidate with or into any legal entity, dissolve, liquidate or otherwise terminate its existence;

(vi)     amend the certificate of incorporation, bylaws or comparable organizational documents of any Selling Entity or in a manner that would materially delay or impede the Selling Entities' ability to consummate the Transactions;

(vii)     incur any material indebtedness for borrowed money, enter into any capital lease or guarantee any such indebtedness, in each case that would constitute an Assumed Liability, other than (A) the DIP Obligations, (B) in accordance with the DIP Order or (C) accounts payable or other amounts payable in the Ordinary Course of Business;

(viii)     make any material loans, advances or capital contributions to, or investments in, any other Person (other than any other Selling Entity) with respect to the Business;

(ix)     make any change in any method of accounting or accounting practice or policy, except as required by applicable Law or GAAP;

(x)     commence, settle or propose to settle any material Proceedings that could materially diminish the value of the Purchased Assets or impair title thereto, in each case other than (A) any Proceeding in respect of which any related liability is covered by an insurance policy, (B) any Proceeding involving an amount less than $300,000.00 or (C) any Proceeding that would otherwise be settled in the Ordinary Course of Business;

(xi)     materially change any Tax accounting elections, methods, principles or practices relating to the Business or the Purchased Assets, except insofar as may be required by applicable Law or GAAP or other generally accepted accounting principles applicable to any Selling Entity (or any interpretation thereof);

(xii)     except as required by Law or Contracts, employee benefit plans, as provided in any incentive or retention program or similar arrangement approved by the Bankruptcy Court, as disclosed in <u>Section 5.9(a)</u> of the Seller Disclosure Schedule that provide that liabilities are solely the liability of the Selling Entities, the Buyer or any Affiliate of the Buyer, or solely with respect to Specified Employees or Terminated

Employees for compliance with Section 7.9, (A) pay any material bonus or similar payment to, or increase the amount of the wages, salary, commissions, fringe benefits or other compensation or remuneration payable to, any Employees or Service Providers, other than immaterial payments or changes for non-executive management Employees in the Ordinary Course of Business, (B) become a party to, establish, amend, commence participation in, terminate or commit itself to the adoption of any plan that would be a Seller Compensation and Benefit Program, (C) accelerate the vesting of or lapsing of restrictions with respect to any stock-based compensation or other long-term incentive compensation under any Seller Compensation and Benefit Program, (D) grant any new awards under any Seller Compensation and Benefit Program, (E) amend or modify any outstanding award under any Seller Compensation and Benefit Program, or (F) enter into, amend or terminate any collective bargaining agreement or other agreement with a labor union, works council or similar organization; or

(xiii)   authorize any of the foregoing, or commit or agree to do any of the foregoing.

Section 7.2   Allowed Claims of MEC and Orange Bang, Inc.  Effective as of the Closing, and subject to entry of the 9019 Order, each of the Selling Entities hereby unconditionally and irrevocably agrees for all purposes that the following claims shall be deemed allowed in the Bankruptcy Case: the California District Court Action Allowed Unsecured Claim, the Trade Dress Action Allowed Unsecured Claim, and the OBI/Monster Matter Allowed Unsecured Claim.  MEC agrees to subordinate any recoveries on its 100% share of the California District Court Action Allowed Unsecured Claim and its 50% share of the OBI/Monster Matter Allowed Unsecured Claim until the Selling Entities recover $5 million from the Excluded Assets, including Excluded Estate Claims, for the benefit of their estates.  MEC shall not have an allowed administrative claim in the Bankruptcy Case, *provided* that the DIP Lenders and the Prepetition Secured Parties agree that they also will not have any allowed administrative claims in the Bankruptcy Case.   No Affiliates or Representatives of MEC shall have allowed claims in the Bankruptcy Case other than those of MEC provided for in this Section 7.2.   Immediately following execution of this Agreement, the applicable Parties shall enter into a joint stipulation to stay the Orange Bang Trademark License Action and any proceedings occurring therein, including any pending motion to withdraw the reference or any responses thereto, pending the occurrence of either (a) the Closing or (b) the termination of this Agreement.

Section 7.3   Access to and Delivery of Information; Maintenance of Records; Transition and Destruction.

(a)   From the date of this Agreement until the earlier of the Closing and the termination of this Agreement, to the extent permitted by applicable Law, the Selling Entities shall during ordinary business hours and upon reasonable prior notice (i) give the Buyer and the Buyer's Representatives reasonable access to the Seller's accountants, counsel, financial advisors and other authorized outside representatives, officers and senior management and the employees of the Selling Entities in their respective principal places of business, the Selling Entities' customers, vendors and creditors, all books, records and other documents and data in the locations in which they are normally maintained, and all offices and other facilities of the Selling Entities related to the Business; *provided, however*, that, in connection with such access, the Buyer and the Buyer's

Representatives shall minimize disruption to the Business; *provided, further,* that in connection with the Buyer's and/or the Buyer's Representatives' access of such offices and other facilities, the Buyer and/or the Buyer's Representatives shall not materially interfere with the use and operation of such offices and other facilities, and shall comply with all reasonable safety and security rules and regulations for such offices and other facilities, (ii) permit the Buyer and the Buyer's Representatives to make such reasonable inspections and copies of all books, records and other documents in the possession of the Selling Entities related to the Business, as the Buyer may reasonably request, and (iii) furnish the Buyer with such reasonably available financial and operating data and other information as the Buyer and the Buyer's Representatives may from time to time reasonably request.  For the avoidance of doubt and without limiting the Selling Entities' other obligations under this <u>Section 7.3</u>, the Selling Entities shall use commercially reasonable efforts to provide to the Buyer, at the Buyer's sole cost and expense, all information and materials heretofore reasonably requested by the Buyer with respect to the Purchased Assets and/or the Assumed Liabilities.  Notwithstanding anything to the contrary set forth in this <u>Section 7.3(a)</u>, no access to, or examination of, any information or other investigation shall be permitted to the extent that it would require disclosure of information subject to attorney-client, attorney work product or other privilege, or would breach or violate any Contract to which any Selling Entity is a party (or is bound by or whose assets or properties are bound by or subject to) or any applicable Law (including the Retained Records).  The Buyer agrees to, and will cause its Representatives to, sign any reasonable and customary access letters required in connection with any such provision of information or access or the conduct of any such investigation or examination contemplated by this <u>Section 7.3(a)</u> and <u>Section 7.3(b)</u>.  Notwithstanding anything to the contrary herein, in no event shall any of the Selling Entities or their respective Affiliates be required to provide the Buyer or any of its Affiliates or their respective Representatives with access to or copies of any trade secrets, recipes and formulas related to the Business at any time prior to the Closing, except as otherwise specifically set forth on <u>Section 7.3(a)</u> of the Seller Disclosure Schedules.

(b)     Between the Closing Date and the complete dissolution and liquidation of the Selling Entities (which shall occur no earlier than six (6) months after the Closing), the Buyer and the Buyer's Representatives shall have reasonable access to, and the opportunity (at the Buyer's sole cost) to copy, the Selling Entities' books and records, including access to passwords and log in information to access Seller IP, e.g. to access websites, social media, trade secrets including recipes, formulas, and ingredients lists, can art and packaging art digital files, etc. and all information pertaining to the Assumed Agreements and Assumed Real Property Leases, in the possession of the Selling Entities to the extent that (i) such books, records and information relate to any period prior to the Closing Date and are not already in the possession of the Buyer or the Buyer's Representatives and (ii) such access is reasonably required by the Buyer in connection with the Assumed Liabilities, the operation of the Business following the Closing, or the Purchased Assets.  Such access shall be afforded by the Seller upon receipt of reasonable advance notice and during normal business hours and without undue disruption to its business or that of any other Selling Entity. Before disposing of any books and records constituting Excluded Assets (whether prior to or in connection with) its dissolution, the Seller shall (x) give the Buyer at least thirty (30) days prior written notice of such disposition and (y) give the Buyer a reasonable opportunity, at the Buyer's expense, to segregate and remove such books and records relating to the Purchased Assets, the Business, and the Assumed Liabilities as the Buyer may select and/or to copy at the Buyer's sole cost and expense such books and records to the extent relating to the Purchased Assets, the Business, and/or the Assumed Liabilities as the Buyer may select. Notwithstanding

58

anything to the contrary set forth in this Section 7.3(b), no access to, or examination of, any information or other investigation shall be permitted to the extent that it would require disclosure of information subject to attorney-client, attorney work product or other privilege, or would breach or violate any Contract to which any Selling Entity is a party (or is bound by or whose assets or properties are bound by or subject to) or any applicable Law (including the Retained Records).

(c)     Between the Closing Date and the complete dissolution and liquidation of the Selling Entities (up to a maximum of four (4) years following the Closing Date), the Selling Entities and their Representatives shall have reasonable access to (and the right to download and make copies of) all of the books, records, documents and information of the Selling Entities delivered to the Buyer at Closing or pursuant to Section 7.3(b) above, and reasonable access to, and the reasonable assistance of, the employees and other Representatives of the Buyer and the Business, to the extent that (i) such books, records, documents and information relate to any period prior to the Closing Date or the winding down of any remaining business, assets or liabilities of the Selling Entities, the dissolution and liquidation of the Selling Entities, the performance of the obligations of the Selling Entities hereunder and under the other Transaction Documents (including obligations under Section 2.8), or any Excluded Asset or Excluded Liability (including in connection with any Excluded Estate Claims) and (ii) such access is reasonably required by the Debtor Entities in connection with the Bankruptcy Case, the Excluded Liabilities or the Excluded Assets (including in connection with any Excluded Estate Claims).  Such access shall be afforded by the Buyer upon receipt of reasonable advance notice and during normal business hours and without undue disruption to its business, and the Buyer shall permit the Selling Entities and their Representatives to make such reasonable copies of such books, records and information as they may reasonably request.  Notwithstanding anything to the contrary set forth in this Section 7.3(c), no access to, or examination of, any information or other investigation shall be permitted to the extent that it would require disclosure of information subject to attorney-client, attorney work product or other similar privilege, or would breach or violate any Contract to which the Buyer or any Affiliate thereof is a party (or is bound by or whose assets or properties are bound by or subject to) or any applicable Law; *provided* that the Buyer shall use commercially reasonable efforts to cooperate and provide such information or access without waiving any such privilege or resulting in such breach or violation.

(d)     All information obtained by the Buyer or the Buyer's Representatives pursuant to Section 7.3(a) shall be subject to the terms of the Confidentiality Agreement.

Section 7.4     Expenses.  Except to the extent otherwise specifically and expressly provided herein or in the Sale Order, whether or not the Transactions are consummated, all costs and expenses incurred in connection with this Agreement and the Transactions shall be borne by the Party incurring such costs and expenses.

Section 7.5     Further Assurances.

(a)     Subject to the terms and conditions of this Agreement, at all times prior to the earlier of the Closing and the termination of this Agreement in accordance with its terms, each of the Parties shall use its commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things reasonably necessary, proper or advisable under applicable Laws to consummate and make effective the Transactions (including obtaining evidence of the

Selling Entities' authority to consummate the transactions contemplated by this Agreement, and authority of the person(s) executing the documents required to be executed by the Selling Entities); *provided*, that the foregoing shall not require any document, instrument, agreement or other item to be delivered or obtained, or any action to be completed, prior to the Closing (other than the Closing deliverables set forth in <u>Section 4.2</u> and <u>Section 4.3</u>) as a condition precedent to the consummation of the Closing, and any such failure to deliver or obtain, or complete such action, shall not (by itself) result in the failure of any condition to Closing set forth in <u>Article VIII</u>.

(b)     From time to time, on or after the Closing Date until the dissolution and liquidation of the Selling Entities, as and when requested by either Party and at such requesting Party's expense, the other Party will execute and deliver, or cause to be executed and delivered, all such further conveyances, notices, assumptions, assignments, documents and other instruments as such requesting Party may reasonably deem necessary or desirable to evidence and effectuate the Transactions (including for the avoidance of doubt, the transfer and conveyance of any Purchased Assets that may be in the possession of the Selling Entities or their Affiliates (other than any Excluded Parties) to the Buyer).

(c)     Except as set forth herein, nothing in this <u>Section 7.5</u> shall (i) require the Selling Entities or the Buyer to make any expenditure or incur any obligation on their own or on behalf of another Party or (ii) prohibit any Selling Entity from ceasing operations or winding up its affairs following the Closing.

(d)     From time to time prior to the Closing, each Party shall promptly notify the other in writing if such Party obtains knowledge that such Party's and, if applicable, MEC's or MBC's, representations, warranties, covenants or agreements in this Agreement or any disclosure schedules provided by the Seller to the Buyer are not true, correct and complete, to the extent such failure to be so true, correct and complete would cause any of the conditions to the Closing set forth in <u>Section 8.1</u> or <u>Section 8.3</u> to not be satisfied; *provided*, that such written notice provided pursuant to this <u>Section 7.5(d)</u> shall not amend, limit, modify or otherwise affect the rights or obligations of the Parties under this Agreement.

Section 7.6     <u>Public Statements</u>.  Unless (a) in the reasonable judgment of the disclosing Party after consultation with counsel, otherwise required by or necessary to comply with applicable Law or the rules or regulations of any applicable securities exchange, and (b) except for disclosure of matters that become a matter of public record as a result of the Bankruptcy Case or in connection with any litigation or other Proceeding, and any filings or notices related thereto, the Buyer, on the one hand, and the Selling Entities, on the other hand, shall consult with each other before issuing any press release or otherwise making any public statement with respect to this Agreement, the Transactions or the activities and operations of the other Parties and shall not issue any such release or make any such statement without the prior written consent of the Seller or the Buyer, respectively (such consent not to be unreasonably withheld, conditioned or delayed).

Section 7.7     <u>Governmental Authority Approvals and Cooperation</u>.

(a)     Each of the Buyer and the Selling Entities, having already submitted a notification and report form pursuant to the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended (the "<u>HSR Act</u>"), and the Buyer having withdrawn and refiled its notification

and report form pursuant to the HSR Act, shall, if required, assure that any additional notification and report forms and responses to supplemental requests for information to be made shall be made in substantial compliance with the requirements of the HSR Act. The Buyer shall bear and be responsible for all filing fees for any filings required to be made under any Regulatory Law (the "Filing Fees") by the Buyer and the Selling Entities. Each of the Buyer and the Selling Entities shall (and shall cause their respective Affiliates (other than any Excluded Parties) to) furnish to the other such necessary information and reasonable assistance as the other may reasonably request in connection with its preparation of any filing or submission which is necessary under the Regulatory Laws. The Selling Entities and the Buyer shall keep each other apprised of the status of any communications with, and any inquiries or requests for additional information received from, the United States Federal Trade Commission (the "FTC") and the United States Department of Justice (the "DOJ") relating to the transactions contemplated hereby. Each of the Buyer and the Selling Entities shall use its reasonable best efforts to obtain any clearance required under the Regulatory Laws for the consummation of the transactions contemplated hereby as promptly as reasonably practicable, including making a good faith effort to respond to reasonable requests in a so-called Voluntary Access Letter as promptly as practicable (with a goal of submitting responses within five (5) calendar days of receipt).

(b)     The Buyer and the Selling Entities shall each use reasonable best efforts to resolve such objections, if any, as may be asserted by any Governmental Authority with respect to the transactions contemplated by this Agreement under the HSR Act, the Sherman Act, as amended, the Clayton Act, as amended, the Federal Trade Commission Act, as amended, and any other applicable United States federal or state or foreign Laws that are designed to prohibit, restrict or regulate actions having the purpose or effect of monopolization or restraint of trade or lessening competition through merger or acquisition or any Laws with respect to foreign investment (collectively, the "Regulatory Laws"). The Buyer and the Selling Entities, including their Affiliates (in the case of the Selling Entities, other than any Excluded Parties), shall each use reasonable best efforts to take such action as may be reasonably required to cause the expiration of the notice periods under the HSR Act or other Regulatory Laws with respect to such transactions as promptly as possible after the execution of this Agreement. Notwithstanding anything to the contrary provided herein, the Buyer and the Selling Entities each agrees to use its reasonable best efforts, and to take any and all steps necessary, to eliminate each and every impediment under any Regulatory Law that is asserted by any Governmental Authority or any other Person so as to enable the Parties hereto to expeditiously close the transactions contemplated hereby, prior to the Outside Date, *provided*, *however*, the Buyer will have no obligation to (and the Selling Entities and their Affiliates (other than any Excluded Parties) will not, without the Buyer's consent) (i) propose, negotiate, commit to or effect, by hold separate orders, or otherwise, the sale, divesture or disposition of its assets, properties or businesses or any of the Purchased Assets, or enter into any consent decree or settlement agreement with any Governmental Authority, (ii) agree to limitations on the operation or conduct of the Buyer's or the Selling Entities' businesses or operations, including the Business, or (iii) waive any of the applicable conditions to this Agreement set forth in Article VIII. Without limiting the foregoing, the Buyer further agrees to use its reasonable best efforts to defend through litigation on the merits any claim asserted in court by any party in order to avoid entry of, or to have vacated or terminated, any decree, order or judgment (whether temporary, preliminary or permanent) that would prevent the Closing from occurring prior to the Outside Date.

(c)     Each Party (i) shall cooperate with each other Party in connection with the filings and Consents contemplated by this <u>Section 7.7</u>, (ii) shall promptly inform each other Party of any substantive communication received by such Party from any Governmental Authority (other than the Bankruptcy Court) concerning this Agreement, the Transactions and any filing, notification or request for Consent related thereto, and (iii) shall permit each other Party to review in advance any proposed written communication or information submitted to any such Governmental Authority (other than the Bankruptcy Court) in response thereto and in good faith consider the other Party's reasonable comments on drafts of any such communication or information.  In addition, none of the Selling Entities or the Buyer shall (and shall ensure that their respective Affiliates (in the case of the Selling Entities, other than any Excluded Parties) do not) agree to participate in any substantive meeting, discussion, telephone call or conference with any Governmental Authority (other than the Bankruptcy Court) in respect of any filings, investigation or other inquiry with respect to this Agreement, the Transactions or any such filing, notification or request for Consent related thereto unless it consults with the other Parties in advance and, to the extent permitted by any such Governmental Authority and applicable Law, gives the other Parties the opportunity to attend and participate thereat, in each case to the maximum extent practicable.  Notwithstanding anything in this Agreement to the contrary, the Buyer will, on behalf of the parties control and lead all communications and strategy related to any review of the Transactions by a Governmental Authority under the Regulatory Laws after considering in good faith any reasonable advice provided by the Seller in good faith.  The Selling Entities and the Buyer shall, and shall cause their respective Affiliates (in the case of the Selling Entities, other than any Excluded Parties) to, furnish the Buyer or the Selling Entities (and the Buyer's Representatives and the Seller's Representatives, as applicable), as the case may be, copies of all material correspondence, filings and communications between it and its Affiliates (in the case of the Selling Entities, other than any Excluded Parties) (and the Buyer's Representatives and the Seller's Representatives, as applicable) on the one hand, and the Governmental Authority (other than the Bankruptcy Court) or members of its staff on the other hand, with respect to this Agreement, the Transactions or any such filing, notification or request for Consent related thereto (in each case, excluding documents and communications which are subject to preexisting confidentiality agreements or to the attorney-client privilege or work product doctrine).  Each of the Selling Entities and the Buyer shall (and shall cause their respective Affiliates (in the case of the Selling Entities, other than any Excluded Parties) to) furnish each other Party with such necessary information and assistance as such other Party and its Affiliates (in the case of the Selling Entities, other than any Excluded Parties) may reasonably request in connection with its preparation of necessary filings, registrations or submissions of information to any Governmental Authority in connection with this Agreement, the Transactions and any such filing, notification or request for Consent related thereto.

(d)     The Parties shall not take any action, or refrain from taking any action, or permit any action to be taken or not taken, that would have the effect of preventing, materially delaying, making illegal or otherwise materially interfering with the ability of the Parties to consummate any of the Transactions.

Section 7.8     <u>Termination or Assumption of Certain Intellectual Property Licenses/Agreements</u>.

(a)     At or prior to the Closing, the Selling Entities shall terminate the Trademark License Agreement, dated September 29, 2021, by and between JHO Intellectual Property

Holdings, LLC and Vital Pharmaceuticals, Inc. d/b/a Bang Energy, including any amendments thereto, including Amendment No. 1 to Trademark License Agreement, dated June 2022, by and between JHO Intellectual Property Holdings, LLC and Vital Pharmaceuticals, Inc. d/b/a Bang Energy, and as further amended by the parties thereto on April 25, 2023.  For the avoidance of doubt, if this Agreement is terminated, the Selling Entities shall cease to have any obligations under this <u>Section 7.8(a)</u>.

(b)    Thereafter, but at or prior to the Closing, the Selling Entities shall use commercially reasonable efforts to deliver a notice of termination for each intellectual property license and/or agreement (whether oral or in writing) set forth in <u>Section 7.8(b)</u> of the Seller Disclosure Schedule.  For the avoidance of doubt, if this Agreement is terminated, the Selling Entities shall cease to have any obligations under this <u>Section 7.8(b)</u>.

(c)    Prior to the earlier of the Closing and the termination of this Agreement, with respect to the Agreements listed in <u>Section 7.8(c)</u> of the Seller Disclosure Schedule, the Buyer may elect at its sole discretion to assume and maintain those agreements, and where necessary, the Selling Entities shall use commercially reasonable efforts to communicate with the other parties to such agreements and request consent to assign such agreements under the existing terms to the Buyer.

(d)    From and after the Closing and prior to the dissolution and liquidation of the Selling Entities, to the extent that the Buyer becomes aware of any other intellectual property licenses and/or agreements (whether oral or in writing) involving a grant of rights or license or Encumbrance in or to the Seller IP, the Buyer shall have the option to request by written notice to the Selling Entities that the Selling Entities use commercially reasonable efforts (at the Buyer's expense) to deliver a notice of termination for such license and/or agreement and the Selling Entities shall promptly take such commercially reasonable steps (at the Buyer's expense) to deliver such notice.

Section 7.9    <u>Employee Matters</u>.

(a)    Prior to the Closing or thereafter, the Buyer may make an offer of employment, to commence as of or following the Closing, to any of the Employees, in the Buyer's sole discretion (each such Employee who receives an offer of employment, an "<u>Offered Employee</u>").  Each Offered Employee who accepts such an offer of employment with the Buyer is referred to herein as a "<u>Transferred Employee</u>."  Each Employee that is not an Offered Employee, and each Offered Employee that is not a Transferred Employee, shall be referred to herein as a "<u>Specified Employee</u>."  The Selling Entities may elect to continue the employment of any Specified Employee following the Closing (such an Employee, a "<u>Retained Employee</u>").  The Selling Entities shall terminate the employment of all Employees, except any Retained Employees, effective as of the Closing, regardless of whether the Employees are Offered Employees, Transferred Employees or Specified Employees.  Any Specified Employee who is terminated by the Selling Entities effective as of the Closing pursuant to this <u>Section 7.9(a)</u> is referred to herein as a "<u>Terminated Employee</u>."  Notwithstanding the foregoing, nothing herein will, after the Closing Date, impose on the Buyer any obligation to retain any Transferred Employee in its employment for any amount of time or on any terms and conditions of employment.

(b)     Prior to and including the Closing Date, with respect to each current and former employee of the Selling Entities, the Selling Entities shall assume, pay and discharge the Liabilities of the Selling Entities for (i) all deferred salary, wages, unused vacation, sick days, personal days or leave earned and/or accrued by such current or former employee prior to and through the Closing Date, and (ii) any severance obligations or Liabilities, including any obligations or Liabilities that arise under any Seller Compensation and Benefit Program, arising prior to and including the Closing Date.  The Buyer shall be solely responsible for any Liabilities under the WARN Act that arise out of the termination of any Employee who works at, or who reports to, receives assignments from, or is otherwise assigned to, the Selling Entities' employment site in Phoenix, Arizona, except any Retained Employee, at any time upon or following the Closing (the "Assumed WARN Act Liabilities"). The Selling Entities shall be solely responsible for any Liabilities under the WARN Act that arise out of the termination of (x) any Retained Employee at any time prior to, on or after the Closing, and (y) any Employee up to and including the Closing who works at, or who reports to, receives assignments from, or is otherwise assigned to, any of the Selling Entities' employment sites other than the Selling Entities' employment site in Phoenix, Arizona (the "Excluded WARN Act Liabilities").  To the extent required by applicable Law, the Buyer shall assume, pay and discharge the Liabilities of the Selling Entities under Section 4980B of the Code ("COBRA") (and any comparable state law) for all individuals who are "M&A qualified beneficiaries," as such term is defined in U.S. Treasury Regulation Section 54.4980B-9, from and after the Closing.

(c)     After the execution of this Agreement through the Closing or the earlier termination of this Agreement in accordance with its terms, the Selling Entities shall provide the Buyer and its Affiliates with reasonable access to the Employees and with non-privileged information, including Employee records and Seller Compensation and Benefit Program data, as reasonably requested by the Buyer and such Affiliates, except as may be prohibited by Law as reasonably determined by the Selling Entities, and the written employment policies of the Selling Entities or any Seller Compensation and Benefit Program, to evaluate Employees to whom the Buyer may make an offer of employment. Except as otherwise required by applicable Law, the Buyer shall not be obligated to provide any severance, separation pay, notice pay, or other payments or benefits, including any employee retention payments or employee incentive plan payments, to any Employee on account of any termination of such Employee's employment by the Selling Entities on or prior to Closing, and such benefits (if any) shall remain obligations of the Selling Entities, except as to the Assumed WARN Act Liabilities.

(d)     Following the Closing, the Selling Entities shall process the payroll for, and pay (or cause to be paid) within the time limits required by applicable Law, the base wages, base salary, bonuses, and ordinary course sales commissions accrued during the payroll period in which the Closing Date falls (the "Closing Payroll Period"), and accrued but unused paid time off that must be paid following termination of employment pursuant to applicable Law, with respect to each Employee employed at any time during the Closing Payroll Period.  The Closing Payroll Period shall extend from the final payroll date preceding the Closing through and including the Closing Date.

(e)     Nothing in this Agreement is intended to (i) be treated as an amendment to any particular Seller Compensation and Benefit Program, (ii) prevent the Buyer or its Affiliates from amending or terminating any of its benefit plans, in accordance their terms, (iii) prevent the

Buyer or its Affiliates, after the Closing, from terminating the employment of any Transferred Employee or other Service Provider, or (iv) create any third-party beneficiary rights in any Employee or Service Provider employee, or any beneficiary or dependent thereof, with respect to the compensation, terms and conditions of employment and/or benefits that may be provided to any Employee or Service Provider or under any Seller Compensation and Benefit Program or any other plan maintained by the Buyer or its Affiliates.

Section 7.10  Tax Matters.

(a)  Any sales, use, goods and services, harmonized sales, property transfer or gains, documentary, stamp, registration, recording, value added, or similar Tax payable in connection with the sale or transfer of the Purchased Assets and the assumption of the Assumed Liabilities ("Transfer Taxes") shall be borne by the Selling Entities as an Excluded Liability and paid by the Selling Entities when any such Transfer Taxes are required by applicable Law to be paid.  The Selling Entities and the Buyer shall (and shall cause their respective Affiliates (in the case of the Selling Entities, other than any Excluded Parties) to) cooperate in good faith to minimize the incidence of any Transfer Taxes.  The Selling Entities shall prepare and file all necessary Tax Returns or other documents with respect to all such Transfer Taxes and promptly provide to the Buyer as-filed copies of such Tax Returns and proof of payment of all such Transfer Taxes.

(b)  For purposes of this Agreement, all Taxes and Tax Liabilities with respect to the Business and the Purchased Assets that relate to the Straddle Period shall be apportioned between the Pre-Closing Tax Period and Post-Closing Tax Period as follows: (i) in the case of property and similar Taxes on a per-diem basis, and (ii) in the case of all other Taxes (other than Transfer Taxes), as though the taxable year terminated at the close of business on the Closing Date.

(c)  The Seller and the Buyer agree to furnish or cause to be furnished to each other, upon request, as promptly as practicable, such information and assistance as is reasonably necessary for the filing of Tax Returns, the making of any election relating to Taxes, the preparation for any audit or other proceeding by Governmental Authority and the prosecution or defense of any claim, suit or other proceeding relating to any Tax.  Such information and assistance shall include providing reasonable access to any of the books and records of the Selling Entities retained by the Selling Entities or delivered to the Buyer at Closing or provided pursuant to Section 7.3(b).  Access to books and records shall be afforded upon receipt of reasonable advance notice and during normal business hours.

(d)  The Parties agree to treat any payment made from one Party to another pursuant to this Agreement that is not reflected as part of the Purchase Price under this Agreement as an adjustment to the Purchase Price for all income Tax purposes, unless otherwise required by applicable Law.

(e)  All real property Taxes, personal property Taxes and similar *ad valorem* Taxes with respect to the Purchased Assets ("Property Taxes") with respect to a Straddle Period shall be apportioned between the Selling Entities, on the one hand, and the Buyer, on the other hand, in accordance with Section 7.10(b). The Selling Entities shall be liable for the proportionate amount of such Property Taxes that is attributable to the Pre-Closing Tax Period, and the Buyer

shall be liable for the proportionate amount of such Property Taxes that is attributable to the Post-Closing Tax Period. Upon receipt of any bill for such Property Taxes (or in the case of any prepaid Property Taxes attributable to Post-Closing Tax Periods (which shall be offset by any Property Taxes for Pre-Closing Tax Periods that are reasonably estimated to be due after the Closing Date), on the Closing Date, or as promptly as practicable following the Closing Date), the Buyer or the Selling Entities, as applicable, shall present a statement to the other setting forth the amount of reimbursement to which each is entitled under this Section 7.10(e) (taking into account the amounts of Property Taxes, if any, that the Buyer or the Selling Entities remitted to a Governmental Authority for any taxable period (or portion thereof) for which the other is responsible pursuant to this Section 7.10(e) and taking into account the estimated amount of any Property Taxes for Pre-Closing Tax Periods offset against prepaid Property Taxes at the Closing), together with such supporting evidence as is reasonably necessary to calculate the proration and reimbursement amount. The proration amount shall be paid by the party owing it to the other within ten (10) days after delivery of such statement, absent manifest error. The Buyer shall cause any Tax Returns for Property Taxes with respect to the Purchased Assets that are due after the Closing for any Straddle Period to be prepared in a manner consistent with past practice, to the extent consistent with applicable Law. The Buyer shall provide a draft of any such Tax Return to the Selling Entities at least ten (10) days prior to the due date thereof for the Selling Entities' review and shall consider in good faith any of the Selling Entities' comments thereto provided to Buyer within five (5) days of receipt of such Tax Return.

Section 7.11    Submission for Bankruptcy Court Approval.

(a)    The Buyer agrees that it will promptly take such actions as are reasonably requested by the Debtor Entities to assist in obtaining entry of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by the Buyer under this Agreement and any Assumed Agreements and demonstrating that the Buyer is a "good faith" purchaser under section 363(m) of the Bankruptcy Code. The Debtor Entities shall give notice under the Bankruptcy Code of the request for entry of the Sale Order to all Persons entitled to such notice, including all Persons that have asserted Encumbrances in the Purchased Assets and all non-debtor parties to the Assumed Agreements and the Assumed Real Property Leases, and other appropriate notice, including such additional notice as the Bankruptcy Court shall direct or as the Buyer may reasonably request, and provide appropriate opportunity for hearing, to all parties entitled thereto, of all motions, orders, hearings, or other Proceedings in the Bankruptcy Court relating to this Agreement or the Transactions.  The Debtor Entities shall be responsible for making all appropriate filings relating to this Agreement or the Transactions with the Bankruptcy Court, which filings shall be submitted, to the extent practicable, to the Buyer prior to their filing with the Bankruptcy Court for the Buyer's prior review.

(b)    An initial list of the agreements, contracts and other leases that may ultimately constitute the Assumed Agreements and the Assumed Real Property Leases (as amended, modified or supplemented from time to time, the "Cure Schedule") was filed prior to the date of execution of this Agreement, and an amended Cure Schedule was filed on June 13, 2023.  Upon revision of Section 2.1(d) or Section 2.1(e) of the Seller Disclosure Schedule in accordance with Section 2.5(b), the Seller shall add any Assumed Agreements or Assumed Real Property Leases, respectively, to the Cure Schedule or remove any Assumed Agreements or

Assumed Real Property Leases (other than Assumed Agreements and Assumed Real Property Leases irrevocably designated for assumption pursuant to <u>Section 2.5(d)</u>) from such exhibit, as applicable. The Cure Schedule shall set forth the amounts necessary to cure defaults under each Assumed Agreement and Assumed Real Property Lease shown thereon, as reasonably determined in good faith by the Seller. In cases in which the Seller is unable to establish that a default exists, the relevant cure amount shall be set at $0.00.

(c)     From the date of this Agreement, each Debtor Entity and the Buyer shall consult with one another regarding pleadings which any of them intends to file with the Bankruptcy Court in connection with, or which might reasonably affect, the Bankruptcy Court's entry of the Sale Order.

(d)     If the Sale Order or any other orders of the Bankruptcy Court relating to this Agreement or the Transactions shall be appealed by any Person (or if any petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument shall be filed with respect to the Sale Order or other such order), subject to rights otherwise arising from this Agreement, the Buyer and the Selling Entities shall use their reasonable best efforts to obtain an expedited resolution of any such appeal, petition or motion, in each case, that will facilitate consummation of the Transactions.

Section 7.12     <u>Adequate Assurance</u>.  The Buyer shall provide adequate assurance as required under the Bankruptcy Code of the future performance by the Buyer of each Assumed Agreement and each Assumed Real Property Lease. The Buyer agrees that it will, and will cause its Affiliates to, promptly take all actions reasonably required to assist in obtaining a Bankruptcy Court finding that there has been an adequate demonstration of adequate assurance of future performance under the Assumed Agreements and Assumed Real Property Lease, including furnishing affidavits, non-confidential financial information and other documents or information for filing with the Bankruptcy Court and making the Buyer's Representatives available to testify before the Bankruptcy Court.

Section 7.13     <u>Transfer of Purchased Assets; Wind-Down of Subsidiaries; Payments Received</u>.

(a)     From and after the date hereof until the earlier of the termination of this Agreement and the Closing, the Parties will use commercially reasonable efforts to make all necessary arrangements for the Buyer to have access to, and take possession of, the Purchased Assets and, at the Buyer's expense, to transfer the same to a location owned or operated by the Buyer, to the extent necessary, in each case as promptly as practicable following the Closing. The foregoing includes, but is not limited to, using commercially reasonable efforts to transfer physical possession of all Seller IP, including formulas, recipes, ingredients and supplier lists, other trade secrets, graphics, can art, packaging art, and log in information for accessing the websites, domain names, and social media pages, in each case constituting Seller IP, in, as applicable, an electronic or digital format as used by the Selling Entities in the Ordinary Course of Business (such as working files (e.g. .ai files) for labels and artwork) or physical delivery of physical assets (e.g. printing plates, keys to access trade secrets) and documents to the Buyer as promptly as practicable following the Closing. From and after the date hereof until the earlier of the termination of this Agreement and the Closing, the Parties shall use commercially reasonable efforts to work together

in good faith to ensure that such delivery (whether physical, electronic, digital, or otherwise) contemplated by the preceding provisions of this <u>Section 7.13(a)</u> is in a format reasonably accessible and acceptable to Buyer.

(b)     The method for transferring any trade secrets constituting Seller IP to the Buyer following the Closing in accordance with the provisions hereof will be an industry standard method that is designed to be secure and subject to Buyer's approval, which approval will not be unreasonably withheld, conditioned or delayed.

(c)     Except as needed to fulfill any Selling Entity's obligations under this Agreement or with the Buyer's separate express written approval (such approval not to be unreasonably withheld, conditioned or delayed), and except as permitted pursuant to the proviso in <u>Section 7.14</u>, immediately following the Closing, the Selling Entities shall at their sole cost and expense cease all design, development, manufacture, use, sale, offering for sale, importation, exportation, and distribution of any products bearing or using any of the Seller IP.

(d)     Except as needed to fulfill any Selling Entity's obligations under this Agreement or with the Buyer's separate express written approval (such approval not to be unreasonably withheld, conditioned or delayed), and except as permitted pursuant to the proviso in <u>Section 7.14</u>, immediately following the Closing, the Selling Entities (i) shall hold in confidence (for non-public Seller IP) and not use commercially for their own benefit or for the benefit of anyone else, any Seller IP, (ii) shall limit dissemination of and access to the Seller IP only to Persons specified by Buyer and shall terminate access to the Seller IP from any other Persons, (iii) shall not provide to anyone else other than Persons specified by Buyer (in any form or format whatsoever) access to or copies of any of the Seller IP, and (iv) shall not misappropriate any of the Seller IP.

(e)     Except as needed to fulfill any Selling Entity's obligations under this Agreement or with the Buyer's separate express written approval, except as permitted pursuant to the proviso in <u>Section 7.14</u>, and except for any Excluded Assets, following the Closing, promptly after the Selling Entities transfer all of the Seller IP to Buyer pursuant to <u>Section 7.13(a)</u>, and in a format deemed reasonably acceptable to Buyer in writing, the Selling Entities shall at their sole cost and expense, (i) destroy all remaining tangible and intangible information, documents, and materials (in whatever form or format) in Selling Entities' possession or control which evidence, include or contain to any extent all or any portion of the Seller IP through a third party service (other than the Seller's third party advisors (including legal and financial advisors)), and (ii) confirm to Buyer in writing by way of certificate of destruction that such destruction has been completed. Notwithstanding the foregoing, the Selling Entities shall not be required to destroy data from disaster recovery systems, archival backups or e-mail; *provided* that, the Selling Entities shall maintain the confidentiality of all non-public Seller IP included in such data, and all such data is destroyed in due course in line with the Selling Entities' standard retention and disposition procedures.

(f)     The Selling Entities shall use commercially reasonable efforts to wind-down and dissolve their respective Subsidiaries, as promptly as reasonably possible following the Closing; *provided* that, the foregoing shall not amend or modify the 90-day period set forth in <u>Section 7.14</u> or limit or restrict any of the rights of the Selling Entities under <u>Section 7.14</u>.

Notwithstanding anything to the contrary in this Agreement, following the Closing, the Selling Entities shall be permitted to sell or destroy any Excluded Assets in connection with winding down, liquidation or dissolution of the Selling Entities or any of their Affiliates.

Section 7.14    Name Changes.  The Selling Entities shall, and shall cause their respective Affiliates (other than any Excluded Parties) to, use commercially reasonable efforts, at the Seller's sole cost and expense, to obliterate, mask or remove all Business Names from all public facing Excluded Assets that are owned by (or in the custody or control of) the Selling Entities, within ninety (90) days following the Closing Date (or such reasonable longer period as necessary to effectuate any wind down or dissolution of such entity); *provided* that, the Selling Entities and their respective Affiliates shall be permitted to (a) use the Business Names as former names for legal and notice purposes in connection with the Bankruptcy Case, in connection with the filing of Tax Returns and for the wind down process for the Selling Entities or their Affiliates or in other legal documents related to the foregoing, and (b) solely to the extent necessary to effectuate the foregoing reference the historic relationship between the Seller, the Selling Entities or their respective Affiliates and the Business.

Section 7.15    Purchased Assets "AS IS;" Certain Acknowledgements.

(a)    The Buyer agrees, warrants and represents that (i) the Buyer is purchasing the Purchased Assets on an "AS IS" and "WITH ALL FAULTS" basis based solely on the Buyer's own investigation of the Selling Entities, the Purchased Assets, the Assumed Liabilities, the Excluded Assets, the Excluded Liabilities and the Business, and (ii) neither the Selling Entities nor any of the Seller's Representatives has made any warranties, representations or guarantees, express, implied or statutory, written or oral, respecting the Selling Entities, the Purchased Assets, the Assumed Liabilities, the Excluded Assets, the Excluded Liabilities or the Business, the financial performance of the Selling Entities, the Purchased Assets, the Assumed Liabilities, the Excluded Assets, the Excluded Liabilities or the Business, or the physical condition of the Purchased Assets, except as expressly set forth in Article V (as modified by the Seller Disclosure Schedule) or in the other Transaction Documents.  The Buyer further acknowledges that the consideration for the Purchased Assets specified in this Agreement has been agreed upon by the Selling Entities and the Buyer after good-faith arms-length negotiation in light of the Buyer's agreement to purchase the Purchased Assets "AS IS" and "WITH ALL FAULTS."  The Buyer agrees, warrants and represents that, except for the express representations and warranties of the Selling Entities set forth in Article V of this Agreement (as modified by the Seller Disclosure Schedule) or in the other Transaction Documents, the Buyer has relied, and shall rely, solely upon its own investigation of all such matters, and that the Buyer assumes all risks with respect thereto. EXCEPT AS SET FORTH IN ARTICLE V OF THIS AGREEMENT (AS MODIFIED BY THE SELLER DISCLOSURE SCHEDULE) OR IN THE OTHER TRANSACTION DOCUMENTS, THE SELLING ENTITIES MAKE NO EXPRESS WARRANTY, NO WARRANTY OF MERCHANTABILITY, NO WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, AND NO IMPLIED OR STATUTORY WARRANTY WHATSOEVER WITH RESPECT TO ANY REAL OR PERSONAL PROPERTY OR ANY FIXTURES OR THE BUSINESS OR THE SELLING ENTITIES, THE PURCHASED ASSETS, THE ASSUMED LIABILITIES, THE EXCLUDED ASSETS, THE EXCLUDED LIABILITIES OR THE BUSINESS.

(b)    The Selling Entities agree that neither the Buyer nor any of its Representatives has made any warranties, representations or guarantees, express, implied or statutory, written or oral, except as expressly set forth in Article VI.

Section 7.16    Mutual Release.

(a)    Effective as of the Closing, the Buyer, MEC and MBC, on behalf of themselves and each Buyer Related Party (each, a "Buyer Releasing Party") hereby unconditionally and irrevocably and forever releases and discharges the Seller Related Parties, of and from, and hereby unconditionally and irrevocably waives, and dismisses with prejudice, any and all claims, debts, losses, expenses, proceedings, covenants, liabilities, suits, judgments, damages, actions and causes of action, obligations, accounts, and liabilities of any kind or character whatsoever (collectively, regardless of who owns or holds them, the foregoing items are referred to as "Claims"), known or unknown, suspected or unsuspected, in contract, direct or indirect, at law or in equity, relating to the Bankruptcy Case, the Purchased Assets, the Assumed Liabilities, the VPX Florida Matters, and the Orange Bang Trademark License Action that such Buyer Releasing Party ever had, now has or ever may have or claim to have against any Seller Related Party, for or by reason of any matter, circumstance, event, action, inaction, omission, cause or thing whatsoever arising prior to the Closing (including in respect of the management or operation of the Business or the Bankruptcy Case), including, for the avoidance of doubt, any Claims that are Purchased Assets; *provided, however*, that (i) the release contained in this Section 7.16(a) does not in any way apply to, affect, limit, waive, compromise, release, discharge or otherwise alter or impair any of the past, present or future rights, claims, causes of action, damages, remedies, defenses, or rights of any kind or nature whatsoever that the Buyer or any Buyer Related Party (including MEC and MBC) may have against John H. "Jack" Owoc or any Excluded Parties; (ii) subject to entry of the 9019 Order, MEC or the Buyer (or its designee) shall be deemed to have, for all purposes and with the unconditional and irrevocable agreement of the Selling Entities and any Seller Related Party, which is hereby granted, the California District Court Action Allowed Unsecured Claim, the Trade Dress Action Allowed Unsecured Claim, and the OBI/Monster Matter Allowed Unsecured Claim, in full satisfaction of any liabilities or other obligations the Selling Entities and any Seller Related Parties may have on account of the California District Court Action, the Trade Dress Action, and OBI/Monster Matter and the facts and circumstances at issue in such matters; (iii) the release contained in this Section 7.16(a) does not apply to, affect, limit, waive, compromise, release, discharge or otherwise alter any claims, causes of action, defenses, or rights of any kind or nature whatsoever of the Buyer or any Buyer Related Party (including MEC and MBC) asserted in, arising out of, or relating to the California District Court Action, the OBI/Monster Matter, and the TTAB Matter; *provided*, that subject to and upon allowance of the claims set forth in clause (ii) above, neither the Buyer nor any Buyer Related Party shall seek to recover any fees, costs or other monetary relief against the Selling Entities or any Seller Related Parties except amounts awarded by the jury's verdict or already raised in the MEC Post-Verdict Motions, without duplication of the California District Court Action Allowed Unsecured Claim, and such matters shall proceed as to the Seller for the sole purpose of liquidating the California District Court Action Allowed Unsecured Claim; and (iv) the release contained in this Section 7.16(a) shall not apply to or otherwise affect (A) the Buyer's, MEC's or MBC's rights, or any Selling Entity's obligations, under this Agreement or any other Transaction Document, or (B) any claim of any Buyer Related Party that is based upon Fraud.  Except for the matters described in clauses (i), (ii), (iii) and (iv) in the immediately preceding sentence (subject to the limitations set

forth therein, as applicable) and Section 7.16(e), Section 7.16(f) and Section 7.16(g) below, the Buyer, MEC and MBC hereby covenant not to sue, and to cause each other Buyer Releasing Party not to sue, any Seller Related Party in any Proceeding for any of the Claims expressly released pursuant to the preceding sentence, and each of the Buyer Releasing Parties agrees that in the event that any such Proceeding shall be commenced, the covenant not to sue contained in this Section 7.16(a) shall constitute a complete defense to any such Proceeding so instituted.  For the avoidance of doubt, the Buyer and each Buyer Related Party (or its designee) may (in its sole discretion) litigate and pursue with the unconditional and irrevocable agreement of the Selling Entities (which is hereby granted) and enforce the judgments or other results and determinations of the California District Court Action, the OBI/Monster Matter, and the TTAB Matter; *provided* that the Buyer, MEC and MBC hereby covenant not to, and to cause each other Buyer Releasing Party to agree not to, (A) appeal any judgment entered in the California District Court Action; (B) appeal the judgment entered in the OBI/Monster Matter; and (C) seek recovery of monetary damages, fees, costs, or other monetary relief from any Selling Entity or Seller Related Party in the TTAB Matter or, subject to allowance of the California District Court Action Allowed Unsecured Claim and the OBI/Monster Matter Allowed Unsecured Claim as set forth above, the California District Court Action or OBI/Monster Matter.  Notwithstanding the foregoing or anything to the contrary herein or otherwise, in the event that any appeal is taken in any Proceeding, including the matters described in clauses (A), (B) and (C) in the immediately preceding sentence, by John H. "Jack" Owoc, any Excluded Parties, or any Persons acting in concert with, participation with, or at the direction of John H. "Jack" Owoc or any Excluded Parties, the Buyer, MEC, MBC, and each Buyer Related Party (or its designee) may (in its sole discretion) file an appeal in such Proceeding solely with respect to such party or parties (or any other party except the Selling Entities or any Seller Related Parties).

(b)      Effective as of the Closing, each of the Selling Entities, on behalf of itself and each Seller Related Party (each, a "Seller Releasing Party") hereby unconditionally and irrevocably and forever releases and discharges the Buyer Related Parties, of and from, and hereby unconditionally and irrevocably waives, and dismisses with prejudice, any and all Claims, known or unknown, suspected or unsuspected, in contract, direct or indirect, at law or in equity, relating to the Bankruptcy Case, the OBI/Monster Matter, the California District Court Action (other than those matters expressly preserved in this Section 7.16(b)), the VPX Florida Matters, the Orange Bang Trademark License Action, the TTAB Matter, the Purchased Assets, or the Assumed Liabilities that such Seller Releasing Party ever had, now has or ever may have or claim to have against any Buyer Related Party, for or by reason of any matter, circumstance, event, action, inaction, omission, cause or thing whatsoever arising prior to the Closing, *provided, however*, that the Seller may (in its sole discretion) continue to litigate and pursue the specific matters it raised in its already-filed Post-Verdict Motions in the California District Court Action (for the avoidance of doubt, the Seller cannot seek to recover any fees, costs, or other relief it has not already raised in the Post-Verdict Motions), and such matters shall proceed as to the Seller for the sole purpose of liquidating the California District Court Action Allowed Unsecured Claim; *provided further that* this release (i) shall not apply to or otherwise affect any Selling Entity's rights, or the Buyer's, MEC's or MBC's obligations, under this Agreement or any other Transaction Document and (ii) shall not apply to any claim of any Seller Related Party that is based upon Fraud by any Buyer Related Party.  Each of the Selling Entities hereby covenants to, and to cause each other Seller Releasing Party to (A) stipulate to and agree not to appeal or otherwise challenge any judgment entered in the California District Court Action, (B) dismiss with prejudice any appeals of the

California District Court Action, (C) stipulate to and agree not to appeal or otherwise challenge the judgment entered in the OBI/Monster Matter, (D) dismiss with prejudice any appeals of the OBI/Monster Matter, and (E) dismiss with prejudice the VPX Florida Matters and the Orange Bang Trademark License Action against all known and unknown persons, entities, and parties. Each of the Selling Entities hereby covenants not to sue, and to cause each other Seller Releasing Party not to sue, any Buyer Related Party in any Proceeding for any of the Claims expressly released pursuant to this Section 7.16(b), and each of the Seller Releasing Parties agrees that in the event that any such Proceeding shall be commenced, the covenant not to sue contained in this Section 7.16(b) shall constitute a complete defense to any such Proceeding so instituted.  Each of the Selling Entities hereby expressly agrees to, and acknowledges, the California District Court Action Allowed Unsecured Claim, the Trade Dress Action Allowed Unsecured Claim, and the OBI/Monster Matter Allowed Unsecured Claim, and agrees not to assert any objection thereto at any time.

(c)      Without limiting the foregoing, each of the Parties, on behalf of itself and the other Buyer Releasing Parties and Seller Releasing Parties, respectively, with respect to the Claims expressly released in Section 7.16(a) and Section 7.16(b) above only, expressly waives and releases any and all rights and benefits under Section 1542 of the California Civil Code (or any analogous law of any other state), which reads as follows: "A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."  As to the Claims expressly released in Section 7.16(a) and Section 7.16(b) above only, each of the Parties, on behalf of itself and the other Buyer Releasing Parties and Seller Releasing Parties, respectively, expressly waives all rights afforded by any statute which limits the effect of a release with respect to unknown claims.  Each of the Parties, on behalf of itself and the other Buyer Releasing Parties and Seller Releasing Parties, respectively, understands the significance of this release of unknown claims as to the Claims expressly released in Section 7.16(a) and Section 7.16(b) above only and the waiver of statutory protection against a release of unknown claims as to the Claims expressly released in Section 7.16(a) and Section 7.16(b) above only, and acknowledges and agrees that this waiver is an essential and material term of this Agreement.  As to the Claims expressly released in Section 7.16(a) and Section 7.16(b) above only, each of the Parties, on behalf of itself and the other Buyer Releasing Parties and Seller Releasing Parties, respectively acknowledges that each Party will be relying on the waivers and releases provided in this Section 7.16 in connection with entering into this Agreement and that this Section 7.16 is intended for the benefit of, and will grant express third party beneficiary rights to, each Seller Related Party and Buyer Related Party, respectively, to enforce this Section 7.16.

(d)      Notwithstanding anything to the contrary herein or otherwise, each beneficiary of a release under this Section 7.16 shall be an express third party beneficiary of this Section 7.16 with the full power to enforce the terms of this Section 7.16 as if it were a party to this Agreement for such purpose.

(e)      Notwithstanding anything to the contrary herein or otherwise, and for the avoidance of doubt, nothing in this Section 7.16 or any other provision of this Agreement (or as part of any other agreement or as a condition to acquiring any of the Purchased Assets) shall in any way apply to, affect, limit, waive, compromise, release, discharge or otherwise alter or impair

72

any of the past, present or future rights, claims, causes of action, damages, remedies, defenses, or rights of any kind or nature whatsoever that the Buyer or any Buyer Related Party (including MEC and MBC) may have against the Excluded Parties, including rights, claims, causes of action, damages, remedies, defenses, and rights of any kind or nature whatsoever asserted in, arising out of, or relating to the California District Court Action, that certain jury verdict and award in an amount not less than $271,924,174 that was entered on September 29, 2022 in the California District Court Action, and any rights, claims, causes of actions, damages, remedies, defenses, and rights of any kind or nature whatsoever as they relate to the Seller IP, all of which rights, claims, causes of actions, damages, remedies, defenses, and rights of any kind or nature whatsoever the Buyer and each Buyer Related Party hereby expressly preserves.

(f)     Notwithstanding anything to the contrary herein or otherwise, and for the avoidance of doubt, nothing in this Section 7.16 or any other provision of this Agreement (or as part of any other agreement or as a condition to acquiring any of the Purchased Assets) shall in any way apply to, affect, limit, waive, compromise, release, discharge or otherwise alter or impair any of the past, present or future rights, claims, causes of action, damages, remedies, defenses, or rights of any kind or nature whatsoever that the Buyer or any Buyer Related Party (including MEC and MBC) may have against the Excluded Parties, all of which rights, claims, causes of action, damages, remedies, defenses, and rights of any kind or nature whatsoever the Buyer and each Buyer Related Party hereby expressly preserves.

(g)     Notwithstanding anything to the contrary herein or otherwise, and for the avoidance of doubt, nothing in this Section 7.16 or any other provision of this Agreement (or as part of any other agreement or as a condition to acquiring any of the Purchased Assets) shall in any way apply to, affect, limit, waive, compromise, release, discharge or otherwise alter or impair any of the past, present or future rights, claims, causes of action, damages, remedies, defenses, or rights of any kind or nature whatsoever asserted in, arising out of, or relating to the Trade Secret Matters or that the Buyer or any Buyer Related Party (including MEC and MBC) may have against Stephen Cohen, Bryan Shane Dees, Joao Paulo "JP" Leopardo, Quang Nguyen, and/or Shannon Troglia, all of which rights, claims, causes of action, damages, remedies, defenses, and rights of any kind or nature whatsoever the Buyer and each Buyer Related Party hereby expressly preserves, *provided, however*, that MEC will dismiss with prejudice the Trade Secret Matters as to those, if any, of Stephen Cohen, Bryan Shane Dees, Joao Paulo "JP" Leopardo, Quang Nguyen, and Shannon Troglia who execute and deliver to MEC a mutual release of liability substantially in the form of Exhibit F within seven (7) Business Days after the Closing Date.

Section 7.17    Withholding.  Notwithstanding anything herein to the contrary, any Selling Entity, the Buyer or any of their respective Affiliates (in the case of the Selling Entities, other than any Excluded Parties) shall be entitled to deduct and withhold from any amounts payable by them pursuant to this Agreement such amounts (and only such amounts) as it is required to deduct and withhold with respect to such payment under any provision of U.S. federal, state, local or non-U.S. Tax Law.  Except in the case of compensatory payments or failure to deliver a duly completed IRS Form W-9 to the extent required by Section 4.2(h), the Buyer shall notify the Seller of its intention to deduct or withhold no later than five (5) Business Days prior to any such deduction or withholding, and shall cooperate in good faith with the Seller and its Affiliates (other than any Excluded Parties) to minimize any such deduction and withholding.  Any amounts so deducted and withheld in accordance with this Section 7.17 and timely paid over to the appropriate

Governmental Authority shall be treated for all purposes of this Agreement as having been paid to the Party that would otherwise have received such amount but for the required deduction or withholding.

Section 7.18    Title Matters.

(a)    Prior to the earlier of the Closing and the valid termination of this Agreement pursuant to Article IX, the applicable Selling Entity shall (i) execute and provide an owner's title affidavit in the form and content attached as Exhibit G hereto, and (ii) without limiting the obligations of the applicable Selling Entity set forth in Section 2.1 and/or Section 7.5 of this Agreement, use commercially reasonable efforts to satisfy any other reasonable requests of the Title Company for information or documentation from the applicable Selling Entity in connection with the issuance to Buyer of Title Company's owner's policy of title insurance with respect to the Owned Real Property.  For the avoidance of all doubt, the Parties' respective rights and obligations under this Section 7.18 are cumulative with (and do not limit in any respect) their respective rights and obligations under Section 7.5 hereof.

(b)    If, prior to the earlier of the Closing and the valid termination of this Agreement pursuant to Article IX, the Buyer provides written notice to the Seller that (i) the Title Company has refused to issue an owner's policy of title insurance with respect to the Owned Real Property substantially in the form agreed to between the Buyer and the Title Company as of the date hereof, and (ii) the Buyer desires that the Seller use commercially reasonable efforts to assist the Buyer in obtaining an owner's policy of title insurance with respect to the Owned Real Property, then the Seller shall use commercially reasonable efforts, at the Buyer's sole cost and expense, to contact and coordinate with nationally recognized title insurance companies approved by the Buyer in writing (such approval not to be unreasonably withheld, conditioned or delayed) in furtherance of assisting the Buyer in obtaining an owner's policy of title insurance with respect to the Owned Real Property; *provided*, that the foregoing shall not require any owner's policy of title insurance, document, instrument, agreement or other item to be delivered or obtained, or any action to be completed, or any liability, indemnity or other obligation not expressly set forth herein to be undertaken, at or prior to the Closing as a condition precedent to the consummation of the Closing, and any failure to deliver or obtain any of the foregoing or complete or undertake any of the foregoing shall not (by itself) result in the breach or failure of any obligation of the Seller or the Selling Entities or of any condition to Closing set forth in Article VIII.

Section 7.19    OBI/Monster Escrow.  Promptly following the Closing (and no later than five (5) Business Days after the Closing), the Seller shall notify the Buyer of the Seller's calculation of the OBI/Monster Escrow Amount.  The Buyer shall provide the Seller and its Representatives with post-Closing access to and copies of such books, records and other information constituting Purchased Assets as may be reasonably necessary for the Seller to provide such calculation.  The Buyer shall have three (3) Business Days to object in writing to the Seller's calculation.  Absent such objection, the Seller shall cause the OBI/Monster Escrow Amount to be distributed to a designated trust account of intellectual property counsel for MEC and Orange Bang Inc. in final settlement and full satisfaction of any post-petition amounts payable to MEC or Orange Bang Inc. in connection with the OBI/Monster Matter and neither MEC nor Orange Bang Inc. shall have any Claim against the Selling Entities or their estates with respect to such amounts. For the avoidance of doubt, the Selling Entities shall (i) use commercially reasonable efforts to make the

first July 2023 payment due and payable to the OBI/Monster Escrow Account in accordance with the OBI/Monster Escrow Order, and (ii) be entitled to keep the OBI/Monster Escrow Excess and, in the event of an OBI/Monster Escrow Shortfall, the Buyer shall be paid such amount from reserves from the sale proceeds established by the Seller in accordance with the Sale Order and coordinate with Orange Bang Inc. as to its share of any such OBI/Monster Escrow Shortfall.

Section 7.20    Contributions.    Between the date hereof and the earlier of the termination of this Agreement in accordance with its terms and the Closing Date, each of the following Selling Entities, (a) JHO Intellectual Property Holdings, LLC, (b) JHO Real Estate Investment, LLC, (c) Quash Seltzer, LLC and (d) Rainbow Unicorn Bev, LLC may, at such Selling Entity's sole discretion, (i) contribute and transfer all of its respective right, title and interest (free and clear of all Liabilities and Encumbrances other than the Assumed Liabilities and Permitted Encumbrances or as set forth on Section 2.1 of the Seller Disclosure Schedule) in and to all of the assets (including any Purchased Assets) of or held by such Selling Entity to the Seller via a contribution of such assets to the Seller and such contribution and transfer shall be deemed to have occurred prior to the Closing and/or (ii) assign and transfer all of the Liabilities of such Selling Entity (including any Assumed Liabilities) to the Seller via an assignment and assumption of such Liabilities by the Seller; *provided* that the documents evidencing any contribution and transfer of any Seller IP pursuant to the foregoing provisions of this Section 7.20 shall be in forms similar to those set forth in Exhibit D hereto.  The Seller shall provide the Buyer with drafts of documents evidencing any contribution and transfer to the Seller pursuant to this Section 7.20 at least two (2) Business Days prior to the execution thereof and shall consider any reasonable comments thereto proposed by the Buyer in good faith.  For the avoidance of doubt, this Section 7.20 is not intended to, and shall not (i) modify the scope of the Purchased Assets, the Assumed Liabilities, the Excluded Assets and/or the Excluded Liabilities under this Agreement or (ii) adversely affect, in any material respect, the Buyer's rights under this Agreement.

Section 7.21    Reservation of Rights.    Notwithstanding anything to the contrary in this Agreement, but subject to the other provisions of this Section 7.21, each of the Selling Entities, the Buyer and their respective Affiliates reserves the right to take the position against the Excluded Parties or other unaffiliated third parties that the Excluded Assets (including Intellectual Property) of the Excluded Parties are owned by Persons other than the Excluded Parties.  Nothing in this Agreement shall, vis-à-vis the Excluded Parties or other unaffiliated third parties, (a) limit the ability of any of the Selling Entities, the Buyer or their respective Affiliates to take the position that the Excluded Parties do not own the Excluded Assets or (b) be interpreted as an admission or acknowledgement that the Excluded Parties do own any Excluded Assets.  Notwithstanding anything to the contrary herein, the Parties acknowledge and agree that Seller IP shall not be deemed to include any Intellectual Property held in the name of, or purported to be owned by, any of the Excluded Parties; *provided* that, to the extent that any Person is successful in enforcing against the Excluded Parties the position that the Excluded Parties do not own certain Intellectual Property treated as Excluded Assets hereunder and such items of Intellectual Property would have been Seller IP if such determination was in effect prior to the Closing, then, and only then, any such Intellectual Property shall be deemed to be Purchased Assets hereunder.  For purposes of this Section 7.21, "unaffiliated third parties" shall mean Persons who are not parties to this Agreement and who are not Affiliates (other than the Excluded Parties) of any Party; *provided*, in no event shall any Excluded Party be deemed an "unaffiliated third party" for purposes of this Section 7.21.

Section 7.22   <u>Vehicle Loans</u>.   At or reasonably promptly following the Closing, the applicable Selling Entities shall, using a portion of the Cash Purchase Price paid by the Buyer to the Seller hereunder, make payments to pay in full all principal and interest under the loan agreements, financing agreements or lease agreements with respect to the vehicles that constitute the Purchased Assets to the extent outstanding as of the Closing and, upon receipt of the title certificates to such vehicles from the applicable lienholder or lessor, as applicable, to deliver such title certificates to the Buyer.

Section 7.23   <u>Ratification</u>.   In the event that the Buyer submits a request in writing to the applicable Selling Entity, in each case, by no later than 5:00 p.m., Eastern Time on Thursday, July 6, 2023, then, such Selling Entity shall deliver to the Buyer prior to or at the Closing, an unanimous written consent of the board of directors or board of managers, as applicable, of such Selling Entity pursuant to which such board of directors or board of managers, as applicable, ratifies the chapter 11 filing by such Selling Entity in connection with the Bankruptcy Case and such Selling Entity's consummation of the Transactions.

# ARTICLE VIII
# CONDITIONS TO CLOSING

Section 8.1   <u>Conditions to Each Party's Obligations to Effect the Closing</u>.   The respective obligations of each Party to consummate the Closing shall be subject to the satisfaction or, to the extent permitted by applicable Law, waiver in a joint writing by the Buyer and the Seller, at or prior to the Closing, of the following conditions:

(a)   (i) no Law or Order shall have been enacted, entered, promulgated, adopted, issued or enforced by the Bankruptcy Court or any other Governmental Authority having competent jurisdiction that is then in effect and has the effect of making the transactions contemplated by this Agreement illegal or otherwise prohibiting, restraining or enjoining the consummation of the transactions contemplated hereby, (ii) no temporary restraining order, preliminary or permanent injunction or other Order issued by any court of competent jurisdiction or other similar legal restraint shall be in effect that has the effect of prohibiting, restraining, enjoining or otherwise making illegal the consummation of any of the transactions contemplated by this Agreement and (iii) there shall be no pending or threatened Governmental Authority investigation under the Regulatory Laws of any of the transactions contemplated by this Agreement;

(b)   the HSR Act waiting period (including any extensions thereof) shall have expired or been terminated and no temporary restraining Order, preliminary or permanent injunction or other Order issued by any court of competent jurisdiction at the request of the FTC or the DOJ shall be in effect that has the effect of enjoining, prohibiting, restraining, or otherwise making illegal the consummation of any of the Transactions (together, the "<u>Regulatory Clearance</u>");

(c)   the Bankruptcy Court shall have entered a Sale Order and such Sale Order shall be a Final Order; and

(d)   the Bankruptcy Court shall have entered the 9019 Order.

Section 8.2    Conditions to Obligations of the Buyer.  The obligation of the Buyer to consummate the Closing shall be subject to the satisfaction or, to the extent permitted by applicable Law, waiver at or prior to the Closing of the following additional conditions:

(a)    the Selling Entities shall have performed and complied in all material respects with the covenants contained in this Agreement which are required to be performed and complied with by the Selling Entities on or prior to the Closing Date;

(b)    (i) the representations and warranties of the Selling Entities set forth in Article V (other than the Seller Fundamental Representations and Section 5.7(a) (*Absence of Certain Developments*)), disregarding for these purposes any exception in such representations and warranties relating to materiality or a Material Adverse Effect, shall be true and correct as of the date of this Agreement and as of the Closing Date as though made at and as of the Closing Date (except for those representations and warranties which address matters only as of an earlier date in which case such representation or warranty shall have been true and correct as of such earlier date), except for such failures to be true and correct as would not have a Material Adverse Effect, (ii) the representations and warranties set forth in Section 5.1 (*Organization, Standing and Corporate Power*), Section 5.2 (*Authority; Execution and Delivery; Enforceability*), Section 5.3(a)(i) (*No Conflicts*) and Section 5.17 (*Brokers*) (collectively, the "Seller Fundamental Representations"), disregarding for these purposes any exception in such representations and warranties relating to materiality or a Material Adverse Effect, shall be true and correct in all respects, except for any de minimis breaches or inaccuracies, as of the date of this Agreement and as of the Closing Date as though made at and as of the Closing Date (except for those representations and warranties which address matters only as of an earlier date in which case such representation or warranty shall have been true and correct as of such earlier date), and (iii) the representations and warranties set forth in Section 5.7(a) (*Absence of Certain Developments*) shall be true and correct in all respects as of the date of this Agreement and as of the Closing Date as though made at and as of the Closing Date;

(c)    the Buyer shall have received a certificate from an officer of the Seller, solely in such individual's capacity as an officer of the Seller, to the effect that the conditions set forth in Section 8.2(a) and Section 8.2(b) have been satisfied;

(d)    the Buyer shall have received the other items to be delivered to it pursuant to Section 4.2; and

(e)    the Bankruptcy Court shall have entered a Sale Order and such Sale Order shall be a Final Order.

Any condition specified in this Section 8.2 may be waived by the Buyer; *provided, however*, that no such waiver shall be effective against the Buyer unless it is set forth in a writing executed by the Buyer.

Section 8.3    Conditions to Obligations of the Selling Entities.  The obligation of the Selling Entities to consummate the Closing shall be subject to the satisfaction or, to the extent permitted by applicable Law, waiver at or prior to the Closing of the following additional conditions:

(a)     the Buyer shall have performed and complied in all material respects with the covenants and agreements contained in this Agreement which are required to be performed and complied with by the Buyer on or prior to the Closing Date;

(b)     (i) the representations and warranties of the Buyer set forth in Article VI (other than the Buyer Fundamental Representations), disregarding for these purposes any exception in such representations and warranties relating to materiality, shall be true and correct as of the date of this Agreement and as of the Closing Date as though made at and as of the Closing Date (except for those representations and warranties which address matters only as of an earlier date in which case such representation or warranty shall have been true and correct as of such earlier date), except for such failures to be true and correct as would not have a material adverse effect on the Buyer or its ability to consummate the Transactions, and (ii) the representations and warranties set forth in Section 6.1 (*Organization and Good Standing*), Section 6.2 (*Authority Relative to this Agreement*), Section 6.3(a)(i) (*No Violation; Consents*) and Section 6.5 (*Brokers*) (collectively, the "Buyer Fundamental Representations"), disregarding for these purposes any exception in such representations and warranties relating to materiality, shall be true and correct in all respects, except for any de minimis breaches or inaccuracies, as of the date of this Agreement and as of the Closing Date as though made at and as of the Closing Date (except for those representations and warranties which address matters only as of an earlier date in which case such representation or warranty shall have been true and correct as of such earlier date);

(c)     the Seller shall have received a certificate from an officer of the Buyer, solely in such individual's capacity as an officer of the Buyer, to the effect that the conditions set forth in Section 8.3(a) and Section 8.3(b) have been satisfied;

(d)     the Bankruptcy Court shall have entered a Sale Order and such Sale Order shall be a Final Order; and

(e)     the Seller shall have received the other items to be delivered to it pursuant to Section 4.3.

Any condition specified in this Section 8.3 may be waived by the Seller; *provided*, *however*, that no such waiver shall be effective against the Seller unless it is set forth in a writing executed by the Seller.

Section 8.4     Frustration of Closing Conditions.  None of the Selling Entities or the Buyer may rely on or assert the failure of any condition set forth in Article VIII to be satisfied if such failure was proximately or primarily caused by such Party's failure to comply with this Agreement in all material respects.

## ARTICLE IX
## TERMINATION; WAIVER

Section 9.1     Termination.  This Agreement may be terminated at any time prior to the Closing by:

(a)     mutual written consent of the Seller and the Buyer;

(b)      the Seller or the Buyer, if (i) there shall be any applicable Law that makes consummation of the Transactions illegal or otherwise prohibited, or (ii) consummation of the Transactions would violate any nonappealable final Order, decree or judgment of the Bankruptcy Court or any other Governmental Authority having competent jurisdiction; *provided*, that no termination may be made by a Party under this Section 9.1(b) if such Party is then in material breach of any of its representations, warranties, covenants or agreements hereunder such that the conditions set forth in Article VIII would not then be satisfied;

(c)      the Buyer, if the Sale Order is not entered by July 14, 2023; *provided*, that no termination may be made by the Buyer under this Section 9.1(c) if the Buyer is in material breach of any of its representation, warranties, covenants or agreements hereunder;

(d)      the Seller, if:

(i)      any of the representations and warranties of the Buyer contained in Article VI shall be inaccurate such that the condition set forth in Section 8.3(b) would not then be satisfied; or

(ii)      the Buyer shall have failed to perform or comply with any of the covenants or agreements contained in this Agreement to be performed and complied with by the Buyer prior to the Closing Date, such that the condition set forth in Section 8.3(a) would not then be satisfied;

*provided, however*, that if an inaccuracy in any of the representations and warranties of the Buyer or a failure to perform or comply with a covenant or agreement by the Buyer is curable by the Buyer within ten (10) Business Days after the date of written notice from the Seller to the Buyer of the occurrence of such inaccuracy or failure, then the Seller may not terminate this Agreement under this Section 9.1(d) on account of such inaccuracy or failure (x) prior to the earlier of (1) the date that is ten (10) Business Days following the delivery of such written notice to the Buyer and (2) the Outside Date or (y) if such inaccuracy or failure shall have been fully cured (1) during such ten (10) Business Day period or (2) if the Outside Date occurs prior to the end of such ten (10) Business Day period, on or prior to the Outside Date; *provided*, *further*, that no termination may be made by the Seller under this Section 9.1(d) if the Seller is in material breach of any of its representations, warranties, covenants or agreements hereunder;

(e)      the Buyer, if:

(i)      any of the representations and warranties of the Selling Entities contained in Article V shall be inaccurate such that the condition set forth in Section 8.2(b) would not then be satisfied; or

(ii)      the Selling Entities shall have failed to perform or comply with any of the covenants or agreements contained in this Agreement to be performed and complied with by the Selling Entities prior to the Closing Date, such that the condition set forth in Section 8.2(a) would not then be satisfied;

*provided, however*, that if an inaccuracy in any of the representations and warranties of the Selling Entities or a failure to perform or comply with a covenant or agreement by any of the Selling Entities is curable by it within ten (10) Business Days after the date of written notice from the Buyer to the Seller of the occurrence of such inaccuracy or failure, then the Buyer may not terminate this Agreement under this Section 9.1(e) on account of such inaccuracy or failure (x) prior to the earlier of (1) the date that is ten (10) Business Days following the delivery of such written notice to the Seller and (2) the Outside Date or (y) if such inaccuracy or failure shall have been fully cured (1) during such ten (10) Business Day period or (2) if the Outside Date occurs prior to the end of such ten (10) Business Day period, on or prior to the Outside Date; *provided, further*, that no termination may be made by the Buyer under this Section 9.1(e) if the Buyer is in material breach of any of its representations, warranties, covenants or agreements hereunder;

(f)        the Buyer, if the Bankruptcy Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code and neither such dismissal nor conversion expressly contemplates the Transactions; *provided*, that no termination may be made by the Buyer under this Section 9.1(f) if the Buyer is in material breach of any of its representations, warranties, covenants or agreements hereunder;

(g)        (i) automatic effect and without the need for further action by Seller or Buyer, if the Regulatory Clearance has not been obtained and the condition set forth in Section 8.1(b) has not been satisfied by 11:59 p.m. Eastern Time on June 30, 2023, unless Buyer and Seller, in their respective sole discretion, mutually elect in writing to extend such deadline, or (ii) the Buyer or the Seller, if the Closing has not occurred within seventeen (17) days after entry of the Sale Order and, in any event, by August 3, 2023 (such date set forth in this clause (ii) the "Outside Date"); *provided*, that the right to terminate this Agreement under clause (ii), under this Section 9.1(g) shall not be available to any Party if such Party is then in material breach of any of its representations, warranties, covenants or agreements hereunder such that the conditions set forth in Article VIII would not then be satisfied;

(h)        the Buyer or the Seller, if (i) in the case of the Seller being the terminating Party, all of the conditions set forth in Section 8.1 and Section 8.2, and in the case of the Buyer being the terminating Party, all of the conditions set forth in Section 8.1 and Section 8.3, have been satisfied or waived (other than those conditions to Closing that by their terms or their nature are to be satisfied at the Closing, but subject to such conditions being satisfied assuming a Closing would occur), (ii) the Buyer or the Seller, as applicable, has confirmed in writing that it is ready, willing and able to consummate the Closing, and (iii) the other Party has failed to consummate the Closing by the date the Closing is required to have occurred pursuant to Section 4.1; *provided*, that no termination may be made by a Party under this Section 9.1(h) if such Party is in material breach of any of its representations, warranties, covenants or agreements hereunder;

(i)        the Buyer by written notice to the Seller within two (2) Business Days following the occurrence of a Specified Event; *provided*, that no termination may be made by the Buyer under this Section 9.1(i) if the Buyer is in material breach of any of its representations, warranties, covenants or agreements hereunder; *provided, further*, that if such written notice is not received by the Seller prior to such deadline specified in this Section 9.1(i), the Buyer's right to

terminate this Agreement pursuant to this Section 9.1(i) shall be automatically and irrevocably waived;

        (j)    the Buyer by written notice to Seller within two (2) Business Days following any issuance by the  Bankruptcy Court of a stay of the Sale Order after the entry of the Sale Order; provided, that no termination may be made by the Buyer under this Section 9.1(j) if the Buyer is in material breach of any of its representations, warranties, covenants or agreements hereunder; provided, further, that if such written notice is not received by the Seller prior to such deadline specified in this Section 9.1(j), the Buyer's right to terminate this Agreement pursuant to this Section 9.1(j) shall be automatically and irrevocably waived; or

        (k)    the Buyer or the Seller, if (i) the DIP Lenders fail to forbear from exercising any remedies relating to the DIP Obligations through the Closing Date or to fund the Selling Entities through the entry of the Sale Order or (ii) if the Buyer, the Selling Entities, and the DIP Lenders do not agree upon a financing arrangement that will allow the Selling Entities' operations to continue in the Ordinary Course of Business through the Closing Date, which financing arrangement provides for financing of the Selling Entities' operations based upon the budget attached in Section 9.1(k) of the Seller Disclosure Schedules; provided, that no termination may be made by any Party under this Section 9.1(k) if such Party is in material breach of any of its representations, warranties, covenants or agreements hereunder.

        Section 9.2    Procedure and Effect of Termination.  In the event of termination of this Agreement by either the Seller or the Buyer pursuant to Section 9.1, written notice thereof shall forthwith be given by the terminating Party to the other Party and this Agreement shall terminate and the transactions contemplated hereby shall be abandoned, without further action by any of the Parties; provided, however, that (a) neither Party shall be relieved of, or released from, any Liability arising from any Willful Breach by such Party prior to the termination of this Agreement pursuant to this Article IX, except in the event that Buyer has timely and validly exercised its rights hereunder to terminate this Agreement solely pursuant to a Specified Termination (and not with respect to a Buyer Default Termination or any other scenario, event, fact or circumstance), with respect to which receipt of the Specified Termination Amount is Seller's and the Selling Entities' exclusive remedy pursuant to Section 3.2 hereof, (b) no Party shall be relieved of, or released from, any Liability arising from Fraud by such Party, and (c) this Section 9.2, Section 3.2, Section 7.4 and Article X and the Confidentiality Agreement shall remain in full force and effect and survive any termination of this Agreement.  For the avoidance of all doubt, the Buyer and the Selling Entities hereby expressly agree that to the extent of any inconsistency between the terms and provisions of this Agreement and those of any bid procedures or other order of the Bankruptcy Court in the Bankruptcy Case regarding the handling and disposition of the Deposit, the terms and provisions of this Agreement shall govern and control.  For purposes of this Agreement, "Willful Breach" means with respect to any breaches of, or failures to perform, any of the representations, warranties, covenants, obligations or agreements contained herein, a material breach that is a consequence of an act or failure to act undertaken by the breaching Person with knowledge that such Person's act or failure to act would, or would reasonably be expected to, result in or constitute a material breach of this Agreement.

        Section 9.3    Extension; Waiver.  At any time prior to the Closing, the Seller (on behalf of each of the Selling Entities), on the one hand, or the Buyer, on the other hand, may, to the extent

permitted by applicable Law (a) extend the time for the performance of any of the obligations or other acts of the Buyer (in the case of an agreed extension by the Seller) or the Seller (in the case of an agreed extension by the Buyer), (b) waive any inaccuracies in the representations and warranties of the Buyer (in the case of a wavier by the Seller) or the Seller (in the case of a waiver by the Buyer) contained herein or in any document delivered pursuant hereto, (c) waive compliance with any of the agreements of the Buyer (in the case of a wavier by the Seller) or the Seller (in the case of a waiver by the Buyer) contained herein, or (d) waive any condition to its obligations hereunder.  Any agreement on the part of the Seller, on the one hand, or the Buyer, on the other hand, to any such extension or waiver shall be valid only if set forth in a written instrument signed on behalf of the Seller or the Buyer, as applicable.  The failure or delay of any Party to assert any of its rights under this Agreement or otherwise shall not constitute a waiver of those rights, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise of any rights hereunder.

## ARTICLE X
## MISCELLANEOUS PROVISIONS

Section 10.1    Amendment and Modification.  This Agreement may be amended, modified or supplemented only by a written instrument signed by the Seller, on behalf of each of the Selling Entities, and the Buyer.

Section 10.2    Survival.  None of the representations and warranties of the Parties in this Agreement, in any instrument delivered pursuant to this Agreement, or in the Schedules or Exhibits attached hereto shall survive the Closing, and no Party hereto shall, or shall be entitled to, make any claim or initiate any action against any other Party with respect to any such representation or warranty from or after the Closing.  None of the covenants or agreements of the Parties in this Agreement shall survive the Closing, and no Party hereto shall, or shall be entitled to, make any claim or initiate any action against any other Party with respect to any such covenant or agreement from or after the Closing, other than (a) the covenants and agreements of the Parties contained in this Article X, Section 3.2 and Section 3.3, which shall survive the consummation of the Transactions until fully performed in accordance with their respective terms, (b) those other covenants and agreements contained herein that by their terms apply, or that are to be performed in whole or in part, after the Closing, which shall survive the consummation of the Transactions until fully performed in accordance with their respective terms, (c) any rights or remedies of any Person for breach of any such surviving covenant or agreement and (d) any Liability on account of Fraud.

Section 10.3    Notices.  All notices or other communications required or permitted under, or otherwise made in connection with, this Agreement shall be in writing and shall be deemed to have been duly given or made (a) when delivered in person, (b) when sent if delivered or transmitted by email (provided, no "bounce back" or notice of non-delivery is generated), (c) upon receipt after dispatch by registered or certified mail, postage prepaid, or (d) on the next Business Day if transmitted by national overnight courier (with confirmation of delivery), in each case, addressed as follows:

(a)    If to any Selling Entity or the Selling Entities, to:

Vital Pharmaceuticals, Inc.
1600 N Park Drive
Weston, FL 33326
Attention:     Gregg Metzger
               John Didonato
Email: gregg.metzger@bangenergy.com
       jdidonato@hgc.com

with a mandated copy (which shall not constitute notice) to:

Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Attention:     Andrew Sorkin
               Daniel Mun
               Caroline Reckler
Email: andrew.sorkin@lw.com
       daniel.mun@lw.com
       caroline.reckler@lw.com

(b)     If to the Buyer, to:

Monster Energy Company
1 Monster Way
Corona, California 92879
Attention:  Aaron P. Sonnhalter, Sr. Vice President
Email:  aaron.sonnhalter@monsterenergy.com

with a mandated copy (which shall not constitute notice) to:

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Attention:     Richard M. Pachulski
               Teddy Kapur
Email: rpachulski@pszjlaw.com
       tkapur@pszjlaw.com

Section 10.4    Assignment.   Neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any Party (whether by operation of law or otherwise) without the prior written consent of the other Parties, and any such assignment shall be null and void; *provided*, *however*, that nothing in this Agreement shall limit the right of the Buyer to assign its rights or delegate its responsibilities, liabilities and obligations under this Agreement in whole or in part to any Affiliate of the Buyer or to assign, license, transfer, or otherwise dispose of any of the Seller IP and other Purchased Assets in any manner in its sole discretion; *provided*, *further*, that no such assignment shall be permitted to the extent it would subject any amounts payable to the Seller or any other Selling Entities in connection with this Agreement to any incremental

withholding or other Tax that would be borne by the Seller, the other Selling Entities or their respective Affiliates or direct or indirect equity holders.  No assignment by any Party shall relieve such Party of any of its obligations hereunder.  Any attempted or purported assignment in violation of this Section 10.4 will be deemed void *ab initio*.  Subject to the foregoing, this Agreement and all of the provisions hereof shall be binding upon, inure to the benefit of and be enforceable by the Parties and their respective successors and permitted assigns, including, in the case of the Selling Entities, the trustee in the Bankruptcy Case. For the avoidance of all doubt, nothing in this Section 10.4 or elsewhere in this Agreement shall, but subject in all respects to the second proviso to the first sentence of this Section 10.4) be deemed to restrict or prohibit the Buyer from, in the Buyer's sole discretion, designating an Affiliate(s) to take title to the Purchased Assets (or any portion(s) thereof).

Section 10.5   Severability.  If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of Law or public policy, all other terms, conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any Party.  Upon a determination that any term or other provision of this Agreement is invalid, illegal or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the fullest extent possible.

Section 10.6   Governing Law.  Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Agreement, and all claims and causes of action arising out of, based upon, or related to this Agreement or the negotiation, execution or performance hereof, shall be governed by, and construed, interpreted and enforced in accordance with, the Laws of the State of Delaware, without regard to choice or conflict of law principles that would result in the application of any Laws other than the Laws of the State of Delaware.  Notwithstanding the foregoing or anything to the contrary herein, this Section 10.6 shall not apply to the California District Court Action, the OBI/Monster Matter, the Trade Secret Matters, the VPX Florida Matters, the Orange Bang Trademark License Action, and/or any litigation or other Proceeding involving a Buyer Releasing Party and a Seller Releasing Party that is currently pending in any jurisdiction or other forum as of the date of this Agreement.

Section 10.7   Acknowledgement and Release; Non-Recourse.

(a)     The Buyer acknowledges that the Selling Entities are the sole Persons bound by, or liable with respect to, the obligations and Liabilities of the Selling Entities under this Agreement and the other Transaction Documents, and that no Affiliate of any Selling Entity or any of their respective subsidiaries or any current or former officer, director, stockholder, agent, attorney, employee, representative, advisor or consultant of any Selling Entity or any such other Person shall be bound by, or liable with respect to, any aspect of this Agreement and the other Transaction Documents; *provided, however,* that no Person shall be relieved of, or released from, any Liability arising from Fraud by such Person.  Each of the Selling Entities acknowledges that the Buyer is the sole Persons bound by, or liable with respect to, the obligations and Liabilities of the Buyer under this Agreement and the other Transaction Documents, and that no Affiliate of the Buyer or any of their respective subsidiaries or any current or former officer, director, stockholder,

agent, attorney, employee, representative, advisor or consultant of the Buyer or any such other Person shall be bound by, or liable with respect to, any aspect of this Agreement and the other Transaction Documents; *provided*, *however*, that no Person shall be relieved of, or released from, any Liability arising from Fraud by such Person.  This Agreement may only be enforced against, and any claims or causes of action that may be based upon, arise out of or relate to this Agreement, or the negotiation, execution or performance of this Agreement may only be made against the entities that are expressly identified as parties hereto and no other Person that is not a party hereto shall have any liability for any Liabilities of the parties to this Agreement or for any claim (whether in tort, contract or otherwise) based on, in respect of, or by reason of, the Transactions or in respect of any oral representations made or alleged to be made in connection herewith.  In no event shall any party hereto or any of its Affiliates, and the Parties hereby agree not to and to cause their respective Affiliates (in the case of the Selling Entities, other than any Excluded Parties) not to, seek to enforce this Agreement against, make any claims for breach of this Agreement against, or seek to recover monetary damages from, any Person not a party to this Agreement.

(b)     Notwithstanding anything to the contrary herein or otherwise, each beneficiary of this <u>Section 10.7</u> shall be an express third party beneficiary of this <u>Section 10.7</u> with the full power to enforce the terms of this <u>Section 10.7</u> as if it were a party to this Agreement for such purpose.

Section 10.8     <u>Submission to Jurisdiction; WAIVER OF JURY TRIAL</u>.

(a)     Any action, claim, suit or Proceeding arising out of, based upon or relating to this Agreement or the transactions contemplated hereby shall be brought solely in the Bankruptcy Court (or any court exercising appellate jurisdiction over the Bankruptcy Court).  Each Party hereby irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court (or any court exercising appellate jurisdiction over the Bankruptcy Court) in respect of any action, claim, suit or Proceeding arising out of, based upon or relating to this Agreement or any of the rights and obligations arising hereunder, and agrees that it will not bring any action arising out of, based upon or related thereto in any other court; *provided*, *however*, that, if the Bankruptcy Case is closed or dismissed, any action, claim, suit or Proceeding arising out of, based upon or relating to this Agreement or the Transactions shall be heard and determined solely in a state or federal court located in the State of Delaware and any state appellate court therefrom within the State of Delaware.  Each Party hereby irrevocably waives, and agrees not to assert as a defense, counterclaim or otherwise, in any such action, claim, suit or Proceeding, (a) any claim that it is not personally subject to the jurisdiction of the above named courts for any reason other than the failure to serve process in accordance with <u>Section 10.3</u>, (b) any claim that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise) and (c) to the fullest extent permitted by applicable Law, any claim that (i) the suit, action or Proceeding in such court is brought in an inconvenient forum, (ii) the venue of such suit, action or Proceeding is improper or (iii) this Agreement or any other agreement or instrument contemplated hereby or entered into in connection herewith, or the subject matter hereof or thereof, may not be enforced in or by such courts.  Each Party agrees that notice or the service of process in any action, claim, suit or Proceeding arising out of, based upon or relating to this Agreement or any of the rights and obligations arising hereunder or thereunder, shall be properly served or delivered if delivered in

the manner contemplated by Section 10.3.  Notwithstanding anything to the contrary, the foregoing shall not limit the right to pursue actions, claims, counter-claims or other challenges before the US Patent and Trademark Office, U.S. Trademark Trial and Appeal Board, WIPO, any IP office globally, or any similar administrative forum or tribunal in the U.S. or in foreign jurisdictions, including any appeals thereto, at the Federal Circuit or other administrative forum or court, or to pursue takedowns via any website.  Notwithstanding the foregoing or anything to the contrary herein, this Section 10.8(a) shall not apply to, and nothing contained in this Agreement (or any other agreement or as a condition to acquiring any of the Purchased Assets) shall affect the governing law, jurisdiction, venue and forum of, the California District Court Action, the OBI/Monster Matter, the Trade Secret Matters, the VPX Florida Matters, the Orange Bang Trademark License Action, and/or any litigation or other Proceeding involving a Buyer Releasing Party and a Seller Releasing Party that is currently pending in any jurisdiction or other forum as of the date of this Agreement.

(b)     EACH OF THE PARTIES HERETO IRREVOCABLY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY AND ALL RIGHT SUCH PARTY MAY HAVE TO TRIAL BY JURY IN ANY ACTION, CLAIM, SUIT OR PROCEEDING (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) BETWEEN THE PARTIES HERETO ARISING OUT OF, BASED UPON OR RELATING TO THIS AGREEMENT OR THE OTHER TRANSACTION DOCUMENTS OR THE NEGOTIATION, EXECUTION OR PERFORMANCE HEREOF OR THEREOF.  Notwithstanding the foregoing or anything to the contrary herein, this Section 10.8(b) shall not apply to the California District Court Action, the OBI/Monster Matter, the Trade Secret Matters, the VPX Florida Matters, the Orange Bang Trademark License Action, and/or any litigation or other Proceeding involving a Buyer Releasing Party and a Seller Releasing Party that is currently pending in any jurisdiction or other forum as of the date of this Agreement.

Section 10.9   Counterparts.  This Agreement, the agreements referred to herein, and each other agreement or instrument entered into in connection herewith or therewith or contemplated hereby or thereby, and any amendments hereto or thereto, to the extent signed and delivered by means of a photographic, photostatic, facsimile, portable document format (.pdf), DocuSign, electronic signature or similar reproduction of such signed writing using a facsimile machine or electronic mail shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. No party hereto or to any such agreement or instrument shall raise the use of a facsimile machine or electronic mail to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine or electronic mail or that any signature is in facsimile or electronic format (including .pdf or DocuSign) as a defense to the formation or enforceability of a contract and each such party forever waives any such defense. To the extent that any such signature is considered not acceptable by any authority or governmental body, the Parties agree to re-execute any such agreements in a manner acceptable to such authority or governmental body.

Section 10.10 Incorporation of Schedules and Exhibits.   All Schedules, the Seller Disclosure Schedule and all Exhibits attached hereto and referred to herein are hereby incorporated herein by reference and made a part of this Agreement for all purposes as if fully set forth herein.

Section 10.11  Entire Agreement.  This Agreement (including all Schedules, the Seller Disclosure Schedule and all Exhibits), the Confidentiality Agreement and the other Transaction Documents constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede all prior agreements and understandings among the Parties with respect thereto, *provided* that (i) the Confidentiality Agreement shall automatically terminate as of the Closing and (ii) to the extent that any other provision of this Agreement (including Section 7.3 hereof) conflicts with any term or provision of the Confidentiality Agreement, such other provision of this Agreement shall govern and control.

Section 10.12  Specific Performance.

(a)  The Selling Entities agree that irreparable damage may occur in the event that any provision of this Agreement is not performed in accordance with its specific terms or was otherwise breached and that monetary damages may not be an adequate remedy for any breach or threatened breach of any of the provisions of this Agreement.  It is accordingly agreed that (i) the Buyer shall be entitled to an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement, and any such injunction shall be in addition to any other remedy to which the Buyer is entitled, at law or in equity, (ii) the Selling Entities waive any requirement for the securing or posting of any bond in connection with the obtaining of any specific performance or injunctive relief and (iii) the Selling Entities will waive, in any action for specific performance, the defense of adequacy of a remedy at Law.  The Buyer's pursuit of specific performance at any time will not be deemed an election of remedies or waiver of the right to pursue any other right or remedy to which the Buyer may be entitled, including the right to pursue remedies for liabilities or damages incurred or suffered by the Buyer in the case of a breach of this Agreement.

(b)  The Buyer agrees that irreparable damage may occur in the event that any provision of this Agreement is not performed in accordance with its specific terms or was otherwise breached and that monetary damages may not be an adequate remedy for any breach or threatened breach of any of the provisions of this Agreement.  It is accordingly agreed that (i) the Selling Entities shall be entitled to an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement, and any such injunction shall be in addition to any other remedy to which the Selling Entities are entitled, at law or in equity, (ii) the Buyer waives any requirement for the securing or posting of any bond in connection with the obtaining of any specific performance or injunctive relief and (iii) the Buyer will waive, in any action for specific performance, the defense of adequacy of a remedy at Law. The Selling Entities' pursuit of specific performance at any time will not be deemed an election of remedies or waiver of the right to pursue any other right or remedy to which the Selling Entities may be entitled, including the right to pursue remedies for liabilities or damages incurred or suffered by the Selling Entities in the case of a breach of this Agreement.

Section 10.13  Bulk Sales or Transfer Laws.  Each of the Parties hereby waives compliance with the provisions of the bulk sales, bulk transfers, or similar Laws of all applicable jurisdictions that may be applicable to the sale of the Purchased Assets under this Agreement.

Section 10.14  Seller Disclosure Schedule.  The Seller Disclosure Schedule has been arranged for purposes of convenience in separately numbered sections corresponding to the

sections of this Agreement, and it is expressly understood and agreed that (a) the disclosure of any fact or item in any section of the Seller Disclosure Schedule shall be deemed disclosure with respect to any other Section or subsection of the Seller Disclosure Schedule to the extent the applicability of the disclosure to such other Section or subsection is reasonably apparent on the face of such disclosure without the need for a cross-reference, (b) the disclosure of any matter or item in the Seller Disclosure Schedule shall not be deemed to constitute an acknowledgement that such matter or item is required to be disclosed therein, (c) the mere inclusion of an item in the Seller Disclosure Schedule as an exception to a representation or warranty shall not be deemed an admission that such item represents a material exception, any violation of Law or breach of Contract or material fact, event or circumstance or that such item has had or would be reasonably likely to have a Material Adverse Effect, (d) the information and disclosures contained therein shall not be construed or otherwise deemed to constitute, any representation, warranty, covenant or obligation of the Selling Entities or any other Person except to the extent explicitly provided in this Agreement, and (e) the disclosures set forth in the Seller Disclosure Schedule shall not be deemed to expand the scope of any, or create any new, representation, warranty, covenant or agreement set forth herein. The specification of any dollar amount or the inclusion of any item in the representations and warranties contained in this Agreement, the Seller Disclosure Schedule or the attached exhibits is not intended to imply that the amounts, or higher or lower amounts, or the items so included, or other items, are or are not required to be disclosed (including whether such amounts or items are required to be disclosed as material or threatened) or are within or outside of the Ordinary Course of Business, and neither Party will use the fact of the setting of the amounts or the fact of the inclusion of any item in this Agreement, the Schedules or exhibits in any dispute or controversy between the Parties as to whether any obligation, item or matter not set forth or included in this Agreement, the Seller Disclosure Schedule or Exhibits hereto is or is not required to be disclosed (including whether the amount or items are required to be disclosed as material or threatened) or are within or outside of the Ordinary Course of Business. The information contained in this Agreement, in the Seller Disclosure Schedule and Exhibits hereto is disclosed solely for purposes of this Agreement. The Selling Entities may (but shall not be obligated to), with the consent of the Buyer in its sole discretion, supplement or amend the Seller Disclosure Schedule to reflect (i) any fact, event or condition arising after the date hereof and prior to the Closing which, if existing or occurring as of the date of this Agreement, would have been required to be described in the Seller Disclosure Schedule in order to avoid any representation or warranty of the Selling Entities contained in this Agreement from being untrue or inaccurate and (ii) any fact, event or condition which first became known to a Knowledge party of any Selling Entity listed in clause (b) of the definition of "Knowledge" after the date hereof which, if known to such person prior to the date of this Agreement, would have been required to be described in the Seller Disclosure Schedule in order to avoid any representation or warranty of the Selling Entities contained in this Agreement which is subject to the Knowledge of the Selling Entities or any other Selling Entity from being untrue or inaccurate. To the extent that there are any additional Purchased Assets, Excluded Assets, Assumed Liabilities or Excluded Liabilities identified after the date of this Agreement, the Selling Entities and the Buyer shall work together in good faith to address any modifications, amendments, supplements or the like that may be required or appropriate to the Seller Disclosure Schedules in accordance with the other provisions hereof.

Section 10.15 Mutual Drafting; Headings; Information Made Available. The Parties participated jointly in the negotiation and drafting of this Agreement and the language used in this Agreement shall be deemed to be the language chosen by the Parties to express their mutual intent.

If an ambiguity or question of intent or interpretation arises, then this Agreement will accordingly be construed as drafted jointly by the Parties, and no presumption or burden of proof will arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.  The descriptive headings and table of contents contained in this Agreement are included for convenience of reference only and shall not affect in any way the meaning or interpretation of this Agreement.  To the extent this Agreement refers to information or documents to be made available (or delivered or provided) to the Buyer or its Representatives, the Selling Entities shall be deemed to have satisfied such obligation if the Seller or any of its Representatives has made such information or document available (or delivered or provided such information or document) to the Buyer or any of its Representatives, whether in an electronic data room, via electronic mail, in hard copy format or otherwise.

Section 10.16  Guarantee.

(a)    Guarantor hereby irrevocably, absolutely and unconditionally guarantees the due, punctual and complete performance and payment (and not merely collection) in full of Buyer's obligations under this Agreement up to the Purchase Price as and when due and payable and as and when required to be performed pursuant to this Agreement (the "Guaranteed Obligations") and agrees that the Selling Entities shall be entitled to enforce directly against Guarantor any of the Guaranteed Obligations thirty (30) days after having made written demand of the Buyer.  Guarantor irrevocably expressly waives (i) any and all rights or defenses arising by reason of any applicable Law which would otherwise require any election of remedies by the Selling Entities, (ii) presentment to, demand of payment from and protest to any other Person of any of the Guaranteed Obligations, and also waives notice of acceptance of its guarantee and notice of protest for nonpayment not provided for in this Section 10.16, (iii) all defenses which may be available by virtue of any valuation, stay, moratorium or other similar applicable Law now or hereafter in effect, any right to require the marshaling of assets of the Buyer, Guarantor or any other Person interested in the Transactions, and all suretyship defenses generally, (iv) any and all rights or defenses arising by reason of any applicable Law which would otherwise require any election of remedies by any Selling Entity, (v) any requirement that the Selling Entities exhaust any right or take any action against the Buyer or any other Person, any collateral security or any other guarantor or surety, and (vi) any right to subrogation to any of the rights of the Buyer or any other Person against the Selling Entities, reimbursement, indemnification or contribution from the Selling Entities in respect of payments made by Guarantor hereunder or any other similar rights. The Guaranteed Obligations shall not be subject to any reduction, limitation, impairment or termination for any reason, including any claim of waiver, release, surrender, alteration or compromise, and shall not be subject to any defense or setoff, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality or unenforceability of the Guaranteed Obligations.  Guarantor hereby agrees and acknowledges that its obligations hereunder shall not be released or discharged in whole or in part, or otherwise affected by (A) any change in the corporate existence, structure or ownership of the Buyer or Guarantor or any insolvency, bankruptcy, reorganization or other similar Proceeding of the Buyer or Guarantor or any of their respective former, current or future direct or indirect equity holder, controlling person, general or limited partner, officer, director, employee, investment professional, manager, stockholder, member, agent, Affiliate, assignee, representative or financing source of any of the foregoing (collectively, the "Related Persons") or affecting any of their respective assets, (B) any change in the manner, place or terms of payment or performance, or any change or extension of the time of

payment or performance of, renewal or alteration of, the Guaranteed Obligations, any liability incurred directly or indirectly in respect thereof, or any amendment or waiver in accordance with the terms and conditions of this Agreement or the documents entered into in connection therewith, in each case, made in accordance with the terms thereof, (C) the right by statute or otherwise to require any Selling Entity to institute suit against the Buyer or any of its Related Persons or to exhaust any rights and remedies which such Selling Entity has or may have against the Buyer or any of its Related Persons, (D) the failure or delay on the part of the Selling Entities to assert any claim or demand or to enforce any right or remedy against the Buyer or Guarantor, (E) the existence of any claim, set-off or other similar right which the Guarantor may have at any time against the Buyer or the Selling Entities or their respective Affiliates, whether in connection with the Guaranteed Obligations or otherwise, (F) the adequacy of any other means the Selling Entities may have of obtaining payment of the Guaranteed Obligations, (G) the value, genuineness, validity, regularity, illegality or enforceability (as it relates to the Buyer) of this Agreement or the Transaction Documents, or (H) any other act or omission that may in any manner or to any extent vary the risk of the Guarantor.  Notwithstanding any of the foregoing or anything else in this Section 10.16, nothing herein shall be deemed to waive or limit Guarantor's right or ability to assert as defenses to this guarantee any claims, defenses or other rights that the Buyer may have to the enforcement of Buyer's obligations under this Agreement. This guarantee shall be binding upon the successors and assigns of Guarantor and shall inure to the benefit of the Seller and its successors and assigns. In the event that Guarantor or any of its successors or assigns transfers or conveys in one transaction or a series of transactions all or substantially all of its assets to any Person, Guarantor shall cause proper provision to be made so that such successor or assign shall expressly assume this guarantee.

(b)      Guarantor represents and warrants the following as of the date hereof and as of the Closing:

(i)      Guarantor is a corporation, duly organized, validly existing and in good standing under the Laws of the State of Delaware and has all necessary power and authority to own, operate or lease the properties and assets now owned, operated or leased by it and to carry on its business as it has been and is currently conducted.

(ii)      Guarantor has all necessary corporate authority and legal capacity to enter into, deliver and perform this Agreement and each Transaction Document to which it is, or will be as of the Closing, a party, to carry out its obligations hereunder and thereunder and to consummate the Transaction. Guarantor is duly licensed or qualified to do business and is in good standing in each jurisdiction in which the properties owned or leased by it or the operation of its business makes such licensing or qualification necessary, except to the extent that the failure to be so licensed, qualified or in good standing would not adversely affect the ability of Guarantor to carry out its obligations under this Agreement and to consummate the Transaction. The execution and delivery of this Agreement and the Transaction Documents by Guarantor, the performance by Guarantor of its obligations hereunder and thereunder and the consummation by Guarantor of the Transactions have been duly authorized by all requisite action on the part of Guarantor. This Agreement has been duly executed and delivered by Guarantor, and (assuming due authorization, execution and delivery by the Selling Entities), Guarantor's obligations under this Section 10.16 constitutes the legal, valid and binding obligations of Guarantor,

90

enforceable against Guarantor in accordance with its terms, except as enforcement hereof may be limited by the General Enforceability Exceptions.

(iii)   Assuming that all applicable requirements of the HSR Act have been satisfied with respect to the Transactions, the execution, delivery and performance of this Agreement by Guarantor does not and will not (A) violate, conflict with or result in the breach of governing documents of Guarantor, (B) conflict with or violate any Law or Order applicable to Guarantor or its assets, properties or businesses, or (C) contravene or conflict with, result in any breach or violation of, constitute a default (or event which with the giving of notice or lapse of time, or both, would become a default) under, require any consent under, or give to others any rights of termination, amendment, acceleration, suspension, revocation or cancellation of, any Contract to which Guarantor is a party, except, in the case of clauses (B) and (C), for any such conflicts, violations, breaches, defaults or other occurrences which would not, individually or in the aggregate, prevent Guarantor from performing or complying with, or materially delay the performance by Guarantor of or compliance by Guarantor with, its obligations under this Section 10.16.

(iv)   The execution, delivery and performance of the provisions of this Section 10.16 by Guarantor does not and will not require any Governmental Authorization or notice to any Governmental Authority, except applicable requirements of the HSR Act with respect to the Transactions.

(v)   Guarantor has, and will have at all times that this Agreement is in effect, financial means at its disposal to enable Guarantor to pay the Guaranteed Obligations immediately when due pursuant to the terms and subject to the conditions of this Agreement, and immediately after giving effect to the Transactions, Guarantor will be solvent and have adequate capital to carry on its business.

(c)   Notwithstanding anything to the contrary in this Section 10.16, in no event shall any damages recovered against Guarantor on account of the Guaranteed Obligations exceed an amount equal to the Purchase Price.

Section 10.17   Use of Retained Records.  Notwithstanding anything to the contrary herein or otherwise, the Buyer agrees that the Buyer, its Affiliates and their respective Representatives shall not, directly or indirectly, use any Retained Records in connection with any Proceeding, whether pending, threatened, or not yet asserted or threatened against or with respect to (a) the Selling Entities, their Affiliates or any of their respective directors, officers, employees, managers, counsel, accountants, consultants or other Representatives, or (b) any assets or properties of the Selling Entities.  The Buyer agrees, on its own behalf and on behalf of its directors, officers, managers, employees, and Affiliates and their respective Representatives, that, as to all Retained Records, all applicable privileges and other protections shall remain vested in the Selling Entities and shall not transfer to the Buyer, or be claimed by the Buyer any of its Affiliates or their respective Representatives.

Section 10.18   Approval of the Bankruptcy Court.  Notwithstanding anything herein to the contrary, any and all of the Selling Entities' obligations from and after the Closing under this Agreement are subject to approval of the Bankruptcy Court.  Once this Agreement is fully executed

by the Parties, the Selling Entities shall be bound by the terms of this Agreement applicable prior to the Closing and shall not have the right, whether on estate fiduciary grounds or otherwise, to terminate this Agreement except pursuant to the express terms of <u>Section 3.2</u> and <u>Section 9.1</u> hereof.  Notwithstanding anything to the contrary herein, the Selling Entities' rights and interests (and the Buyer's, MBC's and MEC's obligations) under this Agreement shall be effective immediately upon execution of this Agreement by the Parties.

* * * * *

IN WITNESS WHEREOF, the Parties hereto have caused this Asset Purchase Agreement to be executed as of the date first written above.

**SELLING ENTITIES:**

**VITAL PHARMACEUTICALS, INC.**

By: _____
Name: John DiDonato
Title: Chief Transformation Officer

**VITAL PHARMACEUTICALS
INTERNATIONAL SALES, INC.**

By: _____
Name: John DiDonato
Title: Chief Transformation Officer

**JHO INTELLECTUAL PROPERTY
HOLDINGS, LLC**

By: _____
Name: John DiDonato
Title: Chief Transformation Officer

**JHO REAL ESTATE INVESTMENT, LLC**

By: _____
Name: John DiDonato
Title: Chief Transformation Officer

**QUASH SELTZER, LLC**

By: _____
Name: John DiDonato
Title: Chief Transformation Officer

**RAINBOW UNICORN BEV, LLC**

By: _____

Name: John DiDonato

Title: Chief Transformation Officer

**BUYER**:

**BLAST ASSET ACQUISITION LLC, A DELAWARE LIMITED LIABILITY COMPANY**

By: _____
Name: Hilton H. Schlosberg
Title:  Co-Chief Executive Officer

THE UNDERSIGNED HEREBY JOINS IN THIS AGREEMENT FOR THE SOLE AND EXCLUSIVE PURPOSE OF AGREEING TO THE TERMS AND PROVISIONS OF SECTION 7.16 HEREOF:

**MONSTER ENERGY COMPANY**

By: _____
Name: Hilton H. Schlosberg
Title:  Vice Chairman of the Board of Directors,
        Co-Chief Executive Officer

THE UNDERSIGNED HEREBY JOINS IN THIS AGREEMENT FOR THE SOLE AND EXCLUSIVE PURPOSE OF AGREEING TO THE TERMS AND PROVISIONS OF SECTION 7.16 AND SECTION 10.16 HEREOF:

**MONSTER BEVERAGE CORPORATION**

By: _____

Name: Hilton H. Schlosberg

Title:  Vice Chairman of the Board of Directors,
          Co-Chief Executive Officer

## <u>Schedule I</u>

1. Vital Pharmaceuticals International Sales, Inc., a Delaware corporation

2. JHO Intellectual Property Holdings, LLC, a Florida limited liability company

3. JHO Real Estate Investment, LLC, a Florida limited liability company

4. Quash Seltzer, LLC, a Florida limited liability company

5. Rainbow Unicorn Bev, LLC, a Florida limited liability company

**SELLER DISCLOSURE SCHEDULE**

**TO**

**ASSET PURCHASE AGREEMENT**

**BY AND AMONG**

**VITAL PHARMACEUTICALS, INC., AS THE SELLER,**

**EACH OF THE AFFILIATES OF THE SELLER LISTED ON SCHEDULE I THERETO**

**BLAST ASSET ACQUISITION LLC, AS THE BUYER,**

**SOLELY FOR PURPOSES OF SECTION 7.16,**

**MONSTER ENERGY COMPANY**

**AND**

**SOLELY FOR PURPOSES OF SECTION 7.16 AND SECTION 10.16,**

**MONSTER BEVERAGE CORPORATION**

**DATED AS OF JUNE 28, 2023**

This Seller Disclosure Schedule (this "Disclosure Schedule") has been prepared in connection with that certain Asset Purchase Agreement (the "Agreement"), dated as of June 28, 2023, by and among Vital Pharmaceuticals, Inc., a Florida corporation (the "Seller"), the Affiliates of the Seller listed on Schedule I to the Agreement (such Affiliates, together with the Seller, the "Selling Entities"), and Blast Asset Acquisition LLC, a Delaware limited liability company (the "Buyer"), solely for purposes of Section 7.16, Monster Energy Company, a Delaware corporation, and solely for purposes of Section 7.16 and Section 10.16, Monster Beverage Corporation, a Delaware corporation.  Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Agreement.  Section references herein are to sections of the Agreement.

The disclosures in this Disclosure Schedule are to be taken as relating to the representations and warranties of the Selling Entities as a whole, notwithstanding the fact that this Disclosure Schedule is arranged by sections corresponding to the sections in the Agreement, or that a particular section of the Agreement makes reference to a specific section of this Disclosure Schedule.  As a result, any disclosure made by a party in this Disclosure Schedule with reference to any section or schedule of the Agreement shall be deemed to be a disclosure with respect to all other sections or schedules of the Agreement to the extent such disclosure is reasonably apparent on the face of such disclosure.

Matters reflected in this Disclosure Schedule are not necessarily limited to matters required by the Agreement to be reflected in this Disclosure Schedule; this Disclosure Schedule may contain items that are not material (or otherwise required to be disclosed) in order to avoid any misunderstanding, or otherwise for informational purposes.  Accordingly, certain information set forth in this Disclosure Schedule is included solely for informational purposes and may not be required to be disclosed pursuant to the Agreement.  The disclosure of any information shall not be deemed to constitute an acknowledgment or admission that such information is required to be disclosed in connection with the representations and warranties made in the Agreement, nor shall such information represent a material exception or material fact, event or circumstance or have had or would be reasonably likely to have a Material Adverse Effect.  The information and disclosures contained herein shall not be construed or otherwise deemed to constitute, any representation, warranty, covenant or obligation of the Selling Entities or any other Person except to the extent explicitly provided in the Agreement.  The disclosures set forth in this Disclosure Schedule shall not be deemed to expand the scope of any, or create any new, representation, warranty, covenant or agreement set forth in the Agreement.  Disclosure of any allegations with respect to any alleged breach, violation or default under any contractual or other obligation, or any Law, is not an acknowledgment or admission that such breach, violation or default has occurred.

The information contained in this Disclosure Schedule is disclosed solely for purposes of the Agreement, and no information contained herein (including any disclosure relating to any possible breach or violation of, or conflict with, any Law or contract, and any statements with respect to the enforceability of contracts, or the existence or non-existence of third-party rights) shall be deemed to be an acknowledgment or admission by any party to the Agreement to any third party of any matter whatsoever, or otherwise give rise to any claim or benefit to any third party.

The  Debtor Entities are subject to or have initiated or brought, or the Debtor Entities and/or the Buyer or its Affiliates in the future may initiate or bring, disputes, Claims and other Proceedings regarding the ownership or control of certain assets or properties referenced in this Disclosure Schedule and the Agreement.  For brevity and convenience, this Disclosure Schedule and the Agreement in some places refer to assets or properties "owned" or "controlled" by Excluded Parties – or similar phrasing – to describe assets or properties that an Excluded Party controls, claims to own, or that is registered in the name of such Excluded Party.  None of these references are intended to be an admission to any Excluded Party or third party (other than the Buyer for the sole purposes of qualifying the representations, warranties, covenants and obligations of the Selling Entities contained in the Agreement and in accordance with the provisions thereof and determining the scope of Purchased Assets, Assumed Liabilities, Excluded Assets and Excluded Liabilities) by the Debtor Entities or the Buyer that the Debtor Entities are not the true legal and beneficial

owners of, or that the Debtor Entities or the Buyer (or its Affiliates), as the case may be, should or will be unable to recover or obtain, such assets or properties upon completion of certain disputes, Claims and other Proceedings regarding title and ownership of such assets and properties.

This Disclosure Schedule and the information and disclosures contained herein are intended only to qualify and limit the representations or warranties contained in the Agreement and shall not be deemed to expand in any way the scope or effect of any of such representations or warranties. Where the terms of a contract or other item have been summarized or described in this Disclosure Schedule, such summary or description does not purport to be a complete statement of the material terms of such contract or other item, and all such summaries and descriptions are qualified in their entirety by reference to the contract or item being summarized and/or described.

The information provided in this Disclosure Schedule is being provided solely for the purpose of making disclosures to the Buyer under the Agreement. In disclosing this information, each of the Selling Entities does not waive, and expressly reserves any rights under, any attorney-client or other privilege associated with such information or any protection afforded by the work-product or other doctrine with respect to any of the matters disclosed or discussed herein.

The headings and introductions used in this Disclosure Schedule have been included for convenience only, and are not intended to limit the effect of the disclosures contained herein or to expand the scope of the information required to be disclosed herein.

**Section 1.1(a)**
**Business Marks**

The trademarks set forth in <u>Section 5.11(a)(i)</u> of this Disclosure Schedule are incorporated by reference herein.

**Section 1.1(b)**
**Permitted Encumbrances**

Vehicle Fleet Liens (Please also see Schedule 1.1(b) (attached) for specific vehicle details)

| Lienholder | Amount Due |
|---|---|
| Hitachi Capital American Corp. | $212,885.74 |
| AmeriCredit Financial Services, Inc. d/b/a GM Financial | $465,315.85 |
| Ally Bank | $243,369.69 |
| Chrysler Capital | $10,693.00 |

Mechanics Liens

| Lienholder | Amount Due |
|---|---|
| Ahern Rentals Inc. | $9080.86 |
| Belvac Production Machinery Inc. | Fixture filing |
| Degan Construction LLC | $366,172.41 |
| Fabco Metal Products LLC | $2,160,783.76 |
| Faith Technologies Incorporated | $807,781.00 |
| Faith Technologies Incorporated | $2,777,007.15 |
| HACI Mechanical Contractors, Inc. | $224,126.00 |
| Hardrock Concrete Placement Co., Inc. | $669,195.67 |
| Heavy Equipment Movers & Installation | $1,567,360 |
| CM Builders, Inc. d/b/a Integrated Masonry | $145,637.30 |
| ISEC Inc. | $126,838.00 |
| Nexus Steel, LLC | $313,512.91 |
| Stellar Group, Inc | $7,722,974.37 |
| M&P Venture Partners Demolition, LLC | $35,755.00 |
| Trench Shore Rentals | $5,208.73 |

Financing

Any encumbrances as a result of the Amended and Restated Revolving Credit and Term Loan Agreement, dated as of August 14, 2020 (as amended and otherwise modified from time to time prior to the Petition Date), among, *inter alios*, the Vital Pharmaceuticals Inc., the guarantors party thereto, the lenders party thereto and Truist Bank (and its successors) in its capacity as administrative agent thereunder (the "Truist Agreement").

General

1. Item 13 of Section 7.1 of this Disclosure Schedule is incorporated by reference herein.

2. The usage of the Seller IP is subject to the arbitration awards and associated obligations thereunder related to the OBI/Monster Matter.

3. Section 5.4 of this Disclosure Schedule is incorporated by reference herein.

4. Items 5 and 6 of Section 5.15 of this Disclosure Schedule are incorporated by reference herein.

5. The lease set forth in item 1 under "Intercompany Lease Agreements" in Section 5.20 of this Disclosure Schedule will be rejected in the Bankruptcy Case.

6. Certain inventory and fixed assets located at lease sites that are rejected as part of the Bankruptcy Case may be inaccessible to the Buyer and subject to claims from the applicable landlord.

7. The distributor agreements of the Business generally grant licenses to the applicable distributor.

8. All items listed under "Intercompany License Agreements" in <u>Section 5.20</u> of this Disclosure Schedule are incorporated by reference herein, only to the extent that any such items are both not terminable unilaterally by a Selling Entity and not otherwise terminated.

**Schedule 1.1(b)**

**Liens on Included Vehicles**

(see attached)

**Vital Pharmaceuticals, Inc.**

VPX Included Vehicle Fleet Summary (as at March 31, 2023)

With respect to the vehicles subject to the Hitachi liens, a per vehicle balance is not available. We took the entire amount outstanding and divided it by the number of vehicles associated with the outstanding balance to arrive at the loan balance for each vehicle.

99

| # | Facility / Lot Name | VIN # | Tag # | Asset Type | Year | Manufacturer | Model Name | Keep Vehicle? | Loan Balance (as at March 31, 2023) | Lienholder |
|---|---|---|---|---|---|---|---|---|---|---|
| 51 | Medley | WD3PF3CC6FP158101 | GJG-B53 | Van | 2016 | Mercedes | Sprinter | Yes | $0.00 | N/A |
| 52 | Medley | 1FDNF6DEXHDB02354 | AU48MP | 26ft Truck | 2017 | Ford | F-650 | Yes | $0.00 | N/A |
| 84 | Medley | 1C4HJXDG9JW208831 | LHYW75 | Jeep | 2018 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 85 | Medley | 1C4HJXEG1JW185222 | LHYW77 | Jeep | 2018 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 86 | Medley | 1C4HJXEG8JW185220 | LJCR18 | Jeep | 2018 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 136 | Riviera Beach | WD3PF3CC5GP262970 | GVDY87 | Van | 2016 | Mercedes | Sprinter | Yes | $0.00 | N/A |
| 139 | Weston | WD3PF3CC1GP238181 | GJGB08 | Van | 2016 | Mercedes | Sprinter | Yes | $0.00 | N/A |
| 173 | Orlando | WD3PF3CC1GP209909 | EXF L54 | Van | 2016 | Mercedes | Sprinter | Yes | $0.00 | N/A |
| 96 | Sheridan | WD3PF0CD7GP215690 | EJPR08 | Van | 2016 | Mercedes | Sprinter | Yes | $0.00 | N/A |
| 178 | Orlando | 1C4HJXDG0JW182359 | NAPC71 | Jeep | 2018 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 179 | Orlando | 1C4HJXDG4JW317116 | NAPC70 | Jeep | 2018 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 181 | Orlando | 1C4HJXDG2JW317115 | NAP A94 | Jeep | 2018 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 196 | Fort Meyers | WD3PF0CD9GP209910 | EXFL55 | Van | 2016 | Mercedes | Sprinter | Yes | $0.00 | N/A |
| 198 | San Diego | 1C4HJXDG6KW596649 | LICR11 | Jeep | 2019 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 199 | San Diego | 1C4HJXDG3KW596642 | LICR13 | Jeep | 2019 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 201 | San Diego | 1C4HJXDG0KW596646 | LICR12 | Jeep | 2019 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 202 | Ontario | 1FDNF7DC4KDF03281 | 75050M3 | 26ft Truck | 2019 | Ford | F-750 | Yes | $0.00 | N/A |
| 207 | Ontario | 54DCDW1B5HS806769 | JAES57 | Beverage Truck | 2017 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 208 | Ontario | 54DCDW1B9KS802859 | LHYZ10 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 211 | Ontario | 54DCDW1B7JS809680 | KYZK70 | Beverage Truck | 2018 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 213 | Ontario | 54DCDW1B3HS804633 | IYKS07 | Beverage Truck | 2017 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 214 | Ontario | 54DCDW1B0JS810959 | KULQ79 | Beverage Truck | 2018 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 215 | Ontario | 54DCDW1B9JS809681 | KYZK69 | Beverage Truck | 2018 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 217 | Ontario | 54DCDW1B4JS809684 | KYZK68 | Beverage Truck | 2018 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 226 | Ontario | 54DCDW1B4KS803014 | LHYY16 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 238 | North LA | 1FDNF7DCXJDF04868 | NEN-A74 | 26ft Truck | 2018 | Ford | F-750 | Yes | $0.00 | N/A |
| 239 | North LA | 54DCDW1B3KS803070 | NAPB59 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 240 | North LA | 54DCDW1B2HS801514 | IMPH20 | Beverage Truck | 2017 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 241 | North LA | 54DCDW1B9JS810961 | KULQ78 | Beverage Truck | 2018 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 243 | North LA | 54DCDW1B9HS801509 | IMPH18 | Beverage Truck | 2017 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 244 | North LA | 54DCDW1B6HS800608 | IYKL75 | Beverage Truck | 2017 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 245 | North LA | 54DCDW1BXKS803874 | NAPD55 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 246 | North LA | 54DCDW1B4KS803188 | NAPB60 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 250 | North LA | 54DCDW1B4HS805760 | JAES56 | Beverage Truck | 2017 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 254 | South LA | 54DCDW1B3HS806768 | IYKS09 | Beverage Truck | 2017 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 257 | South LA | 54DCDW1B0HS800605 | IYKL76 | Beverage Truck | 2017 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 258 | South LA | 54DCDW1B1HS804632 | 1YKS06 | Beverage Truck | 2017 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 259 | South LA | 54DCDW1B4KS803191 | NAPC54 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 260 | South LA | 54DCDW1BXKS802966 | NAPB62 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 262 | South LA | 54DCDW1B9KS803901 | NAPD54 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 264 | South LA | 54DCDW1B7KS802892 | LHYZ23 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 265 | South LA | 54DCDW1B5KS802860 | LHYZ13 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 267 | East LA | 54DCDW1B3KS802887 | LHYZ16 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 268 | East LA | 54DCDW1B5KS802969 | NAPA96 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 270 | East LA | 54DCDW1B1KS802886 | LHYZ15 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | $0.00 | N/A |
| 299 | Dallas | 1C4HJXDN3MW613439 | QHQS24 | Jeep | 2021 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 300 | Dallas | 1C4HJXDN8MW613436 | QHQS22 | Jeep | 2021 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 303 | Dallas | 1C4HJXDN1MW613438 | QHQS20 | Jeep | 2021 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 304 | Houston | 1C4HJXDG4KW596651 | NAPD56 | Jeep | 2019 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 305 | Houston | 1C4HJXDG2KW596650 | NAPD57 | Jeep | 2019 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 310 | Las Vegas | 1C4HJXDG5KW596643 | LBQ-L44 | Jeep | 2019 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 311 | Las Vegas | 1C4HJXDG4KW596648 | LHYW67 | Jeep | 2019 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 312 | Las Vegas | 1C4HJXDG2KW596647 | LHYW66 | Jeep | 2019 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |

**Vital Pharmaceuticals, Inc.**

VPX Included Vehicle Fleet Summary (as at March 31, 2023)

With respect to the vehicles subject to the Hitachi liens, a per vehicle balance is not available. We took the entire amount outstanding and divided it by the number of vehicles associated with the outstanding balance to arrive at the loan balance for each vehicle.

99

| # | Facility / Lot Name | VIN # | Tag # | Asset Type | Year | Manufacturer | Model Name | Keep Vehicle? | Loan Balance (as at March 31, 2023) | Lienholder |
|---|---|---|---|---|---|---|---|---|---|---|
| 339 | Concord | 1C4HJXDG2JW272287 | LHYU95 | Jeep | 2018 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 342 | Concord | 1C4HJXDG2JW171654 | NAPA90 | Jeep | 2018 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| 343 | Concord | 1C4BJWDG9JL851228 | NAPA92 | Jeep | 2018 | Jeep | Wrangler Unlimited | Yes | $0.00 | N/A |
| | Tampa | WD3PF3CC6GP253730 | LVML36 | Van | 2016 | Mercedes | Sprinter | Yes | $0.00 | N/A |
| 42 | Tampa | 1C4HJXDNXLW223534 | NTZA06 | Jeep | 2020 | Jeep | Wrangler Unlimited | Yes | ($19,139.89) | Ally |
| 45 | Tampa | 1C4HJXDN2LW223530 | NTZA05 | Jeep | 2020 | Jeep | Wrangler Unlimited | Yes | ($19,139.89) | Ally |
| 48 | Tampa | 1C4HJXDN0LW223526 | NTZA07 | Jeep | 2020 | Jeep | Wrangler Unlimited | Yes | ($18,347.45) | Ally |
| 197 | Fort Meyers | 1FDNF7DC5KDF00518 | NTYY13 | 26ft Truck | 2019 | Ford | F-750 | Yes | ($42,179.25) | Ally |
| 203 | Ontario | 54DCDW1B9KS810685 | NTYY92 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | ($37,541.91) | GM |
| 204 | Ontario | 54DC4W1D6LS208314 | QVHN02 | Beverage Truck | 2020 | Isuzu | NPR HD | Yes | ($43,051.25) | Hitachi |
| 205 | Ontario | 54DC4W1D6LS208605 | QVHN23 | Beverage Truck | 2020 | Isuzu | NPR HD | Yes | ($42,261.08) | Hitachi |
| 206 | Ontario | 54DCDW1B6GS813311 | IHIP20 | Beverage Truck | 2016 | Chevrolet | 4500 | Yes | ($3,480.46) | Ally |
| 210 | Ontario | 54DCDW1B5GS813381 | IHIP18 | Beverage Truck | 2016 | Chevrolet | 4500 | Yes | ($3,480.46) | Ally |
| 212 | Ontario | 54DCDW1B9KS800934 | QDLR29 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | ($37,541.91) | GM |
| 216 | Ontario | 54DC4W1D9LS208498 | QHVN18 | Beverage Truck | 2020 | Isuzu | NPR HD | Yes | ($43,051.25) | Hitachi |
| 224 | Ontario | JALCDW162J7009023 | IYKU19 | Beverage Truck | 2018 | Chevrolet | 4500 | Yes | ($8,164.63) | GM |
| 228 | Ontario | JALCDW166J7008344 | IYKU15 | Beverage Truck | 2018 | Chevrolet | 4500 | Yes | ($8,164.63) | GM |
| 233 | Ontario | 1C4HJXDG2JW190074 | JSLX25 | Jeep | 2018 | Jeep | Wrangler Unlimited | Yes | ($3,200.48) | Ally |
| 236 | Ontario | 1C4HJXDN8LW223533 | NTZA08 | Jeep | 2020 | Jeep | Wrangler Unlimited | Yes | ($19,139.89) | Ally |
| 237 | Ontario | 1C4HJXDN7LW223524 | NTZA09 | Jeep | 2020 | Jeep | Wrangler Unlimited | Yes | ($19,139.89) | Ally |
| 242 | North LA | JALCDW169H7003312 | IYKU20 | Beverage Truck | 2017 | Chevrolet | 4500 | Yes | ($8,268.20) | GM |
| 247 | North LA | 54DC4W1D1LS208608 | QVHN26 | Beverage Truck | 2020 | Isuzu | NPR HD | Yes | ($42,261.08) | Hitachi |
| 248 | North LA | 54DC4W1D8LS208833 | QVHN38 | Beverage Truck | 2020 | Isuzu | NPR HD | Yes | ($42,261.08) | Hitachi |
| 249 | North LA | 54DCDW1B0JS805664 | KFLD85 | Beverage Truck | 2018 | Chevrolet | 3500/4500 | Yes | ($10,352.26) | GM |
| 251 | North LA | 54DCDW1B5JS803344 | KFLD65 | Beverage Truck | 2018 | Chevrolet | 3500/4500 | Yes | ($9,355.63) | GM |
| 256 | South LA | 54DCDW1B6JS802350 | JSL X13 | Beverage Truck | 2018 | Chevrolet | 3500/4500 | Yes | ($7,243.56) | GM |
| 261 | South LA | 54DCDW1B3JS802208 | KFLD64 | Beverage Truck | 2018 | Chevrolet | 3500/4500 | Yes | ($9,355.63) | GM |
| 263 | South LA | JALCDW162J7008065 | IYKU16 | Beverage Truck | 2018 | Chevrolet | 4500 | Yes | ($8,164.63) | GM |
| 269 | East LA | 54DCDW1B4KS809914 | NTYY76 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | ($34,848.38) | GM |
| 271 | East LA | 54DCDW1D0LS208826 | QHQS28 | Beverage Truck | 2020 | Chevrolet | 4500 | Yes | ($47,469.58) | GM |
| 272 | East LA | 54DCDW1B1JS802868 | KFLD68 | Beverage Truck | 2018 | Chevrolet | 3500/4500 | Yes | ($9,356.63) | GM |
| 273 | East LA | 54DCDW1B6JS802865 | KFLD67 | Beverage Truck | 2018 | Chevrolet | 3500/4500 | Yes | ($9,350.36) | GM |
| 274 | East LA | 54DCDW1B0KS810672 | NTYY94 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | ($35,235.45) | GM |
| 275 | East LA | 54DCDW1B6KS809915 | NTYY79 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | ($36,183.11) | GM |
| 276 | East LA | 54DCDW1D8LS209092 | QHQS18 | Beverage Truck | 2020 | Chevrolet | 4500 | Yes | ($47,469.58) | GM |
| 277 | East LA | 54DCDW1DXLS208882 | QHQS12 | Beverage Truck | 2020 | Chevrolet | 4500 | Yes | ($47,469.58) | GM |
| 278 | East LA | 54DCDW1B0JS805986 | KFLD84 | Beverage Truck | 2018 | Chevrolet | 3500/4500 | Yes | ($10,352.26) | GM |
| 279 | East LA | 54DCDW1B5KS810165 | NTYY98 | Beverage Truck | 2019 | Chevrolet | 3500/4500 | Yes | ($36,184.37) | GM |
| 280 | East LA | 54DCDW1B5JS802260 | JSLX16 | Beverage Truck | 2018 | Chevrolet | 3500/4500 | Yes | ($7,243.56) | GM |
| 285 | Dallas | 1C4BJWDG4JL896433 | KFWQ21 | Jeep | 2018 | Jeep | Wrangler Unlimited | Yes | ($10,693.00) | Chrysler |
| 287 | Dallas | 1C4HJXDN2LW223527 | NTYY09 | Jeep | 2020 | Jeep | Wrangler Unlimited | Yes | ($18,350.66) | Ally |
| 288 | Dallas | 1C4BJWDG3JL867442 | KFLD86 | Jeep | 2018 | Jeep | Wrangler Unlimited | Yes | ($4,368.73) | Ally |
| 306 | Houston | 1C4HJXDN4LW223528 | NMFU24 | Jeep | 2020 | Jeep | Wrangler Unlimited | Yes | ($18,350.66) | Ally |
| 316 | Phoenix | 1C4HJXDN1LW223535 | NMFU13 | Jeep | 2020 | Jeep | Wrangler Unlimited | Yes | ($18,350.66) | Ally |
| 318 | Phoenix | 1C4HJXDN9LW223525 | NMFU70 | Jeep | 2020 | Jeep | Wrangler Unlimited | Yes | ($18,350.66) | Ally |
| 320 | Phoenix | 1C4HJXDN6LW223529 | NMFU14 | Jeep | 2020 | Jeep | Wrangler Unlimited | Yes | ($18,350.66) | Ally |

## Section 1.1(c)
## Real Property Leases

1. Lease Agreement, dated February 11, 2019, by and between Vital Pharmaceuticals, Inc. and Duke Secured Financing 2009-1 PAC LLC (9550 Parksouth Ct. #300, Orlando, FL 32837). Vital Pharmaceuticals, Inc. is exiting this lease in June 2023 and the lease will be rejected in the Bankruptcy Case.

2. Lease Agreement, dated December 31, 2019, by and between Vital Pharmaceuticals, Inc. and Kearny Mesa West (San Diego), LLC (7292 Opportunity Rd., Suite E and Suite F, San Diego, CA). Vital Pharmaceuticals, Inc. is exiting this lease in June 2023 and the lease will be rejected in the Bankruptcy Case.

3. Lease Agreement, dated July 7, 2021, by and between Vital Pharmaceuticals, Inc. and Ranger H-TX LP (11707 S. Sam Houston Pkwy. W., Suite H, Houston, TX 77031). Vital Pharmaceuticals, Inc. is exiting this lease in June 2023 and the lease will be rejected in the Bankruptcy Case.

4. Lease Agreement, dated September 21, 2018, by and between Vital Pharmaceuticals, Inc. and CI DAL III-V, LLC (1601 Wallace Drive, Carrolton, TX 75006). Vital Pharmaceuticals, Inc. is exiting this lease in June 2023 and the lease will be rejected in the Bankruptcy Case.

5. Lease Agreement, dated April 1, 2020, by and between Vital Pharmaceuticals, Inc. and TGA Cactus DC II LLC (4747 W. Buckeye Rd., Phoenix, AZ).

6. Lease Agreement, dated May 8, 2019, by and between Vital Pharmaceuticals, Inc. and Rexford Industrial Realty L.P. (3042 E. Inland Empire Blvd. Suite A, Ontario, CA 91764).

7. Lease Agreement, dated May 20, 2019, by and between Vital Pharmaceuticals, Inc. and Prologis Targeted U.S. Logistics Fund, L.P. (10100 Aviation Blvd., Unit 200, Los Angeles, CA 90045).

8. Lease Agreement, dated June 21, 2019, by and between Vital Pharmaceuticals, Inc. and Icon Owner Pool 1 LA Non-Business Parks, LLC (11130 Sherman Way, North Hollywood, CA).

9. Lease Agreement, dated September 1, 2022, by and between Vital Pharmaceuticals, Inc. and Taro Patch Holdings, LLC (9052 Rosecrans Ave., Bellflower, CA 90706).

10. Lease Agreement, dated November 1, 2018, by and between Vital Pharmaceuticals, Inc. and Center Point Flex Owner LLC (1907-1911 US Highway 301 N, Suites D140-150, Tampa, FL 33610). Vital Pharmaceuticals, Inc. is exiting this lease in June 2023 and the lease will be rejected in the Bankruptcy Case.

11. Sublease Agreement, dated March 6, 2020, by and between Vital Pharmaceuticals, Inc. and Dogwood Propco FL, LP (1909 U.S. Highway 301 North, Suite D160, Tampa, FL). Vital Pharmaceuticals, Inc. is exiting this lease in June 2023 and the lease will be rejected in the Bankruptcy Case.

12. Lease Agreement, dated May 1, 2019, by and between Vital Pharmaceuticals, Inc. and K.P. Properties of Ohio LLC (3520 Old Metro Parkway, Fort Myers, FL 33916). Vital Pharmaceuticals, Inc. exited this lease in May 2023 and the lease will be rejected in the Bankruptcy Case.

13. Lease Agreement, dated April 1, 2019, by and between Vital Pharmaceuticals, Inc. d/b/a Bang Energy and EastGroup Properties, L.P. (7950 Central Industrial Dr., Suite 102-104, Riviera Beach, FL 33404). Vital Pharmaceuticals, Inc. is exiting this lease in June 2023 and the lease will be rejected in the Bankruptcy Case.

14. Lease Agreement, dated March 15, 2019, by and between Vital Pharmaceuticals, Inc. and CK Afton Ridge II, LLC (6100-T Glen Afton Blvd., Concord, NC 28027).

15. Lease Agreement, dated October 22, 2019, by and between Vital Pharmaceuticals, Inc. and Everman Trade Center, L.P. (160 W Everman Freeway, Ft. Worth, TX 76134).

16. Lease Agreement, dated July 23, 2019, by and between Vital Pharmaceuticals, Inc. d/b/a Bang Energy, LLC and PPF Lincoln Medley, LLC (12600 NW 115 Ave., Medley, FL 33916). Vital Pharmaceuticals, Inc. is exiting this lease in June 2023 and the lease will be rejected in the Bankruptcy Case.

17. Lease Agreement, dated June 21, 2019, by and between Vital Pharmaceuticals, Inc. and ICON Owner Pool I LA Non-Business Parks, LLC c/o GLP US Management LLC (11130 Sherman Way, North Hollywood, CA 91352).

18. Lease Agreement, dated April 21, 2022, by and between Vital Pharmaceuticals, Inc. and 1600FLL LLC (1600 North Park Drive, Weston, FL 33326).

19. Lease Agreement, dated December 31, 2021, by and between Vital Pharmaceuticals, Inc. and EVOX FL Pembroke 20351 LLC (20351 Sheridan Street, Pembroke Pines, Florida 33332). Vital Pharmaceuticals, Inc. exited this lease in May 2023 and the lease will be rejected in the Bankruptcy Case.

20. Item 2 under "Intercompany Lease Agreements" in <u>Section 5.20</u> of this Disclosure Schedule is incorporated by reference herein, which may be rejected in the Bankruptcy Case.

**Section 2.1(d)**
**Assumed Agreements**

To be completed prior to the Closing in accordance with the Agreement.

**Section 2.1(e)**
**Assumed Real Property Leases**

1. Lease Agreement, dated April 1, 2020, by and between Vital Pharmaceuticals, Inc. and TGA Cactus DC II LLC (4747 W. Buckeye Rd., Phoenix, AZ).

2. Lease Agreement, dated April 21, 2022, by and between Vital Pharmaceuticals, Inc. and 1600FLL LLC (1600 North Park Drive, Weston, FL 33326).

**Section 2.1(f)**
**Owned Real Property**

| Owner | Property Name | Address |
|---|---|---|
| JHO Real Estate Investment, LLC | Phoenix Manufacturing Plant | 1635 43rd Avenue, Phoenix, AZ 85009 |

This is the only Owned Real Property to be transferred as part of the Transactions.

11

**Section 2.1(h)**
**Personal Property Assets**

1.  See <u>Schedule 2.1(h) (FL and Phoenix Equipment List)</u> attached.
2.  See <u>Schedule 2.1(h) (Additional Fixed Assets)</u> attached.
3.  The vehicles listed on <u>Schedule 1.1(b)</u>, and subject to the Permitted Encumbrances listed on <u>Schedule 1.1(b)</u>.

**Schedule 2.1(h)**

**FL and Phoenix Equipment List**

(see attached)

| Florida & Phoenix Plant/Warehouse | |
|---|---|
| **Cost Center** | **Acquisition Value** |
| New 1951 with WMS - JDA | 13,863.70 |
| 1600 HQ | 2,454,343.59 |
| Buckeye Phoenix Warehouse | 125,342.97 |
| DSD - (Ontario) | 23,397.05 |
| DSD - Fort Myers | 11,440.82 |
| DSD - Jacksonville | 11,465.82 |
| DSD - Medley | 23,258.58 |
| DSD - Riviera Beach | 11,465.82 |
| DSD - SE (Orlando) | 23,524.12 |
| DSD - SE (Tampa) | 11,540.82 |
| I.T. | 15,685.28 |
| IT | 27,000.00 |
| Phoenix Plant | 39,269,611.16 |
| Production PHX | 8,793,611.66 |
| Quality Control PHX | 119,799.80 |
| Sheridan Building | 27,754,897.41 |
| Weston 1600 | 4,167,958.54 |
| WSH Weston 1600 | 15,086,813.72 |
| **Total** | **97,945,020.86** |

| | | | | Fixed Assets – Inventory List | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fixed Asset Class | Fixed Asset Class (Text) | Fixed Asset | Fixed Asset (Text) | Report End Date | Additional Parameters (Initial Acquisition Date) | Additional Parameters (Useful Life - Years) | Depreciation End Date | Remaining Useful (in Months) | Cost Center | Cost Center (Text) | Acquisition Value | Planned Net book Value |
| 2000 | Warehousing Equipment | 1696-0 | 401Z90 100 LB. DIGITAL LED PLATFOR | 28-Feb-23 | 10-Feb-20 | 5 | 10-Feb-25 | 24 | 1000US3BP | Buckeye Phoenix Warehouse | 1,734.91 USD | 664.00 USD |
| 2000 | Warehousing Equipment | 1726-0 | Orlando Racks | 28-Feb-23 | 31-Jan-20 | 10 | 31-Jan-25 | 23 | 1213 | DSD - SE (Orlando) | 12,083.30 USD | 8,254.00 USD |
| 2000 | Warehousing Equipment | 1774-0 | YALE MSW025 -H  WALKIE STRADDLE STACKER | 28-Feb-23 | 18-May-20 | 5 | 18-May-25 | 27 | 1000US3BP | Buckeye Phoenix Warehouse | 23,504.30 USD | 10,184.00 USD |
| 2000 | Warehousing Equipment | 1910-0 | RF Scanner 20054D826E | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.12 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1911-0 | RF Scanner 20054D81F6 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 19114-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19115-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19116-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |

| 2000 | Warehousing Equipment | 19117-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19118-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19119-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 1912-0 | RF Scanner 20054D81BB | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 19120-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19121-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19122-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19123-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19124-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19125-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.64 USD | 0.00 USD |

| 2000 | Warehousing Equipment | 19126-0 | PM43A Warehouse Label Printer | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,532.80 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19127-0 | PM43A Warehouse Label Printer | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,532.80 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19128-0 | PM43A Warehouse Label Printer | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,532.79 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19129-0 | PM43A Warehouse Label Printer | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,532.80 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 1913-0 | RF Scanner 20054D8192 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 19130-0 | PM43A Warehouse Label Printer | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,532.79 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19131-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19132-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19133-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19134-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |

| 2000 | Warehousing Equipment | 19135-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
|------|------------------------|---------|----------------------------|-----------|-----------|---|-----------|----|------|-------------|--------------|----------|
| 2000 | Warehousing Equipment | 19136-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19137-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19138-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 19139-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.65 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 1914-0 | RF Scanner 20054D8176 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 19140-0 | CK65  RF Warehouse Scanner | 28-Feb-23 | 12-Nov-20 | 3 | 12-Nov-25 | 33 | 1156 | Weston 1600 | 1,643.64 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 1915-0 | RF Scanner 20054D8147 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1916-0 | RF Scanner 20054D813D | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1917-0 | RF Scanner 20054D8135 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |

| 2000 | Warehousing Equipment | 1918-0 | RF Scanner 20054D811B | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
|------|----------------------|--------|----------------------|-----------|-----------|---|-----------|----|-----------|-------------------------|--------------|-------------|
| 2000 | Warehousing Equipment | 1919-0 | RF Scanner 20054D8113 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1920-0 | RF Scanner 20054D810C | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1921-0 | RF Scanner 20054D80D2 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1922-0 | RF Scanner 20054D80D1 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1923-0 | RF Scanner 20054D80D0 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1924-0 | RF Scanner 20054D8099 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1925-0 | RF Scanner 20053D82A6 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1926-0 | RF Scanner 20053D8295 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1927-0 | RF Scanner 20053D81F9 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |

| 2000 | Warehousing Equipment | 1928-0 | RF Scanner 20053D81F7 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2000 | Warehousing Equipment | 1929-0 | RF Scanner 20053D81F6 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1930-0 | RF Scanner 20053D81E9 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1931-0 | RF Scanner 20053D81D7 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1932-0 | RF Scanner 20053D81C7 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1933-0 | RF Scanner 20053D81C5 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1934-0 | RF Scanner 20053D8190 | 28-Feb-23 | 24-Jun-20 | 3 | 24-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 2,349.21 USD | 193.00 USD |
| 2000 | Warehousing Equipment | 1935-0 | Yale® MPB045VG lift truck 4,500 lb. | 28-Feb-23 | 29-Jun-20 | 10 | 29-Jun-25 | 28 | 1000US3BP | Buckeye Phoenix Warehouse | 13,683.60 USD | 9,918.00 USD |
| 2000 | Warehousing Equipment | 1936-0 | VIBRATORY FEEDER #HD56-12"WIDE X 38" | 28-Feb-23 | 30-Jun-20 | 10 | 30-Jun-25 | 28 | 1156 | Weston 1600 | 10,350.30 USD | 6,465.00 USD |
| 2000 | Warehousing Equipment | 40409-0 | PHX-QuickDesign V5 Software and Panel | 28-Feb-23 | 28-May-21 | 10 | 28-May-26 | 40 | 1000USPHX | Phoenix Plant | 14,589.74 USD | 12,035.00 USD |

| 2000 | Warehousing Equipment | 40416-0 | PHX PRO-4006-L Pallet Wrapper | 28-Feb-23 | 28-Jun-21 | 10 | 28-Jun-26 | 41 | 1000USPHX | Phoenix Plant | 9,230.00 USD | 8,153.00 USD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2000 | Warehousing Equipment | 40417-0 | PHX PRO-4006-L Pallet Wrapper | 28-Feb-23 | 28-Jun-21 | 10 | 28-Jun-26 | 41 | 1000USPHX | Phoenix Plant | 9,230.00 USD | 8,153.00 USD |
| 2000 | Warehousing Equipment | 40418-0 | Buckeye WH PRO-4006-L Pallet Wrapper | 28-Feb-23 | 18-Nov-21 | 10 | 18-Nov-26 | 45 | 1000US3BP | Buckeye Phoenix Warehouse | 9,230.00 USD | 7,999.00 USD |
| 2000 | Warehousing Equipment | 40419-0 | Buckeye WH PRO-4006-L Pallet Wrapper | 28-Feb-23 | 18-Nov-21 | 10 | 18-Nov-26 | 45 | 1000US3BP | Buckeye Phoenix Warehouse | 9,230.00 USD | 7,999.00 USD |
| 2000 | Warehousing Equipment | 40420-0 | Buckeye WH PRO-4006-L Pallet Wrapper | 28-Feb-23 | 18-Nov-21 | 10 | 18-Nov-26 | 45 | 1000US3BP | Buckeye Phoenix Warehouse | 9,230.00 USD | 7,999.00 USD |
| 2000 | Warehousing Equipment | 40422-0 | 988295  Spring  Lift Table | 28-Feb-23 | 6-Jul-21 | 10 | 6-Jul-26 | 41 | 1000USPHX | Phoenix Plant | 0.00 USD | 0.00 USD |
| 2000 | Warehousing Equipment | 40430-0 | Shrink Wrap Machine HDX-350 | 28-Feb-23 | 1-Jul-21 | 10 | 1-Jul-26 | 41 | 1000US1951 | New 1951 with WMS - JDA | 13,863.70 USD | 11,551.00 USD |
| 2000 | Warehousing Equipment | 40439-0 | Shrink Wrap Machine HDX-350 | 28-Feb-23 | 18-Aug-21 | 10 | 18-Aug-26 | 42 | 1000USPHX | Phoenix Plant | 13,005.00 USD | 10,945.00 USD |
| 2000 | Warehousing Equipment | 40552-0 | ELECTRIC HYDRAULIC SCISSOR LIFT - 100A10 | 28-Feb-23 | 6-Jan-22 | 10 | 6-Jan-27 | 47 | 1000USPHX | Phoenix Plant | 3,040.80 USD | 2,685.00 USD |
| 2000 | Warehousing Equipment | 40553-0 | ELECTRIC HYDRAULIC SCISSOR LIFT - 100A10 | 28-Feb-23 | 6-Jan-22 | 10 | 6-Jan-27 | 47 | 1000USPHX | Phoenix Plant | 3,040.80 USD | 2,685.00 USD |

| 2100 | General Factory Machinery and Equipment | 1199-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.64 USD | 15,368.00 USD |
| 2100 | General Factory Machinery and Equipment | 1200-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.64 USD | 15,368.00 USD |
| 2100 | General Factory Machinery and Equipment | 1201-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.64 USD | 15,368.00 USD |
| 2100 | General Factory Machinery and Equipment | 1202-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.63 USD | 15,368.00 USD |
| 2100 | General Factory Machinery and Equipment | 1203-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.63 USD | 15,368.00 USD |
| 2100 | General Factory Machinery and Equipment | 12033-0 | APG Blending Process System - Phoenix | 28-Feb-23 | 23-Sep-20 | 10 | 23-Sep-25 | 31 | 1140PHX | Production PHX | 8,793,611.66 USD | 6,595,206.00 USD |
| 2100 | General Factory Machinery | 1204-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.63 USD | 15,368.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 1205-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.63 USD | 15,368.00 USD |
| 2100 | General Factory Machinery and Equipment | 1206-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.63 USD | 15,368.00 USD |
| 2100 | General Factory Machinery and Equipment | 1207-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.63 USD | 15,368.00 USD |
| 2100 | General Factory Machinery and Equipment | 1208-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.63 USD | 15,368.00 USD |
| 2100 | General Factory Machinery and Equipment | 1209-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.63 USD | 15,368.00 USD |
| 2100 | General Factory Machinery and Equipment | 1210-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.63 USD | 15,368.00 USD |

| 2100 | General Factory Machinery and Equipment | 1211-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.63 USD | 15,368.00 USD |
| 2100 | General Factory Machinery and Equipment | 1212-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.63 USD | 15,368.00 USD |
| 2100 | General Factory Machinery and Equipment | 1213-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.63 USD | 15,368.00 USD |
| 2100 | General Factory Machinery and Equipment | 1214-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.63 USD | 15,368.00 USD |
| 2100 | General Factory Machinery and Equipment | 1215-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.63 USD | 15,368.00 USD |
| 2100 | General Factory Machinery and Equipment | 1216-0 | YALE FORK LIFT MODEL: ERC060VG | 28-Feb-23 | 1-Oct-19 | 5 | 1-Oct-24 | 19 | 1155 | WSH Weston 1600 | 48,536.63 USD | 15,368.00 USD |
| 2100 | General Factory Machinery | 1220-0 | Video Jet | 28-Feb-23 | 1-Sep-19 | 10 | 1-Sep-24 | 18 | 1115 | I.T. | 15,685.28 USD | 10,193.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | |
|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 1221-0 | BANG REFRIGERATED BARREL COOLER | 28-Feb-23 | 1-Sep-19 | 10 | 1-Sep-24 | 18 | 1155 | WSH Weston 1600 | 489,247.92 USD | 318,009.00 USD |
| 2100 | General Factory Machinery and Equipment | 1222-0 | Touch Display | 28-Feb-23 | 1-Sep-19 | 10 | 1-Sep-24 | 18 | 1155 | WSH Weston 1600 | 5,796.18 USD | 3,765.00 USD |
| 2100 | General Factory Machinery and Equipment | 1297-0 | Bar Line-Mini Conbar line 300/400 | 28-Feb-23 | 1-Nov-19 | 10 | 1-Nov-24 | 20 | 1155 | WSH Weston 1600 | 107,517.26 USD | 96,139.00 USD |
| 2100 | General Factory Machinery and Equipment | 1298-0 | Combi Alphapack | 28-Feb-23 | 1-Nov-19 | 10 | 1-Nov-24 | 20 | 1155 | WSH Weston 1600 | 193,800.00 USD | 161,500.00 USD |
| 2100 | General Factory Machinery and Equipment | 1299-0 | Bang Shotline | 28-Feb-23 | 1-Nov-19 | 10 | 1-Nov-24 | 20 | 1155 | WSH Weston 1600 | 146,025.00 USD | 121,685.00 USD |
| 2100 | General Factory Machinery and Equipment | 1402-0 | BANGER AIR PULSE SYSTEM | 28-Feb-23 | 17-Dec-19 | 5 | 17-Dec-24 | 22 | 1156 | Weston 1600 | 5,900.00 USD | 2,064.00 USD |

| 2100 | General Factory Machinery and Equipment | 1403-0 | DUST COLLECTOR | 28-Feb-23 | 17-Dec-19 | 5 | 17-Dec-24 | 22 | 1156 | Weston 1600 | 11,935.00 USD | 4,177.00 USD |
| 2100 | General Factory Machinery and Equipment | 1405-0 | 7.5" wide conveyor | 28-Feb-23 | 23-Dec-19 | 5 | 23-Dec-24 | 22 | 1000USHQ | 1600 HQ | 4,887.50 USD | 1,709.00 USD |
| 2100 | General Factory Machinery and Equipment | 1458-0 | PHASE 1-SITEPREPMUNSON | 28-Feb-23 | 14-Dec-19 | 10 | 14-Dec-24 | 22 | 1000USHQ | 1600 HQ | 48,000.00 USD | 32,400.00 USD |
| 2100 | General Factory Machinery and Equipment | 1550-0 | KARCHER CHARIOT 2019 - EQ248655-1 | 28-Feb-23 | 30-Dec-19 | 5 | 30-Dec-24 | 22 | 1212 | DSD - (Ontario) | 11,604.29 USD | 4,060.00 USD |
| 2100 | General Factory Machinery and Equipment | 1553-0 | KARCHER CHARIOT - EQ248636-1 | 28-Feb-23 | 30-Dec-19 | 5 | 30-Dec-24 | 22 | 1219 | DSD - Medley | 11,465.82 USD | 4,009.00 USD |
| 2100 | General Factory Machinery and Equipment | 1615-0 | KARCHER CHARIOT - EQ248633-1 | 28-Feb-23 | 30-Dec-19 | 5 | 30-Dec-24 | 22 | 1219 | DSD - Medley | 11,792.76 USD | 4,125.00 USD |
| 2100 | General Factory Machinery | 1616-0 | KARCHER CHARIOT - EQ248657-1 | 28-Feb-23 | 30-Dec-19 | 5 | 30-Dec-24 | 22 | 1225 | DSD - Jacksonville | 11,465.82 USD | 4,009.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | | |
|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 1617-0 | KARCHER CHARIOT - EQ248637-1 | 28-Feb-23 | 30-Dec-19 | 10 | 30-Dec-24 | 22 | 1222 | DSD - Fort Myers | 11,440.82 USD | 7,719.00 USD |
| 2100 | General Factory Machinery and Equipment | 1618-0 | KARCHER CHARIOT - EQ248635-1 | 28-Feb-23 | 30-Dec-19 | 5 | 30-Dec-24 | 22 | 1223 | DSD - Riviera Beach | 11,465.82 USD | 4,009.00 USD |
| 2100 | General Factory Machinery and Equipment | 1619-0 | KARCHER CHARIOT - EQ248659-1 | 28-Feb-23 | 30-Dec-19 | 5 | 30-Dec-24 | 22 | 1212 | DSD - (Ontario) | 11,792.76 USD | 4,125.00 USD |
| 2100 | General Factory Machinery and Equipment | 1620-0 | KARCHER CHARIOT - EQ248632-1 | 28-Feb-23 | 30-Dec-19 | 5 | 30-Dec-24 | 22 | 1214 | DSD - SE (Tampa) | 11,540.82 USD | 4,036.00 USD |
| 2100 | General Factory Machinery and Equipment | 1621-0 | KARCHER CHARIOT - EQ248634-1 | 28-Feb-23 | 30-Dec-19 | 5 | 30-Dec-24 | 22 | 1213 | DSD - SE (Orlando) | 11,440.82 USD | 4,001.00 USD |
| 2100 | General Factory Machinery and Equipment | 1622-0 | OIL-FREEROTARY SCREW SULLAIR | 28-Feb-23 | 28-Jan-20 | 5 | 28-Jan-25 | 23 | 1000USHQ | 1600 HQ | 66,533.62 USD | 24,395.00 USD |

| 2100 | General Factory Machinery and Equipment | 1623-0 | OIL-FREEROTARY SCREW SULLAIR | 28-Feb-23 | 28-Jan-20 | 5 | 28-Jan-25 | 23 | 1000USHQ | 1600 HQ | 66,533.62 USD | 24,395.00 USD |
| 2100 | General Factory Machinery and Equipment | 1626-0 | GravityConvectionIncubator - 895411-420 | 28-Feb-23 | 29-Jan-20 | 5 | 29-Jan-25 | 23 | 1000USPHX | Phoenix Plant | 2,585.96 USD | 945.00 USD |
| 2100 | General Factory Machinery and Equipment | 1627-0 | GravityConvectionIncubator - 895411-420 | 28-Feb-23 | 29-Jan-20 | 5 | 29-Jan-25 | 23 | 1000USPHX | Phoenix Plant | 2,585.99 USD | 945.00 USD |
| 2100 | General Factory Machinery and Equipment | 1628-0 | MILL/DRILL MACHINE - 2LKR1 | 28-Feb-23 | 31-Dec-19 | 5 | 31-Dec-24 | 22 | 1000USPHX | Phoenix Plant | 0.00 USD | -1,985.82 USD |
| 2100 | General Factory Machinery and Equipment | 1629-0 | WELDER - 40JC22 | 28-Feb-23 | 31-Dec-19 | 5 | 31-Dec-24 | 22 | 1000USPHX | Phoenix Plant | 0.00 USD | -624.59 USD |
| 2100 | General Factory Machinery and Equipment | 1630-0 | HYDRAULIC PRESS - 467L09 | 28-Feb-23 | 31-Dec-19 | 5 | 31-Dec-24 | 22 | 1000USPHX | Phoenix Plant | 1,543.31 USD | 538.00 USD |
| 2100 | General Factory Machinery | 1685-0 | MIG WELDER 120/240VAC | 28-Feb-23 | 31-Dec-19 | 5 | 31-Dec-24 | 22 | 1000USHQ | 1600 HQ | 1,542.19 USD | 537.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | | |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 1686-0 | MILL/DRILL MACHINE 16 IN | 28-Feb-23 | 31-Dec-19 | 5 | 31-Dec-24 | 22 | 1000USHQ | 1600 HQ | 4,897.10 USD | 1,711.00 USD |
| 2100 | General Factory Machinery and Equipment | 1687-0 | ICE MAKER | 28-Feb-23 | 31-Dec-19 | 5 | 31-Dec-24 | 22 | 1000USHQ | 1600 HQ | 3,046.91 USD | 1,064.00 USD |
| 2100 | General Factory Machinery and Equipment | 1688-0 | VERTICAL BAND SAW | 28-Feb-23 | 31-Dec-19 | 5 | 31-Dec-24 | 22 | 1000USHQ | 1600 HQ | 3,356.38 USD | 1,172.00 USD |
| 2100 | General Factory Machinery and Equipment | 1689-0 | ICE MAKER | 28-Feb-23 | 31-Dec-19 | 5 | 31-Dec-24 | 22 | 1000USHQ | 1600 HQ | 3,070.93 USD | 1,071.00 USD |
| 2100 | General Factory Machinery and Equipment | 1690-0 | REFRIGERATOR TOP FREEZER | 28-Feb-23 | 31-Dec-19 | 5 | 31-Dec-24 | 22 | 1000USHQ | 1600 HQ | 1,000.06 USD | 346.00 USD |
| 2100 | General Factory Machinery and Equipment | 1691-0 | REFRIGERATOR TOP FREEZER | 28-Feb-23 | 31-Dec-19 | 5 | 31-Dec-24 | 22 | 1000USHQ | 1600 HQ | 1,000.07 USD | 346.00 USD |

| 2100 | General Factory Machinery and Equipment | 1692-0 | REFRIGERATOR TOP FREEZER | 28-Feb-23 | 31-Dec-19 | 5 | 31-Dec-24 | 22 | 1000USHQ | 1600 HQ | 1,000.07 USD | 346.00 USD |
|------|------|--------|------|------|------|---|------|----|----------|---------|------|------|
| 2100 | General Factory Machinery and Equipment | 1693-0 | REFRIGERATOR TOP FREEZER | 28-Feb-23 | 31-Dec-19 | 5 | 31-Dec-24 | 22 | 1000USHQ | 1600 HQ | 1,000.07 USD | 346.00 USD |
| 2100 | General Factory Machinery and Equipment | 1695-0 | 97787 Abbemat 550 Automatic | 28-Feb-23 | 28-Jan-20 | 5 | 28-Jan-25 | 23 | 1132PHX | Quality Control PHX | 16,357.44 USD | 5,995.00 USD |
| 2100 | General Factory Machinery and Equipment | 1697-0 | 29164010 Food Ti-Touch | 28-Feb-23 | 10-Feb-20 | 5 | 10-Feb-25 | 24 | 1132PHX | Quality Control PHX | 11,140.30 USD | 4,267.00 USD |
| 2100 | General Factory Machinery and Equipment | 1698-0 | 168M6-BS100 Microsart 6place Manifold | 28-Feb-23 | 19-Feb-20 | 10 | 19-Feb-25 | 24 | 1132PHX | Quality Control PHX | 3,921.86 USD | 2,710.00 USD |
| 2100 | General Factory Machinery and Equipment | 1699-0 | 16994-1-60-22 Microsart maxi vac | 28-Feb-23 | 19-Feb-20 | 10 | 19-Feb-25 | 24 | 1132PHX | Quality Control PHX | 1,146.67 USD | 791.00 USD |
| 2100 | General Factory Machinery | 1733-0 | 45750 PFD Filling Device | 28-Feb-23 | 24-Feb-20 | 10 | 24-Feb-25 | 24 | 1132PHX | Quality Control PHX | 5,871.30 USD | 4,058.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | | |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 1734-0 | 107627 - CBOXQC Combined CO2 and O2 Mete | 28-Feb-23 | 18-Feb-20 | 10 | 18-Feb-25 | 24 | 1132PHX | Quality Control PHX | 25,016.64 USD | 17,302.00 USD |
| 2100 | General Factory Machinery and Equipment | 1735-0 | GF8K - INDUSTRIAL BALANCE | 28-Feb-23 | 31-Jan-20 | 5 | 31-Jan-25 | 23 | 1000USHQ | 1600 HQ | 2,653.48 USD | 971.00 USD |
| 2100 | General Factory Machinery and Equipment | 1736-0 | GF8K - INDUSTRIAL BALANCE | 28-Feb-23 | 31-Jan-20 | 5 | 31-Jan-25 | 23 | 1000USHQ | 1600 HQ | 2,809.41 USD | 1,029.00 USD |
| 2100 | General Factory Machinery and Equipment | 1737-0 | OHAUS ADVENTURER AX124/E SCALE | 28-Feb-23 | 1-Jan-20 | 5 | 1-Jan-25 | 22 | 1000USHQ | 1600 HQ | 2,703.94 USD | 990.00 USD |
| 2100 | General Factory Machinery and Equipment | 1738-0 | FLOOR DRILL PRESS BELT - 35GW7 | 28-Feb-23 | 27-Feb-20 | 10 | 27-Feb-25 | 24 | 1000USPHX | Phoenix Plant | 3,129.85 USD | 2,164.00 USD |
| 2100 | General Factory Machinery and Equipment | 1743-0 | G4290B-1220Infinit2IGradientLCSyVL-wPC&m | 28-Feb-23 | 5-Mar-20 | 5 | 5-Mar-25 | 25 | 1132PHX | Quality Control PHX | 40,505.59 USD | 16,200.00 USD |

| 2100 | General Factory Machinery and Equipment | 1744-0 | M8411AA OpenLab CDS Workstation | 28-Feb-23 | 5-Mar-20 | 5 | 5-Mar-25 | 25 | 1132PHX | Quality Control PHX | 15,840.00 USD | 6,336.00 USD |
| 2100 | General Factory Machinery and Equipment | 1747-0 | SUPER SEAL 100 | 28-Feb-23 | 27-Mar-20 | 5 | 27-Mar-25 | 25 | 1000USHQ | 1600 HQ | 12,199.38 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 1773-0 | ELECTRIC DTP VAPORIZER INSTALL | 28-Feb-23 | 8-May-20 | 10 | 8-May-25 | 27 | 1000USHQIT | IT | 27,000.00 USD | 19,350.00 USD |
| 2100 | General Factory Machinery and Equipment | 1777-0 | HARDWARE & SOFTWARE | 28-Feb-23 | 28-May-20 | 3 | 28-May-25 | 27 | 1000USHQ | 1600 HQ | 0.00 USD | -12,063.82 USD |
| 2100 | General Factory Machinery and Equipment | 1858-0 | QuickFlex 2100 G3 #QF21G3-111 | 28-Feb-23 | 31-May-20 | 10 | 31-May-25 | 27 | 1156 | Weston 1600 | 1,200,000.00 USD | 1,200,000.00 USD |
| 2100 | General Factory Machinery and Equipment | 186-0 | Superior - New Racking Equipment | 28-Feb-23 | 1-Nov-10 | 10 | 1-Nov-15 | Complete | 1155 | WSH Weston 1600 | 12,321.37 USD | 0.00 USD |
| 2100 | General Factory Machinery | 1860-0 | QuickFlex 2100 G3 #QF21G3-108 | 28-Feb-23 | 31-May-20 | 10 | 31-May-25 | 27 | 1156 | Weston 1600 | 1,232,883.85 USD | 1,232,883.85 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | | |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 187-0 | Reiser Equipment - Extrudes in Barline | 28-Feb-23 | 1-Jan-13 | 7 | 1-Jan-18 | Complete | 1155 | WSH Weston 1600 | 12,722.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 188-0 | Agilent Tech Equip Refurbish for the Lab | 28-Feb-23 | 1-Jan-13 | 7 | 1-Jan-18 | Complete | 1155 | WSH Weston 1600 | 63,192.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 189-0 | VWR Sheldon Incubator | 28-Feb-23 | 1-Jan-13 | 7 | 1-Jan-18 | Complete | 1155 | WSH Weston 1600 | 2,100.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 18925-0 | DHA Two-Head Filler and CheckWeigher | 28-Feb-23 | 13-Oct-20 | 10 | 13-Oct-25 | 32 | 1156 | Weston 1600 | 131,380.00 USD | 99,629.00 USD |
| 2100 | General Factory Machinery and Equipment | 18996-0 | R322 Labeling System | 28-Feb-23 | 15-Oct-20 | 10 | 15-Oct-25 | 32 | 1156 | Weston 1600 | 48,009.12 USD | 36,405.00 USD |
| 2100 | General Factory Machinery and Equipment | 190-0 | Xstream Hood | 28-Feb-23 | 1-Jan-13 | 7 | 1-Jan-18 | Complete | 1155 | WSH Weston 1600 | 8,090.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 19030-0 | Packer w/Shrink Wrapper & Heat Tunnel | 28-Feb-23 | 20-Oct-20 | 10 | 20-Oct-25 | 32 | 1156 | Weston 1600 | 375,000.00 USD | 287,500.00 USD |
| 2100 | General Factory Machinery and Equipment | 19031-0 | Vac-U-Max Pneumatic Conveying System | 28-Feb-23 | 22-Oct-20 | 10 | 22-Oct-25 | 32 | 1156 | Weston 1600 | 385,152.16 USD | 275,039.00 USD |
| 2100 | General Factory Machinery and Equipment | 191-0 | Used Labelstar wrap labeler used in powd | 28-Feb-23 | 1-Jan-13 | 7 | 1-Jan-18 | Complete | 1155 | WSH Weston 1600 | 13,000.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 192-0 | Super Seal junior Ser#LM5070-010089 | 28-Feb-23 | 1-Jan-13 | 10 | 1-Jan-18 | Complete | 1155 | WSH Weston 1600 | 4,234.70 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 193-0 | Belt Bottom Coding Trsf System Pkg | 28-Feb-23 | 1-Jan-13 | 10 | 1-Jan-18 | Complete | 1155 | WSH Weston 1600 | 4,643.80 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 194-0 | Super Seal 100 System Ser#LM5022-2220071 | 28-Feb-23 | 1-Feb-13 | 10 | 1-Feb-18 | Complete | 1155 | WSH Weston 1600 | 11,124.70 USD | 0.00 USD |
| 2100 | General Factory Machinery | 195-0 | VORTI-SIV Model RVN-15E S/N 1522E | 28-Feb-23 | 1-Feb-13 | 10 | 1-Feb-18 | Complete | 1155 | WSH Weston 1600 | 5,060.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | | |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 196-0 | Machine Parts | 28-Feb-23 | 1-Feb-13 | 10 | 1-Feb-18 | Complete | 1155 | WSH Weston 1600 | 12,620.63 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 197-0 | Vorti-SIV Model RVM-15E S/N 15522E +Cone | 28-Feb-23 | 1-Mar-13 | 10 | 1-Mar-18 | Complete | 1155 | WSH Weston 1600 | 6,000.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 198-0 | Machine Parts | 28-Feb-23 | 1-Mar-13 | 10 | 1-Mar-18 | Complete | 1155 | WSH Weston 1600 | 7,735.20 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 1985-0 | SEAMscan SPC System - CMCKUHNKE | 28-Feb-23 | 1-Jul-20 | 10 | 1-Jul-25 | 28 | 1000USPHX | Phoenix Plant | 32,886.75 USD | 24,115.00 USD |
| 2100 | General Factory Machinery and Equipment | 199-0 | Bullet Set & Assembly | 28-Feb-23 | 1-Apr-13 | 10 | 1-Apr-18 | Complete | 1155 | WSH Weston 1600 | 1,243.90 USD | 4.00 USD |
| 2100 | General Factory Machinery and Equipment | 1991-0 | Krones Line 1 PHX | 28-Feb-23 | 1-Jul-20 | 10 | 1-Jul-25 | 28 | 1000USPHX | Phoenix Plant | 15,464,730.36 USD | 11,460,947.00 USD |

| 2100 | General Factory Machinery and Equipment | 200-0 | Lane Tray Feeder/ Denester | 28-Feb-23 | 1-Apr-13 | 10 | 1-Apr-18 | Complete | 1155 | WSH Weston 1600 | 15,000.00 USD | 108.00 USD |
| 2100 | General Factory Machinery and Equipment | 201-0 | To set up AC Handling unit | 28-Feb-23 | 1-Apr-13 | 10 | 1-Apr-18 | Complete | 1155 | WSH Weston 1600 | 18,157.80 USD | 203.00 USD |
| 2100 | General Factory Machinery and Equipment | 2012-0 | CO2,CO, Propane Monitoring Equip. | 28-Feb-23 | 1-Aug-20 | 10 | 1-Aug-25 | 30 | 1156 | Weston 1600 | 27,412.99 USD | 20,329.00 USD |
| 2100 | General Factory Machinery and Equipment | 202-0 | Custom Guilotine for Bar Line | 28-Feb-23 | 1-May-13 | 10 | 1-May-18 | Complete | 1155 | WSH Weston 1600 | 3,500.00 USD | 57.00 USD |
| 2100 | General Factory Machinery and Equipment | 203-0 | Aluminum Guarding for V-blender | 28-Feb-23 | 1-May-13 | 10 | 1-May-18 | Complete | 1155 | WSH Weston 1600 | 1,605.00 USD | 37.00 USD |
| 2100 | General Factory Machinery and Equipment | 204-0 | Center Post Assembly 6074 90X88 | 28-Feb-23 | 1-Sep-13 | 10 | 1-Sep-18 | Complete | 1155 | WSH Weston 1600 | 4,200.00 USD | 205.00 USD |
| 2100 | General Factory Machinery | 205-0 | Machine Parts | 28-Feb-23 | 1-Sep-13 | 10 | 1-Sep-18 | Complete | 1155 | WSH Weston 1600 | 12,340.84 USD | 609.00 USD |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | and Equipment | | | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 206-0 | Machine Parts Supply Room | 28-Feb-23 | 1-Oct-13 | 10 | 1-Oct-18 | Complete | 1155 | | WSH Weston 1600 | 6,405.68 USD | 429.00 USD |
| 2100 | General Factory Machinery and Equipment | 207-0 | Machine Part | 28-Feb-23 | 1-Nov-13 | 10 | 1-Nov-18 | Complete | 1155 | | WSH Weston 1600 | 1,556.20 USD | 124.00 USD |
| 2100 | General Factory Machinery and Equipment | 208-0 | WFC40050C Motor | 28-Feb-23 | 1-Dec-13 | 10 | 1-Dec-18 | Complete | 1155 | | WSH Weston 1600 | 4,131.21 USD | 364.00 USD |
| 2100 | General Factory Machinery and Equipment | 209-0 | conversion of production line to 2 pack | 28-Feb-23 | 1-Dec-13 | 10 | 1-Dec-18 | Complete | 1155 | | WSH Weston 1600 | 1,000.00 USD | 83.00 USD |
| 2100 | General Factory Machinery and Equipment | 210-0 | 3 position selector switch for BC Pump; | 28-Feb-23 | 1-Jan-14 | 7 | 1-Jan-19 | Complete | 1155 | | WSH Weston 1600 | 743.65 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 211-0 | 3 lights in computer room | 28-Feb-23 | 1-Jan-14 | 7 | 1-Jan-19 | Complete | 1155 | | WSH Weston 1600 | 975.65 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 212-0 | (1) All Fill Model B-350E Semi Automatic | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 13,820.00 USD | 1,381.00 USD |
|------|------|-------|------|------|------|----|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 213-0 | (1) All-Fill Model ISC CH Incline Screwf | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 12,295.00 USD | 1,227.00 USD |
| 2100 | General Factory Machinery and Equipment | 214-0 | (2) S.S. Standad Electric Tablet Dedust | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 4,903.68 USD | 488.00 USD |
| 2100 | General Factory Machinery and Equipment | 215-0 | (7) Upper Punch Assemblies | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 2,710.40 USD | 266.00 USD |
| 2100 | General Factory Machinery and Equipment | 216-0 | (7) Lower Punch Assemblies | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 2,964.50 USD | 294.00 USD |
| 2100 | General Factory Machinery and Equipment | 217-0 | (38) Die from 80090 | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 7,816.60 USD | 780.00 USD |
| 2100 | General Factory Machinery | 218-0 | (165) Upper Tip from HOB #092909 | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 4,356.00 USD | 434.00 USD |

| | and Equipment | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2100 | General Factory Machinery and Equipment | 219-0 | (33) Upper Tip with Hole from HOB #09290 | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 1,216.05 USD | 120.00 USD |
| 2100 | General Factory Machinery and Equipment | 220-0 | (33) Upper Cap | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 4,719.00 USD | 471.00 USD |
| 2100 | General Factory Machinery and Equipment | 221-0 | (198) Lower Tip from HOB #092909 | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 5,227.20 USD | 521.00 USD |
| 2100 | General Factory Machinery and Equipment | 222-0 | (4) Lower Holder | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 396.00 USD | 38.00 USD |
| 2100 | General Factory Machinery and Equipment | 223-0 | (4) Lower Head | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 92.40 USD | 6.00 USD |
| 2100 | General Factory Machinery and Equipment | 224-0 | (33) Lower Cap | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 4,719.00 USD | 471.00 USD |

| 2100 | General Factory Machinery and Equipment | 225-0 | Freight for All - Fill machines | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 1,285.00 USD | 126.00 USD |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 226-0 | Freight for All - Fill machines | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 855.98 USD | 83.00 USD |
| 2100 | General Factory Machinery and Equipment | 227-0 | Tools for Labeler Machine | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 1,675.00 USD | 179.00 USD |
| 2100 | General Factory Machinery and Equipment | 228-0 | (2) Aprilaire 1770 Dehumidifiers | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 6,266.80 USD | 677.00 USD |
| 2100 | General Factory Machinery and Equipment | 229-0 | Douglas model SD36-E-480/3 | 28-Feb-23 | 1-Mar-14 | 10 | 1-Mar-19 | Complete | 1155 | WSH Weston 1600 | 2,534.09 USD | 271.00 USD |
| 2100 | General Factory Machinery and Equipment | 230-0 | Electric Motor | 28-Feb-23 | 1-Apr-14 | 10 | 1-Apr-19 | Complete | 1155 | WSH Weston 1600 | 1,634.54 USD | 242.00 USD |
| 2100 | General Factory Machinery | 231-0 | work platform column mounted | 28-Feb-23 | 1-May-14 | 10 | 1-May-19 | Complete | 1155 | WSH Weston 1600 | 413.36 USD | 46.00 USD |

| | and Equipment | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2100 | General Factory Machinery and Equipment | 232-0 | (2) Aprilaire 1770 Dehumidifiers | 28-Feb-23 | 1-May-14 | 10 | 1-May-19 | Complete | 1155 | WSH Weston 1600 | 6,266.80 USD | 730.00 USD |
| 2100 | General Factory Machinery and Equipment | 233-0 | (1) 770 Lb 20x36 foot Op Port Lift Table | 28-Feb-23 | 1-May-14 | 10 | 1-May-19 | Complete | 1155 | WSH Weston 1600 | 1,266.35 USD | 146.00 USD |
| 2100 | General Factory Machinery and Equipment | 234-0 | Access Door Assy w/ vent tube | 28-Feb-23 | 1-Jun-14 | 10 | 1-Jun-19 | Complete | 1155 | WSH Weston 1600 | 325.00 USD | 38.00 USD |
| 2100 | General Factory Machinery and Equipment | 235-0 | (1) each 8550 Sky Hook w/ floor mount ba | 28-Feb-23 | 1-Jun-14 | 10 | 1-Jun-19 | Complete | 1155 | WSH Weston 1600 | 2,648.38 USD | 330.00 USD |
| 2100 | General Factory Machinery and Equipment | 236-0 | Rack Storage System - Permit Plans | 28-Feb-23 | 1-Sep-14 | 7 | 1-Sep-19 | Complete | 1155 | WSH Weston 1600 | 950.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 237-0 | Relocation of air compressor-frm 1500 to | 28-Feb-23 | 1-Sep-14 | 5 | 1-Sep-19 | Complete | 1155 | WSH Weston 1600 | 2,475.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 238-0 | Special Tunnel Assembly & Related parts | 28-Feb-23 | 1-Oct-14 | 7 | 1-Oct-19 | Complete | 1155 | WSH Weston 1600 | 3,233.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 239-0 | Ogden Heaters (2) | 28-Feb-23 | 1-Oct-14 | 7 | 1-Oct-19 | Complete | 1155 | WSH Weston 1600 | 1,180.10 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 240-0 | Ross Valve | 28-Feb-23 | 1-Oct-14 | 10 | 1-Oct-19 | Complete | 1155 | WSH Weston 1600 | 489.34 USD | 76.00 USD |
| 2100 | General Factory Machinery and Equipment | 241-0 | (3) Powerscan scanners and related items | 28-Feb-23 | 1-Oct-14 | 10 | 1-Oct-19 | Complete | 1155 | WSH Weston 1600 | 7,318.24 USD | 1,158.00 USD |
| 2100 | General Factory Machinery and Equipment | 242-0 | Freight prepaid for Liberty Technologies | 28-Feb-23 | 1-Oct-14 | 10 | 1-Oct-19 | Complete | 1155 | WSH Weston 1600 | 200.00 USD | 31.00 USD |
| 2100 | General Factory Machinery and Equipment | 243-0 | Permit Fees | 28-Feb-23 | 1-Dec-14 | 10 | 1-Dec-19 | Complete | 1155 | WSH Weston 1600 | 5,640.00 USD | 987.00 USD |
| 2100 | General Factory Machinery | 244-0 | High Density Storage System Relocation | 28-Feb-23 | 1-Dec-14 | 10 | 1-Dec-19 | Complete | 1155 | WSH Weston 1600 | 43,614.25 USD | 7,630.00 USD |

| | and Equipment | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2100 | General Factory Machinery and Equipment | 245-0 | High Density Storage System Relocation | 28-Feb-23 | 1-Dec-14 | 10 | 1-Dec-19 | Complete | 1155 | WSH Weston 1600 | 43,614.25 USD | 7,630.00 USD |
| 2100 | General Factory Machinery and Equipment | 246-0 | High Density Storage System Relocation | 28-Feb-23 | 1-Dec-14 | 10 | 1-Dec-19 | Complete | 1155 | WSH Weston 1600 | 43,614.25 USD | 7,630.00 USD |
| 2100 | General Factory Machinery and Equipment | 247-0 | Move and re-install compressor for rack | 28-Feb-23 | 1-Dec-14 | 10 | 1-Dec-19 | Complete | 1155 | WSH Weston 1600 | 3,533.53 USD | 616.00 USD |
| 2100 | General Factory Machinery and Equipment | 248-0 | High Density Storage System Relocation | 28-Feb-23 | 1-Dec-14 | 10 | 1-Dec-19 | Complete | 1155 | WSH Weston 1600 | 54,081.67 USD | 9,460.00 USD |
| 2100 | General Factory Machinery and Equipment | 249-0 | 2 lower chain 20PI 12incr | 28-Feb-23 | 1-Dec-14 | 5 | 1-Dec-19 | Complete | 1155 | WSH Weston 1600 | 7,046.54 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 250-0 | Replacement of fire hose valve racks and | 28-Feb-23 | 1-Dec-14 | 10 | 1-Dec-19 | Complete | 1155 | WSH Weston 1600 | 1,447.87 USD | 264.00 USD |

| 2100 | General Factory Machinery and Equipment | 251-0 | (1) FRR170P4-P2 Print Head replacement | 28-Feb-23 | 1-Jan-15 | 7 | 1-Jan-20 | Complete | 1155 | WSH Weston 1600 | 1,484.00 USD | 0.00 USD |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 252-0 | Orbit Diamond Crystal Plate | 28-Feb-23 | 1-Apr-15 | 7 | 1-Apr-20 | Complete | 1155 | WSH Weston 1600 | 6,206.65 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 253-0 | Tooling - Part for the machine to do the | 28-Feb-23 | 1-Jul-15 | 10 | 1-Jul-20 | Complete | 1155 | WSH Weston 1600 | 2,000.00 USD | 466.00 USD |
| 2100 | General Factory Machinery and Equipment | 254-0 | Overhaul of Hydrovane 148PUAS Factory co | 28-Feb-23 | 1-Aug-15 | 7 | 1-Aug-20 | Complete | 1155 | WSH Weston 1600 | 4,500.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 255-0 | Battery 18-85-17 (36 volts) AMP 680 Seri | 28-Feb-23 | 1-Aug-15 | 5 | 1-Aug-20 | Complete | 1155 | WSH Weston 1600 | 5,220.50 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 256-0 | Ensure Luminometer Serial # 75362 | 28-Feb-23 | 1-Dec-15 | 5 | 1-Dec-20 | Complete | 1155 | WSH Weston 1600 | 1,215.75 USD | 0.00 USD |
| 2100 | General Factory Machinery | 257-0 | Encapsulation Room new Dehumdifier Model | 28-Feb-23 | 1-Nov-15 | 5 | 1-Nov-20 | Complete | 1155 | WSH Weston 1600 | 2,867.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | |
|------|-----------------------------------------|-------|-----------------------------------------|--------------|----------|---|----------|----------|------|----------------|---------------|
| 2100 | General Factory Machinery and Equipment | 258-0 | PRPNA325 Dryer, Non-Cycling, 230/3/60, 3 | 28-Feb-23 | 1-Feb-16 | 7 | 1-Feb-21 | Complete | 1155 | WSH Weston 1600 | 4,895.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 259-0 | Pegasus Flat seamer FS703P-G2BX460/460/P | 28-Feb-23 | 1-Jan-16 | 7 | 1-Jan-21 | Complete | 1155 | WSH Weston 1600 | 9,099.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 260-0 | Notronix Air Compressor 70 Decibels Item | 28-Feb-23 | 1-Feb-16 | 7 | 1-Feb-21 | Complete | 1155 | WSH Weston 1600 | 7,635.15 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 261-0 | Chaus AX124/E Serial B60B113562 Scale | 28-Feb-23 | 1-Jun-16 | 7 | 1-Jun-21 | Complete | 1155 | WSH Weston 1600 | 5,407.00 USD | 126.00 USD |
| 2100 | General Factory Machinery and Equipment | 262-0 | Bottomless Conveyor side belt transfer f | 28-Feb-23 | 1-Jun-16 | 7 | 1-Jun-21 | Complete | 1155 | WSH Weston 1600 | 2,782.00 USD | 63.00 USD |
| 2100 | General Factory Machinery and Equipment | 263-0 | Refurb 1200/1260 autosamper, var. wave d | 28-Feb-23 | 1-Jun-16 | 7 | 1-Jun-21 | Complete | 1155 | WSH Weston 1600 | 37,386.00 USD | 1,334.00 USD |

| 2100 | General Factory Machinery and Equipment | 264-0 | TC-08070872 Bosch Capsule Filling - Ampa | 28-Feb-23 | 1-Aug-16 | 3 | 1-Aug-21 | Complete | 1155 | WSH Weston 1600 | 125,000.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 265-0 | Bishamon #174, EZ off lifter EZO-25E-3S | 28-Feb-23 | 1-Dec-16 | 10 | 1-Dec-21 | Complete | 1155 | WSH Weston 1600 | 6,024.67 USD | 2,258.00 USD |
| 2100 | General Factory Machinery and Equipment | 266-0 | 2- Low Profile ARPAC Pro Series Wrapper, | 28-Feb-23 | 1-Jan-17 | 10 | 1-Jan-22 | Complete | 1155 | WSH Weston 1600 | 19,455.50 USD | 7,343.00 USD |
| 2100 | General Factory Machinery and Equipment | 267-0 | Walkie Pallet Truck WP3035-45 S/N 7A2938 | 28-Feb-23 | 1-Dec-16 | 10 | 1-Dec-21 | Complete | 1155 | WSH Weston 1600 | 4,238.94 USD | 1,590.00 USD |
| 2100 | General Factory Machinery and Equipment | 268-0 | Globaltek Bottomless conveyor side belt | 28-Feb-23 | 1-Dec-16 | 10 | 1-Dec-21 | Complete | 1155 | WSH Weston 1600 | 2,621.50 USD | 980.00 USD |
| 2100 | General Factory Machinery and Equipment | 269-0 | SSG-100 Sharpe portable Mixer SSG-10 all | 28-Feb-23 | 1-Feb-17 | 7 | 1-Feb-22 | Complete | 1155 | WSH Weston 1600 | 5,179.03 USD | 677.00 USD |
| 2100 | General Factory Machinery | 270-0 | Adventurer Analytical Balance 120GX0, 1M | 28-Feb-23 | 1-Mar-17 | 7 | 1-Mar-22 | Complete | 1155 | WSH Weston 1600 | 5,731.42 USD | 817.00 USD |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | and Equipment | | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 271-0 | Walkie Pallot truck S/N 7A301932 | 28-Feb-23 | 1-Mar-17 | 5 | 1-Mar-22 | Complete | 1155 | WSH Weston 1600 | 4,238.94 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 272-0 | Posimat Master 20 Unscrambler with bottl | 28-Feb-23 | 1-Feb-17 | 4 | 1-Feb-22 | Complete | 1155 | WSH Weston 1600 | 73,950.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 273-0 | Posimat Master 20 Unscrambler with bottl | 28-Feb-23 | 1-Feb-17 | 4 | 1-Feb-22 | Complete | 1155 | WSH Weston 1600 | 10,205.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 274-0 | Capital Lease Tetra | 28-Feb-23 | 1-Jan-17 | 4 | 1-Jan-22 | Complete | 1155 | WSH Weston 1600 | 13,550.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 275-0 | Capital Lease Tetra | 28-Feb-23 | 1-Jan-17 | 4 | 1-Jan-22 | Complete | 1155 | WSH Weston 1600 | 29,476.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 276-0 | Capital Lease Tetra | 28-Feb-23 | 1-Jan-17 | 4 | 1-Jan-22 | Complete | 1155 | WSH Weston 1600 | 29,040.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 277-0 | Capital Lease Tetra | 28-Feb-23 | 1-May-17 | 3 | 1-May-22 | Complete | 1155 | WSH Weston 1600 | 418,115.27 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 278-0 | Capital Lease Tetra | 28-Feb-23 | 1-May-17 | 3 | 1-May-22 | Complete | 1155 | WSH Weston 1600 | 18,127.23 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 279-0 | Packaging machine 908 lbs | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 897.88 USD | 366.00 USD |
| 2100 | General Factory Machinery and Equipment | 280-0 | Install of condenser and chiller untis | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 2,175.00 USD | 885.00 USD |
| 2100 | General Factory Machinery and Equipment | 282-0 | Ran power for 3 - 120 volt machines | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 1,913.39 USD | 779.00 USD |
| 2100 | General Factory Machinery and Equipment | 283-0 | Filled systemt with Glycol | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 1,170.00 USD | 477.00 USD |
| 2100 | General Factory Machinery | 284-0 | Loaded glycol onsite | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 1,846.00 USD | 752.00 USD |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | and Equipment | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 285-0 | Piped relief to mezzanine and sucure all | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 2,196.00 USD | 895.00 USD |
| 2100 | General Factory Machinery and Equipment | 286-0 | ran cable from bar wrapper machine to VF | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 477.01 USD | 193.00 USD |
| 2100 | General Factory Machinery and Equipment | 287-0 | Installed cord into label machine bar li | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 165.00 USD | 65.00 USD |
| 2100 | General Factory Machinery and Equipment | 288-0 | Drilled holes and put racks for cable an | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 1,127.03 USD | 459.00 USD |
| 2100 | General Factory Machinery and Equipment | 289-0 | Ran cables and drilled holes in new cabi | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 1,561.03 USD | 633.00 USD |
| 2100 | General Factory Machinery and Equipment | 290-0 | Wired up both control cabinets from bar | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 982.52 USD | 398.00 USD |

| 2100 | General Factory Machinery and Equipment | 291-0 | Installed new lights on touch screens fo | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 916.51 USD | 372.00 USD |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 292-0 | Finished running pipe and installing dis | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 3,321.78 USD | 1,353.00 USD |
| 2100 | General Factory Machinery and Equipment | 293-0 | Ran new conduit for chiller machine bar | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 1,075.64 USD | 437.00 USD |
| 2100 | General Factory Machinery and Equipment | 294-0 | Run multiple copper lines from chiller t | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 21,376.00 USD | 16,975.00 USD |
| 2100 | General Factory Machinery and Equipment | 295-0 | Completed installation of 2 eight floor | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 8,736.00 USD | 3,565.00 USD |
| 2100 | General Factory Machinery and Equipment | 296-0 | Completed installation of 200' of overhe | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 6,977.00 USD | 2,847.00 USD |
| 2100 | General Factory Machinery | 297-0 | Vulcanized pull-up splice 12" wide rubbe | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 3,554.18 USD | 1,448.00 USD |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | and Equipment | | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 298-0 | Stainless Steel cable trays | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 3,816.00 USD | 1,556.00 USD |
| 2100 | General Factory Machinery and Equipment | 299-0 | Charged Chiller with Glycol run pumps, c | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 1,410.00 USD | 575.00 USD |
| 2100 | General Factory Machinery and Equipment | 300-0 | installing cable trays for the barline, | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 2,161.87 USD | 878.00 USD |
| 2100 | General Factory Machinery and Equipment | 301-0 | Installed Cable trays for Barline | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 941.12 USD | 380.00 USD |
| 2100 | General Factory Machinery and Equipment | 302-0 | Bcast Stainless Products 500 gallon BC-S | 28-Feb-23 | 1-May-17 | 10 | 1-May-22 | Complete | 1155 | WSH Weston 1600 | 17,610.00 USD | 7,336.00 USD |
| 2100 | General Factory Machinery and Equipment | 303-0 | Mini Pak'r air pillow machines for the W | 28-Feb-23 | 1-May-17 | 5 | 1-May-22 | Complete | 1155 | WSH Weston 1600 | 1,556.53 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 304-0 | Mini Pak'r air pillow machines for the W | 28-Feb-23 | 1-May-17 | 5 | 1-May-22 | Complete | 1155 | WSH Weston 1600 | 1,556.53 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 305-0 | Water tank room - Pump 5 HP 3PH 460V 316 | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 4,105.38 USD | 1,777.00 USD |
| 2100 | General Factory Machinery and Equipment | 306-0 | Demo interior wall & install FRP boards | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 8,320.00 USD | 3,605.00 USD |
| 2100 | General Factory Machinery and Equipment | 307-0 | Complete floor drain installation by wat | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 2,585.00 USD | 1,117.00 USD |
| 2100 | General Factory Machinery and Equipment | 308-0 | install 4 water filters, pipes, valves & | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 980.00 USD | 424.00 USD |
| 2100 | General Factory Machinery and Equipment | 309-0 | install 4 water filters, pipes, valves & | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 3,920.00 USD | 1,698.00 USD |
| 2100 | General Factory Machinery | 310-0 | Vantage carbon filtration | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 10,388.00 USD | 4,500.00 USD |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | and Equipment | | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 311-0 | Filters | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 5,090.11 USD | 2,202.00 USD |
| 2100 | General Factory Machinery and Equipment | 31117-0 | Baring Industries Bowl Lift | 28-Feb-23 | 22-Jan-21 | 10 | 22-Jan-26 | Complete | 1000USHQ | 1600 HQ | 5,389.88 USD | 4,222.00 USD |
| 2100 | General Factory Machinery and Equipment | 31118-0 | Baring Industries Planetary Mixer | 28-Feb-23 | 22-Jan-21 | 10 | 22-Jan-26 | Complete | 1000USHQ | 1600 HQ | 37,513.10 USD | 29,383.00 USD |
| 2100 | General Factory Machinery and Equipment | 312-0 | Hoses | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 13,276.32 USD | 5,751.00 USD |
| 2100 | General Factory Machinery and Equipment | 313-0 | UV system | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 6,425.05 USD | 2,781.00 USD |
| 2100 | General Factory Machinery and Equipment | 314-0 | Final testing and completion of chiller | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 932.26 USD | 400.00 USD |

| 2100 | General Factory Machinery and Equipment | 315-0 | 2 coat urathane cement kitchen flooring | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 4,000.00 USD | 1,733.00 USD |
| 2100 | General Factory Machinery and Equipment | 316-0 | Electrical wiring | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 140.00 USD | 60.00 USD |
| 2100 | General Factory Machinery and Equipment | 317-0 | Installation of 32mm pipe transair union | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 2,150.00 USD | 931.00 USD |
| 2100 | General Factory Machinery and Equipment | 318-0 | 2 - Siemens - AC drive, VFD, 30HP, 480VA | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 3,196.77 USD | 1,383.00 USD |
| 2100 | General Factory Machinery and Equipment | 319-0 | HD Aluminum Rolling platform ladder to r | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 1,847.78 USD | 800.00 USD |
| 2100 | General Factory Machinery and Equipment | 320-0 | Installed 2"conduit for power to new tan | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 6,105.60 USD | 2,644.00 USD |
| 2100 | General Factory Machinery | 321-0 | Ultraviolet Quartz | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 210.74 USD | 87.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 322-0 | installed new J Box for VFD's Silverson | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 2,029.23 USD | 879.00 USD |
| 2100 | General Factory Machinery and Equipment | 323-0 | 2 Tank automated CIP packaged | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 61,639.00 USD | 26,709.00 USD |
| 2100 | General Factory Machinery and Equipment | 324-0 | labor & material | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 1,767.17 USD | 764.00 USD |
| 2100 | General Factory Machinery and Equipment | 325-0 | New Electronic parts for the tank, AB25B | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 5,760.00 USD | 2,496.00 USD |
| 2100 | General Factory Machinery and Equipment | 326-0 | Pulled control wires to UV light and sil | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 1,319.56 USD | 572.00 USD |
| 2100 | General Factory Machinery and Equipment | 327-0 | Ran new conduit for aler equipment to fr | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 263.96 USD | 111.00 USD |

| 2100 | General Factory Machinery and Equipment | 328-0 | Hooked up controls to UV light and contr | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 220.00 USD | 95.00 USD |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 329-0 | Pulled new wire in for control cabinet f | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 1,891.80 USD | 816.00 USD |
| 2100 | General Factory Machinery and Equipment | 330-0 | change order to add 2.5" automated air o | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 5,324.00 USD | 2,304.00 USD |
| 2100 | General Factory Machinery and Equipment | 331-0 | Freight charges | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 310.70 USD | 130.00 USD |
| 2100 | General Factory Machinery and Equipment | 332-0 | Added supply CIP chemical inject pump (2 | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 1,995.00 USD | 862.00 USD |
| 2100 | General Factory Machinery and Equipment | 333-0 | Freight charges | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 2,000.00 USD | 866.00 USD |
| 2100 | General Factory Machinery | 334-0 | Calibration services and travel expenses | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 760.00 USD | 329.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 335-0 | Provide VFD's for 4 existing agitators o | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 5,800.00 USD | 2,513.00 USD |
| 2100 | General Factory Machinery and Equipment | 336-0 | Provide control changes and additional p | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 4,949.00 USD | 2,144.00 USD |
| 2100 | General Factory Machinery and Equipment | 337-0 | Breaker and bus job | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 13,311.00 USD | 5,764.00 USD |
| 2100 | General Factory Machinery and Equipment | 338-0 | tank room job | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 14,609.00 USD | 6,330.00 USD |
| 2100 | General Factory Machinery and Equipment | 339-0 | Labor and material to install process pi | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 299,159.00 USD | 129,635.00 USD |
| 2100 | General Factory Machinery and Equipment | 340-0 | Skid Piping Installation | 28-Feb-23 | 1-Jul-17 | 10 | 1-Jul-22 | Complete | 1155 | WSH Weston 1600 | 6,630.00 USD | 2,873.00 USD |

| 2100 | General Factory Machinery and Equipment | 341-0 | Install piping new carbon tank filter | 28-Feb-23 | 1-Aug-17 | 10 | 1-Aug-22 | Complete | 1155 | WSH Weston 1600 | 14,886.00 USD | 6,448.00 USD |
| 2100 | General Factory Machinery and Equipment | 342-0 | F & B hose barb kit | 28-Feb-23 | 1-Aug-17 | 10 | 1-Aug-22 | Complete | 1155 | WSH Weston 1600 | 433.85 USD | 185.00 USD |
| 2100 | General Factory Machinery and Equipment | 343-0 | CIP integration and start up trip | 28-Feb-23 | 1-Aug-17 | 10 | 1-Aug-22 | Complete | 1155 | WSH Weston 1600 | 7,360.00 USD | 3,189.00 USD |
| 2100 | General Factory Machinery and Equipment | 344-0 | Reprogram wash tank make up water valve | 28-Feb-23 | 1-Aug-17 | 10 | 1-Aug-22 | Complete | 1155 | WSH Weston 1600 | 5,497.00 USD | 2,380.00 USD |
| 2100 | General Factory Machinery and Equipment | 345-0 | Big Tanks - Relocation of the hose bibb, | 28-Feb-23 | 1-Aug-17 | 10 | 1-Aug-22 | Complete | 1155 | WSH Weston 1600 | 4,343.00 USD | 1,879.00 USD |
| 2100 | General Factory Machinery and Equipment | 346-0 | Big Tanks Freight charges | 28-Feb-23 | 1-Aug-17 | 10 | 1-Aug-22 | Complete | 1155 | WSH Weston 1600 | 160.00 USD | 69.00 USD |
| 2100 | General Factory Machinery | 347-0 | Big tanks 2' inch piping installation I | 28-Feb-23 | 1-Aug-17 | 10 | 1-Aug-22 | Complete | 1155 | WSH Weston 1600 | 720.00 USD | 312.00 USD |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | and Equipment | | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 348-0 | Insight 150MM x 100MM Conv 60/4/35 Lock | 28-Feb-23 | 1-Sep-17 | 10 | 1-Sep-22 | Complete | 1155 | WSH Weston 1600 | 26,870.52 USD | 12,088.00 USD |
| 2100 | General Factory Machinery and Equipment | 349-0 | ARPAC machine - Tray Star 45TW Shrink Bu | 28-Feb-23 | 1-Sep-17 | 10 | 1-Sep-22 | Complete | 1155 | WSH Weston 1600 | 249,847.75 USD | 112,430.00 USD |
| 2100 | General Factory Machinery and Equipment | 350-0 | Machine-Tray Star 45TW Shrink Bundler Ar | 28-Feb-23 | 1-Sep-17 | 10 | 1-Sep-22 | Complete | 1155 | WSH Weston 1600 | 599,100.00 USD | 269,595.00 USD |
| 2100 | General Factory Machinery and Equipment | 351-0 | New ARC Pack machine and conveyors in bo | 28-Feb-23 | 1-Sep-17 | 10 | 1-Sep-22 | Complete | 1155 | WSH Weston 1600 | 16,252.95 USD | 7,311.00 USD |
| 2100 | General Factory Machinery and Equipment | 352-0 | Remove existing door between bottling ro | 28-Feb-23 | 1-Sep-17 | 10 | 1-Sep-22 | Complete | 1155 | WSH Weston 1600 | 1,235.00 USD | 553.00 USD |
| 2100 | General Factory Machinery and Equipment | 353-0 | Walkie Pallet truck #WP3035-45 | 28-Feb-23 | 1-Sep-17 | 10 | 1-Sep-22 | Complete | 1155 | WSH Weston 1600 | 4,308.92 USD | 1,938.00 USD |

| 2100 | General Factory Machinery and Equipment | 354-0 | BC Kettle- Bcast Stainless Products 500 | 28-Feb-23 | 1-Oct-17 | 10 | 1-Oct-22 | Complete | 1155 | WSH Weston 1600 | 47,216.00 USD | 21,639.00 USD |
| 2100 | General Factory Machinery and Equipment | 355-0 | ARPAC machine - Tray Star 45TW Shrink Bu | 28-Feb-23 | 1-Sep-17 | 10 | 1-Sep-22 | Complete | 1155 | WSH Weston 1600 | 142,468.79 USD | 64,110.00 USD |
| 2100 | General Factory Machinery and Equipment | 356-0 | Cardio Coach  Quickstart Kit CC+CO2 W/re | 28-Feb-23 | 1-Dec-17 | 3 | 1-Dec-22 | Complete | 1155 | WSH Weston 1600 | 11,465.04 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 357-0 | Semi Automatic Stretch Wrapper | 28-Feb-23 | 1-Jan-18 | 3 | 1-Jan-23 | Complete | 1155 | WSH Weston 1600 | 17,400.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 358-0 | Installation & Commissioning of MINI CON | 28-Feb-23 | 1-Apr-17 | 10 | 1-Apr-22 | Complete | 1155 | WSH Weston 1600 | 23,463.76 USD | 9,578.00 USD |
| 2100 | General Factory Machinery and Equipment | 359-0 | Macarpacstwrapl low profile pro series c | 28-Feb-23 | 1-Jan-18 | 3 | 1-Jan-23 | Complete | 1155 | WSH Weston 1600 | 20,699.00 USD | 0.00 USD |
| 2100 | General Factory Machinery | 360-0 | JBL 15" 3way 2000W SRX Speaker (SN:P1644 | 28-Feb-23 | 1-Mar-18 | 3 | 1-Mar-23 | Complete | 1155 | WSH Weston 1600 | 2,834.88 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | | |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 361-0 | 2 - 3 wheel Sit down Counterbalance S/N | 28-Feb-23 | 1-Jan-18 | 7 | 1-Jan-23 | Complete | 1155 | WSH Weston 1600 | 161,101.03 USD | 42,191.00 USD |
| 2100 | General Factory Machinery and Equipment | 362-0 | Globaltek TRA-37S Slim bottomless cnveyo | 28-Feb-23 | 1-May-18 | 3 | 1-May-23 | 2 | 1155 | WSH Weston 1600 | 2,669.71 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 363-0 | Electric Pallet jack capacity 3000 lb | 28-Feb-23 | 1-May-18 | 3 | 1-May-23 | 2 | 1155 | WSH Weston 1600 | 3,620.25 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 364-0 | BLX-INS64CS - BioLumix Instruments and o | 28-Feb-23 | 1-Sep-18 | 3 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 34,715.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 365-0 | 3 - BLX-INS32 Biolomix 32 unit no comput | 28-Feb-23 | 1-Sep-18 | 3 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 38,160.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 366-0 | BLX-INS32 - Biolumi 32 unit no computer | 28-Feb-23 | 1-Sep-18 | 3 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 12,720.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 367-0 | Food Ti Touch, thermal printer custom Ne | 28-Feb-23 | 1-Sep-18 | 3 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 8,496.60 USD | 0.00 USD |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 368-0 | SC5240-40 3 wheel sitdown counterbalance | 28-Feb-23 | 1-Mar-18 | 7 | 1-Mar-23 | Complete | 1155 | WSH Weston 1600 | 34,388.61 USD | 9,824.00 USD |
| 2100 | General Factory Machinery and Equipment | 369-0 | 2- 3 wheel sitdown counterbalance(S/N: 1 | 28-Feb-23 | 1-Mar-18 | 7 | 1-Mar-23 | Complete | 1155 | WSH Weston 1600 | 44,785.00 USD | 12,795.00 USD |
| 2100 | General Factory Machinery and Equipment | 370-0 | 2- 3 wheel sitdown counterbalance(S/N: 1 | 28-Feb-23 | 1-Mar-18 | 7 | 1-Mar-23 | Complete | 1155 | WSH Weston 1600 | 44,785.00 USD | 12,795.00 USD |
| 2100 | General Factory Machinery and Equipment | 371-0 | 1 - Used 2011 XQ400 Portable Caterpillar | 28-Feb-23 | 1-Sep-18 | 5 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 398,401.00 USD | 33,196.00 USD |
| 2100 | General Factory Machinery and Equipment | 372-0 | Bottle Uncrambler | 28-Feb-23 | 1-Sep-18 | 10 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 889,161.75 USD | 704,467.00 USD |
| 2100 | General Factory Machinery | 373-0 | Monoblock Filler & Capper - Model Triblo | 28-Feb-23 | 1-Sep-18 | 10 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 42,592.50 USD | 23,423.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | |
|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 374-0 | 50% Payment for: install of new drips fo | 28-Feb-23 | 1-Sep-18 | 10 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 10,500.00 USD | 5,775.00 USD |
| 2100 | General Factory Machinery and Equipment | 375-0 | 50% deposit for drains related to shot l | 28-Feb-23 | 1-Sep-18 | 10 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 13,500.00 USD | 7,425.00 USD |
| 2100 | General Factory Machinery and Equipment | 376-0 | Estimate to install chiller system inclu | 28-Feb-23 | 1-Sep-18 | 10 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 5,500.00 USD | 3,025.00 USD |
| 2100 | General Factory Machinery and Equipment | 377-0 | Second half of Payment for: install of n | 28-Feb-23 | 1-Sep-18 | 10 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 10,500.00 USD | 5,775.00 USD |
| 2100 | General Factory Machinery and Equipment | 378-0 | second half deposit for drains related t | 28-Feb-23 | 1-Sep-18 | 10 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 14,000.00 USD | 7,699.00 USD |
| 2100 | General Factory Machinery and Equipment | 379-0 | Alterations for entrance to bottling roo | 28-Feb-23 | 1-Sep-18 | 10 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 2,685.00 USD | 1,874.00 USD |

| 2100 | General Factory Machinery and Equipment | 380-0 | Flow Divert Panel, process piping instal | 28-Feb-23 | 1-Sep-18 | 10 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 67,680.00 USD | 37,224.00 USD |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 38097-0 | Domino Laser Coder - 4 Pk | 28-Feb-23 | 5-Feb-21 | 10 | 5-Feb-26 | 36 | 1000USPHX | Phoenix Plant | 52,144.97 USD | 41,275.00 USD |
| 2100 | General Factory Machinery and Equipment | 381-0 | Aeroquip hose fitting, Aeroquip 1 wr bra | 28-Feb-23 | 1-Sep-18 | 10 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 1,431.31 USD | 784.00 USD |
| 2100 | General Factory Machinery and Equipment | 382-0 | Ran cable overhead for concrete guys to | 28-Feb-23 | 1-Sep-18 | 10 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 315.00 USD | 170.00 USD |
| 2100 | General Factory Machinery and Equipment | 383-0 | Sanitary raised bed conveyor (2 Payments | 28-Feb-23 | 1-Sep-18 | 10 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 10,450.00 USD | 5,747.00 USD |
| 2100 | General Factory Machinery and Equipment | 385-0 | Evaporator piping installation for the s | 28-Feb-23 | 1-Oct-18 | 10 | 1-Oct-23 | 7 | 1155 | WSH Weston 1600 | 15,162.00 USD | 8,462.00 USD |
| 2100 | General Factory Machinery | 386-0 | Hyster Forklift Y1 J30XNTZK160N07057R, H | 28-Feb-23 | 1-Sep-18 | 7 | 1-Sep-23 | 6 | 1155 | WSH Weston 1600 | 39,233.05 USD | 14,010.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | | |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 387-0 | Blade EZ Silver Knife Assy - Aurora 70-1 | 28-Feb-23 | 1-Nov-18 | 3 | 1-Nov-23 | 8 | 1155 | WSH Weston 1600 | 6,887.24 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 388-0 | ABBEMA 550 Automatic Refractometer of th | 28-Feb-23 | 1-Oct-18 | 3 | 1-Oct-23 | 7 | 1155 | WSH Weston 1600 | 10,879.31 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 389-0 | CBOXQC At-line combined at-line CO2 and | 28-Feb-23 | 9-Oct-18 | 3 | 9-Oct-23 | 7 | 1155 | WSH Weston 1600 | 33,458.90 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 38940-0 | Domino Case Coder - 4 Pk | 28-Feb-23 | 1-Mar-21 | 10 | 1-Mar-26 | 37 | 1000USPHX | Phoenix Plant | 42,344.43 USD | 34,359.00 USD |
| 2100 | General Factory Machinery and Equipment | 38949-0 | Savage Bros Icing Melter | 28-Feb-23 | 1-Oct-21 | 10 | 1-Oct-26 | 44 | 1156 | Weston 1600 | 28,678.84 USD | 24,616.00 USD |
| 2100 | General Factory Machinery and Equipment | 390-0 | Sit down Lift truck Yale 2016 Model #ERP | 28-Feb-23 | 1-Nov-18 | 7 | 1-Nov-23 | 8 | 1155 | WSH Weston 1600 | 36,253.53 USD | 13,806.00 USD |

| 2100 | General Factory Machinery and Equipment | 391-0 | Mk16v2 Can Scanner with adapter set | 28-Feb-23 | 1-Nov-18 | 7 | 1-Nov-23 | 8 | 1155 | WSH Weston 1600 | 1,815.29 USD | 688.00 USD |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 392-0 | Lab Homogenizer, Pressurized feed tank & | 28-Feb-23 | 1-Dec-18 | 7 | 1-Dec-23 | 9 | 1155 | WSH Weston 1600 | 29,857.78 USD | 11,727.00 USD |
| 2100 | General Factory Machinery and Equipment | 393-0 | Global Tek Tra-37S Slim Bottom Conveyor | 28-Feb-23 | 1-Dec-18 | 7 | 1-Dec-23 | 9 | 1155 | WSH Weston 1600 | 3,395.00 USD | 1,334.00 USD |
| 2100 | General Factory Machinery and Equipment | 394-0 | Synergex for the CIP System | 28-Feb-23 | 1-Dec-18 | 7 | 1-Dec-23 | 9 | 1155 | WSH Weston 1600 | 2,944.16 USD | 1,154.00 USD |
| 2100 | General Factory Machinery and Equipment | 395-0 | L5MA Laboratory Mixer Machine # 37049 | 28-Feb-23 | 1-Feb-19 | 3 | 1-Feb-24 | 11 | 1155 | WSH Weston 1600 | 7,337.32 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 396-0 | Alphapack Base Price | 28-Feb-23 | 1-Feb-19 | 10 | 1-Feb-24 | 11 | 1155 | WSH Weston 1600 | 149,410.00 USD | 88,400.00 USD |
| 2100 | General Factory Machinery | 397-0 | Change Parts | 28-Feb-23 | 1-Feb-19 | 10 | 1-Feb-24 | 11 | 1155 | WSH Weston 1600 | 10,220.00 USD | 6,046.00 USD |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | and Equipment | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 39785-0 | Baring Industries Planetary Mixer #2 | 28-Feb-23 | 6-Apr-21 | 10 | 6-Apr-26 | 38 | 1156 | Weston 1600 | 37,513.11 USD | 30,321.00 USD |
| 2100 | General Factory Machinery and Equipment | 39786-0 | Baring Industries Planetary Mixer #3 | 28-Feb-23 | 6-Apr-21 | 10 | 6-Apr-26 | 38 | 1156 | Weston 1600 | 37,522.10 USD | 30,328.00 USD |
| 2100 | General Factory Machinery and Equipment | 398-0 | Case Transfer Conveyor to sealer | 28-Feb-23 | 1-Feb-19 | 10 | 1-Feb-24 | 11 | 1155 | WSH Weston 1600 | 4,500.00 USD | 2,662.00 USD |
| 2100 | General Factory Machinery and Equipment | 399-0 | FBS100FC Top & Bottom Sealer with guardi | 28-Feb-23 | 1-Feb-19 | 10 | 1-Feb-24 | 11 | 1155 | WSH Weston 1600 | 215,670.00 USD | 197,049.00 USD |
| 2100 | General Factory Machinery and Equipment | 400-0 | Pneumatic rotating EOAT | 28-Feb-23 | 1-Feb-19 | 10 | 1-Feb-24 | 11 | 1155 | WSH Weston 1600 | 4,000.00 USD | 2,366.00 USD |
| 2100 | General Factory Machinery and Equipment | 401-0 | Startup and training | 28-Feb-23 | 1-Feb-19 | 10 | 1-Feb-24 | 11 | 1155 | WSH Weston 1600 | 3,800.00 USD | 2,247.00 USD |

| 2100 | General Factory Machinery and Equipment | 402-0 | Adventure Analytical Balance 120GXO 1MG | 28-Feb-23 | 1-Feb-19 | 10 | 1-Feb-24 | 11 | 1155 | WSH Weston 1600 | 6,203.86 USD | 3,668.00 USD |
| 2100 | General Factory Machinery and Equipment | 403-0 | AB 22B-*B017N104 Powerfelx 40 3.7 KW (5H | 28-Feb-23 | 1-Mar-19 | 10 | 1-Mar-24 | 12 | 1155 | WSH Weston 1600 | 1,731.08 USD | 1,035.00 USD |
| 2100 | General Factory Machinery and Equipment | 40384-0 | Tedelta Capping Machine | 28-Feb-23 | 16-Apr-21 | 10 | 16-Apr-26 | 38 | 1156 | Weston 1600 | 196,681.00 USD | 158,981.00 USD |
| 2100 | General Factory Machinery and Equipment | 40386-0 | Krones Velcorin Dosing Retrofit | 28-Feb-23 | 13-Apr-21 | 10 | 13-Apr-26 | 38 | 1000USPHX | Phoenix Plant | 17,909.57 USD | 17,909.57 USD |
| 2100 | General Factory Machinery and Equipment | 40393-0 | Anton PAAR PHX Alcholyzer | 28-Feb-23 | 10-May-21 | 10 | 10-May-26 | 39 | 1000USPHX | Phoenix Plant | 69,755.45 USD | 56,965.00 USD |
| 2100 | General Factory Machinery and Equipment | 404-0 | 12" WIDE MODULAR BELT CONYEYOR | 28-Feb-23 | 1-May-19 | 10 | 1-May-24 | 14 | 1155 | WSH Weston 1600 | 14,231.00 USD | 8,772.00 USD |
| 2100 | General Factory Machinery | 40412-0 | GPI Conversion kit for GQSPDTR-141 | 28-Feb-23 | 31-May-21 | 10 | 31-May-26 | 40 | 1156 | Weston 1600 | 14,140.85 USD | 11,547.00 USD |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | and Equipment | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 40421-0 | 160190 EagleT100 Carton Sealer | 28-Feb-23 | 30-Jun-21 | 10 | 30-Jun-26 | 41 | 1156 | Weston 1600 | 2,500.00 USD | 2,062.00 USD |
| 2100 | General Factory Machinery and Equipment | 40423-0 | UPS FEEDERS | 28-Feb-23 | 6-Jul-21 | 10 | 6-Jul-26 | 41 | 1000USPHX | Phoenix Plant | 19,670.00 USD | 16,391.00 USD |
| 2100 | General Factory Machinery and Equipment | 40431-0 | PHX GPI Variety Pack Infeed | 28-Feb-23 | 31-Jul-21 | 10 | 31-Jul-26 | 42 | 1000USPHX | Phoenix Plant | 97,900.00 USD | 81,583.00 USD |
| 2100 | General Factory Machinery and Equipment | 40432-0 | Phoenix Hard Seltzer Line | 28-Feb-23 | 31-Jul-21 | 10 | 31-Jul-26 | 42 | 1000USPHX | Phoenix Plant | 566,540.12 USD | 496,882.00 USD |
| 2100 | General Factory Machinery and Equipment | 40434-0 | PHX Krones 4pk Line Extension | 28-Feb-23 | 31-Jul-21 | 10 | 31-Jul-26 | 42 | 1000USPHX | Phoenix Plant | 2,687,909.74 USD | 2,239,924.00 USD |
| 2100 | General Factory Machinery and Equipment | 40435-0 | Anton Paar CO2 and O2 Meters | 28-Feb-23 | 31-Jul-21 | 10 | 31-Jul-26 | 42 | 1156 | Weston 1600 | 19,650.00 USD | 16,374.00 USD |

| 2100 | General Factory Machinery and Equipment | 40436-0 | Anton Paar CO2 and O2 Meters | 28-Feb-23 | 31-Jul-21 | 10 | 31-Jul-26 | 42 | 1156 | Weston 1600 | 19,650.00 USD | 16,374.00 USD |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 40437-0 | Anton Paar PFD Filling Device | 28-Feb-23 | 31-Jul-21 | 10 | 31-Jul-26 | 42 | 1156 | Weston 1600 | 5,640.00 USD | 4,700.00 USD |
| 2100 | General Factory Machinery and Equipment | 40438-0 | Anton Paar PFD Filling Device | 28-Feb-23 | 31-Jul-21 | 10 | 31-Jul-26 | 42 | 1156 | Weston 1600 | 5,640.00 USD | 4,700.00 USD |
| 2100 | General Factory Machinery and Equipment | 405-0 | NICOLET IS20 MID INFRARED SPECTROMETER | 28-Feb-23 | 1-May-19 | 10 | 1-May-24 | 14 | 1155 | WSH Weston 1600 | 19,743.73 USD | 12,172.00 USD |
| 2100 | General Factory Machinery and Equipment | 40534-0 | Retrofit 12oz Sleek Cans Assembly | 28-Feb-23 | 18-Nov-21 | 10 | 18-Nov-26 | 45 | 1000USPHX | Phoenix Plant | 204,667.02 USD | 177,376.00 USD |
| 2100 | General Factory Machinery and Equipment | 406-0 | VALPRO NICOLTE SERIES FT-IR # 834-103400 | 28-Feb-23 | 1-May-19 | 10 | 1-May-24 | 14 | 1155 | WSH Weston 1600 | 524.00 USD | 321.00 USD |
| 2100 | General Factory Machinery | 40612-0 | Packer for non-returnables Variopac | 28-Feb-23 | 1-Feb-22 | 10 | 1-Feb-27 | 48 | 1000USPHX | Phoenix Plant | 3,261.71 USD | 2,908.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | |
|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 40617-0 | U.S. Bank Forklift 2020 Yale NR035DB-1 | 28-Feb-23 | 1-Dec-21 | 10 | 1-Dec-26 | 46 | 1000USPHX | Phoenix Plant | 43,047.55 USD | 33,720.00 USD |
| 2100 | General Factory Machinery and Equipment | 40618-0 | U.S. Bank Forklift 2020 Yale NR035DB-2 | 28-Feb-23 | 1-Dec-21 | 10 | 1-Dec-26 | 46 | 1000USPHX | Phoenix Plant | 43,047.55 USD | 33,720.00 USD |
| 2100 | General Factory Machinery and Equipment | 40634-0 | Weston to Pembroke Pines Shot Line | 28-Feb-23 | 31-Dec-21 | 10 | 31-Dec-26 | 47 | 1000US3PP | Sheridan Building | 23,941,419.39 USD | 19,455,065.00 USD |
| 2100 | General Factory Machinery and Equipment | 40635-0 | Domino Case Coder - 4 Pk (#2) | 28-Feb-23 | 12-Apr-22 | 10 | 12-Apr-27 | 50 | 1000USPHX | Phoenix Plant | 52,144.97 USD | 46,060.00 USD |
| 2100 | General Factory Machinery and Equipment | 40637-0 | Trans-Market Noo Fusion Upgrade | 28-Feb-23 | 31-Dec-21 | 10 | 31-Dec-26 | 47 | 1000USPHX | Phoenix Plant | 4,049,866.46 USD | 3,307,390.00 USD |
| 2100 | General Factory Machinery and Equipment | 40638-0 | Weston-PP (Sheridan) Prod Line Support | 28-Feb-23 | 31-Dec-21 | 10 | 31-Dec-26 | 47 | 1000US3PP | Sheridan Building | 3,503,282.42 USD | 2,861,012.00 USD |

| 2100 | General Factory Machinery and Equipment | 40640-0 | VALVE BOTTLE FILLER | 28-Feb-23 | 31-Dec-21 | 10 | 31-Dec-26 | 47 | 1000USHQ | 1600 HQ | 439,816.80 USD | 344,522.00 USD |
|------|-----------------------------------------|---------|---------------------|-----------|-----------|-----|-----------|-----|------------|----------------|----------------|----------------|
| 2100 | General Factory Machinery and Equipment | 40644-0 | 4-MICRO2BLENDER | 28-Feb-23 | 31-Dec-21 | 10 | 31-Dec-26 | 47 | 1000USHQ | 1600 HQ | 1,366,197.50 USD | 1,070,188.00 USD |
| 2100 | General Factory Machinery and Equipment | 40654-0 | LongBow - BlueJay TMS Implementation | 28-Feb-23 | 31-Dec-21 | 10 | 31-Dec-26 | 47 | 1156 | Weston 1600 | 324,720.00 USD | 288,214.00 USD |
| 2100 | General Factory Machinery and Equipment | 407-0 | UNITY VALPRO FOR FT-IR # 701-952700 | 28-Feb-23 | 1-May-19 | 10 | 1-May-24 | 14 | 1155 | WSH Weston 1600 | 1,259.59 USD | 777.00 USD |
| 2100 | General Factory Machinery and Equipment | 40737-0 | 3545573 ALB 1756 L83EP Controllogix | 28-Feb-23 | 27-Apr-22 | 10 | 27-Apr-27 | 51 | 1155 | WSH Weston 1600 | 14,177.53 USD | 12,759.00 USD |
| 2100 | General Factory Machinery and Equipment | 40794-0 | Powerflex 525 | 28-Feb-23 | 30-Apr-22 | 10 | 30-Apr-27 | 51 | 1156 | Weston 1600 | 3,774.96 USD | 3,428.00 USD |
| 2100 | General Factory Machinery | 40795-0 | Retrofit for 16oz Line 1A | 28-Feb-23 | 30-Apr-22 | 10 | 30-Apr-27 | 51 | 1000USPHX | Phoenix Plant | 28,395.72 USD | 25,792.00 USD |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | and Equipment | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 40796-0 | Compact Oscilloscope | 28-Feb-23 | 30-Apr-22 | 10 | 30-Apr-27 | 51 | 1000USPHX | Phoenix Plant | 3,888.07 USD | 3,531.00 USD |
| 2100 | General Factory Machinery and Equipment | 408-0 | OMNIC SPECTA UPGRADE # 833-037600 | 28-Feb-23 | 1-May-19 | 10 | 1-May-24 | 14 | 1155 | WSH Weston 1600 | 6,289.67 USD | 3,878.00 USD |
| 2100 | General Factory Machinery and Equipment | 40802-0 | Krones fill, conveyor, & pack | 28-Feb-23 | 31-May-22 | 10 | 31-May-27 | 52 | 1000USPHX | Phoenix Plant | 29,439.88 USD | 26,986.00 USD |
| 2100 | General Factory Machinery and Equipment | 40814-0 | Border States FLK-II910 | 28-Feb-23 | 12-Jul-22 | 10 | 12-Jul-27 | 53 | 1000USPHX | Phoenix Plant | 29,545.93 USD | 27,575.00 USD |
| 2100 | General Factory Machinery and Equipment | 40815-0 | Krones Project Line 2 PHX | 28-Feb-23 | 31-Aug-22 | 10 | 31-Aug-27 | 55 | 1000USPHX | Phoenix Plant | 15,540,882.20 USD | 14,763,837.00 USD |
| 2100 | General Factory Machinery and Equipment | 40817-0 | Pallet Wrapper Scale 1 | 28-Feb-23 | 31-Aug-22 | 10 | 31-Aug-27 | 55 | 1000USHQ | 1600 HQ | 6,886.65 USD | 6,542.00 USD |

| 2100 | General Factory Machinery and Equipment | 40818-0 | Pallet Wrapper Scale 2 | 28-Feb-23 | 31-Aug-22 | 10 | 31-Aug-27 | 55 | 1000USHQ | 1600 HQ | 6,886.65 USD | 6,542.00 USD |
| 2100 | General Factory Machinery and Equipment | 40819-0 | Bottle Filler | 28-Feb-23 | 31-Aug-22 | 10 | 31-Aug-27 | 55 | 1000USHQ | 1600 HQ | 33,178.29 USD | 31,519.00 USD |
| 2100 | General Factory Machinery and Equipment | 40820-0 | Kaeko PHX CO2 Tanks Installation | 28-Feb-23 | 31-Aug-22 | 10 | 31-Aug-27 | 55 | 1000USPHX | Phoenix Plant | 54,069.84 USD | 51,365.00 USD |
| 2100 | General Factory Machinery and Equipment | 40821-0 | Vac-U-Max Bulk Bag unloading system | 28-Feb-23 | 31-Aug-22 | 10 | 31-Aug-27 | 55 | 1000US3PP | Sheridan Building | 119,103.00 USD | 113,146.00 USD |
| 2100 | General Factory Machinery and Equipment | 40822-0 | Seamer Body | 28-Feb-23 | 31-Aug-22 | 10 | 31-Aug-27 | 55 | 1000USHQ | 1600 HQ | 167,374.00 USD | 159,004.00 USD |
| 2100 | General Factory Machinery and Equipment | 40823-0 | Capper With Elevator | 28-Feb-23 | 31-Aug-22 | 10 | 31-Aug-27 | 55 | 1000USHQ | 1600 HQ | 151,601.00 USD | 144,020.00 USD |
| 2100 | General Factory Machinery | 40824-0 | Capper With Elevator Sorter | 28-Feb-23 | 31-Aug-22 | 10 | 31-Aug-27 | 55 | 1000US3PP | Sheridan Building | 121,280.80 USD | 115,216.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | | |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 40825-0 | Micro 2 Blender | 28-Feb-23 | 31-Aug-22 | 10 | 31-Aug-27 | 55 | 1000US3PP | Sheridan Building | 69,811.80 USD | 66,320.00 USD |
| 2100 | General Factory Machinery and Equipment | 40827-0 | VRF Extractor | 28-Feb-23 | 31-Aug-22 | 10 | 31-Aug-27 | 55 | 1000USHQ | 1600 HQ | 9,559.69 USD | 9,081.00 USD |
| 2100 | General Factory Machinery and Equipment | 40828-0 | 125A/PO2824 Install TDPR | 28-Feb-23 | 31-Aug-22 | 10 | 31-Aug-27 | 55 | 1000USHQ | 1600 HQ | 1,852.65 USD | 1,760.00 USD |
| 2100 | General Factory Machinery and Equipment | 40829-0 | 125B/PO2824 Install TDPR | 28-Feb-23 | 31-Aug-22 | 10 | 31-Aug-27 | 55 | 1000USHQ | 1600 HQ | 1,852.65 USD | 1,760.00 USD |
| 2100 | General Factory Machinery and Equipment | 40834-0 | Melter P7 2h/G 400/480V Delta | 28-Feb-23 | 30-Nov-22 | 10 | 30-Nov-27 | 58 | 1000USPHX | Phoenix Plant | 9,819.11 USD | 9,491.00 USD |
| 2100 | General Factory Machinery and Equipment | 40835-0 | Melter P4 2HG 400480V Delta | 28-Feb-23 | 30-Nov-22 | 10 | 30-Nov-27 | 58 | 1000USPHX | Phoenix Plant | 9,633.11 USD | 9,311.00 USD |

| 2100 | General Factory Machinery and Equipment | 40837-0 | 116 Mechanical Pits & Sectional Doors | 28-Feb-23 | 1-Dec-22 | 10 | 1-Dec-27 | 58 | 1000USPHX | Phoenix Plant | 7,540.00 USD | 7,351.00 USD |
| 2100 | General Factory Machinery and Equipment | 409-0 | LITESIZER 155761 | 28-Feb-23 | 1-May-19 | 10 | 1-May-24 | 14 | 1155 | WSH Weston 1600 | 42,359.85 USD | 26,122.00 USD |
| 2100 | General Factory Machinery and Equipment | 410-0 | MODULE BM 10 155764 | 28-Feb-23 | 1-May-19 | 10 | 1-May-24 | 14 | 1155 | WSH Weston 1600 | 7,915.36 USD | 4,879.00 USD |
| 2100 | General Factory Machinery and Equipment | 411-0 | KALLIOPE PROFESSIONAL 166116 | 28-Feb-23 | 1-May-19 | 10 | 1-May-24 | 14 | 1155 | WSH Weston 1600 | 3,822.15 USD | 2,354.00 USD |
| 2100 | General Factory Machinery and Equipment | 412-0 | NIST TRACEABLE STANDARD 0.002% 182213 | 28-Feb-23 | 1-May-19 | 10 | 1-May-24 | 14 | 1155 | WSH Weston 1600 | 142.76 USD | 85.00 USD |
| 2100 | General Factory Machinery and Equipment | 413-0 | ZETA POTENTIAL MATERIAL 175108 | 28-Feb-23 | 1-May-19 | 10 | 1-May-24 | 14 | 1155 | WSH Weston 1600 | 32.53 USD | 17.00 USD |
| 2100 | General Factory Machinery | 414-0 | DT PRO MPIII INTERFACE-LOGGER MPIII PRES | 28-Feb-23 | 1-May-19 | 10 | 1-May-24 | 14 | 1155 | WSH Weston 1600 | 5,964.83 USD | 3,676.00 USD |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | and Equipment | | | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 415-0 | AUDIT TO 5224 AND 6252R | 28-Feb-23 | 1-May-19 | 10 | 1-May-24 | 14 | 1155 | WSH Weston 1600 | 3,412.73 USD | 2,102.00 USD |
| 2100 | General Factory Machinery and Equipment | 416-0 | Brand new cable for bar line | 28-Feb-23 | 1-Jun-19 | 10 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 775.19 USD | 482.00 USD |
| 2100 | General Factory Machinery and Equipment | 417-0 | Ran new conduit for Air Force One | 28-Feb-23 | 1-Jun-19 | 10 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 2,703.42 USD | 1,686.00 USD |
| 2100 | General Factory Machinery and Equipment | 418-0 | Ran new power fro homoganizer | 28-Feb-23 | 1-Jun-19 | 10 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 638.95 USD | 398.00 USD |
| 2100 | General Factory Machinery and Equipment | 419-0 | Conduit/ Pulled wire for Dishwasher | 28-Feb-23 | 1-Jun-19 | 10 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 1,795.48 USD | 1,120.00 USD |
| 2100 | General Factory Machinery and Equipment | 420-0 | FIS-3/7/19- PO2760 | 28-Feb-23 | 1-Jun-19 | 10 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 39,770.00 USD | 24,856.00 USD |

| 2100 | General Factory Machinery and Equipment | 421-0 | FIS-03/13/19-PO2976 | 28-Feb-23 | 1-Jun-19 | 10 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 26,400.00 USD | 16,500.00 USD |
| 2100 | General Factory Machinery and Equipment | 422-0 | 5144806/PO2554 | 28-Feb-23 | 1-Jun-19 | 10 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 30,053.00 USD | 18,780.00 USD |
| 2100 | General Factory Machinery and Equipment | 423-0 | 5159377/PO2554 | 28-Feb-23 | 1-Jun-19 | 10 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 1,364.00 USD | 850.00 USD |
| 2100 | General Factory Machinery and Equipment | 4890-0 | SpecMetrix ACS Container System | 28-Feb-23 | 26-Aug-20 | 10 | 26-Aug-25 | 30 | 1000USPHX | Phoenix Plant | 34,762.00 USD | 25,779.00 USD |
| 2100 | General Factory Machinery and Equipment | 692-0 | Equipment - 2006 Additions | 28-Feb-23 | 1-Jul-19 | 5 | 1-Jul-24 | 16 | 1155 | WSH Weston 1600 | 5,572.00 USD | 1,483.00 USD |
| 2100 | General Factory Machinery and Equipment | 696-0 | ROTARY MIXER UNIT SIZE 140 #LD011900226 | 28-Feb-23 | 1-Jun-19 | 5 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 150,413.59 USD | 93,159.00 USD |
| 2100 | General Factory Machinery | 697-0 | AQUA PI #3500 | 28-Feb-23 | 1-Jun-19 | 5 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 6,620.00 USD | 1,654.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2100 | General Factory Machinery and Equipment | 699-0 | MICRO2 BLENDER | 28-Feb-23 | 1-Jun-19 | 5 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 393,682.00 USD | 98,418.00 USD |
| 2100 | General Factory Machinery and Equipment | 700-0 | ROTARY BATCH MIXER MODEL 700 TS-75-SS | 28-Feb-23 | 1-Jun-19 | 5 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 602,759.77 USD | 444,538.00 USD |
| 2100 | General Factory Machinery and Equipment | 701-0 | 1200 & 1600 AMP for Generator | 28-Feb-23 | 1-Jun-19 | 5 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 55,000.00 USD | 13,749.00 USD |
| 2100 | General Factory Machinery and Equipment | 702-0 | T550-RTV-X-RAY | 28-Feb-23 | 1-Jun-19 | 5 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 38,700.00 USD | 9,675.00 USD |
| 2100 | General Factory Machinery and Equipment | 703-0 | BANG REFRIGERATED BARREL COOLER | 28-Feb-23 | 1-Jun-19 | 5 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 103,500.00 USD | 25,875.00 USD |
| 2100 | General Factory Machinery and Equipment | 704-0 | Forklift LPG Cushion Sitdown | 28-Feb-23 | 1-Jun-19 | 5 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 1,516.58 USD | 377.00 USD |

| 2100 | General Factory Machinery and Equipment | 705-0 | INV1368216/ EQ068885-1 | 28-Feb-23 | 1-Jun-19 | 5 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 504.42 USD | 125.00 USD |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 706-0 | LIFT TRUCK MODEL ERP030VF | 28-Feb-23 | 1-Jun-19 | 5 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 29,262.20 USD | 7,313.00 USD |
| 2100 | General Factory Machinery and Equipment | 707-0 | EQUIPINVtAX-TXSB759 | 28-Feb-23 | 1-Jun-19 | 5 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 9,679.76 USD | 2,419.00 USD |
| 2100 | General Factory Machinery and Equipment | 708-0 | CHUTE-1 RAIL CHUTE INCLUDES ELBOW | 28-Feb-23 | 1-Jun-19 | 5 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 20,694.50 USD | 5,173.00 USD |
| 2100 | General Factory Machinery and Equipment | 709-0 | Flexible Skatewheel Conveyor | 28-Feb-23 | 1-Jun-19 | 5 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 1,476.12 USD | 365.00 USD |
| 2100 | General Factory Machinery and Equipment | 710-0 | Tookout steam generator,installed heater | 28-Feb-23 | 1-Jun-19 | 5 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 320.00 USD | 79.00 USD |
| 2100 | General Factory Machinery | 711-0 | Motion sensor front office | 28-Feb-23 | 1-Jun-19 | 5 | 1-Jun-24 | 15 | 1155 | WSH Weston 1600 | 280.00 USD | 69.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 712-0 | Two (2) Motorized Walkie Pallet Trucks | 28-Feb-23 | 1-Jul-19 | 5 | 1-Jul-24 | 16 | 1155 | WSH Weston 1600 | 8,318.00 USD | 2,216.00 USD |
| 2100 | General Factory Machinery and Equipment | 713-0 | Forklift cushion sitdown | 28-Feb-23 | 1-Jul-19 | 5 | 1-Jul-24 | 16 | 1155 | WSH Weston 1600 | 1,191.83 USD | 315.00 USD |
| 2100 | General Factory Machinery and Equipment | 714-0 | New conduit for warmer | 28-Feb-23 | 1-Jul-19 | 5 | 1-Jul-24 | 16 | 1155 | WSH Weston 1600 | 1,051.58 USD | 277.00 USD |
| 2100 | General Factory Machinery and Equipment | 715-0 | Combi Alphapack (final phase) | 28-Feb-23 | 1-Jul-19 | 5 | 1-Jul-24 | 16 | 1155 | WSH Weston 1600 | 30,265.00 USD | 8,070.00 USD |
| 2100 | General Factory Machinery and Equipment | 716-0 | Videojet | 28-Feb-23 | 1-Jul-19 | 5 | 1-Jul-24 | 16 | 1155 | WSH Weston 1600 | 15,705.34 USD | 4,184.00 USD |
| 2100 | General Factory Machinery and Equipment | 717-0 | Cables for Generator & Service call | 28-Feb-23 | 1-Jul-19 | 5 | 1-Jul-24 | 16 | 1155 | WSH Weston 1600 | 6,842.00 USD | 1,821.00 USD |

| 2100 | General Factory Machinery and Equipment | 720-0 | Running pipe and packaging equip | 28-Feb-23 | 1-Jul-19 | 5 | 1-Jul-24 | 16 | 1155 | WSH Weston 1600 | 4,295.46 USD | 1,141.00 USD |
| 2100 | General Factory Machinery and Equipment | 721-0 | Powered motors and warmer | 28-Feb-23 | 1-Jul-19 | 5 | 1-Jul-24 | 16 | 1155 | WSH Weston 1600 | 1,774.68 USD | 472.00 USD |
| 2100 | General Factory Machinery and Equipment | 722-0 | Warehouse Racks | 28-Feb-23 | 1-Jul-19 | 5 | 1-Jul-24 | 16 | 1155 | WSH Weston 1600 | 3,789.83 USD | 1,010.00 USD |
| 2100 | General Factory Machinery and Equipment | 723-0 | Conduit for warmer/motors for conveyors | 28-Feb-23 | 1-Jul-19 | 5 | 1-Jul-24 | 16 | 1155 | WSH Weston 1600 | 3,205.18 USD | 851.00 USD |
| 2100 | General Factory Machinery and Equipment | 724-0 | New power for glue machine in bottle lin | 28-Feb-23 | 1-Jul-19 | 5 | 1-Jul-24 | 16 | 1155 | WSH Weston 1600 | 515.61 USD | 134.00 USD |
| 2100 | General Factory Machinery and Equipment | 7243-0 | HYDRAULICSCISSORLIFT-EHLT-4848-3-43 | 28-Feb-23 | 10-Sep-20 | 10 | 10-Sep-25 | 31 | 1000USPHX | Phoenix Plant | 5,913.60 USD | 4,433.00 USD |
| 2100 | General Factory Machinery | 7244-0 | HYDRAULICSCISSORLIFT-EHLT-4848-3-43 | 28-Feb-23 | 10-Sep-20 | 10 | 10-Sep-25 | 31 | 1000USPHX | Phoenix Plant | 5,913.60 USD | 4,433.00 USD |

| | and Equipment | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2100 | General Factory Machinery and Equipment | 725-0 | Start up packaging machine | 28-Feb-23 | 1-Jul-19 | 5 | 1-Jul-24 | 16 | 1155 | WSH Weston 1600 | 80.00 USD | 21.00 USD |
| 2100 | General Factory Machinery and Equipment | 726-0 | Pneumatic Conveyance System | 28-Feb-23 | 1-Jul-19 | 5 | 1-Jul-24 | 16 | 1155 | WSH Weston 1600 | 570.97 USD | 148.00 USD |
| 2100 | General Factory Machinery and Equipment | 727-0 | Pneumatic Conveyance System | 28-Feb-23 | 1-Jul-19 | 5 | 1-Jul-24 | 16 | 1155 | WSH Weston 1600 | 28,400.40 USD | 7,363.00 USD |
| 2100 | General Factory Machinery and Equipment | 728-0 | Setup for new machines | 28-Feb-23 | 1-Jul-19 | 5 | 1-Jul-24 | 16 | 1155 | WSH Weston 1600 | 2,963.22 USD | 788.00 USD |
| 2100 | General Factory Machinery and Equipment | 729-0 | Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 9,576.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 730-0 | Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 11,797.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 731-0 | Scale | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,450.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 732-0 | Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 18,527.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 733-0 | Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 2,368.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 734-0 | Tanks | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 36,500.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 735-0 | Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 18,345.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 736-0 | Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,259.00 USD | 0.00 USD |
| 2100 | General Factory Machinery | 737-0 | Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 2,040.00 USD | 0.00 USD |

| | and Equipment | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2100 | General Factory Machinery and Equipment | 738-0 | Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,322.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 739-0 | Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,703.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 740-0 | Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 2,809.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 741-0 | Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 11,030.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 742-0 | Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 4,254.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 743-0 | Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 132,985.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 744-0 | Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 37,124.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 745-0 | Capping Machine | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 36,800.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 746-0 | Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 181,792.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 747-0 | Palace Packing Machine | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 6,300.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 748-0 | Hamrick Manufacturing | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 6,834.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 749-0 | Cavalla Inc. | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 2,256.00 USD | 0.00 USD |
| 2100 | General Factory Machinery | 750-0 | Palace Packaging | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,740.00 USD | 0.00 USD |

| | and Equipment | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2100 | General Factory Machinery and Equipment | 751-0 | WM B Cresse | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 5,289.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 752-0 | EB Machinery | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 7,500.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 753-0 | D Controls | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 2,707.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 754-0 | Hamrick Manufacturing | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 3,301.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 755-0 | American Express - Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 4,094.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 756-0 | EZ Seal 300SL Heat Shrink Tunnel | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 171,753.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 757-0 | Cavalla-Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 5,540.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 758-0 | Palace Packaging | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 47,300.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 759-0 | Warehouse Plan -Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 5,983.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 760-0 | WM B Cresse-Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 15,878.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 761-0 | Warehouse Plan Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 2,120.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 762-0 | Warehouse Plan Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,072.00 USD | 0.00 USD |
| 2100 | General Factory Machinery | 763-0 | Warehouse Plan Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 54,855.00 USD | 0.00 USD |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | and Equipment | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 764-0 | Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 113,308.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 765-0 | Crown Lift Truck | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 96,449.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 766-0 | American Express-Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 2,204.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 767-0 | Palace Packaging Machine | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 8,760.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 768-0 | Associated Packing Inc-Equipment | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,345.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 769-0 | Equipment - 2006 Additions | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 980,037.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 770-0 | Equipment - 2006 Additions | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 5,572.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 771-0 | MX - 5 BAR MIXER | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 13,924.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 772-0 | Genesis R&D Lab Software | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 4,011.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 773-0 | PATTERSON KELLY V BLENDER | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 42,745.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 774-0 | HANDHELD RF | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 26,565.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 775-0 | WATER FILTRATION SYSTEM | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 19,037.00 USD | 0.00 USD |
| 2100 | General Factory Machinery | 776-0 | AXON STYROTECH J BOX | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 33,910.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | |
|------|------|-------|------|------|------|---|------|----------|------|------------------|------------------|----------|
| 2100 | General Factory Machinery and Equipment | 777-0 | T500 SSV-X FILL LEVEL INSPECTION SYSTEM | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 32,846.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 778-0 | FINNIGAN SURVEYOR, AUTO SAMPLER PLUS | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 39,775.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 779-0 | 4 X 1600 GALLON TANKS | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 31,800.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 780-0 | WAUKESHA MODEL 30U PUMP | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 6,410.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 781-0 | EZ Seal 200SL System | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 49,003.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 782-0 | AXON STYROTECH EZ SEAL 200 | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 144,120.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 783-0 | AQUALAB WATER ACTIVITY METER SERIES | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 6,750.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 784-0 | SR8 PLUS | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 13,695.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 785-0 | WTX4 - WEIGHTBAR TANK WEIGH SYSTEM | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 21,323.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 786-0 | TRAP & WRAP LABELER | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 6,715.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 787-0 | FRAIN - USED STROKES RB2 | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 16,618.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 788-0 | 1754 PATTERSON KELLY BLENDER | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 8,200.00 USD | 0.00 USD |
| 2100 | General Factory Machinery | 789-0 | GREERCO MODEL W750H COLLOID MILL | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 85,011.00 USD | 0.00 USD |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | and Equipment | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 790-0 | PROCESSING EQUIP FOR TANKS | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 6,784.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 791-0 | QUALICAPS - HICAPSEAL | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 280,000.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 792-0 | CIP CLEANING SYSTEM | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 13,560.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 794-0 | MODEL SV8 VACCUM PUMP | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,805.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 795-0 | MODEL L4RT LAB MIXER - HOMOGENIZER | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 4,068.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 796-0 | COPYSTAR 2550 | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 7,164.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 797-0 | IKA R&D LAB MIXER | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,679.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 798-0 | TABLETOP CONVEYOR - BOSCH LINE | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 7,209.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 799-0 | CENTERGUIDE - RTD LINE | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,818.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 800-0 | CONVEYOR - POWER RUSH | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 18,632.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 801-0 | WB CREASE - CONVEYORS | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 18,632.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 802-0 | WB CREASE - INSTALL TANKS | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 10,500.00 USD | 0.00 USD |
| 2100 | General Factory Machinery | 803-0 | WB CREASE - ADD 4 1600 GAL TANKS | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 4,572.00 USD | 0.00 USD |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | and Equipment | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 804-0 | QSSI 7535 LASER SCANNER | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 3,540.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 805-0 | SCALEMEN OF FL - COMPACT BALANCE | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,138.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 806-0 | FOGG - MIDDLE CONVEYOR | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 2,702.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 808-0 | Inline Filling - pump, overflow tank | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 18,768.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 809-0 | SCALEMEN OF FL - IND BALANCE | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 8,835.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 810-0 | PM SCIENTIFIC TENSIOMETER | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 6,040.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 811-0 | SCALEMEN OF FL - DIGITAL SCALE | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,585.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 812-0 | SCALEMEN OF FL - 10K FLOOR SCALE | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,956.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 813-0 | PALACE PKG - BOTTLE UNSCRAMBLER | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 32,665.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 814-0 | WB CREASE - THOMSEN PUMP | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,143.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 815-0 | LESTRONIC FLOOR SCRUBBER | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 5,617.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 816-0 | VACCUM BARRIER - EASY DOSER | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 28,829.00 USD | 0.00 USD |
| 2100 | General Factory Machinery | 817-0 | Inline Filling - Cap sorter & pump | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 26,350.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 2100 | General Factory Machinery and Equipment | 818-0 | AXON - KNIFE ASSEMBLY | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 6,199.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 819-0 | EQUIPMENT - 4141 | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 22,230.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 820-0 | EQUIPMENT - 1500 | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 8,524.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 821-0 | FOGG - MIDDLE UNIT | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 5,640.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 822-0 | BOSCH - MICRO TABLET PRESS | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 62,700.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 823-0 | NATOLI ENG - TABLET TESTER | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 11,680.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 824-0 | RINGPOWER - SULLAIR AIR COMPRESSOR | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 31,989.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 825-0 | BRADFORD - EQUIPMENT | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 30,709.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 827-0 | 10 Quali-Seal Kit | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,209.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 828-0 | T Flop Green Assembly | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,729.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 829-0 | D CONTROLS EQUIP | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 6,703.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 830-0 | Axon Model EZ-300 Heat Shrink | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 107,800.00 USD | 0.00 USD |
| 2100 | General Factory Machinery | 832-0 | Ring Power Column Protectors | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 2,309.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | | |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 833-0 | Ring Power Steel Entry Track Guides | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 9,365.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 834-0 | Right Angle Mixer 350 RPM | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,895.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 835-0 | Scaleme Analytical Balance | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 6,479.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 836-0 | Agilent Tech 1200 Binary Pump | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 12,421.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 837-0 | Agilent Tech 1200 Micron Vacum Degasser | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 3,278.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 838-0 | Agilent 1200 Auto Sample | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 9,584.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 839-0 | Agilent 1200 Termostat Column | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 2,836.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 840-0 | Agilent Tech 1200 Diode Array Detector | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 13,800.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 841-0 | Agilent 1200 HPLC 2D Chemstation | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 7,000.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 842-0 | Agilent 1200 Chemstation Spectral | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 2,309.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 843-0 | Goodway Vapor Steam Cleaner | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 6,059.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 844-0 | Analytical Balance Scaleman | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 2,195.00 USD | 0.00 USD |
| 2100 | General Factory Machinery | 845-0 | ELECTRONIC 8" SIEVES | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 3,650.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | | |
| 2100 | General Factory Machinery and Equipment | 846-0 | Goodway Vapor Steam Cleaner | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 6,000.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 847-0 | 2 DH90/65 Dehumidifiers | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 6,238.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 848-0 | SUN TECHNOLOGIES EQUIP | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 8,000.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 849-0 | GKF 1400 Dosing Disk | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 23,097.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 850-0 | SPRINKMAN CHILLER UNIT | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 23,411.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 851-0 | SUN PACKAGING SHRINK TUNNEL/SEALER | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 8,480.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 852-0 | SPRINKMAN STRAIGHT LINE STRAINER | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,550.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 853-0 | SCALEMEN FLOOR SCALE | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 7,835.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 854-0 | SCALEMEN - TANK SCALE SYSTEM | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 5,840.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 856-0 | FOGG - CANTER GUIDE | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 4,407.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 857-0 | GoIndustry HPLC Degasser | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 30,972.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 858-0 | Gemaire Heat Pump Y System | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 10,714.00 USD | 0.00 USD |
| 2100 | General Factory Machinery | 859-0 | Comp Air - Air Compressor Install | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 21,800.00 USD | 0.00 USD |

| | and Equipment | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2100 | General Factory Machinery and Equipment | 860-0 | CAPSULE LINE - Tetra Schedule #1 | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 453,102.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 861-0 | CAPSULE LINE - R&M ALLOCATION | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 29,824.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 862-0 | CAPSULE LINE - INLINE FILING SYSTEM | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 89,600.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 863-0 | CAPSULE LINE - Karlville Tornado 1500 Tu | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 51,460.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 864-0 | CAPSULE LINE - PACKING SYSTEM | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 167,359.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 865-0 | CAPSULE LINE - PALACE PACKAGING SYSTEM | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 148,150.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 866-0 | NANOSCALE MELTING POINT APPARATUS | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,637.00 USD | 0.00 USD |
|------|------|------|------|------|------|---|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 867-0 | SCIENTIFIC GLASS BUCHI ROTOVAP | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,645.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 868-0 | CAPSULE LINE - DROP FUNNEL & ADAPTER | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 2,100.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 869-0 | BOSCH CAPSULE MACHINE | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 750,130.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 870-0 | BOSCH CAPSULE - STEEL CONVEYOR & CONICAL | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 6,732.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 871-0 | BOSCH CAPSULE - Qualicaps Hicapseal | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 278,250.00 USD | 0.00 USD |
| 2100 | General Factory Machinery | 872-0 | BOSCH CAPSULE - QUALIACAPS VACCUM PUMP | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 9,331.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | | | | | | | | | | | |
|------|------|------|------|------|------|------|------|------|------|------|------|------|
| 2100 | General Factory Machinery and Equipment | 873-0 | BOSCH CAPSULE TECHCEUTICALS FITZMILL MOD | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 5,000.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 874-0 | BOSCH CAPSULE - TECHCEUTICALS TABLET DED | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 23,586.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 875-0 | SELF-PROPELLED SCISSOR LIFT | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 6,393.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 876-0 | ABT ELECTRONICS | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,458.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 877-0 | RESTAURANT DEPOT | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,162.02 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 878-0 | GAS FLUSH SYSTEM | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 3,875.00 USD | 0.00 USD |

| 2100 | General Factory Machinery and Equipment | 879-0 | ACE PUMP & SUPPLY | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,175.94 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 880-0 | MCRADY ENGINEERING | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 685.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 881-0 | Buy out of Lease - Schedule #1 | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 91,279.76 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 882-0 | Capsule Machine - Upper, lower Punch ass | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 35,574.00 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 883-0 | Capsule Machine - Refurbished the Upper, | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 12,419.22 USD | 0.00 USD |
| 2100 | General Factory Machinery and Equipment | 884-0 | Capsule Machine - Refurbished Ejection C | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,940.00 USD | 0.00 USD |
| 2100 | General Factory Machinery | 885-0 | Capsule Machine - Refurbished the Upper | 28-Feb-23 | 1-Jul-10 | 5 | 1-Jul-15 | Complete | 1155 | WSH Weston 1600 | 1,400.00 USD | 0.00 USD |

| | and Equipment | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Results** | | | | | | | | | | | **97,945,020.86 USD** | **72,086,713.19 USD** |

**Schedule 2.1(h)**

**Additional Fixed Assets**

(see attached)

## Additional Fixed Assets – Inventory List (4/30/23)

| Fixed Asset Class | Fixed Asset Class (Text) | Fixed Asset | Fixed Asset (Text) | Additional Parameters (Initial Acquisition Date) | Additional Parameters (Useful Life - Years) | Cost Center | Cost Center (Text) | Acquisition Value | Planned Net book Value | Asset Class |
|---|---|---|---|---|---|---|---|---|---|---|
| 4000 | Assets under construction | 8198-0 | Belvac PHX Can Production Line | 09/18/2020 | # | 1140PHX | Production PHX | 72,182,346.56 USD | 72,182,346.56 USD | Machinery and Equipment |
| 4000 | Assets under construction | 3197-0 | Posimat Access N-40 #2 | 08/18/2020 | # | 1000US3PP | Sheridan Building | 548,187.50 USD | 548,187.50 USD | Machinery and Equipment |
| 4000 | Assets under construction | 40858-0 | 179 Remanufactured Coolers | 03/31/2023 | # | 1220 | General Sales | 75,257.00 USD | 75,257.00 USD | Coolers |

**Section 2.2**
**Excluded Assets**

<u>General</u>

1. All permits, licenses, certificates and registrations listed in <u>Section 5.5</u> of this Disclosure Schedule are Excluded Assets.
2. All insurance policies listed in <u>Section 5.14</u> of this Disclosure Schedule are Excluded Assets.
3. Item 1 set forth in <u>Section 5.11(b)</u> of this Disclosure Schedule is incorporated by reference herein.
4. Vehicles not used or required in the Ordinary Course of Business (including any and all excess marketing vehicles) and/or related to winding down the Florida direct store delivery ("<u>DSD</u>") network.
5. The Selling Entities' rights against employees in any employment or other related agreement, including non-competes and other restrictive covenants.
6. Any and all office furniture at the Florida DSD warehouses.
7. Item 5 set forth in <u>Section 5.15</u> of this Disclosure Schedule is incorporated by reference herein.
8. All items listed under "Intercompany License Agreements" in <u>Section 5.20</u> of this Disclosure Schedule are incorporated by reference herein.

<u>Litigation Matters</u>

1. *VPX & JHO IP Holdings, LLC vs. PhD* (U.S. CD Cal / 2:20-CV-6745).
2. *VPX vs. ProSupps et al.* (Broward Circuit / CACE-12-007083).
3. *VPX vs. Elegance Brands et al.* (U.S. SD Fla / 0:20-cv-61307).
4. *VPX vs. Drink King Distributing* (Broward Circuit / CACE-21-003376).
5. *VPX & JHO IP Holdings vs. Ignite Int'l & James Gracely* (U.S. SD Fla / 21-cv-60451, AAA (Fla) / 01-21-0017-1993).
6. *VPX vs. Brightfractl et al.* (Palm Beach Circuit / 50-2020-CA-005690-XXXX).
7. *VPX vs. Europa Sports Partners* (U.S. SD Fla / Case No. 0:22-cv-60669-XXXX).
8. *VPX vs. Monster & Rodney Sacks* (U.S. SD Fla / 0:22-cv-61621).
9. *VPX vs. Monster & Markerly et al.* (U.S. SD Fla /0-19-cv-61974).
10. *VPX vs. Ball Metal* (AAA (Denver) / 01-21-0000-1032).
11. *VPX vs. Suddath Global Logistics et al.* (Broward Circuit / CACE-21-003572).
12. *VPX vs. Yepes, Daniel* (Broward Circuit / CACE- 21015520).
13. *VPX vs. Triller & Carnegie* (Broward Circuit / CACE-20-016430).
14. *VPX vs. Premier Nutrition Products, LLC & Derik Fay* (Broward Circuit / CACE-21-022185).
15. *VPX vs. Lloyds London* (Broward Circuit /Case No. CACE-22-005500).
16. *VPX vs. Brandyn Alejos et al.* (Broward Circuit / CACE 12-07088).
17. *In re: GNC Holdings, Inc. et al.* (D. De Bkrty./ 20-11662 (KBO) (Ch. 11)).
18. *In re: 24 Hour Fitness Worldwide, Inc. et al.* (U.S. De. Bkrty./ 20-11558-KBO (Ch. 11)).
19. *Vital Pharmaceuticals, Inc.* vs. *Color Brands*, LLC (Broward Circuit).

**Section 2.4(j)**
**Additional Excluded Liabilities**

None.

**Section 2.5(a)**
**Amounts Necessary to Cure Defaults of Assumed Contracts**

To be completed once the Assumed Contracts have been identified in accordance with the Agreement.

**Section 3.1(a)**
**Entourage Assets**

1. See Schedule 3.1(a)(i) attached.

2. See Schedule 3.1(a)(ii) attached.

**Schedule 3.1(a)(i)**

**Entourage IP**

(see attached)

**Section 3.1 (a)(i)**

**The Bang and B Logo Assets**

The BANG and  ("B Logo") Intellectual Property assets subject of Section 3.1(a)(i) include the assets listed in the chart below as well as any other Registered IP related to or containing the BANG mark and/or the B Logo held in the name of Entourage IP Holdings, LLC.

**U.S. Trademarks**

| Mark | Goods and Services | App. Date & No. / Reg. Date & No. | Owner Name |
|---|---|---|---|
| B <br><br>**Design Phrase:** THE MARK CONSISTS OF THE LETTER "B" WITH A CIRCLE WITH FOUR SEGMENTS IN THE CENTER OF IT CREATING A TARGET DESIGN. | **Goods and Services:**<br>**INT. CL. 30** FROZEN CONFECTIONS, NAMELY, FREEZER POPS; FROZEN CONFECTIONS, NAMELY, ICES; NON-DAIRY FROZEN CONFECTIONS<br>**INT. CL. 33** ALCOHOLIC COCKTAILS IN THE FORM OF FROZEN POPS | **App** 26-MAY-2021<br>**App** 90736153 | ENTOURAGE IP HOLDINGS, LLC |
| B <br><br>**Design Phrase:** THE MARK CONSISTS OF THE LETTER "B" WITH A CIRCLE WITH FOUR SEGMENTS IN THE CENTER OF IT CREATING A TARGET DESIGN. | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC BEVERAGES, NAMELY, ALCOHOLIC CARBONATED LIQUOR SHOTS, EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, ALCOHOLIC LIQUOR SHOTS, EXCEPT BEERS | **App** 27-APR-2021<br>**App** 90674518 | ENTOURAGE IP HOLDINGS, LLC |

1

| BANG | Goods and Services:<br>INT. CL. 33 ALCOHOLIC COCKTAILS IN THE FORM OF FROZEN POPS | App 26-MAY-2021<br>App 90736091 | ENTOURAGE IP HOLDINGS, LLC |
|---|---|---|---|
| BANG<br>bang | Goods and Services:<br>INT. CL. 33 ALCOHOLIC COCKTAILS IN THE FORM OF FROZEN POPS | App 26-MAY-2021<br>App 90736179 | ENTOURAGE IP HOLDINGS, LLC |
| BANG | Goods and Services:<br>INT. CL. 33 ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS; ALCOHOLIC SHOTS | App 27-APR-2021<br>App 90674547 | ENTOURAGE IP HOLDINGS, LLC |
| BANG | Goods and Services:<br>INT. CL. 33 ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL | App 10-AUG-2020<br>App 90104169 | ENTOURAGE IP HOLDINGS, LLC |
| BANG HARD SELTZER<br><br>Disclaims: "HARD SELTZER" | Goods and Services:<br>INT. CL. 33 ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC BEVERAGES, NAMELY, ALCOHOLIC CARBONATED LIQUOR SHOTS, EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, ALCOHOLIC LIQUOR SHOTS, EXCEPT BEERS | App 01-JUL-2021<br>App 90805895 | ENTOURAGE IP HOLDINGS, LLC |
| BANG POPS<br><br>Disclaims: "POPS" | Goods and Services:<br>INT. CL. 33 ALCOHOLIC COCKTAILS IN THE FORM OF FROZEN POPS | App 26-MAY-2021<br>App 90736550 | ENTOURAGE IP HOLDINGS, LLC |

DOCS_LA:349529.1 57536/00001

| | Goods and Services: | App 06-OCT-2021 | ENTOURAGE IP HOLDINGS, LLC |
|---|---|---|---|
| BANG SELTZER<br><br>Disclaims: "SELTZER" | **INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS EXCEPT BEER; ALCOHOLIC SHOTS EXCEPT BEER | **App** 97062605 | |
| BE | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPT BEER; ALCOHOLIC SHOTS, EXCEPT BEER | **App** 31-JAN-2022<br>**App** 97246029 | ENTOURAGE IP HOLDINGS, LLC |
| BRINGING THE BANG | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPT BEER; ALCOHOLIC SHOTS, EXCEPT BEER | **App** 07-MAY-2021<br>**App** 90696959 | ENTOURAGE IP HOLDINGS, LLC |
| IBANG<br>**Cross References:** I BANG | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPT BEER; | **App** 07-MAY-2021<br>**App** 90696881 | ENTOURAGE IP HOLDINGS, LLC |

3

| | ALCOHOLIC SHOTS, EXCEPT BEER | | |
| --- | --- | --- | --- |

| | **Goods and Services:** **INT. CL. 33** ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL | **App** 10-AUG-2020 **App** 90104204 **Reg** 03-AUG-2021 **Reg** 6442903 | ENTOURAGE IP HOLDINGS, LLC |
| **Design Phrase:** THE MARK CONSISTS OF THE LETTER "B" WITH A CIRCLE WITH FOUR SEGMENTS IN THE CENTER OF IT CREATING A TARGET DESIGN. | | | |

4

**Foreign Marks**

| Mark | Country | Goods and Services | App. Date & No. / Reg. Date & No. | Owner Name |
|------|---------|---------------------|-----------------------------------|------------|
| B | Argentina | **Goods and Services**<br>**33** Class 33: International Limited<br>ALCOHOLIC BEVERAGES ONLY, NAMELY, HARD TEA [ALCOHOLIC BEVERAGES]; HARD TEA [ALCOHOLIC BEVERAGE]; TEA-FLAVOR ALCOHOLIC BEVERAGES, EXCEPT BEERS; TEA-BASED ALCOHOLIC BEVERAGES; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS [CARBONATED ALCOHOLIC BEVERAGES]; GASIFIED ALCOHOLIC SHORT DRINKS; SHORT ALCOHOLIC DRINKS; | **App** 30-SEP-2021<br>**App** 4058058 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| B | Argentina | **Goods and Services**<br>**33** Class 33: International Limited<br>MANUALLY ENTERED TERMS ONLY: ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, CARBON ALCOHOLIC BEVERAGE; CARBONATED ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC MIXTURES FOR COCKTAILS; ALCOHOLIC ENERGY DRINKS; MIXED ALCOHOLIC BEVERAGES, EXCEPT BEERS; CARBON ALCOHOLIC BEVERAGE; PREMIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; | **App** 22-APR-2021<br>**App** 4004968<br>**Reg** 10-FEB-2023<br>**Reg** 3353791 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| B<br><br>**Design Phrase:** The mark consists of the letter "b" with a circle with four segments in the center of it. | Canada | **33** Alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 10-JUN-2021<br>**App** 2128156 | Entourage IP Holdings, LLC |
| B<br><br>**Design Phrase:** The mark consists of the letter "B" with a | Canada | 33 Alcoholic beverages, except beer; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail. | **App** 25-FEB-2021<br>**App** 2103303 | Entourage IP Holdings, LLC |

5

| | | Goods and Services | | |
|---|---|---|---|---|
| circle with four segments in the center of it creating a target design. | | | | |
| B  | Chile | **Goods and Services**<br>**33** Alcoholic beverages, namely strong tea (malt-based alcoholic beverage); strong tea (alcoholic beverage based on malt); alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely carbonated alcoholic beverages; drinks with alcohol. | **App** 24-SEP-2021<br>**App** 1476063 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| B  | Chile | **Goods and Services**<br>**33** Alcoholic beverages, except beers; Carbonated alcoholic beverages, except beers; Cocktail mixes with alcohol; Energy drinks with alcohol; Mixed alcoholic beverages, except beers; Hard seltzer [light drink with low alcohol content]; Premixed alcoholic beverages other than beer based; Alcoholic cocktail prepared. | **App** 23-APR-2021<br>**App** 1432126 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |

6

| b | India | **Goods and Services:**<br>**33** Alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 10-JUN-2021<br>**App** 5106417 | ENTOURAGE IP HOLDINGS, LLC Body Incorporate (United States of America) |
| b | India | **Goods and Services:**<br>**33** Alcoholic beverages, except beer; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail. | **App** 25-FEB-2021<br>**App** 4962765 | ENTOURAGE IP HOLDINGS, LLC Body Incorporate (United States of America) |
| b<br><br>**Design Phrase:**<br>**Description**<br>**(English)** The mark consists of the letter "b" with a circle with four segments in the center of it. | International Register, designating: AU, BH, BR, CA, CH, CN, CO, EM, GB, IL, IN, IS, JP, KR, MX, MY, NO, NZ, PH, TR | **Goods and Services:**<br>**33** Alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **Reg** 10-JUN-2021<br>**Reg** 1608103 | Entourage IP Holdings, LLC (United States of America) |
| b<br><br>**Design Phrase:** | International Register, designating: AU, BH, BR, CA, CH, CN, CO, CY, EM, GB, IL, IN, IR, IS, JP, KR, MX, MY, NO, NZ, PH, TR | **Goods and Services:**<br>**33** Alcoholic beverages, except beer; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail. | **Reg** 25-FEB-2021<br>**Reg** 1588715 | Entourage IP Holdings, LLC (United States of America) |

7

| Description **(English)** The mark consists of the letter "B" with a circle with four segments in the center of it creating a target design. | | | | |
|---|---|---|---|---|
| **B** | Peru | **Goods and Services** 33 alcoholic beverages, except beer; alcoholic beverages, namely hard soft drinks; carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixes of alcoholic beverages, except beers; hard seltzer (alcopop); premixed alcoholic beverages, other than those based on beer; prepared alcoholic cocktail. | **App** 22-APR-2021 **App** 894210-2021 (2021-894210) **Reg** 30-JUL-2021 **Reg** P00312649 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **B** | Peru | **Goods and Services** 33 alcoholic beverages, namely, hard alcohol; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic beverages, not based on beer; hard seltzer (alcopop), namely premixed alcoholic beverages; shots (shots), namely carbonated alcoholic beverages; shots (shots), namely alcoholic beverages. | **App** 18-SEP-2021 **App** 915335-2021 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **b** ... **DISCLAIMER** None | South Africa | **Goods and Services:** 33 Alcoholic beverages, namely, hard tea; Hard tea; tea-flavored alcoholic beverages, except beers; Alcoholic tea-based beverage; Ready-to-drink alcoholic beverages, other than beer-based; Alcoholic beverages, namely, hard seltzer shots; Alcoholic carbonated shots; Alcoholic shots. | **App** 05-MAY-2021 **App** 2021/12962 | Entourage IP Holdings, LLC, a limited liability company organized and existing under the laws of the State of Florida (United States of America) |
| **B** ... **DISCLAIMER** | South Africa | **Goods and Services:** 33 Alcoholic beverages, except beer; Alcoholic beverages, including, hard seltzer; Alcoholic carbonated beverages, except beer; Alcoholic cocktail mixes; Alcoholic energy drinks; Alcoholic mixed beverages except beers; Hard seltzer; Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail. | **App** 26-FEB-2021 **App** 2021/05428 | Entourage IP Holdings, LLC, a limited liability company organized and existing under the laws of the State of Florida (United States of America) |

8

DOCS_LA:349529.1 57536/00001

| None | | | | |
|---|---|---|---|---|
| **BANG** | Argentina | **Goods and Services**<br>**33** Class 33: International Limited<br>ALCOHOLIC BEVERAGES ONLY, NAMELY, HARD TEA [ALCOHOLIC BEVERAGES]; HARD TEA [ALCOHOLIC BEVERAGE]; TEA-FLAVOR ALCOHOLIC BEVERAGES, EXCEPT BEERS; TEA-BASED ALCOHOLIC BEVERAGES; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS [CARBONATED ALCOHOLIC BEVERAGES]; GASIFIED ALCOHOLIC SHORT DRINKS; SHORT ALCOHOLIC DRINKS; | **App** 30-SEP-2021<br>**App** 4058059 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **BANG** | Argentina | **Goods and Services**<br>**33** Class 33: International Limited<br>ONLY ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, TO KNOW, GASIFIED ALCOHOLIC BEVERAGE; CARBONATED ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC MIXTURES FOR COCKTAILS; ENERGY ALCOHOLIC BEVERAGES; MIXED ALCOHOLIC BEVERAGES, EXCEPT BEERS; GASIFIED ALCOHOLIC BEVERAGE; PREMIXED ALCOHOLIC BEVERAGES, OTHER THAN THOSE BASED ON BEER; PREPARED ALCOHOLIC COCKTAIL; | **App** 27-JAN-2021<br>**App** 3978802 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| BANG<br>**CompuMark Trademark:**<br>BANG | Canada | 33 Alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 04-MAY-2021<br>**App** 2119387 | Entourage IP Holdings, LLC |
| BANG<br>**CompuMark Trademark:**<br>BANG | Canada | 33 Alcoholic beverages, except beer; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail. | **App** 14-AUG-2020<br>**App** 2052280 | Entourage IP Holdings, LLC |
| **BANG** | Chile | **Goods and Services**<br>**33** Alcoholic beverages, namely strong tea (malt-based alcoholic beverage); strong tea (alcoholic beverage based on malt); alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely carbonated alcoholic beverages; drinks with alcohol. | **App** 24-SEP-2021<br>**App** 1476083 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **BANG** | Chile | **Goods and Services**<br>**33** Alcoholic beverages, except beer; carbonated alcoholic beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; mixed alcoholic beverages, except beers; premixed alcoholic beverages not based on beer; prepared alcoholic cocktail. | **App** 15-JAN-2021<br>**App** 1391160 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **BANG** | Colombia | **Goods and Services**<br>**33** alcoholic beverages, namely alcoholic tea; alcoholic teas; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely alcoholic seltzer drinks; alcoholic carbonated drinks; energy drinks with alcohol. | **App** 04-MAY-2021<br>**App** SD20210063763 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **BANG** | India | **Goods and Services:**<br>**33** Alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; | **App** 04-MAY-2021<br>**App** 5046074 | ENTOURAGE IP HOLDINGS, LLC |

| | | Goods and Services | | |
|---|---|---|---|---|
| | | alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | | Body Incorporate (United States of America) |
| **BANG** | International Register, designating AU, BR, CA, CH, CN, CO, EM, GB, IL, IN, IS, JP, KR, MX, MY, NO, NZ, PH, TR | **Goods and Services:** <br> **33** Alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **Reg** 04-MAY-2021 <br> **Reg** 1600400 | Entourage IP Holdings, LLC (United States of America) |
| **BANG** | International Register, designating AU, BH, BR, CA, CH, CN, CO, CY, EM, GB, IL, IN, IR, IS, JP, KR, MX, MY, NO, NZ, PH, TR | **Goods and Services:** <br> **33** Alcoholic beverages, except beer; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail. | **Reg** 14-AUG-2020 <br> **Reg** 1550950 | Entourage IP Holdings, LLC (United States of America) |
| **BANG** | New Zealand | **Goods and Services:** <br> **33** Alcoholic beverages, except beer; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail. | **App** 23-FEB-2022 <br> **App** 1203567 (01203567) | Entourage IP Holdings, LLC (United States of America) |
| **BANG** | Peru | **Goods and Services** <br> **33** alcoholic beverages, except beer; alcoholic beverages, namely hard soft drinks; carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixes of alcoholic beverages, except beers; hard seltzer (alcopop); premixed alcoholic beverages, other than those based on beer; prepared alcoholic cocktail. | **App** 19-JAN-2021 <br> **App** 880350-2021 (2021-880350) <br> **Reg** 28-MAY-2021 <br> **Reg** P00309533 | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |
| **BANG** | Peru | **Goods and Services** <br> **33** alcoholic beverages, namely, hard you; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic beverages, not based on beer; hard seltzer (alcopop), namely premixed alcoholic beverages; shots (shots), namely carbonated alcoholic beverages; shots (shots), namely alcoholic beverages | **App** 18-SEP-2021 <br> **App** 915336-2021 | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |
| **BANG** <br><br> **DISCLAIMER** <br> None | South Africa | **Goods and Services:** <br> **33** Alcoholic beverages, namely, hard tea; Hard tea; tea-flavored alcoholic beverages, except beers; Alcoholic tea-based beverage; Ready-to-drink alcoholic beverages, other than beer-based; Alcoholic beverages, namely, hard seltzer shots; Alcoholic carbonated shots; Alcoholic shots. | **App** 05-MAY-2021 <br> **App** 2021/12965 | Entourage IP Holdings, LLC, a limited liability company organized and existing under the laws of the State of Florida (United States |

10

| | | | | of America) |
|---|---|---|---|---|
| **BANG**<br><br>**DISCLAIMER**<br>None | South Africa | **Goods and Services:**<br>33 Alcoholic beverages, except beer; Alcoholic beverages, including, hard seltzer; Alcoholic carbonated beverages, except beer; Alcoholic cocktail mixes; Alcoholic energy drinks; Alcoholic mixed beverages except beers; Hard seltzer; Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail. | **App** 26-FEB-2021<br>**App** 2021/05429 | Entourage IP Holdings, LLC, a limited liability company organized and existing under the laws of the State of Florida (United States of America) |
| **BANG**<br><br>**DISCLAIMER**<br>None | South Africa | **Goods and Services:**<br>33 Alcoholic beverages, except beer; Alcoholic beverages, namely, hard seltzer; Alcoholic carbonated beverages, except beer; Alcoholic cocktail mixes; Alcoholic energy drinks; Alcoholic mixed beverages except beers; Hard seltzer; Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail. | **App** 17-AUG-2020<br>**App** 2020/20790 | Entourage IP Holdings, LLC, a limited liability company organized and existing under the laws of the State of Florida (United States of America) |
| **BANG HARD SELTZER** | Argentina | **Goods and Services**<br>33 Class 33: International Limited<br>MANUALLY ENTERED TERMS ONLY: ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, CARBONATED ALCOHOLIC BEVERAGES (HARD SELTZER); CARBONATED ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC MIXES FOR COCKTAILS; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC BLENDED BEVERAGES, EXCEPT BEERS; SPARKLING ALCOHOLIC BEVERAGES (HARD SELTZER); PREMIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA [ALCOHOLIC BEVERAGES]; HARD TEA [ALCOHOLIC BEVERAGE]; TEA-FLAVOR ALCOHOLIC BEVERAGES, EXCEPT BEERS; TEA-BASED ALCOHOLIC BEVERAGES; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS [CARBONATED ALCOHOLIC BEVERAGES]; GASIFIED ALCOHOLIC SHORT DRINKS; SHORT ALCOHOLIC DRINKS; | **App** 16-NOV-2021<br>**App** 4072621 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| BANG HARD SELTZER<br>CompuMark Trademark:<br>BANG HARD SELTZER | Canada | 33 Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 06-JUL-2021<br>**App** 2132280 | Entourage IP Holdings, LLC |
| **BANG HARD SELTZER** | Chile | **Goods and Services**<br>33 Alcoholic beverages, except beers; alcoholic beverages, namely, flavored carbonated alcoholic beverages; carbonated alcoholic beverages, except beer; alcoholic cocktail combinations; | **App** 16-NOV-2021<br>**App** 1483121 | ENTOURAGE IP HOLDINGS, LLC (United States of |

| | | Goods and Services | | |
|---|---|---|---|---|
| | | alcoholic energy drinks; mixed alcoholic beverages, except beers; flavored carbonated alcoholic beverages; premixed alcoholic beverages, not beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, strong tea (malt-based alcoholic beverage); strong tea (malt-based alcoholic beverage); tea flavored alcoholic beverages, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, not beer-based; alcoholic beverages, namely, flavored carbonated alcoholic beverages; carbonated alcoholic drinks (alcoholic beverages); drinks with alcohol (alcoholic beverages). | | America) |
| **BANG HARD SELTZER** | Colombia | **Goods and Services** <br> **33** products to drink with alcohol, except beers; alcoholic beverages, namely hard seltzer; carbonated alcoholic beverages, except beer; mixes with alcohol for cocktails; energy drinks with alcohol; mixed alcoholic beverages, except beers; hard seltzer (fermented carbonated drinks); mixed alcoholic beverages not based on beer; cocktails with alcohol; alcoholic beverages, namely alcoholic tea; alcoholic teas; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely alcoholic seltzer drinks; alcoholic carbonated drinks; energy drinks with alcohol. | **App** 06-JUL-2021 <br> **App** SD20210085348 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **BANG HARD SELTZER** | India | **Goods and Services:** <br> **33** Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 06-JUL-2021 <br> **App** 5135240 | ENTOURAGE IP HOLDINGS, LLC Body Incorporate (United States of America) |
| **BANG HARD SELTZER** | International Register, designating AU, BR, CA, CH, CN, CO, EM, GB, IL, IN, IS, JP, KR, MX, MY, NO, NZ, PH, TR | **Goods and Services:** <br> **33** Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **Reg** 06-JUL-2021 <br> **Reg** 1611848 | Entourage IP Holdings, LLC (United States of America) |
| **BANG HARD SELTZER** | Peru | **Goods and Services** <br> **33** alcoholic beverages, except beer; alcoholic beverages, namely hard seltzer (alcopop); carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages, except beers; hard seltzer (alcopop); premixed alcoholic beverages, not based on beer; prepared alcoholic cocktail; alcoholic beverages, namely hard tea; tea-flavored alcoholic beverages, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic beverages, not based on beer; alcoholic beverages, namely hard seltzer (alcopop) shots; carbonated alcoholic shots; alcoholic shots. | **App** 17-NOV-2021 <br> **App** 924168-2021 (2021-924168) <br> **Reg** 14-JUL-2022 <br> **Reg** P00327719 | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |
| **BANG HARD SELTZER** | South Africa | **Goods and Services:** <br> **33** Alcoholic beverages except beers; Alcoholic beverages, namely, hard seltzer; Alcoholic | **App** 07-JUL-2021 <br> **App** 2021/20621 | Entourage IP Holdings, LLC, a |

12

| | | | | |
|---|---|---|---|---|
| **DISCLAIMER** Registration of this trade mark shall give no right to the exclusive use of the phrase "HARD SELTZER", separately and apart from the mark. Comment: Registration of this trade mark shall give no right to the exclusive use of the phrase "HARD SELTZER", separately and apart from the mark. | | carbonated beverages, except beer; Alcoholic cocktail mixes; Alcoholic energy drinks; Alcoholic mixed beverages except beers; Hard seltzer; Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail; Alcoholic beverages, namely, hard tea; Hard tea; tea-flavored alcoholic beverages, except beers; Alcoholic tea-based beverage; Ready-to-drink alcoholic beverages, other than beer-based; Alcoholic beverages, namely, hard seltzer shots; Alcoholic carbonated shots; Alcoholic shots. | | limited liability company organized and existing under the laws of the State of Florida (United States of America) |
| **BANG MIXX** | Peru | **Goods and Services** **33** alcoholic beverages, except beer; alcoholic beverages, namely hard soft drinks; carbonated alcoholic beverages, except beer; alcoholic energy drinks; hard seltzer (alcopop); prepared alcoholic cocktail. | **App** 04-JUN-2021 **App** 900485-2021 (2021-900485) **Reg** 17-SEP-2021 **Reg** P00314696 | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |
| **BANG MIXX** **DISCLAIMER** None | South Africa | **Goods and Services:** **33** Alcoholic beverages, except beer; Alcoholic beverages, namely, hard seltzer; Alcoholic carbonated beverages, except beer; Alcoholic energy drinks; Hard seltzer; Prepared alcoholic cocktail. | **App** 03-MAR-2021 **App** 2021/06073 | Entourage IP Holdings, LLC, a limited liability company organized and existing under the laws of the State of Florida (United States of America) |

**Patents**

| Application No. | Country | Title | Filing Date |
|---|---|---|---|
| 63/167,359 | United States | ELECTROLYTE-CONTAINING ALCOHOLIC BEVERAGES | 3/29/2021 |
| 17/707,008 | United States | ELECTROLYTE-CONTAINING ALCOHOLIC BEVERAGES | 3/29/2022 |

**Copyrights**

| Title | App. No. / Date Reg. No. / Date | Owner | Screenshot of work |
|-------|----------------------------------|-------|--------------------|
| Bang Hard Seltzer | No. VAu001424265 8/10/2020 | Entourage IP Holdings, LLC |  |
| THE FIXX PINA COLADA | No. 1-9291629381 9/17/2020 | Entourage IP Holdings, LLC |  |
| THE FIXX PURPLE KIDDLES | No. 1-9291890529 9/17/2020 | Entourage IP Holdings, LLC |  |
| THE FIXX STRAWBERRY BLAST | No. VAu001411972 9/17/2020 | Entourage IP Holdings, LLC |  |

| THE FIXX FROSE ROSE | No. 1-9291890665<br>9/17/2020 | Entourage IP Holdings, LLC |  |
|---|---|---|---|

**Entourage IP Holdings' unregistered Intellectual Property as it relates to the BANG and B Logo Assets**

Entourage IP Holdings' unregistered Intellectual Property rights as it relates to the BANG and B Logo assets including:

(a) rights associated with works of authorship, including exclusive exploitation rights, mask work rights, copyrights, copyrightable subject matter, and moral and similar attribution rights, including for can art and packaging design;

(b) rights associated with trademarks, trade dress, service marks, trade names, and design rights, including all common law rights;

(c) proprietary rights in internet domain names, IP addresses, social media and third-party website handles, pages, and accounts including the access information for the same;

(d) trade secrets including formulas, recipes, and ingredients lists including the access information for the same, know-how, technical data, processes, techniques, lists of or information relating to suppliers and customers, pricing lists and methodologies, cost and market share data, marketing and business plans, financial forecasts and histories, and budgets; and

(e) patents, design patents, utility models, industrial design and other industrial property rights;

DOCS_LA:349529.1 57536/00001

**Schedule 3.1(a)(ii)**

**Entourage IP**

(see attached)

## Section 3.1(a)(ii)

## Entourage IP Holdings' Additional IP Filings

The Intellectual Property subject of Section 3.1(a)(ii) includes the Intellectual Property listed in the chart below as well as any other Intellectual Property held in the name of Entourage IP Holdings, LLC not included in Section 3.1(a)(i).

## Entourage IP Holdings' Additional U.S. Trademark Filings

| Mark | Goods and Services | App. Date & No. / Reg. Date & No. | Owner Name |
|---|---|---|---|
| AQUA FUSION | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPT BEER; ALCOHOLIC SHOTS, EXCEPT BEER | **App** 03-FEB-2022<br>**App** 97252631 | ENTOURAGE IP HOLDINGS, LLC |
| AQUA FUZION | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS EXCEPT BEER; ALCOHOLIC SHOTS EXCEPT BEER | **App** 27-SEP-2021<br>**App** 97047657 | ENTOURAGE IP HOLDINGS, LLC |
| BLUE & YELLOW LIMONCELLO<br><br>**Disclaims:** "LIMONCELLO" | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED | **App** 27-APR-2021<br>**App** 90674702 | ENTOURAGE IP HOLDINGS, LLC |

| | ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC BEVERAGES, NAMELY, ALCOHOLIC CARBONATED LIQUOR SHOTS, EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, ALCOHOLIC LIQUOR SHOTS, EXCEPT BEERS | | |
|---|---|---|---|
| BURST | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPT BEER; ALCOHOLIC SHOTS, EXCEPT BEER | **App** 22-JUN-2022<br>**App** 97470895 | ENTOURAGE IP HOLDINGS, LLC |
| EINSTEIN WATER<br><br>**Disclaims:** "WATER" | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL | **App** 02-OCT-2020<br>**App** 90232068 | ENTOURAGE IP HOLDINGS, LLC |
| FROSÉ ROSÉ<br>**Cross References:** FROSE ROSE | **Goods and Services:**<br>**INT. CL. 30** FROZEN CONFECTIONS, NAMELY, FREEZER POPS; FROZEN CONFECTIONS, NAMELY, ICES; NON-DAIRY FROZEN CONFECTIONS, ALL OF THE FORGOING EXCLUDING FROZEN ROSÉ WINE<br>**INT. CL. 33** ALCOHOLIC COCKTAILS IN THE FORM OF FROZEN POPS, ALL OF THE FORGOING EXCLUDING FROZEN ROSÉ WINE | **App** 26-MAY-2021<br>**App** 90736224 | ENTOURAGE IP HOLDINGS, LLC |
| GEORGIA PEACH | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; HARD SELTZER; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC BEVERAGES, NAMELY, ALCOHOLIC CARBONATED LIQUOR SHOTS; ALCOHOLIC BEVERAGES, NAMELY, ALCOHOLIC LIQUOR SHOTS | **App** 27-APR-2021<br>**App** 90674726 | ENTOURAGE IP HOLDINGS, LLC |
| GUESS | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED | **App** 06-OCT-2021<br>**App** 97062634 | ENTOURAGE IP HOLDINGS, LLC |

| | Goods and Services | | |
|---|---|---|---|
| | ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPT BEER; ALCOHOLIC SHOTS, EXCEPT BEER | | |
| HYDRATION NATION | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPTT BEER; ALCOHOLIC SHOTS, EXCEPT BEER | **App** 20-APR-2022<br>**App** 97372672 | ENTOURAGE IP HOLDINGS, LLC |
| HYDRATION SENSATION | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPT BEER; ALCOHOLIC SHOTS, EXCEPT BEER | **App** 26-SEP-2021<br>**App** 97045789 | ENTOURAGE IP HOLDINGS, LLC |
| HYDRO FUZION<br>**Cross References:** HYDRO FUSION | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL | **App** 02-OCT-2020<br>**App** 90232326 | ENTOURAGE IP HOLDINGS, LLC |
| JUMP | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL | **App** 05-OCT-2020<br>**App** 90235807 | ENTOURAGE IP HOLDINGS, LLC |
| KETOLYTES | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; | **App** 04-JUN-2021<br>**App** 90755764 | ENTOURAGE IP HOLDINGS, LLC |

| | ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC LIQUOR CARBONATED SHOTS, EXCEPT BEER; ALCOHOLIC LIQUOR SHOTS, EXCEPT BEER | | |
|---|---|---|---|
| LEMON DROP | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; HARD SELTZER; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC BEVERAGES, NAMELY, ALCOHOLIC CARBONATED LIQUOR SHOTS, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY ALCOHOLIC LIQUOR SHOTS, EXCEPT BEER | **App** 27-APR-2021<br>**App** 90674735 | ENTOURAGE IP HOLDINGS, LLC |
| LOVE | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPT BEER; ALCOHOLIC SHOTS, EXCEPT BEER | **App** 15-AUG-2022<br>**App** 97549236 | ENTOURAGE IP HOLDINGS, LLC |
| MELTDOWN SECRET | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL | **App** 10-SEP-2020<br>**App** 90172574 | ENTOURAGE IP HOLDINGS, LLC |
| MIAMI ENERGY | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK | **App** 24-JUN-2022<br>**App** 97474063 | ENTOURAGE IP HOLDINGS, LLC |

| | | | |
|---|---|---|---|
| | ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPT BEER; ALCOHOLIC SHOTS, EXCEPT BEER | | |
| MIAMI UNICORN | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS; ALCOHOLIC SHOTS | **App** 20-JUN-2022<br>**App** 97466402 | ENTOURAGE IP HOLDINGS, LLC |
| OTHERWORLDLY | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS; ALCOHOLIC SHOTS | **App** 15-AUG-2022<br>**App** 97549324 | ENTOURAGE IP HOLDINGS, LLC |
| OZONE | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPT BEER; ALCOHOLIC SHOTS, EXCEPT BEER | **App** 14-OCT-2021<br>**App** 97074922 | ENTOURAGE IP HOLDINGS, LLC |
| PLANET POMEGRANATE<br><br>**Disclaims:**<br>"POMEGRANATE" | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD | **App** 27-APR-2021<br>**App** 90674876 | ENTOURAGE IP HOLDINGS, LLC |

| | SELTZER SHOTS; ALCOHOLIC BEVERAGES, NAMELY, ALCOHOLIC CARBONATED LIQUOR SHOTS, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, ALCOHOLIC LIQUOR SHOTS, EXCEPT BEER | | |
|---|---|---|---|
| PURE BLOOD | **Goods and Services:** <br> **INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPT BEER; ALCOHOLIC SHOTS, EXCEPT BEER | **App** 15-NOV-2021 <br> **App** 97125769 | ENTOURAGE IP HOLDINGS, LLC |
| PURPLE KIDDLES | **Goods and Services:** <br> **INT. CL. 30** FROZEN CONFECTIONS, NAMELY, FREEZER POPS; FROZEN CONFECTIONS, NAMELY, ICES; NON-DAIRY FROZEN CONFECTIONS <br> **INT. CL. 33** ALCOHOLIC COCKTAILS IN THE FORM OF FROZEN POPS | **App** 26-MAY-2021 <br> **App** 90736269 | ENTOURAGE IP HOLDINGS, LLC |
| QUASH | **Goods and Services:** <br> **INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS EXCEPT BEER; ALCOHOLIC SHOTS EXCEPT BEER | **App** 06-OCT-2021 <br> **App** 97062649 | ENTOURAGE IP HOLDINGS, LLC |
| QUIZ | **Goods and Services:** <br> **INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPT BEER; ALCOHOLIC SHOTS, EXCEPT BEER | **App** 06-OCT-2021 <br> **App** 97062659 | ENTOURAGE IP HOLDINGS, LLC |
| SECRET | **Goods and Services:** <br> **INT. CL. 33** ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, HARD | **App** 10-SEP-2020 <br> **App** 90172534 | ENTOURAGE IP HOLDINGS, LLC |

| | SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL | | |
|---|---|---|---|
| STRAWBERRY BLAST<br><br>**Disclaims:** "STRAWBERRY" | **Goods and Services:**<br>**INT. CL. 30** FROZEN CONFECTIONS, NAMELY, FREEZER POPS; FROZEN CONFECTIONS, NAMELY, ICES; NON-DAIRY FROZEN CONFECTIONS<br>**INT. CL. 33** ALCOHOLIC COCKTAILS IN THE FORM OF FROZEN POPS | **App** 26-MAY-2021<br>**App** 90736285 | ENTOURAGE IP HOLDINGS, LLC |
| T@GGED<br>**Cross References:** TaGGED | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS; ALCOHOLIC SHOTS | **App** 02-NOV-2021<br>**App** 97104402 | ENTOURAGE IP HOLDINGS, LLC |
| THE CURE | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPT BEER; ALCOHOLIC SHOTS, EXCEPT BEER | **App** 06-OCT-2021<br>**App** 97062677 | ENTOURAGE IP HOLDINGS, LLC |
| ULTRACORN<br>**Cross References:** ULTRA CORN | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL, EXCEPT BEER | **App** 11-MAY-2022<br>**App** 97405057 | ENTOURAGE IP HOLDINGS, LLC |
| UNDOPE | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC | **App** 19-AUG-2020<br>**App** 90123906 | ENTOURAGE IP HOLDINGS, LLC |

| | COCKTAIL | | |
|---|---|---|---|
| VIBRATE | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPT BEER; ALCOHOLIC SHOTS, EXCEPT BEER | **App** 06-OCT-2021<br>**App** 97062684 | ENTOURAGE IP HOLDINGS, LLC |
| VOOZ | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPT BEER; ALCOHOLIC SHOTS, EXCEPT BEER | **App** 06-OCT-2021<br>**App** 97062691 | ENTOURAGE IP HOLDINGS, LLC |
| VR | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL | **App** 12-OCT-2020<br>**App** 90249518 | ENTOURAGE IP HOLDINGS, LLC |
| WETTER THAN WATER | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL | **App** 02-OCT-2020<br>**App** 90232471 | ENTOURAGE IP HOLDINGS, LLC |
| WYLDIN' WATERMELON<br>**Cross References:** WILDING WATERMELON<br><br>**Disclaims:** | **Goods and Services:**<br>**INT. CL. 33** ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC BEVERAGES, NAMELY, ALCOHOLIC CARBONATED LIQUOR SHOTS, EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, ALCOHOLIC LIQUOR SHOTS, EXCEPT BEERS | **App** 27-APR-2021<br>**App** 90674896 | ENTOURAGE IP HOLDINGS, LLC |

| | | | |
|---|---|---|---|
| "WATERMELON" | | | |
| WYLDIN' WATERMELON **Cross References:** WYLDIN WATERMELON, WELDING WATERMELON **Disclaims:** "WATERMELON" | **Goods and Services:** **INT. CL. 33** ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL | **App** 01-APR-2021 **App** 90618632 | ENTOURAGE IP HOLDINGS, LLC |
| ZOOZ | **Goods and Services:** **INT. CL. 33** ALCOHOLIC BEVERAGES EXCEPT BEERS; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA; HARD TEA; TEA-FLAVORED ALCOHOLIC BEVERAGES, EXCEPT BEERS; ALCOHOLIC TEA-BASED BEVERAGE; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS; ALCOHOLIC CARBONATED SHOTS, EXCEPT BEER; ALCOHOLIC SHOTS, EXCEPT BEER | **App** 06-OCT-2021 **App** 97062695 | ENTOURAGE IP HOLDINGS, LLC |
| FROSE ROSE | **Goods and Services:** **INT. CL. 33** ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; HARD SELTZER; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL | **App** 17-SEP-2020 **App** 90188775 **Reg** 22-MAR-2022 **Reg** 6681210 | ENTOURAGE IP HOLDINGS, LLC |
| PURPLE KIDDLES | **Goods and Services:** **INT. CL. 33** ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER; ALCOHOLIC CARBONATED BEVERAGES, EXCEPT BEER; ALCOHOLIC COCKTAIL MIXES; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC MIXED BEVERAGES EXCEPT BEERS; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL | **App** 17-SEP-2020 **App** 90188748 **Reg** 24-AUG-2021 **Reg** 6465249 | ENTOURAGE IP HOLDINGS, LLC |

**Entourage IP Holdings' Additional Foreign Trademark Filings**

| Mark | Country | Goods and Services | App. Date & No. / Reg. Date & No. | Owner Name |
|---|---|---|---|---|
| **AQUA FUSION** | Bolivia | **33** Alcoholic beverages, except beers; alcoholic beverages, namely, carbonated alcoholic | **App** 27-JUL-2022 | Entourage IP |

| | | | App 3488-2022 | Holdings, LLC (United States of America) |
|---|---|---|---|---|
| | | beverages (hard seltzer); Carbonated alcoholic beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; mixed alcoholic beverages except beers; alcoholic carbonated beverage; Premixed alcoholic beverages, other than beer based; Prepared alcoholic cocktail; alcoholic beverage of tea (hard tea); alcoholic tea; tea flavored alcoholic beverages, except beers; Tea-based alcoholic beverage; Ready-to-drink alcoholic beverages, other than beer-based; Alcoholic beverages, namely, carbonated alcoholic beverage shots (hard seltzer); alcoholic carbonated alcoholic drinks. | | |
| AQUA FUSION **CompuMark Trademark:** AQUA FUSION | Canada | 33 Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | App 08-FEB-2022 App 2174858 | Entourage IP Holdings, LLC |
| **AQUA FUSION** | Chile | 33 Alcoholic beverages except beer; alcoholic beverages, namely, hard seltzer (lightly flavored, low-proof carbonated alcoholic beverages); carbonated alcoholic beverages, except beer; alcoholic cocktail combinations; alcoholic energy drinks; mixed alcoholic beverages, except beer; hard seltzer (lightly flavored, low-alcohol carbonated alcoholic beverages); premixed alcoholic beverages, not beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, strong tea (malt-based alcoholic beverage); strong tea (malt-based alcoholic beverage); tea flavored alcoholic beverages, except beer; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, not beer-based; ; alcoholic beverages, hard seltzer-based (lightly flavored, low-proof carbonated alcoholic beverages); carbonated alcoholic beverages; drinks with alcohol. | App 06-JUL-2022 App 1509612 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **AQUA FUSION** | Colombia | 33 products to drink with alcohol, except beers; alcoholic beverages, namely hard seltzer; carbonated alcoholic beverages, except beer; mixes with alcohol for cocktails; energy drinks with alcohol; mixed alcoholic beverages, except beers; hard seltzer (fermented carbonated drinks); mixed alcoholic beverages not based on beer; cocktails with alcohol; alcoholic beverages, namely alcoholic tea; alcoholic teas; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely alcoholic seltzer drinks; alcoholic carbonated drinks; energy drinks with alcohol. | App 08-FEB-2022 App SD20220028614 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **AQUA FUSION** | Costa Rica | 33 Alcoholic beverages except beers; alcoholic beverages, namely, alcoholic seltzer water; carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages except beers; seltzer water with alcohol; non-beer based premixed alcoholic beverages; prepared alcoholic cocktails; alcoholic beverages, namely, alcoholic iced tea; tea flavored alcoholic beverages, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, not beer-based; alcoholic beverages, namely, nibbles or shots of alcoholic seltzer water; alcoholic carbonated drinks or shots; alcoholic drinks or shots. | App 07-JUL-2022 App 2022-0005923 | ENTOURAGE IP HOLDING LLC (United States of America) |
| **AQUA FUSION** | Ecuador | **Goods and Services Computerised Translation:** | App 12-JUL-2022 | ENTOURAGE IP |

| | | | | |
|---|---|---|---|---|
| | | **33** Alcoholic beverages (except beers); alcoholic beverages, especially alcoholic soda; carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages except beers; alcoholic soda; premixed alcoholic beverages, except beer-based; prepared liquor cocktails; alcoholic beverages, especially alcoholic tea; alcoholic tea; tea flavored alcoholic beverages, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, except beer-based; alcoholic beverages, especially alcoholic soda shots; carbonated shots with alcohol; alcoholic shots | **App** 2022-54632 | HOLDINGS, LLC (United States of America) |
| **AQUA FUSION** | Guatemala | **Goods and Services Computerised Translation:**<br>**33** Alcoholic beverages, except beers; alcoholic beverages, namely hard seltzer; carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages, except beers; hard seltzer; premixed alcoholic beverages, except beer-based prepared alcoholic cocktail; alcoholic beverages, namely hard tea; hard tea; tea flavored alcoholic beverages, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic beverages, except beer-based; alcoholic beverages, namely hard seltzer shots; carbonated alcoholic shots; alcoholic shots. | **App** 06-JUL-2022<br>**App** 2022007181 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **AQUA FUSION** | India | **Goods and Services:**<br>**33** Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 08-FEB-2022<br>**App** 5387585 | Entourage IP Holdings, LLC Body Incorporate (United States of America) |
| **AQUA FUSION** | International Register, designating: AU, BR, CA, CN, CO, EG, EM, GB, IN, JP, KR, MX, MY, NO, NZ, OM, PH, RU, TH, UAE, VN | **Goods and Services:**<br>**33** Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **Reg** 08-FEB-2022<br>**Reg** 1651655 | Entourage IP Holdings, LLC (United States of America) |
| **AQUA FUSION** | Peru | **Goods and Services Computerised Translation:**<br>**33** supplement drink mixes and/or dietary supplements; supplemental diet beverages; diet alcoholic beverages except beers; alcoholic beverages, namely hard seltzer (alcopop); carbonated alcoholic beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; mixed alcoholic beverages except beers; hard seltzer (alcopop); premixed alcoholic beverages other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea flavored alcoholic beverages, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic | **App** 06-JUL-2022<br>**App** 959106-2022 (2022-959106) | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |

| | | Goods and Services | | |
|---|---|---|---|---|
| | | beverages, not beer-based; alcoholic beverages, namely, hard seltzer shots (alcopop); alcoholic carbonated shots; alcoholic drinks (shots). | | |
| **AQUA FUSION**<br><br>**DISCLAIMER**<br>None | South Africa | **Goods and Services:**<br>**33** Alcoholic beverages except beers; Alcoholic beverages, namely, hard seltzer; Alcoholic carbonated beverages, except beer; Alcoholic cocktail mixes; Alcoholic energy drinks; Alcoholic mixed beverages except beers; Hard seltzer; Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail; Alcoholic beverages, namely, hard tea; Hard tea; tea-flavored alcoholic beverages, except beers; Alcoholic tea-based beverage; Ready-to-drink alcoholic beverages, other than beer-based; Alcoholic beverages, namely, hard seltzer shots; Alcoholic carbonated shots; Alcoholic shots. | **App** 09-FEB-2022<br>**App** 2022/03764 | Entourage IP Holdings, LLC, a limited liability company organized and existing under the laws of the State of Florida (United States of America) |
| **AQUA FUSION** | Taiwan | **Goods and Services:**<br>第033 Alcoholic beverages (except beer); alcoholic beverages containing soda (except beer); alcoholic carbonated beverages (except beer); alcoholic mixed cocktails; ); non-beer-based premixed alcoholic beverages; premixed alcoholic cocktails; tea wine; tea-flavored alcoholic beverages (except beer); alcoholic beverages containing tea leaves (except beer); ready-to-drink alcoholic beverages (except beer ); carbonated alcoholic beverages (other than beer); spirits. | **App** 14-FEB-2022<br>**App** 111009105<br>**Reg** 16-NOV-2022<br>**Reg** 02262729 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **BLACKBERRY BLAST** | Chile | **Goods and Services**<br>**33** Alcoholic beverages, except beers; carbonated alcoholic beverages; cocktail combinations with alcohol; energy drinks with alcohol; mixed alcoholic beverages, except beers; premixed alcoholic beverages, not based on beer; prepared alcohol cocktail; alcoholic beverages, namely strong tea (malt-based alcoholic beverage); strong tea (alcoholic beverage based on malt); alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; drinks with alcohol. | **App** 24-SEP-2021<br>**App** 1476085 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **BLACKBERRY BLAST** | Peru | **Goods and Services:**<br>**33** alcoholic beverages, except beer; alcoholic beverages, namely hard seltzer (alcopop); carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages, except beers; premixed alcoholic beverages, not based on beer; prepared alcoholic cocktail; alcoholic beverages, namely hard tea; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic beverages, not based on beer; shots (shots), namely alcoholic beverages. | **App** 18-SEP-2021<br>**App** 915337-2021 (2021-915337)<br>**Reg** 03-DEC-2021<br>**Reg** P00318143 | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |
| **BLUE & YELLOW LIMONCELLO** | Argentina | **Goods and Services**<br>**33** Class 33: International Limited<br>ALCOHOLIC BEVERAGES ONLY, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, CARBONATED ALCOHOLIC BEVERAGES (HARD SELTZER); CARBONATED ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC MIXES FOR COCKTAILS; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC BLENDED BEVERAGES, EXCEPT BEERS; SPARKLING ALCOHOLIC BEVERAGES (HARD SELTZER); PREMIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED | **App** 30-SEP-2021<br>**App** 4058062 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |

| | | | | |
|---|---|---|---|---|
| | | ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA [ALCOHOLIC BEVERAGES]; HARD TEA [ALCOHOLIC BEVERAGE]; TEA-FLAVOR ALCOHOLIC BEVERAGES, EXCEPT BEERS; TEA-BASED ALCOHOLIC BEVERAGES; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS [CARBONATED ALCOHOLIC BEVERAGES]; GASIFIED ALCOHOLIC SHORT DRINKS; SHORT ALCOHOLIC DRINKS; | | |
| BLUE & YELLOW LIMONCELLO **CompuMark Trademark:** BLUE & YELLOW LIMONCELLO **Cross References:** BLUE & YELLOW LIMON CELLO | Canada | 33 Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | App 04-MAY-2021 App 2119392 | Entourage IP Holdings, LLC |
| **BLUE & YELLOW LIMONCELLO** | Chile | **Goods and Services:** 33 Alcoholic beverages, except beers; carbonated alcoholic beverages; cocktail combinations with alcohol; energy drinks with alcohol; mixed alcoholic beverages, except beers; premixed alcoholic beverages, not based on beer; prepared alcohol cocktail; alcoholic beverages, namely strong tea (malt-based alcoholic beverage); strong tea (alcoholic beverage based on malt); alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; drinks with alcohol. | App 24-SEP-2021 App 1476087 Reg 22-AUG-2022 Reg 1378542 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **BLUE & YELLOW LIMONCELLO** | Colombia | **Goods and Services** 33 products to drink with alcohol, except beers; alcoholic beverages, namely hard seltzer; carbonated alcoholic beverages, except beer; mixes with alcohol for cocktails; energy drinks with alcohol; mixed alcoholic beverages, except beers; hard seltzer (fermented carbonated drinks); mixed alcoholic beverages not based on beer; cocktails with alcohol; alcoholic beverages, namely alcoholic tea; alcoholic teas; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely alcoholic seltzer drinks; alcoholic carbonated drinks; energy drinks with alcohol. | App 04-MAY-2021 App SD20210063830 Reg 07-JUL-2022 Reg 714992 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **BLUE & YELLOW LIMONCELLO** | India | **Goods and Services:** 33 Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | App 04-MAY-2021 App 5047415 | ENTOURAGE IP HOLDINGS, LLC Body Incorporate (United States of America) |
| **BLUE & YELLOW LIMONCELLO** | International | **Goods and Services:** | Reg 04-MAY-2021 | Entourage IP |

| | | | | |
|---|---|---|---|---|
| **LIMONCELLO** | Register, designating AU, BR, CA, CH, CN, CO, EM, GB, IL, IN, IS, JP, KR, MX, MY, NO, NZ, PH, TR | 33 Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **Reg** 1601363 | Holdings, LLC (United States of America) |
| **BLUE & YELLOW LIMONCELLO** | Peru | **Goods and Services Computerised Translation:** 33 alcoholic beverages, except beer; alcoholic beverages, namely hard seltzer (alcopop); carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages, except beers; premixed alcoholic beverages, not based on beer; prepared alcoholic cocktail; alcoholic beverages, namely hard tea; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic beverages, not based on beer; shots (shots), namely alcoholic beverages. | **App** 18-SEP-2021 **App** 915339-2021 (2021-915339) **Reg** 04-MAY-2022 **Reg** P00326803 | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |
| **BLUE & YELLOW LIMONCELLO** **DISCLAIMER** None | South Africa | **Goods and Services:** 33 Alcoholic beverages except beers; Alcoholic beverages, namely, hard seltzer; Alcoholic carbonated beverages, except beer; Alcoholic cocktail mixes; Alcoholic energy drinks; Alcoholic mixed beverages except beers; Hard seltzer; Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail; Alcoholic beverages, namely, hard tea; Hard tea; tea-flavored alcoholic beverages, except beers; Alcoholic tea-based beverage; Ready-to-drink alcoholic beverages, other than beer-based; Alcoholic beverages, namely, hard seltzer shots; Alcoholic carbonated shots; Alcoholic shots. | **App** 05-MAY-2021 **App** 2021/12954 | Entourage IP Holdings, LLC, a limited liability company organized and existing under the laws of the State of Florida (United States of America) |
| BLUE RAZZ **CompuMark Trademark:** BLUE RAZZ | Canada | **Wares and Services:** (1) Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 04-MAY-2021 **App** 2120833 | Entourage IP Holdings, LLC |
| **BLUE RAZZ** | Argentina | **Goods and Services** 33 Class 33: International Limited ALCOHOLIC BEVERAGES ONLY, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, CARBONATED ALCOHOLIC BEVERAGES (HARD SELTZER); CARBONATED ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC MIXES FOR COCKTAILS; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC BLENDED BEVERAGES, EXCEPT BEERS; SPARKLING ALCOHOLIC BEVERAGES (HARD SELTZER); PREMIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA | **App** 30-SEP-2021 **App** 4058061 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |

| | | Goods and Services | | |
|---|---|---|---|---|
| | | [ALCOHOLIC BEVERAGES]; HARD TEA [ALCOHOLIC BEVERAGE]; TEA-FLAVOR ALCOHOLIC BEVERAGES, EXCEPT BEERS; TEA-BASED ALCOHOLIC BEVERAGES; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS [CARBONATED ALCOHOLIC BEVERAGES]; GASIFIED ALCOHOLIC SHORT DRINKS; SHORT ALCOHOLIC DRINKS; | | |
| **BLUE RAZZ** | Chile | **Goods and Services** <br> **33** Alcoholic beverages, except beers; carbonated alcoholic beverages; cocktail combinations with alcohol; energy drinks with alcohol; mixed alcoholic beverages, except beers; premixed alcoholic beverages, not based on beer; prepared alcohol cocktail; alcoholic beverages, namely strong tea (malt-based alcoholic beverage); strong tea (alcoholic beverage based on malt); alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; drinks with alcohol. | **App** 24-SEP-2021 <br> **App** 1476086 <br> **Reg** 31-AUG-2022 <br> **Reg** 1379024 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **BLUE RAZZ** | Colombia | **Goods and Services** <br> **33** products to drink with alcohol, except beers; alcoholic beverages, namely hard seltzer; carbonated alcoholic beverages, except beer; mixes with alcohol for cocktails; energy drinks with alcohol; mixed alcoholic beverages, except beers; hard seltzer (fermented carbonated drinks); mixed alcoholic beverages not based on beer; cocktails with alcohol; alcoholic beverages, namely alcoholic tea; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely alcoholic seltzer drinks; alcoholic carbonated drinks; energy drinks with alcohol. | **App** 04-MAY-2021 <br> **App** SD20210066434 <br> **Reg** 23-FEB-2023 <br> **Reg** 727740 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **BLUE RAZZ** | India | **Goods and Services:** <br> **33** Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 04-MAY-2021 <br> **App** 5056376 | Entourage IP Holdings, LLC Body Incorporate (United States of America) |
| **BLUE RAZZ** | International Register, designating AU, BR, CA, CH, CN, CO, EM, GB, IL, IN, IS, JP, KR, MX, MY, NO, NZ, PH, TR | **Goods and Services:** <br> **33** Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **Reg** 04-MAY-2021 <br> **Reg** 1601883 | Entourage IP Holdings, LLC (United States of America) |
| **BLUE RAZZ** | Peru | **Goods and Services** | **App** 18-SEP-2021 | ENTOURAGE IP |

| | | | | |
|---|---|---|---|---|
| | | **33** alcoholic beverages, except beer; alcoholic beverages, namely hard seltzer (alcopop); carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages, except beers; premixed alcoholic beverages, not based on beer; prepared alcoholic cocktail; alcoholic beverages, namely hard tea; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic beverages, not based on beer; shots (shots), namely alcoholic beverages. | **App** 915338-2021 (2021-915338)<br>**Reg** 09-DEC-2021<br>**Reg** P00318275 | HOLDINGS, LLC (United States of America) |
| **BLUE RAZZ**<br><br>**DISCLAIMER**<br>None | South Africa | **Goods and Services:**<br>**33** Alcoholic beverages except beers; Alcoholic beverages, namely, hard seltzer; Alcoholic carbonated beverages, except beer; Alcoholic cocktail mixes; Alcoholic energy drinks; Alcoholic mixed beverages except beers; Hard seltzer; Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail; Alcoholic beverages, namely, hard tea; Hard tea; tea-flavored alcoholic beverages, except beers; Alcoholic tea-based beverage; Ready-to-drink alcoholic beverages, other than beer-based; Alcoholic beverages, namely, hard seltzer shots; Alcoholic carbonated shots; Alcoholic shots. | **App** 05-MAY-2021<br>**App** 2021/12964 | Entourage IP Holdings, LLC, a limited liability company organized and existing under the laws of the State of Florida (United States of America) |
| **DRENCH** | Argentina | **Goods and Services**<br>**33** Class 33: International Limited<br>MANUALLY ENTERED TERMS ONLY: ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, CARBONATED ALCOHOLIC BEVERAGES (HARD SELTZER); CARBONATED ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC MIXES FOR COCKTAILS; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC BLENDED BEVERAGES, EXCEPT BEERS; SPARKLING ALCOHOLIC BEVERAGES (HARD SELTZER); PREMIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA [ALCOHOLIC BEVERAGES]; HARD TEA [ALCOHOLIC BEVERAGE]; TEA-FLAVOR ALCOHOLIC BEVERAGES, EXCEPT BEERS; TEA-BASED ALCOHOLIC BEVERAGES; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS [CARBONATED ALCOHOLIC BEVERAGES]; GASIFIED ALCOHOLIC SHORT DRINKS; SHORT ALCOHOLIC DRINKS; | **App** 30-DEC-2021<br>**App** 4085207 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| DRENCH<br>**CompuMark Trademark:**<br>DRENCH | Canada | 33 Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 11-OCT-2021<br>**App** 2146637 | Entourage IP Holdings, LLC |
| **DRENCH** | Chile | **Goods and Services**<br>**33** Alcoholic beverages, except beers; Alcoholic beverages, namely, hard seltzer (lightly flavored, low-alcohol carbonated alcoholic beverages); carbonated alcoholic beverages, except beer; | **App** 30-DEC-2021<br>**App** 1488532 | ENTOURAGE IP HOLDINGS, LLC (United States of |

US-DOCS\142876630.1

| | | Goods and Services | | |
|---|---|---|---|---|
| | | alcoholic cocktail combinations; alcoholic energy drinks; mixed alcoholic beverages, except beer; hard seltzer (low-alcohol, lightly flavored carbonated alcoholic beverages); premixed alcoholic beverages, not beer-based; prepared alcohol cocktail; alcoholic beverages, namely strong tea (malt-based alcoholic beverage); strong tea (malt-based alcoholic beverage); tea flavored alcoholic beverages, except beer; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, not beer-based; alcoholic beverages, namely hard seltzer shots (low-proof, lightly flavored carbonated alcoholic beverages); carbonated alcoholic drinks; alcoholic drinks. | | America) |
| **DRENCH** | India | **Goods and Services:**<br>**33** Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 11-OCT-2021<br>**App** 5210404 | Entourage IP Holdings, LLC Body Incorporate (United States of America) |
| **DRENCH** | International Register, designating AU, BR, CA, CH, CN, CO, IL, IN, IS, JP, KR, MX, MY, NO, NZ, PH, TR | **Goods and Services:**<br>**33** Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **Reg** 11-OCT-2021<br>**Reg** 1624967 | Entourage IP Holdings, LLC (United States of America) |
| **DRENCH** | Peru | **Goods and Services**<br>**33** alcoholic beverages, except beer; alcoholic beverages, namely hard seltzer (alcopop); carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages, except beers; hard seltzer (alcopop); premixed alcoholic beverages, not based on beer; prepared alcoholic cocktail; alcoholic beverages, namely hard tea; tea-flavored alcoholic beverages, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic beverages, not based on beer; alcoholic beverages, namely hard seltzer (alcopop) shots; carbonated alcoholic shots; alcoholic shots. | **App** 29-DEC-2021<br>**App** 930415-2021 (2021-930415)<br>**Reg** 11-MAR-2022<br>**Reg** P00322473 | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |
| **GEORGIA PEACH** | Argentina | **Goods and Services**<br>**33** Class 33: International Limited<br>ALCOHOLIC BEVERAGES ONLY, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, CARBONATED ALCOHOLIC BEVERAGES (HARD SELTZER); CARBONATED ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC MIXES FOR COCKTAILS; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC BLENDED BEVERAGES, EXCEPT BEERS; SPARKLING ALCOHOLIC BEVERAGES (HARD SELTZER); PREMIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED | **App** 30-SEP-2021<br>**App** 4058063 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |

| | | ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA [ALCOHOLIC BEVERAGES]; HARD TEA [ALCOHOLIC BEVERAGE]; TEA-FLAVOR ALCOHOLIC BEVERAGES, EXCEPT BEERS; TEA-BASED ALCOHOLIC BEVERAGES; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS [CARBONATED ALCOHOLIC BEVERAGES]; GASIFIED ALCOHOLIC SHORT DRINKS; SHORT ALCOHOLIC DRINKS; | | |
|---|---|---|---|---|
| GEORGIA PEACH **CompuMark Trademark:** GEORGIA PEACH | Canada | 33 Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | App 04-MAY-2021 App 2118297 | Entourage IP Holdings, LLC |
| **GEORGIA PEACH** | Chile | **Goods and Services** **33** Alcoholic beverages, except beers; carbonated alcoholic beverages; cocktail combinations with alcohol; energy drinks with alcohol; mixed alcoholic beverages, except beers; premixed alcoholic beverages, not based on beer; prepared alcohol cocktail; alcoholic beverages, namely strong tea (malt-based alcoholic beverage); strong tea (alcoholic beverage based on malt); alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; drinks with alcohol. | **App** 24-SEP-2021 **App** 1476089 **Reg** 31-AUG-2022 **Reg** 1379025 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **GEORGIA PEACH** | Colombia | **Goods and Services** **33** products to drink with alcohol, except beers; Alcoholic beverages, namely hard seltzer water; products for drinking soft drinks with alcohol, except beer; mixes with alcohol for cocktails; energy drinks with alcohol; mixed alcoholic beverages, except beers; hard seltzer (fermented carbonated drinks); mixed alcoholic beverages other than beer based; cocktails with alcohol; alcoholic beverage products, namely strong teas; strong teas; tea-flavored alcoholic drink products, except beers; tea-based alcoholic drinks; ready-to-drink alcoholic beverage products, not based on beer; alcoholic beverages, namely hard seltzer drinks; alcoholic carbonated drink products; shots of alcohol. | **App** 04-MAY-2021 **App** SD20210062433 **Reg** 15-MAR-2022 **Reg** 704898 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **GEORGIA PEACH** | India | **Goods and Services:** **33** Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 04-MAY-2021 **App** 5033427 | ENTOURAGE IP HOLDINGS, LLC Body Incorporate (United States of America) |
| **GEORGIA PEACH** | International | **Goods and Services:** | **Reg** 04-MAY-2021 | Entourage IP |

| | | | | |
|---|---|---|---|---|
| | Register, designating AU, BR, CA, CH, CN, CO, EM, GB, IL, IN, IS, JP, KR, MX, MY, NO, NZ, PH, TR | **33** Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **Reg** 1599813 | Holdings, LLC (United States of America) |
| **GEORGIA PEACH** | Peru | **Goods and Services**<br>**33** alcoholic beverages, except beer; alcoholic beverages, namely hard seltzer (alcopop); carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages, except beers; premixed alcoholic beverages, not based on beer; prepared alcoholic cocktail; alcoholic beverages, namely hard tea; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic beverages, not based on beer; shots (shots), namely alcoholic beverages. | **App** 18-SEP-2021<br>**App** 915340-2021 (2021-915340)<br>**Reg** 03-DEC-2021<br>**Reg** P00318144 | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |
| **GEORGIA PEACH**<br>**DISCLAIMER**<br>None | South Africa | **Goods and Services:**<br>**33** Alcoholic beverages except beers; Alcoholic beverages, namely, hard seltzer; Alcoholic carbonated beverages, except beer; Alcoholic cocktail mixes; Alcoholic energy drinks; Alcoholic mixed beverages except beers; Hard seltzer; Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail; Alcoholic beverages, namely, hard tea; Hard tea; tea-flavored alcoholic beverages, except beers; Alcoholic tea-based beverage; Ready-to-drink alcoholic beverages, other than beer-based; Alcoholic beverages, namely, hard seltzer shots; Alcoholic carbonated shots; Alcoholic shots. | **App** 05-MAY-2021<br>**App** 2021/12963 | Entourage IP Holdings, LLC, a limited liability company organized and existing under the laws of the State of Florida (United States of America) |
| **JUMP** | Argentina | **Goods and Services**<br>**33** Class 33: International Limited<br>MANUALLY ENTERED TERMS ONLY: ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, CARBON ALCOHOLIC BEVERAGE; CARBONATED ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC MIXTURES FOR COCKTAILS; ALCOHOLIC ENERGY DRINKS; MIXED ALCOHOLIC BEVERAGES, EXCEPT BEERS; CARBON ALCOHOLIC BEVERAGE; PREMIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; | **App** 03-MAR-2021<br>**App** 3988367<br>**Reg** 11-NOV-2022<br>**Reg** 3345485 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **JUMP**<br>**CompuMark Trademark:** JUMP | Canada | **Wares and Services:**<br>(1) Alcoholic beverages, except beer; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktails. | **App** 22-FEB-2021<br>**App** 2096605 | Entourage IP Holdings, LLC |
| **JUMP** | Chile | **Goods and Services**<br>**33** Alcoholic beverages, except beer; Alcoholic beverages, namely hard seltzer (carbonated drinks with low alcohol content; carbonated alcoholic beverages, except beer; cocktail mixes with | **App** 05-MAR-2021<br>**App** 1397187<br>**Reg** 21-JAN-2022 | ENTOURAGE IP HOLDINGS, LLC (United States of |

| | | Goods and Services | | |
|---|---|---|---|---|
| | | alcohol; energy drinks with alcohol; mixed alcoholic beverages, except beer; carbonated alcoholic beverages [hard seltzer]; premixed alcoholic beverages, not based on beer; cocktails made with alcohol. | **Reg** 1363185 | America) |
| **JUMP** | India | **Goods and Services:** <br> **33** Alcoholic beverages, except beer; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktails. | **App** 22-FEB-2021 <br> **App** 4934908 | Entourage IP Holdings, LLC Body Incorporate (United States of America) |
| **JUMP** | International Register, designating AU, BH, BR, CA, CH, CO, EM, GB, IL, IN, IR, IS, MX, MY, NO, NZ, PH, TR | **Goods and Services:** <br> **33** Alcoholic beverages, except beer; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktails. | **Reg** 22-FEB-2021 <br> **Reg** 1583909 | Entourage IP Holdings, LLC (United States of America) |
| **JUMP** | Peru | **Goods and Services** <br> **33** alcoholic beverages, except beer; alcoholic beverages, namely hard sodas (alcoholic sodas - hard seltzer); carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages, except beers; premixed alcoholic beverages, other than those based on beer; prepared alcoholic cocktail. | **App** 03-MAR-2021 <br> **App** 886653-2021 (2021-886653) <br> **Reg** 10-SEP-2021 <br> **Reg** P00314532 | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |
| **JUMP** <br><br> **DISCLAIMER** <br> None | South Africa | **Goods and Services:** <br> **33** Alcoholic beverages, except beer; Alcoholic beverages, namely, hard seltzer; Alcoholic carbonated beverages, except beer; Alcoholic cocktail mixes; Alcoholic energy drinks; Alcoholic mixed beverages except beers; Hard seltzer; Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail. | **App** 23-FEB-2021 <br> **App** 2021/05096 | Entourage IP Holdings, LLC, a limited liability company organized and existing under the laws of the State of Florida (United States of America) |
| **LEMON DROP** | Argentina | **Goods and Services** <br> **33** Class 33: International Limited <br> ALCOHOLIC BEVERAGES ONLY, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, CARBONATED ALCOHOLIC BEVERAGES (HARD SELTZER); CARBONATED ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC MIXES FOR COCKTAILS; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC BLENDED BEVERAGES, EXCEPT BEERS; SPARKLING ALCOHOLIC BEVERAGES (HARD SELTZER); PREMIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA | **App** 30-SEP-2021 <br> **App** 4058064 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |

| | | [ALCOHOLIC BEVERAGES]; HARD TEA [ALCOHOLIC BEVERAGE]; TEA-FLAVOR ALCOHOLIC BEVERAGES, EXCEPT BEERS; TEA-BASED ALCOHOLIC BEVERAGES; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS [CARBONATED ALCOHOLIC BEVERAGES]; GASIFIED ALCOHOLIC SHORT DRINKS; SHORT ALCOHOLIC DRINKS; | | |
|---|---|---|---|---|
| LEMON DROP **CompuMark Trademark:** LEMON DROP | Canada | 33 Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 04-MAY-2021 **App** 2118295 | Entourage IP Holdings, LLC |
| **LEMON DROP** | Chile | **Goods and Services** **33** Alcoholic beverages, except beers; carbonated alcoholic beverages; cocktail combinations with alcohol; energy drinks with alcohol; mixed alcoholic beverages, except beers; premixed alcoholic beverages, not based on beer; prepared alcohol cocktail; alcoholic beverages, namely strong tea (malt-based alcoholic beverage); strong tea (alcoholic beverage based on malt); alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; drinks with alcohol. | **App** 24-SEP-2021 **App** 1476090 **Reg** 31-AUG-2022 **Reg** 1379026 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **LEMON DROP** | Colombia | **Goods and Services** **33** products to drink with alcohol, except beers; alcoholic beverages, namely hard seltzer; carbonated alcoholic beverages, except beer; mixes with alcohol for cocktails; energy drinks with alcohol; mixed alcoholic beverages, except beers; hard seltzer (fermented carbonated drinks); mixed alcoholic beverages not based on beer; cocktails with alcohol; alcoholic beverages, namely alcoholic tea; alcoholic teas; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely alcoholic seltzer drinks; alcoholic carbonated drinks; energy drinks with alcohol. | **App** 04-MAY-2021 **App** SD20210062442 **Reg** 04-FEB-2022 **Reg** 707294 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **LEMON DROP** | India | **Goods and Services:** **33** Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 04-MAY-2021 **App** 5030378 | ENTOURAGE IP HOLDINGS, LLC Body Incorporate (United States of America) |
| **LEMON DROP** | International Register, | **Goods and Services:** **33** Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic | **Reg** 04-MAY-2021 **Reg** 1599942 | Entourage IP Holdings, LLC, |

| | | | | |
|---|---|---|---|---|
| | designating AU, BR, CA, CH, CN, CO, EM, GB, IL, IN, IS, JP, KR, MX, MY, NO, NZ, PH, TR | carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | | (United States of America) |
| **LEMON DROP** | Peru | **Goods and Services** <br> **33** alcoholic beverages, except beer; alcoholic beverages, namely hard seltzer (alcopop); carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages, except beers; premixed alcoholic beverages, not based on beer; prepared alcoholic cocktail; alcoholic beverages, namely hard tea; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic beverages, not based on beer; shots (shots), namely alcoholic beverages. | **App** 18-SEP-2021 <br> **App** 915341-2021 (2021-915341) | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |
| **LEMON DROP** <br><br> **DISCLAIMER** <br> None | South Africa | **Goods and Services:** <br> **33** Alcoholic beverages except beers; Alcoholic beverages, namely, hard seltzer; Alcoholic carbonated beverages, except beer; Alcoholic cocktail mixes; Alcoholic energy drinks; Alcoholic mixed beverages except beers; Hard seltzer; Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail; Alcoholic beverages, namely, hard tea; Hard tea; tea-flavored alcoholic beverages, except beers; Alcoholic tea-based beverage; Ready-to-drink alcoholic beverages, other than beer-based; Alcoholic beverages, namely, hard seltzer shots; Alcoholic carbonated shots; Alcoholic shots. | **App** 05-MAY-2021 <br> **App** 2021/12966 | Entourage IP Holdings, LLC, a limited liability company organized and existing under the laws of the State of Florida (United States of America) |
| **MIAMI ENERGY** | Bahrain | **Goods and** <br> **33** alcoholic beverages other than beer; alcoholic beverages, in particular sparkling alcoholic beverages; carbonated alcoholic beverages, other than beer; alcoholic cocktail mixes; alcoholic energy drinks; drinks mixed with alcohol other than beer; sparkling alcoholic beverage; premixed alcoholic beverages other than beer-based; prepared alcoholic cocktail; alcoholic beverages, in particular alcoholic tea; alcoholic tea; tea-flavored alcoholic beverages other than beer; tea-based alcoholic beverages; ready-to-drink alcoholic beverages other than those based on beer; alcoholic beverages, in particular sparkling spirits; soft drink glasses; Alcoholic glasses | **App** 30-NOV-2022 <br> **App** 137545 | إنتوريج آي بيه هولدينغز، إل إل سي |
| **MIAMI ENERGY** | Bolivia | **Goods and Services** <br> **33** Alcoholic beverages, except beers; alcoholic beverages, namely, carbonated alcoholic beverages (hard seltzer); Carbonated alcoholic beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; mixed alcoholic beverages except beers; alcoholic carbonated beverage; Premixed alcoholic beverages, other than beer based; Prepared alcoholic cocktail; alcoholic beverage of tea (hard tea); alcoholic tea; tea flavored alcoholic beverages, except beers; Tea-based alcoholic beverage; Ready-to-drink alcoholic beverages, other than beer-based; Alcoholic beverages, namely, carbonated alcoholic beverage shots (hard seltzer); alcoholic carbonated drinks; alcoholic drinks. | **App** 01-NOV-2022 <br> **App** 5131-2022 | Entourage IP Holdings, LLC (United States of America) |
| MIAMI ENERGY | Canada | **Wares and Services:** | **App** 01-JUL-2022 | Entourage IP |

| | | | | |
|---|---|---|---|---|
| **CompuMark Trademark:** MIAMI ENERGY | | (1) Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 2200868 | Holdings, LLC |
| **MIAMI ENERGY** | Chile | **Goods and Services** **33** Alcoholic beverages, except beers; alcoholic beverages, namely, hard seltzer (carbonated alcoholic beverage); carbonated alcoholic beverages, except beers; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages except beers; premixed alcoholic beverages, not beer-based; cocktail prepared with alcohol; alcoholic beverages, namely, strong tea (malt-based alcoholic beverage); tea flavored alcoholic beverages, except beers; tea-based alcoholic beverage; Non-beer-based ready-to-drink alcoholic beverages; Alcoholic beverages, carbonated alcoholic beverages. | **App** 21-OCT-2022 **App** 1521958 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **MIAMI ENERGY** | Colombia | **Goods and Services** **33** alcoholic beverages [except beer]; alcoholic beverages, namely carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages, except beers; hard seltzer (fermented carbonated drinks); mixed alcoholic beverages not based on beer; alcoholic cocktails; alcoholic beverages, namely, alcoholic tea; alcoholic teas; tea flavored alcoholic beverages, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, not beer-based; alcoholic beverages, namely, alcoholic seltzers; alcoholic carbonated drinks; alcoholic energy drinks. | **App** 01-JUL-2022 **App** SD20220076176 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **MIAMI ENERGY** | Costa Rica | **Goods and Services** **33** alcoholic beverages except beers • alcoholic beverages, namely, spirited seltzer • carbonated alcoholic beverages, except beer • alcoholic cocktail mixes • alcoholic energy drinks • mixed alcoholic beverages except beers • spirited seltzer • premixed alcoholic beverages containing non-beer-based • prepared alcoholic cocktails • alcoholic beverages, namely, alcoholic iced tea • tea-flavored alcoholic beverages, except beers • tea-based alcoholic beverages • non-beer-based ready-to-drink alcoholic beverages of beer • alcoholic beverages, namely, mini shots or shots of alcoholic seltzer water • alcoholic carbonated shots or cocktails • alcoholic shots or cocktails | **App** 10-OCT-2022 **App** 2022-009517 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **MIAMI ENERGY** | Ecuador | **Goods and Services** **33** Alcoholic beverages except beers; Alcoholic beverages, especially alcoholic soda; Carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; Mixed alcoholic beverages except beers; Soda with alcohol; Premixed alcoholic beverages, except beer-based; prepared liqueur cocktails; Alcoholic beverages, especially alcoholic tea; tea with alcohol; Tea flavored alcoholic beverages, except beers; tea-based alcoholic beverages; Ready-to-drink alcoholic beverages, except beer-based; Alcoholic beverages, especially alcoholic soda shots; Alcohol carbonated shots; Shots with alcohol. | **App** 20-OCT-2022 **App** 2022-82116 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |

| MIAMI ENERGY | Guatemala | **Goods and Services**<br>**33** Alcoholic beverages, except beers; alcoholic beverages, namely, hard seltzer; carbonated alcoholic beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; mixed alcoholic beverages, except beers; hard seltzer; premixed alcoholic beverages, other than beer-based prepared alcoholic cocktails; alcoholic beverages, namely hard tea; hard tea; tea flavored alcoholic beverages, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; sparkling alcoholic shots; alcoholic shots. | **App** 18-OCT-2022<br>**App** 2022011312 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
|---|---|---|---|---|
| MIAMI ENERGY | India | **Goods and Services:**<br>**33** Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 01-JUL-2022<br>**App** 5554467 | Entourage IP Holdings, LLC Body Incorporate (United States of America) |
| MIAMI ENERGY | Indonesia | **Goods and Services**<br>**33** Mixed alcoholic cocktails, seltzer hard, prepared alcoholic cocktails, alcoholic beverages except beer, pre-mixed alcoholic beverages, other than beer-based, tea-flavored spirits, except beer, ready-to-drink alcoholic beverages, other than beer-based, alcoholic beverages , i.e. hard tea, alcoholic beverages, namely, hard seltzer, alcoholic beverages, namely, hard seltzer shots, alcoholic tea-based beverages, alcoholic carbonated beverages, except beer, alcoholic mixed drinks except beer, alcoholic energy drinks, hard tea, alcohol shots, alcohol carbonated shot. | **App** 01-JUL-2022<br>**App** M0020221674869 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| MIAMI ENERGY | International Register, designating AU, BR, CA, CN, CO, EG, EM, GB, ID, IN, JP, KR, MX, MY, NO, NZ, OM, PH, RU, TH, VN | **Goods and Services:**<br>**33** Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **Reg** 01-JUL-2022<br>**Reg** 1674869 | Entourage IP Holdings, LLC (United States of America) |
| MIAMI ENERGY | Peru | **Goods and Services**<br>**33** alcoholic beverages, except beer; alcoholic beverages, namely, hard seltzer (alcopop); carbonated alcoholic beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; mixed alcoholic beverages, except beers; hard seltzer (alcopop); premixed alcoholic beverages, not beer-based; prepared alcoholic cocktail; alcoholic beverages, namely hard tea; hard tea; tea-flavoured alcoholic beverages, except beers: tea-based alcoholic beverage; ready-to-drink alcoholic beverages, not beer-based: alcoholic beverages, namely, hard seltzer (alcopop) shots: | **App** 10-MAR-2023<br>**App** 10135-2023 (2023-010135) | ENTOURAGE IP HOLDINGS, LLC. (Colombia) |

US-DOCS\142876630.1

| | | | | |
|---|---|---|---|---|
| | | carbonated alcoholic shots; alcoholic shots. | | |
| **MIAMI ENERGY** | Peru | **Goods and Services**<br>**33** alcoholic beverages, except beer; alcoholic beverages, namely, hard seitzer (alcopop); carbonated alcoholic beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; mixed alcoholic beverages, except beers; hard seitzer (alcopop); premixed alcoholic beverages, not beer-based; prepared alcoholic cocktail; alcoholic beverages, namely hard tea; hard tea; tea flavored alcoholic beverages, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic beverages, not beer-based; alcoholic beverages, namely, hard seitzer (alcopop) shots; carbonated alcoholic shots; alcoholic shots. | **App** 21-OCT-2022<br>**App** 974511-2022 (2022-974511) | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |
| **MIAMI ENERGY**<br><br>**DISCLAIMER**<br>None | South Africa | **Goods and Services:**<br>**33** Alcoholic beverages except beers; Alcoholic beverages, namely, hard seltzer; Alcoholic carbonated beverages, except beer; Alcoholic cocktail mixes; Alcoholic energy drinks; Alcoholic mixed beverages except beers; Hard seltzer; Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail; Alcoholic beverages, namely, hard tea; Hard tea; Tea-flavored alcoholic beverages, except beers; Alcoholic tea-based beverage; Ready-to-drink alcoholic beverages, other than beer-based; Alcoholic beverages, namely, hard seltzer shots; Alcoholic carbonated shots; Alcoholic shots. | **App** 06-JUL-2022<br>**App** 2022/20525 | Entourage IP Holdings, LLC, a limited liability company organized and existing under the laws of the State of Florida (United States of America) |
| **MIAMI ENERGY** | Taiwan | **Goods and Services:**<br>第033 Alcoholic beverages (other than beer); alcoholic beverages, namely hard sodas; alcoholic carbonated beverages (other than beer); alcoholic mixed cocktails; alcoholic energy drinks; alcoholic mixed drinks (other than beer); hard sodas; Premixed alcoholic beverages not mainly beer; premixed alcoholic cocktails; alcoholic beverages, namely tea wine; tea wine; tea-flavored alcoholic beverages (other than beer); alcoholic tea-based beverages; ready-to-drink alcoholic beverages (not beer-based); alcoholic beverages, namely hard soda water (sip of wine); alcoholic carbonated drinks; sip of wine | **App** 11-JUL-2022<br>**App** 111048884 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **MIAMI UNICORN** | Bahrain | **Goods and Services**<br>**33** alcoholic beverages other than beer; alcoholic beverages, in particular sparkling alcoholic beverages; carbonated alcoholic beverages, other than beer; alcoholic cocktail mixes; alcoholic energy drinks; drinks mixed with alcohol other than beer; sparkling alcoholic beverage; premixed alcoholic beverages other than beer-based; prepared alcoholic cocktail; alcoholic beverages, in particular alcoholic tea; tea-flavored alcoholic beverages other than beer; tea-based alcoholic beverages; ready-to-drink alcoholic beverages other than those based on beer; alcoholic beverages, in particular sparkling spirits; soft drink glasses; Alcoholic glasses | **App** 30-NOV-2022<br>**App** 137546 | إنتوريج أي بيه هولدينغز، إل إل سي |
| **MIAMI UNICORN** | Bolivia | **Goods and Services**<br>**33** Alcoholic beverages, except beers; alcoholic beverages, namely, carbonated alcoholic beverages (hard seltzer); Carbonated alcoholic beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; mixed alcoholic beverages except beers; alcoholic carbonated beverage; Premixed alcoholic beverages, other than beer based; Prepared alcoholic cocktail; alcoholic | **App** 01-NOV-2022<br>**App** 5132-2022 | Entourage IP Holdings, LLC (United States of America) |

| | | | | |
|---|---|---|---|---|
| | | beverage of tea (hard tea); alcoholic tea; tea flavored alcoholic beverages, except beers; Tea-based alcoholic beverage; Ready-to-drink alcoholic beverages, other than beer-based; Alcoholic beverages, namely, carbonated alcoholic beverage shots (hard seltzer); alcoholic carbonated drinks; alcoholic drinks. | | |
| MIAMI UNICORN **CompuMark Trademark:** MIAMI UNICORN | Canada | 33 Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | App 06-DEC-2022 App 2232087 | Entourage IP Holdings, LLC |
| **MIAMI UNICORN** | Chile | **Goods and Services** **33** Alcoholic beverages, except beers; alcoholic beverages, namely, hard seltzer (carbonated alcoholic beverage); carbonated alcoholic beverages, except beers; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages except beers; premixed alcoholic beverages, not beer-based; cocktail prepared with alcohol; alcoholic beverages, namely, strong tea (malt-based alcoholic beverage); tea flavored alcoholic beverages, except beers; tea-based alcoholic beverage; Non-beer-based ready-to-drink alcoholic beverages; Alcoholic beverages, carbonated alcoholic beverages. | App 21-OCT-2022 App 1521959 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **MIAMI UNICORN** | Costa Rica | **Goods and Services** **33** alcoholic beverages except beers • alcoholic beverages, namely, spirited seltzer • carbonated alcoholic beverages, except beer • alcoholic cocktail mixes • alcoholic energy drinks • mixed alcoholic beverages except beers • spirited seltzer • premixed alcoholic beverages containing non-beer-based • prepared alcoholic cocktails • alcoholic beverages, namely, alcoholic iced tea • tea-flavored alcoholic beverages, except beers • tea-based alcoholic beverages • non-beer-based ready-to-drink alcoholic beverages of beer • alcoholic beverages, namely, mini shots or shots of alcoholic seltzer water • alcoholic carbonated shots or cocktails • alcoholic shots or cocktails | App 28-OCT-2022 App 2022-009516 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **MIAMI UNICORN** | Ecuador | **Goods and Services** **33** Alcoholic beverages except beers; alcoholic beverages, especially alcoholic soda; carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages except beers; soda with alcohol; premixed alcoholic beverages, except beer-based; prepared liqueur cocktails; alcoholic beverages, especially alcoholic tea; alcoholic tea; tea flavored alcoholic beverages, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, especially alcoholic soda shots; carbonated shots with alcohol; shots with alcohol | App 20-OCT-2022 App 2022-82118 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **MIAMI UNICORN** | Guatemala | **Goods and Services** **33** Alcoholic beverages, except beers; alcoholic beverages, namely, hard seltzer; carbonated alcoholic beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; mixed alcoholic beverages, except beers; hard seltzer; premixed alcoholic beverages, other than beer- | App 18-OCT-2022 App 2022011311 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |

| | | | | |
|---|---|---|---|---|
| | | based prepared alcoholic cocktails; alcoholic beverages, namely hard tea; hard tea; tea flavored alcoholic beverages, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; sparkling alcoholic shots; alcoholic shots. | | |
| MIAMI UNICORN | India | **Goods and Services:**<br>**33** Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 06-DEC-2022<br>**App** 5756000 | Entourage IP Holdings, LLC Body Incorporate (United States of America) |
| MIAMI UNICORN | Indonesia | **Goods and Services**<br>**33** Alcoholic cocktail mixes, prepared alcoholic cocktails, alcoholic beverages excluding beer, pre-mixed alcoholic beverages, other than beer-based, tea-flavoured alcoholic beverages, excluding beer, ready-to-drink alcoholic beverages, other than beer-based, alcoholic beverages, namely hard seltzer, alcoholic beverages, namely, hard seltzer shots, alcoholic beverages, namely, strong tea, alcoholic tea-based drinks, alcoholic carbonated drinks, except beer, alcoholic mixed drinks except beer, alcoholic energy drinks, hard seltzer, strong tea, alcoholic shots, alcohol carbonated shots . | **App** 06-DEC-2022<br>**App** M0020231706328 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| MIAMI UNICORN | International Register, designating AE, AU, BR, CA, CN, EG, EM, GB, ID, IN, JP, KR, MX, MY, NO, NZ, OM, PH, RU, TH, VN | **Goods and Services:**<br>**33** Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **Reg** 06-DEC-2022<br>**Reg** 1706328 | Entourage IP Holdings, LLC (United States of America) |
| MIAMI UNICORN | Peru | **Goods and Services**<br>**33** alcoholic beverages, except beer; alcoholic beverages, namely, hard seltzer (alcopop); carbonated alcoholic beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; mixed alcoholic beverages, except beers; hard seltzer (alcopop); premixed alcoholic beverages, not beer-based; prepared alcoholic cocktail; alcoholic beverages, namely hard tea; hard tea; tea-flavoured alcoholic beverages, except beers: tea-based alcoholic beverage; ready-to-drink alcoholic beverages, not beer-based: alcoholic beverages, namely, hard seltzer (alcopop) shots: carbonated alcoholic shots; alcoholic shots. | **App** 10-MAR-2023<br>**App** 10132-2023 (2023-010132) | ENTOURAGE IP HOLDINGS, LLC. (Colombia) |
| MIAMI UNICORN | South Africa | **Goods and Services:**<br>**33** Alcoholic beverages except beers; Alcoholic beverages, namely, hard seltzer; Alcoholic | **App** 06-JUL-2022<br>**App** 2022/20537 | Entourage IP Holdings, LLC, a |

| | | | | |
|---|---|---|---|---|
| **DISCLAIMER**<br>None | | carbonated beverages, except beer; Alcoholic cocktail mixes; Alcoholic energy drinks; Alcoholic mixed beverages except beers; Hard seltzer; Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail; Alcoholic beverages, namely, hard tea; Hard tea; tea-flavored alcoholic beverages, except beers; Alcoholic tea-based beverage; Ready-to-drink alcoholic beverages, other than beer-based; Alcoholic beverages, namely, hard seltzer shots; Alcoholic carbonated shots; Alcoholic shots. | | limited liability company organized and existing under the laws of the State of Florida (United States of America) |
| **MIAMI UNICORN** | Taiwan | **Goods and Services:**<br>第033 Alcoholic beverages (other than beer); alcoholic beverages, namely hard sodas; alcoholic carbonated beverages (other than beer); alcoholic mixed cocktails; alcoholic energy drinks; alcoholic mixed drinks (other than beer); hard sodas; Premixed alcoholic beverages not mainly beer; premixed alcoholic cocktails; alcoholic beverages, namely tea wine; tea wine; tea-flavored alcoholic beverages (other than beer); alcoholic tea-based beverages; ready-to-drink alcoholic beverages (not beer-based); alcoholic beverages, namely hard soda water (sip of wine); alcoholic carbonated drinks; sip of wine. | **App** 20-DEC-2022<br>**App** 111091427 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **MIXED** | Peru | **Goods and Services**<br>**33** alcoholic beverages, except beer; alcoholic beverages, namely hard soft drinks; carbonated alcoholic beverages, except beer; alcoholic energy drinks; hard seltzer (alcopop); prepared alcoholic cocktail. | **App** 22-APR-2021<br>**App** 894217-2021 (2021-894217)<br>**Reg** 14-SEP-2021<br>**Reg** P00314569 | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |
| **MIXX** | Peru | **Goods and Services**<br>**33** alcoholic beverages, except beer; alcoholic beverages, namely hard soft drinks; carbonated alcoholic beverages, except beer; alcoholic energy drinks; hard seltzer (alcopop); prepared alcoholic cocktail. | **App** 22-APR-2021<br>**App** 894215-2021 (2021-894215)<br>**Reg** 14-SEP-2021<br>**Reg** P00314568 | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |
| **PLANET POMEGRANATE** | Argentina | **Goods and Services**<br>**33** Class 33: International Limited<br>ALCOHOLIC BEVERAGES ONLY, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, CARBONATED ALCOHOLIC BEVERAGES (HARD SELTZER); CARBONATED ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC MIXES FOR COCKTAILS; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC BLENDED BEVERAGES, EXCEPT BEERS; SPARKLING ALCOHOLIC BEVERAGES (HARD SELTZER); PREMIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; ALCOHOLIC BEVERAGES, NAMELY, HARD TEA [ALCOHOLIC BEVERAGES]; HARD TEA [ALCOHOLIC BEVERAGE]; TEA-FLAVOR ALCOHOLIC BEVERAGES, EXCEPT BEERS; TEA-BASED ALCOHOLIC BEVERAGES; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS [CARBONATED ALCOHOLIC BEVERAGES]; GASIFIED ALCOHOLIC SHORT DRINKS; SHORT ALCOHOLIC DRINKS; | **App** 30-SEP-2021<br>**App** 4058065 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |

| PLANET POMEGRANATE **CompuMark Trademark:** PLANET POMEGRANATE | Canada | 33 Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 04-MAY-2021 **App** 2119391 | Entourage IP Holdings, LLC |
|---|---|---|---|---|
| **PLANET POMEGRANATE** | Chile | **Goods and Services Computerised Translation:** 33 Alcoholic beverages, except beers; carbonated alcoholic beverages; cocktail combinations with alcohol; energy drinks with alcohol; mixed alcoholic beverages, except beers; premixed alcoholic beverages, not based on beer; prepared alcohol cocktail; alcoholic beverages, namely strong tea (malt-based alcoholic beverage); strong tea (alcoholic beverage based on malt); alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; drinks with alcohol. | **App** 24-SEP-2021 **App** 1476091 **Reg** 22-AUG-2022 **Reg** 1378543 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **PLANET POMEGRANATE** | Colombia | **Goods and Services Computerised Translation:** 33 products to drink with alcohol, except beers; alcoholic beverages, namely hard seltzer; carbonated alcoholic beverages, except beer; mixes with alcohol for cocktails; energy drinks with alcohol; mixed alcoholic beverages, except beers; hard seltzer (fermented carbonated drinks); mixed alcoholic beverages not based on beer; cocktails with alcohol; alcoholic beverages, namely alcoholic tea; alcoholic teas; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely alcoholic seltzer drinks; alcoholic carbonated drinks; energy drinks with alcohol. | **App** 04-MAY-2021 **App** SD20210063831 **Reg** 17-MAR-2022 **Reg** 705361 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **PLANET POMEGRANATE** | India | **Goods and Services:** 33 Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 04-MAY-2021 **App** 5047422 | ENTOURAGE IP HOLDINGS, LLC Body Incorporate (United States of America) |
| **PLANET POMEGRANATE** | International Register, designating AU, BR, CA, CH, CN, CO, EM, GB, IL, IN, IS, JP, KR, MX, MY, NO, NZ, PH, TR | **Goods and Services:** 33 Alcoholic beverages except beers; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail; alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **Reg** 04-MAY-2021 **Reg** 1601368 | Entourage IP Holdings, LLC (United States of America) |

| | | | | |
|---|---|---|---|---|
| **PLANET POMEGRANATE** | Peru | **Goods and Services Computerised Translation:**<br>**33** alcoholic beverages, except beer; alcoholic beverages, namely hard seltzer (alcopop); carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages, except beers; premixed alcoholic beverages, not based on beer; prepared alcoholic cocktail; alcoholic beverages, namely hard tea; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic beverages, not based on beer; shots (shots), namely alcoholic beverages. | **App** 18-SEP-2021<br>**App** 915342-2021 (2021-915342)<br>**Reg** 09-DEC-2021<br>**Reg** P00318276 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **PLANET POMEGRANATE**<br>**DISCLAIMER**<br>None | South Africa | **Goods and Services:**<br>**33** Alcoholic beverages except beers; Alcoholic beverages, namely, hard seltzer; Alcoholic carbonated beverages, except beer; Alcoholic cocktail mixes; Alcoholic energy drinks; Alcoholic mixed beverages except beers; Hard seltzer; Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail; Alcoholic beverages, namely, hard tea; Hard tea; tea-flavored alcoholic beverages, except beers; Alcoholic tea-based beverage; Ready-to-drink alcoholic beverages, other than beer-based; Alcoholic beverages, namely, hard seltzer shots; Alcoholic carbonated shots; Alcoholic shots. | **App** 05-MAY-2021<br>**App** 2021/12953 | Entourage IP Holdings, LLC, a limited liability company organized and existing under the laws of the State of Florida (United States of America) |
| **VOOZ** | Colombia | **Goods and Services**<br>**33** alcoholic beverages, except beer; alcoholic beverages, namely, hard seltzer water; carbonated alcoholic beverages, except beer; carbonated alcoholic beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; mixed alcoholic beverages, except beers; premixed alcoholic beverages, except beer-based; prepared alcoholic cocktails. | **App** 25-JAN-2023<br>**App** SD20230005072 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **WYLDIN' WATERMELON**<br>**WYLDIN´ WATERMELON** | Argentina | **Goods and Services**<br>**33** Class 33: International Limited<br>ALCOHOLIC BEVERAGES ONLY, NAMELY, HARD TEA [ALCOHOLIC BEVERAGES]; HARD TEA [ALCOHOLIC BEVERAGE]; TEA-FLAVOR ALCOHOLIC BEVERAGES, EXCEPT BEERS; TEA-BASED ALCOHOLIC BEVERAGES; READY-TO-DRINK ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; ALCOHOLIC BEVERAGES, NAMELY, HARD SELTZER SHOTS [CARBONATED ALCOHOLIC BEVERAGES]; GASIFIED ALCOHOLIC SHORT DRINKS; SHORT ALCOHOLIC DRINKS; | **App** 30-SEP-2021<br>**App** 4058066 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **WYLDIN' WATERMELON**<br>**WYLDIN´ WATERMELON** | Argentina | **Goods and Services**<br>**33** Class 33: International Limited<br>ONLY MANUALLY ENTRY TERMS: ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC BEVERAGES, TO KNOW, CARBONATED ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC MIXTURES FOR COCKTAILS; ENERGY ALCOHOLIC BEVERAGES; MIXED ALCOHOLIC BEVERAGES, EXCEPT BEERS; GASIFIED ALCOHOLIC BEVERAGE; PRE-MIXED ALCOHOLIC BEVERAGES, OTHER THAN THOSE BASED ON BEER; PREPARED ALCOHOLIC COCKTAIL; | **App** 16-JUL-2021<br>**App** 4033474 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| WYLDIN' WATERMELON<br>**CompuMark Trademark:** | Canada | **Wares and Services:**<br>(1) Alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except | **App** 04-MAY-2021<br>**App** 2120838 | Entourage IP Holdings, LLC |

| | | | | |
|---|---|---|---|---|
| WYLDIN' WATERMELON<br>**Cross References:** WYLDINg WATERMELON | | beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | | |
| WYLDIN' WATERMELON<br>**CompuMark Trademark:** WYLDIN' WATERMELON<br>**Cross References:** WiLDINg WATERMELON | Canada | **Wares and Services:**<br>(1) Alcoholic beverages, except beer; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail. | **App** 06-APR-2021<br>**App** 2109940 | Entourage IP Holdings, LLC |
| **WYLDIN' WATERMELON** | Chile | **Goods and Services**<br>**33** Alcoholic beverages, namely strong tea (malt-based alcoholic beverage); strong tea (alcoholic beverage based on malt); alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely carbonated alcoholic beverages; drinks with alcohol. | **App** 24-SEP-2021<br>**App** 1476084<br>**Reg** 27-FEB-2023<br>**Reg** 1389513 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **WYLDIN' WATERMELON** | Chile | **Goods and Services**<br>**33** Alcoholic beverages, except beers; carbonated alcoholic beverages, except beers; alcoholic cocktail mixes; alcoholic energy drinks; mixed alcoholic beverages, except beers; non-beer based premixed alcoholic beverages; alcoholic cocktails. | **App** 02-AUG-2021<br>**App** 1468199<br>**Reg** 30-NOV-2022<br>**Reg** 1384124 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **WYLDIN' WATERMELON** | Colombia | **Goods and Services**<br>**33** alcoholic beverages, namely alcoholic tea; alcoholic teas; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverages; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely alcoholic seltzer drinks; alcoholic carbonated drinks; energy drinks with alcohol. | **App** 04-MAY-2021<br>**App** SD20210066409<br>**Reg** 11-MAY-2022<br>**Reg** 710116 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **WYLDIN' WATERMELON** | Colombia | **Goods and Services**<br>**33** alcoholic beverages, except beer; alcoholic beverages, namely hard seltzer; soft drinks with alcohol, except beer; mixes with alcohol for cocktails; energy drinks with alcohol; mixed alcoholic beverages, except beers; hard seltzer (fermented carbonated drinks); mixed alcoholic beverages not based on beer; cocktails with alcohol. | **App** 06-APR-2021<br>**App** SD20210050317<br>**Reg** 03-JAN-2022<br>**Reg** 700171 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **WYLDIN' WATERMELON** | India | **Goods and Services:**<br>**33** Alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **App** 04-MAY-2021<br>**App** 5061500 | Entourage IP Holdings, LLC Body Incorporate (United States of America) |
| **WYLDIN' WATERMELON** | India | **Goods and Services:**<br>**33** Alcoholic beverages, except beer; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail. | **App** 06-APR-2021<br>**App** 4989915 | ENTOURAGE IP HOLDINGS, LLC Body Incorporate (United States of America) |

| | | | | |
|---|---|---|---|---|
| **WYLDIN' WATERMELON** | International Register, designating AU, BR, CA, CH, CN, CO, EM, GB, IL, IN, IS, JP, KR, MX, MY, NO, NZ, PH, TR | **Goods and Services:**<br>**33** Alcoholic beverages, namely, hard tea; hard tea; tea-flavored alcoholic beverages, except beers; alcoholic tea-based beverage; ready-to-drink alcoholic beverages, other than beer-based; alcoholic beverages, namely, hard seltzer shots; alcoholic carbonated shots; alcoholic shots. | **Reg** 04-MAY-2021<br>**Reg** 1601492 | Entourage IP Holdings, LLC (United States of America) |
| **WYLDIN' WATERMELON** | International Register, designating AU, BH, BR, CA, CH, CN, CO, EM, GB, IL, IN, IR, IS, JP, KR, MX, MY, NO, NZ, PH, TR | **Goods and Services:**<br>**33** Alcoholic beverages, except beer; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail. | **Reg** 06-APR-2021<br>**Reg** 1593029 | Entourage IP Holdings, LLC (United States of America) |
| **WYLDIN' WATERMELON** | Peru | **Goods and Services**<br>**33** alcoholic beverages, except beer; alcoholic beverages, namely hard tea; tea flavored alcoholic beverages, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic beverages, not beer-based; alcoholic beverages, namely carbonated alcoholic beverages, except beer; hard seltzer (alcopop); non-beer based pre-mixed alcoholic beverages; shots, namely, carbonated alcoholic beverages; drinks (shots), namely, alcoholic beverages; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages, except beers; prepared alcoholic cocktail. | **App** 28-APR-2022<br>**App** 947964-2022 (2022-947964) | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |
| **WYLDIN' WATERMELON** | Peru | **Goods and Services**<br>**33** alcoholic beverages, except beer; alcoholic beverages, namely carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages, except beers; hard seltzer (alcopop); pre - mixed alcoholic beverages other than beer-based; prepared alcoholic cocktail. | **App** 20-JUL-2021<br>**App** 906722-2021 (2021-906722)<br>**Reg** 12-AUG-2022<br>**Reg** P00329951 | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |
| **WYLDIN' WATERMELON** | Peru | **Goods and Services**<br>**33** alcoholic beverages, namely, hard you; alcoholic beverages flavored with tea, except beers; tea-based alcoholic beverage; ready-to-drink alcoholic beverages, not based on beer; hard seltzer (alcopop), namely premixed alcoholic beverages; shots (shots), namely carbonated alcoholic beverages; shots (shots), namely alcoholic beverages. | **App** 18-SEP-2021<br>**App** 915343-2021 (2021-915343) | ENTOURAGE IP HOLDINGS, LLC. (United States of America) |
| **WYLDIN' WATERMELON**<br><br>**DISCLAIMER**<br>None | South Africa | **Goods and Services:**<br>**33** Alcoholic beverages, namely, hard tea; Hard tea; tea-flavored alcoholic beverages, except beers; Alcoholic tea-based beverage; Ready-to-drink alcoholic beverages, other than beer-based; Alcoholic beverages, namely, hard seltzer shots; Alcoholic carbonated shots; Alcoholic shots. | **App** 05-MAY-2021<br>**App** 2021/12956 | Entourage IP Holdings, LLC, a limited liability company organized and existing under the |

| | | | | laws of the State of Florida (United States of America) |
|---|---|---|---|---|
| **WYLDIN' WATERMELON**<br><br>**DISCLAIMER**<br>None | South Africa | **Goods and Services:**<br>**33** Alcoholic beverages, except beer; Alcoholic beverages, namely, hard seltzer; Alcoholic carbonated beverages, except beer; Alcoholic cocktail mixes; Alcoholic energy drinks; Alcoholic mixed beverages except beers; Hard seltzer; Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail. | **App** 07-APR-2021<br>**App** 2021/10039 | Entourage IP Holdings, LLC, a limited liability company organized and existing under the laws of the State of Florida (United States of America) |
| **YES** | Argentina | **Goods and Services**<br>**33** Class 33: International Limited<br>ALCOHOLIC BEVERAGES ONLY, EXCEPT BEER; ALCOHOLIC BEVERAGES, NAMELY, CARBONATED ALCOHOLIC BEVERAGES (HARD SELTZER); CARBONATED ALCOHOLIC BEVERAGES, EXCEPT BEER; ALCOHOLIC MIXES FOR COCKTAILS; ALCOHOLIC ENERGY DRINKS; ALCOHOLIC BLENDED BEVERAGES, EXCEPT BEERS; SPARKLING ALCOHOLIC BEVERAGES (HARD SELTZER); PREMIXED ALCOHOLIC BEVERAGES, OTHER THAN BEER-BASED; PREPARED ALCOHOLIC COCKTAIL; | **App** 30-SEP-2021<br>**App** 4058069 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **YES** | Chile | **Goods and Services**<br>**33** Carbonated alcoholic beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; mixed alcoholic beverages, except beer; premixed alcoholic beverages, not beer-based; cocktails prepared with alcohol. | **App** 22-SEP-2021<br>**App** 1475634 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **YES** | International Registration, designating AU, BH, BR, CA, CH, CN, CO, EM, GB, IL, IN, IR, IS, JP, KR, MX, MY, NO, NZ, PH, TR | **Goods and Services**<br>**33** Alcoholic beverages, except beer; alcoholic beverages, namely, hard seltzer; alcoholic carbonated beverages, except beer; alcoholic cocktail mixes; alcoholic energy drinks; alcoholic mixed beverages except beers; hard seltzer; pre-mixed alcoholic beverages, other than beer-based; prepared alcoholic cocktail | **Reg** 23-APR-2021<br>**Reg** 1596761 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **YES** | Peru | **Goods and Services**<br>**33** alcoholic beverages, except beer; alcoholic beverages, namely hard seltzer (alcopop); carbonated alcoholic beverages, except beer; alcoholic mixes for cocktails; alcoholic energy drinks; mixed alcoholic beverages, except beers; premixed alcoholic beverages, not based on beer; prepared alcoholic cocktail. | **App** 18-SEP-2021<br>**App** 915346-2021 | ENTOURAGE IP HOLDINGS, LLC (United States of America) |
| **YES** | South Africa | **Goods and Services:** | **App** 26-APR-2021 | Entourage IP |

| DISCLAIMER<br>None | | **33** Alcoholic beverages, except beer; Alcoholic beverages, namely, hard seltzer; Alcoholic carbonated beverages, except beer; Alcoholic cocktail mixes; Alcoholic energy drinks; Alcoholic mixed beverages except beers; Hard seltzer; Pre-mixed alcoholic beverages, other than beer-based; Prepared alcoholic cocktail. | **App** 2021/11856 | Holdings, LLC, a limited liability company organized and existing under the laws of the State of Florida (United States of America) |
|---|---|---|---|---|

### Entourage IP Holdings' unregistered Intellectual Property as it relates to Intellectual Property not incorporated in Section 3.1(a)(i)

Entourage IP Holdings' unregistered Intellectual Property rights as it relates to Intellectual Property not incorporated in Section 3.1(a)(i) including:

(a) rights associated with works of authorship, including exclusive exploitation rights, mask work rights, copyrights, copyrightable subject matter, and moral and similar attribution rights, including for can art and packaging design;

(b) rights associated with trademarks, trade dress, service marks, trade names, and design rights, including all common law rights;

(c) proprietary rights in internet domain names, IP addresses, social media and third-party website handles, pages, and accounts including the access information for the same;

(d) trade secrets including formulas, recipes, and ingredients lists including the access information for the same, know-how, technical data, processes, techniques, lists of or information relating to suppliers and customers, pricing lists and methodologies, cost and market share data, marketing and business plans, financial forecasts and histories, and budgets;

(e) patents, design patents, utility models, industrial design and other industrial property rights; and

(f) rights of publicity.

**Section 5.2**
**Authority; Execution and Delivery; Enforceability**

1. John H. Owoc has challenged whether the Board of the Seller had the authority to take certain corporate action, including in connection with his termination from his role as Chief Executive Officer and Chief Science Officer of the Seller and member of the Board of Directors of the Seller, as well as his roles at the other Selling Entities.

2. Item 61 listed under "Pending Claims" in <u>Section 5.4</u> of this Disclosure Schedule is incorporated by reference herein.

**Section 5.3(a)**
**Required Consents and Approvals**

1. The Selling Entities disclosed and provided copies of certain commercial Contracts in connection with the Bankruptcy Case auction process with participants in the auction process who were subject to confidentiality agreements. Such disclosure constitutes a breach of confidentiality provisions in such commercial Contracts.

2. The assumption of certain Assumed Agreements, including, but not limited to, any Intellectual Property licenses with Affiliates of the Selling Entities and personal services contracts, may require consent.

3. The Permits of the Selling Entities are not transferable as noted in <u>Section 5.5</u> of this Disclosure Schedule. Prior to the Closing, the applicable Selling Entities may be required to provide notices to the applicable Governmental Authority, notifying it of the Transactions.

4. The insurance policies of the Selling Entities are not transferable as noted in <u>Section 5.14</u> of this Disclosure Schedule.

5. The transfer of items 1 and 2 of <u>Section 5.11(b)</u> of this Disclosure Schedule will require third party consent.

6. The vehicle fleet Permitted Encumbrances listed on <u>Section 1.1(b)</u> and <u>Schedule 1.1(b)</u> of this Disclosure Schedule are incorporated by reference herein.

7. <u>Section 5.2</u> of this Disclosure Schedule is incorporated by reference herein.

8. Item 61 listed under "Pending Claims" in <u>Section 5.4</u> of this Disclosure Schedule is incorporated by reference herein.

18

**Section 5.4**
**Legal Proceedings and Orders**

<u>Pending Claims</u>

1. *Orange Bang & Monster vs. VPX & JHO IP Holdings* (AAA (Los Angeles) / 01-20-0005-6081, U.S. CD Cal / 20-1464 DSF).
2. *Monster vs. VPX & Owoc* (U.S. CD Cal / 5:18-CV-1882).
3. *PepsiCo adv. (i) VPX, (ii) JHO IP Holdings, LLC, (iii) Elite IP Holdings, LLC, (iv) Quash Seltzer, Inc.* (AAA (NYC) / 01-20-0015-8060, U.S. SD Fla / 0:20-cv-62415, U.S. SD Fla / 0:22-cv-60805, U.S. D Az / 2:22-cv-00593, U.S. D Az / 2:22-cv-00591, U.S. D Az / 2:22-cv-00353, U.S. SD Fla / 0:21-cv-60191).
4. *Webb & Gerritsen vs. VPX* (WI State Court, Waukesha County / 2019-cv-001049).
5. *All Brands vs. VPX et al.* (U.S. DC Ks / 6:18-01354).
6. *Balboa Capital vs. VPX & Owoc* (U.S. SD Fla / 0:18-CV-61125).
7. *VPX & JHO IP Holdings, LLC vs. PhD* (U.S. CD Cal / 2:20-CV-6745).
8. *VPX vs. ProSupps et al.* (Broward Circuit/CACE-12-007083).
9. *VPX vs. Elegance Brands et al.* (U.S. SD Fla / 0:20-cv-61307).
10. *VPX vs. Drink King Distributing* (Broward Circuit / CACE-21-003376).
11. *VPX & JHO IP Holdings vs. Ignite Int'l & James Gracely* (U.S. SD Fla / 21-cv-60451, AAA (Fla) / 01-21-0017-1993).
12. *VPX vs. Brightfractl et al.* (Palm Beach Circuit / 50-2020-CA-005690-XXXX).
13. *VPX vs. Europa Sports Partners* (U.S. SD Fla / Case No. 0:22-cv-60669-XXXX).
14. *VPX vs. Monster & Rodney Sacks* (U.S. SD Fla / 0:22-cv-61621).
15. *VPX vs. Monster & Markerly et al.* (U.S. SD Fla / 0-19-cv-61974).
16. *VPX vs. Ball Metal* (AAA (Denver) / 01-21-0000-1032).
17. *VPX vs. Suddath Global Logistics et al.* (Broward Circuit /CACE-21-003572).
18. *VPX vs. Yepes, Daniel* (Broward Circuit / CACE- 21015520).
19. *VPX vs. Triller & Carnegie* (Broward Circuit / CACE-20-016430).
20. *VPX vs. Premier Nutrition Products, LLC & Derik Fay* (Broward Circuit / CACE-21-022185).
21. *VPX vs. Lloyds London* (London (2022) Broward Circuit / Case No. CACE-22-005500).
22. *VPX vs. Dang Foods* (U.S. SD Fla / 0:21-cv-61119).
23. *VPX vs. Bang Diamonds* (U.S. SD Fla / 0:22-cv-60155).
24. *VPX vs. Brandyn Alejos et al.* (Broward Circuit / CACE 12-07088).
25. *In re: GNC Holdings, Inc. et al.* (D. De Bkrty. / 20-11662 (KBO) (Ch. 11)).
26. *In re: 24 Hour Fitness Worldwide, Inc. et al.* (U.S. De. Bkrty. / 20-11558-KBO (Ch. 11)).
27. *Timothy Brown vs. VPX* (U.S. ED NY / 1:22-cv-00805).
28. *Fischer vs. VPX* (U.S. ED MO / 4:22-cv-00136, St. Louis County Circuit Court / 21SL-CC04977).
29. *Abbot vs. VPX* (ED MO / 22-CV-00587, St. Louis County Circuit Court / 22 SL-CC02272 ).
30. *Williams, Wightman & Hernandez vs. VPX* (Cal Superior Ct., San Bernadino / CIV B 21-34330, Cal Superior Ct., SanBernadino / CIV B 21-29573 ).
31. *Dairy Farmers v. Vital Pharmaceuticals, Inc.* (U.S. WD MO / 4:20-cv-00760).
32. *Southeast Cold Fill vs. VPX et al.* (U.S. D. SC, Florence Division / 4:20-CV-00776).
33. *The American Bottling vs. VPX et al.* (U.S. D. DE. / 1:20-cv-01268).
34. *Premium Beverage vs. VPX et al.* (Cal Superior Ct. Santa Cruz / 19CV02562).
35. *The House of LaRose, Inc. vs. VPX* (U.S. SD Fla / 0:21-cv-60736).
36. *UMG Recordings vs. VPX & Owoc* (U.S. SD Fla / 0:21-cv-60914).
37. *Sony Music Entertainment vs. VPX & Owoc* (U.S. SD Fla / 1:21-cv-22825).
38. *Warner Music Group vs. VPX & Owoc* (U.S. SD Fla. / 1:22-cv-22951).
39. *Massimo Zanetti Beverage USA vs. VPX* (U.S. ED Va / 2:21-cv-00382).
40. *Briggs Equipment vs. VPX et al* (Broward Circuit /CACE - 20015813).
41. *Ardagh vs. VPX & Quash* (U.S. SD Fla / 0:22-cv-60835).

42. *Nexus Steel, LLC vs. VPX, JHO Real Estate Investment, LLC* (AZ Maricopa County Superior Ct. / CV2022-008873).
43. *Marc Kesten vs. VPX & Owoc* (Fla. DCA3, 22-56019, Supreme Court of Florida / SC22-1253).
44. *Donna Williams vs. VPX & Owoc* (Broward Circuit / CACE-20003681).
45. *Cheryl Ohel vs. VPX* (Broward Circuit / 18-007709).
46. *Krystle Glenn vs. VPX* (2020).
47. *James Rodriguez vs. VPX* (Cal Superior Ct., LA / 21STCV20916)).
48. *Tadasha Lenorah Hodges vs. Darrell James Bennet II & VPX* (Orange County Circuit (Fla) / 2022-CA-06790-O).
49. *Aaronda Walton vs. VPX* (FL EEOC / Charge No. 510-2022-03641).
50. *In re: JHO Intellectual Property Holdings, LLC* (Fed. Cir. No. 19-2330).
51. *VPX et al. vs. John H. Owoc & Megan E. Owoc* (Bankr. S.D. Fla. / 23−01051−PDR).
52. *Vital Pharmaceuticals, Inc. et al. vs Atlantic Recording Corporation, Atlantic Records Group LLC, Warner Records Inc., Asylum Worldwide LLC, Bad Boy Records LLC, Rhino Entertainment Company, Rhino Entertainment LLC, Spinnin Records B.V., Warner Music International Services Limited, Warner Music Latina Inc., Gene Autry's Western Music Publishing Co., Unichappell Music Inc., W Chappell Music Corp., Warner Chappell Music, Inc. and Warner−Tamerlane Publishing Corp.* (Bankr. S.D. Fla. / 22−01428-PDR).
53. *VPX & JHO IP Holdings, LLC vs. Orange Bang Monster* (Bankr. S.D. Fla. / 23-01031-PDR).
54. *Vital Pharmaceuticals, Inc. vs. Orange Bang, Inc.,* No. 23-cv-03862 (C.D. Ca.).
55. Administrative proceedings at U.S. and foreign trademark offices (and appeals thereto) filed by Orange Bang, Inc. or Monster Energy Company.
56. *Vital Pharmaceuticals, Inc. vs. Owoc* (Bankr. S.D. Fla. / No. 23-ap-1051).
57. *Owoc vs. Vital Pharmaceuticals, Inc. et al* (S.D. Fla. / 0:23-cv-60997-AHS).
58. *Owoc et al vs. Vital Pharmaceuticals, Inc. et al* (S.D. Fla. / 0:23-cv-60996-RNS).
59. *Owoc vs. Vital Pharmaceuticals, Inc. et al* (S.D. Fla. / 0:23-cv-60869-AHS).
60. *Vital Pharmaceuticals, Inc. v. Owoc, et al.* (Adv. Proc. Case No. 23-01051 (PDR).
61. John H. Owoc has filed an action seeking declaratory and injunctive relief against certain members of the Board (*John H Owoc vs. Robert Dickinson, et al.* (Broward County Case No. CACE-23-014222)), and has sought relief from the automatic stay to name the Seller in that action.

Threatened Claims
1. *Scheibe vs. VPX* (2022).
2. *Mello vs. Habib Rahman & VPX* (2022).

In addition to the Claims listed above, given the nature and size of the Business, from time to time, the Business becomes involved in various disputes in the Ordinary Course of Business, including vehicle accident claims (that are generally covered by vehicle insurance) and equal employment opportunity claims.

Further, given the contentious nature of the relationship with the Excluded Parties, from time to time, the Business becomes involved in various disputes with the Excluded Parties.

**Section 5.5**
**Permits**

All Permits listed below constitute Excluded Assets and will not be transferred to the Buyer in connection with the Transactions.  The Buyer will need to obtain these Permits in its own name.

| *Owner / Location* | *Issuer* | *Type* |
|---|---|---|
| Vital Pharmaceuticals, Inc.<br><br>1635 S. 43rd Ave.<br>Phoenix, AZ | City of Phoenix, Arizona | Business License |
| | Food and Drug Administration ("FDA") | FDA Food Facility Registration |
| | Arizona | State Food Facility License |
| | | Wastewater Discharge Permit |
| Vital Pharmaceuticals, Inc.<br><br>4747 W. Buckeye Rd.<br>Phoenix, AZ | City of Phoenix, Arizona | Business License |
| Vital Pharmaceuticals, Inc.<br><br>11130 Sherman Way,<br>Sun Valley, CA 91352 | City of Los Angeles, California | Business License |
| Vital Pharmaceuticals, Inc.<br><br>3042 Inland Empire, Suite A<br>Ontario, CA | City of Ontario, California | Business License |
| Vital Pharmaceuticals, Inc.<br><br>10100 Aviation Blvd., Suite 200,<br>Los Angeles, CA 90045 | City of Los Angeles, California | Business License |
| Vital Pharmaceuticals, Inc.<br><br>1909 N. US Highway 301,<br>Building D, Suite 140-150<br>Tampa, FL 33619 | City of Tampa, Florida | Business License |
| | Florida Department of Agriculture & Consumer Services ("FDACS") | FDACS – State Food Facility License |
| Vital Pharmaceuticals, Inc.<br><br>12600 NW 115 Ave,<br>Medley, FL 33166 | Town of Medley, Florida | Business License |
| | FDACS | FDACS – State Food Facility License |
| Vital Pharmaceuticals, Inc.<br><br>20311 Sheridan St. Bldg A<br>Pembroke Pines, FL | City of Pembroke Pines, Florida | Business License |
| | FDA | FDA Food Facility Registration |
| | FDACS | FDACS – State Food Facility License |
| Vital Pharmaceuticals, Inc.<br><br>1600 N. Park Dr.<br>Weston, FL | City of Weston, Florida | Business License |
| | FDA | FDA Food Facility Registration |
| | FDACS | FDACS – State Food Facility License |
| Vital Pharmaceuticals, Inc.<br><br>9550 Parksouth Court, Suite 300<br>Orlando, FL 32837 | Orange County, Florida | Business License |
| | FDACS | FDACS – State Food Facility License |
| Vital Pharmaceuticals, Inc. | Palm Beach County, Florida | Business License |
| | FDACS | FDACS – State Food Facility License |

| Owner / Location | Issuer | Type |
|---|---|---|
| 7950 Central Industrial Dr. N., Ste. 102 Riviera Beach, FL 33404 | | |
| Vital Pharmaceuticals, Inc. 3520 Old Metro Pkwy. Fort Myers, FL | City of Fort Myers, Florida | Business License |
| | FDACS | FDACS – State Food Facility License |
| Vital Pharmaceuticals, Inc. 4117 Wagon Trail Ave. Las Vegas, NV 89148 | City of Clark County, Nevada | Business License |
| Vital Pharmaceuticals, Inc. 6100 Glen Afton Blvd, Concord, NC | City of Concord, North Carolina | Business License |
| Vital Pharmaceuticals, Inc. 160 W. Everman Fwy. Fort Worth, TX | City of Dallas, Texas | Business License |
| Quash Seltzer, LLC | Alabama | Importer License |
| | Arizona | In-State Producer License |
| | | TTB Brewer's Notice |
| | | TTB Basic Permit - Wholesaler |
| | Arkansas | Non-Resident Beer |
| | California | Out-of-State Beer Manufacturer Certificate |
| | Colorado | Importer License |
| | Connecticut | Out-of-State Shipper |
| | Delaware | Unlimited Supplier License |
| | Florida | Manufacturer of Malt Beverages |
| | | TTB Brewer's Notice |
| | | TTB Basic Permit - Importer |
| | | TTB Basic Permit - Wholesaler |
| | Georgia | Broker License |
| | Idaho | Certificate of Approval |
| | Illinois | Non-Resident Dealer License |
| | Iowa | Certificate of Compliance |
| | Kansas | Supplier Permit |
| | Kentucky | Out of State Malt Beverage Supplier's License |
| | Maryland | Non-Resident Dealer License |
| | Michigan | Out-of-State Seller of Beer |
| | Minnesota | Malt Beverage Importer's License |
| | Mississippi | Importer License |
| | Missouri | Solicitor License |
| | Montana | Importer License |
| | Nebraska | Importer License |
| | New Hampshire | Beverage Vendor |
| | North Carolina | Nonresident Malt Beverage Vendor |
| | North Dakota | Supplier License |
| | Ohio | Out of State Supplier of Beer |
| | Oklahoma | Non-Resident Seller's License |
| | Oregon | Certificate of Approval |

| Owner / Location | Issuer | Type |
|---|---|---|
| | Pennsylvania | Brand Registration |
| | Rhode Island | Certificate of Compliance |
| | Tennessee | Beer Certificate |
| | Texas | Nonresident Brewer's License |
| | | Nonresident Brewer's License |
| | | Nonresident Brewer's License |
| | Vermont | Certificate of Approval |
| | Virginia | Out of State Importer |
| | West Virginia | Importer License |
| | Wisconsin | Out of State Shipper |
| Quash Seltzer, LLC | US Alcohol and Tobacco, Tax and Trade Bureau ("TTB") | TTB Formula Approval (Flavor – Bang Hard Tea – Blackberry Blast) |
| | | TTB Formula Approval (Flavor – Bang Mixx Hard Seltzer – Key Lime Pie) |
| | | TTB Formula Approval (Flavor – Bang Mixx Hard Seltzer – Lemon Drop) |
| | | TTB Formula Approval (Flavor – Bang Mixx Hard Seltzer – Mango Bango) |
| | | TTB Formula Approval (Flavor – Bang Mixx Hard Seltzer – Pina Colada) |
| | | TTB Formula Approval (Flavor – Bang Mixx Hard Seltzer – Purple Kiddles) |
| | | TTB Formula Approval (Flavor – Bang Mixx Hard Seltzer – Strawberry Blast) |
| | | TTB Formula Approval (Flavor – Bang Mixx Hard Seltzer – Wyldin' Watermelon) |
| | | TTB Formula Approval (Flavor – Bang Hard Seltzer – Raging Raspberry Hibiscus) |
| | | TTB Formula Approval (Flavor – Bang Hard Tea – Blackberry Blast) |
| | | TTB Formula Approval (Flavor – Bang Hard Tea – Georgia Peach) |
| | | TTB Formula Approval (Flavor – Bang Hard Tea – Lemon Drop) |
| | | TTB Formula Approval (Flavor – Bang Hard Tea – Original Iced Tea) |
| | | TTB Formula Approval (Flavor – Bang Hard Tea – Planet Pomegranate) |
| | | TTB Formula Approval |

23

| Owner / Location | Issuer | Type |
|---|---|---|
| | | (Flavor – Bang Hard Tea – Raspberry Hibiscus) |
| | | TTB Formula Approval (Flavor – Bang Hard Tea – Strawberry Hibiscus) |
| | | TTB Formula Approval (Flavor – Bang Hard Tea – Wyldin' Watermelon) |
| Vital Pharmaceuticals, Inc. | Colombia | Sanitary Registration License |
| | Ecuador | Sanitary Registration License |
| | Dominican Republic | Sanitary Registration for Bang Blue Razz |
| | Panama | Sanitary Registration for Bang Mango Bango |
| | | Sanitary Registration for Bang Swirly Pop |
| | | Sanitary Registration for Bang Wyldin' Watermelon |
| | Paraguay | Sanitary Registration for Bang Blue Razz |
| | | Sanitary Registration for Bang Candy Apple Crisp |
| | | Sanitary Registration for Bang Mango Bango |
| | | Sanitary Registration for Bang Sour Heads |
| | | Sanitary Registration for Swirly Pop |

**Section 5.6**
**Compliance with Law**

1. From time to time, certain Selling Entities have received written communications from one or more Governmental Authorities informing such Selling Entities that a Permit was not renewed in a timely fashion, or that a related report was not filed in a timely manner. Upon receipt of these communications, such Selling Entities have taken steps to rectify the identified issue.

2. In 2019, the FDA conducted an audit of the Seller's Weston, FL manufacturing facilities. As part of that audit, the FDA issued a Form 483 (the "FDA Audit"). The Seller responded to the FDA Audit in 2019 and has not received any further communications regarding the matter from the FDA.

3. On May 19, 2021, a 60-day notice of violation (the "Notice") was sent to the Seller on behalf of Audrey Donaldson pursuant to Section 25249.7(d) of the California Health and Safety Code. The Notice alleged that the Seller's inflatable PVC pool floats were covered with Di (2-ethylhexyl) phthalate (DEHP), in violation of Proposition 65. The Seller engaged with Ms. Donaldson's legal counsel for a period of time in 2021. However, neither counsel for Ms. Donaldson nor the California Attorney General's office have been in communication with the Seller regarding this matter since that time.

4. On August 4, 2022, a notice was sent to the Seller pursuant to Section 1782 of the California Civil Code on behalf of Jacob Scheibe, as well as a putative class of national and California consumers who purchased the Seller's 'Pre-Workout Master Blaster' powder, alleging that the labeling of this product misstated the calorie count per serving. The Seller engaged in settlement discussions but such discussions were not concluded. Mr. Scheibe, through his legal counsel, filed a proof of claim in the Bankruptcy Case.

5. Section 5.13 of this Disclosure Schedule is incorporated by reference herein.

**Section 5.7**
**Absence of Certain Developments**

1. On March 9, 2023, the Board of Directors of the Seller terminated (i) John H. Owoc from his role as Chief Executive Officer and Chief Science Officer of the Seller and member of the Board of Directors of the Seller, as well as his roles at the other Selling Entities, and (ii) Megan E. Owoc from her role as Senior Director of Marketing of the Seller.

2. Any defaults under the Selling Entities debtor-in-possession financing facility for which no Termination Notice (as defined in the DIP Order) is sent.

3. There have been extensions of the milestones set forth in the DIP Order or Bidding Procedures Order.

4. The Selling Entities amended its organizational documents in connection with the Bankruptcy Case and DIP Order.

5. The Selling Entities pays bonuses to its sales personnel from time to time.

6. Certain of the Accounts Receivable with respect to distributors are subject to set offs.

7. As noted in the Seller Financial Statements, there are aged Accounts Receivable, and not all Accounts Receivable are current.

8. Not all Accounts Receivable may be collectible.

9. In response to Item 2 of Section 5.4 of this Disclosure Schedule, the Selling Entities have updated graphics for point-of-sale assets, deidentified certain vehicle graphics, conducted trade promotions, implemented can sleeving, swapped inventory, ceased shipments of inventory, and destroyed inventory and merchandise and taken other similar actions.

10. The Selling Entities have sold, and is in the process of selling, vehicles not needed for the operation of the Business in the Ordinary Course of Business and related to rationalizing the Florida DSD network.

11. The leases set forth in items 1 – 4, 10 – 13, 16 and 19 of Section 1.1(c) of this Disclosure Schedule, as well as the lease set forth in item 1 under "Intercompany Lease Agreements" in Section 5.20 of this Disclosure Schedule, will be rejected.

12. The Selling Entities are in the process of winding down the Florida DSD network (including warehouses and the related vehicle fleet), which was initiated in May 2023 and continues to occur through June 2023.

13. The Selling Entities have transitioned certain marketing employees from W2-classified employees to 1099 independent contractors and laid off other employees.

14. The Seller has exited the site at 20351 Sheridan Street, Pembroke Pines, Florida 33332 (Sheridan B site) and has pending motions to reject certain leases associated with this site.

15. The Selling Entities are exiting their offices located in San Diego, California; Las Vegas, Nevada; Houston, Texas; and Dallas, Texas. The exits will be followed by rejections in the Bankruptcy Case.

16. The Selling Entities have abandoned certain raw and finished goods inventory (primarily Super Creatine cans) at certain third party co-packer and warehousing facilities.

17. The Seller may negotiate and enter into a short term lease with the prospective buyer of 20311 Sheridan Street, Pembroke Pines, Florida ("Sheridan A") a property owned by an Excluded Party, for a term of approximately six (6) months to run the shot line at the Sheridan A site. The parties have not yet agreed on the terms of the lease and a short-term lease may not be negotiated or entered into prior to the Closing.

18. Section 7.1 of this Disclosure Schedule is incorporated by reference herein.

**Section 5.8**
**Financial Statements**

(a)

See <u>Schedule 5.8</u> attached.

(b)

Items 6, 7 and 8 of <u>Section 5.7</u> of this Disclosure Schedule are incorporated by reference herein.

**Schedule 5.8**

**Consolidated Financial Statements**

(see attached)

**Section 5.8**
**Financial Statements**

<u>**BALANCE SHEET**</u> *($ in 000s)*

| ASSETS | | Period Ended December 31, 2022 | | Period Ended April 30, 2023 |
|---|---|---|---|---|
| **Current Assets** | | | | |
| Cash and cash equivalents | $ | 6,206 | $ | 10,880 |
| Accounts receivable, net | | 29,667 | | 19,052 |
| Inventories, net | | 59,869 | | 35,530 |
| Prepaids and other current assets | | 24,080 | | 22,879 |
| **Total current assets** | $ | 119,822 | $ | 88,340 |
| | | | | |
| Property and Equipment, net | $ | 315,604 | $ | 295,718 |
| | | | | |
| **Other Assets** | | | | |
| Deposits | $ | 5,326 | $ | 11,636 |
| Related party receivable | | 114,543 | | 75,930 |
| Intangible assets, net | | 869 | | 911 |
| Right of Use Assets | | 31,055 | | 27,761 |
| Others | | 3,390 | | 2,953 |
| **Total other assets** | $ | 155,183 | $ | 119,191 |
| | | | | |
| **Total Assets** | $ | 590,609 | $ | 503,249 |

| LIABILITIES AND STOCKHOLDER'S EQUITY | Period Ended December 31, 2022 | | Period Ended April 30, 2023 | |
|---|---|---|---|---|
| **Current Liabilities** | | | | |
| Accounts payable | $ | 74,716 | $ | 78,885 |
| Accrued liabilities | | 67,886 | | 67,058 |
| Loss contingencies | | 496,908 | | 496,908 |
| Capital lease, current portion | | 9,076 | | 8,524 |
| Notes payable, current portion | | 390,813 | | 359,849 |
| **Total current liabilities** | $ | 1,039,400 | $ | 1,011,224 |
| | | | | |
| **Long term Debts** | | | | |
| Other long-term liabilities | $ | 115,000 | $ | 115,000 |
| Capital lease, net of current position | | 2,649 | | 2,286 |
| Long-term Lease Liability | | 24,606 | | 21,721 |
| **Total long-term debt** | $ | 142,255 | $ | 139,008 |
| | | | | |
| **Total Liabilities** | $ | 1,181,655 | $ | 1,150,231 |
| | | | | |
| **STOCKHOLDERS EQUITY:** | | | | |
| Common stock, $1 par value; 3500 shares authorized, issued and | $ | 4 | $ | 4 |
| Additional paid-in capital | | 1,838 | | 1,838 |
| Retained earnings | | (592,887) | | (648,823) |
| **Total stockholder's equity** | $ | (591,045) | $ | (646,982) |
| | | | | |
| **TOTAL LIABILIITES AND STOCKHOLDER' S EQUITY** | $ | 590,609 | $ | 503,249 |

**INCOME STATEMENT *($ in 000s)***

|  | 12 Months Ended December 31, 2022 | | 12 Months Ended April 30, 2023 | |
|---|---:|---|---:|---|
| **Total Net Sales** | $ | 414,126 | $ | 312,974 |
| Total Cost of Goods Sold | | (326,320) | | (247,801) |
| **Gross Profit** | $ | 87,806 | $ | 65,173 |
|  | | | | |
| **Expenses** | | | | |
| Total employee costs | $ | 98,135 | $ | 95,441 |
| Freight and handling | | 58,941 | | 50,955 |
| Facilities costs | | 43,656 | | 41,574 |
| Direct Marketing | | 16,666 | | 13,203 |
| Advertising and promotion | | 39,103 | | 29,384 |
| Office and supplies | | 44,408 | | 34,270 |
| Bad Debts | | 10,524 | | 10,468 |
| **Total Expenses** | $ | 311,433 | $ | 275,295 |
|  | | | | |
| **Operating Income** | $ | (223,627) | $ | (210,122) |
|  | | | | |
| Depreciation, non-manufacturing | $ | 26,240 | $ | 26,758 |
|  | | | | |
| **Other income / (Expense)** | | | | |
| Gain/Loss from Realized Exchange Rate Differences | $ | (196) | $ | (139) |
| Gain/(Loss) from Scrapping of Assets | | (264) | | (2,394) |
| Other Unordinary Income/Expenditure | | (335,078) | | (314,121) |
| Non-Ordinary Course Inventory Reserve | | - | | (16,101) |
| Others | | (97) | | 389 |
| **Total other income (expense)** | $ | (335,635) | $ | (332,366) |
|  | | | | |
| **Interest Income (Expense)** | | | | |
| Interest expense | $ | (32,064) | $ | (42,776) |
| Interest income | | 3,262 | | 3,263 |
| **Total interest income (expense)** | $ | (28,803) | $ | (39,513) |
|  | | | | |
| Taxes income/(expenses) | $ | (40) | $ | 211 |
|  | | | | |
| **Net Profit/Loss** | $ | (614,345) | $ | (608,547) |

**STATEMENT OF CASH FLOWS (*$ in 000s*)**

| | 12 Months Ended December 31, 2022 | | 12 Months Ended April 30, 2023 | |
|---|---|---|---|---|
| CASH FLOWS FROM OPERATING ACTIVITIES: | | | | |
| Net Income | $ | (614,345) | $ | (608,547) |
| Add: Non cash items | | | | |
| Depreciation and amortization | | 26,240 | | 26,758 |
| (Profit)/ Loss on sale of Fixed Assets | | 264 | | 2,394 |
| | | | | |
| Change in working capital | | | | |
| (Increase) / Decrease in assets | | | | |
| Accounts Receivable | | 28,992 | | 20,297 |
| Inventories | | 100,428 | | 130,839 |
| Prepaids and other current assets | | 87,743 | | 84,184 |
| Other assets | | 29,061 | | 81,241 |
| | | | | |
| Increase / (Decrease) in liabilities | | | | |
| Accounts Payable | | 5,226 | | (17,031) |
| Accrued Liabilities | | 35,171 | | 21,690 |
| Other Current Liabilities | | (40,420) | | (22,599) |
| Loss Contingencies | | 310,940 | | 310,815 |
| Other Long-Term Liabilities | | (59,198) | | (90,505) |
| **Net cash provided/(used) by operating activities** | **$** | **(89,899)** | **$** | **(60,464)** |
| | | | | |
| CASH FLOWS FROM INVESTING ACTIVITIES: | | | | |
| Sale/ (Purchase) of PP&E | $ | (30,814) | $ | (5,344) |
| **Net cash from/(used) in investing activities** | **$** | **(30,814)** | **$** | **(5,344)** |
| | | | | |
| CASH FLOWS FROM FINANCING ACTIVITIES: | | | | |
| Proceeds/(repayment) of secured loan | $ | 24,068 | $ | 48,717 |
| Loan costs | | (3,390) | | 1,312 |
| Proceeds/(repayment) of other arrangements | | 21,381 | | 21,638 |
| Proceeds/(payment) to stockholders | | 10,245 | | (8,344) |
| **Net cash from/(used) in financing activities** | **$** | **52,304** | **$** | **63,323** |
| | | | | |
| **Net Cash Flows** | **$** | **(68,409)** | **$** | **(2,485)** |

**Section 5.9**
**Employee Benefit Plans**

(a)

1.  Medical/Prescription Plans (United Healthcare (Self Insured Plan))
2.  Dental Plan (MetLife)
3.  Vision Plan (MetLife)
4.  Worker's Compensation (Chubb)
5.  Employment Practices Liability Insurance (Chubb)
6.  Term Life, Short & Long Disability and Supplemental (Mutual of Omaha)
7.  Paid Time Off (including vacation, floater and holidays)
8.  Expense Reimbursement
9.  Tuition Reimbursement
10. 401K
11. FSA – Health Equity
12. HSA – Optum Bank
13. FMLA – (Maternity & Paternity Paid Leaves)
14. Employee Referral

(f)

As a result of the Transactions, the Seller's Key Employment Retention Plan (KERP), as approved by the Bankruptcy Court's Order on December 2, 2022 will be accelerated.

**Section 5.10**
**Material Contracts**

(a)(i)

1. Patent License Agreement, dated December 5, 2017, by and between AquaPurine Holdings, LLC and JHO Intellectual Property Holdings, LLC, including Letter of Confirmation of License Agreement, by and between AquaPurine Holdings, LLC and JHO Intellectual Property Holdings, LLC.

2. Theacrine Dietary Ingredient Sublicense and Warranty Agreement, dated September 16, 2014, by and between Compound Solutions, Inc. and Vital Pharmaceuticals, Inc.

3. Distributor Agreement, dated April 9, 2021, by and between Ketone Labs, LLC and Vital Pharmaceuticals, Inc., d/b/a Bang Energy.

(a)(ii)

1. Container Supply Agreement, dated May 28, 2019, by and between Crown Cork & Seal USA, Inc. and Vital Pharmaceuticals, Inc., as amended by that certain Agreement, dated February 21, 2023, by and among Crown Cork & Seal USA, Inc., Crown Metal Packaging Canada LP and Vital Pharmaceuticals, Inc.

2. Receivables Purchase Agreement, dated June 30 2021, by and between Vital Pharmaceuticals, Inc. and The Huntington National Bank.

3. Amended and Restated Revolving Credit and Term Loan Agreement, dated as of August 14, 2020 (as amended and otherwise modified from time to time prior to the Petition Date), among, *inter alios*, the Vital Pharmaceuticals Inc., the guarantors party thereto, the lenders party thereto and Truist Bank (and its successors) in its capacity as administrative agent thereunder (the "Truist Agreement").

4. Agreement for the Sale of Equipment, dated September 2021, by and between Vital Pharmaceuticals, Inc. and Graphic Packaging International, LLC.

5. J.B. Hunt Transport, Inc. (no written agreement).

6. General Terms and Conditions, dated November 7, 2019, by and between Vital Pharmaceuticals, Inc. and Total Quality Logistics, LLC TQL.

7. Co-Packing Agreement, dated July 25, 2017, by and between Refresco Beverages US Inc. and Vital Pharmaceuticals, Inc., d/b/a VPX Sports.

8. Ardagh Metal Beverages USA, Inc. (no written agreement).

9. All exclusive distributor agreements and alcohol hard seltzer distribution agreements.

(a)(v)

1. Exclusive Distribution Agreement, dated March 1, 2021, by and between Vital Pharmaceuticals, Inc. and Jack Hilliard Distributing Co., Inc., as amended by the Amendment dated March 12, 2021, the Amendment dated April 28, 2021, the Amendment dated August 19, 2021 and further amended by the Amendment dated January 6, 2022.

2. Asset Sales Agreement, dated September 7, 2022, by and between Vital Pharmaceuticals, Inc. and Jack Hilliard Distributing.

3. Exclusive Distribution Agreement, dated January 18, 2021, by and between Vital Pharmaceuticals, Inc. and Glazer's Beer and Beverage of Texas, LLC, as amended by that certain Agreement, dated February 12, 2021, that certain Agreement, dated December 16, 2021, that certain Agreement dated June 10, 2022, that certain Agreement dated July 29, 2022, that certain Agreement dated August 24, 2022, and that certain Agreement dated October 20, 2022, each by and between Vital Pharmaceuticals, Inc. and Glazer's Beer and Beverage of Texas, LLC.

4. Vendor Master Agreement, dated March 26, 2021, by and between Vital Pharmaceuticals, Inc. and Sheetz, Inc.

5. Deferred Bottle Deposit Payment Agreement, dated March 1, 2023, by and between Vital Pharmaceuticals, Inc. and Performance Food Group, Inc., d/b/a Vistar.

6. Foodservice Products Supplier Agreement, dated July 19, 2019, by and between Vital Pharmaceuticals, Inc. and Performance Food Group, Inc.

7. Foodservice Products Supplier Agreement, dated March 1, 2001, by and between Vital Pharmaceuticals, Inc. and Performance Food Group, Inc.

8. Marketing Agreement, dated January 3, 2023, by and between Vital Pharmaceuticals, Inc., d/b/a Bang Energy and Performance Food Group, Inc., d/b/a Vistar.

9. Vitamin Shoppe Purchase Agreement, dated March 1, 2011, by and between Vital Pharmaceuticals, Inc. and Vitamin Shoppe Industries Inc., as amended by the Freight Collect Addendum to Supply Agreement, dated September 12, 2013, by and between Vital Pharmaceuticals, Inc. and Vitamin Shoppe Industries Inc.

10. Client Services Agreement, dated December 7, 2022, by and between Vital Pharmaceuticals, Inc., d/b/a Bang Energy and AMZ Atlas, LLC, as amended by Amendment No. 1, dated April 1, 2023, by and between Vital Pharmaceuticals, Inc., d/b/a Bang Energy and AMZ Atlas, LLC.

11. Exclusive Distribution Agreement, dated January 19, 2021, by and between Vital Pharmaceuticals, Inc. and Silver Eagle Distributors Houston, LLC.

12. Exclusive Distribution Agreement, dated July 21, 2022, by and between Vital Pharmaceuticals, Inc. and Pure Beverages, as amended by the Amendment dated October 14, 2022, by and between Vital Pharmaceuticals, Inc. and Pure Beverages.

13. Exclusive Distribution Agreement, dated August 12, 2022, by and between Vital Pharmaceuticals, Inc. and Hensley & Company, as further amended by the First Addendum, dated August 18, 2022, by and between Vital Pharmaceuticals, Inc. and Hensley & Company.

14. Distributor Agreement, dated August 7, 2018, by and between Vital Pharmaceuticals, Inc. and WDI, LLC d/b/a Wisconsin Distributors.

15. Exclusive Distribution Agreement, dated July 17, 2022, by and between Vital Pharmaceuticals, Inc. and Dayton Heidelberg Distributing Co., LLC.

16. Exclusive Distribution Agreement, dated August 30, 2022, by and between Vital Pharmaceuticals, Inc. and Polar Beverages Co. Inc.

17. Distributor Agreement, dated October 4, 2018, by and between Vital Pharmaceuticals, Inc. and Metro Beverage of Philadelphia, Inc., as amended by that certain Agreement, dated November 8, 2022, by and between Vital Pharmaceuticals, Inc. and Metro Beverage of Philadelphia, Inc. and further amended by that certain Agreement, dated January 10, 2023, by and between Vital Pharmaceuticals, Inc. and Metro Beverage of Philadelphia, Inc.

18. Distribution Agreement, dated September 30, 2022, by and between Vital Pharmaceuticals, Inc. and The Odom Corporation.

19. Distributor Agreement, dated May 23, 2007, by and between Vital Pharmaceuticals, Inc. d/b/a VPX Sports and Intrastate Distributing.

(a)(vi)

1. Container Supply Agreement, dated May 28, 2019, by and between Vital Pharmaceuticals, Inc. and Crown Cork & Seal USA, Inc., as amended by the First Amendment, dated February 1, 2021, by and between Vital Pharmaceuticals, Inc. and Crown Cork & Seal USA, Inc.

2. Non-Disclosure Agreement, dated December 13, 2018, by and between Vital Pharmaceuticals, Inc. and Crown Cork & Seal USA, Inc.

3. Critical Vendor Agreement, dated March 29, 2023, by and between Vital Pharmaceuticals, Inc. and Graphic Packaging International.

4. Priority-1, Inc. (no written agreements)

5. Direct Connect Logistics, Inc. (no written agreements)

6. Administrative Services Agreement, dated January 1, 2020, by and between Vital Pharmaceuticals, Inc. and United Healthcare Services, Inc., as amended by the Financial Renewal and Terms Amendment, dated January 1, 2023, by and between Vital Pharmaceuticals, Inc. and United Healthcare Services, Inc.

7. Co-Packing Agreement, dated November 12, 2012, by and between Vital Pharmaceuticals, Inc. and Cott Beverages Inc.

8. Reporting and Payment Agreement, dated January 1, 2015, by and between Vital Pharmaceuticals, Inc. and Cott Beverages Inc.

9. Letter of Intent, dated February 23, 2018, by and between Vital Pharmaceuticals, Inc. and Cott Beverages Inc.

32

10. There is no active agreement with Refresco.

11. Customer Application, dated November 7, 2019, by and between Vital Pharmaceuticals, Inc. and Total Quality Logistics, LLC.

12. Trinity Logistics Inc. – Pre Petition (no written agreements)

13. Confidential and Non-Disclosure Agreement, dated December 1, 2020, by and between Vital Pharmaceuticals, Inc. and J.B. Hunt Transport, Inc.

14. Co-Packing Agreement, dated January 30, 2019, by and between Vital Pharmaceuticals, Inc. and Varni Brothers Corporation, as amended by the Addendum dated July 18, 2022.

15. Confidential and Non-Disclosure Agreement, dated August 23, 2018, by and between Vital Pharmaceuticals, Inc. and Varni Brothers Corporation.

16. Floor Stock Agreement, dated December 7, 2021, by and between Vital Pharmaceuticals, Inc. and WILD Flavors, Inc.

17. Confidentiality Agreement, dated July 28, 2020, by and between Vital Pharmaceuticals, Inc., WILD Flavors, Inc. and Berner Food & Beverages LLC.

18. Logistics Services Guide Terms and Conditions, dated August 18, 2017, by and between Vital Pharmaceuticals, Inc. and England Logistics, Inc., as amended by the Rider dated February 21, 2022

19. Glen Raven Logistics Inc. (no written agreement)

20. RXO Capacity Solutions, LLC (no written agreement)

21. First Insurance Funding (no written agreement)

22. Cargo Waiver of Liability and Indemnification Agreement, dated July 19, 2019, by and between Vital Pharmaceuticals, Inc. and C.H. Robinson Worldwide, Inc.

23. International Letter Agreement, dated October 23, 2017, by and between Vital Pharmaceuticals, Inc. and Fona International Inc.

24. Mutual Confidentiality Agreement, dated February 12, 2019, by and between Vital Pharmaceuticals, Inc. and Fona International Inc.

25. Rebate Agreement, dated July 1, 2018, by and between Vital Pharmaceuticals, Inc. and Fona International Inc.

26. FDI Trading Agreement, dated July 18, 2018, by and between Vital Pharmaceuticals, Inc. and 7-Eleven, Inc.

27. Insurance and Indemnity Agreement, dated July 31, 2018, by and between Vital Pharmaceuticals, Inc. and 7-Eleven, Inc.

28. Hire Agreement, dated March 22, 2019, by and between Vital Pharmaceuticals, Inc. and CHEP USA, as amended by the Amendment to the Hire Agreement, dated May 1, 2021.

29. Industrial Lease, dated December 31, 2021, by and between Vital Pharmaceuticals, Inc. and EVOX FL Pembroke 20351 LLC. Vital Pharmaceuticals, Inc. exited this lease in May 2023 and the lease will be rejected in the Bankruptcy Case.

(a)(vii)

Section 5.10(a)(vi) of this Disclosure Schedule is incorporated by reference herein.

## Section 5.11
## Intellectual Property

(a)

1. From time to time, the Selling Entities receive in the Ordinary Course of Business cease and desist letters, administrative proceedings and actions related to the Seller IP, and the Selling Entities use commercially reasonable efforts to diligently review each such matter and take appropriate action.

2. See table below:

| Jurisdiction | Matter Title | Proceeding Number | Filing Date | Plaintiffs | Defendants | Trademarks |
|---|---|---|---|---|---|---|
| United States (USPTO) | HUBLOT SA, Genève v. Elite IP Holdings, LLC | 91274147 | 01/25/2022 | HUBLOT SA, Genève | Elite IP Holdings, LLC | ⊘ BRINGING THE BANG |
| United States (USPTO) | Guess? IP Holder L.P., Guess?, Inc. v. JHO Intellectual Property Holdings, LLC | 91254243 | 02/20/2020 | Guess? IP Holder L.P. and Guess?, Inc. | JHO Intellectual Property Holdings, LLC | ⊘ GUESS |

3. See Schedule 5.11(a) attached.

(a)(i)

In the event that JHO Intellectual Property Holdings, LLC ("JHO") contributes and transfers all of its right, title and interest in and to all the Seller's IP owned by JHO (the "JHO Transferred IP") to Vital Pharmaceuticals, Inc. prior to the Closing Date pursuant to Section 7.20 of the Agreement, such assignment of the JHO Transferred IP may not be recorded with the United States Patent and Trademark Office, the United States Copyright Office or the corresponding entities or agencies in any foreign countries or multinational authorities (as applicable), or any applicable domain name registrars; therefore, JHO may remain listed as the registered owner of such JHO Transferred IP until such time as a recordation of such assignment is recorded with the applicable entities or agencies.

See Schedule 5.11(a)(i) attached, which includes certain trademarks that have been abandoned or cancelled.

(a)(ii)

Domain Names:

See Schedule 5.11(a)(ii) attached.

(a)(iii)

Social Media Handles:

See Schedule 5.11(a)(iii) attached.

(b)

1. Without limiting Sections 3.1(a) and 7.21 of the Agreement, any Intellectual Property not directly owned by any Selling Entity, including Intellectual Property owned by any Excluded Parties that are not Debtor Entities, and including the Intellectual Property listed on the attached Schedule 5.11(b) (the "Excluded IP"), shall not be transferred to the Buyer in the Transactions.

2. Items 1–4 and 6–8 under "Intercompany License Agreements" of Section 5.20 of this Disclosure Schedule are incorporated by reference herein.

3. Despite the fact that the Seller is the legal and beneficial owner of the BangEnergy.CEO social media accounts on Instagram, Twitter and TikTok, John H. Owoc, in contravention of the Seller's employment policies, refused to hand over the passwords for such social media accounts. The Debtors initiated legal action to regain control of such social media accounts in the adversary proceeding captioned *Vital Pharmaceuticals, Inc. v. Owoc, et al.* (Adv. Proc. Case No. 23-01051 (PDR)). Pursuant to Court order, the Debtors regained control over the social media accounts, and changed the passwords. On June 16, 2023, the Bankruptcy Court issued a *Memorandum Opinion Granting Plaintiffs' Motion for Summary Judgment*. By separate order, the Bankruptcy Court will enter a final judgment in favor of the Debtors, declaring that the rights to the social media accounts are property of the estate and ordering turnover of the accounts to the Debtors. That final judgment, once entered, is subject to appeal. To the extent the Debtors are finally determined to have right, title, and/or interest in such social media accounts, those accounts are part of the Purchased Assets.

4. Elite IP Holdings, LLC merged with and into JHO Intellectual Property Holdings, LLC on May 24, 2022. In certain international jurisdictions, documents to update the name of the owner of the applicable registered Intellectual Property to be in the name of JHO Intellectual Property Holdings, LLC have not been recorded, and thus, Elite IP Holdings, LLC remains listed as the registered owner of such registered Intellectual Property, including as set forth in Schedule 5.11(a)(i).

(d)

1. Certain items of Excluded IP are used in the operation of the Business, and such Excluded IP is not being transferred to the Buyer in the Transactions.

2. Certain items of Excluded IP are similar to items of Intellectual Property set forth on Section 5.11(a) of this Disclosure Schedule.

3. Items 2 and 3 of Section 5.11(a), and item 1 of Section 5.11(e) of this Disclosure Schedule are incorporated by reference herein.

(e)

1. See Schedule 5.11(e) attached.

2. Certain items of Excluded IP are similar to items of Intellectual Property set forth on <u>Section 5.11(a)</u> of this Disclosure Schedule.

3. Item 3 of <u>Section 5.11(b)</u> of this Disclosure Schedule is incorporated by reference herein.

4. Items 22 and 23 of <u>Section 5.4</u> of this Disclosure Schedule are incorporated by reference herein.

5. From time to time, the Selling Entities become aware of third parties infringing, misappropriating, diluting or violating the Seller IP, selling products of the Business through unauthorized channels and selling counterfeit versions of products of the Business, and the Selling Entities use commercially reasonable efforts to promptly and diligently defend the Seller IP and enforce their rights against such third parties in the Ordinary Course of Business, including:

    a. In October 2022, the Selling Entities sent several cease and desist letters to retailers on Amazon that were reselling products of the Business.

    b. The Selling Entities sent several cease and desist letters to gray market resellers of U.S. Bang in foreign jurisdictions, including Canada and the UK.

    c. The Selling Entities have sent several demand letters to Red Bubble regarding their infringement of goods on their website.

    d. In March 2023, the Selling Entities sent a cease and desist letter to SHOC Beverages regarding the infringement of the trademark "SWIRLY POP".

    e. Around October 2022, the Selling Entities sent a cease and desist letter to Bluepeak, an internet service provider that has a similar logo to the trademarks "B" and "BANG".

    f. In November 2022, the Selling Entities sent a cease and desist letter to iilluminaughtii, a YouTube channel that posted two defamatory videos.

    g. In February 2022, the Selling Entities sent a cease and desist letter to Joyburst, a beverage manufacturer that infringed the trademark "FROSÉ ROSÉ".

    h. In November 2022, the Entities sent a cease and desist letter to Provape, a retailer that sold counterfeit Bang vapes.

    i. In August 2022, the Selling Entities sent a cease and desist letter to VPX Performance Sports, a sports training company.

    j. In January 2021, the Selling Entities sent a cease and desist letter to Beersy, a drink koozie manufacturer that used the Selling Entities intellectual property on their products.

    k. In September 2020, the Selling Entities sent a cease and desist letter to Dang Food.

    l. In September 2020, the Selling Entities sent a cease and desist letter to the Higher Life CBD for infringing the Intellectual Property of the Selling Entities canned products.

    m. In July 2020, the Selling Entities sent a cease and desist letter to Kayla Lepota, a German social media influencer who falsely claimed association with the Selling Entities.

n.   In May 2020, the Selling Entities sent four cease and desist letters to vape retailers that were selling PhD products.

o.   In August 2020, the Selling Entities sent a cease and desist letter to Kabang Energy Candy.

p.   In July 2020, the Selling Entities sent a cease and desist letter to Top Item Store who infringed the Selling Entities trademark "BANG" on facemasks.

DOCS_LA:349529.3 57536/00001

**Schedule 5.11**

**Intellectual Property**

(see attached)

**Section 5.11(a)**

| Jurisdiction | Petitioner | Defendant | Proceeding Number | Filing Date | Trademark in issue |
|---|---|---|---|---|---|
| Mainland, China | Shenzhen Readline Biotech Co., Ltd. | JHO Intellectual Property Holdings, LLC | IR 1110628 | 12/22/2021 | REDLINE |
| European Union | DE FILIPPI GIUSEPPE | JHO Intellectual Property Holdings, LLC | TM21881EUWO | 12/3/2021 | WITTY |
| India | Fruit Jump India Pvt. Ltd. | Elite IP Holdings, LLC | 1195035 | 11/15/2022 | JUMP |
| UK | Saleem Ahmed | Elite IP Holdings, LLC | UK00003781862 | 8/11/2022 | SMART SHOT |
| UK | Witty Technologies Ltd | JHO Intellectual Property Holdings, LLC | IR1605785 | 3/31/2022 | WITTY |
| Paraguay | 10230766 Canada Inc. | Vital Pharmaceuticals, Inc. | 99816/2021 | 12/6/2021 | BANG |
| Paraguay | Luisa De Souza Wenzel | JHO Intellectual Property Holdings, LLC | 43076/2021 | 8/2/2021 | B and Device |
| Paraguay | Luisa De Souza Wenzel | Vital Pharmaceuticals, Inc. y JHO Intellectual Property Holdings, LLC | 91362/2018 91361/2018 | 8/2/2021 | BANG y B and Device |
| Venezuela | INTERCONTINENTAL GREAT BRANDS LLC | JHO Intellectual Property Holdings, LLC | 2018-013111 | 12/3/2019 | BANG |
| Venezuela | INTERCONTINENTAL GREAT BRANDS LLC | JHO Intellectual Property Holdings, LLC | 2018-013110 | 12/3/2019 | BANG |
| Honduras | International Great Brands LLC | JHO Intellectual Property Holdings, LLC | 2018-42124 | 7/23/2019 | BANG |

1

| Argentina | HUGO BOSS TRADE MARK MANAGEMENT GMBH & CO. KG | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | 3/4/2022 | 697809 | VOOZ |
|---|---|---|---|---|---|
| Argentina | YABRA, PABLO FRANCO | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | 3/15/2022 | 698214 | VOOZ |
| Argentina | INTERCONTINENTAL GREAT BRANDS LLC | VITAL PHARMACEUTICALS, INC | 2/28/2019 | 664326 | BANG |
| Ecuador | QUIMISER S.A. | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | SENADI-2021-93328 | 3/22/2022 | BLUE RAZZ |
| Ecuador | THE COCA-COLA COMPANY | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | 3/22/2022 | SENADI-2021-93387 | LEMON DROP |
| Ecuador | QUIMISER S.A. | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | 3/22/2022 | SENADI-2021-93436 | STAR BLAST |
| Brazil | YESSINERGY DO BRASIL AGROINDUSTRIAL LTDA | Elite IP Holdings, LLC | 1/6/2023 | protocol 850230006387 | YES |
| Brazil | EUROFARMA LABORATORIOS S.A. | Elite IP Holdings, LLC | 7/22/2022 | protocol 850220317476 | PRIZM |
| Brazil | WF INGREDIENTES DO BRASIL LTDA - EPP | Elite IP Holdings, LLC | 12/3/2021 | protocol 850210374579 | JUMP |

US-DOCS\143035915.2

| Brazil | PLEXUS COMERCIO E LICENCIAMENTO LTDA. | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | 6/18/2021 | Protocol 850210253360 | BANG |
| Brazil | EURIONILDO LEITE DA SILVA MACAWA; SARA GABRIELA DE FREITAS PEREIRA; FRIO SUNDAE INDUSTRIA E COMERCIO DE SORVETES LTDA; PLEXUS COMERCIO E LICENCIAMENTO LTDA. | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | 8/25/2021 | Protocol 850210366269 | BANG |
| Brazil | PLEXUS COMERCIO E LICENCIAMENTO LTDA. | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | 7/8/2022 | Protocol 850220293112 | BANG |
| Brazil | PLEXUS COMERCIO E LICENCIAMENTO LTDA. | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | 3/4/3033 | Protocol 850220090932 | BANG FOODS |
| Brazil | STARTUP BREWING INDÚSTRIA E COMÉRCIO DE BEBIDAS LTDA | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | 5/2/2023 | Protocol 850230198471 | MIAMI UNICORN |
| Bolivia | MARUJA CANQUI ROCHA | JHO Intellectual Property Holdings, LLC | 12/12/2022 | OP-231507 | LEMON DROP |

## Section 5.11(a)(i)

**Seller IP includes the Intellectual Property listed in this Section 5.11(a)(i) and any other Intellectual Property held in the name of any Selling Entity.**

### Seller IP – Patents

| Title | Owner |
|---|---|
| U.S. 8,372,821 "Stable aqueous compositions comprising bioactive creatine species" Issued 2/12/2013 | JHO Intellectual Property Holdings, LLC |
| U.S. 29/776,489 "Shoe" | Elite IP Holdings, LLC |
| U.S. 8,435,963 "WEIGHT LOSS COMPOSITIONS AND USES THEREOF" Issued 5/7/2013 | JHO Intellectual Property Holdings, LLC |
| U.S. 8,445,466 "STABLE AQUEOUS COMPOSITIONS COMPRISING AMIDE-PROTECTED BIOACTIVE CREATINE SPECIES AND USES THEREOF" Issued 5/21/2013 (including Reexamination Application 90/013,933; Reissue Application 16/549,396) | JHO Intellectual Property Holdings, LLC |
| U.S. 8,857,665 "BEVERAGE CONTAINER WITH SECONDARY INTERNAL DISPENSING CHAMBER" Issued 10/14/2014 | JHO Intellectual Property Holdings, LLC |
| U.S. 9,114,150 "Stable aqueous compositions comprising bioactive creatine species" Issued 8/25/2015 | JHO Intellectual Property Holdings, LLC |
| U.S. 9,468,645 "HIGHLY SOLUBLE PURINE BIOACTIVE COMPOUNDS AND COMPOSITIONS THEREOF" Issued 10/18/2016 | JHO Intellectual Property Holdings, LLC |
| U.S. 9,642,825 "BIO-AVAILABLE N-ACETYL CREATINE SPECIES AND COMPOSITIONS THEREOF" Issued 5/9/2017 | JHO Intellectual Property Holdings, LLC |
| U.S. 17/699,947 (2022-0211640) "MEDICINAL COMPOSITIONS OF CANNABINOIDS AND XANTHINES" Filed 3/21/22 Published 7/7/22 | JHO Intellectual Property Holdings, LLC |
| U.S. 63/038,403 (provisional) "Nutritional Supplement Containing L-alpha-Glycerophosphorycholine" Filed 6/12/2020 | JHO Intellectual Property Holdings, LLC |
| U.S. 17/346,621 (2021/0386692) "Nutritional Supplement Containing L-alpha-Glycerophosphorycholine" Filed 6/14/2021 | JHO Intellectual Property Holdings, LLC |
| U.S. 17/380,107 (2023-0044870) "Improved Bottle for Storage of Small Volumes of Carbonated Beverages" Filed 7/20/21 | JHO Intellectual Property Holdings, LLC |
| U.S. 63/271,496 "ELECTROLYTE SPORTS DRINK FORMULATION FOR ENHANCING HYDRATION AND REPLENISHMENT OF NUTRIENTS" Filed 10/25/21 | JHO Intellectual Property Holdings, LLC |

| U.S. 18/049,089 (2023-0128454) "ELECTROLYTE SPORTS DRINK FORMULATION FOR ENHANCING HYDRATION AND REPLENISHMENT OF NUTRIENTS" Filed 10/24/22 | JHO Intellectual Property Holdings, LLC |
|---|---|

US-DOCS\143035915.2

**Section 5.11(a)(i)**
**Seller IP – Copyrights**

| Title | Owner |
|---|---|
| "Human Muscle & Performance Magazine" Registration No. TX0005776013 6/16/2003 | Vital Pharmaceuticals, Inc. |
| "VPX Sports website" Registration No. VAu000567212 6/30/2003 | Vital Pharmaceuticals, Inc. |
| "Fades Expo 2005." Registration No. TX0006072046 11/18/2004 | Vital Pharmaceuticals, Inc. |
| "Human Muscle & Performance Magazine" Registration No. TX0006378074 4/12/2006 | Vital Pharmaceuticals, Inc. |
| "Human Muscle & Performance Magazine" Registration No. TX0006394155 4/12/2006 | Vital Pharmaceuticals, Inc. |
| "Human Performance Magazine" Registration No. TX0006378075 4/12/2006 | Vital Pharmaceuticals, Inc. |
| "Human Performance Magazine" Registration No. TX0006956947 4/28/2008 | Vital Pharmaceuticals, Inc. |
| "Human Performance Magazine" Registration No. TX0006951071 4/28/2008 | Vital Pharmaceuticals, Inc. |
| "ZERO IMPACT DIET" Registration No. TX0007235745 1/22/2009 | Vital Pharmaceuticals, Inc. |
| "NO SHOTGUN advertisement" Registration No. VA0001712555 2/27/2009 | Vital Pharmaceuticals, Inc. |
| "VPX RTD Product Packaging 2009" Registration No. VA0001667613 6/8/2009 | Vital Pharmaceuticals, Inc. |
| "Human Performance Magazine" Registration No. TX0007271936 12/2/2009 | Vital Pharmaceuticals, Inc. |
| "VIVO 360" Registration No. TXu001903863 12/26/2012 | Vital Pharmaceuticals, Inc. |
| "BANG LABEL (STAR BLAST)" Registration No. VAu001183834 9/3/2014 | Vital Pharmaceuticals, Inc. |
| "REDLINE XTREME RACING." VA0001735456 / 2010-08-17 | Vital Pharmaceuticals, Inc. |
| "Redline Xtreme Racing & 15 Other titles" Registration No. V9931D647 12/1/2014 | Vital Pharmaceuticals, Inc. |
| "Redline Xtreme Racing & 15 Other titles" Registration No. V9926D524 7/22/2015 | Vital Pharmaceuticals, Inc. |
| "Meltdown Banner" Registration No. VAu001328722 3/29/2018 | JHO Intellectual Property Holdings, LLC |
| "How Does Creatine Work?" Registration No. PAu003956580 3/21/2019 | JHO Intellectual Property Holdings, LLC |
| "What is Super Creatine" Registration No. PAu003956585 3/21/2019 | JHO Intellectual Property Holdings, LLC |
| "World's First Carbonated Bang Shot!!!" Registration No. PAu003956587 3/21/2019 | JHO Intellectual Property Holdings, LLC |
| "Stoked" Registration No. VAu001361887 6/25/2019 | JHO Intellectual Property Holdings, LLC |
| "Stoked" v2 Registration No. VAu001374098 8/16/2019 | JHO Intellectual Property Holdings, LLC |
| "Stoked Energy" Registration No. VAu001374035 8/16/2019 | JHO Intellectual Property Holdings, LLC |
| "BANG (GUESS)" Registration No. VAu001376813 11/21/2019 | JHO Intellectual Property Holdings, LLC |
| "BANG Military Cans" Registration No. VA0002225934 4/22/2020 | Elite IP Holdings, LLC |
| "Noo Fuzion Cans" Registration No. VA0002225945 4/22/2020 | Elite IP Holdings, LLC |
| "BANG Shot" Registration No. VA0002208774 4/27/2020 | Elite IP Holdings, LLC |
| "Candy Apple Crisp" Registration No. VA0002210864 6/9/2020 | Vital Pharmaceuticals, Inc. |
| "CF Purple Guava Pear" Registration No. VA0002210855 6/9/2020 | Vital Pharmaceuticals, Inc. |
| "Master Blaster" Registration No. VA0002210862 6/9/2020 | Vital Pharmaceuticals, Inc |

6

| | |
|---|---|
| "Master Blaster 2" Registration No. VA0002210853 6/9/2020 | Vital Pharmaceuticals, Inc. |
| "Peach Mango" Registration No. VA0002210856 6/9/2020 | Vital Pharmaceuticals, Inc. |
| "Power Punch" Registration No. VA0002210863  6/9/2020 | Vital Pharmaceuticals, Inc. |
| "Purple Guava Pear" Registration No. VA0002210851 6/9/2020 | Vital Pharmaceuticals, Inc. |
| "Sour Heads" Registration No. VA0002210859 6/9/2020 | Vital Pharmaceuticals, Inc. |
| THE FIXX PINA COLADA 1-9291629381 9/17/2020 | Vital Pharmaceuticals, Inc. |
| THE FIXX PURPLE KIDDLES 1-9291890529 9/17/2020 | Vital Pharmaceuticals, Inc. |
| THE FIXX FROSÉ ROSÉ 1-9291890665 9/17/2020 | Vital Pharmaceuticals, Inc. |
| BANG WYLDIN' WATERMELON 1-10200279441 2/23/21 | Vital Pharmaceuticals, Inc. |
| MELTDOWN cans 1-10473197349 5/17/21 | Vital Pharmaceuticals, Inc. |
| BANG frozen icicles 1-10502909821 | Quash Seltzer, LLC |
| Bang Hard Seltzer v.3 1-10502971381 | Vital Pharmaceuticals, Inc. |
| BANG Keto Coffee 1-10506543781 5/27/21 | Vital Pharmaceuticals, Inc. |
| DELISH STRAWBERRY KISS 1-10551223441 6/10/21 | Quash Seltzer, LLC |
| Copyrights in the Documentary Materials (Unregistered)  - subject to disclosures about the Documentary Materials in Section 5.15 herein | Vital Pharmaceuticals, Inc. |
| Copyrights in the Bang Energy NFTs (Unregistered) - subject to disclosures about the NFTs in Section 5.15 herein | Vital Pharmaceuticals, Inc. |

7

Section 5.11(a)(i)
Seller IP – Trademarks

Seller IP includes filings listed in this Section 5.11(a)(i) and any other filings in name of any Selling Entity filed anywhere in the world.

## U.S. Pending Applications

| Mark | Serial No. | Application Date | Owner |
| --- | --- | --- | --- |
| 420 | 88/291,938 | 2/6/2019 | JHO Intellectual Property Holdings, LLC |
| 420 | 88/292,426 | 2/6/2019 | JHO Intellectual Property Holdings, LLC |
| +ENERGY | 97084366 | 10/20/21 | JHO Intellectual Property Holdings, LLC |
| 1 KETO | 88/778,884 1/30/2020 | 1/30/2020 | JHO Intellectual Property Holdings, LLC |
| 1 KETO (DESIGN) | 88/778,867 | 1/30/2020 | JHO Intellectual Property Holdings, LLC |
| 3 FUEL | 97394046 | 5/4/22 | JHO Intellectual Property Holdings, LLC |
| 4TH FUEL | 88/623,137 | 9/19/2019 | JHO Intellectual Property Holdings, LLC |
| 5TH FUEL | 90232518 | 10/2/2020 | JHO Intellectual Property Holdings, LLC |
| ABLAZE | 88/416,950 | 5/6/2019 | JHO Intellectual Property Holdings, LLC |
| ABLAZE | 88/416,958 | 5/6/2019 | JHO Intellectual Property Holdings, LLC |
| ACE | 88/777,912 | 1/29/2020 | JHO Intellectual Property Holdings, LLC |
| ADARIA | 90746337 | 6/1/21 | JHO Intellectual Property Holdings, LLC |
| AND | 97243709 | 1/28/22 | JHO Intellectual Property Holdings, LLC |
| ANG | 97243728 | 1/28/22 | JHO Intellectual Property Holdings, LLC |
| ANTIVERSE | 97165219 | 12/9/21 | JHO Intellectual Property Holdings, LLC |
| AQUA FUSION | 97252623 | 2/3/22 | JHO Intellectual Property Holdings, LLC |
| AQUA FUZION | 97047651 | 9/27/21 | JHO Intellectual Property Holdings, LLC |
| AQUA-CRINE | 90081524 | 7/29/2020 | JHO Intellectual Property Holdings, LLC |
| ART | 97312823 | 3/15/22 | JHO Intellectual Property Holdings, LLC |
| ASS BLAST | 90115048 | 8/14/2020 | JHO Intellectual Property Holdings, LLC |
| ASS BLAST AND BUTT | 88849254 | 3/26/2020 | JHO Intellectual Property Holdings, LLC |

| B ENERGY | 97241592 | 1/27/22 | JHO Intellectual Property Holdings, LLC |
| B ENERGY logo | 97502985 | 7/14/22 | JHO Intellectual Property Holdings, LLC |
| B logo | 97042137 | 9/23/21 | JHO Intellectual Property Holdings, LLC |
| B logo | 97041874 | 9/23/21 | JHO Intellectual Property Holdings, LLC |
| B logo | 97041856 | 9/23/21 | JHO Intellectual Property Holdings, LLC |
| B logo | 97041902 | 9/23/21 | JHO Intellectual Property Holdings, LLC |
| B logo | 97041932 | 9/23/21 | JHO Intellectual Property Holdings, LLC |
| B logo | 97041959 | 9/23/21 | JHO Intellectual Property Holdings, LLC |
| B logo | 97042060 | 9/23/21 | JHO Intellectual Property Holdings, LLC |
| B logo | 97042076 | 9/23/21 | JHO Intellectual Property Holdings, LLC |
| B logo ENERGY | 97503003 | 7/14/22 | JHO Intellectual Property Holdings, LLC |
| BABY BANG | 97864870 | 3/30/2023 | JHO Intellectual Property Holdings, LLC |
| BANG | 88907227 | 5/8/2020 | JHO Intellectual Property Holdings, LLC |
| BANG | 97042112 | 9/23/21 | JHO Intellectual Property Holdings, LLC |
| BANG | 97042448 | 9/23/21 | JHO Intellectual Property Holdings, LLC |
| BANG | 97062577 | 10/6/21 | JHO Intellectual Property Holdings, LLC |
| BANG | 97042464 | 9/23/21 | JHO Intellectual Property Holdings, LLC |
| BANG | 97042515 | 9/23/21 | JHO Intellectual Property Holdings, LLC |
| BANG | 97400643 | 5/9/22 | JHO Intellectual Property Holdings, LLC |
| BANG BITES | 88947042 | 6/3/2020 | JHO Intellectual Property Holdings, LLC |
| BANG BLADES | 97107194 | 11/3/21 | JHO Intellectual Property Holdings, LLC |
| BANG BOATS | 90249456 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| BANG BROADCASTING | 90251393 | 10/13/2020 | JHO Intellectual Property Holdings, LLC |
| BANG FOODS | 90792359 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| BANG GAMES | 88979315 | 4/6/2020 | JHO Intellectual Property Holdings, LLC |
| BANG GAMES | 97446863 | 6/7/22 | JHO Intellectual Property Holdings, LLC |
| BANG GAMING | 88979316 | 4/6/2020 | JHO Intellectual Property Holdings, LLC |
| BANG GAMING | 97446874 | 6/7/22 | JHO Intellectual Property Holdings, LLC |
| BANG MEDIA | 88724080 | 12/11/2019 | JHO Intellectual Property Holdings, LLC |
| BANG STUDIOS | 90251442 | 10/13/2020 | JHO Intellectual Property Holdings, LLC |
| BANG TELEVISION | 90251421 | 10/13/2020 | JHO Intellectual Property Holdings, LLC |
| BANG ULTRAVERSE | 97370383 | 4/19/22 | JHO Intellectual Property Holdings, LLC |

| | | | |
|---|---|---|---|
| BANG VIDEO | 90251370 | 10/13/2020 | JHO Intellectual Property Holdings, LLC |
| BANGCOIN | 90536751 | 2/19/21 | JHO Intellectual Property Holdings, LLC |
| BANGTV | 90251105 | 10/13/2020 | JHO Intellectual Property Holdings, LLC |
| BE | 97245974 | 1/31/22 | JHO Intellectual Property Holdings, LLC |
| BE | 97246026 | 1/31/22 | JHO Intellectual Property Holdings, LLC |
| BE ENERGY | 97503015 | 7/14/22 | JHO Intellectual Property Holdings, LLC |
| BECAUSE STOKED IS NO JOKE | 88848189 | 3/26/2020 | JHO Intellectual Property Holdings, LLC |
| BIOLIQUID | 88906030 | 5/7/2020 | JHO Intellectual Property Holdings, LLC |
| BLAST GLUTE GAINZ | 88849271 | 3/26/2020 | JHO Intellectual Property Holdings, LLC |
| BLUE RAZZ | 97402756 | 5/10/22 | JHO Intellectual Property Holdings, LLC |
| BRINGING THE BANG | 90696942 | 5/7/2021 | JHO Intellectual Property Holdings, LLC |
| BUN BLASTER | 90025556 | 6/29/2020 | JHO Intellectual Property Holdings, LLC |
| BURST | 97470782 | 6/22/22 | JHO Intellectual Property Holdings, LLC |
| BUTT BLASTER | 90025571 | 6/29/2020 | JHO Intellectual Property Holdings, LLC |
| CARBONX | 88739410 | 12/26/2019 | JHO Intellectual Property Holdings, LLC |
| CATALYST | 97074968 | 10/14/21 | JHO Intellectual Property Holdings, LLC |
| CHERRY BLADE LEMONADE | 97402858 | 5/10/22 | JHO Intellectual Property Holdings, LLC |
| COOLAGEN | 97864890 | 3/30/2023 | JHO Intellectual Property Holdings, LLC |
| CORTEX | 88/778,016 | 1/29/2020 | JHO Intellectual Property Holdings, LLC |
| CORVONA | 88/800,619 | 2/18/2020 | JHO Intellectual Property Holdings, LLC |
| CRAVING CONTROL | 88848172 | 3/26/2020 | JHO Intellectual Property Holdings, LLC |
| CRISP | 90650194 | 4/16/21 | JHO Intellectual Property Holdings, LLC |
| DELISH STRAWBERRY KISS | 90293918 | 11/2/2020 | JHO Intellectual Property Holdings, LLC |
| DELISH STRAWBERRY KISS | 97402797 | 5/10/22 | JHO Intellectual Property Holdings, LLC |
| DESTINY FUEL | 90495109 | 1/28/2021 | JHO Intellectual Property Holdings, LLC |
| DIVERGE | 97329482 | 3/24/22 | JHO Intellectual Property Holdings, LLC |
| DRENCH | 97261075 | 2/10/22 | JHO Intellectual Property Holdings, LLC |
| DRENCH | 97261500 | 2/10/22 | JHO Intellectual Property Holdings, LLC |
| ELECTROLYTE CHARGED | 97254854 | 2/6/22 | JHO Intellectual Property Holdings, LLC |
| ENTOURAGE EFFECT | 88/664,827 | 10/24/2019 | JHO Intellectual Property Holdings, LLC |
| FAT BLAST | 90696757 | 5/7/21 | JHO Intellectual Property Holdings, LLC |

| FEEL THE VIBE OF STOKED INSIDE | 88/809117 | 2/25/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|
| FIXX | 90052850 | 7/14/2020 | JHO Intellectual Property Holdings, LLC |
| FUEL YOUR DESTINY | 97864770 | 3/30/2023 | JHO Intellectual Property Holdings, LLC |
| FUN | 97401105 | 5/9/22 | JHO Intellectual Property Holdings, LLC |
| FUN ENERGY | 97387526 | 4/28/2022 | JHO Intellectual Property Holdings, LLC |
| FUN FUEL | 97457674 | 6/14/22 | JHO Intellectual Property Holdings, LLC |
| GANG | 97446729 | 6/7/22 | JHO Intellectual Property Holdings, LLC |
| GANG | 97568817 | 8/29/22 | JHO Intellectual Property Holdings, LLC |
| GET STOKED | 88848184 | 3/26/2020 | JHO Intellectual Property Holdings, LLC |
| GO HARD OR GO HOME | 90485806 | 1/25/2021 | JHO Intellectual Property Holdings, LLC |
| GUESS | 88657335 | 10/16/19 | JHO Intellectual Property Holdings, LLC |
| H2 FUZION | 88/821,240 | 3/4/2020 | JHO Intellectual Property Holdings, LLC |
| HANG | 97243674 | 1/28/22 | JHO Intellectual Property Holdings, LLC |
| HYDRATION NATION | 97372656 | 4/20/22 | JHO Intellectual Property Holdings, LLC |
| HYDRO FORCE | 88/436,123 | 5/17/2019 | JHO Intellectual Property Holdings, LLC |
| HYDRO FORCE | 88/436,131 | 5/17/2019 | JHO Intellectual Property Holdings, LLC |
| HYDRO FUSION | 88/479,488 | 6/19/2019 | JHO Intellectual Property Holdings, LLC |
| HYDRO FUSION | 88/774,520 | 1/28/2020 | JHO Intellectual Property Holdings, LLC |
| HYDRO FUZION | 90232315 | 10/2/2020 | JHO Intellectual Property Holdings, LLC |
| HYDRO H2 | 88861094 | 4/6/2020 | JHO Intellectual Property Holdings, LLC |
| iBANG | 90696863 | 5/7/2021 | JHO Intellectual Property Holdings, LLC |
| JELLY BEAN | 97307420 | 3/11/2022 | JHO Intellectual Property Holdings, LLC |
| JUMP | 90235792 | 10/5/2020 | JHO Intellectual Property Holdings, LLC |
| JUMP | 90241740 | 10/8/2020 | JHO Intellectual Property Holdings, LLC |
| KIDDLES | 88762338 | 1/16/2020 | JHO Intellectual Property Holdings, LLC |
| KILL SHOT | 88875480 | 4/16/2020 | JHO Intellectual Property Holdings, LLC |
| KRAZY KEY LIME PIE | 90735728 | 5/26/2021 | JHO Intellectual Property Holdings, LLC |
| KYLIE KANDY | 88/762,293 | 1/16/2020 | JHO Intellectual Property Holdings, LLC |
| LET'S GET STOKED | 88/809183 | 2/25/2020 | JHO Intellectual Property Holdings, LLC |
| LOVE | 97549220 | 8/15/2022 | JHO Intellectual Property Holdings, LLC |
| LVF | 88/169,470 | 10/25/2018 | JHO Intellectual Property Holdings, LLC |

11

| MAD MARCH | 90563206 | 3/5/2021 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|
| MANGO BANGO | 88/508,444 | 7/10/2019 | JHO Intellectual Property Holdings, LLC |
| MELTDOWN | 97400680 | 5/9/2022 | JHO Intellectual Property Holdings, LLC |
| MELTDOWN SECRET | 90172562 | 9/10/2020 | JHO Intellectual Property Holdings, LLC |
| MIAMI ENERGY | 97421581 | 5/20/2022 | JHO Intellectual Property Holdings, LLC |
| MIAMI ENERGY | 97474058 | 6/24/2022 | JHO Intellectual Property Holdings, LLC |
| MIAMI ENERGY | 97644729 | 10/24/2022 | JHO Intellectual Property Holdings, LLC |
| MIAMI UNICORN | 97419650 | 5/19/2022 | JHO Intellectual Property Holdings, LLC |
| MIAMI UNICORN | 97466397 | 6/20/2022 | JHO Intellectual Property Holdings, LLC |
| MOIST | 97457708 | 6/14/2022 | JHO Intellectual Property Holdings, LLC |
| MUY LOCO | 97319139 | 3/18/2022 | JHO Intellectual Property Holdings, LLC |
| MY3 | 97391010 | 5/2/2022 | JHO Intellectual Property Holdings, LLC |
| MYBANG | 97241626 | 1/27/2022 | JHO Intellectual Property Holdings, LLC |
| MYMETA | 97391028 | 5/2/2022 | JHO Intellectual Property Holdings, LLC |
| MYOSWELL | 88875486 | 4/16/2020 | JHO Intellectual Property Holdings, LLC |
| MYWEB3 | 97391038 | 5/2/2022 | JHO Intellectual Property Holdings, LLC |
| NFTEA | 97343067 | 4/1/2022 | JHO Intellectual Property Holdings, LLC |
| NICE TEA | 97298780 | 3/7/2022 | JHO Intellectual Property Holdings, LLC |
| NOO | 88954305 | 6/8/2020 | JHO Intellectual Property Holdings, LLC |
| NOO ALERT | 88/787,944 | 2/6/2020 | JHO Intellectual Property Holdings, LLC |
| NOO AMINO | 88/783,037 | 2/3/2020 | JHO Intellectual Property Holdings, LLC |
| NOO BODY | 88/783,145 | 2/3/2020 | JHO Intellectual Property Holdings, LLC |
| NOO BRAIN | 88/762,478 | 1/16/2020 | JHO Intellectual Property Holdings, LLC |
| NOO ENERGY | 88/762,429 | 1/16/2020 | JHO Intellectual Property Holdings, LLC |
| NOO FOCUS | 88/743,425 | 12/31/2019 | JHO Intellectual Property Holdings, LLC |
| NOO FUEL | 88/782,984 | 2/3/2020 | JHO Intellectual Property Holdings, LLC |
| NOO FUZION | 88954313 | 6/8/2020 | JHO Intellectual Property Holdings, LLC |
| NOO MIND | 88/783,175 | 2/3/2020 | JHO Intellectual Property Holdings, LLC |
| NOO NORMAL | 88/783,232 | 2/3/2020 | JHO Intellectual Property Holdings, LLC |
| NOO RX | 88/783,074 | 2/3/2020 | JHO Intellectual Property Holdings, LLC |
| NOO SMART | 88/762,470 | 1/16/2020 | JHO Intellectual Property Holdings, LLC |
| OATEIN | 97365165 | 4/15/2022 | JHO Intellectual Property Holdings, LLC |

| OFFICIAL ENERGY DRINK OF THE METAVERSE | 97390976 | 5/2/2022 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|
| OFFICIAL ENERGY DRINK OF THE ULTRAVERSE | 97390978 | 5/2/2022 | JHO Intellectual Property Holdings, LLC |
| OFFICIAL HYDRATION DRINK OF THE METAVERSE | 97390984 | 5/2/2022 | JHO Intellectual Property Holdings, LLC |
| OFFICIAL SPORTS DRINK OF THE METAVERSE | 97390983 | 5/2/2022 | JHO Intellectual Property Holdings, LLC |
| ORANGE CREAMSICLE | 88,490,119 | 6/26/2019 | JHO Intellectual Property Holdings, LLC |
| OTHERWORDLY | 97549305 | 8/15/2022 | JHO Intellectual Property Holdings, LLC |
| PLANTZ | 90563234 | 3/5/2021 | JHO Intellectual Property Holdings, LLC |
| PLAY | 90711623 | 5/14/2021 | JHO Intellectual Property Holdings, LLC |
| POTENT MIND & MUSCLE FUEL | 88954318 | 6/8/2020 | JHO Intellectual Property Holdings, LLC |
| POWER PUNCH | 97894035 | 4/18/2023 | JHO Intellectual Property Holdings, LLC |
| PROTEIN BITES | 88947051 | 6/3/2020 | JHO Intellectual Property Holdings, LLC |
| PROTOPLASM | 97083152 | 10/20/2021 | JHO Intellectual Property Holdings, LLC |
| PSYCH | 90049720 | 7/13/2020 | JHO Intellectual Property Holdings, LLC |
| PURE BLOOD | 97125761 | 11/15/2021 | JHO Intellectual Property Holdings, LLC |
| PURPLE HAZE | 87/449,856 | 5/15/2017 | JHO Intellectual Property Holdings, LLC |
| PURPLE HAZE | 97402685 | 5/10/2022 | JHO Intellectual Property Holdings, LLC |
| PURPLE KIDDLES | 88874528 | 4/16/2020 | JHO Intellectual Property Holdings, LLC |
| Q | 88956174 | 6/9/2020 | JHO Intellectual Property Holdings, LLC |
| QUASH | 88915063 | 5/13/2020 | JHO Intellectual Property Holdings, LLC |
| QUASH | 97133769 | 11/19/2021 | JHO Intellectual Property Holdings, LLC |
| QUASH | 97400675 | 5/9/2022 | JHO Intellectual Property Holdings, LLC |
| RAGE | 88777894 | 1/29/2020 | JHO Intellectual Property Holdings, LLC |
| RED PILL | 97312833 | 3/15/2022 | JHO Intellectual Property Holdings, LLC |
| REDLINE | 97400648 | 5/9/2022 | JHO Intellectual Property Holdings, LLC |
| REDLINE RAZORS | 97107206 | 11/3/2021 | JHO Intellectual Property Holdings, LLC |
| SAVAGE | 88/416,961 | 5/6/2019 | JHO Intellectual Property Holdings, LLC |
| SECRET | 90172521 | 9/10/2020 | JHO Intellectual Property Holdings, LLC |
| SEÑORITA MARGARITA | 88847976 | 3/25/2020 | JHO Intellectual Property Holdings, LLC |

13

| SHAFT | 88/482,324 | 6/20/2019 | JHO Intellectual Property Holdings, LLC |
| SHIFT | 88/482,320 | 6/20/2019 | JHO Intellectual Property Holdings, LLC |
| SILICON BEACH | 90735888 | 5/26/2021 | JHO Intellectual Property Holdings, LLC |
| SLURRICANE | 97087443 | 10/22/2021 | JHO Intellectual Property Holdings, LLC |
| SLURRICANE | 97087458 | 10/22/2021 | JHO Intellectual Property Holdings, LLC |
| SLURRY | 97294292 | 3/3/2022 | JHO Intellectual Property Holdings, LLC |
| SLURRYCANE | 97087433 | 10/22/2021 | JHO Intellectual Property Holdings, LLC |
| SMART BAR | 88/818231 | 3/3/2020 | JHO Intellectual Property Holdings, LLC |
| SOFT BAR | 88848181 | 3/26/2020 | JHO Intellectual Property Holdings, LLC |
| SPACE FORCE | 88907280 | 5/8/2020 | JHO Intellectual Property Holdings, LLC |
| STAR BLAST | 97402812 | 5/10/2022 | JHO Intellectual Property Holdings, LLC |
| STING | 90080483 | 7/29/2020 | JHO Intellectual Property Holdings, LLC |
| STONED | 88283152 | 1/30/2019 | JHO Intellectual Property Holdings, LLC |
| SUPRAVERSE | 97157320 | 12/6/2021 | JHO Intellectual Property Holdings, LLC |
| SUPRESS | 97257266 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| SWIRLY POP | 97864838 | 3/30/2023 | JHO Intellectual Property Holdings, LLC |
| SYNGEX | 88/406,683 | 4/29/2019 | JHO Intellectual Property Holdings, LLC |
| T@GGED | 97104396 | 11/2/2021 | JHO Intellectual Property Holdings, LLC |
| THE CURE | 90075212 | 7/27/2020 | JHO Intellectual Property Holdings, LLC |
| THE CURE | 90232219 | 10/2/2020 | JHO Intellectual Property Holdings, LLC |
| THE OG OF ENERGY DRINKS! | 90793150 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| THE ULTRAVERSE | 97370333 | 4/19/2022 | JHO Intellectual Property Holdings, LLC |
| THRUST | 97068032 | 10/11/2021 | JHO Intellectual Property Holdings, LLC |
| TRANCE | 88743416 | 12/31/2019 | JHO Intellectual Property Holdings, LLC |
| TRIPLE THREAT TEASE | 88/354,786 | 3/25/2019 | JHO Intellectual Property Holdings, LLC |
| ULTRA | 97371771 | 4/20/2022 | JHO Intellectual Property Holdings, LLC |
| ULTRA COLA | 88/381,863 | 4/11/2019 | JHO Intellectual Property Holdings, LLC |
| ULTRACORN | 97388652 | 4/29/2022 | JHO Intellectual Property Holdings, LLC |
| ULTRACORN | 97405052 | 5/11/2022 | JHO Intellectual Property Holdings, LLC |
| ULTRAFEED | 90763909 | 6/9/2021 | JHO Intellectual Property Holdings, LLC |
| ULTRAGENOMICS | 90635150 | 4/9/2021 | JHO Intellectual Property Holdings, LLC |
| ULTRAV3RSE | 97371801 | 4/20/2022 | JHO Intellectual Property Holdings, LLC |

| | | | |
|---|---|---|---|
| ULTRAVERSE | 97157305 | 12/6/2021 | JHO Intellectual Property Holdings, LLC |
| UNDOPE | 88/282,631 | 1/30/2019 | JHO Intellectual Property Holdings, LLC |
| UNICORN | 97248245 | 2/1/2022 | JHO Intellectual Property Holdings, LLC |
| VIBRATE | 90075309 | 7/27/2020 | JHO Intellectual Property Holdings, LLC |
| VIVACIOUS | 97472074 | 6/23/2022 | JHO Intellectual Property Holdings, LLC |
| VOO | 90042126 | 7/8/2020 | JHO Intellectual Property Holdings, LLC |
| VOOZ | 90041920 | 7/8/2020 | JHO Intellectual Property Holdings, LLC |
| VOOZ | 97250155 | 2/2/2022 | JHO Intellectual Property Holdings, LLC |
| VOOZ | 97056271 | 10/1/2021 | JHO Intellectual Property Holdings, LLC |
| VOOZ | 97400652 | 5/9/2022 | JHO Intellectual Property Holdings, LLC |
| VPX | 97400686 | 5/9/2022 | JHO Intellectual Property Holdings, LLC |
| VR | 90249508 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| WE DON'T MAKE PEOPLE WANT OUR PRODUCTS. WE MAKE PRODUCTS PEOPLE WANT! | 90141627 | 8/27/2020 | JHO Intellectual Property Holdings, LLC |
| WE HAVE ANSWERS TO THINGS THAT ARE NOT YET PROBLEMS! | 90141685 | 8/27/2020 | JHO Intellectual Property Holdings, LLC |
| WE KNOW THE FUTURE BECAUSE WE INVENTED IT! | 90141662 | 8/27/2020 | JHO Intellectual Property Holdings, LLC |
| WETTER THAN WATER | 90232448 | 10/2/2020 | JHO Intellectual Property Holdings, LLC |
| WHOLE LOTTA CHOCOLATA | 90760563 | 6/8/2021 | JHO Intellectual Property Holdings, LLC |
| WHOLE LOTTA PIÑA COLADA | 90735753 | 5/26/2021 | JHO Intellectual Property Holdings, LLC |
| WITTY | 90260429 | 10/16/2020 | JHO Intellectual Property Holdings, LLC |
| WYLDIN' WATERMELON | 90618600 | 4/1/2021 | JHO Intellectual Property Holdings, LLC |
| WYLDIN' WATERMELON | 97402831 | 5/10/2022 | JHO Intellectual Property Holdings, LLC |
| YES | 90649119 | 4/15/2021 | JHO Intellectual Property Holdings, LLC |
|  | 88848166 | 3/26/2020 | JHO Intellectual Property Holdings, LLC |

15

## *U.S. Registrations*

| Mark | Serial No. | Application Date | Reg. No. | Registration Date | Owner |
|------|-----------|------------------|----------|-------------------|-------|
| 7 HOUR | 77/253,692 | 8/13/2007 | 3,451,593 | 07/03/2018 | JHO Intellectual Property Holdings, LLC |
| 7 HOUR | 77/253,661 | 8/13/2007 | 3,451,592 | 07/03/2018 | JHO Intellectual Property Holdings, LLC |
| 7-HOUR ENERGY BOOST | 77/253,717 | 8/13/2007 | 3,451,595 | 06/23/2018 | JHO Intellectual Property Holdings, LLC |
| 7-HOUR ENERGY BOOST | 77/253,707 | 8/13/2007 | 3,451,594 | 06/23/2018 | JHO Intellectual Property Holdings, LLC |
| 8 KETO | 88/779,062 | 1/30/2020 | 7,008,877 | 3/14/2023 | JHO Intellectual Property Holdings, LLC |
| 8 KETO (DESIGN) | 88/779,002 | 1/30/2020 | 6,310,302 | 3/30/2021 | JHO Intellectual Property Holdings, LLC |
| AMINO RUSH | 87/273,565 | 12/19/2016 | 5,373,006 | 01/09/2018 | JHO Intellectual Property Holdings, LLC |
| B logo | 86/646,107 | 5/29/2015 | 4,985,030 | 5/13/2022 | JHO Intellectual Property Holdings, LLC |
| B logo | 86/646,089 | 5/29/2015 | 4,990,091 | 6/28/2021 | JHO Intellectual Property Holdings, LLC |
| B logo | 97042046 | 9/23/2021 | 6,877,414 | 10/18/2022 | JHO Intellectual Property Holdings, LLC |
| B logo | 97042204 | 9/23/2021 | 6,877,429 | 10/18/2022 | JHO Intellectual Property Holdings, LLC |
| B logo | 97042015 | 9/23/2021 | 6,877,411 | 10/18/2022 | JHO Intellectual Property Holdings, LLC |
| BANG | 78/637,163 | 5/25/2005 | 3,545,129 | 02/13/2018 | JHO Intellectual Property Holdings, LLC |
| BANG | 88/377,101 | 4/9/2019 | 5,884,629 | 10/15/2019 | JHO Intellectual Property Holdings, LLC |

16

| BANG | 97042541 | 9/23/2021 | 6,933,743 | 12/27/2022 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|
| BANG (and design) | 87020448 | 4/30/2016 | 5,478,227 | 8/11/2020 | JHO Intellectual Property Holdings, LLC |
| BANG ANTI-DIET | 87/950,511 | 6/6/2018 | 6,866,529 | 10/4/2022 | JHO Intellectual Property Holdings, LLC |
| BANG BOX | 87/746,945 | 1/8/2018 | 5,803,097 | 7/16/2019 | JHO Intellectual Property Holdings, LLC |
| BANG ENERGY | 88844605 | 3/23/2020 | 6,255,043 | 1/26/2021 | JHO Intellectual Property Holdings, LLC |
| BANG KICKS | 88621338 | 9/18/2019 | 6,435,150 | 7/27/2021 | JHO Intellectual Property Holdings, LLC |
| BANG REVOLUTION | 87/410,252 | 4/13/2017 | 5,921,375 | 11/26/2019 | JHO Intellectual Property Holdings, LLC |
| BANG REVOLUTION | 87/410,206 | 4/13/2017 | 6,211,414 | 12/1/2020 | JHO Intellectual Property Holdings, LLC |
| BANGDANNA | 88889191 | 4/27/2020 | 6,268,352 | 2/9/2021 | JHO Intellectual Property Holdings, LLC |
| BANGSTER BERRY | 88/975,401 | 10/25/2018 | 5,808,697 | 7/16/2019 | JHO Intellectual Property Holdings, LLC |
| BIRTHDAY CAKE BASH | 88/433,839 | 5/16/2019 | 6,125,687 | 8/11/2020 | JHO Intellectual Property Holdings, LLC |
| BLACK DIAMOND | 87/219,210 | 10/28/2016 | 5,313,395 | 10/17/2022 | JHO Intellectual Property Holdings, LLC |
| BLAST FAT FAST | 90067846 | 7/22/2020 | 6,251,419 | 1/19/2021 | JHO Intellectual Property Holdings, LLC |
| BLUE RAZZ | 86/089,230 | 10/11/2013 | 4,482,864 | 02/11/2014 | JHO Intellectual Property Holdings, LLC |
| CANDY APPLE CRISP | 88/568,023 | 8/6/2019 | 6,071,424 | 6/2/2020 | JHO Intellectual Property Holdings, LLC |
| CELL SWELL | 88888854 | 4/27/2020 | 6,472,102 | 9/6/2021 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| CELL SWELL | 86/188,968 | 2/10/2014 | 5,492,382 | 06/12/2018 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|
| CHERRY BLAST | 87/761,942 | 1/19/2018 | 5,667,460 | 01/29/2019 | JHO Intellectual Property Holdings, LLC |
| CHERRY BLADE LEMONADE | 97173822 | 12/15/21 | 7,007,964 | 3/21/2023 | JHO Intellectual Property Holdings, LLC |
| CLENBUTRX | 76/550,778 | 10/14/2003 | 2,888,719 | 09/18/2014 | JHO Intellectual Property Holdings, LLC |
| COGNITIVE CANDY | 88980928 | 2/4/2020 | 6,400,047 | 6/29/2021 | JHO Intellectual Property Holdings, LLC |
| COVALEX | 77/910,292 | 1/12/2010 | 4,403,609 | 09/17/2013 | JHO Intellectual Property Holdings, LLC |
| CRAVING CONTROL | 78/496,299 | 10/7/2004 | 3,178,028 | 06/19/2017 | JHO Intellectual Property Holdings, LLC |
| CREMTOR | 85/886,665 | 3/26/2013 | 4,649,827 | 11/30/2020 | JHO Intellectual Property Holdings, LLC |
| ENTOURAGE EFFECT | 88/664,830 | 10/23/2019 | 6,920,480 | 12/13/2022 | JHO Intellectual Property Holdings, LLC |
| FAT BLASTER | 87/2102,43 | 10/20/2016 | 5,722,735 | 4/9/2019 | JHO Intellectual Property Holdings, LLC |
| FAT CATABOLIZER | 88916496 | 5/14/2020 | 6,762,576 | 6/14/2022 | JHO Intellectual Property Holdings, LLC |
| FIBERTEQ | 86/005,087 | 7/9/2013 | 4,528,374 | 05/13/2014 | JHO Intellectual Property Holdings, LLC |
| FREEZE & BURN | 86/231,788 | 3/25/2014 | 4,584,588 | 8/12/2020 | JHO Intellectual Property Holdings, LLC |
| FROSÉ ROSÉ | 88976091 | 10/11/2018 | 5,946,399 | 12/24/2019 | JHO Intellectual Property Holdings, LLC |
| FUEL YOUR DESTINY | 88729967 | 12/17/2019 | 6,091,033 | 6/30/2020 | JHO Intellectual Property Holdings, LLC |
| GIANT GAINS | 85/972,880 | 7/28/2013 | 4,478,072 | 2/6/2023 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| GREATEST OF ALL TIME | 87/288,043 | 1/3/2017 | 6,119,255 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|
| GREATEST OF ALL TIME | 87/288,051 | 1/3/2017 | 6,119,256 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| HYDRATION SENSATION | 90808216 | 7/2/2021 | 6,799,118 | 7/19/2022 | JHO Intellectual Property Holdings, LLC |
| LEMON DROP | 97173840 | 12/15/2021 | 7,007,965 | 3/21/2023 | JHO Intellectual Property Holdings, LLC |
| LIFE LIFT | 86/081,627 | 10/3/2013 | 4,525,830 | 6/14/2019 | JHO Intellectual Property Holdings, LLC |
| LIFE LIFT | 97270443 | 2/16/2022 | 7,005,988 | 3/21/2023 | JHO Intellectual Property Holdings, LLC |
| MANGO BANGO | 88/508,446 | 7/10/2019 | 6,719,300 | 5/3/2022 | JHO Intellectual Property Holdings, LLC |
| MASTER BLASTER | 86/220,121 | 3/13/2014 | 4,946,768 | 4/26/2021 | JHO Intellectual Property Holdings, LLC |
| MEDIVIN | 85/943,813 | 5/28/2013 | 4,455,025 | 01/25/2019 | JHO Intellectual Property Holdings, LLC |
| MELTDOWN | 76/462,868 | 10/30/2002 | 2,740,290 | 7/22/2022 | JHO Intellectual Property Holdings, LLC |
| MELTDOWN | 77/075,668 | 1/4/2007 | 3,603,045 | 5/9/2019 | JHO Intellectual Property Holdings, LLC |
| MELTDOWN | 87/912,647 | 5/8/2018 | 5,814,647 | 7/23/2019 | JHO Intellectual Property Holdings, LLC |
| MELTDOWN FAT ASSAULT | 77/610,117 | 11/7/2008 | 4,376,670 | 2/19/2023 | JHO Intellectual Property Holdings, LLC |
| MIAMI COLA | 88/373,859 | 4/5/2019 | 5,992,851 | 2/18/2020 | JHO Intellectual Property Holdings, LLC |
| MIAMI COLA | 88/373,842 | 4/5/2019 | 5992850 | 2/18/2020 | JHO Intellectual Property Holdings, LLC |

| MPS-X10 | 88/581,095 | 8/15/2019 | 6,348,968 | 5/11/2021 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|
| MTORC1 | 86/321,798 | 6/26/2014 | 4,771,616 | 7/14/2021 | JHO Intellectual Property Holdings, LLC |
| MUSCLE MAYHEM | 86/982,253 | 8/24/2015 | 5,287,197 | 09/12/2017 | JHO Intellectual Property Holdings, LLC |
| MUSCLE PROTEIN SYNTHESIZER | 88/581,099 | 8/15/2019 | 6,241,832 | 1/5/2021 | JHO Intellectual Property Holdings, LLC |
| NITRO JACK | 88354950 | 3/25/2019 | 6,049,087 | 5/5/2020 | JHO Intellectual Property Holdings, LLC |
| NOO | 88/777,404 | 1/29/2020 | 6,880,460 | 10/18/2022 | JHO Intellectual Property Holdings, LLC |
| NOO FUZION | 88/785,478 | 2/5/2020 | 6,202,212 | 11/17/2020 | JHO Intellectual Property Holdings, LLC |
| NOO-FUSION | 88/762,410 | 1/16/2020 | 6,202,151 | 11/17/2020 | JHO Intellectual Property Holdings, LLC |
| PARAXOL | 86/946,943 | 3/21/2016 | 5,365,583 | 12/26/2017 | JHO Intellectual Property Holdings, LLC |
| PEPTIDEX | 86/008,009 | 7/11/2013 | 4,610,965 | 9/18/2020 | JHO Intellectual Property Holdings, LLC |
| POTENT BRAIN & BODY FUEL | 88/546,914 | 7/29/2019 | 6,533,106 | 10/26/2021 | JHO Intellectual Property Holdings, LLC |
| POWER SHOCK AMINO NITRATE | 85/921,822 | 5/2/2013 | 4,554,528 | 6/18/2020 | JHO Intellectual Property Holdings, LLC |
| PRINCESS | 90081439 | 7/29/2020 | 6,669,345 | 3/16/2022 | JHO Intellectual Property Holdings, LLC |
| PRINCESS | 77/951,684 | 3/5/2010 | 4,347,048 | 6/6/2022 | JHO Intellectual Property Holdings, LLC |
| PRISTINE PROTEIN | 77/152,600 | 4/10/2007 | 3,886,584 | 12/2/2020 | JHO Intellectual Property Holdings, LLC |
| PROPLEX | 86/982,403 | 9/17/2015 | 5,242,540 | 7/11/2022 | JHO Intellectual Property Holdings, LLC |

| PROTEIN RUSH | 77/737,252 | 5/14/2019 | 3,871,188 | 01/07/2017 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|
| PROTEIN RUSH | 77/737,270 | 5/14/2019 | 3,877,645 | 11/11/2020 | JHO Intellectual Property Holdings, LLC |
| PURPLE KIDDLES | 88980253 | 4/16/2020 | 6,297,074 | 3/16/2021 | JHO Intellectual Property Holdings, LLC |
| Q QUASH | 88956191 | 6/9/2020 | 6,895,838 | 11/8/2022 | JHO Intellectual Property Holdings, LLC |
| QUASH | 88984191 | 5/13/2020 | 6,768,794 | 6/21/2021 | JHO Intellectual Property Holdings, LLC |
| RADICAL SKADATTLE | 88/777,652 | 1/29/2020 | 6,694,756 | 4/5/2022 | JHO Intellectual Property Holdings, LLC |
| RAINBOW UNICORN | 87/929,880 | 5/21/2018 | 5,705,246 | 03/19/2019 | JHO Intellectual Property Holdings, LLC |
| RAINBOW UNICORN | 88/276,367 | 1/25/2019 | 5,992,410 | 2/18/2020 | JHO Intellectual Property Holdings, LLC |
| RAPID BODY REMODELING | 87/144,953 | 8/19/2016 | 5,444,135 | 04/10/2018 | JHO Intellectual Property Holdings, LLC |
| REDLINE | 78/282,908 | 8/4/2003 | 2,857,015 | 07/03/2014 | JHO Intellectual Property Holdings, LLC |
| REDLINE | 77/161,945 | 4/20/2007 | 3,359,350 | 02/27/2017 | JHO Intellectual Property Holdings, LLC |
| REDLINE PRINCESS | 77/228,585 | 7/12/2007 | 3,442,064 | 06/12/2018 | JHO Intellectual Property Holdings, LLC |
| REDLINE PRINCESS | 77/228,582 | 7/12/2007 | 3,442,063 | 06/20/2018 | JHO Intellectual Property Holdings, LLC |
| REDLINE THE ULTIMATE ENERGY RUSH | 77/832,215 | 9/22/2009 | 4,368,816 | 7/18/2022 | JHO Intellectual Property Holdings, LLC |
| REDLINE ULTRA HARDCORE | 77/862,716 | 11/2/2009 | 3,901,767 | 3/9/2020 | JHO Intellectual Property Holdings, LLC |

| REDLINE XTREME | 77/156,288 | 4/13/2007 | 3,347,898 | 02/09/2017 | JHO Intellectual Property Holdings, LLC |
| REDLINE XTREME | 77/141,099 | 3/27/2007 | 3,347,829 | 01/03/2018 | JHO Intellectual Property Holdings, LLC |
| REDLINE XTREME ULTIMATE ENERGY RUSH | 77/218,261 | 6/28/2007 | 3,460,750 | 07/20/2018 | JHO Intellectual Property Holdings, LLC |
| REIGN | 86/821184 | 11/16/2015 | 5,107,809 | 12/27/2016 | JHO Intellectual Property Holdings, LLC |
| REVOLUTIONARY SUPER CARB MATRIX | 86/045,997 | 8/23/2013 | 4,587,403 | 8/19/2020 | JHO Intellectual Property Holdings, LLC |
| SOFT BAR | 88979916 | 3/26/2020 | 6,330,858 | 4/20/2021 | JHO Intellectual Property Holdings, LLC |
| SOUR HEADS | 86/687,345 | 3/26/2020 | 5,788,029 | 6/25/2019 | JHO Intellectual Property Holdings, LLC |
| SOUR HEADS | 88/480,262 | 6/19/2019 | 5,944,145 | 12/24/2019 | JHO Intellectual Property Holdings, LLC |
| SRO | 85/966,760 | 6/21/2013 | 4,536,197 | 5/27/2020 | JHO Intellectual Property Holdings, LLC |
| STAR BLAST | 86/421,010 | 10/10/2014 | 4,969,593 | 05/31/2016 | JHO Intellectual Property Holdings, LLC |
| STAR BLAST | 88/480,247 | 6/19/2019 | 5,938,023 | 12/17/2019 | JHO Intellectual Property Holdings, LLC |
| STRAIGHT 8 | 87/514,513 | 7/3/2017 | 5,698,191 | 03/12/2019 | JHO Intellectual Property Holdings, LLC |
| STRAIGHT 8 | 87/514,540 | 7/3/2017 | 5,991,562 | 2/18/2020 | JHO Intellectual Property Holdings, LLC |
| STRAWBERRY BLONDE | 88/467,858 | 6/11/2019 | 6,456,287 | 8/17/2021 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| SUCRALEAN | 77/149,604 | 4/5/2007 | 3,481,580 | 08/15/2018 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|
| SUPER CREATINE | 87/270,001 | 12/15/2016 | 5,252,855 | 02/06/2019 | JHO Intellectual Property Holdings, LLC |
| SUPERZINE | 87/021,252 | 5/2/2016 | 5,402,315 | 2/13/2023 | JHO Intellectual Property Holdings, LLC |
| SYNTHESIZE | 78/979,770 | 2/8/2006 | 3,411,037 | 06/19/2018 | JHO Intellectual Property Holdings, LLC |
| THERMIQ | 87/011,174 | 4/22/2016 | 5,201,513 | 5/9/2022 | JHO Intellectual Property Holdings, LLC |
| THINFAT | 76/400,189 | 4/25/2002 | 2,675,001 | 1/14/2022 | JHO Intellectual Property Holdings, LLC |
| TRIPLE TEST | 86/766,836 | 9/24/2015 | 4,951,340 | 5/3/2021 | JHO Intellectual Property Holdings, LLC |
| VOOZ | 90976459 | 7/8/2020 | 6,703,155 | 4/12/2022 | JHO Intellectual Property Holdings, LLC |
| VPX | 86/421,076 | 10/10/2014 | 4,723,850 | 9/1/2020 | JHO Intellectual Property Holdings, LLC |
| VPX and design | 78/257,360 | 6/3/2003 | 2,830,222 | 04/29/2014 | JHO Intellectual Property Holdings, LLC |
| ZERO CARB | 76/378,384 | 3/4/2002 | 2,783,383 | 11/11/2022 | JHO Intellectual Property Holdings, LLC |
| ZERO IMPACT | 87/419,848 | 4/21/2017 | 5,363,494 | 12/27/2022 | JHO Intellectual Property Holdings, LLC |
| ZI | 86/064,178 | 9/13/2013 | 4,660,647 | 12/23/2014 | JHO Intellectual Property Holdings, LLC |

23

## International Filings

| Country | Mark | Filing Date | Serial No. | Reg. No. | Registration Date | Owner |
|---|---|---|---|---|---|---|
| Argentina | B | | | 3983727 | 7/8/2022 | Elite IP Holdings, LLC |
| Australia/MADRID | B | | | 1576550 | | Elite IP Holdings, LLC |
| Australia | B | 9/30/2020 | | 2156838 | 12/31/2020 | Elite IP Holdings, LLC |
| Bahrain/MADRID | B | | | 1576550 | | Elite IP Holdings, LLC |
| Brazil/Madrid | B | | | 1576550 | | Elite IP Holdings, LLC |
| Brazil | B | | 8.5022E+11 | | | Elite IP Holdings, LLC |
| Canada/MADRID | B | | | 1576550 | | Elite IP Holdings, LLC |
| Chile | B | | 1.394.677 | 1363179 | 1/21/2022 | Elite IP Holdings, LLC |
| Colombia/MADRID | B | | | 1576550 | | Elite IP Holdings, LLC |
| Colombia | B | | SD2021/001 6942 | | | Elite IP Holdings, LLC |
| Cyprus/Madrid | B | | | 1576550 | | Elite IP Holdings, LLC |
| EU/Madrid | B | | | 1576550 | | Elite IP Holdings, LLC |
| EU | B | 10/7/2022 | 18773251 | 18773251 | 10/2/2022 | Elite IP Holdings, LLC |
| Iceland/Madrid | B | | | 1576550 | | Elite IP Holdings, LLC |
| India/Madrid | B | | | 1576550 | | Elite IP Holdings, LLC |
| India | B | 10/21/2022 | 5656869 | | | Elite IP Holdings, LLC |
| Iran/Madrid | B | | | 1576550 | | Elite IP Holdings, LLC |
| Israel/Madrid | B | | | 1576550 | | Elite IP Holdings, LLC |
| Malaysia/Madrid | B | | | 1576550 | | Elite IP Holdings, LLC |
| Mexico/Madrid | B | | | 1576550 | | Elite IP Holdings, LLC |
| New Zealand/Madrid | B | | | 1576550 | | Elite IP Holdings, LLC |
| Norway/MADRID | B | | | 1576550 | | Elite IP Holdings, LLC |
| Norway | B | 10/10/2022 | 202213542 | 324182 | 9/22/2021 | Elite IP Holdings, LLC |
| Peru | B | | 884085-2021 | 309941 | 6/4/2021 | Elite IP Holdings, LLC |
| Philippines/MADRID | B | | | 1576550 | | Elite IP Holdings, LLC |
| South Africa | B | | 2021/00110 | | | Elite IP Holdings, LLC |

| Switzerland/Madrid | B | | | 1576550 | | Elite IP Holdings, LLC |
|---|---|---|---|---|---|---|
| Switzerland | B | | 13223/2022 | 788'031 | 10/18/2022 | Elite IP Holdings, LLC |
| Turkey/Madrid | B | | | 1576550 | | Elite IP Holdings, LLC |
| Turkey | B | 12/15/2022 | 2021/031627 | | | Elite IP Holdings, LLC |
| UAE/MADRID | B | | | 1576550 | | Elite IP Holdings, LLC |
| UK/Madrid | B | | | 1576550 | | Elite IP Holdings, LLC |
| Australia/MADRID | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| Argentina | BANG | | 4016550 | | 7/28/2022 | Elite IP Holdings, LLC |
| Bahrain/MADRID | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| Brazil/Madrid | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| Brazil | BANG | | 8.5022E+11 | | | Elite IP Holdings, LLC |
| Canada/MADRID | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| Chile | BANG | | 1.441.955 | | | Elite IP Holdings, LLC |
| Colombia/MADRID | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| Colombia | BANG | | SD2021/002 7504 | | | Elite IP Holdings, LLC |
| Cyprus/Madrid | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| EU/Madrid | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| EU | BANG | 10/7/2022 | 18773252 | 18773252 | 10/21/2022 | Elite IP Holdings, LLC |
| Iceland/MADRID | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| India/MADRID | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| India | BANG | 10/21/2022 | 5656872 | | | Elite IP Holdings, LLC |
| Iran/MADRID | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| Israel/Madrid | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| Malaysia/Madrid | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| Mexico/MADRID | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| New Zealand/MADRID | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| Norway/MADRID | BANG | | 1581900 | 324682 | 12/7/2022 | Elite IP Holdings, LLC |
| Norway | BANG | 10/10/2022 | 202213545 | | 12/7/2022 | Elite IP Holdings, LLC |
| Peru | BANG | | 897890-2021 | 315431 | 9/29/2021 | Elite IP Holdings, LLC |
| Philippines/MADRID | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| South Africa | BANG | 2/2/2021 | 2021/02706 | 2021/02706 | 7/13/2022 | Elite IP Holdings, LLC |

25

| | | | | | | |
|---|---|---|---|---|---|---|
| Switzerland/Madrid | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| Switzerland | BANG | | 13222/2022 | 788049 | 10/18/2022 | Elite IP Holdings, LLC |
| Turkey/Madrid | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| Turkey | BANG | 12/15/2022 | 2021/044273 | | | Elite IP Holdings, LLC |
| UAE/MADRID | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| UK/Madrid | BANG | | 1581900 | | | Elite IP Holdings, LLC |
| Australia/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Bolivia | AQUA FUSION | 7/27/2022 | SM-003486-2022 SM-003487-2022 | | | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Canada/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Chile | AQUA FUSION | 7/6/2022 | 1.509.614 | | | JHO Intellectual Property Holdings, LLC |
| China/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Colombia/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Costa Rica | AQUA FUSION | 7/7/2022 | 2022-5925 | | | JHO Intellectual Property Holdings, LLC |
| Ecuador | AQUA FUSION | 7/12/2022 | SENADI-2022-54660 SENADI-2022-54652 | | | JHO Intellectual Property Holdings, LLC |
| Egypt/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| EU/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Guatemala | AQUA FUSION | 7/6/2022 | 2022-7186 2022-7184 | | | JHO Intellectual Property Holdings, LLC |
| India/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Indonesia/MADRID | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Japan/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Mexico/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| New Zealand/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Norway/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Oman/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Peru | AQUA FUSION | 7/6/2022 | 959108-2022 | | | JHO Intellectual Property Holdings, LLC |
| Philippines/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Republic of Korea/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Russian Federation/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| South Africa | AQUA FUSION | 2/9/2022 | 2022/03767 2022/03768 | | | JHO Intellectual Property Holdings, LLC |
| Taiwan | AQUA FUSION | 2/14/2022 | 111009106 | 2264079 | | JHO Intellectual Property Holdings, LLC |

| Thailand/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| UAE/MADRID | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Viet Nam/Madrid | AQUA FUSION | | | 1651659 | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| Argentina | B | | 3942288 3942289 | | | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| Belarus | B | | | 62270 | | JHO Intellectual Property Holdings, LLC |
| Bolivia | B | 12/29/2021 | SM-006174-2021 SM-006175-2021 | | | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | B | | CA Reg. No. TMA1,145,146 | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| Chile | B | | 1.376.508 | 1.351.435 | 8/6/2021 | JHO Intellectual Property Holdings, LLC |
| Costa Rica | B | 1/3/2022 | 2022-0006 | 306687 | | JHO Intellectual Property Holdings, LLC |
| China | B | | IC 5 - 22289434 IC32 - 22289445 | 22289434 - 05 22289445 - 32 | 1/28/2018 | JHO Intellectual Property Holdings, LLC |

| Colombia/MADRID | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| Ecuador | B | 12/27/2021 | SENADI-2021-93363 SENADI-2021-93358 | SENADI_2022_TI_6444 SENADI_2022_TI_6971 | | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| European Union | B | | 18042336 | 18042336 | 8/21/2018 | JHO Intellectual Property Holdings, LLC |
| Guatemala | B | 12/28/2021 | 2021-13364 2021-13365 | | | JHO Intellectual Property Holdings, LLC |
| Iceland/Madrid | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| India/Madrid | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/Madrid | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/Madrid | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| Kazakhstan | B | | 78206 | 30714 | 12/12/2017 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| Mexico/Madrid | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand/Madrid | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| Paraguay | B | | 45429 / 2021 45427 / 2021 | 552539 552540 | | JHO Intellectual Property Holdings, LLC |

29

| Peru | B | | 864054-2020 | 28192 | 11/27/2022 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Philippines/MADRID | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| Republic of Korea/Madrid | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| Russia | B | | 2016748386 | 634050 | 10/26/2017 | JHO Intellectual Property Holdings, LLC |
| South Africa | B | | 2019/35338 | | | JHO Intellectual Property Holdings, LLC |
| South Africa | B | | 2019/35339 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/Madrid | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/Madrid | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | B | | | 1558135 1558396 | 9/21/2020 | JHO Intellectual Property Holdings, LLC |
| Anguilla | BANG | | 6206 or 99309800 | | | JHO Intellectual Property Holdings, LLC |
| Antigua and Barbuda | BANG | | 190/2018 | | | JHO Intellectual Property Holdings, LLC |
| Argentina | BANG | | 3751095 | 3195824 | 8/18/2021 | Vital Pharmaceuticals, Inc. |
| Argentina | BANG | | 3751097 | | | Vital Pharmaceuticals, Inc. |
| Aruba | BANG | | | 35045 | 2/12/2019 | JHO Intellectual Property Holdings, LLC |
| Australia | BANG | | 1269508 | 978727 | | Vital Pharmaceuticals, Inc. |
| Australia | BANG | | | 1445561 | 8/30/2011 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |

| | | | | | | |
|---|---|---|---|---|---|---|
| Bahamas | BANG | 9/4/2019 | 43892 | | | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| Barbados | BANG | | 81/37433 81/37434 | | | JHO Intellectual Property Holdings, LLC |
| Belarus | BANG | | 2162654 | 62472 | | JHO Intellectual Property Holdings, LLC |
| Belarus | BANG | | | | | JHO Intellectual Property Holdings, LLC |
| Bolivia | BANG | | 4725-2018 4726-2018 | | | JHO Intellectual Property Holdings, LLC |
| Brazil | BANG | | 913551902 | | | Vital Pharmaceuticals, Inc. |
| Brazil | BANG | | 913551945 | | | Vital Pharmaceuticals, Inc. |
| Brazil/Madrid | BANG | 12/15/21 | 1650131 | | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| British Virgin Islands | BANG | | | | | JHO Intellectual Property Holdings, LLC |
| Canada | BANG | | 1407450 | TMA959285 | 1/5/2017 | JHO Intellectual Property Holdings, LLC |
| Cayman Islands | BANG | | T0000807 | T0000807 | | JHO Intellectual Property Holdings, LLC |
| Chile | BANG | | 1.359.972 | | | JHO Intellectual Property Holdings, LLC |
| China | BANG | | IC 5 - 22290512 or 49086503 IC32 - 22290475 or 49078524 | | | JHO Intellectual Property Holdings, LLC |
| China/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |

| Colombia | BANG | | SD20180074111 | 676455 | 4/20/2021 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Colombia/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| Costa Rica | BANG | | 2018-008868 | 290111 | | JHO Intellectual Property Holdings, LLC |
| Ecuador | BANG | | 005: 2018-72241 032: 2018-72242 | 005: SENADI_2020_TI_3688 032: SENADI_2020_TI_4255 | | JHO Intellectual Property Holdings, LLC |
| Egypt | BANG | | | | | JHO Intellectual Property Holdings, LLC |
| European Union | BANG | | 016902157 | 016902157 | 10/10/2017 | JHO Intellectual Property Holdings, LLC |
| European Union/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| European Union | BANG (design) | | | 16902157 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| France | BANG | | 4465658 | | | JHO Intellectual Property Holdings, LLC |
| French Guiana | BANG | | | 18 4 465 658 | | JHO Intellectual Property Holdings, LLC |
| Guatemala | BANG | 12/28/2021 | 2021-13367 2021-13366 | | | JHO Intellectual Property Holdings, LLC |
| Honduras | BANG | | 2018-042123 | | | JHO Intellectual Property Holdings, LLC |
| Honduras | BANG | | 2018-042124 | | | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| India/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| India/MADRID | BANG | | | 1550950 | 8/14/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| Israel/Madrid | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| Jamaica | BANG | | 76596 | | | JHO Intellectual Property Holdings, LLC |
| Japan/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| Kazakhstan | BANG | | 78207 | 12888 | 6/11/2018 | JHO Intellectual Property Holdings, LLC |
| Malaysia | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| Mexico | BANG | | 2063507 | 1933152 | 10/8/2018 | JHO Intellectual Property Holdings, LLC |
| Mexico | BANG | | 955251 | 1154995 | 4/26/2010 | JHO Intellectual Property Holdings, LLC |
| Namibia/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| Nicaragua | BANG | | 2018-003167 | | | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| Oman/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| Panama | BANG | | 268859 268857 | | | JHO Intellectual Property Holdings, LLC |
| Paraguay | BANG | | 91361/2018 | | | Vital Pharmaceuticals, Inc. |

| Paraguay | BANG | | 91362/2018 | | | Vital Pharmaceuticals, Inc. |
|---|---|---|---|---|---|---|
| Peru | BANG | 12/28/2021 | 930189-2021 | | | JHO Intellectual Property Holdings, LLC |
| Peru | BANG | | 758670-2018 | 270627 | 10/12/2018 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| Puerto Rico | BANG | | 231129-05-0 | 224924 | 11/5/2018 | JHO Intellectual Property Holdings, LLC |
| Puerto Rico | BANG | | 231129-32-0 | 224923 | 11/5/2018 | JHO Intellectual Property Holdings, LLC |
| Republic of Korea/Madrid | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| Russia | BANG | | 2016748385 | 642446 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| Russia | BANG | | 2021780266 | | | JHO Intellectual Property Holdings, LLC |
| Singapore/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| Sint Maarten | BANG | | | 15893 | | JHO Intellectual Property Holdings, LLC |
| South Africa | BANG | | 2018/18194 2018/18197 | 2018/18194 2018/18197 | | Vital Pharmaceuticals, Inc. |
| St. Vincent & Grenadines | BANG | | | 184/2018 | | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| Trinidad & Tobago | BANG | | 54833 | 54833 | | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| Turks & Caicos | BANG | | 19547 19548 | | | JHO Intellectual Property Holdings, LLC |

| UAE/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Ukraine/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| United Kingdom/MADRID | BANG | | | 1398832 | 1/22/2018 | JHO Intellectual Property Holdings, LLC |
| Uruguay | BANG | | 498696 | | 2/25/2022 | JHO Intellectual Property Holdings, LLC |
| Venezuela | BANG | | 2018-0013110 2018-0013111 | | | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| Australia | BANG | 9/30/2020 | | 2147503 | 9/30/2020 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| Brazil | BANG | | 8.5022E+11 | | | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| Chile | BANG | | 1397346 | | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| Colombia | BANG | | SD2021/0000970 | | 10/26/2021 | JHO Intellectual Property Holdings, LLC |
| Cyprus/Madrid | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| EU/Madrid | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| EU | BANG | 10/5/2022 | 18772624 | | 10/6/2022 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| India/MADRID | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| India | BANG | 10/21/2022 | 5656870 | | | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| Israel/Madrid | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| New Zealand | BANG | | 1226055 | | | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| Norway | BANG | 10/10/2022 | 202213543 | | 8/20/2021 | JHO Intellectual Property Holdings, LLC |
| Peru | BANG | | 886760-2021 | | | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| South Africa | BANG | | 2020/26421 2020/26422 | | | JHO Intellectual Property Holdings, LLC |

| Switzerland/MADRID | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Switzerland | BANG | | 13221/2022 | 788048 | 10/18/2022 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| Turkey | BANG | 12/15/2022 | 2021/01894 | 2021/01894 | | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | BANG | | 1569375 | | | JHO Intellectual Property Holdings, LLC |
| Argentina | BANG | | 3983726 | | 7/8/2022 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| Australia | BANG | | | 2153304 | 12/31/2020 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | BANG | | | 1573609 | 12/31/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| Brazil | BANG | | 8.5022E+11 | | | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| Chile | BANG | | 1.394.676 | 1363178 | 1/21/2022 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| Colombia | BANG | | SD2021/001 1052 | | | JHO Intellectual Property Holdings, LLC |

37

| Cyprus/Madrid | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| EU/Madrid | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| EU | BANG | 10/5/2022 | 18772625 | | 10/6/2022 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| India/MADRID | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| India | BANG | 10/21/2022 | 5656871 | | | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| Israel/Madrid | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| Norway | BANG | 10/10/2022 | 202213541 | 324680 | 12/7/2022 | JHO Intellectual Property Holdings, LLC |
| Peru | BANG | | 884081-2021 | 311202 | 6/25/2021 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| South Africa | BANG | | 2021/00109 | | | JHO Intellectual Property Holdings, LLC |

| Switzerland/Madrid | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Switzerland | BANG | | 13220/2022 | 788044 | 10/18/2022 | JHO Intellectual Property Holdings, LLC |
| Turkey/Madrid | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| Turkey | BANG | 12/15/2022 | 2021/18999 | | | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | BANG | | | 1573609 | | JHO Intellectual Property Holdings, LLC |
| Argentina | BANGCOIN | | 4006125 4006126 4006127 4006128 | | 10/11/2022 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| Chile | BANGCOIN | | 1432131 | 1.379.284 | 9/5/2022 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| India/MADRID | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Iran/MADRID | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| Israel/Madrid | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| Peru | BANGCOIN | | 894208-2021 | 31301 | 9/17/2021 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| South Africa | BANGCOIN | | 2021/05436 2021/05437 2021/05438 2021/05439 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | BANGCOIN | | 1602027 | | 2/26/2021 | JHO Intellectual Property Holdings, LLC |
| Argentina | BANG BITES | | 3963433 3963434 | 3279059 3279060 | 5/4/2022 | JHO Intellectual Property Holdings, LLC |

| Australia/MADRID | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Bahrain/MADRID | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Chile | BANG BITES | | 1.385.669 | | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Cyprus/Madrid | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/Madrid | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Peru | BANG BITES | | 874257-2020 | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Peru | BANG BITES | 8/1/2022 | 962425/2022 | | | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| South Africa | BANG BITES | | 2020/28662 2020/28663 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | BANG BITES | | 1562101 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Argentina | BANG ENERGY | | 3938408 3938409 | 3308475 3308476` | 7/21/2022 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Bolivia | BANG ENERGY | | SM-004859-2021 | | | JHO Intellectual Property Holdings, LLC |
| Brazil | BANG ENERGY | | 918910455 | | | JHO Intellectual Property Holdings, LLC |
| Brazil | BANG ENERGY | | 918910684 | | | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Canada | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Chile | BANG ENERGY | | 1.374.997 1355710 | | | JHO Intellectual Property Holdings, LLC |

42

| China | BANG ENERGY | | 38913880 | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| China | BANG ENERGY | | 38906990 | | | JHO Intellectual Property Holdings, LLC |
| China | BANG ENERGY | | 49304712 49304715 | | 4/21/2021 | JHO Intellectual Property Holdings, LLC |
| China | BANG ENERGY | | 55122810 55122806 | 55122810 Pending | 9/7/2022 | JHO Intellectual Property Holdings, LLC |
| China | BANG ENERGY | 3/8/2022 | 63103623 63096888 | | | JHO Intellectual Property Holdings, LLC |
| Colombia | BANG ENERGY | | SD2019/010 9274 | | 4/20/2021 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Costa Rica | BANG ENERGY | | 2020-7666 | 294248 | | JHO Intellectual Property Holdings, LLC |
| European Union/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/Madrid | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Namibia/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |

| New Zealand/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Norway/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Peru | BANG ENERGY | | 863164-2020 | 27798 | 9/14/2020 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Singapore | BANG ENERGY | | | 4020191330V | | JHO Intellectual Property Holdings, LLC |
| Singapore/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| South Africa | BANG ENERGY | | 2020/17060 | | | JHO Intellectual Property Holdings, LLC |
| South Africa | BANG ENERGY | | 2020/17061 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Ukraine/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| United Kingdom/MADRID | BANG ENERGY | | | 1529009 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Singapore | BANG ENERGY (Chinese equivalent characters) | | | 40201913301Q | | JHO Intellectual Property Holdings, LLC |
| Argentina | BANG FOODS | | 4072165 4072166 | | | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| | | | | | | |
|---|---|---|---|---|---|---|
| Australia/MADRID | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| Chile | BANG FOODS | | 1.484.215 | | | JHO Intellectual Property Holdings, LLC |
| China/MADRID | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| Israel/Madrid | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| Japan/MADRID | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |

| Norway/MADRID | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Peru | BANG FOODS | | 923458-2021 | | | JHO Intellectual Property Holdings, LLC |
| Republic of Korea/Madrid | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| South Africa | BANG FOODS | | 2021/19658 2021/19659 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/Madrid | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| Turkey/Madrid | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | BANG FOODS | | | 1618646 | 6/24/2021 | JHO Intellectual Property Holdings, LLC |
| Argentina | BANG GAMES | | | 3943653 3943654 3943655 | 12/27/2021 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Chile | BANG GAMES | | 1.376.955 | | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Cyprus/Madrid | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |

| EU/Madrid | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Iceland/MADRID | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/Madrid | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand | BANG GAMES | 5/18/2022 | 1210395 | | | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Peru | BANG GAMES | | 865441-2020 | 31398 | 6/22/2021 | JHO Intellectual Property Holdings, LLC |
| Peru | BANG GAMES | 10/13/2022 | 973221-2022 | | | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| South Africa | BANG GAMES | | 2020/22426 2020/22427 2020/22428 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/Madrid | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/Madrid | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |

47

| | | | | | | |
|---|---|---|---|---|---|---|
| UAE/MADRID | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | BANG GAMES | | | 1555289 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Argentina | BANG GAMING | | | 3943655 3943656 3943657 | 12/27/2021 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Chile | BANG GAMING | | 1.376.958 | | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Cyprus/Madrid | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/Madrid | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |

| | | | | | | |
|---|---|---|---|---|---|---|
| Mexico/MADRID | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand | BANG GAMING | 5/18/2022 | 1210393 | | | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Peru | BANG GAMING | | 865440-2020 | 31000 | 6/22/2021 | JHO Intellectual Property Holdings, LLC |
| Peru | BANG GAMING | 10/13/2022 | 973222-2022 | | | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| South Africa | BANG GAMING | | 2020/22404 2020/22405 2020/22406 | | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | BANG GAMING | | | 1554924 | 8/26/2020 | JHO Intellectual Property Holdings, LLC |
| AIPO | BANG REVOLUTION | | | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Albania/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Algeria/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Anguilla | BANG REVOLUTION | | 6217 or 99309931 | | | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Antigua and Barbuda | BANG REVOLUTION | | | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Antigua and Barbuda/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Argentina | BANG REVOLUTION | | 3751099 | 3027813 | 9/27/2019 | Vital Pharmaceuticals, Inc. |
| Armenia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Aruba | BANG REVOLUTION | | | 35086 | 2/13/2019 | JHO Intellectual Property Holdings, LLC |
| Australia | BANG REVOLUTION | | | | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Azerbaijan/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Bahamas | BANG REVOLUTION | 9/4/2019 | 43896 | | | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Barbados | BANG REVOLUTION | | 81/37432 | | | JHO Intellectual Property Holdings, LLC |
| Belarus/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Benelux/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Bhutan/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Bolivia | BANG REVOLUTION | | 4729-2018 | | | JHO Intellectual Property Holdings, LLC |
| Bonaire Saint Eustatius and Saba/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| | | | | | | |
|---|---|---|---|---|---|---|
| Bosnia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Botswana/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Brazil | BANG REVOLUTION | | 914951548 | 914951548 | 6/11/2019 | Vital Pharmaceuticals, Inc. |
| British Virgin Islands | BANG REVOLUTION | | | | | JHO Intellectual Property Holdings, LLC |
| Brunei/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Cambodia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | BANG REVOLUTION | | | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Cayman Islands | BANG REVOLUTION | | T0000805 | T0000805 | | JHO Intellectual Property Holdings, LLC |
| Chile | BANG REVOLUTION | | 1301335 | 1293787 | 3/25/2019 | JHO Intellectual Property Holdings, LLC |
| China/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Costa Rica | BANG REVOLUTION | | 2018-008867 | | | JHO Intellectual Property Holdings, LLC |
| Croatia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Cuba/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Curacao/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Dominican Republic | BANG REVOLUTION | | | 257586 or 18/44845 | | JHO Intellectual Property Holdings, LLC |

| | | | | | |
|---|---|---|---|---|---|
| Ecuador | BANG REVOLUTION | | 2018-72252 | SENADI-2019-TI-2920 | | JHO Intellectual Property Holdings, LLC |
| Egypt/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| European Union/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| France | BANG REVOLUTION | | 4465620 | | | JHO Intellectual Property Holdings, LLC |
| French Guiana | BANG REVOLUTION | | | 18 4 465 620 | | JHO Intellectual Property Holdings, LLC |
| Gambia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Georgia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Ghana/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Honduras | BANG REVOLUTION | | 2018-042127 | 150555  Tomo 551 Folio 119 | | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| India | BANG REVOLUTION | | 4468353 | | | JHO Intellectual Property Holdings, LLC |
| Indonesia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Jamaica | BANG REVOLUTION | | 76595 | | | JHO Intellectual Property Holdings, LLC |
| Japan/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Kazakhstan/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Kenya/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Kyrgyzstan/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Laos/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Lesotho/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Liberia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Liechtenstein/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Macedonia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Madagascar/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | BANG REVOLUTION | | | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Mexico | BANG REVOLUTION | | 2063515 | 1927761 | 9/24/2018 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Moldova/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Monaco/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Mongolia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Montenegro/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Morocco/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Mozambique/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Namibia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Nicaragua | BANG REVOLUTION | | 2018-003197 | 2020128858 LM | 1/23/2020 | JHO Intellectual Property Holdings, LLC |
| North Korea/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| OAPI (Africa)/Madrid | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Oman/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Panama | BANG REVOLUTION | | 268860-01 | 268860-1 | 9/27/2018 | JHO Intellectual Property Holdings, LLC |
| Paraguay | BANG REVOLUTION | | 91365/2018 | | | Vital Pharmaceuticals, Inc. |
| Peru | BANG REVOLUTION | | 758669-2018 | 269606 | 9/14/2018 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | BANG REVOLUTION | | | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Puerto Rico | BANG REVOLUTION | | 231130-25-0 | 224925 | 11/5/2018 | JHO Intellectual Property Holdings, LLC |
| Russia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Rwanda/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |

| San Marino/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Sao Tome/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Serbia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Sierra Leone/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Singapore/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Sint Maarten/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| South Africa | BANG REVOLUTION | | 2018/18196 | | 11/2/2020 | Vital Pharmaceuticals, Inc. |
| South Korea/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| St. Vincent & Grenadines | BANG REVOLUTION | | | 187/2018 | | JHO Intellectual Property Holdings, LLC |
| Sudan/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Swaziland/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Syria/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Tajikistan/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Thailand/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Trinidad & Tobago | BANG REVOLUTION | | Application No. 54831 | | | JHO Intellectual Property Holdings, LLC |

| Tunisia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Turkey | BANG REVOLUTION | | | | | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Turkmenistan/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Turks & Caicos | BANG REVOLUTION | | | 19549 | | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Ukraine/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| United Kingdom/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Uruguay | BANG REVOLUTION | | 498701 | 498701 | 12/16/2020 | JHO Intellectual Property Holdings, LLC |
| Uzbekistan/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Venezuela | BANG REVOLUTION | | 2018-0013114 | | | JHO Intellectual Property Holdings, LLC |
| Vietnam/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Zambia/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Zimbabwe/MADRID | BANG REVOLUTION | | A0075764 | 1424298 | 5/10/2018 | JHO Intellectual Property Holdings, LLC |
| Dominican Republic | BANG SUPER CREATINE | 4/4/2019 | 18/44841 | | | JHO Intellectual Property Holdings, LLC |
| Peru | BANG SUPER CREATINE | | 846094-2020 | | 11/22/2021 | JHO Intellectual Property Holdings, LLC |

| Mexico | BANG'S | | 489882 | 712818 | 8/29/2001 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Canada | BANGSTER BERRY | 3/30/2022 | 2175919 | | | JHO Intellectual Property Holdings, LLC |
| European Union | BANGSTER BERRY | | 18056476 | 18056476 | 10/3/2019 | JHO Intellectual Property Holdings, LLC |
| UK | BANGSTER BERRY | 4/27/2019 | UK00918056476 | UK00918056476 | 10/3/2019 | JHO Intellectual Property Holdings, LLC |
| International Registration designating AE, AU, BH, BR, CA, CN, CO, EG, EM, GB, ID, IN, JP, KR, MX, MY, NO, NZ, OM, PH, RU, TH VN | BE | | | 1647419 | 1/21/2022 | JHO Intellectual Property Holdings, LLC |
| Canada | BIRTHDAY CAKE BASH | 3/30/2022 | 2175946 | | | JHO Intellectual Property Holdings, LLC |
| Brazil | BLACK PEARL | | 827643047 | 827643047 | 7/25/2017 | Vital Pharmaceuticals, Inc. |
| Canada | BLACK PEARL | | 1266723 | TMA729490 | 11/26/2008 | JHO Intellectual Property Holdings, LLC |
| Mexico | BLACK PEARL | | 730743 | 922859 | | JHO Intellectual Property Holdings, LLC |
| South Africa | BLACK PEARL | | 2005/15409 | 2005/2009 | | JHO Intellectual Property Holdings, LLC |
| Bolivia | BLUE RAZZ | 12/29/2021 | SM-006176-2021 SM-006177-2021 | | | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | BLUE RAZZ | | | 1646784 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| Canada | BLUE RAZZ | 3/30/2022 | 2175949 | | | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Chile | BLUE RAZZ | 12/28/2021 | 1.488.253 | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Colombia/MADRID | BLUE RAZZ | | | 1646784 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| Costa Rica | BLUE RAZZ | 1/3/2022 | 2022-0007 | | | JHO Intellectual Property Holdings, LLC |
| Ecuador | BLUE RAZZ | 12/27/2021 | SENADI-2021-93328 SENADI-2021-93343 | N/A SENADI_2022_TI_6435 | | JHO Intellectual Property Holdings, LLC |
| European Union (EU) | BLUE RAZZ | | | 18063455 | 11/6/2019 | JHO Intellectual Property Holdings, LLC |
| Guatemala | BLUE RAZZ | 12/28/2021 | 2021-13368 2021-13370 | | | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | BLUE RAZZ | | | 1646784 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| Peru | BLUE RAZZ | 12/28/2021 | 930190-2021 | 32849 | 3/2/2022 | JHO Intellectual Property Holdings, LLC |
| UK | BLUE RAZZ | 5/13/2019 | UK00918063455 | UK00918063455 | 11/6/2019 | JHO Intellectual Property Holdings, LLC |
| Bolivia | CANDY APPLE CRISP | 12/29/2021 | SM-006178-2021 SM-006179-2021 | | | JHO Intellectual Property Holdings, LLC |
| Chile | CANDY APPLE CRISP | 12/28/2021 | 1.488.254 | | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | CANDY APPLE CRISP | | | 1644610 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| Costa Rica | CANDY APPLE CRISP | 1/3/2022 | 2022-0008 | | | JHO Intellectual Property Holdings, LLC |
| Ecuador | CANDY APPLE CRISP | | 2021-93350 2021-93353 | SENADI_2022_TI_10841 | | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| | | | | SENADI_2022_TI_10843 | | |
|---|---|---|---|---|---|---|
| Guatemala | CANDY APPLE CRISP | 12/28/2021 | 2021-13369 2021-13371 | | | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | CANDY APPLE CRISP | | | 1644610 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| Peru | CANDY APPLE CRISP | 12/28/2021 | 930191-2021 | | 3/9/2022 | JHO Intellectual Property Holdings, LLC |
| Canada | CEX | | 1266725 | TMA731822 | 1/6/2009 | JHO Intellectual Property Holdings, LLC |
| South Africa | CEX | | 2005/15412 | 2005/15412 | | JHO Intellectual Property Holdings, LLC |
| Bolivia | CHERRY BLADE LEMONADE | 12/29/2021 | SM-006180-2021 SM-006181-2021 | | | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | CHERRY BLADE LEMONADE | | 1645366 | | 12/20/2021 | JHO Intellectual Property Holdings, LLC |
| Canada | CHERRY BLADE LEMONADE | 3/30/2022 | 2175942 | | | JHO Intellectual Property Holdings, LLC |
| Chile | CHERRY BLADE LEMONADE | 12/28/2021 | 1.488.255 | | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | CHERRY BLADE LEMONADE | | 1645366 | | 12/20/2021 | JHO Intellectual Property Holdings, LLC |
| Costa Rica | CHERRY BLADE LEMONADE | 1/3/2022 | 2022-0016 | | | JHO Intellectual Property Holdings, LLC |

59

| Ecuador | CHERRY BLADE LEMONADE | 12/27/2021 | SENADI-2021-93369 SENADI-2021-93367 | SENADI_2022_TI_10845 SENADI_2022_TI_5989 | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| European Union | CHERRY BLADE LEMONADE | | 18056481 4/27/19 | 18056481 | 10/3/2019 | JHO Intellectual Property Holdings, LLC |
| Guatemala | CHERRY BLADE LEMONADE | 12/28/2021 | 2021-13360 2021-13361 | | | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | CHERRY BLADE LEMONADE | | 1645366 | | 12/20/2021 | JHO Intellectual Property Holdings, LLC |
| Peru | CHERRY BLADE LEMONADE | 12/28/2021 | 930192-2021 | 33992 | 6/30/2022 | JHO Intellectual Property Holdings, LLC |
| UK | CHERRY BLADE LEMONADE | 4/27/2019 | UK00918056481 | UK00918056481 | 10/3/2019 | JHO Intellectual Property Holdings, LLC |
| European Union | CHERRY BLAST | | 18056480 | | | JHO Intellectual Property Holdings, LLC |
| Canada | DELISH STRAWBERRY KISS | 5/11/2022 | 2184787 | | | JHO Intellectual Property Holdings, LLC |
| Brazil | DIETEX | | 827643039 | 827643039 | 10/22/2013 | Vital Pharmaceuticals, Inc. |
| Canada | DIETEX | | 1269279 | TMA721463 | 8/20/2008 | JHO Intellectual Property Holdings, LLC |
| South Africa | DIETEX | | 2005/15410 | 2005/15410 | | JHO Intellectual Property Holdings, LLC |
| Argentina | DRENCH | 12/30/2021 | 4085205 | | | JHO Intellectual Property Holdings, LLC |
| Argentina | DRENCH | 7/8/2022 | 4085204 | | | JHO Intellectual Property Holdings, LLC |

| Costa Rica | DRENCH | 7/8/2022 | 2022-0005979 | | | JHO Intellectual Property Holdings, LLC |
| Costa Rica | DRENCH | 7/8/2022 | 2022-0005977 | | | JHO Intellectual Property Holdings, LLC |
| Chile | DRENCH | 12/30/2021 | 1488531 | | | JHO Intellectual Property Holdings, LLC |
| Ecuador | DRENCH | 7/12/2022 | 2022-54595 | | | JHO Intellectual Property Holdings, LLC |
| Ecuador | DRENCH | 7/12/2022 | 2022-54562 | | | JHO Intellectual Property Holdings, LLC |
| Ecuador | DRENCH | 7/12/2022 | 2022-54607 | | | JHO Intellectual Property Holdings, LLC |
| Peru | DRENCH | 7/6/2022 | 2022-959112 | | | JHO Intellectual Property Holdings, LLC |
| Peru | DRENCH | 7/6/2022 | 2022-959109 | | | JHO Intellectual Property Holdings, LLC |
| Peru | DRENCH | 7/6/2022 | 2022-959112C | | | JHO Intellectual Property Holdings, LLC |
| Peru | DRENCH | 7/6/2022 | 2022-959112A | | | JHO Intellectual Property Holdings, LLC |
| Peru | DRENCH | 12/29/2021 | 2021-930414A | T00032949 | 3/10/2022 | JHO Intellectual Property Holdings, LLC |
| Peru | DRENCH | 12/29/2021 | 2021-930414 | T00032949 | 3/10/2022 | JHO Intellectual Property Holdings, LLC |
| Taiwan | DRENCH | 2/25/2022 | 111012374 | | | JHO Intellectual Property Holdings, LLC |
| Taiwan | DRENCH | 2/25/2022 | 111012375 | | | JHO Intellectual Property Holdings, LLC |
| International Registration designating AE, AU, BH, BR, CA, CH, CN, CO, EM, GB, | DRENCH | | | 1624965 | 10/11/2021 | JHO Intellectual Property Holdings, LLC |

| IL, IN, IR, IS, JP, KR, MX, MY, NO, PH, TR | | | | | | |
|---|---|---|---|---|---|---|
| European Union | FROSÉ | | 18056479 | | | JHO Intellectual Property Holdings, LLC |
| Germany | FROSÉ | | 30 2020 012 673.8/05 | 30 2020 012 673 | 11/20/2020 | JHO Intellectual Property Holdings, LLC |
| Spain | FROSÉ | | 4072933 | 4.072.933 | 4/12/2021 | JHO Intellectual Property Holdings, LLC |
| Spain | FROSE | | 4072933 | | 4/12/2021 | JHO Intellectual Property Holdings, LLC |
| UK | FROSÉ | | UK00003499 879 | 3499879 | 11/27/2020 | JHO Intellectual Property Holdings, LLC |
| Canada | FROSE ROSE | 3/30/2022 | 2175934 | | | JHO Intellectual Property Holdings, LLC |
| European Union | FROSÉ ROSÉ | | 18056478 | | | JHO Intellectual Property Holdings, LLC |
| Germany | FROSÉ ROSÉ | | 30 2020 012 670.3/05 | 30 2020 012 670 | 11/20/2020 | JHO Intellectual Property Holdings, LLC |
| Republic of Korea/Madrid | FROSÉ ROSÉ | | | 1655239 | 3/10/2022 | JHO Intellectual Property Holdings, LLC |
| Spain | FROSÉ ROSÉ | | | 4.072.946 | 4/13/2021 | JHO Intellectual Property Holdings, LLC |
| Spain | FROSÉ ROSÉ | | | | 4/13/2021 | JHO Intellectual Property Holdings, LLC |
| UK | FROSÉ ROSÉ | | UK00003499 878 | 3499878 | 11/27/2020 | JHO Intellectual Property Holdings, LLC |
| Canada | FUEL YOUR DESTINY | 3/2/2022 | 2169718 | | | JHO Intellectual Property Holdings, LLC |
| European Union | FUEL YOUR DESTINY | | 18061346 | 18061346 | 9/18/2019 | JHO Intellectual Property Holdings, LLC |
| UK | FUEL YOUR DESTINY | 5/7/2019 | UK00918061 346 | UK009180613 46 | 9/18/2019 | JHO Intellectual Property Holdings, LLC |
| Brazil | GIANT GAINS | | 910868573 | | | Vital Pharmaceuticals, Inc. |

US-DOCS\143035915.2

| Argentina | H2 FUZION | | 3925522<br>3925523 | 3225064<br>3225065 | 11/5/2021 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Australia/MADRID | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Chile | H2 FUZION | | 1368325 | | 4/7/2022 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Cyprus/Madrid | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Norway/MADRID | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Peru | H2 FUZION | | 856803-2020 | 305156 | 2/2/2021 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| South Africa | H2 FUZION | | 2020/19663 2020/19664 | | | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | H2 FUZION | | | 1550117 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Argentina | HARD HEMP | | 3925515 | | 7/7/2022 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
| Chile | HARD HEMP | | 1368326 | 1361534 | 12/29/2021 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
| Cyprus/Madrid | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| EU/Madrid | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Iceland/MADRID | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
| India/MADRID | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
| Peru | HARD HEMP | | 856806-2020 | 303712 | 2/4/2021 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
| South Africa | HARD HEMP | | 2020/19670 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | HARD HEMP | | 1553595 | | | JHO Intellectual Property Holdings, LLC |
| Argentina | JUMP | | 3988365 3988366 | | 7/28/2022 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |

| Bahrain/MADRID | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Brazil/Madrid | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| Brazil | JUMPBAR | 8/22/22 | 927745976 927746115 | | | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| Chile | JUMP | | 1397188 | 1.378.616 | 8/24/2022 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| Cyprus/Madrid | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Peru | JUMP | | 886652-2021 | | 11/18/2021 | JHO Intellectual Property Holdings, LLC |
|------|------|--|-------------|--|-----------|------------------------------------------|
| Philippines/MADRID | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| South Africa | JUMP | | 2021/05094 2021/05095 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | JUMP | | | 1583942 | 2/22/2021 | JHO Intellectual Property Holdings, LLC |
| Argentina | KILL SHOT | | 3947454 947455 | 3244363 3244364 | 12/16/2021 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Chile | KILL SHOT | | 3 1378518 | | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Cyprus/Madrid | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |

| Iceland/MADRID | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| India/MADRID | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Peru | KILL SHOT | | 866790-2020 | 29879 | 5/3/2021 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| South Africa | KILL SHOT | | 2020/23186 2020/23187 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/Madrid | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | KILL SHOT | | 1569898 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Bolivia | LEMON DROP | 12/29/21 | SM-006182-2021 | | | JHO Intellectual Property Holdings, LLC |

68

| | | | SM-006183-2021 | | | |
|---|---|---|---|---|---|---|
| Chile | LEMON DROP | 12/28/21 | 1.488.256 | | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | LEMON DROP | | | 1649687 | 12/20/2021 | JHO Intellectual Property Holdings, LLC |
| Costa Rica | LEMON DROP | 1/3/22 | 2022-0010 | | | JHO Intellectual Property Holdings, LLC |
| Ecuador | LEMON DROP | 12/27/21 | SENADI-2021-93373 SENADI-2021-93387 | SENADI_2022_TI_6635 N/A | | JHO Intellectual Property Holdings, LLC |
| European Union | LEMON DROP | | 18056483 | | | JHO Intellectual Property Holdings, LLC |
| Guatemala | LEMON DROP | 12/28/2021 | 2021-13362 2021-13359 | | | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | LEMON DROP | | | 1649687 | 12/20/2021 | JHO Intellectual Property Holdings, LLC |
| Peru | LEMON DROP | 12/28/2021 | 930193-2021 | | | JHO Intellectual Property Holdings, LLC |
| Bolivia | MANGO BANGO | 12/29/2021 | SM-006184-2021 SM-006185-2021 | | | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | MANGO BANGO | | | 1649685 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| Chile | MANGO BANGO | 12/28/2021 | 1.488.257 | | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | MANGO BANGO | | | 1649685 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| Costa Rica | MANGO BANGO | 1/3/2022 | 2022-0011 | | | JHO Intellectual Property Holdings, LLC |

69

| Ecuador | MANGO BANGO | 12/27/2021 | SENADI-2021-93394 SENADI-2021-93396 | SENADI_2022_TI_10797 SENADI_2022_TI_6437 | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Guatemala | MANGO BANGO | 12/28/2021 | 2021-13363 2021-13348 | | | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | MANGO BANGO | | | 1649685 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| Peru | MANGO BANGO | 12/28/2021 | 930195-2021 | | | JHO Intellectual Property Holdings, LLC |
| Brazil | MASTER BLASTER | | 910868735 | 910868735 | 3/13/2018 | Vital Pharmaceuticals, Inc. |
| China | MASTER BLASTER | | 22290760 | | 1/28/2018 | JHO Intellectual Property Holdings, LLC |
| European Union | MASTER BLASTER | | 18042333 | 18042333 | 8/15/2019 | JHO Intellectual Property Holdings, LLC |
| UK | MASTER BLASTER | 3/28/2019 | UK00918042333 | UK00918042333 | 8/15/2019 | JHO Intellectual Property Holdings, LLC |
| Afghanistan/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| African Intellectual/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Albania/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Algeria/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Anguilla | MELTDOWN | | 6210 or 99309805 | 6210 | | JHO Intellectual Property Holdings, LLC |
| Antigua and Barbuda | MELTDOWN | | | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Antigua and Barbuda/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Argentina | MELTDOWN | | 3751101 | 3027814 | 9/27/2019 | Vital Pharmaceuticals, Inc. |

70

| Argentina | MELTDOWN | | 3751100 | 302781 | 9/27/2019 | Vital Pharmaceuticals, Inc. |
|---|---|---|---|---|---|---|
| Armenia/MADRID | MELTDOWN | | A0077073 | 141706 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Aruba | MELTDOWN | | | 35047 | 2/12/2019 | JHO Intellectual Property Holdings, LLC |
| Australia | MELTDOWN | | 1216214 | 944952 | | Vital Pharmaceuticals, Inc. |
| Australia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Azerbaijan/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Bahamas | MELTDOWN | 9/4/2019 | 43894 | | | JHO Intellectual Property Holdings, LLC |
| Barbados | MELTDOWN | | | | | JHO Intellectual Property Holdings, LLC |
| Belarus/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Benelux/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Bhutan/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Bolivia | MELTDOWN | | 4730-2018 4731-2018 | 184338-C 184686-C | | JHO Intellectual Property Holdings, LLC |
| Bonaire, St. Eustatius/MADRID | MELTDOWN | | A0077073 | 141706 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Bosnia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Botswana/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Brazil | MELTDOWN | | 900516720 | 900516720 | 1/19/2010 | Vital Pharmaceuticals, Inc. |
| Brazil | MELTDOWN | | 914951556 | 914951556 | 6/11/2019 | Vital Pharmaceuticals, Inc. |

71

| | | | | | | |
|---|---|---|---|---|---|---|
| British Virgin Islands | MELTDOWN | | | 7851 | | JHO Intellectual Property Holdings, LLC |
| Brunei/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Cambodia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Canada | MELTDOWN | | 1363683 | TMA750305 | 10/15/2009 | JHO Intellectual Property Holdings, LLC |
| Cayman Islands | MELTDOWN | | T0000804 | T0000804 | | JHO Intellectual Property Holdings, LLC |
| Chile | MELTDOWN | | 1301336 | 1293788 | 3/25/2019 | JHO Intellectual Property Holdings, LLC |
| China/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Costa Rica | MELTDOWN | | 2018-008870 | 279270 | | JHO Intellectual Property Holdings, LLC |
| Croatia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Cuba/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Curacao/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Dominican Republic | MELTDOWN | | 2018-44844 | 255819 | | JHO Intellectual Property Holdings, LLC |
| Ecuador | MELTDOWN | | SENADI-2018-72255 SENADI-2018-72254 | SENADI_2022_TI_193 SENADI-2019-TI-2333 | | JHO Intellectual Property Holdings, LLC |
| Egypt | MELTDOWN | | | | | JHO Intellectual Property Holdings, LLC |

72

| Egypt/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| European Union/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| France | MELTDOWN | | 4465633 | 4465633 | | JHO Intellectual Property Holdings, LLC |
| French Guiana | MELTDOWN | | | | | JHO Intellectual Property Holdings, LLC |
| Gambia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Georgia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Ghana/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Honduras | MELTDOWN | | 2018-042128 | 150623 Tomo 552 Folio 37 | | JHO Intellectual Property Holdings, LLC |
| Honduras | MELTDOWN | | 2018-042129 | 150622 Tomo 552 Folio 36 | | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Indonesia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Jamaica | MELTDOWN | | 76598 | 76598 | | JHO Intellectual Property Holdings, LLC |
| Japan/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Kazakhstan/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Kenya/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Kyrgyzstan/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Laos/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Latvia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Lesotho/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Liberia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Liechtenstein/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Macedonia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Madagascar/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | MELTDOWN | | | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Mexico | MELTDOWN | | 2064389 | 1926467 | 9/21/2018 | JHO Intellectual Property Holdings, LLC |
| Mexico | MELTDOWN | | 882731 | 1034808 | 4/15/2008 | Vital Pharmaceuticals, Inc. |
| Moldova/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Monaco/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Mongolia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Montenegro/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |

| Morocco/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Mozambique/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Namibia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | MELTDOWN | | A0077073 | 1417062 / 1099778 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Nicaragua | MELTDOWN | | 2018-003199 | 2020128980 LM | 2/5/2020 | JHO Intellectual Property Holdings, LLC |
| North Korea/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Oman/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Panama | MELTDOWN | | 268861-01 | 268861-01 | 9/27/2018 | JHO Intellectual Property Holdings, LLC |
| Panama | MELTDOWN | | 268862-01 | | 9/27/2018 | JHO Intellectual Property Holdings, LLC |
| Paraguay | MELTDOWN | | 18/91366 | 494554 | 10/17/2019 | Vital Pharmaceuticals, Inc. |
| Paraguay | MELTDOWN | | 18/91367 | 494555 | 10/17/2019 | Vital Pharmaceuticals, Inc. |
| Peru | MELTDOWN | | 843781-2020 | | 8/27/2020 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Puerto Rico | MELTDOWN | | 231131-05-0 231131-32-0 | 224927 224926 | 11/5/2018 | JHO Intellectual Property Holdings, LLC |
| Romania/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Russia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Rwanda/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| San Marino/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Sao Tome and Principe/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Serbia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Sierra Leone/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Singapore/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Sint Maarten/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| South Africa | MELTDOWN | | 2008/17932 | 2008/17932 | 9/2/2010 | Vital Pharmaceuticals, Inc. |
| South Africa | MELTDOWN | | 2018/1819 | | 8/12/2020 | Vital Pharmaceuticals, Inc. |
| South Korea/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Spain/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| St. Vincent & Grenadines | MELTDOWN | | | 186/2018 | | JHO Intellectual Property Holdings, LLC |
| Sudan/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Swaziland/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Sweden/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | MELTDOWN | | | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Syria/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |

| Tajikistan/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Thailand/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Trinidad & Tobago | MELTDOWN | | | 54835 | | JHO Intellectual Property Holdings, LLC |
| Tunisia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Turkmenistan/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Turks & Caicos | MELTDOWN | | | 19545 19546 | | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | MELTDOWN | | | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Ukraine/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| United Kingdom/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Uruguay | MELTDOWN | | 498705 | 498705 | 12/16/2020 | JHO Intellectual Property Holdings, LLC |
| Uzbekistan/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Venezuela | MELTDOWN | | | 375626-P 376.391-P | 10/23/2019 2/10/2020 | JHO Intellectual Property Holdings, LLC |
| Vietnam/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Zambia/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |
| Zimbabwe/MADRID | MELTDOWN | | A0077073 | 1417062 | 7/11/2018 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| European Union | MIAMI COLA | | 18056477 4/27/19 | 18056477 | 10/3/2019 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| UK | MIAMI COLA | | UK00918056 477 4/27/19 | UK009180564 77 | 10/3/2019 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Bahrain | MIAMI ENERGY | 12/12/2022 11/20/22 | 137677 137480 | | | JHO Intellectual Property Holdings, LLC |
| Bolivia | MIAMI ENERGY | 11/1/2022 | SM-005123-2022 SM-005126-2022 | | | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Chile | MIAMI ENERGY | 10/21/2022 | 1.522.085 | | | JHO Intellectual Property Holdings, LLC |
| China/MADRID | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Costa Rica | MIAMI ENERGY | 10/28/2022 | 2022-9515 | | | JHO Intellectual Property Holdings, LLC |
| Ecuador | MIAMI ENERGY | 10/20/2022 | SENADI-2022-82124 SENADI-2022-82121 | | | JHO Intellectual Property Holdings, LLC |
| Egypt/MADRID | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |

| Guatemala | MIAMI ENERGY | 10/18/2022 | 2022-11308 2022-11317 | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| India/MADRID | MIAMIY ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Indonesia/MADRID | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Japan/MADRID | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Kuwait | MIAMI ENERGY | 11/17/2022 | 2022/011213 2022/011214 | | | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Oman/MADRID | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Peru | MIAMI ENERGY | 10/21/2022 | 974513-2022 | | | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Republic of Korea/Madrid | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Russia/MADRID | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| South Africa | MIAMI ENERGY | 7/6/2022 | 2022/20526 2022/20526 2022/20538 | | | JHO Intellectual Property Holdings, LLC |
| Taiwan | MIAMI ENERGY | 7/11/2022 | 111048882 | | | JHO Intellectual Property Holdings, LLC |

79

| Thailand/MADRID | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| UK/Madrid | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Vietnam/MADRID | MIAMI ENERGY | | 1683558 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Bahrain | MIAMI UNICORN | 12/12/2022 11/17/22 | 137676 137443 | | | JHO Intellectual Property Holdings, LLC |
| Bolivia | MIAMI UNICORN | 11/1/2022 | SM-005125-2022 SM-005124-2022 | | | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Chile | MIAMI UNICORN | 10/21/2022 | 1.521.960 | | | JHO Intellectual Property Holdings, LLC |
| China/MADRID | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Costa Rica | MIAMI UNICORN | 10/28/2022 | 2022-9507 | | | JHO Intellectual Property Holdings, LLC |
| Ecuador | MIAMI UNICORN | 10/20/2022 | SENADI-2022-82125 SENADI-2022-82122 | | | JHO Intellectual Property Holdings, LLC |
| Egypt/MADRID | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |

80

| EU/Madrid | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Guatemala | MIAMI UNICORN | 10/18/2022 | 2022-11310 2022-11309 | | | JHO Intellectual Property Holdings, LLC |
| India/MADRID | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Indonesia/MADRID | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Japan/MADRID | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Kuwait | MIAMI UNICORN | 11/17/2022 | 2022/011215 2022/011212 | | | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Oman/MADRID | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Peru | MIAMI UNICORN | 10/21/2022 | 974512-2022 | | | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRI | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Republic of Korea/Madrid | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Russia/MADRID | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| South Africa | MIAMI UNICORN | 7/6/2022 | 2022/20523 2022/20523 2022/20536 | | | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Taiwan | MIAMI UNICORN | 7/11/2022 | 111048881 | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Thailand/MADRID | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Vietnam/MADRID | MIAMI UNICORN | | | 1684391 | 7/1/2022 | JHO Intellectual Property Holdings, LLC |
| Argentina | MYOSWELL | | 3947452 3947453 | 3244356 3244409 | 12/16/2021 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Chile | MYOSWELL | | 1378516 | | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Cyprus/Madrid | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Israel/MADRID | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Malaysia/Madrid | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Peru | MYOSWELL | | 866791-2020 | 29798 | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| South Africa | MYOSWELL | | 2020/23180 2020/23181 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | MYOSWELL | | 1556322 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Canada | NO SHOTGUN | | 1540367 | TMA868843 | 1/13/2014 | JHO Intellectual Property Holdings, LLC |
| Argentina | NOO | | 3891834 3891835 | 3186883 3186884 | 7/29/2021 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Canada/MADRID | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Chile | NOO | | 1355709 1355706 | 1.341.577 1.341.576 | 4/5/2021 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| European Union/MADRID | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Peru | NOO | | 843786-2020 | 301763 | 10/5/2020 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| South Africa | NOO | 7/14/2020 | 2020/17044 | 2020/17044 | 10/26/2021 | JHO Intellectual Property Holdings, LLC |
| South Africa | NOO | 7/14/2020 | 2020/17045 | 2020/17045 | 10/26/2021 | JHO Intellectual Property Holdings, LLC |

| | | | | | | |
|---|---|---|---|---|---|---|
| Switzerland/MADRID | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | NOO | | 1529039 | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| United Kingdom/MADRID | NOO | | | 1529039 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Argentina | NOO FUSION | | 3899855 3899856 | 3197014 3197015 | 8/20/2021 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Chile | NOO FUSION | | 1362886 1359722 | 1.336.545 1.353.660 | 1/15/2021 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| European Union/MADRID | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |

85

| Mexico/MADRID | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| New Zealand/MADRID | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Peru | NOO FUSION | | 843780-2020 | 00301763 N/A | 10/5/2020 | JHO Intellectual Property Holdings, LLC |
| Peru | NOO FUSION | | 902269-2021 | | 10/5/2020 | JHO Intellectual Property Holdings, LLC |
| Peru | REDLINE NOO FUSION | | 902270-2021 | | | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| South Africa | NOO FUSION | 7/14/2020 | 2020/17046 | | 2/8/2022 | JHO Intellectual Property Holdings, LLC |
| South Africa | NOO FUSION | 7/14/2020 | 2020/17047 | | 10/26/2021 | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | NOO FUSION | | 1529064 | | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| United Kingdom/MADRID | NOO FUSION | | | 1529064 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Canada | POWER RUSH | | 1422137 | TMA789637 | 2/3/2011 | JHO Intellectual Property Holdings, LLC |
| Argentina | PRIZM | | 3952043 3952044 | 3256407 3256408 | 1/26/2022 | JHO Intellectual Property Holdings, LLC |
| Chile | PRIZM | | 1380729 | | | JHO Intellectual Property Holdings, LLC |

86

| Peru | PRIZM | | 918817-2021 | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| South Africa | PRIZM | | 2020/25037 2020/25038 | | | JHO Intellectual Property Holdings, LLC |
| Argentina | PROTEIN BITES | | 3963431 3963432 | 3279058 3279086 | 5/4/2022 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Chile | PROTEIN BITES | | 1.385.667 | | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Cyprus/Madrid | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |

| | | | | | | |
|---|---|---|---|---|---|---|
| Mexico/MADRID | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Peru | PROTEIN BITES | | 874255-2020 | 29880 | 5/3/2021 | JHO Intellectual Property Holdings, LLC |
| South Africa | PROTEIN BITES | | 2020/28644 2020/28645 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | PROTEIN BITES | | 1562092 | | 10/20/2020 | JHO Intellectual Property Holdings, LLC |
| Benelux | PURPLE HAZE | | 1419255 | | | JHO Intellectual Property Holdings, LLC |
| Bolivia | PURPLE HAZE | 12/29/2021 | SM-06186-2021 | | 12/29/2021 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | PURPLE HAZE | | | 1645169 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| Chile | PURPLE HAZE | 12/28/2021 | 1.488.258 | | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | PURPLE HAZE | | | 1645169 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| Costa Rica | PURPLE HAZE | 1/3/2022 | 2022-0012 | | | JHO Intellectual Property Holdings, LLC |

88

| Ecuador | PURPLE HAZE | 12/27/2021 | SENADI-2021-93405 | SENADI_2022_TI_6998 | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| European Union | PURPLE HAZE | | 18056484 | | | JHO Intellectual Property Holdings, LLC |
| Germany | PURPLE HAZE | | 30 2020 012 671.1/05 | 302020012672 | 12/3/2020 | JHO Intellectual Property Holdings, LLC |
| Guatemala | PURPLE HAZE | 12/28/2021 | 2021-13351 | | | JHO Intellectual Property Holdings, LLC |
| Spain | PURPLE HAZE | | 4072967 | 4072967 | 2/23/2021 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | PURPLE HAZE | | | 1645169 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| Peru | PURPLE HAZE | 12/28/2021 | 930201-2021 | | | JHO Intellectual Property Holdings, LLC |
| Peru | PURPLE HAZE | 5/13/2022 | 950330-2022 | | | JHO Intellectual Property Holdings, LLC |
| UK | PURPLE HAZE | | UK00003499870 | Uk00003499870 | 9/18/2020 | JHO Intellectual Property Holdings, LLC |
| Argentina | PURPLE KIDDLES | | 3947456 3947457 | 3244535 3244827 | 12/16/2021 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | PURPLE KIDDLES | | | TMA1157270 | 12/21/2022 | JHO Intellectual Property Holdings, LLC |
| Chile | PURPLE KIDDLES | | | 1378520 | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |

| Country | Mark | | | | | Owner |
|---|---|---|---|---|---|---|
| Cyprus/Madrid | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Peru | PURPLE KIDDLES | | | 866790-2020 | 5/3/2021 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| South Africa | PURPLE KIDDLES | | 2020/23189 2020/23190 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | PURPLE KIDDLES | | 1555766 | | 9/3/2020 | JHO Intellectual Property Holdings, LLC |

90

| UK/Madrid | PURPLE KIDDLES | | | 1555766 | 9/3/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Australia/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| China/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Japan/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |

| Norway/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Philippines/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Republic of Korea/Madrid | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | Q | | | 1620372 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| China | Q | 10/12/2022 | 67689471 | | | JHO Intellectual Property Holdings, LLC |
| Argentina | Q QUASH | | 3963436 3963437 | 3279027 3279061 | 5/4/2022 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
| Chile | Q QUASH | | 1385665 | | 10/24/2022 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
| Cyprus/Madrid | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |

| EU/Madrid | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Iceland/MADRID | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
| India | Q QUASH | 7/19/2022 | 5535444 | | | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
| Peru | Q QUASH | | 874259-2020 | | | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
| South Africa | Q QUASH | | 2020/29346 2020/29347 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |

| UK/Madrid | Q QUASH | | 1563412 | | 10/27/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Australia/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| China/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Japan/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |

| Norway/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Philippines/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Republic of Korea/Madrid | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | QUASH | | 1621018 | | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| Bolivia | QUASH | 4/29/2022 | SM-002023-2022 | | | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| Chile | QUASH | 4/6/2022 | 1499439 | | | JHO Intellectual Property Holdings, LLC |
| China/MADRID | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| China | QUASH | 8/9/2022 | 66469948 | | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |

95

| Costa Rica | QUASH | 4/8/2022 | 2022-3227 | 307496 | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Ecuador | QUASH | 4/7/2022 | SENADI-2022-27823 | SENADI_2022_TI_19220 | | JHO Intellectual Property Holdings, LLC |
| Egypt/MADRID | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| Guatemala | QUASH | 4/7/2022 | 2022-3612 | | | JHO Intellectual Property Holdings, LLC |
| India/MADRID | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| Indonesia/MADRID | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| Japan/MADRID | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| Oman/MADRID | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| Peru | QUASH | 4/12/2022 | 945734-2022 | | 7/21/2022 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| Republic of Korea/Madrid | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |

| | | | | | | |
|---|---|---|---|---|---|---|
| Russian Federation/Madrid | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| South Africa | QUASH | | 2021/37060 | | | JHO Intellectual Property Holdings, LLC |
| Taiwan | QUASH | | 111000951 | | | JHO Intellectual Property Holdings, LLC |
| Thailand/MADRID | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| Viet Nam/Madrid | QUASH | | 1636833 | | 11/30/2021 | JHO Intellectual Property Holdings, LLC |
| Canada | RAINBOW UNICORN | 3/30/2022 | 2175932 | | | JHO Intellectual Property Holdings, LLC |
| European Union | RAINBOW UNICORN | | 18042335 3/28/19 | 18042335 | 8/21/2019 | JHO Intellectual Property Holdings, LLC |
| UK | RAINBOW UNICORN | 3/28/2019 | UK00918042335 | UK00918042335 | 8/21/2019 | JHO Intellectual Property Holdings, LLC |
| Albania/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Anguilla | REDLINE | | 2396560 UK | 4385 | | JHO Intellectual Property Holdings, LLC |
| Antigua and Barbuda | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Argentina | REDLINE | | 3897079 3897080 | 3189021 3189126 | 8/5/2021 | JHO Intellectual Property Holdings, LLC |
| Armenia/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Aruba | REDLINE | | | 26688 | 9/14/2007 | Vital Pharmaceuticals, Inc. |
| Australia | REDLINE | | 1484053 | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |

| Austria | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Azerbaijan | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Bahamas | REDLINE | | | 30690 | | Vital Pharmaceuticals, Inc. |
| Bahrain/MADRID | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Barbados | REDLINE | | | 81/23341 | | Vital Pharmaceuticals, Inc. |
| Belarus | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Bermuda | REDLINE | | | 47051 | | Vital Pharmaceuticals, Inc. |
| Bhutan/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Bonaire, Sint Eustatius and Saba | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Bosnia and Herzegovina | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Botswana/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Brazil | REDLINE | | | 827643063 | | JHO Intellectual Property Holdings, LLC |
| Brazil | REDLINE | | | 829945865 | 12/14/2010 | Vital Pharmaceuticals, Inc. |
| British Virgin Islands | REDLINE | | | 2363 | | JHO Intellectual Property Holdings, LLC |
| Bulgaria | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Cambodia | REDLINE | | | KH/26958/07 | 8/15/2007 | Vital Pharmaceuticals, Inc. |
| Canada | REDLINE | | 1269242 | TMA719071 | 7/23/2008 | JHO Intellectual Property Holdings, LLC |
| Canada | REDLINE | | 1408611 | TMA770054 | 7/18/2010 | JHO Intellectual Property Holdings, LLC |
| Cayman Islands | REDLINE | | T0000109 | | | Vital Pharmaceuticals, Inc. |

| Chile | REDLINE | | 1.359.974 | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| China | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| China | REDLINE | 4/24/2022 | 64197150 | | | JHO Intellectual Property Holdings, LLC |
| Colombia | REDLINE | | 7056990 | 350399 | 3/5/2008 | Vital Pharmaceuticals, Inc. |
| Colombia | REDLINE | | SD2020/003 0823 | 669899 | | JHO Intellectual Property Holdings, LLC |
| Costa Rica | REDLINE | | | 185587 | | JHO Intellectual Property Holdings, LLC |
| Croatia/MADRID | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Curacao | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Czech Republic | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Denmark | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Dominica | REDLINE | | | 19/2007(23965 60) | | JHO Intellectual Property Holdings, LLC |
| Egypt | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| El Salvador | REDLINE | | | 2007066775 | | Vital Pharmaceuticals, Inc. |
| Estonia | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| EU | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Finland | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| France | REDLINE | | 3692413 | 093692413 | | JHO Intellectual Property Holdings, LLC |

99

| | | | | | | |
|---|---|---|---|---|---|---|
| France/Madrid | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Georgia/MADRID | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Germany | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Greece | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Grenada | REDLINE | | | 84/2007 | | JHO Intellectual Property Holdings, LLC |
| Guatemala | REDLINE | 5/22/2007 | 200704087 200704086 | | | Vital Pharmaceuticals, Inc. |
| Haiti | REDLINE | 6/14/2007 | 492C | | | Vital Pharmaceuticals, Inc. |
| Honduras | REDLINE | 5/14/2007 | 7015885 | | | Vital Pharmaceuticals, Inc. |
| Hong Kong | REDLINE | | | 300865026 | 5/4/2007 | Vital Pharmaceuticals, Inc. |
| Hungary | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Indonesia | REDLINE | | | IDM00018721 | 12/17/2008 | Vital Pharmaceuticals, Inc. |
| India | REDLINE | 9/8/2008 | 1732599 | | | Vital Pharmaceuticals, Inc. |
| Iran/MADRID | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Ireland | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Italy | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Jamaica | REDLINE | | | 50396 | | Vital Pharmaceuticals, Inc. |
| Jordan | REDLINE | 5/6/2007 | 93929 | 93929 | 3/13/2008 | Vital Pharmaceuticals, Inc. |
| Kazakhstan | REDLINE | | 78208 | 58061 | 12/12/2007 | JHO Intellectual Property Holdings, LLC |

| Kazakhstan/MADRID | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Kenya/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Kuwait | REDLINE | 5/14/2007 | 85701 | | | Vital Pharmaceuticals, Inc. |
| Kyrgyzstan | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Latvia/MADRID | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Lebanon | REDLINE | | | 113272 | 10/18/2007 | Vital Pharmaceuticals, Inc. |
| Lesotho/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Liechtenstein | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Lithuania | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Macedonia/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Madagascar/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Malaysia | REDLINE | | | 7012783 | 7/4/2007 | Vital Pharmaceuticals, Inc. |
| Mexico | REDLINE | | 730740 | 922858 | 8/14/2008 | Vital Pharmaceuticals, Inc. |
| Mexico | REDLINE | | 955252 | 1059658 | 8/29/2008 | JHO Intellectual Property Holdings, LLC |
| Moldova/MADRID | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Monaco/MADRID | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Mongolia/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Montenegro/MADRID | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Montserrat | REDLINE | | 1781 or 99309274 | 4888 | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Morocco/MADRID | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Mozambique | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Namibia/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Netherland Antilles | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| North Korea/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Oman/MADRID | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Pakistan | REDLINE | 5/15/2007 | 236306 | | | Vital Pharmaceuticals, Inc. |
| Paraguay | REDLINE | | 13930/2017 | 324043/2009 | 9/23/2009 | Vital Pharmaceuticals, Inc. |
| Peru | REDLINE | | 319507-2007 | P00132115 | 10/30/2007 | Vital Pharmaceuticals, Inc. |
| Peru | REDLINE | | 725814-2017 | 260297 | 8/14/2008 | Vital Pharmaceuticals, Inc. |
| Poland | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Portugal | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Qatar | REDLINE | 6/18/2007 | 45209 | | | Vital Pharmaceuticals, Inc. |
| Romania/MADRID | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Russia | REDLINE | | 2016748382 | 658531 | 7/1/2018 | JHO Intellectual Property Holdings, LLC |
| San Marino/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Serbia/MADRID | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Sierra Leone/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Singapore | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Sint Maarten | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Slovakia | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Slovenia | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| South Africa | REDLINE | | 2005/15407 | 2005/15407 | | JHO Intellectual Property Holdings, LLC |
| South Korea/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Spain/MADRID | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| St. Christopher & Nevis | REDLINE | | 2007/0244 or 99230206 | 2007/0244 | | JHO Intellectual Property Holdings, LLC |
| St. Lucia | REDLINE | | | 230/2007 | 1/15/2008 | Vital Pharmaceuticals, Inc. |
| St. Vincent & Grenadines | REDLINE | | | 152/2007 | | Vital Pharmaceuticals, Inc. |
| Sudan | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Sudan | REDLINE | | | 152069 | 4/15/2018 | JHO Intellectual Property Holdings, LLC |
| Swaziland/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Sweden/MADRID | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |

103

| Syria/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Taiwan | REDLINE | | | 1306956 | 4/1/2008 | Vital Pharmaceuticals, Inc. |
| Thailand | REDLINE | | | Kor274927 | 1/20/2008 | Vital Pharmaceuticals, Inc. |
| Trinidad & Tobago | REDLINE | | | 38708 | | Vital Pharmaceuticals, Inc. |
| Turkmenistan/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Turks & Caicos | REDLINE | | | 15021 | | Vital Pharmaceuticals, Inc. |
| UAE | REDLINE | | | 152069 | 4/15/2018 | JHO Intellectual Property Holdings, LLC |
| UK | REDLINE | | | 1110628 | 10/19/2011 | JHO Intellectual Property Holdings, LLC |
| Ukraine/MADRID | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Uruguay | REDLINE | | 380500 | | | JHO Intellectual Property Holdings, LLC |
| Uzbekistan | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Venezuela | REDLINE | | 2018-012460 | P377395 | 11/30/2020 | JHO Intellectual Property Holdings, LLC |
| Viet Nam | REDLINE | | | 1110628 978728 | 10/19/2011 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Yemen | REDLINE | 6/14/2008 | 44154 | | | Vital Pharmaceuticals, Inc. |
| Zambia/MADRID | REDLINE | | | 978728 | 8/14/2008 | JHO Intellectual Property Holdings, LLC |
| Argentina | SHOCKUMENTARY | | 3959864 | 3276898 | 4/28/2022 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Canada/MADRID | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Chile | SHOCKUMENTARY | | 1.383.441 | 1.378.998 | 8/31/2022 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| Cyprus/Madrid | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand | BANG SHOCKUMENTARY | | 1182088 | 1182088 | 12/24/2021 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| Peru | SHOCKUMENTARY | | 872086-2020 | 131666 | 6/25/2021 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| South Africa | SHOCKUMENTARY | | 2020/27707 | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Switzerland/MADRID | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | SHOCKUMENTARY | | | 1561026 | 10/12/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil | SHOTGUN | | 910869006 | 910869006 | 3/13/2018 | Vital Pharmaceuticals, Inc. |
| Canada | SHOTGUN | | 1407449 | TMA856270 | 7/25/2013 | JHO Intellectual Property Holdings, LLC |
| Mexico | SHOTGUN | | 955250 | 1059657 | 8/29/2008 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Argentina | SMART BAR | | 3925514 | 3225058 | 11/5/2021 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Chile | SMART BAR | | 1368322 | 1.358.625 | | JHO Intellectual Property Holdings, LLC |
| Columbia/Madrid | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Cyprus/Madrid | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |

| Iceland/MADRID | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| India/MADRID | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Peru | SMART BAR | | 856804-2020 | | 2/5/2021 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| South Africa | SMART BAR | | 2020/19660 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | SMART BAR | | | 1550059 | 8/4/2020 | JHO Intellectual Property Holdings, LLC |
| Argentina | SMART SHOT | | 3968046 | | 7/1/2022 | JHO Intellectual Property Holdings, LLC |

| Australia/MADRID | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Australia | SMART SHOT | 11/3/2020 | | 2142172 | 11/3/2020 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| Canada | SMART SHOT | | 2201160 | TMA1,153,335 | 11/23/2022 | JHO Intellectual Property Holdings, LLC |
| Chile | SMART SHOT | | 1387275 | | 10/3/2022 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| Cyprus/Madrid | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| EU | SMART SHOT | 4/28/22 | 18693806 | 18693806 | 5/25/2022 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| India/MADRID | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Mexico/MADRID | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| Peru | SMART SHOT | | 876029-2020 | | 2/11/2021 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| Philippines | SMART SHOT | 11/3/2020 | M/0001/0156 4144 | M/0001/01564 144 | | JHO Intellectual Property Holdings, LLC |
| South Africa | SMART SHOT | | 2020/30145 | 2020/30145 | 6/3/2022 | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | SMART SHOT | | 1564144 | | | JHO Intellectual Property Holdings, LLC |
| Bolivia | SOUR HEADS | 12/29/21 | SM-006187-2021 SM-006188-2021 | | | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | SOUR HEADS | | | 1646785 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| Canada | SOUR HEADS | 3/30/22 | 2175923 | | | JHO Intellectual Property Holdings, LLC |
| Chile | SOUR HEADS | 12/28/21 | 1.488.259 | | | JHO Intellectual Property Holdings, LLC |

| Colombia/MADRID | SOUR HEADS | | | 1646785 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Costa Rica | SOUR HEADS | 1/3/22 | 2022-0013 | | | JHO Intellectual Property Holdings, LLC |
| Ecuador | SOUR HEADS | 12/27/21 | SENADI-2021-93418 SENADI-2021-93429 | SENADI_2022_TI_10803 SENADI_2022_TI_6628 | | JHO Intellectual Property Holdings, LLC |
| European Union | SOUR HEADS | | 18056475 4/27/19 | 18056475 | 10/3/2019 | JHO Intellectual Property Holdings, LLC |
| Guatemala | SOUR HEADS | 12/28/21 | 2021-13352 2021-13346 | | | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | SOUR HEADS | | | 1646785 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| Peru | SOUR HEADS | 12/28/21 | 930202-2021 | 32851 | 3/2/2022 | JHO Intellectual Property Holdings, LLC |
| UK | SOUR HEADS | | UK00918056475 4/27/19 | UK0091805647 5 | 10/3/2019 | JHO Intellectual Property Holdings, LLC |
| Bolivia | STAR BLAST | 12/29/21 | SM-006189-2021 SM-006190-2021 | | | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | STAR BLAST | | | 1646783 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| Chile | STAR BLAST | 12/28/2021 | 1.488.260 | | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | STAR BLAST | | | 1646783 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| Costa Rica | STAR BLAST | 1/3/2022 | 2022-0014 | | | JHO Intellectual Property Holdings, LLC |

110

| Ecuador | STAR BLAST | 12/27/2021 | SENADI-2021-93436 SENADI-2021-93442 | N/A SENADI_2022_TI_6630 | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| European Union | STAR BLAST | | 18056482 | | 6/23/2021 | JHO Intellectual Property Holdings, LLC |
| Guatemala | STAR BLAST | 12/28/2021 | 2021-13354 2021-13353 | | | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | STAR BLAST | | | 1646783 | 12/15/2021 | JHO Intellectual Property Holdings, LLC |
| Peru | STAR BLAST | 12/28/2021 | 930199-2021 | 32850 | 3/2/2022 | JHO Intellectual Property Holdings, LLC |
| Anguilla | STOKED | 7/19/2019 | 99310626 | | | JHO Intellectual Property Holdings, LLC |
| Argentina | STOKED | | 3814486 | 3103160 | 4/24/2020 | JHO Intellectual Property Holdings, LLC |
| Argentina | STOKED | | 3814485 | 3072352 | 4/14/2020 | JHO Intellectual Property Holdings, LLC |
| Bahamas | STOKED | | 43854 | | | JHO Intellectual Property Holdings, LLC |
| Brazil | STOKED | | 917683617 | 917683617 | 2/27/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil | STOKED | | 917683668 | 917683668 | 2/27/2020 | JHO Intellectual Property Holdings, LLC |
| British Virgin Islands | STOKED | 1/27/2020 | 8212 | | | JHO Intellectual Property Holdings, LLC |
| Cayman Islands | STOKED | | | T0001123 | | JHO Intellectual Property Holdings, LLC |
| Chile | STOKED | | 1332564 | 1.334.841. | 12/14/2020 | JHO Intellectual Property Holdings, LLC |
| China | STOKED | | 1479909 | | 7/1/2019 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Curacao | STOKED | 7/31/2019 | D190223 | 19397 | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Dominica | STOKED | 7/31/2019 | 99311578 | | | JHO Intellectual Property Holdings, LLC |
| Grenada | STOKED | | 99310909 | 131/2019 | | JHO Intellectual Property Holdings, LLC |
| Hong Kong | STOKED | | 305014467 | 305014467 | 8/2/2019 | JHO Intellectual Property Holdings, LLC |
| Iraq | STOKED | | TEMP No. 7089 | | | JHO Intellectual Property Holdings, LLC |
| Jamaica | STOKED | | 78268 | 78268 | | JHO Intellectual Property Holdings, LLC |
| Jordan | STOKED | | JO/T/1/152494 JO/T/1/152495 | | | JHO Intellectual Property Holdings, LLC |
| Malaysia | STOKED | | TM2019028112 | | 2/8/2019 | JHO Intellectual Property Holdings, LLC |
| Malaysia | STOKED | | TM2019028120 | TM2019028120 | 2/8/2019 | JHO Intellectual Property Holdings, LLC |
| Mexico | STOKED | | 2246009 2246010 | | | JHO Intellectual Property Holdings, LLC |
| Peru | STOKED | | 80397-2019 (filed 6/27/19) | | | JHO Intellectual Property Holdings, LLC |
| Peru | STOKED | | 032-80396-2019 (filed 6/27/19) | 287930 | 7/21/2022 | JHO Intellectual Property Holdings, LLC |
| Puerto Rico | STOKED | | 236425-05-0 236425-32-0 | 222957 222956 | 12/12/2019 | JHO Intellectual Property Holdings, LLC |
| Saint Lucia | STOKED | | TM/2019/000164 | | | JHO Intellectual Property Holdings, LLC |

| St. Lucia | STOKED | | TM/2019/000164 | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| St. Vincent & Grenadines | STOKED | | | 138/2019 | | JHO Intellectual Property Holdings, LLC |
| Swaziland/MADRID | STOKED | | SZ/T/2019/424 | SZ/T/2019/424 | | JHO Intellectual Property Holdings, LLC |
| Taiwan | STOKED | | 108051572 | 2149436 | 6/16/2021 | JHO Intellectual Property Holdings, LLC |
| Trinidad & Tobago | STOKED | | 55626 | 55626 | | JHO Intellectual Property Holdings, LLC |
| Turks & Caicos | STOKED | | 19854 | 19854 | | JHO Intellectual Property Holdings, LLC |
| Turks & Caicos | STOKED | | 19855 | 19855 | | JHO Intellectual Property Holdings, LLC |
| Afghanistan/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| African Intellectual/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Albania/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Algeria/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Antigua and Barbuda/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Armenia/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Aruba | STOKED | | | 35517 | 1/9/2020 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Azerbaijan/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |

113

| Bahrain/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Barbados | STOKED | | 81/38096 81/38095 | | | JHO Intellectual Property Holdings, LLC |
| Belarus/Madrid | STOKED | | | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Belize | STOKED | | | 15496.19 | | JHO Intellectual Property Holdings, LLC |
| Bhutan/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Bonaire Saint Eustatius and Saba/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Bosnia/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Botswana | STOKED | | A0087179 | BW/M/2019/0 0884 | | JHO Intellectual Property Holdings, LLC |
| Brunei/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Cambodia/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| China/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| China | STOKED | | 49101805 49083079 | 49101805 49083079 | 8/14/2021 4/28/2021 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Cuba/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Curacao/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |

| Dominica | STOKED | | | 75/2019 | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Dominican Republic | STOKED | | 2021-19972 | 279372 | | JHO Intellectual Property Holdings, LLC |
| Dominican Republic | STOKED | 12/13/2019 | 19050199 | | | JHO Intellectual Property Holdings, LLC |
| Egypt/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| El Salvador | STOKED | | 2019178795 | 129 | | JHO Intellectual Property Holdings, LLC |
| Ethiopia | STOKED | | f/TM/11296/ 19. | FTM/9051/202 1 | | JHO Intellectual Property Holdings, LLC |
| European Union | STOKED | | 18020646 | 18020646 | 6/18/2019 | JHO Intellectual Property Holdings, LLC |
| Gambia/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Georgia/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Ghana/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Guyana | STOKED | | 29931 | 29931 | | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Indonesia/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |

| Japan/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Kazakhstan/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Kenya/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Kyrgyzstan/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Laos/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Lesotho/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Liberia/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Liechtenstein/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Madagascar/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Malawi/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Mauritius | STOKED | | | 27784/2020 | | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Moldova/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Monaco/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Mongolia/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Montenegro/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |

| Montserrat | STOKED | 8/14/2019 | 99310764 | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Morocco/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Mozambique/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Namibia/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Namibia | STOKED | | | NA/T/2019/754 | | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| North Macedonia/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| OAPI/Madrid | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Oman/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Pakistan | STOKED | | 539455 | 539455 | | JHO Intellectual Property Holdings, LLC |
| Pakistan | STOKED | | 539456 | 539456 | | JHO Intellectual Property Holdings, LLC |
| Panama | STOKED | | | 274969 | 7/15/2019 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Russia/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Rwanda/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |

117

| | | | | | | |
|---|---|---|---|---|---|---|
| Samoa/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| San Marino/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Sao Tome and Principe/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Seychelles | STOKED | | SC/T/2019/631 SC/T/2019/632 | SC/T/2019/631 SC/T/2019/632 | | JHO Intellectual Property Holdings, LLC |
| Serbia/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Sierra Leone/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Singapore/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Sint Maarten/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| South Africa | STOKED | 7/14/2020 | 2020/17048 | 2020/17048 | 10/26/2021 | JHO Intellectual Property Holdings, LLC |
| South Africa | STOKED | 7/14/2020 | 2020/17049 | 2020/17049 | 10/26/2021 | JHO Intellectual Property Holdings, LLC |
| South Korea/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Sudan/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Syria/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Tajikistan/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |

| Thailand/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Tunisia/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Turkmenistan/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| UK | STOKED | 2/8/2019 | UK00918020 646 | UK009180206 46 | 6/18/2019 | JHO Intellectual Property Holdings, LLC |
| Uganda | STOKED | | | 66421 66422 | | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | STOKED | | | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Ukraine/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Uzbekistan/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Venezuela | STOKED | | | P382780 P382781 | 11/16/2021 | JHO Intellectual Property Holdings, LLC |
| Vietnam/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Zambia/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Zimbabwe/MADRID | STOKED | | A0087179 | 1479909 | 7/1/2019 | JHO Intellectual Property Holdings, LLC |
| Argentina | STOKED SELTZER | 12/1/2020 | 3963435 | | | Elite IP Holdings, LLC |
| Chile | STOKED SELTZER | 12/1/2020 | 1385663 | 1363162 | 1/21/2022 | Elite IP Holdings, LLC |

| Peru | STOKED SELTZER | 12/1/2020 | 874258-2020 | 306819 | 3/31/2021 | Elite IP Holdings, LLC |
|---|---|---|---|---|---|---|
| South Africa | STOKED SELTZER | 10/28/2020 | 2020/29344 | | | Elite IP Holdings, LLC |
| Anguilla | SUPER CREATINE | | 6207 or 99309799 | 6207 | | JHO Intellectual Property Holdings, LLC |
| Antigua and Barbuda | SUPER CREATINE | | 191/2018 or 99311785 | | | JHO Intellectual Property Holdings, LLC |
| Argentina | SUPER CREATINE | | 3751096 | 3027811 | 9/27/2019 | Vital Pharmaceuticals, Inc. |
| Argentina | SUPER CREATINE | | 3751098 | | | Vital Pharmaceuticals, Inc. |
| Aruba | SUPER CREATINE | | | 35046 | 2/12/2019 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | SUPER CREATINE | | | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Australia | BANG SUPER CREATINE | | 2217047 | | | JHO Intellectual Property Holdings, LLC |
| Bahamas | SUPER CREATINE | 9/4/2019 | 43897 | | | JHO Intellectual Property Holdings, LLC |
| Barbados | SUPER CREATINE | | | | | JHO Intellectual Property Holdings, LLC |
| Bolivia | SUPER CREATINE | | 4727-2018 4728-2018 | 184291-C N/A | | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | SUPER CREATINE | | | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| British Virgin Islands | SUPER CREATINE | | 7853 | | | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | SUPER CREATINE | | | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Cayman Islands | SUPER CREATINE | | T0000806 | | | JHO Intellectual Property Holdings, LLC |

| Chile | SUPER CREATINE | | 1.359.973 | 1.334.516 | 12/9/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Colombia/MADRID | SUPER CREATINE | | SD2020/0038918 | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Colombia | BANG SUPER CREATINE | | SD2021/0056834 | | 1/31/2022 | JHO Intellectual Property Holdings, LLC |
| Dominican Republic | SUPER CREATINE | | | | | JHO Intellectual Property Holdings, LLC |
| Ecuador | SUPER CREATINE | | SENADI-2018-72245 SENADI-2018-72248 | | | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | SUPER CREATINE | | | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| French Guiana | SUPER CREATINE | | | | | JHO Intellectual Property Holdings, LLC |
| Honduras | SUPER CREATINE | | 2018-042125 | 150558 Tomo 551 Folio 122 | | JHO Intellectual Property Holdings, LLC |
| Honduras | SUPER CREATINE | | 2018-042126 | 150560 Tomo 551 Folio 124 | | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | SUPER CREATINE | | | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | SUPER CREATINE | | | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | SUPER CREATINE | | | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | SUPER CREATINE | | | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Israel | BANG SUPER CREATINE | | 341616 | | | JHO Intellectual Property Holdings, LLC |
| Jamaica | SUPER CREATINE | | 76594 | | | JHO Intellectual Property Holdings, LLC |

| Malaysia/Madrid | SUPER CREATINE | | | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Mexico | SUPER CREATINE | | 2365860 2365861 2365862 | N/A N/A 2357985 | 2/16/2022 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | SUPER CREATINE | | | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand | BANG SUPER CREATINE | | | 1191674 | | JHO Intellectual Property Holdings, LLC |
| Nicaragua | SUPER CREATINE | | 2018-003199 | | | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | SUPER CREATINE | | | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Norway | BANG SUPER CREATINE | | 202101865 as BANG SUPER CREATINE | 314701 | 3/25/2021 | JHO Intellectual Property Holdings, LLC |
| Panama | SUPER CREATINE | | 268856 268858 | | | JHO Intellectual Property Holdings, LLC |
| Paraguay | SUPER CREATINE | | 18/91364 | 494553/2019 | 10/17/2019 | Vital Pharmaceuticals, Inc. |
| Paraguay | SUPER CREATINE | | 91364/2018 | 509006 | 9/30/2020 | Vital Pharmaceuticals, Inc. |
| Peru | BANG SUPER CREATINE | | 846094-2020 | 32731 | 11/22/2021 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | SUPER CREATINE | | | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Puerto Rico | SUPER CREATINE | | 231133-01-0 231133-05-0 | | 11/5/2018 | JHO Intellectual Property Holdings, LLC |
| Sint Maarten | SUPER CREATINE | | 15894 | 15894 | | JHO Intellectual Property Holdings, LLC |
| South Africa | SUPER CREATINE | | | | | JHO Intellectual Property Holdings, LLC |

122

| St. Vincent & Grenadines | SUPER CREATINE | | 7853 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | SUPER CREATINE | | | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Trinidad & Tobago | SUPER CREATINE | | | | | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | SUPER CREATINE | | | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey | BANG SUPER CREATINE | | 2021/16510 | | | JHO Intellectual Property Holdings, LLC |
| Turks & Caicos | SUPER CREATINE | | | 19550 19551 | | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | SUPER CREATINE | | | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | SUPER CREATINE | | | 1533114 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Uruguay | SUPER CREATINE | | 498698 | | | JHO Intellectual Property Holdings, LLC |
| Venezuela | SUPER CREATINE | | 2018-013112 2018-13115 | | | JHO Intellectual Property Holdings, LLC |
| Mexico | SWIRLY POP | 10/6/2022 | 2828291 2828292 | | | JHO Intellectual Property Holdings, LLC |
| Brazil | SYNGEX | | 910869227 | 910869227 | 3/13/2018 | Vital Pharmaceuticals, Inc. |
| Canada | SYNTHESIZE | | 1422014 | TMA770868 | 6/29/2010 | JHO Intellectual Property Holdings, LLC |
| Brazil | TRIPLE TEST | | 910869618 | 910869618 | 3/13/2018 | Vital Pharmaceuticals, Inc. |
| Argentina | VIBRATE | | 3972164 3972165 and 3972168 3972166 | 3289339 | 6/1/2022 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |

| | | | | | | |
|---|---|---|---|---|---|---|
| Bahrain/MADRID | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| Chile | VIBRATE | | 1.389.402 and 1.389.404 | | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| Cyprus/Madrid | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |

| Peru | VIBRATE | | 877718-2020 and 877720-2020 | 30057 309062 | 3/20/2021 3/21/2021 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| South Africa | VIBRATE | | 2021/00032 2021/00033 and 2021/00038 2021/00034 | 2021/00032 2021/00033 and 2021/00038 2021/00034 | 6/13/2022 | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | VIBRATE | | | 1573359 | 12/24/2020 | JHO Intellectual Property Holdings, LLC |
| Australia | VITAL PHARMACEU TICALS | | | 2242958 | | JHO Intellectual Property Holdings, LLC |
| Argentina | VOOZ | 12/30/2022 | 4085206 | | 11/11/2022 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| Chile | VOOZ | 12/30/2022 | 1.488.533 | | | JHO Intellectual Property Holdings, LLC |

| China/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Colombia/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| Colombia | VOOZ | 12/15/2022 | SD2022/0130741 | | | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| Japan/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| Peru | VOOZ | 12/29/2022 | 930416-2021 | 322474 | 3/11/2022 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| Korea/Madrid | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |

| South Africa | VOOZ | | 2021/31450 | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Switzerland/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | VOOZ | | | 1631058 | 10/11/2020 | JHO Intellectual Property Holdings, LLC |
| Argentina | VOOZ | 12/30/2020 | 3972167 | 3341485 | 11/11/2022 | Elite IP Holdings, LLC |
| Chile | VOOZ | 12/30/2020 | 1.389.404 | | | Elite IP Holdings, LLC |
| Peru | VOOZ | 12/29/2020 | 877722-2020 | P00309063 | 5/21/2021 | Elite IP Holdings, LLC |
| South Africa | VOOZ | 1/4/2021 | 2021/00044 | | | Elite IP Holdings, LLC |
| Argentina | VPX | | 3891838 | 3186885 | 7/29/2021 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | VPX | | | 1530253 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Belarus | VPX | | | 62266 | | JHO Intellectual Property Holdings, LLC |
| Brazil | VPX | | 827643012 | 827643012 | 12/29/2009 | Vital Pharmaceuticals, Inc. |
| Canada | VPX | | 1198221 | TMA633852 | 2/28/2005 | JHO Intellectual Property Holdings, LLC |
| Chile | VPX | | 1355840 | | | JHO Intellectual Property Holdings, LLC |
| Columbia/Madrid | VPX | | | 1530253 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Colombia | VPX by JHO | | SD2021/0049158 | | | JHO Intellectual Property Holdings, LLC |
| Egypt | VPX | | | | | JHO Intellectual Property Holdings, LLC |
| El Salvador | VPX | | 2009097717 2009097718 | 46, L.: 154; Fs.: 93 – 94 | | JHO Intellectual Property Holdings, LLC |

127

| | | | | 220; L.: 154;<br>Fs.: 443 – 444 | | |
|---|---|---|---|---|---|---|
| European<br>Union/MADRID | VPX | | | 1530253 | 4/7/2020 | JHO Intellectual Property<br>Holdings, LLC |
| Iceland/MADRID | VPX | | | 1530253 | 4/7/2020 | JHO Intellectual Property<br>Holdings, LLC |
| India/MADRID | VPX | | | 1530253 | 4/7/2020 | JHO Intellectual Property<br>Holdings, LLC |
| Iran/MADRID | VPX | | | 1530253 | 4/7/2020 | JHO Intellectual Property<br>Holdings, LLC |
| Israel/MADRID | VPX | | | 1530253 | 4/7/2020 | JHO Intellectual Property<br>Holdings, LLC |
| Kazakhstan | VPX | 78209 | 30688 | 12/12/2017 | | JHO Intellectual Property<br>Holdings, LLC |
| Korea/Madrid | VPX | | | 1530253 | 4/7/2020 | JHO Intellectual Property<br>Holdings, LLC |
| Malaysia/Madrid | VPX | | | 1530253 | 4/7/2020 | JHO Intellectual Property<br>Holdings, LLC |
| Mexico | VPX | 632505 | 826702 | 3/26/2004 | | Vital Pharmaceuticals, Inc. |
| New Zealand/MADRID | VPX | | | 1530253 | 4/7/2020 | JHO Intellectual Property<br>Holdings, LLC |
| Norway/MADRID | VPX | | | 1530253 | 4/7/2020 | JHO Intellectual Property<br>Holdings, LLC |
| Peru | VPX | | | 132372 | 11/6/2007 | Vital Pharmaceuticals, Inc. |
| Philippines/MADRID | VPX | | | 1530253 | 4/7/2020 | JHO Intellectual Property<br>Holdings, LLC |
| Russia | VPX | | 2016748379 | | | JHO Intellectual Property<br>Holdings, LLC |
| South Africa | VPX | | 2005/15411 | 2005/15411 | | JHO Intellectual Property<br>Holdings, LLC |
| Switzerland/MADRID | VPX | | | 1530253 | 4/7/2020 | JHO Intellectual Property<br>Holdings, LLC |

US-DOCS\143035915.2

| Turkey/MADRID | VPX | | | 1530253 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| UAE/MADRID | VPX | | | 1530253 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| United Kingdom/MADRID | VPX | | | 1530253 | 4/7/2020 | JHO Intellectual Property Holdings, LLC |
| Canada | VPX and design | 1198219 | TMA641001 | 6/1/2005 | | JHO Intellectual Property Holdings, LLC |
| China | VPX BANG ENERGY | 49304712 49304715 | | | 4/21/2021 | JHO Intellectual Property Holdings, LLC |
| Argentina | WITTY | 4001293 4001294 4001295 4001296 4001297 | | | 10/3/2022 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | WITTY | 1605785 | | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | WITTY | 1605785 | | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | WITTY | 1605785 | | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | WITTY | 1605785 | | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| Chile | WITTY | 1430783 | 1.370.639 | 5/10/2022 | | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | WITTY | 1605785 | | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | WITTY | 1605785 | | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | WITTY | 1605785 | | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | WITTY | 1605785 | | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Iran/MADRID | WITTY | | 1605785 | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Israel/MADRID | WITTY | | 1605785 | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | WITTY | | 1605785 | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | WITTY | | 1605785 | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | WITTY | | 1605785 | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | WITTY | | 1605785 | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| Peru | WITTY | | 892754-2021 | | 9/10/2021 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | WITTY | | 1605785 | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| South Africa | WITTY | | 2021/06397 2021/06398 2021/06399 2021/06400 2021/06401 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/Madrid | WITTY | | 1605785 | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| Turkey/Madrid | WITTY | | 1605785 | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | WITTY | | 1605785 | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | WITTY | | 1605785 | | 3/4/2021 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |

| Argentina | WYLDIN' WATERMELON | | 4033475 4033476 | | | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Bahrain/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| Bolivia | WYLDIN' WATERMELON | 12/29/2021 | SM-006191-2021 SM-006192-2021 | | | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| Chile | WYLDIN' WATERMELON | | 1.468.200 | 1.376.653 | 6/21/2022 | JHO Intellectual Property Holdings, LLC |
| Costa Rica | WYLDIN' WATERMELON | 1/3/2022 | 2022-0015 | | | JHO Intellectual Property Holdings, LLC |
| China/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| Ecuador | WYLDIN' WATERMELON | 12/27/2021 | SENADI-2021-93447 SENADI-2021-93451 | SENADI_2022_TI_7589 SENADI_2022_TI_11326 | | JHO Intellectual Property Holdings, LLC |

131

| EU/Madrid | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Guatemala | WYLDIN' WATERMELON | | 2021-13356 2021-13358 | | | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| Japan/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Peru | WYLDIN' WATERMELON | | 906723-2021 | 32881 | 3/4/2022 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Philippines/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| Republic of Korea/Madrid | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| South Africa | WYLDIN' WATERMELON | | 2021/10040 2021/10041 | | | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | WYLDIN' WATERMELON | | 1594016 | | 4/6/2021 | JHO Intellectual Property Holdings, LLC |
| Argentina | YES | | 4058067 4058068 | | | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| Bahrain/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |

| Canada/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Chile | YES | | 1.475.636 1.475.637 | | | JHO Intellectual Property Holdings, LLC |
| China/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| Iran/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| Japan/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| Norway/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| Peru | YES | | 915344-2021 915345-2021 | | 12/9/2021 | JHO Intellectual Property Holdings, LLC |
| Philippines/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |

134

| | | | | | | |
|---|---|---|---|---|---|---|
| Republic of Korea/Madrid | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| South Africa | YES | 4/26/2021 | 2021/11861 2021/11862 | 2021/11861 2021/11862 | 6/27/2022 | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| UAE/MADRID | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | YES | | 1600564 | | 4/23/2021 | JHO Intellectual Property Holdings, LLC |
| Brazil | ZERO CARB | | | 827643020 | | Vital Pharmaceuticals, Inc. |
| China | ZERO CARB | | 22290341 | | 1/28/2018 | JHO Intellectual Property Holdings, LLC |
| Egypt | ZERO CARB | | | | | JHO Intellectual Property Holdings, LLC |
| Peru | ZERO CARB | | | 136865 | 2/13/2008 | Vital Pharmaceuticals, Inc. |
| South Africa | ZERO CARB | | 2005/15408 | 2005/15408 | | JHO Intellectual Property Holdings, LLC |
| Canada | ZERO IMPACT | | 1422012 | TMA770863 | 6/29/2010 | JHO Intellectual Property Holdings, LLC |
| Dominican Republic | REDLINE | 5/21/2007 | | Filed | | Vital Pharmaceuticals, Inc. |

US-DOCS\143035915.2

*Abandoned/Cancelled Marks*

| Country | Mark | Filing Date | Serial No. | Reg. No. | Registration Date | Owner |
|---------|------|-------------|------------|----------|-------------------|-------|
| Australia/MADRID | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Brazil/Madrid | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Canada/MADRID | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| China/MADRID | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Colombia/MADRID | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| EU/Madrid | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Iceland/MADRID | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| India/MADRID | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Israel/MADRID | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Japan/MADRID | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Malaysia/Madrid | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Mexico/MADRID | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| New Zealand/MADRID | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |

US-DOCS\143035915.2

| Norway/MADRID | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
|---|---|---|---|---|---|---|
| Philippines/MADRID | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Republic of Korea/Madrid | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Switzerland/MADRID | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Turkey/MADRID | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| UK/Madrid | Q | | | 1621984 | 9/2/2021 | JHO Intellectual Property Holdings, LLC |
| Australia/MADRID | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| Bahrain/MADRID | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| Brazil/Madrid | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| Canada/MADRID | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| Colombia/MADRID | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| Cyprus/Madrid | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| EU/Madrid | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| Iceland/MADRID | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| India/MADRID | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| Iran/MADRID | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |

137

| Israel/MADRID | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
|---|---|---|---|---|---|---|
| Malaysia/Madrid | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| Mexico/MADRID | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| New Zealand/MADRID | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| Norway/MADRID | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| Philippines/MADRID | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| Switzerland/MADRID | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| Turkey/MADRID | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| UK/Madrid | STOKED SELTZER | | | 1563847 | | Elite IP Holdings, LLC |
| Australia/MADRID | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |
| Bahrain/MADRID | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |
| Brazil/Madrid | VOOZ | | 501574325 | 1574325 | | Elite IP Holdings, LLC |
| Canada/MADRID | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |
| Colombia/MADRID | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |
| Cyprus/Madrid | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |
| EU/Madrid | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |
| Iceland/MADRID | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |
| India/MADRID | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |
| Iran/MADRID | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |
| Israel/MADRID | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |
| Malaysia/Madrid | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |
| Mexico/MADRID | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |
| New Zealand/MADRID | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |
| Norway/MADRID | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |

138

| Philippines/MADRID | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |
|---|---|---|---|---|---|---|
| Switzerland/MADRD | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |
| Turkey/MADRID | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |
| UK/Madrid | VOOZ | | | 1574325 | | Elite IP Holdings, LLC |

US-DOCS\143035915.2

## Section 5.11(a)(ii)
## Seller IP – Domain Names

| URL | Registrar | Expiration Date | Registrant Organization | Notes<br><br>* Denotes that a domain name that is set to expire this year and/or that will not be renewed |
|---|---|---|---|---|
| adminvpx.com | GoDaddy | 05/22/23 | JHO | |
| afrango.com | GoDaddy | 12/05/23 | JHO | * |
| all-banged-up.com | GoDaddy | 02/28/24 | VPX | |
| artistenergy.com | GoDaddy | 05/01/24 | JHO | |
| asecretenergy.com | GoDaddy | 06/18/23 | JHO | |
| babybangenergy.com | GoDaddy | 01/09/24 | VPX | |
| banenergy.ca | GoDaddy | 06/18/23 | JHO | |
| bang.energy | GoDaddy | 08/14/23 | JHO | |
| bangbabe.com | GoDaddy | 01/11/24 | VPX | |
| bangbeverages.com | GoDaddy | 02/03/25 | VPX | |
| bang-beverages.com | GoDaddy | 02/03/25 | VPX | |
| bangbirthdaybash.com | GoDaddy | 10/09/24 | JHO | |
| bangbirthdaygiveaway.com | GoDaddy | 09/29/23 | VPX | |
| bang-bites.com | GoDaddy | 02/03/25 | VPX | |
| bangburnbox.com | GoDaddy | 10/12/23 | JHO | |
| bangcanadagiveaway.ca | GoDaddy | 03/31/24 | JHO | |
| bangcanadagiveaway.com | GoDaddy | 03/30/23 | JHO | |
| bangdjcontest.com | GoDaddy | 07/17/23 | JHO | |
| bangenergy.at | GoDaddy | 02/05/24 | JHO | |
| bangenergy.au | 101Domain | 01/19/24 | VPX | |
| bangenergy.be | GoDaddy | 01/24/24 | VPX | |
| bangenergy.bo | 101Domain | 03/22/24 | VPX | |
| bangenergy.ca | GoDaddy | 06/06/23 | JHO | |
| bang-energy.ca | GoDaddy | 08/16/24 | JHO | |
| bangenergy.cc | GoDaddy | 03/07/24 | JHO | |
| bang-energy.cc | GoDaddy | 02/11/24 | JHO | |
| bangenergy.cl | 101Domain | 10/02/23 | VPX | |
| bang-energy.co | GoDaddy | 02/11/24 | JHO | |
| bangenergy.co.za | GoDaddy | 10/08/23 | JHO | |
| bang-energy.co.za | GoDaddy | 10/08/23 | JHO | |
| bangenergy.com | Hover | 11/07/25 | VPX | |
| bang-energy.com | GoDaddy | 10/02/23 | VPX | |
| bangenergy.com.au | 101Domain | 01/19/24 | VPX | |
| bangenergy.com.mx | GoDaddy | 01/31/24 | JHO | |
| bangenergy.cr | 101Domain | 03/28/24 | VPX | |

| URL | Registrar | Expiration Date | Registrant Organization | Notes<br><br>* Denotes that a domain name that is set to expire this year and/or that will not be renewed |
|---|---|---|---|---|
| bangenergy.cw | 101Domain | 01/31/24 | VPX | |
| bangenergy.de | GoDaddy | 05/21/23 | JHO | |
| bangenergy.ec | 101Domain | 02/01/24 | VPX | |
| bangenergy.ee | 101Domain | 01/31/24 | VPX | |
| bangenergy.eu | GoDaddy | 03/29/24 | JHO | |
| bangenergy.fi | 101Domain | 10/25/25 | VPX | |
| bangenergy.gr | 101Domain | 01/30/25 | VPX | |
| bangenergy.gt | 101Domain | 03/24/24 | VPX | |
| bangenergy.ie | 101Domain | 01/30/24 | VPX | |
| bangenergy.in | GoDaddy | 02/11/24 | JHO | |
| bang-energy.in | GoDaddy | 02/11/24 | JHO | |
| bangenergy.info | GoDaddy | 01/31/24 | JHO | |
| bangenergy.io | GoDaddy | 03/23/24 | VPX | |
| bangenergy.is | 101Domain | 01/31/24 | VPX | |
| bang-energy.it | GoDaddy | 02/12/24 | JHO | |
| bangenergy.lt | 101Domain | 02/01/24 | VPX | |
| bangenergy.lv | 101Domain | 01/31/24 | VPX | |
| bangenergy.mx | 101Domain | 03/11/24 | VPX | |
| bang-energy.mx | GoDaddy | 01/31/24 | JHO | |
| bangenergy.net | GoDaddy | 01/31/24 | JHO | |
| bangenergy.nz | 101Domain | 02/10/24 | VPX | |
| bangenergy.pe | GoDaddy | 02/23/24 | JHO | |
| bangenergy.tokyo | GoDaddy | 03/07/24 | JHO | |
| bang-energy.tokyo | GoDaddy | 02/11/24 | JHO | |
| bangenergy.tv | GoDaddy | 01/31/24 | JHO | |
| bangenergy.uk | GoDaddy | 02/11/24 | JHO | |
| bangenergy.university | GoDaddy | 02/27/24 | JHO | |
| bangenergy.us | GoDaddy | 11/25/23 | JHO | |
| bang-energy.us | GoDaddy | 02/11/24 | JHO | |
| bangenergyadverts.com | Namecheap | 05/01/23 | VPX | |
| bangenergyambassador.com | GoDaddy | 07/19/23 | JHO | |
| bangenergybox.com | GoDaddy | 09/06/23 | JHO | |
| bangenergybv.com | GoDaddy | 08/16/24 | JHO | |
| bangenergyca.com | GoDaddy | 08/16/24 | JHO | |
| bang-energycanada.com | GoDaddy | 08/16/24 | JHO | |
| bangenergycareers.com | GoDaddy | 09/18/23 | VPX | |
| bangenergycasting.com | GoDaddy | 03/27/24 | JHO | |

141

| URL | Registrar | Expiration Date | Registrant Organization | Notes<br><br>* Denotes that a domain name that is set to expire this year and/or that will not be renewed |
|---|---|---|---|---|
| bangenergycontest.com | GoDaddy | 05/10/23 | JHO | |
| bangenergyfamily.com | GoDaddy | 01/13/24 | VPX | |
| bangenergyfindlandgiveaway.com | GoDaddy | 06/28/23 | VPX | |
| bangenergyfinlandgiveaway.eu | GoDaddy | 06/29/23 | VPX | |
| bangenergygermanygiveaway.com | GoDaddy | 07/11/23 | VPX | |
| bangenergygiveaway.com | GoDaddy | 01/17/24 | VPX | |
| bangenergygiveaway.ec | 101Domain | 02/01/24 | VPX | |
| bangenergygiveaway.fi | 101Domain | 03/09/24 | VPX | |
| bangenergygreecegiveaway.com | GoDaddy | 07/11/23 | VPX | |
| bangenergymodels.com | GoDaddy | 03/06/24 | JHO | |
| bangenergynetherlandsgiveaway.com | GoDaddy | 07/11/23 | VPX | |
| bangenergysouthafricagiveaway.com | GoDaddy | 07/11/23 | VPX | |
| bangenergysweepstake.com | GoDaddy | 10/07/23 | JHO | |
| bangenergysweepstakes.com | GoDaddy | 10/07/23 | JHO | |
| bangenergytruth.com | GoDaddy | 04/18/24 | JHO | |
| bangenergyundercover.com | GoDaddy | 02/24/26 | JHO | |
| bangenergyuniversity.com | GoDaddy | 02/27/24 | JHO | |
| bangflavorforyou.com | GoDaddy | 02/22/24 | VPX | |
| bang-foods.com | GoDaddy | 02/03/25 | VPX | |
| bangfuelteam.com | GoDaddy | 10/10/23 | JHO | |
| banghardseltzer.com | GoDaddy | 08/14/25 | JHO | |
| banghardseltzercontest.com | GoDaddy | 10/15/23 | VPX | |
| banghardseltzergiveaway.com | GoDaddy | 07/15/23 | JHO | |
| bangjets.com | GoDaddy | 09/13/23 | JHO | * |
| bangmasterblastergiveaway.com | GoDaddy | 05/21/23 | JHO | |
| bangmixx.com | GoDaddy | 11/05/23 | JHO | |
| bang-mixx.com | GoDaddy | 11/05/23 | JHO | * |
| bangparadisegetaway.com | GoDaddy | 09/14/23 | VPX | |
| bangpardisegetaway.com | GoDaddy | 09/09/23 | VPX | * |
| bangrevolution.com | GoDaddy | 09/26/23 | JHO | |
| bangrevolutionapparel.com | GoDaddy | 08/09/23 | JHO | |
| bangrootbeer.com | GoDaddy | 08/20/23 | JHO | * |
| bangseltzer.com | GoDaddy | 08/11/23 | VPX | |
| bangsterbox.com | GoDaddy | 03/13/24 | JHO | |

142

| URL | Registrar | Expiration Date | Registrant Organization | Notes<br><br>* Denotes that a domain name that is set to expire this year and/or that will not be renewed |
|---|---|---|---|---|
| bangsterchoiceawards.com | GoDaddy | 09/30/24 | JHO | |
| bangstg.com | GoDaddy | 04/02/23 | JHO | |
| bangthefixx.com | GoDaddy | 09/16/23 | VPX | * |
| bangthemixx.com | GoDaddy | 11/05/23 | JHO | * |
| bangtruth.com | GoDaddy | 04/18/23 | JHO | |
| bangultraverse.com | GoDaddy | 04/19/23 | JHO | |
| bang-vapes.com | GoDaddy | 08/18/23 | JHO | |
| bangvaps.com | GoDaddy | 08/18/23 | JHO | |
| bangworldtour.com | GoDaddy | 09/09/23 | JHO | |
| b-energy.com | GoDaddy | 04/11/24 | JHO | |
| bodybrainfocuscom.com | GoDaddy | 01/11/24 | VPX | |
| bvooz.com | GoDaddy | 02/07/24 | JHO | |
| b-vooz.com | GoDaddy | 02/07/24 | JHO | |
| captaincrunchfishing.com | GoDaddy | 07/20/23 | JHO | * |
| celebrityfitnessmag.com | GoDaddy | 04/09/23 | JHO | * |
| celebrityfitnessmagazine.com | GoDaddy | 04/09/23 | JHO | * |
| cellulizer.com | GoDaddy | 05/05/23 | JHO | * |
| coco-fit.com | GoDaddy | 11/23/23 | JHO | * |
| cocofitplus.com | GoDaddy | 09/20/23 | JHO | * |
| CREATINE-ETHLY-ESTER.COM | GoDaddy | 04/21/24 | VPX | |
| creatineethylester.com | GoDaddy | 04/21/23 | JHO | |
| CREATINE-ETHYL-ESTER.COM | GoDaddy | 04/21/24 | VPX | |
| cremtor.com | GoDaddy | 02/28/24 | JHO | |
| cruisewithvooz.com | GoDaddy | 03/28/24 | VPX | |
| drinkcoolagen.com | GoDaddy | 01/31/24 | VPX | |
| drinkfunenergy.com | GoDaddy | 07/25/23 | VPX | |
| einstein-water.com | GoDaddy | 06/04/23 | JHO | * |
| emailbangenergy.com | GoDaddy | 07/06/23 | VPX | |
| epic-tailgate.com | GoDaddy | 05/19/23 | VPX | * |
| fitbizplace.com | GoDaddy | 04/15/23 | JHO | * |
| fitplace.com | GoDaddy | 06/14/23 | JHO | * |
| fitvixens.com | GoDaddy | 02/27/24 | JHO | |
| fixxapp.com | GoDaddy | 12/06/23 | JHO | * |
| fixxhardseltzer.com | GoDaddy | 09/15/23 | VPX | * |
| freebangwithcp.com | GoDaddy | 08/01/23 | JHO | |
| freetasteofbang.com | GoDaddy | 04/15/23 | JHO | |

143

| URL | Registrar | Expiration Date | Registrant Organization | Notes<br><br>* Denotes that a domain name that is set to expire this year and/or that will not be renewed |
|---|---|---|---|---|
| fuelyourdestiny.com | GoDaddy | 03/10/24 | VPX | |
| funenergy.io | GoDaddy | 06/16/23 | VPX | |
| funenergydrink.com | GoDaddy | 07/25/23 | VPX | |
| funergydrink.com | GoDaddy | 07/25/23 | JHO | |
| gdmig-vpx-sports.net | GoDaddy | N/A | JHO | DNS hosting, so no expiration date |
| guesstheflavor.com | GoDaddy | 10/07/23 | VPX | |
| guysgoneglobal.com | GoDaddy | 05/21/23 | JHO | * |
| hocuspocusenergy.com | GoDaddy | 01/09/24 | VPX | |
| hp-mag.com | GoDaddy | 09/05/23 | JHO | * |
| hpmmagazineonline.com | GoDaddy | 08/12/23 | JHO | * |
| hydrationnationenergy.com | GoDaddy | 04/20/23 | JHO | |
| ice-cold-creatine.com | GoDaddy | 02/28/24 | JHO | |
| jackowocgiveaway.com | GoDaddy | 05/21/23 | JHO | * |
| life-lift.com | GoDaddy | 03/13/24 | JHO | |
| lifeliftbar.com | GoDaddy | 03/13/24 | JHO | |
| lifeliftchallenge.com | GoDaddy | 07/22/23 | JHO | |
| lifeliftnutrition.com | GoDaddy | 08/28/23 | JHO | |
| m3tav3rs.com | GoDaddy | 05/02/23 | JHO | |
| maq-energy.com | GoDaddy | 10/01/23 | JHO | |
| meglizswimweek.com | GoDaddy | 07/13/23 | JHO | * |
| meltdown.solutions | GoDaddy | 02/11/24 | JHO | |
| meltdownbookgiveaway.com | GoDaddy | 05/21/23 | JHO | * |
| MELTDOWNDIET.COM | GoDaddy | 02/26/24 | VPX | |
| meltdownenergy.com | GoDaddy | 02/07/24 | VPX | |
| meltdowngiveaway.com | GoDaddy | 05/21/23 | JHO | |
| MIAMIMELTDOWN.COM | GoDaddy | 09/10/23 | VPX | |
| miami-meltdown.com | GoDaddy | 09/25/23 | JHO | |
| mtorc.com | GoDaddy | 06/20/23 | JHO | |
| mtorc1.com | GoDaddy | 06/20/23 | JHO | |
| muscle2go.com | GoDaddy | 10/09/23 | JHO | * |
| musclemayhemapparel.com | GoDaddy | 03/27/24 | JHO | |
| muylocoenergy.com | GoDaddy | 03/18/24 | JHO | |
| mybangsoulmate.com | GoDaddy | 03/26/24 | JHO | |
| necktiemovie.com | GoDaddy | 11/15/23 | JHO | * |
| necktiethemovie.com | GoDaddy | 11/15/23 | JHO | * |
| noo-fuzion.com | GoDaddy | 06/24/23 | JHO | |

| URL | Registrar | Expiration Date | Registrant Organization | Notes<br><br>* Denotes that a domain name that is set to expire this year and/or that will not be renewed |
|---|---|---|---|---|
| noshotgun.cn | GoDaddy | 04/30/23 | JHO | |
| noshotgun.com | GoDaddy | 06/23/23 | JHO | |
| no-shotgun.com | GoDaddy | 06/23/23 | JHO | |
| nutralution.com | GoDaddy | 08/02/23 | JHO | * |
| otherworldlyenergy.com | GoDaddy | 08/15/23 | JHO | |
| otherworldlyhardseltzer.com | GoDaddy | 08/15/23 | JHO | |
| perfectrule.com | GoDaddy | 07/26/24 | JHO | |
| perfect-rule.com | GoDaddy | 07/26/24 | JHO | |
| plasticpollutionsolutionpledge.com | GoDaddy | 05/16/23 | VPX | |
| plasticpollutionsolutionpledge.org | GoDaddy | 05/10/23 | VPX | |
| pollutionsolution.world | GoDaddy | 05/17/23 | VPX | |
| pollutionsolutionpledge.com | GoDaddy | 05/17/23 | VPX | |
| pollutionsolutionpledge.org | GoDaddy | 05/16/23 | VPX | |
| pristineprotein.com | GoDaddy | 02/06/24 | JHO | |
| projectrule.com | GoDaddy | 07/26/24 | JHO | |
| project-rule.com | GoDaddy | 07/26/24 | JHO | |
| quashlifelift.com | GoDaddy | 11/06/23 | JHO | |
| quashseltzer.com | GoDaddy | 07/24/25 | JHO | |
| rainbowultracorn.com | GoDaddy | 07/20/23 | VPX | |
| rainbowultracorn.io | GoDaddy | 07/20/23 | VPX | |
| rainbowunicornbev.com | GoDaddy | 06/16/23 | VPX | |
| rainbowunicornenergy.com | GoDaddy | 05/16/23 | JHO | |
| redline.com.mx | Network Solutions | 03/20/25 | VPX | |
| redline.org.cn | GoDaddy | 05/10/23 | JHO | |
| redline.org.nz | Network Solutions | 03/15/25 | VPX | |
| redline.tw | Network Solutions | 05/10/25 | VPX | |
| redline.vg | Network Solutions | 03/15/24 | VPX | |
| redlinecoffee.com | GoDaddy | 07/07/23 | JHO | * |
| redlineenergygiveaway.com | GoDaddy | 01/17/24 | VPX | |
| redlinemaq.biz | GoDaddy | 09/30/23 | JHO | |
| redlinemaq.com | GoDaddy | 09/30/23 | JHO | |
| redlinemaq-energy.com | GoDaddy | 10/01/23 | JHO | |
| redlinemindgames.com | GoDaddy | 06/23/23 | VPX | |
| redlinerush.cn | GoDaddy | 04/30/23 | JHO | |

145

| URL | Registrar | Expiration Date | Registrant Organization | Notes<br><br>* Denotes that a domain name that is set to expire this year and/or that will not be renewed |
|---|---|---|---|---|
| redlinerush.com | GoDaddy | 09/08/23 | JHO | |
| redlinerush.mobi | GoDaddy | 05/10/23 | JHO | |
| redlineultrahardcore.com | GoDaddy | 02/19/25 | JHO | |
| redlinevixen.com | GoDaddy | 06/04/23 | JHO | * |
| redlinevpx.com | GoDaddy | 07/11/23 | JHO | |
| redline-vpx.com | GoDaddy | 11/21/23 | JHO | |
| redlinextremeenergy.com | GoDaddy | 05/26/23 | JHO | |
| redlinextremegirlscalendar.com | GoDaddy | 10/03/23 | JHO | |
| redlinextremegirlscalendar.net | GoDaddy | 10/05/23 | JHO | |
| redlinextremeracing.com | GoDaddy | 07/02/23 | JHO | |
| redpillwater.com | GoDaddy | 03/15/24 | JHO | |
| reignscam.com | GoDaddy | 04/18/23 | JHO | * |
| rockbodynutrition.com | GoDaddy | 08/09/23 | JHO | * |
| rockbodynutrition.us | GoDaddy | 02/06/24 | JHO | |
| rule.energy | GoDaddy | 07/25/24 | JHO | |
| rulebeverage.com | GoDaddy | 07/25/24 | JHO | |
| ruledrink.com | GoDaddy | 07/25/24 | JHO | |
| rule-drink.com | GoDaddy | 07/25/24 | JHO | |
| rule-energy.com | GoDaddy | 07/25/24 | JHO | |
| ruleenergydrink.com | GoDaddy | 07/25/24 | JHO | |
| rule-fuel.com | GoDaddy | 07/25/24 | JHO | |
| rulenergy.com | GoDaddy | 07/26/24 | JHO | |
| shootwithbang.com | GoDaddy | 05/31/24 | JHO | |
| skinscript.com | GoDaddy | 05/04/23 | JHO | * |
| stokedenergy.com | GoDaddy | 05/12/23 | JHO | |
| stokedenergy.com.au | 101Domain | 07/28/23 | VPX | * |
| stokedenergy.mx | GoDaddy | 07/24/25 | JHO | * |
| stokedenergy.us | GoDaddy | 07/24/25 | JHO | * |
| stokedgiveaway.com | GoDaddy | 04/16/23 | JHO | * |
| stokedseltzer.com | GoDaddy | 06/08/24 | JHO | * |
| thebangenergy.com | GoDaddy | 07/25/24 | JHO | |
| thebangmixx.com | GoDaddy | 11/05/23 | JHO | * |
| thefixxapp.ca | GoDaddy | 12/16/23 | JHO | * |
| thefixxapp.com | GoDaddy | 12/16/23 | JHO | * |
| thefixxapp.com.au | GoDaddy | 01/08/24 | JHO | * |
| thefixxapp.eu | GoDaddy | 12/16/23 | Bang Energy BV | * |

US-DOCS\143035915.2

| URL | Registrar | Expiration Date | Registrant Organization | Notes<br><br>* Denotes that a domain name that is set to expire this year and/or that will not be renewed |
|-----|-----------|-----------------|------------------------|------|
| thefixxhardseltzer.com | GoDaddy | 09/15/23 | VPX | * |
| thefunenergy.com | GoDaddy | 04/28/23 | JHO | |
| thinfat.com | GoDaddy | 03/19/24 | JHO | |
| ultracornenergy.com | GoDaddy | 05/16/23 | JHO | |
| ultrapure10.com | GoDaddy | 06/20/23 | JHO | |
| ultrasocial.io | GoDaddy | 04/12/24 | VPX | |
| ultrav3rse.com | GoDaddy | 04/19/23 | JHO | |
| ultraverse.ai | GoDaddy | 04/12/24 | VPX | |
| ultraverse.social | GoDaddy | 04/12/24 | VPX | |
| ultraverseapp.com | GoDaddy | 04/12/24 | VPX | |
| vextran.com | GoDaddy | 05/02/23 | JHO | * |
| vitalpharmaceuticalinc.com | GoDaddy | 07/24/23 | JHO | |
| vitalpharmaceuticalsinc.com | GoDaddy | 07/24/23 | JHO | |
| vivaciousenergy.com | GoDaddy | 06/23/23 | JHO | |
| vivo-360.com | GoDaddy | 04/02/23 | JHO | * |
| vivo360diet.com | GoDaddy | 05/01/23 | JHO | * |
| voozadventures.com | GoDaddy | 03/22/24 | VPX | |
| voozapparel.com | GoDaddy | 10/04/23 | JHO | |
| voozenergy.com | GoDaddy | 06/23/23 | VPX | |
| voozhydrate.com | GoDaddy | 10/04/23 | JHO | |
| voozhydrationdrink.com | GoDaddy | 06/23/23 | VPX | |
| voozseltzer.com | GoDaddy | 10/04/23 | JHO | |
| voozsportsdrink.com | GoDaddy | 10/04/23 | JHO | |
| vpx1.cn | GoDaddy | 04/30/23 | JHO | |
| vpx1.mobi | GoDaddy | 05/10/23 | JHO | |
| vpxdirect.com | GoDaddy | 11/13/23 | JHO | |
| vpxnation.com | GoDaddy | 02/20/25 | JHO | |
| VPX-REDLINE.COM | GoDaddy | 09/04/23 | VPX | |
| vpxsports.biz | GoDaddy | 06/05/23 | JHO | |
| vpxsports.ca | GoDaddy | 08/10/23 | JHO | |
| vpxsports.cc | GoDaddy | 06/05/23 | JHO | |
| vpxsports.cn | GoDaddy | 04/30/23 | JHO | |
| vpxsports.com | Register.com | 12/12/27 | VPX | |
| vpxsports.eu | GoDaddy | 05/29/24 | JHO | |
| vpxsports.info | GoDaddy | 06/05/23 | JHO | |
| vpxsports.mobi | GoDaddy | 05/10/23 | JHO | |
| vpxsports.net | GoDaddy | 06/05/23 | JHO | |

147

| URL | Registrar | Expiration Date | Registrant Organization | Notes<br><br>* Denotes that a domain name that is set to expire this year and/or that will not be renewed |
|---|---|---|---|---|
| VPX-SPORTS.NET | GoDaddy | 04/15/23 | VPX | |
| vpxsports.org | GoDaddy | 06/05/23 | JHO | |
| vpxsports.us | GoDaddy | 06/05/23 | JHO | |
| vpxsportsgiveaway.com | GoDaddy | 07/19/23 | JHO | |
| vpx-sports-redline.com | GoDaddy | 02/21/24 | JHO | |
| vpxswim.com | GoDaddy | 09/24/23 | JHO | |
| vpxswimwear.com | GoDaddy | 09/24/23 | JHO | |
| vpxtv.com | GoDaddy | 10/05/23 | JHO | |
| zerocarbdiet.com | GoDaddy | 06/21/23 | JHO | |
| zerocarbdiet.info | GoDaddy | 04/22/23 | JHO | |
| zidiet.cn | GoDaddy | 04/30/23 | JHO | |
| zidietblog.com | GoDaddy | 03/23/24 | JHO | |

**Section 5.11(a)(iii)**
**Seller IP – Social Media Handles**

Instagram:
1. BangEnergy
2. MeltdownEnergy
3. Quash
4. VoozHydrate
5. BangHardSeltzer
6. Redline_Energy
7. VPX_Sports
8. PristineProtein
9. BangFuelTeam
10. The.Anti.Diet
11. BangEnergy.Careers
12. Bang_Merch
13. Stokedbeverage
14. BangEnergy.Sweepstakes
15. BangEnergy.Finland
16. Bang.Canada
17. BangEnergy.Germany
18. BangEnergy.Australia
19. Bang.Greece
20. BangEnergy.Denmark
21. BangEnergy.SouthAfrica
22. BangEnergy.Netherlands
23. BangEnergy.ABCislands
24. BangEnergy.Ecuador
25. BangEnergy.Sweden
26. BangEnergyNorway
27. Bang.Chile
28. BangEnergyIceland
29. BangEnergy.Switzerland
30. BangEnergyBaltics
31. BangEnergy.CEO (Item 3 of Section 5.11(b) of this Disclosure Schedule is incorporated by reference herein.)
32. RainbowUnicornEnergy
33. NooFuzion
34. BangEnergy.Recruitment
35. TheFixxApp

Youtube:
1. Bang Energy
2. Bang Energy Family

Twitter:
1. Bang Energy
2. Vooz Hydrate
3. Bang Hard Seltzer
4. StokedBeverage
5. TheFixxApp

149

BangEnergy.CEO (Item 3 of Section 5.11(b) of this Disclosure Schedule is incorporated by reference herein.)

Linkedin:
1. Bang Energy

TikTok:
1. BangEnergy
2. VoozHydrate
3. Redlne.Energy
4. Quash Life Lift
5. Meltdown Energy
6. Stoked.Beverage
7. BangEnergy.CEO (Item 3 of Section 5.11(b) of this Disclosure Schedule is incorporated by reference herein.)
8. NooFuzion

Facebook:
1. Bang Energy
2. Redline
3. Vpx Sports
4. Meltdown Energy
5. Quash
6. Pristine Protein
7. Bang Fuel Team
8. Bang Hard Seltzer
9. Bang Anti Diet
10. Bang Energy Careers
11. Bang Energy Australia
12. Bang Energy Ecuador
13. Bang Energy Finland
14. Bang Energy Sweepstakes
15. Stoked Beverage
16. Bang Energy Canada
17. The Fixx App
18. NooFuzion

US-DOCS\143035915.2

**Section 5.11(b)**
**Intellectual Property Excluded From Seller IP - Patents**

| Title | Owner |
|---|---|
| U.S. 11,278,516 (16/541,731) "MEDICINAL COMPOSITIONS OF CANNABINOIDS AND XANTHINES" Filed 8/15/2019 Issued 3/22/22 | Cognitive IP Holdings, LLC |
| U.S. 16/541,770 "NUTRITIONAL COMPOSITIONS OF NON-PSYCHOTROPIC CANNABINOIDS AND XANTHINES" Filed 8/15/2019 | Cognitive IP Holdings, LLC |
| U.S. 11,504,344 ""NUTRITIONAL COMPOSITIONS OF NON-PSYCHOTROPIC CANNABINOIDS AND XANTHINES" Filed 8/15/2019 Issued 11/22/22 | Cognitive IP Holdings, LLC |
| U.S. 63/167,359 "ELECTROLYTE-CONTAINING ALCOHOLIC BEVERAGES" Filed 3/29/2021 | Entourage IP Holdings, LLC |
| U.S. 17/707,008 (2022-0306975) "ELECTROLYTE-CONTAINING ALCOHOLIC BEVERAGES" Filed 3/29/2022 | Entourage IP Holdings, LLC |
| EP2276494B1 "STABLE AQUEOUS COMPOSITIONS COMPRISING BIOACTIVE CREATINE SPECIES" Filed 9/3/2008 Issued 10/21/2015 | John H. Owoc |

**Section 5.11(b)**
**Intellectual Property Excluded From Seller IP – Copyrights**

| Copyright | Owner |
|---|---|
| Bang Hard Seltzer VAu001424265 8/10/2020 | Entourage IP Holdings, LLC |
| THE FIXX PINA COLADA 1-9291629381 9/17/2020 | Entourage IP Holdings, LLC |
| THE FIXX PURPLE KIDDLES 1-9291890529 9/17/2020 | Entourage IP Holdings, LLC |
| THE FIXX STRAWBERRY BLAST VAu001411972  9/17/2020 | Entourage IP Holdings, LLC |
| THE FIXX FROSÉ ROSÉ 1-9291890665 9/17/2020 | Entourage IP Holdings, LLC |
| FUN ENERGY cans Vau 1-477-952 filed 7/27/22 | Fun Energy, LLC |
| "Meltdown Anti-Diet" Registration No. VAu001188418 6/25/2014 | John H. Owoc |
| ARTIST cans 1-11744815531 9/21/22 | |

**Section 5.11(b)**
**Intellectual Property Excluded From Seller IP - Trademarks**

*U.S. Pending Applications*

| Mark | Serial No. | Application Date | Owner |
|---|---|---|---|
| BANG ENERGY FAMILY | 97371844 | 4/20/2022 | Bang Energy Family, LLC |
| BANG GYMS | 90815219 | 7/7/2021 | Bang Gyms, LLC |
| CANDEMONIUM | 97028402 | 9/15/2021 | Candemonium, LLC |
| CAPTAIN CRUNCH | 97512566 | 7/20/2022 | Captain Crunch, LLC |
| HEMPIRE | 97062621 | 10/6/2021 | Cognitive IP Holdings, LLC |
| 5TH FUEL | 90232539 | 10/2/2020 | Entourage IP Holdings, LLC |
| ADARIA | 90746412 | 6/1/2021 | Entourage IP Holdings, LLC |
| AQUA FUSION | 97252631 | 2/3/2022 | Entourage IP Holdings, LLC |
| AQUA FUZION | 97047657 | 9/27/2021 | Entourage IP Holdings, LLC |
| B logo | 90736153 | 5/26/2021 | Entourage IP Holdings, LLC |
| B logo | 90674518 | 4/27/2021 | Entourage IP Holdings, LLC |
| BANG | 90104169 | 8/10/2020 | Entourage IP Holdings, LLC |
| BANG | 90674547 | 4/27/2021 | Entourage IP Holdings, LLC |
| BANG | 90736091 | 5/26/2021 | Entourage IP Holdings, LLC |
| BANG HARD SELTZER | 90805895 | 7/1/2021 | Entourage IP Holdings, LLC |
| BANG logo | 90736179 | 5/26/2021 | Entourage IP Holdings, LLC |
| BANG POPS | 90736550 | 5/26/2021 | Entourage IP Holdings, LLC |
| BANG SELTZER | 97062605 | 10/6/2021 | Entourage IP Holdings, LLC |
| BE | 97246029 | 1/31/2022 | Entourage IP Holdings, LLC |
| BLUE & YELLOW LIMONCELLO | 90674702 | 4/27/2021 | Entourage IP Holdings, LLC |
| BRINGING THE BANG | 90696959 | 5/7/2021 | Entourage IP Holdings, LLC |
| BURST | 97470895 | 6/22/2022 | Entourage IP Holdings, LLC |
| EINSTEIN WATER | 90232068 | 10/2/2020 | Entourage IP Holdings, LLC |
| FROSÉ ROSÉ | 90736224 | 5/26/2021 | Entourage IP Holdings, LLC |
| GEORGIA PEACH | 90674726 | 4/27/2021 | Entourage IP Holdings, LLC |
| GO HARD OR GO HOME | 90671941 | 4/26/2021 | Entourage IP Holdings, LLC |
| GUESS | 97062634 | 10/6/2021 | Entourage IP Holdings, LLC |

| HYDRATION NATION | 97372672 | 4/20/2022 | Entourage IP Holdings, LLC |
|---|---|---|---|
| HYDRATION SENSATION | 97045789 | 9/26/2021 | Entourage IP Holdings, LLC |
| HYDRO FUZION | 90232326 | 10/2/2020 | Entourage IP Holdings, LLC |
| iBANG | 90696881 | 5/7/2021 | Entourage IP Holdings, LLC |
| JUMP | 90235807 | 10/5/2020 | Entourage IP Holdings, LLC |
| KETOLYTES | 90755764 | 6/4/2021 | Entourage IP Holdings, LLC |
| LEMON DROP | 90674735 | 4/27/2021 | Entourage IP Holdings, LLC |
| LOVE | 97549236 | 8/15/2022 | Entourage IP Holdings, LLC |
| MELTDOWN SECRET | 90172574 | 9/10/2020 | Entourage IP Holdings, LLC |
| MIAMI ENERGY | 97474063 | 6/24/2022 | Entourage IP Holdings, LLC |
| MIAMI UNICORN | 97466402 | 6/20/2022 | Entourage IP Holdings, LLC |
| OTHERWORDLY | 97549324 | 8/15/2022 | Entourage IP Holdings, LLC |
| OZONE | 97074922 | 10/14/2021 | Entourage IP Holdings, LLC |
| PLANET POMEGRANATE | 90674876 | 4/27/2021 | Entourage IP Holdings, LLC |
| PURE BLOOD | 97125769 | 11/15/2021 | Entourage IP Holdings, LLC |
| PURPLE KIDDLES | 90736269 | 5/26/2021 | Entourage IP Holdings, LLC |
| QUASH | 97062649 | 10/6/2021 | Entourage IP Holdings, LLC |
| QUIZ | 97062659 | 10/6/2021 | Entourage IP Holdings, LLC |
| SECRET | 90172534 | 9/10/2020 | Entourage IP Holdings, LLC |
| STRAWBERRY BLAST | 90736285 | 5/26/2021 | Entourage IP Holdings, LLC |
| T@GGED | 97104402 | 11/2/2021 | Entourage IP Holdings, LLC |
| THE CURE | 97062677 | 10/6/2021 | Entourage IP Holdings, LLC |
| ULTRACORN | 97405057 | 5/11/2022 | Entourage IP Holdings, LLC |
| UNDOPE | 90123906 | 8/19/2020 | Entourage IP Holdings, LLC |
| VIBRATE | 97062684 | 10/6/2021 | Entourage IP Holdings, LLC |
| VOOZ | 97062691 | 10/6/2021 | Entourage IP Holdings, LLC |
| VR | 90249518 | 10/12/2020 | Entourage IP Holdings, LLC |
| WETTER THAN WATER | 90232471 | 10/2/2020 | Entourage IP Holdings, LLC |
| WYLDIN' WATERMELON | 90618632 | 4/1/2021 | Entourage IP Holdings, LLC |
| WYLDIN' WATERMELON | 90674896 | 4/27/2021 | Entourage IP Holdings, LLC |
| ZOOZ | 97062695 | 10/6/2021 | Entourage IP Holdings, LLC |
| 100% LOVE | 97601594 | 9/21/2022 | Fun Energy, LLC |

| | | | |
|---|---|---|---|
| ABOVE | 97609872 | 9/28/2022 | Fun Energy, LLC |
| ARTIST | 97601584 | 9/21/2022 | Fun Energy, LLC |
| FUEL YOUR DESTINY | 97670493 | 11/9/2022 | Fun Energy, LLC |
| FUNERGY | 97517840 | 7/25/2022 | Fun Energy, LLC |
| KABOOM | 97644739 | 10/24/2022 | Fun Energy, LLC |
| MEDIA | 97610288 | 9/28/2022 | Fun Energy, LLC |
| BABY BANG | 97735912 | 12/29/2022 | Liquid IP Holdings, LLC |
| BODY, BRAIN, & FOCUS | 97750899 | 1/11/2023 | Liquid IP Holdings, LLC |
| COOLAGEN | 97774988 | 1/31/2023 | Liquid IP Holdings, LLC |
| ENTICE | 97735917 | 12/29/2022 | Liquid IP Holdings, LLC |
| FUEL YOUR FANTASY | 97750886 | 1/11/2023 | Liquid IP Holdings, LLC |
| HOCUS-POCUS | 97744644 | 1/6/2023 | Liquid IP Holdings, LLC |
| MANGO PICANTE | 97802515 | 2/20/2023 | Liquid IP Holdings, LLC |
| MIND GAMES | 97802529 | 2/20/2023 | Liquid IP Holdings, LLC |
| SWIRLY POP | 97816426 | 2/28/2023 | Liquid IP Holdings, LLC |
| ZOOM | 97747407 | 1/9/2023 | Liquid IP Holdings, LLC |
| MY FIX | 97042534 | 9/23/2021 | The FIXX, LLC |
| THE FIXX | 90401771 | 12/22/2020 | The FIXX, LLC |
| ULTRA SOCIAL | 97522722 | 7/27/2022 | Ultra Experiences, LLC |

## U.S. Registrations

| Mark | Serial No. | Application Date | Reg. No. | Registration Date | Owner |
|---|---|---|---|---|---|
| B logo | 90792878 | 6/24/2021 | 6681154 | 3/22/2022 | Bang Vapes, LLC |
| BANG | 86598258 | 4/15/2015 | 4929022 | 8/11/2020 | Bang Vapes, LLC |
| BANG VAPOR | 86598261 | 4/15/2015 | 4929023 | 8/11/2020 | Bang Vapes, LLC |
| BANGVAPORIZERS | 86210260 | 3/4/2014 | 4744798 | 8/11/2020 | Bang Vapes, LLC |
| BANGVAPS | 86210253 | 3/4/2014 | 4744797 | 8/11/2020 | Bang Vapes, LLC |
| STOKED | 88/262,464 | 1/15/2019 | 6125441 | 8/11/2020 | Cognitive IP Holdings, LLC |
| B logo | 90104204 | 8/10/2020 | 6442903 | 8/3/2021 | Entourage IP Holdings, LLC |
| FROSÉ ROSÉ | 90188775 | 9/17/2020 | 6681210 | 3/22/2022 | Entourage IP Holdings, LLC |
| PURPLE KIDDLES | 90188748 | 9/17/2020 | 6465249 | 8/24/2021 | Entourage IP Holdings, LLC |

## International Filings

| Country | Mark | Filing Date | Serial No. | Reg. No. | Reg. Date | Owner |
|---|---|---|---|---|---|---|
| Argentina | BANG GYMS | 12/13/2021 | 4080358 4080359 4080360 | | | Bang Gyms, LLC |
| Australia/MADRID | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| Bahrain/MADRID | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| Brazil/Madrid | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| Canada/MADRID | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| Chile | BANG GYMS | 12/9/2021 | 1.486.113 | | | Bang Gyms, LLC |
| China/MADRID | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| Colombia/MADRID | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| EU/Madrid | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| Iceland/MADRID | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| India/MADRID | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| Iran/MADRID | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| Israel/Madrid | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| Japan/Madrid | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| Malaysia/Madrid | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| Mexico/MADRID | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| New Zealand/MADRID | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| Norway/MADRID | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| Peru | BANG GYMS | 12/9/2021 | 927603-2021 | 33154 | 3/31/2022 | Bang Gyms, LLC |
| Philippines/MADRID | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| Republic of Korea/Madrid | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |

| South Africa | BANG GYMS | 7/13/2021 | 2021/21255 2021/21256 2021/21257 | | | Bang Gyms, LLC |
|---|---|---|---|---|---|---|
| Switzerland/MADRID | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| Turkey/MADRID | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| UAE/MADRID | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| UK/Madrid | BANG GYMS | | | 1611300 | 7/12/2021 | Bang Gyms, LLC |
| Australia/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| Bolivia | AQUA FUSION | 7/27/2022 | SM-003488-2022 | | | Entourage |
| Brazil/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| Canada/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| Chile | AQUA FUSION | 7/6/2022 | 1.509.612 | | | Entourage |
| China/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| Colombia/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| Costa Rica | AQUA FUSION | 7/7/2022 | 2022-5923 | | | Entourage |
| Ecuador | AQUA FUSION | 7/12/2022 | SENADI-2022-54632 | | | Entourage |
| Egypt/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| EU/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| Guatemala | AQUA FUSION | 7/6/2022 | 2022-7181 | | | Entourage |
| India/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| Japan/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| Malaysia/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| Mexico/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| New Zealand/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| Norway/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| Oman/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| Peru | AQUA FUSION | 7/6/2022 | 959106-2022 | | | Entourage |
| Philippines/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |

US-DOCS\143035915.2

| Korea/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
|---|---|---|---|---|---|---|
| Russia/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| South Africa | AQUA FUSION | 2/9/2022 | 2022/03764 | | | Entourage |
| Taiwan | AQUA FUSION | 2/14/2022 | 111009105 | 2262729 | | Entourage |
| Thailand/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| UAE/MADRID | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| UK/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| Viet Nam/Madrid | AQUA FUSION | | | 1651655 | 2/8/2022 | Entourage |
| Argentina | B | 4/22/2021 | 4004968 | | | Entourage |
| Australia/MADRID | B | | 1588715 | | | Entourage |
| Bahrain/MADRID | B | | 1588715 | | | Entourage |
| Brazil/Madrid | B | | 1588715 | | | Entourage |
| Canada/MADRID | B | | 1588715 | | | Entourage |
| Chile | B | 4/23/2021 | 1432126 | | | Entourage |
| China/Madrid | B | | 1588715 | | | Entourage |
| Colombia/MADRID | B | | 1588715 | | | Entourage |
| Cyprus/Madrid | B | | 1588715 | | | Entourage |
| EU/Madrid | B | | 1588715 | | | Entourage |
| Iceland/Madrid | B | | 1588715 | | | Entourage |
| India/Madrid | B | | 1588715 | | | Entourage |
| Iran/Madrid | B | | 1588715 | | | Entourage |
| Israel/Madrid | B | | 1588715 | | | Entourage |
| Japan/Madrid | B | | 1588715 | | | Entourage |
| Malaysia/Madrid | B | | 1588715 | | | Entourage |
| Mexico/Madrid | B | | 1588715 | | | Entourage |
| New Zealand/Madrid | B | | 1588715 | | | Entourage |
| Norway/MADRID | B | | 1588715 | | | Entourage |
| Peru | B | 4/22/2021 | 894210-2021 | 312649 | 7/30/2021 | Entourage |
| Philippines/MADRID | B | | 1588715 | | | Entourage |
| Republic of Korea/Madrid | B | | 1588715 | | | Entourage |

157

| South Africa | B | 2/26/2021 | 2021/05428 | | | Entourage |
|---|---|---|---|---|---|---|
| Switzerland/Madrid | B | | 1588715 | | | Entourage |
| Turkey/Madrid | B | | 1588715 | | | Entourage |
| UK/Madrid | B | | 1588715 | | | Entourage |
| Argentina | B | 9/30/2021 | 4058058 | | | Entourage |
| Australia/MADRID | B | | | 1608103 | 6/10/2021 | Entourage |
| Bahrain/MADRID | B | | | 1608103 | 6/10/2021 | Entourage |
| Brazil/Madrid | B | | | 1608103 | 6/10/2021 | Entourage |
| Canada/MADRID | B | | | 1608103 | 6/10/2021 | Entourage |
| Chile | B | 9/24/2021 | 1.476.063 | | | Entourage |
| China/Madrid | B | | | 1608103 | 6/10/2021 | Entourage |
| Colombia/MADRID | B | | | 1608103 | 6/10/2021 | Entourage |
| EU/Madrid | B | | | 1608103 | 6/10/2021 | Entourage |
| Iceland/Madrid | B | | | 1608103 | 6/10/2021 | Entourage |
| India/Madrid | B | | | 1608103 | 6/10/2021 | Entourage |
| Israel/Madrid | B | | | 1608103 | 6/10/2021 | Entourage |
| Japan/Madrid | B | | | 1608103 | 6/10/2021 | Entourage |
| Malaysia/Madrid | B | | | 1608103 | 6/10/2021 | Entourage |
| Mexico/Madrid | B | | | 1608103 | 6/10/2021 | Entourage |
| New Zealand/Madrid | B | | | 1608103 | 6/10/2021 | Entourage |
| Norway/MADRID | B | | | 1608103 | 6/10/2021 | Entourage |
| Peru | B | | 915335-2021 | | | Entourage |
| Philippines/MADRID | B | | | 1608103 | 6/10/2021 | Entourage |
| Republic of Korea/Madrid | B | | | 1608103 | 6/10/2021 | Entourage |
| South Africa | B | 5/5/2021 | 2021/12962 | 2021/12962 | | Entourage |
| Switzerland/Madrid | B | | | 1608103 | 6/10/2021 | Entourage |
| Turkey/Madrid | B | | | 1608103 | 6/10/2021 | Entourage |
| UK/Madrid | B | | | 1608103 | 6/10/2021 | Entourage |
| Argentina | BANG | 1/27/2021 | 3978802 | | | Entourage |
| Australia/MADRID | BANG | | | 1550950 | 8/14/2020 | Entourage |

158

| Brazil/Madrid | BANG | | | 1550950 | 8/14/2020 | Entourage |
|---|---|---|---|---|---|---|
| Canada/MADRID | BANG | | | 1550950 | 8/14/2020 | Entourage |
| Chile | BANG | 1/15/2021 | 1.391.160 | | | Entourage |
| China/MADRID | BANG | | | 1550950 | 8/14/2020 | Entourage |
| Colombia/MADRID | BANG | | | 1550950 | 8/14/2020 | Entourage |
| Cyprus/Madrid | BANG | | | 1550950 | 8/14/2020 | Entourage |
| EU/Madrid | BANG | | | 1550950 | 8/14/2020 | Entourage |
| Iceland/MADRID | BANG | | | 1550950 | 8/14/2020 | Entourage |
| Iran/MADRID | BANG | | | 1550950 | 8/14/2020 | Entourage |
| Israel/Madrid | BANG | | | 1550950 | 8/14/2020 | Entourage |
| Japan/MADRID | BANG | | | 1550950 | 8/14/2020 | Entourage |
| Korea/Madrid | BANG | | | 1550950 | 8/14/2020 | Entourage |
| Malaysia/Madrid | BANG | | | 1550950 | 8/14/2020 | Entourage |
| Mexico/MADRID | BANG | | | 1550950 | 8/14/2020 | Entourage |
| New Zealand/MADRID | BANG | | | 1550950 | 8/14/2020 | Entourage |
| New Zealand | BANG | 2/23/2022 | 1203567 | | | Entourage |
| Norway/MADRID | BANG | | | 1550950 | 8/14/2020 | Entourage |
| Peru | BANG | 1/19/2021 | 880350-2021 | 309533 | 5/28/2021 | Entourage |
| Philippines/MADRID | BANG | | | 1550950 | 8/14/2020 | Entourage |
| South Africa | BANG | 8/17/2020 | 2020/20790 | 2020/20790 | | Entourage |
| South Africa | BANG | 2/26/2021 | 2021/05429 | | | Entourage |
| Switzerland/MADRID | BANG | | | 1550950 | 8/14/2020 | Entourage |
| Turkey/MADRID | BANG | | | 1550950 | 8/14/2020 | Entourage |
| UK/Madrid | BANG | | | 1550950 | 8/14/2020 | Entourage |
| Argentina | BANG | 9/30/2021 | 4058059 | | | Entourage |
| Australia/MADRID | BANG | | | 1600400 | 5/4/2021 | Entourage |
| Brazil/Madrid | BANG | | | 1600400 | 5/4/2021 | Entourage |
| Canada/MADRID | BANG | | | 1600400 | 5/4/2021 | Entourage |
| Chile | BANG | 9/24/2021 | 1.476.083 | | | Entourage |
| China/MADRID | BANG | | | 1600400 | 5/4/2021 | Entourage |

159

| Colombia/MADRID | BANG | | | 1600400 | 5/4/2021 | Entourage |
|---|---|---|---|---|---|---|
| EU/Madrid | BANG | | | 1600400 | 5/4/2021 | Entourage |
| Iceland/MADRID | BANG | | | 1600400 | 5/4/2021 | Entourage |
| India/MADRID | BANG | | | 1600400 | 5/4/2021 | Entourage |
| Israel/Madrid | BANG | | | 1600400 | 5/4/2021 | Entourage |
| Israel | BANG | 11/14/2022 | 358092 | | | Entourage |
| Japan/MADRID | BANG | | | 1600400 | 5/4/2021 | Entourage |
| Malaysia/Madrid | BANG | | | 1600400 | 5/4/2021 | Entourage |
| Mexico/MADRID | BANG | | | 1600400 | 5/4/2021 | Entourage |
| New Zealand/MADRID | BANG | | | 1600400 | 5/4/2021 | Entourage |
| Norway/MADRID | BANG | | | 1600400 | 5/4/2021 | Entourage |
| Peru | BANG | 1/19/2021 | 880350-2021 | P00309533 | 5/28/2021 | Entourage |
| Philippines/MADRID | BANG | | | 1600400 | 5/4/2021 | Entourage |
| Republic of Korea/Madrid | BANG | | | 1600400 | 5/4/2021 | Entourage |
| South Africa | BANG | 5/5/2021 | 2021/12965 | | | Entourage |
| Switzerland/MADRID | BANG | | | 1600400 | 5/4/2021 | Entourage |
| Turkey/MADRID | BANG | | | 1600400 | 5/4/2021 | Entourage |
| UK/Madrid | BANG | | | 1600400 | 5/4/2021 | Entourage |
| Argentina | BANG HARD SELTZER | 11/16/2021 | 4072621 | | | Entourage |
| Australia/MADRID | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
| Brazil/Madrid | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
| Canada/MADRID | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
| Chile | BANG HARD SELTZER | 11/16/2021 | 1.483.121 | | | Entourage |
| China/MADRID | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |

| Colombia/MADRID | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
|---|---|---|---|---|---|---|
| EU/Madrid | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
| Iceland/MADRID | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
| India/MADRID | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
| Israel/Madrid | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
| Japan/MADRID | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
| Malaysia/Madrid | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
| Mexico/MADRID | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
| New Zealand/MADRID | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
| Norway/MADRID | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
| Peru | BANG HARD SELTZER | 11/17/2021 | 924168-2021 | 327719 | 9/17/2021 | Entourage |
| Philippines/MADRID | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
| Republic of Korea/Madrid | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
| South Africa | BANG HARD SELTZER | 7/7/2021 | 2021/20621 | | | Entourage |
| Switzerland/MADRID | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
| Turkey/MADRID | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |

| UK/Madrid | BANG HARD SELTZER | | | 1611848 | 7/6/2021 | Entourage |
|---|---|---|---|---|---|---|
| Argentina | BLUE RAZZ | 9/3/2021 | 4058061 | | | Entourage |
| Australia/MADRID | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| Brazil/Madrid | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| Canada/MADRID | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| Chile | BLUE RAZZ | 9/24/2021 | 1.476.086 | 1379024 | 8/31/2022 | Entourage |
| China/MADRID | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| Colombia/MADRID | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| EU/Madrid | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| Iceland/MADRID | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| India/MADRID | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| Israel/MADRID | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| Japan/MADRID | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| Malaysia/Madrid | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| Mexico/MADRID | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| New Zealand/MADRID | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| Norway/MADRID | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| Philippines/MADRID | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| Peru | BLUE RAZZ | 9/18/2021 | 915338-2021 | 318275 | 12/9/2021 | Entourage |
| Republic of Korea/Madrid | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| South Africa | BLUE RAZZ | 5/5/2021 | 2021/12964 | | | Entourage |
| Switzerland/MADRID | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| Turkey/MADRID | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| UK/Madrid | BLUE RAZZ | | | 1601883 | 5/4/2021 | Entourage |
| Argentina | BLUE & YELLOW LIMONCELLO | 9/30/2021 | 4058062 | | | Entourage |
| Australia/MADRID | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |

| Brazil/Madrid | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
|---|---|---|---|---|---|---|
| Canada/MADRID | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
| Chile | BLUE & YELLOW LIMONCELLO | 9/24/2021 | 1.476.087 | 1.378.542 | 8/22/2022 | Entourage |
| China/MADRID | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
| Colombia/MADRID | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
| EU/Madrid | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
| Iceland/MADRID | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
| India/MADRID | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
| Israel/MADRID | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
| Japan/MADRID | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
| Malaysia/Madrid | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
| Mexico/MADRID | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
| New Zealand/MADRID | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
| Norway/MADRID | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
| Peru | BLUE & YELLOW LIMONCELLO | 9/18/2021 | 915339-2021 | 326803 | 12/3/2021 | Entourage |
| Philippines/MADRID | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |

163

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Republic of Korea/Madrid | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
| South Africa | BLUE & YELLOW LIMONCELLO | 5/5/2021 | 2021/12954 | | | Entourage |
| Switzerland/MADRID | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
| Turkey/MADRID | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
| UK/Madrid | BLUE & YELLOW LIMONCELLO | | | 1601363 | 5/4/2021 | Entourage |
| Argentina | GEORGIA PEACH | 9/30/2021 | 4058063 | | | Entourage |
| Australia/MADRID | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| Brazil/Madrid | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| Canada/MADRID | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| Chile | GEORGIA PEACH | 9/24/2021 | 1.476.089 | 1.379.025 | 8/31/2022 | Entourage |
| China/MADRID | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| Colombia/MADRID | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| EU/Madrid | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| Iceland/MADRID | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| India/MADRID | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| Israel/MADRID | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| Japan/MADRID | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| Malaysia/Madrid | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| Mexico/MADRID | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| New Zealand/MADRID | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| Norway/MADRID | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| Peru | GEORGIA PEACH | 9/18/2021 | 915340-2021 | 318144 | 12/3/2021 | Entourage |
| Philippines/MADRID | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| Republic of Korea/Madrid | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |

| South Africa | GEORGIA PEACH | 5/5/2021 | 2021/12963 | | | Entourage |
|---|---|---|---|---|---|---|
| Switzerland/MADRID | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| Turkey/MADRID | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| UK/Madrid | GEORGIA PEACH | | | 1599813 | 5/4/2021 | Entourage |
| Argentina | JUMP | 3/3/2021 | 3988367 | 3345485 | 11/11/2022 | Entourage |
| Australia/MADRID | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| Bahrain/MADRID | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| Brazil/Madrid | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| Canada/MADRID | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| Chile | JUMP | 3/5/2021 | 1397187 | 1363185 | 1/21/2022 | Entourage |
| Colombia/MADRID | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| Cyprus/Madrid | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| EU/Madrid | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| Iceland/MADRID | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| India/MADRID | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| Iran/MADRID | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| Israel/MADRID | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| Malaysia/Madrid | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| Mexico/MADRID | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| New Zealand/MADRID | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| Norway/MADRID | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| Peru | JUMP | | 886653-2021 | P00314532 | 9/10/2021 | Entourage |
| Philippines/MADRID | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| South Africa | JUMP | 2/23/2021 | 2021/05096 | | | Entourage |
| Switzerland/MADRID | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| Turkey/MADRID | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| UK/Madrid | JUMP | | | 1583909 | 2/22/2021 | Entourage |
| Argentina | LEMON DROP | 9/30/2021 | 4058064 | | | Entourage |
| Australia/MADRID | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| Brazil/Madrid | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |

165

| Canada/MADRID | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
|---|---|---|---|---|---|---|
| Chile | LEMON DROP | 9/24/2021 | 1.476.090 | 1.379.026 | 8/31/2022 | Entourage |
| China/MADRID | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| Colombia/MADRID | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| EU/Madrid | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| Iceland/MADRID | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| India/MADRID | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| Israel/MADRID | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| Japan/MADRID | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| Malaysia/Madrid | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| Mexico/MADRID | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| New Zealand/MADRID | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| Norway/MADRID | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| Peru | LEMON DROP | 9/18/2021 | 915341-2021 | | | Entourage |
| Philippines/MADRID | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| Republic of Korea/Madrid | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| South Africa | LEMON DROP | 5/5/2021 | 2021/12966 | | | Entourage |
| Switzerland/MADRID | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| Turkey/MADRID | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| UK/Madrid | LEMON DROP | | | 1599942 | 5/4/2021 | Entourage |
| Australia/MADRID | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| Bahrain | MIAMI ENERGY | 11/30/2022 | 137545 | | | Entourage |
| Bolivia | MIAMI ENERGY | 11/1/2022 | SM-005131-2022 | | | Entourage |
| Brazil/Madrid | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| Canada/MADRID | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| Chile | MIAMI ENERGY | 10/21/2022 | 1.521.958 | | | Entourage |
| China/MADRID | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |

US-DOCS\143035915.2

| Colombia/MADRID | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
|---|---|---|---|---|---|---|
| Costa Rica | MIAMI ENERGY | 10/28/2022 | 2022-9517 | | | Entourage |
| Ecuador | MIAMI ENERGY | 10/20/2022 | SENADI-2022-82116 | | | Entourage |
| Egypt/MADRID | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| EU/Madrid | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| Guatemala | MIAMI ENERGY | 10/18/2022 | 2022-11312 | | | Entourage |
| India/MADRID | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| Indonesia/MADRID | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| Japan/MADRID | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| Malaysia/Madrid | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| Mexico/MADRID | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| New Zealand/MADRID | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| Norway/MADRID | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| Oman/MADRID | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| Peru | MIAMI ENERGY | 10/21/2022 | 974511-2022 | | | Entourage |
| Philippines/MADRID | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| Republic of Korea/Madrid | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| Russia/MADRID | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| South Africa | MIAMI ENERGY | 7/6/2022 | 2022/20525 | | | Entourage |
| Taiwan | MIAMI ENERGY | 7/11/2022 | 111048884 | | | Entourage |
| Thailand/Madrid | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| UK/Madrid | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| Vietnam/MADRID | MIAMI ENERGY | | | 1674869 | 7/1/2022 | Entourage |
| Australia/MADRID | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| Bahrain | MIAMI UNICORN | 11/30/2022 | 137546 | | | Entourage |
| Bolivia | MIAMI UNICORN | 11/1/2022 | SM-005132-2022 | | | Entourage |

167

| Brazil/Madrid | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
|---|---|---|---|---|---|---|
| Canada/MADRID | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| Chile | MIAMI UNICORN | 10/21/2022 | 1.521.959 | | | Entourage |
| China/MADRID | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| Costa Rica | MIAMI UNICORN | 10/28/2022 | 2022-9516 | | | Entourage |
| Ecuador | MIAMI UNICORN | 10/20/2022 | SENADI-2022-82116 | | | Entourage |
| Egypt/MADRID | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| EU/Madrid | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| Guatemala | MIAMI UNICORN | 10/18/2022 | 2022-11311 | | | Entourage |
| India/MADRID | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| Indonesia/MADRID | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| Japan/MADRID | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| Malaysia/Madrid | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| Mexico/MADRID | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| New Zealand/MADRID | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| Norway/MADRID | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| Oman/MADRID | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| Peru | MIAMI UNICORN | 10/21/2022 | 974508-2022 | | | Entourage |
| Philippines/MADRID | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| Republic of Korea/Madrid | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| Russia/MADRID | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| South Africa | MIAMI UNICORN | 7/6/2022 | 2022/20537 | | | Entourage |
| Taiwan | MIAMI UNICORN | 12/20/2022 | 111091427 | | | Entourage |
| Thailand/MADRID | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| UAE/MADRID | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| UK/Madrid | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |
| Vietnam/MADRID | MIAMI UNICORN | | | 1706328 | 12/6/2022 | Entourage |

| Argentina | PLANET POMEGRANATE | 9/30/2021 | 4058065 | | | Entourage |
|---|---|---|---|---|---|---|
| Australia/MADRID | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| Brazil/Madrid | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| Canada/MADRID | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| Chile | PLANET POMEGRANATE | 9/24/2021 | 1.476.091 | | | Entourage |
| China/MADRID | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| Colombia/MADRID | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| EU/Madrid | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| Iceland/MADRID | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| India/MADRID | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| Israel/MADRID | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| Japan/MADRID | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| Malaysia/Madrid | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| Mexico/MADRID | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| New Zealand/MADRID | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| Norway/MADRID | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |

| Peru | PLANET POMEGRANATE | 9/18/2021 | 915342-2021 | 318276 | 12/9/2021 | Entourage |
|---|---|---|---|---|---|---|
| Philippines/MADRID | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| Republic of Korea/Madrid | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| South Africa | PLANET POMEGRANATE | 5/5/2021 | 2021/12953 | | | Entourage |
| Switzerland/MADRID | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| Turkey/MADRID | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| UK/Madrid | PLANET POMEGRANATE | | | 1601368 | 5/4/2021 | Entourage |
| Argentina | WYLDIN' WATERMELON | 7/16/2021 | 4033474 | | | Entourage |
| Argentina | WYLDIN' WATERMELON | 9/30/2021 | 4058066 | | | Entourage |
| Australia/MADRID | WYLDIN' WATERMELON | | 1593029 | | | Entourage |
| Australia/MADRID | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| Brazil/Madrid | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| Brazil/Madrid | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| Canada/MADRID | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| Canada/MADRID | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| Chile | WYLDIN' WATERMELON | 9/24/2021 | 1.468.199 | 1378543 | 11/30/2022 | Entourage |

| Chile | WYLDIN' WATERMELON | 9/24/2021 | 1.476.084 | | | Entourage |
|---|---|---|---|---|---|---|
| China/MADRID | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| China/MADRID | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| Colombia/MADRID | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| Colombia/MADRID | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| EU/Madrid | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| EU/Madrid | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| Iceland/MADRID | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| Iceland/MADRID | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| India/MADRID | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| India/MADRID | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| Israel/MADRID | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| Israel/MADRID | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| Japan/MADRID | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| Japan/MADRID | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| Malaysia/Madrid | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |

US-DOCS\143035915.2

| Malaysia/Madrid | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
|---|---|---|---|---|---|---|
| Mexico/MADRID | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| Mexico/MADRID | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| New Zealand/MADRID | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| New Zealand/MADRID | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| Norway/MADRID | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| Norway/MADRID | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| Peru | WYLDIN' WATERMELON | 7/20/2021 | 906722-2021 | P00329951 | 8/12/2022 | Entourage |
| Peru | WYLDIN' WATERMELON | | 915343-2021 | 329951 | | Entourage |
| Peru | WYLDIN' WATERMELON | 4/28/2022 | 947964-2022 | | | Entourage |
| Philippines/MADRID | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| Philippines/MADRID | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| Republic of Korea/Madrid | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| Republic of Korea/Madrid | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| South Africa | WYLDIN' WATERMELON | 4/7/2021 | 2021/10039 | | | Entourage |
| South Africa | WYLDIN' WATERMELON | 5/5/2021 | 2021/12956 | | | Entourage |

172

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Switzerland/MADRID | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| Switzerland/MADRID | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| Turkey/MADRID | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| Turkey/MADRID | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| UK/Madrid | WYLDIN' WATERMELON | | | 1593029 | 4/6/2021 | Entourage |
| UK/Madrid | WYLDIN' WATERMELON | | | 1601492 | 5/4/2021 | Entourage |
| Argentina | YES | 9/30/2021 | 4058069 | | | Entourage |
| Australia/MADRID | YES | | 1596761 | | | Entourage |
| Brazil/Madrid | YES | | 1596761 | | | Entourage |
| Canada/MADRID | YES | | 1596761 | | | Entourage |
| Chile | YES | 9/22/2021 | 1.475.634 | | | Entourage |
| China/MADRID | YES | | 1596761 | | | Entourage |
| Colombia/MADRID | YES | | 1596761 | | | Entourage |
| EU/Madrid | YES | | 1596761 | | | Entourage |
| Iceland/MADRID | YES | | 1596761 | | | Entourage |
| India/MADRID | YES | | 1596761 | | | Entourage |
| Israel/MADRID | YES | | 1596761 | | | Entourage |
| Japan/MADRID | YES | | 1596761 | | | Entourage |
| Malaysia/Madrid | YES | | 1596761 | | | Entourage |
| Mexico/MADRID | YES | | 1596761 | | | Entourage |
| New Zealand/MADRID | YES | | 1596761 | | | Entourage |
| Norway/MADRID | YES | | 1596761 | | | Entourage |
| Peru | YES | | 915346-2021 | | | Entourage |
| Philippines/MADRID | YES | | 1596761 | | | Entourage |

173

| Republic of Korea/Madrid | YES | | 1596761 | | | Entourage |
|---|---|---|---|---|---|---|
| South Africa | YES | 4/26/2021 | 2021/11856 | 2021/11856 | | Entourage |
| Switzerland/Madrid | YES | | 1596761 | | | Entourage |
| Turkey/Madrid | YES | | 1596761 | | | Entourage |
| UK/Madrid | YES | | 1596761 | | | Entourage |
| Argentina | ZOOZ | 12/30/2020 | 3972163 | 3341483 | 11/11/2022 | Entourage |
| Australia/MADRID | ZOOZ | | | 1573338 | | Entourage |
| Bahrain/MADRID | ZOOZ | | | 1573338 | | Entourage |
| Brazil/Madrid | ZOOZ | | | 1573338 | | Entourage |
| Canada/MADRID | ZOOZ | | | 1573338 | | Entourage |
| Chile | ZOOZ | 12/30/2020 | 1.389.401 | | | Entourage |
| Colombia/MADRID | ZOOZ | | | 1573338 | | Entourage |
| EU/Madrid | ZOOZ | | | 1573338 | | Entourage |
| Iceland/MADRID | ZOOZ | | | 1573338 | | Entourage |
| India/MADRID | ZOOZ | | | 1573338 | | Entourage |
| Iran/MADRID | ZOOZ | | | 1573338 | | Entourage |
| Israel/MADRID | ZOOZ | | | 1573338 | | Entourage |
| Malaysia/Madrid | ZOOZ | | | 1573338 | | Entourage |
| Mexico/MADRID | ZOOZ | | | 1573338 | | Entourage |
| New Zealand/MADRID | ZOOZ | | | 1573338 | | Entourage |
| Norway/MADRID | ZOOZ | | | 1573338 | | Entourage |
| Peru | ZOOZ | 12/29/2020 | 877711-2020 | 309061 | 5/21/2021 | Entourage |
| Philippines/MADRID | ZOOZ | | | 1573338 | | Entourage |
| South Africa | ZOOZ | 1/4/2021 | 2021/00039 | | | Entourage |
| Switzerland/MADRID | ZOOZ | | | 1573338 | | Entourage |
| Turkey/MADRID | ZOOZ | | | 1573338 | | Entourage |
| UK/Madrid | ZOOZ | | | 1573338 | | Entourage |
| Argentina | THE FIXX | 2/26/2021 | 3987151 3987153 | 3311818 3311856 | 8/3/2022 | The Fixx, LLC |

174

| | | | | 3987154 | 3311857 | | |
| | | | | 3987155 | 3311858 | | |
| | | | | 3987156 | 3311819 | | |
| | | | | 3987157 | 3311787 | | |
| | | | | 3987158 | 3311859 | | |
| | | | | | 3311820 | | |
| Australia/MADRID | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| Bahrain/MADRID | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| Brazil/Madrid | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| Canada/MADRID | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| Chile | THE FIXX | 3/3/2021 | 1.396.918 | | | | The Fixx, LLC |
| China/MADRID | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| Colombia/MADRID | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| Cyprus/Madrid | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| EU/Madrid | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| Iceland/MADRID | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| India/MADRID | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| Iran/MADRID | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| Israel/MADRID | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| Japan/MADRID | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| Malaysia/Madrid | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| Mexico/MADRID | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| New Zealand/MADRID | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| Norway/MADRID | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| Peru | THE FIXX | 2/26/2021 | 886104 - 2021 | 32486 | | 12/2/2021 | The Fixx, LLC |
| Philippines/MADRID | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| Republic of Korea/Madrid | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| South Africa | THE FIXX | 1/4/2021 | 2021/00069 - 00076 | | | | The Fixx, LLC |
| Switzerland/Madrid | THE FIXX | | | | 1584704 | 2/17/2021 | The Fixx, LLC |

175

| Turkey/Madrid | THE FIXX | | | 1584704 | 2/17/2021 | The Fixx, LLC |
| UK/Madrid | THE FIXX | | | 1584704 | 2/17/2021 | The Fixx, LLC |

US-DOCS\143035915.2

**Section 5.11(e)**
**Intellectual Property Violations**

| Jurisdiction | Matter Title | Proceeding Number | Filing Date | Plaintiffs | Defendants |
|---|---|---|---|---|---|
| United States (USPTO) | JHO Intellectual Property Holdings, LLC, Elite IP Holdings, LLC v. Sherbrooke, Jake | 91269901 | 06/15/2021 | JHO Intellectual Property Holdings, LLC and Elite IP Holdings, LLC | Jake Sherbrooke |
| United States (USPTO) | JHO Intellectual Property Holdings, LLC v. White Rhino U.S.A., LLC | 91284593 | 04/20/2023 | JHO Intellectual Property Holdings, LLC | White Rhino U.S.A., LLC |
| United States (USPTO) | Elite IP Holdings, LLC v. USN North America Inc. | 91271040 | 08/12/2021 | Elite IP Holdings, LLC | USN North America Inc. |
| United States (USPTO) | Vital Pharmaceuticals, Inc. v. Jump Foods, LLC | 92078228 | 10/13/2021 | Vital Pharmaceuticals, Inc. | Jump Foods, LLC |
| United States (USPTO) | JHO Intellectual Property Holdings, LLC v. Keith McCurdy LLC | 91263634 | 07/15/2020 | JHO Intellectual Property Holdings, LLC | Keith McCurdy LLC |
| United States (USPTO) | Elite IP Holdings, LLC v. Bang Diamonds LLC | 91271322 | 08/26/2021 | Elite IP Holdings, LLC | Bang Diamonds LLC |

| Jurisdiction | Petitioner | Defendant | Proceeding Number | Filing Date | Trademark(s) in issue |
|---|---|---|---|---|---|
| Korea | JHO Intellectual Property Holdings, LLC | BANGBANG Apparel Co., Ltd. | 2022dang3337 | 11/30/2022 | BANG |
| Korea | JHO Intellectual Property Holdings, LLC | BANGBANG Apparel Co., Ltd. | 2022dang2395 | 8/26/2022 | BANG FOODS |
| Korea | JHO Intellectual Property Holdings, LLC | BANGBANG Apparel Co., Ltd. | 2022dang2396 | 8/27/2022 | BANG FOODS |
| Korea | JHO Intellectual Property Holdings, LLC | BANGBANG Apparel Co., Ltd. | 2022dang2397 | 8/28/2022 | BANG FOODS |
| Korea | JHO Intellectual Property Holdings, LLC | BANGBANG Apparel Co., Ltd. | 2022dang2398 | 8/29/2022 | BANG FOODS |
| Korea | JHO Intellectual Property Holdings, LLC | BANGBANG Apparel Co., Ltd. | 2022dang2399 | 8/30/2022 | BANG FOODS |
| TÜRKİYE | ELITE IP HOLDINGS, LLC | SENSO KOZMETİK ÜRÜN. TURZ. SAN. VE TİC. LTD. ŞTİ. | 2022/104 | 4/28/2022 | QUASH TM |
| Mainland, China | JHO Intellectual Property Holdings, LLC | COFCO Womai Network Investment Co., Ltd | 20972853 | 7/28/2021 | BIGBANGENERGY |
| Mainland, China | JHO Intellectual Property Holdings, LLC | COFCO Womai Network Investment Co., Ltd | 22873834 | 7/29/2021 | BIGBANGENERGY |
| Mainland, China | JHO Intellectual Property Holdings, LLC | COFCO Womai Network Investment Co., Ltd | 20972619 | 7/30/2021 | BIGBANGENERGY |
| Mainland, China | JHO Intellectual Property Holdings, LLC | Shanghai Pubang Food Ingredients Co., Ltd | 1639087 | 2/16/2022 | 浦帮 BANG and device |
| Mainland, China | JHO Intellectual Property Holdings, LLC | Shanghai Sunqiao Modern Agriculture Joint Development Co., Ltd | 3015063 | 3/3/2022 | Q |
| Mainland, China | JHO Intellectual Property Holdings, LLC | Beijing Binbin Youli Network Technology Co., Ltd | 28669202 | 3/16/2022 | 彬彬 BANG |

178

| Jurisdiction | Petitioner | Defendant | Proceeding Number | Filing Date | Trademark(s) in issue |
|---|---|---|---|---|---|
| Mainland, China | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | Fujian Qilu Internet of Things Technology Co., Ltd | 7498292 | 07/01/2022 | VOOZZ and device |
| Mainland, China | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | Hangzhou Yuefeng Printing Materials Co., Ltd | 9257745 | 07/01/2022 | VOZ-7 |
| Mainland, China | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | SUNBROS CO.,LTD. | 5385665 | 07/08/2022 | QUASH |
| Mainland, China | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | Beijing Likonai Catering Co., Ltd | 15630709 | 04/06/2023 | 独角兽 |
| Mainland, China | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | Shanghai Junyi Cultural Development Co., Ltd | 16255189 | 04/06/2023 | UNICORN and device |
| Canada | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | Bhang Corporation | TMA1052625 | 10/19/2022 | BHANG |
| European Union | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | Exit Plan sp. z o.o. | I22613EU00 | 4/27/2022 | BANG-ON BALLS |
| European Union | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | NL INTERNATIONAL HOLDING LTD | I23051EU00 | 9/26/2022 | smartgo |
| Spain | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | GIMENO CHOLLET, Marc and DAMERINI, Dario | I23627ES00 | 1/16/2023 | BAANG EVENTS |
| European Union | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | Planetary Pinball Supply, Inc. | I23980EU00 | 4/13/2023 | BIG BANG |

US-DOCS\143035915.2

| Jurisdiction | Petitioner | Defendant | Proceeding Number | Filing Date | Trademark(s) in issue |
|---|---|---|---|---|---|
| European Union | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | Planetary Pinball Supply, Inc. | I23981EU00 | 4/13/2023 | BIG BANG BAR |
| New Zealand | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | Orange Bang, Inc. | 7207 | 5/8/2023 | BANG |
| Paraguay | Vital Pharmaceuticals, Inc. | INTERCONTINENTAL GREAT BRANDS LLC | 91361/2018 | 11/7/2022 | TANG PLUS |
| Paraguay | Vital Pharmaceuticals, Inc. | INTERCONTINENTAL GREAT BRANDS LLC | 91362/2018 | 11/7/2022 | TANG |
| Venezuela | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | GRUPO BRANDSIMEX, C.A. | 2021-004787 | 7/13/2022 | BANG |
| Venezuela | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | GRUPO BRANDSIMEX, C.A. | 2021-004788 | 7/13/2022 | BANG |
| Venezuela | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | GRUPO BRANDSIMEX, C.A. | 2021-004789 | 7/13/2022 | BANG |
| Venezuela | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | INTERCONTINENTAL GREAT BRANDS LLC | 2021-004239 | 7/13/2022 | TANG |
| Mexico | ELITE IP HOLDINGS, LLC | COMERCIALIZADORA DE JALISCO, S. DE R.L. DE C.V. | 3304 | 12/17/2021 | Q |
| Mexico | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | THE COCA-COLA COMPANY | 132519 | 4/21/2022 | LEMON DROP |
| Mexico | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | THE COCA-COLA COMPANY | 132524 | 4/21/2022 | LEMON DROP |

180

| Jurisdiction | Petitioner | Defendant | Proceeding Number | Filing Date | Trademark(s) in issue |
|---|---|---|---|---|---|
| Mexico | ELITE IP HOLDINGS, LLC | CANTINE RIUNITE & CIV- SOCIETA COOPERATIVA AGRICOLA | 346190 | 3/19/2021 | VIBRATE |
| Dominican Republic | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | INTERCONTINENTAL GREAT BRANDS LLC. | 2018-448840 | 1/13/2021 | TANG |
| Dominican Republic | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | INTERCONTINENTAL GREAT BRANDS LLC. | 20126 | 2/26/2021 | TANG |
| Dominican Republic | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | INTERCONTINENTAL GREAT BRANDS LLC. | 137853 | 2/26/2021 | TANG |
| Dominican Republic | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | INTERCONTINENTAL GREAT BRANDS LLC. | 245774 | 2/26/2021 | TANG |
| Dominican Republic | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | INTERCONTINENTAL GREAT BRANDS LLC. | 214188 | 2/26/2021 | TANG |
| Dominican Republic | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | DUPOCSA PROTECTORES QUIMICOS PARA EL CAMPO, S.A. | 150689 | 4/10/2022 | STOKED |
| Chile | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | Empresas Demaría S.A. | 1359972 | 10/9/2020 | Bang |
| Chile | ELITE IP HOLDINGS, LLC | Empresas Demaría S.A. | 1376955 | 11/9/2022 | Bang |
| Chile | ELITE IP HOLDINGS, LLC | Empresas Demaría S.A. | 1376958 | 9/9/2021 | Bang |
| Chile | ELITE IP HOLDINGS, LLC | Empresas Demaría S.A. | 1385669 | 1/17/2023 | Bang |
| Chile | ELITE IP HOLDINGS, LLC | Empresas Demaría S.A. | 1397346 | 11/4/2022 | Bang |

US-DOCS\143035915.2

| Jurisdiction | Petitioner | Defendant | Proceeding Number | Filing Date | Trademark(s) in issue |
|---|---|---|---|---|---|
| Chile | ELITE IP HOLDINGS, LLC | Prisma Water SPA | 1380729 | 2/23/2022 | Prisma |
| Chile | ELITE IP HOLDINGS, LLC | Worldquery Spa | 1389404 | 11/8/2021 | BOOZ |
| Chile | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | Worldquery Spa | 1488533 | 9/29/2022 | BOOZ |
| Chile | ELITE IP HOLDINGS, LLC | LABORATORIO MAVER S.A. | 1475636 | 5/13/2022 | YES |
| Chile | ELITE IP HOLDINGS, LLC | INVERSIONES PUCON S.A. | 1475637 | 5/13/2022 | Yes Servimarket |
| Chile | ELITE IP HOLDINGS, LLC | WORLDQUERY SPA | 1389401 | 11/8/2021 | BOOZ |
| Bolivia | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | ALCA GROUP S.R.L. | OP-000375-2021 | 11/15/2021 | BANG ENERGY DRINK |
| Bolivia | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | Intercontinental Great Brands LLC | CAN-10-2022 | 3/9/2022 | TANG |
| Bolivia | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | Intercontinental Great Brands LLC | CAN-11-2022 | 3/9/2022 | TANG |
| Bolivia | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | Intercontinental Great Brands LLC | CAN-12-2022 | 3/9/2022 | TANG |
| Bolivia | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | Intercontinental Great Brands LLC | CAN-13-2022 | 3/9/2022 | TANG |
| Bolivia | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | Intercontinental Great Brands LLC | CAN-14-2022 | 3/9/2022 | TANG |

| Jurisdiction | Petitioner | Defendant | Proceeding Number | Filing Date | Trademark(s) in issue |
|---|---|---|---|---|---|
| Bolivia | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | HGWBOLIVIA LIMITED CORPORATION S.R.L. | OP-173-2023 | 5/5/2023 | BLUE BERRY BANG BANG |
| Bolivia | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | HGWBOLIVIA LIMITED CORPORATION S.R.L. | OP-172-2023 | 5/5/2023 | BLUE BERRY BANG BANG |
| Argentina | ELITE IP HOLDINGS, LLC | CRUZ, AGUSTIN | 690973 | 8/19/2021 | BANGS |
| Argentina | ELITE IP HOLDINGS, LLC | CRUZ, AGUSTIN | 690973 | 8/19/2021 | BANGS RECORDS |
| Argentina | ELITE IP HOLDINGS, LLC | CRUZ, AGUSTIN | 692378 | 8/19/2021 | BANGS |
| Argentina | ELITE IP HOLDINGS, LLC | CRUZ, AGUSTIN | 692379 | 8/19/2021 | BANGS RECORDS |
| Argentina | ELITE IP HOLDINGS, LLC | SANTIAGO JORGE ANDRES WIART and VANINA JAZMIN CHEIJ ROSSI | 697704 | 3/3/2022 | [ BANG ] BUENOS AIRES |
| Nicaragua | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | LIMENTOS MARAVILLA, SOCIEDAD ANONIMA | 2018-003167 | 10/5/2018 | BANG KOK |
| Peru | ELITE IP HOLDINGS, LLC | GNC Holdings, LLC | 976953-2022 | 11/9/2022 | GNC PRSIM |
| Peru | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | BHIP GLOBAL PERU S.A.C. | 10147-2023 | 5/13/2022 | P PURPLE CAPS & Design |
| Ecuador | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | HEALTHY GREEN WORLD ECUADOR HEALTHY ECUADOR S.A. | SENADI-2022-46089 | 5/10/2022 | BLUE BERRY BANG BANG y diseño de caracteres chinos, class 32 |
| Ecuador | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | HEALTHY GREEN WORLD ECUADOR HEALTHY ECUADOR S.A. | SENADI-2022-46090 | 5/10/2022 | BLUE BERRY BANG BANG y diseño de caracteres chinos, class 30 |

| Jurisdiction | Petitioner | Defendant | Proceeding Number | Filing Date | Trademark(s) in issue |
|---|---|---|---|---|---|
| Colombia | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | HANPROTEIN COLOMBIA S.A.S. | SD2023/0010191 | 2/10/2023 | SMART SUPPLEMENT |
| Colombia | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | GLOBAL BASH INC S.A.S. | SD2023/0002963 | 1/17/2023 | BASH! ENERGY DRINK |
| Colombia | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | GLOBAL BASH INC S.A.S. | SD2023/0002963 | 1/17/2023 | BASH! ENERGY DRINK |
| Brazil | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | CLÁUDIO ROCHA GOMES PEREIRA - ME | Protocol 850220290491 | 7/6/2022 | BANG BEER CERVEJA ARTESANAL (w&d) |
| Brazil | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | CITROSUCO S/A AGROINDÚSTRIA | Protocol 850220142151 | 4/6/2022 | NEOFUSION |
| Brazil | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | CITROSUCO S/A AGROINDÚSTRIA | Protocol 850220142159 | 4/6/2022 | neofusion (w&d) |
| Brazil | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | CITROSUCO S/A AGROINDÚSTRIA | Protocol 850220142160 | 4/6/2022 | neofusion (w&d) |
| Brazil | JHO INTELLECTUAL PROPERTY HOLDINGS, LLC | RODRIGO MACHADO FARIAS ME | Protocol 850220230125 | 5/31/2022 | STOKED (w&d) |
| Brazil | VITAL PHARMACEUTICALS, INC. | T R GUILHERME PROMOÇÕES DE VENDAS | Protocol 850220195209 | 5/11/2022 | Dietox30 (w&d) |
| Brazil | ELITE IP HOLDINGS, LLC. | ISABELA LOPES CANCADO E SOUSA 05941439695 | Protocol 850220303734 | 7/13/2022 | VIBRA CAFÉ ENERGÉTICO NATURAL (w&d) |

**Section 5.12**
**Data Privacy**

1. On May 9, 2023, unknown third parties gained access to the Seller's Facebook Ad account (the "Facebook Account"), removing its ability to make any changes to the Facebook Account.  The Facebook Account was linked to the Seller's Instagram and other social media accounts, which have since been unlinked, and an employee's credit card, which appears to have had no subsequent fraudulent activity is being replaced.  On the same day, the Seller secured, and changed the passwords to, the linked Instagram and other social media accounts.  There appears to have been no adverse consequences, and the Seller has since regained control of the Facebook Account.

2. Following John H. Owoc's termination from the Seller detailed in item 1 of Section 5.7 of this Disclosure Schedule, Mr. Owoc retained, and continues to retain, one or more Seller-issued electronic devices, including mobile phones and computer equipment, at least one of which is understood to contain historical Seller documents and emails.  The Seller is seeking appropriate relief from the Bankruptcy Court in connection with this issue, and has taken steps necessary to terminate all server access at the time of Mr. Owoc's termination.

**Section 5.13**
**Taxes**

1. In a communication, dated February 10, 2023, the IRS advised the Seller that its federal income tax returns for the calendar years 2020 and 2021 have been selected for examination, and requested initial documents, which have been provided and which examination is ongoing.

2. Set forth below is a set of tax claims pending resolution:

| Debtor | Creditor Name | Type of Tax | Year of Debt | State | Total from POC Form |
|---|---|---|---|---|---|
| Vital Pharmaceuticals, Inc. | WA Department of Revenue | Excise Tax – Gross Receipt Tax | 2022 | WA | $286,995.77 |
| Vital Pharmaceuticals, Inc. | North Carolina Department of Revenue | SUT | 2022 | NC | $125,151.12 |
| Vital Pharmaceuticals, Inc. | Internal Revenue Service | Excise/Corp | 2017, 2019, 2020, 2021 | PA | $112,352.50 |
| Vital Pharmaceuticals, Inc. | Florida Department of Revenue, Bankruptcy Unit | SUT | 2022 | FL | $81,672.65 |
| Vital Pharmaceuticals, Inc. | Ohio Department of Taxation | Ohio Taxes | 2020 | OH | $71,241.48 |
| Vital Pharmaceuticals, Inc. | Ohio Department of Taxation | With, SUT, CAT | 2021/2022 | OH | $69,562.12 |
| Quash Seltzer, Inc. | Florida Department of Revenue, Bankruptcy Unit | SUT | 2022 | FL | $47,449.50 |
| Vital Pharmaceuticals, Inc. | Oregon Department of Revenue | Commercial | 2020 | OR | $38,597.63 |
| Vital Pharmaceuticals, Inc. | New York State Department of Taxation and Finance | Tax Liabilities | 2011-2014 | NY | $9,367.09 |
| Vital Pharmaceuticals, Inc. | Florida Department of Revenue, Bankruptcy Unit | SUT | 2022 | FL | $6,867.18 |
| Vital Pharmaceuticals, Inc. | North Carolina Department of Revenue | SUT | 2022 | NC | $4,048.85 |

| Quash Seltzer, Inc. | Franchise Tax Board | Franchise Tax | 2021/2022 | CA | $1,812.12 |
|---|---|---|---|---|---|
| Quash Seltzer, Inc. | Rhode Island Division of Taxation | Corporate Tax | 2020, 2021 | RI | $1,018.55 |
| Vital Pharmaceuticals, Inc. | Mississippi Department of Revenue | Corporate and Franchise | 2020 | MS | $656.00 |

## Section 5.14
## Insurance

All insurance policies listed below constitute Excluded Assets and will not be transferred to the Buyer in connection with the Transactions.  The Buyer will need to obtain these insurance policies in its own name.

| Policy | Issuer | Period of Coverage |
|---|---|---|
| Workmen's Compensation | Federal Insurance Company | 5/31/2022-7/31/2023 |
| Commercial Property | Subscription[1] | 5/31/2023-5/31/2024 |
| Commercial Property | Federal Insurance Company | 5/31/2023-7/31/2023 |
| Commercial Property | Subscription[2] | 5/31/2023-5/31/2024 |
| Commercial Property | AXIS Surplus Insurance Company | 5/31/2023-5/31/2024 |
| Commercial Property | Arch Specialty Insurance Company | 5/31/2023-5/31/2024 |
| Commercial Property | Aspen Specialty Insurance Company | 5/31/2023-5/31/2024 |
| Commercial Property | Landmark American Insurance Company | 5/31/2023-5/31/2024 |
| Commercial Property | Lexington Insurance Company | 5/31/2023-5/31/2024 |
| Commercial Property | RLI Insurance Company | 5/31/2023-5/31/2024 |
| Stock Thru Put / Cargo / Inventory | Certain Underwriters at Lloyds | 5/31/2023-5/31/2024 |
| Commercial Auto | Great Northern Insurance Company | 5/31/2023-7/31/2023 |
| Excess Liability ($5M) | Federal Insurance Company | 5/31/2023-7/31/2023 |
| D&O | Federal Insurance Company | 9/30/2022-9/30/2023 |
| EPLI | Federal Insurance Company | 6/1/2023-10/31/2024 |
| Foreign Policy/International Package[3] | American International Group | 6/1/2023-5/31/2024 |

---

[1] The underwriters for this subscription policy are (i) Lloyd's of London (14.5%); (ii) GeoVera Specialty Insurance Company (10%); (iii) HDI Global Specialty SE (2.99%); (iv) Indian Harbor Insurance Company (6.5%); (v) Lexington Insurance company (13%); (vi) National Fire & Marine Insurance Company (8.99%); (vii) Old Republic Insurance Company (6%); (viii) QBE Insurance Corporation (10.5%); (ix) Spinnaker Specialty Insurance Company (2%); (x) Steadfast Insurance Company (12%); (xi) Transverse Specialty Insurance Company (11.49%); and (xii) United Specialty Insurance Company (2%).

[2] The underwriters for this subscription policy are (i) Lloyd's of London (10%); and (ii) Mt. Hawley Insurance Company (90%).

[3] This policy package covers Bang Energy BV, Bang Energy Canada ULC, Bang Energy Australia Pty Ltd and Bang Energy Mexico, S de R.L. de C.V.

| Policy | Issuer | Period of Coverage |
|---|---|---|
| Boiler & Machinery | Travelers Property Casualty of America | 6/1/2023-10/31/2024 |
| Liquor – Quash | Colony Insurance Company / Navigators Insurance Company | 6/1/2023-5/31/2024 |
| General Liability | Certain Underwriters at Lloyds | 1/30/2023-5/31/2024 |
| Flood Insurance (GA) | Wright National Flood Insurance Company | 9/22/2022-9/22/2023 |
| Foreign Liability | American International Group, Inc. | 7/1/2023-5/31/2024 |
| Boiler & Machinery | Travelers Property Casualty Company of America | 5/31/2023-5/31/2024 |

**Section 5.15**
**Title to Assets; Real Property**

(a)

1. <u>Section 2.1(f)</u> of this Disclosure Schedule is incorporated by reference herein.

2. Certain vehicles used in the Business are financed and insured in the name of Vital Pharmaceuticals, Inc. These insurance arrangements will need to be replaced by the Buyer at Closing. <u>Section 1.1(b)</u> and <u>Schedule 1.1(b)</u> of this Disclosure Schedule are incorporated by reference herein.

3. The Truist Agreement.

4. As noted in <u>Section 1.1(b)</u> of this Disclosure Schedule, there are Mechanics Liens on Owned Real Property. <u>Section 1.1(b)</u> of this Disclosure Schedule is incorporated by reference herein.

5. There are four 'Bang Energy' NFTs (see https://opensea.io/bangenergy). The NFTs were minted using Seller resources. It is unclear who owns or possesses the wallet, but the Seller expects that it is Megan E. Owoc or John H. Owoc. Therefore, the NFTs will not be included in the Transactions.

6. The Seller has produced a documentary of John H. Owoc's life. However, Mr. Owoc has not signed a waiver in connection with this documentary.

7. As of the date of this Disclosure Schedule, the Seller does not have a certificate of occupancy for the Sheridan A site.

**Section 5.17**
**Brokers**

Engagement Letter, dated November 4, 2022, by and among the Official Committee of Unsecured Creditors of Vital Pharmaceuticals, Inc., *et al*, Miller Buckfire & Co., LLC and Stifel Nicolaus & Co., Inc.

**Section 5.19**
**Material Customers; Material Suppliers**

(a)

| Rank | Customer Name |
|---|---|
| 1 | Pepsi Co., Inc. |
| 2 | Sam's Club |
| 3 | Dollar Tree |
| 4 | Jack Hilliard Distributing Company, Inc. |
| 5 | Glazer's Beer and Beverage of Texas, LLC |
| 6 | Sheetz Distribution Services LLC |
| 7 | Vistar - Performance Food Group, Inc. |
| 8 | Vitamin Shoppe-North Bergen NJ |
| 9 | Amazon |
| 10 | Silver Eagle Distributors Houston LLC |
| 11 | Pure Beverage Company |
| 12 | Hensley Beverage Company |
| 13 | WDI, LLC Wisconsin Distributors |
| 14 | Import Warehouse |
| 15 | Walmart |
| 16 | RCI Beverage-OH, LLC DBA Dayton Heidelberg Distributing Co LLC |
| 17 | Polar Corp / Polar Beverages |
| 18 | Metro Beverage of Philadelphia |
| 19 | The Odom Corporation |
| 20 | Intrastate Distributing |

The distributor agreement by and between the Seller and PepsiCo, Inc. was terminated in 2022, and the Seller has transitioned away from this Material Customer.

(b)

| Rank | Vendor Name |
|------|-------------|
| 1 | Crown Cork & Seal USA, Inc |
| 2 | Graphic Packaging International |
| 3 | Priority-1, Inc |
| 4 | Direct Connect Logistix, Inc. |
| 5 | United Health Care |
| 6 | Refresco Beverage US Inc. |
| 7 | Total Quality Logistics, LLC TQL |
| 8 | Trinity Logistics Inc.- PRE PETITION |
| 9 | J.B. Hunt Transport, Inc. |
| 10 | Varni Brothers Corporation |
| 11 | Wild Flavors, Inc. |
| 12 | England Logistics, Inc. |
| 13 | Glen Raven Logistics Inc. |
| 14 | RXO Capacity Solutions, LLC |
| 15 | First Insurance Funding |
| 16 | C.H. Robinson International |
| 17 | Fona International Inc. |
| 18 | 7-Eleven Distribution Company |
| 19 | CHEP USA |
| 20 | EVOX Holding, LLC |

## Section 5.20
## Affiliate Transactions

<u>Intercompany License Agreements</u>
1. Consent to Use and Co-Existence Agreement, dated September 22, 2021, by and between JHO Intellectual Property Holdings, LLC and Entourage IP Holdings, LLC.
2. Trademark License Agreement, dated June 29, 2021, by and between Entourage IP Holdings, LLC and Bang Energy BV.
3. Trademark License Agreement, dated September 29, 2021, by and between Entourage IP Holdings, LLC and Quash Seltzer, LLC.
4. Trademark License Agreement, dated June 29, 2021, by and between JHO Intellectual Property Holdings, LLC and Bang Energy BV.
5. Trademark License Agreement, dated September 29, 2021, by and between JHO Intellectual Property Holdings, LLC and Vital Pharmaceuticals, Inc. d/b/a Bang Energy, as amended by the parties thereto on June 29, 2022, and as further amended by the parties thereto on April 25, 2023.
6. Trademark Sublicense Agreement, dated June 29, 2021, by and between Vital Pharmaceuticals, Inc. d/b/a Bang Energy and Ultra Experiences, LLC.
7. Trademark Sublicense Agreement, dated June 29, 2021, by and between Vital Pharmaceuticals, Inc. d/b/a Bang Energy and Bang Anti-Diet, LLC.
8. Trademark License Agreement, dated June 29, 2021, by and between Elite IP Holdings, LLC and Bang Energy BV. Elite IP Holdings, LLC was merged with and into JHO Intellectual Property Holdings, LLC on May 24, 2022.
9. Trademark License Agreement, dated August 30, 2016, by and between JHO Intellectual Holdings, LLC and Vital Pharmaceuticals, Inc., d/b/a VPX Sports.
10. Trademark License Agreement, dated July 13, 2017, by and between JHO Intellectual Holdings, LLC and Vital Pharmaceuticals, Inc., d/b/a VPX Sports.
11. Trademark Sublicense Agreement, dated July 12, 2022, by and between Vital Pharmaceuticals, Inc. d/b/a Bang Energy and Rainbow Unicorn Bev, LLC.

<u>Intercompany Lease Agreements</u>
1. Lease Agreement, dated December 22, 2020, by and between JHO NV-1 Investment, LLC and Quash Seltzer, LLC (1635 South 43rd Avenue, Phoenix, AZ 85009). This lease will be rejected in the Bankruptcy Case.
2. Lease Agreement, dated January 1, 2021, by and between Sheridan Real Estate Investment A, LLC and Quash Seltzer, LLC (20311 Sheridan Street, Pembroke Pines, FL 33332).

<u>Inter-Company Loan Agreement:</u>
1. Inter-Company Loan Agreement, dated August 4, 2020, by and between Vital Pharmaceuticals, Inc., d/b/a Bang Energy and Quash Seltzer, LLC.

<u>Miscellaneous</u>
1. Assignment and Assumption of Earnest Money Contract and Agreement, dated September 11, 2020, by and between Vital Pharmaceuticals, Inc. and JHO GA-1 Investment, LLC.
2. The Seller and its Affiliates, including the Excluded Parties, provide and have provided each other with services under a shared services model, including services related to back-office, sales, front office, administrative, accounting, legal, compliance, licensing, finance, risk management, information systems, development and security, insurance administration, regulatory, tax advice and related services, operations and facilities.
3. Certain Affiliates of the Selling Entities, the Excluded Parties as well as John H. Owoc, an individual, owns, directly or indirectly, certain Intellectual Property related to the Business as set forth in items 1

48

– 3 of <u>Section 5.11(b)</u>, item 5 of <u>Section 5.15(a)</u> and item 6 of <u>Section 5.15(a)</u> of this Disclosure Schedule.

4. The Excluded Parties own real estate that has been used in the Business.

DOCS_LA:349529.3 57536/00001

**Section 5.21**
**Sufficiency of Assets**

1. The Selling Entities will not be selling, transferring or assigning any assets owned or controlled, or purported to be owned or controlled, by any Excluded Parties to the Buyer as part of the Transactions.

2. Except as provided in Section 3.1(a) of the Agreement, the Selling Entities will not be selling, transferring or assigning any Excluded IP to the Buyer as part of the Transactions.

3. The Selling Entities are not transferring any Permits to the Buyer as part of the Transactions.

4. The Selling Entities are not transferring any insurance policies to the Buyer as part of the Transactions.

5. As part of the winddown of the Florida DSD network, the Selling Entities have sold, and are in the process of selling, certain assets, including DSD trucks and excess marketing vehicles, which will not be transferred to the Buyer as part of the Transactions.

6. All of the Employees are not being transferred to the Buyer as part of the Transactions.

7. Excluded Assets and Excluded Liabilities are not being transferred to the Buyer as part of the Transactions.

8. No back-office or front-office services provided by the Seller to its Affiliates are being transferred to the Buyer as part of the Transactions, including with respect to back-office, sales, front office, administrative, accounting, legal, compliance, licensing, finance, risk management, information systems, development and security, insurance administration, regulatory, tax advice and related services, operations and facilities.

9. The Seller has exited the site at 20351 Sheridan Street, Pembroke Pines, Florida 33332 (Sheridan B site) and has pending motions to reject certain leases associated with this site.

10. The Selling Entities are exiting its offices located in San Diego, California; Las Vegas, Nevada; Houston, Texas; and Dallas, Texas.  The exits will be followed by rejections in the Bankruptcy Case.

11. The Selling Entities have abandoned certain raw and finished goods inventory (primarily Super Creatine cans), equipment and other fixed assets at certain third party co-packer and warehousing facilities.

12. As noted in <u>Section 7.20</u> of the Agreement, all Purchased Assets and Assumed Liabilities held by JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC and Rainbow Unicorn, LLC may be transferred to another Seller Entity immediately prior to Closing.

13. The Buyer can assume and reject leases, contracts and purchase orders for the purposes of the Transactions, and may choose to exclude a contract or relationship that is material to the Business.

14. If the Buyer does not assume any of the relationships with the current distributors of the Business (including the lease agreements set forth in items 5, 14 and 15 of <u>Section 1.1(c)</u> of this Disclosure Schedule) as part of the Transactions, it will not have a distribution network for the Business.

15. The Selling Entities' operating performance has been negatively impacted by the pendency of its Chapter 11 Proceedings, including reduced revenues and greater difficulty maintaining vendor and distributor relationships due to public perception that the Business is in distress.

16. <u>Section 5.7</u> of this Disclosure Schedule is incorporated by reference herein.

17. <u>Section 7.1</u> of this Disclosure Schedule is incorporated by reference herein.

**Section 5.22**
**Food Regulatory Matters**

<u>Section 5.6</u> of this Disclosure Schedule is incorporated by reference herein.

**Section 7.1**
**Conduct of Business of Selling Entities**

1. The Selling Entities may acquire ownership of or the right to use the Excluded IP, in whole or in part, through an acquisition of assets or equity, including via merger.

2. The Selling Entities may pursue claims and initiate Proceedings against any Excluded Parties or any Excluded Estate claims as necessary.

3. In connection with the sale of Sheridan A, a property owned by a non-Selling Entity,  the Selling Entities may move assets in or out of Sheridan A, increase or decrease the rate of production at Sheridan A, or take any other actions necessary to facilitate such sale or exiting of Sheridan A.

4. The Selling Entities may negotiate and enter into a short term lease with the prospective buyer of Sheridan A (for a term of approximately six (6) months) to run the shot line in the Sheridan A site. The parties have not yet agreed the terms of the lease and a short-term lease is not certain prior to Closing. The material terms of the potential lease have been provided to the Buyer.

5. The Selling Entities may (i) enter into a short-term lease agreement with respect to the Lease Agreement, dated September 1, 2022, by and between Vital Pharmaceuticals Inc. and 1600FLL, LLC (1600 North Park Drive, Suite 100, Weston, FL 33326); and/or (ii) remove or liquidate any Inventory held at 1600 North Park Drive, Suite 100, Weston, FL 33326; and/or (iii) remove or liquidate fixed assets held at 1600 North Park Drive, Suite 100, Weston, FL 33326.

6. The Selling Entities may attempt to collect the items listed in Section 2.1(c) of the Agreement from third parties.

7. Only in response to Item 2 of Section 5.4 of the Disclosure Schedule, the Selling Entities may update graphics for point-of-sale assets, deidentify certain vehicle graphics, conduct trade promotions, implement can re-sleeving, swap inventory, cease shipments of inventory, and destroy inventory and merchandise and other similar actions.

8. The Selling Entities are in the process of winding down the Florida DSD network (including warehouses and the related vehicle fleet), which was initiated in May 2023 and continues to occur.

9. The leases set forth in items 1 – 4, 10 – 13, 16 and 19 of Section 1.1(c) of this Disclosure Schedule will be rejected as part of the winding down process.

10. The Seller, in connection with exiting the site at 20351 Sheridan Street, Pembroke Pines, Florida 33332 (Sheridan B site) and has pending motions to reject leases in the Bankruptcy Case.

11. The Seller is operationally exiting its offices located in San Diego, California; Las Vegas, Nevada; Houston, Texas; and Dallas, Texas. The operational exits will be followed by a bankruptcy court-approved process of rejection.

12. The Selling Entities may reduce production output at its Phoenix manufacturing plant to align finished goods inventory levels with recent and forecasted demand trends.

13. As contemplated in Section 7.20 of the Agreement, assets and liabilities may be contributed and transferred from the applicable Selling Entity to the Seller, prior to Closing.

14. The Selling Entities may file motion(s) with the Bankruptcy Court to reject certain distributor agreements to improve sales velocity, retailer footprint, or other metrics, or to mitigate poor performance.

15. The Selling Entities may issue WARN Act notices to certain employees.

16. The Selling Entities may cancel any of their purchase orders at their election.

17. The Selling Entities may sell or destroy inventory, racking, pallet jacks and pest sprayers as part of the process of winding down any and/or all of their Subsidiaries not transferred to the Buyer as part of the Transactions.

18. The Selling Entities may cancel any and all purchase orders.

19. The Selling Entities may terminate (or not renew) any agreements with social media influencers at their election.

20. Section 5.7 of this Disclosure Schedule is incorporated by reference herein.

**Section 7.3(a)**
**Trade Secret Cooperation**

Reasonably promptly following the execution of the Agreement by all Parties, the Buyer will notify the Seller in writing as to which 12 flavors of the Seller's ready to drink beverage products sold domestically in the United States under the brand name "Bang" (the "Specified Products") the process below will apply to, and solely with respect to the Specified Products, the Seller will coordinate and provide the items below.

A.  Items to be coordinated by the Seller as soon as reasonably practicable following the execution of the Agreement and identification by the Buyer of the Specified Products:

    i.   Present a live video Zoom session to allow the Buyer to see the Seller's SAP process for generating bills of materials for one (at the Buyer's selection) of the Specified Products.  No recording will be allowed.

    ii.  Provide the Buyer with the identity of (a) all of the ingredients and materials used in the manufacturing and production of each of the Specified Products and (b) the suppliers of those ingredients and materials for each of the Specified Products.

    iii. Present a live video Zoom session to allow the Buyer and its Representatives to see how a batch is run for one (at the Buyer's selection) of the Specified Products.  No recording will be allowed.

    iv. Delivery of electronic files for the Specified Products containing the current can art and associated product packaging art (e.g. trays and multipacks), with such files delivered in, as applicable, an electronic or digital format as used by the Selling Entities in the Ordinary Course of Business (such as working files (including .ai files) for labels and artwork including, but not limited to, high resolution vector files with all links and/or embedded artwork).  Notwithstanding anything to the contrary contained herein or in the Agreement, title to such files shall not transfer to the Buyer until at or following the Closing pursuant to the terms of the Agreement. Notwithstanding anything to the contrary in this Section 7.3(a), all Seller IP transfers to the Buyer at or following the Closing pursuant to the terms of the Agreement. The Seller hereby grants a limited, non-exclusive, non-transferrable, non-sublicensable, revocable license to the Buyer to use and make changes to and create derivative works of the can art and product packaging art prior to the Closing at the Buyer's sole discretion and provides permission to the Buyer to have plates made and to print cans and packaging, in each case, solely for the limited purpose of preparing for sales of the Specified Products after the Closing. The Buyer hereby acknowledges and agrees that any such derivative works and rights in such plates shall be the sole Intellectual Property of the Seller and the Buyer hereby irrevocably assigns all right, title and interest in and to such derivative works and rights in such plates to the Seller, and any rights will only transfer to the Buyer when and if the Seller IP is transferred to the Buyer at or following the Closing.

    v.  The Buyer shall have the option in its sole discretion to request in writing that the Seller purchase ingredients for the Specified Products.  In the event the Buyer makes such written request, (a) it shall pay the Seller simultaneously with such written request by wire transfer of immediately available funds, the fees, costs and expenses associated with any such ingredient purchases, and (b) the Buyer shall, in such written request, irrevocably agree to assume any and all related purchase orders as Assumed Agreements under the Agreement, and notwithstanding anything to the contrary contained herein or in the Agreement, with no ability for the Buyer to remove such purchase order as an Assumed Agreement thereafter.  The Seller will advise the Buyer of any terms with respect to such purchase order, and the Buyer shall confirm its acceptance of any such terms before the order is placed with the applicable supplier.  Any new purchase orders will not impact the ability of the Buyer not to assume the existing contracts relating to such ingredients (excluding any new purchase orders entered into pursuant to this Section 7.3(a)(A)(v)). Notwithstanding anything to the contrary contained herein or in the Agreement, any requirement that the Seller order any ingredients shall not, in any case, unreasonably interfere with the operation of the business of the Selling Entities and their Affiliates and shall be subject, in all respects, to the Selling Entities' availability of appropriate

storage for such ingredients. The Parties agree to cooperate with each other in good faith regarding the obligations in this <u>Section 7.3(a)(A)(v)</u>, including regarding the quantities needed and storage plans for products purchased.

B. Items to be coordinated by the Seller within three (3) Business Days following the satisfaction of the condition set forth in <u>Section 8.1(b)</u> of the Agreement and entry of the Sale Order by the Bankruptcy Court:

    i. Allow for an in-person (subject to a reasonable number of people, given space and safety constraints) review of the recipes and formulas by Buyer for the Specified Products (in a clean room, with no ability to record or take photos or notes – no phones or devices other than simple calculators (with no ability to save or store information) will be permitted while viewing the recipes).

    ii. Allow for an in-person (subject to a reasonable number of people, given space and safety constraints) review of the step-by-step process to make a batch of the Specified Products (under the same clean room concept noted above).

Any information, data, materials, processes or trade secrets provided hereunder shall be subject to the terms and provisions of the Confidentiality Agreement.  In the event that the Agreement is terminated for any reason, any and all documents, information, data and other tangible objects containing or representing any documents, information or data provided pursuant to this <u>Section 7.3</u> of this Disclosure Schedule and all copies thereof or any work product in respect of the foregoing and any derivative works of the can art and product packaging art and any related plates created by the Buyer and any cans and packaging printed bearing the Seller IP pursuant to <u>Section 7.3(a)(A)(iv)</u> above which are in the possession of the Buyer, any of its Affiliates or their respective Representatives shall be and remain the property of the Selling Entities and shall be promptly returned to the Selling Entities or destroyed (at the Seller's election).  An officer of the Buyer shall certify to the Selling Entities in writing with respect to full compliance by the Buyer of its obligations set forth in the preceding sentence.

DOCS_LA:349529.3 57536/00001

**Section 7.8(b)**
**Termination of Certain Intellectual Property Licenses/Agreements**

1. Trademark License Agreement, dated October 31, 2015, by and between Bang Energy, LLC and Vital Pharmaceuticals, Inc. d/b/a VPX Sports.

2. Trademark License Agreement, dated August 30, 2016, by and between JHO Intellectual Property Holdings, LLC and Vital Pharmaceuticals, Inc. d/b/a VPX Sports.

3. Trademark License Agreement, dated July 13, 2017, by and between JHO Intellectual Property Holdings, LLC and Vital Pharmaceuticals, Inc. d/b/a VPX Sports.

4. Trademark License Agreement, dated June 29, 2021, by and between Entourage IP Holdings, LLC and Bang Energy BV.

5. Trademark License Agreement, dated June 29, 2021, by and between JHO Intellectual Property Holdings, LLC and Bang Energy BV.

6. Trademark License Agreement, dated June 29, 2021, by and between Elite IP Holdings, LLC and Bang Energy BV.

7. Consent to Use and Co-Existence Agreement, dated September 22, 2021, by and between JHO Intellectual Property Holdings, LLC and Entourage IP Holdings, LLC.

8. Trademark License Agreement, dated September 29, 2021, by and between Entourage IP Holdings, LLC and Quash Seltzer, LLC.

9. Trademark Sublicense Agreement, dated June 29, 2022, by and between Vital Pharmaceuticals, Inc. d/b/a Bang Energy and Ultra Experiences, LLC.

10. Trademark Sublicense Agreement, dated June 29, 2022, by and between Vital Pharmaceuticals, Inc. d/b/a Bang Energy and Bang Anti-Diet, LLC.

11. Trademark Sublicense Agreement, dated July 12, 2022, by and between Vital Pharmaceuticals, Inc. d/b/a Bang Energy and Rainbow Unicorn Bev, LLC.

12. Any intellectual property licenses and/or agreements (whether oral or in writing) between any of the Selling Entities.

13. Any intellectual property licenses and/or agreements (whether oral or in writing) between any of the Selling Entities on the one hand and any third party including, but not limited to, Excluded Parties, on the other hand, wherein any Selling Entity grants the third party any rights in the Seller IP or allows a third party to co-exist with or use the Seller IP, to the extent identified to the applicable Selling Entity by the Buyer in writing..

DOCS_LA:349529.3 57536/00001

**Section 7.8(c)**
**Assumption of Certain Intellectual Property Agreements**

To be completed prior to the Closing in accordance with the Agreement.

**Section 9.1**
**Termination**

See <u>Schedule 9.1(k)</u> attached.

**Schedule 9.1(k)**

**Weekly Cashflow DIP Budget**

(see attached)

# PROJECT BLAST

## UPDATED FORECAST THROUGH WE 7/28/2023

Huron is a management consulting firm and not a CPA firm. Huron does not provide attest services, audits, or other engagements in accordance with standards established by the American Institute of Certified Public Accountants ("AICPA") or promulgated by the Public Company Accounting Oversight Board ("PCAOB"). The procedures Huron performed were for purposes of providing the Services outlined in the Engagement Letter dated 09/06/22 and did not include independent verification of information provided by management, financial statement balances or internal controls, the performance of which might have revealed additional information that could affect the findings of our work. Accordingly, we express no opinion or other form of assurance on any financial statements, management representations or other Company derived data accompanying or included in our work. The accompanying forecast is based upon specific circumstances and assumptions and may not be appropriate when those circumstances or assumptions change.

**Vital Pharmaceuticals, Inc.**
Weekly Cashflow_DIP budget

($ in millions)

| Week Ending | Jun-23 Actual 06/23/23 | Jun-23 Forecast 06/30/23 | Jul-23 Forecast 07/07/23 | Jul-23 Forecast 07/14/23 | Jul-23 Forecast 07/21/23 | Jul-23 Forecast 07/28/23 | Total Post-petition 10/10 to 07/28 |
|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | |
| Customer Receipts | $ 3.2 | $ 3.9 | $ 3.2 | $ 2.6 | $ 2.0 | $ 1.0 | $ 227.2 |
| Other Receipts | - | 0.6 | 0.4 | - | - | 1.0 | 77.9 |
| **Total Operating Receipts** | $ 3.2 | $ 4.5 | $ 3.6 | $ 2.6 | $ 2.0 | $ 2.0 | $ 305.1 |
| | | | | | | | |
| DIP Draw (Repayment) | - | 18.0 | - | - | - | - | 100.0 |
| **Total Receipts** | $ 3.2 | $ 22.5 | $ 3.6 | $ 2.6 | $ 2.0 | $ 2.0 | $ 405.1 |
| | | | | | | | |
| **Disbursements** | | | | | | | |
| Material costs | (0.5) | (1.1) | (0.8) | (0.8) | (0.6) | (0.6) | (48.1) |
| Co-Packers | (0.0) | (0.1) | (0.0) | (0.0) | (0.0) | (0.0) | (5.8) |
| Freight & handling | (0.1) | (0.2) | (0.2) | (0.2) | (0.2) | (0.2) | (34.6) |
| Employee expenses | (0.3) | (2.7) | (0.5) | (2.8) | (0.6) | (2.9) | (79.3) |
| Trade promotion | (1.0) | (0.2) | (0.0) | (0.0) | (0.0) | (0.0) | (17.5) |
| Facility/Office expenses | (0.9) | (1.6) | (1.8) | (0.7) | (0.7) | (3.8) | (52.7) |
| Marketing | (0.1) | (0.1) | (0.7) | (0.1) | (0.1) | (0.1) | (8.0) |
| Legal expenses | (0.0) | (0.3) | (0.0) | (0.3) | (0.0) | (0.0) | (2.8) |
| Other | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (8.3) |
| OBI royalty reserve/payment | - | - | (0.8) | - | - | - | (11.6) |
| **Total Operating Disbursements** | $ (2.9) | $ (6.3) | $ (4.8) | $ (5.0) | $ (2.4) | $ (7.7) | $ (268.8) |
| | | | | | | | |
| Operating cash flow | 0.3 | (1.8) | (1.2) | (2.4) | (0.4) | (5.7) | 36.4 |
| | | | | | | | |
| **Professional Fees & Employee Retention** | | | | | | | |
| Professional Fee paid / escrow | (1.0) | (0.0) | - | (6.2) | (0.6) | (0.3) | (35.0) |
| Retention Plans | - | - | - | - | - | - | (1.0) |
| **Total Professional Fees & Employee Retention** | $ (1.0) | $ (0.0) | $ - | $ (6.2) | $ (0.6) | $ (0.3) | $ (35.9) |
| | | | | | | | |
| Total Debt Service | - | - | (4.9) | - | - | - | (110.7) |
| | | | | | | | |
| **Net Cash Flow / (Deficit)** | $ (0.7) | $ 16.2 | $ (6.1) | $ (8.6) | $ (1.0) | $ (5.9) | $ (10.3) |
| | | | | | | | |
| **Cash Balance** | | | | | | | |
| Beginning Cash Balance | 7.3 | 6.6 | 22.8 | 16.7 | 8.0 | 7.1 | 11.4 |
| Ending Cash Balance | 6.6 | 22.8 | 16.7 | 8.0 | 7.1 | 1.1 | 1.1 |
| | | *Ending Cash excluding debt service* | | | | | $ 6.0 |

2

**Exhibit A**

**Form of Sale Order**

(see attached)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                          Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,          Case No.: 22-17842-PDR

Debtors.[1]                                              (Jointly Administered)

_____/

**ORDER (I) AUTHORIZING AND APPROVING (A) THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR
OF ALL LIENS, CLAIMS, AND ENCUMBRANCES AND (B) THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES IN CONNECTION THEREWITH, AND (II) GRANTING RELATED RELIEF**

Upon the motion [ECF No. 707] (the "Motion")[2] of the above-captioned debtors and

debtors in possession (collectively, the "Debtors") for entry of an order (this "Sale Order"),

(i) authorizing (a) the sale of substantially all of the Debtors' assets free and clear of all claims,

liens, liabilities, rights, interests, and encumbrances (except for Assumed Liabilities and Permitted

Encumbrances), and (b) the assumption and assignment of certain of the Debtors' executory

contracts and unexpired leases, and (ii) granting related relief; and this Court having entered the

*Order (I) Approving Bidding Procedures, (II) Authorizing the Debtors to Provide Bid Protections,*

*and (III) Granting Related Relief* [ECF No. 854] (the "Bidding Procedures Order"); and Blast

Asset Acquisition LLC, the buyer (the "Buyer"), having been selected as the Successful Bidder;

and upon the Buyer and certain of the Debtors having entered into that certain *Asset Purchase*

---

[1]     The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal
tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("Vital Pharmaceuticals") (8430); (ii) Bang Energy
Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC
(9394); (v) Quash Seltzer, LLC ("Quash Seltzer") (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital
Pharmaceuticals International Sales, Inc. (8019).

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in, as applicable,
the Asset Purchase Agreement (as defined herein), or if not defined therein, the Motion, or the Bidding Procedures
Order (as defined herein).

*Agreement*, dated as of June 28, 2023, a copy of which is attached hereto as **Exhibit A** (as may be amended, modified, or supplemented in accordance with the terms of this Sale Order and such agreement, the "Asset Purchase Agreement"); and this Court having reviewed the 9019 Motion; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and a hearing having been held to consider the relief requested in the Motion (the "Sale Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and evidence adduced at the Sale Hearing or otherwise establish just cause for the relief granted herein; and upon all of the proceedings had before this Court and at the Sale Hearing; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT:**[3]

**JURISDICTION**

A.      This Court has jurisdiction to hear and determine the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).

B.      Venue of the Debtors' above-captioned chapter 11 cases (these "Chapter 11 Cases") and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable

---

[3]     The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2

by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of this Sale Order as set forth herein.

D.  The statutory predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and the applicable Local Rules.

## NOTICE OF THE SALE AND THE CURE PAYMENTS

E.  As evidenced by the affidavits and/or certificates of service filed with the Court,[4] proper, timely, adequate, and sufficient notice of, *inter alia*, the Motion, the Bidding Procedures, the Assumption and Assignment Procedures, the Asset Purchase Agreement, the sale of the Purchased Assets pursuant to the terms of the Asset Purchase Agreement and this Sale Order (the "Sale"), the Sale Hearing, and all deadlines related thereto, has been provided in accordance with sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007,

---

[4]  Such affidavits and/or certificates of service were filed by the Debtors at [ECF No. 710] (certificate of service regarding the Motion); [ECF No. 735] (certificate of service regarding hearing on Motion); [ECF No. 841] (certificate of service regarding revised Bidding Procedures Order and declaration in support of Bidding Procedures); [ECF No. 847] (certificate of service regarding extension of certain transaction deadlines); [ECF No. 909] (certificate of publication of Sale Notice); [ECF No. 911] (certificate of service of Bidding Procedures Order and Sale Notice); [ECF No. 927] (certificate of service of initial Assumption Notice (as defined herein) and proposed form of Sale Order); [ECF No. 1014] (certificate of service of first supplemental Assumption Notice); [ECF No. 1042] (certificate of service of Sale Notice); [ECF No. 1125] (certificate of service of Sale Notice and initial Assumption Notice); [ECF No. 1155] (certificate of service of initial Assumption Notice); [ECF No. 1186] (certificate of service of initial Assumption Notice and Sale Notice); [ECF No. 1252] (certificate of service of initial Assumption Notice and Sale Notice); [ECF No. 1305] (certificate of service of extension of transaction deadlines); [ECF No. 1360] (certificate of service of Sale Order and initial Assumption Notice); [ECF No. 1383] (certificate of service of Sale Notice and initial Assumption Notice); [ECF No. 1392] (certificate of service of Sale Notice and extension of certain transaction milestones); [ECF No. 1403] (certificate of service of notice of adjournment of Auction); [ECF No. 1414] (certificate of service of Sale Notice and extension of certain transaction milestones); [ECF No. 1439] (certificate of service of extension of certain transaction milestones and adjournment of Auction); [ECF No. 1462] (certificate of service of extension of certain transaction milestones and adjournment of Auction); [ECF No. 1464] (certificate of service of extensions of certain transaction milestones, including the Sale Hearing); [ECF No. 1493] (supplemental certificate of service of notice of adjournment of Auction and extensions of certain transaction milestones, including the Sale Hearing); and [ECF No. 1541] (certificate of service of notice of adjournment of Sale Hearing).

9008, and 9014, and in compliance with the Bidding Procedures Order, to all parties required to receive such notice.

F.     The Debtors served the *Notice of Proposed Sale, Bidding Procedures, Auction, and Sale Hearing* [ECF No. 856] (the "Sale Notice") on all parties required to receive such notice under the Bidding Procedures Order and applicable rules, published such notice in *The New York Times* and posted the Sale Notice on the Debtors' Case Website.  Such publication of the Sale Notice conforms to the requirements of the Bidding Procedures Order and Bankruptcy Rules 2002(l) and 9008 and was reasonably calculated to provide notice to any affected party and afford any affected party the opportunity to exercise any rights related to the Motion and the relief granted by this Sale Order.  Service and publication of the Sale Notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the sale of the Purchased Assets, including the proposed sale of the Purchased Assets free and clear of all liens, claims, encumbrances, and interests (other than Assumed Liabilities and Permitted Encumbrances), the Sale, the Bidding Procedures, and the Sale Hearing.

G.     The Debtors served the (i) *Notice of (I) Executory Contracts and Unexpired Leases that May be Assumed and Assigned in Connection with a Sale of the Debtors' Assets and (II) the Proposed Cure Costs with Respect Thereto* [ECF No. 893]; (ii) *Supplemental Notice of (I) Executory Contracts and Unexpired Leases that May be Assumed and Assigned in Connection with a Sale of the Debtors' Assets and (II) the Proposed Cure Costs with Respect Thereto* [ECF No. 995]; and (iii) *Second Supplemental Notice of (I) Executory Contracts and Unexpired Leases that May be Assumed and Assigned in Connection with a Sale of the Debtors' Assets and (II) the Proposed Cure Costs with Respect Thereto* [ECF No. 1460] (together, the "Assumption Notice") on each of the counterparties to the Assumed Agreements and Assumed Real Property Leases in

4

accordance with the Assumption and Assignment Procedures and the Bidding Procedures Order. The service of the Assumption Notice was sufficient under the circumstances and in full compliance with the Assumption and Assignment Procedures and the Bidding Procedures Order, and no further notice need be provided in respect of the Debtors' assumption and assignment to the Buyer of the Assumed Agreements and Assumed Real Property Leases that have been (or may be) selected by the Buyer to be assumed and assigned in connection with the Sale[5] or the Cure Costs (as defined in the Assumption Notice or as otherwise agreed by the Buyer and the counterparty to any Assumed Agreements or Assumed Real Property Leases). All counterparties to the Assumed Agreements and Assumed Real Property Leases have had an adequate opportunity to object to the assumption and assignment of the Assumed Agreements and Assumed Real Property Leases and the Cure Costs. Service of the Assumption Notice was appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the potential assumption and assignment of the Assumed Agreements and Assumed Real Property Leases in connection with the sale of the Purchased Assets and the related Cure Costs.

H.     The Debtors served the *Notice of Auction Cancellation and Successful Bidder* [ECF No. [ ● ]] (the "Designation Notice") on all parties required to receive such notice under the Bidding Procedures Order and applicable rules. Because only one Qualified Bid was received for substantially all of the Debtors' assets, which was submitted by the Buyer, no Auction was conducted.

I.     The notice described in the foregoing paragraphs is due, proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures, the Sale Hearing, the assumption and

---

[5]  For avoidance of doubt, as used herein, Assumed Agreements and Assumed Real Property Leases shall only include those Assumed Agreements and Assumed Real Property Leases to which a Debtor is a party.

assignment of the Assumed Agreements and Assumed Real Property Leases, the Sale, and the entry of this Sale Order, and has been provided to all parties in interest. Such notice was, and is, good, sufficient, and appropriate under the circumstances of these Chapter 11 Cases, provided a fair and reasonable opportunity for parties in interest to object, and to be heard, with respect thereto, and was timely provided in accordance with sections 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014, and the applicable Local Rules. Accordingly, no other or further notice with respect to such matters is necessary or shall be required.

## **BUSINESS JUDGMENT**

J.     The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for, and compelling circumstances to promptly consummate, the Sale and the other transactions contemplated by the Asset Purchase Agreement and related documents (together with the Asset Purchase Agreement, the "Transaction Documents"), including, without limitation, the assumption, assignment, and/or transfer of the Assumed Agreements and Assumed Real Property Leases (collectively, the "Transaction") pursuant to sections 105, 363, and 365 of the Bankruptcy Code, prior to and outside of a plan of reorganization, and such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates, and their creditors. Such business reasons include, but are not limited to, the fact that: (i) there is substantial risk that the Debtors will lose access to the financing necessary to maintain their day-to-day business operations, including, among other reasons, the impending maturity of the DIP Facility; (ii) the Asset Purchase Agreement and the Closing present the best opportunity to maximize the value of the Debtors' estates; and (iii) unless the Sale is concluded expeditiously as provided for in this Sale Order and pursuant to the Asset Purchase Agreement, potential creditor recoveries may be substantially diminished.

6

## GOOD FAITH OF THE BUYER; NO COLLUSION

K.      The Buyer is purchasing the Purchased Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code, and therefore is entitled to, and granted pursuant to paragraph 35 below, the full rights, benefits, privileges, and protections of that provision, and has otherwise proceeded in good faith in all respects in connection with the Transaction in that, *inter alia*: (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Purchased Assets; (ii) the Buyer complied with the provisions in the Bidding Procedures Order; (iii) the Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (iv) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; and (v) the negotiation and execution of the Asset Purchase Agreement and the other Transaction Documents were at arms' length and in good faith.

L.      None of the Debtors, the Buyer, any other party in interest, or any of their respective Representatives has engaged in any conduct that would cause or permit the Asset Purchase Agreement or any of the Transaction Documents, or the consummation of the Transaction, to be avoidable or avoided, or for costs or damages to be imposed, under section 363(n) of the Bankruptcy Code, or has acted in bad faith or in any improper or collusive manner with any Person (as defined in the Asset Purchase Agreement) in connection therewith.

## HIGHEST OR OTHERWISE BEST OFFER

M.      In accordance with the Bidding Procedures Order, the Asset Purchase Agreement was deemed a Qualified Bid for the Purchased Assets.

N.      The Debtors conducted a competitive marketing and sale process in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order,

and accordingly have afforded a full, fair, and reasonable opportunity for any Person to make a higher or otherwise better offer to purchase the Purchased Assets.

O.     The Asset Purchase Agreement constitutes the highest or otherwise best offer for the Purchased Assets and represents a fair and reasonable offer to purchase the Purchased Assets under the totality of circumstances of these Chapter 11 Cases.

P.     The Transaction described in the Asset Purchase Agreement will provide a greater benefit to the Debtors, their estates, and their creditors than any alternative transaction.

## NO FRAUDULENT TRANSFER

Q.     The Asset Purchase Agreement and the other Transaction Documents were not entered into, and the Transaction is not being consummated, for the purpose of hindering, delaying, or defrauding creditors of the Debtors under applicable law, and none of the parties to the Asset Purchase Agreement or parties to any of the other Transaction Documents are consummating the Transaction with any fraudulent or otherwise improper purpose.  The purchase price for the Purchased Assets constitutes reasonably equivalent value, fair consideration and fair value for the conveyance of such Purchased Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable laws of the United States, any state, territory, or possession, the District of Columbia or any applicable foreign laws.

## VALIDITY OF TRANSFER

R.     The Debtors have full corporate power and authority (i) to seek approval of and perform all of their obligations under the Asset Purchase Agreement and the other Transaction Documents; and (ii) to consummate the Transaction.  Subject to the entry of this Sale Order, no further consents or approvals are required for the Debtors to consummate the Transaction or otherwise perform their obligations under the Transaction Documents, except in each case as

otherwise expressly set forth in the Final DIP Order (which consents or approvals have already been obtained),[6] the Asset Purchase Agreement, or the other applicable Transaction Documents.

S.      The Debtors' rights, title, and interest in the Purchased Assets constitute property of the Selling Entities' bankruptcy estates and title thereto is vested in their estates within the meaning of section 541(a) of the Bankruptcy Code.  As of the date of the closing of the Transaction ("Closing," and such date, the "Closing Date"), the transfer of the Purchased Assets to the Buyer, including, without limitation, the assumption, assignment, and transfer of the Assumed Agreements and Assumed Real Property Leases, will be a legal, valid, and effective transfer thereof, and will vest the Buyer with good and marketable title to, and all right, title, and interest in and to the Purchased Assets, free and clear of all Interests (as defined below) except for Assumed Liabilities and Permitted Encumbrances accruing or arising any time prior to the Closing Date, except as expressly set forth in the Asset Purchase Agreement.

## SECTION 363(F) IS SATISFIED

T.      The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the transaction contemplated thereby if the sale of the Purchased Assets, including the assumption, assignment, and transfer of the Assumed Agreements and Assumed Real Property Leases to the Buyer, were not free and clear of all Interests of any kind or nature whatsoever (except for Assumed Liabilities and Permitted Encumbrances), or if the Buyer or any of its affiliates, subsidiaries, or any of its Representatives would, or in the future could, be liable for any such Interests (except for Assumed Liabilities and Permitted Encumbrances).

---

[6]     The "Final DIP Order" means the *Final Order (I) Approving Postpetition Financing, (II) Authorizing Use Of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* entered on January 12, 2023 [ECF No. 638].

U.     The Debtors may sell or otherwise transfer the Purchased Assets free and clear of all Interests (except for Assumed Liabilities and Permitted Encumbrances) to the extent set forth herein because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Interests against the Debtors, their estates, or any of the Purchased Assets who did not object, or who withdrew their objection to the Sale or the Motion, are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of such Interests who did object fall within one or more of the other subsections of section 363(f) and are adequately protected by the terms of this Sale Order, including, as applicable, by having their Interests, if any, attach to the portion of the Sale Proceeds (as defined below) attributable to the Purchased Assets in which such creditor alleges or asserts an Interest, in the same order of priority, with the same validity, force, and effect, that such creditor had against the Purchased Assets immediately prior to consummation of the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

V.     As used in this Sale Order, the terms "Interest" and "Interests" include all of the following, in each case, to the extent against or with respect to the Debtors, or in, on, or against, or with respect to any of the Purchased Assets: liens (including as defined in section 101(37) of the Bankruptcy Code, and whether consensual, statutory, possessory, judicial, or otherwise), claims (as defined in section 101(5) of the Bankruptcy Code) ("Claims"), debts (as defined in section 101(12) of the Bankruptcy Code), encumbrances, obligations, liabilities, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, or interests of any kind or nature whatsoever, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or

10

noncontingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to, on, or subsequent to, the commencement of these Chapter 11 Cases, and in each case, whether imposed by agreement, understanding, law, equity, or otherwise, including, but not limited to: (i) mortgages, security deeds, deeds of trust, pledges, charges, security interests, levies, hypothecations, encumbrances, easements, servitudes, leases, subleases, licenses, rights-of-way, encroachments, restrictive covenants, restrictions on transferability, voting, sale, transfer or other similar restrictions, rights of setoff (except for setoffs validly exercised before the Petition Date, or preserved in a timely filed proof of claim or motion filed with the Court), rights of use or possession, conditional sale arrangements, deferred purchase price obligations, profit sharing interest, or any similar rights; (ii) all Claims, including, without limitation, all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff (except for setoffs validly exercised before the Petition Date, or preserved in a timely filed proof of claim or motion filed with the Court), indemnity or contribution, obligations, demands, restrictions, indemnification claims, or liabilities relating to any act or omission of the Debtors or any other Person, consent rights, options, contract rights, covenants, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently exercisable), whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise; (iii) all debts, liabilities, obligations, contractual rights and claims, including labor, employment, and pension claims; (iv) any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, or consents, or termination of the Debtors' or the Buyer's interest in the Purchased Assets, or any similar rights; (v) any rights under labor or employment

11

agreements; (vi) any rights under pension, multiemployer plan (as such term is defined in section 3(37) or section 4001(a)(3) of the Employment Retirement Income Security Act of 1974 (as amended, "ERISA")), health or welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plans of the Debtors or any multiemployer plan to which the Debtors have at any time contributed to or had any liability or potential liability; (vii) any other employee claims related to worker's compensation, occupation disease, or unemployment or temporary disability, including, without limitation, claims that might otherwise arise under or pursuant to (a) ERISA, (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Age Discrimination and Employment Act of 1967 and the Age Discrimination in Employment Act, each as amended, (g) the Americans with Disabilities Act of 1990, (h) the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, including, without limitation, the requirements of Part 6 of Subtitle B of Title I of ERISA and Section 4980B of the Internal Revenue Code of any similar state law, (i) state discrimination laws, (j) state unemployment compensation laws or any other similar state laws, (k) any other state or federal benefits or claims relating to any employment with the Debtors or any of their predecessors, or (l) the WARN Act (29 U.S.C. §§ 2101, et seq.) or any state or other laws of similar effect; (viii) any bulk sales or similar law; (ix) any tax statutes or ordinances or other laws of similar effect, including, without limitation, the Internal Revenue Code of 1986, as amended, and any taxes arising under or out of, in connection with, or in any way relating to the operation of the Purchased Assets before the closing of a Sale; (x) any unexpired and executory contract or unexpired lease to which the Debtors are a party that is not an Assumed Agreement or Assumed Real Property Lease; (xi) any other excluded liabilities under the Asset Purchase Agreement; and

(xii) Interests arising under or in connection with any acts, or failures to act, of the Debtors or any of their predecessors, affiliates, or subsidiaries, including, but not limited to, Interests arising under any doctrines of successor liability (to the greatest extent permitted by applicable law), or transferee or vicarious liability, violation of the Securities Act, the Exchange Act, or other applicable securities laws or regulations, breach of fiduciary duty, or aiding or abetting breach of fiduciary duty, or any similar theories under applicable law or otherwise.

## NOT A SUCCESSOR; NOT A SUB ROSA PLAN

W.     The Buyer is not, and shall not be deemed to, as a result of any action taken in connection with the Transaction (i) be a successor to or a mere continuation or substantial continuation (or other such similarly situated party) to the Debtors or their estates; or (ii) have, *de facto* or otherwise, merged or consolidated with or into the Debtors.

X.     The Sale does not constitute a *de facto* plan of reorganization or liquidation or an element of such a plan for the Debtors, as it does not and does not propose to impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a chapter 11 plan for the Debtors.

## ASSUMPTION, ASSIGNMENT AND/OR TRANSFER OF THE ASSUMED AGREEMENTS AND ASSUMED REAL PROPERTY LEASES

Y.     The Debtors have demonstrated that (i) it is an exercise of their sound business judgment to assume and assign the Assumed Agreements and Assumed Real Property Leases to the Buyer in each case in connection with the consummation of the Transaction, and (ii) the assumption and assignment of the Assumed Agreements and Assumed Real Property Leases to the Buyer is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The Assumed Agreements and Assumed Real Property Leases being assigned to the Buyer are an integral part of the Purchased Assets being purchased by the Buyer and, accordingly,

such assumption, assignment and cure of any defaults under the Assumed Agreements and Assumed Real Property Leases are reasonable and enhance the value of the Debtors' estates.  Each and every provision of the documents governing the Purchased Assets or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any of the Purchased Assets, if any, have been or will be satisfied or are otherwise unenforceable under section 365 of the Bankruptcy Code.  Any non-Debtor counterparty to an Assumed Agreement or Assumed Real Property Lease that has not filed with this Court an objection to such assumption and assignment in accordance with the terms of the Motion and the Assumption Notice is deemed to have consented to such assumption and assignment.

Z.       To the extent necessary or required by applicable law, the Debtors (or the Buyer on behalf of the Debtors) has or will have as of the Closing Date (i) cured, or provided adequate assurance of cure, of any default existing prior to the Closing Date with respect to the Assumed Agreements and Assumed Real Property Leases, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) provided compensation, or adequate assurance of compensation, to any party for any actual pecuniary loss to such party resulting from such default, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  Subject to the terms of this Sale Order, and except as otherwise determined by separate order of the Court after the date hereof, the respective Cure Costs set forth on **Exhibit B** hereto are the sole amounts necessary under sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code to cure all such monetary defaults and pay all actual pecuniary losses under the Assumed Agreements and Assumed Real Property Leases.

AA.     The promise of the Buyer to perform (and the Buyer's financial wherewithal to perform) the obligations first arising under the Assumed Agreements and Assumed Real Property Leases after their assumption and assignment to the Buyer constitutes adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code to the extent that any such assurance is required and not waived by the counterparties to such Assumed Agreements and Assumed Real Property Leases.  Except for those objections and other disputes listed as adjourned on **Exhibit C** (collectively, the "Adjourned Objections"), any objections to the foregoing, the determination of any Cure Costs, or otherwise related to or in connection with the assumption, assignment, or transfer of any of the Assumed Agreements and Assumed Real Property Leases to the Buyer are hereby overruled on the merits or otherwise treated as set forth in paragraph 3 below.  Those non-Debtor counterparties to Assumed Agreements and Assumed Real Property Leases who did not object to the assumption, assignment, or transfer of their applicable Assumed Agreement or Assumed Real Property Lease, or to their applicable Cure Cost, are deemed to have consented thereto for all purposes of this Sale Order.  All rights of the parties with respect to the issues raised in the Adjourned Objections are preserved.

## COMPELLING CIRCUMSTANCES FOR AN IMMEDIATE SALE

BB.     Time is of the essence in consummating the Transaction.  In order to maximize the value of the Purchased Assets, it is essential that the sale and assignment of the Purchased Assets occur within the time constraints set forth in the Asset Purchase Agreement.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and, sufficient cause having been shown, waives any such stay, and expressly directs entry of this

Sale Order as set forth herein. The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the immediate approval and consummation of the Transaction as contemplated by the Asset Purchase Agreement. The Buyer, being a good faith purchaser under section 363(m) of the Bankruptcy Code, may close the Transaction contemplated by the Asset Purchase Agreement at any time after entry of this Sale Order, subject to the terms and conditions of the Asset Purchase Agreement.

CC.    The consummation of the Transaction is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105, 363, and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**GENERAL PROVISIONS**

1.    The Motion, and the relief requested therein, is granted and approved, and the Transaction contemplated thereby and by the Asset Purchase Agreement and Transaction Documents are approved, in each case as set forth in this Sale Order.

2.    This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein in their entirety by reference.

3.    Other than the Adjourned Objections, which are hereby preserved pending further order of the Court, all objections to the Motion or the relief requested therein that have not been withdrawn, waived, resolved, adjourned, or otherwise settled as set forth herein, as announced to this Court at the Sale Hearing or by stipulation filed with this Court, and all reservations of rights included therein, are hereby denied and overruled on the merits. Those parties who did not object to the Motion or the entry of this Sale Order in accordance with the Bidding Procedures Order, or

who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including, without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

### APPROVAL OF ASSET PURCHASE AGREEMENT; BINDING NATURE

4.     The Asset Purchase Agreement and the other Transaction Documents, and all of the terms and conditions thereof, are hereby approved as set forth herein, specifically including the mutual releases set forth in Section 7.16 of the Asset Purchase Agreement, subject in all cases to the terms thereof.

5.     The consideration provided by the Buyer for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and shall be deemed for all purposes to constitute reasonably equivalent value, fair value, and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act, the Uniform Fraudulent Conveyance Act, and any other applicable law, and the Transaction may not be avoided or rejected by any Person, or costs or damages imposed or awarded against the Buyer, under section 363(n) or any other provision of the Bankruptcy Code.

6.     Pursuant to sections 105, 363, and 365 of the Bankruptcy Code, the Debtors are authorized and empowered to, and shall, take any and all actions necessary or appropriate to (i) consummate the Transaction pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement and the other Transaction Documents and otherwise comply with the terms of this Sale Order, and (ii) execute and deliver, perform under, consummate, implement, and take any and all other acts or actions as may be reasonably necessary or appropriate to the performance of their obligations as contemplated by the Asset Purchase Agreement and the other Transaction Documents, in each case without further notice to or order of this Court. The Transaction authorized herein shall immediately be of full force and effect.

7.      In accordance with this Sale Order and subject to the terms of the Asset Purchase Agreement, each of the following Debtor entities (i) JHO Intellectual Property Holdings, LLC; (ii) JHO Real Estate Investment, LLC; (iii) Quash Seltzer, LLC; and (iv) Rainbow Unicorn Bev, LLC, is authorized, but not directed, in its sole discretion, to (a) contribute and transfer all of its respective right, title, and interest (free and clear of all Liabilities and Encumbrances other than the Assumed Liabilities and Permitted Encumbrances or as set forth on Section 2.1 of the Seller Disclosure Schedule in the Asset Purchase Agreement) in and to all of the assets (including any Purchased Assets) of or held by such Debtor entity to Debtor Vital Pharmaceuticals via a contribution of such assets to Debtor Vital Pharmaceuticals and such contribution and transfer shall be deemed to have occurred prior to the Closing, and/or (b) assign and transfer all of the Liabilities of such Debtor entity (including any Assumed Liabilities) to Debtor Vital Pharmaceuticals via an assignment and assumption of such Liabilities by Debtor Vital Pharmaceuticals.

8.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in the Debtors, all holders of any Claim(s) (whether known or unknown) against the Debtors, all holders of Interests (whether known or unknown) against, in, or on, all or any portion of the Purchased Assets, all non-Debtor parties to the Assumed Agreements and Assumed Real Property Leases, the Buyer, and all successors and assigns of the foregoing, including, without limitation, any trustee, if any, subsequently appointed in these Chapter 11 Cases or upon a conversion to Chapter 7 under the Bankruptcy Code of these Chapter 11 Cases, or, to the extent applicable, other plan fiduciaries, plan administrators, liquidating trustees, or other estate representatives appointed or elected in the Debtors' Chapter 11 Cases.

## TRANSFER OF ASSETS FREE AND CLEAR OF INTERESTS; INJUNCTION

9.      Pursuant to sections 105(a), 363(b), 363(f), 365(a), 365(b), and 365(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Purchased Assets, including but not limited to the Assumed Agreements and Assumed Real Property Leases, to the Buyer on the Closing Date in accordance with the Asset Purchase Agreement and the other Transaction Documents.  Upon and as of the Closing Date, such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets free and clear of all Interests of any kind or nature whatsoever (except as expressly set forth in the Asset Purchase Agreement with respect to Permitted Encumbrances and Assumed Liabilities) and shall vest the Buyer with all right, title, and interest to and in such Purchased Assets subject only to the Permitted Encumbrances and Assumed Liabilities expressly set forth in the Asset Purchase Agreement.  For the avoidance of doubt, the transfer of the Purchased Assets by the Debtors to the Buyer pursuant to the Asset Purchase Agreement and this Sale Order shall be free and clear of the Interests set forth in Requirements 11, 16, 19, 20, 21, 22, 23, 26, and 34 of Schedule B, Part I of the Form Title Commitment attached as **Exhibit E** hereto, including, without limitation, the Interests described on the attached **Exhibit D** (Schedule of Interests).

10.     All such Interests shall attach solely to the Sale Proceeds with the same validity, priority, force, and effect that they now have as against the Purchased Assets, subject to any claims and defenses the Debtors and their estates or any other Person may possess with respect thereto. This Sale Order shall be effective as a determination that, on and as of the Closing, all Interests of any kind or nature whatsoever (except for Assumed Liabilities and Permitted Encumbrances) have been unconditionally released, discharged, and terminated in, on, or against the Purchased Assets (but not the proceeds thereof).  The provisions of this Sale Order authorizing and approving the transfer of the Purchased Assets free and clear of Interests shall be self-executing, and neither the

19

Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Sale Order.

11.     Except as expressly permitted by the Asset Purchase Agreement or this Sale Order, all Persons holding Interests (other than Assumed Liabilities and Permitted Encumbrances) are hereby forever barred, estopped, and permanently enjoined from asserting their respective Interests against the Buyer, and each of its properties and assets, including, without limitation, the Purchased Assets.

12.     On and after the Closing Date, the Buyer shall be authorized to execute and file such documents, and to take all other actions as may be necessary, on behalf of each holder of an Interest to release, discharge, and terminate such Interests in, on and against the Purchased Assets (but not the proceeds thereof) as provided for herein, as such Interests may have been recorded or may otherwise exist.  On and after the Closing Date, and without limiting the foregoing, the Buyer shall be authorized to file termination statements, mortgage releases, or lien terminations in any required jurisdiction to remove any mortgage, record, notice filing, or financing statement recorded to attach, perfect, or otherwise notice any Interest that is extinguished or otherwise released pursuant to this Sale Order.  This Sale Order constitutes authorization under all applicable jurisdictions and versions of the Uniform Commercial Code (the "UCC") and other applicable law for the Buyer to file UCC and other applicable termination statements with respect to all security interests in, liens on, or other Interests in the Purchased Assets.

13.     On and after the Closing, the Persons holding an Interest (other than an Assumed Liability or Permitted Encumbrance expressly set forth in the Asset Purchase Agreement) shall execute such documents and take all other actions as may be reasonably necessary to release their

respective Interests in the Purchased Assets (but not the proceeds thereof), as such Interests may have been recorded or otherwise filed. The Buyer may, but shall not be required to, file a certified copy of this Sale Order in any filing or recording office in any federal, state, county, or other jurisdiction in which the Debtors are incorporated or has real or personal property, or with any other appropriate clerk or recorded with any other appropriate recorder, and such filing or recording shall be accepted and shall be sufficient to release, discharge, and terminate any of the Interests as set forth in this Sale Order as of the Closing Date. All Persons that are in possession of any portion of the Purchased Assets on the Closing Date shall promptly surrender possession thereof to the Buyer at the Closing.

14.     On and after the Closing Date, no holder of an Interest in or against the Debtors or the Purchased Assets (other than Assumed Liabilities and Permitted Encumbrances) shall interfere with the Buyer's title to, or use and enjoyment of, the Purchased Assets based on or related to such Interest.

15.     The transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement and the other Transaction Documents does not require any consents other than specifically provided for in the Asset Purchase Agreement or as otherwise provided for herein.

16.     Upon consummation of the Sale and the Closing Date, other than with respect to payment of Cure Costs, all cash proceeds of the Sale (the "Sale Proceeds") will be applied in the following order:

> i.     *First*, the full amount necessary, currently estimated at $16 million, out of the Sale Proceeds (the "Asserted Lien Amount") to satisfy in full the liens and claims of mechanics, repairmen, workmen, suppliers or materialmen liens (the "Asserted Liens") as set forth in Section 3.1(c) of the Asset Purchase Agreement, and initially

deposited into a segregated interest bearing account (the "<u>Asserted Lien Escrow Account</u>") to be held and disbursed pursuant to the terms set forth in paragraph 17 of this Sale Order;

ii.     *Second,* an amount of Sale Proceeds equal to $8,000,000 shall be set aside in a segregated account reserved for the payment of the WARN Act and other employee liabilities described in Section 3.1(c) of the Asset Purchase Agreement, subject in all respects to the terms thereof;

iii.    *Third,* an amount of Sale Proceeds equal to $1,000,000 to pay in full all principal and interest under the loan agreements, financing agreements, or lease arrangements with respect to the vehicles that constitute the Purchased Assets to the extent outstanding as of the Closing in accordance with Section 7.22 of the Asset Purchase Agreement;

iv.     *Fourth,* an amount of Sale Proceeds equal to $20,000,000 (in respect of items (a), (b), and (c) of the Carve-Out (as defined in paragraph 37 of the Final DIP Order)) plus an estimate not to exceed $50,000 (in respect of items (d), (e), and (f) of the Carve-Out), shall be deemed deposited into a Carve-Out Escrow (as defined in paragraph 37 of the Final DIP Order), in full and complete satisfaction of any obligations in connection with the Carve-Out as defined in the Final DIP Order, or any other obligations (if any) of the DIP Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Lenders (each as defined in the Final DIP Order) in respect of professional fees and expenses (and other Carve-Out obligations) payable in connection with these Chapter 11 Cases and without for avoidance of

doubt the requirement of a Carve-Out Termination Notice or any other notice or action;

v. *Fifth,* an amount equal to the sum of (A) $287,000,000, <u>less</u> (B) any unfunded portion of the commitments under the DIP Facility at such time, <u>plus</u> (C) an amount equal to the unreimbursed professional fees and expenses of the DIP Agent accrued through the Closing Date, <u>less</u> (D) an amount equal to the aggregate amount of interest accrued in respect of the DIP Facility that the Debtors pay to the DIP Agent during the period from June 6, 2023 through the Closing Date, if any, to the outstanding obligations under the DIP Facility (to be applied in accordance with the DIP Facility or as otherwise determined by the Administrative Agent under the DIP Facility and otherwise permitted under applicable law (the "<u>DIP Partial Payoff</u>")); and

vi. *Sixth,* the remainder of the Sale Proceeds shall be deposited into a segregated interest-bearing account (the "<u>Sale Proceeds Account</u>") to fund expenses of the Debtors' estates in the ordinary course, or to make such other distributions to creditors as may be authorized by further Court order.

Reasonable notice of any request for the release of Sale Proceeds from the Sale Proceeds Account or the Asserted Lien Escrow Account shall be filed with this Court and given to the Debtors and all parties in interest asserting a Claim to, or Interest in, the Sale Proceeds and the rights of the Debtors and all parties in interest to object to the release of all or any part of the Sale Proceeds from the Sale Proceeds Account or the Asserted Lien Escrow Account is hereby fully preserved. All Claims and Interests will attach to the Sale Proceeds to the same extent and with the same priority as existed immediately prior to consummation of the Sale, subject to any claims,

defenses and objections, if any, that the Debtors, their estates, or any other party in interest may possess with respect thereto; *provided that* the foregoing does not alter or impair any parties' rights provided under the Final DIP Order (except as specifically provided above).

17.     Notwithstanding anything in this Sale Order or the Asset Purchase Agreement to the contrary, Sale Proceeds in an amount equal to the Asserted Lien Amount shall be placed in the Asserted Lien Escrow Account as soon as reasonably practicable after receipt of the Sale Proceeds and shall remain in the Asserted Lien Escrow Account pending further order of the Court or agreement between the Debtors and Stellar Group, Inc.  Any property transferred to the Buyer pursuant to the Sale that is subject to the Asserted Liens shall pass free and clear of all Interests notwithstanding the Asserted Liens.  For the avoidance of doubt, to the extent that the Asserted Liens are deemed valid by order of the Court or agreement between the Debtors and Stellar Group, Inc., such liens shall attach solely to the funds in the Asserted Lien Escrow Account.

18.     On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to the Buyer of the Purchased Assets and the Debtors' interests in the Purchased Assets acquired by the Buyer under the Asset Purchase Agreement.  This Sale Order is and shall be effective as a determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date (other than Assumed Liabilities and Permitted Encumbrances), shall have been unconditionally released, discharged, and terminated to the fullest extent permitted by applicable law, and that the conveyances described herein have been effected.

19.     This Sale Order is and shall be binding upon and govern the acts of all Persons (including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, secretaries of state, and federal, state, and local officials) who may be required by operation of law, the duties of their office, or contract to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease. Each of the foregoing Persons shall accept for filing any and all of the documents and instruments necessary and appropriate to release, discharge, and terminate any of the Interests or to otherwise consummate the Transaction contemplated by this Sale Order, the Asset Purchase Agreement, or any Transaction Document.

## ASSUMED AGREEMENTS AND
## ASSUMED REAL PROPERTY LEASES; CURE PAYMENTS

20.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing Date, the Debtors' assumption, assignment, and transfer to the Buyer of the Assumed Agreements and Assumed Real Property Leases is hereby authorized and approved in full subject to the terms set forth below.

21.     Upon and as of the Closing, the Debtors are authorized and empowered to, and shall, assume, assign, and/or transfer each of the Assumed Agreements and Assumed Real Property Leases to the Buyer free and clear of all Interests (except as expressly set forth in the Asset Purchase Agreement with respect to Permitted Encumbrances and Assumed Liabilities). The payment of the applicable Cure Costs (if any), or—with respect to any disputed Cure Costs— the reservation by the Debtors (or the Buyer on behalf of the Debtors) of an amount of cash that is equal to the lesser of (i) the amount of any cure or other compensation asserted by the applicable counterparty to such Assumed Agreement or Assumed Real Property Lease as required under section 365 of the Bankruptcy Code, or (ii) the amount approved by order of this Court to reserve for such payment (such lesser amount, the "Alleged Cure Claim") shall, pursuant to section 365 of the Bankruptcy Code and other applicable law, (a) effect a cure, or provide adequate assurance

of cure, of all defaults existing thereunder as of the Closing Date, and (b) compensate, or provide adequate assurance of compensation, for any actual pecuniary loss to such non-Debtor party resulting from such default.  Accordingly, on and as of the Closing Date, other than such payment or reservation, neither the Debtors nor the Buyer shall have any further liabilities or obligations to the non-Debtor counterparties to the Assumed Agreements and Assumed Real Property Leases with respect to, and the non-Debtor counterparties to the Assumed Agreements and Assumed Real Property Leases shall be forever barred, estopped, and permanently enjoined from seeking, any additional amounts or Claims that arose, accrued, or were incurred at any time on or prior to the Closing Date on account of the Debtors' cure or compensation obligations arising under section 365 of the Bankruptcy Code.  Notwithstanding anything to the contrary in the Motion, the Asset Purchase Agreement, or this Sale Order, from and after the assumption and assignment of such Assumed Agreements and Assumed Real Property Leases after the Closing, the Buyer shall comply with the terms of each Assumed Agreement and Assumed Real Property Lease.  The Buyer has provided adequate assurance of future performance under the relevant Assumed Agreements and Assumed Real Property Leases within the meaning of section 365(f) of the Bankruptcy Code.

22.     To the extent any provision in any Assumed Agreement or Assumed Real Property Lease assumed and assigned pursuant to this Sale Order (including, without limitation, any "change of control" provision) (i) prohibits, restricts, or conditions, or purports to prohibit, restrict, or condition, such assumption or assignment, or (ii) is modified, breached, or terminated, or deemed modified, breached, or terminated by any of the following: (a) the commencement of these Chapter 11 Cases; (b) the insolvency or financial condition of the Debtors at any time before the closing of these Chapter 11 Cases; (c) the Debtors' assumption and assignment of such Assumed Agreement or Assumed Real Property Lease; or (d) the consummation of the Transaction, then

such provision shall be deemed modified so as to not entitle the non-Debtor counterparty thereto to prohibit, restrict, or condition such assumption or assignment, to modify or terminate such Assumed Agreement or Assumed Real Property Lease, or to exercise any other default-related rights or remedies with respect thereto, including, without limitation, any such provision that purports to allow the non-Debtor counterparty thereto to recapture such Assumed Agreements and Assumed Real Property Leases, impose any penalty thereunder, condition any renewal or extension thereof, impose any rent acceleration or assignment fee, or increase or otherwise impose any other fees or other charges in connection therewith.   All such provisions constitute unenforceable anti-assignment provisions that are void *ab initio* and of no force and effect pursuant to sections 365(b), 365(e), and 365(f) of the Bankruptcy Code; *provided, however*, this paragraph 22 shall only apply to the assumption and assignment of the Assumed Agreements and Assumed Real Property Leases effectuated as part of the Sale and nothing in this Sale Order shall permit any further or other assignment, assignment and assumption, or other transfer of any Assumed Agreements or Assumed Real Property Leases except as expressly permitted under and in accordance with the terms of such Assumed Agreements and Assumed Real Property Leases.

23.     All requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assumed Agreements and Assumed Real Property Leases have been satisfied.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title, and interest of the Debtors in and under the Assumed Agreements and Assumed Real Property Leases free and clear of any Interest (other than Permitted Encumbrances and Assumed Liabilities as provided for in the Asset Purchase Agreement), and each Assumed Agreement or Assumed Real Property Lease shall be fully enforceable by the Buyer in accordance

with its respective terms and conditions, except as limited or modified by the provisions of this Sale Order. Upon and as of the Closing, the Buyer shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Agreements and Assumed Real Property Leases and, accordingly, the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assumed Agreements and Assumed Real Property Leases. The Buyer shall have no liability arising or accruing under the Assumed Agreements and Assumed Real Property Leases on or prior to the Closing Date, except as otherwise expressly provided in the Asset Purchase Agreement or this Sale Order.

24. To the extent a non-Debtor counterparty to a Assumed Agreement or Assumed Real Property Lease failed to timely object to a Cure Cost in accordance with the Bidding Procedures Order and Assumption Notice, such Cure Cost shall be deemed to be finally determined and any such non-Debtor counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Cost at any time, and such Cure Cost, when paid, shall be deemed to resolve any defaults or other breaches with respect to any Assumed Agreement or Assumed Real Property Lease to which it relates. Unless as otherwise set forth in this Sale Order or the Asset Purchase Agreement, the non-Debtor counterparties to the Assumed Agreements and Assumed Real Property Leases are barred from asserting against the Debtors, their estates, and the Buyer, any default or unpaid obligation allegedly arising or occurring before the Closing Date, any pecuniary loss resulting from such default, or any other obligation under the Assumed Agreements and Assumed Real Property Leases arising or incurred prior to the Closing Date, other than the applicable Cure Costs. Upon the payment of the applicable Cure Costs or the reservation of the Alleged Cure Claims, if any, the Assumed Agreements and Assumed Real Property Leases will remain in full force and effect, and no default shall exist, or be deemed to exist, under the Assumed

28

Agreements and Assumed Real Property Leases as of the Closing Date nor shall there exist, or be deemed to exist, any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

25. All counterparties to the Assumed Agreements and Assumed Real Property Leases shall be deemed to have consented to such assumption and assignment under section 365(c)(1)(B) of the Bankruptcy Code and the Buyer shall enjoy all of the Debtors' rights, benefits, and privileges under each such Assumed Agreement and Assumed Real Property Lease as of the applicable date of assumption and assignment without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof.

26. Upon payment of the Cure Costs, no default or other obligations arising prior to the Closing Date shall exist under any Assumed Agreement or Assumed Real Property Lease, and, except as otherwise set forth in this Sale Order, each non-Debtor party is forever barred and estopped from: (i) declaring a default by the Debtors or the Buyer under such Assumed Agreement or Assumed Real Property Lease; (ii) raising or asserting against the Debtors or the Buyer, or the property of either of them, any assignment fee, default, breach, or claim of pecuniary loss, or condition to assignment, arising under or related to the Assumed Agreements and Assumed Real Property Leases; or (iii) taking any other action against the Buyer as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assumed Agreement or Assumed Real Property Lease, in each case in connection with the Sale. Except as otherwise set forth in this Sale Order, each non-Debtor counterparty is also forever barred and estopped from raising or asserting against the Buyer any assignment fee, default, breach, Claim, pecuniary loss, or condition to assignment arising under or related to the Assumed

Agreements and Assumed Real Property Leases existing as of the Closing Date or arising by reason of the Closing of the Sale other than the Cure Costs.

27.     Nothing in this Sale Order, the Motion, or in any notice or any other document is or shall be deemed an admission by the Debtors that any Assumed Agreement or Assumed Real Property Lease is an executory contract or unexpired lease under section 365 of the Bankruptcy Code.  Individual purchase orders issued by vendors with whom the Debtors have master supply agreements shall not be deemed to constitute one and the same contract as the master supply agreement.  The Debtors may assume and assign to the Buyer a vendor's master supply agreement without assuming and assigning or paying claims arising under individual purchase orders issued by such vendor, and such claims shall not constitute Cure Costs under the master supply agreement.

28.     The failure of the Debtors or the Buyer, or any non-Debtor party to enforce at any time one or more terms or conditions of any Assumed Agreement or Assumed Real Property Lease shall not be a waiver of such terms or conditions or of their respective rights to enforce every term and condition of the Assumed Agreements and Assumed Real Property Leases.

## ADDITIONAL INJUNCTION; NO SUCCESSOR LIABILITY

29.     Effective upon the Closing Date and except as expressly set forth in the Asset Purchase Agreement with respect to Permitted Encumbrances and Assumed Liabilities, all Persons forever barred, estopped, and permanently enjoined from asserting against the Buyer any Interest of any kind or nature whatsoever such Person had, has, or may have against or in the Debtors, their estates, officers, directors, managers, shareholders, or the Purchased Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action or other proceeding, the employment of process, or any act (whether in law or equity, in any judicial, administrative, arbitral, or other proceeding) to collect or recover any Interest; (ii) enforcing,

attaching, collecting, or recovering in any manner any judgment, award, decree, or order with respect to an Interest; (iii) creating, perfecting, or enforcing any Interest; (iv) asserting any right of subrogation, setoff or recoupment of any kind with respect to an Interest (except if such right was asserted before the Petition Date, or preserved in a timely filed proof of claim or motion filed with the Court); (v) commencing or continuing any action in any manner or place, that does not comply with or is inconsistent with the provisions of this Sale Order, other orders of this Court, the Asset Purchase Agreement, the other Transaction Documents, or any other agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating, failing, or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets in connection with the Sale, in each case of (i) through (vi), as against the Buyer, or any of its affiliates or subsidiaries, or any of their respective Representatives, or any of its or their respective property or assets, including the Purchased Assets.

30.     To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Purchased Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, deemed to be transferred to the Buyer as of the Closing Date.

31.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Purchased Assets sold, transferred, assigned, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the Sale.  Each and every federal, state, and local governmental agency or department is hereby authorized and directed to accept any and all

documents and instruments necessary and appropriate to consummate the Sale set forth in the Asset Purchase Agreement.

32.     Subject to the terms, conditions, and provisions of this Sale Order, Persons are hereby forever prohibited and barred from taking any action that would adversely affect or interfere (i) with the ability of the Debtors to sell and transfer the Purchased Assets to Buyer in accordance with the terms of the Asset Purchase Agreement (subject to the Permitted Encumbrances and Assumed Liabilities) and this Sale Order, and (ii) with the ability of the Buyer to acquire, take possession of, use and operate the Purchased Assets in accordance with the terms of the Asset Purchase Agreement and this Sale Order.

33.     The Buyer shall not be deemed, as a result of any action taken in connection with the Transaction contemplated by the Asset Purchase Agreement or the Transaction Documents to: (i) be a successor to the Debtors or their estates; (ii) have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates; (iii) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors; (iv) have a common identity with the Debtors; (v) have acquired the trade or business of any of the Debtors for any purpose under applicable U.S. federal law (including the Bankruptcy Code and the Internal Revenue Code of 1986, as amended); or (vi) be held out to the public as a continuation of the Debtors or the Debtors' trade or business.

34.     Except as expressly set forth in the Asset Purchase Agreement or this Sale Order with respect to Assumed Liabilities or Permitted Encumbrances, the transfer of the Purchased Assets, including, without limitation, the assumption, assignment, and transfer of any Assumed Agreement and Assumed Real Property Lease, to the Buyer shall not cause or result in, or be deemed to cause or result in, the Buyer, any of its affiliates or subsidiaries, or any of their

respective representatives, having any liability, obligation, or responsibility for, or any Purchased Assets being subject to or being recourse for, any Interest whatsoever, whether arising under any doctrines of successor, transferee, or vicarious liability or any kind or character, including, but not limited to, under any theory of foreign, federal, state, or local antitrust, environmental, successor, tax, ERISA, assignee, or transferee liability, labor, product liability, employment, *de facto* merger, substantial continuity, or other law, rule, or regulation, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, breach of fiduciary duty, aiding or abetting breach of fiduciary duty, or otherwise, whether at law or in equity, directly or indirectly, and whether by payment or otherwise.  The Buyer shall not be deemed to have expressly or implicitly assumed any of the Debtors' liabilities (other than a Permitted Encumbrance or Assumed Liability expressly set forth in the Asset Purchase Agreement).  Except as otherwise provided herein or in the Asset Purchase Agreement, the transfer of the Purchased Assets to the Buyer pursuant to the Asset Purchase Agreement shall not result in the Buyer or the Purchased Assets having any liability or responsibility for, or being required to satisfy in any manner, whether in law or in equity, whether by payment, setoff, or otherwise, directly or indirectly, any claim against the Debtors or against any insider of the Debtors or Interests (other than Assumed Liabilities or Permitted Encumbrances).

## **GOOD FAITH**

35.     The Transaction contemplated by this Sale Order, the Asset Purchase Agreement, and the other Transaction Documents is undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale

and Transaction shall not alter, affect, limit, or otherwise impair the validity of the Sale or Transaction (including the assumption, assignment, and/or transfer of the Assumed Agreements and Assumed Real Property Leases), except for so long as such authorization and consummation are duly stayed pending such appeal. The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to, and is hereby granted, the full rights, benefits, privileges, and protections of section 363(m) of the Bankruptcy Code. The Buyer is also not an "insider" of any Debtor, as that term is defined in the Bankruptcy Code.

## OTHER PROVISIONS AND RESOLUTIONS OF SALE OBJECTIONS

36.     Pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, and 9014, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the stay provisions provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby expressly waived and shall not apply. In the absence of any Person obtaining a stay pending appeal, the Debtors and the Buyer are free to close the Transaction under the Asset Purchase Agreement at any time pursuant to the terms thereof.

37.     The Buyer shall not be required, pursuant to section 365(l) of the Bankruptcy Code or otherwise, to provide any additional deposit or security with respect to any of the Assumed Agreements and Assumed Real Property Leases to the extent not previously provided by the Debtors.

38.     Neither the Buyer nor the Debtors shall have an obligation to close the Transaction until all conditions precedent in the Asset Purchase Agreement to each of their respective obligations to close the Transaction have been met, satisfied, or waived in accordance with the terms of the Asset Purchase Agreement. The provisions of this Sale Order are self-executing. In the absence of any Person obtaining a stay pending appeal, the Debtors and the Buyer are free to close the Transaction under the Asset Purchase Agreement at any time pursuant to the terms

thereof.  The Transaction contemplated by the Asset Purchase Agreement is undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the sale of the Purchased Assets to the Buyer (including the assumption and assignment by the Debtors of any of the Assumed Agreements and Assumed Real Property Leases), except for so long as such authorization is duly stayed pending such appeal.  The Buyer is a buyer in good faith of the Purchased Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

39.     Nothing in this Sale Order shall modify or waive any closing conditions or termination rights set forth in the Asset Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

40.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Transaction.

41.     The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Asset Purchase Agreement be authorized and approved in its entirety.

42.     The Asset Purchase Agreement and the other Transaction Documents may be modified, amended, or supplemented in a writing signed by the parties thereto, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates or their creditors, without further notice to or order of this Court.   Any modifications, amendments or supplements having a material adverse effect on the Debtors' estates or their creditors shall be subject to the approval of this Court after notice and a hearing.

43.    <u>Broward County</u>.  To the extent that Broward County, Florida ("<u>Broward County</u>"), has valid, perfected, enforceable, senior and non-avoidable liens for 2023 property taxes and non-ad valorem assessments arising under state law on any proceeds from the Transaction (the "<u>2023 Broward County Liens</u>"), proceeds shall be placed in a segregated account in the aggregate amount of $125,965.61 as adequate protection for Broward County's claims or used to pay Broward County on account of such claims promptly following Closing.  The 2023 Broward County Liens shall attach to such proceeds to the same extent and with the same priority as the liens they now hold against the property of the Debtors.  Any funds placed in a segregated account shall be on the order of adequate protection and shall constitute neither the allowance of the claims of Broward County, nor a cap on the amounts they may be entitled to receive.  Furthermore, the 2023 Broward County Liens shall remain subject to any objections any party would otherwise be entitled to raise as to the priority, validity or extent of such liens.  Any funds segregated pursuant to this paragraph may be distributed only upon agreement between Broward County and the Debtors, or by subsequent order of the Court, duly noticed to Broward County.

44.    <u>Chubb</u>.  Notwithstanding anything to the contrary in the Motion, the Asset Purchase Agreement, any lists of Assumed Agreements and Assumed Real Property Leases to be assumed and assigned and/or any Assumption Notices, this Sale Order, or any documents relating to any of the foregoing: nothing shall permit or otherwise effect a sale, an assignment, or any other transfer of: (i) any insurance policies that have been issued by Federal Insurance Company, Great Northern Insurance Company, Chubb Custom Insurance Company, Vigilant Insurance Company, and/or any of their U.S.-based affiliates and successors (collectively, the "<u>Chubb Companies</u>") and all agreements, documents or instruments relating thereto (collectively, the "<u>Chubb Insurance Contracts</u>"); and/or (ii) any rights, proceeds, benefits, claims, rights to payments and/or recoveries

under such Chubb Insurance Contracts to the Buyer; *provided, however*, that to the extent any claim with respect to the Purchased Assets arises that is covered by the Chubb Insurance Contracts, the Debtors may pursue such claim in accordance with the terms of the Chubb Insurance Contracts, and, if applicable, turn over to the Buyer any such insurance proceeds (each, a "Proceed Turnover"), *provided, further, however*, that the Chubb Companies shall not have any duty to effectuate a Proceed Turnover or liability related to a Proceed Turnover.

45.     OBI/Monster Escrow Account.   The *Order Granting Debtors' and Creditors Monster Energy Company and Orange Bang, Inc.'s Joint Agreed Motion to Approved Agreement Regarding Royalty that Accrued Postpetition* [ECF No. 639] (the "Royalty Order") is modified such that both the Debtors' and Buyers' obligations under the Royalty Order shall be deemed satisfied following distribution of the OBI/Monster Escrow Amount (and if applicable, payment of such amount from reserves from the Sale Proceeds established in accordance with this Sale Order) in accordance with Section 7.19 of the Asset Purchase Agreement.  For the avoidance of doubt, upon Closing of the Transaction under the Asset Purchase Agreement and the satisfaction of the terms of Section 7.19 of the Asset Purchase Agreement, the Debtors shall have no further financial obligations to MEC or Orange Bang, Inc. with respect to the Postpetition Royalty (as defined in the Royalty Order).

46.     This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b), to, among other things: (i) interpret, implement, and enforce the terms and provisions of this Sale Order, the Asset Purchase Agreement, the Transaction Documents, and any amendments thereto and any waivers and consents given thereunder; (ii) compel delivery of the Purchased Assets to the Buyer; (iii) compel performance of obligations owed to the Debtors; (iv) resolve any disputes related to the Transaction Documents; (v) compel delivery of any waivers, releases, or

other related documentation reasonably requested by the Debtors or the Buyer to evidence the release of any Interests in the Purchased Assets; (vi) enforce the injunctions and limitations of liability set forth in this Sale Order; and (vii) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assumed Agreements and Assumed Real Property Leases.

47.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

48.     Consistent with the terms of the Asset Purchase Agreement, the Debtors are authorized to change their legal names, and file any necessary documents to effectuate such name changes, without further order of the Court.  The Debtors shall file a motion to correct the debtor's name pursuant to Local Rule 1009-1(B).

49.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (i) these Chapter 11 Cases, (ii) any subsequent chapter 7 case into which these Chapter 11 Cases may be converted, or (iii) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Sale Order.  To the extent of any such conflict or derogation, the terms of this Sale Order shall govern.

50.     To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion, the terms of this Sale Order shall govern.

51.     To the extent there are any inconsistencies between the terms of this Sale Order, on the one hand, and the Asset Purchase Agreement or any Transaction Document, on the other hand, the terms of this Sale Order shall govern.

52.     The provisions of this Sale Order are non-severable and mutually dependent.

# **EXHIBIT A**

## **Asset Purchase Agreement**

# EXHIBIT B

## Schedule of Cure Costs

## EXHIBIT C

**Adjourned Objections**

## **EXHIBIT D**

### **Schedule of Interests**

# EXHIBIT E

**Schedule B, Part I of the Form Title Commitment**

**Exhibit B**

**Form of Assignment and Assumption Agreement**

(see attached)

*Agreed Form*

## EXHIBIT B

## FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "**Agreement**") is made and entered into as of [ ], 2023, by and among Vital Pharmaceuticals, Inc., a Florida corporation (the "**Seller**"), Vital Pharmaceuticals International Sales, Inc., a Delaware corporation, JHO Real Estate Investment, LLC, a Florida limited liability company, Quash Seltzer, LLC, a Florida limited liability company, JHO Intellectual Property Holdings, LLC, a Florida limited liability company, Rainbow Unicorn Bev, LLC, a Florida limited liability company (collectively, together with the Seller, the "**Assignors**" and each individually referred to as an "**Assignor**"), on the one hand, and Blast Asset Acquisition LLC, a Delaware limited liability company (the "**Assignee**"), on the other hand. The Assignors and the Assignee are collectively referred to herein as the "**Parties**" and individually as a "**Party**."

WHEREAS, the Assignors and the Assignee are parties to that certain Asset Purchase Agreement, dated as of June 28, 2023, with, solely for purposes of Section 7.16 thereof, Monster Energy Company, a Delaware corporation, and solely for purposes of Section 7.16 and Section 10.16 thereof, Monster Beverage Corporation, a Delaware corporation (the "**Purchase Agreement**"), pursuant to which the Assignee has agreed to purchase from the Selling Entities, and the Selling Entities have agreed to sell to the Assignee, the Purchased Assets, and the Assignee has agreed to assume from the Selling Entities the Assumed Liabilities, in each case pursuant to the terms and subject to the conditions set forth in the Purchase Agreement and further subject to any Final Order of the Bankruptcy Court in the Bankruptcy Case; and

WHEREAS, in connection with the Closing of the Transactions, each of the Assignors and the Assignee has agreed to deliver this Agreement to the other Party.

NOW, THEREFORE, in accordance with the Purchase Agreement and in consideration of the premises and of the mutual covenants and agreements contained herein and therein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Assignors and the Assignee, intending to be legally bound, hereby agree as follows:

**Section 1.** **Definitions.** Capitalized terms used but not defined herein shall have the meanings assigned thereto in the Purchase Agreement.

**Section 2.** **Assignment and Assumption of Purchased Assets.** Effective as of the Closing, the Assignors hereby sell, assign, convey, transfer and deliver to the Assignee, and the Assignee hereby purchases, acquires and accepts from the Assignors, all of such Assignors' right, title and interest, free and clear of all Liabilities and Encumbrances (other than the Assumed Liabilities and Permitted Encumbrances) in and to all of the Purchased Assets.

**Section 3.** **Assignment and Assumption of Assumed Liabilities.** Effective as of the Closing, the Assignors hereby assign, convey, transfer, set over and deliver to the Assignee, and

the Assignee hereby assumes and agrees to pay, perform and discharge when due, all of the Assumed Liabilities.

**Section 4.** <u>**Terms of the Purchase Agreement**</u>.  Each of the Assignors and the Assignee acknowledges and agrees that the representations, warranties and agreements contained in the Purchase Agreement, and any limitations thereon, shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.  This Agreement does not create or establish liabilities or obligations not otherwise created or existing under or pursuant to the Purchase Agreement.  Nothing contained in this Agreement, express or implied, is intended to or shall be construed to amend, modify, expand or limit the terms or conditions of the Purchase Agreement in any manner.  This Agreement is subject in all respects to the terms of the Purchase Agreement and, in the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

**Section 5.** <u>**No Third Party Beneficiaries**</u>.  This Agreement shall not confer any rights or remedies upon any Person other than the Assignors and the Assignee and their respective successors and permitted assigns.

**Section 6.** <u>**Additional Provisions**</u>.  The provisions contained in Sections 7.5 (Further Assurances), 10.1 (Amendment and Modification), 10.4 (Assignment), 10.5 (Severability), 10.6 (Governing Law), 10.8 (Submission to Jurisdiction; WAIVER OF JURY TRIAL), 10.9 (Counterparts), 10.11 (Entire Agreement) and 10.15 (Mutual Drafting; Headings; Information Made Available) of the Purchase Agreement are hereby incorporated by reference into this Agreement, *mutatis mutandis*, and made a part of this Agreement as if set forth fully herein.

*(Signature pages follow)*

US-DOCS\139717107.4

**IN WITNESS WHEREOF,** the Parties have executed this Assignment and Assumption Agreement as of the date first above written.

**ASSIGNORS:**

**VITAL PHARMACEUTICALS, INC.**

By: _____
Name:
Title:

**VITAL PHARMACEUTICALS
INTERNATIONAL SALES, INC.**

By: _____
Name:
Title:

**JHO INTELLECTUAL PROPERTY
HOLDINGS, LLC**

By: _____
Name:
Title:

**JHO REAL ESTATE INVESTMENT, LLC**

By: _____
Name:
Title:

**QUASH SELTZER, LLC**

By: _____
Name:
Title:

[SIGNATURE PAGE TO PROJECT BLAST ASSIGNMENT AND ASSUMPTION AGREEMENT]

**RAINBOW UNICORN BEV, LLC**


By: _____
Name:
Title:

**<u>ASSIGNEE</u>**

**BLAST ASSET ACQUISITION LLC**


By: _____
Name:
Title:

**Exhibit C**

**Form of Bill of Sale**

(see attached)

## EXHIBIT C

## FORM OF BILL OF SALE

THIS BILL OF SALE (this "**Bill of Sale**") is made and entered into as of [ ], 2023, by and among Vital Pharmaceuticals, Inc., a Florida corporation (the "**Seller**"), Vital Pharmaceuticals International Sales, Inc., a Delaware corporation, JHO Real Estate Investment, LLC, a Florida limited liability company, Quash Seltzer, LLC, a Florida limited liability company, JHO Intellectual Property Holdings, LLC, a Florida limited liability company, Rainbow Unicorn Bev, LLC, a Florida limited liability company (collectively, together with the Seller, the "**Selling Entities**" and each individually referred to as a "**Selling Entity**"), on the one hand, and Blast Asset Acquisition LLC, a Delaware limited liability company (the "**Buyer**"), on the other hand.  The Selling Entities and the Buyer are collectively referred to herein as the "**Parties**" and individually as a "**Party**."

**WHEREAS,** the Selling Entities and the Buyer are parties to that certain Asset Purchase Agreement, dated as of June 28, 2023, with, solely for purposes of Section 7.16 thereof, Monster Energy Company, a Delaware corporation, and solely for purposes of Section 7.16 and Section 10.16 thereof, Monster Beverage Corporation, a Delaware corporation (the "**Purchase Agreement**"), pursuant to which the Buyer has agreed to purchase from the Selling Entities, and the Selling Entities have agreed to sell to the Buyer, the Purchased Assets, and the Buyer has agreed to assume from the Selling Entities the Assumed Liabilities, in each case pursuant to the terms and subject to the conditions set forth in the Purchase Agreement and further subject to any Final Order of the Bankruptcy Court in the Bankruptcy Case; and

**WHEREAS,** in connection with the Closing, each of the Selling Entities and the Buyer has agreed to deliver this Bill of Sale to the other Party.

**NOW, THEREFORE,** in accordance with the Purchase Agreement and in consideration of the premises and of the mutual covenants and agreements contained herein and therein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Selling Entities and the Buyer, intending to be legally bound, hereby agree as follows:

**Section 1.**     **Definitions.**     Capitalized terms used but not defined herein shall have the meanings assigned thereto in the Purchase Agreement.

**Section 2.**     **Sale and Transfer of Purchased Assets.**     Upon the terms contained in the Purchase Agreement and pursuant to the terms of the Sale Order, each Selling Entity hereby irrevocably sells, assigns, conveys, transfers and delivers to the Buyer, and the Buyer hereby purchases, acquires and accepts from such Selling Entity, effective as of the Closing, all of such Selling Entity's right, title and interest, free and clear of all Liabilities and Encumbrances (other than the Assumed Liabilities and Permitted Encumbrances), in and to all of the Purchased Assets.

**Section 3.**     **Terms of the Purchase Agreement.**     Each of the Selling Entities and the Buyer acknowledges and agrees that the representations, warranties and agreements contained in the

Purchase Agreement, and any limitations thereon, shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.  This Bill of Sale does not create or establish liabilities or obligations not otherwise created or existing under or pursuant to the Purchase Agreement.  Nothing contained in this Bill of Sale, express or implied, is intended to or shall be construed to amend, modify, expand or limit the terms or conditions of the Purchase Agreement in any manner.  This Bill of Sale is subject in all respects to the terms of the Purchase Agreement and, in the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

**Section 4.** <u>**No Third Party Beneficiaries**</u>.  This Bill of Sale shall not confer any rights or remedies upon any Person other than the Selling Entities and the Buyer and their respective successors and permitted assigns.

**Section 5.** <u>**Additional Provisions**</u>.  The provisions contained in Sections 7.5 (Further Assurances), 10.1 (Amendment and Modification), 10.4 (Assignment), 10.5 (Severability), 10.6 (Governing Law), 10.8 (Submission to Jurisdiction; WAIVER OF JURY TRIAL), 10.9 (Counterparts), 10.11 (Entire Agreement) and 10.15 (Mutual Drafting; Headings; Information Made Available) of the Purchase Agreement are hereby incorporated by reference into this Bill of Sale, *mutatis mutandis*, and made a part of this Bill of Sale as if set forth fully herein.

*(Signature pages follow)*

**IN WITNESS WHEREOF,** the Parties hereto have executed this Bill of Sale as of the date first written above.

<u>**SELLING ENTITIES:**</u>

**VITAL PHARMACEUTICALS, INC.**

By: _____
Name:
Title:

**VITAL PHARMACEUTICALS INTERNATIONAL SALES, INC.**

By: _____
Name:
Title:

**JHO INTELLECTUAL PROPERTY HOLDINGS, LLC**

By: _____
Name:
Title:

**JHO REAL ESTATE INVESTMENT, LLC**

By: _____
Name:
Title:

**QUASH SELTZER, LLC**

By: _____
Name:
Title:

[SIGNATURE PAGE TO PROJECT BLAST BILL OF SALE]

**RAINBOW UNICORN BEV, LLC**


By: _____

Name:

Title:

[SIGNATURE PAGE TO PROJECT BLAST BILL OF SALE]

**ACKNOWLEDGED AND AGREED:**

<u>**BUYER**</u>**:**

**BLAST ASSET ACQUISITION LLC**


By: _____
Name:
Title:

**Exhibit D**

**Form of IP Assignment Agreement**

(see attached)

<u>EXHIBIT D</u>

**FORM OF INTELLECTUAL PROPERTY ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS INTELLECTUAL PROPERTY ASSIGNMENT AND ASSUMPTION AGREEMENT (this "**Agreement**") is made and entered into as of the Closing Date, [ ], 2023, by and among Vital Pharmaceuticals, Inc., a Florida corporation (the "**Seller**"), Vital Pharmaceuticals International Sales, Inc., a Delaware corporation, JHO Real Estate Investment, LLC, a Florida limited liability company, Quash Seltzer, LLC, a Florida limited liability company, JHO Intellectual Property Holdings, LLC, a Florida limited liability company, Rainbow Unicorn Bev, LLC, a Florida limited liability company (collectively, together with the Seller, the "**Assignors**" and each individually referred to as an "**Assignor**"), on the one hand, and Blast Asset Acquisition LLC, a Delaware limited liability company (the "**Assignee**"), on the other hand. The Assignors and the Assignee are collectively referred to herein as the "**Parties**" and individually as a "**Party**."

WHEREAS, the Assignors and the Assignee are parties to that certain Asset Purchase Agreement, dated as of June 28, 2023, with, solely for purposes of Section 7.16 thereof, Monster Energy Company, a Delaware corporation, and solely for purposes of Section 7.16 and Section 10.16 thereof, Monster Beverage Corporation, a Delaware corporation (the "**Purchase Agreement**"), pursuant to which the Assignee has agreed to purchase from the Assignors, and the Assignors have agreed to sell to the Assignee, the Seller IP (including the Seller IP set forth in <u>Exhibit A</u> attached hereto), and the Assignee has agreed to assume from the Assignors, the Seller IP, in each case pursuant to the terms and subject to the conditions set forth in the Purchase Agreement and further subject to any Final Order of the Bankruptcy Court in the Bankruptcy Case; and

WHEREAS, in connection with the Closing of the Transactions, each of the Assignors and the Assignee has agreed to deliver this Agreement to the other Party.

NOW, THEREFORE, in accordance with the Purchase Agreement and in consideration of the mutual covenants and agreements contained herein and therein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Assignors and the Assignee, intending to be legally bound, hereby agree as follows:

1. **Definitions**. Capitalized terms used but not defined herein shall have the meanings assigned thereto in the Purchase Agreement.

"**Seller IP**" shall mean all of each Assignor's right, title, and interest in and to certain intellectual property and proprietary rights, which may exist or be created under the laws of any jurisdiction in the world, including all: (a) rights associated with works of authorship (including can art, text, and graphics, packaging art, text and graphics, and website art, text and graphics, and copyrights in the Trademarks), including exclusive exploitation rights, mask work rights, copyrights, and moral and similar attribution rights; (b) any and all trade names, corporate names, logos, slogans, taglines, trade dress, trademarks, service marks, certification marks, collective marks, and other source or business identifiers and general intangibles of a like nature, and common law rights, as well as trademark and service mark registrations and applications therefor, and all goodwill associated with the foregoing, whether protected, created, or arising under the laws of the United States (including common law) or any other jurisdiction or under any international convention (collectively, the "Trademarks") and design rights; (c) proprietary rights in internet domain names, IP addresses, social media and third-party website handles, pages, and accounts including the access information for the same; (d) trade secrets, formulas, recipes, and ingredients lists, including the access information for the same, know-how, technical data, processes, techniques, lists of or information relating

1

to suppliers and customers, pricing lists and methodologies, cost and market share data, marketing and business plans, financial forecasts and histories, and budgets; (e) patents, industrial design and other industrial property rights; (f) rights in or relating to any and all registrations, goodwill, issuances, provisionals, reissuances, continuations, continuations in part, revisions, substitutions, reexaminations, renewals, extensions, combinations, divisions, and reissues of, and applications for, any of the foregoing rights and all common law rights; (g) rights of publicity; and (h) rights to prosecute, sue, enforce, or recover or retain damages, costs, or attorneys' fees with respect to the past, present and future infringement, misappropriation, dilution, unauthorized use or disclosure, or other violation of any of the foregoing, including the intellectual property set forth in Exhibit A.

2. **Assignment and Assumption of the Seller IP**.  Effective as of the Closing, the Assignors hereby sell, assign, convey, transfer and deliver to the Assignee, and the Assignee hereby purchases, acquires and accepts from the Assignors, all of such Assignors' entire right, title and interest throughout the world in and to all of the Seller IP, along with all goodwill associated therewith together with the Business associated with the Seller IP and the tangible assets as indicia of the Business and such goodwill.

3. **Further Assurances; Power of Attorney**.  From and after the Closing, upon the Assignee's reasonable request, the applicable Assignor shall use commercially reasonable efforts to execute any other agreements, documents, or assignments or take any other actions reasonably necessary in order to vest the Seller IP assigned herein in the Assignee, including any additional assignment documents as required in each jurisdiction.  Each Assignor, as applicable, hereby constitutes and appoints the Assignee as such Assignor's true and lawful attorney in fact, with full power of substitution in such Assignor's name and stead, for the Assignee's benefit, to take any and all steps, including proceedings at law, in equity or otherwise to execute, acknowledge, and deliver any and all instruments and assurances necessary or expedient in order to vest the aforesaid rights, or to protect the same, or to enforce any claim or right of any kind with respect thereto. Each Assignor hereby declares that the foregoing power is coupled with an interest and is irrevocable.

4. **No Third Party Beneficiaries**.  This Agreement shall not confer any rights or remedies upon any Person other than the Assignors and the Assignee and their respective successors and permitted assigns.

5. **Governing Law**.  Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Agreement, and all claims and causes of action arising out of, based upon, or related to this Agreement or the negotiation, execution or performance hereof, shall be governed by, and construed, interpreted and enforced in accordance with, the Laws of the State of Delaware, without regard to choice or conflict of law principles that would result in the application of any Laws other than the Laws of the State of Delaware.

6. **Counterparts**.  This Agreement, the agreements referred to herein, and each other agreement or instrument entered into in connection herewith or therewith or contemplated hereby or thereby, and any amendments hereto or thereto, to the extent signed and delivered by means of a photographic, photostatic, facsimile, portable document format (.pdf), DocuSign, electronic signature or similar reproduction of such signed writing using a facsimile machine or electronic mail shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. No party hereto or to any such agreement or instrument shall raise the use of a facsimile machine or electronic mail to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine or electronic mail or that any signature is in facsimile or electronic format (including .pdf or DocuSign) as a defense to the formation or enforceability of a contract and each such party forever waives any such defense. To the extent that any such signature is considered not acceptable by any

US-DOCS\142876333.2

authority or governmental body, the Parties agree to re-execute any such agreements in a manner acceptable to such authority or governmental body.

(SIGNATURE PAGES FOLLOW)

**IN WITNESS WHEREOF,** the Parties have executed this Assignment and Assumption Agreement as of the date first above written.

**ASSIGNORS:**

**VITAL PHARMACEUTICALS, INC.**

By: _____
Name:
Title:

**VITAL PHARMACEUTICALS INTERNATIONAL SALES, INC.**

By: _____
Name:
Title:

**JHO INTELLECTUAL PROPERTY HOLDINGS, LLC**

By: _____
Name:
Title:

**JHO REAL ESTATE INVESTMENT, LLC**

By: _____
Name:
Title:

**QUASH SELTZER, LLC**

By: _____
Name:
Title:

[SIGNATURE PAGE TO PROJECT BLAST IP ASSIGNMENT AND ASSUMPTION AGREEMENT]

4

**RAINBOW UNICORN BEV, LLC**

By: _____
Name:
Title:

[SIGNATURE PAGE TO PROJECT BLAST IP ASSIGNMENT AND ASSUMPTION AGREEMENT]

US-DOCS\142876333.2

**ASSIGNEE**

**BLAST ASSET ACQUISITION LLC**


By: _____

Name:

Title:

**EXHIBIT A**

Section 5.11(a)(i) (and all its applicable subparts) of the
Seller Disclosure Schedule to the Asset Purchase Agreement

**Exhibit E**

**Escrow Agreement**

(see attached)

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT (this "Agreement") is made and entered into as of June 28, 2023, by and among Vital Pharmaceuticals, Inc., a Florida corporation ("Seller"), Blast Asset Acquisition LLC, a Delaware limited liability company ("Buyer" and, together with the "Seller", sometimes referred to individually as a "Party" and collectively as the "Parties") and Citibank, N.A., as escrow agent (the "Escrow Agent"). Capitalized terms used but not defined herein shall have the meanings assigned to them in the Purchase Agreement (as defined below), provided that the Escrow Agent shall not be deemed to have any knowledge of or duty to ascertain the meaning of any capitalized term not otherwise defined in this Agreement.

## RECITALS

WHEREAS, Seller and Buyer are parties to that certain Purchase Agreement, dated as of the date hereof (as amended, supplemented or modified from time to time, the "Purchase Agreement"); and

WHEREAS, pursuant to Section 3.2 of the Purchase Agreement, concurrently with the execution of the Purchase Agreement, Seller shall deposit, and/or Seller shall cause to be deposited, with the Escrow Agent a deposit from Buyer in an amount equal to $25,000,000 (collectively, the "Escrow Amount") to be held in escrow in a segregated account established and maintained by the Escrow Agent as provided in this Agreement and the Purchase Agreement.

NOW THEREFORE, in consideration of the foregoing and of the mutual covenants hereinafter set forth, the parties hereto agree as follows:

1.      Appointment. The Parties hereby appoint the Escrow Agent as their escrow agent for the purposes set forth herein, and the Escrow Agent hereby accepts such appointment and agrees to act as escrow agent in accordance with the terms and conditions set forth herein.

2.      Escrow Funds.

(a)      Simultaneous with the execution and delivery of this Agreement, Seller is depositing, and/or Seller is causing to be deposited, with the Escrow Agent the Escrow Amount in immediately available funds. The Escrow Agent hereby acknowledges receipt of the Escrow Amount, together with all products and proceeds thereof, including all interest, dividends, gains and other income (collectively, the "Escrow Earnings") earned with respect thereto (collectively, the "Escrow Funds") in a separate and distinct account (the "Escrow Account"), subject to the terms and conditions of this Agreement. The Escrow Funds will be held by the Escrow Agent and will be disbursed only in accordance with the terms and subject to the conditions of this Agreement and the Purchase Agreement.

(b)      For greater certainty, all Escrow Earnings shall be retained by the Escrow Agent and reinvested in the Escrow Funds and shall become part of the Escrow Funds; and shall

be disbursed as part of the Escrow Funds in accordance with the terms and conditions of this Agreement.

      3.    <u>Investment of Escrow Funds</u>.

      (a)    Unless otherwise instructed in writing by the Parties, the Escrow Agent shall hold the Escrow Funds in an interest-bearing deposit obligation of Citibank, N.A., insured by the Federal Deposit Insurance Corporation ("<u>FDIC</u>") to the applicable limits.  The Parties acknowledge that the initial interest rate is subject to change from time to time and shall be reflected in the monthly statement provided to the Parties.  The Escrow Funds shall at all times remain available for distribution in accordance with <u>Section 4</u> below.

      (b)    The Escrow Agent shall send an account statement to each of the Parties on a monthly basis reflecting activity in the Escrow Account for the preceding month.

      (c)    The Escrow Agent shall have no responsibility for any investment losses resulting from the investment, reinvestment or liquidation of the escrowed property, as applicable, provided that the Escrow Agent has made such investment, reinvestment or liquidation of the escrowed property in accordance with the terms, and subject to the conditions of this Agreement.  The Escrow Agent does not have a duty nor will it undertake any duty to provide investment advice.

      4.    <u>Disposition and Termination of the Escrow Funds</u>.

      (a)    <u>Escrow Funds</u>.  The Parties shall act in accordance with, and the Escrow Agent shall hold and release the Escrow Funds only as provided in, this <u>Section 4(a)</u> as follows:

      (i)    Upon receipt of a Joint Release Instruction with respect to the Escrow Funds, the Escrow Agent shall promptly, but in any event within two (2) Business Days after receipt of a Joint Release Instruction, disburse all or part of the Escrow Funds in accordance with such Joint Release Instruction.

      (ii)    Upon receipt by the Escrow Agent of a copy of a Final Determination from any Party, the Escrow Agent shall on the second (2nd) Business Day following receipt of such Final Determination, disburse as directed, part or all, as the case may be, of the Escrow Funds (but only to the extent funds are available in the Escrow Account) in accordance with such Final Determination.  The Escrow Agent will act on such Final Determination without further inquiry.

      (iii)    All payments of any part of the Escrow Funds shall be made by wire transfer of immediately available funds or check as set forth in the Joint Release Instruction or Final Determination, as applicable.

      (iv)    Any instructions setting forth, claiming, containing, objecting to, or in any way related to the transfer or distribution of any funds on deposit in the Escrow Account under the terms of this Agreement must be in writing, executed by the appropriate Party or Parties as evidenced by the signatures of the person or persons set forth on <u>Exhibit A-1</u> and <u>Exhibit A-2</u> (an "<u>Authorized Representative</u>") and delivered to the Escrow Agent either (i) by

confirmed facsimile only at the fax number set forth in <u>Section 11</u> below or (ii) attached to an e-mail received on a Business Day to an e-mail address set forth in <u>Section 11</u> below. In the event a Joint Release Instruction or Final Determination is delivered to the Escrow Agent, whether in writing, by facsimile or otherwise, the Escrow Agent is authorized to seek confirmation of such instruction by telephone call back to the person or persons designated in <u>Exhibits A-1</u> and/or <u>A-2</u> annexed hereto (the "<u>Call Back Authorized Individuals</u>"), and the Escrow Agent may rely upon the confirmations of anyone purporting to be a Call Back Authorized Individual.  To assure accuracy of the instructions it receives, the Escrow Agent may record such call backs.  If the Escrow Agent is unable to verify the instructions, or is not satisfied with the verification it receives, it will not execute the instruction until all such issues have been resolved.  The persons and telephone numbers for call backs may be changed only in writing, executed by an Authorized Representative of the applicable Party, actually received and acknowledged by the Escrow Agent.

   (b) <u>Certain Definitions</u>.

    (i) "<u>Business Day</u>" means any day that is not a Saturday, a Sunday or other day on which banks are not required or authorized by law to be closed in New York, New York.

    (ii) "<u>Final Determination</u>" means a final non-appealable order of any court of competent jurisdiction which may be issued, together with (A) a written certificate of the prevailing Party to the effect that such order is final and non-appealable and from a court of competent jurisdiction having proper authority and (B) the written payment instructions of the prevailing Party to effectuate such order, in each case, executed by an Authorized Representative of the prevailing Party.

    (iii) "<u>Joint Release Instruction</u>" means the joint written instruction executed by an Authorized Representative of each of Buyer and Seller directing the Escrow Agent to disburse all or a portion of the Escrow Funds, as applicable.

    (iv) "<u>Person</u>" means an individual, a partnership, a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization or a governmental entity or any department, agency or political subdivision thereof.

   5. <u>Escrow Agent</u>.  The Escrow Agent undertakes to perform only such duties as are expressly set forth herein, which shall be deemed purely ministerial in nature, and no other duties, including but not limited to any fiduciary duties, shall be implied.  The Escrow Agent shall neither be responsible for, nor chargeable with, knowledge of, nor have any requirements to comply with, the terms and conditions of any other agreement, instrument or document between the Parties, in connection herewith, if any, including without limitation the Purchase Agreement, nor shall the Escrow Agent be required to determine if any Person has complied with any such agreements, nor shall any additional obligations of the Escrow Agent be inferred from the terms of such agreements, even though reference thereto may be made in this Agreement.  Notwithstanding the terms of any other agreement between the Parties, the terms and conditions of this Agreement will control the actions of the Escrow Agent.  The Escrow Agent may rely

upon and shall not be liable for acting or refraining from acting upon any Joint Release Instruction or Final Determination furnished to it hereunder and reasonably believed by it to be genuine and to have been signed by an Authorized Representative of the proper Party or Parties. Concurrent with the execution of this Agreement, the Parties shall deliver to the Escrow Agent authorized signers' forms in the form of <u>Exhibit A-1</u> and <u>Exhibit A-2</u> attached hereto. The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document, notice, instruction or request. The Escrow Agent shall have no duty to solicit any payments which may be due it or the Escrow Funds. In the event that the Escrow Agent shall be uncertain as to its duties or rights hereunder or shall receive instructions, claims or demands from any Party hereto which, in its opinion, conflict with any of the provisions of this Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held in escrow until it shall be directed otherwise in a Joint Release Instruction or Final Determination. The Escrow Agent may interplead all of the assets held hereunder into a court of competent jurisdiction or may seek a declaratory judgment with respect to certain circumstances, and thereafter be fully relieved from any and all liability or obligation with respect to such interpleaded assets or any action or nonaction based on such declaratory judgment. The Escrow Agent may consult with legal counsel of its selection in the event of any dispute or question as to the meaning or construction of any of the provisions hereof or its duties hereunder. The Escrow Agent will not be liable for any action taken, suffered or omitted to be taken by it in good faith except to the extent that the Escrow Agent's fraud, gross negligence or willful misconduct was the cause of any direct loss to either Party. To the extent practicable, the Parties agree to pursue any redress or recourse in connection with any dispute without making the Escrow Agent a party to the same. Anything in this Agreement to the contrary notwithstanding, except in the event of its fraud, gross negligence or willful misconduct, in no event shall the Escrow Agent be liable for any special, indirect, punitive, incidental or consequential losses or damages of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such losses or damages and regardless of the form of action.

6. <u>Resignation and Removal of Escrow Agent</u>. The Escrow Agent (a) may resign and be discharged from its duties or obligations hereunder by giving thirty (30) calendar days advance notice in writing of such resignation to the Parties specifying a date when such resignation shall take effect or (b) may be removed, with or without cause, by Seller and Buyer acting jointly at any time by providing written notice to the Escrow Agent. Any corporation or association into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any corporation or association to which all or substantially all of the escrow business of the Escrow Agent's line of business may be transferred, shall be the Escrow Agent under this Agreement without further act. The Escrow Agent's sole responsibility after such thirty (30) day notice period expires or after receipt of written notice of removal shall be to hold and safeguard the Escrow Funds (without any obligation to reinvest the same) and to deliver the same in full (i) to a substitute or successor escrow agent pursuant to a joint written designation from the Parties, (ii) as set forth in a Joint Release Instruction or (iii) in accordance with the directions of a Final Determination, and, at the time of such delivery, the Escrow Agent's obligations hereunder shall cease and terminate. In the event the Escrow Agent resigns, if the Parties have failed to appoint a successor escrow agent prior to the expiration of thirty (30) calendar days following receipt of the notice of resignation, the Escrow Agent may petition any

court of competent jurisdiction for the appointment of such a successor escrow agent or for other appropriate relief, and any such resulting appointment shall be binding upon all of the parties hereto.

7.      Fees and Expenses.  All fees and expenses of the Escrow Agent are described in Schedule 1 attached hereto and shall be paid by Buyer.  The fees agreed upon for the services to be rendered hereunder are intended as full compensation for the Escrow Agent services as contemplated by this Agreement.

8.      Indemnity.  Each of the Parties shall jointly and severally indemnify, defend, and hold harmless the Escrow Agent and its affiliates and their respective successors, assigns, directors, officers, agents and employees (the "Indemnitees") from and against any and all losses, damages, claims, liabilities, penalties, judgments, settlements, actions, suits, proceedings, litigation, investigations, reasonable and documented out-of-pocket costs or expenses (including the reasonable and documented out-of-pocket fees and expenses of one outside counsel and experts and their staffs and reasonable and documented out-of-pocket expense of document location, duplication and shipment, but excluding income taxes imposed on the Escrow Agent or its affiliates with respect to any fees earned hereunder) (collectively "Escrow Agent Losses") arising out of or in connection with (a) the Escrow Agent's execution and performance of this Agreement, tax reporting or withholding, the enforcement of any rights or remedies under or in connection with this Agreement, or as may arise by reason of any act, omission or error of the Indemnitee, except to the extent that such Escrow Agent Losses, as adjudicated by a court of competent jurisdiction, have been caused by the fraud, gross negligence or willful misconduct of the Escrow Agent or any Indemnitee, or (b) the Escrow Agent following any Joint Release Instruction, Final Determination or other instruction (in accordance with the terms of this Agreement) from Seller and/or Buyer.  It is understood and agreed that the Escrow Agent does not have a contractual right of set-off or a contractual security interest under this Agreement; provided, however, that nothing herein shall be construed as a waiver of any statutory or common law rights to which the Escrow Agent may otherwise be entitled with respect thereto. Notwithstanding anything to the contrary herein, Buyer and Seller agree, solely as between themselves, that any obligation for indemnification under this Section 8 (or for reasonable fees and expenses of the Escrow Agent described in Section 7) shall be borne by the Party or Parties determined by a court of competent jurisdiction to be responsible for causing the loss, damage, liability, cost or expense against which the Escrow Agent is entitled to indemnification or, if no such determination is made, then one-half by Buyer and one-half by Seller.  The Parties acknowledge that the foregoing indemnities shall survive the resignation or removal of the Escrow Agent or the termination of this Agreement.

9.      Tax Matters.

(a)      Buyer shall be responsible for and be the taxpayer of all taxes due on the interest or income earned, if any, on the Escrow Funds for the calendar year in which such interest or income is earned.  The Escrow Agent shall report any interest or income earned on the Escrow Funds to the IRS or other taxing authority on IRS Form 1099. Prior to the date hereof, the Parties shall provide the Escrow Agent with certified tax identification numbers by furnishing appropriate forms W-9 or W-8 as applicable and such other forms and documents that the Escrow Agent may request.

(b)     The Escrow Agent shall be responsible only for income reporting to the Internal Revenue Service with respect to income earned on the Escrow Funds.  The Parties hereby represent to the Escrow Agent that no other tax reporting of any kind is required by the Escrow Agent given the underlying transaction giving rise to this Agreement.  The Escrow Agent shall withhold any taxes required to be withheld by applicable law, including but not limited to required withholding in the absence of proper tax documentation, and shall remit such taxes to the appropriate authorities.

(c)     The Escrow Agent, its affiliates, and its employees are not in the business of providing tax or legal advice to any taxpayer outside of Citigroup, Inc. and its affiliates.  This Agreement and any amendments or attachments hereto are not intended or written to be used, and may not be used or relied upon, by any such taxpayer or for the purpose of avoiding tax penalties.   Any such taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

10.     <u>Covenant of Escrow Agent</u>.  The Escrow Agent hereby agrees and covenants with the Parties that it shall perform all of its obligations under this Agreement and shall not deliver custody or possession of any of the Escrow Funds to anyone except pursuant to the express terms of this Agreement or as otherwise required by law.

11.     <u>Notices</u>.  All notices, requests, demands and other communications required under this Agreement shall be in writing, in English, and shall be deemed to have been duly given if delivered (i) personally, (ii) by facsimile transmission with written confirmation of receipt, (iii) at the time of transmission (provided no notice of non-delivery is generated at the time of transmission) if sent by electronic mail ("<u>e-mail</u>") with a PDF attachment executed by an Authorized Representative of the Party/Parties to the e-mail address given below, (iv) by overnight delivery with a reputable national overnight delivery service, or (v) by mail or by certified mail, return receipt requested, and postage prepaid. If any notice is mailed, it shall be deemed given five Business Days after the date such notice is deposited with the United States Postal Service.  If notice is given to a Party, it shall be given at the address for such Party set forth below. It shall be the responsibility of the Parties to notify the Escrow Agent in writing of any name or address changes.

if to Seller, then to:

Vital Pharmaceuticals, Inc.
1600 N Park Drive
Weston, FL 33326
Attention:     Gregg Metzger
                     John Didonato
Email: gregg.metzger@bangenergy.com
           jdidonato@hgc.com

with a copy (which shall not constitute notice) to:

Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Attention:     Andrew Sorkin
               Daniel Mun
               Caroline Reckler
E-mail: andrew.sorkin@lw.com
        daniel.mun@lw.com
        caroline.reckler@lw.com


or, if to Buyer, then to:

Monster Energy Company
1 Monster Way
Corona, California 92879
Attention:  Aaron P. Sonnhalter, Sr. Vice President
Email:  aaron.sonnhalter@monsterenergy.com

with a copy (which shall not constitute notice) to:

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Attention:     Richard M. Pachulski
               Teddy Kapur
Email: rpachulski@pszjlaw.com
        tkapur@pszjlaw.com


or, if to the Escrow Agent, then to:

Citibank, N.A.
Citi Private Bank
388 Greenwich St., 29th Floor
New York, NY 10013
Attn: Rola Tseng-Pappalardo/Anabelle Roa
Telephone No.:  212.783.7030/212.783.7131
Facsimile No.:  212.783.7131
E-mail: rola.tsengpappalardo@citi.com/anabelle.roa@citi.com

Notwithstanding the above, in the case of communications delivered to a party hereto pursuant to the foregoing clauses (i), (ii) and (iv) of this Section 11, such communications shall be deemed to have been given on the date received by such party.  In the event that the Escrow Agent, in its

sole discretion, shall determine that an emergency exists, the Escrow Agent may use such other means of communication as the Escrow Agent deems appropriate.

12.   Termination.  This Agreement shall terminate on the first to occur of (a) the distribution of all of the amounts in the Escrow Account in accordance with this Agreement or (b) delivery to the Escrow Agent of a written notice of termination executed jointly by Buyer and Seller after which this Agreement shall be of no further force and effect except that (i) the provisions of Section 8 hereof shall survive termination and (ii) the Escrow Agent shall be required to cause the Escrow Funds to be distributed in their entirety in strict accordance with a Joint Release Instruction or a Final Determination, as applicable,  provided to Escrow Agent in accordance with the provisions of this Agreement

13.   Miscellaneous.   The provisions of this Agreement may be waived, altered, amended or supplemented, in whole or in part, only by a writing signed by all of the parties hereto.  Neither this Agreement nor any right or interest hereunder may be assigned in whole or in part by any party without the prior written consent of the other parties.  This Agreement shall be governed by and construed under the laws of the State of Delaware.  Each party irrevocably waives any objection on the grounds of venue, forum non-conveniens or any similar grounds and irrevocably consents to service of process by mail or in any other manner permitted by applicable law and consents to the jurisdiction of the courts located in the State of Florida without regard to its conflicts of laws principles.  The parties hereby waive any right to a trial by jury with respect to any lawsuit or judicial proceeding arising from or relating to this Agreement.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  All signatures of the parties to this Agreement may be transmitted by facsimile or electronic transmission in portable document format (.pdf) or other electronic means, and such facsimile, .pdf or other electronic format will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.  If any provision of this Agreement is determined to be prohibited or unenforceable by reason of any applicable law of a jurisdiction, then such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in such jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.  The Parties represent, warrant and covenant that each document, notice, instruction or request provided by such Party to the Escrow Agent shall comply with applicable laws and regulations.  Where, however, the conflicting provisions of any such applicable law may be waived, they are hereby irrevocably waived by the parties hereto to the fullest extent permitted by law, to the end that this Agreement shall be enforced as written.   Except as expressly provided in Section 8, nothing in this Agreement, whether express or implied, shall be construed to give to any person or entity other than the Escrow Agent and the Parties any legal or equitable right, remedy, interest or claim under or in respect of this Agreement or any funds escrowed hereunder.

14.   Compliance with Court Orders.  In the event that any escrow property shall be attached, garnished or levied upon by any court order, or the delivery thereof shall be stayed or enjoined by an order of a court, or any order, judgment or decree shall be made or entered by any court order affecting the property deposited under this Agreement, the Escrow Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all writs, orders or decrees

so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and in the event that the Escrow Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the Parties or to any other Person, by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

15. <u>Further Assurances</u>. Following the date hereof, each party shall deliver to the other parties such further information and documents and shall execute and deliver to the other parties such further instruments and agreements as any other party shall reasonably request to consummate or confirm the transactions provided for herein, to accomplish the purpose hereof or to assure to any other party the benefits hereof.

16. <u>Assignment</u>. Neither this Agreement nor any right or interest hereunder may be assigned, in whole or in part, by any Party hereto, without the prior written consent of the other parties hereto (such consent not to be unreasonably delayed, conditioned or withheld). This Agreement shall bind, and inure to the benefit of, the Parties and their respective successors and permitted assigns. No assignment of the interest of any of the Parties shall be binding upon the Escrow Agent unless and until written notice of such assignment shall be provided to the Escrow Agent. The assignment by any Party of its rights and/or interests hereunder shall not release or discharge such Party from any of its obligations hereunder. In no event shall the Escrow Agent be obligated hereunder to obey any written instructions delivered pursuant hereto from any assignee of any rights under this Agreement, unless, in such case, such assignee has become a Party to this Agreement. Any transfer or assignment of the rights, interests or obligations hereunder in violation of the terms hereof shall be void *ab initio* and of no force or effect.

17. <u>Force Majeure.</u> The Escrow Agent shall not incur any liability for not performing any act or fulfilling any obligation hereunder by reason of any occurrence beyond its control (including, but not limited to, any provision of any present or future law or regulation or any act of any governmental authority, any act of God or war or terrorism, or the unavailability of the Federal Reserve Bank wire services or any electronic communication facility), it being understood that the Escrow Agent shall use commercially reasonable efforts which are consistent with accepted practices in the banking industry to resume performance as soon as reasonably practicable under the circumstances.

18. <u>Compliance with Federal Law</u>. To help the U.S. Government fight the funding of terrorism and money laundering activities and to comply with Federal law requiring financial institutions to obtain, verify and record information on the source of funds deposited to an account, the Parties agree to provide the Escrow Agent with the name, address, taxpayer identification number, and remitting bank for all Parties depositing funds at Citibank pursuant to the terms and conditions of this Agreement. For a non-individual person such as a business entity, a charity, a trust or other legal entity, the Escrow Agent will ask for documentation to verify its formation and existence as a legal entity. The Escrow Agent may also ask to see financial statements, licenses, and identification and authorization documents from individuals claiming authority to represent the entity or other relevant documentation.

19. <u>Use of Electronic Records and Signatures</u>. As used in this Agreement, the terms "writing" and "written" include electronic records, and the terms "execute," "signed" and

"signature" include the use of electronic signatures. Notwithstanding any other provision of this Agreement or the attached Exhibits and Schedules, any electronic signature that is presented as the signature of the purported signer, regardless of the appearance or form of such electronic signature, may be deemed genuine by the Escrow Agent in the Escrow Agent's sole discretion, and such electronic signature shall be of the same legal effect, validity and enforceability as a manually executed, original, wet-ink signature; provided, however, that any such electronic signature must be an actual and not a typed signature. In accordance with <u>Section 8</u> of this Agreement, Escrow Agent shall be indemnified and held harmless from any Escrow Agent Losses it incurs as a result of its acceptance of and reliance on electronic signatures that it reasonably deems to be genuine. Any electronically signed agreement, instruction or other document shall be an "electronic record" established in the ordinary course of business and any copy shall constitute an original for all purposes. The terms "electronic signature" and "electronic record" shall have the meaning ascribed to them in 15 USC § 7006. This Agreement and any instruction or other document furnished hereunder may be transmitted by facsimile or as a PDF file attached to an email.

20.   <u>Return of Funds</u>.  If the Escrow Agent releases any funds, including but not limited to the Escrow Amount or any portion of it, to a Party and subsequently determines, in good faith, that the payment or any portion of it was made in error, the Party shall, upon notice, promptly refund the erroneous payment.  Any such erroneous payment by the Escrow Agent, and the Party's return thereof to the Escrow Agent, shall not affect any obligation or right of either the Escrow Agent or the Parties.  Each of the Parties agrees not to assert discharge for value, bona fide payee, or any similar doctrine as a defense to the Escrow Agent's recovery of any erroneous payment.

21.   <u>Use of Citibank Name.</u>  No publicly distributed printed or other material in any language, including prospectuses, notices, reports, and promotional material which mentions "Citibank" by name or the rights, powers, or duties of the Escrow Agent under this Agreement shall be issued by any other parties hereto, or on such party's behalf, without the prior written consent of the Escrow Agent.

*   *   *   *   *

IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement as of the date set forth above.

SELLER:

**VITAL PHARMACEUTICALS, INC.**

By: _____

Name: Gregg Metzger

Title: General Counsel

BUYER:

**BLAST ASSET ACQUISITION LLC:**

By: _____
Name:  Hilton H. Schlosberg
Title:   Co-Chief Executive Officer

**ESCROW AGENT:**

**CITIBANK, N.A.**

By: _____
Name: Rola Tseng-Pappalardo, Senior Vice President
Its: Citi Private Bank
388 Greenwich Street, 29th floor
New York, NY 10013
212-783-7030

*[Signature Page to Escrow Agreement (Deposit)]*

## Schedule 1

### ESCROW AGENT FEE SCHEDULE
### Citibank, N.A., Escrow Agent

**Acceptance Fee**
To cover the acceptance of the Escrow Agency appointment, the study of the Agreement, and supporting documents submitted in connection with the execution and delivery thereof, and communication with other members of the working group.

    **Fee: WAIVED**

**Administration Fee**
The annual administration fee covers maintenance of the Escrow Account including safekeeping of assets in the Escrow Account, normal administrative functions of the Escrow Agent, including maintenance of the Escrow Agent's records, follow-up of the Agreement's provisions, and any other safekeeping duties required by the Escrow Agent under the terms of the Agreement. Fee is based on Escrow Amount being deposited in an interest bearing deposit obligation at Citibank, N.A., FDIC insured to the applicable limits.

    **Fee: WAIVED**

**Tax Preparation Fee**
To cover preparation and mailing of Forms 1099-INT (or other appropriate forms), if applicable for the escrow parties for each calendar year.

    **Fee: WAIVED**

**Transaction Fees**
To oversee all required disbursements or release of property from the Escrow Account to any escrow party, including cash disbursements made via check and/or wire transfer, fees associated with postage and overnight delivery charges incurred by the Escrow Agent as required under the terms and conditions of the Agreement.

    **Fee: WAIVED**

**Other Fees**
Material amendments to the Agreement: additional fee(s), if any, to be discussed at time of amendment.

---

**TERMS AND CONDITIONS**: The above schedule of fees does not include charges for out-of-pocket expenses or for any services of an extraordinary nature that Citibank or its legal counsel may be called upon from time to time to perform. Fees are also subject to satisfactory review of the documentation, and Citibank reserves the right to modify them should the characteristics of the transaction change. Citibank's participation in this program is subject to internal approval of the third party depositing monies into the escrow account to be established hereunder. The Acceptance Fee, if any, is payable upon execution of the Agreement. Should this schedule of fees be accepted and agreed upon and work commenced on this program but subsequently halted and the program is not brought to market, the Acceptance Fee and legal fees incurred, if any, will still be payable in full.

EXHIBIT A-1

Certificate as to Seller's Authorized Signatures

The specimen signatures shown below are the specimen signatures of the individuals who have been designated as authorized representatives of Seller and are authorized to initiate and approve transactions of all types for the escrow account or accounts established under this Agreement, on behalf of Seller.  The below listed persons (must list at least two individuals, if applicable) have also been designated Call Back Authorized Individuals and will be notified by Citibank N.A. upon the release of Escrow Funds from the escrow account(s).

| Name / Title / Telephone | Specimen Signature |
|---|---|
| John DiDonato | *John C. DiDonato* |
| | John C. DiDonato (Mar 23, 2023 23:37 EDT) |
| Name | Signature |
| CEO | |
| Title | |
| 646-520-0084 | N/A |
| Phone | Mobile Phone |
| Greg Robbins | *Greg Robbins* |
| | Greg Robbins (Mar 24, 2023 21:51 EDT) |
| Name | Signature |
| Senior Vice President of Finance | |
| Title | |
| 954-790-1382 | N/A |
| Phone | Mobile Phone |
| Gregg Metzger | *Gregg Metzger* |
| | Gregg Metzger (Mar 25, 2023 10:06 EDT) |
| Name | Signature |
| General Counsel | |
| Title | |
| 786-417-0104 | N/A |
| Telephone | Mobile Phone |

EXHIBIT A-2

<u>Certificate as to Buyer's Authorized Signatures</u>

The specimen signatures shown below are the specimen signatures of the individuals who have been designated as authorized representatives of Buyer and are authorized to initiate and approve transactions of all types for the escrow account or accounts established under this Agreement, on behalf of Buyer. The below listed persons (must list at least two individuals, if applicable) have also been designated Call Back Authorized Individuals and will be notified by Citibank N.A. upon the release of Escrow Funds from the escrow account(s).

| Name / Title / Telephone | Specimen Signature |
|---|---|
| **Rodney C. Sacks** | |
| Name | Signature |
| **Chairman & Co-Cheif Executive Officer** | |
| Title | |
| **951-739-6418** | **949-310-0696** |
| Phone | Mobile Phone |
| | |
| **Hilton H. Schlosberg** | |
| Name | Signature |
| **Chairman & Co-Cheif Executive Officer** | |
| Title | |
| **951-739-6414** | **949-689-2162** |
| Phone | Mobile Phone |
| | |
| **Thomas J. Kelly** | |
| Name | Signature |
| **Chief Financial Officer** | |
| Title | |
| **951-739-6419** | **909-732-1333** |
| Telephone | Mobile Phone |

*Exhibit to Escrow Agreement*

**Exhibit F**

**Mutual Release of Liability**

(see attached)

# EXHIBIT F
# MUTUAL RELEASE OF LIABILITY

This agreement (this "Mutual Release") is made and entered into as of [ ∞ ], 2023 ("Effective Date"), by and among Monster Energy Company, a Delaware corporation ("MEC") and [ ∞ ], an individual ("Employee"). MEC and Employee are sometimes referred to individually herein as a "Party" and collectively as the "Parties."

## RECITALS

**WHEREAS**, the Parties now desire to enter into a mutual release of liability and to release and forever discharge one another from certain claims, demands, damages, actions, causes of action, or suits arising before the Effective Date hereof, all subject to, conditioned upon, and in accordance with, the terms of this Mutual Release;

**NOW, THEREFORE**, in consideration of the recitals hereto, the mutual promises and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned Parties hereby agree as follows:

## ARTICLE I
## DEFINITIONS

"Affiliate" means, with respect to any specified Person, any other Person that directly or indirectly, through one or more intermediaries, controls, is controlled by or is under common control with, such specified Person. For purposes of this definition, "control" (and any similar term) means the power of one or more Persons to direct, or cause the direction of, the management or affairs of another Person by reason of ownership of voting stock, as general partner or managing member or by Contract or otherwise.

"California District Court Action" means the action including MEC, Vital Pharmaceuticals, Inc., and John H. "Jack" Owoc filed in the United States District Court for the Central District of California, captioned *Monster Energy Co. v. Vital Pharmaceuticals, Inc.*, Case No. 18-cv-1882 (C.D. Cal., filed Sept. 4, 2018), including the appeals thereof and any other related Proceedings.

"Contract" means, with respect to any Person, any lease, sublease, contract, license, sublicense or other agreement (including any employment, marketing, distributor or other type of contract or agreement) to which such Person is a party or by which such Person is bound, whether written or oral, and that is legally enforceable against such Person.

"Effective Date" has the meaning given to such term in the Preamble hereto.

"Employee" has the meaning given to such term in the Preamble hereto.

"Employee Action" means the action including MEC and Employee filed before [ ∞ ], captioned [ ∞ ], Case No. ∞ ] ([ ∞ ], filed [ ∞ ]).

1

"Employee Related Party" means, collectively, Employee and its Affiliates and each of the foregoing's respective current and former Representatives and owners; but excluding, in all cases, any Excluded Parties.

"Employee Releasing Party" has the meaning given to such term in Section 2.2.

"Excluded Parties" means each of John "Jack" H. Owoc, Megan E. Owoc, each of their family members, any of their Affiliates, and any trusts or other estate planning vehicles of which any of the foregoing are trustees or beneficiaries, in each case that are not VPX Entities, including Entourage IP Holdings, LLC, Cognitive IP Holdings, LLC, Fun Energy, LLC, Bang Energy Family, LLC, Bang Gyms, LLC, Candemonium, LLC, Captain Crunch Fishing, LLC, Liquid IP Holdings, LLC, The Fixx, LLC, Bang Vapes, LLC, Ultra Experiences, LLC, Bang Foods, LLC, Energy Train, LLC, VPX Swim and Sports Gear, LLC, Stoked Seltzer, LLC, Stoked Brands, LLC, Birth Right, LLC, Bang Energy International, LLC, JHO GA-1 Investment, LLC, JHO NV-1 Investment, LLC, Sheridan Real Estate Investment A, LLC, Sheridan Real Estate Investment B, LLC and Sheridan Real Estate Investment C, LLC.

"Governmental Authority" means any federal, municipal, state, regional, provincial, local or foreign governmental, quasi-governmental, self-regulatory, administrative or regulatory authority, department, agency, board, bureau, commission or body (including any court, arbitral body or similar tribunal).

"Intellectual Property" means the global intellectual or proprietary rights, which may exist or be created under the laws of any jurisdiction in the world, including all: (a) rights associated with works of authorship (including can art, text, and graphics, packaging art, text and graphics, and website art, text and graphics and copyrights in the Trademarks), including exclusive exploitation rights, mask work rights, copyrights, and moral and similar attribution rights; (b) Trademarks, and design rights; (c) proprietary rights in internet domain names, IP addresses, social media and third-party website handles, pages, and accounts including the access information for the same; (d) trade secrets, formulas, recipes, and ingredients lists, including the access information for the same, know-how, technical data, processes, techniques, lists of or information relating to suppliers and customers, pricing lists and methodologies, cost and market share data, marketing and business plans, financial forecasts and histories, and budgets; (e) patents, industrial design and other industrial property rights; (f) rights in or relating to any and all registrations, goodwill, issuances, provisionals, reissuances, continuations, continuations-in-part, revisions, substitutions, reexaminations, renewals, extensions, combinations, divisions, and reissues of, and applications for, any of the foregoing rights and all common law rights; (g) rights of publicity; and (h) rights to prosecute, sue, enforce, or recover or retain damages, costs, or attorneys' fees with respect to the past, present and future infringement, misappropriation, dilution, unauthorized use or disclosure, or other violation of any of the foregoing.

"MEC" has the meaning given to such term in the Preamble hereto.

"MEC Related Party" means, collectively, MEC, its Subsidiaries and other Affiliates, and each of the foregoing's respective current and former Representatives and owners; but excluding, in all cases, any Excluded Parties.

"MEC Releasing Party" has the meaning given to such term in Section 2.1.

"Mutual Release" has the meaning given to such term in the Preamble hereto.

"OBI/Monster Matter" means the action including the Vital Pharmaceuticals, Inc., JHO Intellectual Property Holdings, LLC, Orange Bang, Inc., and MEC filed in the United States District Court for the Central District of California, captioned *Vital Pharms., Inc. and JHO Intellectual Prop. Holdings, LLC v. Orange Bang, Inc. and Monster Energy Co.*, Case No. 5:20-cv-1464, including the related arbitration proceedings and ruling, judgment, and appeals and other related Proceedings.

"Party" or "Parties" has the meaning given to such term in the Preamble hereto.

"Person" means any individual, corporation, partnership, limited partnership, limited liability company, syndicate, group, trust, association or other organization or entity or Governmental Authority.  References to any Person include such Person's successors and permitted assigns.

"Proceeding" means any action, suit, arbitration, proceeding (including any civil, criminal, administrative, investigative or appellate proceeding or any informal proceeding) or investigation pending or being heard by or before, or otherwise involving, any Governmental Authority, arbitrator, arbitration panel, advertising self-regulatory body or any other Person.

"Representatives" means, with respect to a particular Person, any director, officer, manager, employee or other authorized representative of such Person or its Subsidiaries, including such Person's attorneys, accountants, consultants, investment bankers, professionals, and financial advisors.

"Subsidiary" means, with respect to any Person, (a) any corporation or similar entity of which at least 50% of the securities or interests having, by their terms, ordinary voting power to elect members of the board of directors, or other persons performing similar functions with respect to such corporation or similar entity, is held, directly or indirectly by such Person and (b) any partnership, limited liability company or similar entity of which (i) such Person is a general partner or managing member or has the power to direct the policies, management or affairs or (ii) such Person possesses a 50% or greater interest in the total capitalization or total income of such partnership, limited liability company or similar entity.

"Trademarks" means any and all trade names, corporate names, logos, slogans, taglines, trade dress, trademarks, service marks, certification marks, collective marks, and other source or business identifiers and general intangibles of a like nature, and common law rights, as well as trademark and service mark registrations and applications therefor, and all goodwill associated with the foregoing, whether protected, created, or arising under the laws of the United States (including common law) or any other jurisdiction or under any international convention.

"TTAB Matter" means the proceeding including JHO Intellectual Property Holdings, LLC and MEC filed in the United States Patent and Trademark Office Before the Trademark Trial and Appeal Board (TTAB), captioned *Monster Energy Co.* v. *JHO Intellectual Prop. Holdings, LLC*, Cancellation No. 92070514 (TTAB, filed Feb. 5, 2019).

3

"VPX Entities" means Vital Pharmaceuticals, Inc., a Florida corporation, JHO Intellectual Property Holdings, LLC, a Florida limited liability company, JHO Real Estate Investment, LLC, a Florida limited liability company, Quash Seltzer, LLC, a Florida limited liability company, and Rainbow Unicorn Bev, LLC, a Florida limited liability company.

"VPX IP" means all Intellectual Property owned by or previously owned by the VPX Entities.

"VPX Related Party" means, collectively, the VPX Entities, their respective Subsidiaries and other Affiliates, and each of the foregoing's respective current and former Representatives and owners; but excluding, in all cases, any Excluded Parties.

## ARTICLE II
## MUTUAL RELEASE

Section 2.1    Release of Claims by Monster Energy Company.    Effective as of the Effective Date, MEC, on behalf of itself and each MEC Related Party (each, a "MEC Releasing Party") hereby unconditionally and irrevocably and forever releases and discharges the Employee Related Parties, of and from, and hereby unconditionally and irrevocably waives, and dismisses with prejudice, any and all claims, debts, losses, expenses, proceedings, covenants, liabilities, suits, judgments, damages, actions and causes of action, obligations, accounts, and liabilities of any kind or character whatsoever (collectively, regardless of who owns or holds them, the foregoing items are referred to as "Claims"), known or unknown, suspected or unsuspected, in contract, direct or indirect, at law or in equity, brought or that could have been brought in the Employee Action that such MEC Releasing Party ever had, now has or ever may have or claim to have against any Employee Related Party, for or by reason of any matter, circumstance, event, action, inaction, omission, cause or thing whatsoever arising prior to the Effective Date; *provided, however*, that (i) the release contained in this Section 2.1 does not in any way apply to, affect, limit, waive, compromise, release, discharge or otherwise alter or impair any of the past, present or future rights, claims, causes of action, damages, remedies, defenses, or rights of any kind or nature whatsoever that MEC or any MEC Related Party may have against John H. "Jack" Owoc or any Excluded Parties; (ii) the release contained in this Section 2.1 does not apply to, affect, limit, waive, compromise, release, discharge or otherwise alter any claims, causes of action, defenses, or rights of any kind or nature whatsoever of MEC or any MEC Related Party asserted in, arising out of, or relating to the California District Court Action, the OBI/Monster Matter, and the TTAB Matter; and (iii) the release contained in this Section 2.1 shall not apply to or otherwise affect MEC's rights or obligations under this Mutual Release.  Except for the matters described in sections (i), (ii) and (iii) in the preceding sentence and Section 2.4 below, MEC hereby covenants not to sue, and to cause each other MEC Releasing Party not to sue, any Employee Related Party in any Proceeding for any of the Claims expressly released pursuant to the preceding sentence, and each of the MEC Releasing Parties agrees that in the event that any such Proceeding shall be commenced, the covenant not to sue contained in this Section 2.1 shall constitute a complete defense to any such Proceeding so instituted.

Section 2.2    Release of Claims by Employee.    Effective as of the Effective Date, Employee, on behalf of itself and each Employee Related Party (each, a "Employee Releasing Party") hereby unconditionally and irrevocably and forever releases and discharges the MEC

Related Parties and the VPX Related Parties, of and from, and hereby unconditionally and irrevocably waives, and dismisses with prejudice, any and all Claims, known or unknown, suspected or unsuspected, in contract, direct or indirect, at law or in equity, that such Employee Releasing Party ever had, now has or ever may have or claim to have against any MEC Related Party or any VPX Related Party, for or by reason of any matter, circumstance, event, action, inaction, omission, cause or thing whatsoever arising prior to the Effective Date, including but not limited to, any and all Claims relating to or arising out of the Employee's employment with any MEC Related Party or any VPX Related Party, *provided, however*, this release shall not apply to or otherwise affect Employee's rights or obligations under this Mutual Release. Employee hereby covenants not to sue, and to cause each other Employee Releasing Party not to sue, any MEC Related Party or any VPX Related Party in any Proceeding for any of the Claims expressly released pursuant to this Section 2.2, and each of the Employee Releasing Parties agrees that in the event that any such Proceeding shall be commenced, the covenant not to sue contained in this Section 2.2 shall constitute a complete defense to any such Proceeding so instituted.

Section 2.3    California Civil Code Section 1542.  Without limiting the foregoing, each of the Parties, on behalf of itself and the other MEC Releasing Parties and Employee Releasing Parties, respectively, with respect to the Claims expressly released in Section 2.1 and Section 2.2 above only, expressly waives and releases any and all rights and benefits under Section 1542 of the California Civil Code (or any analogous law of any other state), which reads as follows: "A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party." As to the Claims expressly released in Section 2.1 and Section 2.2 above only, each of the Parties, on behalf of itself and the other MEC Releasing Parties and Employee Releasing Parties, respectively, expressly waives all rights afforded by any statute which limits the effect of a release with respect to unknown claims. Each of the Parties, on behalf of itself and the other MEC Releasing Parties and Employee Releasing Parties, respectively, understands the significance of this release of unknown claims as to the Claims expressly released in Section 2.1 and Section 2.2 above only and the waiver of statutory protection against a release of unknown claims as to the Claims expressly released in Section 2.1 and Section 2.2 above only, and acknowledges and agrees that this waiver is an essential and material term of this Mutual Release. As to the Claims expressly released in Section 2.1 and Section 2.2 above only, each of the Parties, on behalf of itself and the other MEC Releasing Parties and Employee Releasing Parties, respectively, acknowledges that each Party will be relying on the waivers and releases provided in this Section 2.1 and Section 2.2 in connection with entering into this Mutual Release and that this Section 2.1 and Section 2.2 are intended for the benefit of, and will grant express third party beneficiary rights to, each MEC Related Party, VPX Related Party, and Employee Related Party, respectively, to enforce this Section 2.1 and Section 2.2.

Section 2.4    Exclusions.

(a)    Notwithstanding anything to the contrary herein or otherwise, and for the avoidance of doubt, nothing in Section 2.1 or any other provision of this Mutual Release shall in any way apply to, affect, limit, waive, compromise, release, discharge or otherwise alter or impair any of the past, present or future rights, claims, causes of action, damages, remedies, defenses, or rights of any kind or nature whatsoever that MEC or any MEC Related Party may have against the

Excluded Parties, all of which rights, claims, causes of action, damages, remedies, defenses, and rights of any kind or nature whatsoever the MEC and each MEC Related Party hereby expressly preserves.

(b)     Notwithstanding anything to the contrary herein or otherwise, and for the avoidance of doubt, nothing in Section 2.1 or any other provisions of this Mutual Release shall in any way apply to, affect, limit, waive, compromise, release, discharge or otherwise alter or impair (i) any of the past, present or future rights, claims, causes of action, damages, remedies, defenses, or rights of any kind or nature whatsoever of MEC or any MEC Related Party asserted in, arising out of, or relating to the California District Court Action, the OBI/Monster Matter, and the TTAB Matter, including but not limited to, that certain jury verdict and award that was entered on September 29, 2022 in the California District Court Action and that certain judgment that was entered on September 29, 2022 in the OBI/Monster Matter, or (ii) the releases contained in Section 7.16 of that certain *Asset Purchase Agreement,* dated as of [_____], 2023, by and among Vital Pharmaceuticals, Inc. and certain affiliates, on the one hand, and Blast Acquisition LLC, as Buyer, and MEC and Monster Beverage Corporation (solely for purposes of Section 7.16 and Section 10.16 thereof).

(c)     Notwithstanding anything to the contrary herein or otherwise, and for the avoidance of doubt, nothing in Section 2.1 or any other provisions of this Mutual Release shall in any way apply to, affect, limit, waive, compromise, release, discharge or otherwise alter or impair any of the past, present or future rights, claims, causes of actions, damages, remedies, defenses, and rights of any kind or nature whatsoever of MEC or any MEC Related Party as they relate to the VPX IP, all of which rights, claims, causes of actions, damages, remedies, defenses, and rights of any kind or nature whatsoever the MEC and each MEC Related Party hereby expressly preserves.

**ARTICLE III**
**MISCELLANEOUS PROVISIONS**

Section 3.1     Fees and Costs.  Each Party shall bear its, his, or her own attorneys' fees, expenses, and costs incurred in connection with the Employee Action and the drafting, negotiation, and execution of this Mutual Release.

Section 3.2     Amendment and Modification.  This Mutual Release may be amended, modified, or supplemented only by a written instrument signed by the Party against whom enforcement is sought.

Section 3.3     Successors and Assigns.  This Mutual Release and all of the provisions hereof shall be binding upon, inure to the benefit of, and be enforceable by the Parties and their respective successors and permitted assigns.

Section 3.4     Beneficiaries.  Each beneficiary of a release under this Mutual Release shall be an express third-party beneficiary of this Mutual Release with the full power to enforce the terms of this Mutual Release as if it were a party to this Mutual Release for such purpose.

Section 3.5     Governing Law.  This Mutual Release shall be governed by, and construed, interpreted, and enforced in accordance with, the laws of the State of California, without regard to

choice or conflict of law principles that would result in the application of any laws other than the laws of the State of California.

      Section 3.6    <u>Counterparts</u>.  This Mutual Release may be executed in counterparts.  Each counterpart shall be deemed an original.  All counterparts shall constitute a single agreement.  To the extent signed and delivered by means of a photographic, photostatic, facsimile, portable document format (.pdf), DocuSign, electronic signature or similar reproduction of such signed writing using a facsimile machine or electronic mail, this Mutual Release shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.  No Party hereto shall raise the use of a facsimile machine or electronic mail to deliver a signature or the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine or electronic mail or that any signature is in facsimile or electronic format (including .pdf or DocuSign) as a defense to the formation or enforceability of a contract and each such party forever waives any such defense.  To the extent that any such signature is considered not acceptable by any authority or governmental body, the Parties agree to re-execute any such agreements in a manner acceptable to such authority or governmental body.

      Section 3.7    <u>Entire Agreement</u>.  This Mutual Release constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings among the Parties with respect thereto.

      Section 3.8    <u>Construction</u>.  No Party shall be deemed the drafter of this Mutual Release.  The descriptive headings contained in this Mutual Release are included for convenience of reference only and shall not affect in any way the meaning or interpretation of this Mutual Release.  If any term or other provision of this Mutual Release is held to be invalid, illegal, or incapable of being enforced by any rule of law or public policy: (a) said term or other provision shall be enforced to the maximum extent allowed and/or reconstrued in order to effect the intent of the Parties as closely as possible; and (b) all other terms and other provisions of this Mutual Release not otherwise affected shall nevertheless remain in full force and effect.

* * * * *

IN WITNESS WHEREOF, the Parties hereto have caused this Mutual Release to be executed as of the date first written above.

**MONSTER ENERGY COMPANY**

By: _____

Name:

Title:

[ ∞ ],

By: _____

**Exhibit G**

**Owner Affidavit and Indemnity**

(see attached)



**Chicago Title Agency, Inc.**

6710 N. Scottsdale Road, Suite 100, Scottsdale, AZ 85253
Phone: (602) 667-1010 ● Fax: (480) 483-5930
ChicagoTitleArizona.com

# OWNER'S AFFIDAVIT AND INDEMNITY
## SALE

To:     Chicago Title Agency, Inc. (the "Company")

Re:     Title Commitment No. _____ (the "Commitment")


The undersigned, having lawful authority to do so, (hereinafter called the "Affiant") makes the following statements and representations to the best of its actual knowledge, which statements are true and correct in all material respects, for the benefit of the "Company":

1.     Affiant is the owner of _____
        _____ (the "Property"), and is authorized to execute this Affidavit.

2.     Owner holds title to the Property as set forth in the above referenced Commitment.

3.     Owner is entitled to possession of the Property and there are no other persons or entities in possession of the Property, other than those tenants set forth as an exhibit to this Affidavit. Furthermore, none of the tenants listed, if any, have any options to purchase, or right of first refusal to purchase the Property, except as set forth as an exhibit to this Affidavit or described in the Commitment.

4.     There are no unrecorded options or contracts to purchase, unrecorded deeds, encumbrances, easements, rights of way, or other documents creating an interest in title to the Property, except as set forth as exhibits to this Affidavit or described in the Commitment.

5.     To Seller's knowledge, there are NO contracts or arrangements for making any repairs, alterations, construction, or other work on the Property which remain unpaid as of the date hereof, except as described in the recorded mechanics' liens reflected in the Commitment and as additionally set forth on Exhibit A to this Affidavit, which relate to ordinary course maintenance and repair operations of the Property. To Seller's knowledge, there are NO unpaid bills or claims for labor or materials, except as described in the recorded mechanics' liens reflected in the Commitment and as additionally set forth on Exhibit A to this Affidavit. These bills will be paid from proceeds of the sale in the ordinary course of continued operations to the extent permitted by US bankruptcy code or directed by court order to pay pre-petition obligations. Further, to Seller's knowledge, NO labor which remains unpaid as of the date hereof has been furnished including site preparation, nor any materials or equipment have delivered to the Property since January 20, 2022, except as set forth on Exhibit A to this Affidavit.

In connection with the Company issuing its policy(ies), Affiant hereby indemnifies the Company from and against any and all loss, including costs, expenses, damages and reasonable attorneys' fees resulting from the inaccuracy in any material respect of any of the foregoing statements to the extent that the Company incurs liability under the title policy issued in connection herewith with respect to such statement. Notwithstanding the foregoing, the person executing this Owner's Affidavit and Indemnity is

Owneraff

doing so in their capacity as an authorized signatory of the Affiant, on behalf of the Affiant, and shall have no personal liability in connection therewith.  Furthermore, the Company acknowledges that the Affiant is a debtor in that certain Case No. 22-17842 in U.S. Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division.

Owneraff

Escrow No.
*Owner's Affidavit and Indemnity - Sale...Continued*
Page 2 of 2

Dated

**SELLER:**

**JHO Real Estate Investment, LLC,**
**a Florida limited liability company**

_____

**By:**

## NOTARY ACKNOWLEDGEMENT(S) TO
## OWNERS AFFIDAVIT AND INDEMNITY - SALE

State of <u>Arizona</u>_____ **}**ss:
County of <u>Maricopa</u>_____

The foregoing document was acknowledged before me this _____ day of _____, _____

By_____

(Seal)                                    _____

My commission expires: _____

Notary Public

Owneraff

# EXHIBIT A

*[to be attached]*

Owneraff

| Vendor | Service | Pre-Petition Outstanding Balance | Plan for Payment | Notes |
|--------|---------|----------------------------------|------------------|-------|
| 365 Mechanical | | 17,471.72 | 30 Day Term | |
| Aero Sprinkler | Pump House Maintenance | 955.00 | DUE UPON RECEIPT | |
| Aero Sprinkler | Fire Sprinkler Maintenance | | DUE UPON RECEIPT | Total for all projects |
| Agilent Technologies | HPLC Annual Service Contract | 8,334.13 | Pre-Payment | |
| AMS Landscaping | Clean-ups, maintenance, weed eating, etc | - | 30 Day Term | |
| Atlas Copco | Air Compressor Service | 3,593.00 | Pre-Payment | |
| CCI - Cherokee Chemical | Production Chemicals | 118,453.30 | Pre-Payment | |
| CCI - Cherokee Chemical | Water Treatment Services | 18,096.77 | Pre-Payment | |
| Cintas | Defibulator Service | 560.38 | 30 Day Term | |
| Cintas | Janitorial / Uniforms | 28,637.17 | 30 Day Term | |
| Cintas | Fire Extinguishers | - | 30 Day Term | |
| Cintas | First Aid/Safety Center Service | 4,728.42 | 30 Day Term | |
| Cleaver Brooks/Greenfield Dynamics | Hot Water Generator Maintenance | - | Pre-Payment | |
| Domino | Production Line Printer PMs | 2,206.48 | Pre-Payment | |

| EcoLab | Pest Control | 10,598.68 | 30 Day Term | |
|---|---|---|---|---|
| Emaint | CMMS - Enterprise Edition | - | 30 Day Term | |
| Energy Systems | Generator and Power System Maintenance | Not a vendor | | |
| Ferrum | Seamer Annual Rebuild - Line 1 | 1,221.61 | Pre-Payment | |
| Ferrum | Seamer Annual Rebuild - Line 2 | | | Total for all projects |
| Global Systems United | Annual CO2 Testing and Calibrations | - | Pre-Payment | |
| Hach | HPLC Annual Service | | Pre-Payment | |
| Industrial Physics | SEAMscan Support and Maintenance | 20,944.50 | Pre-Payment | |
| Jani-King | Janitorial Service | 6,011.35 | 30 Day Term | |
| Kimball Midwest | Bin Stock | 1,545.55 | Pre-Payment | |
| Krones | Valve Exchange Line 1 | 354,740.94 | Pre-Payment | Total for all projects |
| Krones | Valve Exchange Line 2 | | Pre-Payment | Total for all projects |
| Krones | LCS Support 24/7 Phone | | Pre-Payment | Total for all projects |
| Krones | Annual Rebuild - Line 1 | | Pre-Payment | Total for all projects |
| Krones | Annual Rebuild - Line 2 | | Pre-Payment | Total for all projects |

| Legend | Lab testing (Wastewater) | - | Pre-Payment | |
| Metro Fire | Pump House / Fire Sprinkler Maintenance | Not a vendor | | |
| Miner | Dock and Door Maintenance | 16,340.23 | DUE UPON RECEIPT | |
| Miner | Dock and Door Maintenance | - | DUE UPON RECEIPT | Total for all projects |
| Mobile Force Refueling | Diesel Top-Off on generators | 929.11 | DUE UPON RECEIPT | |
| Naumann Hobbs | Forklift Preventative Maintenance | | Pre-Payment | |
| Rockwell Automation | TechConnect Software - Controls | Not a vendor | | |
| RSCS | Ammonia Compressor Maintenance | | | |
| Shoppa's | Material Handling | - | Pre-Payment | |
| Statco DSI | Annual Calibrations | 33,863.75 | Pre-Payment | |
| Tomco | CO2 System Maintenance | - | Pre-Payment | |
| Trane | Chiller/HVAC PM | 9,561.00 | 30 Day Term | |
| Waste Management | Waste Removal | - | 30 Day Term | |
| Western States/Signal One | Fire Monitoring | 135.00 | Pre-Payment | |
| Yeppis Landscape Services | Landscaping | Not a vendor | | |

**Exhibit H**

**Arizona Special Warranty Deed**

(see attached)

Recorded at the Request of:
When Recorded, mail to:


Latham & Watkins LLP
1271 Avenue of the Americas
New York, New York 10020
Attn: Karen D. Ritter

---

Order No:

# Special Warranty Deed

Exempt from the requirement of an Affidavit of Property Value under A.R.S. 11-1134 A5.

For the consideration of Ten Dollars, and other valuable considerations, [_____], Debtor and Debtor in Possession in In re JHO Real Estate Investment, LLC, Case No. 22-17847-PDR, jointly administered with In re Vital Pharmaceuticals, Inc., Case No. 22-17842-PDR, both in U.S. Bankruptcy Court, Southern District of Florida, Fort Lauderdale Division ("Grantor"), does hereby convey to Blast Asset Acquisition LLC, a Delaware limited liability company ("Grantee"), all of Grantor's right, title and interest in and to the following described real property located in Maricopa County, Arizona (the "Property");

See Exhibit A attached hereto and incorporated herein by this reference.

Together with all rights and privileges appurtenant thereto or anywise belonging.

Subject to (i) non-delinquent taxes and general, special, and other assessments, reservations in patents, (ii) non-delinquent statutory liens and rights of set-off, and (iii) all other easements, rights-of-way, encumbrances, liens, covenants, conditions, restrictions, reservations, rights, dedications, obligations, liabilities, and other matters, in each such case, as may appear of record for such Property being conveyed.  The Grantor hereby binds itself to warrant and defend the title as against all acts of the Grantor herein and no other, subject to the matters above set forth.


Dated : June ___, 2023



*[SIGNATURE PAGE TO FOLLOW]*

Executed on the _____ day of June, 2023.

**GRANTOR**:

[,
]

By: _____
Name:_____
Title:_____

State of _____  
County of _____  } ss.  Date of Acknowledgement  _____

Acknowledgement of

This instrument was acknowledged before me this date by the persons above-subscribed and if subscribed in a representative capacity, then for the principal named and in the capacity indicated.

_____
                                                            Notary Public
My Commission Expires:

State of _____  
County of _____  } ss.  Date of Acknowledgement  _____

Acknowledgement of

This instrument was acknowledged before me this date by the persons above-subscribed and if subscribed in a representative capacity, then for the principal named and in the capacity indicated.

_____
                                                            Notary Public
My Commission Expires:

**NOTE; The parties are cautioned that by completing and executing this document, legal rights, duties and obligations are created. By signing, the parties acknowledge that they have been advised to seek and obtain independent legal counsel as to all matters contained in the within document prior to signing same and that said parties have obtained advice or choose to proceed without same.**

[Signature Page – Arizona Special Warranty Deed - 1635 S. 43rd Avenue, Phoenix, AZ 85009]

EXHIBIT A

Legal Description

That portion of the Northwest quarter of Section 15, Township 1 North, Range 2 East of the Gila and Salt River Meridian, Maricopa County, Arizona, described as follows:

BEGINNING at the Northwest corner of the North half of the Southwest quarter of said Northwest quarter;

Thence South (assumed bearing for purposes of this description) along the West line of said section, a distance of 660.00 feet to a line that is parallel with and distant 1968.46 feet Southerly measured at right angles from the North line of said section;

Thence South 89 degrees 50 minutes East, along said parallel line, a distance of 1307.28 feet to a line that is parallel with and distant 10.00 feet Westerly, measured at right angle, from the East line of said Southwest quarter, last said parallel line being also the center line of an existing drill track;

Thence North 00 degrees 01 minutes West, along last said parallel line, a distance of 1095.68 feet to a point of CUSP;

Thence Southwesterly along a tangent curve concave Northwesterly having a radius of 642.43 feet, through a central angle of 05 degrees 43 minutes 29 seconds, an arc distance of 64.19 feet;

Thence South 05 degrees 42 minutes 29 seconds West, tangent to said curve, a distance 26.38 feet;

Thence Southwesterly and Westerly along a tangent curve to the right having a radius 382.24 feet, through a central angle of 84 degrees 27 minutes 31 seconds, an arc distance of 563.45 feet to a point of tangency in a line that is parallel with and distant 1308.46 feet Southerly, measured at right angles, from said North line;
Thence North 89 degrees 50 minutes West, along last said parallel line, a distance of 919.70 feet to the POINT OF BEGINNING.

EXCEPTING THEREFROM that portion of said property lying below a depth of 500.00 feet measured vertically from the contour of the surface thereof;

Provided, however, that said grantor, its successors and assigns, shall not have the right for any and all purposes to enter upon, into or through the surface of the portion of said property lying above 500.00 feet, measured vertically from the contour of the surface of said property, as reserved in Deed recorded in Docket 9581, Page 180 and also recorded in Docket 9590, Page 873, records of Maricopa County, Arizona.