# **EXHIBIT 8**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE:<br><br>VITAL PHARMACEUTICALS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11 Case<br><br>Case No. 22-17842 (PDR)<br><br>(Jointly Administered) |

## SWORN DECLARATION OF PAUL DECHARY

I, PAUL DECHARY, do hereby swear and affirm the following:

1. I am the Executive Vice President and Deputy General Counsel of Monster Beverage Corporation ("Monster Beverage"), the indirect parent of Blast Asset Acquisition, LLC, a Delaware Limited Liability Company (the "Successful Bidder" or "Buyer").

2. I make the statements in this declaration based upon my own personal knowledge and my review of the books and records of Monster Beverage and Monster Energy Company ("Monster Energy," and collectively with Monster Beverage, "Monster") and Buyer related to the sale transaction detailed herein.

### The Asset Purchase Agreement

3. Buyer is the purchaser under that certain Asset Purchase Agreement that is attached to ECF No. 1546 dated June 28, 2023 (as amended, modified or supplemented, the "APA," and the assets subject thereto, the "Assets" or "Debtors' Assets") by and among the above styled

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicom Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

1

Debtors (the "Debtors"), Monster, and Buyer.

4. The aggregate purchase price payable by Buyer for the Debtors' Assets is detailed in Section 3.1 of the APA (the "Purchase Price"). Other than the Purchase Price, the cure amount with respect to any other executory contracts or unexpired leases that may be assumed and assigned to Buyer in connection with the APA, any other liability expressly assumed by Buyer pursuant to Section 2.3 of the APA, no other payments, material agreements or arrangements have been made or will be entered into by Buyer with the Debtors or any other bidder in connection with the consummation of the transactions contemplated by the APA.

5. It is anticipated that the closing of the transactions contemplated by the APA will occur no later than August 3, 2023.

## Good Faith Purchaser

6. The Debtors have no direct or indirect interest in, or control over Monster or the Buyer.

7. I have been actively involved in the due diligence and negotiations leading up to the proposed sale transaction detailed in the APA. All negotiations with the Debtors as to the sale process, sale, and sale price were vigorous, extensive, and conducted at arms-length and in good faith. In addition to the Debtors, Monster and Buyer consulted with and received input from the Official Committee of Unsecured Creditors (the "Committee") and the Agent for the Debtors' DIP Lenders and Prepetition Lenders prior to finalizing the terms of the APA. All respective parties were represented by separate legal counsel, and the negotiations were not tainted by fraud, collusive bidding, or other misconduct. There was no agreement between Monster or Buyer and any other party to control the sale price for the Debtors' Assets..

8. Monster and Buyer have not exerted control or undue influence over the Debtors.

71312934;2

Monster and Buyer are not insiders of the Debtors. Monster and Buyer are not equity holders of, nor lenders to, any of the Debtors. Moreover, Monster, Buyer, and the Debtors do not have any shareholders, officers, or directors in common.

9.  There is no relationship between Monster, Buyer, and Debtors, or any of their respective directors or officers outside of their relationship as: (i) buyer and sellers under the APA; (ii) creditor and obligors pursuant to the claims Monster asserts against the Debtors; and (iii) parties to that certain Final Arbitration Award and Judgment (the "Arbitration Award") governing the Debtors' use of certain Bang trademarks registered under U.S. Trademark Registration No. 3,960,381 and No. 1,223,619, and No. 1,224,457 (the "Bang Marks"). Buyer and Monster also have no connections to: (i) the Bankruptcy Court presiding over the sale of the Debtors' assets, or (ii) the Office of the United States Trustee overseeing the administration of this Bankruptcy Case. Finally, Monster and Buyer are not members of the Committee and do not have any ownership interest, common officers or directors, or extend control over any member of the Committee.

10. On or about April 12, 2023, Monster communicated to the Debtors, the Committee, and Debtors' DIP Lenders written correspondence incorporating proposed terms related to any proposed assignment of Debtors' rights to use of the Bang Marks under the Arbitration Award to a third party (the "Assignment Letter"). A true and correct copy of the Assignment Letter is attached hereto as **Exhibit "A."**

11. Monster, the Debtors, and the Committee agreed upon a protocol related to the Assignment Letter that all expressions of interest by a prospective bidder as to the terms for assignment of the Bang Marks would be communicated to Monster anonymously through the Committee and that any prospective bidder would execute a confidentiality agreement related to receipt and review of the Assignment Letter. It is my understanding that only one potential bidder

executed a confidentiality agreement pursuant to the aforementioned protocol. However, no further information was requested by the potential bidder related to the assignment of the Bang Marks. With the exception of the aforementioned potential bidder, Monster did not receive any expressions of interest from any potential bidders related to the assignment of the Bang Marks in connection with the proposed sale of the Debtors' Assets.

12. Monster and Buyer have at all times acted in good faith, and it is my understanding that upon entry of the proposed order approving the sale to Buyer (the "Sale Order"), Monster and Buyer will be entitled to the protections afforded to good faith purchasers under section 363(m) of the Bankruptcy Code. Further, I understand that upon approval of the proposed Sale Order, the transactions contemplated by the APA may not be avoided, and no damages may be assessed against Monster or Buyer under section 363(n) of the Bankruptcy Code or any other applicable bankruptcy or non-bankruptcy law. Monster and Buyer would not have agreed to enter into the APA absent these protections and the other provisions of the APA.

### No Successor Liability

13. I understand that Buyer is acquiring the Debtors' Assets free and clear of any liens, claims, encumbrances, or interests (except for any expressly assumed liabilities), in each case as set forth in the APA and the proposed Sale Order. Monster and Buyer would not be acquiring the Debtors' Assets if such assets could not be acquired free and clear of all liens, claims, encumbrances, and interests (except for any expressly assumed liabilities detailed in the APA).

14. Further, Monster and Buyer would not have agreed to the transaction contemplated by the APA if Monster or Buyer could be held liable for claims against the Debtors under any theory of successor liability, de facto merger, substantial continuity, or similar theories related to or arising under any local, state, or federal laws.

theory of successor liability, de facto merger, substantial continuity, or similar theories related to or arising under any local, state, or federal laws.

## Adequate Assurance of Future Performance

15. I am aware that Buyer will have obligations to certain contract and lease counterparties on account of contracts and leases assigned in connection with the APA. Pursuant to Section 10.16 of the APA, Monster Beverage Corporation has guaranteed the payment and performance of Buyer's obligations under the APA up to a maximum amount equal to the purchase price. Monster Beverage Corp. has a market capitalization in excess of $59B and cash and cash equivalents in excess of $3B. In addition to the purchase price payment guarantee in the APA, Monster will provide the Buyer with sufficient working capital to commence operations post-closing and has also agreed to fund any shortfall arising from the operations and obligations of Buyer post-closing. Based on the foregoing, I believe that Buyer has established adequate assurance of its future performance with respect to any assumed agreements and assumed real property leases in connection with the transactions contemplated by the APA.

## 28 U.S.C. § 1746 Declaration

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 10, 2023.

By: _/s/ Paul Dechary_
PAUL DECHARY