# **EXHIBIT 14**

Case 22-17842-PDR Doc 1009 Filed 03/17/23 Page 1 of 3

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

IN RE: Chapter 11 Case

VITAL PHARMACEUTICALS, INC., *et al.*,[1] Case No. 22-17842 (PDR)

Debtors. (Jointly Administered)

______________________________________/

**CERTIFICATE OF PUBLICATION FOR THE NOTICE OF PROPOSED SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING IN THE NEW YORK TIMES**

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).



The New York Times
Company

620 8th Avenue
New York, NY 10018
nytimes.com

# PROOF OF PUBLICATION

3/2/23

Sworn to me this 2nd day of March, 2023

Ellen Herb

Notary Public

Ellen Herb
Notary Public, State of New York
No. 01HE6163785
Qualified in New York County
Commission Expires April 2, 2023

I, Tami Bacon, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

Mar 2, 2023, NYT & NATL, pg B3

Tami Bacon

UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF FLORIDA, FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| In re: VITAL PHARMACEUTICALS, INC., *et al.*,[1] Debtors. | Chapter 11 Cases<br>Case No.: 22-17842-PDR<br>(Jointly Administered) |
|---|---|

**NOTICE OF PROPOSED SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING**

**PLEASE TAKE NOTICE** that, on October 10, 2022, the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed voluntary petitions commencing these cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that, on February 24, 2023, the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") entered an order [ECF No. 854] (the "Bidding Procedures Order")[2]: i. approving proposed bidding procedures (the "Bidding Procedures"), attached as **Exhibit 1** to the Bidding Procedures Order, by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all of their assets (the "Assets") through either (a) one or more sales of the Assets (each, a "Sale Transaction") or (b) a transaction through a plan of reorganization; ii. approving the Bid Protections, as defined and described in the Bidding Procedures; iii. establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"); iv. approving the form and manner of the Sale Notice, attached as **Exhibit 2** to the Bidding Procedures Order; v. approving the form and manner of the Assumption Notice, attached as **Exhibit 3** to the Bidding Procedures Order; vi. approving the form and manner of the Post-Auction Notice, attached as **Exhibit 4** to the Bidding Procedures Order; vii. scheduling a date for an auction if the Debtors receive one or more Qualified Bids (the "Auction"); viii. scheduling a hearing to approve one or more Sale Transactions, as necessary (the "Sale Hearing"); and ix. granting related relief.

**ALL INTERESTED OR POTENTIALLY AFFECTED PARTIES SHOULD CAREFULLY READ THE BIDDING PROCEDURES AND THE BIDDING PROCEDURES ORDER.**

**PLEASE TAKE FURTHER NOTICE** that any party that wishes to take part in the sale process contemplated by the Bidding Procedures must submit a Bid for the Assets in accordance with the terms and conditions of the Bidding Procedures by **April 24, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Bid Deadline").[3]

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order and the Bidding Procedures, if the Debtors receive more than one Qualified Bid for the Assets, the Debtors will conduct the Auction on **April 27, 2023 at 10:00 a.m. (Prevailing Eastern Time)**, or such later time the Debtors reasonably determine at: (a) the offices of Latham & Watkins LLP, located at 1271 Avenue of the Americas, New York, New York 10020; (b) telephonically; or (c) by video via Zoom, or other place (or by such other electronic means) as the Debtors reasonably determine; *provided*, that the Debtors shall timely notify all Qualified Bidders, the Consultation Parties, and all other parties entitled to attend the Auction of such later time or other place. The Debtors have the right to adjourn or cancel the Auction at or prior to the Auction.

**PLEASE TAKE FURTHER NOTICE** that only the Debtors, the Consultation Parties, Qualified Bidders, the U.S. Trustee, and/or other parties in interest that request permission and are granted permission from the Debtors to attend the Auction, in each case, along with their duly-authorized representatives, shall be entitled to attend the Auction, and only Qualified Bidders shall be entitled to bid at the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of a Sale Transaction and the transfer of the Assets free and clear of all liens, claims, interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code will be held before the Honorable Judge Peter D. Russin, United States Bankruptcy Judge for the Southern District of Florida, at the Bankruptcy Court, 299 E. Broward Blvd., Courtroom 112, Fort Lauderdale, FL 33301 on **May 10, 2023 at 10:00 a.m. (Prevailing Eastern Time)**.[4] The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that any objections to the Sale Transaction (each a "Sale Objection") must be filed no later than **March 31, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline"); *provided* that, notwithstanding the foregoing, any objections to the outcome of the Sale Transaction, the conduct of the Auction or designation or court-approval of the Successful Bid or Back-Up Bid, or Adequate Assurance Objections must be filed no later than 4:00 p.m. (Prevailing Eastern Time) on the date that is three (3) business days prior to the commencement of the Sale Hearing.

**CONSEQUENCES OF FAILING TO TIMELY ASSERT A SALE OBJECTION. ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE A SALE OBJECTION ON OR BEFORE THE APPLICABLE DEADLINE IN ACCORDANCE WITH THE ENTERED BIDDING PROCEDURES ORDER MAY BE FOREVER BARRED FROM ASSERTING ANY SALE OBJECTION TO THE SALE TRANSACTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE TRANSFERRED ASSETS OF THE DEBTORS' ESTATES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS EFFECTED THEREUNDER.**

**PLEASE TAKE FURTHER NOTICE** that this Sale Notice is subject to the terms and conditions of the Bidding Procedures Order, with the Bidding Procedures Order controlling in the event of any conflict. The Debtors encourage parties in interest to review such document in its entirety. Parties interested in receiving more information regarding the sale of the Assets and/or copies of any related document, including the Bidding Procedures Order, may make a written request to counsel to the Debtors, Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004 (Attn: Andrew Sorkin (andrew.sorkin@lw.com)) and Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: Liza Burton (liza.burton@lw.com) and Jonathan Weichselbaum (jon.weichselbaum@lw.com)).

Copies of the Bidding Procedures, the Bidding Procedures Order, and this Sale Notice may be examined by interested parties free of charge at the website established for these chapter 11 cases by the Debtors' court-approved noticing, claims, and solicitation agent, Stretto, Inc., at https://cases.stretto.com/VitalPharmaceuticals.

Dated: February 27, 2023, Miami, Florida, Respectfully submitted, /s/ Jordi Guso , George A. Davis (admitted *pro hac vice*), Liza L. Burton (admitted *pro hac vice*), Tianjiao ("TJ") Li (admitted *pro hac vice*), Brian S. Rosen (admitted *pro hac vice*), Jonathan J. Weichselbaum (admitted *pro hac vice*), **LATHAM & WATKINS LLP,** 1271 Avenue of the Americas, New York, NY 10020, Telephone: (212) 906-1200, Email: george.davis@lw.com, liza.burton@lw.com, tj.li@lw.com, brian.rosen@lw.com, jon.weichselbaum@lw.com -and- Andrew D. Sorkin (admitted *pro hac vice*), **LATHAM & WATKINS LLP,** 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 2004, Telephone: (202) 637-2200, Email: andrew.sorkin@lw.com -and- Whit Morley (admitted *pro hac vice*), **LATHAM & WATKINS LLP,** 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Telephone: (312) 876-7700, Email: whit.morley@lw.com -and- Jordi Guso, Florida Bar No. 863580, Michael J. Niles, Florida Bar No. 107203, **BERGER SINGERMAN LLP,** 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, Telephone: (305) 755-9500, Email: jguso@bergersingerman.com, mniles@bergersingerman.com, *Co-Counsel for the Debtors and Debtors in Possession*

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

[3] Pursuant to the Bidding Procedures, a Bid may contemplate the acquisition of assets of non-Debtors.

[4] To the extent the Sale Hearing occurs virtually, participation instructions will be provided on the agenda filed on the docket prior to the Sale Hearing.

HEALTH CARE

# Some Are Underwhelmed After Eli Lilly Says It Will Cut Insulin Prices

FROM FIRST BUSINESS PAGE

hailed Lilly's announcement as "a big deal, and it's time for other manufacturers to follow."

In reality, though, Lilly's moves are more limited than they initially appear. Lilly's existing $35 cap on out-of-pocket payments will be easier for privately insured patients to take advantage of. But the policies announced Wednesday will not have much, if any, effect on what many people are actually paying.

And Lilly was already charging insurers only a fraction of its high list price when accounting for rebates and discounts.

*Lilly's announcement 'does not mean that the situation is fixed.'*

Elizabeth Pfiester, executive director of T1International.

David Ricks, Lilly's chief executive, acknowledged in an interview on Wednesday that there was no guarantee that the company's changes would result in insurers paying less for Humalog, though he said he expected that would happen.

In addition, the lower list prices, which will take effect over the course of this year, only apply to Lilly's older insulin products.

"I don't think that these prices are quite as impressive as they look when you first see them," said Stacie Dusetzina, a professor of health policy at Vanderbilt University School of Medicine. "It doesn't necessarily mean that Lilly is taking a big financial hit to do this."

More than 30 million Americans have diabetes, and more than seven million of them rely on insulin. Without insulin, patients can die or face serious health consequences, including amputation and kidney failure.

Lilly's price cuts follow years of mounting pressure not just from officials in Washington and state capitals, but also from a well-organized community of patients who have called for insulin to be more affordable.

Lilly's announcement follows a change that went into effect at the start of this year for patients on Medicare. Under last year's Inflation Reduction Act, Congress imposed a $35-a-month ceiling on insulin co-payments for Medicare patients.

Lilly said it planned to reduce the list price of Humalog by 70 percent in the last three months of this year.

A vial of Humalog — patients often go through several vials per month — has a list price of $275; Lilly plans to reduce that to $66. However, insurers already pay much less than that: The average net price Lilly charged in 2021 for a vial of Humalog or its generic version was $43 after discounts and rebates, according to the company's website.

SIMON DAWSON/REUTERS

**Eli Lilly said it planned to reduce the list price of its most commonly used insulin, Humalog, by 70 percent. A vial of Humalog has a list price of $275.**

Humalog's new $66 list price will still be more than triple what it was when the product was introduced in 1996. (Lilly said it will also sharply reduce the list price of its generic version of Humalog, as well as another of its insulin products, Humulin.)

Lilly said that one of its newer Humalog products, a prefilled insulin pen that has a list price of $530, would not have its price cut. Nor would its long-acting insulin product, Basaglar, which was first approved in 2015.

Lilly's announcement "does not mean that the situation is fixed or everything is solved," said Elizabeth Pfiester, who has diabetes and is the executive director of T1International, a group that has been pushing for a federal ceiling on insulin list prices.

"This is good news for some, but we need regulation to make sure that the companies can't change their mind again and decide to raise the price," she added.

Some patient advocates are also pushing for legislation that would require insulin manufacturers to charge no more in the United States than they do elsewhere. Insulin is much cheaper in other countries, where governments negotiate prices directly with drug manufacturers.

Mr. Ricks said that Lilly opposes "price setting from the federal government," saying his company and other drug makers need incentives to innovate and develop improved versions of insulin.

Asked whether Lilly would rule out further price increases for Humalog and the other products for which it announced price cuts on Wednesday, Mr. Ricks declined to make a firm commitment. He said the company has not increased the list price of any of its insulin products since 2017.

The price of the lifesaving product has been a sensitive issue ever since insulin was invented.

When Frederick Banting helped create the substance a century ago, he refused to put his name on the first patent application because he felt it would be at odds with the Hippocratic oath he had taken as a physician. The inventors soon transferred the patent to the University of Toronto for $1, in the hopes of making it as widely available and affordable as possible. "Insulin does not belong to me," Mr. Banting famously said. "It belongs to the world."

That is not how it has ended up. In recent years, the three leading insulin manufacturers — Lilly, Sanofi and Novo Nordisk — have replaced older products with newer, costlier versions and steadily increased their prices. Together, the three companies control about 90 percent of the insulin market in the United States.

Researchers have estimated that a vial of insulin costs less than $7 to manufacture and could be sold profitably at less than $9. In 2019, in response to a Senate inquiry into high insulin prices, Sanofi acknowledged that, by one measure, it cost the company less than $2 to make one of its insulin pens, which at the time carried a list price of $75.

Representatives for Sanofi and Novo Nordisk would not say whether they would follow Lilly's moves, but said they already have programs that significantly limit most patients' out-of-pocket costs.

Christine Hauser and Sheryl Gay Stolberg contributed reporting.

# Brokers Got Lavish Perks for Selling Costly Medigap Insurance, Report Says

By REED ABELSON

Federal and state regulators are being urged to increase their oversight of insurance agents and brokers selling Medigap policies, the private supplemental coverage owned by millions of people with traditional Medicare that pays out-of-pocket costs.

These brokers received paid vacations and cash bonuses to enroll customers in plans offered by specific companies, according to a report released Wednesday by Senator Elizabeth Warren, the Massachusetts Democrat.

"Giant insurance companies have free rein to scam millions of seniors in Medigap, offering agents lavish vacations to steer unknowing beneficiaries into more expensive plans," Ms. Warren said in a statement. "Regulators must act to make sure seniors aren't getting fleeced."

The report found that at least 32 Medigap insurers were associated with reward programs, either directly or through third parties. These incentives are legal, but can create financial reasons for agents to recommend more expensive policies or plans from a single insurer.

"Seniors can pay a high price for these agent bonuses: Signing up for the wrong plan could cost hundreds or thousands of dollars more each year, either in higher premiums, higher out-of-pocket medical costs, or both," the report said.

Roughly half of those enrolled in traditional Medicare, about 14 million people, have Medigap policies. Sold by a wide range of insurance companies, the supplemental plans differ in price and the benefits they offer. They are intended to fill the gaps in Medicare coverage created through the program's deductibles and coinsurance. Some plans begin paying any out-of-pocket costs immediately, while others charge lower premiums and require patients to shoulder at least some of the bills for a hospital stay or a visit to the doctor.

KRISTOFFER TRIPPLAAR/ALAMY

**A report found that at least 32 Medigap insurers, including Cigna, were associated with reward programs, which are legal but can create outsize financial incentives. Right, a pitch from Cigna offered a Caribbean vacation.**

Senate Democrats had previously raised concerns about the overly aggressive marketing tactics used to enroll people in private Medicare Advantage plans, which now make up nearly half of all coverage for people 65 and over. Older Americans have been flooded by marketing communications, some of which appear to come from federal agencies, urging them to sign up for private coverage. Medicare has also tightened rules around how the plans are marketed.

The Warren report details numerous examples of luxurious vacations and other perks high-performing brokers receive. "Earn the sales reward trip of a lifetime," reads one pitch, offering a paid vacation to St. Thomas in the U.S. Virgin Islands. "Sell Cigna Supplemental Benefits to earn a five-day, four-night trip."

Brokers who sold large numbers of Aetna policies in 2020 were offered the opportunity to "unlock the magic of the Golden City," San Francisco, but only if they also retained a high percentage of customers. (The trip never took place because of the pandemic.) Brokers selling Mutual of Omaha plans were offered cash bonuses.

Cigna declined to comment. Aetna said it offered "a wide range of plans to meet the specific needs of Medicare beneficiaries and it is our expectation that agents sell plans that best meet those needs." Mutual of Omaha said the insurer "provides a variety of compliant, industry-standard incentives in order to encourage independent brokers to consider our solutions."

In a letter to officials at the Centers for Medicare and Medicaid Services and the National Association of Insurance Commissioners, which represents state regulators, Ms. Warren described these practices as "an abuse of the trust that seniors place in Medicare." She urged regulators to take steps to ban their use.

Medicare officials said they were "committed to ensuring that people exploring Medicare coverage options have peace of mind and receive honest, transparent and accurate information about health coverage options." The National Association of Insurance Commissioners said it was reviewing Senator Warren's letter.

Unlike the sale of Obamacare policies, brokers and agents offering Medicare plans are under no obligation to offer every policy or tell customers about how they select plans for customers, said Gretchen Jacobson, vice president of the Medicare program at the Commonwealth Fund, a nonprofit group that funds health care research. This week, the fund released a report looking at the choices people make in buying the plans, based on discussions with brokers and agents.

Someone hoping to lower their premiums may want to pick a plan with a high deductible, but a broker typically earns higher commissions by steering customers to more costly plans that have more generous coverage.

Brokers also tend to make more when someone chooses a private Medicare Advantage plan. Individuals who pick a Medicare Advantage plan and then want to switch to the traditional program may have difficulty. In most states, insurers can either deny someone coverage or charge them higher prices if they have a medical condition that is potentially expensive.

While federal dollars go to help pay for Medicare Advantage, Medigap is paid for privately by consumers or employers and is largely overseen by state insurance regulators rather than the federal government. Federal officials have standardized the kind of Medigap policies available and play some role in their oversight.

People who want to make sure they know their options should check in with their state insurance regulators, said Casey Schwarz, senior counsel for education and federal policy for the Medicare Rights Center, which helps people navigate the program. The states disclose all of the Medigap plans sold and how much they cost, Ms. Schwarz said, and can usually be found on regulators' websites. "It is not super easy to find in some states, but it is there," she said.

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

| In re: TARONIS FUELS, INC., *et al.*,[1] Debtors. | Chapter 11 Case No. 22-11121 (BLS) (Jointly Administered) |
|---|---|

**NOTICE OF DEADLINES FOR THE FILING OF PROOFS OF CLAIM AND REQUESTS FOR ALLOWANCE OF ADMINISTRATIVE CLAIMS**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**
**GENERAL BAR DATE: MARCH 27, 2023 AT 5:00 P.M. (ET)**
**ADMINISTRATIVE CLAIM BAR DATE: MARCH 27, 2023 AT 5:00 P.M. (ET)**
**GOVERNMENTAL BAR DATE: MAY 10, 2023 AT 5:00 P.M. (ET)**

On November 11, 2022, the above-captioned debtors (the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the U.S. Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). The Debtors' chapter 11 cases are jointly administered under case number 22-11121 (BLS) (the "Chapter 11 Cases").

On February 21, 2023, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. 308] (the "Bar Date Order") establishing certain deadlines for the filing of Proofs of Claim and Payment Requests in these Chapter 11 Cases.

Pursuant to the Bar Date Order, each person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, and trust) that holds or seeks to assert a Claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors that arose, or is deemed to have arisen, prior to the Petition Date (including, without limitation, Claims entitled to administrative priority status under section 503(b)(9) of the Bankruptcy Code), no matter how remote or contingent such right to payment or equitable remedy may be (with certain limited exceptions as set forth in the Bar Date Order), **MUST FILE A PROOF OF CLAIM** on or before **March 27, 2023 at 5:00 p.m. (prevailing Eastern Time)** (the "General Bar Date"), by sending an original Proof of Claim form to: (if by mail) Donlin, Recano & Company, Inc., Re: Taronis Fuels, Inc., et al., P.O. Box 199043 Blythebourne Station, Brooklyn, NY 11219; (if by overnight mail, courier, or hand delivery) Donlin, Recano & Company, Inc., Re: Taronis Fuels, Inc., et al., 6201 15th Avenue, Brooklyn, NY 11219; or by completing the online Proof of Claim form available at https://www.donlinrecano.com/Clients/tfi/FileClaim, so that it is **actually received** on or before the General Bar Date; provided that, solely with respect to governmental units (as defined in section 101(27) of the Bankruptcy Code), the deadline for such governmental units to file a Proof of Claim is **May 10, 2023 at 5:00 p.m. (prevailing Eastern Time)** (the "Governmental Bar Date").

Each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, trusts, and governmental units) that holds or wishes to assert an alleged Administrative Expense Claim against the Debtors' estate that may have arisen during the period **from the Petition Date through and including February 10, 2023 MUST FILE A PAYMENT REQUEST** on or before **March 27, 2023 at 5:00 p.m. (prevailing Eastern Time)** (the "Administrative Claim Bar Date") by sending an original Payment Request form to: (if by mail) Donlin, Recano & Company, Inc., Re: Taronis Fuels, Inc., et al., P.O. Box 199043 Blythebourne Station, Brooklyn, NY 11219; (if by overnight mail, courier, or hand delivery) Donlin, Recano & Company, Inc., Re: Taronis Fuels, Inc., et al., 6201 15th Avenue, Brooklyn, NY 11219; or by completing the online Payment Request form available at https://www.donlinrecano.com/Clients/tfi/FileClaim, so that it is **actually received** on or before the Administrative Claim Bar Date.

Any person or entity that holds a Claim that arises from the rejection of an executory contract or unexpired lease must file a Proof of Claim based on such rejection by the later of (a) the General Bar Date or (b) thirty days after the effective date of such rejection established in the Court order authorizing such rejection (the "Rejection Bar Date").

You may be listed as the holder of a Claim in the Schedules. The Schedules are available free of charge on DRC's website at https://www.donlinrecano.com/Clients/tfi/Index. If you rely on the Schedules, it is your responsibility to determine that your Claim is accurately listed in the Schedules. As described above, if (a) you agree with the nature, amount and status of your Claim as listed in the Schedules, (b) your Claim is NOT described as "disputed," "contingent," or "unliquidated," and (c) you do not dispute that the claim is an obligation of the particular Debtor against which the claim is listed in the Schedules, then you are not required to file a Proof of Claim in these Chapter 11 Cases with respect to such Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the applicable Bar Date in accordance with the procedures set forth in this Notice and the Bar Date Order.

If the Debtors amend their Schedules, then the Bar Date for those creditors affected by any such amendment shall be the later of (a) the General Bar Date or (b) 5:00 p.m. (Prevailing Eastern Time) on the date that is twenty-one (21) days from the date that the Debtors provided written notice to the affected creditor that the Schedules have been amended (the "Amended Schedules Bar Date" and, together with the General Bar Date, Governmental Bar Date, and Rejection Bar Date, the "Bar Dates," and each a "Bar Date").

Proofs of Claim and Payment Requests must be sent by overnight mail, courier service, hand delivery, regular mail or in person, or completed electronically through DRC's website described above. Proofs of Claim and Payment Requests sent by facsimile, telecopy, or electronic mail will **not** be accepted and will **not** be considered properly or timely filed for any purpose in these Chapter 11 Cases. There are certain limited exemptions from the requirements to file a Proof of Claim and Payment Requests, which are described in the Bar Date Order.

**THE FACT THAT THE DEBTORS HAVE PUBLISHED THIS NOTICE DOES NOT MEAN THAT YOU HAVE A CLAIM AGAINST THE DEBTORS OR THAT THE DEBTORS BELIEVE THAT YOU HAVE A CLAIM AGAINST THE DEBTORS.**

**ANY PERSON OR ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM AND/OR PAYMENT REQUEST, AS APPLICABLE, IN THESE CHAPTER 11 CASES WITH RESPECT TO A PARTICULAR CLAIM AGAINST THE DEBTORS BUT FAILS TO DO SO PROPERLY BY THE APPLICABLE BAR DATE, SHALL BE FOREVER BARRED, ESTOPPED AND ENJOINED FROM: (A) ASSERTING SUCH CLAIM AGAINST THE DEBTORS AND THEIR ESTATES (OR FILING A PROOF OF CLAIM OR PAYMENT REQUEST), AND THE DEBTORS AND THEIR PROPERTIES AND ESTATES SHALL BE FOREVER DISCHARGED FROM ANY AND ALL INDEBTEDNESS OR LIABILITY WITH RESPECT TO SUCH CLAIM; AND (B) VOTING UPON, OR RECEIVING DISTRIBUTIONS UNDER, ANY CHAPTER 11 PLAN IN THESE CHAPTER 11 CASES OR OTHERWISE IN RESPECT OF OR ON ACCOUNT OF SUCH CLAIM, AND SUCH PERSON OR ENTITY SHALL NOT BE TREATED AS A CREDITOR WITH RESPECT TO SUCH CLAIM FOR ANY PURPOSE IN THESE CHAPTER 11 CASES.**

The Proof of Claim Form, the Payment Request Form, the Bar Date Order, and all other pleadings filed in these Chapter 11 Cases are available free of charge on DRC's website at https://www.donlinrecano.com/Clients/tfi/Index. If you have questions concerning the filing or processing of Claims, you may contact the Debtors' claims and noticing agent, DRC, by e-mail at tfiinfo@donlinrecano.com, or by calling the toll-free information line at (866) 703-9066.

Dated: February 21, 2023 Wilmington, Delaware — BY THE ORDER OF THE COURT THE HONORABLE BRENDAN L. SHANNON

[1] The Debtors in these chapter 11 cases, along with the last four digits (if any) of each Debtor's federal tax identification number include: Taronis Fuels, Inc. (7454), MagneGas Welding Supply – West, LLC (6662), MagneGas Welding Supply – South, LLC (8686), Taronis Sub III LLC (5826), MagneGas Real Estate Holdings, LLC (7412), MagneGas IP, LLC (0988), MagneGas Production, LLC (7727), Taronis Sub 1 LLC (4205), Taronis-TAS, LLC (3356), Taronis-TAH, LLC (3542), and Taronis Sub II LLC (9673). The location of the Debtors' service address in these chapter 11 cases is 24980 N. 83rd Avenue, Suite 100, Peoria, Arizona 85383.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Bar Date Order.

UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF FLORIDA, FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| In re: VITAL PHARMACEUTICALS, INC., *et al.*,[1] Debtors. | Chapter 11 Cases Case No.: 22-17842-PDR (Jointly Administered) |
|---|---|

**NOTICE OF PROPOSED SALE, BIDDING PROCEDURES, AUCTION, AND SALE HEARING**

**PLEASE TAKE NOTICE** that, on October 10, 2022, the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") filed voluntary petitions commencing these cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that, on February 24, 2023, the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") entered an order [ECF No. 854] (the "Bidding Procedures Order")[2]: i. approving proposed bidding procedures (the "Bidding Procedures"), attached as **Exhibit 1** to the Bidding Procedures Order, by which the Debtors will solicit and select the highest or otherwise best offer for the sale of substantially all of their assets (the "Assets") through either (a) one or more sales of the Assets (each, a "Sale Transaction") or (b) a transaction through a plan of reorganization; ii. approving the Bid Protections, as defined and described in the Bidding Procedures; iii. establishing procedures for the assumption and assignment of executory contracts and unexpired leases, including notice of proposed cure amounts (the "Assumption and Assignment Procedures"); iv. approving the form and manner of the Sale Notice, attached as **Exhibit 2** to the Bidding Procedures Order; v. approving the form and manner of the Assumption Notice, attached as **Exhibit 3** to the Bidding Procedures Order; vi. approving the form and manner of the Post-Auction Notice, attached as **Exhibit 4** to the Bidding Procedures Order; vii. scheduling a date for an auction if the Debtors receive one or more Qualified Bids (the "Auction"); viii. scheduling a hearing to approve one or more Sale Transactions, as necessary (the "Sale Hearing"); and ix. granting related relief.

**ALL INTERESTED OR POTENTIALLY AFFECTED PARTIES SHOULD CAREFULLY READ THE BIDDING PROCEDURES AND THE BIDDING PROCEDURES ORDER.**

**PLEASE TAKE FURTHER NOTICE** that any party that wishes to take part in the sale process contemplated by the Bidding Procedures must submit a Bid for the Assets in accordance with the terms and conditions of the Bidding Procedures by **April 24, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Bid Deadline").[3]

**PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures Order and the Bidding Procedures, if the Debtors receive more than one Qualified Bid for the Assets, the Debtors will conduct the Auction on **April 27, 2023 at 10:00 a.m. (Prevailing Eastern Time)**, or such later time the Debtors reasonably determine at: (a) the offices of Latham & Watkins LLP, located at 1271 Avenue of the Americas, New York, New York 10020; (b) telephonically; or (c) by video via Zoom, or other place (or by such other electronic means) as the Debtors reasonably determine; *provided*, that the Debtors shall timely notify all Qualified Bidders, the Consultation Parties, and all other parties entitled to attend the Auction of such later time or other place. The Debtors have the right to adjourn or cancel the Auction at or prior to the Auction.

**PLEASE TAKE FURTHER NOTICE** that only the Debtors, the Consultation Parties, Qualified Bidders, the U.S. Trustee, and/or other parties in interest that request permission and are granted permission from the Debtors to attend the Auction, in each case, along with their duly-authorized representatives, shall be entitled to attend the Auction, and only Qualified Bidders shall be entitled to bid at the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Sale Hearing to consider approval of a Sale Transaction and the transfer of the Assets free and clear of all liens, claims, interests, and encumbrances in accordance with section 363(f) of the Bankruptcy Code will be held before the Honorable Judge Peter D. Russin, United States Bankruptcy Judge for the Southern District of Florida, at the Bankruptcy Court, 299 E. Broward Blvd., Courtroom 112, Fort Lauderdale, FL 33301 on **May 10, 2023 at 10:00 a.m. (Prevailing Eastern Time)**.[4] The Sale Hearing may be adjourned from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court or by notice filed on the docket in these chapter 11 cases.

**PLEASE TAKE FURTHER NOTICE** that any objections to the Sale Transaction (each a "Sale Objection") must be filed no later than **March 31, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline"); *provided* that, notwithstanding the foregoing, any objections to the outcome of the Sale Transaction, the conduct of the Auction or designation or court-approval of the Successful Bid or Back-Up Bid, or Adequate Assurance Objections must be filed no later than 4:00 p.m. (Prevailing Eastern Time) on the date that is three (3) business days prior to the commencement of the Sale Hearing.

**CONSEQUENCES OF FAILING TO TIMELY ASSERT A SALE OBJECTION. ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE A SALE OBJECTION ON OR BEFORE THE APPLICABLE DEADLINE IN ACCORDANCE WITH THE ENTERED BIDDING PROCEDURES ORDER MAY BE FOREVER BARRED FROM ASSERTING ANY SALE OBJECTION TO THE SALE TRANSACTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE TRANSFERRED ASSETS OF THE DEBTORS' ESTATES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS EFFECTED THEREUNDER.**

**PLEASE TAKE FURTHER NOTICE** that this Sale Notice is subject to the terms and conditions of the Bidding Procedures Order, with the Bidding Procedures Order controlling in the event of any conflict. The Debtors encourage parties in interest to review such document in its entirety. Parties interested in receiving more information regarding the sale of the Assets and/or copies of any related document, including the Bidding Procedures Order, may make a written request to counsel to the Debtors, Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004 (Attn: Andrew Sorkin (andrew.sorkin@lw.com)) and Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: Liza Burton (liza.burton@lw.com) and Jonathan Weichselbaum (jon.weichselbaum@lw.com)).

Copies of the Bidding Procedures, the Bidding Procedures Order, and this Sale Notice may be examined by interested parties free of charge at the website established for these chapter 11 cases by the Debtors' court-approved noticing, claims, and solicitation agent, Stretto, Inc., at https://cases.stretto.com/VitalPharmaceuticals.

Dated: February 27, 2023, Miami, Florida, Respectfully submitted, */s/ Jordi Guso* , George A. Davis (admitted *pro hac vice*), Liza L. Burton (admitted *pro hac vice*), Tianjiao ("TJ") Li (admitted *pro hac vice*), Brian S. Rosen (admitted *pro hac vice*), Jonathan J. Weichselbaum (admitted *pro hac vice*), **LATHAM & WATKINS LLP,** 1271 Avenue of the Americas, New York, NY 10020, Telephone: (212) 906-1200, Email: george.davis@lw.com, liza.burton@lw.com, tj.li@lw.com, brian.rosen@lw.com, jon.weichselbaum@lw.com -and- Andrew D. Sorkin (admitted *pro hac vice*), **LATHAM & WATKINS LLP,** 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 2004, Telephone: (202) 637-2200, Email: andrew.sorkin@lw.com -and- Whit Morley (admitted *pro hac vice*), **LATHAM & WATKINS LLP,** 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Telephone: (312) 876-7700, Email: whit.morley@lw.com -and- Jordi Guso, Florida Bar No. 863580, Michael J. Niles, Florida Bar No. 107203, **BERGER SINGERMAN LLP,** 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, Telephone: (305) 755-9500, Email: jguso@bergersingerman.com, mniles@bergersingerman.com, *Co-Counsel for the Debtors and Debtors in Possession*

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

[3] Pursuant to the Bidding Procedures, a Bid may contemplate the acquisition of assets of non-Debtors.

[4] To the extent the Sale Hearing occurs virtually, participation instructions will be provided on the agenda filed on the docket prior to the Sale Hearing.

*UCC PUBLIC SALE NOTICE*

**PLEASE TAKE NOTICE THAT**, pursuant to the Uniform Commercial Code, CVI Atlanta Loan Holdings, LLC, as Agent (the "Secured Party") will offer for sale at public auction to be held at 11:00 A.M. on April 24, 2023, and conducted both via Zoom (or a similar online platform) and in-person at the offices of Hunton Andrews Kurth LLP, located at 200 Park Avenue, 52nd Floor, New York, NY 10166, all right, title and interest of Peachtree Property Mezz, LLC, a Delaware limited liability company (the "Debtor"), in (i) all limited liability company interests in FO Peachtree Property LLC, a Delaware limited liability company (the "Mortgage Borrower") and (ii) all limited liability company interests in Peachtree Property Sub, LLC, a Delaware limited liability company (the "Master Tenant", together with Mortgage Borrower, the "Pledged Entities"), together with all other collateral pledged by the Debtor under those certain Pledge and Security Agreements, made by the Debtor in favor of the Secured Party, each dated as of November 16, 2018 (the "Pledge Agreements"), as more fully set forth in the Pledge Agreements (collectively, the "Collateral"). Copies of the Pledge Agreements are available for inspection as hereinafter described. The Secured Party was granted a security interest in the Collateral to secure certain indebtedness (the "Indebtedness") of the Debtor. At such public auction, the Collateral will be offered as a single asset and not in parts or as separate assets. All interested prospective purchasers that meet the qualifications for bidding are invited to attend and bid at the auction, and will have the option to attend either via Zoom (or similar online platform) or in-person.

**PLEASE TAKE FURTHER NOTICE THAT**, based upon information provided by the Debtor, the Pledged Entities and/or certain other persons and entities affiliated therewith, it is the understanding of the Secured Party (but without any warranty or representation by the Secured Party as to the accuracy or completeness of the following matters) that: (i) the Debtor owns all limited liability company interests in the Pledged Entities, (ii) the Debtor indirectly owns the fee simple interest in the property located at 590 West Peachtree Street NE, Atlanta, Georgia 30308, (the "Premises"); and (iii) the Premises are subject to a first mortgage loan securing indebtedness in the original principal amount of Twenty Eight Million Nine Hundred Fifty Thousand dollars ($28,950,000.00) (the "Mortgage Loan"). The Secured Party makes no representation as to the current status of the Mortgage Loan.

**PLEASE TAKE FURTHER NOTICE THAT** the Secured Party reserves the right to accept or reject any bid and shall not be obligated to make any sale pursuant to this notice. The Secured Party reserves the right to bid and to become a purchaser at the sale to be made pursuant to this notice and to credit against the purchase price of the Collateral any and all Indebtedness.

**PLEASE TAKE FURTHER NOTICE THAT** the Collateral will be sold pursuant to appropriate transfer documents on an "as is, where is" basis and without representations or warranties of any kind or nature whatsoever.

**PLEASE TAKE FURTHER NOTICE THAT** the limited liability company interests in the Pledged Entities may be considered unregistered securities under the Securities Act of 1933, as amended. The purchaser of the Collateral will be required to represent in writing to the Secured Party (the "Bidding Certificate") that such purchaser (i) is acquiring the Collateral for investment purposes, solely for the purchaser's own account and not with a view to distribution or resale of the Collateral; (ii) has sufficient knowledge and experience in financial and business matters so as to be capable of evaluating the merits and risks of investment and has sufficient financial means to afford the risk of investment in the Collateral; (iii) will not resell or otherwise hypothecate the Collateral without a valid registration under applicable federal or state laws, including, without limitation, the Securities Act of 1933, as amended, or an available exemption therefrom; and (iv) will purchase the Collateral in compliance with all applicable federal and state laws. The purchaser of the Collateral will be further required to represent in the Bidding Certificate that it (a) is or will be, at the time of closing of the sale, a Qualified Transferee (as defined in that certain Intercreditor Agreement, dated as of November 16, 2018 (as amended, supplemented or otherwise modified from time to time, the "Intercreditor Agreement"), by and among Citizens Bank, National Association, as Senior Agent and Senior Lender, and the Secured Party, as Mezzanine Agent and Mezzanine Lender, and (b) will be able to satisfy and will satisfy all of the other requirements of the Intercreditor Agreement, including without limitation the requirements set forth in section 5(a) therein. Additionally, the Bidding Certificate shall provide the prospective bidder's agreement to indemnify the Secured Party with respect to any claim based on any misrepresentation or inaccuracy contained in such Bidding Certificate. Meeting any requirements of the foregoing shall be at the sole risk, cost and expense of a prospective bidder. A copy of the Intercreditor Agreement is available for inspection as hereinafter described.

**PLEASE TAKE FURTHER NOTICE THAT** the following will apply with respect to the sale herein described. The Collateral will be sold for cash at such price and on such other commercially reasonable terms as the Secured Party may determine. The minimum bidding increments will be $100,000.00 or such other amount as the Secured Party may announce at the auction. In order for a prospective bidder (other than the Secured Party or its designee) to be a "qualified bidder" and eligible to bid at the public auction, each such prospective bidder must, unless otherwise agreed in writing by the Secured Party: (a) register with Jones Lang LaSalle Americas, Inc. (the "Broker") and execute and deliver to the Broker a Bidding Certificate (as hereinafter defined), (i) by email to brett.rosenberg@jll.com provided receipt is confirmed by response email from Brett Rosenberg, or (ii) by hand, certified mail (return receipt requested), or overnight delivery by a nationally recognized courier service, with a courtesy copy sent by email to brett.rosenberg@jll.com; so as to be actually received on or prior to 5:00 PM (prevailing Eastern Time) on the date which is at least seven (7) calendar days prior to the date of the public sale; (b) demonstrate to the Secured Party's satisfaction in advance of bidding its financial ability to tender payment for the Collateral; (c) demonstrate, to the Secured Party's satisfaction, that the certifications set forth in its Bidding Certificate are true and correct, including without limitation with respect to the prospective bidder's ability to qualify as a Qualified Transferee (as defined in the Intercreditor Agreement) and to meet the Eligibility Requirements (as defined in the Intercreditor Agreement); and (d) at least two (2) business days prior to the start of the auction, provide an initial deposit to the title company or other agent designated by the Secured Party (the "Designated Agent"), by wire transfer of immediately available funds from a U.S. commercial bank that is a member of the Federal Reserve System, in an amount equal to $100,000 (the "Initial Deposit"). A further deposit will be required from the successful bidder immediately following the public auction and the balance will be due in accordance with the terms and conditions of the sale, which terms and conditions may be obtained by contacting the Broker at the address below. The successful bidder will be required to execute a contract of sale and such other documents as may be required in accordance with the terms and conditions of the sale at the time the bid is accepted. The terms and conditions of the sale may be waived or modified by the Secured Party in its sole discretion at the time of the sale. Prospective bidders are encouraged to perform such due diligence as they deem necessary.

**PLEASE TAKE FURTHER NOTICE THAT** the full terms and conditions of the sale, copies of the relevant agreements, information for attending the auction, and other information may be obtained by contacting Brett Rosenberg at Jones Lang LaSalle Americas, Inc., 330 Madison Avenue, New York, New York 10017, Telephone No.: (212) 812-5926, Email: brett.rosenberg@jll.com. In the event of any conflict between the terms herein and the full terms of public sale, the full terms of public sale shall govern. For further information please visit the following website: www.590WPeachtreeStNWUCCsale.com.

