

**ORDERED in the Southern District of Florida on July 12, 2023.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In Re:                                                          Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]      Case No.: 22-17842-PDR

      Debtors.                                          (Jointly Administered)

_____/

### ORDER GRANTING DEBTORS' *EXPEDITED* MOTION TO APPROVE COMPROMISE BETWEEN (I) THE DEBTORS, (II) MONSTER ENERGY COMPANY, (III) MONSTER BEVERAGE CORPORATION, (IV) ORANGE BANG, INC., (V) THE COMMITTEE, AND (VI) THE SUPPORTING LENDERS

**THIS MATTER** having come before the Court for hearing on July 12, 2023, at 10:00 a.m.,

in Fort Lauderdale, Florida, upon the *Debtors' Expedited Motion to Approve Compromise Between*

*(I) the Debtors, (II) Monster Energy Company, (III) Monster Beverage Corporation, (IV) Orange*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev, LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

Bang, Inc., (V) the Committee, and (VI) the Supporting Lenders (the "Motion") [ECF No. 1548] filed by the Debtors[2].  The Court, having considered the Motion ,the evidence and testimony in support of the Motion offered at the hearing on July 12, 2023, and the Settlement Agreement attached to the Motion as **Exhibit A**, and being otherwise fully advised in the premises, and for good cause, it is hereby:

ORDERED and ADJUDGED as follows:

1.      The Motion is **GRANTED**.

2.      The Settlement Agreement attached as **Exhibit A** to the Motion and this Order is **APPROVED** in its entirety, and each and every provision of the Settlement Agreement is incorporated herein as if fully set forth in this Order.

3.      The parties to the Settlement Agreement are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Settlement Agreement.

4.      The Parties are directed to comply with the terms of the Settlement Agreement and the Court reserves jurisdiction to enforce the terms of the Settlement Agreement.

#   #   #

Submitted by:
Jordi Guso, Esq.
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com
Email:  mniles@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Motion.

-2-

12271314-1

## Exhibit A

## Settlement Agreement

# VITAL PHARMACEUTICALS, INC., *ET AL.*

## SETTLEMENT TERM SHEET

### June 28, 2023

This term sheet (the "***Settlement Term Sheet***") is entered into as of the date set forth above and presents the terms and conditions of a settlement (the "***Settlement***") between and among Vital Pharmaceuticals, Inc. ("***VPX***"), Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC ("***JHO***"), JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev, LLC, and Vital Pharmaceuticals International Sales, Inc. (each a "***Debtor***," and collectively, the "***Debtors***"), Truist Bank, as the DIP Agent and the Prepetition Agent (in each case as defined in the Final DIP Order (as defined herein)) (in such capacities, the "***Agents***"), the undersigned Prepetition Lenders (as defined in the Final DIP Order) and DIP Lenders (collectively, the "***Supporting Lenders***"), the Official Committee of Unsecured Creditors (the "***Committee***"), Monster Energy Company ("***MEC***"), Monster Beverage Corporation ("***MBC***," together with MEC, "***Monster***"), and Orange Bang, Inc. ("***OBI***"). The Debtors, the Agents, the Supporting Lenders, the Committee, Monster, and OBI are each individually referred to as a "***Party***" and, collectively, as the "***Parties***" to this Settlement Term Sheet.

This Settlement Term Sheet is being entered into simultaneously and in connection with that certain *Asset Purchase Agreement*[1] (the "***Monster APA***") and the effectiveness of the settlements contemplated herein is expressly conditioned on entry of both an order of the Bankruptcy Court approving the Settlement as well as an order of the Bankruptcy Court authorizing the transaction contemplated in the Monster APA and the consummation of such transaction.[2] These and other conditions precedent to the Settlement are described further below. To the extent there is a conflict between this Settlement Term Sheet and the Monster APA with respect to the rights of the Parties to the Monster APA, the terms of the Monster APA shall control.

Nothing contained in this Settlement Term Sheet shall be an admission of fact or liability.

| 1. Release of Monster Litigation | To the extent provided for in Section 7.16 of the Monster APA, and subject to the terms and conditions thereof in all respects, releases of the litigation claims between Monster and the Debtors shall be exchanged, and the Debtors, the Supporting Lenders, and the Committee shall consent to allowance of the California District Court Action Allowed Unsecured Claim, the OBI/Monster Matter Allowed Unsecured Claim, and the Trade Dress Action Allowed Unsecured Claim, as provided for below. |
|---|---|

---

[1]   *Asset Purchase Agreement* (as amended, modified or supplemented from time to time) made and entered into as of June 28, 2023, by and among VPX, a Florida corporation, the Affiliates of VPX listed on Schedule I thereto, and Blast Asset Acquisition LLC, a Delaware limited liability company, solely for purposes of Section 7.16, MEC, a Delaware corporation, and solely for purposes of Section 7.16 and Section 10.16, MBC, a Delaware corporation.

[2]   Terms used but not defined herein have the meanings given in the Monster APA.

| 2. **Treatment of Monster's Claims** | To the extent provided for in Section 7.2 of the Monster APA, Monster shall receive the allowed claims (the "***Allowed Monster Claims***") provided for below.  The Allowed Monster Claims will be subject to the Limitations on Sources of Recovery in all respects. |
|---|---|
| | *California District Court Action Allowed Unsecured Claim*:  Monster's asserted claims against the Debtors (whether asserted as administrative or unsecured) on account of the California District Court Action shall be resolved in exchange for an allowed, unsecured, non-administrative claim equal to (i) $292,939,761.00, <u>minus</u> the amount of any remittitur granted by the California District Court pursuant to any ruling on the VPX Post-Verdict Motion (or, in the case of a judgment notwithstanding the verdict in favor of VPX or a grant of a new trial, <u>minus</u> the entire amount), plus accrued interest (if any) until the Petition Date, <u>plus</u> (ii) fifty percent (50%) of any additional award as shall be determined by the California District Court, including, pursuant to any ruling on the MEC Post-Verdict Motion, plus accrued interest until the Petition Date.  Neither Monster nor the Debtors will appeal from, seek reconsideration of, or otherwise challenge the California District Court's ruling on such motions/requests for relief, except that Monster may appeal in the event any appeal is taken by Mr. John H. "Jack" Owoc in his individual capacity. |
| | *OBI/Monster Matter Allowed Unsecured Claim*:  Monster's asserted claims against the Debtors (whether asserted as administrative or unsecured) on account of the OBI/Monster Matter shall be resolved in exchange for an allowed, unsecured, non-administrative claim equal to $216,131,658.35 <u>plus</u> accrued prepetition interest not included in such amount.  Such allowed claim shall be for the benefit of both OBI and Monster and no duplicative claim of OBI shall be allowed.   In accordance with the terms of the Monster APA, VPX shall, following the Closing, cause the OBI/Monster Escrow Amount to be distributed to Monster and OBI, and VPX shall have no further obligation to make deposits into the escrow for sales following the Closing.  For the avoidance of doubt, the Debtors shall be entitled to receive the OBI/Monster Escrow Excess, and if applicable, Monster shall be entitled to payment of the OBI/Monster Escrow Shortfall, as provided for in the Monster APA. |
| | *Trade Dress Action Allowed Unsecured Claim*:  Monster's asserted claims against the Debtors (whether asserted as administrative or unsecured) on account of the Trade Dress Action shall be resolved in exchange for an allowed, unsecured, non-administrative claim equal to $58,000.00, which amount is equal to the award entered in favor of Monster in the Trade Dress Action as taxable litigation costs. |

| | | |
|---|---|---|
| | | Neither MEC nor any Affiliates or Representative thereof shall have or be granted allowed claims in the Bankruptcy Case (including any administrative expense claims) other than the California District Court Action Allowed Unsecured Claim, the OBI/Monster Matter Allowed Unsecured Claim, and the Trade Dress Action Allowed Unsecured Claim. |
| 3. | **Treatment of OBI's Claims** | OBI shall receive the benefit of one-half of each of the OBI/Monster Matter Allowed Unsecured Claim and the OBI/Monster Escrow Amount as set forth above. No other claims of OBI, including those arising out of or related to the OBI/Monster Matter and including any administrative expense claims, shall be allowed. |
| | | For the avoidance of doubt, the Debtors shall be entitled to receive the OBI/Monster Escrow Excess as provided for in, and in accordance with the terms of, the Monster APA. |
| 4. | **Treatment of Supporting Lenders' Deficiency Claim** | The Supporting Lenders agree to support a chapter 11 plan providing that any portion of: (i) their claims on account of the DIP Liens and the DIP Superpriority Claims[3] not satisfied from proceeds of the sale distributed on account of the DIP Obligations at Closing in accordance with the Sale Order will be recharacterized as Prepetition Facility Claims and allowed as non-superpriority, non-administrative deficiency claims that are (A) unsecured by the assets of the Debtors and (B) secured by the assets of non-Debtor entities constituting Prepetition Collateral (as defined in the Final DIP Order) as if no Roll-Up (as defined in the Final DIP Order) had occurred; and (ii) the Prepetition Facility Claims not satisfied from proceeds of the sale distributed on account of such claims at Closing in accordance with the Sale Order or proceeds received from the sale of non-Debtor assets will be allowed as unsecured, non-superpriority, non-administrative deficiency claims (collectively, the "<u>Allowed Lender Deficiency Claim</u>"). |
| | | In the event that a chapter 11 plan in the Bankruptcy Case is not confirmed on or before October 31, 2023, or the Debtors' chapter 11 cases convert to cases under chapter 7 of the Bankruptcy Code and a chapter 7 trustee election process is initiated (as discussed herein), the Supporting Lenders agree that their respective portions of the Allowed Lender Deficiency Claim shall be treated as unsecured, non- |

---

[3]  "**DIP Liens**," "**DIP Superpriority Claims**," and "**Prepetition Facility Claims**" have the meanings given in the *Final Order (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [ECF No. 638] (the "**Final DIP Order**").

|  | superpriority, non-administrative deficiency claims, and will be subject to the Limitations on Sources of Recovery identified below.

The Supporting Lenders will not assert or be entitled to recover on account of any adequate protection claims, and the other Parties to the Settlement acknowledge that adequate protection previously received by Supporting Lenders is not subject to disgorgement. |
| --- | --- |
| **5. Limitations on Sources of Recovery** | The Allowed Monster Claims (excluding the 50% share of the OBI/Monster Matter Unsecured Claim attributable to OBI) and Allowed Lender Deficiency Claims of the Supporting Lenders shall not receive a distribution until all unsecured claims not held by the Supporting Lenders or Monster receive an aggregate distribution of $5 million; *provided*, that to the extent that cash on hand in the bankruptcy estates exceeds $15.5 million <u>minus</u> the aggregate amount of professional fees and expenses accrued since the Closing Date on the earlier of (i) the effective date of any chapter 11 plan or (ii) the date on which the Debtors' cases convert to cases under chapter 7 of the Bankruptcy Code, the $5 million threshold above which Allowed Lender Deficiency Claims of the Supporting Lenders may participate in recoveries to unsecured creditors shall be reduced dollar-for-dollar to the extent of such excess.

Monster and the Supporting Lenders agree to support a chapter 11 plan providing for such treatment as to all Allowed Lender Deficiency Claims and all Allowed Monster Claims. |
| **6. Plan and Other Support Obligations** | Monster and the Supporting Lenders will support and, subject to the solicitation of votes through a Court-approved disclosure statement, vote their Allowed Monster Claims and Allowed Lender Deficiency Clams, as applicable, in favor of a chapter 11 plan that:

- is consistent with allowance of claims in amounts, and with priorities, identified in this Settlement Term Sheet;

- provides equivalent/pro rata treatment of Allowed Monster Claims and the Allowed Lender Deficiency Claims relative to other general unsecured claims, subject to the Limitations on Recovery;

- includes standard debtor and third-party releases and exculpation for benefit of the Debtors, Committee, Monster, the Buyer, the Buyer Related Parties, the Selling Related Parties, Supporting Lenders, the Agents, the other Prepetition Secured Parties (as defined in the Final DIP Order), and each of their Representatives, it being understood and agreed, that claims |

|  | against all Excluded Parties will not be released or exculpated; and<br><br>• is not otherwise inconsistent with this Settlement Term Sheet.<br><br>In the event that the Debtors' chapter 11 cases convert to cases under chapter 7 of the Bankruptcy Code, Monster, OBI, and the Supporting Lenders (as well as the Agents) agree to support, and vote their Allowed Monster Claims, OBI/Monster Matter Allowed Unsecured Claim, and Allowed Lender Deficiency Claims (as applicable) for and in favor of a chapter 7 trustee to be identified by the Committee prior to the date of such conversion. |
|---|---|
| **7. Implementation/ Conditions Precedent/ Termination** | The Settlement shall be effective only upon all of the following conditions (the "***Conditions Precedent***") having been satisfied:<br><br>• each of the Parties having executed this Settlement Term Sheet;<br><br>• entry of an order of the Bankruptcy Court approving the Settlement in its entirety and without modifications (the "***9019 Order***");<br><br>• entry of an order of the Bankruptcy Court, in form and substance reasonably acceptable to the Parties, approving the Monster APA in its entirety; and<br><br>• closing of the transaction contemplated in the Monster APA.<br><br>Notwithstanding the foregoing, immediately upon execution hereof, each Party further agrees:<br><br>• to use good faith and commercially reasonable efforts to implement the Settlement and achieve satisfaction of the Conditions Precedent; and<br><br>• that the 9019 Order approving the Settlement shall be in form and substance reasonably acceptable to the Parties hereto (except as otherwise provided in the Monster APA with respect to the parties thereto).<br><br>The foregoing obligations of the Parties shall terminate automatically upon the occurrence of any of the following events: (a) the motion to approve the Settlement is denied by the Bankruptcy Court; (b) the Monster APA is terminated in accordance with its terms prior to the Closing; or (c) after entry, the 9019 Order is vacated, reversed, or modified in a manner not acceptable to any Party. |

| | | In the event that any Party materially breaches its obligations under this Settlement Term Sheet (including, without limitation, this Section 7), nothing herein shall waive, prejudice, or otherwise limit any rights or remedies available to the non-breaching Parties in law or equity. |
| --- | --- | --- |
| **8.** | **Governing Law** | Except to the extent provided otherwise in Section 10.6 of the Monster APA, this Settlement Term Sheet and the Settlement memorialized herein shall be governed by, and construed in accordance with, the laws of the State of Delaware, without regard to choice or conflict of law principles that would result in the application of any laws other than the laws of the State of Delaware.<br><br>Except to the extent provided otherwise in Section 10.8 of the Monster APA, the Bankruptcy Court shall have jurisdiction over any matter or dispute arising from or relating to the implementation of the Settlement or this Settlement Term Sheet. |

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Term Sheet to be executed as of the date first written above.

**DEBTORS:**

**VITAL PHARMACEUTICALS, INC.**

By: _____
Name: John DiDonato
Title: Chief Transformation Officer

**VITAL PHARMACEUTICALS
INTERNATIONAL SALES, INC.**

By: _____
Name: John DiDonato
Title: Chief Transformation Officer

**JHO INTELLECTUAL PROPERTY
HOLDINGS, LLC**

By: _____
Name: John DiDonato
Title: Chief Transformation Officer

**JHO REAL ESTATE INVESTMENT, LLC**

By: _____
Name: John DiDonato
Title: Chief Transformation Officer

**QUASH SELTZER, LLC**

By: _____
Name: John DiDonato
Title: Chief Transformation Officer

*[Signature Page to Settlement Term Sheet]*

**BANG ENERGY CANADA, INC.**

By: _____
Name: John DiDonato
Title: Chief Transformation Officer

RAINBOW UNICORN BEV, LLC

By: _____
Name: John DiDonato
Title: Chief Transformation Officer

AGENTS:

TRUIST BANK,
as DIP Agent and Prepetition Agent

By: _____

Name:  Jade Silver
Title:  Senior Vice President

SUPPORTING LENDERS:

TRUIST BANK,
as a Supporting DIP Lender and a Supporting Prepetition
Lender

By: _____

Name:  Jade Silver
Title:   Senior Vice President

COBANK, ACB,
as a Supporting DIP Lender and a Supporting Prepetition
Lender


By: _____
Name: Janet Downs
Title:   Lead Special Assets Officer

AGCOUNTRY FARM CREDIT SERVICES, FLCA,
as a Supporting DIP Lender and a Supporting Prepetition
Lender

By: _____

Name:  Lisa Caswell
Title:    Vice President Capital Markets

FARM CREDIT BANK OF TEXAS,
as a Supporting DIP Lender and a Supporting Prepetition
Lender


By: _____
Name:  Mike C. Hawkins
Title:    Director – Capital Markets

CITIZENS BANK, N.A.,
as a Supporting DIP Lender and a Supporting Prepetition
Lender

By: _____

Name: Michael Flynn
Title:   Senior Vice President

COMPEER FINANCIAL, PCA,
as a Supporting DIP Lender and a Supporting Prepetition
Lender


By:_____
Name: Kevin Buente
Title: Principal Credit Officer

SYNOVUS BANK,
as a Supporting DIP Lender and a Supporting Prepetition
Lender

By: _____

Name:   John M. Quarles, Jr.

Title:   Senior Special Assets Officer

FEDERAL AGRICULTURAL MORTGAGE
CORPORATION,
as a Supporting DIP Lender and a Supporting Prepetition
Lender

By: _____
Name: Stephen W. Yose
Title: Director, Senior Credit Risk Officer

GREENSTONE FARM CREDIT SERVICES, FLCA, as a Supporting DIP Lender and a Supporting Prepetition Lender

By:_____
Name: Mark Strebel
Title:  Vice President of Risk Assets

COMERICA BANK,
as a Supporting DIP Lender and a Supporting Prepetition
Lender

By:_____

Name: Cynthia B. Jones
Title:   Vice President

HSBC BANK USA, N.A.,
as a Supporting DIP Lender and a Supporting Prepetition
Lender

By: :
Name:  Rino Falsone
Title:   Vice President

UNITED COMMUNITY BANK d/b/a SEASIDE
BANK AND TRUST,
as a Supporting DIP Lender and a Supporting Prepetition
Lender

By: _____

Name: J. Brett Brason

Title: Sr. Vice President

**LOWENSTEIN SANDLER LLP**, on behalf of the **OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By: _____

Name: Jeffrey L. Cohen

Title: Partner

By signing above, Lowenstein Sandler LLP represents that it has been duly authorized by the Official Committee of Unsecured Creditors (the "Committee") to bind the Committee to the terms of this Settlement Agreement Term Sheet

**MONSTER ENERGY COMPANY**

By: _____

Name: Hilton H. Schlosberg

Title:  Vice Chairman of the Board of Directors,
       Co-Chief Executive Officer

**MONSTER BEVERAGE CORPORATION**

By: _____

Name: Hilton H. Schlosberg

Title:  Vice Chairman of the Board of Directors,
       Co-Chief Executive Officer

VITAL PHARMACEUTICALS, INC.
SETTLEMENT AGREEMENT TERM SHEET

**ORANGE BANG, INC.**

By: _____

Name:    PRESIDENT

Title:    06/16/23

VITAL PHARMACEUTICALS, INC.
SETTLEMENT AGREEMENT TERM SHEET