UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-17842-PDR |
| Debtors. _____/ | (Jointly Administered) |

## NOTICE OF FILING SIDE LETTER AGREEMENT

Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, EEC, Quash Seltzer, EEC, Rainbow Unicorn Bev LLC, and Vital Pharmaceuticals International Sales, Inc. (collectively, the "Debtors"), by and through their undersigned counsel, file the attached *Side Letter Agreement* dated as of July 10, 2023, entered into by and between certain of the Debtors and Blast Asset Acquisition, LLC, pursuant to Section 10.1 of the Asset Purchase Agreement attached to the *Notice of Auction Cancellation and Successful Bidder* filed on the docket on June 28, 2023 [ECF No. 1546].

| | |
|---|---|
| Dated: July 13, 2023<br>Miami, Florida | Respectfully submitted, |
| | */s/ Jordi Guso* |
| George A. Davis (admitted *pro hac vice*) | Jordi Guso |
| Tianjiao ("TJ") Li (admitted *pro hac vice*) | Florida Bar No. 863580 |
| Brian S. Rosen (admitted *pro hac vice*) | Michael J. Niles |
| Jonathan J. Weichselbaum (admitted *pro hac vice*) | Florida Bar No. 107203 |
| **LATHAM & WATKINS LLP** | **BERGER SINGERMAN LLP** |
| 1271 Avenue of the Americas | 1450 Brickell Avenue, Suite 1900 |
| New York, NY 10020 | Miami, FL 33131 |
| Telephone:  (212) 906-1200 | Telephone:  (305) 755-9500 |
| Email:  george.davis@lw.com | Email:  jguso@bergersingerman.com |
|   tj.li@lw.com |   mniles@bergersingerman.com |
|   brian.rosen@lw.com | |
|   jon.weichselbaum@lw.com | |

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

12280105-1

2

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone:   (202) 637-2200
Email:   andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

*Co-Counsel for the Debtors*

*Execution Version*

July 10, 2023

## SIDE LETTER AGREEMENT

**VIA EMAIL**

Vital Pharmaceuticals, Inc.
1600 N Park Drive
Weston, FL 33326
Attention: Gregg Metzger; John DiDonato
Email: gregg.metzger@bangenergy.com; jdidonato@hcg.com

Blast Asset Acquisition LLC
c/o Monster Energy Company
1 Monster Way
Corona, California 92879
Attention:  Paul Dechary; Aaron P. Sonnhalter
Email:  paul.dechary@monsterenergy.com; aaron.sonnhalter@monsterenergy.com

Re: Asset Purchase Agreement, dated as of June 28, 2023

Buyer and Seller:

Reference is made to that certain Asset Purchase Agreement, dated as of June 28, 2023 (the "Purchase Agreement"), by and among Vital Pharmaceuticals, Inc., a Florida corporation (the "Seller"), the Affiliates of the Seller listed on Schedule I to the Purchase Agreement (such Affiliates, together with the Seller, the "Selling Entities"), Blast Asset Acquisition LLC, a Delaware limited liability company (the "Buyer"), and solely for purposes of Section 7.16 of the Purchase Agreement, Monster Energy Company, a Delaware corporation, and solely for purposes of Section 7.16 and Section 10.16 of the Purchase Agreement, Monster Beverage Corporation, a Delaware corporation.

Pursuant to Section 10.1 of the Purchase Agreement, the Purchase Agreement may be amended by a written instrument signed by the Seller, on behalf of each of the Selling Entities, and the Buyer.

In consideration of the premises and of the mutual covenants and agreements contained herein and in the Purchase Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.  ***Funding of Selling Entities***.  The Purchase Agreement shall be deemed amended as follows:

    a.    From the date hereof through the earlier of the Closing Date and the valid termination of the Purchase Agreement in accordance with its terms, the Selling Entities shall, from time to time, be entitled to access and utilize the Deposit to pay the business and operating costs and expenses and professional fees, costs, expenses or disbursements of the Selling Entities

in strict compliance with the amounts and timing set forth in the budget attached hereto as <u>Exhibit A</u>, subject to permitted variances on disbursements as set forth in the DIP Order and weekly reporting requirements consistent with the DIP Order (with such reporting to be provided to the Buyer concurrently with delivery to the DIP Lenders).  Promptly (and in any event not later than two (2) Business Days) following receipt by the Buyer of a written notice (email being sufficient) from the Seller that complies with the requirements of the immediately preceding sentence (each such notice, a "<u>Funding Request</u>"), the Buyer will execute and deliver a joint written instruction to the Escrow Agent to disburse to an account designated by the Seller by wire transfer of immediately available funds the amount set forth in such Funding Request; *provided*, that if the Buyer does not execute such joint written instruction within such two (2) Business Day period and the Seller is not then in material breach of its obligations hereunder and the Buyer has not terminated the Purchase Agreement in accordance with its terms, then the Seller shall be entitled to file a motion on an emergency basis before the Bankruptcy Court, on notice to the Buyer, seeking to (i) enforce this letter agreement and (ii) obtain entry of an order directing the Escrow Agent to withdraw from the Deposit such amount set forth in the Funding Request.  For the avoidance of doubt, so long as the Seller's obligations hereunder are satisfied and the Buyer has not terminated the Purchase Agreement in accordance with its terms, there shall be no other conditions to the availability of the Deposit (or any portion thereof) for the purposes contemplated by this <u>Section 1</u> (other than the delivery of a Funding Request) and no other documentation shall be required to be entered into or provided by the Buyer or any of the Selling Entities as a condition to the availability of the Deposit (or any portion thereof) for the purposes contemplated by this <u>Section 1</u>.

    b. For the avoidance of doubt, no matter how much of the Deposit is used by the Selling Entities hereunder, (i) the Buyer shall receive (A) a credit of $25,000,000 against the Purchase Price at the Closing, (B) in connection with a Specified Termination, the remainder of the Deposit after the Specified Termination Amount has been paid to the Seller pursuant to the Purchase Agreement and after giving effect to any funding contemplated by <u>Section 1(a)</u> hereof as of the date of such Specified Termination and, if at such time such remainder of the Deposit totals less than $15,000,000, then any such deficiency shall be recovered from the collateral of the DIP Lenders pursuant to a separate participation agreement, or (C) in connection with a termination of the Purchase Agreement by the Buyer pursuant to Section 9.1(j) or Section 9.1(k) of the Purchase Agreement, the sum of $25,000,000 from the remainder of the Deposit after giving effect to any funding contemplated by <u>Section 1(a)</u> hereof as of the date of such termination and, if at such time such remainder of the Deposit totals less than $25,000,000, then any such deficiency shall be recovered from the collateral of the DIP Lenders pursuant to a separate participation agreement or (ii) in the event of a Buyer Default Termination, the Seller shall receive the remainder of the Deposit and shall be deemed to have received the full benefit of $25,000,000 funded by the Buyer as contemplated in the Purchase Agreement.

    2. ***Amendment to the Purchase Agreement and Seller Disclosure Schedule.***

     a. Section 9.1(c) of the Purchase Agreement is hereby amended and restated in its entirety as follows:

"(c) the Buyer, if the Sale Order is not entered by July 17, 2023; *provided*, that no termination may be made by the Buyer under this Section 9.1(c) if the Buyer is in material breach of any of its representations, warranties, covenants or agreements hereunder;"

  b. Section 9.1(k) of the Purchase Agreement is hereby amended and restated in its entirety as follows:

"the Buyer or the Seller, if the DIP Lenders fail to forbear from exercising any remedies relating to the DIP Obligations through the Closing Date; *provided*, that no termination may be made by any Party under this Section 9.1(k) if such Party is in material breach of any of its representations, warranties, covenants or agreements hereunder."

  c. Section 9.1(k) of the Seller Disclosure Schedule is hereby deleted in its entirety.

  d. Section 10.3(a) of the Purchase Agreement is hereby amended and restated in its entirety as follows:

"If to any Selling Entity or the Selling Entities, to:

Vital Pharmaceuticals, Inc.
1600 N Park Drive
Weston, FL 33326
Attention: Gregg Metzger
      John DiDonato
Email: gregg.metzger@bangenergy.com
    jdidonato@hcg.com

with a mandated copy (which shall not constitute notice) to:

Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Attention: Andrew Sorkin
      Daniel Mun
      Caroline Reckler
Email: andrew.sorkin@lw.com
    daniel.mun@lw.com
    caroline.reckler@lw.com"

  e. Section 10.3(b) of the Purchase Agreement is hereby amended and restated in its entirety as follows

"If to the Buyer, to:

Monster Energy Company
1 Monster Way
Corona, California 92879

>
> Attention:   Paul Dechary, Executive Vice President, Legal
>                     Aaron P. Sonnhalter, Sr. Vice President
> Email:  paul.dechary@monsterenergy.com
>              aaron.sonnhalter@monsterenergy.com
>
> with a mandated copy (which shall not constitute notice) to:
>
> Pachulski Stang Ziehl & Jones LLP
> 10100 Santa Monica Blvd., 13th Floor
> Los Angeles, CA  90067
> Attention:   Richard M. Pachulski
>                     Teddy Kapur
> Email:  rpachulski@pszjlaw.com
>              tkapur@pszjlaw.com"

3. **Antitrust Closing Conditions**. The parties hereto agree that the FTC's June 30, 2023 letters to the parties terminated the HSR waiting period, satisfying the portion of the condition to Closing under Section 8.1(b) of the Purchase Agreement that states "the HSR Act waiting period (including any extensions thereof) shall have expired or been terminated." The parties hereto agree that the July 5, 2023 warning letter from the FTC in and of itself is not an impediment to consummating the Closing under the Purchase Agreement (including Section 8.1(a) thereof) and that such warning letter shall not (solely and in and of itself) (i) give rise to any right of termination under the Purchase Agreement or (ii) be deemed to result in any condition to Closing set forth in the Purchase Agreement not to be satisfied. The parties also agree that Section 8.1(a) of the Purchase Agreement otherwise remains unchanged, including that there shall be no pending or threatened Governmental Authority investigation under the Regulatory Laws, which, for the sake of clarity, includes but is not limited to FTC issuance of a subpoena or civil investigative demand or any indication, written or oral, other than the July 5, 2023 warning letter (solely and in and of itself), that the FTC is investigating or plans to investigate the transactions arising from the Purchase Agreement, including any investigation arising out of the warning letter, under the Regulatory Laws. For the avoidance of doubt, Seller and Seller Entities agree not to use the fact of Buyer's agreement to the limited exceptions to Section 8 of the Purchase Agreement described in this Paragraph 3 to claim that Buyer has otherwise waived any rights, conditions, or obligations under the Purchase Agreement.

4. **Rejected Contracts.** Notwithstanding anything to the contrary in the Purchase Agreement, on or prior to the date that is two (2) Business Days prior to the Closing Date, the Buyer may direct the Debtors to file a motion to reject any Contract which is not an Assumed Agreement or an Assumed Real Property Lease, or is not already the subject of a motion to reject, effective as of the Closing Date or such other date as may be mutually agreed to by Buyer and Sellers; *provided, however*, if the Selling Entities determine that any such Contract to be rejected is necessary for the wind-down of the Selling Entities, the Selling Entities shall have the right to not include such Contract in a motion to reject, with the costs associated with maintaining such Contract to be borne by the Selling Entities and not the Buyer. For the avoidance of doubt and notwithstanding the foregoing or anything in the Purchase Agreement to the contrary, if the Buyer previously directed the Selling Entities in writing not to reject such Contract (a "Retention Notice") pursuant to the Purchase Agreement and then subsequently directs the Selling Entities in writing

to reject such Contract pursuant to this Section 4, then the Buyer shall be responsible for and pay all amounts, costs and expenses incurred, owing or outstanding as of the Closing, or paid by the Selling Entities as of the Closing, under such Contract, but only to the extent such amounts, costs and expenses arise during, and are directly attributable to, the period between Buyer's delivery of the Retention Notice and Selling Entities' subsequent rejection of the Contract.

5. **Ratification**. Except as specifically provided in this letter agreement, all terms and provisions of the Purchase Agreement and the Seller Disclosure Schedule shall remain unchanged and in full force and effect. Except as specifically provided in this letter agreement, the execution of this letter agreement shall not directly or indirectly in any way whatsoever either (a) impair, prejudice or otherwise adversely affect the rights of the parties thereto at any time to exercise any right, privilege or remedy in connection with the Purchase Agreement or the Seller Disclosure Schedule, (b) amend or alter any provision of the Purchase Agreement or the Seller Disclosure Schedule, or (c) constitute any course of dealing or other basis for altering any obligation of the parties thereto or any right, privilege or remedy thereof under the Purchase Agreement or the Seller Disclosure Schedule. This letter agreement shall amend the Purchase Agreement and the Seller Disclosure Schedule as expressly set forth herein and shall be deemed incorporated by reference in the Purchase Agreement and the Seller Disclosure Schedule. Notwithstanding anything herein, in the Purchase Agreement or in the Seller Disclosure Schedule to the contrary, in the event of any conflict between this letter agreement, on the one hand, and the Purchase Agreement or the Seller Disclosure Schedule, on the other hand, the provisions of this letter agreement shall govern with respect to such conflict.

6. **Entire Agreement**. This letter agreement together with the Purchase Agreement (including all Schedules, the Seller Disclosure Schedule and all Exhibits thereto), the Confidentiality Agreement and the other Transaction Documents constitute the entire agreement among the parties hereto and thereto with respect to the subject matter hereof and thereof and supersede all prior agreements and understandings among the parties hereto and thereto with respect thereto, *provided* that (a) the Confidentiality Agreement shall automatically terminate as of the Closing and (b) to the extent that any other provision of the Purchase Agreement (including Section 7.3 of the Purchase Agreement) conflicts with any term or provision of the Confidentiality Agreement, such other provision of the Purchase Agreement shall govern and control.

7. **Application of Certain Provisions**. Section 1.1 (*Definitions*) and Article X (*Miscellaneous Provisions*) (other than Section 10.11 (*Entire Agreement*)) of the Purchase Agreement shall apply to this letter agreement, *mutatis mutandis*.

[*Signature page follows*]

IN WITNESS WHEREOF, the undersigned have executed this letter agreement effective as of the date first above written.

**SELLER, ON BEHALF OF THE SELLING ENTITIES:**

**VITAL PHARMACEUTICALS, INC.**

By: _____
Name: John DiDonato
Title: Chief Transformation Officer

**BUYER:**

**BLAST ASSET ACQUISITION LLC**

By: _____
Name: Hilton H. Schlosberg
Title: Co-Chief Executive Officer

*[Signature Page to the APA Side Letter]*

IN WITNESS WHEREOF, the undersigned have executed this letter agreement effective as of the date first above written.

        **SELLER, ON BEHALF OF THE SELLING ENTITIES:**

        **VITAL PHARMACEUTICALS, INC.**

        By: _____
        Name: John DiDonato
        Title: Chief Transformation Officer

        **BUYER:**

        **BLAST ASSET ACQUISITION LLC**

        By: /s/ Hilton H. Schlosberg
        Name: Hilton H. Schlosberg
        Title: Co-Chief Executive Officer

[*Signature Page to the APA Side Letter*]

# **EXHIBIT A**

## **Selling Entities Budget**

**Vital Pharmaceuticals, Inc.**

($ in millions)

| Week Ending | | Jun-23 06/30/23 | Jul-23 07/07/23 | Jul-23 07/14/23 | Jul-23 07/21/23 | Jul-23 07/28/23 | Aug-23 08/04/23 | Total 07/01 to 08/04 |
|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | |
| Customer Receipts | A | $ 5.5 | $ 2.0 | $ 2.0 | $ 2.0 | $ 1.0 | $ 1.0 | $ 8.0 |
| Other Receipts | B | 0.9 | 0.7 | - | - | 1.0 | - | 1.7 |
| **Total Receipts** | C = A+B | $ 6.3 | $ 2.7 | $ 2.0 | $ 2.0 | $ 2.0 | $ 1.0 | $ 9.7 |
| | | | | | | | | |
| DIP Draw (Repayment) | D | - | - | - | - | - | - | - |
| Funding from Buyer Deposit | E | - | - | 12.0 | 1.0 | 2.0 | 7.0 | 22.0 |
| **Total Receipts** | F = C+D+E | $ 6.3 | $ 2.7 | $ 14.0 | $ 3.0 | $ 4.0 | $ 8.0 | $ 31.7 |
| | | | | | | | | |
| **Disbursements** | | | | | | | | |
| Material costs | | (0.1) | (1.3) | (1.3) | (0.6) | (0.6) | (0.3) | (4.1) |
| Co-Packers | | - | (0.1) | (0.0) | (0.0) | (0.0) | (0.0) | (0.3) |
| Freight & handling | | (0.4) | (0.1) | (0.1) | (0.2) | (0.2) | (0.2) | (0.9) |
| Employee expenses | | (3.0) | (0.2) | (2.8) | (0.6) | (2.9) | (0.5) | (7.0) |
| Trade promotion | | (0.5) | (0.1) | (0.1) | (0.1) | (0.1) | (0.1) | (0.7) |
| Facility/Office expenses | | (2.2) | (0.9) | (0.7) | (0.7) | (2.3) | (2.6) | (7.1) |
| Marketing | | (0.0) | (0.7) | (0.1) | (0.1) | (0.1) | (0.7) | (1.7) |
| Legal expenses | | (0.1) | (0.2) | (0.1) | (0.1) | (0.1) | (0.1) | (0.6) |
| Other | | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.0) | (0.1) |
| OBI royalty reserve/payment | | - | (0.8) | - | - | - | (0.8) | (1.6) |
| **Total Operating Disbursements** | G | $ (6.3) | $ (4.6) | $ (5.3) | $ (2.6) | $ (6.4) | $ (5.3) | $ (24.1) |
| | | | | | | | | |
| Operating cash flow | A + G | (0.8) | (2.6) | (3.3) | (0.5) | (5.4) | (4.3) | (16.1) |
| | | | | | | | | |
| **Professional Fees & Employee Retention** | | | | | | | | |
| Professional Fee paid / escrow | | - | - | (6.2) | (0.6) | (0.3) | (1.6) | (8.7) |
| Retention Plans | | - | - | - | - | - | (1.2) | (1.2) |
| **Total Professional Fees & Employee Retention** | H | $ - | $ - | $ (6.2) | $ (0.6) | $ (0.3) | $ (2.8) | $ (9.9) |
| | | | | | | | | |
| **Net Cash Flow / (Deficit)** | F + G + H | $ 0.1 | $ (1.9) | $ 2.4 | $ (0.1) | $ (2.6) | $ (0.1) | $ (2.3) |
| | | | | | | | | |
| **Cash Balance** | | | | | | | | |
| Beginning Cash Balance | | 6.6 | 6.7 | 4.7 | 7.2 | 7.0 | 4.4 | 6.7 |
| Ending Cash Balance | | 6.7 | 4.7 | 7.2 | 7.0 | 4.4 | 4.3 | 4.3 |