**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al*., | Case No.: 22-17842-PDR |
| Debtors.[1] | (Jointly Administered) |
| _____/ | |

**SUMMARY OF SECOND INTERIM APPLICATION FOR ALLOWANCE**
**AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF**
**LATHAM & WATKINS LLP, AS CO-COUNSEL FOR THE DEBTORS-IN-**
**POSSESSION, FOR THE PERIOD OF MARCH 1, 2023 THROUGH JUNE 30, 2023**

| | | |
|---|---|---|
| 1. | Name of applicant: | Latham & Watkins LLP |
| 2. | Role of applicant: | Co-Counsel to the Debtors and Debtors in Possession |
| 3. | Name of Certifying Professional: | Andrew Sorkin |
| 4. | Date case filed: | October 10, 2022 |
| 5. | Date of Order Approving Employment | November 22, 2022, effective as of October 10, 2022 (ECF No. 392) |
| **IF INTERIM APPLICATION, COMPLETE 6, 7 AND 8 BELOW**: | | |
| 6. | Period for this Application: | March 1, 2023 through June 30, 2023 |
| 7. | Amount of Compensation Sought: | $8,960,183.46[2] |

---

[1]   The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are as: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2]   The Applicant has been paid the sum of $4,770,094.66 (80% of $ 5,962,618.33) of the fees requested herein for the period March 1, 2023 through May 31, 2023, in accordance with this Court's *Order Granting Ex Parte Motion to Amend the Interim Compensation Procedures Order* [ECF No. 503] (the "Interim Compensation Procedures Order"). The Applicant has not yet received payment on account of its fee and expense statement for the month of June 2023, as the deadline to object to the Applicant's June 2023 fee and expense statement is August 4, 2023; however, the fees incurred by the Applicant in June 2023, are included in this Application.

| 8. | Amount of Expense Reimbursement Sought | $40,486.94[3] |
|---|---|---|
| **IF FINAL APPLICATION, COMPLETE 9 AND 10 BELOW**: | | |
| 9. | Total Amount of Compensation Sought During Case: | N/A |
| 10. | Total Amount of Expense Reimbursement Sought During Case | N/A |
| 11. | Amount of Original Retainer(s).  Please disclose both Fee Retainer and Cost Retainer if such a Retainer has been received: | $2,617,777.45 |
| 12. | Current Balance of Retainer(s) remaining: | $937,725.09 |
| 13. | Last monthly operating report filed (Month/Year and ECF No.) | May 2023 [ECF Nos. 1536, 1537, 1538, 1539, 1540, 1558, 1559] |
| 14. | If case is Chapter 11, current funds in the Chapter 11 estate (as of May 31, 2023) | $12,774,579.00[4] |
| 15. | If case is Chapter 7, current funds held by Chapter 7 Trustee | N/A |

## **History of Fees and Expenses**

1.    Dates, sources, and amounts of retainers received:

| **Date** | **Source** | **Amount** |
|---|---|---|
| 8/9/2022 | Debtors' funds | $400,000.00 |
| 8/26/2022 | Debtors' funds | $192,777.45 |
| 9/15/2022 | Debtors' funds | $2,025,000.00 |
| **TOTAL** | | **$2,617,777.45** |

2.    Dates, sources and amounts of third party payments received:  N/A

3.    Payments from Monthly Fee Statements:

---

[3]    The Applicant has been paid the sum of $36,120.76, 100% of the expenses requested for the period March 1, 2023 through May 31, 2023, in accordance with the Interim Compensation Procedures Order. The Applicant has not yet received payment on account of its fee and expense statement for the month of June 2023, as the deadline to object to the Applicant's June 2023 fee and expense statement is August 4,2023; however, the expenses incurred by the Applicant in June 2023 are included in this Application.

[4]    This figure was obtained from the reported cash balances as of May 31, 2023, from the Debtors' most recently filed monthly operating reports for the month ending May 2023 [ECF Nos. 1536, 1537, 1538, 1539, 1540, 1558, 1559].

| Fee Period | Fees Requested | Expenses Requested | Payment Date | Fees Paid | Expenses Paid |
|---|---|---|---|---|---|
| 10/10/2022 - 1/30/2023 | $1,561,527.50 | $8,946.18 | 2/2/2023 | $1,249,222.00 | $8,946.18 |
| 12/1/2022 - 12/31/2022 | $1,162,847.25 | $3,255.07 | 3/8/2023 | $930,277.80 | $3,255.07 |
| 1/1/2023 - 1/31/2023 | $2,116,942.75 | $4,891.24 | 2/2; 3/8;3/31 | $1,693,554.20 | $4,891.24 |
| 2/1/2023 - 2/28/2023 | $1,606,012.75 | $7,726.44 | 5/5/2023 | $1,284,810.20 | $7,726.44 |
| 3/1/2023 - 3/31/2023 | $1,918,978.58 | $6,004.73 | 5/26/2023 | $1,535,182.86 | $6,004.73 |
| 4/1/2023 - 4/30/2023 | $1,526,856.00 | $22,426.27 | 6/8/2023 | $1,221,484.80 | $22,426.27 |
| 5/1/2023 - 5/31/2023 | $2,516,783.75 | $7,689.76 | 7/14/2023 | $2,013,427.00 | $7,689.76 |
| 6/1/2023 - 6/30/2023 | $2,997,565.13 | $4,366.18 | | $0.00 | $0.00 |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al*., | Case No.:  22-17842-PDR |
| Debtors.[1] | (Jointly Administered) |

_____/

**SECOND INTERIM APPLICATION FOR ALLOWANCE**
**AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF**
**LATHAM & WATKINS LLP, AS CO-COUNSEL FOR THE DEBTORS-IN-**
**POSSESSION, FOR THE PERIOD OF MARCH 1, 2023 THROUGH JUNE 30, 2023**

Latham & Watkins LLP (the "Applicant"), as co-counsel for the above-captioned debtors

and debtors-in-possession (collectively, the "Debtors"), hereby files its second interim application

for allowance and payment of compensation and reimbursement of expenses (the "Application")

for professional services rendered and expenses incurred by the Applicant during the period of

March 1, 2023 through June 30, 2023 (the "Application Period").  This Application is filed

pursuant to sections 327, 330 and 331 of chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and meets all of the requirements set forth in the *Guidelines for Fee*

*Applications for Professionals in the Southern District of Florida Bankruptcy Cases*, incorporated

in Local Rule 2016-1(B)(1), and *Appendix B – Guidelines for Reviewing Applications for*

*Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 for Attorneys in*

---

[1]    The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal
      tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454);
      (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash
      Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales,
      Inc. (8019).

*Larger Chapter 11 Cases* (collectively, the "Guidelines").  In support of the Application, the Applicant states:

## I.    RETENTION OF THE APPLICANT, DISCLOSURE OF COMPENSATION AND REQUESTED AWARD

1.      On October 10, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.      On the Petition Date, the Debtors filed the *Debtors' Emergency Application for Approval, on an Interim and Final Basis, of the Employment of Latham & Watkins LLP as Co-Counsel for Debtors-in-Possession, Effective as of the Petition Date* [ECF No. 22], requesting approval of the employment of the Applicant as co-counsel to the Debtors.  On November 22, 2022, the Court entered an order authorizing the employment of the Applicant as co-counsel to the Debtors on a final basis, effective as of the Petition Date [ECF No. 392].

3.      The Applicant submits this Application, pursuant to sections 327, 330, and 331 of the Bankruptcy Code, Rule 2016 of the Bankruptcy Rules, and the Guidelines.  The Applicant requests a second interim award of legal fees earned by the Applicant for services rendered as co-counsel to the Debtors in the amount of $8,960,183.46 and reimbursement for the actual and necessary expenses incurred by the Applicant during the Application Period in the amount of $40,486.94.

4.      This request is the Applicant's second interim application to the Court for compensation and reimbursement of expenses for services rendered as co-counsel to the Debtors. No understanding exists between the Applicant and any other person for the sharing of compensation sought by the Applicant, except among the partners, counsel, and associates of the Applicant.

5.     In accordance with the Guidelines, the following exhibits are annexed to this Application:

**Exhibit A**:    Customary and Comparable Compensation Disclosures

**Exhibit B**:    Summary of Timekeepers Included in this Application

**Exhibit C-1**:  Budget

**Exhibit C-2**:  Staffing Plan

**Exhibit D-1**:  Summary of Compensation Requested by Project Category

**Exhibit D-2**:  Summary of Expense Reimbursement Requested by Category

**Exhibit E**:    Summary Cover Sheet of Application

**Exhibit F-1**:  Detailed Description of Services Rendered

**Exhibit F-2**:  Detailed Description of Expenses and Disbursements

6.     The Applicant has expended a total of 7,239.10 hours during the Application Period in rendering necessary and beneficial legal services to the Debtors.

7.     Exhibit A contains the blended hourly rate by category of timekeeper for fees billed during the Application Period and the blended hourly rate by category of timekeeper for fees billed by the Applicant for the preceding year, excluding bankruptcy engagements.  Exhibit B contains a list of the professionals and paraprofessionals included in the Application, as well as the title, hourly rate, aggregate hours worked and the amount of fees earned by each professional and paraprofessional.  Exhibit C-1 contains Applicant's prospective estimates of fees and expenses during the Application Period, which amounts are reflected in the DIP budget.[2]  Exhibit C-2 contains Applicant's staffing plan reflecting the number of timekeepers expected to perform work

---

[2] Applicant provided a preliminary budget and staffing plan relating to the period beginning on the Petition Date through and including December 31, 2022 (the "Initial Budgeted Period").[2]  After the Initial Budgeted Period, the Debtors have paid the fees and expenses of the Applicant (and other estate professionals) as provided for in the Final DIP Order and the Interim Compensation Order, up to the amounts allocated for professionals fees in the DIP budget.

on these cases during the Initial Budgeted Period and the average hourly rate broken down by category of timekeeper.  Exhibit D-1 contains a summary of compensation requested by project category, reflecting the number of hours budgeted, fees budgeted, hours billed, and fees sought during the Budgeted Period and Application Period, as applicable.  Exhibit D-2 contains a summary of the Applicant's total actual and necessary out-of-pocket expenses and disbursements, on behalf of the Debtors, for which the Applicant seeks reimbursement in accordance with section 330(a)(2) of the Bankruptcy Code, the Bankruptcy Rules and the Guidelines.  The expenses and disbursements summarized in Exhibit D-2 include only those which the Applicant typically would invoice to its non-bankruptcy clients.  Exhibit E contains a summary cover sheet of the Application.  Exhibit F-1 contains a daily description of the services rendered and the hours expended by the various professionals and paraprofessionals of the Applicant who performed services during the Application Period, and Exhibit F-2 contains a detailed schedule listing the expenses and disbursements for which the Applicant seeks reimbursement.  The Applicant has prepared Exhibits F-1 and F-2 based on, among other things, contemporaneous daily time records maintained by the Applicant's professionals and paraprofessionals who rendered services in these cases.

## II.     BACKGROUND OF THE CHAPTER 11 CASES

### A.     Business Operations

8.     The Debtors began operations in 1993, are headquartered in Weston, Florida, and are leaders in the performance energy drink industry.  The Debtors develop and manufacture novel and great tasting beverages, including their leading product, the Bang energy drink.  As of April 2022, the Bang energy drink was the third best-selling energy drink in the United States as measured by retail sales and market share data.  The Debtors have operations facilities in Arizona,

California, Georgia, North Carolina, Texas, and internationally in Canada.  The Debtors' products are available for purchase in all 50 states, Canada, Latin America, Europe, and Australia.

        **B.**      **Prepetition Indebtedness**

        9.      Vital Pharmaceuticals, Inc., as borrower, and certain of its subsidiaries and affiliates as guarantors, are parties to the *Amended and Restated Revolving Credit and Term Loan Agreement*, dated as of August 14, 2020, (as amended, modified, or supplemented from time to time, the "Prepetition Credit Agreement").  The Prepetition Credit Agreement provides two separate credit facilities, each maturing on August 14, 2025:  (a) a revolving credit facility (the "Prepetition Revolving Credit Facility"), and (b) a term loan (the "Prepetition Term Loan" and, together with the Prepetition Revolving Credit Facility and all other obligations arising under the Prepetition Credit Agreement, the "Prepetition Loans").  As of the Petition Date, the outstanding principal of the Prepetition Loans was approximately $344.2 million, consisting of approximately $240.2 million under the Prepetition Revolving Credit Facility and approximately $104.2 million under the Prepetition Term Loan.  The Debtors' obligations under the Prepetition Credit Agreement are secured by liens on substantially all of the Debtors' assets.  Approximately $235 million in outstanding principal obligations under the Prepetition Credit Agreement have since been "rolled up" into the Debtors' debtor-in-possession financing facility.

        10.     As of the Petition Date, the Debtors had no funded unsecured debt.  In the ordinary course, the Debtors incur trade debt with certain vendors and suppliers in connection with the operation of their businesses.  As of the Petition Date, the Debtors had approximately $83 million in trade payables outstanding, excluding certain obligations under the Debtors' customer programs.

C.      **Notable Litigation**

11.     As of the Petition Date, the Debtors were party to approximately 63 disputes that are in active litigation or are the subject of threatened litigation, including but not limited to:  (a) an arbitration award (the "Arbitration Award") in favor of Monster Energy Company ("Monster") and Orange Bang, Inc. ("OBI"), which was affirmed by the District Court for the Central District of California, for approximately $175 million plus a 5% royalty of net sales of Bang energy drinks, and (b) a $293 million verdict issued in favor of Monster in a false advertising lawsuit.  On June 28, 2023, the Debtors, Orange Bang Inc., and Monster (among others) entered into a settlement regarding, among other disputes, the foregoing litigations, and, on the same date, the Debtors filed the *Debtors' Expedited Motion to Approve Compromise Between (I) the Debtors, (II) Monster Energy Company, (III) Monster Beverage Corporation, (IV) Orange Bang, Inc., (V) the Committee, and (VI) the Supporting Lenders* [ECF No. 1548] seeking approval of such settlement. That motion was granted, and the settlement was approved on July 12, 2023 [ECF No. 1644].

12.     During the Application Period, the Debtors were party to numerous disputes and active litigations with the Debtors' sole shareholder and former Chief Executive Officer, John "Jack" Owoc, including but not limited to:  (a) Mr. Owoc's *Emergency Motion for Order to Show Cause Regarding Non-Debtor Companies and for Other Related* [ECF No. 1422], (b) Mr. Owoc's *Creditor and Interested Party John H. Owoc's Motion to Clarify Extent of Automatic Stay or in the Alternative for Relief from Stay* [ECF No. 1442], (c) Mr. Owoc's *Notice of Non-Party Subpoena Pursuant to Federal Rules of Bankruptcy Procedures 9016 and Federal Civil Procedure Rule 45* [ECF No. 1451], and (d) *Creditor and Interested Party John H. Owoc's Emergency Motion to Dismiss Chapter 11 Bankruptcy of Debtor JHO Real Estate Investment, LLC* [ECF No. 1466].

In addition, the Debtors responded to numerous informal objections and concerns Mr. Owoc raised to the Debtors' proposed sale.[3]

13.     Further, during the Application Period, the Debtors commenced two adversary proceedings against Mr. Owoc:  (a) the *Adversary Complaint for Declaratory Judgment and Turnover of Estate Property*, Case No. 23-01051 (PDR), filed on March 14, 2023, and (b) the *Adversary Complaint for Declaratory Judgment, Turnover of Estate Property, and Usurpation of a Corporate Opportunity*, Case No. 23-01125 (PDR), filed on June 16, 2023.

## D.    Chapter 11 Objectives & Sale Process

14.     As disclosed in previous filings with the Court, the Debtors commenced these cases to (a) obtain an essential infusion of liquidity, (b) secure "breathing room" from pending litigation, and (c) pursue a recapitalization, reorganization, or other going concern transaction for the benefit of all stakeholders.  To that end, the Debtors obtained commitments for debtor-in-possession financing for up to $100 million in new money financing that would permit the Debtors to effectively pursue a reorganization or sale transaction.  The proposed debtor-in-possession financing was approved on a final basis by the Court on January 20, 2023 [ECF No. 638].

15.     In furtherance of the Debtors' goal to preserve the going concern value of their business and to implement a going concern transaction, on January 27, 2023, the Debtors filed a motion [ECF No. 707] seeking approval of bidding procedures by which the Debtors would solicit proposals and select the highest or otherwise best offer for the sale of the Debtors' assets.  On February 24, 2023, the Court entered an order [ECF No. 854] approving, among other things, the proposed bidding procedures.  The Bidding Procedures originally set a bid deadline of April 24,

---

[3]     Mr. Owoc formally filed his *Preliminary Objection to Debtors' Expedited Motion to Approve Compromise Between (I) the Debtors, (II) Monster Energy Company, (III) Monster Beverage Corporation, (IV) Orange Bang, Inc., (V) the Committee, and (VI) the Supporting Lenders* [ECF No. 1584] on July 7, 2023, outside the Application Period.

2023, and an auction date of April 27, 2023. However, when the Debtors were unable to secure any Qualified Bids (as defined in the Bidding Procedures Order) by April 24, 2023, the Debtors extended the deadlines in the hope of attracting additional bidders.[4] The revised bid deadline was May 22, 2023, with an auction scheduled for May 25, 2023.[5] The Debtors received only one Qualified Bid for substantially all of their assets by May 22, 2023, and accordingly, again adjourned the auction (three times) in the hope of attracting additional Qualified Bids.[6]

16.    At the conclusion of this sale process, the Debtors still received only one actionable, Qualified Bid for substantially all of the Debtors' assets—from Monster. Accordingly, the Debtors filed a *Notice of Auction Cancellation and Successful Bidder* consistent with the Bidding Procedures.[7]

17.    The hearing to approve the sale to Monster was initially scheduled for June 30, 2023.[8] However, the Debtors adjourned the hearing to approve the sale to Monster after the Federal Trade Commission ("FTC") issued a "Second Request" under the Hart-Scott-Rodino Act ("HSR") to enable to FTC to further investigate the proposed Monster transaction.[9] Throughout the negotiations with Monster, the Debtors and their advisors remained in active discussions with the FTC regarding the proposed sale to Monster. Following the Second Request from the FTC and the adjournment of the sale hearing, and in light of the pending maturity of their DIP Facility

---

[4]    Under the Bidding Procedures, the Debtors can extend deadlines as needed to facilitate a competitive auction. *See Bidding Procedures Order* ¶ 3.

[5] *See Notice of Extension of Certain Sale-Related Deadlines* [ECF No. 1283] filed on April 28, 2023.

[6]    *See Notice of Adjournment of Auction* [ECF No. 1394] filed on May 24, 2023; *Notice of Adjournment of Auction and Modified Sale-Related Dates and Deadlines* [ECF No. 1416] filed on June 1, 2023; *Notice of Adjournment of Auction* [ECF No. 1445] filed on June 8, 2023.

[7]    *See Notice of Auction Cancellation and Successful Bidder* [ECF No. 1546] filed on June 28, 2023, as amended by the *Amended Notice of Auction Cancellation and Successful Bidder* [ECF No. 1556] filed on June 30, 2023.

[8]    *See Notice of Modified Sale-Related Dates and Deadlines* [ECF No. 1457] filed on June 12, 2023.

[9]    *See Notice of Adjournment of Sale Hearing and Related Deadlines* [ECF No. 1514] filed on June 23, 2023.

and unwillingness of the lenders to extend same, the Debtors filed a motion to convert the chapter

11 cases to chapter 7.[10]  The FTC then withdrew the "Second Request", terminating the waiting

period under HSR, and allowing the Debtors to move forward with the Monster Transaction, which

was approved on July 14, 2023 [ECF No. 1658].

18.     In sum, during the Application Period, the Debtors' efforts were focused on the sale

process and the maximization of value and recoveries for all constituencies.  The Applicant has

been working with the Debtors and all parties in interest to facilitate a smooth and efficient

administration of the Debtors' chapter 11 cases in order to achieve the best possible outcome for

all parties in interest.  The Applicant made significant progress during this Application Period in

achieving a sale of all or substantially all of the Debtors' assets for the benefit of all stakeholders.

## V.     MISCELLANEOUS MATTERS

19.     In addition to the matters set forth specifically above, the Applicant assisted the

Debtors with, among other things, (a) addressing a variety of governance related issues (including

changes to the composition of the Debtors' management and boards), (b) preparing and filing of

updated cure amounts and contract schedules, (c) advising the Debtors with respect to changes to

their operational footprint, (d) negotiating financing arrangements with the Debtors' post-petition

lenders, (e) assisting with the filing of the Debtors' monthly operating reports, and (f) reviewing

and responding to claim inquiries, among others.

## VI.     DESCRIPTION OF SERVICES PROVIDED

20.     As set forth in the Exhibits to this Application, the Applicant has organized its time

records by activity codes in accordance with the Guidelines.  Accordingly, each of the time entries

of the attorneys and paralegals of the Applicant have been allocated to the categories listed below:

---

[10] *Debtors' Motion for the Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* [ECF No. 1551].

**1001**    **Asset Analysis and Recovery**: Activities pertaining to analysis of the Debtors' assets and property.

**1002**    **Asset Dispositions**: Activities pertaining to sales of the Debtors' assets, including the sale to Monster.

**1003**    **Avoidance Action Analysis**: Activities pertaining to analyzing potential estate avoidance actions.

**1004**    **Business Operations**: Activities relating to the operation of the Debtors' business and ordinary course business issues.

**1005**    **Case Administration**: Coordination and compliance activities among key company and advisor personnel, including standing update and workstream coordination calls.

**1006**    **Claims Administration and Objections**: Specific claim inquiries and analysis of claims against the estates.

**1007**    **Corporate Governance & Board Matters**: Activities relating to the Debtors' corporate governance and board of directors, including communications with board and members and attendance at regular board meetings.

**1008**    **Employee Benefits and Pensions**: Activities pertaining to the retention of key employees and the continuing payment of wages and provision of employee benefits.

**1009**    **Employment and Fee Applications**: Preparation of employment applications and related declarations, monthly fee statements, consideration of the need for other professionals, and related tasks.

**1010**    **Employment and Fee Application Objections**: Activities pertaining to objections to monthly fee statements, professional retentions, and related tasks.

**1011**    **Financing and Cash Collateral**: Activities relating to postpetition financing and matters under sections 361, 363, and 364 of the Bankruptcy Code; negotiation, preparation, and review of loan documents, including waivers and amendments to the DIP facility and updated budgets.

**1012**    **Leases and Contracts**: Activities pertaining to the assumption and rejection of leases and contracts and responding to inquiries regarding the same.

**1013**    **Litigation**: Activities relating to litigation in which the Debtors are party, including, but not limited to, adversary proceedings filed by and against the Debtors; reviewing and responding to discovery requests served upon the Debtor; and preparing for and attending depositions and related matters.

**1014** **Meetings and Communication with Creditors**:   Activities relating to communications with creditors to address their claims and other issues relating to these chapter 11 cases.

**1015** **Non-Working Travel**:  Activities relating to non-working time spent traveling to meetings and hearings related to these chapter 11 cases.

**1016** **Plan & Disclosure Statement**:  Work performed in the development and production of the Debtor's chapter 11 plan and disclosure statement and related matters.

**1017** **Automatic Stay**:  Work performed in connection with motions for relief from stay filed by various claimants, including the preparation of responses and agreed orders resolving motions for relief from stay.

**1018** **Reporting**:  Activities relating to the preparation and filing of various reports required by the Court, the U.S. Trustee's office, and/or applicable bankruptcy law.

**1019** **Tax**:   Issues pertaining to correspondence received from various taxing authorities and claims filed by taxing authorities, and discussions pertaining to tax issues in connection with asset sales.

**1020** **Expenses**:  Expenses incurred in connection with the provision of services to the Debtors.

**1021** **Hearings**:  Preparation for and attendance at hearings.

**1022** **UST**:  Activities relating to the communication and coordination with the office of the US Trustee for the Southern District of Florida.

21.    The Applicant provided complex and critical professional advice and representation in its role as co-counsel to the Debtors, often on an urgent basis and under significant time pressure.  Summaries of the services are detailed below.

**A.    Asset Disposition (Activity Code 1002)**

22.    This category includes time spent by attorneys and paraprofessionals of the Applicant in connection with the Debtors' ongoing sale processes.  Specifically, the Applicant spent time (a) negotiating and drafting asset purchase agreements, related disclosure schedules, side letters, and related documentation with multiple potential bidders, (b) evaluating bidding materials submitted by bidders, (c) providing feedback and guidance to potential bidders and

14

negotiating the terms of certain bids and proposals, (d) communicating and negotiating with various stakeholders with respect to the sale process, (e) addressing issues relating to and responding to bidder diligence, including preparing and negotiating non-disclosure agreements and access to diligence information, (f) analyzing the Debtors' corporate structure and assets/liabilities for purposes of the sale process, including, time spent evaluating foreign subsidiaries, and related issues, (g) analyzing potential transaction structures, including, but not limited to analyzing non-Debtor and Debtor assets, (h) communicating with the FTC regarding the sale process, and (i) preparing for and attending hearings related to the sale process, among other things.

23.     The Applicant expended a total of **3,413.90** hours in this category and is requesting **$4,337,485.94** for the services rendered in this category.

### B.     <u>Automatic Stay (Activity Code 1017)</u>

24.     This category includes time spent by Applicant evaluating automatic stay related issues on behalf of the Debtors, including responding to motions seeking authority to lift or clarify the automatic stay.

25.     The Applicant expended a total of **33.50** hours in this category and is requesting **$42,504.00** for the services rendered in this category.

### C.     <u>Business Operations (Activity Code 1004)</u>

26.     This category includes time spent by the Applicant's attorneys and paraprofessionals to maintain the Debtors' business operations with minimal disruptions during these chapter 11 cases.  Specifically, the Applicant focused on issues relating to the regular business operations of the Debtors, including insurance, utility, vendor, and cash management issues.  The Applicant also coordinated and strategized with the Debtors and their other advisors regarding bankruptcy issues, strategic transactions, real estate, and corporate matters, including on

daily update calls among professionals and the Huron team, which also performs management functions. Further, the Applicant partnered with the Debtors' financial advisor to ensure that issues affecting the businesses from operating in the ordinary course were identified and resolved.

27.    The Applicant expended a total of **52.00** hours in this category and is requesting **$69,683.00** for the services rendered in this category.

### D.    Case Administration (Activity Code 1005)

28.    This category includes services rendered in connection with, among other things, (a) various logistical matters relating to these chapter 11 cases, including the coordination of service, (b) monitoring the Debtors' docket, (c) preparation of various pleadings in the Debtors' chapter 11 cases, (d) development of timelines, task lists, and work-in-process reports, and holding internal calls to discuss the same, and (e) attending management update calls and calls with the Debtors' other professionals to coordinate work streams and strategies for the chapter 11 cases.

29.    The Applicant expended a total of **254.00** hours in this category and is requesting **$309,916.00** for the services rendered in this category.

### E.    Claims Administration and Objections (Activity Code 1006)

30.    This category includes all time spent on issues relating to creditor claims, including, among other things: (a) reviewing creditor proofs of claim, (b) responding to creditor requests to file late proofs of claim, (c) negotiating with creditors, and (d) communicating with the Debtors' other professionals regarding the same.

31.    The Applicant expended a total of **20.20** hours in this category and is requesting **$21,953.00** for the services rendered in this category.

### F.    Corporate Governance & Board Matters (Activity Code 1007)

32.    This category includes time spent by Applicant relating to corporate governance matters. Specifically, the Applicant spent time on, among other things: (a) preparing for and

participating in board meetings and restructuring committee meetings, (b) drafting minutes, (c) preparing and reviewing materials for board meetings, (d) researching, analyzing, and providing advice related to corporate governance, bankruptcy and employment law matters, and (e) drafting and reviewing board resolutions and other corporate governance documents, including to implement changes to the Debtors' boards and management. The Debtors' boards regularly held two full board meetings each week during the Application Period. And, given several changes to the composition of the boards, the sale process, and the complexities of the chapter 11 cases, numerous special meetings were held, in addition to informal discussions among Applicant, the other advisors to the Debtors, and members of the board.

33.     The Applicant expended a total of **528.20** hours in this category and is requesting **$671,456.00** for the services rendered in this category.

### G.     Employee Benefits and Pensions (Activity Code 1008)

34.     This category includes all time spent on matters relating to the Debtors' employees' wages and benefits and other issues relating to employee relations, including among other things (a) advising management on employee and retention matters and (b) advising the board and management on employee issues, including WARN liabilities.

35.     The Applicant expended a total of **69.30** hours in this category and is requesting **$98,501.00** for the services rendered in this category.

### H.     Employment/Fee Applications (Activity Code 1009)

36.     This category includes all time spent on matters relating to the retention and compensation of professionals, including among other things: (a) maintaining a parties in interest list, conducting comprehensive conflicts analysis, and making appropriate supplemental disclosures concerning connections to parties in interest, (b) preparing and filing the Applicant's first interim fee application, and (c) preparing Applicant's monthly fee statements, including

review of billing detail to ensure that privilege was not waived and that applicable guidelines were satisfied.

37.     The Applicant expended a total of **103.30** hours in this category and is requesting **$92,041.50** for the services rendered in this category.

**I.      Financing and Cash Collateral (Activity Code 1010)**

38.     This category includes all time spent on matters relating to the Debtors' DIP credit agreement, including among other things (a) preparing and negotiating amendments, waivers, extensions, and consents in connection with the Debtors' DIP facility, and (b) coordinating with the Debtors' other advisors to develop updated DIP budgets.

39.     The Applicant expended a total of **58.20** hours in this category and is requesting **$77,207.00** for the services rendered in this category.

**J.      Hearings (Activity Code 1021)**

40.     This category includes all time spent in preparation for hearings and attendance at hearings.  Specifically, the Applicant coordinated with the Debtors and their other advisors in preparation for the various hearings held before the Court.

41.     The Applicant expended a total of **194.00** hours in this category and is requesting **$255,582.50** for the services rendered in this category.

**K.      Leases and Contracts (Activity Code 1012)**

42.     This category includes time spent by the Applicant's attorneys and paraprofessionals relating to the Debtors' assumption and rejection of certain leases and contracts. Specifically, the Applicant's attorneys and paraprofessionals spent time on, among other things: (a) working with the Debtors and the other professionals to identify leases and executory contracts for potential assumption or rejection, (b) researching and analyzing issues related to assumption and rejection of certain leases and executory contracts, including a novel issue relating to the

"sunsetting" of the extension of the section 365(d)(4) assumption deadline under the CARES Act, (c) working with the Debtors and other advisors to prepare schedules of all executory contracts and unexpired leases that may be assumed and assigned and related notices, (e) responding to inquiries from contract and lease counterparties regarding their contracts and leases, (f) negotiating with the Debtors' landlords and contract counterparties, and (g) drafting and negotiating stipulations and agreements with the Debtors' landlords and contract counterparties.

43.    The Applicant expended a total of **289.50** hours in this category and is requesting **$300,723.00** for the services rendered in this category.

**L.    Litigation (Activity Code 1013)**

44.    This category includes all time spent on matters relating to litigation in connection with the Debtors' chapter 11 cases, including formulating litigation strategy and addressing various informal and formal document requests, subpoenas, and reviewing and producing documents in response thereto.  Specifically, among other things, the Applicant: (a) discussed, strategized, and responded to the various informal and formal discovery, diligence and Rule 2004 requests submitted by the Official Committee of Unsecured Creditors, the Debtors' sole shareholder (Mr. Owoc) and others, (b) drafted declarations and prepared witnesses for hearings on various contested matters as well as in support of uncontested motions, (c) evaluated and strategized regarding potential courses of action with respect to non-bankruptcy litigation involving the Debtors, (d) researched issues related to the Debtors' ongoing litigation and adversary proceedings, and drafted pleadings and briefs regarding same, (f) prepared for and attended depositions, and (g) provided general litigation advice regarding governance and business issues.

45.    The Applicant expended a total of **2,023.30** hours in this category and is requesting **$2,505,390.52** for the services rendered in this category.

**M.    Meetings and Communications with Creditors (Activity Code 1014)**

46.    This category includes time spent by the Applicant's attorneys and paraprofessionals (a) responding to miscellaneous inquiries from the Debtors' creditors, (b) communicating with the creditors' committee to address their questions, comments, and diligence requests related to various motions and applications filed by the Debtors, and (c) attending weekly status calls with the Debtors' lenders.

47.    The Applicant expended a total of **15.80** hours in this category and is requesting **$24,936.00** for the services rendered in this category.

**N.    Non-Working Travel (Activity Code 1015)**

48.    This category includes time spent by the Applicant traveling to local counsel's offices and/or to court in South Florida, in order to attend to matters, including meetings and hearings, stemming from these chapter 11 cases.

49.    The Applicant expended a total of **123.20** hours in this category and is requesting **$81,745.00** for the services rendered in this category.

**O.    Plan and Disclosure Statement (Activity Code 1016)**

50.    This category includes time spent by the Applicant on matters relating to the Debtors' chapter 11 plan.  During the Application Period, the Applicant assisted with the preparation of motions to extend the Debtors' exclusivity periods to file a chapter 11 plan and solicit votes on such plan.  In addition, the Applicant discussed and research certain issues relating to the formulation of a chapter 11 plan.

51.    The Applicant expended a total of **34.50** hours in this category and is requesting **$34,160.00** for the services rendered in this category.

**P.    Tax (Activity Code 1019)**

52.     This category includes all time spent on tax-related issues, including the tax implications of any sale transaction.  Specifically, the Applicant conducted discussions with the Debtors' representatives regarding tax structuring matters and related regulatory issues and conducted research relating to outstanding tax issues.

53.     The Applicant expended a total of **26.20** hours in this category and is requesting **$36,899.00** for the services rendered in this category.

## VII.    <u>EVALUATION OF SERVICES RENDERED</u>

54.     This Application has presented the nature and extent of the professional services the Applicant has rendered in connection with its representation of the Debtors for which the Applicant seeks compensation.  The recitals set forth in the daily diaries attached hereto constitute only a summary of the time spent and cannot completely reflect the full range of services the Applicant rendered, and the complexity of the issues and the time and performance pressure borne by the Applicant in these chapter 11 cases.

55.     The Applicant believes that the requested fee of **$8,960,183.46** for **7,239.10** hours worked during the Application Period, is reasonable considering the nature, extent, and the value of such services, taking into account all relevant factors, including:

(a)     The time spent on such services;

(b)     The rates charged for such services;

(c)     Whether the services were necessary to the administration or, or beneficial at the time at which the services were rendered toward the completion of the case;

(d)     Whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(e)     With respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(f)     Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than these chapter 11 cases.

56.     Based on the standards set forth in section 330 of the Bankruptcy Code, the Applicant believes that the fair and reasonable value of its services rendered during the period covered by this Application is $8,960,183.46.

57.     Alternatively, the Applicant notes that the services rendered herein were "reasonably likely to benefit" the Debtors' bankruptcy estate at the time the services were rendered.  Accordingly, under the "reasonable at the time" standard, the fees and costs sought herein should be approved.  *In re Woerner*, 783 F.3d 266 (5th Cir. 2015) (collecting cases).

**A.     The time spent on such services**

58.     The foregoing summary, together with the exhibits attached hereto, details the time and nature of the professional services rendered by the Applicant for the benefit of the estate during the Application Period.  The total number of hours expended, 7,239.10, reflects the extensive time devoted to this matter by the Applicant on a vast spectrum of legal issues which have arisen in these cases during Application Period.

**B.     The rates charged for such services**

59.     The hourly rates charged by the Applicant as set forth in the Exhibits to this fee application range from $705.00 to $2,035.00 per hour for attorneys and $300.00 to $420.00 per hour for paraprofessionals.  These are the Applicant's standard hourly rates and are designed to compensate the Applicant fairly for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses.

**C.** **Whether the services were necessary to the administration of, or beneficial at the time at which the services were rendered toward the completion of the case**

60.     In rendering services to the Debtors, the Applicant demonstrated substantial legal skill and expertise in the areas of bankruptcy, intellectual property, litigation (including evidence and procedure), mergers and acquisitions, corporate governance, commercial law, debtor-creditor rights, and secured transactions.

**D.** **Whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed**

61.     The Applicant has devoted substantial time in the representation of the Debtors as more fully appears on the exhibits to this Application.  The fees requested by the Applicant, $8,960,183.46 reflect an average hourly rate of $1,237.75 for 7,239.10 hours of service. Considering the progress made in the case to date and the complexity of the issues addressed during the period covered by this Application, Applicant submits this rate is reasonable.

**E.** **With respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and expertise in the bankruptcy field**

62.     The Applicant is an established law firm and professionals and paraprofessionals working on the Debtors' chapter 11 cases are experienced in matters of this kind.  The Applicant enjoys a fine reputation and has demonstrated substantial ability in the fields of bankruptcy, litigation, creditors' rights and business reorganization.  Applicant is an industry leader in company-side chapter 11 representations, and prides itself on its ability to build consensus and efficiently resolve disputes.

**F.** **Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under chapter 11**

63.     The compensation which the Applicant requests comports with the mandate of the Bankruptcy Code, which directs those services be evaluated in light of comparable services

performed in non-bankruptcy cases in the community.  As set forth above, the hourly rates charged

by the Applicant as set forth in the exhibits to this Application range from $705.00 to $2,035.00

per hour for attorneys and $300.00 to $520.00 per hour for paraprofessionals, throughout the

Application Period.  These rates are comparable to the rates that Applicant charges for non-

bankruptcy representations and to the rates of other comparably skilled professionals.

## VIII.   STATEMENT FROM THE APPLICANT

64.    Pursuant to the *Appendix B Guidelines for Reviewing Application for*

*Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in*

*Larger Chapter 11 Cases*, the Applicant responds to the following questions regarding the

Application:

| Question | Yes | No | Additional Explanation or Clarification |
|---|---|---|---|
| Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the Application Period? If so, please explain. | | No | |
| If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client? | | No | |
| Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case? | | No | |
| Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? | | No | |
| Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential | Yes | | The Application includes $84,553.00 in fees for approximately 96.20 hours related to reviewing time records to |

24

| Question | Yes | No | Additional Explanation or Clarification |
|---|---|---|---|
| information?  If so, please quantify by hours and fees. | | | redact for privileged or other confidential information. |
| If the fee application includes any rate increases since retention in this case:<br><br>i.  Did your client review and approve those rate increases in advance?<br><br>ii.  Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458? | Yes | | In the ordinary course of the Applicant's business and in keeping with the Applicant's established billing practices and procedures, its billing rates were adjusted firm-wide on January 1, 2023.<br><br>The Debtors reviewed and consented to the rate increases.<br><br>The Debtors did not agree when retaining the Applicant to accept all future rate increases.  The Applicant informed the Debtors that they need not agree to modified rates or terms in order to have Applicant continue the representation. |

## IX.    CONCLUSION; PRAYER FOR RELIEF

WHEREFORE, the Applicant respectfully requests that the Court enter an order (i) awarding, on an interim basis, the sum of **$8,960,183.46** as compensation for services rendered and **$40,486.94** as reimbursement for actual and necessary expenses incurred during the course of the Applicant's representation of the Debtors during the Application Period; and (ii) granting such other and further relief as the Court deems appropriate.

## Certification

1. I have been designated by Latham & Watkins LLP (the "Applicant") as the professional with responsibility in these cases for compliance with the current U.S. Department of Justice, Executive Office for United States Trustee's Appendix B Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases (the "Appendix B Guidelines").

2. I have read the Applicant's application for compensation and reimbursement of costs (the "Application").

3. To the best of my knowledge, information, and belief formed after reasonable inquiry, the Application complies with the Appendix B Guidelines.

4. To the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Appendix B Guidelines, except as specifically noted in this Certification and described in the Application.

5. Except to the extent that fees or disbursements are prohibited or restricted by the Appendix B Guidelines, the fees and disbursements sought are billed at rates and in accordance with practices customarily employed by the Applicant and generally accepted by the Applicant's clients.

6. In providing a reimbursable service or disbursement (other than time charged for paraprofessionals and professionals), the Applicant does not make a profit on that service or disbursement (except to the extent that any such profit is included within the permitted allowable amounts set forth in the Appendix B Guidelines for photocopies and facsimile transmission).

7. In charging for a particular service or disbursement, the Applicant does not include in the amount for which reimbursement is sought the amortization of the cost of any investment,

equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for reproductions and facsimile transmission).

8.      In seeking reimbursement for a service which the Applicant justifiably purchased or contracted for from a third party, the Applicant is requesting reimbursement only for the amount billed to the Applicant by the third-party vendor and paid by the Applicant to such vendor.

9.      The Debtors, the U.S. Trustee, and their respective counsel, as well as the members of the Committee and its counsel will be served with, simultaneously with the filing of the Application with the Court, a complete copy of the Application (including all relevant exhibits).

10.      The following are the variances with the provisions of the Appendix B Guidelines, the date of the specific Court approval of such departure, and the justification for the departure: None.

**I HEREBY CERTIFY** that the foregoing is true and correct.

Dated:  July 25, 2023                          Respectfully submitted,

                                               Latham & Watkins LLP
                                               *Co-Counsel for the Debtors and Debtors in*
                                               *Possession*
                                               555 Eleventh Street, NW, Suite 1000
                                               Washington, DC 20004
                                               Telephone:  (202) 637-2200

                                               By: */s/ Andrew D. Sorkin*
                                               Andrew D. Sorkin
                                               andrew.sorkin@lw.com

## EXHIBIT A

**Customary and Comparable Compensation Disclosures**

| Category of Timekeeper | Blended Hourly Rate | |
|---|---|---|
| | Billed Firm-Wide for Preceding Year (2022)[1] | Billed March 1, 2023 through June 30, 2023 |
| Partner | $1,496 | $1,496 |
| Counsel | $1,277 | $1,472 |
| Senior Associate (7 years or more since first admission) | $1,175 | $1,238 |
| Mid-level Associate (4-6 years since first admission) | $1,014 | $1,009 |
| Junior Associate (0-3 years since first admission) | $758 | $817 |
| Paralegals | $451 | $426 |
| **All timekeepers aggregated** | **$1,114** | **$1,238** |

Case Name:           22-17842 (PDR)
Case Number:         Vital Pharmaceuticals, Inc., et al.
Applicant's Name:    Latham & Watkins LLP
Date of Application: July 25, 2023
Interim or Final:    Interim

---

[1]    The billable rates for L&W attorneys are adjusted on January 1 of each year.  The data in this column excludes 2022 blended hourly rate information for members of the Restructuring and Special Situations practice group.

## **EXHIBIT B**

**Summary of Timekeepers Included in this Application**

| NAME | TITLE OR POSITION | DEPARTMENT, GROUP OR SECTION | DATE OF FIRST ADMISSION[1] | FEES BILLED IN THIS APPLICATION | HOURS BILLED IN THIS APPLICATION | HOURLY RATE BILLED[2] | | NUMBER OF RATE INCREASES SINCE CASE INCEPTION |
|---|---|---|---|---|---|---|---|---|
| | | | | | | IN THIS APPLICATION | IN FIRST INTERIM APPLICATION | |
| Davis, George A. | Partner | Restructuring | 1991 | $1,017.50 | 0.50 | $2,035.00 | $1,895.00 | 0 |
| Taub, David M. | Partner | Tax | 1995 | $3,104.00 | 1.60 | $1,940.00 | N/A | 0 |
| Reckler, Caroline A. | Partner | Restructuring | 2001 | $137,270.00 | 74.20 | $1,850.00 | $1,720.00 - $1,850.00 | 1 |
| Sluka, Peter J. | Partner | Corporate | 2010 | $6,253.00 | 3.70 | $1,690.00 | N/A | 0 |
| Sorkin, Andrew | Partner | Restructuring | 2008 | $964,699.50 | 582.90 | $1,655.00 | $1,540.00 - $1,655.00 | 1 |
| | | | | $4,799.50 | 5.80 | $827.50 | | |
| Klein, Anthony | Partner | Corporate | 1990 | $12,798.00 | 7.90 | $1,620.00 | N/A | 0 |
| Word, James C. | Partner | Litigation | 1997 | $787.50 | 0.50 | $1,575.00 | N/A | 0 |
| Mun, Yeung Yin Daniel | Partner | Corporate | 2008 | $533,148.11 | 347.33 | $1,535.00 | $1,430.00 - $1,535.00 | 1 |
| Friedman, Joshua | Partner | Tax | 2006 | $28,853.50 | 19.30 | $1,495.00 | $1,495.00 | 0 |
| Alkhas, Nineveh | Partner | Tax | 2005 | $62,634.00 | 42.90 | $1,460.00 | $1,460.00 | 0 |
| Kamerman, Eric | Partner | Tax | 2014 | $31,682.00 | 21.70 | $1,460.00 | $1,360.00 – $1,460.00 | 1 |
| Elliott, Justin C. | Partner | Corporate | 2011 | $105,759.50 | 73.70 | $1,435.00 | $1,435.00 | 0 |
| Haas, James B. | Partner | Corporate | 2001 | $6,811.00 | 4.90 | $1,390.00 | $1,390.00 | 0 |
| Hauser, Sebastian M. | Partner | Litigation | 2010 | $5,421.00 | 3.90 | $1,390.00 | $1,390.00 | 0 |
| Norton, Christopher H. | Partner | Corporate | 1995 | $21,823.00 | 15.70 | $1,390.00 | $1,390.00 | 0 |
| Blamires, Robert | Partner | Corporate | 2006 | $6,528.00 | 4.80 | $1,360.00 | $1,360.00 | 0 |
| Dominguez, Daniel J. | Partner | Litigation | 2006 | $816.00 | 0.60 | $1,360.00 | $1,360.00 | 0 |
| Gardiner, Drew T. | Partner | Litigation | 2004 | $31,824.00 | 23.40 | $1,360.00 | N/A | 0 |
| Mahmood, Ghaith | Partner | Corporate | 2007 | $45,424.00 | 33.40 | $1,360.00 | $1,360.00 | 0 |

---

[1]    If applicable.

[2]    Non-working travel is billed at 50% of the applicable hourly rate.

| NAME | TITLE OR POSITION | DEPARTMENT, GROUP OR SECTION | DATE OF FIRST ADMISSION[1] | FEES BILLED IN THIS APPLICATION | HOURS BILLED IN THIS APPLICATION | HOURLY RATE BILLED[2] | | NUMBER OF RATE INCREASES SINCE CASE INCEPTION |
|---|---|---|---|---|---|---|---|---|
| | | | | | | IN THIS APPLICATION | IN FIRST INTERIM APPLICATION | |
| Quartarolo, Amy | Partner | Litigation | 2002 | $615,808.00 | 452.80 | $1,360.00 | $1,265.00 - $1,360.00 | 1 |
| | | | | $24,888.00 | 36.60 | $680.00 | | |
| Rocco, Katherine A. | Partner | Litigation | 2010 | $215,424.00 | 158.40 | $1,360.00 | $1,265.00 - $1,360.00 | 1 |
| Todaro, Peter M. | Counsel | Litigation | 1996 | $72,900.00 | 45.00 | $1,620.00 | N/A | 0 |
| Kaplan, Binyomin | Counsel | Corporate | 2001 | $754,606.00 | 491.60 | $1,535.00 | $1,535.00 | 0 |
| Benjamin, Sandra N. | Counsel | Tax | 2008 | $8,030.00 | 5.50 | $1,460.00 | N/A | 0 |
| McGuire, Robert J. | Counsel | Corporate | 2011 | $18,542.00 | 12.70 | $1,460.00 | $1,360.00 - $1,460.00 | 1 |
| Murtagh, Hugh K. | Counsel | Restructuring | 2012 | $15,330.00 | 21.00 | $730.00 | $1,360.00- $1,460.00 | 1 |
| | | | | $419,475.52 | 287.31 | $1,460.00 | | |
| Quay, Richard R. | Counsel | Corporate | 2012 | $76,212.00 | 52.20 | $1,460.00 | N/A | 0 |
| Singh, Arielle R. | Counsel | Corporate | 2012 | $9,612.00 | 7.20 | $1,335.00 | N/A | 0 |
| Blanco, Allison S. | Counsel | Litigation | 2012 | $48,460.50 | 36.30 | $1,335.00 | N/A | 0 |
| Justman, Patrick C. | Counsel | Litigation | 2011 | $667.50 | 0.50 | $1,335.00 | N/A | 0 |
| Daniels, Jason L. | Counsel | Litigation | 2008 | $89,570.00 | 68.90 | $1,300.00 | N/A | 0 |
| Galdes, Andrew P. | Counsel | Litigation | 2011 | $780.00 | 0.60 | $1,300.00 | N/A | 0 |
| Waller, Laura M. | Associate | Tax | 2004 | $131.50 | 0.10 | $1,315.00 | N/A | 0 |
| Morris, Elizabeth A. | Associate | Litigation | 2013 | $509,888.00 | 396.80 | $1,285.00 | $1,165.00 - $1,285.00 | 1 |
| | | | | $28,527.00 | 44.40 | $642.50 | | |
| Beach, Adriana | Associate | Corporate | 2014 | $5,750.00 | 4.60 | $1,250.00 | $1,250.00 | 0 |
| Burton, Yelizaveta L. | Associate | Restructuring | 2016 | $176,125.00 | 140.90 | $1,250.00 | $1,100.00 - $1,250.00 | 1 |
| Celentino, Joseph C. | Associate | Restructuring | 2017 | $509,000.00 | 407.20 | $1,250.00 | N/A | 0 |
| Gelfand, Benjamin T. | Associate | Finance | 2015 | $41,750.00 | 33.40 | $1,250.00 | $1,165.00 - $1,250.00 | 1 |
| Grindle, Melanie J. | Associate | Litigation | 2016 | $3,250.00 | 2.60 | $1,250.00 | N/A | 0 |
| Homer, Carolyn | Associate | Litigation | 2012 | $16,125.00 | 12.90 | $1,250.00 | N/A | 0 |
| Potter, Ransel N. | Associate | Corporate | 2016 | $31,875.00 | 25.50 | $1,250.00 | N/A | 0 |
| Ritter, Karen D. | Associate | Corporate | 2016 | $40,125.00 | 32.10 | $1,250.00 | $1,250.00 | 0 |
| Schildknecht, William | Associate | Litigation | 2016 | $375.00 | 0.30 | $1,250.00 | N/A | 0 |

| NAME | TITLE OR POSITION | DEPARTMENT, GROUP OR SECTION | DATE OF FIRST ADMISSION[1] | FEES BILLED IN THIS APPLICATION | HOURS BILLED IN THIS APPLICATION | HOURLY RATE BILLED[2] | | NUMBER OF RATE INCREASES SINCE CASE INCEPTION |
|---|---|---|---|---|---|---|---|---|
| | | | | | | IN THIS APPLICATION | IN FIRST INTERIM APPLICATION | |
| Kutilek, Lukas | Associate | Tax | 2019 | $20,123.50 | 16.70 | $1,205.00 | $1,050.00 - $1,205.00 | 1 |
| Tifft, Douglas C. | Associate | Litigation | 2018 | $300,160.50 | 253.30 | $1,185.00 | $1,060.00 - $1,185.00 | 1 |
| Rosen, Brian S. | Associate | Restructuring | 2019 | $21,774.00 | 19.10 | $1,140.00 | $990.00 - $1,140.00 | 1 |
| Wages, Nathan T. | Associate | Corporate | 2018 | $315,438.00 | 276.70 | $1,140.00 | $1,140.00 | 0 |
| Weichselbaum, Jonathan J. | Associate | Restructuring | 2019 | $519,296.33 | 455.52 | $1,140.00 | $990.00 - $1,140.00 | 1 |
| DeNiro, Yoojin | Associate | Tax | 2016 | $11,865.00 | 10.50 | $1,130.00 | N/A | 0 |
| Herrera, Adam A. | Associate | Litigation | 2019 | $2,662.50 | 2.50 | $1,065.00 | $1,065.00 | 0 |
| Kim, Taesung | Associate | Corporate | 2018 | $269,871.00 | 253.40 | $1,065.00 | $1,065.00 | 1 |
| Morley, John W. | Associate | Restructuring | 2018 | $304,270.50 | 285.70 | $1,065.00 | $895.00 - $1,065.00 | 1 |
| Sievert, Lachlan | Associate | Corporate | 2019 | $267,741.00 | 251.40 | $1,065.00 | $1,065.00 | 0 |
| Southworth, McKenzie | Associate | | | $17,466.00 | 16.40 | $1,065.00 | N/A | 0 |
| Teresi, Joseph L. | Associate | Litigation | 2019 | $513,649.50 $8,200.50 | 482.30 15.40 | $1,065.00 $532.50 | $895.00 - $1,065.00 | 1 |
| Brora, Mohammed N. | Associate | Litigation | 2020 | $418.00 | 0.40 | $1,045.00 | N/A | 0 |
| Davis, Alicia C. | Associate | Restructuring | 2009 | $16,954.00 | 17.30 | $980.00 | $910.00 - $980.00 | 1 |
| Dunn, Denver C. | Associate | Litigation | 2022 | $45,792.00 | 47.70 | $960.00 | $960.00 | 0 |
| Jung, Nicolas A. | Associate | Associate | 2021 | $5,568.00 | 5.80 | $960.00 | $960.00 | 0 |
| Mulloy, Sean P. | Associate | Litigation | 2021 | $40,416.00 | 42.10 | $960.00 | $770.00 - $960.00 | 1 |
| Sachs, Emily J. | Associate | Corporate | 2021 | $5,184.00 | 5.40 | $960.00 | $960.00 | 0 |
| Gulati, Nikhil A. | Associate | Unassigned | 2023 | $285,022.00 | 343.40 | $830.00 | $655.00 - $830.00 | 1 |
| Kim, Karen Keun-Yong | Associate | Litigation | 2022 | $37,184.00 | 44.80 | $830.00 | N/A | 0 |
| Bruck, Shmuel D. | Associate | Unassigned | 2023 | $4,653.00 | 6.60 | $705.00 | $655.00 | 0 |
| Kow, Jonathan Wei Loong Kenneth | Associate | Corporate | 2022 | $74,589.00 | 105.80 | $705.00 | N/A | 0 |

| NAME | TITLE OR POSITION | DEPARTMENT, GROUP OR SECTION | DATE OF FIRST ADMISSION[1] | FEES BILLED IN THIS APPLICATION | HOURS BILLED IN THIS APPLICATION | HOURLY RATE BILLED[2] | | NUMBER OF RATE INCREASES SINCE CASE INCEPTION |
|---|---|---|---|---|---|---|---|---|
| | | | | | | IN THIS APPLICATION | IN FIRST INTERIM APPLICATION | |
| Maggen, Daniel | Associate | Corporate | 2023 | $1,057.50 | 1.50 | $705.00 | N/A | 0 |
| McKenzie, Robert A. | Associate | Unassigned | N/A | $3,948.00 | 5.60 | $705.00 | N/A | 0 |
| Ota, Kendall | Associate | Unassigned | 2022 | $13,183.50 | 18.70 | $705.00 | $705.00 | 0 |
| Presley, Rebekah A. | Associate | Unassigned | 2023 | $29,328.00 | 41.60 | $705.00 | N/A | 0 |
| Savren, Jamie R. | Associate | Corporate | 2019 | $2,961.00 | 4.20 | $705.00 | N/A | 0 |
| Weiss, Rob | Associate | Unassigned | 2022 | $11,209.50 | 15.90 | $705.00 | N/A | 0 |
| Wexler, Jocelyn | Associate | Unassigned | 2022 | $775.50 | 1.10 | $705.00 | N/A | 0 |
| Zhao, Zeyu | Associate | Unassigned | 2022 | $6,204.00 | 8.80 | $705.00 | N/A | 0 |
| Deleon, Rhonda | Paralegal | Finance | N/A | $1,560.00 | 3.00 | $520.00 | $520.00 | 0 |
| Thompson, Helen E. | Paralegal | Finance | N/A | $8,944.00 | 17.20 | $520.00 | N/A | 0 |
| Gelman, Kara N. | Senior Research Librarian | N/A | N/A | $252.50 | 0.50 | $505.00 | N/A | 0 |
| Tarrant, Christopher M. | Paralegal | Restructuring | N/A | $32,879.00 | 67.10 | $490.00 | $455.00 - $490.00 | 1 |
| Galgano, Christian W. | Paralegal | Corporate | N/A | $142.50 | 0.30 | $475.00 | N/A | 0 |
| Hoite, Matias | Paralegal | Corporate | N/A | $14,760.00 | 49.20 | $300.00 | N/A | 0 |
| **Grand Total** | | | | **$8,960,183.46** | **7,239.10** | | | |

| | |
|---|---|
| Case Name: | 22-17842 (PDR) |
| Case Number: | Vital Pharmaceuticals, Inc., et al. |
| Applicant's Name: | Latham & Watkins LLP |
| Date of Application: | July 25, 2023 |
| Interim or Final: | Interim |

# EXHIBIT C-1

## Budget

**BUDGET FOR LATHAM & WATKINS LLP,
CO-COUNSEL TO THE DEBTORS, FOR THE PERIOD
FROM MARCH 1, 2023 THROUGH JUNE 30, 2023**

The budget for applicant's fees and expenses on a weekly basis are set forth in a budget approved in connection with the Final DIP Order [ECF No. 638].

| Latham & Watkins LLP's Prospective Estimates of Fees & Expensed | | | | |
|---|---|---|---|---|
| **Mar-23** | **Apr-23** | **May-23** | **Jun-23** | **Total** |
| $2,000,000 | $1,500,000 | $2,500,000 | $2,500,000 | $8,500,000 |

## **EXHIBIT C-2**

**Staffing Plan**

**STAFFING PLAN FOR LATHAM & WATKINS LLP,
CO-COUNSEL TO THE DEBTORS[1]**

Date Staffing Plan Approved by Client:  October 9, 2022

| CATEGORY OF TIMEKEEPER | NUMBER OF TIMEKEEPERS EXPECTED TO WORK ON THE MATTER[2] | AVERAGE HOURLY RATE |
|---|---|---|
| Partners | 4 | $1,567.50 |
| Associates | 7 | $1,226.67 |
| Professional Staff | 2 | $910 |
| Paralegals | 1 | $455 |

---

[1]    The Applicant prepared a staffing plan for the period of October 10, 2022 through December 31, 2022.  Thereafter, professionals have been constrained by the amounts allocated toward professional fees in the DIP budget.

[2]    These numbers reflect the timekeepers expected to bill at least 15 hours to these chapter 11 cases during the budget period.

**EXHIBIT D-1[1]**

**Summary of Compensation Requested by Project Category**

---

[1] Applicant prepared, and the Debtors approved, a monthly budget reflecting the fees and costs Applicant anticipated incurring in each Project Category during the period of October 10, 2022 through December 31, 2022. Applicant prepared a monthly budget reflecting the fees and costs Applicant anticipated incurring each month following December 31, 2022, however, this budget does not include a break-down of fees by code category. Applicant respectfully requests a waiver of this requirement given, among other things, the Debtors' approval of the budget and Applicant's compliance therewith.

| PROJECT CATEGORY | HOURS BUDGETED [2] | FEES BUDGETED[3] | HOURS BILLED | FEES SOUGHT[4] |
|---|---|---|---|---|
| Asset Dispositions | - | - | 3,413.90 | $4,337,485.94 |
| Automatic Stay | - | - | 33.50 | $42,504.00 |
| Business Operations | - | - | 52.00 | $69,683.00 |
| Case Administration | - | - | 254.00 | $309,916.00 |
| Claims Administration and Objections | - | - | 20.20 | $21,953.00 |
| Corporate Governance & Board Matters | - | - | 528.20 | $671,456.00 |
| Employee Benefits and Pensions | - | - | 69.30 | $98,501.00 |
| Employment and Fee Applications | - | - | 103.30 | $92,041.50 |
| Financing and Cash Collateral | - | - | 58.20 | $77,207.00 |
| Hearings | - | - | 194.00 | $255,582.50 |
| Leases and Contracts | - | - | 289.50 | $300,723.00 |
| Litigation | - | - | 2,023.30 | $2,505,390.52 |
| Meetings and Communication with Creditors | - | - | 15.80 | $24,936.00 |
| Non-Working Travel | - | - | 123.20 | $81,745.00 |
| Plan and Disclosure Statement | - | - | 34.50 | $34,160.00 |
| Tax | - | - | 26.20 | $36,899.00 |
| **Totals** | | | **7,239.10** | **$8,960,183.46** |

| | |
|---|---|
| Case Name: | 22-17842 (PDR) |
| Case Number: | Vital Pharmaceuticals, Inc., et al. |
| Applicant's Name: | Latham & Watkins LLP |
| Date of Application: | July 25, 2023 |
| Interim or Final: | Interim |

---

[2]    If applicable.

[3]    If applicable.

[4]    Fees incurred during the Application Period (March 1, 2023 - June 30, 2023).

# **EXHIBIT D-2**

**Summary of Expense Reimbursement Requested by Category**

| Expense Category | Total Expenses |
|---|---:|
| Airfare | $10,158.95 |
| Airfare & Trainfare - Out-of-Town | $712.85 |
| Ground Transportation - Local | $1,164.07 |
| Ground Transportation - Out-Of-Town | $2,054.70 |
| Laser Print | $15.00 |
| Lexis Nexis | $178.20 |
| Lodging - Local | $266.64 |
| Lodging - Out of Town | $9,905.86 |
| Meal Services | $38.44 |
| Meals - Out-of-Town | $1,940.77 |
| Messenger/Courier | $131.75 |
| Mileage - Out-of-Town | $81.76 |
| Other Database Research | $110.20 |
| Outside Services - Non-Attorney | $6.03 |
| Parking - Out-of-Town | $784.03 |
| Practice Support | $10,687.50 |
| Supplies/Office Expense | $2.69 |
| Transcripts | $1,102.50 |
| Trip Expenses - Out-of-Town | $273.00 |
| Westlaw | $774.00 |
| Wireless Data | $98.00 |
| **TOTALS** | |

| | |
|---|---|
| Case Name: | 22-17842 (PDR) |
| Case Number: | Vital Pharmaceuticals, Inc., et al. |
| Applicant's Name: | Latham & Watkins LLP |
| Date of Application: | July 25, 2023 |
| Interim or Final: | Interim |

## **EXHIBIT E**

**Summary Cover Sheet of Application**

| | |
|---|---|
| Name of applicant: | Latham & Watkins LLP |
| Name of client: | Debtors and Debtors in Possession |
| Time period covered by this application: | March 1, 2023 through June 30, 2023 |
| Total compensation sought this period: | $8,960,183.46 |
| Total expenses sought this period: | $40,486.94 |
| Petition date: | October 10, 2022 |
| Retention date: | October 10, 2022 |
| Date of order approving employment | November 22, 2022 |
| Total fee approved by interim order to date | $6,447,330.25 |
| Total expenses approved by interim order to date | $24,818.93 |
| Total allowed fees paid to date | $5,157,864.20 |
| Total allowed expenses paid to date | $24,818.93 |
| Blended rate in this application for all attorneys | $1,253.44 |
| Blended rate in this application for all timekeepers | $1,237.75 |
| Fees sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $4,770,094.66 |
| Expenses sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $36,120.76 |
| Number of professionals included in this application | 79 |
| If applicable, number of professionals in this application not included in staffing plan approved by client | 65[1] |
| If applicable, difference between fees budgeted and compensation sought for this period | $460,183.46[2] |
| Number of professionals billing fewer than 15 hours to the case during this period | 33 |

---

[1]   The staffing plan only included timekeepers expected to bill at least 15 hours to the Debtors' chapter 11 cases during the period from October 10, 2022 through December 31, 2022.

[2]   The Debtors' chapter 11 cases involved, among other things, higher than anticipated litigation activity, in particular, given the issues with the Debtors' sole shareholder. In addition, the Debtors' sale process has been extended roughly two months beyond the timeline initially anticipated, resulting in more sale-related work in May and June than expected.

| Name of applicant: | Latham & Watkins LLP |
|---|---|
| Are any rates higher than those approved or disclosed at retention?  If yes, calculate and disclose the total compensation sought in this application using the rates originally disclosed in the retention application | Yes.   In the ordinary course of the Applicant's business and in keeping with the applicant's established billing practices and procedures, its billing rates were adjusted firm-wide on January 1, 2023, resulting in higher rates than those disclosed at retention.<br><br>Utilizing the rates disclosed at retention, the total compensation sought for this period would have been approximately $8,295,301 as opposed to approximately $8,960,183 (approximately $664,882 difference). |

Case Name:            22-17842 (PDR)
Case Number:          Vital Pharmaceuticals, Inc., et al.
Applicant's Name:     Latham & Watkins LLP
Date of Application:  July 25, 2023
Interim or Final:     Interim