# **EXHIBIT 1**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                    Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,     Case No.: 22-17842-PDR

Debtors.[1]                                (Jointly Administered)

_____/

# EXPERT REPORT OF RICHARD E CABRERA, JD, CPA

July 24, 2023

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("Vital Pharmaceuticals") (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC ("Quash Seltzer") (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

## I.     QUALIFICATIONS

1.      My name is Richard Eric Cabrera.  I am a Director of Tax Services at Berkowitz Pollack Brant ("Berkowitz").  Berkowitz is a certified public accounting firm with more than 400 accountants, tax specialists and consultants.  I am the Director-in-Charge of Berkowitz's Business Tax Services Group, where our client base ranges from start-up companies to long-standing national and international entities, including closely held businesses, in a wide variety of industries.  I have been at Berkowitz for nearly ten years, starting as a Tax Associate.  During my time at Berkowitz, I have developed specialized experience in tax compliance and consulting services for high net worth companies and their individual shareholders, with a focus in corporate restructuring and tax planning.

2.      I earned a Bachelor of Science and Master's degree in Accounting at the University of Florida.  I received my J.D. and an LL.M. in Taxation from the University of Miami School of Law.  I have published the following articles over the last ten years:  *Avoiding IRS Challenges with Business Owner Compensation*,[2] *What Does the Inflation Reduction Act Mean to Taxpayers*,[3] *2019 Federal Income Tax Liabilities Due July 15*,[4] and *IRS Guidance Puts Businesses in a Tight Spot With New Parking Rules*.[5]  I have not provided any testimony or served as an expert witness in any other matters over the last four (4) years. A copy of my curriculum vitae is attached to this report as **Exhibit A**.

3.      Berkowitz charges $515 per hour for my time on this matter.  Berkowitz's offices are located at 515 E, Las Olas Boulevard, 15th Floor, Fort Lauderdale, Florida.  Neither my compensation nor Berkowitz's is contingent upon the outcome of this matter.

---

[2] https://www.bpbcpa.com/avoiding-irs-challenges-with-business-owner-compensation-by-richard-e-cabrera-jd-llm-cpa/

[3] https://www.bpbcpa.com/what-does-the-inflation-reduction-act-mean-to-taxpayers-by-richard-cabrera-jd-llm-cpa/

[4] https://www.bpbcpa.com/2019-federal-income-tax-liabilities-due-july-15-by-richard-cabrera-jd-llm-cpa/

[5] https://www.bpbcpa.com/irs-guidance-puts-businesses-in-a-tight-spot-with-new-parking-rules-by-richard-e-cabrera-jd-cpa/

## II.    SCOPE

4.    In connection with the *Emergency Motion for Confirmation that the Automatic Stay Does Not Apply to Termination of Debtors' Subchapter S Corporation, or in the [Alternative] Motion for Relief from Stay* [Dkt. No. 1627] (the "Motion") I have been asked by counsel for Vital Pharmaceuticals, Inc. ("VPX") and its affiliates (together, the "Company")[6] to opine on:

1.    the tax liabilities expected to be incurred by VPX and John H. Owoc as sole shareholder in connection with the Sale (as defined below), as well as the benefits potentially received by Mr. Owoc, if VPX's S corporation status is terminated and income is allocated using a "close the books" election as requested in the Motion;[7]

2.    the amount of tax payable by Mr. Owoc as sole shareholder as a result of the Sale if VPX maintains its S corporation status;

3.    the impact on VPX if its S corporation status is terminated but the "pro rata" allocation is used rather than the "close the books" election;

4.    the benefits that Mr. Owoc received from VPX's status as a Subchapter S corporation;

5.    the benefit that Mr. Owoc received by waiting until late July to seek to terminate VPX's S corporation status rather than terminating it sooner; and

6.    in order for VPX to revoke the S corporation election or to make the "close the books" election, VPX would need to take affirmative action independent of Mr. Owoc.

5.    The analyses and opinions expressed in this report are based on the results of my analysis of the materials provided to me, my education and training, and my experience as an accountant and consultant. A list of the documents considered in forming my opinions can be found at **Exhibit B**. I reserve the right to amend, supplement, and/or revise my analyses, findings, and opinions if additional evidence becomes available, if the scope of discovery changes, or in response to any arguments made by other experts.

---

[6] Certain of the Company's affiliates are debtors in the above-captioned Chapter 11 Cases. When I refer to the "Debtors" I am referring only to those entities; whereas the term "Company" refers to all affiliates to VPX, regardless of whether they are debtors in bankruptcy or not.

[7] Throughout this opinion, when referring to tax liabilities of either VPX or Mr. Owoc I am using a state and federal tax blended rate, and when referring to any benefits received or potentially received by Mr. Owoc, I am not including any potential state tax savings.

### III.    BACKGROUND

6.     It is my understanding based on materials filed in these chapter 11 cases that the Company was established in 1993, and demonstrated significant growth in 2016-2019.  *See* First Day Declaration [Dkt. No. 26] ¶ 9.  It is my further understanding that John H. Owoc is the founder and sole shareholder ("Mr. Owoc" or the "Shareholder") of the VPX, which is classified as a Subchapter S corporation for federal and state tax purposes.  *See id.* ¶ 23.

7.     C corporations are currently subject to two layers of tax: first, the corporation pays federal taxes on its net income at a 21 percent rate, and second shareholders pay individual taxes on the dividend distributions they receive from the corporation at their ordinary income tax rates, which can be high as 37 percent, but usually 20 percent for US based C corporations, plus a 3.8 percent net investment income tax (NIIT).  Depending on where shareholders live and where the business operates, additional taxes may be imposed at the state and local levels.

8.     A C corporation may elect S corporation treatment as a "pass-through entity" (by timely filing IRS Form 2553) and avoid the double taxation referenced above.  The S corporation's income, losses, deductions and credits "pass through" to its shareholders, who are responsible for reporting this information on their individual income tax returns and paying applicable taxes at their individual ordinary income tax rates, the highest such federal rate being 37 percent.  In some instances, however, shareholders may be subject to a 20 percent capital gains tax (plus a potential 3.8 percent NIIT) on distributions received in excess of the shareholder's tax basis.

9.     I understand that the Debtors have entered into an Asset Purchase Agreement for the sale of substantially all of their assets to an affiliate of Monster Beverage Corporation, with a total purchase price of approximately $370,700,000, including assumed liabilities, and that sale is expected to close no later than July 31, 2023 (the "Sale").  I further understand that, through the Motion, Mr. Owoc is seeking through the Motion to terminate VPX's status as an S corporation such that it is taxed for purposes of the Sale as  C corporation.

**IV.    OPINIONS**

10.    My calculations for each of the analyses associated with the below opinions can be found in the attached **Exhibit C**.

**Opinion 1 – Tax liabilities expected to be incurred by VPX and the Shareholder, as well as the benefits potentially received by Mr. Owoc, if the S election were terminated with a "close the books" election as requested in the Motion**

11.    If VPX's S corporation status is revoked, assuming that revocation is effective July 28, and VPX elected out of the pro-rata allocation (discussed further in Opinion 3), VPX's tax liability as a result of the Sale as a C corporation is estimated to be approximately $27,500,000.  All taxes arising from the Sale if VPX is a C corporation at closing would be payable by VPX rather than the Shareholder.

12.    In such a circumstance, Mr. Owoc would not report any of the gain on the sale of assets in 2023 — *i.e.*, he would have no tax liability as a result of the Sale. However, he would receive the benefit of approximately $22,000,000 of ordinary business losses from the 2023 business activity of VPX through the date of revocation, via Schedule K-1, to offset against other current or future active income that Mr. Owoc has. This equates to a potential tax benefit to Mr. Owoc of approximately $8,000,000.

13.    Upon the liquidation of VPX after the Sale, Mr. Owoc would recognize capital losses of over $50,000,000, as a result of deducting his remaining tax basis. Capital loss deductions are limited for individual taxpayers in the current year and therefore Mr. Owoc would carry forward this capital loss to utilize against current or future capital gains, which could result in a tax benefit of over $12,000,000.

**Opinion 2 – Tax liabilities expected to be incurred and potential benefits received by the Shareholder if VPX remains an S corporation**

14.    If VPX remains an S corporation at the time the Sale closes and throughout the 2023 tax year, all of the taxable income from the Sale will flow through to the Shareholder, who I estimate would owe approximately $3,438,144 in taxes as a result of the sale and liquidation.

15.    After applying Mr. Owoc's tax basis to the gain allocated via Schedule K-1, Mr. Owoc would carry forward a net capital loss of approximately $49,000,000, which could result in a net tax benefit of over $11,000,000 in future years.

16.    After applying VPX's 2022 Net Operating Loss (NOL) against 2023 Ordinary Income from VPX Schedule K-1, Mr. Owoc would carry forward the remaining excess 2022 NOL of approximately $23,000,000, which could result in a net tax benefit of over $8,000,000 in future years.

**Opinion 3 – Impact on VPX if the "pro rata" allocation is used rather than the "close the books" election**

17.    When a corporation terminates its S corporation status, the tax liability for that year takes into account the timing of the revocation and uses one of two methods to allocate income before and after that revocation.

18.    Under the Internal Revenue Code, upon conversion from an S corporation to a C corporation, two "short years" are created — an "S short year" before the conversion is effective and a "C short year" on and after the conversion is effective.  *See* 26 U.S.C. 1362(e)(1)(A), (B).  Taxes during the "S short year" are paid by the shareholder, because for that portion of the year, the S corporation election was in effect.  And taxes during the "C short year" are paid by the resulting C corporation.

19.    By default, tax during the year of conversion is allocated between the "S short year" and the "C short year" using the "pro rata allocation," which prorates the company's income using the number of days covered by each return.  *See* 26 U.S.C. 1362(e)(2).  Under the pro rata allocation, tax is allocated between the two based on how much of the year has passed at the time that the conversion occurred, taking into account the time remaining in the year that the C corporation is in existence.  So, if S corporation status is terminated on August 1, seven months of income would be allocated to the "S short year" and five months of income would be allocated to the "C short year" assuming that the C corporation continues to exist through December 31.

20.    A corporation may, instead, elect for the pro rata allocation to not apply.  *See* 26 U.S.C. § 1362(e)(3)(A).  This is referred to as the "close the books" election.  Under the close the books election, the company's books are closed as of the end of the day before the S corporation termination date, and the tax attributes are allocated based on actual income and losses accrued through the termination date. Any income or deduction after the date of termination would contribute to the tax liability of the C- corporation short year.  Thus, if VPX's S corporation status is terminated prior to the Sale, all Sale proceeds would be tax liabilities incurred in the C-Corp short year, 100% by VPX (as compared to 5/12th under the pro rata allocation for the full year).

21.    I estimate the Company's taxable income through December 31, 2023 would be $89,700,000.  Under the pro rata allocation, through the end of the calendar year, approximately $52,300,000 of the taxable income would be allocated to the S-Corp short year (and thereby resulting in approximately $10,000,000 of tax payable by the shareholder) and approximately $37,400,000 of the taxable income would be allocated to the C-Corp short year (and thereby resulting in approximately $9,200,000 of tax payable by VPX).  If the Company were to liquidate before the end of the calendar year, the Shareholder would be allocated a larger share of the Company's taxable income. Compared to the "close the books election," above, where a loss of $22,000,000 would be allocated to the 2023 S-Corp short year (and, therefore, Mr. Owoc would not pay any tax and would instead receive a tax benefit of approximately $20,000,000, as described in sections 13 and 14 of Opinion 1), and $111,200,000 of income would be allocated to the 2023 C-Corp short year (and, therefore, $27,500,000 of taxes would be payable by VPX).

**Opinion 4 – Historical benefits to the Shareholder as a result of VPX's S corporation classification**

22.     S corporation status for VPX means that all taxable amounts flow through to the Shareholder.  Without S corporation status, VPX would be taxed (which is ultimately a liability of the sole shareholder) and the shareholder would then be taxed on any dividends made by the company to the shareholder.  This is referred to as "double taxation."  As an S corporation, however, VPX's tax liability rolls up to the Shareholder.  That is, the Company's gains and losses were taxed only one time as though they were the Shareholder's personal income — there is no tax paid by VPX.

23.     In 2022, Mr. Owoc is estimated to receive a Schedule K-1 from VPX that reports approximately a $57,500,000 taxable loss.  As a result of the Excess Business Loss rules (which limits the use of business losses to offset non-business income to $250,000 Single and $500,000 Married filing joint), Mr. Owoc would only be able to deduct $500,000 against 2022 income, and the remaining $57,000,000 would be considered a Net Operating Loss.  Net Operating Losses can be carried forward into future years, allowing businesses suffering losses in one year to deduct those losses from future years' profits.  As an example, if a business suffered $50 million in losses in one year, and the next year earned $100 million in profits, without a carryforward provision, the business would be taxed on the full $100 million in the second year.  However, with a carryforward provision, the business can "carry forward" its $50 million loss in year one to reduce its taxable profits in the next year.  Here, Mr. Owoc would be able to carryforward $57,000,000 worth of losses that he can deduct in future tax years against all types of income.  An estimated tax rate of 37% would be applied to the losses carried forward, resulting in Mr. Owoc, potentially saving over $20,000,000 of taxes in future years.

**Opinion 5 – Benefit to Mr. Owoc of waiting until July 2023 to seek to terminate VPX's S corporation status**

24.     Had VPX S election been terminated in October 2022 when the bankruptcy petition was file, then VPX would be in the position to utilize parts of the 2022 and 2023 net operating losses to offset almost one-third of the estimated $111,200,000 of taxable income, by utilizing approximately $12,000,000 Net Operating Loss carryforward from 2022, and the estimated $22,000,000 Ordinary Loss from January 1, 2023 through the contemplated termination in July 2023.  In such a case, the tax payable by VPX for 2023 would be reduced by about $8,400,000, from $27,500,000 to $19,100,000.

25.     To the extent VPX's S election is terminated in late July 2023, as contemplated by the Motion, Mr. Owoc – as opposed to VPX – will obtain the benefit of any of VPX's historical tax attributes up to the date the election is terminated.

**Opinion 6 – In order for VPX to revoke the S corporation election or to make the "close the books" election, VPX would need to take affirmative action independent of Mr. Owoc**

26.     Pursuant to Treasury Regulation § 1.1362-6, an election statement (including for an election to revoke an S corporation status) must be signed by a person authorized to sign

the tax return of the corporation.  Under section 6062, a person authorized to sign the tax return of a corporation is such corporation's president, vice-president, treasurer, assistant treasurer, chief accounting officer or any other officer duly authorized so to act.  To revoke an election, the corporation files a statement that the corporation revokes the election made under section 1362(a).  The revocation statement must include the number of shares of stock (including non-voting stock) issued and outstanding at the time the revocation is made.  A revocation may be made only with the consent of shareholders who, at the time the revocation is made, hold more than one-half of the number of issued and outstanding shares of stock (including non-voting stock) of the corporation.

27.  To elect not to apply the pro rata allocation rules to an S termination year, a corporation files a statement that it elects under section 1362(e)(3) not to apply the rules provided in section 1362(e)(2), and instead to apply the "close the books" allocation method.  The statement must set forth the cause of the termination and the date thereof.  Pursuant to Treasury Regulation § 1.1362-6, the election statement must be signed by a person authorized to sign the tax return of the corporation, which under section 6062 includes the corporation's president, vice-president, treasurer, assistant treasurer, chief accounting officer or any other officer duly authorized so to act.  The statement must be filed with the corporation's return for the C short year.  This election may be made only with the consent of all persons who are shareholders at any time during the S short year and with the consent of all persons who are shareholders of the corporation on the first day of the C short year.

28.  Because of the Treasury Regulations, a shareholder's role with respect to terminating an S election or to making a "close the books" election is limited to consenting to the corporate action.  The practical effect of these regulations is that Mr. Owoc cannot independently enforce a "close the books" election.  Rather, VPX would have to take action independent of Mr. Owoc.  The board would need to first make the decision to make such an election, and then an authorized corporate officer would be required to sign on behalf of the corporation in order for the corporation to close the books.

Dated: July 24, 2023

/s/ *Richard E. Cabrera*
Richard E. Cabrera

**<u>Exhibit A</u>**

**Cabrera Profile**



CURRICULUM VITAE

# RICHARD ERIC CABRERA

**PROFESSIONAL EXPERIENCE**

**TAX DIRECTOR -** BERKOWITZ POLLACK BRANT ADVISORS AND CPAs, LLP, Ft. Lauderdale, FL    2014 TO PRESENT

**Practice Areas Include:**
- Domestic Income Tax Compliance
- Tax & Estate Planning for Business Owners
- High-net-worth tax issues
- Corporate restructuring
- Mergers and acquisitions

**Professional Affiliations**
- American Institute of Certified Public Accountants (AICPA)
- Florida Institute of Certified Public Accountants (FICPA)
- Florida Bar Association, Tax Law Section

**Education**
- University of Miami – Master of Law in Taxation (LLM)
- University of Miami – Juris Doctor, *cum laude*
- University of Florida– Master of Science in Accounting
- University of Florida – Bachelor of Science in Accounting

**Published Articles**
*Avoiding IRS Challenges with Business Owner Compensation,*[1]
*What Does the Inflation Reduction Act Mean to Taxpayers,*[2]
*2019 Federal Income Tax Liabilities Due July 15,*[3]
*IRS Guidance Puts Businesses in a Tight Spot With New Parking Rules.*[4]

---

[1] https://www.bpbcpa.com/avoiding-irs-challenges-with-business-owner-compensation-by-richard-e-cabrera-jd-llm-cpa/
[2] https://www.bpbcpa.com/what-does-the-inflation-reduction-act-mean-to-taxpayers-by-richard-cabrera-jd-llm-cpa/
[3] https://www.bpbcpa.com/2019-federal-income-tax-liabilities-due-july-15-by-richard-cabrera-jd-llm-cpa/
[4] https://www.bpbcpa.com/irs-guidance-puts-businesses-in-a-tight-spot-with-new-parking-rules-by-richard-e-cabrera-jd-cpa/

**<u>Exhibit B</u>**

**Documents Considered**

Documents Considered in Expert Analysis

- 2020 through 2021 Form 1120S Federal Income Tax Returns for and S Corporation of Vital Pharmaceuticals Inc.

- 2015 through 2021 Federal Income Tax Returns of John H and Megan Owoc

- 2022 Taxable Income Estimate for Vital Pharmaceuticals Inc, including 2022 year financials

- 2023 Taxable Income Estimate for Vital Pharmaceuticals Inc

- *Declaration of John C. DiDonato in support of Chapter 11 Petitions and First Day Pleadings* [ECF No. 24]

- *Emergency Motion of John H. Owoc's [sic] for Confirmation that the Automatic Stay Does Not Apply to Termination of Debtor's Subchapter S Corporation Status or, Alternatively, for Relief from Stay* [ECF No. 1627]

- *Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC),* 716 F.3d 736 (3d Cir. 2013)

- Vital Pharmaceuticals, Inc. (the "Company"), Estimated C Corporation Income Taxes on Sale of Assets in Bankruptcy


Tax Law References in Analysis

- Internal Revenue Code Section 1362

- Treasury Regulation Section 1.1362-1 thru 1.1362-6

- Internal Revenue Code Section 6012, 6037, 6062

- Form 1120S Instructions

- Form 1040 Instructions

- Form 2553 Instructions

**Exhibit C**

**Supporting Calculations**

**Supporting Calculations for Expert Report prepared by Richard E Cabrera**

**Opinion 1**     **VPX's tax liability as a result of the Sale as a C corporation**

| | |
|---|---:|
| Total Purchase Price | 370,700,000.00 |
| less: Tax Basis of Assets | (248,900,000.00) |
| Gain/(Loss) on Sale of Assets | 121,800,000.00 |
| | |
| *COMPANY ACTIVITY FOLLOWING REVOCATION* | |
| Estimated Ordinary Income from Business Activity  (July & August) | (7,300,000.00) |
| Estimated Deferred Expenses deductible upon assumption of Buyer | (2,800,000.00) |
| | |
| Estimated Federal Taxable income upon Bankruptcy Sale | 111,700,000.00 |
| Estimated Effective Tax Rate | 24.64% |
| | |
| **Estimated Federal and State Income Tax on Sale in Bankruptcy as a C Corporation (rounded)** | **27,500,000.00** |

**Opinion 1**     **Mr. Owoc Tax Basis Calcualtion at Revocation**

| | |
|---|---:|
| Per Mr. Owoc's 2021 Tax Return | 123,127,088.00 |
| Projected 2022 Taxable Income (Loss) from VPX Schedule K-1 | (57,556,918.00) |
| 2022 Capital Contributions | 11,000,000.00 |
| 2022 Cash Distributions | (755,197.00) |
| Projected 2023 Taxable Income (Loss) from VPX Schedule K-1 | (22,000,000.00) |
| **Tax basis of C Corporation stock after revocation** | **53,814,973.00** |
| | |
| Projected 2023 Taxable Income (Loss) from VPX Schedule K-1 | (22,000,000.00) |
| Estimated Effective Tax Rate | 37.00% |
| **Potential tax savings carried forward by Shareholder, Mr. Owoc, if VPX terminated S-Corp election** | **(8,140,000.00)** |
| | |
| Projected Loss on liquidation of VPX Stock | (53,814,973.00) |
| Estimated Effective Tax Rate | 23.80% |
| **Potential tax savings carried forward by Shareholder, Mr. Owoc, if VPX terminated S-Corp election** | **(12,807,963.57)** |

**Opinion 2**     **Tax liability incurred by Shareholder, Mr. Owoc, if VPX remains an S-Corp**

| | |
|---|---:|
| **2023 Estimated K-1 from VPX** | |
| Box 8a : Long-Term Capital Gain | 47,400,000.00 |
| Projected Capital Loss on liquidation of VPX | (96,114,973.00) |
| **Net Capital Gain Income /(Loss) for Mr. Owoc's 2023 tax return** | **(48,714,973.00)** |
| | |
| Box 1: Ordinary Income | 42,300,000.00 |
| Projected 2022 NOL available in 2023 | (57,056,918.00) |
| (80 percent of taxable income before NOL limitation) | (33,840,000.00) |
| **Net Ordinary Income for Mr. Owoc's 2023 tax return** | **8,460,000.00** |
| | |
| Estimated Effective Tax Rate on Ordinary Income | 40.640% |
| **Net Estimated Tax Liability for Mr. Owoc for 2023** | **3,438,144.00** |

**Opinion 2**     **Potential tax savings carried forward by Shareholder, Mr. Owoc, if VPX remains an S-Corp**

| | |
|---|---:|
| Remaing Capital Loss Carryforward after 2023 | (48,714,973.00) |
| Estimated Effective Tax Rate | 23.80% |
| **Projected Tax Benefit** | **(11,594,163.57)** |
| | |
| Remaining NOL Carryforward after 2023 | (23,216,918.00) |
| Estimated Effective Tax Rate | 37.00% |
| **Projected Tax Benefit** | **(8,590,259.66)** |

**Opinion 3    Pro-rata vs. Close the Books Allocations**

| | |
|---|---|
| Taxable Loss through potentional revocation | (22,000,000.00) |
| Taxable loss post-revocation | (10,100,000.00) |
| Ordinary Gain on Sale of Assets | 74,400,000.00 |
| Capital Gain on Sale of Assets | 47,400,000.00 |
| **Total income to be allocated** | **89,700,000.00** |

**Allocation under "Close the Books" method**

| | |
|---|---|
| VPX Taxable Income (Loss) Allocation | 111,700,000.00 |
| Shareholder Taxable Income (Loss) Allocation | (22,000,000.00) |

**Allocation under "Pro-rata" method**

| | |
|---|---|
| VPX Taxable Income (Loss) Allocation | 37,400,000.00 |
| Estimated Effective Corporate Tax Rate | 24.64% |

| | |
|---|---|
| Shareholder Taxable Income (Loss) Allocation - Capital Gain (offset against capital losses) | 27,600,000.00 |
| Shareholder Taxable Income (Loss) Allocation - Ordinary Income | 24,700,000.00 |
| Estimated Effective Tax Rate on Ordinary Income | 40.640% |
| **Estimated Federal and State Individual Income Tax (only on Ordinary income)** | **10,000,000.00** |

**Opinion 4    Historical Benefit of S-Status**

| | |
|---|---|
| Projected 2022 Taxable Income (Loss) from VPX Schedule K-1 | (57,556,918.00) |
| Amount usable in 2022 tax return | 500,000.00 |
| Potential Carryforward of 2022 S Corp Loss | (57,056,918.00) |
| Estimated Effective Tax Rate | 37.00% |
| **Projected Tax Benefit** | **(21,111,059.66)** |

**Opinion 5    Detriment to VPX of Mr. Owoc delay to see to terminate S election**

| | |
|---|---|
| Pro Rata Allocation of 2022 Net Operating Loss to C corpotation short year | (12,000,000.00) |
| 2023 Taxable Loss through potentional termination | (22,000,000.00) |
| Estimated Effective Corporate Tax Rate | 24.64% |
| **Estimated Federal and State Corporate Income Tax** | **(8,400,000.00)** |