UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No. 22-17842 (PDR) |
| Debtors.[1] | (Jointly Administered) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' (I) OBJECTION TO JOHN H. OWOC'S MOTION FOR CONFIRMATION THAT THE AUTOMATIC STAY DOES NOT APPLY TO THE TERMINATION OF DEBTOR'S SUBCHAPTER S CORPORATION STATUS OR, ALTERNATIVELY, FOR RELIEF FROM STAY AND (II) JOINDER TO THE DEBTORS' OBJECTION THERETO**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 bankruptcy cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors-in-possession (the "Debtors"), by and through its undersigned counsel, hereby submits this objection and joinder (the "Objection and Joinder") to the Debtors' objection [Docket No. 1717] (the "Debtors' Objection") to the *Emergency Motion of John H. Owoc's [sic] for Confirmation that the Automatic Stay Does Not Apply to the Termination of Debtor's Subchapter S Corporation Status or, Alternatively, for Relief from Stay* [Docket No. 1627] (the "Motion"). In support of this Objection and Joinder, the Committee respectfully states as follows:

1. The Committee joins in the Debtors' Objection in its entirety and also separately objects to the Motion. The relief sought by the Motion must be denied for two principal reasons.

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("VPX") (8430); (ii) Bang Energy Canada. Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

42978/2
07/26/2023 214078680.1

First, the automatic stay applies to (i) Mr. Owoc's request to terminate VPX's S-Corp[2] election and to make the "close the books election" as both require affirmative action by the Debtors, (ii) VPX's tax classification as a "pass-through" entity[3], and, just as importantly, (iii) the Sale Proceeds (defined below).  Second, there is no cause to lift the automatic stay as the requested relief (a) contravenes principles of fairness, (b) is unduly prejudicial to the Debtors' estates and every creditor constituency subordinate to the secured lenders in light of the Sale and related Global Settlement[4] approved by the Court, and (c) does not meet the "balancing of the equities" test.

I. **Based on the Actual Terms of the Sale, Mr. Owoc Would Never Have Been Able to Offset the Tax Generated by the Sale.**

2.      Mr. Owoc relies heavily on the *Majestic* decision to support his assertion that "any income generated during or as part of the reorganization process (such as the sale of assets) is likely to remain in the corporation, and ultimately in the hands of creditors, but the resulting tax liability must be borne by the S-Corp shareholders." Motion, ¶ 3 (citations and emphasis omitted). As Mr. Owoc would have the Court believe, "if VPX retains its S-Corp status at the time of the Sale, Mr. Owoc will potentially face massive personal tax exposure without receiving any income

---

[2] Capitalized terms not defined herein shall have the same meanings as ascribed to them in the Motion or Debtors' Objection, as is applicable.

[3] In the case of an S-Corp, Internal Revenue Code section 1363 provides that an S-Corp is generally not subject to federal income tax and Internal Revenue Code section 1366 provides for the "pass-thru" of items of income, loss, deduction or credit to the shareholder(s) of the S-Corp for inclusion on the shareholder(s) personal income tax return. 26 U.S.C. §§ 1363(a), 1366(a).

[4] Notably, the final terms of the Sale were a key component and consideration for the Committee in its support of that certain settlement agreement (the "Global Settlement") between and among the Debtors, Monster Energy Company ("Monster"), the Committee, and the supporting secured lenders, among others.  *See Debtors' Expedited Motion to Approve Compromise Between (I) the Debtors, (II) Monster Energy Company, (III) Monster Beverage Corporation, (IV) Orange Bang, Inc., (V) the Committee, and (VI) the Supporting Lenders*, Docket No. 1548.  The Court considered the Global Settlement contemporaneously with the Sale, which was approved by an Order [Docket No. 1644] entered on July 12, 2023.

or other benefit from the Sale, which, outside of bankruptcy, ***would otherwise flow through to him and be available to pay such tax burden.***" *Id.* (emphasis added).

3.  This argument, however, wholly disregards the actual terms of the Sale and Global Settlement approved by this Court. As part of the Sale and related Global Settlement, the Debtors' secured lenders agreed to an approximate $50 million haircut of their secured claims. Meaning, regardless of VPX's tax classification, **no** additional funds would have been available to Mr. Owoc "to pay such tax burden" based on the ultimate $362 million cash purchase price generated by the Sale, but for that haircut. Instead, Mr. Owoc is asking the Court to assume that any purchaser would have been willing to buy the Debtors' assets for an amount greater than the secured debt outside of bankruptcy or the lenders would have agreed to the same haircut. That is not what happened here. The Debtors ran a robust pre and postpetition marketing process which resulted in the ultimate Sale—the only actionable offer either before or after the Petition Date—that this Court approved as the highest and best offer for the Debtors' assets. [*See* Docket No. 1658]. Accordingly, this simple math should be sufficient reason for the Court to deny the Motion.

**II.   Mr. Owoc's Requested Relief Unravels the Terms of the Court-Approved Sale and Related Global Settlement Negotiated and Relied Upon by Various Parties.**

4.  In addition, the Order approving the Sale [Docket No. 1658] (the "<u>Sale Order</u>") contains findings by the Court including that: (i) the Sale is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; (ii) the Debtors demonstrated sound business purposes and justifications to promptly consummate the Sale, prior to and outside of a plan of reorganization; and (iii) such action is an appropriate exercise of the Debtors' business judgment. Sale Order, ¶ J. In finding the Debtors properly exercised their business judgment, the Sale Order sets forth that the Debtors relied on the fact that, among other things, "the Asset Purchase Agreement and the Closing present the best opportunity to maximize the value of the

Debtors' estates" and "*unless the Sale is concluded expeditiously as provided for in this Sale Order and pursuant to the Asset Purchase Agreement, potential creditor recoveries may be substantially diminished*." *Id.* (emphasis added).

5. The Debtors, secured lenders, Committee, and other parties in interest supported the structure of the Sale, including the related Asset Purchase Agreement, and the Global Settlement based on the facts before them and the known and foreseeable claims and liabilities against the estates. Indeed, the Court entered the Sale Order based upon these same facts. However, if the requested relief is granted, either in whole or in part, the Sale will no longer "maximize the value of the Debtors' estates". Permitting Mr. Owoc to revoke the S-Corp election and to make the "close the books election" will unquestionably be detrimental to the Debtors, their estates, the unsecured creditors, and various other parties in interest, and could have been potentially avoided if the relief was not sought on the eve of the Sale Hearing. For this reason, the Court should also deny the Motion.

### III. The Automatic Stay Applies as VPX's S-Corp Status, the Tax Attributes Derived from the S-Corp Status, and the Sale Proceeds are All the Debtors' Property and/or Property Interests.

6. As the Debtors' Objection states, many courts throughout the country have found that a debtor-corporation's S-Corp status constituted property or an interest of the debtor in property within the meaning of the Bankruptcy Code.[5] The Debtors have a property interest in VPX's tax classification as a pass-through entity. This Court has recognized that "[t]he Supreme Court clearly held in [*Segal*], decided under the Bankruptcy Act of 1898, that tax attributes are

---

[5] The Supreme Court and Eleventh Circuit have held that the terms "property" and "interest in property" as used in section 541(a)(1) of the Bankruptcy Code should be broadly construed to encompass virtually everything of value that a debtor has at the time of filing. *See, e.g., Segal v. Rochelle*, 382 U.S. 375, 379 (1966) (noting that the term "property" of the bankruptcy estate should be "construed most generously" and that "an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed."); *Thomas v. Bender (In re Thomas)*, 516 F. App'x 875, 877 (11th Cir. 2013) (noting that section 541 of the Bankruptcy Code is "construed broadly, so as to effectuate Congressional intent that a wide range of property be included in the estate.").

property of a bankruptcy estate." *In re Taylor*, 386 B.R. 361 (Bankr. S.D. Fla. 2008), *aff'd sub nom. U.S. v. Kapila*, 402 B.R. 56 (S.D. Fla. 2008).  Courts in other jurisdictions have also found that a debtor S-Corp has a property interest in the tax attributes of an entity as a result of its S-Corp status, which include "the ability to not pay taxes" on its income.  *In re Bakersfield Westar, Inc.*, 226 B.R. 227, 233–34 (B.A.P. 9th Cir. 1998) (finding debtor had property interest in S-Corp status because such status allowed it to avoid entity-level tax liability); *In re Cumberland Farms, Inc.*, 162 B.R. 62, 66–67 (Bankr. D. Mass. 1993) (finding that debtor had a property interest in the benefit of minimizing future tax distributions to the S-Corp shareholder where prior S-Corp losses could be used by the shareholder to offset S-Corp income as a result of the debtor's S-Corp status).

7.      Likewise, the Supreme Court recently observed that section 362(a)(3) of the Bankruptcy Code "prohibits affirmative acts that would disturb the status quo[6] of estate property as of the time when the bankruptcy petition was filed", including "with respect to intangible property without obtaining such property." *City of Chicago, Illinois v. Fulton*, 141 S. Ct. 585, 590 (2021); *see also Cumberland Farms*, 162 B.R. at 68 (finding that a sale of stock to end a debtor's S-Corp status violates the automatic stay as an act to exercise control over property of the estate under section 362(a)(3)).  In *City of Chicago*, the Supreme Court found that the mere retention of estate property (the retention of debtors' impounded vehicles) after the petition date was not a stay violation as it did not constitute an act to exercise control over estate property.  *See* 141 S. Ct. at 592.  Here however, unlike in *City of Chicago*, Mr. Owoc's requests to revoke VPX's S-Corp status while also trying to force the Debtors to make the "close the books election" which would clearly impact the status quo as both forms of relief would require affirmative acts by an officer of

---

[6] The Supreme Court's clarification in *City of Chicago* that section 362(a)(3) prohibits acts affecting the status quo of both intangible (i.e., tax status and attributes) and tangible estate property is entirely consistent with pre-*Majestic* case law finding that the automatic stay applies where a third party's action adversely affects a debtor's property interests.

VPX and would have a negative impact on multiple property interests of the Debtors in violation of the automatic stay.

8. The relief sought in the Motion would upset the status quo and unquestionably lead to real and detrimental financial consequences to the Debtors' estates. ***First***, the Sale Proceeds that are indisputably estate property—the disposition of which are subject to the automatic stay—would be required under the absolute priority rule to first satisfy an otherwise non-existent priority tax liability that would arise solely due to the relief requested by Mr. Owoc. ***Second***, based on the timing of the election, certain tax attributes (i.e., net operating losses) that would otherwise have been available to the Debtors to reduce tax liability associated with the Sale would, after the revocation, only be available to Mr. Owoc. *See* Cabrera Report ¶¶ 11, 24. ***Third***, Mr. Owoc's request that the Debtors make the "close the books election"—an action Mr. Owoc could not take on his own—would further impact estate property. *Id.* ¶ 28. Accordingly, the automatic stay applies and the Motion should be denied.

**IV. Mr. Owoc Fails to Establish Cause to Lift the Automatic Stay and Stay Relief Should be Denied Where (i) Countless Parties in Interest Will be Negatively Impacted if the Relief is Granted and (ii) Equity Would Improperly Obtain a Recovery Before Unsecured Creditors.**

9. Cause to lift the automatic stay does not exist here where ***maintaining the status quo*** only impacts one party, Mr. Owoc. Because "cause" is not defined under section 362(d) of the Bankruptcy Code, courts assess cause on a case-by-case basis and are afforded wide latitude in deciding whether to grant relief. *See In re Feingold*, 730 F.3d 1268, 1277 (11th Cir. 2013); *In re Creative Loafing, Inc.*, Case No. 8:08-BK-14939-CED, 2010 WL 1408425 (M.D. Fla. Apr. 5, 2010) ("Courts conduct a case-by-case inquiry and apply a totality of the circumstances test."). The Eleventh Circuit looks to a variety of case-specific factors, including, "the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." *Feingold*, 730 F.3d

at 1277 (citation omitted). The automatic stay imposed by section 362 of the Bankruptcy Code performs the important function "to protect creditors by avoiding the piece-meal or distressed liquidation of the debtor's assets . . . thus furthering administration of assets in an orderly fashion to achieve an equitable distribution within the framework of the Bankruptcy Code." *In re Ford*, 296 B.R. 537, 548 (Bankr. N.D. Ga. 2003); *Rohe v. Wells Fargo Bank, N.A.*, 988 F.3d 1256, 1268 (11th Cir. 2021) ("The automatic stay is a fundamental procedural mechanism facilitating the bankruptcy court's basic role in ensuring the orderly administration and equitable distribution of the bankruptcy estate.").

10. The automatic stay should not be lifted as the relief requested—terminating the S-Corp election and making the "close the books election"—in whole and in part, would ***impose crippling hardships on the Debtors, their estates and most creditors*** by creating a priority tax claim that would not otherwise exist. The impact of this proposed relief would materially dilute or eliminate any recovery that stakeholders negotiated for in the Global Settlement and would have otherwise received if VPX's S-Corp election was not revoked. Despite the Motion's emphasis on "equity"[7], its questionable timing, which largely contributes to why the Motion is barred by the doctrine of laches as argued by the Debtors, belies Mr. Owoc's purported concern about notions of fairness. The irony of the Motion is that Mr. Owoc is attempting to reorder the priorities[8] of the Bankruptcy Code so his equity interests can benefit before more than a billion dollars in claims that he caused.[9]

---

[7] The "overall goals of the Bankruptcy Code" include section 362's protection of creditors in furtherance of the "administration of assets in an orderly fashion to achieve an equitable distribution within the framework of the Bankruptcy Code." *See Feingold*, 730 F.3d at 1277; *see also In re Ford*, 296 B.R. at 548.

[8] *See In re Lett*, 632 F.3d 1216, 1228–29 (11th Cir. 2011) (finding that a debtor cannot put the interests of equity holders ahead of the interests of creditors pursuant to the absolute priority rule under section 1129(b)).

[9] In September 2022, a jury delivered a verdict in favor of Monster Energy Company ("Monster") finding, among other things, that Mr. Owoc and VPX were liable for willful and deliberate false advertising under the Lanham Act

11. To the contrary, by filing the Motion on the eve of the Sale Hearing, Mr. Owoc is simply seeking to manipulate the system, evade an approximate $3.4 million tax liability he would otherwise have to pay, but for the election, and become eligible for all of the losses incurred before the Sale to offset future income. *See* Cabrera Report ¶¶ 12–14. The revocation and "close the books election" would also create an approximate $27.5 million tax burden for the estates that would otherwise be closer to Mr. Owoc's approximate $3.4 million tax liability if the losses could be utilized. *Id.* ¶¶ 11, 14. Indeed, Mr. Owoc could have made the election at any time prior to or during the Chapter 11 Cases including when he was actively seeking to sell the company as the 100% shareholder, chief executive officer, and chairman of the board.[10] However, filing the Motion at this juncture—after key constituencies spent months negotiating the Sale and Global Settlement that this Court ultimately approved—deprives the estates of the potential monetary benefits of the Sale—tax and otherwise—while likely resulting in a conversion of the Chapter 11 Cases to cases under Chapter 7.

12. "While chapter 11 of the Bankruptcy Code offers some protections to shareholders, the two recognized policies, or objectives, are preserving going concerns and maximizing property available to satisfy creditors." *In re Universal Towers Constr., Inc.*, 641 B.R. 691, 704 (M.D. Fla. 2022) (citations omitted). Mr. Owoc's proposed revocation of VPX's S-Corp status and request

---

and awarded Monster approximately $293 million in damages. *Monster Energy Co. v. Vital Pharm., Inc. and John H. Owoc a.k.a. Jack Owoc*, Case No. 5:18-cv-1882-JGB-SHK (C.D. Cal. Sept. 29, 2022), Docket No. 890. In addition, a related final arbitration award subsequently confirmed by the District Court imposed limitations on the use of the "BANG" trademark and saddled the Company with a perpetual 5% royalty on net sales of BANG products. According to the arbitration award, the limitations on the use of the "BANG" trademark were known by the Company's executives, but not communicated by them to anyone else in the Company or the Company's customers, retailers, and distribution partners. *See Orange Bang, Inc. and Monster Energy Co. v. Vital Pharms., Inc.*, AAA No. 01-20-0005-6081, Final Arb. Award Phase 1 and Phase 2 at 32:18–33:21 (Commercial Arbitration Tribunal).

[10] As early as April 8, 2022, Mr. Owoc was contemplating a sale transaction or series of transactions whereby 50% or more of VPX's assets or equity interests would be purchased or otherwise acquired, as evidenced by VPX's letter agreement with Rothschild & Co US Inc. that was executed by Mr. Owoc. Docket No. 23, at 62–77.

that the Debtors make the "close the books election" are transparent efforts to undercut the Bankruptcy Code's objective to maximize property available to satisfy creditors. For years leading up to these Chapter 11 Cases, Mr. Owoc enjoyed the benefits of VPX's tax classification as a "pass-through" entity (i.e., its S-Corp status). *See* Cabrera Report ¶¶ 22, 23. **First**, VPX's S-Corp status allowed Mr. Owoc, as sole shareholder, to avoid "double taxation" on the income of VPX. The income and gain of VPX was not taxed at the entity level, and instead was only taxed to Mr. Owoc individually. If VPX had instead been taxed as a C-corporation, net taxable income would have been taxed at VPX and then again to Mr. Owoc when he received a distribution of such income from VPX which resulted in Mr. Owoc realizing material tax savings over decades from receiving distributions from VPX subject to only one level of tax. **Second**, as an S-Corp, losses of VPX have flowed through to Mr. Owoc's personal tax returns. Not only can such losses be used to offset income or gain of VPX, but other income Mr. Owoc may incur from other ventures. **Third**, VPX's S-Corp status made it a more attractive acquisition target for potential purchasers as the S-Corp status would allow for a purchaser to receive a basis step up in the assets of VPX while only resulting in one level of tax on gain to Mr. Owoc. Despite this benefit, no one was willing to execute a sale transaction outside of bankruptcy. It was only after the Chapter 11 Cases had been commenced, Mr. Owoc had been terminated as CEO and Chairman of the board for cause, and the Sale had been approved by the Court, that Mr. Owoc seeks to revoke VPX's S-Corp status in an attempt to evade his imminent tax obligation (while first receiving a passthrough of all losses of VPX).

13.  It bears repeating that the effect of the requested relief, which solely inures to the benefit of Mr. Owoc, is detrimental to the estates: creating a priority tax claim that would not otherwise exist and that will likely result in a chapter 7 conversion.

14. As this Motion has been filed without the requisite "cause" or regard to the harms it would inflict upon other interested parties, especially general unsecured creditors, the automatic stay should not be lifted, and the requested relief should be denied.

**WHEREFORE**, the Committee respectfully requests the Court deny the Motion. The Committee reserves its right to modify or supplement this Objection and Joinder as necessary and appropriate.

Dated: July 26, 2023

**LOWENSTEIN SANDLER LLP**

Jeffrey L. Cohen, Esq.
Eric Chafetz, Esq.
Lindsay H. Sklar, Esq.
Erica G. Mannix, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 262-6700
Facsimile: (212) 262-7402
Email: jcohen@lowenstein.com
Email: echafetz@lowenstein.com
Email: lsklar@lowenstein.com
Email: emannix@lowenstein.com

**SEQUOR LAW, P.A.**

By: */s/ Leyza F. Blanco*
    Leyza F. Blanco
    Florida Bar No.: 104639
    Juan J. Mendoza
    Florida Bar No.: 113587
    1111 Brickell Avenue, Suite 1250
    Miami, FL 33131
    Telephone: (305) 372-8282
    Facsimile: (305) 372-8202
    Email: lblanco@sequorlaw.com
    Email: jmendoza@sequorlaw.com

    *Counsel to the Official Committee of Unsecured Creditors*