# JOINT EXHIBIT 2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No.: 22-17842-PDR |
| Debtors.[1] _____/ | (Jointly Administered) |

**DECLARATION OF JOHN C. DIDONATO IN SUPPORT OF DEBTORS' RESPONSE TO JOHN H. OWOC'S MOTION TO TERMINATE VITAL PHARMACEUTICALS, INC.'S S-CORP STATUS**

Under 28 U.S.C. § 1746, I, John C. DiDonato, hereby declare as follows under the penalty of perjury:

1. I am the Interim Chief Executive Officer ("CEO") of Vital Pharmaceuticals, Inc. ("VPX") and the other debtors and debtors in possession (together with VPX, the "Company" or the "Debtors") in the above-captioned cases (collectively, the "Chapter 11 Cases"). Prior to my appointment as interim CEO on March 9, 2023, I was the Company's Chief Transformation Officer ("CTO") and retained as such in early September 2022. Through my roles as CTO and interim CEO, I am familiar with the Debtors' day-to-day operations, businesses, and financial affairs.

2. In addition to my current role with the Debtors, I am a Managing Director of Huron Consulting Services LLC ("Huron") and Huron's Business Advisory Capability Leader. Huron is

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC ("Quash Seltzer") (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

US-DOCS\143719789.7

an operationally focused consulting firm that specializes in, among other things, bankruptcy, interim management, financial, operational, transformation consulting to financially distressed businesses.  I have more than 35 years of experience counseling distressed companies through operational turnarounds, capital raising, merger integrations, financial consulting, restructuring, serving underperforming companies both in chapter 11 and in-out-of-court situations.  I have served more than 100 debtors, functioning for many as a chief restructuring strategist.  My expertise encompasses a wide range of industries, including consumer products, logistics and distribution, automotive, aerospace, engineering, construction, metals, equipment leasing, retail among many others.

3. Except as otherwise specified herein, all the facts set forth in this declaration (the "Declaration") are based upon my personal knowledge, my discussions with members of the Debtors' management, the Huron team, the Debtors' other advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, and restructuring initiatives, or my opinions based upon my experience and knowledge.

4. I submit this Declaration in support of the *Debtors' Objection to John H. Owoc's Motion to Terminate Vital Pharmaceuticals, Inc.'s S-Corp Status* (the "Objection") and against the *Emergency Motion of John H. Owoc's [sic] for Confirmation that the Automatic Stay Does Not Apply to Termination of Debtor's Subchapter S Corporation Status or, Alternatvely [sic], for Relief from Stay* [D.I. 1627] (the "Motion").[2]  If called as a witness, I could and would testify competently to the facts set forth in this Declaration.  I am authorized to submit this Declaration on behalf of the Debtors.

## THE DEBTORS' BOARD OF DIRECTORS AND/OR MANAGERS

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Objection.

5. I regularly attend meetings of the Boards of Directors and/or Managers (collectively, the "Board"), and am familiar with the composition of the Board over my tenure working with the Debtors. The Debtors' Board currently consists of the following five individuals: Steven Panagos, Stephen Gray, Rich Caruso, Bob Dickinson, and Gene Bukovi. Mr. Panagos was duly appointed by written consent as a member of the Board on October 25, 2023 as a member of the Board and as the sole member of the Restructuring Committee of the Board on October 25, 2023. Mr. Dickinson was appointed as a member of the board on December 14, 2022. Mr. Gray was appointed as a member of the Board on January 7, 2023. Mr. Caruso was appointed as a member of the Board on March 14, 2023. And Mr. Bukovi was appointed to the Board on June 16, 2023.

6. Mr. Owoc is the Company's founder and sole shareholder, and he was the Company's CEO and a member of the Board until March 9, 2023, at which time he was terminated from his positions with the Company, including his roles as CEO and Board member.

7. Since the Petition Date, the Board has met approximately once per week. In addition, the Restructuring Committee met approximately once per week beginning in October 2022 through March 9, 2023. I have attended most, if not all, of the Board and Restructuring Committee meetings since the Petition Date. Mr. Owoc attended most of these meetings and at many of these meetings the potential sale of the Debtors' assets was discussed. Up until his termination as CEO on March 9, 2023, Mr. Owoc was present at most, if not all, of the Board and Restructuring Committee meetings, and a potential sale of all or substantially all of the Debtors' assets was discussed at the vast majority of those meetings. Over the course of the Board and Restructuring Committee meetings that took place between the Petition Date and Mr. Owoc's

3

termination, at no point did he indicate he was considering action that would convert VPX's status as a Subchapter S corporation ("S-Corp") to a C corporation ("C-Corp").

8. On March 9, 2023, Mr. Owoc was removed from all of his management positions with the Debtors, including as a Board member, an officer, or authorized representative of any of the Debtors, including VPX. Mr. Owoc is not currently authorized to sign tax filings (or any other filings) on behalf on the VPX. As the interim CEO of the Debtors appointed by the Board, I am the only individual at VPX authorized by VPX to sign tax filings on its behalf. As to tax extensions, in addition to myself, Greg Robbins, the Debtors' Chief Financial Officer, is also authorized to sign such documents on behalf of VPX.

## THESE CHAPTER 11 CASES AND THE MONSTER SALE

9. The Debtors have invested significant resources in the Chapter 11 Cases, and have worked cooperatively with their constituents, including the Official Committee of Unsecured Creditors, to maximize value of the estates for the benefit of all stakeholders. The Debtors and their professionals have worked tirelessly to run a value-maximizing sale process, culminating in the Monster Sale (as defined in the Objection)—a sale of the Debtors' assets that has been approved by this Court, and which is scheduled to close on July 31, 2023. The Monster Sale, and accompanying settlement among the Debtors, the Official Committee of Unsecured Creditors, the DIP Agent and supporting DIP Lenders, Monster, and Orange Bang, are expected to facilitate payment in full of all administrative expense and other "100-cent" claims and confirmation of a chapter 11 plan.

10. Huron, at my direction, performed an analysis of the flow of funds from the Monster Sale. A true and correct copy of this analysis is attached hereto as **Exhibit A**. According to the analysis, the Monster Sale is expected to yield approximately $11.6 million of proceeds for the unsecured creditors.

4

## THE RELIEF SOUGHT IN THE MOTION

11. If Mr. Owoc were to convert VPX from an S-Corp into a C-Corp, particularly in this eleventh hour, the estate would suffer significant consequences. The impacts of such a conversion are set forth in the Expert Report of Richard Cabrera, dated July 24, 2023. If VPX's S-Corp status is terminated, the estate will be saddled with unexpected taxes, likely leaving unsecured creditors (other than the Internal Revenue Services and other taxing authorities) with no recovery and depriving the Debtors of the ability to confirm and consummate a Chapter 11 plan. Moreover, such a conversion would force the estates to bear significant tax liability that may also compromise the Debtors' ability to pursue a plan and could force a conversion of these Chapter 11 Cases into a Chapter 7 liquidation.

12. Since the filing of the Motion, the Board has met to discuss the relief sought in the Motion, including the potential conversion of VPX from an S-Corp into a C-Corp. Following discussions with the Debtors' advisors and presentation of information regarding the likely impact of a conversion to a C-Corp, the Board concluded that it would not be acting in the best interest of the Debtors' estates by consenting to convert VPX from an S-Corp into a C-Corp and/or subsequently making a "close the books" election because such actions would have the effect of diverting all or substantially all of the proceeds from the sale of the Debtors' assets that would otherwise satisfy unsecured claims to satisfy anticipated tax liability at VPX, which would inure only to the benefit of Mr. Owoc and would adversely impact recoveries for all other stakeholders. Moreover, in the event that Mr. Owoc is granted relief from the stay to convert VPX to a C-Corp, but cannot force the Debtors to make the "closing-the-books" election, the Debtors expect to promptly liquidate.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: July 26, 2023

/s/ *John C. DiDonato*
John C. DiDonato
Chief Transformation Officer and Interim Chief Executive Officer

# Exhibit A

*In re Vital Pharmaceuticals, Inc.*
Funds Flow Summary in connection with Monster Sale

($ in millions)

| | | |
|---|---:|---|
| **Proceeds from Sales Transaction** | | |
| Cash Purchase Price[1] | $362.0 | |
| Less: funding for operations from Deposit | (22.0) | |
| Available from Cash Purchase Price | **$340.0** | [a] |
| | | |
| **Payments in Accordance to Sale Order** | | |
| Lien release and employee related payments | $24.6 | |
| Closing and Non-Lender Professional Fees | 21.9 | |
| DIP Repayment and Lender Professional Fees | 269.8 | |
| Total Sale Order Payments | **$316.4** | [b] |
| **Remaining Sale Proceeds** | **$ 23.6** | [c] = [a] - [b] |
| | | |
| **Additional Funding Sources** | | |
| Recovery of prepaid expenses | $ 4.5 | |
| Cash on hand | 3.8 | |
| Proceeds from sale of assets | 0.8 | |
| Additional available cash | **$9.2** | [d] |
| **Available Proceeds before Administrative & Priority Claims** | **$ 32.8** | [e] = [c] + [d] |
| | | |
| Total Administrative Expense / Claims | $16.6 | |
| Estate Wind Down Expenses | 1.2 | |
| Total Priority Expenses / Claims[2] | 3.4 | |
| Administrative and Priority Expenses / Claims | **$21.2** | [f] |
| | | |
| **Available Proceeds to pursue litigation claims / repay GUCs** | **$ 11.6** | [g] = [e] - [f] |

**Notes**
[1] To be finalized in closing statement
[2] Excludes impact of converting to C-Corp