# **JOINT EXHIBIT 5**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                                          Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et. al.*,                       Case No.: 22-17842-PDR

    Debtors.                                                              (Jointly Administered)

_____/

## EXPERT REPORT OF ADI RAPPOPORT

1.     INTRODUCTION AND QUALIFICATIONS

    (a)    Through the Gunster, Yoakley & Stewart, P.A. law firm, I have been retained by John H. Owoc in this case as an expert to support Mr. Owoc's *Emergency Motion of John J. Owoc's for Confirmation that the Automatic Stay Does not Apply to Termination of Debtor's Subchapter S Corporation Status, or Alternatively, for Relief from Stay* filed with United States Bankruptcy Court South District of Florida on July 11, 2023 (the "Emergency Motion"). More specifically, my expert testimony relates to the argument in the Emergency Motion that assuming that the automatic stay applies to S Corporation status of Vital Pharmaceuticals, Inc. ("VPX") (which is an item in dispute), cause exists to lift the stay. My expert testimony seeks to explain why Mr. Owoc would face extreme consequences and inequities if he were denied his right as the sole shareholder of VPX to terminate the S Corporation status of VPX.

    (b)    I am a shareholder of the Gunster, Yoakley & Stewart, P.A. law firm where I co-chair the firm's tax practice. I am a Board Certified Tax Attorney. I attended the University of Florida and earned a Bachelor of Science degree in accounting with highest honors from the Fisher School of Accounting. I attended the University of Florida College of Law and earned a Juris Doctors degree with honors and an LL.M. in taxation. I was admitted to the Bar of the State of Florida in 1997. I began my legal career with the Florida law firm of August, Comiter, & Kulunas, P.A. I have been employed by Gunster, Yoakley & Stewart, P.A. since 2001. I have co-authored a number of articles on various tax topics. I have lectured on a number of tax topics.

    (c)    I have not testified as an expert at trial or by deposition in the past four years.

    (d)    Gunster, Yoakley & Stewart, P.A. is being compensated for my time at my normal billing rate ($785 per hour). This compensation is not contingent upon the nature of my findings or on the outcome of this litigation.

2.       STATEMENT OF OPINIONS AND BASIS AND REASONS FOR THEM

      (a)       For the reasons explained below, my opinion is that Mr. Owoc would face extreme consequences and inequities if he were denied his right as the sole shareholder of VPX to terminate the S Corporation status of VPX. On July 14, 2023, the United States Bankruptcy Court issued an order to approve the sale of substantially all of VPX's assets pursuant to the terms of that certain Asset Purchase Agreement dated as June 28, 2023 (the "APA") [ECF No. 1658]. Generally, if the sale closes in accordance with its terms while VPX is characterized as an S Corporation, all items of income and gain resulting from the sale would be taxed to Mr. Owoc which may result in a tremendous adverse economic consequence to him. Essentially, VPX and its creditors would receive the benefit of the sale, and because VPX is an S Corporation, Mr. Owoc would be responsible for the income tax on the sale.

      (b)       The Internal Revenue Code generally subjects all corporations to the income tax at a 21% tax rate. I.R.C. § 11. However, a "small business corporation"—defined as a corporation that (i) has fewer than 100 shareholders, all of whom are individuals, (ii) has only one class of stock, (iii) does not have a nonresident alien as a shareholder, and (iv) is not an insurance company or certain type of financial institution, *see* I.R.C. §§ 1361(b)(l)(2) —may, with the consent of all of its shareholders, "elect" to be an S Corporation. I.R.C. § 1362(a). If a small business corporation makes such an election, then the S Corporation itself is not subject to income tax. *See* I.R.C. § 1363(a). Instead, the corporation computes its taxable income in the usual manner, *see* I.R.C. § 1363(b), but the income is "passed through" to its shareholders, and the shareholders must pay tax on their *pro rata* share of the taxable income of the S Corporation. I.R.C. § 1366(a)(l). The tax rate applicable to the shareholder on their *pro* rata portion will be their individual tax rate, which is currently imposed at a highest marginal rate of 37% for ordinary income or 20% for capital gain income. I.R.C. § 1(h); § 1(j)(2)(A). As a result, the S Corporation and its shareholders are permitted to avoid "double taxation"—that is, taxation at the corporate level and again at the shareholder level on the same corporate profits.

      (c)       It is a fundamental notion of the United States system of federal taxation that the burden of paying income taxes should be borne by those who derive the benefit of the income. I.R.C. § 1. In the typical case where an S Corporation sells its assets, the shareholder has the ability to extract the gain from the corporation (as a dividend or distribution) in order to pay the taxes due on that gain. If, however, the debtor in possession is permitted to avoid the termination of such a status, any gain realized necessarily remains in the corporation, but the resulting tax liabilities must be borne by the shareholder—Mr. Owoc in this case. As a result, the corporation's creditors receive a significant windfall because they are receiving the benefit of the gain generated by the sale of the Company's assets but are spared from paying the tax due on that gain. On the other hand, Mr. Owoc is stuck with a potentially significant tax bill without having the right to the income upon which the tax was assessed. Fundamentally, the tax liabilities should remain joined with the gain upon which the liabilities are imposed.

      (d)       In general, the anticipated sale of substantially all of VPX's assets under section 363(b) of the Bankruptcy Code would take the form of a taxable asset sale under I.R.C. § 1001.

Pursuant to I.R.C. § 1001, VPX would recognize gain or loss on the sale of its assets equal to the difference between the cash and the fair market value of the other consideration received from the purchaser (which would include assumed liabilities), on the one hand, and VPX's basis in the transferred assets, on the other hand.

(e) Thus, to determine Mr. Owoc's potential income tax liabilities in connection with the closing of the APA, the following items would need to be determined: (1) the amount realized on the sale (which would include assumed liabilities); (2) the adjusted basis of the assets being sold in accordance with the APA; and (3) an allocation of the sale consideration among such assets. At this point, the potential income tax liabilities can only be calculated based on reasonable estimates from available information.

(f) In determining the amount realized on the sale, Section 3.1 of the APA sets forth the purchase price for the sale of the Purchased Assets (as defined in the APA). The components of the purchase price are: (1) the cash purchase price; plus (2) the Deposit; plus (3) the assumption of the Assumed Liabilities (as defined in the APA) plus (4) an additional $10,000,000 (contingent on the transfer of certain IP holdings). Based on the foregoing, the cash purchase price is approximately $372,000,000. In addition, the estimated value of the Assumed Liabilities (as defined in the APA) is $8,200,000, and the estimated value of the Cure Costs (as defined in the APA) is $80,103,503.29.[1] The sum of the foregoing amounts ($460,303,503.29) would constitute the amount realized on the sale of the assets being sold in accordance with the APA.

(g) In addition, there is substantial risk that in reviewing this transaction, the IRS would take the position that the settlement of the OBI/Monster Matter Allowed Unsecured Claim (as defined in the APA) (in the amount of $216,131,658.35 plus accrued interest) and the California District Court Action Allowed Unsecured Claim (as defined in the APA) (in the amount of $292,939,761.00 as may be adjusted) would also be included in the amount realized on the sale in the APA. This risk arises based on my understanding that (a) the APA contains a resolution of such claims in exchange for allowed, unsecured, non-administrative claims; and (b) the sale and the settlement are cross-conditioned on one another in accordance with Section 8.1(d) of the APA. Based on these facts, the IRS may take the position that the resolution of these claims wholly or partially constitutes additional consideration for the Purchased Assets (as defined in the APA). While the resolution of this risk is not without doubt, the existence of this risk makes the maintenance of S Corporation an extreme circumstance for Mr. Owoc and would create an extremely inequitable result.

(h) The maintenance of the S Corporation status for VPX would mean that Mr. Owoc would be subject to significant tax liabilities as a shareholder on taxes due on VPX's gain. This is despite the fact that Mr. Owoc would not have the right to the income upon which the tax was assessed, which now belongs with the creditors.

---

[1] The estimated value of Assumed Liabilities (as defined in the APA) of $8,200,000 was provided by counsel for the Debtor by email dated July 24, 2023.

3.  FACTS OR DATA CONSIDERED

(a) As part of my engagement in this matter, I was provided with voluminous documents. Therefore, my review was necessarily limited to the documents which would assist me in estimating the federal income tax consequences to Mr. Owoc of the authorized sale of substantially all the debtor's assets in accordance with section 363 of the Bankruptcy Code, under the assumption that the Court does not grant relief from the automatic stay under section 362(a) of the Bankruptcy Code to allow Mr. Owoc to terminate VPX's status as a Subchapter S Corporation.

(b) As described above, the following three variables, among others, are necessary to estimate the federal income tax consequences to Mr. Owoc relevant to my testimony in this case: (1) the amount realized on the sale (which would include assumed liabilities); (2) the adjusted basis of the assets being sold in accordance with the APA; and (3) an allocation of the sale consideration among such assets.

(c) To ascertain these variables and form my above-referenced opinion on the estimated income tax consequences to John H. Owoc, I have considered the following materials from those provided:

(i) [ECF No. 1658] In re: Vital Pharmaceuticals, Inc., *et al.*, Case No.:22-17842-PDR, AMENDED ORDER (I) AUTHORIZING AND APPROVING (A) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES AND (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION THEREWITH, AND (II) GRANTING RELATED RELIEF, including Exhibit A.

(ii) [ECF No. 1546] In re: Vital Pharmaceuticals, Inc., *et al.*, Case No.:22-17842-PDR, NOTICE OF AUCTION CANCELLATION AND SUCCESSFUL BIDDER, including Exhibit 1.

(iii) [ECF No. 1644] In re: Vital Pharmaceuticals, Inc., *et al.*, Case No.:22-17842-PDR, ORDER GRANTING DEBTORS' EXPEDITED MOTION TO APPROVE COMPROMISE BETWEEN (I) THE DEBTORS, (II) MONSTER ENERGY COMPANY, (III) MONSTER BEVERAGE CORPORATION, (IV) ORANGE BANG, INC., (VI THE COMMITTEE, AND (VD THE SUPPORTING LENDERS, including Exhibit A.

(iv) [ECF No. 1548] In re: Vital Pharmaceuticals, Inc., *et al.*, Case No.:22-17842-PDR, DEBTORS' EXPEDITED MOTION TO APPROVE COMPROMISE BETWEEN (I) THE DEBTORS, (II) MONSTER ENERGY COMPANY, (III) MONSTER BEVERAGE CORPORATION, (IV) ORANGE BANG, INC., (V) THE COMMITTEE, AND (VI) THE SUPPORTING LENDERS, including Exhibit A.

(v) [ECF No. 1627] In re: Vital Pharmaceuticals, Inc., *et al.*, Case No.:22-17842-PDR, EMERGENCY MOTION OF JOHN H. OWOC'S FOR CONFIRMATION THAT

THE AUTOMATIC STAY DOES NOT APPLY TO TERMINATION OF DEBTOR'S SUBCHAPTER S CORPORATION STATUS OR, ALTERNATVELY, FOR RELIEF FROM STAY.

(vi) [ECF No. 1460] In re: Vital Pharmaceuticals, Inc., et al., Case No.:22-17842-PDR, SECOND SUPPLEMENTAL NOTICE OF (I) EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED IN CONNECTION WITH A SALE OF THE DEBTORS' ASSETS AND (II) THE PROPOSED CURE AMOUNTS WITH RESPECT THERETO.

(vii) Form 1120-S, U.S. Income Tax Return for an S Corporation, Vital Pharmaceuticals, Inc. (Tax year 2021).

(viii) Form 1120-S, U.S. Income Tax Return for an S Corporation, Vital Pharmaceuticals, Inc. (Tax year 2020).

(ix) Form 1120-S, U.S. Income Tax Return for an S Corporation, Vital Pharmaceuticals, Inc. (Tax year 2019).

(x) Schedule K-1 (Form 1120-S), Shareholder's Share of Income, Deductions, Credits, etc., John H. Owoc (Tax year 2021).

(xi) [ECF No. 1559] In re: Vital Pharmaceuticals, Inc., *et al.*, Case No.:22-17842-PDR, Monthly Operating Report (Period ending 05/31/2023).

(d) I have also considered the following authorities outside of those materials which were provided to me:

(i) I.R.C. Section 1, generally.

(ii) I.R.C. Section 11, generally.

(iii) I.R.C. Section 108, generally.

(iv) I.R.C. Section 1001, generally.

(v) I.R.C. Section 1060, generally.

(vi) I.R.C. Section 1245, generally.

(vii) I.R.C. Section 1250, generally.

(viii) I.R.C. Section 1361, generally.

(ix) I.R.C. Section 1362, generally.

   (x)  I.R.C. Section 1363, generally.

   (xi)  I.R.C. Section 1366, generally.

   (xii)  Treasury Regulation Section 1.1001-2, generally.

   (xiii)  Treasury Regulation Section 1.338-6, generally.

   (xiv)  Bloomberg Tax – Portfolio 791-1st: Corporate Bankruptcy — Special Topics.

   (xv)  Opening Brief for the Appellant United States of America. In re: The Majestic Star Casino, LLC, *et al.*, Debtors. The Majestic Star Casino, LLC, et al., Plaintiffs/Appellees, v. Barden Development, Inc.; the United States of America on behalf of the Internal Revenue Service; John M. Chase, Jr., as Personal Representative of Don H. Barden, Defendants/Appellants., 2012 WL 5893859.

   (xvi)  Reply Brief for the Appellant United States of America. In re: THE MAJESTIC STAR CASINO, LLC, et al., Debtors. The Majestic Star Casino, LLC, et al., Plaintiffs/Appellees, v. Barden Development, Inc.; the United States of America on behalf of the Internal Revenue Service; John M. Chase, JR., as Personal Representative of Don H. Barden, Defendants/Appellants., 2013 WL 431379.

4.  RESERVATION OF RIGHT TO SUPPLEMENT

  This report summarizes the opinions I have reached to date. I reserve the right to render additional updates, supplements or amendments to this report, including but not limited to, based on information or discovery made known to me after the date of this report.

Dated: July 24, 2023

              */s/ Adi Rappoport*
              Adi Rappoport