# **JOINT EXHIBIT 7**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                              Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]          Case No.: 22-17842-PDR

Debtors.                                                  (Jointly Administered)

_____/

**DEBTORS' MOTION FOR AN ORDER (I) APPROVING (A) BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) PROCEDURES FOR THE DEBTORS' ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (C) THE FORM AND MANNER OF NOTICE OF THE SALE HEARING, ASSUMPTION PROCEDURES, AND AUCTION RESULTS, (D) DATES FOR AN AUCTION AND SALE HEARING, (E) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL CLAIMS, LIENS, LIABILITIES, RIGHTS, INTERESTS AND ENCUMBRANCES, AND (F) THE DEBTORS' ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (II) AUTHORIZING THE DEBTORS TO PROVIDE BID PROTECTIONS, AND (III) GRANTING RELATED RELIEF**

In support of this motion (this "<u>Motion</u>"), the above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") respectfully state as follows:[2]

**<u>DISCLOSURES UNDER BANKRUPTCY RULES, LOCAL RULES, AND GUIDELINES</u>**

Pursuant to Local Rule 6004-1(B), the Debtors submit the following summary of the material terms of the proposed sale.

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] The Debtors reserve the right to submit a declaration in support of the entry of the Bidding Procedures Order (as defined herein) in advance of the hearing on this Motion.

| **Material Provisions** | **Summary Description[3]** |
|---|---|
| Purchaser/Purchase Price | The ultimate purchaser of the Debtors' Assets is unknown at this time, and the Debtors have not entered into any Stalking Horse Agreement. The Debtors and their advisors have been conducting and will continue to conduct a marketing process for a sale or other transaction involving the Debtors and their Assets, in connection with which the Debtors will seek the submission of Qualified Bids. The Debtors reserve the right to enter into a Stalking Horse Agreement as discussed below, and any such agreement will be subject to Court approval as set forth herein and in the Bidding Procedures Order. |
| Competitive Bidding | The proposed sale of the Debtors' Assets is subject to competitive bidding and, if necessary, an Auction. |
| Deadline to file the Stalking Horse Selection Notice and seek Court approval of proposed Bid Protections (if any) | March 13, 2023 at 11:59 p.m. |
| (a) Deadline to object to designation of Stalking Horse Bidder and/or proposed Bid Protections<br><br>(b) Contract Objection Deadline (other than any objections based on adequate assurance of future performance, or objections subject to a later deadline pursuant to the Assumption and Assignment Procedures)<br><br>(c) Sale Objection Deadline (other than any objection based on the manner in which the Auction was conducted or the designation of the Successful Bid or Backup Bid) | March 20, 2023 at 4:00 p.m. |
| Bid Deadline | April 11, 2023 at 12:00 p.m. |
| Selection of Starting Bid for Auction | April 14, 2023 at 4:00 p.m. |
| Auction (if necessary) | April 17, 2023 at 10:00 a.m. |
| Minimum Bid | In the event a Stalking Horse Bidder is designated, each Bid must exceed (a) the Stalking Horse Bid (as determined by the |

---

[3] Capitalized terms used in this chart have the meanings ascribed to such terms in this Motion or the Bidding Procedures (as defined herein), as applicable.

| Material Provisions | Summary Description[3] |
|---|---|
| | Debtors in consultation with the Consultation Parties), *plus* (b) the amount of the Bid Protections payable to such Stalking Horse Bidder, *plus* (c) the minimum bid increment of $10 million (or such other amount as the Debtors may determine in consultation with the Consultation Parties, which amount may be higher or lower than $10 million). |
| Overbid Amount | Subsequent Bids at the Auction, including any Bids by any Stalking Horse Bidder, will be binding and irrevocable and must (a) be made in minimum increments of $10 million (or such other amount as the Debtors may determine in consultation with the Consultation Parties, which amount may be higher or lower than $10 million) of additional value, if applicable and (b) otherwise satisfy the requirements for a Qualified Bid set forth in the Bidding Procedures (provided that the Bid Deadline will not apply). |
| Deadline to object to (i) conduct of the Auction, (ii) the identity of the Successful Bidder or Back-Up Bidder, and (iii) adequate assurance of future performance by the Successful Bidder or Back-Up | 4:00 p.m. on the date that is three (3) business days prior to the commencement of the Sale Hearing. |
| Proposed Sale Hearing | April 26, 2023. |
| Stalking Horse Selection | The Debtors reserve the right, in the exercise of their business judgment and in consultation with the Consultation Parties, to: (a) select one or more Bidders to act as stalking horse bidder(s) in connection with a Sale Transaction and enter into an asset purchase agreement with respect to a Sale Transaction with such stalking horse bidder (which shall be binding, non-contingent, and accompanied by a Good Faith Deposit), (b) provide a breakup fee, and/or (c) expense reimbursement, all as reasonably acceptable to the Debtors, after consultation with the Consultation Parties, on notice to parties in interest (who shall have an opportunity to object) and subject to entry of an order of this Court approving same, all as set forth in the Bidding Procedures Order. |

| Material Provisions | Summary Description[3] |
|---|---|
| Good Faith Deposit | Each Bid must be accompanied by a cash deposit (made by wire transfer or certified or cashier's check) equal to $50 million. |
| Transfer of Personally Identifiable Information | The Debtors maintain certain personally identifiable information with respect to their customers, and will take all appropriate measures to insure and maintain the confidentiality of such information in connection with the sale hereunder. |
| Potential Lienholders | Truist Bank, DeLage Landen Financial Services, Inc., TFG-Leasing Fund III, LLC, Crown Equipment Corporation, Canon Financial Services, Inc., Webbank, Americredit Financial Services, Inc. d/b/a GM Financial, Belvac Production Machinery, Inc., Centurylink Communications, LLC, GreatAmerica Financial Services Corporation, Hitachi Capital America Corp., The Huntington National Bank, Cryo-Lease, LLC, Stellar Group, Inc., HACI Mechanical Contractors, Inc., Faith Technologies, Inc., Fabco Metal Products, LLC, Hardrock Concrete Placement Co., Inc., Heavy Equipment Movers & Installation, Inc., Integrated Masonry, ISEC, Inc., Trench Shore Rentals, and Nexus Steel, LLC. |

## RELIEF REQUESTED

1.      By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Bidding Procedures Order"):

      i.      approving the proposed bidding procedures attached as **Exhibit 1** to the Bidding Procedures Order (the "Bidding Procedures") by which the Debtors will solicit and select the highest or otherwise best offer for the sale of the Debtors' assets (the "Assets")[4] through either (i) a sale or sales under section 363(b) of the Bankruptcy Code (each, a "Sale Transaction") or (ii) a transaction through a plan of a reorganization (a "Restructuring Transaction") (each of a Sale Transaction and a Restructuring Transaction, a "Transaction");

---

[4] The Bidding Procedures also provide that a bid may contemplate the acquisition of assets owned by certain non-Debtors.

4

  ii.   subject to the notice and objection procedures described herein, authorizing the Debtors to provide Bid Protections (as defined herein) to potential stalking horse bidder(s) in connection with the Transaction (each, a "Stalking Horse Bidder");

  iii.   establishing the procedures (the "Assumption and Assignment Procedures") related to the potential assumption and assignment of certain of the Debtors' executory contracts and unexpired leases (the "Assigned Contracts"), including, but not limited to, determining the cure costs that the Debtors believe must be paid to cure all prepetition defaults under each Assigned Contract (the "Cure Amount");

  iv.   approving the form and manner of (i) notice of the Auction (as defined herein) and Sale Hearing (as defined herein) (the "Sale Notice"), substantially in the form attached as **Exhibit 2** to the Bidding Procedures Order, (ii) notice of the Assumption and Assignment Procedures (the "Assumption Notice"), substantially in the form attached as **Exhibit 3** to the Bidding Procedures Order, and (iii) the Post-Auction Notice (as defined herein), substantially in the form attached as **Exhibit 4** to the Bidding Procedures Order;

  v.   scheduling dates for an auction if the Debtors receive more than one Qualified Bid (as defined herein) (the "Auction") and a hearing to consider the approval of the Transaction (the "Sale Hearing"); and

  vi.   granting related relief.

  2.  The Debtors request that the Bidding Procedures Order establish certain dates and deadlines, subject to extension and other modifications by the Debtors in their reasonable discretion and in consultation with the Consultation Parties.[5]  Such proposed dates and deadlines are set forth on **Exhibit B** attached hereto.[6]

---

[5] Each "Consultation Party," and collectively, the "Consultation Parties" means: (i) Truist Bank, in its capacities as administrative agent under the Debtors' prepetition secured credit facility and debtor-in-possession credit facility (the "DIP Facility") (in such capacities, the "Agent"), and the Agent's counsel and financial advisor; and (ii) counsel, investment banker, and financial advisor to the Committee (as defined herein); *provided*, that no person or entity that constitutes a Potential Bidder (as defined in the Bidding Procedures), an Acceptable Bidder (as defined in the Bidding Procedures), a Qualified Bidder (as defined herein), a Stalking Horse Bidder (as defined herein), a Successful Bidder (as defined herein), or a Back-Up Bidder (as defined in the Bidding Procedures) (as determined by the Debtors, in their reasonable discretion and in consultation with the Committee) shall be deemed a Consultation Party for so long as such person constitutes a Potential Bidder, an Acceptable Bidder, a Qualified Bidder, a Stalking Horse Bidder, a Successful Bidder, or a Back-Up Bidder.

[6] The Debtors will promptly notify all known interested parties of any such extensions or modifications.

3.      Additionally, in the event the Debtors pursue a Sale Transaction, by this Motion, the Debtors seek entry of an order (the "Sale Order"), the form of which will be filed no later than February 20, 2023: (i) authorizing (a) the sale of the Assets to the Successful Bidder (and, if necessary, the Back-Up Bidder) free and clear of liens, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and (b) the assumption and assignment of certain Assigned Contracts; and (ii) granting related relief.[7]

## JURISDICTION

4.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).

5.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

6.      The statutory bases for the relief sought in this Motion are (i) sections 105, 363, 365, 503, and 507 of title 11 of the United States Code (the "Bankruptcy Code") and (ii) rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

7.      On October 10, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

8.      The Debtors are operating their businesses and managing their affairs as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.

9.      For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* [ECF No. 26] (the "First Day Declaration") filed on the Petition Date.

---

[7]  In addition, in the event the Debtors pursue a Sale Transaction, they expect to be required to change their names and will seek approval, pursuant to the Sale Order, of such name changes and corresponding relief to (i) change the dockets of these chapter 11 cases to reflect the new names of the Debtors, and (ii) revise the caption of the above-captioned chapter 11 cases in connection therewith.

10.     On November 1, 2022, the Office of the United States Trustee (the "U.S. Trustee")

appointed an Official Committee of Unsecured Creditors (the "Committee") in these chapter 11

cases [ECF No. 245].  On November 23, 2022, the U.S. Trustee reconstituted the Committee [ECF

No. 400].

## PRELIMINARY STATEMENT

11.     While this Motion seeks entry of an order formally establishing procedures for a

competitive sale and auction process, the Debtors' marketing process is already well underway,

and is robust.  As part of that process, the Debtors have solicited proposals from financial and

strategic investors/acquirers for a sale, financing, or other transaction that will maximize the value

of the Debtors' assets.  Specifically, at the direction of the Debtors' boards of directors, the

Debtors' investment banker, Rothschild & Co. U.S. Inc. ("Rothschild"), has contacted almost 150

potential counterparties, roughly 40 of whom entered into non-disclosure agreements to obtain

access to diligence.  Following execution of such non-disclosure agreements, the Debtors and their

advisors have engaged in regular dialogue with every interested party, responded to numerous

diligence requests, and held multiple live and recorded diligence sessions to assist potential bidders

in their evaluation of a Transaction.  In mid-January, the Debtors received non-binding indications

of interest from certain potential bidders, with whom the Debtors continue to negotiate while they

continue their efforts to create the most competitive dynamic possible and bring additional bidders

to the table.

12.     The Debtors submit that the proposed Bidding Procedures are reasonably designed

to promote a competitive sale and auction process and yield top dollar for the Debtors and/or their

assets.  The Bidding Procedures afford potential bidders sufficient time for diligence and

documentation (particularly in light of the Debtors' marketing process having been underway for

several months now), as well as flexibility with respect to the structure of a potential transaction

(*e.g.*, asset sales, or equity/debt financing transactions to be implemented through a plan).  The

Bidding Procedures will also facilitate the Debtors' efforts to secure a stalking horse bid – which the Debtors believe would maximize value by setting a "floor" for competitive bidding – by permitting the Debtors to grant bid protections (subject to certain notice and objection requirements) as an inducement. And at the same time, the Bidding Procedures ensure that all parties in interest (including parties asserting interests in the Debtors' assets and contract and lease counterparties) will be afforded sufficient notice of the relief the Debtors seek as part of the marketing process, and opportunities to object thereto. Finally, the Bidding Procedures were developed with input from the Debtors' DIP/Prepetition Lenders (as defined below) as well as the Committee, both of whom support the relief requested herein and, in fact, required the Debtors to seek this relief as part of the global settlement of certain objections to the Debtors' DIP Facility.

13. For all of these reasons and those set forth below, the Debtors submit that the Bidding Procedures should be approved.

## **THE PROPOSED BIDDING PROCEDURES**

14. The pertinent terms of the Bidding Procedures summarized below:[8]

i. On or prior to **April 11, 2023 at 12:00 p.m.** (Prevailing Eastern Time) (the "Bid Deadline"), bidders shall be required to submit written irrevocable bids (each, a "Bid") satisfying the qualification requirements in the Bidding Procedures (other than any requirements that are waived in accordance with the Bidding Procedures) ("Qualified Bids").

ii. A Bid may take the form of a Sale Transaction to be consummated either through a section 363 sale of all or substantially all of the Assets pursuant to an asset purchase agreement (an "APA"), or a Restructuring Transaction.

iii. The Debtors may (a) select one or more bidders to act as stalking horse bidder(s) in connection with a Sale Transaction (each, a "Stalking Horse Bidder," and the bid of a Stalking Horse Bidder a "Stalking Horse Bid"), (b) enter into a Stalking Horse Agreement with such Stalking Horse Bidder,

---

[8] This summary is qualified in its entirety by the Bidding Procedures attached as **Exhibit 1** to the Bidding Procedures Order and incorporated herein by reference. To the extent there are any conflicts between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern. Capitalized terms used but not otherwise defined in this summary shall have the meanings set forth in the Bidding Procedures.

and (c) grant Bid Protections[9] in connection with such Stalking Horse Bid, in accordance with the following procedures:

a) No later than **March 13, 2023 at 11:59 p.m.** (Prevailing Eastern Time), the Debtors shall file with this Court a notice of the Debtors' selection of the Stalking Horse Bidder and the Stalking Horse Bid (the "Stalking Horse Selection Notice"), which Stalking Horse Selection Notice shall describe any Bid Protections granted in connection with the Stalking Horse Bid and attach (i) a copy of a Stalking Horse Agreement that has been executed by, and is binding upon, the Stalking Horse Bidder and (ii) a proposed form of order authorizing and approving the Debtors' entry into and performance under the Stalking Horse Agreement (subject to the submission of higher or otherwise better offers for the Assets) and any Bid Protections being granted to the Stalking Horse Bidder (the "Stalking Horse Order").[10]

b) Parties in interest shall file objections (a "Stalking Horse Objection") to the designation of the Stalking Horse Bidder or approval of the proposed Bid Protections, no later than **March 20, 2023 at 4:00 p.m.** (Prevailing Eastern Time) (the "Stalking Horse Objection Deadline").

c) If one or more Stalking Horse Objections are timely filed, a hearing shall be held before this Court on or around March 31, 2023, to consider the relief requested in the proposed Stalking Horse Order.

d) If no Stalking Horse Objections are received, or in the event that all such Stalking Horse Objections are resolved consensually, the proposed Stalking Horse Order may be entered without a hearing, unless otherwise required by the Stalking Horse Bidder.

iv. To be considered a "Qualified Bid", any bidder (other than any Stalking Horse Bidder designated by the Debtors) must satisfy each of the bid requirements set forth in further detail in the Bidding Procedures (the "Bid Requirements"), as determined by the Debtors, in their reasonable judgment and in consultation with the Consultation Parties. The Bid Requirements include, but are not limited to, the following:

---

[9] As described in the Bidding Procedures, the Bid Protections may include: (i) a breakup fee, and/or (ii) the reimbursement of reasonable and documented out-of-pocket fees and expenses, all as reasonably acceptable to the Debtors, after consultation with the Consultation Parties, and as otherwise provided by the Bidding Procedures Order (collectively, the "Bid Protections").

[10] For avoidance of doubt, the Debtors reserve the right, in consultation with the Consultation Parties, to select a Bid in the form of a Restructuring Transaction to be the Stalking Horse Bid.

a)   <u>Purpose</u>. With respect to a proposed Sale Transaction, each bidder must state that the Bid includes an offer by such bidder to purchase some or all of the Assets, and identify the Assets with reasonable specificity and the particular liabilities, if any, such bidder seeks to assume. With respect to a proposed Restructuring Transaction, each bidder must propose a Plan Term Sheet for the Debtors that includes the treatment of the Debtors' creditors that complies with the requirements of the Bankruptcy Code.

b)   <u>Purchase Price</u>. With respect to a proposed Sale Transaction, each Bid must clearly set forth the purchase price to be paid. With respect to a proposed Restructuring Transaction, each Bid must clearly set forth the cash or other consideration to be furnished, including and identifying separately any cash and non-cash components; *provided*, that in the event of a Restructuring Transaction, the Plan Term Sheet must provide for the payment, in cash, of the full outstanding amounts due under the Debtors' prepetition secured credit facility.

c)   <u>Minimum Bid</u>. In the event a Stalking Horse Bidder is designated, each Bid must exceed (i) the Stalking Horse Bid (as determined by the Debtors in consultation with the Consultation Parties), *plus* (ii) the amount of the Bid Protections payable to such Stalking Horse Bidder, *plus* (iii) the minimum bid increment of $10 million (or such other amount as the Debtors may determine in consultation with the Consultation Parties, which amount may be higher or lower than $10 million).

d)   <u>Bid Deposit</u>. Each Bid must be accompanied by a cash deposit (made by wire transfer or certified or cashier's check) equal to $50 million (the "<u>Good Faith Deposit</u>").

e)   <u>No Contingencies</u>. Each Bid must contain a clear statement that it is not conditioned on any contingency, including, among others, on obtaining any of the following (i) financing, (ii) shareholder, board of directors, or other approvals, and/or (iii) the outcome or completion of a due diligence review by the bidder.

f)   <u>Adequate Assurance Information</u>. Each Bid must be accompanied by sufficient and adequate financial and other information (the "<u>Adequate Assurance Information</u>") to demonstrate, to the reasonable satisfaction of the Debtors, in consultation with the Consultation Parties, that such bidder (i) has the financial wherewithal and ability to consummate the Transaction covered by the Bid (the "<u>Closing</u>"), and

(ii) can provide adequate assurance of future performance in satisfaction of the requirements under section 365(f)(2)(B) of the Bankruptcy Code, and such bidder's willingness to perform, under any contracts that are proposed to be assumed and assigned to such party. The Adequate Assurance Information may be filed with this Court by the Debtors.

g) <u>Executed Agreement</u>. Each Bid contemplating a Sale Transaction must be based on the APA (in the absence of a Stalking Horse Agreement), or the Stalking Horse Agreement if one exists, and each Bid contemplating a Restructuring Transaction must be based on a Plan Term Sheet. Bids proposing a purchase of the Assets pursuant to an APA, must include a form of asset purchase agreement indicating any modifications proposed by such bidder to the form APA prepared by the Debtors or the Stalking Horse Agreement if one exists (the "<u>Modified APA</u>"), including those changes related to the purchase price. Bids proposing a Plan Term Sheet must describe in reasonable detail the terms and conditions of such Restructuring Transaction and the treatment of various classes of creditor claims that complies with the applicable requirements of the Bankruptcy Code. Each Bid must also identify any non-Debtor assets to be acquired by such bidder in connection with or as contemplated by such Bid and the process to acquire such assets and accompanying timeline.

v. The lenders under the Debtors' prepetition secured credit facility and debtor-in-possession credit facility (the "<u>DIP/Prepetition Lenders</u>") with the Agent, shall have the right, subject in all respects to the Bankruptcy Code and other applicable law, to credit bid all or any portion of their allowed secured claims in any Sale Transaction of the Assets constituting the collateral of such lenders under the prepetition secured credit facility at the Auction to the extent provided in section 363(k) of the Bankruptcy Code or other applicable law, in accordance with the applicable provisions of the documents governing such debt obligations.

vi. If more than one Qualified Bid is received by the Bid Deadline, the Debtors will conduct the Auction with respect to the Debtors' Assets pursuant to the terms and conditions set forth in the Bidding Procedures. The Auction will commence on **April 17, 2023, at 10:00 a.m.** (Prevailing Eastern Time), or such later time the Debtors reasonably determine at: (a) the offices of Latham & Watkins LLP, located at 1271 Avenue of the Americas, New York, New York 10020; (b) telephonically; or (c) by video via Zoom, or other place (or by such other electronic means) as the Debtors reasonably determine; *provided*, that the Debtors timely notify all Qualified Bidders

and other invitees of the time and place of the Auction in accordance with the Bidding Procedures.[11]

    vii.    Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable business judgment and in consultation with the Consultation Parties, will identify the Successful Bid, which will be determined by considering, among other things: (a) the type and amount of Assets sought to be acquired in the Bid or Bids and whether such Assets should or can be severed from other Assets (whether subject to competing Bids or otherwise), (b) the total expected consideration to be received by the Debtors and the expected net benefit to the estates, in each case, taking into account any Stalking Horse Bidder's rights to any Bid Protections, (c) the Qualified Bidder's or Qualified Bidders' ability to close a transaction and the timing thereof (including any anticipated delays to Closing and the cost to the Debtors of such delays), and other matters affecting the execution risk associated with a particular Bid or Bids, (d) the impact on customers, vendors, and employees, (e) the certainty of the Debtors being able to consummate a successful Transaction, and (f) any other criteria, including the Evaluation Criteria, as may be considered by the Debtors in their reasonable business judgment (including any considerations raised by the Consultation Parties that the Debtors determine, in their reasonable business judgment, are pertinent to the determination of the highest or otherwise best Bid).

15.    The Debtors believe that the Bidding Procedures will maximize value by promoting flexibility in structuring bids, offering stalking horse bid protections, and with respect to modifying the Bidding Procedures themselves as may be necessary or appropriate to ensure that the process yields the best result. The Bidding Procedures also make clear that the process will at all times be conducted in accordance with the Debtors' (and their officers' and directors') fiduciary duties.

## THE SALE NOTICE

16.    The Debtors request that this Court approve the form of Sale Notice attached as **Exhibit 2** to the Bidding Procedures Order. The Sale Notice provides parties in interest with notice of, among other things: (a) the Bid Deadline, (b) the time and place of the Auction, (c) the date and time of the Sale Hearing, and (d) the Sale Objection Deadline, Contract Objection Deadline, and Post-Auction Sale Objection Deadline (each as defined below). The Debtors submit that

---

[11] For the avoidance of doubt, the Debtors may also conduct more than one Auction with respect to non-overlapping material portions of the Debtors' Assets.

service of the Sale Notice as set forth below is proper and sufficient to provide notice of, among other things, the Auction, the Sale Objection Deadline, and the Sale Hearing to all parties in interest.

17.     Within three (3) business days following the entry of the Bidding Procedures Order, the Debtors will serve by ECF notification and first class mail, copies of: (i) the Bidding Procedures Order, (ii) the Bidding Procedures, and (iii) the Sale Notice upon the following entities: (a) to the best knowledge of the Debtors' management, all entities that have expressed written interest in a Restructuring Transaction with respect to the Debtors or a Sale Transaction with respect to all or substantially all of the Debtors' Assets within the past six (6) months; (b) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Assets; (c) counsel to the Committee; (d) the Agent; (e) counsel to the Agent; (f) the Office of the United States Trustee for the Southern District of Florida (the "U.S. Trustee"); (g) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief granted herein; (h) the United States Attorney's office for the Southern District of Florida; (i) the Internal Revenue Service; (j) all parties entitled to notice pursuant to Bankruptcy Rule 2002; and (k) all known creditors of the Debtors, including their contract counterparties; *provided, however*, that to the extent email addresses are available for any of the foregoing parties, such parties may be served by email.[12]

18.     Furthermore, the Debtors shall publish the Sale Notice, as modified for publication, in the *Wall Street Journal* within eight (8) business days after the entry of the Bidding Procedures Order.  In addition, the Debtors may (i) publish the Sale Notice in additional publications as the

---

[12] With respect to serving all potential bidders previously identified or otherwise known to the Debtors, given the Debtors' confidentiality obligations to such bidders, and their interest in promoting a competitive process, the Debtors seek authority to file under seal that part of the service list providing the names and mailing addresses for potential bidders previously identified or otherwise known to the debtors that are served with the Sale Notice and the Bidding Procedures Order.

Debtors deem appropriate, and (ii) cause the Sale Notice to be posted on their case information website at https://cases.stretto.com/VitalPharmaceuticals (the "Case Website").

19.     The Debtors further request, pursuant to Bankruptcy Rule 9014, that objections, if any, to the proposed Transaction: (i) be in writing; (ii) state the basis of such objection with specificity; (iii) comply with the Bankruptcy Rules and the Local Bankruptcy Rules for the Southern District of Florida (the "Local Rules"); (iv) be filed with this Court on or before **4:00 p.m. (Prevailing Eastern Time) on March 20, 2023** (the "Sale Objection Deadline"); and (v) be served, so as to be received the same day as the objection is filed, upon: (a) the Debtors, c/o Vital Pharmaceuticals, Inc., 1600 N. Park Drive, Weston, FL 33326 (Attn: Greg Robbins (Greg.Robbins@bangenergy.com) and Gregg Metzger (Gregg.Metzger@bangenergy.com)); (b) bankruptcy co-counsel for the Debtors, Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004 (Attn: Andrew Sorkin (andrew.sorkin@lw.com)) and Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: Liza Burton (liza.burton@lw.com) and Jonathan Weichselbaum (jon.weichselbaum@lw.com)) and Berger Singerman LLP, 1450 Brickell Avenue, Unit 1900, Miami, FL 33131 (Attn: Jordi Guso (JGuso@bergersingerman.com) and Michael Niles (mniles@bergersingerman.com)); (c) the Agent, Truist Bank, 10500 Little Patuxent Parkway Suite 450, Columbia, MD 21046, Mail Code 420-20-01-00 (Attn: Jade Silver (jade.silver@truist.com)); (d) co-counsel to the Agent, Moore & Van Allen PLLC, 100 North Tryon Street, Suite 4700, Charlotte, NC 28202-4003 (Attn: Luis Lluberas (luislluberas@mvalaw.com), Steve Gruendel (stevegruendel@mvalaw.com), and Cole Richins (colerichins@mvalaw.com)) and Shutts & Bowen LLP, 200 South Biscayne Blvd., Suite 4100, Miami, FL 33131 (Attn: Aliette D. Rodz (ARodz@shutts.com), Peter Levitt (plevitt@shutts.com), Harris J. Koroglu (hkoroglu@shutts.com), and Martha M. Ferral (MFerral@shutts.com)); (e) the U.S. Trustee, 51 SW First Avenue, Room 1204, Miami, Florida

33130); and (f) co-counsel to the Committee, Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, NY 10020 (Attn: Jeffrey Cohen (jcohen@lowenstein.com), Eric Chafetz echafetz@lowenstein.com) and Lindsay Sklar (lsklar@lowenstein.com)) and Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, NJ 07068, (Attn: Erica Mannix (emannix@lowenstein.com)) and Sequor Law, P.A., 1111 Brickell Avenue, Suite 1250, Miami, FL 33131 (Attn: Leyza Blanco (lblanco@sequorlaw.com) and Fernando Menendez (fmenendez@sequorlaw.com)) (collectively, the "Objection Recipients").

## ASSUMPTION AND ASSIGNMENT PROCEDURES

20.  To facilitate the Transaction, the Debtors seek authority to assume and assign certain Assigned Contracts to the Successful Bidder in accordance with the Assumption and Assignment Procedures set forth below (the "Assumption and Assignment Procedures"). The Assumption and Assignment Procedures are as follows:

a.  On or prior to **February 20, 2023** (the "Assumption Notice Deadline"), the Debtors shall file with this Court, post on the Case Website, and serve on each counterparty (each, a "Counterparty," and collectively, the "Counterparties") to an Assigned Contract, the Assumption Notice.

b.  The Assumption Notice shall include, without limitation, a list of Assigned Contracts (the "Assigned Contract List") that may be assumed and assigned in connection with a Transaction, and the Cure Amount, if any, that the Debtors believe is required to be paid to the applicable Counterparty under sections 365(b)(1)(A) and (B) of the Bankruptcy Code for each Assigned Contract. If no Cure Amount is listed on the Assigned Contracts List for a particular Assigned Contract, the Debtors' asserted Cure Amount for such Assigned Contract shall be deemed to be $0.00. If a Counterparty objects to the Cure Amount or the assumption of its Assigned Contract on any basis other than the ability of the Successful Bidder to provide adequate assurance of future performance (an "Adequate Assurance Objection"), the Counterparty must file with this Court and serve on the Objection Recipients a written objection (a "Contract Objection") on or before **March 20, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "Contract Objection Deadline").

c.  Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and Local Rules; (iii) be filed with the Clerk of the Court on or before the Contract Objection Deadline, except as otherwise set forth below with respect to Assigned Contracts added to the Assigned Contracts

List (or for which the proposed Cure Amount is modified) after the Assumption Notice Deadline; (iv) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under sections 365(b)(1)(A) and (B) of the Bankruptcy Code for the applicable Assigned Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto; and (v) be served upon the Objection Recipients.

d. The Debtors reserve the right, and are authorized but not directed, to (i) add previously omitted Assigned Contracts to the Assigned Contracts List as executory contracts or unexpired leases that may be assumed and assigned to a Successful Bidder in accordance with the definitive agreement for a Sale Transaction, (ii) remove an Assigned Contract from the Assigned Contract List, or (iii) modify the previously stated Cure Amount associated with any Assigned Contract; *provided*, that up until the closing of the Sale Transaction, the Debtors may seek to reject any Assigned Contract included on the Assigned Contracts List if such Assigned Contract is not ultimately assigned to the Successful Bidder.

e. If, after the Assumption Notice Deadline (i) additional executory contracts or unexpired leases of the Debtors are determined to be Assigned Contracts in connection with such Sale Transaction, or (ii) any Cure Amounts associated with Assigned Contracts are modified, as soon as practicable thereafter, the Debtors shall file with this Court and serve, by overnight delivery, on the applicable Counterparties a supplemental or revised Assumption Notice, and such Counterparties shall file any Contract Objections not later than (a) the Contract Objection Deadline in the event that such Assumption Notice was filed and served at least ten (10) days prior to the Contract Objection Deadline, and (b) seven (7) days from the date such supplemental or revised Assumption Notice was filed and served in accordance with the above, in the event that such supplemental or revised Assumption Notice was filed and served less than ten (10) days prior to the Contract Objection Deadline. In the event that a supplemental or revised Assumption Notice was filed and served less than seven (7) days prior to the commencement of the Sale Hearing and an objection is filed that is not otherwise consensually resolved, then such objection will not be adjudicated at the Sale Hearing and will be set for a subsequent hearing.

f. As soon as practicable after the Auction and in any event no later than twenty-four (24) hours following the closing of the Auction, the Debtors shall file with this Court and serve, by overnight delivery, on the Counterparties the Post-Auction Notice substantially in the form attached as **Exhibit 4** hereto, identifying any Successful Bidder and Backup Bidder, and the Counterparties shall file any Adequate Assurance Objections not later than 4:00 p.m. (Prevailing Eastern Time) on the date that is three (3) business days prior to the commencement of the Sale Hearing (such

deadline, the "<u>Post-Auction Sale Objection Deadline</u>"), or, if applicable, any later deadline established pursuant to subparagraph 20(e) above.

g.    At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to the Successful Bidder of only those Assigned Contracts that have been selected by the Successful Bidder to be assumed and assigned (collectively, the "<u>Selected Assigned Contracts</u>"). The inclusion of an Assigned Contract on an Assumption Notice or the identification of such Assigned Contract as a Selected Assigned Contract will not (i) obligate the Debtors to assume any Assigned Contract listed thereon nor the Successful Bidder to take assignment of such Assigned Contract, or (ii) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease. The Debtors reserve any and all rights with respect to any Assigned Contracts that are not ultimately designated as Selected Assigned Contracts, and reserve the right to reject any Assigned Contract identified as a Selected Assigned Contract if such Assigned Contract is not ultimately assigned to the Successful Bidder.

h.    If no Contract Objection or Adequate Assurance Objection, as applicable, is timely received with respect to a Selected Assigned Contract: (i) the Counterparty to such Selected Assigned Contract shall be deemed to have consented to the assumption by the Debtors and assignment to Successful Bidder of the Selected Assigned Contract, and be forever barred from asserting any objection with regard to such assumption or assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder); (ii) any and all defaults under the Selected Assigned Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code upon payment of the Cure Amount set forth in the most recent Assumption Notice for such Selected Assigned Contract; and (iii) the Cure Amount set forth in the most recent Assumption Notice for such Selected Assigned Contract shall be controlling, notwithstanding anything to the contrary in such Selected Assigned Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Assigned Contract against the Debtors and their estates, the Successful Bidder, or the property of any of them, that existed prior to the entry of the order resolving the Contract Objections and the Sale Order.

i.    To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the Cure Amount required to be paid to the applicable Counterparty under sections 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "<u>Cure Dispute</u>"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Court; *provided, however*, that if the Contract Objection relates solely to a Cure Dispute, the

Selected Assigned Contract may be assumed by the Debtors and assigned to the Successful Bidder so long as the cure amount the Counterparty asserts is required to be paid under sections 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as may be agreed to by the Counterparty) is deposited in a segregated account by the Debtors pending this Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute. The Debtors and the Successful Bidder reserve their rights to remove an Assigned Contract from the Assigned Contract List or from any list of Selected Assigned Contracts based on the outcome of a Cure Dispute held at a hearing subsequent to the Sale Hearing or for any other reason.

21.     Any party failing to timely file a Contract Objection with respect to the assumption and assignment of any Assigned Contract or related Cure Amount specified on an Assumption Notice will be barred from objecting thereto, including asserting any additional cure or other default amounts against the Debtors or any of the Debtors' estates, or the Successful Bidder with respect to such Assigned Contract, and shall be deemed to consent to the Transaction and the assumption and assignment of such Assigned Contract assumed and assigned in connection therewith.

## BASIS FOR RELIEF REQUESTED

**A.    The Bidding Procedures Constitute a Valid and Reasonable Exercise of the Debtors' Business Judgment.**

22.     Maximization of proceeds received by a debtor's estate is one of the dominant goals of any proposed sale of estate property. *See In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004) (debtor-in-possession "had a fiduciary duty to protect and maximize the estate's assets"). In the hope of maximizing the value received by the estate, courts typically establish procedures that are intended to enhance competitive bidding by, among other things, setting forth the rules that will govern the auction process. *See, e.g., In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets... [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates"); *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) (bid

procedures should allow for "an open and fair public sale designed to maximize value for the estate").

23.     The Debtors believe that the Bidding Procedures represent a valid and reasonable exercise of their business judgment because they are designed to maximize the value received for the Assets or the Debtors' businesses by establishing a transparent, competitive, and fair bidding process.  Courts have consistently held that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets.  *See, e.g., In re Innkeepers USA Trust*, 448 B.R. 131, 146 (Bankr.  S.D.N.Y. 2011) ("the Debtors have appropriately exercised their business judgment in determining to... propose the revised Bidding Procedures"); *In re Integrated Resources, Inc.*, 147 B.R. 650, 656-7 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *see also In re Ashley Consulting, LLC*, 2015 WL 6848113, at *3 (Bankr. S.D.N.Y. Nov. 6, 2015) (noting, *in dicta*, that proposed bidding procedures are evaluated using the business judgment standard).

24.     To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing value and therefore are appropriate in the context of bankruptcy transactions.  *See, e.g., Integrated Resources*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Liberty Power Holdings, LLC*, Case No. 21-13797-SMG (Bankr.  S.D. Fla.  Aug. 26, 2021); *In re Aventura Hotel Properties, LLC*, Case No.  21-12374-BKC-RAM, (Bankr. S.D. Fla. July 27, 2021); *In re Ruden McClosky P.A.*, 2012 WL 668019, at *1 (Bankr.  S.D. Fla.  Feb 23, 2012) (approving bidding procedures that "are reasonably designed to maximize the value to be achieved" for the assets subject to the sale); *In re Dunhill Entities, L.P.*, 2010 WL 6982623, at

19

*1 (Bankr. S.D. Ala. Apr. 13, 2010) (approving bidding procedures that are "designed to maximize the Debtors' recovery on the Assets"); *In re Robb & Stucky Ltd. LLLP*, 2001 WL 36371214, at *1 (Bankr. M.D. Fla. Feb 18, 2001) (same); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets... [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

25. The Debtors developed the Bidding Procedures in consultation with their advisors, as well as the Committee and the DIP/Prepetition Lenders, and believe that the Bidding Procedures will promote active bidding from seriously interested parties and will maximize value for the benefit of the Debtors' estates, including by facilitating bids with different structures, and giving the Debtors the ability to offer Bid Protections to incentivize prospective stalking horse bidders, so that they can generate competition among the parties who have submitted indications of interest already (and any other interested parties who may emerge) to improve their bids well in advance of the Bid Deadline and Auction in the hope of becoming the Stalking Horse Bidder.

26. The Bidding Procedures and the Bid Requirements set forth therein also allow the Debtors to conduct the Auction (if necessary) in a controlled, fair, and transparent fashion. Auction participants must be deemed financially capable bidders who can demonstrate the ability to close a Transaction, thus providing the Debtors a degree of certainty and credibility with respect to the Auction process. The Bidding Procedures and Auction are also designed to ensure that the Assets will be sold for the highest or otherwise best possible consideration by subjecting the value of the Debtors and their Assets to market testing. The Debtors propose to hold the Auction on April 17, 2023, a timeline that the Debtors believe is more than sufficient given the marketing efforts the Debtors have already undertaken to date and will continue to undertake, as described herein.

27.     Significantly, maximizing the value of the Debtors' estates requires that the Debtors proceed as swiftly as possible to consummate the Transaction, thereby minimizing the incremental costs associated with these chapter 11 cases and preserving the value of the Debtors' businesses. The Bidding Procedures are designed to maximize the likelihood of a competitive bidding process with respect to a Transaction.

28.     Procedures to dispose of assets, similar to the proposed Bidding Procedures have been approved by bankruptcy courts in this and other jurisdictions. *See, e.g., In re Liberty Power Holdings, LLC*, Case No. 21-13797-SMG (Bankr. S.D. Fla. Aug. 26, 2021); *In re Aventura Hotel Properties, LLC*, Case No. 21-12374-BKC-RAM, (Bankr. S.D. Fla. July 27, 2021); *In re Just One More Restaurant Corp.*, Case No. 9:19-bk-1947 (Bankr. M.D. Fla. Feb. 25, 2020); *In re Bertucci's Holdings, Inc.*, Case No. 18-10894 (MFW) (Bankr. D. Del. May 7, 2018); *In re Saladworks*, Case No. 15-10327 (LSS) (Bankr. D. Del. Mar. 12, 2015); *In re TLO, LLC*, Case No. 13-20853-PGH (Bankr. S.D. Fla. Oct. 24, 2013); *In re Ruden McClosky P.A.*, Case No. 11-40603-RBR (Bankr. S.D. Fla. Nov. 8, 2011); *In re Global Energies, LLC*, 10-28935-BKC-RBR (Bankr. S.D. Fla. Oct. 21, 2010); *In re Fontainebleu Las Vegas Holdings, LLC*, Case No. 09-21481-AJC (Bankr. S.D. Fla. Nov. 24, 2009).

29.     Accordingly, the Debtors respectfully submit that this Court should approve the Bidding Procedures as a valid and reasonable exercise of the Debtors' business judgment.

**B.      <u>Credit Bidding Should Be Authorized.</u>**

30.     A secured creditor is allowed to "credit bid" the amount of its allowed claim in a sale under section 363 of the Bankruptcy Code. Section 363(k) of the Bankruptcy Code provides, in relevant part, that, unless the court for cause orders otherwise, the holder of an allowed claim secured by property that is the subject of the sale "may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property." 11 U.S.C. § 363(k). Even if a secured creditor is undersecured, as determined in

accordance with section 506(a) of the Bankruptcy Code, section 363(k) allows such creditor to bid the full face value of its claim for its collateral and does not limit the credit bid to the claim's secured portion. *See Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)*, 432 F.3d 448, 459 (3d Cir. 2006) (explaining that "[i]t is well settled among district and bankruptcy courts that creditors can bid the full face value of their secured claims under § 363(k)."); *In re Suncruz Casinos, LLC*, 298 B.R. 833, 839 (Bankr. S.D. Fla. 2003).

31. Pursuant to the Bidding Procedures, the DIP/Prepetition Lenders and the Agent are entitled to credit bid their claims for their respective collateral pursuant to section 363(k) of the Bankruptcy Code; *provided*, that (i) any such credit bid shall not impair or waive any challenge rights preserved pursuant to this Court's order approving the DIP Facility (the "<u>DIP Order</u>") or any parties' right to object to selection or approval of such credit bid based on such challenge rights or for good cause shown, and (ii) the Debtors, in consultation with the Committee, may take into account any such objection in evaluating such credit bid.

32. Because the DIP/Prepetition Lenders and the Agent hold claims that are secured by substantially all of the Assets, such creditors should be allowed to credit bid up to the full face amount of their secured claims, in order to purchase such assets and to have such credit bids be deemed to have the same value as the equivalent amount of cash.

**C.     <u>The Overbid Protections Are Appropriate Under the Circumstances.</u>**

33. The Bid Requirement that each Bid must exceed (i) the Stalking Horse Bid (as determined by the Debtors in consultation with the Consultation Parties), *plus* (ii) the amount of the Bid Protections payable to such Stalking Horse Bidder, *plus* (iii) the minimum bid increment of $10 million (or such other amount as the Debtors may determine in consultation with the Consultation Parties, which amount may be higher or lower than $10 million), is appropriate under the circumstances and will promote, rather than discourage, competitive overbidding at the Auction.

**D.    Providing the Debtors with Authority to Grant Bid Protections to the Extent Set forth in the Bidding Procedures Is Appropriate Under the Circumstances.**

34.    The provision of bid protections in a bidding process is appropriate under section 363(b) of the Bankruptcy Code so long as such payment is a valid exercise of a debtor's business judgment by providing a benefit to a debtor's estate.  *See In re Antaramian Properties*, 564 B.R. 762, 766 (M.D. Fla. 2016).  Under section 363(b), debtors may use, sell, or lease estate property outside of the ordinary court of business so long as they articulate a sound business reason for doing so.  *See, e.g., In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr.  S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr.  S.D.N.Y. 1983).  Furthermore, bid protections encourage a potential buyer to invest the time, money, and effort required to negotiate with a debtor's representatives, and to perform the necessary due diligence attendant to the acquisition of a debtor or a debtor's assets, despite the inherent risks and uncertainties of the chapter 11 process.

35.    To induce Stalking Horse Bidders to enter into Stalking Horse Agreements, and thus set a floor price for the Assets that may be tested in the marketplace, the Debtors may be required to provide Bid Protections.  In light of the benefit to the Debtors' estates that will be realized by having a signed Stalking Horse Agreement, enabling the Debtors to preserve the value of their estates and promote more competitive bidding, ample support exists for granting the Debtors authority to provide the Bid Protections, if required by a Stalking Horse Bidder.  To the extent the Debtors determine to offer any Bid Protections as described herein, the Debtors request that the order approving such Bid Protections provide that such payments will be (i) an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of sections 503(b) and 507 of the Bankruptcy Code, (ii) of substantial benefit to the Debtors' estates, and (iii) reasonable and appropriate in light of the efforts and the significant due diligence costs and expenses that will be expended by a Stalking Horse Bidder.

36.     Although the amount or extent of the Bid Protections is not known at this time, the Debtors do not intend to provide (and are not seeking authority to provide) Bid Protections for any bidder with an aggregate value (inclusive of any break-up fees and/or expense reimbursements) in excess of 3% of the proposed cash purchase price offered by such bidders.  Accordingly, any Bid Protections for which the Debtors seek approval will be consistent with the quantum of bid protections typically approved by other courts.  *See, e.g., In re Liberty Power Holdings, LLC*, Case No. 21-13797-SMG (Bankr.  S.D. Fla.  Aug. 26, 2021) (approving 2.75% breakup fee plus expense reimbursement); *In re Protective Products of America, Inc., et al.*, No. 10-10711-JKO (Bankr.  S.D. Fla. Jan. 19, 2010) (approving 4% break-up fee and expense reimbursement); *In re Arch Aluminum & Glass Co., Inc.*, 2009 WL 8189448 (Bankr. S.D. Fla. 2009) (approving 1.5% break-up fee plus expense reimbursement up to $800,0000); *In re Tousa, Inc.*, Case No. 08-10928-JKO (Bankr. S.D. Fla. Dec. 21, 2009) (approving 3% break-up fee); *In re Antaramian Properties*, 564 B.R. at 768 (citing *In re Sea Island Co.* 2010 WL 4393269, at *3 (Bankr.  S.D. Ga.  Sept. 15, 2010), for the proposition that a 3% breakup fee "constituted a fair and reasonable percentage of the proposed purchase price"); *In re Just One More Restaurant Corp.*, Case No. 9:19-bk-1947 (Bankr.  M.D. Fla.  Feb. 25, 2020) (court approves break-up fee and expenses reimbursement representing 3.05% of the purchase price); *In re HRI Holding Corp.*, Case No. 19-12415 (MFW) (Bankr.  D. Del.  Dec. 5, 2019) (authorizing break-up fee and expense reimbursement of approximately 3.75% of purchase price related to the sale of the Houlihan's restaurant chain); *In re RM Holdco LLC*, Case No. 18-11795 (MFW) (Bankr.  D. Del.  Sept. 6, 2018) (authorizing break-up fee of 3% of the purchase price in the chapter 11 bankruptcy case involving one of the largest full service Mexican casual dining restaurant chains with 80 restaurants located throughout the United States); *In re Bertucci's Holdings, Inc.*, Case No. 18-10894 (MFW) (Bankr.  D. Del.

May 7, 2018) (authorizing break-up fee and expense reimbursement of approximately 5.0% of purchase price).

37.     Furthermore, the Stalking Horse Selection Notice will provide parties in interest with notice of, and seven (7) days to object to, the terms of any Bid Protections.  If a party in interest timely objects to the Stalking Horse Bidder and/or the Bid Protections provided to such Stalking Horse Bidder, the Debtors will seek Court approval of the entry into the Stalking Horse Agreement, including approval of the Bid Protections provided thereunder, pursuant to the Stalking Horse Order.

38.     Thus, the Debtors request that this Court authorize the Debtors to provide Bid Protections to any designated Stalking Horse Bidder subject to the terms and conditions set forth in the Bidding Procedures.

**E.      The Form and Manner of the Notice and Related Sale Deadlines Should Be Approved.**

39.     The Debtors submit that the Sale Objection Deadline is reasonable and appropriate under the circumstances.  Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with twenty-one (21) days' notice of the proposed sale.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the deadline for filing any objections to the relief requested herein.  As noted above, the proposed Sale Hearing on or around April 26, 2023 (subject to this Court's availability) is more than twenty-one (21) days from notice of this Motion (and service of the Sale Notice), and the proposed March 20, 2023 Sale Objection Deadline has been scheduled more than seven (7) days in advance of the Sale Hearing. Parties in interest will receive notice of the Sale Objection Deadline and time and place of the Auction when the Sale Notice is served after entry of the Bidding Procedures Order.  As such, the Debtors submit that the proposed Sale Objection Deadline meets the requirements of the Bankruptcy Rules and the Local Rules.

40.     The Debtors further submit that the notice to be provided through the Sale Notice and the method of service proposed herein constitute good and adequate notice of the Bidding Procedures and the subsequent proceedings related thereto, including the proposed dates for (i) the Bid Deadline; (ii) the Sale Objection Deadline; (iii) the Contract Objection Deadline; and (iv) the Sale Hearing.  Therefore, the Debtors respectfully request the Court approve the proposed notice procedures.

**F.      The Assumption and Assignment Procedures Provide Contract Counterparties with Adequate Notice and Opportunity to Object and Should be Approved.**

41.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a).  The Debtors submit that the proposed Assumption and Assignment Procedures are consistent with those approved in other cases and, in these cases, appropriate and reasonably tailored to provide each Counterparty with adequate notice of the proposed assumption and assignment of the applicable Assigned Contract, as well as proposed Cure Amounts, if applicable.  Each Counterparty will then be given an opportunity to object to such notice.  The Assumption and Assignment Procedures further provide that, in the event an objection is not resolved, this Court will determine related disputed issues (including any adequate assurance of future performance issues).

42.     In addition, the terms of the Bidding Procedures (including the requirement to demonstrate financial wherewithal at the bid qualification stage) ensure that any Successful Bidder will have financial resources that are more than sufficient to perform under any Assigned Contracts it seeks to have assumed and assigned by the Debtors.  Moreover, if necessary, the Debtors will adduce evidence at the Sale Hearing on any objection demonstrating the financial wherewithal of the Successful Bidder, and their willingness and ability to perform under the Assigned Contracts to be assigned to them.  The Sale Hearing therefore will provide this Court and other interested

parties ample opportunity to evaluate and, if necessary, challenge, the ability of the Successful Bidder to provide adequate assurance of future performance with respect to the Assigned Contracts to be assumed and assigned.

43.     For the reasons discussed herein, the Assumption and Assignment Procedures comport with the requirements of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006, and the Counterparties' rights to adequate assurance are unaffected and fully preserved.  The Debtors respectfully submit that the notices required by the Assumption and Assignment Procedures are sufficient to assume and assign the Assigned Contracts because they are reasonably tailored to provide notice and an opportunity to object to the proposed assumption and assignment. Thus, the Debtors submit that the Assumption and Assignment Procedures should be approved.

**G.     If a Sale Transaction is Ultimately Pursued, Such Transaction Will Be Appropriate and in the Best Interests of the Debtors' Estates.**

44.     Section 363(b) of the Bankruptcy Code provides that a debtor may sell property of the estate outside the ordinary course of business after notice and a hearing.  Courts have consistently held that a debtor's sale or use of its assets outside the ordinary course of business should be approved if the debtor can demonstrate "some articulated business justification."  *See In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983).

45.     The Debtors have a sound business justification for running a competitive bidding process for a Sale Transaction consistent with the Bidding Procedures.  Such competitive bidding process will ensure that the Debtors obtain the best possible value for their assets, which in turn, will benefit the Debtors' estates and their stakeholders.  As such, the Debtors' determination to

run a competitive bidding process for a Sale Transaction as provided for in the Bidding Procedures is a valid and sound exercise of the Debtors' business judgment.

### i. The Sale Transaction Has Been Proposed in Good Faith and Without Collusion, and the Debtors' Evidence Will Demonstrate that the Successful Bidder Will Be a "Good Faith Buyer"

46.     Pursuant to the Bidding Procedures, the Successful Bidder will be the bidder that the Debtors' determine, in their reasonable business judgment and after consultation with the Consultation Parties, provides the best or otherwise highest offer for the Debtors or their Assets after the conclusion of a Court-approved, competitive, fair, and transparent process.  In advance of the Sale Hearing, the Debtors will provide evidence of the Successful Bidder's good faith to demonstrate that (a) the Successful Bidder is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code and (b) the terms of the ultimate purchase agreement with such Successful Bidder was negotiated at arms'-length and in good faith without any collusion or fraud.

47.     Accordingly, the Debtors intend to show at the Sale Hearing (if any) that the Successful Bidder is entitled to the full protections of section 363(m) of the Bankruptcy Code.

### ii. The Sale Transaction Should Be Approved "Free and Clear" Under Section 363(f) of the Bankruptcy Code

48.     Section 363(f) of the Bankruptcy Code permits the Debtors to sell assets free and clear of all liens, claims, interests, charges, and encumbrances (with any such liens, claims, interests, charges, and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).  As section 363(f) is stated in the disjunctive, when proceeding pursuant to section 363(f), it is only necessary to meet one of the five conditions of section 363(f).  *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met,

the debtor has the authority to conduct the sale free and clear of all liens."); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

49.     The Debtors intend to demonstrate at the Sale Hearing that they have satisfied section 363(f) of the Bankruptcy Code with respect to the sale free and clear of any interests in the Debtors' property.

iii.     **Assumption and Assignment of Assigned Contracts Should Be Approved**

50.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Courts employ the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract or unexpired lease. *See, e.g.*, *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (assumption or rejection of a lease "will be a matter of business judgment by the bankruptcy court"); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that a debtor's decision to assume or reject executory contract is governed by business judgment standard and may only be overturned if decision is product of bad faith, whim, or caprice). The "business judgment" test in this context only requires that a debtor demonstrate that assumption or rejection of an executory contract or unexpired lease benefits the estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989).

51.     Here, the Court should approve the decision to assume and assign the executory contracts and unexpired leases in connection with a Sale Transaction as a sound exercise of the Debtors' business judgment. The potential Assigned Contracts include those executory contracts and unexpired leases that are necessary to run the Debtors' business, and for which the Successful Bidder will be providing value. It is unlikely that any buyer would want to acquire any of the Debtors' Assets on a going-concern basis unless the Assigned Contracts needed to conduct the

business and manage the day-to-day operations were included in the proposed transaction. As such, making the potential Assigned Contracts available for assignment is essential to inducing the best offer for the Assets. Accordingly, the Debtors submit that the assumption and assignment of the Assigned Contracts by way of the Assumption and Assignment Procedures described herein should be approved as an exercise of their business judgment.

52.     Upon finding that a debtor has exercised its business judgment in determining that assuming an executory contract or unexpired lease is in the best interest of its estate, courts must then evaluate whether the assumption meets the requirements of section 365(b) of the Bankruptcy Code that a debtor (i) cure, or provide adequate assurance of prompt cure of, prepetition defaults in the executory contract, (ii) compensate parties for pecuniary losses arising therefrom, and (iii) provide adequate assurance of future performance thereunder. 11 U.S.C. § 365. Section 365 "attempts to strike a balance between two sometimes competing interests, the right of the contracting nondebtor to get the performance it bargained for and the right of the debtor's creditors to get the benefit of the debtor's bargain." *Matter of Luce Indus., Inc.*, 8 B.R. 100, 107 (Bankr. S.D.N.Y. 1980).

53.     The Debtors submit that the statutory requirements of section 365(b)(1)(A) of the Bankruptcy Code will be promptly satisfied. The proposed Bidding Procedures Order and Assumption and Assignment Procedures provide a clear process by which parties will be able to resolve disputes over cure amounts or other defaults, which will afford counterparties a meaningful opportunity to challenge the Debtors' proposed cure amounts. Once established, the cure amounts will be paid (either by the Successful Bidder or the Debtors). Thus, the Bidding Procedures and Assumption and Assignment Procedures ensure that all defaults will be cured in connection with the assignment of the Assigned Contracts, as required by section 365(b)(1)(A).

54.     Similarly, the Debtors submit that Counterparties will receive adequate assurance of future performance under the Assigned Contracts, as required by section 365(b)(1)(C) of the Bankruptcy Code.  "The phrase 'adequate assurance of future performance' adopted from section 2-609(1) of the Uniform Commercial Code, is to be given a practical, pragmatic construction based upon the facts and circumstances of each case."  *Matter of U.L. Radio Corp.*, 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982).   Although no single solution will satisfy every case, the required assurance does not require an absolute guarantee of performance.  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.  *Luce Indus.*, 8 B.R. at 107; *see also In re Great Atl. & Pac. Tea Co., Inc.*, 472 B.R. 666, 674 (S.D.N.Y. 2012) ("A debtor need not provide 'an absolute guarantee of performance.'").

55.     The Debtors intend to demonstrate at the Sale Hearing that the requirements for assumption and assignment of certain Assigned Contracts to the Successful Bidder will be satisfied.   As required by the Bidding Procedures, the Debtors will evaluate the financial wherewithal of potential bidders before designating such party a Qualified Bidder (*e.g.*, financial credibility, willingness and ability of the interested party to perform under the Assigned Contracts). Further, all counterparties will be provided with notice of the proposed assumption and assignment and will have adequate time and opportunity to object to the assumption or proposed cure amount or otherwise be heard with respect thereto.

**H.     If a Sale Transaction is Pursued the Debtors Should be Authorized to Change Their Names**

56.     In the event the Debtors consummate a Sale Transaction, the Successful Bidder will likely require the Debtors to discontinue the use of their current names (and any other trade names or "d/b/a" names) within a specified time period following the closing of the Sale Transaction and to change the name of the Debtors in these chapter 11 cases.  As such, the Debtors will seek,

pursuant to the Sale Order, approval to change the case dockets to reflect the Debtors' revised names and revise the caption of the lead case in connection therewith in order to avoid any confusion or adverse impact to the Successful Bidder arising from association with the Debtors or these chapter 11 cases. The Debtors will include their revised names in the Sale Order, or file a notice on the docket of these chapter 11 cases identifying their revised names and the proposed new caption of the post-Sale Transaction Debtors' chapter 11 cases.

57. The Debtors submit that such relief will almost certainly be necessary pursuant to the terms of the asset purchase agreement with the Successful Bidder (in the event a Sale Transaction is consummated), to which the Debtors will have agreed to, and which the Court will be asked to approve at the Sale Hearing. No creditor or other party-in-interest will be prejudiced by such relief because the identity of the Debtors whose names will be changed will continue to be disclosed in the footnote to the caption on every subsequent pleading under an "f/k/a" designation, in addition to the last four digits of each Debtor's taxpayer identification number.

## RESERVATION OF RIGHTS

58. Nothing contained herein is intended or shall be construed as: (i) an admission as to the amount of, basis for, or validity of any claim against any of the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (ii) an impairment or waiver of any Debtor's or any other party in interest's right to dispute any claim against, or interest in, any Debtor, its property, or its estate on any grounds; (iii) a promise or requirement to pay any claim; (iv) an assumption, adoption, or rejection of any agreement, contract, or lease under section 365 of the Bankruptcy Code; (v) an implication or admission that any particular claim is of a type specified or defined in the Motion, or any order granting the relief requested by the Motion; (vi) an implication, admission, or finding as to the validity, enforceability, or perfection of any interest or encumbrance on the property of any Debtor or its estate; (vii) an impairment or waiver of any claims or causes

of action which may exist against any entity; or (viii) a waiver of any Debtor's or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

**NOTICE**

59.     The Debtors have provided notice of this Motion to (i) the U.S. Trustee; (ii) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (iii) the Agent; (iv) the Committee, (v) the United States Attorney's Office for the Southern District of Florida; (vi) the Internal Revenue Service; (vii) the United States Securities and Exchange Commission; (viii) the state attorneys general for states in which the Debtors conduct business; and (ix) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.   The Debtors submit that, under the circumstances, no other or further notice is required.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE,** the Debtors respectfully request that the Court enter the Bidding Procedures Order granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated:  January 27, 2023
   Miami, Florida

Respectfully submitted,

*/s/ Jordi Guso*

George A. Davis (admitted *pro hac vice*)
Liza L. Burton (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
   liza.burton@lw.com
   tj.li@lw.com
   brian.rosen@lw.com
   jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 2004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
   mniles@bergersingerman.com

*Co-Counsel for the Debtors and Debtors in Possession*

**Exhibit A**

**Proposed Bidding Procedures Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-17842-PDR |
| Debtors. | (Jointly Administered) |

_____/

**ORDER (I) APPROVING BIDDING
PROCEDURES, (II) AUTHORIZING THE DEBTORS TO
PROVIDE BID PROTECTIONS, AND (III) GRANTING RELATED RELIEF**

**THIS MATTER** came before the Court on _____, 2023 at _____

a.m./p.m. (the "Hearing"), in Fort Lauderdale, Florida, upon the motion [ECF No. ____] (the

"Motion")[2] filed by the above-captioned debtors and debtors-in-possession (collectively, the

"Debtors"), requesting the entry of an order: (i) approving the Bidding Procedures; (ii) establishing

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein have the meanings given to them in the Motion or the Bidding Procedures, as applicable.

1

the Assumption and Assignment Procedures; (iii) approving the form and manner of the Sale Notice, the Assumption Notice, and the Post-Auction Notice; (iv) scheduling dates for the Auction and the Sale Hearing; (v) authorizing the Debtors to provide Bid Protections (as defined herein); and (vi) granting related relief, all as more fully set forth in the Motion; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a Hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing established just cause for the relief granted herein; and upon all of the proceedings had before this Court and at the Hearing; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory bases for the relief sought in the Motion are: (i) sections 105, 363, 365, 503, and 507 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and (ii) Bankruptcy Rule 6006.

D.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Bidding Procedures Order is in the best interests of the Debtors and their respective estates, creditors, and all other parties-in-interest.

E.      The Debtors' notice of the Motion, the Hearing, and the proposed entry of this Bidding Procedures Order was adequate and sufficient under the circumstances of these chapter 11 cases, and such notice complied with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.  Accordingly, no further notice of the Motion, the Hearing, or this Bidding Procedures Order is necessary or required.

F.      The Debtors have demonstrated a sound business justification for this Court to grant the relief requested in the Motion, including, without limitation, to (i) approve the Bidding Procedures; (ii) establish the Assumption and Assignment Procedures; (iii) approve the form and manner of notice of all procedures and protections attached hereto; (iv) schedule dates for the Auction and Sale Hearing; (v) authorize the Debtors to provide the Bid Protections in accordance with the terms of this Bidding Procedures Order; and (vi) grant related relief as set forth herein. Such sound business justification, which was set forth in the Motion and on the record at the Hearing, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

G.      Under the circumstances, the Bidding Procedures, substantially in the form attached as **<u>Exhibit 1</u>** hereto, are fair, reasonable, and appropriate and designed to maximize the value of the Debtors' assets and estates for the benefit of all stakeholders.

3

H.     The Sale Notice, substantially in the form attached as **Exhibit 2** hereto, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of, among other things, (i) the proposed sale of the Assets, (ii) the Bidding Procedures, (iii) the date, time, and place of the Auction (if one is held), (iv) the Sale Objection Deadline, (v) and the Sale Hearing, and no other or further notice is required.

I.     The Assumption Notice, substantially in the form attached as **Exhibit 3** hereto, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of (i) the potential assumption and assignment of the Assigned Contracts in connection with a sale of the Assets and the related Cure Amounts, and (ii) the relevant deadlines and other requirements for objecting thereto, and no other or further notice is required.

J.     The Post-Auction Notice, substantially in the form attached as **Exhibit 4** hereto, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of any Successful Bid and Back-Up Bid, and no other or further notice is required.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is **GRANTED** to the extent set forth herein.

2.     Except as explicitly provided herein to the contrary, all objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled and denied on the merits with prejudice.

**Transaction Process Timeline**

3.     The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the timeline set forth in the

Bidding Procedures attached as **Exhibit 1** hereto; *provided*, that the Debtors may extend such dates in their reasonable discretion, and in consultation with the Consultation Parties.[3]

4.      The failure by a party to timely file an objection in accordance with this Bidding Procedures Order shall forever bar such party from asserting any objection to the Motion, entry of an order approving a Transaction, consummation of a Transaction, and the assumption and assignment of contracts and leases to the Successful Bidder in connection with the Transaction, and shall be deemed to constitute any such party's consent to entry of the applicable order, assumption, assignment, consummation of the Transaction and all other transactions related thereto; *provided*, that notwithstanding the anything to the contrary herein, any deadline to object to any chapter 11 plan proposed in these cases (including any plan incorporating a Restructuring Transaction) shall be established by separate order.

### The Bidding Procedures

5.      The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are incorporated herein and approved in their entirety.  The Bidding Procedures shall govern all Bids relating to any proposed Transaction.  The Debtors are authorized to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance therewith. The failure to specifically include or reference a particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of any such provision. The Debtors reserve the right, and are authorized (after consultation with the Consultation Parties),

---

[3] Each "Consultation Party," and collectively, the "Consultation Parties" means:  (i) Truist Bank, in its capacities as administrative agent under the Debtors' prepetition secured credit facility and debtor-in-possession credit facility (in such capacities, the "Agent"), and the Agent's counsel and financial advisor; and (ii) counsel, investment banker, and financial advisor to the Committee; *provided*, that no person or entity that constitutes a Potential Bidder, an Acceptable Bidder, a Qualified Bidder, a Stalking Horse Bidder, a Successful Bidder, or a Back-Up Bidder (each as defined in the Bidding Procedures) (as determined by the Debtors, in their reasonable discretion and in consultation with the Committee) shall be deemed a Consultation Party for so long as such person constitutes a Potential Bidder, an Acceptable Bidder, a Qualified Bidder, a Stalking Horse Bidder, a Successful Bidder, or a Back-Up Bidder.

to modify the Bidding Procedures in accordance with the Bidding Procedures and this Bidding Procedures Order.

6. Except as otherwise provided in the Bidding Procedures with respect to a Stalking Horse Bidder, no person or entity shall receive any break-up fee, expense reimbursement or other similar fees or payment, and by submitting a Bid, each Bidder is deemed to have waived its right to request or to file with this Court any request for expense reimbursement or any fee of any nature solely in connection with such Bid, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

7. Any deposit provided by a Qualified Bidder shall be held in a segregated account by the Debtors or their agent in accordance with the Bidding Procedures, and shall not become property of the Debtors' bankruptcy estates unless and until released to the Debtors pursuant to the terms of the Stalking Horse Agreement or order of this Court.

8. The Debtors may (i) determine which Qualified Bid is the highest or otherwise best Bid in accordance with the Bidding Procedures, in consultation with the Consultation Parties; (ii) at any time prior to entry of an order of this Court approving the Successful Bid, reject any Bid (other than a Stalking Horse Bid) that the Debtors determine, in consultation with the Consultation Parties, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code or the Bidding Procedures, or (c) contrary to the best interests of the Debtors' estates and their creditors; and (iii) prior to conclusion of any Auction, impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these chapter 11 cases.

9. To the extent any Bid contemplates the acquisition of assets owned by non-Debtors, which are not encumbered by the Agent's liens and/or security interests, the Committee and the

Agent reserve their rights to contest the allocation of the proceeds of any such resulting sale.

**Stalking Horse Bidder and Bid Protections**

10. The Debtors, in consultation with the Consultation Parties, are authorized, but not directed, to: (i) select a potential bidder to act as Stalking Horse Bidder(s), and enter into a Stalking Horse Agreement with each such Stalking Horse Bidder; (ii) provide a breakup fee (the "Breakup Fee"); and/or (iii) agree to reimburse reasonable and documented out-of-pocket fees and expenses (the "Expense Reimbursement" and, together with the Breakup Fee, the "Bid Protections"), all as reasonably acceptable to the Debtors, after consultation with the Consultation Parties, and subject to the terms and conditions set forth in this Bidding Procedures Order; *provided*, that absent a further order of this Court the aggregate value of any Bid Protections shall not exceed 3% of the cash purchase price under the Stalking Horse Agreement.

11. Nothing contained in this Bidding Procedures Order shall prohibit the Debtors from selecting a Bid in the form of a Restructuring Transaction to be the Stalking Horse Bid in accordance with the terms of the Bidding Procedures.

12. No later than **March 13, 2023 at 11:59 p.m.** (Prevailing Eastern Time), the Debtors shall file with this Court a notice of the Debtors' selection of the Stalking Horse Bidder and the Stalking Horse Bid (the "Stalking Horse Selection Notice"), which Stalking Horse Selection Notice shall describe any Bid Protections granted in connection with the Stalking Horse Bid and attach (i) a copy of a Stalking Horse Agreement that has been executed by, and is binding upon, the Stalking Horse Bidder and (ii) a proposed form of order authorizing and approving the Debtors' entry into and performance under the Stalking Horse Agreement (subject to the submission of higher or otherwise better offers for the Assets) and any Bid Protections being granted to the Stalking Horse Bidder (the "Stalking Horse Order").

13.     Parties in interest shall file objections (a "<u>Stalking Horse Objection</u>") to the designation of the Stalking Horse Bidder or approval of the proposed Bid Protections, no later than **March 20, 2023 at 4:00 p.m.** (Prevailing Eastern Time) (the "<u>Stalking Horse Objection Deadline</u>").  If one or more Stalking Horse Objections are timely filed, a hearing shall be held before this Court on or around March 31, 2023 to consider the relief requested in the proposed Stalking Horse Order.  If no Stalking Horse Objections are received, or in the event that all such Stalking Horse Objections are resolved consensually, the proposed Stalking Horse Order may be entered without a hearing, unless otherwise required by the Stalking Horse Bidder.

<u>Notice Procedures</u>

**A.**     **Sale Notice**

14.     The form of Sale Notice, substantially in the form attached as **<u>Exhibit 2</u>** hereto, is approved.  The Debtors are authorized to make non-substantive or immaterial changes to the Sale Notice or to fill in missing information, in each case to the extent not inconsistent with this Bidding Procedures Order, prior to service or publication of the Sale Notice.

15.     On or before three (3) business days after the entry of this Bidding Procedures Order, the Debtors will file the Sale Notice with this Court and shall serve the Sale Notice by first-class mail, postage prepaid, or, for those parties who have consented to receive notice by the ECF system, by ECF, upon: (i) to the best knowledge of the Debtors' management, all entities that have expressed written interest in a Sale Transaction with respect to all or substantially all of the Assets within the past six (6) months; (ii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon any of the Assets; (iii) counsel to the Committee; (iv) the Agent; (v) counsel to the Agent; (vi) the U.S. Trustee; (vii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief granted herein; (viii) the United States Attorney's office for the Southern District of Florida; (ix) the Internal

8

Revenue Service; (x) all parties entitled to notice pursuant to Bankruptcy Rule 2002; and (xi) all known creditors of the Debtors, including their contract counterparties; *provided*, *however*, that to the extent email addresses are available for any of the foregoing parties, such parties may be served by email.

16.     The Debtors are authorized to file under seal that part of the service list providing the names and mailing addresses for potential bidders previously identified or otherwise known to the debtors that are served with the Sale Notice and this Bidding Procedures Order.

17.     Service of the Sale Notice as described herein shall be deemed good and sufficient notice of the Transaction with respect to known interested parties.

18.     The Debtors are authorized and directed to publish the Sale Notice, as modified for publication, in the *Wall Street Journal* within eight (8) business days after the entry of this Bidding Procedures Order.  In addition, the Debtors are authorized, but not directed, to (i) publish the Sale Notice in additional publications as the Debtors deem appropriate, and (ii) cause the Sale Notice to be posted on the Case Website.

19.     Publication of the Sale Notice as described herein shall be good and sufficient notice of the Transaction with respect to all unknown creditors or other parties.

**B.     Assumption Notice**

20.     The Assumption Notice, substantially in the form attached as **Exhibit 3** hereto, is approved, and the Debtors are authorized to make non-substantive or immaterial changes to the Assumption Notice or to fill in missing information, in each case to the extent not inconsistent with this Bidding Procedures Order, prior to service of the Assumption Notice.

21.     Service of the Assumption Notice as provided herein shall be deemed good and sufficient notice of, among other things, the proposed assumption and assignment of the Assigned

Contracts, the applicable Cure Amounts related thereto, and the procedures for objecting thereto, and no other or further notice is necessary.

**C.      Post-Auction Notice**

22.      The form of Post-Auction Notice, substantially in the form attached as **Exhibit 4** hereto, is approved, and the Debtors are authorized to make non-substantive or immaterial changes to the Post-Auction Notice or to fill in missing information, in each case to the extent not inconsistent with this Bidding Procedures Order, prior to service of the Post-Auction Notice.

23.      As soon as practicable after the Auction (if any) and in any event no later than twenty-four (24) hours following the closing of the Auction, the Debtors shall file on the Court's docket and serve, by overnight delivery, on the Counterparties (as defined below) the Post-Auction Notice identifying any Successful Bidder and Back-Up Bidder.

24.      The filing and service of the Post-Auction Notice as described herein shall be deemed good and sufficient notice of the Debtors' selection of the Successful Bid and Back-Up Bid, and the deadlines and other requirements for objecting to the same, the conduct of the Auction, and to the potential assumption and assignment of the Assigned Contracts to the Successful Bidder and/or Back-Up Bidder, and no other or further notice is required.

<u>**The Auction**</u>

25.      If the Debtors receive more than one Qualified Bid by the Bid Deadline, an Auction shall take place on **April 17, 2023 at 10:00 a.m.** (Prevailing Eastern Time), or such later time the Debtors reasonably determine at: (i) the offices of Latham & Watkins LLP, located at 1271 Avenue of the Americas, New York, New York 10020; (ii) telephonically; or (iii) by video via Zoom, or other place (or by such other electronic means) as the Debtors reasonably determine; *provided*, that the Debtors timely notify all Qualified Bidders and other invitees of the time and place of the Auction in accordance with the Bidding Procedures, and for the avoidance of any doubt, the

10

Auction is subject to the right of the Debtors, in the reasonable exercise of their business judgment, in consultation with the Consultation Parties, to adjourn the Auction to a later date. The Auction shall be conducted in accordance with the Bidding Procedures.

26. In the event no Auction is to be held, the Debtors shall file a notice with this Court not later than **April 14, 2023 at 4:00 p.m.** (Prevailing Eastern Time) stating that there will be no Auction.

<u>**Assumption and Assignment Procedures**</u>

27. The proposed Assumption and Assignment Procedures, and the payment by the Debtors or the Successful Bidder, as applicable, of any related Cure Amounts, as set forth in the Motion and in this Bidding Procedures Order, are approved.

28. The Assumption and Assignment Procedures are as follows:

(a) On or prior to **February 20, 2023** (the "<u>Assumption Notice Deadline</u>"), the Debtors shall file with this Court, post on the Case Website and serve on each counterparty (each, a "<u>Counterparty</u>," and collectively, the "<u>Counterparties</u>") to an Assigned Contract, the Assumption Notice.

(b) The Assumption Notice shall include, without limitation, a list of Assigned Contracts (the "<u>Assigned Contract List</u>") that may be assumed and assigned in connection with a Transaction and the Cure Amount, if any, that the Debtors believe is required to be paid to the applicable Counterparty under sections 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assigned Contracts. If no Cure Amount is listed on the Assigned Contracts List for a particular Assigned Contract, the Debtors' asserted Cure Amount for such Assigned Contract shall be deemed to be $0.00. If a Counterparty objects to the Cure Amount or the assumption of its Assigned Contract on any basis *other than* the ability of the Successful Bidder to provide adequate assurance of future performance (an "<u>Adequate Assurance Objection</u>"), the Counterparty must file with this Court and serve on the Objection Recipients (as defined herein) a written objection (a "<u>Contract Objection</u>") on or **March 20, 2023 at 4:00 p.m. (Prevailing Eastern Time)** (the "<u>Contract Objection Deadline</u>").

(c) Any Contract Objection shall: (i) be in writing; (ii) comply with the Bankruptcy Rules and Local Rules; (iii) be filed with the Clerk of the Court on or before the Contract Objection Deadline, except as otherwise set forth below with respect to Assigned Contracts added to the Assigned Contracts

11

List (or for which the proposed Cure Amount is modified) after the Assumption Notice Deadline; (iv) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under sections 365(b)(1)(A) and (B) of the Bankruptcy Code for the applicable Assigned Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto; and (v) be served upon the Objection Recipients.

(d)     The Debtors reserve the right, and are authorized to (i) add previously omitted Assigned Contracts to the Assigned Contracts List as executory contracts or unexpired leases that may be assumed and assigned to a Successful Bidder in accordance with the definitive agreement for a Sale Transaction, (ii) remove Assigned Contracts from the Assigned Contract List, or (iii) modify the previously stated Cure Amount associated with any Assigned Contract; *provided*, that up until the closing of the Sale Transaction, the Debtors may seek to reject any Assigned Contract included on the Assigned Contracts List if such Assigned Contract is not ultimately assigned to the Successful Bidder.

(e)     If, after the Assumption Notice Deadline (i) additional executory contracts or unexpired leases of the Debtors are determined to be Assigned Contracts in connection with such Sale Transaction, or (ii) any Cure Amounts associated with Assigned Contracts are modified, as soon as practicable thereafter, the Debtors shall file with this Court and serve, by overnight delivery, on the applicable Counterparties a supplemental or revised Assumption Notice, and such Counterparties shall file any Contract Objections not later than (a) the Contract Objection Deadline in the event that such Assumption Notice was filed and served at least ten (10) days prior to the Contract Objection Deadline, and (b) seven (7) days from the date such supplemental or revised Assumption Notice was filed and served in accordance with the above, in the event that such supplemental or revised Assumption Notice was filed and served less than ten (10) days prior to the Contract Objection Deadline.  In the event that a supplemental or revised Assumption Notice was filed and served less than seven (7) days prior to the commencement of the Sale Hearing and an objection is filed that is not otherwise consensually resolved, then such objection will not be adjudicated at the Sale Hearing and will be set for a subsequent hearing.

(f)     As soon as practicable after the Auction and in any event no later than twenty-four (24) hours following the closing of the Auction, the Debtors shall file with this Court and serve, by overnight delivery, on the Counterparties the Post-Auction Notice substantially in the form attached as **Exhibit 4** here to, identifying any Successful Bidder and Backup Bidder, and the Counterparties shall file any Adequate Assurance Objections not later than 4:00 p.m. (Prevailing Eastern Time) on the date that is three (3)

business days prior to the commencement of the Sale Hearing (such deadline, the "Post-Auction Sale Objection Deadline"), or, if applicable, any later deadline established pursuant to subparagraph 28(e) above.

(g)     At the Sale Hearing, the Debtors will seek Court approval of the assumption and assignment to the Successful Bidder of only those Assigned Contracts that have been selected by the Successful Bidder to be assumed and assigned (collectively, the "Selected Assigned Contracts"). The inclusion of an Assigned Contract on an Assumption Notice or the identification of such Assigned Contract as a Selected Assigned Contract will not (i) obligate the Debtors to assume any Assigned Contract listed thereon nor the Successful Bidder to take assignment of such Assigned Contract, or (ii) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease. The Debtors reserve any and all rights with respect to any Assigned Contracts that are not ultimately designated as Selected Assigned Contracts, and reserve the right to reject any Assigned Contract identified as a Selected Assigned Contract if such Assigned Contract is not ultimately assigned to the Successful Bidder.

(h)     If no Contract Objection or Adequate Assurance Objection, as applicable, is timely received with respect to a Selected Assigned Contract: (i) the Counterparty to such Selected Assigned Contract shall be deemed to have consented to the assumption by the Debtors and assignment to Successful Bidder of the Selected Assigned Contract, and be forever barred from asserting any objection with regard to such assumption or assumption and assignment (including, without limitation, with respect to adequate assurance of future performance by the Successful Bidder); (ii) any and all defaults under the Selected Assigned Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code upon payment of the Cure Amount set forth in the most recent Assumption Notice for such Selected Assigned Contract; and (iii) the Cure Amount set forth in the most recent Assumption Notice for such Selected Assigned Contract shall be controlling, notwithstanding anything to the contrary in such Selected Assigned Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Selected Assigned Contract against the Debtors and their estates, the Successful Bidder, or the property of any of them, that existed prior to the entry of the order resolving the Contract Objections and the Sale Order.

29.     To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the Cure Amount required to be paid to the applicable Counterparty under

sections 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "Cure Dispute"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be fixed by the Court; *provided, however*, that if the Contract Objection relates solely to a Cure Dispute, the Selected Assigned Contract may be assumed by the Debtors and assigned to the Successful Bidder so long as the cure amount the Counterparty asserts is required to be paid under sections 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as may be agreed to by the Counterparty) is deposited in a segregated account by the Debtors pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute. The Debtors and the Successful Bidder reserve their rights to remove an Assigned Contract from the Assigned Contract List or from any list of Selected Assigned Contracts based on the outcome of a Cure Dispute held at a hearing subsequent to the Sale Hearing or for any other reason.

### Sale Hearing

30. A Sale Hearing to approve any Sale Transaction shall be held on or around **April 26, 2023** at _____ a.m./p.m. (Prevailing Eastern Time), and may be adjourned or rescheduled by the Debtors from time to time in accordance with the Bidding Procedures.

31. Except as otherwise provided herein, any objection to any Transaction (a "Sale Objection") must be filed no later than the Sale Objection Deadline. Any and all such objections must be served on the Objection Recipients and counsel to any Successful Bidder, if known on the Sale Objection Deadline; *provided*, that, any or objections to the outcome and conduct of the Auction, the designation or Court-approval of the Successful Bid or Back-Up Bid, or Adequate Assurance Objections must be filed no later than 4:00 p.m. (Prevailing Eastern Time) on the date that is three (3) business days prior to the commencement of the Sale Hearing.

32. All replies to any objections must be filed by 4:30 p.m. on the date that is two (2) business days prior to the commencement of the Sale Hearing (the "Reply Deadline").

## Other Relief

33.     Except as otherwise provided herein, any objection provided hereunder must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and Local Rules, (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor, and (iv) be filed with this Court and served so actually received no later than the applicable objection deadline by the following parties (collectively, the "Objection Recipients"):

  i.   the Debtors, c/o Vital Pharmaceuticals, Inc., 1600 N. Park Drive, Weston, FL 33326 (Attn: Greg Robbins (Greg.Robbins@bangenergy.com) and Gregg Metzger (Gregg.Metzger@bangenergy.com));

  ii.   co-counsel for the Debtors:

    (a)  Latham & Watkins LLP, 555 Eleventh Street, NW, Suite 1000, Washington, D.C. 20004 (Attn: Andrew Sorkin (andrew.sorkin@lw.com)) and Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 (Attn: Liza Burton (liza.burton@lw.com) and Jonathan Weichselbaum (jon.weichselbaum@lw.com)); and

    (b)  Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131 (Attn: Jordi Guso (JGuso@bergersingerman.com) and Michael Niles (mniles@bergersingerman.com));

  iii.   the Agent, Truist Bank 10500 Little Patuxent Parkway Ste 450, Columbia, MD 21046, Mail Code 420-20-01-00 (Attn: Jade Silver (jade.silver@truist.com));

  iv.   co-counsel to the Agent:

    (a)  Moore & Van Allen PLLC, 100 North Tryon Street, Suite 4700, Charlotte, NC 28202-4003 (Attn: Luis Lluberas (luislluberas@mvalaw.com), Steve Gruendel (stevegruendel@mvalaw.com), and Cole Richins (colerichins@mvalaw.com)); and

    (b)  Shutts & Bowen LLP, 200 South Biscayne Blvd., Ste 4100, Miami, FL 33131 (Attn: Aliette D. Rodz (ARodz@shutts.com), Peter Levitt (plevitt@shutts.com), Harris J. Koroglu (hkoroglu@shutts.com), and Martha M. Ferral (MFerral@shutts.com));

  v.   the Office of the United States Trustee, 51 SW First Avenue, Room 1204, Miami, Florida 33130; and

vi.      co-counsel to the Committee:

      (a)    Lowenstein Sandler LLP, 1251 Avenue of the Americas, New York, NY 10020 (Attn: Jeffrey Cohen (jcohen@lowenstein.com), Eric Chafetz (echafetz@lowenstein.com), and Lindsay Sklar (lsklar@lowenstein.com)) and Lowenstein Sandler LLP, One Lowenstein Drive, Roseland, NJ 07068, Attn: Erica Mannix (emannix@lowenstein.com)); and

      (b)    Sequor Law, P.A., 1111 Brickell Avenue, Suite 1250, Miami, FL 33131 (Attn: Leyza Blanco (lblanco@sequorlaw.com) and Fernando Menendez (fmenendez@sequorlaw.com)).

34.     All persons and entities that participate in the bidding process or the Auction shall be deemed to have knowingly and voluntarily submitted to the exclusive jurisdiction of this Court with respect to all matters related to the terms and conditions of the transfer of Assets, the Auction, and any transaction contemplated herein.

35.     Notwithstanding any provision of the Bankruptcy Rules or the Local Rules stating to the contrary, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry and no automatic stay shall apply to this Bidding Procedures Order.

36.     All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

37.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

38.     In the event there is any inconsistency between the Motion or the Bidding Procedures, on the one hand, and this Bidding Procedures Order, on the other, the terms of this Bidding Procedures Order shall govern. In the event of any inconsistency between the Motion and the Bidding Procedures, the Bidding Procedures shall govern.

39.     This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bidding Procedures Order.  All matters arising from or related to the implementation of this Bidding Procedures Order may be brought before this Court as a contested matter, without the necessity of commencing an adversary proceeding.

# # #

Submitted by:

Jordi Guso
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email: jguso@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

**EXHIBIT 1**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:                                                          Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]                        Case No.: 22-17842-PDR

      Debtors.                                                 (Jointly Administered)

_____/

## BIDDING PROCEDURES

On October 10, 2022 (the "<u>Petition Date</u>"), the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), in the United States Bankruptcy Court for the Southern District of Florida (the "<u>Bankruptcy Court</u>").

On _____, 2023, the Bankruptcy Court entered an order [ECF No. [ _____] (the "<u>Bidding Procedures Order</u>")[2] approving, among other things, these bidding procedures (the "<u>Bidding Procedures</u>").

These Bidding Procedures set forth the process by which the Debtors are authorized to solicit and select the highest or otherwise best bid or bids (each, a "<u>Bid</u>") for the Debtors' assets (including, for the avoidance of doubt, rights under leases or other contracts, certain causes of action, intellectual property rights and other intangible assets) (the "<u>Assets</u>"),[3] culminating in an auction (the "<u>Auction</u>") if more than one Qualified Bid (as defined herein) is received. The sale is contemplated to be implemented through either (i) a sale or sales under section 363(b) of the Bankruptcy Code (each, a "<u>Sale Transaction</u>") pursuant to the terms and conditions of an asset purchase agreement, or (ii) a transaction that will be consummated through a plan of a

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein have the meanings given to them in the *Debtors' Motion for an Order (I) Approving (A) Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Procedures for the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (C) the Form and Manner of Notice of the Sale Hearing, Assumption Procedures, and Auction Results, (D) Dates for an Auction and Sale Hearing, (E) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances, and (F) the Debtors' Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Authorizing the Debtors to Provide Bid Protections, and (III) Granting Related Relief.*

[3] A Bid may also contemplate the acquisition of assets owned by non-Debtors.

reorganization (a "<u>Restructuring Transaction</u>" and together with a Sale Transaction, each a "<u>Transaction</u>").

<strong><u>Summary of Key Dates</u></strong>

The key dates for the Debtors' sale process are as follows.  Such dates may be extended by the Debtors, in their reasonable discretion and in consultation with the Consultation Parties.[4]

| <u>Event</u> | <u>Date</u>[5] |
|---|---|
| Deadline to serve the Bidding Procedures Order | Within three (3) business days after entry of the Bidding Procedures Order |
| Deadline to file and serve initial Assumption Notice<br>Deadline to file proposed Sale Order | February 20, 2023 |
| Deadline to file the Stalking Horse Selection Notice and seek Bankruptcy Court approval of proposed Bid Protections (if any) | March 13, 2023 at 11:59 p.m. |
| Deadline to object to designation of Stalking Horse Bidder and/or proposed Bid Protections<br>Contract Objection Deadline (other than any objections based on adequate assurance of future performance, or objections subject to a later deadline pursuant to the Assumption and Assignment Procedures)<br>Sale Objection Deadline (other than any objection based on the manner in which the Auction was conducted or the designation of the Successful Bid or Back-Up Bid) | March 20, 2023 at 4:00 p.m. |
| Bid Deadline | April 11, 2023 at 12:00 p.m. |
| Auction (if necessary) | April 17, 2023 at 10:00 a.m. |
| Deadline to file Post-Auction Notice | Promptly following the conclusion of the Auction, but in no event later than 24 hours following the conclusion of the Auction |

---

[4]  Each "<u>Consultation Party</u>," and collectively, the "<u>Consultation Parties</u>" means: (i) Truist Bank, in its capacities as administrative agent under the Debtors' prepetition secured credit facility and debtor-in-possession credit facility (the "<u>DIP Facility</u>") (in such capacities, the "<u>Agent</u>"), and the Agent's counsel and financial advisor; and (ii) counsel, investment banker, and financial advisor to the Committee; *provided,* that no person or entity that constitutes a Potential Bidder, an Acceptable Bidder, a Qualified Bidder, a Stalking Horse Bidder, a Successful Bidder, or a Back-Up Bidder (each as defined herein) (as determined by the Debtors, in their reasonable discretion and in consultation with the Committee) shall be deemed a Consultation Party for so long as such person constitutes a Potential Bidder, an Acceptable Bidder, a Qualified Bidder, a Stalking Horse Bidder, a Successful Bidder, or a Back-Up Bidder.

[5]  All times are listed in Prevailing Eastern Time.

| Event | Date[5] |
|---|---|
| Deadline to object to (i) conduct of the Auction, (ii) the identity of the Successful Bidder or Back-Up Bidder, and (iii) adequate assurance of future performance by the Successful Bidder or Back-Up Bidder (such deadline, the "Post-Auction Sale Objection Deadline") | 4:00 p.m. on the date that is three (3) business days prior to the Sale Hearing |
| Deadline for Debtors to file a reply to objections to sale/assumption objections (and any other filings by parties in interest in support of the proposed Transaction) | 4:30 p.m. on the date that is two (2) business days prior to the Sale Hearing |
| Sale Hearing | April 26, 2023 |

### A.     Purchase Agreement; Restructuring Transaction Documentation

The Debtors are soliciting and shall select the highest or otherwise best Bid for the Debtors' Assets.  Certain non-Debtors may also sell assets related to the Debtors' business, the acquisition of which may be contemplated or required by a Bid.  A Bid may take the form of (i) a Sale Transaction of all or substantially all of the Debtors' Assets pursuant to an asset purchase agreement to be consummated under section 363 of the Bankruptcy Code, or (ii) a Restructuring Transaction.

The Debtors have prepared a form of Asset Purchase Agreement (together with all ancillary documents and agreements, the "APA") for parties interested in acquiring the Assets pursuant to a Sale Transaction.  The Debtors intend to provide copies of the form APA to Acceptable Bidders and will also make such form APA available in the electronic data room established by the Debtors in connection with their sale process.

Parties interested in submitting Bids in the form of a Restructuring Transaction may do so by submitting a term sheet for a plan of reorganization (a "Plan Term Sheet").  The Debtors, in consultation with the Consultation Parties, reserve the right to modify these Bidding Procedures, including, without limitation, Qualified Bid requirements, as necessary or appropriate to reflect the submission and the Debtors' consideration of one or more Bids in the form of a Restructuring Transaction; *provided*, that in order for a Bid in the form of a Plan Term Sheet to constitute a Qualified Bid, among other things, the Debtors, in consultation with the Consultation Parties, must determine in good faith that such Bid (i) is capable of satisfying the requirements of section 1129 of the Bankruptcy Code, (ii) provides for the payment in full in cash on the Effective Date of (a) all allowed secured claims of the Prepetition Lenders (as defined herein) arising under the Debtors' prepetition secured credit facility and (b) all allowed claims arising under the Debtors' DIP Facility, and (iii) is capable of being consummated.  Any Bid in the form of a Plan Term Sheet satisfying the requirements of this paragraph may be determined by the Debtors, in consultation with the Consultation Parties, to be a Qualified Bid, Successful Bid, Stalking Horse Bid (as defined herein), or Back-Up Bid.

**B.**    **Due Diligence**

**(i)**    **Acceptable Bidder Designation**

For purposes of these Bidding Procedures, a "<u>Potential Bidder</u>" shall refer to any person or entity interested in submitting a Bid.

A Potential Bidder that (i) executes a confidentiality agreement on customary terms that are reasonably acceptable to the Debtors (a "<u>Confidentiality Agreement</u>"),[6] (ii) provides sufficient evidence, as reasonably determined by the Debtors, in consultation with the Consultation Parties, that the Potential Bidder intends to obtain due diligence and participate in the sale process for a bona fide purpose consistent with these Bidding Procedures and not for any other purpose, and (iii) provides evidence acceptable to the Debtors of such Potential Bidder's financial capability to consummate the Transaction, the adequacy of which will be assessed by the Debtors (with the assistance of their advisors) in consultation with the Consultation Parties (any such Potential Bidder being referred to as an "<u>Acceptable Bidder</u>"), will be eligible to receive due diligence materials and access to certain non-public information regarding the Assets. **Neither the Debtors nor their representatives will be obligated to furnish information of any kind whatsoever to any person that is not determined to be an Acceptable Bidder.**

Each Acceptable Bidder shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding such bidder's (i) qualification as an Acceptable Bidder, (ii) the terms of the Potential Bidder's Bid, or (iii) the ability of the Potential Bidder to consummate the Transaction. Failure by a Potential Bidder to comply with reasonable requests for additional information and due diligence access may be a basis for the Debtors, in consultation with the Consultation Parties, to determine that such bidder does not qualify as an Acceptable Bidder, or that any Bid made by such bidder is not a Qualified Bid.

**(ii)**    **Access to Due Diligence**

The Debtors will provide each Acceptable Bidder with such information as is reasonably contemplated to enable such Acceptable Bidder to make a Bid for the Assets. The Debtors will also provide each Acceptable Bidder with reasonable due diligence information as requested by such Acceptable Bidder in writing, as soon as reasonably practicable after such request. The Debtors will post substantially all written due diligence provided to any Acceptable Bidder to the Debtors' electronic data room (the "<u>Data Room</u>"). The Debtors reserve the right, in consultation with the Consultation Parties, to restrict or limit access of any Acceptable Bidder to the Data Room if the Debtors determine, based on their reasonable business judgment, that certain information in the Data Room is sensitive, proprietary, or otherwise not appropriate for disclosure to any Acceptable Bidder.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors will not furnish any confidential information relating to the Debtors, the Debtors' Assets or liabilities, or the Transaction to any person except an Acceptable Bidder or such Acceptable

---

[6]    Potential Bidders may obtain a form of Confidentiality Agreement by contacting the Debtors' advisors listed below.