# JOINT EXHIBIT 11

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                              Chapter 11 Case

VITAL PHARMACEUTICALS, INC., *et al.*,[1]          Case No.: 22-_____

    Debtors.                                       (Joint Administration Pending)

_____/

**DEBTORS' APPLICATION FOR ENTRY OF INTERIM AND FINAL ORDERS
UNDER 11 U.S.C. §§ 327(a) AND 328(a) AUTHORIZING THE EMPLOYMENT
AND RETENTION OF ROTHSCHILD & CO US INC. AS INVESTMENT BANKER
FOR <u>THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE</u>
(Expedited Hearing Requested)**

Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property

Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev

LLC and Vital Pharmaceuticals International Sales, Inc. (collectively, the "**Debtors**"), by and

through the undersigned counsel, pursuant to §§ 105, 327(a) and 328(a) of title 11 of the United

States Code (the "**Bankruptcy Code**") and Rules 2014(a) and 2016 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), file this *Debtors' Application for Entry of*

*Interim and Final Orders Under 11 U.S.C. §§ 327(a) and 328(a) Authorizing the Employment and*

*Retention of Rothschild & Co US Inc. as Investment Banker for the Debtors, Effective as of the*

*Petition Date* (the "**Application**"), seeking the approval on an interim and final basis of the

employment of Rothschild & Co US Inc. ("**Rothschild & Co**") as investment banker for the

_____

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors'
federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc.
(5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC
(9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital
Pharmaceuticals International Sales, Inc. (8019).

Debtors.  In support of the Application, the Debtors rely on the *Declaration of Homer Parkhill in Support of the Application for Entry of Interim and Final Orders Authorizing the Employment and Retention of Rothschild & Co US Inc. as Investment Banker for the Debtors, Effective as of the Petition Date* (the "**Parkhill Declaration**") attached hereto as **Exhibit A.**  In support of the Application, the Debtors also rely upon the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**") filed on the Petition Date, and respectfully represent as follows:

## Jurisdiction

1.      This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.      Venue of the Debtors' bankruptcy cases and this Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105, 327(a) and 328(a) and Bankruptcy Rules 2014(a) and 2016.

## Background

4.      On the date hereof (the "**Petition Date**"), the Debtors commenced these cases (the "**Chapter 11 Cases**") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court.

5.      The Debtors are operating their businesses and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the First Day Declaration.

## Relief Requested

7.      By this Application, and in accordance with sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016, the Debtors seek entry of interim and final orders authorizing the Debtors to retain and employ Rothschild & Co as their investment banker in accordance with the terms and conditions of that certain letter agreement dated as of April 8, 2022 (the "**Initial Engagement Letter**"), and amendment to letter agreement dated as of August 9, 2022 (the "**Supplemental Engagement Letter**") (collectively, the "**Engagement Letter**") attached hereto as **Composite Exhibit B**.

## Services to be Provided

8.      Subject to approval of the Court, the contemplated terms and conditions of Rothschild & Co's engagement in these Chapter 11 Cases are set forth in the Engagement Letter. The terms of the Engagement Letter were negotiated at arm's length and in good faith between the Debtors and Rothschild & Co and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement.  Pursuant to the Engagement Letter, the Debtors retained Rothschild & Co to provide the Debtors with certain investment banking advisory services (collectively, the "**Services**") in connection with a possible financial restructuring or one or more Transactions[2] as more fully detailed in the Engagement Letter.  The Services to be performed by Rothschild & Co are appropriate and necessary to enable the Debtors to execute their duties as debtors in possession and to prosecute these Chapter 11 Cases.

9.      As outlined in the Engagement Letter, if requested by the Debtors, Rothschild & Co will[3]:

---

[2] Capitalized terms used in this Application and not otherwise defined herein shall have the meanings ascribed to such terms in the Engagement Letter.

[3] The summaries provided in this Application are provided for convenience only.  In the event of any inconsistency between any summary and the terms and provisions of the Engagement Letter, the terms of the Engagement Letter

(a)     advise the Debtors with respect to a potential minority investment, sale, merger or other business/strategic combination involving the Debtors;

(b)     assist the Debtors in identifying possible counterparties for a potential M&A Transaction (as defined in the Engagement Letter);

(c)     assist the Debtors in their assessment of the financial aspects of a M&A Transaction and, if the Debtors determine to pursue a M&A Transaction, in the development of a plan for accomplishing such M&A Transaction;

(d)     assist the Debtors in raising new debt or equity financing in connection with a New Capital Raise (as defined in the Engagement Letter);

(e)     assist the Debtors in making internal and external presentations concerning the financial aspects of any proposed Transaction (as defined in the Engagement Letter), as appropriate;

(f)     advise and assist the Debtors in the development and implementation of a process intended to generate bidders for a sale pursuant to Section 363 of the Bankruptcy Code;

(g)     advise and assist the Debtors in connection with any case or cases commenced by or against the Debtors, whether individually or on a consolidated basis, under title 11 of the Bankruptcy Code and if requested by the Debtors, participating in hearings before the Bankruptcy Court in which such cases are commenced and providing relevant testimony with respect to the matters described herein and issues arising in connection with any proposed plan of reorganization;

(h)     review and analyze any proposals the Debtors receive from third parties in connection with a transaction during the restructuring process, including, without limitation, any proposals for debtors-in-possession financing, mergers and acquisitions or other strategic alternatives, as appropriate;

(i)     assist or participate in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Debtors and/or their respective representatives in connection with a transaction during the restructuring process; and

(j)     provide such other investment banking and financial advisory services as the Debtors and Rothschild & Co may from time to time agree upon.

---

shall control.  In the event of any inconsistency between any summary and the terms and provisions of the order annexed hereto as Exhibit C (the "**Proposed Order**"), the terms of the Proposed Order shall control.

11586246-10

10.     To the extent that the Debtors request additional advisory services, Rothschild & Co will further amend the Engagement Letter accordingly and the Debtors will seek approval of the Court prior to it rendering any additional services.

### Rothschild & Co's Qualifications

11.     The Debtors seek to retain Rothschild & Co as their investment banker because, among other things, Rothschild & Co has extensive experience and an excellent reputation in providing high-quality investment banking and financial restructuring services to debtors, their boards of directors, and various secured and unsecured classes of creditors in chapter 11 cases and other restructurings.

12.     Rothschild & Co is a member of one of the world's leading independent investment banking groups, with more than fifty offices in over forty countries. Rothschild & Co has expertise in domestic and cross-border restructurings, mergers and acquisitions, new capital raises and other investment banking services. Rothschild & Co has experience in providing high-quality investment banking advice to financially troubled companies. Rothschild & Co is an experienced bankruptcy and restructuring advisor to debtors in a variety of industries. Rothschild & Co is highly qualified to advise on strategic alternatives and its professionals have extensive experience in deals involving complex financial and operational restructurings. Moreover, Rothschild & Co is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

13.     Rothschild & Co and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases. Rothschild & Co's business reorganization professionals have served as financial and strategic advisors in numerous high-profile bankruptcies and

restructurings, providing services to debtors, creditors' committees, and other constituencies in numerous cases, including, among others: *Affiliated Media Inc.; Allen Systems Group, Inc.; Allied Systems Holdings, Inc.; Alpha Latam; Alpha Natural Resources, Inc.; AMR Corp.; Answers Holdings, Inc.; Arcapita Bank B.S.C.(c); Automotores Gildemeister SpA; Autoseis, Inc.; Blockbuster Inc.; Caesars Entertainment Operating Company; Cenveo, Inc.; Chaparral Energy, Inc.; Chesapeake Energy Corp.; Coach Am Group Holdings Corp.; DSI Holdings, Inc.; FairPoint Communications, Inc.; Filene's Basement, LLC; First Place Financial Corp.; GenOn Energy, Inc.; Geokinetics Inc.; Global Aviation Holdings Inc.; Global Eagle Entertainment Inc.; Grupo Aeroméxico, S.A.B. de C.V.; GT Advanced Technologies, Inc.; Harry & David Holdings, Inc.; The Hertz Corporation; Inner City Media Corp.; LCI Holding Co., Inc.; Lonestar Resources U.S. Inc.; Metro Affiliates, Inc.; Milacron Inc.; Nassau Broad. Partners, L.P.; Neb. Book Co., Inc.; Neenah Enterprises Inc.; NII Holdings, Inc.; Nordic Aviation Capital Designated Activity Company; Northwest Airlines Corp.; Penton Business Media Holdings, Inc.; PG&E Corporation; Recycled Paper Greetings Inc.; rue21, Inc.; Ruby Pipeline, LLC; Sbarro, Inc.; Solutia Inc.; Seadrill Limited; Seadrill Partners LLC; Sports Authority Holdings, Inc.; SunEdison, Inc.; Talen Energy Supply, LLC; TerraVia Holdings, Inc.; Trident Res. Corp.; UAL Corp.; Ultra Petroleum Corp.; VeraSun Energy Corp.; Westinghouse Electric Company LLC; WestPoint Stevens, Inc.;* and *Windstream Holdings, Inc.*

14.     The resources, capabilities, and experience of Rothschild & Co in advising the Debtors as investment banker are crucial to the success of the Debtors' chapter 11 strategies. An experienced investment banker fulfills a critical need that complements the services offered by the Debtors' other professionals. For these reasons, the Debtors require the services of a capable and experienced investment banker with restructuring experience, such as Rothschild & Co.

15.     Moreover, Rothschild & Co has intimate familiarity with the Debtors' operations and capital structure through its prepetition services to the Debtors.  In providing these prepetition services, Rothschild & Co's professionals have become well-acquainted with the Debtors' operations, debt structure, creditors, businesses and operations, and related matters, including (a) familiarizing themselves with the assets and operations of the Debtors; (b) analyzing the Debtors' liquidity and cash flow projections; (c) examining various potential strategic alternatives; (d) engaging with potential financing parties and strategic acquirors and coordinating due diligence sessions; (e) negotiating with key creditor constituencies; and (f) providing additional investment-banking services in preparation for the filing of the Debtors' Chapter 11 Cases.  In providing these and other prepetition services to the Debtors, Rothschild & Co has worked closely with the Debtors' senior management and their other advisors and is familiar with the other major stakeholders that will be involved in these Chapter 11 Cases. In addition, Rothschild & Co has acquired significant knowledge of the Debtors and their businesses and has developed relevant expertise with the Debtors' financial affairs, debt and capital structure, assets, business operations, financing documents, and other related material information. Accordingly, Rothschild & Co is well-qualified and uniquely able to represent the Debtors in these Chapter 11 Cases in an efficient and timely manner. Indeed, if the Debtors were required to retain an investment banker other than Rothschild & Co in connection with these Chapter 11 Cases, the Debtors, their estates, and all parties in interest would be prejudiced by the substantial time and expense that would be incurred in familiarizing another firm with the Debtors and their business.

**No Duplication of Services**

16.     The Debtors believe that the services provided by Rothschild & Co will not duplicate the services that other professionals will be providing to the Debtors in these Chapter 11

Cases. The services that Rothschild & Co will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates. Specifically, Rothschild & Co will carry out unique functions directly related to the investment banking services specifically outlined in the Engagement Letter and will use reasonable efforts to coordinate with the Debtors and the other professionals retained in these Chapter 11 Cases to avoid the unnecessary duplication of services. The Debtors anticipate that the coordination of efforts by and among the Debtors' professionals will substantially contribute to the efficient and effective administration of these Chapter 11 Cases.

## **Professional Compensation**

17.     Rothschild & Co will seek the Court's approval of its compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases consistent with the proposed compensation set forth in the Engagement Letter.

18.     Investment bankers such as Rothschild & Co do not charge for their services on an hourly basis. As set forth more fully in the Engagement Letter, and subject thereto, Rothschild & Co will be compensated, subject to Court approval, as follows (the "**Fee and Expense Structure**"):

a.      Whether or not a Transaction is proposed or consummated, the Debtors shall pay to Rothschild & Co a monthly advisory fee of $200,000 (pro-rated for any partial month period) (the "Monthly Fee"), with the first payment due and payable upon the commencement of the bankruptcy filing, and thereafter the Monthly Fee shall be payable by the Debtors in advance on the first day of each month. Rothschild & Co shall credit against the Minority M&A Transaction Fee or Control M&A Transaction Fee, as appropriate (such credit to be applied only once and without duplication), 50% of the Monthly Fees paid after the Debtors' payment of the third Monthly Fee and 100% of the Monthly Fee paid after the Debtors' payment of the sixth Monthly Fee (in each case, the "Monthly Fee Credit"), provided that the sum of the Monthly Fee Credit shall not exceed the Minority M&A Transaction Fee or Control M&A Transaction Fee, as appropriate.

b.      Immediately upon the consummation and funding of a Minority M&A Transaction, a fee (the "**Minority M&A Transaction Fee**") equal to:

i.     if the Implied Enterprise Value is $7.25 billion or less, (A) 0.50% of the aggregate Implied Enterprise Value multiplied by (B) the Minority M&A Percentage; or

ii.    if the Implied Enterprise Value is greater than $7.25 billion and equal to or less than $10.00 billion, (A) 0.75% of the aggregate Implied Enterprise Value multiplied by (B) the Minority M&A Percentage; or

iii.   if the Implied Enterprise Value is greater than $10.00 billion, (A) 1.0% of the aggregate Implied Enterprise Value multiplied by (B) the Minority M&A Percentage;

provided, that in no event shall the Minority M&A Transaction Fee payable hereunder upon the consummation and funding of a Minority M&A Transaction be less than $6.5 million.

In no event shall Rothschild & Co be entitled to more than one Minority M&A Transaction Fee.

c.    Immediately upon the consummation and funding of a Control M&A Transaction, a fee (a "**Control M&A Transaction Fee**") equal to:

i.     if the aggregate Consideration involved in the Control M&A Transaction is less than or equal to $7.25 billion, 0.50% of the aggregate Consideration involved in the Control M&A Transaction; or

ii.    if the aggregate Consideration involved in the Control M&A Transaction is greater than $7.25 billion and equal to or less than $10.00 billion, 0.75% of the aggregate Consideration involved in the Control M&A Transaction; or

iii.   if the aggregate Consideration involved in the Control M&A Transaction is greater than $10.00 billion, 1.0% of the aggregate Consideration involved in the Control M&A Transaction;

provided, that in no event shall the Control M&A Transaction Fee payable hereunder upon the consummation and funding of a Control M&A Transaction be less than $6.5 million.

In no event shall Rothschild & Co be entitled to more than one Control M&A Transaction Fee.

d.    If Rothschild & Co provides services to the Company in connection with a New Capital Raise (which may be effected, without limitation, through a debtor-in-possession financing or pursuant to a chapter 11 plan), a fee (the "**New Capital Fee**") equal to (i) 1.0% of the face amount of any senior secured or senior unsecured debt raised; (ii) 2.0% of the face amount of any junior, mezzanine or subordinated secured or unsecured debt raised and (iii) 2.0% of any debt-like or hybrid equity capital raised, including, without limitation, any preferred stock or convertible debt raised for bona fide debt-

like or hybrid financing purposes. For the avoidance of doubt, the term "raised" shall include the amount committed or otherwise made available to the Company or its affiliates whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company or its affiliates. The New Capital Fee shall be earned in full upon the closing of a New Capital Raise and shall be payable by the Company to Rothschild & Co within five business days thereafter.

e. *Expense Reimbursement.* In addition to any fees payable to Rothschild & Co pursuant to the Engagement Letter, the Debtors shall reimburse Rothschild & Co for its reasonable documented out-of-pocket travel and incidental expenses incurred in connection with its engagement promptly as requested, including the fees and expenses of its legal counsel and those of any advisor retained by Rothschild & Co.

19.     As noted above, Rothschild & Co provided substantial services to the Debtors prior to the Petition Date. The Initial Engagement Letter did not contemplate services during a bankruptcy case, and adding bankruptcy-related services and fees was the key focus of the Supplemental Engagement Letter. While Section 4(d) of the Initial Engagement Letter restricted Rothschild & Co from earning more than one New Capital Fee in connection with non-bankruptcy services, Section C of the Supplemental Engagement Letter permits Rothschild & Co to earn a New Capital Fee on account of debtor-in-possession or exit financing, in addition to the existing ability to earn a New Capital Raise outside of bankruptcy. Accordingly, the terms of the Proposed Order clarify that Rothschild & Co may earn more than one New Capital Fee.

## The Fee and Expense Structure is Appropriate and Reasonable and Should be Approved under Section 328(a) of the Bankruptcy Code

20.     The Debtors believe that the compensation arrangements provided for in the Engagement Letter and generally described above are both reasonable and market-based. Rothschild & Co's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Rothschild & Co's engagement

11586246-10

hereunder, were important factors in determining the Fee and Expense Structure, and the ultimate benefit to the Debtors of Rothschild & Co's services hereunder cannot be measured by reference to the number of hours to be expended by Rothschild & Co's professionals in the performance of such services.

21.     The Debtors submit that Rothschild & Co has obtained valuable institutional knowledge of the Debtors' businesses and financial affairs as a result of providing services to the Debtors prior to the Petition Date, and that Rothschild & Co is both well-qualified and uniquely able to perform these services and assist the Debtors in these Chapter 11 Cases.  Moreover, the Debtors believe that Rothschild & Co's services will assist the Debtors in achieving a successful outcome with respect to these Chapter 11 Cases.

22.     In addition, the Fee and Expense Structure is the result of arm's length negotiations between the Debtors and Rothschild & Co. The Debtors ultimately agreed to the Fee and Expense Structure because it is reasonable and appropriate in light of market conditions and because the Debtors require the services that Rothschild & Co has agreed to provide under the Engagement Letter. The Fee and Expense Structure also reflects the scope and difficulty of the comprehensive mandate that Rothschild & Co has undertaken and expects to undertake in connection with these Chapter 11 Cases and accounts for the potential for an unfavorable outcome as a result of factors outside of Rothschild & Co's control.

23.     The Debtors and Rothschild & Co negotiated the Fee and Expense Structure to function as an interrelated, integrated unit corresponding to Rothschild & Co's services, which Rothschild & Co renders not in parts, but as a whole. It would be contrary to the intention of Rothschild & Co and the Debtors for any isolated component of the Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of the Services. Instead, the Debtors

and Rothschild & Co intend that the Services be considered as a whole that is to be compensated by the Fee and Expense Structure in its entirety.

24.     The Fee and Expense Structure was also agreed upon in anticipation that a substantial commitment of professional time and effort would be required of Rothschild & Co and its professionals in connection with this assignment and in light of the fact that (a) such commitment may foreclose other opportunities for Rothschild & Co, and (b) the actual time and commitment required of Rothschild & Co and its professionals to perform its services may vary substantially from week to week and month to month during the pendency of these Chapter 11 Cases.

25.     The Fee and Expense Structure summarized above and described fully in the Engagement Letter is consistent with Rothschild & Co's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of court, involving the services to be provided in connection with these Chapter 11 Cases. Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by Rothschild & Co and other investment banks in connection with the rendering of comparable services to clients such as the Debtors.

26.     Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions.  As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co.* (*In re Nat'l Gypsum Co.*), 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award

> to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted), cited in *Riker, Danzig, Scherer, Hyland & Peretti LLP v. Official Comm. of Unsecured Creditors* (*In re Smart World Techs. LLC*), 383 B.R. 869, 874 (S.D.N.Y.2008). Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code. See, e.g., *In re DM Industries, Ltd.*, Case No. 09-15533-LMI (Bankr. S.D. Fla. April 27, 2009); *In re Medical Staffing Network Holdings, Inc.*, Case No. 10-29101-EPK (Bankr. S.D. Fla. July 26, 2010); *In re TLO, LLC*, Case No. 13-20853-PGH (Bankr. S.D. Fla. August 12, 2013); *In re Miami Air International, Inc.*, Case No. 20-13924-AJC (Bankr. S.D. Fla. April 28, 2020).

27. Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code to read as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

11 U.S.C. § 328(a). It is thus clear that debtors may retain a professional on a fixed or percentage fee basis with Court approval, such as the Fee and Expense Structure for Rothschild & Co in the Engagement Letter.

28. Similar fixed and contingency fee arrangements with Rothschild & Co have been approved and implemented by courts in other chapter 11 cases. *See, e.g.*, Order, *In re Grupo AeroMéxico, S.A.B. de C.V.*, No. 20-11563 (SCC) (Bankr. S.D.N.Y. Jan. 21, 2021), D.I. No. 828; Order, *In re Chesapeake Energy Corp.*, No. 20-33233 (DRJ) (Bankr. S.D. Tex. Oct. 9, 2020), D.I.

No. 1350; Order, *In re Cenveo, Inc.*, No. 18-22178 (RDD) (Bankr. S.D.N.Y. Mar. 8, 2018), D.I. No. 177; Order, *In re M& G USA Corp.*, No. 17-12307 (BLS) (Bankr. D. Del. Dec. 1, 2017), D.I. No. 307; Order, *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. July 14, 2017), D.I. No. 247; Order, *In re rue21, Inc*, No. 17-22045 (GLT) (Bankr. W.D. Pa. June 28, 2017), D.I. No. 630; Order, *In re Answers Holdings, Inc.*, No. 17-10496 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017), D.I. No. 119.[4]

29.     In light of the foregoing, and given the numerous issues that Rothschild & Co may be required to address in the performance of its services hereunder, Rothschild & Co's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Rothschild & Co's services for engagements of this nature both out-of-court and in a chapter 11 context, the Debtors believe that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

30.     Accordingly, the Debtors believe that the Court should approve Rothschild & Co's retention subject to the standard of review set forth in section 328(a) of the Bankruptcy Code and that Rothschild & Co's compensation should not be subject to any additional standard of review under section 330 of the Bankruptcy Code. As set forth in the Parkhill Declaration, Rothschild & Co has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

## Record Keeping and Applications for Compensation

---

[4]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Application. Copies of these orders are available upon request to the Debtors' proposed counsel.

31.     It is not the general practice of investment banking firms, including Rothschild & Co, to keep detailed time records similar to those customarily kept by attorneys and required by Rule 2016-1(B)(1) of the United States Bankruptcy Court for the Southern District of Florida's Local Rules (the "**Local Rules**") and the *Guidelines for Fee Applications for Professionals in the Southern District of Florida in Bankruptcy Cases* (the "**Guidelines**").  Rothschild & Co does not ordinarily maintain contemporaneous time records in tenth-hour increments or provide or conform to a schedule of hourly rates for its professionals, and therefore, Rothschild & Co is seeking to be excused from compliance with such information requirements set forth in Local Rule 2016-1(B)(1) and the Guidelines and from compliance with any order establishing procedures for interim compensation and reimbursement of expenses of professionals pursuant to section 331 of the Bankruptcy Code with respect to Rothschild & Co's professional fees only.

32.     Rothschild & Co will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.  Rothschild & Co's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter and any procedures established by the Court.

### ROTHSCHILD & CO'S DISINTERESTEDNESS

33.     To the best of the knowledge, information, and belief of the Debtors, and except to the extent disclosed herein and in the Parkhill Declaration, Rothschild & Co: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code; (b) does not hold or represent an interest materially adverse to the Debtors or their respective creditors for the matters for which Rothschild & Co is to be employed; and (c) has no connection to the Debtors, their creditors, or related parties herein except as disclosed in the Parkhill Declaration.

11586246-10

34.     As of the Petition Date, Rothschild & Co does not hold a prepetition claim against any of the Debtors for services rendered.

35.     To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Rothschild & Co's retention are discovered or arise, Rothschild & Co will use reasonable efforts to promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## **INDEMNIFICATION**

36.     As set forth in the Engagement Letter, the Debtors have agreed, among other things, to indemnify and hold harmless Rothschild & Co and certain related parties in accordance with the Indemnification and Exculpation provisions set forth in the Engagement Letter (the "**Indemnification Provisions**").

37.     Such provisions provide that the Debtors shall indemnify and provide contribution and reimbursement to Rothschild & Co and the other Indemnified Parties (as defined in the Engagement Letter) against any and all losses, claims or proceedings, directly or indirectly related to or arising out of Rothschild & Co's engagement, except to the extent such losses are finally judicially determined to have resulted primarily from such Indemnified Party's gross negligence, willful misconduct or fraud.

38.     The Debtors believe such provisions are customary and reasonable for Rothschild & Co's engagement. The indemnification provisions were negotiated by the Debtors at arm's length and in good faith. The Debtors believe that such provisions are comparable to those generally obtained by investment banking and other advisory firms of similar stature to Rothschild & Co and for comparable engagements, both in and out of court.  Such provisions have been approved and implemented in other large chapter 11 cases in the context of Rothschild & Co's

retention by courts in and outside of this jurisdiction. *See, e.g.*, Order, *In re Grupo AeroMéxico, S.A.B. de C.V.*, No. 20-11563 (SCC) (Bankr. S.D.N.Y. Jan. 21, 2021), D.I. No. 828; Order, *In re Chesapeake Energy Corp.*, No. 20-33233 (DRJ) (Bankr. S.D. Tex. Oct. 9, 2020), D.I. No. 1350; Order, *In re Cenveo, Inc.*, No. 18-22178 (RDD) (Bankr. S.D.N.Y. Mar. 8, 2018), D.I. No. 177; Order, *In re M& G USA Corp.*, No. 17-12307 (BLS) (Bankr. D. Del. Dec. 1, 2017), D.I. No. 307; Order, *In re GenOn Energy, Inc.*, No. 17-33695 (DRJ) (Bankr. S.D. Tex. July 14, 2017), D.I. No. 247; Order, *In re rue21, Inc*, No. 17-22045 (GLT) (Bankr. W.D. Pa. June 28, 2017), D.I. No. 630; Order, *In re Answers Holdings, Inc.*, No. 17-10496 (SMB) (Bankr. S.D.N.Y. Apr. 7, 2017), D.I. No. 119.

39.     The terms of the Engagement Letter are in the best interest of the Debtors, their estates, and creditors in light of the Debtors' need for the services of a qualified, market-leading investment banker.   Accordingly, as part of this Application, the Debtors request that the Court approve the Indemnification Provisions set forth in the Engagement Letter.

## BASIS FOR RELIEF

40.     Section 327(a) of the Bankruptcy Code provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtors] in carrying out their duties under this title."  11 U.S.C. § 327(a).

41.     Additionally, section 328(a) of the Bankruptcy Code provides, in relevant part, that the debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ."  11 U.S.C. § 328(a).

42.     The Debtors submit that the Court's approval of the retention of Rothschild & Co in accordance with the terms and conditions of the Engagement Letter is warranted. First, the requirements of section 327 of the Bankruptcy Code are satisfied. Rothschild & Co's services are needed post-petition to assist with the investment banking services contemplated by the Engagement Letter. The Debtors submit that Rothschild & Co is well qualified to provide its services to the Debtors in a cost-effective, efficient, and timely manner.

43.     Second, the Debtors believe that the compensation payable to Rothschild & Co pursuant to the Engagement Letter is fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code. The Fee and Expense Structure adequately reflects: (i) the nature of the services to be provided by Rothschild & Co and (ii) the fees and expenses and indemnification provisions typically utilized by Rothschild & Co and other leading investment banking firms, which do not bill their time on an hourly basis and generally are compensated on a transactional basis.

44.     The Debtors submit that the employment of Rothschild & Co under the terms and conditions contained in the Engagement Letter will benefit the Debtors' estate and their creditors.

### NO PRIOR REQUEST

45.     No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

**WHEREFORE,** the Debtors respectfully requests the entry of an order in the form annexed hereto as **Exhibit C** (i) approving, on an interim basis, the Debtors' employment of Rothschild & Co as investment banker for the Debtors in these cases, to provide investment banking services during the pendency of these Chapter 11 Cases upon the terms and conditions contained in the Engagement Letter; (ii) scheduling a final hearing on the Application; and (iii) for such other and further relief as the Court deems just and proper.

11586246-10

Dated:  October 10, 2022          Respectfully submitted,

VITAL PHARMACEUTICALS, INC., *et al.*, Debtors
1600 N. Park Drive
Weston, FL 33326

By: /s/ *John C. DiDonato*
       John C. DiDonato
       Chief Transformation Officer

Dated: October 10, 2022
    Miami, Florida

George A. Davis (*pro hac vice* pending)
Tianjiao ("TJ") Li (*pro hac vice* pending)
Brian S. Rosen (*pro hac vice* pending)
Jonathan J. Weichselbaum (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
        tj.li@lw.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Jeramy D. Webb (*pro hac vice* pending)
Whit Morley (*pro hac vice* pending)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  jeramy.webb@lw.com
        whit.morley@lw.com

Respectfully submitted,

*/s/ Jordi Guso*

Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
        mniles@bergersingerman.com

*Proposed Co-Counsel for the Debtors*

11586246-10

**EXHIBIT A**

**(Declaration of Homer Parkhill)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Case |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-_____ |
| Debtors. | (Joint Administration Pending) |
| _____/ | |

## DECLARATION OF HOMER PARKHILL IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF ROTHSCHILD & CO US INC. AS INVESTMENT BANKER FOR THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE

I, Homer Parkhill, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Co-Head of Restructuring and Partner of Rothschild & Co US Inc. ("**Rothschild & Co**"), an investment banking firm with its principal office at 1251 Avenue of the Americas, New York, New York 10020. I am authorized to and hereby submit this declaration (the "**Declaration**") on behalf of Rothschild & Co pursuant to sections §§ 105, 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") in support of the *Debtors' Application for Entry of Interim and Final Orders Under 11 U.S.C. §§ 327(a) and 328(a) Authorizing the Employment and Retention of Rothschild & Co US Inc. as Investment Banker for the Debtors, Effective as of the Petition Date* (the "**Application**"), filed contemporaneously

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

herewith by the Debtors.[2]  Except as otherwise noted, I have personal knowledge of the matters set forth herein.[3]

## QUALIFICATIONS OF ROTHSCHILD & CO

2.       The Debtors seek to retain Rothschild & Co as their investment banker because Rothschild & Co has extensive experience and an excellent reputation in providing investment-banking and financial-restructuring services to debtors, their boards of directors and various secured and unsecured classes of creditors in bankruptcy reorganizations and other restructurings.

3.       Rothschild & Co is a member of one of the world's leading independent investment banking groups, with more than fifty offices in more than forty countries.  Rothschild & Co has expertise in domestic and cross-border restructurings, mergers and acquisitions, new capital raises and other investment banking services and particular experience in providing financial advice to financially troubled companies.  Moreover, Rothschild & Co is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

4.       Rothschild & Co and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases. Rothschild & Co's business reorganization professionals have served as financial and strategic advisors in numerous high-profile bankruptcies and restructurings, providing services to debtors, creditors' committees, and other constituencies in numerous cases, including, among others: *Affiliated Media Inc.; Allen Systems Group, Inc.; Allied Systems Holdings, Inc.; Alpha Latam; Alpha Natural Resources, Inc.; AMR Corp.; Answers*

---

[2]       Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

[3]       Certain of the disclosures herein relate to matters within the knowledge of employees of Rothschild & Co and are based on information provided by them.

Holdings, Inc.; Arcapita Bank B.S.C.(c); Automotores Gildemeister SpA; Autoseis, Inc.; Blockbuster Inc.; Caesars Entertainment Operating Company; Cenveo, Inc.; Chaparral Energy, Inc.; Chesapeake Energy Corp.; Coach Am Group Holdings Corp.; DSI Holdings, Inc.; FairPoint Communications, Inc.; Filene's Basement, LLC; First Place Financial Corp.; GenOn Energy, Inc.; Geokinetics Inc.; Global Aviation Holdings Inc.; Global Eagle Entertainment Inc.; Grupo Aeroméxico, S.A.B. de C.V.; GT Advanced Technologies, Inc.; Harry & David Holdings, Inc.; The Hertz Corporation, Inc.; Inner City Media Corp.; LCI Holding Co., Inc.; Lonestar Resources U.S. Inc.; Metro Affiliates, Inc.; Milacron Inc.; Nassau Broad. Partners, L.P.; Neb. Book Co., Inc.; Neenah Enterprises Inc.; NII Holdings, Inc.; Nordic Aviation Capital Designated Activity Company; Northwest Airlines Corp.; Penton Business Media Holdings, Inc.; PG&E Corporation; Recycled Paper Greetings Inc.; rue21, Inc.; Ruby Pipeline, LLC; Sbarro, Inc.; Solutia Inc.; Seadrill Limited; Seadrill Partners LLC; Sports Authority Holdings, Inc.; SunEdison, Inc.; Talen Energy Supply, LLC; TerraVia Holdings, Inc.; Trident Res. Corp.; UAL Corp.; Ultra Petroleum Corp.; VeraSun Energy Corp.; Westinghouse Electric Company LLC; WestPoint Stevens, Inc.; and Windstream Holdings, Inc.

5.      The Debtors require the services of a capable and experienced investment banker such as Rothschild & Co.  Moreover, Rothschild & Co has intimate familiarity with the Debtors' operations and capital structure through its prepetition services to the Debtors.  In providing these prepetition services, Rothschild & Co's professionals have become well-acquainted with the Debtors' businesses, operations, debt structure, creditors, and related matters, including (a) familiarizing themselves with the assets and operations of the Debtors; (b) analyzing the Debtors' liquidity and cash flow projections; (c) examining various potential strategic alternatives; (d) engaging with potential financing parties and strategic acquirors and coordinating due diligence

sessions; (e) negotiating with key creditor constituencies; and (f) providing additional investment-banking services in preparation for the filing of the Debtors' Chapter 11 Cases.

6.     In providing these and other prepetition services to the Debtors, Rothschild & Co has worked closely with the Debtors' senior management and their other advisors and is familiar with the other major stakeholders that will be involved in these Chapter 11 Cases. In addition, Rothschild & Co has acquired significant knowledge of the Debtors and their businesses and has developed relevant expertise with the Debtors' financial affairs, debt and capital structure, assets, business operations, financing documents, and other related material information. Accordingly, Rothschild & Co is well-qualified and uniquely able to represent the Debtors in these Chapter 11 Cases in an efficient and timely manner. Indeed, if the Debtors were required to retain an investment banker other than Rothschild & Co in connection with these Chapter 11 Cases, the Debtors, their estates, and all parties in interest would be prejudiced by the substantial time and expense that would be incurred in familiarizing another firm with the Debtors and their business.

7.     With its experienced professionals, and its understanding of the Debtors' financial history and business operations, Rothschild & Co fulfills a critical need that complements the services to be provided by the Debtors' other professionals. The Debtors' retention of Rothschild & Co, with its resources and capabilities, together with its prepetition experience advising the Debtors, is crucial to the success of these Chapter 11 Cases.

<u>**SERVICES TO BE PROVIDED**</u>

8.     The parties have entered into the Engagement Letter, which governs the relationship between the Debtors and Rothschild & Co. The terms and conditions of the Engagement Letter were negotiated at arm's length and in good faith between the Debtors and Rothschild & Co and reflect the parties' mutual agreement as to the substantial efforts that will be

required in this engagement. Under the Engagement Letter, in consideration for the compensation contemplated thereby, Rothschild & Co has provided and has agreed to provide the services outlined in the Application.

9.      To the extent that the Debtors request additional advisory services, Rothschild & Co will further amend the Engagement Letter accordingly and the Debtors will seek approval of the Court prior to it rendering any additional services.

10.     The Debtors may also file applications to employ additional professionals. Rothschild & Co will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

## PROFESSIONAL COMPENSATION

11.     In consideration of the services to be provided by Rothschild & Co, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtors have agreed to pay Rothschild & Co the proposed Fee and Expense Structure summarized in the Application.

12.     Rothschild & Co has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code.

13.     The Fee and Expense Structure is the result of arm's length negotiations between the Debtors and Rothschild & Co. The Debtors ultimately agreed to the Fee and Expense Structure because it is reasonable and appropriate in light of market conditions and because the Debtors require the services that Rothschild & Co has agreed to provide under the Engagement Letter. The Fee and Expense Structure also reflects the scope and difficulty of the comprehensive mandate that Rothschild & Co has undertaken and expects to undertake in connection with these Chapter 11 Cases and accounts for the potential for an unfavorable outcome as a result of factors outside of Rothschild & Co's control.

14.     Rothschild & Co believes that the Fee and Expense Structure is comparable to those generally charged by investment bankers of similar stature to Rothschild & Co for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed monthly fee and contingency amounts, tied to the consummation and closing of the transactions and services contemplated by the Debtors and Rothschild & Co in the Engagement Letter.

15.     The Fee and Expense Structure summarized in the Application and described fully in the Engagement Letter is consistent with Rothschild & Co's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of court, involving the services to be provided in connection with these Chapter 11 Cases.  Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by Rothschild & Co and other investment banks in connection with the rendering of comparable services to clients such as the Debtors.

16.     The Debtors and Rothschild & Co negotiated the Fee and Expense Structure to function as an interrelated, integrated unit, in correspondence with Rothschild & Co's services, which Rothschild & Co renders not in parts, but as a whole.  It would be contrary to the intention of Rothschild & Co and the Debtors for any isolated component of the Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of the services.   Instead, the Debtors and Rothschild & Co intend that the services be considered as a whole that is to be compensated by the Fee and Expense Structure in its entirety.

17.     The Fee and Expense Structure was also agreed upon in anticipation that a substantial commitment of professional time and effort would be required of Rothschild & Co and its professionals in connection with this assignment and in light of the fact that (a) such commitment may foreclose other opportunities for Rothschild & Co and (b) the actual time and

commitment required of Rothschild & Co and its professionals to perform its services may vary substantially from week to week and month to month during the pendency of these Chapter 11 Cases, creating "peak load" issues for Rothschild & Co.

18.     The Indemnification Provisions also were negotiated at arm's length and in good faith. Rothschild & Co respectfully submits that the Indemnification Provisions are reasonable and customary for investment banking engagements, both in and out of court, and that the Indemnification Provisions, are customary and reasonable for investment banking engagements, both in and out of court, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.

19.     In light of the foregoing and given the numerous issues that Rothschild & Co may be required to address in the performance of its services pursuant to the Engagement Letter, Rothschild & Co's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Rothschild & Co's services for both in court and out of court engagements of this nature, Rothschild & Co believes that the Fee and Expense Structure and Indemnification Provisions are fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

### RECORDKEEPING AND APPLICATIONS FOR COMPENSATION

20.     It is not the general practice of investment banking firms, including Rothschild & Co, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-1(B)(1) and the Guidelines. Rothschild & Co does not ordinarily maintain contemporaneous time records in tenth-hour increments or provide or conform to a schedule of hourly rates for its professionals, and therefore, Rothschild & Co is seeking to be excused from compliance with such information requirements set forth in Local Rule 2016-1(B)(1) and the

Guidelines and from compliance with any order establishing procedures for interim compensation and reimbursement of expenses of professionals pursuant to section 331 of the Bankruptcy Code with respect to Rothschild & Co's professional fees only.

21.    Rothschild & Co will maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.

22.    Rothschild & Co's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter and any procedures established by the Court.

## ROTHSCHILD & CO'S DISINTERESTEDNESS

**A.     The Rothschild & Co Corporate Group**

23.    Rothschild & Co is an indirect subsidiary of another entity named Rothschild & Co ("**Rothschild & Co Holdings**"), a French holding company that is publicly listed on the Euronext Paris stock exchange.   Through Rothschild & Co Holdings, Rothschild & Co has affiliate relationships with the approximately 170 other direct and indirect subsidiaries of Rothschild & Co Holdings located worldwide (collectively, the "**Affiliated Entities**" and, together with Rothschild & Co Holdings and Rothschild & Co, the "**Rothschild & Co Corporate Group**"), which figure is based on the consolidation scope of material subsidiaries and associates set forth in the Rothschild & Co annual report for the year ended December 31, 2021.   The entities in the Rothschild & Co Corporate Group engage in three principal lines of business:  (i) global advisory, (ii) wealth and asset management and (iii) merchant banking.   As a matter of policy, and as described more fully below, Rothschild & Co does not share confidential information about its clients with, or coordinate to offer new services to existing clients of, any other line of business within the Rothschild & Co Corporate Group.

24.     Rothschild & Co is part of the global advisory business, and it and the Affiliated Entities that are engaged in these activities are referred to herein as the "**Global Advisory Business**."  The Global Advisory Business provides investment banking and financial advisory services to clients, including advising clients on public and private mergers and acquisitions transactions, activist investor defense matters, debt financing, refinancing and restructurings, and IPOs and other equity issuances.  The Global Advisory Business does not have any sales or trading operations (*i.e.*, the Global Advisory Business is not in the business of trading stocks or any other securities).

25.     The wealth and asset management business ("**Wealth and Asset Management Business**") provides investment advice to individuals, families and institutions around the world, including foundations, charities, pension funds, financial intermediaries, third-party distributors and other institutions.  The Wealth Management portion of this business provides individualized advice to clients, particularly high net worth individuals, on managing and investing their wealth.  The Asset Management portion of the business develops proprietary investment strategies in which clients, particularly institutional clients, invest through separate accounts or co-mingled/private funds.  No employees of the Wealth and Asset Management Business will work on these cases, and employees of Rothschild & Co do not work for the Wealth and Asset Management Business.

26.     The merchant banking business ("**Merchant Banking Business**") is the investment arm of the Rothschild & Co Corporate Group and invests on behalf of both itself and its clients.  Its activities are concentrated in private equity investments in lower-middle market companies in Western Europe and the U.S. through primary and secondary markets; direct lending to privately owned, mid-market businesses in Europe; and managing funds and other client accounts invested

in large, global issuers of secured credit. No employees of the Merchant Banking Business and its subsidiaries will work on these cases, and employees of Rothschild & Co do not work for the Merchant Banking Business or its subsidiaries.

27.     The Global Advisory Business, Wealth and Asset Management Business and Merchant Banking Business, respectively, accounted for approximately 63%, 24% and 13% of the Rothschild & Co Corporate Group's gross revenue for the quarter ended June 30, 2022.

28.     The Rothschild & Co Corporate Group maintains separate legal and compliance departments for the various legal jurisdictions in which it operates worldwide (each, a "**Legal and Compliance Department**"). Within each Legal and Compliance Department, different groups of employees are responsible for the different lines of businesses being operated in the jurisdiction. The Legal and Compliance Department at Rothschild & Co responsible for the Global Advisory Business is referred to as the "**US GA Legal and Compliance Department**". The US GA Legal and Compliance Department has primary responsibility for Chapter 11 matters. The Legal and Compliance Departments other than the US GA Legal and Compliance Department are referred to as the **"Affiliated Legal and Compliance Departments**."

29.     Rothschild & Co, and the Rothschild & Co Corporate Group generally, maintains robust policies and procedures that are reasonably designed to detect and prevent the misuse of inside information. These policies and procedures are subject to regulatory oversight and audit by local governmental authorities around the globe (including the SEC and FINRA, in the U.S., and the ACPR, in France), internal compliance monitoring and internal audits. Among other things, employees are prohibited from trading securities for their own account while in possession of material non-public information (as defined under federal securities laws) and are subject to training and annual certification requirements regarding such policies and procedures.

30.     These policies apply to, and there are information barriers in place between, Rothschild & Co's team rendering services to the Debtors, on the one hand, and each of the Affiliated Entities, on the other.  These information barriers consist of physical and electronic barriers that restrict the flow of information among employees and business divisions, including confidential information.  These barriers consist of, among other things, separate physical office spaces for employees of Rothschild & Co and the Affiliated Entities, limiting access to shared drives only to authorized personnel and policies against discussing confidential information with unauthorized personnel.  These policies and barriers ensure, among other things, that no client confidential information held by the Global Advisory Business, including confidential or non-public information concerning the Debtors, is available to employees of either the Wealth and Asset Management Business or Merchant Banking Business, and that client confidential information is shared within the Global Advisory Business only on a need-to-know basis. Professionals from Rothschild & Co on one side of the wall have no non-public knowledge of, or control or discretion over, the decisions being made by professionals on the other side of the wall by the Wealth and Asset Management Business or Merchant Banking Business.

31.     These policies also provide that Rothschild & Co's team rendering services to the Debtors are prohibited from sharing the Debtors' confidential information with other employees of the Rothschild & Co Corporate Group without prior review and approval by the relevant Legal and Compliance Department, and they may only share such information internally within Rothschild & Co employees who need to know such information for purposes of advising the Debtors.[4]

---

[4]     The information barriers described in paragraphs 30 and 31 do not apply to (i) general communications as to the nature of the engagement with senior management of the Rothschild & Co Corporate Group who, due to their duties and responsibilities, have a legitimate need to know such information, where such individuals are informed as to the confidential nature of such information, and (ii) legal and compliance, accounting and other internal control

## C.    Connections Disclosures

32.    In connection with its proposed retention by the Debtors in these Chapter 11 Cases, Rothschild & Co undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors or their estates.

33.    Specifically, Rothschild & Co obtained from the Debtors or their representatives the names of individuals and entities that may be parties in interest in these Chapter 11 Cases (the "**Potential Parties in Interest**"), and such parties are listed on <u>**Schedule A**</u> attached hereto.

34.    The US GA Legal and Compliance Department compared the Potential Parties in Interest against internal databases maintained by the Global Advisory Business (the "**GA Database**") and the Merchant Banking Business (the "**Merchant Banking Database**" and together with the GA Database, the "**Databases**").   The GA Database includes all current and former Global Advisory Business client engagements, and the US GA Legal and Compliance Department limited its comparison to current and former client engagements that ended within three years before the date hereof.[5]   The GA Database includes summary descriptions of the client engagements, which allowed the US GA Legal and Compliance Department to analyze whether associated connections to Potential Parties in Interest are related to the Debtors or these Chapter 11 Cases, or cause Rothschild & Co to hold or represent an interest adverse to the Debtors' estates.   When necessary, the US GA Legal and Compliance Department conducted follow-up diligence to make these determinations, including contacting their counterparts at the relevant

---

functions within the Rothschild & Co Corporate Group that need to know such information for purposes of carrying out their control functions.

[5]    For purposes of this Declaration, an "engagement" indicates an assignment where an engagement letter was signed with a client.   All client mandates within the Global Advisory Business require a signed engagement letter. The comparison conducted by the Legal and Compliance Department did not include pitches for business or potential engagements that were abandoned before an engagement letter was signed.

Affiliated Legal and Compliance Departments. To the best of my knowledge, based on the process described herein, all connections discovered as a result of this analysis are set forth herein, including on **Schedule B** attached hereto.

35.     The Merchant Banking Database includes information regarding all of the Merchant Banking Business's current private equity investments. To the best of my knowledge, based on the process described herein, there are no matches between the Potential Parties in Interest and such investments.

36.     The Wealth and Asset Management Business is comprised of a number of separate businesses operating in different jurisdictions and through separate legal entities. There are approximately 20 Wealth and Asset Management Businesses worldwide (in addition to non-operating holding companies). Each of these businesses is operated separately from the other entities in the Rothschild & Co Corporate Group and is subject to regulation by governmental authorities in its country of organization. As a consequence, unlike the Databases described above for the Global Advisory Business and the Merchant Banking Business, there is no centralized database of client or other information for the Wealth and Asset Management Business. Instead, the relevant Affiliated Legal and Compliance Departments maintain their own records and systems in accordance with local law.

37.     With respect to Rothschild & Co Asset Management US Inc. (the Asset Management business in the United States), the US GA Legal and Compliance Department compared the Potential Parties in Interest against the most recent Form 13F filed with the SEC by Rothschild & Co Asset Management US Inc. Form 13F discloses all US-listed equity securities (including ETFs) in a manager's portfolio and certain related details. After speaking with members of the US GA Legal and Compliance Department, I understand that there are no similar public

disclosures made by Wealth and Asset Management Business entities elsewhere around the world. To the best of my knowledge, based on the process described herein, all matches between the Potential Parties in Interest and the holdings disclosed on such Form 13F are reflected on **Schedule B** attached hereto.

38.     As an additional check, the US GA Legal and Compliance Department sent an email questionnaire to their counterparts in the Affiliated Legal and Compliance Departments around the world who are responsible for monitoring business relationships and other connections for the Wealth and Asset Management Business and Merchant Banking Business. This questionnaire asked each recipient to review a list of (i) the names of the Debtors, (ii) Truist, and (iii) the following parties involved in litigation with the Debtors:  Monster Beverage Corporation, PepsiCo, Inc., Keurig Dr Pepper, Dairy Farmers of America, Inc., Southeast Cold Fill and The American Bottling Company (the "**Litigation Parties**"), and then to indicate whether the entities for which he or she was responsible (a) had any current or pending connection, or within the last 3 years had any connection, to any of those entities or (b) had any investments in any of those entities.  To the best of my knowledge, based on the process described herein, any affirmative responses are reflected on **Schedule B** attached hereto.

39.     Based on the business separation and compliance information barriers referred to above, I do not believe that Rothschild & Co's indirect connections to Potential Parties in Interest through its affiliates in the Wealth and Asset Management Business and the Merchant Banking Business constitute a conflict of interest that would disqualify Rothschild & Co from providing the services described in the Engagement Letter.

40.     The US GA Legal and Compliance Department also consulted with certain members of the Rothschild & Co Corporate Group finance department for purposes of revenue disclosures, which are set forth herein.

41.     In addition, certain senior members of the team working on the Debtors' engagement, including me, reviewed preliminary drafts of this Declaration and the draft disclosures provided by the US GA Legal and Compliance Department.   To the best of my knowledge, based on the process described herein, all connections discovered as a result of this analysis are set forth herein, including on **Schedule B** attached hereto.

42.     To the best of my knowledge, based on the process described herein, none of Rothschild & Co, I or any other employee of Rothschild & Co has any connection with or holds any interest adverse to the Debtors, their estates or the Potential Parties in Interest, except as set forth herein, including on **Schedule B** attached hereto.

43.     To the best of my knowledge, based on the process described herein, no connection listed on **Schedule B** attached hereto is related to the Debtors or these Chapter 11 Cases.   Other than the Debtors, Rothschild & Co will not represent any party in connection with any matter in these Chapter 11 Cases.   Rothschild & Co can be adverse to all of its current and former clients in matters relating to these Chapter 11 Cases.

44.     To the best of my knowledge, based on the process described herein, no individual client described on **Schedule B** attached hereto accounts for more than 1.0% of Rothschild & Co's gross revenue during the twelve month period prior to the date hereof, except that Inovar Packaging

Group, LLC and IGL Holdings I Corp accounts for less than 2.25% of Rothschild & Co's gross revenue during the twelve month period prior to the date hereof.[6]

45.     To the best of my knowledge, based on the process described herein, no individual client described on **Schedule B** attached hereto accounts for more than 1.0% of the Global Advisory Business's gross revenue during the twelve month period prior to the date hereof.

46.     In the ordinary course of business, investment managers affiliated with certain Potential Parties in Interest or their clients may have previously, may currently and, in the future, may invest in funds managed by the Merchant Banking Business or securities issued by such managed funds (including collateralized loan obligation funds).  Based on the business separation and compliance information barriers referred to above, I do not believe that these indirect connections to Potential Parties in Interest through Rothschild & Co's affiliates in the Merchant Banking Business constitute a conflict of interest that would disqualify Rothschild & Co from providing the services described in the Engagement Letter.

47.     To the best of my knowledge, the Merchant Banking Business generates revenue from three sources: (1) fund management fees based on total assets under management, (2) returns from investing Rothschild & Co Corporate Group capital in funds that it manages and (3) discretionary investment mandates (*i.e.*, investing client funds on a discretionary basis).  With respect to categories (1) and (2), these revenues are not attributable to any particular party; instead, these revenues are derived from fees paid by the funds under management by the Merchant Banking Business and returns on Rothschild & Co Corporate Group capital investments.  As noted above, to the best of my knowledge, none of the Potential Parties in Interest are among the

---

[6] As noted in **Schedule B**, Rothschild & Co's services to Inovar Packaging Group, LLC and IGL Holdings I Corp were unrelated to the Debtors.

Merchant Banking Business's current private equity investments. With respect to category (3), based on the questionnaire described in paragraph 38 above, none of the Debtors, Truist or the Litigation Parties are discretionary investment clients of the Merchant Banking Business.

48. To the best of my knowledge, based on the process described herein, none of Rothschild & Co, I or any other employee of Rothschild & Co, holds or represents any interest adverse to the Debtors or their estates or has any connection with the Potential Parties in Interest, except (i) as set forth in **Schedule B** attached hereto and (ii) as otherwise set forth below:

(a) Rothschild & Co is a large investment banking firm and likely has provided or is providing services unrelated to the Debtors for companies and individuals that have conducted business in the past and/or currently conduct and/or in the future may conduct business with the Debtors and who may be creditors of the Debtors. To the best of my knowledge, based on the process described herein, Rothschild & Co's services to these parties were and are wholly unrelated to the Debtors, their estates or these Chapter 11 Cases. Rothschild & Co will continue to provide professional services to Potential Parties in Interest in these Chapter 11 Cases; provided that such services do not relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

(b) As part of its practice, Rothschild & Co appears in numerous cases, proceedings and transactions involving many different professionals, some of which may represent claimants and parties in interest in the Debtors' Chapter 11 Cases. Furthermore, Rothschild & Co has in the past and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to these Chapter 11 Cases. To the best of my knowledge, based on the process described herein and my current knowledge of the professionals involved, none of these connections represent an interest adverse to the Debtors or their estates.

(c) In the ordinary course of their diverse businesses, Rothschild & Co and the Affiliated Entities appear in numerous cases, proceedings and transactions involving many different banking and financial institutions and attorneys, accountants, investment bankers, financial advisors, financial consultants and other professional advisors, some of which may be or represent claimants and Potential Parties in Interest in these Chapter 11 Cases. Furthermore, Rothschild & Co and the Affiliated Entities have in the past and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to these cases. To the best of my knowledge, based on the process described herein and my current knowledge of the banking and financial institutions and professionals

involved, none of these connections represent an interest adverse to the Debtors or their estates.

(d)     Rothschild & Co provides financial advisory and investment banking services to a wide variety of clients. As a result, Rothschild & Co has represented, and may in the future represent, certain Potential Parties in Interest in matters unrelated to these Chapter 11 Cases, either individually or as part of representation of an ad hoc or official committee of creditors or interest holders. To the best of my knowledge, based on the process described herein, none of these connections represent an interest adverse to the Debtors or their estates.

(e)     Rothschild & Co pays taxes to, and has other ordinary course interactions with, taxing authorities in a number of different jurisdictions, some of which are among the Potential Parties in Interest. To the best of my knowledge, based on the process described herein and my current knowledge of the taxing authorities involved, none of these connections represent an interest adverse to the Debtors or their estates.

49.     To the best of my knowledge, based on the process described herein, I am not related or connected to and, to the best of my knowledge, no other professional of Rothschild & Co is related or connected to, any United States Bankruptcy Judge for the Southern District of Florida or any employee in the Office of the United States Trustee for Region 21, except that Rothschild & Co personnel have interacted with certain of such judges and such employees in the ordinary course of their work in other bankruptcy cases.

50.     During the 90 days and year immediately preceding the Petition Date, Rothschild & Co received the following payments in connection with its engagement under the Engagement Letter: (a) fee payments totaling $755,206.80 and (b) expense-reimbursement payments totaling $20,468.31, including $10,000 in anticipated prepetition expenses in process or not yet reflected in Rothschild & Co's accounting system on the Petition Date. Other than these amounts, Rothschild & Co did not receive any payments from the Debtors during the 90 days or year immediately preceding the Petition Date.

51.     As of the Petition Date, the Debtors did not owe Rothschild & Co for any fees or expenses incurred prior to the Petition Date.  It is possible that certain expenses that were incurred by Rothschild & Co that are reimbursable under the terms of the Engagement Letter were not yet reflected on Rothschild & Co's books and records as of the Petition Date.  Upon entry of an order approving the Application, Rothschild & Co will waive any claim for such unreimbursed expenses in excess of amounts paid to Rothschild & Co prepetition.

52.     Accordingly, insofar as I have been able to determine, none of Rothschild & Co, I or any employee of Rothschild & Co holds or represents any interest adverse to the Debtors or their estates, and Rothschild & Co is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14), as modified by section 1107(b), in that such professionals:

(a)     are not creditors, equity security holders, or insiders of the Debtors;

(b)     were not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer or employee of the Debtors; and

(c)     do not have an interest materially adverse to the interest of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

53.     To the extent that Rothschild & Co discovers any additional facts bearing in a material respect on its disinterestedness during the period of Rothschild & Co's retention in connection with these Chapter 11 Cases, Rothschild & Co will supplement the information contained in the Application and this Declaration to disclose such facts as required by Bankruptcy Rule 2014(a).

*[Remainder of page intentionally left blank.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 10, 2022
New York, New York

/s/
Homer Parkhill
Co-Head of Restructuring, Partner
Rothschild & Co US Inc.

# SCHEDULE A

## Potential Parties in Interest List[1]

---

[1] The categorization of an entity is neither a concession as to whether such entity has a valid claim against the Debtors nor as to the nature of such claim. To the extent that a Potential Party in Interest falls under more than one category, such Potential Party in Interest is included in only one category. Furthermore, the inclusion of a Potential Party in Interest within one or more categories is for convenience only and is not, and shall not be construed as, an acknowledgement or admission regarding any Potential Party in Interest, including with respect to any claims or relationships that such Potential Party in Interest may have with the Debtors.

11690129-1

# Potential Parties in Interest List[1]

## 1. Debtors and Affiliated Entities

| | |
|---|---|
| Vital Pharmaceuticals, Inc. | Entourage IP Holdings, LLC |
| Vital Pharmaceuticals International Sales, Inc. | Bang Energy Canada, ULC |
| Bang Energy Canada, Inc. | Bang Jets, LLC |
| JHO Intellectual Property Holdings, LLC | Bang Energy Mexico S. DE R.L. de C.V. |
| JHO GA-1 Investment, LLC | Bang Energy B.V. |
| JHO NV-1 Investment, LLC | Bang Energy (Australia) Pty Ltd. |
| JHO Real Estate Investment, LLC | Bang Energy VPX Sports Ecuador S.A.S. |
| Sheridan Real Estate Investment A, LLC | Bang Energy Costa Rica LTDA |
| Sheridan Real Estate Investment B, LLC | Bang Energy Peru S.A.C. |
| Sheridan Real Estate Investment C, LLC | Bang Energy Brazil LTDA (Brazil) |
| Quash Seltzer, LLC | Bang Energy Chile SPA |
| Rainbow Unicorn Bev LLC | Bang Energy Colombia SAS |

## 2. Debtors' Restructuring Professionals

| | |
|---|---|
| Latham & Watkins LLP | Huron Consulting Group |
| Berger Singerman LLP | Rothschild & Co US Inc. |

## 3. Ordinary Professionals

| | |
|---|---|
| Quarles & Brady LLP | Nelson Mullins Riley & Scarborough LLP |
| Pettit Kohn Ingrassia Lutz & Dolin PC | J. Robbin Law, PLLC |
| Kuckelman Torline Kirkland | Krishel Law Firm |
| Wilson Elser Moskowitz Edelman | Murchison & Cumming, LLP |
| Jackson Lewis P.C. | Cole, Scott & Kissane, P.A. |
| Moore Rabinowitz Law | |

## 4. Lease Counterparties

| | |
|---|---|
| General Motors Financial Company, Inc. | Ally Financial |
| Crown Lift Trucks | Crown Equipment Corporation |
| Crown Credit Company | Penske Truck Leasing Co., L.P. |
| Ryder System, Inc. | Chrysler Capital |

---

[1]  The parties included on this list (and the categories contained herein) are for purposes of a conflicts check only and should not be relied upon by any party as a list of creditors or for any other purpose.  As listing a party once allows our conflicts specialists to run a check on such party, we have attempted to remove duplicate entries where possible.  Accordingly, a party that would otherwise fall under multiple categories is likely to be listed under only one category

5. **Landlords/Lessors**

| | |
|---|---|
| 12M Commercial Properties, LLC | Phx Warehouse |
| 1600FL, LLC | Prologis Targeted US |
| C1 DAL III-V, LLC - Colony Capital | Ranger H-TX LP |
| Centerpoint (Dogwood) | Rbrothers LLC/ NV, LLC |
| CK Afton Ridge II, LLC | Rexford Inudstrial Realty, LP |
| Dalfen Industrial | The Rose Properties |
| Dogwood Holdings, LLP | TGA Cactus DC II LLC Teachers Ins & Annuity Assoc of America |
| Driscoll, LLP | Personal Mini Storage |
| Duke Realty | Neighborhood Storage Center Co |
| Eastgroup Properties LP - Jacksonville | Midgard Self Storage |
| Eastgroup Properties, LP | Compass Self Storage |
| Everman Trade Center (Cabot Industrial) | Spring Lake Storage |
| Evox Holdings LLC (Sheridan B) | Menifee storage |
| Icon Industrial Owner Pool - Bree Jupiter Western | West Side Storage |
| Kearny Mesa West, LLC | Powdersville Self Storage |
| KP Properties of Ohio | Tucson RV Storage |
| PPF Lincoln Medley, LLC | Welbic WF Management LLC |
| Medley Logistics | Gimmel Tammuz Realty |

6. **Counsel/Professionals to Material Counterparties**

| | |
|---|---|
| Moore & Van Allen PLLC | FTI Consulting |
| Shutts & Bowen LLP | |

7. **Current and Former Officers and Directors of Debtors and Affiliates**

| | |
|---|---|
| Greg Robbins | Gregg Metzger |
| Frank Massabki | Gene Bukovi |
| Rich Caruso | Eugene Bukovi |
| Kathleen Cole | Guillermo Escalante |
| Eric Hillman | |

8. **Significant Equityholders**

| | |
|---|---|
| John H. Owoc | |

9. **Secured Lenders**

| | |
|---|---|
| Truist Bank | Synovus Bank |
| CoBank, ACB | Federal Agricultural Mortgage Corporation |

| Agcountry Farm Credit Services, FLCA | Huntington National Bank |
|---|---|
| Farm Credit Bank of Texas | Greenstone Farm Credit Services, FLCA |
| Citizens Bank, N.A. | Comerica Bank |
| Compeer Financial, PCA | HSBC Bank USA, N.A. |
| United Community Bank d/b/a Seaside Bank and Trust | |

## 10. **Banking Relationships**

| Bank of America, N.A. | PayPal |
|---|---|

## 11. **Parties to Pending Litigation**

| Alejandro Machado | Reign Inferno |
|---|---|
| Balboa Capital Corporation | Monster Energy Company |
| Ball Corporation | Nexus Steel, LLC |
| Bang Diamonds LLC | Orange Bang, Inc. |
| Belvac Production Machinery, Inc. | PepsiCo, Inc. |
| Berlin Manufacturing | Premier Distributing Company |
| Berlin Packaging, LLC | Premier Nutrition Products, LLC |
| Brandyn Alejos | Premium Beverage Company |
| Breen Acres Aquatics, Inc. | ProSupps |
| Dairy Farmers of America, Inc. | Pro Supps USA LLC d/b/a Professional Supplements A/K/A Pro Supplements |
| Daniel Yepes | Quang Nguyen |
| Derik Fay | Rodney Cyril Sacks |
| Elegance Brands, Inc. | Bryan Shane Dees |
| Europa Sports Partners | Sony Music Entertainment |
| Gulfstream Aerospace Corporation | Stephen Cohen |
| Joao P Leopardo | Suddath Global Logistics, LLC |
| Keurig Dr Pepper Inc. | The American Bottling Company Inc. |
| Markerly, Inc. | The House of LaRose, Inc. |
| Massimo Zanetti Beverage USA, Inc. | TikTok, Inc. |
| Webb & Gerritsen, Inc. | Triller, Inc. |
| Yaritza Lozano | Shannon Troglia |
| Warner Music Group | UMG Recordings, Inc. |
| Adam Perry | Vani Deva Hari a/k/a "Food Babe" |
| Amanda Wightman | Aaronda Walton |
| Amber N. Killmon | Amanda Light |
| Amy Maros | Arianna Jonae Henderson |
| Andrew LaRocca | Arnold Classic Australia PTY, LTD |
| Branch Banking and Trust Company | Averell Luedecker |
| Carnegie Technologies, LLC | Brett Martin |

| Christin Kubsch | Brightfractal, Inc. |
| Csc Corporate Domains, Inc. | Dang Foods LLC |
| Christopher Alfieri | Edmund Elien |
| Crystal Bowley-Reagan | Energy Beverages, LLC |
| Darrell James Bennet II | Fabco Metal Products LLC |
| David Serrano Ramirez | GNC Holdings Inc. |
| Integrated Masonry | Gorilla Marketing, LLC |
| ISEC Inc. | Haci Mechanical Contractors Inc. |
| James Rodriguez | Heavy Equipment Movers & Installation LLC |
| Jasmine Sade Williams | Hardrock Concrete Placement Co Inc. |
| Jeannine Smith | Landmark Custom Homes of Broward |
| Jennifer Quillen | Landmark Custom Ranches Inc. |
| Kelly Ocampo | Lasiah R. Villalpando |
| Konya Seker Sanayi Ve Ticaret Anonim Sirketi | Laura Dawson |
| Kristin Wong | Leading Edge Expositions, LLC d/b/a LEEXPOS |
| Krystle Michele Glenn | Marc J. Kesten |
| Monster Beverage Corporation | PhD Marketing, INC. |
| Noel Christmas Lights Professional, Inc. d/b/a Noelle Lights | Prime Time Group Corp |
| NoSo Holdings LLC | Professional Supplements LLC d/b/a Wisconsin Professional Supplements LLC and A/K/A Official Professional Supplements |
| Reign Beverage Company LLC | Records Label, LLC |
| Scarlett Bridget Hernandez-Zavala | Tadasha Lenorah Hodges |
| Scarlett Hernandez | Terra Weston Residential, LLC |
| Smart Technologies Solutions, LLC | Trench Shore Rentals |
| Summer Shores | Tunes LLC |
| Victor Lanza | Wallice Plumbing, Inc. |

## 12. Insurance and Insurance Providers

| Federal Insurance Company | AXIS Surplus Insurance Company |
| Great Northern Insurance Company | Arch Specialty Insurance Company |
| Navigators Specialty Insurance Company | StarStone National Insurance Company |
| American International Group, Inc. | Aspen Specialty Insurance Company |
| Colony Insurance Company | Landmark American Insurance Company |
| Travelers Property Casualty Company of America | Lexington Insurance Company |
| Lloyd's of London | Hallmark Insurance Company |

13. **Potential Major Unsecured Creditors (Including Counterparties to Major Contracts)**

| | |
|---|---|
| Varni Brothers Corporation | Ardagh Metal Beverage USA, Inc. |
| Total Quality Logistics, LLC TQL | Ball Metal Beverage Container Corp |
| XPO Global Forwarding, Inc. | Graphic Packaging International |
| Shanghai Freeman Americas, LLC | Priority-1, Inc. |
| American Express | QuikTrip Corporation |
| Gordon & Rees | England Logistics, Inc |
| CW Carriers Dedicated Inc. | Glen Raven Logistics Inc. |
| Inovar Packaging Florida, LLC | Doehler USA, Inc. |
| Fona International Inc. | MHW, Ltd/ Doehler NA |
| FedEx | Wild Flavors, Inc. |

14. **Vendors[2]**

| | |
|---|---|
| Refresco Canada Inc. | MetLife Insurance |
| Prinova Solutions Europe Limited | Mutual of Omaha |
| Prinova US LLC | ADP, Inc. (Automatic Data Processing, Inc.) |
| CKS Packaging, Inc. | Transamerica Employee Benefits |
| Konings Drinks BV | Principal Life Insurance 401K |
| Trinity Logistics Inc. | Brown & Brown of Florida Inc., |
| United Health Care | WageWorks |
| Concentra - Occupational Health Centers of the Southwest, P. | Nationwide DVM Insurance Agency |
| CHUBB & SON | First Insurance Funding |
| Optum Financial, Inc. | The Mercova Group LLC |
| STB Agency Services Operating | Trans-Market, LLC |
| Krones, Inc. | Berner Food & Beverage, LLC |
| Chicago Title Company, LLC | Milk Specialties Global |
| Refresco Beverage US Inc. COTT | CHEP USA |
| Team Eagle Logistics | KRYNICA VITAMIN SPÓŁKA AKCYJNA |
| J.B. Hunt Transport, Inc. | Updike Distribution |
| The Haskell Company | Imbera S.A. de C.V. |
| Sidel Blowing & Services | Network LeasePlan U.S.A., Inc. |
| Arizona Production & Packaging LLC | Portland Bottling Company |
| United States Treasury | American International Foods |
| BagPak Poland LLC | Presence From Innovation |
| Glen Raven Logistics Inc. | CI421 474 W Buckeye LLC CAM INVESTMENTS 421 LLC |

---

[2] The vendors included herein includes vendors representing the top 80% of the Debtors' spend over the past 24 months.

| Expolanka USA LLC | CSPC Innovations USA Inc. |
|---|---|
| Alto Freight | Costco Wholesale Corp |
| R&K Logistics, Inc. | Takasago International Corporation |
| Kalis Kleiman & Wolfe | Wuzhi County Zhihui Sci & Tech Co, LTD |
| Solar Green Biotechnologies, Inc. Wuxi Cima Science Co. | Cabot Industrial Value Fund VI Operating CIVF VI-TX1M01-M04, |
| ACE Tools CO LIMITED | Khalsa Transportation Inc. |
| Genesis Global Workforce Solutions | ABF Freight |

**15. Lien Search Parties**

| Ignite International, Ltd. | Great America Financial Services Corp. |
|---|---|
| Ignite Beverages, Inc. | Hitachi Capital America Corp. |
| James Gracely | Cheryl Ohel |
| DeLage Landen Financial Services, Inc. | Donna Williams |
| TFG Leasing Fund III, LLC | Briggs Equipment, Inc. |
| Canon Financial Services, Inc. | City Beverage-Illinois, LLC d/b/a Lake Shore Beverage, LLC |
| PNC Bank, National Association | Spirit & Sanzone Distributors Co., Inc. |
| PNC Equipment Finance, LLC | UMC Recordings, Inc. |
| Webbank | Capitol Records, LLC |
| CT Corporation System | Universal Music Corp. |
| Toyota Industries Commercial Finance, Inc. | Universal Music Z Tunes LLC |
| Americredit Financial Services, Inc. d/b/a GM Financial | Universal Musica, Inc. |
| U.S. Bank Equipment Finance | Polygram Publishing, Inc. |
| BFG Corporation | Songs of Universal, Inc. |
| Centurylink Communications, LLC | Universal Music-MGB NA, LLC |
| Sony Music Entertainment US Latin LLC | Dang Foods Company |
| Zomba Recording LLC | Arista Records LLC |
| Arista Music | LaFace Records LLC |
| Record Label, LLC | Cryo-Lease, LLC |
| Volcano Entertainment III LLC | |

**16. Other Unsecured Creditors**

| 7-Eleven, Inc. | SEKO WORLDWIDE LLC |
|---|---|
| Circle K Stores, Inc. | Dieck & Co. Erfrischungsgetranke OHG |
| Independent Buyers Co-op | C.H. Robinson International |
| QuikTrip Corporation | Gehlen Schols Transport & Logistics B.V |
| Speedway LLC | ADM Wild Europe GmbH & Co. KG |
| Target Corporation | DIS BV |
| Affordable Buying Group | Refresco Iberia |
| Family Dollar, Inc. | Prinova Solutions Europe Limited |

| NY Barbell | Ewals Cargo Care B.V. |
| Kroger | Oettinger Brauerei GmbH |
| CHEVRON EXTRA MILE | Kerry Ingredients & Flavours Italia Spa |
| Stellar Group, Inc. | WERK Plaats Sittard b.v. |
| Doehler Dry Ingredients Solutions | EFL GLOBAL LOGISTICS CANADA LTD |
| Crown Cork & Seal USA, Inc. | POP Display Product (HK) Limited Dongguan Pop Display & Pack |
| Direct Connect Logistix, Inc. | Refresco Canada Inc. |
| Green Wave Ingredients (GWI) | Simon Pure Marketing Inc. |
| Total Quality Logistics, LLC TQL | Alliance IntraPak Inc. |
| Nelson Mullins Riley & Scarborough LLP | CHEP Canada Inc. |
| QuikTrip Corporation | Expert Aviation Inc. |
| Inventus, LLC Legility | Alto Systems (Stoked) |
| States Logistics Services, Inc. | C.H. Robinson International |
| Parallel Products | All Brands Distribution, LLC |
| KJM Aluminum Can SDN BHD | Timothy Brown |
| Recycle America LLC | Peter Fischer |
| Total Quality Logistics, LLC TQL | Brendan Abbot |
| Keller Warehousing & Co-Packing LLC | Jacob Scheibe |
| Navajo Express, Inc. | Southeast Cold Fill, LLC |
| Fusion Logistics Services, LLC | Daisy Duke Promotions, LLC |
| England Logistics, Inc. | Carolina Canners |
| Krier Foods, Inc. | Modern Jet Solution |

## 17. Taxing and Other Significant Governmental Authorities

| IRS Department of Treasury | State of Florida |
| Alabama Department of Revenue | Georgia Dept of Revenue Processing Center |
| Arizona Department of Economic Security | Illinois Department of Revenue |
| Arizona Department of Revenue | Kentucky Department of Revenue |
| Colorado Department of Revenue | Massachusetts Department of Revenue |
| Commonwealth of Massachusetts William Francis Galvin | Minnesota Revenue |
| Comptroller of Maryland Revenue Administration Division | Nevada Dept. of Taxation |
| Franchise Tax Board California | New Hampshire Employment Security ATTN: Cashier |
| Georgia Department Of Revenue | New Jersey Division of Taxation Revenue Processing Center |
| New Jersey DOR | State of Connecticut Dept of Revenue Svc |
| North Carolina Dept of Revenue NCDOR | State of Delaware |
| Ohio Treasurer of State | State of Massachusetts |

| | |
|---|---|
| Oregon Department of Revenue | State of New Hampshire |
| Oregon Dept of Revenue POBox14780 | State of New Jersey |
| South Carolina Department of Revenue | State of NJ Division of Taxation Corporation Business Tax |
| State of Connecticut | Tennessee Department of Revenue |
| Texas Comptroller of Public Accounts | Virginia Department of Taxation |
| Utah State Tax Commission | Wisconsin Department of Revenue |

## 18. **Utility Providers**

| | |
|---|---|
| All Pro Pest | Garratt - Callahan |
| Amerigas | Green Mountain Energy |
| AT&T | Greystone Power-GA location |
| Athens Services | GTT |
| Atmos Energy | JEA |
| Austell Natural Gas-GA location | Kone Elevator |
| Balgas | LADWP-ELCTRICITY |
| Blue Stream | Landcare |
| City of Fort Myers | Lee County Electric Company |
| City of Pembroke Pines | NV Energy |
| City of Phoenix | Ontario Municipal |
| City of Sunrise | Ontario-Water |
| Clark County Water | Orange County |
| Comcast | Orlando Utilities Commission |
| ConnectWise | Prime Power |
| Cox | ReadyRefresh |
| Critical System | Reliant |
| Daiken | Republic Services |
| De Lage Landen Financial Services | Rocky Mountain |
| Dominion Energy | San Diego Gas & Electric |
| Douglas County Water& Sewer-GA Location | SecurAmerica |
| Duke Energy | Southern California Edison |
| Fire Alarm | Southwest Gas Corporation |
| Frontier | TECO |
| Sparklets | Town of Medley |
| Spectrum | TXU |
| Spectrum Business | Verizon |
| SRP | Viasat |
| Suburban Propane | Weston |
| Waste Management | Xcel Energy |
| Waste Pro | Waste Recycle |

19. **United States Bankruptcy Judges in the Southern District of Florida**

| | |
|---|---|
| The Honorable A. Jay Cristol | The Honorable Peter D. Russin |
| The Honorable Robert A. Mark | The Honorable Erik P. Kimball |
| The Honorable Scott M. Grossman | The Honorable Laurel M. Isicoff, Chief Judge |
| The Honorable Mindy A. Mora | |

20. **Staff for Southern District of Florida Bankruptcy Judges**

| | |
|---|---|
| Emily Maza | Marcy Gatell |
| Kayla Heckman | Corinne Aftimos |
| Noemi Sanabria | Jackie Antillon |
| Jennifer Rolph | Tara Trevorrow |
| Cheryl Kaplan | Meera Khan |
| Susan Gutierrez | Maria Romaguera-Serfaty |
| Dawn Leonard | Edy Gomez |
| Grace V. Figueroa | Casey Wiener |
| Melva Weldon | |

21. **United States Trustee for the Southern District of Florida (and Key Staff Members)**

| | |
|---|---|
| Guy A. Van Baalen | Sofia Kesep |
| Heather Barfus | Keith H. Kronin |
| Adisley M. Cortez-Rodriguez | Lupe M. Martinez |
| Diane M. DeZinno | Diana M. Nuñez |
| Heidi A. Feinman | Hugo L. Paiz |
| Lynn M. Fernandez | Ariel Rodriguez |
| Myriam A. Fernandez | Steven D. Schneiderman |
| Charles A. Fordham | Katherine E. Simons |
| Dan Lee Gold | Yevgeny Sulsky |
| Benedicto J. Gonzalez-Leon | |

**SCHEDULE B**

**Vital Pharmaceuticals, LLC**
**("Vital Pharmaceuticals")**

| Party in Interest[1] | Entity having a connection with (i) Rothschild & Co US or (ii) an Affiliated Entity | Nature of Connection[2] |
|---|---|---|
| American Express | American Express | 165,679 shares of American Express at a market value of $22,966,000 are under management by Rothschild & Co Asset Management US Inc.<br><br>Current Rothschild & Co US vendor. |
| American International Group, Inc. | American International Group, Inc. | Rothschild & Co US is currently advising and formerly advised ad hoc creditors committees on matters unrelated to Vital Pharmaceuticals where American International Group is and was a member.<br><br>GA Affiliate is currently involved in a transaction unrelated to Vital Pharmaceuticals where American International Group is a participant. |
| AT&T | AT&T | 293,416 shares of AT&T at a market value of $6,150,000 are under management by Rothschild & Co Asset Management US Inc. |

---

[1]　　Rothschild & Co US has limited its search to the Parties in Interest provided by Vital Pharmaceuticals.  Affiliates, subsidiaries or parent companies of Parties in Interest have not been searched unless specifically noted.

[2]　　A "**GA Affiliate**" is an entity in the Global Advisory Business other than one of the Retained Entities.

**Vital Pharmaceuticals, LLC**
**("Vital Pharmaceuticals")**

| Bank of America | BK of America Corp; Bank of America – Merrill Lynch | 4,749,285 shares of Bank of America at a market value of $147,845,000 are under management by Rothschild & Co Asset Management US Inc.<br><br>GA Affiliates are and were involved in transactions unrelated to Vital Pharmaceuticals where Bank of America is and was a participant. |
|---|---|---|
| Berlin Packaging | Berlin Packaging LLC | Rothschild & Co US was involved in a transaction unrelated to Vital Pharmaceuticals where Berlin Packaging was a participant. |
| Chubb & Son | Chubb | Rothschild & Co US formerly advised an ad hoc creditors committee on a matter unrelated to Vital Pharmaceuticals where Chubb was a member. |
| C1 DAL III-V, LLC - Colony Capital | Colony Capital SAS | GA Affiliate is involved in a transaction unrelated to Vital Pharmaceuticals where Colony Capital SAS is a participant. |
| Comcast | Comcast | 1,863,518 shares of Comcast at a market value of $73,124,000 are under management by Rothschild & Co Asset Management US Inc.<br><br>Current Rothschild & Co US vendor. |
| Comerica Bank | Comerica | GA Affiliate was involved in a transaction unrelated to Vital Pharmaceuticals where |

Source: Interested Party List 10/4/22

**Vital Pharmaceuticals, LLC**
**("Vital Pharmaceuticals")**

| | | |
|---|---|---|
| | | Comerica was a participant. |
| Duke Energy | Duke Energy | 1,039,288 shares of Duke Energy at a market value of $111,422,000 are under management by Rothschild & Co Asset Management US Inc. |
| FedEx | FedEx | Current Rothschild & Co US vendor. |
| Fischer | Fischer Tech International Pte. Ltd.; Fischer Tech Pte. Ltd. | GA Affiliate formerly advised an ad hoc creditors committee on a matter unrelated to Vital Pharmaceuticals where Fischer Tech was a member. |
| General Motors Financial Company, Inc | General Motors; General Motors Strasbourg SAS | GA Affiliates were involved in transactions unrelated to Vital Pharmaceuticals where General Motors was a participant. |
| Graphic Packaging International | Graphic Packaging Holding Co | 412,921 shares of Graphic Packaging Holding Co at a market value of $8,465,000 are under management by Rothschild & Co Asset Management US Inc. |
| GTT | GTT Communications, Inc. | GA Affiliates are and were involved in transactions unrelated to Vital Pharmaceuticals where GTT Communications is and was a participant. |
| Hitachi Capital America Corp. | Hitachi Ltd. | GA Affiliates are and were involved in transactions unrelated to Vital Pharmaceuticals |

**Vital Pharmaceuticals, LLC**
**("Vital Pharmaceuticals")**

| | | where Hitachi Ltd. is and was a participant. |
|---|---|---|
| HSBC Bank USA, N.A. | HSBC Holdings Plc; HSBC France | GA Affiliates are and were involved in transactions unrelated to Vital Pharmaceuticals where HSBC is and was a participant. |
| | | GA Affiliate formerly advised an ad hoc creditors committee on a matter unrelated to Vital Pharmaceuticals where HSBC was a member. |
| Inovar Packaging Florida, LLC | Inovar Packaging Group LLC; IGL Holdings I Corp | Former Rothschild & Co US client on a matter unrelated to Vital Pharmaceuticals. |
| Keurig Dr Pepper | Keurig Dr Pepper | The Wealth and Asset Management Business maintains investments in Keurig Dr Pepper on behalf of certain of its clients on an execution only basis (*i.e.*, the client maintains control of the investment and the relevant voting rights). |
| | | The Wealth and Asset Management Business holds shares in Keurig Dr Pepper for clients maintaining bank accounts with the Wealth and Asset Management Business. |
| Konings Drinks BV | Konings NV | Current GA Affiliate client on a matter unrelated to Vital Pharmaceuticals. |
| MetLife Insurance | MetLife, Inc. | Former Rothschild & Co US client on matters unrelated to Vital Pharmaceuticals. |

Internal

**Vital Pharmaceuticals, LLC
("Vital Pharmaceuticals")**

| | | |
|---|---|---|
| | | Rothschild & Co US formerly advised an ad hoc creditors committee on a matter unrelated to Vital Pharmaceuticals where MetLife was a member.<br><br>GA Affiliate was involved in a transaction unrelated to Vital Pharmaceuticals where MetLife was a participant. |
| Pepsi | PepsiCo Inc. | 605,107 shares of PepsiCo Inc. at a market value of $100,847,000 are under management by Rothschild & Co Asset Management US Inc.<br><br>Certain large cap value clients of Rothschild & Co Asset Management US hold PepsiCo shares in their portfolio.<br><br>The Wealth and Asset Management Business maintains investments in PepsiCo on behalf of certain of its clients on an execution only basis (*i.e.*, the client maintains control of the investment and the relevant voting rights).<br><br>The Wealth and Asset Management Business holds shares in PepsiCo for clients maintaining bank accounts with the Wealth and Asset Management Business. |
| PNC Equipment Finance, LLC; PNC Bank, National Association | The PNC Financial Services Group, Inc. | Rothschild & Co US formerly advised an ad |

**Vital Pharmaceuticals, LLC**
**("Vital Pharmaceuticals")**

| | | |
|---|---|---|
| | | hoc creditors committee on a matter unrelated to Vital Pharmaceuticals where PNC was a member. |
| Prologis Targeted US | Prologis Inc. | 806,471 shares of Prologis Inc. at a market value of $94,882,000 are under management by Rothschild & Co Asset Management US Inc. |
| Refresco Beverage US Inc. COTT; Refresco Canada Inc.; Refresco Iberia | Refresco Group BV | Current GA Affiliate client on a matter unrelated to Vital Pharmaceuticals. |
| Sony Music Entertainment; Sony Music Entertainment US Latin LLC | Sony Corporation; Sony Entertainment; Sony Europe BV; Sony Europe Ltd. (United Kingdom); Sony Group Corp.; Sony Music Entertainment; Sony Pictures Entertainment, Inc. | GA Affiliate is involved in a transaction unrelated to Vital Pharmaceuticals where Sony is a participant. |
| Spectrum | Spectrum | Current Rothschild & Co US vendor. |
| Speedway LLC | Speedway LLC | GA Affiliate was involved in a transaction unrelated to Vital Pharmaceuticals where Speedway LLC was a participant. |
| Target Corporation | Target Corp | 481,019 shares of Target Corp at a market value of $67,934,000 are under management by Rothschild & Co Asset Management US Inc. |
| Travelers Property Casualty Company of America | Travelers Companies Inc.; Travelers | 149,083 shares of Travelers Companies at a market value of $25,214,000 are under management by Rothschild & Co Asset |

**Vital Pharmaceuticals, LLC**
**("Vital Pharmaceuticals")**

| | | |
|---|---|---|
| | | Management US Inc. |
| | | Rothschild & Co US formerly advised ad hoc creditors committees on matters unrelated to Vital Pharmaceuticals where Travelers was a member. |
| Truist Bank | Truist Financial Corp | 713,148 shares of Truist Financial Corp at a market value of $33,825,000 are under management by Rothschild & Co Asset Management US Inc. |
| | | Truist is a trading counterparty of Rothschild & Co Asset Management US. |
| | | Certain large cap value clients of Rothschild & Co Asset Management US hold Truist shares in their portfolio. |
| | | The Merchant Banking Business has bought leveraged loans from Truist. |
| UMC Recordings, Inc.; UMG Recordings; Universal Music Corp.; Universal Music Z Tunes LLC; Universal Musica, Inc.; Universal Music-MGB NA, LLC | Universal Music Group | GA Affiliate was involved in a transaction unrelated to Vital Pharmaceuticals where Universal Music Group was a participant. |
| United Community Bank d/b/a Seaside Bank and Trust | United Community Banks Blairsvle G | 251,594 shares of United Community Banks Blairsvle G at a market value of $7,596,000 are under management by Rothschild & Co Asset Management US Inc. |

Source: Interested Party List 10/4/22

**Vital Pharmaceuticals, LLC**
**("Vital Pharmaceuticals")**

| United Health Care | United Health Group Inc. | 229,980 shares of United Health Group at a market value of $118,126,000 are under management by Rothschild & Co Asset Management US Inc.<br><br>Current Rothschild & Co US vendor. |
|---|---|---|
| Verizon | Verizon Communications Inc. | 942,328 shares of Verizon at a market value of $47,824,000 are under management by Rothschild & Co Asset Management US Inc. |
| WageWorks | WageWorks | Current Rothschild & Co US vendor. |
| Waste Management | Waste Management, Inc. | Rothschild & Co US was involved in a transaction unrelated to Vital Pharmaceuticals where Waste Management was a participant. |
| Xcel Energy | Xcel Energy Inc. | 1,310,206 shares of Xcel Energy at a market value of $92,710,000 are under management by Rothschild & Co Asset Management US Inc. |

# COMPOSITE EXHIBIT B

## (Engagement Letter)

As of April 8, 2022

Jack Owoc
CEO
Vital Pharmaceuticals, Inc.
1600 N Park Dr.
Weston, FL 33326



Dear Mr. Owoc:

This letter (the "Letter Agreement") confirms the understanding and agreement between Rothschild & Co US Inc. ("Rothschild & Co") and Vital Pharmaceuticals, Inc. (the "Company"), pursuant to which Rothschild & Co is pleased to accept its engagement by the Company. This Letter Agreement shall be effective as of April 8, 2022 (the "Effective Date").

1. <u>Services to be Rendered</u>. The Company engages Rothschild & Co as its exclusive financial advisor for the purpose of:

(a) advising the Company with respect to a potential minority investment, sale, merger or other business/strategic combination involving the Company;

(b) assisting the Company in identifying possible counterparties for a potential M&A Transaction (as defined below);

(c) assisting the Company in the development and implementation of a marketing plan and assisting the Company in its preparation of an information memorandum describing the Company for use with potential counterparties to a M&A Transaction;

(d) assisting the Company in its assessment of the financial aspects of a M&A Transaction and, if the Company determines to pursue a M&A Transaction, in its development of a plan for accomplishing such M&A Transaction;

(e) assisting the Company in structuring a M&A Transaction;

(f) participating on the Company's behalf in negotiations concerning the financial aspects of a M&A Transaction;

(g) if and as requested by the Company, assisting or participating in negotiations with any current creditors of the Company and/or their respective representatives in connection with a Waiver/Forbearance Transaction (as defined below);

(h) assisting the Company in raising new debt or equity financing in connection with a New Capital Raise (as defined below);

Rothschild & Co US Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschildandco.com

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 2



     (i)    assisting the Company in making internal and external presentations concerning the financial aspects of any proposed Transaction (as defined below), as appropriate;

     (j)    advising and assisting the Company in connection with setting up a data room and due diligence efforts in connection with any proposed Transaction; and

     (k)    providing such other investment banking and financial advisory services as the Company and Rothschild & Co may from time to time agree upon.

The Company acknowledges that Rothschild & Co is not providing any advice on tax, legal or accounting matters, and that the Company will seek the advice of its own professional advisors with respect to such matters and make an independent decision regarding any transaction contemplated herein based on such advice.

The Company further acknowledges that in performing the foregoing services, Rothschild & Co may utilize the services of one or more of its affiliates, as appropriate; provided that any such affiliates utilized by Rothschild & Co shall be subject to the terms of this Letter Agreement.

The parties understand that the terms of this Letter Agreement and the Indemnification Agreement (as defined herein) shall apply to any services provided by Rothschild & Co to the Company in connection with a potential Transaction or the other matters described herein as of the Effective Date.

2.   <u>Compensation</u>.   In connection with this engagement, the Company shall pay to Rothschild & Co the following fees in cash:

     (a)    Immediately upon the consummation and funding of a Minority M&A Transaction (as defined below), a fee (the "Minority M&A Transaction Fee") equal to:

          i.   if the Implied Enterprise Value (as defined below) is $7.25 billion or less, (A) 0.50% of the aggregate Implied Enterprise Value *multiplied by* (B) the Minority M&A Percentage (as defined below); or

          ii.   if the Implied Enterprise Value is greater than $7.25 billion and equal to or less than $10.00 billion, (A) 0.75% of the aggregate Implied Enterprise Value *multiplied by* (B) the Minority M&A Percentage; or

          iii.   if the Implied Enterprise Value is greater than $10.00 billion, (A) 1.0% of the aggregate Implied Enterprise Value *multiplied by* (B) the Minority M&A Percentage;

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 3



provided, that in no event shall the Minority M&A Transaction Fee payable hereunder upon the consummation and funding of a Minority M&A Transaction be less than $6.5 million.

The term "Implied Enterprise Value" means the total enterprise value of 100% of the Company implied or otherwise derived from the investment in the Company made in the Minority M&A Transaction and based on the pre-transaction capital structure of the Company (i.e., on a pre-money basis), calculated as total equity value of 100% of the Company on a fully-diluted basis, plus the net debt of the Company (and including, without limitation, outstanding preferred stock of the Company) calculated based on the market value of such debt as of the consummation and funding of the Minority M&A Transaction.

The term "Minority M&A Percentage" means the percentage of equity interests (calculated on a fully-diluted basis) or assets of the Company purchased or otherwise acquired in the Minority M&A Transaction. For greater certainty, if economic and voting percentages differ, than the Minority M&A Percentage shall be based on the higher of the two percentages.

By way of example only, Appendix A attached hereto includes an illustrative calculation of the Minority M&A Transaction Fee.

For the avoidance of doubt, in no event shall Rothschild & Co be entitled to more than one Minority M&A Transaction Fee pursuant to this Letter Agreement.

(b)  Immediately upon the consummation and funding of a Control M&A Transaction (as defined below), a fee (a "Control M&A Transaction Fee") equal to:

i.  if the aggregate Consideration (as defined below) involved in the Control M&A Transaction is less than or equal to $7.25 billion, 0.50% of the aggregate Consideration involved in the Control M&A Transaction; or

ii.  if the aggregate Consideration involved in the Control M&A Transaction is greater than $7.25 billion and equal to or less than $10.00 billion, 0.75% of the aggregate Consideration involved in the Control M&A Transaction; or

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 4



     iii.  if the aggregate Consideration involved in the Control M&A Transaction is greater than $10.00 billion, 1.0% of the aggregate Consideration involved in the Control M&A Transaction;

        <u>provided</u>, that in no event shall the Control M&A Transaction Fee payable hereunder upon the consummation and funding of a Control M&A Transaction be less than $6.5 million.

        For the avoidance of doubt, in no event shall Rothschild & Co be entitled to more than one Control M&A Transaction Fee pursuant to this Letter Agreement.

    (c)    If Rothschild & Co provides services to the Company in connection with a Waiver/Forbearance Transaction as set forth in Paragraph 1 of this Letter Agreement, a fee (the "Waiver/Forbearance Fee") equal to 0.25% of the aggregate principal amount of any indebtedness and/or other liabilities of the Company and/or its affiliates under the credit agreements that are subject to, or otherwise affected by, the Waiver/Forbearance Transaction. The Waiver/Forbearance Fee shall be earned in full upon the Company's execution of a Waiver/Forbearance Transaction and shall be payable by the Company to Rothschild & Co within five business days thereafter. For the avoidance of doubt, in no event shall Rothschild & Co be entitled to more than one Waiver/Forbearance Fee pursuant to this Letter Agreement.

    (d)    If Rothschild & Co provides services to the Company in connection with a New Capital Raise, a fee (the "New Capital Fee") equal to (i) 1.0% of the face amount of any senior secured or senior unsecured debt raised; (ii) 2.0% of the face amount of any junior, mezzanine or subordinated secured or unsecured debt raised and (iii) 2.0% of any debt-like or hybrid equity capital raised, including, without limitation, any preferred stock or convertible debt raised for bona fide debt-like or hybrid financing purposes. For the avoidance of doubt, the term "raised" shall include the amount committed or otherwise made available to the Company or its affiliates whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company or its affiliates. The New Capital Fee shall be earned in full upon the closing of a New Capital Raise and shall be payable by the Company to Rothschild & Co within five business days thereafter. For the avoidance of doubt, in no event shall Rothschild & Co be entitled to more than one New Capital Fee pursuant to this Letter Agreement.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 5



No fees or expenses payable to any other financial advisor either by the Company or by any other entity shall reduce or otherwise adversely affect the fees payable hereunder to Rothschild & Co.

With respect to any New Capital Raise that closes prior to, or concurrently with, an M&A Transaction, Rothschild & Co shall credit against the Minority M&A Transaction Fee or Control M&A Transaction Fee, as applicable (such credit to be applied only once and without duplication): 25% of any New Capital Fees paid pursuant to Paragraph 2(d)(i) above (the "New Capital Fee Credit"); provided, that the sum of any New Capital Fee Credit shall not exceed the Minority M&A Transaction Fee or Control M&A Transaction Fee, as applicable. With respect to any New Capital Raise that closes after the closing of an M&A Transaction for which Rothschild & Co was paid the Minority M&A Transaction Fee or Control M&A Transaction Fee, as applicable (and which New Capital Raise is not subject to the New Capital Fee Credit set forth in the preceding sentence), any New Capital Fees for such New Capital Raise payable pursuant to Paragraph 2(d)(i) above shall be reduced by 25% (the "New Capital Fee Reduction"). For greater certainty, no New Capital Fee shall be subject to both the New Capital Fee Credit and the New Capital Fee Reduction.

In the event that a Control M&A Transaction is not consummated and the Company receives a breakup, topping or similar fee and/or other expense reimbursement (including the settlement of or judgment in any litigation or dispute relating to a Control M&A Transaction net of any legal fees relating thereto) from the potential counterparty to such Control M&A Transaction or any of its affiliates, or similar consideration relating to the termination, abandonment or cancellation of a Control M&A Transaction (collectively, a "Breakup Fee"), the Company will pay Rothschild & Co a fee of 20% of such Breakup Fee (the "Rothschild & Co Breakup Fee"); provided, that the Rothschild & Co Breakup Fee shall not exceed the Control M&A Transaction Fee otherwise payable hereunder had the Control M&A Transaction been consummated.

All fees are payable in United States dollars.

The term "Control M&A Transaction" means any transaction or series or combination of transactions whereby, directly or indirectly, 50% or more of the equity interests (calculated on a fully-diluted voting or economic basis) or assets of the Company is purchased or otherwise acquired, including, without limitation, through a sale or exchange of capital stock or assets, a merger or consolidation, a leveraged buyout, a tender or exchange offer, the formation of a joint or collaborative venture or partnership or any other transaction. For the avoidance of doubt, the definition of "Control M&A Transaction" shall include any Control M&A Transaction that the Company conducts through an affiliate entity or subsidiary of the Company.

The term "Minority M&A Transaction" means any transaction or series or combination of related transactions whereby, directly or indirectly, less than 50% of the equity interests (including, without limitation, through an investment in preferred stock or capital convertible into equity interests) (in each case, calculated on a fully-diluted voting and economic basis) or assets of the

Confidential

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 6



Company is purchased or otherwise acquired, including, without limitation, through a sale or exchange of equity interests or assets, a tender or exchange offer, the formation of a joint or collaborative venture or partnership, a minority interest or any other transaction, in each case, other than pursuant to a New Capital Raise. For the avoidance of doubt, the term "Minority M&A Transaction" shall include any Minority M&A Transaction that the Company conducts through an affiliate entity or subsidiary of the Company. For the further avoidance of doubt, a Minority M&A Transaction may consist of a primary offering of equity interests by the Company and/or secondary resales of equity interests by shareholders of the Company if consummated as part of the same transaction or series of related transactions.

The term "M&A Transaction" means a Control M&A Transaction or a Minority M&A Transaction.

The term "New Capital Raise" means (i) the issuance of any debt securities by the Company or its affiliates, including, without limitation, senior, junior, mezzanine, secured or unsecured debt securities of the Company or its affiliates, (ii) the execution by the Company or its affiliates of a credit, revolving credit, term loan, letter of credit or similar facility, and whether in the form of senior, junior, secured, unsecured, mezzanine or any other debt, (iii) the issuance by the Company or its affiliates of any debt-like or hybrid equity capital, including, without limitation, any preferred stock or convertible debt raised for bona fide debt-like or hybrid financing purposes, and (iv) any similar financing or new capital raise. For greater certainty, with respect to a transaction described in clause (iii) above, (A) if such capital is raised primarily for bona fide debt-like or hybrid financing purposes, then such transaction shall be deemed a New Capital Raise as opposed to a Minority M&A Transaction, and (B) if such transaction is primarily for purposes of effecting a strategic minority equity investment in the Company or its affiliates, then such transaction shall be deemed a Minority M&A Transaction as opposed to a New Capital Raise. For the further avoidance of doubt, in no event shall both a Minority M&A Transaction Fee and a New Capital Raise be charged with respect to the same capital. For the further avoidance of doubt, a New Capital Raise shall include any new capital raised in a refinancing transaction. For the further avoidance of doubt, the definition of "New Capital Raise" shall include any New Capital Raise that the Company conducts through an affiliate entity or subsidiary of the Company.

The term "Waiver/Forbearance Transaction" means a waiver or forbearance under one or more of the Company's or its affiliates' outstanding credit agreements, which may include, without limitation, a waiver of any breaches of any of the financial or other material covenants under one or more of the credit agreements. For the avoidance of doubt, if the Company desires Rothschild & Co to assist the Company with any other amendment or modification to one or more of the Company's or its affiliates' outstanding credit agreements, including, without limitation, (i) an agreement by the lenders under one or more of the credit agreements to accept payment in kind interest for any portion of their interest payment, or (ii) an extension of the maturity date of any portion of the debt issued under one or more of the credit agreements, then such additional services shall be covered by an

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 7



amendment to this Letter Agreement containing customary fees for such services as mutually agreed in good-faith by the Company and Rothschild & Co.

The term "Transaction" means a M&A Transaction, a Waiver/Forbearance Transaction or a New Capital Raise.

The term "Consideration" means the total amount of all cash and the fair market value of any securities, agreements or other property and any other consideration, including, without limitation (and without duplication), (i) consideration paid to the holders of any options, warrants, convertible securities or stock appreciation rights of the Company, whether or not vested, (ii) the present value (determined as of the closing of the Control M&A Transaction) of any amounts, securities, agreements or other property to be paid contingent on future events or to be paid over time, and (iii) the present value (determined as of the closing of the Control M&A Transaction) of any amounts, securities, agreements or other property held in escrow (collectively, "Escrowed Amounts"), in each case paid or payable, directly or indirectly, in connection with a Control M&A Transaction. For purposes of calculating the present value of Escrowed Amounts under clause (iii) above, any Escrowed Amounts shall be assumed to be paid in full to the Company upon the end of the escrow release schedule as agreed in the definitive agreements for the Control M&A Transaction. Consideration shall be deemed to include the aggregate principal amount of any indebtedness for borrowed money, pension liabilities, guarantees, capitalized loans, declared and unpaid dividends and other similar obligations or liabilities (in each case, net of cash and cash equivalents as of the closing of the Control M&A Transaction) assumed, retired, repaid, extinguished or defeased, directly or indirectly, in connection with a Control M&A Transaction, or which survive the closing of a Control M&A Transaction. Consideration also shall be deemed to include the aggregate amount of any dividends paid or other distributions made by the Company with respect to its stock after the date of a definitive agreement with respect to a Control M&A Transaction, other than normal recurring cash dividends in amounts not materially greater than currently paid. The present value of any contingent payments or payments to be made over time shall be mutually determined in good-faith by the Company and Rothschild & Co. If the consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such consideration is payable. For the avoidance of doubt, if the Company conducts a Control M&A Transaction through an affiliate entity or subsidiary of the Company, then any consideration paid or payable to such affiliate entity or subsidiary shall be deemed Consideration hereunder to the same extent as if paid or payable to the Company.

In connection with the sale of 50% or more but less than 100% of the outstanding equity interests of the Company, Consideration will be calculated as if 100% of such outstanding equity interests of the Company on a fully diluted basis had been acquired for the same per share amount as paid in the Control M&A Transaction.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 8



The fair market value of any securities (whether debt, equity, options or warrants) or other property or agreements paid or payable as Consideration in a Control M&A Transaction shall be determined as follows: (a) the fair market value of securities that are freely tradable in an established public market shall be the last closing market price of such securities prior to the public announcement of a Control M&A Transaction; and (b) the fair market value of securities which are not freely tradable or which have no established public market, or of property or agreements other than securities, shall be the fair market value thereof as mutually agreed in good faith by the Company and Rothschild & Co.

3.   Expenses.  In addition to the compensation payable pursuant to Paragraph 2 above and without limitation of any provision of the Indemnification Agreement, the Company shall reimburse Rothschild & Co for all of Rothschild & Co's reasonable out-of-pocket expenses incurred in connection with the performance of Rothschild & Co's engagement hereunder if a Transaction is not consummated, including, without limitation, the fees, disbursements and other charges of Rothschild & Co's legal counsel and any other advisor retained by Rothschild & Co, if any (it being understood that the retention of any such advisor, other than legal counsel, will be made with the Company's advance written consent, which shall not be unreasonably withheld).  Such reimbursable expenses shall be paid by the Company to Rothschild & Co upon the earlier of (i) the termination of this Letter Agreement and (ii) the abandonment of the process for a Transaction by the Company.  Reasonable such expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, third-party data processing, third-party document production, communication charges outside of existing communication plans (i.e., non-overhead), research outside of existing research plans (i.e., non-overhead), and third-party courier services.  Notwithstanding the foregoing, Rothschild & Co's reimbursable expenses under this Paragraph 3 shall not exceed $25,000 in the aggregate without the prior written consent of the Company, which shall not be unreasonably withheld.  For the avoidance of doubt, nothing contained in this Paragraph 3 shall affect any of the provisions of the Indemnification Agreement.

4.   Information.

(a)   The Company understands and agrees that the services to be rendered by Rothschild & Co pursuant to Paragraph 1 of this Letter Agreement and the advice, whether formal or informal, relating thereto are solely for the benefit and use of the Company.  The Company agrees that any presentations, reports, opinions or other advice provided by Rothschild & Co to the Company in the context of this engagement shall not be summarized, excerpted from, disclosed publicly or made available to third parties (other than on a confidential, need to know and non-reliance basis to the Company's legal counsel and accountants), in whole or in part, without the prior written consent of Rothschild & Co as to form and substance.  No reference to Rothschild & Co shall be made in any press release, filing or other document without Rothschild & Co's prior approval as to form and substance.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 9



(b)    The Company will cooperate with Rothschild & Co and furnish to, or cause to be furnished to, Rothschild & Co any information that Rothschild & Co reasonably deems appropriate to enable Rothschild & Co to render services hereunder (all such information provided by or on behalf of the Company being the "Information") and will provide Rothschild & Co with reasonable access to the officers, directors, employees, accountants, counsel and other representatives (collectively, the "Representatives") of the Company. In addition, the Company shall promptly inform Rothschild & Co of any material developments that it believes is reasonably likely to have a material effect on the services provided by Rothschild & Co under this Letter Agreement. The Company recognizes and confirms that Rothschild & Co (i) will use and rely solely on the Information supplied by the Company and its Representatives and on information available from generally recognized public sources in performing the services contemplated by this Letter Agreement without having assumed any obligation to verify or investigate independently the same; (ii) will be entitled to assume and rely upon the accuracy and completeness of the Information and such other information; (iii) does not assume responsibility for the accuracy or completeness of the Information and such other information; and (iv) has not been asked to and will not conduct a physical inspection of any properties or assets of the Company or any other party or make or obtain any independent evaluation or appraisal of any assets or liabilities (contingent or otherwise) of the Company or any other party. The Information, when delivered by or on behalf of the Company, to the best of its knowledge, will (i) be true and correct in all material respects, (ii) be prepared in good faith, and (iii) not contain any material misstatement of fact or omit to state any material fact. Without limitation of the foregoing, the Company agrees that any projections or forecasts prepared by the Company and provided to Rothschild & Co will have been prepared, to the best of its knowledge, in good faith and will be based upon assumptions which, in light of the circumstances under which they are made, are reasonable in the Company's business judgment. Rothschild & Co will assume that any projected or forecasted financial information reflects the best available estimates of future financial performance. Rothschild & Co recognizes and confirms that the Company will be entitled to assume and rely upon the accuracy and completeness of any information available from generally recognized public sources not prepared by the Company without having assumed any obligation to verify or investigate the same and the Company does not assume responsibility for the accuracy or completeness of such information.

(c)    The Company will promptly notify Rothschild & Co if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Rothschild & Co.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 10



(d)    The Company hereby acknowledges that all information contained in any information memorandum will be provided by or based upon information provided by the Company or third parties on the Company's behalf, and that the Company will be solely responsible for the contents thereof.

5.    <u>Indemnification and Exculpation</u>.  As further compensation for Rothschild & Co's services under this Letter Agreement, the Company shall indemnify Rothschild & Co and certain other indemnified parties pursuant to the terms of the Indemnification Agreement, dated as of the date hereof (the "Indemnification Agreement"), between the Company and Rothschild & Co, and the Indemnification Agreement is incorporated by reference herein.  The Indemnification Agreement shall survive any termination or expiration of this Letter Agreement.

The Company also agrees that no Exculpated Party (as defined below) shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its owners, parents, affiliates, security holders, creditors or any other person claiming through or on behalf of the Company for or in connection with advice or services rendered or to be rendered by any Exculpated Party pursuant to this Letter Agreement or the transactions contemplated hereby or any Exculpated Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen because of the gross negligence, willful misconduct, or fraud of such Exculpated Party in connection with any such advice, actions, inactions or services.  The term "Exculpated Party" means each of Rothschild & Co, its affiliates (within the meaning of Rule 12b-2 of the Securities Exchange Act of 1934, as amended) and each of their respective officers, directors, employees and agents and each other person, if any, controlling Rothschild & Co or any of its affiliates.

6.    <u>Term</u>.  This Letter Agreement shall commence on the date hereof and shall continue thereafter until ten days after such time as the Company or Rothschild & Co shall have notified the other party in writing of the termination of this Letter Agreement with or without cause.  Notwithstanding any termination of this Letter Agreement, unless this Letter Agreement is terminated by the Company for Cause (as defined below), the Company shall pay to Rothschild & Co the fees set forth in Paragraph 2 above (at the times and in the amounts set forth therein) if the Company (i) consummates any Transaction at any time within twelve (12) months following the effective date of termination of this Letter Agreement (such period, the "Tail Period") or (ii) executes a letter of intent or definitive agreement with respect to any Transaction at any time within the Tail Period (which, except in the case of the Rothschild & Co Breakup Fee, subsequently results in the consummation of a Transaction at any time thereafter); provided, that the fees set forth in Paragraph 2 above shall not be payable by the Company to Rothschild & Co with respect to a Transaction consummated during the Tail Period if the Company requests that Rothschild & Co be re-engaged by the Company as its financial advisor to provide services to the Company with respect to such Transaction pursuant to a separate letter agreement with the Company with terms and conditions no

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 11



less favorable to Rothschild & Co than this Letter Agreement and the Indemnification Agreement, and Rothschild & Co declines such engagement. No termination of this Letter Agreement shall affect the Company's obligation to pay accrued fees and expenses except to the extent provided for herein and to indemnify Rothschild & Co as provided in the Indemnification Agreement. The provisions of Paragraphs 3 through 8 and 10 shall survive any termination of this Letter Agreement. The term "Cause" means the gross negligence, willful misconduct or fraud of Rothschild & Co.

7.  Other Rothschild & Co Activities.  Rothschild & Co and its affiliates are involved in a wide range of financial advisory and investment banking activities from which conflicting interests or duties may arise. Rothschild & Co will not have any duty to disclose to the Company or utilize for the Company's benefit any non-public information acquired in the course of providing services to any third-party, engaging in any transaction (for its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, Rothschild & Co and its affiliates may provide financial advisory or other investment banking services to, or have other relationships with, companies that may be customers, counterparties or competitors of the Company or that may otherwise have relationships with the Company. Rothschild & Co shall have no obligation to disclose to the Company any information it receives as a result of such activities, or the fact that it is in possession of such information, and Rothschild & Co shall have no obligation to use any such information for the benefit of or on behalf of the Company. In the ordinary course of their asset management, merchant banking and other business activities, affiliates of Rothschild & Co may hold long or short positions, and may trade or otherwise effect transactions, for their own accounts or the accounts of their clients in equity, debt or other securities (or related derivative securities) or financial instruments of the Company, any of its affiliates or any other company that may be involved in a Transaction.

8.  Additional Services.  The Company understands that if Rothschild & Co is asked to act for the Company in any other formal additional capacity not specifically addressed in this letter, such activities shall constitute separate engagements and the terms of any such additional engagements will be embodied in one or more separate written agreements containing terms and conditions to be mutually agreed upon, including, without limitation, appropriate indemnification provisions.

9.  Authorization.  Rothschild & Co will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given by a person who is, or is reasonably believed by Rothschild & Co to be, a director, officer, employee or authorized agent of the Company.

10. General.  No party may assign its rights or delegate its obligations under this Letter Agreement without the prior written consent of the other party, except pursuant to merger, consolidation or operation of law. A purported assignment or delegation in violation of the preceding sentence is void. This Letter Agreement binds and benefits the parties and their respective permitted successors and assigns.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 12



Prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of the Company's assets in one or a series of transactions that does not provide for the assumption of the Company's obligations set forth in this Letter Agreement and the Indemnification Agreement, the Company will notify Rothschild & Co in writing thereof and, if requested by Rothschild & Co, shall arrange in connection therewith alternative means of providing for such obligations of the Company hereunder, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions reasonably satisfactory to Rothschild & Co. In the event that a Transaction is effected through a subsidiary of the Company, then the Company shall cause such entity to also assume and honor, in addition to the Company, the obligations and liabilities of the Company hereunder.

Rothschild & Co has been retained under this Letter Agreement as an independent contractor and not as a fiduciary or agent of the Company or any third party (including security holders, creditors, employees or other stakeholders of the Company), and the Company hereby disclaims any such fiduciary relationship.

Notwithstanding anything herein to the contrary, in performing its services pursuant to this Letter Agreement, Rothschild & Co is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction or other transaction.

In the event that Rothschild & Co initiates an action to enforce its rights under this Letter Agreement, then the Company shall reimburse Rothschild & Co for all reasonable costs and expenses incurred by Rothschild & Co in connection with enforcing such rights under this Letter Agreement to the extent Rothschild & Co prevails in such enforcement. Similarly, in the event that the Company initiates an action to enforce its rights under this Letter Agreement, then Rothschild & Co shall reimburse the Company for all reasonable costs and expenses incurred by the Company in connection with enforcing such rights under this Letter Agreement to the extent the Company prevails in such enforcement.

The Company agrees to provide Rothschild & Co with its tax or other similar identification number and/or other identifying documents as Rothschild & Co may reasonably request, to enable it to comply with applicable law. For your information, Rothschild & Co may also screen the Company against various databases to verify its identity. The Company represents and warrants that it has provided or, upon request, will timely provide to Rothschild & Co a true and complete list of (i) its directors and executive officers and (ii) each beneficial owner of 20% or more of the outstanding equity interests in the Company on a fully-diluted basis.

Each party confirms and agrees that, insofar as may be relevant to the services set forth in Paragraph 1 or a Transaction, it shall not, and shall ensure that its representatives and any other person who performs services for or on its behalf shall not, offer, give or agree to give, or request,

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 13



accept or agree to accept, from any person, whether for itself or on behalf of another, any gift, payment, consideration or benefit of any kind which constitutes an illegal or corrupt practice under the laws of any relevant jurisdiction.

The Company consents to Rothschild & Co's limited display of the Company's name and logo solely as part of Rothschild & Co's general marketing materials (*i.e.*, pitch books); provided, that such display is in the form of a customary tombstone announcement and that the Company is provided a copy of any such customary tombstone announcement. The Company agrees that in any press release issued by it announcing a transaction contemplated by this Letter Agreement, the Company will include in such press release a reference to Rothschild & Co as exclusive financial advisor to the Company with respect to such transaction in a form reasonably acceptable to the Company. Rothschild & Co further agrees that it will not issue or contribute to any press release announcing a transaction contemplated by this Letter Agreement without the Company's written preapproval of such press release.

This Letter Agreement and the Indemnification Agreement contain the entire agreement of the parties with respect to the subject matter hereof and supersede and take precedence over all prior agreements or understandings, either oral or written, between Rothschild & Co and the Company with respect to the subject matter hereof. The Company and Rothschild & Co have all requisite power and authority to enter into this Letter Agreement and the transactions contemplated hereby. This Letter Agreement has been duly and validly authorized by all necessary action on the part of the Company and Rothschild & Co and has been duly executed and delivered by the Company and Rothschild & Co and constitutes a legal, valid and binding agreement of the Company and Rothschild & Co, enforceable in accordance with its terms. Each of the Company and Rothschild & Co represents and warrants that it is validly existing and in good-standing under the laws of its jurisdiction of incorporation or formation.

This Letter Agreement may not be amended or modified except in a writing executed by the parties hereto. All aspects of the relationship created by this Letter Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed therein without giving effect to conflicts of law principles or rules to the extent such principles or rules would require or permit the application of the laws of another jurisdiction. THE COMPANY AND ROTHSCHILD & CO WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF ROTHSCHILD & CO PURSUANT TO OR THE PERFORMANCE BY ROTHSCHILD & CO OF THE SERVICES CONTEMPLATED BY THIS LETTER AGREEMENT. All actions and proceedings arising out of or relating to this Letter Agreement shall be heard and determined exclusively in any New York state or federal court sitting in the Borough of Manhattan of the City of New York, to whose jurisdiction the Company and Rothschild & Co hereby irrevocably submit. The Company and Rothschild & Co hereby irrevocably waive any defense or objection to the New York forum designated above.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 14



This Letter Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Letter Agreement by facsimile, portable document format (PDF) or other electronic means shall be effective as delivery of a manually executed counterpart to this Letter Agreement.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 15



      If the foregoing correctly sets forth our agreement, we would appreciate your signing and returning to us the enclosed copies of this Letter Agreement and the Indemnification Agreement, whereupon this Letter Agreement and the Indemnification Agreement shall constitute binding agreements between us.

Sincerely,

ROTHSCHILD & CO US INC.

By: _____

Name: Michael Speller
Title: Partner

Date: April 24, 2022

Acknowledged:

ROTHSCHILD & CO
LEGAL & COMPLIANCE

By: _____

Name: Frank London
Title: Managing Director

Date: April 24, 2022

Agreed and Accepted:

VITAL PHARMACEUTICALS, INC.

By: _____

Jack Owoc
CEO

Date: 04/08/2022

Confidential

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 16



Appendix A – Illustrative Calculation of the Minority M&A Transaction Fee

Illustrative Minority M&A Transaction Fee Example

| Implied Enterprise Value | Percentage of Implied Enterprise Value | Calculation Prior to Application of Minority M&A Percentage | Minority M&A Percentage | Minority M&A Transaction Fee |
|---|---|---|---|---|
| $7,250,000,000 | 0.500% | $36,250,000 | 20% | $7,250,000 |
| $8,500,000,000 | 0.750% | $63,750,000 | 20% | $12,750,000 |
| $10,000,000,000 | 1.000% | $100,000,000 | 20% | $20,000,000 |
| ( A ) | ( B ) | ( C ) | ( D ) | ( E ) |

A x B = C (Calculation Prior to the Application of Minority M&A Percentage)

C x D = E (Minority M&A Transaction Fee)

Confidential

As of April 8, 2022

Rothschild & Co US Inc.
1251 Avenue of the Americas
New York, New York 10020

Ladies and Gentlemen:

This letter (this "Indemnification Agreement") confirms the understanding and agreement between Rothschild & Co US Inc. ("Rothschild & Co") and Vital Pharmaceuticals, Inc. (the "Company") as to the matters set forth herein. Reference is made to the letter agreement, dated as of the date hereof (the "Engagement Letter"), between Rothschild & Co and the Company, pursuant to which the Company engaged Rothschild & Co as its financial advisor in connection with the matters described therein. For the purposes of this Indemnification Agreement, (i) the term "Indemnified Parties" shall mean Rothschild & Co, its affiliates (within the meaning of Rule 12b-2 of the Securities Exchange Act of 1934, as amended) and each of their respective officers, directors, employees and agents and each other person, if any, controlling Rothschild & Co or any of its affiliates, and (ii) each of the Indemnified Parties shall be referred to as an "Indemnified Party". This Indemnification Agreement shall be effective as of April 8, 2022 (the "Effective Date").

The Company agrees to indemnify and hold harmless each Indemnified Party from and against any losses, claims, liabilities, damages, proceedings, actions (including, without limitation, stockholder, creditor or derivative actions), judgments, settlements, assessments, investigation costs, fines, penalties, arbitration awards and any other liabilities, costs, fees and expenses (collectively, "Losses"), directly or indirectly in connection with, arising out of, based upon or related to the engagement of Rothschild & Co by the Company under the Engagement Letter or any transaction, activities or conduct in connection therewith as of the Effective Date; provided, that the Company shall not be required to indemnify any Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose because of the gross negligence, willful misconduct, or fraud of such Indemnified Party.

The Company shall further promptly reimburse any Indemnified Party for any reasonable fees, charges and disbursements of legal counsel or other reasonable fees, disbursements or expenses as they are incurred (a) in investigating, preparing, pursuing, settling or defending or assisting in the defense of any action or other

Rothschild & Co US Inc.
As of April 8, 2022
Page 2

proceeding (whether formal or informal) or threat thereof (including, without limitation, any expenses incurred in connection with any response to a subpoena or similar request for documents and/or testimony) relating to any of the matters covered by the indemnification set forth in the preceding paragraph, whether or not in connection with pending or threatened litigation or arbitration, whether or not any Indemnified Party is a party and whether or not resulting in any liability, and (b) in connection with enforcing such Indemnified Party's rights under this Indemnification Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose because of the gross negligence, willful misconduct, or fraud of such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated in the Engagement Letter, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party and any other party. Relative benefits to the Company, on the one hand, and Rothschild & Co, on the other hand, with respect to the matters contemplated in the Engagement Letter shall be deemed to be in the same proportion as (i) the total net proceeds received by the Company or its security holders, as the case may be, pursuant to the transaction(s) contemplated by the Engagement Letter, bears to (ii) all fees actually received by Rothschild & Co in connection with the Engagement Letter. Relative fault shall be determined by reference to, among other things, whether any alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents), on the one hand, or by Rothschild & Co, on the other hand.

Promptly after receipt by an Indemnified Party of service of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such Indemnified Party will notify the Company in writing of such complaint or of the commencement of such action or proceeding, but failure to so notify the Company will relieve the Company from the obligation to indemnify such Indemnified Party only if and only to the extent that such failure results in the forfeiture by the Company of material rights and defenses, and will not in any event relieve the Company from any other obligation or liability that the Company may have to any Indemnified Party otherwise than in accordance with the provisions hereof. If the Company so elects or is requested by such Indemnified Party, the Company will assume the defense of such action or proceeding including the employment of counsel reasonably satisfactory to such Indemnified Party and the payment of the reasonable and customary fees and disbursements of such counsel. In the event, however, such Indemnified Party reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if the defendants in or targets of any such action or proceeding include both an Indemnified Party and the Company and such Indemnified Party reasonably concludes that there may be relevant legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Company, or if the Company fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such Indemnified Party in a timely manner, then such Indemnified Party may employ separate counsel to represent or defend it in any such action or proceeding and the Company will

Rothschild & Co US Inc.
As of April 8, 2022
Page 3

pay the reasonable and customary fees and disbursements of such counsel; provided, however that the Company will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for such Indemnified Parties in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense.

The Company will not, without Rothschild & Co's prior written consent, which shall not be unreasonably delayed, withheld or conditioned, settle, compromise, consent to the entry of any judgment in or otherwise resolve or seek to terminate any action, claim, suit, investigation or proceeding in respect of which indemnification may be sought hereunder (or permit or otherwise facilitate any such action by any director or executive officer of the Company) (in each case whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (i) includes an express, unconditional release of each Indemnified Party from any liabilities arising out of such action, claim, suit, investigation or proceeding and (ii) does not include a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of, an Indemnified Party. No Indemnified Party seeking indemnification, reimbursement or contribution under this Indemnification Agreement will, without the Company's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to herein.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Indemnification Agreement, if any term, provision, covenant or restriction contained in this Indemnification Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Indemnification Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated.

No party may assign any right or delegate any obligation under this Indemnification Agreement without the prior written consent of the other party, except pursuant to merger, consolidation or operation of law. A purported assignment or delegation in violation of the preceding sentence is void. This Indemnification Agreement binds and benefits the parties and their respective permitted successors and assigns. Each Indemnified Party (other than Rothschild & Co) shall be a third party beneficiary of this Indemnification Agreement, and as such, shall be entitled to the benefits of this Indemnification Agreement to the same extent as if it was a party. This Indemnification Agreement may not be amended or modified except in a writing executed by the parties.

This Indemnification Agreement and the Engagement Letter contain the entire agreement of the parties with respect to the subject matter hereof and thereof and supersede and take precedence over all prior agreements or understandings, either oral or written, between Rothschild & Co and the Company with respect to the subject matter hereof and thereof. The Company and Rothschild & Co have all requisite power and authority to enter into this Indemnification Agreement and the transactions contemplated hereby. This Indemnification Agreement has been duly and validly authorized by all necessary action on the part of the Company and Rothschild & Co and has been duly executed and delivered by the Company and Rothschild & Co and constitutes a legal, valid and binding agreement of the Company and Rothschild & Co, enforceable in accordance with its terms.

Rothschild & Co US Inc.
As of April 8, 2022
Page 4

This Indemnification Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed therein without giving effect to conflicts of law principles or rules to the extent such principles or rules would require or permit the application of the laws of another jurisdiction. THE COMPANY AND ROTHSCHILD & CO WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THIS INDEMNIFICATION AGREEMENT. All actions and proceedings arising out of or relating to this Indemnification Agreement shall be heard and determined exclusively in any New York state or federal court sitting in the Borough of Manhattan of the City of New York, to whose jurisdiction the Company and Rothschild & Co hereby irrevocably submit. The Company and Rothschild & Co hereby irrevocably waive any defense or objection to the New York forum designated above.

The provisions of this Indemnification Agreement shall apply to the Engagement Letter (including related activities prior to the date hereof) and any modification thereof and shall remain in full force and effect regardless of the expiration or termination of the Engagement Letter.

This Indemnification Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Indemnification Agreement by facsimile, portable document format (PDF) or other electronic means shall be effective as delivery of a manually executed counterpart to this Indemnification Agreement.

Rothschild & Co US Inc.
As of April 8, 2022
Page 5

Please indicate your agreement to and acceptance of the above terms by signing where indicated below.

Sincerely yours,

VITAL PHARMACEUTICALS, INC.

By: _____
Jack Owoc
CEO

Terms Agreed to and Accepted:

ROTHSCHILD & CO US INC.

By: _____
Name: Michael Speller
Title: Partner

Acknowledged:

ROTHSCHILD & CO
LEGAL & COMPLIANCE

By: _____
Name: Frank London
Title: Managing Director

Date: April 24, 2022

## AMENDMENT TO LETTER AGREEMENT

This amendment ("Amendment"), effective as of August 9, 2022, shall amend the letter agreement, dated as of April 8, 2022 (the "Letter Agreement"), between Rothschild & Co US Inc. ("Rothschild & Co") and Vital Pharmaceuticals, Inc. (the "Company"). Rothschild & Co and the Company may be referred to in this Amendment collectively as the "Parties" and individually as a "Party." All capitalized terms used herein but undefined shall have the meanings ascribed to such terms in the Letter Agreement.

In consideration of the mutual covenants contained herein, the Parties agree as follows:

A. <u>Additional Services to be Rendered</u>. In addition to the services set forth in Paragraph 1 of the Letter Agreement, Rothschild & Co shall provide the following additional services as reasonably requested by the Company and appropriate:

1. advising and assisting the Company in the development and implementation of a process intended to generate bidders for a sale of the Loan Parties (as defined in the Fourth Forbearance Amendment and Fifth Amendment to Amended and Restated Revolving Credit and Term Loan Agreement, dated as of August 8, 2022) pursuant to Section 363 of the Bankruptcy Code (the "363 Sale Process");

2. in connection with any case or cases commenced by or against the Company, any of its subsidiaries, any of its affiliates or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under Title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code"), and if requested by the Company, participating in hearings before the Bankruptcy Court in which such cases are commenced (the "Bankruptcy Court") and providing relevant testimony with respect to the matters described herein and issues arising in connection with any proposed plan of reorganization under a Bankruptcy Case (a "Plan");

3. acting as Investment Banker to the Company in connection with a Bankruptcy Case;

4. reviewing and analyzing any proposals the Company receives from third parties in connection with a Transaction during a Bankruptcy Case, including, without limitation, any proposals for debtor-in-possession financing, mergers and acquisitions or other strategic alternatives, as appropriate; and

5. assisting or participating in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Transaction pursuant to a Bankruptcy Case.

B. <u>Control M&A Transaction and Minority M&A Transaction</u>. For the avoidance of doubt, a Control M&A Transaction or Minority M&A Transaction may be conducted, without limitation, pursuant to a Plan (including, without limitation, as part of any Plan providing for any

restructuring or reorganization of debt or other liabilities, an equitization or an exchange of debt for equity) or Section 363 of the Bankruptcy Code, and including, without limitation, any sale of the Loan Parties pursuant to the 363 Sale Process or otherwise; provided, that, for the avoidance of doubt, any payment of any debts or liabilities of, or any return or distribution on account of any equity interests in, the Company from the proceeds of any M&A Transaction shall not constitute a separate M&A Transaction. For the further avoidance of doubt, an M&A Transaction or Plan may be proposed by the Company or any other party.

      C.    New Capital Raise. For the avoidance of doubt, a New Capital Raise may be effected, without limitation, through a debtor-in-possession financing as part of a Bankruptcy Case or pursuant to a Plan.

      D.    Application for Retention of Rothschild & Co for a Bankruptcy Case. In the event a Bankruptcy Case is commenced, the Company shall apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (a) the Letter Agreement, as amended by this Amendment and (b) Rothschild & Co's retention by the Company under the terms of the Letter Agreement and this Amendment (including, without limitation, the reimbursement of the fees, disbursements and other charges of Rothschild & Co's counsel pursuant to Section F. hereof without the requirement that the retention of such counsel be approved by the Bankruptcy Court), nunc pro tunc to the date the Chapter 11 case was commenced, and shall use commercially reasonable efforts to obtain Bankruptcy Court authorization thereof. The Company shall use commercially reasonable efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code. The Company shall supply Rothschild & Co and its counsel with a draft of such application and any proposed order authorizing Rothschild & Co's retention sufficiently in advance of the filing of such application and proposed order to enable Rothschild & Co and its counsel to review and comment thereon. Upon commencement of a Bankruptcy Case, Rothschild & Co shall have no obligation to provide any services under the Letter Agreement and this Amendment unless the Bankruptcy Court approves Rothschild & Co's retention under the terms of the Letter Agreement and this Amendment in a manner materially consistent with the above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, which order is reasonably acceptable to Rothschild & Co. Rothschild & Co acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section D., payment of Rothschild & Co's fees and expenses shall be subject to (a) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code (and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code) and any order approving Rothschild & Co's retention, (b) any applicable fee and expense guidelines and/or orders and (c) any requirements governing interim and final fee applications. In the event that Rothschild & Co's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and reasonably incurred expenses of Rothschild & Co under the Letter Agreement and this Amendment as promptly as practicable in accordance

with the terms of the Letter Agreement and this Amendment and any applicable orders of the Bankruptcy Court.

In a Bankruptcy Case, the Company agrees that Rothschild & Co's post-petition compensation as set forth in the Letter Agreement and this Amendment and payments made pursuant to reimbursement and indemnification provisions of the Letter Agreement and this Amendment shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Company to pay promptly Rothschild & Co the compensation and expense reimbursement contemplated under the Letter Agreement and this Amendment after taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court. In addition, the Company shall use its commercially reasonable efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in the Bankruptcy Case provides for the full and prompt payment of Rothschild & Co's fees and expenses contemplated under the Letter Agreement and this Amendment from any cash collateral and financing proceeds. Rothschild & Co shall have no obligation to provide any services under the Letter Agreement and this Amendment if the conditions of this paragraph are not satisfied.

Rothschild & Co shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

The Company and Rothschild & Co acknowledge and agree that (a) the hours worked, (b) the results achieved and (c) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Rothschild & Co have taken such factors into account in setting the fees under the Letter Agreement and this Amendment.

With respect to any Plan, the Company shall use its commercially reasonable efforts to include Rothschild & Co and the other Exculpated Parties in the customary release from liability of professionals in the Plan, subject to the customary carveouts applicable to the other professionals thereunder, including gross negligence, willful misconduct and fraud.

E.     Fees of Rothschild & Co. In addition to the fees set forth in the Letter Agreement (which shall continue to apply during a Bankruptcy Case), the Company, and its successors, if any, agree to pay Rothschild & Co (via wire transfer or other mutually acceptable means) the following additional fees in cash:

1.     Commencing upon the commencement of a Bankruptcy Case, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Fee") of $200,000 per month. The initial Monthly Fee shall be pro-rated based on the date of commencement of a Bankruptcy Case. The initial Monthly Fee shall be payable by the Company upon the commencement of a Bankruptcy Case, and thereafter the Monthly Fee shall be payable by the

Company in advance on the first day of each month. Rothschild & Co shall credit against the Minority M&A Transaction Fee or Control M&A Transaction Fee, as appropriate (such credit to be applied only once and without duplication), 50% of the Monthly Fees paid after the Company's payment of the third Monthly Fee and 100% of the Monthly Fees paid after the Company's payment of the sixth Monthly Fee (in each case, the "Monthly Fee Credit"); provided that the sum of the Monthly Fee Credit shall not exceed the Minority M&A Transaction Fee or Control M&A Transaction Fee, as appropriate.

F.    Bankruptcy Case Expenses. Notwithstanding Paragraph 3 of the Letter Agreement, if a Bankruptcy Case is commenced, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Rothschild & Co for all of its reasonable expenses incurred in connection with performing services for the Company with respect to a Bankruptcy Case upon presentation of an invoice or other similar documentation with reasonable detail. If a Bankruptcy Case is commenced, it is understood that Rothschild & Co's reimbursable counsel fees may include, without limitation, fees incurred in representing Rothschild & Co's interests during the pendency and following the conclusion of any Bankruptcy Case, including, without limitation, counsel fees incurred in connection with Rothschild & Co's retention and payment hereunder. Nothing contained in this Section F. shall limit any provision of the Indemnification Agreement.

G.    All Agreements. The Letter Agreement as amended by this Amendment contains all of the agreements of the Parties with respect to the matters contained herein. Nothing in this Amendment shall be deemed to waive or modify any of the provisions of the Letter Agreement, except as expressly stated herein. Without limitation of the foregoing, the Indemnification Agreement shall remain in full force and effect and shall be deemed to cover, without limitation, the additional services, and matters pertaining to such services, set forth in this Amendment.

H.    No Other Modifications. Except as hereby amended, the Letter Agreement shall remain unmodified and, as hereby amended, is ratified and reaffirmed.

I.    Further Assurances. The Parties agree (i) to execute and deliver to each other such other documents, and (ii) to do such other acts and things, as the other Party may at any time reasonably request, for the purpose of carrying out the intent of this Amendment.

J.    Headings. The headings in this Amendment are for reference only and shall not affect the interpretation of this Amendment.

K.    Counterparts. This Amendment may be executed in multiple counterparts with detachable signature pages, each of which will be deemed an original, but which taken together shall form a single agreement. A copy of this Amendment or of a signature thereto shall have the same force and effect as the original. An electronic signature of this Amendment and/or an electronic transmission of a signature shall be binding on each Party whose signature appears thereon.

L.    Electronic Signatures. The Parties may execute this Amendment electronically and further agree that any such execution by means of an electronically-produced signature shall

have the same legal validity and enforceability as a manually executed signature to the fullest extent permitted by applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, or any similar applicable federal or state law, rule, or regulation, as the same may be in effect from time to time, and the Parties hereby waive any objection to the contrary.

        M.      Choice of Law and Venue. The choice of law and venue provisions set forth in Paragraph 10 of the Letter Agreement shall apply to this Amendment.

Each of the Parties has executed this Amendment to Letter Agreement to be effective as of August 9, 2022.

**Rothschild & Co US Inc.**

By: _____

Name: Charles Delo

Title: Managing Director

Date: August 10, 2022

**Vital Pharmaceuticals, Inc.**

By: _____
John H Owoc (Aug 10, 2022 16:04 EDT)

Name: John H. Owoc

Title: CEO

Date: Aug 10, 2022

**EXHIBIT C**

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                Chapter 11 Case

VITAL PHARMACEUTICALS, INC., *et al.*,[1]           Case No.: 22-_____

    Debtors.                                      (Joint Administration Pending)

_____/

**INTERIM ORDER APPROVING THE EMPLOYMENT OF
ROTHSCHILD & CO US INC. AS INVESTMENT BANKER FOR
THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

    **THIS MATTER** having come before the Court for a hearing on October ___, 2022 at

_____ a.m./p.m. in Fort Lauderdale, Florida (the "**Hearing**") upon the *Debtors' Application for*

*Entry of Interim and Final Orders Under 11 U.S.C. §§ 327(a) and 328(a) Authorizing the*

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

11605724-3

*Employment and Retention of Rothschild & Co US Inc. as Investment Banker for the Debtors, Effective as of the Petition Date* [ECF No. ___] (the "**Application**"),[2] the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* [ECF No. ___] (the "**First Day Declaration**"), and the *Declaration of Homer Parkhill in Support of the Debtors' Application for Entry of an Order Authorizing the Employment and Retention of Rothschild & Co US Inc. as Investment Banker for the Debtors, Effective as of the Petition Date* (the " **Parkhill Declaration**") attached to the Application as **Exhibit A.** The Application requests entry of interim and final orders approving the Debtors' employment of Rothschild & Co US Inc. ("**Rothschild & Co**") to provide investment banking advisory services to the Debtors.

The Court, having considered the Application, the Parkhill Declaration, the First Day Declaration, and  the record of the Hearing and all of the proceedings had before the Court, finds that (a) the Court has jurisdiction over the matters raised in the Application pursuant to 28 U.S.C. §§ 157 and 1334; (b) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (c) this matter is core pursuant to 28 U.S.C. § 157(b)(2)(A); (d) the Court may enter a final order consistent with Article III of the United States Constitution; (e) notice of the Application and the Hearing thereon was sufficient under the circumstances and no other or further notice need be provided; (f) the relief requested in the Application is in the best interests of the Debtors, their estates, their creditors and other parties in interest; (g) the terms and conditions of Rothschild & Co's employment set forth in the Engagement Letter (including the Fee and Expense Structure) are reasonable as required by section 328(a) of the Bankruptcy Code; (h) Rothschild & Co does not hold or represent interests adverse to the Debtors' estates and is a "disinterested person," as

---

[2]  Any capitalized term not explicitly defined herein shall have the meaning ascribed to it in the Application or Engagement Letter, as applicable.

defined in section 101(14) of the Bankruptcy Code; (i) the Application and the Parkhill Declaration are in full compliance with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules; and (j) upon a review of the record before the Court, including the legal and factual bases set forth in the Application and the First Day Declaration and the statements made by counsel at the Hearing, and being otherwise fully advised in the premises, does for the reasons stated on the record of the Hearing, all of which are incorporated herein, and after due deliberation and sufficient cause appearing therefor, has determined good and sufficient causes exists to grant the relief requested. Accordingly, it is

ORDERED as follows:

1.     The Application is **GRANTED**, on an interim basis, as set forth herein.

2.     The Debtors are authorized, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016, to employ and retain Rothschild & Co as the Debtors' investment banker in accordance with the terms and conditions set forth in the Application and the Engagement Letter, which terms and conditions of the Engagement Letter, attached hereto as **Exhibit 1**, are approved and incorporated herein by reference, subject to the terms of this Order, effective as of the Petition Date.

3.     All of Rothschild & Co's compensation set forth in the Engagement Letter, including, without limitation, the Fee and Expense Structure, is approved pursuant to section 328(a) of the Bankruptcy Code, and Rothschild & Co shall be compensated and reimbursed pursuant to section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter, subject to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court.

3

4.      None of the fees payable to Rothschild & Co shall constitute a "bonus" or fee enhancement under applicable law.

5.      Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, orders of this Court, or any guidelines regarding submission and approval of fee applications, Rothschild & Co and its professionals shall not be required to keep time records except in accordance with its normal firm policies.

6.      Notwithstanding anything to the contrary in the Engagement Letter or the Application, to the extent that the Debtors request Rothschild & Co to perform any services other than those detailed in the Engagement Letter, the Debtors shall seek further approval by the Court by an application that shall set forth the additional services to be performed and the additional fees sought to be paid.

7.      The Debtors shall be bound by the indemnification, contribution, reimbursement, exculpation and other provisions of the Engagement Letter, subject, during the pendency of the Chapter 11 Cases, to the following:

(a) No Indemnified Party (as such term is defined in the Engagement Letter) shall be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

(b) The Debtors shall have no obligation to indemnify any Indemnified Party, or provide contribution or reimbursement to any Indemnified Party, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from such Indemnified Party's gross negligence, actual fraud, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of such Indemnified Party's contractual obligations, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to applicable law; or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which such Indemnified Party is not entitled to receive indemnity, contribution or reimbursement under the terms of the Engagement Letter; and

4

(c) If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these Chapter 11 Cases, any Indemnified Party believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter, including, without limitation, the advancement of defense costs, such Indemnified Party must file an application therefor in this Court, and the Debtors may not pay any such amounts to such Indemnified Party before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for fees and expenses by Indemnified Parties for indemnification, contribution, or reimbursement, and not as a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Parties. All parties in interest shall retain the right to object to any demand by any Indemnified Party for indemnification, contribution, or reimbursement.

8.     Section 2(d) of the Initial Engagement Letter is modified by deleting the following sentence: "For the avoidance of doubt, in no event shall Rothschild & Co be entitled to more than one New Capital Fee pursuant to this Letter Agreement."

9.     The terms and conditions of this Order are immediately effective and enforceable upon its entry.

10.     The Debtors and Rothschild & Co are authorized and empowered to take all actions necessary to effectuate the relief granted pursuant to this Order.

11.     The relief granted herein shall be binding upon any chapter 11 trustee appointed in these Chapter 11 Cases, or upon any chapter 7 trustee appointed in the event of a subsequent conversion of these Chapter 11 Cases to cases under chapter 7.

12.     Notwithstanding anything in the Application,  the Parkhill Declaration, or Engagement Letter to the contrary, to the extent that Rothschild & Co uses the professional financial advisory or investment banking services of independent contractors, subcontractors or employees of affiliates or subsidiaries (collectively, the "**Contractors**") in these Chapter 11 Cases, Rothschild & Co shall (i) pass-through the cost of such Contractors to the Debtors at the same rate

5

11605724-3

that Rothschild & Co pays the Contractors, (ii) seek reimbursement for actual costs only, (iii) ensure that the Contractors are subject to substantially similar conflict checks as required for Rothschild & Co, and (iv) file with the Court any disclosures required by Bankruptcy Rule 2014.

13.     The Court shall conduct a final hearing on the Application on _____, **2022 at _____ a.m./p.m.** (the "Final Hearing").

14.     Entry of this Order is without prejudice to the rights of any party in interest to interpose an objection to the Application, and any such objection will be considered on a *de novo* basis at the Final Hearing.

15.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation or enforcement of this Order.

# # #

Submitted by:
Jordi Guso, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email: jguso@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

6

11605724-3

# EXHIBIT 1

## (Engagement Letter)

11605724-3

As of April 8, 2022

Jack Owoc
CEO
Vital Pharmaceuticals, Inc.
1600 N Park Dr.
Weston, FL 33326



Dear Mr. Owoc:

This letter (the "Letter Agreement") confirms the understanding and agreement between Rothschild & Co US Inc. ("Rothschild & Co") and Vital Pharmaceuticals, Inc. (the "Company"), pursuant to which Rothschild & Co is pleased to accept its engagement by the Company. This Letter Agreement shall be effective as of April 8, 2022 (the "Effective Date").

1. <u>Services to be Rendered</u>. The Company engages Rothschild & Co as its exclusive financial advisor for the purpose of:

(a) advising the Company with respect to a potential minority investment, sale, merger or other business/strategic combination involving the Company;

(b) assisting the Company in identifying possible counterparties for a potential M&A Transaction (as defined below);

(c) assisting the Company in the development and implementation of a marketing plan and assisting the Company in its preparation of an information memorandum describing the Company for use with potential counterparties to a M&A Transaction;

(d) assisting the Company in its assessment of the financial aspects of a M&A Transaction and, if the Company determines to pursue a M&A Transaction, in its development of a plan for accomplishing such M&A Transaction;

(e) assisting the Company in structuring a M&A Transaction;

(f) participating on the Company's behalf in negotiations concerning the financial aspects of a M&A Transaction;

(g) if and as requested by the Company, assisting or participating in negotiations with any current creditors of the Company and/or their respective representatives in connection with a Waiver/Forbearance Transaction (as defined below);

(h) assisting the Company in raising new debt or equity financing in connection with a New Capital Raise (as defined below);

Rothschild & Co US Inc.
1251 Avenue of the Americas
New York, NY 10020
www.rothschildandco.com

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 2



     (i)    assisting the Company in making internal and external presentations concerning the financial aspects of any proposed Transaction (as defined below), as appropriate;

     (j)    advising and assisting the Company in connection with setting up a data room and due diligence efforts in connection with any proposed Transaction; and

     (k)    providing such other investment banking and financial advisory services as the Company and Rothschild & Co may from time to time agree upon.

The Company acknowledges that Rothschild & Co is not providing any advice on tax, legal or accounting matters, and that the Company will seek the advice of its own professional advisors with respect to such matters and make an independent decision regarding any transaction contemplated herein based on such advice.

The Company further acknowledges that in performing the foregoing services, Rothschild & Co may utilize the services of one or more of its affiliates, as appropriate; provided that any such affiliates utilized by Rothschild & Co shall be subject to the terms of this Letter Agreement.

The parties understand that the terms of this Letter Agreement and the Indemnification Agreement (as defined herein) shall apply to any services provided by Rothschild & Co to the Company in connection with a potential Transaction or the other matters described herein as of the Effective Date.

    2.   <u>Compensation</u>.  In connection with this engagement, the Company shall pay to Rothschild & Co the following fees in cash:

     (a)    Immediately upon the consummation and funding of a Minority M&A Transaction (as defined below), a fee (the "Minority M&A Transaction Fee") equal to:

         i.   if the Implied Enterprise Value (as defined below) is $7.25 billion or less, (A) 0.50% of the aggregate Implied Enterprise Value *multiplied by* (B) the Minority M&A Percentage (as defined below); or

         ii.   if the Implied Enterprise Value is greater than $7.25 billion and equal to or less than $10.00 billion, (A) 0.75% of the aggregate Implied Enterprise Value *multiplied by* (B) the Minority M&A Percentage; or

         iii.   if the Implied Enterprise Value is greater than $10.00 billion, (A) 1.0% of the aggregate Implied Enterprise Value *multiplied by* (B) the Minority M&A Percentage;

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 3



provided, that in no event shall the Minority M&A Transaction Fee payable hereunder upon the consummation and funding of a Minority M&A Transaction be less than $6.5 million.

The term "Implied Enterprise Value" means the total enterprise value of 100% of the Company implied or otherwise derived from the investment in the Company made in the Minority M&A Transaction and based on the pre-transaction capital structure of the Company (i.e., on a pre-money basis), calculated as total equity value of 100% of the Company on a fully-diluted basis, plus the net debt of the Company (and including, without limitation, outstanding preferred stock of the Company) calculated based on the market value of such debt as of the consummation and funding of the Minority M&A Transaction.

The term "Minority M&A Percentage" means the percentage of equity interests (calculated on a fully-diluted basis) or assets of the Company purchased or otherwise acquired in the Minority M&A Transaction. For greater certainty, if economic and voting percentages differ, than the Minority M&A Percentage shall be based on the higher of the two percentages.

By way of example only, Appendix A attached hereto includes an illustrative calculation of the Minority M&A Transaction Fee.

For the avoidance of doubt, in no event shall Rothschild & Co be entitled to more than one Minority M&A Transaction Fee pursuant to this Letter Agreement.

(b) Immediately upon the consummation and funding of a Control M&A Transaction (as defined below), a fee (a "Control M&A Transaction Fee") equal to:

  i. if the aggregate Consideration (as defined below) involved in the Control M&A Transaction is less than or equal to $7.25 billion, 0.50% of the aggregate Consideration involved in the Control M&A Transaction; or

  ii. if the aggregate Consideration involved in the Control M&A Transaction is greater than $7.25 billion and equal to or less than $10.00 billion, 0.75% of the aggregate Consideration involved in the Control M&A Transaction; or

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 4



     iii.  if the aggregate Consideration involved in the Control M&A Transaction is greater than $10.00 billion, 1.0% of the aggregate Consideration involved in the Control M&A Transaction;

         provided, that in no event shall the Control M&A Transaction Fee payable hereunder upon the consummation and funding of a Control M&A Transaction be less than $6.5 million.

         For the avoidance of doubt, in no event shall Rothschild & Co be entitled to more than one Control M&A Transaction Fee pursuant to this Letter Agreement.

(c)    If Rothschild & Co provides services to the Company in connection with a Waiver/Forbearance Transaction as set forth in Paragraph 1 of this Letter Agreement, a fee (the "Waiver/Forbearance Fee") equal to 0.25% of the aggregate principal amount of any indebtedness and/or other liabilities of the Company and/or its affiliates under the credit agreements that are subject to, or otherwise affected by, the Waiver/Forbearance Transaction. The Waiver/Forbearance Fee shall be earned in full upon the Company's execution of a Waiver/Forbearance Transaction and shall be payable by the Company to Rothschild & Co within five business days thereafter. For the avoidance of doubt, in no event shall Rothschild & Co be entitled to more than one Waiver/Forbearance Fee pursuant to this Letter Agreement.

(d)    If Rothschild & Co provides services to the Company in connection with a New Capital Raise, a fee (the "New Capital Fee") equal to (i) 1.0% of the face amount of any senior secured or senior unsecured debt raised; (ii) 2.0% of the face amount of any junior, mezzanine or subordinated secured or unsecured debt raised and (iii) 2.0% of any debt-like or hybrid equity capital raised, including, without limitation, any preferred stock or convertible debt raised for bona fide debt-like or hybrid financing purposes. For the avoidance of doubt, the term "raised" shall include the amount committed or otherwise made available to the Company or its affiliates whether or not such amount (or any portion thereof) is drawn down at closing or is ever drawn down and whether or not such amount (or any portion thereof) is used to refinance existing obligations of the Company or its affiliates. The New Capital Fee shall be earned in full upon the closing of a New Capital Raise and shall be payable by the Company to Rothschild & Co within five business days thereafter. For the avoidance of doubt, in no event shall Rothschild & Co be entitled to more than one New Capital Fee pursuant to this Letter Agreement.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 5



No fees or expenses payable to any other financial advisor either by the Company or by any other entity shall reduce or otherwise adversely affect the fees payable hereunder to Rothschild & Co.

With respect to any New Capital Raise that closes prior to, or concurrently with, an M&A Transaction, Rothschild & Co shall credit against the Minority M&A Transaction Fee or Control M&A Transaction Fee, as applicable (such credit to be applied only once and without duplication): 25% of any New Capital Fees paid pursuant to Paragraph 2(d)(i) above (the "New Capital Fee Credit"); provided, that the sum of any New Capital Fee Credit shall not exceed the Minority M&A Transaction Fee or Control M&A Transaction Fee, as applicable. With respect to any New Capital Raise that closes after the closing of an M&A Transaction for which Rothschild & Co was paid the Minority M&A Transaction Fee or Control M&A Transaction Fee, as applicable (and which New Capital Raise is not subject to the New Capital Fee Credit set forth in the preceding sentence), any New Capital Fees for such New Capital Raise payable pursuant to Paragraph 2(d)(i) above shall be reduced by 25% (the "New Capital Fee Reduction"). For greater certainty, no New Capital Fee shall be subject to both the New Capital Fee Credit and the New Capital Fee Reduction.

In the event that a Control M&A Transaction is not consummated and the Company receives a breakup, topping or similar fee and/or other expense reimbursement (including the settlement of or judgment in any litigation or dispute relating to a Control M&A Transaction net of any legal fees relating thereto) from the potential counterparty to such Control M&A Transaction or any of its affiliates, or similar consideration relating to the termination, abandonment or cancellation of a Control M&A Transaction (collectively, a "Breakup Fee"), the Company will pay Rothschild & Co a fee of 20% of such Breakup Fee (the "Rothschild & Co Breakup Fee"); provided, that the Rothschild & Co Breakup Fee shall not exceed the Control M&A Transaction Fee otherwise payable hereunder had the Control M&A Transaction been consummated.

All fees are payable in United States dollars.

The term "Control M&A Transaction" means any transaction or series or combination of transactions whereby, directly or indirectly, 50% or more of the equity interests (calculated on a fully-diluted voting or economic basis) or assets of the Company is purchased or otherwise acquired, including, without limitation, through a sale or exchange of capital stock or assets, a merger or consolidation, a leveraged buyout, a tender or exchange offer, the formation of a joint or collaborative venture or partnership or any other transaction. For the avoidance of doubt, the definition of "Control M&A Transaction" shall include any Control M&A Transaction that the Company conducts through an affiliate entity or subsidiary of the Company.

The term "Minority M&A Transaction" means any transaction or series or combination of related transactions whereby, directly or indirectly, less than 50% of the equity interests (including, without limitation, through an investment in preferred stock or capital convertible into equity interests) (in each case, calculated on a fully-diluted voting and economic basis) or assets of the

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 6



Company is purchased or otherwise acquired, including, without limitation, through a sale or exchange of equity interests or assets, a tender or exchange offer, the formation of a joint or collaborative venture or partnership, a minority interest or any other transaction, in each case, other than pursuant to a New Capital Raise. For the avoidance of doubt, the term "Minority M&A Transaction" shall include any Minority M&A Transaction that the Company conducts through an affiliate entity or subsidiary of the Company. For the further avoidance of doubt, a Minority M&A Transaction may consist of a primary offering of equity interests by the Company and/or secondary resales of equity interests by shareholders of the Company if consummated as part of the same transaction or series of related transactions.

The term "M&A Transaction" means a Control M&A Transaction or a Minority M&A Transaction.

The term "New Capital Raise" means (i) the issuance of any debt securities by the Company or its affiliates, including, without limitation, senior, junior, mezzanine, secured or unsecured debt securities of the Company or its affiliates, (ii) the execution by the Company or its affiliates of a credit, revolving credit, term loan, letter of credit or similar facility, and whether in the form of senior, junior, secured, unsecured, mezzanine or any other debt, (iii) the issuance by the Company or its affiliates of any debt-like or hybrid equity capital, including, without limitation, any preferred stock or convertible debt raised for bona fide debt-like or hybrid financing purposes, and (iv) any similar financing or new capital raise. For greater certainty, with respect to a transaction described in clause (iii) above, (A) if such capital is raised primarily for bona fide debt-like or hybrid financing purposes, then such transaction shall be deemed a New Capital Raise as opposed to a Minority M&A Transaction, and (B) if such transaction is primarily for purposes of effecting a strategic minority equity investment in the Company or its affiliates, then such transaction shall be deemed a Minority M&A Transaction as opposed to a New Capital Raise. For the further avoidance of doubt, in no event shall both a Minority M&A Transaction Fee and a New Capital Raise be charged with respect to the same capital. For the further avoidance of doubt, a New Capital Raise shall include any new capital raised in a refinancing transaction. For the further avoidance of doubt, the definition of "New Capital Raise" shall include any New Capital Raise that the Company conducts through an affiliate entity or subsidiary of the Company.

The term "Waiver/Forbearance Transaction" means a waiver or forbearance under one or more of the Company's or its affiliates' outstanding credit agreements, which may include, without limitation, a waiver of any breaches of any of the financial or other material covenants under one or more of the credit agreements. For the avoidance of doubt, if the Company desires Rothschild & Co to assist the Company with any other amendment or modification to one or more of the Company's or its affiliates' outstanding credit agreements, including, without limitation, (i) an agreement by the lenders under one or more of the credit agreements to accept payment in kind interest for any portion of their interest payment, or (ii) an extension of the maturity date of any portion of the debt issued under one or more of the credit agreements, then such additional services shall be covered by an

Confidential

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 7



amendment to this Letter Agreement containing customary fees for such services as mutually agreed in good-faith by the Company and Rothschild & Co.

The term "Transaction" means a M&A Transaction, a Waiver/Forbearance Transaction or a New Capital Raise.

The term "Consideration" means the total amount of all cash and the fair market value of any securities, agreements or other property and any other consideration, including, without limitation (and without duplication), (i) consideration paid to the holders of any options, warrants, convertible securities or stock appreciation rights of the Company, whether or not vested, (ii) the present value (determined as of the closing of the Control M&A Transaction) of any amounts, securities, agreements or other property to be paid contingent on future events or to be paid over time, and (iii) the present value (determined as of the closing of the Control M&A Transaction) of any amounts, securities, agreements or other property held in escrow (collectively, "Escrowed Amounts"), in each case paid or payable, directly or indirectly, in connection with a Control M&A Transaction. For purposes of calculating the present value of Escrowed Amounts under clause (iii) above, any Escrowed Amounts shall be assumed to be paid in full to the Company upon the end of the escrow release schedule as agreed in the definitive agreements for the Control M&A Transaction. Consideration shall be deemed to include the aggregate principal amount of any indebtedness for borrowed money, pension liabilities, guarantees, capitalized loans, declared and unpaid dividends and other similar obligations or liabilities (in each case, net of cash and cash equivalents as of the closing of the Control M&A Transaction) assumed, retired, repaid, extinguished or defeased, directly or indirectly, in connection with a Control M&A Transaction, or which survive the closing of a Control M&A Transaction. Consideration also shall be deemed to include the aggregate amount of any dividends paid or other distributions made by the Company with respect to its stock after the date of a definitive agreement with respect to a Control M&A Transaction, other than normal recurring cash dividends in amounts not materially greater than currently paid. The present value of any contingent payments or payments to be made over time shall be mutually determined in good-faith by the Company and Rothschild & Co. If the consideration to be paid is computed in any foreign currency, the value of such foreign currency shall, for purposes hereof, be converted into U.S. dollars at the prevailing exchange rate on the date or dates on which such consideration is payable. For the avoidance of doubt, if the Company conducts a Control M&A Transaction through an affiliate entity or subsidiary of the Company, then any consideration paid or payable to such affiliate entity or subsidiary shall be deemed Consideration hereunder to the same extent as if paid or payable to the Company.

In connection with the sale of 50% or more but less than 100% of the outstanding equity interests of the Company, Consideration will be calculated as if 100% of such outstanding equity interests of the Company on a fully diluted basis had been acquired for the same per share amount as paid in the Control M&A Transaction.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 8



The fair market value of any securities (whether debt, equity, options or warrants) or other property or agreements paid or payable as Consideration in a Control M&A Transaction shall be determined as follows: (a) the fair market value of securities that are freely tradable in an established public market shall be the last closing market price of such securities prior to the public announcement of a Control M&A Transaction; and (b) the fair market value of securities which are not freely tradable or which have no established public market, or of property or agreements other than securities, shall be the fair market value thereof as mutually agreed in good faith by the Company and Rothschild & Co.

3.  Expenses.  In addition to the compensation payable pursuant to Paragraph 2 above and without limitation of any provision of the Indemnification Agreement, the Company shall reimburse Rothschild & Co for all of Rothschild & Co's reasonable out-of-pocket expenses incurred in connection with the performance of Rothschild & Co's engagement hereunder if a Transaction is not consummated, including, without limitation, the fees, disbursements and other charges of Rothschild & Co's legal counsel and any other advisor retained by Rothschild & Co, if any (it being understood that the retention of any such advisor, other than legal counsel, will be made with the Company's advance written consent, which shall not be unreasonably withheld).  Such reimbursable expenses shall be paid by the Company to Rothschild & Co upon the earlier of (i) the termination of this Letter Agreement and (ii) the abandonment of the process for a Transaction by the Company.  Reasonable such expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, third-party data processing, third-party document production, communication charges outside of existing communication plans (i.e., non-overhead), research outside of existing research plans (i.e., non-overhead), and third-party courier services.  Notwithstanding the foregoing, Rothschild & Co's reimbursable expenses under this Paragraph 3 shall not exceed $25,000 in the aggregate without the prior written consent of the Company, which shall not be unreasonably withheld.  For the avoidance of doubt, nothing contained in this Paragraph 3 shall affect any of the provisions of the Indemnification Agreement.

4.  Information.

(a)  The Company understands and agrees that the services to be rendered by Rothschild & Co pursuant to Paragraph 1 of this Letter Agreement and the advice, whether formal or informal, relating thereto are solely for the benefit and use of the Company.  The Company agrees that any presentations, reports, opinions or other advice provided by Rothschild & Co to the Company in the context of this engagement shall not be summarized, excerpted from, disclosed publicly or made available to third parties (other than on a confidential, need to know and non-reliance basis to the Company's legal counsel and accountants), in whole or in part, without the prior written consent of Rothschild & Co as to form and substance.  No reference to Rothschild & Co shall be made in any press release, filing or other document without Rothschild & Co's prior approval as to form and substance.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 9



(b)     The Company will cooperate with Rothschild & Co and furnish to, or cause to be furnished to, Rothschild & Co any information that Rothschild & Co reasonably deems appropriate to enable Rothschild & Co to render services hereunder (all such information provided by or on behalf of the Company being the "Information") and will provide Rothschild & Co with reasonable access to the officers, directors, employees, accountants, counsel and other representatives (collectively, the "Representatives") of the Company. In addition, the Company shall promptly inform Rothschild & Co of any material developments that it believes is reasonably likely to have a material effect on the services provided by Rothschild & Co under this Letter Agreement. The Company recognizes and confirms that Rothschild & Co (i) will use and rely solely on the Information supplied by the Company and its Representatives and on information available from generally recognized public sources in performing the services contemplated by this Letter Agreement without having assumed any obligation to verify or investigate independently the same; (ii) will be entitled to assume and rely upon the accuracy and completeness of the Information and such other information; (iii) does not assume responsibility for the accuracy or completeness of the Information and such other information; and (iv) has not been asked to and will not conduct a physical inspection of any properties or assets of the Company or any other party or make or obtain any independent evaluation or appraisal of any assets or liabilities (contingent or otherwise) of the Company or any other party. The Information, when delivered by or on behalf of the Company, to the best of its knowledge, will (i) be true and correct in all material respects, (ii) be prepared in good faith, and (iii) not contain any material misstatement of fact or omit to state any material fact. Without limitation of the foregoing, the Company agrees that any projections or forecasts prepared by the Company and provided to Rothschild & Co will have been prepared, to the best of its knowledge, in good faith and will be based upon assumptions which, in light of the circumstances under which they are made, are reasonable in the Company's business judgment. Rothschild & Co will assume that any projected or forecasted financial information reflects the best available estimates of future financial performance. Rothschild & Co recognizes and confirms that the Company will be entitled to assume and rely upon the accuracy and completeness of any information available from generally recognized public sources not prepared by the Company without having assumed any obligation to verify or investigate the same and the Company does not assume responsibility for the accuracy or completeness of such information.

(c)     The Company will promptly notify Rothschild & Co if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore delivered to Rothschild & Co.

Confidential

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 10



(d)     The Company hereby acknowledges that all information contained in any information memorandum will be provided by or based upon information provided by the Company or third parties on the Company's behalf, and that the Company will be solely responsible for the contents thereof.

5.     Indemnification and Exculpation.  As further compensation for Rothschild & Co's services under this Letter Agreement, the Company shall indemnify Rothschild & Co and certain other indemnified parties pursuant to the terms of the Indemnification Agreement, dated as of the date hereof (the "Indemnification Agreement"), between the Company and Rothschild & Co, and the Indemnification Agreement is incorporated by reference herein.  The Indemnification Agreement shall survive any termination or expiration of this Letter Agreement.

The Company also agrees that no Exculpated Party (as defined below) shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its owners, parents, affiliates, security holders, creditors or any other person claiming through or on behalf of the Company for or in connection with advice or services rendered or to be rendered by any Exculpated Party pursuant to this Letter Agreement or the transactions contemplated hereby or any Exculpated Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen because of the gross negligence, willful misconduct, or fraud of such Exculpated Party in connection with any such advice, actions, inactions or services.  The term "Exculpated Party" means each of Rothschild & Co, its affiliates (within the meaning of Rule 12b-2 of the Securities Exchange Act of 1934, as amended) and each of their respective officers, directors, employees and agents and each other person, if any, controlling Rothschild & Co or any of its affiliates.

6.     Term.  This Letter Agreement shall commence on the date hereof and shall continue thereafter until ten days after such time as the Company or Rothschild & Co shall have notified the other party in writing of the termination of this Letter Agreement with or without cause.  Notwithstanding any termination of this Letter Agreement, unless this Letter Agreement is terminated by the Company for Cause (as defined below), the Company shall pay to Rothschild & Co the fees set forth in Paragraph 2 above (at the times and in the amounts set forth therein) if the Company (i) consummates any Transaction at any time within twelve (12) months following the effective date of termination of this Letter Agreement (such period, the "Tail Period") or (ii) executes a letter of intent or definitive agreement with respect to any Transaction at any time within the Tail Period (which, except in the case of the Rothschild & Co Breakup Fee, subsequently results in the consummation of a Transaction at any time thereafter); provided, that the fees set forth in Paragraph 2 above shall not be payable by the Company to Rothschild & Co with respect to a Transaction consummated during the Tail Period if the Company requests that Rothschild & Co be re-engaged by the Company as its financial advisor to provide services to the Company with respect to such Transaction pursuant to a separate letter agreement with the Company with terms and conditions no

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 11



less favorable to Rothschild & Co than this Letter Agreement and the Indemnification Agreement, and Rothschild & Co declines such engagement. No termination of this Letter Agreement shall affect the Company's obligation to pay accrued fees and expenses except to the extent provided for herein and to indemnify Rothschild & Co as provided in the Indemnification Agreement. The provisions of Paragraphs 3 through 8 and 10 shall survive any termination of this Letter Agreement. The term "Cause" means the gross negligence, willful misconduct or fraud of Rothschild & Co.

7. <u>Other Rothschild & Co Activities</u>. Rothschild & Co and its affiliates are involved in a wide range of financial advisory and investment banking activities from which conflicting interests or duties may arise. Rothschild & Co will not have any duty to disclose to the Company or utilize for the Company's benefit any non-public information acquired in the course of providing services to any third-party, engaging in any transaction (for its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, Rothschild & Co and its affiliates may provide financial advisory or other investment banking services to, or have other relationships with, companies that may be customers, counterparties or competitors of the Company or that may otherwise have relationships with the Company. Rothschild & Co shall have no obligation to disclose to the Company any information it receives as a result of such activities, or the fact that it is in possession of such information, and Rothschild & Co shall have no obligation to use any such information for the benefit of or on behalf of the Company. In the ordinary course of their asset management, merchant banking and other business activities, affiliates of Rothschild & Co may hold long or short positions, and may trade or otherwise effect transactions, for their own accounts or the accounts of their clients in equity, debt or other securities (or related derivative securities) or financial instruments of the Company, any of its affiliates or any other company that may be involved in a Transaction.

8. <u>Additional Services</u>. The Company understands that if Rothschild & Co is asked to act for the Company in any other formal additional capacity not specifically addressed in this letter, such activities shall constitute separate engagements and the terms of any such additional engagements will be embodied in one or more separate written agreements containing terms and conditions to be mutually agreed upon, including, without limitation, appropriate indemnification provisions.

9. <u>Authorization</u>. Rothschild & Co will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given by a person who is, or is reasonably believed by Rothschild & Co to be, a director, officer, employee or authorized agent of the Company.

10. <u>General</u>. No party may assign its rights or delegate its obligations under this Letter Agreement without the prior written consent of the other party, except pursuant to merger, consolidation or operation of law. A purported assignment or delegation in violation of the preceding sentence is void. This Letter Agreement binds and benefits the parties and their respective permitted successors and assigns.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 12



Prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or substantially all of the Company's assets in one or a series of transactions that does not provide for the assumption of the Company's obligations set forth in this Letter Agreement and the Indemnification Agreement, the Company will notify Rothschild & Co in writing thereof and, if requested by Rothschild & Co, shall arrange in connection therewith alternative means of providing for such obligations of the Company hereunder, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions reasonably satisfactory to Rothschild & Co. In the event that a Transaction is effected through a subsidiary of the Company, then the Company shall cause such entity to also assume and honor, in addition to the Company, the obligations and liabilities of the Company hereunder.

Rothschild & Co has been retained under this Letter Agreement as an independent contractor and not as a fiduciary or agent of the Company or any third party (including security holders, creditors, employees or other stakeholders of the Company), and the Company hereby disclaims any such fiduciary relationship.

Notwithstanding anything herein to the contrary, in performing its services pursuant to this Letter Agreement, Rothschild & Co is not assuming any responsibility for the Company's decision to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Transaction or other transaction.

In the event that Rothschild & Co initiates an action to enforce its rights under this Letter Agreement, then the Company shall reimburse Rothschild & Co for all reasonable costs and expenses incurred by Rothschild & Co in connection with enforcing such rights under this Letter Agreement to the extent Rothschild & Co prevails in such enforcement. Similarly, in the event that the Company initiates an action to enforce its rights under this Letter Agreement, then Rothschild & Co shall reimburse the Company for all reasonable costs and expenses incurred by the Company in connection with enforcing such rights under this Letter Agreement to the extent the Company prevails in such enforcement.

The Company agrees to provide Rothschild & Co with its tax or other similar identification number and/or other identifying documents as Rothschild & Co may reasonably request, to enable it to comply with applicable law. For your information, Rothschild & Co may also screen the Company against various databases to verify its identity. The Company represents and warrants that it has provided or, upon request, will timely provide to Rothschild & Co a true and complete list of (i) its directors and executive officers and (ii) each beneficial owner of 20% or more of the outstanding equity interests in the Company on a fully-diluted basis.

Each party confirms and agrees that, insofar as may be relevant to the services set forth in Paragraph 1 or a Transaction, it shall not, and shall ensure that its representatives and any other person who performs services for or on its behalf shall not, offer, give or agree to give, or request,

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 13



accept or agree to accept, from any person, whether for itself or on behalf of another, any gift, payment, consideration or benefit of any kind which constitutes an illegal or corrupt practice under the laws of any relevant jurisdiction.

The Company consents to Rothschild & Co's limited display of the Company's name and logo solely as part of Rothschild & Co's general marketing materials (*i.e.*, pitch books); provided, that such display is in the form of a customary tombstone announcement and that the Company is provided a copy of any such customary tombstone announcement. The Company agrees that in any press release issued by it announcing a transaction contemplated by this Letter Agreement, the Company will include in such press release a reference to Rothschild & Co as exclusive financial advisor to the Company with respect to such transaction in a form reasonably acceptable to the Company. Rothschild & Co further agrees that it will not issue or contribute to any press release announcing a transaction contemplated by this Letter Agreement without the Company's written preapproval of such press release.

This Letter Agreement and the Indemnification Agreement contain the entire agreement of the parties with respect to the subject matter hereof and supersede and take precedence over all prior agreements or understandings, either oral or written, between Rothschild & Co and the Company with respect to the subject matter hereof. The Company and Rothschild & Co have all requisite power and authority to enter into this Letter Agreement and the transactions contemplated hereby. This Letter Agreement has been duly and validly authorized by all necessary action on the part of the Company and Rothschild & Co and has been duly executed and delivered by the Company and Rothschild & Co and constitutes a legal, valid and binding agreement of the Company and Rothschild & Co, enforceable in accordance with its terms. Each of the Company and Rothschild & Co represents and warrants that it is validly existing and in good-standing under the laws of its jurisdiction of incorporation or formation.

This Letter Agreement may not be amended or modified except in a writing executed by the parties hereto. All aspects of the relationship created by this Letter Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed therein without giving effect to conflicts of law principles or rules to the extent such principles or rules would require or permit the application of the laws of another jurisdiction. THE COMPANY AND ROTHSCHILD & CO WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF ROTHSCHILD & CO PURSUANT TO OR THE PERFORMANCE BY ROTHSCHILD & CO OF THE SERVICES CONTEMPLATED BY THIS LETTER AGREEMENT. All actions and proceedings arising out of or relating to this Letter Agreement shall be heard and determined exclusively in any New York state or federal court sitting in the Borough of Manhattan of the City of New York, to whose jurisdiction the Company and Rothschild & Co hereby irrevocably submit. The Company and Rothschild & Co hereby irrevocably waive any defense or objection to the New York forum designated above.

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 14



        This Letter Agreement may be executed in two or more counterparts, each of which shall be
deemed an original, but all of which shall constitute one and the same agreement.  Delivery of an
executed counterpart of a signature page to this Letter Agreement by facsimile, portable document
format (PDF) or other electronic means shall be effective as delivery of a manually executed
counterpart to this Letter Agreement.

Confidential

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 15



      If the foregoing correctly sets forth our agreement, we would appreciate your signing and returning to us the enclosed copies of this Letter Agreement and the Indemnification Agreement, whereupon this Letter Agreement and the Indemnification Agreement shall constitute binding agreements between us.

Sincerely,

ROTHSCHILD & CO US INC.

By:

Name:  Michael Speller
Title:   Partner

Date:  April 24, 2022

Acknowledged:

ROTHSCHILD & CO
LEGAL & COMPLIANCE

By:

Name: Frank London
Title: Managing Director

Date: April 24, 2022

Agreed and Accepted:

VITAL PHARMACEUTICALS, INC.

By:

Jack Owoc
CEO

Date: 04/08/2022

Vital Pharmaceuticals, Inc.
As of April 8, 2022
Page 16



Appendix A – Illustrative Calculation of the Minority M&A Transaction Fee

**Illustrative Minority M&A Transaction Fee Example**

| Implied Enterprise Value | Percentage of Implied Enterprise Value | Calculation Prior to Application of Minority M&A Percentage | Minority M&A Percentage | Minority M&A Transaction Fee |
|---|---|---|---|---|
| $7,250,000,000 | 0.500% | $36,250,000 | 20% | $7,250,000 |
| $8,500,000,000 | 0.750% | $63,750,000 | 20% | $12,750,000 |
| $10,000,000,000 | 1.000% | $100,000,000 | 20% | $20,000,000 |
| ( A ) | ( B ) | ( C ) | ( D ) | ( E ) |

A x B = C (Calculation Prior to the Application of Minority M&A Percentage)

C x D = E (Minority M&A Transaction Fee)

As of April 8, 2022

Rothschild & Co US Inc.
1251 Avenue of the Americas
New York, New York 10020

Ladies and Gentlemen:

This letter (this "Indemnification Agreement") confirms the understanding and agreement between Rothschild & Co US Inc. ("Rothschild & Co") and Vital Pharmaceuticals, Inc. (the "Company") as to the matters set forth herein.  Reference is made to the letter agreement, dated as of the date hereof (the "Engagement Letter"), between Rothschild & Co and the Company, pursuant to which the Company engaged Rothschild & Co as its financial advisor in connection with the matters described therein.  For the purposes of this Indemnification Agreement, (i) the term "Indemnified Parties" shall mean Rothschild & Co, its affiliates (within the meaning of Rule 12b-2 of the Securities Exchange Act of 1934, as amended) and each of their respective officers, directors, employees and agents and each other person, if any, controlling Rothschild & Co or any of its affiliates, and (ii) each of the Indemnified Parties shall be referred to as an "Indemnified Party".  This Indemnification Agreement shall be effective as of April 8, 2022 (the "Effective Date").

The Company agrees to indemnify and hold harmless each Indemnified Party from and against any losses, claims, liabilities, damages, proceedings, actions (including, without limitation, stockholder, creditor or derivative actions), judgments, settlements, assessments, investigation costs, fines, penalties, arbitration awards and any other liabilities, costs, fees and expenses (collectively, "Losses"), directly or indirectly in connection with, arising out of, based upon or related to the engagement of Rothschild & Co by the Company under the Engagement Letter or any transaction, activities or conduct in connection therewith as of the Effective Date; provided, that the Company shall not be required to indemnify any Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose because of the gross negligence, willful misconduct, or fraud of such Indemnified Party.

The Company shall further promptly reimburse any Indemnified Party for any reasonable fees, charges and disbursements of legal counsel or other reasonable fees, disbursements or expenses as they are incurred (a) in investigating, preparing, pursuing, settling or defending or assisting in the defense of any action or other

Rothschild & Co US Inc.
As of April 8, 2022
Page 2

proceeding (whether formal or informal) or threat thereof (including, without limitation, any expenses incurred in connection with any response to a subpoena or similar request for documents and/or testimony) relating to any of the matters covered by the indemnification set forth in the preceding paragraph, whether or not in connection with pending or threatened litigation or arbitration, whether or not any Indemnified Party is a party and whether or not resulting in any liability, and (b) in connection with enforcing such Indemnified Party's rights under this Indemnification Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose because of the gross negligence, willful misconduct, or fraud of such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated in the Engagement Letter, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party and any other party. Relative benefits to the Company, on the one hand, and Rothschild & Co, on the other hand, with respect to the matters contemplated in the Engagement Letter shall be deemed to be in the same proportion as (i) the total net proceeds received by the Company or its security holders, as the case may be, pursuant to the transaction(s) contemplated by the Engagement Letter, bears to (ii) all fees actually received by Rothschild & Co in connection with the Engagement Letter. Relative fault shall be determined by reference to, among other things, whether any alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents), on the one hand, or by Rothschild & Co, on the other hand.

Promptly after receipt by an Indemnified Party of service of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such Indemnified Party will notify the Company in writing of such complaint or of the commencement of such action or proceeding, but failure to so notify the Company will relieve the Company from the obligation to indemnify such Indemnified Party only if and only to the extent that such failure results in the forfeiture by the Company of material rights and defenses, and will not in any event relieve the Company from any other obligation or liability that the Company may have to any Indemnified Party otherwise than in accordance with the provisions hereof. If the Company so elects or is requested by such Indemnified Party, the Company will assume the defense of such action or proceeding including the employment of counsel reasonably satisfactory to such Indemnified Party and the payment of the reasonable and customary fees and disbursements of such counsel. In the event, however, such Indemnified Party reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if the defendants in or targets of any such action or proceeding include both an Indemnified Party and the Company and such Indemnified Party reasonably concludes that there may be relevant legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Company, or if the Company fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such Indemnified Party in a timely manner, then such Indemnified Party may employ separate counsel to represent or defend it in any such action or proceeding and the Company will

Rothschild & Co US Inc.
As of April 8, 2022
Page 3

pay the reasonable and customary fees and disbursements of such counsel; provided, however that the Company will not be required to pay the fees and disbursements of more than one separate counsel (in addition to local counsel) for such Indemnified Parties in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense.

The Company will not, without Rothschild & Co's prior written consent, which shall not be unreasonably delayed, withheld or conditioned, settle, compromise, consent to the entry of any judgment in or otherwise resolve or seek to terminate any action, claim, suit, investigation or proceeding in respect of which indemnification may be sought hereunder (or permit or otherwise facilitate any such action by any director or executive officer of the Company) (in each case whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (i) includes an express, unconditional release of each Indemnified Party from any liabilities arising out of such action, claim, suit, investigation or proceeding and (ii) does not include a statement as to, or an admission of fault, culpability or a failure to act by or on behalf of, an Indemnified Party. No Indemnified Party seeking indemnification, reimbursement or contribution under this Indemnification Agreement will, without the Company's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to herein.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Indemnification Agreement, if any term, provision, covenant or restriction contained in this Indemnification Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Indemnification Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated.

No party may assign any right or delegate any obligation under this Indemnification Agreement without the prior written consent of the other party, except pursuant to merger, consolidation or operation of law. A purported assignment or delegation in violation of the preceding sentence is void. This Indemnification Agreement binds and benefits the parties and their respective permitted successors and assigns. Each Indemnified Party (other than Rothschild & Co) shall be a third party beneficiary of this Indemnification Agreement, and as such, shall be entitled to the benefits of this Indemnification Agreement to the same extent as if it was a party. This Indemnification Agreement may not be amended or modified except in a writing executed by the parties.

This Indemnification Agreement and the Engagement Letter contain the entire agreement of the parties with respect to the subject matter hereof and thereof and supersede and take precedence over all prior agreements or understandings, either oral or written, between Rothschild & Co and the Company with respect to the subject matter hereof and thereof. The Company and Rothschild & Co have all requisite power and authority to enter into this Indemnification Agreement and the transactions contemplated hereby. This Indemnification Agreement has been duly and validly authorized by all necessary action on the part of the Company and Rothschild & Co and has been duly executed and delivered by the Company and Rothschild & Co and constitutes a legal, valid and binding agreement of the Company and Rothschild & Co, enforceable in accordance with its terms.

Rothschild & Co US Inc.
As of April 8, 2022
Page 4


This Indemnification Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed therein without giving effect to conflicts of law principles or rules to the extent such principles or rules would require or permit the application of the laws of another jurisdiction. THE COMPANY AND ROTHSCHILD & CO WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THIS INDEMNIFICATION AGREEMENT. All actions and proceedings arising out of or relating to this Indemnification Agreement shall be heard and determined exclusively in any New York state or federal court sitting in the Borough of Manhattan of the City of New York, to whose jurisdiction the Company and Rothschild & Co hereby irrevocably submit. The Company and Rothschild & Co hereby irrevocably waive any defense or objection to the New York forum designated above.

The provisions of this Indemnification Agreement shall apply to the Engagement Letter (including related activities prior to the date hereof) and any modification thereof and shall remain in full force and effect regardless of the expiration or termination of the Engagement Letter.

This Indemnification Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Indemnification Agreement by facsimile, portable document format (PDF) or other electronic means shall be effective as delivery of a manually executed counterpart to this Indemnification Agreement.

Rothschild & Co US Inc.
As of April 8, 2022
Page 5

Please indicate your agreement to and acceptance of the above terms by signing where indicated below.

Sincerely yours,

VITAL PHARMACEUTICALS, INC.

By:

Jack Owoc
CEO

Terms Agreed to and Accepted:

ROTHSCHILD & CO US INC.

By:

Name: Michael Speller
Title: Partner

Acknowledged:

ROTHSCHILD & CO
LEGAL & COMPLIANCE

By:

Name: Frank London
Title: Managing Director

Date: April 24, 2022

## AMENDMENT TO LETTER AGREEMENT

This amendment ("Amendment"), effective as of August 9, 2022, shall amend the letter agreement, dated as of April 8, 2022 (the "Letter Agreement"), between Rothschild & Co US Inc. ("Rothschild & Co") and Vital Pharmaceuticals, Inc. (the "Company"). Rothschild & Co and the Company may be referred to in this Amendment collectively as the "Parties" and individually as a "Party." All capitalized terms used herein but undefined shall have the meanings ascribed to such terms in the Letter Agreement.

In consideration of the mutual covenants contained herein, the Parties agree as follows:

A. Additional Services to be Rendered. In addition to the services set forth in Paragraph 1 of the Letter Agreement, Rothschild & Co shall provide the following additional services as reasonably requested by the Company and appropriate:

1. advising and assisting the Company in the development and implementation of a process intended to generate bidders for a sale of the Loan Parties (as defined in the Fourth Forbearance Amendment and Fifth Amendment to Amended and Restated Revolving Credit and Term Loan Agreement, dated as of August 8, 2022) pursuant to Section 363 of the Bankruptcy Code (the "363 Sale Process");

2. in connection with any case or cases commenced by or against the Company, any of its subsidiaries, any of its affiliates or any combination thereof, whether individually or on a consolidated basis (a "Bankruptcy Case"), under Title 11 of the United States Code §§ 101 et seq. (the "Bankruptcy Code"), and if requested by the Company, participating in hearings before the Bankruptcy Court in which such cases are commenced (the "Bankruptcy Court") and providing relevant testimony with respect to the matters described herein and issues arising in connection with any proposed plan of reorganization under a Bankruptcy Case (a "Plan");

3. acting as Investment Banker to the Company in connection with a Bankruptcy Case;

4. reviewing and analyzing any proposals the Company receives from third parties in connection with a Transaction during a Bankruptcy Case, including, without limitation, any proposals for debtor-in-possession financing, mergers and acquisitions or other strategic alternatives, as appropriate; and

5. assisting or participating in negotiations with the parties in interest, including, without limitation, any current or prospective creditors of, holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Transaction pursuant to a Bankruptcy Case.

B. Control M&A Transaction and Minority M&A Transaction. For the avoidance of doubt, a Control M&A Transaction or Minority M&A Transaction may be conducted, without limitation, pursuant to a Plan (including, without limitation, as part of any Plan providing for any

restructuring or reorganization of debt or other liabilities, an equitization or an exchange of debt for equity) or Section 363 of the Bankruptcy Code, and including, without limitation, any sale of the Loan Parties pursuant to the 363 Sale Process or otherwise; provided, that, for the avoidance of doubt, any payment of any debts or liabilities of, or any return or distribution on account of any equity interests in, the Company from the proceeds of any M&A Transaction shall not constitute a separate M&A Transaction. For the further avoidance of doubt, an M&A Transaction or Plan may be proposed by the Company or any other party.

      C.    New Capital Raise. For the avoidance of doubt, a New Capital Raise may be effected, without limitation, through a debtor-in-possession financing as part of a Bankruptcy Case or pursuant to a Plan.

      D.    Application for Retention of Rothschild & Co for a Bankruptcy Case. In the event a Bankruptcy Case is commenced, the Company shall apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of (a) the Letter Agreement, as amended by this Amendment and (b) Rothschild & Co's retention by the Company under the terms of the Letter Agreement and this Amendment (including, without limitation, the reimbursement of the fees, disbursements and other charges of Rothschild & Co's counsel pursuant to Section F. hereof without the requirement that the retention of such counsel be approved by the Bankruptcy Court), nunc pro tunc to the date the Chapter 11 case was commenced, and shall use commercially reasonable efforts to obtain Bankruptcy Court authorization thereof. The Company shall use commercially reasonable efforts to obtain such Bankruptcy Court approval and authorization subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code. The Company shall supply Rothschild & Co and its counsel with a draft of such application and any proposed order authorizing Rothschild & Co's retention sufficiently in advance of the filing of such application and proposed order to enable Rothschild & Co and its counsel to review and comment thereon. Upon commencement of a Bankruptcy Case, Rothschild & Co shall have no obligation to provide any services under the Letter Agreement and this Amendment unless the Bankruptcy Court approves Rothschild & Co's retention under the terms of the Letter Agreement and this Amendment in a manner materially consistent with the above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, which order is reasonably acceptable to Rothschild & Co. Rothschild & Co acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this Section D., payment of Rothschild & Co's fees and expenses shall be subject to (a) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code (and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code) and any order approving Rothschild & Co's retention, (b) any applicable fee and expense guidelines and/or orders and (c) any requirements governing interim and final fee applications. In the event that Rothschild & Co's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and reasonably incurred expenses of Rothschild & Co under the Letter Agreement and this Amendment as promptly as practicable in accordance

with the terms of the Letter Agreement and this Amendment and any applicable orders of the Bankruptcy Court.

In a Bankruptcy Case, the Company agrees that Rothschild & Co's post-petition compensation as set forth in the Letter Agreement and this Amendment and payments made pursuant to reimbursement and indemnification provisions of the Letter Agreement and this Amendment shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Company to pay promptly Rothschild & Co the compensation and expense reimbursement contemplated under the Letter Agreement and this Amendment after taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court. In addition, the Company shall use its commercially reasonable efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in the Bankruptcy Case provides for the full and prompt payment of Rothschild & Co's fees and expenses contemplated under the Letter Agreement and this Amendment from any cash collateral and financing proceeds. Rothschild & Co shall have no obligation to provide any services under the Letter Agreement and this Amendment if the conditions of this paragraph are not satisfied.

Rothschild & Co shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

The Company and Rothschild & Co acknowledge and agree that (a) the hours worked, (b) the results achieved and (c) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Rothschild & Co have taken such factors into account in setting the fees under the Letter Agreement and this Amendment.

With respect to any Plan, the Company shall use its commercially reasonable efforts to include Rothschild & Co and the other Exculpated Parties in the customary release from liability of professionals in the Plan, subject to the customary carveouts applicable to the other professionals thereunder, including gross negligence, willful misconduct and fraud.

E.     Fees of Rothschild & Co.  In addition to the fees set forth in the Letter Agreement (which shall continue to apply during a Bankruptcy Case), the Company, and its successors, if any, agree to pay Rothschild & Co (via wire transfer or other mutually acceptable means) the following additional fees in cash:

1.     Commencing upon the commencement of a Bankruptcy Case, whether or not a Transaction is proposed or consummated, an advisory fee (the "Monthly Fee") of $200,000 per month. The initial Monthly Fee shall be pro-rated based on the date of commencement of a Bankruptcy Case. The initial Monthly Fee shall be payable by the Company upon the commencement of a Bankruptcy Case, and thereafter the Monthly Fee shall be payable by the

Company in advance on the first day of each month. Rothschild & Co shall credit against the Minority M&A Transaction Fee or Control M&A Transaction Fee, as appropriate (such credit to be applied only once and without duplication), 50% of the Monthly Fees paid after the Company's payment of the third Monthly Fee and 100% of the Monthly Fees paid after the Company's payment of the sixth Monthly Fee (in each case, the "Monthly Fee Credit"); provided that the sum of the Monthly Fee Credit shall not exceed the Minority M&A Transaction Fee or Control M&A Transaction Fee, as appropriate.

F. Bankruptcy Case Expenses. Notwithstanding Paragraph 3 of the Letter Agreement, if a Bankruptcy Case is commenced, consistent with and subject to any applicable order of the Bankruptcy Court, the Company shall promptly reimburse Rothschild & Co for all of its reasonable expenses incurred in connection with performing services for the Company with respect to a Bankruptcy Case upon presentation of an invoice or other similar documentation with reasonable detail. If a Bankruptcy Case is commenced, it is understood that Rothschild & Co's reimbursable counsel fees may include, without limitation, fees incurred in representing Rothschild & Co's interests during the pendency and following the conclusion of any Bankruptcy Case, including, without limitation, counsel fees incurred in connection with Rothschild & Co's retention and payment hereunder. Nothing contained in this Section F. shall limit any provision of the Indemnification Agreement.

G.     All Agreements. The Letter Agreement as amended by this Amendment contains all of the agreements of the Parties with respect to the matters contained herein. Nothing in this Amendment shall be deemed to waive or modify any of the provisions of the Letter Agreement, except as expressly stated herein. Without limitation of the foregoing, the Indemnification Agreement shall remain in full force and effect and shall be deemed to cover, without limitation, the additional services, and matters pertaining to such services, set forth in this Amendment.

H.     No Other Modifications. Except as hereby amended, the Letter Agreement shall remain unmodified and, as hereby amended, is ratified and reaffirmed.

I.     Further Assurances. The Parties agree (i) to execute and deliver to each other such other documents, and (ii) to do such other acts and things, as the other Party may at any time reasonably request, for the purpose of carrying out the intent of this Amendment.

J.     Headings. The headings in this Amendment are for reference only and shall not affect the interpretation of this Amendment.

K.     Counterparts. This Amendment may be executed in multiple counterparts with detachable signature pages, each of which will be deemed an original, but which taken together shall form a single agreement. A copy of this Amendment or of a signature thereto shall have the same force and effect as the original. An electronic signature of this Amendment and/or an electronic transmission of a signature shall be binding on each Party whose signature appears thereon.

L.     Electronic Signatures. The Parties may execute this Amendment electronically and further agree that any such execution by means of an electronically-produced signature shall

4

have the same legal validity and enforceability as a manually executed signature to the fullest extent permitted by applicable law, including the Federal Electronic Signatures in Global and National Commerce Act, or any similar applicable federal or state law, rule, or regulation, as the same may be in effect from time to time, and the Parties hereby waive any objection to the contrary.

      M.    <u>Choice of Law and Venue.</u> The choice of law and venue provisions set forth in Paragraph 10 of the Letter Agreement shall apply to this Amendment.

5

Each of the Parties has executed this Amendment to Letter Agreement to be effective as of August 9, 2022.

**Rothschild & Co US Inc.**

By:

Name: Charles Delo

Title: Managing Director

Date: August 10, 2022

**Vital Pharmaceuticals, Inc.**

By:
John H Owoc (Aug 10, 2022 16:04 EDT)

Name: John H. Owoc

Title: CEO

Date: Aug 10, 2022