# **JOINT EXHIBIT 19**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:

VITAL PHARMACEUTICALS, INC., *et al.*,[1]

Debtors.
_____/

Chapter 11 Cases

Case No.: 22-17842-PDR

(Jointly Administered)

**SECOND SUPPLEMENTAL DECLARATION OF MARK MARGULIES IN SUPPORT OF DEBTORS' SUPPLEMENTAL APPLICATION FOR APPROVAL TO EMPLOY GRANT THORNTON LLP TO PROVIDE TAX EXAMINATION ASSISTANCE, EFFECTIVE MARCH 6, 2023, AND EXPAND THE SCOPE OF THE TRANSACTION ADVISORY SERVICES TO THE DEBTORS, EFFECTIVE APRIL 11, 2023**

I, Mark Margulies, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct to the best of my knowledge, information and belief:

1.  I am the Managing Partner of the South Florida offices of Grant Thornton LLP ("Grant Thornton"). Grant Thornton is a nationally recognized tax, audit, and financial advisory firm with particular experience in providing audit services to large and mid-size public and private companies. Grant Thornton maintains approximately 50 offices nationwide in Arizona, California, Colorado, Connecticut, Florida, Georgia, Illinois, Kansas, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Texas, Utah, Virginia, Washington, D.C., Wisconsin, and internationally. I am based in Grant Thornton's Fort Lauderdale office located at 1301 International Parkway, Suite 300, Ft. Lauderdale, FL 33323.

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

12115388-2

2. I am authorized to and hereby submit this declaration (the "Declaration") on behalf of Grant Thornton, pursuant to sections §§ 105, 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in further support of the *Debtors' Supplemental Application for Approval to Employ Grant Thornton LLP to Provide Tax Examination Assistance, Effective March 6, 2023, and Expand the Scope of the Transaction Advisory Services to the Debtors, Effective April 11, 2023* (the "Supplemental Employment Application") [ECF No. 1188] filed by the Debtors.[2]

3. Except as otherwise noted, I have personal knowledge of the matters set forth herein, and, if called as a witness, I would testify competently thereto.

4. This Declaration further supplements my three (3) prior declarations (collectively, the "Prior Margulies Declarations") submitted as evidence in support of Grant Thornton's employment in these bankruptcy cases: (i) my initial declaration that was filed on January 13, 2023 and attached to the *Debtors' Expedited Application for Approval of the Employment of Grant Thornton LLP, as Financial Advisors to the Debtors, Effective as of December 17, 2022* (the "Initial Employment Application") [ECF No. 643]; (ii) my amended declaration in support of the Initial Employment Application ("Amended Margulies Declaration") [ECF No. 654]; and (iii) my supplemental declaration in support of the Supplemental Employment Application, a copy of which was filed with the Court on April 18, 2023 as an attachment to the Supplemental Employment Application [ECF No. 1188].

5. These Prior Margulies Declarations set forth the supporting facts and disclosures establishing that Grant Thornton does not hold or represent an interest adverse to the estates and

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Supplemental Employment Application.

12115388-2

is otherwise a "disinterested person" under 11 U.S.C. § 327. Each of these Prior Margulies Declarations also discloses Grant Thornton's client relationship with Mr. Owoc.

6. Grant Thornton was first retained by the Debtor, Vital Pharmaceuticals, Inc. ("VPX"), prepetition to provide tax compliance services, which consists primarily of preparing the company's state, federal and international tax returns, for the 2020 tax year cycle. Because VPX is taxed as an S corporation, Grant Thornton also was retained by John Owoc, the sole shareholder and then-Chief Executive Officer of VPX, to assist Mr. Owoc in preparing his own personal tax returns for the 2020 tax year cycle.

7. Grant Thornton has continued to provide tax compliance services to both VPX and Mr. Owoc both pre- and postpetition for the 2021 and 2022 tax year cycles.

8. S corporations, such as VPX, are corporations that elect to pass corporate income, losses, deductions, and credits through to their shareholders for federal tax purposes. Shareholders of S corporations report the flow-through of income and losses on their personal tax returns and are assessed tax at their individual income tax rates. This allows S corporations to avoid double taxation on the corporate income. The S corporations are responsible for tax on certain built-in gains and passive income at the entity level.

9. Because VPX is an S corporation and treated as a pass-thru entity for tax purposes to Mr. Owoc, if the tax reporting or tax treatment performed by Grant Thornton is beneficial to VPX, it also, by virtue of the pass-through treatment, is beneficial to Mr. Owoc. Likewise, if the tax reporting or tax treatment is negative to Mr. Owoc, it also is negative to VPX. In other words, their interests are aligned and there is no conflict of interest.

10. In my experience, it is customary for a public accounting firm, such as Grant Thornton, to undertake tax advisory services and prepare tax returns for both the company and the principal shareholders when the company is a pass-through entity, such as VPX.

12115388-2

11. By comparison, under applicable law, a public accounting firm performing tax compliance services to a public company is prohibited from preparing the tax returns for the public company's chief executive officer. However, there are no such restrictions placed on accounting firms for privately held companies, such as VPX, and accounting firms routinely undertake preparation of both the shareholders' and the companies tax returns where the company has elected pass through tax treatment.

12. The Debtors, Quash Seltzer, LLC and JHO Real Estate Investment, LLC, are wholly owned by Mr. Owoc and are both "disregarded" entities for federal income tax purposes, meaning that any taxes owed by such entities are reported under the owner's income tax return. Like the S corporation pass through structure, such characterization and the applicable tax treatment is a function of how Mr. Owoc set up the business.

13. Moreover, Mr. Owoc's use of Grant Thornton's tax compliance services to assist in the preparation of Mr. Owoc's tax returns is predicated on his ownership interest in VPX, not on his position as CEO or former CEO of the Debtors. As such, no facts have changed or issues arisen from the time that Grant Thornton was retained by the Debtors per the Initial Employment Application (as approved and signed by Mr. Owoc) and now that would give rise to a potential, much less actual, conflict of interest with respect to Grant Thornton's services on behalf of Mr. Owoc and the Debtors.

14. Additionally, Mr. Owoc's personal tax records and information are confidential and are not made available to the Debtors.

15. Mr. Owoc and the Debtors are a very small percentage of Grant Thornton's business, and thus, this is a relatively modest engagement that in no way adversely affects Grant Thornton's ability to perform its duties.

16. Neither Mr. Owoc nor VPX are substantial clients of Grant Thornton by virtue of either time expended, or fees incurred in connection with the representations. The relationship with each individually, and also on a combined basis, represents less than 1% of Grant Thornton's annual receivables.

17. Thus, in my opinion, Grant Thornton's interest in maintaining its client relationship with Mr. Owoc will not impair the firm's ability to act impartially with respect to work to be performed for VPX and vice versa, and will not require Grant Thornton to compromise the representation of the other.

18. In addition to the tax compliance work and audit work for which Grant Thornton has been, or seeks to be, engaged by VPX (where both the Debtors' and Mr. Owoc's interests are aligned), Grant Thornton also was retained pursuant to the Initial Employment Application to perform transaction advisory services with respect to the pending sale transaction, the scope of which services Grant Thornton seeks to expand pursuant to the Supplemental Employment Application.

19. It is my understanding that there is no conflict of interest with respect to the transaction advisory services that Grant Thornton provides the estates and the work performed for Mr. Owoc. Not only are the services provided to both parties wholly unrelated, but it is my understanding that the sales transaction itself has been fully vetted and agreed to as part of the debtor in possession financing transaction, with an agreed to path for restructuring and milestones with respect thereto – all of which was previously negotiated and approved by Mr. Owoc.

20. Thus, the work being performed by Grant Thornton with respect to that sales transaction is providing support to facilitate the already agreed to restructuring pathway, and as such does not present a potential or actual conflict of interest with respect to any services being provided to Mr. Owoc by Grant Thornton.

21. Grant Thornton has no control over a potential sales price accepted by the Debtors or approved by the bankruptcy court in connection with that sales transaction.

22. In the event that a conflict of interest does arise with respect to the work being performed by Grant Thornton for the Debtors and Mr. Owoc, Grant Thornton has standard procedures for an ethical wall to prevent any actual conflict of interests. These procedures include, without limitation:

   A. Grant Thornton will separate the engagement teams to create ethical walls and protect the confidentiality of information. Although the separate engagement teams will not communicate with each other directly (except as noted herein), Grant Thornton will establish a communication channel between the engagement teams using its national office or professional standards personnel to address any issues that arise during the delivery of the professional services.

   B. In certain limited circumstances, the separate engagement teams may need to directly communicate with each other. Such circumstances will be limited to those situations when Grant Thornton determines that professional standards necessitate the two engagement teams to be in direct contact with each other.

   C. In the event of a disagreement between the parties, Grant Thornton will not assist or advise either party. Any such disagreement must be resolved pursuant to the provisions of any agreement between the parties without the assistance of Grant Thornton or by orders of this Court. Notwithstanding the foregoing, if requested and upon execution of any required release, Grant Thornton may discuss and explain its analysis and work product with either party.

   D. Grant Thornton will not permit access to any of the parties' engagement documentation by any staff member on the other party's engagement team without receiving specific consent from the applicable parties.

   E. Unless compelled to do so by law, court order, or subpoena and otherwise consistent with its confidentiality obligations, Grant Thornton will not allow third party access to any of its client's information in its possession without the client's specific consent. In addition, access to Grant Thornton workpapers shall only be provided subject to securing a standard Grant Thornton work paper access letter.

   F. Grant Thornton will establish security procedures related to the communication of any of the work product or deliverables provided to either party or its counsel. Further, all documentation relating to the proposed

services will be stored in a secure Grant Thornton site that will be password protected with access limited only to the applicable party's engagement team members.

23. Finally, in my opinion, requiring Grant Thornton to withdraw from its engagement with the Debtors would be unduly disruptive and result in unnecessary delay and administrative expenses attendant to bringing in a new accounting firm to familiarize itself with the Debtors' business operations, their tax financial reporting and the sales transaction. Removal of Grant Thornton to provide professional services to the Debtors at this stage does not benefit, and potentially harms, the bankruptcy estates and their creditors.

24. Grant Thornton reserves the right to supplement this Declaration in the event that Grant Thornton discovers any facts bearing on matters described in this Declaration regarding Grant Thornton's employment by the Debtors.

25. This concludes my Declaration.

### 28 U.S.C. § 1746 Declaration

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 2, 2023.

*/s/ Mark A. Margulies*
_____
MARK MARGULIES

12115388-2