# JOINT EXHIBIT 27

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

In re:

VITAL PHARMACEUTICALS, INC., *et al.*,

Debtors.

Case No. 22-17842-PDR

Chapter 11
(Jointly Administered)

**REPLY TO (i) DEBTORS' OBJECTION TO JOHN H. OWOC'S MOTION TO TERMINATE VITAL PHARMACEUTICALS, INC.'S S-CORP STATUS AND (ii) OFFICIAL COMMITTEE OF UNSECURED CREDITORS' (I) OBJECTION TO JOHN H. OWOC'S MOTION FOR CONFIRMATION THAT THE AUTOMATIC STAY DOES NOT APPLY TO TERMINATION OF DEBTORS' SUBCHAPTER S CORPORATION STATUS OR, ALTERNATIVELY, FOR RELIEF FROM STAY AND (II) JOINDER TO THE DEBTORS' OBJECTION THERETO**

John H. Owoc, a/k/a Jack Owoc ("Mr. Owoc"), a creditor and equity holder in the above-captioned chapter 11 cases (the "Chapter 11 Cases") of the above-referenced debtors (the "Debtors"), hereby submits this reply (the "Reply") in opposition to (i) the *Debtor's Objection to John H. Owoc's Motion to Terminate Vital Pharmaceuticals, Inc.'s S-Corp Status* [ECF No. 1717] (the "Objection" or "Obj.") and (ii) the *Official Committee of Unsecured Creditors' (I) Objection to John H. Owoc's Motion for Confirmation that the Automatic Stay Does Not Apply to Termination of Debtors' Subchapter S Corporation Status or, Alternatively, for Relief from Stay and (II) Joinder to the Debtors' Objections Thereto* [ECF No. 1718] (the "UCC Objection" or "UCC Obj."),[1] and in further support of the *Emergency Motion of John H. Owoc for Confirmation*

---

[1] All arguments raised herein as to the Objection are also raised and asserted with respect to the UCC Objection, with all rights reserved. Mr. Owoc further reserves the right to address any issues in response to the Objection or UCC Objection at the hearing on the Motion.

*that the Automatic Stay Does Not Apply to Termination of Debtors' Subchapter S Corporation Status or, Alternatively, for Relief from Stay* [ECF No. 1627] (the "Motion"),[2] and respectfully states as follows:

## INTRODUCTION

1.      At the outset, the primary and threshold issue here is whether a corporation's status as an S-Corp is property under the Bankruptcy Code.  If the Court determines, consistent with *Majestic* and its progeny, that it is not, then the automatic stay is not implicated, and Mr. Owoc would be free to proceed with his proposed revocation of VPX's status as an S-Corp for tax purposes.  Rather than address that issue head-on, by their Objection, the Debtors bury it, focusing instead on baseless arguments related to purported delay and certain ministerial acts associated with the proposed revocation that are, *at best*, tangential to the S-Corp as property issue.  This is telling.  Indeed, throughout the Objection, the Debtors rely on very little authority in support of their positions, but rather, argue that because the proposed revocation is not favored by the Debtors and their constituents, it must be denied in the interest of "maximizing distributions to creditors." Of course, bankruptcy does not create property rights out of whole cloth or provide such blanket powers to Debtors and here, provides *no* basis to deny Mr. Owoc his well-established statutory rights as the sole shareholder of VPX to determine its tax status.  Similarly, as discussed, below, the Committee repeats the themes espoused by the Debtors, contending, in contravention of the overwhelming current of case law, that the entity that benefits from the transaction, here the Debtors, should pay no taxes on the proceeds generated from such sale.

2.      Importantly, over the last decade, every court considering the S-Corp as property issue, including the only Circuit Court of Appeals considering the issue to date, have uniformly

---

[2] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Motion.

and definitively held that such S-Corp status is *not* "property" subject to the automatic stay or avoidance powers under the Bankruptcy Code. *See Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*, 716 F.3d 736, 757 (3d Cir. 2013) ("*Majestic*") (holding that a corporation's S-Corp status (and related Q-Sub status of its subsidiary) is not "property" nor "property of the estate" subject to the automatic stay or avoidance powers under the Bankruptcy Code); *Arrowsmith v. United States (In re Health Diagnostic Lab., Inc.)*, 578 B.R. 552, 570 (Bankr. E.D. Va. 2017) ("*Health Diagnostic*") (holding that S-Corp status is not property under federal tax law); *Harker v. Cummings (In re GYPC, Inc.)*, 2020 Bankr. LEXIS 2384, *21-23 (Bankr. S.D. Ohio Aug. 4, 2020) ("*GYPC*") (holding that S-Corp status is not a property interest that may be avoided as a preferential or fraudulent transfer).

3.      Notwithstanding such current and well-reasoned authority, however, the Debtors (and Committee) rely extensively on an older line of cases (*Trans-Lines West* and its progeny), holding to the contrary, which cases were decided nearly 20 years ago (or more) and that were each specifically considered – *and rejected* – by *Majestic* and its progeny.  For the reasons described in the Motion and further herein, reliance on these cases is misplaced and the Court, consistent with the well-reasoned decision in *Majestic*, should hold that VPX's status as an S-Corp for tax purposes is not a property right or interest of the estate under the Bankruptcy Code and therefore, Mr. Owoc's proposed revocation of that status does not implicate the automatic stay.

4.      At issue here is Mr. Owoc's right as the sole shareholder of VPX to revoke VPX's S-Corp status, which would have the effect of causing VPX to bear responsibility for corporate taxes resulting from its operations, including the Sale of its assets, all of which inure to the benefit of the Debtors (and their constituents), rather than having those tax liabilities "pass through" to Mr. Owoc as shareholder.  Importantly, as the Third Circuit held in *Majestic*: "the shareholders of

3

an S-Corp can terminate its pass-through status at will, regardless of how long it has been an S-Corp and whatever its pre-bankruptcy operating history has been.  <u>The tax status of the entity is entirely contingent on the will of the shareholders</u>." 716 F.3d at 755 (emphasis added).[3]

5.      By their Objection, the Debtors (and Committee) seek to create property rights where none exist, hijack control of VPX's S-Corp status *and* strip Mr. Owoc's rights as the sole shareholder of VPX in violation of federal tax law.  Indeed, if the Debtors are allowed to block the proposed revocation, Mr. Owoc will not only lose his statutory right to terminate VPX's S-Corp election (I.R.C. § 1362(d)), but also his right to sell his shares in VPX to: (i) a corporation, partnership or other entity (I.R.C. § 1361(b)(1)(B)); (ii) a non-resident alien (I.R.C. 1361(b)(1)(C)); or (iii) more than 100 shareholders (I.R.C. 1361(b)(1)(A)), each of which would have the same effect of revoking VPX's S-Corp status, but according to the Debtors, would be barred by the automatic stay.

6.      Moreover, and importantly, what the Debtors are seeking would flip our system of federal taxation on its head. There is no reordering of priorities.  Rather, it is a fundamental notion of that system that the burden of paying income taxes should be borne by those who derive the benefit of the income.  I.R.C. § 1; *Majestic*, 716 F. 3d at 757.  In the typical case where an S-Corp receives income, the shareholder has the ability to extract the income from the corporation in order to pay the taxes due on that income.  This is not true in the bankruptcy context, however.  Here, if the Debtors are permitted to avoid the termination of VPX's S-Corp status, any income realized

---

[3] Even in *Trans-Lines West*, the bankruptcy court conceded that the S-election was "shareholder driven."  *Trans-Lines West*, 203 B.R. at 660; *see also Kean v. Commissioner of Internal Revenue*, 469 F.2d 1183, 1187 (9th Cir. 1972) ("The desirability of a Subchapter S election depends upon the individual tax considerations of each shareholder.  The final determination of whether there is to be an election should be made by those who would suffer the tax consequences of it.")

from the Sale necessarily remains in the estate, while the resulting tax liability must be borne by Mr. Owoc without the benefit of such income.  As a result, the Debtors' creditors will receive a windfall because they are receiving the proceeds generated by the Sale but are spared from paying the taxes due on those very proceeds.  Indeed, even the authority relied on by the Debtors (and Committee) recognized this substantial inequity:

> The Trustee's successful challenge of the Debtor's revocation of its Subchapter S status in the present case *would have dire tax consequences to the non-consenting shareholder*.

7.     While it may be true that Mr. Owoc seeks to avoid a significant tax liability (the amount of which is disputed), the proposed revocation would merely ensure that any tax liability resulting from the Sale, or otherwise, would be paid out of the income received by the Debtors that generated that liability - - which is a manifestly equitable result.  Indeed, while the Debtors (and Committee) attempt to portray the revocation as an improper shifting of tax liability, on the contrary, the proposed revocation would ensure that the tax liability resulting from the Sale is borne by the entity benefitting from the proceeds upon which the liability was imposed – *a fundamental underpinning of our federal tax system*.

8.     For these reasons, described further below, the Court should follow *Majestic* and its progeny in holding that VPX's status as an S-Corp is not property of the estate and the automatic stay is not implicated here with respect to the proposed revocation.

9.     Alternatively, even if the automatic stay did apply to the termination of VPX's tax status, the substantial inequities Mr. Owoc would face without the termination provide sufficient cause to lift the stay for that purpose.  While the respective hardships on either side are disputed and will be addressed by experts at the hearing, it is undisputed that if the Sale closes with VPX as an S-Corp, Mr. Owoc faces substantial potential tax liabilities for revenue generated from the

Sale (for which he receives nothing), while the Debtors retain all proceeds tax free. And importantly, his well-established rights under federal tax law to control such tax status will effectively be stripped and handed to the Debtors. The Debtors do not, *and cannot*, explain how this is a fair and equitable result under either our federal tax or bankruptcy laws.

10.     The Debtors' further arguments are similarly baseless. *First*, the doctrine of laches is not applicable here. Mr. Owoc did not delay his request to revoke the S-Corp status and even if he did, it was excusable where the disappointing Sale results were entirely unexpected and not known until recently (and the so-called settlement with Monster, entered as part of the sale, creates additional tax exposure to Mr. Owoc). Nor did the Debtor suffer undue prejudice where Mr. Owoc's concerns over the tax status were known well before the Sale and the Debtors admitted nothing could have been done differently had the revocation happened much earlier. *Second*, this Court should not allow the Debtors to hold Mr. Owoc "tax hostage" by refusing to perform routine tax filings to effectuate Mr. Owoc's decision to revoke the tax status. The Court has the power to direct such actions be taken should it decide, consistent with *Majestic* and its progeny, that Mr. Owoc has the unfettered right under federal tax law to make such an election.[4]

11.     For all of these reasons detailed in Motion and further herein, the Court should grant the Motion, determining that the stay does not apply or, alternatively, that the stay should be lifted for cause so that Mr. Owoc may proceed with the proposed revocation.

---

[4] Even if such routine tax filings were withheld, Mr. Owoc can effectively revoke the subchapter S-Corp status through any number of additional methods, as provided for under the I.R.C. *See* ¶ 20, *infra*.

## ARGUMENT

### A. Debtors' Reliance on *Trans-Lines West* and Its Progeny Is Entirely Misplaced

12.     The Debtors argue that the "[t]he weight of the caselaw … concludes that a corporate debtor's special tax attributes – including S-Corp status – are a property interest within section 541." Obj. ¶ 44. This statement is demonstrably false.[5] The Debtors rely solely on *Trans-Lines West* and its progeny – *four* cases in total – including one whose holding was *dicta*, and the most recent, *Walterman*, that was decided over 17 years ago. *Id.*[6] Meanwhile, as described above, all *three* courts addressing the S-Corp as property issue during the last decade, including the only Circuit Court of Appeals to have addressed the issue, the Third Circuit in *Majestic*, have held the opposite – *and soundly rejected* the reasoning in *Trans-Lines West* and its progeny. Indeed, in addition to being rejected in *Majestic, Health Diagnostics and GYPC*, the *Trans-Lines West* cases have been the object of considerable criticism. *See, e.g.,* James S. Eustice & Joel D. Kuntz, *Federal Income Taxation of S Corporations* ¶ 5.08[1] (4th ed. 2001) ("[the *Trans Lines West*] cases seem like little more than hard bankruptcy cases making bad tax law.").

13.     As detailed in the Motion and further herein, *Majestic* and its progeny correctly determined that S-Corp status is neither "property" nor "property of the estate" under the

---

[5] And in any case, is irrelevant where the Debtors concede there is no binding Eleventh Circuit authority addressing the issue.

[6] *Trans-Lines West, Inc.*, 203 B.R. 653 (Bankr. E.D. Tenn. 1996) ("*Trans-Lines West*"); *Parker v. Saunders (In re Bakersfield Westar, Inc.)*, 226 B.R. 227 (B.A.P. 9th Cir. 1998); *Halverson v. Funaro (In re Funaro)*, 263 B.R. 892, 898 (B.A.P. 8th Cir. 2001 (in a case that did consider the S-Corp as property issues, citing the holding from *In re Bakersfield, dicta*); *Walterman Implement v. Walterman*, Adv. No. 06-9067, 2006 LEXIS 921 (Bankr. N.D. Iowa May 22, 2006).

Bankruptcy Code and the Debtors' reliance on the *Trans-Lines West* line of cases is without merit for several reasons.[7]

### 1. S-Corp Status Is Controlled by a Corporation's Shareholders

14.     Importantly, shareholders have the ability to control the tax status of their corporation. *Health Diagnostic*, 578 B.R. at 566. The S-Corp election requires unanimous shareholder consent (I.R.C. § 1362(a)(2)) and an S-Corp election may only be terminated if shareholders holding more than one-half of the stock of the corporation consent to the revocation. I.R.C § 1362(d). As the court in *GYPC* found, "[a]lthough property of the estate is a broad term, tax law provides that the shareholders hold the unfettered right to maintain or terminate an S corporation's status." *GYPC*, 2020 Bankr. LEXIS at *20 (citing *Majestic*, 716 F.3d at 755 ("The tax status of the entity is entirely contingent on the will of the shareholders.")).

15.     Indeed, even the court in *Trans-Lines West* acknowledged that S-Corp status is controlled by a corporation's shareholders:

> A corporation's election and revocation of the S corporation status under I.R.C. § 1362 is shareholder driven. Although the corporation is the sole entity that makes the election or revocation under I.R.C. 1362, both acts are contingent upon various degrees of consent by the corporation's shareholders.

203 B.R. at 660. Further, while the corporation must file the necessary paperwork with the IRS, the mere filing of the tax form does not confer control over the S-Corp status. *See Health*

---

[7] Debtors' argument that *Majestic* "was considering a different issue" (Obj. ¶ 40) is a red herring that must be rejected out of hand. While the debtor in that case was a "Q-Sub" (a subsidiary of an S-Corp with identical tax attributes), that does not make the Third Circuit's holdings any less applicable to an S-Corp like VPX. *See* Motion n. 1. Indeed, the Third Circuit specifically considered "**S-Corp Status** as 'Property'" – the definitive and threshold issue here. 716 F.3d at 752 (emphasis added). There is absolutely no basis for Debtors' argument that the holding in *Majestic* would somehow be different if the debtor was an S-Corp rather than a Q-Sub. Tellingly, the Debtors cite to *no* portion of *Majestic* that would support this argument but seek to distract from the holding in *Majestic* that is devastating to the Debtors' position.

*Diagnostic*, 578 B.R. at 567 ("It is unrealistic to suggest that a corporation could ever revolt against its shareholders by refusing to file the revocation form."). Moreover, as noted above, revocation of the subchapter S-Corp status can be effectuated without a tax filing (including through the transfer of one or more shares to a partnership, corporation, or foreign entity). *See* ¶ 20, *infra*.

16.     Accordingly, shareholders alone control the decision to revoke a corporation's S-Corp status.

### 2.     **The Fact that Something Confers Value to the Estate Does Not Create a Property Right In It**

17.     Notably, the Debtors do not dispute the control shareholders wield over a corporation's S-Corp status (Obj. ¶ 50), but rather, engage in a game of misdirection that the "value" or "benefits" a debtor may receive from something must then implicate a property interest. Specifically, the Debtors argue that VPX's S-Corp status includes "valuable tax attributes *that benefit VPX*." Obj. ¶ 4 (emphasis in original). While it is true that with S-Corp status "the corporate debtor has the right to pass its taxable income and losses to its shareholder," as Debtors argue (Obj. ¶ 45), that fact alone does not create a property right. *Majestic*, 716 F.3d at 757; *GYPC*, 2020 Bankr. LEXIS 2384 at *21. As detailed above, the estate lacks the ability to control or dispose of its S-Corp status – the hallmarks of "property" under any common understanding of that term. *See id.*

18.     For example, a beneficiary's interest in a life insurance policy may be valuable, but that alone does not make it property of the beneficiary. *Health Diagnostic*, 578 B.R. at 565 (*citing Wornick v. Gaffney*, 544 F.3d 486, 490 (2d Cir. 2008) (holding that a beneficiary of a life insurance policy "has no legal or equitable interest in the policy that could be made part of the property of the beneficiary's bankruptcy estate.")). Similarly, a company in bankruptcy may use a liquor license, but such valuable interest of the debtor does not prohibit the licensing agency from

granting or denying renewal of the license in its discretion. *In re Nejberger*, 934 F.2d 1300, 1303 (3d Cir. 1991). Further, a debtor airline may use and enjoy landing slots at an airport, but the bankruptcy filing does not prevent the FAA from awarding the slot to another airline. *See In re Braniff Airways*, 700 F.2d 935, 942 (5th Cir. 1983); *see also*, *In re Harrell*, 73 F.3d 218, 220 (9th Cir. 1996) (holding that a debtor's season ticket renewal rights were not property of the estate because the Phoenix Suns were not obligated to offer an opportunity to renew.).[8]

19.     Thus, even if VPX may obtain value from its S-Corp status, that value does not morph into a property interest. And similarly, that value cannot stymie the wishes of its shareholder to change such status as allowed under the I.R.C. To hold otherwise would improperly create new property rights in bankruptcy that did not previously exist, a result directly at odds with Bankruptcy Code section 541 and well-established authority in this Circuit. 11 U.S.C. § 541(d); *Barrett v. Berries (In re Berries)*, 458 B.R. 601, 610 (Bankr. S.D. Fla. 2011) ("While broad in scope, the definition of 'property of the estate' as including all legal and equitable property interests that the debtor possessed at the commencement of the case, is nonetheless subject to temporal limitation.").[9]

---

[8] Debtors argue (without citing any authority) that VPX's S-Corp status is akin to NOLs which have been found to be a property interest of the estate. Obj. ¶ 50. However, as detailed in the Motion (¶ 17), *Majestic* rejected the reasoning relied on in *Trans-Lines West* and its progeny that a corporation's tax status can be equated to an NOL and deemed an interest in property. 716 F.3d at 755-57.

[9] While Debtors argue that property interests in bankruptcy are sometimes contingent (Obj. 50), the estate cannot hold a greater interest than what existed prior to the bankruptcy. *Id.* And as described above, mere value or benefit does not create a property right. ¶¶ 17-18, *supra*. Indeed, the cases relied on by Debtors are easily distinguishable. In *In re Carlton*, 309 B.R. 67, 71 (Bankr. S.D. Fla. 2004), the interest at issue was a stock option that while contingent, was guaranteed to the extent the contingency was met (*i.e.*, as long as the employee remained in the company's employ on the exercise date of its stock option.). Here, by contrast, and importantly, because S-Corp status can be revoked at will by the shareholder, its benefits are only contingent to the extent that status is maintained – something that is entirely out of the control of the corporation. Meanwhile, in *In re Knight*, 164 B.R. 372, 375 (Bankr. S.D. Fla 1994), a debtor's interest in a trust

20.     Without citing to any authority (or disputing the well-established authority above), the Debtors argue that their rights would not be expanded, but rather, "Mr. Owoc and VPX still [*sic*] the same rights with respect to VPX's S-Corp status." Obj. 51. This position is without merit. Not only would such a holding create property rights where outside of bankruptcy VPX has no such rights or control over its S-Corp status, it would strip Mr. Owoc's rights as shareholder in violation of the I.R.C. – leaving no one with the same rights with respect to the S-Corp status that existed prior to the filing. Indeed, if the Debtors are allowed to block the revocation, Mr. Owoc will not only lose his statutory right to terminate VPX's S-Corp election (I.R.C. § 1362(d)), but also his right to sell his shares in VPX to: (i) a corporation, partnership or other entity (I.R.C. § 1361(b)(1)(B)); (ii) a non-resident alien (I.R.C. 1361(b)(1)(C)); or (iii) more than 100 shareholders (I.R.C. 1361(b)(1)(A)), each of which would have the same effect of revoking VPX's S-Corp status, but according to the Debtors, would be barred by the automatic stay. Obj. 51.

21.     Placing such restrictions on the rights of Mr. Owoc, a non-debtor, is not only inequitable, but unsupported by either the I.R.C. or Bankruptcy Code. As the Court in *GYPC* held:

> Outside of bankruptcy, it would never be understood that a corporation could force a Subchapter S corporation to convert to a C corporation. The rights to be a S Corporation are strictly defined and inure to the benefit of shareholders that are eligible for such corporate status. Bankruptcy cannot expand property rights and turn over control over Subchapter S corporation status to a trustee in derogation of federal tax law. *Health Diagnostic*, 578 B.R. at 570 ("The Liquidating Trustee cannot use the fraudulent transfer provisions of the Bankruptcy Code to maneuver around the strict requirements of the Tax Code."). For these reasons, the allegation that the conversion of GYPC from a Subchapter S corporation to a C corporation is [a] preferential or fraudulent transfer must be dismissed.

2020 Bankr. LEXIS 2384 at *23.

---

was deemed property of the estate where the trust could only be amended with the consent of the debtor. As detailed herein, the Debtors have no similar control over their tax status.

11

3. **The Relief Sought By Debtors Would Subvert Our Federal Tax System and Produce Substantial Inequities for Mr. Owoc**

22.     Another fundamental flaw of *Trans-Lines West* and its progeny is the substantial inequities that would result from finding S-Corp status property of an estate.  As described above, the potential tax liability under the S-Corp structure presents unique and substantial inequities to Mr. Owoc in the bankruptcy context.  In particular, tax burdens are typically borne and paid by those who derive some benefit from the taxed income.  In the typical case where an S-Corp receives income, the shareholder has the ability to extract the income from the corporation in order to pay the taxes due on that income.  However, that changes in bankruptcy.  As the Third Circuit found: "…any income generated during or as part of the reorganization process (*such as the sale of assets*) is likely to remain in the corporation, and ultimately in the hands of creditors, but the resulting tax liability must be borne by the S-Corp shareholders." *Majestic*, 716 F.3d at 757 (emphasis added) ("*Majestic*").  In other words, if VPX retains its S-Corp status at the time of the Sale, Mr. Owoc will potentially face massive personal tax exposure without receiving any income or other benefit from the Sale, which, outside of bankruptcy, would otherwise flow through to him and be available to pay such tax burden.

23.     Such a result would disrupt fundamental notions of our federal tax system, while stripping Mr. Owoc of his well-established rights under federal tax law.  Under no circumstance – regardless of any alleged resulting hardship to the Debtors – is this fair or equitable, and the Debtors do not assert otherwise.

24.     For all of these reasons, the holding in *Majestic* and its progeny is the only reasoned and equitable result here.  Holding otherwise would improperly expand VPX's property rights in bankruptcy (and open the door to a host of improper, overreaching actions by Debtors), while stripping Mr. Owoc of his, both in derogation of federal tax and bankruptcy law.  Accordingly, the

Motion should be granted consistent with *Majestic* and its progeny holding that VPX's status as an S-Corp is not property of the estate and the automatic stay is not implicated here with respect to the proposed revocation.

**B. Debtors' Effort to Characterize S-Corp Status as a "Possessory" Interest Recognized by Bankruptcy Law Fails**

25.     As described above, VPX has no "right" to remain an S-Corp against the will of its shareholder, Mr. Owoc.  Notwithstanding, Debtors argue that even if the Court finds the S-Corp status is property of Mr. Owoc and not the Debtors, it would still be "property" in the Debtors' possession and subject to the automatic stay.  Obj. 53-54.  Such argument fails for at least two reasons.  *First*, *Majestic* correctly holds that an S-Corp tax classification is not "property" under the Bankruptcy Code. 716 F.3d at 752-59.  Such holding was not limited to whether the tax status is "property of the estate" as the Third Circuit made that finding separately.  *Id.* at 759-62. Accordingly, Debtors' argument that the tax status would still be "property" even if it is not "property of the estate" is simply not true and as provided under *Majestic*, there is no argument that the stay applies under Bankruptcy Code section 362(a)(3).

26.     *Second*, and in any case, a debtor's status as a tax-exempt organization under I.R.C. § 501(c)(3) has been held *not* to be property.  *See, e.g.*, *In re Heritage Village Church and Missionary Fellowship, Inc.*, 87 B.R. 401, 405 (D. S.C. 1988) ("The Court concludes a tax exemption is not property," and the IRS did not violate the automatic stay when it proposed to revoke the debtor's tax-exempt status after the petition was filed.); *In re Universal Life Church, Inc.*, 191 B.R. 433, 440 (E.D. Cal. 1995) ("Tax-exempt status is not a property right."). Accordingly, the debtors in those cases no longer qualified under the law to be tax-exempt organizations, just as VPX (upon Mr. Owoc's decision to revoke) no longer qualifies under the

law to be an S-Corp, and there is no "property" in VPX's possession that is subject to the automatic stay.

27.     The only two cases cited by Debtors support lifting the stay.  In particular, in *In re St. Clair*, 251 B.R. 660, 666-67 (D.N.J. 2000), the court held that there was *no* possessory interest under section 362(a)(3) where the debtor had no "good-faith, colorable claim to possession or control."  That case involved real property of the debtor that had been foreclosed on and the purchaser's right to possession was not in dispute.  *Id.*  Similar here, while tax status is not "property," in any case, as detailed herein, there is no "good-faith, colorable claim to possession or control" of the S-Corp status by the Debtors where that status is controlled solely by Mr. Owoc as shareholder.  Meanwhile, *In re McBride*, No. 11-03190, 2011 WL 3902991, *11-14 (Bankr. S.D. Ala. Sept. 6, 2011), the court determined the debtor had a legitimate argument that its vehicle lease was "property of the estate subject" and that "a security interest or a curable lease" existed sufficient to invoke protection of the automatic stay.  As described herein, no similar arguments exist with respect to the subject S-Corp status.

## C.  The Doctrine of Laches Is Not Applicable Here

28.     The doctrine of laches normally "'does not come into play until the period prescribed by the applicable statute of limitations has expired.'"  *Madura v. BAC Home Loans Servicing, LP*, 593 Fed. Appx. 834, 849 (11th Cir. 2014) (*quoting Briggs v. Estate of Geelhoed*, 543 So. 2d 332, 333 (Fla. 4th Dist. Ct. App. 1989)).  Here, there is no limitations period prescribed for revoking a corporation's S-Corp status under federal tax law or otherwise.  Rather, as detailed above, "[t]he tax status of the entity is entirely contingent on the will of the shareholders." *Majestic*, 716 F.3d at 755.  Notwithstanding, Mr. Owoc did not intentionally or inexcusably delay his decision to revoke, and that decision did not unduly prejudice the Debtors.

14

29.     Notwithstanding, even assuming the doctrine is properly considered here, which is disputed, the Debtors' so-called laches defense is inapplicable.  The Debtors argue that the Motion is precluded under the doctrine of laches due to Mr. Owoc's purported "delay" in seeking to revoke VPX's S-Corp status.  Obj. ¶ 21.  The doctrine of laches is essentially an equitable doctrine resting upon two elements: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.  *In re Fail,* No. 14-40812-JJR13, 2015 Bankr. LEXIS 2637, *31 (Bankr. N.D. Ala. 2015).  "The Eleventh Circuit has explained laches in the bankruptcy context as follows: The equitable doctrine of laches 'bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant.'  'To establish laches, a defendant must demonstrate (1) a delay in asserting a right or a claim, (2) that the delay was not excusable, and (3) that there was undue prejudice to the party against whom the claim is asserted.'"  *Id.* (*quoting AmBrit. Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1545 (11th Cir. 1986).  To establish prejudice requires more than a showing that allowing the objections to be sustained would harm another (such as the claimholders).  *Id.* at *32.  Rather, "'to say that an error is prejudicial means not that if the error is corrected someone will lose, which is almost always true, but that the error itself imposed a cost, as by misleading someone.'"  *Id.* (*quoting Matter of Stoecker*, 5 F.3d 1022, 1028 (7th Cir. 1993).

30.     While the doctrine should not even be considered here, none of these elements are satisfied.  With respect to the first two, there was no intentional delay here and even if there was, that delay was excusable.  As the Debtors concede, Mr. Owoc expressed concern with respect to his tax liability at least as early as April 2023.  Obj. ¶ 25.  At that time, however, Mr. Owoc rightfully believed that the Sale would yield better results and create more proceeds that would flow to him as equity and negate or lessen the tax implications.  Indeed, the Debtors' own

15

representative, Mr. DiDonato, confirmed that the expectations of the Sale were much greater until much more recent issues in the capital markets led to a much lower Sale price. *See, e.g.,* Dep. Tr. of John DiDonato at p. 63 (relevant excerpts attached hereto as **Exhibit 1**). This was unknown to Mr. Owoc until the Sale was presented at the end of June 2023. With respect to the third element, there was no undue prejudice to the Debtors who again, were aware of Mr. Owoc's concerns about tax status at least by April and contrary to Debtors' assertion here, could easily have taken that into account in structuring the Sale. Indeed, when asked, Mr. DiDonato admitted he did not know what the Debtors could have done differently if the proposed revocation was done on day one of these Chapter 11 Cases. *See, e.g.,* Ex. 1 p. 54-55. Further, given Mr. Owoc's prior disclosures, the Debtors – represented by sophisticated legal counsel – were not misled regarding his concerns about tax implications.

31.     Accordingly, laches is not even available here where the right to revoke the subchapter S-Corp status has been sought consistent with the requirements under the I.R.C. Moreover, none of the required elements for the extraordinary remedy of laches have been established.

### D. Even if the S-Corp Status Is Deemed Property of the Estate, Cause Exists to Lift the Automatic Stay to Effectuate the Revocation

32.     As described above and in the Motion, pursuant to *Majestic* and its progeny, the automatic stay is not implicated by the proposed revocation. Alternatively, however, even if the Court holds that S-Corp status is property subject to the stay, cause exists to lift the stay under Bankruptcy Code section 362(d). *See, e.g., In re Gulfstream Crane, LLC,* 2010 Bankr. LEXIS 5665, *4 (Bankr. S.D. Fla. Mar. 4, 2020) ("In determining whether 'cause' is present, a court must balance the potential hardship that will be incurred by a moving party if the automatic stay is not lifted, against the potential prejudice to the debtor and the debtor's estate.").

33.     Assuming the stay is applicable, which for the reasons provided above it is not, the Debtors' analysis under the applicable standard is disputed.[10] *First*, Debtors' position that their actions in this Chapter 11 Case "to maximize distributions to creditors" are "the very definition of good faith," is inapposite.  Obj. ¶ 60.  Maximizing distributions cannot be accomplished on the backs of non-debtors by creating new property rights out of whole cloth that are contrary to law, here the I.R.C.  As discussed above, efforts by a debtor in bankruptcy to usurp property rights that it doesn't own under the guise of "maximizing" recoveries, is patently improper, and contrary to long-established law.  *See, e.g., Health Diagnostic*, 578 B.R. at 565 (*citing Wornick v. Gaffney*, 544 F.3d 486, 490 (2d Cir. 2008)); *In re Nejberger*, 934 F.2d 1300, 1303 (3d Cir. 1991);  *In re Braniff Airways*, 700 F.2d 935, 942 (5th Cir. 1983); *see also*, *In re Harrell*, 73 F.3d 218, 220 (9th Cir. 1996)  (rejecting efforts to extend protection of property rights that did not belong to the debtor.).[11]

34.     *Second*, considering the "hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code" weighs heavily in favor of lifting the automatic stay to allow Mr. Owoc to proceed with the proposed revocation.  As detailed above (section A. 3., *supra*), if the S-Corp status is not revoked, Mr. Owoc will bear sole responsibility for the tax liability resulting from the Sale, while receiving no benefit from that Sale as he would outside of bankruptcy, where all of the proceeds are retained by the Debtors (for distribution to creditors).  In arguing otherwise, the Debtors' simply assert that the tax burden on VPX as a C-Corp would be

---

[10] Assuming applicable, which is disputed, there is no disagreement as to the standard applied in the Eleventh Circuit for evaluating whether cause exists to lift the automatic stay.  *See* Obj. ¶ 57.

[11] While it does not all bear repeating here, not long before the Chapter 11 filing, the Debtors were running a multi-billion company.  However, after Mr. Owoc was "terminated," the business results faltered, and the Sale was at best a "fire sale" at valuations significantly lower than expressions of interest prior to and earlier in the bankruptcy process.

greater than the tax burden on Mr. Owoc if VPX remains an S-Corp.  Obj. ¶ 65.  While the Debtors' tax figures are disputed, as will be addressed by experts at the hearing (and are pulled from third party information which are at best guestimates, subject to change), it is a self-serving and grossly over-simplified position.  *See* Expert Report of Adi Rappoport and the Supplement to Expert Report of Adi Rappoport (together, the "Rappoport Report"), attached hereto as **Exhibit 2**.  Even if the net tax burden on Mr. Owoc were less than the Debtors, the Debtors fail to explain (nor can they) why saddling Mr. Owoc with sole tax liability, without the benefit of any Sale proceeds, while at the same time sparing the estate from any liability whatsoever (a savings of $27.5 million per the Debtors), is a fair and equitable result under federal tax law.  *It is not*.  Indeed, even accepting the Debtors' numbers as true (which again, are disputed), the purported net gain to Mr. Owoc upon conversion to a C-Corp ($3.4 million in 2023 tax plus approximately $19 million of potential future tax savings) is less than the $27.5 million in purported tax liability the Debtors would avoid if VPX remains an S-Corp.  Obj. ¶ 65.  And again, Mr. Owoc would face that liability without the benefit of any of the proceeds of the Sale, which would remain with the Debtors.

35. In addition, not only is such a result highly inequitable, it cannot be said to promote the goals of the Bankruptcy Code where the automatic stay was not designed as a shield for debtors to use against liabilities properly imposed by federal tax law or as a mechanism to strip the rights of a non-debtor under non-bankruptcy law.  It is undisputed that Mr. Owoc has the unfettered right to determine the tax status of VPX; thwarting that right in order to "maximize distributions to creditors" is unlawful and cannot be countenanced by the Bankruptcy Code (or any other applicable law).

36. Further, Debtors' reliance on *Jackson v. GMAC Mortg.*, LLC, No. 12-00111-KD-B, 2013 U.S. Dist. LEXIS 181066 (S.D. Ala. Dec. 30, 2013) for the proposition that "the policies

of the automatic stay weigh against granting the Motion" to an unsecured creditor like Mr. Owoc is entirely inapposite and baseless, particularly where Debtors seek to enforce the stay to create new property rights and contravene the I.R.C. Obj. ¶ 67. First, as Debtors concede, Mr. Owoc *has* filed a secured proof of claim in these cases. *Id.* Notwithstanding, however, in *Jackson*, the creditor sought to lift the stay to pursue litigation claims against the debtor outside of bankruptcy. 2013 U.S. Dist. LEXIS 181066 at *7-8. The court denied that relief, in part, because the movant's bankruptcy claim related to that litigation would be unsecured. *Id.* at *8. This is far afield here where Mr. Owoc does *not* seek to litigate claims against the Debtors outside of bankruptcy (*i.e.*, there is no "race to the courthouse" (Obj. ¶ 66)), but rather, seeks relief (if necessary) to revoke VPX's S-Corp status based on his status as the sole shareholder, *not* as a secured or unsecured creditor.

### E. The Debtors Should Not Be Allowed to Hold Mr. Owoc "Tax Hostage" By Refusing to Perform Ministerial Acts Required to Accomplish the Revocation

37. The Debtors further argue that they should not be compelled to file the paperwork necessary to effect the revocation (effectively, simple ministerial acts) because they do not like the result. Obj. § II. Indeed, *this* is extraordinary where the Debtors effectively seek to hijack control of the tax status from their shareholder. In *Health Diagnostic* the court held: "[t]he mere filing of the tax form does not confer control over the S corporation status. It is unrealistic to suggest that a corporation could ever revolt against its shareholders by refusing to file the revocation form." *Health Diagnostic,* 578 B.R. at 567 (citation omitted). Yet, that is *exactly* what the Debtors suggest here, arguing that Mr. Owoc "has offered no reason why VPX should be required to sign IRS documents against the will of its Board and officers." Obj. § II. C. Of course, the reason is that Mr. Owoc controls the decision under applicable federal tax law. Indeed, in *Health Diagnostic* the court further held that "[t]he Liquidating Trustee cannot hold the shareholders 'tax hostage' by

avoiding their decision to revoke the S Corporation election." *Id.* at 568 (*citing Sery v. Fed. Bus. Ctrs., Inc.*, 616 F. Supp. 2d 496, 505 n.3 (D.N.J 2008) ("[S]hareholders in closely held S corporations would effectively be held hostage if the court were to find that Subchapter S election contractually bound a shareholder to preserve the tax favored status.")).

38.     The Debtors and its professionals are required to comply with the Bankruptcy Code and orders issued by this Court. Moreover, this Court has broad power under Bankruptcy Code section 105 to authorize and direct the Debtors to respect the rights granted Mr. Owoc under non-bankruptcy law – consistent with applicable Bankruptcy law – and take those ministerial actions necessary to effectuate the termination of VPX's status as an S-Corp. The Court should exercise that power here.[12]

---

[12] The Committee's contention that the entity that benefits from the transaction, here the Debtors, should pay no taxes on the proceeds generated from such Sale, defies logic, is directly at odds with the holding in *Majestic*, and would create new property rights that are directly at odds with the I.R.C. Moreover, despite the Committee's spin-doctoring, exercise of the settled right to revoke S-Corp status has nothing to do with prior motions to approve the Sale and settlement. Moreover while the Committee contends Mr. Owoc should have sought relief earlier, there is no time limitation under the I.R.C. to revoke the S-Corp designation, nor were the details of the settlement with the Debtors and Monster (which creates potential staggering additional tax liability and benefits to non-debtor Monster), previously contemplated, nor disclosed publicly until the filing of the subject settlement motion. Regarding the Committee's position regarding "close the books" election, without such, even with a revocation of S-Corp designation, Mr. Owoc would be responsible for over half of the tax liability from the Sale and forgiveness of debt despite receiving zero benefit from the Sale (as the close the books election provides for the allocation of the tax status from the beginning of the tax year, preventing any liability to the shareholder for taxes on income it did not receive for part of the year prior to revocation). Moreover, the Committee's complaint that the relief sought in the Motion "would upset the status quo" has it backwards. As detailed herein, *without* such relief, new property rights would be created for Debtors in bankruptcy while Mr. Owoc would be stripped of his statutory rights under the I.R.C. The equities weigh heavily in favor of the relief requested.

## CONCLUSION

39.    The Debtors are receiving hundreds of millions of dollars in consideration from the Sale.  It is only fair then that they should pay the resulting tax bill.  The Court should grant the Motion, finding, consistent with *Majestic* and its progeny, that VPX's S-Corp status is not property subject to the automatic stay and the stay is therefore not implicated by the proposed revocation of VPX's S-Corp status.  Alternatively, if the Court finds the stay does apply, it should lift the stay for cause to allow the revocation to proceed, allowing Mr. Owoc to exercise his undisputed rights under the I.R.C. and avoid the substantial inequities that would otherwise result.

Dated:  July 27, 2023

PHANG & FELDMAN, P.A.
*Attorneys for John H. Owoc, Megan Owoc,*
*Elite Island, LLC and Entourage IP Holding, LLC*
2 S. Biscayne Boulevard, Suite 1600
One Biscayne Tower
Miami, Florida 33131
Telephone: (305) 614-1223

By:    */s/ Jonathan S. Feldman*
Jonathan S. Feldman (12682)
feldman@katiephang.com
service@katiephang.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served July 27, 2023, based on the Court docket, by transmission of Notices of Electronic Filing ("NEF") generated by CM/ECF to those parties registered to receive NEF in this case.

By: */s/ Jonathan S. Feldman*
Jonathan S. Feldman (12682)
feldman@katiephang.com

# EXHIBIT 1

*Subject to Confidentiality*

.

# EXHIBIT 2

*Subject to Confidentiality*