UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                     Chapter 11 Cases

VITAL PHARMACEUTICALS, INC., *et al.*,[1]                  Case No.: 22-17842-PDR

    Debtors.                                             (Jointly Administered)

_____/

**DEBTORS' MOTION FOR AUTHORIZATION TO ENTER INTO AN EXCESS INSURANCE POLICY WITH EVEREST INDEMNITY INSURANCE COMPANY**

Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev LLC and Vital Pharmaceuticals International Sales, Inc. (collectively, the "Debtors"), by and through their undersigned counsel, pursuant to 11 U.S.C. §§ 105 and 363(b), file this *Debtors' Motion for Authorization to Enter into an Excess Insurance Policy with Everest Indemnity Insurance Company* (the "Motion"). The Motion seeks entry of an order, substantially in the form attached hereto as **Exhibit "B"**, authorizing the Debtors to enter into an additional excess insurance policy with Everest Indemnity Insurance Company ("Everest"), providing additional Side A D&O liability insurance to certain of the Debtors' officers. In support of this Motion, the Debtors rely upon the *Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* (ECF No. 26, the "First Day Declaration"), and respectfully represent as follows:

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

12254992-2

## Jurisdiction and Venue

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are sections 105(a), 363(b) and 507(a)(5) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

## Background

4. On October 10, 2022 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

5. The Debtors are operating their business and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the First Day Declaration filed on the Petition Date.

7. On October 11, 2022, the Court entered an order jointly administering the Debtors' chapter 11 cases [ECF No. 43].

8. On October 14, 2022, the Court entered an *Order Granting Debtors' Emergency Motion for Authorization to (I) Continue to Administer Insurance Policies and Related Agreements; and (II) Honor Certain Obligations in Respect Thereof* [ECF No. 109], authorizing, *inter alia*, the Debtors' continued maintenance and payment of the Chubb D&O Policy with Federal Insurance Company, as further defined below.

12254992-2

9. On November 1, 2022, the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") in these chapter 11 cases [ECF No. 245]. On November 23, 2022, the United States Trustee reconstituted the Committee [ECF No. 400].

10. On or about October 24, 2022, the Debtors took corporate action to increase the number of directors or managers of each Debtor from one (1) to five (5) members ("Board of Directors"). Thereafter, on January 7, 2023, the Debtors appointed four (4) directors and managers to serve along with John H. Owoc (the "Directors"). The January 7, 2023, resolutions also provide that John DiDonato, the Debtors' Chief Transformation Officer ("CTO"), is to report to the Restructuring Committee created and appointed by the Debtors' then-Directors, which is chaired by Mr. Panagos.

11. As of March 9, 2023, Mr. Owoc is no longer an officer or director of the Debtors and Meg Owoc is no longer an officer or employee of the Debtors. On that date, the Directors appointed Mr. DiDonato as the Debtors' Interim CEO.

12. On March 24, 2023, the Court entered an *Order Granting Debtors' Motion for Authorization to Enter into an Excess Insurance Policy with XL Specialty Insurance Company* [ECF No. 1025] authorizing the Debtors to enter into an Excess Side A Liability Coverage Policy with XL Specialty Insurance Company for $5,000,000, increasing the Debtors' D&O liability insurance coverage to $10 million for certain of the Debtors' Directors.

13. The Debtors now seek authorization to enter into an additional Side A D&O Policy with Everest, as set forth in the Alternative Solutions Insurance Proposal attached hereto as **Exhibit "A"**, to provide an additional $2,000,000 of coverage ("Everest Policy") to the Debtors' officers, as follows:

    (a) Gene Bukovi- Chief Operating Officer;

(b)   Greg Robbins- Chief Financial Officer;

(c)   Esther Polanco- Vice President of Marketing;

(d)   Lourdes Barsky- Vice President of Employee Services;

(e)   Gregg Metzger- General Counsel;

(f)   Sury Rodriguez- Vice President of Finance; and

(g)   Paul Borelli- Senior Operations Manager (collectively, the "Debtors' Officers")

14.   The Everest Policy will provide coverage to the Debtors' Officers for claims brought by or on behalf of specific claimants: John (Jack) Owoc and Meg Owoc (collectively, the "Claimants") for actions that occurred on or after October 7, 2022.

15.   The Everest Policy will sit in surplus to the Chubb Policy and potentially provide the Debtors' Officers with a total of $4,000,000 in coverage against claims brought by the Claimants for twelve months from the date the Everest Policy is bound.

## D&O Coverage

16.   Prepetition, the Debtors obtained and maintained a Directors & Officers and Entity Liability Policy through Federal Insurance Company in the aggregate coverage amount of $2,000,000.00 (Policy No. 8261-9808, the "Chubb D&O Policy"). The Chubb D&O Policy, as extended, expires on October 31, 2023. Notwithstanding, the Chubb D&O Policy includes certain exclusions from coverage, including claims brought by Insured Persons (as defined in the Chubb D&O Policy) against other Insured Persons for certain claims, which may impact the coverage provided to the Debtors' Officers.

17.   The Debtors have determined that they are currently under-insured with respect to the coverage provided to their Officers given the size and complexity of their business and the ligation posturing brought by the Debtors' former CEO. Additionally, the proposed Everest

4

12254992-2

Policy does not include an Insured vs. Insured exclusion and, if approved, would provide $2 million of coverage to the Officers as of the date the Everest Policy is bound against litigation brought by or on behalf of the Claimants, more closely aligning the Debtors' D&O coverage with that of similarly sized companies and ensuring that the Debtors' fulfill any indemnification obligations owed to the Debtors' Officers.

18. The premium associated with the Everest Insurance Company's Excess Side A Liability coverage, is $750,000.00 and the policy will be effective for twelve (12) months with an endorsement that provides a 6-year runoff that commences at the earlier of the policy expiration date or the conclusion of the bankruptcy case.

19. For the avoidance of any doubt, the Everest Policy will not provide coverage for Mr. Owoc or any other former officer or director of the Debtors.

### Relief Requested and Basis Therefor

20. The Debtors seek authority, in their reasonable business judgment, to obtain excess Side A Liability D&O Coverage from Everest. For the reasons set forth below, the Debtors believe that the relief requested is necessary and appropriate under the circumstances.

21. Section 105(a) of the Bankruptcy Code provides, in relevant part:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105(a).

22. Section 363(b)(1) authorizes a debtor in possession "after notice and a hearing" to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

23. Pursuant to section 363(b), a bankruptcy court is empowered to authorize a debtor to expend funds in the bankruptcy court's discretion outside of the ordinary course of the debtor's

5

business. *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175; see also *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 155 (D. Del. 1999) ("Section 363(b) should be interpreted liberally to provide a bankruptcy judge with 'substantial freedom to tailor his orders to meet differing circumstances' and to avoid 'shackling the judge with unnecessarily rigid rules." (citation omitted)). Although section 363(b) does not set forth a standard for determining when it is appropriate to authorize transactions outside of the ordinary course, courts generally grant such relief if the debtors articulate a sound business purpose. *In re Friedman's Inc.*, 336 B.R. 891, 895 (Bankr. S.D. Ga. 2005); see also *In re Tropical Sportswear Int'l Corp.*, 320 B.R. at 17 (finding a "sound business justification" for transaction outside of ordinary course). In addition, courts "should approve an exercise of a debtor's business judgment unless it is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." *In re Friedman's Inc.*, 336 B.R. at 895 (quoting Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985)).

24.     The Debtors have compelling business reasons for seeking to increase the D&O Side A coverage provided by the Everest Policy. First, pursuant to their organizational documents, the Debtors have agreed to indemnify their officers and managers to the fullest extent permitted under applicable law.  The Debtors currently have insufficient insurance coverage for the Debtors' Officers given the size and complexity of their business and the potential litigation to be brought against the Debtors' Officers by the Claimants. Mr. Owoc has already filed a complaint in the Circuit Court of the 17th Judicial Circuit in Broward County,

Florida (Case No. 23-014222) against certain of the Debtor's Directors seeking a declaratory judgment and a preliminary injunction related to his termination from the Board of Directors. The Debtors' believe additional litigation is forthcoming. This additional policy will provide the Debtors' Officers supplemental coverage from potential additional claims brought against them by the Claimants. The Debtors have the liquidity to pay the additional premium and will not constrained by the additional expense.[2]

### Reservation of Rights

25. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors or Officers, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365. The Debtors expressly reserve their right to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

26. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a), and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

---

[2] Nothing contained herein is intended or should be construed as an admission as to the financial solvency of the Debtors.

12254992-2

**WHEREFORE**, the Debtors respectfully request that the Court enter an order in the form attached hereto as **Exhibit "B**," (i) granting the relief requested in this Motion, and (ii) granting such other relief as the Court deems just and proper.

Dated: July 31, 2023
       Miami, Florida

George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email:  george.davis@lw.com
       tj.li@lw.com
       brian.rosen@lw.com
       jon.weichselbaum@lw.com

– and –

Andrew D. Sorkin (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email:  andrew.sorkin@lw.com

– and –

Whit Morley (admitted *pro hac vice*)
**LATHAM & WATKINS LLP**
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

Respectfully submitted,

*/s/ Michael J. Niles*
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
**BERGER SINGERMAN LLP**
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone: (305) 755-9500
Email:  jguso@bergersingerman.com
       mniles@bergersingerman.com

*Co-Counsel for Debtors*

12254992-2

# EXHIBIT "A"
# (EVEREST POLICY QUOTE)

12254992-2

**Everest Indemnity Insurance Company**
c/o Mt. McKinley Managers, L.L.C
461 Fifth Avenue, 3rd Floor
New York, NY  10017



---

June 27, 2023

Mandy Lamay
CAC Specialty
250 Fillmore Street, Suite 450
Denver, CO 80206

Re:   Vital Pharmaceuticals, Inc

<u>**ALTERNATIVE SOLUTIONS INSURANCE PROPOSAL**</u>

Dear Mandy:

**Everest Indemnity Insurance Company** ("Everest") is pleased to offer the following quote, which is valid for 30 days from the date of this letter or until the policy inception date, whichever is sooner.  This quote is not an insurance policy or binder.  As always, coverage is determined by and subject to the terms, limits and conditions of the actual insurance policy. This quote is based upon the information provided to Everest to date.

The quote, however, is conditioned upon Everest's receipt, review, and acceptance of the additional underwriting information indicated below.  The quote could change or be withdrawn if: (1) the additional information is not provided; or (2) Everest determines in its sole discretion that the additional information supplied warrants a change or withdrawal of the quote.  The terms of the quote are subject to the Standard Terms and Conditions set forth below.

**STANDARD TERMS AND CONDITIONS**
1. Please confirm your choice to purchase or decline Terrorism coverage outlined in this quote.  If terrorism coverage is declined then quote cannot be bound until the signed TRIA rejection of coverage form is returned.  Additional forms will apply at binding based on decision to select or reject terrorism coverage.
2. Premium is due 30 days from the effective date.
3. Policyholder agrees to accept an electronic policy and other related documents issued by Everest; policyholder may request a written policy.

We appreciate the opportunity to provide an indication on this account. Should you have any questions, please feel free to contact me at any time.

Regards,

*Terence Keane*

**Terry Keane**
 (T) (646) 828-5000 |  (M) +1 914-217-8489 | terence.keane@everestre.com

<u>**ALTERNATIVE SOLUTIONS INSURANCE PROPOSAL**</u>

| PARENT COMPANY: | Vital Pharmaceuticals, Inc |
|---|---|
| ADDRESS: | 1600 North Park Drive<br>Weston, FL 33326 |
| INSURANCE COMPANY: | Everest Indemnity Insurance Company (Non-Admitted Paper) |
| A.M. BEST RATING: | A+ Class XV (Superior) |
| POLICY PERIOD: | TBD to TBD (12 months) |
| COVERAGE: | Lead Side A D&O |
| POLICY FORM: | DIRECTORS AND OFFICERS SIDE A COVERAGE FORM<br>ESU 00 401 06 15 |
| AGGREGATE LIMIT OF LIABILITY: | $2,000,000 for all Non-Indemnified Loss, including Claim Expenses |
| PREMIUM: | $750,000 |
| TRIA PREMIUM: | (included in Premium above) |
| COMMISSION: | 15% |

**SCHEDULE OF UNDERLYING INSURANCE**:

| Company | Limits | Attachment | Premium |
|---|---|---|---|
| Federal Insurance Company | $2,000,000 | $100,000 | $120,083 |

**ENDORSEMENTS:**

| Endorsement Title | Form Number |
|---|---|
| Signature Page | EIL 00 502 03 07 |
| Amend Insuring Agreement / Definitions Endorsement ( Insured Person, Claim and Loss) Prior Acts Exclusion 10/7/2022 | TBD |
| Pending or Prior Litigation Exclusion – *Inception* (limited to against an Insured Person) | ESU (A) CWM035D-1 0921 |
| Pre-Paid Run-off (6 years) | ESU (A) CWM080A-1 0921 |
| Amendatory Endorsement | ESU (A) CWM001L-2 1121 |
| No Reinstatement of Limits | Manuscript - TBD |
| Florida Amendatory – Cancellation and Non-Renewal | ESU 01 16 11 09 |
| Florida Amendatory | ESU 01 194 01 11 |
| Florida Amendatory  - Definition Of Pollutants | ESU 01 193 01 11 |
| Cap On Losses From Certified Acts of Terrorism | ESU 02 02 11 09 |
| Service Of Suit | EIL 00 600 08 12 |
| Florida Notice To Policyholder | EN ESU 1 FL 01 10 |
| ADVISORY NOTICE REGARDING TRADE OR ECONOMIC SANCTIONS | EIL-CWN010A-1 1020 |
|  |  |
|  |  |

**SUBJECT TO INFORMATION:**

This Quote is subject to receipt and approval of the following additional underwriting information:

- Completed surplus lines form

**ADDITIONAL CONDITIONS:**
"NOTICE- OFFER OF TERRORISM COVERAGE, NOTICE-DISCLOSURE OF PREMIUM" FORM EN IL TR 20 01 15, IS INCLUDED IN YOUR QUOTE FOR INSURANCE COVERAGE. THIS NOTICE OFFERS YOU COVERAGE FOR CERTIFIED ACTS OF TERRORISM AND, IF YOU ACCEPT OUR OFFER, A PREMIUM QUOTE FOR THIS ADDITIONAL COVERAGE IS DISCLOSED. ADDITIONALLY, AS ESTABLISHED IN THE TERRORISM RISK INSURANCE ACT OF 2015, THE NOTICE DISCLOSES THE FEDERAL GOVERNMENT'S PARTICIPATION IN PAYMENTS FOR TERRORISM LOSSES INSURED UNDER THE FEDERAL PROGRAM. **IF YOU WISH TO REJECT THIS COVERAGE, YOU MUST SIGN AND RETURN "NOTICE-OFFER OF TERRORISM COVERAGE, NOTICE- DISCLOSURE OF PREMIUM"**.


Please note that if between the date of this Quotation and the Effective Date of the Policy there is a material adverse change in the condition of the Applicant or an occurrence which could substantially alter the underwriting evaluation of the Applicant, the Company, at its' option, may withdraw the quote by written notice thereof. The Company also reserves the right to modify the final terms and conditions upon review of the information received in satisfaction of the aforementioned conditions.

# NOTICE - OFFER OF TERRORISM COVERAGE
# NOTICE – DISCLOSURE OF PREMIUM

The Further Consolidated Appropriations Act, 2020, which was signed into law on December 20, 2019, in part, reauthorizes the Terrorism Risk Insurance Act of 2002 (TRIA), under Title V, cited as the Terrorism Risk Insurance Program Reauthorization Act of 2019. TRIA is a program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from terrorist attacks.  The Act applies when the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, certifies that an event meets the definition of a "certified acts of terrorism".  The Act provides that, to be certified, acts of terrorism must result in insured losses in excess of five million dollars and must have been committed by an individual or individuals as part of an effort to coerce the government or population of the United States.  As used in this notice, "certified acts of terrorism" means acts of terrorism **that are certified under the federal program as acts of terrorism.**

In accordance with the Terrorism Risk Insurance Act, as extended on, December 20, 2019 we are required to offer you coverage for any "certified act of terrorism" Your decision is needed on this question:  Do you choose to pay the premium for terrorism coverage stated in this offer of coverage, or do you reject the offer of coverage and not pay the premium?  You may accept or reject this offer.

See the section of this Notice titled **DISCLOSURE OF PREMIUM.**  If you choose to accept this offer of coverage, your premium will include the additional premium for terrorism as stated in such **DISCLOSURE.**   Payment of the additional premium will constitute acceptance of this offer.  If you choose to reject this offer, you must do so by signing the enclosed statement and returning it to your agent or broker.

If you **accept** coverage under the Act, eligible lines of insurance within your policy will contain a cap on payment of damages that are from "certified acts of terrorism" reflecting the limits established by the Act.  If permitted by your state, your policy will also contain an exclusion for punitive damages resulting from "certified acts of terrorism", since punitive damages are excluded under the Act.  If you **reject** coverage under the Act, your policy will contain an exclusion for "certified acts of terrorism".

**LIMITATION ON PAYMENT OF TERRORISM LOSSES** (applies to policies which cover terrorism losses insured under the federal program, including those which only cover fire losses)
The provisions of the Terrorism Risk Insurance Act, as extended on, December 20, 2019 can limit our maximum liability for payment of losses from "certified acts of terrorism".  That determination will be based on a formula set forth in the law involving the national total of federally insured terrorism losses in a Calendar Year and individual insurer participation in payment of such losses.

**DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES**
You should know that where coverage is provided by this policy for losses resulting from "certified acts of terrorism", such losses may be partially reimbursed by the United States Government under a formula established by federal law.  Under this formula, the United States Government pays 80% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.  The premium charged for this coverage is provided below and does not include any charges for the portion of loss covered by the Federal Government under the Act.

**CAP ON INSURER PARTICIPATION IN PAYMENT OF TERRORISM LOSSES**
If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Calendar Year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**DISCLOSURE OF PREMIUM - If you accept this offer, the premium for terrorism coverage is $0.**

**By law, some states do not allow you to reject first party property coverage for fire following an act of terrorism.  If you reject this offer and your state requires that we provide you with terrorism coverage for fire following terrorism,**

the premium for the required first party fire following terrorism coverage is $0. (If "N/A" appears, this type of coverage is not applicable to your policy.)

<u>**Named Insured**</u>                              <u>**Policy/binder/quote No.**</u>

**IF YOU WISH TO REJECT COVERAGE UNDER THE TERRORISM RISK INSURANCE ACT, AS EXTENDED ON, December 20, 2019, THE FIRST NAMED INSURED IF AN INDIVIDUAL, OR AN AUTHORIZED OFFICER, PARTNER OR MEMBER MUST SIGN ONE OF THESE STATEMENTS**

## TERRORISM RISK INSURANCE ACT REJECTION OF COVERAGE

I acknowledge that I have been notified as required under the Terrorism Risk Insurance Act, as extended on December 20, 2019 that as respects to the above numbered insurance policy issued to me:

1. I have been offered coverage for acts of terrorism as defined in the Act;
2. I have been advised that if I accept coverage for acts of terrorism as defined in the Act, the United States Government will participate in the payment of terrorism losses insured under the Act, subject to the provisions of the Act;
3. I have been told that if I reject coverage under the Act by signing this notice, to the extent allowed by law, I will have no coverage for any act of terrorism under this policy.
4. I have been notified of the annual premium for coverage for acts of terrorism as defined in the Act.
5. I hereby **reject** coverage for acts of terrorism as defined in the Act and understand my policy will contain an exclusion for acts of terrorism.

_____    _____    _____
Policyholder/applicant's signature                    Date                 Print name

**RETURN THIS FORM TO YOUR AGENT OR BROKER. A COPY OF THIS DOCUMENT IS AS BINDING AS THE ORIGINAL.**

**ATTENTION AGENT OR BROKER: THIS FORM MUST BE SIGNED PERSONALLY BY THE INSURED, OR AUTHORIZED OFFICER, PARTNER OR MEMBER AND RETURNED BACK THROUGH ANY APPLICABLE INTERMEDIARY AGENT/ BROKER/ WHOLESALER TO THE COMPANY OR PROGRAM ADMINISTRATOR.**

# EXHIBIT "B"
# (PROPOSED ORDER)

12254992-2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| IN RE: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*,[1] | Case No.: 22-17842-PDR |
| Debtors. _____/ | (Jointly Administered) |

**ORDER GRANTING DEBTORS' MOTION FOR AUTHORIZATION TO ENTER INTO AN EXCESS INSURANCE POLICY WITH EVEREST INDEMNITY INSURANCE COMPANY**

**THIS MATTER** having come before the Court on _____, 2023, at _____ __.m., in Fort Lauderdale, Florida, the *Debtors' Motion for Authorization to Enter into an Excess Insurance Policy with Everest Indemnity Insurance Company* (the "Motion") [ECF No. ___] filed by the Debtors[2]. The Court finds that (i) it has jurisdiction over the matters raised in the Motion under

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Motion.

12271112-1

28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding under 28 U.S.C § 157(b)(2)(A), and that this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; (v) notice of the Motion and the hearing were appropriate under the circumstances; and (vi) upon review of the record before the Court, including the legal and factual bases set forth in the Motion, the *Declaration of John C. DiDonato, Chief Transformation Officer, in Support of Debtors' Motion For Authorization to Enter into an Excess Insurance Policy with Everest Indemnity Insurance Company* [ECF No. ____] and the statements made by counsel at the hearing, good and sufficient cause exists to grant the relief requested in the Motion, it is

**ORDERED AND ADJUDGED** as follows:

1. The Motion is **GRANTED**.

2. The Debtors are authorized to enter into that certain additional excess insurance policy with Everest Indemnity Insurance Company, pursuant to the quote attached to the Motion as **Exhibit "A"**.

3. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

# # #

Submitted by:
Jordi Guso, Esq.
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com
Email:  mniles@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

2

12271112-1