UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| In re: | ) )  Chapter 11 |
| Vital Pharmaceuticals, Inc., *et al.*[1] | ) ) ) Case No. 22-17842-PDR |
| Debtors. | ) ) (Jointly Administered) ) |

**APPLICATION OF CLASS CLAIMANTS
FOR THE ALLOWANCE AND PAYMENT OF ADMINISTRATIVE
CLAIMS PURSUANT TO SECTION 503(B) OF THE BANKRUPTCY CODE**

Carlton Harris (the "Postpetition Representative Claimant"), individually and on behalf of all others similarly situated (collectively, the "Class Claimants"), by and through the undersigned counsel, hereby submits this application (the "Application"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (a) pursuant to 11 U.S.C. § 503(b), allowing the Class Claimants, through their class representatives, an administrative claim in an amount to be determined by the Court, (b) directing that such amounts be paid in full, and (c) granting such other and further relief as is just and proper. In support of this Application, the Class Claimants respectfully state as follows:

**PRELIMINARY STATEMENT**

The Class Claimants represent literally millions of consumers across the country who, for at least the last five years, have been purchasing the Debtors' primary product, the "Bang" Energy Drink (the "Product"), under the guise that the Product contained a key, valuable ingredient—

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

creatine. These consumers were intentionally misled by the Debtors: the Product's deceptively-named "Super Creatine" ingredient has no creatine-like effects at all (let alone creatine itself), and is otherwise worthless. In fact, as set forth in Class Claimants' complaints, attached to the Class POC (as defined herein), at least five separate studies—including the Debtors' own expert—confirm as much. Accordingly, the Class Claimants' claims, already fully proven by the very documents attached to such complaints, establish beyond doubt that the Debtors, for years, scammed their customers, raking in hundreds of millions of dollars on the backs of misled consumers. What's worse, the Debtors continued to do so while at the same time taking refuge under the United States Bankruptcy Code.

More specifically, the Debtors initiated these chapter 11 cases largely because of their substantial litigation, much of which stemmed from alleged trademark, marketing, advertising, and similar consumer-harming behavior of the Debtors.[2] Some of these pending litigation matters were highlighted in the First Day Declaration, including the lawsuit initiated by Monster Energy Company against Debtor Vital Pharmaceuticals, Inc. ("VPX") and its CEO, John H. Owoc, in the United States District Court for the Central District of California, captioned *Monster Energy Co. v. Vital Pharms., Inc. and John H. Owoc*, Case No. 5:18-cv-1882 (the "Monster Litigation"). Not included in the First Day Declaration were the additional lawsuits of each of Peter Fischer and Brendan Abbot, each individually and on behalf of all others similarly situated, against VPX, each in the United States District Court for the Eastern District of Missouri, captioned as *Peter Fischer, et al. v. Vital Pharms., Inc., et al.*, Case No. 22-cv-00136, and *Brendan Abbot, et al. v. Vital*

---

[2] *See Declaration of John C. DiDonato in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 26] (the "First Day Declaration") at ¶ 41 ("The Company commenced these cases in order to (a) obtain "breathing room" from pending litigation, including the OBI Judgment and FAA Verdict, as well as consequences of pending defaults under the Prepetition Credit Agreement . . . .").

*Pharms., Inc., et al.*, Case No. 22-cv-00587, respectively (collectively, the "Class Action Litigation"). Before any of the Class Claimants proceeded to trial on their claims, or even engaged in substantial discovery, the Debtors initiated these chapter 11 cases, automatically staying such matters.

Each of the Monster Litigation and the Class Action Litigation stem from certain false advertising and similar conduct, including but not limited to deceptive and misleading marketing regarding the "Bang" line of products including "Super Creatine." Despite the pendency of the Class Action Litigation and the Monster Litigation having already resulted in a jury verdict against VPX and Mr. Owoc for approximately $293 million, after the Petition Date (as defined herein), VPX continued its deceptive and unfair trade practices.[3] Because of the ongoing deceptive and misleading marketing that continued to occur after the Petition Date, claims of various Class Claimants continued to accrue after such Petition Date. Because any damages arising from such post-petition misconduct give rise to administrative claims, the Class Claimants now move to allow such claims pursuant to section 503(b) of the Bankruptcy Code. Moreover, the Class Claimants shall request by separate motion that the Court estimate such claims, both on a prepetition and post-petition basis, pursuant to sections 105(a) and 502(c) of the Bankruptcy Code.

---

[3] Monster Litigation, *Order (1) GRANTING Plaintiff's Motion for a Permanent Injunction (Dkt. No. 901); and (2) VACATING the April 24, 2023 Hearing (IN CHAMBERS)* [Docket No. 964] at pg. 6. ("Defendants placed the words 'Super Creatine' across the front of their BANG cans and regularly used creatine in social media and other advertisements . . . As recently as February 27, 2023, five months after the verdict, BANG's Instagram and Facebook page contained a picture of a BANG can with the Super Creatine label. Similarly, on October 29, 2022, almost a month after the jury's verdict, Mr. Owoc posted a reel of four cans with the Super Creatine label.") (internal citations and footnotes omitted).

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On October 10, 2022 (the "Petition Date"), each of the above-captioned debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases") before the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court").

3. Prior to the Petition Date, the Class Claimants, through class representatives, initiated the Class Action Litigation asserting counts against VPX for breach of warranty, breach of implied contract (in the alternative), unjust enrichment, and violation of the Missouri Merchandising Practices Act on account of misleading, false, and deceptive marketing conduct. Chief among these misleading, false, and deceptive marketing claims were those centered on VPX's inclusion on the packaging of its various BANG products that such products included "Super Creatine." As set forth more fully in the complaints of the Class Action Litigation (which complaints are attached as Composite Exhibit A to the Class POC (as defined herein)), such products in actuality did not include creatine at all and the "creatyl-l-leucine" ingredient marketed as "Super Creatine" in fact contains no creatine and produces no creatine-like effects.

4. On November 9, 2022, the Class Claimants, through class representatives, filed a proof of claim [Claim No. 87] (the "Original Class POC") asserting a claim no less than $173,000,000.00 on account of "[c]onsumer fraud compensatory damages for nationwide class due to deception, breach of warranty, and misrepresentation." On December 19, 2022, the Original Class POC was amended by filing that certain proof of claim [Claim No. 617] (the "Amended

4

Class POC" and together with the Original Class POC, the "Class POC"), asserting the unliquidated amount of the claim, attaching the Class Litigation complaints as Composite Exhibit A, and further attaching that certain *Statement in Support of Proof of Claim* as Exhibit B.

5. As set forth in Exhibit B to the Class POC, "the number of Class Claimants and extent of the Claims of the same is still being analyzed on both a prepetition and postpetition basis" and because of "the ongoing nature of the Claims . . . the Claims are unliquidated; they grow every day and continue to accrue on a postpetition basis, entitling such postpetition claims to payment in full."

## RELIEF REQUESTED

6. By this Application, the Class Claimants, through representatives, seek entry of an order: (a) allowing the Class Claimants an administrative claim in an amount determined by the Court; (b) compelling the Debtors to pay such amount; and (c) granting such other and further relief as is just and proper under the circumstances.

## BASIS FOR RELIEF

7. Section 503(b)(1) of the Bankruptcy Code provides, in relevant part, that, "there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Administrative claims are entitled to priority payment under section 507(a)(2) of the Bankruptcy Code and are required to be paid in full once allowed pursuant to section 1129(a)(9) of the Bankruptcy Code. *See id*. §§ 507(a)(2), 1129(a)(9).

8. "The term 'administrative expense' is not defined in the Code, but courts agree that an administrative expense has two defining characteristics: (1) the expense and right to payment arise after the filing of bankruptcy, and (2) the consideration supporting the right to payment provides some benefit to the estate." *In re Hackney*, 351 B.R. 179, 185 (Bankr. N.D. Ala. 2006) (citing *CIT Communications Finance Corp. v. Midway Airlines Corp. (In re Midway Airlines*

5

*Corp.)*, 406 F.3d 229, 237 (4th Cir. 2005)); *see also In re O'Brien Env't Energy, Inc*., 181 F.3d 527, 532–33 (3d Cir. 1999) ("For a claim in its entirety to be entitled to first priority under [§ 503(b)(1)(A)], the debt must arise from a transaction with the debtor-in-possession . . . . [and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business.").

9. In this case, certain Class Claimants continued to purchase BANG product marketed with the "Supreme Creatine" misleading and deceptive marketing, over which VPX exercised control and maintained liability, since the Petition Date. In fact, consumers have spent approximately $140.9 million—between an estimated $139.6 million in can Product purchase sand $1.3 million in smaller-variety "shot" Product purchases—since the Petition Date.[4] These purchases confer a very substantial benefit on the estates, to the detriment of the consumers who are misled by the false advertising. The Class Claimants reasonably believe that a large portion of all of that revenue arose from sales of product with misleading and deceptive marketing.

10. Moreover, as the injunction in the aforementioned Monster Litigation makes clear, these misleading and deceptive marketing practices continued until (at least) quite recently, thereby causing significant, ongoing harm to purchasers. The U.S. Supreme Court has recognized that post-petition tort claims may be allowed as administrative claims. *See Reading Co. v. Brown*, 391 U.S. 471 (1968) (holding that post-petition damages arising from receiver's negligently caused fire were administrative claims); *In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461, 480 (Bankr. D. Del. 2006) ("Damages arising from a post-petition tort committed by a debtor are entitled to

---

[4] These figures are included herein for informational and estimation purposes only, to provide guidance as to the scope of the issue presented hereby. These estimations were calculated using publicly-available retail figures available on the internet. The Class Claimants maintain that the best course of action to estimate their claims shall be by a separate estimation motion, and reserve all of their rights with respect to such motion and any such presentations to be made therein.

administrative expense status"); *In re Wildwood Vills., LLC*, 2022 Bankr. LEXIS 1466, at *19 (Bankr. M.D. Fla. Jan. 21, 2022) ("In limited circumstances, damages arising from a debtor's post-petition tortious conduct can qualify as an administrative expense under § 503(b)."). In *Reading Co. v. Brown,* the Supreme Court held that consideration of "fundamental fairness and logic" sometimes requires the allowance of an administrative claim, and that "actual and necessary" costs should include "costs ordinarily incident to operation of a business." *Reading*, 391 U.S. at 483. The Court concluded that the statutory objective of fairness dictated the result, as the injured party "did not merely suffer injury at the hands of the business: it had an insolvent business thrust upon it by operation of law." *Id.* at 478.

11. Specifically, the *Reading* doctrine "provides that a post-petition tort committed by a debtor-in-possession within the course and scope of its continued operation of the estate's business may, itself, be considered a cost of doing business and is, therefore, entitled to administrative expense priority under section 503(b)(1)(A)." *In re Blanchard,* 547 B.R. 347, 353 (Bankr. C.D. Cal. 2016). Pursuant to *Reading*'s modified torts approach, a claimed tort debt is administrative where the debt (1) "arise[s] from a transaction with the debtor-in-possession" and (2) is "ordinarily incident to operation of a business" and fairness dictates that the claim receive administrative priority. *See Ramirez Chrysler Jeep Dodge, Inc. v. Old Carco Liquid. Tr. (In re Old Carco LLC)*, No. 10 Civ. 2800 (PKC), 2010 WL 4455648, at *4 (S.D.N.Y. Nov. 2, 2010) (quoting *Reading*, 391 U.S. at 483); *see also In re Kmart Corp.*, No. 08 C 2101 2008 WL 5070306, at *3 (N.D. Ill. Nov. 20, 2008).

12. Courts across jurisdictions have consistently followed the *Reading* doctrine, finding that damages resulting from post-petition torts committed by the debtor are entitled to administrative priority under section 503(b)(1) of the Bankruptcy Code. *E.g., In re Women First*

*Healthcare, Inc.*, 332 B.R. 115, 123 (Bankr. D. Del. 2005) (stating that a postpetition tort can create an administrative claim); *Carter-Wallace Inc. v. Davis-Edwards Pharmacal Corp.*, 443 F.2d 867, 874 (2nd Cir. 1971) (holding that a post-petition patent infringement seems to qualify for administrative priority treatment); *Institut Pasteur v. Cambridge Biotech Corp.* (*In re Cambridge Biotech Corp.)*, 186 B.R. 9, 14 (Bankr. D. Mass. 1995) (same). This Court, in line with binding Eleventh Circuit precedent, has agreed and held that even if an expense does not confer a benefit on the estate, the estate may still be held liable under one of the following three circumstances: (1) the expenses are to compensate a victim of the estate's tortious conduct; (2) the expenses are for, or related to, environmental cleanup; or (3) the charges are civil penalties incurred due to the debtor's failure to comply with state law. *Goldberg v. Spuza (In re ER Urgent Care Holdings, Inc.)*, 474 B.R. 298, 302 (Bankr. S.D. Fla. 2010) (citing *Alabama Surface Mining Commission v. N.P. Mining Company Inc. (In re N.P. Mining Co, Inc.)*, 963 F. 2d 1449, 1456–58 (11th Cir. 1992)).

13. For example, in *In re Hayes Lemmerz International, Inc.*, the Delaware Bankruptcy Court considered whether a claim that the debtor, after the petition date, stripped machine parts from the creditor's own machines could qualify for administrative priority treatment. *See* 340 B.R. 461, 480 (Bankr. D. Del. 2006). Because the machine stripping arose in the course of the debtor's business and was done to keep the debtor's own machines operating for the benefit of the business (and therefore the estate), the court found that it qualified as an administrative claim. *Id.* at 481.

14. Courts have also found that it does not matter if the claim originates from conduct that began prior to the petition date. In *In re Charlesbank Laundry, Inc.*, the administrative claim, a civil fine for damages based on a continuing nuisance in violation of an injunction, was allowed in an amount equal to the post-petition portion of the fine. 755 F.2d 200, 202 (1st Cir. 1985). The wrongful behavior commenced pre-petition, but continued post-petition. *Id.* This is consistent

with how courts treat continuing torts generally, as well as the accrual of cognizable injuries in class tort cases. In particular, courts have held that a person suffers a cognizable injury every time that person purchases a product as a result of deceptive or unfair marketing, even though the conduct that gave rise to the deception in the first place occurred at some point in the past. *See, e.g.*, *Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 2011 U.S. Dist. LEXIS 51457, 2011 WL 1833366, at *6 (S.D. Fla. May 13, 2011) ("Under [Florida Deceptive and Unfair Trade Practices Act ("FUTPA")], Plaintiffs suffered damages when they purchased something that was not what they were led to believe they were purchasing. Therefore, Plaintiffs' FDUTPA claim accrued when they purchased the [product], not when they discovered that the [product] was unusable."); *DELAHUNT v. CYTODYNE Techs.*, 241 F. Supp. 2d 827, 835–36 (S.D. Ohio 2003) ("[A] cause of action accrues under the [Ohio] Consumer Sales Practices Act as soon as the allegedly unfair or deceptive transaction occurs . . . the members of the proposed class who purchased the product as a result of those practices or acts suffered a cognizable injury."); *Ellis v. Nissan N. Am.*, 2020 U.S. Dist. LEXIS 102759, at *11 (W.D. Mo. June 11, 2020) ("Under the MMPA, actual damages may be recovered by anyone who has (1) purchased merchandise from a defendant, (2) for personal, family, or household purposes, (3) suffered an ascertainable loss of money or property, (4) because another person has used an unlawful method."); *Ross v. Sioux Honey Ass'n, Co-op.*, 2013 U.S. Dist. LEXIS 6181, 2013 WL 146367, at *6 (N.D. Cal. Jan. 14, 2013) (where plaintiff filed class action alleging that product label misled consumers into purchasing a product they might otherwise not have purchased, court concluded that economic harm was established under California consumer protection laws).

15.  As discussed in <u>Exhibit B</u> to the Class POC, and as shall further be expanded in the motion to estimate the claims of the Class Claimants, the same assert both pre-petition and post-

9

petition claims against the Debtors for their tortious deceptive and unfair conduct relating to their sale and distribution BANG products. The Debtors' unlawful business practices, as well as the resulting artificially inflated price and market share, originated prior to the commencement of these chapter 11 cases. But certain of the Debtors' unlawful conduct, as well as the effects of their pre-petition unlawful conduct, continued well after the Petition Date.

16. Simply put, after the Petition Date the Debtors continued to profit from their wrongdoing in the ordinary course of their post-petition business, to the detriment of consumers who purchased their BANG products because of the deceptive and unfair marketing in which VPX and Mr. Owoc engaged. The Class Claimants suffered substantial damages due to the Debtors' tortious anti-consumer conduct since they filed for bankruptcy relief. At the same time, the Debtors benefitted, in the ordinary course of business, from many transactions that never would have occurred without these deceptive and unfair practices. The Class Claimants, through their class representatives, are submitting this Application well in advance of confirmation of any chapter 11 plan so that the Court can determine the allowance and amount of post-petition administrative claims that need to be paid by the Debtors, an issue critical to the advancement of these chapter 11 cases. Accordingly, the Court can and should find that the Class Claimants' claims attributable to post-petition sales be afforded administrative priority pursuant to section 503(b) of the Bankruptcy Code.

## RESERVATION OF RIGHTS

17. The filing of this Application shall not be construed as a waiver or release of any of the Class Claimants' or any of the Representative Claimants' (as defined in the Class POC) claims, rights, or remedies. The Class Claimants and the Representative Claimants reserve the right to supplement or amend this Application in any manner and for any purpose, including without limitation to assert additional administrative claims for any period.

**Conclusion**

WHEREFORE, the Class Claimants, through their class representatives, respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a) allowing an administrative claim in an amount to be determined by the Court, plus additional amounts for expenses paid or incurred in connection with the administration of this Motion, including professional fees and expenses; (b) compelling the Debtors to pay such amounts; and (c) granting such other and further relief as the Court may deem just and appropriate.

Dated:   August 19, 2023

                                        Respectfully submitted,

                                        **PACK LAW**
*Bankruptcy Counsel to Class Representatives*
51 Northeast 24th Street, Suite 108
Miami, Florida 33137
Telephone: (305) 916-4500

By:  */s/ Jessey J. Krehl*
Joseph A. Pack
Email:  joe@packlaw.com
Florida Bar No. 117882

Jessey J. Krehl
Email:  jessey@packlaw.com
Florida Bar No. 1025848

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a true and correct copy of the foregoing materials to be served via CM/ECF to all parties registered to receive electronic notice thereby on August 19, 2023.

By:  */s/ Jessey J. Krehl*
Jessey J. Krehl
Email:  jessey@packlaw.com
Florida Bar No. 1025848

**<u>Exhibit A</u>**
**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| Vital Pharmaceuticals, Inc., *et al.*[1] | ) ) ) | Case No. 22-17842-PDR |
| Debtors. | ) ) ) | (Jointly Administered) |

**ORDER ALLOWING AND
COMPELLING PAYMENT OF CLASS CLAIMANTS' ADMINISTRATIVE
CLAIMS PURSUANT TO SECTION 503(B) OF THE BANKRUPTCY CODE**

Upon the *Application of Class Claimants for the Allowance and Payment of Administrative Claims Pursuant to Section 503(b) of the Bankruptcy Code* [Docket No. [__]], dated as of August 19, 2023 (the "Application"),[2] filed by Carlton Harris (the "Postpetition Representative Claimant"), individually and on behalf of all others similarly situated (collectively, the "Class

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326. The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Capitalized terms not defined herein are used as defined in the Application.

Claimants"), by and through counsel, as creditors of the above-captioned debtors in the above-captioned cases; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having reviewed the Application and determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1. The Application is GRANTED as set forth herein.

2. The Class Claimants, as represented by Carlton Harris as the Postpetition Representative Claimant, are hereby allowed an administrative claim against the Debtors' estates. The amount of such claim shall be determined pursuant to procedures ordered by this Court, as proposed by the Class Claimants through separate motion to estimate the claims thereof.

3. Within thirty (30) days of the Court's estimating the value of the Class Claimants' administrative claims, the Debtors shall pay such amount to the counsel therefor and shall continue to pay administrative claims that accrue due to the Debtors' post-petition sales of products bearing reference to "Super Creatine" on a monthly basis thereafter.

4. This Order is without prejudice to the Class Claimants' or the Representative Claimants' rights under their proofs of claims or their rights to file, pursue, or recover under any other claims, whether administrative or otherwise, or any other rights of the Class Claimants or the Representative Claimants.

5. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

###

**Submitted by:**
Jessey Krehl, Esq.
*Counsel for the Class Representatives*
Pack Law, P.A.
51 Northeast 24th Street, Suite 108
Miami, Florida 33137
Tel: 305-916-4500
Email: jessey@packlaw.com

Attorney Jessey J. Krehl, Esq. is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF pursuant to applicable rules.