UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al.*, | Case No.: 22-17842-PDR |
| Debtors.[1] | (Jointly Administered) |

_____/

## **DEBTORS' SECOND AMENDED JOINT PLAN OF LIQUIDATION**

**LATHAM & WATKINS LLP**
George A. Davis (admitted *pro hac vice*)
Tianjiao ("TJ") Li (admitted *pro hac vice*)
Brian S. Rosen (admitted *pro hac vice*)
Jonathan J. Weichselbaum (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, NY 10020
Telephone:  (212) 906-1200
Email:  george.davis@lw.com
        tj.li@lw.com
        brian.rosen@lw.com
        jon.weichselbaum@lw.com

**LATHAM & WATKINS LLP**
Andrew D. Sorkin (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone:  (202) 637-2200
Email:  andrew.sorkin@lw.com

**LATHAM & WATKINS LLP**
Whit Morley (admitted *pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:  whit.morley@lw.com

**BERGER SINGERMAN LLP**
Jordi Guso
Florida Bar No. 863580
Michael J. Niles
Florida Bar No. 107203
1450 Brickell Avenue, Suite 1900
Miami, FL 33131
Telephone:  (305) 755-9500
Email:  jguso@bergersingerman.com
        mniles@bergersingerman.com

*Co-Counsel for the Debtors*
Dated: September 15, 2023

---

[1] The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("Vital Pharmaceuticals") (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC ("Quash Seltzer") (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

## TABLE OF CONTENTS

**Page**

**ARTICLE I. DEFINITIONS AND INTERPRETATION** .......................................... 1

    A.     Definitions. .......................................................................................... 1

    B.     Interpretation; Application of Definitions and Rules of Construction. ............... 15

    C.     Controlling Document. ......................................................................... 15

**ARTICLE II. ADMINISTRATIVE EXPENSE, PRIORITY & DIP CLAIMS** ................. 16

    A.     Administrative Expense Claims. ............................................................. 16

    B.     Fee Claims. ....................................................................................... 16

    C.     Priority Tax Claims. ............................................................................ 17

    D.     DIP Claims. ...................................................................................... 18

**ARTICLE III. CLASSIFICATION OF CLAIMS AND INTERESTS** .............................. 18

    A.     Classification in General. ..................................................................... 18

    B.     Formation of Debtor Groups for Convenience Only. .................................. 18

    C.     Summary of Classification. ................................................................... 19

    D.     Special Provisions Governing Unimpaired Claims. .................................... 19

    E.     Elimination of Vacant Classes. .............................................................. 19

    F.     Voting Classes; Presumed Acceptance by Non-Voting Classes. ....................... 20

    G.     Voting Classes; Acceptance and Rejection. ............................................... 20

    H.     Confirmation Pursuant to Section 1129(a)(10) and 1129(b) of the Bankruptcy Code. ................................................................................ 20

    I.     Nonconsensual Confirmation. ............................................................... 20

    J.     Subordinated Claims. .......................................................................... 21

    K.     Single Satisfaction of Claims. ............................................................... 21

**ARTICLE IV. TREATMENT OF CLAIMS AND INTERESTS** ..................................... 21

    A.     Other Secured Claims (Class 1). ............................................................ 21

    B.     Other Priority Claims (Class 2). ............................................................ 22

    C.     Allowed General Unsecured Claims (Class 3). .......................................... 22

    D.     Intercompany Claims (Class 4). ............................................................ 23

    E.     Other Subordinated Claims (Class 5). ..................................................... 23

    F.     Existing Equity Interests (Class 6). ........................................................ 23

**ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN** ............................... 23

    A.     Joint Chapter 11 Plan. ........................................................................ 23

    B.     Corporate Action. .............................................................................. 24

### TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---|
| **ARTICLE VI. LIQUIDATING TRUST** | | 24 |
| A. | Establishment of the Liquidating Trust. | 24 |
| B. | Purpose of the Liquidating Trust. | 24 |
| C. | Liquidating Trust Assets. | 25 |
| D. | Non-Transferability of Liquidating Trust Interests. | 26 |
| E. | Administration of Liquidating Trust. | 26 |
| F. | Liquidating Trust Oversight Committee | 26 |
| G. | Liquidating Trustee's Conflict of Interest. | 27 |
| H. | Liquidating Trustee. | 28 |
| I. | Cash Investments. | 30 |
| J. | No Revesting of Liquidating Trust Assets. | 30 |
| K. | Distribution of Liquidating Trust Assets. | 30 |
| L. | Liquidating Trust Mechanics. | 31 |
| M. | Tax Reporting. | 32 |
| N. | Dissolution. | 33 |
| O. | Post-Effective Date Reporting. | 34 |
| P. | Effectuating Documents; Further Transactions. | 34 |
| Q. | Withholding and Reporting Requirements. | 34 |
| R. | Exemption From Certain Transfer Taxes. | 35 |
| S. | Preservation of Rights of Action. | 35 |
| T. | Closing of the Chapter 11 Cases. | 36 |
| U. | Notice of Effective Date. | 36 |
| **ARTICLE VII. CORPORATE GOVERNANCE** | | 36 |
| A. | Corporate Form. | 36 |
| B. | Post-Effective Date Governance of the Debtors. | 36 |
| C. | Corporate Existence. | 37 |
| D. | Certificates of Formation and By-Laws. | 37 |
| **ARTICLE VIII. DISTRIBUTIONS** | | 38 |
| A. | Distributions Generally. | 38 |
| B. | Distribution Record Date. | 38 |
| C. | Date of Distributions. | 38 |
| D. | Reserve on Account of Disputed Claims. | 38 |

## TABLE OF CONTENTS
(continued)

**Page**

|  |  |  |
|---|---|---|
| E. | Delivery of Distributions & Unclaimed Property. | 39 |
| F. | Manner of Distribution. | 40 |
| G. | No Postpetition Interest on Claims. | 40 |
| H. | Minimum Cash Distributions. | 40 |
| I. | Setoffs and Recoupments. | 40 |
| J. | Allocation of Distributions Between Principal and Interest. | 41 |
| K. | Payment of Disputed Claims. | 41 |

**ARTICLE IX. PROCEDURES FOR DISPUTED CLAIMS** ........... 41

| A. | Allowance of Claims. | 41 |
| B. | Objections to Claims. | 41 |
| C. | Estimation of Claims. | 42 |
| D. | No Distributions Pending Allowance. | 42 |
| E. | Resolution of Claims. | 42 |
| F. | Disallowed Claims. | 42 |
| G. | Claims Paid and Payable by Third Parties. | 43 |
| H. | Amendments to Proofs of Claim. | 43 |

**ARTICLE X. EXECUTORY CONTRACTS** .......... 43

| A. | Rejection of Executory Contracts. | 43 |
| B. | Cure of Defaults for Assumed Executory Contracts. | 43 |
| C. | Claims Based Upon Rejection of Executory Contracts. | 44 |
| D. | Modifications, Amendments, Supplements, Restatements, or Other Agreements. | 44 |
| E. | Reservation of Rights. | 45 |
| F. | Insurance Policies. | 45 |
| G. | Survival of Debtors' Indemnification Obligations. | 46 |

**ARTICLE XI. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** .......... 46

| A. | Conditions Precedent to the Effective Date. | 46 |
| B. | Waiver of Conditions Precedent. | 47 |
| C. | Effect of Failure of Conditions to Effective Date. | 47 |

**ARTICLE XII. EFFECT OF CONFIRMATION** .......... 47

| A. | Vesting of Assets. | 47 |
| B. | Release of Liens. | 47 |

## TABLE OF CONTENTS
(continued)

**Page**

C.    Binding Effect. ........................................................... 48

D.    Sale Order. ................................................................ 48

E.    Term of Injunctions or Stays. ................................... 48

F.    Compromise and Settlement. ................................... 48

G.    Debtor Release. ......................................................... 48

H.    Releases by Holders of Claims and Interests .......... 50

I.    Exculpation. .............................................................. 51

J.    Injunctions. ............................................................... 53

K.    Gatekeeper Provision. .............................................. 53

**ARTICLE XIII. RETENTION OF JURISDICTION** ........ 54

**ARTICLE XIV. MISCELLANEOUS PROVISIONS** ........ 56

A.    Payment of Statutory Fees. ...................................... 56

B.    Post-Confirmation Reporting. .................................. 56

C.    Substantial Consummation. ..................................... 56

D.    Amendments. ............................................................ 56

E.    Revocation or Withdrawal of the Plan. .................... 57

F.    Severability of Plan Provisions Upon Confirmation. ......... 57

G.    Governing Law. ........................................................ 57

H.    Time. ......................................................................... 58

I.    Additional Documents. ............................................. 58

J.    Dates of Actions to Implement the Plan. ................. 58

K.    Immediate Binding Effect. ....................................... 58

L.    Deemed Acts. ........................................................... 59

M.    Successor and Assigns. ............................................ 59

N.    Solicitation of the Plan. ........................................... 59

O.    Plan Supplement. ...................................................... 59

P.    Entire Agreement. ..................................................... 59

Q.    Exhibits to Plan. ....................................................... 60

R.    Notices. ..................................................................... 60

.

Each of (i) Vital Pharmaceuticals, Inc., (ii) Bang Energy Canada, Inc., (iii) JHO Intellectual Property Holdings, LLC, (iv) JHO Real Estate Investment, LLC, (v) Quash Seltzer, LLC, (vi) Rainbow Unicorn Bev LLC and (vii) Vital Pharmaceuticals International Sales, Inc. (each a "Debtor" and collectively, the "Debtors") proposes the following joint chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the means set forth in Article I.A. below.

Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. The Debtors consummated the Sale Transaction in accordance with the Sale Order. The Debtors are liquidating and winding down their Estates.

This Plan reflects the terms of a global settlement between the Debtors, Creditors' Committee, certain Prepetition Lenders, Prepetition Agent, certain DIP Lenders, DIP Agent, Monster, MEC, MBC and OBI as memorialized in the *Settlement Term Sheet* dated June 28, 2023 [ECF No. 1548], as approved by the Court on July 14, 2023 [ECF No. 1644].

## ARTICLE I.
## DEFINITIONS AND INTERPRETATION

### A.    Definitions.

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

(1)    "*Acquired Causes of Action*" means any Cause of Action sold, transferred and assigned by the Debtors to the Purchaser pursuant to, and in accordance with, the Asset Purchase Agreement.

(2)    "*Administrative Expense Claim*" means any Claim (other than an Intercompany Claim) for costs and expenses of administration during the Chapter 11 Cases pursuant to sections 328, 330, 331, 363, 365, 503(b), 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises); (b) Fee Claims; (c) Section 503(b)(9) claims; and (d) all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1-1401.

(3)    "*Administrative Expense Claims Bar Date*" means October 26, 2023.

(4)    "*Administrative Expense Claims Bar Date Order*" means the *Order Granting Debtors' Expedited Motion to Fix Bar Date for Filing Applications Seeking Administrative Expenses and to Designate Form and Manner of Notice of Bar Date* [ECF No.___].

(5)    "*Administrative Expense Claims Objection Bar Date*" means the first Business Day that is one hundred eighty (180) calendar days following the Effective Date, except as otherwise specifically set forth in the Plan; *provided that*, the Administrative Claims Objection Bar Date may

be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Liquidating Trustee after notice and a hearing.

(6)    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

(7)    "*Allowed*" means with reference to any Claim (i) any Claim against the Debtors that has been listed in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (ii) any Claim listed on the Schedules or included in a timely filed proof of Claim, as to which no objection to allowance has been, or subsequently is, interposed in accordance with Article IX.B. of the Plan or prior to the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such Final Order is in favor of the respective holder, (iii) any Claim expressly allowed by a Final Order or pursuant to the terms of the Plan, or (iv) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors under this Plan.

(8)    "*Asset Purchase Agreement*" means that certain Asset Purchase Agreement, dated June 28, 2023 by and among each of the Debtors, as sellers, Blast Asset Acquisition, LLC, as buyer, and Monster Energy Company (solely for purposes of Section 7.16 of the Asset Purchase Agreement) and Monster Beverage Corporation (solely for purposes of Sections 7.16 and 1016 of the Asset Purchase Agreement), inclusive of the terms of the Side Letter Agreement dated as of July 10, 2023, entered into by and between certain of the Debtors and Blast Asset Acquisition, LLC, pursuant to Section 10.1 of the Asset Purchase Agreement attached to the *Notice of Auction Cancellation and Successful Bidder* filed on the docket on June 28, 2023 [ECF No. 1546].

(9)    "*Avoidance Actions*" means those actual and/or potential claims and causes of action under sections 502(d), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code or state law equivalents.

(10)    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended from time to time, as applicable in the Chapter 11 Cases.

(11)    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Chapter 11 Cases under section 151 of title 28 of the United States Code.

(12)    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated by the United States Supreme Court under 28 U.S.C. § 2075, the Local Rules of the Bankruptcy Court, and general orders and chambers procedures of the Bankruptcy Court, each as amended to be applicable to the Chapter 11 Cases.

(13)    "*Bar Date Order*" means that certain *Notice of Chapter 11 Bankruptcy Case* dated as of October 14, 2022 [ECF No. 114], establishing December 19, 2022 as the general bar date for filing proofs of Claim in the Chapter 11 Cases.

2

(14)    "*Bidding Procedures Order*" means that *Order (I) Approving Bidding Procedures, (II)* Authorizing *The Debtors to Provide Bid Protections, and (III) Granting Related Relief* dated February 24, 2023 [ECF No. 854].

(15)    "*Business Day*" means any day, other than a Saturday, a Sunday, a "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)), or any other day on which banking institutions in Miami, Florida are required to close by law or executive order.

(16)    "*Buyer*" means Blast Asset Acquisition LLC in its capacity as buyer under the Asset Purchase Agreement.

(17)    "*California District Court*" means the United States District Court for the Central District of California.

(18)    "*California District Court Action*" means the action involving Vital Pharmaceuticals, Inc., MEC, and John H. "Jack" Owoc filed in the California District Court, captioned *Monster Energy Co. v. Vital Pharmaceuticals, Inc.*, Case No. 18-cv-1882 (C.D. Cal., filed Sept. 4, 2018), including the appeals thereof and any other related Proceedings.

(19)    "*California District Court Action Allowed Unsecured Claim*" means an allowed general unsecured claim in the Chapter 11 Cases in favor of MEC in an amount equal to (i) $292,939,761.00, minus the amount of any remittitur granted by the California District Court pursuant to any ruling on the Seller Post-Verdict Motion (or, in the case of a judgment notwithstanding the verdict in favor of Vital Pharmaceuticals, Inc. or a grant of a new trial, minus the entire amount), plus accrued interest (if any) until the Petition Date, plus (ii) fifty percent (50%) of any additional award as shall be determined by the California District Court, including, pursuant to any ruling on the MEC Post-Verdict Motion, plus accrued interest until the Petition Date.

(20)    "*Cash*" means legal tender of the United States of America.

(21)    "*Carve-Out Escrow*" means $20,050,000 in proceeds of the Sale Transaction deposited by the Debtors in a segregated account in accordance with the Sale Order and the Final DIP Order, which shall be used by the Debtors and the Liquidating Trustee solely to pay Allowed Fee Claims.

(22)    "*Causes of Action*" means any action, Claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including, without limitation, under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  For the avoidance of doubt, Causes of Action includes: (i) Avoidance Actions; (ii) any right of setoff, counterclaim or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity; (iii) the right to object to Claims or Interests; (iv) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set

3

forth in section 558 of the Bankruptcy Code; and (v) any Claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar Claims.

(23)    "*Chapter 11 Cases*" means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on October 10, 2022 under Case No. 22-17842-PDR.

(24)    "*Chief Transformation Officer*" means John DiDonato, Huron Consulting Group, LLC ("HCG"), and the other HCG personnel assisting John DiDonato in carrying out his duties and responsibilities pursuant to a Final Order of the Bankruptcy Court granting the HCG retention application [ECF No. 395].

(25)    "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

(26)    "*Claims Objection Bar Date*" means the first Business Day that is one hundred eighty (180) calendar days after the Effective Date; *provided that*, the Claims Objection Bar Date may be extended pursuant to an order of the Bankruptcy Court upon a motion filed by the Liquidating Trustee.  For the avoidance of doubt, the Claims Objection Bar Date is separate from the Administrative Expense Claims Bar Date.

(27)    "*Class*" means any group of Claims or Interests classified pursuant to <u>Article III</u> of the Plan.

(28)    "*Closing*" has the meaning given to such term in Section 4.1 of the Asset Purchase Agreement.

(29)    "*Closing Date*" has the meaning given to such term in Section 4.1 of the Asset Purchase Agreement.

(30)    "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

(31)    "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

(32)    "*Confirmation Hearing*" means the hearing to be held by the Bankruptcy Court regarding Confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

(33)    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan.

(34)    "*Consent Right Parties*" means the Creditors' Committee, the DIP Agent, MBC, MEC and OBI.

(35)    "*Consummation*" means the occurrence of the Effective Date of the Plan.

(36)    "*Creditors' Committee*" means the statutory committee of unsecured creditors appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy

4

Code, as the same may be reconstituted from time to time and its members, but only in such members' capacity as members of the Creditors' Committee.

(37)    "*D&O Policy*" means any insurance policy for directors, members, trustees, and officers liability maintained by the Debtors as of the Effective Date.

(38)    "*Debtor Released Parties*" means (i) the DIP Lenders; (ii) DIP Agent; (iii) the Prepetition Secured Parties; (iv) the Buyer, MBC and MEC; (v) OBI; (vi) the Creditors' Committee; (vii) with respect to each of the foregoing Persons in clauses (i) through (vi), such Persons' respective predecessors, successors, assigns, direct and indirect subsidiaries, and affiliates, current and former officers, directors, principals, shareholders, members, partners, managers, employees, agents, financial advisors, attorneys; and (viii) the Debtors' current and former officers, directors, managers, attorneys', accountants, investment bankers, investment managers, investment advisors, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, in each case in their capacity as such; *provided*, however, that notwithstanding anything in this Plan to the contrary, each of the Excluded Parties, in any capacity, shall not be a Debtor Released Party.

(39)    "*Debtors*" means (i) Vital Pharmaceuticals, Inc., (ii) Bang Energy Canada, Inc., (iii) JHO Intellectual Property Holdings, LLC, (iv) JHO Real Estate Investment, LLC, (v) Quash Seltzer, LLC, (vi) Rainbow Unicorn Bev LLC, and (vii) Vital Pharmaceuticals International Sales, Inc.

(40)    "*Deficiency Claim*" means a General Unsecured Claim for the difference between (a) the aggregate amount of an Allowed Secured Claim, and (b) the value received on account of such Claim from the proceeds of the Sale Transaction.

(41)    "*DIP Agent*" has the meaning set forth in the Final DIP Order.

(42)    "*DIP Cash Paydown*" means Cash proceeds of the Sale Transaction in the amount $269,000,000 paid to the DIP Agent for application to the DIP Claim in accordance with the DIP Credit Agreement on the Closing Date from the proceeds of the Sale Transaction.

(43)    "*DIP Claim*" means any Claim of the DIP Lenders arising under the DIP Credit Agreement, the DIP Documents, or the Final DIP Order.

(44)    "*DIP Collateral*" has the meaning set forth in the Final DIP Order.

(45)    "*DIP Credit Agreement*" means that certain *Superpriority Secured Debtor-In-Possession Credit Agreement* dated as of October 18, 2022, as amended, supplemented, or otherwise modified, by and among, Vital Pharmaceuticals, Inc., as borrower, its Affiliates and Subsidiaries identified therein as guarantors, and the DIP Lenders and the DIP Agent.

(46)    "*DIP Deficiency Claim*" means the Deficiency Claim of the DIP Lenders on account of the DIP Claim in the amount of $48 million plus accrued interest through the Effective Date, which is classified and treated as an Allowed Class 3 Claim.

(47)    "*DIP Documents*" has the meaning set forth in the Final DIP Order.

5

(48)    "*DIP Lenders*" has the meaning set forth in the Final DIP Order.

(49)    "*DIP* Obligations" has the meaning set forth in the Final DIP Order.

(50)    "*Disclosure Statement*" means the Disclosure Statement for this Plan, which is prepared and distributed in accordance with sections 1125, 1126(b) and/or 1145 of the Bankruptcy Code, Bankruptcy Rule 3018 and/or other applicable law.

(51)    "*Disputed Claim*" means with respect to a Claim, any such Claim (i) to the extent neither Allowed nor disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code, or (ii) for which a Proof of Claim has been filed, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation before the Confirmation Date in accordance with the Plan, which objection or request for estimation has not been withdrawn or determined by a Final Order.

(52)    "*Distribution Date*" means a date or dates, including the Initial Distribution Date, as determined by the Liquidating Trustee in accordance with the terms of the Plan, on which the Liquidating Trustee makes a distribution to holders of Allowed Claims.

(53)    "*Distribution Record Date*" means the Effective Date of the Plan.

(54)    "*Effective Date*" means the date on which all conditions to the effectiveness of the Plan set forth in <u>Article XI</u> of the Plan have been either satisfied or waived in accordance with the terms of the Plan.

(55)    "*Enjoined Parties*" means all Entities who have held, hold, or may hold Claims, Interests, Causes of Action, or liabilities that: (i) are subject to compromise and settlement pursuant to the terms of the Plan; (ii) have been released pursuant to Article XII.G. of the Plan; (iii) have been released pursuant to Article XII.H. of the Plan; (iv) are subject to exculpation pursuant to Article XII.I. of the Plan; or, (v) are otherwise discharged, satisfied, stayed or terminated pursuant to the terms of the Plan.

(56)    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

(57)    "*Estate*" or "*Estates*" means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

(58)    "*Excluded Assets*" has the meaning set forth in the Asset Purchase Agreement and shall include Retained Causes of Action.

(59)    "*Exculpated Parties*" means, collectively, each in their capacities as such: (i) the Debtors; (ii) the Estates; (iii) the DIP Lenders; (iv) the DIP Agent; (v) the Prepetition Secured Parties; (vi) the Buyer, MBC and MEC; (vii) OBI; (viii) the Creditors' Committee; (ix) with respect to each of the foregoing Persons in clauses (i) through (viii), such Persons' respective predecessors, successors, assigns, direct and indirect subsidiaries, and affiliates; (x) with respect to each of the foregoing Persons in clauses (i) through (vii), such Persons' current and former officers, directors, principals, shareholders, members, partners, managers, employees, agents, financial advisors, attorneys, Chief Transformation Officer, interim officers, accountants,

investment bankers, investment managers, investment advisors, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, in each case in their capacity as such and whether currently serving or having previously served post-petition; *provided, however*, that notwithstanding anything in this Plan to the contrary, each of the Excluded Parties, in any capacity, shall not be an Exculpated Party.

(60)    "*Excluded Parties*" means each of John "Jack" H. Owoc, Megan E. Owoc, each of their family members, any of their Affiliates, and any trusts or other estate planning vehicles of which any of the foregoing are trustees or beneficiaries, in each case that are not Selling Entities, including, but not limited to, Entourage IP Holdings, LLC, Cognitive IP Holdings, LLC, Fun Energy, LLC, Bang Energy Family, LLC, Bang Gyms, LLC, Candemonium, LLC, Captain Crunch Fishing, LLC, Liquid IP Holdings, LLC, The Fixx, LLC, Bang Vapes, LLC, Ultra Experiences, LLC, Bang Foods, LLC, Energy Train, LLC, VPX Swim and Sports Gear, LLC, Stoked Seltzer, LLC, Stoked Brands, LLC, Birth Right, LLC, Bang Energy International, LLC, JHO GA-1 Investment, LLC, JHO NV-1 Investment, LLC, Sheridan Real Estate Investment A, LLC, Sheridan Real Estate Investment B, LLC and Sheridan Real Estate Investment C, LLC.

(61)    "*Executory Contract*" means a contract or lease to which one of more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

(62)    "*Existing Equity Interests*" means any Interest in any of the Debtors held by a non-Debtor, including any common stock, preferred stock, limited liability company or membership interest, warrants, preemptive rights or other ownership interest.

(63)    "*Fee Claim*" means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtors or the Creditors' Committee pursuant to sections 327, 328, 329, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code in the Chapter 11 Cases.

(64)    "*Final DIP Order*" means that certain *Final Order (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [ECF No. 638], entered by the Bankruptcy Court in the Chapter 11 Cases on January 12, 2023.

(65)    "*Final Order*" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired, or (ii) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that no order or judgment shall fail to be a "Final Order" solely because a motion pursuant to sections 502(j) or 1144 of the

7

Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

(66)    "*General Unsecured Claim*" means any Claim against any Debtor, other than an Administrative Expense Claim, Other Priority Claim, Priority Tax Claim, Intercompany Claim or Other Subordinated Claim, which Claim, for the avoidance of doubt, is not entitled to administrative expense treatment or other priority under the Bankruptcy Code or any order of the Bankruptcy Court.

(67)    "*Governmental Authority*" means any federal, municipal, state, regional, provincial, local or foreign governmental, quasi-governmental, self-regulatory, administrative or regulatory authority, department, agency, board, bureau, commission or body (including any court, arbitral body or similar tribunal), including the Bankruptcy Court.

(68)    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

(69)    "*Impaired*" means, with respect to a Claim, Interest or Class of Claims or Interests, "*impaired*" within the meaning of section 1124 of the Bankruptcy Code.

(70)    "*Indemnification Claim*" means an Administrative Expense Claim of an Indemnitee against any Debtor for indemnification pursuant to the Debtors' corporate charters, by-laws, limited liability company agreements, memorandum and articles of association, or other organizational documents and agreements.

(71)    "*Indemnitee*" means the current and former officers, directors, agents, or employees of the Debtors entitled to indemnification from the Debtors pursuant to the Debtors' corporate charters, by-laws, limited liability company agreements, memorandum and articles of association, or other organizational documents and agreements; excluding, however, any Excluded Party.

(72)    "*Indemnity Reserve*" means Cash in the amount of $1,300,000.00, less any sums paid by the Debtors prior to the Effective Date under any indemnity obligations in favor of the Indemnitees, on account of retainers, fees or expenses to any professionals retained by the Debtors' Indemnitees.

(73)    "*Initial Distribution*" means the first distribution that either the Debtors or the Liquidating Trustee, as applicable, makes to holders of Allowed Claims.

(74)    "*Initial Distribution Date*" means the date selected by the Debtors or the Liquidating Trustee, as the case may be, on or as soon as reasonably practicable after the Effective Date.

(75)    "*Interests*" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all common units, subordinated units, incentive distribution rights, membership units, or other instruments evidencing an ownership interest in any of the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interests in a Debtor that existed immediately before the Effective Date.

8

(76)    "*Interim Compensation Procedures Order*" means the *Order Granting Ex Parte Motion To Amend* The *Interim Compensation Procedures Order,* dated December 12, 2022 [ECF No. 503].

(77)    "*Intercompany Claim*" means a Claim held by one Debtor against the other Debtor arising at any time prior to the Effective Date.

(78)    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

(79)    "*Liquidating Trust*" means the trust created on the Effective Date in accordance with the provisions of Article VI of the Plan and a Liquidating Trust Agreement, for the benefit of holders of Allowed Claims, as determined by the Liquidating Trustee consistent with the purposes of any such Liquidating Trust pursuant to Article VI of the Plan.

(80)    "*Liquidating Trust Agreement*" means an agreement setting forth the terms and conditions governing the administration of a Liquidating Trust, which shall be entered into prior to the establishment of such Liquidating Trust and pursuant to which a Liquidating Trustee shall manage and administer Liquidating Trust Assets and distribute the Recovery Proceeds in accordance with this Plan.

(81)    "*Liquidating Trust Assets*" means the Excluded Assets of a Debtor to be transferred to the Liquidating Trust which shall be segregated between the Excluded Assets available under the Plan for those holders of (i) Allowed Class 3 Claims and (ii) Allowed Administrative Expense Claims which remain unpaid as of the Effective Date.

(82)    "*Liquidating Trust Beneficiaries*" means those holders of (i) Allowed Class 3 Claims against a Debtor and (ii) Allowed Administrative Expense Claims against a Debtor which remain unpaid as of the Effective Date.

(83)    "*Liquidating Trust Interests*" means the non-certificated beneficial interests of the Liquidating Trust allocable to Liquidating Trust Beneficiaries in accordance with the terms, conditions, and priorities set out in the Plan and the Liquidating Trust Agreement entitling each Liquidating Trust Beneficiary to distributions or proceeds (if any) of the Liquidating Trust.

(84)    "*Liquidating Trustee*" means the Person who, as of the Effective Date, shall exercise the authority set forth in Article VI of the Plan pursuant to the Liquidating Trust Agreement in accordance with the terms of the Plan.

(85)    "*MBC*" means Monster Beverage Corporation.

(86)    "*MEC*" means Monster Energy Company.

(87)    "*MEC Post-Verdict Motion*" means that certain Plaintiff Monster Energy Company's Post-*Verdict Motion for Equitable Relief, Fees, and Costs* filed at docket number 928 by MEC that is pending before the court in the California District Court Action.

(88)    "*OBI*" means Orange Bang, Inc.

(89)    "*OBI/Monster Matter*" means the action including Vital Pharmaceuticals, Inc., JHO Intellectual Property Holdings, LLC, OBI, and MEC filed in the United States District Court for the Central District of California, captioned *Vital Pharms., Inc. and JHO Intellectual Prop. Holdings, LLC v. Orange Bang, Inc. and Monster Energy Co.*, Case No. 5:20-cv-1464, including the related arbitration proceedings and ruling, judgment, and appeals and other related Proceedings.

(90)    "*OBI/Monster Matter Allowed Unsecured Claim*" means an allowed general unsecured claim in the Chapter 11 Cases jointly in favor of MEC and OBI in the amount of $216,131,658.35, plus accrued interest until the Petition Date.

(91)    "*Orange Bang Trademark License Action*" means the adversary proceeding filed in the Bankruptcy Case by the Debtor Entities Vital Pharmaceuticals, Inc. and JHO Intellectual Property Holdings, LLC against OBI and MEC, captioned *Vital Pharmaceuticals, Inc. and JHO Intellectual Property Holdings, LLC v. Orange Bang, Inc. and Monster Energy Company*, Bankr. Adv. Pro. No. 23-01031, including the related Proceeding pending in the United States District Court for the Southern District of Florida, Case No. 23-cv-60599, the related Proceeding pending in the United States District Court for the Central District of California, Case No. 23-cv03862, and any other related Proceedings.

(92)    "*Other Secured Claim*" means a Secured Claim other than the DIP Claims.

(93)    "*Other Subordinated Claims*" means any Claim, (i) of any Person or Entity that is liable with the respective Debtor on or has secured the Claim of another creditor to the extent that such co-obligor's Claim is for indemnity, contribution, or reimbursement and is not Allowed on or before the Confirmation Date and which such Claim has not been paid pursuant to section 509(b) of the Bankruptcy Code, (ii) any Claim for penalties or punitive damages and any other Claim of the type described in section 726(a)(4) of the Bankruptcy Code (and notwithstanding the general inapplicability of chapter 7 of the Bankruptcy Code), including any lien securing such Claim, (iii) any Claim subordinated under section 510 of the Bankruptcy Code and any lien securing such Claim, or (iv) any Claim subordinated per the terms of the Plan, the Settlement Agreement, or otherwise by Final Order of the Bankruptcy Court.

(94)    "*Oversight Committee*" shall have the meaning ascribed to such term as set forth in Article VI.F. of the Plan.

(95)    "*Person*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

(96)    "*Petition Date*" means October 10, 2022.

(97)    "*Plan*" means this joint chapter 11 plan of liquidation, including the exhibits hereto and the Plan Supplement, as the same may be amended or modified from time to time by the Debtors with the consent of the Consent Right Parties in accordance with Article XIV.D. of the Plan.

(98)    "*Plan Supplement*" means the compilation of documents containing, among other things, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code and filed pursuant to Article XIV.O. of the Plan; *provided that*, through the

10

Effective Date, the Debtors shall have the right, with the consent of the Consent Right Parties, to amend any schedules, exhibits, or amendments to any of the documents contained in, and exhibits to, the Plan Supplement.  The Plan Supplement shall include: (i) the identity of the Liquidating Trustee and the terms of his or her compensation; (ii) the Liquidating Trustee Agreement; (iii) the list of Retained Causes of Action; (iv) the list of Assumed Contracts and Leases; and (v) the Wind-Down Budget.

(99)    "*Post Confirmation Professionals*" means attorneys, accountants and other professionals retained by the Liquidating Trustee pursuant to Article VI.H.(6) of the Plan.

(100)    "*Post-Verdict* Motions" means, collectively, the MEC Post-Verdict Motion and the Seller Post-Verdict Motion.

(101)    "*Prepetition Agent*" means Truist Bank as administrative agent under the Prepetition Credit Agreement.

(102)    "*Prepetition Credit Agreement*" means the Amended and Restated Revolving Credit and Term Loan Agreement, dated as of August 14, 2020 (as amended and otherwise modified from time to time prior to the Petition Date), among, *inter alia*, the Borrower, the guarantors party thereto, the lenders party thereto and Truist Bank, in its capacity as Prepetition Agent.

(103)    "*Prepetition Collateral*" has the meaning set forth in the Final DIP Order.

(104)    "*Prepetition Facility Obligations*" means the "Obligations" under and as defined in the Prepetition Credit Agreement.

(105)    "*Prepetition Lenders*" means the "Lenders" under and as defined in the Prepetition Credit Agreement.

(106)    "*Prepetition Secured Parties*" has the meaning set forth in the Final DIP Order.

(107)    "*Priority Tax Claim*" means any secured or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

(108)    "*Pro Rata*" means the proportion that an Allowed Claim (i) in a particular Class bears to the aggregate amount of all Allowed Claims and Disputed Claims within such Class, or (ii) in a particular group of Classes bears to the aggregate amount of all Allowed Claims and Disputed Claims within such group of Classes.

(109)    "*Proceeding*" means any action, suit, arbitration, proceeding (including any civil, criminal, administrative, investigative or appellate proceeding or any informal proceeding) or investigation pending or being heard by or before, or otherwise involving, any Governmental Authority, arbitrator, arbitration panel, advertising self-regulatory body or any other Person.

(110)  "*Professional Fee Escrow Account*" means an account established by the Debtors or the Liquidating Trustee, as applicable, for purposes of maintaining the Professional Fee Escrow Amount.

(111)  "*Professional Fee Escrow Amount*" means Cash in the amount of (i) the Carve-Out Escrow, plus (ii) any additional Cash necessary to pay all unpaid Fee Claims through the Effective Date, including estimates of fees incurred by Retained Professionals through the Effective Date that have not yet been invoiced.

(112)  "*Proof of Claim*" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

(113)  "*Purchase Price*" has the meaning set forth in Section 3.2 of the Asset Purchase Agreement.

(114)  "*Recovery Proceeds*" means the total distributable value of the Excluded Assets distributed by the Liquidating Trustee from time to time in accordance with the Plan.

(115)  "*Released Parties*" means, collectively, and in each case solely in their capacities as such: (i) the Debtors; (ii) the Estates; (iii) the DIP Lenders (iv) the DIP Agent; (v) the Prepetition Secured Parties; (vi) the Creditors' Committee (vii) the Buyer, MBC and MEC; (viii) OBI; (ix) the Releasing Parties; and (x) with respect to each of the foregoing Persons in clauses (i) through (ix), each of their affiliates, predecessors, successors, assigns, direct and indirect subsidiaries, affiliated investment funds or investment vehicles, managed accounts, funds and other entities, investment advisors, subadvisors and managers with discretionary authority; and (xii) with respect to each of the foregoing Persons in clauses (i) through (xi), each of their respective current and former officers and directors, principals, equity holders, members, partners, managers, employees, subcontractors, agents, financial advisors, attorneys, Chief Transformation Officer, accountants, investment bankers, consultants, representatives, and other professionals, and such Person's respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such; *provided, however,* that notwithstanding anything in this Plan to the contrary, none of the Excluded Parties in any capacity, shall be a Released Party.

(116)  "*Releasing Parties*" means, collectively, and in each case solely in their capacity as such: (i) the holders of all Claims that vote to accept the Plan; (ii) the holders of Claims who are entitled to vote on the Plan and abstain from voting on the Plan and who do not affirmatively opt out of the releases provided by the Plan on the applicable Ballot indicating that they opt not to grant the releases provided in the Plan; (iii) the holders of all Claims and Interests who receive a Notice of Non-Voting Status and who do not affirmatively opt out of the releases provided by the Plan by indicating on the applicable Opt-Out Form that they opt not to grant the releases provided in the Plan; and (iii) the Released Parties.

(117)  "*Retained Causes of Action*" means all Causes of Action of the Debtors or their Estates other than (i) Acquired Causes of Action, and (ii) any Cause of Action released, settled or compromised pursuant to the Settlement Agreement, Asset Purchase Agreement, or the Plan. Retained Causes of Action shall be identified in the Plan Supplement.

(118)   "*Retained Professional*" means an Entity: (i) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code; or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

(119)   "*Residual Cash*" means the Debtors' cash, including, without limitation, Cash proceeds of the Excluded Assets, less (i) amounts reserved for the administration of the Liquidating Trust from and after the Effective Date (including the fees and expenses of the Liquidating Trustee and its professionals) in accordance with the Wind-Down Budget, (ii) any Cash proceeds of the Sale Transaction required to be reserved and/or distributed to creditors pursuant to the Sale Order, and (iii) amounts required to make distributions on account of, or establish reserves for, Allowed Administrative Expense Claims, Allowed Fee Claims, Allowed Priority Tax Claims, Allowed Other Secured Claims, and Allowed Other Priority Claims, in accordance with this Plan.

(120)   "*Sale Order*" means that certain *Amended Order (I) Authorizing and Approving (A) The Sale of Substantially All of The Debtors' Assets Free and Clear of All Liens, Claims, And Encumbrances and (B) The Assumption and Assignment of Certain Executory Contracts and Unexpired Leases In Connection Therewith, and (II) Granting Related Relief* [ECF No. 1658].

(121)   "*Sale Proceeds*" means all proceeds from the Sale Transaction.

(122)   "*Sale Transaction*" means the sale of all or substantially all of the Debtors' assets pursuant to the Asset Purchase Agreement and Sale Order.

(123)   "*Schedules*" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms and Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time.

(124)   "*Secured Claim*" means a Claim to the extent (i) secured by property of the Estate, with the amount of such Claim being equal to or less than the value of such property (a) as set forth in the Plan, (b) as agreed to by the holder of such Claim and the Debtors or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

(125)   "*Seller Post-Verdict Motion*" means that certain *Defendant Vital Pharmaceuticals Inc.'s Notice of Motion and Motion for JNOV, New Trial, and Remittitur* filed at docket number 921 that is pending in the California District Court Action.

(126)   "*Selling Entities*" has the meaning ascribed to such term in the Preamble to the Asset Purchase Agreement.

(127)   "*Settlement Agreement*" means the compromise and global settlement between the Debtors, Creditors' Committee, DIP Lenders, DIP Agent, Prepetition Lenders, Prepetition Agent, and MEC, MBC, and OBI, as memorialized in the *Settlement Term Sheet* dated June 28, 2023 [ECF No. 1548], as approved by the Court on July 14, 2023 [ECF No. 1644].

13

12218776-23

(128)  "*Settlement Parties' Allowed General Unsecured Claims*" means, collectively: (i) the DIP Deficiency Claim; (ii) the California District Court Action Allowed Unsecured Claim; (iii) the Trade Dress Action Allowed Unsecured Claim; and (iv) the 50% of the OBI/Monster Matter Allowed Unsecured Claim held by MEC.  For the avoidance of doubt, the 50% of the OBI/Monster Matter Allowed Unsecured Claim held by OBI is not a Settlement Parties' Allowed General Unsecured Claim.

(129)  "*Subordination Agreement*" has the meaning set forth in the Final DIP Order.

(130)  "*Tax Code*" means the United States Internal Revenue Code of 1986, as amended.

(131)  "*Trade Dress Action Allowed Unsecured Claim*" means the Allowed General Unsecured Claim of MEC in the amount of $58,000 as taxable litigation costs awarded to MEC and its affiliate Reign Beverage Company, LLC ("Reign") and due from Vital Pharmaceuticals, Inc. pursuant to that certain Order entered on December 17, 2021, granting the Motion for Bill of Costs filed by MEC and Reign against Vital Pharmaceuticals, Inc. in the case filed in the United States District Court for the Southern District of Florida, captioned *Vital Pharmaceuticals, Inc. v. Monster Energy Company et al.*, Case No. 0:19-cv-60809 (filed March 28, 2019)

(132)  "*Trade Secret Matters*" means the Cohen Matter, the Dees Matter, the Leopardo Matter, the Nguyen Matter, and the Troglia Matter, as those terms are defined in the Asset Purchase Agreement.

(133)  "*Trust Election Date*" means the date by which the Liquidating Trustee must, if necessary, elect to treat the relevant portion of the Liquidating Trust Assets subject to Disputed Claims as a "disputed ownership fund" pursuant to Treasury Regulation Section 1.468B-9.

(134)  "*TTAB Matter*" means the proceeding including JHO Intellectual Property Holdings, LLC and MEC filed in the United States Patent and Trademark Office before the Trademark Trial and Appeal Board (TTAB), captioned *Monster Energy Co. v. JHO Intellectual Prop. Holdings, LLC*, Cancellation No. 92070514 (TTAB, filed Feb. 5, 2019).

(135)  "*U.S. Trustee*" means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in the Southern District of Florida.

(136)  "*Unimpaired*" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

(137)  "*VPX Florida Matters*" means the actions Vital Pharmaceuticals, Inc. filed in the United States District Court for the Southern District of Florida, captioned (i) *Vital Pharmaceuticals, Inc. v. Monster Beverage Co., et al.*, No. 0:19-cv-61974 (S. D. Fla., filed Aug. 7, 2019); and (ii) *Vital Pharmaceuticals, Inc. v. Monster Beverage Corp., et al.*, No. 0:22-cv-61621 (S.D. Fla., filed Aug. 31, 2022).

(138)  "*Wind-Down Budget*" means a budget for the reasonable activities and expenses to be incurred in winding down the Chapter 11 Cases, including the liquidation of any Excluded Assets, as set forth in the Plan Supplement.

**B.    Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein and have the same meaning as "in the Plan," "of the Plan," "to the Plan," and "under the Plan," respectively.  The words "includes" and "including" are not limiting and shall be deemed to be followed by the words "without limitation."  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (iii) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  Unless otherwise specified herein, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Liquidating Debtors mean the Debtors and the Liquidating Debtors, as applicable, to the extent the context requires

**C.    Controlling Document.**

Except as otherwise set forth in the Final DIP Order, the Sale Order or herein, in the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control unless otherwise specified in such Plan Supplement document or instrument.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided*, that if there is determined to be any inconsistency between any provision of the Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

## ARTICLE II.
## ADMINISTRATIVE EXPENSE, PRIORITY & DIP CLAIMS

**A.    Administrative Expense Claims.**

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Administrative Expense Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date and (ii) the first Business Day after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; *provided that*, the Fee Claims shall receive the treatment provided in Article II.B. of the Plan; *provided further*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of operating or liquidating the business by the Debtors shall be paid by the Debtors in the ordinary course of business without the requirement of filing with the Bankruptcy Court an application seeking allowance and payment of any such liabilities, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

Except as otherwise provided by a Final Order previously entered by the Bankruptcy Court, or as provided by Article II.D. hereof, requests for payment of Administrative Expense Claims, other than requests for payment of Fee Claims, must be filed and served on the Debtors no later than the Administrative Expense Claims Bar Date pursuant to the procedures specified in the Administrative Expense Claims Bar Date Order; *provided* that the Administrative Expense Claims Bar Date shall not apply to Indemnification Claims and no requests for payment in respect of such Claims need to be filed by such date.

Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Expense Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors or their property, and such Administrative Expense Claims shall be deemed compromised, settled, and released as of the Effective Date.  The Debtors or the Liquidating Trustee, as applicable, must file and serve objections to Administrative Expense Claims on or before the Administrative Expense Claims Objection Bar Date.  The Liquidating Trustee shall make distributions to the holders of Allowed Administrative Expense Claims. For the avoidance of doubt, the Administrative Expense Claims Bar Date shall not apply to any DIP Claims.

**B.    Fee Claims.**

Until the Effective Date, the Debtors are authorized to pay compensation to the Retained Professionals pursuant to, and in accordance with, the Interim Compensation Procedures Order. All final requests for payment of Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than 30 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders.  The Liquidating Debtors, through the Liquidating

16

Trustee, shall pay Fee Claims owing to the Retained Professionals in Cash and in the amount the Bankruptcy Court Allows from funds held in the Professional Fee Escrow Account, as soon as reasonably practicable after such Fee Claims are Allowed by entry of an order of the Bankruptcy Court; *provided that*, the Debtors' and the Liquidating Trustee's obligations to pay Allowed Fee Claims shall not be limited or deemed to be limited to funds held in the Professional Fee Escrow Account. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the Allowed amount of Fee Claims owing to the Retained Professionals, the Liquidating Debtors or the Liquidating Trustee shall pay such amounts from proceeds of the Sale Transaction within ten (10) Business Days of entry of the order approving such Fee Claims.

No later than the Effective Date, the Debtors or the Liquidating Trustee shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Retained Professionals and for no other Entities until all Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full in Cash to the Retained Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. No funds held in the Professional Fee Escrow Account shall be property of the Estates of the Debtors or the Liquidating Debtors. When all Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full in Cash to the Retained Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall be retained by the Liquidating Trustee as Residual Cash without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

The Retained Professionals shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date projected to be outstanding as of the anticipated Effective Date, and shall deliver such estimate no later than five Business Days prior to the anticipated Effective Date. For the avoidance of doubt, no such estimate shall be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of a Retained Professional's final request for payment of Fee Claims Filed with the Bankruptcy Court, and such Professionals are not bound to any extent by the estimates. If a Retained Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Retained Professional. The total aggregate amount so estimated to be outstanding as of the anticipated Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account; *provided that*, the Liquidating Debtors or the Liquidating Trustee, as applicable, shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

C.    **Priority Tax Claims.**

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, and release of, and in exchange for such Allowed Priority Tax Claim, shall receive on account of such Claim: (i) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of (a) the Effective Date, (b) the first Business

17

Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course; (ii) deferred Cash payments in the amount of such Allowed Claims with a present value, as of the Effective Date, that is equal to the Allowed amount of such Claims, consistent with section 1129(a)(9) of the Bankruptcy Code; or (iii) such other treatment as each holder of an Allowed Priority Tax Claim and the Liquidating Trustee shall agree; *provided, however,* that any Allowed Priority Tax Claim that has been expressly assumed by the Buyer in connection with the Sale Transaction shall not be an obligation of the Debtors.  On the Effective Date, any Liens securing any Allowed Priority Tax Claims shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act, or action, under applicable law, regulation, order or rule, or the vote, consent, authorization, or approval of any Person.

### D.    DIP Claims.

After application of the DIP Cash Paydown Amount received by the DIP Agent at Closing, the DIP Deficiency Claim is Allowed, classified and treated as a Class 3 Claim.  Effective upon payment of the DIP Cash Paydown Amount (or such lesser amount agreed to by the DIP Lenders), the Liens and security interests granted pursuant to the DIP Credit Agreement were cancelled and are of no further force and effect.  As to the Debtors, the DIP Deficiency Claim and the Prepetition Lenders' Deficiency Claim shall be Allowed, classified and treated as Class 3 Claims, and as to any non-debtor obligor under the Prepetition Credit Facility, the DIP Deficiency Claim and the Prepetition Lenders' Deficiency Claim shall be deemed Prepetition Facility Obligations.

## ARTICLE III.
## CLASSIFICATION OF CLAIMS AND INTERESTS

### A.    Classification in General.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided*, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

### B.    Formation of Debtor Groups for Convenience Only.

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, tabulating votes, and making distributions with respect of Claims against and Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of any Debtor's business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, constitute a substantive consolidation of any of the Debtors, or cause the transfer of any assets. Except as otherwise provided by or permitted under the Plan, all Debtors continue to exist as separate legal entities.

C.      **Summary of Classification.**

The following table designates the Classes of Claims against and Interests in each of the Debtors and specifies which of those Classes are: (i) Impaired or Unimpaired under the Plan; (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to accept or reject the Plan.  The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or an Interest is in a particular Class only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Fee Claims, Priority Tax Claims, and DIP Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests.  All of the potential Classes for the Debtors are set forth in the Plan.

| Class | Designation | Treatment | Entitled to Vote? |
|:-----:|:-----------:|:---------:|:-----------------:|
| 1 | Other Secured Claims | Unimpaired | No; Deemed to Accept the Plan |
| 2 | Other Priority Claims | Unimpaired | No; Deemed to Accept the Plan |
| 3 | General Unsecured Claims | Impaired | Yes; Entitled To Vote |
| 4 | Intercompany Claims | Impaired and No Distribution | No; Deemed to Accept the Plan |
| 5 | Other Subordinated Claims | Impaired and No Distribution | No; Deemed To Reject the Plan |
| 6 | Existing Equity Interests | Impaired | No; Deemed To Reject the Plan |

D.      **Special Provisions Governing Unimpaired Claims.**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of, as applicable, the Debtors or the Liquidating Trustee in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

E.      **Elimination of Vacant Classes.**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.  Any Claim or Interest in a Class that is considered vacant under the Plan shall receive no distribution.  For purposes of distributions under the Plan, all Allowed Unsecured Claims against each Debtor are treated and classified in the same class and shall receive *Pro Rata* distributions of the proceeds of Excluded Assets, without an allocation of such proceeds by Debtor.

**F.      Voting Classes; Presumed Acceptance by Non-Voting Classes.**

If a Class contains Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the holders of such Claims in such Class.

**G.      Voting Classes; Acceptance and Rejection.**

(1)      *Acceptance by Certain Impaired Classes*: Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.  An Impaired Class of Claims shall have accepted the Plan if (i) the holders of at least two-thirds (2/3) in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (ii) the holders of more than one-half (1/2) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  Holders of Claims in Class 3 will receive ballots containing detailed voting instructions.

(2)      *Deemed Accepted by Impaired and Unimpaired Classes*: Holders of Claims in Classes 1, 2 and 4 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote, and the votes of such holders will not be solicited with respect to those Claims.

(3)      *Deemed Rejection by Impaired Classes*: Holders of Claims in Class 5 and holders of Existing Equity Interests in Class 6 are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, such holders are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to those Claims.

**H.      Confirmation Pursuant to Section 1129(a)(10) and 1129(b) of the Bankruptcy Code.**

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan, with the consent of the Consent Right Parties, in accordance with Article XIV.D. of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**I.      Nonconsensual Confirmation.**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtors shall seek Confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

J.      **Subordinated Claims.**

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan, shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Reorganized Debtors, reserve the right to re-classify any Claim or Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

K.      **Single Satisfaction of Claims.**

Holders of Allowed Claims or Allowed Interests may assert such Claims against or Interests in the Debtors obligated with respect to such Claims or Interest, and such Claims and Interests shall be entitled to share in the recovery provided for the applicable Claim against or Interest in the Debtors based upon the full Allowed amount of such Claims or Interests. Notwithstanding the foregoing, the holder of such a Claim or Interest that asserts such Claim against or Interest in more than one Debtor shall be entitled only to a single distribution on account of such Claim or Interest

## ARTICLE IV.
## TREATMENT OF CLAIMS AND INTERESTS

A.      **Other Secured Claims (Class 1).**

(1)      **Classification**: Class 1 consists of the Allowed Other Secured Claims.  To the extent that Other Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 1.

(2)      **Treatment**: Except to the extent that a holder of an Allowed Other Secured Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each such holder of an Allowed Other Secured Claim shall receive, at the option of, as applicable, the Debtors or the Liquidating Trustee, in full and final satisfaction of such Allowed Other Secured Claim, (i) payment in full in Cash, payable on the later of the Effective Date and the first Business Day after thirty (30) calendar days from the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon as reasonably practical thereafter, (ii) abandonment to the holder of such Allowed Other Secured Claim of the collateral securing such Allowed Other Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code, or (iii) such other treatment necessary to satisfy section 1129 of the Bankruptcy Code.

(3)      **Voting**: Class 1 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited.

**B.     Other Priority Claims (Class 2).**

(1)     **Classification:** Class 2 consists of the Allowed Other Priority Claims.

(2)     **Treatment**: Except to the extent that a holder of an Allowed Other Priority Claim against any of the Debtors has agreed to less favorable treatment of such Allowed Other Priority Claim, each such holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, payable on or as soon as reasonably practicable after the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim, or as soon as reasonably practical thereafter.

(3)     **Voting**: Class 2 is Unimpaired, and the holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Other Priority Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited.

**C.     Allowed General Unsecured Claims (Class 3).**

(1)     **Classification**: Class 3 consists of Allowed General Unsecured Claims including the OBI/Monster Matter Allowed Unsecured Claim.

(2)     **Treatment**: Except to the extent that a holder of an Allowed Class 3 Claim, agrees to less favorable treatment: each holder of an Allowed General Unsecured Claim shall receive Liquidating Trust Interests entitling each such holder to receive its Pro Rata share of the Residual Cash, *provided, however*, that notwithstanding the foregoing, no distributions of Residual Cash or otherwise shall be made to holders of Settlement Parties' Allowed General Unsecured Claims (and such Claims shall not be considered for purposes of determining the Pro Rata share of Residual Cash to which holders of other Allowed General Unsecured Claims are entitled) unless and until: (x) in the case of the Allowed DIP Deficiency Claim, holders of Allowed General Unsecured Claims not constituting Settlement Parties' Allowed General Unsecured Claims have received distributions totaling, in the aggregate, at least (I) $5 million *less* (II) the positive difference, if any, between (A) the Debtors' good faith estimate of Residual Cash held by the Debtors as of the Effective Date and (B) $15.5 million *minus* the aggregate amount of Fee Claims for professional services rendered or costs incurred on or after the Closing Date through the Effective Date; and (y) in the case of all other Allowed Settlement Parties' Allowed General Unsecured Claims, Holders of Allowed General Unsecured Claims have received distributions totaling, in the aggregate, at least $5 million.  Distributions to Holders of Allowed General Unsecured Claims shall be made at such times and in such intervals as determined by the Liquidating Trustee.

(3)     **Voting**: Class 3 is Impaired and, the holders of Claims in this Class are entitled to vote to accept or reject the Plan.

**D.     Intercompany Claims (Class 4).**

(1)     **Classification**: Class 4 consists of Intercompany Claims against the Debtors.

(2)     **Treatment**: The holders of Intercompany Claims shall not receive or retain any property under the Plan on account of such Claims.

(3)     **Voting**: Class 4 is Impaired by the Plan.  As proponents of the Plan, the holders of Intercompany Claims are conclusively presumed to accept the Plan.

**E.     Other Subordinated Claims (Class 5).**

(1)     **Classification**: Class 5 consists of Other Subordinated Claims.

(2)     **Treatment**: Holders of Allowed Other Subordinated Claims shall not receive or retain any property under the Plan on account of such Claims.

(3)     **Voting**: Class 5 is Impaired by the Plan and the holders of the Other Subordinated Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  The holders of Subordinated Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited.

**F.     Existing Equity Interests (Class 6).**

(1)     **Classification**: Class 6 consists of Existing Equity Interests.

(2)     **Treatment**: Solely in the event that all Allowed Claims have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Existing Equity Interests may receive its amount of proceeds realized from the Liquidating Trust Assets consistent with such holder's rights of payment existing immediately prior to the Petition Date.  The Liquidating Trustee shall determine, in the Liquidating Trustee's sole discretion, whether and when, to: (i) cancel and extinguish the Existing Equity Interests; (ii) transfer the Existing Equity Interests into the Liquidating Trust; or (iii) provide other treatment for the Existing Equity Interests consistent with the terms of this Plan and the Sale Order.

(3)     **Voting**: Class 6 is Impaired by the Plan and the holders of the Existing Equity Interests are deemed to reject the Plan.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.     Joint Chapter 11 Plan.**

The Plan is a joint chapter 11 plan for each of the Debtors, with the Plan for each Debtor being non-severable and mutually dependent on the Plan for each other Debtor.  In consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action and controversies resolved pursuant to the Plan.  The

entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, Causes of Action and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and Interests is fair, equitable and is within the range of reasonableness. Distributions made to Holders of Allowed Claims are intended to be indefeasible.

### B. Corporate Action.

On or before the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan (including any action to be undertaken by, as applicable, the Debtors or Liquidating Debtors) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person. All matters provided for in the Plan involving the corporate structure of the Debtors, including but not limited to any Interest in any of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Interest holders, directors, members, managers, or officers of the Debtors or the Liquidating Trustee. On or (as applicable) before the Effective Date, the authorized officers, managers and directors of the Debtors, and the Chief Transformation Officer, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents and instruments contemplated by the Plan (or as necessary or desirable to effectuate the transactions contemplated by the Plan). The authorizations and approvals contemplated by this Article V.B. shall be effective notwithstanding any requirements under non-bankruptcy law.

### ARTICLE VI.
### LIQUIDATING TRUST

### A. Establishment of the Liquidating Trust.

On the Effective Date, the Liquidating Trust shall be established and become effective for the benefit of the Liquidating Trust Beneficiaries. The powers, authority, responsibilities, and duties of the Liquidating Trust, and the Liquidating Trustee are set forth in and shall be governed by the Plan and the Liquidating Trust Agreement. The Liquidating Trust Agreement shall provide for the distribution of the Liquidation Trust Assets to the Liquidating Trust Beneficiaries. In the event of any conflict between the terms of this Article VI and the terms of a Liquidating Trust Agreement as such conflict relates to the establishment of a Liquidating Trust, the terms of this Article VI shall govern. The Liquidating Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Liquidating Trust as a "liquidating trust" for United States federal income tax purposes.

### B. Purpose of the Liquidating Trust.

The Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement to qualify as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Rev. Proc. 94-45, 1994-2 C.B. 684, for, among other purposes, the purpose

of (i) receiving and holding the Liquidating Trust Assets; (ii) administering, disputing, objecting to, compromising, or otherwise resolving all Disputed Claims; (iii) making distributions to the Liquidating Trust Beneficiaries in accordance with this Plan and the Liquidating Trust Agreement; d (iv) maximizing recoveries for the benefit of the Liquidating Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treasury Regulation Section 301.7701-4(d). The Liquidating Trust shall not be deemed a successor in interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement. Subject to the DOF Election, the Liquidating Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes within the meaning of sections 671 through 679 of the Tax Code and, to the extent permitted by applicable law, for state and local income tax purposes, with the Liquidating Trust Beneficiaries treated as the sole grantors and owners of the Liquidating Trust. To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes). To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

### C.    Liquidating Trust Assets.

The Liquidating Trust shall consist of Liquidating Trust Assets. On the Effective Date, and in accordance with sections 1123 and 1141 of the Bankruptcy Code, all title and interest in all of the Excluded Assets, which constitute all assets of the Debtors that have not been distributed on or prior to the Effective Date or sold and conveyed pursuant to the Sale Transaction, shall irrevocably and automatically vest in the Liquidating Trust, free and clear of all liens, Claims, encumbrances and Interests (legal, beneficial or otherwise) for the benefit of the Liquidating Trust Beneficiaries. Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors shall have no interest in or with respect to the Liquidating Trust Assets or Liquidating Trust. Upon delivery of the Liquidating Trust Assets to the Liquidating Trust, the Debtors and their respective predecessors, successors and assigns, shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust in accordance with this Article VI.C. For all U.S. federal income tax purposes, and subject to the DOF Election described at Article VI.H.(8) below, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms herein as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer of such assets by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof. Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the Liquidating Trust Assets to the Liquidating Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax, to the maximum extent provided by section 1146(a) of the Bankruptcy Code. In connection with the transfer of such Liquidating Trust Assets, any attorney client privilege, work product privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trust and its representatives, and the Debtors and the Liquidating Trustee are directed to take all necessary

25

actions to effectuate the transfer of such privileges. The Liquidating Trustee shall agree to accept and hold the Liquidating Trust Assets in the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries, subject to the terms of the Plan and the Liquidating Trust Agreement. The Debtors, the Liquidating Trustee, and any party under the control of such parties will execute any documents or other instruments and shall take all other steps as necessary to cause title to the Liquidating Trust Assets to be transferred to the Liquidating Trust.

### D.    Non-Transferability of Liquidating Trust Interests.

The Liquidating Trust Interests shall be non-transferable other than if transferred by will, intestate succession or otherwise by operation of law.

### E.    Administration of Liquidating Trust.

The Liquidating Trust shall be administered by the Liquidating Trustee pursuant to a Liquidating Trust Agreement and the Plan. In the event of an inconsistency between the Plan and a Liquidating Trust Agreement as such conflict relates to anything other than the establishment of a Liquidating Trust, the Liquidating Trust Agreement shall control.

### F.    Liquidating Trust Oversight Committee

The Liquidating Trust Oversight Committee (the "**Oversight Committee**") is hereby created in accordance with the Plan. The Oversight Committee initially shall be composed three (3) members total: two (2) members chosen by the Creditors' Committee, and one (1) member chosen by MEC (each, a "**Member**," and collectively, the "**Members**"), all of whom hereby accept their appointment as Members of the Oversight Committee. The Oversight Committee may authorize its own dissolution by filing with the Bankruptcy Court an appropriate notice that its responsibilities have concluded. Unless already dissolved, the Oversight Committee shall be dissolved as of the earlier of (i) the date upon which each Member receives a distribution from the Liquidating Trust in full satisfaction of its respective Allowed Claim; or (ii) the date the Chapter 11 Cases are closed. Further provisions concerning the duties and responsibilities of the Oversight Committee are as follows:

(1)    <u>Reports to Oversight Committee</u>. Notwithstanding any other provision in the Plan, the Liquidating Trustee shall provide a report (either in writing or orally via teleconference) to the Oversight Committee on an "as needed" basis, but in no event not fewer than two (2) times per calendar year. The Oversight Committee shall keep all such information strictly confidential.

(2)    <u>Actions Requiring Approval of the Oversight Committee</u>. The Liquidating Trustee shall obtain the approval of the Oversight Committee (by at least a majority vote, which may be obtained by negative notice) prior to taking any action regarding any of the following matters:

  i.    The distribution or disposition of any assets having a valuation in excess of $250,000;

  ii.    The abandonment of any non-Cash assets having a valuation of at least $1,000,000;

iii.     The settlement, compromise, or other resolution of any Disputed Claim, wherein the Allowed amount of the asserted Claim exceeds $1,000,000;

iv.     The settlement, compromise, or other resolution of any litigation, adversary proceedings, or claims pursued by the Liquidating Trust;

v.     The exercise of any right or action set forth in the Plan or any supplement thereto that expressly requires approval of the Oversight Committee;

vi.     The borrowing of any funds by the Liquidating Trust including, but not limited to, the obtaining of litigation financing or pledge of any portion of Cash or assets, provided, however, that unanimous approval of the Oversight Committee members shall be required for the matters set forth in this Article VI.F.(2)(vi); and

vii.     Any matter which could reasonably be expected to have a material adverse effect, as determined by the Liquidating Trustee in consultation with legal counsel, on the amount of distributions to be made by the Liquidating Trust.

**G.     Liquidating Trustee's Conflict of Interest.**

The Liquidating Trustee shall disclose to the Oversight Committee any conflicts of interest (actual or potential) that the Liquidating Trustee has with respect to any matter arising during administration of the Liquidating Trust.  In the event that the Liquidating Trustee cannot take any action by reason of an actual or potential conflict of interest, the Oversight Committee, acting by majority, shall be authorized to take any such action(s) in the Liquidating Trustee's place and stead, including without limitation the retention of professionals (which may include professionals retained by the Liquidating Trustee) for the purpose of taking such actions.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this section.

To the extent required under the Plan, the Liquidating Trustee may obtain any approval or authorization required to be received from the Oversight Committee on three (3) business days' negative notice or less if the circumstances require it as determined by the Liquidating Trustee in his or her sole discretion.  The Liquidating Trustee may make requests on behalf of the Liquidating Trust for approval or authorization by the Oversight Committee in writing, which may be made in the form of an email.  In the event any Member of the Oversight Committee objects to the Liquidating Trustee's request, the Liquidating Trustee shall consult with the Oversight Committee about how to proceed.  If necessary, the Bankruptcy Court shall hear and finally determine any dispute arising out of this section or this Article.

Any Member of the Oversight Committee may resign at any time on notice (including email notice) to the other Members of the Oversight Committee and to the Liquidating Trustee. Any such resignation shall be effective on the later of: (i) the date specified in the notice delivered to the Liquidating Trustee and the other Members of the Oversight Committee; and (ii) the date that is thirty (30) days after the date such notice is delivered.  In the event of the resignation, death, incapacity, or removal of a Member of the Oversight Committee, the remaining Members of the Oversight Committee, in consultation with the Liquidating Trustee, shall select and appoint a replacement Member.  If the remaining members of the Oversight Committee cannot agree on the replacement Member, the Liquidating Trustee shall select the replacement Member.

12218776-23

The Oversight Committee shall be bound by and conduct its oversight activities in accordance and compliance with the bylaws established for the governance of the activities of the Creditors' Committee.

**H.    Liquidating Trustee.**

(1)    *Appointment of the Liquidating Trustee*

The Liquidating Trustee shall be selected by the Creditors' Committee in consultation with MBC, MEC and the DIP Agent.  Upon the occurrence of the Effective Date, the Liquidating Trustee shall also be deemed appointed to serve as the trustee and administrator of the Liquidating Trust established pursuant to the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee, subject to the terms and conditions of the Plan and the Liquidating Trust Agreement, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Plan and the Liquidating Trust Agreement, as applicable.

(2)    *Liquidating Trustee as Representative of the Estate*

From and after the Effective Date, the Liquidating Trustee shall act as the exclusive representative of the Estate for all purposes.  Any successor Liquidating Trustee appointed pursuant to the Liquidating Trust Agreement shall be bound by and comply with the terms of this Plan and the Liquidating Trust Agreement.

(3)    *Responsibilities and Authority of the Liquidating Trustee*

The responsibilities and authority of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include, among others, the following rights and responsibilities, which shall be the exclusive rights and responsibilities of the Liquidating Trustee: (i) preserving and liquidating the Liquidating Trust Assets; (ii) administering and paying taxes for the Liquidating Trust, including, among other things, (a) filing tax returns for the Liquidating Trust, and (b) representing the interest and account of the Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit; (iii) retaining and paying, without the need for retention or fee applications, professionals in connection with the Liquidating Trustee's performance of its duties under this Plan and the Liquidating Trust Agreement; (iv) distributing information statements as required for U.S. federal income tax and other applicable tax purposes to the Liquidating Trust Beneficiaries; (v) filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Case; (vi) making distributions to Liquidating Trust Beneficiaries in accordance with the Plan and Liquidating Trust Agreement; (vii) objecting to, reconciling, seeking to subordinate, compromising, defending or prosecuting any Causes of Action, or settling all Claims; (viii) making distributions to the Liquidating Trust Beneficiaries in accordance with the Plan and Liquidating Trust Agreement; (ix) requesting an expedited determination of taxes, including with respect to any reserve for Disputed Claims, under section 505(b) of the Bankruptcy Code; and (x) such other responsibilities as may be vested in the Liquidating Trustee pursuant to this Plan and the

28

Liquidating Trust Agreement, or an order of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of this Plan.

(4)     *Powers of the Liquidating Trustee*

The Liquidating Trustee shall have the power and authority to perform the acts described in the Liquidating Trust Agreement, in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation any set forth herein, provided however, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidating Trustee to act as specifically authorized by any other provision of this Plan, the Liquidating Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidating Trustee may deem necessary or appropriate to take any act deemed appropriate by the Liquidating Trustee, including, without limitation, to discharge all obligations assumed by the Liquidating Trustee or provided herein and to conserve and protect the Liquidating Trust or to confer on the creditors the benefits intended to be conferred upon them by this Plan.

The powers of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include, among others, the following: (i) the power to invest funds of the Liquidating Trust (in demand and time deposits, or other temporary, liquid investments, except as otherwise determined to be reasonably necessary to maintain the value of the assets and to further the liquidating purpose of the Liquidating Trust), and withdraw, make distributions, and pay taxes and other obligations owed by the Liquidating Trust from such funds in accordance with this Plan and the Liquidating Trust Agreement; (ii) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Liquidating Trustee with respect to its responsibilities; or (iii) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to this Plan, the Liquidating Trust Agreement, or by an order of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of this Plan.

(5)     *Compensation of the Liquidating Trustee*

The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement.  The Liquidating Trustee shall fully comply with the terms, conditions and rights set forth in this Plan and the Liquidating Trust Agreement.  The Liquidating Trustee (and any Liquidating Trustee's retained professionals) shall not be required to file a fee application to receive compensation.

(6)     *Retention and Payment of Professionals*

The Liquidating Trustee shall have the right, without Court approval, to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the Liquidating Trustee in the performance of his, her, or its duties, and to compensate and reimburse expenses of such professionals in accordance with the Liquidating Trust Agreement.  For the avoidance of doubt, the Liquidating Trust can retain any professional currently retained by the Creditors' Committee.

(7)     *Trust Expenses*

The Liquidating Trustee may, in the ordinary course of business and without the necessity for any application to, or approval of, the Bankruptcy Court, pay any accrued but unpaid Liquidating Trust expenses. All Liquidating Trust expenses shall be charged against and paid from the Liquidating Trust Assets.

(8)     *DOF Election*

The Liquidating Trust Agreement shall require the Liquidating Trustee to elect to treat that portion of the Liquidating Trust Assets subject to the Disputed Claims as a disputed ownership fund described in Treasury Regulation Section 1.468B-9 (the "**DOF Election**") unless, as of the Trust Election Date, either all of the Liquidating Trust Assets subject to Disputed Claims have been distributed to the Liquidating Trust Beneficiaries or the percentage of the Liquidating Trust Assets subject to Disputed Claims distributable to each of the Liquidating Trust Beneficiaries has become fixed and determinable.

I.      **Cash Investments.**

The Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom); *provided*, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

J.      **No Revesting of Liquidating Trust Assets.**

No Liquidating Trust Asset will revest in the Debtor on or after the date such asset is transferred to the Liquidating Trust, but will best upon such transfer in the Liquidating Trust to be administered by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement.

K.      **Distribution of Liquidating Trust Assets.**

The Liquidating Trustee shall distribute to the holders of Allowed Class 3 Claims  on account of their Liquidating Trust Interests on a semi-annual basis or with such other frequency as the Liquidating Trustee determines in the exercise of its business judgment, Cash representing its net income plus all net proceeds from the sale of its assets (including any Cash received from the Debtors and treating any permissible investment as Cash for purposes of this Article VI.K.), less such amounts that may be reasonably necessary to (i) meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (ii) pay reasonably incurred or anticipated expenses (including, without limitation, any taxes imposed on or payable by the Debtors or the Liquidating Trust or in respect of the Liquidating Trust Assets), or (iii) satisfy other liabilities incurred or anticipated by such Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement; *provided*, *however*, that such Liquidating Trustee shall not be required to make a Distribution pursuant to this Article VI.K. of the Plan if such Liquidating Trustee determines that the expense associated with making the Distribution would likely utilize a substantial portion of the amount to be distributed, thus making the Distribution impracticable. The Liquidating Trustee shall make Distributions from the segregated Liquidating Trust Assets for

the benefit of the holders of Allowed Administrative Expenses in accordance with the Plan or the Liquidating Trust Agreement.

**L.     Liquidating Trust Mechanics.**

(1)     *Federal Income Tax Treatment of Liquidating Trust.*

The U.S. federal income tax classification of the Liquidating Trust will be determined pursuant to subsection (1) and/or (2) below, as applicable.

(2)     *Disputed Claims Resolved Before Trust Election Date*

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt of an adverse determination by the IRS upon audit if not contested by such Liquidating Trustee), for all United States federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) shall treat the transfer of Liquidating Trust Assets to a Liquidating Trust as (i) a transfer of Liquidating Trust Assets (subject to any obligations relating to those assets) directly to Liquidating Trust Beneficiaries (other than to the extent Liquidating Trust Assets are allocable to Disputed Claims), followed by (ii) the transfer by such beneficiaries to a Liquidating Trust of Liquidating Trust Assets in exchange for the related Liquidating Trust Interests.  Subject to Article VI.M.; (i) the Liquidating Trust is structured to qualify as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and, thus, as a "grantor trust" for U.S. federal income tax purposes within the meaning of Sections 671 through 679 of the Tax Code to the Liquidating Trust Beneficiaries, consistent with the terms of the Plan, and the Liquidating Trust Agreement shall provide as such; (ii) Liquidating Trust Beneficiaries shall be treated as the beneficiaries and grantors of the Liquidating Trust; (iii) the sole purpose of the Liquidating Trust shall be the liquidation and distribution of the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d), including the resolution of Allowed Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business; (iv) all parties (including the Debtor, Liquidating Trust Beneficiaries, and the Liquidating Trustee) shall report consistently with such treatment (including the deemed receipt of the Liquidating Trust Assets, subject to applicable liabilities and obligations, by the Liquidating Trust Beneficiaries, followed by the deemed transfer of such Liquidating Trust Assets to the Liquidating Trust); (v) all parties shall report consistently for federal income tax purposes, and otherwise, with the valuation (as determined pursuant to Article VI.M.(2) below) of the Liquidating Trust Assets transferred to the Liquidating Trust as determined by the Liquidating Trustee (or its designee); (vi) the Liquidating Trustee shall be responsible for filing returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a); (vii) the Liquidating Trustee shall annually send to each Liquidating Trust Beneficiary a separate statement regarding the receipts and expenditures of the trust as relevant for U.S. federal income tax purposes; and (viii) all items of income, deductions and credit loss of the Liquidating Trust shall be allocated for federal income tax purposes to the Liquidating Trust Beneficiaries based on their respective interests in the Liquidating Trust, in such manner as the Liquidating Trustee deems reasonable and appropriate.  The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. For the purpose of this Article VI.L.(2), the terms "party" and "Liquidating Trust Beneficiary"

31

shall not include the United States or any agency or department thereof, or any officer or employee thereof acting in such capacity.

      (3)    *Disputed Claims Unresolved by Trust Election Date*

If all Disputed Claims have not been resolved by the Trust Election Date, then the Liquidating Trustee will elect to treat that portion of the Liquidating Trust Assets subject to the Disputed Claims as a "disputed ownership fund" as described in and governed by Treasury Regulation Section 1.468B-9, and all impacted parties (including the Debtor, and solely to the extent applicable, Liquidating Trust Beneficiaries, and the Liquidating Trustee), solely with respect to the impacted assets, shall report for United States federal, state, and local income tax purposes consistently with such election. The Liquidating Trustee shall file all income tax returns with respect to any income attributable to the disputed ownership fund and shall pay the U.S. federal, state, and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto. Any taxes imposed on the disputed ownership fund or its assets will be paid out of the assets of the disputed ownership fund (including any assets of the Liquidating Trust allocable to Disputed Claims) and any subsequent distributions in respect of the allowance or disallowance of such claims will be reduced accordingly. In the event, and to the extent, that any Cash in any disputed ownership fund is insufficient to pay the portion of any taxes attributable to taxable income arising from assets of the disputed ownership fund, assets of the disputed ownership fund (including those otherwise distributable) may be sold to pay such taxes. The undisputed portion of the Liquidating Trust Assets will be treated as held in a grantor trust, with deemed distribution to and contribution from the Liquidating Trust Beneficiaries, as described in the immediately preceding paragraph.

To the extent permitted by applicable law, all parties, including the Liquidating Trustee and any Liquidating Trust Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

**M.    Tax Reporting.**

      (1)    Allocations of Liquidating Trust taxable income among Liquidating Trust Beneficiaries (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims, if such income is otherwise taxable at the Liquidating Trust) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, other than, if applicable, assets allocable to Disputed Claims) to the holders of Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from a Liquidating Trust. Similarly, taxable loss of a Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the date Liquidating Trust Assets are transferred to a Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the Tax

Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(2)     As soon as reasonably practicable after the Liquidating Trust Assets are transferred to a Liquidating Trust, the Liquidating Trustee shall make a good faith valuation of Liquidating Trust Assets.  Such valuation shall be made available from time to time to all parties to the Liquidating Trust (including, without limitation, the Debtors and Liquidating Trust Beneficiaries), to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

N.    **Dissolution.**

(1)     The Liquidating Trustee and Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all of the Liquidating Trust Assets have been distributed pursuant to the Plan and a Liquidating Trust Agreement, or (ii) the Liquidating Trustee determines, in its sole discretion, that the administration of any remaining Liquidating Trust Assets is not likely to yield sufficient additional Liquidating Trust proceeds to justify further pursuit; *provided, however*, that in no event shall a Liquidating Trust be dissolved later than three (3) years from the creation of such Liquidating Trust pursuant to this Article VI.N.(1). of the Plan unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidating Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

(2)     If at any time the Liquidating Trustee determines, in reliance upon such professionals as the Liquidating Trustee may retain, (i) that the expense of administering a Liquidating Trust so as to make a final distribution to Liquidating Trust Beneficiaries is likely to exceed the value of the assets remaining in such Liquidating Trust, (ii)  all Allowed Claims (other than those whose distributions are deemed undeliverable under the Plan) have been paid in full, or (iii) the amount of any final distributions to holders of Allowed Claims would be $100.00 or less and the aggregate amount of Cash available for distributions to holders of Allowed General Unsecured Claims is less than $25,000.00, then, such Liquidating Trustee may apply to the Bankruptcy Court for authority to (a) reserve any amount necessary to dissolve such Liquidating Trust, (b) donate any balance to one or more of the following organizations (each of which qualifies as a Tax Code section 501(c)(3) tax-exempt organization): (1) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida, or (2) Legal Services of Greater Miami, Inc., and (c) dissolve such Liquidating Trust.

(3)     The Liquidating Trustee shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash less than $100.00; *provided that*, if any distribution is not made pursuant to this Article VI.N.(3) of the Plan, such distribution shall be added to any subsequent distribution to be made on behalf of such holder's Allowed Claim.  If either (i no further distribution shall be made by the Liquidating Trustee and any surplus Cash shall be donated and distributed to one or more of the following organizations (each of which

qualifies as a tax-exempt organization under Section 501(c)(3) of the Tax Code), (a) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida, (b) Legal Services of Greater Miami, Inc., or (c) another tax-exempt organization selected by the Liquidating Trustee with the consent of the Oversight Committee.

### O.    Post-Effective Date Reporting.

No later than the 20th day of the month following the end of each calendar quarter, the Liquidating Trustee shall File with the Bankruptcy Court and serve on the Office of the United States Trustee and counsel to the Indemnitees quarterly reports summarizing the Post-Confirmation receipts received and disbursements made by the Liquidating Trustee in the prior quarter.

### P.    Effectuating Documents; Further Transactions.

(1)    On and after the Effective Date, the Liquidating Trustee is authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

(2)    The Debtors and the Liquidating Trustee, as applicable, shall be authorized to implement the Plan in the manner most tax efficient to the DIP Lenders, Prepetition Lenders, the Creditors' Committee, and the Debtors as determined by the Debtors in their business judgment.

### Q.    Withholding and Reporting Requirements.

(1)    *Withholding Rights.*    In connection with the Plan, to the extent applicable, the Liquidating Trustee and/or any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations, including requiring as a condition to the receipt of a distribution, the compliance with Article VI.Q.(2) below.  The Liquidating Trustee reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.  Additionally, in the case of a non-Cash distribution that is subject to withholding, the distributing party has the right, but not the obligation, to withhold an appropriate portion of such distributed property and either (a) sell such withheld property to

34

generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or (b) pay the withholding tax using its own funds and retain such withheld property.

(2)    *Forms.*  Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Liquidating Trustee or such other Person designated by the Liquidating Trustee (which entity shall subsequently deliver to the Liquidating Trustee any such forms received) an executed IRS Form W-9 or (if the payee is a foreign Person) the appropriate IRS Form W-8 (including all relevant attachments).  If such request is made by the Liquidating Trustee or such other Person designated by the Liquidating Trustee and the holder fails to comply before the date that is 90 calendar days after the request is made, the amount of such distribution shall irrevocably revert to the Liquidating Trustee and, the holder shall be forever barred from asserting any right to such distribution against any Debtors, the Debtors' Estates and the Liquidating Trustee.

### R.    Exemption From Certain Transfer Taxes.

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors, (ii) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, or (iii) any sale by any Debtor consummated post-Confirmation, and any other transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales tax, use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local government officials or agents to forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### S.    Preservation of Rights of Action.

**The Debtors expressly reserve any and all Retained Causes of Action**.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Debtors or the Liquidating Trustee will not pursue any and all available Retained Causes of Action against them.

Except as otherwise provided in the Plan or a Final Order of the Bankruptcy Court, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Retained Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that each Debtor had immediately prior to the Effective Date on behalf of the respective Debtor's Estate or itself in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any affirmative Retained Causes of Action against parties with a relationship with the Debtor, other than the Debtor Released Parties and the Released Parties.  Any Cause of Action of the Debtors or their Estates that is not (i) an

35

Acquired Cause of Action purchased by the Buyer, or (ii) a Retained Cause of Action contributed to the Liquidating Trust on the Effective Date, shall be deemed released as of the Effective Date.

On and after the Effective Date, subject to the terms of this Plan, the Settlement Agreement and the Sale Order, the Liquidating Trustee shall have standing to and may pursue such Retained Causes of Action.

Subject to the Sale Order, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action and to decline to do any of the foregoing without the consent, notice to or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court subject to the terms of this Plan. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Plan itself shall be resolved only by Confirmation of the Plan itself. For the avoidance of doubt, the Retained Causes of Action shall include any and all Causes of Action against the Excluded Parties.

**T.      Closing of the Chapter 11 Cases.**

After the Chapter 11 Cases of the Debtors have been fully administered, and all Disputed Claims have become Allowed or disallowed and all remaining Cash has been distributed in accordance with the Plan, the Liquidating Trustee shall promptly seek authority from the Bankruptcy Court to close the Debtors' Chapter 11 Cases in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**U.      Notice of Effective Date.**

As soon as practicable, but not later than three (3) Business Days following the Effective Date, the Debtors or the Liquidating Trustee shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

**ARTICLE VII.**
**CORPORATE GOVERNANCE**

**A.      Corporate Form.**

The corporate form of the Debtors shall be as it was immediately prior to the Effective Date.

**B.      Post-Effective Date Governance of the Debtors.**

Effective as of immediately prior to the Effective Date, automatically and without further action, each existing member of the board of managers or directors of the Debtors, as applicable,

36

will be deemed to have resigned or will be deemed to have been terminated. Each Debtor shall be deemed to have issued one share or one member interest, as applicable, to be held nominally by the Liquidating Trustee for purposes of administering the Plan.

On and after the Effective Date, (a) the Liquidating Trustee, in substitution for the management and the board of managers of the Debtors, shall be authorized and empowered, without action of the Debtors' respective members, or boards of managers, or managers (if any), to take any and all such actions as the Liquidating Trustee may determine are necessary or appropriate in the Liquidating Trustee's business judgment to implement, effectuate, consummate and perform any and all actions, documents, or transactions contemplated by the Plan or the Confirmation Order as reasonably required to implement the Plan and the wind up the Debtors subject to the terms of this Plan, and (b) the Liquidating Trustee shall act for the Debtors in the same fiduciary capacity as applicable to the board of managers or board of directors of the Debtors existing immediately prior to the Effective Date. Prior to the Effective Date, one or more of the Debtors may provide the Liquidating Trustee with one or more Debtor's Power of Attorney. On and after the Effective Date, the Liquidating Trustee may elect such additional managers, directors and officers as the Liquidating Trustee deems necessary to implement the Plan and the actions contemplated in the Plan. The Liquidating Trustee shall also have the sole and exclusive power to act by written consent, including to appoint or remove any directors, managers or officers at any time with or without cause.

C.     **Corporate Existence.**

Unless previously dissolved by the Liquidating Trustee, as soon as practicable on or after the entry of a final decree, the Debtors will be dissolved for all purposes other than for applicable state and local tax purposes without any other or further corporate action, or payment of any fees in connection therewith.

On and after the Effective Date, the Liquidating Trustee shall take commercially reasonable actions as required, consistent with applicable non-bankruptcy law and consistent with the implementation of the Plan, and when appropriate in the discretion of the Liquidating Trustee, to dissolve, liquidate, strike off or take such other similar action with respect to each Debtor (including the cancellation of all Interests in a Debtor pursuant to the Confirmation Order) and complete the winding down of such Debtor as expeditiously as practicable without the necessity for any other or further actions to be taken by or on behalf of such Debtor or its shareholders or members, or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate governmental authorities or complying with the laws and procedures governing the winding down of any such Debtor; *provided*, however, that the foregoing does not limit the Liquidating Trustee's ability to otherwise abandon an Interest in a Debtor. The Liquidating Trustee may, to the extent required by applicable non-bankruptcy law, maintain a Debtor as a limited liability company or corporation, as applicable, in good standing until such time as all aspects of the Plan pertaining to such Debtor and the winding down of such Debtor is complete.

D.     **Certificates of Formation and By-Laws.**

As of the Effective Date, the certificates of formation, operating agreements, by-laws, and

any other organizational document of the Debtors shall be amended to the extent necessary to implement and carry out the provisions of the Plan. The Liquidating Trustee is empowered to complete and file all final or otherwise required federal, state, and local tax returns, if any, and shall pay taxes required to be paid for any of the Debtors.

# ARTICLE VIII.
## DISTRIBUTIONS

### A.    Distributions Generally.

On or after the Effective Date, the Liquidating Trustee shall make distributions only in accordance with the terms of the Plan and the Confirmation Order to holders of Allowed Claims, net of any reserve(s) for Disputed Claims, and only to the extent that the Liquidating Trustee (or income and/or proceeds realized from Excluded Assets, which will be turned into cash) to make such payments in accordance with and to the extent provided for in the Plan and the Confirmation Order. The Liquidating Trustee may withhold from amounts distributable to any Person any and all amounts, determined by the Liquidating Trustee in its reasonable discretion, required by any law, regulation, rule, ruling, directive, or other governmental requirement.

### B.    Distribution Record Date.

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors, the Liquidating Trustee or their respective agents, shall be deemed closed for purposes of determining whether a holder of such a Claim or Interest is a record holder entitled to distributions under the Plan, and there shall be no further changes in the record of holders of any of the Claims or Interests. The Debtors or the Liquidating Trustee shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.

### C.    Date of Distributions.

Except as otherwise provided in the Plan, the Debtors or the Liquidating Trustee, as applicable, shall make the Initial Distribution to holders of Allowed Claims no later than the Initial Distribution Date and thereafter, the Liquidating Trustee shall from time to time determine the subsequent Distribution Dates, if any; *provided that*, (i) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business shall be paid or performed when due in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business or industry practice, and (ii) Allowed Priority Tax Claims, and Other Secured Claims shall be satisfied in accordance with the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### D.    Reserve on Account of Disputed Claims.

The Liquidating Trustee shall reserve an amount sufficient to pay holders of Disputed Claims the amount such holders would be entitled to receive under the Plan if such Claims were

to become Allowed Claims.  In the event the holders of Allowed Claims have not received payment in full on account of their Claims after the resolution of all Disputed Claims, then the Liquidating Trustee shall make a final distribution to all holders of Allowed Claims.

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, distributions on account of Disputed Claims that become Allowed after the Effective Date shall be made on the next periodic Distribution Record Date that is at least forty-five (45) days after the Disputed Claim becomes an Allowed Claim; *provided that*, (i) Disputed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business that become Allowed after the Effective Date shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, (ii) Disputed Priority Tax Claims that become Allowed Priority Tax Claims after the Effective Date shall be treated as Allowed Priority Tax Claims in accordance with the Plan, solely to the extent not assumed by the Buyer pursuant to the Sale Transaction, and (iii) the Liquidating Trustee shall administer the tax obligations of each Debtor and the Debtors' Estates, including (a) filing tax returns and paying tax obligations, if any, (b) requesting, if necessary, an expedited determination of any unpaid tax liability for all taxable periods ending after the Effective Date through the liquidation of the Debtors, if any, as determined under applicable law, and (c) representing the interests and account of each Debtor and the Debtors' Estates  before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit.

### E.    Delivery of Distributions & Unclaimed Property.

Subject to Bankruptcy Rule 9010, distributions to any holder or permitted designee of an Allowed Claim shall be made by the Liquidating Trustee who on behalf of the Debtors shall transmit such distribution to the applicable holders or permitted designees of Allowed Claims.

In the event that any distribution to any holder is returned as undeliverable or is otherwise unclaimed, no further distribution to such holder shall be made unless and until the Liquidating Trustee is notified in writing of such holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest; *provided, however*, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the applicable Distribution Date.  After such date, with no further action by the Liquidating Trustee, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidating Trustee automatically and without need for a further order by the Bankruptcy Court for distribution in accordance with the Plan, and the Claim of any such holder to such property or interest in such property shall be released, settled, compromised, and forever barred.  Nothing herein shall require the Liquidating Trustee to attempt to locate holders or permitted designees, as applicable, of undeliverable distributions and, if located, to assist in any way such holders or permitted designees, as applicable.  Notwithstanding any provisions in the Plan to the contrary, all distributions to holders of Claims shall be deemed completed, and the obligations of the Liquidating Trustee to make such distributions under the Plan shall be deemed satisfied, when made by the Liquidating Trustee.

**F.      Manner of Distribution.**

At the option of the Debtors or the Liquidating Trustee, as applicable, any Cash payment to be made under the Plan may be made by a check, wire transfer, or ACH Transfer.  The wire transfer fee will be deducted from the amount of the distribution that a holder of an Allowed Claim or Interest would otherwise receive.

In order to receive a distribution under the Plan, a holder of an Allowed Claim must submit to the Liquidating Trustee both the applicable IRS Form W-9, or if the payee is a foreign person, Form W-8 (including all relevant attachments).  Unless the Liquidating Trustee receives original, properly completed copies of each form with an amount of time sufficient, in the Liquidating Trustee's sole discretion (as applicable), to process in advance of a scheduled Distribution Date, the holder of an Allowed Claim that would otherwise be entitled to a Distribution shall not receive any Distribution on the applicable Distribution Date.

**G.      No Postpetition Interest on Claims.**

Except as otherwise specifically provided for in the Plan, the Confirmation Order, or another order of the Bankruptcy Court or required by the Bankruptcy Code, postpetition interest, dividends or accruals shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

**H.      Minimum Cash Distributions.**

The Liquidating Trustee shall not be required to make any payment to any holder of an Allowed Claim on any Distribution Date of Cash less than $100.00; *provided that*, if any distribution is not made pursuant to this Article VIII.H. of the Plan, such distribution shall be added to any subsequent distribution to be made on behalf of such holder's Allowed Claim.  If either (i) all Allowed Claims (other than those whose distributions are deemed undeliverable under the Plan) have been paid in full, or (ii) the amount of any final distributions to holders of Allowed Claims would be $100.00 or less and the aggregate amount of Cash available for distributions to holders of Allowed General Unsecured Claims is less than $25,000.00, then no further distribution shall be made by the Liquidating Trustee and any surplus Cash shall be donated and distributed to one or more of the following organizations (each of which qualifies as a tax-exempt organization under Section 501(c)(3) of the Tax Code), (a) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida, or (b) Legal Services of Greater Miami, Inc.

**I.      Setoffs and Recoupments.**

The Debtors and the Liquidating Trustee, as applicable, may, but shall not be required to, set off or recoup against any Claim, any claims of any nature whatsoever that the Debtors or the Liquidating Trustee, as applicable, may have against the holder of such Claim; *provided that*, neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Liquidating Trustee, as applicable, of any such claim the Debtors or the Liquidating Trustee may have against the holder of such Claim.

J.      **Allocation of Distributions Between Principal and Interest.**

Except as otherwise required by law (as reasonably determined by the Debtors or the Liquidating Trustee, as applicable), to the extent that any Allowed Claim entitled to a distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated to the principal amount (as determined for U.S. federal income tax purposes) of the Claim first, and then to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest through the Petition Date.

K.      **Payment of Disputed Claims.**

As Disputed Claims are resolved pursuant to <u>Article VIII</u> of the Plan, the Liquidating Trustee shall make distributions on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date.  As stated herein, such distributions shall be made on the first Distribution Date that is at least forty-five (45) calendar days after the date on which a Disputed Claim becomes an Allowed Claim, or on an earlier date selected by the Liquidating Trustee in the Liquidating Trustee's sole discretion.  No holder of a Disputed Claim shall have any Claim against the Liquidating Trustee, the Debtors or the Estates with respect to such Claim until such Disputed Claim becomes an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest, dividends, or other distributions on account of such Disputed Claim except as provided for in the Plan.

**ARTICLE IX.**
**PROCEDURES FOR DISPUTED CLAIMS**

A.      **Allowance of Claims.**

On and after the Effective Date, and subject to any order of the Bankruptcy Court, the Liquidating Trustee shall be entitled to reconcile, object to, or settle Claims filed against the Debtors.  On and after the Effective Date, the Liquidating Trustee shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim, except with respect to any Claim deemed Allowed under the Plan, based on the limitations imposed by section 502 of the Bankruptcy Code.  The Liquidating Debtors and Liquidating Trustee may contest the amount and validity of any Disputed Claim or contingent or unliquidated Claim in the ordinary course of business in the manner and venue in which such Claim would have been determined, resolved or adjudicated if the Chapter 11 Cases had not been commenced.  Except as expressly provided for in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order and the Final DIP Order, in the Chapter 11 Cases allowing such Claim.

B.      **Objections to Claims.**

On and after the Effective Date, objections to, and requests for estimation of, Claims against the Debtors may be interposed and prosecuted only by the Liquidating Trustee.  Such

objections and requests for estimation shall be served and filed by the Claims Objection Bar Date. The Liquidating Trustee may move to extend the Claims Objection Bar Date without limitation.

### C.      Estimation of Claims.

The Liquidating Trustee may determine, resolve and otherwise adjudicate all contingent, unliquidated, and Disputed Claims in the Bankruptcy Court. The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trustee previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Liquidating Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### D.      No Distributions Pending Allowance.

If an objection to a Claim is filed as set forth in Article IX.B. of the Plan, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim; *provided that*, if only a portion of a Claim is Disputed, such Claim shall be deemed Allowed in the amount not Disputed and payment or distribution shall be made on account of such undisputed amount.

### E.      Resolution of Claims.

Except as otherwise provided in the Plan, the Confirmation Order or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Trustee shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person, without the approval of the Bankruptcy Court. The Liquidating Trustee or its successor may pursue such retained Claims, rights, Causes of Action, suits or proceedings, as appropriate, in accordance with the best interests of the Debtors.

### F.      Disallowed Claims.

All Claims held by persons or entities against whom or which any of the Debtors or the Liquidating Trustee has commenced a proceeding or sent a demand letter asserting a Cause of Action under sections 542, 543, 544, 545, 547, 548, 549, 550 and/or 553 of the Bankruptcy Code shall be deemed "disallowed" Claims pursuant to section 502(d) of the Bankruptcy Code and

holders of such Claims shall not be entitled to vote to accept or reject the Plan. Claims that are deemed disallowed pursuant to this Article IX.F. shall (i) continue to be disallowed for all purposes until the avoidance action against such party has been settled or resolved by Final Order, and (ii) any sums due to the Debtors or the Liquidating Trustee from such party have been paid.

**G.    Claims Paid and Payable by Third Parties.**

A Claim shall be disallowed without an objection thereto having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full in Cash on account of such Claim from a party that is not the Debtors or the Liquidating Trustee. To the extent that a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Liquidating Trustee on account of such Claim, such holder shall repay, return, or deliver any distribution held by or transferred to the holder to the applicable Debtor or Liquidating Trustee to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Allowed Claim as of the date of any such distribution.

**H.    Amendments to Proofs of Claim.**

On or after the Effective Date, unless otherwise authorized by the Confirmation Order or other Final Order of the Bankruptcy Court, a Proof of Claim may not be filed or amended without the prior written consent of the Liquidating Trustee and any such underlying filed Proof of Claim, prior to any such amendment as authorized by this Article IX.H, shall be deemed disallowed in full and expunged without any further notice to, or action, order, or approval of, the Bankruptcy Court, to the maximum extent provided by applicable law.

## ARTICLE X.
## EXECUTORY CONTRACTS

**A.    Rejection of Executory Contracts.**

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract: (i) is identified for assumption in the Plan Supplement; (ii) as of the Effective Date is subject to a pending motion to assume such Executory Contract; (iii) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (iv) is a D&O Policy.

**B.    Cure of Defaults for Assumed Executory Contracts.**

Any Cure due under each Executory Contract to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitation described below, by the Debtors or the Liquidating Trustee, as applicable, or on such other terms as the parties to such Executory Contracts may otherwise agree.

In the event of a dispute regarding (i) the amount of the Cure; (ii) the ability of the Debtors or any other applicable assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract; or (iii) any other matter pertaining to assumption or assumption and assignment (as applicable), the obligations of section 365 of the Bankruptcy Code shall be deemed satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption or assumption and assignment (as applicable); *provided, however*, that the Debtors or the Liquidating Trustee, as applicable, may settle any dispute regarding the amount of any Cure without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

Assumption of any Executory Contract pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any defaults, subject to satisfaction of the Cure, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract at any time before the Effective Date of such assumption and/or assignment.

### C.    Claims Based Upon Rejection of Executory Contracts.

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts pursuant to the Plan, must be filed with the Bankruptcy Court and served on the Liquidating Trustee no later than thirty (30) calendar days after the filing and service of the notice of the occurrence of the Effective Date. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts shall be classified as a Class 3 General Unsecured Claims, except as otherwise provided by Final Order of the Bankruptcy Court.

**Any Claims arising from the rejection of an Executory Contract not filed with the Bankruptcy Court and served on the Liquidating Trustee on or before the earlier of either (i) 30 days after the filing and service of the notice of the occurrence of the Effective Date or (ii) 30 days after the effective date of the rejection of the contract or lease, will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, or the property of any of the foregoing without the need for any objection by the Liquidating Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of such Executory Contract shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**

**Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or Cure Cost will therefore be deemed to have assented to such assumption and Cure Cost.**

### D.    Modifications, Amendments, Supplements, Restatements, or Other Agreements.

Unless otherwise provided for in the Plan, each assumed Executory Contract shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract, and all Executory Contracts related thereto, if any, including all

easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### E.    Reservation of Rights

Neither the exclusion nor inclusion of any contract or lease on any exhibit, schedule, annex to the Plan or in the Plan Supplement as a contract or lease to be assumed, nor anything contained in the Plan or Sale Transaction documents, nor the Debtors' delivery of a notice of proposed assumption and proposed Cure Cost to any contract and lease counterparties, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors, Liquidating Trustee or Liquidating Debtors have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Liquidating Debtors, as applicable, shall have ten (10) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.  If there is a dispute regarding a Debtor's or Reorganized Debtor's liability under an assumed Executory Contract or Unexpired Lease, the Reorganized Debtors shall be authorized to move to have such dispute heard by the Bankruptcy Court.  Except as otherwise provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors and the Liquidating Trustee under any executory or non-executory contract or any unexpired or expired lease.  Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors, as applicable, under any executory or non-executory contract or any unexpired or expired lease.

### F.    Insurance Policies.

Notwithstanding anything to the contrary in the Plan, each insurance policy, including any D&O Policies to which the Debtors are a party as of the Effective Date, shall be deemed executory and shall be assumed by the Debtors on behalf of the applicable Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such insurance policy previously was assumed and assigned under the Asset Purchase Agreement, was rejected by the Debtors pursuant to a Final Order of the Bankruptcy Court, or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in the D&O Policy.

In addition, on and after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any D&O Policy in effect or purchased as of the Effective Date for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions on or after the Effective Date, in each case, to the extent set forth in such policies.

45

### G.    Survival of Debtors' Indemnification Obligations.

To the fullest extent permitted by applicable law, any obligations of the Debtors pursuant to their corporate charters, by-laws, limited liability company agreements, memorandum and articles of association, or other organizational documents and agreements to indemnify any Indemnitee based upon any act or omission for or on behalf of the Debtors shall not be discharged, impaired, or otherwise affected by the Plan; provided that, notwithstanding anything herein, the Debtors shall not indemnify any Indemnitee for any claims or Causes of Action arising out of or relating to any act or omission (i) that is a criminal act unless such officer, director, agent, or employee had no reasonable cause to believe its conduct was unlawful; (ii) that is determined by a Final Order to be the result of fraud, gross negligence, or willful misconduct; or (iii) for any other acts or omissions that are excluded under the terms of the foregoing organizational documents. All such obligations, unless otherwise described in (i)-(ii) above, shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan unless such obligation previously was assumed and assigned under the Asset Purchase Agreement, was rejected by the Debtors pursuant to a Final Order of the Bankruptcy Court, or is the subject of a motion to reject pending on the Effective Date.

On the Effective Date, the Debtors shall establish the Indemnity Reserve, which shall be segregated, separately maintained by the Liquidating Trustee and used solely to satisfy the Debtors' indemnification obligations to the Indemnitees who were serving as of the Effective Date; *provided*, that any amounts of Cash in the Indemnity Reserve not used for such purposes on or before the second (2nd) anniversary of the Effective Date ("**Termination Date**") shall revert to the Liquidating Trustee and become Residual Cash; *provided, further*, that (i) prior to the Termination Date the Liquidating Trustee and the Indemnitees who were serving as of the Effective Date of the Plan shall engage in good faith discussions regarding an extension of the Termination Date, and (ii) the Termination Date may be extended by the Liquidating Trustee in its sole discretion without further Order of the Bankruptcy Court.

### ARTICLE XI.
### CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### A.    Conditions Precedent to the Effective Date.

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(1)    the Bankruptcy Court shall have entered the Confirmation Order, such Confirmation Order shall be in form and substance reasonably acceptable to the Consent Right Parties, the Confirmation Date shall have occurred and the Confirmation Order shall not be subject to any stay, modification, vacation on appeal, and shall have become a Final Order;

(2)    the Plan Supplement and all of the Schedules, documents, and exhibits contained therein, and all other relevant schedules, documents, supplements and exhibits to the Plan, shall have been filed with the Bankruptcy Court and shall be reasonably acceptable to the Consent Right Parties; and

(3)      all actions, documents, and agreements necessary to implement and consummate the Plan, and the other transactions and other matters contemplated in the Plan, shall have been effected or executed.

**B.      Waiver of Conditions Precedent.**

Each of the conditions precedent in <u>Article XI</u> of the Plan may be waived in writing by the Debtors, with notice to the Creditors' Committee, MBC and MEC, and without notice to or authorization of the Bankruptcy Court.

**C.      Effect of Failure of Conditions to Effective Date.**

If the conditions listed in <u>Article XI.A.</u> of the Plan are not satisfied, upon filing a notice with the Bankruptcy Court, the Debtors may deem the Plan null and void in all respects and in such a case, nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by or against or any Interests in the Debtor; (ii) prejudice in any manner the rights of any Entity; or (iii) constitute an admission, acknowledgement, offer, or undertaking by the Debtors or any other Entity.

## ARTICLE XII.
## EFFECT OF CONFIRMATION

**A.      Vesting of Assets.**

On the Effective Date, pursuant to section 1141(b) of the Bankruptcy Code, all property of the Estates not previously distributed to the holders of Allowed Claims shall vest in the Liquidating Trustee and be distributed according to this Plan, except as provided pursuant to the Sale Order, the Plan and the Confirmation Order.  On and after the Effective Date, the Liquidating Trustee may take any action, including, without limitation: (i) the operation of the Liquidating Debtors' businesses; (ii) the use, acquisition, sale, lease and disposition of property; (iii) the entry into transactions, agreements, understandings, or arrangements, to pursue the Retained Causes of Action, whether in or other than in the ordinary course of business; and (iv) executing, delivering, implementing and fully performing any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending cases under any chapter or provision of the Bankruptcy Code, except as expressly provided herein.  Without limiting the foregoing, the Liquidating Trustee may pay the charges it incurs on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

**B.      Release of Liens.**

Except as otherwise provided in the Sale Order, Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and terminated.

12218776-23

C.    **Binding Effect.**

As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtor and their respective successors and assigns, notwithstanding whether any such holders were (i) Impaired or Unimpaired under the Plan; (ii) deemed to accept or reject the Plan; (iii) failed to vote to accept or reject the Plan; or (iv) voted to reject the Plan.

D.    **Sale Order.**

Nothing contained in the Plan, the Disclosure Statement, or the Confirmation Order, constitutes or shall be construed to be inconsistent with the terms of the Sale Order or any modification or amendment to the Sale Order. In the event of any conflict between the Sale Order, on the one hand, or the Plan, Disclosure Statement, or Confirmation Order, on the other, the Sale Order shall govern and control.

E.    **Term of Injunctions or Stays.**

Unless otherwise provided in the Plan, the Confirmation Order, or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under, or entered during, the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

F.    **Compromise and Settlement.**

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Interests (other than Causes of Action that have not been waived, relinquished, exculpated, released, compromised or settled in the Plan or by Final Order of the Bankruptcy Court including, for the avoidance of doubt, any claims (i) against the Excluded Parties; or (ii) preserved by the Asset Purchase Agreement). The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Interests (other than Causes of Action that have not been waived, relinquished, exculpated, released, compromised or settled in the Plan by Final Order of the Bankruptcy Court including, for the avoidance of doubt, any claims (i) against the Excluded Parties; or (ii) preserved by the Asset Purchase Agreement), as well as a finding by the Bankruptcy Court that such compromises or settlements are fair, equitable, reasonable and in the best interests of the Debtors, the Estates and holders of Claims and Interests.

G.    **Debtor Release.**

**AS OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH DEBTOR RELEASED PARTY IS DEEMED RELEASED BY THE DEBTORS, THEIR RESPECTIVE ESTATES, THE LIQUIDATING TRUSTEE, AND ANY PERSON OR ENTITY (OTHER THAN THE BUYER, MBC AND MEC), SEEKING TO EXERCISE THE RIGHTS OF THE DEBTORS**

48

OR THEIR ESTATES AND THEIR RESPECTIVE PROPERTY (AND EACH SUCH DEBTOR RELEASED PARTY SHALL BE DEEMED RELEASED BY EACH DEBTOR AND ITS ESTATE AND ITS RESPECTIVE PROPERTY) FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, AVOIDANCE ACTIONS, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED DIRECTLY OR INDIRECTLY, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, AND ANY AND ALL CAUSES OF ACTION ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED, BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THEIR ESTATES OR THEIR AFFILIATES, THE CONDUCT OF THE DEBTORS' BUSINESS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DIP CREDIT AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT OR THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DIP CREDIT AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT, THE PLAN, THE PREPARATION, FILING AND PROSECUTION OF THE CHAPTER 11 CASES, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE SALE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS, THEIR ESTATES OR THEIR AFFILIATES, ON THE ONE HAND, AND ANY DEBTOR RELEASED PARTY, ON THE OTHER HAND, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE; PROVIDED, HOWEVER, THAT THE RELEASES SET FORTH IN THIS ARTICLE XII.G. SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS OR CAUSES OF ACTION OF THE DEBTORS OR THEIR RESPECTIVE CHAPTER 11 ESTATES AGAINST A DEBTOR RELEASED PARTY FROM ANY CLAIMS RESULTING FROM AN ACT OR OMISSION DETERMINED BY A FINAL ORDER OF THE BANKRUPTCY COURT TO HAVE CONSTITUTED FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE, *PROVIDED THAT*, EACH SUCH DEBTOR RELEASED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, ITS ACTIONS OR INACTIONS.  NOTWITHSTANDING ANYTHING IN THE PLAN OR THIS ARTICLE XII.G. TO THE CONTRARY, THE EXCLUDED PARTIES ARE NOT RECEIVING AND SHALL NOT RECEIVE A RELEASE UNDER THIS PLAN.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASES, WHICH INCLUDES BY REFERENCE EACH OF THE

RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR RELEASED PARTIES; (II) A GOOD-FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (III) IN THE BEST INTERESTS OF THE DEBTORS' ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS; (IV) FAIR, EQUITABLE, AND REASONABLE; (V) GIVEN AND MADE AFTER DUE NOTICE AND THE OPPORTUNITY FOR A HEARING; AND (VI) A BAR TO ANY OF THE DEBTORS' ESTATES, OR THE LIQUIDATING TRUSTEE, ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE.

H.    Releases by Holders of Claims and Interests

EFFECTIVE AS OF THE EFFECTIVE DATE, THE RELEASING PARTIES SHALL BE DEEMED TO HAVE PROVIDED A FULL RELEASE TO THE RELEASED PARTIES, AND THEIR RESPECTIVE PROPERTY, FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, AVOIDANCE ACTIONS, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED DIRECTLY OR INDIRECTLY, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, AND ANY AND ALL CAUSES OF ACTION ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED, BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THEIR ESTATES OR THEIR AFFILIATES, THE CONDUCT OF THE DEBTORS' BUSINESS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DIP CREDIT AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT OR THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO WITH OR PURSUANT TO THE DIP CREDIT AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT, THE PLAN, THE PREPARATION, FILING AND PROSECUTION OF THE CHAPTER 11 CASES, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE SALE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS, THEIR ESTATES OR THEIR AFFILIATES, ON THE ONE HAND, AND ANY DEBTOR RELEASED PARTY, ON THE OTHER HAND, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE; *PROVIDED*, *HOWEVER*, THE RELEASES SET FORTH ABOVE (I) DO NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, (II) ARE

50

**APPLICABLE ONLY TO THE MAXIMUM EXTENT PERMITTED BY LAW, (III) DO NOT RELEASE ANY PREPETITION SECURED PARTIES', BUYER'S, MBC'S, MEC'S, OR OBI'S CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES UNDER ANY AGREEMENT ENTERED INTO BY THE DEBTORS AFTER THE PETITION DATE, (IV) DO NOT RELEASE ANY OBLIGATIONS OR RIGHTS UNDER THE ASSET PURCHASE AGREEMENT, (V) DO NOT RELEASE ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES BETWEEN ANY "BUYER RELEASING PARTY" AND ANY "SELLER RELEASING PARTY" (AS THE TERMS "BUYER RELEASING PARTY" AND "SELLER RELEASING PARTY" ARE DEFINED IN SECTION 7.16(A) AND SECTION 7.16(B), RESPECTIVELY, OF THE ASSET PURCHASE AGREEMENT), AND THE RELEASES BETWEEN SUCH PARTIES SHALL BE GOVERNED BY SECTION 7.16 OF THE ASSET PURCHASE AGREEMENT), AND (VI) DO NOT RELEASE ANY RIGHTS OR OBLIGATIONS BETWEEN OBI, MBC, MEC AND BUYER; *PROVIDED FURTHER*, *HOWEVER*, THAT THE RELEASES SET FORTH IN THIS ARTICLE XII.H. SHALL NOT RELEASE ANY PERSON OR ENTITY FROM ANY RETAINED CAUSES OF ACTION OR CLAIMS RESULTING FROM AN ACT OR OMISSION DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE, *PROVIDED THAT*, EACH SUCH DEBTOR RELEASED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, ITS ACTIONS OR INACTIONS.**

**ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASE BY THOSE CREDITORS OR INTEREST HOLDERS WHO DID NOT OPT-OUT OF THE RELEASE IS: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION AND SUBSTANTIAL CONTRIBUTIONS PROVIDED BY THE RELEASED PARTIES; (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD PARTY RELEASE; (III) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (IV) FAIR, EQUITABLE, AND REASONABLE; (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (VI) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.**

    **I.**    **Exculpation.**

**NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS ON THE EFFECTIVE DATE EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, CAUSE OF ACTION,**

REMEDY, LOSS, AND LIABILITY FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH OR ARISING OUT OF THE PREPARATION, FOR, AND ADMINISTRATION OF, THE CHAPTER 11 CASES; THE NEGOTIATION, FORMULATION, PREPARATION, IMPLEMENTATION, CONSUMMATION, AND PURSUIT OF THE DIP CREDIT AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT, THE PLAN, AND THE SOLICITATION OF VOTES FOR, AND CONFIRMATION OF, THE PLAN; THE FUNDING AND CONSUMMATION OF THE PLAN, AND ANY RELATED AGREEMENTS, INSTRUMENTS, AND OTHER DOCUMENTS (IN EACH CASE IN FURTHERANCE OF THE FOREGOING); THE MAKING OF DISTRIBUTIONS UNDER THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; NEGOTIATIONS REGARDING OR CONCERNING ANY OF THE FOREGOING, OR THE ADMINISTRATION OF THE PLAN OR PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE FROM THE PETITION DATE RELATING TO THE DEBTORS OR THE CHAPTER 11 CASES; *PROVIDED*, *HOWEVER*, THAT THE EXCULPATION DOES NOT HAVE ANY IMPACT ON THE ENFORCEMENT AND VALIDITY OF THE ASSET PURCHASE AGREEMENT; *PROVIDED, FURTHER, HOWEVER*, THAT THE EXCULPATION DOES NOT HAVE ANY IMPACT ON AND DOES NOT AFFECT ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES BETWEEN ANY "BUYER RELEASING PARTY" AND ANY "SELLER RELEASING PARTY" (AS THE TERMS "BUYER RELEASING PARTY" AND "SELLER RELEASING PARTY" ARE DEFINED IN SECTION 7.16(A) AND SECTION 7.16(B), RESPECTIVELY, OF THE ASSET PURCHASE AGREEMENT); *PROVIDED*, *FURTHER*, *HOWEVER* THAT THE EXCULPATION SET FORTH IN THIS *ARTICLE XII.I.* SHALL NOT EXCULPATE ANY PERSON OR ENTITY FROM CLAIMS RESULTING FROM AN ACT OR OMISSION DETERMINED BY A FINAL ORDER OF THE BANKRUPTCY COURT TO HAVE CONSTITUTED FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE, *PROVIDED THAT*, EACH SUCH EXCULPATED PARTY SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL CONCERNING ITS DUTIES PURSUANT TO, OR IN CONNECTION WITH, ITS ACTIONS OR INACTIONS; *PROVIDED FURTHER*, *HOWEVER*, NOTHING IN THE PLAN SHALL LIMIT THE LIABILITY OF ATTORNEYS TO THEIR RESPECTIVE CLIENTS PURSUANT TO RULE 4-1.8(H) OF THE FLORIDA RULES OF PROFESSIONAL CONDUCT.  THIS EXCULPATION SHALL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.    THE FOREGOING EXCULPATION SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON.

J.      **Injunctions.**

Except as otherwise provided in the Plan or the Confirmation Order, all Enjoined Parties are permanently enjoined and precluded, from and after the Effective Date, from: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (4) asserting any right of setoff, or subrogation against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion or filed a claim requesting the right to perform such setoff or subrogation on or before the Confirmation Date; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities released or settled pursuant to the Plan.  For the avoidance of doubt, and notwithstanding anything in the Plan to the contrary, this <u>Article XII.J.</u> does not apply to any claims, obligations, suits, judgments, damages, demands, debts, remedies, causes of action, rights of setoff, other rights, and liabilities between any "Buyer Releasing Party" and any "Seller Releasing Party" (as the terms "Buyer Releasing Party" and "Seller Releasing Party" are defined in Section 7.16(a) and Section 7.16(b), respectively, of the Asset Purchase Agreement).

K.      **Gatekeeper Provision.**

No Enjoined Party may commence or pursue a Claim or Cause of Action of any kind against any Debtor Released Party that arose or arises from or is related to the Chapter 11 Cases, the negotiation of the Plan, the consummation or administration of the Plan or property to be distributed under the Plan, the wind down of the businesses of the Debtors, the administration of the Liquidating Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a "colorable" Claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Debtor Released Party; and (ii) specifically authorizing such Enjoined Party to bring such Claim or Cause of Action against any such Debtor Released Party; provided, however, the foregoing will not apply to a Claim or Cause of Action against any Excluded Party.  To the extent legally permissible and as provided for in <u>Article XIII</u>, the Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is "colorable" even if the Bankruptcy Court would not have jurisdiction to issue a final, non-appealable order on the underlying Claim or Cause of Action.  The Bankruptcy Court may, in its sole discretion, conduct an evidentiary hearing (during which it may, among other things, hear testimony and assess the credibility of any witness(es)) in order to determine whether a proposed Claim or Cause of Action is "colorable."  For purposes of the Bankruptcy Court's determination under this provision after taking into

account any admissible evidence, "colorable" means that the proposed Claim or Cause of Action is (a) procedurally and legally sound; (b) not brought for an improper purpose, such as harassment; and (c) no part of the pleading fails to satisfy the Bankruptcy Court that it warrants a federal civil action or that the litigant's allegations are unlikely, especially when prior cases have shown the litigant to be untrustworthy or not credible.  See *Silver v. City of San Antonio*, 2020 WL 3803922, at *1 (W.D. Tex.  July 7, 2020) (denying leave to file suit); *Silver v. Perez*, 2020 WL 3790489, at *1, 6 (W.D. Tex. July 7, 2020) (same).

**Notwithstanding the foregoing or anything in this Plan to the contrary, this Article XII.K. does not have any impact on and does not affect any claims, obligations, suits, judgments, damages, demands, debts, remedies, causes of action, rights of setoff, other rights, and liabilities between any "Buyer Releasing Party" and any "Seller Releasing Party" (as the terms "Buyer Releasing Party" and "Seller Releasing Party" are defined in Section 7.16(a) and Section 7.16(b), respectively, of the Asset Purchase Agreement).**

## ARTICLE XIII.
## RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan for, among other things, the following purposes:

(1)     to hear and determine motions and/or applications for the assumption or rejection of Executory Contracts and the allowance, classification, priority, compromise, estimation or payment of Claims resulting therefrom;

(2)     to determine or adjudicate any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced or removed after the Confirmation Date, including but not limited to the Retained Causes of Action;

(3)     to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(4)     to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

(5)     to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(6)     to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the Consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(7)     to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(8)     to hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Confirmation Date (e.g., Fee Claims);

(9)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, the Sale Order, the Asset Purchase Agreement, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(10)    to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following Consummation;

(11)    to hear any disputes arising out of, and to enforce, any order approving alternative dispute resolution procedures to resolve personal injury, employment litigation and similar Claims pursuant to section 105(a) of the Bankruptcy Code;

(12)    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(13)    to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(14)    to adjudicate, decide or resolve any and all matters related to section 1141 of the Bankruptcy Code;

(15)    to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(16)    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(17)    to enter a final decree closing the Chapter 11 Cases;

(18)    to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings previously entered or approved by the Bankruptcy Court;

(19)    to recover all assets of the Debtors and property of the Debtors' Estates, wherever located; and

(20)    to hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

Notwithstanding the foregoing or anything to the contrary herein, this <u>Article XIII</u> shall not apply to the California District Court Action, the OBI/Monster Matter, the Trade Secret Matters, the VPX Florida Matters, the Orange Bang Trademark License Action, the TTAB Matter, and/or any litigation or other Proceeding involving a "Buyer Releasing Party" and a "Seller Releasing Party" (as the terms "Buyer Releasing Party" and "Seller Releasing Party" are defined in Section 7.16(a) and Section 7.16(b), respectively, of the Asset Purchase Agreement) that was pending in any jurisdiction or other forum as of June 28, 2023.

## ARTICLE XIV.
## MISCELLANEOUS PROVISIONS

### A.    Payment of Statutory Fees.

On the Effective Date and thereafter as may be required, the Liquidating Trustee shall pay in full in Cash all fees incurred pursuant to § 1930 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for each Debtor's case; *provided, however*, that after the Effective Date such fees shall only be payable until such time as a final decree is entered closing the Chapter 11 Cases, a Final Order converting such cases to cases under chapter 7 of the Bankruptcy Code is entered or a Final Order dismissing the Chapter 11 Cases is entered.

The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be deemed an Administrative Claim against the Debtors and their estates. All such fees due and payable prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Liquidating Debtors or Liquidating Trustee, as applicable, shall pay any and all fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee, until the earliest of the date on which the Chapter 11 Cases are converted, dismissed, or closed.

### B.    Post-Confirmation Reporting.

After the Effective Date, in accordance with guidelines established by the United States Trustee, the Liquidating Trustee will file quarterly operating reports with the Bankruptcy Court.

### C.    Substantial Consummation.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### D.    Amendments.

(1)    *Plan Modifications.* The Debtors reserve the right, with the consent of the Consent Right Parties, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and after entry of the Confirmation Order, the Debtors may amend, modify or supplement the Plan in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, in each case without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition,

56

after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Allowed Interests pursuant to the Plan, *prior to the Effective Date*, the Debtors, and with the consent of the Consent Right Parties but without the need for Bankruptcy Court approval, or *following the Effective Date*, the Liquidating Trustee may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of this Plan, and any holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

(2)    *Other Amendments.*  Before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan and any of the documents prepared in connection herewith without further order or approval of the Bankruptcy Court.

### E.    Revocation or Withdrawal of the Plan.

The Debtors reserve the right to revoke or withdraw the Plan, including the right to revoke or withdraw the Plan for any Debtor or all Debtors, prior to the conclusion of the Confirmation Hearing.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the occurrence of the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors, the Debtors' Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.

### F.    Severability of Plan Provisions Upon Confirmation.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Liquidating Trustee (as the case may be); and (iii) non-severable and mutually dependent.

### G.    Governing Law.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto provides otherwise, the rights, duties and obligations arising under the

57

Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflict of laws thereof; *provided*, that corporate or entity governance matters relating to any Debtor shall be covered by the laws of the state of incorporation or organization of the applicable Debtor.

Notwithstanding the foregoing or anything to the contrary herein, this Article XIV.G. shall not apply to the California District Court Action, the OBI/Monster Matter, the Trade Secret Matters, the VPX Florida Matters, the Orange Bang Trademark License Action, the TTAB Matter, and/or any litigation or other Proceeding involving a "Buyer Releasing Party" and a "Seller Releasing Party" (as the terms "Buyer Releasing Party" and "Seller Releasing Party" are defined in Section 7.16(a) and Section 7.16(b), respectively, of the Asset Purchase Agreement) that was pending in any jurisdiction or other forum as of June 28, 2023.

###### H.    Time.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

###### I.    Additional Documents.

On or before the Effective Date, the Debtors may issue, execute, deliver and file with the Bankruptcy Court or record, as applicable, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors, the Liquidating Trustee, and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

###### J.    Dates of Actions to Implement the Plan.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

###### K.    Immediate Binding Effect.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns, including, without limitation, the Liquidating Trustee.  For the avoidance of doubt, confirmation of the Plan does not provide the Debtors with a discharge under section 1141 of the Bankruptcy Code because the Debtors and their Estates will be wound down in accordance with the Plan.

### L.    Deemed Acts.

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or an event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

### M.    Successor and Assigns.

The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or permitted assign, if any, of each Entity.

### N.    Solicitation of the Plan.

As of and subject to the occurrence of the Confirmation Date: (i) the Debtors shall be deemed to have previously solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, section 1125(a) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation; and (ii) the Debtors and each of their respective directors, officers, managers, members, shareholders, representatives, principals, employees, Affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore, are not, and on account of such offer, issuance and solicitation will not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

### O.    Plan Supplement.

Unless otherwise ordered by the Bankruptcy Court, the Plan Supplement shall be filed with the Bankruptcy Court by not later than the objection deadline for filing objections with respect to the Confirmation Hearing.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be obtained online at the website of the Debtors' court-appointed noticing, claims and solicitation agent, Stretto, Inc., at https://cases.stretto.com/VitalPharmaceuticals.

### P.    Entire Agreement.

Except with respect to the Asset Purchase Agreement and all other documents and instruments executed and delivered in connection with consummation of the Sale Transaction, on the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan. If the Effective Date does not occur, nothing herein shall be construed as a waiver by any party in interest of any or all of such party's rights, remedies, claims, and defenses, and such parties expressly reserve and preserve any and all of their respective rights, remedies, claims, and defenses.  The Plan and the documents comprising the Plan Supplement, including any drafts

59

thereof (and any discussions, correspondence, or negotiations regarding any of the foregoing) shall in no event be construed as, or be deemed to be, evidence of an admission or concession on the part of any party in interest of any claim or fault or liability or damages whatsoever. Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, all negotiations, discussions, agreements, settlements, and compromises reflected in or related to the Plan and the documents comprising the Plan Supplement are part of a proposed settlement of matters that could otherwise be the subject of litigation among various parties in interest, and such negotiations, discussions, agreements, settlements, and compromises shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of the Plan and the documents comprising the Plan Supplement.

> **Q.**    **Exhibits to Plan.**

All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

> **R.**    **Notices.**

All notices, requests and demands to or upon the Debtors and the Liquidating Trustee, as applicable, to be effective shall be in writing (including by electronic or facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**To the Debtors:**

> Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev LLC and Vital Pharmaceuticals International Sales, Inc.
> c/o Huron Consulting Group, LLC
> 1166 Avenue of the Americas, 3rd Floor
> New York, NY 10036
> Attn: John C. DiDonato, Chief Transformation Officer and Interim Chief Executive Officer
> Tel:    (646) 520-0084
> Email: jdidonato@hcg.com
>
> - and –
> -
> LATHAM & WATKINS LLP
> 555 Eleventh Street, NW, Suite 1000
> Washington, D.C. 20004
> Tel:    (202) 637-2200
> Attn: Andrew D. Sorkin, Esq.
> Email: andrew.sorkin@lw.com

12218776-23

- and -

BERGER SINGERMAN LLP
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Attn:    Jordi Guso, Esq. and Michael J. Niles, Esq.
Tel:    (305) 755-9500
Email: jguso@bergersingerman.com
          niles@bergersingerman.com

**To the Liquidating Trustee:** [to be provided in the Plan Supplement]

**To the Creditors' Committee:**

SEQUOR LAW, P.A.
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
Attn: Leyza F. Blanco, Esq., Fernando J. Menendez, Esq. and
Juan J. Mendoza, Esq.
Tel:    (305) 372-8282
Email: lblanco@sequorlaw.com
          fmenendez@sequorlaw.com
          jmendoza@sequorlaw.com

- and –

LOWENSTEIN SANDLER LLP
1251 Avenue of the Americas, 17th Floor
New York, New York 10020
Phone: (212) 419-5868
Attn: Eric Chafetz, Esq., Jeffrey Cohen, Esq., Lindsay Sklar, Esq.
and Erica Mannix, Esq.
Email: echafetz@lowenstein.com
          jcohen@lowenstein.com
          lsklar@lowenstein.com
          emannix@lowenstein.com

61

After the Effective Date, the Debtors have the authority to send a notice to the Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those entities who have filed such renewed requests.

Dated: September 15, 2023                      Respectfully Submitted,
       Miami, Florida

                                               By:  */s/ John C. DiDonato*
                                                    Name: John C. DiDonato
                                                    Title: Chief Transformation Officer and
                                                          Interim Chief Executive Officer

62