**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
www.flsb.uscourts.gov

|  |  |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al*., | Case No. 22-17842 (PDR) |
| Debtors. | |

**JACK OWOC'S MOTION TO COMPEL RULE 2004 DISCOVERY**
**FROM ROTHSCHILD & CO. US INC.**

John H. "Jack" Owoc, pursuant to Fed. R. Bank. P. 2004 and 9016, seeks an Order from the Court compelling Rothschild & Co. US Inc. to provide documents responsive to Mr. Owoc's Rule 2004 subpoena [ECF No. 1791] and designate one or more individuals to appear for examination on a mutually agreeable date. In support of this motion, Mr. Owoc states the following:

## I.    Introduction

The Debtors and the unsecured creditors committee have made no bones about their intention to sue Mr. Owoc and others in his inner-circle:

> As part of its investigation, the Committee discovered that in the four years prior to the Debtors' bankruptcy, the Debtors, at the direction of Mr. Owoc, transferred tens of millions of dollars out of the company solely for Mr. Owoc's personal benefit. As a result, the Committee filed and served twenty-two subpoenas on third parties, including the Owoc Parties, directly and/or indirectly related to the claims and causes of action under investigation, which requested responsive documents and in some cases, required an examination. The Committee, through its professionals, conducted multiple examinations of the subpoenaed third parties, including Mr. Owoc, and obtained necessary information that supports the claims and causes of action under the Committee's investigation.

ECF No. 1909 at **Exhibit 3**.

It does not take an expert to read between the lines that the above language means that chapter 5 claims will be pursued against Mr. Owoc, his family and others affiliated with him.  It also does not take an expert to understand that the hallmark of such claims is insolvency. And lastly, it does not take an expert to understand that: (a) as to balance sheet insolvency, both the assets and liabilities of the Debtors must be considered; and (b) as to cash flow insolvency, the liquidity of the Debtors must be considered.

Enter Rothschild.  Rothschild sits in a unique position as to the Debtors' insolvency.  In the Debtors' own words:

> Rothschild . . . has intimate familiarity with the Debtors' operations and capital structure through its prepetition services to the Debtors. In providing these prepetition services, Rothschild & Co's professionals have become well-acquainted with the Debtors' operations, debt structure, creditors, businesses and operations, and related matters, including (a) familiarizing themselves with the assets and operations of the Debtors; (b) analyzing the Debtors' liquidity and cash flow projections; (c) examining various potential strategic alternatives; (d) engaging with potential financing parties and strategic acquirors and coordinating due diligence sessions; (e) negotiating with key creditor constituencies; and (f) providing additional investment banking services in preparation for the filing of the Debtors' Chapter 11 Cases. In providing these . . . In addition, Rothschild . . . acquired significant knowledge of the Debtors and their businesses and has developed relevant expertise with the Debtors' financial affairs, debt and capital structure, assets, business operations, financing documents, and other related material information.

ECF No. 23.

Mr. Owoc now seeks Rule 2004 discovery from Rothschild on issues relating to the Debtors' solvency.  Although Rule 2004 allows for a fishing expedition, both the document requests and deposition topics directed at Rothschild are nothing of the sort.  Rather, the

Phang | Feldman

One Biscayne Tower | Suite 1600 | 2 S. Biscayne Boulevard | Miami, FL  33131
T: (305) 614-1223 | (F): (305) 614-1187 | www.katiephang.com | feldman@katiephang.com

discovery directed at Rothschild is tailored narrowly to avoid any claim of undue burden or harassment by Rothschild.[1]

Nonetheless, Rothschild refuses to provide any information.  As set forth below, Rothschild raises no legitimate reason why it should not be subject to Rule 2004 discovery.  In sum, Rothstein's objections to Mr. Owoc's document requests should be overruled, responsive materials produced and Rothschild should be compelled to designate one or more witnesses to appear for examination.

## II.    Background

### A.    *Rothschild's pre-petition retention and "intimate familiarity" with the Debtors*

1.    In April 2022, Rothschild was retained by Vital Pharmaceuticals, Inc. ("VPX") as its "exclusive financial advisor."  *See* ECF No. 23 at **Composite Ex. B**, Engagement Letter at 2.

2.    Tracing its history back to the 1760s, Rothschild markets itself as a prestigious investment bank with an illustrious history, well-regarded position in the marketplace and particularly skillful in providing financial advice to troubled companies:

> Rothschild & Co is a member of one of the world's leading independent investment banking groups, with more than fifty offices in more than forty countries. Rothschild & Co has expertise in domestic and cross-border restructurings, mergers and acquisitions, new capital raises and other investment banking services and particular experience in providing financial advice to financially troubled companies. Moreover, Rothschild & Co is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation. 4. Rothschild & Co and its professionals have extensive experience working with financially troubled companies from a variety of industries in complex financial restructurings, both out of court and in chapter 11 cases.

---

[1] To the extent issues relating to production of electronically stored information are the source of heartburn for Rothschild, Mr. Owoc has no issue agreeing to a reasonable number of custodians and search terms to alleviate any purported pain.  The applicable time-period – less than two years – should not be an issue.

3



Rothschild & Co's business reorganization professionals have served as financial and strategic advisors in numerous high-profile bankruptcies and restructurings, providing services to debtors, creditors' committees, and other constituencies in numerous cases . . ..

*Id.* at **Ex. A.** Parkhill Decl. at 1.

3.    Indeed, because of this purported prowess, VPX, then managed and controlled solely by Mr. Owoc, retained Rothschild as the company's financial advisor.

4.    As discussed at length in the firm's engagement letter, it was contemplated that Rothschild would assist VPX in formulating and pursuing any number of financial strategies:

> (a) advising [VPX] with respect to a potential minority investment, sale, merger or other business/strategic combination . . . (b) assisting [VPX] in identifying possible counterparties for a potential M&A Transaction; (c) assisting [VPX] in the development and implementation of a marketing plan and assisting [VPX] in its preparation of an information memorandum describing the Company for use with potential counterparties to a M&A Transaction; (d) assisting [VPX] in its assessment of the financial aspects of a M&A Transaction and, if [VPX] determines to pursue a M&A Transaction, in its development of a plan for accomplishing such M&A Transaction; (e) assisting [VPX] in structuring a M&A Transaction; (f) participating on [VPX's] behalf in negotiations concerning the financial aspects of a M&A Transaction; (g) if and as requested by [VPX], assisting or participating in negotiations with any current creditors of the Company and/or their respective representatives in connection with a Waiver/Forbearance Transaction . . . ; (h) assisting [VPX] in raising new debt or equity financing in connection with a New Capital Raise . . . (i) assisting [VPX] in making internal and external presentations concerning the financial aspects of any proposed Transaction  . . . as appropriate; (j) advising and assisting [VPX] in connection with setting up a data room and due diligence efforts in connection with any proposed Transaction; and (k) providing such other investment banking and financial advisory services as [VPX] and Rothschild . . .may from time to time agree upon.

*Id.* at **Composite Ex. B**, Engagement Letter at 2.

5.    Prior to the bankruptcy filing, Rothstein became intimately familiar with the finances of VPX and its affiliated companies.  Homer Parkhill, the co-head of restructuring at Rothschild, described the relationship as follows:

4



The Debtors require the services of a capable and experienced investment banker such as Rothschild . . .. Moreover, Rothschild . . . has **intimate familiarity** with the Debtors' operations and capital structure through its prepetition services to the Debtors. In providing these prepetition services, Rothschild . . . professionals have become well-acquainted with the Debtors' businesses, operations, debt structure, creditors, and related matters, including (a) familiarizing themselves with the assets and operations of the Debtors; (b) analyzing the Debtors' liquidity and cash flow projections; (c) examining various potential strategic alternatives; (d) engaging with potential financing parties and strategic acquirors and coordinating due diligence sessions; (e) negotiating with key creditor constituencies; and (f) providing additional investment banking services in preparation for the filing of the Debtors' Chapter 11 Cases.

In providing these and other prepetition services to the Debtors, Rothschild . . . has worked closely with the Debtors' senior management and their other advisors and is familiar with the other major stakeholders that will be involved in these Chapter 11 Cases. In addition, Rothschild . . . has acquired significant knowledge of the Debtors and their businesses and has developed relevant expertise with the Debtors' financial affairs, debt and capital structure, assets, business operations, financing documents, and other related material information. Accordingly, Rothschild . . . is well-qualified and uniquely able to represent the Debtors in these Chapter 11 Cases in an efficient and timely manner. Indeed, if the Debtors were required to retain an investment banker other than Rothschild . . . in connection with these Chapter 11 Cases, the Debtors, their estates, and all parties in interest would be prejudiced by the substantial time and expense that would be incurred in familiarizing another firm with the Debtors and their business.

*Id.* at **Ex. A**, Parkhill Dec. at 3-4 (emphasis added).

6.      In fulfilling this role, Rothschild assisted the company in preparing presentations to be presented to third-parties, including disclosure of financial information and projections.

7.      Rothschild was also involved in soliciting interest from third-parties and responding to information requests.  Per reporting in Bloomberg, during Rothschild's pre-petition retention, Keurig Dr Pepper expressed an interest in acquiring the debtor in a transaction that valued the business in the billions of dollars.[2]

---

[2] *See* https://www.bloomberg.com/news/articles/2022-08-18/keurig-dr-pepper-is-said-in-talks-to-buy-bang-energy-owner-vpx#xj4y7vzkg

5



8.      Rothschild continued its role post-petition, and thereafter, additional expressions of interest to were received from multiple strategic buyers, investment firms and others.

B. *The Rule 2004 subpoena to Rothschild and Rothschild's response*

9.      Mr. Owoc served a Rule 2004 subpoena on Rothschild. *See* ECF No. 1791.

10.     As set forth in that document, Mr. Owoc sought eight specific categories of documents:

> 1.      Documents relating to any third-party that expressed an interest to invest in, or acquire the assets of, any of the Debtors.
>
> 2.      Communications with any third-party that expressed an interest to invest in, or acquire the assets of, any of the Debtors.
>
> 3.      Your internal communications relating to any third-party that expressed an interest to invest in, or acquire the assets of, any of the Debtors.
>
> 4.      Communications with the Board relating to any third-party that expressed an interest to invest in, or acquire the assets of, any of the Debtors.
>
> 5.      Communications relating to financial projections provided to You by, or on behalf of the Debtors, that related to any of the Debtors' business operations.
>
> 6.      Any analyses, including drafts, of the Debtors' financial statements or financial projections.
>
> 7.      Any valuations prepared by You relating to the Debtors.
>
> 8.      All marketing materials prepared by You relating to the Debtors.

11.     Separately, Mr. Owoc requested testimony on the following five topics:

> 1.      The marketing for sale of, or investment in, the Debtors or any of the Debtors' assets.

6



**One Biscayne Tower | Suite 1600 | 2 S. Biscayne Boulevard | Miami, FL 33131**
T: (305) 614-1223 | (F): (305) 614-1187 | www.katiephang.com | feldman@katiephang.com

2.    Any analyses performed by You relating to the marketing for sale of, or investment in, the Debtors or any of the Debtors' assets.

3.    Communications with any third-party relating to the marketing for sale of, or investment in, the Debtors or any of the Debtors' assets.

4.    Communications with the Board relating to the marketing for sale of, or investment in, the Debtors or any of the Debtors' assets.

5.    Preparation of materials by You relating to the marketing for sale of, or investment in, the Debtors or any of the Debtors' assets.

12.    Rothschild served its response to the subpoena on August 25, 2023.  A copy of the response is attached as **Exhibit 1**.

13.    The objection can be summarized as follows:  After multiple pages of improper general objections and objections to the instructions found in the subpoena, Rothschild refused to produce any documentation in its own possession, custody or control or designating a witness to sit for examination on the identified topics.  All that Rothschild offered up was a reference to approximately 500 pages of documents produced by the Debtors, that in almost all respects, is not responsive to the documents requested from Rothschild.[3]

### III.    Relief Requested

The Court should compel Rothschild to produce documents and sit for examination. Both the document discovery and testimony sought from Rothschild fits squarely within the confines of Rule 2004:  The requested documents and testimony center on "acts, conduct, or property or to the liabilities and financial condition of the debtor."  *See Fed. R. Bank. P.* 2004(b). The objections raised by Rothschild to this discovery are all legally unsupportable.

---

[3] The documents produced by the Debtors consist of the following three categories:  (1) non-disclosure agreements submitted by various interested parties; (2) several non-binding letters of intent; and (3) follow-up communications regarding categories (1) and (2).

7



**One Biscayne Tower | Suite 1600 | 2 S. Biscayne Boulevard | Miami, FL 33131**
T: (305) 614-1223 | (F): (305) 614-1187 | www.katiephang.com | feldman@katiephang.com

A. *The discovery sought from Rothschild falls within the scope of Rule 2004*

Rule 2004 provides that an interested party may seek discovery about "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . .." *See Fed. R. Bankr. P.* 2004.

The scope of examination allowed under Rule 2004 is larger than that allowed in a civil case under the Federal Rules of Civil Procedure and can be in the nature of a "fishing expedition." *See In Re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983) (citing cases). "Although the primary purpose of a Rule 2004 examination is to permit the trustee to quickly ascertain the extent and location of the estate's assets . . . such examination is not limited to the debtor or his agents, but may extend to creditors and third parties who have had dealings with the debtor. *Matter of Wilcher*, 56 B.R. 428, 433 (Bankr. N.D. Ill. 1985).

Here, the discovery sought from Rothschild relates to the Debtors' financial condition. The document requests seek information about the valuation of the Debtors and their assets, either from third-parties or Rothschild itself. As Rothschild itself concedes, it "acquired significant knowledge of the Debtors and their businesses and has developed relevant expertise with the Debtors' financial affairs, debt and capital structure, assets, business operations, financing documents, and other related material information." Bottom-line, Rothschild has a unique perspective regarding the Debtors' financial condition over a critical time period that is relevant as these cases move forward.

B. *Rothschild's objections to the Rule 2004 document requests are legally unsupportable*

Rothschild's objections to Mr. Owoc's discovery are improper. At the outset, Rothschild's general objections are legally meaningless and should be overruled. *See Thermoset*

8



*Corp. v. Bldg. Materials Corp.*, No. 14-60268-CIV-COHN/SELTZER, at *3 (S.D. Fla. Nov. 18, 2014) ("This Court, as well as many others, disfavors 'general objections' that fail to discuss deficiencies in specific discovery requests. . . . Accordingly, this Court will disregard Defendants' 'General Objections and Responses.'"); *Mills v. East Gulf Coast Preparation Co., LLC*, 259 F.R.D. 118, 132 (S.D.W. Va. 2009) ("Objections to [discovery requests] must be stated specifically, and boilerplate objections regurgitating words and phrases from Rule 26 are completely unacceptable."); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, No. CIV. A 97-2391, 1998 WL 231135, at *1 (D. Kan. May 6, 1998) ("The Court finds these General Objections worthless for anything beyond delay of discovery. [The responding parties] might just as well have said they object upon every possible ground which the law may provide, so long as it may conceivably apply to [a discovery request]. These ostensible objections say nothing of consequence. . . . [The responding parties] have made no meaningful effort to show the application of any such theoretical objection to any [discovery request]. They have simply stated them as hypothetical or contingent possibilities. . . . They hedge each objection with noncommittal language 'to the extent' it may apply. This says nothing more than [the responding parties] possibly may or may not want to object to [a discovery request] on any one or more of twelve different, broadly stated grounds.").[4]

The objections raised by Rothschild to each document request are also without merit. Without taking into account the broad nature of Rule 2004 discovery, the party objecting to a

---

[4] The various standing orders for discovery utilized by the magistrate judges in the Southern District of Florida all prohibit general objections. *See, e.g., Order Setting Discovery Procedures* for Magistrate Judge Maynard [hereinafter, Maynard Standing Order] ("The parties also shall not make General Objections that are not tied to a particular discovery request. Such objections are meaningless and will be found meritless by this Court").

9



subpoena under Rule 45 bears the burden to show that the subpoena is unreasonable or unduly burdensome. *See, e.g., Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). To determine whether the subpoena presents an undue burden, courts consider the following factors: (1) relevance of the information requested; (2) need of the party for the documents; (3) breadth of the document request; (4) time period covered by the request; (5) particularity with which the party describes the requested documents; and (6) burden imposed. *Id.*

Rothschild made no effort in providing legally cognizable objections to the document requests based upon this legal framework. Rather, it raised similar boilerplate objections to each document request, to wit: Mr. Owoc either has the documents or can obtain them from someone else, duplication of production, privilege, confidentiality, and that production is somehow overbroad and unduly burdensome. Each objection is conclusory in nature and improper on its face. *See, e.g.,* Maynard Standing Order ("Objections that state that a discovery request is 'vague, overly broad, or unduly burdensome' are, standing alone, meaningless, and will be found meritless by this Court. A party objecting on these grounds must explain the specific and particular way in which the request is vague, overly broad or unduly burdensome. . . . In addition, claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome."). Moreover, Rothschild's refusal to produce **anything** beyond what the Debtors produced makes clear that Rothschild is not proceeding in good faith. As noted above, the documents produced by the Debtors is limited in scope and largely unresponsive to what is sought from Rothschild. Indeed, several of the requests seek information that is uniquely within the possession, custody or control of Rothschild, not the Debtors. *See* Request Nos. 3, 5, 6, 7 & 8. Thus, Rothschild cannot

10



credibly object to production on the basis that Mr. Owoc has these documents or can get them from someone else when it is only Rothschild that has the materials.

Even if Rothschild took the time to provide legally recognized objections to the document requests, they should be overruled. The discovery sought fits squarely within Rule 2004 as addressed above, the requested information is critical to issues that will take place in these bankruptcy proceedings, the requests are narrow, specifically targeted and center on a limited time-period and Mr. Owoc has no objection to entering into a confidentiality agreement, providing reasonable ESI search criteria and eliminating duplication in the production process to address Rothschild's supposed concerns about burden imposed upon it in producing documents.

*C.  Rothschild's objections to the examination topics are also legally unsupportable*

With respect to the examination topics, Rothschild again provided a series of boilerplate objections. As set forth above, such objections are meaningless. Nonetheless, Mr. Owoc addresses one specific aspect of Rothschild's objections to the examination topics: Charles Delo. Mr. Delo is a Rothschild employee and was previously offered up by the Debtors as a witness – and was subsequently deposed – in connection with the motion to sell the Debtors' assets. Because Mr. Delo was deposed in this limited instance, Rothschild is now asserting Mr. Owoc is forbidden from taking the company's deposition. This position is without merit for two reasons. *First*, the topics of examination go well beyond the scope of Mr. Delo's examination as to the contested issues that arose as to the sale motion. *Second*, Mr. Delo was deposed in his individual capacity; it is unknown whether Rothschild would designate Mr. Delo as its corporate representative as to any of the Rule 2004 examination topics. But to the extent Rothschild does so, undersigned counsel has no intention of treading over familiar ground with Mr. Delo. Rather,

11



**Phang | Feldman**

**One Biscayne Tower | Suite 1600 | 2 S. Biscayne Boulevard | Miami, FL 33131**
**T: (305) 614-1223 | (F): (305) 614-1187 | www.katiephang.com | feldman@katiephang.com**

the intent of the examination is to get sworn testimony about Rothschild's insight as to the Debtors' financial condition and how it evolved over time.

## IV. Conclusion

No one likes to be bothered with third-party discovery. But Rule 2004 allows for it and Rothschild is no stranger to this case. To the contrary, Rothschild served as the Debtors' investment banker both pre- and post-petition and became intimately familiar with the Debtors' financial affairs over sixteen months and paid handsomely in the process. Thus, Rothschild should be compelled to produce documents and sit for examination.

WHEREFORE, Mr. Owoc requests the Court enter an Order granting this motion, overruling Rothschild's objections to the Rule 2004 subpoena, require Rothschild to produce responsive materials within fourteen (14) days of any hearing granting this motion, designate one or more witnesses to appear for examination within 30 days of any hearing granting this motion and granting such other relief the Court deems just and proper.

Dated: October 4, 2023

PHANG & FELDMAN, P.A.
*Attorneys for John H. Owoc, Megan Owoc,*
*Elite Island, LLC and Entourage IP Holding, LLC*
2 S. Biscayne Boulevard, Suite 1600
One Biscayne Tower
Miami, Florida 33131
Telephone: (305) 614-1223

By:     */s/ Jonathan S. Feldman*
Jonathan S. Feldman (12682)
feldman@katiephang.com
service@katiephang.com

12



**Good Faith Certification**

Counsel for John H. Owoc certifies that he attempted to resolve the issues set forth in this Motion with counsel for Rothschild in good faith, however, the parties were unable to reach resolution.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed and served on October 4, 2023, via the Court's Notice of Electronic Filing (CM/ECF) on all Registered Users.

By:     */s/ Jonathan S. Feldman*
Jonathan S. Feldman (12682)
feldman@katiephang.com

13



One Biscayne Tower | Suite 1600 |2 S. Biscayne Boulevard | Miami, FL  33131
T: (305) 614-1223 | (F): (305) 614-1187 | www.katiephang.com | feldman@katiephang.com