

**ORDERED in the Southern District of Florida on November 8, 2023.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| VITAL PHARMACEUTICALS, INC., *et al*., | Case No.: 22-17842-PDR |
| Debtors.[1] | (Jointly Administered) |
| _____/ | |

### ORDER (I) APPROVING ON A FINAL BASIS THE SECOND AMENDED DISCLOSURE STATEMENT FOR DEBTORS' SECOND AMENDED JOINT PLAN OF LIQUIDATION, AND (II) CONFIRMING THE DEBTORS' SECOND AMENDED JOINT PLAN OF LIQUIDATION

**THIS MATTER** came before the Court (the "Bankruptcy Court" or "Court")[2] on the 31st day of October, 2023 at 1:30 p.m. (the "Confirmation Hearing") and a Status Conference

---

[1]  The address of the Debtors is 1600 N. Park Drive, Weston, FL 33326.  The last four digits of the Debtors' federal tax identification numbers are: (i) Vital Pharmaceuticals, Inc. ("Vital Pharmaceuticals") (8430); (ii) Bang Energy Canada, Inc. (5454); (iii) JHO Intellectual Property Holdings, LLC (0010); (iv) JHO Real Estate Investment, LLC (9394); (v) Quash Seltzer, LLC ("Quash Seltzer") (6501); (vi) Rainbow Unicorn Bev LLC (2254); and (vii) Vital Pharmaceuticals International Sales, Inc. (8019).

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to such terms in the Plan.

conducted on November 7, 2023 at 11:00 a.m. in Fort Lauderdale, Florida, to consider final approval of the *Second Amended Disclosure Statement for Debtors' Second Amended Joint Plan of Liquidation*, dated September 15, 2023 [ECF No. 1904] (the "<u>Disclosure Statement</u>") and confirmation of the *Debtors' Second Amended Joint Plan of Liquidation*, dated September 15, 2023 [ECF No. 1905], as supplemented by the (i) the *Notice of Filing Plan Supplement*, dated October 17, 2023 [ECF No. 2051], and (ii) the *Notice of Filing Second Plan Supplement,* dated October 25, 2023 [ECF No. 2115] (together, the "<u>Plan Supplement</u>", and, collectively, as supplemented, the "<u>Plan</u>"), filed by the Debtors, Vital Pharmaceuticals, Inc., Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev LLC, and Vital Pharmaceuticals International Sales, Inc. (collectively, the "<u>Debtors</u>" or "<u>Plan Proponents</u>"); and the Bankruptcy Court having entered, after due notice and a hearing, the *Order (I) Conditionally Approving Disclosure Statement for Debtors' Joint Plan of Liquidation; (II) Establishing and Approving Solicitation and Voting Procedures With Respect to Plan; (III) Approving Form of Ballots; and (IV) Establishing Notice and Objection Procedures in Respect of Confirmation of Joint Plan of Liquidation* [ECF No. 1909] (the "<u>Conditional Approval Order</u>") conditionally approving the Disclosure Statement as containing "adequate information" regarding the Plan in accordance with 11 U.S.C. §1125(a), approving the solicitation and voting procedures, as well as approving, in final form and content, the (i) ballot for Class 3 (General Unsecured Claims) creditors to vote for or against the Plan (the "<u>Class 3 Ballot</u>"), in the form attached to the Conditional Approval Order as Exhibit 1, (ii) Debtors' solicitation letter (the "<u>Debtors' Solicitation Letter</u>"), in the form attached to the Conditional Approval Order as Exhibit 2, (iii) the Creditors' Committee's solicitation letter (the "<u>Committee's Solicitation Letter</u>"), in the form attached to the Conditional Approval Order as Exhibit 3, (iv) the

2

Confirmation Hearing Notice, in the form attached to the Conditional Approval Order as Exhibit 4, and (v) the Notice of Non-Voting Status and Opt-Out Form, in the form attached to the Conditional Approval Order as Exhibit 5; the Solicitation Package (as defined below) having been duly transmitted to holders of Claims entitled to vote thereon as provided in the Conditional Approval Order; and the Notice of Non-Voting Status and Opt-Out Form and Confirmation Hearing Notice having been duly transmitted to the Non-Voting Classes (as defined below), and due notice of (i) entry of the Conditional Approval Order, (ii) the Confirmation Hearing, (iii) the deadline for voting on, and/or objecting to the Plan having been provided to holders of Claims against and Interests in the Debtors and other parties in interest, in accordance with the Conditional Approval Order, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the Southern District of Florida (the "Local Bankruptcy Rules"); and such notice being sufficient under the circumstances and no other or further notice being required; and the following objections to confirmation of the Plan having been filed: (i) *Creditor Broward County's (I) Limited Objection to Confirmation and (II) Motion for Leave to Amend Claims or File Late Claims* [ECF No. 2056] (the "County Objection"); (ii) *Limited Objection and Reservation of Rights of John H. Owoc to Confirmation of Debtors' Second Amended Joint Plan of Liquidation* [ECF No. 2059] (the "Owoc Objection"); and (iii) *Limited Objection of ThermoLife International, LLC to Confirmation of Debtors' Second Amended Joint Plan of Liquidation* [ECF No. 2060] (the "ThermoLife Objection"); and (i) the County Objection having been withdrawn [ECF No. 2162] and the ThermoLife Objection having been resolved pursuant to the terms of the *Agreed Order Resolving Application of ThermoLife International, LLC For Allowance and Payment of Administrative Expense Claim* [ECF No. 2142]; upon consideration of the: (i) *Debtors' Memorandum of Law in Support of the Debtors' Second*

3

*Amended Joint Plan of Liquidation* [ECF No. 2155] (the "Confirmation Brief") (ii) the *Amended Certification of Stretto, Inc. Regarding the Solicitation of Votes and Tabulation of Ballots in Connection With the Debtors' Second Amended Joint Plan of Liquidation* [ECF No. 2164] (the "Stretto Declaration"); (iii) the *Debtors' Amended Certificate of Proponents of Plan on Acceptance of Plan, Report on Amount to be Deposited, Certificate of Amount Deposited and Payment of Fees* [ECF No. 2165] (the "Debtors' Certificate" or "Ballot Report") (describing, among other things, the methodology for the tabulation and results of voting with respect to the Plan and evidencing that the Debtors have received the requisite acceptances of the Plan in both number and amount as required by section 1126 of the Bankruptcy Code); and (iv) the *Confirmation Declaration of John C. DiDonato in Support of the Debtors' Second Amended Joint Plan of Liquidation* [ECF No. 2152] (the "DiDonato Declaration", and, together with the Stretto Declaration, and the Debtors' Certificate, collectively, the "Declarations"); and the Bankruptcy Court having reviewed and considered the Disclosure Statement, Plan, Conditional Approval Order, Confirmation Brief, Declarations, and all related documents; and the appearance of all interested parties having been duly noted in the record of the Confirmation Hearing, including the Declarations filed and any testimony therein and the exhibits admitted into evidence; and upon all of the proceedings had before the Bankruptcy Court and upon the entire record of the Confirmation Hearing; and the Bankruptcy Court having determined based upon all of the foregoing that the Disclosure Statement should be approved on a final basis and the Plan should be confirmed, as reflected by the Bankruptcy Court's rulings made herein and on the record of the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED, AND DECREED, AS FOLLOWS:

## **FINDINGS OF FACT**

A.    <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  The Court incorporates by reference all findings of fact and conclusions of law set forth on the record at the Confirmation Hearing as if set forth fully herein.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitutes findings of fact, they are adopted as such.

B.    <u>Jurisdiction</u>.  The Court has jurisdiction over the Debtors' Chapter 11 Cases (as defined below), final approval of the Disclosure Statement, and confirmation of the Plan pursuant to 28 U.S.C. § 1334.  Final approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order consistent with Article III of the United States Constitution with respect thereto.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are proper plan proponents under sections 1121(a) and (c) of the Bankruptcy Code.

C.    <u>Commencement and Joint Administration of the Debtors' Chapter 11 Cases</u>.  On October 10, 2022 (the "<u>Petition Date</u>") each of the above-captioned Debtors commenced a case under chapter 11 of the Bankruptcy Code (collectively, the "<u>Chapter 11 Cases</u>").  By prior order of the Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  The Debtors have operated their businesses

and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

D.    Appointment of Creditors' Committee.  On November 1, 2022, the Office of the United States Trustee (the "U.S. Trustee") appointed the Creditors' Committee, and on November 23, 2022, the U.S. Trustee reconstituted the Creditors' Committee.  The Creditors' Committee is now comprised of the following seven members: (1) Archer Daniels Midland Co.; (2) Trinity Logistics, Inc.; (3) Ardagh Metal Packaging USA Corp.; (4) Crown Cork & Seal USA, Inc.; (5) XPO Logistics, L.L.C. a/k/a RXO Inc.; (6) Pepsi; and (7) Peter Fischer, c/o Daniel F. Harvath, putative class action plaintiff. [ECF No. 400].

E.    Judicial Notice.  The Bankruptcy Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

F.    Burden of Proof.  The Debtors have met their burden of proving compliance with each element of sections 1125 and 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

G.    Adequacy of Disclosure Statement.  The Disclosure Statement contains "adequate information," as such term is defined in section 1125(a)(1) of the Bankruptcy Code, with respect to the Plan Proponents/Debtors, Plan, and the transactions contemplated therein, and is approved on a final basis.

H.    Solicitation and Notice.  On September 18, 2023, the Bankruptcy Court entered the Conditional Approval Order, which, among other things, conditionally approved the Disclosure

6

Statement, finding that it contained "adequate information" within the meaning of section 1125(a)(1) of the Bankruptcy Code, established procedures for the Debtors' solicitation and tabulation of votes on the Plan, and established procedures for the Non-Voting Classes to elect to opt-out of the Third-Party Release included in the Plan.  The (a) Conditional Approval Order (without exhibits), (b) Class 3 Ballot for voting on the Plan, (c) the Debtors' Solicitation Letter, (d) the Committee's Solicitation Letter, and (e) the Confirmation Hearing Notice (collectively, the "Solicitation Package"), were served in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Conditional Approval Order (the "Solicitation").  As evidenced by the *Notice of Filing Affidavit of Publication* [ECF No. 1924], the Debtors published notice of the Confirmation Hearing in *The Sun Sentinel* as required by the Conditional Approval Order.  As described in the Conditional Approval Order, and as set forth in the Stretto Declaration, (i) the service of the Solicitation Packages was adequate and sufficient under the circumstances of these Chapter 11 Cases, and (ii) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings and matters described in the Conditional Approval Order was timely provided in compliance with the requirements of the Conditional Approval Order, Bankruptcy Rules and provided due process to all parties in interest.  No other or further notice is required.

      I.          <u>Voting</u>.  Votes on the Plan were solicited after disclosure of "adequate information" as defined in section 1125(a)(1) of the Bankruptcy Code.  As evidenced by the Stretto Declaration and the Debtors' Certificate, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Conditional Approval Order, the Bankruptcy Code, and the Bankruptcy Rules.

      J.          <u>Notice of Non-Voting Status and Opt-Out Form</u>.  The (a) Notice of Non-Voting Status and Opt-Out Form and (b) Confirmation Hearing Notice were served in compliance with the

Conditional Approval Order upon the holders of Claims that are: (i) unclassified under the Plan, (ii) in Class 1 (Other Secured Claims), (iii) Class 2 (Other Priority Claims), (iv) in Class 4 (Intercompany Claims), and (v) in Class 5 (Other Subordinated Claims) (collectively, the "Non-Voting Classes").

     K.     Plan Modifications. To resolve the Owoc Objection and informal objections and comments to the Plan, the Debtors have made the following modifications to the Plan:

     i.  **New Definitions:**

 "*Insurance Contract*" means all insurance policies that have been issued at any time to or provide coverage to any of the Debtors or their predecessors and all agreements, documents, or instruments relating thereto, including for the avoidance of doubt, any D&O Insurance Policy.

 "*Insurer*" means any company or other entity that issued or entered into an Insurance Contract (including any third-party administrator) and any respective predecessors and/or affiliates thereof.

 "*Opt-Out Party*"  means any Person or Entity who: (i) cast a Class 3 Ballot rejecting the Plan, (ii) elected to opt-out of the Third-Party Releases contained in Article XII. H of the Plan by completing, signing and returning the Opt-Out Form in accordance with the Conditional Approval Order, or (iii) elected to opt-out of the Third-Party Releases contained in Article XII. H of the Plan by completing, signing and returning the Supplemental Opt-Out Form in accordance with paragraph 27 of this Order.  For the avoidance of doubt, ThermoLife International, LLC and John H. Owoc are Opt-Out Parties.

  ii. **Revisions to Existing Definitions:**  The definition of "D&O Insurance Policy" is deleted in its entirety and replaced with the following:

 "*D&O Insurance Policy*" means any insurance policy issued at any time or providing coverage to the Debtors for directors, member, trustees, and officers liability and any and all agreements, documents, or instruments relating thereto.

  iii. **Revisions to Existing Plan Provisions:**

    **ARTICLE  III.J.**    **Subordinated Claims –** is deleted in its entirety and replaced with the following:

8

The allowance, classification, and treatment of all Allowed Claims and Interests, and the respective distributions and treatments under the Plan, shall take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Reorganized Debtors or the Liquidating Trust, as applicable, reserve the right to re-classify any Claim or Interest in accordance with any contractual, legal, or equitable subordination rights relating thereto.

Notwithstanding the foregoing, any claims asserted by the Excluded Parties shall not be deemed subordinated under the Plan through general principles of equitable subordination, section 510 of the Bankruptcy Code or otherwise, unless and until such claims are finally adjudicated by the Bankruptcy Court after proper notice and a hearing related to any purported subordination of, or other objection to, such claims with sufficient opportunity for the Excluded Parties to respond and be heard regarding the same. Until any such final adjudication, all rights related to any claim asserted by the Excluded Parties are fully reserved and nothing herein shall act to limit or otherwise prejudice such rights. Further, and for the avoidance of doubt, any claims asserted by the Excluded Parties shall not be deemed "Other Subordinated Claims" as defined in the Plan unless and until such claims are finally adjudicated consistent with the foregoing.

**ARTICLE VIII.I.    Setoffs and Recoupments** – is deleted and replaced in its entirety

with the following:

The Debtors and the Liquidating Trustee, as applicable, may, but shall not be required to, set off or recoup against any Claim, any claims of any nature whatsoever that the Debtors or the Liquidating Trustee, as applicable, may have against the holder of such Claim; *provided that,* neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or the Liquidating Trustee, as applicable, of any such claim the Debtors or the Liquidating Trustee may have against the holder of such Claim.

Notwithstanding the foregoing, the Debtors and Liquidating Trustee shall not set off or recoup against any claim asserted by the Excluded Parties, any claim the Debtors or Liquidating Trustee, as applicable, may assert against the Excluded Parties, unless and until there is a final determination by the Bankruptcy Court, after proper notice and a hearing, as to (i) the validity of any such alleged claim by the Debtors or Liquidating Trustee and (ii) the Debtors' or Liquidating Trustee's right to set off or recoupment.

**ARTICLE X.F.    Insurance Policies –** is deleted in its entirety and replaced with the

following:

Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any bar date notice or claim objection, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases): (a) each Insurance Contract shall be deemed executory and shall be assumed by the Debtors on behalf of the applicable Debtor effective as of the Effective Date, pursuant to sections 105, 365 and 1123 of the Bankruptcy Code, unless such Insurance Contract previously was assumed and assigned under the Asset Purchase Agreement, was rejected by the Debtors pursuant to a Final Order of the Bankruptcy Court before the Confirmation Date, or is the subject of a motion to reject pending on the Confirmation Date, and upon such assumption, all of the rights and obligations of the Debtors under the Insurance Contracts shall vest, unaltered, in the Liquidating Trust; (b) all Insurance Contracts and all legal, equitable or contractual rights, obligations, and defenses of the Insurers, the Debtors (or, after the Effective Date, the Liquidating Trust), or any other individual or entity, as applicable, under any Insurance Contracts, whether arising before or after the Effective Date, shall survive and shall not be amended, modified, waived, released, discharged or impaired in any respect, except that on and after the Effective Date, the Liquidating Trust shall become and remain liable in full for all of its and the Debtors obligations under the Insurance Contracts regardless of when such obligations arise, and (I) Insurers shall not be required to file or serve any objection to a proposed cure amount or a request, application, claim, Proof of Claim or proper term or motion for payment or allowance of any Administrative Expense Claim, and Insurers shall not be subject to any bar date or similar deadline governing cure amounts, Proofs of Claim or Administrative Expense Claims, and (II) coverage for defense and indemnity under any D&O Insurance Policy shall remain available to all individuals within the definition of "Insured" in any D&O Insurance Policy subject to the terms and conditions thereof, and, for the avoidance of doubt,  on and after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any D&O Insurance Policy for the full term of such D&O Insurance Policy subject to the terms and conditions thereof regardless of whether such officers, directors, agents, and/or employees remain in such positions on or after the Effective Date; and (c) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article XII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit:  (I) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (II) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Court granting a claimant relief from the automatic stay or the injunctions set forth in Article XII of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (IV) the Insurers to take any other actions relating to the Insurance Contracts (including effectuating a setoff).

**ARTICLE X.G.** **Survival of Debtors' Indemnification Obligations** – is deleted in its entirety and replace with the following:

To the fullest extent permitted by applicable law, any obligations of the Debtors pursuant to their corporate charters, by-laws, limited liability company agreements, memorandum and articles of association, or other organizational documents and agreements to indemnify any Indemnitee based upon any act or omission for or on behalf of the Debtors shall not be discharged, impaired, or otherwise affected by the Plan; provided that, notwithstanding anything herein, the Debtors shall not indemnify any Indemnitee for any claims or Causes of Action arising out of or relating to any act or omission (i) that is a criminal act unless such officer, director, agent, or employee had no reasonable cause to believe its conduct was unlawful; (ii) that is determined by a Final Order to be the result of fraud, gross negligence, or willful misconduct; or (iii) for any other acts or omissions that are excluded under the terms of the foregoing organizational documents. All such obligations, unless otherwise described in (i)-(ii) above, shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan unless such obligation previously was assumed and assigned under the Asset Purchase Agreement, was rejected by the Debtors pursuant to a Final Order of the Bankruptcy Court, or is the subject of a motion to reject pending on the Effective Date.

On the Effective Date, the Debtors shall establish the Indemnity Reserve, which shall be segregated, separately maintained by the Liquidating Trustee and used solely to satisfy the Debtors' indemnification obligations to the Indemnitees who were serving as of the Effective Date; *provided,* that any amounts of Cash in the Indemnity Reserve not used for such purposes on or before the second (2nd) anniversary of the Effective Date (**"Termination Date"**) shall revert to the Liquidating Trustee and become Residual Cash; *provided, further,* that (i) prior to the Termination Date the Liquidating Trustee and the Indemnitees who were serving as of the Effective Date of the Plan shall engage in good faith discussions regarding an extension of the Termination Date, and (ii) the Termination Date may be extended by the Liquidating Trustee in its sole discretion without further Order of the Bankruptcy Court; *provided further,* that, nothing precludes or otherwise affects any Excluded Party's right to (i) any benefits of any D&O Policy as provided in Article X.F. of the Plan or (ii) seek or request indemnification for the time such Excluded Party served as a director or officer of the Debtors as provided in this Article X.G.; provided, however, with respect to "ii", without prejudice to any parties' rights, if any, to object to such upon further notice; provided, further, however, that no such indemnification shall be paid, in whole or in part, from the Indemnitee Reserve.

**ARTICLE XII.I.** **Exculpation** – is deleted in its entirety and replaced with the text contained in paragraph 29 of this Order.

11

## SUPPLEMENT TO THE PLAN

L.      Plan Supplement.  The Debtors filed the Plan Supplement which included (a) the identity of the Liquidating Trustee and the terms of his compensation, (b) the Liquidating Trust Agreement, and (c) the list of Retained Causes of Action. Pursuant to section 1127(a) of the Bankruptcy Code, the Plan Supplement is hereby made a part of the Plan.

M.      Deemed Acceptance of Plan.  The contents included in the Plan Supplement are immaterial or do not adversely affect the treatment of any Claim against or Interest in the Debtors under the Plan.  Therefore, in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan, as modified by the Plan Supplement.  No holder of a Claim that has voted to accept the Plan shall be permitted to change its acceptance to a rejection as a consequence of the Plan Supplement.  The Plan Supplement neither requires additional disclosure under section 1125 of the Bankruptcy Code, nor re-solicitation of votes on the Plan under section 1126 of the Bankruptcy Code.

N.      Compliance With § 1127 of the Bankruptcy Code.  The Plan Supplement incorporated into the Plan complies with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

## COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE

O.      Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

P.      Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)). In addition to Administrative Expense Claims, DIP Claims, Fee Claims, and Priority Tax Claims, which need not

be classified, Article III of the Plan designates the following five classes of Claims and one class of Interests: Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 3 (General Unsecured Claims), Class 4 (Intercompany Claims), Class 5 (Other Subordinated Claims), and Class 6 (Existing Equity Interests).  Each of the Claims or Interests, as the case may be, in each particular Class is substantially similar to the other Claims or Interests within such Class.  Valid business, legal and factual reasons exist for separately classifying the various Claims and Interests pursuant to the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests.  The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

Q.      <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  Article III and Article IV of the Plan specify that Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired under the Plan, thereby complying with section 1123(a)(2) of the Bankruptcy Code. The Plan therefore satisfies section 1123(a)(2) of the Bankruptcy Code.

R.      <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  Article IV of the Plan designates Class 3 (General Unsecured Claims), Class 4 (Intercompany Claims), Class 5 (Other Subordinated Claims), and Class 6 (Existing Equity Interests) as Impaired, and Article IV.C(1)-F(3) of the Plan specifies the treatment of Claims and Interests in such Classes, thereby complying with section 1123(a)(3) of the Bankruptcy Code.  The Plan therefore satisfies section 1123(a)(3) of the Bankruptcy Code.

S.      <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.  The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment on account of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.  The Plan therefore satisfies section 1123(a)(4) of the Bankruptcy Code.

T.       Implementation of the Plan (11 U.S.C. § 1123(a)(5)).  The Plan provides adequate and proper means for the implementation of the Plan as required by section 1123(a)(5) of the Bankruptcy Code.  The Plan therefore satisfies section 1123(a)(5) of the Bankruptcy Code.

U.       Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)).  As a liquidating plan, the Plan does not provide for the issuance of nonvoting equity securities.  As such, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

V.       Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).  The identity and affiliation of any individuals proposed to serve, after confirmation of the Plan, have been disclosed, as the Liquidating Trustee has been disclosed in the Liquidating Trust Agreement which was incorporated into the Plan Supplement, and filed prior to the Confirmation Hearing.  Accordingly, the selection of the Liquidating Trustee is consistent with the interests of creditors, equity security holders, and public policy.  As such, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

W.       Additional Plan Provisions (11 U.S.C. § 1123(b)).  The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b) of the Bankruptcy Code.  The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

X.       Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1)).  As contemplated by section 1123(b)(1) of the Bankruptcy Code, Classes 3, 4, 5 and 6 are Impaired by the Plan, and Classes 1 and 2 are Unimpaired.  Accordingly, the Plan satisfies section 1123(b)(1) of the Bankruptcy Code.

Y.       Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2)).  In accordance with section 1123(b)(2) of the Bankruptcy Code, Article X of the Plan provides that

each Executory Contract[3] not previously rejected, assumed, or assumed and assigned shall be deemed automatically rejected by the Debtors on the Effective Date of the Plan, unless such Executory Contract (i) is identified for assumption in the Plan Supplement; (ii) is subject to a pending motion to assume as of the Effective Date; (iii) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (iv) is a D&O Policy. Accordingly, the Plan satisfies the requirements of section 1123(b)(2) of the Bankruptcy Code.

Z.    <u>Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, including having complied with section 1125 of the Bankruptcy Code with respect to the Disclosure Statement and the Plan.

AA.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Debtors are the proponents of the Plan.  The Debtors have proposed the Plan (including all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby complying with section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the record of these Chapter 11 Cases, including the Declarations and the record of the hearing to conditionally approve the Disclosure Statement, the entry by this Court of the Conditional Approval Order, the record of the Confirmation Hearing, and other proceedings held in these Chapter 11 Cases.  The Plan is based upon extensive, arms'-length and good faith negotiations between and among the Debtors, the Creditors' Committee, the Buyer, the DIP Lenders, other creditors and parties-in-interest, and represents the culmination of months of intensive negotiations and discussions among all parties in interest and are each necessary to the Estates' successful liquidation in chapter 11.

---

[3] "<u>Executory Contract</u>" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

Moreover, the Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and effectuating a successful liquidation of the Debtors. The Plan accomplishes maximization of the Debtors' Estates and equitable distribution of the Debtors' assets by providing the means through which the Debtors may effectuate distributions to the creditors. The Impaired Class of Claims entitled to vote to accept or reject the Plan (Class 3) has voted overwhelmingly to accept the Plan, and all of the Debtors' significant creditors support the Plan. The U.S. Trustee does not object to the Plan. Further, the indemnification, exculpation, release, gatekeeper, and injunction provisions of the Plan have been negotiated in good faith and at arms'-length with, among other persons, representatives of the Debtors, parties in interest, and their respective advisors, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary to the Debtors' successful liquidation in chapter 11. Accordingly, the Plan and the related documents have been filed in good faith and the Plan Proponents have satisfied their obligations under section 1129(a)(3) of the Bankruptcy Code.

BB.    <u>Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4))</u>. Pursuant to the interim compensation procedures previously approved by this Court and established in these Chapter 11 Cases pursuant to section 331 of the Bankruptcy Code, all payments made or to be made by the Debtors for services or for costs and expenses in connection with these Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

CC.    <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliation of any individuals proposed to serve, after confirmation of the Plan have been disclosed, as the name of

the Liquidating Trustee has been disclosed in the Plan Supplement and accompanying Liquidating Trust Agreement which has been incorporated into the Plan. As such, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

DD.    No Rate Changes (11 U.S.C. § 1129(a)(6)).    No governmental regulatory commission has jurisdiction, after confirmation of the Plan, over the rates of the Debtors.  Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

EE.    Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).    As demonstrated by the DiDonato Declaration, the Stretto Declaration, the Debtors' Certificate, and the Liquidation Analysis attached as Exhibit "3" to the Disclosure Statement, which employed commonly accepted methodologies and reasonable assumptions, with respect to each Impaired Class of Claims against or Interests in the Debtors, each holder of a Claim or Interest in such Class has accepted the Plan or will receive or retain pursuant to the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date. Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

FF.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).    The holders of Claims in Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired by the Plan and therefore not entitled to vote and are deemed to accept the Plan.  The holders of Claims (*i.e.*, the Debtors) in Class 4 (Intercompany Claims) are the proponents of the Plan and are deemed to accept the Plan.  Thus, the holders of Claims in Classes 1, 2, and 4 are conclusively presumed to have accepted the Plan.  The holders of Claims in Class 3 (General Unsecured Claims), which is the sole Impaired Class of Claims eligible to vote, have affirmatively voted overwhelmingly to accept the Plan pursuant to section 1126(c) of the Bankruptcy Code.  As such, section 1129(a)(8)

is satisfied with respect to this Class of Claims. Class 5 (Other Subordinated Claims), and Class 6 (Existing Equity Interests) are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, because the holders of Claims in Class 5 and Interests in Class 6 will not receive or retain any property on account of their respective Claims against or Interests in the Debtors. The Plan may nevertheless be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Classes 5 and 6.

GG.     <u>Treatment of Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Administrative Expense Claims and Priority Tax Claims pursuant to Article II of the Plan satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code.

HH.     <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>. Class 3 (General Unsecured Claims) which is Impaired under the Plan and entitled to vote, overwhelmingly voted to accept the Plan by the requisite majorities set forth in section 1126(c) of the Bankruptcy Code, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code. Specifically, as set forth in the Debtors' Certificate, 79.1% of the creditors casting Ballots in Class 3, in number, and 80.9% in dollar amount of Allowed Claims in Class 3, voted to accept the Plan. Therefore, the requirements of section 1129(a)(10) of the Bankruptcy Code have been satisfied.

II.     <u>Feasibility (11 U.S.C. § 1129 (a)(11))</u>. The information in the Disclosure Statement and the evidence proffered or adduced at the Confirmation Hearing and in the DiDonato Declaration: (i) is persuasive and credible; (ii) has not been controverted by other evidence; and (iii) establishes that the Plan is feasible, there is a reasonable likelihood that the Debtors or Liquidating Trust, as the case may be, will meet their financial obligations under the Plan, and because the Debtors are liquidating, confirmation of the Plan is not likely to be followed by any

additional liquidation or need for further financial reorganization of the Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

JJ.     Payment of Fees (11 U.S.C. § 1129(a)(12)).  As required pursuant to Article XIV.A of the Plan, all fees payable under section 1930 of title 28 of the United States Code have been or will be paid on or after the Effective Date, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.  After the Effective Date, such fees shall only be payable until such time as a final decree is entered closing the Chapter 11 Cases, a Final Order converting such cases to cases under chapter 7 of the Bankruptcy Code is entered or a Final Order dismissing the Chapter 11 Cases is entered.  After the Effective Date, the Liquidating Debtors or Liquidating Trustee, as applicable, shall pay the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6), when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until the earliest of the date on which the final Chapter 11 Cases is converted, dismissed, or closed.

KK.     Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  The Debtors have no obligations with respect to retiree benefits.  Accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

LL.     No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

MM.     Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)).  The Debtors are not individuals. Accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

NN.    No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)). The Debtors are moneyed, business, or commercial corporations, and/or partnerships, as the case may be. Accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

OO.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). The Debtors have satisfied the requirements of sections 1129(b)(1) and (b)(2) of the Bankruptcy Code with respect to Class 5 (Other Subordinated Claims) and Class 6 (Existing Equity Interests) (collectively, the "Presumed Rejecting Classes"). Based on the evidence proffered or adduced at the Confirmation Hearing and in the DiDonato Declaration, the Plan does not discriminate unfairly and is fair and equitable with respect to the Presumed Rejecting Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because the legal rights of such Claims and Interests held in the Presumed Rejecting Classes are substantially dissimilar from the Classes of Claims receiving distributions under the Plan as well as substantially similar to each other within, respectively, Classes 5 and 6. The Plan is additionally "fair and equitable" as to the Presumed Rejecting Classes because no claims or interests junior to the Claims and Interests in the Presumed Rejecting Classes will receive or retain any property under the Plan on account of such junior claims or interests. Based on the foregoing, the requirements of section 1129(b) of the Bankruptcy Code are met with respect to the Presumed Rejecting Classes, and the Plan may be confirmed notwithstanding the deemed rejection by the Presumed Rejecting Classes.

PP.    Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan filed in these Chapter 11 Cases. Accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

QQ.     <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the

Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities

Act of 1933, thereby satisfying the requirements of section 1129(d) of the Bankruptcy Code.

RR.     <u>Small Business Case (11 U.S.C. § 1129(e))</u>.  None of the Chapter 11 Cases are

"small business case[s]," as that term is defined in the Bankruptcy Code.  Accordingly, section

1129(e) of the Bankruptcy Code is inapplicable.

### ADDITIONAL FINDINGS

SS.     <u>Good-Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before the

Court in these Chapter 11 Cases, the Stretto Declaration, the DiDonato Declaration, and the

Debtors' Certificate, the Debtors have solicited acceptances of the Plan in good faith and in

compliance with the applicable provisions of the Bankruptcy Code, including without limitation,

sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule or

regulation governing the adequacy of disclosure in connection with such solicitation.

TT.     <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, the Plan

satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

UU.     <u>Implementation</u>.  All documents necessary to implement the Plan, including all

other relevant and necessary documents have been negotiated in good faith and at arms'-length and

shall, upon completion of documentation and execution, be valid, binding, and enforceable

agreements and not be in conflict with any federal or state law.

VV.     <u>Good Faith of the Plan Proponents</u>.  The Debtors, and all of their respective current

directors, managers, officers, members, equity holders, employees, agents, financial advisors,

partners, attorneys, other professional advisors (including, but not limited to, the Chief

Transformation Officer) and representatives (i) have acted in good faith in negotiating, formulating,

21

and proposing the Plan and related agreements, compromises, settlements, transactions and transfers contemplated thereby, and (ii) will be acting in good faith in proceeding to (a) consummate the Plan and the agreements, compromises, settlements, transactions, and transfers contemplated thereby and (b) take the actions authorized and directed or contemplated by the Plan and/or this Confirmation Order.

WW.    <u>Executory Contracts and Unexpired Leases</u>.    The Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the rejection of Executory Contracts pursuant to Article X of the Plan.

XX.    <u>Transfers by Debtors</u>.  All transfers of property and assets of the Debtors' Estates to the Liquidating Trust, shall be free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise provided in the Plan or this Confirmation Order.

YY.    <u>Vesting of Assets</u>.  Except as provided in the Plan, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors shall vest in the Liquidating Trust free and clear of all Claims, Liens, liabilities, encumbrances, charges and other interests, including, without limitation, any and all Claims, Liens, encumbrances and any and all right, title, and interests related thereto of governmental entities relating to any tax liabilities or similar liabilities.  Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable non-bankruptcy law.

ZZ.    <u>Injunction, Exculpation, and Releases</u>.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation, and releases set forth in Article XII of the Plan, because, *inter alia*, these provisions are an integral part of the Debtors' plan.  Moreover, the approval of the injunctions, exculpations, and releases set forth in Article XII of the Plan are core matters under section 157 of title 28 of the United States Code

because, *inter alia*, these provisions arise in the context of confirmation of the Plan and are integral parts of the Plan.  Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases set forth in Article XII of the Plan if, as has been established in these cases based upon the record in the Chapter 11 Cases, the Disclosure Statement, the DiDonato Declaration, and the evidence presented at the Confirmation Hearing, such provisions (i) were integral to the agreement among the various parties in interest and are important and necessary to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' Estates and creditors, (iii) are fair and reasonable and/or are justified based upon the unusual circumstances of these Chapter 11 Cases, and narrowly tailored to same, and (iv) are in the best interests of the Debtors, their Estates, and all parties in interest. Further, the release and exculpation provisions in the Plan are subject to certain carve-outs (Article XII.H) that do not relieve any party of, among other things, liability for an act or omission to the extent such act or omission is determined by a final order by a court of competent jurisdiction to have constituted willful misconduct or gross negligence or the other exceptions set forth therein, and do not release any Causes of Action retained by the Debtors.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpations, and injunctions set forth in Article XII of the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtors and their Estates, creditors, and equity holders. The failure to include such provisions would seriously impair the Debtors' ability to confirm the Plan in these Chapter 11 Cases.  Based upon the record of these Chapter 11 Cases and the evidence proffered or adduced in support of confirmation of the Plan, this Court finds that the injunction, exculpation, and releases set forth in Article XII of the Plan are consistent with the Bankruptcy Code and applicable law.

AAA.   <u>Preservation of Causes of Action</u>.  It is in the best interests of the Debtors, their creditors, and holders of Interests in the Debtors that the Debtors preserve the Retained Causes of Action as set forth in Exhibit B of the Plan Supplement.

BBB.   <u>Liquidating Trust is Not a Successor to the Debtors</u>.  Except with respect to the payment of the Claims expressly provided for in Articles II – IV of the Plan and the rights provided to the Liquidating Trust (including, but not limited to the Retained Causes of Action), the Liquidating Trust shall not be the successor to the Debtors and their Estates.  Except with respect to the rights of the Liquidating Trust expressly provided for in the Plan (including, but not limited to, the investigation and pursuit of the Retained Causes of Action), the Liquidating Trust and this Confirmation Order, (i) the Liquidating Trust shall not assume, incur or be responsible for any claims or liabilities of the Debtors or any of their affiliates, and (ii) the Liquidating Trust shall not be, nor deemed to be, successors or successors in interest of the Debtors or any of the Excluded Parties, nor incur any successor or transferee liability of any kind, nature or character, including, without limitation, in relation to (a) any and all liabilities arising or resulting from or relating to the transactions contemplated by the Plan, (b) any and all Claims, Liens, liabilities, encumbrances, charges and other interests arising from or relating to any conduct, liabilities, or obligations of the Debtors, and (c) any and all Claims, Liens, liabilities, encumbrances, charges and other interests and any and all right, title, and interests related thereto, of governmental entities relating to any tax or similar liabilities.

## CONCLUSIONS OF LAW

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    <u>Adequate Information</u>.    The Disclosure Statement (i) contains "adequate information" (as such term is defined in section 1125(a)(1)) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (ii) is approved on a final basis.

2.    <u>Confirmation</u>.  All requirements for confirmation of the Plan have been satisfied. Accordingly, the Plan in its entirety is **CONFIRMED** pursuant to section 1129 of the Bankruptcy Code.  The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

3.    <u>Objections</u>.  All parties have had a full and fair opportunity to litigate all issues raised by the informal objections, or which might have been raised, and the informal objections have been fully and fairly litigated.  The Owoc Objection and all other objections (informal or otherwise), responses, statements, and comments in opposition to the Plan, other than those withdrawn with prejudice in their entirety prior to the Confirmation Hearing or otherwise resolved on the record of the Confirmation Hearing and/or herein, are overruled for the reasons stated on the record, all of which are incorporated herein.

4.    <u>Plan Documents</u>. The Plan, and any amendments, modifications, and supplements thereto, including the Plan Supplement, and any other documents and agreements provided by the Debtors in support of confirmation of the Plan (including all exhibits and attachments thereto and documents referred to therein) (collectively, the "<u>Plan Documents</u>"), and the execution, delivery, and performance thereof by the Debtors, the Liquidating Debtors, or the Liquidating Trustee, as the case may be, are authorized and approved when they are finalized, executed and delivered, and

are integral to, part of and are incorporated by reference into the Plan. Without further order or authorization of this Court, the Debtors, the Liquidating Debtors, and the Liquidating Trustee and their respective successors are authorized and empowered to make all modifications to all Plan Documents that are consistent with the Plan. Execution versions of the documents comprising the Plan Documents shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all liens and security interests purported to be created thereby.

5.      <u>Solicitation and Notice</u>. Notice of the Confirmation Hearing complied with the terms of the Conditional Approval Order, was appropriate and satisfactory based on the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. The solicitation of votes on the Plan and the Solicitation Materials complied with the solicitation procedures in the Conditional Approval Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. Notice of the Plan, and all related documents, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

6.      <u>Omission of Reference to Particular Plan Provisions</u>. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

7.      <u>Plan Classification Controlling</u>.  The classifications of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classification set forth on the Ballots tendered or returned by the Debtors' creditors in connection with voting on the Plan were set forth on the Ballots solely for purposes of voting to accept or reject the Plan.

8.      <u>Binding Effect</u>.  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, upon entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind (i) any holder of a Claim against or Interest in the Debtors and their respective successors and assigns, whether or not such Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan, (ii) any and all non-debtor parties to assumed or rejected Executory Contracts with the Debtors, (iii) those parties who provided informal objections to the Plan, (iv) every other party in interest in these Chapter 11 Cases, and (v) all parties receiving property under the Plan, and their respective heirs, executors, administrators, successors, or assigns.

9.      <u>Liquidating Trust Agreement; Ratification of Liquidating Trustee and Liquidating Trust Oversight Committee</u>.  The Liquidating Trust Agreement is hereby approved in all respects. The Debtors and Liquidating Trustee are hereby directed to execute the Liquidating Trust Agreement.  The selection of MHR Advisory Group, LLC, by and through Steven Balasiano, as Liquidating Trustee is hereby ratified.

10.     <u>Dissolution of the Corporate Existence of the Debtors</u>.  Pursuant to and in accordance with Article VII of the Plan, on or as soon as practicable after the Effective Date, the Liquidating Trustee, as applicable, shall take such actions as may be or become necessary, without further action being required under applicable law, regulation, order or rule (including, without

limitation, any action by the board of directors, stockholders, partners, members or managers of any Debtor or members of the Liquidating Debtors), and cause cancellation of all existing Interests in the Debtors and dissolve the Debtors.  Pursuant to, under and in accordance with the Plan, the Debtors and the Liquidating Trustee may, without any further order of the Court, effectuate some, all or none of the means of implementing the Plan pursuant to Article VII of the Plan.  In addition, as of the Effective Date or as soon as practicable thereafter and without the need for any further action by this Court or any other court or governmental unit unless otherwise specified in the Liquidating Trust, the Liquidating Trustee may, pursuant to and in accordance with the Plan and the Liquidating Trust, engage in any other transaction in furtherance of the Plan and Liquidating Trust.

11.    Pursuant to Article XII.B of the Plan, on the Effective Date (except to the extent otherwise provided in the Plan), each mortgage, deeds of trust, Lien, pledge, or other security interest against any property of the Estates shall be fully released and terminated and the obligations of the Debtors discharged in accordance with section 1141(d)(1) of the Bankruptcy Code.

12.    <u>The Excluded Assets</u>.  On the Effective Date, the Debtors shall be deemed to have automatically transferred to the Liquidating Trust all title and interest in all of the Excluded Assets, which includes the Retained Causes of Action, and in accordance with section 1141 of the Bankruptcy Code, all such Excluded Assets, including the Retained Causes of Action, shall irrevocably and automatically vest in the Liquidating Trust free and clear of all liens, Claims, encumbrances, and Interests (legal, beneficial or otherwise) for the benefit of the Liquidating Trust Beneficiaries.  In connection with the vesting and transfer of the Retained Causes of Action, including rights and causes of action, any attorney-client privilege, work-product privilege,

common interest privilege, or any other legal privilege or immunity attaching to any documents, information, or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trust and its representatives. The Debtors and the Liquidating Trustee are authorized and directed to take all necessary actions to effectuate the transfer of such privileges.

13.     <u>Distributions Under the Plan</u>.  All distributions under the Plan shall be made in accordance with Article VI and VIII of the Plan and such methods of distribution are approved.

14.     <u>Disputed Claims</u>.  The provisions of Article IX of the Plan, including, without limitation, the provisions governing procedures for resolving Disputed Claims, are found to be fair and reasonable and are approved.  In connection with distributions on account of Administrative Expense Claims, Priority Tax Claims, Other Secured Claims, Other Priority Claims, and General Unsecured Claims, distributions on account of such Disputed Claims shall be made, if at all, in accordance with Articles VI, VIII, and IX of the Plan to the extent any such Disputed Claim becomes Allowed.

15.     <u>Treatment is in Full Satisfaction</u>.  All distributions under the Plan shall be made in accordance with the Plan.  The treatment set forth in the Plan is in full satisfaction of the legal, contractual and equitable rights (including any liens) that each entity holding a Claim or Interest may have in or against the Debtors, the Estates, or their respective property.  This treatment supersedes and replaces any agreements or rights those entities may have in or against the Debtors, the Estates, or their respective property.

16.     <u>Approval of Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2))</u>.  Pursuant to Article X of the Plan, and pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code as of the Effective Date, each Executory Contract not previously rejected, or assumed and assigned shall be deemed automatically rejected unless such Executory Contract: (i) is identified for

assumption in the Plan Supplement; (ii) as of the Effective Date is subject to a pending motion to assume such Executory Contract; (iii) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (iv) is a D&O Policy.

17.    <u>Bar Date for Filing Proofs of Claim Relating to Executory Contacts Rejected Pursuant to the Plan</u>. **Claims created by the rejection of Executory Contracts pursuant to Article X of the Plan must be filed with the Bankruptcy Court and served on the Liquidating Trustee no later than thirty (30) calendar days after the filing and service of the notice of the occurrence of the Effective Date.  Any rejection claim arising from the rejection of an Executory Contract pursuant to Article X of the Plan for which a proof of claim is not timely filed and served on the Liquidating Trustee will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, the Liquidating Trust or the property of any of the foregoing without the need for any objection by the Liquidating Trustee or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of such Executory Contract shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**  Unless otherwise ordered by the Bankruptcy Court, all Allowed Claims that are timely filed as provided herein shall be treated as General Unsecured Claims in Class 3 under the Plan, and shall be subject to the provisions of the Plan and the Liquidating Trust.

18.    <u>Franchise Tax Board of the State of California</u>.  Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the Franchise Tax Board of the State of California (the "<u>Franchise Tax Board</u>") may amend or supplement the Proofs of Claim[4] it filed,

---

[4]   The Franchise Tax Board filed two Proofs of Claim in these cases: (a) Proof of Claim No. 275 against Debtor Vital Pharmaceuticals, Inc. and (b) Proof of Claim No. 266 against Quash Seltzer, LLC.

after the Effective Date of the Plan, to the extent the claim asserted by the Franchise Tax Board is impacted by the completion of an audit conducted by the Internal Revenue Service for the 2020-2021 tax years (the "IRS Audit"); *provided,* that any such claim shall be filed on or before the 90th day following notification by the Debtors or the Liquidating Trust, as applicable, to the Franchise Tax Board of the completion of the IRS Audit.

19.    CKS Packaging, Inc. Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, CKS Packaging, Inc. "(CKS Packaging"), is permitted to setoff (i) allowed pre-petition Claims held by it against Debtor Vital Pharmaceuticals, Inc., against (ii) pre-petition rebates owed by CKS Packaging to Debtor Vital Pharmaceuticals, Inc.

20.    Vesting of Assets.  Except as provided in the Plan or this Confirmation Order, upon the Effective Date, all property not previously distributed to the holders of Allowed Claims shall vest in the Liquidating Trustee and be distributed according to the Plan, except as provided in the Sale Order, the Plan, and this Confirmation Order.  Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable non-bankruptcy law.   From and after the Effective Date, the Liquidating Trustee may take any action including, to the extent that such action complies with the requirements of a liquidating trust under both Treas. Reg. 301.7701-4(d) and Rev. Proc. 94-45, 1994 CB 684, without limitation: (i) the operation of the Liquidating Debtors' businesses; (ii) the use, acquisition, sale, lease and disposition of property; (iii) the entry into transactions, agreements, understandings, or arrangements, to pursue the Retained Causes of Action, whether in or other than in the ordinary course of business; and (iv) executing, delivering, implementing and fully performing any and all obligations, instruments, documents, and papers or

otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules and in all respects as if there was no pending cases under any chapter or provision of the Bankruptcy Code, except as expressly provided herein. Without limiting the foregoing, the Liquidating Trustee may pay the charges he incurs on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

21.    <u>Title to Assets</u>.  On the Effective Date, and in accordance with sections 1123 and 1141 of the Bankruptcy Code, all title and interest in all of the Excluded Assets, which constitute all assets of the Debtors that have not been distributed on or prior to the Effective Date or sold and conveyed pursuant to the Sale Transaction, shall irrevocably and automatically vest in the Liquidating Trust, free and clear of all liens, Claims, encumbrances and Interests (legal, beneficial or otherwise) for the benefit of the Liquidating Trust Beneficiaries. Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors shall have no interest in or with respect to the Liquidating Trust Assets or Liquidating Trust. Upon delivery of the Liquidating Trust Assets to the Liquidating Trust, the Debtors and their respective predecessors, successors and assigns, shall be released from all liability with respect to the delivery thereof and shall have no reversionary or further interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust in accordance with Article VI.C of the Plan.  For all U.S. federal income tax purposes, and subject to the DOF Election described at Article VI.H.(8) of the Plan, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust in accordance with the terms herein as a transfer to the Liquidating Trust Beneficiaries, followed by a transfer of such assets by such Liquidating Trust Beneficiaries to the Liquidating Trust, and the

Liquidating Trust Beneficiaries will be treated as the grantors and owners thereof. Notwithstanding the foregoing, for purposes of section 553 of the Bankruptcy Code, the transfer of the Liquidating Trust Assets to the Liquidating Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax, to the maximum extent provided by section 1146(a) of the Bankruptcy Code. In connection with the transfer of such Liquidating Trust Assets, any attorney client privilege, work product privilege, common interest privilege, or any other legal privilege or immunity attaching to any documents, information, or communications (whether written or oral) transferred to the Liquidating Trust shall vest in the Liquidating Trust and its representatives, and the Debtors and the Liquidating Trustee are directed to take all necessary actions to effectuate the transfer of such privileges. The Liquidating Trustee shall agree to accept and hold the Liquidating Trust Assets in the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries, subject to the terms of the Plan and the Liquidating Trust Agreement. The Debtors, the Liquidating Trustee, and any party under the control of such parties will execute any documents or other instruments and shall take all other steps as necessary to cause title to the Liquidating Trust Assets to be transferred to the Liquidating Trust.

22. <u>Injunction</u>. **Except as otherwise provided in the Plan or this Confirmation Order, all Enjoined Parties are permanently enjoined and precluded, from and after the Effective Date, from: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests,**

Causes of Action, or liabilities; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (4) asserting any right of setoff, or subrogation against any obligation due from such Entities or against the property or Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has filed a motion or proof of claim requesting the right to perform such setoff or subrogation on or before the Confirmation Date; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities released or settled pursuant to the Plan. For the avoidance of doubt, and notwithstanding anything in the Plan to the contrary, Article XII.J. does not apply to any claims, obligations, suits, judgments, damages, demands, debts, remedies, causes of action, rights of setoff, other rights, and liabilities between any "Buyer Releasing Party" and any "Seller Releasing Party" (as the terms "Buyer Releasing Party" and "Seller Releasing Party" are defined in Section 7.16(a) and Section 7.16(b), respectively, of the Asset Purchase Agreement).

23.    <u>Terms of Injunction</u>.  Unless otherwise provided in this Confirmation Order, all injunctions or stays arising under or entered during these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, that are in existence on the Confirmation Date, other than injunctions issued pursuant to the Plan shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

24.    <u>Gatekeeper Provision</u>.  **Except as otherwise provided in the Plan or this Confirmation Order, no Enjoined Party may commence or pursue a Claim or Cause of**

Action of any kind against any Exculpated Party that arose or arises from or is related to the Chapter 11 Cases, the negotiation of the Plan, the consummation or administration of the Plan or property to be distributed under the Plan, the wind down of the businesses of the Debtors, the administration of the Liquidating Trust, or the transactions in furtherance of the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a "colorable" Claim of any kind, including, but not limited to, negligence, bad faith, criminal misconduct, willful misconduct, fraud, or gross negligence against a Exculpated Party; and (ii) specifically authorizing such Enjoined Party to bring such Claim or Cause of Action against any such Exculpated Party; provided, however, the foregoing will not apply to a Claim or Cause of Action against any Excluded Party. To the extent legally permissible, and as provided for in Article XIII of the Plan, the Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim or Cause of Action is "colorable" even if the Bankruptcy Court would not have jurisdiction to issue a final, non-appealable order on the underlying Claim or Cause of Action. The Bankruptcy Court may, in its sole discretion, conduct an evidentiary hearing (during which it may, among other things, hear testimony and assess the credibility of any witness(es)) in order to determine whether a proposed Claim or Cause of Action is "colorable." For purposes of the Bankruptcy Court's determination under this provision after taking into account any admissible evidence, "colorable" means that the proposed Claim or Cause of Action is (a) procedurally and legally sound; (b) not brought for an improper purpose, such as harassment; and (c) no part of the pleading fails to satisfy the Bankruptcy Court that it warrants a federal civil action or that the litigant's allegations are unlikely, especially when prior cases have shown the litigant to be untrustworthy or not credible.  See *Silver v. City of*

*San Antonio,* No. SA-19-MC-1490-JKP, **2020 WL 3803922, at \*1 (W.D. Tex. July 7, 2020)**

**(denying leave to file suit);** *Silver v. Perez*, No. SA-20-MC-0655-JKP, **2020 WL 3790489, at**

**\*1, 6 (W.D. Tex. July 7, 2020) (same);** *Nextpoint Advisors, L.P. v. Highland Capital Mgmt.,*

*L.P. (In re Highland Capital Mgmt., L.P.),* **49 F.3d 419 (5th Cir. 2022) (upholding**

**"gatekeeper" provisions in a chapter 11 plan requiring post-confirmation, pre-suit approval**

**by the bankruptcy court in response to former CEO's litigiousness);** *In re Highland Capital*

*Mgmt., L.P.,* No. 19-35054-sgj-11, **2023 WL 5523949, at \*41 (Bankr. N.D. Tex. Aug. 25, 2023)**

**(adopting "colorability" standard requiring a prospective plaintiff to demonstrate "a prima**

**facie case that its proposed claims are** *not without foundation*, **are** *not without merit*, **and are**

*not being pursued for any improper purpose such as harassment*.**")[5] (emphasis in original).**

**Notwithstanding the foregoing or anything in the Plan to the contrary, Article XII.K. of the**

**Plan does not have any impact on and does not affect any claims, obligations, suits,**

**judgments, damages, demands, debts, remedies, causes of action, rights of setoff, other**

**rights, and liabilities between any "Buyer Releasing Party" and any "Seller Releasing Party"**

**(as the terms "Buyer Releasing Party" and "Seller Releasing Party" are defined in Section**

**7.16(a) and Section 7.16(b), respectively, of the Asset Purchase Agreement).**

25.    <u>Releases are Approved</u>.  The releases provided herein and set forth in the Plan are

reasonable and appropriate given the extraordinary facts and circumstances of these Chapter 11

---

[5] This standard is akin to that underpinning the *Barton* doctrine (widely applied in the bankruptcy context) which provides that a party seeking to sue a court-appointed receiver "must first obtain leave of the appointing court by making a *prima facie* case that the claim it wishes to bring is not without foundation." *Id.,* 2023 WL 5523949, at \*20 n.136, and 38; *see also Anderson, et al. v. United States*, 520 F.2d 1027, 1029 (5th Cir. 1975) (before permission to sue is granted, prospective claimant must make out a prima facie case; court authorized to decline request where the claim is without foundation).

Cases.  The releases result from arms'-length negotiations, have been granted in exchange for substantial consideration, were essential to obtaining stakeholder support for the Plan, are appropriate under the circumstances, are consistent with the Bankruptcy Code, and comply with applicable law.  Debtors possess considerable leeway in liquidating plans in granting releases of their own claims as a valid exercise of their business judgment and such releases are noncontroversial.  11 U.S.C. § 1123(b)(3)(A); *see*, *e.g.*, *In re Advance Watch Company Ltd.,* Case No. 15-12690, 2016 WL 323367, at *6 (Bankr. S.D.N.Y. Jan. 25, 2016) (stating rule); *see also In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 263, n.289 (Bankr. S.D.N.Y. 2007), *appeal dismissed*, 371 B.R. 660 (S.D.N.Y. 2007), *aff'd*, 554 F.3d 420 (2d Cir. 2008) (noting that debtor releases are uncontroversial).  The granting of the Debtor Release in the Plan constitutes a prudent exercise of the Debtors' business judgment.  *In re Universal Rehearsal Partners, Ltd.*, Case No. 22-31966, 2023 WL 2816684, at *4 (Bank. N.D. Tex. Apr. 6, 2023); *In re Midway Gold US, Inc.*, 575 B.R. 475, 510 (Bankr. D. Colo. 2017); *In re Residential Capital, LLC*, Case No. 12-12020 (MG), 2013 WL 12161584, at *13 (Bankr. S.D.N.Y. Dec. 11, 2013).

26.    <u>Releases by the Debtors and Their Estates</u>.  **PURSUANT TO ARTICLE XII.G OF THE PLAN, AS OF THE EFFECTIVE DATE, EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN, AND TO THE FULLEST EXTENT AUTHORIZED BY APPLICABLE LAW, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, EACH DEBTOR RELEASED PARTY IS DEEMED RELEASED BY THE DEBTORS, THEIR RESPECTIVE ESTATES, THE LIQUIDATING TRUSTEE, AND ANY PERSON OR ENTITY (OTHER THAN THE BUYER, MBC AND MEC), SEEKING TO EXERCISE THE RIGHTS OF THE DEBTORS OR THEIR ESTATES AND THEIR RESPECTIVE**

**PROPERTY (AND EACH SUCH DEBTOR RELEASED PARTY SHALL BE DEEMED RELEASED BY EACH DEBTOR AND ITS ESTATE AND ITS RESPECTIVE PROPERTY) FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, AVOIDANCE ACTIONS, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED DIRECTLY OR INDIRECTLY, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, AND ANY AND ALL CAUSES OF ACTION ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED, BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THEIR ESTATES OR THEIR AFFILIATES, THE CONDUCT OF THE DEBTORS' BUSINESS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DIP CREDIT AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT OR THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR PURSUANT TO THE DIP CREDIT AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT, THE PLAN, THE PREPARATION, FILING AND PROSECUTION OF THE CHAPTER 11 CASES, THE PURSUIT OF**

CONSUMMATION OF THE PLAN, THE SALE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS, THEIR ESTATES OR THEIR AFFILIATES, ON THE ONE HAND, AND ANY DEBTOR RELEASED PARTY, ON THE OTHER HAND, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT THE RELEASES SET FORTH IN ARTICLE XII.G. SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS OR CAUSES OF ACTION OF THE DEBTORS OR THEIR RESPECTIVE CHAPTER 11 ESTATES AGAINST A DEBTOR RELEASED PARTY FROM ANY CLAIMS RESULTING FROM AN ACT OR OMISSION DETERMINED BY A FINAL ORDER OF THE BANKRUPTCY COURT TO HAVE CONSTITUTED FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. NOTWITHSTANDING ANYTHING IN THE PLAN OR ARTICLE XII.G. TO THE CONTRARY, THE EXCLUDED PARTIES ARE NOT RECEIVING AND SHALL NOT RECEIVE A RELEASE UNDER THE PLAN.

ENTRY OF THIS CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE DEBTOR RELEASES, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE DEBTOR RELEASE IS: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE DEBTOR RELEASED PARTIES; (II) A GOOD-

**FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE DEBTOR RELEASE; (III) IN THE BEST INTERESTS OF THE DEBTORS' ESTATES AND ALL HOLDERS OF CLAIMS AND INTERESTS; (IV) FAIR, EQUITABLE, AND REASONABLE; (V) GIVEN AND MADE AFTER DUE NOTICE AND THE OPPORTUNITY FOR A HEARING; AND (VI) A BAR TO ANY OF THE DEBTORS' ESTATES, OR THE LIQUIDATING TRUSTEE, ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE DEBTOR RELEASE**.

27.    <u>Releases by Holders of Claims</u>.  The Plan consensually releases certain Claims and Causes of Action of participating non-Debtors (as defined in the Plan, the "<u>Third-Party Releases</u>"). *See* Plan, Art. XII.H. The Third-Party Releases are consensual because each Releasing Party had an opportunity to opt-out of such releases. *See*, *e.g.*, *In re Stein Mart, Inc.*, 629 B.R. 516, 524 (Bankr. M.D. Fla. 2021) (finding that third-party releases may be provided consensually); *In re A&B Associates, L.P.*, Case No. 17-40185-EJC, 2019 WL 1470892, at *49 (Bankr. S.D. Ga. Mar. 29, 2019) ("[c]ircuit courts in the Second, Fourth, Sixth, Seventh and Eleventh Circuits have held that third-party releases may be given consensually and, in limited circumstances, may be approved without consent") (quoting *In re Avanti Commc'ns Grp. PLC*, 582 B.R. 603, 606 (Bankr. S.D.N.Y. 2018)); *In re Winn-Dixie Stores, Inc.*, 356 B.R. 239, 260 (Bankr. M.D. Fla. 2006) ("Consensual releases have been routinely upheld by courts.") (citing cases).  Further, the Debtors are directed to serve a supplemental Opt-Out Form, in substantially the same form as approved by the Court in the Conditional Approval Order (the "<u>Supplemental Opt-Out Form</u>"), on the Holders of Class 3 Claims who voted to accept the Plan (the "<u>Accepting Holders</u>"), affording the Accepting Holders the opportunity to opt-out of the Third-Party Releases by completing, signing and returning the Supplemental Opt-Out Form to Stretto within twenty-one (21) days of the date of the

Supplemental Opt-Out Form.  Within forty-five (45) days of the date of this Order, the Debtors

shall file a list of the Opt-Out Parties and serve a copy of the list on each Opt-Out Party.

28.    **PURSUANT TO ARTICLE XII.H. OF THE PLAN, EFFECTIVE AS OF THE EFFECTIVE DATE, THE RELEASING PARTIES SHALL BE DEEMED TO HAVE PROVIDED A FULL RELEASE TO THE RELEASED PARTIES, AND THEIR RESPECTIVE PROPERTY, FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES WHATSOEVER, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, AVOIDANCE ACTIONS, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED DIRECTLY OR INDIRECTLY, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, AND ANY AND ALL CAUSES OF ACTION ASSERTED OR THAT COULD POSSIBLY HAVE BEEN ASSERTED, BASED ON OR IN ANY WAY RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THEIR ESTATES OR THEIR AFFILIATES, THE CONDUCT OF THE DEBTORS' BUSINESS, THE FORMULATION, PREPARATION, SOLICITATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DIP CREDIT AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT OR THE PLAN OR ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH OR**

41

PURSUANT TO THE DIP CREDIT AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT, THE PLAN, THE PREPARATION, FILING AND PROSECUTION OF THE CHAPTER 11 CASES, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE SALE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTORS, THEIR ESTATES OR THEIR AFFILIATES, ON THE ONE HAND, AND ANY DEBTOR RELEASED PARTY, ON THE OTHER HAND, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE BEFORE THE EFFECTIVE DATE; *PROVIDED*, *HOWEVER*, THE RELEASES SET FORTH ABOVE (I) DO NOT RELEASE ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, (II) ARE APPLICABLE ONLY TO THE MAXIMUM EXTENT PERMITTED BY LAW, (III) DO NOT RELEASE ANY PREPETITION SECURED PARTIES', BUYER'S, MBC'S, MEC'S, OR OBI'S CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES UNDER ANY AGREEMENT ENTERED INTO BY THE DEBTORS AFTER THE PETITION DATE, (IV) DO NOT RELEASE ANY OBLIGATIONS OR RIGHTS UNDER THE ASSET PURCHASE AGREEMENT, (V) DO NOT RELEASE ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES BETWEEN ANY "BUYER RELEASING PARTY" AND ANY "SELLER RELEASING PARTY" (AS THE TERMS "BUYER RELEASING

PARTY" AND "SELLER RELEASING PARTY" ARE DEFINED IN SECTION 7.16(A) AND SECTION 7.16(B), RESPECTIVELY, OF THE ASSET PURCHASE AGREEMENT), AND THE RELEASES BETWEEN SUCH PARTIES SHALL BE GOVERNED BY SECTION 7.16 OF THE ASSET PURCHASE AGREEMENT), AND (VI) DO NOT RELEASE ANY RIGHTS OR OBLIGATIONS BETWEEN OBI, MBC, MEC AND BUYER; *PROVIDED FURTHER, HOWEVER*, THAT THE RELEASES SET FORTH IN THIS <u>ARTICLE XII.H.</u> SHALL NOT RELEASE ANY PERSON OR ENTITY FROM ANY RETAINED CAUSES OF ACTION OR CLAIMS RESULTING FROM AN ACT OR OMISSION DETERMINED BY A FINAL ORDER OF A COURT OF COMPETENT JURISDICTION TO HAVE CONSTITUTED FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE. ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE THIRD PARTY RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED IN THE PLAN, AND, FURTHER, SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE THIRD PARTY RELEASE BY THOSE CREDITORS OR INTEREST HOLDERS WHO DID NOT OPT-OUT OF THE RELEASE IS: (I) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION AND SUBSTANTIAL CONTRIBUTIONS PROVIDED BY THE RELEASED PARTIES; (II) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS RELEASED BY THE THIRD PARTY RELEASE; (III) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (IV) FAIR, EQUITABLE, AND REASONABLE; (V) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY

FOR HEARING; AND (VI) A BAR TO ANY OF THE RELEASING PARTIES ASSERTING ANY CLAIM RELEASED PURSUANT TO THE THIRD-PARTY RELEASE.

29. <u>Exculpation</u>. **NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, NO EXCULPATED PARTY WILL HAVE OR INCUR, AND EACH EXCULPATED PARTY IS ON THE EFFECTIVE DATE EXCULPATED FROM, ANY CLAIM, OBLIGATION, SUIT, JUDGMENT, DAMAGE, DEMAND, DEBT, RIGHT, CAUSE OF ACTION, REMEDY, LOSS, AND LIABILITY FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH OR ARISING OUT OF THE PREPARATION, FOR, AND ADMINISTRATION OF, THE CHAPTER 11 CASES; THE NEGOTIATION, FORMULATION, PREPARATION, IMPLEMENTATION, CONSUMMATION, AND PURSUIT OF THE DIP CREDIT AGREEMENT, THE ASSET PURCHASE AGREEMENT, THE DISCLOSURE STATEMENT, THE PLAN, AND THE SOLICITATION OF VOTES FOR, AND CONFIRMATION OF, THE PLAN; THE FUNDING AND CONSUMMATION OF THE PLAN, AND ANY RELATED AGREEMENTS, INSTRUMENTS, AND OTHER DOCUMENTS (IN EACH CASE IN FURTHERANCE OF THE FOREGOING); THE MAKING OF DISTRIBUTIONS UNDER THE PLAN; THE OCCURRENCE OF THE EFFECTIVE DATE; NEGOTIATIONS REGARDING OR CONCERNING ANY OF THE FOREGOING, OR THE ADMINISTRATION OF THE PLAN OR PROPERTY TO BE DISTRIBUTED UNDER THE PLAN; OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT OR OTHER OCCURRENCE TAKING PLACE FROM THE PETITION DATE RELATING TO THE CHAPTER 11 CASES, INCLUDING ALL**

DECISIONS AND ACTIONS TAKEN BY THE BOARD OF DIRECTORS FROM AND AFTER THE PETITION DATE; *PROVIDED*, *HOWEVER*, THAT THE EXCULPATION DOES NOT HAVE ANY IMPACT ON THE ENFORCEMENT AND VALIDITY OF THE ASSET PURCHASE AGREEMENT; *PROVIDED, FURTHER, HOWEVER*, THAT THE EXCULPATION DOES NOT HAVE ANY IMPACT ON AND DOES NOT AFFECT ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, REMEDIES, CAUSES OF ACTION, RIGHTS OF SETOFF, OTHER RIGHTS, AND LIABILITIES BETWEEN ANY "BUYER RELEASING PARTY" AND ANY "SELLER RELEASING PARTY" (AS THE TERMS "BUYER RELEASING PARTY" AND "SELLER RELEASING PARTY" ARE DEFINED IN SECTION 7.16(A) AND SECTION 7.16(B), RESPECTIVELY, OF THE ASSET PURCHASE AGREEMENT); *PROVIDED*, *FURTHER*, *HOWEVER* THAT THE EXCULPATION SET FORTH IN THIS <u>ARTICLE XII.I.</u> SHALL NOT EXCULPATE ANY PERSON OR ENTITY FROM CLAIMS RESULTING FROM AN ACT OR OMISSION DETERMINED BY A FINAL ORDER OF THE BANKRUPTCY COURT TO HAVE CONSTITUTED FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE, *PROVIDED THAT*, NOTHING IN THE PLAN SHALL LIMIT THE LIABILITY OF ATTORNEYS TO THEIR RESPECTIVE CLIENTS PURSUANT TO RULE 4-1.8(H) OF THE FLORIDA RULES OF PROFESSIONAL CONDUCT.  THIS EXCULPATION SHALL BE IN ADDITION TO, AND NOT IN LIMITATION OF, ALL OTHER RELEASES, INDEMNITIES, EXCULPATIONS AND ANY OTHER APPLICABLE LAW OR RULES PROTECTING SUCH EXCULPATED PARTIES FROM LIABILITY.   THE FOREGOING EXCULPATION SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT

FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON.

30.    Notwithstanding anything in the Plan or this Confirmation Order to the contrary, neither the Releases of Claims and Interests contained in Article XII.H. of the Plan nor the Injunction contained in Article XII.J. of the Plan bars or enjoins an Opt-Out Party from prosecuting any claims or causes of action, solely as to non-debtors, that are not subject to Exculpation under Article XII.I.   For the avoidance of doubt, nothing in the *Agreed Order Resolving Application of ThermoLife International, LLC For Allowance and Payment of Administrative Expense Claim [ECF NO. 1964]* [ECF No. 2142], the Plan, or this Confirmation Order shall impair or reduce any of ThermoLife's rights or claims against any third party on any ground arising at any time, with the exception of any Exculpated Party for the claims which are the subject of the exculpations contained in Article XII.I. of the Plan.  To the extent the Excluded Parties have direct (i.e., not derivative) claims against the Debtors' professionals, directors and officers, principals, agents or employees (and specifically excluding the Debtors, DIP Lenders, DIP Agent, Prepetition Secured Parties, Buyer, MBC, MEC, OBI and the Creditors' Committee) that are not exculpated pursuant to Article XII.I of the Plan, such claims are not (i) released pursuant to Articles XII.G or XII.H. of the Plan; or (ii) enjoined pursuant to XII.J of the Plan; and further, for the avoidance of doubt, such claims, if any, arising from the separate retention (or other agreement) by or between an Excluded Party (in their personal capacity) and any of the foregoing parties (irrespective of whether any such agreement is contained in a stand-alone and/or joint engagement agreement with Debtors), including but not limited to Grant

46

**Thornton LLP, Marcum LLP, Quarles & Brady LLP, and Gordon Rees Scully Mansukhani, LLP, are not exculpated under Article XII.I of the Plan.**

31.    <u>Retention of Causes of Action/Reservation of Rights</u>.  Except as otherwise provided in the Plan, nothing contained in the Plan or this Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtors or the Liquidating Trust may have or which the Liquidating Trust may choose to assert on behalf of the Debtors' Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a defense, and (ii) the turnover of any property of the Debtors' estates.

32.    Nothing contained in the Plan or this Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Retained Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that each Debtor had immediately prior to the Effective Date on behalf of the respective Debtor's Estate or itself in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, any affirmative Retained Causes of Action against parties with a relationship with the Debtor, other than the Debtor Released Parties and the Released Parties. Any Cause of Action of the Debtors or their Estates that is not (i) an Acquired Cause of Action purchased by the Buyer, or (ii) a Retained Cause of Action contributed to the Liquidating Trust on the Effective Date, shall be deemed released as of the Effective Date.

33.    On and after the Effective Date, subject to the terms of the Plan, the Settlement Agreement and the Sale Order, the Liquidating Trustee shall have standing to and may pursue such Retained Causes of Action.

34.     Subject to the Sale Order, no preclusion doctrine, including the doctrines of *res judicata,* collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action and to decline to do any of the foregoing without the consent, notice to or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court subject to the terms of the Plan. Notwithstanding anything contained herein to the contrary, the settlement of any Claims and Causes of Action which are expressly to be settled by Confirmation of the Plan itself shall be resolved only by Confirmation of the Plan itself. For the avoidance of doubt, the Retained Causes of Action shall include any and all Causes of Action against the Excluded Parties.

35.     <u>Transfer Free and Clear of Liens</u>.  Except with respect to any fund established pursuant to the Plan, all right, title and interest in and to any and all assets, property, unexpired leases and executory contracts of every kind and nature to be sold, assigned, transferred or otherwise disposed of under the Plan shall be sold, assigned, transferred and disposed of free and clear of any and all Claims, Liens, liabilities, encumbrances, charges and other interests of any entity (as such term is defined in section 101(15) of the Bankruptcy Code) including, without limitation, any and all claims, liens, encumbrances and any and all right, title and interests related thereto arising or resulting from or relating to the transactions contemplated hereby and by the Plan.

48

36.    <u>Liquidating Trust is Not Successor of the Debtors</u>.  Except with respect to the payment of the Claims expressly provided for in Articles II, III and IV of the Plan and the rights provided to the Liquidating Trust (including, but not limited to the Retained Causes of Action), the Liquidating Trust shall not be the successor to the Debtors and their Estates.  Except with respect to the rights of the Liquidating Trust expressly provided for in the Plan (including, but not limited to, the investigation and pursuit of the Retained Causes of Action), the Liquidating Trust and this Confirmation Order, (i) the Liquidating Trust shall not assume, incur or be responsible for any claims or liabilities of the Debtors or any of their affiliates, and (ii) the Liquidating Trust shall not be successors or successors in interest of the Debtors nor incur any successor or transferee liability of any kind, nature or character, including, without limitation, in relation to (a) any and all liabilities arising or resulting from or relating to the transactions contemplated by the Plan, (b) any and all Claims, Liens, liabilities, encumbrances, charges and other interests arising from or relating to any conduct, liabilities, or obligations of the Debtors, and (c) any and all Claims, Liens, liabilities, encumbrances, charges and other interests and any and all right, title, and interests related thereto, of governmental entities relating to any tax or similar liabilities.

37.    <u>Authorization to Consummate Plan Transactions</u>.  The Debtors and the Liquidating Trustee are all authorized to consummate the transactions contemplated in the Plan and to enter into, execute and deliver all necessary documents, including those required in connection with the Plan.

38.    <u>Conditions to Effective Date</u>.  The Plan shall not become effective unless and until the conditions set forth in Article XI.A. of the Plan have been satisfied or waived pursuant to Article XI.B. of the Plan.

39.     <u>Retention of Jurisdiction</u>.  Pursuant to Article XIII of the Plan, this Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code and arising in or related to these Chapter 11 Cases or the Plan, to the fullest extent as is legally permissible.

40.     <u>Effectuating Documents and Further Transactions</u>.  On or before the Effective Date, and without the need for any further order or authority, the Debtors shall file with this Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors are authorized, without the need for any further order or authority, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan.  The Liquidating Trustee is authorized to execute all documents and enter into all agreements as may be necessary and appropriate in connection with the Plan.

41.     <u>Compliance with Tax Requirements</u>.  In connection with the Plan, the Liquidating Trustee will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions under the Plan shall be subject to such withholding and reporting requirements.

42.     <u>Modifications</u>.  Pursuant to Article XIV.D of the Plan, the Debtors may amend, modify or supplement the Plan after the entry of this Confirmation Order, in accordance with section 1127 of the Bankruptcy Code, or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of

Allowed Claims or Allowed Interests pursuant to the Plan, *prior to the Effective Date*, the Debtors, and with the consent of the Consent Right Parties, but without the need for Bankruptcy Court approval, or *following the Effective Date,* the Liquidating Trustee may remedy any defect or omission or reconcile any inconsistencies in the Plan or this Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as amended, modified, or supplemented.

43.    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Liquidating Trustee on the Effective Date.

44.    <u>Exemption from Transfer Taxes</u>.  To the maximum extent provide by section 1146(a) of the Bankruptcy Code, (i) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors, (ii) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, or (iii) any sale by any Debtor consummated post-Confirmation, and any other transfer from any Entity pursuant to, in contemplation of, or in connection with the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales tax, use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local government officials or agents to forego collection of any such

tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

45.     Exemption from Securities Laws.  To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance of the interests in the Liquidating Trust is exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any other applicable non-bankruptcy law or regulation.

46.     Governmental Approvals Not Required.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement and any amendments or modifications thereto.

47.     Notice of Effective Date.  As soon as practicable, but not later than three (3) Business Days following the Effective Date, the Debtors or the Liquidating Trustee shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

48.     Substantial Consummation.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(2) and 1127(b) of the Bankruptcy Code.

49.     Revocation or Withdrawal of the Plan of Liquidation.    If the occurrence of the Effective Date does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts affected by the Plan, and any document or agreement executed pursuant to

the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall: (a) constitute

a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors,

the Debtors' Estates, or any other Entity; or (c) constitute an admission, acknowledgement, offer,

or undertaking of any sort by the Debtors, the Debtors' Estates, or any other Entity.

50.     <u>Reversal</u>.  If any of the provisions of this Confirmation Order are hereafter reversed,

modified or vacated by a subsequent order of the Bankruptcy Court or any other court, such

reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or

undertaken under, or in connection with, the Plan prior to receipt of written notice of such order

by the Debtors.  Notwithstanding any such reversal, modification or vacatur of this Confirmation

Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this

Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be

governed in all respects by the provisions of this Confirmation Order, the Plan, all documents

relating to the Plan and any amendments or modifications to any of the foregoing.

51.     <u>Retention and Payment of Professionals</u>.  The Liquidating Trustee shall have the

right, without Court approval, to retain the services of attorneys, accountants, and other

professionals and agents, to assist and advise the Liquidating Trustee in the performance of his,

her, or its duties, and to compensate and reimburse expenses of such professionals in accordance

with the Liquidating Trust Agreement.  For the avoidance of doubt, the Liquidating Trust can

retain any professional currently retained by the Creditors' Committee.

52.     <u>Conflicts Between Confirmation Order and Plan</u>.  The provisions of the Plan and

this Confirmation Order shall be construed in a manner consistent with each other so as to effect

the purpose of each; *provided, however*, that if there is determined to be any inconsistency between

any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then

solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.  The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent.

53.    <u>Final Order; Waiver of Stay</u>.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.  Any stay of this Confirmation Order provided by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)) is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

54.    <u>Post-Confirmation Status Conference</u>.  **The Court will conduct a post-confirmation status conference on February 8, 2024 at 1:30 p.m., United States Courthouse, 299 East Broward Boulevard, Courtroom 301, Fort Lauderdale, FL 33301.**

# # #

<u>Submitted by</u>:
Jordi Guso, Esq.
Michael J. Niles, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  jguso@bergersingerman.com
Email:  mniles@bergersingerman.com

*(Attorney Guso is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*