

**ORDERED in the Southern District of Florida on April 23, 2025.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:

VITAL PHARMACEUTICALS,
INC., *et al.*,

      Debtors.

_____/

Case No.: 22-17842-PDR

Chapter 11

Jointly Administered

**OMNIBUS ORDER DENYING VARIOUS MOTIONS**
**FILED BY JACK H. OWOC AND MEGAN OWOC**

This matter came before the Court for hearing on March 26, 2025, at 10:00

A.M. (the "Hearing"), upon the following motions filed by Jack H. Owoc, and with

respect to certain of them, joined by Megan Owoc: (i) *Emergency Motion To Lift All*

*Confidentiality Orders And Disclose All Settlement Negotiations, Financial*

*Transactions, And Professional Fees To Allow Mr. And Mrs. Owoc To Properly Defend*

*Themselves And Ensure Accountability To Creditors Introduction*,[1] (ii) *Emergency Motion to Waive All Court Fees and Costs Due To Financial Hardship Resulting from Bankruptcy and Imminent Foreclosure Of Movants Family Home Emergency Relief Requested*,[2] (iii) *Emergency Motion to Require Electronic Filing Access for Pro Se Litigants To Ensure Equal Protection Under the Law and Prevent Undue Burdens and Prejudice*,[3] (iv) *Emergency Motion for Immediate Return of Personal Property Confiscated Without Due Process and For Relief from Unlawful Seizure Resulting in Catastrophic Damages*,[4] (v) *Emergency Motion and Supplemental Demand for Equal Time, Fair Treatment, And Formal Apology for Systemic Judicial Bias And Prejudice*,[5] (vi) *Motion For Rule 2004 Examinations*,[6] (vii) *Emergency Motion to Reconsider Deadlines And Pause ESI Production Due to Due Process Violations, Unlawful Confiscation, and Procedural Abuse*,[7] (viii) *Emergency Motion For Injunctive Relief To Halt Trustee's Fraudulent Scheme And Enjoin Lowenstein Sandler And Bast Amron From Continued Depletion Of The Estate*,[8] and (ix) *Emergency Motion To Halt Trustee's Alleged Bankruptcy Fraud And Racketeering Scheme: Looting The Estate*[9] (collectively, the "Motions"). The arguments in the Motions are the latest in a pattern of repetitive and unsupported assertions meant to disrupt the bankruptcy proceedings of Mr. Owoc's former companies, Vital

---

[1] Doc. 2820.
[2] Doc. 2821.
[3] Doc. 2822.
[4] Doc. 2823.
[5] Doc. 2825.
[6] Doc. 2826.
[7] Doc. 2837.
[8] Doc. 2838.
[9] Doc. 2839.

Pharmaceuticals, Inc. and its affiliates (the "Debtor" or "Vital"). For the reasons that follow the Motions are denied.

I.    **Background**

Jack H. Owoc founded Vital in 1993, serving as its sole officer and shareholder. Under his leadership Vital experienced significant growth and success with its Bang Energy drink brand. However, the company faced substantial legal challenges that contributed to its financial difficulties. In one prominent case, Monster Energy Company ("Monster") sued Vital for false advertising related to the marketing of "Super Creatine" in the company's flagship product, Bang Energy drinks.[10] The jury determined that the claims were misleading since the drinks contained no actual creatine, resulting in a $293 million damages award in 2022.[11] This verdict was later upheld by the Ninth Circuit Court of Appeals in April 2025.[12]

In a separate arbitration case, Vital was found liable for trademark infringement against Monster and Orange Bang, resulting in a $175 million arbitration award and a 5% royalty on future Bang Energy sales. [13] These significant financial obligations placed immense strain on the company.

The Bang Energy drink, central to Vital's success, was also the product at the heart of these legal issues. Its misleading marketing claims and trademark disputes called into question the long-term viability of the brand.

---

[10] *Monster Energy Co. v. Vital Pharms., Inc. et al.*, Case No. 5:18-cv-1882-JGB-SHK (C.D. Cal. September 29, 2022).
[11] Id. at Doc. 890.
[12] Id. at Doc. 1083.
[13] *Orange Bang, Inc. et al. v. Vital Pharms Inc. et al.*, AAA Case No. 01-20-0005-6081 (April 4, 2022).

These judgments lead to Vital and its affiliates filing for bankruptcy in October 2022.[14] Shortly after filing bankruptcy, Vital added independent directors to its board. Ultimately, Vital's board removed Mr. Owoc as an officer and director in March 2023.[15]

In February 2023, as part of the chapter 11 efforts to maximize estate value, the Debtor, through its investment banker Rothschild & Co., engaged in a months-long global marketing process. The Court entered its *Order (I) Approving Bidding Procedures, (II) Authorizing the Debtors to Provide Bid Protections, and (III) Granting Related Relief*,[16] which set competitive bidding procedures for the sale of the company. The Debtor, through Rothschild, contacted approximately 150 potential buyers and entered into NDAs with over 45 interested parties. Despite this extensive outreach and repeated extensions of bidding deadlines, only one Qualified Bid was ultimately received for substantially all of the Debtors' assets—submitted by Blast Asset Acquisition LLC, an acquisition vehicle formed by Monster. No other actionable bids were received by the extended final bid deadline of June 26, 2023. Consequently, the Auction was cancelled, and Blast was designated the Successful Bidder.

On June 28, 2023, Vital and Blast entered into their *Asset Purchase Agreement*, resulting in the Court's *Amended Order (1) Authorizing and Approving (A) The Sale of Substantially All of the Debtor's Assets Free and Clear of all Liens, Claims and Encumbrances and (B) The Assumption and Assignment of Certain Executory*

---

[14] Doc. 1.
[15] *See In re Vital Pharms.*, 2023 Bankr. LEXIS 2483, *4 (Bankr. S.D. Fla. 2023).
[16] Doc. 854.

*Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* (the "Sale Order").[17] Pursuant to the Asset Purchase Agreement, Monster agreed to pay $362 million in cash, plus potential contingent consideration up to $10 million, and assume certain liabilities. The sale was also structured in tandem with a comprehensive settlement of pending litigation and was subject to Hart-Scott-Rodino clearance. Assertions by Mr. Owoc that a materially higher bid was "suppressed" are not supported by any evidence in the record and are contradicted by the extensive sale history and lack of alternative qualifying bids submitted during the process.

Vital filed its *Second Amended Chapter 11 Plan of Reorganization* (the "Plan")[18] on September 15, 2023, and the Court entered its *Order Approving Disclosure Statement and Confirming Chapter 11 Plan* (the "Confirmation Order")[19] on November 8, 2023. Mr. Owoc had the opportunity to appeal the Sale Order and Confirmation Order but did not do so. The Confirmation Order established the Liquidating Trust, with the purpose of holding and administering assets for the benefit of the estate and its creditors.[20]

As relevant context for the Motions addressed in this Order, the Court notes that the Liquidating Trust has filed an adversary proceeding against Mr. Owoc, Mrs. Owoc, and various affiliated entities (the "Adversary").[21] In that lawsuit, the

---

[17] Doc. 1658.
[18] Doc. 1905.
[19] Doc. 2258.
[20] Doc. 1905, Art. VI.
[21] *See, e.g., VPX Liquidating Trust v. Owoc et al.* (*In re Vital Pharms.*), Adv. No. 24-01009-PDR (Bankr. S.D. Fla. filed Jan 18, 2024).

Liquidating Trust seeks to recover property and pursue claims for, among other things, breach of fiduciary duty, fraudulent transfer, and unjust enrichment. The Second Amended Complaint alleges that Mr. Owoc, while serving as CEO and fiduciary of Vital, caused the company to transfer substantial corporate assets, including cash and intellectual property, for the benefit of himself, Mrs. Owoc, their family members, and entities under their control, at a time when the company was insolvent.[22] These actions are alleged to constitute breaches of Mr. Owoc's fiduciary duties to the company and its creditors. The Complaint further asserts that Mr. Owoc engaged in conduct that contributed to the company's legal exposure and eventual financial collapse, including the unauthorized use of the "Bang" brand and the marketing of "Super Creatine" in violation of prior settlement agreements.

Mr. Owoc's pending motions in this Court seek, in part, to halt or interfere with the Liquidating Trust's prosecution of that Adversary. The Court references the existence of this litigation solely to provide context for the relief Mr. Owoc is seeking in the present motions. The Court makes no findings as to the validity of the Liquidating Trust's allegations or the merits of the Adversary.

## II.  <u>Jurisdiction</u>

This Court has subject matter jurisdiction over these matters under 28 U.S.C. § 1334. The Court has statutory authority to hear and determine this proceeding under 28 U.S.C. § 157(a) and (b)(1). Venue is proper under 28 U.S.C. § 1408.

## III.  <u>Standard</u>

---

[22] Id. at Doc. 148.

Under Eleventh Circuit precedent, "[a] factual claim is frivolous when it has no reasonable factual basis. A legal claim is frivolous when it has no reasonable chance of succeeding."[23] "The bankruptcy court has authority to regulate vexatious litigation pursuant to section 105(a) of the Bankruptcy Code and the All Writs Act, 28 U.S.C. § 1651(a)," and have done so where parties engage in repetitive or harassing filings.[24] As the Supreme Court has emphasized, "[e]very paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources. A part of the Court's responsibility is to see that these resources are allocated in a way that promotes the interests of justice."[25]

Although pro se litigants are granted leniency in procedural matters, they are not immune from sanctions for abusive litigation conduct.[26] "[O]ne acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."[27] Courts need not entertain every nonsensical argument asserted by a pro se litigant and may reject them summarily instead.[28] A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations, nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record.[29] Moreover,

---

[23] *Gulisano v. Cohen*, 34 F.4th 935, 942 (11th Cir. 2022) (citing *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

[24] *In re Grp. Mgmt. Corp.*, 2022 Bankr. LEXIS 3517, *2 (Bankr. N.D. Ga. 2022); *See* 11 U.S.C. § 105(a); 28 U.S.C. § 1651(a); *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995).

[25] *In re McDonald*, 489 U.S. 180, 184 (1989).

[26] *See Id.*

[27] *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) (citing *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir.1986).

[28] *See, e.g., United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011).

[29] *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989).

Courts may impose reasonable limitations on future filings to prevent abuse, so long as the litigant retains some access to the courts.[30]

The Eleventh Circuit has likewise recognized that courts may fashion appropriate injunctive relief to protect the courts and parties from vexatious and abusive litigants.[31] Such restrictions may include requiring leave of court before further filings, provided the litigant is not completely foreclosed from access to the courts.[32]

Considering the Owocs' pattern of repetitive, frivolous, and harassing filings, further restrictions may be warranted to preserve judicial resources and safeguard the orderly administration of the estate.

## IV.    Analysis

### A.    The 2004 Exam Motion

Mr. Owoc's *Motion for Rule 2004 Examinations* (the "2004 Exam Motion")[33] seeks 2004 discovery from a variety of individuals and entities including the Debtors, Monster, and various professionals involved in the bankruptcy proceeding, including his former counsel. The Motion asserts as its basis: "there is credible evidence that certain financial institutions and advisors deliberately suppressed a $3.7 billion offer from Keurig Dr. Pepper, thereby reducing the value of the estate and harming creditors." Although this is a consistent theme to the repetitive complaints by Mr.

---

[30] *In re Grp. Mgmt. Corp.*, 2022 Bankr. LEXIS 3517 at 3 (citing *In re Amir*, 2013 Bankr. LEXIS 3915, 2013 WL 5302549, at *2-3 (Bankr. N.D. Ohio 2013)). *Foley v. Orange Cnty.*, 2024 U.S. App. LEXIS 18143, *6 (11th Cir. 2024) (citing *Procup v. Strickland*, 792 F.2d 1069, 1074 (11th Cir. 1986) (en banc)).
[31] *See Procup*, 792 F.2d at 1074.
[32] *See Martin-Trigona v. Shaw*, 986 F.2d 1384, 1387 (11th Cir. 1993).
[33] Doc. 2826.

Owoc, he has had every opportunity but has failed to present any such "credible evidence," or any evidence whatsoever. The Court finds Mr. Owoc's repeated assertion of a $3.7 billion suppressed bid to be entirely unsubstantiated and not credible. Speculative or inflammatory claims—unsupported by any facts—do not justify discovery under Rule 2004 or any other provision of the Bankruptcy Code.

It is also illogical to suggest that the Debtor through its board of directors, its advisors, the unsecured creditors' committee and various financial institutions, or the secured creditors who were not paid in full, would have suppressed any higher or better offer let alone such a dramatically higher and better offer. The motion appears instead to be a forum for Mr. Owoc's personal grievances and to assert potential personal litigation claims rather than a genuine concern for the administration of the estate. In addition, to the extent Mr. Owoc seeks discovery relating to issues in the Adversary or any other proceedings,[34] the discovery is more appropriately sought there pursuant to the pending proceeding rule.[35]

Mr. Owoc has already taken depositions and received large document productions; courts generally do not permit duplicative or harassing demands.[36] To the extent Mr. Owoc is using 2004 discovery in order to pursue a private cause of action against the directors or professionals, the Plan's Gatekeeper Provision bars

---

[34] *VPX Liquidating Trust v. Owoc et al.* (*In re Vital Pharms.)*, Adv. No. 24-01009-PDR (Bankr. S.D. Fla. filed Jan 18, 2024); *Vital Pharms, Inc. et al. v. Owoc et al.* (*In re Vital Pharms.*), Adv. No. 23-01125-PDR (Bankr. S.D. Fla. filed June 16, 2023).

[35] *See In re Sanomedics, Inc.,* 2018 Bankr. LEXIS 2187, at *6 (Bankr. S.D. Fla. 2018) ("[u]sing Rule 2004 to obtain discovery relevant to outside litigation is precisely the type of prejudice to the discovery target that the pending proceeding rule is designed to avoid.")

[36] *See In re Kelton,* 389 B.R. 812, 814 (Bankr. S.D. Ga. 2008) ("[c]ourts have denied motions for Rule 2004 examinations when the purpose is to abuse and harass. . .")

him from doing so without first meeting specific thresholds.[37] Mr. Owoc did not appeal the Confirmation Order and the Plan's Gatekeeper Provisions remain applicable. Mr. Owoc has made no effort to comply with them.

Finally, the requests lack requisite good faith. The allegations of suppressed bids or misconduct have already been addressed in the sale process and the Sale Order.[38] The Sale Order was entered on July 14, 2023, and the Confirmation Order was entered on November 8, 2023, both of which established the sale of the Debtors to Blast Asset Acquisition, LLC.[39] Mr. Owoc did not appeal either order, and the time to appeal has long since passed. A renewed "investigation" is unlikely to survive scrutiny unless Mr. Owoc shows a reasonable basis for his repeated allegations, which he has failed to do. Accordingly, the 2004 Exam Motion is denied.

Moreover, the Court finds this Motion to be both frivolous and vexatious. It is both factually and legally frivolous, as it has no reasonable factual basis, is unsupported by any competent evidence, and has no chance of succeeding. Mr. Owoc's conduct at the Hearing was also vexatious and inappropriate from any litigant. He claimed that the Court forced his previous lawyers to resign "because of the pressure in this corrupt Southern Florida bankruptcy community."[40] Mr. Owoc made unsupported accusations including: "There was all kinds of fraud from the very beginning. . . So all this nonsense and bankruptcy crimes that all of you committed,

---

[37] *See* Doc. 1905, Art. VII, Sec. K.
[38] *See* Doc. 1658.
[39] *See* Id., Doc. 2258.
[40] Hr'g Tr. Mar. 26, 2024, 27:5-10.

is vitiated."[41] He accused the Court, asserting that it was "blocking in allowing them to commit fraud."[42] He threatened the Court and all of the parties involved, stating: "Let me just tell you, [the President] passed new legislation, and I've been invited to the White House, personally invited. You guys, you're all going down. You're not going to get away with it."[43] He addressed the Court by saying "you're a shill. You're blocking, and you're aiding and abetting in a $3.7 billion crime. . ."[44] As provided earlier in this Order, being "pro se does not serve as an 'impenetrable shield', for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."[45] Mr. Owoc clearly harassed the Court and the other parties with his conduct at the hearing, and he is clogging and abusing this proceeding's docket with his frivolous and vexatious filings. Mr. Owoc's inflammatory statements lack any evidentiary support and further undermine his credibility as a litigant in this matter.

### B. The Apology Motion

Jack and Megan Owocs' *Emergency Motion and Supplemental Demand for Equal Time, Fair Treatment, And Formal Apology for Systemic Judicial Bias And Prejudice* (the "Apology Motion")[46] accuses the Court of bias and unequal treatment and demands, among other things, a formal apology. The Owocs ask the Court to: (i) read every future Owoc filing aloud in open court and enter each verbatim into the

---

[41] Id. at 27:22-25, 28:1-2.
[42] Id. at 30:4-5.
[43] Id. at 30:11-14.
[44] Id. at 32:4-6.
[45] *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) (citing *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir.1986).
[46] Doc. 2825.

record; (ii) grant oral-argument time "comparable" to that afforded the Trustee and other parties; (iii) issue a formal written apology acknowledging alleged "repeated instances of judicial misconduct;" and (iv) provide written justification for any future difference in speaking time or procedural treatment. The Apology Motion asserts that the Court has shown "persistent and egregious judicial bias," claims the Trustee received "hours" of argument while Mr. Owoc received "mere minutes," alleges "over 100 instances" in which the Owocs were "silenced" or "obstructed," and cites federal and Florida authority on due-process rights, impartial tribunals, and judicial canons to argue that the Owocs are entitled to equal treatment and a written apology.

The Court finds these accusations to be wholly without merit and unsupported by any credible evidence. Mr. Owoc has been afforded every opportunity to participate fully in this bankruptcy.  He has appeared at numerous hearings, filed a substantial number of motions and objections, and has made oral arguments—often at length. The record reflects that Mr. Owoc's procedural access has not been denied but expanded, with the Court routinely allowing him to be heard despite the repetitive and often inflammatory nature of his remarks and filings.

To the extent the Motion claims judicial bias based on the Court's rulings or case management, it is well established that "[j]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."[47] Nor does unequal argument time, without more, establish a due process violation. The Court has a duty to manage its docket efficiently and equitably and retains discretion to allocate time as

---

[47] *Liteky v. United States*, 510 U.S. 540, 555 (1994).

appropriate under the circumstances. Assertions that the Court has "never ruled in Mr. Owoc's favor" are not only incorrect, but legally insufficient to establish bias. As the Eleventh Circuit has noted, a judge's decisions in the course of a judicial proceeding do not constitute a basis for recusal absent a showing of pervasive bias.[48]

Despite the unfounded nature of the Owocs' accusations, the Court has consistently permitted their participation out of a commitment to procedural fairness. But that right is not without limits. The Apology Motion, like the others addressed in this Order, is legally frivolous and part of a pattern of vexatious conduct. Accordingly, the Apology Motion is denied.

C. The Halt Motions

Mr. Owoc filed two duplicative motions: the *Emergency Motion for Injunctive Relief To Halt Trustee's Fraudulent Scheme And Enjoin Lowenstein Sandler And Bast Amron From Continued Depletion Of The Estate*,[49] and the *Emergency Motion To Halt Trustee's Alleged Bankruptcy Fraud And Racketeering Scheme: Looting The Estate*[50] (together, the "Halt Motions"). These Motions request nearly identical relief, asking the Court to suspend billing by the Trustee and his attorneys and refer them to federal authorities for potential bankruptcy fraud. The header of one section of the second Halt Motion reads: "The Legendary Rico Conspiracy: A Case Study in Collusion, Fraud, and Abuse of Power." That section states:

> What is unfolding in this bankruptcy is not just mismanagement-it is a coordinated, multi-party fraud operation that bears all the hallmarks of a Racketeer Influenced and Corrupt Organizations (RICO) conspiracy.

---

[48] *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1329 (11th Cir. 2002).
[49] Doc. 2838.
[50] Doc. 2839.

The Trustee, its law firms, and other complicit actors have engaged in a pattern of behavior that strongly suggests collusion to commit financial fraud under the protection of the bankruptcy court.

However, the confirmed Plan provides at Article VI.H(6) that post-confirmation the Liquidating Trustee can compensate attorneys without Court approval: "The Liquidating Trustee shall have the right, without Court approval, to retain the services of attorneys, accountants, and other professionals and agents, to assist and advise the Liquidating Trustee in the performance of his, her, or its duties, and to compensate and reimburse expenses of such professionals in accordance with the Liquidating Trust Agreement."[51] These provisions reflect the post-confirmation separation of powers established by the Plan: the Liquidating Trustee holds authority to retain and compensate professionals in accordance with the Liquidating Trust Agreement, without judicial approval. Any attempt to override these terms now would contravene the final, binding nature of the Confirmation Order. If Mr. Owoc wished to object to confirmation on these grounds, he could have done so and could have appealed the Confirmation Order. The Court will not suspend the Liquidating Trust from billing, as it is merely operating post-confirmation pursuant to the Plan and the Confirmation Order.

Mr. Owoc's continued filing of frivolous and inflammatory motions further underscores the vexatious nature of his conduct. These filings impose additional costs on the estate by requiring responses from the Liquidating Trust and its professionals—the very expenditures Mr. Owoc purports to challenge. This pattern

---

[51] Doc. 1905, Art. VI.H(6).

of conduct not only burdens estate administration but also undermines the integrity of the judicial process. The Halt Motions are denied.

Mr. Owoc's conduct at the hearing was likewise vexatious, claiming the attorneys for the Liquidating Trust were "abusing the bankruptcy process for personal enrichment."[52] The following excerpts from Mr. Owoc's in-court statements reflect conduct that the Court finds disruptive and unsupported by any evidentiary basis: "You need to shut this down, Judge, because if you don't, you're aiding and abetting this legal looting scheme that's going on here." Reading the Motions in open court, he requested that the Court "refer – and this is very important – the matter to the federal authorities for investigation into potential bankruptcy fraud, racketeering activities, with the actions Lowenstein Sandler and the trustee may constitute violations under 18 U.S.C. 1962, which is a RICO crime. . ."[53] Mr. Owoc's Motions and repeated criminal accusations – unsupported by a single item of competent evidence– are legally frivolous and procedurally abusive. Such conduct cannot be tolerated in any court, particularly one tasked with protecting estate assets for the benefit of creditors.

The Court finds the Halt Motions legally frivolous and factually baseless. Mr. Owoc's escalating rhetoric, repeated unfounded accusations, and disruptive conduct reflect a continuing abuse of process. The Halt Motions are denied in their entirety.

D. <u>The Confidentiality Motion</u>

---

[52] Hr'g Tr. Mar. 26, 2024, 189:5-6.
[53] Id. at 190:13-18.

Jack and Megan Owoc's *Emergency Motion to Lift All Confidentiality Orders and Disclose All Settlement Negotiations, Financial Transactions, And Professional Fees to Allow Mr. And Mrs. Owoc To Properly Defend Themselves and Ensure Accountability to Creditors Introduction* (the "Confidentiality Motion")[54] focuses primarily on a purportedly confidential settlement agreement with Lloyd's of London. They assert: "[t]hese confidentiality restrictions have been weaponized to obstruct due process, prevent transparency, and conceal the mismanagement, self-dealing, and abuse of power perpetrated by the Trustee and their counsel, Lowenstein Sandler LLP." The Confidentiality Motion requests that the Court lift all confidentiality restrictions and provide weekly billing reports of all money paid to professionals for the estate.

The only purportedly confidential matter referenced in the Motion—the Lloyd's of London settlement—is not confidential and remains publicly available on the docket.[55] While the Liquidating Trust originally requested to file the motion under seal (at the apparent request of Lloyd's of London),[56] the Court denied that request.[57] The Liquidating Trust filed its *Amended Motion to Compromise Controversy with Certain Underwriters at Lloyd's, London*,[58] disclosing the settlement – Lloyd's of London was to pay $1.25 million to the Liquidating Trust in

---

[54] Doc. 2820.
[55] *See* Doc. 2785.
[56] *See* Doc. 2766.
[57] Doc. 2788.
[58] Doc. 2785.

exchange for the Liquidating Trust dismissing a suit in state court, which the Court approved.

The only other potentially confidential agreement, as pointed out by the Liquidating Trust in its Objection, is the *Protective Order*.[59] However, this order was merely designed to protect confidential material that may be produced during discovery, and Mr. Owoc signed an agreement acknowledging that he consented to and was bound by it.[60] The Protective Order also provides procedures for Mr. Owoc to seek the unsealing of confidential documents if he wishes to do so.[61] Moreover, as made clear in the *Expedited Motion for Protective Order and Confidentiality Agreement*,[62] the primary purpose was to shield confidential information from Monster, who was engaged in separate litigation with the Debtors. Mr. Owoc has continuously complained that confidential information might become available to Monster and used against him, so if anything, the Protective Order was designed to protect his interests.

The Confidentiality Motion is a good example of a frivolous motion having no reasonable factual basis and no reasonable chance of succeeding. Accordingly, the Confidentiality Motion is denied.

E. The Fee Waiver Motion

Jack and Megan Owoc filed an *Emergency Motion to Waive All Court Fees and Costs Due to Financial Hardship Resulting from Bankruptcy and Imminent*

---

[59] Doc. 823.
[60] *See* Id.
[61] *See* Id.
[62] Doc. 775.

*Foreclosure of Movants Family Home Emergency Relief Requested* (the "Fee Waiver Motion").[63] The Fee Waiver Motion claims that, due to financial losses and the imminent foreclosure of their home, the Owocs are entitled to have future court fees waived. It is unclear precisely what fees they are referring to. They cite 28 U.S.C. § 1930(f)(1), which applies only to filing fees for individual chapter 7 debtors; inapplicable here.[64] The Owocs provide no further explanation of the fees they seek to have waived or the legal basis for doing so. The Fee Waiver Motion is another example of a frivolous motion having no reasonable factual basis and no reasonable chance of succeeding. Accordingly, the Fee Waiver Motion is denied.

   F.  The CM/ECF Motion

   Mr. Owoc's *Emergency Motion to Require Electronic Filing Access for Pro Se Litigants To Ensure Equal Protection Under the Law and Prevent Undue Burdens and Prejudice* (the "CM/ECF Motion")[65] requests access to electronically file motions on the docket, claiming his inability to do so violates his constitutional rights. However, Federal Rule of Civil Procedure 5(d)(3)(B)(i) provides that pro se litigants "may file electronically only if allowed by court order or by local rule."[66] This Court's Local Rule 5005-4(B)(4) provides: "[c]urrently, pro se debtors and bankruptcy petition preparers are ineligible to use CM/ECF to file documents electronically."[67] Accordingly, in this district unrepresented parties are not permitted to use the

---

[63] Doc. 2821.
[64] 28 U.S.C. § 1930(f)(1).
[65] Doc. 2822.
[66] Fed. R. Civ. P. 5(d)(3)(B)(i).
[67] Bankr. S.D. Fla. R. 5005-4(B)(4).

CM/ECF system. It is the Court's understanding that this is the policy of virtually every bankruptcy court in the country. The CM/ECF Motion claims that the Northern District of Florida's Electronic Document Submission Web Portal allows pro se litigants to file online; however, that online portal clearly indicates: "[p]ro se litigants may not file electronically."[68]

The Eleventh Circuit addressed this precise issue in *In re Castro*, in which a pro se litigant claimed the District Court for the Southern District of Florida's restriction on CM/ECF access violated his first amendment rights.[69] The court rejected his argument, providing: "Both the Federal Rules and the district court's local rules clearly allow for the electronic filing restriction on pro se litigants that Castro now challenges. Moreover, the district court had broad discretion to manage its docket, the right of access to the courts is not absolute, and Castro has not provided any authority supporting his position that the district court's electronic filing restriction violates the First Amendment."[70]

Mr. Owoc has likewise provided no coherent authority as to how his constitutional rights have been violated. There is no constitutional right to electronic filing, and courts are permitted to manage access to electronic systems in the interest of administrative efficiency, consistency, and security.[71] So long as a party has a reasonable alternative method of access to the court—as Mr. Owoc has used consistently in this case—there is no due process or equal protection concern. His

---

[68] https://www.flnd.uscourts.gov/e-filing-cmecf-info.
[69] *In re Castro*, 2023 U.S. App. LEXIS 8687 (11th Cir. 2023).
[70] Id. at 3-4.
[71] *See* Id.

inability to file electronically does not constitute a legal barrier to participation, but rather reflects a uniform policy applied nationwide to pro se litigants.

Mr. Owoc has had no difficulty filing pleadings in this case. His motion appears to reflect frustration with the inconvenience of physically filing documents with the Clerk's Office, rather than a genuine barrier to access or due process concern. Accordingly, the CM/ECF Motion is denied.

G. <u>The Computer Return Motions</u>

Mr. Owoc filed two motions relating to the return of a computer in the possession of Avalon Legal – *Emergency Motion for Immediate Return of Personal Property Confiscated Without Due Process and For Relief from Unlawful Seizure Resulting in Catastrophic Damages*,[72] and *Emergency Motion to Reconsider Deadlines And Pause ESI Production Due to Due Process Violations, Unlawful Confiscation, And Procedural Abuse*[73] (the "Computer Return Motions"). The process complained of by Mr. Owoc has been set forth by the Court clearly throughout these proceedings.[74] Mr. Owoc has been given every opportunity to comply with the requirements, but he has instead chosen to consistently fail to do so. The Computer Return Motions repeat the arguments by Mr. Owoc rejecting the process and are therefore another example of frivolous motions having no reasonable factual basis and no reasonable chance of succeeding. The Computer Return Motions have been denied by a separate order.[75]

**V.    Conclusion**

---

[72] Doc. 2823.
[73] Doc. 2837.
[74] *See* Doc. 2697; Doc. 2777.
[75] Doc. 2881.

In sum, all nine of the Motions are denied. The Court finds that Mr. Owoc has repeatedly failed to present credible evidence in support of his claims. His allegations are either directly refuted by the record or entirely unsupported by any factual basis. This pattern of conduct reflects a continued abuse of the judicial process and has imposed unnecessary burdens on the estate and the Court.

Courts in the Eleventh Circuit have made clear, "[a]n injunction limiting a litigant's filings is appropriate where necessary to prevent undue interference with the orderly administration of bankruptcy proceedings."[76] Bankruptcy courts have both statutory and inherent authority to curb vexatious litigation under 11 U.S.C. § 105(a) and the All Writs Act, 28 U.S.C. § 1651(a).[77] Accordingly, should Mr. Owoc persist in filing frivolous, duplicative, or abusive motions, the Court may decline to set them for hearing and may impose reasonable filing restrictions, including requiring prior leave of court.

**Accordingly,** the Court **ORDERS:**

1. The Motions are **DENIED**.

# # #

Copies to: All parties in interest.

---

[76] *In re Grp. Mgmt. Corp.*, 2022 Bankr. LEXIS 3517, *3 (Bankr. N.D. Ga. 2022) (citing *In re Amir*, 2013 Bankr. LEXIS 3915, 2013 WL 5302549, at *2-3 (Bankr. N.D. Ohio 2013)).
[77] Id. at 1.