

**ORDERED in the Southern District of Florida on May 29, 2026.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:                                            Chapter 11

**VITAL PHARMACEUTICALS, INC.,** *et al.,*     Case No. 22-17842-PDR
                    Debtors.

_____/

**ORDER SUSTAINING OBJECTION TO PUTATIVE CLASS PROOF OF**
**CLAIM AND DECLINING TO APPLY BANKRUPTCY RULE 7023**

A consumer stops at a gas station somewhere in America, reaches into a cooler, and pulls out a can of Bang Energy drink. The label promises Super Creatine, a proprietary compound that, according to the manufacturer, delivers the performance benefits of creatine in a uniquely bioavailable form. The consumer pays a few dollars more than she might for an ordinary energy drink and goes on her way. What she does not know, and could not reasonably know, is that the product contains no actual

creatine at all. She has been deceived. Under applicable consumer protection law, she has a claim.

That consumer is a creditor of this bankruptcy estate. But she is unlikely to see a notice published in the Wall Street Journal or the Miami Herald. She is unlikely to retain a bankruptcy attorney. She probably will not file a proof of claim for the two or three dollars in damages. The economics are simply not there. And she is not alone: there are potentially millions of people just like her, small claimants scattered across the country, each with a real but tiny grievance, each individually unlikely to seek to vindicate it in any court. This is the defining problem of the consumer creditor in a large bankruptcy case. Bankruptcy law addresses it in two ways. Understanding both is essential to resolving the matter before the Court.

The first approach is structural. A chapter 11 case is itself a collective proceeding. The automatic stay halts the race to the courthouse. The bar date and claims process provide a centralized mechanism through which every creditor, known or unknown, large or small, may present a claim in a single forum, without a lawyer, at essentially no cost. The pro rata distribution ensures that no creditor is favored over another of equal priority. Nationwide service of process and a single supervising court manage what would otherwise be thousands of scattered proceedings. In this sense, bankruptcy already provides much of what a class action is designed to deliver: aggregation, centralization, efficiency, and protection against the strategic behavior

that race-to-judgment dynamics produce outside of bankruptcy.[1] Congress designed it this way deliberately, and the design has been proven very effective.

But the Code's structural design has limits. Publication notice in a national newspaper may be legally adequate, and this Court has found that it was in this case, while remaining practically invisible to a consumer who bought a gas station beverage and has long since thrown away the receipt. The bar date, whatever its formal adequacy, does not actually reach the dispersed consumer creditor whose claim is too small to make the necessary effort. When the individual economic incentive to file a claim is very low, the claims process does not aggregate those claims, it simply allows them to expire.

This is the gap that Bankruptcy Rule 7023 was perhaps designed to fill. By incorporating the procedures of Federal Rule of Civil Procedure 23 into the bankruptcy claims process, Rule 7023 allows a class representative to file a single proof of claim on behalf of all similarly situated creditors, aggregating small claims that would otherwise be uneconomical to prosecute individually.[2] The Eleventh Circuit recognized the legitimacy of this device in *In re Charter Co.*, holding that a

---

[1]The *Gentry* court enumerated these structural advantages: "(1) established mechanisms for notice, (2) established mechanisms for managing large numbers of claimants, (3) proceedings centralized in a single court with nationwide service of process, and (4) protection against a race to judgment since all of the debtor's assets are under control of the bankruptcy court." *Gentry v. Siegel*, 668 F.3d 83, 92-93 (4th Cir. 2012); s*ee also In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 9 (S.D.N.Y. 2005) ("[S]uperiority of the class action vanishes when the 'other available method' is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost.").

[2]The Seventh Circuit captured this dynamic with characteristic directness in *In re Am. Reserve Corp.*, 840 F.2d 487, 489 (7th Cir. 1988): "The combination of contingent claims … and the effort needed to decide whether to pursue an identified claim means that for many small claims, it is class actions or nothing."

class proof of claim is not categorically impermissible and that a motion to apply Rule 7023 is not ripe until a claim objection creates a contested matter under Rule 9014.[3] The logic is sound: class treatment in bankruptcy serves the same function as class treatment outside it, and the bankruptcy process has no structural objection to accommodating it.

But Rule 7023 is not self-executing. It is not a right. It is a tool, and like any tool it must be used in the right way at the right time. Bankruptcy Rule 9014 provides that the court *may* direct application of Rule 7023 to a contested matter.[4] That word reflects a considered judgment that the class mechanism, whatever its virtues in aggregating consumer claims, carries costs in the bankruptcy context that the court must weigh against its benefits. The same structural features that make bankruptcy a collective proceeding, the centralized forum, the bar date, the claims administration process, mean that the justifications for class treatment that are compelling outside bankruptcy are sometimes diminished within it. And the timing of a Rule 7023 request matters enormously, because bankruptcy cases do not stand still. Plans confirm. Estates are administered. Creditors who filed timely claims make decisions, about voting, treatment, and settlement, in reliance on what the claims pool looks

---

[3] The Eleventh Circuit embraced similar reasoning in *In re Charter Co.*, 876 F.2d 866, 871 (11th Cir. 1989).

[4] Fed. R. Bankr. P. 9014(c). The permissive language is deliberate and consequential: "may" signals discretion, not obligation. See *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 773–74 (11th Cir. 2020) ("'may' cannot, by any rendering, mean 'must'"). The application of Rule 7023 is accordingly a two-step inquiry: first, whether to apply it at all; second, if yes, whether the proposed class satisfies Federal Rule 23. See *Ephedra*, 329 B.R. at 5.

like at any given moment. Every day that passes after confirmation is a day that reliance interests deepen and the cost of disruption grows.

Against that backdrop, this case presents a precise and difficult question: whether Rule 7023 should be applied to a $500 million putative class claim filed on behalf of the very consumers (the Bang Energy drink purchasers) when no class was ever certified in any forum, when the case has been pending for three and a half years, when the Liquidating Trustee has determined to make an initial distribution to general unsecured creditors, and when the claims reconciliation process is substantially advanced. The Court concludes that the answer is no.

The result is not without equitable cost. A jury in the Central District of California has found that the Vital Pharmaceuticals' Super Creatine advertising deceived consumers and that the deception was material to their purchasing decisions. The Liquidating Trust has invoked that same consumer harm in its prosecution of the Owoc adversary proceeding.[5] The irony that corporate creditors will recover while the deceived consumers do not is not lost on the Court.[6]  But the equities cannot override the procedural framework the Bankruptcy Rules establish, and that framework, faithfully applied to the facts of this case, yields the result that follows.

---

[5] Adv. Pro. No. 24-1009-PDR

[6] The Liquidating Trust recently obtained a partial summary judgment in the Owoc adversary proceeding on Count III (breach of fiduciary duty), with the underlying California jury verdict finding that the Debtors' Super Creatine advertising "deceive(d) or (was) likely to deceive consumers" and was "material to consumers' purchasing decisions." Order Granting Liquidating Trust's Motion for Partial Summary Judgment (Adv. Pro. No. 24-1009-PDR, Dkt. No. 435, at 4).

## Background

Vital Pharmaceuticals, Inc. and its affiliated debtors (the "Debtors") filed voluntary petitions for chapter 11 relief on October 10, 2022 ("Petition Date"). Prior to the Petition Date, two putative class action lawsuits had been filed against Vital Pharmaceuticals in Missouri state court alleging that its Bang Energy products were marketed as containing Super Creatine, a compound the complaints alleged contained no actual creatine, in violation of consumer protection statutes. Both actions were removed to the Eastern District of Missouri and were automatically stayed upon the Petition Date, still at the motion to dismiss stage.[7] No motion for class certification was filed in either action at any point.

On December 19, 2022, the general bar date ran. The Debtors provided actual notice to the Putative Class Claimants[8] and their counsel, and constructive notice via publication in the Wall Street Journal, Miami Herald, and Sun-Sentinel.[9] This Court's Bar Date Order[10] found that publication notice was adequate. Despite that notice, not a single individual member of the putative class filed a proof of claim.

---

[7]The Fischer Action (*Fischer v. Vital Pharms., Inc.*, Case No. 22-CV-00136 (MTS) (E.D. Mo.)) was filed in Missouri state court in October 2021 and removed to federal court in February 2022. The Abbott Action (*Abbott v. Vital Pharms., Inc.*, Case No. 22-CV-00587 (CPD) (E.D. Mo.)) was filed in April 2022 and removed in May 2022.

[8]The Putative Class Claimants are Brendan Abbott and Peter Fischer (the prepetition class representatives) and Carlton Harris (the postpetition class representative), individually and on behalf of all others similarly situated (collectively, the "Putative Class Claimants" or "Claimants").

[9]Bar Date Order (Dkt. No. 114); Notice of Commencement (Dkt. No. 132). The general bar date was December 19, 2022. Publication notice appeared in the *Wall Street Journal*, *Miami Herald*, and *Sun-Sentinel* on October 21 and November 11, 2022.  See Notice of Filing Aff. of Publication (Dkt. No. 339). Bar Date Order ¶ 11.

[10] Dkt. No. 114 (the "Bar Date Order").

The Putative Class Claimants filed Proof of Claim No. 617 on December 19, 2022, asserting a claim of not less than $500,000,000 on behalf of a putative nationwide class of Bang Energy consumers.[11] At the same time, Carlton Harris filed an application for an administrative expense claim based on postpetition purchases of Bang products. The Debtors objected, and on October 25, 2023, more than a year after the Petition Date, the parties entered into the Administrative Claim Stipulation (the "Admin Stipulation"), which resolved the administrative claim. It provided that the parties would take no action to "allow or disallow, or liquidate" the Putative Class Claim until the Liquidating Trustee determined to make an initial distribution to holders of allowed General Unsecured Claims.[12]

The Plan of Liquidation (the "Plan") was confirmed on November 8, 2023, and became effective on November 21, 2023 (the "Effective Date").[13] It was accepted by all voting classes. Following the Effective Date, the Liquidating Trustee began the work of administering the estate: prosecuting the Owoc adversary proceeding, resolving claims, and working toward a distribution to general unsecured creditors. By the time of the hearing on this matter, the Liquidating Trustee had reduced the general

---

[11]The Putative Class Claim was originally filed as Proofs of Claim Nos. 86 and 87 on November 9, 2022, and subsequently supplemented by Proof of Claim No. 617 in the amount of not less than $500,000,000 on December 19, 2022 (collectively, the "Putative Class Claim").The $500 million Putative Class Claim represents approximately 29.9% of the total general unsecured claims pool of $1,671,183,289.78. Messenger Decl. ¶ 8.

[12]Admin Stipulation (Dkt. No. 2117) ¶ 5.  The Administrative Claim Order (Dkt. No. 2170) approved the stipulation and granted an administrative expense claim of $500,000, with the funds held in trust by class counsel pending further order because no certified class existed.

[13]Confirmation Order (Dkt. No. 2258); Notice of Effective Date (Dkt. No. 2291).  The Plan was accepted by all voting classes.

unsecured claims pool by more than $300 million and had resolved all but one of thirty-two administrative claims.

Having determined to make an initial distribution to holders of Class 3 Allowed General Unsecured Claims, the triggering condition under the Admin Stipulation, the Liquidating Trustee filed the objection to the Putative Class Claim (the "Objection") on January 23, 2026,[14] seeking to disallow and expunge the claim in its entirety. The filing of the Objection created a contested matter under Bankruptcy Rule 9014. The Putative Class Claimants timely filed their response on March 9, 2026,[15] opposing the Objection and simultaneously moving for application of Bankruptcy Rule 7023 and certification of a nationwide consumer class. The parties agreed to a revised briefing schedule limiting the initial briefing to the threshold Rule 7023 question, with class certification under Federal Rule 23 deferred pending this Court's ruling. Briefing concluded with the Liquidating Trustee's Reply[16] and the Putative Class Claimants' Sur-Reply.[17]

## Legal Standard

There is no inherent right to file a putative class claim in bankruptcy.[18] Before a putative class claim may proceed, the bankruptcy court must first determine, in its

---

[14] Dkt. No. 2988.

[15] Dkt. No. 3001.

[16] Dkt. No. 3042.

[17] Dkt. No. 3054.

[18]*In re GAC Corp.*, 681 F.2d 1295, 1299 (11th Cir. 1982) ("[I]n the absence of such application a class proof of claim could not properly be permitted"); *In re Musicland Holding Corp.*, 362 B.R. 644, 650

discretion, whether to apply Bankruptcy Rule 7023 to the contested matter. Only if it does so does the court proceed to analyze whether the proposed class satisfies the certification requirements of Federal Rule 23. This sequencing reflects a substantive judgment that the class mechanism, however appropriate in some cases, is not suited to every bankruptcy, and that the court, not the parties, determines when it applies.

The Eleventh Circuit established the procedural framework for this inquiry in *In re Charter Co.*, holding that a motion to apply Rule 7023 in a contested matter is premature until an objection to a proof of claim creates the contested matter under Rule 9014.[19] Once a contested matter exists, the court exercises its discretion guided by the factors articulated in *In re Musicland Holding Corp.*: (1) whether the class was certified prepetition; (2) whether members of the putative class received adequate notice of the bar date; and (3) whether application of Rule 7023 would adversely affect the administration of the estate.[20] These factors focus the court's inquiry on the features of the specific case that determine whether the class device, which carries genuine benefits and genuine costs, serves the interests of the bankruptcy process in the circumstances presented.

The Court applies that framework to the facts of this case in three steps: first, whether the motion is timely; second, if so, whether to exercise the discretion Rule

---

(Bankr.S.D.N.Y. 2007) (While class proofs of claim in bankruptcy are not prohibited, the right to file one is not absolute.)

[19]*In re Charter Co.,* 876 F.2d at 873–74.

[20]*In re Musicland Holding Corp., 362 B.R.* at 654–55. The *Musicland* framework has been applied by bankruptcy courts within the Eleventh Circuit. *See In re Wildwood Vills., LLC*, No. 3:20-BK-02569-RCT, 2021 WL 1784408, at *3 (Bankr. M.D. Fla. May 4, 2021.

9

9014 reserves to the Court; and third, if discretion is exercised against application, whether any alternative relief is warranted for the class representatives individually. The first question favors the Claimants. The second and third do not.

## Analysis

The Liquidating Trustee leads with the argument that the motion is procedurally defective, that the failure to seek application of Rule 7023 at any point during three-plus years of active case administration is itself fatal to the motion, independent of any discretionary analysis. The Court addresses that threshold argument first.

## I.    The Rule 7023 Motion Is Timely.

The threshold question is whether the Putative Class Claimants' motion is procedurally timely. The Liquidating Trustee argues that the failure to seek application of Rule 7023 at any point during the three-plus years these cases have been pending is itself fatal. The Court disagrees, and the disagreement is compelled by binding circuit authority.

In *Charter*, the Eleventh Circuit held that, absent an adversary proceeding, the first opportunity to seek application of Rule 7023 occurs when an objection to a proof of claim creates a contested matter under Rule 9014. Before that point, the motion is not ripe.[21]  The Liquidating Trustee filed the Objection on January 23, 2026,

---

[21]*Charter, 876 F.2d* at 874 ("[A]bsent an adversary proceeding, the first opportunity a claimant has to move under Bankruptcy Rule 9014, to request application of Bankruptcy Rule 7023, occurs when an objection is made to a proof of claim. Prior to that time, invocation of Rule 23 procedures would not be ripe, because there is neither an adversary proceeding nor a contested matter." The Bankruptcy Rules, the court added, "impose no time requirement" for such a motion, and "the Code contains no other instance where a claimant must perfect a claim prior to objection.").

10

creating the contested matter. The Putative Class Claimants filed their Rule 7023 motion in their timely response, on the court-ordered deadline. Under *Charter*, the motion is not late.[22]

The Liquidating Trustee's reading of *In re Bicoastal Corp.*, arguing that a Rule 7023 motion must be filed "as soon as practicable" after the filing of the proof of claim itself, regardless of whether any objection has been made, would place *Bicoastal* in direct conflict with *Charter*. The better and only permissible reading of *Bicoastal* is that the obligation to move promptly is triggered by the objection that creates the contested matter, not by the filing of the claim. The *Bicoastal* claimants lost because they failed to act even after the objection. These Claimants acted on the court-ordered response deadline.[23]

The Admin Stipulation reinforces this conclusion. The parties agreed in writing to defer all action to "allow or disallow, or liquidate" the Putative Class Claim until distributions to general unsecured creditors were forthcoming. The resolution of whether Rule 7023 applies is necessarily part of the process of determining how the Putative Class Claim will be allowed or disallowed. The Liquidating Trustee

---

[22]The Liquidating Trustee's attempt to distinguish *Charter* on the ground that the class there was certified postpetition before the bankruptcy court considered Rule 7023 is factually accurate but legally irrelevant to *Charter*'s procedural ripeness holding. That holding is articulated as a general rule of bankruptcy procedure and does not turn on the existence of prior class certification. *Charter*, 876 F.2d at 874–75.

[23]*In re Bicoastal Corp.*, 133 B.R. 252, 256 (Bankr. M.D. Fla. 1991). The *Bicoastal* claimants lost because they waited months after the objection, missed the hearing, allowed the claim to be disallowed, and still did not seek Rule 7023 relief for months thereafter. These Claimants moved on the court-ordered response deadline. Whatever *Bicoastal* means by "as soon as practicable," moving on the court-ordered deadline satisfies it.

agreed to that deferral and received its benefit: two-plus years of unimpeded estate administration during which no Rule 7023 fight disrupted that work.[24]. Having received that benefit, the Liquidating Trustee cannot now characterize the agreed inaction as evidence of the Claimants' procedural default.[25]

The Court therefore holds that the Rule 7023 motion is timely. That holding, however, does not end the analysis. *Charter*'s word is "may." Timeliness establishes that the Court has the authority to apply Rule 7023. It does not require that the Court do so.

## II.      The Court Declines to Apply Bankruptcy Rule 7023.

With timeliness resolved in the Claimants' favor, the Court turns to the dispositive question: whether to exercise its discretion to apply Rule 7023. Before turning to the three *Musicland* factors, it is useful to identify the organizing principle that makes those factors cohere. Rule 7023 in the bankruptcy context exists to perform a specific function: to convert illusory individual claims into aggregate claims, giving dispersed small creditors an economically viable path to recovery they

---

[24]The Court is careful to distinguish the two periods of inaction. From the Petition Date through the Admin Stipulation (October 2022 – October 2023), there was no agreement of any kind between the parties regarding the Putative Class Claim. The Claimants simply did not move during this approximately one-year period, despite having full visibility into the case — Fischer was a member of the Creditors' Committee. From the Admin Stipulation through the filing of the Objection (October 2023 – January 2026), both parties agreed to defer all action on the Putative Class Claim. The Liquidating Trustee cannot treat the second period as evidence of the Claimants' disregard for the process when the Liquidating Trustee itself agreed to the standstill and received its benefit. The pre-stipulation inaction, while noted, is addressed more fully in the cost-benefit analysis under Factor 3.

[25]The Claimants' reliance on *In re Quantegy, Inc.*, 343 B.R. 689 (Bankr. M.D. Ala. 2006), for the proposition that a consensual deferral may support later Rule 7023 application is well-taken but limited. In *Quantegy*, the class representatives filed an adversary proceeding seeking Rule 7023 relief nine days after the petition date — a posture of affirmative early action that contrasts with the one-year pre-stipulation period here during which no such action was taken.

could not achieve on their own. The *Musicland* factors, and the broader discretionary inquiry they structure, all point toward the same underlying question: on these specific facts, can the class mechanism actually perform that function? For the reasons that follow, it cannot.

A.      Lack of Prepetition Certification — Weighs Against Application.

No court has ever certified the putative class. Not the Missouri state courts where the actions were first filed. Not the Eastern District of Missouri where they were removed and later stayed. The class actions were at the motion-to-dismiss stage when the automatic stay halted them in October 2022, and they have not moved since.

The Court acknowledges the circumstances. The Fischer and Abbott actions were not neglected prepetition; they were mid-litigation when the bankruptcy intervened. Counsel did not ignore a certified class; the certification process was interrupted by the automatic stay before it could begin. This context matters to the tone of the analysis. But it does not change the legal significance of the factor. Prepetition certification — whatever the reason for its absence — is what would have given individual class members a reasonable basis to believe they need not comply with the bar date, because a court-appointed representative was already protecting their interests. Without that certification, no such expectation existed.[26]

---

[26]*Charter, 876 F.2d* at 873 n.8 ("[I]n the case of a class that has already been certified by the district court, it seems backwards to then require the individual class members to file separate proofs of claim in bankruptcy court."). That logic, as the court acknowledged, does not apply where no certification has ever occurred. *See also In re Wildwood Vills., LLC, 2021 WL 1784408,* at *4–5 (Bankr. M.D. Fla. May 4, 2021) (declining to apply Rule 7023 even where a state court had certified the class prepetition, finding class treatment would adversely affect estate administration, and noting that Rule 7023 should be used "sparingly").

13

Courts have consistently treated the absence of prepetition certification as the single most important factor in the *Musicland* analysis, and the majority have denied Rule 7023 application on this ground alone.[27] Notably, even courts that have applied Rule 7023 despite the absence of prepetition certification have done so where other factors (early action, a defined class universe, compelling equities) more than compensated. None of those features are present here. This factor weighs against application.

B.        Notice to Putative Class Members — Neutral.

The legal standard for bar date notice is whether it was reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action.[28] This Court's Bar Date Order made that finding in 2022, and no one has challenged it in the three-plus years since. The Putative Class Claimants and their counsel received actual service. Unknown class members received constructive notice through publication in three newspapers of general circulation including the Wall Street Journal.

The Claimants respond that zero individual filings proves the notice failed as a practical matter. The Court acknowledges the force of this point. A consumer who bought a can of Bang Energy at a gas station in Indiana and never read a legal notice in the Wall Street Journal did not receive notice in any meaningful experiential sense.

---

[27]See *In re USA Gymnastics*, Case No. 18-09108-RLM-11, 2020 WL 1932340, at *4 (Bankr. S.D. Ind. Apr. 20, 2020); *In re Jamesway Corp.*, 1997 WL 327105, at *10 (Bankr. S.D.N.Y. June 12, 1997); *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 620 (Bankr. S.D.N.Y. 2009).

[28]*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  See also *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 972 (11th Cir. 2012).

14

The gap between legal adequacy and practical effectiveness is real, and it is precisely the gap that Rule 7023 exists to address.

But identifying the gap is not the same as filling it, and the function of the second *Musicland* factor is not to resolve whether the class mechanism should fill it. That question belongs to the third factor. The second factor asks whether notice was legally adequate, and it was. Scoring this factor against the Claimants on adequacy grounds, while simultaneously acknowledging that Rule 7023 exists precisely to bridge the gap between legal adequacy and practical reach, would conflate the two factors' distinct analytical functions. Factor 2 establishes that the gap exists. Factor 3 determines whether filling that gap with the class mechanism, at the cost this record presents, serves the interests the rule was designed to advance. The Court therefore treats this factor as neutral.

C.     Impact on Estate Administration — Weighs Heavily Against Application.

The third factor is where the analysis is most firmly grounded. The fundamental inquiry under this factor is not simply whether class litigation would disrupt the estate; disruption alone is insufficient. The inquiry is whether the benefit that Rule 7023 application would deliver to the class members justifies the cost it would impose on the estate and on the creditors who have participated in the process.

On the cost side of the ledger, the disruption is concrete and substantial. This case has been pending for more than three and a half years. The Plan has been confirmed and substantially consummated. The Liquidating Trustee has reduced the general unsecured claims pool by more than $300 million and resolved all but one of

15

thirty-two administrative claims. The Liquidating Trustee has determined to make an initial distribution to general unsecured creditors, a determination that, under the Admin Stipulation, was the precondition for this very objection. Into this posture, applying Rule 7023 would inject a $500 million class claim (approximately 30% of the entire GUC pool), requiring class certification proceedings, discovery into the purchasing patterns of potentially millions of consumers across thousands of retail locations nationwide, and the adjudication of an entirely unliquidated claim in a substantially consummated liquidation.[29]  This is precisely the "gumming up the works" that courts have consistently identified as grounds to deny Rule 7023 application.[30]

On the benefit side of the ledger, the picture is more complicated than the Claimants acknowledge, and more complicated than a simple invocation of the class action's small-claimant rationale suggests. The class mechanism is designed to deliver something to the individual consumer that she cannot obtain for herself: an economically viable path to recovery. But in this case, that path leads somewhere

---

[29]*In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 5 ("[T]he potential interference with timely distribution in itself presents sufficient grounds to expunge the class claims" and "[a]pplying Rule 23 to the class claims now would initiate protracted litigation that might delay distribution of the estate for years."); *In re Tarragon Corp.*, No. 09-10555-DHS, 2010 WL 3842409, at *4–5 (Bankr. D.N.J. Sept. 24, 2010) ("[]pplying Rule 23 at this late stage would be wholly inconsistent with the efficiency goals of the Bankruptcy Code."); *In re Wildwood Vills., LLC*, 2021 WL 1784408, at *7 ("[W]ay too much time and money have already been spent to now interpose an additional layer of procedures and fees that a class claim represents.").

[30]The Claimants invoke *In re Am. Reserve Corp.*, 840 F.2d 487, 489 (7th Cir. 1988), for the proposition that creditors "have no right to the higher share of the debtor's assets they can achieve by excluding rival creditors at the threshold." True.  But the prejudice at issue here is not mere dilution — every allowed claim dilutes every other.  It is the concrete cost of injecting large-scale class litigation into a substantially consummated liquidation at a time when the claims reconciliation process is essentially complete.

close to nowhere.

Consider the actual position of the gas station consumer who bought a Bang Energy drink. The Court infers from the nature of the product and its retail context that her price premium claim (the difference between what she paid for a product represented as containing Super Creatine and its actual value) amounts to a few dollars at most. Bang Energy products were canned beverages sold at gas stations and convenience stores, and the putative class encompasses consumers who purchased "as little as one can."[31] A price premium attributable to a single-ingredient representation on a gas station beverage purchase is, as a matter of reasonable inference from the product and its retail price point, a few dollars. The Court further infers, from the distribution chain the record establishes, that her claim is unprovable as a practical matter. The Debtors sold through distributors to retailers, "countless retailers who did not receive product directly from the Debtors, but from numerous distributors," with no consumer purchase record created or retained at the debtor level.[32] On the consumer side, a canned beverage purchased at a gas station or convenience store is the kind of anonymous retail transaction that generates no documentation on either end. Class treatment does not solve this problem; it aggregates it, pushing the proof difficulty into the certification and claims administration process rather than eliminating it.

---

[31] Dkt. No. 2988, at 27.

[32] Id.

17

And even if she could prove her claim, the Liquidating Trust Agreement imposes a $100 minimum distribution threshold (no distribution is required on any allowed claim of less than $100).[33] No individual Bang Energy consumer claim approaches that threshold. The practical consequence is that applying Rule 7023 here would not put money in the pockets of deceived consumers. It would produce a certified class, generate class counsel fees, and result in a distribution to class members that rounds to zero. The class device is not serving its core function; it is serving only its structural form.

The same analysis applies to the deterrence rationale the Claimants implicitly invoke. Outside of bankruptcy, class actions serve two functions: compensatory (delivering money to harmed parties) and deterrent (forcing defendants to internalize the full cost of their misconduct, discouraging future conduct of the same kind). Both functions fail here. The compensatory function fails for the reasons already stated. The deterrent function fails for a separate and equally decisive reason: the Debtors' assets were sold to Blast Asset Acquisition LLC, an affiliate of Monster Beverage Corporation.[34] Monster is not a disinterested successor with no view on the Super

---

[33]Section 4.7 of the Liquidating Trust Agreement provides that the Liquidating Trustee shall not be required to make any payment to any holder of an allowed claim of less than $100.00.  Given that individual consumer claims for Bang Energy drinks involve a few dollars of price premium at most, virtually no individual consumer claim would survive this threshold.

[34]The Debtors' assets were sold to Blast Asset Acquisition LLC, an affiliate of Monster Beverage Corporation.  Sale Order (Dkt. No. 1658); Notice of Sale Closing (Dkt. No. 1750).  That Monster is not a disinterested successor is a matter of record: the Putative Class Claim itself describes the Orange Bang arbitration (*VPX Sports v. Orange Bang, Inc.*, Case No. 5:20-cv-1464 (C.D. Cal.)), in which Monster and Orange Bang prevailed against the Debtors on the theory that CLL is not creatine and the Super Creatine label is deceptive, with the arbitrator awarding $175 million against VPX.  Dkt. No. 2988, Ex. A ¶¶ 35–38.

18

Creatine representation. Monster is the party that established, in prior litigation against the Debtors, that the representation was false. The Putative Class Claim itself describes the Orange Bang arbitration (filed by the Debtors against Monster) in which the arbitrator found that CLL is not creatine, has none of creatine's benefits, and that the Debtors owed Monster and Orange Bang $175 million. Having prevailed on that theory for $175 million, there is every reason to infer that Monster will not turn around and perpetuate the same false claim it just finished litigating against. The deterrent function presupposes a going enterprise with future conduct to influence. The enterprise whose conduct is at issue has been liquidated, and the successor is institutionally committed to the opposite position. Both rationales for the class device fail simultaneously, and their simultaneous failure makes the case for Rule 7023 application uniquely weak.

The Claimants have not pursued a *cy pres* argument in their briefing with any particularity, but the possibility lurks in the background whenever individual recovery is implausible. The Court addresses it briefly. Courts have grown increasingly skeptical of *cy pres* as a substitute for direct class member recovery.[35]  In the bankruptcy context, the concern is equally acute: *cy pres* redirects the recovery away from the very people the class action is meant to serve, the Bang Energy consumers, and toward third parties whose connection to the litigation is attenuated. More fundamentally, a *cy pres* argument acknowledges, rather than answers, the

---

[35]See *Marek v. Lane*, 571 U.S. 1003, 1003–04 (2013) (Roberts, C.J., respecting the denial of certiorari) (noting "fundamental concerns" about *cy pres* arrangements and calling for future examination of whether they are consistent with the requirement that a class action settlement be "fair, reasonable, and adequate").

problem this Court has identified. *Cy pres* presupposes a functioning class mechanism that cannot deliver individual recovery in the ordinary course; it is a mechanism for redistributing surplus, not for creating class value where none exists. Where individual consumer claims are unprovable, the distribution threshold eliminates residual recovery, and both the compensatory and deterrent functions of the class device are absent, *cy pres* is a workaround, not a justification.

The Claimants counter that denying Rule 7023 application means consumers receive nothing at all, whereas applying it at least creates the possibility of some recovery. That argument has surface appeal but proves too much. The relevant comparison is not between Rule 7023 application and an imagined world of individual claim filing. It is between Rule 7023 application and the claims process that was actually provided: a process that included adequate notice, a bar date, and the full protection of the Code's collective structure. That process ran its course. The Claimants' argument, taken to its logical end, would require application of Rule 7023 in every consumer product bankruptcy regardless of timing, certification history, or administrative posture, because absent class treatment, small consumer claimants always face individual claim economics that make filing irrational. That cannot be the law, and it is not.[36]

---

[36]The Court is aware that the same result might apply in any consumer product bankruptcy where the debtor sold a small-dollar product to millions of customers and the class was not certified prepetition. The opinion should not be read to foreclose Rule 7023 application in all such cases. The result here reflects the specific conjunction of factors discussed.

The third *Musicland* factor weighs heavily against application of Bankruptcy Rule 7023. The cost to the estate and to creditors who have participated faithfully in this process is concrete. The benefit to the individual consumers the class device is meant to serve is, on these specific facts, largely illusory. The cost-benefit analysis resolves the discretionary question clearly.

## Alternative Relief

The Court's three-step framework requires one further step: determining whether the class representatives individually retain any viable path to recovery. The Court addresses this because the analytical framework the legal standard establishes contemplated this inquiry, and the briefing left it open.

Carlton Harris's postpetition administrative expense claim was separately resolved by the Admin Stipulation. The Order approving that stipulation[37] granted an administrative expense claim of $500,000, with funds held by class counsel pending further order. It is presently unclear what will become of this administrative claim or what the further order will provide.

Abbott and Fischer stand differently. Each has individual prepetition claims arising from his own Bang Energy purchases. The briefing record, focused on the threshold Rule 7023 question, was not constructed to adjudicate individual claims, and the Court does not purport to do so here. What the record does establish is that no purchase documentation was submitted in connection with this proceeding, consistent with the Court's inference, applicable to the class generally, that purchases

---

[37] Dkt. No. 2170.

of canned beverages through the distribution chain established by the record generate no consumer-side documentation. And for the reasons stated above, any individual consumer claim, even if provable, would not approach the $100 minimum distribution threshold under the Liquidating Trust Agreement. The Court therefore concludes only that alternative individual relief does not alter the disposition of the motion before it.

The Court does not by this ruling resolve the rights of individual putative class members, whose bar date claims may have been tolled by the timely-filed Putative Class Claim under applicable tolling principles.[38] Those questions (whether any individual claim is timely, provable, or above the distribution threshold) are not before the Court and are not decided here.

## Conclusion

The Bang Energy consumer at the heart of this case has a real grievance, and the law designed Rule 7023, at least in part, for her. The rule applies when it can actually serve that function: when aggregation converts illusory individual claims into real recoveries for real people. On this record, it cannot. The distribution chain leaves individual claims unprovable as a practical matter. The distribution threshold makes individual recoveries impossible even if proven. And the deterrent rationale that sometimes justifies class treatment even where individual recovery is modest is

---

[38]The Claimants argue that the timely filing of the Putative Class Claim tolled the bar date as to individual putative class members under *American Pipe* principles. See *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974). Whether individual class members may seek to file claims in light of this ruling, and whether any such claims would be timely, provable, or above the distribution threshold, are questions not resolved by this order.

absent here: the enterprise has been liquidated, and its successor is the party that established in prior litigation that the Super Creatine representation was wrong. The class device, faithfully applied to this record, serves only its form.

The motion is timely, and the Court gives the Claimants that. The cost-benefit analysis is not close. The Objection is sustained.

Accordingly, it is **ORDERED** that:

1.  The Objection of the Liquidating Trustee (Dkt. No. 2988) is **SUSTAINED**.

2.  The Motion for Application of Bankruptcy Rule 7023 (Dkt. No. 3001) is **DENIED**.

3.  Proof of Claim No. 617, filed by Brendan Abbott, Peter Fischer, and Carlton Harris, individually and on behalf of all others similarly situated, is **DISALLOWED** in its entirety.

###

Copies to: all parties in interest